**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
IN RE PAYMENT CARD                            **MEMORANDUM AND ORDER**
INTERCHANGE FEE AND                           MDL 05-1720 (JG) (JO)
MERCHANT DISCOUNT
ANTITRUST LITIGATION

This document refers to: ALL ACTIONS
------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

On February 23, 2006, I heard oral argument on the pending cross motions to appoint lead plaintiffs' counsel in this multi-district litigation. *See* DE 27 (Motion of Certain Class Plaintiffs and Certain Non-Class Plaintiffs to Consolidate, Coordinate, Appoint Lead and Liaison Counsel and Other Relief); DE 99 (Payless Shoesource Group's Cross Motion to Consolidate Cases, Appoint Lead and Liaison Counsel and Other Relief); *see also* Order dated December 29, 2005 (referring cross-motion to me for decision).  The "Certain Class Plaintiffs" group proposes a co-leadership structure comprised of three law firms: Robins, Kaplan, Miller & Ciresi L.L.P. ("Robins Kaplan"); Berger & Montague, P.C.; and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P. (the "Robins Kaplan group").  The "Payless Shoesource Group" proposes the appointment of the law firm of Milberg, Weiss, Bershad & Shuman L.L.P. ("Milberg Weiss") as sole lead counsel, but is amenable, as an alternative, to a compromise under which it would serve as co-lead counsel together with the three members of the Robins Kaplan group.  The Certain Class Plaintiffs group opposes such a compromise.  Having considered all of the written and oral submissions on the matter, for the reasons set forth below I now grant the Certain Class Plaintiffs group's motion, deny the Payless Shoesource Group's motion, reject the alternative proposal, and appoint the three members of the Robins Kaplan group as co-lead plaintiffs' counsel.

I.  Background

On June 22, 2005, Robins Kaplan, acting as counsel for Photos, Etc. Corporation, filed the first of some forty class action lawsuits brought to date on behalf of a class of merchants against the defendant credit card networks and certain of their member banks. In essence, the plaintiffs allege that the defendants have fixed transaction costs known as "interchange fees" at supracompetitive levels in violation of Section One of the Sherman Act. *See* DE 27 (Certain Class Plaintiffs' Memorandum of Law) at 1-2. By order of the Judicial Panel on Multidistrict Litigation dated October 19, 2005, that action and thirteen other related class action law suits brought in four separate districts were consolidated in the current litigation for pretrial purposes, and many more have since followed. *See* DE 2, DE 29, DE 94.

By notice of motion dated November 22, 2005, the Certain Class Plaintiffs group, representing plaintiffs in approximately 34 of the 40 actions that were then pending, filed a motion to appoint the Robins Kaplan group as co-lead plaintiffs' counsel. The Payless Shoesource group filed its cross-motion in support of the appointment of Milberg Weiss on January 3, 2006. After the Honorable John Gleeson, United States District Judge, referred the matter to me for decision, I solicited proposals from all interested parties as to alternative leadership proposals, specifically including a co-lead structure that would include the three firms in the Robins Kaplan group and the Milberg Weiss firm. *See* DE 189.

II.  Discussion

The appointment of lead counsel is recognized as a useful and helpful way to avoid duplication of effort and a means to streamline what could otherwise be inefficient and unruly proceedings. *See Farber v. Riker-Maxson Corp.,* 442 F.2d 457, 459 (2d. Cir. 1971); *MacAlister*

*v. Guterma,* 263 F.2d 65, 69 (2d Cir. 1958). The *Manual for Complex Litigation* ("*Manual*") counsels that in making such an appointment, I should consider such factors as the qualification and competence of counsel, the ability of counsel to fairly represent diverse interests, and "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Manual* § 10.224. These factors are similar to those considered in appointing class counsel pursuant to Rule 23(g)(1)(C) of the Federal Rules of Civil Procedure, although I recognize that the considerations are mandatory in the latter context and only precatory in the former.

As a threshold matter, I am confident that both leadership candidates are eminently qualified and unquestionably competent to serve the plaintiffs well. Each brings to the table an array of experienced attorneys who have achieved successful results for class clients in antitrust litigation and earned the respect of the bench and bar. In short, the plaintiffs do not lack adequate leaders. Choosing among those who would fill that role is therefore a difficult task, particularly at this early stage of the proceedings when any choice can be no better than an informed guess about what will best serve the plaintiffs' collective interest.

Nevertheless, I conclude that the Robins Kaplan group is in the best position to represent the interests of a large and diverse group of plaintiffs. The members of the group have already demonstrated their ability to work cooperatively with each other, with the court, and, most importantly, with the numerous non-lead counsel representing plaintiffs with very significant interests in this litigation. They have the support of a larger and more diverse group of clients, those clients collectively advance a broader array of the legal theories at issue in this litigation, and they have ample resources to conduct the litigation.

Those advantages outweigh, in my view, the more particularized advantages that Milberg Weiss claims on behalf of the Payless Shoesource group. The fact that Milberg Weiss has its main office in New York has little if any weight: I assume that counsel in other cities can and will be equally responsive to the needs of the court and the plaintiffs, and in light of the enormous stakes potentially at issue in the litigation I cannot imagine that the additional travel burdens to be borne by other attorneys will have any significant impact on the plaintiffs' interests. Likewise, the proposition – which I assume to be true despite some disagreement on the matter – that Payless Shoesource may have a far greater individual damages claim than any other single plaintiff says nothing about who can best serve the interests of all plaintiffs.

