**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                      :
IN RE PAYMENT CARD INTERCHANGE   :   MASTER FILE 05-MD-1720(JG)(JO)
FEE AND MERCHANT DISCOUNT        :
ANTITRUST LITIGATION              :
                      :
                      :
This Document Relates To:          :
                      :

| | | |
|---|---|---|
| 1:05-CV-3800 | 1:05-CV-5083 | : |
| 1:05-CV-3924 | 1:05-CV-5153 | : |
| 1:05-CV-4194 | 1:05-CV-5207 | : |
| 1:05-CV-4520 | 1:05-CV-5866 | : |
| 1:05-CV-4521 | 1:05-CV-5868 | : |
| 1:05-CV-4728 | 1:05-CV-5869 | : |
| 1:05-CV-4974 | 1:05-CV-5870 | : |
| 1:05-CV-5069 | 1:05-CV-5871 | : |
| 1:05-CV-5070 | 1:05-CV-5878 | : |
| 1:05-CV-5071 | 1:05-CV-5879 | : |
| 1:05-CV-5072 | 1:05-CV-5880 | : |
| 1:05-CV-5073 | 1:05-CV-5881 | : |
| 1:05-CV-5074 | 1:05-CV-5882 | : |
| 1:05-CV-5075 | 1:05-CV-5883 | : |
| 1:05-CV-5076 | 1:05-CV-5885 | : |
| 1:05-CV-5077 | 1:06-CV-1829 | : |
| 1:05-CV-5080 | 1:06-CV-1830 | : |
| 1:05-CV-5081 | 1:06-CV-1831 | : |
| 1:05-CV-5082 | 1:06-CV-1832 | : |

                      :
                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,**
<u>**ALTERNATIVELY, TO STRIKE PLAINTIFFS' PRE-2004 DAMAGES CLAIMS**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT ........................................................................ 2

STATEMENT OF CACC PLAINTIFFS' ALLEGATIONS ............................ 4

ARGUMENT...................................................................................................... 9

PLAINTIFFS' CLAIMS AGAINST DEFENDANTS SHOULD BE
DISMISSED TO THE EXTENT THAT THEY SEEK DAMAGES
INCURRED DURING THE PERIOD PRIOR TO 2004 COVERED BY
THE RELEASE OR, ALTERNATIVELY, THE PORTION OF THE
PRAYER FOR RELIEF PERTAINING TO SUCH CLAIMS SHOULD
BE STRICKEN.................................................................................................... 9

       A.    The *In Re Visa Check* Release Is Binding On All CACC
            Plaintiffs That Were Members Of The Class ......................................... 11

       B.    CACC Plaintiffs' Claims Against Defendants For Pre-2004
            Damages Are Barred By The *In re Visa Check* Settlement
            Agreements.............................................................................................. 13

              1.    The Relevant Legal Standard And Prior Enforcement
                    Of  The *In re Visa Check* Release ................................................ 13

              2.    CACC Plaintiffs' Pre-2004 Damages Claims Are Likewise
                    Barred ...................................................................................... 17

CONCLUSION................................................................................................... 19

i

# TABLE OF AUTHORITIES

## CASES

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood*
  *Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004) ...................................................................... 9

*Davidson v. Yeshiva Univ.*,
  555 F. Supp. 75 (S.D.N.Y. 1982) ............................................................. 10

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ................................................................................. 11-12

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992) ...................................................................... 9

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...................................................................... 9

*Official Comm. of the Unsecured Creditors of*
  *Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) ...................................................................... 9

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998) ...................................................................... 10

*Quinn v. Straus Broad. Group, Inc.*,
  309 F. Supp. 1208 (S.D.N.Y. 1970) ......................................................... 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) .......................................................... 3, 16, 17

*Seippel v. Jenkens & Gilchrist, P.C.*,
  341 F. Supp. 2d 363 (S.D.N.Y. 2004) ...................................................... 10

*Sirota v. Welbilt Appliance, Inc.*,
  840 F. Supp. 11 (E.D.N.Y. 1994) ............................................................ 10

*Steinmetz v. Toyota Motor Credit Corp.*,
  963 F. Supp. 1294 (E.D.N.Y. 1997) ........................................................ 10

*TBK Partners, Ltd. v. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ............................................................... 13, 14

*In re VisaCheck/MasterMoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................... 2, 3, 7, 15, 16, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................3, 7, 13, 14,16

*In re Worldcom Sec. Litig.*,
    No. 02-civ-3288, 2005 WL 249554 (S.D.N.Y. Oct. 11, 2005).................... 13, 14

*In re XO Commc'ns, Inc.*,
    330 B.R. 394 (S.D.N.Y. 2005) ...........................................................................9

## STATUTES

California Cartwright Act, Cal. Bus. & Prof. Code § 16700............................................4

Clayton Act, 15 U.S.C. § 15B ....................................................................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 9, 10

Federal Rule of Civil Procedure 12(f)........................................................................ 10

Federal Rule of Evidence 201 ....................................................................................... 9

Sherman Act, 15 U.S.C. § 1 ............................................................................... 4, 8, 17

Sherman Act, 15 U.S.C. § 2 ........................................................................................... 5

Defendants MasterCard International Incorporated and MasterCard Incorporated (collectively, "MasterCard"), Visa U.S.A. Inc. ("Visa"), Visa International Service Association ("Visa International"), and Defendants Bank of America, N.A., BA Merchant Services LLC (f/k/a/ National Processing, Inc.), Bank of America Corporation, Juniper Financial Corp., Capital One Bank, Capital One F.S.B., Capital One Financial Corporation, Chase Bank USA, N.A., JPMorgan Chase & Co., Chase Manhattan Bank USA, N.A., Citibank N.A., Citigroup Inc., Citicorp, First National Bank of Omaha, HSBC Finance Corporation, HSBC North America Holdings, Inc., National City Corporation, National City Bank of Kentucky, SunTrust Bank, Texas Independent Bancshares, Inc., Wachovia Bank, N.A., Wachovia Corporation, Washington Mutual, Inc., Providian National Bank, Providian Financial Corporation, and Wells Fargo & Company (collectively, the "Bank Defendants," and together with Visa, Visa International and MasterCard, the "Defendants"), respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), to dismiss the claims against Defendants contained in the First Consolidated Amended Class Action Complaint (the "CACC") insofar as they seek damages incurred during the period prior to January 1, 2004 arising out of Defendants' alleged conduct. Alternatively, Defendants move for an order striking the portion of the Prayer for Relief in the CACC that pertains to such claims.[1]

