UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE                                MASTER FILE NO. 1:05-md-1720-JG-JO

PAYMENT CARD INTERCHANGE FEE
AND MERCHANT-DISCOUNT
ANTITRUST LITIGATION

This Document Relates To: All Class Actions

| | |
|---|---|
| 1:05-cv-03800 | 1:05-cv-05083 |
| 1:05-cv-03924 | 1:05-cv-05153 |
| 1:05-cv-04194 | 1:05-cv-05207 |
| 1:05-cv-04520 | 1:05-cv-05866 |
| 1:05-cv-04521 | 1:05-cv-05868 |
| 1:05-cv-04728 | 1:05-cv-05869 |
| 1:05-cv-04974 | 1:05-cv-05870 |
| 1:05-cv-05069 | 1:05-cv-05871 |
| 1:05-cv-05070 | 1:05-cv-05878 |
| 1:05-cv-05071 | 1:05-cv-05879 |
| 1:05-cv-05072 | 1:05-cv-05880 |
| 1:05-cv-05073 | 1:05-cv-05881 |
| 1:05-cv-05074 | 1:05-cv-05882 |
| 1:05-cv-05075 | 1:05-cv-05883 |
| 1:05-cv-05076 | 1:05-cv-05885 |
| 1:05-cv-05077 | 1:06-cv-1829 |
| 1:05-cv-05080 | 1:06-cv-1830 |
| 1:05-cv-05081 | 1:06-cv-1831 |
| 1:05-cv-05082 | 1:06-cv-1832 |

---

**CLASS PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,
ALTERNATIVELY TO STRIKE PLAINTIFFS' PRE-2004 DAMAGES CLAIMS**

MP1 10041128.6

# **TABLE OF CONTENTS**

**Page**

I.   FACTUAL BACKGROUND ................................................................................. 2

    A.   Visa Check/MasterMoney Antitrust Litigation ..................................... 2

        1.   Merchants Sue Visa and MasterCard Over Their Illegal Tying
            Practices ............................................................................... 2

        2.   Visa, MasterCard, and Their Member Banks Agree to Increase
            Interchange Fees in Order to Fund the Visa Check Settlement ................. 5

    B.   Settlement and Approval by this Court and the Second Circuit ............................ 6

        1.   This Court did decide that Interchange-Fee price-fixing claims
            could be released by the Visa Check class............................................. 6

        2.   Other issues bearing on the scope of the Visa Check Settlement
            remain unresolved ................................................................... 7

    C.   Summary of Disputed Facts ................................................................ 7

II.  DEFENDANTS' BURDEN TO PROVE THEIR AFFIRMATIVE DEFENSES............. 8

III. THE VISA CHECK SETTLEMENT AND RELEASE DID NOT EXTINGUISH
    CLAIMS BASED ON CONDUCT THAT HAD NOT OCCURRED AT THE
    TIME OF SETTLEMENT ................................................................................. 10

    A.   There Are Material Facts In Dispute That Will Shed Light on Whether the
        Release Extinguishes Claims that Could Not Have Been Asserted in the
        Visa Check Case ................................................................................ 10

        1.   The Release is Ambiguous on its Face ................................................... 10

        2.   The Release extinguishes only conduct concerning those claims
            that could have been asserted in Visa Check ........................................... 11

    B.   Claims Relating to the Defendants' August 1, 2003, Price-Fixing
        Agreement Could not have been Asserted in Visa Check and Therefore
        were Not Released ................................................................................ 12

    C.   Claims that were not Asserted in the Visa Check Class's Last Amended
        Complaint Could not have been Asserted in the Litigation and Therefore
        were not Released by the Settlement and Release ........................................... 14

    D.   Principles of Equity Prevent Defendants from Using the Visa Check
        Release to Extinguish Claims Based on Post-Settlement Price-Fixing
        Agreements ....................................................................................... 16

IV.  ALTERNATIVELY, THE SETTLEMENT AGREEMENT VIOLATES DUE
    PROCESS BECAUSE THE NOTICE OF PENDENCY WAS INADEQUATE
    TO INFORM ABSENT CLASS MEMBERS OF THE SCOPE OF THE
    SETTLEMENT ................................................................................................ 18

A.   Absent Class Members Must Receive Notice and an Opportunity to Opt-out of Rule 23(b)(2)(3) Class Actions ............................................................... 18

    1.   Notice and Opt-Out Rights Protect the Due-Process Rights of Absent Class Members .......................................................................... 18

    2.   Due Process Demands an Adequate Description of the Class Action Litigation and the Opportunity to Opt-out .................................... 19

B.   The Notice of Pendency did not inform absent class members that they had to opt-out of the Visa Check/MasterMoney litigation to preserve their Interchange Fee price-fixing claims.................................................................. 20

    1.   The Visa Check Notice of Pendency Did Not Adequately Inform Absent Class Members that Their Claims Were at Stake. ........................ 20

    2.   Equity Requires that the Notice of Pendency be Construed Strictly Against the Defendants .......................................................................... 22

## TABLE OF AUTHORITIES

**Cases**   **Page**

*Armstrong v. Rohn & Haas Co.,*
   349 F. Supp. 2d 71 (D. Mass 2004) .......................................................................... 13, 14, 17

*Borger v. Yamaha Int'l Corp.,*
   625 F.2d 390 (2d Cir. 1980).................................................................................... 10, 12, 13, 14

*Brown v. Ticor Title Ins. Co.,*
   982 F.2d 386 (9th Cir. 1992) ............................................................................................... 18

*Burger King Corp. v. Horn & Hardart Co.,*
   893 F.2d 525 (2d Cir. 1990)................................................................................................ 10

*CIBC World Markets Corp. v. TechTrader, Inc.,*
   183 F. Supp. 2d 605 (S.D.N.Y. 2001).................................................................................. 11

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)............................................................................................................. 13

*Clarke v. Max Advisors, LLC,*
   235 F. Supp. 2d 130 (N.D.N.Y. 2002) ............................................................................... 1, 8

*Collins v. Harrison Bode,*
   303 F.3d 429 (2d Cir. 2002)............................................................................................... 10

*Cornwell Quality Tools Co. v. C.T.S. Co., Inc.,*
   446 F.2d 825 (9th Cir. 1971) ...................................................................................... 14, 15, 16

*Deckard v. General Motors Corp.,*
   307 F.3d 556 (7th Cir. 2002) ............................................................................................... 9

*In re Diet Drugs Prod. Liability Litig.,*
   369 F.3d 293 (3d Cir. 2004).......................................................................................... 19, 20, 23

*Eskofot A/S v. E.I. DuPont De Nemours & Co.,*
   872 F. Supp. 81 (S.D.N.Y. 1995) ........................................................................................ 9

*Flintkote Co. v. Lysfjord,*
   246 F.2d 368 (9th Cir. 1957) .............................................................................................. 14

*Fowlkes v. Adamec,*
    432 F.3d 90 (2d Cir. 2005) ................................................................. 9

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,*
    224 F. Supp. 2d 520 (W.D.N.Y. 2002) ............................................. 16

*Gomez v. Toledo,*
    446 U.S. 635 (1980) ............................................................................ 9

*Houbigant, Inc. v. Development Specialists, Inc.,*
    229 F. Supp. 2d 208 (S.D.N.Y. 2002) ................................................ 9

*Joint Venture Asset Acquisition v. Zellner,*
    808 F. Supp. 289, 302 (S.D.N.Y. 1992) ............................................. 8

