1622 LOCUST STREET  I  PHILADELPHIA, PA 19103-6305  I  *phone* 215/875-3000  I  *fax* 215/875-4604  I  *www.bergermontague.com*

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

MICHAEL J. KANE

WRITER'S DIRECT DIAL  | 215-875-4686
WRITER'S DIRECT FAX   | 215-875-4604
WRITER'S DIRECT E-MAIL | mkane@bm.net

July 19, 2006

Mark P. Ladner, Esquire
**MORRISON & FOERSTER, LLP**
1290 Avenue of the Americas
New York, NY 10104

David F. Graham, Esquire
**SIDLEY, AUSTIN, BROWN & WOOD**
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

Peter E. Greene, Esquire
Cyrus Amir-Mokri, Esquire
**SKADDEN, ARPS, SLATE, MEAGHER**
**& FLOM, LLP**
Four Times Square
New York, NY 10036

Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
Master File NO. 05-MD-1720

Dear Counsel:

We are writing, on behalf of the Class and Non-Class Plaintiffs (collectively, "Plaintiffs"), to memorialize the substance of our three meet and confer conferences, which were held on June 21, June 29 and July 11, regarding the Bank Defendants' responses to the omnibus first set of document requests and interrogatories. If Bank Defendants have a different understanding with respect to any of the positions set forth below, please so state in writing, including, in particular, how your position as to individual discovery requests differs from the position at issue. We also request that you address in writing each of the open issues that exist with respect to particular discovery requests and address the overarching issues detailed below.

While we are hopeful we can resolve many of our outstanding disputes, we would like to identify any disputes which cannot be resolved without court intervention as soon as possible, so that we may bring them to the attention of the Court at the August 8 status conference. To that end, we request that you respond to this letter by July 26, as we discussed.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -2-

## I.   Overarching Issues

During our meetings, we discussed a number of overarching issues, which include, but are not limited to, the following: 1) temporal scope of search; 2) scope of search; 3) date to produce documents; 4) objections; 5) expert discovery; 6) indexes of documents produced in the Wal-Mart and Department of Justice actions; 7) time by which Bank Defendants will provide responses for discovery requests that have been deferred until Visa and MasterCard provide discovery responses; 8) privilege logs; 9) Rule 33(d) responses; 10) identification of former employees; 11) format of document productions; and 12) admissibility of documents that are copies, rather than originals.

### 1.   Temporal Scope of Search

As a general matter, Bank Defendants will only produce documents for the time period January 1, 2000 through April 24, 2006. Defendants object to producing documents predating this period on relevance and burden grounds. Despite these objections, Defendants are amenable to producing documents predating January 1, 2000 on a request by request basis.

Plaintiffs proposed that the productions in the *Wal-Mart* and *Department of Justice* actions would be sufficient to satisfy the requirements to produce documents for the time period January 1, 1992 through December 31, 1999 as long as the scope of search for responsive materials was reasonably comprehensive. Whether the search was reasonably comprehensive is a function of the breadth of the discovery requests along with agreements, if any, concerning the materials responsive to the requests and the nature of the search for those materials, including the custodians and departments whose files were searched. Plaintiffs therefore request that each Bank Defendant provide a description of the documents requested and all agreements regarding the searches and the scope of responsive documents.

This proposal is also conditioned on Bank Defendants producing their objective coding of these documents, if any, which we have previously requested. While this proposal eliminates any affirmative obligation to search archived files (tangible and electronic) for documents predating January 1, 2000, Plaintiffs expect that Bank Defendants will produce documents predating January 1, 2000 that are discovered in files within any agreed upon scope of search. Further, we expect Bank Defendants will produce data, if reasonably available, for the period January 1, 1995 to the present because historical data is typically meaningful for economic analysis in antitrust cases of this kind.

### 2.   Scope of Search

As to the scope of search issue, Bank Defendants proposed searching the tangible and electronic files of an agreed upon list of custodians likely to have materials responsive to the document requests. Bank Defendants will circulate a preliminary list of custodians for Plaintiffs'

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -3-

review. Plaintiffs will review the list and provide additional custodians, if necessary, based on the Rule 30(b)(6) depositions and a review of organizational charts. If there are any disputes as to the custodians on the list the parties will meet and confer.

With respect search of electronic files, the parties will agree to a list of search terms. As with the custodian list, Bank Defendants will provide a preliminary list of search terms. After reviewing and discussing this list, Plaintiffs will provide any other search terms that we feel will produce relevant materials. If there is any dispute as to the search terms, the parties will meet and confer.

As to the tangible files, the document requests will serve as the basis for the search for responsive materials. This search approach is acceptable to Plaintiffs.

While Plaintiffs agree, in principle, with the scope of search proposals described above, we are unwilling to delay the process any further. We therefore requested that Bank Defendants circulate a list of proposed custodians and search terms prior to the completion of the Rule 30(b)(6) depositions. This will not only assure that the discovery will proceed in a timely fashion but will assist with the Rule 30(b)(6) depositions. Plaintiffs also request that Bank Defendants provide a date certain by which it will provide an initial proposed list of custodians and search terms.

It is also unclear to Plaintiffs whether Defendants' custodial list will include individuals employed by the company prior to January 1, 2000. If it does not, then the Bank Defendants should affirmatively state whether the documents responsive to a particular request are contained in their "legacy" productions in the *Wal-Mart* and *DOJ* cases and, if so, they should identify the bates numbers of these documents. If the responsive information is not in their "legacy" productions, then the Bank Defendants should include in their custodial list such individuals who would have the responsive records prior to January 1, 2000.

### 3.     Date by Which Documents will be Produced

Defendants stated that documents will be produced on a rolling basis. The hard copy documents will be produced first. Certain Bank Defendants, such as Bank of America, represented that hard copy documents will be produced beginning in mid to late July. We request that each of the Bank Defendant provide a date certain by which it will start to produce documents existing in hard copy form.

With respect to electronic documents, which Bank Defendants represented will constitute the bulk of the production, Bank Defendants will start to produce documents after the parties reach an agreement as to the list of custodians and search terms. Prior to reaching an agreement, Bank Defendants will not search electronic files because they want to conduct their respective searches only one time based on definitive search parameters.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -4-

While we generally understand the Bank Defendants reluctance to search more than once for responsive documents, Plaintiffs stated that there are certain document requests which are not necessarily subject to a custodial search process.  As to these document requests, Bank Defendants should begin searching for and producing them as soon as possible.  We will provide a list of the document requests in a separate letter.

In addition to agreeing to a date by which Bank Defendants will begin producing documents, Plaintiffs also believe it would productive to agree to a date for completing Bank Defendants' document production.  Plaintiffs propose that Bank Defendants complete their document productions by September 30.

## 4.    Objections

With respect to objections set forth in the Bank Defendants' responses to the various discovery requests, Bank Defendants stated that these objections are general in nature to the requests themselves.  These objections will not provide a basis for withholding responsive documents which are uncovered by the custodial search protocol discussed above.

If responsive documents uncovered by the custodial search protocol are withheld on relevance grounds, Bank Defendants stated that they would identify them in some sort of log.  It is Plaintiffs' position that withholding any documents uncovered by the agreed upon custodial search protocol is improper because these documents are presumptively relevant.

## 5.    Expert Discovery

With respect to expert discovery, Plaintiffs proposed that the parties agree to the following: 1) the parties will not exchange drafts of expert reports; and 2) the parties will not exchange written communications between the attorneys and their respective experts.  Plaintiffs also proposed that the parties produce all materials relied upon by the experts when drafting their reports without any formal discovery requests.  Plaintiffs will shortly be sending to Defendants a proposed stipulation that encompasses these limitations.

Bank Defendants will provide us with their final position on this proposal after they discuss it amongst themselves and with their clients.

## 6.    Indexes of Legacy Documents

Bank Defendants represented that they do not have indexes of the documents produced in the *Wal-Mart* and *Department of Justice* cases.  Plaintiffs proposed sharing the costs of indexing these documents.  Defendants will consider this proposal and provide us with their final position.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -5-

**7.    Bank Defendants' Discovery Responses Deferred Until
          Visa and MasterCard Provide Responses**

Plaintiffs have agreed that Bank Defendants can defer responding to a number of discreet discovery requests, as set forth below, until Visa and MasterCard (collectively "Network Defendants") respond to similar discovery requests. Once the Network Defendants produce these responses and/or materials, Plaintiffs expect Bank Defendants to provide responses within twenty days.

However, if the Network Defendants fail to provide responses in a timely fashion, Plaintiffs are unwilling to defer the Bank Defendants' discovery responses indefinitely. To do so will unreasonably and unnecessarily delay discovery. In order to prevent undue delay, Plaintiffs will permit Bank Defendants to defer responding until August 22. If the Network Defendants fail to provide responses by this them, then Plaintiffs expect Bank Defendants to provide responses within 20 days after this time.

While Bank Defendants recognize that they may be in a position to respond to certain discovery requests without the assistance of the Network Defendants, there are others for which they assert they cannot do so. Plaintiffs request that Bank Defendants provide a list of discovery requests which they believe cannot be answered without assistance from the Network Defendants' responses.

**8.    Privilege Logs**

Plaintiffs propose that Bank Defendants log all documents withheld under a claimed privilege, including communications with outside counsel, up until the filing of the first filed lawsuit in MDL 1720 in a privilege log. This proposal is identical to the one made to the Network Defendants. Of course, we expect Bank Defendants' privilege logs will conform to the requirements of the Local Rules of Court.

**9.    Rule 33(d) Responses**

The parties agreed, in principle, that complying with the requirements of Local Rule 33.1 is too burdensome. While the parties agree in principle, we still need to agree to a format which provides information necessary to make the interrogatory response meaningful. We will provide a proposal in a separate letter.

**10.    Identification of Former Employees**

Although not discussed during our conferences, Plaintiffs request that to the extent any interrogatories require the identification of employees, the Bank Defendants identify former

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -6-

employees, including the last title/position he/she held for the company and his/her last known residential address and telephone number.

### 11.   Format of Document Productions

While we did not specifically discus the format of Bank Defendants' document production, during our conferences, Plaintiffs propose that, when possible, documents be produced as single page TIFF in which the file name represents the bates number of the document, all documents should be scanned and/or OCR'd at 300 DPI, and a load file in Opticon (.OPT or .LOG), Document Director (.Oll), or IPRO (.LFP) forma provided. Any objective coding that exists relating to any document(s) should be produced with a coding load file. The coding load file must be provided in ASCII text, comma-delimtted format and include a filed header row that defines the field order. The total number of documents included within each coding load file must match the total number of documents produced, and the total document count with each coding file must match the total count of the corresponding Image load file.

### 12.   Admissibility of Copies, Rather than Originals, of Documents

Although not previously discussed during our conferences, Plaintiffs propose that the parties agree not to object to the admissibility of any document that is not an original.

## II.   Reservation of Rights

Plaintiffs will consider in good faith the Bank Defendants proposed, although still undefined, custodial approach to producing documents. To the extent that Plaintiffs agreed to such an approach, or to the extent that Plaintiffs state below that they agree to Bank Defendants proposal responsive to any particular request, Plaintiffs' agreement is subject to Plaintiffs' review and agreement to Bank Defendants' custodial lists, further meet and confer sessions (if needed), and Plaintiffs review of the documents and data produced by Bank Defendants.

Further, although Plaintiffs will consider the Bank Defendants' proposed custodial production concept, we want to flag at least one issue for you to take into account in preparing the list. It occurs to us that data requested by Plaintiffs may not be maintained by people on your custodial list. Accordingly, in preparing your list, please bear in mind that Plaintiffs want to obtain the data requested and help us to understand why your list will get us the data we have sought.

Finally, in certain paragraphs below, Plaintiffs state their acceptance of the Bank Defendant approach to a particular request or interrogatory. Plaintiffs acceptance in those instances is subject to the reservation of rights noted in this letter and reflects the compromise on the points raised and is not intended to waive Plaintiffs' request for broader discovery or a different protocol to use for

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -7-

discovery in that or any other request for production or interrogatory.  Plaintiffs reserve the right to seek other discovery from Defendants in the future.

## III.  Document Requests

### Request No. 1:

To the extent that Bank Defendants agreed to produce documents in their interrogatory responses, the documents will be produced.

### Request No. 2:

There is no dispute as to this request because Bank Defendants agreed to produce the documents.

### Request No. 3:

Bank Defendants agreed to produce current organizational charts but stated that charts predating 2000 are difficult to locate and may not exist.  With respect to searching for these organizational charts, Bank Defendants will get back to us with their final position.

In an attempt to resolve any potential dispute as to pre-2000 organizational charts, Plaintiffs proposed that Bank Defendants identify by bates numbers the charts produced in the *Wal-Mart* and *Department of Justice* litigations.  Bank Defendants will get back to us with their final position on this proposal.

### Request No. 4:

Bank Defendants proposed producing membership agreements, communications and documents relating to interchange and merchant discount fees based on the custodial search protocol.  Plaintiffs agreed to this proposal.

