**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE<br><br>PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>1:05-CV-3800   1:05-CV-5083<br>1:05-CV-3924   1:05-CV-5153<br>1:05-CV-4194   1:05-CV-5207<br>1:05-CV-4520   1:05-CV-5866<br>1:05-CV-4521   1:05-CV-5868<br>1:05-CV-4728   1:05-CV-5869<br>1:05-CV-4974   1:05-CV-5870<br>1:05-CV-5069   1:05-CV-5871<br>1:05-CV-5070   1:05-CV-5878<br>1:05-CV-5071   1:05-CV-5879<br>1:05-CV-5072   1:05-CV-5880<br>1:05-CV-5073   1:05-CV-5881<br>1:05-CV-5074   1:05-CV-5882<br>1:05-CV-5075   1:05-CV-5883<br>1:05-CV-5076   1:05-CV-5885<br>1:05-CV-5077   1:06-CV-1829<br>1:05-CV-5080   1:06-CV-1830<br>1:05-CV-5081   1:06-CV-1831<br>1:05-CV-5082   1:06-CV-1832 | MASTER FILE 05-MD-1720(JG)(JO) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MASTERCARD'S MOTION TO DISMISS CLASS PLAINTIFFS'
<u>FIRST SUPPLEMENTAL CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.   CLASS PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MASTERCARD
     UNDER SECTION 7 OF THE CLAYTON ACT BECAUSE MASTERCARD
     DID NOT ACQUIRE THE STOCK OR ASSETS OF ANOTHER PERSON ................. 2

II.  CLASS PLAINTIFFS FAIL TO STATE A FRAUDULENT CONVEYANCE
     CLAIM UNDER SECTIONS 275 AND 276 OF THE NEW YORK DEBTOR
     AND CREDITOR LAW ...................................................................................................... 6

     A.   The Section 275 Claim ................................................................................................ 6

     B.   The Section 276 Claim ................................................................................................ 8

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Am. Crystal Sugar Co. v. Cuban-Am. Sugar Co.*, 152 F. Supp. 387 (S.D.N.Y. 1957) ....... 4

*Cortland Line Co., Inc. v. Orvis Co., Inc.*, No. 97-CV-1294, 1997 WL 808608 (N.D.N.Y. Jan. 5, 1997) ...................................................................................... 8

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ................................................................... 8

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................... 8

*Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357 (S.D.N.Y. 2003) .................................. 9, 10

*MFS/SunLife Trust - High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913 (S.D.N.Y. 1995) ....................................................................... 7

*Ostashko v. Ostashko*, No. 00-CV-7162, 2002 WL 32068357 (E.D.N.Y. Dec. 12, 2002) ..................................................................................................................... 7

*Shelly v. Doe*, 173 Misc. 2d 200 (N.Y. Co. 1997) ............................................................ 7

*Cadle Co. v. Lieberman*, No. 96-CV-495, 1998 U.S. Dist. LEXIS 23093 (E.D.N.Y. Sept. 11, 1998) ........................................................................................ 7

*United States v. 58th St. Plaza Theatre, Inc.*, 287 F. Supp. 475 (S.D.N.Y. 1968) ............. 7

*In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417 (S.D.N.Y. 1998) .............. 7, 8

## STATUTES

15 U.S.C. § 18 ............................................................................................................ 2, 3, 4

15 U.S.C. § 80a-18 ............................................................................................................ 3

Del. Code tit. 8, § 154, *et seq.* ........................................................................................... 3

N.Y. DEBT. & CRED. L. § 275 ........................................................................................ 6, 7

N.Y. DEBT. & CRED. L. § 276 ........................................................................................... 8

## OTHER

ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 318 (5th ed. 2002) ........................................................................................................ 4

ii

**PRELIMINARY STATEMENT**

As explained in its motion to dismiss, MasterCard is not an "acquirer" under Section 7 of the Clayton Act, which applies only to the acquisition by one person of the stock or assets "<u>of another person</u>." To the extent that MasterCard acquired anything during its IPO, the Supplemental Complaint makes clear that MasterCard did so only by a redemption of its own stock—not by acquiring the stock or assets of another person. Not surprisingly, Class Plaintiffs cite no case holding that a company's redemption of its own stock constitutes an "acquisition" of the stock "of another person" under Section 7. Rather, they seek to rely on one of numerous dictionary definitions of the word "of" that is inconsistent with the purpose and any plausible reading of the statutory language.

