**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
IN RE PAYMENT CARD
INTERCHANGE FEE AND
MERCHANT DISCOUNT                                    **ORDER**
ANTITRUST LITIGATION                                 MD 05-1720 (JG) (JO)

This document refers to:  ALL ACTIONS
------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

For the reasons explained below, I now grant in part and deny in part an application for a protective order regarding the production of metadata (that is, data about data; in this context, information about an electronically stored document that may or not be visible if the document is reduced to printed form) made by a group of plaintiffs in this consolidated multidistrict litigation known as the "Individual Plaintiffs," each of which has sued exclusively on its own behalf rather than joining in a putative class action.  Specifically, I grant the application for a protective order exempting the Individual Plaintiffs from producing electronically stored metadata in its native format to the extent such information was processed for production to the defendants on or before January 12, 2007, and I deny the application to the extent it seeks similar relief on a prospective basis.

I.      Background

On May 1, 2006, the named plaintiffs in the putative class actions consolidated in this litigation (the "Class Plaintiffs") and the Individual Plaintiffs served consolidated discovery demands on all defendants.  Docket Entry ("DE") 573 at 1.  Two days later, on May 3, 2006, defendants Visa U.S.A., Inc., Visa International Service Association, MasterCard International Incorporated, and MasterCard Incorporated (collectively, the "Network Defendants") served

document requests on the Individual Plaintiffs. DE 573 at 2; DE 574 at 2. The requests on both sides demanded the production of electronic data, but only the plaintiffs made explicit reference to metadata. The Network Defendants more generally demanded that all data be produced as kept in the ordinary course of business. DE 573 at 1-2.

The Individual Plaintiffs responded in June 2006, objecting to each request to the extent it exceeded the requirements of the Federal Rules of Civil Procedure or the Local Rules of this court and stating that they would "comply with the requirements set forth by these Rules, but [would] not comply with any definitions or instructions that seek to impose further requirements." DE 574 Ex. 2 (Kroger Direct Action Plaintiffs' Response to Defendant Visa U.S.A., Inc., Visa International Service Association, MasterCard International Incorporated And MasterCard Incorporated's First Request For Production) ¶ II.1; DE 573 Ex. 5.[1] Between June and November 2006, Individual Plaintiffs made at least six productions of electronic documents using their own protocol, which involves printing electronic documents and then scanning the pages thus printed to create "TIFF" images, which can be converted into a searchable text file through the use of "OCR" software. DE 574 at 3 & Ex. 3.[2] In other words, the Individual Plaintiffs have rather laboriously stripped their text-searchable electronic documents of metadata

---

[1] At the time the parties made their discovery requests, Rule 34 of the Federal Rules of Civil Procedure had not yet been amended to address the issue of electronically stored information, but the Supreme Court had already announced that such an amendment would take effect on December 1, 2006. *See* United States Supreme Court, Order Adopting Amendments To The Federal Rules Of Civil Procedure dated April 12, 2006 ("Rule Amendment Order") ¶ 3.

[2] "TIFF" is an acronym for "tagged image file format" and refers to an image format that is supported on most computer systems. "OCR" refers to "optical character recognition," a computer software program that translates images of text into a format that can be searched or "read" electronically.

that would not appear in printed form, and then converted them back into text-searchable electronic documents without that subset of metadata.

On September 7, 2006, counsel for the Class Plaintiffs, acting on behalf of all plaintiffs, sent to the defendants' counsel a proposed stipulation to govern the form in which electronic documents would be produced by all parties. DE 573 at 2; DE 574 at 6. A week later, the defendants' counsel sent an email to their adversaries to which they attached a responsive letter and counterproposal. DE 573 at 3 & Ex. 7; DE 574 at 6 & Ex. 6. During the following weeks, the attorneys representing the Class Plaintiffs and Individual Plaintiffs communicated frequently among themselves about the form of the proposed stipulation addressing, among other matters, the Individual Plaintiffs' opposition to components of the draft stipulation's provisions governing the production of metadata. DE 574 at 6. During this same period, counsel for the Class Plaintiffs communicated frequently with counsel for the defendants about the terms of the stipulation. *Id*. at 6-7; DE 573 at 2-3. In early October 2006, the Class Plaintiffs' counsel informed the defendants' counsel that only the Individual Plaintiffs had yet to consent to the then-current terms of the draft stipulation. DE 573 at 3. However, counsel for the Individual Plaintiffs did not communicate directly with the defendants' counsel about the stipulation until the end of November 2006. DE 573 at 3. At that point, it became clear to the defendants' counsel, as it had been clear to the Class Plaintiffs' counsel, not only that the Individual Plaintiffs had not yet consented to the proposed stipulation, but that they also had significant objections to its terms. *Id*.

