# H U L E T T   H A R P E R   S T E W A R T
### L L P
550  WEST  C  STREET,  SUITE  1600
SAN  DIEGO,  CA  92101
TEL:  (619)  338-1133
FAX:  (619)  338-1139
WWW.HULETTHARPERSTEWART.COM

April 11, 2008

**VIA ELECTRONIC FILING**

The Honorable James Orenstein, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room 456 North
Brooklyn, NY 11201

Re:    MDL-1720 – *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*

Dear Magistrate Judge Orenstein:

The Class Plaintiffs respectfully submit this letter seeking an order compelling the Bank Defendants to respond to Interrogatories Nos. 10, 12, 13, 19, 20, 22, and 28 of Plaintiffs' First Set of Discovery Requests; and Interrogatories Nos. 5 through 8 of Plaintiffs' Fourth Set of Discovery Requests.[1]  After meeting and conferring in good faith, the parties are at an impasse. *See* correspondence attached hereto as Exhibit C.

***Defendants should be compelled to answer Interrogatories 10 (first set) and 5-6 (fourth set) at this time***

Defendants refuse to respond at this time to Interrogatory No. 10 (first set) and Interrogatories 5-6 (fourth set), claiming they are contention interrogatories. Defendants' assertion is incorrect. These interrogatories are not contention interrogatories because they seek factual information that the Defendants knew *at the time they made decisions related to interchange fees.* Defendants presumably know the reasons for and rationale underlying the interchange fees and changes to those fees, which they have been charging for approximately 40 years.  Plaintiffs do not, at this time, seek *contentions formed for the purposes of litigation.*[2] The interrogatories read as follows:[3]

---

[1]  The Discovery Requests are attached hereto as Exhibits A and B, respectively.

[2]   The line between contention interrogatories and non-contention interrogatories is not always clear.  Contention interrogatories seek "an opinion or contention that relates to fact or the application of law to fact."  Fed. R. Civ. P. 33(a)(2); *Strauss v. Credit Lyonnais*, S.A., 242 F.R.D. 199, 233 (E.D.N.Y. 2007).  As one court described them, "contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims."  *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 c 4017, 1996 U.S. Dist. LEXIS 4494, at *7 (N.D. Ill. 1996).  By contrast, the interrogatories at issue seek discrete factual information related to Defendants' knowledge at the time they made decisions related to Interchange fees, not their litigation contentions.

[3]   During the meet and confer process, Defendants cited Plaintiffs' use of the word "contend" in the text of Interrogatories 5 and 6 to support their characterization that these are contention interrogatories.  The fact that Plaintiffs use the word "contend" does not automatically qualify them as contention interrogatories, and Plaintiffs would agree to delete the words "you contend" from the interrogatories.  The interrogatories actually seek

Honorable James Orenstein
April 11, 2008
Page 2

**Interrogatory No. 10.**  Describe each business justification for each of your Interchange Fees identified in your answer to Interrogatory No. 9 (Identify the Interchange Fee applied to each of the Merchant categories you utilized from 1992 to the present.).

**Interrogatory No. 5.**  Identify with particularity and by Card Product each cost item that You contend justifies the Interchange Rates or the Merchant Discount Rates for Visa or MasterCard Product transactions.  Please answer this interrogatory separately for Interchange Rates and Merchant Discount Rates.  For each cost item that You identify, provide a complete definition of that cost item.

**Interrogatory No. 6**.  Identify each and every benefit that You contend each of Your Card Products confers upon Merchants and identify the name of the person or people at Your company most knowledgeable about the foregoing contention.   Please answer this interrogatory separately for each of Your Card Products.

Plaintiffs seek the identification of witnesses and factual information relevant to facts at issue in this case, namely, whether interchange fees Defendants charge are justified on a cost basis.  To the extent the Defendants assert that interchange is a cost-based fee, it is reasonable to require them to identify the costs which underlie the setting of interchange fees.  Likewise, it is reasonable for Defendants to be required to state the benefits, if any, which in their views merchants receive.  Interrogatories such as these do not fall into the category of premature contention interrogatories.  *See Strauss,* 242 F.R.D. at 234 (finding interrogatories requesting the identities of people with knowledge to be distinct from premature contention interrogatories); *McCarthy v. Paine Webber Group,* 168 F.R.D. 448, 450 (D. Conn. 1996) (same); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL 1426, 2006 U.S. Dist. LEXIS 34129 (E.D. Pa. 2006).

Moreover, whether or not the interrogatories at issue are characterized as contention interrogatories is irrelevant.  Fed. R. Civ. P. 33 permits a court to postpone responses to contention interrogatories until a later stage in the litigation to protect the responding party "'from being hemmed into fixing [its] position without adequate information.'"  *Weiss v. Nat'l Westminster Bank*, PLC, No. 05-cv-4622 (CPS)(KAM), 242 F.R.D. 33, 64 (E.D.N.Y. 2007), *quoting Roth v. Bank of Commonwealth,* No. CIV-79-36E, 1988 U.S. Dist. LEXIS 19517, 1988 WL 43963, at *4 (W.D.N.Y. May 4, 1988); *Strauss*, 242 F.R.D. 229, n.27 (postponing responses to contention interrogatories because the responding party was not "in a position to offer full and useful answers" since no discovery had taken place).  Here, requiring Defendants to answer the interrogatories now will not hem them into any position without adequate information.  To the contrary, the information requested has been known to Defendants for years and is solely within their possession.

Defendants cannot legitimately state that they do not have the information to answer these interrogatories.  Thus, the Bank Defendants should be compelled to answer at this time.

***Defendants must either comply with Fed. R. Civ. P. 33(d) and Local Civil Rule 33.1 or provide narrative responses to Interrogatories Nos. 7-8 (Fourth Set).***

With respect to Interrogatories Nos. 7-8 (Fourth Set),[4] the Bank Defendants refuse to respond, claiming the interrogatories are duplicative of prior requests, but without identifying the

---

information relating to the specific cost items and benefits, respectively, as opposed to Defendants' litigation contentions.
[4]   These interrogatories seek the identification of Merchants who cancelled or threatened to cancel a Visa or MasterCard acceptance agreement, or stated they would no longer accept a Visa or MasterCard card product.  For

Honorable James Orenstein
April 11, 2008
Page 3

purportedly duplicative interrogatories. Not only is such an objection improper (*See Convermat Corp. v. St. Paul Fire & Marine Ins. Co.,* No. CV-06-1045(JFP)(AKT), 2007 U.S. Dist. LEXIS 69102, at *4 (E.D.N.Y. 2007)), but Defendants' failure to specify the grounds of the objection precluded a meaningful discussion on this issue.  In fact, they are not duplicative.

The Bank Defendants further refuse to answer these interrogatories, claiming that documents relating to the subject matter of the interrogatories have been produced.  This argument is unavailing.  Defendants must still respond, either in a narrative response, or, if the answers to the interrogatories are fully ascertainable by producing business records, pursuant to Fed. R. Civ. P. 33(d) and Local Civil Rule 33.1.  At this point they have done neither.  Indeed, if the Bank Defendants intend to respond by providing business records in lieu of answers, and they can properly do so, they must specify such documents "in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought."  Local Civil Rule 33.1; Fed. R. Civ. P. 33(d).  The Bank Defendants' reference to the millions of pages of documents already produced is improper.  *See PulseCard, Inc. v. Discover Card Servs.,* 168 F.R.D. 295, 305 (D. Kan. 1996) ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents.  They must identify in their answers to the interrogatories specifically which documents contain the answer.  Otherwise they must completely answer the interrogatories without referring to the documents.")

### *Bank Defendants Must Respond to Interrogatories 12, 13, 19, 20, 22, and 28 (First Set)*

These interrogatories generally seek information relating to: 1) the determination of merchant categories and the business justifications and interchange fees that apply to them; 2) the business justifications for changes in interchange fee rates, methodologies and analyses related to the same; and 3) the business justifications for Operating Rules containing various anti-steering restraints.  Plaintiffs originally agreed to defer the Bank Defendants' responses to these interrogatories on the condition that the Network Defendants produce adequate responses to substantially similar interrogatories.[5]  As evidenced by our contemporaneous letter seeking an order compelling the Network Defendants to respond to certain interrogatories, the Networks have not done so.  Thus, Plaintiffs move to compel the Bank Defendants to respond at this time.  If the Banks have no information in response to these interrogatories because the information is not known to them and is only known to the Networks, they may indicate as much in a sworn response.

Accordingly, Plaintiffs respectfully request that the Court order the Bank Defendants to answer the interrogatories set forth above within 30 days.

Respectfully Submitted,

ROBINS KAPLAN MILLER & CIRESI LLP          COUGHLIN STOIA GELLER RUDMAN
                                                                                 & ROBBINS LLP


By:   */s/ K. Craig Wildfang*                     By:   */s/ Bonny E. Sweeney*
         K. CRAIG WILDFANG                                   BONNY E. SWEENEY

---

each interrogatory Plaintiffs request the relevant dates, and the identity of related documents.  *See* Exhibits A and B for complete text.
[5] The corresponding Interrogatories are Nos. 21, 22, 15, 16, 20, 36, and 63, respectively, to Plaintiffs' First Set of Discovery Requests to the Network Defendants.  *See* Exhibit A to Plaintiffs' letter requesting that the Network Defendants be compelled to answer these and other interrogatories, filed contemporaneously with this letter.

Honorable James Orenstein
April 11, 2008
Page 4

BERGER & MONTAGUE PC               HULETT HARPER STEWART LLP


By:    /s/ H. Laddie Montague           By:    /s/ Dennis Stewart
       H. LADDIE MONTAGUE                      DENNIS STEWART


Counsel for Class Plaintiffs

# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------- X

IN RE MASTER                                   :     1:05-MD-1720-(JG)(JO)
PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST :
LITIGATION                                           **CLASS PLAINTIFFS' AND NON-**
                                               :     **CLASS PLAINTIFFS'**
This Document Relates To:  ALL CASES                 **CONSOLIDATED FIRST SET OF**
                                               :     **OMNIBUS DISCOVERY TO BANK**
                                                     **DEFENDANTS**


-------------------------------------- X

Banks
MP3 20177579.1

Pursuant to the Federal Rules of Civil Procedure, Class Plaintiffs and Non-Class Plaintiffs request that each named defendant answer the following First Set of Omnibus Discovery (hereinafter "First Set") within thirty (30) days and in accordance with the provisions prescribed by such rules.

## I. DEFINITIONS

A.    "Acquiring Bank" means a member of Visa and/or MasterCard that acquires payment transactions from Merchants and acts as a liaison between the Merchant, the Issuing Bank, and the Payment-Card Network to assist in processing the payment transaction. Visa and MasterCard Rules require that an Acquiring Bank be a party to every Merchant contract. In a typical payment transaction, when a customer presents a Visa or MasterCard card for payment, the Merchant relays the transaction information to the Acquiring Bank. The Acquiring Bank then contacts the Issuing Bank via the Network for authorization based on available credit or funds. Acquiring Banks compete with each other for the right to acquire payment transactions from Merchants.

B.    "Agreement" means any contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons, together with all modifications or amendments thereto.

C.    "All-Outlets Rule" is a rule of the Visa and MasterCard Networks that requires a Merchant with multiple outlets to accept Visa or MasterCard, respectively, in all of its outlets, even if those outlets are owned by a separate corporate entity, operated under a different brand name, or employ a different business model.

2

Banks
MP3 20177579. 1

D.     "And" and "or" are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this First Set any document or response that might otherwise be construed to be outside its scope.

E.     "Anti-Steering Restraints" are collectively the rules and policies of the Visa and MasterCard Networks that forbid Merchants from incenting Cardholders to use less expensive payment forms, including: the No-Surcharge Rule; the policies against seeking to "steer" Cardholders to cheaper payment media; the No-Minimum-Purchase Rule; and the Networks' so-called "Anti-Discrimination Rules," which prohibit Merchants from treating any other Payment Card or medium more advantageously than the Defendants' cards. The Defendants' standard-form-Merchant agreements proscribe steering by preventing Merchants from establishing procedures that favor, discourage, or discriminate against the use of any particular card.

F.     "Any" means one or more.

G.     "Assessment" refers to an amount computed and charged by the Networks on each transaction amount to the Acquiring and Issuing Banks.

H.     "Authorization" is the process by which a Merchant determines whether a Cardholder is authorized by his or her Issuing Bank to make a particular transaction. The Merchant sends the Cardholder's information to its Acquiring Bank or a Third-Party Processor, which sends it to Visa or MasterCard, which then sends it to the issuer or the issuer's processor, to obtain authorization. If authorization is given, the process is repeated in reverse.

I.     "Bank-Card-Acquiring Institution," "Bank-Card-Merchant Institution," or "Acquirer" means a bank or other financial institution member of Visa or MasterCard that establishes agreements with retailers whereby such retailers will accept Visa and/or MasterCard-branded plastic cards as payment for the goods and services that they sell.

3

Banks
MP3 20177579. 1

J.      "Bank-Card-Issuing Institution" or "Issuer" means a bank or other financial institution member of MasterCard or Visa that issues Visa and/or MasterCard-branded plastic cards to Cardholders for their use as payment systems and access devices.

K.      "Bank Defendants" means a Defendant named in the First Consolidated Amended Class Action Complaint that is also a bank or financial institution.

L.      "Cardholders" means all individuals and entities utilizing Credit Cards, Online-Debit Cards, or Offline-Debit Cards.

M.      "Charge Card" or "Travel & Entertainment Card" is an access device, usually a Payment Card, enabling the holder to purchase goods and services on credit to be paid on behalf of the holder by the issuer of such device.  Typically, the contractual terms of such cards require that payment from the holder to the issuer be made in full each month, for all payments made on behalf of the Cardholder by the issuer during the preceding month.  The issuer does not extend credit to the holder beyond the date of the monthly statement, nor does it impose interest charges on the balance due except as a penalty for late payment. Examples of Charge Cards are the American Express Green, Gold, Platinum, and Centurion cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

N.      "Class Plaintiffs" means the named Class representatives identified in the First Consolidated Amended Class Action Complaint served April 24, 2006, each of their predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by them, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.  Class Plaintiffs reserve the right to serve separate discovery.

4

Banks
MP3 20177579. 1

O.      "Classes" means the classes defined in Class Plaintiffs' First Consolidated Amended Class Action Complaint served on April 24, 2006.

P.      "Committee" means any committee, subcommittee, task force, working group, or similar group of persons, whether standing or *ad hoc*, with any responsibilities for any aspect of your business.

Q.      "Communicate" means to exchange, transfer, or disseminate facts or information, regardless of the means by which it is accomplished.

R.      "Communication" means any exchange, transfer, or dissemination of facts or information, regardless of the means by which it is accomplished.

S.      "Credit Card" is an access device, usually a Payment Card, enabling the holder to (i) effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such devices; or (ii) obtain cash with credit extended by the issuer. Credit Cards permit Cardholders to borrow the money for a retail purchase from the card issuer and to repay the debt over time, according to the provisions of a revolving-credit agreement between the Cardholder and the issuer. Examples of Credit Cards are the Visa and MasterCard Credit Cards issued by members of the Defendant Bank card Networks, as well as the Discover and Private-Issue cards issued by Morgan Stanley and Dean Witter & Co., and the Optima and Blue-type cards issued by American Express. Proprietary cards of individual Merchants for use only at particular Merchants' outlets are not included in this definition.

T.      "Debit Card" is an access device, usually a Payment Card, enabling the holder, among other things, to effect a cash withdrawal from the holder's depository bank account, either at an Automated Teller Machine ("ATM") or a point of sale.

Banks
MP3 20177579. 1

U.     "Defendants" means each Defendant named in the First Consolidated Amended Class Action Complaint.

V.     "Document" or "documents" is to be given the broadest possible meaning under applicable law and shall include the entire scope of the term "document" in Federal Rule of Civil Procedure 34(a), including both original documents and copies thereof.  A draft or non-identical copy is a separate document within the meaning of this term.  Without limiting the foregoing, "document" shall include, without limiting the generality of its meaning, any writing or recording, and includes, but is not limited to, the original and copy of accounts, accounting records, advertisements, affidavits, agreements, analyses, annual reports, appointment books, appraisals, articles, articles of incorporation, assignments, audits, balance sheets, bids, bills, bills of lading, bills of sale, blueprints, books, brochures, business cards, bylaws, cables, calculations, calendars, catalogs, charts, checks, check registries, check stubs, circulars, clippings, computer cards, computer discs, computer printouts, computer programs, computer tapes, consultant lists, consultant resumes, contracts, conveyances, correspondence, customer lists, data compilation, deeds, diagrams, diaries, descriptions, designs, drafts, drawings, email, estimates, expense accounts, expense reports, files, films, financial statements, formulae, graphs, indices, instructions, invoices, leases, ledgers, letters, lists, literature, log books, loose-leaf binders, mailgrams, manuals, maps, memoranda, messages, microfiche, microfilm, minutes of meetings, models, mortgages, model pictures, news clippings, notebooks, notes, notices, opinions, orders, organizational charts, pamphlets, papers, parts lists, component parts lists, passbooks, periodicals, permits, personnel records, photographs, pleadings, pocket calendars, press releases, prints, purchase orders, rent receipts, records, releases, reports, resolutions, schematics, schedules, security agreements, shipping orders, slides, specifications, statements, statements of

6

account, studies, summaries, surveys, tape recordings, tax returns, telephone bills, telegrams, telephone lists, telephone logs, telexes, test results, trade letters, transcripts, warranties, work orders, work sheets or writings and all materials within or upon which appears any writing or other mark, whether handwritten, typewritten, printed, transcribed, tapes, recorded, filmed, punched or produced by any other mechanical or electronic system of reproduction, and shall include each document known to you, your attorneys, accountants, employees or agents, regardless of whether such document is in your custody, control or possession.

W.      "Drafted" means wrote or authored.

X.      "Each" includes every, and vice versa.

Y.      "Float" refers to the expense the Issuing Bank incurs by extending interest-free credit to the Cardholder for the grace period between the date of purchase and the date of payment.

Z.      "General-Purpose Cards" collectively refers to Credit Cards and Charge Cards.

AA.     "Grace Period" refers to the time between a Cardholder's purchase and the date on which the Cardholder's payment is due to the Issuing Bank, during which time the Cardholder pays no interest.

BB.     "Identify" means to state:

    1.      in the case of a natural person who is a current employee of yours, his/her name, title, business address, and business telephone number;

    2.      in the case of a natural person who is your former employee, his/her last title, business address, and business telephone number of your company, and his/her last known residential address and telephone number;

    3.      in the case of a natural person who is neither a present nor former employee of yours, the person's name, title, current or last known business address, and current or last known telephone number;

    4.      in the case of a person other than a natural person, its name, the address of its principal place of business, its telephone number, the name of its chief executive officer, and, if applicable, the natural person who is your company's primary contact at that entity;

5.    in the case of a product, its manufacturer, its model name and number, its generic name or other designation; each brand name under which it has been sold; any other name or other designation, including any code names by which the product has been known within your company; and its physical properties or characteristics;

6.    in the case of a communication, its date, type (*e.g.*, telephone conversation, letter, or meeting), the place where it occurred, the identity of the person who made the communication, the identity of each person who received the communication or who was present when it was made, and the subject matter discussed;

7.    in the case of a contract provision, the paragraph number of the provision in the contract and the number of the page or pages on which the provision appears, as well as the name of each entity in whose contract the provision appears; and

8.    in the case of a document, the name of the document, the author and any recipients, the date, the Bates numbers assigned to the document in any and all litigations, and the Exhibit number assigned to the document, as a deposition or trial exhibit in any and all litigations.

CC.    "*In re Visa Check Class Action*" refers to *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238, in the United States District Court for the Eastern District of New York.

DD.    "*In re Visa Check* Class Members" means all Merchants that were included in the certified class of entities in *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238, in the United States District Court for the Eastern District of New York, who did not request exclusion from the class.

EE.    "Including" means including, but not limited to.

FF.    "Interchange Fee" in the United States General-Purpose-Card-Network Services and Debit-Card-Network Services markets means a fee that Merchants pay to the Issuing Bank through the Network and the Acquiring Bank for each retail transaction in which the Issuer's card is used as a payment device at one of the Acquirer's Merchant accounts.  The Interchange Fee is paid to the Issuing Bank through the Network and the Acquiring Bank by Class members, and constitutes a component of and a floor for the Merchant-Discount Fee.  The following example illustrates how the Visa and MasterCard Interchange Fees work.  A customer presents a

8

Banks
MP3 20177579. 1

Visa or MasterCard card to a Merchant as a payment method. The Merchant contacts the Acquiring Bank, either directly or through a Third-Party Processor, to authorize the transaction. The Acquiring Bank submits the transaction to the Network. The Network relays the transaction information to the Issuing Bank or the Issuing Bank's Third-Party Processor, which approves the transaction if the customer has a sufficient line of credit or available funds. If the transaction is authorized through the Network, the Issuing Bank pays the Acquiring Bank the payment amount minus the "Interchange Fee," which is fixed by the Member Banks of Visa and MasterCard. The Acquiring Bank then pays the Merchant the payment amount minus the Interchange Fee and other charges for processing the transaction. The total fee charged the Merchant is often referred to as the "Merchant-Discount Fee." The Interchange Fee is the largest component of the Merchant-Discount Fee. Visa Interchange Fees are fixed periodically by Visa Member Banks, acting through the Visa Board of Directors. MasterCard Interchange Fees are fixed periodically by the MasterCard Member Banks, acting through the MasterCard Board of Directors. "Merchant-Discount Fee" means the total amount that the Merchant, such as one of the Class members, pays to its Acquiring Bank for each transaction involving a Visa or MasterCard Credit or Offline-Debit Card.

GG.    "Intra-Processed Transactions" are transactions in which the Issuing Bank and Acquiring Bank or Merchant processes transactions through the same Third-Party Processor.

HH.    "Issuing Bank" means a member of Visa and/or MasterCard that issues Visa and/or MasterCard-branded Payment Cards ("bank cards") to Cardholders for their use as payment systems and access devices. Issuing Banks compete with each other to issue Visa and MasterCard cards to Cardholders. Visa and MasterCard Rules require that all Member Banks issue, respectively, Visa and MasterCard Payment Cards.

Banks
MP3 20177579. 1

II.     "MasterCard" means Defendant MasterCard International, Inc., each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

JJ.     "Member Banks" means banks or other financial institutions that are members of Visa or MasterCard.

KK.     "Merchant" or "Merchants" means a person or business which is eligible to accept Visa or MasterCard Payment Cards.

LL.     "Merchant-Discount Fee" is the fee paid by the Merchant to transact over a Network, which typically consists of the Interchange Fees, service fees, and processing fees and an additional processing fee charged by the Acquiring Bank.

MM.     "Merchant Restraints" refer collectively to the Anti-Steering Restraints and the Miscellaneous Exclusionary Restraints.

NN.     "Miscellaneous Exclusionary Restraints" refer collectively to the All-Outlets Rule, the No-Bypass Rule, and the No-Multi-Issuer Rule.

OO.     "Network" means either MasterCard or Visa, as defined herein, except as otherwise specifically noted.

PP.     "Network Services" means the services and infrastructure that Visa and MasterCard and their members provide to Merchants through which payment transactions are conducted, including authorization, clearance, and settlement of transactions, and those similar services offered by American Express and Discover.  As they currently are offered by Visa and MasterCard and their Member Banks, Network Services include Network-Processing Services

Banks
MP3 20177579. 1

and the Visa and MasterCard Payment-Card Systems that guarantee universal acceptance of Visa and MasterCard Payment Cards.

QQ.    "Network-Processing Services" are the services that are or may be used for authorizing, clearing, and settling Visa and MasterCard Credit and Debit-Card transactions.

RR.    "No-Bypass Rule" is a rule of the Visa and MasterCard Networks that prohibits Merchants and Member Banks from bypassing the Visa or MasterCard system (thereby avoiding the supracompetitive Interchange Fees) in order to clear, authorize, or settle Credit-Card transactions even if the Issuing and Acquiring Banks are the same, or even if an independent processor has agreements with both the Issuing and Acquiring Banks on any given transaction.

SS.    "No-Minimum-Purchase Rule" is a rule of the Visa and MasterCard Networks that prohibits Merchants from imposing minimum-purchase amounts for Visa and MasterCard Credit-Card purchases.

TT.    "No-Multi-Issuer Rule" is a rule of the Visa and MasterCard Networks, respectively, that prohibits Visa and MasterCard transactions from also being able to be processed over other Networks.

UU.    "No-Surcharge Rule" is a rule of the Visa and MasterCard Networks that forbids Merchants from charging Cardholders a surcharge on their Payment-Card transactions to reflect cost differences among various payment methods.  For example, Merchants are prohibited from surcharging Cardholders who use a Visa Credit Card rather than a Discover-branded Credit Card, or use a Premium Credit Card rather than a standard Credit Card, or use a Credit Card rather than another form of payment.

VV.    The term "Non-Class Plaintiffs" means those entities identified in the following lawsuits:  *The Kroger Co. v. Visa U.S.A., Inc.*, 05-CV-6409 (S.D.N.Y.); *The Kroger Co. v.*

Banks
MP3 20177579. 1

11

*MasterCard Inc.*, 05-CV-6913 (S.D.N.Y.); *Publix Supermarkets, Inc. v. Visa U.S.A., Inc.*, 05-CV-4677 (E.D.N.Y.); *Raley's v. Visa U.S.A., Inc.*, 05-CV-4799 (E.D.N.Y.); *Meijer, Inc. v. Visa U.S.A., Inc.*, 05-CV-4131 (E.D.N.Y.); *Supervalue, Inc. v. Visa U.S.A., Inc.*, 05-CV-4650 (E.D.N.Y.); *Rite Aid Corp. v. Visa U.S.A., Inc.*, 05-CV-5352 (E.D.N.Y.); *Hy-Vee, Inc. v. Visa U.S.A.*, 05-CV-3925 (E.D.N.Y.); and *Rite-Aid Corp. v. MasterCard Inc.*, Case No. 06-0078 (E.D.N.Y.). Non-Class Plaintiffs reserve the right to serve separate discovery.

WW. "Offline Signature Debit Card" or "Offline Debit Card" is a Debit Card with which the Cardholder authorizes a withdrawal from his or her bank account usually by presenting the card at the POS and signing a receipt. Offline Signature Debit-Card transactions are processed as Credit-Card transactions. Examples of Offline Signature Debit Cards include Visa's "Visa Check" product and MasterCard's "Debit MasterCard" product.

XX. "Online PIN-Debit Card" is a Debit Card with which the Cardholder authorizes a withdrawal from his or her bank account by swiping her card at the POS and entering a Personal Identification Number ("PIN"). Online PIN-Debit-Card Networks grew out of regional ATM Networks and are therefore processed differently than Offline transactions. Examples of Online PIN-Debit-Card Networks include Interlink, Maestro, NYCE, and Pulse.

YY. "On-Us Transactions" are transactions in which the Acquiring Bank and the Issuing Bank are the same. Even when the Issuing and Acquiring Banks are identical, Visa and MasterCard require that the Bank charge an Interchange Fee to the Merchant.

ZZ. "Other Litigation" means the domestic and foreign proceedings that are the subject of Document Request Nos. 85 through 94.

AAA. "Payment Card" refers to a plastic card that enables Cardholders to make purchases from Merchants that accept the Cardholder's Payment Card. The term "Payment

12

Card" refers to several different types of cards, including, General-Purpose Cards, Debit Cards, Travel & Entertainment Cards, stored-value cards, and Merchant-proprietary cards.

BBB.  "Payment-Card Systems" means the standard-setting functions performed by Payment-Card Networks.  Payment-Card Systems encompasses the brand of the particular card program, the rules and protocols for providing Merchant acceptance of and conducting Payment-Card transactions under that brand, and the rules and protocols for conducting transactions under that brand.  The four leading providers of Payment-Card Systems are Visa, MasterCard, Discover, and American Express.

CCC.  "Payment-Guarantee Services" refers to a service that a Merchant might purchase to insure the Merchant against Credit or Debit-Card fraud, check fraud, and other forms of payment fraud, and/or assists Merchants in minimizing the costs of such fraud.

DDD.  "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, trust, association, institute, or other business, legal, or government entity.

EEE.  "Plaintiffs" means the Class Plaintiffs and the Non-Class Plaintiffs, collectively.

FFF.  "Relate to" or "relating to" means discuss, describe, refer to, forecast, reflect, contain, analyze, study, report on, comment on, evidence, constitute, set forth, consider, recommend, concern, or pertain to, in whole or in part.

GGG.  "Rules" means any rule, regulation, operating rule, policy, instruction, guideline, or manual adopted or enforced by any Network which is, or has been, generally applicable to any of the following:  Issuing Banks, Acquiring Banks, Merchants, Third-Party Processors, and/or your Networks.

13

HHH.  "Settlement" is the process by which the Merchant is reimbursed for the Credit-Card transaction.  While Visa and MasterCard Rules require that an Acquiring Bank be a party to all Merchant card-acceptance agreements, Merchants often use Third-Party Processors to process these transactions.  The Acquiring Bank or its processor credits the Merchant's bank account with the amount paid by the Cardholder less the Merchant Discount, and then transmits the transaction data to Visa or MasterCard, which sends it to the Issuing Bank or its Third-Party Processor.  The Issuing Bank then sends payment to the Acquiring Bank through Visa or MasterCard (and possibly the Acquirer's processor).

III.  "Third-Party Processor" is a firm, other than Visa, MasterCard, a Member Bank, or an entity affiliated with a Member Bank, that performs the authorization, clearing, and settlement functions of a Visa or MasterCard Payment-Card transaction on behalf of a Merchant or a Member Bank.  Examples of Third-Party Processors include First Data and Transfirst.

JJJ.  "Visa International" means Visa International (f/k/a Visa International Service Association), each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

KKK.  "Visa" means Defendant Visa U.S.A., Inc., each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

LLL.  "Year" means calendar year.

14

Banks
MP3 20177579. 1

MMM. "You" or "your" means the person upon whom this First Set was served, each of its predecessors, successors, parents, divisions, subsidiaries, and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by it, and each partnership or joint venture to which any of them is a party; and all present and former directors, officers, employees, agents, consultants, or other persons acting for or on behalf of any of them.

NNN. This First Set also incorporates by reference all definitions set forth in Plaintiffs' First Consolidated Amended Class Action Complaint.

## II. INSTRUCTIONS

1.      Unless otherwise specified or the context otherwise indicates, the Interrogatories and Requests for Production of Documents below require responses for the entire period from January 1, 1992 to the present (the "Relevant Period"), and require the production of documents created, sent, received, dated, or in effect during that period.  If a particular discovery request calls for your production of documents that already are included in your or Defendants' production of documents from Other Litigation, and that Other Litigation production includes your search for documents dated as early as January 1992 that are responsive to a particular Request or Interrogatory below, then you need not search for those documents again, and instead, please certify in writing that your search for documents responsive to the specific discovery request in the Other Litigation included documents dated back to January 1, 1992 and that you are producing any such responsive documents in MDL 1720 in response to the particular Request or Interrogatory.

2.      The following Interrogatories and Requests are directed to all Defendants except as otherwise noted.

3.      The singular form of a noun or pronoun includes its plural form, and vice versa.

15

Banks
MP3 20177579. 1

4.      If any portion of any document is responsive to any Document Request, then the entire document must be produced. Documents produced pursuant to this First Set shall be produced in the order in which they appear in your company's files and shall not be shuffled or otherwise rearranged. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in such form. Please mark each page with your company's name or abbreviation and number each page consecutively beginning with "1." These marks should be placed at the lower right-hand corner of the page, but should not be placed as to obscure any information on the document. We request that you place all documents produced in file folders or other enclosures bearing your company's name or its abbreviation. We further request that you advise us in writing, as to each document produced, the number or number of the paragraph(s) of this First Set to which it is responsive. We also request that you provide documents in such a fashion so that the custodian of the documents can be ascertained by either the Bates number or a secondary control number on the document.

5.      We request that all documents be produced in single-page Tagged Image File Format (TIFF). Each TIFF should be individually Bates numbered sequentially with a prefix that can be readily attributed to the responding party. If the Bates numbers are not sequential, an explanation will be required. A load file in Opticon (.OPT or .LOG), Document Director (.OLL), or IPRO (.LFP) format must also be provided. Every TIFF included in the production must be referenced in the load file, and the total document count within each load file must match the total document count. Optical Character Recognition (OCR) is requested and must be provided in a text file for each separate document, and the filename for each text file must match the beginning Bates number of each OCR document. The total number of OCR-text files provided must match the total number of documents produced. Any objective coding that exists

16

relating to any document(s) should be produced with a coding load file. The coding load file must be provided in an ASCII text, comma-delimited format and include a field header row that defines the field order. The total number of documents included within each coding load file must match the total number of documents produced, and the total document count with each coding file must match the total document count of the corresponding Image load files.

For all documents that are currently in native format, we request that you convert them directly into TIFF to ensure the capture of all metadata, all of which is responsive to these Requests and should be produced.

For each set of documents produced, we request that you provide an index that details the type(s) of documents, the source of the document, and the Document Request or Interrogatory to which it responds. Documents should be delivered on CD-ROM, DVD, or Firewire/USB2 external hard drive media.

6.      In responding to the Interrogatories contained in this First Set, preface each answer by restating the Interrogatory to which the answer is responsive.

7.      If you are unable to answer an Interrogatory fully, submit as much information as is available and explain why your answer is incomplete. If precise information cannot be supplied, (a) submit your best estimate or judgment, so identified, and set out the source or basis of the estimate or judgment; and (b) provide such information available to you as comes closest to providing the information requested. Where incomplete answers, estimates, or judgments are submitted, and you know or have reason to believe that there are other sources of more complete or accurate information, identify or describe those other sources of information.

17

8.      In responding to any Interrogatories or Document Requests that call for information or documents relating to "any persons" or "each person," include information or documents relating to your company, if applicable.

9.      For each Interrogatory or portion thereof to which you refuse to provide an answer pursuant to any claim of privilege, submit a sworn or certified statement from your company's counsel or one of your company's employees setting forth the nature and basis for the privilege claimed.  If only a portion of an Interrogatory requests privileged material, respond to the rest of the Interrogatory.

10.     No agreement or stipulation by Plaintiffs or any of their representatives purporting to modify, limit, or otherwise vary this First Set is valid or binding unless confirmed or acknowledged in writing, or made of record in open court, by a duly authorized representative thereof.

11.     If any request herein is deemed to call for the production of privileged or proprietary work product matters and such privilege or work product is asserted, identify in writing each document so withheld and provide the following information:

    a.      the reason for withholding the document;
    b.      a statement for the basis for the claim of privilege, work product, or other ground of nondisclosure; and
    c.      a brief description of the document, including:

        i.      the date of the document;
        ii.     the number of pages, attachments, and appendices;
        iii.    the names of its author(s), preparer(s), and an identification by employment and title of each such person;
        iv.     the name of each person who was sent, shown, blind or carbon copied the document or has had access to custody of the document, together with an identification of each such person;
        v.      the present custodian; and
        vi.     the subject matter of the document.

18

12.     If any document requested herein was at one time in existence, but has been lost, discarded, or destroyed, identify such document as completely as possible, by providing as much of the following information as possible:

    a.     the type and subject matter of the document;
    b.     its date;
    c.     the date or approximate date the document was lost, discarded, or destroyed;
    d.     the circumstances and manner in which it was lost, discarded, or destroyed;
    e.     the reason(s) for disposing of the document (if discarded or destroyed);
    f.     the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;
    g.     the identity of the person(s) who lost, discarded, or destroyed the document; and
    h.     the identity of all person(s) having knowledge of the content of the document.

13.     Plaintiffs realize that a given Defendant *may* have produced requested documents in another lawsuit, and that such Defendant may have produced or is in the process of producing those materials already to Plaintiffs in MDL 1720.  For example, Defendants already agreed to produce the record in the *DOJ* and *In re Visa Check* cases.  Plaintiffs do not intend by any discovery below to ask a given Defendant to produce a document to us twice.  In those instances when a Defendant believes that a document already is included in that Defendant's production to Plaintiffs through that Defendant's (or another Defendant's) production to Plaintiffs of the record in a prior lawsuit, then we request that in lieu of producing the document twice, that a Defendant identify that document by Bates number(s).  Where more than one Bates label appears on a document that is responsive to a Request or Interrogatory, Defendants should provide a mechanism whereby Plaintiffs can cross-reference the document's various Bates numbers. Further, Plaintiffs believe that an effective means to minimize duplication and maximize efficiency in this discovery process is for Defendants initially to produce the deposition (fact and

19

Banks
MP3 20177579. 1

expert) transcripts and exhibits, expert reports, and summary judgment submissions from the Other Litigation (a term defined above), the specific data requested below by Defendants and, to the extent not included in the preceding productions, those documents requested in this First Set but not produced in the Other Litigation. In making this suggestion, Plaintiffs do not intend to forego other discovery sought in this First Set. But we do agree that if Defendants will *promptly* produce the foregoing information and materials, then we will work diligently to identify and, if necessary, narrow any Requests or Interrogatories below.

14.     The following Interrogatories and Document Requests shall be deemed to be continuing in nature, and if information is discovered or comes to your attention after this discovery is answered which would change or supplement the responses given, demand is hereby made that said information be furnished immediately.

### III. <u>INTERROGATORIES</u>

#### <u>General</u>

1.     Identify all business plans or similar documents, and all documents related to the development of any such business plans, which relate to the Payment-Card Market.

#### <u>Corporate Structure</u>

2.     Describe your corporate structure, including all parent or subsidiary entities, affiliates, management reporting hierarchies, and the reporting command chains relating to your Credit- or Debit-Card business with Visa, MasterCard, Merchant accounts, and customer Cardholders.

3.     Identify any joint venture which relates to Payment Cards or Payment-Card Networks in which you are a participant.

20

Banks
MP3 20177579. 1

4.      Identify whether you are currently a member of the Visa and/or the MasterCard Networks and identify all of the years you have been a member of either Network, respectively.

5.      Identify all of your employees or representatives that have served on the Board of Directors of Visa or MasterCard, including each person's term of service, position on the Board, and Committee assignments.

6.      Identify all of your employees or representatives that have served on any other Committee below the Board of Directors level of either Visa or MasterCard, including each person's term of service and Committee assignments.

7.      Identify all of your current and former employees or representatives that have served with employees or representatives of Visa, MasterCard, or any other Member Banks on any working group or task force relating to Payment Cards or Payment-Card Networks.

8.      Identify any trade associations of which you are a member.

**Interchange Fees**

9.      Identify the Interchange Fee applied to each of the Merchant categories you utilized from 1992 to the present.

10.     Describe each business justification for each of your Interchange Fees identified in your answer to Interrogatory No. 9.

11.     Describe each component of the fees that make up the Merchant-Discount Fee.

12.     Identify each Interchange-Fee change of which you are aware in either the Visa or MasterCard Networks (including increase, decrease, change in tiers, etc.) since 1992, and for each, state your understanding of the nature or amount of and reason for such change.

21

Banks
MP3 20177579. 1

13.     For each Interchange-Fee change identified in your answer to Interrogatory No. 12, describe the methodology you understand to have been employed in determining the change and identify any economic or business analyses relating to the change.

14.     For each Interchange-Fee change identified in your answer to Interrogatory No. 12, identify the individuals and/or Committees or Board who you understand to have recommended the change.

15.     For each Interchange-Fee change identified in your answer to Interrogatory No. 12, identify the individuals and/or Committees or Board who you understand to have played a role in the approval of the amount of the change.

16.     Identify any instance in which the individuals and/or Committees or Board approving the Interchange Fee rejected, altered, or disagreed in any way with the recommended Interchange-Fee change.

17.     Identify the different Merchant categories and tiers you utilize with respect to your Interchange Fees and describe how the number and composition of those Merchant categories have changed during the Relevant Period.

18.     Identify all Interchange-Fee changes adopted by Visa or MasterCard between June 1, 2003 and May 31, 2004 for all Merchant segments, including the methodology you understand to have been employed in determining the change and any economic or business analyses relating to the change, and the individuals, Committees, or Board involved in determining the change.

19.     For each Merchant category identified in your answer to Interrogatory No. 17 above, describe how you determine in which category a Merchant belongs.

22

20.     Describe each business justification for each of the Merchant categories and tiers identified in your answer to Interrogatory No. 17.

21.     For the Relevant Period, identify the Interchange Fee applied to each of the Merchant categories identified in your answer to Interrogatory No. 17 above.

22.     Identify the Interchange Fee that applied to each type of Credit or Debit Card that you have promoted for issuance since 1992 and the business justifications for the different rates.

23.     State whether you ever (even prior to the Relevant Period) used a cost basis for calculating your Interchange Fees, and if so, state when you did so and describe the instances in which a cost basis has been used to determine your Interchange Fees.

24.     Identify the persons who designed or implemented any cost-basis calculation described in your answer to Interrogatory No. 23 above.

25.     Identify every transaction that has occurred in which you charged an Interchange Fee different from that which would apply using the normal schedule of default Interchange Fees promulgated from time to time by Visa and MasterCard.

26.     Identify all communications between or among you, other Member Banks of Visa or MasterCard, and Visa and MasterCard employees regarding product development, including, without limitation, the development of "Signature" or other premium cards for which the Interchange Fee is higher.

27.     Identify by Bates numbers all studies, reports, and analyses of the costs or other components of Interchange Fees, the value or benefit (if any) of Interchange Fees, any change in the amount of Interchange Fees, the elimination of Interchange Fees, whether Interchange Fees promote or reduce competition in any market or business segment or industry, and/or whether Interchange Fees provide benefits or burdens to Cardholders or people who do not have cards.

Banks
MP3 20177579. 1

**Merchant Restraints**

28.     For each of the Rules identified below, state when the Rule was first implemented, describe the business justifications for the Rule, and identify any changes over time in the Rule or its business justifications:

        a.     the "No-Surcharge Rule;"

        b.     the "No-Multi-Issuer Rule;"

        c.     the "All-Outlets Rule;"

        d.     the "No-Minimum-Purchase Rule;"

        e.     the "Anti-Discrimination Rule;" and

        f.     the "No-Bypass Rule."

**Bypass**

29.     Describe the ability of Member Banks or Third-Party Processors to bypass the Visa and MasterCard Networks for authorization, clearance, or settlement of electronic-payment transactions, and identify any Rules that apply to efforts to accomplish bypass.

30.     Describe any consideration you have given to whether you could or should bypass the Visa and MasterCard Networks for authorization, clearance, or settlement of electronic-payment transactions.

31.     Identify all meetings or discussions of which you are aware between Visa and MasterCard, or their Member Banks, from 1990 to the present in which Visa's or MasterCard's strategies, plans, or expectations concerning Interchange Fees were discussed, and for each meeting or discussion:

        a.     identify all individuals present;

        b.     identify any memoranda or other documents created at or to memorialize the substance of each such meeting; and

Banks
MP3 20177579. 1

  c.  describe the substance of each such meeting.

  32.  Identify all meetings or discussions of which you are aware between Visa and MasterCard, or their Member Banks, in which any study, consulting report, or analysis done on behalf of Visa by Anderson Consulting was discussed, and for each such meeting or discussion:

  a.  identify the individuals present;

  b.  identify any memoranda or other documents created at or to memorialize the substance of each such meeting; and

  c.  describe the substance of each such meeting.

  33.  Identify all meetings or discussions of which you aware between Visa and MasterCard, or their Member Banks, from 1990 to the present in which Visa's or MasterCard's strategies, plans, or expectations concerning Visa's or MasterCard's Network-utilization Rules (*i.e.*, No-Surcharge, All-Outlets, etc.) were discussed, and for each meeting or discussion:

  a.  identify the individuals present;

  b.  identify any memoranda or other documents created at or to memorialize the substance of each such meeting; and

  c.  describe the substance of each such meeting.

**Foreign Proceedings**

  34.  Identify all foreign judicial, legislative, or administrative proceedings and investigations relating to Interchange Fees in which you have participated in any way or have produced documents, and for each identified proceeding, state:

  a.  the proceeding name and number;

  b.  the parties to the proceeding;

  c.  the jurisdiction and venue of the proceeding;

  d.  the outcome of the proceeding;

25

Banks
MP3 20177579. 1

e.   the status of any pending proceeding; and

f.   all documents relating to such proceeding.

## Sources of Publications

35.   Identify all individuals or entities that publish, fund, or underwrite any academic or trade articles or conferences to which you provide money or other support, and for each individual or entity state the amount of money you have given per year.

36.   Identify all individuals or entities that have published any written materials or articles on the Payment-Card Markets to whom you have provided payments (either directly or indirectly).

37.   Identify all articles or publications drafted or issued by any of the individuals or entities you named you answers to Interrogatory Nos. 35 and 36.

## Consultants

38.   Identify all business consultants related in any way to your Payment-Card business retained by you since 1985, and for each such consultant identify:

a.   all tasks or assignments given to such consultant;

b.   all files, documents, and working papers related to each task or assignment;

c.   each employee of Visa assigned as staff liaison to the consultant; and

d.   the result or outcome of each such task or assignment.

39.   Identify all consultants retained by you for testifying-in-litigation purposes since 1985, and for each such consultant identify:

a.   all tasks or assignments given to such consultant;

b.   all files, documents, and working papers related to each task or assignment;

Banks
MP3 20177579. 1

c.      each employee of Visa assigned as staff liaison to the consultant; and

d.      the result or outcome of each such task or assignment.

**Terminated Employees**

40.     Identify each management-level employee of yours in any position with any responsibility for Payment Cards since 1992 whose employment was:

a.      terminated involuntarily; and

b.      terminated for cause.

**Markets**

41.     For purposes of Plaintiffs' claims asserted in the First Consolidated Amended Class Action Complaint, what do you contend to be the relevant product market(s)?

42.     For purposes of Plaintiffs' claims asserted in the First Consolidated Amended Class Action Complaint, what do you contend to be the relevant geographic market(s)?

43.     If you dispute the Relevant Market definition (including the product or geographic market) in Non-Class Plaintiffs' Amended Complaint, then state why you dispute that Relevant Market definition and what, if at all, is your definition of the Relevant Market(s) in MDL 1720.

**Bundling**

44.     For each year during the Relevant Period to the present, state:

a.      your annual costs due to Credit-Card Cardholder fraud in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

b.      your annual costs due to Debit-Card Cardholder fraud in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

c.      your annual costs due to Offline-Signature-Card Cardholder fraud in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

27

Banks
MP3 20177579. 1

d.  your annual costs due to Online-PIN-Debit-Card Cardholder fraud in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

e.  your annual costs due to the Float or grace period in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

f.  your annual costs for Credit-Card transaction-processing services in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

g.  your annual costs for Debit-Card transaction-processing services in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

h.  your annual costs for Credit-Card payment-guarantee services in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.);

i.  your annual costs for Debit-Card payment-guarantee services in whatever form you track it (*i.e.*, by transaction volume, by dollar volume, etc.); and

j.  your annual costs for Reward Programs to Cardholders in whatever form you track it.

## Corporate Restructuring

45.  Describe any plans or proposals of which you are aware relating to any corporate restructuring of Visa, or the public sale of ownership shares of Visa or MasterCard.

46.  Identify all documents relating to any corporate restructuring of or public sale of ownership shares identified in your answer to Interrogatory No. 45 above.

## Sources Of Information

47.  Identify the person(s) in your organization principally responsible for coordinating or managing your relationship with:

a.  the Visa Network;

b.  the MasterCard Network;

c.  the American Express network;

28

Banks
MP3 20177579. 1

    d.     the Discover network; and

    e.     any Debit-Card Networks.

48.    Identify the person(s) in your organization principally responsible for coordinating or managing your research and business planning of your:

    a.     Card-Issuing business; and

    b.     Merchant-Acquiring business.

49.    Identify persons in your company with the most knowledge of the following:

    a.     Credit-Card Interchange Fees;

    b.     Debit-Card Interchange Fees;

    c.     Offline-Signature-Card;

    d.     Online-PIN-Debit-Card

    e.     No-Surcharge Rule;

    f.     No-Multi-Issuer Rule;

    g.     All-Outlets Rule;

    h.     No-Minimum-Purchase Rule;

    i.     Anti-Discrimination Rule; and

    j.     No-Bypass Rule;

    k.     Chargeback Rule;

    l.     Reward Programs;

    m.    Payment-Guarantee Services;

    n.     Network-Processing Services;

    o.     Card-System Services;

    p.     your business relationship with Visa; and

29

Banks
MP3 20177579. 1

q.      your business relationship with MasterCard.

50.      For each person or department that is listed in your answer to Interrogatory No. 49, identify the types (*e.g.*, mainframe, server, desktop, laptop, PDA), brands, and locations of each computer, including home computers, that person uses for business.

51.      Identify the brand, version, and purpose of all software used to create, exchange, transmit, store, back up, delete, and retrieve data, including: operating system(s), commercial software, proprietary software used to delete ("wipe") data, and email software.

52.      Identify the availability of any computer hardware platforms and software platforms (including database applications) that are no longer in use, but that may have been used to create or store responsive data and the dates of such use.

53.      Identify all individuals with decision-making or supervisory responsibility with knowledge of the systems and software you currently use or formerly used.

54.      Identify all brands and version numbers of the Network-operating systems currently or previously in use, including dates of all upgrades.

55.      Identify each Network you use and for each such identified Network:

a.      describe its configuration (servers, computers, and Network);

b.      identify the location of all servers and their respective node/client computers; and

c.      identify the location of all individuals responsible for Network administration, including any outside consultants.

56.      Identify all email software and versions currently and previously used and the dates each version was used.

57.      Describe all steps you took to preserve any email relating to Interchange Fees or Merchant Restraints since 1996.

30

Banks
MP3 20177579. 1

58.     Describe your document retention policy since 1996.

59.     For each year since 1992, identify each Internet Service Provider (ISP) you have used.

60.     For each ISP you list in your answer to Interrogatory No. 59, describe all services that ISP provides or provided.

61.     Describe all procedures you took to preserve software and data since 1996.

62.     Identify the persons responsible for conducting back-up procedures and preserving backed-up media.

63.     Identify the location of any storage facilities that may contain documents responsive to these Requests and Interrogatories.

64.     Identify all persons responsible for maintaining any corporate library or other similar department or division responsible for gathering and maintaining information relevant to your business.

65.     Identify all trade publications for which you have or had subscriptions, and identify where such publications are stored.

66.     For each person identified in your answers to Interrogatory Nos. 48-49, identify the location of that person's email files (*e.g.*, whether the person's email is stored in a central location a server with the Internet service provider, stored on his/her user's desktop, on a company server, etc.).

67.     For each person identified in your answers to Interrogatory Nos. 48-49, describe all steps you took to preserve that person's email since 1996.

31

Banks
MP3 20177579. 1

### *In re Visa/Check* Settlement

68.     Identify all communications between or among you, other Member Banks of Visa or MasterCard, and Visa and MasterCard employees regarding the proposed settlement with the Class in *In re Visa Check*, including, without limitation, any communications regarding how that settlement would be funded.

### Contracts

69.     Identify all agreements between you and either Network.

### Antitrust Compliance

70.     Describe your antitrust compliance policies or programs, and identify all documents related thereto.

### Consolidation Of Banks

71.     [To Bank of America:]  Identify all studies, analyses, projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding your acquisition of Fleet Boston Financial in 2004 before and after it was consummated.

72.     [To Bank of America:]  Identify all studies, analyses, projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding your acquisition of MBNA in 2006 before and after it was consummated.

73.     [To Chase:]  Identify all studies, analyses, projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding your acquisition of Bank One Corp. in 2004 before and after it was consummated.

74.     [To Wachovia:]  Identify all studies, analyses, projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding your acquisition of First Union in 2001 before and after it was consummated.

32

Banks
MP3 20177579. I

75.     [To Wachovia:]  Identify all studies, analyses, projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding your acquisition of South Trust in 2004 before and after it was consummated.

**Miscellaneous**

76.     Identify all studies, analyses, or projections you performed or you had performed for you by any consultant, investment bank, or other advisor, regarding any consideration by you of the creation or establishment of a new Credit Card or Debit Card Network.

77.     Identify all studies, analyses, or projections you performed, or you had performed for you by any consultant, investment bank, or other advisor, regarding any consideration by you of issuing American Express or Discover cards.

78.     Identify by Bates number all documents you produced to the Federal Reserve Bank of Kansas City, or any other Federal Reserve Bank, that conducted any investigation relating to Interchange Fees or Merchant Restraints.

## IV.  REQUESTS

**General**

1.     All documents that are responsive to, or the identification of which is requested in, any Interrogatory served on you by Plaintiffs.

2.     All email communications in which any of the individuals listed below was a recipient, an author, or referenced relating to Interchange Fees or Merchant Restraints:

        a.     William Sheedy;

        b.     Carl Pascarella;

        c.     John Philip Coghlan;

        d.     Tim Murphy;

33

Banks
MP3 20177579. 1

e.      Vic Dahir;

f.      R. Neil Williams;

g.      Robert Towne;

h.      Robert W. Selander;

i.      Alan J. Heuer;

j.      Chris A. McWilton;

k.      W. Ray Dunbar;

l.      Gary Flood;

m.      Steven Jonas;

n.      Nikki Tsairis;

o.      Peter Dunn;

p.      Ron Schmidt;

q.      Diane Knox;

r.      Bruce McElhinney; and

s.      any individual identified in your answers to Interrogatory Nos. 48 and 49.

## Corporate Organization And Responsibilities

3.      All organizational charts for your company with respect to management at your corporate headquarters.

## Contracts

4.      All contracts, agreements, or communications between Visa or MasterCard and any Member Bank with regard to the provision of Network Services, the issuance of Credit or Debit Cards, the processing of Debit or Credit Cards, the acquisition of electronic-payment transactions from Merchants, the setting of Interchange Fees or the Merchant Discount, Reward

34

Banks
MP3 20177579. 1

Programs, or the processing of electronic-payment transactions using any product or service issued by any entity or processed through the Visa or MasterCard electronic-payment Network.

5.     All contracts or agreements between you and any Non-Class Plaintiff or Class Representative.

6.     Your complete file(s) on any Plaintiff.

7.     All contracts, agreements, or communications between Visa or MasterCard and any Issuing Bank, Acquiring Bank, or Third-Party Processor that defines or describes who bears the risk of loss for non-payment of the Interchange Fee.

8.     All contracts, agreements, or communications between Visa or MasterCard and any Issuing Bank, Acquiring Bank, Third-Party Processor, or Merchant that describe any of the following:

     a.     the nature of the commercial relationship between Visa or MasterCard and such Issuer, Acquirer, Processor, or Merchant;

     b.     what person is responsible for payment of the Interchange Fee;

     c.     what person is responsible for the risk of loss in the event the Interchange Fee is not paid;

     d.     what person is responsible for the risk of loss in the event a Cardholder does not pay a bill from an Issuing Bank for a charge; or

     e.     any agency relationship.

9.     All contracts, agreements, or communications between any Issuing Bank and any Acquiring Bank, Third-Party Processor, or Merchant that describe any of the following:

     a.     the nature of the commercial relationship between any Issuing Bank and any Acquiring Bank, Third-Party Processor, or Merchant;

     b.     what person is responsible for payment of the Interchange Fee;

     c.     what person is responsible for the risk of loss in the event the Interchange Fee is not paid;

Banks
MP3 20177579. 1

      d.      what person is responsible for the risk of loss in the event a Cardholder does not pay a bill from an Issuing Bank for a charge; or

      e.      any agency relationship.

10.     All contracts, agreements, or communications between any Acquiring Bank and any Third-Party Processor or Merchant that describe any of the following:

      a.      the nature of the commercial relationship between any Acquiring Bank and any processor or Merchant;

      b.      what person is responsible for payment of the Interchange Fee;

      c.      what person is responsible for the risk of loss in the event the Interchange Fee is not paid;

      d.      what person is responsible for the risk of loss in the event a Cardholder does not pay a bill from an Issuing Bank for a charge; or

      e.      any agency relationship.

11.     All contracts or agreements between you and Bank of America Merchant Services, Chase Merchant Services, Chase Paymentech, Concord Payment Services, Concord EFS National Bank/First Data, EFS National Bank, Midwest Payment Services, National Processing, National Bank of Kentucky, and Midwest Payment Systems relating to the Interchange Fee or Merchant-Discount Fee or the acquiring or processing of electronic-payment transactions.

**Rules And Regulations**

12.     Visa's or MasterCard's Articles of Incorporation, bylaws, and Rules governing Visa's or MasterCard's business relationships with:

      a.      any bank that issues a Visa or MasterCard Payment Card;

      b.      any bank that acquires Merchant electronic-payment transactions charged on a Visa or MasterCard Payment Card; and

Banks
MP3 20177579. 1

c.       any Merchant that accepts Visa or MasterCard Payment Cards.

13.      All documents explaining why Visa and MasterCard do not now, or did not in the past, allow Merchants to receive, access, or have physical possession of a copy of your Rules.

14.      All documents reflecting any consideration by you of whether Visa and MasterCard should or should not provide Merchants with access to or a copy of their Rules.

15.      All documents reflecting a request from any Merchant to see a copy of Visa or MasterCard Rules, or commenting about not having, or them not providing, a copy of those Rules.

16.      All documents relating to communications between or among Member Banks relating to Visa or MasterCard Rules and regulations, operating bulletins, or any other communication relating to the Payment-Card business.

**Technology**

17.      All documents relating to the existence of technology or processes to bypass the Visa or MasterCard Network for the authorization, clearance, or settlement of electronic-payment transactions.

18.      All documents relating to the existence of technology or processes to enable Cardholders to select various payment forms at the check-out stand.

**Interchange Fees**

19.      All documents relating to any analysis performed by any person relating to or projecting Interchange Fees post-December 31, 2003.

20.      All documents relating to the setting of Visa's or MasterCard's Interchange Fees post-December 31, 2003, including any documents relating to the rates, the methodology used to

37

Banks
MP3 20177579. 1

set the rates, any cost basis for the rates, and the Board, Committee, or personnel responsible for setting the rates.

21.   All documents relating to any analysis performed by any person relating to Interchange Fees from 1992 to December 2003.

22.   All documents relating to the setting of Visa's or MasterCard's Interchange Fees from 1992 to December 2003, including any documents relating to the rates, the methodology used to set the rates, any cost basis for the rates, and the Board, Committee, or personnel responsible for setting the rates.

23.   All documents relating to the means of determining and calculating each discrete Interchange Fee for different categories of Visa Merchants, including all documents that relate to the basis or justification for such Interchange Fees.

24.   All documents relating to the means of determining and calculating each discrete Interchange Fee for different categories of MasterCard Merchants, including all documents that relate to the basis or justification for such Interchange Fees.

25.   All documents relating to the means of determining and calculating each discrete Interchange Fee for different types of Visa Credit or Debit Cards, including all documents that relate to the basis or justification for such Interchange Fees.

26.   All documents relating to the means of determining and calculating each discrete Interchange Fee for different types of MasterCard Credit or Debit Cards, including all documents that relate to the basis or justification for such Interchange Fees.

27.   All documents relating to Visa's decision and rationale for the Credit-Card Interchange-Fee changes of August 1, 2003.

Banks
MP3 20177579. 1

28.     All documents relating to MasterCard's decision and rationale for the Credit-Card Interchange-Fee changes of August 1, 2003.

29.     All documents relating to any analysis, evaluation, or calculation of the various components that comprise the Merchant-Discount Fee charged to Merchants utilizing the Visa Network.

30.     All documents relating to any analysis, evaluation, or calculation of the various components that comprise the Merchant-Discount Fee charged to Merchants utilizing the MasterCard Network.

31.     All documents relating to any analysis of the existence of separate markets (however defined) for the provision of transaction-processing services, payment guarantees, or fraud protection by any entity other than Visa or MasterCard.

32.     All documents relating to any analysis of, or comparison between, the United States General-Purpose-Card-Network-Services Market and any other market (however defined) in any other country or geographic region of the world.

33.     All documents relating to any analysis of, or comparison between, the United States Debit-Card Market and the Debit-Card-Network-Services Market and any other market (however defined) in any other country or geographic region of the world.

34.     All documents relating to or analyzing the Interchange Fees charged by any payment network including Visa, MasterCard, Interac (Canada debit), Interlink, or any other Credit- or Debit-Card Networks.

35.     All documents relating to communications with Cardholders relating to Interchange Fees.

39

Banks
MP3 20177579. 1

36.     All documents relating to communications with Merchants relating to Interchange Fees.

37.     All documents relating to communications with Visa or MasterCard Member Banks or other financial institutions regarding Interchange Fees.

38.     All minutes, transcripts, or recordings of meetings of Visa's Board of Directors, Board of Corporate Auditors, and/or its Member Banks relating to Interchange Fees.

39.     All minutes, transcripts, or recordings of meetings of MasterCard's Board of Directors, Board of Corporate Auditors, and/or its Member Banks relating to Interchange Fees.

40.     All documents summarizing effective Interchange Fees by Merchant category.

41.     All documents that describe the Acquiring Member Banks' role in negotiating Merchant Discounts with Merchants who contract to accept Visa and/or MasterCard-branded Payment Cards.

42.     All documents relating to attempts to get supermarket, drugstore, or fast-food Merchants to accept Visa or MasterCard Payment Cards.

43.     All documents relating to new pricing programs for small ticket and/or business, purchasing, and/or corporate-card transactions, including the one announced by Visa in April 2006 and the one effective October 2006.

44.     All documents relating to the extent to which the Interchange Fees are passed on to Merchants.

45.     Electronic data at the lowest level of aggregation that reflects the Interchange Fee charged to each Merchant.

46.     Electronic data at the lowest level of aggregation that reflects each and every component that comprises the Interchange Fee.

Banks
MP3 20177579. 1

47.     Documents sufficient to identify the complete schedule of Visa's and MasterCard's Credit and Debit Card Interchange Fees charged by Merchant Acquirers to each Plaintiff for each type of Payment Card and transaction, including the terms and conditions that apply to each Interchange Fee category.

48.     Data showing for each Plaintiff the annual value of sales subject to each category of Credit and Debit Interchange Fee charged by the Networks, the associated Interchange Fee, and the annual total amount paid by each Merchant Acquirer for each associated Interchange Fee for transactions with each Plaintiff.

49.     Electronic data at the lowest level of aggregation that reflects your costs associated with the Interchange Fee.

50.     Electronic data at the lowest level of aggregation that reflects the revenues, profits, and losses (if any) associated with the Interchange Fee or the Merchant-Discount Fee.

51.     Data and documents relating to switching Cardholders from General-Purpose-Credit-Cards to Premium Cards, the amount of money that will be generated in Interchange Fees as a result of switching Cardholders to Premium Cards, and incentives (such as double rewards points and any other benefits) that are offered to Cardholders to use a Premium Card at a supermarket or drugstore Merchant.

52.     Data or documents relating to the total value of Interchange Fees cleared through either Network for Credit-Card or Debit-Card transactions.

53.     Data showing the average Visa or MasterCard Credit Card Interchange Fees for each member country of the European Union, Japan, Singapore, Malaysia, Australia, and Canada

41

54.    Data showing the name, dollar amount of Visa or MasterCard transactions, and dollar amount of Visa or MasterCard Credit Card Interchange Fees for the top 20 U.S. Merchant Acquirers and/or top 20 U.S. Issuing Banks.

55.    All documents relating to the impact, if any, on Issuing Banks, Acquiring Banks, processors, Networks, Cardholders, or consumers of eliminating, reducing, or increasing the Interchange Fee.

56.    All documents relating to the effect, if any, of lower or higher Interchange Fees on the use of Credit Cards, Signature Debit Cards, or PIN Debit Cards.

57.    All documents relating to the effect, if any, of lower or higher Interchange Fees on Merchant acceptance or Merchant sales.

58.    All documents relating to the extent to which Cardholders or persons without a Payment Card are charged for the Interchange Fee or Merchant-Discount Fee.

59.    All documents relating to the cost to any Merchant of Credit or Debit Cards, Interchange Fees or Merchant-Discount Fees, or any Merchant Restraint.

**Bypass**

60.    All documents relating to any Member Bank's ability, or the ability of any Third-Party Processor, if any, to enter into arrangements to clear, settle, authorize, or transact Visa or MasterCard-branded transactions over a Network other than those established by Visa or MasterCard, respectively.

61.    All contracts, agreements, understandings, or other documents relating to any agreement between Visa or MasterCard Member Banks in which the Member Banks agreed to utilize an Interchange Fee different from the one then established by Visa or MasterCard.

62.    All documents relating to Intra-Processed Transactions.

Banks
MP3 20177579. 1

63.    All documents relating to On-Us Transactions.

**Visa U.S.A.-Visa International Relationship**

64.    All documents relating to communications between Visa U.S.A. and Visa International relating to the setting of Interchange Fees in the United States or other countries or economic regions in the world.

**Visa-MasterCard Relationship**

65.    All documents relating to communications within and/or among Visa and MasterCard's Member Banks relating to the setting, modification, rationale, or analysis of Interchange Fees.

66.    All documents relating to communications between Visa and MasterCard.

67.    All documents relating to any joint committees, meetings, or working groups comprised of the employees of Visa and MasterCard or their Member Banks.

68.    All documents relating to communications between Visa and MasterCard, including exchanges of transaction-volume information, links to each other's authorization systems, and information relating to secured transactions over the internet.

69.    Any study, analysis, or report relating to the economic effects of duality or non-duality between Visa and MasterCard.

70.    All communications between or among Visa, MasterCard, or any of your Member Banks regarding duality or non-duality.

**Merchant Restraints**

71.    All documents relating to Visa and/or MasterCard's bylaws, Rules, policies, or any other document governing conduct by their Member Banks, including any change thereto, whether implemented or not.

43

Banks
MP3 20177579. 1

72.     All documents relating to Visa's and/or MasterCard's bylaws, Rules, regulations, or policies affecting Bank-Card-Issuing Institutions.

73.     All documents relating to Visa's and/or MasterCard's bylaws, Rules, regulations, or policies affecting Bank-Card-Acquiring Banks or Third-Party Processors.

74.     All documents relating to Visa's and/or MasterCard's bylaws, Rules, regulations, or policies affecting Merchants utilizing either Network.

75.     All documents relating to the genesis of, rationale for, and analysis of either Network's "No-Surcharge" Rules.

76.     All documents relating to the genesis of, rationale for, and analysis of either Network's "No-Multi-Issuer" Rules.

77.     All documents relating to the genesis of, rationale for, and analysis of either Network's "All-Outlets" Rules.

78.     All documents relating to the genesis of, rationale for, and analysis of either Network's "No-Minimum-Purchase" Rules.

79.     All documents relating to the genesis of, rationale for, and analysis of either Network's "Anti-Discrimination" Rules.

80.     All documents relating to the genesis of, rationale for, and analysis of either Network's "No-Bypass" Rules.

81.     All documents that relate to your tracking of any alleged violation of either Network's Rules or regulations by any Merchant.

82.     All documents relating to any internal or external study, analysis, investigation, or evaluation of the termination or elimination of the Honor-All-Cards Rule.

Banks
MP3 20177579. 1

83.     All documents relating to Visa's, MasterCard's, or any Member Bank's response or proposed response to any Merchant's request to eliminate or modify any Merchant Restraint or Interchange Fee.

84.     All documents relating to the impact, if any, on Issuing Banks, Acquiring Banks, processors, Networks, Cardholders, or consumers of eliminating or modifying any Merchant Restraint.

**Other Domestic Proceedings**

85.     To the extent they are in your possession, custody, or control, the substantive pleadings (including exhibits), discovery pleadings (including exhibits), expert reports and analyses (including exhibits), deposition testimony and exhibits (including videotapes or other media), trial exhibits, trial and hearing testimony (if any), and any analyses of the outcome of litigation in *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 3:02-cv-03003 (N.D. Cal.).

86.     To the extent they are in your possession, custody, or control, the substantive pleadings (including exhibits), discovery pleadings (including exhibits), expert reports and analyses (including exhibits), deposition testimony and exhibits (including videotapes), trial exhibits, trial and hearing testimony (if any), and any analyses of the outcome of litigation in *Kendall v. Visa U.S.A., Inc.*, 3:04-cv-04276 (N.D. Cal.).

87.     To the extent they are in your possession, custody, or control, the substantive pleadings (including exhibits), discovery pleadings (including exhibits), expert reports and analyses (including exhibits), deposition testimony and exhibits (including videotapes), trial exhibits, trial and hearing testimony (if any), and any analyses of the outcome of litigation in *Visa U.S.A., Inc. v. First Data Corp.*, 3:02-cv-01786 (N.D. Cal.).

**Foreign Proceedings**

88.    All documents related to any proceedings or investigations against either Network in the United Kingdom, including:

        a.    an index of what you produced;

        b.    the discovery record;

        c.    all substantive pleadings;

        d.    all expert reports and analyses;

        e.    all deposition testimony;

        f.    all trial testimony; and

        g.    all analyses of the outcome of the proceeding.

89.    All documents related to any proceedings or investigations against either Network in Australia, including:

        a.    an index of what you produced;

        b.    the discovery record;

        c.    all substantive pleadings;

        d.    all expert reports and analyses;

        e.    all deposition testimony;

        f.    all trial testimony; and

        g.    all analyses of the outcome of the proceeding.

90.    All documents related to any proceedings or investigations against either Network in the European Union, including:

        a.    an index of what you produced;

        b.    the discovery record;

46

Banks
MP3 20177579. 1

    c.     all substantive pleadings;

    d.     all expert reports and analyses;

    e.     all deposition testimony;

    f.     all trial testimony; and

    g.     all analyses of the outcome of the proceeding.

91.    All documents related to any proceedings or investigations against either Network in Spain, including:

    a.     an index of what you produced;

    b.     the discovery record;

    c.     all substantive pleadings;

    d.     all expert reports and analyses;

    e.     all deposition testimony;

    f.     all trial testimony; and

    g.     all analyses of the outcome of the proceeding.

92.    All documents related to any proceedings or investigations against either Network in Mexico, including:

    a.     an index of what you produced;

    b.     the discovery record;

    c.     all substantive pleadings;

    d.     all expert reports and analyses;

    e.     all deposition testimony;

    f.     all trial testimony; and

    g.     all analyses of the outcome of the proceeding.

Banks
MP3 20177579. 1

93.　All documents related to any proceedings or investigations against either Network in Germany, including:

    a.　an index of what you produced;

    b.　the discovery record;

    c.　all substantive pleadings;

    d.　all expert reports and analyses;

    e.　all deposition testimony;

    f.　all trial testimony; and

    g.　all analyses of the outcome of the proceeding.

94.　All documents related to any proceedings or investigations against either Network in any other foreign country or jurisdiction, including:

    a.　an index of what you produced;

    b.　the discovery record;

    c.　all substantive pleadings;

    d.　all expert reports and analyses;

    e.　all deposition testimony;

    f.　all trial testimony; and

    g.　all analyses of the outcome of the proceeding.

**Promotions**

95.　A representative sample of your advertisements for your Payment-Card products during each year of the Relevant Period.

48

Banks
MP3 20177579. 1

## *In re Visa/Check* Settlement

96.     Any internal or external study, analysis, investigation, or evaluation of the impact of the Class Action settlement in *In re Visa Check*, including the effect on Interchange Fees.

97.     All documents relating to discussions, negotiations, agreements, and/or any other communications between Visa, MasterCard, and/or their Member Banks, and any of the named-class plaintiffs in the *In re Visa Check* Class Action regarding the Interchange Fee that Visa has charged or will charge such named-class plaintiffs for acceptance of Visa Credit Cards and Visa Debit Cards at any time after July 31, 2003.

98.     All documents relating to discussions, negotiations, agreements, and or any other communications between Visa, its Member Banks, and any retailer that operates a retail supermarket relating to the Interchange Fee that Visa has charged or will charge such retailer for acceptance of Visa Credit Cards and Visa Debit Cards at any time after July 31, 2003.

## Funding For Publications

99.     All documents relating to any written materials or articles on the Credit-Card Market authored or published by individuals or entities to whom you have provided payment.

100.    All documents relating to publications relating to Credit Cards and/or the Credit-Card Market.

## American Express/Discover

101.    All documents relating to the consideration by any Visa or MasterCard Member Banks of issuing American Express or Discover Payment Cards.

## Miscellaneous

102.    All documents relating to Cardholder demand for and expectations from Visa- or MasterCard-branded Payment Cards.

49

Banks
MP3 20177579. 1

103.    All documents relating to any internal or external study, analysis, investigation, or evaluation of competition in the United States markets for Credit Cards or Debit Cards.

104.    All documents relating to a study prepared by Andersen Consulting in 1997, entitled "Shared Network Strategy – Capturing Value in an Evolving Industry."

105.    All documents relating to "Deposit Access 2001," including all documents relating to a report by Andersen Consulting in 1996, entitled "Deposit Access 2001 – Visa U.S.A. Strategy."

106.    All documents relating to your expenditures on promotion and advertising of Credit-Card products from 1991 through the present.

107.    All documents relating to Visa's consideration of acquiring control of the NETS regional Network in Nebraska, including all documents relating to valuation analysis prepared for Visa by Carmody & Bloom, Inc. in 1998 entitled "Networks Valuation Analysis had Proposal Outline: Discussion Draft."

108.    All documents relating to a document, prepared by Andersen Consulting in or around 1996, concerning regional Online-Debit Networks and entitled "Current Strategy."

109.    All documents showing Visa's penetration rates by retail sector.

110.    All documents showing MasterCard's penetration rates by retail sector.

111.    All documents that relate to any analysis, study, or conclusions relating to the fact that you clear checks at par.

112.    All documents created or used at or in preparation of Visa sponsored Merchant/Acquirer Partnership Industry Meetings.

113.    Summary documents and data that quantify and explain chargebacks by reason code.

50

Banks
MP3 20177579. 1

114. Data and documents showing the total number of U.S.-issued Visa or MasterCard Credit Card accounts annually that were used to make purchases each year.

115. Data and documents showing the total number of U.S. households annually that possess at least one valid and activated Visa or MasterCard Credit Card or Debit Card.

116. Data relating to the total number of U.S. Merchants that accept Visa or MasterCard Credit Cards or Debit Cards in the United States.

117. Data or documents relating to the total value of Cardholder Credit Card purchases or Debit Card purchases cleared through either Network.

118. Data or documents relating to the total annual account maintenance fees paid by Visa or MasterCard Cardholders for Credit or Debit Cards issued in the United States.

119. Data or documents sufficient to show payments, rebates, or credits to any Plaintiff by either Network or any Issuing or Acquiring Bank for marketing or promotional purposes.

120. Data showing the total value of transactions subject to Visa or MasterCard Credit Card Interchange Fees for each member country of the European Union, Japan, Singapore, Malaysia, Australia, and Canada.

121. Data or documents relating to the number of applications, number of rejected applications, and/or rejection rates for applications for Visa or MasterCard Credit Cards from Issuing Banks, and the reasons for such rejections.

122. All documents relating to the impact, if any, on Merchant sales and/or profitability of acceptance of Credit Cards or Debit Cards.

123. All documents relating to communications with any Merchant about whether that Merchant should accept any Credit Card or Debit Card.

51

Banks
MP3 20177579. 1

124.    All studies, reports, and analyses relating to how any two or more Issuing Banks compete with each other for any business or in any market (however defined).

125.    Data and documents showing the annual average Network-Credit-Card fraud rate, *i.e.*, the value of fraudulent Visa or MasterCard Credit-Card or Debit-Card transactions per year as a percentage of the total Visa or MasterCard Credit-Card or Debit-Card transactions, for each Plaintiff.

126.    Data and documents showing the annual average Network-Credit-Card fraud rate, *i.e.*, the value of fraudulent Visa or MasterCard Credit-Card or Debit-Card transactions per year as a percentage of total sales for Visa U.S.A., Visa International, MasterCard Incorporated, and MasterCard International Incorporated.


Dated:  May 1, 2006

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _K Craig Wildfang/aus_

K. Craig Wildfang
Thomas J. Undlin

2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402
Tel. (612) 349-8500
Fax (612) 349-4181

**LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**
Bonny E. Sweeney
Christopher M. Burke
655 West Broadway
Suite 1900
San Diego, CA  92101
Tel. (619) 231-1058
Fax (619) 231-7423

52

Banks
MP3 20177579. 1

**BERGER & MONTAGUE, P.C.**
H. Laddie Montague
Merrill G. Davidoff
Bart Cohen
1622 Locust Street
Philadelphia, PA  19103
Tel. (215) 875-3000
Fax (215) 875-4604

**CO-LEAD COUNSEL FOR CLASS PLAINTIFFS**

Dated:  May 1, 2006

**KENNY NACHWALTER, P.A.**

By: _William J. Blechman_
     William J. Blechman

Richard A. Arnold
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL  33131-4327
Tel. (305) 373-1000
Fax (305) 372-1861

**LIAISON COUNSEL FOR NON-CLASS PLAINTIFFS**

MP3 20177181.2

Banks
MP3 20177579. 1

**Robins, Kaplan, Miller & Ciresi L.L.P.**
David Balto (dbalto@rkmc.com)
Bethany D. Krueger (bdkrueger@rkmc.com)
Anne M. Lockner (amlockner@rkmc.com)
Christopher W. Madel (cwmadel@rkmc.com)
Kevin M. Magnuson (kmmagnuson@rkmc.com)
Ryan W. Marth (rwmarth@rkmc.com)
Bradley M. Orschel (bmorschel@rkmc.com)
Thomas J. Undlin (tjundlin@rkmc.com)
K. Craig Wildfang (kcwildfang@rkmc.com)
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402
Tel. (612) 349-8500
Fax (612) 349-4181

**Berger & Montague, P.C.**
Bart Cohen (bcohen@bm.net)
Merrill G. Davidoff (mdavidoff@bm.net)
Michael J. Kane (mkane@bm.net)
H. Laddie Montague (hlmontague@bm.net)
1622 Locust Street
Philadelphia, PA  19103
Tel. (215) 875-3000
Fax (215) 875-4604

**Lerach Coughlin Stoia Geller Rudman & Robbins LLP**
Christopher M. Burke (chrisb@lerachlaw.com)
Bonny E. Sweeney (bonnys@lerachlaw.com)
655 West Broadway
Suite 1900
San Diego, CA  92101
Tel. (619) 231-1058
Fax (619) 231-7423

Samuel H. Rudman (srudman@lerachlaw.com)
200 Broadhollow Road
Suite 405
Melville, NY  11747
Tel. (619) 231-1058
Fax (619) 231-7423

**Freedman, Boyd, Daniels, Hollander & Goldberg, P.A.**
Joseph Goldberg (jg@fbdlaw.com)
20 First Plaza
Suite 700
Albuquerque, NM  87102
Tel. (505) 842-9960
Fax (505) 842-0761

54

Banks
MP3 20177579. 1

**Hulett, Harper, Stewart, LLP**
Dennis J. Stewart (dennis@hulettharper.com)
550 West C Street
Suite 1600
San Diego, CA  92101
Tel. (619) 338-1133
Fax (619) 338-1139

**Abraham, Fruchter & Twersky, LLP**
Mitchell M. Z. Twerksy (mtwerksy@aftlaw.com)
One Penn Plaza, Suite 2805
New York, NY  10019
Tel. (212) 279-5050
Fax (212) 279-3655

**Ann White Law Offices, P.C.**
Ann White (awhite@awhitelaw.com)
One Pitcairn Place
Suite 2400
165 Township Line Road
Jenkintown, PA  19046
Tel.  (215) 481-0274
Fax . (215) 481-0271

**Barrack, Rodos & Bacine**
William Ban (wban@barrack.com)
Jeffrey Gittleman (jgittleman@barrack.com)
Gerald Rodos (grodos@barrack.com)
Mark Rosen (mrosen@barrack.com)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Tel. (215) 963-0600
Fax (215) 963-0838

**Bernard M. Gross, P.C.**
Warren Rubin (warren@bernardmgross.com)
Suite 450, John Wanamaker Building
Juniper and Market Street
Philadelphia, PA  19107
Tel. (215) 561-3600
Fax (215) 561-3000

55

**Bonnett, Fairbourn, Friedman & Balint**
Francis J. Balint, Jr. (fbalint@bffb.com)
Andrew S. Friedman (afriedman@bffb.com)
2901 North Central Avenue
Suite 1000
Phoenix, AZ 85012
Tel. (602) 274-1100
Fax (602) 274-1199

**Chestnut & Cambronne, P.A.**
Karl L. Cambronne (kcambronne@chestnutcambronne.com)
Jeffrey Bores (jbores@chestnutcambronne.com)
Becky Erickson (berickson@chestnutcambronne.com)
Stewart C. Loper (sloper@chestnutcambronne.com)
Brian N. Toder (btoder@chestnutcambronne.com)
3700 Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
Tel. (612) 339-7300
Fax (612) 336-2940

**Chitwood, Harley Harnes LLP**
Craig Harley (charley@chitwoodlaw.com)
Leslie G. Toran (ltoran@chitwoodlaw.com)
James M. Wilson (jwilson@chitwoodlaw.com)
2300 Promenade Two
1230 Peachtree Street NE
Atlanta, GA 30309
Tel. (404) 873-3900 or (888) 873-3999
Fax (404) 876-4476

**Domina Law Group PC LLO**
David A. Domina (dad@dominalaw.com)
Michael C. Stumo (mcs@dominalaw.com)
2425 South 144th Street
Omaha, NE 68144-3237
Tel. (402) 493-4100
Fax (402) 493-9782

56

**Drubner, Hartley & O'Connor, LLC**
Charles S. Hellman (chellman@dholaw.com)
1 Penn Plaza
Suite 4507
New York, NY 10119
Tel. (212) 736-2121
Fax (212) 736-2122

James Hartley (jhart@dholaw.com)
500 Chase Parkway
Waterbury, CT 06708
Tel. (203) 597-6314
Fax (203) 753-6373

**Finkelstein Thompson & Loughran**
Hilary Ratway (hr@ftllaw.com)
Douglas G. Thompson (dgt@ftllaw.com)
Richard M. Volin (rmv@ftllaw.com)
1050 -- 30th Street NW
Washington, DC 20007
Tel. (202) 337-8000
Fax (202) 337-8090

**Friedman & Shube**
Gary B. Friedman (garybfriedman@att.net)
Noah Shube (nshube@yahoo.com)
155 Spring Street
5th Floor
New York, NY 10012
Tel. (212) 680-5150
Fax (212) 219-6446

**Giskan & Solotaroff**
Catherine Anderson (canderson@gslawny.com)
Oren Giskan (ogiskan@gslawny.com)
Jason Solotaroff (jsolotaroff@gslawny.com)
207 W. 25th Street
New York, NY 10001
Tel. (212) 847-8315
Fax (212) 473-8096

**Goldman, Scarlato & Karon, P.C.**
Daniel Karon (karon@gsk-law.com)
55 Public Square, Suite 1500
Cleveland, OH 44113
Tel. (216) 622-1851
Fax (216) 622-1852

57

Banks
MP3 20177579. 1

**Gray & White**
Mark K. Gray (mkgrayatty@aol.com)
Doris Kim
James Puszczewicz
Matt White
1200 PNC Plaza
500 West Jefferson Street
Louisville, KY  40202
Tel. (502) 585-2060
Fax (502) 581-1933

**Gustafson Gluek PLLC**
Daniel E. Gustafson (dgustafson@gustafsongluek.com)
Dan Hedlund (dhedlund@gustafsongluek.com)
Jason Kilene (jkilene@gustafsongluek.com)
650 Northstar East
608 Second Avenue South
Minneapolis, MN  55402
Tel. (612) 333-8844
Fax (612) 339-6622

**Jaffe + Martin**
Arthur L. Martin (amartin@lawjm.com)
Howard M. Jaffe (hjaffe@lawjm.com)
2029 Century Park East, Suite 2100
Los Angeles, CA 90067-3007
310-226-7770

**Kalik Lewin**
*A partnership of professional corporations*
Ronald A. Bloch, P.C. (ronbloch@erols.com)
4720 Montgomery Lane, Suite 400
Bethesda, MD 20814
Tel. (202) 237-7456
Fax (301) 977-4865

**Kohn, Swift & Graf, P.C.**
Michael J. Boni (mboni@kohnswift.com)
Robert J. LaRocca (rlarocca@kohnswift.com)
Joshua Snyder (jsnyder@kohnswift.com)
Kate Reznick (kreznick@kohnswift.com)
One South Broad Street
Suite 2100
Philadelphia, PA  19107-3389
Tel. (215) 238-1700
Fax (215) 238-1968

Banks
MP3 20177579: 1

**Koskoff Koskoff & Bieder PC**
Richard Bieder (rbieder@koskoff.com)
William Bloss (bbloss@koskoff.com)
Cynthia Bott (cbott@koskoff.com)
Neal A. DeYoung (ndeyoung@koskoff.com)
Lillian C. Gustilo (lgustilo@koskoff.com)
Michael Koskoff (mkoskoff@koskoff.com)
Anthony Ponvert (aponvert@koskoff.com)
Craig Smith (csmith@koskoff.com)
350 Fairfield Avenue
Bridgeport, CT 06604
Tel. (203) 336-4421
Fax (203) 368-3244

**Kreindler and Kreindler**
Gretchen M. Nelson (gnelson@kreindler.com)
707 Wilshire Boulevard, Suite 5070
Los Angeles, CA 90017
213-622-6469

**Labaton Sucharow & Rudoff LLP**
Craig L. Briskin (cbriskin@labaton.com)
Bernard Persky (bpersky@labaton.com)
Hollis L. Salzman (hsalzman@labaton.com)
100 Park Avenue
New York, NY 10017
Tel. (212) 907-0700
Fax (212) 818-0477

**Law Offices of George A. Shohet**
George Shoehet (gshohet@aol.com)
245 Main Street, Suite 310
Venice, CA 90291
Tel. (310) 452-3176
Fax (310) 452-2270

**Law Office of Jerald M. Stein**
Jerald M. Stein (jmslaw@nyc.rr.com)
Scott Klein (sklein@mintandgold.com)
470 Park Avenue South
Floor 10 North
New York, NY 10016-6819
Tel. (212) 481-4848
Fax (212) 481-6803

Banks
MP3 20177579. 1

**Law Offices of Joshua P. Davis**
Joshua Davis (davisj@usfca.edu)
437 Valley Street
San Francisco, CA 94131
Tel. (415) 422-6223
Fax (415) 422-6433

**Law Offices of Scott A. Bursor**
Scott A. Bursor (scott@bursor.com)
500 Seventh Avenue, 10th Floor
New York, NY 10018
Tel. (212) 989-9113
Fax (212) 989-9163

**Law Offices of Tracey Kitzman**
Tracey Kitzman (traceykitzman@yahoo.com)
7 East 8th Street
Suite 206
New York, NY 10003-5901
Tel. (917) 270-1023
Fax (212) 219-6446

**Lieff, Cabraser, Heiman & Bernstein, LLP**
Joseph R. Saveri (jsaveri@lchb.com)
275 Battery Street, 30th Floor
San Francisco, CA 90411-3339
Tel. (415) 956-1000
Fax (415) 956-1008

Hector D. Geribon (hgeribon@lchb.com)
David P. Gold (dgold@lchb.com)
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Tel. (212) 355-9500
Fax (212) 355-9592

**Lockridge, Grindal & Nauen, P.L.L.P.**

Darla Jo Boggs (djboggs@locklaw.com)
W. Joseph Bruckner (wjbruckner@locklaw.com)
Carmen B. Copher (cbcopher@locklaw.com)
William A. Gengler (wagengler@locklaw.com)
Richard A. Lockridge (ralockridge@locklaw.com)
Charles N. Nauen (cnnauen@locklaw.com)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179
Tel. (612) 339-6900
Fax (612) 339-0981

60

Banks
MP3 20177579. 1

**Mager & Goldstein**
Jayne Goldstein (jgoldstein@magergoldstein.com)
2825 University Drive
Coral Springs, FL  33065
Tel. (954) 341-0844
Fax (954) 341-0855

Lee Albert (lalbert@magergoldstein.com)
Carol Mager (cmager@magergoldstein.com)
One Liberty Place 21st Floor
1650 Market Street
Philadelphia, PA  19103
Fax (215) 640-8281

**Markun, Zusman & Compton, LLP**
Kevin K. Eng (keng@mzclaw.com)
465 California Street
Suite 500
San Francisco, CA  94101
Tel. (415) 438-4515
Fax (415) 434-4505

**Milberg, Weiss, Bershad & Schulman**
David Bershad (dbershad@milbergweiss.com)
Michael Buchman (mbuchman@milbergweiss.com)
Edith M. Kallas (ekallas@milbergweiss.com)
Ryan G. Kriger (rkriger@milbergweiss.com)
J. Douglas Richards (drichards@milbergweiss.com)
Melvyn Weiss (mweiss@milbergweiss.com)
One Pennsylvania Plaza
49th Floor
New York, NY  10119
Tel. (212) 594-5300
Fax (212) 868-1229

**Murray, Frank & Sailer**
Eric J. Belfi (ebelfi@murrayfrank.com)
Brian Brooks (bbrooks@murrayfrank.com)
275 Madison Avenue
8th Floor
New York, NY  10016
Tel. (212) 682-1818
Fax (212) 682-1892

61

**Pomerantz, Haudeck, Block & Gross**
Jason Cowart (jscowart@pomlaw.com)
Stanley Grossman (smgrossman@pomlaw.com)
100 Park Avenue, 26th Floor
New York, NY  10017
Tel. (212) 661-1100
Fax (212) 661-8665

**Reinhardt Wendorf & Blanchfield**
Garrett D. Blanchfield, Jr.
Mark Reinhardt (mreinhardt@comcast.net)
Mark Wendorf
332 Minnesota Street
E1250 First National Bank Building
St. Paul, MN  55101
Tel. (651) 287-2100
Fax (651) 287-2103

**Richard L. Jasperson, P.A.**
Richard L. Jasperson (jaspersonr@cs.com)
E1000 First National Bank Building
332 Minnesota Street
St. Paul, MN  55101
Tel. (651) 223-5039
Fax (651) 223-5802

**Robert D. Greenbaum & Associates, LLC**
Robert D. Greenbaum (rgreenba@voicenet.com)
123 South Broad Street, 28th Floor
Avenue of the Arts
Philadelphia, PA  19109
Tel. (215) 772-5060
Fax (215) 772-5058

**Roda Nast P.C.**
Dianne M. Nast (dnast@rodanast.com)
801 Estelle Drive
Lancester, PA  17601
Tel. (717) 892-3000
Fax (717) 892-1200

Banks
MP3 20177579: 1

**Ross, Dixon & Bell, LLP**
Jason Hartley (jhartley@rdblaw.com)
550 West "B" Street, Suite 400
San Diego, CA  92101-3599
Tel. (619) 235-4040
Fax (619) 231-8796

Charles Hadden (chadden@rdblaw.com)
2001 K Street NW
Washington, DC  20006
Tel. (202) 662-2000
Fax (202) 662-2190

**Sheller, Ludwig & Badey**
Jonathan Shub (jshub@sheller.com)
1528 Walnut Street, Third Floor
Philadelphia, PA  19102
Tel. (215) 790-7300
Fax (215) 546-0942

**Shepherd, Finkelman, Miller & Shah, LLC**
Patrick Klingman (pklingman@sfmslaw.com)
James E. Miller (jmiller@classactioncounsel.com)
Laurie Rubinow (lrubinow@sfmslaw.com)
65 Main Street
Chester, CT  06412
Tel. (860) 526-1100
Fax (860) 526-1120

Natalie Finkelman Bennett (nfinkelman@classactioncounsel.com)
Paul Rettinger (prettinger@classactioncounsel.com)
Nathan Zipperian (nzipperian@classactioncounsel.com)
30 East State St.
Media, PA 19063
Tel.  (610) 891-9880
Fax  (610) 891-9883

**Spector, Roseman & Kodroff**
William Caldes (wcaldes@srk-law.com)
Jay S. Cohen (jcohen@srk-law.com)
Jeff Corrigan (jcorrigan@srk-law.com)
David Felderman (dfelderman@srk-law.com)
Gene Spector (espector@srk-law.com)
1818 Market Street
Suite 2500
Philadelphia, PA  19103
Tel. (215) 496-0300
Fax (215) 496-6611

Banks
MP3 20177579. 1

**Starr, Gern, Davison & Rubin, P.C.**
Jonathan J. Lerner (jlerner@starrgern.com)
Nicholas Stevens (nstevens@starrgern.com)
103 Eisenhower Parkway
Roseland, NJ  07068-1050
Tel. (973) 403-9200
Fax (973) 226-0031

**Wechsler Harwood**
Jeffrey M. Norton (jmn@whesq.com)
488 Madison Avenue, 8th Floor
New York, NY  10022
Tel. (212) 935-7400
Fax  (212) 753-3630

**Weinstein, Kitchenoff & Asher, LLC**
Steven A. Asher (asher@wka-law.com)
Robert S. Kitchenoff (kitchenoff@wka-law.com)
1845 Walnut Street
Suite 1100
Philadelphia, PA  19103
Tel. (215) 545-7200
Fax (215) 545-6535

**Whatley Drake LLC**
Richard Rouco (rrouco@whatleydrake.com)
Joe R. Whatley (jwhatley@whatleydrake.com)
P.O. Box 10647
Birmingham, AL  35202-0647
Tel. (205) 328-9576
Fax. (205) 328-9669

**Wolf Popper, LLP**
Marian P. Rosner (mrosner@wolfpopper.com)
Patricia I. Avery (pavery@wolfpopper.com)
845 Third Avenue
New York, NY  10022-6601
Tel. (212) 759-4600
Fax (212) 486-2093

**Cohen, Milstein, Hausfeld & Toll**
Linda Nussbaum  (lnussbaum@cmht.com)
Steig Olson (solson@cmht.com)
150 East 52nd Street
30th Floor
New York, NY  10022
Tel. (212) 838-7797
Fax (212) 838-7745

64

Banks
MP3 20177579. 1

**Daar & Vanek, P.C.**
David P. Germaine (dgermaine@daarvanek.com)
Joseph M. Vanek (jvanek@daarvanck.com)
225 West Washington, 18th Floor
Chicago, IL  60606
Tel. (312) 224-1500
Fax (312) 224-1510

**Kenny Nachwalter, P.A.**
Richard A. Arnold (rarnold@kennynachwalter.com)
William Blechman (wblechman@kennynachwalter.com)
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL  33131-4327
Tel. (305) 373-1000
Fax (305) 372-1861

**Smith Campbell, LLP**
Thomas M. Campbell (tcampbell@sc-llp.com)
110 Wall Street
New York, NY  10005
Tel. (212) 344-1500
Fax (212) 344-5585

**Straus & Boies, LLP**
Kenneth G. Walsh (kwalsh@straus-boies.com)
2 Depot Plaza, 2nd Floor
Bedford Hills, NY  10507
Tel. (914) 244-3200
Fax (914) 244-3260

Banks
MP3 20177579. 1

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

13914281

Feb 23 2007
7:14PM

---------------------------------------------------- x

In re PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

:   MDL No. 1720(JG)(JO)
:
:   Civil No. 05-5075(JG)(JO)
:
:

----------------------------------------------------

This Document Relates To:

    ALL ACTIONS.

:   PLAINTIFFS' CONSOLIDATED FOURTH
:   SET OF OMNIBUS DISCOVERY TO BANK
:   DEFENDANTS
:

---------------------------------------------------- x

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs request that each named Bank Defendant answer the following Fourth Set of Omnibus Discovery (the "Fourth Set") within 30 days.

## I.   DEFINITIONS

1.   The term "Card Product" or "Card Network Product" means *any* network Credit Card or Debit Card product or other electronic card product. (Any network includes, without limitation, Visa, MasterCard, American Express and Discover.)

2.   The term "Credit Card(s)" refers to an access device enabling the holder to: (a) effect transactions on credit for goods and services purchased, which are paid for on behalf of the holder by the issuer of such devices; or (b) obtain cash with credit extended by the issuer. Credit Cards permit cardholders to borrow the money for a retail purchase for the card issuer and to repay the debt over time, according to the provisions of a revolving-credit agreement between the cardholder and the card issuer. Examples of Credit Cards are the Visa and MasterCard Credit Cards issued by the Bank Defendants, as well as the Discover and Private-Issue cards issued by Morgan Stanley and Dean Witter & Co., and the Optima and Blue-type cards issued by American Express. Proprietary cards of individual Merchants for use only at particular Merchants' outlets are not included in this definition. "Credit Card" means any Credit Card product, including, without limitation, General-Purpose Credit Cards and Premium Cards.

3.   The term "Debit Card" refers to an access device that enables the holder, among other things, to affect a cash withdrawal from the holder's depository bank account, either at an Automated Teller Machine ("ATM") or a point of sale. "Debit Card" includes every Debit Card product.

4.   The "Default Interchange Rate" (and "Default Interchange Fee") is the base interchange rate charged on an electronic payment transaction as determined by the line of business defined by the card association.

- 1 -

5.     The term "Document" shall include the entire scope of the term "Document" in Federal Rules of Civil Procedure, Rule 34(a), including both original Documents and copies thereof. A draft or non-identical copy is a separate Document within the meaning of this term. "Document" means *any* writing, whether generated by hand, mechanically or electronically. The reference to "Document" includes metadata contained in an electronic Document as provided in Rule 34, as amended effective December 1, 2006.

6.     The term "General Purpose Credit Card" refers to any Credit Card other than Premium Cards.

7.     The term "Individual Plaintiff(s)" refers to each Plaintiff identified in each non-class Complaint or Amended Complaint in MDL 1720.

8.     The term "Interchange Fee" (and "Interchange Rate") refers to a fee (or rate) that Merchants pay to the Issuing Bank through the Visa and/or MasterCard network and the Merchant Acquirer for each retail transaction in which the Issuing Bank's card is used as a payment device at one of the Merchant Acquirer's Merchant accounts.

9.     The term "Merchant" refers to any person or business that is eligible to accept Visa or MasterCard cards. The term "Merchants" refers to all Merchants.

10.     The term "Merchant Acquirer" refers to any bank, financial institution or Third Party Processor that establishes agreements with Merchants whereby such Merchants will accept Visa and/or MasterCard-branded cards as payment for the goods and services that the Merchants sell.

11.     The term "Merchant Category" means the category assigned by Visa or MasterCard to a Merchant based upon the nature of the Merchant's business. Examples include supermarket, petroleum, e-commerce, commercial cards, purchasing cards, quick service restaurant, AFD and pharmacy.

- 2 -

12. The term "Merchant Discount Fee" (or "Merchant Discount Rate") refers to the fee (or rate) paid by the Merchant to transact over the Visa and/or MasterCard networks, which typically consists of the Interchange Fees, service fees, processing fees and an additional processing fee charged by the Merchant Acquirer.

13. The term "Named Class Representative" refers to each of the Named Class Representatives in the First Consolidated Amended Class Action Complaint served April 24, 2006 and each of their predecessors, successors, parents, divisions, subsidiaries and affiliates, each other person directly or indirectly, wholly or in part, owned or controlled by them, and each partnership or joint venture to which any of them is party, and all present and former directors, officers, employees, agents, consultants or other persons acting for or on behalf of any of them. Class Plaintiffs reserve the right to serve separate discovery.

14. The term "Plaintiff(s)" means any Individual Plaintiff or Named Class Representative in MDL 1720.

15. The term "Premium Cards" refers to Credit Cards that offer rewards or other pecuniary benefits to the cardholder and impose higher interchange fees on retail Merchants than standard or non-premium cards.

16. The term "Third-Party Processor" is a firm, other than Visa, MasterCard, a Member Bank or an entity affiliated with a Member Bank, that performs the authorization, clearing and settlement functions of a transaction using a Visa or MasterCard product on behalf of a Merchant or a Member Bank. Examples of Third-Party Processors include First Data, TransFirst and TSYS.

17. A "Visa or MasterCard Credit or Debit Card Product" includes Visa- and MasterCard-sponsored products, and any Visa or MasterCard Credit or Debit Card product that a bank (co-)sponsor, issues or acquires.

- 3 -

18.     The terms "You," "Your," and its cognates mean each Bank Defendant separately responding to this discovery, and its present and former officers, directors, employees, attorneys, agents, subsidiaries, parents, affiliates, acquisitions, successors or predecessors, and any person acting in whole or in part on behalf of any of the foregoing.

19.     Plaintiffs otherwise incorporate by reference the Definitions set forth in Class Plaintiffs' and Non-Class Plaintiffs' Consolidated First Set of Omnibus Discovery to Bank Defendants.

## II.     INSTRUCTIONS

1.     The terms "and" and "or" are to be read interchangeably so as to give a particular request or interrogatory in which either or both is used the broadest possible meaning. The term "and/or" is used to give a request or interrogatory a sufficiently broad enough scope to ensure that you do not fail to answer because the term "and" or "or" is used.

2.     The reference to "data" is not intended to exclude any type of data.

3.     Your answers to the requests for production and interrogatories in this Fourth Set should be timely supplemented as required by Fed. R. Civ. P. 26(e).

4.     If you object to a request or interrogatory, the objection should state with specificity all grounds.  Any objection not stated within the time provided by the Federal Rules of Civil Procedure, or any extensions, shall be waived.

5.     The requests for production and interrogatories in this Fourth Set are deemed to be continuing in nature and should you, your counsel, or anyone representing your interest learn of additional data, Documents or information relating to the matters inquired into in these requests after answering them and before trial, you are required and directed to furnish such data, Documents or information to the undersigned counsel.  Please note that objection will be made at the time of trial to

- 4 -

any attempt to introduce evidence which is sought by these interrogatories and requests for production as to which no disclosure has been made.

6.      In defining terms in this discovery, you should use definitions as set forth above and, in the absence of a definition, the plain meaning of the words.

7.      Please provide all data or Documents within your possession, custody or control.

8.      The interrogatories and requests for production are not intended to limit or restrict Plaintiffs' contentions or proof regarding any aspect of their claims.

9.      If you redact any portion of a Document on the basis of any privilege or immunity, please use care not to redact information in such a way as to deprive the Document of the context necessary to understand or interpret it.

10.     Plaintiffs reserve the right to modify or supplement any of the interrogatories or requests for production in this Fourth Set based on information learned in the meet-and-confer process, discovery in the case, positions taken by Defendants with respect to legal, factual or discovery issues in this case, or rulings by the Court.

11.     Unless a specific country or region is identified, each request for production and interrogatory pertains to each country that is within the geographic scope of search as agreed to by the parties or ordered by the Court.

12.     This Fourth Set of Omnibus Discovery to the Bank Defendants is not intended to replace any discovery sought in Plaintiffs' First, Second or Third Set or in the meet-and-confer process associated with Plaintiffs' First, Second or Third Set. To the extent that documents or data requested in this Fourth Set of Omnibus Discovery to the Bank Defendants have been produced, or will be produced, in response to Plaintiffs' First, Second or Third Set or in the meet-and-confer

process associated with Plaintiffs' First, Second or Third Set, you may respond to this Fourth Set by providing the Bates numbers of those documents.

13.     We realize that you may record data per transaction using several units of measurement, such as per $10 transaction or $100 transaction. We request that you tell us, for a given data request, the unit(s) of measurement that you use to record data so that we may assist you in producing data using a unit of measurement that is responsive to Plaintiffs' requests.

14.     Please produce electronic Documents in their native format and produce metadata for such Documents.

## III.     PRIVILEGE

If you respond to any request for production with reference to Documents, and you withhold any Document based on the attorney-client privilege, the work-product doctrine, or any other privilege, then you should provide an index identifying the Document by Bates number or some other identifying means, if available, along with the date of the Document, the author and his/her company affiliation and title, all recipients of the Document and their company affiliations and titles, the subject matter of the Document, and the paragraph or paragraphs of this Document request to which the withheld Document is responsive.

## IV.     TIME FRAME

Unless otherwise stated, the temporal scope or relevant time period of the requests for production in this Fourth Set that seek *data* is January 1, 1995 *to the present*. For all other Documents, the temporal scope of this Fourth Set is January 1, 2000 to the present. As used in this "Time Frame," the phrase "the present" means the date you produce the data and Documents responsive to a given discovery request.

## V.  DOCUMENT DESTRUCTION

If any Document called for by the requests for production in this Fourth Set has been destroyed, then for each such Document, identify in an index when the Document was destroyed, the reason for and circumstances surrounding its destruction, and describe the contents of each such Document.

## VI.  SPECIFIC REQUESTS FOR PRODUCTION AND INTERROGATORIES

### FOURTH SET OF REQUESTS FOR PRODUCTION

REQUEST NO. 1:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which, if at all, the Visa, MasterCard, Discover or American Express network, or Card Products from any of those card networks, is responsible for or leads to incremental sales to cardholders in any Merchant's stores.  (As used in this request, the term "incremental sales" means the dollar amount and number of additional sales of goods or services by a Merchant to a cardholder attributable to any network Card Product.)

REQUEST NO. 2:

All Documents and data reflecting or referring to, quantifying or analyzing the demand elasticities of Visa, MasterCard, Discover and/or American Express cardholders and any Merchants. (As used in this request, the term "demand elasticities" means the quantified extent to which cardholders use a Card Network Product, or Merchants accept or reject a Card Network Product, based on: a change in Interchange Rates or Merchant Discount Rates; or any loyalty, promotion or rewards program.)

REQUEST NO. 3:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which, if at all, Interchange Fees have any effect or influence on cardholder and/or Merchant demand elasticities, as that term is defined in the immediately preceding paragraph.

REQUEST NO. 4:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which, if at all, bilaterally negotiated Interchange Rates with or without a Default Interchange Rate would or would not create an incentive for individual card issuers in an open-loop payment card system to increase Interchange Rates or the Interchange Fees that they receive. (For purposes of this request, an "open-loop" payment card system means Visa and MasterCard, in which many members issue cards to cardholders, acquire transaction receipts from Merchants, and set cardholder and Merchant prices.)

REQUEST NO. 5:

All Documents and data reflecting or referring to, comparing, quantifying or analyzing the extent to which any Merchant or Merchants pay for total Visa or MasterCard network system costs (however you define those costs), as opposed to the extent to which cardholders, issuers, acquirers or other processors pay for those costs.

REQUEST NO. 6:

All Documents reflecting or referring to allowing Merchants to choose which Card Product to accept for payment of goods or services.

REQUEST NO. 7:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which and why, if at all, allowing Merchants to decide which of the Visa or MasterCard Card

- 8 -

Products to accept and which to reject would impose costs, if any, on the Visa or MasterCard brand names.

REQUEST NO. 8:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which and why, if at all, the development or promotion of issuer brand names or the growth of co-branded or affinity cards (with or without card-specific reward programs) has created or would create increased cardholder loyalty to particular issuers.

REQUEST NO. 9:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which and why, if at all, any Merchant's decision not to carry Visa, MasterCard, American Express and/or Discover Card Products would lead to or has led to a loss of sales by such Merchant.

REQUEST NO. 10:

All Documents and data reflecting or referring to, quantifying or analyzing the extent to which Merchants can steer or influence and/or have steered or influenced consumers or cardholders to apply for and/or use any particular type of Card Product.

REQUEST NO. 11:

All Documents analyzing or setting forth the reasons why you decided to publish for Merchants your Interchange Fees, your operating regulations governing Merchants, and/or your by-laws governing Merchants, and all Documents analyzing or setting forth the reason or reasons, if any, why you previously refused to publish any of the foregoing for Merchants.

REQUEST NO. 12:

All Documents reflecting or referring to, or analyzing, the reason or reasons, if any, why you have refused to provide Merchants with all Bank Identification Numbers ("BIN") for all or any of your Card Products.

REQUEST NO. 13:

All Documents reflecting or referring to, or analyzing, how Merchants could use BINs for all of your Card Products: (a) to recognize at the point of sale the specific Card Product and the Interchange Rate or Merchant Discount Rate associated with that Card Product; and/or (b) to steer cardholders to pay for goods or services at the point of sale using a less costly payment method.

REQUEST NO. 14:

All Documents reflecting, referring or relating to any actual or potential cancellation or renegotiation of a card acceptance agreement with Visa, MasterCard, American Express or Discover, including, but not limited to, threats or statements to cancel or demands to renegotiate, card acceptance agreements.

REQUEST NO. 15:

All Documents reflecting, referring or relating to actual or potential negotiations with Visa, MasterCard, American Express or Discover concerning card acceptance, Merchant Interchange Rates, Merchant Discount Rates, and forms of remuneration paid by Visa, MasterCard, American Express or Discover to Merchants, including, but not limited to, signing bonuses, rate band acceleration, and advertising or marketing incentives.

REQUEST NO. 16:

All Documents relating to any projection or estimation of the business or economic effects on any Network or on Issuing Banks of reduced Interchange Fees.

- 10 -

REQUEST NO. 17:

All Documents and data provided by any Network or Bank Defendant to any third-party consultant for purposes of analyzing interchange in any foreign country or region, or for purposes of the third-party consultants' analysis, activities and/or assistance in connection with any foreign proceedings or investigations relating to interchange or Merchant restraints.

REQUEST NO. 18:

Contracts or agreements between You and any Merchant under which You receive an effective Interchange Rate other than the Default Interchange Rate; or receives a Merchant Discount Rate that contains an Interchange Rate that is different from the Default Interchange Rate. This request includes a request for all Documents constituting or relating to any contract or agreement to pay rebates, credits, discounts or other economic consideration which effectively reduces the Interchange Rate or Merchant Discount Rate any Merchant pays for transacting business on your Network.

REQUEST NO. 19:

All Documents related to Visa's Key Merchant Incentive Program.

REQUEST NO. 20:

All Documents reflecting or referring to focus group examination, surveys, studies or analysis of consumers, cardholders, banks, Merchants or any other person regarding: Interchange Rates or Fees or Merchant Discount Rates or Fees; preference for any Card Product; preference for any electronic payment method or mechanism; payment of an annual card membership fee; rewards program(s); any Merchant Restraint; the value, if any, provided by any card payment system, card network or Card Product; Merchant surcharging cardholders; knowledge about the authorization, clearance or settlement of electronic payment transactions; whether the Visa, MasterCard, American

Express and/or Discover brands have any value and, if so, why and the relative importance of each of those reasons (if any); whether any Member Bank of Visa or MasterCard is perceived as a brand and, if so, why and the reasons (if any); the extent to which, if at all, any Visa or MasterCard Member Bank contributes to the Visa or MasterCard brand or vice versa; ownership of one or more Card Products; Merchant acceptance or rejection of any Card Product; or cardholder reaction or response to Merchant acceptance or rejection of any Card Product.

REQUEST NO. 21:

Business plans and data reflecting, and Documents sufficient to show, solicitation or other efforts by You to induce people or entities that do not own a Card Product, or who own a Card Product *other than* a Visa or MasterCard Card Product ("Non-Cardholders"), to sign up or become a cardholder of any Visa or MasterCard Card Product ("New Cardholders"), including: (a) the quantity or number of mail solicitations sent to Non-Cardholders; (b) the number of Non-Cardholders solicited; (c) the number of New Cardholders as a percentage of the number of Non-Cardholders solicited; (d) the costs of inducing Non-Cardholders to become New Cardholders; (e) the number of Non-Cardholders who became New Cardholders; (f) the number and dollar amount of transactions at Merchants that have occurred on New Cardholder Card Products, reported separately for each Card Product; (g) the actual Interchange Fees and Merchant Discount Fees for each of the New Cardholder Card Products; (h) the types of rewards or incentives offered to Non-Cardholders to become a New Cardholder; and (i) the cost of the rewards referenced in subparagraph (h) as a percentage of Interchange Fees and Merchant Discount Fees.

REQUEST NO. 22:

The dictionary or dictionaries that define fields in the databases that You produce or identify in response to Plaintiffs' First, Second, Third and Fourth Sets of Discovery.

- 12 -

REQUEST NO. 23:

All data that You (including your lawyers) have retrieved by using Plaintiffs' merchant identification numbers; and all data responsive to Plaintiffs' First, Second, Third and Fourth Sets of Discovery reported by each Plaintiff's Merchant identification numbers.

REQUEST NO. 24:

All Documents reflecting or referring to, analyzing or evaluating Your consideration or establishment of a special supermarket interchange tier or Interchange Rate for any Credit or Debit Card Product and/or the setting of such an Interchange Rate.

## FOURTH SET OF INTERROGATORIES

INTERROGATORY NO. 1:

Identify by each numbered paragraph in the foregoing Fourth Set of Requests for Production all of Your databases that contain any of the data requested in the requests for production in the Fourth Set.

INTERROGATORY NO. 2:

For each of the databases that You identify in Your response to Interrogatory No. 1, identify by name its fields.

INTERROGATORY NO. 3:

State, by each numbered paragraph in the foregoing Fourth Request for Production, and for each database that is responsive to each request in the Fourth Set, the periodic basis for which each database tracks or records data (*e.g.*, weekly, monthly, quarterly).

INTERROGATORY NO. 4:

Identify by name, complete address and telephone number all third parties (*e.g.*, TSYS, First Data) that maintain data for or on Your behalf or on which You rely for all data that is responsive to

- 13 -

Plaintiffs' Fourth Set of Document Requests, and state the name of Your current contact person at each third party.

INTERROGATORY NO. 5:

Identify with particularity and by Card Product each cost item that You contend justifies the Interchange Rates or Merchant Discount Rates on Visa or MasterCard Card Product transactions. Please answer this Interrogatory separately for Interchange Rates and Merchant Discount Rates. For each cost item that You identify, provide a complete definition of that cost item.

INTERROGATORY NO. 6:

Identify each and every benefit that You contend each of Your Card Products confers on Merchants, and identify the name of the person or people at Your company most knowledgeable about the foregoing contention. Please answer this interrogatory separately for each of Your Card Products.

INTERROGATORY NO. 7:

Identify every Merchant who cancelled or stated in substance that it might cancel a Visa or MasterCard card acceptance agreement, state the date of that cancellation, and identify the Bates numbers of all Documents reflecting or referring to that conduct.

INTERROGATORY NO. 8:

Identify every Merchant who informed You in words or substance that it would no longer accept a Visa or MasterCard Card Product at its stores, state the date of that notice, and identify the Bates numbers of all Documents reflecting, referring or relating to that Merchant's notice that it would no longer accept a Visa or MasterCard Card Product.

- 14 -

INTERROGATORY NO. 9:

Identify by each numbered request for production in this Fourth Set the Bates numbers of the Documents You are producing responsive to that request.

INTERROGATORY NO. 10:

Are You a party to any agreement or understanding between or among the Networks, the Bank Defendants and/or third parties to share responsibility for the satisfaction of, or allocation, any judgment or settlement reached, agreed, imposed or ordered in this litigation (MDL 1720)?  If the answer is anything other than "no," then identify all Documents relating to any such agreement or understanding.

DATED:  February 23, 2007          LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                 PATRICK J. COUGHLIN (PC5116)
                                 BONNY E. SWEENEY (BS5379)
                                 CHRISTOPHER M. BURKE (CB4062)

CHRISTOPHER M. BURKE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
THOMAS G. WILHELM (TW5930)
9601 Wilshire Blvd., Suite 510
Los Angeles, CA  90210
Telephone:  310/859-3100
310/278-2148 (fax)

- 15 -

ROBINS, KAPLAN, MILLER &
   CIRESI L.L.P
K. CRAIG WILDFANG
THOMAS J. UNDLIN
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER & MONTAGUE, P.C.
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs

S:\CasesSD\Visa Interchange\REQ00039170-4th Bank.doc

CERTIFICATE OF SERVICE

I certify that on February 23, 2007, I caused to be served a true and correct copy of Plaintiffs'

Consolidated Fourth Set of Omnibus Discovery to Bank Defendants upon counsel of record utilizing

the LexisNexis electronic service.


Teresa A. Turner

# Exhibit C

# HULETT HARPER STEWART
### ——————— LLP ———————

*550 West C Street, Suite 1600*
*San Diego, California 92101*
*office 619.338.1133*
*fax 619.338.1139*
*www.hulettharperstewart.com*

February 13, 2008

**<u>VIA LEXIS-NEXIS FILE & SERVE</u>**

Counsel for Defendants
See attached Service List

Re:   *In re Payment Card Interchange Fee Antitrust Litigation*
      *MDL No. 1720*

Dear Counsel:

I write on behalf of the Class Plaintiffs to initiate a meet-and-confer on certain deficient interrogatory responses from the Bank and Network Defendants.   Among these interrogatories are a number with respect to which Class Plaintiffs had agreed to defer Bank Defendants' responses pending responses from the Networks.   As to certain of these interrogatories, upon review of the Networks' responses, we have determined that the Networks' responses are deficient.

Please note that many of the deficient responses stem from interrogatories as to which a Rule 33(d) response was made but the response is deficient because either: 1) A Rule 33(d) response does not appropriately or fully and fairly respond to the interrogatory; 2) The defendant has failed to specifically identify the assertedly responsive documents, or 3) The defendant has identified documents with the requisite specificity but the documents that are identified are insufficient to answer the interrogatory.

FRCP Rule 33(d) requires that such a response is only appropriate where: 1) the answer to an interrogatory may be derived or ascertained from business records and 2) the burden of ascertaining information from such business records is substantially the same among the producing and reviewing parties.   Assuming an interrogatory is appropriately responded to with a Rule 33 (d) specification of documents, the Rule 33(d) "specification" must be "in sufficient detail to permit the interrogating party to locate, and to identify, as readily as can the party served, the records from which the answer may be ascertained. F.R.C.P Rule 33(d); *Convermat Corp. v. St. Paul Fire & Marine Ins. Co.*, 2007 U.S. Dist. LEXIS 69102, 17-18 (E.D.N.Y. 2007). Accordingly, the responses must

do more than refer Plaintiffs to documents already produced. *See Life Music, Inc. v. Broadcast Music, Inc.*, 41 FRD 16 (S.D.N.Y 1966); *Holben v. Coopervision, Inc.*, 120 FRD 32 (E.D.Pa. 1988); *In re Sulfuric Acid Antitrust Litig.*, 231 FRD 351 (N.D. Ill. 2005). Further, if the answer to the interrogatory cannot be determined by reviewing the documents referenced in a 33(d) response, defendants must completely answer the interrogatories without referring to the documents. *See Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 305 (D. Kan. 1996); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323 n.33 (C.D. Cal. 2004).

Finally, the Defendants have provided several supplemental responses to interrogatories in correspondence to the Plaintiffs. Plaintiffs request that the Networks provide verified responses to each of the answers provided in such letters.

The Interrogatories at issue are set out below:

## CLASS PLAINTIFFS' AND NON-CLASS PLAINTIFFS' CONSOLIDATED FIRST SET OF OMNIBUS DISCOVERY TO THE NETWORK AND BANK DEFENDANTS

### *Interrogatories Common to Bank and Network Defendants*

**Network Interrogatory No. 1. Identify all members and officers of your Board of Directors, including the Member Banks or other organizations by whom they are employed or who they represent, and the time period of service.**

*Corresponding Bank Interrogatory No. 5. Identify all of your employees or representatives that have served on the Board of Directors of Visa or MasterCard, including each person's term of service, position on the Board, and Committee assignments.*

> While the interrogatory has been answered, <u>Bank Defendants</u> agreed to verify the information provided by the Networks in response to this interrogatory. *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague. To date, Bank Defendants have not done so. Please promptly produce a verification affirming that the information is correct for the verifying bank.

**Network Interrogatory No. 3. Identify all of your Committees made up, in whole or in part, of members of your Board of Directors.**

**Network Interrogatory No. 4. Identify all of your Committees made up, in whole or in part, of representatives of your Member Banks;**

Counsel for Defendants                                   February 13, 2008
Page 3 of 18

**Network Interrogatory No 5. For each Committee identified, (a) identify all of the members of each such Committee; and (b) identify your employees who act as staff for each such Committee.**

*Corresponding Bank Interrogatory No. 6. Identify all of your employees or representatives that have served on any other Committee below the Board of Directors level of either Visa or MasterCard, including each person's term of service and Committee assignments.*

Visa International agreed, pursuant to LCR 33.1 and FRCP 33(d), to produce documents from which responsive information may be derived, as well as additional information regarding the location and identity of responsive documents at the time the documents are produced. While it appears that the documents Bates-numbered VI-IC0000061-94 respond to this interrogatory, please confirm that these are, in fact, all the responsive documents from which a full answer can be derived and, if not, specifically identify, pursuant to FRCP 33(d) and LCR 33.1, any additional documents necessary to fully derive responsive information.

*Bank Interrogatory No. 7. Identify all of your current and former employees or representatives that have served with employees or representatives of Visa, MasterCard, or any other Member Banks on any working group or task force relating to Payment Cards or Payment-Card Networks.*

Bank Defendants originally agreed to use reasonable efforts to identify current or former employees, if any, on the Visa and MasterCard Board of Directors, Visa's reorganization committee, and the committees listed on the 10/2/06 letters of Visa and MasterCard and in the 10/9/06 letter of Visa International. *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague. Subsequently, pursuant to the Bank Defendants' request, Plaintiffs agreed to accept a written response from the Network Defendants, but reserved our rights to receive the above information from the banks. *See* 9/7/07 letter from Grush to Kane and Blechman.

The Network Defendants' responses are inadequate in at least the following respects:

Visa U.S.A. has not identified its executive council members from 2000-2005, and has not identified any members of the Commercial Solutions Executive Committee, nor does it appear that Visa U.S.A. identified the members of its reorganization committee.

Counsel for Defendants                                February 13, 2008
Page 4 of 18

MasterCard has not identified individuals who participated in its "Merchant Advisory Committee."

**Network Interrogatory No. 14. Identify the different Merchant categories and tiers you utilize with respect to your Interchange Fees and describe how the number and composition of those Merchant categories have changed during the Relevant Period.**

*Corresponding Bank Interrogatory No. 17. Identify the different Merchant categories and tiers you utilize with respect to your Interchange Fees and describe how the number and composition of those Merchant categories have changed during the Relevant Period.*

While the interrogatory has been answered, Bank Defendants agreed to provide verified responses as to any non-default interchange fees or non-default merchant categories. *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague. To date, they have not done so. If Bank Defendants have not utilized a non-default interchange fee please confirm so in a verified response. Otherwise, please produce a verified response identifying each instance in which a Bank Defendant has utilized a non-default interchange fee.

FNBO agreed to provide a list of contracts where interchange varies from the default rates set by the networks but has not done so.

**Network Interrogatory No. 15. For each Merchant category identified in your answer to Interrogatory No. 14 above, describe how you determine in which category a Merchant belongs.**

*Corresponding Bank Interrogatory 19. For each Merchant category identified in your answer to Interrogatory No. 17 above, describe how you determine in which category a Merchant belongs.*

Visa U.S.A. and Visa International agreed to produce documents in accordance with LCR 33.1 and FRCP 33(d) but failed to specifically identify the responsive documents. Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

MasterCard, pursuant to FRCP 33(d) and LCR 33.1, referred plaintiffs to documents MasterCard will produce and/or has already produced as part of prior litigation productions. This is an improper use of a 33(d) response. *See Pulsecard, Inc,* 168 F.R.D. at 305. ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of

documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents.") Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

Bank Defendants agreed to provide verified responses as to any non-default interchange fees or non-default merchant categories. *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague. To date, they have not done so. If Bank Defendants have not utilized a non-default interchange fee please confirm so in a verified response.   Otherwise, please produce a verified response identifying each instance in which a Bank Defendant has utilized a non-default interchange fee.

Chase and FNBO agreed to provide a list of contracts where interchange varies from the default rates set by the networks but have not done so.

**Network Interrogatory No. 16.  Describe each business justification for each of the Merchant categories and tiers identified in your answer to Interrogatory No. 14.**

*Corresponding Bank Interrogatory No. 20.  Describe each business justification for each of the Merchant categories and tiers identified in your answer to Interrogatory No. 17.*

Visa U.S.A. and Visa International agreed to produce documents in accordance with LCR 33.1 and FRCP 33(d) but failed to specifically identify the responsive documents. Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

MasterCard, pursuant to FRCP 33(d) and LCR 33.1, referred plaintiffs to documents MasterCard will produce and/or has already produced as part of prior litigation productions.   This is an improper use of a 33(d) response.   *See Pulsecard, Inc,* 168 F.R.D. at 305. ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents.") Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

Bank Defendants agreed to provide verified responses as to any non-default interchange fees or non-default merchant categories. *See* 10/25/06 letter from

Counsel for Defendants                                February 13, 2008
Page 6 of 18

Ladner to Wildfang, Sweeny, and Montague.  To date, they have not done so.  If
Bank Defendants have not utilized a non-default interchange fee please confirm
so in a verified response.  Otherwise, please produce a verified response
identifying each instance in which a Bank Defendant has utilized a non-default
interchange fee.

Chase and FNBO agreed to provide a list of contracts where interchange varies
from the default rates set by the networks but have not done so.

**Network Interrogatory No. 17.  For the Relevant Period, identify the Interchange
Fee applied to each of the Merchant categories identified in your answer to
Interrogatory No. 14.**

*Corresponding Bank Interrogatory No. 21.  For the Relevant Period, identify the
Interchange Fee applied to each of the Merchant categories identified in your answer
to Interrogatory No. 17 above.*

While this interrogatory has been answered, Bank Defendants agreed to provide
verified responses as to any non-default interchange fees or non-default merchant
categories.  *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague.
To date, they have not done so.  If Bank Defendants have not utilized a non-
default interchange fee please confirm so in a verified response.  Otherwise,
please produce a verified response identifying each instance in which a Bank
Defendant has utilized a non-default interchange fee.

Chase and FNBO agreed to provide a list of contracts where interchange varies
from the default rates set by the networks but have not done so.

**Network Interrogatory No. 20.  Identify the Interchange Fee that applied to each
type of Credit or Debit Card that you have promoted for issuance since 1992 and
the business justifications for the different rates.**

*Corresponding Bank Interrogatory No. 22.  Identify the Interchange Fee that applied
to each type of Credit or Debit Card that you have promoted for issuance since 1992
and the business justifications for the different rates.*

Visa U.S.A. agreed to produce documents in accordance with LCR 33.1 and
FRCP 33(d) but failed to specifically identify the responsive documents.
Accordingly, all Defendants must either provide a complete narrative response or
specify the location and identity of responsive documents pursuant to LCR 33.1
and FRCP 33(d).

Counsel for Defendants                                             February 13, 2008
Page 7 of 18

MasterCard identified and produced responsive documents, however it is not clear
that such documents contain all business justifications for the rate changes.
Moreover, MasterCard has not produced business justifications for interchange
rate changes prior to the mid 1990s.

Chase and FNBO agreed to provide a list of contracts where interchange varies
from the default rates set by the networks but have not done so.

**Network Interrogatory No. 21.  Identify each Interchange-Fee change you made
(including increase, decrease, change in tiers, etc.) since 1992, and for each, state the
nature or amount of and reason for such change.**

*Corresponding Bank Interrogatory No. 12.  Identify each Interchange-Fee change of
which you are aware in either the Visa or MasterCard Networks (including increase,
decrease, change in tiers, etc.) since 1992, and for each, state your understanding of
the nature or amount of and reason for such change.*

Visa U.S.A. and MasterCard identified documents containing interchange fee
schedules from which the amount of interchange fees can be determined but those
documents do not provide any reason for such changes.   Accordingly, the
documents identified pursuant to Rule 33(d) do not sufficiently answer the
interrogatory and a narrative response is therefore required.

**Network Interrogatory No. 22.  For each Interchange-Fee change identified in your
answer to Interrogatory No. 21, describe the methodology employed in determining
the change and identify any economic or business analysis relating to the change.**

*Corresponding Bank Interrogatory No. 13.   For each Interchange-Fee change
identified in your answer to Interrogatory No. 12, describe the methodology you
understand to have been employed in determining the change and identify any
economic or business analyses relating to the change.*

Visa U.S.A. and MasterCard identified documents containing interchange fee
schedules but do not "describe the methodology....employed" nor "identify [the]
economic or business analyses relating to such changes."   Accordingly, the
documents identified pursuant to Rule 33(d) do not sufficiently answer the
interrogatory and a written narrative response therefore is required.

**Network Interrogatory No. 27. State whether you ever (even prior to the Relevant
Period) used a cost basis for calculating your Interchange Fees, and if so, state when
you did so and describe the instances in which a cost basis has been used to
determine your Interchange Fees.**

Counsel for Defendants                                    February 13, 2008
Page 8 of 18

***Corresponding Bank interrogatory No. 23.  State whether you ever (even prior to the Relevant Period) used a cost basis for calculating your Interchange Fees, and if so, state when you did so and describe the instances in which a cost basis has been used to determine your Interchange Fees.***

Visa U.S.A. and MasterCard both provided inadequate narrative responses. Both answers are vague as neither response states the precise time periods during which costs were used as a basis for calculating interchange rates as the interrogatory requests.  For example, Visa's response states it "considers – and has considered – costs incurred by participants in the Visa system" without specifying the time when it did so.  Likewise, MasterCard uses a confusing tense construction. ("Cost' *has been* one of several factors MasterCard *takes* into consideration in setting default interchange rates applicable to MasterCard-branded card transactions.") (emphasis added).  The interrogatory calls for an answer with more precision either by referencing specific time periods (years) and/or specific rate changes "in which a cost basis has been used to determine...Interchange Fees." (*e.g.* 4/03 change).

Bank Defendants agreed to provide verified responses as to any non-default interchange fees or non-default merchant categories.  *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague.  To date, they have not done so.  If Bank Defendants have not utilized a non-default interchange fee please confirm so in a verified response.  Otherwise, please produce a verified response identifying each instance in which a Bank Defendant has utilized a non-default interchange fee.
Chase and FNBO agreed to provide a list of contracts where interchange varies from the default rates set by the networks but have not done so.

**Network Interrogatory No. 28.  Identify the persons who designed or implemented any cost-basis calculation described in your answer to Interrogatory No. 27.**

***Corresponding Bank Interrogatory No. 24.  Identify the persons who designed or implemented any cost-basis calculation described in your answer to Interrogatory No. 3 above.***

While this interrogatory has been answered, Bank Defendants agreed to provide verified responses.  *See* 10/25/06 letter from Ladner to Wildfang, Sweeny, and Montague.  To date, they have not done so.  If Bank Defendants have not utilized a non-default interchange fee please confirm so in a verified response.  Otherwise, please produce a verified response identifying each instance in which a Bank Defendant has utilized a non-default interchange fee.

**Network Interrogatory No. 36.  For each of the Rules identified below, state when the Rule was first implemented, describe the business justifications for the Rule, and**

Counsel for Defendants                                    February 13, 2008
Page 9 of 18

identify any changes over time in the Rule or its business justifications: a. the "No-Surcharge Rule;" b. the "No-Multi-Issuer Rule;" c. the "All-Outlets Rule;" d. the "No-Minimum-Purchase Rule;" e. the "Anti- Discrimination Rule;" and f. the "No-Bypass Rule."

*Corresponding Bank Interrogatory No. 28.   For each of the Rules identified below, state when the Rule was first implemented, describe the business justifications for the Rule, and identify any changes over time in the Rule or its business justifications: a. the "No-Surcharge Rule;" b. the "No-Multi-Issuer Rule;" c. the "All-Outlets Rule;" d. the "No-Minimum-Purchase Rule;" e. the "Anti- Discrimination Rule;" and f. the "No-Bypass Rule."*

Network Defendants agreed to produce responsive, non-privileged documents in accordance FRCP 33(d). *See* 8/18/06 letter from Rottenberg to Friedman. To date, the Network Defendants have not specifically identified the responsive documents. Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

**Network Interrogatory No. 38.   Describe the ability of Member Banks or Third-Party Processors to bypass the Visa and MasterCard Networks for authorization, clearance, or settlement of electronic-payment transactions, and identify any Rules that apply to efforts to accomplish bypass.**

*Corresponding Bank Interrogatory No. 29.   Describe the ability of Member Banks or Third-Party Processors to bypass the Visa and MasterCard Networks for authorization, clearance, or settlement of electronic-payment transactions, and identify any Rules that apply to efforts to accomplish bypass.*

Visa U.S.A. agreed to produce documents that contain the information sought, including Visa U.S.A. Inc.'s By-Laws and Operating Regulations from January 2000 to the present, but failed to identify the specific operating rule that responds to this interrogatory. Nor is it clear whether these are the only documents Visa intends to designate in response to this interrogatory. Please specifically identify the responsive operating rule, and specifically identify additional responsive documents, if any, pursuant to Rule 33(d). If no other responsive documents exist, please confirm so in a verified response.

Visa International identified by Bates number responsive documents, but did not identify the specific operating rule from which a full answer to this interrogatory can be derived. Please confirm in a verified response the specific rule responsive to this interrogatory.

Counsel for Defendants                                      February 13, 2008
Page 10 of 18

MasterCard identified by Bates number responsive documents, but did not identify the specific operating rule from which a full answer to this interrogatory can be derived. Please confirm in a verified response the specific rule responsive to this interrogatory.

**Network Interrogatory No. 63.  Identify all business consultants related in any way to your Payment-Card business retained by you since 1985, and for each such consultant identify:  a. all tasks or assignments given to such consultant; b. all files, documents, and working papers related to each task or assignment; c. each of your employees assigned as staff liaison to the consultant; and d. the result or outcome of each such task or assignment.**

*Corresponding Bank Interrogatory No. 38  Identify all business consultants related in any way to your Payment-Card business retained by you since 1985, and for each such consultant identify: a. all tasks or assignments given to such consultant; b. all files, documents, and working papers related to each task or assignment; c. each of your employees assigned as staff liaison to the consultant; and d. the result or outcome of each such task or assignment*

> *Limited in scope:  Plaintiffs agreed to limit the time period of Bank Interrogatory No. 38 to 1992 to the present, and to limit the scope of the interrogatory to work relating to subject matters alleged in the complaint. See* 8/4/06 letter from Wildfang to Greene, Graham, and Ladner.

> Visa U.S.A., Visa International, and MasterCard have not adequately responded to this interrogatory.  Plaintiffs propose the same limited scope for Network Interrogatory No. 63 as that agreed to by the Bank Defendants, and request that the Networks promptly respond.

**Outstanding Interrogatories from Bank Defendants**

*Bank Interrogatory No. 4.  Identify whether you are currently a member of the Visa and/or the MasterCard Networks and identify all of the years you have been a member of either Network, respectively.*

> National City, Wachovia, and Suntrust  agreed to produce responsive documents but have not done so.

*Bank Interrogatory No. 10.  Describe each business justification for each of your Interchange Fees identified in your answer to Interrogatory No. 9 (Identify the Interchange Fee applied to each of the Merchant categories you utilized from 1992 to the present.).*

Bank Defendants refuse to answer at this time, claiming this is a contention interrogatory. *See* 9/7/07 Grush Letter). This characterization is inaccurate. Contention interrogatories ask a party to relate facts to legal theories. *See ThermoSpas, Inc. v. AOC, LLC*, 2007 U.S. Dist. LEXIS 84859 (D. Conn. 2007). This interrogatory does not request any legal theory, but rather seeks the business justifications for the various merchant categories. Accordingly, the Bank Defendants must respond.

## CLASS PLAINTIFFS' SECOND SET OF DISCOVERY REQUESTS TO NETWORK AND BANK DEFENDANTS

**Interrogatory No. 3.   Identify the employees of MasterCard, Visa and Visa International who have the most knowledge concerning any judicial, legislative or administrative proceedings or investigations relating to any Anti-Steering Restraints in: a. Australia; b. Belgium; c. Denmark; d. European Union (for cross-border transactions); e. Finland; f. India; g. Israel; h. Mexico; i. Netherlands; j. New Zealand; k. Portugal; l. South Africa; m. Spain; n. Sweden; o. Switzerland; p. Thailand; q. United Kingdom; and r. Any other jurisdiction outside the United States. [1]**

Visa U.S.A., Visa International, and MasterCard agreed to respond to this interrogatory according to the agreed-upon limitations regarding foreign discovery. *See* 8/4/06 letter from Friedman to defense counsel; 8/18/06 letter from Rottenberg to Friedman; 8/23/06 letter from Undlin to Rottenberg, Ravelo and Gaertner (identifying specific jurisdictions for each network). To date, they have not responded to this interrogatory.

**Interrogatory No. 5.   Identify all third party consultants, analysts and economists engaged by Visa or MasterCard or any third party on their behalf, to evaluate, analyze or study: a. any Anti-Steering Restraint of any Network anywhere in the world; b. the incidence of Merchants Steering or imposing surcharges anywhere in the world; c. the actual, likely or possible effects of any rescission or alteration (whether voluntary, pursuant to regulation or otherwise) of any Anti-Steering restraint anywhere in the world; and d. the actual, likely or possible effects upon the Payment Card business if Merchants were free to impose surcharges upon American Express or Discover transactions, or to Steer customers away from using American Express-branded or Discover-branded Payment Cards. [2]**

---

[1] Plaintiffs agreed that this Interrogatory does not apply to Bank Defendants. *See* 8/24/06 letter from Grush to Friedman.

[2] Plaintiffs agreed that this Interrogatory does not apply to Bank Defendants. *See* 8/24/06 letter from Grush to Friedman.

Counsel for Defendants                                    February 13, 2008
Page 12 of 18

    <u>Visa U.S.A., Visa International, and MasterCard</u> agreed to produce responsive, non-privileged documents in response to this interrogatory. *See* 8/4/06 letter from Freidman to defendants' counsel; 8/18/06 from Rottenberg to Friedman. To date, they have not specifically identified any documents as required by Rule 33(d). Accordingly, the Network Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

***Interrogatory No. 6. Identify any employee of Visa, MasterCard or any Member Bank that has performed a written evaluation, analysis or study of: a. any Anti-Steering Restraint of any Network anywhere in the world; b. the incidence of Merchants Steering, imposing surcharges, imposing minimum purchase conditions or acting in violation of any Anti-Steering Restraints anywhere in the world; c. the actual, likely or possible effects of any rescission or alteration (whether voluntary, pursuant to regulation or otherwise) of any Anti-Steering Restraint of Visa or MasterCard anywhere in the world; and d. the actual, likely or possible effects upon the Payment Card business if Merchants were free to impose surcharges upon American Express or Discover transactions, or to Steer customers away from using American Express-branded or Discover-branded Payment Cards.***

    <u>Visa U.S.A.. MasterCard, and the Bank Defendants</u> agreed to produce responsive, non-privileged documents in response to this interrogatory. *See* 8/18/06 from Rottenberg to Friedman; 8/24/06 letter from Grush to Freidman. To date, they have not specifically identified any documents as required by Rule 33(d). Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

***Interrogatory No. 8. Identify all third parties engaged by Visa, MasterCard, any Member Bank, or any third party acting on behalf of any of them, in the United States: a. to detect or investigate any alleged violations of any Anti-Steering Restraints; or b. to assist in the enforcement of any Anti-Steering Restraints.***[3]

    <u>Visa U.S.A. and MasterCard</u> agreed to produce responsive, non-privileged documents in response to this interrogatory. *See* 8/18/06 from Rottenberg to Friedman. To date, they have not specifically identified any documents as required by Rule 33(d). Accordingly, the Network Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

---

[3] This Interrogatory only applies to the Network and Acquiring Bank defendants. *See* 8/4/06 letter from Friedman to Defendants' counsel.

Counsel for Defendants                                    February 13, 2008
Page 13 of 18

Acquiring Banks have not responded to this interrogatory.

***Interrogatory No. 9.  Identify all Persons who have been responsible for conducting any survey of U.S. consumers or Merchants pertaining to Anti-Steering Restraints or possible Merchant surcharging or Steering.***

Visa U.S.A. and MasterCard: Agreed to produce responsive, non-privileged business-related survey and polling documents (i.e. those not taken in connection with litigation).  *See* 8/18/06 from Rottenberg to Friedman.[4]  To date, they have not specifically identified any documents as required by Rule 33(d).

Bank Defendants agreed to produce responsive surveys or polls other than those conducted in anticipation of litigation. *See* 8/24/06 letter from Grush to Freidman. To date, they have not specifically identified any documents as required by Rule 33(d).

Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

***Interrogatory No. 10.  dentify all putative consumer rights organizations, public relations firms or other third parties that (i) have engaged in any Lobbying, public advocacy, or public relations activities related to any Anti-Steering Restraints and (ii) have received any funding or other support from Visa, MasterCard, or any Member Bank.[5]***

Visa U.S.A. and MasterCard agreed to produce communications concerning the Anti-Steering Restraints involving each defendant and any consumer rights organization, public relations firm, or similar third party that Defendant has paid for services, as well as documents sufficient to show their own relationships with any such organization to the extent such relationships pertain to the Anti-Steering Restraints. *See* 8/18/06 from Rottenberg to Friedman.  To date, they have not specifically identified any such documents as required by Rule 33(d).
Bank Defendants agreed to produce communications concerning the Anti-Steering Restraints with any consumer rights organization, public relations firm, or similar third party that such Bank has paid for services. *See* 8/24/06 letter from Grush to Friedman.  To date, they have not specifically identified any such documents as required by Rule 33(d).

---

[4] The Rottenberg letter refers to "Doc. Request No. 11 & Interrogatory No. 8" but the subject matter of the response is actually responsive to Interrogatory No. 9.

[5] The parties agreed to limit this request to exclude lobbying activities. *See* 8/18/06 letter from Rottenberg to Friedman.; 8/24/06 letter from Grush to Friedman.

Accordingly, all Defendants must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d).

## CLASS PLAINTIFFS' THIRD SET OF DISCOVERY REQUESTS TO NETWORK BANK DEFENDANTS

*Bank Interrogatory No. 7. Identify all third parties (e.g. TSYS, First Data, etc.) that maintain data for or on your behalf or on which you rely that is responsive to Plaintiffs' Third Set of Document Requests.*

Capital One objected to this interrogatory on the grounds that it is ambiguous, overly broad, unduly burdensome, and irrelevant. These objections are without merit.

TIB agreed to respond but has not done so.

Citi has not responded.

*Interrogatory No. 8. Identify by name all costs that you charge against your revenue from: (a) Interchange Fees and (b) Merchant Discount Fees.*

Bank of America, Chase, Fifth Third, FNBO, Suntrust, TIB, National City, Wachovia, Washington Mutual, and Wells Fargo agreed to produce documents pursuant to 33(d), to the extent reasonably accessible, reflecting each respective bank's costs, as regularly accounted for by the bank, in connection with its credit and debit card business. None of the banks have identified responsive documents pursuant to 33(d).

Fifth Third and Wells Fargo also objected that the term "costs" is vague and ambiguous. Plaintiffs do not believe either of these terms is ambiguous. If Fifth Third and/or Wells Fargo can clarify the nature of the ambiguity, we can discuss it further on the meet-and-confer.

Chase also objected that the information is covered by Document Requests 10 and 11 of the Third Request. This is an inappropriate objection. Chase further represented that "samples" of responsive documents were enclosed with Greene's 11/17/06 and 1/23/07 letters. This is insufficient to satisfy 33(d) which requires the specific location and identity of responsive documents.

Citigroup, Capital One and HSBC: have not adequately responded to this interrogatory.

Counsel for Defendants                                          February 13, 2008
Page 15 of 18

## CLASS PLAINTIFFS' FOURTH SET OF OMNIBUS DISCOVERY TO BANK DEFENDANTS

All Bank Defendants objected to all interrogatories in the fourth set on the grounds that they are overbroad, vague and ambiguous, unduly burdensome, duplicative and/or irrelevant. General and conclusory objections such as these are insufficient to exclude discovery of the information Plaintiffs request. *Melendez v. Greiner*, 2003 U.S. Dist. LEXIS 19084 at *4 (S.D.N.Y. 2003); *Convermat Corp. v. St. Paul Fire & Marine Ins. Co.,* 2007 U.S. Dist. LEXIS 69102 at *4 (E.D.N.Y. 2007). Defendants must clarify and explain the propriety of their objections. *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997). Moreover, an objection claiming an interrogatory is unduly burdensome "must be considered waived" if it is not "stated with specificity." *Convermat Corp*, 2007 U.S. Dist. LEXIS 69102 at *4 *quoting Nagele v. Elec. Data Sys. Corp*., 193 F.R.D. 94, 111 (W.D.N.Y. 2000). Conclusory objections that interrogatories are duplicative without specifically referring to other requests are similarly improper and will not be addressed here.

Many Bank Defendants, in addition to the general objections described above, objected to Interrogatories 5 and 6 on the grounds that they are premature and call for legal conclusions when legal claims and defenses in this action are not fully developed. This objection is without merit as neither interrogatory seeks legal conclusions, but rather factual information. The remaining objections Defendants raised are similarly meritless, as described below.

Accordingly, Plaintiffs are entitled to responses to the following Interrogatories:

*Interrogatory No. 5. Identify with particularity and by Card Product each cost item that You contend justifies the Interchange Rates or the Merchant Discount Rates for Visa or MasterCard Product transactions. Please answer this interrogatory separately for Interchange Rates and Merchant Discount Rates. For each cost item that You identify, provide a complete definition of that cost item.*

   Bank of America and Wells Fargo, in addition to the general objections described above, objected that the term "cost item" is vague and ambiguous. Bank of America also objected that the term "justifies" is vague and ambiguous. Plaintiffs do not believe either of these terms is ambiguous. If Bank of America and/or Wells Fargo can clarify the nature of the ambiguity, we can discuss it further on the meet-and-confer.

   Bank of America also objected that this interrogatory is duplicative of interrogatory number 48 of the first set and 8 of the third set.

Counsel for Defendants                                        February 13, 2008
Page 16 of 18

- Interrogatory No. 48 requests identification of the persons principally responsible for coordinating or managing research and business planning of each bank's card issuing business and merchant-acquiring business. An answer to that interrogatory will not sufficiently answer interrogatory No. 5.

- No. 8 of the third set requests that the banks identify by name all costs they charge against revenue from interchange fees and merchant discount fees. Bank of America has not adequately responded to Interrogatory 8 and the information sought from both interrogatories remains outstanding.

Chase and Wells Fargo, in addition to the general objections described above, objected that this interrogatory is duplicative of Interrogatory Nos. 10, 22, 27 (first set); 8 (third set).

- No. 10 requests business justifications for each interchange fee applied to each merchant category. As set forth in the discussion of the first set of discovery requests above, all Bank Defendants have refused to answer interrogatory No. 10. Accordingly, even if it were duplicative, the information sought remains outstanding.

- No. 22 seeks the interchange fee that applied to each type of credit or debit card and the business justifications for the different rates. As set forth in the discussion of the first set of discovery requests above, Plaintiffs have not received an adequate response from any defendant to this interrogatory, and the information sought remains outstanding.

- No. 27 requests that the banks identify by Bates numbers all studies, reports, and analyses of the costs or other components of interchange fees, the value or benefit (if any) of interchange fees, any change in the amount of interchange fees, the elimination of interchange fees, whether interchange fees promote or reduce competition in any market or business segment or industry, and/or whether interchange fees provide benefits or burdens to cardholders or people who do not have cards. That interrogatory seeks the identification of studies, reports, etc. of components of interchange fees while interrogatory No. 5 of the fourth set seeks identification of cost items. Thus, the information sought remains outstanding.

- No. 8 of 3rd set: Plaintiffs have not received adequate responses to this interrogatory. *See* discussion above.

Counsel for Defendants                                          February 13, 2008
Page 17 of 18

*Interrogatory No. 6. Identify each and every benefit that You contend each of Your Card Products confers upon Merchants and identify the name of the person or people at Your company most knowledgeable about the foregoing contention. Please answer this interrogatory separately for each of Your Card Products.*

Bank of America and Wells Fargo, in addition to the general objections described above, objected that the terms "benefit" and "most knowledgeable" are vague and ambiguous. Plaintiffs do not believe either of these terms is ambiguous. If Bank of America and/or Wells Fargo can clarify the nature of the ambiguity, we can discuss it further on the meet-and-confer.

*Interrogatory No. 7. Identify every Merchant who cancelled or stated in substance that it might cancel a Visa or MasterCard acceptance agreement, the date of that cancellation and identify the Bates numbers of all Documents reflecting or referring to that conduct*

Bank of America, Chase, Citigroup, Fifth Third, FNBO, HSBC, Barclays, TIB, Wachovia, Washington Mutual, and Wells Fargo, in addition to the general objections described above, objected that this interrogatory imposes a burden beyond what is required by the rules, in that it requests identification of responsive documents by Bates number. This is an inappropriate objection as the Bank Defendants should have already produced the documents referenced by this interrogatory, and any documents produced have already been Bates stamped.
Chase and Wells Fargo also objected to the interrogatory as unduly burdensome because it seeks information concerning the business and operations of Visa and/or MasterCard which is more readily available from Visa and/or MasterCard. This objection is misguided. The acceptance agreements referenced in the interrogatory are agreements between an acquiring bank and a merchant to accept credit cards, not solely agreements between merchants and the networks, if any.

*Interrogatory No. 8. Identify every Merchant who informed You in words or substance that it would not longer accept a Visa or MasterCard Card Product at its stores, state the date of that notice and identify the Bates numbers of all Documents reflecting, referring or relating to that Merchants' notice that it would no longer accept a Visa or MasterCard Card Product.*

Bank of America, Chase, Citigroup, Fifth Third, FNBO, HSBC, Barclays, TIB, Wachovia, Washington Mutual, and Wells Fargo, in addition to the general objections described above, objected that the interrogatory imposes a burden beyond what is required by the rules, in that it requests identification of responsive documents by Bates number .This is an inappropriate objection as the

Counsel for Defendants                                    February 13, 2008
Page 18 of 18

Bank Defendants should have already produced the documents referenced by this interrogatory, and any documents produced have already been Bates stamped. Chase, Citigroup and Wells Fargo also objected that the interrogatory seeks documents more appropriately requested from Visa and/or MasterCard. This objection is inappropriate on its face and also because the interrogatory asks for information obtained from communications between Merchants and the respective Bank Defendants, not the networks.

We request a meet-and-confer to address these issues within the next two weeks.

Sincerely,

DENNIS STEWART
DS/smm

# HULETT HARPER STEWART
### LLP

*550 West C Street, Suite 1600*
*San Diego, California 92101*
*office 619.338.1133*
*fax 619.338.1139*



Mar 13 2008
8:06PM

March 13, 2008

## <u>VIA LEXIS-NEXIS FILE & SERVE</u>

Counsel for Defendants
See attached Service List

Re:  *In re Payment Card Interchange Fee Antitrust Litigation*
     *MDL No. 1720*

Dear Counsel:

I write to follow up on my February 13, 2008 letter to all Defense Counsel in which I requested a meet and confer within two weeks regarding deficient interrogatory responses. To date, other than a brief conversation with Matt Eisenstein who indicated Visa would respond to my letter in writing, I have not received a response - written or otherwise - from any Defendant.

Sincerely,

DENNIS STEWART
DS/smm

**MORRISON** | **FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY  10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

19049261

Mar 18 2008
6:25PM

March 18, 2008

Writer's Direct Contact
212.468.8009
MBMiller@mofo.com

**HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

**By Lexis-Nexis File & Serve**

Dennis Stewart, Esq.
Hulett Harper Stewart LLP
550 West C Street, Suite 1600
San Diego, California  92101

Re:     *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*
        MDL 1720

Dear Dennis:

I write on behalf of the Bank Defendants in response to your letter of February 13, 2008,
which discusses certain interrogatories for which you claim the Bank Defendants' responses
are insufficient.  We first address several overarching matters, and thereafter provide our
responses to each of the purported "deficiencies" raised in your letter.  As to your request for
a meet-and-confer, we are willing to engage in further discussions but ask that you first
consider the information herein and determine, on that basis, if you have remaining questions
or concerns.

**Overarching Matters**

    **A.     Rule 33(d) Responses**

Your complaints based on Rule 33(d) responses were resolved well over a year ago during
the meet-and-confer process and in subsequent motion practice before Magistrate Judge
Orenstein.  Specifically, in the meet-and-confer sessions in the Fall of 2006 the parties
reached compromise solutions in connection with a number of interrogatories.  With respect
to other interrogatories, however, the Bank Defendants made clear that many of the
interrogatories call for the Banks to 'identify documents' related to various topics, and, as
such, are merely document requests that plaintiffs have chosen to style as interrogatories.
They are therefore an improper attempt to foist burdens on the Banks that would not apply if

ny-803932

**MORRISON** | **FOERSTER**

Dennis Stewart, Esq.
March 18, 2008
Page Two

the requests were properly labeled as document requests. *See* Letter from E. Grush to K.C. Wildfang, B. Sweeney and H. L. Montague, Jr. (Sept. 1, 2006).

In the handful of instances where plaintiffs insisted that they needed the Bank Defendants to identify specific documents,[1] plaintiffs moved to compel responses. *See* Letter from H. Montague to J. Orenstein (Oct. 26, 2006). The Court resolved those disputes, *see* 11/7/2006 Order, or the parties resolved their disputes with a compromise solution, *see generally*, Letter from M. Kane to Bank Defendants' Counsel (May 22, 2007); Email from E. Grush to M. Kane (June 7, 2007); and Letter from E. Grush to M. Kane and W. Blechman (Sept. 7, 2007). In the eight months between resolution of the last of these compromise solutions and your letter of February 13, 2008, the Bank Defendants provided supplemental interrogatory responses as agreed in the parties' compromise solutions.

Now, for the first time, you demand that we provide Bates numbers in response to certain additional interrogatories. They are: interrogatory 28 from the First Set, 6, 8, 9 and 10 from of the Second Set, 8 from the Third Set, and 7 and 8 of the Fourth Set. In addition to the fundamental unfairness in seeking to undo the parties' previous agreements, your request would require us to search through our custodial productions (now comprising tens of millions of pages) to provide Bates numbers a task that, we are no better situated to complete than plaintiffs are. Indeed, we can think of no legitimate reason that would require us to take on such a time-consuming and expensive process after more than a year has passed since our objections and more than eleven months have passed since we substantially completed our productions.

Interrogatories 6, 8, 9 and 10 of the Second Set are interrogatories that ask the Bank Defendants to list the documents already subject to a document request contained in a parallel request for document production. Whether Bank Defendants would identify Bates ranges responsive to particular document requests was the subject of extended discussion between the parties. *See generally* Letter from E. Grush to K.C. Wildfang, B. Sweeney and H. L. Montague, Jr. (Sept. 1, 2006); Letter from M. Kane to Bank Defendants' Counsel (May 22, 2007); Email from E. Grush to M. Kane (June 7, 2007); and Letter from E. Grush to M. Kane and W. Blechman (Sept. 7, 2007). As the correspondence shows, the parties ultimately agreed that Bates ranges of produced documents had to be provided only for a very limited number of interrogatories. On that basis, the Bank Defendants served their supplemental responses identifying the Bates ranges of responsive documents to the affected interrogatories in the summer of 2007. Your new requests for Bates ranges are accordingly unfounded.

---

[1] The interrogatories directed to the Bank Defendants that were the original subject of Plaintiffs' motion to compel were interrogatories 3, 31, 32, 33, and 38. The parties resolved their differences as to interrogatories 3, 32 and 38 before the motion was heard by the Court. Therefore, the only Interrogatories directed at the Bank Defendants for which the Court resolved the dispute were interrogatories 31 and 33.

MORRISON | FOERSTER

Dennis Stewart, Esq.
March 18, 2008
Page Three

Further, to the extent that it appears that the Network Defendants have in fact responded to an Interrogatory to which plaintiffs claim they have not, the Bank Defendants will not agree to respond until plaintiffs have determined that the Network Defendants' response is indeed incomplete.  In fact, you have previously agreed to seek this information directly from the Networks and not from the Bank Defendants because (i) the Network Defendants have the information you seek, (ii) the Bank Defendants do not, and (iii) requiring the Bank Defendants to conduct the sort of investigation that would be required to provide even partial responses to these interrogatories would impose an undue burden on the Bank Defendants for no purpose.

### B.    Verifications

We acknowledge the request in your letter that Bank Defendants verify their prior interrogatory responses for which we agreed to provide Bates numbers or to verify the response of the Networks to interrogatories 5 and 7 of the First Set.  We are willing to discuss this request further, but we note that Class and Individual Plaintiffs have not yet verified their responses to some of defendants' interrogatories.  For example, on October 22, 2007, many Class Plaintiffs served letters, without verification, providing Bates numbers in response to certain of the defendants' interrogatories.  Although we do not object to your request generally, any agreement on the scope and timing of verification will need to be reciprocal, and involve all Class and Individual Plaintiffs.

We ask that you keep the foregoing preliminary matters in mind as we provide our position on each interrogatory raised in your letter.

## Specific Interrogatories

### Interrogatories Nos. 5 and 7 (Plaintiffs' First Set)

Your letter requests that the Bank Defendants each verify the information provided by the Networks in response to Network Interrogatories 1 and 5.  We agreed to do so during the meet and confer process and we will do so under separate cover once the Networks provide their revised lists.  *See* Letter from S. Lee to D. Stewart (March 14, 2008) and Letter from M. Freimuth to D. Stewart (March 18, 2008).

### Interrogatory No. 10 (Plaintiffs' First Set)

Interrogatory No. 10 is a contention interrogatory.  As we have informed you previously, we will respond to this interrogatory, but only at the time we respond to plaintiffs' other

**MORRISON** | **FOERSTER**

Dennis Stewart, Esq.
March 18, 2008
Page Four

contention interrogatories. *See* Letter from E. Grush to M. Kane and W. Blechman (Sept. 7, 2007).

Interrogatories Nos. 17, 19, 20, 21, 23 and 24 (Plaintiffs' First Set)

According to your letter, Bank Defendants "agreed to provide verified responses as to any non-default interchange fees or non-default merchant categories." You also state that "[i]f Bank Defendants have not utilized a non-default interchange fee please confirm so in a verified response" or "produce a verified response identifying each instance in which a Bank Defendant has utilized a non-default interchange fee." We agreed to do so during the meet and confer process and we will do so under separate cover.

Interrogatory No. 28 (Plaintiffs' First Set).

According to your letter, the Network Defendants have not specifically identified the responsive documents described in this request. However, according to the Networks they have produced and identified documents in accordance with an agreement during the meet and confer process. *See* Letter from J. Rottenberg to G. Friedman (Aug. 18, 2006); *see also* Letter from S. Lee to D. Stewart (March 14, 2008) and Letter from M. Freimuth to D. Stewart (March 18, 2008). Therefore, it is not necessary for the Bank Defendants to respond further.

*See also* discussion *supra*, at Part A.

Interrogatory No. 6 (Plaintiffs' Second Set).

Your letter claims that the Network Defendants agreed to respond to this interrogatory and have failed to do so. Therefore, you assert that the Bank Defendants "must either provide a complete narrative response or specify the location and identity of responsive documents pursuant to LCR 33.1 and FRCP 33(d). However, as reflected in Class Plaintiffs' letter of August 4, 2006, the parties agreed that Network Defendants' production in response to Document Request Nos. 2 and 4 would satisfy this interrogatory. *See* Letter from G. Freidman to J. Rottenberg (Aug. 4, 2006). Therefore, it is not necessary for the Bank Defendants to respond further.

*See also* discussion *supra*, at Part A.

Interrogatory No. 8 (Plaintiffs' Second Set)

Acquiring Bank Defendants agree to respond to this request, and we will do so under separate cover.

ny-803932

MORRISON | FOERSTER

Dennis Stewart, Esq.
March 18, 2008
Page Five

Interrogatory No. 9 (Plaintiffs' Second Set).

We have already responded to this interrogatory, via our agreement to produce documents concerning business-related polls on this issue. *See* Letter from E. Grush to G. Friedman (Aug. 24, 2006). The Bank Defendants never agreed to specify Bates numbers in response to this interrogatory. Plaintiffs did not raise any prior objection to that approach during the meet-and-confer process.

*See also* discussion *supra*, at Part A.

Interrogatory No. 10 (Plaintiffs' Second Set).

We have already responded to this interrogatory, via our agreement to produce documents concerning communications concerning the so-called "Anti-Steering Restraints" with any consumer rights organization, public relations firm, or similar third-party that such Bank has paid for services, excluding lobbying activities. *See* Letter from E. Grush to G. Friedman (Aug. 24, 2006). The Bank Defendants never agreed to specify Bates numbers in response to this interrogatory. Plaintiffs did not raise any prior objection to that approach during the meet-and-confer process

*See also* discussion *supra*, at Part A.

Interrogatory No. 7 (Plaintiffs' Third Set)

Contrary to your letter, the Citigroup Defendants have provided the requested information as part of the meet and confer process with respect to data.

Interrogatory No. 8 (Plaintiffs' Third Set)

According to your letter, "Bank of America, Chase, Fifth Third, FNBO, SunTrust, TIB, National City, Wachovia, WaMu, and Wells Fargo agreed to produce documents pursuant to 33(d) to the extent they were reasonably accessible, reflecting each respective Bank's costs, as regularly accounted for by the Bank, in connection with its credit and debit card business."

The Third Set has been the subject of a meet and confer process with plaintiffs regarding data. We refer you to those discussions, which have been proceeding on an individualized basis with particular Bank Defendants.

ny-803932

**MORRISON | FOERSTER**

Dennis Stewart, Esq.
March 18, 2008
Page Six

Class Plaintiffs' Fourth Set of Omnibus Discovery to Bank Defendants

As previously stated, the Bank Defendants are willing to represent that they have conducted a reasonable and diligent search for documents called for by the overlapping requests in the First, Second, and Third Sets.  Because of the nature of the overlap between the requests from plaintiffs' Fourth Set and the numerous requests from the First, Second, and Third Sets, and because we believe that the search-term protocol has captured relevant documents, we believe that these requests from the Fourth Set should be withdrawn.  *See* Letter from M. Miller to J. Almon, June 25, 2007.  Moreover, plaintiffs' assertion that "[c]onclusory objections that are duplicative without specifically referring to other requests" are improper is unreasonable.  We address your claims as to each interrogatory enumerated in your February 13 letter below.

Interrogatories Nos. 5 and 6 (Plaintiffs' Fourth Set)

The Bank Defendants maintain their objections to these interrogatories.  *See* Letter from M. Miller to J. Almon, June 25, 2007.

Interrogatories Nos. 7 and 8 (Plaintiffs' Fourth Set)

The Bank Defendants maintain their objections to these interrogatories.  *See* Letter from M. Miller to J. Almon, June 25, 2007.

\*     \*     \*

Please contact me to discuss any issues after you have considered the points raised in this letter.

Sincerely,

*Michael Miller* /satt

Michael B. Miller

cc:    All Defense Counsel (via LexisNexis File &Serve)

ny-803932

**H U L E T T   H A R P E R   S T E W A R T**

——————— *L L P* ———————

5 5 0   W E S T   C   S T R E E T ,   S U I T E   1 6 0 0
S A N   D I E G O ,   C A   9 2 1 0 1
T E L :   ( 6 1 9 )   3 3 8 - 1 1 3 3
F A X :   ( 6 1 9 )   3 3 8 - 1 1 3 9
W W W . H U L E T T H A R P E R S T E W A R T . C O M

Mar 28 2008
6:05PM

March 28, 2008

                                                      **VIA LEXIS-NEXIS FILE & SERVE**

Michael B. Miller
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Dear Mr. Miller:

I write regarding the Bank Defendants' deficient responses to certain interrogatories. As you will recall, I sent a lengthy letter to all Defendants on February 13, 2008, specifically setting forth deficiencies in Defendants' interrogatory responses, and requesting a meet and confer within two weeks. On March 13, having no response, I sent a follow up letter. I received your written response on behalf of the Bank Defendants on March 18 and this letter addresses the points you raised in that letter. If you feel a further meet and confer is necessary, we request that it take place by Friday, April 4 at the latest.

Before addressing the specific interrogatories at issue, I would first like to make clear that the parties came to no "compromise solutions," or "agreements" as your letter implies, regarding the interrogatories mentioned in our letter. Indeed, the interrogatories at issue here are not mentioned at all in any of the letters or court orders you cite. Thus, Plaintiffs are not "undoing" any previous agreements by seeking responses to the interrogatories as you suggest.

Moreover, the Federal Rules of Civil Procedure do not impose any specific time frame within which Plaintiffs are required to object to Defendants' objections. It was completely appropriate for Plaintiffs to review the documents produced, and evaluate the need for further specification. After review, we are requesting that the Bank Defendants properly respond only to those interrogatories where a response is required.

I would also like to clarify that Plaintiffs do not "demand" that Defendants identify responsive documents by Bates number for those interrogatories where they choose to provide a Rule 33(d) response in lieu of a narrative response. Rather, we demand that the

Michael B. Miller
March 28, 2008
Page 2

Bank Defendants comply with their obligations under Rule 33(d) and Local Rule 33.1, which require that you specify documents in sufficient detail to permit us to locate and identify the records from which the answer may be ascertained "as readily as the responding party could."

Regarding interrogatories which we initially agreed the Bank Defendants could defer pending the Network Defendants' response, we have not received complete responses from the Networks and are now at an impasse on certain of those interrogatories. Accordingly, Plaintiffs now seek responses from the Bank Defendants for the following interrogatories: 12, 13, 19, 20, 21, 22, 23, and 28 (Plaintiffs' First Set). *See* my letters to Susan Lee and Matthew Freimuth dated March 25, 2008. Plaintiffs request a response to these interrogatories by April 15, 2008.

Plaintiffs agree to pursue responses to interrogatories in the Third Set in their individual data negotiations with each Bank Defendant. Plaintiffs reject your request to withdraw the interrogatories for the Fourth Set. As set forth in my February 13 letter, these interrogatories request information not covered by previous discovery requests.

With respect to the responses you have agreed to provide under separate cover, Plaintiffs request that you do so by April 10, 2008. Please let me know if you are able to complete your responses by this date. Based on your letter, this includes verified responses to Interrogatory Nos. 17, 19, 20, 21, 23, and 24 (Plaintiffs' First Set), identifying each instance in which a Bank Defendant has utilized a non-default interchange fee and/or non-default merchant category; and a response to Interrogatory No. 8 (Plaintiffs' Second Set).

**Specific Interrogatories**

**Interrogatory No. 4. (Plaintiffs' First Set)**
**Identify whether you are currently a member of the Visa and/or the MasterCard Networks and identify all of the years you have been a member of either Network, respectively.**

Your letter does not address the fact that responses from National City, Wachovia, and Suntrust remain outstanding for this interrogatory.

**Interrogatory No. 10 (Plaintiffs' First Set)**
**Describe each business justification for each of your Interchange Fees identified in your answer to Interrogatory No. 9 (Identify the Interchange Fee applied to each of the Merchant categories you utilized from 1992 to the present).**

We reject your proffered excuse for the defective response. Plaintiffs reiterate that this is not a contention interrogatory as it seeks factual information and does not ask that Defendants relate facts to a legal theory. *See ThermoSpas, Inc. v. AOC, LLC*, 2007 U.S. Dist. LEXIS 84859 (D. Conn. 2007).

Michael B. Miller
March 28, 2008
Page 3

**Interrogatory Nos. 5-6 (Plaintiffs' Fourth Set)**
**No. 5.   Identify with particularity and by Card Product each cost item that You contend justifies the Interchange Rates or the Merchant Discount Rates for Visa or MasterCard Product transactions.   Please answer this interrogatory separately for Interchange Rates and Merchant Discount Rates.   For each cost item that You identify, provide a complete definition of that cost item.**

**No. 6.   Identify each and every benefit that You contend each of Your Card Products confers upon Merchants and identify the name of the person or people at Your company most knowledgeable about the foregoing contention.   Please answer this interrogatory separately for each of Your Card Products.**

We reject your proffered excuse for the defective response.  Plaintiffs reiterate that these are not contention interrogatories as they seek factual information and do not ask that Defendants relate facts to legal theories. *See ThermoSpas, Inc. v. AOC, LLC*, 2007 U.S. Dist. LEXIS 84859 (D. Conn. 2007).

**Interrogatory Nos. 7-8 (Plaintiffs' Fourth Set)**
**No. 7.   Identify every Merchant who cancelled or stated in substance that it might cancel a Visa or MasterCard acceptance agreement, the date of that cancellation and identify the Bates numbers of all Documents reflecting or referring to that conduct.**

**No. 8.   Identify every Merchant who informed You in words or substance that it would not longer accept a Visa or MasterCard Card Product at its stores, state the date of that notice and identify the Bates numbers of all Documents reflecting, referring or relating to that Merchants' notice that it would no longer accept a Visa or MasterCard Card Product.**

We reject your proffered excuse for the defective response.  Your June 25, 2007 letter to James Almon, which you incorporate by reference into your March 18, 2008 letter, cites no specific interrogatories of which these interrogatories are purportedly duplicative.  Nor do any of the Defendant Banks' responses.  Your failure to identify the assertedly duplicative interrogatories has precluded a meaningful discussion on this issue.  Moreover, it is improper to generally cite documents already produced as a response to an interrogatory. *See PulseCard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 305 (D. Kan. 1996).

Sincerely,

DENNIS STEWART
DS/smm

**MORRISON** | **FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

19283219

Apr 4 2008
6:17PM

April 4, 2008

Writer's Direct Contact
212.468.8009
MBMiller@mofo.com

## HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

## By Lexis-Nexis File & Serve

Dennis Stewart, Esq.
Hulett Harper Stewart LLP
550 West C Street, Suite 1600
San Diego, California 92101

Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*
      MDL 1720

Dear Dennis:

I write on behalf of the Bank Defendants in response to your letter of March 28, 2008. The
Bank Defendants are still in the process of discussing some of the issues you have raised, and
I expect to be able to respond to your letter on Monday.

Sincerely,

Michael Miller /satt

Michael B. Miller

cc:   All Defense Counsel (via LexisNexis File &Serve)

**MORRISON** | **FOERSTER**

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER,
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

19304710

Apr 7 2008
6:59PM

April 7, 2008

Writer's Direct Contact
212.468.8009
MBMiller@mofo.com

**HIGHLY CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

**By Lexis-Nexis File & Serve**

Dennis Stewart, Esq.
Hulett Harper Stewart LLP
550 West C Street, Suite 1600
San Diego, California  92101

Re:  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*
MDL 1720

Dear Dennis:

I write on behalf of the Bank Defendants in response to your letter of March 28, 2008, which discusses the Bank Defendants' responses to certain interrogatories.  Before addressing the specific interrogatories raised in your letter, we will address the more general points raised in your letter.

*First*, your assertion that the parties came to no compromise solutions or agreements as to certain interrogatories is simply incorrect.  In the Fall of 2006 and the Summer of 2007, the parties met repeatedly to discuss the status of the discovery that is now the subject of your more recent correspondence.  During those in-person meetings, the parties went through each and every document request and interrogatory, and reached a number of compromise solutions.  Although the agreements as to some of the interrogatories that you raise issue with in your February 13, 2008 letter were not memorialized in follow-up written communications, they were in fact discussed at length and agreed upon in one or more meet and confer sessions with your colleagues, many of which took place well over a year prior to your more recent involvement in this exchange of correspondence.

Further, contrary to your March 28 letter, whether Bank Defendants would identify Bates ranges responsive to particular document requests was the subject of extended discussion between the parties.  *See generally* Letter from E. Grush to K.C. Wildfang, B. Sweeney and H. L. Montague, Jr. (Sept. 1, 2006); Letter from M. Kane to Bank Defendants' Counsel (May 22, 2007); Email from E. Grush to M. Kane (June 7, 2007); and Letter from E. Grush to M.

**MORRISON | FOERSTER**

Dennis Stewart, Esq.
April 7, 2008
Page Two

Kane and W. Blechman (Sept. 7, 2007). It also was the subject of motion practice before the Court. *See* 11/7/2006 Order. As the record shows, the parties ultimately agreed and/or the Court ordered that Bates ranges of produced documents had to be provided only for a very limited number of interrogatories. On that basis, the Bank Defendants served their supplemental responses identifying the Bates ranges of responsive documents to the affected interrogatories in the summer of 2007. Your new requests for Bates ranges are accordingly unfounded. As previously stated, your request would require us to search through our custodial productions to provide Bates numbers, a task that we are no better situated to complete than plaintiffs are.

*Second*, it is our understanding that your colleagues are continuing to confer with the Network Defendants on their responses to the various interrogatories noted on page 2 of your letter. To the extent a response to any of these interrogatories is warranted at this late stage (which we do not concede), it would make more sense to have the networks, not the Bank Defendants, provide responsive information. In any event, pursuant to our earlier agreements, these discovery requests are not ripe for discussion until plaintiffs' meet and confer sessions with the networks have been completed.

*Third*, with respect to the responses that we agreed to provide in our March 18, 2008 letter, the Bank Defendants will endeavor to do so by April 30, 2008.

## Specific Interrogatories

Interrogatory No. 4 (Plaintiffs' First Set)

National City, Wachovia and Suntrust will respond to this interrogatory under separate cover on the timetable noted above.

Interrogatory No. 10 (Plaintiffs' First Set)

The Bank Defendants maintain their objection to this Interrogatory because it is a contention interrogatory. We will respond to this interrogatory, but only at the time we respond to plaintiffs' other contention interrogatories. *See* Letter from E. Grush to M. Kane and W. Blechman (Sept. 7, 2007).

Class Plaintiffs' Fourth Set of Omnibus Discovery to Bank Defendants

Contrary to your March 28 letter, the interrogatories in plaintiffs' Fourth Set seek information covered by plaintiffs First, Second and Third Sets of Omnibus Discovery to Bank Defendants. As previously stated, the Bank Defendants are willing to represent that they have conducted a reasonable and diligent search for documents called for by the

**MORRISON | FOERSTER**

Dennis Stewart, Esq.
April 7, 2008
Page Three

overlapping requests in these three earlier sets of discovery.  Because of the nature of the overlap between the requests from plaintiffs' Fourth Set and the numerous requests from the First, Second, and Third Sets, and because we believe that the search-term protocol has captured relevant documents, we believe that documents responsive to interrogatories in the Fourth Set would have already been produced in this case.  We address your claims as to each interrogatory enumerated in your March 28 letter below.

Interrogatories Nos. 5 and 6 (Plaintiffs' Fourth Set)

The Bank Defendants maintain their objections to these Interrogatories because they are contention interrogatories.  Tellingly, both the interrogatories at issue employ the word "contend."  We will respond to these interrogatories, but only at the time we respond to plaintiffs' other contention interrogatories.

Interrogatories Nos. 7 and 8 (Plaintiffs' Fourth Set)

The Bank Defendants maintain their objections to these Interrogatories because documents responsive to these requests would have been produced pursuant to the Bank Defendants' custodial production.  No purpose could be served by forcing the Bank Defendants to conduct yet another review of their productions (a review already taken, among other times, in response to Plaintiffs' previous requests for lists of Bates Numbers responsive to certain requests), and in any event Plaintiffs can conduct such a review just as efficiently as the Bank Defendants can.

Sincerely,

*Michael Miller /eap*

Michael B. Miller

cc:   All Defense Counsel (via LexisNexis File &Serve)

Apr 8 2008
6:27PM

19325941

# H U L E T T   H A R P E R   S T E W A R T
## L L P

5 5 0   W E S T   C   S T R E E T ,   S U I T E   1 6 0 0
S A N   D I E G O ,   C A   9 2 1 0 1
T E L :   ( 6 1 9 )   3 3 8 - 1 1 3 3
F A X :   ( 6 1 9 )   3 3 8 - 1 1 3 9
W W W . H U L E T T H A R P E R S T E W A R T . C O M

April 8, 2008

**VIA E-MAIL AND
LEXIS NEXIS FILE & SERVE**

Michael B. Miller
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050

Re:     *In re Payment Card Interchange Fee and Merchant Discount Antitrust
        Litigation, MDL 1720*

Dear Mr. Miller,

I write in response to yesterday's letter addressing the Bank Defendants' responses to interrogatories. As I stated in my March 28, 2008 letter, the parties came to no compromise solutions or agreements regarding the interrogatories *at issue now*. I can assure you that we have spoken to our colleagues who participated in the negotiations you cite in your letter, and have confirmed that no such agreements were made with respect to the interrogatories at issue.

**Interrogatory No. 10 (Plaintiffs' First Set) and Interrogatory Nos. 5 and 6 (Fourth Set)**

We disagree with your characterization of these interrogatories as contention interrogatories. They seek factual information with respect to the Bank Defendants' business justifications, cost items, and benefits conferred to merchants relating to interchange fees and merchant discount rates.

Michael B. Miller
April 8, 2008
Page 2


**Interrogatories Nos. 7 and 8 (Fourth Set)**

Your portrayal of these interrogatories as duplicative without stating which interrogatories they purportedly duplicate has precluded a meaningful discussion on this issue. Moreover, your statement that responsive documents have already been produced does not answer either interrogatory as narrative responses are required. If your intention is to respond by providing business records in lieu of an answer, you are required to specify such documents "in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought." Local Civil Rule 33.1; F.R.C.P. 33(d).

We assume we are at an impasse unless you inform us otherwise.

Sincerely,

DENNIS STEWART
DS/smm