# Labaton Sucharow

Christopher J. McDonald
Partner
212 907 0861 direct
212 883 7061 fax
email cmcdonald@labaton.com

June 2, 2008

The Honorable James Orenstein
US District Court - Eastern District of New York
225 Cadman Plaza East, Room 456 North
Brooklyn, NY 11201

Re:  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
     Case No. 1:05-MD-1720 (JG) (JO)

Dear Magistrate Judge Orenstein:

We represent plaintiff Capital Audio Electronics, Inc. ("Capital Audio" or the "Company"). We write to oppose defendants' May 28 letter-motion to compel Capital Audio to produce wholesale documents. Defendants claim that Capital Audio's wholesale documents are "plainly relevant." Even assuming the relevance of those documents, that relevance is far outweighed by the burden to Capital Audio in producing them. Moreover, the documents defendants now seek are of marginal significance at best, particularly in light of the other evidence Defendants have already obtained and will obtain through depositions of Capital Audio witnesses.

## Background

Capital Audio is a small, family-run business that sells consumer electronics (televisions, stereo equipment, video cameras, etc.). Abraham Harari is the owner and president, and several members of the Harari family work or have worked there. Its "retail division" is a single storefront on Duane Street in lower Manhattan. *See* http://www.capitalaudio.com/contact.asp. The store accepts Visa, MasterCard, Discover and American Express, and it does not "steer" its retail customers away from using payment cards. *See* Exhibit A at 27:13-22. A few doors down on Duane Street is the Company's "corporate division." From this separate location, Mr. Harari runs a separate wholesale business that sells consumer electronics to retailers in the New York metropolitan area. Potential wholesale purchasers must open an account, which requires a valid Tax ID Number, a Resale Certificate, and sufficient proof that, in fact, there is a physical location where it operates a retail store. Exhibit B ¶ 5. In other words, as a wholesaler the Company engages in business-to-business transactions; payment-card-carrying "consumers" do not and cannot make wholesale purchases.

## Argument

For Capital Audio to gather and produce wholesale documents, the burden will fall inordinately on Mr. Harari's shoulders. Mr. Harari is personally responsible for reviewing all sales to wholesale customers, and he oversees the day-to-day operations of the wholesale business. Critically, the revenue generated by the Company's wholesale operation is of much greater significance to the Company's overall profitability than the sales by the retail division. Thus, defendants' request will not merely result in less-than-productive employee hours during the workday (as was largely the case with the Company's prior document productions, where responsibility could be delegated to subordinates). It will mean that Capital Audio stands to lose a



# Labaton Sucharow

The Honorable James Orenstein
June 2, 2008
Page 2

substantial amount of business (or more precisely, it will lose even more business than the Company already has resigned itself to losing by agreeing to have Mr. Harari sit for a deposition). Nor is it the case that Mr. Harari can simply search for relevant documents on weekends. He is an observant Jew who closes the store two hours before sunset on Fridays, observes the Sabbath and regularly works on Sundays. Exhibit B ¶¶ 7-9.

Defendants argue that Capital Audio's claim of burden "lacks merit" because defendants have undertaken "substantial" discovery burdens and plaintiffs "have long represented that they are willing and able to assume the necessary burden and cost of prosecuting their claims." But the relative burden this action has placed on Capital Audio already is at least as great if not greater than on any defendant. To date the Company has sacrificed several weeks of employee time in searching for and copying thousands of pages of documents, participating in interviews with plaintiffs' counsel or otherwise responding to their many questions, responding to defendants' written interrogatories, and preparing for, participating in and reviewing the transcripts of depositions. The Company only has about 20 employees. Two have already been deposed, Mr. Harari has agreed to be deposed, and defendants have indicated that they may seek to depose the retail store's cashier, a Polish immigrant with limited command of the English language. That amounts to 15 and perhaps 20 percent of the Company's workforce and includes its senior executive and primary revenue generator. Which defendant can say that?

Also, defendants have failed to articulate any need for documents that might be produced as a result of forcing the Company to engage in an extensive search of its wholesale documents. They state that documents are needed to debunk an allegation plaintiffs have made that merchants "are unable to undertake certain 'steering' practices, and further that merchants cannot operate their business without accepting Visa and MasterCard cards." Defs. Ltr. at 2. But how Capital Audio accepts payment for bulk *business-to-business* transactions has no relevance whatsoever to the issue of how significant payment cards are to its retail division, a division as to which Capital Audio has already produced thousands of pages of documents. (As we pointed out in prior correspondence with defendants (*see* Defs. Ltr. at Ex. C, at 2-3), defendants' discovery requests are, at core, directed to the retail merchant-retail consumer relationship.) To the extent Capital Audio's business-to-business transactions are relevant, Capital Audio has already provided the information defendants seek through deposition testimony, and has offered to produced additional documents. It would be manifestly unfair for defendants to apply the dynamics at play with the Company's commercial relationships as a wholesaler to the fundamentally different merchant-retail consumer context.

Defendants also seek information concerning "competing payment forms," but Capital Audio has already provided this information to defendants. While the retail store has literally been accepting payment cards for decades (*see* Exhibit A at 33:10-24), the wholesale business historically has accepted cash, checks or money orders. *Id.* at 22: 2-6. Since approximately 2005, a number of wholesale customers have requested to pay for merchandise with credit cards. *See* Exhibit A at 150:23-151:9. Because the Company's retail store has a swipe reader and can process such payments, it has reluctantly accommodated such requests, the result being that

# Labaton
# Sucharow

The Honorable James Orenstein
June 2, 2008
Page 3

the transactions are processed as retail sales, and the proceeds deposited initially into the Company's retail bank account. These payment card sales represent approximately one percent of the Company's wholesale transactions. Exhibit A at 52:9-14. Capital Audio offered to produce to defendants ledgers the Company keeps in the ordinary course of business that capture wholesale transactions in which customers use payment cards. Defendants refused this compromise.[1]

Defendants also claim to seek "policies or practices related to surcharges." But they already have deposition testimony on this point and it is an issue Mr. Harari can also speak to. Because the wholesale division generally does not accept payment cards, the Company's wholesale prices are not marked up to incorporate payment card fees as part of overhead expenses. Accordingly, wholesale customers are informed that if they want the Company to make an exception and process a wholesale transaction with a payment card they will be assessed a fee based on a percentage of the price. *See* Exhibit A at 151:5-153:11; Exhibit B ¶ 12. The ledgers Capital Audio offered to produce to defendants reflect this practice.

Finally, the only reason the Company elected to file suit was because its retail division accepts payment cards, and the Company is still prepared to prosecute claims on behalf of fellow retail merchants. However, given the significance of Mr. Harari and the insignificance of payment cards to the Company's wholesale business, requiring the Company to produce wholesale documents fundamentally alters whether the litigation is worth the effort for Capital Audio. In short, Mr. Harari would rather withdraw and have the Company recede to the rank of absent class member than undertake the significant burden defendants seek to impose. *See* Exhibit B ¶¶ 11, 15. If the Court is inclined to grant defendants' motion, Capital Audio respectfully requests that entry of the order be stayed; we will then file for voluntary dismissal and for the entry of a protective order prohibiting further discovery from Capital Audio.

For all the foregoing reasons, we respectfully request that defendants' motion be denied.

Respectfully submitted,

Christopher J. McDonald

cc: All Counsel of Record via Lexis-Nexis File & Serve

---

[1] In an attempt to resolve this dispute, Capital Audio offered additional documents concerning its wholesale operations. *See* Exhibit C. Defendants refused this compromise as well. *See* Exhibit D.