

Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

September 15, 2008

**Via Electronic File and Lexis File & Serve**
Honorable Magistrate Judge James Orenstein
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 456 North
Brooklyn, New York 11201

> Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 1:05md1720 (JG)(JO)

Dear Magistrate Judge Orenstein:

Pursuant to Fed.R.Civ. P. 26(b)(2)(C), Individual and Class plaintiffs submit this letter in opposition of the motion of defendants JPMorgan Chase & Co. and Chase Bank USA, N.A. (together "Chase") for a protective order precluding the deposition of Chase CEO James L. Dimon. Plaintiffs seek to depose Mr. Dimon based on evidence of his personal involvement in interchange issues and his hands-on management of the credit card business at Chase, one of the largest issuers of credit cards and acquirers in the United States.

Chase has not met its "heavy burden to demonstrate good cause for a protective order." *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984). Chase has failed to submit evidence showing that Dimon has no first-hand or personal knowledge of relevant issues, some of which may be unique. *See, e.g., Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102, 104-05 (S.D.N.Y. 2001) (CEO deposed in antitrust case where he participated in executive committee meetings, received a document that "comes alarmingly close to supporting the plaintiff's claims of monopolistic conduct," and where there was ample evidence of the CEO's "hands-on involvement in various aspects" of the conduct at issue in the case).[1] Here, Dimon's involvement and participation in the conduct at issue is nearly identical to that of the CEO in *Six West*.

Dimon is not only CEO of the largest Visa bank issuer, but is formerly CEO of Bank One before its acquisition by Chase. Like the CEO in *Six West*, Dimon wrote and received several internal e mails that come "alarmingly close" to supporting the claims of monopolistic conduct by defendants.[2] Plaintiffs have the right to obtain Dimon's view on the facts contained in these

---

[1]     The decisions cited by Chase are readily distinguishable. *Reif v. CNA Financial Corp.*, 248 F.R.D. 448, 454 (E.D.Pa. 2008) was an employment discrimination case, where the plaintiff was unable to show any evidence to contradict the CEO's claimed lack of any knowledge as to the termination of the plaintiff or even his employment many, many levels below the CEO. *Harris v. Computer Associates International*, 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) was another employment case where the CEO sought to be deposed had no involvement with the supervision or work conditions of the plaintiff, no involvement with the personnel decisions at issue in the case, and the plaintiff first sought the deposition after the close of discovery. *Zoroufie v. Lance*, 2008 WL 1767729 (W.D.Tenn. 2008) is a breach of contract case where the deposition of the CEO was noticed 15 days before the extended discovery deadline and where the CEO submitted an affidavit that he had no knowledge of the facts at issue in the case and his only contact with the plaintiff was after the project was withdrawn.

[2]     The e mails and other documents evidencing Dimon's personal involvement in the IPOs and other conduct at issue, many of which have not been previously marked at depositions, are submitted to the Court *in camera* as

highly relevant documents, regardless of the testimony of any lower-ranking employee. *See, e.g., Travelers Rental Co., Inc. v. Ford Motor Company*, 116 F.R.D. 140, 146 (D.Mass. 1987) (in an antitrust case, "as the ultimate authority," the CEO's views "may be of far greater probative value on the issue of intent and motive than the view of the lower-level executives"). The testimony of Chase's lower-ranking executives has been insufficient on many of these issues. For example, Card CEO William Campbell's deposition was a model of executive amnesia, where Campbell testified that he did not recall, did not know, did not remember or was not sure of the answer to 291 questions.

Chase has failed to submit an affidavit by Dimon swearing that he has no unique personal knowledge required to meet its heavy burden, as is typical on motions where the movant prevails. *See, e.g., General Star Indemnity Co. v. Platinum Indemnity Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (depositions of CEO and President permitted where no testimonial or other evidence that executives lacked personal information). Here, it is apparent that Dimon has personal and first-hand knowledge – some of which may be unique to him (*see CBS, Inc.,* 102 F.R.D. at 822) – derived from *at least* four meetings with Visa CEO Carl Pascarella on January 14, 2002, in the Fall of 2002, December 16, 2002 and February 13, 2004, as well as additional meetings in 2004 with other Visa executives. *See Spreadmark, Inc. v. Federated Department Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997) (permitting deposition of CEO where some of the meetings attended by the CEO were attended as well by lower-ranking employees).

The record shows that Dimon has far more than an "inkling of the specific day-to-day management decisions" of the Chase card business and the control it exerted over Visa and MasterCard. *See Six West*, 203 F.R.D. at 104. He *made* the decisions, was an active participant in the management of the cards business and was well-informed at every step. This CEO, famous for his "hands-on" management style and attention to detail, ultimately made or approved decisions on the Visa and MasterCard contracts; whether Chase would issue Amex cards; who from Chase would serve on which network board; interchange strategy; network IPO strategy; and the management of major retailer complaints on excessive interchange rates; and directed Chase's participation in the restructuring of Visa and MasterCard. Dimon maintained close scrutiny of the cards business through Monthly Management Reports; Business Reviews; Budget Updates; monthly Business Review meetings and quarterly meetings on investor disclosures with senior card management, and Offsite Operating Committee meetings held several times a year with the Executive Leadership Team. *See* Exhibits 22800 to 22809 to Raymond Fischer Deposition and Fischer testimony on same.

Chase's motion for a protective order avoiding the deposition of this critical witness, who was timely noticed in this case, should be denied. Counsel for plaintiffs has repeatedly assured counsel for Chase that we will make every effort and accommodation with respect to scheduling at Mr. Dimon's convenience.

Respectfully submitted,

Linda P. Nussbaum

---

Exhibits A to U. The documents are submitted *in camera* because, if plaintiffs prevail on the motion, they will become Dimon deposition exhibits and their selection as deposition exhibits is attorney work product.