Page 1

574 F.3d 29, Fed. Sec. L. Rep. P 95,295
**(Cite as: 574 F.3d 29)**

H

United States Court of Appeals,
Second Circuit.
In re FLAG TELECOM HOLDINGS, LTD. SECURITIES LITIGATION
Peter T. Loftin, Norman H. Hunter, and Joseph Coughlin, individually and on behalf of all others similarly situated, Plaintiffs-Appellees,
v.
Andres Bande, Edward McCormack, Edward Mcquaid, Philip Seskin, Daniel Petri, Dr. Lim Lek Suan, Larry Bautista, and Citigroup Global Markets Inc., formerly known as Salomon Smith Barney Holdings Inc., Defendants-Appellants.
**Docket Nos. 07-4017-cv (L), 07-4025-cv (CON).**

Argued: April 23, 2009.
Decided: July 22, 2009.

**Background:** Investors brought securities fraud class action against corporation providing fiberoptic capability to communications carriers, lead underwriter for corporation's initial public offering (IPO), and individual officers of corporation, alleging false registration statement and other false statements that caused artificial inflation of corporation's stock price, and asserting claims under Securities Act and Securities Exchange Act. After dismissal of claims against corporation, 352 F.Supp.2d 429, the United States District Court for the Southern District of New York, William C. Conner, J., 245 F.R.D. 147, certified class, and defendants appealed.

**Holdings:** The Court of Appeals, Sweet, District Judge, sitting by designation, held that:
(1) district court did not abuse its discretion in concluding that typicality requirement for class certification was met, and
(2) investors who sold their stock before alleged corrective disclosures were made did not satisfy typicality or adequacy requirements for class certification.

Affirmed in part and vacated in part.

West Headnotes

**[1] Federal Courts 170B ⚖︎817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; Pleading. Most Cited Cases
In reviewing class certification, Court of Appeals applies abuse of discretion standard to both lower court's ultimate determination on certification, as well as to its rulings that individual requirements for class certification have been met. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Courts 170B ⚖︎776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases

**Federal Courts 170B ⚖︎870.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk870 Particular Issues and Questions
                    170Bk870.1 k. In General. Most Cited Cases
Factual findings underlying district court's class

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

certification ruling are reviewed for clear error, and whether correct legal standard was applied is reviewed de novo. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[3] Federal Courts 170B ⟶817**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; Pleading. Most Cited Cases
Where appeal challenges lower court's grant of class certification, Court of Appeals accords district court noticeably more deference than when it reviews denial of class certification. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⟶164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases
To establish typicality required for class certification, party seeking certification must show that each class member's claim arises from same course of events and each class member makes similar legal arguments to prove defendant's liability. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⟶164**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases
In evaluating adequacy of representation required for class certification, court must consider whether: (1) plaintiff's interests are antagonistic to interest of other class members, and (2) plaintiff's attorneys are qualified, experienced, and able to conduct litigation. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⟶187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
District court did not abuse its discretion in concluding that typicality requirement for class certification was met in securities fraud action despite fact that complaint alleged that artificial inflation of corporation's stock price was based on both false registration statement and post-initial public offering (IPO) actions, even though Securities Act precluded recovery if decline in stock price was due to something other than alleged misstatements concerning pre-sales, while Securities Exchange Act required proof that decline in stock price was due to failure to appropriately disclose reciprocal transactions that took place after initial public offering (IPO); it was possible that decline in stock's value was caused by both alleged fraud relating to reciprocal transactions and alleged misstatements relating to pre-sales found in registration statement. Securities Act of 1933, §§ 11(e), 12(b), 15 U.S.C.A. §§ 77k(e), 77*l*(b); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⟶187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

574 F.3d 29, Fed. Sec. L. Rep. P 95,295
**(Cite as: 574 F.3d 29)**

170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases

Investors who sold their stock before alleged corrective disclosures were made were required to show that it was likely, rather than merely conceivable, that they could establish loss causation in order to satisfy typicality or adequacy requirements for class certification in securities fraud action. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⇌187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases

Investors who sold their stock before alleged corrective disclosures were made did not satisfy typicality or adequacy requirements for class certification in securities fraud action alleging artificial inflation of corporation's stock price, even if it was conceivable that investors could establish loss causation, where there was no evidence that information that leaked into the market before corrective disclosures revealed truth with respect to specific misrepresentations alleged in complaint. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A.

**\*30** Arthur R. Miller, Milberg LLP, New York, NY, (Brad N. Friedman, Matthew A. Kupillas, and Arvind B. Khurana, on the brief) for Plaintiffs-Appellees.

Jerome S. Fortinsky, Sherman & Sterling LLP, New York, NY, (Daniel H.R. Laguardia and Jeffrey J. Resetarits, on **\*31** the brief) for Defendants-Appellants Andres Bande, Larry Bautista, Lim Lek Suan, Edward McCormack, Edward McQuaid, Daniel Petri, and Philip Seskin.

Douglas W. Henkin, Milbank Tweed Hadley & Mc-Cloy LLP, New York, NY, (James N. Benedict, C. Neil Gray, and Kevin M. Ashby, on the brief) for Defendant-Appellant Citigroup Global Markets, Inc.

Before: POOLER, HALL, Circuit Judges, and SWEET, District Judge. FN*

    FN* The Honorable Robert W. Sweet, of the United States District Court for the Southern District of New York, sitting by designation.

SWEET, District Judge:

Defendants Andres Bande, Larry Bautista, Dr. Lim Lek Suan, Edward McCormack, Edward McQuaid, Daniel Petri, and Philip Seskin (the "Individual Defendants") and Citigroup Global Markets Inc. ("Citigroup") (collectively, the "Defendants") appeal from an order of the United States District Court for the Southern District of New York (Conner, J.) certifying the proposed class and appointing Peter T. Loftin, Norman H. Hunter and Joseph Coughlin ("Plaintiffs") to serve as class representatives and Milberg Weiss LLP to serve as class counsel.

This appeal raises issues implicating both the substance of the often overlapping requirements of typicality and adequacy laid out in Rule 23(a) of the Federal Rules of Civil Procedure and the correct standard of proof to be applied by courts in this context. We conclude that while the district court did not abuse its discretion in granting certification of a class encompassing members who allege claims under both the Securities Act of 1933 (the "'33 Act") and the Securities Exchange Act of 1934 (the "'34 Act"), it did err in certifying as members of the class those individuals who sold their stock prior to the February 13, 2002 close of the class period.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

574 F.3d 29, Fed. Sec. L. Rep. P 95,295
**(Cite as: 574 F.3d 29)**

## BACKGROUND

In February 2000, Flag Telecom Holdings, Ltd. ("Flag" or the "Company"), a self-described telecommunications "carriers' carrier" whose business involved the sale of access to its telecommunications network, offered its shares to the public in an initial public offering ("IPO"). *See In re Flag Telecom Holdings, Ltd. Sec. Litig.* ("*In re Flag*"), 245 F.R.D. 147, 151-52 (S.D.N.Y.2007). In the prospectus, which was incorporated into the registration statement filed with the U.S. Securities and Exchange Commission in connection with the IPO, Flag stated that it had obtained $600 million in bank financing and presales of $750 million to construct the Flag Atlantic-1 cable system (the "FA-1 system"), a fiber-optic submarine cable connecting Paris and London to New York.

According to Plaintiffs, despite an over-supply of fiber optic capacity in the market generally, Defendants made various misstatements and omissions in the prospectus and during the two years following the IPO, assuring investors that demand for Flag's cable remained strong. On February 13, 2002, the Company disclosed, *inter alia,* that approximately 14% of the Company's GAAP revenues for the year ending December 31, 2001, were associated with so-called "reciprocal transactions." Described by the lower court as "swaps of telecommunications capacity between competitors," reciprocal sales

> may be entered into for legitimate reasons, i.e. to acquire access on networks ***32** in a market that a company wishes to enter in exchange for capacity that has yet to be sold and is not otherwise in use ("dark fiber") ... [or] can also be utilized by a company seeking to defraud investors or its creditors to create the impression that the company is selling capacity when it is merely unloading useless dark fiber on one of its networks in exchange for useless dark fiber on a competitor's network.

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 352 F.Supp.2d 429, 461 (S.D.N.Y.2005). Following the announcement, Flag stock dropped 46% from its closing price on February 12, 2002, to $0.36 per share on February 13, 2002.

Shortly after, on April 1, 2002, Flag filed its 10-K report for fiscal year 2001, disclosing that the asset value of its FA-1 system was impaired and that it was forced to recognize an impairment charge of $359 million. On April 12, 2002, the Company filed its Chapter 11 bankruptcy petition. Before being canceled pursuant to Flag's court-approved Chapter 11 plan in September 2002, the Company's common stock was trading at $0.002 per share, having traded as low as $0.0001 per share during the bankruptcy.

The first of several securities class actions was filed against Defendants in connection with these events in April 2002. In October 2002, the Honorable William C. Conner consolidated several of the actions and appointed Loftin, who purchased approximately 1.7 million shares of Flag common stock between July 17, 2000, and September 22, 2000, Lead Plaintiff and Milberg Weiss Bershad Hynes & Lerach LLP Lead Counsel. Plaintiffs filed a Consolidated Amended Complaint on March 20, 2003, and a Second Consolidated Amended Complaint on December 1, 2003. Judge Conner dismissed the Second Consolidated Amended Complaint without prejudice, and a Third Consolidated Amended Complaint was filed on April 14, 2004, adding Hunter, who purchased 200 shares of Flag stock in the IPO, as a plaintiff.

Plaintiffs bring the instant action on behalf of those who purchased or otherwise acquired Flag common stock between February 11, 2000, and February 13, 2002 (the "Class Period") for violations of §§ 11, 12(a)(2), and 15 of the '33 Act (the "'33 Act Plaintiffs") and §§ 10(b) and 20(a) of the '34 Act and Rule 10b-5 promulgated thereunder (the "'34 Act Plaintiffs"). Plaintiffs allege that as a result of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendants' materially false and misleading statements in the Company's registration statement, SEC filings, and press releases, the value of Flag stock was artificially inflated during the Class Period. Specifically, the '33 Act Plaintiffs allege that Defendants' statements in the prospectus regarding the FA-1 system and the $750 million in presales were misleading in that certain of the presales were entered into to ensure financing and did not accurately represent profit or demand.[FN1] The '34 Act Plaintiffs allege that the Individual Defendants made false and misleading statements regarding the Company's profitability, most notably by falsely reporting the types of reciprocal sales described above.

> FN1. Citigroup served as the lead underwriter of the IPO, and the Individual Defendants all served as directors or officers of Flag around the time of the IPO.

In an Amended Opinion and Order dated January 23, 2006, Judge Conner denied Defendants' motion to dismiss, holding that Defendants had not satisfied their burden to establish negative causation with respect to the '33 Act Plaintiffs' claims as required by 15 U.S.C. §§ 77k(e) and 77l(b). *See In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 411 F.Supp.2d 377, 383-84 **\*33** (S.D.N.Y.2006). The district court rejected Defendants' argument that since the '33 Act Plaintiffs did not learn of the allegedly misleading pre-sale until after the November 2003 filing of a complaint in a related state court action,[FN2] at which time Flag common stock had been cancelled and was already worthless, none of the decline in the stock's value could be attributed to those misstatements. The court found that Defendants had not "demonstrate[d] that the decline was not due, at least in part, to the alleged misrepresentations concerning pre-sales in Flag's Prospectus, which presumably inflated the price level attained in the IPO and thereby heightened the loss when the price fell virtually to zero." *Id.* at 384. With the court's approval, Plaintiffs filed a Fourth Consolidated Amended Complaint on October 15, 2007.

> FN2. The "*Rahl* Complaint," filed in the Supreme Court of New York State, New York County, on November 19, 2003, by the Trustee of the Flag Litigation Trust, asserts various claims for breaches of fiduciary duties against several defendants, including several of the Individual Defendants named in this action. *See Rahl v. Bande,* 316 B.R. 127 (S.D.N.Y.2004).

In September 2007, the district court granted Plaintiffs' motion for certification pursuant to Fed.R.Civ.P. 23 and appointed Loftin, Hunter, and Coughlin[FN3] class representatives and Milberg Weiss LLP class counsel. Judge Conner defined the certified class as follows:

> FN3. Coughlin, who purchased 250 shares in the IPO on February 23, 2000, and 100 shares in the market on July 3, 2001, brings claims under both the '33 and '34 Acts.

All persons or entities who purchased common stock of Flag Telecom Holdings, Ltd. ("Flag" or the "Company") between March 6, 2000 and February 13, 2002, inclusive, as well as those who purchased Flag common stock pursuant to or traceable to the Company's initial public offering between February 11, 2000 and May 10, 2000, inclusive (collectively, the "Class Period"), but shall exclude: (1) defendants herein, members of each individual defendants' immediate family, any entity in which any defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such extended party; (2) Verizon Communications, Inc.; and (3) entities that had the right to appoint a director to Flag's Board of Directors and proceeded to make such an appointment (or,

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

574 F.3d 29, Fed. Sec. L. Rep. P 95,295
**(Cite as: 574 F.3d 29)**

for reasons unique to them, chose not to exercise such right), such as Dallah Albaraka Holding Company, Telecom Asia Corporation Public Co. Ltd., Marubeni Corporation, the Asian Infrastructure Fund and Tyco International Ltd.

*In re Flag,* 245 F.R.D. at 174. In determining that Plaintiffs had established each of the Fed.R.Civ.P. Rule 23(a) and (b)(3) requirements, the lower court rejected several of Defendants' arguments now before us on appeal.

With respect to the typicality requirement of Rule 23(a)(3), Judge Conner concluded that "the typicality requirement is met because plaintiffs ... like the putative class members, will attempt to prove that they purchased Flag common stock during the Class Period and were injured by defendants' false and misleading representations made in the Registration Statement and throughout the Class Period in violation of the securities laws." *Id.* at 159. In so doing, the lower court rejected Defendants' argument that a "fundamental conflict" exists between the '33 Act and '34 Act Plaintiffs. *Id.* Recognizing that the '33 Act Plaintiffs are subject to a "negative causation" affirmative defense under 15 **\*34** U.S.C. §§ 77k(e) and 77*l* (b), which precludes recovery where defendants can show "that the decline in Flag's stock price was due to something other than the alleged misstatements concerning the pre-sales," while the '34 Act Plaintiffs are required to prove "loss causation," or "that the decline in Flag's stock price was due to, *inter alia,* the failure to appropriately disclose the reciprocal transactions that took place after the IPO," the district court concluded that "the two sets of claims are not antagonistic to each other because proof of one does not negate an essential element of the other." *Id.* at 160.

Judge Conner also rejected Defendants' several challenges to the adequacy of the class representatives. Of particular relevance to Defendants' appeal, the district court found that the class properly included those purchasers who sold their Flag shares before February 13, 2002, the last day of the Class Period and the date on which Plaintiffs allege Flag disclosed the truth behind the alleged misstatements to the public. According to Judge Conner, Plaintiffs sufficiently demonstrated that the truth regarding Flag's financial condition began leaking into the market prior to February 13, 2002. Based on various allegations and an event study submitted by Plaintiffs' expert, the district court held it "conceivable that in-and-out purchasers asserting claims under both the '33 and '34 Act may be able to overcome defendants' affirmative defense of negative causation and prove loss causation, respectively, notwithstanding that the February 13, 2002 announcement is the most critical corrective disclosure." *Id.* at 167.

On September 19, 2007, Defendants sought leave to appeal the district court's grant of Plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(f) and Fed. R.App. P. 5, which we granted on December 12, 2007.

### DISCUSSION

[1][2][3] In reviewing class certification under Rule 23, we apply an abuse-of-discretion standard to both the lower court's ultimate determination on certification, as well as to its rulings that the individual Rule 23 requirements have been met. *In re Initial Pub. Offering Sec. Litig.* ("*In re IPO* "), 471 F.3d 24, 31-32 (2d Cir.2006). The factual findings underlying the ruling are reviewed for clear error, and we review de novo whether the correct legal standard was applied. *Id.* at 40-41. Where, as here, the appeal challenges the lower court's grant of class certification, "we accord the district court noticeably more deference than when we review a denial of class certification." *In re Salomon Analyst Metromedia Litig.,* 544 F.3d 474, 480 (2d Cir.2008) (citation omitted).

Rule 23(a) sets out the requirements for class certification:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). We recently set forth the standard of proof governing class certification as follows:

(1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable ***35** legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement;....

*In re IPO,* 471 F.3d at 41. In a later clarification, we further described "the standard of proof applicable to evidence proffered to meet" the requirements of Rule 23 as a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2d Cir.2008).

[4][5] To establish typicality under Rule 23(a)(3), the party seeking certification must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993). Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). The focus is on uncovering "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). In order to defeat a motion for certification, however, the conflict "must be fundamental." *In re Visa Check/MasterMoney Antitrust Litig.* ("*In re Visa* "), 280 F.3d 124, 145 (2d Cir.2001) (internal quotations and citation omitted), *abrogated in part by In re IPO,* 471 F.3d 24.

**I. Disabling Intra-Class Conflict**

[6] On appeal, Defendants renew their argument that the class suffers from a fundamental conflict rendering it uncertifiable because "success for the '34 Act plaintiffs necessarily precludes recovery by the '33 Act plaintiffs and vice-versa." Citigroup Br. at 31. We do not find, however, that the district court abused its discretion in concluding that the typicality requirement is met in this case despite the conflict described by Defendants. Although Judge Conner did not directly address the conflict issue in connection with the adequacy requirement, we also find that the court did not abuse its discretion in determining that any antagonistic interests with respect to causation do not constitute the type of "fundamental" conflict that renders the class uncertifiable. *See id.*

It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation. *See* 15 U.S.C. § 78u-4(b)(4) ("[T]he plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 128

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

S.Ct. 761, 768, 169 L.Ed.2d 627 (2008) (describing six elements of typical 10(b) claim as "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation"). To prove loss causation, a plaintiff must demonstrate "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir.2005). By contrast, under the '33 Act, it is **\*36** the defendant who bears the burden of demonstrating that something other than the misstatement at issue caused plaintiff's loss. *See* 15 U.S.C. §§ 77k(e), 77*l* (b); *Akerman v. Oryx Commc'ns, Inc.,* 810 F.2d 336, 340-42 (2d Cir.1987) (describing defendants' "heavy burden" of proving negative causation under § 11 of the '33 Act).

As the lower court recognized, we have repeatedly analogized the concept of loss causation to proximate cause. *See, e.g., Lentell,* 396 F.3d at 173 (stating that although "the tort analogy is imperfect," "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor" (emphasis in original)); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 197 (2d Cir.2003) ("We have often compared loss causation to the tort law concept of proximate cause, meaning that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission." (internal quotations and citation omitted)). In relying on this familiar concept, Judge Conner found fault with Defendants' argument which, the court concluded, mistakenly "overlooks that the decline in value of Flag stock may have been caused by *both* the alleged fraud relating to the reciprocal transactions and the alleged misstatements relating to pre-sales found in the Registration Statement." *In re Flag,* 245 F.R.D. at 159-60 (emphasis in original).

Defendants take issue with the lower court's application of proximate cause to the facts here, namely, its conclusion that the decline in value of Flag stock "may have been caused by either or both of [the] alleged acts of deception." *In re Flag,* 245 F.R.D. at 160. They argue that under the Supreme Court's holding in *Dura Pharmaceuticals., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), loss causation and negative causation add up to a "zero-sum game," and that by establishing loss causation, the '34 Act Plaintiffs will necessarily undermine the '33 Act Plaintiffs' ability to rebut Defendants' negative causation defense. Individual Defendants Br. at 20.

We agree with the lower court that the '34 Act Plaintiffs can establish "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff," *Emergent Capital Inv. Mgmt.,* 343 F.3d at 197, without threatening the interests of the '33 Act Plaintiffs to such a degree as to render the certified class representatives atypical or inadequate. *Dura* stands for the proposition that in fraud-on-the-market cases, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." 544 U.S. at 342, 125 S.Ct. 1627, 161 L.Ed.2d 577. Rather, to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events," from disclosures of the truth behind the alleged misstatements. *Id.* at 342-43, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577; *see Lattanzio v. Deloitte & Touche LLP,* 476 F.3d 147, 157-58 (2d Cir.2007) (finding plaintiffs failed to allege sufficient facts to show that defendant's misstatements were the proximate cause of plaintiffs' losses where non-party's misstatements could also have caused the loss and plaintiffs did

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

not "allege[ ] facts that would allow a factfinder to ascribe some rough proportion of the whole loss to [defendant's] misstatements").

Although Defendants have contended to the contrary, it is not inconsistent with **\*37** *Dura* to permit both the '33 and '34 Act Plaintiffs to proceed as a single class in establishing that each of the misstatements alleged in the complaint was the proximate cause of some portion of Plaintiffs' losses. Securities class actions involving more than one misstatement are far from unusual, and both Plaintiffs and Defendants cite several post-*Dura* examples of district courts granting certification where plaintiffs alleged claims under both the '33 and '34 Acts. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.,* 242 F.R.D. 76 (S.D.N.Y.2007); *In re Initial Pub. Offering Sec. Litig.,* 243 F.R.D. 79 (S.D.N.Y.2007); *In re Tyco Int'l, Ltd.,* 236 F.R.D. 62 (D.N.H.2006). Defendants attempt to distinguish these cases from the instant case on the grounds that they "involved allegations of misstatements made in a single document or allegations of a series of misstatements regarding the same subject," while the allegations here involve unrelated misstatements. Individual Defendants Br. at 24-25 n. 19. While the relatedness of the alleged misstatements may be relevant to the typicality inquiry generally, *see, e.g., Robidoux,* 987 F.2d at 936-37, we fail to see how this distinction implicates *Dura.* Defendants point out that "disaggregation requires that a cause be assigned to each piece of a stock price decline and precludes assigning two different causes to the same quantum of loss." Individual Defendants Br. at 22. This is true; however, in every litigation of this type, the pool of money available for each individual class member's recovery is limited to the loss that the individual actually incurred. We see nothing in the record before us that indicates that in these circumstances, where certain plaintiffs are subject to a negative causation affirmative defense, such a requirement precludes the certification of a single class.

In affirming Judge Conner's order with respect to certification of a single class of '33 and '34 Act Plaintiffs, we do not suggest that the issue described by Defendants does not deserve the careful and continued attention of the district court, but merely that it does not inevitably lead at the present time to the decertification of the class. As the lower court recognized, if Plaintiffs are able to prove loss causation with respect to both the '33 and ' 34 Act claims, then it will be necessary for a jury "to determine the extent of harm caused by each [misstatement], and "it is here that the interests of class members could diverge." *In re Flag,* 245 F.R.D. at 160. We are confident in the lower court's wisdom and ability to utilize the available case management tools to see that all members of the class are protected, including but not limited to the authority to alter or amend the class certification order pursuant to Rule 23(c)(1)(C), to certify subclasses pursuant to Rule 23(c)(5), and the authority under Rule 23(d) to issue orders ensuring "the fair and efficient conduct of the action." Advisory Committee Note on Subdivision (d); *see Marisol A. v. Giuliani,* 126 F.3d 372, 379 (2d Cir.1997) (per curiam) (describing "ample tools" available to district court "to fulfill its responsibility" under Rule 23).

## II. In-and-Out Traders

Defendants next argue that the lower court abused its discretion by including as members of the certified class those investors who sold their stock before the February 13, 2002 alleged corrective disclosures were made. Class Representative Hunter, who purchased 200 shares in the IPO and sold them in November 2001, several months before the February 13, 2002 disclosures, is one such purchaser. We consider Defendants' argument with respect to these so-called "in-and-out" traders as implicating the court's authority to define the class, pursuant to Fed.R.Civ.P. **\*38** 23(c)(1)(B), and the typicality and adequacy of representation requirements of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Rule 23(a).

Before addressing whether the lower court erred by certifying in-and-out traders in this case, we must first briefly address Plaintiffs' argument that this issue is not properly before us on Defendants' Rule 23(f) appeal. Rule 23(f) gives this court the authority to "permit an appeal from an order granting or denying class-action certification under this rule." Fed.R.Civ.P. 23(f). Plaintiffs contend that Defendants' argument with respect to the in-and-out traders goes solely to loss causation, a merits issue properly raised in an appeal of a motion to dismiss or summary judgment order, rather than an appeal of an order granting class certification. We do not agree that Defendants' arguments with respect to the in-and-out traders in this context can be so cleanly separated from class certification as to render the issue outside the scope of our Rule 23(f) review.

Given the district court's careful attention to the issue, the lower court clearly considered the in-and-out traders' ability to prove loss causation as relevant to Plaintiffs' certification motion. *See In re Flag,* 245 F.R.D. at 165-68. Under *In re IPO,* lower courts have an "obligation" to resolve factual disputes relevant to the Rule 23 requirements and to determine whether the requirements are met, an obligation "not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." 471 F.3d at 41. To the extent the lower court was required to make factual findings or conclusions of law with respect to any of the Rule 23 requirements, including the definition of the class, those determinations are reviewable here.[FN4] *Id.* at 42 ("[W]e decline to follow the dictum in *Heerwagen [v. Clear Channel Commc'n,* 435 F.3d 219 (2d Cir.2006) ], suggesting that a district judge may not weigh conflicting evidence and determine the existence of a Rule 23 requirement just because that requirement is identical to an issue on the merits.").

FN4. Defendants also seek review of the district court's denial of its motion to dismiss the '33 Act Plaintiffs' claims. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 411 F.Supp.2d 377. According to Defendants, we are permitted under Rule 23(f) to "address issues that should have resulted in the dismissal of some or all claims prior to class certification to the extent that such dismissal would have precluded class certification." Citigroup Br. at 25. We disagree. Defendants' interpretation of the scope of Rule 23(f), even in light of *In re IPO,* goes too far, and we therefore do not reach the lower court's motion to dismiss on this appeal. *See also Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.,* 482 F.3d 372, 380 (5th Cir.2007) (acknowledging that although "[t]he fact that an issue is relevant to both class certification and the merits ... does not preclude review of that issue," "the text of [Rule 23(f) ] makes plain that the sole order that may be appealed is the class certification").

Defendants again rely on *Dura* to argue that any purchaser who sold his or her stock prior to Flag's February 13, 2002 announcement cannot prove loss causation, and is, at minimum, subject to unique defenses. Judge Conner concluded that since it was "conceivable" that in-and-out traders "may be able" to defeat Defendants' negative causation defense and prove loss causation "notwithstanding that the February 13, 2002 announcement is the most critical corrective disclosure," they were properly included in the certified class. *In re Flag,* 245 F.R.D. at 167.

Defendants argue, and we agree, that the district court's "conceivable" standard of proof does not satisfy the preponderance of the evidence standard set forth in *In re IPO* and its progeny. *See Bombardier,***39** 546 F.3d at 202 ("[T]he preponderance

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). While applying a more rigorous standard to the other Rule 23 requirements, the district court quoted *Roth v. Aon,* 238 F.R.D. 603, 607-08 (N.D.Ill.2006), in support of the proposition that courts facing a challenge to the inclusion of in-and-out traders must only determine whether these traders "could conceivably satisfy the requirement of loss causation, and [should] therefore [be] included in the proposed class." *In re Flag,* 245 F.R.D. at 167 (quotations and citation omitted) (alterations in original).

[7] While we do not disagree with the premise that it may be "premature for courts to attempt to determine whether in-and-out traders have suffered losses at the class certification stage of the game," *Roth,* 238 F.R.D. at 608, "*In re IPO* makes clear that courts may resolve contested factual issues where necessary to decide on class certification, and when a claim cannot succeed as a matter of law, the Court should not certify a class on that issue." *McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 228 (2d Cir.2008) (quotations and citation omitted). To the extent that the district court relied on a lesser standard in drawing its conclusion that the in-and-out traders could prove loss causation as a matter of law, we find it abused its discretion.

Plaintiffs urge us to reject the approach taken by the Fifth Circuit Court of Appeals in *Oscar Private Equity Inv. v. Allegiance Telecom, Inc.,* 487 F.3d 261 (5th Cir.2007), requiring proof of loss causation at the class certification stage, and instead follow the courts in this Circuit that have rejected such attempts by defendants to require such proof for certification. *Compare Oscar Private Equity Inv. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 269 (5th Cir.2007) ("We hold hence that loss causation must be established at the class certification stage by a preponderance of all admissible evidence."), *with Wagner v. Barrick Gold Corp.,* 251 F.R.D. 112, 118-19 (S.D.N.Y.2008) (concluding that in order to trigger the fraud-on-the-market presumption and thereby satisfy the predominance requirement of Rule 23(b)(3), plaintiffs need not prove loss causation at the class certification stage); *Darquea v. Jarden Corp.,* 06 Civ. 722(CLB), 2008 WL 622811, at *4 (2008) (rejecting *Oscar* and holding that to show predominance, "[p]laintiff[s] in the Second Circuit may benefit from the fraud-on-the-market presumption of reliance at the certification stage based solely on a showing that they made purchases or sales in an efficient market, and need not show that they specifically relied on the allegedly fraudulent conduct, as reliance-an element of a 10(b) claims-is presumed."); *In re Omnicom Group, Inc. Sec. Litig.,* No. 02 Civ. 4483(RCC), 2007 WL 1280640, at *8 (S.D.N.Y. Apr.30, 2007) (rejecting loss causation challenge to predominance as "an attempt to litigate class certification on the merits of the action"). Each of these cases, however, including *Oscar,* discusses proof of loss causation in the context of the Rule 23(b)(3) predominance requirement, and the cases cited from this Circuit represent the position that a plaintiff is entitled to a presumption of reliance at the certification stage that does not require the court to make a conclusive finding as to loss causation in order to trigger the fraud-on-the-market presumption laid out in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), an issue that is not before us here.

By contrast, whether or not Plaintiffs here have met their burden in establishing that the in-and-out traders will be able to show loss causation is relevant to Rule ***40** 23(a) for reasons that do not implicate either predominance or *Basic.* Since the lower court appointed Hunter, an in-and-out trader, as Class Representative, Judge Conner was required to find, by a preponderance of the evidence, that he is both an adequate and typical representative of the class and not subject to any "unique defenses which threaten to become the focus of the litigation." *Baffa,* 222 F.3d at 59.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

[8] Rather than remand this issue to the district court to consider whether the in-and-out traders were properly included in the class, we conclude that Plaintiffs have not presented sufficient evidence to demonstrate that the in-and-out traders will even "conceivably" be able to prove loss causation as a matter of law, and that they therefore should not have been included in the certified class. *See McLaughlin,* 522 F.3d at 228.

In *Dura,* the Supreme Court rejected the view that an inflated purchase price is sufficient to plead loss causation on 10(b) claims. 544 U.S. at 340, 125 S.Ct. 1627, 161 L.Ed.2d 577. In so doing, the Court recognized that while "an initially inflated purchase price *might* mean a later loss ... that is far from inevitably so." *Id.* at 342, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (emphasis in original). Indeed, "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* at 343, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577.

The Supreme Court's holding in *Dura* did not represent a break from this Circuit's approach to loss causation, but rather reaffirmed the analysis we laid out in *Lentell,* 396 F.3d at 173 (holding that to prove loss causation, a plaintiff must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security"). In *Lentell,* we described the two requirements necessary to establish loss causation: 1) the loss must be foreseeable, and 2) the loss must have been caused by the materialization of the concealed risk. *Id.* In order to satisfy the foreseeability prong, a plaintiff must prove that the risk "was within the zone of risk *concealed* by the misrepresentations and omissions alleged by the disappointed investor." *Id.* (emphasis in original).

The standards laid out in *Dura* and *Lentell* are relevant to the in-and-out traders because in order to prove loss causation, any plaintiff who sold their stock prior to the February 13, 2002 disclosure must prove that the loss they suffered was both foreseeable and caused by the "materialization of the concealed risk." The leakage theory put forth by Plaintiffs,[FN5] and accepted as "conceivable" by the lower court, is based on evidence that "the truth regarding Flag's financial condition began to leak into the market prior to the February 13, 2002 announcement, causing the value of Flag common stock to decline." *In re Flag,* 245 F.R.D. at 166. In support of this theory, Plaintiffs point to an "event study" prepared by Plaintiffs' expert, Dr. Hakala, and several "industry events" that occurred prior to the Company's own February 13, 2002 announcement, that they claim sufficiently establish loss causation **\*41** for the in-and-out traders' claims.[FN6] None of this evidence, however, satisfies *Lentell* because Plaintiffs have failed to demonstrate that any of the information that "leaked" into the market prior to February 13, 2002, revealed the truth with respect to the specific misrepresentations alleged. *Lentell,* 396 F.3d at 175.

> FN5. We do not take issue with the plausibility of Plaintiffs' "leakage" theory. Indeed, in *Lentell,* we explicitly acknowledged that loss causation can be established by a "corrective disclosure to the market" that "reveal[s] ... the falsity of prior recommendations." *Lentell,* 396 F.3d at 175 n. 4. And nowhere does either *Dura* or our precedent suggest that such disclosures must come from the Company itself.

> FN6. According to Plaintiffs' expert witness, the purpose of the event study was to "assess the reaction of Flag Telecom's share price to relevant news events." Hakala Decl. ¶ 15.

According to Plaintiffs, "the truth about demand

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

and profitability began to leak into the market as early as February 2001 through 'industry events' " and "by August 2001, specific news concerning Flag began to leak into the market and depressed Flag's share price further." Plaintiffs Br. at 17-18. However, rather than providing evidence of corrective disclosures, the industry events cited by Plaintiffs appear in their complaint in the context of Defendants' misleading statements themselves. *See* Third Consolidated Amended Complaint ¶ 113 ("[D]efendant McCormack's statements about the Company's supposedly 'enviable' position were an attempt to inaccurately and misleadingly create the impression that FLAG was not in the unenviable position of its competitors, who were being adversely affected by the glut of bandwidth supply, falling prices and raising costs."); ¶ 119 ("FLAG's purpose in providing guidance to analysts to adjust forecasts upward was to distinguish itself from its competitors who, at the same time, were providing much gloomier guidance concerning the state of the telecom industry and the outlook for future results."); ¶ 172 ("FLAG thus continued to issue false and misleading statements about its condition and prospects, even though its competitors were beginning to acknowledge the difficulties they were facing."). Plaintiffs cannot have it both ways. They cannot allege that Defendants made certain misstatements, namely, that Flag was doing well compared to its competitors, and simultaneously argue that the misstatement itself constituted a corrective disclosure, that is, the fact that the other companies were not doing well exposed the public to the truth about Flag's misstatements. *See Lentell,* 396 F.3d at 173. To permit Plaintiffs to do so in this context would "tend to transform a private securities action into a partial downside insurance policy." *Dura,* 544 U.S. at 347-48, 125 S.Ct. 1627, 161 L.Ed.2d 577.

Plaintiffs further fail to connect the decline in the price of Flag stock to any corrective disclosures as required by the second prong of *Lentell.* While the event study links the decline in value of Flag common stock to various events, Plaintiffs have not presented sufficient evidence on which the lower court could conclude that any of the events revealed the truth about the subject of any of Defendants' alleged misstatements. Given that the '33 and ' 34 Act Plaintiffs primarily allege misstatements with respect to the pre-sale and subsequent reciprocal sales, nothing submitted by Plaintiffs link any disclosure prior to February 13, 2002, to either of these alleged misrepresentations. Without more, we conclude that Plaintiffs have not put forth sufficient evidence on which the in-and-out traders could establish loss causation, and they must therefore be excluded from the certified class. Accordingly, Hunter may not serve as class representative.

### III. Remaining Arguments

Defendants raise additional issues challenging the lower court's grant of certification. Since we find these arguments to have no merit, we address them only briefly here.

In addition to the challenges to the adequacy of the class representatives discussed above, Defendants claim that Hunter**\*42** and Coughlin lack the basic familiarity and involvement with the class required under Rule 23(a)(4).[FN7] *See Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077-78 (2d Cir.1995) ("[C]lass certification may properly be denied where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." (internal quotations and citation omitted) (alteration in original)). Given our general disfavor of "attacks on the adequacy of a class representative based on the representative's ignorance," *Baffa,* 222 F.3d at 61, we do not conclude that the lower court abused its discretion in finding that the class representatives "are sufficiently knowledgeable and involved to ad-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

574 F.3d 29, Fed. Sec. L. Rep. P 95,295
**(Cite as: 574 F.3d 29)**

equately represent the putative class." *In re Flag,* 245 F.R.D. at 162.

> FN7. We have already found that Hunter cannot serve as a class representative for reasons unrelated to his knowledge and competence. Thus, the remainder of our analysis concerns only Coughlin.

Similarly, we reject Defendants' argument that the district court erred in including in the class '33 Act Plaintiffs who purchased common stock in the secondary market traceable to the Company's IPO as late as May 10, 2000.[FN8] Despite Defendants' evidence that on March 17, 2000 and March 23, 2000, Flag employees exercised "a significant amount of stock options" pursuant to the Company's Long Term-Incentive Plan ("LTIP"), the court concluded that since Defendants had produced no evidence that LTIP shares were actually sold in the market prior to the May 10, 2000 cutoff, it was "inclined to resolve the dispute in favor of plaintiffs." *In re Flag,* 245 F.R.D. at 173. Because we do not conclude that this factual determination constitutes clear error, we affirm this aspect of the certification order.

> FN8. Neither party disputes "that shares that are bought on the market after unregistered shares have entered the market cannot be traced back to the IPO." *In re Flag,* 245 F.R.D. at 173.

Finally, Defendants challenge the fairness of the briefing process below on due process grounds. We do not find that the lower court abused its "ample discretion" to limit both discovery and the extent of the hearing on Rule 23 requirements, *In re IPO,* 471 F.3d at 41, and we therefore also reject Defendants' due process challenge to the certification order.

## CONCLUSION

For the reasons stated above, the district court's order granting class certification is affirmed with the exception of that portion of the order that includes in the class those individuals who sold their Flag stock prior to February 13, 2002. To the extent the certified class includes such individuals, that portion of the order is vacated, and the case is remanded to the district court for further proceedings.

C.A.2 (N.Y.),2009.
In re Flag Telecom Holdings, Ltd. Securities Litigation
574 F.3d 29, Fed. Sec. L. Rep. P 95,295

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.