**ROBINS, KAPLAN, MILLER & CIRESI** L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel: 612-349-8500 Fax: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

K. CRAIG WILDFANG
612-349-8554

January 5, 2010

<u>**VIA ECF**</u>

The Honorable Magistrate Judge James Orenstein
225 Cadman Plaza East
Room 456 North
Brooklyn, NY 11201

      Re:    In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation
             Case No. 1:05-MD-1720-(JG)(JO)
             Our File No.123630.0000

Dear Judge Orenstein:

      Plaintiffs respectfully move this Court for an order compelling Defendant MasterCard to produce a transcription or recordings of the oral hearing held before the European Commission ("E.C.") on November 14 and 15, 2006, in connection with the Commission's investigation of MasterCard.[1]

## FACTUAL BACKGROUND

      As the Court is aware, on December 19, 2007, the European Commission issued a decision finding that MasterCard's multilateral interchange fees infringed Article 81 of the EU Treaty, a provision analogous to Section 1 of the Sherman Act, and ordered MasterCard to withdraw its cross-border interchange fees within six months of the decision.[2] In the course of the investigation leading to this ruling MasterCard participated in two days of oral hearings before the E.C., the record of which is contained on a CD-ROM in MasterCard's possession.

---

[1] This information is responsive to, among other things, Int. 58(f) in Cl. Pls.' & Non-Cl. Pls.' Consol. First Set Omnibus Disc. To Netw. Defs. that requests the networks to identify "[a]ll documents relating to" any "foreign judicial, legislative, or administrative proceedings or investigations relating to Interchange Fees or Merchant Restraints in which you have participated or produced documents."

[2] Commission Decision of Dec. 19, 2007 Relating to a Proceeding Under Article 81 of the E.C. Treaty and Article 53 of the EEA Agreement at 4-6 (COMP/34.579 MasterCard; COMP 36.518 EuroCommerce; COMP 38.580 Commercial Cards).

ATLANTA     BOSTON     LOS ANGELES     MINNEAPOLIS     NAPLES

81147774.3

The Honorable Magistrate Judge James Orenstein
January 5, 2010
Page 2

In a letter of November 18, 2008, MasterCard informed counsel for Plaintiffs that it agreed to produce the recording of the hearing upon consent of the E.C. When Plaintiffs inquired further into this matter in early 2009, MasterCard stated that it would not provide the recording as planned, due to the E.C.'s objection.[3] After months of correspondence between Plaintiffs and MasterCard and between MasterCard and the E.C., in September 2009, MasterCard resumed its position that it would not produce the recording. Accordingly, Plaintiffs' counsel informed counsel for MasterCard that Plaintiffs would bring the instant motion to compel.[4]

The E.C. has been aware of Plaintiffs' request for the MasterCard recording since at least November 2008. MasterCard counsel has written to the Commission several times regarding Plaintiffs' European discovery requests and in each instance has reminded the E.C. that it may "move to intervene" or "submit a letter to the Court detailing its position on the disclosure of the recording."[5] But despite these repeated invitations to intervene or make its position clear, the E.C. has taken no formal position on the instant motion.

In a December 2008 letter to European counsel for MasterCard, E.C. Hearing Officer Karen Williams recited the general principle that the contents of the Oral Hearing are confidential and to be used only for purposes of application of Articles 81 and 82 of the E.C. Treaty.[6] But Ms. Williams expressly stated that "this position of the Hearing Officer does not constitute a decision by the Commission on the use of the recordings in the US. It is not for the Hearing Officer to decide to reject or agree to a possible specific request by a Court from a third state, or else to intervene in any manner in a litigation in a third state."[7]

In a subsequent letter to MasterCard's European counsel, the Director of the Directorate General for Competition cited recent E.C. publications in which the Commission remarked on the question of discovery of its investigation materials in foreign litigation.[8] While these publications repeat the Commission's general position that its files should not be subject to non-EU discovery, they focus on the Leniency Programme[9] and the Commission's concern that parties coming forth voluntarily to reveal their participation in a cartel should not be deterred by

---

[3] Ltr. Freimuth to Wildfang at 1, Mar 13, 2009 (attached without enclosures as Exhibit 1).
[4] E-mail Marth to Freimuth, Nov 24, 2009 (Exhibit 2).
[5] *E.g.*, Ltr. Brophy & Amory to Wezenbeek at 3, May 20, 2009 from (Exhibit 3).
[6] Ltr. Williams to Brophy at 1, Dec. 9, 2008 (Exhibit 4).
[7] *Id.* at 2.
[8] Ltr. Schwimann to Amory & Brophy at 2, Jul. 7, 2009 (Exhibit 5) (citing Communication from the Commission to the European Parliament and the Council - Report on the functioning of Regulation 1/2003 (COM(2009) 206 final, 29.4.2009 (Exhibit 6)).
[9] The Commission's leniency program (along with similar programs in the United States and other jurisdictions) allows individuals and companies that report price-fixing and other cartel activity to receive reduced criminal sentences and fines and reduced civil-damages liability. The reduced penalties for leniency applicants provide an incentive for cartel participants to report illegal activity. Because leniency participants were necessarily breaking the law themselves, however, leniency applications themselves are admissions of liability. Thus, if statements made in the context of the E.C. leniency program became available to private litigants in the United States, it would decrease parties' incentives to report cartel activity to E.C.

the possibility of disclosure of information they provide to the E.C.[10] In a letter of September 25, 2009, the Hearing Officer confirmed her earlier statements.[11]

## ANALYSIS

The Commission's concern that discovery in private litigation could undermine the effectiveness of the Leniency Programme or other antitrust enforcement has no application in this case. Firstly, MasterCard agreed to produce the recording upon the Commission's consent, which obviates any concern of "compelled" disclosure. Secondly, MasterCard was not involved in the Leniency Programme, but was an involuntary target of an investigation and vehemently contested its liability throughout the investigation. Thus, disclosure poses no threat of disincentive to cooperate with the E.C.. Finally and significantly, the Commission's decision not to intervene indicates that even the Commission is not concerned with the ramifications of disclosure of the oral hearings.

Furthermore, even if the E.C. had formally objected to discovery of the recording, the *In re Vitamins* case demonstrates that this Court could nonetheless order production under a comity analysis.[12] The relevant factors in the comity analysis include: (i) the importance litigation of the documents requested; (ii) the degree of specificity of the request; (iii) whether the information originated in the United States; (iv) the availability of alternative means of securing the information; and (v) the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine important interests of the EU.[13]

The oral hearing recording is important because the E.C. was investigating precisely the same conduct that the Plaintiffs are challenging. And even though the hearing recording did not "originate" in the United States, the hearing likely includes discussion relating to "a global conspiracy" among each of the Networks and their member banks to impose the fees and restraints that Plaintiffs challenge, and to restructure to preserve those fees and restraints.[14] The request is indisputably narrow and specific and unavailable through other means. Finally, especially in light of the E.C.'s choice not to intervene or object to the production of the hearing transcripts, the "substantial" interests of the United States in open discovery outweigh any E.C. interest that may exist.[15]

---

[10] *See* European Commission, Commission Staff Working Paper Accompanying the Communication from the Commission to the European Parliament and Council, Report on the Functioning of Regulation 1/2003, COM(2009)206 final, ¶¶ 297-300 (Apr. 29, 2009) (excerpt attached as Exhibit 6 to motion to compel Visa Statement of Objections).

[11] Ltr. Williams to Brophy & Amory at 1, Sept. 25, 2009 (Exhibit 7).

[12] *See In re Vitamins,* DKT, 2002 U.S. Dist. LEXIS 25815, at *46 (D.D.C. Dec. 18, 2002) (granting plaintiffs' motion to compel over E.C.'s objections as amicus curiae); *In re Vitamins,* 2002 U.S. Dist. LEXIS 26490, at *119-29 (D. D.C. Jan. 23, 2002) (special master analysis).

[13] *In re Vitamins,* 2002 U.S. Dist. LEXIS 26490, at *119-29.

[14] *See Id.* at *127.

[15] *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1471, 1477 (9th Cir. 1992) (affirming compel and contempt orders against Chinese defendant despite Chinese statute prohibiting and criminally penalizing disclosure of requested discovery); *AG Volkswagen v. Valdez,* 897 S.W.2d 458, 461-62, 463 (Ct. App. Tex. 1995)

The Honorable Magistrate Judge James Orenstein
January 5, 2010
Page 4

## CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that this Court compel MasterCard to produce the recording or transcription of the oral hearing before the European Commission.

                                                        Respectfully submitted,

                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                                  *s/K. Craig Wildfang*

                                                  K. Craig Wildfang

KCW/sml
Attachments
cc:    All Counsel of Record *(Via ECF)*

---

(ordering defendant to produce German documents notwithstanding that compliance with discovery would violate German law at risk of criminal sanctions).