**ROBINS, KAPLAN, MILLER & CIRESI** L.L.P.

ATTORNEYS AT LAW

2800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

K. CRAIG WILDFANG
612-349-8554

January 5, 2010

**VIA ECF**

The Honorable Magistrate Judge James Orenstein
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,
            Case No. 1:05-MD-1720-(JG)(JO)
            Our File No. 123630.0000

Dear Judge Orenstein:

      Plaintiffs respectfully request that this Court order Defendant Visa, Inc. ("Visa") to produce a copy of the Statement of Objections ("SO") that the European Commission ("E.C.") issued against Visa[1] on April 3, 2009. The SO is responsive to Interrogatory No. 58 in Plaintiffs' First Set to the Network Defendants, which ask Defendants to "identify all foreign judicial, legislative, or administrative proceedings…relating to Interchange Fees or Merchant Restraints" and to identify "all documents relating to" those proceedings and Doc. Req. No. 102 which seeks production of "[a]ll documents related to any proceedings or investigations against either Network in any other foreign country or jurisdiction."

## FACTUAL BACKGROUND

      The Statement of Objections indicates that the E.C. had the preliminary view that interchange fees "harm competition between acquiring banks, inflate the cost of payment card acceptance for merchants and ultimately increase consumer prices."[2] According to an E.C. press

---

[1] Based upon discussions with Visa's counsel, Plaintiffs understand that the SO was levied against Visa Europe, Visa, Inc., and Visa International.

[2] Press Release, European Commission, Antitrust: Commission Sends Statement of Objections to Visa, Apr. 6, 2009 (Exhibit 1).

ATLANTA      BOSTON      LOS ANGELES      MINNEAPOLIS      NAPLES

81170963.2

release, the SO also addresses the Honor All Cards Rule and the No Surcharge Rule.[3] The Commission indicated that its SO is similar to its assessment of the MasterCard network that it rendered in December 2007.[4] If the SO does track the MasterCard decision, Plaintiffs expect it to contain an assessment of the competitive effects of Visa's interchange fees and the Anti-Steering Restraints both before and after Visa's IPO, as well as findings as to whether Visa's new corporate structure alters the fact that interchange fees are agreements among competitors.

In the course of negotiations over supplementation of Defendants' discovery responses, Plaintiff counsel requested that Visa produce all submissions and pleadings before the European Commission, and informed Visa's counsel that this request encompassed the 2009 SO.[5] On May 12, 2009, Visa stated that it expected to receive a copy of the SO, that it would seek the necessary consents to produce it, and provide its position to Plaintiffs at a later date.[6] On September 9, 2009, Visa stated that it did not have consent of the E.C. to produce the SO, referring to a letter from the Director of the E.C. Directorate General for Competition, dated August 11, 2009.[7] The Director's letter – which explicitly stated that it was not an official communication of the Commission – neither consented to nor objected to Visa's production of the SO.[8] Rather, the letter merely stated the Commission's "general policy" that Statements of Objections should be used only for the purposes of E.C. antitrust investigations.[9] The letter referred to a Working Paper of the Commission staff regarding Regulation 1/2003 – a regulation that regards the implementation of E.C. competition law – as the basis for the "general policy."[10]

## ANALYSIS

American courts recognize that E.C. Statements of Objections are not only discoverable but also admissible into evidence and highly relevant.[11] Because an SO "sets forth 'factual findings resulting from an investigation made pursuant to authority granted by law,'" they are admissible even though they do not necessarily constitute final findings of the Commission.[12] Under some circumstances, a finding of a foreign judicial body may even have collateral estoppel effect in U.S. litigation.[13]

---

[3] *Id*.
[4] *Id*.
[5] Ltr. Marth to Eisenstein & Freimuth at 2-3, May 5, 2009 (Exhibit 2).
[6] Ltr. Eisenstein to Marth at 2-3, May 12, 2009 (Exhibit 3).
[7] Ltr. Eisenstein to Marth, Sept. 9, 2009 (Exhibit 4). Plaintiffs reiterated their request on November 12, which Visa denied on November 16.
[8] Ltr. Schwimann to Quintiliani at 2, Aug. 11, 2009 (Exhibit 5).
[9] *Id*.
[10] *Id*. at 1 (citing Staff Working Paper Accompanying the Communication from the Commission to the European Parliament and Council, European Commission, SEC (2009)574 final 29.4.2009 ("Working Paper") (excerpt attached as Exhibit 6)).
[11] *Information Resources, Inc. v. Dun & Bradstreet Corp.*, No. 96 CIV. 5716(LLS), 1998 WL 851607 (S.D.N.Y. Dec. 8, 1998).
[12] *Id*. *1 (quoting Fed. R. Evid. 803(8)(c)).
[13] *Id*. (applying collateral estoppel to findings of Canadian Competition Tribunal).

The Honorable Magistrate Judge James Orenstein
January 5, 2010
Page 3

Visa does not necessarily dispute the discoverability or relevance of the SO, but instead bases its objection on the fact that the E.C. did not consent to Visa sharing the SO with third parties. But the lack of consent – or even an explicit objection – from a foreign judicial or regulatory body is insufficient standing alone to prevent disclosure.[14] When such an issue presents itself, a federal court will conduct a comity analysis to weigh the interests of the foreign authority against U.S. courts' interest in an open discovery process. The relevant factors in the comity determination include: (i) the importance to the litigation of the documents requested; (ii) the degree of specificity of the request; (iii) whether the information originated in the United States; (iv) the availability of alternative means of securing the information; and (v) the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine important interests of the EU.[15]

The *Vitamins* comity factors favor production of the SO. First, Plaintiffs' request is unquestionably specific and unavailable though alternative means under factors (ii) and (iv). As to factor (i) the SO is important to this litigation because the findings that it likely makes – the competitive effects of interchange fees and ASRs and the impact of Visa's corporate restructuring on those effects – are the central issues in this litigation. And although, under factor (iii), the SO itself did not originate in the United States, it was shared with Visa, Inc., which implies that at least some of the information that is contained in the SO originated in the United States. Finally, as to factor (v) – the balancing of interests – the U.S. interests in a free exchange of information in civil discovery are well documented,[16] whereas the Commission has not even taken a formal position on Plaintiffs' request.[17]

Finally, even if this Court did attribute weight to the Commission's "general policy," the justification for that policy does not apply in this case because the concerns cited in the staff Working Paper primarily revolve around disclosure of statements made in the Commission's leniency program in non-EU litigation. Because the purpose of the Commission's leniency program encourages cartel-participants to come forward to report price-fixing activity, it is understandable that disclosure of admissions by companies that they were participating in a cartel would dampen the incentives to report cartel activity. Because Visa was an involuntary target of a Commission investigation, however, there can be no chilling effect on E.C. antitrust enforcement by allowing outside counsel in U.S. litigation to receive the SO. Moreover, the Working Paper indicates that the Commission is "a strong proponent of private damages actions," which cuts in favor of disclosure.

---

[14]   *See In re Vitamins,* MDL No. 1285, 2002 U.S. Dist. LEXIS 25815 at *46 (D.D.C. Dec. 18, 2002) (granting plaintiffs' motion to compel over E.C.'s objections as *amicus curiae*)

[15]   *See id.*; *In re Vitamins,* 2002 U.S. Dist. LEXIS 26490, at *119-29 (D. D.C. Jan. 23, 2002) (special master analysis).

[16]   *See, e.g., Burke v. New York City Police Dep't*, 115 F.R.D. 220, 225 (S.D.N.Y.1987) ("[T]he overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case."); *see also Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) (quoting *Burke*).

[17]   Exhibit 6. The Working Paper notes that the Commission has on occasion submitted *amicus curiae* briefs in American courts and even submitted a statement to the Antitrust Modernization Commission relating to the discovery of European materials in U.S. litigation. *See* Working Paper ¶¶ 299-300. Contrasted with the active role that the Commission has played in other U.S. fora, its silence in this case speaks volumes.

81170963.2

The Honorable Magistrate Judge James Orenstein
January 5, 2010
Page 4

## CONCLUSION

For all the reasons set forth above, the Visa Statement of Objections is likely to contain information that is highly relevant to this case. Because the Commission has not objected to its production and Visa has come forward with no other justification for withholding it, Plaintiffs respectfully request that the Court grant this motion.

                    Respectfully submitted,

                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                      *s/K. Craig Wildfang*

                    K. Craig Wildfang

KCW/sml
Attachments
cc:    All Counsel of Record *(Via ECF)*

81170963.2