**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**<br><br>**This Document Relates to:**<br><br>**All Actions** | **MASTER FILE 05-MD-1720 (JG) (JO)** |

**OBJECTIONS OF DEFENDANTS VISA INC., MASTERCARD INCORPORATED, AND MASTERCARD INTERNATIONAL INCORPORATED TO MAGISTRATE JUDGE ORENSTEIN'S FEBRUARY 12, 2010 ORDER GRANTING PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY OF MATERIALS FROM EUROPEAN COMMISSION PROCEEDINGS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

I.      Statement of Objections.................................................................................................2

II.     Oral Recording of November 14 and 15, 2006 Oral Hearing Related to
        MasterCard ...................................................................................................................4

III.    Plaintiffs' Motion to Compel the Statement of Objections and Oral Recording ................5

STANDARD OF REVIEW ........................................................................................................6

ARGUMENT .............................................................................................................................7

I.      International Comity Precludes Disclosure When a Five-Factor Balancing Test Is
        Satisfied ........................................................................................................................7

II.     The Order Misapplied the Five-Factor Test for International Comity ................................9

        A.      Disclosure of the SO and Oral Recording Would Undermine Important
                Interests of the EC, Whereas Nondisclosure Would Not Undermine
                Important Interests of the United States ..............................................................10

        B.      The SO and Oral Recording Are Not Important to This Litigation........................12

        C.      The SO and Oral Recording Did Not Originate in the United States....................14

        D.      The Remaining International Comity Factors Cannot Warrant Disclosure..........14

        E.      Plaintiffs' Cited Cases Do Not Require Production of the SO and Oral
                Recording .........................................................................................................14

CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*DeFazio v. Wallis*,
   459 F. Supp. 2d 159 (E.D.N.Y. 2006) ...................................................................................6, 7

*Gorman v. Polar Electro, Inc.*,
   137 F. Supp. 2d 223 (E.D.N.Y. 2001) .......................................................................................7

*Hilton v. Guyot*,
   159 U.S. 113 (1895) ...................................................................................................................7

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   2009 WL 5218057 (D. Conn. Dec. 29, 2009) .........................................................................15

*In re Methionine Antitrust Litig.*,
   MDL No. 00-1311 CRB, Report of Special Master, at 13 (N.D. Cal. June 17, 2002),
   *aff'd*, Order (N.D. Cal. July 29, 2002) .....................................................................................8

*In re Rubber Chems. Antitrust Litig.*,
   486 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................................passim

*In re Vitamins Antitrust Litig.*,
   MDL No. 1285, 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002) ...........................14, 15

*Information Resources, Inc. v. Dun & Bradstreet Corp.*,
   1998 WL 851607 (S.D.N.Y. Dec. 8, 1998) .............................................................................15

*Ings v. Ferguson*,
   282 F.2d 149 (2d Cir. 1960) ......................................................................................................8

*Madanes v. Madanes*,
   186 F.R.D. 279 (S.D.N.Y. 1999) ...............................................................................................8

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ...............................................................................................8, 10

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of
   Iowa*, 482 U.S. 522 (1987) ..................................................................................................7, 8, 9

*Somportex Ltd. v. Phila. Chewing Gum Corp.*,
   453 F.2d 435 (3d Cir. 1971) ......................................................................................................7

**STATUTES**

28 U.S.C. § 636(b)(1)(A) ...........................................................................................................1, 6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 72(a).......................................................................................1, 6

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a),

Defendants Visa Inc., MasterCard Incorporated and MasterCard International Incorporated

(together, "MasterCard") respectfully submit the following objections to Magistrate Judge

Orenstein's Order that Visa Inc. "produce a copy of the EC's Statement of Objections issued

against Visa on April 3, 2009," and that MasterCard "produce the transcript of the oral hearing

held before the EC on November 14 and 15, 2006."  02/12/10 Order (attached as Ex. 1 hereto).

Visa Inc. and MasterCard have not objected to any of Magistrate Judge Orenstein's prior

discovery rulings in this case.  Visa Inc. and MasterCard appreciate the deference owed to

typical discovery rulings involving questions such as the burden of responding to a request for

production of documents.  Unlike prior discovery rulings, however, the Order involves the legal

issue of international comity and rejected the stated interests of a foreign sovereign, the

European Commission ("EC").  *See* Docket Entry (hereinafter "DE") 1344, 01/20/10 EC letter to

Mag. Judge Orenstein (Ex. 2 hereto).  The Order also required Visa Inc. and MasterCard to

produce materials that representatives of the EC have instructed Visa Inc. and MasterCard not to

produce.

Visa Inc. and MasterCard submit these objections because of the position taken by the

EC with respect to the documents at issue and to allow the EC to present its views to this Court.

Visa Inc. and MasterCard understand that the responsible services of the EC have decided to

propose to the College of the European Commissioners that the EC seek leave to file an *amicus*

*curiae* brief to object to the Order.  Visa Inc. and MasterCard respectfully submit that Magistrate

Judge Orenstein's ruling is contrary to the law regarding international comity, because

permitting the discovery sought would undermine important interests of the EC without serving

important countervailing interests in discovery.

# BACKGROUND

I.    **Statement of Objections**

On May 26, 2009, Philip Lowe, the Director-General of the EC's Directorate-General for Competition ("DG Comp"), sent Visa Inc. a redacted Statement of Objections ("SO") from an EC proceeding. *See* DE 1337 Ex. A, 05/26/09 Lowe letter to Visa Inc. (Ex. 3 hereto). DG Comp is "the European Commission service primarily responsible to assist the European Commission in competition law matters." DE 1344, 01/20/10 EC letter (Ex. 2 hereto), at 2. Until February 18, 2010, Director-General Lowe was the highest-ranking official within DG Comp, similar to the Assistant Attorney General for Antitrust in the United States Department of Justice.[1] The SO itself is a preliminary set of allegations provided on a confidential basis to allow the parties to exercise rights of defense under European Union ("EU") law. *Id.* at 7. An SO does not constitute a finding of fact or of liability for a violation of law. *Id.*

The SO here pertains to European commerce, and as such involves Visa Europe and its operations in Europe. Visa Europe is an entity separate from Visa Inc. and under separate ownership and control. *See* Visa Inc., Registration Statement (Form S-4), at 1 (June 22, 2007), *available at* http://investor.visa.com. Visa Europe operates a payment system in Europe under a license from Visa Inc. *See* Visa Inc., Annual Report (Form 10-K), at 27 (Nov. 20, 2009), *available at* http://investor.visa.com. The SO involves Visa Inc. only to the limited extent that its rules allegedly affect the conduct of Visa Europe. The copy of the SO that Visa Inc. received was redacted to remove information deemed confidential by Visa Europe.[2]

---

[1]    *See In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) (EC Director "seems analogous to the head of the Justice Department's Antitrust Division").

[2]    As Director-General Lowe subsequently explained in his letter to Magistrate Judge Orenstein: "Visa Inc. is not the addressee of the Statement of Objections, adopted on 3 April 2009 by the European Commission and transmitted to Visa Europe Limited. However, Visa Inc.

Footnote continued on next page

Director-General Lowe's transmittal letter to Visa Inc. emphasized the confidentiality of the SO and the need for Visa Inc. to obtain the EC's explicit authorization prior to disclosing it outside the EC's proceeding:

> The Commission reminds you that the information contained in this Statement of Objections can only be used for the purposes of the present proceedings. . . .
>
> The Statement of Objections, its contents and information made available to you in the context of your access to the Commission's file should not therefore be disclosed to any person, body or agency other than for the purposes mentioned above unless you have the prior explicit authorisation of the Commission.

DE 1337 Ex. A, 05/26/09 Lowe letter (Ex. 3 hereto), at 2.

Plaintiffs in this action requested that Visa Inc. produce the SO, and Visa Inc. asked for the EC's position on that request.  Irmfried Schwimann, a Director at DG Comp, responded to Visa Inc. and declined to authorize production of the SO to plaintiffs.  DE 1337 Ex. B, 08/11/09 Schwimann letter to Visa Inc. (Ex. 4 hereto), at 2.  Director Schwimann's letter stated that "it is the European Commission's general policy that the Statement of Objections and the information contained therein should be used only for the purpose of proceedings concerning the application of Articles 81 and 82 EC."  *Id.*

Director Schwimann's letter applied established EC policy and cited the EC Staff Working Paper that states:  "The Commission's statement of objections and the full confidential version of the decision are documents prepared specifically for the antitrust proceedings and

---

Footnote continued from previous page

is the addressee of the Statement of Objections of 29 May 2009, which is, in fact, a redacted version of the Statement of Objections of 3 April 2009 from which all information marked as confidential by Visa Europe has been removed."  DE 1344, 01/20/10 EC letter (Ex. 2 hereto), at 2.  By letter today, Visa Inc. has sought clarification from Magistrate Judge Orenstein that the Order applies to the redacted version of the April 3 Statement of Objections that Visa Inc. received from the EC.

contain confidential information received through investigative measures.  Therefore, they and the information contained therein shall also be used only for the purpose of proceedings concerning the application of Articles 81 and 82 EC."  DE 1337 Ex. C, Chapter 7.1 of the EC Staff Working Paper, SEC(2009)574 final, 29.4.2009, ¶ 296 (Ex. 5 hereto).

## II.      Oral Recording of November 14 and 15, 2006 Oral Hearing Related to MasterCard

During the course of the EC's investigation of certain MasterCard business practices, MasterCard participated in an oral hearing on November 14 and 15, 2006.  Plaintiffs initially requested a transcript of the hearing during the deposition of MasterCard witness Etienne Goosse and in subsequent correspondence with MasterCard's counsel.  10/22/08 Goosse Dep. at 206:12-14 and 10/24/08 Wildfang letter to Ravelo (Ex. 6 hereto).  MasterCard informed plaintiffs that it has no transcript of the oral hearing but that MasterCard would produce the recording if the Commission granted consent.  11/17/08 and 11/18/08 Freimuth letters to Wildfang (Ex. 7 hereto).

Through its counsel in the European proceedings, Jones Day, MasterCard sought consent to produce the oral recording on November 26, 2008, by letter to Karen Williams, the EC Hearing Officer assigned to the MasterCard matter.  Ms. Williams responded that the oral recording is not public and cannot be used for purposes other than the application of Articles 81 and 82 of the EC Treaty.  DE 1333 Ex. 4, 12/09/08 Williams letter to Brophy (Ex. 8 hereto).  She further stated:  "I remind you that MasterCard should abstain from disclosing the tapes of the Hearing in the discovery procedure in the U.S."  *Id*.  MasterCard accordingly advised plaintiffs of the EC's position.  DE 1333 Ex. 1, 03/13/09 Freimuth letter to Wildfang (Ex. 9 hereto).

MasterCard's European counsel continued to reach out to the EC by phone and in writing, informing it that plaintiffs may file a motion to compel production of the recording.

06/10/09 Amory and Brophy letter to Wezenbeek, DG Comp (Ex. 10 hereto), at 2. By letter

dated July 7, 2009, Director Schwimann of DG Comp reiterated the Commission's position that

"disclosure of information from the Commission file in the context of private litigation in third

country jurisdictions, in particular of information voluntarily submitted during the investigation,

may seriously undermine the effectiveness of public antitrust enforcement." DE 1333 Ex. 5,

07/07/09 Schwimann letter to Amory and Brophy (Ex. 11 hereto).

III.    **Plaintiffs' Motion to Compel the Statement of Objections and Oral
        <u>Recording</u>**

        Given these directions from DG Comp and the Hearing Officer, Visa Inc. declined to

produce its version of the SO and MasterCard declined to produce the oral recording to plaintiffs.

Plaintiffs moved to compel production. *See* DE 1333 and 1335, 01/05/10 Plaintiffs' letter briefs.

Visa Inc. and MasterCard opposed the motions. *See* DE 1337 and 1339, 01/08/10 Visa Inc. letter

brief and MasterCard letter brief. Magistrate Judge Orenstein heard oral argument from the

parties on January 13, 2010 and also invited the EC to submit its views. *See* 01/6/10 Order;

01/13/10 Order.

        The EC, through a letter from Director-General Lowe, urged Magistrate Judge Orenstein

not to compel disclosure of the SO and oral recording. *See* DE 1344, 01/20/10 EC letter (Ex. 2

hereto). The EC explained that a Statement of Objections is a "preparatory document containing

the European Commission's provisional charges," which "may contain confidential and other

information submitted either under compulsion by parties or third parties to the investigation,"

and which "should therefore be used only for the pursuit of infringements of the EU competition

rules." *Id.* at 7. The EC concluded that disclosure of the SO in this litigation "should not be

allowed because it would seriously interfere with the European Commission's power to

prosecute anticompetitive practices that have an impact within the EU borders." *Id.*

With respect to the oral recording of the MasterCard oral hearing, the EC noted that an oral hearing is a voluntary process which is closed to the public and that all information exchanged in the hearing is subject to obligations of professional secrecy. *Id*. at 8. The EC concluded that the discoverability of oral hearing transcripts would likely have a negative impact on the willingness of parties to participate in oral hearings, which would seriously impair the Commission's ability to discover and punish unlawful anticompetitive conduct. *Id*.

Magistrate Judge Orenstein nevertheless granted plaintiffs' motions to compel. His Order stated, in its entirety, as follows:

> After reviewing the submissions by the parties and by the European Commission ("EC") on the pending motions to compel discovery, docket entries [1333] and [1335], and weighing the EC's concerns against the plaintiffs' legitimate discovery interests, I conclude that international comity does not require the plaintiffs to forego information to which they would otherwise be entitled. I therefore order defendant MasterCard to produce the transcript of the oral hearing held before the EC on November 14 and 15, 2006, and I further order defendant Visa to produce a copy of the EC's Statement of Objections issued against Visa on April 3, 2009.

02/12/10 Order (Ex. 1 hereto).

## STANDARD OF REVIEW

Upon receiving a timely objection to a magistrate judge's ruling on a pretrial matter not dispositive of a party's claim or defense, "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006) (citations omitted). The Order is contrary to law because it misapplies the relevant precedent on international comity.

6

This is not a typical discovery dispute. There is no issue here involving the burdens of document production. Rather, this is a legal dispute, involving the application of a developed body of law on international comity. As with issues like attorney-client privilege, *Gorman v. Polar Electro, Inc.*, 137 F. Supp. 2d 223, 228 (E.D.N.Y. 2001), and disqualification of counsel, *DeFazio*, 459 F. Supp. 2d at 167, a district judge should set aside a decision based on a misapplication of law, in this case the law of international comity.

## ARGUMENT

**I.     International Comity Precludes Disclosure When a Five-Factor Balancing Test Is Satisfied**

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). The doctrine is "more than mere courtesy and accommodation," and represents "a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).

Discovery is one of the core issues that international comity principles address. Indeed, the Supreme Court has stated that "American courts should . . . take care to demonstrate due respect . . . for any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). As the Second Circuit concluded: "Upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may

cause a violation of the laws of a friendly neighbor or, at the least, *an unnecessary circumvention of its procedures*." *Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960) (emphasis added).

The Supreme Court has set forth the five-factor balancing test for determining when international comity precludes discovery.  The factors are:

1. the importance to the investigation or litigation of the documents or other information requested;

2. the degree of specificity of the request;

3. whether the information originated in the United States;

4. the availability of alternative means of securing the information; and

5. the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Societe Nationale*, 482 U.S. at 544 n.28 (citing Restatement (Third) of Foreign Relations Law, § 442(1)(c) (1987)).  Of the five factors, the fifth factor is considered "the most important." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992); *see also Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999) ("The fifth factor -- the balancing of national interests -- is the most important, as it directly addresses the relations between sovereign nations.").

Consistent with these principles, federal courts have declined to grant civil litigants in the United States access to confidential materials prepared solely for purposes of EC enforcement proceedings, including SOs.  *See In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078 (N.D. Cal. 2007); *In re Methionine Antitrust Litig.*, MDL No. 00-1311 CRB, Report of Special Master, at 13 (N.D. Cal. June 17, 2002) (DE 1337 Ex. D), *aff'd*, Order (N.D. Cal. July 29, 2002). For example, in *In re Rubber Chems. Antitrust Litig.*, plaintiffs moved to compel production of documents from investigations of suspected antitrust violations in the European Union and

elsewhere.  486 F. Supp. 2d at 1080.  Defendants objected to producing the European materials, which included an SO from the EC, on grounds including "that production would conflict with the policies of a foreign sovereign, which is entitled to comity."  *Id.* at 1081.  Defendants relied on a letter from a Director of DG Comp, similar to Director-General Lowe's letter here, which explained that SOs "are provided to the parties to allow them to exercise their rights of defence within the sphere of the Commission's proceedings," "contain confidential information," and "are not made public and warrant specific protection."  DE 1337 Ex. E, 04/17/07 Mehta letter (Ex. 12 hereto), at 2.

The *Rubber Chemicals* court declined to order production of the SO.  The court acknowledged the Supreme Court's admonition that "American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state."  486 F. Supp. 2d at 1081 (citing *Societe Nationale*, 482 U.S. at 546).  Applying the five-factor comity analysis, the court balanced the sovereign interests of the EC against the importance of the discovery, emphasizing that "courts are less inclined to ignore a foreign state's concerns where the outcome of litigation does not stand or fall on the present discovery order."  *Id.* at 1082-83 (citation omitted) (importance "is even less clear for documents generated by the Commission").  The court found that plaintiffs in a case based on alleged conduct in the United States did not have a sufficient need to obtain documents generated for use "only in Europe and in conjunction with the European enforcement proceedings."  *Id.* at 1083.  The same reasoning applies here.

## II.    The Order Misapplied the Five-Factor Test for International Comity

Visa Inc. and MasterCard respectfully submit that Magistrate Judge Orenstein's Order misapplied the five-factor legal standard for international comity in ordering Visa Inc. to produce the SO and MasterCard to produce the oral recording.

**A.**   **Disclosure of the SO and Oral Recording Would Undermine Important Interests of the EC, Whereas Nondisclosure Would Not Undermine Important Interests of the United States**

The "most important" factor in the international comity analysis is the extent to which disclosure of the SO and oral recording would undermine the EC's important interests, or non-disclosure would undermine the important interests of the United States. *Richmark Corp.*, 959 F.2d at 1476. In assessing the strength of the EC's interests, courts should consider "expressions of interest by the foreign state, the significance of the disclosure in the regulation … of the activity in question, and indications of the foreign state's concern for confidentiality *prior to the controversy*." *Id.* at 1476 (emphasis in original; citation and quotation marks omitted).

Here, this factor cuts strongly against production of the SO and oral recording. In its letter brief, the EC explained the important interests against disclosure of the SO and oral recording and the detrimental effect on law enforcement that disclosure could have:

> Documents and statements created by the Commission or provided to the Commission for the purpose of its investigation are preserved by it and made available in certain circumstances to investigated parties to assist in their legal defence. The documents are generated under the aegis of EU laws that are aimed at protecting them from use by any party (including the Commission) for any purpose other than the application of the EU competition rules. The information contained in these documents is vital to the Commission's successful enforcement of European competition law. It is also essential that this information is only used for the stated purpose as otherwise the Commission would not be able to gather the information it requires to carry out the duties assigned to it by EU law.

*See* DE 1344, 01/20/10 EC letter (Ex. 2 hereto).

With respect to Statements of Objections, the EC explained that such documents "may contain confidential and other information submitted either under compulsion by parties or third parties to the investigation." *Id.* at 7. As a result, the EC stated that SOs and information they contain "should be used only for the pursuit of infringement of the EU competition rules." *Id.*

10

The EC further emphasized that disclosure of the SO *in this case* "would seriously interfere with the European Commission's power to prosecute anticompetitive practices that have an impact within the EU borders." *Id.*

This policy respecting the confidentiality of SOs is longstanding, and has been repeated previously. In addition to Director-General Lowe's January 10, 2010 letter to Magistrate Judge Orenstein (Ex. 2 hereto), the EC's position concerning SOs is set forth in the letters to Visa Inc. from Director-General Lowe and Director Schwimann (Exs. 3 and 4 hereto), and the EC policy statement cited in Director Schwimann's letter (Ex. 5 hereto). The same position also appears in the letter from DG Comp in the *Rubber Chemicals* case (Ex. 12 hereto), and a similar letter from DG Comp submitted in a case in this District (Ex. 13 hereto).

With regard to the oral recording, the Commission pointed out that the oral hearing is closed to the public and that "[a]ll information exchanged and discussions during the Oral Hearings are subject to obligations of professional secrecy, as stipulated in Article 28 of Council regulation 1/2003." DE 1344, 01/20/10 EC letter (Ex. 2 hereto), at 8. These protections ensure that participants can "freely discuss the Commission's preliminary objections and the parties' position on those objections." *Id.* Moreover, these measures safeguard third parties' confidential information which may be discussed at the oral hearing. *Id.* The Commission concluded that "discoverability of transcripts of the Oral Hearing is likely to have a negative impact on the willingness of the parties to request or to attend an Oral Hearing and, hence, exercise their rights of defence in full as well as to make full statements in their defence as they see fit." *Id.* Consequently, discoverability of the oral recording would hinder "the Commission's ability to discover and punish unlawful antitrust activity, an important sovereign interest." *Id.* The statement in the Commission's letter to the Magistrate Judge is consistent with Hearing Officer

Williams's and Director Schwimann's previous correspondence prohibiting MasterCard from disclosing the oral recording (Exs. 8 and 11 hereto).

In contrast to the EC's interest, there is little -- if any -- interest of the United States that would be furthered by ordering production of the SO and oral recording.  Indeed, when Magistrate Judge Orenstein asked plaintiffs' counsel "if you have any argument on [the fifth] factor, or it really is a matter of what's the importance to this litigation of what you're seeking," plaintiffs' counsel conceded:  "it's primarily the latter."  01/13/10 Hr'g Tr. 10:23-24.  More recently, plaintiffs claimed that the fifth factor weighs in their favor because the Sherman Act encourages "antitrust victims to serves as 'private attorneys general.'"  DE 1347, 01/25/10 Plaintiffs' letter brief, at 3.  If credited, this argument could be used to overcome a foreign sovereign's stated interest in any comity analysis in an antitrust case.  That is not the law.  *See, e.g.*, *Rubber Chemicals*, 486 F. Supp. 2d at 1084.

In short, under the fifth and most important factor in the international comity analysis set forth by the Supreme Court, the EC's interest is paramount, and it weighs strongly against disclosure of the SO and oral recording.

### B.    The SO and Oral Recording Are Not Important to This Litigation

The first factor in the international comity analysis involves weighing the importance of the discovery to the litigation against the concerns of the foreign sovereign.  In applying that factor, "courts are less inclined to ignore a foreign state's concerns where the outcome of litigation does not stand or fall on the present discovery order."  *Rubber Chemicals*, 486 F. Supp. 2d at 1082.  The *Rubber Chemicals* court thus found that plaintiffs in a case based on alleged conduct in the United States did not have a sufficient need to obtain documents generated for use "only in Europe and in conjunction with the European enforcement proceedings."  *Id.* at 1083.

The same logic applies in this case.  Plaintiffs allege that the relevant geographic market is the United States.  *E.g.*, DE 1153, 01/29/09 Compl. ¶¶ 271-72.  This case accordingly involves commerce and conduct of Visa Inc. and MasterCard in the United States, and applies United States law.  The SO, by contrast, contains allegations by the EC involving European commerce that are primarily directed at conduct by Visa Europe.  The legal standards at issue in the SO are those of the European Union, not the United States.  The oral recording likewise contains arguments under European law, focused on MasterCard's business practices in Europe.  Moreover, by agreement among the parties, MasterCard already has produced the briefs and expert reports that were submitted by MasterCard to the participants in the oral hearing in advance of the November, 2006 hearings, as well as the EC's December 19, 2007 decision concerning the challenged MasterCard European business practices.  Plaintiffs thus already are in possession of a substantial record of the European proceedings concerning MasterCard.

Under these circumstances, the outcome of this case "does not stand or fall" on the allegations and arguments in the SO or the oral recording.  *Rubber Chemicals*, 486 F. Supp. 2d at 1082.  The fact (cited by plaintiffs to Judge Orenstein) that experts have cited to materials produced in discovery regarding business practices in Europe does not mean that the EC's allegations contained in the SO, or the arguments contained in the oral recording, are somehow "important" here -- let alone sufficiently important to outweigh the EC's stated interests relating to the European antitrust enforcement system.  *See Rubber Chemicals*, 486 F. Supp. 2d at 1082-83 (importance is "even less clear for documents generated by the [European] Commission").

The Order states that "international comity does not require the plaintiffs to forego information to which they would otherwise be entitled."  02/12/10 Order (Ex. 1 hereto).  But comity applies only when plaintiffs would otherwise be entitled to discovery.  The operative

question is not whether plaintiffs would otherwise be entitled to discovery, but rather the importance of that discovery, weighed against the concerns of the foreign sovereign. Plaintiffs do not satisfy this standard.

**C.      The SO and Oral Recording Did Not Originate in the United States**

The third factor in the international comity analysis – whether the information originated in the United States – likewise favors non-disclosure of the SO and oral recording here. Like the SO in *Rubber Chemicals*, the SO here originated in and was generated for use in Europe, not the United States. As plaintiffs conceded in their letter brief, "the SO itself did not originate in the United States." DE 1335, 01/05/10 Plaintiffs' letter brief, at 3. The oral recording likewise was created in Europe in the course of the EC's investigation. The plaintiffs agree that "the hearing recording did not 'originate' in the United States." DE 1333, 01/05/10 Plaintiffs' letter brief, at 3.

**D.      The Remaining International Comity Factors Cannot Warrant Disclosure**

The remaining two international comity factors – the degree of specificity of the request and the availability of alternative means of securing the information – admittedly favor disclosure of the SO and oral recording here. However, those two factors cannot outweigh the other three factors, including the most important fifth factor, all of which, as a legal matter, should lead to denial of plaintiffs' motion to compel, for the reasons described above.

**E.      Plaintiffs' Cited Cases Do Not Require Production of the SO and Oral Recording**

The cases that plaintiffs cited in their letter briefs to Magistrate Judge Orenstein do not require production of the SO and oral recording here. Plaintiffs relied primarily on *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2002 U.S. Dist. LEXIS 26490, at *126 (D.D.C. Jan. 23, 2002) (special master analysis); 2002 U.S. Dist. LEXIS 25815, at *44 (D.D.C. Dec. 18,

14

2002) (district court opinion).  In *Vitamins*, however, the court did not order production of materials that the EC had issued and instructed to be used only in the European proceeding. Instead, the court required production of a voluntary statement by a private party, which, as the court emphasized, the EC itself had warned "may ultimately be published by the Commission." *Vitamins*, 2002 U.S. Dist. LEXIS 26490, at *126.

Plaintiffs also cited *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 2009 WL 5218057 (D. Conn. Dec. 29, 2009).  That decision addressed admissibility under the hearsay rule of an SO from an EC investigation in which "there is no indication that a party expressly disputed the factual findings contained in the SO."  *Id.* at *12.  Unlike the defendants in that case, *id.* at *13, here Visa Inc. made no submission to the EC before it issued the SO, and Visa Inc. has contested the accuracy of statements relating to it in the SO.  More importantly, that case did not involve an objection to discovery by the EC and thus did not address the international comity concerns at issue here.

Likewise in *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 1998 WL 851607 (S.D.N.Y. Dec. 8, 1998), the court did not even apply an international comity analysis weighing EC assertions of confidentiality.  Moreover, the central claim in that case was that defendant engaged in exclusionary strategies to maintain a "monopoly over retail tracking services markets outside the United States," and the relevant geographic market included EU countries.  *See* Compl., 1997 WL 34639819, ¶¶ 1, 27 (S.D.N.Y. July 7, 1997).  There are no similar claims concerning alleged restraints of trade in markets outside the United States in this litigation.

## CONCLUSION

For the foregoing reasons, Visa Inc. and MasterCard respectfully request that this Court set aside Magistrate Judge Orenstein's Order compelling Visa Inc. to produce a copy of the EC's

Statement of Objections provided to Visa Inc., and MasterCard to produce a copy of the

recording of MasterCard's oral hearing before the EC on November 14 and 15, 2006.


Dated:   February 26, 2010.                    **ARNOLD & PORTER LLP**

By: /s/ Robert J. Vizas
      Robert J. Vizas
      275 Battery Street, 27th Floor
      San Francisco, CA   94111-3305
      (415) 356-3000
      Robert.Vizas@aporter.com

      Robert C. Mason
      399 Park Avenue
      New York, NY  10022-4690
      (212) 715-1000
      Robert.Mason@aporter.com

      Mark R. Merley
      Matthew A. Eisenstein
      555 12th Street, N.W.
      Washington, DC  20004
      (202) 942-5000
      Mark.Merley@aporter.com
      Matthew.Eisenstein@aporter.com

      Attorneys for Defendants Visa Inc., Visa U.S.A.
      Inc., and Visa International Service Association


      **HUNTON & WILLIAMS LLP**

By: /s/ Wesley R. Powell
      Keila D. Ravelo
      Wesley R. Powell
      200 Park Avenue
      New York, N.Y.  10166-0005
      Tel: (212) 309-1000
      Fax: (212) 309-1100
      kravelo@hunton.com
      wpowell@hunton.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Gary R. Carney
Andrew C. Finch
1285 Avenue of the Americas
New York, N.Y. 10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990
GCarney@paulweiss.com

Kenneth A. Gallo
1615 L Street, N.W., Suite 1300
Washington, D.C. 20036-5694
Tel:  (202) 223-7300
Fax:  (202) 223-7420
KGallo@paulweiss.com

Attorneys for Defendants MasterCard
Incorporated and MasterCard
International Incorporated