EXHIBIT 4

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

IN RE:

PAYMENT CARD INTERCHANGE FEE  :    05-MD-1720 (JG)(JO)
and MERCHANT DISCOUNT
ANTITRUST LITIGATION

                                :    U.S. Courthouse
                                     Brooklyn, N.Y.

                                     January 13, 2009
- - - - - - - - - - - - - - - X      1:00 p.m.

BEFORE:

            HONORABLE JAMES ORENSTEIN
            United States Magistrate Judge


APPEARANCES:


For Class Plaintiffs:     ROBINS KAPLAN MILLER
                          & CIRESI LLP
                          2800 LaSalle Plaza
                          800 LaSalle Avenue
                          Minneapolis, MN 55402-2015
                          BY:  K. CRAIG WILDFANG
                               THOMAS J. UNDLIN




                          BERGER & MONTAGUE, P.C.
                          1622 Locust Street
                          Philadelphia, PA 19103
                          BY:  MERRILL G. DAVIDOFF
                               H. LADDIE MONTAGUE, JR.
                               BART D. COHEN
```

```
 1   Individual Plaintiffs:     RICHARD ARNOLD
                                WILLIAM BLECHMAN
 2                              KENNY NACHWALTER, P.A.
                                201 South Biscayne Blvd.
 3                              Suite 1100
                                Miami, Florida 33131
 4

 5

 6   For Class Plaintiffs:      COUGHLIN STOIA GELLER RUDMAN
                                & ROBBINS LLP
 7                              655 West Broadway
                                Suite 1900
 8                              San Diego, California 92101-8498
                                BY:  BONNY E. SWEENEY
 9                                   DAVID MITCHELL

10

11
     For Bank of America:       MORRISON & FOERSTER LLP
12                              1290 Avenue of the Americas
                                New York, New York 10104-0050
13                              BY:  MARK P. LADNER

14

15

16   For JP Morgan Chase:       SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
17                              Four Times Square
                                New York, New York 10036
18                              BY:  PETER E. GREENE

19

20

21   For Capital One:           O'MELVENY & MYERS LLP
                                Times Square Tower
22                              7 Times Square
                                New York, New York 10036
23                              BY:  ANDREW J. FRACKMAN

24

25
```

3

```
 1   For Citibank:          SIDLEY AUSTIN LLP
                            One South Dearborn
 2                          Chicago, Illinois 60603
                            BY:  DAVID F. GRAHAM
 3

 4

 5   For the Defendant:     ARNOLD & PORTER LLP
     Visa U.S.A. and        399 Park Avenue
 6   Visa International      New York, New York 10022-4690
                            BY:  ROBERT J. VIZAS
 7                               ROBERT C. MASON
                                      AND
 8                               MARK R. MERLEY
                                 555 Twelfth Street, NW
 9                               Washington, DC 20004-1206

10

11
     For the Defendant:     HUNTON & WILLIAMS LLP
12   MasterCard             200 Park Avenue
                            New York, New York 10166-0136
13                          BY:  WESLEY POWELL
                                 KEILA D. RAVELO
14

15

16
     Court Reporter:        RONALD E. TOLKIN, RMR
17                          225 Cadman Plaza East
                            Brooklyn, New York 11201
18                          718-613-2647

19

20   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
21

22                              ***

23

24

25
```

RONALD E. TOLKIN, RMR
OFFICIAL COURT REPORTER

IN RE:  PAYMENT CARD INTERCHANGE FEE                    4

1          THE CLERK:  Civil cause for status conference.

2   Docket number 05-MD-1720.  In Re Payment Card Interchange Fee

3   and Merchant Discount Antitrust Litigation.

4          THE COURT:  Hello folks.  Good afternoon.  Happy New

5   Year.

6          MR. DAVIDOFF:  Happy New Year.

7          THE COURT:  I got your passport, which was helpful

8   as always, thank you.

9          We got a couple of motions relating to the European

10  Division documents.  Do you want to argue those together or

11  separately?  I think they are essentially the same thing.

12         Mr. Wildfang.

13         MR. WILDFANG:  Your Honor, we are happy to argue

14  them.  I know the EC has asked for deferring on this.  If it

15  is okay, I think, we talked to the defendants and we are happy

16  to bump it back to the next status conference so we can

17  address what the EC says or we are prepared to argue on that.

18         THE COURT:  I should advise you that I received an

19  e-mail directly to my chambers today from one, Rita Wezenbeek,

20  from the European Commission.  I will read it to you.  I will

21  have to post a copy later on the docket.  I just received it a

22  short while ago.

23         "Dear Judge Orenstein:

24         On 7 January 2010, the European Commission's

25  Directorate General for Competition received a copy of the

IN RE:  PAYMENT CARD INTERCHANGE FEE                    5

1   Order issued by the Court regarding the following motions

2   filed in the case in re Payment Card Interchange Fee and

3   Merchant Discount Antitrust Litigation."  And then there is a

4   summary of the motions.

5          "This Order invites the European Commission to

6   submit a letter as amicus curiae providing its views on each

7   of the pending motions to compel discovery, and to appear in

8   that capacity through counsel at the next status conference on

9   13 January 2010.

10          The Directorate General for Competition would like

11   to submit its views on the above-mentioned pending motions.

12   However, due to internal consultation procedures within the

13   European Commission we are not able to meet the deadline of 13

14   January 2010.  We would therefore respectfully like to request

15   you to grant an extension of this deadline by a week (i.e.

16   until 21 January 2010.)

17          I would be grateful for confirmation of the receipt

18   of this e-mail."

19          It is signed by Rita Wezenbeek.

20          (Matter continued on the next page.)

21

22

23

24

25

IN RE:  PAYMENT CARD INTERCHANGE FEE                    6

1          THE COURT:  Okay.  So that's the letter that was

2     established there.

3          I had also gotten a phone call, and I don't know if

4     it is from the same person, a law firm.  It was from the same

5     person suggesting that the EC might have somebody here today.

6          Is there anybody here on behalf of the EC?  That's

7     unfortunate.

8          I would just as soon hear your views, frankly.  And

9     then I'll give the EC time to put something in.  If anyone

10    feels the need to weigh in further, I'll hear it.

11         Mr. Wildfang.

12         MR. WILDFANG:  Craig Wildfang, Your Honor, for the

13    Class Plaintiffs.  And I'll be brief because I think the

14    issues are relatively straightforward.  They are similar on

15    the two motions that are pending.

16         I don't think there's any dispute that the materials

17    are discoverable in the general sense.  And the real question

18    is whether the objection of another party, such as the EC,

19    should trump the interest of the litigants in this proceeding.

20         There are a number of cases that address this in

21    various forums in the United States.  I think there are a few

22    more cases that go in our favor.  There are some cases that go

23    the other way.  It's basically a comity analysis weighing the

24    interests of this proceeding versus the interest of the EC.

25         I think the best or leading case on this is In Re:

1   Vitamins, where the Court, Chief Judge Hogan, had, actually, a

2   series of motions raising these issues and granted motions to

3   compel.

4           The Vitamins case was, I think, a more compelling

5   case for the EC in the sense that this was an international

6   cartel, there were criminal proceedings pending.  Among the

7   materials that were requested and were subject to the motion

8   by the plaintiffs were leniency submissions under the EC

9   Leniency Program.

10          In this case, these are not submissions made by

11  parties seeking leniency in the EC.  These are civil matters.

12  They were voluntarily made.  There's not a criminal proceeding

13  pending.

14          So we think sort of a balancing of the interest of

15  the parties here weighs heavily in favor of the Class

16  Plaintiffs.  Both of the things that we're seeking are in the

17  nature of summaries of evidence.

18          With respect to the statement of objections, this is

19  a set of findings by EC related to their investigation of

20  Visa.  We have similar materials from their investigation of

21  Mastercard.  We know that there are relevant materials in

22  there.

23          In fact, highly relevant.  Many of the same issues

24  that we are addressing or will address are addressed in the EC

25  proceedings.  So we think on both the summary -- the statement

1   of objections and the oral hearing summary or transcript, the

2   balance goes in our favor.

3          If Your Honor would permit me, there is a recent

4   decision from the District of Connecticut in In Re: EPDM.  In

5   which, the Court did not address the discoverability, but

6   addressed the admissibility of statements of objections.

7          THE COURT:  What was that?

8          MR. WILDFANG:  If I can hand up that decision?

9          THE COURT:  Yes, please.

10         I was given two documents.

11         MR. WILDFANG:  They're the same.  Hopefully they're

12   the same.

13         This is a decision dated December 29th, 2009, in the

14   District of Connecticut.  The issue the Court was addressing

15   there is whether the Court should admit, for purposes of

16   summary judgment and trial, a statement of objections made by

17   the EC, and I believe the relevant discussion is at pages 8 to

18   13 of the LexisNexis copy.

19         The Court does not address the issue of balancing of

20   comity.  But, obviously, the Court had the document.  The

21   question was is it admissible.  So, clearly, the Court must

22   have, at sometime, determined that the matter was

23   discoverable.

24         So, Your Honor, I don't have additional comments.

25   I'm happy to answer any questions.  I think, again, it boils

1    down to a balancing of the interest of the parties.  And the

2    EC, to date, in this proceeding, has not formally objected.

3    They have sent correspondence that, you know, reminded the

4    parties of their general policies.  But the policies are not

5    definitive one way or another.

6           And obviously, we are interested in what position

7    they might take in this matter.  But we think, even if they

8    formally object, the Court should grant our motion.

9           THE COURT:  I think, for the most part, the

10   application of the five factors that the Court's used are

11   fairly simple.  Could you just articulate for me your

12   understanding of the importance to the litigation of your

13   request in each of the motions.

14          MR. WILDFANG:  Well, let me start with the statement

15   of objections.

16          THE COURT:  And I'm sorry.  Also, the final one

17   about what noncompliance would do to the interest of the

18   United States.

19          MR. WILDFANG:  Well, when you say noncompliance

20   effect on the interest of the United States, in terms of this

21   proceeding or the Department of Justice investigation, which,

22   of course, is looking at some of those?

23          THE COURT:  Either of those.  I see that one of the

24   factors is, you know, if I don't give you what you want, what

25   interest of United States would be undermined?

1        MR. WILDFANG:  Let me answer that question first.

2        Obviously, the interests of the United States are in

3   the effective enforcement of the antitrust laws in making

4   decisions in antitrust cases based on a full factual record.

5        THE COURT:  But that really falls into the first

6   factor, really.

7        MR. WILDFANG:  Well, I think you have to think about

8   whether, if the party seeking the disclosure here is deprived

9   of this information, will that potentially have a material

10  effect on the ability to prosecute the claim.

11       THE COURT:  Yes.

12       MR. WILDFANG:  Not knowing exactly what's in the

13  statement of objections, obviously, makes it a little more

14  difficult for us.

15       THE COURT:  I know.  But to the extent that there

16  are five separate factors identified, I can certainly

17  contemplate scenarios where the fifth factor, about the

18  interest of the United States as such, might rise higher than

19  the effect of the litigation not getting documents.

20       I'm just wondering if you have any argument on that

21  factor, or it really is a matter of what's the importance to

22  this litigation of what you're seeking.

23       MR. WILDFANG:  Well, I think it's primarily the

24  latter.  But there is this fifth factor here, where we know

25  that the Department of Justice and several state's attorney

1   general are also investigating some of the same conduct.  And

2   they are getting from us what we obtained in discovery.

3           THE COURT:  I take it there's -- regardless of what

4   happens here, they will have alternate ways of trying to get

5   the same items, probably more directly.

6           MR. WILDFANG:  Presumably, yes.

7           THE COURT:  Unless I missed something, I don't see

8   how that fifth factor applies in this case to help you any

9   more than the first factor does or doesn't.

10          MR. WILDFANG:  I agree.  I think it's something to

11  keep in mind.  And I think, you know, the magnitude of the

12  litigation is also a factor.  I think it fits into both factor

13  one and the fifth factor as well.

14          THE COURT:  So tell me about the first factor.

15          MR. WILDFANG:  The importance to this litigation?

16          THE COURT:  Yes.

17          MR. WILDFANG:  Well, again, we don't know exactly

18  what is in the statement of objections.  We can infer, I

19  think, based upon what we know from public sources, and from

20  what we know about the similar investigation by the EC of

21  Mastercard, that many of the issues overlap.

22          Including issues related to the setting of the

23  default interchange fee, the use of the anti-steering

24  restraints to limit the ability of merchants to steer to more

25  competitive payment options, the IPOs of Mastercard, which we

1    know was a major subject of the Mastercard EC proceeding.

2         So I think it's reasonable to infer that those are

3    all items that are addressed by the EC.  And the findings that

4    they may have made, I think, are highly relevant to this

5    proceeding and to helping the jury understand.

6         One of the points, I think, made by the District of

7    Connecticut in admitting this document in that proceeding, is

8    that the hearsay rules permit them to be introduced because

9    there is a presumption that public officers are doing a good

10   job of obtaining evidence and evaluating that evidence.

11        And so a document like the statement of objections

12   probably has a higher evidentiary value than just putting in

13   the evidence itself as to the IPO.

14        THE COURT:  On that, I assume there might be some

15   objection based on 403, Rule 403, as to such findings.

16        MR. WILDFANG:  Yes.

17        THE COURT:  But at a more fundamental level, my

18   experience with trying to get one fact finder's findings in

19   front of another fact finder, it typically then sort of

20   compromises the role of fact finder in the proceeding where

21   you're trying to introduce that evidence.

22        Are you suggesting that the findings themselves

23   would be admissible?

24        MR. WILDFANG:  I think that's exactly what the

25   District of Connecticut decision has determined.  But,

1  obviously, that's a finding for another day.

2          THE COURT:  That's true.

3          MR. WILDFANG:  We think, at a minimum, since our

4  adversaries have access to this information, we should have

5  access to it.  And if there's an argument that, you know,

6  their prejudicial value outweighs the probative value, and we

7  can have that argument at the appropriate time.

8          But we think, on the balancing of, you know, our

9  need for it in this case as opposed to the EC's interest,

10  which we don't think are significantly compromised by the

11  disclosure here.  Obviously, there's a protective order.

12          Similar materials from the EC have been disclosed

13  without apparently doing any harm to their enforcement

14  policies.  So we think, both with respect to the statement of

15  objections and the oral hearing transcript, that the balance

16  goes significantly in our direction.

17          I should note, with respect to the hearing

18  transcript, Mastercard had agreed, initially, to provide it to

19  us.  So the only thing standing in the way is, you know,

20  whatever objection or interest EC has.

21          THE COURT:  Well, unless I hear otherwise from your

22  adversaries, I've been assuming that it's purely an issue of

23  comity and there's no other discoverability objection.  But

24  let me hear from your adversaries.

25          Mr. Powell, Mr. Merley.

IN RE:  PAYMENT CARD INTERCHANGE FEE                14

1        MR. POWELL:  Your Honor, Wes Powell from Mastercard.

2        That's correct, Mastercard had agreed to produce the

3   oral recordings as long as it got consent from the EC.  And

4   from Mastercard's perspective, it very clearly hadn't gotten

5   consent from the EC.

6        I understand that there's this caveat language in

7   the correspondence about whether or not it reflects a decision

8   of the commission or not.  But the hearing officer assigned to

9   the matter says pretty directly that Mastercard is reminded

10  not to produce this.

11       So in terms of the question whether we feel

12  comfortable voluntarily producing it --

13       THE COURT:  Well, it's not voluntarily.  And perhaps

14  it's a subtle distinction, but I don't expect you to -- if you

15  voluntarily gave it, we wouldn't be here.

16       MR. POWELL:  Right.

17       THE COURT:  We'd be here, but not on this issue.

18       MR. POWELL:  And obviously, Your Honor, if you were

19  to order it produced, Mastercard would comply with your order.

20  But having said that --

21       THE COURT:  I understand.  But is there an objection

22  to me doing it; or is it just merely do what you want, we just

23  don't want to get in trouble with the EC, and we'll let them

24  say what they have to say?

25       MR. POWELL:  Our objection is only this, Your Honor:

1  Which is, it is not a welcome position for Mastercard to be

2  in, to have on the one hand an order from this Court directing

3  us to produce the material, and an objection, which we take

4  seriously, from the commission or from the commission's staff

5  saying not to do it.

6           THE COURT:  Right.  If you were in that position,

7  I'd want you to consider it seriously.  But so far you're not.

8  I mean, the letter from the EC, it says, Here's what we told

9  you before, you keep this stuff confidential.

10          But I don't see this as ambiguous.  They're

11  explicitly not weighing in on what you may or may not do.

12  They're just saying, you know, we're not consenting to it.

13          MR. POWELL:  Well --

14          THE COURT:  I have a letter in front of me which was

15  written over a year ago.  And that, in itself, suggests that,

16  if that's the last word we've heard on it, one wonders where

17  the EC has been.  But as the last word, where is it saying

18  that they object to the relief that Plaintiffs seek here?

19          MR. POWELL:  What I was referring to, Your Honor, is

20  the letter from the hearing officer, which --

21          THE COURT:  Karen Williams.

22          MR. POWELL:  Yes.

23          -- which says, "Mastercard is reminded not to

24  produce the material."  The phrase that I'm referring to is --

25          THE COURT:  "I remind you that Mastercard should

1 abstain from disclosing the tapes of the hearing in the

2 discovery procedure in the U.S."

3      MR. POWELL: Exactly, Your Honor. That's what we're

4 reacting to in terms of our position on this.

5      THE COURT: Right. And then it goes on. Is there

6 some reason -- I mean, did you expect I wouldn't read the next

7 sentence?

8      MR. POWELL: About the commission not taking a

9 position?

10      THE COURT: Yeah. I mean, come on. They're saying,

11 look, you shouldn't do this. And that's voluntarily. But in

12 terms of an objection that they have a stated interest in

13 this, that's the way you put it in your letter.

14      And in fact, you put it more firmly, "Mastercard has

15 been expressly directed not to produce." So that's a little

16 stronger than, I think, the statement that we both just read.

17      But you refer to the stated interest of the EC.

18 They haven't stated anything in this.

19      MR. POWELL: Let me say, we're not sort of taking on

20 the EC's position here. The EC is going to put in their

21 position and we -- in response to Your Honor's order. We

22 really defer to them to articulate their -- the strength of

23 their objection at this stage.

24      For Mastercard it's been a question of voluntary

25 production. And if the EC is not more definitive in its

1  position about this when it makes its submission in a week,

2  we're not sort of trying to take on a fight that the EC hasn't

3  taken on or isn't going to take on.

4          THE COURT:  Right.  Are you in any -- does complying

5  with an order, if I issue one to make the disclosure, does

6  that put you in any jeopardy, that you're aware of, with the

7  EC?

8          MR. POWELL:  My understanding, Your Honor, from

9  Mastercard counsel in Europe, is that the commission itself

10  does not have the ability to level a penalty or fine in

11  response to this.

12          It has some ability, if it felt strongly enough, to

13  seek an injunction in the European court of general

14  jurisdiction.  How likely that is, you know...

15          THE COURT:  An injunction upon?

16          MR. POWELL:  An injunction directed at Mastercard to

17  prevent it from producing the document.

18          THE COURT:  Okay.

19          MR. POWELL:  And, again, I guess we can look at what

20  the EC says in a week and judge how likely that is or not.  We

21  had intended to simply report what the EC has said by way of

22  an explanation of why we've not voluntarily produced this.

23          THE COURT:  One thing that today's discussion helps

24  with is you can give me some specific things to ask of the EC,

25  as long as we're going to be weighing in after we're all done

1   here.  I want to know where they've been for a year.

2          But also, what the likelihood is that there will be

3   -- that they will subject you or your codefendants to

4   conflicting legal obligations.

5          MR. POWELL:  The only other thing I'll add on that,

6   Your Honor, hopefully the EC will give some explanation of

7   this in the submission.  I understand from Mastercard counsel

8   in Europe that in essentially none of these proceedings, or

9   very few proceedings like this, would the commission have

10  taken a vote on the question of whether or not to object in a

11  circumstance like this.

12         So that the only objection we would get would be

13  from the hearing officer.  And that's with sort of the

14  standard caveat language to make clear that it doesn't reflect

15  an actual vote of the commission having taken place.

16         THE COURT:  Yes.

17         MR. POWELL:  So from the DD prompt prospective,

18  their objection has the force of a commission decision.  But,

19  again, I'm simply reporting what I understand their position

20  to be.

21         THE COURT:  You're in the unfortunate position of

22  carrying somebody else's water, and I recognize the limits of

23  that.

24         All right.  Mr. Vizas.

25         MR. VIZAS:  Yes, Your Honor.

1        I am one step removed from where Mr. Powell is.  We

2   were also informed by the commission that we were not to

3   disclose this or turn it over to any one, unless we have the

4   explicit prior authorization of the commission.  And, again,

5   my information is derivative from European counsel.

6            In Visa's situation, we were given a copy of the

7   statement of objections with the caveat that we weren't

8   supposed to disclose it.

9            THE COURT:  Yes.

10           MR. VIZAS:  This is, primarily, an action between

11  the commission, Visa Europe, which, if you remember, didn't

12  join Visa the rest of the world.  So we're a step removed.

13  There's one Visa relief sought there regarding an interchange

14  rate in Europe that we don't set.

15           So in our case, I think, as far as going back to the

16  first criteria that you discussed with Mr. Wildfang, it's

17  often tenuous as to what to say as to this litigation.

18           Having said that, we're basically --

19           THE COURT:  In the same boat.

20           MR. VIZAS:  In the same boat, yes.

21           THE COURT:  All right.  Okay.  Well, I'm not going

22  to rule on this -- actually, one last question for either

23  Mr. Powell or Mr. Vizas, whichever one wants to answer it.

24           I know, from my old practice in criminal law,

25  there's sort of different levels of authority when a

1  government official can say don't disclose this, some of which

2  is -- really does have a force of law.  Some of which is we'd

3  really appreciate it if you didn't, and we may think worse of

4  you if you do.

5        How would you characterize what the EC has said to

6  you thus far; not in the letters, but just initially when they

7  said, you know, This is not to be disclosed?

8        MR. POWELL:  Again, having spoken with Mastercard's

9  counsel in Europe handling this, their view of this was an

10 objection that came from a very senior official in the

11 competition authority.  And that it takes it -- I'm not

12 answering your question.

13       THE COURT:  I think the problem we're having is I'm

14 not talking about the objection, to use that phrase, about the

15 letter.

16       The initial instruction, you know, when you're given

17 something, Don't disclose this.  You know, I could tell that

18 to a grand jury witness, Please don't say this anywhere, or

19 Please don't disclose this subpoena, but I didn't have the

20 authority to say you may not.

21       Is this the sort of thing, is it the same sort of

22 thing, or is it something where they tell you not to disclose

23 it before anyone else has even requested it, you're under a

24 legal obligation not to disclose it?

25       MR. POWELL:  That's my understanding, that having

1    received the direction or the undertaking of confidentiality,

2    Mastercard is legally barred from disclosing it.

3            THE COURT:  I am granting, obviously, the EC's

4    motion to weigh in later.  But I'm going to ask them to answer

5    a couple of questions when they do.

6            MR. WILDFANG:  Your Honor, two issues.

7            First, depending upon what the EC ends up saying, we

8    may seek leave to submit something.

9            THE COURT:  Yes.

10           MR. WILDFANG:  Secondly, I want the Court to know

11   that we had a brief conversation with the hearing officer some

12   months ago.  We haven't had any recently.  We may want to

13   contact them, unless the Court thinks that would be improper.

14           THE COURT:  No.  If you can all work this out,

15   great.  Obviously, try to do that before the deadline for them

16   to get something in in a week.

17           MR. WILDFANG:  Okay.

18           THE COURT:  Okay.  Old business that we may not be

19   resolving today, but the motion to compel about assertions of

20   privilege.  I got the impression from your staff support you

21   didn't actually anticipate arguing it today so much as talking

22   about when and how it will be resolved.

23           MR. WILDFANG:  Yes, Your Honor.

24           Craig Wildfang for Class Plaintiffs.

25           Mr. Stewart has been leading that issue for us is