# KENNY NACHWALTER

Direct Line
(305) 381-7472
E-Mail
wblechman@kennynachwalter.com

1100 MIAMI CENTER
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131-4327
TELEPHONE 305.373.1000
FACSIMILE 305.372.1861
WWW.KENNYNACHWALTER.COM

June 10, 2010

Honorable James Orenstein                                                                                                   *Via ECF*
United States Magistrate Judge
United States Federal Courthouse
225 Cadman Plaza East
Room 456 North
Brooklyn, New York 11201

Re:   ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation - MDL No. 1720***

Dear Judge Orenstein:

In accordance with the Court's Order of June 3, 2010, we write on behalf of the Individual Plaintiffs to comment on the application of *American Needle* to issues in MDL 1720.

The Class Plaintiffs have addressed the significance of *American Needle* to their claims in these proceedings which deal with the interplay between the networks' corporate forms and their contingent antitrust liability for the collective setting of interchange rates and operating regulations (*i.e.*, the Merchant Restraints) both before and after the Visa and MasterCard IPOs. We do not repeat those points here.[1]

We write separately to comment briefly on why *American Needle* bolsters the Individual Plaintiffs' antitrust claims challenging the networks' Merchant Restraints, *i.e.*, the anti-steering rules including the no surcharge rule, the no discount rule, the no discrimination rule, etc. *See, e.g.,* Kroger Amended Complaint ¶¶ 1, 23(g)-(h), 26, 40, 67-71, 73-77, 96, 102.

---

[1] At page 10 of the decision, *American Needle* cites to *Freeman v. San Diego Ass'n of Realtors*, 322 F. 3d 1133 (9th Cir. 2003), which contains the following quotes that we think further support the Class Plaintiffs' and Individual Plaintiffs' claims: "Defendants can't turn a horizontal agreement to fix prices into something innocuous just by changing the way they keep their books," and "the Sherman Act presumes that competition, not cartel pricing, best ensures quality products for consumers, regardless of any empirical evidence to the contrary." *Id.* at 1146, 1152.

TENNESSEE OFFICE
215 WEST BROADWAY STREET, SUITE D
ROGERSVILLE, TENNESSEE 37857-3280
TELEPHONE 423.272.5300
FACSIMILE 423.272.4961

TEXAS OFFICE
ONE CONGRESS PLAZA
111 CONGRESS AVENUE, SUITE 1060
AUSTIN, TEXAS 78701
TELEPHONE 512.480.8023
FACSIMILE 512.480.8037

WASHINGTON SATELLITE OFFICE
1101 PENNSYLVANIA AVENUE, N.W., 6TH FLOOR
WASHINGTON, D.C. 20004-2436
TELEPHONE 202.756.4373
FACSIMILE 202.756.7323

**Honorable James Orenstein**                                              June 10, 2010
<u>                                              Page 2                                              </u>

      The Individual Plaintiffs allege that the Merchant Restraints insulate the networks from competing on price (*i.e.*, interchange rates) for merchant acceptance of each network's payment cards at the point of sale. Thus, if a cardholder presents for payment a high cost Visa rewards credit card, Visa's operating regulations prohibit the merchant from surcharging that Visa card either to cover the merchant's cost of acceptance or to steer the cardholder to pay with another payment method (or card) that is less expensive for the merchant to accept. In that situation, the cardholder gets to decide whether he values his credit card rewards more than the surcharge amount – in which event he uses his Visa rewards credit card and gets the rewards and the merchant's higher acceptance costs are mitigated by the surcharge – or whether he wants to avoid the surcharge and thus pays with (say) a MasterCard debit card. The Individual Plaintiffs maintain that absent the Merchant Restraints, in an environment in which merchants can steer cardholders across payment methods, the card networks will have to compete on price by lowering interchange rates to avoid being disfavored by a merchant at the point of sale. Our position is supported by the discovery record and expert economic work in this case, and the actual experience in countries like Australia where the networks had to remove the no-surcharge rule and now must compete on price for merchant acceptance.

      The *American Needle* decision supports the Individual Plaintiffs' position in MDL 1720 that in both its prior association form and its new network form, the activities of Visa and MasterCard in formulating and enforcing their Merchant Restraints are subject to antitrust scrutiny. In *American Needle*, the NFL teams, acting collectively under the guise of NFL Properties, eliminated competition among companies to sell apparel to each team. The plaintiff alleged, as do Individual Plaintiffs in MDL 1720, that NFL Properties' removal of competition among apparel providers resulted in higher prices to customers for team apparel. Under NFL Properties' challenged exclusivity policy, each NFL team would enjoy supracompetitive profits from the sale of apparel at the higher prices made possible by the elimination of competition among apparel suppliers for contracts with each NFL team. This is comparable to each network and its banks charging supracompetitive interchange rates to merchants who are incapable of getting competitive pricing because of the Merchant Restraints.

      We will be available to discuss *American Needle* with the Court at the upcoming Status Conference if Your Honor would like to hear more.

                                                               Respectfully,

                                                               */s/ William J. Blechman*

                                                             William J. Blechman
                                                            For the Individual Plaintiffs

WJB:mb
cc:     Counsel of Record (via ECF)
379989.1