UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|   |   |   |
|---|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | : : : : : | x<br>MDL No. 1720(JG)(JO)<br><br>Civil No. 05-5075(JG)(JO) |
|   | : | **ELECTRONICALLY FILED** |
| This Document Relates To:<br><br>ALL ACTIONS. | : : : : : : | JOINT CASE STATUS REPORT AND PROPOSED AGENDA FOR CASE MANAGEMENT CONFERENCE NO. 35 |
|   |   | x |

81969688.5

Class Plaintiffs, Individual Plaintiffs and Defendants submit this Joint Case Status Report and Proposed Agenda for Case Management Conference No. 35 on February 17, 2011. Where the parties' positions differ, Plaintiffs' and Defendants' positions are detailed separately.

## I.    MOTIONS

### A.    Pending motions.

1. Motion to Dismiss the Second Consolidated Amended Class Action Complaint and to Strike Chase Paymentech Solutions, LLC. DE 1171-75. This motion has been fully briefed and argued.

2. Motion to Dismiss the First Amended Supplemental Class Action Complaint. DE 1179-81. This motion has been fully briefed and argued.

3. Motion to Dismiss the Second Supplemental Class Action Complaint. DE 1176-78. This motion has been fully briefed and argued.

4. Class Plaintiffs' Motion for Class Certification. DE 1165-67. This motion has been fully briefed and argued.

5. Defendants' Motion to Exclude the Opinions of Dr. Gustavo Bamberger. DE 1280-82. This motion has been fully briefed and argued.

6. Class Plaintiffs' Motion to Compel the Production of Evidence that has been Withheld Under a Claim of Privilege. DE 1261, 1265, 1266.

## II.    SCHEDULING AND PREPARATION FOR TRIAL

### A.    Case schedule through trial.

1. <u>Plaintiffs' position</u>:

The Class Plaintiffs and the Individual Plaintiffs intend to ask the Court to set a firm trial date in the first quarter of 2012.

The parties will serve their dispositive and *Daubert* motions on February 11, 2011, and the briefing on those motions will be complete on June 10, 2011. The supplemental and any additional discovery described below can easily be completed in 2011. As the Class has made clear since the commencement of this action, its claims for equitable relief are equally as important as its damages claims. Although the reforms resulting from Dodd-Frank and the DOJ consent judgment provide important elements of relief for merchants, more is necessary, especially with respect to credit cards. And, of course, the Class Plaintiffs' damages claims increase every day that Defendants continue to impose interchange fees on merchants that accept Visa and MasterCard cards.

The Individual Plaintiffs will be prepared to try their damage and equitable claims together, or their damage claims which will be a precursor to an injunction trial, at the first available opportunity for the Court.

All of the above provides a persuasive reason for the Court to set a firm trial date. While there are potential sources of delay that may have to be dealt with, Class Plaintiffs believe the setting of a trial date should not anticipate potential sources of delay that may never happen, or, if they occur, may be handled in a way that would not necessarily require a delay in the trial.

On January 28 and 31, 2011, Class Plaintiffs and Individual Plaintiffs respectively sent Defendants a letter requesting to start a dialogue regarding a trial schedule. At the status conference, Plaintiffs hope to be in a position to share the results of that dialogue with the Court and to inquire into the Court's wishes and availability for a trial date.

    2. <u>Defendants' position</u>:

Defendants believe the request for a trial date is premature. As indicated above in Section I, Defendants' motions to dismiss and Class Plaintiffs' class certification motion are pending. On

81969688.5

February 11, the parties will serve summary judgment motions. It is likely that any decision on motions to dismiss or summary judgment will be appealed to Judge Gleeson. Moreover, with respect to class certification, in addition to an appeal to Judge Gleeson, the losing party will likely seek an interlocutory appeal to the Court of Appeals pursuant to Fed. R. Civ. P. 23(f). Given the uncertainty regarding the timeframe for resolving these issues, all of which will necessarily impact the trial of this case, establishing a trial date would be premature at this stage. Defendants will be prepared to discuss this issue with the Court at the upcoming conference.

**B.      Proposed admissibility stipulation.**

In a further attempt to prepare this case for trial, Plaintiffs have raised the issue of beginning work on a proposed document-admissibility stipulation for trial. Plaintiffs hope to have sent Defendants a draft stipulation before the date of the status conference. As discussions on this stipulation progress, the parties will keep the Court informed and raise any issues that would benefit from the Court's attention.

**C.      Stipulation between the Individual Plaintiffs and Visa and MasterCard.**

The Individual Plaintiffs sued Visa and MasterCard, but not the banks, to keep the focus of their case on the Network Defendants' behavior — and notably the point of sale rules — regardless of the Network Defendants' corporate form. To that end, the Individual Plaintiffs entered into an agreement with Visa and MasterCard earlier in the case to allow the Individual Plaintiffs to amend their pleadings to add parties without objection, something that the Individual Plaintiffs have thus far not had to do. Since then, the Individual Plaintiffs have been in separate discussions with Visa and MasterCard on the form of Stipulations under which, if executed and approved by the Court, the Individual Plaintiffs would not add any Visa Defendants' financial institution members or any MasterCard Defendants' financial institution members as party

Defendants in the Individual Plaintiffs' cases against Visa and MasterCard. The Individual Plaintiffs have occasionally informed the Court about this possibility, *see, e.g.*, Status Report of Jan. 13, 2010 at 9 (Dkt. 1336). The Individual Plaintiffs and Visa and MasterCard have now executed Stipulations in this regard which will be presented to the Court for its consideration in a separate submission in advance of the upcoming Status Conference.

    **D.**    **Further status conferences.**

        1. Plaintiffs' position:

As trial approaches, Plaintiffs anticipate that more frequent status conferences will again become necessary and would like to discuss future status-conference dates with the Court.

        2. Defendants' position:

The Defendants are prepared to discuss the timing of future status conferences with the Court.

**III.**    **DISCOVERY**

    **A.**    **Discovery supplementation.**

        1. Class Plaintiffs' position:

The principal discovery cut-off date for fact discovery was December 31, 2008. There has been only limited supplementation since that date, mainly relating to certain core documents (Defendants' rules, board materials, agreements with banks and merchants, and data) and the production of documents that Defendants produced to the Department of Justice. Additional supplementation of already-served discovery will be necessary prior to trial in order to complete the factual record relevant to the trial of Class Plaintiffs' claims. Rather than debate to what extent Fed. R. Civ. P. 26(e) requires the parties to supplement previously served discovery, Class Plaintiffs proposed that the parties meet and confer on the scope and timing of discovery

supplementation, hopefully prior to the status conference set for February 17, 2011. The parties can then report to the Court regarding any agreements or disputes as to the supplementation of discovery.

In addition, as the parties have discussed at prior status conferences, there will likely be a need for additional discovery related to factual disputes and affirmative defenses once those are disclosed by Defendants via the service of answers to Class Plaintiffs' three operative complaints. Since Defendants moved to dismiss each of those complaints under Fed. R. Civ. P. 12(b)(6), Class Plaintiffs believe that there is no reason to further delay the identification of any disputed facts or affirmative defenses that Defendants may assert in their answers to the three complaints, even though the motions to dismiss remain unresolved. In addition, the changes required for Defendants to comply with the reform embodied in Section 920 of the Electronic Funds Transfer Act as amended by Section 1075 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and the consent judgment obtained in October 2010 by the United States Department of Justice will necessitate additional discovery, as well, in order that the Class Plaintiffs may assess their impact on the Class's equitable and damages claims.

We believe that the simplest and most straightforward way to accomplish this would be for the Defendants to agree to, or for the Court to order, the filing of provisional answers by each Defendant to each of the three operative Class complaints. In previous correspondence on this topic, Class Plaintiffs defined "provisional answers," as answers that Defendants would interpose assuming the current operative complaints were sustained under Rule 12(b)(6), without prejudice to Defendants' right to modify those answers, if necessary, upon final determination of the current motions to dismiss. Alternatively, Class Plaintiffs could seek leave of Court to serve written discovery on Defendants, requesting them to identify complaint allegations that they

- 5 -

dispute and affirmative defenses that they intend to raise. Class Plaintiffs see no prejudice and only a modest burden in having the Defendants provide this information. Once defendants identify defenses and factual disputes—through provisional answers or otherwise—the Class Plaintiffs should be permitted to serve new discovery seeking materials relevant to the newly identified factual disputes and affirmative defenses. Any disputes that might arise in connection with the new discovery could be handled in the usual manner the parties have successfully utilized during the five years in which this case has been pending.

2. Defendants' position:

Since the close of fact discovery in December 2008, the Defendants have updated their document productions on three occasions. The Network Defendants supplemented their initial document productions with board minutes, rules manuals, foreign regulatory filings, interchange announcements, and certain agreements with banks and merchants, and updated their prior productions of certain categories of data through the end of 2009. The Networks also produced a complete set of their productions to the DOJ, which contained over 150,000 documents from the files of over 30 custodians.

The Defendants are willing to discuss further supplemental document productions that are appropriate at this stage of the case, where expert discovery has closed and summary judgment briefing is underway. Defendants also expect to seek reciprocal supplemental discovery from both the Class and Individual Plaintiffs. As one example, Defendants would want information on any changes to the Class and Individual Plaintiffs' business plans and point-of-sale practices in light of the Dodd-Frank Act and the DOJ consent decree. Defendants will meet and confer with Plaintiffs about these issues.

Finally, the Defendants do not agree with the Class Plaintiffs' request for so-called "provisional answers." Defendants believe the Federal Rules of Civil Procedure should govern, and those rules do not require Defendants to answer Class Plaintiffs' complaints while motions to dismiss remain pending. Defendants previously offered to provide letters identifying the affirmative defenses that each defendant might raise in an answer (to the extent not already covered by the responses to prior complaints). Defendants are willing to discuss this option with the Class Plaintiffs again, but believe the filing of "provisional answers" is not necessary or required under the Rules.

## IV. UNSEALING THE RECORD IN MDL 1720

### A. Class Plaintiffs' position.

As is usually the case, one of the first things that occurred in this case was the entry of a Protective Order (Dkt. 58, 269). That Protective Order defined materials that could be accorded treatment as "Confidential Information" or "Highly Confidential Information" and permitted the party producing the information to designate discovery materials as such. Section VIII of that Protective Order required that *all* Confidential or Highly Confidential Information that was filed with the Court be filed under seal. Because the Defendants designated as Highly Confidential almost all of the information and documents that they produced in discovery, whenever any filing with the Court contains, or even refers to, such information, it has been filed under seal.

As the parties prepare for filing with the Court their dispositive motions, Class Plaintiffs believe that the Court should initiate a process for unsealing as much of the record as possible in accordance with the vast weight of authority that recognizes the public's right of access to judicial documents. *Ello v. Singh*, 531 F. Supp. 2d 552, 583-84 (S.D.N.Y. 2007). In *In re Visa Check / MasterMoney Antitrust Litigation*, Judge Gleeson ordered the vast majority of the

- 7 -

81969688.5

Court's file to be unsealed at the time of the filing of motions for summary judgment. In doing so, Judge Gleeson was responding to a motion brought by Dow Jones & Co.[1] Although no media organization has yet filed such a motion in this case, such a motion should not be necessary for the Court to initiate a similar process in this case that would provide public access to the Court's files.

Before the status conference, Class Plaintiffs intend to confer with the other parties to see if an agreement can be reached as to how to proceed on this issue.

### B. Defendants' position.

Class Plaintiffs first raised this issue with Defendants in exchanging a draft of this Status Report. Although much of the material produced in this case has been designated "Highly Confidential" or "Confidential" because it relates to the parties' non-public, competitively sensitive business material, the parties have already engaged in lengthy negotiations to generate public versions of the key court papers. The parties specifically engaged in this process following the filing of Class Plaintiffs' amended pleadings and motion for class certification, as well as Defendants' motions to dismiss. As a result of those negotiations, the public versions of those materials contain very limited redactions. To the extent there are additional documents or portions of documents that Class Plaintiffs wish to unseal, they should identify those documents so the parties can have a meaningful discussion about the possible public disclosure of those materials.

---

[1] For the Court's and the parties' convenience, attached to this Status Conference Report are the Dow Jones motion, a transcript of a status conference at which the motion was discussed, and Orders issued by Judge Gleeson and Magistrate Judge Mann unsealing documents.

- 8 -

Contrary to Class Plaintiffs' suggestion, the *Wal-Mart* case does not establish precedent for unsealing of the entire case record. Unlike this case, the parties in *Wal-Mart* did not negotiate to create public versions of case filings but instead filed entire documents under seal. Likewise, while Judge Gleeson issued an order to unseal the *Wal-Mart* record, he also established a process whereby the parties (and non-parties) could apply to Magistrate Judge Mann to maintain certain portions of the case record under seal. In response to applications by plaintiffs, defendants and certain third-parties in that case, Magistrate Judge Mann directed that some of the case record be maintained under seal. That process in *Wal-Mart* resulted in redacted public versions of documents that contain a similar number of redactions as the public versions of documents already on file in this case.

## V. MEDIATION

### A. Class Plaintiffs' position

The last in-person mediation session that the Class Plaintiffs attended was the session in chambers with the Court on July 21, 2010. Other than a brief meeting with representatives of MasterCard in mid-September, 2010, there have been no meaningful discussions between the Class Plaintiffs and Defendants. Professor Eric Green has continued to provide periodic updates on the mediators' efforts to advance discussions, but no further steps or discussion with Class Plaintiffs have taken place. Class Plaintiffs remain open to further discussions as directed by the mediators and/or the Court, but also believe that the best approach to finally resolving the case is to schedule a trial on the merits at the earliest opportunity after dispositive motion practice is concluded. The Class believes it would be beneficial to the process if we could provide a more complete review of the status of the mediation at the status conference on February 17. We

suggest that the Court may want to schedule another session in chambers with the Court at that time similar to the one held on July 21.

### B. Individual Plaintiffs' position:

As the Court is aware, the Individual Plaintiffs have been involved in a satellite mediation with Defendants for some time supervised by Professor Eric Green. Those settlement talks have involved a number of in-person meetings with Defendants and separate meetings with the mediator over many months. The parties have made progress and exchanged proposals and counter proposals. Of late, the Defendants have presented the Individual Plaintiffs with a settlement proposal which the Individual Plaintiffs anticipate responding to prior to the next Status Conference. The Individual Plaintiffs regard the Defendants' proposal as a constructive step in the settlement process.

### C. Defendants' position:

The Defendants have taken significant steps forward in their mediation efforts with Professor Eric Green, particularly with respect to the Individual Plaintiffs but which also will have relevance to the discussions we plan to have with the Class Plaintiffs. In fact, Defendants are, and have been for some time, awaiting a proposal from Class Plaintiffs. The Defendants and Individual Plaintiffs have made significant progress, and Defendants are hopeful about the ongoing mediation efforts with Prof. Green and anticipate that the process will move forward rapidly.

| | |
|---|---|
| DATED: February 3, 2011 | **ROBINS, KAPLAN, MILLER & CIRESI L.L.P** |

      *s/ K. Craig Wildfang*
K. CRAIG WILDFANG
THOMAS J. UNDLIN
RYAN W. MARTH

2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612-349-8500
612-339-4181 (fax)

**ROBBINS GELLER RUDMAN & DOWD LLP**
PATRICK J. COUGHLIN
BONNY E. SWEENEY
JONAH H. GOLDSTEIN
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
619-231-7423 (fax)

**BERGER & MONTAGUE, P.C.**
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF

1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
215-875-4604 (fax)

Co-Lead Counsel for Plaintiffs

***Submitted By Agreement of All Parties in MDL 1720***