UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION <br><br> This Document Relates To: ALL ACTIONS | MDL Docket No. 1:05-md-1720-JG-JO |

**OBJECTIONS OF
TARGET CORPORATION, MACY'S, INC., J.C. PENNEY CORPORATION, INC.,
THE GAP, INC., LIMITED BRANDS, INC., DILLARD'S, INC.,
BIG LOTS STORES, INC., ASCENA RETAIL GROUP, INC.,
THE NEIMAN MARCUS GROUP, INC., ABERCROMBIE & FITCH CO.,
SAKS INCORPORATED, CHICO'S FAS, INC., BOB EVANS FARMS, INC.,
CKE RESTAURANTS, INC., PAPA JOHN'S INTERNATIONAL, INC.,
AMERICAN SIGNATURE, INC., BOSCOV'S DEPARTMENT STORE, LLC,
NATIONAL RETAIL FEDERATION, AMERICAN BOOKSELLERS ASSOCIATION,
AND NATIONAL ASSOCIATION OF COLLEGE STORES
TO PRELIMINARY APPROVAL OF
<u>THE DEFINITIVE SETTLEMENT AGREEMENT</u>**

CLARICK GUERON REISBAUM LLP

Gregory A. Clarick
Nicole Gueron
40 West 25th Street
New York, New York 10010
(212) 633-4310

*Attorneys for Objecting Putative Class Members Target
Corporation, Macy's, Inc., J.C. Penney Corporation, Inc.,
The Gap, Inc., Limited Brands, Inc., Dillard's, Inc., Big
Lots Stores, Inc., Ascena Retail Group, Inc., The Neiman
Marcus Group, Inc., Abercrombie & Fitch Co., Saks
Incorporated, Chico's FAS, Inc., Bob Evans Farms, Inc.,
CKE Restaurants, Inc., Papa John's International, Inc.,
American Signature, Inc., Boscov's Department Store,
LLC, National Retail Federation, American Booksellers
Association, and National Association of College Stores*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

OBJECTORS ...............................................................................................................................3

ARGUMENT..................................................................................................................................8

      Standard of Review.............................................................................................................8

POINT I ..........................................................................................................................................8

      This Court Must Reject Rule 23(b)(2) Certification Because it Impermissibly
      Denies Opt-Out Rights In this Case..................................................................................8

POINT II .......................................................................................................................................13

      This Proposed Class is not Cohesive and Thus is not Certifiable Under Rule
      23(b)(2) in any Event .....................................................................................................13

POINT III......................................................................................................................................16

      Class Counsel is an Inadequate Representative of this Diverse Class.............................16

POINT IV......................................................................................................................................17

      The Settlement Agreement Cannot be Preliminarily Approved Because the
      Release and Covenant are Facially Void ........................................................................17

            A.    The Settlement Agreement Releases and Covenants Barring Future
                 Antitrust Claims are Void ...................................................................................19

            B.    The Proposed Release and Covenant Impermissibly Purport to
                 Extend to Unaccrued Claims ...............................................................................21

            C.    The Proposed Release and Covenant Cannot be Approved Because
                 They Purport to Bar Claims Not Based on the "Identical Factual
                 Predicate" of the Complaint.................................................................................22

            D.    The Proposed Release and Covenant Cannot Be Approved Because
                 they Purport To Bar Future Claims by Future Merchants not yet in
                 Existence. ............................................................................................................24

CONCLUSION..............................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................................... 17

*Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113 (2d Cir. 2011) ................................................................................................................................................. 22

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219 (2d Cir. 2006) ................................................................................................................................................. 11

*Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011) .......................................... 22

*Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 6976 (E.D. Cal. Jan. 24, 2011)..................... 23

*Brown v. Yellow Transp., Inc.*, 2011 U.S. Dist. LEXIS 52345 (N.D. Ill. May 11, 2011) ................................................................................................................................................. 11

*Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159 (W.D.N.Y. 2003) ........................... 12

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................... 8

*Fox Midwest Theatres v. Means*, 221 F.2d 173 (8th Cir. 1955) ..................................................... 19

*Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116 (8th Cir. 2005) ................................................................................................................................................. 14

*Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2007 U.S. Dist. LEXIS 11488 (N.D. Ind. Feb. 14, 2007) ................................................................................................................. 11

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) ........................................ 10

*In re Am. Express Merchants' Litig.*, 554 F.3d 300 (2d Cir. 2009) ............................................... 19

*In re Comp. of Managerial, Prof'l & Tech. Emples. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 249 (D.N.J. Jan. 4, 2006) ..................................................................................................... 13

*In re FedEx Ground Package Sys., Inc.*, 2007 U.S. Dist. LEXIS 76798 (N.D. Ind. Oct. 15, 2007) ...................................................................................................................................... 12

*In re Lehman Brothers Sec. & ERISA Litig.*, 2012 U.S. Dist. LEXIS 90796 (S.D.N.Y. June 29, 2012) ................................................................................................................................... 23

*In re Visa Check (Wal-Mart)*, 280 F.3d 124 (2d Cir. 2001) .................................................... 10, 11

*In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000) ........................ 10

*Isaacson v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 304 F. Supp.
2d 404 (E.D.N.Y. 2004) .................................................................................................. 24

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 897 (7th Cir. 1999) ...................................................... 9

*Karvaly v. eBay*, 245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................... 8

*Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191 (E.D.N.Y. 2006) ............................................ 11

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) ............................................................. 20

*Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, 1997 U.S. Dist. LEXIS 4457
(S.D.N.Y. Apr. 9, 1997) ................................................................................................. 20

*Mitchell v. Cnty. of Clinton*, 2007 U.S. Dist. LEXIS 48589 (N.D.N.Y. July 5, 2007) ................. 11

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ....................................................................... 9, 12

*Nat'l Super Spuds, Inc. v. NY Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981) ................................ 23

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................ 9, 17, 24, 25

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292 (M.D. Pa. 1995) ............................. 14

*Phillips Petro. Co. v. Shutts*, 472 U.S. 797 (1985) .................................................................. 10, 11

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226
(E.D.N.Y. Dec. 11, 2006) .............................................................................................. 23

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa.
2001) ........................................................................................................... 13, 20, 22

*Shults v. Champion Int'l Corp.*, 821 F. Supp. 520 (E.D. Tenn. 1993) ......................................... 22

*Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001) ...................................................... 25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) ....................................... 19

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204 (3d Cir. 2008) ................. 21

*Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2557-59 (2011) ...................................................... 9

*Wal-Mart v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................................... 22

*Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321 (1971) ................................................. 21

**Rules**

Rule 23 ............................................................................................................................. passim

Target Corporation, Macy's, Inc., J.C. Penney Corporation, Inc., The Gap, Inc., Limited Brands, Inc., Dillard's, Inc., Big Lots Stores, Inc., Ascena Retail Group, Inc., The Neiman Marcus Group, Inc., Abercrombie & Fitch Co., Saks Incorporated, Chico's FAS, Inc., Bob Evans Farms, Inc., Papa John's International, Inc., CKE Restaurants, Inc., American Signature, Inc., Boscov's Department Store, LLC, National Retail Federation, American Booksellers Association, and National Association of College Stores (collectively, "Objectors"), by their attorneys Clarick Gueron Reisbaum LLP, respectfully submit these objections to preliminary approval of the Definitive Class Settlement Agreement reached in *In re Payment Card Interchange Fee and Merchant Discount Litigation*, No. 1:05-md-1720, and give notice that counsel will appear on their behalf at the November 9, 2012, hearing.

### PRELIMINARY STATEMENT

These 17 companies represent more than 17,000 separate retail outlets and more than $150 billion in annual sales. The membership of the National Retail Federation, American Booksellers Association, and National Association of College Stores consists of tens of thousands of additional retail outlets. Together with other putative class members filing objections, these Objectors protest in their strongest voice a settlement that would eliminate their future ability to challenge Visa's and MasterCard's continuing and new unlawful conduct. This settlement passes off as a remedy a so-called "new right" that would allow merchants to pass on to their customers as "surcharges" the amount of Visa's and MasterCard's unlawful overcharges. Raising consumer prices by adding an "interchange tax" is no remedy for Visa's and MasterCard's continuing monopoly abuse.

There are many important reasons to reject the Settlement Agreement. Objectors will present those reasons in full if this Court grants preliminary approval and pushes the Settlement Agreement on to a final fairness hearing. Mindful of the Court's October 24, 2012 Order,

however, Objectors limit their arguments here to the four most egregious legal defects that appear plainly on the face of the Settlement Agreement.

*First*, the Settlement Agreement unlawfully proposes certification of a Rule 23(b)(2) class despite the fact that monetary relief is the centerpiece of the Settlement (as proposed in the Rule 23(b)(3) portion of the Agreement). Visa and MasterCard's tactic in seeking Rule 23(b)(2) class certification for settlement is transparent: to negate the opt-out rights guaranteed to class members under Rule 23(b)(3). But Rule 23(b)(2) certification applies only in those cases where injunctive relief predominates and would cause a defendant to act uniformly toward the entire class thus making opt-out rights inconsistent with the purpose of certification. But this case is not a Rule 23(b)(2) case: injunctive relief does not predominate where the settlement also proposes a settlement payment in excess of $7 billion. Visa and MasterCard seek Rule 23(b)(2) certification hoping to impose on the entire class a pernicious release and covenant not to sue that would bar every merchant from ever again suing them, leaving Visa and MasterCard free to thwart competition, maintain their monopolies, and charge exorbitant interchange fees without fear of challenge. This Court should not permit this outrageous result.

*Second*, the Settlement is untenable because it is premised upon certification of a class that is not cohesive, is rife with conflicts among class members, and is largely unrepresented by any class representative. The proponents of the settlement seem to agree, as their motion for preliminary approval only passingly and superficially provides the basis for certification of the Rule 23(b)(2) class.

*Third*, Class Counsel cannot adequately represent the proposed class because of conflicts among class members. On the face of the Settlement, some class members receive different relief than others. This precludes Class Counsel from representing the interests of the entire

2

NOV. 1. 2012 6:11PM VSSP NO. 0496 P. 7
Case 1:05-md-01720-JG-JO Document 1670 Filed 11/01/12 Page 7 of 29 PageID #: 34946

proposed class.

*Fourth*, the Agreement's release and covenant provisions are void *ab initio* because, among other reasons, they (a) bar enforcement against Visa's and MasterCard's ongoing and future antitrust violations, (b) release future claims, and (c) those released future claims (i) are not identical to the claims at issue in the action, and (ii) belong to unrepresented, not-yet-existing merchants.

Because the Settlement Agreement is facially defective, the Court should reject the Settlement Agreement and deny the motion for preliminary approval.

## OBJECTORS

While this lawsuit has been pending since 2005, Objectors had no say whether this lawsuit should be brought, how it should be prosecuted, and whether it should be settled on the terms now proposed. Now, against their will, Objectors would be made part of a Rule 23(b)(2) class, thereby depriving them of their right to separate themselves from this lawsuit and proposed Settlement.

This Settlement will harm consumers. Objectors serve consumers throughout the entire United States and represent virtually every size and sector of the retail industry. They are:

- **Target Corporation**

Minneapolis, Minnesota-based Target Corporation is a full-service retailer offering a wide assortment of general and grocery merchandise serving guests at over 1,700 stores across the United States and online at target.com. Target's retail sales in fiscal-year 2011 exceeded $68 billion.

- **Macy's, Inc.**

Cincinnati, Ohio/New York, New York-based Macy's, Inc. is a full-service retailer offering a wide assortment of merchandise and services to customers at over 830 Macy's,

3

Bloomingdale's, and Bloomingdale's Outlet stores across the United States and online at macys.com and bloomingdales.com. Macy's retail sales in fiscal-year 2011 exceeded $26 billion.

- **J.C. Penney Corporation, Inc.**

Plano, Texas-based J.C. Penney Corporation, Inc. ("jcp") is a full-service retailer offering a wide assortment of merchandise and services to customers at over 1,100 stores across the United States and online at jcpenney.com. jcp's retail sales in fiscal-year 2011 exceeded $17 billion.

- **The Gap, Inc.**

San Francisco, California-based The Gap, Inc ("Gap Inc."). is a global specialty apparel company, offering apparel, accessories, and personal care products for men, women, children, and babies under the Gap, Old Navy, Banana Republic, Piperlime and Athleta brands. Gap Inc. operates over 2,400 stores across the United States and online at gap.com, bananarepublic.com, athlete.gap.com, and piperlime.com. Gap Inc.'s U.S. sales in fiscal-year 2011 exceeded $11 billion.

- **Limited Brands, Inc.**

Columbus, Ohio-based Limited Brands, Inc. is a specialty retailer offering women's intimate and other apparel, and personal care and beauty products at over 2,600 Victoria's Secret (including Victoria's Secret Pink), Bath & Body Works, and Henri Bendel stores across the United States and online at victoriasSecret.com, bathandbodyworks.com, and henribendel.com. Limited Brands' retail sales in fiscal-year 2011 exceeded $10 billion.

- **Dillard's, Inc.**

Little Rock, Arkansas-based Dillard's, Inc. is a full-service retailer offering a wide assortment of merchandise and services to customers at over 300 stores across the United States

and online at dillards.com. Dillard's retail sales in fiscal-year 2011 exceeded $6 billion.

- **Big Lots Stores, Inc.**

Columbus, Ohio-based Big Lots is a broadline closeout retailer offering brand-name closeouts and other value-priced merchandise at over 1,400 stores across the United States. Big Lots' retail sales in fiscal-year 2011 exceeded $5 billion.

- **Ascena Retail Group, Inc.**

Suffern, New York-based Ascena Retail Group, Inc. is a specialty retailer offering women's and tween girls apparel, shoes, and accessories at over 3,700 dressbarn, maurices, Justice, Lane Bryant, and Catherines stores across the United States and online at dressbarn.com, maurices.com, shopjustice.com, lanebryant.com, and catherines.lanebryant.com. Ascena's retail sales in fiscal-year 2011 exceeded $5 billion.

- **The Neiman Marcus Group, Inc.**

Dallas, Texas-based The Neiman Marcus Group, Inc. is an omni-channel luxury retailer offering a wide assortment of merchandise and services at over 80 Neiman Marcus, Bergdorf Goodman, and Cusp stores, and Neiman Marcus Last Call outlets, including Horchow, and Neiman Marcus Last Call Studios across the United States; online at neimanmarcus.com, bergdorfgoodman.com, cusp.com, and horchow.com; and through the Neiman Marcus, Bergdorf Goodman, and Horchow print catalogues. The Neiman Marcus Group's retail sales in fiscal-year 2011 exceeded $4 billion.

- **Abercrombie & Fitch Co.**

New Albany, Ohio-based Abercrombie & Fitch Co. is a specialty retailer offering a broad array of products including men's and women's apparel, personal care products, accessories, and women's intimate apparel and at-home products at over 930 Abercrombie & Fitch, abercrombie kids, Hollister, and Gilly Hicks stores across the United States and online at abercrombie.com,

5

abercrombiekids.com, hollisterco.com, and gillyhicks.com. Abercrombie & Fitch Co.'s retail sales in fiscal-year 2011 exceeded $3 billion.

- **Saks Incorporated**

New York, New York-based Saks Incorporated is an omni-channel luxury retailer offering a wide assortment of merchandise and services at over 100 Saks Fifth Avenue and Saks Fifth Avenue OFF 5TH stores across the United States and online at saks.com. Saks's retail sales in fiscal-year 2011 exceeded $3 billion.

- **Chico's FAS, Inc.**

Fort Myers, Florida-based Chico's FAS, Inc. is a specialty retailer offering a broad array of products including women's apparel, accessories, shoes, intimate apparel, fragrances, and lotions at over 1,200 Chico's, White House | Black Market, and Soma Intimates stores across the United States and online at chicos.com, whitehouseblackmarket.com, soma.com, and bostonproper.com. Chico's FAS's retail sales in fiscal-year 2011 exceeded $2 billion.

- **Bob Evans Farms, Inc.**

Columbus, Ohio-based Bob Evans Farms, Inc. owns and operates over 700 Bob Evans Restaurants and Mimi's Cafés full-service restaurants across the United States. Bob Evans also produces and distributes food products under the Bob Evans and Owens brand names. Bob Evans' net sales for its restaurant businesses in fiscal-year 2012 exceeded $1.3 billion.

- **CKE Restaurants, Inc.**

Carpinteria, California-based CKE Restaurants, Inc. operates and franchises over 2,800 Carl's Jr. and Hardee's quick-service restaurants across the United States. CKE Restaurants' retail sales at CKE Restaurants-owned domestic restaurants in fiscal-year 2011 exceed $1.1 billion.

- **Papa John's International, Inc.**

Louisville, Kentucky-based Papa John's International, Inc. operates and franchises over 3,000 pizza delivery and carryout restaurants across the United States and has online ordering available at papajohns.com. Papa John's retail sales at Papa John's-owned domestic restaurants in fiscal-year 2011 exceed $500 million; and Papa John's total domestic revenue exceeded $1 billion.

- **American Signature, Inc.**

Columbus, Ohio-based American Signature, Inc. is a closely held family-owned specialty retailer offering premium quality furniture at over 125 American Signature Furniture and Value City Furniture stores spanning nineteen states. Because American Signature is closely held, it does not release annual revenue numbers.

- **Boscov's Department Store, LLC**

Reading, Pennsylvania-based Boscov's Department Store, LLC is a closely held family-owned full service retailer offering a wide assortment of merchandise and services to customers at forty-one stores in five states: Pennsylvania, New York, New Jersey, Maryland, and Delaware. Because Boscov's is closely held, it does not release annual revenue numbers.

- **National Retail Federation**

The National Retail Federation is the world's largest retail trade association, representing retailers of all types and sizes from across the United States, ranging from the largest department stores to the smallest sole proprietors, including specialty, apparel, discount, online, independent, grocery retailers, and chain and local restaurants and service establishments, among others.

- **American Booksellers Association**

The American Booksellers Association is a national trade association, representing more than 1,600 independently owned bookstores, large and small, with storefront locations in towns

7

and cities nationwide.

- **National Association of College Stores**

The National Association of College Stores is a national trade association representing
more than 3,000 stores serving colleges, universities, and K-12 schools.

## ARGUMENT

## Standard of Review

This Court has indicated that "the threshold for preliminary approval of a proposed class
action settlement is meaningfully lower than the threshold for final approval." (Order of
10/24/2012, ECF No. 1668, at 1.) However, even under this lesser threshold, a settlement
agreement with "obvious deficiencies" cannot be preliminarily approved. *Karvaly v. eBay*, 245
F.R.D. 71 (E.D.N.Y. 2007). Mindful of the Court's Order and of well-settled case law,
Objectors limit their arguments here to four of the most obvious legal deficiencies that appear
plainly from the face of the Settlement Agreement. If this Court concludes, as it must, that there
are obvious deficiencies in the Settlement Agreement, it must reject the entire settlement
outright. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D.N.Y. 2011) stating
that a court may only "approve or reject the settlement;" it may not "delete, modify, or substitute
certain provisions") (quotation omitted).[1]

## POINT I

## This Court Must Reject Rule 23(b)(2) Certification Because it Impermissibly Denies Opt-Out Rights In this Case

By using Rule 23(b)(2) certification, the Settlement Agreement eliminates opt-out rights,
making it impossible for merchants to escape the noose of the release and covenant. But a Rule

---

[1] The singular importance of imposing the Rule 23(b)(2) release on the class is evidenced by the
fact that the Settlement Agreement purports to allow the Court to make non-material
modifications to all but the release and covenant. (SA ¶ 1(vv) & (ww).)

23(b)(2) class may not be certified here; the class members' rights may not be so limited; and, thus, the Court should not preliminarily approve the Settlement.

The Supreme Court recently held that Rule 23(b)(2) cannot be used to deny absent class members opt-out rights in cases where monetary damages are more than incidental to injunctive relief. *See Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2557-59 (2011).[2] In *Dukes*, plaintiffs sought class certification under Rule 23(b)(2) to pursue, among other things, back pay owed due to the discrimination claimed in the case. The Supreme Court rejected this effort and ruled that, because individualized monetary relief sought in that action was more than incidental, Rule 23(b)(2) certification—which would have stripped class members of their opt out rights—was improper. *Id.* This Settlement Agreement, which seeks to use Rule 23(b)(2) to impose a release even though class members are eligible to opt out under the Rule 23(b)(3) portion of the Settlement, has the same defect and must be rejected.

Both before and after *Dukes*, the Second Circuit has recognized that, when a *case* seeks damages that are more than incidental to injunctive relief, absent class members must be afforded a full opportunity to opt out. This past August, following *Dukes*, the Second Circuit

---

[2] There are significant Due Process concerns implicated by the setting of a mandatory class. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). "[A] mandatory settlement-only class action with legal issues and future claimants compromises their Seventh Amendment rights without their consent." *Id.* at 846. Absent the notice and opt-out rights afforded by a Rule 23(b)(3) class, "the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members." *Id.* at 845-46. Application of the due-process protections provided under Rule 23(b)(3) "avoids serious constitutional concerns raised by mandatory class resolution of individual legal claims, especially where a class seeks to resolve future liability in a settlement-only action." *Id.* at 842. *See also, e.g., Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999). ("[T]he Court's analysis [in *Ortiz*] applies equally when a request for an injunction is being used to override the rights of class members to notice and an opportunity to control their own litigation."); *see also Molski*, 318 F.3d at 949 n.13 (concluding that the concerns articulated in *Ortiz* "would be applicable to any mandatory class, whether under Rule 23(b)(1) or (b)(2)").

held that "[a]bsent class members have a due process right to notice and an opportunity to opt

out of *class litigation* when the *action* is 'predominantly' for money damages" and that "Rule 23

protects that right by providing a parallel statutory requirement of notice and the opportunity to

opt out for classes certified under subdivision (b)(3)." *Hecht v. United Collection Bureau, Inc.*,

691 F.3d 218, 222 (2d Cir. 2012) (emphasis added) (citing *Dukes*, 131 S. Ct. at 2558-59; *Shutts*,

472 U.S. at 811-12)).

   And a decade ago, affirming in part this Court's certification of an almost identical class

seeking similar monetary and injunctive relief against Visa and MasterCard,[3] the Second Circuit

left open the question of whether a Rule 23(b)(2) class could be certified in a case where

significant damages were at stake. The Second Circuit held that because certification was proper

under Rule 23(b)(3), it need not reach whether certification under Rule 23(b)(2) was also proper.

*See In re Visa Check (Wal-Mart)*, 280 F.3d 124, 147 (2d Cir. 2001) (Sotomayor, J.).

Preservation of opt-out rights was central to that court's thinking, "[b]ecause [notice and opt-out]

rights are guaranteed under Rule 23(b)(3), pursuant to which this action will now proceed." *Id.*

at 147. The Second Circuit pointed out that "the primary concern about certifying a class with

significant damages under Rule 23(b)(2) is the *absence of mandatory notice and opt-out rights*,"

and concluded that, once a court determines that 23(b)(3) certification is proper, it should defer

to that rule and no further inquiry is needed. *Id.* at 147 (emphasis added). The Second Circuit

observed that "when a district court certifies a class under both Rule 23(b)(2) and (b)(3), major

---

[3] *Compare In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 90 (E.D.N.Y. 2000)
(certifying class of "all persons and business entities who have accepted Visa and/or MasterCard
credit cards and therefore have been required to accept VisaCheck and/or MasterMoney debit
cards") *with* Settlement Agreement ¶ 2(a) (defining (b)(3) class as "consisting of all persons,
business, and other entities that have accepted Visa-Branded Cards and/or MasterCard Branded
Cards") *and id.* ¶ 2(b) (defining (b)(2) class as "consisting of all persons, business, and other
entities that [will] in the future accept Visa-Branded Cards and/or MasterCard Branded Cards").

problems can arise where different procedural consequences attach depending upon the subsection used." *Id.* (quotation omitted).

The Supreme Court in *Dukes* answered the question left open by *In re Visa Check*: A court may not certify a Rule 23(b)(2) class in a case where significant damages are at issue. *Dukes*, 131 S. Ct. at 2557. *See also Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding that the absence of notice and opt-out rights violates due process in class actions predominantly for money damages). *See also, e.g., Brown v. Yellow Transp., Inc.*, 2011 U.S. Dist. LEXIS 52345, at *22-23 (N.D. Ill. May 11, 2011) (concluding that request for substantial damages precluded dual certification under both Rule 23(b)(2) and (b)(3)); *Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2007 U.S. Dist. LEXIS 11488, at *24 (N.D. Ind. Feb. 14, 2007) (holding that certification under Rule 23(b)(3) was proper rather than certification under both 23(b)(2)).

The "major problems" that now-Justice Sotomayor predicted are manifest in this Settlement. Here, there is no legitimate need for a Rule 23(b)(2) class, as it is virtually identical to the Rule 23(b)(3) class. (SA ¶¶ 2(a) & (b).) Thus, the only rationale for a Rule 23(b)(2) class here is the patently improper purpose of depriving class members of their due process rights. *See also, e.g., Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 230 n.4 (2d Cir. 2006) ("Because we have found that certification as to liability is proper pursuant to Rule 23(b)(3), there is 'no necessity' of addressing alternate grounds for certification, such as Rule 23(b)(2) . . . ."); *Mitchell v. Cnty. of Clinton*, 2007 U.S. Dist. LEXIS 48589 (N.D.N.Y. July 5, 2007) (same); *Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006) ("Rule 23(b)(2)) does not require notice or permit class members the opportunity to opt-out. Where, as here, money damages are the primary relief requested, courts

11

typically certify the class under Rule 23(b)(3), after ensuring that due process requirements have been met.") (citations omitted); *Daniel v. Am. Bd. of Emergency Med.*, 269 F. Supp. 2d 159, 203-04 (W.D.N.Y. 2003) (finding certification appropriate under *Rule 23(b)(3)* and, in light of the substantial damages requested in the case, declining to use Rule 23(b)(2) as "an alternative or additional basis for certification"); *In re FedEx Ground Package Sys., Inc.*, 2007 U.S. Dist. LEXIS 76798, at *76-77 (N.D. Ind. Oct. 15, 2007) (concluding that, although certification would have been permissible under both Rule 23(b)(2) and Rule 23(b)(3), the "class should be maintained under Rule 23(b)(3), which is more suited to claims for monetary damages and contains a provision requiring notification to class members of their opt-out option").

It is clear the $7.25 billion monetary component of the Settlement Agreement predominates and is not incidental to what is characterized as Rule 23(b)(2) relief. The motion for preliminary approval makes that point emphatically, first by boasting that the "settlement will deliver the *largest private damage recovery* in United States antitrust history" (Mem. in Supp. of Class Pls.' Mot. for Class Settlement Preliminary Approval at 1) (emphasis added) (hereinafter "Pls.' Mot. for Preliminary Approval"), and then by stating: "the approximately $7.25 billion settlement *by itself* brings the settlement well within the possible range of approval." (*Id.* at 16) (emphasis added). By comparison, as discussed below, the Rule 23(b)(2) relief would be unavailable to most of the putative class, disqualifying this case for certification under Rule 23(b)(2).

Thus, certifying this case under Rule 23(b)(2) would violate absent class members' due process rights. *See Molski v. Gleich*, 318 F.3d 937, 948 (9th Cir. 2003). The possibility that individual class members' claims "would be precluded by litigation they had no power to hold themselves apart from . . . underscores *the need for plaintiffs with individual monetary claims to*

decide for themselves whether to tie their fates to the class representatives' or go it alone—a choice Rule 23(b)(2) does not ensure that they have." *Dukes*, 131 S. Ct. at 2559 (emphasis added).

## POINT II

### This Proposed Class is not Cohesive and Thus is not Certifiable Under Rule 23(b)(2) in any Event

The proposed Rule 23(b)(2) settlement class also cannot be certified because it does not meet the cohesiveness requirement of Rule 23(b)(2). The preliminary approval motion is misleading in claiming that "the rule changes achieved through the settlement will apply to all class members." (Pls.' Mot. for Preliminary Approval at 23.) The Rule 23(b)(2) class lacks cohesion because of the uneven effect and application of the proposed rule changes.

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557. A class cannot be cohesive if the proposed injunctive relief "would have potentially conflicting effects on different members." *In re Comp. of Managerial, Prof'l & Tech. Emples. Antitrust Litig.*, 2006 U.S. Dist. LEXIS 249, at *30 (D.N.J. Jan. 4, 2006). Given the absence of any meaningful class-wide change, this (b)(2) class simply "offers the possibility of far greater protection for defendants than is justified from the benefits obtained by the class." *Schwartz*), 157 F. Supp. 2d at 578.

*First*, the proposed Rule 23(b)(2) class lacks cohesion because the modest changes to Visa's and MasterCard's rules are by their very nature irrelevant to a majority of class members. Because of state laws prohibiting surcharging and restrictions within the modifications themselves, the proposed changes to the no-surcharge and all-outlet rules simply are irrelevant to many class members. For this reason, the proposed rule changes cannot, as a matter of law, provide the character of relief necessary to support Rule 23(b)(2) certification.

13

Courts must look to the actual impact of the proposed Rule 23(b)(2) relief to determine whether its impact on all members of the putative class is uniform. *See, e.g., Grovatt v. St. Jude Med., Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116, 1122 (8th Cir. 2005) (rejecting (b)(2) certification when "each plaintiff's need (or lack of need) for [the proposed prospective relief was] highly individualized"). If only a portion of the class benefits from the proposed relief, a Rule 23(b)(2) class cannot stand. *See Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 299 (M.D. Pa. 1995) (noting the absence of any case law supporting a settlement that provides direct benefit to only 50% of the class as consideration for the release of all claims by 100% of the class).

Proponents of the settlement argue that the existing no-surcharge rules are "the most effective of the[] anti-steering restraints" and that the rule changes will "transform[] the marketplace." (Pls.' Mot. for Preliminary Approval at 5 & 16) (SA ¶¶ 42 & 55). However, their arguments ignore the fact that ten states—representing 40% of this country's population and including the four largest commercial states—ban surcharging: California, Colorado, Connecticut, Florida, Kansas, Maine, Massachusetts, New York, Oklahoma, and Texas.[4] Any merchant doing business within those states is prohibited from implementing these rule changes. This includes not only local merchants in those states but also national and regional multi-state merchants because the Settlement Agreement requires a merchant that elects to surcharge to surcharge "all" transactions (SA ¶¶ 41(a)(i), (b)(i) & 55(a)(i), (b)(i)), thus preventing national and regional merchants from surcharging anywhere. The Settlement Agreement implicitly

---

[4] *See* Cal. Civ. Code § 1748.1(a); Colo. Rev. Stat. Ann. § 5-2-212(1); Conn. Gen. Stat. Ann. § 42-133ff(a); Fla. Stat. Ann. § 501.0117(1); Kan. Stat. Ann. § 16a-2-403; Maine Rev. Stat. Ann. tit. 9-A, § 8-303(2); Mass. Gen. Laws Ann. ch. 140D, § 28A(a)(2); N.Y. Gen. Bus. Law § 518; Okla. Stat. Ann. tit. 14A, §§ 2-417; Tex. Fin. Code Ann. § 339.001(a); U.S. Census Bureau, *United States Census 2010: Interactive Population Map*, http://2010.census.gov/2010census/popmap/ (last visited Oct. 27, 2012).

14

recognizes that a great many class members could never avail themselves of this relief:

"Nothing in the foregoing changes to the . . . rules, by-laws, and/or operating regulations . . .

shall affect any obligation of any member of the Rule 23(b)(2) Settlement Class to comply with

all applicable state or federal laws, including but not limited to state laws regarding *surcharging*

of credit or debit card transactions . . . ." (SA ¶¶ 50 & 63) (emphasis added). Thus, because of

state law and restrictions within the Settlement Agreement itself, surcharging, if not illusory, is

not applicable "respecting the class as a whole." *Dukes*, 131 S. Ct. at 2557.

Likewise the changes to the "all outlets" (SA ¶¶ 41 & 54) rule would not benefit most

members of the requested Rule 23(b)(2) class. The proponents provide no evidence to explain

how there is any benefit from this rule change nor do they otherwise explain how merchants who

are unable to refuse Visa and MasterCard because of their monopoly power, could nonetheless

refuse acceptance at some banners but not others. Even if the benefit of this change is not

illusory, it could only benefit those merchants that operate multiple brands. It would be of no

benefit to the vast majority of smaller merchants who operate a single brand or operate out of a

single location. Moreover, it is presumptuous for class counsel to suggest that merchants should

invest scarce resources to develop low-priced sub-brands to take advantage of this rule change.

(Pls.' Mot. for Preliminary Approval at 2.) For merchants who are unable or unwilling to take

class counsel's business advice, there will be no possible benefit from this rule change.

*Second*, the class is not cohesive because it allows Visa and MasterCard to treat different

class members differently. That argument addresses the form of the rule changes but ignores

their uneven impact. The Settlement Agreement reserves to Visa and MasterCard the right to

buy off merchants' surcharge rights. (SA ¶¶ 42(f) & 55(f).) A rule change that allows Visa and

MasterCard to avoid the impact of the relief at some merchants but not others hardly qualifies as

15

Rule 23(b)(2) relief.

Visa's and MasterCard's willingness to consider, at their discretion, lower interchange rates for "bona fide purchasing groups" (SA ¶¶ 43 & 56) is by its own description not relief that will benefit the class as a whole. Visa's and MasterCard's only obligation is to negotiate in good faith and to provide a lower interchange rate, but only if it is in their commercial interest to do so. (*Id.*) Their decisions in that regard are limited to review by this Court whose only power would be to declare whether Visa and MasterCard have proceeded in "good faith." (*Id.*) This Court would have no power to provide relief and the merchant would have no right of review, which would be pointless anyway. Apart from the illusory character of this supposed relief, it is apparent that whatever benefit might arguably flow would be individualized and not applicable to the class as a whole.

Because all elements of the proposed Rule 23(b)(2) relief will not be available to or benefit most class members, the required cohesiveness is absent precluding Rule 23(b)(2) certification.

## POINT III

### Class Counsel is an Inadequate Representative of this Diverse Class

In addition to the proposed Rule 23(b)(2) class lacking cohesion, Class Counsel is an inadequate representative: It is clear from the face of the Agreement that Class Counsel *cannot* "adequately protect the interests of th[is diverse] class." Fed. R. Civ. P. 23(a)(4).

Class Counsel's attempt to split the *case* into two classes is artificial. Each class member would necessarily evaluate the entire relief as a package and value it accordingly when considering whether to exercise its opt-out rights. The value of the proposed monetary relief, injunctive relief, and the value of the release to be given are all integrated parts of the settlement and cannot be artificially split. To illustrate, a New York shopkeeper who is precluded by state

16

law from surcharging would be likely to place more value on the monetary relief than would a New Jersey shopkeeper who would be able to pass his future interchange costs along to his customers. Similarly, a merchant in New York who anticipates that its business will expand significantly in the future would be likely to place less value on monetary relief for past damages than on the future-facing release he would be required to give to obtain that relief. This illustration highlights why this case cannot be artificially split.

By structuring the proposed settlement in this way, Class Counsel has created conflicts among the class. Class Counsel cannot negotiate this "global compromise" and at the same time adequately represent the divergent interests of the purported class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997). When a class's interests diverge, they must be divided "into homogeneous subclasses under Rule 23(c)(4)(B), *with separate representation* to eliminate conflicting interests of counsel." *Ortiz*, 527 U.S. at 856 (emphasis added) (citation omitted). From the illustration, both the New York and the New Jersey shopkeepers, and the New York merchant, are entitled to separate representation—class counsel is precluded from negotiating relief on behalf of their divergent interests. *Amchem*, 521 U.S. at 626-27; *Ortiz*, 527 U.S. at 856-57 (following *Amchem*).

## POINT IV

### The Settlement Agreement Cannot be Preliminarily Approved Because the Release and Covenant are Facially Void

The proposed Rule 23(b)(2) release and covenant cannot be preliminarily approved for four separate and distinct legal reasons. First, the release and covenant purport to bar redress for future antitrust violations. Second, the release and covenant purport to bar redress for other future claims that accrue after preliminary approval. Third, the release and covenant purport to bar claims based on both past and future conduct that is beyond the "identical factual predicate"

17

of the Complaint. And, fourth, the release and covenant purport to bar companies not yet in existence but injured in the future from seeking redress against Visa and MasterCard. Moreover, in any future litigation, the Settlement Agreement would bar class members from arguing that any of these defects void the release and covenant. (SA ¶ 69.)

The release begins by stating all claims would be released, "regardless of when such claims accrue." (SA ¶ 68.) The claims to be released then include:

> [A]ny claims based on or relating to:
>
> (a) any interchange rules, interchange fees, or interchange rates, or any other Rule . . .
>
> (c) any actual or alleged "no surcharge" rules, "honor all cards" rules, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules, "anti-steering" rules, Rules that limit merchants in favoring or steering customers to use certain payment systems, "all outlets" rules, "no bypass" rules, or "no multi-issuer" rules, or any other actual or alleged Rule . . . relating to any . . . merchant's point of sale practices . . . .
>
> * * *
>
> (g) [T]he future effect in the United States of the continued imposition of or adherence to any Rule[5] . . . or any Rule that is substantially similar to any Rule in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order . . . .
>
> (h) the future effect in the United States of any conduct . . . related to or arising out of interchange rules, interchange fees, or interchange rates, any Rule [or] . . . .any other Rule . . . in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, or any Rule substantially similar to any of the foregoing Rules.

_____

[5] "Rule" is broadly defined in the Agreement as "any rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card or any MasterCard-Branded Card." (SA ¶ 1(mm).) And Visa and MasterCard have a *lot* of Rules. Visa's Operating Regulations contain over 1,300 pages. http://usa.visa.com/merchants/operations/op_regulations.html (last visited 10/31/2012). MasterCard Rules contain over 330 pages.
http://www.mastercard.com/us/company/en/whatwedo/merchant_rules.html (last visited 10/31/2012). The motion for preliminary approval does not discuss why it is proper to release conduct related to all of these Rules, forever.

18

(SA ¶¶ 68(a), (c), (g), (h).)

In addition to the foregoing release, members of the Rule 23(b)(2) class would also be

deemed to have entered a covenant not to sue, as follows:

> Each Rule 23(b)(2) Settlement Class Releasing Party covenants and agrees that it
> shall not, hereafter, seek to establish, or permit another to act for it in a
> representative capacity to seek to establish, liability against any of the Rule
> 23(b)(2) Settlement Class Released Parties based, in whole or in part, upon any
> conduct covered by any of the claims released in Paragraphs 66-69 above.

(SA ¶ 70.)

### A.    The Settlement Agreement Releases and Covenants Barring Future Antitrust Claims are Void

The proposed release and covenant are void because they would bar every class member

from challenging Visa's and MasterCard's continuing and future acts maintaining or exploiting

their monopolies. The rules identified by name in the release, and their enforcement, have been

the basis of multiple antitrust claims filed against Visa and MasterCard in this country and

overseas. Nowhere in this Settlement Agreement do Visa and MasterCard commit to end those

rules and cease that conduct. A release that purports to cover the "future effect" and "continued

imposition of or adherence" to those rules or "substantially similar" rules, or the future effect of

"any conduct . . . substantially similar to the conduct . . . related to or arising out of interchange

rules, interchange fees, or interchange rates" (SA ¶¶ 68(g) & (h)) precludes the bringing of future

claims to redress future antitrust injuries and is void for that reason.

Releases of future antitrust claims are void. *See, e.g., In re Am. Express Merchants'*

*Litig.*, 554 F.3d 300, 319 (2d Cir. 2009) ("[A]n agreement which in practice acts as a waiver of

future liability under the federal antitrust statutes is void as a matter of public policy."), *vacated*

*on other grounds by Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *Fox*

*Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955) (finding that "the effect of such a

release could be to permit a restraint of trade to be engaged in which would . . . itself operatively serve as a contract 'in restraint of trade'" in violation of Section 1 of the Sherman Act); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) ("Because public policy prohibits a release from waiving claims for future violations of antitrust laws, and given that under the proposed release class members would be releasing unlitigated future claims, the releases are too broad.");[6] *Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, 1997 U.S. Dist. LEXIS 4457, at *9-10 (S.D.N.Y. Apr. 9, 1997) (concluding that claims accruing after the date of a release could not be barred because that type of prospective waiver would be void as a matter of public policy); *cf. Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955) (cautioning against subverting "the public interest in vigilant enforcement of the antitrust laws," and indicating that to "in effect confer [on the defendants] a partial immunity from civil liability for future [antitrust] violations . . . is consistent with neither the antitrust laws nor the doctrine of res judicata").

This release cannot be saved by arguing it merely insulates Visa's and MasterCard's continuing conduct: "[E]ach time a plaintiff is injured by an act of the defendants a cause of

---

[6] *Schwartz v. Dallas Cowboys Football Club, Ltd.*, is instructive. The case involved an antitrust challenge asserting that the NFL unlawfully bundled its satellite package by requiring consumers to purchase all regular season, Sunday afternoon NFL games in order to watch just one of them. *Id.* at 565. Under the proposed settlement, the NFL agreed to offer a limited, temporary solution to the bundling claims by offering "Single Sunday Ticket" package that would permit consumers to purchase a package of games on a weekly basis. *Id.* at 566. If the arrangement did not prove financially advantageous to the NFL, however, it was under no obligation to continue offering the limited package after one year. *Id.* at 573. In exchange for this "minimal" prospective relief, *id.*, merchandise discounts, and a monetary settlement, the plaintiffs agreed to release all current and future claims related to NFL broadcasting, provided the defendants continued to offer the "unbundled" package, *id.* at 566. In rejecting the proposed settlement, the court noted that the broad release language permitted the defendants to continue expanding most of their alleged bundling activities, both on satellite and on the internet with impunity because, so long as the defendants continued offering the agreed-upon prospective relief, such actions could not be the subject of further action by any of the 1.8 million class members. *Id.* at 578.

action accrues to him to recover the damages caused by that act." *Zenith Radio Corp. v.
Hazeltine Research*, 401 U.S. 321, 328 (1971). That some of the rules may have been in place,
and some of the interpretations or courses of conduct may have occurred prior to the date of
preliminary approval does not prevent those same rules, interpretations, or courses of conduct
from causing a new injury after preliminary approval. *See Toledo Mack Sales & Serv., Inc. v.
Mack Trucks, Inc.*, 530 F.3d 204, 218 & n.9 (3d Cir. 2008) (observing that there is no authority
"for the proposition that a release prevents a party from relying on events that occurred prior to
the signing of the release to establish facts necessary to show a continuing conspiracy").

The release and covenant cannot shield the future anticompetitive effects of Visa's and
MasterCard's continuing or future illegal conduct from the threat of private antitrust
enforcement.

> **B.      The Proposed Release and Covenant Impermissibly Purport to
> Extend to Unaccrued Claims**

Apart from running afoul of constraints on future-facing antitrust releases, the Settlement
Agreement cannot be preliminarily approved because the release and covenant would also
release all other claims not presently ripe. Specifically, the Settlement Agreement would release
all claims that absent class members "may in the future have" "regardless of when such claims
accrue" (SA ¶ 68) including the "future effect" of any adherence to any Rule (*id.* ¶ 68(g)), which
includes not only currently written Rules but, also, "practice, procedure, activity, or course of
conduct" (*id.* ¶ 1(mm)) adopted in applying those Rules. To leave no doubt that the purpose of
the release and covenant is to insulate Visa and MasterCard from future litigation, for future
wrongful acts paragraph 71 states:

> For purposes of clarity . . . the release and covenant not to sue [are intended] to
> preclude all members of the Rule 23(b)(2) Settlement Class from seeking or
> obtaining any form of declaratory, injunctive, or equitable relief, or damages or
> other monetary relief *relating to the period after the date of the Court's entry of*

*the Class Settlement Preliminary Approval Order* with respect to any Rule . . . as
it is alleged to exist, now exists . . . or may in the future exist in the same or
substantially similar form thereto.

(SA ¶ 71) (emphasis added).

Courts refuse to permit a class to release future claims based on a defendant's future

conduct. *See, e.g., Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d

113, 138 (2d Cir. 2011) (addressing the scope of an earlier class-wide release, and holding that,

"to the extent that [the claims] involve conduct occurring after the Class Period, [they] cannot be

Released Claims"); *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 677 (S.D.N.Y. 2011)

(concluding that a release "from liability for certain future acts" amounted to no more than "an

attempt to use the class-action mechanism to implement forward-looking business arrangements

that go far beyond the dispute before the Court in this litigation"); *Schwartz*, 157 F. Supp. 2d at

578 (declining to approve a release that would not only bar past claims—which the court

recognized as a permissible use of settlement releases—but also claims based on the defendant's

future conduct); *Shults v. Champion Int'l Corp.*, 821 F. Supp. 520, 524 (E.D. Tenn. 1993) ("No

settlement that precludes future, unknown causes of action can be considered fair, reasonable, or

in the best interests of the class as a whole.").

      **C.**     **The Proposed Release and Covenant Cannot be Approved Because**
              **They Purport to Bar Claims Not Based on the "Identical Factual**
              **Predicate" of the Complaint**

The proposed release and covenant cannot be approved because they are boundless and

not limited to factually similar claims. The Second Circuit is clear: Releases of liability are

permissible, but only insofar as they are limited to the identical factual predicate underlying the

core class action claims. *See, e.g., Wal-Mart v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-09 (2d Cir.

2005) (noting that broad releases of claims involving "the same integral facts," are common,

even when they cover claims not specifically pled in the complaint). To the extent the released

claims would require "proof of further facts," the class representatives are not authorized to

negotiate their release. *Nat'l Super Spuds, Inc. v. NY Mercantile Exch.*, 660 F.2d 9, 18-19 & n.7

(2d Cir. 1981).

This release is void because it encapsulates causes of action that are wholly unrelated to

the factual predicate of this case. *See, e.g., In re Lehman Brothers Sec. & ERISA Litig.*, 2012

U.S. Dist. LEXIS 90796, at *55 (S.D.N.Y. June 29, 2012) (rejecting a release where the

language covered claims much broader than those arising out of the complaint); *Bond v.*

*Ferguson Enters.*, 2011 U.S. Dist. LEXIS 6976, at *19-20 (E.D. Cal. Jan. 24, 2011) (refusing to

approve a class settlement releasing claims unrelated to those in the original action: "[a]ll claims

. . . that were or could have been asserted in the Lawsuit based upon the facts alleged therein . . .

*arising out of any act, omission, transaction, or event that occurred or is alleged to have*

*occurred up to the date of this Agreement*") (first alteration in original) (emphasis added); *Reade-*

*Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226, at *33-35 (E.D.N.Y.

Dec. 11, 2006) (rejecting a release purporting to waive "all claims . . . or liabilities of any kind

whatsoever in law or in equity, arising out of agreement or imposed by federal or state statute,

common law or otherwise, from the beginning of time to the date this Agreement is signed" to

include only "claims involving 'identical factual predicate'").

The proposed release lists the factual predicates on which it is based, proceeding from the

specific to the general. For example, paragraph 68(g) draws within the scope of the release "the

continued imposition of or adherence to *any Rule* . . . in effect in the United States as of the date

of the Court's entry of the Class Settlement Preliminary Approval Order . . . or *any Rule that is*

*substantially similar to any Rule* in effect as of the date of the Court's entry of the Class

Settlement Preliminary Approval Order . . . . "  (SA ¶ 68(g)) (emphasis added).  Similarly,

23

paragraph 68(h) draws within the scope of the release "*any conduct* . . . related to or arising out of . . . *any other Rule* . . . in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, or *any Rule substantially similar* to any of the foregoing Rules." (SA ¶ 68(h)) (emphasis added). If subsections (g) and (h) were not broad enough, the definition of "Rule" expands the scope of the releases to the limits of human activity: "Rule" includes a "rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card or any MasterCard-Branded Card." (SA ¶ 1(mm).) Bearing in mind that combined Rules exceed 1,600 pages (*see supra* n.5), no complaint could have a factual predicate as broad as that described in the proposed release.

> **D. The Proposed Release and Covenant Cannot Be Approved Because they Purport To Bar Future Claims by Future Merchants not yet in Existence.**

The Settlement Agreement cannot be approved because it purports to release claims by companies not yet in existence. The Settlement Agreement defines the "'Rule 23(b)(2) Settlement Class'" as "*all* persons, businesses, and other entities that as of the Settlement Approval Date or *in the future* accept Visa-Branded and/or MasterCard-Branded Cards in the United States . . . ." (SA ¶ 2(b)) (emphasis added). The "'Rule 23(b)(2) Settlement Class Releasing Parties'" includes "each and every member of the Rule 23(b)(2) Settlement Class." (SA ¶ 66.) Class counsel cannot agree to release future claimants and this Court cannot approve such a release. *Ortiz*, 527 U.S. at 846 (finding that a "mandatory settlement-only class action with legal issues and future claimants compromises [] Seventh Amendment rights without [] consent"). The interests of the named class representatives necessarily conflict with those of the yet to be formed merchants who may sometime in the future accept Visa's and MasterCard's cards for payment. *Isaacson v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 304 F. Supp. 2d 404, 423 (E.D.N.Y. 2004) (finding that there was a "conflict between plaintiffs and

24

the class representatives because the litigation addressed all future claimants, but only provided recovery for those whose injuries were discovered prior to 1994."); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 261 (2d Cir. 2001), *aff'd in part by an equally divided court and vacated in part on other grounds*, 539 U.S. 111 (2003) (noting that "a class which purports to represent both present and future claimants may encounter internal conflicts" and remanding for consideration of whether the plaintiffs' due-process rights were violated due to inadequate representation and intra-class conflict); *see also Ortiz*, 527 U.S. at 856 (requiring separate representation for those injuries "attributable to claimants not yet born").

## CONCLUSION

For the foregoing reasons, this Court should deny preliminary approval of the Definitive Class Settlement Agreement.

Dated: November 1, 2012

Respectfully submitted,

CLARICK GUERON REISBAUM LLP

By: <u>Gregory A. Clarick</u>
Gregory A. Clarick
Nicole Gueron
40 West 25th Street
New York, New York 10010
(212) 633-4310

*Attorneys for Objecting Putative Class Members Target Corporation, Macy's, Inc., J.C. Penney Corporation, Inc., The Gap, Inc., Limited Brands, Inc., Dillard's, Inc., Big Lots Stores, Inc., Ascena Retail Group, Inc., The Neiman Marcus Group, Inc., Abercrombie & Fitch Co., Saks Incorporated, Chico's FAS, Inc., Bob Evans Farms, Inc., CKE Restaurants, Inc., Papa John's International, Inc., American Signature, Inc., Boscov's Department Store, LLC, National Retail Federation, American Booksellers Association, and National Association of College Stores*