**ROBBINS GELLER RUDMAN & DOWD LLP**

| Atlanta | Melville | San Diego |
| Boca Raton | New York | San Francisco |
| Chicago | Philadelphia | Washington, DC |

Alexandra S. Bernay
XanB@rgrdlaw.com

December 7, 2012

VIA ECF

The Honorable Magistrate Judge James Orenstein
United States District Court
  Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, NY 11201

> Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
>       MDL 1720 (E.D.N.Y.)

Dear Judge Orenstein:

Pursuant to Federal Rule of Civil Procedure 37(a), Class Plaintiffs seek an Order compelling third-party First Data Corporation to produce class-member identification data necessary to effectuate the settlement in this action. After numerous meet and confers spanning several months which culminated in the entry of a special protective order to allay First Data's concerns regarding the requested data, First Data refuses to commit to a firm date for production.[1] The Court-ordered date to complete mailing notice is February 25, 2013. We respectfully request that First Data be ordered to produce the requested data no later than December 14, 2012. Because of the time-sensitive nature of this issue and the fact that counsel for First Data and counsel for Class Plaintiffs most familiar with these issues are on the west coast, Class Plaintiffs request this matter be handled either on the papers or telephonically.

### I.  History of Negotiations

The July 13, 2012 Memorandum of Understanding ("MOU"), required Class Plaintiffs to obtain from various party and third-party acquirers the names and locations of settlement class members comprising more than 90% of merchant transaction volume and 90% of merchant outlets as reported in Nilson Report Issue 990 (March 2012). Dkt No. 1588, MOU, Exhibit 1, ¶81(d). On July 26 and 27, 2012, Class Plaintiffs sent 19 subpoenas to third-party acquirers, including one to First Data, with a return date of August 15, 2012 (Ex. 1).[2] On August 15, 2012 First Data sent objections and responses. The parties engaged in numerous meet and confers, primarily focused on First Data's confidentiality and privacy concerns associated with the responsive data. Over several months, the parties extensively

---

[1]   First Data did, however, file an objection to the settlement. Dkt. No. 1693.

[2]   In response to Class Plaintiffs' subpoenas, acquirers have produced millions of records that have been used, in conjunction with data produced by Visa and MasterCard, by the Class Administrator to create the massive database which will be used to provide notice to the Class in the coming weeks. Additionally, the data from the acquirers will be used in the claims administration process. All references to "Ex." and "Exs." are to the Declaration of Alexandra S. Bernay in Support of Letter Motion to Compel Third Party First Data Corporation ("Bernay Decl."), filed concurrently.

**ROBBINS GELLER RUDMAN & DOWD LLP**

The Honorable Magistrate Judge James Orenstein
December 7, 2012
Page 2

negotiated a proposed additional protective order, despite the existence of the Fourth Amended Protective Order.[3] First Data never said it would not produce the data once its confidentiality concerns were addressed. An additional protective order was entered by the Court on November 14, 2012 (*see* Minute Entry granting Dkt. No. 1733).

On November 14 Class Counsel notified First Data's counsel that the additional protective order had been filed and asked when production would begin. Ex. 2. No response was received. On November 26 Class Counsel again emailed First Data's counsel requesting First Data to provide a date certain for production by November 28 and asking First Data to identify the acquiring entities that would be included in First Data's production. Ex. 3. Class Plaintiffs also explained the importance of First Data's production given its significant role in the industry.[4] In a voicemail on November 28, First Data's counsel said that the data would be produced by the end of the following week (December 7). Bernay Decl., ¶5. On November 29, Class Counsel left a message for First Data's counsel asking for confirmation regarding the December 7 production date and sought clarification regarding the producing entities. Bernay Decl., ¶6. After not receiving a response, on November 30 and December 4, Class Counsel emailed First Data's counsel seeking answers to these questions and informing First Data that the issue would be raised with the Court if First Data did not confirm data was to be received the following week. Ex. 4, 5. On December 5, First Data's counsel sent an email claiming that the "previous estimate" of December 7 was "too ambitious" and that First Data "expects" to produce the data on December 17. Ex. 6. On December 6, Class Counsel again emailed First Data's counsel to explain the importance of a date certain for producing the data given the impending notice deadlines. Ex. 7. That same day, First Data's counsel responded, but still refused, to commit to a date certain. The initial promised production of December 7 has passed and the most First Data will now say is that its "goal" is to produce by December 17, again refusing to provide a firm date for production. Exs. 8, 9.

The mail and publication notice deadlines are fast approaching. Because of these impending deadlines, and First Data's failure to provide a date certain for production, despite repeated requests, Class Plaintiffs have sought the Court's assistance.

### II.    First Data's Data Is Important to Providing Timely Notice to the Class

Under Federal Rule of Civil Procedure 45(c)(2)(B)(i), if a party commanded to produce materials by subpoena serves written objections on the serving party, the serving party may, "[a]t any time, on

---

[3]    Some of the 19 subpoenaed entities did request, and were given, certain written assurances that the confidentiality of the data being produced would be protected, but none demanded entry of a Court Order regarding production.

[4]    According to the Nilson Report, First Data is ranked as the second largest merchant acquirer in the United States in terms of volume and the largest in terms of merchant outlets. Moreover, the data it is to produce covers the largest acquirer, Bank of America, the third largest, Chase Paymentech Solutions, the sixth largest, Citi Merchant Services and several others in the top 25. *See* Ex. 10 (Nilson Report, Issue 990).

795722_1

**ROBBINS GELLER**
**Rudman & Dowd LLP**

The Honorable Magistrate Judge James Orenstein
December 7, 2012
Page 3

notice to the commanded person . . . move the issuing court for an order compelling production or inspection." The demanding party must demonstrate that the requested discovery is relevant to the subject matter of the pending action and that there is a substantial need for the information that cannot otherwise be met without undue hardship.[5]

Here, the data in First Data's possession is critical to Class Plaintiffs' ability to effectuate Court-ordered notice program as well as the claims-settlement process. First Data's production is especially important because, in addition to the data First Data claims it plans to produce for its own accounts, First Data has led Class Plaintiffs to understand that it will also be producing data for a number of the major acquirers in the United States. Although First Data has refused to confirm the exact entities for whom it expects to produce data, despite repeated requests, Class Plaintiffs understand that First Data may be producing data for iPayment, Inc., Santandar, SunTrust Merchant Services, Chase Paymentech Solutions, Bank of America Merchant Services, and Citi Merchant Services.

This data is not available from any other source. Class Plaintiffs have gone to great lengths to accommodate First Data, including entering into a special protective order and have waited months for its production. Despite this, First Data has refused to provide Class Plaintiffs a firm date by which they can expect to receive the data and Class Plaintiffs fear, based on the history of negotiations and broken commitments, that unless the Court gets involved, First Data will continue to string Class Plaintiffs along, providing soft dates for production that get thrown by the wayside as they approach. Class Plaintiffs are puzzled why First Data is unable to provide a date certain as First Data should have been in the process of gathering data responsive to the subpoena since the original meet and confer was held regarding the scope of the subpoena despite issues related to the protective order.

Because of pending deadlines, Class Plaintiffs request the Court order First Data to produce all data required under the subpoena by December 14, 2012.

Respectfully submitted,

*/s/ Alexandra S. Bernay*

ALEXANDRA S. BERNAY

ASB:sll

cc:     All Counsel (via ECF)

---

[5]     *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990); *Am. Metal Prods. Co. v. Gutter Topper*, Case No. M 8-85 (MBM), 1997 U.S. Dist. LEXIS 16476, 1997 WL 666291 (S.D.N.Y. Oct. 24, 1997). *See also In re Natural Gas Commodities Litig.*, 235 F.R.D. 241 (S.D.N.Y. 2006) (ordering production of subpoenaed trade data from non-party publications, finding data's relevance to allegations that defendant energy companies).

795722_1