UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | : : : : : : : : : : : | MDL No. 1720(JG)(JO) <br><br> Civil No. 05-5075(JG)(JO) <br><br> CLASS PLAINTIFFS' REPLY IN SUPPORT OF LETTER FILED MARCH 29, 2013 |
| This Document Relates To: <br><br> ALL ACTIONS. |  |  |

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| | A. | The Trade Association Websites Are Misleading | 3 |
| | B. | The Trade Association Opposition Selectively Characterizes the Content of the Websites and Must Be Rejected | 5 |
| | C. | Evidence Demonstrates that Class Member Confusion Has Already Resulted From The Boilerplate Forms on the Trade Association Websites | 7 |
| | D. | The First Amendment Provides No Impediment to the Measures Sought By This Motion and Described in the Order To Show Cause | 9 |
| II. | CONCLUSION | | 10 |

## TABLE OF AUTHORITIES

Page

**CASES**

*Erhardt v. Prudential Grp., Inc.*,
   629 F.2d 843 (2d Cir. 1980)................................................................................2, 3, 4

*Fleury v. Richemont N. Am., Inc.*,
   No. 05-4525 EMC, 2007 U.S. Dist. LEXIS 62763
   (N.D. Cal. Aug. 15, 2007)..........................................................................................3, 9

*Georgine v. Amchem Prods., Inc.*,
   160 F.R.D. 478 (E.D. Pa. 1995)..........................................................................2, 3, 4, 10

*Gortat v. Capala Bros., Inc.*,
   No. 07-cv-3629 (ILG), __ F. Supp. 2d __, 2010 U.S. Dist. LEXIS 35451
   (E.D.N.Y. Apr. 9, 2010).............................................................................................8

*In re Lease Oil Antitrust Litig.*,
   186 F.R.D. 403 (S.D. Tex. 1999)..............................................................................3

*In re VisaCheck/MasterMoney Antitrust Litig.*,
   No. CV-96-5238 (JG) (E.D.N.Y.)............................................................................8

*Kleiner v. First Nat'l Bank of Atlanta*,
   751 F.2d 1193 (1985)...............................................................................................3, 9

*Romano v. SLS Residential, Inc.*,
   253 F.R.D. 292 (S.D.N.Y. 2008) .............................................................................8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23 .....................................................................................................................4
   Rule 23(c).................................................................................................................2
   Rule 23(d) ................................................................................................................2

## I. INTRODUCTION

The trade association plaintiffs admit that their websites contained erroneous information but assert that their sites are neither misleading nor threaten to undermine the fairness or effectiveness of the notice program and settlement consideration process. Dkt. No. 2086 ("Opp.") at 2, 4. They also dispute the Court's power to "micromanage" their one-sided opt-out/objection campaign directed to the class at large, citing the First Amendment. Opp. at 9.

As is evident from a review of the sites, however, the architecture, tone, misinformation and omissions and placement of information in these unauthorized party communications to the class combine to present a one-sided, incomplete and misleading presentation aimed at soliciting class members to object and opt-out. *See generally* Dkt. No. 1963-1 ("Sweeney Decl.") These sites, particularly the merchantsobject.com site, are constructed to hustle class members, non-stop, from the factually uninformative but highly charged home pages directly to the ambiguous objection/opt-out forms which can be submitted electronically. The design of these sites ensures that class members avoid most of the type of neutrally presented information contained in the Court-approved notice as well as any prominent signposts which might lead them to that notice. They are carefully oriented to emphasize the associations' point of view and compile the greatest number of objections and opt-outs possible, informed or not.

The trade association plaintiffs object to any changes in their sites, including the modest changes reflected in the Proposed Order, contending that they are entitled to unfettered communications with their members and to be free from Court "micromanage[ment]" of their communications. Opp. at 9. But in so asserting, they ignore at least four crucial facts:

1.  They are not merely speaking to their association members; but are addressing themselves to the members of the provisionally certified settlement classes.[1] These class members' important legal rights turn on how they respond during the limited period they have to take action with respect to the proposed settlement. Opting-out, for example, has irreversible financial consequences, a fact the sites prefer mostly to avoid. Class members are entitled to neutral information about the case, the merits of the proposed settlement and their rights, and the consequences of their actions upon which they can make their decisions. There is a real danger that these websites will undermine the notice program and lead many class members to ill-considered and uninformed decisions. *See Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 498 (E.D. Pa. 1995).

2.  The trade association plaintiffs are not strangers to this proceeding. For more than seven years they have participated extensively in every aspect of this proceeding, including through settlement. The class action in which they have participated and continue to voluntarily attach themselves as parties, mandates fair processes which include defined procedures and parameters on communications with class members during the "crucial" proposed settlement approval process. *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980); Fed. R. Civ. P. 23(c), (d).

3.  The trade associations are not merely expressing views about the merits of the settlement or advising their members; they are running a public campaign, including press releases designed to drive class member traffic to their "merchantsobject.com" site which, in addition to soliciting objections, advises class members to "opt-out" on the dubious premise that opting-out will render their form objections more persuasive to the Court. *See, e.g.*, Sweeney Decl., ¶12(d) & Ex. 2 at 4 (citing NCPA site which states: "Opting out *and* objecting is the *most complete way* to express your opposition to the settlement . . . . You will put the most pressure on Judge Gleeson to reject the settlement") (emphasis in original).[2] Courts have been particularly concerned when parties to a class action, via unauthorized communications,

---

[1] Any suggestion that the trade associations are merely communicating with their members is belied by their own press releases announcing the formation of "merchantsobject.com." According to a March 12, 2013 NACS Press release:"'NACS developed the website [merchantsobject.com] to allow all retailers, regardless of channel, to make their voices heard,'" said NACS President and CEO Hank Armour. "'If you do not make your opposition to this bad proposal known, the court will presume that you accept the terms of the settlement.'" *See* Declaration of Alexandra S. Bernay in Support of Class Plaintiffs' Reply in Support of Letter Filed March 29, 2013, filed concurrently ("Bernay Decl."), Ex. 1.

[2] Emphasis is added and citations are omitted unless otherwise noted, here and throughout.

- 2 -

830053_3

> solicit absent class members to opt-out during the opt-out period. *See In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999).

4. In a class action, there is no First Amendment barrier to the Court's reasonable supervision of communications with absent class members regarding matters pertaining to the proposed settlement and the Class member's rights in connection with it. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (1985); *Georgine*, 160 F.R.D. at 498; *Fleury v. Richemont N. Am., Inc.*, No. 05-4525 EMC, 2007 U.S. Dist. LEXIS 62763 (N.D. Cal. Aug. 15, 2007), discussed *infra*.

The trade association plaintiffs' actions have imperiled and will continue to imperil the efficacy and integrity of the notice program as they continue to make unauthorized and misleading communications to the class.[3] Taking action now and implementing the relief sought by Class Plaintiffs, particularly when the deadlines for objecting and opting-out are fast approaching, will provide some assurance that class members will be provided with complete and accurate information in time for them to make considered decisions regarding what action, if any, they wish to take. For the reasons stated within, the Court should also order the measures described in its Order to Show Cause.

### A. The Trade Association Websites Are Misleading

"Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths . . . result in confusion and adversely affect the administration of justice." *Erhardt*, 629 F. 2d at 846. An examination of whether the content and architecture of the trade association's websites mislead and/or threaten the efficacy and integrity of the notice program appropriately begins with consideration of the official notice, its role and its content. The Court-approved notice is comprised of 27 pages of single-spaced text. It constitutes

---

[3] As NACS promised in another recent press release referring to the merchantsobject.com site, they plan "a number of [further] initiatives" between now and the May 28 deadline. Bernay Decl., Ex. 2.

what the Court has determined is the acceptable level of information which due process and fairness require a class member should have and consider before making a decision with respect to its rights under the proposed settlement. The existence and communication of a balanced and complete notice which contains this level of information is at the foundation of the due process guarantees of the Rule 23 approval procedures. *See Georgine*, 160 F.R.D. at 490.

The trade associations' websites are clearly "factually and legally incomplete." *Erhardt*, 629 F.2d at 846. They fail to provide anything near the quantity and quality of information contained in the Court-approved notice. To provide just a few examples: the notice includes a ***full*** explanation of the Rule changes and the ***full text*** of the releases which the trade associations criticize but only loosely characterize on their sites. A table located at the beginning of the notice fully and prominently explains class members' options and the consequences of those actions, including the important consequences of opting out.[4]

Moreover, the biased design of the sites and their lack of "objectivity and neutrality," works hand-in-hand with the omission of relevant information to achieve the desired result. Merchantsobject.com, for example, is designed to funnel the class member from the home page directly to fill-in-the-blank object/opt-out forms via two oversized red "OPT OUT & OBJECT! TAKE ACTION NOW!" links on the home page. Neither on the home page nor on the designated path to the opt-out forms is there any reference to the class notice, the Court-approved settlement

---

[4]  *See* Sweeney Decl., Ex. 4 at 2.

website, or the terms of the settlement, other than the most general references.[5] Sweeney Decl., ¶5, Ex. 1.[6]

### B. The Trade Association Opposition Selectively Characterizes the Content of the Websites and Must Be Rejected

The trade association plaintiffs attempt to minimize the misleading effect of the omissions and misplacement of information by mischaracterizing the supposed ease of finding a reference to the Court-approved website, and by selectively citing isolated statements which purportedly exemplify the "care" taken to alert class members to all relevant facts. Opp. at 6-7; Dkt. No. 2086-1 ("Shinder Decl."), ¶¶4-31. Closer examination, however, reveals that the trade associations are selectively characterizing the content on their sites and that the sites do not provide the effective and unbiased explanation to which class members are entitled. For example, in an attempt to counter the impact of ¶¶6-8 of the Sweeney Declaration (detailing how certain pages of merchantsobject.com imply that class members have no choice but to opt-out and object while concealing the loss of right of recovery associated with opting-out if the settlement is approved), the Shinder Declaration summarily asserts that "the [merchantsobject.com] website states that doing nothing in response to the settlement is an option" and argues that "[o]n the Opt Out and Object tab, the [merchantsobject.com] site states in bold that "If you do nothing, the court will assume you approve of the settlement." Shinder Decl., ¶5. While it is true that this statement is present on this page, it

---

[5] The trade association plaintiffs are incorrect to call www.paymentcardsettlement.com "Class Counsel's settlement website." Opp. at 10. In fact, the Court's preliminary approval order specifically directed establishment of the website. Dkt. No. 1745, ¶14.

[6] One need only contrast the home page and design of the official notice website with the merchantsobject.com home page to illustrate the point. *See* Bernay Decl., Ex. 3. The notice website is designed to inform and direct the class members to a neutral presentation of relevant information, including through a prominent link directly to the long form notice. Bernay Decl., Ex. 3. The design of merchantsobject.com is to the exact opposite effect.

appears outside of the box entitled "YOUR OPTIONS." Accepting the settlement and filing a claim for damages is nowhere identified as one of "YOUR OPTIONS."

Even more troubling is the text in that same box under the heading "WHAT THAT MEANS," which purports to explain the consequences of the identified options. While purporting to explain the consequences of opting out, the "YOUR OPTIONS" box *nowhere* reveals the critical fact that one of the consequences of opting-out is that the class member *forfeits any claim for damages if the Settlement is approved*. *See* Sweeney Decl., ¶7, Ex. 1 at 3. Compare that with the official notice "LEGAL RIGHTS AND OPTIONS" Table which lists "EXCLUDE YOURSELF" as an option and immediately advises that a consequence of excluding yourself means "[y]ou will *not* get payment from this settlement"). Sweeney Decl., Ex. 4 at 2 (emphasis is original).

The trade associations also argue that the merchantsobject.com website "refers visitors to [the] settlement website in two logical and prominent places." Shinder Decl., ¶ 4. This argument, however, misses the point. Class Plaintiffs do not argue that the information is not available, but rather that the information, as is, is concealed and the manner in which it is presented is misleading. Class Plaintiffs previously acknowledged that reference to the Court-approved settlement website *might* be found if the viewer happened to click on two of the seven tabs on the home page. *See* Sweeney Decl., ¶10 (noting viewer will see mention of court approved site after clicking on "FAQs," and will also see it after clicking on "ABOUT THE CASE," if the reader scrolls halfway down the page and through a paragraph that begins, "*unfortunately, the settlement is a bad deal for merchants*").

Furthermore, the references are anything but "prominent." A prominent reference to the existence of the official notice and Court-approved website is one that would be conspicuously

830053_3

placed on the home page with a direct link and advice to visitors to review and consider the linked information.[7]

Taking these examples along with: (1) the omission of information; (2) the failure to prominently link to the Court-approved site or the notice; (3) the one-sided tone and presentation; (4) their slanted architecture designed to secure opt-outs while steering visitors past any reference to the official settlement website; and (5) the wide diffusion of these sites on the web, aided by press releases designed to drive class members to the merchantsobject.com site, leads to the inevitable conclusion that this opt-out campaign creates a danger of confusion, misleading class members and undermining the integrity of the notice program.

> C. **Evidence Demonstrates that Class Member Confusion Has Already Resulted From The Boilerplate Forms on the Trade Association Websites**

The trade association plaintiffs give short shrift to Class Plaintiffs' concerns regarding the unauthorized and ambiguous objection and opt-out "forms." As Class Plaintiffs explained, a number of class members have sent in these boilerplate forms downloaded from various trade association websites that fail to clearly indicate the intent of the class member to opt-out, object, or both. These forms state at the top, "Statement of Objections (For Merchants Who Opt Out)." As Class Plaintiffs explained, several class members who submitted such forms did not also submit, as the notice states they must, requests for exclusion, thus making their intentions unclear. *See* Sweeney Decl., Ex. 7; Bernay Decl., Ex. 4.

---

[7] The trade associations' opposition and the Shinder Declaration also ignore other examples of misleading content highlighted in the Sweeney Declaration. *See, e.g.*, Sweeney Decl., ¶12(a), Ex. 2 at 1-2, illustrating NCPA screen shot where class member is asked: "What course of action would you like to take in the matter of the proposed settlement?", and then is permitted to click on only two options: "Object and Opt Out" or "Object Only."

Trade association plaintiffs respond that "[i]t is possible that those merchants intend to file a separate notice of exclusion from the past damages class."[8] Opp. at 8. In fact, since beginning their campaign, 41 merchants have submitted form letters with the heading "Statement of Objections for Merchants Who Opt Out." Of those as of April 8, 2013, 20 have not filed exclusion requests. At least some of those merchants likely believe – based on the confusing and misleading advice on the websites or the ambiguous title of the forms – that they have done all that is required to both object and opt-out. Because of the ambiguity of the form, there is simply no way to know with certainty the class members' actual intention.[9]

The Court is well within precedent to take action. "It is certainly within this Court's discretion to disregard affidavits purporting to opt potential plaintiffs out of a class action when this Court had no role in supervising the communications that led to their creation." *Gortat v. Capala Bros., Inc.*, No. 07-cv-3629 (ILG), __ F. Supp. 2d __, 2010 U.S. Dist. LEXIS 35451, at *11 (E.D.N.Y. Apr. 9, 2010). *Romano v. SLS Residential, Inc.*, 253 F.R.D. 292 (S.D.N.Y. 2008) (voiding all opt-outs, requiring corrective action and imposing sanctions following defendants' campaign to induce exclusions). In *In re VisaCheck/MasterMoney Antitrust Litig.*, No. CV-96-5238 (JG) (E.D.N.Y.) matter a corrective communication published on the case website and sent to affected class members was ordered after a finding that a third party claims filer had provided

---

[8] It seems unlikely that most merchants would submit their documents related to the settlement, assuming they were opting-out and objecting, on different days, waiting for some unknown period of time to turn in an exclusion, while sending in their statement of objections.

[9] It is no good answer to this confusing situation to assert, as the trade associations do, that the Class Administrator can "follow up with the merchant to determine what it intended to do." Opp. at 9. While this suggestion demonstrates that the associations recognize their actions have caused confusion, it should not fall to the Class Administrator to clean up this confusion increasing the costs of administration created by the use of these unauthorized and ambiguous forms.

- 8 -

830053_3

inaccurate information to class members. *See* Bernay Decl., Ex. 5 at 32-33, Report and Recommendation, Nov. 4, 2005. A similar Order should issue here. *See also Fleury*, 2007 U.S. Dist. LEXIS 62763, at *2-*3, *12 (named plaintiff and proposed class representative posted online a series of misleading messages disparaging a tentative class settlement which justified relief, *inter alia*, of a required disclaimer which included an advisory to "review the Court's Official Notice Website before forming your own opinions about this matter").

### D. The First Amendment Provides No Impediment to the Measures Sought By This Motion and Described in the Order To Show Cause

The trade associations are parties whose right to speak to the class during the critical settlement approval process is not unfettered. The relief requested by Class Plaintiffs more than adequately preserves the trade associations' ability to present their views to the members of the settlement class and the requested relief is supported by well-established case law.

In *Kleiner*, 751 F.2d at 1203, for example, the Eleventh Circuit upheld the district court's regulation of defense contacts with class members (specifically a telephonic campaign to solicit class exclusion requests), finding that the First Amendment did not prohibit such regulation. In so holding, the Eleventh Circuit stated:

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought."

*Id.*

The Court explained that "[i]n the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties" (*id*. at 1206) and that an order limiting communications by class opponents will satisfy first amendment concerns "if it is grounded in good cause and issued with a 'heightened sensitivity' for first amendment concerns." *Id.* at 1205-06. "In ascertaining the

existence of good cause, four criteria are determinative: the severity and the likelihood of the perceived harm; the precision with which the order is drawn; the availability of a less onerous alternative; and the duration of the order." *Id*. Here, the danger of leading a large number of class members to under-informed and ill-advised opt-out decisions is strong, the relief sought is precise and balanced and the duration of the relief need not exceed the expiration of the opt-out period.[10]

## II. CONCLUSION

The relief requested by Class Counsel is reasonable, measured and needed. Further, pursuant to the Court's April 1, 2013 Order, the trade association plaintiffs have failed to show cause why they should not be required, at their expense, to send a corrective communication and provide class members, particularly those who have responded using their downloadable form objections and opt-outs, with a renewed opportunity – after receiving complete and neutral information – to determine how they want to respond to the settlement, if at all.

---

[10] *See also Georgine*, 160 F.R.D. at 498, where the court ordered remedial relief when counsel opposing settlement issued misleading communications containing one-sided attacks on the settlement. The *Georgine* court noted:

> It is apparent that the manner in which information was presented in these letters and advertisements was certain to discourage class members from participating in the settlement. The one-sided attacks, and the failure to discuss the notice materials or the drafters' interests, are not factors that when taken alone or even together contaminate the notice process. Rather, when considered in conjunction with the misleading statements and omissions of counsel, they lead to the inescapable conclusion that class members who were exposed to these communications could not make an informed choice of whether to remain in the class or to opt out. . . . Moreover, because the misleading statements often were sandwiched between fervent pleas to opt out, the likelihood that class members would comply with the demands was increased.

*Id*. at 496. The *Georgine* court expressly held that the court's interests outweighed the interference with the competing First Amendment interests.

| DATED: April 9, 2013 | Respectfully submitted, |
|---|---|
| | ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>PATRICK J. COUGHLIN<br>BONNY E. SWEENEY<br>DAVID W. MITCHELL<br>ALEXANDRA S. BERNAY<br>CARMEN A. MEDICI |

              s/ Bonny E. Sweeney
              BONNY E. SWEENEY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBINS, KAPLAN, MILLER &
  CIRESI L.L.P
K. CRAIG WILDFANG
THOMAS J. UNDLIN
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER & MONTAGUE, P.C.
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs