**Robbins Geller Rudman & Dowd LLP**

Atlanta　　　　Melville　　　　San Diego
Boca Raton　　　New York　　　San Francisco
Chicago　　　　Philadelphia　　Washington, DC

Bonny E. Sweeney
bonnys@rgrdlaw.com

April 19, 2013

<u>VIA ECF</u>

The Honorable Judge John Gleeson
United States District Court for the
　Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

　　　　Re:　*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
　　　　　　Case No. 1:05-MD-1720-(JG) (JO) (E.D.N.Y.)

Dear Judge Gleeson:

　　　　Class Plaintiffs submit this letter in accordance with the Court's April 11, 2013 Order. Class Counsel have met and conferred with counsel for the trade association plaintiffs over the last several days regarding the misleading websites that were the subject of Class Plaintiffs' March 29, 2013 Letter Motion ("Motion"). Dkt. No. 1963. While the parties have reached agreement on certain corrective measures to be taken by the trade associations, there remain critical areas of disagreement. Class Plaintiffs therefore respectfully ask the Court to order the relief described below.

**I.　　Introduction**

　　　　On April 11, 2013, this Court granted the relief requested by Class Plaintiffs in their Motion, and ordered the parties to try to agree on specific remedial measures to implement that relief, such as the precise wording of the corrective banner notice to be posted on each website. Tr. at 12. The Court gave the parties until today to jointly propose a solution. *Id*. Class Plaintiffs have had several telephone conversations with counsel for the trade association plaintiffs, and have exchanged correspondence, but have not reached agreement on the following issues: (1) the content and placement of the corrective banner notice; (2) whether the websites should notify class members that opting out in addition to objecting will not cause the Court to give any greater weight to the objection; (3) whether the trade association plaintiffs should provide Class Counsel an opportunity to review all class-wide communications before dissemination to the class[1]; and (4) whether class members who may have been

---

[1]　　This relief was ordered by the Court on April 11, 2013. *See* Tr. at 12 and Proposed Order, ¶5.

Robbins Geller
Rudman & Dowd LLP

misled by the websites and already opted out should be provided an opportunity at this time to opt back in.

## II.     Remedial Measures Required

Class Plaintiffs respectfully request that the Court order the trade association plaintiffs to implement the following remedial measures:

### A.     Post Corrective Banner Notices on Website Home Pages and Pages Addressing Settlement

The proposal below implements items 1, 2 and 3 in Class Plaintiffs' Proposed Order submitted March 29, 2013 ("Proposed Order").  Dkt. No. 1963-3.

#### 1.     Long-Form Banner

Class Plaintiffs propose that the following corrective banner notice[2] be posted on the home page of the website merchantsobject.com, and, with respect to the other websites that were the subject of the Motion (www.ncpanet.org, www.nationalgrocers.org, www.nacsonline.org and www.natso.com), on the first page substantively addressing the proposed settlement:

> Judge Gleeson, the United States District Court Judge presiding over *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, has determined that certain information regarding the settlement previously displayed on this website, and others like it, was misleading.
>
> As a result, Judge Gleeson has ordered that this website post this advisory.  This is not the Court-approved Case Website.  The Court is concerned, for example, that some class members who visited this site may not have fully understood their rights with regard to the proposed settlement and therefore may have made decisions without complete information.  For information such as the Court-approved Notice, which provides a detailed description of the proposed settlement and class members' rights and options in connection with the proposed settlement, please visit: www.paymentcardsettlement.com.  Judge Gleeson recommends that you visit that site before deciding what action, if any, you wish to take regarding the settlement.  You may

---

[2]     According to the site netlingo.com, an online internet dictionary, a banner ad "is a graphical Web advertising image usually placed at the top of content pages."  *Available at* http://www.netlingo.com/dictionary/all.php.

also want to contact the attorneys appointed by the Court to represent the interests of the Class.

Ex. 1.

## 2. Short-Form Banner

In addition, Class Plaintiffs propose that www.ncpanet.org, www.nationalgrocers.org, www.nacsonline.org and www.natso.com post the following corrective banner notice on their home pages:

> United States District Court Judge John Gleeson, who is presiding over *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, has ruled that this website and others like it posted certain information regarding the settlement of that case that was misleading. Additional information as to class members' rights and options under the settlement is available at www.paymentcardsettlement.com.

Ex. 2.

## 3. Discussion

In their discussions, the parties agreed that some type of corrective banner should be placed on the websites. However, they disagreed as to the content of the banner, the location of the banner on the website, and the design of the banner.

Class Plaintiffs believe the content of the Long-Form Banner, above, properly highlights the issues raised in the Motion and that were of concern to the Court. The language proposed by the trade association plaintiffs, in contrast, incorrectly suggests that the Court's concerns about the websites were more limited.[3]

---

[3] The trade association plaintiffs proposed the following banner: "Judge Gleeson, the United States District Court Judge presiding over the litigation, has determined that the information regarding the settlement previously displayed on the merchantsobject.com website, and others like it, was misleading in certain respects. Specifically, Judge Gleeson is concerned that some class members who accessed this site may not have fully understood their rights with regard to the proposed settlement before acting. Following Judge Gleeson's concerns, this website was revised. This is not the Court-approved Case Website. For information such as the Court-approved Notice regarding the litigation, a detailed description of the proposed settlement and class members' rights and options in connection with the proposed settlement, see: www.paymentcardsettlement.com (with a link). It is recommended that you visit the site and review the Court-approved Notice before deciding what actions, if any, you wish to take regarding the settlement."

Robbins Geller
Rudman & Dowd LLP

The Honorable Judge John Gleeson
April 19, 2013
Page 4

Class Plaintiffs also believe that each of the websites must have a corrective banner on its home page. The trade association plaintiffs assert, in contrast, that a corrective banner should be posted only on the home page of merchantsobject.com, and that for the other websites a corrective banner should be posted only on the pages addressing the settlement in depth. As can be seen in the screen shots of the home pages, however, most of the trade association plaintiffs reference the settlement on their home pages.[4] Exs. 3-6. Because this is the first – and potentially the only – page class members will visit, a corrective banner should be placed on ***all*** of the home pages that reference the proposed settlement. Otherwise, a trade association member that has already taken action regarding the settlement based on prior misleading information may not click through to the settlement-related pages, even though the member may visit the main site. Recognizing that the websites other than merchantsobject.com reserve most commentary about the proposed settlement to other pages, Class Plaintiffs have proposed the Short-Form Banner for the home pages of these sites. Class Plaintiffs believe that this addresses the concerns raised by the trade association plaintiffs.

The parties also discussed, but did not reach agreement regarding the prominence and format of the corrective banners. Attached as Exs. 1 and 2 are mock-ups of the banners Class Plaintiffs propose be placed on the websites. It is important that the text and format of the corrective banner be at least as prominent and noticeable to the reader as any other information on the page. Otherwise, the reader's attention will be drawn away from the banner, undermining the purpose of ordering a corrective banner.

### B. Post on Each Website Information Sufficient to Disclose Consequences of Opting Out and Correct Prior Misinformation

Class Plaintiffs propose that each website notify class members that opting out means that the class member will not receive monetary benefits from the settlement if it is approved, ***and*** that "opting out in addition to objecting will not result in the Court giving greater weight to the objection."

The trade association plaintiffs have agreed only to notify class members that a class member that opts out will relinquish its rights to participate in any monetary distributions under the settlement, and have refused to include in their websites the additional information requested. Their approach, however, is insufficient to rectify the problem created by the trade association plaintiffs' claim that opting out will cause the Court to give greater weight to a class member's objection. Because an opt out based on this premise is based on misinformation, there must be a corrective statement on the websites. The trade association plaintiffs' claim that this requirement would "impermissibly chill" their clients' ability to communicate their opinions to their members is without basis. Telling class members

---

[4] The parties agree that the merchantsobject.com site is different and there is no disagreement regarding the placement of the banner on that site's home page, although there is disagreement regarding the text.

that opting out will make an objection more persuasive to the Court is a factual and legal misstatement of the consequences of opting out. The Court is thus well within established precedent to require a corrective statement. *See, e.g.*, *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (holding court has both duty and broad authority to exercise control of the class action and to enter into appropriate orders governing conduct of counsel and parties and voiding all opt outs received in response to misleading mailings by party).

      C.      **Provide Advance Notice to Class Counsel of Any Class-Wide Communications**

The Court granted the relief sought by Class Plaintiffs in the Proposed Order, including Class Plaintiffs' request that the trade association plaintiffs "present any future planned class-wide communication to Class Counsel prior to dissemination." Proposed Order, ¶5. The trade association plaintiffs have repeatedly violated this directive. Since the April 11 hearing, several of the websites have modified their settlement-related communications to class members in ways that not only do not comply with the Court's directive, but actually exacerbate the misleading and one-sided nature of the communications. They did so without providing Class Counsel an advance opportunity to review such communications, in contravention of the Court's Order. *See* Tr. at 12; Proposed Order, ¶5.

The "MerchantsObject" website, for example, posted a "banner" on its home page in ostensible compliance with the Court's Order. This same page continues, however, to highlight all of the misleading information that Class Plaintiffs objected to in their Motion. In large, bold and red text the website exhorts class members to "OPT OUT & OBJECT! TAKE ACTION NOW!," on a button that automatically generates a form for objecting and opting out, but fails to provide any explanation of the consequences of opting out. *See* Ex. 3. The corrective "banner," on the other hand, is in tiny print inside a box with only some of the items the Court indicated must be disclosed by the banner, *e.g.*, disclosure of the official case website and the identity of Class Counsel.[5] Notably missing from this new text is the statement the Court "has determined that that the information previously contained on this site and others like it was misleading." Tr. at 7.[6] In addition, just below the reference to the Court-approved website, merchantsobject.com describes its own website as "the website for merchants who are considering opposing the settlement." This placement – which suggests that the Court-approved

---

[5]     Notably, after identifying Class Counsel, the site disparages them. This reference to Class Counsel does not seem to be in keeping with the spirit of the Court's directive.

[6]     During their meet and confer sessions, Class Plaintiffs had requested access to the "members-only" pages of the trade association plaintiffs' websites in order to ensure that any misleading material be removed. In response, Mr. Shinder, counsel for the trade association plaintiffs, agreed that his clients will not evade the Court's Order by posting misleading information about the settlement on the members-only sections of those websites.

website exists only for merchants who are not considering objecting – is patently misleading. The Court-approved website is intended for all class members, regardless of their initial thoughts about the settlement.

The trade association plaintiffs also refuse to provide advance notice of communications other than changes to the various websites, claiming that such a requirement is an impermissible prior restraint on their ability to communicate with their members. Class Plaintiffs are concerned that the trade association plaintiffs will use other means of communications – such as newsletters, press releases, and mass emails – to repeat the mis-statements made on their websites.[7] At a minimum, the trade association plaintiffs should be prohibited from using other media to evade the Court's orders pertaining to the misleading information on their websites.

### D. Identify Class Counsel in a Neutral Manner

The parties have agreed on this issue.

## III. The Trade Association Plaintiffs' Requests for Relief Should Be Denied

In addition to objecting to certain aspects of the relief granted by the Court in response to Class Plaintiffs' Motion, the trade association plaintiffs have asked for relief that is not supported by the record. Specifically, they have requested that objections to the settlement be posted on the Case Website, and that a corrective notice be sent now to class members that have opted out, providing the option of opting back in.

### A. There Is No Basis for Including Objections on the Court-Approved Website

The trade association plaintiffs have once again requested that objections to the settlement be included on the Court-approved Case Website. This same request was made by the trade association plaintiffs during the April 11 hearing, and was denied by the Court. Tr. at 10-11. There are nearly 100 different documents, from all phases of the case, that are currently accessible on the Court-approved website. The entire docket is available on PACER. There is no reason in fact or precedent to include the additional documents requested by the trade association plaintiffs. *See, e.g.*, Judges' Class Action

---

[7] NATSO posted an item sometime prior to the Court's April 11 hearing on its website on a page dedicated to Credit/Debit Fees with the headline "NATSO, Other Associations Respond to "Meritless" Allegations of Misleading Merchants in Swipe Fee Settlement." Ex. 7. This link lead to an article that appears to have also been shared with NATSO members via an electronic newsletter. Only after Class Counsel pointed out the article today was the link taken down.

Notice and Claims Process Checklist and Plain Language Guide from the Federal Judicial Center,[8] noting "it is reasonable to post the following documents at a neutral administrator's website dedicated to the case: the plaintiffs' complaint, the defendants' answer, your class certification decision (in the event of a class certified for trial), and the settlement agreement and claim form (in the event of a settlement)." *See also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 663 (S.D. Fla. 2011) (approving settlement website and ordering the site to include only "the Settlement, the Long-form Notice, this Order, and such other documents as Settlement Class Counsel and counsel for [defendants] agree to post or that the Court orders posted on the Settlement Website.")

### B. The Court Should Reserve Any Decision on Sending Corrective Communications and Permitting Withdrawal of Opt-Outs

At the April 11 hearing the Court discussed the possibility of allowing any class member who was misled by the trade associations' websites to retract its opt-out and rejoin the class in the event the settlement is finally approved. At the same time, the Court expressed concern that another communication at this time might engender further confusion. Class Plaintiffs agree that the right to withdraw an opt-out might be necessary, but are concerned that making that option available now will likely exclude class members who have made their decision to opt out based on the misleading information, but have not yet opted out. It may also cause or increase confusion.[9] Thus, Class Plaintiffs propose waiting to make the determination regarding a second opt-out option until after the settlement is finally approved.

If the Court is inclined to order the immediate mailing of a corrective notice and an opportunity to withdraw an opt-out, Class Plaintiffs propose that the corrective notice be sent by the Court-appointed Class Administrator, and be in the form attached as Ex. 8.

### IV. Other Websites that Post Similar Misleading Information Should be Provided with the Court's Orders and Other Materials

Several other trade associations, including AFPD, the Maine Retailers Association, the Massachusetts Package Stores Association, the Petroleum Marketers Association, and the National

---

[8] *Available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf at 3.

[9] Importantly, during discussions with the trade association plaintiffs, their counsel could provide no reason why any corrective notice should not wait until after final approval, should it be granted, to allow those persons who may have opted out based on misleading information, to change their minds and participate in the settlement. Class Plaintiffs believe this option, if any, best serves the interests of class members, including trade association members, who may have been misled by material on the websites.

Retail Federation, have websites that contain information about the proposed settlement that is identical or similar to the misleading statements in the trade association plaintiffs' websites. *See* Dkt. No. 2091, April 9, 2013 Letter from Robert J. Vizas. During the meet and confer process, Class Counsel inquired of the trade association plaintiffs' counsel about counsel's or his clients' relationship with these associations, and their role, if any, in providing material for those websites. Mr. Shinder said he would make inquiries but was not certain whether he or his clients were in a position to exert any influence over these other associations and their websites.

Because these websites contain misleading information that impinges upon class members' ability to exercise their rights with regard to their options in the settlement, Class Plaintiffs suggest that they be provided with any Orders issued by this Court on Class Plaintiffs' Motion, as well as the briefing papers and the transcript of the April 11, 2013 hearing. Class Counsel is prepared to provide these materials and report to the Court regarding whether the websites make the modifications required of the trade association plaintiffs.

**V.      Conclusion**

For the foregoing reasons, and for the reasons set forth in their papers filed in support of their Motion, Class Plaintiffs respectfully request that the Court order the relief described in this letter.

Respectfully submitted,

| */s/ K. Craig Wildfang* | */s/ H. Laddie Montague, Jr.* | */s/ Bonny E. Sweeney* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Bonny E. Sweeney |
| **Robins, Kaplan, Miller & Ciresi L.L.P.** | **Berger & Montague, P.C.** | **Robbins Geller Rudman & Dowd LLP** |

Attachments

cc:     All Counsel via ECF