UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

IN RE PAYMENT CARD INTERCHANGE FEE          05-md-1720 [JG] [JO]
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

------------------------------------------------------------------- X

**RETAILERS AND MERCHANTS' OBJECTION
TO FINAL APPROVAL OF THE CLASS ACTION
<u>DEFINITIVE SETTLEMENT AGREEMENT</u>**

## I.  INTRODUCTION AND PRELIMINARY STATEMENT

In the Definitive Class Settlement Agreement (the "Settlement Agreement"), the

Visa Defendants, Mastercard Defendants, and Bank Defendants (collectively

"Visa/Mastercard") – along with fewer than <u>half</u> of the originally proposed class

representatives willing to support the settlement[1] (the "Class Representatives") – have

agreed to grant Visa/Mastercard immunity from liability stemming from any *future*

application, interpretation, or conduct under their presently effective rules governing

merchants.  In exchange, Visa/Mastercard have committed to pay to a class "comprised of

*millions*" of members (Mem. Law Supp. Mot. Class Cert. 30) an amount roughly

---

[1] In the initial motion for class certification, Class Counsel offered "nineteen Plaintiff class
representatives." (Redacted Mem. Law Supp. Mot. Class Cert. 7.) When it became time
to provisionally certify the Class for purposes of preliminary approval of this settlement,
only *nine* remained. (Mem. Supp. Mot. Class Settlement Prelim. Approval 1 n.2.) Gone
are merchants and organizations such as D'Agostino Supermarkets, Inc., the National
Restaurant Association, the National Association of Convenience Stores, and the National
Grocers Association (*cf.* First Consol. Am. Class Action Compl. ¶¶ 18, 23-27, 40-46),
leaving others like Payless ShoeSource, Inc. and Leon's Transmission Service, Inc. to fend
for the Class (*see* Mem. Supp. Mot. Class Settlement Prelim. Approval 1 n.2).

1

equivalent to the sum collected over *a couple of months* from credit card "swipe" fees, even though the operative pleadings allege that Visa/Mastercard carried on their antitrust conspiracy for *years*. Visa/Mastercard have additionally approved changes to a few of the numerous rules subject to the applicable releases, and the Settlement Agreement requires them to offer a discounted swipe fee, or "interchange" rate, for a period of a scant eight months. After that, should the Court approve the settlement, Visa/Mastercard may proceed with their anticompetitive conduct with impunity, comfortable that they are free to do so thanks to the releases within the Settlement Agreement.

Visa/Mastercard and the Class Representatives seek to accomplish the relinquishment of future antitrust damage claims through the imposition of a mandatory, non-opt-out, class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The use of a Rule 23(b)(2) non-opt-out class to release future claims "exceeds what the Court may permit." *Authors Guild v. Google Inc.*, 770 F. Supp. 2d 666, 677 (S.D.N.Y 2011) (denying final approval to a settlement that would have released future claims, even in a Rule 23(b)(3) class which would have allowed opt-outs). Moreover, "[t]he defendants would obtain these releases without agreement to permanently alter the conduct which gave rise to the lawsuit," *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 580 (E.D. Pa. 2001), and the releases would cover *all* Visa/Mastercard rules presently in effect, rather than the few at issue in this dispute, so that they then would "extend far beyond the conduct challenged in the litigation," *id.* at 576. For these and other reasons discussed throughout this objection, final approval of the Settlement Agreement should be denied.

## II.   <u>THE OBJECTING PARTIES</u>

The objectors opposing the Settlement Agreement in this Objection are those retailers and merchants originally named in the Retailers & Merchants Objection to Proposed Class Settlement Agreement [Document 1653], filed on October 18, 2012 (the "R&M Objectors"), and additional retailers and merchants who oppose final approval of the Settlement Agreement after having received notice of the settlement.  These retailers and merchants are:

1.   Landers McLarty Bentonville, LLC d/b/a Landers McLarty Ford Dodge Chyrsler Jeep – Bentonville, Arkansas

2.   Landers McLarty Bentonville Nissan, LLC d/b/a Landers McLarty Nissan, LLC – Bentonville, Arkansas

3.   Bessemer AL Automotive, LLC d/b/a Landers McLarty Dodge Chrysler Jeep – Bessemer, Alabama

4.   Shreveport Dodge, LLC d/b/a Landers Dodge – Bossier City Louisana

5.   RML Branson MO, LLC d/b/a Tri Lakes Motors – Branson, Missouri

6.   RML Burleson TX, LLC d/b/a Burleson Nissan – Burleson, Texas

7.   RML Bel Air, LLC d/b/a Bel Air Honda – Falston, Maryland

8.   Landers McLarty Fayetteville TN, LLC d/b/a Landers McLarty Toyota – Fayetteville, Tennessee

9.   RML Ft. Worth TX, LLC d/b/a Nissan Ft. Worth – Fort Worth, Texas

10.   RML Huntsville Chevrolet, LLC d/b/a Landers McLarty Chevrolet –

3

Huntsville, Alabama

11.   RML Huntsville AL, LLC d/b/a Landers McLarty Dodge Chrysler Jeep –
      Huntsville, Alabama

12.   RML Huntsville AL Automotive, LLC d/b/a Mercedes Benz of Huntsville –
      Huntsville, Alabama

13.   RML Huntsville Nissan, LLC d/b/a Landers McLarty Nissan – Huntsville,
      Alabama

14.   RML Huntsville, AL, LLC d/b/a Landers McLarty Subaru – Huntsville,
      Alabama

15.   Landers McLarty Lee's Summit MO, LLC d/b/a Lee's Summit Chrysler
      Jeep Dodge – Lee's Summit, Missouri

16.   RML Lee's Summit MO, LLC d/b/a Lee's Summit Nissan – Lee Summit,
      Missouri

17.   RML Olathe II, LLC d/b/a Olathe Dodge Chrysler Jeep – Olathe, Kansas

18.   RML Waxahachie Dodge, LLC d/b/a Waxahachie-Dodge Chrysler Jeep –
      Waxahachie, Texas

19.   RML Waxahachie Ford, LLC d/b/a Waxahachie Ford Mercury –
      Waxahachie, Texas

20.   RML Little Rock, Inc. d/b/a Landers Harley Davidson – Little Rock,
      Arkansas

21.   RML Little Rock, Inc. d/b/a Landers Harley Davidson – Hot Springs,
      Arkansas

4

22. RML Little Rock, Inc. d/b/a Landers Harley Davidson – Conway, Arkansas

23. Landers Auto Group No. 1 d/b/a Landers Scion – Little Rock, Arkansas

24. Landers Auto Group No. 1 d/b/a Landers Toyota – Little Rock, Arkansas

25. Landers Auto Group No. 1 d/b/a The Boutique at Landers Toyota –

   Little Rock, Arkansas

26. Landers CDJ, Inc. – Little Rock, Arkansas

27. Landers CDJ, Inc. d/b/a Steve Landers Chrysler Dodge Jeep – Little Rock,

   Arkansas

28. Landers of Hazelwood, Inc. – Hazelwood, Missouri

29. A&D Wine Corp. – New York, New York

30. A&Z Restaurant Corp. – New York, New York

31. 105 Degrees, LLC – Oklahoma City, Oklahoma

32. The Pantry Restaurant Group, LLC – Little Rock, Arkansas

33. PPT Inc., d/b/a Graffiti's Restaurant – Little Rock, Arkansas

34. Sansole's Tanning Salon – Little Rock, Arkansas

35. Greenhaw's, Inc. – Little Rock, Arkansas

36. Roberson's Fine Jewelry, Inc. – Little Rock, Arkansas

37. Don's Pharmacy, Inc. – Little Rock, Arkansas

38. Gossett Motor Cars, Inc. – Memphis, Tennessee

39. Gossett Motor Cars, Inc. – Atlanta, Georgia

40. JB Cook, LLC. d/b/a Downtown Oil & Lube – Hope, Arkansas

41.     Storage World Limited Partnership, LLC – Little Rock, Arkansas

42.     Leisure Landing RV Park – Hot Springs, Arkansas

43.     Pinnacle Valley Liquor Store, Inc. – Little Rock, Arkansas

44.     The Tennis Shoppe, Inc. – Little Rock, Arkansas

45.     The Grady Corporation d/b/a Whole Hog Barbeque (Northwest Arkansas) – Bentonville, Arkansas

46.     The Grady Corporation II d/b/a Whole Hog Barbeque (Northwest Arkansas) – Fayetteville, Arkansas

47.     Coulson Oil Company – North Little Rock, Arkansas

48.     Diamond State Oil LLC – North Little Rock, Arkansas

49.     Superstop Stores, LLC – North Little Rock, Arkansas

50.     PetroPlus, LLC – North Little Rock, Arkansas

51.     Port Cities Oil, LLC – North Little Rock, Arkansas

52.     New Mercury, LLC – North Little Rock, Arkansas

53.     New Vista, LLC – North Little Rock, Arkansas

54.     New Neptune, LLC – North Little Rock, Arkansas

55.     SVI Security Solutions – Olive Branch, Mississippi

55.     Shepherd's Flock – Townshend, Vermont

The retailers and merchants represented in this objection to final approval of the Class Settlement Agreement are a broad-based, diverse group of businesses representing restaurants, clothing stores, oil and gas companies, convenience stores, car dealerships, jewelry shops, beverage retailers, and other type of trades in numerous states, including,

but not limited to New York, Vermont, Maryland, Arkansas, Tennessee, Mississippi, Alabama, Georgia, Kansas, Missouri, Oklahoma, Texas and Louisiana. These objecting retailers and merchants sell goods to consumers in exchange for payment by credit cards and pay interchange ("swipe") fees.

From the original objection, by approximately half of the original class representatives this past summer, to the large group of objectors present at the preliminary approval hearing held on November 9, 2012, the objection to this proposed class settlement is significant, material and continues to grow.[2] The reasons are simple: This settlement: (1) proposes to bind absent class members to the settlement and release future claims related to the swipe fees while providing immunity to Visa/Mastercard and member banks for future anticompetitive behavior; (2) violates the due process rights of Class Members by providing no legitimate right of opt-out to Class Members; (3) releases Visa/Mastercard from liability for conduct completely unrelated to matters litigated in this case; (4) contains deficient notice because the notice does not provide a legitimate opt-out opportunity; and (5) provides illusory and non-uniform and class-wide relief in the form of a surcharge, which many absent class members will not impose on their customers for several reasons.

Further, the exodus of a large group of class representatives from the settlement illustrates its inherent flaws and unfairness. The Settlement Agreement is materially flawed in its current form. For these reasons, and as discussed in further detail below,

---

[2] By way of comparison, the Court's approval of the settlement agreement in *In re Visa Check/Mastermoney Antitrust Litigation*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (Gleeson, J.), while it involved some 5 million merchants, only had 18 merchant objectors. 297 F. Supp. 2d at 409.

R & M Objectors respectfully submit the settlement is not reasonable, adequate or fair to the entire class bound by the Settlement Agreement.

## III.  ARGUMENT

### A.  The Settlement Agreement Violates Due Process

By its very nature, a proposed class action settlement that violates the Due Process Clause of the United States Constitution can be neither "fair, reasonable, [nor] adequate," Fed. R. Civ. P. 23(e)(2), which is the standard governing the propriety of final approval, *see id.*  The Settlement Agreement violates due process in a variety of ways, among them the proposed – and mandatory – release of Visa/Mastercard from liability for any future damages in derogation of the nation's antitrust laws, without any legitimate right to opt-out.  The Settlement Agreement is wholly improper, and final approval should not be forthcoming.

### 1.  The Release Of *Future* Antitrust Liability By Way Of A Mandatory 23(b)(2) Class Is Completely Impermissible Under United States Supreme Court Precedent

The present settlement includes a Class to be certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure, thus affording no opportunity for any of the millions of Class Members to opt out of the terms which would bind that aggregation of merchants. *See* Fed. R. Civ. P. 23(b)(2), (c)(2)(A) (confirming that a (b)(2) class includes no right to "opt-out").  Thus, should final approval occur, the individuals and businesses within this enormous class will have had no choice but to release Visa/Mastercard from any causes of action regarding *future* damages for violations of antitrust laws.  The United States Supreme Court has rejected collusive settlements just like this.

8

In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815  (1999), the Supreme Court considered the permissibility under Rule 23 of a settlement that would relinquish class members' future claims without giving them an opportunity to opt out.  *Id.* at 843-48 .  After emphasizing the "serious constitutional concerns raised by the mandatory class resolution of individual legal claims, *especially where a case seeks to resolve future liability in a settlement only action*." *id.* at 842 (emphasis added),[3]  the Court wasted no time in rejecting the settlement before it.  *Id.* at 830, 864-65; *see also Molski v. Gleich*, 318 F.3d 937, 948-49 (9th Cir. 2003) ("[T]he Supreme Court in *Ortiz* expressed its growing concern regarding the constitutionality of certifying mandatory classes when damages are at issue.").

The Court made clear that a class settlement which would sacrifice monetary damages claims possessed by individual members of the class, with no chance to opt out of that result, is beset with Constitutional infirmities.  First of all, "the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members." *Ortiz*, 527 U.S. at 845-46.  Continuing on, the Court explained, "By its nature . . . a mandatory

---

[3] Elsewhere in the *Ortiz* opinion, the Court reiterated the increased concern for absent class members necessary whenever certification occurs only to facilitate settlement of classwide claims.  *Ortiz*, 527 U.S. at 842, 848-49; *see also Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001) (exercising "*great care* in reviewing the settlement" because it had "only conditionally certified the class" (emphasis added)).  Of course, certification here occurred only in the context of settlement.  (*See* Order of 7/17/2012 (deeming Plaintiffs' Motion for Class Certification "withdrawn" in light of anticipated settlement); Prelim. Approval Order ¶ 6 ("[T]he Court *provisionally* certifies, *for settlement purposes only*, a Rule 23(b)(2) *Settlement Class*, from which exclusions shall not be permitted . . . . " (emphases added).)

settlement-only class action with legal issues and future claimants compromises [class action plaintiffs'] Seventh Amendment rights without their consent." *Id.* at 846.

In addition to violating class members' rights under the Constitution's Seventh Amendment, mandatory, settlement-only classes also run afoul of the Due Process Clause. The *Ortiz* opinion elaborated:

> The inherent tension between representative suits and the day-in-court ideal is only magnified if applied to damage claims gathered in a mandatory class. Unlike Rule 23(b)(3) class members, objectors to the collectivism of a mandatory [class] action have no inherent right to abstain. The legal rights of absent class members (which in a class like this one *would include claimants who by definition may be unidentifiable when the class is certified*) are resolved regardless either of their consent, or, in a class with objectors, their express wish to the contrary.

*Ortiz*, 527 U.S. at 846-47(emphasis added). As such, the Court confirmed "that before an absent class member's right of action [is] extinguish[ed] due process require[s] . . . *at a minimum* [that] an absent plaintiff . . . be provided with an opportunity to remove himself from the class." *Id.* at 848 (emphasis added and quotation omitted).

The mandatory, non-opt-out, settlement-only class created by the Settlement Agreement does not at all live up to the minimum constitutional requirements emphasized in *Ortiz*. *See Molski*, 318 F.3d at 949 n.13 (observing that the concerns highlighted in *Ortiz* "appl[y] to any mandatory class, whether under 23(b)(1) or (b)(2)"). The R&M Objectors submit that the Rule 23(b)(2) class now before the Court, by releasing unliquidated *future* damages claims with respect to rules of Visa/Mastercard *unrelated to this litigation*, contains a damages component that is more than "incidental" to the

injunctive relief.  *See Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 164 (2d Cir. 2001) ("By definition . . . incidental damages must be susceptible to computation by means of objective standards and not dependent in any significant way on . . . intangible, subjective differences." (quotation omitted)).  Consequently, the ***only*** way this Class can be salvaged is through the issuance of a ***new*** notice affording Class Members a chance to opt out.  *Cf. id.* at 166 ("[A]ny due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members . . . .").

2. <u>**The Release Of *Future* Antitrust Liability By The Rule 23(b)(3) Class Is Inappropriate**</u>

Perhaps doubting the sustainability of the proposed 23(b)(2) class, Visa/Mastercard and Class Representatives also included releases of future antitrust claims in the Rule 23(b)(3) "damages" class described in the Settlement Agreement.  (*See, e.g.,* Definitive Class Settlement Agreement ¶ 33(h) (affirming that Rule 23(b)(3) release includes claims "based on or relating to . . . the *future* effect in the United States of the continued imposition of or adherence to any Rule of [Visa/Mastercard] in effect in the United States as of the date of the Court's entry of the [Preliminary Approval Order]" (emphasis added)).  Because this Rule 23(b)(3) class does not offer Class Members a legitimate opportunity to opt out of a settlement that releases future damages,[4] this release, too, falls short of constitutional demands.  This is especially so given the heightened scrutiny directed

---

[4] As explained in Section III.B. of this Objection, the Notice itself is constitutionally defective because, as a practical matter, it does not offer class members a legitimate opportunity to opt-out of the proposed relief.

11

toward this settlement-only class. *Ortiz*, 527 U.S. at 848-49, 119 S. Ct. at 2316 ("When a district court . . . *certifies for class action settlement only*, the moment of certification requires 'heightene[d] attention' to the justification for binding the class members." (emphasis added)).

The Supreme Court's opinion in *Ortiz*, as well as its decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), stand as towering authorities for the general proposition that, when it comes to releases for *future* conduct, "the interests of present and future victims are so unavoidably opposed that the one group cannot 'fairly and adequately protect the interests' of the other."   James Grimmelmann, FUTURE CONDUCT AND THE LIMITS OF CLASS-ACTION SETTLEMENTS, 91 N.C. L. Rev. 387, 391 (2013) (citing Fed. R. Civ. P. 23(a)(4), *Ortiz*, *supra* and *Amchem*, *supra*)).

The Settlement Agreement seeks to release future claims and insulate Visa/Mastercard from future transgressions of an anticompetitive nature.  The Court's own docket is filled with substantial opposition to this unfair term of the Settlement Agreement. The large numbers of objections to the settlement agreement and opt outs with valid concerns weighs heavily against approving the class settlement as fair, reasonable and adequate.  *Authors Guild v. Google, Inc*., 770 F. Supp. 2d 666, 676 (S.D. N.Y. 2011) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 785, 812 (3d Cir. 1995)).  Moreover, it is significant that the Settlement Agreement proposes to release *future* antitrust conduct engaged in by the Defendants on a class-wide basis.  District courts have generally held that in cases involving antitrust law, future

violations cannot be waived in the context of a class action settlement.  *See Schwartz v. Dallas Cowboys Football Club, Ltd*., 157 F. Supp. 2d 561 (E.D. Pa. 2001); *Three Rivers Motor Co. v. Ford Motor Co*., 522 F.2d 885, 896 n.27 (3d Cir. 1975) (citing cases from several circuits that while a general release of antitrust violations is permitted, a release may not "waive damages from future violations of antitrust laws").

Schwartz is persuasive and its reasoning applies here.  In *Schwartz*, the district court rejected a Rule 23(b)(3) class settlement in an antitrust lawsuit, finding the release in the settlement agreement was too broad.  *Schwartz*, 157 F. Supp. 2d at 577-78.  The district court regarded the release too broad "because it bars later claims based on future conduct." *Id*. at 578.  The *Schwartz* court held it was improper to "bar later claims based not only on past conduct but also future conduct."  *Id*.  The district court also held that because the release was so broad there was a lack of consideration for the class members bound by the settlement agreement.  The court reasoned:

> Under the release proposed by the parties, defendants could potentially expand their alleged bundling activities in other non-exempt channels of communication (such as the Internet) and face no potential liability with respect to the 1.8 million class members as long as they provide Single Sunday Ticket for satellite distribution under the terms expressed in the Settlement Agreement.  *Such a result offers the possibility of far greater protection for defendants than is justified from the benefits obtained by the class*.

*Id*.

Here, the Settlement Agreement would prevent lawsuits against the Defendants for future wrongful conduct that is the same or ***similar*** to the wrongful conduct challenged. Defendants can violate the law eight (8) months after the class settlement is approved and

13

all class members would be unable to vindicate their rights and stop the unlawful conduct. Generally, injunctive relief preventing violations of antitrust law is ***permanent***.  Not with this settlement.  There is a short period of injunctive relief and then tremendous loopholes for Defendants to tweak their market behavior and set high, lock-step swipe fees, which retailers and merchants would be forced to pay after the injunction.  In light of the minimal injunctive (prospective) relief, the settlement provides far greater protection for the Defendants than is "justified from the benefits obtained by the class." *Schwartz*, 157 F. Supp. 2d at 578.[5]  This attempt by Visa/Mastercard and the Class Representatives and Class Counsel to bind absent (even unknown or not yet conceived) class members for years into the future from bringing suit for antitrust or other violations is unprecedented in scope, unconstitutional, fundamentally flawed and unfair.  *Cf. Ortiz*, 527 U.S. at 847, 119 S. Ct. at 2315 (indicating that a court must be especially vigilant to protect absent class members "who by definition may be unidentifiable when the class is certified"); James Grimmelmann, FUTURE CONDUCT AND THE LIMITS OF CLASS-ACTION SETTLEMENTS, 91 N.C. L. Rev. 387, 394 (2013) (stating that the proposed Visa Mastercard settlement would "prevent businesses-including ones not yet in business-from objecting to many of their policies until 2021"); Adam J. Levitin, AN ANALYSIS OF THE PROPOSED INTERCHANGE FEE

---

[5] Tellingly, the Court in *Schwartz* expressed strong criticism for a settlement that would have prevented the defendants from engaging in the challenged conduct for at least one, but possibly no more than two, years.  *Schwartz*, 157 F. Supp. 2d at 573.  This Settlement Agreement does not even go that far.  Even more than *Schwartz*, then, the prospective relief in this case "provides limited additional consumer choice to the members of the class" and "is minimal at best."  *Id.*

14

LITIGATION SETTLEMENT 14-19 (Aug. 21, 2012).[6]

The United States Court of Appeals for the Second Circuit  has held that class member's rights to due process are violated where a Rule 23(b)(3) class settlement releases unaccrued future claims.  *Stephenson v. Dow Chemical Co*., 273 F.3d 249, 259-61 (2d Cir. 2001), *aff'd in part by an equally divided court*, *vacated in part on other grounds*, 539 U.S. 111 (2003).  Similarly, recently faced with a proposed class settlement involving release of future claims, the United States District Court for the Southern District of New York rejected the settlement.  *Google*, 770 F. Supp. 2d at 677.  The release of defendant Google from liability for *future* acts was in excess of what the district court viewed as permissible, and this aspect of the class settlement at issue was not fair, reasonable, or adequate.  *Id*. The district court cited the United States Supreme Court reasoning in *Amchem*: "'Rule 23 . . .  must be interpreted with fidelity to the Rules Enabling Act and *applied with the interests of absent class members in close view*.'"  770 F. Supp. 2d at 677 (emphasis added) (quoting *Amchem*, 521 U.S. at 629, 117 S. Ct. 2252)).  Thus, even though class counsel may be highly qualified, it is the interests and substantive rights of absent class members that have to be protected by the district court and not abridged or modified by a class settlement, lest the Rules Enabling Act be offended.  *Id*.

Objectors respectfully submit the Settlement Agreement, which purports to cram-down an unfair settlement on absent class members with no right to opt-out, unconstitutionally impairs the right to due process afforded absent retailers and merchants

---

[6] Available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2133361.

by the United States Constitution and should not be judicially approved. *Alchem*, *Ortiz*, *Stevenson*, *Google*, and *Schwartz*. The release of future claims possessed by a future class of entities presently known and unknown (as the releasing parties) impairs or abridges substantive rights of absent class members. *See, e.g., Ortiz*, 527 U.S. at 856. Therefore, Objectors respectfully submit, it is incumbent that the Court reject this part of the settlement as not fair, adequate or reasonable under, among other things, the Rules Enabling Act. *See* 28 U.S.C. § 2072(b) (directing that procedural rules "shall not abridge, enlarge or modify any substantive right"); *Amchem*, 521 U.S. at 629, 117 S. Ct. at 2252 ("Rule 23 . . . must be interpreted with fidelity to the Rules Enabling Act and applied with the interests of absent class members in close view.").

Further, the release of the "future effect in the United States of any conduct" by any Settlement Class Released Party if it is "substantially similar to the conduct of any Rule 23(b)(3) Settlement Class Released Party related to or arising out of interchange rules, interchange fees, or interchange rates, *any* Rule[7] of any Visa Defendant or MasterCard Defendant" (*see, e.g.,* Settlement Agreement ¶ 33(h)) is excessively broad and vague in scope such that it encompasses other conduct in the future that is not directly related to this case, but which may be an unlawful variation, which substantially affects retailers and merchants. This overly broad language in the release was conspicuously not addressed at the preliminary hearing. Notably, neither Visa nor Mastercard referred to this

---

[7] A *select few* rules of Visa/Mastercard were at issue in this litigation (*see* Second. Am. Compls. ¶ 23(G)-(K) (listing rules at issue), but the releases cover future claims over *any* provision in rulebooks spanning *hundreds* of pages (*see, e.g.,* Settlement Agreement ¶¶ 33(g), (h), 35(g), (h)). Consequently, as demonstrated in Section III.A.3. of this Objection, the Settlement is invalid as overbroad.

16

overreaching, overarching and overlybroad language that releases future claims and conduct "substantially similar to the conduct of any Rule 23(b)(3) Settlement Class Relased Party related to or arising out of interchange rules, interchange fees, interchange rates . . . . " This specific language, buried in the subsections of paragraph 33 of the Settlement Agreement, is yet another reason that this Settlement Agreement violates due process, and it speaks volumes that class counsel did not address this at the preliminary approval hearing. To summarize, this due process violation in the release goes far beyond what the United States Supreme Court allows in nationwide class settlements and should be stricken. *Id.* In fact, neither Visa nor Mastercard has ever publically explained why this unfair, unreasonable and inadequate hidden language on the 25th page of the Long Form Notice at paragraph 68(h) in the release does not violate due process.

The district court in *Google* was concerned about the release of future conduct and rejected the class settlement. The district court in *Schwartz* was concerned about the release of future conduct and rejected the class settlement. R&M Objectors respectfully submit the class settlement here should be rejected as unfair, unreasonable and inadequate for class members.

Significantly, in addition to large opposition, the withdrawal of several class representatives from approving the settlement reached indicates the settlement is not fair, reasonable or adequate. Rather, it further demonstrates, the non-opt-out settlement is largely one-sided in favor of the Defendants, who give little to gain a lot, including insulation and immunity from future claims brought against them for unlawful conduct, as

17

yet uninvented, that may touch upon the swipe fee.  This procedural and constitutional dilemma for the Plaintiffs' Class Counsel and remaining Class Representatives requires a higher bar and scrutiny for approval because of the fiduciary interests and the constitutional rights that must be protected and not abridged or modified through the Rule 23 class procedure.  *Amchem*, *supra*.  The district court, as a fiduciary for the absent class members, must ensure this settlement treats the class members fairly, particularly with objections and objecting proposed class representatives. *See, e.g.*, *In re "Agent Orange" Product Liability Litig.*, 996 F.2d 1425, 1438 (2d Cir. 1993) ("A judge in a class action is obligated to protect the interests of absent class members."), *cert. denied*, 510 U.S. 1140 (1994). Where a dispute exists between the class counsel and proposed class representatives as to the proposed settlement, the decision cannot "rest entirely with either the named plaintiffs or with class counsel." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176-77 (5th Cir. 1978), *cert denied*, 439 U.S. 1115 (1979).

There are at least three conflicts present in this class settlement.  First, there is a large segment of class representatives who have withdrawn.  *Pettway*, *supra*.  Second, the Supreme Court has held that future claims of unknown entities cannot be released and present class representatives <u>cannot</u> adequately represent and release these claims for future entities. Grimmelmann, FUTURE CONDUCT AND THE LIMITS OF CLASS-ACTION SETTLEMENTS, 91 N.C. L. Rev. at 391 (citing to Fed. R. Civ. P. 23(a)(4), *Ortiz* and *Amchem.*).  Third, absent Class Members are not given a legitimate opportunity to opt-out of the settlement class. With these real conflicts and objections, the class settlement agreement as currently written, cannot be judicially approved as "fair, reasonable, and adequate" under Fed. R.

Civ. P. 23(e)(2).  *Ortiz*, *Amchem*, *Google*, and *Schwartz*     While the Settlement Agreement is touted as unprecedented for the $6 billion monetary fund, Defendants will, as a practical matter, recoup any monetary amount paid out in this class settlement (which amounts to only 2-3 months worth of swipe fees) by *increasing* the swipe fee imposed upon retailers and merchants to 4% (and potentially higher) after the eight month injunction period expires.  Notably, United States Senator Richard Durbin of Illinois, a strong advocate for retailers and merchants, expressed these comments on the Senate Floor:

> The bottom line is that this proposed settlement does not make our credit card system better.  Instead, it gives Visa and Mastercard free reign to carry on their anti-competitive swipe fee system with no real constraints and no legal accountability to the millions of American businesses that are forced to pay their fees.  This is a stunning giveaway to Visa and Mastercard, all for a payout of a mere two months worth of swipe fees. This is a *bad deal*.

Cong. Rec. S5961 (daily ed. August 2, 2012) (statement of Sen. Durbin) (emphasis added). There is no disincentive for the Defendants in this class settlement to agree to pay a couple of months' worth of fees, after which they will raise the fee percentage to a higher amount for all credit transactions (which is a large part of the overall goods purchased), and then be immune from suit for agreeing to raise the swipe fee.  If Defendants want to charge an anti-competitive rate in the future, the nationwide market suffers, the consumer suffers, retailers and merchants suffer and so does the Constitution, because there is no avenue to seek recourse for future wrong conduct since the release language is overbroad and excessive.  Settlement of this class action on the terms proposed exceeds the bounds of fairness and adequacy because any future claims and rights are released.  *Google*.  The

19

withdrawing class representatives understood this and oppose this settlement because it is not fair, reasonable or adequate.

In sum, releasing future claims, in the circumstances presented here, is unconstitutional. It is also inappropriate under the Rules of Civil Procedure as unfair, inadequate, and unreasonable for absent class members whose individual rights are taken away, with no right to opt-out. *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) (holding "there can be no prospective waiver of an employee's rights under Title VII."); *see also* Grimmelmann, FUTURE CONDUCT AND THE LIMITS OF CLASS-ACTION SETTLEMENTS, 91 N.C. L. Rev. at 410 (citing to *Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885, 896 n.27 (3d Cir. 1975) (citing cases from several circuits that while a general release of antitrust violations is permitted a release may not "waive damages from future violations of antitrust laws")). Certification of this settlement as a class to bind absent retail and merchant class members (some not yet known), should ***not*** be approved and future claims should not be released. *Ortiz,* 527 U.S. at 842-43.

3.    **The Settlement Agreement Violates Due Process Because It Releases Conduct Far Beyond What Has Been Litigated In This Action**

The R&M Objectors recognize that "class action releases may include claims not presented and even those which could not have been presented" in a lawsuit. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 107 (2d Cir. 2005). This authority is not limitless, however, in that any settled claims must satisfy the "identical factual predicate" doctrine. *See id.*; *Google Inc.*, 770 F. Supp. 2d at 675 ("[T]he released conduct [must] arise[] out of the identical factual predicate as the settled conduct." (quotation omitted)).

20

Applying this analysis, the Second Circuit has suggested that released claims occupy the same factual predicate as those litigated when they "have been central to [a] case from its inception" or involve "essentially the same issues." *Wal-Mart Stores*, 396 F. 2d at 108-09. Stated another way, a release may encompass claims that were not pleaded in an action only so long as they "arise from the 'same nucleus of operative fact'" as pleaded claims. *Schwartz*, 157 F. Supp. 2d at 577. The releases in the Settlement Agreement waive claims completely *extraneous* to the "nucleus of operative fact" animating this litigation.

More specifically, the releases here abandon all causes of action related to "the continued imposition of or adherence to [or conduct regarding] *any Rule* of any Visa Defendant or MasterCard Defendant in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order." (Settlement Agreement ¶¶ 33(g), (h), 35(g), (h).) This proceeding, by contrast, revolved around only a very distinct subset of those rules. (*See* Second. Am. Compls. ¶ 23(G)-(K) (specifying rules at issue.) By releasing Visa/Mastercard from liability for conduct surrounding *any* of their rules – which are found in rulebooks numbering hundreds of pages, *see* Mastercard Rules (December 12, 2012) (Exhibit 1); Visa Int'l Operating Regulations (Oct. 15, 2012) (Exhibit 2) – when this action involved only a select few of those rules, the Settlement Agreement exceeds the bounds of the "identical factual predicate" rule. Many unpleaded claims released by the Settlement Agreement bear no relation to the "nucleus of operative fact" actually litigated here. *See Google Inc.*, 770 F. Supp. at 678-79 (determining that settlement would "release claims well beyond those contemplated by the pleadings," when

releases authorized Google to sell full versions of books scanned online, but case only challenged the practice of making available "snippets" of those copyrighted works); *Schwartz*, 157 F. Supp. 2d at 576-78 (concluding that release "extend[ed] far beyond the conduct challenged in the litigation" when it would insulate Defendants from claims related to events shown on cable television or the internet, even though the lawsuit dealt exclusively with satellite broadcasts).

The Settlement Agreement does not comply with the "identical factual predicate" doctrine. On this additional ground, final approval should be denied.

**B.    The Notice to the Class Is Deficient Because It Does Not Provide Class Members With Notice Of Any Real Opportunity To Opt-Out**

Effective notice is an essential prerequisite to the final approval of a class settlement. "Adequate notice is necessary to bind absent class members." *Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 261 n.8 (2d Cir. 2001). The reason for this is straightforward: "[C]lass notice serves as the class members' primary, if not exclusive, source of information for deciding how to exercise their rights under Rule 23." *Wal-Mart Stores, Inc.*, 396 F. 3d at 115. Because the ability to opt out is a constitutional prerogative possessed by all Rule 23(b)(3) class members, *see Stephenson*, 273 F.3d at 260 ("Due process requires . . . an opportunity to opt out."), the notice must contain any information that might be an "essential factor" in a class member's decision whether to opt out of the class, *see Wal-Mart Stores, Inc.*, 396 F.3d at 115.

The notice here is insufficient because it only advises class members of an ability

to opt out of an insignificant portion of the settlement,[8] while informing them that they have no option but to accept the most meaningful aspect of the deal:  The waiver of any ability to sue Visa/Mastercard in the future.   Faced with this Hobson's Choice, a merchant will most likely elect not to opt-out, in order to preserve a meaningful objection (which would be unavailable upon opting out from the Rule 23(b)(3) Class) to the settlement of future damages, which is the most significant and offensive aspect of the settlement.  The notice does not provide a legitimate opportunity to opt-out to protect individual claims against the Defendants for their future conduct.

This settlement is so fundamentally flawed, and the Notice is so intrinsically deficient, that even the most legally astute Class Member would be uncertain of what action to take upon receiving this Notice.  As things stand now, all absent Class Members have been told that even if they opt-out of the Rule 23(b)(3) Class, they will lose the ability to sue Visa/Mastercard in the future.   In this circumstance, even if a merchant disagrees with the relief afforded by the current "damages" settlement, it is likely to stay in the class so as to retain the ability to object to the more significant waiver of future rights.[9]  Should this Court agree that the relinquishment of future damage claims under a

---

[8] Class Counsel will undoubtedly trumpet the total dollar amount of the settlement, but it must be remembered that it will be divided among "millions" of Class Members (Mem. Law Supp. Mot. Class Cert. 30).  That being so, the amount any individual Class Member might expect to receive from this settlement is negligible.

[9] In this unique settlement, which involves a merger of 23(b)(2) and 23(b)(3) classes, it is anything but clear whether a Class Member could object to the 23(b)(2) release of future claims even while opting out of the 23(b)(3) class.  If there is disagreement among lawyers whether this might theoretically be possible, there is assuredly great confusion among the laymen comprising the Classes.

mandatory Rule 23(b)(2) class is improper, or conclude that such a release is inappropriate under Rule 23(b)(3), or both, the entire analysis surrounding a decision to opt out is altered. In that scenario, if a business could preserve future damage claims by opting out of the 23(b)(3) class – without being forced to accept the loss of future damage claims – it may very well decide to opt-out even though it is not doing so now. On the other hand, if this Court invalidates future damages releases under both 23(b)(2) and 23(b)(3), the same Class Member might determine that it makes sense to remain a party to the claim for current damages. Basically, the point is that a *new notice, containing a new – and legitimate – opportunity to opt out,* will be required should this Court revise the aspect of the Settlement Agreement releasing future damage claims.

In essence, the notice presents Class Members with no opportunity to opt out at all – at least no opportunity to effectively do so – and it is therefore defective.[10] Final approval of the settlement should be denied.

**C.    The Surcharge is Illusory and Non-Uniform Class Relief**

Class certification is impermissible where the proposed relief among class members is not uniform. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2011).

---

[10] It is also important to bear in mind that the releases apply to *future* causes of action that have not yet materialized. As such, those who will possess those claims have no way of presently deciding whether they should opt out or not. It was in just this sort of situation that the Supreme Court in *Amchem* doubted whether notice could ever be effective. *Amchem*, 521 U.S. at 591 ("Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out."). Of course, this case is even worse than *Amchem*, given that a merchant who makes an "intelligent" decision to opt out of the Rule 23(b)(3) class, attempting to preserve future damages claims, will still be bound by the mandatory 23(b)(2) release. This settlement is hopelessly flawed.

Ten states prohibit retailers and merchants from imposing surcharges on customers.  These states are California, Colorado, Connecticut, Florida, Kansas, Maine, Massachusetts, New York, Oklahoma and Texas.  Other states such as New Jersey and Rhode Island are also looking at regulating the surcharge on consumers.  This surcharge prohibition eliminates a large percentage of transactions from achieving any benefit from the settlement, (*Prelim. Approval Hr'g. Tr.* at 51, lines 21:24), and it places the absent class member in conflict with state law so the benefit cannot be realized.  *See, e.g.*, *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig*., 55 F.3d 768, 808 (3d Cir. 1995) ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others."); *True v. American Honda Motor Co*., 749 F.Supp.2d 1052, 1067 (C.D. Cal. 2010) ("Courts generally are wary of settlement agreements where some class members are treated differently than others.").

Under the Supreme Court's holding in *Dukes*, *supra*, that "an indivisible injunction" must  benefit "<u>all its members at once</u>," or the court must undertake a case-specific inquiry into whether class issues predominate or whether the class action is a superior method of adjudicating the dispute. Predominance and superiority are not self-evident.  *Id*.  The surcharge, proposed as an element of class relief, is <u>not</u> nationwide relief and does <u>not</u> benefit the entire class. Class members are treated differently. Nevertheless, the class release binds absent class members and releases their substantive rights in the prohibited states. Thus, class members release rights to past and future conduct and do not receive the same benefits.  Since the entire class does <u>not</u> benefit, nationwide class

certification is, therefore, inappropriate. *Id*. Further, binding class members to the entire settlement to force settlement violates due process. *Amchem*.

As a practical matter, a majority of retailers and merchants in states where the surcharge is not expressly prohibited, will <u>not</u> impose a surcharge on their customers purchasing goods with a credit card. To begin with, customers want <u>less</u>, not more fees. As one article in the New York Times shortly after the agreement was reached noted:

> Given a shaky economy, many restaurants and other retailers said they had no plans to charge more when customers paid with credit cards.
>
> "Shopping with a credit card is a convenience for our customers and is an important part of our customer service," said Carolyn Beem, a spokeswoman for L.L. Bean. "We have absolutely no plans to add a surcharge for credit card purchases."
>
> Rick Camac, chief executive of the Fatty Crew group of six restaurants, including Fatty Crab, said that "<u>customers might see it as another way you're trying to get at them.</u>" (emphasis added).
>
> "I think you have to take the hit, or make it up by adjusting your prices," Mr. Camac said of paying for the credit card fees.

Stephanie Clifford, Stefanie Strom, *Merchants Considering Credit Card Surcharges*, N.Y. TIMES, July 16, 2012.

Recent articles indicate even the Defendants acknowledge that retailers will not surcharge. *See* Emily Jane Fox, *Credit card checkout fee taking effect*, CNNMONEY.com, Tuesday, January 29, 2013 (stating: "Mastercard said it doesn't expect most merchants to put the surcharge into effect, since stores won't want to drive away business."). Even though credit card swipe charges have grown nine times since 1995 of his business, the

26

chain Redner's nor other chains will pass that expense to customers acknowledging "such a move would probably turn some away."[11]

The surcharge is also a concern to the Court regarding "the economic effect of the proposed rules change." *Prelim. Approval Hr'g. Tr.* at 63, lines 20:21.  Retailers and merchants, in the states that permit a surcharge, will have to make all types of disclosures to customers that the charge is on the cost of goods and must also display the surcharge on the receipt.  The retailer and merchant must treat cards similarly to avoid complaints and will encounter customers who leave the establishment, or even lawsuits from customers for imposing such a surcharge for all goods.

The surcharge is not permitted in all states and will likely not be utilized by many retailers and merchants who are members of the class to recoup Defendants' unlawful behavior.  The surcharge is not legitimate class-wide relief and makes class certification improper, *see, e.g. Dukes*. Further, it pits the retailer and merchant class members against the customer for an illegal fee exacted by the Defendants.  Retailers and merchants would be unfairly penalizing customers for Defendants' unlawful actions in charging the excessive swipe fee and would be releasing current and future claims against the Defendants. The class settlement agreement as written is not fair, reasonable or adequate. Fed. R. Civ. P. 23(e)(2).

---

[11] *Retailers, consumers take swipe at credit card surcharge*, February 18, 2013, readingeagle.com, http://readingeagle.com/mobile/article.aspx?id=453496.

**D.**     **R&M Objectors Essential Discovery for Evaluating the Fairness, Adequacy and Reasonableness of Settlement Agreement**

R & M Objectors have requested that an essential compendium of documents be made available in order to give Objectors a meaningful opportunity to exercise their rights with respect to the Settlement Agreement, as to fairness, adequacy and reasonableness. See, October 22, 2012 Letter from R&M Objectors requesting discovery, Document 1657.

The evidence requested is necessary for R&M Objectors to effectively examine the fairness, reasonableness and adequacy of the merits of the Proposed Settlement, which is a Settlement Only Class. The request is <u>not</u> burdensome and is directly relevant to the Settlement Agreement and examination of its terms, fairness, reasonableness and adequacy. Objectors respectfully request a reasonable and meaningful opportunity to examine the merits for absent class members, to prepare experts and to cross-examine experts at the Final Fairness Hearing with documents pertaining to settlement and execution of the Settlement Agreement. *See, e.g.*, *Girsh v. Jepson*, 521 F.2d 153, 157 (1975) ("As an objector, Frackman was in an adversary relationship with both plaintiffs and defendants and was entitled to at least a reasonable opportunity to discovery against both."). The request is narrow in scope and focuses on two areas of relevant documents: (1) all communication pertaining to settlement negotiations and execution of the Settlement Agreement and (2) discovery of all drafts and documents pertaining to development of draft settlement documents through final execution of the Settlement Agreement. These documents are necessary, relevant and important for the Objectors to examine the merits of the Proposed Settlement, to properly evaluate the terms of the

28

Settlement Agreement on the record at the Final Fairness Hearing and to ensure that the Settlement Agreement is fair, reasonable and adequate for absent class members.  To expect objectors to exercise their rights as to a Settlment Agreement in any meaningful way, tools must be developed to allow for thorough review.

Discovery is appropriate for objectors where lead counsel has not conducted adequate discovery or if the discovery conducted by lead counsel is not made available to objectors. *In re Community Bank of Northern Virginia*, 418 F.3d 277, 316 (3d Cir. 2005) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).  Discovery may be made available to objectors for review. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 n.8 (1974).

In *Grinnell Corp.*, a document depository was made available for objectors to inspect and examine documents in support of their objection to a proposed class settlement. *Id*.  The Second Circuit discussed what the depository contained in detail:

> The inventory of the depository includes documents produced to the government, depositions taken in the government case, the entire record in the government case, documents produced by and depositions of defendants taken in the Philadelphia actions, as well as hundreds of thousands of additional documents demanded pursuant to Rule 34 by the plaintiffs in these cases.  In addition many documents produced by the discovery procedures in the instant cases were placed in the depository.  These documents include many spreadsheets of painstakingly assembled transaction data and calculations requested by plaintiffs to support damage theories they planned to assert.  One answer by one defendant alone contains hundreds of thousands of statistics on transactions with subscriber plaintiffs.  In addition, the documents produced by defendant ADT include the most detailed financial data (e.g., full revenue and cost analyses for each of its approximately 125 central stations) and more than 50,000 competition reports detailing the significant competitive factors pertinent to individual bids and transactions.

*Id*.

In *Grinnell Corp.*, a tremendous amount of discovery was made readily available to objectors. Here, the R&M Objectors are not seeking a large production of documents or depository, such as discussed in *Grinnell Corp.* Rather, the R&M Objectors have provided a narrow, specific request that is not unduly burdensome and is relevant to evaluating the fairness, adequacy and reasonableness of the Settlement Agreement. The request confirms adequate discovery was obtained for the class action and settlement discussion and execution was not a product of collusion or slanted because of the availability of large attorney fees. *See, e.g., In re Warner Communications Securities, Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) (providing that a class settlement agreement must be fair, reasonable and adequate, not a product of collusion and must adequately represent class members' interests); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (providing that participation in fairness hearing is to evaluate risk of collusion over attorney's fees and the terms of the settlement). Second, the discovery request provides objectors an opportunity to review information actually obtained, discussed and reviewed during the actual settlement process. Objectors respectfully submit as a matter of due process that they have the opportunity to examine documents pertaining to development of settlement dialogue through the final execution of the Settlement Agreement. Discovery of this nature is narrow, focused, <u>not</u> unduly burdensome and provides objectors a meaningful opportunity to cross-examine the merits of a proposed class settlement by being able to view some of the discovery provided in the case.

R&M Objectors submit that they have no greater or lesser right to discovery than as was granted in *Grinnell Corp.* These objectors have purposefully narrowed their focus and

the scope of the discovery request to a discovery area relevant to examining the fairness, adequacy and reasonableness of the Settlement Agreement.  E-mail correspondence and drafts of the settlement will be helpful in illuminating the course of settlement discussions, whether settlement was arms-length, what terms were evaluated, how the terms were evaluated and why the final Settlement Agreement was executed.  R&M Objectors respectfully submit their request is in accord with legal authority, is not unduly burdensome and permits objectors a meaningful opportunity to develop the record and support their examination of the merits by cross examination and argument to the court. *Grinnell*, *supra*; *In re Community Bank of Northern Virginia*, *supra*.

In sum, the R&M Objectors respectfully submit their discovery request is narrow in scope, in accord with legal authority, is not unduly burdensome and permits access to relevant information to make a meaningful inquiry on cross-examination into the merits of the Proposed Settlement.  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 316 (3d Cir. 2005) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).

## CONCLUSION

For the reasons stated herein, it is respectfully submitted that approval of the Settlement Agreement is not appropriate under the circumstances presented to this Court. Approval of the Settlement should, therefore, be denied.

Dated this 15th day of May, 2013.

Respectfully Submitted,

By:     *s/ Jerrold S. Parker*
        Jerrold S. Parker
        Jay L.T. Breakstone
        **Parker Waichman, LLP**
        6 Harbor Park Drive
        Port Washington, NY 11050
        Telephone:  (516)-723-4620

        jerry@yourlawyer.com
        jbreakstone@yourlawyer.com

        Phillip Duncan
        Richard Quintus
        **Duncan Firm, P.A.**
        900 S. Shackleford, Suite 725
        Little Rock, AR 72211
        Telephone:  (501) 228-7600
        phillip@duncanfirm.com
        richard@duncanfirm.com

        Thomas P. Thrash, ABN #80147
        Marcus N. Bozeman, ABN #95287
        **Thrash Law Firm, P.A.**
        1101 Garland Street
        Little Rock, Arkansas 72201
        Telephone: 501-374-1058
        Facsimile: 501-374-2222
        tomthrash@sbcglobal.net
        bozemanmarcus@sbcglobal.net

32

<u>**CERTIFICATE OF SERVICE**</u>

On this 15th day of May, the above and foregoing has been sent by United States mail to the following:

Payment Card Interchange Fee Settlement
P.O. Box 2530
Portland, OR 97208-2530

Alexandra S. Bernay
Bonny E. Sweeney
**Robbins, Geller, Rudman & Dowd, LLP**
655 W. Broadway, Suite 1900
San Diego, CA 92101

Wesley R. Powell
**Wilkie, Farr & Gallagher, LLP**
787 Seventh Ave.
New York, NY 10019

K. Craig Wildfang
**Robins, Kaplan, Miller & Ciresi, LLP**
2800 LaSalle Plaza
800 LaSalle Ave.
Minneapolis, MN 55402

H. Laddie Montague, Jr.
**Berger & Montague, P.C.**
1622 Locust Street
Philadelphia, PA 19103

Matthew A. Einstein
**Arnold & Porter, LLP**
555 Twelfth Street NW
Washington, DC 20004

Peter E. Greene
**Skadden, Arps, Slate
   Meagher & Flom, LLP**
4 Times Square
New York, NY 10036

*s/ Jerrold S. Parker*
Jerrold S. Parker

33