UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE        05-md-1720 [JG]
AND MERCHANT DISCOUNT ANTITRUST LITIG.

-----------------------------------------------------------------------X

## OBJECTION TO PROPOSED SETTLEMENT
## AND REQUEST FOR ATTORNEY'S FEES
## AND NOTICE OF INTENTION TO APPEAR

Class Members Unlimited Vacations and Cruises. Inc., 714 Graham Road, Cuyahoga Falls, Ohio 44221, tel. # 330-940-4321, Daviss Donuts and Deli, 1706 Highway 365, Nederland TX 77627, tel. # 409-729-5100, Top Gun Wrecker, 1255 Amelia, Beaumont TX 77707, tel. # 409-861-4940, Orange County Building Materials, 900 S Main St, Ste 928, Lumberton, TX 77657, tel. # 409-751-6000, and Jill Bishop d/b/a Hat & Gown, 8 Trafalgar Square, Abilene, TX 79605[1], tel. # (325) 691-0135, hereby object to the proposed Settlement and motion for attorneys' fees in this matter, and also give notice of their intention to appear at the final fairness hearing scheduled for September 12, 2013 through undersigned counsel.

**I.      The Settlement Perpetuates the Harm Complained of In The Complaint and Releases Visa and Mastercard for Future Liability.**

Objectors endorse the objections previously lodged by Retailers and Merchants (Document 2281) and the National Federation of Independent Small Business (Document 2368), and adopt and incorporate those objections as if fully set forth herein. The Plaintiffs propose to grant the Defendants future immunity for the very wrongs that gave

---

[1] Each objector has been accepting Visa and Mastercard for over 10 years, and is both a Cash Settlement and Rule Changes Settlement Class Member.

rise to this lawsuit, in exchange for reimbursement of a very small portion of the interchange fees paid over the past 10 years.

This Court is without power to grant a prospective release of anticompetitive conduct to be committed in the future, nor does it have the power to pre-determine whether proposed rules to be adopted by Defendants violate antitrust laws.  Therefore, the proposed settlement, in addition to being grossly inadequate for past misconduct, also improperly seeks to grant prospective immunity to Defendants for future antitrust violations.

**II.     The Attorney's Fees Requested Are Grossly Excessive.**

Class Counsel have requested 10% of $7.2 billion, or $720 million, which represents a 4.5 multiplier of their $160 million lodestar.  Stated another way, Class Counsel are seeking *a $560 million premium* over and above their lodestar.

The Second Circuit has announced a preference for "moderation" in the awarding of common fund attorneys' fees in a class action context.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000).  Windfalls to class counsel are to be avoided.  *Id*. at 49.  Lodestar cross-checks are "encouraged."  *Id*. at 50.  Class Counsel's request for $720 million in attorneys' fees, in the context of the largest megafund settlement ever reached in the Second Circuit, is excessive and unnecessary to eliminate unjust enrichment of the class.

In the only megafund settlement remotely approaching the size of this one, this Court awarded a fee of only 6.5%, and a multiplier of 3.5.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003).   In *Visa*

2

*Check*, however, the premium over class counsel's lodestar awarded by this Court was just **$150 million**, in contrast to the **$560 million** sought here.

This Court also stated in *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002):

> In *Goldberger*, the Second Circuit affirmed an attorney's fees award of 4% of the common fund and criticized courts who have used 25% … as a benchmark for attorney's fees, because that percentage presumes "a substantial contingency risk in every common fund case." … Post-*Golberger* courts … have generally refused multipliers as high as 2.03.

187 F. Supp. 2d at 85-87.

Attorneys' fees should be set at "the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 493 F.3d 110 (2d Cir. 2007). In *Arbor Hill*, the Second Circuit emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *id*. at 118, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id*. at 112. The proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid by the defendant pursuant to a fee-shifting statute, or by the plaintiff class pursuant to the common fund doctrine. Minimization of attorney's fees is the goal of every client who has not been promised a share of the fees.

Before *Arbor Hill*, some district courts in the Second Circuit and elsewhere focused on the theoretical *upper limit* on attorney's fees, beyond which the fees would shock the conscience, violate the Rules of Professional Conduct, or otherwise be "absurd." *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d at 522

(describing requested fee of $609 million, which was almost ten times hourly rate, as "absurd").

In light of *Arbor Hill*, however, it is clear that the procedure that a district court should follow in trying to ascertain a minimum reasonable fee has fundamentally changed. Rather than starting with class counsel's requested amount of fees and working down from there, a district court should instead start at the hours worked and move up incrementally until it arrives at a number that adequately compensates class counsel.

> [C]ases that employ the percentage approach arbitrarily tend to start their analysis with the attorney's request, rather than at an objective marker, such as the hours worked. Instead of reasoning based on other case law or abstract ideas about a reasonable fee, courts tend to anchor their analysis to the percentage first requested by counsel. This method of analysis allows plaintiffs' counsel to set the baseline based on its biased valuation of its work.
>
> Without vigilance, this anchoring effect easily biases courts' decisions. Indeed, courts have shown a propensity to adjust the requested amount by only a few percentage points, if at all… This anchoring effect allows plaintiffs' counsel to manipulate the fee award they are likely to receive by simply requesting a higher percentage. The Court wonders, for example, if the lead Plaintiffs in *Royal Ahold* had asked for 20%, if the court would have awarded them 15%. By arbitrarily tethering the reasonableness analysis to the fee requested, plaintiffs' counsel arbitrarily gains excessive control over the court's jurisprudence.

*In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 762-63  (S.D. Ohio 2007).

A better point of departure than the arbitrary 10% requested is the point at which unjust enrichment of the class would occur.  "The rationale for the [common fund] doctrine is an equitable one; it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its costs."  *Goldberger v. Integrated Resources , Inc. ,* 209 F.3d 43, 47 (2d Cir. 2000)(*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375,

4

392(1970)).  Therefore, a common fund attorneys' fee award should be set at a level that just eliminates the last bit of unjust enrichment to the class beneficiaries.  To award even one million dollars more to the attorneys would result in *unjust enrichment of the attorneys* at their clients' expense, a far greater concern than unjust enrichment of the class, and something that was never contemplated by the common fund exception.

When a district court is evaluating a request for attorney's fees in a common fund case, it should endeavor to determine that point at which the class is no longer being unjustly enriched, without regard to the amount that class counsel has requested.  "[A]fter the settlement is completed … the attorneys may be inclined to ask for as much as they think the Lead Plaintiff will agree to, regardless of the initial risk, amount of work, or benefit to the class."  *In re: Cardinal Health, supra*, 528 F. Supp. 2d at 760.  In fulfilling its duty to independently set the fee, the Court must explain why an attorneys' fee that is less than the one requested by class counsel is inadequate to completely disgorge the class of any unjust enrichment.

Class Counsel have requested a fee of $720 million, but have given no reasons why this Court should approve a fee of that magnitude other than the fact that they have asked for it, an entirely arbitrary and circular methodology.  *See e.g., In re: Cardinal Health, supra*, 528 F. Supp. 2d at 757 (no presumption of reasonableness for fee amount requested by class counsel unless negotiated *ex ante* by Lead Plaintiff; court must independently set fee without regard to amount requested).

The burden is on Class Counsel to show that a fee award of 5% of $7.2 billion, or $360 million (which still generates a cash premium over lodestar of **$200 million**), is somehow unfair to them and an unjust windfall to the Class.  In light of the fact that this

5

settlement is twice as large as the one in *In re Visa Check/Mastermoney Antitrust Litig., supra,* one would expect the percentage fee here to be *lower* than the one awarded there, based upon the commonly accepted sliding scale approach.[2]  5% is only slightly less than what this Court awarded in the last billion-dollar megafund settlement to come before this Court for approval.  There, this Court awarded class counsel $150 million over their lodestar, whereas, here, a 5% fee would amount to a $200 million bonus.

      A critical factor in this Circuit is class counsel's lodestar, which in the Second Circuit is often a decisive factor in any ultimate fee award, even under a percentage methodology.  *See e.g., In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002)(rejecting percentage fee that would result in lodestar multiplier of 3.58); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 522 (E.D.N.Y. 2003) (calling requested multiplier of 9.68 "absurd").  As the Third Circuit held in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), "the lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award."

      A 5% fee award would represent a lodestar-multiplier of 2.25, which is more than adequate to compensate Class Counsel for risk in this megafund settlement.  Because this case lasted 8 years, the lodestar here is far larger than normal, which means that even a modest multiplier represents an enormous bonus to Class Counsel over their billed time.

---

[2] The sliding scale refers to the rule that as the amount of recovery goes up, the percentage fee goes down, because of the economies of scale associated with large class action recoveries.

6

## CONCLUSION

WHEREFORE, Objectors pray that this Court DENY approval to the proposed Settlement; if the Court approves the settlement, the Objectors pray that this Court award Class Counsel a fee of no more than 5%.

Respectfully submitted,
Unlimited Vacations and Cruises,
Daviss Donuts and Deli,
Top Gun Wrecker, Orange County
Building Materials and Jill Bishop d/b /a
Hat & Gown,

By their attorney,

*/s/ John J Pentz*
John J. Pentz, Esq.
19 Widow Rites Lane
Sudbury, MA  01776
Phone: (978) 261-5715
Fax: (978) 405-5161
jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the EDNY on May 28, 2013, and that as a result electronic notice of the filing was served upon all attorneys of record.

*/s/ John J. Pentz*
John J. Pentz
