UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

IN RE PAYMENT CARD INTERCHANGE | No. 05-MD-01720 (JG)(JO)

FEE AND MERCHANT DISCOUNT

ANTITRUST LITIGATION

## STATEMENT OF OBJECTIONS

Auto Europe Holdings, Inc. and its affiliates[1], Hertz UK Limited, and certain other non-U.S. Hertz entities[2] (collectively, "Objectors"), by and through their undersigned Counsel, submit this objection to the 23(b)(3) and 23(b)(2) class action settlements in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

### A. Introduction

The Proposed Settlement Agreement seeks to certify two Settlement Classes: one for monetary relief and one for injunctive relief. The Settlement has corresponding releases for each Settlement Class, each of which is overbroad and vague, and thus violates class members' due process rights. Of particular concern to the Objectors, who conduct extensive business on the Visa and MasterCard networks outside of the United States, both releases purport to release claims that could potentially include foreign conduct and transactions.

---

[1] These entities include, but are not limited to: Auto Europe, LLC, Auto Europe South Africa Pty Limited, AE Europe Limited, AE Europe Portugal, DAH Holdings Pty Limited, and Auto Europe Deutschland GmbH.

[2] These Hertz entities include: Hertz Europe Limited, Hertz Belgium BVBA, Hertz Autopujcovna s.r.o, Hertz Equipment France SAS, Hertz France SAS, Hertz Autovermietung GmbH, Hertz Italiana Srl, Hertz Luxembourg Sral, Hertz Automobielen Nederland BV, Hertz Autopozicovna s.r.o., Hertz Alquiler de Maquinaria S.L., and Hertz de España S.L.

1

Objectors are potential Class Members. AutoEurope Holdings, Inc. is located at 39 Commercial Street, Portland, ME 04112. Auto Europe Holdings, Inc. and its affiliates accepted Visa and/or MasterCard cards within the Class Period. Hertz UK Limited is located at Hertz House, 11 Vine Street, Uxbridge, Middlesex UB8 1QE and accepted Visa and/or MasterCard cards within the Class Period. The other non-U.S. Hertz entities also accepted Visa and/or MasterCard cards within the Class Period.

As potential members of the 23(b)(2) and 23(b)(3) classes, the Objectors seek to protect claims they currently have, or may have in the future, against Visa, MasterCard, and their affiliates ("Defendants") for conduct and/or transactions that have occurred or will occur outside the United States ("Foreign Claims"). This concern is not merely speculative. Visa and MasterCard have had findings made against them or are subject to ongoing investigations relating to interchange fees by European competition authorities. Furthermore, Objectors are currently pursuing claims in the London High Court following a 2007 European Commission decision against MasterCard. The Objectors therefore oppose the Settlement Agreement to the extent that the release provisions purport to release Foreign Claims and request that the release provisions be amended to explicitly exclude Foreign Claims.

### B. The Releases for Both the Monetary Relief and Injunctive Relief Classes Violate the Due Process Rights of Class Members to the Extent They Purport to Release Foreign Claims

It is well settled that release provisions in class action settlement agreements may only release claims based on conduct that arises from the "identical factual predicate" as the settled conduct. *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented

2

and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."). The Second Circuit has strictly construed the requirement that factual allegations be *identical*, particularly when settlement release provisions implicate foreign claims. *See In re Auction Houses,* 42 Fed. Appx. 511, 519 (2d Cir. 2002) (rejecting settlement based on finding that "foreign auction claims in the instant case, although based on the same conspiracy to fix prices, do not rest upon the identical factual predicate as the United States auction claims").

Both the monetary relief release and the injunctive relief release purport to cover a wide swath of claims,[3] and both releases purport to cover claims concerning all of Visa's and MasterCard's current rules and conduct, Sett. ¶ 33(c); 68(c). Further, the releases cover claims concerning "substantially similar" future rules, future conduct and future effects of Visa's and MasterCard's rules and conduct in place at the time the Settlement was preliminarily approved. "Rule" is defined to include "any rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card or any MasterCard-Branded Card." Sett. 1(mm). Neither release appropriately carves out activity that occurred outside the United States.

These overly broad release provisions impermissibly purport to cover a wide range of conduct that could not have been among the factual predicates to this case.[4] *See Nat'l Super*

---

[3] The release language purports to cover claims concerning all "claims, demands, actions, suits, and causes of action....whenever incurred, whether directly, indirectly, derivatively, or otherwise...that any...Settlement Class Releasing Party ever had, now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act...that are alleged or which could have been alleged from the beginning of time until the date of this Court's entry of the Class Settlement." Preliminary Approval Order Sett. ¶ 33; 68.

[4] "The factual predicates to this case include the (a) default-interchange rule; (b) Honor All Issuer rules; (c) various anti-steering rules, including the non-surcharge rules, anti-discrimination rules, non-minimum purchase rules, no-

3

*Spuds, Inc.* 660 F.2d at 18 n. 7 (finding that a settlement is overbroad if it releases claims that require proof of "further facts" beyond the facts relied upon in the class action complaint). The releases, as written, provide room for the Defendants to exploit the overly broad language to argue that *all* of Defendants' rules and conduct is covered, including outside the United States, in the past and the future. As drafted, the phrase "arising out of or relating in *any way* to conduct…that are alleged or which *could have been alleged*" (emphasis added) purports to release Foreign Claims that have *any* relation to claims that could have been alleged in this action. The release language regarding Defendants' rules and related conduct also purports to encompass a panoply of rules not specified in the complaint, which could be construed to include Visa's and MasterCard's foreign rules. Moreover, beyond the language regarding "Released Claims," the definition of "Releasing Parties" (Sett. ¶ 31; 66) includes not only absent class members, but also their affiliates, potentially enveloping foreign affiliates into a United States action. Finally, the definition of "Released Parties" names a myriad of defendants, including foreign Visa and MasterCard entities. Thus, the release provisions, as drafted, purport to include Foreign Claims and must be rejected. *See In re Auction Houses,* 42 Fed. at 519.

### C. Class Plaintiffs' Reliance on the Identical Factual Predicate Doctrine Does Not Allay Objectors' Concerns

Class Plaintiffs assert that the identical factual predicate doctrine serves to limit the scope of the Settlement releases.[5] That Class Plaintiffs need to rely on this doctrine demonstrates the problem. If the intent of the releases is to exclude international claims, the releases should say so in clear and unambiguous language. No corollary reliance on a doctrine used to reject

---

maximum-purchase rules, no-discounting rules, all outlets rules, Visa's no-bypass rule, and the no multi-issuer rules; (d) antitrust claims concerning the IPOs; and (e) conspiracy claims concerning (a) – (d)." *See* Obj. Pls. Opp. to Mot. Prelim. App. at 19, Dkt. 1678; *see also* Class Pls. Mot. for Summ. J. at 5-6, Dkt. 1538.

[5] Memorandum in Support of Class Plaintiffs' Motion for Final Approval of the Settlement at 44, Dkt. 2111-1.

settlements, as the factual predicate doctrine typically is,[6] should be necessary. If this Court approves the Settlement without requiring an amendment to the releases to limit their territorial reach, class members who wish to assert foreign claims against Visa and MasterCard would be saddled with the potential burden of separately litigating the issue of whether their claims arise from facts that were alleged or *could have been* alleged in this action. Such an undue burden on class members with Foreign Claims is unreasonable. Instead, the Settlement Agreement should be amended to explicitly exclude Foreign Claims in order to prevent uncertainty and unnecessary litigation. *See Reade-Alvarez v. Eltman, Eltman, and Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226, at *34 (E.D.N.Y. Dec. 11, 2006) (approving class action settlement subject to the parties' modification of the release).

### D. Conclusion

For the foregoing reasons, Objectors request that this Court require the parties to amend the Settlement Agreement to explicitly exclude Foreign Claims.

May 28, 2013

Respectfully submitted,

/s/ Brian A. Ratner

Brian A. Ratner
bratner@hausfeldllp.com

HAUSFELD LLP
1700 K St., NW, Suite 650
Washington, D.C. 20006
(202) 540-7200

*Attorney for Objectors*

---

[6] *See, e.g., In re Auction Houses*, 42 Fed. at 519.

5