David Stein
Samuel and Stein
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884
Fax: (212) 563-9870
Email: dstein@samuelandstein.com (DS-2119)

*Attorneys for Objectors/Class Members*
*Rick Bandas and Daniel Hall*

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
2013 JUN -3  PM 2:31
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD AND MERCHANT DISCOUNT ANTITRUST LITIGATION. | MDL Docket No. 1720<br><br>MASTER FILE NO.<br>1:05-md-1720-JG-JO |

## OBJECTION OF
## 1001 PROPERTY SOLUTIONS LLC AND TEMPLE EAGLE PARTNERS LLC

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................. I

**TABLE OF AUTHORITIES** ........................................................................................... II

**INTRODUCTION** ............................................................................................................ 1

I.      1001 Property Solutions LLC and Temple Eagle Partners LLC are class members. ......... 1

II.     A court owes a fiduciary duty to unnamed class members. ................................................ 2

III.    The settlement waiver is impermissibly overbroad. ........................................................... 3

IV.     The relief is illusory, making the settlement self-dealing under *Bluetooth*. ...................... 4

V.      The 23(b)(2) class cannot be certified because it impermissibly settles damages claims
        and lacks a homogeneity of interests. ................................................................................. 5

A.      The 23(b)(2) class cannot be certified because it is unbounded. ........................................ 6

B.      The 23(b)(2) class cannot be certified because it impermissibly settles damages claims. . 7

C.      The 23(b)(2) class cannot be certified because there is no unity of interests. ................... 10

VI.     Internal conflicts of interest mean that certification of a single settlement class without
        separate subclassing and representation violates Rule 23(a)(4). ..................................... 10

VII.    The class plaintiffs' awards require settlement rejection. ................................................. 11

VIII.   The attorneys' fees are too high. ....................................................................................... 12

IX.     The unprecedented reaction of the class—and class representatives—requires rejection. 14

**CONCLUSION** ............................................................................................................... **15**

# TABLE OF AUTHORITIES

<u>Cases</u>

*In re Agent Orange Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987) ............................................2

*Alaniz v. Saginaw Count.*, No. 05-10323, 2009 U.S. Dist. LEXIS 43340 (E.D. Mich. May 21, 2009)..........................................................................................................................................7

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ......................................8

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ...................................................2-3

*In re American Express Merchants' Litig.*, 667 F.3d 204 (2d Cir. 2012) ......................................3

*In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp 1190 (N.D. Ill. 1996)...............................12

*Anderson v. Beland*, 672 F.3d 113, 138 (2d Cir. 2011) ..................................................3

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001) ................7

*In re Auction Houses Antitrust Litig.*, 42 Fed. Appx. 511 (2d Cir. 2002) ...........................4

*In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000) .................................12

*Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011) ...............................3

*Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471 (S.D. Ohio 2004) ...................................6

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................1, 4

*Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521, 522 (D. Nev. 1997) ........................3

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)....................................................13

*Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012) ...................................................12

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002) ...........................8

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .................................13

*In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295 (C.D. Cal. Mar. 4, 2011) ............12

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000) ................................9

*Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 2009 U.S. Dist. LEXIS 62817 (N.D. Cal. July 2, 2009)............................ ..........................................................................................7

*In re Dynegy, Inc. Sec. Litig.*, No. 02-cv-01571 (S.D. Tex. 2005) ...............................….....12

*Fox Midwest Theatres v. Means*, 221 F.2d 173 (8th Cir. 1955) .......................................3

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)................13

*Gonzalez v. S. Wine & Spirits of Am., Inc.*, No. 11-cv-5849, 2012 U.S. Dist. LEXIS 46401 (C.D. Cal. Mar. 29, 2012)...................................................................................13

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987) ...........................................2

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) ...........................7

*Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322 (1955) .........................................3

*In re Literary Works*, 654 F.3d 242 (2d Cir. 2012)...............................................4, 10

*In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*, No. 07-cv-09633 (S.D.N.Y. 2009)

*Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, 1997 WL 166497 (S.D.N.Y. Apr. 9, 1997) .....3

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) ......................................2

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004) ...............................................…......9

*Moulton v. United States Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ...................................4

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)..........................................5

*Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001) ...................................................3

*Nat'l Super-Spuds, Inc. v. New York Merchantile Exch.*, 660 F.2d 9, 18-19 (2d Cir. 1981).........4

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................3

*Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010)..............................................................13

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) .............................13

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................................7

*Radcliffe v. Experian Info. Solutions, Inc.*, Nos. 11-56376, 11-56387, 11-56389, 11-56397, 11-56400, 11-56482 (9th Cir. May 2, 2013) ……………………………………………………………..11

*In re Raytheon Co. Sec. Litig.*, No. 99-cv-12142 (D. Mass. 2004) …………………………….12

*Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006) ……………………….5, 8, 9

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) …………………………………….

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) ………………………………..9

*Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281 (W.D. Mich. 2001) …………………………7

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602–03 (3d Cir. 2009) ………………7

*Shults v. Champion Int'l Corp.*, 821 F. Supp. 520 (E.D. Tenn. 1993) …………………………...3

*Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992)……………………………………………………..2

*In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010) ………………………………………………………………………………...3

*In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000)………………………………..8

*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994)……………………………………………….7

*Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 88866 (E.D. Tenn. Dec. 3, 2007)………………………………………………………………………………………...7

*In re United Health Group Inc. PSLRA Lit.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009)……12

*USW v. Cooper Tire & Rubber Co.*, 474 F.3d 271 (6th Cir. 2007) ……………………………...9

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496 (6th Cir. 2011)…………...13

*In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 503, 521 (E.D.N.Y. 2003)………..12

*Wal-Mart v. Visa USA, Inc.*, 396 F.3d 96, 106-09 (2d Cir. 2005) ………………………………..4

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) ……………………………….......5

*In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 U.S. Dist. LEXIS 109446 (N.D. Cal. May 2, 2008)………………………………………………………………………………………………...6

*Weeks v. Kellogg Co.*, No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .............................................................................................................13

*Wike v. Vertrue, Inc.*, No. 3:06-00204, 2010 U.S. Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010) ................................................................................................................7


**Rules and Statutes**

28 U.S.C. § 1713 ......................................................................................................4

Fed. R. Civ. Proc. 23(a)(4) .............................................................................10, 11

Fed. R. Civ. Proc. 23(h) .........................................................................................13

Fed. R. Civ. Proc. 23(b) ..........................................................................1, 3, 5, 6, 7. 8. 9


**Other Authorities**

*American Law Institute Principles of Aggregate Litigation* § 3.05 comment *a* at 206 ................14

Isaacharoff, Samuel,
   *Preclusion, Due Process, and the Right to Opt Out of Class Actions,*, 77 Notre Dame L. Rev. 1057 (2011) ......................................................................................3

Leslie, Christopher R.,
   *The Significance of Silence: Collective Action Problems and Class Action Settlements,*
   59 FLA. L. REV. 71 (2007).........................................................................................14

*Newberg on Class Actions,* § 8.04 ...........................................................................6

Wright, Charles Alan et al., *Federal Practice and Procedure,* § 1787 at 220 (2d ed.1986).........6

## INTRODUCTION

This settlement has generated an unprecedented level of objections, and for many good reasons. First, the release is overbroad as a matter of law. Second, the relief is illusory and designed only to rationalize attorneys' fees: while the defendants agree to temporarily reduce interchange fees, they impose a sweeping waiver of rights to sue them under the antitrust laws, thus permitting them to exercise their monopoly power and recoup any reduction by reraising interchange fees once the injunction expires. This makes the settlement impermissibly self-dealing under *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). Third, the Rule 23(b)(2) class cannot be certified because it is unbounded. Fourth, in violation of the Federal Rules and Supreme Court precedent, the settlement creates an impermissible Rule 23(b)(2) class to settle damages claims. Fifth, Rule 23(a) is not met, because the class's the internal conflicts of interest are not resolved with separate subclasses with separate representation. Sixth, the settlement cannot be approved under *Radcliffe v. Experian*, because what limited support of class representatives for the settlement has been improperly purchased with incentive awards of six digits available only for the class representatives who support the settlement. Seventh, the attorneys' fees request is excessive for a mega-settlement, as this Court has previously held.

I.      **1001 Property Solutions LLC and Temple Eagle Partners LLC are class members.**

1001 Property Solutions LLC and Temple Eagle Partners LLC (collectively "Objectors") object to this settlement for the reasons stated in this brief.

1001 Property Solutions LLC is a class member that accepted Visa- and MasterCard-Branded Cards during the class period and will do so in the future. *See* Declaration of Daniel Hall. Its address is 1001 Harbor Lights Dr., Corpus Christi, TX 78412, and phone number is (361) 510-4981.

Temple Eagle Partners LLC is also a class member that accepted Visa- and MasterCard-

Branded Cards during the class period and will do so in the future. *See* Declaration of Rick Bandas. Its address is 2427 W. Adams Ave., Temple, TX 76504, and its phone number is 254-774-8778.

Rick Bandas is authorized to file this Objection on behalf of Temple Eagle, Ltd. d/b/a Eagle Self Storage as a duly authorized officer of Bandas Family, Ltd. and TEXAS RJB, LLC, which own Temple Eagle, Ltd.

Objectors join the objection of any other class member that is not inconsistent with their objection. They reserve the right to cross-examine any witnesses introduced at the fairness hearing.

## II.    A court owes a fiduciary duty to unnamed class members.

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.,* 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992). "The concern is not necessarily in isolating instances of major abuse, but rather is for those situations short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re Agent Orange Prods. Liab. Litig.,* 818 F.2d 216, 224 (2d Cir. 1987) (internal citation omitted).

Class actions poised for settlement "demand undiluted, even heightened, attention" and the "safeguards provided by the Rule 23(a) and (b) class-qualifying criteria . . . serve to inhibit appraisals of the chancellor's foot kind – class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness." *Amchem Prods. v. Windsor,*

521 U.S. 591, 620, 621 (1997). This is all the more critical where, as here, the proposed settlement class is mandatory. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).

### III.   The settlement waiver is impermissibly overbroad.

The settlement waiver is void on its face for multiple independent reasons.

First, the settlement agreement bars future antitrust claims. Settlement ¶68. But "an agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy." *In re American Express Merchants' Litig.*, 667 F.3d 204, 214 (2d Cir. 2012), *cert. granted, American Express v. Italian Colors*; *cf. also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985); *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 329 (1955). Such a release to permit a restraint of trade is the sort of contract in restraint of trade barred by Section 1 of the Sherman Act. *Fox Midwest Theatres v. Means*, 221 F.2d 173, 180 (8th Cir. 1955); *Minn. Mining & Mfg. Co. v. Graham-Field, Inc.*, 1997 WL 166497, at *3 (S.D.N.Y. Apr. 9, 1997).

Second, the proposed release impermissibly extends to unaccrued claims and future conduct. SA ¶¶ 68, 71 (release precludes "relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order"). But "to the extent that [the claims] involve conduct occurring after the Class Period, [they] cannot be Released Claims." *Anderson v. Beland*, 672 F.3d 113, 138 (2d Cir. 2011); *accord Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 676-77 (S.D.N.Y. 2011); *Shults v. Champion Int'l Corp.*, 821 F. Supp. 520, 524 (E.D. Tenn. 1993). In a (b)(2) class settlement, a release should confine itself to future claims for injunctive relief, not encroach on absent class members' rights to bring claims for non-incidental (*i.e.*, individualized) monetary relief in the future. Mandatory settlements that purport to release claims for monetary relief should be held unfair as a matter of law. *Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521, 522 (D. Nev. 1997); *see also* Isaacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 Notre Dame L. Rev. 1057, 1081(2002) ("If the parties, particularly in the settlement context, try to cheat by compromising the ability to

opt out and by short-circuiting the more exacting Rule 23(b)(3) certification standards, then they should be limited in their claim to have achieved finality.").

Third, the proposed release extends beyond the scope of the complaint. This is wrong: a class action release must be limited to the factual predicate underlying the core class action claims. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011); *Wal-Mart v. Visa USA, Inc.*, 396 F.3d 96, 106-09 (2d Cir. 2005); *Nat'l Super-Spuds, Inc. v. New York Merchantile Exch.*, 660 F.2d 9, 18-19 (2d Cir. 1981); *Moulton v. United States Steel Corp.,* 581 F.3d 344, 349 (6th Cir. 2009); *In re Auction Houses Antitrust Litig.*, 42 Fed. Appx. 511, 519 (2d Cir. 2002).

## IV.    The relief is illusory, making the settlement self-dealing under *Bluetooth*.

The relief temporarily lowers the basis rate charged to class members for some (but not all) transactions, and pays them a token $6 billion for an alleged $400 billion of damages (which, when trebled, would be $1.2 trillion)—but at the same time precludes class members from challenging future antitrust violations. As a result, it is entirely illusory, rendering the settlement unfair; class members in the mandatory class are *worse off* because of this settlement, making it impermissible under the Class Action Fairness Act. 28 U.S.C. § 1713. A ten-point basis decrease in 2014 can be entirely offset and then some by a 25-point basis increase in 2015. The Class Complaint alleges that anticompetitive conduct permits ultracompetitive pricing; the settlement will protect such overpricing, and any temporary price decrease—a small fraction of the damages alleged—can easily be offset with future price increases endorsed by the settlement. *See generally* Dkt. 1676 at 20-28. As such, the absence of meaningful long-term relief to the class renders the settlement unfair. The class gets nothing of permanent value; the attorneys ask for $720 million. Meanwhile, the defendants agree not to challenge the fee request. The combination of the disproportion between the attorney fee and the class relief with the clear sailing clause is exactly the sort of self-dealing condemned by the Ninth Circuit in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-49 (9th Cir. 2011).

The lack of meaningful class relief shows that the attorney fee is unfair, as well. Plaintiffs brought a $1.2 trillion class action, but have settled for less than a penny on the dollar—even if one pretends that the monopolist defendants won't use the release to raise prices to more than recoup any payments. If the plaintiffs have more than a 1% chance of success, this means they are unfairly settling on the cheap at the expense of the class; if they have less than a 1% chance of success, it is unconscionable that they should collect a multiple of lodestar just because they brought a large case. *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006). Either way, the settlement and fee request cannot be approved.

## V.   The 23(b)(2) class cannot be certified because it impermissibly settles damages claims and lacks a homogeneity of interests.

Although a court certifying a settlement-only class need not consider the manageability problems that a trial would present, the "other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Fed. R. Civ. Proc. 23(b)(2) lacks a paramount procedural protection that is afforded to absent class members in a (b)(3) class: the right to exclude oneself. Given this state of affairs, courts should be even more vigilant in their enforcement of the prerequisites of (b)(2), which protect absent class members against "unwarranted or overbroad class definitions." The most forceful textual protection is the requirement that "final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." Fed. R. Civ. Proc. 23(b)(2).

*Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006), explains this requirement. First, (b)(2) classes may not be certified when they assert non-incidental claims for monetary damages because "such individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Id.* at 641. *Accord Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). Second, a properly certified (b)(2) class must have a "homogeneity of interests" that justifies mandatory class treatment. *Reeb*, 435 F.3d at 649;

*accord Wal-Mart*, 131 S.Ct. at 2557. This putative settlement class fails to meet either requirement; for these two independent reasons, it should not be certified as a matter of law.

**A.     The 23(b)(2) class cannot be certified because it is unbounded.**

The mandatory class is defined to include class members who have not yet used Branded Cards but will do so in the future. This is an impermissible violation of due process as a matter of law, precluding certification.

Fed. R. Civ. Proc. 23(e)(1) requires the court to direct reasonable notice of the settlement to all members of the class who would be bound by it. Such notice lets class members assess the strengths and weaknesses of the case and the merits and demerits of the settlement in deciding whether to object or opt-out—when that right is available. 7B Charles Alan Wright et al., *Federal Practice and Procedure,* § 1787 at 220 (2d ed.1986); 2 *Newberg on Class Actions,* § 8.04 at 8–17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context."). Unless future customers of the defendants are permitted to reopen this settlement and challenge it, and unless the objection deadline is extended for those class members who joined the class after the preliminary approval date (or, indeed, after the objection deadline), Rule 23(e)(1) and Rule 23(e)(5) cannot be satisfied because many class members will have had no opportunity to object. Were this proceeding merely a class certification and litigation to final judgment under 23(b)(2), there would be no concomitant statutory right to notice or objection—but as a 23(e) settlement, the class members have those rights and the class definition effectively obliterated that right for a substantial subclass.

A threshold requirement in any potential Rule 23 certification is that the named plaintiffs constitute an identifiable, unambiguous class. *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 U.S. Dist. LEXIS 94223, at *14–15 (E.D. Tenn. Sept. 7, 2010) (citing *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th Cir.1989)).

This means that every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way;

and (2) a method of definition that allows the court to ascertain its membership. *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004). A class definition without definite end date violates these principles.

The vast majority of courts that have rigorously analyzed the issue reached the same conclusion: proposed classes with no fixed end date must be denied certification. *See In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 U.S. Dist. LEXIS 109446, at * 15–16 (N.D. Cal. May 2, 2008); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 88866, at *8–11 (E.D. Tenn. Dec. 3, 2007); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 285–86 (W.D. Mich. 2001); *Alaniz v. Saginaw Count.*, No. 05-10323, 2009 U.S. Dist. LEXIS 43340, at *5 (E.D. Mich. May 21, 2009); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 2009 U.S. Dist. LEXIS 62817, at *3–5 (N.D. Cal. July 2, 2009); *Wike v. Vertrue, Inc.*, No. 3:06-00204, 2010 U.S. Dist. LEXIS 96700, at *11–12 (M.D. Tenn. Sept. 15, 2010); *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 236 (W.D. Pa. 2001); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001). *Cf. also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602–03 (3d Cir. 2009).

**B.      The 23(b)(2) class cannot be certified because it impermissibly settles damages claims.**

Here, the mandatory class purports to release future damages claims. Settlement ¶68(g), (h). This violates *Dukes*, which holds that opt-out rights are required when individualized monetary relief is more than incidental. 131 S.Ct. at 2557-59. The Second Circuit agrees. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012).

When *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985), held that absent class members have a due process right to opt-out from class actions involving predominantly money damages, it conspicuously left one question undecided: namely, whether due process compelled the right of opt-out in actions which did not seek primarily money damages. *Id.* at 811–12 n.3. Since *Shutts*, the Supreme Court has repeatedly suggested that due process demands the right of

opt-out in any action containing any claim, even a non-predominant one, for monetary relief. In *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), in dismissing certiorari as improvidently granted, the Court declared that there is "at least a substantial possibility" that "in actions seeking [any] monetary damages, classes can only be certified under 23(b)(3), which permits opt out." *Id.* at 121. Five years later, the Court warned again that certifying a mandatory class that includes money damages might compromise the Seventh Amendment and the due process rights of absent class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845–46 (1999).

Most significantly and most recently, the Court determined in *Wal-Mart* that the "serious possibility that [the inclusion of monetary claims without a right to opt out would violate due process] provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here." 131 S.Ct. at 2559. The Court reasoned that

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction. [*Id.*]

Both *Wal-Mart* and *Ortiz* were decisions driven by the canon of constitutional avoidance, which counsels that courts should steer clear of any statutory interpretation that might create a constitutional problem. Thus, whenever a class action seeks monetary relief on the basis of individualized aggregated claims, as opposed to a unitary group claim, Rule 23 is best read as demanding 23(b)(3) certification. "[S]uch individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Reeb*, 435 F.3d at 641. This standard, much like the "incidental damages" standard of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), effectively harmonizes the Supreme Court's recurrent constitutional concerns with the idea that (b)(2) certifications should go forward when money damages do not "predominate." *See also Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir.

2002); *In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) ("principles of sound judicial management and constitutional considerations of due process and the right to jury trial all lead to the conclusion that in an action for money damages class members are entitled to personal notice and an opportunity to opt out.").

Even if monetary claims could be included in a (b)(2) action where incidental, they predominate in this case. The proper approach in the *Allison* regime is to pinpoint the monetary relief sought and ask whether it is "incidental" (i.e., flowing directly from liability to the class as a whole without individualized determinations). 151 F.3d at 415. If it is not, then monetary relief predominates. Plaintiffs allege over a trillion dollars in monetary damages. "If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go it alone—or not at all." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006); *see also Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000).

Furthermore, a thorough (b)(2) analysis must examine the preclusive effects that the settling parties intend to foist upon absent class members. *See USW v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 282–83 (6th Cir. 2007) (rejecting certification of union dispute that would have preclusive effect on class members' ERISA claims); Samuel Issacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 Notre Dame L. Rev. 1057, 1068–73 (2002). Determining the preclusive effects is easier in the settlement context, because the agreement describes the scope of the released claims—and includes claims for monetary and non-injunctive relief. As the Supreme Court recently emphasized in *Wal-Mart*, the proper division in the (b)(2) analysis is not between "equitable" claims and "legal" remedies but between "injunctive" and "monetary" ones. *Wal-Mart*, 131 S.Ct. at 2560. A bar on future "equitable" claims bars absent class members from seeking individualized monetary relief in the form of restitution for or rescission of the transactions with P&G.

Here, monetary claims predominate for two independent reasons: they predominate from both the perspective of the complaint and the release. The results of this inquiry are not trumped by the subjective desires of class counsel or representatives. Thus, the monetary claims cannot be held incidental and certification is inappropriate under *Reeb, Allison*, or their progeny. Under any standard, monetary damages "predominate" over requested injunctive or declaratory relief. The Rule 23(b)(2) class cannot be certified.

C.      **The 23(b)(2) class cannot be certified because there is no unity of interests.**

Rule 23(b)(2) certification requires that the class display a "homogeneity of interests." *Reeb*, 435 F.3d at 649. The validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole.*" *Dukes,* 131 S.Ct. at 2560. Those overlapping interests must make appropriate the granting of final injunctive or corresponding declaratory relief. As documented by multiple other objections, this unity of interests is absent here, preventing certification. Objectors adopt these arguments by reference.

VI.     **Internal conflicts of interest mean that certification of a single settlement class without separate subclassing and representation violates Rule 23(a)(4).**

There are multiple subclasses that are affected differently by the settlement. While the settlement permits blanket credit-card surcharges by merchants (Settlement ¶¶42, 55), this is no relief for the uncertified subclass of merchants that operate in states that prohibit surcharging. The Competitive Card Brand limitation means that an uncertified subclass of five million class members that accept American Express may not surcharge Visa and MasterCard credit cards.[1] And the settlement provides no relief for the uncertified subclass of class members who wish to surcharge debit card transactions. As a result, though there is a single settlement class, there are conflicts of interest in the negotiation of relief that favor credit-intensive merchants who do not do business in states that prohibit surcharging and do not take American Express at the expense

---

[1] Indeed, this clause, by penalizing merchants that do business with defendants' competitor American Express, arguably violates Section 2 of the Sherman Act.

Objection
Case No: 1:05-md-1720-JG-JO            10

of other class members. When a single class gets different types of relief, subclassing and separate representation is required in the Second Circuit.

In *In re Literary Works*, 654 F.3d 242 (2d Cir. 2011), the Second Circuit rejected a settlement that created three classes of relief for a single settlement class—even though there was no dispute that the different subgroups in the class had claims of differing legal quality. It was not enough for a single class counsel to allocate values to the differing-quality claims; the subclasses must be separately certified and separately represented, even if it would be more administratively convenient to have a single party negotiating on behalf of all of the subgroups. *Id.*

If Rule 23(a)(4) is violated because an identifiable subgroup with lower-quality claims might *hypothetically* be disadvantaged, as in *Literary Works*, it is certainly true where, as here, an identifiable subgroup with identical-quality claims is *actually* disadvantaged and entirely frozen out of the benefits of injunctive relief.

## VII.   The class plaintiffs' awards require settlement rejection.

The settlement provides payment of $1.8 million to the class plaintiffs who support the settlement, but nothing to the class plaintiffs who reject the settlement. Settlement ¶ 1(m). This creates an inherent conflict of interest between the class representatives and the class that requires class decertification, because they are given financial incentive to support a settlement that is not in the best interest of the class. *Radcliffe v. Experian Info. Solutions, Inc.*, Nos. 11-56376, 11-56387, 11-56389, 11-56397, 11-56400, 11-56482 (9th Cir. May 2, 2013). Indeed, given the financial payments of hundreds of thousands of dollars to class representatives who support the settlement, it is extraordinary—and telling—that ten out of nineteen class representatives oppose the settlement.

## VIII.   The attorneys' fees are too high.

The request for nearly 10% of the $7.25 billion settlement fund is excessive. *First*, "class counsel's compensation must be proportioned to the incremental benefits they confer on the class." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 286 (7th Cir. 2002). Here, the incremental benefits of $7.25 billion must be offset by the billions of dollars of price increases that the settlement permits the defendants to impose with impunity. The denominator of any percentage-of-the-fund calculation should include this offset—especially since the settlement will make many class members that continue to do business with the defendants worse off. 28 U.S.C. §1713. When these offsets of expected price increases are included, the $720 million request exceeds the value of the class benefit.

*Second*, even if the settlement is valued at $7.25 billion, this is a megafund, and fee percentages should go down as a consequence as a matter of law. It is not 1000 times more difficult to try a $7 billion case as a $7 million case. Thus, it is typical for courts to reduce the fees on a sliding scale when settlement sizes increase. *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 503, 521 (E.D.N.Y. 2003). Indeed, settlements in the $500 million range are usually awarded single-digit-percentage fees less than what plaintiffs are asking here. *E.g., In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-cv-05295 (C.D. Cal. Mar. 4, 2011) (7.73% of $601 million); *In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*, No. 07-cv-09633 (S.D.N.Y. 2009) (7.8% of $475 million); *In re United Health Group Inc. PSLRA Lit.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (7% of $925 million); *In re Dynegy, Inc. Sec. Litig.*, No. 02-cv-01571 (S.D. Tex. 2005) (8.72% of $474 million); *In re Raytheon Co. Sec. Litig.*, No. 99-cv-12142 (D. Mass. 2004) (9% of $460 million). Ten percent is excessive for a multi-billion fund. *Visa Check/Mastermoney Antitrust Litig., supra*. Even half of that figure, 5%, would be excessive given the size of this settlement. *E.g., id.* (awarding 6.5% of $3 billion fund, and

noting that percentages should go down as size of settlement goes up); *Cobell v. Salazar*, 679 F.3d 909, 914-16 & n.5 (D.C. Cir. 2012) (fee of less than 3% of $3.4 billion settlement).[2]

*Third*, the class has been unfairly disadvantaged in the selection of lead class counsel. There were multiple highly-qualified antitrust firms competing for the role of class counsel. Normally, when a client has a large supply of potential attorneys, it can use these competitive pressures to reduce the price charged. But the Court's MDL selection process made no effort to benefit the class by insisting on a reduced rate. When district court judges put class counsel status in complex cases up for competitive bid, they find high-quality class counsel such as Boies Schiller willing to work for a contingency fee of **less than ten percent**. *In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000); *see also In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp 1190 (N.D. Ill. 1996). Given the trillion-dollar size of this case, it is certain that had this Court conducted competitive bidding on price, a highly-qualified low bidder would have asked for a fraction of what class counsel does here. Indeed, judging by the objections of many representative plaintiffs, the only auction that has taken place here is a reverse auction.

*Fourth*, even assuming the accuracy of class counsel's lodestar representations, the multiplier of 4.5 is excessive under federal law. "[T]here is a strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A*, 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is only justified in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1674. *Kenny A*'s limitation on enhancements was made in the context of interpreting 42 U.S.C. § 1988's language of "reasonable" fee awards, but there's little justification for claiming that "reasonable" in § 1988 means something different than

---

[2] The complexity of this case doesn't justify more than 5%, either. *Cobell*, where the attorneys received less than 3%, not only involved 24 written opinions and multiple appeals to the D.C. Circuit on unprecedented complex cutting-edge issues of Indian law and sovereign immunity, but required Congressional legislation before the settlement could be approved; the case lasted from 1996 to 2012, over twice as long as this case.

"reasonable" in class action fee awards made under Fed. R. Civ. P. 23(h). *See e.g., Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 Fed. Appx. 496, 500 (6th Cir. 2011); *Gonzalez v. S. Wine & Spirits of Am., Inc.,* No. 11-cv-5849,2012 U.S. Dist. LEXIS 46401, at *12-*16 (C.D. Cal. Mar. 29, 2012) (citing *Kenny A* and denying enhancement multiplier of 1.5); *Weeks v. Kellogg Co.,* No. 09-cv-8102, 2011 U.S. Dist. LEXIS 155472, at *129-*135 & n.157 (C.D. Cal. Nov. 23, 2011) (citing *Kenny A* and finding "little basis for an application of a multiplier" when calculating lodestar cross-check); *cf. also In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J. concurring/dissenting) (referring to *Perdue* as an "analogous statutory fee-shifting case."). Plaintiffs rely on *Goldberger*, but that case predated *Kenny A*, which they fail to distinguish or even mention.

## IX.    The unprecedented reaction of the class—and class representatives—requires rejection.

*Grinnell I* asks courts to consider the class's reaction to the settlement. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974). But a court should not infer anything from the relatively low number of objectors. Silence is simply *not* consent. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.,* 55 F.3d 768, 812 (3d Cir. 1995) (*citing In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 217–18 (5th Cir. 1981)). "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1137 (7th Cir. 1979) . "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements,*

59 FLA. L. REV. 71, 73 (2007). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *GM Pick-Up Trucks*, 55 F.3d at 812-13; *American Law Institute Principles of Aggregate Litigation* § 3.05 comment *a* at 206.

Indeed, though one can normally expect a low number of objectors, the number and scope of the objections here is unprecedented in the Second Circuit. Even a number of lead plaintiffs have objected to the settlement. If this *Grinnell* factor is to mean anything, the number of objections here militates against settlement approval; otherwise, no settlement could ever obtain enough objections for this factor to distinguish between good settlements and bad settlements.

## CONCLUSION

For the above mentioned reasons, the class cannot be certified, and the settlement must be rejected. If the settlement is approved, the fee request should not be above lodestar.

Dated: May 28, 2013                    Respectfully submitted,

David Stein
Samuel and Stein
38 West 32nd Street, Suite 1110
New York, NY 10001
Phone: (212) 563-9884
Fax: (212) 563-9870
Email: dstein@samuelandstein.com

*Attorneys for Objectors/Class Members*
*Rick Bandas and Daniel Hall*

**Certificate of Service**

The undersigned certifies that today he filed the foregoing objection and associated declarations on ECF which will send electronic notification to all attorneys registered for ECF-filing.

The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated declarations upon the following.

United States District Court for the Eastern District of New York
Clerk of Court
225 Cadman Plaza
Brooklyn, NY 11201

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Wesley R. Powell
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

_____
David Stein

# EXHIBIT A

**DECLARATION OF RICK BANDAS IN SUPPORT OF
OBJECTION TO SETTLEMENT IN
*IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION***

Comes now RICK BANDAS and states the following under oath and under penalty of

perjury in support of his objection:

"My name is Rick Bandas. I am over the age of eighteen (18) years. I have never

been convicted of a felony. I am qualified and competent to make this affidavit.

The facts stated herein are within my personal knowledge.

"My business address and business phone number is Temple Eagle Partners, Ltd., 2427

W. Adams Avenue in Temple, Texas 76504, (254) 774-8778.

"I have accepted Mastercard-branded and VISA-branded cards in the United States from

January 1, 2004 to the present at the above mentioned business and I shall continue to do.

"I object to the proposed settlement of *IN RE PAYMENT CARD INTERCHANGE*

*FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION* for the reasons stated in

my objection.

"I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct. Executed this the 28th day of May

2013, at Temple, Texas."

Rick Bandas

# EXHIBIT B

Case 1:05-md-01720-JG-JO  Document 5376  Filed 06/11/13  Page 26 of 55 PageID #: 65611
May 28, 2013  2:14PM                                                                     No. 8982    P. 1
Case 1:05-md-01720-JG-JO  Document 2613-1  Filed 05/28/13  Page 4 of 32 PageID #: 54180

### DECLARATION OF DANIEL HALL IN SUPPORT OF OBJECTION TO SETTLEMENT IN
### *IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION*

Comes now DANIEL HALL and states the following under oath and under penalty of perjury in support of his objection:

"My name is Daniel Hall. I am over the age of eighteen (18) years. I have never been convicted of a felony. I am qualified and competent to make this affidavit. The facts stated herein are within my personal knowledge.

"My business address and business phone number are 1001 Property Solutions, LLC, 1001 Harbor Lights Drive in Corpus Christi, Texas 78412, (361) 882-1483.

"I have accepted Mastercard-branded and VISA-branded cards in the United States from 2007 to the present at the above mentioned business and I shall continue to do,

"I received a settlement notice in the *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* case at my business address listed above (attached as Exhibit C).

"I object to the proposed settlement of *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* for the reasons stated in my objection.

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this the 28th day of May 2013, at Corpus Christi, Texas."

_____
Daniel Hall

# EXHIBIT C

Payment Card Interchange Fee Settlement
PO Box 2530
Portland OR 97208-2530

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
**PAID**
TWIN CITIES, MN
PERMIT NO. 6006

# Legal Notice about a class action settlement.

4719-12777838-1

00116-005723 *************AUTO**3-DIGIT 784
DANIELHALLCBNDENTRPRS
1001 HARBOR LIGHTS DR
CORPUS CHRISTI TX 78412-5342

**www.PaymentCardSettlement.com • 1-800-625-6440**

Для того, чтобы прочитать это сообщение на русском языке, позвоните нам или посетите наш веб-сайт
ในการอ่านประกาศนี้ในภาษาไทยให้โทรหรือเยี่ยมชมเวบไซต์ของเรา
*Để đọc thông báo này bằng tiếng Việt, xin gọi hoặc viếng trang mạng của chúng tôi*
한국어로 보시려면 전화를 주시거나 저희 웹사이트를 방문해 주십시오
または当社ウェブサイトをご覧ください
このお知らせを日本語でお読みになりたい方は、当社までお電話をいただくか、
若要阅读本通知的中文版，请致电或访问本公司的网站
*Si desea leer este aviso en español, llámenos o visite nuestro sitio web*

## A $6+ billion settlement will provide payments and other benefits to merchants that accepted Visa and MasterCard since 2004.

| LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **MERCHANTS IN THIS CASH SETTLEMENT CLASS (RULE 23(B)(3) SETTLEMENT CLASS) MAY:** | |
| FILE A CLAIM | This is the only way to get money from the settlement. |
| EXCLUDE YOURSELF | This is the only way you can be part of another lawsuit that asks for money for claims in this case. You will *not* get payment from this settlement. |
| OBJECT | If you do not agree with any part of this settlement, you do not agree with the requested award of attorneys' fees, or both you may:<br><br>• Write to the court to say why, or<br><br>• Ask to speak at the Court hearing about either the fairness of this settlement or about the requested attorneys' fees or both. |
| DO NOTHING | You will not get money. You give up your rights to sue about the claims in this case. |
| DEADLINES | See pages 9-17 for more information about rights and options and all deadlines. |

**Merchants in the Rule Changes Settlement Class (Rule 23(b)(2) Settlement Class):**

• You automatically benefit from the Visa and MasterCard rule changes described below. You do not have to file any forms.

• You cannot exclude yourself from the Rules Changes Settlement Class.

• You may object to any part of the settlement.

The Court has given its preliminary approval to this settlement. The Court has not yet given its final approval.

**Read this Notice to learn more about the case.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**..................................................................................................**PAGE 4**
    1. Why did I get this Notice?
    2. What is this lawsuit about?
    3. What is an interchange fee?
    4. Why is this a class action?
    5. Why is there a settlement?
    6. Am I part of this settlement?

**SETTLEMENT BENEFITS**.............................................................................................**PAGE 6**
    7. How much money will be provided for in this settlement?
    8. How do I ask for money from this settlement?
    9. What do the members of the Rule Changes Settlement Class get?

**HOW TO FILE A CLAIM FORM**..................................................................................**PAGE 9**
    10. How do I file a claim?
    11. Am I giving up anything by filing a claim or not filing a claim?
    12. How do I opt-out of the Cash Settlement Class of this settlement?
    13. If I exclude myself from the Cash Settlement Class, can I still get money from this settlement?
    14. If I do not exclude myself from the Cash Settlement Class, can I sue these Defendants for damages for past conduct later?

**HOW TO DISAGREE WITH THE SETTLEMENT** ......................................................**PAGE 12**
    15. What if I disagree with the settlement?
    16. Is objecting the same as being excluded?

**THE LAWYERS REPRESENTING YOU**.....................................................................**PAGE 14**
    17. Who are the lawyers that represent the Classes?
    18. How much will the lawyers and Class Plaintiffs be paid?
    19. How do I disagree with the requested attorneys' fees, expenses or awards to Class Plaintiffs?

**THE COURT'S FAIRNESS HEARING**........................................................................**PAGE 16**
    20. When and where will the Court decide whether to approve the settlement?
    21. Do I have to come to the hearing to get my money?
    22. What if I want to speak at the hearing?

**IF YOU DO NOTHING**...............................................................................................**PAGE 17**
    23. What happens if I do nothing?

**GETTING MORE INFORMATION** .............................................................................**PAGE 17**
    24. How do I get more information?

**THE FULL TEXT OF THE RELEASES** ......................................................................**PAGE 18**
    25. What is the full text of the Release for the Cash Settlement Class?
    26. What is the full text of the Release for the Rule Changes Settlement Class?

**QUESTIONS? CALL 1-800-625-6440 OR VISIT WWW.PAYMENTCARDSETTLEMENT.COM**

## BASIC INFORMATION

### 1. Why did I get this Notice?

This Notice tells you about your rights and options in a class action lawsuit in the U.S. District Court for the Eastern District of New York. Judge John Gleeson is overseeing this class action, which is called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (JG)(JO). This Notice also explains the lawsuit, the proposed settlement, the benefits available, eligibility for those benefits, and how to get them.

The companies or entities who started this case are called the "Plaintiffs." The companies they are suing are the "Defendants."

This case has been brought on behalf of merchants. The specific merchants that filed the case are the Class Plaintiffs and the Court has authorized them to act on behalf of all merchants in the classes described below in connection with the proposed settlement of this case. The Class Plaintiffs are:

Photos Etc. Corporation; Traditions, Ltd.; Capital Audio Electronics, Inc.; CHS Inc.; Crystal Rock LLC; Discount Optics, Inc.; Leon's Transmission Service, Inc.; Parkway Corp.; and Payless ShoeSource, Inc.

The companies that the plaintiffs have been suing are the "Defendants." Defendants are:

- "Visa Defendants": Visa U.S.A. Inc., Visa International Service Association, and Visa Inc.;
- "MasterCard Defendants": MasterCard International Incorporated and MasterCard Incorporated; and
- "Bank Defendants": Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; MBNA America Bank, N.A.; Barclays Bank plc; Barclays Bank Delaware; Barclays Financial Corp.; Capital One Bank (USA), N.A.; Capital One F.S.B.; Capital One Financial Corporation; Chase Bank USA, N.A.; Chase Manhattan Bank USA, N.A.; Chase Paymentech Solutions, LLC; JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; Bank One Corporation; Bank One Delaware, N.A.; Citibank (South Dakota), N.A.; Citibank N.A.; Citigroup Inc.; Citicorp; Fifth Third Bancorp; First National Bank of Omaha; HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; HSBC Bank plc; National City Corporation; National City Bank of Kentucky; SunTrust Banks, Inc.; SunTrust Bank; Texas Independent Bancshares, Inc.; Wachovia Bank, N.A.; Wachovia Corporation; Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); Providian Financial Corporation; Wells Fargo Bank, N.A. and Wells Fargo & Company.

### 2. What is this lawsuit about?

This lawsuit is about:

- The interchange fees attributable to merchants that accepted Visa or MasterCard credit or debit cards between January 1, 2004 and November 28, 2012, and
- Visa's and MasterCard's rules for merchants that accept their cards.

The Class Plaintiffs claim that:

- Visa, MasterCard, and their respective member banks, including the Bank Defendants, violated the law because they set interchange fees.

Case 1:05-md-01720-JG-JO   Document 2613-1   Filed 05/28/13   Page 10 of 32 PageID #: 54186

- Visa, MasterCard, and their respective member banks, including the Bank Defendants, violated the law because they imposed and enforced rules that limited merchants from steering their customers to other payment methods. Doing so insulated them from competitive pressure to lower the interchange fees.

- Visa and MasterCard conspired together about some of the business practices challenged.

- Visa and MasterCard and their respective member banks continued in those activities despite that Visa and MasterCard changed their corporate structure and became publicly owned corporations after this case was filed.

- The Defendants' conduct caused the merchants to pay excessive fees for accepting Visa and MasterCard cards.

- But for Defendants' conduct there would have been no interchange fee or those fees would have been lower.

The Defendants say they have done nothing wrong. They claim their business practices are legal, justified, the result of independent competition and have benefitted merchants and consumers.

### 3. What is an interchange fee?

When a cardholder makes a purchase with a credit or debit card, there is an interchange fee attributable to those transactions, which is usually 1% to 2% of the purchase price. Interchange fees typically account for the greatest part of the fees paid by merchants for accepting Visa and MasterCard cards.

Visa and MasterCard set interchange fee rates for different kinds of transactions and publish them on their websites, usually twice a year.

### 4. Why is this a class action?

In a class action, a very small number of people or businesses sue not only for themselves, but also on behalf of other people or businesses with similar legal claims and interests. Together all of these people or businesses with similar claims and interests form a class, and are class members.

When a court decides a case or approves a settlement, it is applicable to all members of the class (except class members who exclude themselves). In this case, the Court has given its preliminary approval to the settlement and the two classes defined below in Question 6.

### 5. Why is there a settlement?

The Court has not decided which side was wrong or if any laws were violated. Instead, both sides agreed to settle the case and avoid the cost and risk of trial and appeals that would follow a trial.

In this case, the settlement is the product of extensive negotiations, including court-supervised mediation with two experienced mediators, chosen by the parties. Settling this case allows class members to receive payments and other benefits. The Class Plaintiffs and their lawyers believe the settlement is best for all class members.

The parties agreed to settle this case only after seven years of extensive litigation. At the time of settlement, discovery was complete and the parties had exchanged expert reports. During discovery, Class Plaintiffs reviewed more than 50 million pages of documents and deposed more than 400 witnesses, including Defendants' experts. Also, at the time of settlement, motions to dismiss, motions for summary judgment, motions to exclude expert testimony, and the motion for class certification had been fully briefed and argued, and were pending before the court.

## 6.  Am I part of this settlement?

**If this Notice was mailed to you, the Defendants' records show that you are probably in the:**

Cash Settlement Class (Rule 23(b)(3) Settlement Class) "consisting of all persons, businesses, or other entities that accepted Visa-Branded Cards and/or MasterCard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date, except that this Class does not include the named Defendants, their directors, officers, or members of their families, financial institutions that have issued Visa- or MasterCard-Branded Cards or acquired Visa- or MasterCard-Branded Card transactions at any time from January 1, 2004 to the Settlement Preliminary Approval Date, or the United States government."

Rule Changes Settlement Class (Rule 23(b)(2) Settlement Class) "consisting of all persons, businesses or other entities that as of the Settlement Preliminary Approval Date, or in the future accept any Visa-Branded Cards and/or MasterCard-Branded Cards in the United States, except that this Class shall not include the named Defendants, their directors, officers, or members of their families, financial institutions that have issued Visa- or MasterCard-Branded Cards or acquired Visa- or MasterCard-Branded Card transactions at any time since January 1, 2004, or do so in the future, or the United States government."

The Settlement Preliminary Approval Date referenced in these class definitions is November 28, 2012.

If you are not sure whether you are part of this settlement, contact the Class Administrator at:

Call the toll-free number: 1-800-625-6440
Visit:          www.PaymentCardSettlement.com
Write to:       Payment Card Interchange Fee Settlement
                P.O. Box 2530
                Portland, OR 97208-2530
Email:          info@PaymentCardSettlement.com

## SETTLEMENT BENEFITS

## 7.  How much money will be provided for in this settlement?

Under the settlement, Visa, MasterCard and the bank defendants have agreed to make payments to two funds:

- **Cash Settlement Fund:** Every merchant in the Cash Settlement Class that does not exclude itself from the class by the deadline described below and files a valid claim ("Authorized Cash Claimant") will get money from the $6.05 billion Cash Fund. This fund will be reduced by an amount not to exceed 25% of the Cash Fund to account for merchants who exclude themselves from the Cash Settlement Class. The money in this fund after the reduction for excluded merchants will also be used to pay:

  - The cost of settlement administration and notice, as approved by the Court,
  - Money awards for Class Plaintiffs as approved by the Court, and
  - Attorneys' fees and expenses, as approved by the Court.

  The money in this fund will only be distributed if the Court finally approves the settlement.

- **Interchange Fund:** The money for this fund is estimated to be up to $1.2 billion and will be equivalent to 10 basis points (i.e. one-tenth of 1%) of transaction volume attributable to Cash Settlement Class members that accept Visa or MasterCard credit cards during an eight-month period starting by July 29, 2013. Every merchant in the Cash Settlement Class that does not exclude itself from the class by the deadline described below and that accepted Visa or

MasterCard credit cards during that eight-month period and files a valid claim ("Authorized Interchange Claimant") will get money from the Interchange Fund. The money in this fund will also be used to pay:

- The cost of settlement administration and notice, as approved by the Court, and
- Any attorneys' fees and expenses that may be approved by the Court.

The money in this fund will not be returned to Defendants, even if the settlement is terminated. If this settlement is terminated, the Court will decide how to distribute this fund.

### 8. How do I ask for money from this settlement?

You must file a valid claim to get money from this settlement. If the Court finally approves the settlement, and you do not exclude yourself from the Cash Settlement Class, you will receive a claim form in the mail or by email. You may also get a claim form at: www.PaymentCardSettlement.com, or call: 1-800-625-6440.

**How much money will I get?**

It is anticipated that the amount paid from the Cash Settlement Fund will be based on your actual or estimated interchange fees attributable to Visa and MasterCard transactions from January 1, 2004 through November 28, 2012.

The amount paid from the Interchange Fund will based on one-tenth of 1% of the merchant's Visa and MasterCard credit card transaction volume during the eight-month period to begin by July 29, 2013.

Valid claims will be paid from the Cash Settlement Fund and/or the Interchange Fund. The amount of money each eligible claimant will receive from the Cash Settlement Fund depends on the money available to pay all claims, the total dollar value of all valid claims filed, the deduction described above not to exceed 25% of the Cash Settlement Fund, the cost of class administration and notice, money awards to Class Plaintiffs, and attorneys' fees and expenses approved by the Court. The amount of money each eligible claimant will receive from the Interchange Fund depends on the money available to pay all claims, the total dollar value of all valid claims filed, the cost of class administration and notice, and attorneys' fees and expenses approved by the Court. Each claimant's payment will be paid in proportion to all claimants' payments.

Details about how all claims are calculated will be available at www.PaymentCardSettlement.com starting no later than April 11, 2013.

### 9. What do the members of the Rule Changes Settlement Class get?

If the Court approves the settlement, Visa and MasterCard will make changes to their rules and practices. These changes will benefit the Rule Changes Settlement Class.

The rule changes, which will start no later than January 27, 2013, are summarized below. To see a detailed description of the rule changes, including other rules not listed here, see the Class Settlement Agreement, paragraphs 40–65.

**Brand Surcharge Rules on Credit (not Debit) Cards**

Merchants will be able to charge an extra fee to all customers who pay with Visa or MasterCard branded credit cards. This is called a brand-level surcharge, and it is allowed if the surcharge:

- is the same for all Visa credit cards or all MasterCard credit cards;
- is not more than the merchant's average Visa or MasterCard merchant discount rate (calculated historically or based on the previous month); and

- is not more than the maximum surcharge cap, which will be posted on Visa's and MasterCard's websites (if a cap is set).

For merchants that accept other brands of credit cards, such as American Express, Discover, or PayPal, there are other requirements that depend on the costs of those brands to the merchant and those brands' surcharge restrictions.

- If the merchant accepts a competing brand of credit card that is as or more expensive than Visa or MasterCard, and that limits the merchant's ability to surcharge, the merchant may surcharge Visa or MasterCard cards only in the same way as the merchant would be allowed to surcharge the competing brand's cards or on the terms on which the merchant actually surcharges the competing brand's cards.

- If the merchant accepts a competing brand of credit card that prohibits or effectively prohibits the merchant from surcharging in a particular channel of commerce, the merchant may not surcharge Visa or MasterCard cards unless it also surcharges the competing brand's cards regardless of the cost of that brand to the merchant. The amount of the surcharge must equal whichever is less: the cost to accept the competing brand or the surcharge imposed on Visa or MasterCard cards.

*Exception:* A merchant may individually negotiate an agreement with the competing brand to waive or limit its ability to surcharge that brand, if that agreement fulfills the terms of the Class Settlement Agreement.

**Product Surcharge Rules on Credit (not Debit) Cards**

A merchant may impose a surcharge on a particular Visa or MasterCard credit card product, such as Visa Signature. The amount of the surcharge must not be more than the merchant's cost to accept the particular Visa or MasterCard credit card product, minus the Durbin Amendment's cap on debit-card interchange fees. The surcharge must be the same for all transactions on the particular Visa or MasterCard credit card product, regardless of the card's issuer.

For merchants that accept credit cards issued by competing brands (e.g., American Express, Discover, or PayPal), there are requirements similar to the brand level surcharge rules summarized above.

Nothing in the settlement affects a merchant's obligations to comply with all applicable state or federal laws, including state laws regarding surcharging of credit or debit card transactions and federal and state laws regarding deceptive or misleading disclosures. However, the fact that a merchant's ability to surcharge may be restricted under the laws of one or more states is not intended to limit that merchant's ability under the settlement to surcharge Visa or MasterCard credit cards where permitted by state law.

**Discount Rule:** Merchants may offer discounts or other financial incentives at the point of sale to customers who do not pay with Visa or MasterCard cards.

**All-Outlets:** Merchants may accept Visa or MasterCard at fewer than all of the merchant's "trade names" or "banners" if the merchant operates multiple businesses under different trade names or banners. For stores operating under the same "trade name" or "banner," however, merchants must accept or decline a network's cards at all of its stores operating under the same "trade name" or "banner."

**Buying Groups:** Merchants that form buying groups that meet certain criteria may make proposals to Visa and MasterCard about card acceptance on behalf of the group's members. If Visa or MasterCard believe that the group's proposal "provides reasonable commercial benefits to the parties," it must negotiate with the buying group and decide, in "good faith," whether or not to make an agreement with the group.

**$10 Minimum Rule:** This rule, which allows merchants to set a $10 minimum purchase for Visa and MasterCard credit cards, will not change even if the requirements of the Dodd-Frank Wall Street Reform Act end.

All these rule changes are set forth in full in the Settlement Agreement, which appears on the website: www.PaymentCardSettlement.com.

## HOW TO FILE A CLAIM FORM

### 10. How do I file a claim?

If the Court approves the settlement (see "The Court's Fairness Hearing" below), the Court will approve a Claim Form and set a deadline for Cash Settlement Class members to submit claims. In order to receive a payment, you must submit a Claim Form.

If you received this Notice in the mail, a Claim Form will be mailed or emailed to you automatically. The Claim Form will also be posted on the website and available by calling the toll free number shown below. Class members will be able to submit claims electronically using this website or by returning a paper Claim Form.

### Who decides the value of my claim?

The Class Administrator is obtaining data from Visa, MasterCard, certain Bank Defendants, and other entities which it expects will permit it to estimate the total value of interchange fees attributable to each Authorized Cash Claimant on its Visa and MasterCard card transactions during the period from January 1, 2004 to November 28, 2012 with no netting or reductions based on rebates, market support, or promotional payments, or otherwise ("Interchange Fees Paid"). It is the current intention to utilize this data to the extent possible, to estimate the interchange fees attributable to class members. For any calendar year, or part thereof, in which an Authorized Cash Claimant had an agreement with Visa or MasterCard under which the merchant received customized interchange rates, such Claimant may elect to have its Visa or MasterCard Interchange Fees Paid estimated, in lieu of the Interchange Fees Paid amounts shown in the data utilized by the Class Administrator, by multiplying its relevant Visa or MasterCard credit, signature debit, and PIN debit transaction volume by the respective average effective credit, signature debit, and PIN debit interchange rates across the merchant's applicable merchant category (or merchant categories) for that time period. In order for a Claimant to qualify for such an election, the Class Administrator must confirm with Visa or MasterCard that the Claimant had an agreement with Visa or MasterCard in which it received customized interchange rates, for such time period.

Where the necessary data is not reasonably available or if the Interchange Fees Paid claim value established by the Class Administrator is disputed by the class member, class members will be required to submit information in support of its claim. This information will include, to the extent known, Interchange Fees Paid attributable to the class member, merchant discount fees paid, the class member's merchant category code and/or a description of the class member's business, total Visa and MasterCard transaction volume and/or total sales volume. Based on these data, the Interchange Fees Paid attributable to the class member will be estimated for each known Cash Settlement Class member.

The Class Administrator will calculate the value of claims to the Interchange Fund as a percentage of sales volume on Visa- and MasterCard-Branded credit card transactions during the eight-month period. To the extent that available data explicitly specify a particular claimant's sales volume on Visa- and MasterCard-Branded credit card transactions during the eight-month period, these data will be utilized directly in the valuation of that claim.

Claimants whose dollar sales transaction volume is not available from the Defendants and/or third parties will be asked to submit payment card transaction volume for the eight-month period to the Class Administrator or, if payment card transaction volume information is not available to the class member, sales transaction information from which payment card transaction volume may be estimated. The Class Administrator will make what it judges to be the best reasonably accurate estimate of such sales volume based on available data, and will make available to such Authorized Interchange Claimants the estimate of such sales volumes. Such estimates may be provided in a subsequent mailing or email to the Authorized Interchange Claimant and/or may be made accessible over a secure website operated by the Class Administrator.

The Class Administrator also expects to provide class members the ability to access the Claims website with a unique code to permit it to view the manner in which its claim value was calculated and may also provide this information on a pre-populated claim form. Class members may accept or disagree with data on the claim form or the website. The claim form and website will explain how to challenge the data.

More details about how all claims are calculated will be available at www.PaymentCardSettlement.com starting no later than April 11, 2013.

### Claim Preregistration Form

Class members with more than one location or a franchise that accepts Visa or MasterCard cards may also fill out a pre-registration form at the website. You do not have to pre-register but doing so may be helpful, and does not impact your rights in this case.

### What if the Class Administrator doesn't have my data?

The claim form also allows class members for whom no financial data is available or who were not identified as class members to file a claim. Those merchants will have to fill out and sign a claim form and return it by the deadline.

### Can anyone else file a claim for me?

There are specialized companies that may offer to fill out and file your claim in return for a percentage of the value of your claim. Before you sign a contract with one of these companies, you should examine the claim-filing process provided here and decide whether it is worth the cost. You can always seek help from the Class Administrator or Class Counsel.

### 11. Am I giving up anything by filing a claim or not filing a claim?

If the Court finally approves the settlement, members of the Rule Changes Settlement Class (Rule 23(b)(2) Settlement Class) cannot be excluded from the Rule Changes Settlement Class. They will be bound by the terms of that settlement, including releasing all claims that were or could have been alleged in this case against any of the released parties identified in Paragraph 67 of the Class Settlement Agreement.

Members of the Cash Settlement Class (Rule 23(b)(3) Settlement Class) (who do not exclude themselves by the deadline) whether or not they file a claim for payment, will be bound by the terms of that settlement, which include agreeing not to file a claim against any of the released parties identified in Paragraph 32 of the Class Settlement Agreement.

In general, the settlement will resolve and release all claims by persons, businesses and other entities that arise from or relate to their capacity as merchants that accept Visa-Branded Cards and/or MasterCard-Branded Cards in the United States against Visa, MasterCard or banks that were or could have been alleged in the lawsuit, including any claims about interchange or other fees, no-surcharge rules, no-discounting rules, honor-all-cards rules and other rules.

The settlement will also resolve any merchant claims based upon the future effect in the United States of:

- any Visa or MasterCard rules, as of November 27, 2012, that are not to be modified pursuant to the settlement,
- the modified rules provided for in the settlement, or
- any other rules substantially similar to any such rules.

The releases will not bar claims involving new conduct or rules in the future that are not substantially similar to either existing conduct or rules or conduct or rules modified by the settlement (e.g. imposition of a new rule not substantially similar to existing rules or rules modified by the settlement, or reversion to the old rules modified by the settlement). The releases also will not bar claims involving certain specified standard commercial disputes arising in the ordinary course of business.

**The full text of the Releases for both the Cash Settlement Class (Rule 23(b)(3) Settlement Class) and Rule Changes Settlement Class (Rule 23(b)(2) Settlement Class) is set forth at pages 18 to 27 of this Notice. The Releases describe the released claims in legal language. You should carefully read the Releases and if you have questions about them, you may:**

- Call Class Counsel listed in Question 17 at no charge,
- Talk to a lawyer, at your own expense, about the releases and what they mean to you. The complete Settlement Agreement may also be viewed on the website.

**Important!** If you want to keep your right to be part of any other lawsuit that asks for money based on similar claims, you must opt-out (exclude yourself) from the Cash Settlement Class of this settlement. You **cannot** be excluded from the Rule Changes Settlement Class.

### 12. How do I opt-out of the Cash Settlement Class of this settlement?

To opt-out (exclude yourself) from the Cash Settlement Class (Rule 23(b)(3) Settlement Class) of this Settlement, send a letter to:

Payment Card Interchange Fee Settlement
P.O. Box 2530
Portland, OR 97208-2530

Your letter must be postmarked by **May 28, 2013**. You cannot exclude yourself by phone, fax, email or online.

**Should I send my letter by regular mail?**

Yes. Send your letter by first-class mail and pay for the postage. Keep a copy for your records.

**What should my letter say?**

Your letter must be signed by a person authorized to do so and state as follows:

- I want to exclude [name of merchant] from the Cash Settlement Class of the settlement in the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation.*
- My personal information is:

  Name (first, middle, last):
  Position:
  Name of Merchant:

**QUESTIONS? CALL 1-800-625-6440 OR VISIT WWW.PAYMENTCARDSETTLEMENT.COM**

Address:
Phone No.:
Merchant's taxpayer identification number:

- The business names, brand names, and addresses of the stores or sales locations that I want to exclude from the Cash Settlement Class are:

    (list all businesses and addresses of each store or sales location)

- My position at the business that gives me the authority to exclude it from the Cash Settlement Class is as follows:

**Warning!** If your letter is sent after the deadline it will be considered invalid. If this happens, <u>you won't be excluded from the Cash Settlement Class</u>, and you will still be part of the settlement and will be bound by all of its terms.

### 13. If I exclude myself from the Cash Settlement Class, can I still get money from this settlement?

No.  If you exclude yourself from the Cash Settlement Class (Rule 23(b)(3) Settlement Class):

- You cannot get money from this settlement, and
- You cannot object to the Cash Settlement (but you can still object to the Rule Changes).

The deadline to exclude yourself is: **May 28, 2013**. To do this, see: www.PaymentCardSettlement.com.
*Important!* If you exclude yourself, do not file a claim form asking for payment.
**Can I exclude myself from the Rule Changes Settlement Class?**
No. You cannot be excluded from the Rule Changes Settlement Class. But you may object to the Rule Changes Settlement, if you want to.

### 14. If I do not exclude myself from the Cash Settlement Class, can I sue these Defendants for damages for past conduct later?

No.  If you do not exclude yourself, you give up your right to sue any of the released parties described in the Class Settlement Agreement for damages for past conduct.

## HOW TO DISAGREE WITH THE SETTLEMENT

### 15. What if I disagree with the settlement?

You may tell the Court you object to (disagree with) the settlement for the Rule Changes Settlement Class. You may also object to the settlement for the Cash Settlement Class if you do not exclude yourself. The Court will consider your objection(s) when it decides whether or not to finally approve the settlement.

**How do I tell the Court I disagree with the settlement?**

You must file a Statement of Objections with the Court at this address:

United States District Court for the Eastern District of New York
Clerk of Court
225 Cadman Plaza
Brooklyn, NY 11201

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Defendants at the following addresses:

| DESIGNATED CLASS COUNSEL | DESIGNATED DEFENDANTS' COUNSEL |
| --- | --- |
| Alexandra S. Bernay<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101 | Wesley R. Powell<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019 |

You must send your Statement of Objections postmarked no later than **May 28, 2013**.

**What should my Statement of Objections say?**

Your Statement of Objections must contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
| --- | --- | --- |
| In re Payment Card Interchange Fee and<br>Merchant Discount Antitrust Litigation | : <br> : <br> : | No. 05-MD-01720 (JG)(JO) |

Statement of Objections

I am a member of the Cash Settlement Class [and/or] the Rule Changes Settlement Class in the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation.*

I am a Class member because [*List information that will prove you are a class member, such as your business name and address, and how long you have accepted Visa or MasterCard cards*].

I object to the settlement in this lawsuit. I object to (*list what part(s) of the Settlement you disagree with, e.g. the settlement for the Cash Settlement Class, Rule Changes Settlement Class, Allocation Plan, notice procedures, other features.*) [Note that you may also object to any requests for attorneys' fees and expenses as part of the same objection, or as part of a separate objection described below].

My reasons for objecting are:

The laws and evidence that support each of my objections are:

My personal information is:

Name (first, middle, last):

Address:

Phone No.:

The contact information for my lawyer (if any) is:

**Can I call the Court or the Judge's office about my objections?**

No. If you have questions, you may visit the website for the settlement or call the Class Administrator:

www.PaymentCardSettlement.com
1-800-625-6440

## 16. Is objecting the same as being excluded?

No. **Objecting** means you tell the Court which part(s) of the settlement you disagree with (including the plan for distributing the cash benefits, request for attorneys' fees and expenses or awards for Class Plaintiffs).

Being excluded (also called opting-out) means you tell the Court you do not want to be part of the Cash Settlement Class (Rule 23(b)(3) Settlement Class).

## THE LAWYERS REPRESENTING YOU

## 17. Who are the lawyers that represent the Classes?

The Court has appointed the lawyers listed below to represent you. These lawyers are called Class Counsel. Many other lawyers have also worked with Class Counsel to represent you in this case. Because you are a class member, you do not have to pay any of these lawyers. They will be paid from the settlement funds.

| | | |
|---|---|---|
| K. Craig Wildfang<br>Robins, Kaplan, Miller & Ciresi L.L.P.<br>2800 LaSalle Plaza<br>800 LaSalle Avenue<br>Minneapolis, MN 55402 | H. Laddie Montague, Jr.<br>Berger & Montague, P.C.<br>1622 Locust Street<br>Philadelphia, PA 19103 | Bonny E. Sweeney<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101 |

**Should I hire my own lawyer?**

You do not have to hire your own lawyer. But you can if you want to, at your own cost.

If you hire your own lawyer to appear in this case, you must tell the Court and send a copy of your notice to Class Counsel at any of the addresses above.

## 18. How much will the lawyers and Class Plaintiffs be paid?

For work done through final approval of the settlement by the district court, the lawyers for the class members (called Class Counsel) will ask the Court for an amount that is a reasonable proportion of the Cash Settlement Fund, not to exceed 11.5% of the Cash Settlement Fund of $6.05 billion and 11.5% of the Interchange Fund estimated to be $1.2 billion to compensate all of the lawyers and their law firms that have worked on the class case. For additional work to administer the settlement, distribute both funds, and through any appeals, Class Counsel may seek reimbursement at their normal hourly rates, not to exceed an additional 1% of the Cash Settlement Fund of $6.05 billion and an additional 1% of the Interchange Fund estimated to be $1.2 billion.

Class Counsel will also request reimbursement of their expenses (not including the administrative costs of settlement or notice), not to exceed $40 million and up to $200,000 per Class Plaintiff in service awards for their efforts on behalf of the classes.

Class Counsel may also seek reimbursement of fees and expenses from class members that opt out of the Cash Settlement Class, to the extent those class members rely on the record compiled in this case. Any monies that Class Counsel successfully recover from opt-outs will be deposited into the Cash Settlement Fund if the Court finally approves the settlement.

The amounts to be awarded as attorneys' fees, reimbursement of expenses, and Class Plaintiffs' Awards **must** be approved by the Court. Class Counsel must file their requests for fees and expenses and other

costs to the Court by April 11, 2013. You can object to the requests for attorneys' fees in compliance with the instructions in Question 19 below.

Copies of the lawyers' requests for payment, reimbursement, and other costs will be posted at the settlement website the same day they are filed, which will be no later than April 11, 2013.

### 19. How do I disagree with the requested attorneys' fees, expenses or awards to Class Plaintiffs?

You may tell the Court you object to (disagree with) any request for attorneys' fees and expenses or awards to Class Plaintiffs. You may do so if you do not exclude yourself from the Cash Settlement Class and/or if you are a member of the Rule Changes Settlement Class. The Court will consider your objection(s) when it evaluates any request for attorneys' fees and expenses and/or awards to Class Plaintiffs in connection with its decision on final approval of the settlement.

To file an objection, you must file a Statement of Objections with the Court at this address:

United States District Court for the Eastern District of New York
Clerk of Court
225 Cadman Plaza
Brooklyn, NY 11201

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Defendants at the following addresses:

| DESIGNATED CLASS COUNSEL | DESIGNATED DEFENDANTS' COUNSEL |
|---|---|
| Alexandra S. Bernay<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101 | Wesley R. Powell<br>Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019 |

The Clerk of Court, the attorneys for the class and defendants must receive your letter by **May 28, 2013**.

**What should my Statement of Objections say?**

Your Statement of Objections must contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| In re Payment Card Interchange Fee and<br>Merchant Discount Antitrust Litigation | : | No. 05-MD-01720 (JG)(JO) |
|---|---|---|
| | : | |
| | : | |

Statement of Objections

I am a member of the Cash Settlement Class [and/or] the Rules Changes Settlement Class in the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

I am a Class member because [*List information that will prove you are a class member, such as your business name and address, and how long you have accepted Visa or MasterCard cards*].

I object to class counsel's request for attorneys' fees and expenses and/or to the request for money awards to Class Plaintiffs.

My reasons for objecting are:

The laws and evidence that support each of my objections are:

My personal information is:

Name (first, middle, last):

Address:

Phone No.:

The contact information for my lawyer (if any) is:

**Can I call the Court or the Judge's office about my objections?**

No. If you have questions, you may visit the website for the settlement or call the Class Administrator:

www.PaymentCardSettlement.com
1-800-625-6440

### THE COURT'S FAIRNESS HEARING

**20. When and where will the Court decide whether to approve the settlement?**

There will be a Fairness Hearing at **10:00 a.m.** on **September 12, 2013**. The hearing will take place at:

United States District Court for the Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

We do not know how long the Court will take to make its decision.

*Important!* The time and date of this hearing may change without additional mailed or published notice. For updated information on the hearing, visit: www.PaymentCardSettlement.com.

**Why is there a hearing?**

The hearing is about whether or not the settlement is fair, adequate, and reasonable.

The Court will consider any objections and listen to class members who have asked to speak at the hearing.

The Court will also decide whether it should give its final approval of the Plaintiffs' requests for attorneys' fees and expenses, service awards, and other costs.

**21. Do I have to come to the hearing to get my money?**

No. You do not have to go to the hearing, even if you sent the Court an objection. But, you can go to the hearing or hire a lawyer to go the hearing if you want to, at your own expense.

**22. What if I want to speak at the hearing?**

You must file a Notice of Intention to Appear with the Court at this address:

United States District Court for the Eastern District of New York
Clerk of Court
225 Cadman Plaza
Brooklyn, NY 11201

Your Notice of Intention to Appear must be filed by **May 28, 2013**. You must also mail a copy of your letter to Class Counsel and Counsel for the Defendants at the addresses listed in Question 15.

**What should my Notice of Intention to Appear say?**

Your Notice of Intention to Appear must be signed and contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation | :   No. 05-MD-01720 (JG)(JO)<br>:<br>:<br>: |

- Notice of Intention to Appear
- I want to speak at the Fairness Hearing for the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,*
- My personal information is:
- Name (first, middle, last):
- Address:
- Phone No.:
- Personal information for other people (including lawyers) who want to speak at the hearing:

## IF YOU DO NOTHING

### 23. What happens if I do nothing?

If you do not file a claim, you cannot get money from this settlement.

If you do not exclude yourself from the Cash Settlement Class (Rule 23(b)(3) Settlement Class), you cannot be part of any other lawsuit against Defendants and other released parties listed in the Class Settlement Agreement for damages for past conduct. You will be bound by the Cash Settlement Class (Rule 23(b)(3) Class) Release.

## GETTING MORE INFORMATION

### 24. How do I get more information?

There are several ways to get more information about the settlement.

You will find the following information at: www.PaymentCardSettlement.com:

- The complete Class Settlement Agreement, including all attachments, and
- Other documents related to this lawsuit.

To receive a copy of the Class Settlement Agreement or other documents related to this lawsuit, you may:

| | |
|---|---|
| Visit: | www.PaymentCardSettlement.com |
| Write to: | Payment Card Interchange Fee Settlement |
| | P.O. Box 2530 |
| | Portland OR 97208-2530 |
| Email: | info@PaymentCardSettlement.com |
| Call: | 1-800-625-6440 – *toll-free* |

If you do not get a Claim Form in the mail or by email, you may download one at: www.PaymentCardSettlement.com, or call: 1-800-625-6440.

**Please do not attempt to contact Judge Gleeson or the Clerk of Court with any questions.**

## THE FULL TEXT OF THE RELEASES

### 25. What is the full text of the Release for the Cash Settlement Class?

31. The "Rule 23(b)(3) Settlement Class Releasing Parties" are the Class Plaintiffs, each and every member of the Rule 23(b)(3) Settlement Class that does not become an Opt Out, and any of their respective past, present, or future: officers and directors; stockholders, agents, employees, legal representatives, partners, and associates (in their capacities as stockholders, agents, employees, legal representatives, partners, and associates of a member of the Rule 23(b)(3) Settlement Class only); and trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns — whether or not they object to this Class Settlement Agreement, and whether or not they make a claim for payment from the Class Settlement Cash Escrow Account(s) or the Class Settlement Interchange Escrow Account(s), whether directly, representatively, derivatively, or in any other capacity.

32. The "Rule 23(b)(3) Settlement Class Released Parties" are all of the following:

(a) Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Asia Pacific Region, Visa Canada Association, Visa Central & Eastern Europe, Middle East & Africa Region, Visa Europe, Visa Europe Limited, Visa Latin America & Caribbean Region, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Visa-Branded Cards or to acquire any Visa-Branded Card transactions.

(b) MasterCard International Incorporated, MasterCard Incorporated, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any MasterCard-Branded Cards or to acquire any MasterCard-Branded Card transactions.

(c) Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; MBNA America Bank, N.A., and FIA Card Services, N.A.

(d) Barclays Bank plc; Barclays Bank Delaware; and Barclays Financial Corp.

(e) Capital One Bank (USA), N.A.; Capital One F.S.B.; and Capital One Financial Corporation.

(f) Chase Bank USA, N.A.; Chase Manhattan Bank USA, N.A.; Chase Paymentech Solutions, LLC; JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; Bank One Corporation; and Bank One Delaware, N.A.

(g) Citibank (South Dakota), N.A.; Citibank N.A.; Citigroup Inc.; and Citicorp.

(h) Fifth Third Bancorp.

(i) First National Bank of Omaha.

(j) HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; and HSBC Bank plc.

(k) National City Corporation and National City Bank of Kentucky.

(l) SunTrust Banks, Inc. and SunTrust Bank.

(m) Texas Independent Bancshares, Inc.

(n) Wachovia Bank, N.A. and Wachovia Corporation.

(o) Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); and Providian Financial Corporation.

(p) Wells Fargo & Company and Wells Fargo Bank, N.A.

(q) Each and every entity or person alleged to be a co-conspirator of any Defendant in any of the Operative Class Complaints or any of the Class Actions.

(r) Each of the past, present, or future member or customer financial institutions of Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Europe, Visa Europe Limited, MasterCard International Incorporated, or MasterCard Incorporated.

(s) For each of the entities or persons in Paragraphs 32(a)-(r) above, each of their respective past, present, and future, direct and indirect, parents (including holding companies), subsidiaries, affiliates, and associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), or any other entity in which more than 50% of the equity interests are held.

(t) For each of the entities or persons in Paragraphs 32(a)-(s) above, each of their respective past, present, and future predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the Defendants to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(3) Settlement Class Released Parties as defined in Paragraphs 32(a)-(s) above).

(u) For each of the entities or persons in Paragraphs 32(a)-(t) above, each of their respective past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, shareholders, advisors, predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of each of the foregoing entities to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(3) Settlement Class Released Parties as defined in Paragraphs 32(a)-(t) above).

33. This release applies solely to the Rule 23(b)(3) Settlement Class Releasing Parties. In addition to the effect of the Class Settlement Order and Final Judgment entered in accordance with this Class Settlement Agreement, including but not limited to any *res judicata* effect, the Rule 23(b)(3) Settlement Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(3) Settlement Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, for damages, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(3) Settlement Class Releasing Party ever had, now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(3) Settlement Class Released Party that are alleged or which could have been alleged from the beginning of time until the date of the Court's entry of the Class Settlement Preliminary Approval Order in any of the Operative Class Complaints or Class Action complaints, or in any amendments to the Operative Class Complaints or Class Action complaints, including but not limited to any claims based on or relating to:

(a) any interchange rules, interchange fees, or interchange rates, or any other Rule of any Visa Defendant or MasterCard Defendant, or any agreement involving any Visa Defendant or any MasterCard Defendant and any other Rule 23(b)(3) Settlement Class Released Party, and/or any merchant arising out of or relating to interchange rules, interchange fees, or interchange rates, card issuance, or card acceptance with respect to any Visa-Branded Card transactions in the United States or any MasterCard-Branded Card transactions in the United States;

(b) any Merchant Fee of any Rule 23(b)(3) Settlement Released Party relating to any Visa-Branded Card transactions in the United States or any MasterCard-Branded Card transactions in the United States;

(c) any actual or alleged "no surcharge" rules, "honor all cards" rules, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules, "anti-steering" rules, Rules that limit merchants in favoring or steering customers to use certain payment systems, "all outlets" rules, "no bypass" rules, or "no multi-issuer" rules, or any other actual or alleged Rule of any Rule 23(b)(3) Settlement Class Released Party relating to any Visa-Branded Cards or any MasterCard-Branded Cards, or a merchant's point of sale practices relating to any Visa-Branded Cards or any MasterCard-Branded Cards;

(d) any actual or alleged agreement (i) between or among any Visa Defendant and any MasterCard Defendant, (ii) between or among any Visa Defendant or MasterCard Defendant and any other Rule 23(b)(3) Settlement Class Released Party or Parties, or (iii) between or among any Visa Defendant, MasterCard Defendant, or any other Rule 23(b)(3) Settlement Class Released Party or Parties relating to conduct or Rules of any Visa Defendant or any MasterCard Defendant;

(e) any reorganization, restructuring, initial or other public offering, or other corporate structuring of any Visa Defendant or MasterCard Defendant;

(f) any service of an employee or agent of any Rule 23(b)(3) Settlement Class Released Party on any board or committee of any Visa Defendant or MasterCard Defendant;

(g) the future effect in the United States of the continued imposition of or adherence to any Rule of any Visa Defendant or MasterCard Defendant in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order,

any Rule modified or to be modified pursuant to this Class Settlement Agreement, or any Rule that is substantially similar to any Rule in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order or any Rule modified or to be modified pursuant to this Class Settlement Agreement;

(h) the future effect in the United States of any conduct of any Rule 23(b)(3) Settlement Class Released Party substantially similar to the conduct of any Rule 23(b)(3) Settlement Class Released Party related to or arising out of interchange rules, interchange fees, or interchange rates, any Rule of any Visa Defendant or MasterCard Defendant modified or to be modified pursuant to this Class Settlement Agreement, any other Rule of any Visa Defendant or any MasterCard Defendant in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, or any Rule substantially similar to any of the foregoing Rules;

(i) any conduct of this Action, including without limitation any settlement discussions relating to this Action, the negotiation of and agreement to this Class Settlement Agreement by the Defendants or any member or customer financial institution of the Visa Defendants or the MasterCard Defendants, or any terms or effect of this Class Settlement Agreement (other than claims to enforce this Class Settlement Agreement), including any changes in the Rule 23(b)(3) Settlement Class Released Parties' Rules as a result of this Class Settlement Agreement;

and it is expressly agreed, for purposes of clarity, without expanding or limiting the foregoing, that any claims based on or relating to (a)-(i) above are claims that were or could have been alleged in this Action.

34. Each Rule 23(b)(3) Settlement Class Releasing Party further expressly and irrevocably waives, and fully, finally, and forever settles and releases, any and all defenses, rights, and benefits that the Rule 23(b)(3) Settlement Class Releasing Party may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in the preceding Paragraphs 31-33. Without limiting the generality of the foregoing, each Rule 23(b)(3) Settlement Class Releasing Party expressly and irrevocably waives and releases any and all defenses, rights, and benefits that the Rule 23(b)(3) Settlement Class Releasing Party might otherwise have in relation to the release by virtue of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction. SECTION 1542 PROVIDES: "CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." In addition, although each Rule 23(b)(3) Settlement Class Releasing Party may hereafter discover facts other than, different from, or in addition to those that it or he or she knows or believes to be true with respect to any claims released in the preceding Paragraphs 31-33, each Rule 23(b)(3) Settlement Class Releasing Party hereby expressly waives, and fully, finally, and forever settles, discharges, and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claims within the scope of the preceding Paragraphs 31-33, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts. Class Plaintiffs acknowledge, and the members of the Rule 23(b)(3) Settlement Class shall be deemed by operation of the Class Settlement Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of this Class Settlement Agreement.

35. Each Rule 23(b)(3) Settlement Class Releasing Party covenants and agrees that it shall not, hereafter, seek to establish, or permit another to act for it in a representative capacity to seek to

establish, liability against any of the Rule 23(b)(3) Settlement Class Released Parties based, in whole or in part, upon any conduct covered by any of the claims released in Paragraphs 31-34 above.

36. For avoidance of doubt, no other provision of this Class Settlement Agreement releases any claim of a Rule 23(b)(3) Settlement Class Releasing Party that is based on:

    (a) breach of this Class Settlement Agreement;

    (b) standard commercial disputes arising in the ordinary course of business under contracts or commercial relations regarding loans, lines of credit, or other related banking or credit relations, individual chargeback disputes, products liability, breach of warranty, misappropriation of cardholder data or invasion of privacy, compliance with technical specifications for a merchant's acceptance of Credit Cards or Debit Cards, and any other dispute arising out of a breach of any contract between any of the Rule 23(b)(3) Settlement Class Releasing Parties and any of the Rule 23(b)(3) Settlement Class Released Parties; provided, however, that Paragraphs 31-35 [of the Class Settlement Agreement] and not this Paragraph shall control in the event that any such claim challenges the legality of interchange rules, interchange rates, or interchange fees, or any other Rule fee, charge, or other conduct covered by any of the claims released in Paragraphs 31-35 above; or

    (c) the claims alleged in the currently operative complaints against the current defendants in (i) *NACS, et al. v. Board of Governors of the Federal Reserve System*, No. 11-CV-02075-RJL (D.D.C.), and (ii) *In re ATM Fee Antitrust Litigation*, No. 04-CV-02676-CRB (N.D. Cal) (including claims that have been asserted to have been alleged in the Second Amended and Third Amended Complaints against Bank of America, N.A.).

37. Each Rule 23(b)(3) Settlement Class Releasing Party further releases each of the Visa Defendants, MasterCard Defendants, and Bank Defendants and their counsel and experts in this Action from any claims relating to the defense of this Action, including the negotiation and terms of this Class Settlement Agreement, except for any claims relating to enforcement of this Class Settlement Agreement. Each Visa Defendant, MasterCard Defendant, and Bank Defendant releases the Class Plaintiffs, the other plaintiffs in the Class Actions, Class Counsel, Class Plaintiffs' other counsel who have participated in any settlement conferences before the Court for a Class Plaintiff that executes this Class Settlement Agreement, and their respective experts in the Class Actions, from any claims relating to their institution or prosecution of the Class Actions, including the negotiation and terms of this Class Settlement Agreement, except for any claims relating to enforcement of this Class Settlement Agreement.

38. In the event that this Class Settlement Agreement is terminated pursuant to Paragraphs 96-98 below, or any condition for the Settlement Final Approval Date is not satisfied, the release and covenant not to sue provisions of Paragraphs 31-37 above shall be null and void and unenforceable.

**26. What is the full text of the Release for the Rule Changes Settlement Class?**

66. The "Rule 23(b)(2) Settlement Class Releasing Parties" are the Class Plaintiffs, each and every member of the Rule 23(b)(2) Settlement Class, and any of their respective past, present, or future: officers and directors; stockholders, agents, employees, legal representatives, partners, and associates (in their capacities as stockholders, agents, employees, legal representatives, partners, and associates of a member of the Rule 23(b)(2) Settlement Class only); and trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns ⸻ whether or not they object to this Class Settlement Agreement, and whether or not they exercise any

benefit provided under the Class Settlement Agreement, whether directly, representatively, derivatively, or in any other capacity.

67. The "Rule 23(b)(2) Settlement Class Released Parties" are all of the following:

(a) Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Asia Pacific Region, Visa Canada Association, Visa Central & Eastern Europe, Middle East & Africa Region, Visa Europe, Visa Europe Limited, Visa Latin America & Caribbean Region, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Visa-Branded Cards or to acquire any Visa-Branded Card transactions.

(b) MasterCard International Incorporated, MasterCard Incorporated, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any MasterCard-Branded Cards or to acquire any MasterCard-Branded Card transactions.

(c) Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; MBNA America Bank, N.A., and FIA Card Services, N.A.

(d) Barclays Bank plc; Barclays Bank Delaware; and Barclays Financial Corp.

(e) Capital One Bank (USA), N.A.; Capital One F.S.B.; and Capital One Financial Corporation.

(f) Chase Bank USA, N.A.; Chase Manhattan Bank USA, N.A.; Chase Paymentech Solutions, LLC; JPMorgan Chase Bank, N.A.; JPMorgan Chase & Co.; Bank One Corporation; and Bank One Delaware, N.A.

(g) Citibank (South Dakota), N.A.; Citibank N.A.; Citigroup Inc.; and Citicorp.

(h) Fifth Third Bancorp.

(i) First National Bank of Omaha.

(j) HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; and HSBC Bank plc.

(k) National City Corporation and National City Bank of Kentucky.

(l) SunTrust Banks, Inc. and SunTrust Bank.

(m) Texas Independent Bancshares, Inc.

(n) Wachovia Bank, N.A. and Wachovia Corporation.

(o) Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); and Providian Financial Corporation.

(p) Wells Fargo & Company and Wells Fargo Bank, N.A.

(q) Each and every entity or person alleged to be a co-conspirator of any Defendant in any of the Operative Class Complaints or any of the Class Actions.

(r). Each of the past, present, or future member or customer financial institutions of Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Europe, Visa Europe Limited, MasterCard International Incorporated, or MasterCard Incorporated.

(s) For each of the entities or persons in Paragraphs 67(a)-(r) above, each of their respective past, present, and future, direct and indirect, parents (including holding companies), subsidiaries, affiliates, and associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), or any other entity in which more than 50% of the equity interests are held.

(t) For each of the entities or persons in Paragraphs 67(a)-(s) above, each of their respective past, present, and future predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the Defendants to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Settlement Class Released Parties as defined in Paragraphs 67(a)-(s) above).

(u) For each of the entities or persons in Paragraphs 67(a)-(t) above, each of their respective past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, shareholders, advisors, predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of each of the foregoing entities to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Settlement Class Released Parties as defined in Paragraphs 67(a)-(t) above).

68. This release applies solely to the Rule 23(b)(2) Settlement Class Releasing Parties. In addition to the effect of the Class Settlement Order and Final Judgment entered in accordance with this Class Settlement Agreement, including but not limited to any *res judicata* effect, the Rule 23(b)(2) Settlement Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(2) Settlement Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, for any form of declaratory, injunctive, or equitable relief, or any damages or other monetary relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order, regardless of when such claims accrue, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Settlement Class Releasing Party now has, or hereafter can, shall, or may in the future have, arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Settlement Class Released Party that are alleged or which could have been alleged from the beginning of time until the date of the Court's entry of the Class Settlement Preliminary Approval Order in any of the Operative Class Complaints or Class Action complaints, or in any amendments to the Operative Class Complaints or Class Action complaints, including but not limited to any claims based on or relating to:

(a) any interchange rules, interchange fees, or interchange rates, or any other Rule of any Visa Defendant or MasterCard Defendant, or any agreement involving any Visa Defendant or any MasterCard Defendant and any other Rule 23(b)(2) Settlement Class Released Party, and/or any merchant arising out of or relating to interchange rules, interchange fees, or interchange rates, card issuance, or card acceptance with respect to any Visa-Branded Card transactions in the United States or any MasterCard-Branded Card transactions in the United States;

(b) any Merchant Fee of any Rule 23(b)(2) Settlement Released Party relating to any Visa-Branded Card transactions in the United States or any MasterCard-Branded Card transactions in the United States;

(c) any actual or alleged "no surcharge" rules, "honor all cards" rules, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules, "anti-steering" rules, Rules that limit merchants in favoring or steering customers to use certain payment systems, "all outlets" rules, "no bypass" rules, or "no multi-issuer" rules, or any other actual or alleged Rule of any Rule 23(b)(2) Settlement Class Released Party relating to any Visa-Branded Cards or any MasterCard-Branded Cards, or a merchant's point of sale practices relating to any Visa-Branded Cards or any MasterCard-Branded Cards;

(d) any actual or alleged agreement (i) between or among any Visa Defendant and any MasterCard Defendant, (ii) between or among any Visa Defendant or MasterCard Defendant and any other Rule 23(b)(2) Settlement Class Released Party or Parties, or (iii) between or among any Visa Defendant, MasterCard Defendant, or any other Rule 23(b)(2) Settlement Class Released Party or Parties relating to conduct or Rules of any Visa Defendant or any MasterCard Defendant;

(e) any reorganization, restructuring, initial or other public offering, or other corporate structuring of any Visa Defendant or MasterCard Defendant;

(f) any service of an employee or agent of any Rule 23(b)(2) Settlement Class Released Party on any board or committee of any Visa Defendant or MasterCard Defendant;

(g) the future effect in the United States of the continued imposition of or adherence to any Rule of any Visa Defendant or MasterCard Defendant in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, any Rule modified or to be modified pursuant to this Class Settlement Agreement, or any Rule that is substantially similar to any Rule in effect in the United States as of the date of the Court's entry of the Class Settlement Preliminary Approval Order or any Rule modified or to be modified pursuant to this Class Settlement Agreement;

(h) the future effect in the United States of any conduct of any Rule 23(b)(2) Settlement Class Released Party substantially similar to the conduct of any Rule 23(b)(2) Settlement Class Released Party related to or arising out of interchange rules, interchange fees, or interchange rates, any Rule of any Visa Defendant or MasterCard Defendant modified or to be modified pursuant to this Class Settlement Agreement, any other Rule of any Visa Defendant or any MasterCard Defendant in effect as of the date of the Court's entry of the Class Settlement Preliminary Approval Order, or any Rule substantially similar to any of the foregoing Rules;

(i) any conduct of this Action, including without limitation any settlement discussions relating to this Action, the negotiation of and agreement to this Class Settlement Agreement by the Defendants or any member or customer financial institution of the Visa Defendants or the MasterCard Defendants, or any terms or effect of this Class Settlement Agreement (other than claims to enforce this Class Settlement Agreement), including any changes in the Rule 23(b)(2) Settlement Class Released Parties' Rules as a result of this Class Settlement Agreement;

and it is expressly agreed, for purposes of clarity, without expanding or limiting the foregoing, that any claims based on or relating to (a)-(i) above are claims that were or could have been alleged in this Action.

Provided, however, that any Opt Out that is also a member of the Rule 23(b)(2) Settlement Class shall not be deemed to have released any claims for damages based on

any Rules or other conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(3) Settlement Class Released Party prior to the date of the Court's entry of the Class Settlement Preliminary Approval Order.

69. Each Rule 23(b)(2) Settlement Class Releasing Party further expressly and irrevocably waives, and fully, finally, and forever settles and releases, any and all defenses, rights, and benefits that the Rule 23(b)(2) Settlement Class Releasing Party may have or that may be derived from the provisions of applicable law, absent such waiver, may limit the extent or effect of the release contained in the preceding Paragraphs 66-68. Without limiting the generality of the foregoing, each Rule 23(b)(2) Settlement Class Releasing Party expressly and irrevocably waives and releases any and all defenses, rights, and benefits that the Rule 23(b)(2) Settlement Class Releasing Party might otherwise have in relation to the release by virtue of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction. SECTION 1542 PROVIDES: "CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." In addition, although each Rule 23(b)(2) Settlement Class Releasing Party may hereafter discover facts other than, different from, or in addition to those that it or he or she knows or believes to be true with respect to any claims released in the preceding Paragraphs 66-68, each Rule 23(b)(2) Settlement Class Releasing Party hereby expressly waives, and fully, finally, and forever settles, discharges, and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claims within the scope of the preceding Paragraphs 66-68, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts. Class Plaintiffs acknowledge, and the members of the Rule 23(b)(2) Settlement Class shall be deemed by operation of the Class Settlement Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of this Class Settlement Agreement.

70. Each Rule 23(b)(2) Settlement Class Releasing Party covenants and agrees that it shall not, hereafter, seek to establish, or permit another to act for it in a representative capacity to seek to establish, liability against any of the Rule 23(b)(2) Settlement Class Released Parties based, in whole or in part, upon any conduct covered by any of the claims released in Paragraphs 66-69 above.

71. For purposes of clarity, it is specifically intended for the release and covenant not to sue provisions of Paragraphs 66-70 above to preclude all members of the Rule 23(b)(2) Settlement Class from seeking or obtaining any form of declaratory, injunctive, or equitable relief, or damages or other monetary relief relating to the period after the date of the Court's entry of the Class Settlement Preliminary Approval Order with respect to any Rule of any Visa Defendant or any MasterCard Defendant, and the compliance by any Bank Defendant with any such Rule, as it is alleged to exist, now exists, may be modified in the manner provided in Paragraphs 40-45 and 53-57 above, or may in the future exist in the same or substantially similar form thereto.

72. For avoidance of doubt, no other provision of this Class Settlement Agreement releases any claim of a Rule 23(b)(2) Settlement Class Releasing Party that is based on:

  (a) breach of this Class Settlement Agreement;

  (b) standard commercial disputes arising in the ordinary course of business under contracts or commercial relations regarding loans, lines of credit, or other related banking or credit relations, individual chargeback disputes, products liability, breach of warranty, misappropriation of cardholder data or invasion of privacy, compliance with technical specifications for a merchant's acceptance of Credit Cards or Debit Cards, and any other

dispute arising out of a breach of any contract between any of the Rule 23(b)(2) Settlement Class Releasing Parties and any of the Rule 23(b)(2) Settlement Class Released Parties; provided, however, that Paragraphs 66-71 above and not this Paragraph shall control in the event that any such claim challenges the legality of interchange rules, interchange rates, or interchange fees, or any other Rule, fee, charge, or other conduct covered by any of the claims released in Paragraphs 66-71 above;

(c) the claims alleged in the currently operative complaints against the current defendants in (i) *NACS, et al. v. Board of Governors of the Federal Reserve System*, No. 11-CV-02075-RJL (D.D.C.), and (ii) *In re ATM Fee Antitrust Litigation*, No. 04-CV-02676-CRB (N.D. Cal) (including claims that have been asserted to have been alleged in the Second Amended or Third Amended Complaints against Bank of America, N.A.); or

(d) a claim seeking only injunctive relief against only the Visa Defendants regarding the legality of Visa's Fixed Acquirer Network Fee.

73. Each Rule 23(b)(2) Settlement Class Releasing Party further releases each of the Visa Defendants, MasterCard Defendants, and Bank Defendants and their counsel and experts in this Action from any claims relating to the defense of this Action, including the negotiation and terms of this Class Settlement Agreement, except for any claims relating to enforcement of this Class Settlement Agreement. Each Visa Defendant, MasterCard Defendant, and Bank Defendant releases the Class Plaintiffs, other plaintiffs in the Class Actions, Class Counsel, Class Plaintiffs' other counsel who have participated in any settlement conferences before the Court for a Class Plaintiff that executes this Class Settlement Agreement, and their respective experts in the Class Actions, from any claims relating to their institution or prosecution of the Class Actions, including the negotiation and terms of this Class Settlement Agreement, except for any claims relating to enforcement of this Class Settlement Agreement.

74. In the event that this Class Settlement Agreement is terminated pursuant to Paragraphs 96-98 below, or any condition for the Settlement Final Approval Date is not satisfied, the release and covenant not to sue provisions of Paragraphs 66-73 above shall be null and void and unenforceable.



US POSTAGE
$ 08.37
Mailed From 78471
05/28/2013
031A 0002313091



CERTIFIED MAIL

7012 1010 0000 2316 9612

SAMUEL & STEIN
38 West 32nd Street, Suite 1110
New York, NY 10001

United States District Court for the
Eastern District of New York
Clerk of Court
225 Cadman Plaza
Brooklyn, NY 11201