# CONSTANTINE | CANNON

**Jeffrey I. Shinder**
Attorney at Law
212-350-2709
jshinder@constantinecannon.com

NEW YORK | WASHINGTON

August 7, 2013

**BY ECF**

The Honorable James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-md-01720(JG)(JO) (E.D.N.Y.)

Dear Judge Orenstein:

    We write on behalf of Objectors to respond to arguments raised by the Individual Plaintiffs' letter dated July 25, 2013, Dkt. No. 5920 ("Arnold Letter"), opposing our request for unredacted copies of expert reports that Settlement Proponents submitted to the Court-appointed expert, Professor Alan O. Sykes. *See* Objectors' Letter dated July 23, 2013, Dkt. No. 5914.[1]

    The Individual Plaintiffs are alone among the Settlement Proponents in their unjustified refusal to provide Objectors with unredacted expert reports they chose to submit to Professor Sykes.[2] As both Class Counsel and Defendants have now agreed to provide unredacted expert reports to Objectors, Settlement Proponents should not be permitted to submit material to Professor Sykes in secret.

    Even though the Individual Plaintiffs are unwilling to provide unredacted copies of their expert reports to the Objectors, they readily admit that this secret material they submitted to Professor Sykes for his consideration is highly relevant to a key question that prompted the Court to appoint Professor Sykes – whether the limited revisions to the surcharging rules in the proposed settlement will provide any meaningful value to merchants. *See* 11/9/12 Prelim. Approval Hearing Tr. at 63-64 (Court states that "You can't all be right about the value of that proposed rules change . . . [and] I am thinking of appointing an expert to advise the Court with regard to that issue; the economic effect of the proposed rules change."); 7/2/13 Order, Dkt. No. 5873 (Court orders that issues for court expert include "the economic value to merchants of the proposed rules changes"). According to Individual Plaintiffs, their "experts have opined that surcharging is an especially valuable tool that merchants can use in the United States, and have used in other jurisdictions" to increase competition and decrease costs. Arnold Letter at 2.

    In choosing to submit their expert reports to Professor Sykes for his consideration, the Individual Plaintiffs are in effect inviting Professor Sykes to rely on such materials in forming

---

[1] The Objectors are the 10 named plaintiffs and 53 absent class members identified in the Objectors' July 23 Letter.

[2] Class Counsel and Defendants agreed to provide Objectors with unredacted expert reports with the exception of material designated by third parties (including Individual Plaintiffs) as Confidential or Highly Confidential. *See* Class Counsel Letter, Dkt. No. 5916; Defendants' Letter, Dkt. No. 5918.

274247.2

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Hon. James Orenstein  
August 7, 2013

Page 2

his opinions on surcharging. Thus, in order to be able to adequately test whatever opinions Professor Sykes reaches about surcharging, Objectors must have access to these materials in advance of the one-week period they will have to respond to any report by Professor Sykes.

The arguments raised by the Individual Plaintiffs should be rejected for the following reasons.

First, submission of redacted materials to Professor Sykes – without revealing them to the Objectors – is improper because it essentially allows *ex parte* communication between Individual Plaintiffs and the court-appointed expert. Such communications are generally prohibited, and here they also conflict with Judge Gleeson's order of appointment. *See* 7/2/13 Order, Dkt. No. 5873 (noting that "all substantive communications between the Court and Dr. Sykes will be a matter of public record"). As one commentator has noted, "ex parte communications between the judge and the expert or between a party and the expert are discouraged." 29 Wright & Miller, Federal Practice and Procedure: Evidence § 6305; *see G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 671 F. Supp. 2d 1203, 1225 (D. Nev. 2009) (collecting cases and noting it is "the practice in federal courts to prohibit ex parte communications between the court appointed expert witness and the parties' counsel").

Second, Individual Plaintiffs' comparison to Objecting Plaintiffs and Objectors' earlier request for documents – and the compromise of that prior request – is a red herring. As the Court is aware, on behalf of Objecting Plaintiffs and Objectors, Constantine Cannon sought "discovery" (Arnold Letter at 1) from no one – only access to the record in MDL 1720 as our clients had when represented by Class Counsel, and in particular, access to unredacted expert reports, depositions of experts, and summary judgment filings, in order to fairly respond to the proposed settlement. In September 2012, in advance of preliminary approval proceedings, Individual Plaintiffs agreed to permit Constantine Cannon to view these materials in their offices in Miami. As the Court acknowledged and all parties made clear, however, the arrangement was "to avoid controversy with both sides reserving their rights . . . ." Arnold Letter at 1; Arnold Letter Ex. 1 at 36 ("No, we are not asking him to promise that he will not come to you for something else. That wouldn't be fair."); *id.* (Court stating, "Why don't you just take that look without prejudicing your right to pursue this motion further"). This protocol was never intended as a substitute for providing complete access to these materials under the Protective Order should that become necessary as the proposed settlement proceeds through the approval process.

Now that the Individual Plaintiffs have decided to submit their unredacted expert reports to Professor Sykes as materials that he should consider in forming his opinions about the proposed settlement, fairness requires that Objectors have access to this material now, in time to meaningfully prepare for the one-week period Objectors will have to submit a response to the court-appointed expert's report. The suggestion that notes taken in a conference room are the functional equivalent of access to reports – for purposes of testing and rebutting conclusions that may be reached in a subsequent expert report – cannot withstand scrutiny. In order to respond effectively to Professor Sykes, the Objectors need to provide these unredacted reports to their experts so that they can evaluate to what extent Professor Sykes relied on such material and whether such reliance was sound. The Objectors and their experts will need the actual reports in

CONSTANTINE | CANNON

NEW YORK | WASHINGTON

Hon. James Orenstein										Page 3
August 7, 2013

hand in order to determine whether they appear to be the basis of any opinions Professor Sykes might reach. The Individual Plaintiffs' admission of the potential relevance of this material, if anything, highlights that Objectors should have access to these materials now.

Third, Individual Plaintiffs' contention that the Objectors are "third parties," Arnold Letter at 1, or "strangers," Arnold Letter Ex. 3, to their cases is without merit – and belied by the admitted relevance of these materials to Professor Sykes's task. Individual Plaintiffs attempt to elide the fact that they were intimately involved in the proposed class settlement – in the words of Mediator Eric Green, the Individual Plaintiffs' supposedly separate deals were "dependent" on the proposed class settlement. Decl. of Eric D. Green ¶ 16, Dkt. No. 2111-3; *see also* Decl. of Hon. Edward A. Infante ¶ 8, Dkt. No. 2111-2; Decl. of K. Craig Wildfang ¶¶ 170, 181, Dkt. No. 2113-6. Yet Individual Plaintiffs – members of the (b)(2) class and excluded from the (b)(3) class – have so far been allowed to settle their claims on confidential terms, in violation of Rule 23(e)(3), and appear to be the only large merchants in the country who support the settlement.

Fourth, the notion that these reports were prepared "at great expense," Arnold Letter at 2, is completely irrelevant. Individual Plaintiffs cite no authority for submitting material under seal solely because it was created "at great expense" – a rationale that would apply to most if not all expert reports in complex cases. Individual Plaintiffs cite to no confidential business information contained within these materials (and they have apparently redacted damages information, *see* Dkt. No. 5888), and any such information could be adequately protected from disclosure by the Protective Order.

Finally, Individual Plaintiffs suggest that they were merely following the Court's order when they submitted their unredacted expert reports to Professor Sykes. Arnold Letter at 1 (citing 7/2/13 Order). However, the Court's subsequent Order of July 16, 2013, made clear that Professor Sykes was "interested in reviewing all filings . . . that address the merits of the proposed settlement" and that any party "may" supply such material or any "economic expert reports." Docket Entry Order dated July 16, 2013. Individual Plaintiffs made the tactical decision to submit these reports to Professor Sykes for his review in order to support a settlement that is uniquely and singularly valuable to them. Simply put, they are Settlement Proponents who have chosen to submit what they consider critical material to Professor Sykes in an effort to ensure that the settlement is approved. Having done that they should be held to the same standard as the other Settlement Proponents, and be required to provide unredacted copies to the Objectors.

Fairness requires that all objectors have access to the materials Settlement Proponents have chosen to provide to Professor Sykes for his consideration. Accordingly, the Objectors respectfully request that the Court order that the Objectors be provided with unredacted copies of the expert reports submitted to Professor Sykes.

						Respectfully submitted,

						/s

						Jeffrey I. Shinder

274247.2