**ROBBINS GELLER RUDMAN & DOWD LLP**

| Atlanta | Melville | San Diego |
| Boca Raton | New York | San Francisco |
| Chicago | Philadelphia | Washington, DC |

August 27, 2013

VIA ECF

The Honorable Judge John Gleeson
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
>        No. 1:05-MD-1720-(JG)(JO)

Dear Judge Gleeson:

Although the motion for final approval of the settlement in this action is still pending, Class Counsel believes it necessary to alert the Court to an issue regarding a plan by a claims-filing company to file claims on behalf of class members who have not contracted with them for such services. Instead, the claims-filing company, Managed Care Advisory Group, Inc. ("MCAG"), has entered into numerous contracts with various merchant processors who in turn are telling their merchant customers that unless they "opt out" MCAG will be filing a claim on their behalf, despite the fact that neither MCAG nor the processor has been given authority by the merchant (the class member and claim holder) and despite the fact that the contracts between the merchant processors and the class members do not – even under the broadest reading of any of the contracts that Class Counsel has reviewed – cover class-action claim filing. At present, Class Counsel understands there are many such partnerships affecting potentially millions of class members.

Moreover, MCAG and the many of the processors with whom MCAG has contracted, plan to charge merchants a flat "settlement administration fee" before the Court may rule on final approval, in addition to taking a cut – up to 25% of a merchant's potential claim in this action. Class Counsel is extremely concerned about this "opt out" proposal and fear that should a settlement be approved, this plan threatens the smooth administration of the settlement and opens the door for significant fraudulent claims as well as needless and duplicative expense to the class.[1] Because many merchants have already been sent information regarding MCAG's "opt-out" plan including material that purports to establish deadlines for action, Class Counsel requests the Court issue the attached Order to protect the class now, even though the final approval to the settlement has not yet been ruled upon by the Court.[2]

---

[1] *See* Declaration of Alexandra S. Bernay in Support of August 27, 2013 Letter Motion ("Bernay Decl."), ¶18.

[2] The All Writs Act, 28 U.S.C. §1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary "to protect the settlement from threats by both parties and non-parties." *In re Visa Check/MasterMoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 U.S. Dist. LEXIS 19755, at *10 (E.D.N.Y. Mar. 31, 2006) (Gleeson, J.) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 336 (2d Cir. 1985)); *see also* Fed. R. Civ. P. 23(d).

**Robbins Geller Rudman & Dowd LLP**

The Honorable Judge John Gleeson
August 27, 2013
Page 2

**Background**

    Class Counsel was alerted to MCAG's "opt-out" plan by a merchant class member who received a notice in a monthly billing statement and questioned the proposal.[3] Based on conversations with executives at MCAG, counsel for MCAG and counsel for various merchant processors, Class Counsel understand that the proposal would work as follows: A statement has appeared or will appear in merchant billing statements telling merchants that MCAG will file a claim on their behalf unless they affirmatively "opt out" of the service. This will cost the merchant between 10% and 25% of the merchant's claim in MDL 1720, depending on the agreement between MCAG and the partner. Additionally, many processors will be billing merchants a "settlement administration" fee that varies. *See* Bernay Decl., Exs. 1-4. MCAG has stated to Class Counsel that if a merchant covered under this plan files their own claim, MCAG will "withdraw" their claim and allow the merchant to recover their entire claim.

**Argument**

    It is unclear to Class Counsel how a company can file a claim on behalf of a class member with whom that company has no relationship, contractual or otherwise. Despite our requests, neither MCAG nor the merchant processors have provided to Class Counsel a legal basis for this "opt-out" process. There has been some reference made to the contracts between the processors and merchants as a source of authority, but no contract for credit-card processing that Class Counsel is aware of contemplates this type of activity. Under this interpretation, the merchant processors could hire a third party to, for example, provide janitorial services and then charge the merchants' account. Class Counsel has explained to MCAG on numerous occasions that without an affirmative step taken by the class member to hire a third-party claims filing company, MCAG's plan is improper.[4]

    It is common practice for a class administrator to allow claims to be filed on behalf of others, but only where there has been a showing of legal authority by the third party.[5] In many cases, third-party claim filing companies contract with class members to take on the task of claims filing in exchange for a percentage of the recovery. In those cases, a signed contract between the class member and claims-filing company exists and can be requested by the administrator to ensure that claims made are not

---

[3]   *See* Bernay Decl., ¶3. There have been numerous calls and letters between Class Counsel, MCAG, MCAG's counsel as well as counsel for several merchant processors. *Id*., ¶4-6.

[4]   Interestingly, in an "opt out" form available online related to MCAG's partnership with Trust One Payment Services, MCAG requires signers to agree that they have the authority to opt out of the service on behalf of the business seeking to remove themselves from MCAG's plan. *See* Bernay Decl., Ex. 2.

[5]   *See, e.g.*, *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *176 (S.D.N.Y. June 29, 2010) ("Legal representatives of claimants must attach power of attorney or other instrument showing authority to act as a legal representative."); *Stoller v. Baldwin-United Corp.*, 650 F. Supp. 341, 353 (S.D. Ohio 1986) ("A Proof of Claim submitted by legal representatives of a claimant must be executed by all such representatives.").

**Robbins Geller Rudman & Dowd LLP**

The Honorable Judge John Gleeson
August 27, 2013
Page 3

fraudulent. In this case, however, there is no relationship between MCAG and the merchant, and, as discussed above, the contract between the merchant and its processor does not provide authority for claims filing.[6] Currently, as part of the Court-approved website, class members can provide the administrator with certain material, including location information, tax identification information and processor details that will be used to assist Epiq in the preparation of claim forms, should the settlement be approved. Many entities have pre-registered, including third-party claims filers. Those entities have all been required to provide Epiq with evidence showing that they are authorized to act on behalf of the merchant for whom they are pre-registering. Bernay Decl., ¶16.

Additionally, although no claims process has been finalized, it is expected that class members will be receiving pre-populated forms that contain sensitive confidential data including tax identification numbers, credit card sales figures and interchange fees paid, among other information.[7] Class Counsel believes most class members would not want this data being shared with entities with whom they have no relationship, even if those merchants were to receive a claim in this case they otherwise would not have filed. The MCAG plan has already caused serious concern among class members. Several class members have contacted Class Counsel and Epiq with concerns about the opt-out plan. *See* Bernay Decl., ¶¶9-11, 13-15.

Another issue relates to administration costs. If the settlement is approved and the claims process begins, Epiq will potentially receive millions of claims. There is an enormous risk, under MCAG's plan, that there will be many thousands, potentially hundreds of thousands, of duplicate claims because many of the merchants for whom MCAG plans to file will not be aware that the company is filing on their behalf and will file claims. While a reconciliation process prior to distribution might be possible as a way to catch some duplicate claims, such a process in no way accounts for the up-front additional and unnecessary costs that could be incurred because of MCAG's proposal.

Merchants – potentially millions of class members – are being signed up for a program and having money deducted from their merchant accounts for a service that they have not sought out and one that has not been approved by the Court, Class Counsel or Epiq as Class Administrator. The MCAG plan sets a dangerous precedent and has the potential to derail the smooth administration of the claims process. For these reasons, Class Counsel respectfully request the Court to enter the attached Order.

---

[6] It is of no moment that many class members for whom MCAG proposes to file claims, would not otherwise file a claim at all, an argument MCAG and its partners have raised. If these claims are to be accepted by the Class Administrator without evidence of legal authority, anyone could file a claim on behalf of any merchant. It is an open invitation for fraud and threatens the smooth administration of the claims process. Maximizing participation rates in the case should not come at the expense of orderly and fair administration. Class Counsel intends for the claims process in this case to be extremely user-friendly, with pre-populated claim forms as well as extensive assistance to be provided by the Class Administrator and Class Counsel. The massive media coverage the case has received will also help boost claims rates, if a settlement is approved. Thus concerns about participation rates, while important, are likely to be minimal here.

[7] Any claims process will also include a requirement that those filing claims have authority to do so.

**Robbins Geller Rudman & Dowd LLP**

The Honorable Judge John Gleeson
August 27, 2013
Page 4

Respectfully submitted,

| */s/ K. Craig Wildfang* | */s/ H. Laddie Montague, Jr.* | */s/ Bonny E. Sweeney* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Bonny E. Sweeney |
| **Robins, Kaplan, Miller & Ciresi L.L.P.** | **Berger & Montague, P.C.** | **Robbins Geller Rudman & Dowd LLP** |

Attachments

cc: All Counsel via ECF
 Mathew Ash (mash@thesba.com)
 Joe Whatley (jwhatley@whatleykallas.com)
 Honora Moore (Honora.Moore@e-hps.com)
 Kristine McAlister Brown (Kristy.brown@alston.com)

868950_1