# CONSTANTINE | CANNON

NEW YORK | WASHINGTON

**Jeffrey I. Shinder**
Attorney at Law
212-350-2709
jshinder@constantinecannon.com

August 30, 2013

**BY ECF**

Hon. John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 05-md-1720

Dear Judge Gleeson:

On behalf of objecting named plaintiffs[1] and certain objecting absent putative class members[2] (collectively "the Objectors"), we write to respectfully request that the Court inspect, pursuant to Fed. R. Civ. P. 23(e)(3), the settlement agreements the Individual Plaintiffs entered into with Defendants, and order their production to the Objectors.[3]

---

[1]  The objecting named plaintiffs represented by Constantine Cannon are Coborn's Incorporated; D'Agostino Supermarkets, Inc.; Jetro Holdings, LLC; Affiliated Foods Midwest Cooperative, Inc.; National Association of Convenience Stores; National Community Pharmacists Association; National Cooperative Grocers Association; National Grocers Association; National Restaurant Association; and NATSO Inc.

[2]  The objecting absent class members that support this motion are 7-Eleven, Inc.; Academy, Ltd. d/b/a Academy Sports + Outdoors; Aldo US Inc. d/b/a Aldo and Call It Spring; Alon USA, LP (Alon Brands); Amazon.com, Inc.; American Eagle Outfitters, Inc.; Barnes & Noble, Inc.; Barnes & Noble College Booksellers, LLC; Best Buy Stores, L.P.; BJ's Wholesale Club, Inc.; The William Carter Company (Carter's); Costco Wholesale Corporation; Crate & Barrel Holdings, Inc.; Darden Restaurants, Inc.; David's Bridal, Inc., DBD Inc. and David's Bridal Canada Inc.; Dick's Sporting Goods, Inc.; Dillard's, Inc.; Family Dollar Stores, Inc.; Foot Locker, Inc.; Gap Inc.; GNC Holdings, Inc. (General Nutrition Corporation); Genesco Inc.; The Gymboree Corporation; HMSHost Corporation; IKEA North America Services, LLC; J. Crew Group, Inc.; Kwik Trip, Inc.; Lowe's Companies, Inc.; Marathon Petroleum LP; Martin's Super Markets, Inc.; Michaels Stores, Inc.; National Railroad Passenger Corporation d/b/a Amtrak; Nike, Inc.; Panda Restaurant Group, Inc.; Panera Bread Company; P.C. Richard & Son, Inc.; PETCO Animal Supplies, Inc.; PetSmart, Inc.; RaceTrac Petroleum, Inc.; Recreational Equipment, Inc. (REI); Retail Industry Leaders Association (RILA); Roundy's Supermarkets, Inc. d/b/a Pick 'N Save, Rainbow, Copps, Metro Market and Mariano's; Sears Holdings Corporation; ShopKo Stores Operating Co. LLC; Speedway LLC; Starbucks Corporation; Stein Mart, Inc.; Thermo Fisher Scientific Inc.; Thornton's Inc.; Wal-Mart Stores, Inc.; The Wendy's Company; The Wet Seal, Inc.; Whole Foods Market, Inc.; and Zappos.com, Inc.

[3]  Counsel for the Objectors would agree to treat the Individual Plaintiffs' settlement agreements as Highly Confidential under the Fourth Amended Protective Order (Dkt. No. 1312-1).  Objectors are seeking disclosure now because Objectors had previously indicated to the Individual Plaintiffs that Objectors would only request disclosure if the Individual Plaintiffs supported the proposed settlement at final approval.  The Individual Plaintiffs neither filed a brief in support of the settlement in April, when Class Plaintiffs and Defendants filed briefs in favor of the settlement, nor did they file a Notice of Intention to Appear at the September hearing by the May 28 deadline.  Instead, they filed a brief on August 16 in support of the settlement, necessitating this motion.

274833.1

Page 2

As the report of Professor Sykes makes clear, the benefits of surcharging are "highly uncertain and may be small" (Sykes Report, Dkt. No. 5965, at 43), and the attempts by Class Counsel to show a potential class-wide benefit are "shaky," "questionable" and not a "serious forecast" that can be relied upon (Sykes Report at 38). Curiously, the Individual Plaintiffs' recent submission in support of the proposed class settlement, shorn of its rhetoric, more or less comes to the same conclusion.

The Individual Plaintiffs acknowledge the impact of the limitations placed on surcharging by the settlement and admit that the practice may not significantly affect the marketplace for years. Moreover, the Individual Plaintiffs make no attempt to explain or defend the release that is objectionable to the vast majority of large merchants (and is highlighted by Professor Sykes). This raises questions as to why they would support a class settlement that they acknowledge will have meager benefits. These questions are exacerbated by their undue involvement in the negotiations that resulted in the proposed class settlement and apparent influence over the deal, factors that were demonstrated by the declaration of mediator Eric Green. This backdrop leads to the conclusion that the Individual Plaintiffs likely received benefits at the expense of the class, including many of their competitors, and the terms of these agreements may reinforce the conclusion that the proposed (b)(2) class is insufficiently cohesive to be certified. *See, e.g.*, *Albertson's Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 464 (10th Cir. 1974) (class certification properly denied where injunctive relief would benefit some class members at the expense of others); Sykes Report at 43 (noting that surcharging may prove to be "uncommon").

For these reasons, we urge the Court to inspect these settlement agreements and produce them to Objectors in advance of the fairness hearing.

**I.    Rule 23 Requires Disclosure of All Related Settlement Agreements**

Fed. R. Civ. P. 23(e)(3)[4] requires the parties seeking approval of a class settlement to submit a statement identifying any agreement made in connection with the settlement, including all agreements and undertakings "that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note. After reviewing the statement identifying these agreements, the court should "decide whether to require specific agreements to be revealed and whether to require filing complete copies or only summaries of the agreements." Manual for Complex Litigation (Fourth) § 21.631. Rule 23(e) aims to "prevent[] private arrangements that may constitute 'sweetheart deals' contrary to the best interests of the class." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 758 (E.D.N.Y. 1984).

Courts regularly examine such side agreements when determining whether to approve a class action settlement. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 204-05 (S.D.N.Y. 2005) (granting preliminary approval after *in camera* review of side agreements among defendants and their insurers); *Columbus Drywall & Insulation v. Masco Corp.*, 258

---

[4] Formerly Fed. R. Civ. P. 23(e)(2).

Page 3

F.R.D. 545, 560 (N.D. Ga. 2007) (granting preliminary approval after *in camera* review of side agreements); *Rowe v. E.I. DuPont de Nemours & Co.*, CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at * 5 (D.N.J. Aug. 26, 2011) (approving class action settlement after *in camera* review of agreements settling class representatives' individual claims). Where such side agreements include benefits that favor certain class members over others, and thereby expose serious conflicts in the proposed settlement classes, they should be disclosed to objectors prior to the fairness hearing.

Review by the Court and disclosure to Objectors of the Individual Plaintiffs' settlement agreements is accordingly warranted here. The Individual Plaintiffs were full participants in the mediation that resulted in the proposed class settlement. Remarkably, even though the Individual Plaintiffs represent their own parochial interests, and not those of the class, it is clear from the Declaration of Eric Green that they attended the key mediation sessions with the Court and the mediators. These included the sessions that preceded and immediately followed the issuance of the mediators' proposals and the session in June 2012 where the process of converting the mediators' proposals into a final settlement was completed. Moreover, the record shows that the Individual Plaintiffs' deals and the class settlement were intertwined. *See, e.g.*, Declaration of Eric D. Green ¶ 16 (Individual Plaintiffs' settlement was "necessarily dependent" on the completion of the proposed class settlement), ¶ 10 (noting the need for a "global settlement" of claims by the Individual Plaintiffs and the class), Dkt. 2111-3; Memorandum of Understanding (stating that the class settlement was expressly contingent upon "the successful negotiation of a settlement agreement between and among the parties to the non-class actions now pending as part of MDL 1720"), Dkt. 1588. Class Counsel has even cited the Individual Plaintiffs' presence in MDL 1720 as a risk factor in support of the fairness of the settlement, as their case and their interests were narrower than that of the class.[5]

The Individual Plaintiffs' substantial and potentially decisive impact on the proposed class settlement is readily apparent from its core terms. The settlement's basic premise – that modifications to the no-surcharge rules will give merchants the ability to discipline Visa's and MasterCard's market power – is derived from the Individual Plaintiffs' case, not the broader case advanced by Class Counsel. In fact, the Individual Plaintiffs readily admit in their Memorandum in Support of the Settlement Reforms that their case was primarily focused on the anti-steering restraints, whereas the class case took on broader questions, such as the legality of the default interchange and Honor All Cards rules, conduct that is not addressed in the class settlement.[6] By all indications, the *class* settlement reflects a deal sought and obtained by the *Individual Plaintiffs*. This is confirmed by the fact that the Individual Plaintiffs participated in the December 2011 multi-day settlement conference with the Court and the mediators (Green Decl. ¶

---

[5] *See* Class Plaintiffs' Reply Memorandum of Law in Further Support of Settlement Final Approval at 13, Dkt. 5939 ("Class Plaintiffs also had to contend with the fact that the companion case litigated by large individual plaintiffs did not challenge the default interchange rule as anticompetitive and did not seek its elimination.").

[6] *See* Individual Plaintiffs' Memorandum in Support of the Settlement Reforms at 4, 10, Dkt. 5934, cited herein as "IP Br.".

Page 4

22) despite having already reached a "tentative settlement" with Defendants in early 2011 (Green Decl. ¶ 16).

      The interdependence of the two settlements – both in the process of negotiation and in the substance of their terms – warrants disclosure of the Individual Plaintiffs' agreements to identify what benefits were conferred upon the Individual Plaintiffs, and assess whether those benefits were gained improperly at the expense of the class. Such benefits also may reveal conflicts – such as if the Individual Plaintiffs relinquished their surcharging rights for benefits – that would support the Objectors' arguments that the proposed Rule 23(b)(2) settlement class lacks cohesion and cannot be certified. The need for such disclosure is readily apparent from the fact that the Individual Plaintiffs have been virtually the only large merchants that have supported the settlement, presumably because of side benefits they have received in their individual deals. Disclosure of these agreements is therefore required for the additional reason of assessing the credibility of the Individual Plaintiffs' arguments in support of the class settlement.

## II. The Individual Plaintiffs' Memorandum in Support of the Settlement Heightens Questions Warranting Disclosure of the Individual Plaintiffs' Settlement Agreements

      The Memorandum in Support of the Settlement Reforms recently filed by the Individual Plaintiffs[7] actually heightens the concern that the Individual Plaintiffs received benefits in their settlement agreements at the expense of the class.

      Strikingly, while the Individual Plaintiffs profess to "support the settlement reforms," they make no attempt to justify the scope of the release, even though they are purportedly bound by it as members of the (b)(2) class. The arguments the Individual Plaintiffs do advance regarding other deficiencies in the settlement, however, warrant disclosure of the Individual Plaintiffs' deals because they raise questions as to how the Individual Plaintiffs could support the settlement at all.

      For example, the Individual Plaintiffs admit that the proposed surcharging relief has been nullified for the vast majority of the class through the Competitive Card Brand limitation. Specifically, they acknowledge that the "merchant restraints by each company have historically supported the effectiveness of the restraints by other 'competitive brands'" and that the "continued presence of the American Express merchant restraints . . . make a slow roll out of the Rules Reforms by merchants a virtual certainty." IP Br. at 2.

---

[7] Unlike Class Counsel and Defendants, the Individual Plaintiffs did not obtain leave of Court to file their Memorandum, which was filed well past the court-ordered deadlines for submissions in support of (or opposing) the class settlement. *See* June 4, 2013 Letter to Judge Gleeson ("The parties to the Settlement Agreement, the Class Plaintiffs and the Defendants, have conferred regarding the date for *them* to submit responses . . . .") (emphasis added), Dkt. 2711. Plaintiffs nevertheless filed their Memorandum without leave, and sent it to Professor Sykes, also without leave, for his consideration in preparing his report. *See* Dkt. 5945.

Page 5

Further, the Individual Plaintiffs concede that it would take "a significant period of time" (IP Br. at 2) for the rules changes to materially improve the market – even if "all" merchant restraints "were completely removed with one bold unequivocal stroke of a pen" (which the class settlement, of course, does not do). American Express's restraints, moreover, might not be eliminated for years, if ever. Yet the Individual Plaintiffs make no attempt to analyze whether there is any chance that the rules changes will have any impact in the marketplace during the limited time they are guaranteed to be in place. Nor do the Individual Plaintiffs have anything to say about the fact that they, like the rest of the (b)(2) class, will be subject to the release after July 2021, when the rules changes sunset. It is puzzling how the Individual Plaintiffs could wholeheartedly support the settlement's reforms without grappling with, let alone attempting to justify, the fact that by the logic of their own arguments, the settlement's proposed rules changes likely will sunset before having any impact on the marketplace.

The Individual Plaintiffs also make a number of unsupported contentions in their brief in an attempt to argue that the class would not prevail on their claims challenging the setting of default interchange rates, notwithstanding the Individual Plaintiffs' concession that their cases merely challenged the networks' anti-steering rules, as opposed to the class's "broader attack on the payment card system." IP Br. at 4. For example, the Individual Plaintiffs make the conclusory assertion that "Visa and MasterCard are no longer bank-controlled entities, but independent companies each looking for merchant payment card volume." IP Br. at 3. Yet the Individual Plaintiffs never litigated this issue, and have no basis to make this claim with any credibility.

Likewise, the Individual Plaintiffs repeatedly note that the Department of Justice has not pursued a case against Visa and MasterCard challenging the setting of default interchange rates or the Honor All Cards Rule. IP Br. at 4-5, 10, 11-12. They assert that there was a "complete rejection" by the Department of Justice of the illegality of these restraints. IP Br. at 5. This is patently false. The DOJ's decision not to pursue the broader restraints raised by the class action should not be misconstrued as the DOJ concluding that such restraints are lawful. In 2010, the Department of Justice entered into a consent decree with Visa and MasterCard regarding their restraints on merchant discounting, and the Antitrust Division's Competitive Impact Statement expressly noted that the United States took *no position* on whether other restraints, such as the default interchange or Honor All Cards rules, violate the antitrust laws. The DOJ also reserved the right to challenge the conduct in the future.[8] This is not unusual, as the DOJ regularly

---

[8] Competitive Impact Statement, *United States v. American Express Co.*, No. 10-cv-4496 (E.D.N.Y), Dkt. No. 5 at 16 n.3 ("The Antitrust Division has investigated a number of Defendants' other merchant rules, including the prohibition on surcharging, that are not challenged in this Complaint. Tunney Act review is limited to the scope of the complaint and the court may not "reach beyond the complaint to evaluate claims that the government did *not* make and to inquire as to why they were not made." *United States v. Microsoft*, 56 F.3d 1448, 1459-60 (D.C. Cir. 1995); *see also infra* § VII, at 20. The proposed Final Judgment contains a clause preserving the rights of the United States and providing that "[n]othing in this Final Judgment shall limit the right of the United States or of the Plaintiff States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule of MasterCard or Visa, including any current Rule and any Rule adopted in the future." Proposed Final Judgment § VIII. At this time, the United States takes no position on whether any Visa or MasterCard rule not challenged in the Complaint is in violation of the antitrust laws.").

274833.1

Page 6

declines to pursue cases that will require significant enforcement resources when private parties are already litigating the issues.[9] That the Individual Plaintiffs would misconstrue the DOJ's actions in this fashion reinforces the concerns raised by their support for the settlement.

At bottom, the Individual Plaintiffs' hollow arguments in support of the class settlement raise a serious question: Why would sophisticated entities that cannot defend the overbroad release support a settlement that, by the logic of their own arguments, will have virtually no impact during the limited period of time it will be in effect? The answer almost certainly lies in their separate settlement agreements, deals which may have been reached at the expense of other merchants, exposing the fundamental infirmities of the proposed b(2) class.

*     *     *

Against this backdrop, we respectfully urge the Court to inspect the Individual Plaintiffs' settlement agreements and produce them to the Objectors.

The terms of the Individual Plaintiffs' agreements will likely cast light on how the proposed class settlement benefits a small handful of large merchants at the expense of their competitors and the vast majority of small merchants in the proposed class. And they almost certainly will explain why the Individual Plaintiffs are the only significant merchants that support a proposed settlement that has been universally panned by merchants large and small, from every segment and region of the country. To that end, the Court may wish to consider the following questions when reviewing the Individual Plaintiffs' settlement agreements:

- Are benefits conferred upon the Individual Plaintiffs that are contingent on approval of the class settlement?
- Are the Individual Plaintiffs required or incentivized by their agreements to support the settlement?
- Did the Individual Plaintiffs trade away or impair their rights to surcharge?
- Conversely, did the Individual Plaintiffs receive the ability to surcharge without the encumbrances imposed on the class as a whole (e.g., the Competitive Card Brand limitation)?
- Are the terms of the Individual Plaintiffs' settlements substantially more favorable to the Individual Plaintiffs vis-à-vis the terms of the class settlement?
- Are the Individual Plaintiffs subject to same release as the (b)(2) settlement class?
- Did the Individual Plaintiffs receive non-financial benefits that provide them with an unfair competitive advantage over the rest of the merchant class?

---

[9] In fact, that is what the DOJ did during the pendency of *In re Visa Check*, where it declined to challenge the Honor All Cards rules because the issue was being addressed through private litigation. That decision said nothing about the merits of that case and the same can be said about the DOJ's decision to not challenge the default interchange rules during the pendency of MDL 1720.

274833.1

Page 7

      These questions are raised by the Individual Plaintiffs' inseparable role in the class settlement process and their vocal support – alone among large merchants – for final approval of the class settlement, from which they appear to have gained special benefit. It would be unfair to consider, let alone credit, the Individual Plaintiffs' perspective, without giving the Objectors the ability to review their arguments in the context of the Individual Plaintiffs' settlement agreements and their impact on the proposed class action settlement.

                                          Respectfully submitted,

                                                          /s

                                          Jeffrey I. Shinder