In choosing between the two proposed leaders, a related argument made at the hearing on February 26, 2006, weighs heavily in favor of the Robins Kaplan group. Counsel for the Payless Shoesource group argued, in essence, that Payless Shoesource is comfortable with Milberg Weiss and will readily make its considerable in-house resources available to counsel if that firm leads the litigation effort, but might reconsider if forced to accept the leadership of other attorneys. The argument seems counterintuitive at best and counterproductive at worst. I would expect that, regardless of the outcome of this motion, Payless Shoesource will retain a strong interest in seeing this litigation to a result that favors its interests and will want to assist any lawyer working toward that goal rather than run the risk of withholding such assistance to the harm of all plaintiffs. If am mistaken in that regard, it is either because Payless Shoesource would act differently from other plaintiffs, or because I have made a more basic error about the way any disappointed plaintiff would likely respond to a ruling on the instant matter. If the former is true, neither Payless Shoesource nor its counsel would appear to be in the best position to protect the

overall interests of all plaintiffs. If the latter is true, then the far more numerous plaintiffs in the Certain Class Plaintiffs group may be likewise prone to picking up their ball and going home if denied their choice of lead counsel, a result that seems likely to cause more harm to putative class members' overall interests than a similar reaction by the members of the Payless Shoesource group who are fewer in number.

Accordingly, if the choice were solely between the Robins Kaplan group and Milberg Weiss, I would choose the former. But those are not the only options. A more difficult decision is whether the plaintiffs would be better off by requiring the two potential leaders to work together. The idea has at least surface appeal, as it would inevitably provides the leadership group with additional resources and expand the roster of experienced, talented attorneys serving the plaintiffs. But in this instance more is not necessarily better, and I conclude that melding the two leadership proposals would not advance, and might instead prejudice, the plaintiffs' overall interests.

Milberg Weiss has itself identified one area of concern by arguing that a co-lead structure is inherently unwieldy, or at least would be so in the circumstances of this case. *See* DE 99 (Payless Shoesource Group's Memorandum of Law) at 4. While I do not agree that placing leadership responsibility in the hands of a group is inevitably worse than appointing a sole leader, the risk is plainly greater where, as here, the group's composition is the product of compulsion rather than choice. The latter problem can only be exacerbated where, as is also the case here, the members of the group forced to work together have previously been at odds on a number of issues.

My concern in that regard was heightened by an argument that Milberg Weiss advanced at the hearing on February 23, 2006. Counsel asserted that, in his experience in like matters, the attorneys who are *not* part of the leadership team in such complex litigation are often relegated to the sidelines by those in charge, and can do little more than observe the proceedings by periodically reviewing the docket. I have no reason to question the veracity of that assertion, but it is entirely inconsistent with the duties and the authority I intend to confer in appointing lead counsel in this litigation. I anticipate that the Robins Kaplan group will solicit and consider the views of others, particularly the Milberg Weiss firm, in making litigation decisions on behalf of the plaintiffs. To the extent Milberg Weiss might anticipate acting in the manner described by counsel if given the opportunity to lead the plaintiffs' litigation team, it would frustrate rather than advance my intention in appointing lead counsel.

Moreover, if Milberg Weiss is correct in anticipating how others will act in the lead counsel role, notwithstanding my explicit instruction to the contrary, I believe it will be in a better position to remedy the problem as an outsider to the leadership team rather than as a minority member of it. As Milberg Weiss pointed out in its briefing, the firm has often been successful in representing its clients in multi-district and class action litigation even where it has not been lead counsel. *See* DE 126 (Payless Shoesource Group's Reply Memorandum of Law) at 5. I therefore anticipate that it will be particularly vigilant and effective in fighting for the interests of the Payless Shoesource group and like-minded plaintiffs and will alert me and Judge Gleeson to serious disagreements with lead counsel when appropriate. As the minority member of an ad hoc leadership group created by judicial fiat, the disagreements that Milberg Weiss might have with the three members of the Robins Kaplan group could more easily be veiled by

the apparent unity of a single submission ostensibly made on behalf of the entire leadership group.  But if Milberg Weiss is not part of the lead counsel group, such disagreements will more likely surface and get the judicial attention they require to protect the interests of the plaintiffs whose interests the lead counsel appointees must serve.

Finally, my decision to choose one of the two competing proposals rather than to meld them together does not rely in any way on an additional argument raised by Robins Kaplan and some of its supporters.  The latter argument is predicated on the assertion that a number of law firms that are themselves qualified to lead the litigation for the plaintiffs have voluntarily given up a claim to participation in the lead counsel group in order to present a unified – and therefore more likely successful – leadership proposal.  The conclusion I am asked to draw from that premise is that it would be unfair to make such altruistic law firms take a back seat to another firm that proposed itself as sole lead counsel rather than work cooperatively with others as they did.  The fairness argument has some appeal, although I hasten to add that in saying so I do not mean to suggest that Milberg Weiss has acted inappropriately by striking out on its own.  Appealing or not, however, the fairness argument carries no weight in my analysis because my task in deciding these motions is to protect the interests of the plaintiffs, not their lawyers.  A result that best serves the plaintiffs must trump any alternative that may in some sense be deemed fairer to some of the lawyers who would represent them.

III.   <u>Conclusion</u>

For the reasons forth above, I grant the motion of the Certain Class Plaintiffs group, deny the cross-motion of the Payless Shoesource group, and appoint as plaintiffs' co-lead counsel the

following three law firms:  Robins, Kaplan, Miller & Ciresi L.L.P.; Berger & Montague, P.C.; and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.

      **SO ORDERED.**

Dated: Central Islip, New York
       February 24, 2006

                                            /s/ James Orenstein
                                            JAMES ORENSTEIN
                                            U.S. Magistrate Judge