---

[1]    Defendants bring this motion to dismiss or strike against the named plaintiffs in the CACC: Affiliated Foods Midwest Cooperative, Inc.; Capital Audio Electronics, Inc.; CHS Inc.; Coborn's Incorporated; Crystal Rock LLC; D'Agostino Supermarkets; Discount Optics, Inc.; Jetro Holdings, Inc. and Jetro Cash & Carry Enterprises, Inc.; Leon's Transmission Service, Inc.; Parkway Corp.; Payless ShoeSource, Inc.; Photos Etc. Corporation; Traditions, Ltd.; the National Association of Convenience Stores; NATSO, Inc.; the National Community

## PRELIMINARY STATEMENT

In this consolidated action, CACC Plaintiffs claim that Visa's and MasterCard's specifying of default interchange fees—the amount that merchant-acquiring banks pay card-issuing banks on each Visa- and MasterCard-branded transaction—constitute anticompetitive agreements among Defendants that cause merchants to pay excessive merchant discount fees for the acceptance of Visa- and MasterCard-branded payment cards.  CACC Plaintiffs further allege that Defendants utilize a collection of rule-making, illegal bundling and exclusive dealing practices to ensure that merchants pay those purportedly excessive merchant discount fees.

In their amended complaint, CACC Plaintiffs deliberately obfuscate the time period for which they seek to impose liability or otherwise challenge Defendants' interchange and rule-making conduct.  Virtually all CACC Plaintiffs and putative class members, however, are also members of the class of merchants that released any such claims for damages allegedly incurred prior to January 1, 2004 as part of the Visa and MasterCard settlements approved by this Court in *In re VisaCheck/MasterMoney Antitrust Litigation*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (Gleeson, J.).  The release provision in each Settlement Agreement on its face applies to "all manner of claims . . .

---

Pharmacists Association; the National Cooperative Grocers Association; the National Grocers Association; and the National Restaurant Association (collectively, the "CACC Plaintiffs"). None of the plaintiffs here opted out of the settlements in *In re Visa Check/MasterMoney Antitrust Litigation*.  Defendants Visa, Visa International and MasterCard do not seek such relief at this time with respect to the complaints in this consolidated proceeding brought by various individual merchants since all of those complaints expressly seek damages for the period beginning January 1, 2004.  *See, e.g.*, Am. Compl., *Hy-Vee, Inc. v. Visa U.S.A. Inc.*, Case No. 05-cv-03925 (E.D.N.Y.) (Prayer for Relief, C) (seeking "[a] judgment for three times the damages actually sustained by Plaintiff during the period from January 1, 2004 forward").

against [Visa, Visa International, MasterCard, and their member banks] . . . relating in any way to any conduct prior to January 1, 2004 concerning any claims alleged in the Complaint . . . ." *Id*. at 512.

        This Court, the Second Circuit and the Ninth Circuit each have construed that release to bar merchants from litigating the very same interchange- and rule-making-related claims that are at issue in the instant action. *See id.* at 514-16; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 124 (2d Cir. 2005); *Reyn's Pasta Bella, LLC v. Visa U.S.A. Inc.*, 442 F.3d 741 (9th Cir. 2006). Notwithstanding these decisions, CACC Plaintiffs request that the Court "award monetary damages . . . for the fullest time period permitted by the applicable statutes of limitations and the *purported* settlement and release in *In re Visa Check/MasterMoney Antitrust Litigation* . . . ." (CACC, Prayer for Relief, D.) (emphasis added.) CACC Plaintiffs offer no further insight into why the so-called "purported" release approved and enforced by this Court does not squarely foreclose recovery for damages incurred prior to 2004.

        In an effort to avoid motion practice, prior to bringing this motion Defendants asked CACC Plaintiffs' counsel to explain the intent behind this portion of their Prayer for Relief, including, specifically, whether they are seeking damages for the pre-2004 period. CACC Plaintiffs' counsel declined to answer the inquiry and replied that they are not in a position to do so. Accordingly, to avoid any ambiguity that may impact the scope of the damages claims at issue, Defendants respectfully request that all claims in the CACC against Defendants be dismissed insofar as they seek damages incurred during the period prior to January 1, 2004, or otherwise that the portion of the

Prayer for Relief purporting to seek damages incurred during the period prior to January

1, 2004 be stricken.

## STATEMENT OF CACC PLAINTIFFS' ALLEGATIONS

### CACC PLAINTIFFS' ASSERTIONS

CACC Plaintiffs allege that Visa, Visa International, MasterCard, and the

Bank Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and California's

Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*.[2]  CACC Plaintiffs group these

Section 1 allegations generally into four areas of challenged conduct, all of which

purportedly result in CACC Plaintiffs paying excessive "merchant discount fees" on all

Visa- and MasterCard-branded credit and debit card transactions.[3]  First, CACC Plaintiffs

allege that Visa, Visa International and MasterCard each entered into anticompetitive

agreements with their respective bank members, including the Bank Defendants, and with

---

[2]  In the CACC, CACC Plaintiffs name as defendants MasterCard, Visa, Visa International and the Bank Defendants.  (*See* CACC ¶¶ 52-89.)  Defendant MasterCard International Incorporated is alleged to be a Delaware membership corporation that consists of more than 23,000 banks worldwide and is the principal operating subsidiary of defendant MasterCard Incorporated, which is alleged to be a private, SEC-registered share company. (*Id*. ¶ 54.) Defendant Visa International Service Association is alleged to be a Delaware membership corporation that consists of approximately 21,000 banks.  (*Id*. ¶ 52.)  Defendant Visa U.S.A. Inc. is alleged to be a group-member of Visa International Service Association as well as a Delaware membership corporation whose members include approximately 14,000 banks.  (*Id*. ¶ 53.)  The Bank Defendants consist of financial institutions that are alleged to varying degrees to issue MasterCard- and Visa-branded payment cards (so-called "Issuing Banks") and/or acquire merchants to accept those payment cards (so-called "Acquiring Banks").

[3]  CACC Plaintiffs define "Merchant Discount Fee" as "the fee paid by the merchant to the Acquiring Bank, which typically consists of the Interchange Fees, service fees, and processing fees and an additional processing fee charged by the Acquiring Bank." (CACC ¶ 8(o).)  The "Interchange Fee" in the purported United States General Purpose Card Network Services and Debit Card Services markets is defined as "a fee that merchants pay to the Issuing Bank through the Network and the Acquiring Bank for each retail transaction in which the Issuer's card is used as a payment device at one of the Acquirer's merchant accounts." (*Id*. ¶ 8(l).)

4

each other, that specified default interchange fees for credit and debit transactions. (CACC ¶¶ 213-26; 227-33; 300-11; 322-35; 336-47.)  Second, CACC Plaintiffs contend that various Visa and MasterCard "Anti-Steering" rules facilitate those anticompetitive activities.  (*Id.* ¶¶ 234-47.)  Third, CACC Plaintiffs allege that Defendants tie and bundle Payment-Guarantee and Network-Processing Services with Payment-Card System Services and thereby force merchants to pay supracompetitive fees for Payment-Guarantee and Network-Processing Services.  (*Id.* ¶¶ 255-87.)  Finally, CACC Plaintiffs allege that Defendants engage in exclusive dealing by restricting competition for Payment-Guarantee and Network-Processing Services, also allegedly leading to CACC Plaintiffs paying excessive fees for those services.  (*Id.* ¶¶ 288-99.)  Defendants deny all of  CACC Plaintiffs' allegations in this regard.

In addition to these claims, CACC Plaintiffs also allege that Visa's Anti-Steering rules facilitate its monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.  (*Id.* ¶ 248-54.)  CACC Plaintiffs contend that this alleged monopoly power allows Visa to maintain its interchange fees at supracompetitive levels. Defendants deny all of these allegations as well.

The CACC Plaintiffs assert their claims on behalf of two putative classes: "Class I" one seeks damages only and is defined as "[a]ll persons, business, and other entities that have accepted Visa and/or MasterCard Credit and/or Debit Cards in the United States at any time from and after January 1, 2004."  (*Id.* ¶ 97(a).)  "Class II" seeks only injunctive relief and is defined as entities that "currently" accept such cards in the United States.  (*Id.* ¶ 97(b).)

Despite their nod to a January 1, 2004 date in their Class I definition, CACC Plaintiffs request in pertinent part that this Court "award monetary damages sustained by the Representative Plaintiffs and the Classes for the fullest time period permitted by the applicable statutes of limitations and the *purported* settlement and release in *In re Visa Check/MasterMoney Antitrust Litigation*, in an amount to be proved at trial . . . ."  (CACC, Prayer for Relief, ¶ D (emphasis added).)  (The first putative class action complaint in this action was filed on June 22, 2005, and private antitrust claims are, of course, generally subject to a four-year limitations period.  *See* 15 U.S.C. § 15B.)  In short, although acceptance of Visa and MasterCard transactions after January 1, 2004 is an initial condition for inclusion in Class I, the transactions at issue and damages sought for those meeting that condition (*i.e.*, presumably the vast majority of merchants) are not similarly limited.

Nor is the scope of the Prayer here merely a matter of inadvertence.  On two occasions MasterCard counsel squarely asked CACC Plaintiffs' counsel whether they were challenging the enforceability of the release in *In re Visa Check* or seeking damages for the period prior to January 1, 2004 (the operative time period of the *In re Visa Check* release).  (*See* Declaration of Kenneth A. Gallo, dated Jun. 9, 2006, at ¶¶ 3-4.)  CACC counsel responded that they were not in a position to answer that question.  (*Id.*)  Nor since the filing of Defendants' pre-motion letter to the Court have CACC Plaintiffs indicated that Defendants have misinterpreted their intentions.[4]

---

[4]   Indeed, a number of the CACC Plaintiffs' individual complaints that preceded the filing of the CACC challenged the release and sought damages for the period prior to January 1, 2004.  *See, e.g.*, *Amer. Booksellers Assoc. v. Visa U.S.A. Inc.*, Case No. 05-cv-5319 (E.D.N.Y.) (Compl. ¶¶ 115-18); *Amsterdam v. Visa U.S.A. Inc.*, Case No. 05-cv-3924 (E.D.N.Y.)

THE *IN RE VISA CHECK* SETTLEMENTS AND RELEASES

As this Court is aware, the settlements and release referenced in the Prayer for Relief are those which this Court approved in *In re Visa Check*, 297 F. Supp. 2d at 526, and which were then affirmed by the Second Circuit. *Wal-Mart Stores,* 396 F.3d at 124. In *In re Visa Check*, this Court certified a class of United States merchants that accepted Visa- and MasterCard-branded payment cards at any time during the period from October 25, 1992 to June 21, 2003. *In re Visa Check*, 297 F. Supp. 2d at 514 n.12. That merchant class sought recovery of damages under Sections 1 and 2 of the Sherman Act for their alleged payment of excessive merchant discount fees resulting from Visa's and MasterCard's purported rule-making and other anticompetitive conduct. *Id*. at 507. The parties' respective settlements reflected the "culmination of approximately seven years of litigation, and represent the largest antitrust settlement in history." *Id*. at 508.

As part of the Settlement Agreements entered into with Visa and MasterCard on June 5, 2003 (copies of which are attached to the accompanying Declaration of Brett Kitt, dated June 9, 2006 ("Kitt Decl.") as Exhibits A and B, respectively, for the Court's convenience), the merchant class granted a broad release of claims. In pertinent part, the Settlement Agreements release and discharge Visa, Visa International, MasterCard and their member banks from:

> all manner of claims . . . against [Visa, Visa International MasterCard and their member banks] . . . that any Releasing Party ever had, now has or hereafter can, shall or may have, *relating in any way to any conduct prior to January 1, 2004* concerning any claims alleged in the Complaint or any of the complaints consolidated therein,

---

.(Compl. ¶¶ 28-32); *Jetro Holdings, Inc. v. Visa U.S.A. Inc.*, Case No. 05-cv-4520 (E.D.N.Y.) (Compl. ¶¶ 108-11).

> including, without limitation, claims which have been
> asserted or could have been asserted in this litigation which
> arise under or relate to any federal or state antitrust, unfair
> competition, unfair practices, or other law or regulation, or
> common law, including, without limitation, the Sherman
> Act, 15 U.S.C. § 1 *et seq.*

(Visa Settlement Agreement ¶ 28; MasterCard Settlement Agreement ¶ 30) (emphasis

added.)

       The Settlement Agreements apply to Visa, Visa International, MasterCard

and their member banks, each as a "Released Party,"[5] and bind the "Releasing Parties,"

which include "the named Plaintiffs and any Class Members who have not timely

excluded themselves from the Class Action . . . whether or not they object to the

Settlement and whether or not they make a claim upon or participate in the Settlement

Fund, whether directly, representatively, derivatively or in any other capacity."  (Visa

Settlement Agreement ¶ 1(v); MasterCard Settlement Agreement ¶ 1(x).)  Class Members

are defined to include "all persons and business entities who have accepted MasterCard

and/or Visa credit cards and therefore have been required to accept MasterCard branded

and/or Visa branded debit cards . . . at any point during the Class Period within the

continental United States (and Alaska and Hawaii)."  (Visa Settlement Agreement ¶ 1(c);

MasterCard Settlement Agreement ¶ 1(c).)  Plaintiffs in the instant action assert that the

putative classes in the CACC are "virtually identical" to the certified class in *In re Visa*

*Check.*  (CACC ¶ 106.)

---

[5]    Under the Settlement Agreements, "Released Parties" refers to Visa, Visa International, and
MasterCard, respectively, and "any past, present or future officers, directors, stockholders,
member financial institutions, agents, employees, legal representatives, trustees, parents,
associates, affiliates, subsidiaries, divisions, partners, heirs, executors, administrators,
purchasers, predecessors, successors, assigns, and any of their legal representatives."  (Visa
Settlement Agreement ¶ 1(t); MasterCard Settlement Agreement ¶ 1(v).)

**ARGUMENT**

**PLAINTIFFS' CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED TO THE EXTENT THAT THEY SEEK DAMAGES INCURRED DURING THE PERIOD PRIOR TO 2004 COVERED BY THE RELEASE OR, ALTERNATIVELY, THE PORTION OF THE PRAYER FOR RELIEF PERTAINING TO SUCH CLAIMS SHOULD BE STRICKEN**

In adjudicating a motion to dismiss under Rule 12(b)(6), the Court may consider the allegations in the complaint as well as any documents that are either incorporated into the complaint by reference, attached to the complaint as exhibits or found in the public record, such as court filings in other actions. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).[6]   Additionally, in deciding a Rule 12(b)(6) motion, the Court may consider "matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).  Judicial notice may be taken of a settlement agreement and release.  *E.g., In re Drexel Burnham Lambert Group*, 960 F.2d 285, 289 n.2 (2d Cir. 1992); *In re XO Commc'ns, Inc.*, 330 B.R. 394, 418-19 (S.D.N.Y. 2005).

In accordance with these general principles, a defendant may raise the affirmative defense of "release" by motion to dismiss—particularly when, as here, the complaint itself makes reference to the release.  *See Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (court may dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure in response to a motion "raising an affirmative defense if the defense appears

---

[6]   Of course, in connection with such a motion, the Court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the CACC Plaintiffs. *Id.*

on the face of the complaint") (internal quotation marks omitted); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint"); *Steinmetz v. Toyota Motor Credit Corp.*, 963 F. Supp. 1294, 1298-1300 (E.D.N.Y. 1997) (Spatt, J.) (dismissing under Rule 12(b)(6) claims released by plaintiff in prior class action settlement).

   Rule 12(f) of the Federal Rules of Civil Procedure provides that a party may move to strike matter from a pleading that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Following this rule, courts recognize that it is proper to strike a plaintiff's request for damages where the damages sought are unavailable as a matter of law. *See, e.g.*, *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 383 (S.D.N.Y. 2004) ("A demand for damages that are not recoverable as a matter of law may be stricken" under Rule 12(f)). Courts in this Circuit therefore regularly grant motions to strike such requests for damages. *See, e.g.*, *Sirota v. Welbilt Appliance, Inc.*, 840 F. Supp. 11, 14 (E.D.N.Y. 1994) (Wexler, J.) (striking allegations regarding claim for punitive damages where such damages were not available as a matter of law); *Davidson v. Yeshiva Univ.*, 555 F. Supp. 75, 80 (S.D.N.Y. 1982) (striking demand for damages where statute did not provide for individual damage recovery); *Quinn v. Straus Broadcasting Group, Inc.*, 309 F. Supp. 1208, 1210 (S.D.N.Y. 1970) (striking damage allegations that were in excess of statutory maximum).

   This motion is necessitated by the refusal of CACC Plaintiffs' counsel—unlike their individual plaintiff counsel counterparts (*see* n.1, *supra*)—to state clearly

what they seek.  In a case of this scope, Defendants are entitled to know the time period for which damages are sought.  It is therefore critical that the permissible period of CACC Plaintiffs' claims be clearly identified from the outset.  Those claims are predicated upon the same factual allegations that underlie *In re Visa Check* and thus may not be used as a vehicle by CACC Plaintiffs to relitigate the claims for damages released in the *In re Visa Check* Settlements.  Defendants thus respectfully submit that the release warrants the dismissal of CACC Plaintiffs' claims to the extent that they seek damages incurred during the period prior to 2004 arising out of Defendants' alleged conduct or, at a minimum, the striking of that portion of the CACC's Prayer for Relief supporting such claims.[7]

A.     **The *In Re Visa Check* Release Is Binding On All CACC Plaintiffs That Were Members Of The Class**

All of the CACC Plaintiffs that were in business prior to January 1, 2004 were members of the certified class in *In re Visa Check* and thus bound by the Settlement Agreements.  Class action settlements are personally binding on every class member, regardless of whether that class member served as a class representative or made an appearance during the course of the action.  *See Devlin v. Scardelletti*, 536 U.S. 1, 10

---

[7]   Defendants note that, depending on how this case progresses and plaintiffs' further elucidation of the factual basis for their claims, the Settlement Agreements may lend themselves to other potential motions against some or all plaintiffs in these consolidated actions (including plaintiffs in the non-class actions).  For example, the express language of the release would bar all claims arising out of any defendant's "conduct" prior to January 1, 2004, regardless of the period for which damages were sought.  As any motion relying upon the "conduct" language of the release likely is premature at this juncture, Defendants limit the instant motion to seek only an order dismissing or striking CACC Plaintiffs' claims for damages incurred during the pre-2004 period.  However, Defendants reserve all rights with respect to additional motions based upon the Settlement Agreements.

(2002) ("nonnamed class members are parties to the proceedings in the sense of being bound by the settlement").

By their terms, the Settlement Agreements bind all class members in *In re Visa Check*. The Settlement Agreements preclude all Releasing Parties from "seek[ing] to establish liability against any Released Party based, in whole or in part, upon any of the Released Claims." (Visa Settlement Agreement ¶ 28; MasterCard Settlement Agreement ¶ 30.) The "Releasing Parties" include Class Members, *i.e.* "all persons and business entities who have accepted MasterCard and/or Visa credit cards . . ." from 1992 to 2003, who did not timely exclude themselves from the action. (Visa Settlement Agreement ¶ 1(c); MasterCard Settlement Agreement ¶ 1(c).) As CACC Plaintiffs acknowledge, virtually all of those class members are also encompassed within the CACC's putative Class I damages class of "[a]ll persons, business, and other entities that have accepted Visa and/or MasterCard Credit and/or Debit Cards in the United States at any time from and after January 1, 2004." (CACC ¶¶ 97(a), 106.)[8]

Thus, as the CACC Plaintiffs and putative class members in the instant action are bound by the *In re Visa Check* Settlement Agreements, they are barred by the release from asserting claims encompassed within that release. As demonstrated below, all of the claims asserted against Defendants in the CACC are the types of claims covered by the release and are therefore barred to the extent they seek recovery for damages allegedly incurred prior to 2004.

---

[8]    To the extent that merchants in the Class I definition began accepting Visa or MasterCard payment cards after January 1, 2004, they are not bound by the *In re Visa Check* release, but also cannot assert damages for a period prior to 2004 when they did not pay any alleged overcharges.

**B.      CACC Plaintiffs' Claims Against Defendants For Pre-2004 Damages Are
Barred By The *In re Visa Check* Settlement Agreements**

        To the extent they seek damages for allegedly excessive merchant

discount fees prior to January 1, 2004 purportedly caused by Defendants' alleged

conspiracy to engage in anticompetitive interchange and rule-setting practices, the CACC

Plaintiffs have brought claims that arise out of the same mix of facts underlying the *In re

Visa Check* action.  Consequently, those claims must be barred insofar as they seek to

recover damages incurred during the period prior to 2004 that were extinguished by the

*In re Visa Check* release.

**1.      The Relevant Legal Standard And Prior Enforcement Of
The *In re Visa Check* Release**

        Claims filed by a former class member that involve the same "factual

predicate" as previously-released claims will be barred by that release.  *Wal-Mart*, 396

F.3d at 107; *see also In re Worldcom Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 2495554,

*3 (S.D.N.Y. Oct. 11, 2005) (barring new arbitration action filed by member of

settlement class that shared same factual predicate as released claims).

        Thus, it is well-established in this Circuit that enforceable class action

releases "may include claims not presented and even those which could not have been

presented as long as the released conduct arises out of the 'identical factual predicate' as

the settled conduct."  *Wal-Mart*, 396 F.3d at 107; s*ee also TBK Partners, Ltd. v. W.

Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("a court may permit the release of a

claim based on the identical factual predicate as that underlying the claims in the settled

class action even though the claim was not presented and might not have been

presentable in the class action").  In determining whether claims share the same factual

predicate, factual similarities between the claims, rather than the "overlap between

elements of claims," is dispositive.  *Wal-Mart*, 396 F.3d at 108 (emphasis removed); *see also TBK Partners*, 675 F.2d at 461 (holding that class members' claims may be barred "where there is a realistic identity of issues between the settled class action and the subsequent suit, and where the relationship between the suits is at the time of the class action foreseeably obvious to notified class members"); *Worldcom*, 2005 WL 2995554, at *3 (same).

Here, the Settlement Agreements in *In re Visa Check* provide that the class members released claims against Visa, Visa International, MasterCard, and their member banks, "including . . . claims which have been asserted or could have been asserted in this litigation which arise under or relate to any federal or state antitrust, unfair competition, unfair practices, or other law or regulation, or common law, including, without limitation, the Sherman Act."  (Visa Settlement Agreement ¶ 28; MasterCard Settlement Agreement ¶ 30.)  Thus, if CACC Plaintiffs' claims challenging Visa's and MasterCard's interchange, rule-making and network service practices (prior to January 1, 2004) were asserted or could have been asserted in *In re Visa Check* because they arose out of the same factual predicate, those claims are subject to the release.  In fact, this Court, the Second Circuit and the Ninth Circuit have already held that the *In re Visa Check* Settlement Agreements bar the same types of antitrust claims that CACC Plaintiffs raise in the instant pleading.

Initially, this Court approved the terms of the Settlement Agreements in 2003, notwithstanding objections lodged by several merchants that the release improperly barred them from pursuing in other courts price-fixing and other antitrust claims against Visa, MasterCard, and their member banks that allegedly caused excessive merchant

discount fees. *In re Visa Check*, 297 F. Supp.2d at 512, 525.[9]  Applying the "identical

factual predicate" doctrine, the Court found that in both the *Pasta Bella* and *Nu-City*

cases, plaintiffs alleged that "interchange fees are artificially (and anticompetitively) high

because of concerted activity by Visa and MasterCard in violation of section 1," and that

"both cases require proof of the anticompetitive effects of the elevated interchange rates

under a 'rule of reason' analysis." *Id.* at 513.  Accordingly, this Court held both sets of

claims barred by the release, concluding that "plaintiffs here have released all claims

based on the mix of facts that produced anticompetitive interchange rates." *Id.* at 514.[10]

       This Court further determined that the release barred not only plaintiffs'

claims against Visa and MasterCard, but also against their member banks, even though

the banks were not named as parties to the case.  The Court noted that the banks' status as

---

[9]  One set of objecting merchants (the *Pasta Bella* merchants) argued that the Settlement Agreements should not bar their claim, which was then pending in the Northern District of California under the caption *Reyn's Pasta Bella, LLC v. Visa U.S.A.*, No. 02-cv-03003 (N.D. Cal.) (filed Jun. 24, 2002), that "the setting of credit and debit card interchange fees by Visa and MasterCard . . . constitutes price-fixing in violation of the Sherman Act." *Id.* at 513.  A second set of objecting merchants (the *Nu-City* merchants) argued that the Settlement Agreements were inapplicable to their claim, then pending in the Southern District of New York under the caption *In re Visa/MasterCard Membership Rule Antitrust Litig.*, No. 01-cv-10027 (S.D.N.Y.) (filed Nov. 13, 2001), that Visa's and MasterCard's respective rules prohibiting member banks from issuing or providing services to competing card companies "inflated prices for credit card transactions." *Id.* at 515.

[10]  In so doing, this Court determined that the interchange price-fixing claim brought by the *Pasta Bella* merchants was a "virtual clone" of the tying claims that plaintiffs brought in *In re Visa Check. Id.* at 513.  It further concluded that the *Nu-City* claims similarly were founded on the same factual predicate as the claims in *In re Visa Check* since the *Visa Check* plaintiffs had argued that the alleged "tying" rules at issue in that case were "supported, reinforced, and exacerbated by specific additional anticompetitive conduct, including exclusionary behavior." *Id.* at 515.

15

non-parties "does not preclude the inclusion of the claims against those banks in the releases" because the banks contributed to the Settlement Agreements. *Id.*

On appeal, the Second Circuit affirmed the validity of the Settlements, and in particular, found that the "settlement release is enforceable against the claims in *Reyn's* and *NuCity* because the claims in those cases arose out of the identical factual predicate as the claims in this case and were adequately represented here." *Wal-Mart,* 396 F.3d at 124. Thus, "[t]he Settlement's release precludes actions for conduct occurring prior to January 1, 2004 that was or could have been alleged in the [In re Visa Check] complaint." *Id.* at 104. The Second Circuit also held that this Court was well within its discretion in approving the release of merchant claims against the banks, holding that "class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Id.* at 109 (internal quotation marks omitted).

Notwithstanding these decisions, the *Pasta Bella* plaintiffs continued to pursue their interchange fee claims in their California federal action. After the California District Court dismissed plaintiffs' claims on the basis of the *In re Visa Check* release, plaintiffs appealed to the Ninth Circuit. In a March 2006 decision, *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 442 F.3d 741 (9th Cir. 2006), the Ninth Circuit reached the same conclusion as this Court. It held that "the *Wal-Mart* release extinguishes Plaintiffs' claims because they arise from the same factual predicate and span the same time period." *Id.* at 750. In reaching this conclusion, the Ninth Circuit reasoned that "the *Wal-Mart* class action was predicated on the harm merchants suffered from the elevated

16

interchange fees caused by Defendants' anti-competitive conduct.  While Plaintiffs seek to hold Defendants liable by positing a different theory of anti-competitive conduct, the price-fixing predicate (price-fixing interchange rates) and the underlying injury are identical." *Id.* at 749.

### 2.   CACC Plaintiffs' Pre-2004 Damages Claims Are Likewise Barred

So, too, here.  CACC Plaintiffs in the instant case assert claims of interchange fee price-fixing by Defendants that are virtually identical to those held to be released by the plaintiffs in *Pasta Bella*.  CACC Plaintiffs allege that Defendants engaged in "agreements, understandings, and concerts of action between and among [Visa's and MasterCard's] issuing and acquiring members, . . . the substantial terms of which were to illegally fix, raise, maintain, or stabilize the Credit-Card Interchange Fees charged to merchants in the market for General Purpose Card Network Services."  (CACC ¶¶ 215, 222.)   Just as this Court held that the Settlement Agreements extinguished the interchange fee claims of the *Pasta Bella* plaintiffs, it should hold the interchange fee claims advanced by CACC Plaintiffs in this case to be barred insofar as they seek damages incurred during the period before January 1, 2004.

Moreover, since each of CACC Plaintiffs' other (non-price-fixing) Section 1 claims shares the same factual predicate with the claims settled in *In re Visa Check*, they should also be barred by the Settlement Agreements.  Like the claims of the merchant plaintiffs in *In re Visa Check*, all of the CACC Plaintiffs' claims against Defendants are  "predicated on the harm merchants suffered from the elevated interchange fees caused by Defendants' anti-competitive conduct."  *Reyn's Pasta Bella*, 442 F.3d at 749.

For example, in *In re Visa Check*, the merchant plaintiffs asserted that Visa, MasterCard and their members engaged in a wide variety of concerted activity that purportedly impacted the level of interchange and/or merchant discount fees allegedly paid by merchants. (*See In re Visa Check* Second Amended Consolidated Class Action Complaint ("*Visa Check* Compl."), attached to the Kitt Decl. as Exhibit C.) In addition to price-fixing allegations (*see Visa Check* Compl. ¶¶ 45, 93-97), the merchant plaintiffs challenged Visa's and MasterCard's alleged Anti-Steering and Anti-Discrimination rules (*id.* ¶¶ 74, 87-88, 118-19), certain non-competition rules (*id.* ¶¶ 50-51), the imposition of various processing fees and assessments (*id.* ¶¶ 58-59), boycotts of purportedly cheaper and superior competitors (*id.* ¶¶ 75, 78), deceptive card program designs (*id.* ¶¶ 88-96), and exercise of each network's respective market power to force merchants to accept inferior and more costly card programs (*id.*, *e.g.*, ¶¶ 146-48, 160-62, 173-75). All of this conduct allegedly compelled merchants to pay supra-competitive, exorbitant and fixed prices for card acceptance. (*See, e.g.*, *id.* ¶ 3.)

Here, CACC Plaintiffs also contend that Defendants are engaged in the same types of rule-making, bundling and exclusive dealing practices in order to keep interchange and merchant discount fees at supracompetitive levels. (*See, e.g.*, CACC ¶¶ 157, 194 (Visa's and MasterCard's "Anti-Steering" rules prevent merchants from passing the cost of Interchange Fees onto consumers, who would "otherwise seek to avoid the high cost of Defendants' Interchange Fees" and thereby "[allow] Defendants to continue their practices of collectively fixing supracompetitive, uniform Interchange fees"); *id.* ¶ 166 ("Because the costs of Payment Guarantee Services and Network-Processing Services are bundled together in the Interchange Fees that Defendants charge members of

the Classes, Interchange Fees, and thereby Merchant-Discount Fees, are higher than they would be absent these collectively-established tying and bundling practices"); *id.* ¶¶ 290-91 (since Visa or MasterCard act as "exclusive provider of Payment-Guarantee Services and Network-Processing Services to merchants that accept [Visa/MasterCard], . . . merchants pay higher prices for those services [in the form of Interchange Fees] than they would have paid in a competitive market").)

Each of these alleged practices is alleged to be a violation of Section 1, and each is alleged to have caused CACC Plaintiffs to incur injury and damages by artificially raising or maintaining the anticompetitive level of interchange fees that purportedly are included in the excessive merchant discount fees paid by merchants. As such, all of these allegations in the CACC are part of the "same mix of facts [producing] anticompetitive interchange rates" that underlie the claims released in *In re Visa Check*. 297 F. Supp 2d at 514. Thus, *all* of the CACC's claims for damages incurred during the period prior to January 1, 2004 should be barred.

In sum, the factual predicate underlying each of the CACC Plaintiffs' claims against Defendants is the same as that underlying the class claims in *In re Visa Check*. CACC Plaintiffs' claims accordingly trigger the application of the release in that case, which precludes CACC Plaintiffs from asserting any of these claims for damages incurred prior to January 1, 2004.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court enter an order dismissing with prejudice CACC Plaintiffs' claims against Defendants insofar as they seek recovery for damages incurred prior to January 1, 2004, or in the

19

alternative, striking the portion of the CACC Prayer for Relief pertaining to any such

claim.

Dated: June 9, 2006

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: /s/ Gary R. Carney
     Gary R. Carney (GC-4203)
     1285 Avenue of the Americas
     New York, N.Y. 10019-6064
     Tel:  (212) 373-3000
     Fax:  (212) 757-3990

     Kenneth A. Gallo (KG-5664)
     Eryn M. Starun
     Brett Kitt
     1615 L Street, N.W., Suite 1300
     Washington, D.C. 20036-5694
     Tel:  (202) 223-7300
     Fax:  (202) 223-7420

     **HUNTON & WILLIAMS LLP**
     Keila D. Ravelo (KR-8164)
     Wesley R. Powell (WP-7852)
     200 Park Avenue
     New York, N.Y. 10166-0005
     Tel: (212) 309-1000
     Fax: (212) 309-1100

     Attorneys for Defendants MasterCard
     Incorporated and MasterCard
     International Incorporated

**ARNOLD & PORTER LLP**


By: /s/ Robert C. Mason
     Robert C. Mason (RM-1863)
     399 Park Avenue
     New York, N.Y.  10022-4690
     Tel: (212) 715-1000
     Fax: (212) 715-1399

     Robert J. Vizas
     90 New Montgomery Street, Suite 600
     San Francisco, CA  94105
     Tel: (415) 356-3000
     Fax: (415) 356-3099

     David P. Gersch
     Mark R. Merley
     Julie B. Rottenberg
     555 12th Street, N.W.
     Washington, D.C.  20004
     Tel: (202) 942-5000
     Fax: (202) 942-5999

Attorneys for Defendant Visa U.S.A. Inc.


**LORD, BISSELL & BROOK LLP**


By: /s/ Randall A. Hack
     Randall A. Hack (RH-8627)
     Edward C. Fitzpatrick (EF-9577)
     Michael J. Gaertner
     Michael W. Kelly
     111 South Wacker Drive
     Chicago, IL  60606-4410
     Tel: (312) 443-0700
     Fax: (312) 443-0336

     Allen C. Wasserman
     Joseph N. Froehlich
     885 Third Avenue, 26th Floor
     New York, NY  1022
     Tel: (212) 812-8325
     Fax: (212) 947-1202

21

Jackie Redin Klein
300 South Grand, Suite 800
Los Angeles, CA  90071-3119
Tel: (213) 485-1500
Fax: (213) 485-1200

**DICKSTEIN SHAPIRO MORIN
   & OSHINSKY LLP**
Richard J. Leveridge (RL-3336)
Jodi Trulove (JT-1330)
Ann-Marie Luciano (AL-8693)
2101 L Street, N.W.
Washington, D.C.  20037-1526
Tel: (202) 785-9700
Fax: (202) 887-0689

Attorneys for Defendant Visa International
Service Association

**MORRISON & FOERSTER**


By: /s/ Mark P. Ladner
    Mark P. Ladner (ML-8404)
    Michael B. Miller (MM-1154)
    1290 Avenue of the Americas
    New York, N.Y.  10104-0050
    Tel: (212) 468-8000
    Fax: (212) 468-7900

Attorneys for Defendants Bank of America,
NA., BA Merchant Services LLC (f/k/a
Defendant National Processing, Inc.), Bank
of America Corporation

**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM, LLP**

By: /s/ Peter E. Greene
    Peter E. Greene (PG-8125)
    Cyrus Amir-Mokri (CA-6865)
    Peter S. Julian (PJ-3443)
    Four Times Square
    New York, N.Y.  10036
    Tel: (212) 735-3000
    Fax: (212) 735-2000

Attorneys for Defendants Chase Bank USA,
N.A., Chase Manhattan Bank USA, NA.,
JPMorgan Chase & Co.

**O'MELVENY & MYERS LLP**

By: /s/ Andrew J. Frackman
    Andrew J. Frackman (AF-4276)
    Edward D. Hassi (EH-5339)
    Times Square Tower
    7 Times Square
    New York, N.Y.  10036
    Tel: (212) 326-2000
    Fax: (212)-326-2061

    Richard G. Parker
    1625 Eye Street, N.W.
    Washington, D.C. 20006
    Tel: (202) 383-5380
    Fax: (202) 383-5414

Attorneys for Defendants Capital One Bank
Capital One F.S.B., and Capital One
Financial Corp.

23

**SIDLEY AUSTIN LLP**


By: /s/ Benjamin R. Nagin

Benjamin R. Nagin (BN-0539)
787 Seventh Ave
New York, N.Y.  10019
Tel: (212) 839-5300
Fax: (212) 839-5599

David F. Graham
Eric H. Grush
One South Dearborn Street
Chicago, IL  60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Attorneys for Defendants Citigroup Inc.,
Citicorp, and Citibank N.A.


**KUTAK ROCK LLP**


By: /s/ Richard P. Jeffries

Richard P. Jeffries (RJ-2590)
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186
Tel: (402) 346-6000
Fax: (402) 346-1148

Attorneys for Defendant First National Bank
of Omaha

24

**WILMER CUTLER PICKERING HALE
AND DORR LLP**


By: /s/ Christopher R. Lipsett
    Christopher R. Lipsett (CL-4818)
    David S. Lesser (DL-2928)
    399 Park Avenue
    New York, N.Y.  10022
    Tel: (212) 230-8800
    Fax: (212) 230-8888

    William J. Kolasky
    A. Douglas Melamed
    Ali M. Stoeppelwerth
    1875 Pennsylvania Ave., N.W.
    Washington, D.C.  20006
    Tel: (202) 663-6000
    Fax: (202) 663-6363

Attorneys for HSBC Finance Corporation


**SHEARMAN & STERLING LLP**


By: /s/ Wayne D. Collins
    Wayne D. Collins (WC-0518)
    Lisl J. Dunlop (LD-4116)
    599 Lexington Avenue
    New York, N.Y.  10022-6069
    Tel: (212) 848-4000
    Fax: (212) 848-7179

Attorneys for Defendant Juniper Financial
Corp.

**JONES DAY**

By: /s/ John M. Majoras
    John M. Majoras (JM-9499)
    Carmen M. Guerricagoitia
    51 Louisiana Avenue, N.W.
    Washington, D.C.  20001
    Tel: (202) 879-3939
    Fax: (202) 626-1700

Attorneys for Defendants National City
Corporation, National City Bank of
Kentucky

**EDWARDS ANGELL PALMER
    & DODGE LLP**

By: /s/ Patricia A. Sullivan
    Patricia A. Sullivan (PS-2718)
    Florence A. Crisp (FC-5805)
    2800 Financial Plaza
    Providence, R.I.  02903
    Tel: (401) 276-6437
    Fax: (888) 325-9067

Attorneys for Defendants Providian
National Bank, Providian Financial
Corporation, and Washington Mutual, Inc.

**ZELDES, NEEDLE & COOPER, P.C.**

By: /s/ Jonathan B. Orleans
    Jonathan B. Orleans (JO-0477)
    1000 Lafayette Blvd., Suite 500
    Bridgeport, CT  06601
    Tel: (203) 333-9441
    Fax: (203) 333-1489

Attorney for Defendant Texas Independent
Bancshares, Inc.

26

**ALSTON & BIRD LLP**


By: /s/ H. Stephen Harris, Jr.
     H. Stephen Harris, Jr. (HH-0584)
     Teresa T. Bonder
     1201 W. Peachtree Street, N.W.
     Atlanta, GA  30309
     Tel: (404) 881-7000
     Fax: (404) 881-7777

     Michael E. Johnson (MJ-0299)
     90 Park Avenue
     New York, N.Y.  10016
     Tel: (212) 210-9400
     Fax: (212) 210-9444

Attorneys for Defendants Wachovia
Bank, NA., Wachovia Corporation, and
SunTrust Bank


**LATHAM & WATKINS LLP**


By: /s/ Daniel M. Wall
     Daniel M. Wall (DW-6180)
     Joshua N. Holian (JH-0663)
     Erica T. Grossman (EG-7675)
     505 Montgomery Street
     Suite 1900
     San Francisco, CA  94111-2562
     Tel: (415) 391-0600
     Fax: (415) 395-8095

     Eric J. McCarthy (EM-1244)
     Jason D. Cruise (JC-2726)
     555 Eleventh Street, N.W.
     Suite 1000
     Washington, D.C. 20004-1304
     Tel: (202) 637-2200
     Fax: (202) 637-2201

Attorneys for Defendant Wells Fargo
& Company