*Lipsky v. Commonwealth United Corp.,*
    551 F.2d 887 (2d Cir. 1976) ............................................................... 9

*Manavazian v. ATEC Group, Inc.,*
    160 F. Supp. 2d 468 (E.D.N.Y. 2001) ............................................... 9

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
    514 U.S. 52 (1995) ............................................................................ 12

*Maywalt v. Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1995) ............................................................. 20

*Mullane v. Central Hanover Bank & Trust,*
    339 U.S. 306 (1950) .................................................................... 18, 19

*Nelson v. Stahl,*
    173 F. Supp. 2d 153 (S.D.N.Y. 2001) ......................................... 16, 17

*In re Nissan Motor Corp. Antitrust Litig.,*
    552 F.2d 1088, 1104 (5th Cir. 1977) ................................. 19, 20, 21, 22

*Official Committee of the Unsecured Creditors of Color Tile, Inc.*
*v. Coopers & Lybrand, LLP,*
    322 F.3d 147 (2d Cir. 2003) ............................................................... 9

*Pani v. Empire Blue Cross Blue Shield,*
    152 F.3d 67 (2d Cir. 1998) ................................................................. 9

*Peres v. Oceanside Union Free Sch. Dist.,*
    426 F. Supp. 2d 15 (E.D.N.Y. 2006) .................................................. 9

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................................... 22

*Red Ball Interior Demolition Corp. v. Palmadessa*,
   173 F.3d 481 (2d Cir. 1999)................................................................................... 10, 16

*Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*,
   442 F.3d 741 (9th Cir. 2006) ...................................................................................passim

*Richards v. Jefferson County*,
   517 U.S. 793 (1996)............................................................................................... 18, 19

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)........................................................................................... 8

*Shayne v. Madison Square Garden Corp.*,
   491 F.2d 397 (2d Cir. 1974)........................................................................................ 14

*TBK Partners, Ltd. v. W. Union Corp.*,
   675 F.2d 456 (2d Cir. 1982).................................................................................... 7, 12

*United States v. Albertini*,
   472 U.S. 675 (1985)................................................................................................... 20

*United States v. Visa*,
   163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003) ............................... 6

*In re Visa Check/MasterMoney Antitrust Litig.*,
   2003-1 Trade Cases (CCH) ¶¶ 96,062 (E.D.N.Y. 2003) ......................................................... 4

*In re Visa Check/MasterMoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................passim

*In re Visa Check/MasterMoney Antitrust Litig.*,
   192 F.R.D. 68 (E.D.N.Y. 2000)................................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................passim

*Wolfert v. Transamerica Home First, Inc.*,
   439 F.3d 165 (2d Cir. 2006)......................................................................................... 22

## U.S. Constitution

U.S. Const. Ams. 5................................................................................................................. 18

U.S. Const. Ams. 14 ........................................................................................... 18

**Statutes**

15 U.S.C. § 1 ...................................................................................................... 2

15 U.S.C. § 15(a) ............................................................................................. 14

15 U.S.C. § 15(b) .......................................................................... 2, 13, 15, 16

**Other Authorities**

*Corbin* on Contracts § 24.22 .................................................................... 12, 13

Jeanette Cox,
    *Information Famine, Due Process, and the Revised* Class *Action Rule: When Should Courts Provide a Second Opportunity to Opt-out?*, 80 Notre Dame L. Rev. 377 (2004) .................... 22

Kenneth W. Dam,
    Class *Action Notice: Who Needs It?*, 1974 S. Ct. Rev. 97 ....................................... 18

Todd B. Hilsee et al.,
    *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice is More than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359 (2005) ......................................................................... 19

Restatement (Second) of Contracts § 203(a) ............................................. 11

Restatement (Second) of Contracts § 203(b) ............................................. 12

George Rutherglen,
    *Better Late Than Never: Notice and Opt-Out at the Settlement Stage of* Class *Actions*, 71 N.Y.U.L. Rev. 258 (1996) ......................................................... 19, 22

Patrick Woolley,
    *Rethinking the Adequacy of Adequate Representation*, 75 Tex. L. Rev. 571 .................... 18, 19

Wright & Miller,
    5A Federal Practice and Procedure: Civil 2d § 1357 ................................................. 9

**Rules**

Fed. R. Civ. P 56(f) .......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................................................. 9

Fed. R. Civ. P. 12(c) ........................................................................................................... 1, 9

Fed. R. Civ. P. 12(f) ................................................................................................................ 9

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 18

Fed. R. Civ. P. 23, 1966 ........................................................................................................ 19

The Class Plaintiffs' respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss or, alternatively, to strike Plaintiffs' Pre-2004 damages claims contained in Plaintiffs' First Consolidated Amended Class Action Complaint ("FCACAC").

## PRELIMINARY STATEMENT

The Plaintiff Class in this action ("the MDL 1720 Class") brings several federal and state antitrust-law claims that challenge the price-fixing of Credit and Debit Card Interchange Fees and several other anticompetitive practices of Visa, MasterCard, and their Member Banks. *See* FCACAC ¶¶ 213-47 (Declaration of Ryan W. Marth, dated July 21, 2006, Ex. 1). The Class seeks all damages that are not barred by the statute of limitations or the Settlement and Release and Final Judgment in *In re Visa Check/MasterMoney Antitrust Litig.* ("*Visa Check*"). *See* FCACAC Prayer for Relief at ¶ D, p. 87; *see also, e.g.,* Answer of Visa U.S.A., Ninth Defense and Twelfth Defense. (Marth Decl., Ex. 2.)

Although captioned as a motion to dismiss or strike, Defendants essentially seek summary judgment of their affirmative defenses based on the *Visa Check* Settlement.[1]  *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 144 (N.D.N.Y. 2002).[2] Defendants' motion should be denied, however, because they have not and cannot satisfy the standard for summary judgment, let alone for dismissing claims or striking requests for relief, because the merits of their affirmative defenses are riddled with unresolved legal issues and genuine factual disputes such as the following:[3]

(1)     Whether the *Visa Check* Settlement was intended to or actually does bar claims of the MDL 1720 Class arising from anticompetitive acts of Defendants occurring *after* the date of the settlements (*i.e.* after April 28, 2003, for MasterCard and after

---

[1] *See* Fed. R. Civ. P. 12(c) ( if matters outside the pleadings are presented to the court on a Rule 12 motion, the motion shall be treated as one for summary judgment under Rule 56).
[2] The *Visa Check* Settlement Agreements with both MasterCard and Visa contain choice of law provisions mandating application of New York law. (Marth Decl., Exs. 3 and 4.)
[3] *See* Declaration of K. Craig Wildfang dated July 21, 2006, submitted pursuant to Fed. R. Civ. P 56(f).

April 30, 2003, for Visa) and, therefore, could not have been asserted by the *Visa Check* class Plaintiffs in the previous case.

(2)     Whether the *Visa Check* Settlement was intended to or actually does bar claims of the MDL 1720 Class arising from anticompetitive acts of Defendants occurring *after* the date of the last Amended Complaint of the *Visa Check* class and, therefore, could not have been asserted by the *Visa Check* class in the previous case. *See* 15 U.S.C. § 15(b); *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 442 F.3d 741, 749 (9th Cir. 2006).

(3)     Whether there are equitable grounds for this Court to decline to enforce the *Visa Check* Settlement under the circumstances of this case, because Defendants Visa, MasterCard, and the large Member Banks that control those Networks, fraudulently induced acceptance of the *Visa Check* Settlement by promising to pay the *Visa Check* class Plaintiffs the sum of $3 billion over a ten-year period, while simultaneously entering into a new price-fixing agreement to increase the level of Credit Card Interchange Fees to be charged to the same Class Plaintiffs in order to fund those settlement payments.[4]

(4)     Whether the *Visa Check* Settlement bars claims of the MDL 1720 Class Plaintiffs, given the constitutionally inadequate Notice of Pendency of the *Visa Check* action, especially when the form of that notice was proposed to this Court by Visa and MasterCard.

## I.     FACTUAL BACKGROUND

### A.     Visa Check/MasterMoney Antitrust Litigation

1.     Merchants Sue Visa and MasterCard Over Their Illegal Tying Practices

In 1996, a nationwide class of merchants, led by Wal-Mart, sued Visa and MasterCard, claiming that the Defendants' "Honor-All-Cards" ("HAC") rule constituted illegal tying in violation of the Sherman Act, 15 U.S.C. § 1. *See Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ("*Visa Check*"). After two years of litigation, the *Visa Check* class filed a Third Amended Consolidated Class Action Complaint on May 26, 1999 ("*Visa Check* TACCAC") (Marth Decl., Ex. 5) which, like the previous class-action complaints, asserted claims based upon the illegality of the defendants' HAC rules that "tied" merchants'

---

[4] The MDL 1720 Class expects that the facts will show that most, if not all, merchants were actually paying higher effective average Interchange Fees for Visa and MasterCard debit and credit-card transactions immediately after the purported Settlement and Release and Final Judgment in *Visa Check* than they were before that purported settlement.

acceptance of credit cards and debit cards. The *Visa Check* TACCAC made reference to "collectively-fixed" Interchange Fees and so-called "anti-discrimination rules," but the *Visa Check* class did not assert a claim alleging that the manner by which those fees or restraints were imposed by Visa and MasterCard constituted illegal price-fixing under Section 1 of the Sherman Act. *Id.* at 513-14 (citing TACCAC ¶ 45); TACCAC ¶¶ 74, 87. Nor did the TACCAC assert claims based on the unlawful bundling of separate services together under the label "Interchange Fees," or the monopolization of the General-Purpose-Card-Network-Services market.

Based upon the claims asserted in the *Visa Check* TACCAC, this Court certified the plaintiff class (the *Visa Check* class) in February 2000 and that decision was upheld by the Second Circuit. *Visa Check*, 192 F.R.D. 68, 90 (E.D.N.Y. 2000), *aff'd*, 280 F.3d 124, 147 (2d Cir 2001). After the *Visa Check* class was certified, a Notice of Pendency, which contained a right for class members to opt-out of the litigation, was sent to absent class members. (Marth Decl., Ex. 6; *see also* Wildfang Decl., ¶ 18 & Ex. 6.) This notice reflected the narrow claims asserted in the *Visa Check* TACCAC and the litigation's focus on the HAC rule and described the case as follows:

> The allegations against Visa and MasterCard are set forth in the Second Amended Consolidated Class Action Complaint filed with the Court on May 26, 1999. Plaintiffs claim that Visa and MasterCard, individually, and in conspiracy with each other and with their member banks, have *violated the Federal Antitrust Laws by forcing merchants to accept Visa and/or MasterCard-branded credit cards for payment, also to accept Visa and/or MasterCard-branded debit cards for payment, and by conspiring and attempting to monopolize the market for general purpose point of sale debit cards.* Plaintiffs claim that *defendants' actions have caused merchants to pay excessive fees on Visa and MasterCard credit and debit transactions, have caused merchants to pay excessive fees on online pin-based debit transactions (which allegedly have been inflated as part of defendants' alleged conduct), and have injured competition, merchants and consumers.* Plaintiffs seek: (1) an injunction . . ., and (2) the recovery of damages for the alleged excess portion of fees paid on Visa and MasterCard credit and debit transactions, and on on-line pin-based debit transactions. . . .

Notice of Pendency ¶ 3 (*emphasis added*). The Notice made no mention of Interchange-Fee price-fixing claims.

In April 2003, this Court denied the defendants' motion for summary judgment, granted substantial portions of the *Visa Check* class plaintiffs' motion for summary judgment, and set a firm trial date of April 28, 2003.  *Visa Check*, 2003-1 Trade Cases (CCH) ¶¶ 96,062-63 (E.D.N.Y. 2003); (Marth Decl., Ex. 7.).  *Visa Check*, 2003-1 Trade Cases (CCH) ¶¶ 96,062-63 (E.D.N.Y. 2003). On the eve of trial, the *Visa Check* class defendants agreed to settlements whereby the defendants agreed to: pay the *Visa Check* class the gross sum of $3 billion over a ten-year period; decrease Interchange Fees on off-line debit cards by an average of approximately 40 basis points for a four-month period; and eliminate the HAC rules. In exchange, the defendants received a release of certain of the *Visa Check* class's claims. The parties entered into Memoranda of Understanding on the principal terms of the settlements dated April 28 and 30, 2003. (Marth Decl., Exs. 1 & 2.)

The settlements were consummated by definitive written settlement agreements dated effective June 4, 2003. The settlement agreements contained a release provision ("the Release") that purported to extinguish absent class members' claims that "relat[e] in any way to any conduct prior to January 1, 2004, concerning any claims alleged in the Second Amended Consolidated Class Action Complaint [including] claims which have been asserted or could have been asserted in this litigation." *Visa Check*, 297 F. Supp. 2d at 512 (quoting Visa Settlement ¶ 28; MasterCard Settlement ¶ 30) (*emphasis added*).

A Notice of Settlement was then provided to the absent *Visa Check* class members. The Notice advised that the settlement released:

> all manner of claims. . .that any [class member] ever had, now has or hereafter
> can, shall or may have, relating in any way to any conduct prior to January 1,

- 4 -

2004, concerning any claims alleged in the Complaint or any of the complaints consolidated therein, including, without limitation, claims which have been asserted or could have been asserted in this litigation. . . ."

*Visa Check*, 396 F.3d 96, 103 n.5 (2d Cir. 2005) (quoting Notice of Settlement). The language of the Notice of Settlement was substantially broader than the Notice of Pendency that absent class members received after the class was certified. Those *Visa Check* class members that accepted Visa and MasterCard payment cards and received the Notice of Pendency in 2002 did not have the opportunity to opt out at the later settlement stage. Those class members that began accepting Payment Cards after the 2002 Notice of Pendency was sent out, on the other hand, did receive an opportunity to opt-out of the settlement at that time.

        2.    Visa, MasterCard, and Their Member Banks Agree to Increase Interchange Fees in Order to Fund the *Visa Check* Settlement

Upon information and belief, at or about the time that Visa and MasterCard entered into the *Visa Check* Memoranda of Understanding, Visa, MasterCard, and their Member Banks agreed to raise Interchange Fees on Credit Cards by an amount sufficient to offset the costs of the settlement. (Wildfang Decl., ¶¶ 10-15.) These price-fixing agreements to increase Credit-Card Interchange Fees were secretly entered into and not disclosed to the *Visa Check* class or its counsel at the time of settlement. *Id.* At the time of the Memorandum of Understanding, the *Visa Check* class could not have known that Visa, MasterCard, and their Member Banks had conspired or would soon conspire to deprive the class of the entire economic value of the purported settlement. Certainly the *Visa Check* class could not have asserted in April 2003, when it entered the Memorandum of Understanding, a claim for damages for price-fixing agreements which had not yet occurred. The precise timing and motivation of the decision by Visa, MasterCard, and their Member Banks to increase their collectively set Interchange Fees after the

- 5 -

MP1 10041128.6

Memorandum of Understanding are not apparent from the public record. These facts are only available through additional discovery in the present case.

**B.** **Settlement and Approval by this Court and the Second Circuit**

After reaching agreements, the *Visa Check* Settlement was then submitted to this Court for approval. During the fairness hearing, several *Visa Check* class members objected to the settlement, including one party (*Reyn's Pasta Bella*) that had sued Visa, MasterCard, and several of their Member Banks for fixing Credit- and Debit-Card Interchange Fees.[5] As to that objector, this Court concluded that the settlement properly released Interchange Fee price-fixing claims prior to January 1, 2004, because those claims were "a virtual clone of the centerpiece of [the *Visa Check*] case." *Visa Check*, 297 F. Supp. 2d at 513. This Court ultimately approved the settlement and the Second Circuit affirmed. *Id.* at 526, *aff'd*, 396 F.2d 96, 124.

Yet, even though the Interchange Fee price-fixing claim was found to be a virtual clone of the "centerpiece" of the *Visa Check* litigation, the *Visa Check* Notice of Pendency—the Constitutionally-mandated notice that informed absent class members of the litigation and their right to opt-out—did not even mention Interchange Fees, or the fact that the litigation would affect Interchange Fee price-fixing claims. Notice of Pendency ¶ 3 (describing action).

      1.    This Court did decide that Interchange-Fee price-fixing claims could be released by the *Visa Check* class

The Court's overruling of the *Reyn's Pasta Bella* objections to the scope of the release was limited to one narrow issue: whether Interchange-Fee price-fixing claims could have been asserted in the *Visa Check* litigation and therefore could have been released by a settlement of that litigation. *Visa Check*, 297 F. Supp. 2d at 512. Relying on Second Circuit precedent that a

---

[5] Another party, NuCity Publications, objected that its claims were improperly released by the *Visa Check* settlement. NuCity sought relief for merchants based upon Visa and MasterCard's exclusionary rules, which previously had been challenged in *United States v. Visa*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003).

class-action settlement may release any claim that relies on the same factual predicate as the class litigation, this Court concluded that the *Visa Check* Settlement could have released Interchange-Fee price-fixing claims and therefore that Interchange-Fee price-fixing claims were released by the settlement. *Visa Check*, 297 F. Supp. 2d at 512 (citing *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)). The Second Circuit affirmed this narrow ground for releasing Interchange Fee price-fixing claims. *Visa Check*, 396 F.3d at 107-09 (affirming this Court's approval of the Settlement based on the identical factual predicate doctrine).

> 2.    Other issues bearing on the scope of the *Visa Check* Settlement remain unresolved.

There are several issues that were not before this Court in connection with the *Visa Check* Settlement approval process and therefore remain unresolved. First, this Court's decision did not address the legal effect of the Settlement on Visa and MasterCard's August 2003 price-fixing agreement that increased Credit-Card Interchange Fees to fund the *Visa Check* Settlement. Second, this Court was not called upon to weigh the equitable considerations that militated against insulating that price-fixing agreement from the antitrust laws. Third, the Court's decision approving Settlement decided only which legal claims had actually been released by the settlement and did not address the temporal scope of the claims that were released. *Visa Check*, 297 F. Supp. 2d at 512. Finally, this Court was not presented with a challenge to the adequacy of the Notice of Pendency and did not decide the adequacy of that notice. Each of these legal and factual issues are now before this Court.

**C.    Summary of Disputed Facts**

There are several disputed fact issues bearing on the scope of the *Visa Check* Settlement, which settlement forms the lynchpin of Defendants' motion to dismiss or strike. The following

- 7 -

disputed issues require further development through fact discovery and prevent the resolution of the issues above on a Rule 12(b)(6) or Rule 56 motion:[6]

- The timing and purpose of Defendants' decision to collectively-fix higher Credit-Card Interchange Fees after the *Visa Check* settlement

- The disclosures (or lack thereof) that Defendants' counsel made to the *Visa Check* class counsel prior to the settlement regarding their plans to fund the *Visa Check* settlement with new Credit-Card Interchange-Fee price-fixing agreements.

- Whether Defendants and *Visa Check* class counsel intended for the *Visa Check* release to extinguish absent class members' claims that could not have been asserted in that case.

- Whether the drafters of the Notice of Pendency intended for the Notice to inform absent class members that their Interchange-Fee price-fixing claims were at stake in the litigation.

## ARGUMENT

## II.   <u>DEFENDANTS' BURDEN TO PROVE THEIR AFFIRMATIVE DEFENSES</u>

Defendants base their motion on the affirmative defenses of release and accord and satisfaction. (Defs. Br. at 9.) Hence, Defendants have the burden of demonstrating that the MDL 1720 Class's claims for pre-2004 damages must be released. *Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 144 (N.D.N.Y. 2002) (under New York law, the affirmative defense of release must be proven by the party asserting it; *see also Peres*, 426 F. Supp. 2d at 22. Because the Defendants' motion asserts a defense for which they bear the burden of proof, this Court may consider matters incorporated by reference or integral to the claim, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.[7] *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); Wright & Miller, 5A Federal Practice and Procedure:

---

[6] For a complete description of the disputed issues of material fact, *see* Declaration of K. Craig Wildfang.

[7] To be certain, the MDL 1720 Class contends that equity precludes the enforcement of the Settlement because the defendants concealed their intention to nullify the *Visa Check* monetary relief with a new price-fixing agreement. To the extent that a plaintiff argues that a release is void or voidable because of fraud or equitable considerations, the plaintiff has the burden of proof by a preponderance of the evidence. *See Joint Venture Asset Acquisition v. Zellner*, 808 F. Supp. 289, 302 (S.D.N.Y. 1992). But once a plaintiff has put into record some evidence indicating fraud, the defendant must put forth "real evidence" to sustain its burden to show the enforceability of the release. *Id.* (internal citations omitted).

Civil 3d § 1357 at 376 (2004). These items may properly be considered because when a defendant asserts an affirmative defense at the Rule 12 stage, it is essentially seeking judgment in its favor, which cannot be granted if there are any material facts in dispute.[8] *See Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980); *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002). Since the Defendants themselves present materials outside the pleadings, this motion must be treated as a motion under Rule 56. *See* Fed. R. Civ. P. 12(c).

Even if a defendant's affirmative defense could be granted on the pleadings, the court should apply the general rule that dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts …which would entitle [it] to relief." *Fowlkes v. Adamec*, 432 F.3d 90, 95 (2d Cir. 2005). *See also Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) . In ruling on such a motion, the court grants all reasonable inferences in favor of the plaintiff. *Fowlkes*, 432 F.3d at 95; *Manavazian v. ATEC Group, Inc.*, 160 F. Supp. 2d 468, 476-77 (E.D.N.Y. 2001). Courts in this circuit employ a similarly strict standard on motions to strike portions of pleadings under Rule 12(f), granting such motions only when there is not "one possibility that the pleading could form the basis for admissible evidence." *Eskofot A/S v. E.I. DuPont De Nemours & Co.*, 872 F. Supp. 81, 94 (S.D.N.Y. 1995) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Accordingly, if disputed issues of material fact exist, a court should neither dismiss claims under Rule 12(b)(6) nor strike allegations under Rule 12(f).

---

[8] Defendants claim that the motion to dismiss is appropriate where an affirmative defense arises in the complaint itself, citing *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003); and *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). These cases, in turn, cite to Wright and Miller, Federal Practice and Procedure. According to Wright and Miller, "the problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists." Wright & Miller, 5A Federal Practice and Procedure: Civil 2d § 1357 at 351 (1990); *see also Houbigant, Inc. v. Development Specialists, Inc.*, 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002) (denying motion to dismiss because the defendant's res judicata defense was not set forth in the complaint). The choice of the MDL 1720 Class to anticipate an affirmative defense does not allow Defendants to gain summary dismissal of some of the Class's damages claims at the Rule 12 stage.

- 9 -

III.   **THE *VISA CHECK* SETTLEMENT AND RELEASE DID NOT EXTINGUISH CLAIMS BASED ON CONDUCT THAT HAD NOT OCCURRED AT THE TIME OF SETTLEMENT.**

The *Visa Check* Settlement should not be interpreted to release claims arising from Defendants' subsequent agreement to collectively-fix higher Interchange-Fee levels, which effectively eviscerated the *Visa Check* class's monetary relief. The *Visa Check* Release, by its terms, extinguished only claims based on conduct "concerning any claims. . . which have been asserted or could have been asserted in this litigation. . ." *Visa Check*, 396 F.3d at 103 n.5. The previous judicial rulings on the *Visa Check* Settlement embrace this interpretation, *Visa Check*, 297 F. Supp. 2d at 512-13, *aff'd*, 396 F.3d 104; *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 442 F.3d 741, 749 (9th Cir. 2006), as do Defendants in their brief. (Defs. Br. at 14.) But the *Visa Check* class could not have asserted claims in the *Visa Check* litigation based on conduct that had not yet occurred. *See Reyn's Pasta Bella*, 442 F.3d at 749; *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390, 398 (2d Cir. 1980). Applying this simple and well-established rule to this case, the *Visa Check* settlement cannot be read to release all of the MDL 1720 Class's claims for pre-2004 damages.

A.   **There Are Material Facts In Dispute That Will Shed Light on Whether the Release Extinguishes Claims that Could Not Have Been Asserted in the *Visa Check* Case**

1.   The Release is Ambiguous on its Face

The *Visa Check* Settlement and Release is a contract that should be construed according to the interpretive principles of contract law. *Collins v. Harrison Bode*, 303 F.3d 429, 433 (2d Cir. 2002); *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). Those principles state that a contract is ambiguous if it is reasonably susceptible to more than one interpretation. *See, e.g., Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990). When a contract is ambiguous, courts utilize the interpretive tools such as the canons

of interpretation to discern the proper meaning of a contract. *See CIBC World Markets Corp. v. TechTrader, Inc.*, 183 F. Supp. 2d 605, 610-611 (S.D.N.Y. 2001). Contemporaneous extrinsic evidence regarding the parties' intent is also relevant to interpreting an ambiguous contract. *See id.*

The *Visa Check* Settlement Release is ambiguous because it is susceptible to multiple interpretations. The Release discharges Visa and MasterCard from:

> All manner of claims. . . against [Visa and MasterCard]. . . that any Releasing Party ever had, now has or hereafter can, shall or may have, relating in any way to any conduct prior to January 1, 2004 *concerning any claims alleged in the Complaint or any of the complaints consolidated therein*, including, without limitation, claims which have been asserted or could have been asserted in this litigation which arise under or relate to any federal or state antitrust, unfair competition, unfair practices, or other law or regulation, or common law, including, without limitation, the Sherman Act.

Visa Settlement Agreement ¶ 28; MasterCard Settlement Agreement ¶ 30 (*emphasis added*).

The Defendants read the Release language to extinguish all claims "relating in any way to any conduct prior to January 1, 2004," thereby rendering superfluous the clause, "concerning any claims alleged in the Complaint. . ." (Defs. Br. at 13.) A proper alternative interpretation of the Release, however, would give meaning to this clarifying provision so that only conduct that concerns claims alleged in the complaint are released. Conduct that had not yet occurred at the time the settlement was entered into does not concern "any claims alleged in the Complaint."

> 2.   The Release extinguishes only conduct concerning those claims that could have been asserted in *Visa Check*

A contractual "interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]" Restatement (Second) of Contracts § 203(a). "[I]t is assumed in the first instance that no part of [the contract] is superfluous" and "particularly in cases of integrated agreements. . ., an interpretation is very strongly negated if it would render some provisions superfluous."

- 11 -

Restatement (Second) of Contracts § 203 cmt. B.; *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 64 (1995). In addition, "the meaning of a general term in a contract is limited by accompanying specific illustrations," *Corbin on Contracts* § 24.28. In other words, the language that follows a term clarifies of the term's meaning. It does not expand that meaning.

These principles of contract interpretation favor the interpretation proposed by the MDL 1720 Class: the Settlement Agreement and Release in the *Visa Check* litigation released Defendants from only those claims that (1) relate to conduct before January 1, 2004, and (2) were asserted or could have been asserted in the *Visa Check* TACCAC. Indeed, this is consistent with the Second Circuit findings that the "release precludes actions for conduct. . .that was or could have been alleged in the [TACCAC]." *Visa Check*, 396 F.3d at 104.[9] Thus, in order to interpret the reach of the Release, one must determine which claims were asserted or could have been asserted in *Visa Check*. And in order to determine which claims could have been asserted and properly interpret the scope of the Release, one must first consider the facts surrounding the *Visa Check* settlement, including the parties' intentions and the defendants' plans to fund that settlement with a new price-fixing agreement.  Defendants' interpretation, on the other hand, renders superfluous the limiting language, "concerning any claims alleged in the Complaint or any of the complaints consolidated therein."

**B.    Claims Relating to the Defendants' August 1, 2003, Price-Fixing Agreement Could not have been Asserted in *Visa Check* and Therefore were Not Released**

As discussed in detail in Section III.C. below, the general rule in private antitrust actions is that a plaintiff may not receive damages for conduct that occurred after the filing of its last amended complaint.  *Reyn's Pasta Bella*, 442 F.3d at 749; *see also Borger v. Yamaha Int'l*

---

[9] Defendants' reliance on *TBK Partners* does not change this analysis. That case merely stands for the proposition that parties to a class-action settlement *can release* claims that arise out of the "same factual predicate" as the claims alleged in the complaint. *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). It neither clarifies the types of claims that can be asserted in a class-action complaint nor explains when parties have in fact released all the claims that they can release.

*Corp.*, 625 F.2d 390, 398 (2d Cir. 1980).  At the time of the *Visa Check* settlement, the collusive Credit Card Interchange-Fee increase of August 2003 had not even occurred, let alone been asserted in a complaint. Because the *Visa Check* class had not yet incurred harm from those agreements, the class had no claim that "was asserted or could have been asserted" based on those price-fixing agreements. *See* 15 U.S.C. § 15(b); *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983); *Reyn's Pasta Bella*, 442 F.3d at 749.[10] Thus, by the terms of the Release, claims relating to the August 2003 price-fixing agreements—claims which could not have been asserted in the *Visa Check* litigation—were not released. This interpretation of the release should be favored because it is the most reasonable interpretation of the language. *See Corbin* on Contracts § 24.22 (stating that courts should interpret contract language to give it a reasonable meaning). A contrary interpretation would allow Defendants to use the language of the Release to negate the relief that they had promised to the Class as part of the Settlement.

The District of Massachusetts's recent decision in *Armstrong v. Rohn & Haas Co., Inc.* illustrates how the rule in *Reyn's Pasta Bella* should be applied to interpreting a settlement and release of claims. 349 F. Supp. 2d 71 (D. Mass 2004). In that case, a group of employees was offered a severance package from their employer in exchange for providing that employer with a release of all claims "from the beginning of time until the present, arising out of or in any way relating to all events and circumstances in any way related to [the employees'] employment." *Id.* at 76. Months after their employment was terminated, the plaintiff-former employees sued the employer for breaking a promise that it allegedly made to them in exchange for their acceptance of the severance package. *Id.* at 75. The employer argued that the release barred the employees'

---

[10] The MDL 1720 Class's argument should not be confused to mean that a defendant could never release claims that did not accrue until after the settlement was agreed to. *See Armstrong*, 349 F. Supp. 2d at 76 n.4 (noting that "[t]he release could have been drafted in more comprehensive terms, so as to release the company from future claims arising out of the contract obligations between it and the plaintiffs existing at the date of the release.")

- 13 -

claims because they "arose out of" the plaintiffs' employment. *Id.* The court rejected this argument, however, because "as of the moment the release was signed, plaintiffs had no claim under the contract because no breach had yet occurred." *Id.* at 76. Thus, because the cause of action had not accrued before the date of settlement, it was not subject to the release provision. *Id.*

        **C.**      **<u>Claims that were not Asserted in the *Visa Check* Class's Last Amended Complaint Could not have been Asserted in the Litigation and Therefore were not Released by the Settlement and Release.</u>**

        As noted above, the general rule in private antitrust actions is that "the plaintiff may not recover damages arising from acts committed after the filing of the complaint." *Reyn's Pasta Bella*, 442 F.3d at 749. S*ee also Borger*, 625 F.2d at 398. This rule applies even when the plaintiff's complaint seeks injunctive relief to redress a continuing course of conduct by the defendants. *Reyn's Pasta Bella*, 442 F.3d at 749. This rule is logical in light of Section 4 of the Clayton Act, which requires that a person "be injured in his business or property," in order to recover monetary damages for a violation of the antitrust laws. 15 U.S.C. § 15(a). At the time the injured party files a complaint, it has suffered only those injuries to its business or property that have so far occurred. *Cornwell Quality Tools Co. v. C.T.S. Co., Inc.*, 446 F.2d 825, 832 (9th Cir. 1971); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 394 (9th Cir. 1957). If a plaintiff wishes to recover damages for conduct that occurred after the filing of its last amended complaint, it must amend its complaint to include claims for damages through trial or file a separate suit. *Shayne v. Madison Square Garden Corp.*, 491 F.2d 397, 401 (2d Cir. 1974). *See also Borger*, 625 F.2d at 398. In the case of settlement, a defendant can avoid the effects of this rule by agreeing with the plaintiff that the complaint will be amended as part of the settlement. The Defendants made no such agreement with the *Visa Check* class.

- 14 -

The case for strictly applying this rule is especially compelling here when defendants benefited from the same rule in a related case. In *Reyn's Pasta Bella*, the plaintiff had asserted Interchange-Fee price-fixing claims similar to those asserted in MDL 1720. *See* 442 F.3d at 744. The Defendants successfully argued to this Court that the *Visa Check* Release also extinguished claims related to the *Reyn's Pasta Bella* Interchange-Fee price-fixing lawsuit that had been filed before the *Visa Check* Settlement. *Id.* at 749 (citing approval of Settlement in *Visa Check*, 297 F. Supp. 2d at 526, *aff'd,* 396 F.3d at 124). After the decision by this Court releasing the *Reyn's Pasta Bella* claims, the Defendants successfully obtained dismissal of the case. *Id.* On appeal, *Reyn's* argued that, even if it could not recover pre-2004 damages, it should be allowed to pursue its case while seeking only damages from January 1, 2004, and forward. *Id.* at 749. The Ninth Circuit affirmed the dismissal, however, because *Reyn's* had not amended its complaint since May 16, 2003, and therefore could not have recovered damages after that date. *Id.*

Like the putative *Reyn's Pasta Bella* class, the *Visa Check* class could not have recovered damages resulting from any conduct that occurred after it last amended its complaint on May 26, 1999 (the TACCAC). *Id.* It could not have recovered these damages because, at the time of the TACCAC, the class had yet to suffer an actual injury to its business or property due to the Defendants' later decisions to illegally fix Interchange Fees. *See* 15 U.S.C. § 15(b); *Cornwell*, 446 F.2d at 832. Neither could the *Visa Check* class have alleged that an injury was imminent. *Id.* The action that gives rise to Interchange Fee price-fixing claims is the collective decision by Visa and MasterCard Member Banks to set uniform Interchange Fees. Even if those banks had engaged in that illegal conduct in the past, there was no guarantee, sufficient to confer a right to recover damages under the antitrust laws, that the banks would injure the Class in its business or

property by entering into future agreements to fix Interchange Fees. *See* 15 U.S.C. § 15(b); *see also Reyn's Pasta Bella*, 442 F.3d at 749; *Cornwell*, 446 F.2d at 832.

**D.     Principles of Equity Prevent Defendants from Using the *Visa Check* Release to Extinguish Claims Based on Post-Settlement Price-Fixing Agreements.**

Even if this Court does not agree with the MDL 1720 Class's interpretation of the text of the *Visa Check* Release, principles of equity demand that the MDL 1720 Class be allowed to seek to avoid or limit the Release due to the Defendants' decision to increase Interchange Fees to fund the settlement. By attempting to limit the MDL 1720 Class's pre-2004 damages, the Defendants are asserting the affirmative defense of release and satisfaction. (Defs. Br. at 9; Marth Decl., Ex. 2 (Answer of Visa U.S.A.).) Under New York law, the release of a lawsuit is treated like any other contract, and will not be enforced to the extent it was induced by fraud or misrepresentation. *See Red Ball Interior Demolition*, 173 F.3d at 484. To show fraud in the inducement of a release, the plaintiff must show: a misrepresentation or omission of a material fact; made with the knowledge of the defendant; for the purpose of securing the plaintiff's reliance; and that proximately causes injury to the plaintiff. *Nelson v. Stahl*, 173 F. Supp. 2d 153, 169 (S.D.N.Y. 2001). A defendant's omission may form the basis for setting aside a release when that omission relates to a fact on which the defendant has superior information. *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 224 F. Supp. 2d 520, 529-30 (W.D.N.Y. 2002).

The defendants' business plans logically are an area in which the defendant has superior knowledge to the plaintiff. *See Nelson*, 173 F. Supp. 2d at 160-61. For example, in *Nelson*, plaintiff-corporate board members alleged that a release entered into with the defendant-officers of the corporation was fraudulently induced because the defendants failed to tell plaintiffs of a large, pending inflow of cash that the corporation was about to receive. For that reason, the court concluded that the plaintiffs had sufficiently alleged that the defendants' omission fraudulently

- 16 -

induced plaintiffs to assign their interests in the corporation to defendants. *Id.* at 169. *See also Armstrong,* 349 F. Supp. 2d at 77. Thus, when a defendant obtains a release by failing to inform the plaintiff of its business plans that would be material to the plaintiff's decision, the plaintiff may set aside the release as fraudulently induced.

These principles of fairness and equity apply with force in this case. On information and belief, the defendants have not only failed to disclose material information to the *Visa Check* class, but that information—the pending Interchange-Fee increase—had the effect of largely recovering back from the *Visa Check* class the monetary relief that the Class had just secured. (Wildfang Decl., ¶ 12.)

Like the defendants in the cases above, Visa, MasterCard, and their Member Banks were the only parties that could have known how the monetary relief was going to be funded at the time of settlement negotiations. And they were in the best position to know the net effect of that purported relief in light of their subsequent business plans. Without discovery it is impossible to know what the defendants' plans were and what part of those plans were disclosed to *Visa Check* class counsel. But if, as the MDL 1720 Class suspects, the Defendants did in fact conceal their plans to collectively increase credit-card Interchange Fees, that would have constituted a material omission of fact intended to induce the Class into releasing its claims, on which class counsel justifiably relied. *See Nelson*, 173 F. Supp. 2d at 160-61. Not only would the defendants' omission have had the effect of fraudulently inducing the class counsel into settlement, but it would also have undone a significant part of the monetary relief the Class thought it had just obtained.

The defendants should not be rewarded for giving with one hand (paying settlement damages) while taking with the other (raising Interchange Fees to fund the settlement). Rather,

equity should prevent the defendants from shielding themselves from liability for this post-settlement price-fixing agreement. The MDL 1720 Class should at least be permitted discovery on these important issues.

IV.   **ALTERNATIVELY, THE SETTLEMENT AGREEMENT VIOLATES DUE PROCESS BECAUSE THE NOTICE OF PENDENCY WAS INADEQUATE TO INFORM ABSENT CLASS MEMBERS OF THE SCOPE OF THE SETTLEMENT.**

    A.   **Absent Class Members Must Receive Notice and an Opportunity to Opt-out of Rule 23(b)(2)(3) Class Actions.**

Due Process requires that notice of a pending class action be given to absent class members so that they have the opportunity to opt-out of the class. Fed. R. Civ. P. 23(c)(2)(B); *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313 (1950).[11] The notice and opt-out requirements are crucial to protect the interests of both absent class members and defendants. Kenneth W. Dam, Class *Action Notice: Who Needs It?*, 1974 S. Ct. Rev. 97, 118. When the notice or opt-out requirements are not met, a court may not exercise jurisdiction over the absent plaintiffs. The *Visa Check* class members did not receives adequate notice that their Interchange-Fee price-fixing claims were at state in that case, and therefore the Settlement cannot release the claims of those absent class members.

        1.   Notice and Opt-Out Rights Protect the Due-Process Rights of Absent Class Members.

The Constitution's Due Process Clauses protect citizens from governmental deprivation of "life, liberty, or property" without due process of law. U.S. Const. Ams. 5 & 14. The Supreme Court has stated that an individual's cause of action is a form of property that is protected by the Fifth and Fourteenth Amendments. *See Richards v. Jefferson County*, 517 U.S. 793, 803-04

---

[11] Some courts and commentators have concluded that the constitution mandates both the right to notice and the right to opt-out of a class action seeking monetary damages. *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992); Patrick Woolley, *Rethinking the Adequacy of Adequate Representation,* 75 Tex. L. Rev. 571, 572.

(1996); Patrick Woolley, *Rethinking the Adequacy of Adequate Representation*, 75 Tex. L. Rev. 571. Due process therefore requires "at a minimum," that this "deprivation of…property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane*, 339 U.S. at 313. Fulfilling the requirements for due process by providing adequate notice and opt-out rights to class members is a prerequisite to the class-action court gaining jurisdiction over absent class members to give finality to the class judgment. *Id.*; Fed. R. Civ. P. 23, 1966 adv. cmt. notes.

> 2.     Due Process Demands an Adequate Description of the Class Action Litigation and the Opportunity to Opt-out.

"[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or consent." *Mullane*, 339 U.S. at 314; *see also* George Rutherglen, *Better Late Than Never: Notice and Opt-Out at the Settlement Stage of* Class *Actions*, 71 N.Y.U.L. Rev. 258, 267 (1996).[12] Because of the relationship of the notice and opt-out requirements, a notice of pendency of class action must necessarily be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane*, 339 U.S. at 314-15.

Principles of due process apply in heightened degree to class-action notices because absent class members may be "entirely dependent on the class notice for information about the suit," and to make the important decision whether to opt out or be bound by the litigation. *In re Diet Drugs Prod. Liability Litig.*, 369 F.3d 293, 308, 310 (3d Cir. 2004); *In re Nissan Motor*

---

[12] This requires more than the "mere gesture" of providing notice and requires that notice be drawn up in a way that actually informs class members of the extent to which a class judgment can deprive them of their property interests. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 315 (1950); Todd B. Hilsee et al., *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice is More than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359, 1361 (2005).

*Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). Because of the vulnerability of absent class members, "the preclusion language in [a class action opt-out notice] must, in order to satisfy due process concerns, be strictly construed against those who seek to restrict class members from pursuing individual claims." *Diet Drugs*, 369 F.3d at 308 (citing *United States v. Albertini*, 472 U.S. 675, 680 (1985)). In order to be considered adequate, the notice provided to absent class members must "contain information reasonably necessary to make [the opt-out] decision." *Nissan*, 552 F.2d at 1105. In the Second Circuit, the notice must "fairly apprise [absent class members]" of the terms of the settlement or litigation and "of the options that are open to them." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).[13] When an absentee class member lacks "an essential factor in the decision-making equation," due process is lacking. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1105.

**B.   The Notice of Pendency did not inform absent class members that they had to opt-out of the Visa Check/MasterMoney litigation to preserve their Interchange Fee price-fixing claims.**

  1.   The *Visa Check* Notice of Pendency Did Not Adequately Inform Absent Class Members that Their Claims Were at Stake.

Taken as a whole and construed narrowly, the Notice of Pendency does not provide the material information necessary for class members to make an informed decision whether to opt-out of the litigation. *See Diet Drugs*, 369 F.3d at 310. Interchange Fee price-fixing claims are multi-billion dollar claims, so any information regarding the presence of these claims in the litigation is certainly material. *See* FACCAC ¶ 218, MDL 1720.

Despite the importance of releasing Interchange-fee Price-fixing claims, those claims are not mentioned in ¶ 3 of the Notice of Pendency that describes the *Visa Check* litigation. Notice of

---

[13] The cited case arises in the context of notice of settlement. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). But because the notice of settlement in that case informed class members of their right to opt-out of the litigation, it was bound by the same considerations of due process that are present in this case.

Pendency. According to that paragraph, the case revolved around allegations that the defendants had violated the antitrust laws by "forcing merchants who accept Visa and/or MasterCard-branded credit cards for payment also to accept Visa and/or MasterCard-branded debit cards for payment, and by conspiring and attempting to monopolize a market for general purpose point of sale debit cards." Although the section contains language suggesting a conspiracy by Visa and MasterCard with each other and their Member Banks, it does not mention a conspiracy to fix Interchange Fees. Omitting specific mention of multi-billion dollar claims that the Defendants now seek to release falls short of providing the information necessary for the average class member to make the opt-out decision.[14] *Nissan*, 552 F.2d at 1105.

The Defendants may attempt to downplay the narrow focus of the description of claims in the Notice of Pendency by pointing to the broader language in paragraph 11 that the class action was to determine the claims of class members that "aris[e] out of Defendants' conduct at issue in the Action." Viewed in context of the narrow focus of the description of the claims and the boldface description of the class, however, the most logical interpretation of this phrase is that it relates back to the HAC-focused description of the *Visa Check* action. The Defendants may also point to the Notice's mention that absent class members may obtain a copy of the complaint, which referenced Defendants' collusive conduct, to escape their obligation to adequately describe the case. Notice of Pendency ¶ 17. But this "worthwhile advice cannot justify omitting material information" especially when class members are numerous and dispersed and will rely

---

[14] The focus of the Notice on the HAC claims is reinforced by the boldfaced "TO" salutation on the first page. The Notice is directed to "all persons and business entities" who "have accepted Visa and/or MasterCard-branded credit cards...*and have therefore been required to accept Visa and/or MasterCard-branded debit cards*." Notice of Pendency at 1 (*emphasis added*). Because Credit and Debit Cards were tied together at the time of the Notice, all merchants that accepted credit cards by definition accepted debit cards as well, rendering the italicized language redundant. This salutation therefore serves only to highlight the HAC focus of the litigation.

MP1 10041128.6

on the notice as their "primary, if not exclusive, source of information for deciding how to exercise their rights under [R]ule 23." *Nissan*, 552 F.2d at 1104.

The absence of any mention of Interchange Fee price-fixing claims is even more troubling because this Court later recognized that Interchange Fee price-fixing claims were a "virtual clone of the centerpiece of [the *Visa Check/MasterMoney*] case." *Visa Check*, 297 F. Supp. 2d at 513. Because the "adequate description of substantive claims," did not include a description of claims that were a "virtual clone of the centerpiece" of this litigation, absent class members had no notice of their right to opt-out to protect those claims. *Nissan*, 552 F.2d at 1005. Without notice, connected with the right to opt-out, due process will not allow the settlement to release absent class members' Interchange Fee price-fixing claims. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); Rutherglen, *supra*, at 267.

> 2.      Equity Requires that the Notice of Pendency be Construed Strictly Against the Defendants.

Equitable considerations are relevant to the court's determination of whether to allow a collateral challenge to an earlier class action settlement. *See Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165 (2d Cir. 2006). In the class-action context, equity helps protect absent class members who, because of inferior information to the represented parties, are especially vulnerable to the harsh effects of a final judgment. Absent class members are especially vulnerable at the settlement stage when defendants have an incentive to expand the universe of claims subject to the judgment. Jeanette Cox, *Information Famine, Due Process, and the Revised Class Action Rule: When Should Courts Provide a Second Opportunity to Opt-out?*, 80 Notre Dame L. Rev. 377, 386 (2004). The notice and opt-out requirements seek to fill this equitable gap by guaranteeing that the rights of absent class members receive some minimal level of protection. *See id*. Because of this inherent connection between notice and a class-action

- 22 -

defendant's ability to release claims described above, equity must require defendants who seek to benefit from a class-action release to also ensure that a notice of pendency to class members adequately describes the claims at stake.

The equities are particularly strong in this case because, on information and belief, the Defendants in *Visa Check* were intimately involved in drafting both the Notice of Pendency and the Settlement Release itself. (Wildfang Decl., ¶¶ 18-22 & Ex.6.) Without further discovery, however, it is impossible to know the parties' role in drafting and distributing the Notice. The benefit the Defendants received from the Release is self-evident—according to the Defendants, the Release is powerful enough to absolve them of years of Interchange-Fee price-fixing claims. (Defs. Br. at 17.) In light of the benefit that the Defendants claim from the *Visa Check* Settlement and their suspected role in crafting the Notice of Pendency, equity should require that Defendants precisely describe the claims they seek to release, and should strictly construe attempts by defendants to broaden those claims. *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 308 (3d Cir. 2004).

The Defendants had the opportunity and incentive to craft a broad notice that informed the class of all the claims that were at stake and gave the court jurisdiction over those claims of absent class members. By failing to give proper notice, the defendants essentially availed themselves of the benefits of finality, while depriving the absent class members of their due process protection and their most valuable claims. Equity should not allow this.

## CONCLUSION

There are material facts in dispute regarding whether the purported Settlement and Release in *Visa Check* should be applied to bar none, some, or all of the pre-2004 damage claims of the MDL 1720 Class. The known facts suggest that the defendants were conspiring to

- 23 -

undercut the *Visa Check* settlement, just as they were negotiating to settle the litigation with the class. Based on the facts surrounding the settlement, and Defendants' decisions on how to fund that settlement, this Court cannot conclusively interpret the *Visa Check* Settlement to release *all* of the MDL 1720 Class's claims for pre-2004 damages. A release of all claims, especially one covering all absent class members and extending to all pre-January 1, 2004, damages, is not consistent with a careful review of the text of the Agreement, antitrust law, and notions of due process. The MDL 1720 Class therefore opposes Defendants' motion to dismiss the claims predating January 1, 2004, or to strike its prayer for relief.

Dated: Minneapolis, Minnesota
      July 21, 2006

By: _____
      K. Craig Wildfang
      Co-Lead Counsel for Plaintiffs

**Robins, Kaplan, Miller & Ciresi L.L.P.**
K. Craig Wildfang (kcwildfang@rkmc.com)
Thomas J. Undlin (tjundlin@rkmc.com)
Christopher W. Madel (cwmadel@rkmc.com)
David Balto (dbalto@rkmc.com)
Anne M. Lockner (amlockner@rkmc.com)
Ryan W. Marth (rwmarth@rkmc.com)
Bethany D. Krueger (bdkrueger@rkmc.com)
Kevin M. Magnuson (kmmagnuson@rkmc.com)
Bradley M. Orschel (bmorschel@rkmc.com)
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402
Tel. (612) 349-8500
Fax (612) 349-4181

MP1 10041128.6

**Berger & Montague, P.C.**
H. Laddie Montague (hlmontague@bm.net)
Merrill G. Davidoff (mdavidoff@bm.net)
Bart Cohen (bcohen@bm.net)
Michael J. Kane (mkane@bm.net)
1622 Locust Street
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax (215) 875-4604

**Lerach Coughlin Stoia Geller Rudman & Robbins LLP**
Bonny E. Sweeney (bonnys@lerachlaw.com)
Christopher M. Burke (chrisb@lerachlaw.com)
655 West Broadway
Suite 1900
San Diego, CA 92101
Tel. (619) 231-1058
Fax (619) 231-7423
Samuel H. Rudman (srudman@lerachlaw.com)
200 Broadhollow Road
Suite 405
Melville, NY 11747
Tel. (619) 231-1058
Fax (619) 231-7423

**Freedman, Boyd, Daniels, Hollander & Goldberg, P.A.**
Joseph Goldberg (jg@fbdlaw.com)
20 First Plaza
Suite 700
Albuquerque, NM 87102
Tel. (505) 842-9960
Fax (505) 842-0761

**Hulett, Harper, Stewart, LLP**
Dennis Stewart (dstewart@hulettharper.com)
550 West C Street
Suite 1600
San Diego, CA 92101
Tel. (619) 338-1133
Fax (619) 338-1139

MP1 10041128.6