### Request No. 5:

Bank Defendants agreed to produce contracts with named Plaintiffs.

### Request No. 6:

Bank Defendants objected to the term "complete file" as overbroad.  Bank Defendants also

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -8-

suggested that it would be easier to obtain the documents concerning the relationship between named Plaintiffs and Bank Defendants from Plaintiffs' files.

Plaintiffs disagreed with this suggestion because Plaintiffs may not be aware of all relationships they have with the Bank Defendants. Despite this disagreement, Plaintiffs agreed to attempt to narrow this request. We will do so in a separate letter.

### Requests Nos. 7-10:

With respect to document requests numbers 7-10, Plaintiffs agreed that these requests seek information only from acquirers, not issuers. Accordingly, Bank Defendants who are solely issuers do not need to respond to these requests.

As to subpart a, Bank Defendants agreed to produce agreements and use the custodial search protocol for other responsive materials. As to subpart b, Plaintiffs agreed to narrow the scope of the merchants at issue. We will do so in a separate letter.

### Request No. 7:

Bank Defendants suggested that the "risk of loss" on payment card transactions was governed by the Network Defendants' rules. Because this was a network rules issue, Defendants proposed that Plaintiffs seek the requested information from Visa and MasterCard.

Plaintiffs rejected this proposal. While the Network Defendants' rules are one source of the requested information, Plaintiffs stated that the rules by themselves are inadequate to respond to the entire request because agreements between acquirers and third party processors might also contain provisions shifting the "risk of loss" on payment card transactions.

Bank Defendants agreed to produce agreements with Visa and MasterCard and agreements with third party processors, including communications relating to those agreements, based on the custodial search protocol.

### Request No. 8:

Bank Defendants proposed producing negotiations, agreements and relationships defined by those agreements based on the custodial search protocol (subparts a and e).

Plaintiffs agreed that this was adequate.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -9-

### Request Nos. 9-10:

Plaintiffs agreed to narrow the list of the merchants that are the subject of this request. We will do so in a separate letter.

### Request No. 11:

Plaintiffs explained that we are seeking documents relating to agreements between issuers and acquirers concerning interchange and merchant discount fees. Based on this explanation, Bank Defendants agreed to consider responding to this request and provide us with their final position.

### Requests Nos. 12-15:

The parties agreed to defer the Bank Defendants' responses to these requests until the Network Defendants produce documents in response to similar document requests propounded to them.

### Request No. 16:

Plaintiffs explained that we are seeking drafts and development of the Network Defendants' bulletins, rules and related materials, including internal deliberations and discussions. Based on this explanation, Bank Defendants agreed to consider producing these documents utilizing the custodial search approach and will provide us with their final position.

Plaintiffs agreed to defer seeking the final versions of the Network Defendants' rules and bulletins until the Network Defendants produce responsive documents.

### Request No. 17:

Plaintiffs explained that we are seeking materials related to technology, if any, available to bypass the Network Defendants' processing system – *e.g.* the internet or First Data network.

Based on this explanation, Bank Defendants agreed to consider producing these materials using the custodial search protocol, including documents available from planning committees and/or strategy groups, and will provide us with their final position.

### Request No. 18:

Plaintiffs explained that this request seeks materials relating to a single payment card containing multiple bugs for different payment card transaction networks, *e.g.* Visa, MasterCard and

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -10-

debit card networks. Although we believe that this explanation sufficiently describes the materials sought by this request, Plaintiffs nevertheless agreed to rephrase the request. We will do so in a separate letter.

**Request No. 19:**

Plaintiffs explained that we are seeking any analysis of interchange fees after the *Wal-Mart* settlement. Bank Defendants agreed to search for analyses and/or projections of interchange fees following the settlement.

**Request No. 20:**

Based on the custodial search protocol, Bank Defendants agreed to produce notes of meetings regarding interchange fees and mark-ups of fee schedules.

**Request No. 21:**

While Plaintiffs are willing to narrow the scope of this request, we are unwilling to limit the time period for responsive materials. We are also unwilling to categorically eliminate certain types of analyses. Analyses of revenues generated by interchange fees and associated costs over the requested period of time are relevant to Plaintiffs' claims.

The parties agreed to consider identifying examples of the types of analyses that are central to the issues in the case. We will do so in a separate letter.

**Request No. 22:**

The parties agreed that Bank Defendants will utilize the custodial search protocol to search for and produce mark-ups of fee schedules and internal discussions and/or deliberations since 2000 relating to the Network Defendants' setting of default interchange fees. Plaintiffs also agreed that Bank Defendants can defer searching for documents which predate 2000.

**Requests Nos. 23-26:**

Plaintiffs agreed to defer these requests in return for Bank Defendants producing Network Defendants' Board of Directors and committee packages.

Bank Defendants requested Plaintiffs to identify the Network Defendants' committees that are relevant to setting interchange or merchant discount fees. Plaintiffs agreed to consider this request and provide Bank Defendants with a final position. We will do so in a separate letter.

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

July 19, 2006
Page -11-

**Requests Nos. 27-28:**

Plaintiffs explained that the August 1, 2003 date referred to in these requests is the date that the Network Defendants decreased debit card interchange fees while increasing credit card interchange fees.   In response to these requests, Plaintiffs are seeking the following: 1) communications between the Bank Defendants and the Network Defendants; and 2) communications between any of the Bank Defendants.  Plaintiffs are not willing to defer this request because these documents should be in the Bank Defendants' possession.

**Requests Nos. 29-30:**

Bank Defendants proposed producing contracts between acquiring banks and merchants because they will provide the requested information.  They further proposed using the custodial search protocol for searching for and producing the remaining materials responsive to these requests.

While Plaintiffs agreed that this proposal provides a starting point, we stated that it is insufficient to provide a complete response to these document requests. The proposal is insufficient because the request also seeks analyses comparing interchange levels to bank costs (*e.g.* fraud and float).  Plaintiffs will attempt to clarify these requests.  We will do so in a separate letter.

**Request No. 31:**

Plaintiffs explained that this request is relevant to Plaintiffs' bundling claim.  It seeks materials and analyses relating to business opportunities to provide fraud protection and payment guarantee services.

Bank Defendants requested Plaintiffs to identify businesses that provide these types of services.  Absent this information, Bank Defendants claim there is no way to articulate a search for responsive documents.

Plaintiffs will provide a list, if possible.

**Requests Nos. 32-33:**

Plaintiffs explained that this request is relevant because analyses of foreign markets may not only provide a benchmark for interchange fees, but also the conduct of the payment card business in the United States.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -12-

Bank Defendants objected to these requests because they are too broad. They proposed that the requests be limited to solely interchange fees.

In light of Plaintiffs' explanation and the Bank Defendants' objection, both sides agreed to attempt to narrow and rewrite the requests. We will do so in a separate letter.

**Request No. 34:**

Bank Defendants objected to the request to the extent it seeks "all documents" because it is burdensome and overbroad. They proposed producing documents based on the custodial search protocol. Plaintiffs agreed to this proposal.

**Request No. 35:**

The parties agreed to defer the discussion regarding this request until they can determine a way to identify relevant cardholder communications. Because this type of information is uniquely in the possession of the Bank Defendants, Plaintiffs request that they provide a proposal concerning how to narrow the request.

**Request No. 36:**

Bank Defendants objected to this request on the grounds of burden because it is like "finding a needle in a haystack." In response to this objection, Plaintiffs explained that this request seeks routine or generic letters and announcements regarding changes in rates and periodic questions about interchange fees, including negotiations or complaints.

Bank Defendants agreed to discuss this with their clients to determine if there is a practical way to locate these types of documents.

**Request No. 37:**

Based on the custodial search protocol, Bank Defendants agreed to produce actual communications among the banks or documents reflecting such communications.

**Requests Nos. 38-39:**

Plaintiffs agreed to seek these materials from the Network Defendants.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -13-

### Request No. 40:

Plaintiffs explained that this request seeks data showing effective interchange rates by individual bank as opposed to system or bank wide data. Plaintiffs are willing to accept raw data if it can be manipulated.

Bank Defendants agreed to provide their final position with respect to this proposal.

### Request No. 41:

Plaintiffs explained that this request seeks to capture the negotiation process not just contracts. The request therefore seeks memorandum discussing the following: 1) over-arching bank policy; and 2) contract negotiations.

Bank Defendants proposed using the custodial search protocol and producing copies of Requests for Proposals from large merchants, along with responses, which might capture this information.

Plaintiffs will provide a response to this proposal in a separate letter.

### Request No. 42:

Plaintiffs explained that this request seeks documents concerning competition, in general, for merchant business, not individual solicitations. Responsive documents include business plans and pitch books. Although Plaintiffs believe that this explanation is sufficient to identify the documents sought by this request, we nevertheless agreed to try to redraft the request. We will do so in a separate letter.

### Request No. 43:

Plaintiffs agreed to defer Bank Defendants' responses to this request until Visa produces responsive documents.

### Request No. 44:

Bank Defendants agreed to produce exemplar contracts along with contracts with the named Plaintiffs. Bank Defendants also proposed to narrow the request by producing exemplar contracts for the top twenty merchants.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -14-

While Plaintiffs agree, in principle, with this proposal, we do not agree with limiting it to just the top twenty merchants. Plaintiffs explained that the appropriate number of merchants for whom exemplar contracts will be produced cannot be determined without reviewing a list of the top 100 merchants. Plaintiffs also requested that the contracts be produced going back to 1992.

Bank Defendants will provide us with a final position with respect to the following: 1) providing us with a list of the top 100 merchants; and 2) producing contracts predating 2000.

In addition to contracts, Plaintiffs explained that this request seeks analyses and memoranda discussing whether interchange fees are passed onto merchants. Bank Defendants agreed to produce these documents using the custodial search protocol.

**Requests Nos. 45-46:**

Plaintiffs explained that this requests seeks documents which identify the types of data which exist and how it is organized. This data is relevant to the following issues in the case: 1) identifying less restrictive alternatives to interchange pricing; 2) quantifying damages; and 3) Plaintiffs' price discrimination claims.

Despite Plaintiffs' explanation, we agreed to defer this request until after Rule 30(b)(6) depositions are completed.

**Requests Nos. 47-48:**

Plaintiffs agreed to limit this request to the fee schedules applicable to the named Plaintiffs. While Bank Defendants agree that this information is relevant, they assert that schedules should be obtained from the Network Defendants. Plaintiffs agreed to provide a final position with respect to this proposal. We will do so in a separate letter.

**Requests Nos. 49-50**

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until Rule 30(b)(6) letters are provided.

**Request No. 51:**

Plaintiffs are unwilling to narrow this request.

Defendants proposed that responsive materials would be revealed by the custodial search protocol and searches of their respective strategy and planning groups. Data (such as costs and revenue) might also be obtained through the custodial search protocol.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -15-

### Request Nos. 52-54:

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until the Network Defendants produce responsive documents.

### Request No. 55:

Plaintiffs agreed that the Bank Defendants can use the custodial search protocol, in addition to searches of their respective planning and strategy groups, to find and produce responsive documents.

### Requests Nos. 56-57

Plaintiffs agreed that the Bank Defendants can use the custodial search protocol to search for and produce responsive documents.

### Request No. 58:

Plaintiffs explained that this request seeks materials relating to whether interchange fees are included in, or otherwise factored into, the prices charged by merchants for goods and services.

Bank Defendants agreed to produce responsive materials using the custodial search protocol.

### Request No. 59:

Plaintiffs explained that this request seeks materials relating to costs of merchants' accepting credit and debit cards.

Bank Defendants agreed to produce responsive materials using the custodial search protocol.

### Request No. 60:

Plaintiffs explained that this request focuses on the Network Defendants' rules, not whether by-pass is technologically feasible.

Bank Defendants agreed to produce responsive materials using the custodial search protocol.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -16-

**Request No. 61:**

Plaintiffs explained that this request seeks agreements to use interchange fees other than the Network Defendants' default rates.

Bank Defendants agreed to produce contracts and related documents using the custodial search protocol.

**Requests Nos. 62-63:**

Plaintiffs agreed to provide a definition of "inter-processed." Plaintiffs also agreed to try to provide Bank Defendants with a proposal to narrow these requests. We will do so in a separate letter.

**Request No. 64:**

Bank Defendants will use the custodial search protocol to search for and produce responsive documents.

**Request No. 65:**

Bank Defendants agreed to use the custodial search protocol to search for and produce responsive documents.

**Request No. 66:**

Plaintiffs agreed to provide Bank Defendants with a proposal to narrow this request. We will do so in a separate letter.

**Request No. 67:**

Plaintiffs agreed to ask the Network Defendants to identify joint payment card groups. Plaintiffs further agreed to limit this request to just payment card issues and that the custodial search protocol is satisfactory for purposes of responding to this request.

**Request No. 68:**

Bank Defendants agreed to produce the Network Defendants' Board of Director packages. Other than these documents, Plaintiffs agreed that the Bank Defendants can defer producing additional responsive documents until the Network Defendants produce responsive materials.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -17-

### Requests No. 69-70:

Bank Defendants claim that all documents reflecting duality issues were produced to the Department of Justice and therefore are located in those productions, which have already been produced in this litigation. In addition, Bank Defendants assert that they do not have any indexes of these documents, or any other manageable way of searching them, and therefore have no way of identifying by bates ranges the responsive documents located in the Department of Justice production.

Plaintiffs agreed to ask the Network Defendants if they have a way of searching the documents to identify responsive documents by bates ranges.

### Request Nos. 71-84:

With respect to document requests number 71-84, many of these requests overlap, at least in part, with the anti-steering restraint document requests, which were separately propounded to the Bank Defendants. To the extent there is any overlap between the two sets of requests, the parties agreed to address any disputes at a separate meet and confer, which will focus exclusively on anti-steering discovery requests.

### Request Nos. 71-74:

Plaintiffs agreed to limit these requests to the anti-steering rules relevant to the issues in this case. Plaintiffs also agreed to defer seeking copies of the Network Defendants' bylaws and rules until the Network Defendants produce responsive documents.

### Request No. 75:

The parties agreed to defer discussing this request until the meet and confer on the anti-steering discovery requests.

### Requests Nos. 76-78:

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until the Network Defendants produce responsive documents.

### Request No. 79:

The parties agreed to defer discussing this request until the meet and confer on the anti-steering discovery requests.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -18-

### Request Nos. 80:

Plaintiffs agreed that the Bank Defendants can defer responding to this request until the Network Defendants produce responsive documents.

### Request No. 81:

Plaintiffs explained that this request seeks communications with either the Network Defendants or between a merchant and an acquirer regarding Network Defendants' rules infractions. Plaintiffs agreed to limit this request to the rules enumerated in the Complaint.

### Request No. 82:

The parties agreed to defer discussing this request until the meet and confer on the anti-steering discovery requests.

### Request Nos. 83-84:

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until the Network Defendants produce responsive documents.

### Request No. 85-87:

Plaintiffs are seeking a single set of pleadings from the actions referenced in these requests. Plaintiffs agreed that the Bank Defendant can defer responding to these requests until Visa produces responsive documents.

### Request Nos. 88-94:

Plaintiffs explained that these requests seek the following documents: 1) any submissions made by the Defendant Banks to foreign entities in connection with any investigation of interchange fee pricing and/or merchant restraints; and 2) requests for information from any foreign entity to the Defendant Banks in connection with any investigation of interchange fee pricing and/or merchant restraints. Plaintiffs will seek the other materials requested in these document requests from the Network Defendants.

### Request No. 95:

While Bank Defendants did not refuse to produce advertising materials, they objected to this request on relevance and burden grounds.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -19-

Plaintiffs explained that advertising is relevant to the forms and types of competition in the payment card market. This includes competition, as exemplified in advertising, on both sides of Bank Defendants' asserted two sided market.  In response to this request, Plaintiffs are willing to accept the following: 1) high level summary type materials such as summaries of advertising campaigns and marketing plans; and 2) exemplars of advertisements run in print media, television and radio over certain periods of time.

Despite our explanation and examples, Bank Defendants claimed that they did not know what we are seeking or how they can find it.  In an attempt to understand the types of advertising materials Plaintiffs are seeking, Bank Defendants requested that we make a proposal, which explicitly sets forth the following: 1) distinguishes between acquiring and issuing sides of the business; 2) types of media; and 3) frequency of the advertising.

Plaintiffs will provide you with a final position on this issue.  On the other hand, Plaintiffs requested that Bank Defendants consider the issue further based on our explanations as set forth above.

**Request No. 96:**

Using the custodial search protocol, Bank Defendants agreed to produce analyses concerning the impact of interchange fees and the merchant restraints referred to in the Complaint.  Bank Defendants agreed to consider producing analyses of the impact of the Honor All Cards Rule and provide us with their final position on this request.

**Request No. 97:**

Plaintiffs explained that this request was designed to seek agreements, and the underlying negotiations, on interchange fees charged to the named Plaintiffs in the *Wal-Mart* case on Visa cards after July 31, 2003, not routine communications.

Bank Defendants agreed to produce these materials using the custodial search protocol.  In order to facilitate Bank Defendants' response, Plaintiffs agreed, to provide a list identifying all of the named plaintiffs in the *Wal-Mart* case.

Bank Defendants asserted that Plaintiffs' request for this information provides a basis for seeking discovery from absent class members – meaning that Bank Defendants were entitled to seek discovery from the named plaintiffs in *Wal-Mart.*

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -20-

Plaintiffs rejected this assertion. We explained that although we are willing to consider discovery of absent class members under appropriate circumstances, there is a presumption against taking such discovery. We further explained that this is not a reciprocity issue because we are seeking the information from the Bank Defendants not the named Plaintiffs in *Wal-Mart*.

**Request No. 98:**

Plaintiffs proposed limiting this request to information for the top 20 supermarkets. Defendants rejected this proposal because it is too broad. Instead, Bank Defendants proposed that this request be limited in the same manner as request number No. 97. Plaintiffs rejected this proposal and are unwilling to narrow it to any list other than the top 20 supermarkets. The parties are therefore at an impasse.

If the parties can resolve this dispute, they agreed that the custodial search protocol could be used to search for and produce responsive documents.

**Request No. 99:**

Bank Defendants proposed deferring this request until expert reports are produced. At that time, they would identify any articles cited in the expert reports for which Bank Defendants provided funding.

Plaintiffs rejected this proposal. While Plaintiffs agreed to attempt to narrow the request, Plaintiffs are not willing to defer a response until expert reports are served.

**Request No. 100:**

Plaintiffs agreed that the Bank Defendants can defer responding to this request.

**Request No. 101:**

Although Bank of America originally stated that it would produce documents reflecting consideration of issuing Amex and Discover cards since January 1, 2000, other Bank Defendants stated that they would only produce documents which reflect interchange and merchant discount fees. The remaining portions of the documents would be redacted.

Plaintiffs rejected this proposal as the redacted materials were necessary to provide context to those portions of the document that are produced.

Defendants agreed to consider this issue further and provide us with a final position.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -21-

### Request No. 102:

Plaintiffs agreed that the Bank Defendants can defer responding to this request.

### Request No. 103:

Plaintiffs agreed to narrow this request in order to provide further guidance as to the type of documents and market at issue. Bank Defendants agreed to search for and produce documents using the custodial search protocol.

### Request Nos. 104, 105 & 107-110:

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until the Network Defendants produce documents.

### Request No. 106:

Plaintiffs explained that this document request seeks summary type documents on an annual basis that reflect expenditures on promotion and advertising of credit card products.

### Request No. 111:

Plaintiffs agreed to consider proposing a way to narrow this request.

Bank Defendants also agreed to consider entering into a stipulation stating that checks clear at par.

### Request No. 112:

While Plaintiffs agreed to consider permitting Bank Defendants to defer responding to this request, we cannot make this determination without information identifying who runs and organizes the meetings at issue. After we receive this information, Plaintiffs will provide Bank Defendants with our final position on this issue.

### Request Nos. 113:

Plaintiffs proposed that Bank Defendants with an acquiring business produce reports setting forth the number of chargebacks by reason code and a key for the reason codes.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -22-

Bank Defendants agreed to consider this proposal but requested that Plaintiffs clearly articulate the relevance of the requested information. We will explain the relevance of this information in a separate letter.

### Request Nos. 114-118:

Plaintiffs agreed that the Bank Defendants can defer responding to these requests until the Network Defendants produce documents.

### Request No. 119:

Bank Defendants proposed that Plaintiffs seek this information from the files of the named Plaintiffs. Plaintiffs agreed to consider this proposal and provide Bank Defendants with our final position. After further consideration, Plaintiffs reject this proposal because Plaintiffs cannot assure that they have complete and accurate records containing the requested information.

Defendants also requested that Plaintiffs provide them with the merchant numbers for the named Plaintiffs in this action. Plaintiffs agreed to do so and will provide it in a separate letter.

### Request No. 120:

Plaintiffs agreed that the Bank Defendants can defer responding to this request until the Network Defendants produce documents.

### Request No. 121:

Plaintiffs explained that this request seeks summary documents which provide the requested information. This information is relevant because Bank Defendants' experts (as well the Network Defendants' experts) will likely assert that high interchange rates are justified, in part, by losses suffered by issuers when cardholders default on payment.

Based on this explanation, Bank Defendants agreed to consider responding to this request and to provide us with their final position. Bank Defendants also requested that we clearly articulate the relevance.

While we believe that our prior explanation was sufficient to demonstrate the relevance of the requested information, we provide the following clarification. It is Plaintiffs' understanding that the risk of loss (or non-payment) has been one of the articulated justifications for interchange rates. Any information regarding risk of loss (or non-payment) is therefore relevant to this articulated justification. This document requests seeks this type of information. In particular, it seeks data

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -23-

which would demonstrate the known risk of loss that issuers of credit cards accept when issuing credit cards.

**Request No. 122:**

Bank Defendants agreed to produce summary documents, analyses, and reports using the custodial search protocol.

**Request No. 123:**

Bank Defendants agreed to produce "pitch type" documents using the custodial search protocol.

**Request No. 124:**

Plaintiffs agreed to limit this request to overview or summary documents, including business plans (not just annual plans), analyses and strategies reflecting how issuing banks compete in the payment cards market.

The parties agreed to consider providing a proposal which narrows the request to just payment cards.

**Request No. 125:**

Plaintiffs explained that this information is relevant because we contend that there is no relationship between fraud rates and interchange fees. The request is focused on transactions with named Plaintiff merchants.

Bank Defendants stated that while they cannot produce this information at the network level, they would consider providing information about fraud rates in their possession. Bank Defendants will provide us with their final position.

**Request No. 126:**

Plaintiffs agreed that the Bank Defendants can defer responding to this request until the Network Defendants produce documents.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -24-

**IV.**   **Interrogatories**

**Interrogatory No. 1:**

Bank Defendants originally proposed producing annual business plans in response to this interrogatory.  Plaintiffs rejected this proposal, because it is too narrow in terms of temporal scope.  Bank Defendants understand Plaintiffs' concern and agreed to produce long range plans as well – *e.g.* 3 and/or 5 year plans.

Plaintiffs also explained that this interrogatory is not limited to simply the final versions of business plans.  It seeks information generated in connection with the business plans, including, but not limited to, drafts of business plans, notes of meetings during which business plans were discussed, and e-mails reflecting communications about business plans.   Defendants proposed producing business plans and related materials (notes, drafts, etc.), using the custodial search protocol.

The parties have failed to reach an agreement regarding what constitutes a "product" for purposes of this interrogatory.

**Interrogatory No. 2:**

Plaintiffs explained that the Rule 30(b)(6) depositions are insufficient to respond to this interrogatory because these depositions are focused on current structure, while this interrogatory seeks historical information.  In addition, it seeks information about corporate structure relating to the card business going up to organizational chain to the holding company level.

Plaintiffs agreed that the Bank Defendants can defer responding to this interrogatory.  In the interim, each Bank Defendant agreed to analyze its individual production of organizational charts and Rule 30(b)(6) depositions in order to determine whether they have provided information sufficient to respond to this interrogatory.

**Interrogatory No. 3:**

Bank Defendants limited their response to just the Network Defendants because the term joint venture is not defined and is therefore vague and ambiguous.  Plaintiffs explained that the term joint venture is not limited to just business arrangements where the parties share profits and losses.

Despite this explanation, Defendants contend that they do not know what constitutes a joint venture for purposes of this interrogatory.  Bank Defendants did state that they generally do not participate in any joint ventures with other payment card issuers, acquirers or processors.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -25-

In order to eliminate any doubt as the meaning joint venture, Plaintiffs agreed to provide Bank Defendants with a definition and will do so in a separate letter.

**Interrogatory No. 4:**

There is no dispute as to this interrogatory. Bank Defendants have responded.

**Interrogatory No. 5:**

Plaintiffs explained that while it is acceptable for Bank Defendants to rely upon the Network Defendants' response to similar interrogatories, we require a verified written response to this interrogatory and all others even if the Bank Defendants incorporate by reference the Network Defendants' responses. Defendants agreed to provide verified responses once the Network Defendants provide interrogatory responses.

**Interrogatory No. 6:**

Bank Defendants agreed to provide a full and complete response to this interrogatory after the Network Defendants provide a list of relevant committees.

**Interrogatory No. 7:**

Plaintiffs stated that we are entitled to a full and complete response to this interrogatory now. There is no reason for the Bank Defendants to defer responding to this interrogatory until the Network Defendants provide a response to a similar interrogatory.

Although we insist that Bank Defendants respond to this interrogatory, Plaintiffs proposed limiting the sources for the requested information to the agreed upon list of custodians. Despite this proposed limitation, Bank Defendants believe that it is too burdensome to respond to this interrogatory. Nevertheless, Bank Defendants agreed to talk further and discuss this proposal with their clients and provide us with a final position.

**Interrogatory No. 8:**

Bank Defendants contend that they cannot feasibly respond to this interrogatory because they do not maintain a master or central list of trade associations. According to Bank Defendants, for this reason, American Express withdrew a similar interrogatory propounded to a number of bank defendants in the *American Express v. Visa* litigation. In an attempt to compromise, Bank Defendants proposed providing a response solely as to institutional membership in trade

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -26-

associations, not on an individual level, and limiting the information to just the associations identified by the agreed upon list of custodians.

Plaintiffs rejected this proposal because it prevents us from identifying the individual members of the trade associations, which, in turn, precludes us from obtaining discovery about opportunities to talk and conspire outside of meetings of Visa and/or MasterCard.

**Interrogatories Nos. 9 & 10:**

Defendants proposed limiting their responses by identifying instances where they charged an interchange fee other than the Network Defendants' default fee. Plaintiffs rejected this proposal because we are entitled to a full and complete response.

While there are number of ways to provide a complete response, one acceptable response is stating that the Bank Defendants utilized the Network Defendants' default interchange fees except for the specific instances enumerated in the response. In addition, Plaintiffs expect that the Bank Defendants will provide not only the reasons why they chose an interchange fee other than default fee, but also an explanation as to why they chose to utilize default rates. Whether a bank chooses to use the default interchange fee or a different amount for the fee, the rationale underlying these decisions is discoverable as they are business decisions.

According to Bank Defendants, this explanation changed their understanding of the information sought by these interrogatories. Bank Defendants therefore agreed to discuss this explanation further among themselves and with their clients and provide us with their final position.

**Interrogatory No. 11:**

Bank Defendants have agreed to produce merchant contracts which contain the requested information. After reviewing these contracts, if Plaintiffs do not believe that they provide information sufficient to respond to this interrogatory, then Plaintiffs can request Bank Defendants to provide further information.

**Interrogatories Nos. 12-17 & 19-21**

Plaintiffs agreed that Bank Defendants can defer responding until the Network Defendants provide responses to similar interrogatories. This agreement is predicated on Bank Defendants providing a verified response even if the response is solely that the Bank Defendants incorporate by reference the responses of the Network Defendants.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -27-

### Interrogatory No. 18:

Plaintiffs explained that we are entitled to a full and complete response without waiting for the Network Defendants to respond. This interrogatory seeks the Bank Defendants' understanding of the methodology employed with respect to all interchange fee changes adopted by the Network Defendants between June 1, 2003 and May 31, 2004. As we explained, each Bank Defendants' subjective understanding may differ from that of other banks, as well as that of the Network Defendants.

Bank Defendants refused to provide a response at this time because they contend it is more appropriate to obtain this information from the Network Defendants. They further contend that this process provides an orderly fashion for conducting discovery.

The parties are at impasse with respect to this interrogatory.

### Interrogatory No. 22:

This interrogatory is governed by the parties' agreement as to Interrogatory 9 above.

### Interrogatories Nos. 23 & 24:

Plaintiffs agreed that Bank Defendants can defer responding until the Network Defendants respond to a similar interrogatory. This agreement is conditioned on Bank Defendants providing verified written responses after the Network Defendants respond.

### Interrogatory No. 25:

Plaintiffs agreed that Bank Defendants do not need to review every individual transaction to identify transactions which did not apply the default interchange fee. Bank Defendants must only provide a verified response, which includes a statement that they conducted a good faith, diligent and reasonable search for this information.

### Interrogatory No. 26:

The parities agreed that the custodial search protocol could be used for purposes of responding to this interrogatory. In order to provide a full and complete response, Plaintiffs require that the Bank Defendants identify both proprietary and Network Defendant branded premium cards.

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

July 19, 2006
Page -28-

### Interrogatory No. 27:

Bank Defendants proposed identifying discreet reports because it is too burdensome to identify all documents. Otherwise, Bank Defendants will just produce the documents. Plaintiffs agreed to consider this proposal.

### Interrogatory No. 28:

Plaintiffs agreed that Bank Defendants can defer responding until the Network Defendants respond to a similar interrogatory. This agreement is conditioned upon Bank Defendants providing a verified written response after the Network Defendants respond.

### Interrogatories Nos. 29 & 30:

Plaintiffs explained that this interrogatory seeks information relating to whether bypassing the Network Defendants' card processing networks on transactions using Visa and/or MasterCard branded cards is technologically and economically feasible. Based on this explanation, Bank Defendants agreed to consider responding to these interrogatories and will provide us with their final position.

### Interrogatory No. 31:

Plaintiffs explained that providing documents in response to this interrogatory is insufficient to fully respond because it is possible that meetings occurred which are not reflected in documents or other written materials.

Bank Defendants proposed producing documents and then attempting to verify whether there were any other meetings not reflected in the documents. Plaintiffs will agree to this proposal if Bank Defendants agree to seek this information from the agreed upon list of custodians.

### Interrogatory Nos. 32 & 33:

Bank Defendants proposed producing documents containing responsive information and then providing further information once the Network Defendants identify meetings. Plaintiffs rejected this proposal because there may be meetings which were not arranged by the Network Defendants.

Plaintiffs proposed obtaining the business calendars from employees. Bank Defendants rejected Plaintiffs' proposal. Instead, Bank Defendants suggested that Plaintiffs take the Rule 30(b)(6) depositions to determine whose calendars should be obtained and reviewed.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -29-

### Interrogatory No. 34:

Plaintiffs agreed to consider providing a list of foreign judicial, legislative or administrative proceedings. We will do so in a separate letter. Plaintiffs also agreed to limit the Bank Defendants' responses to the materials submitted in connection with these proceedings.

Bank Defendants agreed to talk further with their clients to determine if they can identify the proceeding and the information submitted in connection with them. Bank Defendants will provide their final position on this issue.

### Interrogatories Nos. 35-37:

Bank Defendants requested that these interrogatories be limited in the same manner as Document Request No. 99 and that their responses be deferred until expert reports are submitted.

While Plaintiffs are unwilling to defer Bank Defendants' response until expert reports are exchanged, we will consider limiting these interrogatories in a manner similar to Document Request No. 99.

### Interrogatory No. 38:

Plaintiffs clarified that there was a typographical error in subpart c of the interrogatory. Subpart c refers to the Bank Defendants, not Visa. Plaintiffs also offered to limit the time period for the information requested in this interrogatory and clarified that the interrogatory only seeks the identity of consultants who performed work relating to the subject matters alleged in the Complaint.

Bank Defendants rejected Plaintiffs' proposals and refuse to respond because the interrogatory is too broad as to both subject matter and time. Bank Defendants also refused to provide any proposal to limit the scope of the interrogatory or otherwise identify what information they would be willing to provide because they claim it is not their job to do so.

While Plaintiffs believe that we are at impasse on this interrogatory, we agreed to consider narrowing it, if possible.

### Interrogatory No. 39:

Plaintiffs clarified that there was a typographical error in subpart c of the interrogatory. Subpart c refers to the Bank Defendants, not Visa. Plaintiffs also proposed limiting the interrogatory to solely litigation relating to payment cards.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -30-

While the Bank Defendants will consider the interrogatory as narrowed, they stated that not all payment card litigation is relevant to this litigation. Bank Defendants will talk further about this interrogatory and provide us with their final position.

Plaintiffs also agreed to consider providing a way to narrow this interrogatory.

**Interrogatory No. 40:**

In response to Bank Defendants' relevance objection, Plaintiffs explained that the information sought is relevant because it might identify former employees with knowledge about the issues in the litigation who might otherwise not be identified. It may also identify former employees who were terminated and therefore may be motivated to provide testimony that is less favorable to Defendants.

Plaintiffs proposed limiting the interrogatory to just management level employees in the payment card business. Bank Defendants rejected this proposed limitation because the payment card business is too large and the term "management level" employee is too vague. Bank Defendants suggested that the identity of terminated employees should be guided by the Rule 30(b)(6) depositions and production of organization charts.

Plaintiffs agreed to consider generating a list of employees. In return, Bank Defendants will identify who, if anyone, was terminated and the reasons for their termination. Defendants agreed to consider responding to such a list.

After further consideration, Plaintiffs are willing to generate a list of employees following the completion of the Rule 30(b)(6) process. Plaintiffs request that Bank Defendants, within 20 days of receiving this list, identify anyone on the list who has been terminated, when they were terminated and the reasons why they were terminated. Please provide a response to this proposal.

**Interrogatories Nos. 41-43:**

Bank Defendants object to these interrogatories because they are essentially contention interrogatories and require expert opinions prior to the dates agreed upon in the stipulated Case Management Order.

While Plaintiffs understand Bank Defendants' objections and are willing to defer responses at this time, we believe that we are entitled to this information prior to expert discovery because it may eliminate the need for certain discovery which otherwise would be essential to Plaintiffs' claims. Bank Defendants agreed to consider Plaintiffs' proposal and provide us with your final position on this issue.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -31-

Bank Defendants proposed that Plaintiffs provide some information early in the litigation regarding their damages theory. Plaintiffs rejected this proposal because this request is improper as Plaintiffs' damages theory is not directly related to whether there is any dispute regarding the relevant market.

**Interrogatory No. 44:**

Bank Defendants agreed to provide a Rule 33(d) response to this interrogatory but will not provide a time frame for producing the documents. Plaintiffs are amenable to a Rule 33(d) response, but request Bank Defendants to commit to a date for producing the documents.

**Interrogatories Nos. 45-46:**

Plaintiffs agreed that the Bank Defendants can defer their response to interrogatory number 45 until the Network Defendants respond. As to interrogatory number 46, Bank Defendants will adopt whatever position the Network Defendants eventually take to a similar interrogatory.

**Interrogatory No. 47:**

There is no dispute as to this interrogatory because Bank Defendants agreed to provide a response.

**Interrogatory No. 48:**

Bank Defendants proposed deferring responding to this interrogatory because the information will be obtained from the Rule 30(b)(6) depositions. While Plaintiffs are willing to defer Bank Defendants responses until these depositions are completed, we require that Bank Defendants provide a verified written response to this interrogatory. Please let us know whether the Bank Defendants will do so.

**Interrogatory No. 49:**

Bank Defendants objected to this interrogatory because it is too broad as it seeks the identity of "all people" and the term "most knowledgeable" is vague. Bank Defendants proposed that it would be more efficient to get the requested information through the Rule 30(b)(6) process.

Plaintiffs rejected this proposal for at least two reasons. First, it is possible that the Rule 30(b)(6) deponents may not know this information. Second, the Federal Rules of Civil Procedure do not limit the manner in which Plaintiffs can obtain relevant information. The rules permit a party

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -32-

to seek information through a number of discovery devices including interrogatories, depositions and document requests even though they might result in cumulative or duplicative responses or information.   Plaintiffs request a verified written response to this interrogatory unless Bank Defendants agree to be bound by the Rule 30(b)(6) deposition testimony in the same manner as they would be bound by a verified interrogatory response.

**Interrogatories Nos. 50-57:**

Plaintiffs agreed that the Bank Defendants can defer responding to these interrogatories until after the Rule 30(b)(6) deposition process is completed.

Plaintiffs proposed that Bank Defendants provide written responses once there is an agreed upon list of custodians.  Bank Defendants agreed to consider this proposal and to provide us with their final position.

**Interrogatory No. 58:**

Bank Defendants proposed producing documents which provide the information requested in this interrogatory.  Plaintiffs agreed to this proposal.

**Interrogatories Nos. 59-63, 66 & 67:**

Plaintiffs agreed that the Bank Defendants can defer responding to these interrogatories because the requested information should be provided in letters by the Bank Defendants as part of the Rule 30(b)(6) process.

**Interrogatory No. 64:**

Plaintiffs explained that this interrogatory seeks Banks Defendants to identify whether they have a central repository for publications and reports, and if so, to identify the person responsible for it.  In Plaintiffs' experience, older corporate records and reports of consultants are frequently stored in such locations even though they no longer exist in the files of relevant custodians.

Despite this explanation, Bank Defendants object to this interrogatory because, as drafted, it is too difficult and burdensome to provide responsive information. Bank Defendants also rejected Plaintiffs request to narrow the interrogatory in way in which they would be willing to provide responsive information.

The parties have reached an impasse with respect to this interrogatory.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -33-

**Interrogatory No. 65:**

Plaintiffs proposed limiting this interrogatory to trade publications relating to payment cards which are received by the agreed upon list of custodians. Bank Defendants agreed to consider this proposal but also requested that it be further limited to solely custodians who are current employees.

**Interrogatory No. 68:**

Bank Defendants suggested that this interrogatory is similar to Document Request 103 propounded to the Network Defendants and had reason to believe that Plaintiffs had agreed to limit that request to materials reflecting effects on interchange and merchant restraints. Based on this belief, Bank Defendants requested that Plaintiffs agree to limit this interrogatory in the same manner.

Plaintiffs informed Bank Defendants that their belief was incorrect. While it is true that, at least, Visa proposed limiting request 103 in this manner, Plaintiffs rejected this proposal. Accordingly, Visa's proposal does not serve as a basis for limiting interrogatory number 68. In addition, Plaintiffs reject Bank Defendants' proposed limitation because interrogatory number 68 and network document request 103 do not seek the same information.

In response to Bank Defendants' relevance objection, Plaintiffs explained that this interrogatory is relevant because we believe that there may have been an agreement to raise interchange fees on credit cards to fund the settlement in the *Wal-Mart* litigation. Any such agreement is certainly relevant to Plaintiffs' price fixing claims and information relating to the settlement is relevant to demonstrate how the Network Defendants function and are funded.

Bank Defendants stated that they believe that the requested information will be produced in response to other discovery requests. Nevertheless, Bank Defendants are amenable to producing communications evaluating the impact of the settlement on interchange fees and merchant restraints.

Plaintiffs reject this proposal because it is too narrow. The parties are therefore at impasse with respect to this interrogatory.

**Interrogatory No. 69:**

The parties understand that the networks will produce standard form contracts and non-standard contracts with the top twenty banks. Bank Defendants agree to produce responsive contracts. There is no dispute as to this interrogatory.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -34-

**Interrogatory No. 70:**

There is no dispute as to this interrogatory because Bank Defendants agree to produce copies of their antitrust compliance policies.

**Interrogatories Nos. 71-75:**

In response to Bank Defendants' relevance objection, Plaintiffs explained that the mergers may have an impact on market related issues given the size and power of the payment card issuing banks involved in the merger. For example, analyses or consideration of the banks' ability to start an independent payment card network relates to barriers to entry which is relevant to the relevant market inquiry. This information is relevant to this litigation even though it does not directly relate to interchange fees.

Plaintiffs also explained that we are not seeking the identity of every report or analyses regarding the transactions, but rather are seeking a discreet category of documents related to the payment card market. At this time, Plaintiffs are not in a position to provide a list of the discreet categories because we have no idea what types of reports and analyses were created in connection with these mergers.

Plaintiffs proposed that Bank Defendants provide a list of reports and/or analyses generated in connection with the mergers, which are in the possession of the agreed upon list of custodians. Bank Defendants rejected this proposal.

Defendants Bank of America and J.P. Morgan Chase proposed that these reports and analyses be captured through the custodial search protocol. Wachovia will get back to us regarding this proposal. Plaintiffs accepted the proposal and therefore a response can be deferred until the documents are produced.

**Interrogatory No. 77:**

The parties agreed that this interrogatory is similar to the information sought in Document Request number 101. Defendants' proposal with respect to Document Request No. 101 – which they will provide to Plaintiffs – will govern their response to this interrogatory. Plaintiffs agree with this approach.

**Interrogatory No. 78:**

Plaintiffs clarified the meaning of the term "investigation." This term was not meant to implicate any type of government or regulatory investigation into interchange pricing. To the

# Berger&Montague,P.C.
ATTORNEYS AT LAW

July 19, 2006
Page -35-

contrary, Plaintiffs are aware that the Kansas City Federal Reserve Bank, and possibly other Federal Reserve Banks, had made a series of inquires to payment card issuers, and others, seeking information and materials relating to interchange fees and merchant restraints for purposes of academic studies. Plaintiffs are seeking any information and materials submitted to the Kansas City Federal Reserve Bank in response to these inquiries.

Bank Defendants agreed to produce copies of materials submitted to the Kansas City Federal Reserve Bank but are unwilling to search for information provided in response to any other unidentified studies or inquires. In order to limit this interrogatory, Plaintiffs agreed to provide a list of Federal Reserve Banks which have done academic studies relating to interchange fees and/or merchant restraints. We will do so in a separate letter.

## V.     Conclusion

Thank you again for meeting with us to discuss the Bank Defendants' responses to the first set of omnibus discovery requests. We look forward to receiving your response on July 26 and are hopeful that we can resolve many, if not all, of our outstanding disputes.

Very truly yours,

K. Craig Wildfang
Robins, Kaplan, Miller
& Ciresi, L.L.P.

Bonny E. Sweeney
Lerach Coughlin Stoia
Geller Rudman &
Robbins LLP

H. Laddie Montague, Jr.
Merrill G. Davidoff
Michael J. Kane
Berger & Montague, P.C.

MJK/mcr

cc:     All Defense Counsel
William Blechman, Esquire

407693

**MORRISON | FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

Writer's Direct Contact

212.468.8035
MPLadner@mofo.com

July 28, 2006

<u>Via E-Mail and Overnight Delivery</u>

K. Craig Wildfang, Esq.
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402

Bonny E. Sweeney, Esq.
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA  92101

H. Laddie Montague, Jr., Esq.
Merrill G. Davidoff, Esq.
Michael J. Kane, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA  19103

Re:     *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation—*
        *MDL-05-1720 (JG)(JO)*

Dear Counsel:

      We write on behalf of the Banks in the above-captioned matter to respond to your July 19, 2006 letter purporting to summarize the parties' three meet-and-confer sessions held on June 21, June 29, and July 11. As you will recall, at the end of our meeting on July 11, Plaintiffs agreed to provide the Banks with a letter that would (i) summarize the status of the parties' discussions and (ii) narrow and clarify specific items of Plaintiffs' First Set of Omnibus Discovery consistent with our discussions of those items in the meet-and-confer sessions. The Banks in turn agreed to respond to such a letter in order to advance the meet-and-confer process as effectively and efficiently as possible.

      Unfortunately, your July 19 letter provides us with only a small portion of the information we need to accomplish that goal, and which you had committed to provide. First, your letter does not narrow or clarify any individual request, but merely states that such a letter will be forthcoming. Until we have the Plaintiffs' proposed clarifications, we are unable to reach agreement on the scope of a number of requests, including Document Request Nos. 6-10, 18, 21, 23-26, 29-33, 41-42, 47-48, 62-63, 66, 68, 95, 99, 103, 111-13, 119, and 124, and Interrogatory Nos. 3, 27, 34-39, and 78. The Banks cannot respond to your proposed limiting language until

ny-705132

MORRISON | FOERSTER

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Two

we know what it is.  We look forward to receiving as soon as possible your letter narrowing and clarifying certain individual interrogatories and document requests.

Second, for a large number of requests, your letter purports to summarize what the Banks "agreed to produce," but fails to indicate whether the Plaintiffs have agreed to the approach suggested by the Banks.  (*Compare* the discussion regarding Requests 7 and 8 that appears at page 8 of your letter.)  With respect to these requests, we find it impossible to determine whether Plaintiffs have agreed to the Banks' proposed approach, or whether instead you expect the Banks to provide the suggested material while at the same time Plaintiffs demand more.  Such an approach obviously would be inconsistent with your meet-and-confer obligations.  We would appreciate the Plaintiffs' clarifying their position in this regard.

In sum, given the often overlapping (if not outright repetitive) nature of the Discovery Requests, we simply cannot respond to what amounts to the "first half" of the letter you promised us on July 11 until we see the substance of the "second half" (the proposed clarification and narrowing).  This letter will therefore not attempt to respond to the portion of your July 19 letter that addressed the specific document requests and interrogatories.  We look forward to receiving the "separate letter" referred to throughout your July 19 letter, and would ask that you also include in that "separate letter" a statement clarifying the issue described in the preceding paragraph.  As we promised during our meeting on July 11, the Banks will aim to respond to your complete letter regarding the specific interrogatories and document requests about a week after we receive the "separate letter."

Your July 19 letter also includes a number of "overarching issues," many of which are raised for the first time in your letter.  In the interests of advancing the meet-and-confer process, we will address the "overarching" issues below.  Nothing we say below should be read as waiving our positions with respect to any specific document request or interrogatory.

## 1.   Temporal Scope of Search

Your letter purports to conditionally agree to narrow the temporal scope of the search in the First Set to exclude documents pre-dating January 1, 2000.  In fact, the limitation you propose is largely illusory; in any event, it is conditioned on two unreasonable conditions that the Banks do not accept.

You first state that Plaintiffs will agree to narrow the temporal scope of search in the First Set to exclude documents pre-dating January 1, 2000, provided that (i) the Banks provide the Plaintiffs with a detailed description of the discovery requests in the *Wal-Mart* and *DOJ* litigations and the scope of the search that was conducted in response to those discovery requests (including a description of the search, a list of the individuals searched and a description of all

ny-705132

**MORRISON | FOERSTER**

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Three

agreements reached in connection with those discovery requests), and Plaintiffs determine that the productions in question were sufficiently "comprehensive," and (ii) the Banks produce their objective coding with respect to those documents, apparently without Plaintiffs being required to share any of the expenses incurred in connection with the creation of that coding. These conditions are unreasonable.

First, the document productions in the *Wal-Mart* and *DOJ* litigations were made many years ago. The Banks simply cannot be expected to try to re-create the history of these non-party document productions. In any event, no practical purpose could possibly be served by our doing so – whatever the details of those third-party subpoenas, the Banks' responses to them are what they are. You cannot seriously be suggesting that the Banks should go back and try to respond to those non-party subpoenas in a way that would meet with your approval. Moreover, the Banks simply cannot agree to a process that is entirely contingent on the Plaintiffs finding the terms of the third-party subpoenas, the agreements limiting the scope of such subpoenas and the Banks' resulting search and production of documents "reasonably comprehensive." In sum, the condition is sufficiently non-binding on your side to constitute no agreement at all.

Second, you continue to ask for free access to the Banks' coding of those productions, if any coding in fact exists. I find your request somewhat surprising. For one thing, the coding condition is entirely irrelevant to the date cutoff issue. In addition, on April 18, 2006, the Bank of America defendants sent you a letter expressing their willingness to share their existing objective coding (as limited as it is) with Plaintiffs subject to a cost-sharing agreement. Since we sent you our letter, Plaintiffs have indicated on several occasions that they will make a cost-sharing proposal, but have not done so and have not responded to our letter. At the June 20, 2006 status conference, Judge Orenstein encouraged Plaintiffs to talk further with Defendants regarding a mutual agreement on objective coding. Nevertheless, to date, we have yet to receive any cost-sharing proposal from Plaintiffs. In addition, the Banks find it more than a little strange that you apparently cannot obtain access to the coding prepared by plaintiffs' counsel in the *Wal-Mart* action, even though many of the named plaintiffs in that action also are named plaintiffs in this action. If you do obtain access to that coding, please inform us promptly – we may seek access to those materials (although we would be willing to bear our fair share of the unreimbursed costs incurred in their preparation).

Finally, the Banks reject your proposal because it is almost entirely illusory. You purport to offer to limit the temporal scope of the Banks' production obligations, but then confusingly turn back on yourself by explaining that your proposed agreement would not serve to limit the temporal scope of the Banks' production obligations with respect to either documents or data. Instead, you note that the only obligation your proposal removes is the purported "obligation to search archived files (tangible and electronic)." This is unacceptable to the Banks.

ny-705132

MORRISON | FOERSTER

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Four

Except with respect to specific document requests and interrogatories that we have discussed, documents and information that pre-date January 1, 2000, are sufficiently remote and should be considered irrelevant to this litigation and unlikely to lead to the discovery of relevant evidence, absent a particularized showing. Notwithstanding the proposed horse-trading in your letter, you still have not expressed any justification for a general requirement to reach beyond that time cutoff. Accordingly, as a general matter, the Banks will agree to produce responsive, non-privileged documents in the reasonably accessible files of the agreed-upon custodians for the period from January 1, 2000 through December 31, 2005, except as otherwise negotiated for specific discovery requests.

### 2. Scope of Search

Plaintiffs ask that the Banks circulate their proposed custodian and search terms lists prior to the completion of the 30(b)(6) depositions. Plaintiffs further request that the Banks provide a "date certain" by which they will submit their proposed lists. I do not understand why you are raising this issue. The Banks already have submitted a letter to Plaintiffs stating that each Bank Defendant will circulate preliminary custodian lists approximately one week after the last of their scheduled 30(b)(6) depositions – for the Bank of America defendants, at least, that means that you already have received our proposed custodian list. We find it somewhat surprising that you have raised this issue, when it now appears that you will get many of the proposed custodian lists even before Plaintiffs have provided the Banks with the letter promised for July 18.

As to the search terms list (which will be applied to the custodian lists to be agreed upon by the parties), the Banks anticipate sending you such a list as soon as practicable after we have completed the meet-and-confer process. Obviously, the search terms will depend on the outcome of our meet-and-confer sessions, and it makes no sense to put the cart before the horse.

Finally, the Banks do not understand the final paragraph of your description of this "over-arching" issue. The Banks will provide you with a relevant custodial list that will be reasonably calculated to get you the discoverable material that is responsive to the Discovery Requests as limited by our meet-and-confer sessions. It is unclear why you believe that the Banks also should undertake the unduly burdensome obligation of providing you with the Bates numbers from the *Wal-Mart* and *DOJ* productions organized to correspond to the individual items of the Discovery Requests. The Banks will not do so.

### 3. Date by Which Documents will be Produced

Plaintiffs state that the hard-copy documents are to be produced first. Moreover, according to Plaintiffs, the Bank of America defendants represented that hard-copy documents

ny-705132

MORRISON | FOERSTER

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Five

will be produced beginning in mid- to late July.  Plaintiffs want a "date certain" by which the Banks will start to produce hard-copy documents.

First, as an initial matter, you are simply wrong to suggest or imply that the Banks have not yet begun to produce documents.  The Banks have already produced to Plaintiffs thousands of pages from the *Wal-Mart* and *Department of Justice* "legacy" productions.  We note that the Banks have also begun producing additional material, including current and historical organizational charts.

Second, we do not agree with your characterization of Bank of America's statements at the meet-and-confer sessions.  The Bank of America defendants did not represent that they would produce "the hard-copy documents first."  Instead, in response to the Plaintiffs' suggestion that they would be providing the Banks with a list of the specific document requests that they viewed as calling for "discrete" sets of documents and which the Plaintiffs view as being of higher priority, the Bank of America defendants stated that they could probably begin responding to those specific requests in mid- to late July.

However, Plaintiffs have yet to provide the Banks with the promised list of specific document requests which they believe call for "discrete" sets of documents and which therefore can be responded to first.  Moreover, as you know, the Banks are still awaiting Plaintiffs' positions on numerous discovery requests and cannot move forward with respect to these specific requests until the parties have made agreements relating thereto.

Finally, your letter purports to require the Banks to complete their productions of documents by September 30.  This is unrealistic.  To date, Plaintiffs have propounded well over two hundred discovery requests, exclusive of sub-parts.  In light of the massive volume of material that the Banks must collect, review, and prepare for production in response to this extraordinary volume of discovery, the Banks cannot agree to complete their production by September 30, 2006.

The parties have yet to agree upon the scope and format of the Banks' searches.  And, as detailed above, the Banks have yet to receive Plaintiffs' position on a large number of document requests and interrogatories.  The Banks will nevertheless work diligently to produce documents on a rolling basis and in a reasonably timely manner.  The Banks expect Plaintiffs to do the same.

## 4.    Objections

According to your letter, the Banks stated at the meet-and-confer sessions that their general objections are general in nature to the requests themselves.  Your letter further states that

ny-705132

**MORRISON | FOERSTER**

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Six

the Banks' objections will not provide a basis for withholding responsive documents that are uncovered pursuant to a custodian search. Plaintiffs have again mischaracterized the Banks' position. The Banks have made it clear that production of any responsive documents is subject to their general objections and to the Federal Rules of Civil Procedure and the Local Civil Rules of the Eastern District of New York (the "Local Civil Rules").

Plaintiffs contend that documents in the custodian searches that contain any of the words or phrases on the search term list are presumptively relevant and therefore not subject to any further review on relevance grounds. The Banks believe that the notion of producing to Plaintiffs, or logging, all documents that contain certain search terms, regardless of whether such documents are in fact responsive, is unacceptable. None of the counsel for the Banks has ever taken such an approach in discovery in prior cases and will not here. The Banks will follow customary practice by reviewing documents pulled in the custodian and search term searches for responsiveness. The production set will include only those documents deemed to be responsive.

Finally, your letter inexpicably claims that the Banks agreed to identify "in some sort of log" responsive documents uncovered in the custodian search but withheld on relevance grounds. The Banks note that they made no such agreement and decline to do so here.

**5.      Expert Discovery**

Plaintiffs propose that the parties agree not to exchange drafts of expert reports or written communications between the attorneys and their respective experts. Plaintiffs also request that the parties produce all materials relied upon by experts when drafting their reports without any formal discovery requests, and state that they will shortly send Defendants a proposed stipulation on this issue. The Banks will respond to Plaintiffs' proposed stipulation once they have received it. Generally, however, the Banks are in favor of a stipulation governing expert discovery.

**6.      Indices of Legacy Documents**

Plaintiffs want the parties to share the costs of "indexing" the *Wal-Mart* and *Department of Justice* "legacy" productions. The Banks do not agree to this request. If Plaintiffs wish to "index" the "legacy" productions, or some portions of them, they are free to do so. But the Banks decline Plaintiffs' request to create joint indices of those productions.

**7.      Banks' Discovery Responses Deferred Until Visa and MasterCard Provide Responses**

At the meet-and-confers, Plaintiffs agreed to defer a number of discovery requests directed at the Banks pending Plaintiffs' review of Visa's and MasterCard's (the "Network

**MORRISON | FOERSTER**

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Seven

Defendants'") responses to identical or substantially similar discovery requests. Plaintiffs now state that they expect the Banks to provide responses to the deferred requests within twenty days once the Network Defendants have produced information or documents in response to their corresponding requests. Moreover, if the networks do not respond in a timely fashion, Plaintiffs purport to require the Banks to nevertheless respond within twenty days after August 22 (i.e., by September 11, 2006).

To the extent that your letter implies that the Banks agreed to produce information and/or materials responsive to the requests at issue *whether or not* a response is still required once the Network Defendants have made their productions, this is incorrect. Plaintiffs made the decision to include in the Discovery Requests served on the Banks specific document requests and interrogatories that relate to discovery logically in the possession of Visa and MasterCard. We anticipate that, with regard to at least some (if not all) of the discovery requests at issue, the Network Defendants' responses will satisfy Plaintiffs and any further response by the Banks will be unnecessary. To compel the Banks to respond to those requests after you have the information you require is a pointless exercise (unless the point is to increase the Banks' burden).

As we made clear to you at the meet-and-confers, the Banks are willing to discuss any additional information Plaintiffs believe they need *once the networks have responded to their corresponding discovery requests*. Because the parties can not anticipate what information (if any) will be required of the Banks once the Network Defendants have provided their responses, it does not make sense now to set a deadline for discovery of such information. Indeed, any such deadline would be nothing but arbitrary.

Finally, you request that the Banks provide a list of discovery requests which they believe cannot be answered without assistance from the Network Defendants' responses. The Banks do not understand this request. To the extent that Plaintiffs have already agreed to defer a request pending their review of the productions of Visa and MasterCard, any identification by the Banks of that request as requiring a response by the networks would be pointless. To the extent that the Banks believe that any additional requests require deferral pending the productions of the networks, they will so indicate with respect to specific discovery requests.

## 8.    Privilege Logs

Plaintiffs purport to require the Banks to log all documents withheld under a claimed privilege, including communications with outside counsel up until the filing of the first filed lawsuit in this action, in a privilege log.

The Banks will provide privilege logs pursuant to the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules. The Banks will log documents for the period from

ny-705132

MORRISON | FOERSTER

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Eight

January 1, 2000 to December 31, 2005. In order to expedite the production of documents, the Banks will produce logs on a rolling basis, and the logs for a custodian's documents will not necessarily be produced at the same time as the custodian's documents.

The Banks will not log communications with outside counsel after the filing of the *Animal Land* complaint in a privilege log.

As we discussed, for certain requests, the Banks believe that the privilege log obligation would be unduly burdensome. In responding to your specific discovery requests, we will propose privilege log limitations as appropriate.

**9.      Rule 33(d) Responses**

Your letter states that you will provide the Banks with a proposal regarding any Rule 33(d) responses under separate cover. The Banks will respond to this proposal once they have received it.

We again note that we have already informed Plaintiffs that, pursuant to Rule 33(d), we will identify Bates numbers only for discrete sets of documents. Plaintiffs have stated that they will provide the Banks with a letter identifying requests that they think seek such material. The Banks have not yet received any such letter.

**10.      Identification of Former Employees**

Plaintiffs request that, where an interrogatory calls for the identification of a former employee, the Banks identify the former employee, his/her last position, and his/her last known residential address and phone number. To the extent that the Banks agree to provide written answers to specific interrogatories that request the identification of current or former employees, they will identify such individuals by name and last position. The Banks note, however, that they will not provide residential addresses and/or telephone numbers of its current or former employees.

**11.      Format of Document Productions**

As you note, the parties did not specifically discuss the format of Banks' document production during our conferences. The Banks agree to produce documents in a reasonably usable and convenient format. We believe that the parties should enter into an agreement to govern technical specifications for the parties' productions of electronic and hard-copy documents. Defendants are in the process of preparing a proposed stipulation and will provide it to Plaintiffs under separate cover.

ny-705132

**MORRISON | FOERSTER**

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 27, 2006
Page Nine

### 12.    Admissibility of Copies, Rather than Originals, of Documents

Your letter proposes that the parties agree not to object to the admissibility of any document that is not an original.  The Banks note that Rules 1003 and 1004 of the Federal Rules of Evidence cover the admissibility of duplicates and the admissibility of other evidence of contents.  The Bank will address the issue of the admissibility of copies pursuant to these Rules.

### Reservation of Rights

The Banks object to numerous characterizations in your purported "Reservation of Rights," including but not limited to your statement that Plaintiffs' agreement to a custodian approach is subject to Plaintiffs' review of the documents and data produced by the Banks.  Such a requirement renders the custodian approach utterly meaningless.  The Banks have repeatedly advised Plaintiffs that they do not want to have to re-do their document productions because Plaintiffs have failed to make good-faith efforts to finalize the custodian and search terms lists.  Nevertheless, Plaintiffs insist that any purportedly 'final' custodian list essentially be subject to *de novo* review once the Banks have already made their productions.  The Banks can not agree to such a request.

We acknowledge your statement that data requested by Plaintiffs may not be maintained by individuals on a custodian list.  To the extent that this is the case, the Banks will consider other ways of reasonably obtaining the data at issue.

The Banks here note that any agreements by the Banks remain tentative and made without waiver of any and all objections to Plaintiffs' discovery requests, including the general and specific objections set forth in the Banks' responses to the Discovery Requests.  The Banks reserve all rights to object to subsequent requests for discovery from Plaintiffs that are broader than any compromise or agreement reflected herein.

*        *        *

**MORRISON | FOERSTER**

K. Craig Wildfang
Bonny E. Sweeney
H. Laddie Montague, Jr.
July 28, 2006
Page Ten

　　　　We look forward to receiving as soon as possible the letter containing the additional information that you agreed to provide the Banks.

Very truly yours,

Mark P. Ladner

cc:   Defense Counsel (via e-mail)

ny-705132

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

K. Craig Wildfang
612-349-8554

August 4, 2006

**VIA E-MAIL & U.S. MAIL**

Peter Greene
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

David F. Graham, Esquire
Sidley, Austin, Brown & Wood
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

Mark Ladner
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Re:    In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation
       Our File No.: 123630.0000

Gentlemen:

This letter will supplement Michael Kane's letter of July 19, 2006, in order to address certain of the Interrogatories and Document Requests that were the subject of our meet and confer sessions held on June 21, June 29, and July 11. Below I cover those Requests and Interrogatories which we agreed to consider narrowing or revising. Mr. Kane will be sending you a letter in the next few days addressing other topics covered in his letter of July 19 which were addressed in Mr. Ladner's letter of July 28, 2006. I show the changes to the Requests and Interrogatories by tracking the changes below.

## REQUESTS as narrowed or revised

6.    ~~Your complete file(s) on~~ All documents relating to any business relationship between You and any Plaintiff relating to Payment Cards.~~.~~

9.    All contracts, agreements, or communications between any Issuing Bank and any Acquiring Bank, Third-Party Processor, or any Merchant with in excess of $1 Billion in annual Payment Card transaction volume that describe any of the following:

MP3 20189452.1

ATLANTA · BOSTON · LOS ANGELES · MINNEAPOLIS · NAPLES · SAINT PAUL · WASHINGTON, D.C.

Peter Greene
Mark Ladner
August 4, 2006
Page 2

    a.     the nature of the commercial relationship between any Issuing Bank and any Acquiring Bank, Third-Party Processor, or Merchant;

    b.     what person is responsible for payment of the Interchange Fee;

    c.     what person is responsible for the risk of loss in the event the Interchange Fee is not paid;

    d.     what person is responsible for the risk of loss in the event a Cardholder does not pay a bill from an Issuing Bank for a charge; or

    e.     any agency relationship.

10.    All contracts, agreements, or communications between any Acquiring Bank and any Third-Party Processor or <u>any</u> Merchant <u>with in excess of $1 Billion in annual Payment Card transaction volume</u> that describe any of the following:

    a.     the nature of the commercial relationship between any Acquiring Bank and any processor or Merchant;

    b.     what person is responsible for payment of the Interchange Fee;

    c.     what person is responsible for the risk of loss in the event the Interchange Fee is not paid;

    d.     what person is responsible for the risk of loss in the event a Cardholder does not pay a bill from an Issuing Bank for a charge; or

    e.     any agency relationship.

18.    ~~All d~~Documents <u>sufficient to describe any</u>~~relating to the existence of~~ technology or ~~processes~~<u>processes of which you are aware that</u>~~to~~ <u>is designed to</u> enable Cardholders to select various payment forms at the ~~check out stand~~ <u>point of sale, including, without limitation, technology permitting multiple brands to appear on single plastic cards, and hardware or software designed to facilitate the display of the costs of various forms of payment.</u>.

21.    All documents relating to any analysis performed by any person relating to Interchange Fees from 1992 to December 2003<u>, including, without limitation, analyses of the costs of issuance of Payment Cards in relationship to Interchange Fees, the effects of Interchange Fees on</u>

Peter Greene
Mark Ladner
August 4, 2006
Page 3

merchant acceptance, the competition among Payment Card networks for issuance of payment Cards, and the economics of two-sided markets..

29. All documents relating to any analysis, evaluation, or calculation of the various components that comprise the Merchant-Discount Fee charged to Merchants utilizing the Visa Network, including, without limitation, the relationship of any components of the Merchant Discount to the costs of Payment Card issuance, or the costs of Merchant acquiring, any consideration of modifications to any of the components of the Merchant Discount Fee, any methodology for setting the price of the component parts or other similar analyses.

30. All documents relating to any analysis, evaluation, or calculation of the various components that comprise the Merchant-Discount Fee charged to Merchants utilizing the MasterCard Network, including, without limitation, the relationship of any components of the Merchant Discount to the costs of Payment Card issuance, or the costs of Merchant acquiring, any consideration of modifications to any of the components of the Merchant Discount Fee, any methodology for setting the price of the component parts or other similar analyses.

42. All documents relating to attempts programs or policies considered or adopted by Visa or MasterCard to get supermarket, drugstore, or fast-food Merchants to accept Visa or MasterCard Payment Cards.

62. All documents relating to to Intra Processed Ttransactions covered by a Business Service Arrangement as defined in MasterCard's operating regulations or other rules.

63. All documents relating to On Us Ttransactions processed as "On Us" or under a "Private Arrangement" under Visa's operating regulations or other rules.

Peter Greene
Mark Ladner
August 4, 2006
Page 4

66.     All documents relating to communications between Visa and MasterCard relating in any way to Interchange Fees, rules or policies of either Network, issuance of Payment Cards, acquiring of Merchants, settlement of any litigation, or any joint defense or judgment sharing agreement in any of the actions consolidated under MDL 1720.

103.    All documents ~~relating to~~ constituting any ~~internal or external~~ study, analysis, investigation, or evaluation performed by You, Visa, MasterCard or any consultant to You, Visa, or MasterCard of competition in the United States markets for Credit Cards or Debit Cards, including without limitation, any study, analysis, investigation, or evaluation of competition relating to Interchange Fees, Merchant Discount Fees, Merchant acceptance of Credit Cards or Debit Cards, and/or issuance of Credit Cards or Debit Cards,.

111.    All documents that ~~relate to~~ constitute any analysis, study, or conclusions relating to the fact that you clear checks at par, including, without limitation, any comparison of the costs to banks of clearing checks and the cost to Acquiring Banks of Paying Interchange Fees on Credit and Debit Card transactions they acquire from Merchants.

**INTERROGATORIES**

3.      Identify any ~~joint venture~~ competitor collaboration which relates to Payment Cards or Payment-Card Networks in which you are a participant.  For purposes of this Interrogatory the term "competitor collaboration" has the same meaning as found in the Antitrust Guidelines for Collaborations Among Competitors issued by the Federal Trade Commission and the United States Department of Justice dated April 2000.

Peter Greene
Mark Ladner
August 4, 2006
Page 5

39.    With respect to any litigation in which you were a party that relates to Payment Cards,

identify all consultants retained by you for testifying-in-litigation purposes since 1992~~85~~, and for

each such consultant identify:

        a.      all tasks or assignments given to such consultant;
        b.      all files, documents, and working papers related to each task or assignment;
        c.      each employee of Visa assigned as staff liaison to the consultant; and
        d.      the result or outcome of each such task or assignment.

In addition to the narrowing or revising of certain Request and Interrogatories set forth

above, we provide the following further comments and responses on other Requests and

Interrogatories:

**REQUESTS**

23-26: We are unable to identify the relevant committees at this time, but expect to do so once

Visa and MasterCard have fully identified all of the relevant committees.  We urge you to prevail

upon Visa and MasterCard to do so promptly.

31:    At this point, without the benefit of discovery, we are unable to provide to you a list of

firms that might provide these services.

32-33: Upon further review, we believe that this Request is clear and reasonably precise, and we

are unable to further refine it.

41:    Plaintiffs agree to your proposal.

47-48: Plaintiffs do not agree that the Bank Defendants should obtain these schedules from the

Networks.

Peter Greene
Mark Ladner
August 4, 2006
Page 6

95:     Given our limited information about the Bank Defendants' advertising programs, Plaintiffs are unable to narrow this Request.  However, we will entertain reasonable proposals from you regarding how you would be willing to respond.

97:     The named Plaintiffs from the *Wal-Mart* case are identified in footnote 1 of Judge Gleeson's Memorandum and Order certifying the class in *Visa Check* found at 192 F.R.D. 68 (E.D.N.Y. 2000).

99:     We are unwilling to narrow this Request.

113:    This information is relevant to an understanding of both Merchant transaction costs, and Acquirers profitability.

119:    We are in the process of obtaining the Merchant numbers for all named Plaintiffs.

124:    We are agreeable to limiting this Request to only competition among Issuing Banks with respect to Payment Cards.

## INTERROGATORIES

27:     Plaintiffs accept your proposal.

34:     Plaintiffs provided a list of foreign proceedings in my letter of July 7, 2006 to counsel for Visa U.S.A. and Visa International.  Plaintiffs will accept, for the present, a full and complete response to this Interrogatory as to each of the jurisdictions mentioned in that letter.

35-37: Because Plaintiffs are unwilling to narrow Document Request No. 99, we are unwilling to narrow these interrogatories.

38:     Plaintiffs are willing to limit the time period of this interrogatory to 1992 to the present and to work relating to subject matters alleged in the Complaint.  However, we are unwilling to further limit this interrogatory.

MP3 20189452.1

Peter Greene
Mark Ladner
August 4, 2006
Page 7


        Please advise us as soon as possible if any of the above is not acceptable to the Bank

Defendants.


                              Sincerely,

                              ROBINS, KAPLAN, MILLER & CIRESI L.L.P.



                              K. Craig Wildfang

KCW/tlo
cc:    All counsel of record (via e-mail only)

1622 LOCUST STREET  I  PHILADELPHIA, PA 19103-6305  I  *phone* 215/875-3000  I  *fax* 215/875-4604  I  *www.bergermontague.com*

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

**MICHAEL J. KANE**

WRITER'S DIRECT DIAL | 215-875-4686
WRITER'S DIRECT FAX | 215-875-4604
WRITER'S DIRECT E-MAIL | mkane@bm.net

August 4, 2006

### VIA E-MAIL AND REGULAR MAIL

Mark P. Ladner, Esquire
**MORRISON & FOERSTER, LLP**
1290 Avenue of the Americas
New York, NY 10104

Peter E. Greene, Esquire
Cyrus Amir-Mokri, Esquire
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP**
Four Times Square
New York, NY 10036

David F. Graham, Esquire
**SIDLEY, AUSTIN, BROWN & WOOD**
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603

Re: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
Master File NO. 05-MD-1720

Dear Counsel:

We are writing, on behalf of the Class and Non-Class Plaintiffs (collectively, "Plaintiffs"), to respond to the following issues raised in your July 27, 2006: 1) the Bank Defendants' failure to respond to Plaintiffs' proposals to narrow specific document requests and interrogatories, which were discussed during the June 21, June 29 and July 11 meet and confer conferences; and 2) the Bank Defendants' positions with respect to the overarching issues set forth in Plaintiffs' July 19 letter. This letter does not respond to your request that Plaintiffs provide you with proposals to narrow certain other specific document requests and interrogatories because we have provided these proposals in a separate letter dated August 4 from Craig Wildfang.

I.   **Bank Defendants' Failure to Respond to Proposals to Narrow Specific Document Requests and Interrogatories**

Plaintiffs are extremely disappointed that the Bank Defendants' letter failed to address any of Plaintiffs' proposals to narrow a number of specific document requests and interrogatories as discussed during the three meet and confers. Bank Defendants failure to do so appears to be

# Berger&Montague,P.C.
ATTORNEYS AT LAW

August 4, 2006
Page -2-

premised on two reasons: 1) Plaintiffs' alleged failure to provide proposals to narrow or clarify a limited number of other unrelated document requests and interrogatories; and 2) Plaintiffs' alleged failure to explicitly state that they agree to the approach suggested by the Bank Defendants for responding to a number of other unrelated document requests and interrogatories. Neither reason provides any basis for the Bank Defendants' failure to respond to Plaintiffs' proposals. Nor do these reasons provide any basis for the Bank Defendants' failure to confirm the accuracy of the parties' positions, as set forth in detail in the July 19 letter, with respect to each of the specific document requests and interrogatories. The Bank Defendants' failure to provide the requested information is inexplicable and has unnecessarily delayed the production of responsive discovery materials.

In order to quickly and efficiently move this process along, Plaintiffs request the Bank Defendants to provide their final positions with respect to our proposals, as memorialized in our July 19 letter, to narrow the scope of the following discovery requests:

- Document Request Nos. 3, 11, 16, 17, 27-28, 35, 36, 40, 44, 101, 106, 112, 121, 124, 125; and
- Interrogatories 2, 29, 30, 31, 24, 40, 41-43, 44, 48, 50-57 and 65.

The Bank Defendants' responses to these proposals are not dependent upon Plaintiffs providing any further narrowing or clarification of these or any other discovery requests.

Also, in order to move this process along, Plaintiffs confirm that we agree to the Bank Defendants' approach to producing documents responsive to the following document requests: 7, 19, 20, 22, 37, 55-61, 64, 65, 68, 71-74, 81, 88-94, 96, 122, and 123. While we thought that our failure to object to the Bank Defendants' suggested approach was sufficient to confirm our agreement to them, this will clarify any confusion you may have had.

## II.    Overarching Issues

### 1.    Temporal Scope of Search

Plaintiffs seek documents for the time period January 1, 1992 to present. The Bank Defendants have rejected Plaintiffs' proposal to accept the productions in the *Wal-Mart* and *Department of Justice* actions as sufficient to satisfy the requirements to produce documents for the time period January 1, 1992 through December 31, 1999 as long as the scope of search for responsive materials was reasonably comprehensive and the Bank Defendants produce their

# Berger&Montague,P.C.
#### ATTORNEYS AT LAW

August 4, 2006
Page -3-

objective coding of these documents, if any.[1]  Your rejection of this approach is unreasonable. Without knowing what information was requested and searched for in the *Wal-Mart* and *DOJ* cases, Plaintiffs cannot determine whether there is information relevant to the issues in this case which were never requested or searched for in the other cases. It should not be burdensome to produce the underlying document requests from the *Wal-Mart* and *DOJ* cases along with any written agreements to limit those requests.

Bank Defendants propose producing documents for the period from January 1, 2000 through December 31, 2005 on the grounds that materials predating this period are irrelevant.  Plaintiffs reject your proposal to limit the temporal scope of discovery because it is contrary to prevailing case law. In antitrust conspiracy cases, Plaintiffs are entitled to discovery relating to the entire history, existence, operations and effect of the alleged conspiracy. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 709-10 (1962) (evidence concerning the history of the formation, implementation and actions in furtherance of the conspiracy is not only highly relevant to Plaintiffs' antitrust claims but is admissible at trial, even though that evidence pre-dated the Plaintiff's entry into the market); *New Park Entertainment, L.L.C. v. Electric Factory Concerts, Inc.*, 2000 WL 62315, at *2-3 (E.D. Pa. Jan. 13, 2000) (the history of an antitrust conspiracy determines the temporal scope of discovery); *Kellam Energy Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) (plaintiff entitled to discovery dating back to beginning of conspiracy); *Maritime Cinema Svc. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 591 (S.D.N.Y. 1973) ("Discovery in antitrust cases routinely goes beyond the damage period, particularly where it is necessary to establish intent or the pattern of a conspiracy.").[2]  In addition, the Bank Defendants' proposal is inappropriate because they

---

[1] We note that if the Bank Defendants change their position with respect to Plaintiffs' proposal, the parties still need to discuss production of documents for the pre 2000 time period for the document requests addressing the acquiring side of the business because the document productions in the *Wal-Mart* and *DOJ* actions did not include this information.

[2] *See also Natcontainer Corp. v. Continental Can Co.*, 362 F. Supp. 1094, 1102 (S.D.N.Y. 1973) (granting discovery up to year before alleged beginning of the conspiracy; "The information requested ... is primarily 'background' information ... The history of the organization throws light upon its illegality.") (internal citations and quotation marks omitted); *Morgan Smith Auto. Prods., Inc. v. General Motors Corp.*, 54 F.R.D. 19, 20 (E.D. Pa. 1971) (permitting discovery to beginning year of alleged conspiracy); *Quonset Real Estate Corp. v. Paramount Film Distrib. Corp.*, 50 F.R.D. 240, 241-42 (S.D.N.Y. 1970) (discovery permitted for period of ten years antedating earliest possible wrongdoing); *Allied Shoe Machinery Corp. v. United Shoe Machinery Corp.*, 19 F.R.D. 181, 182 (D. Mass. 1956) ("[R]estrictive activities before the bar of the statute may very well be

# Berger&Montague,P.C.
ATTORNEYS AT LAW

August 4, 2006
Page -4-

may not "refuse to produce" documents "based on [their] own factual and legal conclusions as to the" theory of the case. *Jones v. Deutsche Bank AG*, 2006 WL 648369, at *3 (N.D. Cal. March 10, 2006); *see also Humphreys v. Regents of the Univ. of Cal.*, 2006 WL 870963, at *2 (N.D. Cal. April 3, 2006) ("defendants are not allowed to limit discovery based merely upon their theory of the case").

For these reasons, Plaintiffs are entitled to discovery going back to January 1, 1992, which we note is significantly shorter than the entire period of the alleged conspiracy. Evidence from this time period is relevant to issues regarding the existence, history, operations and effect of the alleged price fixing conspiracy, including the merchant restraints. Evidence from this time period is also relevant to any purported business justifications for Defendants' unlawful conduct.

The Bank Defendants' refusal to produce materials dating back to January 1, 1992 is therefore without merit. Plaintiffs request that the Bank Defendants reconsider their position. If you refuse to do so, we will raise the temporal scope of discovery issue with the Court.

## 2.    Scope of Search

The Bank Defendants have refused to provide proposed custodian lists until one week after the completion of their respective Rule 30(b)(6) depositions. As we previously told you, providing this information prior to the 30(b)(6) depositions would have made the depositions and the meet and confer process relating to the custodian list more efficient and effective. While Plaintiffs' disagree with your delay in providing the custodian lists and believe they are long overdue, it now appears the issue is moot because the Rule 30(b)(6) have been substantially completed.

The Bank Defendants also claim that they do not understand Plaintiffs' request that the custodian list include individuals employed by the company prior to January 1, 2000, or in the alternative to identify by bates number responsive documents contained in the *Wal-Mart* and *DOJ* productions. In order to clarify any confusion, Plaintiffs have requested that the Bank Defendants to do one or the other but not both. As stated above in our discussion about the temporal scope of discovery in this case, Plaintiffs are entitled to discovery for the time period January 1, 1992 through December 1, 1999. In order to ensure that we receive responsive documents from this time period, the Bank Defendants need to identify the employees (current or former) likely to possess these documents. On the other hand, if all of the responsive documents for this time period have already been produced as part of the productions in the *Wal-Mart* and *DOJ* cases, Plaintiffs only request that

_____

shown to have had restrictive effects during the period not barred.").

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

August 4, 2006
Page -5-

the Bank Defendants identify these documents by bates number in lieu of identifying the employees likely to possess these documents.

As to the search terms list, Bank Defendants proposed sending it to Plaintiffs "as soon as practicable after we have completed the meet and confer process." Plaintiffs reject this proposal because it results in an indefinite and unacceptable delay in discovery and is contrary to your early representations that you produce a list by the end of July. At this time, there is no way to predict when the meet and confer process will be completed because we are currently waiting for the Bank Defendants to respond to proposals to narrow the scope of a number of documents requests. While we expect you will do so in a timely manner, your responses could result in further discussions among the parties, which will further delay negotiations regarding the search terms.

In addition, Plaintiffs are unclear as to what you mean by the completion of the meet and confer process. If this means not only completing the parties' meet and confer discussions, but also waiting for the Court to determine any discovery disputes relating to the first omnibus set of document requests and interrogatories, this proposal is completely unreasonable and unmanageable. In fact, it would likely result in the initial negotiations regarding the search terms being delayed for months. Because your proposal will likely result in discovery being significantly delayed, it is unacceptable.

Plaintiffs request that the Bank Defendants provide us with their initial search terms list by August 11. The Bank Defendants' ability to create an initial search term list is not dependent upon completion of the meet and confer process. The initial list can be created based on the Bank Defendants' clear understanding of the fundamental issues involved in this case and the parties' agreement as to the scope of a significant number of document requests. With respect to your concern that the search term list will somehow be impacted by the resolution of any outstanding disputes as to the scope of certain other document requests, the list can be revised, if necessary, to reflect any such agreement.

**3.      Date by Which Documents will be Produced**

Bank Defendants claim that they cannot begin producing hard copy documents until Plaintiffs provide a list of specific document requests, which seek discrete sets of documents. While we disagree with your claim and note that you previously represented that you would begin producing hard copy documents by now without such a list, Plaintiffs nevertheless identify the following document requests as seeking discrete sets of documents: Nos. 4-6, 45-46, 48, 88-95, 113-116, and 125. Plaintiffs request that you begin producing responsive documents by August 21, 2006.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

August 4, 2006
Page -6-

The Bank Defendants have also refused to provide a date certain by which they will complete their document production of hard copy and electronic documents. Instead, they claim they will "work diligently to produce documents on a rolling basis and in a reasonably timely manner."

While Plaintiffs are amenable in principle to a rolling document production, the Bank Defendants failure to commit to a date certain by which they will finish their document productions is unacceptable. A completion date is necessary to ensure that the parties comply with the deadlines established in the Case Management Order and that discovery is completed as soon as possible. Absent a date certain for completing document productions, Plaintiffs have no assurance that the Bank Defendants will complete their production in the time necessary for the Plaintiffs to review, analyze and use the documents for class certification, depositions and other purposes. Accordingly, a date certain for completing document productions will benefit the parties and help ensure that the case is effectively and efficiently litigated.

While Plaintiffs are willing to discuss a mutually agreeable date for completing document productions, we are unwilling to have no date certain. Please propose a date by which the Bank Defendants can complete their document productions.

## 4.    Objections

The Bank Defendants state that they "have made it clear that production of any responsive documents is subject to their general objections and to the Federal Rules of Civil Procedure and the Local Civil Rules of the Eastern District of New York." We are somewhat confused by your statement. Of course, Plaintiffs did not mean to suggest, in our July 19 letter, that the Bank Defendants were waiving their right to assert the attorney-client privilege or the attorney work product doctrine objections as a basis for withholding responsive documents. However, we understood that the Bank Defendants agreed not to withhold responsive documents based on any of their general objections, other than privilege or work product, if the parties agreed to the scope of the specific document requests. The purpose of the meet and confer discussions is to resolve any objections the Bank Defendants have to the specific document requests. After reaching agreements as to scope, it would be inappropriate for the Bank Defendants to withhold otherwise responsive documents based on their general objections. If the Bank Defendants have a different view, please state so in writing along with the basis for their position.

The Bank Defendants also state that they reserve the right to withhold documents uncovered by the custodial search protocol on relevance grounds and refuse to produce a log identifying the withheld documents. This position concerns Plaintiffs. In particular, the agreed upon search terms list should uncover few, if any, irrelevant documents. Accordingly, it should not be burdensome to

# Berger&Montague,P.C.
ATTORNEYS AT LAW

August 4, 2006
Page -7-

record them in a log.

### 5.    Expert Discovery

It appears that we will be able to reach an agreement as to expert discovery based on your statement that the Bank Defendants are generally in favor of a stipulation governing this issue. We will send you a proposed stipulation governing expert discovery in the near future and look forward to receiving your response.

### 6.    Indexes of Legacy Documents

Because the Bank Defendants have rejected Plaintiffs' proposal to share the costs of indexing the *Wal-Mart* and *DOJ* productions, we are at an impasse on this issue.

### 7.    Bank Defendants' Discovery Responses Deferred Until Visa and MasterCard Provide Responses

While Plaintiffs agreed to defer a number of discrete discovery requests directed at the Bank Defendants until Plaintiffs review of Visa's and MasterCard's (collectively "Network Defendants'") responses to similar discovery requests, we did not agree to defer them indefinitely. As we made clear to you during the meet and confers, our agreement to defer these discovery requests was contingent upon the Network Defendants providing the information and documents in a timely fashion. If the Network Defendants fail to do so, were are unwilling to indefinitely delay discovery of the requested information and materials. We will not permit the Bank Defendants to benefit from any potentially dilatory conduct by the Network Defendants.

With respect to our agreement to defer responses to the specific document requests, as memorialized in our July 19 letter, we propose waiting until August 31 to receive these documents from the Network Defendants. If the Network Defendants fail to produce the documents by then, we expect the Bank Defendants to produce the responsive documents by September 30. Of course, if the Network Defendants provide responsive materials within this time frame, then we will review them and let the Bank Defendants know if we require them to produce any additional information and/or materials.

As to the deferred interrogatories, we have made clear during the meet and confers and our July 19 letter that Plaintiffs agreed only to defer the timing of the Bank Defendants' responses. Plaintiffs did not agree that the Bank Defendants do not have to provide a verified response to these interrogatories. While the Bank Defendants may wish to incorporate the Network Defendants'

**Berger&Montague,P.C.**
ATTORNEYS AT LAW

August 4, 2006
Page -8-

responses by reference, they must do so in a verified interrogatory response.

Plaintiffs therefore request that the Bank Defendants provide a verified interrogatory response to each deferred interrogatory within twenty days after the Network Defendants' respond. However, similar to the document requests, if the Network Defendants do not provide responses to the deferred interrogatories by August 31, then Plaintiffs will require the Bank Defendants by September 30 because we are unwilling to delay discovery of this information.

Finally, the Bank Defendants stated that they do not understand Plaintiffs' request that the Bank Defendants identify specific discovery requests which they cannot respond to without the assistance of the Network Defendants. The purpose of this request is to determine which discovery requests, if any, the Bank Defendants have requested be deferred, even though they have responsive information and documents readily available to them, because it is duplicative of discovery requests made to the Network Defendants as opposed to deferring the requests because they must obtain information and documents from the Network Defendants in order to respond. Plaintiffs will not agree to indefinitely defer any discovery request for which the Bank Defendants have responsive documents or information readily available merely because the request is duplicative of information requested from the Network Defendants. On the other hand, Plaintiffs are likely to defer responses for discovery requests which legitimately cannot be responded to without the assistance of the Network Defendants.

8.     **Privilege Logs**

Bank Defendants claim that for certain discovery requests it will burdensome to provide the information required to be included in a privilege log under the Local Rules. While Plaintiffs do not understand your burden argument, we will nevertheless consider any such argument when you provide us with the reasons why it is burdensome to provide the required information for a particular discovery request.

9.     **Rule 33(d) Responses**

Defendants have requested that we provide them with a list of interrogatories for which Rule 33(d) responses are acceptable. In response to your request, Plaintiffs believe that the Bank Defendants can provide Rule 33(d) responses for the following interrogatories: Nos. 1, 9, 17, 21, 27, 30, 34, 37, 44, 46, 69, and 70-78.

As to the requirements of Rule 33(d) responses pursuant to Local Rule 33.1, Plaintiffs propose that the parties only identify the responsive information by bates range. Please provide us

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

August 4, 2006
Page -9-

with your response to this proposal.

> **10.    Identification of Former Employees**

The Bank Defendants refuse to provide the last known residential addresses and telephone numbers of its former employees. This position is contrary to requirements of Local Rule 26.3(c)(3). Pursuant to this rule, the Bank Defendants must identify the current or last known address of former employees. We expect that the Bank Defendants will comply with the requirements of the Local Rules.

> **11.    Format of Document Productions**

It appears that we should be able to amicably resolve this issue as the Bank Defendants concur that there should be an agreement regarding the technical specifications for the parties' productions of electronic and hard copy documents. We look forward to receiving your proposed stipulation and will respond in a timely fashion.

> **12.    Admissibility of Copies, Rather than Originals, of Documents**

The Bank Defendants rejected Plaintiffs' proposal that the parties should not to object to the admissibility of any document on the grounds that it is not an original. Instead, the Bank Defendants contend that the admissibility of copies should be governed by Rules 1003 and 1004 of the Federal Rules of Evidence. Because it is likely that millions of pages of documents will be produced in this case, we believe that your proposal is inefficient and not in the parties' best interests. Despite our disagreement with your proposal, we will agree that the Federal Rules of Evidence govern, if you will agree to produce the originals of all documents for which raise an objection on grounds that the document is not an original.

*        *        *

**Berger&Montague,P.C.**
ATTORNEYS AT LAW

August 4, 2006
Page -10-

We look forward to receiving your response to this letter by August 11.

Very truly yours,

K. Craig Wildfang
Robins, Kaplan, Miller
& Ciresi, L.L.P.

Bonny E. Sweeney
Lerach Coughlin Stoia
Geller Rudman &
Robbins LLP

H. Laddie Montague, Jr.
Merrill G. Davidoff
Michael J. Kane
Berger & Montague, P.C.

MJK/mcr

cc:    All Defense Counsel (via e-mail only)
       William Blechman, Esquire (via e-mail only)

408159