Nor does the argument in Class Plaintiffs' brief that MasterCard "acquired" the ability to set interchange rates state a claim for relief under Section 7. Such an "acquisition" is referenced nowhere in the Supplemental Complaint, which refers only to MasterCard's redemption of its own stock. To the contrary, the Supplemental Complaint clearly and repeatedly states that the IPO did *not* transfer to MasterCard the ability to set interchange rates. Accordingly, the Supplemental Complaint fails to state a claim that MasterCard acquired either stock or assets of another company through the IPO, and Count 17 of the Supplemental Complaint should be dismissed as a matter of law.

The conclusion that in these circumstances MasterCard is not an "acquirer" within the meaning of Section 7 makes perfect sense in light of the purpose of the statute. Section 7 is intended to prevent a reduction in competition by reason of an acquisition (most typically, an acquisition by one competitor of the stock of another competitor). MasterCard simply cannot reduce competition by redeeming its own stock previously owned by member banks and offering

it to the public. Neither Plaintiffs' strained arguments about the meaning of the word "of," nor their creative speculation about potential future misconduct, can change this result.

In addition, Class Plaintiffs fail to state a claim under either of the fraudulent conveyance statutes cited in their response papers. Under Section 275 of the New York Debtor and Creditor Law ("NYDCL"), a plaintiff must plead that, at the time of the conveyance, the defendant believed it would incur a debt it would be unable to pay. Class Plaintiffs, however, can allege merely that MasterCard was a defendant in the instant litigation—an allegation that is insufficient as a matter of law to support a claim that MasterCard *actually believed* it would both be found liable and be unable to satisfy a judgment in this case. Furthermore, under Section 276 of the NYCDL, Class Plaintiffs must show that the IPO was undertaken "to hinder, delay, or defraud" future creditors. Yet Class Plaintiffs cannot allege any manner in which termination of MasterCard's special assessment right might plausibly hinder or delay Class Plaintiffs, as five large Bank Defendants as to whom this assessment right was allegedly held are Defendants in this action, and Class Plaintiffs would be able to satisfy any judgment against these Defendants directly.[1]

## ARGUMENT

### I. CLASS PLAINTIFFS FAIL TO STATE A CLAIM AGAINST MASTERCARD UNDER SECTION 7 OF THE CLAYTON ACT BECAUSE MASTERCARD DID NOT ACQUIRE THE STOCK OR ASSETS OF ANOTHER PERSON

MasterCard and Class Plaintiffs agree that Section 7 of the Clayton Act applies when a "person engaged in commerce . . . acquire[s] . . . the whole or any part of the stock or . . . assets of another person engaged also in commerce or in any activity affecting commerce." 15

---

[1] The Supplemental Complaint should also be dismissed for the reasons set forth in the Bank Defendants' reply brief, which is incorporated herein by reference and which MasterCard joins in its entirety. MasterCard's reply brief addresses Parts III.A and VI of Class Plaintiffs' response; the Bank Defendants' reply brief addresses Parts III.B-V.

2

U.S.C. § 18. As MasterCard notes in its motion to dismiss, the IPO involved MasterCard's redemption of its own stock, not stock "of another person," and therefore Section 7 simply does not apply to the IPO.

Unable to advance any viable substantive argument that Section 7 applies to MasterCard's redemption of its own stock, Class Plaintiffs resort to linguistic subterfuge. They argue, based on a dictionary definition, that the phrase "acquire . . . the stock . . . *of* another person" should be read to mean "acquire the stock *from* another person." This argument conflicts with the unanswered caselaw cited in MasterCard's opening brief, and fails for at least two other reasons.

First, Class Plaintiffs' interpretation is not even supported by the dictionary upon which they rely. The Oxford English Dictionary lists nearly one-hundred definitions and sub-definitions of the word "of," and Class Plaintiffs provide no basis for adopting the single one they cite. (*See* Pls.' Mem. at 12-13.) Furthermore, Class Plaintiffs neglect to discuss the portion of their chosen definition that defines "of" as "indicating the . . . person from which . . . something *originates*." (*Id.* (emphasis added).) In the case of stock, the "person" from which it "originates" is the issuer (in this case, MasterCard). Significantly, this portion of the definition is the one commonly used when referring to corporate stock.[2] Thus, even under Class Plaintiffs'

---

2   For example, the Delaware Code uniformly uses the phrase "stock of a corporation" to refer to stock in, or issued by, a corporation. *See*, *e.g.*, Del. Code tit. 8, §§ 154 ("stock of the corporation issued for cash"), 157 ("stock of the corporation to be issued"), 163 ("The capital stock of a corporation shall be paid for . . ."), 165 ("a subscription for stock of a corporation to be formed"), 173 ("a dividend declared payable in stock of the corporation"), 203 ("the aggregate market value of all the outstanding stock of the corporation"); *see also* 15 U.S.C. § 80a-18 ("the holders of the outstanding voting securities of each class or series of stock of such company").

3

hand-picked definition, MasterCard's redemption of its own stock does not constitute an acquisition of the stock "of another person."

Second, Section 7 applies to the acquisition of the stock "of another person *engaged also in commerce.*"  15 U.S.C. § 18 (emphasis added).  Under Class Plaintiffs' strained reading, the qualifier "engaged . . . in commerce" would apply to the seller of the stock, but not to the acquired company.  This would mean that Company A (engaged in commerce) might acquire all of the stock of Company B (engaged in commerce) from Person C (not engaged in commerce), and there would be no recourse whatsoever under Section 7.  This would be true even if Companies A and B were direct horizontal competitors, for, as Class Plaintiffs would have it, Company A would not have purchased the stock "of" Company B, but rather "of" Person C, who is not engaged in commerce.[3]  There is no basis in law for this bizarre reading of the statute, as Section 7 was indisputably intended to apply where the acquirer and *the acquired company* are engaged in commerce.[4]

Unable to state a claim under the stock-acquisition prong of Section 7, Class Plaintiffs now argue that the IPO constituted an asset acquisition, specifically that MasterCard acquired "decision-making power over the setting of Interchange Fees" from the Bank Defendants.  (Pls.' Mem. at 15.)  As discussed in MasterCard's motion to dismiss, however, the Supplemental Complaint contains no factual allegation that MasterCard acquired *anything*

---

[3]  Indeed, these are the facts of *Am. Crystal Sugar Co. v. Cuban-Am. Sugar Co.*, in which the court held that Section 7 did apply to the defendant's acquisition from the public of shares in a horizontal competitor.  152 F. Supp. 387, 392-95 (S.D.N.Y. 1957).  Under Class Plaintiffs' interpretation of Section 7, the statute would not have applied to this transaction.

[4]  *See* ABA SECTION OF ANTITRUST LAW, ANTITRUST LAW DEVELOPMENTS 318 (5th ed. 2002) (explaining that § 7 was enacted to cover "acquisitions of stock of one corporation by another corporation, where both corporations were engaged in interstate commerce").

4

(including such decision-making powers) other than through the redemption of its own stock as part of the IPO process.  (*See* MasterCard Mem. at 5-7.)  No separate acquisition is alleged.[5]

Moreover, the very portion of the Supplemental Complaint that Class Plaintiffs cite contradicts their argument by stating that the IPO "by design . . . *cannot result in the Member Banks losing control of the [interchange] price-setting role* they covet."  (Supp. Compl. ¶ 86 (emphasis added); *see also id*. ¶ 15.)  Class Plaintiffs cannot now avoid dismissal of their claims by arguing, contrary to their own allegations, that the IPO transferred the "asset" of control of interchange price-setting to MasterCard.

Most fundamentally, Class Plaintiffs' argument that in these circumstances MasterCard is an "acquirer" under Section 7 is at odds with the purpose of that statute.  Section 7 is designed to address transactions that may lessen competition through an increase in either horizontal concentration or vertical integration.  Thus, Section 7 potentially applies to a corporation's acquisition of the stock or assets "of another person" because (depending on the circumstances) such an acquisition might increase concentration or integration.  In light of the undisputed facts regarding the IPO—*i.e.*, that MasterCard (at most) acquired only MasterCard stock—there is no set of facts that Class Plaintiffs could allege to show that Section 7 applies.  This inapplicability of Section 7 also renders irrelevant Class Plaintiffs' convoluted assertions that the IPO may somehow increase MasterCard's market power; such arguments have no bearing with respect to an entity such as MasterCard that is not an "acquirer" under Section 7.  As set forth in the Bank Defendants' memoranda, moreover, the IPO could not have increased horizontal concentration or vertical integration because it transferred ownership of MasterCard

---

[5] The disingenuous nature of Class Plaintiffs' claims is underscored by their related allegations that, in the IPO, MasterCard somehow "acquired" control over its own "brand and trademark" (Pls.' Mem. at 15 n.15)—even though Class Plaintiffs concede that MasterCard already "nominally" owned these intellectual property rights.  (*Id.*)

5

stock from the member banks *to the public*.  There is no plausible factual scenario under which this transfer of control could constitute a merger for purposes of Section 7:  Selling the member banks' ownership stake to a huge number of public participants who now own the voting shares of MasterCard simply could not have reduced competition in the relevant market.

Thus, Class Plaintiffs' rank speculations—that the IPO may facilitate higher or mandatory interchange rates in the future, or that the so-called "Ownership and Control Restrictions," hypothetically, might prevent a different owner from changing the manner by which interchange fees are set—are immaterial.  They are immaterial both because MasterCard's actions do not fall within Section 7 and because, as discussed in the Bank Defendants' memoranda, they are entirely speculative and therefore insufficient as a matter of law to state a Section 7 claim.  (*See* Bank Defs.' Mem. at 6-8, 9-10, 18-19.)

Accordingly, Class Plaintiffs' claims against MasterCard under Section 7 of the Clayton Act should be dismissed.

## II.   CLASS PLAINTIFFS FAIL TO STATE A FRAUDULENT CONVEYANCE CLAIM UNDER SECTIONS 275 AND 276 OF THE NEW YORK DEBTOR AND CREDITOR LAW

In their Opposition, Class Plaintiffs reveal what cannot be divined from the vague and conclusory allegations of the Supplemental Complaint—that they purport to state fraudulent conveyance claims under Sections 275 and 276 of the New York Debtor and Creditor Law ("NYDCL") based upon MasterCard's release of its "right to assess the Member Banks for 'liabilities arising out of . . . judgments in major litigation.'"  (Supp. Compl. ¶ 107; Pls.' Mem. at 24-34.)  As set forth below, Class Plaintiffs fail to state either cause of action.

### A.   The Section 275 Claim

To state a claim under NYDCL § 275, a plaintiff must allege, among other things, that, at the time the subject conveyance was made, the transferor *actually* "intend[ed] or

6

believe[d] that he [would] incur debts beyond his ability to pay as they mature . . . ." N.Y. DEBT. & CRED. L. § 275 (2006); s*ee MFS/SunLife Trust – High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 943 (S.D.N.Y. 1995) (dismissing § 275 claim where plaintiffs "adduced no evidence of an actual belief by the defendants that [the company] would be unable to pay its debts"); *see also Ostashko v. Ostashko*, No. 00-CV-7162, 2002 WL 32068357, at *26 (E.D.N.Y. Dec. 12, 2002) ("Courts have interpreted 'intends or believes' as 'awareness by the transferor that, as a result of the conveyance, he will not be able to pay present and future debts.") (citing *Cadle Co. v. Lieberman*, No. 96-CV-495, 1998 U.S. Dist. LEXIS 23093, at *29 (E.D.N.Y. Sept. 11, 1998)).

On its face, the Supplemental Complaint does not allege (nor could it) that, at the time MasterCard relinquished the special assessment right, it *actually intended or believed* that it *would* incur debts beyond its ability to pay. Neither the mere pendency of litigation against MasterCard (Pls.' Mem. at 29), nor its acknowledgment of the risks posed by the pending litigation (*id*. at 30), are sufficient to satisfy the requirement under § 275 of establishing that the transferor made a conveyance at a time when it intended or believed that it *would* incur debts beyond its ability to pay. *See Shelly v. Doe*, 173 Misc. 2d 200, 211-12 (N.Y. Co. 1997) (mere pendency of litigation against alleged tortfeasor who transferred assets prior to trial was insufficient to establish § 275 claim because it "is inherently speculative, in view of the possibility of different outcomes to the trial . . .").[6]

---

[6] By contrast, liability under NYDCL § 275 can be established where a transferor made a conveyance at a time when it was aware of a fixed indebtedness that it would not be able to pay. *See, e.g., Cadle Co.*, 1998 U.S. Dist. LEXIS 23093, at *29 (Section 275 liability established where transferor conveyed all of his assets to his wife at time when he was indebted to host of creditors, including back taxes and penalties to IRS, which he knew he could not pay); *United States v. 58th St. Plaza Theatre, Inc.*, 287 F. Supp. 475, 498 (S.D.N.Y. 1968) (same); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 430 (S.D.N.Y.

7

Far from indicating a belief that MasterCard would soon incur debts beyond its ability to pay, MasterCard's various S-1 disclosures relating to the IPO are replete with statements that the IPO would increase its capital base, thereby enhancing its ability to meet its future obligations. *See*, *e.g.*, MasterCard Incorporated, Amendment No. 8 to Form S-1 Registration Statement (Form S-1/A), at 34 (May 23, 2006) (hereinafter "S-1") (discussing use of IPO proceeds to "increase our capital"), 73 (IPO "will place our business in a stronger position").[7] In sum, Class Plaintiffs fail to state a claim under NYDCL § 275 because they have not, and cannot, plead or prove that MasterCard relinquished the special assessment right at a time when it intended or believed it would incur debts beyond its ability to pay.

### B.   The Section 276 Claim

NYDCL § 276 requires a plaintiff to plead and prove that the transferor, in making the conveyance in question, "actual[ly] inten[ded] . . . to hinder, delay, or defraud either present or future creditors . . . ." N.Y. DEBT. & CRED. L. § 276 (2006). Under the circumstances here, Class Plaintiffs cannot establish that MasterCard's publicly-announced decision (reported

---

1998) (plaintiff stated § 275 claim by alleging that "at the time of each transfer, the debtor was a defendant in a lawsuit, *suffered a judgment and could not satisfy it*") (emphasis added).

[7]   Class Plaintiffs argue that Defendants' motions to dismiss should be converted to motions for summary judgment because Defendants' motions cite to and attach the S-1. The Supplemental Complaint, however, repeatedly relies on and quotes the S-1 for many of its most critical definitions and factual allegations. (*See* Supp. Compl. ¶¶ 8, 10, 78, 107, 109, 111.) Accordingly, for the reasons discussed in the Bank Defendants' reply brief, the motions do not warrant conversion. (*See* Bank Defs.' Reply Mem. at 1 n.1.) Furthermore, the Second Circuit permits courts weighing motions to dismiss to consider "documents required by law to be filed, and actually filed, with the SEC." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Cortland Line Co., Inc. v. Orvis Co., Inc.*, No. 97-CV-1294, 1997 WL 808608, at *2 (N.D.N.Y. Jan. 5,1997) ("Since the holding in *Kramer*, many courts in this circuit have examined securities related public disclosure documents when considering motions to dismiss . . . .") (collecting cases). *Kramer* explicitly distinguished *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989), upon which Plaintiffs rely. *Kramer*, 937 F.2d at 773-74 .

to the SEC) to relinquish the special assessment right as part of an IPO that produced a publicly-traded company with a $13 billion market capitalization could have the effect of "hinder[ing], delay[ing], or defraud[ing]" them. *See Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 284 (S.D.N.Y. 2003) (fact that transactions "were reported in [defendants'] publicly-filed reporting statements . . . weighs heavily against a finding of fraud").

Moreover, Class Plaintiffs' allegation that they will be harmed by such relinquishment is entirely speculative. Class Plaintiffs are asserting antitrust claims here *directly* against a number of the largest "Member Banks" that might have been the subject of the special assessment right if MasterCard ultimately is unsuccessful in defending this action. Quite simply, if Class Plaintiffs prevail on their antitrust claims in this case, they will establish *direct* liability against these Member Banks, making the Member Banks' potential *indirect* liability under the special assessment right superfluous.

For the same reason, Class Plaintiffs fail to allege "badges of fraud" sufficient to satisfy the stringent Rule 9(b) pleading standards applicable to claims under NYDCL § 276. Class Plaintiffs essentially concede that their lone assertion that "[t]he Agreements were undertaken . . . with the intent to defraud potential judgment creditors" (Supp. Compl. ¶ 149) fails to satisfy Rule 9(b) requirements. (*See* Pls.' Mem. at 30-31.) Rather, Class Plaintiffs claim to have alleged four "badges of fraud" that purportedly satisfy the pleading requirements for fraud.[8] But the circumstances here dictate that three of these four alleged "badges of fraud" are non-existent because they each relate to the alleged relinquishment of the assessment right.

---

[8]  (1) "MasterCard did not receive adequate consideration for the special-assessment right" (Pls.' Mem. at 31-32); (2) "There was an extremely close relationship between MasterCard and the Member Banks" (*id*. at 32); (3) "The effect of MasterCard's conduct after the pendency of this lawsuit was to hinder, delay or defraud the Plaintiffs" (*id*. at 32-33); and

As explained above, whether the special assessment right would ever have any value vis-à-vis the Class Plaintiffs is entirely speculative because they are asserting direct antitrust claims against Member Banks that would have been subject to the assessments. Accordingly, Class Plaintiffs cannot establish the "badge of fraud" that MasterCard's release of the special assessment right "caused assets to be placed beyond the[ir] reach" (*id*. at 32), or "was undertaken in a transparent attempt to insulate the banks from liability" (*id*. at 33). The same is true for Class Plaintiffs' assertion that "[t]he timing of the conveyance during the pendency of this lawsuit creates an inference of intent to defraud"—because the special assessment right has no present effect on the Class Plaintiffs' ability to recover directly from MasterCard and the Member Banks on any judgment here, MasterCard's relinquishment of it cannot be a "badge of fraud." Class Plaintiffs' mere reliance on the fourth alleged "badge of fraud"—the close relationship between MasterCard and the Member Banks (*id*. at 32)—is plainly insufficient to state a claim under NYDCL § 276 where the transaction at issue is publicly disclosed. *See Lippe*, 249 F. Supp. 2d at 384. Accordingly, Class Plaintiffs fail to state a claim under NYDCL § 276.

## CONCLUSION

For the foregoing reasons, MasterCard respectfully requests that this Court enter an order dismissing with prejudice the First Supplemental Class Action Complaint.

---

(4) "The timing of the conveyance during the pendency of this lawsuit creates an inference of intent to defraud" (*id*. at 33).

Dated: November 29, 2006

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:     /s/ Gary R. Carney
    Gary R. Carney (GC-4203)
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Tel: (212) 373-3000
    Fax: (212) 757-3990

    Kenneth A. Gallo (KG-5664)
    Joseph J. Simons (JS-4658)
    Adav Noti (AN-6691)
    1615 L Street, NW, Suite 1300
    Washington, DC 20036-5694
    Tel: (202) 223-7300
    Fax: (202) 223-7420

**HUNTON & WILLIAMS LLP**

    Keila D. Ravelo (KR-8164)
    Wesley R. Powell (WP-7852)
    200 Park Avenue
    New York, NY 10166-0005
    Tel: (212) 309-1000
    Fax: (212) 309-1100

    *Attorneys for Defendants MasterCard Incorporated and MasterCard International Incorporated*