Soon thereafter, on December 11, 2006, the parties submitted to me, as they do periodically, a report on the status of their discovery efforts. In that report, the defendants

3

objected to the Individual Plaintiffs' protocol for producing electronic documents on the grounds that it "degrad[es] the searchability" of the documents to be produced and contravenes the intent of the 2006 Amendment to Rule 34. DE 566 at 8. When they raised this objection to me for the first time, the defendants had already received substantial production from Individual Plaintiffs in the form to which they were objecting. The defendants now insist that Individual Plaintiffs are obliged to produce all electronic data in the form in which it is ordinarily kept, which would bring their production into conformity with the terms of the draft stipulation. *Id*. at 7-8. Notwithstanding this insistence, and the controversy it has provoked, the defendants have not filed a formal motion to compel Individual Plaintiffs to undertake the production at issue.

At the most recent status conference on December 18, 2006, I heard argument on the matter and invited each side of the debate to submit further letters to substantiate its position on the issue I described, for lack of a more precise term, as estoppel – that is, the extent to which the defendants were estopped from asking me to compel the Individual Plaintiffs to provide metadata, rather than convert their electronic documents to searchable TIFF images, by virtue of their interactions over the preceding several months. DE 569. Each side submitted such letters and the Individual Plaintiffs, as part of their submission, formally asked me to grant them a protective order that would shield them from any obligation to make the kind of production the defendants now seek, in the event that I construe the current dispute as a motion to compel by the defendants. DE 574 at 1 n.1.

4

II.     Discussion

    A.     Threshold Issues

        1.     The Dispute Is Ripe For Adjudication

Because the defendants have not formally moved to compel the Individual Plaintiffs to produce metadata, and because the Individual Plaintiffs condition their request for a protective order on my determination to assume that the defendants have made such a motion, I arguably should decide nothing at all. I conclude that punting the issue in that way would be inappropriate under the circumstances. Having reached an impasse with Individual Plaintiffs in negotiations on terms of a stipulation to govern the format of electronic production, the defendants have raised objections to the form of Individual Plaintiffs' existing protocol. Underlying these objections is the assertion that Individual Plaintiffs' production is incomplete and therefore represents a failure to comply with their discovery obligations. *See* Fed. R. Civ. P. 37. To the extent that the nature of the arguments at the most recent status conference left some uncertainty as to the procedural posture of the dispute – a possibility underscored by the conditional phrasing of the Individual Plaintiffs' application – it may be that the defendants assume that they have indeed made a motion to compel.

There is no uncertainty that the matter is ripe for decision. The parties have not asked for additional time to resolve the matter on consent, but instead appear to have adopted firm views on the matter. Indeed, implicit in the conditional nature of the Individual Plaintiffs' request is an intention to continue on their present course in making future productions of discovery notwithstanding the fact that they now know the defendants' objections to their protocol. For the reasons explained below, such a stance only guarantees that the Individual Plaintiffs will incur

burdens that a ruling now will help them to avoid. Accordingly, I construe the defendants' objections as a motion to compel, and therefore proceed to the merits of the dispute.

        2.        <u>The Current Version Of Rule 34 Governs This Dispute</u>

In adopting the 2006 Amendments to the Federal Rules of Civil Procedure, the Supreme Court ordered that they "shall take effect on December 1, 2006, and shall govern ... insofar as just and practicable, all proceedings then pending." Rule Amendment Order ¶ 3. There is no reason why it would be unjust or impracticable for the amended Rule 34 to govern these proceedings. To the extent the amended rule might require the Individual Plaintiffs to re-produce in their original formats documents they have already produced in an altered format, there can be no claim of impracticability. If anything, it was the initial, counter-intuitive protocol the Individual Plaintiffs adopted of converting electronic documents out of and then back into electronic form that might have deterred some as impractical, especially in light of the rule change that everyone involved knew would take effect long before the close of the discovery period in this litigation. As for whether application of the Rule would be unjust, I conclude that it would not: the general requirements of the amended Rule 34 remain, like every discovery rule, subject to alteration in specific circumstances that make strict adherence unduly burdensome or expensive. *See* Fed. R. Civ. P. 26(c). In other words, given the continued availability of a protective order under Rule 26, there is no reason to view the instant dispute as one that implicates the threshold applicability of the amended version of Rule 34.

        B.        <u>The Individual Plaintiffs' Obligations Under Amended Rule 34</u>

The defendants object to Individual Plaintiffs' production protocol on the grounds that, by failing to supply metadata, it does not comply with amended Rule 34. The Advisory Committee

6

on Civil Rules, in its notes to the 2006 amendment to Rule 34, wrote that a party responding to a discovery request may elect to produce a "reasonably usable" form electronic data rather than produce the information as kept in the ordinary course of business. Fed. R. Civ. P. 34(b), 2006 Amendment, Advisory Committee's Note. That is precisely what the Individual Plaintiffs have done. By making that choice, however, they have run afoul of the Advisory Committee's proviso that data ordinarily kept in electronically searchable form "should not be produced in a form that removes or significantly degrades this feature." *Id.* Accordingly, absent a sufficient basis for a protective order under Rule 26(c), I would grant the motion to compel that the defendants have constructively made. As a result, I must address the merits of the Individual Plaintiffs' conditional request for relief.

      C.      <u>The Individual Plaintiffs Are Entitled To Partial Relief</u>

Viewing the dispute through the prism of Rule 26(c), I am satisfied that requiring the Individual Plaintiffs to re-produce data that they have already produced in searchable form (albeit possibly not searchable in every way that the defendants would like), or that they have already substantially processed for such production, would impose an undue burden on them. At the status conference on December 18, 2006, counsel for the Individual Plaintiffs explained that such an effort would result in a substantial delay, require the devotion of significant resources, and might not ultimately produce much of the information sought. Had the Individual Plaintiffs churlishly proceeded with their production protocol in the face of consistent protests from the defendants who were receiving the discovery over a period of several months, I would be less concerned with the expense involved in complying with the defendants' wishes, even if the matter had taken that entire period to make its way to me for decision. But that is not what

happened here.  Instead, the Individual Plaintiffs provided a significant amount of discovery to the defendants, in several instalments, in the form they prefer, and heard no objections for several months.  While that history does not legally estop the defendants from insisting on a form of production more to their liking, it does suggest that as between the defendants and the Individual Plaintiffs, it would be less fair to impose the costs of a second form of production on the latter.

However, the same cannot be said of prospective discovery, meaning the electronic documents that the Individual Plaintiffs have not yet substantially prepared for production as searchable TIFF images.  Now that the Individual Plaintiffs are aware of the defendants' objections, their argument of undue burden is weaker; indeed, they have conceded that their concerns about the burdens of producing electronic documents in native format largely disappear with respect to the documents they have not yet processed for production.  *See* DE 574 at 2.  Accordingly, if they insist on adhering to the production method they have used to date, and if the defendants successfully seek an order compelling production of such as-yet unprocessed documents in their native format, the Individual Plaintiffs will have no one but themselves to blame for incurring the additional costs of making a second production.  *See Wyeth v. Impax Labs, Inc.*, 2006 WL 3091331, at *2 (D. Del. Oct. 26, 2006) (once aware of the requesting party's need for metadata, the producing party's failure to preserve it cannot support burden argument).

I make one final observation in the hope of avoiding similar problems in the future.  As far as I can discern, the instant application has left me to choose the lesser of two evils only because concerns that the Individual Plaintiffs' attorneys were sharing with the Class Plaintiffs' attorneys were not passed on in a timely manner to the attorneys representing the defendants.  If that is the case, it represents a regrettable breakdown in communications.  One way to avoid such

8

breakdowns may be to ensure that, in the future, the defendants negotiate with representatives of *both* the Class Plaintiffs and the Individual Plaintiffs when discussing matters of common concern. As has been made apparent in many ways over the course of this litigation, the Individual Plaintiffs and Class Plaintiffs occasionally have very different approaches to this litigation, and the defendants should not be whipsawed by such differences. I am confident that the parties can, through their talented counsel, take appropriate steps to avoid the kind of communications problem that led to the instant application, but if they believe it is appropriate (or if such problems persist), I will consider amending Pretrial Order 5, DE 279, to appoint a steering committee to address matters of common concern to both categories of plaintiffs and to represent all plaintiffs in discussing such matters with the defendants. *See Manual for Complex Litigation (Fourth)* § 10.221 (2004).

III. Conclusion

For the reasons stated above, I grant the Individual Plaintiffs' application to the extent they seek a protective order exempting them from re-producing electronic data processed for production as of today's date, and deny the application to the extent the Individual Plaintiffs seek such relief prospectively.

**SO ORDERED.**

Dated: Brooklyn, New York
January 12, 2007

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge