```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ------------------------------------x
    IN RE PAYMENT CARD INTERCHANGE FEE
3   AND MERCHANT DISCOUNT ANTITRUST
    LITIGATION
4                               MDL No. 1720 (JG)(JO)
                                UNITED STATES DISTRICT COURT
5                               BROOKLYN, NEW YORK
    ------------------------------------x
6                               September 12, 2013
                                9:30 A.M.
7

8             TRANSCRIPT OF FAIRNESS HEARING
            BEFORE THE HONORABLE JOHN GLEESON,
9           UNITED STATES DISTRICT COURT JUDGE

10

11          A P P E A R A N C E S:

12
    ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
13  2800 LaSalle Plaza
    800 LaSalle Avenue
14  Minneapolis, MN 55402-2015
    BY:  K. CRAIG WILDFANG, ESQ.
15
    BERGER & MONTAGUE, P.C.
16  1622 Locust Street
    Philadelphia, PA 19103
17  BY:  MICHAEL J. KANE, ESQ.
         H. LADDIE MONTAGUE,JR., ESQ.
18       BART D. COHEN, ESQ.'s

19  ROBBINS GELLER RUDMAN & DOWD LLP
    655 W Broadway, Suite 1900
20  San Diego, CA 92101
    BY: BONNY E. SWEENEY, ESQ.
21
    BEGER & MONTAGUE, P.C.
22  1622 Locust Street
    Philadelphia, PA 19103
23  BY: MERRILL DAVIDOFF, ESQ.
        MICHAEL J. KANE, ESQ.
24      BART D. COHEN, ESQ.

25
```

```
 1   APPEARANCES CONT'D:
     Coughlin Stoia Geller Rudman & Robbins LLP
 2   655 West Broadway
     Suite 1900
 3   San Diego, CA 92101
     BY: PATRICK J. COUGHLIN, ESQ.
 4       ALEXNDRA S. BERNAY, ESQ.

 5   FRIEDMAN LAW GROUP LLP
     270 Lafayette St.
 6   Suite 1410
     New York, NY 10012
 7   BY: MR. GARY B. FRIEDMAN, ESQ.

 8   KENNY NACHWALTER, P.A.
     201 S Biscayne Boulevard
 9   Suite 1100
     Miami, FL 33131
10   BY:  WILLIAM J. BLECHMAN, ESQ.

11   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
     2001 K Street, N.W.
12   Washington, DC 20006
     BY:  KENNETH A. GALLO, ESQ.
13       GARY R. CARNEY, ESQ.

14   WILLKIE FARR & GALLAGHER LLP
     787 Seventh Avenue
15   New York, NY 10019
     BY:  WESLEY R. POWELL, ESQ.
16
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
17   Four Times Square
     New York, NY 10036
18   BY:  PETER E. GREENE, ESQ.

19

20   MORRISON & FOERSTER
     1290 Avenue of the Americas
21   New York, NY 10104
     BY:  MARK P. LADNER, ESQ.

22

23   PATTERSON, BELKNAP, WEBB & TYLER, LLP
     1133 Avenue of the Americas
24   New York, NY 10036
     BY:  ROBERT LoBUE, ESQ.

25
```

```
 1   APPEARANCES CONT'D:

 2   ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
     2800 La Salle Plaza
 3   800 La Salle Avenue
     Minneapolis, MN 55402
 4   BY: THOMAS UNDLIN, ESQ.
         RYAN W. MARTH, ESQ.
 5
     FREEDMAN BOYD DANIELS HOLLANDER GOLDBERG & CLINE, P.A.
 6   P.O. Box 25326
     20 First Plaza, Suite 700
 7   Albuquerque, NM 87102
     BY: JOSEPH GOLDBERG, ESQ.
 8
     HULETT HARPER STEWART, LLP
 9   550 West C Street
     Suite 1600
10   San Diego, CA 92101
     BY: DENNIS STEWART, ESQ.
11

12   CONSTANTINE CANNON, LLP
     335 Madison Avenue, 9th Floor
13   New York, NY 10017
     BY:  JEFFREY ISAAC SHINDER, ESQ.
14       GARY J. MALONE, ESQ.
         ADAM OWEN GLIST, ESQ.
15
     ROBBINS GELLER RUDMAN & DOWD LLP
16   655 W Broadway, Suite 1900
     San Diego, CA 92101
17   BY:  BONNY E. SWEENEY, ESQ.

18   QUINN EMANUEL URQUHART & SULLIVAN
     51 Madison Avenue
19   22nd floor
     New York, NY 10010
20   BY:  STEPHEN NEUWIRTH, ESQ.

21   VORYS, SATER, SEYMOUR AND PEASE, LLP
     52 East Gay Street
22   Columbus, OH 43215
     BY:  MICHAEL CANTER, ESQ.
23

24

25
```

```
 1   APPEARNACES CONT'D:

 2   Emery, Celli, Brinckerhoff & Abady LLP
     75 Rockefeller Plaza
 3   20th Floor
     New York, NY 10019
 4   BY:  ANDREW G. CELLI, JR., ESQ.

 5   SCHLAM, STONE & DOLAN, LLP
     26 Broadway
 6   19th floor
     New York, NY 10004
 7   BY:  ROBERT BEGLEITER, ESQ.

 8   PERKINS COIE, LLP
     Four Embarcadero Center, Suite 2400
 9   San Francisco, CA 94111
     BY:  JASON YURASEK, ESQ.
10
     BOIES, SCHILLER & FLEXNER, LLP
11   575 Lexington Avenue
     Seventh Floor
12   New York, NY 10022
     BY: PHILIP C. KOROLOGOS, ESQ.
13
     KIRKLAND & ELLIS
14   601 Lexington Avenue
     New York, NY 10022
15   BY:  JENNIFER SELENDY, ESQ.

16   VORYS, SATER, SEYMOUR AND PEASE, LLP
     52 E Gay Street
17   Columbus, OH 43215
     BY:  ROBERT WEBNER, ESQ.
18
     MILLER & CHEVALIER CHARTERED
19   655 Fifteenth St Nw
     Suite 900
20   Washington, DC 20005
     BY:  ADAM FEINBERG, ESQ.
21
     THE LAW OFFICES OF JOHN J. PENTZ
22   19 Widow Rites Lane
     Sudbury, MA 01776
23   BY:  JOHN J. PENTZ, ESQ.

24

25
```

```
 1   APPEARANCES CONT'D:

 2   LAW OFFICES OF EDWARD F. SIEGEL
     705 S Alton Way #1c
 3   Denver, CO 80247
     BY:  EDWARD F. SIEGEL, ESQ.
 4
     JOSHUA R. FURMAN LAW CORP.
 5   15260 Ventura Blvd, Suite 2250
     Sherman Oaks, CA 91403
 6   BY:  JOSHUA R. FURMAN, ESQ.

 7   THRASH LAW FIRM, P.A.
     1101 Garland Street
 8   Little Rock, AR 72201
     BY:  THOMAS P. THRASH, ESQ.
 9
     OHIO ATTORNEY GENERAL MIKE DeWINE
10   ANTITRUST
     150 E. Gay Street - 23rd Floor
11   Columbus, OH 43215
     BY:  MITCHELL L. GENTILE, ESQ.
12
     FOX ROTHSCHILD, LLP
13   100 Park Avenue, Suite 1500
     New York, NY 10017
14   BY:  OKSANA G. WRIGHT, ESQ.

15   MILLER & CHEVALIER CHARTERED
     655 Fifteenth Street, N.W., Suite 900
16   Washington, D.C. 20005-5701
     BY:  ADAM P. FEINBERG, ESQ.
17
     STATE OF CALIFORNIA DEPARTMENT OF JUSTICE
18   OFFICE OF THE ATTORNEY GENERAL
     455 Golden Gate Avenue, Suite 11000
19   San Francisco, CA 94102-7004
     BY:  PAUL A. MOORE, III
20
     ALSO PRESENT:  MICHAEL A. COOK
21                  HENRY OGDEN ARMOUR, Ph.D
                    CHRIS MEYER
22                  FTEMA RAYSOR

23

24

25
```

```
 1   Court Reporter:
     Charisse Kitt, CRI, CSR, RPR, FCRR
 2   225 Cadman Plaza East, Room N357
     Brooklyn, New York  11201
 3   Tel: (718) 613-2606 Fax: (718) 613-2696

 4

 5   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
 6

 7

 8                        **********

 9            (In open court.)

10            THE COURT:  Okay, welcome.  This is the fairness

11   hearing, as everyone knows, in connection with the proposed

12   settlement.  It's actually specifically in connection with the

13   motion for final approval of the settlement agreement.

14            In Re:  Payment Card Interchange Fee and Merchant

15   Discount Antitrust Litigation.

16            I allocated time in my September 4th order, but I

17   gave plaintiffs the right to re-allocate the time I gave to

18   them.

19            Mr. Wildfang, what's your pleasure in that regard?

20            MR. WILDFANG:  Your Honor, we have not re-allocated.

21   I will be starting this morning and speaking for the class.  I

22   will take about 40 minutes.  The defendants have asked for 15

23   minutes, and Mr. Arnold will speak for five minutes.

24            THE COURT:  All right.  Welcome, objectors.  I

25   directed Mr. Shinder to allocate the time.  Where is
```

Proceedings

1    Mr. Shinder?

2              MR. SHINDER:  Here, your Honor.

3              THE COURT:  A lesser judge would feel guilty about

4    giving you that task -- I don't.  I am grateful to you for the

5    efforts you've undertaken.

6              Let me say this to the folks who gave timely notice

7    that they wanted to speak.  If you're not already on the list

8    to speak, whether you're here in the courtroom or in the

9    central jury or in one of the overflow courtrooms, listen to

10   the arguments.  We're going to have substantial objectors'

11   arguments, even before the lunch break.  Listen to them.  Most

12   important, be merciful to me.  You know, if the points you

13   want to make is covered by another objector, it may well be

14   unnecessary for you to address the court.

15             If you still want to be heard, what I'm going to do

16   is have Natasha Merle, my law clerk, who is seated here, she's

17   going to go to the central jury room at 1 o'clock.  And any

18   objector who made a timely notice of an intention to address

19   the court, I want them to speak to Natasha.  I'm going to do

20   everything I can in my power to hear from everyone.  There's

21   still a little time left on the back end of this schedule

22   provided by Mr. Shinder.

23             As I said, I'm going to do everything I can to be

24   fair, to hear from everyone who wants to be heard, and we'll

25   endeavor to do that by the end of the day.  Worst case

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing – Mr. Wildfang

1  scenario, people who can't be heard orally that absolutely

2  feel the need to be heard, I'll keep the record open and allow

3  a submission, a post-hearing submission for any such objector.

4          All right.  No food in the courtroom.  We're going

5  to break at 12:30 for a related matter, a matter here in

6  court.  So I'm going to keep working.  People who are here are

7  welcome to stay here, but be respectful, be quiet.  You want

8  to have a conversation, take it outside.

9          We'll break from one to two for lunch, and we'll

10 take some reasonable breaks between arguments as we proceed.

11         All right, that's the deal.  Mr. Wildfang, we're

12 going to push you like Eileen just pushed me.  And thanks to

13 Eileen for all her work in making this orderly.  And to the

14 marshal service who have done such a great job with the

15 logistics.

16         But we're going to push you to speak into that mike.

17 In fact, maybe you can take that mike and put it down on the

18 shelf there, get it closer to you, so that people can hear.

19         All right, go ahead.

20         MR. WILDFANG:  Your Honor, just one logistic issue

21 that I should have said when I stood up.  The class intends to

22 limit our affirmative argument this morning to just the final

23 approval motion.  We have motions for attorneys' fees and

24 expenses, and other related matters that we would cover this

25 afternoon, if that's okay with your Honor.

Fairness Hearing – Mr. Wildfang

1          If you want to hear something this morning, we
2   can --
3          THE COURT:  No, that's fine with me.
4          MR. WILDFANG:  Good morning, your Honor.  Craig
5   Wildfang on behalf of the class.
6          We are here this morning.  It's my pleasure to be
7   here this morning in a fairness hearing, on the final approval
8   motion brought by class plaintiffs.
9          The first action that ended up as part of MDL1720
10  was filed in June of 2005.  I think I billed my first hour to
11  the file in September of 2004.  A lot of water has gone under
12  the bridge since then.
13         After the first case was filed there were many other
14  cases filed, and they all ended up here with your Honor.  And
15  so we are here, eight years later, prepared to persuade the
16  court that this settlement is appropriate for final approval.
17  Although a settlement has been received differently by various
18  groups, there are some things that are certain.
19         First, the cash portion of the settlement is by far
20  the largest ever antitrust class action settlement in the
21  history of the United States' antitrust laws.  Just the
22  existence of this litigation has led to dramatic changes in
23  the structure of the payment card industry.  Most importantly,
24  the reluctant, the divestiture by the banks of their ownership
25  of Visa and MasterCard.

1          I venture to say that if the divestiture had been

2     obtained via settlement rather than by a threat of litigation,

3     that we might have had fewer objections.  But it was an

4     important structural change in the industry that we think in

5     the long run will accrue to the benefits of merchants.

6          And as any experienced lawyer knows, the chances of

7     obtaining an order from your Honor to force the vesture of a

8     unitary company is virtually unheard of.

9          Now, this was not all the inevitable outcome of

10    these actions when we filed them in 2005.  It was achieved

11    only over the opposition of the defendants and only through

12    the persistent efforts of class counsel.

13         The settlement itself is the result of over four

14    years of mediation with two of the most preeminent mediators

15    in the country.  We've had dozens of sessions.  And there were

16    several times when it appeared that the settlement discussions

17    would go off the rails.  But the parties persisted, with the

18    help of Professor Green and Judge Infante.

19         We believe the issues have been covered well in the

20    briefs.  So I will not try to comprehensively cover the issues

21    this morning.  We believe the class has demonstrated in our

22    submissions that the settlement meets all the Grinnell

23    factors, and those factors point conclusively to final

24    approval, we believe.

25         So I'm going to talk this morning about three

Fairness Hearing - Mr. Wildfang

1   issues:  The first is what the Grinnell court called the most

2   important question, and that is:  Comparing the strengths and

3   weaknesses of the class case against the value of the

4   settlement to the class.  Then I will turn to the Grinnell

5   factor that the objectors want the court to focus on, which is

6   the reaction of the class.

7           And the last topic I intend to discuss this morning

8   is the issue related to the B2 class, and the claim that the

9   use of the B2 class -- in this instance, with no right of opt

10  out -- violates the due process clause.

11          As I will explain, the objectors' argument with

12  respect to B2 is effectively an argument that B2 is on its

13  face unconstitutional.  Because every injunction has features

14  like this injunction under which persons who are the

15  beneficiaries of the injunction release claims for possible

16  future harm, but that is not a basis for challenging the

17  (b)(2) class as unconstitutional.  Rather it is an argument

18  that the settlement should not be approved because they think

19  it doesn't go far enough.  And I will get to that in a little

20  bit.

21          Before I start the substance of my argument, I'd

22  like to step back a bit.  I've given your Honor a notebook.

23  If you turn to tab one.  And we have a fancy board for you to

24  look at, too.

25          Your Honor, when these cases began in June of 2005,

Fairness Hearing – Mr. Wildfang

1        the markets –– the payment card markets ––

2                THE COURT:  Excuse me for interrupting.  The

3        opponents have a copy of what you're showing?

4                MR. WILDFANG:  Yes.

5                THE COURT:  Objectors, excuse me.

6                MR. WILDFANG:  In June of 2005 the payment card

7        markets had survived a series of litigations, including one

8        supervised by your Honor.  There had been actually 30 years of

9        litigation, starting with the NaBanCo case back in the '80s.

10       There were challenges by competitors, by merchants, by the

11       Department of Justice.

12               But in June of 2005 the networks had survived all of

13       that, virtually unscathed with very little change in their

14       structure, other than the change that was the result of the

15       Visa check settlement and the change that was as a result of

16       the Department of Justice investigation.

17               But the banks still owned and controlled both

18       networks.  The networks were completely dominated by the big

19       banks and the networks served the purpose of the banks.  They

20       both had adopted, at the urging of the banks, and interchange

21       centric business model designed to serve the bank's interest.

22               So against this backdrop, if you look at tab one,

23       here are the things that have changed in the market since we

24       filed this case.  Actually, since the Visa Check settlement.

25       The Honor–All–Card rule was modified by the Visa Check

Fairness Hearing - Mr. Wildfang

1  settlement to untie the link between credit and debit.

2         Actually, as on the side, your Honor, I find it

3  curious that the objectors are now opposing as relief that the

4  Honor-All-Cards rule be abolished because the current version

5  of the rule is really a product of the Visa Check settlement.

6         Visa and MasterCard were consortiums of competitors,

7  as held by the Second Circuit.  That ended beginning in 2006,

8  with a MasterCard IPO.  And they are now publicly traded

9  companies with no role for the banks in the governance of the

10  companies.

11         In fact, back in 2005 the government had lost its

12  claim that dual governance violated the antitrust laws.  And

13  so there was still a substantial overlap among the big banks

14  in running both networks.  Although that was in the process of

15  evolving away, it was still true in June of '05.  The

16  Interchange Fees and Merchant rules were set by a majority

17  vote of the banks.  Now we have independent companies with

18  public directors who have different motivations than the banks

19  do, with respect to the running of those network businesses.

20         Visa was in the process, in 2005, of converging

21  their debit fees, so that -- to remove the incentive for

22  merchants to prefer a pin debit over a signature debit.  They

23  were trying to get the rates together.  Higher for pin,

24  slightly lower for signature.  Due to the act of Congress that

25  is no longer happening.

Fairness Hearing - Mr. Wildfang

1          Merchants can now set minimum credit card

2    transaction amounts.  They can discount a point of sale when

3    they could not before.  Merchants today can make

4    banner-by-banner decisions with respect to whether they want

5    to accept Visa or MasterCard.

6          Merchants have the freedom to surcharge, as

7    described in the settlement agreement.  And we are hopeful

8    that that freedom will be expanded by the government winning

9    its case against American Express.

10          And finally, given the history of the networks

11    refusing to negotiate with groups of merchants, the settlement

12    agreement provides that the networks have to negotiate in good

13    faith with buying groups.

14          So with that background, let me turn to the first

15    issue, which is the most important factor under Grinnell.

16    Which is the weighing the strength and weaknesses of the case

17    versus the value.

18          So let me start with Professor Sykes' assessment.

19    And your Honor, I know, has read thoroughly the Sykes' report

20    and responses to that.  I'm sure it did not escape your

21    attention that the parties disagree a little bit with

22    Processer Sykes, the class does.  Although I think he did an

23    admirable job.

24          But if you look at Professor Sykes' assessment, he

25    seems to think that the class had a reasonable prospect of

Fairness Hearing - Mr. Wildfang

1   proving the relevant market and market power.  He was

2   sceptical of our ability to prove that the default interchange

3   rule was unbalanced and uncompetitive, as was the

4   Honor-All-Cards rule.

5          He seemed less sceptical of our claims with respect

6   to the other rules that we've challenged that are now resolved

7   by the settlement.  He was quite skeptical of our ability to

8   prove damages.  Again, we don't necessarily agree with these,

9   but that was his view.

10         And it's interesting that one of the risks that the

11  class faced was the complexity of the case.  And if we were

12  unable to persuade Professor Sykes, given his education and

13  experience of the merits of our claim, one has to wonder

14  whether we would have persuaded your Honor or a jury of these.

15         So even though we disagree with Professor Sykes, the

16  fact that he came to the judgments that he came to, itself

17  shows the risk the class faced.  Professor Sykes was sceptical

18  about injunctive relief.  He was worried about unintended

19  consequences, as I'm sure your Honor would be, if we were

20  trying the case to your Honor for injunctive relief.

21         He was very sceptical that we were -- had any chance

22  at all, frankly, of getting rid of the default interchange

23  rule or the Honor-All-Cards rule, because he thought that the

24  evidence, at least as he read it, showed that those were

25  pro-competitive, not anticompetitive features.

Fairness Hearing - Mr. Wildfang

1          So that's sort of an independent assessment of the

2    strengths and weaknesses over the classes case.  But I think

3    it's also relevant what the parties and their counsel came to.

4          The lawyers in this case have litigated this case

5    for going on eight years.  We have looked at, the number

6    varies, but something like 70 million pages of documents.  We

7    took over 400 depositions.  We had many, many expert reports.

8    We argued motions to dismiss and motions for summary judgment.

9          The case was fully developed.  And counsel for the

10   parties independently came to the view that when you're

11   balancing strengths and weaknesses against the value of the

12   settlement, it seemed like a reasonable compromise.

13         In addition, we had the assessment of the mediators,

14   who, although they didn't necessarily express an opinion on

15   the merits of the settlement, certainly I believe were of the

16   view that counsel were diligent in their negotiations and that

17   there were fair grounds for argument on both sides.

18         Now, in addition to just the complexity of the case,

19   among the significant risks that the class faced were the

20   Illinois Brick problem, which has actually in recent times

21   become more of a problem given the development of the case

22   law.  We had the problem of proving that after the IPOs the

23   banks continued to conspire with each other and with Visa and

24   MasterCard.  The restructuring was intended by the banks and

25   the networks to try to insulate them from that liability.  And

Fairness Hearing - Mr. Wildfang

1  your Honor I'm sure will remember the argument on the summary

2  judgment motions, that that was a major point.

3          And then there was the release in the Visa Check

4  case, which I know some of the defendants think is a very good

5  defense.  We didn't, obviously.  But I know some of the

6  defendants thought that that was a winning argument.  All of

7  these things point to the risks that the class faced.

8          Now on the other side, the value of the settlement.

9  Certainly the 7.25 billion is an unprecedented amount of

10  money.  The objectors point out, rightly, that it's a

11  relatively small fraction of all of the interchange fees paid.

12  If you turn to tab two and tab three, your Honor, there are

13  just some measures of the size of the settlement, the cash

14  settlement.  It is true that the 7.5 billion dollars is a

15  relatively small portion of interchange fees that are paid,

16  but it is still an extraordinarily large amount of money.  And

17  I had one of my assistants do some checking to see sort of

18  what kind of ballpark we are playing in.

19          Well, according to my assistant the capitalization

20  of Citigroup, one of the defendants, is only $5.9 billion.

21  The Discover Card was spun off from Morgan Stanley several

22  years ago for something like $5 billion.  So we are talking

23  about an extraordinarily large sum of money.

24          If you look at the comparisons to other settlements

25  at tab two, depending upon whether you measure it against our

Fairness Hearing - Mr. Wildfang

1    expert's primary "but for world" at 2.4 percent or our

2    alternate "but for world" at 9 percent, it's still clearly in

3    the ballpark of other settlements that have been approved by

4    courts.

5            But then of course we got additional relief, we got

6    injunctive relief that is, in our view, going to be of

7    substantial value to merchants.  Probably the first on the

8    list is surcharging.  And I know the objectors have claimed

9    that it's not going to be valuable.  We disagree.  We think

10   that over time merchants will see the benefit of doing that.

11   We know that some merchants are already planning to do that.

12           I noted with interest that virtually all of the

13   major airlines have opted out, because they want more money,

14   but didn't object to the settlement.  And we know of at least

15   one airline that is currently implementing a form of

16   surcharging or discounting, depending on how you look at it.

17           We know from Australia that the airlines were among

18   the first to surcharge.  And the importance of that is that

19   the problem with surcharging, the one that has to be overcome,

20   is 30 years of consumer expectations that credit cards are

21   free.  And it's going to take time to overcome that.

22           I think Mr. Arnold will probably expound on that a

23   little bit.  But the fact that it hasn't happened yet in large

24   numbers is due to the fact that it's a big step for merchants

25   to do this.  They don't know, even as of today, whether this

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

1    is a permanent change or not.  So we think over time it's

2    going to have substantial value to merchants.

3           Dr. Frankel, who has 25 years of experience in

4    evaluating these markets, estimated using very, very

5    conservative assumptions that over the next decade the value

6    of surcharging merchants could be between 22 and $94 billion.

7           Now, as he was careful to point out, that's not a

8    prediction, it's an illustration of what might happen if you

9    make, what we think are reasonable assumptions, conservative

10   assumptions about what might happen in the marketplace.

11          Professor Sykes, while he was concerned that there

12   wasn't, what he thought was a reliable way to make a

13   prediction, nonetheless said that Dr. Frankel was, to use his

14   term broadly, correct in the way that he looked at the

15   potential value of surcharging to merchants.

16          Moreover, some of the problems that objectors have

17   pointed out, and there are problems with the surcharging

18   relief, among them are 11 states, now 12, I guess, that have

19   some form of state statute that on their face appear to

20   restrict the ability of merchants to surcharge.

21          Importantly, in two of those states, two of the

22   larger states there is reason to believe that the statutes

23   don't, in fact, prohibit surcharging.  In New York the state

24   attorney general has taken the position that the statute

25   doesn't prohibit surcharging, it only prohibits surcharging if

Fairness Hearing - Mr. Wildfang

1    it's not disclosed.  And of course our settlement agreement

2    requires disclosing.  And I think most merchants would want to

3    disclose, if they were going to surcharge.

4            In California, California Court of Appeals have

5    adopted a similar interpretation of its statute.  The other

6    state statutes, if not identical word for word, are very, very

7    similar to these two statutes.  We think that there is a

8    reasonable opportunity, reasonable chance that some or all of

9    these state statutes will be similarly construed.  In which

10   case, one of the biggest problems, according to the objectors,

11   will fall away.

12           The other problem that Professor Sykes noted and the

13   objectors have emphasized, is the fact that there are the Amex

14   rules.  Which for merchants that accept Amex are a problem.

15           Now merchants have new choices, though.  If Amex is

16   a small portion of their business and they think the value of

17   surcharging on Visa and MasterCard is sufficient, they might

18   drop Amex.  There are merchants, I have heard, who have

19   considered doing that, where the Amex volume at their

20   particular store is not very great.

21           It gives merchants another lever with both Amex and

22   Visa to talk about surcharging.  To say, well, we're not -- we

23   want a lower rate or we're going to threaten to surcharge.

24           THE COURT:  What about this first mover problem that

25   Professor Sykes alludes to?  I read the, I forgot his name,

Fairness Hearing - Mr. Wildfang

1    the fella from 7-Eleven.  He says 5 percent of their business

2    is Amex.  And he can't realistic -- it doesn't exactly say

3    why.  -- but can't really get rid of Amex even though it's

4    only 5 percent of the business.

5           And then Professor Sykes says that one problem with

6    that is it gets rid of Amex and starts to surcharge Visa and

7    MasterCard, then the customers are going to go to another one

8    who chose not to dump Amex and is not surcharging.

9           Is that what your take on that is, as an impediment

10   to merchants actually using the surcharging that the rules

11   change would give them?

12          MR. WILDFANG:  Your Honor, there is no doubt that

13   there is a first mover issue problem with merchants.  It is a

14   most serious problem for merchants who are in the most highly

15   competitive environments.  And that's why I believe that the

16   fact that the airlines appear to be thinking of being the

17   first movers.  It's important.  Because when consumers start

18   seeing the use of surcharges by big companies like airlines,

19   they're going to be less likely to have that reaction if they

20   see it at other merchants.  So it's going to take time to

21   change those consumer expectations.

22          But one of the reasons class counsel thought now was

23   the time to settle this case, is the sooner you start the

24   process of changing consumer expectations, the sooner you're

25   going to get to the end.  And another five or ten years of

Fairness Hearing - Mr. Wildfang

 1   litigation with the no-surcharge rule in place, it's just

 2   going to delay five or ten years the opportunity to change

 3   those consumer expectations.

 4          And merchants are already exploring options.

 5   There's an affidavit in the record from Discover, who says

 6   that they are being approached by merchants and are being

 7   told:  If you don't give us a better rate, we're going to

 8   start surcharging.

 9          Now, how widespread is that?  I don't know.  But

10   it's going to grow because this is a big issue for merchants.

11   And merchants under the settlement agreement have the ability

12   to ask these things in the marketplace.  They don't have to

13   roll them out in all of their stores at once.  They can see if

14   surcharges seem to work at certain places.  I know one of the

15   class representatives is actively exploring that.

16          So these are things that are going to take time to

17   work themselves out.  But I don't deny that there is a "first

18   mover issue."

19          Now, the objectors say that -- they submit the

20   declaration of Professor Hausman, who says surcharging is bad.

21   Merchants will have their customers leave their stores if

22   they -- if they say they're now going to impose a surcharge.

23          But Professor Hausman's solution is even more

24   draconian, in terms of likely consumer reaction.  He says,

25   repeal the Honor-All-Cards rule.

1          Now, he doesn't actually do an evaluation of whether

2    the Honor-All-Cards rule is, on balance, anticompetitive.  But

3    he says, that's the solution.

4          But as Professor or Dr. Frankel persuasively points

5    out, the consumer reaction to honor -- to refusal to accept a

6    card at all, take the 7-Eleven, for example.  If 7-Eleven

7    refuses to take Amex, that person may walk out of the store.

8    They're less likely to walk out of the store if they're faced

9    with a surcharge --

10          THE COURT:  So is Mr. Arnold going to address the

11    government suit against American Express?

12          MR. WILDFANG:  I think he will.

13          MR. ARNOLD:  Yes, your Honor.

14          MR. WILDFANG:  And with respect to surcharging.  We

15    have in the record, and I think there are some things in the

16    binder that I won't walk you through.  But the fact is that

17    Professor Hausman testified in New Zealand as to the value of

18    surcharging from merchants.  Wal-Mart in Canada testified that

19    surcharging was desirable.  Ikea, a representative of Ikea

20    have similarly testified.  So this recent aversion of

21    surcharging as a form of relief is -- should be questioned, I

22    think.

23          There are other things that are valuable in the

24    settlement, which I know your Honor knows because they're

25    covered in our brief and I won't walk you through them in

1  detail, but there are things such as the group buying

2  provision, which I alluded to earlier.  The National Retail

3  Federation objection goes on at some length about how the

4  networks would never negotiate with them.  And, yet, they now

5  have the ability to negotiate.  But to the best of my

6  knowledge they haven't tried.

7          I personally think that in the long run buying

8  groups are going to be a very useful device, especially for

9  small merchants to get better pricing.  There are economic

10 studies in other markets that show buying groups sometimes

11 have dramatic effects on price.  So that's something we think

12 has great value as well.

13         As I said, I'm not going to go through the other

14 Grinnell factors, but we think they all point to approval.

15         Let me focus a little bit on the fact the objectors

16 point to most, and that is the reaction of the class.

17         The objectors claim that the class is overwhelmingly

18 opposed to the settlement.  But the fact is that only a tiny

19 fraction of the class objected.

20         If you turn to tab seven, your Honor, it's a good

21 old fashion piechart.  And it shows that only .05 percent of

22 merchants objected to the settlement, and over 90 percent of

23 those objectors were on fill-in the blank forms that they got

24 off the internet from some of the websites that your Honor has

25 already determined contain misleading information.  So that's

Fairness Hearing - Mr. Wildfang

1    an extraordinarily small number.

2              Now, the objectors say well, the big merchants all

3    object.  Well, slightly less than 19 percent of transaction

4    volume are merchants who objected.  And I'm not going to tell

5    you, your Honor, that that's insignificant.  But I don't see

6    why the views of Wal-Mart should be worth 10,000 times the

7    views of a small merchant.  I think there are two ways of

8    looking at this.  But certainly the fact that only .05 percent

9    of merchants objected is an indication that the merchant

10   community in general is satisfied with the settlement.

11             Now, I think given the campaign we've seen over the

12   last year, which we believe contained a lot of misinformation,

13   the fact that only a little over 4,000 merchants objected

14   seems to me to indicate that even with that kind of a campaign

15   the vast majority of merchants are satisfied with the

16   settlement.

17             I did a little looking at data from our claims

18   administrator to see what big merchants were doing, saying in

19   the suit.  Of the top 60 opt outs by volume, 27 of them did

20   not object.  I asked for a list of the top 25 convenience

21   store chains.  And of course your Honor knows that the

22   National Association of Convenient Stores was leading the

23   campaign I talked about.  Fifteen of the top 25 convenient

24   stores did not object.

25             THE COURT:  That's by volume?

Fairness Hearing - Mr. Wildfang                26

1        MR. WILDFANG:  Yes.

2        THE COURT:  You mean 15 of the top 25 convenient

3   stores that opted out did not object?

4        MR. WILDFANG:  No, some of those didn't opt out

5   either.

6        THE COURT:  I see.

7        MR. WILDFANG:  Five of the 25 neither objected nor

8   opted out.

9        THE COURT:  Let's go back to the top 60 opt outs by

10  volume.  You said 27 didn't object.  So what accounts for

11  that?

12       MR. WILDFANG:  Well, your Honor --

13       THE COURT:  In your view.

14       MR. WILDFANG:  I'm not sure that one could

15  confidently say that a single inference arises from that.  But

16  I noted that among those 27 are virtually all of the major

17  airlines.

18       And we know from other markets, like Australia and

19  Europe, that airlines are among the early adopters of

20  surcharges.  We know that there is at least one airline in the

21  United States that is already utilizing different prices for

22  debit versus other cards.

23       So I think, at least as to airlines, I think it's a

24  reasonable inference that they're looking forward to using the

25  surcharging tool.  As to others, I don't know.  But it

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing - Mr. Wildfang

1    certainly --

2          THE COURT:  How did the opt outs do in their

3    independent claims against Visa and MasterCard in the Visa

4    Check case?  How did they recover?  Does the record in this

5    case reflect their recoveries compared to what their

6    recoveries would have been had they been class members?

7          MR. WILDFANG:  Your Honor may recall that I

8    represented two of those opt outs.  There were, I believe,

9    only six that filed suit.  I believe that all of the

10   settlement agreements are confidential.  We have them.  They

11   were produced in discovery.

12         If your Honor is interested enough to have us make

13   an in camera submission, we can do that.  I can tell you that

14   they were not -- there wasn't a pot of gold at the end of the

15   rainbow in those cases.

16         So, I'm going through my time quickly.  Let me turn

17   quickly to the question that you asked at preliminary

18   approval.  Why are these big companies objecting?

19         And we think, frankly, your Honor, it's a political

20   agenda, not one that's based on the merits of the lawsuit.

21   And the test for that, I believe, is the fact that they're now

22   saying things inconsistent with what they told Congress.  In

23   your binder there are copies of statements made by

24   representatives of some of the largest objectors saying this

25   is a problem for Congress.  Courts are not particularly well

1    suited to restructure industries.  That's what they told

2    Congress five years ago.  Now they're saying something else.

3            And we know that the first reaction we saw last

4    July, after the settlement agreement was filed, was that

5    Senator Durbin said, Oh, my God.  Now we're not going to be

6    able to do anything in Congress.  And I happen to think that's

7    misguided, but I think that's what's driving a lot of these

8    objectors.

9            Your Honor, let me turn quickly, I think I have

10   about five minutes left.  And that is the issue of

11   Rule 23(b)(2) class and lack of an opt-out feature.

12           If your Honor would turn to tabs 11 and 12 -- I'm

13   sorry, just tab 11.

14           THE COURT:  Okay.

15           MR. WILDFANG:  So these are the advisory committee

16   notes to Rule 23.  And it's interesting that the amendments --

17   the advisory committee notes I think make it crystal clear

18   that we did exactly the right thing in having two separate

19   classes.

20           Now, one of the arguments that the objectors make is

21   that the effect of our injunction doesn't affect every

22   merchant equally.  But that's not what is required.

23           If you look at the highlighted language in the

24   middle of the left-hand column on this, the advisory committee

25   says:  Action or inaction, which is the test for injunctive

Fairness Hearing - Mr. Wildfang

1    relief.  There are class certified action pursuant to

2    injunctive relief.  Action or inaction is directed to a class

3    within the meaning of this subdivision, even if it has taken

4    effect or is threatened only as to one or a few members of the

5    class.  Providing it is based on grounds which have general

6    application of classes.  And that is the fundamental error I

7    think the objectors make.

8            (b)(2) is focused on what is the defendant doing.

9    Is the defendant engaged in a course of conduct that has

10   general application to the class?

11           There can be no dispute that Visa and MasterCard's

12   rules have general applications to the (b)(2) class.  And so

13   that, I think, answers that question.

14           And there is some suggestion in the objectors'

15   briefs, I'm not sure they say it quite this way, but that they

16   read the Dukes case as saying that if you have a class that

17   has both injunctive relief claims and damage claims, that you

18   have to use a (b)(3) class.  That everything has to go into a

19   (b)(3) class.

20           But that is not what the advisory committee says.

21   If you look at the bottom, highlighted on the right-hand

22   column of this it says, If a rule (b)(3) class is certified in

23   conjunction with a (b)(2) class, the (c)(2)(B) notice

24   requirements must be satisfied as to the (b)(3) class.

25           So clearly the advisory committee contemplated

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing - Mr. Wildfang

1   exactly the circumstance we have here, where there is a class

2   that has both injunctive relief and damage claims, they're

3   both settled.  And they are treated differently by being in

4   different classes.  We think, again, that was exactly the

5   right thing to do.

6           Now, the objectors' claim that the effect of the

7   release of the (b)(2) class is to release future damage

8   claims.  But that is not correct.  The purpose of the

9   injunction is to eliminate future harm.

10          Now, the objectors don't agree that we have

11  succeeded in that, but that's a reason for them to object.

12  It's not a reason to not certify a (b)(2) class.  Again, I

13  alluded to this in my opening remarks, your Honor.

14          The objectors' argument, with respect to (b)(2),

15  carried to its logical conclusion would apply equally to a

16  judgment entered by your Honor after a trial, as it does to a

17  settlement.  Settlements are simply a way of avoiding a trial.

18          But the judgments that are entered pursuant to a

19  verdict, or pursuant to a settlement, are the same.  And so

20  where does that leave us?  If the objectors view of (b)(2) is

21  correct, (b)(2) is unconstitutional on its face.

22          Because every injunction -- every request for an

23  injunction on behalf of a class, whether it's resolved by

24  verdict or settlement, is going to have the feature that they

25  complain about in this case.  And that is, some members of the

Fairness Hearing - Mr. Wildfang

1    class are going to be unhappy that the injunction doesn't go

2    far enough.

3           But that's a basis for objecting, not for not

4    certifying a class, your Honor.

5           THE COURT:  But what about the merits of the

6    objection, then, to the release?  It doesn't look to me like

7    you or the defendants are on precisely the same page as to the

8    scope of the release.

9           MR. WILDFANG:  Well, your Honor, I'm not sure we're

10   not on the same page.  We may not be on the same paragraph.

11          I think the answer to the question or the

12   application of the release in the future -- and I should say

13   Mr. Gallo for the defendants is going to address that question

14   shortly.  But the effect of the release on a future claim is

15   highly dependent upon what the claim is, what's it based on,

16   what's the factual predicate for that new claim.

17          THE COURT:  Fair enough.  But it doesn't alter the

18   fact that what we say now matters?

19          MR. WILDFANG:  I wouldn't suggest otherwise, your

20   Honor.  And, you know, the class would have preferred not to

21   give a release at all.  I mean, this was part of the

22   compromise.

23          THE COURT:  I understand that.  If anything has

24   proved true, is that this deal changes.  I mean, it changes so

25   quickly.  Even if we had a legislator that could do what

Fairness Hearing - Mr. Wildfang

1   legislators are supposed to do, it could hardly keep up with
2   this.  And I have a concern.  I think there's a well-grounded
3   concern here that this release places the line of scrimmage in
4   that future dispute as an antitrust claim that's based on the
5   application of these rules to a new technology, places that
6   line of scrimmage in the wrong spot.
7              MR. WILDFANG:  Your Honor, fortunately my time has
8   run out.  So I'm going to let Mr. Gallo answer that question.
9              THE COURT:  I'll give you a couple of minutes.
10             MR. WILDFANG:  I should have seen that one coming.
11             The language of the release was vigorously
12  negotiated.  The class, if we had had our way it would have
13  had fewer words and tried to make it more clear.  I think we
14  may have failed to make it more clear by adding more words.
15  We think that the future line would not apply to, for example,
16  new technology, that because it's a change in the factual
17  predicate.  And case law is crystal clear that -- and courts
18  use the term "identical factual predicate" intentionally. Is
19  it identical or not?
20             THE COURT:  Right.
21             MR. WILDFANG:  And so if there is a, you know, a
22  material change in some factor that affects how a court is
23  going to look at an antitrust claim in the future, if that's a
24  material change, I think that's an argument that is not
25  protected by the release.

Fairness Hearing - Mr. Gallo

```
1              THE COURT:  All right, thank you.

2              Hello, Mr. Gallo.

3              MR. GALLO:  Good morning, your Honor.

4              THE COURT:  How are you?

5              MR. GALLO:  I'm great.  I appreciate the opportunity

6    to be heard.

7              THE COURT:  You're welcome.

8              MR. GALLO:  Your Honor, I am going to go out of

9    order.  I had planned to do three things and do the release

10   last.  So the argument may not be quite as eloquent as I would

11   like it to be.  But given your question, I would like to go to

12   the release issue and I will return to the other two points.

13             This release is designed to end litigation to the

14   full extent of the law.  No more than that and no less than

15   that.  It's necessary to do it.  This industry between the two

16   cases you've handled and NaBaCo has been litigated for 24

17   years over the structure of these very issues.  It's got to

18   come to an end sometime.  This is a social goal.

19             THE COURT:  Is this ever going to come to an end

20   without comprehensive legislature?

21             THE DEFENDANT:  I think it's going to come to an end

22   on these two issues, and that's the point of the release.  So

23   let me describe what the release does, what it doesn't do.

24   And to answer your question, what's the legal framework to

25   determine about future technology, and I'll address future
```

Fairness Hearing - Mr. Gallo

1 technology.

2          The release does one thing that nobody thinks is

3 controversial.  It says:  Any claim that was asserted here or

4 could have been asserted here is released.  No problem with

5 that.

6          Number two, it says:  Claims in the future that

7 arise out of continued adherence to the rules and policies in

8 place as of the time of your preliminary approval order --

9          THE COURT:  Slowdown.

10          MR. GALLO:  Claims in the future that arise out of

11 continued adherence --

12          THE COURT:  Where are you?  What paragraph?

13          MR. GALLO:  It's in either G or H.  I wasn't

14 quoting, I was just paraphrasing.  But it's in paragraph 33G,

15 I think it is.  If I recall correctly.

16          THE COURT:  Okay.  I'm sorry to keep interrupting

17 you.

18          MR. GALLO:  No, that's fine.  No, the concept is --

19 and I wasn't actually trying to quote the language.  But I

20 don't think there's any dispute about the concept.  The

21 concept is that claims in the future that arise out of a

22 defendants' continued adherence to the rules that are in place

23 and the policies that are in place, as of the date of your

24 preliminary approval order, that cannot give rise to a claim

25 in the future.  And we believe that's proper.  And we cited to

Fairness Hearing - Mr. Gallo

1  you the In Re:  Literary case, which was a (b)(3) class, and

2  it did exactly that.  There was a settlement of copyright

3  claims.  There was licensing provisions that were settled.

4          And the court said, licensing, according to those

5  terms in the future, is properly released.  And it said, it's

6  necessary because otherwise the defendant couldn't settle the

7  case, because they would get sued for doing the very thing

8  they just agreed to do as part of the settlement.  That's a

9  (b)(3) class.

10          We cite to you the Madison Square Garden case, an

11  antitrust claim, where the Madison Square Garden brought a

12  case against the NHL.  As part of the settlement the NHL

13  agreed to abide by certain policies.

14          Judge Preska said, a claim based on those same

15  policies in the future is released; otherwise, the NHL

16  couldn't settle a case.  You can't settle.  Say we're going to

17  do X and then get sued on the same thing, or the defendants

18  would have no motivation to settle.  That's an antitrust case.

19  And we cited a (b)(2) case, the Savage case, a district court

20  case that said it's appropriate.

21          (Continued on the next page.)

22

23

24

25

Fairness Hearing - Mr. Gallo

1           MR. GALLO:  And its appropriate where parties seek

2     injunctive relief because, for example, if they seek

3     injunctive relief we agree to an injunction.  If the very next

4     day we can get sued for doing the very thing that we agree to

5     do as part of the settlement then we can't very well settle

6     the case.

7           Now, here's where the rubber meets the road.  What

8     the objectors say is, yes, but there's no limit on this

9     release.  It will go into a perpetuity, it will continue, and

10    cover every rule, for example, they say in the Master Card

11    rule book or cover future technology.  That is wrong.

12          THE COURT:  Why don't we just say that.

13          MR. GALLO:  Well, I think we should say it.  I'm

14    going to say it right now, its wrong.

15          THE COURT:  You need a release.

16          MR. GALLO:  We could put in the release, or your

17    final approval order what I'm about to say which is, the

18    release is limited by the Identical Factual Predicate Doctrine

19    which is the law of the Second Circuit.  Nobody is proposing

20    that the release be construed beyond the Identical Factual

21    Predicate Doctrine which is the law of the Second Circuit.

22          And if it would be useful to put this that into the

23    final approval order, I would have no problem with that.  But

24    we all agree on that, too, by the way.

25          THE COURT:  Its like a Long Arm Statute that says to

Fairness Hearing - Mr. Gallo

1    the extent of the jurisdiction or to the maximum extent

2    permitted by the Due Process Clause.

3            MR. GALLO:  Right.

4            And so, let me put some meat on the bones because

5    its not -- its exactly the right approach to this case because

6    when you've got an industry that's been in litigation for

7    24 years, and defendants that can't settle unless they know

8    what they're settling, we want protection to the full extent

9    of the law.

10           So the Literary Works case and the TBK case, which

11   we cite to you, lay out some of the criteria.  How does a

12   future court know whether something is released or not under

13   the Identical Factual Predicate Test.

14           The court in TBK said you look at the identity and

15   the scope of the issues in the old case and in the new case.

16   You look at the extent to which the issue arose in the prior

17   case or the extent to which similar rights were determined in

18   the prior case.  You look to whether the new claim is

19   reasonably foreseeable.  You look to whether there is an

20   analogous whether the claim is sufficiently analogous to the

21   prior case.

22           So, in this case, the identical factual -- the

23   factual predicate of this case probably could be expressed in

24   different ways, but the way I think about is what was attacked

25   are the rules and policies and conduct of the defendants to

1   the extent they adversely affect merchants that accept

2   Master Card and Visa.

3          Now, you can break that down with a lot of

4   subissues, are All Cards included, the structure of the

5   Association; but in the conceptual sense, the rules, policies,

6   and conduct that adversely affect merchants that accept

7   Master Card and Visa.

8          So the objectors say, they say, "Well that means

9   that every rule in the Master Card rule book is going to be

10  forever subject to antitrust immunity," its not true.

11         If somebody brings a claim and cites a Master Card

12  rule, and a merchant brings a claim, the court that sees that

13  claim is going to apply the principles of TBK and is going to

14  say, "Now, does that claim, does that rule, and does the

15  nature of the claim fall within the factual predicate of the

16  prior case," which was directed at the rules that hurt

17  merchants that accept Master Card and Visa, and maybe you'd go

18  on, tend to increase their prices or does it not?

19         THE COURT:  I understand what you're saying but, you

20  know, I have 8 million merchants out there.  I want to know

21  whether or not in three years people come in and they pay by

22  flashing their phone in front of a reader whether the

23  application of these rules to the new technology is a claim

24  that they want to complain about that's already been released.

25         MR. GALLO:  Let me address that right now.

Fairness Hearing - Mr. Gallo

 1    THE COURT:  Good.  That's why I'm asking.

 2    MR. GALLO:  Its absolutely clear in this record that

 3  right now, and there's been some misstatements in the briefs

 4  with this, candidly, that the Master Card and Visa

 5  Honor-all-Cards Rules apply to both cards but also to other

 6  devices including contact list devices.  There's a lot of

 7  transactions done today without cards.  There's transactions

 8  done with the little the gray fobs that open doors, you do it,

 9  that is applied to the Honor-all-Cards Rule.  Mobile phone

10  transactions are done today, they are governed by the

11  Honor-all-Cards Rule.  A mobile phone transaction, in my

12  judgment, is clearly released.

13    Now, lets go to another example.

14    Lets say that same technology that's in a mobile

15  phone is put in a wrist watch or put into your Google Glasses

16  and somebody brings a case, right?

17    I would say --

18    THE COURT:  These are not Google Glasses let's be

19  clear.

20    MR. GALLO:  I thought they were.

21    I would say that's pretty easily covered by the

22  Identical Factual Predicate Test.  If its the same technology

23  and it just moves from your phone to your wrist then its

24  currently covered by the Honor-all-Cards Rule and a claim has

25  been you brought.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Gallo

1         Now, the hard part is, I can't give you an answer

2    that satisfies every question.  There may be technology in the

3    future that I am incapable of thinking of, I don't know what

4    its going to be.  There may be a new product that actually is

5    really different.  And then a court is going to have to make a

6    judgment, and the Court is going to look at what that new

7    product is and its going to compare it to what the products

8    were that are here today and that's going to be one factor

9    that's going to be considered under the TBK test.

10        THE COURT:  By definition, that escapes release

11   because of the identical factual predicate?

12        MR. GALLO:  I don't think so, your Honor.  I think

13   its more subtle than that.  I think that's why we don't give

14   advisory opinions in courts.  But I think its more subtle than

15   that.

16        On the other hand, what if it was the exact same

17   theory and what if the difference in the product was really

18   quite de minimus and made no difference in the application of

19   the Honor-all-Cards Rule.  I just don't -- I can't answer

20   every question.  What I can say is we have a legal framework

21   that answers these questions and this problem is true in any

22   release and its true in any release that gives peace for

23   current policies and conduct.  Its not unique to this case.

24   And I understand Professor Sykes expressed concern about it as

25   a matter of economics, we don't want to block new products.

Fairness Hearing - Mr. Gallo

 1   But as a matter of law, we have a doctrine that deals with

 2   that and that is the Identical Factual Predicate Test.

 3           And its not going to answer -- I can't answer every

 4   hypothetical, I can't even imagine what the hypotheticals are

 5   going to be five years from now because if you look five years

 6   back, there's things I wouldn't have expected to be able to do

 7   that I'm able to do with new products on the market.  But it

 8   is not as if there's a disagreement about how a court would

 9   analyze the question.  And, therefore, while it is a

10   legitimate question I think the answer is that it's in the

11   existing law.  And the analogous cases will be analyzed, the

12   nature of the claim will be analyzed; whether it could have

13   been brought, how dissimilar is it, was it reasonably

14   foreseeable.  That's the analysis that will go on and those

15   questions will be answered.

16           I will go back to where I was going to start, your

17   Honor, in the time I have remaining.  I only have a couple of

18   minutes but I wanted to make.

19           THE COURT:  This is the elegant part that's coming?

20           MR. GALLO:  I've given up on that.

21           I just wanted to just make two observations about

22   the case.

23           First, that this entire settlement needs to be

24   considered in light of two fundamental points.  And with

25   respect to the objectors don't really come to grips with them.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Gallo

1           The two fundamental points are there's a good chance

2    that the plaintiffs would have lost this case if it continued

3    to get litigated.  And there's a lot of problems with the

4    theories of this case.

5           And the second point is, that we need a release that

6    actually gives peace.  We've been at it 24 years for heaven's

7    sake.  We can't settle this case and then get sued again and

8    the objectors really don't come to grips with that.

9           I mean, for example, on the law, the Target

10   objectors and the National Retail Federation complain about

11   all the problems with the relief but they don't address the

12   merits of the claim and the weaknesses of the claim.

13          Mr. Shinder's brief touches on it with labels that

14   Master Card and Visa price fix doesn't address with really any

15   substance the fact that Master Card and Visa has done the

16   IPOs.  And Default Interchange has been declared legal in the

17   National Bancard Corp. case.  It has been found in the ATM

18   Antitrust Litigation.  It was found that it was necessary.

19   Honor-all-Cards has never been declared illegal.

20          Mr. Shinder, when he was representing the class in

21   front of you, did not challenge Honor-all-Cards and said

22   publicly it was pro-competitive.  He has a different view now

23   that he's representing a lot of merchants.

24          THE COURT:  He's just a mouthpiece.

25          MR. GALLO:   He is a mouthpiece for merchants who

1    are trying to start a competitive network.

2           THE COURT:  He speaks on behalf of clients.

3           MR. GALLO:  Let me direct at his clients.

4           His clients, who are here as merchants, also are

5    trying to start a competitive network and perhaps wouldn't

6    mind if this litigation against Master Card and Visa

7    continued.

8           Last point on the No Surcharge Rule.

9           The objectors made a big point, separate and apart

10   from the specific terms of the No Surcharge Rule here and they

11   go much broader than that.

12          Professor Hausman, on behalf of the objectors, says,

13   "Surcharging doesn't work, it wont reduce prices at the point

14   of sale," that's his point.  It proves too much, your Honor.

15   It proves too much because there are pro-competitive benefits

16   of the No Surcharge Rule it's virtually undisputed that

17   protecting consumer from surprise and gouging is

18   pro-competitive.

19          When the objectors purport to prove that surcharging

20   wont work because it didn't work in Australia, that has

21   nothing to do with this settlement.  Because merchants don't

22   want to do it has nothing to do with the specific terms of

23   this settlement.  Because American Express is out there, or

24   state laws are out there, surcharging isn't going to work.

25   What they are really saying, when you flip it around, is that

Fairness Hearing - Mr. Arnold

1    the No Surcharge Rule has no anticompetitive effect, it

2    doesn't increase prices.

3            And if you say that, then they're not only going to

4    lose on Default Interchange, and they're not going to lose on

5    Honor-all-Cards, they're not even going to get relief on the

6    No Surcharge Rule.  And they don't come to grips on that when

7    they attack the settlement.

8            Thank you, your Honor.

9            THE COURT:  Thank you, Mr. Gallo.

10           Mr. Arnold.  Good morning.

11           MR. ARNOLD:  Good morning.

12           THE COURT:  Welcome back.

13           MR. ARNOLD:  Thank you.  Your Honor, I have asked

14   the class for five minutes to address the Court briefly.  I

15   will also ask for some time this afternoon.

16           THE COURT:  Okay.

17           MR. ARNOLD:  And if I spill over right now I would

18   like to borrow a little of that.

19           We, as you know, our clients support the relief

20   obtained by the class.  We strongly support it.  We believe

21   that it's effective and we believe it's an important and

22   irreplaceable part of the reform of this industry.  But we, in

23   a way, are in a very difficult position because there's

24   opponents here of merchants that my clients have great

25   relationships with.  We respect them for being intelligent,

Fairness Hearing - Mr. Arnold

1   thoughtful, and we have a common goal, that is, we all

2   believe, every merchant in the United States believes, that

3   these fees, these merchant fees, are too high.

4           Virtually every merchant in America believes that

5   these merchant fees are too high because the competitive

6   market forces in the Payment Network System are broken.  And

7   most believe, or many, many of them believe, that it has to be

8   fixed and it needs to be fixed now and it should have been

9   fixed many years ago.

10          Where we have parted company is that my clients

11  believe that what this case can solve the class has solved.

12  But this court doesn't have the jurisdiction to solve the

13  entire problem in the payment, the Network Payment System.

14          Now, obviously, we disagree on this issue, and we've

15  given you the reasons why we support it.  But one of the

16  reasons, and this is something that I've thought about this,

17  and I worried about it a little bit, and how we've become

18  opponents of these people over this issue when we have so much

19  in common.  And what I've concluded is that, number one, is

20  that we, with our clients from the beginning, told them free

21  enterprise has to solve this problem.  The antitrust laws,

22  when that's your avenue of relief, you have to solve to with

23  free supplies, you don't solve to with regulation.

24          Secondly, the theory that we thought would solve it

25  through discovery, through the mouths of Visa and

Fairness Hearing - Mr. Arnold

46

1   Master Card's executives, through the fear that they had over

2   surcharging becoming part of the rules of conduct inside of

3   their industry convinced us that it was right.  And so, when

4   this settlement was done we told you we supported it.

5           Well, the awkward part here is you've asked about

6   the American Express case.  The awkward part is our clients

7   moved forward and challenged American Express on the same

8   theory.  We've been downstairs before another judge for five

9   years.  We've gotten 50 million pages of documents, most of

10  which is after this case.

11          THE COURT:  Is that an indispensable piece?  You say

12  there's only a limit to what one court can do in one case and

13  that's honest.  I'm limited to that's before me.  From fixing

14  those American Express rules that I'm using your perspective

15  on, I don't have a view on it one way or the other; but is

16  that an indispensable component to getting where your clients

17  and the objectors' clients need to get.

18          Is that what you're telling me?

19          MR. ARNOLD:  We obviously believe that, your Honor,

20  that's why we brought the case, that's why we put the effort

21  in.  And what I was getting ready to say is that after having

22  that opportunity, and Mr. Korologos, American Express's

23  lawyer, is sitting back here.  I'm under a strict protective

24  order, I won't violate it, and I'm sure he will stand up if I

25  come close.  But I do want to say that the case against

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Arnold

1   American Express is powerful.  The American Express

2   executives, they studied this issue.  I would put them up as

3   the foremost experts in this whole world on what is the fear

4   from surcharging.  And I am convinced in a multiple of where

5   we were a year ago that this is the problem solver.

6           THE COURT:  "This" meaning surcharging?

7           MR. ARNOLD:  Surcharging.

8           One more quick thing.

9           We've bought the defendants, all of us, every

10  lawyer, every merchant here, has bought the defendants'

11  propaganda.  Surcharging is just a word that they've made up

12  that has to do with unbundled and bundled pricing.

13          It's all about pricing here.  It's the ability to

14  communicate the price signals to people when they come in and

15  use the card.  Discounting, surcharging, there's all types of

16  creative ways to do this more than just adding two percent to

17  a card.  But the key here is the ability to use the pricing

18  mechanism to keep pressure on the pricing of merchant fees in

19  this industry, that's it.

20          Now, I'm not suggesting that this court has to see

21  the files in American Express to approve this because you

22  don't.  I think the record here is sufficient.  But what I

23  would say is that it's strange that with an industry like

24  this, with this issue this big that, there's only three people

25  in this courtroom that know a substantial amount about what

1  surcharging did in Australia.

2          And, by the way, even though some people say

3  Australia is not a good laboratory, once again, I hope I don't

4  violate the protective order, but once again I would, I would

5  yield to the expertise of American Express's executives in

6  their contemporaneous documents when they were examining

7  Australia and worrying about the United States.

8          So, your Honor, if you have any other questions

9  regarding that I'll be happy to answer that.  But, otherwise,

10  I used more than my five minutes.

11          THE COURT:  Thank you Mr. Arnold, I don't have any

12  more questions now.

13          Lets take a five-minute break and well go with the

14  objectors' arguments until 12:45 and well take that other

15  matter a little bit later than scheduled, all right?

16          Take a break and well resume at 10:45.

17          (A recess in the proceedings was taken.)

18          THE COURT:  Everyone please have a seat.  They're

19  having trouble hearing in the overflow so everybody stay close

20  to the mics.

21          Yes, Mr. Arnold.

22          MR. ARNOLD:  Yes, your Honor.

23          On the break -- I just wanted to say one thing on

24  the record -- a number of people told me I answered a question

25  wrong that you asked.  I believe I answered it correctly but

Fairness Hearing - Mr. Shinder

1   we didn't disagree on what they thought I was answering.

2           So, quickly, the relief against American Express we

3   consider is critical.  However, with the level playing field

4   set up the way that it's set up, we think this relief will be

5   effective even in the face of American Express but we intend

6   to win the American Express case.

7           THE COURT:  I understand.

8           MR. ARNOLD:  Okay.

9           THE COURT:  Okay.

10          Mr. Shinder, come on up.  Try to keep your voice up

11  and stay in close proximity to that mic, please.

12          MR. SHINDER:  I will do my best.

13          THE COURT:  Again.  Thank you for being the master

14  ceremonies for the objectors.

15          MR. SHINDER:  Our pleasure, your Honor.

16          Good morning, Jeff Shinder from Constantine Cannon.

17          I'm here on behalf of the ten named plaintiffs that

18  object to the settlement and 53 absent class members.

19          Our group includes some of the world's largest and

20  most sophisticated retailers, regional merchants, and trade

21  associations that represent thousands of small merchants.

22  They are sophisticated and many of them are vigorous

23  competitors.  They disagree on much but today they stand

24  before you united in the perspective regarding the proposed

25  settlement, what it will do to them, and their rights in the

Fairness Hearing - Mr. Shinder

1    instrument.

2           As I speak, merchants across the country are being

3    forced to safe super competitive interchange fees for Visa and

4    Master Card transactions.  They have claims regarding those

5    fees and the manner in which they are fixed by Visa and

6    Master Card and the banks.  Claims which have not been

7    adjudicated in this case.  Claims which the Supreme Court said

8    includes property rights that cannot be taken away from them

9    without their consent.  Yet, the proposed settlement purports

10   to do just that and for relief that our clients consider to be

11   worse than insubstantial.

12          The proposed deal is not only a bad deal, its an

13   unconstitutional deal because it tramples the due process

14   rights of absent class members guaranteed to them by the

15   Constitution and Supreme Court precedent.

16          Now, the serious defects of the proposed settlement

17   are well documented in our briefs.  I will only note today

18   that Dr. Sykes's conclusions regarding Visa and Master Card's

19   market power and meager value of the relief provided for in

20   the settlement mirror exactly what we've been saying all

21   along.

22          Instead, I want to call out the three ways the

23   proposed settlement tramples the individual rights of absent

24   class members.

25          First, it strips them of their individual damages

Fairness Hearing - Mr. Shinder

1    claims and their ability to press such claims in the future.

2              Second, it strips them of their ability to make

3    individual decisions about their rights and thereby avoid

4    being forced into a class action settlement which many of them

5    object to.

6              And third, it strips of them of their ability to

7    bring claims that could not have been brought in this case

8    including future claims.

9              Now, I'm going to address the second and third

10   points.  The first point will be addressed by Mr. Neuwirth who

11   will be following me, counsel for Home Depot.

12             THE COURT:  Okay.

13             MR. SHINDER:  The proposed settlement strips

14   merchants of right to make their own decisions about their

15   individual rights by forcing them into a class action

16   settlement that they object to.  And it does that by proposed

17   mandatory (b)(2) Class which extinguishes their claims,

18   injunctive in damages whether they object to the settlement or

19   not.

20             But the proposed settlement can only do that if the

21   stringent requirements to certify a (b)(2) Class that the

22   Supreme Court set forth mostly in Wal-mart v. Dukes can be

23   satisfied.  And given the balkanized nature of the relief on

24   the table here, this settlement creates conflict that are so

25   stark and so substantial that the cohesion necessary for a

Fairness Hearing - Mr. Shinder

1   (b)(2) Class cannot be found.

2          Now, in Dukes the Supreme Court recognized the

3   (b)(2) Classes's origins in civil rights cases where the class

4   had complete cohesion such that a single injunction could

5   remedy the challenged conduct.

6          The Court held that the, "Key to a (b)(2) Class is

7   the indivisible nature of the injunction or declaratory remedy

8   warranted.  The notion that the conduct is such that it can be

9   enjoined or declared unlawful only as to all of the class

10  members or as to none of them.  And to reaffirm that a

11  mandatory (b)(2) Class can be certified, "only when a single

12  injunction or declaratory judgment would provide relief to

13  each member of the class."

14         The proposed (b)(2) Class falls far short of meeting

15  this exacting standard.  The rule's changes expressly do not

16  apply equally to everyone and they provide relief to almost no

17  one.  It is undisputed, and it wasn't disputed today, that

18  merchants who accept American Express and are, therefore,

19  subject to the competitive card limitations, the so-called

20  "Level the Playing Field Provision."

21         Merchants which account for only 90 percent of the

22  class-wide volume cannot take advantage of the proposed

23  modifications to the surcharging rulings whereas merchants who

24  do not take American Express, and which are not subject to

25  that limitation in theory, can take advantage of the rules

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Shinder

1    changes.

2            That distinction alone should defeat certification

3    of the proposed mandatory (b)(2) Class but there are many more

4    conflicts which show at best that some merchants may get

5    relief whereas the vast majority of the putative class will

6    not.

7            We have merchants that operate in states that

8    prohibit surcharging versus merchants that operate only in

9    state that permit the practice.  We have multi-banner

10   merchants versus the vast majority of the class that operate

11   under a single banner.

12           We have small merchants that may try group

13   purchasing versus merchants who cannot engage in the practice.

14   We have merchants that may have some market power or power

15   over price such as airlines, which may be able to take

16   advantage of the proposed surcharging relief, whereas

17   merchants who operate in more competitive sectors cannot due

18   to the competitive pressure as we discussed earlier today and

19   in a lot of the briefing.

20           We have current merchants versus future merchants

21   and, in particular, merchants that come into being after the

22   relief sunsets in 2021.

23           This class is so vulcanized that it even covers Visa

24   and Master Card's competitors including American Express which

25   openly admits in its papers that its interests are

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Shinder

1    antagonistic with the entirety of the putative class.

2            What this settlement achieves is the polar opposite

3    of cohesion.  The relief is unavailable to pretty much the

4    entire class and there are different injunctions for different

5    merchants based on the cards they accept, the states in which

6    they operate, their size, their strategic importance.

7            Now, counsel for the putative class who bear the

8    burden of showing that this class can be certified against the

9    backdrop of a heightened scrutiny standard asserted none of

10   this matters because the focus should be on defendants'

11   conduct.  And they suggest that the inquiry should be limited

12   to the conduct that was challenged in the case and not examine

13   the settlement terms's impact on the putative class.

14           This ignores the Supreme Court's discussion in

15   AmChem where the Court held that where a settlement class the

16   inquiry must take into account the settlement's impact on the

17   putative class.  And, of course, it ignores Dukes where the

18   Supreme Court said that "for a (b)(2) Class to be cohesive,

19   the conduct in question must be remedied by a single

20   injunction that provides relief to each member of the class."

21   Without that, conflicts arise, individual issues arise, and

22   forcing absent class members into a mandatory class

23   compromises their due process rights.

24           Now, counsel for the putative class also try to

25   paper over these defects with the Frankel declaration's

Fairness Hearing - Mr. Shinder

1    illustration of how surcharging might cause interchange

2    reductions class-wide to the tune of four basis points a year

3    over ten years.  As Dr. Sykes correctly concluded, that

4    illustration is not a serious economic forecast and it is a

5    shaky and questionable basis to conclude that the centerpiece

6    of this deal will have any kind of positive class-wide impact.

7    Without that, as Dr. Sykes concluded, the potential value of

8    the centerpiece relief is, "Highly uncertain and potentially

9    small."

10              Class counsel today did not dispute this conclusion,

11   and in a year after -- in the one year after this settlement

12   has been announced, they have come forward with one example of

13   a merchant that might, an airline, not named, that might take

14   advantage of the surcharging relief.

15              What is certain, your Honor, is pretty much alone

16   amongst the large merchants in this country the only ones that

17   actually support this are the individual plaintiffs who have

18   secret deals which may show how the proposed settlement

19   benefits an isolated group of strategically placed merchants

20   at the expense of their competitors.  A settlement that

21   creates such conflict cannot form the basis of a mandatory

22   (b)(2) Class.

23              At the end of the day, the proponents' arguments in

24   favor of the (b)(2) Class come down to finality, what we heard

25   from Mr. Gallo today.  They claim that allowing opt-outs will

Fairness Hearing - Mr. Shinder

1    undermine the deal, will collaterally attack.  It but as other

2    settlements show, a meaningful deal can be struck which

3    provides absent class members the ability to opt-out and

4    preserve their claims.  Visa Check was such a settlement.

5           A meaningful settlement does not need to deprive

6    absent class members of their due process rights for its very

7    viability.  Trampling due process like this cannot be

8    reconciled with Dukes.  There is not one case that justifies

9    such deprivation of due process in the name of finality.  None

10   of the cases the proponents cite, including the Second

11   Circuit's decision in Literary Works, where opt-out rights

12   were provided support this result.

13          Let me turn to the release and discuss how it

14   impermissibly bars future claims and in doing so threatens to

15   distort the developments of mobile payments and emerging

16   technologies as Dr. Sykes explicitly acknowledged in his

17   report where he states, "A release covering the future effects

18   of all existing or substantially similar conduct or rules

19   raises a danger adverse and unintended consequences in a

20   technologically dynamic industry."

21          Now, to start, the release is contrary to the

22   proponents' claims expressly covered new conduct.  By

23   definition, a substantially similar rule or practice must be

24   something that has not happened yet, that only happens in the

25   future when Visa and Master Card change something that's in

Fairness Hearing - Mr. Shinder

1   place today or a rule or practice.

2          The rule or conduct must be new and releasing such

3   future conduct is impermissible under the Identical Factual

4   Predicate Doctrine.  Such release is void as against public

5   policy.

6          Moreover, though, it is impossible to determine the

7   scope of this aspect of the release.  In assessing that

8   question, your Honor, is worth examining just how difficult it

9   is to define the terms "substantially similar" against the

10  backdrop of the complexity of this industry, Visa and

11  Master Card's vast rule books, and all of the courses of

12  conduct and practices related to those rules that Visa and

13  Master Card claim should be subject to the release.

14         It is so hard to do, the parties didn't even try.

15  The term is not defined in the Settlement Agreement.  And

16  counsel for the putative class's belated attempt to address

17  this in their papers by characterizing "substantially similar"

18  to mean nonmaterial and non-substantive is so superficial that

19  it actually confirms the dangerous imprecision of this

20  inherently forward-looking aspect of the release.

21         This uncertainty highlights the serious due process

22  problems raised by forcing merchants to accept a

23  forward-looking release whose terms and scopes are impossible

24  to define.

25         Contrary to proponents' claim, the release does seek

Fairness Hearing - Mr. Shinder

1    to cover mobile payments and other emerging technologies --

2    something that actually was explicitly confirmed today -- even

3    though there is no credible argument that the predicates of

4    this case cover these technologies.  That is clear for what

5    Mr. Gallo said today where he said mobile transactions are

6    covered.

7              It is also clear from defendants' attempt to extend

8    the release to cover their entire rule books including any

9    claim that relates in any way to the Honor-all-Cards rules.

10   It is also clear from the fact that the Settlement Agreement

11   defines credit and debit cards to include mobile telephones,

12   fobs, and codes.  And even worse, the definition of credit

13   card includes any future code, device, or service.

14             In the reply brief, defendants come clean for the

15   first time that it is their view that their entire rule book

16   is covered and its fairly considered to be part of the

17   predicates of this case.

18             To justify that, they point to one line in the

19   complaint which alleged that Visa and Master Card were

20   structural conspiracies with respect to all of their rules.

21   Yet nowhere do they deny that their rules are vast and extend

22   far beyond the rules that are at issue in this case.  Nor, do

23   they deny that their businesses include courses of conduct and

24   practices, many of which are unwritten, that also extend far

25   beyond the practices that were at issue in this case.

Fairness Hearing - Mr. Shinder

1    They don't deny, in fact, they admitted it today

2    that those rules and conduct, the current rules and conduct,

3    touch upon mobile payments and emerging technologies such as

4    EMV.  Yet, through the slender read of one line, a singular

5    and vague structural conspiracy allegation, defendants seek

6    immunity forever from merchant lawsuits regarding the entirety

7    of their current rule books and the numerous practices related

8    to them and substantially similar versions of such rules and

9    practices including rules that quite clearly pertain to mobile

10   payments and emerging technologies that are in place today.

11        This argument is even more extreme than the

12   arguments that were rejected in the Author's Guild—Google case

13   and the Schwartz cases where attempts to release claims that

14   were not contemplated by the pleadings, or which were not at

15   the core of the case, were rejected.

16        Now, the problems with the release, and its

17   potential impact on emerging technologies, are magnified

18   significantly by the portion of the release that attempts to

19   bar claims based upon the future effects of current or

20   substantially similar rules or practices.

21        Defendants claim in their reply brief that the risks

22   of extinguishing such claims are fairly, "Part of the bargain

23   inherent in any antitrust settlement."  Defendants also admit,

24   they admitted it again today, that mobile payments have been

25   subject to the Honor—all—Cards Rule for a four and they admit

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Shinder

1   in their brief that, "Other payments and access devices and

2   technologies," are also subject to the Honor-all-Cards rules

3   and have been for years.

4           Even though counsel for the proposed class claims

5   that the releases do not cover new technologies or new

6   interpretations of the rules, they ignore the fact that the

7   current Honor-all-Cards rules, per defendants' admissions,

8   cover mobile payments and emerging technologies.  They also

9   ignore the fact that by agreeing to define credit and debit

10  cards to include future mobile payments and future emerging

11  technologies, they open the door to the release covering such

12  technologies.

13          With that opening, defendants clearly view final

14  approval as preserving their ability to invoke the release to

15  bar future claims concerning mobile payments and other

16  technologies to the extent the claim relates in any way to a

17  current rule or practice or a substantially similar version of

18  such rule or practice if it is based on the future effects of

19  such rule or practice.  That argument should be rejected for

20  two reasons.

21          First, claims concerning the future effects of

22  current or substantially similar rules are unripe and cannot

23  be released today.  Defendants admit as much when they

24  characterize these issues as speculative.  Such claims would

25  inevitably depend upon proof of further facts and, therefore,

Fairness Hearing - Mr. Shinder

1   cannot be amongst the predicate of this case per the Second

2   Circuit's decision in Superspuds.

3           To illustrate, an antitrust claim concerning the

4   Honor-all-Cards Rule and mobile payments would likely include

5   the issues of whether mobile payments and traditional payment

6   cards are distinct products for merchants.

7           (Continued on the next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Fairness Hearing - Mr. Shinder

1          MR. SHINDER:  And likely would delve into whether or

2    not the alleged tie imposed anticompetitive effects in the

3    mobile payments industry.  Such issues were not litigated in

4    this case.

5          Second, the future effects language in the release

6    expressly telegraphs that the release purports to cover future

7    violations of the antitrust laws.  And that is clearly void as

8    against public policy.

9          Under this language, claims that ripen decades from

10   now, when anticompetitive effects materialize, would be

11   released merely because they relate in any way to rules or

12   conduct that are in place today where substantially similar

13   versions of such rules or conduct, including the defendants

14   submit rules and conduct today that pertain to mobile payments

15   and mobile transactions.

16         Such a result cannot be squared with Lawler and its

17   progeny.  Even though the release's applicability to mobile

18   payments and emerging technologies that are in place today is

19   squarely before your Honor, the proponents argue:  You need

20   not address it because the identical factual predicate

21   doctrine will ensure in the future that the release is

22   construed to be limited to claims that could have been brought

23   in this case.

24         This is a dangerous argument because the settlement

25   agreement sends a false signal to future courts that claims

Fairness Hearing - Mr. Shinder                        63

1   that could not have been brought in this case were in fact

2   amongst the predicates.  Less there be any doubt about that,

3   paragraph 68 of the settlement agreement releases claims that

4   relate in any way to the Honor-All-Cards rules, a rule that

5   defendants submit includes mobile payments and other

6   technologies.  And the paragraph concludes by stating, quote,

7   For purposes of clarity, any claims based on or relating to A

8   to I above, which includes Honor-All-Cards are, quote, claims

9   that were or could have been alleged in this action, closed

10  quote.

11          As the Second Circuit admonished in Super Spuds,

12  future courts will interpret the settlement to mean what it

13  says.  And that is why the Second Circuit instructed that when

14  a district court is confronted with a patently overbroad of

15  release, such as this one, that the court should reject it and

16  not defer the question to future courts.

17          To put this issue into perspective, while mobile

18  payments is still in its early stages, it could inject

19  meaningful competition in this industry and wean it off its

20  addiction to interchange.  You have potentially new sources of

21  competition, including Google, ICIS, the Merchant Mobile

22  Payments Initiative, the MCX, Paypal, and others.

23          Whether any of them will change the Visa and

24  MasterCard market dominated paradigm remains to be seen.

25          If your Honor is wondering what this has to do with

Fairness Hearing - Mr. Shinder

1   this case?  The answer, of course, is nothing.  It has nothing

2   to do with this case.

3        The last thing I suppose antitrust settlement should

4   do is put its thumb on the scales of future competition, and

5   thereby giving dominant players a potential competitive

6   advantage by immunizing their rules for merchant challenges.

7        Judge Green permitted such a result in 1984 with

8   AT&T.  Decades of consumer enhancing competition may have been

9   killed in the cradle.

10       Let me conclude with a word about the Visa Check

11  settlement, because the comparison keeps being made between

12  that settlement and this one.

13       In contrast, with this settlement the Visa Check

14  agreements were short and sweet.  They cleanly rescinded the

15  Honor-All-Cards time rule for the restraint that was issued in

16  the case.  And as the Second Circuit confirmed, when it

17  affirmed your Honor's approval of that settlement, the

18  releases did not release any claims for conduct after

19  January 1, 2004, the day the tide was rescinded.

20       Unlike this settlement, Visa Check settlement did

21  not engender conflicts.  And perhaps the most important

22  contrast for all and present purposes, class members could

23  challenge post January 1, 2004 conduct.  And those that had

24  opted out of the litigation class were free to bring damages

25  claims for past damages or ongoing damages post-dating

1   January 1, 2004.

2           Another way to illustrate the differences between

3   the two settlements is to examine the two fairness hearings.

4   Ten years ago we convened before your Honor in a virtually

5   empty courtroom due to the almost complete absence of

6   substantive objections to that settlement.  Today the room is

7   packed.

8           And after me you're going to be hearing from counsel

9   for other merchants, merchants themselves, merchant trade

10  associations, consumer groups, the National Federation of

11  Independent Business, virtually all of Visa and MasterCard

12  competitors and 48 of the 50 states.

13          Over 25 percent of the punitive class opted out.

14  And surely the percentage that object to the settlement is

15  much greater, particularly since many merchants that object to

16  the settlement did not opt out because of the limited opt-out

17  rights provided in the settlement.

18          How can this be approved through a mandatory class

19  no less over such an outpouring of opposition?  Counsel for

20  the punitive classes' best answer, it seems, is that the case

21  was risky; it could not have gotten better.

22          But putting aside our disagreements on that

23  conclusion, risk cannot justify putting the merchants in a

24  worse position through an impermissibly broad release than

25  they would have been had they lost in the case.  And risk,

Fairness Hearing - Mr. Neuwirth

1    your Honor, cannot justify trumping due process and

2    constitutional rights.

3            With great respect, we urge the court to exercise

4    its fiduciary obligations on behalf of the class and deny the

5    motion for final approve.

6            Thank you.

7            THE COURT:  Thank you, Mr. Shinder.

8            Mr. Neuwirth, good morning.

9            MR. NEUWIRTH:  Good morning, your Honor.  Thank you.

10           Stephen Neuwirth from Quinn Emmanuel representing

11   the Home Depot.

12           Your Honor, there is no doubt, no doubt that many

13   superlatives can be applied to this settlement.  And we've

14   heard many of them today.  It's impossible to say it doesn't

15   involve a gigantic amount of money.  It's impossible not to

16   say that if you count the number of merchants in the class

17   most of them don't support it.

18           We know that based on the pure number of merchants

19   in the class, most have not opted out or objected.

20           And it's impossible not to come up with ways to

21   champion some of the relief that is being afforded through the

22   injunctive relief.  We've heard from the plaintiffs; it's in

23   their papers.  Many arguments can be made about how valuable

24   this all is.

25           And in terms of economics.  Professor Sykes has

Case 1:05-md-01720-MKB-JO  Document 6094  Filed 11/20/13  Page 67 of 281 PageID #: 70912

1   acknowledged that his review of this looked at these economic

2   issues.

3           The problem is that these are precisely the types of

4   circumstances where we are most likely not to pay careful

5   attention and be vigilant about protecting due process.  I

6   think there is a fair analogy to be made, your Honor, to

7   circumstances like national crises when due process rights

8   often get shoved aside.

9           As one court said, The imperative necessity for

10  safeguarding these rights to procedural due process under the

11  gravest of emergencies as existed throughout our

12  constitutional history.  For it is then, under the pressing

13  exigencies of crisis, that there is the greatest temptation to

14  dispense with guarantees, which it is feared, will inhibit

15  government action.

16          That was the United States District Court for the

17  Eastern District of New York, Gleeson J.  And we believe there

18  is an analogy to be drawn here.  We have a settlement that has

19  all sorts of features that look wonderful to many people.  And

20  it may even be that a majority of the members of the class

21  thinks it's terrific.  But those are the circumstances when

22  due process rights of the minority have to be protected.

23          And the Supreme Court in Phillips Petroleum versus

24  Shutts said that opt-out rights in class actions are property

25  rights that are protected by due process.

Fairness Hearing - Mr. Neuwirth

1          In the Logan v Zimmerman Brush case, from 1982, the
2   Supreme Court says, a cause of action is a species of
3   property protected by the due process --

4          THE COURT:  Slow down.  You're going a little too
5   fast for the court reporter's benefit, please.

6          MR. NEUWIRTH:  The Logan versus Zimmerman Brush
7   case, from 1982, also said that a cause of action is a species
8   of property protected by the due process clause.

9          And as we've highlighted in our papers, in the
10  Wal-Mart v Dukes case, the Supreme Court reiterated these
11  principles and highlighted a fundamental feature of this due
12  process right; namely, that you have to be allowed to opt out
13  of monetary claim abrogation in a class action because class
14  members must be permitted, quote, to decide for themselves
15  whether to tie their faiths to the class representatives or go
16  it alone.

17         The fact is, it doesn't matter how most people feel
18  about the settlement, we would respectfully submit.  It
19  doesn't matter how Professor Sykes feels about the settlement.
20  What matters under the due process clause is that my client,
21  the Home Depot, has the right to decide its own faith.  The
22  fact that the class plaintiff's lawyers feel there's lots of
23  risks in pursuing these claims, the fact that Professor Sykes
24  has concluded that there's lots of risks in pursuing these
25  claims, is irrelevant to the due process constitutional issue.

Fairness Hearing - Mr. Neuwirth

1    And if in a case like this we abrogate due process, it's a

2    slippery slope to our houses, to our civil rights.

3             This court has been a champion of protecting due

4    process; many of the lawyers in this room have been.  And the

5    property rights at issue in this case are simply being

6    abrogated.  And the question is:  How are they being

7    abrogated?

8             They're being abrogated because, your Honor, the way

9    that the mandatory (b)(2) settlement is set up it says:  We

10   have injunctive relief that will require the defendants to do

11   certain things.  And at best, all of the case law that's been

12   cited by the class plaintiffs and the defendants stands for

13   the proposition that it follows, that if you order through an

14   injunction that parties need to do certain things, they

15   shouldn't be sued under the antitrust laws or other laws for

16   doing those certain things.

17            The problem is, as we heard confirmed by Mr. Gallo

18   today, what the part -- what the settling parties are arguing

19   is that anything they do as of the time of the settlement is

20   now off limits for future damages claims.  The plaintiffs have

21   acknowledged, in their description of the facts, that what

22   they refer to as a three-legged chair of problems that

23   supported the existing antitrust concerns -- and taking that

24   as a given, not necessarily agreeing, but just following that

25   analogy -- they acknowledge in their papers that they are only

Fairness Hearing - Mr. Neuwirth

1    addressing one of those three legs.  And they argue that by

2    taking away that leg the chair can't stand, is their argument.

3         But it cannot be denied that the other two legs are

4    not being addressed in this settlement.  The plaintiffs argue:

5    It doesn't matter.  Because if you take away one of the legs,

6    the chair will fall.  But one can easily argue that that's not

7    the case, and that those other two legs are a problem.

8         But what this settlement does is it says to the

9    Home Depot and to other parties, because all three legs

10   existed at the time of the settlement, from now until the

11   indefinite future, you can't sue on any of them, even the two

12   that are in the subject of any injunctive relief.

13        And so the problem here is that the injunction is

14   set up to cover a whole set of practices that -- or to deal

15   with a small set of practices that are specifically enjoined

16   going forward, but to include a release that covers anything

17   that Visa and MasterCard do related to interchange fees.

18   Mr. Gallo just acknowledged that.  And he said that what he

19   wants is peace.  Of course the defendants want peace.  They

20   don't want to be sued at all.

21        And we know Mr. Montague, whose integrity is second

22   to none in the plaintiffs or the defense bar, acknowledged

23   that the preliminary approval hearing, the interrelationship

24   between the injunctive relief and the money that the

25   defendants paid.  They are getting this gigantic release into

Fairness Hearing - Mr. Neuwirth

1    the future in this (b)(2) class, as an obvious part of the

2    quid pro quo for the money that's being paid in the (b)(3)

3    class.

4           Mr. Montague acknowledged the negotiations before

5    the mediators were always:  One issue was monetary, the other

6    issue was equitable relief.  One was not going to be reached

7    without reaching the other.

8           In other words, here we have a settlement that is

9    clearly intertwined.  We have a large amount of money being

10   paid.  And part of the quid pro quo for that is the peace that

11   Mr. Gallo told you he and his client want.  A peace that

12   through the release in the (b)(2) class is going to cover

13   anything that Visa and MasterCard do related to interchange

14   fees as of the day of the settlement.  That's what Mr. Gallo

15   just told you he says the release means.

16          Now, your Honor has said earlier today that you had

17   a concern that perhaps with respect to new technologies the

18   line is not properly drawn with this release.  But we would

19   very respectfully submit that the problem you've identified

20   with respect to new technologies is not the whole problem,

21   it's a symptom of the problem.  Because the way that this

22   release has been defined, which clearly takes away the opt-out

23   right of members of the class, is to cover anything that Visa

24   and MasterCard would do.

25          And Mr. Gallo told you today, in a forthright way,

Fairness Hearing - Mr. Neuwirth

72

1    that at best all at a company like the Home Depot would have

2    in the future is a right to go to court to argue that maybe

3    the release shouldn't be that broad.  But everyone

4    acknowledges, even the class plaintiffs acknowledge that the

5    Second Circuit does not permit this ball just to be kicked to

6    the future.  It's improper to deny future or past claims for

7    damages through the mechanism of a mandatory (b)(2) class.

8    That is what Dukes says.  And none of the case law that's been

9    cited remotely supports what's happening here.

10           The Linear case, as Mr. Gallo acknowledges, is a

11   case involving a (b)(3) class where there were opt-out rights.

12   The MSG case that he mentioned was not a class action.

13           The Handschu case that he mentioned, the Southern

14   District of New York case, expressly acknowledges at

15   605 F.Supp 1407, that they've explicitly foresworn any

16   res judicata effect on future claims.

17           So even though that was a (b)(2) case, the settling

18   parties there said that they were not even seeking to take

19   advantage of potential res judicata effect in the future

20   against damages claims that someone might want to bring.

21           We would respectfully submit, there is not a single

22   case on the planet that has ever authorized what it is that

23   this court is being asked to do, in terms of giving up future

24   damages claims.  The Literary Works case that's championed by

25   both the class plaintiffs and the defendants from the

Fairness Hearing - Mr. Neuwirth

1  Second Circuit, the case noted the class members were

2  expressly given a right to opt out of the relief applying to

3  future rights -- future use of the copyrights at issue.  So

4  there was an opt-out right in that case.

5           And in the TBK Partners case, the other case which

6  is championed by the class plaintiffs and the defendants, the

7  Second Circuit expressly noted that all it was talking about

8  was the issue of collateral estoppel effects.  It said

9  expressly that no one in the case had challenged the propriety

10 of the settlement's use of a mandatory (b)(2) settlement

11 class.

12          That is what was then addressed in Wal-Mart v Dukes

13 by the Supreme Court reiterating the principles from

14 Phillips v Shutts and other cases, that you cannot -- that you

15 cannot take away someone's constitutional right to bring

16 claims.  And we know as well that the Stevenson case from the

17 Second Circuit, which none of the settling parties talks

18 about, said in 2001, that due process requires adequate

19 protection at all times throughout the litigation, which means

20 notice reasonably calculated to apprize interested parties of

21 the pendency of the action, and an opportunity to opt out,

22 citing Phillips Petroleum v Shutts.

23          And the Jefferson versus Ingersoll case from the

24 Seventh Circuit, which applied the Supreme Court Ortiz

25 decision said, quote, the controlling authority today is

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing - Mr. Neuwirth

1    Ortiz, which says in no uncertain terms that class members'

2    right to notice and an opportunity to opt out should be

3    preserved whenever possible.

4           Those rights are not being preserved here, your

5    Honor.  It is a straightforward matter.  Straightforward that

6    there is no opportunity in this case for the Home Depot to opt

7    out of the release that applies to anything that happens in

8    the future relating to every rule and policy applicable to

9    interchange rates that exist.

10          Now, Mr. Gallo said that exists today.  It's

11   actually that existed at the date of preliminary approval.  So

12   if Home Depot decides to file a case tomorrow, it's already

13   barred from having claims related to any conduct concerning

14   interchange fees from the date of preliminary approval of this

15   settlement through tomorrow.  So there's nothing speculative

16   here.  This has already happened.  And there is simply no

17   precedent for it.

18          The parties who are settling argue that, well,

19   there's a distinction between conduct in the future that is a

20   per se violation of the antitrust laws and conduct that isn't.

21   And they say that the conduct here is not a per se violation.

22          Well, clearly in the complaint it was all alleged to

23   be a per se violation, or a lot of it was.  And, in any event,

24   that distinction doesn't exist in the case law.  It is

25   fashioned out of whole cloth.  There is not a single case that

Fairness Hearing - Mr. Neuwirth

 1    draws that distinction in the context of a release in a class

 2    action.

 3              Most of the cases that the settling parties rely on

 4    are cases that are talking about the collateral estoppel

 5    effects of releases or settlements.

 6              THE COURT:  Does a settlement of a (b)(2) claim that

 7    includes injunctive relief ever preclude a future action for

 8    damages regarding the conduct that is ordered by the

 9    injunction?

10              MR. NEUWIRTH:  Well, we don't believe that that

11    specific question has ever been answered in the Second

12    Circuit.

13              THE COURT:  I'm not asking you that.  I'm asking you

14    about the contours of your argument.

15              MR. NEUWIRTH:  Yes, the contours of our argument are

16    as follows:  We would say that at most a mandatory injunction

17    that compels certain specific conduct could bar a future claim

18    applicable to that specific conduct which the court has

19    ordered a party to undertake.

20              THE COURT:  A future claim for damages?

21              MR. NEUWIRTH:  It would be a future claim for

22    damages related to --

23              THE COURT:  Alleging the illegal nature of the

24    conduct that the defendant engaged in as a result of the

25    injunctive relief, such a claim can be barred under (b)(2).

Fairness Hearing - Mr. Neuwirth

1        MR. NEUWIRTH:  I think that it has to follow.  If

2   the court orders a party to do something under (b)(2) in a

3   mandatory class, if all the circumstances for a mandatory

4   class are satisfied --

5        THE COURT:  Is this a long yes?

6        MR. NEUWIRTH:  It's a long yes premised on the

7   (b)(2) class being properly certified.

8        THE COURT:  Got it.

9        MR. NEUWIRTH:  However, that's not what's happening

10  here.  Here, as Mr. Gallo acknowledged, and even as plaintiffs

11  acknowledge, this release is not limited, even to the things

12  that --

13       THE COURT:  That's not a constitutional argument,

14  that's an objection to the scope of the release?  Right?

15       MR. NEUWIRTH:  No, it's a constitutional argument.

16       THE COURT:  Well, if it didn't suffer from the

17  defect you just described, you're telling me that (b)(2)

18  authorizes it.  Right?

19       MR. NEUWIRTH:  I'm telling you that (b)(2) --

20       THE COURT:  If it's sufficiently narrow to only

21  preclude damage claims in the future that allege the

22  illegality of the conduct engaged in as a result of a (b)(2)

23  settlement, then it's okay and it's consistent with due

24  process.  Correct?

25       MR. NEUWIRTH:  I think what I said was that if you

Fairness Hearing - Mr. Neuwirth

1   had an injunction that satisfied the cohesion requirement, so

2   that you can bind, properly bind all members of the class.

3            THE COURT:  Right.

4            MR. NEUWIRTH:  And if the release solely covered the

5   specific things that the court was ordering the parties to do.

6            THE COURT:  Craftmanship problem.

7            MR. NEUWIRTH:  Well, here it's a lot more than a

8   craftmanship problem, because here --

9            THE COURT:  Go ahead, I interrupted your sentence.

10  Then it's okay?

11           MR. NEUWIRTH:  Well, certainly there would seem to

12  be principles that would permit you to say that you couldn't

13  bring a claim challenging something the court had ordered a

14  party to do.

15           THE COURT:  What's wrong with the argument

16  Mr. Arnold made, allowing every single member of the class to

17  surcharge, price discriminate among cards at the product level

18  with different interchange rates.  What's wrong with the

19  argument that the market -- put aside American Express for a

20  second -- and other impediments to surcharging.  Put those

21  aside for a second.

22           What's wrong with the argument that that will -- the

23  market will take care of itself by merchants being permitted

24  to charge more for cards that cost them more, it will exert

25  the sort of pressure that he's described on this market?

Fairness Hearing - Mr. Neuwirth

1        MR. NEUWIRTH:  What's wrong with that argument, your

2    Honor?  Very respectfully, it's completely irrelevant on the

3    due process issue.  The fact that anyone on the planet has an

4    opinion that this is how the injunction will operate or that

5    anyone has a view about the benefits of the settlement doesn't

6    matter.

7        THE COURT:  It matters to me.  So what's wrong with

8    his argument?

9        MR. NEUWIRTH:  What's wrong with his argument is --

10       THE COURT:  Yes.  Why isn't he right, as a

11   descriptive matter, as to the operational effects in the

12   market if merchants can price discriminate among products that

13   bring into their stores different interchange rates?

14       MR. NEUWIRTH:  He may be right or he may be wrong.

15       THE COURT:  Well, why is he wrong, if you think he's

16   wrong?

17       MR. NEUWIRTH:  Well, the Home Depot isn't taking a

18   position on whether he's right or wrong.

19       THE COURT:  Well now is your chance when I'm asking

20   you to.

21       MR. NEUWIRTH:  Well, first of all, as we detailed in

22   our submission but not bearing on the due process issue, we

23   have noted in our submission that these types of surcharge

24   provisions are not something that a national merchant will

25   necessarily even be able to implement --

Fairness Hearing - Mr. Neuwirth

1        THE COURT:  Because they choose not to.

2        MR. NEUWIRTH:  No, because of various state laws.

3        THE COURT:  Put those aside.  Put Amex aside.  Put

4   the ten or 11 states aside.

5        MR. NEUWIRTH:  Well, if you're a national company,

6   like the Home Depot, and there are ten or 11 states that do

7   business that say you can't --

8        THE COURT:  If you don't want to indulge my

9   hypothetical, don't.  But I've asked you to.  Put it aside.

10  Does it work?  Does it work to have a salutary effect on the

11  interchange rates that are at the heart of the problem of this

12  case?

13       MR. NEUWIRTH:  At best it would be purely

14  speculative.  We don't know.

15       THE COURT:  Well, why wouldn't it, though?  You seem

16  like a pretty smart guy.  Why wouldn't traditional, economic

17  principles lend these different transaction rate cards that

18  are subjected to the forces of the market, why wouldn't the

19  way markets normally react produce the result that he says

20  surcharging would produce?

21       MR. NEUWIRTH:  Because there's a whole set of

22  assumptions built into that argument.  There's a whole set of

23  assumptions that it will be feasible and practicable for

24  merchants to do this.

25       THE COURT:  They would have to educate their

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing — Mr. Neuwirth

1    consumers?

2            MR. NEUWIRTH:  There is no doubt you can educate

3    consumers.  There's lots of things you can do in a free

4    market.  The problem is that, as most of the objectors have

5    pointed out, while this may not be true for people who didn't

6    object, the objectors have pointed out that the things that

7    have been left in place are going to continue to be sufficient

8    constraints, even the hypothetical benefits of the --

9            THE COURT:  Fair enough.  Let me interrupt you here.

10           Whose account do we charge those other constraints

11   to?  I mean, this is one lawsuit seeking relief with regard to

12   particular defendants and particular conduct.  And if there

13   are others, is the differences between a lawsuit and piece of

14   legislation.  There are other realities out there, things out

15   there that might frustrate the desired effect of an otherwise

16   sensible looking settlement here, is that -- I take it I know

17   your answer to this question -- a reason for me not to approve

18   the settlement?

19           But some of your adversaries on this motion have

20   suggested that I shouldn't charge that to the account of the

21   opponents of the settlement.  I can't do anything about Amex

22   here.  But there might be reason to believe, looking through a

23   glass darkly, what's going to happen in the future and it

24   might have some effect on what happens.

25           But my question, my simple question is:  Why should

Fairness Hearing - Mr. Neuwirth

1    I regard that as a reason to reject this settlement?  I

2    realize there's all kinds of pieces of landscape out there

3    over which I have no control.

4              MR. NEUWIRTH:  The question is:  What does it mean

5    to reject the settlement?  The Home Depot has never said that

6    you have to reject the settlement, in terms of any portion of

7    it that the court would want to approve, except this release

8    that's been crammed into the (b)(2) class.  There's no -- the

9    Home Depot, contrary to the way the plaintiffs have

10   characterized it, the Home Depot is not arguing that the

11   reason that you have to turn down this settlement is because

12   the injunctive relief is inadequate.

13             The Home Depot happens to think that it's not good

14   for the Home Depot.  But that's not a reason for you to turn

15   down the settlement under the constitution.  The reason to

16   turn down the settlement under the constitution is because the

17   release that has been put into the (b)(2) class with no

18   opt-out rights is depriving the Home Depot of the right to

19   decide whether it wants to take all the benefits of the

20   settlement in return for giving up damages claims about

21   conduct that isn't even addressed by the injunction.

22             And so Home -- that's why I'm answering the

23   questions the way I am, your Honor.  The Home Depot -- as I

24   said at the beginning, of course you can't deny that it's

25   possible to come up and champion --

```
 1              THE COURT:  I don't mean to interrupt.  And I'm at
 2    fault, because I'm asking you the questions.  But I'm looking
 3    at this list of people who want to get to the podium after you
 4    and they're probably getting a little antsy right now.
 5              MR. NEUWIRTH:  Okay.  Let me just highlight, then, a
 6    couple of points very quickly.  If it would please the court
 7    for me to take just one or two more minutes.  If not --
 8              THE COURT:  Fine by me.  You're going to have to
 9    deal with them.
10              MR. NEUWIRTH:  So the two points that I would make,
11    your Honor, are first:  That it is critical here, as your
12    Honor and I have been discussing, that the thing for which
13    there is no precedent, and the way in which this court would
14    be doing something unprecedented, is by including in a
15    mandatory (b)(2) class a bar on future damages claims that
16    relate to things that are not even the subject of the
17    injunctive relief.
18              When this case started, there were many features of
19    what the defendants were doing, like the Honor-All-Cards rule,
20    which is a tremendous problem for the Home Depot, other
21    provisions about the way interchange rates are set.  And now,
22    even more recently, inserting conduct that's being looked at
23    by the Department of Justice that would be off limits to any
24    merchant to challenge in the future.
25              And the Second Circuit on top of everything else has
```

Fairness Hearing - Mr. Canter

1    said it violates public policy.  Putting aside the

2    constitutional issue, it violates public policy to be

3    prohibiting those claims in the future.

4            And second, we would just note that we represent

5    only the Home Depot.  The Home Depot is not involved in any

6    activities to set up a competitive card.  All of the

7    competitive -- all of the arguments about the so-called

8    political reasons for it, efforts that were made to lineup

9    objectors, the Home Depot had nothing to do with that.  The

10   Home Depot is speaking as a party that is going to lose the

11   right to bring a damages claim, and it is solely because of

12   these constitutional violations that it's asking the court not

13   to approve the release that is included in the (b)(2)

14   settlement.

15           As long as Home Depot can opt out, it's not -- it

16   defers to the court on whether the settlement should be

17   approved for everybody else.

18           THE COURT:  Thank you.  Who's up next?

19           Good morning, your Honor.

20           MR. CANTER:  I'm Mike Canter, I represent Target

21   objectors.

22           THE COURT:  Yes, good morning.

23           MR. CANTER:  I'd like to try to answer the questions

24   that you just put to Mr. Neuwirth.

25           The problem with the no-surcharge rule and the way

1    it's treated in the settlement.  If the no-surcharge rule is

2    anticompetitive, then it should be enjoined.  And the

3    defendants should be enjoined through enforcing it.  That

4    would be indivisible relief as Duke articulates it.

5          The merchants would then have the opportunity in the

6    market to decide how they want to deal with that freedom.  And

7    then as your Honor says, the market will sort it out.  Some

8    merchants will take advantage of it; some may not.

9          The problem with this settlement is it's picking

10   it's engineering.  It's picking winners and losers.  The

11   merchants in the no-surcharge states are losers; they get no

12   relief.  Dukes requires that the relief has to -- there has to

13   be relief to the merchants.

14         THE COURT:  What's your response to the class

15   plaintiffs argument that those prohibitions are really just

16   prohibitions on the surcharge in the absence of sufficient

17   disclosure, at least in New York and California?

18         MR. CANTER:  My answer to that is the same as my

19   answer to the question that you asked Mr. Neuwirth, which is:

20   Who do we charge the uncertainties of the future to?  And the

21   answer is:  That's all speculative.  We don't know what the

22   no-surcharge statutes, how they will be interpreted in the

23   future.

24         We read them.  We understand them.  All the

25   objectors have come before you.  We understand them to

Fairness Hearing - Mr. Canter

1  prohibit us.  This court is not in the position to make that

2  adjudication.

3       THE COURT:  So why shouldn't I say, all right, I

4  can't deal with Amex.  I can't deal with these states.  It's a

5  lot of things I can't deal with.  Everything comes to me.  All

6  I've got before me is this dispute.  Since we're not dealing

7  comprehensibly with the problem, that seems like a sensible

8  resolution to the dispute before me.  And if there's

9  impediments to its utility, then what can I do with that?

10  This is whose account it gets charged to.

11       The merchants are entitled to decide for themselves

12  whether the relief is beneficial to them -- your Honor, the

13  merchants are entitled to decide for themselves whether or not

14  the relief will be beneficial to them.  The problem here is

15  this so-called relief is being forced on them and they're

16  being forced to give up a release which is extremely valuable.

17       This court wants to settle this case, and we

18  understand that.  But not every settlement is possible.

19  Mr. Gallo stood here and said he wants peace.  And, frankly,

20  when he said that, it reminded me of a newsreel from a long

21  time ago.

22       MR. CANTER:  The problem is that Visa and MasterCard

23  have market power.

24       THE COURT:  You're just going to let that hang?

25       MR. CANTER:  The Neville Chamberlain.

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

1          THE COURT:  We went from post-911 to Neville

2    Chamberlain.  Okay.

3          MR. CANTER:  The problem is that Visa and MasterCard

4    have market power.  The market power is enforced through their

5    Honor-All-Cards rule.  The letter from Visa about new

6    technology specifically called out the Honor-All-Cards rule.

7    That is the real source of their power.  This settlement does

8    not deal with that.  It must deal with that.

9          THE COURT:  Do you dispute the notion that the

10   illegality of the Honor-All-Cards rule is a little bit up for

11   grabs?

12         MR. CANTER:  If this court approves this

13   settlement -- this release.

14         THE COURT:  Are you going to come back to my

15   question?

16         MR. CANTER:  With this release it will put the

17   Honor-All-Cards rule no longer up for grabs, and that's the

18   problem.  And that's why the Target objectors have opted out,

19   have filed their opt-out lawsuits.  Have done all they can to

20   separate themselves from this case and from this settlement.

21         THE COURT:  Why is the Honor-All-Cards rule so

22   pernicious if there's product level surcharging that's

23   permitted among those cards?

24         MR. CANTER:  It limits -- it puts a severe limit on

25   the ability of merchants to discriminate among cards.  It

Fairness Hearing - Mr. Canter

1    gives -- it gives merchants potentially, if the other

2    restraints were there in the Amex, in the states it gives them

3    just a tiny crack of a window to try to protect themselves.

4            We don't believe that surcharging is any kind of a

5    solution.  Dr. Sykes agrees with that.  Dr. Frankel --

6            THE COURT:  No, he doesn't.  That's not exactly

7    correct.  That's not what he said.  You know that.

8            MR. CANTER:  But what he said was that its effect

9    may be very small.

10           THE COURT:  Maybe.  You know, we're looking ahead.

11   But why isn't it useful?  What you're saying is it would be

12   great to not have an Honor-All-Cards rule so we can reject a

13   card.  Right?

14           MR. CANTER:  That is correct.

15           THE COURT:  Right.  And explain to me how this

16   dynamic at the point of sale -- I would think just being a

17   regular old consumer that it would have a greater adverse

18   effect on my customers if I said to them, sorry, we're not

19   taking that card at all, than if I said to them; we're taking

20   that card.  But because we're getting gauged by Visa and

21   MasterCard on the interchange rate it's going to cost you

22   more.

23           Isn't that a more attractive way to deal with your

24   customers?

25           MR. CANTER:  From my clients, your Honor, it's not

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing - Mr. Canter                              88

1    attractive at all.  What happens at a point of sale and the

2    experience the customer has is extremely important.  They

3    don't want to engage in a conversation you described.  They

4    would rather engage in a conversation directly with either

5    card companies or the banks about whether or not they're going

6    to take their cards at all.

7               THE COURT:  What precludes them from -- never mind.

8    I understand your argument.  Go ahead.

9               THE CLERK:  What I'd like to address, your Honor,

10   first of all, the Target -- the Target objectors are 17 of the

11   largest most sophisticated merchants in the country.  They

12   operate more than 25,000 retail stores.  As I've mentioned,

13   they've all opted out.  They want nothing to do with this

14   case.  Collectively they pay more than a billion dollars a

15   year than Visa and MasterCard Interchange, and they believe it

16   is the Honor-All-Cards rule that is the source of the problem.

17              I'd like to address Ortiz and Dukes and the

18   significance of those cases to this settlement.

19              Ortiz and Dukes together discuss the limits on a

20   mandatory class.  Both cases say that (b)(2) -- B1 and (b)(2)

21   cannot be used in any way other than exactly as they are

22   written.  Dukes specifically rejects reference to the advisory

23   committee notes.  It says:  Look to the language of the rule.

24              The rule talks about injunctions and declaratory

25   judgments.  It does not talk about any other form of equitable

Fairness Hearing - Mr. Canter

1   relief.

2          This settlement flips (b)(2) on its head.  (b)(2) is

3   intended to deal with injunctions issued against defendants.

4   That's why there's no opt-out provision.  It does not

5   authorize injunctions issued against plaintiffs.  And it does

6   not authorize using (b)(2) in any other manner, such as to

7   force a private agreement on plaintiffs.

8          And the court, as your Honor knows, cites to (b)(3),

9   and it says:  If you want to be experimental, (b)(3) is the

10  place to do it, because that's where the opt-out rights are.

11  If you're going to use a mandatory class, you have to stay

12  carefully within the rule.

13         The fact that there is no injunction against these

14  defendants is fatal to the settlement as it is drawn.  That

15  alone is fatal.  (b)(2) requires an injunction against the

16  defendants.  And as has already been mentioned, the key is

17  that the prerequisites of mandatory relief be proven by the

18  proponents of the settlement.

19         Ortiz makes that clear with respect to B1.  You've

20  got to prove by facts, other than the agreement.  You've got

21  to prove that you got a limited fund.  The same thing is true

22  in Dukes.  Dukes explains exactly as Ortiz did about what a

23  limited fund is.  Dukes explains what an injunction is.  And

24  it says that the injunction must be indivisible.  It says

25  that's the key.  It must have indivisible effect on a group of

Fairness Hearing - Mr. Canter

1    merchants.

2          And it says:  The defendants' conduct is such that

3    it can be enjoined.  It says nothing about the plaintiffs.  It

4    says the defendants' conduct, it can be enjoined.

5          And then it says:  The single injunction must

6    provide relief to each member of the class.

7          What we have here is the opposite of what Dukes

8    describes.  And the reason we have the opposite, there are a

9    couple of examples that make this perfectly clear.  The class

10   is not designed around the so-called relief.  Even if that

11   relief were an injunction --

12         THE COURT:  Why isn't it an injunction if it's an

13   agreed upon order that it can no longer have or enforce a

14   no-surcharge rule?  Why isn't that an injunction?

15         MR. CANTER:  Dukes is very specific about that

16   because that's what was argued in Dukes is that the backpay

17   was like equitable relief and therefore (b)(2) was big enough,

18   expansive enough, flexible enough to deal with it.  The court

19   said no, it deals only with an injunction.

20         I don't believe that Duke has the flexibility --

21   that (b)(2) has the flexibility to do what your Honor

22   suggests; which is to say, Well, here we have an agreement and

23   I approve it and so it's like an injunction.  It's a contract.

24   It's not an injunction.

25         Just because the court approves it and says it's

Fairness Hearing - Mr. Canter

1    fair doesn't make it an injunction against the defendant.

2            THE COURT:  Wouldn't that describe every settlement

3    (b)(2) class?

4            MR. CANTER:  I think it may well indicate --

5            THE COURT:  So you can't --

6            MR. CANTER:  -- that we're --

7            THE COURT:  -- settle a (b)(2) settlement class?

8            MR. CANTER:  Sure you can settle.  You can settle a

9    (b)(2) class and you can impose a consent decree on an

10   injunction on a defendant.  What we're dealing with here,

11   however, is what is ancillary to that and whether you can also

12   under (b)(2) then extract something from the plaintiffs.

13           THE COURT:  Okay.

14           MR. CANTER:  Dukes makes clear that the (b)(2) class

15   can be no broader than the relief provided to the class, and

16   the relief must be indivisible.  So this class, as you have

17   heard, is divisible in many ways.  By the no-charge stage, by

18   the Amex rules, by the merchants that have banners, that do

19   not have banners.

20           But that's not how the class was designed.  The

21   class was designed around the release, not around the relief.

22   How do we know that?

23           The class also includes future merchants.  Merchants

24   that are not born.  Merchants that do not presently take Visa

25   and MasterCard; yet they are in the class.

Fairness Hearing - Mr. Canter

 1           They don't have standing to be in the class.  They

 2    couldn't be in front of you today and say, I want an

 3    injunction against these guys.  They wouldn't have standing

 4    for that.  Yet they are included in the class.  What Visa and

 5    MasterCard want out of this settlement, and you heard it from

 6    Mr. Gallo, they want an injunction.  They want a release

 7    that's binding on their entire customer base presently and in

 8    the future so that their business model, all their rules,

 9    their business model can never be challenged again.

10           I respectfully suggest this court really doesn't

11    have the authority to do that.

12           Another thing that Ortiz says, you've heard and I'm

13    sure you're familiar with the reference to heightened

14    scrutiny, heightened pretension.  But that sentence in Ortiz

15    goes on and it has more to it.

16           It says:  Heightened pretension to the

17    justifications for binding the class.  The justifications for

18    binding the class.  And those justifications cannot simply be

19    this agreement.  They have to be proof of the character of the

20    relief, that the relief meets the (b)(2) requirements set out

21    in Dukes.  This does not do that.  This settlement does not do

22    that.

23           Your Honor, I'd also like to talk about the

24    unfairness.  And what I'd like to address is how Dr. Sykes

25    looked at this settlement.

1          Dr. Sykes viewed the settlement as a whole.  He

2    looked at it for its three parts.  He looked at it from the

3    perspective of the $7 billion.  He looked at it from the

4    perspective of the injunctive relief.  And he looked at it

5    from the perspective of the release.  And he obviously said

6    the $7 billion is substantial.

7          The injunctive relief cannot -- the value of that

8    cannot actually be ascertained.  Dr. Frankel says the same

9    thing.  And he looks at the release.  And when he puts all of

10   that together, as this court must do, what he says is, it's

11   such a close question that it perhaps can only be decided by

12   looking at who has the burden.

13         And of course the proponents have the burden.  And

14   the implication of what he is saying is, is that he is not

15   persuaded that the plaintiffs have carried that burden.

16         If you then look only at the (b)(2) relief, if you

17   were to treat it separately, the risk of litigation my clients

18   have already accepted that.  So that's not a factor for them

19   under the (b)(2) relief.  They have rejected their share of

20   the $7 billion.

21         The value of the injunctive relief is speculative at

22   best.  And in exchange for that, they're giving up future

23   rights that are worth billions of dollars a year to them, and

24   I don't think it can be argued that that's fair.

25         If the court looks at the settlement the way

Fairness Hearing - Mr. Canter

1    Dr. Sykes does, as a whole, then it can only be certified

2    under (b)(3).  Because you're putting the financial, the

3    $7 billion into the pot, as Dr. Sykes did, that $7 billion is

4    not ancillary to any injunctive relief.  And so only a (b)(3)

5    class can be certified and opt-out rights have to be provided.

6    If you look at it separately, there's just no consideration

7    for the rights being given up.

8            I want to address the question of the release.  I

9    thought it was noteworthy that when you asked the question,

10   obviously it's troubling you about the scope of the release,

11   your Honor.

12           The lawyer who wants to represent my clients wanted

13   to sit down.  That troubles us and it's a big concern to us

14   because that's the lawyer that needs to be standing up and

15   defending the clients he wants to represent.

16           Mr. Gallo then got up and said, it covers everything

17   we do.  It covers all of our rules.  It covers our whole

18   business model.  And what we know, from what we have seen, is

19   whether or not that release is as broad as he says, it will be

20   asserted in every case that ever comes up to burden and delay

21   the case and the defendants.  And in the case of new

22   technology, delay is a killer.

23           Because that -- that new technology needs the

24   attraction.  And if Visa and MasterCard are able to dominate

25   new technology through litigation delay, it would be very hard

Fairness Hearing - Mr. Canter

1      to rectify that.

2              I want to give an example of how the perniciousness

3      of the position being taken by the defendants.

4              Let's suppose that Target decides that it's going to

5      spend millions of dollars to put in this contact list payment

6      technology at its thousands of checkout stations -- makes that

7      investment.  And what it wants to do is bid out access to that

8      technology and say to Visa, say to MasterCard, maybe say to

9      one of the banks that now are thinking about coming directly

10     to the merchants and negotiating.  What will you give me for

11     access to my technology, so that people who have your card

12     inside your -- the magnetic strip information inside the phone

13     will be able to use it?

14             If Target is able to reduce its costs by bidding out

15     access to that technology, it will earn a return on

16     investment.  But Visa is here to tell you that they have a

17     right under the Honor-All-Cards rule to trump that

18     competition, to trump that effort to create competition,

19     because they have a right to access.  They don't have to pay

20     anything for it.  It comes out of their Honor-All-Cards rules.

21             That kind of innovation and the ability to trump it

22     is at the core of what the antitrust laws are trying to

23     protect.  And you are being asked by, in terms of this

24     release, to put in place -- to essentially validate the

25     argument that was made by Mr. Gallo.

Fairness Hearing - Mr. Armour

1          Your Honor, we would ask only one thing of this

2     court.  We ask only that we be allowed to opt out of this

3     settlement entirely.  We think that your Honor would have to

4     deny approval, explain to the defendants and the proponents

5     what is wrong with the settlement.  They'll have to go back.

6     They'll have to try to fix it in accordance with your order.

7          That order should provide that companies like my

8     clients have the opportunity to opt out of the settlement

9     because it is outside the scope of what (b)(2) authorizes.

10          Thank you.

11          THE COURT:  Thank you.  Good morning.

12          MR. ARMOUR:  Good morning, your Honor.  My name is

13     Henry Armour, president and chief executive officer of the

14     National Association of Convenient Stores, a named plaintiff

15     in this litigation.

16          NACS and the majority of the named plaintiffs have

17     filed objections to the settlement. NACS has opted out of the

18     monetary portion of it.  We've also filed a response to

19     correct inaccuracies in a recent declaration by class counsel.

20          From the beginning of this litigation our principal

21     concern has been to obtain meaningful market reforms of the

22     credit card market, to restrain the undue market powers being

23     used to set fees.

24          Anticompetitive practices have resulted in our

25     industry paying more in card fees than it makes in pretax

Fairness Hearing - Mr. Armour

1  profits every year since 2006.

2          The vast majority of our industry is made up of

3  small businesses.  In fact, 60 percent are single store

4  operators.

5          Because our industry pays such huge fees, $11.2

6  billion in 2012 alone, NACS has had thousands of conversations

7  with our members about interchange fees and discussed the

8  problems and potential solutions in depth.

9          This settlement unfortunately ignores the views of

10  NACS.  The majority of the named plaintiffs and many

11  merchants, including NACS' 30-member Board of Directors made

12  up of small and large retailers from around the country, we

13  raised our concerns early and often, and now we've been joined

14  by merchants far and wide.

15          The primary rules for release in the relief, in the

16  settlement surcharging is completely unworkable because of

17  negative consumer reactions to surcharging, state laws that

18  prohibit it, and the level plainfield provisions.

19          Most telling, I think, is the fact that since this

20  last February, when retailors have had the ability to

21  surcharge under the settlement, there's been virtually no

22  movement in that direction.  That is compelling evidence that

23  the ability to surcharge has very low value to the class.

24          Further, this settlement has the potential to make

25  matters much worse by giving the defendants an incredibly

Fairness Hearing - Mr. Armour                                    98

 1   broad relief, release of claims for future bad conduct.  This

 2   settlement is worse than losing at trial.

 3           Losing would not bar the courthouse door to merchant

 4   challenges to future unfair carting district practices,

 5   including bad practices being applied to new technologies like

 6   mobile payments.

 7           In fact, Mr. Gallo's comments today indicated their

 8   intent to do that exactly.  And I might add, as far as I'm

 9   aware, all of the payment technologies that Mr. Gallo

10   referenced this morning did not exist when this case was first

11   logged.

12           The settlement provides nothing of any real value

13   beyond the money, and the scope of the release will allow the

14   defendants to raise rates and recoupe the money before it's

15   even distributed to the merchants, which is precisely what

16   happened in the Visa Check case.  We strongly urge the court

17   to reject this settlement.

18           Thank you, your Honor.

19           THE COURT:  Thank you, Mr. Armour.  Who's next?

20           MR. COOK:  Your Honor, I'm Michael Cook with

21   Wal-Mart stores.  I appreciate the opportunity to present in

22   front of the court. I'm responsible for Wal-Mart's acceptance

23   of Visa and MasterCard products.  I've been involved in retail

24   payments for more than 20 years.

25           Let me begin by saying that Wal-Mart believes that

Fairness Hearing - Mr. Armour

1   the payments market has not functioned competitively for

2   decades.  Additionally, the proposed settlement provides

3   grossly disproportionate value to the defendants will only

4   worsen the problem.

5           Further, the release poses considerable risk of

6   continued abuse by the defendants.

7           Today I'd like to make three specific points:

8   First, we are concerned about mobile and the future payment

9   technologies that were discussed earlier here.  The defendants

10  have already taken the position that their Honor-All-Cards

11  rule applied in mobile devices, and that claims about these

12  are released.

13          Embodied by this settlement, the defendants will

14  likely try to reinterpret their existing rules, enforce

15  merchants, like Wal-Mart, to accept their mobile payments,

16  blocking competitors from entering a merging market for mobile

17  payments.

18          Second, the release purports to cover all existing

19  Visa/MasterCard rules and any substantially similar rule.

20  Despite the fact that so much hinges on it, that particular

21  phrase, substantially similar, is inherently vague and the

22  settlement will result in endless litigation over its name.

23          Seemingly, small changes by Visa/MasterCard to their

24  rules can add significant effect on our business.

25          For example, what if under the guides of

Fairness Hearing - Mr. Armour

1    substantially similar language the defendants make a small

2    rule change that requires Wal-Mart to submit transaction dated

3    to the networks, such as items, specific data of the

4    customer's purchases.  This could invade customer privacy and

5    undermine the trust relationship between the merchant and the

6    consumer.

7            Each year Visa and MasterCard publishes dozens of

8    rules.  Which of those new rules will be deemed substantially

9    similar to the nearly 6,000 pages of rules that exist today?

10           Finally, we're troubled by the potential that the

11   release will hinder Wal-Mart's ability to pursue claims in

12   foreign markets, such as our ongoing claim against Visa and

13   MasterCard for anticompetitive behavior in the UK.  If the

14   proposed settlement is approved, the defendants will no doubt

15   argue that foreign claims are released, even though behavior

16   outside the United States clearly was not at issue in this

17   case.

18           In trying to refute this point, class counsel argued

19   that certain provisions of the release are limited to claims

20   in the United States.  However, in the future Visa and

21   MasterCard may argue that paragraphs 68C through -I are not

22   limited to the United States.  Any settlement that fails to

23   specifically exclude foreign claims would be unfair and

24   inappropriate.

25           Clearly the class including Wal-Mart was not

Fairness Hearing – Mr. Celli

1    adequately represented and has not received adequate relief to

2    justify this broad release.  In fact, the proposed settlement

3    provides damages of $7 billion for the entire class.  But

4    taken individually, Wal-Mart damages alone exceeds $7 billion,

5    not to mention the untold damages we will incur in the future.

6          I strongly urge the court to reject this proposed

7    settlement, at the very least no (b)(2) class should be

8    certified.  And absent class members who took no part in the

9    negotiations should be allowed to opt out of the settlement.

10         Thank you, your Honor.

11         THE COURT:  Thank you, sir.

12         MR. CELLI:  Good afternoon.

13         THE COURT:  Good afternoon.

14         MR. CELLI:  Your Honor, I'm Andrew Celli from the

15   National Retail Federation.

16         We are the largest trade association of merchants in

17   the United States.  We represent virtually everyone in this

18   class.  And we know the merchants better than everyone else,

19   virtually.  Certainly better than interim class counsel.

20         The merchants know us and they trust us.  They trust

21   us because the NRF has developed a substantive expertise in

22   the US payment system.  We've helped lead the fight for fair

23   payment of congress for many decades.  We were an original

24   plaintiff, as your Honor is aware, in the In Re Visa Check

25   card case, and we regularly meet with the Department of

Fairness Hearing - Mr. Celli

1    Justice, Congress, regulators, all kinds of folks on these

2    issues.

3              Your Honor, with overwhelming numbers our members

4    are telling us, and what we know from our own experience, is

5    that this proposed settlement is profoundly unfair.  It is

6    unfair because it leaves unchallenged the mechanisms by which

7    Visa and MasterCard and their banks collude and raise

8    interchange.

9              And it's unfair because it traps merchants.  It

10   traps them in an incomplete and ineffective opt-out mechanism

11   that deprives them of remedies for future misconduct.  Your

12   Honor, we urge you to right or reject this settlement.

13             Now, the credit card market is broken.  There is not

14   much a dispute about that, at least on the plaintiffs' side

15   among the objectors.

16             THE COURT:  What do you mean by right?  How do I

17   right it, in your opinion.

18             MR. CELLI:  I was kind of saving that for the end.

19   I think there are two principles fundamentally that the court

20   should adopt.  The first is freedom of choice.  Everyone

21   should be permitted to opt out of this in totality, root and

22   branch.  That would go a very long way towards righting it.

23             And the second is to send back these parties to

24   renegotiate these issues.  It can be changed.  The leverage is

25   there.  A deal like this one is far too good for Visa and

Fairness Hearing - Mr. Celli

1    MasterCard to pass up.  We know that because we have reached

2    the 25 percent avoidability threshold that they exist on and

3    still they're here at the table.

4           We believe that interim counsel should be directed

5    to review the submissions and look for the fairness that's

6    called for by all the objectors and try to negotiate through

7    that, and to use that leverage to better the settlement.

8           It's not for me to stand here and make specific

9    suggestions, but the point -- my point, your Honor, is that

10   the leverage exists.

11          The settlement is broken as well, not just the

12   credit card market.  Our members have told us time and time

13   again, virtually without dispute, that the money being offered

14   here is barely a token to them.  Those dollars will be clawed

15   back by Visa and MasterCard in no time.  And the (b)(2) relief

16   is simply not applicable to the vast majority of the class.

17   It's not going to help them.  So to put another way, this

18   settlement --

19          THE COURT:  Okay, we're back to the drawing board.

20   You don't have to get too specific.  In Gross, what would a

21   fair settlement look like?

22          MR. CELLI:  Well, I think it would -- it would be

23   rise and fall on the ability of people to choose to be part of

24   it, that's the first point.  And the second point is it would

25   have to address interchange, which this settlement doesn't.  I

Fairness Hearing - Mr. Celli

1  mean, it's remarkable to me, reading the cases, that a

2  negotiation of this length and complexity with all of these

3  players and still the settlement says that interchange is

4  unrestricted in any way.

5           THE COURT:  Address it how?

6           MR. CELLI:  Pardon me?

7           THE COURT:  Address it how?

8           MR. CELLI:  Well, for one thing there are kinds of

9  things about price coordination, price signaling, all the

10 kinds of typical injunctive relief that you find in an

11 antitrust settlement.  We don't see that here.

12          I think we can address many of the objections that

13 have been raised about the scope of the release by combining

14 the two, the (b)(2) and (b)(3) together.  I think we can

15 address many of the objections that have been raised here.

16 But as I said, I don't want to negotiate this in open court.

17 That's not my role, clearly.

18          So what we have is a settlement that, from our

19 perspective, your Honor, offers no real relief and no opt out

20 either.  Damage claims are taken off the table.

21 Honor-All-Cards is taken off the table.  Interchange cartel

22 pricing is re-enforced.  And the small guys, particularly, are

23 caught in this trap.

24          Your Honor, in 2005, in the wake of Visa Check card

25 case, NRF was asked to be a class representative in this case,

1   and we declined.  Principally because we believed that the

2   structural problem in the credit card marketplace can best be

3   addressed by either a purely injunctive case or by regulations

4   or legislation or both.

5          At that time and throughout this case we believed

6   that since damage claims were the core of it, a time would

7   come when NRF and its members would have a choice to stay in

8   and accept what was negotiated by these lawyers or to opt out

9   and walk away.  No one ever dreamed that millions of American

10  retailers would be deprived of future remedies and not be

11  given the chance to say no.

12         And I would submit, contrary to what was posited

13  earlier by Mr. Wildfang, the failure of large numbers of

14  smaller retailers to opt out of the (b)(3) class is not a vote

15  of confidence.  It's a sad recognition that this is a "damned

16  if you do, damned if you don't settlement."

17         Your Honor, we're here today to speak primarily for

18  those retailers whose voices tend to get drowned out.  We're

19  here to say that the retailers who opted out but haven't sued,

20  and those who stayed in because they felt they had no choice,

21  strongly object to the settlement.

22         Many are like those who joined in our objections in

23  our declarations.  They've actually put their money where

24  their mouths are.  They have opted out of the (b)(3) class.

25  They've turned their backs on millions of dollars in relief,

1   all in the hope that this court will do the fair thing and

2   make their opt outs complete.

3            It's a powerful message and we ask your Honor to

4   heed it.

5            Going forward we ask you to adopt two basic

6   principles:  Freedom of choice and send the parties back to

7   negotiate.  Use the leverage that exist.

8            As it stands, your Honor, the settlement rewards

9   perpetrators and traps the victims.  But it's not hopeless.

10  It can be made fair and you have the power to make it so.

11  Thank you.

12           THE COURT:  Thank you.

13           Good afternoon, Mr. Begleiter.  How are you?

14           MR. BEGLEITER:  Good afternoon, your Honor.

15           My name is Robert Begleiter.  With me, your Honor,

16  this afternoon is Chris Meyer of Consumer Reports Consumers

17  Union.  He's going to be taking up the bulk of the five

18  minutes.  I'm going to be speaking very briefly, to say that I

19  represent the National Federation of Independent Business, US

20  PIRG and Consumers Union.

21           These organizations, the National Federation of

22  Independent Business represents the most powerless of

23  merchants.  They are small merchants, universally small

24  merchants.  They have all concluded that this settlement, I'm

25  not going to repeat the reason -- they're in the objections

1    and you heard a lot of it today.  It's their business to

2    decide what's in their own best interest, and they've decided

3    that this settlement is contrary to their best interest.  The

4    other two groups represent the regular old consumers, as your

5    Honor described himself.  That is what their dedication is.

6            They've analyzed this and they believe the consumers

7    are being injured -- will be injured by this settlement.  I'd

8    love to talk more, but I believe it's more important to hear

9    from Mr. Meyer for Consumers Union.

10            THE COURT:  Good afternoon, Mr. Meyer.

11            MR. MEYER:   Good afternoon, your Honor.

12            I'm Chris Meyer, vice president of External Affairs

13   at Consumer Reports, and I very much appreciate the

14   opportunity to appear today to object to the proposed

15   settlements and both the rule changes in the settlement class

16   and the cash settlement class.

17            As you just heard, I believe our voice is important

18   because we're one of the only groups whose sole constituency

19   are or is for individual consumers, which is after all

20   ultimately what the antitrust laws are here to protect.  We

21   are part of the settlement class because we accept MasterCard

22   and Visa Credit card payments from our subscribers and our

23   donors.  We are a nonprofit membership organization and the

24   largest independent consumer protection organization in the

25   United States.

1          Consumer finance is one of our primary areas of

2    focus.  For decades we've educated and advocated on personal

3    finance, including credit and debit cards.

4          Our opposition to the settlement at issue here

5    follows squarely on our long tradition of financial protection

6    for consumers.  In fact, and as we noted in our submission

7    last May, our opposition is such that we opted out of the cash

8    settlement.  For us it's not a small chunk of change.  And if

9    we could we would opt out of the rules, change the settlement

10   class as well.

11         For us historically neither retailers nor card

12   companies and issuing banks have looked after consumer

13   interest in a manner that we deem sufficient.  Though in this

14   case the interest stated by many of the merchants in the

15   plaintiffs' class align with those of the consumers that we

16   represent.  Consumer reports, as we have long reported, even

17   when specific avenues of hidden or excessive charges are

18   closed off, banks seek other ways to impose more and different

19   fees on consumers.  New fees of retailers are unlikely to

20   challenge, as they themselves are no longer affected.

21         The proposed settlement in this case, whether it's

22   extremely broad mandatory release -- by the way, the type of

23   overbroad release that consumer reports has opposed when

24   applied to consumers or other class action members will

25   adversely affect not only the merchants who are bound by the

Fairness Hearing - Mr. Meyer

1    settlement but also hundreds of millions of American consumers

2    who have no voice here.

3            The proposed settlement does not sufficiently

4    address unlawful behavior, compensate parties that were harmed

5    or facilitate more competition in the interchange market.

6    Competition that would ultimately benefit consumers.

7            In the case of credit card interchange fees, the

8    non-negotiable fees set by Visa and MasterCard for issuing

9    banks ultimately result in higher charges for consumers,

10   whether they pay by card or in cash.  And that outcome will

11   not be prevented by this settlement, because fixing excessive

12   fees will still be permitted.

13           Because the proposed settlement permits Visa and

14   MasterCard to continue to fix interchange fees, it validates

15   in perpetuity a method by which the payment card companies can

16   engage in anticompetitive fixing of prices and can continue to

17   charge excessively high fees that are hidden from but

18   ultimately injure consumers.

19           The excessive swipe fees will continue to be passed

20   down to consumers in the form of higher prices.  Merchants

21   cannot or will not charge higher prices to consumers who pay

22   with Visa and MasterCard credit cards, rather than cash or

23   other payment cards.  So the higher charges are affecting all

24   consumers.

25           Any surcharging that does take place -- and of

Fairness Hearing - Mr. Meyer

1    course my organization will not impose a surcharge on a

2    portion of its subscribers –– is likely to be too little or

3    too isolated to put any effective downward pressure on overall

4    interchange fees.  Not to mention on the price of consumer

5    business services.  But most problematically, perhaps, the

6    relief protection for Visa and MasterCard and issuing banks

7    going forward.  Perhaps, tantamount to a blanketing immunity

8    for a wide array of present and future anticompetitive

9    behavior.

10            Because Consumer reports under the current

11   settlement will be forced to rely on a sweeping release, we

12   and other consumer organizations may well be chilled from

13   bringing litigation challenging into consumer practices in the

14   future.  Even if you believe those cases are permitted under

15   the terms of the settlement, the cost of threshold litigation

16   concerning whether the release prohibits class members from

17   bringing such litigation is itself a potent chilling factor

18   should the settlement be approved.

19            If it is approved, it will also almost certainly

20   lead to a very significant unintended consequence.  Unintended

21   by the court, consumers, and merchants, but not by the

22   defendants.  And that likely will force all far more

23   meaningful legislator reforms that consumer reports and other

24   consumer advocacy groups favor.  The forms that we believe

25   will be vitally important if consumers are to gain protection

Fairness Hearing - Mr. Meyer

1    from tomorrows excessive fees and predatory practices.

2              THE COURT:  What are those reforms?  Legislative

3    and --

4              MR. MEYER:  I think mobile payments is a huge area

5    that right now consumers don't have protection.

6              THE COURT:  What are the actions by the regulators

7    as the legislators that you hope for or anticipate in the

8    future?

9              MR. MEYER:  In the case of all payment forms, the

10   newest payment forms are the ones that don't have the same

11   consumer protection that afforded those who currently use

12   debit cards or credit card.  So in the wild west, that's what

13   we're particularly there for consumers, for the wild west new

14   payment systems.

15             Approval of this settlement by this court, a well

16   respected jurist, with the most recent major cases in the

17   payment industry, may support the argument that interchange

18   and related issues have been resolved and need not be

19   addressed by Congress.  The danger, that Congressional

20   oversight and --

21             THE COURT:  I could approve it and say Congress

22   ought to address it.  I could say that.  I could eliminate

23   that inference.  Right?  I could say, we are a vehicle to try

24   to resolve like a systemic problem and avoid that inference

25   you fear.  Right?

Fairness Hearing – Mr. Meyer

1    MR. MEYER: You could do that. Whether Congress

2  would listen to you or to me.

3         The danger of that congressional oversight and

4  protection of consumers will become far less likely as a

5  particular concern to us and our members as methods of payment

6  is development, as we just talked about. I can skip that.

7         Payment card and --

8         THE COURT: Just slow down. You're killing

9  Charisse.

10        MR. MEYER: Thank God, one more sentence. Payment

11  card and banking industry executives are well aware of this,

12  and have in fact been quoted to the media as having the result

13  as a significant reason why they support this settlement.

14        MR. BEGLEITER: Your Honor, if I just may say

15  something following --

16        THE COURT: Well, were you done, Mr. Meyer?

17        MR. MEYER: I just wanted to respectfully thank you,

18  and oppose the proposal.

19        THE COURT: Okay, thank you.

20        Yes, Mr. Begleiter.

21        MR. BEGLEITER: Your Honor, if you were to write,

22  well, I look to Congress for an ultimate fix. Mr. Gallo and

23  his people will go to Congress and say, you know --

24        THE COURT: I'm sorry, it's my faulted. I didn't

25  mean to detract us from the merits of this. You don't need to

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Fairness Hearing - Mr. Yurasek

1    address that.

2              MR. BEGLEITER:  Okay.

3              THE COURT:  Who's next?

4              Good afternoon.

5              MR. YURASEK:  My name is Jason Yurasek, from Perkins

6    Coie on behalf of First Data, your Honor.

7              THE COURT:  Okay.

8              MR. YURASEK:  I just want to talk about three

9    topics.  The first is that First Data is truly unique.  It's

10   unlike any other participant in these proceedings.

11             THE COURT:  They all say that.

12             MR. YURASEK:  This time it's true.  The second is,

13   you heard a little bit about this, so I'll try not to repeat.

14   But there's absolutely no support in the case law post Dukes

15   for the approval of this (b)(2) class the way it's crafted.

16             And the third is that Visa and MasterCard are not in

17   the business of interpreting releases narrowly.  We know they

18   interpret them broadly.  So let's go to the first.

19             First Data, we put in our briefs some pictures for

20   you and your clerks to show exactly where First Data plays.

21   And First Data is in the shoes of the issuers, and its in the

22   shoes of the acquirers.

23             It's servicing merchants.  It's providing equipment.

24   It's taking credit cards for those -- the charges for those

25   services to some merchants, which brings it into this class.

1          But it competes with Visa and MasterCard on many

2    levels.  It does it in a debit network that it has, the star

3    network.

4          It makes no sense to -- this is my primary argument.

5    It makes no sense to First Data, from First Data's

6    perspective, for you to modify the settlement.  Use discretion

7    under Rule 26(d); grant our motion to opt out.  Let us out.

8    We really don't care about what happens with the settlement if

9    we're out of it, because we don't have a dog in this fight.

10         So that's the easy way out.  Assuming you don't take

11   the easy way out, the case law -- the problem -- you know

12   this.  The problem that the objectors have with the release

13   under (b)(2) is it releases damages.  And what's clear is not

14   a single case in the Second Circuit, since Dukes, has approved

15   a (b)(2) class that releases damages like this.  And what's

16   even more problematic is in Professor Sykes' opinion, he

17   recognizes that the relief, the injunctive relief under the

18   (b)(2) class is -- and I want to use his language, because I

19   think you called someone out for not using his language.

20         THE COURT:  You don't have to use his language.  You

21   can paraphrase, it'll be fine.

22         MR. YURASEK:  I like the language.

23         Highly uncertain and maybe small.  And he focuses

24   his analysis on the $7 billion on the money side, on the

25   (b)(3) side.

Fairness Hearing - Mr. Yurasek

1       And if I recall correctly, last November the one

2  concern I heard you express was, what's the value of the

3  (b)(2) injunctive relief in comparison to the value of the

4  monetary relief under (b)(3).

5       (Continued on the next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Fairness Hearing - Mr. Yurasek

1          MR. YURASEK:  And you said that you were going to

2     appoint an economist to help the Court.

3          And now the economist has spoken.  The economist has

4     spoken that its quite clear that the injunctive relief that

5     money damages do predominate, they're not incidental, and

6     that, as a result, under the due process rights of First Data

7     and other objectors and all members of the class they have to

8     have a right to opt-out.

9          If that opt-out is not granted, this settlement is

10     vulnerable in the Second Circuit and above that if it goes

11     higher than that because its clear that the due process rights

12     require an opt-out right in this (b)(2).

13          You asked Mr. Neuwirth whether there could be a

14     (b)(2) where damages are released.  Yes, not this one, not the

15     way its crafted.

16          The scope of the release is -- this issue should not

17     be kicked down the road.  Visa and Master Card clearly want to

18     kick the -- how broadly construed or narrowly construed this

19     release should be down the road and that shouldn't happen.

20          What we've heard from Visa and Master Card in the

21     pleadings, today, is that they interpret the release so

22     broadly it would include things like Visa's new pricing model,

23     FANF, F-A-N-F.  Its a fixed fee.  This pricing model came out

24     last year in April 2012.  If the pricing models that came out

25     in 2012 are included, everything's included.  All Visa and

Fairness Hearing - Mr. Korologos                   117

1    Master Card have to do is shout out their 6,000 pages of rules

2    and say, "Give me an R, give me an E," et cetera in any

3    lawsuit going forward.

4           And to the extent Visa and Master Card said to the

5    Court representations about, "Oh, First Data and

6    American Express shouldn't worry about that," and trying to do

7    some parole carve-outs, again, that doesn't cut it.  The Court

8    has an obligation, fiduciary duty, to class members to protect

9    them.  And the second easiest way to get out of this issue

10   from First Data's perspective, short of granting its motion to

11   opt-out, is to allow opt-out rights under the (b)(2) Class.

12          Thank you.

13          THE COURT:  Thank you.  Who's up New York.

14          Good afternoon, your Honor.

15          MR. KOROLOGOS:  Philip Korologos from Boies,

16   Schiller & Flexner from American Express.

17          Your Honor, I'd like to address some of the things

18   that have not been addressed here today.

19          First of all, with respect to 23(b), first thing you

20   have to do is get past 23(a).  And 23 (b) presently says, You

21   can certify a class after 23(a) has been satisfied and it

22   gives different types of classes.

23          This issue as the Second Circuit makes clear in

24   Literary Works must be given heightened scrutiny.  "When a

25   court is asked to certify," I'm quoting from Literary Works at

Fairness Hearing - Mr. Korologos

1    what looks like Page 249, your Honor.  "When a Court is asked

2    to certify a class and approve its settlement in one

3    proceeding the Rule 23(a) requirements designed to protect

4    absent class members demand undiluted even heightened

5    attention."  Referring to the United States Supreme Court case

6    AmChem.

7            As the Second Circuit has also made clear in the

8    Central States case at Page 245 in addressing the -- one of

9    the elements of 23(a), and specifically, the fourth element,

10   adequacy of the class representatives.

11           The Second Circuit made it clear, "In determining

12   whether the representative parties will fairly and adequately

13   protect the interests of the class, Federal Rule of Civil

14   Procedure 23(a)(4), 'A district court must determine whether'

15   plaintiff's interests are antagonistic to the interests of the

16   other members of class."

17           The Second Circuit in Denny made a similar statement

18   that proposed class representatives must have no interests

19   antagonistic to the interests of other class members.

20           There can be no question here, your Honor, that

21   given the debate based on what's happened here today that

22   there are antagonistic issues between other members of the

23   class and American Express.

24           There is an overlapping class that is suing

25   American Express.  Mr. Arnold's clients are suing

Fairness Hearing - Mr. Korologos                    119

1    American Express on similar issues, not just the existence of

2    that lawsuit, which is clearly independently enough, but the

3    very rules at issue here with the settlement are designed to

4    put pressure using the class plaintiffs' argument here to put

5    pressure on American Express; that's what they told the Court

6    in their December 2012 letter to your Honor.

7             The class plaintiffs have also represented here that

8    one of the things that might happen because of this is that

9    merchants might choose to ignore American Express's rule.

10   What could be more antagonistic than the relationships we have

11   with 3 million merchants to be told that they should simply

12   ignore the rules in order to get the benefits of this deal?

13            Other examples are that they have told the Court

14   just last week that the settlement here will help the class

15   and the individual plaintiffs in the American Express case and

16   the Department of Justice prevail in that litigation.

17            Now, with all due respect to my friend, Mr. Arnold,

18   we don't think they will prevail, nor do we think the

19   Department of Justice is going to prevail.  Our rules are

20   pro-competitive.  We stand in a very different situation than

21   Visa and Master Card given the lack of market power that

22   American Express has compared to the dominant players in the

23   market.  We've heard Mr. Wildfang today say that merchants may

24   choose to drop American Express.  Again, antagonism between

25   American Express and other members of the class.

Case 1:05-md-01720-MKB-JO  Document 6094  Filed 11/20/13  Page 120 of 281 PageID #: 70965

1        Where does this leave us?  The Second Circuit in the

2   Superspuds case made clear the kinds of problems that this can

3   create in connection with the scope of a release.

4        In the Superspuds case, the Second Circuit made it

5   clear that it is improper for some class members to benefit in

6   their settlement at the expense of other class members who

7   have antagonistic or different interests.

8        Now, a very similar situation to this one came up

9   before Judge Kaplan in the Southern District in the In Re

10  Auction Houses case.

11        In that situation, your Honor, the plaintiffs there,

12  all of a sudden, represented by my firm had negotiated a

13  release that was just like this one, a heavily negotiated

14  release.  And there, the release included a release of the

15  United States as a forum for actions to be brought based on

16  foreign auctions.  There was a settlement of the antitrust

17  claims for the auctions that occurred in the United States.

18  But for auctions that occurred outside the United States,

19  there was a release just of the forum of the United States.

20  They could bring their claims elsewhere in the forum where the

21  auction occurred, for instance, but just within the

22  United States it was not.

23        And what Judge Kaplan noted was that, just as

24  Mr. Wildfang said here this morning, that scope of the release

25  was heavily negotiated.  There were objectors who opposed it,

1   those who had dual claims -- foreign claims and U.S. claims.

2   Just as American Express opposes in this motion here.  That in

3   and of itself is enough to show, as Judge Kaplan held, that

4   there is too much antagonism for that portion of the release

5   to be included and he declined to approve that settlement once

6   that aspect of the release was taken out.

7            That's similar to the antagonism here.  That

8   direction, however, can't exist for American Express because

9   the changes that we've sent, tiny little steps from the

10  defendants along the way here, do not correct the prejudice to

11  American Express.  They're never going to correct the fact

12  that we're being sued and that there is an antagonism that

13  prevents class certification of any class that includes

14  American Express.

15           They have, first, taken the tiny step of changing

16  the notice back when we objected at the preliminary approval

17  stage, but that doesn't change the release.

18           Next, the little step they took when they wrote in

19  their reply papers here without addressing it with

20  American Express first to change the order in a small way to

21  say, It doesn't cover claims that include an injury for

22  network competitors or words to that effect.

23           First of all, that, again, doesn't change the

24  release.  They're clearly trying to get something more than

25  they're entitled to.

1          The second, it doesn't address nearly everything

2     that American Express deals with, and some defendants may even

3     claim it doesn't address them at all because they're not a

4     network, only Visa and Master Card are networks.  And while

5     American Express is a network, it also is an acquirer, it also

6     is an issuer, it is also a transaction processor.  None of

7     those are included in the exclusion.

8          And in addition the change that was suggested today

9     by Mr. Gallo has circularity problems in it in that, as

10    Mr. Shinder pointed out, at the end of Paragraph 68 they

11    expressly identify paragraphs A through I as claims that could

12    have been brought in this litigation and it's the

13    expansiveness of that list that creates problems.

14         But let me again emphasize, your Honor,

15    American Express's issues and the concerns it has of being

16    included in this class do not stop with the release.  They

17    instead go far beyond that.  And its the antagonism that

18    exists between American Express and members of the class

19    including the class representatives here that prevent any

20    proper certification of a class that includes American Express

21    and does respectfully request that we be given either an

22    opportunity to opt-out or to have a class redefined by your

23    Honor to exclude at least all parties that would otherwise be

24    part of the class that were being sued by members of the class

25    on similar grounds at the time that the settlement was being

 1   negotiated.

 2            Thank you, your Honor.

 3            THE COURT:  Thank you.

 4            MR. SHINDER:  Do you want one more, your Honor?

 5            THE COURT:  Lets go to quarter of.  Whoever is left

 6   on your list, Mr. Shinder, needs to be prepared.

 7            I'm going to ask Natasha to go down and see if we've

 8   got any I know there's at least one who is vocal about it.

 9            Any other folks who want to address the Court, Ill

10   report back to you at 2:00 o'clock as to where we are with

11   that.  But those folks may eat into as much as 25 minutes of

12   your time.

13            All right?

14            MR. SHINDER:  Okay.

15            THE COURT:  So you may need to consult with one

16   another on the fly and adapt to a shortened period than the

17   allocated time of Mr. Shinder's list, its up to you.  Who.

18            Who are you again?

19            MR. KELLER:  Good afternoon, your Honor, I'm Michael

20   Keller and I am the General Counsel Cardtronics.

21            THE COURT:  Good afternoon.

22            MR. KELLER:  Cardtronics is the leading ATM service

23   provider service in the nation.  We own or operate more than

24   80,000 ATMs in five different countries.

25            Cardtronics is both an owner and an operator of

1    ATMs.  In the U.S., we operate about 50,000 ATMs.  We are not

2    a merchant, we have nothing to do with this litigation.  The

3    litigation had nothing to do with ATMs or the ATM space.

4    We're just an innocent bystander who was drawn into this case

5    only when we received a notice of the settlement and wondered

6    why and then realized that the broad language of that

7    settlement may have included us.

8             So, as I explained in my declaration filed with the

9    Court, that we object to the settlement because we could not

10   have broad a claim in this litigation.  We could not gotten,

11   nor are we getting any relief in the litigation.

12            The class plaintiffs and defendants now agree that

13   Cardtronics, along with other ATM owners, should not be

14   covered by the settlement, there appears to be no dispute

15   about.  Class plaintiffs have defendants have confirmed that

16   position in papers filed with the Court.

17            Therefore, in our view, the only question before the

18   Court with respect to ATMs is how the Court can modify the

19   settlement if, after listening to everything today, it enters

20   into a settlement agreement or approves one, to ensure that

21   that settlement agreement does not in any fashion affect ATM

22   owners and operators with respect to the class defendants and

23   we've proposed two ways to do that.

24            The Court can do that by changing four definitions

25   in the settlement agreement, or by modifying the final order

1    issued by the Court.

2           With respect to the to definitional option, we've

3    proposed three specific changes to four definitions in the

4    settlement agreement.  The definition of the settlement

5    chases, the definition of Visa branded cards and Master Card

6    branded cards and the definition of the debit card.  The

7    details of those are set forth in my declaration Paragraphs 28

8    through 31.

9           THE COURT:  And you're going to mercifully spare us

10   of those details.

11          MR. KELLER:  I am.  I'm picking up here.

12          Unfortunately, class plaintiffs and defendants have

13   not accepted our proposed definitions and they have not

14   explained to us why they have rejected them or not accepted

15   them.

16          But, in any event, they have proposed to the Court

17   some alternative language, and specifically, they proposed

18   with respect to ATMs that the definitive class settlement

19   agreement in this class settlement order and final judgment,

20   "Do not bar any action by an ATM operator to the extent that

21   it asserts an injury as the operator of a ATM."

22          Unfortunately, we believe that defendants' proposed

23   language fails to provide ATM owners and operators the

24   necessary protections from the settlement agreement; however,

25   without our requested definitional changes.

Fairness Hearing - Mr. Keller

1              So however in the Court decides to approve the

2    settlement without the definitional changes we suggest to the

3    Court that it modified its final order and do so by adding to

4    that order three things.

5              We would propose that the Court add in the language

6    the settlement does not, "Bar or release any action or claim

7    by an ATM operator or owner."

8              Secondly, we would propose to add a phrase, the

9    beginning of defendants' additional language, to clarify that

10   despite any ambiguity in the settlement agreement, the

11   defendant's proposed language, if included in the final

12   judgment, would control the interpretation of the settlement

13   agreement.

14             Accordingly, we propose the following introductory

15   clause.  "Notwithstanding Paragraph 1-BB, 1-BBB, 1-B, 2-A,

16   2-B, 112, 114 and 116 of the definitive class settlement

17   agreement the parties agree and find and the Court finds that,

18   'that introductory clause --

19             THE COURT:  That first part wasn't a quote?

20             MR. KELLER:  Ill let the record speak for itself.

21             THE COURT:  Go ahead.

22             MR. KELLER:  By adding this clause, the Court would

23   make it clear in any subsequent court that any definitional

24   ambiguities in the settlement agreement are superseded by this

25   Court's language in the final judgment.

Fairness Hearing / Mr. Keller

1    THE COURT:  Got it.

2    MR. KELLER:  Finally, we believe the language in the

3  order should have an additional provision that implies; that,

4  to the extent, if it asserts an injury, as to the operator of

5  the ATM is ambiguous, you know, draft the settlement agreement

6  where it talks about ATM operators.

7         There's a difference between ATM owners and

8  operators, so we respectfully request that the language be

9  modified to include that it does not bar any action or claims

10  by an ATM owner or operator or owner, "to the extent that it

11  asserts injury in any capacity other than as a merchant that

12  could have been brought as a claim in MDL–1720."

13         I appreciate your time this morning, your Honor, and

14  respectfully request those modifications, either additionally

15  to the settlement agreement, or in the final order if and when

16  the Court issues such a settlement agreement.

17         THE COURT:  Thank you, Mr. Keller.

18         A reminder especially to those listening in remote

19  locations that Ms. Murrow is going to be in the central jury

20  room at 1:00 o'clock.  Anyone who is not already on the roster

21  to speak, who made a timely notice of intention to address the

22  Court, should tell that to Natasha.  She's going to take your

23  name, take down the subject that you intend, or subjects you

24  intend to address, and provide that information to me and I

25  will make appropriate rulings at 2:00 o'clock.

Fairness Hearing - Mr. Keller

128

1    We're in recess on the motion for final approval of

2  the proposed settlement but I want to see the parties and

3  remind everyone you don't have to leave if you don't want, but

4  if you stick around you have to be quiet.  I will see the

5  parties on the Order to Show Cause that I issued in connection

6  with the Managed Care Advisory Group and those two payment

7  processors issues.  So those parties come up everyone else

8  we're in recess.

9              (A recess in the proceedings was taken.)

10             (Continued on the next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  This is the Order to Show Cause.

 2              Counsel for Managed Care Advisory Group and those

 3    other two payment processors.

 4              MR. SHEEHAN:  Patrick Sheehan for Managed Care

 5    Advisory Group.

 6              THE COURT:  Good afternoon.

 7              What was your last name?

 8              MR. SHEEHAN:  Sheehan.

 9              THE COURT:  Okay.  And you, sir.

10              MR. CAMBRIA:  John Cambria from Alston & Bird.  We

11    represent Global Payment Systems.

12              THE COURT:  Global Payment.  Sorry, I forgot.

13    What's your last name again?

14              MR. CAMBRIA:  Cambria, C-a-m-b-r-i-a.

15              MR. HARRINGTON:  Seth Harrington from Ropes & Gray.

16              THE COURT:  Sorry.  What is the name?

17              MR. HARRINGTON:  Heartland Payment Systems.

18              THE COURT:  What's your last name?

19              MR. HARRINGTON:  Harrington.

20              MS. BERNAY:  Alexandra Bernay for the class.

21              THE COURT:  Okay.  Good afternoon to all of you.

22              Well, I ordered to you show cause.  I have to have

23    to tell you at the outset that this falls into the, "What do

24    you think you're doing?"  Category.

25              As far as I'm concerned, you can't tell people that
```

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Order to Show Cause

1   you're going to file a claim on their behalf where they

2   haven't authorized you to just because you have this payment

3   processing relationship.

4           I'm all for steps or mechanisms that, if there is a

5   settlement, will ensure merchant participation but they have

6   to authorize you to do it.  You can't say you're going to do

7   it in the absence of their opting out, opting out of what?

8           I'm not the slightest bit persuaded that these

9   contractual relationships that exist between Heartland and

10  Global and the merchants come remotely close to authorizing

11  this.  I'm persuaded there is a tremendous capacity for

12  confusion that's already realized itself.

13          I don't know, I can't figure out what you're doing

14  and why I shouldn't issue an injunction that says, "Right now,

15  stop."  Who knows whether there is going to be a final

16  approval of this settlement, and order at your cost a

17  corrective notice to every single one of these merchants that

18  says, "Whatever you may have heard before we're not going

19  forward without explicit authorization that we don't yet."

20  "We're not going to file a claim on your behalf."  "We're not

21  going to charge you 75 bucks."  "We're not going to take

22  20 percent of your recovery."  Why shouldn't I do that?

23          Anybody want to add to your written submissions?

24          MR. CAMBRIA:  I would like to, your Honor.

25          John Cambria on behalf of Global Payments.

Order to Show Cause

1             With respect to the authorization issue, the

2    contract that we have with our customers, many of whom are

3    long established, provides that amendments can be made in the

4    normal course precisely on this basis and there is --

5             THE COURT:  This doesn't.  I read what you

6    submitted.  It doesn't say -- that doesn't convert into an

7    authorization to make claims or participation in the class

8    action settlement.  I'm not persuaded at all by that argument.

9             MR. CAMBRIA:  It does not say that in hac verba,

10   your Honor, but the evidence before your Honor, and I point to

11   the declarations, of Mr. Schaeffer, both of them.  This is the

12   way business is done in this industry and how we have

13   conducted business with our customers for a long period of

14   time.

15            And 18(b) says that a notice can be sent describing

16   amendments to the credit card services agreement or an

17   entirely new agreement, which agreement or amendment will be

18   binding upon the merchant and so forth.

19            And the case law, your Honor, in our jurisdiction in

20   these agreement are governed by Georgia law have provided time

21   and time again that precisely these types of amendments in the

22   context of credit cards and bank cards and things like that.

23   Where that is the way business is done, your Honor.

24            When American Express amendments its agreement with

25   its millions of card holders, they don't send something out

1    and say, "This amendment will be effective if you sign this

2    and send it back."  And the banks don't do that and the credit

3    card companies don't do that.  And I submit respectfully that

4    our agreement is of a piece with them.

5              THE COURT:  You're talking past my concern.  My

6    concern is that the payment processing relationship between

7    Heartland and its merchants is different in kind from a

8    merchant participating in the settlement a class action.  And

9    this -- for one thing, you haven't even told me that this

10   amendment has been made.

11              MR. CAMBRIA:  We have the notices.

12              THE COURT:  It could be made.

13              But second, its fundamentally different what you're

14   talking about arrogating to yourself at a cost of 20 percent

15   of the settlement which is the right to make a claim that's

16   different from these amendments to the payment processing

17   relationship.  Maybe I'm wrong.  You haven't persuaded me I'm

18   wrong.

19              MR. CAMBRIA:  If I may have, Judge?

20              First of all, its not 20 percent, respectfully.  Its

21   a set fee plus ten percent of the recovery.  And, in fact,

22   when that fee is shared among resellers, which represents a

23   significant amount of our customer base anyway, the numbers

24   are a lot less than the footnote that class counsel's briefs

25   suggested.

1          We have hundreds and hundreds of thousands of

2    customers, your Honor.  And, at bottom line, the question is,

3    Are they going to participate in the settlement or are they

4    not?

5          THE COURT:  I'm completely with you on that.  And I

6    don't understand why and maybe Ms. Bernay will address this.

7    I don't understand why it doesn't make a lot of sense if there

8    is a settlement like the one contemplated that there isn't

9    some arrange made with class counsel.  They have a duty to the

10   member of the members of class with class counsel that seeks

11   court approval, that implements the settlement by having it,

12   having notification and the preprinted forms and the claims

13   processed by you guys.  That makes all the sense in the world

14   to me.

15         But you don't have their approval.  I don't think

16   you have the customers of the payment processing business, I

17   don't think you have their approval.  You haven't persuaded me

18   that you have.  And you haven't persuaded me that your right

19   to amend the payment processing contracts embraces this.

20   That's my concern.

21         MR. CAMBRIA:  I hear your concern, your Honor, I'm

22   going to try to address it.

23         First of all, I don't think I'm adverse to class

24   counsel.  I think we're on the same side, I think we represent

25   the same interests.  I think we have a shared interest in

Order to Show Cause

1   trying to see that there is, with this historic settlement,

2   maybe a different participation rate than has become the

3   standard operating procedure in large-scale class actions of

4   this type.

5            So the question becomes how do we bring about that

6   salutary result that we agree, and I think your Honor agrees,

7   and even class counsel agrees is an objective we ought to try

8   to accomplish.

9            And that is what the Global Payments Program does.

10  People can easily, on a simple form, opt-out and have their

11  fees completely refunded if that's what they choose to do.

12           In fact, in the short time that the program has been

13  put in place and notified to our customers, we have something

14  about in the range of 3,650 opt-outs.  So it is not a

15  difficult thing for customers who choose to either file their

16  own claim or, for whatever reason, don't want to participate

17  to not be affected in any way either by participating in the

18  proposed settlement fund or paying any fees.

19           There is no customer of my client, and we're a

20  merchant advocate, who is harmed by this unless one would

21  posit the ridiculous proposition that someone who was not

22  going to participate in this settlement fund at all is annoyed

23  at the fact that they end up getting some money that they

24  hadn't anticipated.

25           THE COURT:  I'm not persuaded by that at all.

Order to Show Cause                    135

1           MR. CAMBRIA:  Well, your Honor?

2           THE COURT:  Let me finish the thought.

3           MR. CAMBRIA:  Sorry.

4           THE COURT:  Class counsel might sit down with your

5    company and a lot of others like your company and they might

6    negotiate a more favorable return for the class participants

7    than the one they get from you.  Maybe it will be a little

8    less maybe it wont be 75 bucks as the fee.  Maybe it wont be

9    ten percent or whatever the percentage is.  Maybe they will do

10   better if you don't just decide on your own that unless they

11   opt-out you're filing it for them.

12           I have an obligation to these people.

13           MR. CAMBRIA:  Absolutely.

14           THE COURT:  There are merchants out there dotting

15   the street corners out here and they're not -- they have a

16   thing of value if there's a settlement in this case.  Its a

17   thing of value that it may make all the sense in the world to

18   pay your client to process for them but that's got to be their

19   call.  You can't just say, "We're going to do it unless you

20   tell us not to."  I see that as clear as I see night as

21   different from day and you've done that and I think it's

22   wrong.  Its going to confuse them, it might cost them some

23   money, and its not right.

24           MR. CAMBRIA:  Well, if I may, your Honor?

25           We have engaged class counsel and, in fact, there

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Order to Show Cause

1   was a dialogue going on.  And, in fact, my client,

2   Global Payments, specifically at the request of class counsel,

3   sent a second notification, and its attached to the first

4   Schaeffer declaration, addressing the objections that they had

5   raised at that point in terms of terminology of "opt-out" and

6   one or two other things.

7           We are prepared to work with class counsel as you

8   have suggested and thought we had started that process and

9   we're prepared to continue it.  We're prepared to send

10  whatever sort of notification class counsel thinks is

11  appropriate that would be accurate although, frankly, on this

12  record, your Honor, there is not a single thing they have

13  pointed to that my client has said to its own customers that

14  anyone could describe as remotely false or misleading in any

15  way, and light years away from the types of consideration that

16  led to you to issue your 2006 decision in the Visa Check case.

17  There's nothing like that.

18          Global Payments is an advocate for its customers and

19  you're right, the overwhelming percentage of our hundreds and

20  thousands of customers are the dry cleaners, the pizza shops,

21  the diners, the restaurants.  These people don't walk around

22  with an iPad, your Honor, they're not going to go online.

23          THE COURT:  You're just repeating yourself.

24          Anything you want to say.

25          MR. HARRINGTON:  I want to echo what Mr. Cambria

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Order to Show Cause

1    said with regard to Heartland Payment Systems.

2              As our submission said, Heartland is willing to work

3    with class counsel.  We haven't sent a notice other than a

4    generic notice regarding this program and we think that

5    sending a notice to abdicate Heartland's merchants to increase

6    the participation in the settlement would be beneficial to the

7    class members.

8              THE COURT:  How many merchants are we talking about?

9              MR. HARRINGTON:  Heartland processes for

10   approximately 170,000 small and midsized merchants.

11             THE COURT:  How many of those have gotten this, "You

12   can opt-out?"  I don't mean to be -- let me back up.  I don't

13   need to be any hash harsh that is necessary.

14             I think getting all of your clients to participate

15   is a good thing but you're missing something.  There is a

16   little step in there you're missing, which is them authorizing

17   you to do it.  You can't just say, "I'm going to do it unless

18   you tell me not to."  So, you know, don't take it the wrong

19   way, but I think your clients have done something wrong.

20             Have all 170,000 got this opt-out notice?

21             MR. HARRINGTON:  Heartland hasn't just sent out a

22   notice in the billing statement that it was working with MCAG

23   for this process and it hasn't sent out the opt-out notice or

24   anything like that.

25             THE COURT:  And all 170,000 gotten that?

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

 1              MR. HARRINGTON:  I believe so.  I would have to

 2     confirm that.

 3              THE COURT:  Who are you again?  Global?

 4              MR. CAMBRIA:  Global Payments, your Honor.

 5              Its little bit complicated.  We have a couple

 6     different classes customers.  There are direct customers of

 7     whom there are about a quarter million.  And there are other

 8     customers that we have through resellers or so-called ISOs

 9     which is common in the industry.  And when you throw that in,

10     the numbers get into the hundreds and hundreds of thousands.

11              THE COURT:  250 is hundreds and hundreds of

12     thousand, too.

13              MR. CAMBRIA:  I can't give you have a precise number

14     of exactly how many have gotten the notification about the

15     service program for the class action settlement but its a

16     substantial number of them.

17              THE COURT:  Ms. Bernay do you want to be heard.

18              MR. SHEEHAN:  Your Honor, can I add one thing to

19     those numbers?  Patrick Sheehan for MCAG.

20              We estimate that approximately half a million

21     merchants have been contacted through the opt-out program thus

22     far.  We also estimate that, if allowed to proceed on behalf

23     of all the card processing companies and merchants, we believe

24     we ought to be able to we might reach as much as 30 percent of

25     the class.  And I just want to bring those numbers to your

1    attention, your Honor.

2         THE COURT:  Right.  Thank you.

3         MS. BERNAY:   Your Honor, we wholeheartedly agree

4    with you so I don't have much to add other than I would point

5    out that you did also receive a declaration from the claims

6    administrator pointing out some of the problems and

7    significant costs that could also be engendered by this

8    program.  And then also the number of calls and e-mails that

9    we're getting pretty much on a daily basis objecting to this.

10         So, overall, for us, we just feel that its improper.

11   Now, you've heard that its at least a half a million merchants

12   who have been signed up for this without knowledge or consent

13   without what we think is legal authority.  We think they

14   should have the choice and, of course, we would welcome if

15   people want to work with them and offer this as a service, I

16   don't see any problem with that.  The problem, of course, is

17   this automatic enrollment.

18         THE COURT:  What relief are you seeking?

19         MS. BERNAY:  We sought a cease and desist order to

20   cancel whatever contracts may have already been out there.

21   Corrective notice to the class.

22         THE COURT:  What do you mean by corrective notice?

23         MS. BERNAY:  Well, something along the lines of what

24   you said earlier which is that its not going to happen without

25   your authorization; there wont be a charge appearing, and you

Order to Show Cause

```
 1    will no longer are be signed up for this opt-out program.

 2           And then we also sought out in the order to note

 3    that if a settlement was approved that the merchant would not

 4    have their claim filed on their behalf unless they

 5    affirmatively enrolled in a program and that they would not

 6    actually have to use a third-party claims filing service if

 7    they didn't choose to they could work with class counsel and

 8    the claims administrator at no charge to get their full value

 9    of their claim.

10           We also sought a list of the entities that MCAG

11    worked with because we don't know the parameters of the

12    program.

13           THE COURT:  Anything further?

14           MR. CAMBRIA:  I think I hear you loud and clear on

15    the authorization point and I fear that anything else I say is

16    not going to change your mind.

17           That being the case, may I ask that we have two

18    business days to see if we can work out a form of consent

19    order with class counsel to present to you?

20           THE COURT:  That's part of the relief I was going to

21    grant similar to what we did more recently with those

22    merchants.  I know you're claiming those are not false

23    statements, I understand that.  Assuming for a moment you're

24    right about that, that kind of passes in the night with my

25    concern.
```

Order to Show Cause

```
1          MR. CAMBRIA:  I got it.
2          THE COURT:  Recently, with the merchantsobject.com,
3   I believe that was worked out in the first instance by
4   counsel.  There's a way to do it.  You have to have regular
5   communication with the merchants.  The one reason I'm thinking
6   up here is a complicating overlay when you look at it from the
7   perspective I just don't want to confuse these people any more
8   than they're already confused.  You know, they're not -- many
9   of them don't have lawyers like this coming into court and I
10  don't know whether we're going to have an approved settlement
11  or not, we're arguing that today.
12          So, A, I want what you're doing to stop.  No more of
13  this.  No more missives to them about claims against a
14  settlement fund about opting out so the conduct that's
15  complained of I'm ordering you to stop.
16          And, you know, I think there's a likelihood of
17  success on the merits because I don't think there is
18  authorization here.  I think there's irreparable harm because
19  there will be tremendous confusion if there is an ultimate
20  settlement that's generated by these communications as
21  compared to what's going to come in the class notice.
22          I think there's a possibility for many duplicative
23  claims which will be inefficient as can be even if you
24  withdraw the one that you filed.
25          So I think there's a likelihood of success on the
```

Order to Show Cause

 1   merits and irreparable harm.  All the requisites for

 2   injunctive relief are met here.  So I want to you stop it and

 3   I want you to sit down with counsel for the class and figure

 4   out a way to most efficiently figure out a proposed corrective

 5   mechanism.  It may well be, I'm just thinking out loud, and I

 6   don't mean to -- one reason I want you to o yourselves is

 7   you're in a better position if you work jointly to do

 8   something that's most efficient and takes into account

 9   efficiency and efficacy.  But I have in my mind's eye a

10   statement the next time there's an indication to your

11   customers kind of stand down, forget what we said before.  I'm

12   not saying you shouldn't even be working together about

13   possibly joining forces on a mechanism that the payment

14   processors are an integral part of for ultimate claims

15   participation.  Sounds like a good idea to me but I leave that

16   up to class counsel.  I leave any corrective notice in the

17   first instance up to class counsel and counsel for Heartland

18   Payment and Global Payments and what's the acronym?  ACAG?

19              MR. HARRINGTON:   MCAG, Managed Care Advisory Group.

20              THE COURT:  You need a better acronym.

21              I will leave that up to you in the first instance.

22   What we'll do is -- I don't see why it has to be two days.

23   Why don't we take, you know, a ten-day period and then you'll

24   propose to me the relief that you think is you want to propose

25   jointly.  To the extent you disagree, submit to me what you

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Order to Show Cause                                                    143

1   agree on and then separate submissions on what you disagree

2   on, and then Ill rule on that and well do that today is

3   September 12th.  Why don't we do by Friday, the 27th unless

4   someone thinks that schedule is it either too lazy or too

5   ambitious.

6           MR. CAMBRIA:  Do you envision a hearing or argument

7   on that date?  I ask only because I'm going to be out of the

8   country that which.

9           THE COURT:  A joint submission about how you're

10  going to fix this.  And if not, at least a joint submission

11  that covers some territory and then separate submissions about

12  how you disagree.

13          MS. BERNAY:  Very well.

14          MR. CAMBRIA:  Very well.

15          THE COURT:  Thank you.  Have a good day.

16          MS. BERNAY:  Take care.

17          (Recess in the proceedings.)

18          (Continued on the next page.)

19

20

21

22

23

24

25

Ms. Selendy

1         THE COURT:  Okay, let me repeat what I mentioned

2    before the court reporter came back.  I was down here a couple

3    of minutes early.  I'm going to hear continued argument from

4    objectors on Mr. Shinder's list until 2:45, then I'm going to

5    hear from Thomas Wenning, David Seltzer, Debra White,

6    David Wagner, Virginia Danoti, Liz Garner, Clay Lambert, and

7    Ftema, F-t-e-m-a, Raysor, R-a-y-s-o-r, beginning at 2:45.

8         To the extent those folks aren't in the room, they

9    should come up from where they are.

10        THE CLERK:  They're outside, judge.  They're right

11   outside the courtroom.

12        THE COURT:  Oh, they're there already?

13        THE CLERK:  Some of them.

14        THE COURT:  All right.  I hate to keep them waiting

15   out there.  As many as will fit in the jury box, you can

16   invite in.

17        THE CLERK:  Okay.

18        THE COURT:  And then, Ilene, I see some spots here

19   on the benches, inside the swinging doors.  Why don't we use

20   that space.  If we can fit them all in here, I prefer that.

21   Thank you.

22        Okay, who's up next?

23        MS. SELENDY:  Good afternoon, your Honor.

24        Jennifer Selendy, on behalf of Discover.  In light

25   of what you heard this morning, I want to make a couple of

Ms. Selendy                                      145

 1   preliminary points to orient your Honor to where I'm going and

 2   where I'm not going.  So first of all, Discover objected to

 3   the release.

 4          I think you've heard an awful lot about the relief

 5   already today.  And our objections are set forth in our brief,

 6   and they overlap substantially with the objections that you've

 7   heard from other competitors, like First Data and American

 8   Express.  We are not only a network competitor, we compete as

 9   an issuer, we compete as an acquirer.  We want out.  So I'm

10   not going to go over that ground again.

11          Secondly, you've also heard a great deal about

12   whether or not surcharging is going to be an effective means

13   of merchants driving price competition between networks.

14   We've heard a lot of argument from the objectors that that's

15   not going to happen, that that's not realistic.  You've got

16   the Amex rules.  There are a lots of things that I know you

17   have heard.

18          But what I want to say is that Discover's position

19   really flows from an assumption.  And it is an assumption, and

20   we think it's a big one.  It's an assumption that the

21   merchants are going to do exactly what they say they're going

22   to do in terms of using surcharging to drive price competition

23   between the networks.  Because, in fact, my clients have heard

24   from some merchants and that has given rise to our issues with

25   the level plainfield provisions in the agreement.

Ms. Selendy

```
1              So everything I'm going to say really flows from

2    that assumption.  And with that said, your Honor, I believe

3    that if I came before you, outside the context of this

4    settlement and I said that my client had been harmed, and my

5    client was aware that Visa and MasterCard –– who together hold

6    a 70 percent –– approximately 70 percent share of the network

7    services market –– had gotten together and they had drafted

8    identical rules that were going to impair my client's ability

9    to compete as a competitor and other rival networks' ability

10   to compete, I think you would agree that we had a problem.

11             But from Discover's perspective that is essentially

12   what has happened here.  That under the guides of settling

13   claims, that they violated the antitrust laws.  Visa and

14   MasterCard got together in settlement discussions, in

15   mediation, and they crafted identical provisions of the

16   settlement agreement that benefit themselves at the expense of

17   their competitors and actually harmed competition in new and

18   different ways.

19             Specifically, the level plainfield provisions of the

20   settlement agreement create one set of rules that will apply

21   to merchants who want to surcharge, if they only accept Visa

22   and MasterCard.  And they apply a very different and more

23   onerous set of rules on those merchants if they accept other

24   network competitors like Discover.

25             And for all of the reasons that we detailed in our
```

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Ms. Selendy

1    brief, these provisions threaten severe harm to Discover by

2    impairing our ability as a 6 percent network to maintain

3    merchant acceptance.

4           Visa and MasterCard ironically dub these provisions'

5    level plainfield rules.  But we feel it is a breathtaking fete

6    that they have managed to get before your Honor for final

7    approval of provisions that are facially anticompetitive.  And

8    to see that, your Honor, wanting to give you an example that

9    I've not come up with but through my client's discussions with

10   merchants has come up with, as a way of describing what the

11   problem is and just how bad this is for Discover.  So in my

12   illustration, in my example, you have to imagine that there is

13   a merchant that Visa and MasterCard charge the same price for

14   network services.  And suppose that MasterCard would like to

15   approach this merchant, and suggest that for an attractive

16   price decrease, for a discount, it would enter into an

17   agreement with a merchant and the merchant will impose a

18   surcharge on Visa.

19          And that will steer cardholders to use their

20   MasterCard instead of their Visa cards at stores.

21          And let's just say that there are probably many

22   people in this room who would like to see that type of price

23   competition between Visa and MasterCard.  And if that merchant

24   only accepted Visa and MasterCard, the deal would be

25   straightforward and they would simply comply with the

Ms. Selendy

1    settlement agreement provisions that relate to the amount of

2    the surcharge and how it has to be disclosed and all that.

3    But if that merchant also accepts Discover, there is a much

4    greater burden that is placed on the merchant.

5         And the permissibility of this hypothetical deal

6    under the settlement agreement is uncertain.  The merchant

7    would have to first determine whether there is any Discover

8    rule that, quote, limits surcharging of Discover, even though

9    the proposed transaction has nothing at all to do with

10   Discover.  The merchant has to look to Discover's rules.

11        Discover and Visa in this hypothetical might even

12   disagree.  They might disagree that Discover's rules limit

13   surcharging.  But that won't matter.  What matters is what is

14   Visa's interpretation of Discover's rules going to be, and how

15   might they use that when they borrow it under the level

16   plainfield provisions to block a deal that a merchant wants to

17   make with MasterCard.

18        If Visa does borough Discover's rule, the merchant

19   has to ask:  Well, what is that effect on this deal?  And in

20   short, Discover and its rules are forcibly injected into

21   merchants' efforts to drive price competition between Visa and

22   MasterCard.  And what merchants's have said to us is:  Rather

23   than engage in this complicated and burdensome analysis and

24   deal with the uncertainty about whether a hypothetical

25   MasterCard deal is permitted, merchants have indicated to

Ms. Selendy

1    Discover that they're going to drop the acceptance of

2    Discover, or unless discovery repeals any rule that is

3    perceived to impair their ability to drive this price

4    competition between Visa and MasterCard.

5              It's our position, your Honor --

6              THE COURT:  You're assuming that Discover's

7    interchange rate would be triggered by the level plainfield.

8    That it's high enough.  That it would be triggered by that

9    level plainfield provision?

10             MS. SELENDY:  It would apply whether or not -- the

11   only thing that matters to make them apply is whether they

12   believe the merchant or Visa/MasterCard believe that we have

13   any rule on the books that limit surcharges.  And even if we

14   don't believe we have that rule because, by the way, we

15   repealed our no-surcharge rule at the merchant's request some

16   time ago.  So in a minute I'll get to the exception that the

17   defendants believe exists, but it's really no exception at

18   all.

19             And our position is that Discover should not have to

20   change the way it competes, including by dropping rules that

21   it needs in order to be a competitive network so that dominant

22   networks, Visa and MasterCard, can have some supposed

23   protection against Discover that they have made and can make

24   no showing that they actually need.

25             You may recall at preliminary approval that

Ms. Selendy

1    plaintiffs' counsel stood up here and said there were three

2    problems in the industry:  Visa, MasterCard, and American

3    Express.  I think the reason they didn't mention Discover is

4    because we dropped our no-surcharge rule and we do not have

5    the market power to maintain rules that merchants oppose.

6           Discover has been in favor of merchants' ability to

7    steer to lower cost networks from the day we opened our doors

8    and the we would welcome any true reform in the industry that

9    provided that type of price competition.  The parties,

10   however, have offered no justification for including Discover

11   in the settlement agreement, and there is none.

12          Visa and MasterCard contend in their reply brief

13   that the level plainfield provisions are designed to ensure

14   that they, the dominant networks, are not disadvantaged

15   vis-a-vis a higher priced competitive credit card brand.  But

16   Discover is not a higher priced brand and Discover has no

17   ability to price -- no ability to price above the market that

18   is set and always has been set by Visa and MasterCard.

19          If Discover were to try to raise its prices above

20   competitive levels or impose a no-surcharge rule against the

21   rule of merchants, then merchants would simply stop accepting

22   Discover branded cards.  Because unlike Visa and MasterCard we

23   are not a must-have to merchants.

24          Because the market disciplines Discover, and that

25   is, after all, how it's supposed to work, discover cannot

Ms. Selendy

1    possibly create an unlevel plainfield for Visa and MasterCard

2    and they have given no basis for dragging us into this

3    settlement agreement.

4            In their reply brief they say that your Honor can

5    approve the settlement agreement, even if it's anticompetitive

6    as long as it's not, per se, illegal.  But in the complaint

7    that we attached to our intervention papers, your Honor, we

8    have alleged a per se illegal boycott.

9            And in your Honor's case of Bennett v. Cardinal

10   Health, which was decided in 2003 and cited by the defendants,

11   the court articulated the proper test, stating that the joint

12   conduct by two competitors that was aimed at and caused harm

13   to another competitor warranted per se treatment.

14           Here, joint action by Visa and MasterCard directed

15   through its merchant customers harms their rival Discover.

16           So we believe that we have alleged a per se

17   violation and your Honor should not approve the settlement

18   agreement over our objection.

19           They also say that, oh, it's not a problem if you're

20   cheaper, you're going to just be fine.  But when you dig into

21   the details of those visions, your Honor, you see that Visa

22   and MasterCard have actually made a rigged cost comparison in

23   the level plainfield provisions.

24           So they say okay, to determine whether Discover is

25   cheaper, you compare merchant discount rates to interchange

Ms. Selendy

1    plus fees.  And by stuffing more fees into the Discover bucket

2    they get to ensure that we're always more expensive because

3    they're making an apples to oranges comparison.  So we have no

4    offramp here.  We have no way, even by being cheaper, to get

5    outside these level plainfield provisions.

6            So, finally, they argue that these leveled

7    plainfield provisions are akin to most favored nation clauses

8    and they cite a bunch of cases.  But every one of those cases

9    are about unilateral conduct.

10           The Ocean State Physicians case was a section two

11   case, it involved unilateral conduct where most favored nation

12   clauses have been found to be legal, it has been in cases of

13   unilateral conduct.  Likewise, in the Marshal Clinic case

14   Judge Posner found no horizontal collusive imposition of the

15   most favored nation clause.  And here that is exactly what we

16   are alleging is horizontal collusive, that in effect harms

17   Discover and prevents us from being able to compete.

18           The final point that I would make is that the real

19   harm that we're pointing to is their ability to make Discover

20   an obstacle between them and the merchants.  We are forcibly

21   made an obstacle to the merchants being able to drive price

22   competition between Visa and MasterCard.  And that doesn't

23   even address the problem that they prevent us from being a

24   price competitor too.

25           So for all of these reasons, your Honor, we ask that

1  we are removed as a competitive card brand.  And if you don't

2  do that, then just strike the level plainfield provisions all

3  together, because they shouldn't be able to get together and

4  dictate the terms on which their competitors act.

5          Thank you.

6          THE COURT:  Thank you.

7          MR. GENTILE:  Good afternoon, your Honor.

8          Mitch Gentile, for the State of Ohio.  I have with

9  me Paul Moore from the State of California.  We're going to

10 divide our time.  I'm going to speak for a few minutes and

11 then Paul is going to take over from there.

12         It's an honor to be here.  Forty-eight states have

13 voiced their concern over the settlement release that

14 specifically releases parens patriae claims, as well as fines,

15 civil and other penalties.  These types of claims and remedies

16 belong exclusively to governmental entities who are not

17 parties to this private action, are not represented by any

18 class representative, and there have been no claims filed by

19 states in this action.

20         Before, in other cases, states worked with the

21 plaintiffs and the Department of Justice.  We in fact have

22 previously sued Visa and MasterCard.  We settled our case.  We

23 signed a release, and we're willing to stand by that release.

24 We do not want to be dragged into this litigation, this

25 private litigation where they are attempting to go beyond what

Mr. Gentile                                        154

1   the law would allow them to release.  I'm not going to go into

2   all of our arguments in detail.  I just mention that they lack

3   standing under Article III to represent us.  They cannot

4   satisfy Rule 23(a)(4) standards.  And it's against public

5   policy for private parties to try to abrogate rights of

6   sovereign states and other governmental entities by putting

7   that language in their -- in their settlement agreement that's

8   made a part of their release, specifically paragraphs 33 and

9   68.

10          We have two simple remedies, your Honor.  The first

11   one that the defendants have rejected outright, and that is to

12   simply remove from paragraphs 33 as well as 68 the parens

13   patriae language and to remove the civil fines and/or other

14   penalties from that -- from that agreement and release.

15          They have rejected our attempt to resolve our

16   differences by negotiation.  We failed after many attempts to

17   try to get that language done.  And what I would like to

18   present to the court is simply language that -- that the

19   state's could live with.  If you're not going to do what is

20   most likely the simplest and the most direct method, and

21   that's just to remove the offensive language, the language

22   that we think goes beyond anything a private party can do in a

23   release, then we suggest the following language:

24          The definitive class settlement agreement and this

25   class settlement order and final judgment do not bar parens

Mr. Moore

1  patriae, law enforcement, or regulatory actions by any

2  governmental or quasi governmental entity to enforce sovereign

3  or quasi-sovereign interests.

4          And we understand the legitimate concern of the

5  defendants concerning a resolution of settled claims.  So we

6  would also propose that the final order also state expressly

7  that no state or local governmental entity or official,

8  including states' attorneys general; that are acting in their

9  law enforcement or parens patriae capacity are a settlement

10  class releasing party.

11          And that the only claims -- only -- excuse me.  That

12  only claims that arise solely from a state or local

13  governmental entity's activity as a member -- I'm sorry, as a

14  merchant may be released.  And then only if that entity

15  elected to remain in the (b)(3) class.

16          Your Honor, I'll let Mr. Moore speak now.

17          THE COURT:  Thank you, sir.

18          MR. MOORE:  Good afternoon, your Honor.

19          Paul Moore from the State of California.  Thank you

20  for the opportunity to address the court.

21          As Mr. Gentile said, we were sent here to convey to

22  the court the concerns of the 48 states, including the nine

23  objector states, that were raised in our brief.  We stand on

24  that brief.

25          I want to make two points that I think sort of

1  amplify what Mr. Gentile said and maybe give you some

2  direction and some context.

3          Mr. Wildfang said this morning that he would like to

4  have fewer words in the release.  We have a very simple

5  solution.  Strike out the reference to parens patriae and/or

6  civil fines and/or other penalties.  That is the easiest,

7  cleanest solution.  And it gives clear direction to the

8  parties in this case, any future parties, and also any future

9  courts who are talking determine the scope of this particular

10 release.

11         We've worked hundreds of staff hours trying to --

12 amongst ourselves and with the defendants talking about the

13 concerns that we have.  When we learned of the release, we

14 contacted defense counsel -- the plaintiffs' parties and said,

15 the release language that you are including in the settlement

16 agreement infringes on our law enforcement authority.  The

17 reaction we got was not:  We'll remove that.  It was let's

18 have a proviso that will explain this release.

19         And the proviso that the defense counsel suggested

20 in their letter of September 9th to you actually goes even

21 further.  It says that any claims released here acts as a bar

22 for any future parens patriae or law enforcement claims.

23         So the settlement release as it stands now

24 inferentially prohibits parens patriae claims.  And the

25 proviso that they recommended directly prevents -- it directly

Mr. Moore                                                                    157

1    prevents parens patriae and law enforcement claims.

2              So we're asking the court, instead of having two

3    different documents or two different sets of language that

4    interpret one or the other, the cleanest way to do this is

5    strike that from the release.

6              If your Honor decides not to strike that language,

7    then what Mr. Gentile suggested is something that the states

8    could at least discuss.  The concerns with the language that

9    defense counsel has recommended is, one, no attorney general

10   has actually reviewed it because at the staff level we have

11   yet to be able to agree with defense counsel.  But more

12   importantly, it presents a certain problem for a number of

13   states, including California.

14             An example is, in California, the California

15   business and professions code Section 16760(a)(1) states that

16   any release does not operate as a bar to any parens patriae

17   claims.  It acts as a set off, not as a bar.

18             So the language that defense counsel actually

19   proposes goes beyond what Mr. Gallo says is the full extent of

20   the law; it goes beyond the full extent the law.  And what

21   we're asking for here is at a minimum allow the states to

22   retain this law enforcement authority and not allow this

23   release.  This release will tie the hands of the state and the

24   attorneys general office.

25             So the last point.  If the court is not inclined

1    to -- to take our strong recommendation, we ask the court to

2    wait for the Supreme Court to issue its opinion, including

3    California and Ohio, before the Supreme Court called

4    Mississippi versus AU Electronics Incorporated that's

5    scheduled to be heard on November 6th.  Forty-five states

6    signed amicus the briefs in that case as well.  And the

7    question presented in that case is:  Does a parens patriae

8    claim classify as a mass action under a class action fairness

9    act, when the claims are -- state is the sole plaintiff, the

10   claims are state law claims, and the attorney general has the

11   statutory and the common law authority to present all claims?

12           Now, I recognize that the case before the court

13   today does not address CAFA issues.  But the theory is

14   essentially the same.  Do private parties have the ability to

15   bring in a state or force a state to give up its own law

16   enforcement authority, which is against public policy?  Or in

17   this case, the exact opposite.

18           The U.S. Supreme Court in Alden v. Maine said that

19   forcing an unwilling state to proceed in federal court

20   infringes upon that state's sovereign dignity.  The court also

21   said in Alfred Snapp v. Puerto Rico, parens patriae authority

22   is a critical component of state authority.  It is what allows

23   a state to pursue litigation and to protect the well-being of

24   its population.  The exact opposite is operating here, where

25   private parties are trying to take away a state's law

Mr. Webner

1  enforcement authority.  And that's exactly what the parties

2  are trying to do.  There is no other explanation for the

3  defense counsel's resistance to removing the state's law

4  enforcement ability from the release.

5          My final point is:  Allowing the release to contain

6  parens patriae and fines and other penalties sets a dangerous

7  precedent that allows private parties to set claims into a

8  release where states were not even involved.  Basically it

9  says they can include in a release a way to avoid any kind of

10  law that they don't want to have a fight about.  In this case,

11  you can imagine would create a problem.  Two private parties

12  can say in their release, we don't have to follow tax laws.

13  If the court removes the language from the release now, it

14  sends a very strong message that the state law enforcement

15  authority is not to be infringed upon.

16          Thank you.

17          THE COURT:  Thank you both.

18          MR. WEBNER:  Good afternoon, your Honor.

19          THE COURT:  Hi, good afternoon.

20          MR. WEBNER:  My name is Bob Webner, I'm representing

21  WellPoint, Inc., and a number of its subsidiaries.  And with

22  me today is Adam Feinberg.  Adam represents more than 20

23  Blue Cross/Blue Shield plans and their subsidiaries.  We're

24  here today to briefly present to you the health insurers'

25  objections to the settlement.

Mr. Webner

1              And, your Honor, the settlements focus in on one

2       point.  And that is that as health insurers our clients are

3       subject to special regulations and special penalties that

4       don't apply to anyone else represented by all of the fine

5       lawyers in the courtroom today.

6              The special regulation, your Honor, is the Patient

7       Protection and Affordable Care Act.  And the regulation that

8       is the source of the concern is the medical loss ratio

9       regulation.  The medical loss ratio regulation provides that

10      for policies purchased by individuals as opposed to by

11      employers or groups, at least 80 percent of premium revenues

12      have to be spent on either clinical services or healthcare

13      quality improvement activities.  And, your Honor, if health

14      insurers don't meet that threshold or 80 percent payment, they

15      are subject to making rebate payments to eligible release, and

16      that's what I referred to earlier as the penalty that is

17      applicable to us and not applicable to anyone else who is not

18      subject to the Affordable Care Act.

19             Payment card fees, such as interchange fees, are not

20      either clinical care or healthcare quality improvement

21      activities.  Therefore, paying those fees will count against

22      health insurers as they strive to comply with the 80 percent

23      threshold requirement and they will push us farther into the

24      realm of potentially having to make rebate payments.

25             Your Honor, that is the concern that we have.  We

Mr. Webner                                        161

1    want to be able to protect ourselves against that possibility.

2    We want to be able to keep our options open.  So as the

3    Affordable Care Act takes effect and we see how things are

4    going, in terms of who is purchasing insurance and whether

5    more individuals are purchasing Visa payment cards, we can

6    protect ourselves against the risk of being hit with these

7    rebate payments.

8           Your Honor, the legal effect of this, we think, is

9    pretty clear.  We don't think we should have been part of the

10   class at all because we're differently situated.  For purposes

11   of (b)(2), we're not part of the cohesive class because the

12   special regulation applies.

13          We also believe that the settlement as drafted and

14   applied to us is simply not fair, reasonable and adequate

15   because we are subject to penalties and special regulatory

16   requirements that don't apply to other people.  And what the

17   settlement does is it negotiates an approach that may or may

18   not, based on what we've heard today, benefit merchants.  But

19   in terms of what it does for health insurers, it puts us

20   increasingly at risk.

21          And that's why, your Honor, our request to you is

22   let us out.  Just modify the settlement or hold that the

23   settlement needs to be modified to allow us to get out of the

24   settlement.  The only response that we've received, your

25   Honor, to the arguments we've made is the plaintiff say that

Mr. Webner

1    this is all speculative, but it isn't.  What's clear is that

2    no one thought of this.

3              None of the named plaintiffs is a health insurer.

4    None of the plaintiffs' attorneys apparently considered the

5    special effect of this.  And, your Honor, I want to just

6    mention, I think Dr. Sykes said something that was pretty

7    interesting about this and instructive.  At page 26 of his

8    report he compared the ability of governmental entities and

9    the ability of individual litigants to effect broad economic

10   change.

11             And the point he was making is governmental entities

12   have significant advantages in doing that.  They have more

13   staffing.  The range of expertise they have is greater.  Their

14   investigative powers are greater.  The economic input they

15   receive is broader.  And the objectivity they bring to the

16   table is different from what private litigants do.

17             And what Dr. Sykes said as a bottom line is:  When

18   you have governmental entities doing it, there is less of a

19   risk of error.  And, your Honor, what we would submit --

20   what's happened here is the risk of error that Dr. Sykes

21   identified has happened.  And that error is including health

22   insurers in the settlement.

23             So, your Honor, we would ask that you correct the

24   error and hold that the settlement needs to be modified so

25   that health insurers are not included.

Mr. Feinberg

1          THE COURT:  What difference does it make vis-a-vis

2     this 80-percent rule if there is no settlement as opposed to

3     there being a settlement?

4          MR. WEBNER:  It doesn't make a difference, your

5     Honor, in terms of the 80-percent rule.  I'm not sure I —

6          THE COURT:  Are your clients and all these

7     healthcare companies in jeopardy of violating this 80-percent

8     rule and they get stuck with rebates?  And if they are, are

9     they in greater jeopardy if I approve this settlement?  And if

10    so, why?

11         MR. WEBNER:  They're not in greater jeopardy, your

12    Honor.  What happens if you approve the settlement is there's

13    nothing we can do about it.  Right?  We're stuck.  We can't

14    sue Visa and MasterCard to say, Hey, you're racking the rates

15    up to the skies; it's killing us.  We're over the MRI

16    threshold.  We can't do anything about it.  That's why we want

17    out.

18         WellPoint has opted out of the (b)(3) component of

19    the settlement or objecting to the (b)(2) component of the

20    settlement because the release is mandatory on us and prevents

21    us from protecting our interest.

22         MR. FEINBERG:  Your Honor, Adam Feinberg on behalf

23    of a number of Blue Cross/Blue Shield entities.  I want to go

24    back to your question.  For some of my clients, at least,

25    there is a specific way that they're harmed by these MLR rules

Mr. Feinberg

1    that require that they spend at least 80 percent on healthcare

2    related funds.  And the reason for that is they get no benefit

3    out of the surcharging elements of the settlement, because the

4    whole idea of the MLR is:  Whatever you receive from your

5    customers you have to spend 80 percent of it on healthcare.

6    You can only spend 20 percent on everything else, including

7    interchange fees.

8           Well, if you surcharge, you're collecting more from

9    your customers.  That increases the denominator in the

10   equation and it means that, all other things being equal, you

11   have to take 80 percent of what you just collected on the

12   surcharge from your customers and spend it on healthcare.  You

13   can't use it to pay interchange fees.

14          So the whole idea of being able to surcharge doesn't

15   work if you're a healthcare provider and you're at or

16   underneath the MLR threshold.  And to Mr. Webner's point about

17   this not being speculative, there are healthcare insurers,

18   including some of my clients, right now that don't meet that

19   MLR requirement.  We put in several declarations from

20   healthcare insurers.  They're in exactly that boat.

21          But there's a whole other element in addition to the

22   medical loss ratio of rules under the Affordable Healthcare

23   Act that are important here, and that is a creation of the

24   healthcare exchanges that will be up and running.  You will be

25   able to get insurance under these exchanges starting on

Mr. Feinberg                                        165

1    January 1st.  But actually insurance will offer it under these

2    exchanges starting in three weeks, on October 1st of this

3    year.

4            And that has a number of very important things to

5    it.  First of all, it means that insurance companies are going

6    to be taking credit cards sometimes for the very first time.

7    And I have several clients, including one we put in a

8    declaration for, Independence Blue Cross.  And they have never

9    taken a credit card transaction in their history up to 2012.

10   Never.  Not one.  So they are, by definition, not in the

11   (b)(3) class.  They can't get damages.

12           Yet we put in -- their declaration states that

13   they're going to be taking high volumes of credit card

14   transactions starting in three weeks, when the exchanges are

15   up and running.  And that is highly unfair.  Because they are

16   going to be bound by the (b)(2) release, which is just as

17   broad as the (b)(3) release.  So they don't -- they give up

18   just as much as everybody else but they get no cash.  And

19   ironically they don't even get any cash under the interchange

20   fund, even though that period is meant to cover damages that

21   start from the end of July of this year and run for eight

22   months.  Even though during a good chunk of that time they

23   will be accepting credit cards and they will be paying

24   interchange fees, yet they're cut out of that.  Because

25   technically -- not technically, they are not in the (b)(3)

Mr. Pentz                                         166

1    damages class.

2              And this leads to a larger point, which is:  They --

3    our clients simply were not adequately represented.  Every

4    single one of the class plaintiffs is a current merchant.  Our

5    clients, to some extent, are not current merchants, they are

6    the future merchants.  And of course most future merchants

7    aren't here in the courtroom because they have no reason to be

8    here.

9              THE COURT:  They're in the future.

10             MR. FEINBERG:  But luckily are just becoming credit

11   card merchants.  So we are bound by all the negative parts of

12   the settlement but lose out on a huge amount of the posited,

13   which I think all sides agree, this large cash payment, some

14   of our clients get none of it and yet they're bound by the

15   same release.  And the representation they got from the class

16   plaintiffs simply was not adequate.

17             Thank you, your Honor.

18             THE COURT:  Thank you.

19             MR. PENTZ:  John Pentz on behalf of Daviss Donuts

20   Unlimited Vacations, Top Gun Wrecker, Orange County Building

21   and Jill Bishop.

22             I'm here today to speak about the attorneys' fees,

23   to turn to another topic.

24             While the fee request in this case is perhaps not

25   deserving to be called absurd, as you call the fee request in

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Pentz                                            167

1    the 2003 Visa Check case, it is also hardly moderate.  What I

2    would call moderate in light of the requirements of the Second

3    Circuit case in Goldberger.

4              Class counsel has a different reading of Goldberger.

5    They believe it talks about market rates.  But my reading of

6    Goldberger, the main thing that sticks with me is moderation

7    in the awarding of fees and the avoidance of windfalls to

8    class counsel.

9              Now, the market rate in cases of this size is really

10   a case onto itself.  Professor Silver in doing his study of

11   mega fund study starts at 100 million.

12             Now, that may have been a mega fund in 2003, when we

13   were last before you on a fee request in a Visa/MasterCard

14   case.  But I would argue that that's no longer a mega fund in

15   today's world where settlements in the hundred millions of

16   dollars are quite common.  But there's no question that

17   settlements in the billions of dollars are clearly a mega

18   fund.  And cases that settle for $7 billion, this case is at

19   the very top of all cases that have ever settled in this

20   country of any type.

21             By my count there are only 12 cases that have

22   settled for over a billion dollars, and the average percentage

23   fee in those 12 cases is just under 7 percent.  Of course your

24   fee award in the Visa Check case was 6.5 percent.  This case

25   is twice as large as that one and therefore one would expect

Mr. Pentz

1    that the fee in this case would be lower than 6.5.

2              Class counsel has argued that this case was risky.

3    There is no question.  But in my view it was no riskier than

4    the Visa Check case in '03 and, therefore, there is hardly an

5    argument here for a higher fee than what your Honor awarded

6    there.

7              In absolute terms, of course, this fee is just as

8    aggressive as that fee request was.  Looked at in absolute

9    terms, class counsel are looking here for I guess to reduced

10   their fee by 150 million, but they're still looking for

11   $410 million more than their claimed loadstar.  And that

12   becomes significant when your loadstar is actually a mega

13   fund.  A $160 million loadstar is really -- maybe we need a

14   new jurist prudence for mega loadstars.  But to ask for the,

15   you know, the common range of loadstar multipliers when your

16   loadstar is 160 million is just not moderate and not

17   reasonable.

18             I suggested in this case a 5-percent fee award as

19   consistent with both the market rate for billion-dollar-plus

20   cases and it fits on the scale with Visa Check.  And it would

21   give class counsel a 2.25 multiplier of their loadstar or

22   200 million-dollar bonus or premium, call it what you will,

23   over their actual time worked in the case.

24             In the '03 case that premium loadstar was

25   150 million.  And as we see here today it did not cause class

Mr. Siegel

1   counsel and plaintiffs' lawyers to flee from this

2   jurisdiction.  These class counsel filed this case in the face

3   of that fee award.  They knew what you did in that case.  They

4   had no reason to expect a fee of higher than 6.5 percent when

5   they filed this case, your Honor.  And I don't think we'd be

6   seeing any future lack of litigation in this jurisdiction if

7   you were to award a 5-percent fee in this case.

8           My only final point would be that the

9   160 million-dollar loadstar claim by class counsel has not

10  been reduced, which it typically is in cases where you're

11  using loadstar as a cross check.  For example, in the LCD case

12  that's pending out in the Northern District of California, I

13  believe class counsel there reduced their loadstar by

14  20 percent.  To take account -- to account for the, you now,

15  inevitable redundant billing, unnecessary tasks, tasks

16  performed by partners that could have been done by associates.

17          Because we're not awarding fees based on the

18  loadstar here, there's no need to do a full accounting of the

19  time sheets.  But applying -- applying a modest 10 percent

20  breakdown would put their loadstar somewhere around 140

21  million, which would mean that a 5-percent fee would actually

22  give them a 2.5 multiplier, which my client would submit is

23  more than adequate here.

24          Thank you.

25          THE COURT:  Thank you, Mr. Pentz.

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Siegel

1          MR. SIEGEL:  May it please the court.  I'm Edward

2    Siegel, I represent Vicente Consulting which is a small

3    mom-and-pop operation in the State of Colorado.

4          First, I'd like to adopt and support what Mr. Pentz

5    said about the fees being high.  However, my one quibble is I

6    think a multiplier of two over the reported loadstar as

7    reduced would be more than adequate.

8          I really have only two points to make, your Honor.

9    The first is that I come from the state -- and my client, the

10   State of Colorado.  And there has been discussion about the

11   surcharge problem earlier today.

12         The Colorado statute, which is 5-2-212 reads:  No

13   seller or lessor in any sales or lease transaction or any

14   company issuing creditor or charge cards may impose a

15   surcharge on a holder who elects to use a credit or charge

16   card in lieu of payment by cash, check, or similar means.  It

17   then goes on to define surcharge.

18         So, your Honor, we are different than California and

19   New York where there is an exception if you have some kind of

20   a disclosure.

21         Your Honor, the people, the businesses who do

22   business only in one of the ten or 12 states that have a very

23   restrictive statute like this get no benefits from the

24   injunctive relief.  I would respectfully request that we be

25   allowed to be a separate subclass, because we may get some

Mr. Siegel

1    money.  But we can't charge a surcharge.  We would be

2    violating our state law.  And there are still about ten or 12

3    states that are in a similar situation.

4            And these are, as I said, companies that just do

5    business in those states.  It doesn't affect Home Depot or

6    Wal-Mart or Enterprise or some of the other big businesses

7    that have been before you today.  The other thing, your Honor,

8    deals with the fees.

9            The class counsel has asked for fees and they've

10   asked for -- I'm sorry, expenses and fees.

11           They have asked that they be awarded loadstar on

12   some things that really should not be permissible.  They have

13   asked that their IT department, their litigation support,

14   their docket clerks, and other personnel, who are clearly part

15   of overhead, be included in their loadstar calculation.  And

16   then multiply it by 3.5 or whatever multiplier your Honor

17   decides on.

18           And what's interesting is that one of the lead

19   counsel, Robbins Geller, which used to be the Coughlin firm,

20   had this same issue in a case in the Northern District of

21   Georgia in 2008 called Carpenters Health and Welfare Fund

22   versus Coke, 587 F.Supp 2d 1266.  And in that case the

23   Honorable Willis Hunt said, that's overhead.  That may be an

24   expense but you can't count that in loadstar.  And I'm

25   certainly not going to multiply it.  That's a part of doing

Mr. Siegel

1    business.  You don't get reimbursed for that.  You don't get

2    reimbursed for your document clerks.  It's not even an

3    expense.

4           Also, the same thing Honorable Willis Hunt said.

5    Online research, you don't get reimbursed for that.  And

6    counsel here has asked for $750,000 for that.

7           One last item, and it's really small, your Honor,

8    but it's quite irksome.  They have asked for a quarter a page

9    for in-house copying.  Your Honor, they're asking for $865,000

10   for in-house copying.  In the context of a 7.2 billion-dollar

11   settlement, that's small beer.  I understand that.  But the

12   money belongs to the class, not to class counsel.  And if you

13   give them 10 cents a page --

14          THE COURT:  Did you just say "small beer"?

15          MR. SIEGEL:  I did, your Honor.  Or small potatoes.

16          THE COURT:  A Colorado thing.

17          MR. SIEGEL:  Your Honor, that's it.  Just that we

18   could save the class a half-a-million bucks.

19          THE COURT:  I get it.

20          MR. SIEGEL:  Thank you, your Honor.  That's real

21   dollars.

22          THE COURT:  I understand.

23          MR. SIEGEL:  Thank you, your Honor.

24          THE COURT:  Where are we, Mr. Parker?  Have you gone

25   already?

Mr. Siegel

1          MR. THRASH:  Good afternoon, judge.

2          THE COURT:  Good afternoon.

3          MR. THRASH:  My name is Tom Thrash, I'm from Little

4    Rock, Arkansas.  I represent, along with Jay Breakstone and

5    Parker Waichman, over 60 absent class members, 14 states,

6    primarily located in the southern states:  Arkansas,

7    Mississippi, Alabama, Missouri, Texas, Oklahoma, Kansas.  And

8    judge, I'm going to be very brief.

9          The main concern that our clients have is

10   understanding and interpreting the notice and the language and

11   the breath, as it describes the breath of the release.

12          And the amount of damages that might be awarded

13   under the (b)(3) class was not even an issue to our clients

14   because of their struggle with understanding what the release

15   was and understanding that language.  And the huge

16   ramification that we have with a future release that's this

17   broad.

18          And so when they brought their concerns to me I went

19   and looked at the notice, went and looked at the release.  And

20   based on my interpretation, which admittedly is a southern

21   interpretation, the release language appeared to me to be so

22   broad that it encompassed all future activities based on or

23   related to the entire rule book or any similar rule that they

24   may come up with in the future.  And what does that mean?

25          The notice doesn't explain what all these rules

Mr. Siegel

 1  include, and we have no way of knowing what we're releasing.

 2  And, you know, it appears to my clients that any future

 3  activity related to any of their rules is released.

 4          And based on that language, my advice to our clients

 5  was, you got to opt out.  No matter how -- what the settlement

 6  payments are, the settlement awards and the recovery in the

 7  settlement, no matter how great they are it's not worth

 8  releasing future claims on MasterCard and Visa.  But the

 9  problem was in the notice.  As it's worded, there's really no

10  right of opt out.  I can opt out but I'm still in.  I'm stuck

11  with the broad release of the (b)(2) settlement no matter what

12  I do.

13          So unless the court strikes down the broad release

14  in the (b)(2) settlement, there's really no opt out in the

15  (b)(3) settlement -- in the (b)(3) class.

16          And judge, think about the class members who did not

17  opt out.  Class members who did not opt out may have just

18  taken no action because there's really no right to opt out.

19  They can't get away from this release.

20          Opting out of the (b)(3) class isn't going to get

21  them away from their release in the (b)(2), so why opt out?

22  And given a real right of opt out, these class members may

23  have elected to opt out.  We don't know because they weren't

24  given that right.

25          And we filed a conditional opt out for our clients

Mr. Siegel

1   based on our understanding of this broad release.  And it was

2   conditional.  If the court strikes down the broad release

3   language in the (b)(2) class, we didn't want to be in the

4   (b)(3) class in consenting to that release.

5               (Continued on the next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      MR. THRASHER:  So if the Court strikes down the

2  (b)(2), we didn't want to voluntarily be in the (b)(3).  But

3  if the Court strikes down the broad release in both the (b)(2)

4  and the (b)(3) Class, then we may want to reconsider our

5  opt-out.  We may want to participate in the damages.

6      THE COURT:  I understand.

7      MR. THRASHER:  But as the notice stands today,

8  there's really no valid right of opt-out that satisfies due

9  process for the (b)(3) Class.

10      The notice also is defective in other ways.  The

11  notice misrepresents to the class members that they have --

12  that they can now surcharge their customers.  But it doesn't

13  tell them that if they accept American Express, or they live

14  in one of the states that have barred or prohibited

15  surcharges, they can't surcharge.  So I have to tell my

16  clients, no, you can't surcharge because of these reasons.

17  That surcharge is no value to my clients.

18      So, your Honor, we submit to the Court that the

19  (b)(2) Class is not designed to benefit the class messages at

20  all.  Its only there to give Visa and MasterCard immunity from

21  future liability on all their rules and nobody can opt-out,

22  not even future businesses who are not even class members and

23  they have no -- didn't even give notice.

24      And so, in conclusion, your Honor, we respectfully

25  ask the Court to strike down the release of future damages in

1   both the (b)(2) and (b)(3) Class and direct that new notice be

2   provided to class members disclosing in plain language the

3   terms of the release in providing a real opportunity to opt

4   out; or, the Court could deny certification of the

5   (b)(2) Class, or at least allow class members to opt-out of

6   the (b)(2) Class.  Either one of those would create a valid

7   right of opt-out for the (b)(2) Class.

8            And, Judge, I thank you for allowing me to be heard.

9            THE COURT:  Thank you have a good day.

10           How are we doing on Mr. Shinder's list?

11           MR. FURMAN:  My name is Joshua Furman and I

12   represent John Zimmerman who is a class member and an

13   objector.  I am last on the list and with the least of the

14   parties in front of you.

15           There are a lot of very loud voices in this room

16   coming from very big places, we're not one of them.  My client

17   is a sole proprietorship.  He doesn't have billions in fees.

18           THE COURT:  I understand.

19           MR. FURMAN:  He doesn't have issues like AMEX where

20   we're talking about antagonistic standing --

21           THE COURT:  Tell me about the issues he does have.

22           MR. FURMAN:  Your Honor, nowhere is the Court's duty

23   under Rule 23 more pronounced.  We join in the issue that you

24   raised by Mr. Pence and Mr. Siegel at least Ill be very, very

25   brief.

1          My client needs the Court's protection because he

2    doesn't have the power that these other parties have.  On the

3    issue of release you've heard a lot about that.  You've heard

4    at lot about future claims, but one thing that's been very

5    curious, and I haven't heard anything anyone else talk about

6    it, is that we're also talking about future class members that

7    would be part of this release.  We're talking about

8    individuals that don't know that they're in the class now

9    because they are not in the class yet.

10         Seems to me that under the In Re:  IPO Securities

11   Litigation definition we don't have a class that we can define

12   under the (b)(2) Class, and I question whether or not that the

13   (b)(2) Class is certifiable in any event because of the way

14   it's phrased that way.

15         There's also no separate subclass representatives

16   between (b)(2) and (b)(3) and I think that's illustrative of

17   the point.  Who would these people be?  You can't find

18   somebody to do that when you don't know who the people are

19   going to be in the future.

20         Mr. Pence brought up the issues of attorneys fees, I

21   think Mr. Siegel did as well.  We have one of the few other

22   ones who did oppose that motion.  We think its excessive.  I

23   think it is well stated by Mr. Pence and he did expand on

24   that.

25         The last point that we're going to make that I don't

Fairness Hearing - Mr. Furman

1   hear anybody else talking about this afternoon are the

2   incentive awards.

3          Your Honor, they're asking for $1.8 million in

4   incentive awards for the nine class representatives.  These

5   are beyond the pale of incentive awards that are typically

6   awarded.

7          Class counsel, in responding to our briefing.

8   Complained that we just saying, oh, they're excessive and we

9   didn't keep in mind the fact that apparently they believe that

10  some class members will get over a million dollars out of this

11  settlement fund.

12         That's great.  We didn't have a way of understanding

13  at this point because we don't have the information about what

14  the actual settlement is going to look like when the

15  distribution plan happens.

16         But they're kind of missing the point.  The issue is

17  not strictly whether its in proportion or out of proportion,

18  that's what are the courts have to do to look at it.  There's

19  a case, Stanton v. Boeing out of the Ninth Circuit that talks

20  very much explicitly about how that works, some numbers that

21  have to be applied.  You're talking four, five, six times,

22  sixteen times the amount that the average class member is

23  getting in the settlement.  Those are going to be excessive

24  awards and I think that that's what we're looking at here with

25  this $200,000 per class rep award.

1          The bigger point, though, is they have not provided

2    any justification for that award.  What have these class

3    representatives done that's not part of the regular

4    obligations of a litigant in any lawsuit.  We don't have that

5    information, that's not in the evidence that was submitted in

6    support of the motion.  We'd argue your Honor doesn't have the

7    information that he needs to grant a $200,000 incentive.

8          I am cognizant of the time, thanks for giving us the

9    opportunity to speak today.

10         THE COURT:  Yes, thank you.  Mr. Wenning.

11         Are you Mr. Wenning.

12         MR. WENNING:  Yes.

13         THE COURT:  Good afternoon.

14         MR. WENNING:  Good afternoon, your Honor, Ill try to

15   be brief in the essence of time.

16         I'm Thomas Wenning I'm Executive Vice President and

17   General Counsel for the National Grocers Association which

18   represents the nation's independent, privately owned retail

19   grocers and wholesalers that serve them.

20         NGA's many members represent the small business

21   sector of the industry.  Eight years ago, NGA and three of its

22   members -- Coburn's, Inc., D'Agostino Supermarkets, and

23   Affiliated Foods Midwest became class plaintiffs in this

24   litigation.

25         NGA elected to participate to eliminate the

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Wenning

1    collusive setting of interchange fees by Visa and MasterCard

2    and the other defendants and the enforcement of

3    anticompetitive rules that unfairly restrict merchants'

4    freedom to operate their businesses.

5              The NGA board voted unanimously to oppose the

6    settlement agreement after thorough consideration and review

7    because it does not provide meaningful relief from the

8    anticompetitive market power exercised by Visa and Master Card

9    and actually makes matters worse for merchants and consumers.

10   In fact, Mr. Gallo acknowledged this morning that the credit

11   card companies stated goal is to end future antitrust

12   challenges to their anticompetitive and monopolistic

13   practices.

14             THE COURT:  He didn't exactly put it that way.

15             MR. WENNING:  In my view.

16             Regarding surcharging, unlike the example given this

17   morning about airlines, the restrictive form it takes in the

18   settlement agreement is useless in a competitive industry like

19   the grocery industry.  Rather than simply the No Surcharge

20   Rule and letting the marketplace work, the settlement

21   agreement creates protectionism for Visa and MasterCard and

22   creates an unlevel playing field for merchants.

23             Also, for grocers operating in 11 states,

24   surcharging is prohibited and is of no value.  We foresee that

25   another 20 states have considered legislation signaling a

Fairness Hearing - Mr. Seltzer                              182

1   growing movement to ban the practice.

2              In the essence of time, I believe our counsel has

3   adequately represented Constantine Cannon has addressed the

4   release and I wont go into that, your Honor.

5              In summary, NGA and its members cannot accept such a

6   one-sided proposed settlement agreement that not only

7   preserves the status quo but increases the market power of

8   credit card companies and the banks for all time and puts

9   handcuffs on the operational practices of merchants and their

10  rights in the future.

11             Opposing the proposed settlement is a matter of

12  substance for NGA not political rhetoric.  The settlement is a

13  bad deal for merchants and we urge it to be rejected.

14             Thank you for considering our views.

15             THE COURT:  Yes.  Thank you, Mr. Wenning?

16             Mr. Seltzer.  Hello.

17             MR. SELTZER:  Hello.  Good afternoon, your Honor.

18             My name is David Seltzer, I am the Vice President

19  and Treasurer of 7-11.  We're the largest convenience retailer

20  in the world.  We operate a franchise or license more than

21  8,000 stores in the U.S. and we generated $26 billion in sales

22  in the U.S. last year.  We opted out of the --

23             THE COURT:  What about this AMEX problem that you

24  reference in your submission?

25             Would the surcharging be helpful?

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

1          MR. SELTZER:  It wouldn't.  With respect to AMEX, if

2   we dropped AMEX, we would be losing precious amount of sales.

3   And in a business that's already an extremely a low-margin

4   business and is extraordinarily competitive, that would

5   significantly and adversely impact our business.

6          THE COURT:  You wouldn't be able to make up for that

7   by the surcharging you'd be able to do on the Visa and

8   MasterCard?

9          MR. SELTZER:  Well, stores we operate are --

10  54 percent of the stores states where surcharge something

11  prohibited.

12         So, for example, we could potentially surcharge

13  New Jersey but not New York.  We could surcharge in Rhode

14  Island and New Hampshire, but we couldn't surcharge in

15  Massachusetts.  Its not practical in our view to be able to

16  implement that with a national brand.

17         THE COURT:  Any reason to think that like everyone

18  else similarly situated the fact that AMEX might react by

19  lowering it's charge?

20         MR. SELTZER:  We just don't believe as rules were

21  constructed that there's a practical ability to be able to

22  differentially surcharge between MasterCard and Visa in a way

23  that would drive competition.

24         THE COURT:  Okay.

25         MR. SELTZER:  So, as I was saying, we've opted out

1   of the (b)(3) Class.  If we were given the right to do so, we

2   would have opted out of the (b)(2) Class as well because we

3   don't think, given the fact that surcharge doesn't provide us

4   any real benefit, and given the broad nature of the release,

5   we don't believe that there's sufficient benefit in the

6   agreement as constructed for it to make sense to stay in it.

7   Given Visa and MasterCard's market power, there's really

8   nothing we can do from a right perspective to meaningfully

9   influence there.  And with this release we believe it codifies

10  that behavior and, you know, would allow that to perpetuate

11  from this point forward.

12         We've talked about surcharging which we don't think

13  is a viable solution.  We talked about the release which is

14  extraordinarily broad.  We're also concerned that the release

15  would bar any legal challenges in the event that Visa and

16  MasterCard attempt to use the Honor-all-Cards Rules do be an

17  Honor-All-Devices type rule.  We heard this morning that

18  that's at least MasterCard's view of the rule.

19         The evolution of mobile represents the unique

20  opportunity in time for us as merchants to think about driving

21  new competition and we certainly wouldn't want mobile payments

22  to be trapped under the existing set of rules and

23  requirements, and we think that where we would be heading as

24  the settlement is currently constructed.

25         THE COURT:  You mentioned the lack of utility to

Fairness Hearing - Mr. Seltzer                    185

1  surcharge and the release as the reason 7-11 wants no part of

2  the (b)(2).  Are they independent, or are they in tandem with

3  one another?  Are there changes that could be made to the

4  release that might produce a decision on the part of 7-11 not

5  to back out of the (b)(2) Class?

6            MR. SELTZER:  We don't, again, we don't think the

7  surcharging is workable.

8            THE COURT:  I heard you.

9            MR. SELTZER:  The release is so broad that I think

10 it would require both a revision of the release, dramatically

11 narrowed version of the release, as well as more fundamental

12 changes in operating rules and other things that would provide

13 meaningful protection.

14           THE COURT:  Right.

15           MR. SELTZER:  We just don't think there's enough

16 substance.

17           THE COURT:  Ill say this to you but its a thought

18 I've had in connection with a bunch of objections all of which

19 are obviously advanced earnestly and in good faith.

20           This is a lawsuit and to get relief you got to win.

21 And a settlement reflects the absence of certainty about the

22 ability to win.  And sometimes, don't take this the wrong way,

23 I'm not disseminating signals here, but sometimes I get the

24 feeling that some of the objectors seek the relief that would

25 only be available, and may not even be available, if they

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Ms. White

1    prevail on every dimension in the case.

2         There are uncertainties here with regard to the

3    anticompetitive nature of many of the ways of Visa and

4    MasterCard's doing business and I haven't lost sight of the

5    fact that these are what this is about is a compromise against

6    a backdrop of serious uncertainty about the ability to

7    prevail.

8         MR. SELTZER:  I respect that.

9         My fundamental concern is that the amount of money

10   that would be awarded in the settlement we believe is low

11   relative to the damages.  But regardless of what the amount is

12   paired with the open-ended release that money can be recouped

13   in an instant through Visa and MasterCard's ability to raise

14   rates.

15        THE COURT:  Which is why I asked whether, in your

16   view, there is a way of tinkering or performing major surgery

17   on the release that ameliorates that concern.

18        MR. SELTZER:  I think I have to defer to the lawyers

19   in terms of what major surgery would look like.

20        THE COURT:  Okay.

21        MR. SELTZER:  But it is that pairing that is the

22   problem.

23        THE COURT:  Got it.  Thank you, sir.

24        MR. SELTZER:  Thank you.

25        THE COURT:  Ms. White.

1          MS. WHITE:  Good afternoon, your Honor.  Deborah

2     White for the Retail Industry Leaders Association.

3          THE COURT:  Good afternoon.

4          MS. WHITE:  I will spare you the boilerplate about

5     who we are, its in the object and opt-out materials that we

6     filed and I will scrap my original statements since so many

7     good statements were already made.

8          Particularly, we support the statements made my

9     Mr. Shinder, NRF, Mr. Wenning, who very eloquently

10    articulated.

11         I did, though, want to respond to some of the

12    conversations this morning about the state laws and the

13    suggestion from the bench that there is some difference to

14    those, that those -- you couldn't do anything about them and

15    so they should just not be considered.

16         Our members operate in the real world, we represent

17    companies that operate in all 50 states; and so, they can't

18    just shrug their shoulders, they have to figure out how to get

19    around them.  So your point about compromise certainly

20    recognizes that a settlement about is compromise but it

21    doesn't, at the end of the day, still need to be fair,

22    reasonable, and adequate.  And for the multi-state companies

23    that we represent, they simply don't feel that way.

24         There was also an issue this morning about New York

25    law and how clear it was.  I asked my paralegal to e-mail it

Fairness Hearing - Ms. White

1   to me, its three sentences.  With the Court's indulgence, I

2   would read it in the record.

3           THE COURT:  I'm looking forward to it.

4           MS. WHITE:  Excellent.  Good.  I don't know that

5   this will be as good as Shakespeare but I'm working with the

6   material I have.

7           This is New York GBS Law Section 518:

8           "No seller in any sales transaction may impose a

9   surcharge on a holder who elects to use a credit card in lieu

10  of payment by cash, check, or similar means.

11          Any seller who violates the provisions of this

12  section shall be guilty of a misdemeanor punishable by a fine

13  not to exceed $500, or a term of imprisonment up to one year

14  or both."

15          To me, that's pretty clear.  There was some

16  suggestion that maybe a state attorney general had come out

17  with something that said that if you disclose then you

18  wouldn't be subject to that.

19          Even if a state attorney general had taken that

20  position, certainly, our next attorney general can take a

21  different position.  Our members try to follow the law as

22  they're written.

23          And with respect to the state laws Mr. Wenning

24  mentioned that there have been a lot of activity in the

25  states.  We're aware that that, in many cases, is being

1    fostered by Visa and MasterCard and the banks and their

2    representatives who are actively lobbying in order to convince

3    other states to further enact those laws.

4              So in even just the Sturm and Drang that that

5    creates would have a chilling effect on our members ability to

6    implement something like the surcharging that's in the

7    proposed relief.

8              So, for those reasons, and for many of the reasons

9    that were offered today, we respectfully urge you to deny the

10   motion to approve the final settlement.

11             THE COURT:  Thank you, Ms. White.

12             MS. WHITE:  Thank you.

13             THE COURT:  You're probably not David Wagner.

14             MS. DONATI:  I am Victoria Donati and I am General

15   Counsel and Corporate Secretary for Crate & Barrel Holdings

16   which operates the Crate & Barrel, CB2, and Land of Nod

17   brands.

18             Much to chagrin, I'm sure I'm here to give you two

19   more words about, three more words maybe, about surcharging.

20             We firmly believe that there's a lot of problems

21   with this settlement but the one that I will focus on is

22   surcharging.  We do not believe that it is secure that its

23   made out to be.  We think its very illusory and false, and

24   cannot be put into practice.

25             First the AMEX problem.  For a large-ticket retailer

1    like us, we have about 25 percent of our customers using AMEX.

2    It is not something that we could walkway from and we do not

3    think that we would have the market power to change AMEX.

4    Nor, do we think it a good idea to drop one more competitor

5    from the field that the defendants play in.

6           Second, even if you put the AMEX issue aside,

7    there's the fact of the states.  I would argue that in

8    addition to noting the 11 states that already have bans on

9    surcharging, when this settlement was announced about 20 more

10   had bans proposed in their legislature.  That, to me, says

11   that there are some consumer constituents that are driving

12   towards bans and that is something for the Court to take into

13   consideration when we consider whether indeed that could be

14   used.

15          For us, in the states that already have bans, that's

16   50 percent of our stores and 54 percent of our sales.  If

17   those other 20 states pass, that's 80 percent of our sales

18   that we could not surcharge on based on the way state laws are

19   drafted.

20          The other thing I want to address, and I think the

21   one new thing, is the new First Mover Issue.  This is not

22   something that's easily little put into place and tried.

23          Coding of POS systems and Data Warehousing Systems

24   that are imposing the surcharging in even one store, requires

25   you to code the account for varying state rules, to account

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Ms. Donati

1    for taxing on those rules, to account for differences between

2    credit cards, rewards cards, any other flavor of cards that

3    may come up with a different fee.

4           It requires us in a business like ours where people

5    frequently switch cards between the first transaction order

6    and the final payment to be able to explain to the customer

7    why it is they're now being charged more because there's a

8    surcharge change and difference between the two cards they

9    chose to use on their order.  Those coding changes would make

10   it nearly impossible for us to pioneer in one store to see if

11   maybe our competitors would follow.

12          I think the rest of our points have been made.

13          I do want to emphasize that we and the

14   Crate & Barrel companies do think that this is not very well

15   reasoned, not very fair, and not very acceptable settlement.

16   We don't think our interests were adequately represented and

17   we don't think we should be part of any part of it.

18          I do think, your Honor, you have the power to take

19   an unfair settlement off the table and I would really urge you

20   to do so.

21          Thank you.

22          THE COURT:  Thank you.  To the extent they're here,

23   Mr. Wagner, Ms. Garner, Clay Lambert, Ms. Raysor, would you

24   all come up.

25          Mr. Gallo, you keep standing.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mrs. Lambert

1      MR. GALLO:  I was able only trying to ask, raise a

2  point for your consideration.

3      I don't know what your intention was about the last

4  group of speakers, but each of the four people who have spoke

5  most recently are represented by our clients and Mr. Shinder

6  and Mr. Shinder spoke earlier.

7      THE COURT:  Its all right.

8      MR. GALLO:  All right.

9      THE COURT:  Come on up.  Hello.

10      What's your name?

11      MR. LAMBERT:  Clay Lambert and I'm with my wife, Mia

12  Lambert.

13      THE COURT:  Hi.  One of you gets to speak, you need

14  to fight that out separately?

15      MR. LAMBERT:  We're partners.

16      THE COURT:  Are you?

17      MR. LAMBERT:  Ten years in the business.

18      THE COURT:  I'm happy to hear everybody speak but

19  we're a little short on time.

20      MR. LAMBERT:  I understand.

21      THE COURT:  So is there something that you'd like to

22  tell me?

23      MR. LAMBERT:  Why don't you start.

24      MRS. LAMBERT:  Thank you, your Honor.

25      My name is Mia Lambert, my husband and I and

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mrs. Lambert                    193

1   business partners were own and operate an independent gas

2   station called Metro Petro in Minneapolis, Minnesota for the

3   past ten years.  And we service over a thousand customers a

4   day.  80 percent of our business is transacted with credit

5   cards and we feel that this is a very important issue --

6           THE COURT:  It is.

7           MRS. LAMBERT:  -- for us.  So clay would like to say

8   a few things.

9           THE COURT:  So much for one of you speaking.

10          MR. LAMBERT:  Surcharging is not permitted in the

11  State of Minnesota; and thus, its our second largest operating

12  expense on our P&L next to payroll, which last year we paid

13  $90,000.  Doesn't sound like a lot of money in this room today

14  but for us that's a big expense for us.

15          What's unique, and what I'm going to bring to the

16  table here today is, in our industry of gasoline, when

17  gasoline goes up, our credit card fees go up and our operating

18  expenses go up.

19          To tie on to that also, when state government

20  increases fuel tax, tobacco tax, liquor tax, sales tax, our

21  credit card fees increase along proportionly to that.

22          Thus, we don't have any control in this settlement

23  and we don't have any control with the Government raising

24  taxes and the costs of us operating our business which is low

25  margin as was determined by our friend at 7-11.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

1            What we're asking the Court to do is respectfully

2    reject this entire settlement and I have heard today that you

3    were asking for things of maybe changes or this or that or the

4    other I'd really like to see a cap.  I'd like to see a cap on

5    fees.  I don't mind taking the credit cards, but I just need

6    to it stop.  It just keeps going and going and going and I

7    don't know what to do to run our business.

8            THE COURT:  Thank you.  You're Ms. Garner.

9            MS. GARNER:  Yes.

10           THE COURT:  Good afternoon.

11           MS. GARNER:  Good afternoon.  Thank you, your Honor.

12           THE COURT:  You're welcome to stay there if you

13   want.  If you want to take a seat, you may.

14           MS. GARNER:  My name is Liz Garner.  I am the

15   Director of Commerce and Entrepreneurship at the National

16   Restaurant Association.

17           The National Restaurant Association is the largest

18   business association representing the restaurant and food

19   service industry.  Our industry consists of over 980,000

20   locations nationwide and we're the second largest private

21   employer in the U.S. representing over 13.1 million people.

22           On average, the majority of businesses we represent

23   are small businesses, that's over 90 percent.  We serve

24   roughly 130 million meals a day, many of which are transacted

25   over credit card transactions.

Fairness Hearing - Ms. Garner

1           The National Restaurant Association strongly opposes

2    the proposed settlement.  We do not feel that it provides

3    adequate relief for our members from the anticompetitive

4    interchange fee setting practices and card network rules

5    including the preservation of the Honor-all-Cards Rule.

6           In the interest of time, I'll go onto one aspect.  I

7    know you've heard in depth about the release already but we

8    strongly feel that the settlement can negatively impact

9    emerging mobile payments markets.  The potential impact of the

10   proposed settlement agreement appears to give Visa and

11   MasterCard broad immunity from similar rates and rules which

12   could have detrimental effects on the emerging mobile

13   marketplace as well as disputes related to data breach and

14   charge-back fees, fines, and rules.

15          The scope and reach of the proposed settlement is

16   staggering.  Indeed, we believe it is highly inappropriate,

17   for example, to allow the definition of a credit card as

18   written in the proposed settlement agreement to include

19   device.

20          Plastic and mobile credit card transactions are

21   inherently different products and the proposed settlement

22   appears to lump them together and extend defendants'

23   protections in this emerging market to the detriment of

24   merchants and consumers.

25          And, again, in the interest of time, Ill limit my

Fairness Hearing - Mr. Wagner

 1   remarks there and thank you, your Honor for the opportunity to

 2   address the Court.

 3           THE COURT:  Thank you, Ms. Garner.

 4           All right, Mr. Lambert.

 5           MR. WAGNER:  I'm David Wagner.

 6           THE COURT:  I'm sorry.

 7           MR. WAGNER:  Good afternoon and thank you for

 8   allowing me to speak today.  My name is David Wagner and I am

 9   the Treasury Manager for QuikTrip, Inc.

10           QuikTrip is regional convenience store company

11   located in Wisconsin, Minnesota, and Iowa with 440 locations

12   company-wide.

13           We believe that the proposed settlement does not

14   provide any substantial relief to merchants.  And, in

15   particular, we believe the surcharge provision will be of no

16   value to QuikTrip for the following reasons.

17           Everybody's talked about American Express today but

18   in the convenience store industry we also have some issues

19   with some other cards which we call "Oil Cards."  Wright

20   Express, T-Chek, and Comdata have contractual restrictions

21   against surcharging, that accounts for 23 percent our credit

22   card sales.

23           In addition, the State of Wisconsin has set

24   preliminary discussions about implementing or introducing

25   anti-surcharge legislation in the next legislative session.

Fairness Hearing - Mr. Wagner

1   If passed, that legislation would impact 275, or 63 percent of

2   our locations, by prohibiting surcharges.

3           In addition, we determined that we will make several

4   point of sale programming changes both in the store and out at

5   the dispenser to account for the rulings required around the

6   surcharge.

7           Additional work will need to be done because in the

8   State of Wisconsin they consider the surcharge a taxable item

9   which will impact the calculations of the tax, the receipt

10  layout, and our item return programming and policies to

11  account for that sales tax implication.

12          Even though its highly unlikely that QuikTrip will

13  implement a surcharge due to the competitive and customer

14  service reasons, we have had conversations, the most recent on

15  August 29th with our processor -- with our acquirer, I'm

16  sorry, Bank of America Merchant Services.  We talked to them

17  to find out what some of rules were and the requirements.

18  During the course of that conversation, they indicated that

19  they've talked to several merchants about the surcharge

20  program; that there were no merchants at that time indicating

21  that they were going to go ahead with it.  But they also

22  indicated to us that their system at this time currently does

23  not support surcharging.  It will require them to do

24  programming which are will take several months and several

25  million dollars in order to be handling the surcharges.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Wagner

1            Because of the reasons that I've stated here today,

2    QuikTrip strongly that the proposed settlement provides no

3    long-term relief to merchants and, therefore, should bed

4    reject.

5            Thank you for your time.

6            THE COURT:  Thank you.

7            Here's what we're going to do.  Well take a break

8    now.

9            Ms. Raysor had to go to some other courtroom she

10   said, she'd be back later and I may interrupt the arguments in

11   rebuttal by the proponents of the proposed settlement briefly

12   to hear from her.

13           We've gone over on the objectors' time, well go over

14   to a similar degree for those who made the motion.

15           So well take a brake and well resume at 3:30.

16           (A recess in the proceedings was taken.)

17           THE COURT:  Okay.  Lets get going.  Have a seat.

18   Everyone take a seat.

19           Okay.  Who is up?

20           MR. WILDFANG:  Craig Wildfang for the class.

21           We have conferred with defendants and we think the

22   most efficient way to go this afternoon is for defendants to

23   go first.  I then will have a few comments and Mr. Montague

24   will have a few comments and we then may be done.  We think

25   probably an hour and then attorneys fees after that.  We think

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Gallo

1    60 minutes might be a good target.

2              THE COURT:  All right.

3              MR. GALLO:  Thank you, your Honor.  Ken Gallo for

4    the defendants.  I don't know if this is on.

5              Your Honor, we appreciate all of the time you've

6    spent with us.  As we said, the proponents of the settlement

7    are going to try to get this done within an hour here.

8              Your Honor, I rose this morning and made three

9    points and I think it was a fair characterization to say that

10   the issue has not really been joined on those three points.

11             With respect to the release, there have been many

12   complaints about the release and its breadth and I tried to

13   address that the Identical Factual Predicate Test provides an

14   appropriate legal framework a disciplined and established

15   framework under law under which the release will, in fact, be

16   limited and should give the Court some assurance that there is

17   a test to limit the release.

18             And while there were many complaints today about the

19   breadth of the release, to my hearing, even though my name was

20   called many times, I didn't hear anybody engage and explain

21   why the Identical Factual Predicate Test is the incorrect test

22   or why it doesn't provide a framework for this court or some

23   or court to properly consider the scope of the release as

24   issues come up in the future.

25             More specifically, there were a couple of comments

Fairness Hearing - Mr. Gallo

1   made that I feel that I need respond to.

2          Mr.Shinder said, as a matter of law, the Court

3   cannot release claims that could not have been brought in this

4   case.  That I think is just incorrect, your Honor.  The TBK

5   case does it on the (b)(3) Class.  The Literary Arts case does

6   it on the (b)(3) class.  The Madison Square Garden case does

7   it in an antitrust case brought by an individual plaintiff.

8   And, importantly, although it is a district court decision,

9   its not obviously not binding on this court, the Scarver

10  Court, out of the Western District of Wisconsin, did do it in

11  a (b)(2) Class.  So it's not true to say there's no case.  No,

12  there's not.  A lot of law but there is some law.

13          Also, the logic of these cases which says, "Where

14  there is injunctive relief and an injunctive settlement, one

15  cannot ask the defendants to agree to an injunction and then

16  get sued for complying with the injunction."

17          Has not really -- I don't think is really engaged on

18  that point and I don't think there is a serious answer given

19  to how one can accomplish both of those points.  And it does

20  not violate public policy, again, contrary to some

21  representations that were made to give a forward-looking

22  release for continued adherence to policies in place today

23  unless those policies have been declared illegal.  And these

24  policies have not been declared illegal that's the Robertson

25  v. NBA case.

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Gallo

 1          With respect to mobile technology, the Court has

 2   expressed a concern about it.  Professor Sykes expressed a

 3   concern about it.  There's been a lot of talk about it.  So I

 4   think its important to be clear to about a few things and I

 5   want these on the record and I'm going to repeat myself.  For

 6   that, I apologize.

 7          Mobile technology is in this case.  There were

 8   30(b)(6) deposition notices taken on, "Contact list devices

 9   and mobile phones."  Its clear that there was discovery on it.

10          The No Surcharge Rule Injunction defines credit and

11   debit cards.  And the definition in the settlement agreement

12   includes contact list devices and mobile phones.  There's no

13   question that the injunction relates to current mobile

14   facilities, contact list devices.  Likewise, so should the

15   release.  And just, your Honor, just because one may not be

16   familiar with it this is an example.  Here's with a fob on the

17   back which is a master MasterCard fob which is a way to use it

18   electronically at the point of sale.  Other phones have it

19   downloaded into the software.  Its really quite common today

20   for people to do this.  Its not as if there is no, it's not

21   already in existence.  PayPal has been in the market since

22   about 2003.

23          So then the real question, when it gets framed up,

24   is, okay, what about future products that are not in the

25   market now and what is the answer?

Fairness Hearing - Mr. Gallo

```
1           THE COURT:  No, before you get to that.  Another
2    question is, because your argument almost sounds like you're
3    arguing the motion to dismiss the future case.
4           MR. GALLO:  No.  I'm sorry.
5           THE COURT:  But if you're right about the breadth of
6    the release, given the overwhelming adverse reaction from a
7    substantial part of the class, why shouldn't I refuse to
8    approve it?
9           MR. GALLO:  I don't mean to be arguing to dismiss a
10   future case.  All I was trying to suggest was there was some
11   language this morning.
12          THE COURT:  I understand it.
13          MR. GALLO:  I suggested.
14          THE COURT:  My concern on the part of whether the
15   release would cover those forms of payment devices and you're
16   saying its clear that it does; right?
17          MR. GALLO:  Through what's out there today, right.
18          THE COURT:  So accepting that at face value, given
19   that its clear that it does if you're right about that, why
20   doesn't that counsel in favor of not approving the settlement
21   because so many people are so pointedly concerned about that
22   in the class.
23          MR. GALLO:  Well, some people are concerned about it
24   but I think it goes back to where I ended my comments this
25   morning.
```

Fairness Hearing - Mr. Gallo

1              As compared to what?  Compared to what?  The

2    settlement is not everything that some of the objectors would

3    like.  Some of the objectors would like mobile technology to

4    be excluded.  But compared to what?  Compared to a litigated

5    outcome where the, respectfully, there's good reason to think

6    that if its a litigated outcome, the plaintiffs might lose on

7    the Honor-all-Cards attack.  And I made that point this

8    morning.  There really wasn't a response today on the merits.

9              Any serious discussion where the objectors might

10   lose on the interchange challenge I made that point.

11             I made the point that given all the people that said

12   they wouldn't surcharge they might well lose on the No

13   Surcharge Claim now because apparently it doesn't keep prices

14   up.  So compared to what?  And there are some people that are

15   objecting.

16             But Mr. Wildfang made the point this morning as

17   compared to some objection to other cases, the number is

18   within the realm of reason.  While the Court surely should

19   consider it, I know the cases where the objection level is

20   much higher.  There are reported decisions where 50 percent of

21   the class objecting and opting out and the case is approved.

22   So just the fact that there are a substantial number isn't

23   enough.

24             The last point, in response to your question, is we

25   heard repeatedly that somehow it was a bad thing for me to

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Gallo

1   want peace for my clients but lets broaden the scope a little

2   bit.  Its not just me and my client and the defendants, its a

3   public policy.

4           THE COURT:  You were cared to Neville Chamberlain.

5           MR. GALLO:  I heard that.  And as it was pointed out

6   to me, it's better than being compared to the other side of

7   the argument, I guess, right?  So I should be happy about

8   that.

9           But, you know, its not just me.  There's a public

10  policy in favor of settlement, and the truth is many of the

11  objectors basically said to you today, "We would rather not

12  have a settlement.  We want to sue these guys again on the

13  Honor-all-Cards Rule and we want to opt-out."

14          That just means there's not going to be a settlement

15  and there's a strong public policy in favor of a system and

16  the defendants here, you know, you know because you were in

17  touch with the mediators, and you know how strongly the

18  defendants felt about the fact that we've been at this for a

19  very long time and we need a release that is actually going to

20  work going into the future.

21          So to say there is going to be continued controversy

22  over the Honor-all-Cards Rule is to say there is not going to

23  be a settlement.  That's really what it amounts to.

24          Your Honor, very briefly, I will touch on the

25  competitor objections, and specifically, the Discover

1    objections.

2          The competitor objections, I don't know what to say

3    other than the defendants have tried to make it as clear as

4    they possibly can make it that the competitors, "competitors,"

5    in their role as competitors are not bound by this settlement.

6    They might incidentally also accept a MasterCard card and,

7    therefore, be a total merchant.

8          THE COURT:  Why aren't they just out of the class?

9          MR. GALLO:  Well, because, in fact, they do to, you

10   know, small degrees, I don't know what small is in the world

11   of American Express, but they do accept cards.

12         THE COURT:  Yeah, so?  It just seems so anomalous to

13   me that they're part of the class.

14         MR. GALLO:  Your Honor, I don't know if they were

15   out of the class that means that they can bring a claim in the

16   capacity a merchant.  I mean, here we go again.  That's why,

17   that's the truth, that's why.

18         With respect to Discover the points I would make are

19   these.

20         Number one, respectfully, I think Discover's counsel

21   is incorrect.  If Discover is less expensive than MasterCard

22   and Visa, whichever one is applicable in that case, then the

23   level playing field doesn't apply.  And so, it's not always

24   applicable, its only applicable where they're more expensive.

25         Number two, Discover has this in their control in a

Fairness Hearing - Mr. Gallo

1    second way.  The level playing doesn't apply if Discover

2    doesn't restrict surcharging.  You heard Discover doesn't have

3    a, "No Surcharge Rule."  It actually has a rule that is far

4    more restrictive than the rules that is being complained about

5    in this settlement agreement.  It has what is called an,

6    "Equal Treatment Rule," which says, in essence, "To the extent

7    that you surcharge Discover, you got to surcharge every other

8    card because it says we can't be treated differently.

9            So in that case, MasterCard would have to be

10   surcharged even if MasterCard was cheaper in order to comply

11   with the Discover rule.  So Discover has a way out by being

12   cheaper.  Discover has a way out by getting rid of their Equal

13   Treatment Rule.  Discover has a way out of by negotiating with

14   merchants not to surcharge.  This is in their control.

15            (Continued on the next page.)

16

17

18

19

20

21

22

23

24

25

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

1            MR. GALLO:  Secondly, these leveled plainfield rules

2       are not anticompetitive.  The plaintiffs have them in there

3       because they believe they're pro-competitive.  Because if

4       MasterCard and Visa were subject to surcharging but

5       American Express was not, it would actually benefit

6       American Express' business if American Express -- whatever the

7       more expensive card was.  Banks might move their issuing over

8       to the more expensive car; if other networks, whether it's

9       Discover or American Express, a more expensive card and not

10      subject to surcharging.  So the theory of the settlement is

11      that it is pro-competitive not anticompetitive.

12            And certainly the law is that an objectors'

13      complaint that a settlement is illegal only rises to the level

14      of a reason not to engage in the settlement, if it's been

15      either declared a legal right in an antitrust case, if it is

16      in fact per se.

17            That is all for me, your Honor.  Again, thank you

18      for your time.  Mr. Powell, I think, is going to speak next

19      for the defense to address specifically the difference between

20      our position on the state AG position.

21            Thank you.

22            THE COURT:  Thank you, Mr. Gallo.

23            MR. POWELL:  Good afternoon, your Honor.  Wes Powell

24      for MasterCard.

25            I'm just going to state one issue, the state AG

Mr. Powell                                    208

 1    issue concerning the release.

 2         Your Honor, the defendants have been very consistent

 3    in their briefs and in their dealings with the state attorneys

 4    general trying to work out a solution to this concern that

 5    they've raised, that the releases in the settlement agreement

 6    are not intended to cover sovereign or quasi-sovereign claims

 7    that the state may bring.  We don't think it could be fairly

 8    read as covering those.  And we don't think, frankly, we would

 9    have a legal authority to cover those in the release in this

10    case.

11         Our view is that there are only two category of

12    state AG claims that would be properly released and are

13    intended to be released here.  The first is a category that

14    Mr. Gentile, I think, has conceded is appropriately released.

15    And that's claims brought by the states in their proprietary

16    capacity as acceptors of MasterCard and Visa.  If the state

17    DMV accepts MasterCard and Visa for payment, those payments

18    are barred and I don't think the state AGs disagree with that.

19         Secondly, your Honor, the state AGs have statutory

20    authority under state law to bring a claim that seeks a remedy

21    based on the injuries of individual residents of their states

22    or groups of residents of their states.  This is effectively a

23    representative action, not like a class action that the states

24    have legal authority to bring.

25         The case law is quite clear on this, your Honor,

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Powell

1 including from the Supreme Court, that the Alfred Snapp case

2 that I think the AGs mentioned earlier, that those are not

3 sovereign or quasi-sovereign claims equivalent to law

4 enforcement.  Those claims are owned by the individuals on

5 whose behalf they are asserted.

6           So in this case claims brought on behalf of

7 merchants in those states who are members of these classes and

8 are subject to these releases would be the real party in

9 interest in those claims.  And of course our concern is that

10 that not be a method by which those merchants can re-litigate

11 the same claims that they received a remedy for in this case

12 and that have led to these releases.  Many of the state AGs

13 have the capacity to bring those claims.

14           Those are the only two categories of claims that we

15 think have the ability to release and have sought to release

16 in this settlement.

17           We, of course, would be prepared to stand on the

18 releases.  We think that that's all they can fairly be read to

19 apply to.  But of course we take the concerns of the state AG

20 seriously.  We've engaged in an effort to try to resolve this.

21           The reason that we have rejected the request of the

22 state AGs to modify the release is they've asked for two

23 modifications.  One is to strike the words parens patriae from

24 the release.  The reason that doesn't work, your Honor, is

25 because in many instances the state representative claims are

Mr. Powell                                                    210

1    characterized as parens patriae claims.  Even though it's

2    clear under, I think, state and federal law that those are not

3    sovereign claims, they get that labor.

4           So it was appropriate in our view in order to attach

5    this type of claim that we're concerned about to use the word

6    parens patriae.  I didn't think it would be a problematic

7    omission if the words were not there.

8           Secondly, the request that we strike the words

9    penalty, your Honor.  The reason that's a problem is the

10   Baldwin United case from the Second Circuit, which we think

11   very clearly authorizes the settlement to release these claims

12   and this court to enjoin the type of city claims we're

13   concerned about.  Makes clear that even if those claims are

14   labeled as claims for restitution or penalties, the word that

15   we use in the settlement, those are still barred, properly

16   barred by a release or an injunction in a case like this.

17          So that's why we think that was an appropriate

18   inclusion in the settlement.  But we have tried to offer the

19   state AGs a proviso.  We now have put two before the court

20   that we offered them at various stages of the discussion.

21   Either of which we are comfortable with and each of which is

22   designed really to make clear, we are not endeavoring to bar

23   sovereign or quasi-sovereign claims.  We are simply trying to

24   bar the propriety claims and these representative claims that

25   would amount to a re-litigation on behalf of the class

1    members.  So that's really our position, your Honor.

2              The only other point I will make is Mr. Moore

3    referenced the notion that our concern could somehow be

4    addressed by state laws, including California that permit an

5    offset.  California brings a claim like this and they obtained

6    duplicative recovery.  We could somehow have amounts received

7    in this case offset from those recoveries.  That really

8    doesn't do it from us, your Honor.

9              Of course our desire is to bar outright a

10   re-litigation of the claims that would permit class members to

11   get additive recovery over and above what they got in this

12   case.  So an offset really doesn't address the issue for us.

13             We think otherwise, your Honor, that state statute

14   really doesn't answer the question.  This court has the

15   authority under Baldwin United and other cases to bar the

16   plans we're concerned about.  We would be happy for the court

17   to address this by amending the final judgment in the case to

18   include either version of the proviso we've suggested.

19             I think doing so would take care of our concern

20   about re-litigating the claims in this case while also

21   protecting the AGs from -- the state AGs from this concern

22   that they have about their sovereign and quasi-sovereign

23   claims.

24             THE COURT:  Thank you.

25             MR. ARNOLD:  Good afternoon, your Honor.

Mr. Arnold

1          THE COURT:  Good afternoon, Mr. Arnold.

2          MR. ARNOLD:  I'll be very brief.  Two issues.  We

3    talked this morning about this problem being multifaceted.  We

4    can only solve part of it here.  And I -- you can feel the

5    pain of people here who are worried about these high fees and

6    whether this will ever solve their problem.  And you also have

7    Discover come in here and complain about this settlement.

8          Discover, it's very difficult to say anything

9    against, because Discover has been the favorite of merchants.

10   Discover is the card that at one point we hoped would lead to

11   lower interchange fees.

12         But what happened is Discover lost faith in the

13   system.  They lost faith in the free markets -- and for good

14   reason.  Because they were dealing in a market place that was

15   rigged.  At this point all they have to do is eliminate all

16   the restraints on surcharging, keep their rates below Visa and

17   MasterCard, and they become the card of choice.  They become

18   the vehicle that helps lead Visa and MasterCard's rates down.

19   The fact that they're receiving pressure from merchants about

20   potential surcharge is an example of what we are saying of how

21   this will work.  It's just going to take a while to do it.

22         Secondly, just really briefly.  This discussion

23   about the states, and it's a problem.  And the number of

24   these -- it's 11 states.  These 11 states that have statutes,

25   first Judge Orenstein suggested he didn't think it was that

Mr. Arnold

1    clear one time.  I wasn't sure he was correct.

2           But it's not some state attorney general saying, in

3    the State of New York, saying that this is what the statute

4    is.  It is the state attorney general on behalf of the State

5    of New York in a United States District Court case about a

6    month ago filed a brief saying that is the position of the

7    State of New York.  And it's because they're trying to avoid

8    the statute being found to be an unconstitutional violation,

9    which we cited in the statement that we sent to you.

10          And this one simple comment, if the merchants in

11   this country would organize themselves behind this relief and

12   towards state legislators -- because we're right here.  We're

13   right.  This New York State Statue is anticonsumer.  It

14   supports high prices.  And the people that we've made the

15   argument to and state legislators actually buy it.

16          No one's ever done this before.  Because these rules

17   paralyzed everything.  They paralyzed any pressure towards the

18   state or anyone else.  Because Visa and MasterCard were

19   sitting on top of this whole thing with those rules.  With

20   them out of the way and American Express on the way, we

21   intend -- if the merchant community here will get behind that

22   same amount of energy and effort, there is a distinct

23   possibility that there will be a lot less of these states.

24   That's all the comments I have.

25          THE COURT:  What's the possibility that if

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Wildfang

 1  surcharging were allowed state legislators that haven't

 2  already enacted a ban wouldn't enact one?

 3          MR. ARNOLD:  There is a possibility of that.  And,

 4  in fact, and let me just add, if you just -- the publicity

 5  that was generated by this against this, the -- what I regard

 6  imprudent statements by our co-merchants, some of whom, like I

 7  said, we have great respect for and I know have testified

 8  other places that surcharging would be valuable, have stated

 9  quickly in the press that they would never do it.

10          It helped a number of unnamed companies go to state

11  legislators and get a bunch of legislators to start putting

12  bills out there.

13          Now, the class and a number of merchants, unaided

14  unfortunately by our most powerful lobbyist, were able to stop

15  it in a number of states.  And that is absolutely what

16  happened.  The state of New Jersey, there is a number of

17  states where there was -- they were headed that way.

18          If you sat down with a couple of legislators and

19  explained to them that their poorest constituents are

20  subsidizing people's mouths and vacations with these credit

21  cards, they're receptive to that argument.  Seven -- actually,

22  it may be five.  Five consumer groups filed amicus briefs in

23  Judge Rakoff's court saying that this was anticonsumer.

24          It is anticonsumer.  It requires education.  We're

25  peeling an onion that's been here for 35 years.  We need this

1    piece thrown off before we're going to be able to continue the

2    battle.  I'm through.

3           MR. WILDFANG:  Craig Wildfang, your Honor, for the

4    class.  I will also try to be brief and Mr. Montague will

5    follow me to talk a little bit about the release.  And

6    depending upon what questions you have, your Honor, there may

7    be others who want to say a word or two.

8           THE COURT:  Sure.

9           MR. WILDFANG:  Let me start where Mr. Arnold left

10   off.  At tab four of your booklet, there actually is a copy of

11   the relevant portion of the brief that Mr. Arnold just

12   referred to filed by the State of New York in the case before

13   Judge Rakoff.  And the State of New York says:  Sellers are

14   liable under the statute only when they fail to disclose the

15   credit card price with equal prominence as the cash price;

16   thus protecting credit card users from an unpleasant surprise

17   at the point of sale.  And they go on.

18           And sellers are free to impose dual pricing schemes

19   under the statute regardless of the label they use to

20   characterize it.  Moreover, requiring sellers to prominently

21   disclose the credit card price exposes credit card companies

22   to competition by allowing customers to make an informed

23   choice.

24           And as I said this morning, the New York Law is

25   virtually identical --

216

Mr. Wildfang

1          THE COURT:  What's the status of that case?

2          MR. WILDFANG:  There is a motion for a preliminary

3   injunction pending, I believe.  And Judge Rakoff told the

4   parties he would rule in September.

5          THE COURT:  And he cited a motion to dismiss here?

6   There's a motion to dismiss here pending too?

7          MR. WILDFANG:  Yes.

8          Your Honor, on the point of additional states and

9   statues in the materials that we submitted, there is a

10  declaration from H. Theodore Grindal, which describes the

11  failure in almost every state, the state legislators to act.

12         With respect to the release, I have just two points.

13         THE COURT:  I'm sorry, what was that last point you

14  just made?

15         MR. WILDFANG:  We have a declaration in our

16  materials from H. Theodore Grindal, who is a lobbyist with one

17  of the class counsel firms, who supervised the effort that

18  class counsel made to try to stop these bills from being

19  enacted and we were largely successful.

20         With respect to the release issue, two points:

21  Mr. Neuwirth said there's no case on the planet, I think is

22  what he said, that stands for the proposition that a (b)(2)

23  class can release future claims without an opt-out

24  opportunity.  You don't have to go around the plant, you go

25  across the river.  The Robertson versus NBA case says exactly

Mr. Wildfang                                                    217

1    that.  And it's cited in our materials, but it's crystal clear

2    that as long as -- the court says:  In light of these facts,

3    the settlement authorizes no future conduct that is clearly

4    illegal and therefore the release can be enforced.

5              Second, with respect to the release.  We made this

6    point in our materials but we didn't this morning.  The

7    objectors would try to make it sound like there's going to be

8    anticompetitive conduct that will go free of challenge.  But

9    of course every consumer in the United States has standing

10   under the Clayton Act to seek injunctive relief.

11             Mr. Shinder in his capacity as a consumer could

12   bring the actions he now says are being foreclosed.  Now, I'm

13   not saying that's a complete answer to their release issue.

14   But every consumer, every state attorney general, Department

15   of Justice, Federal Trade Commission, if there is an egregious

16   violation of the antitrust laws it's not going to go

17   unnoticed, your Honor.

18             With respect to my last point on the (b)(2).  I

19   think Mr. Neuwirth also said in answering your Honor's

20   question, that yes a class could release a future claim for

21   damages if the cause of the damage was -- conduct was ordered

22   by the court.  And he said that is consistent with the due

23   process clause.

24             I think that's the end of the due process

25   discussion, your Honor.  Because that property right is no

Mr. Wildfang

1  different than the property right that allegedly we are trying

2  to give up here.  With respect to the point made by First Data

3  that there is no case post Dukes that had both a (b)(2) and a

4  (b)(3) class.  That's not true.  And we cite the Gooch versus

5  Life Insurance of America 672 F.3d 402, (6th Cir. 2012).

6          There was the comment that, by several objectors,

7  that getting relief from the Honor-All-Cards rule is better

8  than the right to surcharge.

9          I would point out that that is not only inconsistent

10  with what Professor Hausman said in other testimony in other

11  places, but it's also inconsistent with the objector's

12  argument that none of them can possibly drop Amex.  Many of

13  the credit cards issued by banks for Visa/MasterCard have

14  larger market merchants than Amex does.

15          So if you're not going to kick out Amex, it's very

16  unlikely that very many merchants are going to drop cards

17  using relief from the Honor-All-Cards rule.

18          And last on that issue.  It's also disproven by,

19  unfortunately, the result in the Visa Check case where very

20  few merchants ended up taking credit instead of debit or vice

21  versa.

22          Your Honor, Mr. Lambert, I think, said that the

23  Minnesota statute prohibits surcharges.  That's not true.

24  Actually, the Minnesota statute Section 325G.051 says:  A

25  seller of goods or services may impose a surcharge on a

Mr. Montague

1    purchaser who elects to use a credit card in lieu of payment

2    by cash, check or similar means, provided the seller informs

3    the consumer.

4              And last point, your Honor.  I didn't hear any

5    objector offer the court an alternative, any set of facts or

6    legal theories that they could confidently say is going to get

7    them the relief that they want.  And I think, although that's

8    technically not part of the requirement here to object, I

9    think it's certainly something your Honor should consider as

10   to whether or not if we go back to litigation there's a

11   likelihood we could do better.

12             Thank you, your Honor.

13             THE COURT:  Thank you, Mr. Wildfang.

14             Good afternoon.  Nice to see you again.

15             MR. MONTAGUE:  Thank you.  Nice to be here, your

16   Honor.  Laddie Montague on behalf of the lead counsel.

17             I think the way this started out this morning was

18   whether or not we were on the same page as the defendants with

19   respect to the release.  We're very, very close to that.

20             We believe what Mr. Gallo said this morning is that

21   the release as to be the extent of what is lawful, neither

22   more nor less.  We agree with that.  We definitely agree that

23   the identical, factual predicate as part of this release, and

24   when you look at that together with the limitations that are

25   set forth in paragraphs 33 and 68, and particularly (g) and

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Montague

1    (h), that that pretty much gives the court, any court, the

2    ability to define what is within the identical factual

3    predicate.

4            I came across the other day a decision by

5    Magistrate Gorenstein in the Lehman Brothers case, where he

6    was pretty candid.  And he said, "The identical factual

7    predicate limitation is certainly an elusive concept and is

8    obviously -- indeed talk tautologically -- fact-dependent.

9    But as stated in the TBK partners, the case that first

10   articulated the test, it rests on the notion there is a value

11   in achieving a comprehensive settlement that will prevent

12   re-litigation of settled questions at the core of the class

13   action."

14           Given that, reading that, and thinking that maybe

15   your Honor would like to understand what we thought was the

16   factual -- the identical factual predicate to use, we went

17   back to our second consolidated amended class action

18   complaint.  And I think that actually the preamble of that

19   sets forth pretty clearly what the contour of this case is.

20   And if I could read it, it's not terribly long.

21           THE COURT:  Yes, you may.

22           MR. MONTAGUE:  "For more than 40 years America's

23   largest banks have fixed the fees imposed on merchants for

24   transactions processed over the Visa and MasterCard networks,

25   and have collectively imposed restrictions on merchants that

Mr. Montague

1    prevent them from protecting themselves against those fees.

2              Despite the networks and the banks' recent attempts

3    to avoid antitrust liability by restructuring the Visa and

4    MasterCard corporate entities, their conduct continues to

5    violate the Sherman Act.

6              In this complaint two nationwide classes of

7    merchants seek monetary damages to compensate them for the

8    overcharges caused by this illegal conspiracy and equitable

9    relief to protect themselves against continuing and future

10   harm."

11             I think that really covers the essence of what our

12   case is.  And I believe, your Honor, that the settlement that

13   we have provides the relief that is available to us in this

14   courtroom before your Honor.

15             I'd like to turn, if I could, to the due process --

16             THE COURT:  Yes, go right ahead.

17             MR. MONTAGUE:  -- for a moment?  Because as this

18   preamble stated, from the very beginning, our case involved

19   two classes:  A damage class, (b)(3) class for past damages

20   and (b)(2) class for future relief.

21             We look at each of these settlements separately.  We

22   look at the relief for the (b)(2) class and the (b)(3) class

23   separately.  We are not looking to have the (b)(2) class

24   release shoehorn or bootstrap the (b)(3) settlement, or vice

25   versa.  We agree, each should be looked at separately.

Mr. Montague                                    222

1          Home Depot, who has really made this argument,

2    really does not have —— they have received due process in this

3    case.  According to the Robertson case, which Mr. Wildfang

4    referred to, Home Depot and every other member of this class,

5    the (b)(2) class, received notice which explained the

6    settlement and attached the release language.  We made the

7    settlement available on the website.  They were given access

8    to the discovery record in this case.  They were given the

9    opportunity to file expert reports as well as orally and in

10   writing argue before your Honor.  And they have.  And given

11   the opportunity to persuade your Honor that the relief —— the

12   relief of this case is not fair, adequate and reasonable.

13   They had that opportunity.  That is due process under (b)(2).

14   The other aspect of it is that they are adequately

15   represented.  And there has been nothing in this record to

16   contradict the fact that the class has been adequately

17   represented.

18          If one looks to the Vitamin C case or the Authors

19   Guild case or part of the —— part of the advisory committee

20   notes, I think it's tab 11 in the booklet that Mr. Wildfang

21   presented.

22          And if you look at the Maywalt case and the

23   McReynolds case, with respect to squabbling or disagreements

24   among class counsel and class representatives who object to

25   the settlement, those do not rise to the level of comprising

Mr. Montague

1    inadequate representations.  So I think the class -- we've

2    shown the class has been fairly represented.  Due process has

3    been received.

4              As to future claims, it's really quite simple.  Any

5    new merchant who comes into the case receives the benefits of

6    the injunctive relief.  That injunctive relief continues.  The

7    release stays in effect.  If the defendants abandon that

8    injunctive relief or revert back to the old rules that had

9    been modified or if they have new rules and new conduct, then

10   the release no longer applies.

11             That's the same whether they're existing class

12   members or future class members.  And that's the whole basis

13   of the release.  It is conduct-based and that the provisions

14   of the settlement agreement will be followed.

15             There's been much made about the words

16   "substantially similar and I think that they've been unfairly

17   expanded.  We said it in our brief, both in the initial brief

18   and we repeated it in our reply brief, that a substantially

19   similar" rule or conduct is one that does not have a material

20   difference from the prior rule or conduct.  That phrase

21   protects defendants from liability only if the network has

22   non-substantial non-material changes in the released rules and

23   conduct.  If the defendants maintain the status quo, those

24   same rules and conduct continue to be released.

25             I went further.  I tried to find out a better way of

1    expressing that, and I went -- I found in the Federal Rules of

2    Evidence 706 commentaries with respect to 2011 amendments.

3    And there the commentator said, "these changes are intended to

4    be stylistic only.  There is no intent to change any result in

5    any ruling on evidence admissibility."

6            And I think that's really what "substantially

7    similar" was.  It wasn't an attempt to get around the

8    identical factual predicate at all.  There was a word smithing

9    need to change something that didn't have a material effect or

10   change the effect and the relief that we received could be

11   done without ruining the factual predicate.

12           I think with respect to -- with respect to the issue

13   under new technology it's important to point out, and I think

14   Mr. Wildfang started to, the release only affects merchants.

15   It only bars claims from merchants.  It doesn't purport to bar

16   claims from competitors.  It doesn't bar claims from the

17   attorney general of the United States or the state attorneys

18   general or consumers.

19           So any of those folks that have interest,

20   particularly competitors, with respect to new technology.  If

21   anyone thought that the Honor-All-Cards rules was constraining

22   new technology, the competitor certainly is not barred from

23   pursuing a claim against that.

24           The other thing that is important, your Honor, is --

25   I hate to keep reading, but it makes sense.  When the

Mr. Montague                                                    225

 1   defendants responded to Professor Sykes' report, they were

 2   very specific when talking about new technology and new

 3   devices and what their policy was.  And it has been ignored by

 4   everybody today, but I think it is very important.  If I may?

 5   It's my last read.

 6              THE COURT:  It's okay.

 7              MR. MONTAGUE:  "The existing Visa and MasterCard

 8   rules, including their Honor-All-Cards rules, have been and

 9   currently are applied to contactless transactions.  Of course

10   neither Visa nor MasterCard has any rule that requires a

11   merchant that accepts its payment brand to install technology

12   necessary to accept payment by smart phone or other

13   contactless payment devices.  Rather, each network's

14   historical and current Honor-All-Cards rules would apply only

15   to contactless payment technology that a merchant chooses to

16   install."

17              So you think if a -- someone has a technology that

18   accepts a card other than Visa and MasterCard, and it doesn't

19   accept Visa and MasterCard cards, that probably would not be

20   covered by the identical factual or predicate as it applies

21   to -- as it applies to this case.

22              The whole reason, your Honor, the (b)(2) class is

23   proper, is because the rules and the conduct apply to all

24   merchants.  The changes apply to all merchants.  There can't

25   be different rules for different merchants.  If there are

Ms. Raysor

226

 1    opt-outs there couldn't be.

 2         And I think, again, I go back to the TBK case

 3    because that is sort of the grandfather of the identical

 4    factual predicate.  And it states:  "We therefore conclude

 5    that in order to achieve a comprehensive settlement that would

 6    prevent re-litigation of settled questions at the core of a

 7    class action, the court may permit the release of a claim

 8    based on the identical factual predicate, as that underlying

 9    the claims in the civil class action even though the claim is

10    not presented and might not have been presentable in the class

11    action."

12         I think that's the purpose of the identical factual

13    predicate.  To define releases and to allow them to be applied

14    based on the facts that are presented in the claim.

15         Thank you.

16         THE COURT:  Thank you, Mr. Montague.

17         MR. WILDFANG:  Your Honor, Mr. Coughlin is prepared

18    to talk about the release issue and due process.  Ms. Sweeney

19    is prepared to talk about surcharges, if you have questions,

20    or somewhat we call secondary objections.  But only if you

21    have questions you want to have addressed.

22         THE COURT:  If I have questions, I'll ask them.

23    This is your motion.  Now let's take a little break.  Not

24    break, but let's break from the arguments in support of the

25    motion for one last objector who had to leave earlier, I

Ms. Raysor

1   mentioned her, Ms. Raysor.  Come on up.

2           MS. RAYSOR:  Yes, your Honor.  My name is

3   Ftema Raysor of Paper Girl Entertainment.

4           And I would like to say that I just really think

5   that these people are not fair.  Because me being a young

6   business owner, at that time I had just started my corporation

7   and I trusted these people to help me be international and,

8   you know, they used the term "Gateway," that's what they told

9   me.

10          THE COURT:  You're assuming more than you should.

11  Who is the "they"?

12          MS. RAYSOR:  Actually, how I got introduced into the

13  whole thing with the Visa/MasterCard thing was I went to a

14  bank -- I'm not going to say the name of the bank.  But the

15  gentleman that worked at the bank referred me to these people.

16  And these people were, I guess, the people who were stealing,

17  you know, the money.

18          And I put money in my account, and I was told I

19  would be able to have all these wonderful things online that

20  would accept credit cards internationally and allow me to do

21  business as a record label, to sell merchandise and to also do

22  advertisement.  And, you know, nothing ever happened and they

23  just completely lied to me.

24          And years later I thought that they were going to

25  get away with it and, you know, justice is served and everyone

Ms. Raysor                                              228

1   is here.  And I'm making a record for the statement as a small

2   business owner, but not any more because I have a multi

3   corporation which is music, fashion and film.  But at the end

4   of the day, your Honor, justice needs to be served.  And I'm a

5   regular gal.  And I'm here in New York City.  And I really

6   feel that, you know, this is not fair what is going on and I

7   would like for you to do something about it, sir.  That's all.

8          THE COURT:  Thank you.

9          MS. RAYSOR:  Thank you.

10         THE COURT:  You left something out?

11         MS. RAYSOR:  You've been poshed.

12         THE COURT:  All right, where were we?  Are the

13  proponents done?

14         MR. WILDFANG:  We are done on the --

15         THE COURT:  I have a question about the release.  In

16  the reply brief for the class plaintiffs on page 56 there's a

17  list of things of future claims that would not be barred by

18  the release, and the list is Visa, the list of things,

19  complaints about which would not be released consists of the

20  following:  Visa and MasterCard agree to fix interchange

21  rates.

22         Visa or MasterCard and the bank defendants jointly

23  agree to the interchange rates to be charged on Visa or

24  MasterCard credit card transactions.

25         Visa or MasterCard adopts a new anticompetitive rule

Mr. Davidoff                                    229

1   or engages in new allegedly anticompetitive conduct that

2   causes interchange rates to be artificially inflated.

3          Visa or MasterCard expresses a new interpretation or

4   somehow apply their Honor-All-Cards rules in a new way that

5   may be anticompetitive.

6          Visa or MasterCard revert to the old rules, which

7   are modified or eliminated by the settlement.  And then

8   standard commercial disputes between a merchant and Visa,

9   MasterCard or defendant bank.  All of those things are not

10  released.  Correct?

11         MR. WILDFANG:  That's correct, your Honor.

12         THE COURT:  Okay.  And I take it you're in agreement

13  with that, Mr. Gallo?  Where is Mr. Gallo.

14         MR. GALLO:  Yes, your Honor.

15         THE COURT:  All right, anything further by anybody?

16         MR. WILDFANG:  Mr. Davidoff is going to argue the

17  fee issue.

18         THE COURT:  Okay.

19         MR. DAVIDOFF:  Your Honor, just -- does your Honor

20  still have his book in front of him.  The last two tabs there,

21  20 and 21 relate to what I'm going to present.  I hope

22  mercifully short and in very short order.

23         THE COURT:  I don't have a 21.

24         MR. WILDFANG:  They're both under 20.

25         MR. DAVIDOFF:  I'm sorry.  They're both under tab

Mr. Davidoff

230

1   20.  There should be two slides or two Power Points, your

2   Honor.

3          THE COURT:  Okay.

4          MR. DAVIDOFF:  We've already heard from several

5   professional objectors, people who were lawyers who are in the

6   business of objecting to the class action fees, the fees

7   request, the incentive reward request in this case.  We

8   haven't heard from any of the major merchants that have raised

9   concerns about the settlement, and there's been considerable

10  discussion of the Goldberger case and so called Goldberger

11  factors.

12         Well, first of all, what the Goldberger case stands

13  for, and I think your Honor is very well aware of this, is

14  that the Second Circuit of Appeals defers to a trial judge's

15  discretion in applying the Goldberger factors because it is

16  the trial judge who knows what went on in the courtroom before

17  him or her.

18         And the six factors, and I'm going to list them

19  because there are three that I don't even think I need to

20  discuss at length.  One is the time and labor expended by

21  counsel.  I'd like to come back to that, because I think that

22  is very relevant in this case.

23         Second is the magnitude and complexities of the

24  litigation.  I don't think I need to spend any time on that.

25  This is a litigation of incredible magnitude and incredible

Mr. Davidoff                                                231

1    complexity, and I know your Honor is well aware of that.  The

2    risk of the litigation.  There's already been an exhaustive

3    discussion of that in the Sykes' report and in the various

4    submissions before the court.

5            For example, and I want to point to one of the

6    objectors on this, your Honor.  We know how high the risks

7    were here in the Vicente Consulting objection, that was one of

8    the objections filed by Mr. Siegel who you heard from a short

9    while ago.  On page two he cites, the long history of

10   antitrust disputes in this industry.  And then he cites a

11   bunch of cases.  Almost all of those cases were resolved in

12   favor of the defendants, not in favor of the plaintiffs.

13           The only one that was clearly won was the United

14   States won its case against Visa before Judge Jones in the

15   Southern District.  And then the Wal-Mart versus Visa case was

16   settled before your Honor in the early part of, you know, this

17   century.

18           THE COURT:  I remember.

19           MR. DAVIDOFF:  But the rest of the cases -- I'm sure

20   you do very well.  The rest of the cases went against the

21   plaintiffs, and that is what objector Siegel cites.  The risk

22   of this litigation is very high.  The quality of

23   representation I think your Honor and Magistrate Judge

24   Orenstein are the two persons that are best in a position to

25   figure out and appraise the quality of representation.  But

Mr. Davidoff                                    232

1    there's no doubt that we have the top defense firms in this

2    case.  And frankly we have the top plaintiffs antitrust and

3    class action firms.

4           The three lead counsel and the other two members of

5    the leadership, Mr. Goldberg's firm from Albuquerque;

6    Mr. Stewart's firm from San Diego.  These are the firms that

7    have the most trial experience.  The most antitrust experience

8    in the United States.

9           The requested fee in relation to the settlement is

10   the fifth factor.  We have asked for a fee of 10 percent.  The

11   takedown resulted in a reduction of the settlement amount or

12   will result in a reduction in the settlement amount of

13   $1.5 billion, and we brought our fee request down from

14   720 million in the aggregate, to $570 million in the reply

15   brief.  And we will submit a revised proposed order on that

16   and also one that's in blank.

17          The Arbor Hill case, which is cited by the

18   objectors, is inapposite, totally in opposite.  That's a

19   statutory fee case, a fee shifting case.  It's not a common

20   fund case.  And finally, public policy considerations.  Your

21   Honor himself observed in his last fee opinion in the Wal-Mart

22   versus Visa case that there has to be an incentive for the

23   risks, the enormous financial and other risks that class

24   counsel take in these cases.

25          I would like to return, if I may to the first

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Mr. Davidoff

1    factor, the time and labor expended by counsel.

2              What we've done in this case is probably the most

3    conservative presentation of counsel's lodestar that I've ever

4    seen.  Mr. Montague, my colleague, has been doing class

5    actions for over 40 years, and I've been doing them for nearly

6    40 years, and I have never seen the degree of auditing and

7    cutting and honing of counsel's time that has taken place in

8    this case before the lodestar was submitted to the court.  And

9    if I could give your Honor some examples.

10             The firms themselves in the aggregate, based on

11   their time reporting, reported initially over $180 million of

12   time.  A letter was sent by Mr. Undlin, who is here, and the

13   firms refine that, and they refine that down to $175 million

14   worth of time.

15             We then used historical rates, rather than current

16   rates.  Historical rates result in a much lower lodestar.

17   And, in fact, under Missouri v Jenkins and most of the cases

18   in this district and in the Southern District, since Missouri

19   v Jenkins, current rates are what are used for lodestar.  Two

20   examples:  In Wal-Mart versus Visa, when your Honor awarded

21   the fee, current rates were used for the lodestar not historic

22   rates, and the multiplier of 3.5 was awarded on current rates.

23   We're seeking a multiplier at this point below 3.5 on historic

24   rates, which are much lower than current rates.

25             Mr. Undlin and a team of lawyers from class counsel

1   went through all of the submissions.  We then retained an

2   accounting firm, CLA, Clifton Lawson Allen, and that result

3   was the final fee number, the final historic fee number

4   submitted as our lodestar through November 30th was cut to

5   $161 million.

6          So there was over a 10-percent cut just as a result

7   of this auditing function.  And we did a lot of things that

8   counsel normally don't do.  We limited the number of hours in

9   a day.  We limited the rates of the contract attorneys.  We

10  limited the number of hours of document review in a day.  And

11  at page seven of the Clifton Lawson Allen report, which is an

12  exhibit to Mr. Undlin's supplemental declaration, there is a

13  listing of the average rates -- partners, associates, senior

14  attorneys, paralegals and the like.  It's page seven of the

15  Clifton Lawson Arnold report attached to Mr. Undlin's

16  supplemental affidavit submitted with our reply brief.  And I

17  think your Honor will see, and particularly by the standards

18  in New York, how low the average rates were for the attorneys

19  that worked on this matter.

20         So why did we prepare these charts?

21         The first one has our time through November 30th,

22  2012, which shows the original request and the multiplier that

23  was requested.  The revised requested multiplier on historical

24  rates is 3.54.  And within a point or two, the approximate

25  multiplier were we to use current rates as your Honor did in

Mr. Davidoff

1    Wal-Mart v. Visa, as Judge Sweet did in the NASDAQ market

2    makers case, would be 2.93.  And the purpose of the second

3    chart was to show how that multiplier is diminishing even now

4    as more and more time is spent on the case.

5              So under all of the metrics of the Goldberger case,

6    we've been reasonable.  We've done the work that some courts

7    have had to do afterwards.  We've done the work beforehand.

8    The expenses of $27 million, which one or two objectors

9    objected, they were cut by $1.15 million.

10             A number of expenses were cut.  Airfares, to make

11   sure that they were only coach airfares.  There was an

12   objection to a copying expense of one firm.  We're going in

13   the future make sure that that's limited to 15 cents a page to

14   resolve that objection.  But we've already cut $1.15 million

15   of the expenses.  And we will continue to go through the

16   expenses.  So we have done a very careful job of making sure

17   that what was submitted to the court and what we're asking for

18   an award of is accurate and in fact modest and conservative.

19             (Continued on the next page.)

20

21

22

23

24

25

Fairness Hearing - Mr. Davidoff

1          MR. DAVIDOFF:  Now, I do have just a few cases by

2   comparison on this current versus historic rate issue and on

3   the multiplier.

4          In the ENRON case, which is the only settlement of

5   comparable size, ENRON Securities Case, the fee percentage was

6   just under 10 percent, 9.5 something percent.  The multiplier

7   was 5.2 on current rates, not on historic rates, on current

8   rates.

9          And your Honor's Visa Check Master Money Litigation

10  I think I've already pointed it out.  It was 3.5 on current

11  rates, 6.5 percent.

12         NASDAQ Market Makers, Judge, another large one over

13  a billion-dollar antitrust case in the Southern District the

14  recovery was over a billion; the fee was 143.8; the percentage

15  was 14 percent; and the multiplier was just under four on

16  current rates.

17         And I have some others which I could submit if the

18  Court wants but I don't want to take too much of the Court's

19  time this afternoon.  I recognize its getting late.

20         I respectfully submit we think on the fee, we've

21  been conservative.  We've audited the fee.  We will make sure

22  no nobody is compensated for time that they didn't devote and

23  we're even cutting a significant amount of time that was

24  devoted to the matter.

25         And I would like to finally say something about the

Fairness Hearing - Mr. Davidoff

1   incentive awards for the clients.  There are nine client

2   representatives, we're seeking a total of $1.8 million for

3   them.  They're all businesses.  They're businesses that range

4   from Payless Shoe Source, which has over 4,000 stores and

5   3,200 in the United States which Judge Orenstein issued an

6   order and we had to go through weeks and weeks and weeks of

7   discovery from Payless to the defendants early in this case.

8   Parkway with 40 garages; Discount Optics, which is a wholesale

9   optical supplier; Leon's Transmission, Crystal Rock, a

10  supplier of water for water fountains in this area; CHS, which

11  has over 800 branded stores; Capital Audio; Photos, Inc., and

12  Traditions.

13           And on every one of these, class representatives has

14  one more principals who traveled to numerous meetings,

15  participated in numerous calls, attended numerous mediation

16  sessions with your Honor and others, and with the mediators

17  and have devoted over eight years of their lives to this case

18  and recognize that these are, in some cases, large businesses

19  or even with the medium-sized businesses they are taking time

20  away as businessmen from their businesses.  This is just not

21  answering a bunch of interrogatories and appearing for a

22  deposition.

23           THE COURT:  How far did the incentive awards compare

24  to what an out-of-pocket reimbursement would represent?

25           MR. DAVIDOFF:  For their time, I think its very

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Davidoff

1    comparable, your Honor.  These are people that each spent

2    hundreds of hours of time and we are asking for --

3             THE COURT:  Why is it characterized then as an

4    incentive award?  Seems to me, let share with you in broad

5    strokes, I take it these incentive awards because you see them

6    in them different types of class action litigation, obviously,

7    and, you know, when you're a class representative you take

8    that on.  You take on that representative capacity on behalf

9    of the absent class members and I understand the need to make

10   class representatives whole for their out-of-pocket costs

11   because, as I understand incentive awards, at least in other

12   settings, they're designed to pay them in ways that if they're

13   not paid, the cases don't get brought such as discrimination

14   cases, who is going to step forward if you're still on the

15   job?  I'm sure I've written about this and I'm sure you know

16   what I've written about.

17            MR. DAVIDOFF:  I read it very carefully.

18            THE COURT:  I don't see an analogous -- as you know,

19   I've written in other settings that its arguably a little

20   anomalous even to give an incentive award on one of those

21   cases because, if there is retaliation for having been a named

22   plaintiff then you get a separate cause of action and you get

23   compensated for that.  But this is a different kettle of fish

24   and I'm not sure what over and above the out-of-pocket costs

25   is appropriate, but over and above out-of-pocket costs is

Fairness Hearing - Mr. Davidoff

1    needed in order to get the kind of cooperation that

2    experienced, able lawyers like you need in order to bring

3    class actions.  You know my concerns.

4         MR. DAVIDOFF:  I've read about your concerns and,

5    respectfully, I think that your Honor may be underestimating

6    what's involved in a case like this when businessmen are

7    taking days and days and days.

8         THE COURT:  I'm not with quarreling with

9    out-of-pocket.  I'm not quarreling with that.  I understand

10   that if they're away from their business because they're a

11   named plaintiff and getting deposed that makes sense to me.

12   But an incentive award is not, I think, as I understand it, by

13   definition not to reimburse for out-of-pocket.

14        MR. DAVIDOFF:  They're often called "service

15   awards," though, and even in a -- as your Honor mentioned even

16   under the PSLRA, in a securities class action, the plaintiffs,

17   where incentive awards or service awards are barred by law,

18   they're still entitled to get their time, the time and expense

19   that they spend.

20        This is different, this is an antitrust case not

21   governed by the PSLRA and these service awards are very

22   important because this retaliation, for example, and I will

23   just take your Honor's example to which your Honor alludes,

24   that could happen at any time; that could happen after the

25   case is over.

Fairness Hearing / Mr. Davidoff

1           Its very difficult to prove, it's not like a

2   discrimination case.  Its true you're not allowed to retaliate

3   for the bringing of an antitrust case and these businessmen

4   take a tremendous amount of time away from their business.

5   They devoted a tremendous amount of time to this case.  This

6   case would not have been successfully settled; this case would

7   not have been successfully prosecuted without --

8           THE COURT:  Let me see if I can identify the extent

9   to which our back and forth is academic.

10          MR. DAVIDOFF:  Okay.

11          THE COURT:  If the incentive awards were not called

12  reimbursement awards, they were called "reimbursement for

13  out-of-pocket expenses," how would they differ in amounts so

14  calculated from the ones that you propose.

15          MR. DAVIDOFF:  Actually, I don't think that they

16  would differ markedly because the total of 1.8 million may not

17  be distributed exactly evenly.  For example, Payless, which

18  has been at every meeting, has been at these mediations here

19  in court today with its internal general counsel.  They spent,

20  I don't think that any incentive award, that any fair share

21  that they'll get out of that $1.8 million could compensate

22  them for the costs that they incurred.

23          CHS, I would say similarly, and these smaller

24  businesses, when the men who run --

25          THE COURT:  All men?

241

Fairness Hearing - Mr. Davidoff

1     MR. DAVIDOFF:  -- them took the time away.

2     Almost all men, I believe, your Honor.  I don't

3     see -- I think one of them -- certainly, Mr. Schoeman is here

4     with his wife and I think his wife is very much involved in

5     the business and they have three different stores in three

6     different cities.  But I think when they take time away from

7     their businesses their businesses suffer and their businesses

8     suffer significantly.

9     Is it difficult to quantify precisely?  Yes.  And I

10    understand your Honor's views on incentive awards and I'm

11    coming up here and I feel in this case that they are justified

12    and we have cited cases.

13    THE COURT:  My view of the incentive awards --

14    MR. DAVIDOFF:  I think, in this case, the service

15    awards are justified and I understand your Honor's views and I

16    think that you should be more generous in this case.  We have

17    cited cases like Franklin Container and others and Graphite

18    Electrode where businesses got substantial incentive awards.

19    MR. WILDFANG:  Your Honor, I jumped up because I

20    thought perhaps you're asking whether class counsel can

21    document the time spent, and if we certainly can, if that is

22    something your Honor would be interested in seeing.

23    THE COURT:  If I am I know how to get you.

24    MR. DAVIDOFF:  Your Honor, excuse me.  My partner

25    corrects me.  I misspoke and I said we made sure that there

Fairness Hearing - Mr. Davidoff

1    were "no coach airfares."  We made sure that there no first

2    class air fares and that all the airfares were coach airfares.

3              Thank you.

4              THE COURT:  All right.  Have we come to an end of

5    this?

6              MR. WILDFANG:  I believe so, your Honor.

7              THE COURT:  All right.  Let me thank all of you for

8    your able advocacy both written and orally.

9              Obviously, this motion for final approval rates

10   raises very important, difficult issues that have been very

11   well presented.

12             We've had some good useful arguments.  We've been

13   "poshed," or at least I've been "poshed" and I think now comes

14   the time for me to take the motion under advisement and to

15   thank you all.

16             Have a good day.

17             (Adjourned.)

18

19

20

21

22

23

24

25

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

Fairness Hearing - Mr. Davidoff

1                                   INDEX

2    **SPEAKERS**                                          **PAGE**

3    MR. WILDFANG ...................................8
     MR. GALLO ....................................33
4    MR. ARNOLD ...................................44
     MR. SHINDER ..................................49
5    MR. NEUWIRTH .................................66
     MR. CANTER ...................................83
6    MR. ARMOUR ...................................96
     MR. CELLI ...................................101
7    MR. BEGLEITER ...............................106
     MR. MEYER ...................................107
8    MR. YURASEK .................................113
     MR. KOROLOGOS ...............................117
9    MR. KELLER ..................................123
     MS. SELENDY .................................144
10   MR. GENTILE .................................153
     MR. MOORE ...................................155
11   MR. WEBNER ..................................159
     MR. FEINBERG ................................163
12   MR. PENTZ ...................................166
     MR. SIEGEL ..................................169
13   MR. THRASHER ................................176
     MR. FURMAN ..................................177
14   MR. WENNING .................................180
     MR. SELTZER .................................182
15   MS. WHITE ...................................187
     MS. DONATI ..................................189
16   MR. LAMBERT .................................192
     MRS. LAMBERT ................................192
17   MS. GARNER ..................................194
     MR. WAGNER ..................................196
18   MR. GALLO ...................................199
     MR. POWELL ..................................207
19   MR. ARNOLD ..................................212
     MR. WILDFANG ................................215
20   MR. MONTAGUE ................................219
     MS. RAYSOR ..................................227
21   MR. DAVIDOFF ................................229

22

23

24

25

ANTHONY FRISOLONE, FAPR, RDR, CRR, CRI, CSR
Official Court Reporter

## $

$1.5 [1]  232/13
$1.5 billion [1]  232/13
$1.8 [3]  179/3 237/2 240/21
$1.8 million [3]  179/3 237/2 240/21
$11.2 [1]  97/5
$160 [1]  168/13
$160 million [1]  168/13
$161 [1]  234/5
$161 million [1]  234/5
$175 [1]  233/13
$175 million [1]  233/13
$180 [1]  233/11
$180 million [1]  233/11
$200,000 [2]  179/25 180/7
$26 [1]  182/21
$26 billion [1]  182/21
$27 [1]  235/8
$27 million [1]  235/8
$410 [1]  168/11
$410 million [1]  168/11
$5 [1]  17/22
$5.9 [1]  17/20
$5.9 billion [1]  17/20
$500 [1]  188/13
$570 [1]  232/14
$7 [9]  93/3 93/6 93/20 94/3 94/3 101/3 101/4
 114/24 167/18
$7 billion [5]  93/20 94/3 94/3 101/4 167/18
$750,000 [1]  172/6
$865,000 [1]  172/9
$90,000 [1]  193/13
$94 [1]  19/6

## '

'03 [2]  168/4 168/24
'03 and [1]  168/4
'03 case [1]  168/24
'05 [1]  13/15
'80s [1]  12/9
'A [1]  118/14
'that [1]  126/18

## -

-- for [1]  193/7
-- I'm [1]  28/12
-- them [1]  241/1
------------------------------------x [2]  1/2 1/5
-I [1]  100/21

## .

.05 [2]  24/21 25/8
.05 percent [2]  24/21 25/8

## 0

01776 [1]  4/22

## 1

1 o'clock [1]  7/17
1-B [1]  126/15
1-BBB [1]  126/15
1.8 million [1]  240/16
10 [2]  172/13 236/6
10 percent [2]  169/19 232/10
10,000 [1]  25/6
10-percent [1]  234/6
100 [1]  5/13
100 million [1]  167/11
10004 [1]  4/6
10010 [1]  3/19
10012 [1]  2/6
10017 [2]  3/13 5/13

10019 [2]  2/15 4/3
10022 [2]  4/12 4/16
10036 [2]  2/17 2/22
10104 [1]  2/21
10:45 [1]  48/16
11 [14]  19/18 28/12 28/13 79/4 79/6 181/23
 182/19 185/1 185/4 190/8 193/25 212/24
 212/24 222/20
1100 [1]  2/9
11000 [1]  5/18
1101 [1]  5/7
112 [1]  126/16
11201 [1]  6/2
1133 [1]  2/23
114 [1]  126/16
116 [1]  126/16
12 [7]  1/6 19/18 28/12 167/21 167/23 170/22
 171/2
1266 [1]  171/22
1290 [1]  2/20
12:30 [1]  8/5
12:45 [1]  48/14
12th [1]  143/3
13.1 million [1]  194/21
130 [1]  194/24
14 [1]  173/5
14 percent [1]  236/15
140 [1]  169/20
1407 [1]  72/15
1410 [1]  2/6
143.8 [1]  236/14
15 [3]  6/22 26/2 235/13
150 [2]  5/10 168/10
150 million [1]  168/25
1500 [1]  5/13
15260 [1]  5/5
160 million [1]  168/16
160 million-dollar [1]  169/9
1600 [1]  3/9
1622 [2]  1/16 1/22
16760 [1]  157/15
17 [1]  88/10
170,000 [3]  137/10 137/20 137/25
1720 [2]  1/4 127/12
18 [1]  131/15
19 [1]  4/22
19 percent [1]  25/3
1900 [3]  1/19 2/2 3/16
19103 [2]  1/16 1/22
1982 [2]  68/1 68/7
1984 [1]  64/7
19th [1]  4/6
1:00 o'clock [1]  127/20
1c [1]  5/2
1st [1]  165/1

## 2

2-A [1]  126/15
2-B [1]  126/16
2.25 [1]  168/21
2.4 percent [1]  18/1
2.5 [1]  169/22
2.93 [1]  235/2
20 [9]  3/6 98/24 159/22 181/25 190/9 190/17
 229/21 229/24 230/1
20 percent [5]  130/22 132/14 132/20 164/6
 169/14
200 million-dollar [1]  168/22
20005 [1]  4/20
20005-5701 [1]  5/16
20006 [1]  2/12
2001 [2]  2/11 73/18
2003 [4]  151/10 167/1 167/12 201/22
2004 [4]  9/11 64/19 64/23 65/1

2005 [8]  9/10 10/10 11/25 12/6 12/12 13/11
 13/20 104/24
2006 [3]  13/7 97/1 136/16
2008 [1]  171/21
201 [1]  2/8
2011 [1]  224/2
2012 [7]  97/6 116/24 116/25 119/6 165/9
 218/5 234/22
2013 [1]  1/6
2015 [1]  1/14
2021 [1]  53/22
20th [1]  4/3
21 [2]  229/21 229/23
212 [1]  170/12
22 [1]  19/6
225 [1]  6/2
2250 [1]  5/5
22nd [1]  3/19
23 [11]  28/11 28/16 117/19 117/20 117/20
 117/21 118/3 118/9 118/14 154/4 177/23
23 percent [1]  196/21
23rd [1]  5/10
24 [2]  33/16 42/6
24 years [1]  37/7
2400 [1]  4/8
245 [1]  118/8
249 [1]  118/1
25 [6]  19/3 25/20 25/23 26/2 26/7 190/1
25 minutes [1]  123/11
25 percent [2]  65/13 103/2
25,000 [1]  88/12
250 [1]  138/11
25326 [1]  3/6
26 [3]  4/5 114/7 162/7
2606 [1]  6/3
2696 [1]  6/3
27 [3]  25/19 26/10 26/16
270 [1]  2/5
275 [1]  197/1
27th [1]  143/3
28 [1]  125/7
2800 [2]  1/13 3/2
29th [1]  197/15
2:00 o'clock [2]  123/10 127/25
2:45 [2]  144/4 144/7
2d [1]  171/22

## 3

3,200 [1]  237/5
3,650 [1]  134/14
3.5 [4]  171/16 233/22 233/23 236/10
3.54 [1]  234/24
30 [3]  12/8 18/20 201/8
30 percent [1]  138/24
30-member [1]  97/11
30th [1]  234/21
31 [1]  125/8
325G.051 [1]  218/24
33 [3]  154/8 154/12 219/25
33131 [1]  2/9
335 [1]  3/12
33G [1]  34/14
35 [1]  214/25
3:30 [1]  198/15

## 4

4,000 [2]  25/13 237/4
40 [5]  6/22 220/22 233/5 233/6 237/8
400 [1]  16/7
402 [1]  218/5
43215 [3]  3/22 4/17 5/11
440 [1]  196/11
455 [1]  5/18
48 [2]  65/12 155/22

**5**

5 percent [2] 191/7 21/4
5-2-212 [1] 170/12
5-percent [3] 168/18 169/7 169/21
5.2 [1] 236/7
50 [4] 46/9 65/12 187/17 190/16
50 percent [1] 203/20
50,000 [1] 124/1
51 [1] 3/18
518 [1] 188/7
52 [2] 3/21 4/16
53 [1] 49/18
54 [1] 190/16
54 percent [1] 183/10
550 [1] 3/9
55402 [1] 3/3
55402-2015 [1] 1/14
56 [1] 228/16
5701 [1] 5/16
575 [1] 4/11
587 [1] 171/22

**6**

6 percent [1] 147/2
6,000 [2] 100/9 117/1
6.5 [1] 168/1
6.5 percent [3] 167/24 169/4 236/11
60 [3] 25/19 26/9 173/5
60 minutes [1] 199/17
60 percent [1] 97/3
601 [1] 4/14
605 F.Supp [1] 72/15
613-2606 [1] 6/3
613-2696 [1] 6/3
63 percent [1] 197/1
655 [5] 1/19 2/2 3/16 4/19 5/15
672 [1] 218/5
68 [5] 63/3 122/10 154/9 154/12 219/25
68C [1] 100/21
6th [2] 158/5 218/5

**7**

7 percent [1] 167/23
7-11 [4] 182/19 185/1 185/4 193/25
7-Eleven [3] 21/1 23/6 23/6
7.2 [1] 172/10
7.25 [1] 17/9
7.5 [1] 17/14
70 million [1] 16/6
70 percent [2] 146/6 146/6
700 [1] 3/6
7004 [1] 5/19
705 [1] 5/2
706 [1] 224/2
718 [2] 6/3 6/3
720 million [1] 232/14
72201 [1] 5/8
75 [3] 4/2 130/21 135/8
787 [1] 2/14

**8**

8,000 [1] 182/21
80 [2] 164/17 190/17
80 percent [6] 160/11 160/14 160/22 164/5 164/11 193/4
80,000 [1] 123/24
80-percent [3] 163/2 163/5 163/7
800 [3] 1/13 3/3 237/11
80247 [1] 5/3
87102 [1] 3/7

**9**

9 percent [1] 18/2
9.5 [1] 236/6
90 percent [3] 24/23 52/21 194/23
900 [2] 4/19 5/15
911 [1] 86/1
91403 [1] 5/5
92101 [4] 1/20 2/3 3/10 3/16
94102-7004 [1] 5/19
94111 [1] 4/9
980,000 [1] 194/19
9:30 [1] 1/6
9th [1] 3/12

**A**

a -- as [1] 239/15
A.M [1] 1/6
Abady [1] 4/2
abandon [1] 223/7
abdicate [1] 137/5
abide [1] 35/13
ability [37] 15/2 15/7 19/20 22/11 24/5 47/13 47/17 51/1 51/2 51/6 56/3 60/14 86/25 95/21 97/20 97/23 100/11 103/23 146/8 146/9 147/2 149/3 150/6 150/17 150/17 152/19 158/14 159/4 162/8 162/9 183/21 185/22 186/6 186/13 189/5 209/15 220/2
able [28] 28/6 41/6 41/7 53/15 78/25 94/24 95/13 95/14 138/24 152/17 152/21 153/3 157/11 161/1 161/2 164/14 164/25 183/6 183/7 183/15 183/21 191/6 192/1 214/14 215/1 227/19 239/2 242/8
abolished [1] 13/4
about [172] 6/22 7/3 10/25 15/18 15/18 17/23 19/10 20/22 20/24 24/3 25/23 28/10 30/25 31/5 33/25 34/20 36/17 37/24 38/24 40/24 41/8 41/21 42/10 45/16 45/17 46/5 47/13 47/25 48/7 51/3 51/14 63/2 64/10 66/23 67/5 68/18 69/19 73/7 73/18 75/4 75/14 78/5 80/21 81/20 82/21 83/7 86/5 88/5 88/24 88/25 89/22 90/3 90/15 92/23 94/10 95/9 97/7 99/8 99/11 102/14 104/9 104/13 112/6 113/8 113/13 114/8 117/5 117/6 123/8 124/1 124/15 127/6 132/14 134/5 134/14 137/8 138/7 138/14 140/24 141/13 141/14 142/12 143/9 143/11 145/4 145/11 148/24 152/9 156/12 159/10 162/7 163/13 163/16 164/16 166/22 167/5 170/5 170/10 171/2 174/16 177/20 177/21 178/3 178/4 178/5 178/6 178/7 179/1 179/13 179/20 181/17 182/23 184/12 184/23 184/20 185/21 186/5 186/6 187/4 187/12 187/14 187/19 187/20 187/24 189/19 189/19 190/1 190/9 192/3 195/7 196/17 196/24 197/19 199/12 199/18 201/2 201/3 201/3 201/4 201/22 201/24 202/5 202/19 202/21 202/23 204/7 204/18 206/4 210/5 210/13 211/16 211/20 211/22 212/3 212/5 212/7 212/19 212/23 213/5 215/5 223/15 225/2 226/18 226/19 228/7 228/15 228/19 230/9 236/25 238/15 238/16 239/4
above [67] 63/8 116/10 150/17 150/19 211/11 238/24 238/25
abrogate [2] 69/1 154/5
abrogated [3] 69/6 69/7 69/8
abrogation [1] 68/13
absence [4] 65/5 84/16 130/7 185/21
absent [10] 49/18 50/14 50/23 54/22 56/3 56/6 101/8 118/4 173/5 238/9
absolute [2] 168/7 168/8
absolutely [5] 8/1 39/2 113/14 135/13 214/15
absurd [1] 166/25
abuse [1] 99/6
academic [1] 240/9
ACAG [1] 142/18
accept [21] 14/5 20/14 23/5 38/1 38/6 38/17 52/18 54/5 57/22 99/15 105/8 107/21 146/21

146/23 176/13 182/5 205/6 205/11 225/12 225/19 227/20
acceptance [1] 191/15
acceptance [3] 98/22 147/3 149/1
accepted [4] 93/18 125/13 125/14 147/24
accepting [3] 150/21 165/23 202/18
acceptors [1] 208/16
accepts [4] 148/3 208/17 225/11 225/18
access [6] 60/1 95/7 95/11 95/15 95/19 222/7
accomplish [2] 134/8 200/19
accordance [1] 96/6
according [4] 17/19 20/10 35/4 222/3
Accordingly [1] 126/14
account [14] 52/21 54/16 80/10 80/20 85/10 142/8 169/14 169/14 190/25 190/25 191/1 197/5 197/11 227/18
accounting [2] 169/18 234/2
accounts [2] 26/10 196/21
accrue [1] 10/5
accurate [2] 136/1 235/18
achieve [1] 226/5
achieved [1] 10/10
achieves [1] 54/2
achieving [1] 220/11
acknowledge [3] 69/25 72/4 76/11
acknowledged [8] 56/16 67/1 69/21 70/18 70/22 71/4 76/10 181/10
acknowledges [1] 72/4 72/10 72/14
acquirer [3] 122/5 145/9 197/15
acquirers [1] 113/22
acronym [2] 142/18 142/20
across [3] 50/2 216/25 220/4
act [10] 13/24 153/4 158/9 160/7 160/18 161/3 164/23 216/11 217/10 221/5
acting [1] 155/8
action [41] 9/9 9/20 28/25 29/1 29/2 51/4 51/15 63/9 67/15 68/2 68/7 68/13 72/12 73/21 75/2 75/7 108/24 125/20 126/6 127/9 131/8 132/8 138/15 151/14 153/17 153/19 158/8 158/8 174/18 208/23 208/23 220/13 220/17 226/7 226/9 226/11 230/6 232/3 238/6 238/22 239/16
actions [9] 10/10 67/24 111/6 120/15 134/3 155/1 217/12 233/5 239/3
actively [2] 22/15 189/2
activities [4] 83/6 160/13 160/21 173/22
activity [3] 155/13 174/3 188/24
acts [2] 156/21 157/17
actual [2] 168/23 179/14
actually [37] 6/12 12/8 12/24 13/2 16/20 21/10 23/1 34/19 40/4 42/6 55/17 57/19 58/2 74/11 93/8 105/23 140/6 146/17 149/24 151/22 156/20 157/10 157/18 165/1 168/12 169/21 181/9 204/19 206/3 207/5 213/15 214/21 215/10 218/24 220/18 227/12 240/15
ADAM [6] 3/14 4/20 5/16 159/22 159/22 163/22
adapt [1] 123/16
add [8] 98/8 99/24 126/5 126/8 130/23 138/18 139/4 214/4
addiction [1] 63/20
adding [4] 32/14 47/16 126/3 126/22
addition [7] 16/13 16/18 122/8 164/21 190/8 196/23 197/3
additionally [2] 99/2 127/14
additional [5] 18/5 126/9 127/3 197/7 216/8
additive [1] 211/11
address [41] 7/14 7/18 23/10 31/13 33/25 38/25 42/11 42/14 44/14 51/9 57/16 62/20 88/9 88/17 92/24 94/8 103/25 104/5 104/7 104/12 104/15 109/4 111/22 113/1 117/17 122/1 122/3 123/9 127/21 127/24 133/6 133/22 152/23 155/20 158/13 190/20 196/2 199/13 207/19 211/12 211/17

A

Case 1:05-md-01720-MKB-JO Document 1342-0/13 Filed 03/13/21 Page 1 of 281

addressed [10] 51/16 70/4 73/12 81/21 105/3
111/19 117/18 182/3 211/4 226/21
addressing [4] 70/1 118/8 121/19 136/4
adequacy [1] 118/10
adequate [9] 73/18 101/1 161/14 166/16
169/23 170/7 187/22 195/3 222/12
adequately [7] 101/1 118/12 166/3 182/3
191/16 222/14 222/16
adherence [4] 34/7 34/11 34/22 200/22
Adjourned [1] 242/17
adjudicated [1] 50/7
adjudication [1] 85/2
administrator [3] 25/18 139/6 140/8
admirable [1] 14/23
admissibility [1] 224/5
admissions [1] 60/7
admit [3] 59/23 59/25 60/23
admits [1] 53/25
admitted [2] 59/1 59/24
admittedly [1] 173/20
admonished [1] 63/11
adopt [3] 102/20 106/5 170/4
adopted [2] 12/20 20/5
adopters [1] 26/19
adopts [1] 228/25
advanced [1] 185/19
advantage [7] 52/22 52/25 53/16 55/14 64/6
72/19 84/8
advantages [1] 162/12
adversaries [1] 80/19
adverse [4] 56/19 87/17 133/23 202/6
adversely [4] 38/1 38/6 108/25 183/5
advertisement [1] 227/22
advice [1] 174/4
advisement [1] 242/14
advisory [12] 28/15 28/17 28/24 29/20 29/25
40/14 88/22 128/6 129/2 129/5 142/19 222/19
advocacy [2] 110/24 242/8
advocate [2] 134/20 136/18
advocated [1] 108/2
Affairs [1] 107/12
affect [6] 28/21 38/1 38/6 108/25 124/21
171/5
affected [2] 108/20 134/17
affecting [1] 109/23
affects [2] 32/22 224/14
affidavit [2] 22/5 234/16
Affiliated [1] 180/23
affirmative [1] 8/22
affirmatively [1] 140/5
affirmed [1] 64/17
Affordable [4] 160/7 160/18 161/3 164/22
afforded [2] 66/21 111/11
after [21] 9/13 16/22 28/4 30/16 46/10 46/21
53/21 55/11 55/11 64/18 65/8 82/3 107/19
108/12 117/21 124/19 150/25 154/16 181/6
198/25 239/24
after -- in [1] 55/11
afternoon [37] 8/25 44/15 101/12 101/13
106/13 106/14 106/16 107/10 107/11 113/4
117/14 123/19 123/21 129/6 129/21 144/23
153/7 155/18 159/18 159/19 173/1 173/2
179/1 180/13 180/14 182/17 187/1 187/3
194/10 194/11 196/7 198/22 207/23 211/25
212/1 219/14 236/19
afterwards [1] 235/7
AG [4] 207/20 207/25 208/12 209/19
again [27] 15/8 30/4 30/12 42/7 48/3 48/4
49/13 59/24 92/9 103/13 117/7 119/24 121/23
122/14 123/18 129/13 131/21 138/3 145/10
185/6 195/25 200/20 204/12 205/16 207/17
219/14 226/2

against [40] 11/3 12/22 14/9 16/11 17/25
23/11 27/3 35/12 43/6 46/25 49/2 54/8 57/4
57/9 62/8 72/20 89/3 89/5 89/13 89/15 91/1
92/3 100/12 141/13 149/23 150/20 154/4
158/16 160/21 161/1 161/6 186/5 196/21
212/9 214/5 221/1 221/9 224/23 231/14
231/20
agenda [1] 27/20
aggregate [2] 232/14 233/10
aggressive [1] 148/8
ago [10] 17/22 28/2 45/9 47/5 65/4 85/21
149/16 180/21 213/6 231/9
agree [19] 15/8 30/10 36/3 36/4 36/24 124/12
126/17 134/6 139/3 143/1 146/10 157/11
166/13 200/15 219/22 219/22 221/25 228/20
228/23
agreed [3] 35/8 35/13 90/13
agreeing [2] 60/9 69/24
agreement [59] 6/13 14/7 14/12 20/1 22/11
28/4 57/15 58/10 62/25 63/3 89/7 89/20 90/22
92/19 124/20 124/21 124/25 125/4 125/19
125/24 126/10 126/13 126/17 126/24 127/5
127/15 127/16 131/16 131/17 131/17 131/20
131/24 132/4 145/25 146/16 146/20 147/17
148/1 148/6 150/11 151/3 151/5 151/18 154/7
154/14 154/24 156/16 181/6 181/18 181/21
182/6 184/6 195/10 195/18 201/11 206/5
208/5 223/14 229/12
agreements [2] 27/10 64/14
agrees [3] 87/5 134/6 134/7
AGs [8] 208/18 208/19 209/2 209/12 209/22
210/19 211/21 211/21
ahead [7] 8/19 77/9 87/10 88/8 126/21
197/21 221/16
aimed [1] 151/12
air [1] 242/2
airfares [5] 235/10 235/11 242/1 242/2 242/2
airline [3] 18/15 26/20 55/13
airlines [9] 18/13 18/17 21/16 21/18 26/17
26/19 26/23 53/15 181/17
akin [1] 152/7
Alabama [1] 173/7
Albuquerque [2] 3/7 232/5
Alden [1] 158/18
Alexandra [1] 129/20
ALEXNDRA [1] 2/4
Alfred [2] 158/21 209/1
align [1] 108/15
all [209] 6/24 8/4 8/11 8/13 8/19 9/14 10/9
10/22 12/12 12/25 13/4 15/4 15/22 15/23 17/6
17/11 18/12 20/8 22/13 22/25 23/2 23/6 24/14
25/2 26/16 27/9 31/21 33/1 36/24 38/4 39/5
39/9 39/11 39/24 40/19 41/21 42/19 42/21
44/5 45/1 47/9 47/13 47/15 48/15 50/20 52/9
56/18 57/11 58/9 58/20 59/25 60/2 60/7 61/4
63/4 63/8 64/15 64/22 65/11 66/24 67/19
69/11 70/9 70/20 72/1 73/7 73/19 74/22 76/3
77/2 78/21 81/2 81/19 82/19 83/6 83/7 84/21
84/24 85/3 85/5 86/5 86/6 86/10 86/17 86/19
86/21 87/12 87/19 88/1 88/16 88/17 88/18
88/16 92/8 93/9 94/17 95/17 95/20 98/9 99/10
99/18 102/1 103/6 104/2 104/9 104/21 106/1
106/24 107/19 109/23 110/22 111/9 113/11
116/7 116/25 117/19 119/17 120/12 121/23
122/3 122/23 123/13 129/21 130/4 131/8
132/20 133/13 133/23 134/22 134/25 135/17
137/14 137/20 137/25 138/23 142/1 144/14
144/20 145/2 146/25 148/2 148/9 149/18
150/25 152/25 153/2 154/2 158/11 160/4
161/10 162/1 163/6 164/10 165/5 166/11
166/13 167/19 172/23 173/25 176/20 176/21
182/8 184/16 184/17 185/18 187/17 191/24
192/7 192/8 195/5 196/4 199/2 199/5 202/10
203/7 203/11 204/13 204/22 207/17 209/18

212/15 212/15 213/24 218/7 218/17 224/8
224/21 225/8 225/14 225/23 225/24 227/19
228/7 228/12 229/4 229/9 229/15 230/12
231/11 234/1 235/5 237/3 240/25 241/2 242/2
242/4 242/7 242/7 242/15
allegation [1] 59/5
allege [1] 76/21
alleged [6] 58/19 62/2 63/9 74/22 151/8
151/16
allegedly [2] 218/1 229/1
alleging [5] 75/23 152/16
Allen [2] 234/2 234/11
allocate [2] 6/17 6/25
allocated [3] 6/16 6/20 123/17
allow [12] 8/2 98/13 117/11 154/1 157/21
157/22 161/23 177/5 184/10 195/17 226/13
227/20
allowed [7] 68/12 96/2 101/9 138/22 170/25
214/1 240/2
allowing [6] 55/25 77/16 159/5 177/8 196/8
215/22
allows [2] 158/22 159/7
alluded [2] 24/2 30/13
alludes [2] 20/25 239/23
almost [7] 52/16 65/5 110/19 202/2 216/11
231/11 241/2
alone [6] 53/2 55/15 68/16 89/15 97/6 101/4
along [6] 50/21 121/10 124/13 139/23 173/4
193/21
already [29] 7/7 18/11 22/4 24/25 26/21
38/24 74/12 74/16 89/16 93/18 99/10 127/20
130/12 139/20 141/8 144/12 145/5 172/25
183/3 187/7 190/8 190/15 195/7 201/21 214/2
230/4 231/2 235/14 236/10
also [59] 5/20 16/3 39/5 43/4 44/15 54/24
58/7 58/10 58/24 59/23 60/2 60/8 68/7 91/11
91/23 92/23 96/18 109/1 110/19 118/7 119/7
122/5 122/5 122/6 138/22 139/5 139/7 139/8
140/2 140/10 145/11 148/3 151/19 155/6
155/6 156/8 158/20 161/13 167/1 172/4
176/10 178/6 178/15 181/23 184/14 187/24
193/19 196/18 197/21 200/13 205/6 211/20
212/6 215/4 217/19 218/11 218/18 227/21
232/16
Alston [1] 129/10
alter [1] 31/17
alternate [1] 18/2
alternative [2] 125/17 219/5
although [7] 9/17 13/14 14/22 16/14 136/11
200/8 219/7
Alton [1] 5/2
always [4] 71/5 150/18 152/2 205/23
am [15] 7/4 33/8 40/3 47/4 81/23 123/20
125/11 177/13 180/8 182/18 189/14 189/14
194/14 196/8 241/23
ambiguities [1] 126/24
ambiguity [1] 126/10
ambiguous [1] 127/5
ambitious [1] 143/5
AmChem [2] 54/15 118/6
ameliorates [1] 186/17
amend [1] 133/19
amended [1] 220/17
amending [1] 211/17
amendment [3] 131/17 132/1 132/10
amendments [7] 28/16 131/3 131/16 131/21
131/24 132/16 224/2
America [3] 45/4 197/16 218/5
America's [1] 220/22
American [52] 14/9 23/11 43/23 46/6 46/7
46/14 46/22 47/1 47/1 47/21 48/5 49/2 49/5
49/6 52/18 52/24 53/24 77/19 105/9 109/1
117/6 117/16 118/23 118/25 119/1 119/5
119/9 119/15 119/22 119/24 119/25 121/2

**A**

American... [20] 121/8 121/11 121/14 121/20
122/2 122/5 122/15 122/18 122/20 131/24
145/7 150/2 176/13 196/17 205/11 207/5
207/6 207/6 207/9 213/20
**American Express [25]** 53/24 117/6 117/16
118/23 118/25 119/1 119/5 119/15 119/22
119/24 119/25 121/2 121/8 121/11 121/14
121/20 122/2 122/5 122/18 122/20 131/24
176/13 196/17 205/11 207/5
**American Express' [1]** 207/6
**American Express's [1]** 122/15
**Americas [2]** 2/20 2/23
**Amex [29]** 20/13 20/14 20/15 20/18 20/19
20/21 21/2 21/3 21/6 21/8 23/7 79/3 80/21
85/4 87/2 91/18 145/16 177/9 182/23 183/1
183/2 183/18 189/25 190/1 190/3 190/6
218/12 218/14 218/15
**amicus [2]** 158/6 214/22
**among [13]** 13/13 16/19 18/17 19/18 26/16
26/19 77/17 78/12 86/23 86/25 102/15 132/22
222/24
**amongst [4]** 55/16 61/1 63/2 156/12
**amount [20]** 17/9 17/16 47/25 66/15 71/9
132/23 148/1 166/12 173/12 179/22 183/2
186/9 186/11 210/25 213/22 232/11 232/12
236/23 240/4 240/5
**amounts [4]** 14/2 204/23 211/6 240/13
**amplify [1]** 156/1
**analogous [4]** 37/20 37/20 41/11 238/18
**analogy [3]** 67/6 67/18 69/25
**analysis [3]** 41/14 114/24 148/23
**analyze [1]** 41/9
**analyzed [3]** 41/11 41/12 107/6
**ancillary [2]** 91/11 94/4
**and/or [3]** 154/13 156/5 156/6
**ANDREW [2]** 4/4 101/14
**announced [2]** 55/12 190/9
**annoyed [1]** 134/22
**anomalous [2]** 205/12 238/20
**another [16]** 7/13 20/21 21/7 21/25 39/13
46/8 65/2 92/12 103/17 123/16 151/13 166/23
181/25 185/3 202/1 236/12
**answer [20]** 31/11 32/8 33/24 40/1 40/19
41/3 41/3 41/10 48/9 64/1 65/20 80/17 83/23
84/18 84/19 84/21 200/18 201/25 211/14
217/13
**answered [4]** 41/15 48/24 48/25 75/11
**answering [4]** 49/1 81/22 217/19 237/21
**answers [2]** 71/3 40/21
**antagonism [5]** 119/24 121/4 121/7 121/12
122/17
**antagonistic [7]** 54/1 118/15 118/19 118/22
119/10 120/7 177/20
**anti [1]** 196/25
**anti-surcharge [1]** 196/25
**anticipate [1]** 111/7
**anticipated [1]** 134/24
**anticompetitive [23]** 15/25 23/2 44/1 62/2
62/10 84/2 96/24 100/13 109/16 110/8 147/7
151/5 181/3 181/8 181/12 186/3 195/3 207/2
207/11 217/8 228/25 229/1 229/5
**anticonsumer [3]** 213/13 214/23 214/24
**antitrust [36]** 1/3 5/10 6/15 9/20 9/21 13/12
32/4 32/23 35/11 35/18 38/10 42/18 45/21
59/23 61/3 62/7 64/3 69/15 69/23 74/20 95/22
104/11 107/20 120/16 131/8 181/11 200/7
207/15 217/16 221/3 231/10 232/2 232/7
236/13 239/20 240/3
**antsy [1]** 82/4
**any [115]** 7/17 8/3 10/6 15/21 34/3 34/20
40/21 40/22 42/14 48/8 48/11 55/6 58/8 58/9
58/13 59/23 60/16 62/11 63/2 63/4 63/7 63/23

64/18 70/11 70/12 72/15 74/13 74/23 81/6
82/23 83/5 87/4 88/24 88/25 89/6 94/4 98/12
95/10 100/22 109/25 110/21 113/11 113/10
117/2 121/13 122/19 123/8 123/9 124/11
124/21 125/16 125/20 126/6 126/10 126/23
126/23 127/9 127/11 134/17 134/18 136/14
137/13 139/16 141/7 142/16 148/7 149/2
149/13 150/8 153/17 155/1 156/8 156/8
156/21 156/22 157/16 157/16 159/9 165/19
167/20 169/6 170/13 173/10 173/23 174/2
174/3 178/13 180/2 180/4 183/17 184/4
184/15 188/8 188/11 191/2 191/17 193/22
193/23 196/14 203/9 213/17 219/4 219/5
220/1 223/4 224/4 224/5 224/19 225/10 228/2
230/8 230/24 239/24 240/20 240/20
**anybody [4]** 130/23 179/1 199/20 229/15
**anyone [9]** 78/3 78/5 127/20 136/14 160/4
160/17 178/5 213/18 224/21
**anything [19]** 28/6 31/23 69/19 70/16 71/13
71/23 74/7 80/21 95/20 136/24 137/24 140/13
140/15 154/22 163/16 178/5 187/14 212/8
229/15
**anyway [1]** 132/23
**apart [1]** 43/9
**apologize [1]** 201/6
**apparently [3]** 21/7 179/9 203/13
**Appeals [2]** 20/4 230/14
**appear [3]** 19/19 21/16 107/14
**APPEARANCES [3]** 2/1 3/1 5/1
**appeared [2]** 10/16 173/21
**appearing [2]** 139/25 237/21
**APPEARNACES [1]** 4/1
**appears [4]** 124/14 174/2 195/10 195/22
**apples [1]** 152/3
**applicability [1]** 163/17
**applicable [8]** 74/8 75/18 103/16 160/17
160/17 205/22 205/24 205/24
**application [6]** 29/6 29/10 31/12 32/5 38/23
40/18
**applications [1]** 29/12
**applied [10]** 39/9 66/13 73/24 98/5 99/11
108/24 161/14 179/21 225/9 225/20
**applies [5]** 74/7 161/12 223/10 225/20
225/21
**apply [18]** 30/15 32/15 38/13 39/5 52/16
146/20 146/22 149/10 149/11 160/4 161/16
205/23 206/1 209/19 225/14 225/23 225/24
229/4
**applying [4]** 73/2 169/19 169/19 230/15
**appoint [1]** 116/2
**appraise [1]** 231/25
**appreciate [5]** 33/5 98/21 107/13 127/13
199/5
**apprize [1]** 73/20
**approach [3]** 37/5 147/15 161/17
**approached [1]** 22/6
**appropriate [9]** 9/16 35/20 36/1 127/25
136/11 199/14 210/4 210/17 238/25
**appropriately [1]** 208/14
**approval [22]** 6/13 8/23 9/7 9/16 10/24 24/14
27/18 34/8 34/24 36/17 36/23 60/14 64/17
70/23 74/11 74/14 96/4 111/15 113/15 121/16
128/1 130/16 133/11 133/15 133/17 147/7
149/25 242/9
**approve [16]** 47/21 66/5 80/17 81/7 83/13
90/23 111/21 118/2 121/5 126/1 151/5 151/17
163/9 163/12 189/10 202/8
**approved [11]** 11/18 18/3 65/18 83/17
100/14 110/18 110/19 114/14 140/3 141/10
203/21
**approves [3]** 86/12 90/25 124/20
**approving [1]** 202/20
**approximate [1]** 234/24
**approximately [3]** 137/10 138/20 146/6

**April [1]** 116/24
**April 2012 [1]** 116/24
**AR [1]** 5/8
**Arbor [1]** 232/17
**are [377]**
**area [2]** 111/4 237/10
**areas [1]** 108/1
**aren't [3]** 144/8 166/7 205/8
**arguably [1]** 238/19
**argue [14]** 62/19 70/1 70/4 70/6 72/2 74/18
100/15 100/21 152/6 167/14 180/6 190/7
222/10 229/16
**argued [2]** 16/8 90/16 93/24 100/18 168/2
**arguing [5]** 69/18 81/10 141/11 202/3 202/9
**argument [44]** 8/22 11/11 11/12 11/17 11/21
16/17 17/1 17/6 30/14 32/24 33/10 58/3 59/11
60/19 62/24 70/2 75/14 75/15 76/15 76/15
77/15 77/19 77/22 78/1 78/8 78/9 79/22 84/15
88/8 95/25 111/17 114/4 119/4 131/8 143/6
144/3 145/14 168/5 202/2 204/7 213/15
214/21 218/12 222/1
**argument is [1]** 78/9
**arguments [14]** 7/10 7/11 8/10 28/20 48/14
55/23 59/12 66/23 83/7 154/2 161/25 198/10
226/24 242/12
**arise [6]** 34/7 34/10 34/21 54/21 54/21
155/12
**arises [1]** 26/15
**Arkansas [2]** 173/4 173/6
**Arm [1]** 36/25
**ARMOUR [3]** 5/21 96/13 98/19
**Arnold [12]** 6/23 18/22 23/10 44/10 48/11
48/21 77/16 119/17 212/1 215/9 215/11
234/15
**Arnold's [1]** 118/25
**arose [1]** 37/16
**around [12]** 43/25 90/10 91/21 91/21 97/12
128/4 136/21 169/20 187/19 197/5 216/24
224/7
**ARPS [1]** 2/16
**arrange [1]** 133/9
**array [1]** 110/8
**arrogating [1]** 132/14
**Article [1]** 154/3
**articulated [3]** 151/11 187/10 220/10
**articulates [1]** 84/4
**artificially [1]** 229/2
**Arts [1]** 200/5
**as [269]**
**ascertained [1]** 93/8
**aside [10]** 65/22 67/8 77/19 77/21 79/3 79/3
79/4 79/9 83/1 190/6
**ask [18]** 22/12 44/15 96/1 96/2 106/3 106/5
123/7 140/17 143/7 148/19 152/25 158/1
162/23 168/14 176/25 192/1 200/15 204/25
**asked [25]** 6/22 25/20 27/17 44/13 46/5 48/25
72/23 79/9 84/19 94/9 95/23 104/25 116/13
117/25 118/1 171/9 171/10 171/11 171/13
172/6 172/8 186/15 187/25 209/22 232/10
**asking [15]** 39/1 75/13 75/13 78/19 82/2
83/12 157/2 157/21 172/9 179/3 194/1 194/3
235/17 238/2 241/20
**aspect [5]** 57/7 57/20 121/6 195/6 222/14
**asserted [5]** 34/3 34/4 54/9 94/20 209/5
**asserts [3]** 125/21 127/4 127/11
**assessing [1]** 57/7
**assessment [4]** 14/18 14/24 16/1 16/13
**assistant [1]** 17/19
**assistants [1]** 17/17
**associates [2]** 169/16 234/13
**association [10]** 25/22 38/5 96/14 101/16
180/17 187/2 194/16 194/17 194/18 195/1
**associations [2]** 49/21 65/10
**assuming [4]** 114/10 140/23 149/6 227/10

**A**

assumption [4] 145/19 145/19 145/21 146/2
assumptions [5] 19/5 19/9 19/10 79/22 79/23
assurance [1] 199/16
ATM [13] 42/17 123/22 124/3 124/13 124/21 125/20 125/21 125/23 126/7 127/5 127/6 127/7 127/10
ATMs [6] 123/24 124/1 124/1 124/3 124/18 125/18
attach [1] 210/4
attached [4] 136/3 151/7 222/6 234/15
attack [1] 44/7 56/1 203/7
attempt [5] 57/16 58/7 154/15 184/16 224/7
attempting [1] 153/25
attempts [4] 59/13 59/18 154/16 221/2
attended [1] 237/15
attention [4] 14/21 67/5 118/5 139/1
attorney [12] 5/9 5/18 19/24 157/9 158/10 188/16 188/19 188/20 213/2 213/4 217/14 224/17
attorneys [10] 155/8 157/24 162/4 178/20 198/25 208/3 224/17 234/9 234/14 234/18
attorneys' [2] 8/23 166/22
attraction [1] 94/24
attractive [3] 87/23 88/1 147/15
AU [1] 158/4
auction [2] 120/10 120/21
Auction Houses [1] 120/10
auctions [3] 120/16 120/17 120/18
Audio [1] 237/11
audited [1] 236/21
auditing [2] 233/6 234/7
August [1] 197/15
August 29th [1] 197/15
Australia [6] 18/17 26/18 43/20 48/1 48/3 48/7
Author's [1] 59/12
authority [15] 73/25 92/11 139/13 156/16 157/22 158/11 158/16 158/21 158/22 159/1 159/15 208/9 208/20 208/24 211/15
authorization [6] 130/19 131/1 131/7 139/25 140/15 141/18
authorize [3] 89/5 89/6 130/6
authorized [2] 72/22 130/2
authorizes [4] 76/18 96/9 210/11 217/3
authorizing [3] 120/10 137/16
Authors [1] 222/18
automatic [1] 139/17
available [4] 185/25 185/25 221/13 222/7
avenue [12] 1/13 2/14 2/20 2/23 3/3 3/12 3/18 4/11 4/14 5/13 5/18 45/22
avenues [1] 108/17
average [5] 167/22 179/22 194/22 234/13 234/18
aversion [1] 23/20
avoid [5] 51/3 111/24 159/9 213/7 221/3
avoidability [1] 103/2
avoidance [1] 167/7
avoiding [1] 30/17
award [11] 167/24 168/18 169/3 169/7 179/25 180/2 235/18 238/4 238/20 239/12 240/20
awarded [7] 168/5 171/11 173/12 179/6 186/10 233/20 233/22
awarding [1] 167/7 169/17
awards [19] 174/6 179/2 179/4 179/5 179/24 237/1 237/23 238/5 238/11 239/15 239/17 239/17 239/21 240/11 240/12 241/10 241/13 241/15 241/18
aware [7] 98/9 101/24 112/11 146/5 188/25 230/13 231/1
away [18] 13/15 20/11 50/8 70/2 70/5 71/22

73/15 105/9 136/15 158/25 174/19 174/21 227/25 237/20 239/10 240/4 241/1 241/6
awful [1] 145/4
awkward [2] 46/5 46/6

**B**

B1 [2] 88/20 89/19
B2 [4] 11/8 11/9 11/12 11/12
back [32] 7/21 11/22 12/9 13/11 26/9 41/6 41/16 44/12 46/23 86/14 96/5 102/23 103/15 103/19 106/6 121/16 123/10 132/2 137/12 144/2 163/24 185/5 195/14 198/10 201/17 202/24 219/10 220/17 223/8 226/2 230/21 240/9
backdrop [4] 12/22 54/9 57/10 186/6
background [1] 14/14
backpay [1] 90/16
backs [1] 105/25
bad [7] 22/20 50/12 98/1 98/5 147/11 182/13 203/25
balance [1] 23/21
balancing [1] 16/11
Baldwin [2] 210/10 211/15
balkanized [1] 51/23
ball [1] 72/5
ballpark [2] 17/18 18/3
ban [2] 182/1 214/2
Bancard [1] 42/17
bank [7] 131/22 197/16 227/14 227/14 227/15 228/22 229/9
bank's [1] 12/21
banking [1] 112/11
banks [15] 9/24 12/17 12/19 12/19 12/20 13/9 13/13 13/17 13/18 16/23 16/24 50/6 88/5 95/9 102/7 108/12 108/18 109/9 110/6 132/2 182/8 189/1 207/7 218/13 220/23
banks' [1] 221/2
banner [4] 14/4 14/4 53/9 53/11
banner-by-banner [1] 14/4
banners [2] 91/18 91/19
bans [2] 190/8 190/10 190/12 190/15
bar [20] 59/19 60/15 70/22 75/17 82/15 98/3 125/20 126/6 127/9 154/25 156/21 157/16 157/17 184/15 210/22 210/24 211/9 211/15 224/15 224/16
barely [1] 103/14
bargain [1] 59/22
barred [9] 74/13 75/25 176/14 208/18 210/15 210/16 224/22 228/17 239/17
Barrel [3] 189/15 189/16 191/14
bars [2] 56/14 224/15
BART [2] 1/18 1/24
base [2] 92/7 132/23
based [24] 27/20 29/5 31/15 32/4 35/14 54/5 59/19 60/18 63/7 66/18 118/21 120/15 161/18 169/17 173/20 173/22 174/4 175/1 190/18 208/21 223/13 226/8 226/14 233/10
basic [1] 106/5
basically [2] 159/8 204/11
basis [9] 11/16 31/3 55/2 55/5 55/21 131/4 139/9 151/2 223/12
battle [1] 215/2
BB [1] 126/15
BBB [1] 126/15
be [364]
bear [1] 54/7
bearing [1] 78/22
became [1] 180/23
because [141] 11/13 11/18 13/4 15/23 18/13 21/17 22/10 23/24 30/22 32/16 35/6 35/7 36/2 37/4 37/5 40/11 41/5 43/15 43/20 43/23 44/23 45/5 47/21 50/13 54/10 62/11 62/20 62/24 64/11 65/16 68/13 69/8 70/5 70/9 71/21 77/8 79/1 79/2 79/21 81/11 81/16 82/2 83/11

87/20 89/10 90/16 90/25 94/2 94/14 94/23 95/19 96/9 97/5 97/16 101/21 102/6 102/9 103/1 105/1 105/20 107/18 107/21 109/11 109/13 110/10 114/9 114/18 116/11 119/8 121/8 122/3 124/9 130/2 140/11 141/17 141/18 143/7 145/23 149/14 150/4 150/22 150/24 152/2 153/3 157/10 161/10 161/11 161/15 163/20 164/3 165/15 165/24 166/7 169/17 170/25 173/14 174/18 174/23 176/16 178/1 178/9 178/13 179/13 181/7 184/2 191/7 197/7 198/1 201/15 202/2 202/21 203/13 204/16 205/9 206/8 207/3 207/3 209/25 212/9 212/14 213/7 213/12 213/16 213/18 217/25 221/17 225/23 226/3 227/5 228/2 230/15 230/19 230/21 238/5 238/11 238/21 239/10 239/22 240/16 241/19
become [6] 16/21 45/17 112/4 134/2 212/17 212/17
becomes [2] 134/5 168/12
becoming [2] 46/2 166/10
bed [1] 198/3
been [111] 9/17 10/1 10/19 12/8 18/3 27/6 27/6 33/16 34/4 37/6 38/24 39/3 39/25 41/13 42/6 42/16 42/17 42/19 45/8 46/8 50/6 50/20 51/7 55/12 59/24 60/3 62/22 63/1 63/9 64/8 65/25 69/3 69/4 69/11 71/22 72/8 75/11 80/7 81/8 81/17 82/12 89/16 96/21 97/13 97/21 98/23 104/13 104/15 111/18 112/12 117/18 117/21 122/12 127/12 132/10 134/12 138/21 139/12 139/20 146/4 150/6 150/18 152/12 152/12 153/18 161/9 167/12 169/10 169/16 170/10 171/7 178/4 188/24 191/12 199/10 199/11 200/3 200/23 200/24 201/3 201/21 204/18 207/14 208/2 212/9 214/25 222/15 222/16 223/2 223/3 223/9 223/15 223/16 225/3 225/8 226/10 228/11 230/9 231/2 233/4 233/5 235/6 236/21 238/21 240/6 240/7 240/18 240/18 242/10 242/12 242/13
beer [2] 172/11 172/14
before [39] 1/8 7/11 11/21 14/3 46/8 46/13 49/24 62/19 65/4 71/4 84/25 85/6 85/8 98/14 120/9 124/17 130/18 131/10 142/11 144/2 146/3 147/6 153/20 158/3 158/12 167/13 171/7 202/1 210/19 213/16 215/1 215/12 221/14 222/10 230/16 231/4 231/14 231/20 233/8
beforehand [1] 235/7
began [1] 11/25
BEGER [1] 1/21
begin [1] 98/25
beginning [7] 13/7 45/20 81/24 96/20 126/9 144/7 221/18
BEGLEITER [4] 4/7 106/13 106/15 112/20
behalf [21] 9/5 30/23 43/2 43/12 49/17 66/4 113/6 130/1 130/20 130/25 138/22 140/4 144/24 163/22 166/19 209/5 209/6 210/25 213/4 219/16 238/8
behavior [5] 100/13 100/15 109/4 110/9 184/10
behind [2] 213/11 213/21
being [58] 21/16 22/6 22/6 30/3 44/25 49/13 50/2 51/4 53/21 64/11 66/21 69/5 69/6 69/8 70/4 71/2 71/9 72/23 74/4 76/7 77/23 82/22 85/15 85/16 87/16 94/7 95/3 95/23 96/2 98/5 103/13 107/7 121/12 122/15 122/24 122/25 140/17 152/4 152/17 152/21 152/23 158/23 161/6 163/3 164/10 164/14 164/17 170/5 188/25 191/7 204/6 206/4 206/11 212/3 213/8 216/18 217/12 227/5
belated [1] 57/16
believe [62] 10/19 10/21 10/24 16/15 19/22 21/15 25/12 27/8 27/9 27/21 34/25 44/20 44/21 45/2 45/7 45/7 45/11 46/19 48/25 67/17 75/10 80/22 87/4 88/15 90/20 103/4 107/6

Case 1:05-md-01720-MKB-JO  Document 8094  Filed 11/20/19  Page 249 of 281 PageID #: 71994

## B

believe... [35] 107/8 107/17 110/11 110/24 125/22 127/2 138/1 138/23 141/3 146/2 149/12 149/12 149/14 149/17 151/16 161/13 167/5 169/13 179/9 182/2 183/20 184/5 184/9 186/10 189/20 189/22 195/16 196/13 196/15 207/3 216/3 219/20 221/12 241/2 242/6
believed [2] 105/1 105/5
believes [3] 45/2 45/4 98/25
BELKNAP [1] 2/3
belong [1] 153/16
belongs [1] 172/12
below [2] 212/16 233/23
bench [1] 187/13
benches [1] 144/19
beneficial [3] 85/12 85/14 137/6
beneficiaries [1] 11/15
benefit [11] 14/10 68/5 109/6 120/5 146/16 161/18 164/2 176/19 184/4 184/5 207/5
benefits [9] 10/5 43/15 55/19 78/5 80/8 81/19 119/12 170/23 223/5
Bennett [1] 151/9
BERGER [1] 1/15
BERNAY [4] 2/4 129/20 133/6 138/17
best [12] 24/5 49/12 53/4 65/20 69/11 72/1 79/13 93/22 105/2 107/2 107/3 231/24
better [13] 22/7 24/9 65/21 101/18 101/19 103/7 135/10 142/7 142/20 204/6 218/7 219/11 223/25
between [30] 8/10 13/1 19/6 33/15 64/11 65/2 70/24 74/19 80/13 100/5 118/22 119/24 122/18 127/7 130/9 132/6 145/13 145/23 147/23 148/21 149/4 152/20 152/22 178/16 183/22 191/1 191/5 191/8 207/19 229/8
beyond [10] 36/20 58/22 58/25 98/13 122/17 153/25 154/22 157/19 157/20 179/5
bid [1] 95/7
bidding [1] 95/14
big [16] 12/18 13/13 18/24 21/18 22/10 25/2 25/18 27/18 43/9 47/24 90/17 94/13 145/20 171/6 177/16 193/14
bigger [1] 180/1
biggest [1] 20/10
billed [1] 9/10
billing [2] 137/22 169/15
billion [23] 17/9 17/14 17/20 17/22 19/6 88/14 93/3 93/6 93/20 94/3 94/3 97/6 101/3 101/4 114/24 167/18 167/22 168/19 172/10 182/21 232/13 236/13 236/14
billion-dollar [2] 172/10 236/13
billion-dollar-plus [1] 168/19
billions [3] 93/23 167/17 177/17
bills [2] 214/12 216/18
bind [2] 77/2 77/2
binder [2] 23/16 27/23
binding [5] 92/7 92/17 92/18 131/18 200/9
Bird [1] 129/10
Biscayne [1] 2/8
Bishop [1] 166/21
bit [13] 11/20 11/22 14/21 18/23 24/15 45/17 48/15 86/10 113/13 130/8 138/5 204/2 215/5
blank [2] 24/23 232/16
blanketing [1] 110/7
BLECHMAN [1] 2/10
block [2] 40/25 148/16
blocking [1] 99/16
Blue [5] 159/23 159/23 163/23 163/23 165/8
Blue Cross/Blue [1] 159/23
Blvd [1] 5/5
board [4] 11/23 97/11 103/19 181/5
boat [1] 164/20
Bob [1] 159/20
Boeing [1] 179/19

BOIES [2] 4/10 117/15
boilerplate [1] 187/4
bones [1] 57/4
BONNY [2] 1/20 3/17
bonus [1] 168/22
book [5] 36/11 38/9 58/15 173/23 229/20
booklet [2] 215/10 222/20
books [4] 57/11 58/8 59/7 149/13
bootstrap [1] 221/24
born [1] 91/24
borough [1] 148/18
borrow [2] 44/18 148/15
both [28] 12/17 12/20 13/14 16/17 20/21 29/17 30/2 30/3 39/5 72/25 88/20 105/4 107/15 123/25 131/11 159/17 168/19 176/3 177/1 185/10 188/14 197/4 200/19 218/3 223/17 229/24 229/25 242/8
bottom [3] 29/21 133/2 162/17
bought [2] 47/9 47/10
Boulevard [1] 2/8
bound [5] 108/25 165/16 166/11 166/14 205/5
box [2] 3/6 144/15
boycott [1] 151/8
BOYD [1] 3/5
brake [1] 198/15
branch [1] 102/22
brand [5] 150/15 150/16 153/1 183/16 225/11
branded [4] 125/5 125/6 150/22 237/11
brands [1] 189/17
breach [1] 195/13
breadth [3] 199/12 199/19 202/5
break [7] 7/11 8/5 8/9 38/3 48/13 48/16 48/23 198/7 226/23 226/24 226/24
breakdown [1] 169/20
breaks [1] 8/10
Breakstone [1] 173/4
breath [2] 173/11 173/11
breathtaking [1] 147/5
Brick [1] 16/20
bridge [1] 9/12
brief [24] 23/25 42/13 58/14 59/21 60/1 145/5 147/1 150/12 151/4 155/23 155/24 173/8 177/25 180/15 212/2 213/6 215/4 215/11 223/17 223/17 223/18 228/16 232/15 234/16
briefing [2] 53/19 179/7
briefly [6] 44/14 106/18 159/24 198/11 204/24 212/22
briefs [9] 10/20 29/15 39/3 50/17 113/19 132/24 158/6 208/3 214/22
Brinckerhoff [1] 4/2
bring [20] 51/7 64/24 72/20 73/15 77/13 78/13 83/11 120/20 134/5 138/25 158/15 162/15 193/15 205/15 208/7 208/20 208/24 209/13 217/12 239/2
bringing [3] 110/13 110/17 240/3
brings [5] 38/11 38/12 39/16 113/25 211/5
broad [22] 65/24 72/3 94/19 98/1 101/2 108/22 124/6 124/10 162/9 165/17 173/17 173/22 174/11 175/11 175/2 176/3 184/4 184/14 185/9 195/11 238/4
broaden [1] 204/1
broader [3] 43/11 91/15 162/15
broadly [4] 19/14 143/18 116/18 116/22
Broadway [4] 1/19 2/2 3/16 4/5
broken [3] 45/6 102/13 103/11
BROOKLYN [2] 1/5 6/2
Brothers [1] 220/5
brought [19] 9/8 35/11 39/25 41/13 46/20 51/7 62/22 63/1 120/15 122/12 127/12 173/18 178/20 200/3 200/7 208/15 209/6 232/13 238/13

Brush [2] 68/1 68/6
bucket [1] 152/1
bucks [3] 130/21 135/8 172/18
Building [1] 166/20
built [1] 79/22
bulk [1] 106/17
bunch [5] 152/8 185/18 214/11 231/11 237/21
bundled [1] 47/12
burden [6] 54/8 93/12 93/13 93/15 94/20 148/4
burdensome [1] 148/23
business [44] 12/21 20/16 21/1 21/4 65/11 79/7 92/8 92/9 94/18 99/24 106/19 106/22 107/1 110/5 113/17 131/12 131/13 131/23 133/16 140/18 157/15 170/22 171/5 172/1 180/20 183/3 183/4 183/5 186/4 191/4 192/17 193/1 193/4 193/24 194/7 194/18 207/6 227/6 227/21 228/2 230/6 239/10 240/4 241/5
businesses [19] 13/19 58/23 97/3 170/21 171/6 176/22 181/4 194/22 194/23 237/3 237/3 237/18 237/19 237/20 240/24 241/7 241/7 241/7 241/18
businessmen [3] 237/20 239/6 240/3
buy [1] 213/15
buying [4] 14/13 24/1 24/7 24/10
bystander [1] 124/4

## C

C-a-m-b-r-i-a [1] 129/14
CA [7] 1/20 2/3 3/10 3/16 4/9 5/5 5/19
Cadman [1] 6/2
CAFA [1] 158/13
calculated [2] 73/20 240/14
calculation [1] 171/15
calculations [1] 197/9
CALIFORNIA [14] 5/17 20/4 20/4 84/17 153/9 155/19 157/13 157/14 157/14 158/3 169/12 170/18 211/4 211/5
call [7] 50/22 135/19 166/25 167/2 168/22 196/19 226/20
called [19] 11/1 52/19 83/7 85/15 86/6 90/10 103/6 114/19 138/8 158/3 166/25 171/21 193/2 199/20 206/5 230/10 239/14 240/11 240/12
calls [2] 139/8 237/15
Cambria [4] 129/10 129/14 130/25 136/25
came [10] 15/16 15/16 16/3 16/10 116/23 116/24 120/8 144/2 146/3 220/4
camera [1] 27/13
campaign [3] 25/11 25/14 25/23
can [105] 7/20 7/23 8/17 8/18 9/2 14/1 14/2 14/3 22/13 27/13 27/13 29/11 30/14 38/20 40/20 45/11 46/12 51/20 51/22 52/8 52/11 52/25 54/8 56/2 65/18 66/13 66/23 70/6 75/25 77/2 78/12 80/2 80/3 83/15 85/9 86/19 87/12 90/3 90/4 90/13 91/8 91/8 91/9 91/11 91/15 92/9 93/11 93/24 94/1 94/5 99/24 102/24 104/12 104/14 105/2 106/10 109/15 109/16 112/6 114/21 117/21 118/20 120/2 124/18 124/24 131/3 131/15 134/10 137/12 138/18 140/18 141/23 144/15 144/20 149/22 149/23 151/4 154/22 159/9 159/11 159/12 161/5 163/13 164/6 174/10 176/12 176/21 178/11 184/8 186/12 188/20 195/8 200/19 205/4 205/15 209/10 209/18 212/4 212/4 216/23 217/4 218/12 240/8 241/20 241/21
can't [40] 8/1 8/11 22/1 21/3 35/16 36/5 37/7 40/1 40/19 41/3 41/4 42/7 70/2 70/11 79/7 80/21 81/24 85/4 85/4 85/5 91/5 121/8 129/25 130/6 130/13 135/19 137/17 138/13 163/13 163/16 164/13 165/11 171/1 171/24 174/19 176/15 176/16 178/17 187/17 206/8 225/24
Canada [1] 23/18

**C**

cancel [1] 139/20
candid [1] 220/6
candidly [1] 39/4
CANNON [3] 3/12 49/16 182/3
cannot [27] 34/24 50/8 52/1 52/22 53/13
53/17 55/21 56/7 60/22 61/1 62/16 65/23 66/1
70/3 73/14 73/15 88/21 92/18 93/7 93/8
109/21 150/25 154/3 182/5 189/24 200/3
200/15
CANTER [2] 3/22 83/20
cap [2] 194/4 194/4
capacity [8] 127/11 130/11 155/9 205/16
208/16 209/13 217/11 238/8
Capital [1] 237/11
capitalization [1] 17/19
car [1] 207/8
card [92] 1/2 6/14 9/23 12/1 12/6 12/25 14/1
17/21 23/6 36/10 38/2 38/7 38/9 38/11 38/17
39/4 42/14 42/15 43/6 47/15 47/17 50/4 50/6
52/19 56/25 57/13 58/13 58/19 83/6 87/13
87/19 87/20 88/5 95/11 96/22 96/25 101/25
102/13 103/12 104/24 105/2 107/22 108/11
109/7 109/10 109/15 111/12 112/7 112/11
116/17 116/20 117/1 117/4 119/21 122/4
125/5 125/6 131/16 131/25 132/3 138/23
150/15 153/1 160/19 165/9 165/13 166/11
170/16 181/8 181/11 182/8 188/9 193/17
193/21 194/25 195/4 195/17 195/20 196/22
205/6 206/8 207/7 207/9 212/10 212/17
215/15 215/16 215/21 215/21 219/1 225/18
228/24
Card's [4] 46/1 50/18 53/24 57/11
cardholders [1] 147/19
Cardinal [1] 151/9
cards [90] 13/4 15/4 15/23 18/20 22/25 23/2
26/22 38/4 39/5 39/5 39/7 39/9 39/11 39/24
40/19 42/19 42/21 44/5 54/5 58/9 59/11 59/25
60/2 60/7 60/10 61/4 61/6 63/4 63/8 64/15
77/17 77/24 79/17 82/19 86/5 86/6 86/10
86/17 86/21 86/23 86/25 87/12 88/6 88/16
95/17 95/20 99/10 104/21 108/3 109/22
109/23 111/12 113/24 125/5 126/5 131/22
131/22 147/20 150/22 161/5 165/6 165/23
170/14 184/16 191/2 191/2 191/2 191/5 191/8
193/5 194/5 195/5 196/19 196/19 201/11
203/7 204/13 204/22 205/11 214/21 218/7
218/13 218/16 218/17 224/21 225/8 225/14
225/19 227/20 229/4
Cardtronics [4] 123/20 123/22 123/25
124/13
care [12] 77/23 114/8 128/6 129/2 129/4
142/19 143/16 160/7 160/18 160/20 161/3
211/19
cared [1] 204/4
careful [3] 19/7 67/4 235/16
carefully [2] 89/12 238/17
CARNEY [2] 2/13
Carpenters [1] 171/21
carried [2] 30/15 93/15
cartel [1] 104/21
carting [1] 98/4
carve [1] 117/7
carve-outs [1] 117/7
case [253]
cases [45] 9/14 11/25 27/15 33/16 41/11 52/3
56/10 59/13 73/14 75/3 75/4 88/18 88/20
104/1 110/14 111/16 152/8 152/8 152/12
153/20 167/9 167/18 167/19 167/21 167/23
168/20 169/10 188/25 200/13 203/17 203/19
211/15 231/11 231/11 231/19 231/20 232/24
233/17 236/1 237/18 238/13 238/14 238/21
241/12 241/17

cash [13] 9/19 17/13 107/16 108/7 109/10
109/22 165/18 165/19 166/13 170/16 188/19
215/15 219/2
categories [1] 209/14
category [3] 129/24 208/11 208/13
caught [1] 104/23
cause [9] 55/1 68/2 68/7 128/5 129/1 129/22
168/25 217/21 238/22
caused [2] 151/12 221/8
causes [1] 229/2
CB2 [1] 189/16
cease [1] 139/19
Celli [3] 4/2 4/4 101/14
Center [1] 4/8
centerpiece [2] 55/5 55/8
central [4] 7/9 7/17 118/8 127/19
Central States [1] 118/8
centric [1] 12/21
cents [2] 172/13 235/13
cents a [1] 172/13
century [1] 231/17
ceremonies [1] 49/14
certain [10] 9/18 22/14 35/13 55/15 69/11
69/14 69/16 75/17 100/19 157/12
certainly [17] 16/15 17/9 25/8 27/1 77/11
101/19 110/19 171/25 184/21 187/19 188/20
207/12 219/9 220/7 224/22 241/3 241/21
certainty [1] 185/21
certifiable [1] 178/13
certification [4] 53/2 121/13 122/20 177/4
certified [8] 29/1 29/22 52/11 54/8 76/7 94/1
94/5 101/8
certify [5] 30/12 51/21 117/21 117/25 118/2
certifying [1] 31/4
cetera [1] 172/1
chagrin [1] 189/18
chains [1] 57/15
chair [3] 69/22 70/2 70/6
challenge [6] 42/21 64/23 82/24 108/20
203/10 217/8
challenged [6] 15/6 46/7 52/5 54/12 73/9
92/9
challenges [5] 12/10 64/6 98/4 181/12 184/15
challenging [3] 11/16 77/13 110/13
Chamberlain [3] 85/25 86/2 204/4
champion [3] 66/21 69/3 81/25
championed [2] 72/24 73/6
chance [5] 15/21 20/8 42/1 78/19 105/11
chances [1] 10/6
change [28] 10/4 12/13 12/14 12/15 19/1
21/11 21/21 22/2 32/16 32/22 32/24 56/25
63/23 100/2 108/8 108/9 121/17 121/20
121/23 122/8 140/16 149/20 162/10 190/3
191/8 224/4 224/9 224/10
changed [2] 12/23 102/24
changes [19] 9/22 31/24 31/24 52/15 53/1
99/23 107/15 121/9 125/3 125/25 126/2 185/3
185/12 191/9 194/3 197/4 223/22 224/3
225/24
changing [3] 21/24 121/15 124/24
character [1] 92/19
characterization [1] 199/9
characterize [2] 60/24 215/20
characterized [3] 81/10 210/1 238/3
characterizing [1] 57/17
charge [16] 77/24 80/10 80/20 84/20 91/17
109/17 109/21 130/21 139/25 140/8 147/13
170/14 170/15 171/1 183/19 195/14
charge-back [1] 195/14
charged [3] 85/10 191/7 228/23
charges [4] 108/17 109/9 109/23 113/24
Charisse [2] 6/1 112/9
chart [1] 235/3
CHARTERED [2] 4/18 5/15

charts [1] 234/20
chases [1] 125/5
cheaper [5] 151/20 151/25 152/4 206/10
206/12
check [24] 12/15 12/24 12/25 13/5 17/3 27/4
56/4 64/10 64/13 64/20 98/16 101/24 104/24
136/16 167/1 167/24 168/4 168/20 169/11
170/16 188/10 218/19 219/2 236/9
checking [1] 17/17
checkout [1] 95/6
Chek [1] 196/20
CHEVALIER [2] 4/18 5/15
chief [1] 96/13
chilled [1] 110/12
chilling [2] 110/17 189/5
choice [7] 102/20 105/7 105/20 106/6 139/14
212/17 215/23
choices [2] 20/15
choose [7] 79/1 103/23 119/9 119/24 134/11
134/15 140/7
chooses [1] 225/15
chose [2] 21/8 191/9
CHRIS [3] 5/21 106/16 107/12
Chris Meyer [1] 107/12
CHS [2] 237/10 240/23
chunk [2] 108/8 165/22
Cir [1] 218/5
Circuit [25] 13/7 36/19 36/21 63/11 63/13
64/16 72/5 73/1 73/7 73/17 73/24 75/12 82/25
114/14 116/10 117/23 118/7 118/11 118/17
120/1 120/4 167/3 179/19 210/10 230/14
Circuit's [2] 56/11 61/2
circularity [1] 122/9
circumstance [1] 30/1
circumstances [4] 67/4 67/7 67/21 76/3
CIRESI [2] 1/12 3/2
cite [5] 35/10 37/11 56/10 152/8 218/4
cited [11] 34/25 35/19 69/12 72/9 151/10
213/9 216/5 217/1 232/17 241/12 241/17
cites [5] 38/11 89/8 231/9 231/10 231/21
cities [1] 241/6
Citigroup [1] 17/20
citing [1] 73/22
city [2] 210/12 228/5
civil [7] 52/3 69/2 118/13 153/15 154/13
156/6 226/9
CLA [1] 234/2
claim [64] 11/8 13/12 15/13 24/17 30/6 31/14
31/15 31/16 32/4 32/23 34/3 34/24 35/11
35/14 37/18 37/20 38/11 38/12 38/13 38/14
38/15 38/23 39/24 41/12 42/12 42/12 55/25
57/13 57/25 58/9 59/21 60/16 61/3 68/13 75/6
75/17 75/20 75/21 75/25 77/13 83/11 100/12
122/3 124/10 126/6 127/12 130/1 130/20
132/15 134/16 140/4 140/9 158/8 169/9
203/13 205/15 208/20 210/5 211/5 217/20
224/23 226/7 226/9 226/14
claimed [2] 18/8 168/11
claiming [1] 140/22
claims [125] 11/15 15/5 25/17 27/3 29/17
29/17 30/2 30/8 34/6 34/10 34/21 35/3 50/4
50/6 50/7 51/1 51/1 51/7 51/8 51/11 52/6
56/14 56/22 59/13 59/19 59/22 60/4 60/15
60/21 60/24 62/9 62/22 62/25 63/3 63/7 63/8
64/18 64/25 68/23 68/25 69/20 72/6 72/16
72/20 72/24 73/16 74/13 76/21 81/20 82/15
83/3 98/1 99/11 100/11 100/15 100/19 100/23
104/20 105/6 120/17 120/20 121/1 121/1
121/1 121/21 122/11 127/9 131/7 133/12
139/5 140/6 140/8 141/13 141/23 142/14
146/13 153/14 153/15 153/18 155/5 155/11
155/12 156/21 156/22 156/24 157/1 157/17
158/9 158/10 158/10 158/11 159/7 174/8
178/4 200/3 208/6 208/12 208/15 209/3 209/4

# C

claims... [19] 209/6 209/9 209/11 209/13
209/14 209/25 210/1 210/3 210/11 210/12
210/13 210/14 210/23 210/24 210/24 211/10
211/20 211/23 216/23 223/4 224/15 224/16
224/16 226/9 228/17
clarify [1] 126/9
clarity [1] 63/7
class [351]
class are [1] 76/4
class's [1] 57/16
class-wide [3] 52/22 55/2 55/6
classes [9] 16/2 28/19 29/6 30/4 117/22 138/6
209/7 221/6 221/19
classes' [1] 65/20
Classes's [1] 52/3
classify [1] 158/8
clause [9] 11/10 37/2 68/8 68/20 126/15
126/18 126/22 152/15 217/23
clauses [2] 152/7 152/12
clawed [1] 103/14
clay [4] 144/6 191/23 192/11 193/7
Clayton [1] 217/10
clean [1] 58/14
cleaners [1] 136/20
cleanest [2] 156/7 157/4
cleanly [1] 64/14
clear [39] 28/17 32/13 32/14 32/17 39/2
39/19 58/4 58/7 58/10 89/19 90/9 91/14
114/13 116/4 116/11 117/23 118/7 118/11
120/2 120/5 126/23 135/20 140/14 156/7
161/9 162/1 187/25 188/15 201/4 201/9
202/16 202/19 205/3 208/25 210/2 210/13
210/22 213/1 217/1
clearly [21] 18/2 29/25 39/12 59/9 60/13 62/7
71/9 71/22 74/22 100/16 100/25 104/17
116/17 119/2 121/24 167/17 171/14 210/11
217/3 220/19 231/13
clerk [1] 7/16
clerks [3] 113/20 171/14 172/2
client [14] 68/20 71/11 134/19 135/18 136/1
136/13 146/4 146/5 169/22 170/9 177/16
178/1 204/2 237/1
client's [2] 146/8 147/9
clients [38] 43/2 43/3 43/4 44/19 44/24 45/10
45/20 46/6 46/16 46/17 50/10 87/25 93/17
94/12 94/15 96/8 118/25 137/14 137/19
145/23 160/2 163/6 163/24 164/18 165/7
166/3 166/5 166/14 173/9 173/13 174/2 174/4
174/25 176/16 176/17 192/5 204/1 237/1
Clifton [3] 234/2 234/11 234/15
CLINE [1] 3/5
Clinic [1] 152/13
clinical [2] 160/12 160/20
close [6] 46/25 48/19 49/11 93/11 130/10
219/19
closed [2] 63/9 108/18
closer [1] 8/18
cloth [1] 74/25
co [2] 5/3 214/6
co-merchants [1] 214/6
coach [3] 235/11 242/1 242/2
Coburn's [1] 180/22
code [3] 58/13 157/15 190/25
codes [1] 58/12
codifies [1] 184/9
coding [2] 190/23 191/9
cognizant [1] 180/8
COHEN [2] 1/18 1/24
cohesion [4] 51/25 52/4 54/3 77/1
cohesive [2] 54/18 161/11
COIE [2] 4/8 113/6
Coke [1] 171/22

collateral [2] 73/8 75/4
collaterally [1] 56/1
colleague [1] 233/2
collected [1] 164/11
collecting [1] 164/8
collectively [2] 88/14 220/25
collude [1] 102/7
collusive [3] 152/14 152/16 181/1
Colorado [4] 170/3 170/10 170/12 172/16
Columbus [3] 3/22 4/17 5/11
column [2] 28/24 29/22
combining [1] 104/13
Comdata [1] 196/20
come [36] 33/18 33/19 33/21 38/21 41/25
42/8 44/6 46/25 47/14 49/10 53/21 55/12
55/24 58/14 66/20 81/25 84/25 86/14 105/7
128/7 130/10 141/21 144/9 147/9 147/10
170/9 173/24 188/16 191/3 191/24 192/9
199/24 212/7 227/1 230/21 242/4
comes [5] 85/5 94/20 95/20 223/5 242/13
comfortable [1] 210/21
coming [6] 32/10 41/19 95/9 141/9 177/16
241/11
comment [2] 213/10 218/6
commentaries [1] 224/2
commentator [1] 224/3
comments [6] 98/7 198/23 198/24 199/25
202/24 213/24
Commerce [1] 194/15
commercial [1] 229/8
Commission [1] 217/15
committee [7] 28/15 28/17 28/24 29/20 29/25
88/23 222/19
common [8] 45/1 45/19 138/9 158/11 167/16
168/15 201/19 213/25
communicate [1] 47/14
communication [1] 141/5
communications [1] 141/20
community [2] 25/10 213/21
companies [21] 13/9 13/10 13/17 21/18 27/18
88/5 96/7 108/12 109/15 132/3 138/23 163/7
165/5 171/4 181/11 182/8 187/17 187/22
191/14 214/10 215/21
company [9] 10/8 45/10 72/1 79/5 135/5
135/5 170/14 196/10 196/12
company-wide [1] 196/12
comparable [2] 236/5 238/1
compare [3] 40/7 151/25 237/23
compared [11] 27/5 119/22 141/21 162/8
203/1 203/1 203/4 203/4 203/14 203/17 204/6
Comparing [1] 11/2
comparison [5] 64/11 115/3 151/22 152/3
236/2
comparisons [1] 17/24
compelling [1] 97/22
compels [1] 75/17
compensate [3] 109/4 221/7 240/21
compensated [2] 236/22 238/23
compete [5] 145/8 145/9 146/9 146/10
152/17
competes [1] 114/1 149/20
competition [19] 63/19 63/21 64/4 64/8
95/18 95/18 109/5 109/6 145/13 145/22
146/17 147/23 148/21 149/4 150/9 152/22
183/23 184/21 215/22
competitive [15] 15/25 21/15 42/22 43/7 43/15
43/15 43/18 45/5 50/3 52/19 53/17 53/18 64/5
83/6 83/7 119/20 149/21 150/15 150/20 153/1
181/18 183/4 197/13 207/3 207/11
competitively [1] 99/1
competitor [8] 145/8 146/9 151/13 152/24
190/4 204/25 205/2 224/22
competitors [19] 12/10 13/6 49/23 53/24
55/20 65/12 99/16 121/22 145/7 146/17

146/24 151/12 153/4 191/11 205/4 205/4
205/5 224/16 224/20
complain [4] 30/25 38/24 42/10 212/7
complained [3] 141/15 179/8 206/4
complaint [6] 58/19 74/22 151/6 207/13
220/18 221/6
complaints [1] 199/12 199/18 228/19
complete [4] 52/4 65/5 106/2 217/13
completely [6] 12/18 78/2 97/16 133/5
134/11 227/23
complexities [1] 230/23
complexity [5] 15/11 16/18 57/10 104/2
231/1
complicated [2] 138/5 148/23
complicating [1] 141/6
comply [3] 147/25 160/22 206/10
complying [1] 200/16
component [4] 46/16 158/22 163/18 163/19
comprehensibly [1] 85/7
comprehensive [3] 33/20 220/11 226/5
comprehensively [1] 10/20
comprising [1] 222/25
compromise [5] 16/12 31/22 186/5 187/19
187/20
compromises [1] 54/23
computer [1] 6/5
conceded [1] 208/14
concept [4] 34/18 34/20 34/21 220/7
conceptual [1] 38/5
concern [28] 32/2 32/3 40/24 71/17 94/13
96/21 112/5 115/2 132/5 132/6 133/20 133/21
140/25 153/13 155/4 160/8 160/25 173/9
186/9 186/17 201/2 201/3 202/14 208/4 209/9
211/3 211/19 211/21
concerned [9] 19/11 99/8 129/25 184/14
202/21 202/23 210/5 210/13 211/16
concerning [7] 60/15 60/21 61/3 74/13
110/16 155/5 208/1
concerns [11] 69/23 97/13 122/15 155/22
156/13 157/8 173/18 209/19 230/9 239/3
239/4
conclude [3] 55/5 64/10 226/4
concluded [5] 45/19 55/3 55/7 68/24 106/24
concludes [1] 63/6
conclusion [4] 30/15 55/10 65/23 176/24
conclusions [1] 50/18
conclusively [1] 10/23
conditional [2] 174/25 175/2
conduct [55] 29/9 37/25 38/6 40/23 46/2 52/5
52/8 54/11 54/12 54/19 56/18 56/22 57/2 57/3
57/12 58/23 59/2 59/2 62/12 62/13 62/14
64/18 64/23 74/13 74/19 74/20 74/21 75/8
75/17 75/18 75/24 76/22 80/23 81/21 82/22
90/2 90/4 98/1 141/14 151/12 152/9 152/11
152/13 217/3 217/8 217/21 221/4 223/9
223/13 223/19 223/20 223/23 223/24 225/23
229/1
conduct-based [1] 223/13
conducted [1] 131/13
conferred [1] 198/21
confidence [1] 105/15
confidential [1] 27/10
confidently [2] 26/15 219/6
confirm [1] 138/2
confirmed [4] 58/2 64/16 69/17 124/15
confirms [1] 57/19
conflict [2] 51/24 55/21
conflicts [3] 53/4 54/21 64/21
confronted [1] 63/14
confuse [2] 135/22 141/7
confused [1] 141/8
confusion [2] 130/12 141/19
congress [12] 13/24 27/22 27/25 28/2 28/6
101/23 102/1 111/19 111/21 112/1 112/22

# C

congress... [1] 112/3
congressional [2] 111/19 112/3
conjunction [1] 29/23
connection [5] 6/11 6/12 120/3 128/5 185/18
consent [4] 50/9 91/9 139/12 140/18
consenting [1] 175/4
consequence [1] 110/20
consequences [2] 15/19 56/19
conservative [5] 19/5 19/9 233/3 235/18 236/21
consider [7] 49/3 50/10 190/13 197/8 199/23 203/19 219/9
considerable [2] 99/5 230/9
consideration [5] 94/6 136/15 181/6 190/13 192/2
considerations [1] 232/20
considered [7] 20/19 40/9 41/24 58/16 162/4 181/25 187/15
considering [1] 182/14
consistent [4] 76/23 168/19 208/2 217/22
consists [2] 194/19 228/19
consolidated [1] 220/17
consortiums [1] 13/6
conspiracies [1] 58/20
conspiracy [2] 59/5 221/8
conspire [1] 16/23
CONSTANTINE [3] 3/12 49/16 182/3
constituency [1] 107/18
constituents [2] 190/11 214/19
constitution [3] 50/15 81/15 81/16
constitutional [8] 66/2 67/12 68/25 73/15 76/13 76/15 83/2 83/12
constraining [1] 224/21
constraints [2] 80/8 80/10
constructed [3] 183/21 184/6 184/24
construed [5] 20/9 36/20 62/22 116/18 116/18
consult [1] 123/15
Consulting [2] 170/2 231/7
consumer [32] 18/20 21/21 21/24 22/3 22/24 23/5 43/17 64/8 65/10 87/17 97/17 100/6 106/16 107/13 107/24 108/1 108/12 108/16 108/23 110/4 110/10 110/12 110/13 110/23 110/24 111/11 190/11 214/22 217/9 217/11 217/14 219/3
consumers [28] 21/17 80/1 80/3 106/16 106/20 107/4 107/6 107/9 107/19 108/6 108/15 108/19 108/24 109/1 109/6 109/9 109/18 109/20 109/21 109/24 110/21 110/25 111/5 111/13 112/4 181/9 195/24 224/18
CONT'D [4] 2/1 3/1 4/1 5/1
contact [5] 39/6 95/5 201/8 201/12 201/14
contacted [2] 138/21 156/14
contactless [2] 225/9 225/13 225/15
contain [2] 24/25 159/5
contained [1] 25/12
Container [1] 241/17
contemplated [3] 29/25 59/14 133/8
contemporaneous [1] 48/6
contend [1] 150/12
context [5] 75/1 131/22 146/3 156/2 172/10
continue [9] 36/9 80/7 109/14 109/16 109/19 136/9 215/1 223/24 235/15
continued [18] 16/23 34/7 34/11 34/22 35/21 42/2 43/7 61/7 99/6 115/5 128/10 143/18 144/3 175/5 200/22 204/21 206/15 235/19
continues [2] 221/4 223/6
continuing [1] 221/9
contour [1] 220/19
contours [2] 75/14 75/15
contract [3] 90/23 131/2 234/9
contracts [2] 133/19 139/20

contractual [2] 130/9 196/20
contradict [1] 222/16
contradiction [1] 149/14
contrary [7] 56/21 75/25 81/9 105/12 107/3 200/20
contrast [2] 64/13 64/22
control [6] 81/3 126/12 193/22 193/23 205/25 206/14
controlled [1] 12/17
controlling [1] 73/25
controversial [1] 34/3
controversy [1] 204/21
convened [1] 65/4
convenience [4] 25/20 182/19 196/10 196/18
convenient [4] 25/22 25/23 26/2 96/14
converging [1] 13/20
conversation [4] 8/8 88/3 88/4 197/18
conversations [3] 97/6 187/12 197/14
convert [1] 131/6
convey [1] 155/21
convince [1] 189/2
convinced [2] 46/3 47/4
COOK [2] 5/20 98/20
cooperation [1] 239/1
coordination [1] 104/9
copies [1] 27/23
copy [2] 12/3 215/10
copying [3] 172/9 172/10 235/12
copyright [1] 35/2
copyrights [1] 73/3
core [5] 59/15 95/22 105/6 220/12 226/6
corners [1] 135/15
CORP [2] 5/4 42/17
corporate [2] 189/15 221/4
corporation [2] 227/6 228/3
correct [13] 19/14 30/8 30/21 76/24 87/7 87/14 96/19 121/10 121/11 162/23 213/1 229/10 229/11
corrective [5] 130/17 139/21 139/22 142/4 142/16
correctly [4] 34/15 48/25 55/3 115/1
corrects [1] 241/25
cost [8] 77/24 87/21 110/15 130/16 132/14 135/22 150/7 151/22
costs [7] 95/14 139/7 193/24 238/10 238/24 238/25 240/22
Coughlin [2] 2/1 2/3 171/19 226/17
could [64] 14/3 19/6 26/14 31/25 32/1 34/4 36/16 37/23 41/12 51/7 52/4 62/22 63/1 63/9 63/18 64/22 65/21 75/17 100/4 108/9 111/21 111/22 111/22 111/23 112/1 116/13 119/10 120/20 122/11 124/9 124/10 127/12 132/12 136/14 139/7 140/7 154/19 157/8 169/16 172/18 177/4 183/12 183/13 185/3 190/2 190/13 190/18 195/12 200/3 208/7 211/3 211/6 217/11 217/20 219/6 219/11 220/20 221/15 224/10 233/9 236/17 239/24 239/24 240/21
couldn't [7] 35/6 35/16 77/12 92/2 183/14 187/14 226/1
counsel [73] 10/12 16/3 16/9 16/16 21/22 51/11 54/7 54/24 55/10 57/16 60/4 65/8 65/19 96/19 100/18 101/19 103/4 123/20 129/2 133/9 133/10 133/24 134/7 135/4 135/25 136/2 136/7 136/10 137/3 140/7 140/19 141/4 142/3 142/16 142/17 142/17 150/1 156/14 156/19 157/9 157/11 157/18 167/4 167/8 168/2 168/9 168/21 169/1 169/2 169/9 169/13 171/9 171/11 172/6 172/12 179/7 180/17 182/2 189/15 202/20 205/20 216/17 216/18 219/16 222/24 230/21 232/4 232/24 233/1 233/25 234/8 240/14 240/17
counsel's [4] 132/24 159/3 233/3 233/7
count [4] 66/16 160/21 167/21 171/24
countries [1] 123/24

country [8] 10/15 50/2 55/16 88/11 97/12 143/8 167/20 213/11
County [1] 166/20
couple [9] 32/9 41/17 82/6 90/9 138/5 144/2 144/25 199/25 214/18
course [23] 18/5 20/1 25/21 29/9 54/17 64/1 70/19 81/24 93/13 110/1 131/4 139/14 139/16 166/6 167/23 168/7 197/18 209/9 209/17 209/19 211/9 217/9 225/9
courses [2] 57/11 58/23
court [153] 1/1 1/4 1/9 6/1 6/9 7/14 7/19 8/6 9/16 11/1 11/5 20/4 32/22 35/4 35/7 37/12 37/14 38/12 40/5 40/6 41/8 44/14 45/12 46/12 47/20 50/7 50/15 51/22 52/2 52/6 54/15 54/18 63/14 63/15 66/3 67/9 67/16 67/23 68/2 68/5 68/10 69/3 72/2 72/23 73/13 73/24 75/18 76/2 77/5 77/13 81/7 82/6 82/13 83/16 85/1 85/17 86/12 89/8 90/18 90/25 92/10 93/10 93/25 96/2 98/16 98/22 101/6 102/19 104/16 106/1 110/21 111/15 116/2 117/5 117/7 117/25 118/1 118/5 118/14 119/5 119/13 123/9 124/9 124/16 124/18 124/18 124/24 125/1 125/16 126/1 126/3 126/5 126/17 126/22 126/23 127/16 127/22 133/11 141/9 144/2 151/11 154/18 155/20 155/22 157/2 157/25 158/1 158/2 158/3 158/12 158/18 158/19 158/20 159/13 170/1 174/13 175/2 176/1 176/3 176/18 176/25 177/4 190/12 194/1 196/2 199/16 199/22 199/23 200/2 200/8 200/9 200/10 201/1 203/18 209/1 210/12 210/19 211/14 211/16 213/5 214/23 217/2 217/22 219/5 220/1 220/1 226/7 231/4 233/8 235/17 236/18 240/19
Court's [6] 54/14 126/25 177/22 178/1 188/1 236/18
courthouse [1] 98/3
courtroom [10] 7/8 8/4 47/25 65/5 144/11 160/5 166/7 198/9 221/14 230/16
courtrooms [1] 7/9
courts [10] 18/4 27/25 32/17 40/14 62/25 63/12 63/16 156/9 179/18 235/6
cover [19] 8/24 10/20 36/10 36/11 58/1 58/4 58/8 60/5 60/8 62/6 70/14 71/12 71/23 99/18 121/21 165/20 202/15 208/6 208/9
covered [11] 7/13 10/19 23/25 39/21 39/24 56/22 58/6 58/16 77/4 124/14 225/20
covering [3] 56/17 60/11 208/8
covers [7] 53/23 70/16 94/16 94/17 94/17 143/11 221/11
crack [1] 87/3
cradle [1] 64/9
crafted [3] 113/15 116/15 146/15
craftmanship [2] 77/6 77/8
CRAIG [4] 1/14 9/4 198/20 215/3
crammed [1] 81/8
Crate [3] 189/15 189/16 191/14
create [6] 95/18 120/3 146/20 151/1 159/11 177/6
creates [6] 51/24 55/21 122/13 181/21 181/22 189/5
creation [1] 164/23
creative [1] 47/16
credible [1] 58/3
credit [49] 13/1 14/1 18/20 58/11 58/12 60/9 96/22 102/13 103/12 105/2 107/22 108/3 109/7 109/22 111/12 113/24 131/16 131/22 132/2 150/15 165/6 165/9 165/13 165/23 166/10 170/15 181/10 182/8 188/9 191/2 193/4 193/17 193/21 194/5 194/25 195/17 195/20 196/21 201/10 214/20 215/15 215/16 215/21 215/21 218/13 218/20 219/1 227/20 228/24
creditor [1] 170/14
CRI [1] 6/1

Case 1:05-md-01720-MKB-JO Document 693 Filed 11/20/13 Page 253 of 281 PageID #: 71098

# C

crises [1] 67/7
crisis [1] 67/13
criteria [1] 37/11
critical [3] 49/3 82/11 158/22
cross [4] 159/23 163/23 165/8 169/11
Cross/Blue [1] 163/23
crystal [4] 28/17 32/17 217/1 237/9
CSR [1] 6/1
curious [2] 13/3 178/5
current [25] 13/4 40/23 53/20 59/2 59/7
59/19 60/7 60/17 60/22 110/10 166/4 166/5
201/13 225/14 233/15 233/19 233/21 233/22
233/24 234/25 236/2 236/7 236/7 236/10
236/16
currently [6] 18/15 39/24 111/11 184/24
197/22 225/9
customer [7] 88/2 92/7 100/4 132/23 134/19
191/6 197/13
customer's [1] 100/4
customers [25] 21/7 22/21 87/18 87/24 131/2
131/13 132/2 133/16 134/13 134/15 136/13
136/18 136/20 138/6 138/6 138/8 142/11
151/15 164/5 164/9 164/12 176/12 190/1
193/3 215/22
cut [7] 117/7 165/24 234/4 234/6 235/9
235/10 235/14
cutting [2] 233/7 236/23

# D

D'Agostino [1] 180/22
D.C [1] 5/16
daily [1] 139/9
damage [8] 29/17 30/2 30/7 76/21 104/20
105/6 217/21 221/19
damages [33] 15/8 50/25 51/18 64/24 64/25
64/25 69/20 72/7 72/20 72/24 75/8 75/20
75/22 81/20 82/15 83/11 101/3 101/4 101/5
114/13 114/15 116/5 116/14 165/11 165/20
166/1 173/12 176/5 176/25 186/11 217/21
221/7 221/19
damned [2] 105/15 105/16
danger [3] 56/19 111/19 112/3
dangerous [3] 57/19 62/24 159/6
DANIELS [1] 3/5
Danoti [1] 144/6
darkly [1] 80/23
data [14] 25/17 100/3 113/6 113/9 113/19
113/20 113/21 114/5 116/6 117/5 145/7
190/23 195/13 218/2
Data's [2] 114/5 117/10
date [4] 34/23 74/11 74/14 143/7
dated [1] 100/2
dating [1] 64/25
David [6] 144/5 144/6 182/18 189/13 196/5
196/8
David Wagner [1] 144/6
DAVIDOFF [2] 1/23 229/16
Daviss [1] 166/19
day [18] 7/25 36/4 55/23 64/19 71/14 135/21
142/23 143/15 150/7 177/9 187/21 193/4
194/24 220/4 228/4 234/9 234/10 242/16
days [5] 140/18 142/22 239/7 239/7 239/7
DC [2] 2/12 4/20
de [1] 40/18
deal [29] 8/11 31/24 50/12 50/12 50/13 55/6
56/1 56/2 70/14 82/9 84/6 85/4 85/4 85/5 86/8
86/8 87/23 89/3 90/18 102/25 119/12 145/11
147/24 148/5 148/16 148/19 148/24 148/25
182/13
dealing [3] 85/6 91/10 212/14
dealings [1] 208/3
deals [5] 41/1 55/18 90/19 122/2 171/8

debate [1] 118/21
debit [13] 13/1 13/6 13/13 13/22 13/22 22/21
58/11 60/9 108/3 114/2 114/2 125/6 201/11
218/20
Deborah [1] 187/1
Debra [1] 144/5
decade [1] 19/5
decades [5] 62/9 64/8 99/2 101/23 108/2
December [1] 119/6
December 2012 [1] 119/6
decide [8] 68/14 68/21 81/19 84/6 85/11
85/13 107/2 135/10
decided [3] 93/11 107/2 151/10
decides [5] 74/12 95/4 126/1 157/6 171/17
decision [7] 56/11 61/2 73/25 136/16 185/4
200/8 220/4
decisions [4] 14/4 51/3 51/14 203/20
declaration [11] 22/20 96/19 124/8 125/7
136/4 139/5 165/8 165/12 216/10 216/15
234/12
declaration's [1] 54/25
declarations [3] 105/23 131/11 164/19
declaratory [3] 52/7 52/12 88/24
declared [6] 42/16 42/19 52/9 200/23 200/24
207/15
declined [2] 105/1 121/5
decrease [1] 147/16
decree [1] 91/9
dedication [1] 107/5
deem [1] 108/13
deemed [1] 100/8
default [4] 15/2 15/22 42/16 44/4
defeat [1] 53/2
defect [1] 76/17
defective [1] 176/10
defects [2] 50/16 54/25
defendant [7] 29/8 29/9 35/6 75/24 91/1
91/10 229/9
defendant's [1] 126/11
defendants [73] 6/22 10/11 17/4 17/6 17/20
31/7 31/13 35/17 37/7 37/25 47/9 58/14 59/5
59/21 59/23 60/13 60/23 62/13 63/5 69/10
69/12 70/19 70/25 72/25 73/6 80/12 82/19
84/3 89/3 89/14 89/16 94/21 95/3 96/4 97/25
98/14 99/3 99/6 99/9 99/13 100/1 100/14
110/22 121/10 122/2 124/12 124/15 124/22
125/12 149/17 151/10 154/11 155/5 156/12
181/2 190/5 198/21 198/22 199/4 200/15
204/2 204/16 204/18 205/3 208/2 219/18
223/7 223/21 223/23 225/1 228/22 231/12
237/7
defendants' [10] 34/22 47/10 54/10 58/7 60/7
90/2 90/4 125/22 126/9 195/22
defending [1] 94/15
defense [10] 17/5 70/22 156/14 156/19 157/9
157/11 157/18 159/3 207/19 232/1
defense counsel [1] 156/14
defer [2] 63/16 186/18
defers [2] 83/16 230/14
define [7] 57/9 57/24 60/9 170/17 178/11
220/2 226/13
defined [2] 57/15 71/22
defines [2] 58/11 201/10
definitely [1] 219/22
definition [11] 40/10 56/23 58/12 125/4
125/5 125/6 165/10 178/11 195/17 201/11
239/13
definitional [4] 125/2 125/25 126/2 126/23
definitions [3] 124/24 125/3 125/13
definitive [3] 125/18 126/16 154/24
degree [2] 198/14 233/6
degrees [1] 205/10
delay [4] 22/2 94/20 94/22 94/25
delve [1] 62/1

demand [1] 118/4
demonstrated [1] 10/24
denied [2] 47/1 70/3
DENNIS [1] 3/10
Denny [1] 118/17
denominator [1] 164/9
Denver [1] 5/3
deny [10] 22/17 58/21 58/23 59/1 66/4 72/6
81/24 96/4 177/4 189/9
department [10] 5/17 12/11 12/16 82/23
101/25 119/16 119/19 153/21 171/13 217/14
depend [1] 60/25
dependent [2] 31/15 220/8
depending [3] 17/25 18/16 215/6
deposed [1] 239/11
deposition [2] 201/8 237/22
depositions [1] 16/7
Depot [25] 51/11 66/11 68/21 70/9 72/1 74/6
74/12 78/17 79/6 81/5 81/9 81/10 81/13 81/14
81/18 81/23 82/20 83/5 83/5 83/9 83/10 83/15
171/5 222/1 222/4
deprivation [1] 56/9
deprive [1] 56/5
deprived [1] 105/10
deprives [1] 102/11
depriving [1] 81/18
depth [2] 97/8 195/7
describe [3] 33/23 91/2 136/14
described [5] 14/7 76/17 77/25 88/3 107/5
describes [1] 90/8 173/11 216/10
describing [2] 131/15 147/10
description [1] 69/21
descriptive [1] 78/11
deserving [1] 166/25
designed [11] 12/21 33/13 90/10 91/20 91/21
118/3 119/3 150/13 176/19 210/22 238/12
desirable [1] 23/19
desire [1] 211/9
desired [1] 80/15
desist [1] 139/19
despite [3] 99/20 126/10 221/2
detail [2] 24/1 154/2
detailed [2] 78/21 146/25
details [3] 125/7 125/10 151/21
determine [6] 33/25 57/6 118/14 148/7
151/24 156/9
determined [4] 24/25 37/17 193/25 197/3
determining [1] 118/11
detract [1] 112/25
detriment [1] 195/23
detrimental [1] 195/12
developed [2] 16/9 101/21
development [2] 16/21 112/6
developments [1] 56/15
device [3] 24/8 58/13 195/19
devices [11] 39/6 39/6 60/1 99/11 184/17
201/8 201/12 201/14 202/15 225/3 225/13
devote [1] 236/22
devoted [3] 236/24 237/17 240/5
DeWINE [1] 5/9
dialogue [1] 136/1
dictate [1] 153/4
did [37] 14/20 14/22 25/17 25/19 25/24 26/3
27/2 27/4 28/18 35/2 42/21 48/1 51/5/10 64/18
64/20 65/16 89/22 94/3 98/10 139/5 140/21
168/25 169/3 172/14 172/15 174/16 174/17
178/21 178/22 178/23 187/11 200/10 234/7
234/20 234/25 235/1 237/23
didn't [26] 16/14 17/5 18/14 26/4 26/10
43/20 49/1 57/14 76/16 80/5 112/24 140/7
150/3 175/3 176/2 176/23 179/9 179/12
181/14 199/20 210/6 212/25 217/6 219/4
224/9 236/22
Diego [5] 1/20 2/3 3/10 3/16 232/6

Case 1:05-md-01720-MKB-JO Document 6094 Filed 11/20/13 Page 254 of 281 PageID #: 71099

**D**

**differ** [2] 240/13 240/16

**difference** [9] 40/17 40/18 127/7 163/1 163/4 187/13 191/8 207/19 223/20

**differences** [2] 65/2 80/13 154/16 191/1

**different** [40] 13/18 26/21 30/4 37/24 40/5 42/22 54/4 54/4 77/18 78/13 79/17 108/18 117/22 119/20 120/7 123/24 132/7 132/13 132/16 134/2 135/21 138/6 146/18 146/22 157/3 157/3 162/16 167/4 170/18 188/21 191/3 195/21 218/1 225/25 225/25 238/6 238/23 239/20 241/5 241/6

**differentially** [1] 183/22

**differently** [4] 9/17 30/3 161/10 206/8

**difficult** [7] 44/23 57/8 134/15 212/8 240/1 241/9 242/10

**dig** [1] 151/20

**dignity** [1] 158/20

**diligent** [1] 16/16

**dimension** [1] 186/1

**diminishing** [1] 235/3

**diners** [1] 136/21

**direct** [4] 43/3 138/6 154/20 177/1

**directed** [5] 6/25 29/2 38/16 103/4 151/14

**direction** [4] 97/22 121/8 156/2 156/7

**directly** [4] 88/4 95/9 156/25 156/25

**Director** [1] 194/15

**directors** [2] 13/18 97/11

**disadvantaged** [1] 150/14

**disagree** [12] 14/21 15/15 18/9 45/14 49/1 49/23 142/25 143/1 143/12 148/12 148/12 208/18

**disagreement** [1] 41/8

**disagreements** [2] 65/22 222/23

**disciplined** [1] 199/14

**disciplines** [1] 150/24

**disclose** [4] 20/3 188/17 215/14 215/21

**disclosed** [2] 20/1 148/2

**disclosing** [2] 20/2 177/2

**disclosure** [2] 84/17 170/20

**discount** [6] 1/3 6/15 14/2 147/16 151/25 237/8

**discounting** [2] 18/16 47/15

**discover** [48] 17/21 22/5 144/24 145/2 146/24 147/1 147/11 148/3 148/7 148/8 148/10 148/11 148/20 149/1 149/2 149/19 149/23 150/3 150/6 150/10 150/16 150/16 150/19 150/22 150/24 150/25 151/15 151/24 152/1 152/17 152/19 204/25 205/18 205/21 205/25 206/1 206/2 206/7 206/11 206/11 206/12 206/13 207/9 212/7 212/8 212/9 212/10 212/12

**Discover's** [8] 145/18 146/11 148/10 148/12 148/14 148/18 149/6 205/20

**discovery** [6] 27/11 45/25 149/2 201/9 222/8 237/7

**discretion** [2] 114/6 230/15

**discriminate** [3] 77/17 78/12 86/25

**discrimination** [2] 238/13 240/2

**discuss** [5] 11/7 56/13 88/19 157/8 230/20

**discussed** [3] 53/18 97/7 99/9

**discussing** [1] 82/12

**discussion** [8] 54/14 170/10 203/9 210/20 212/22 217/25 230/10 231/3

**discussions** [4] 10/16 146/14 147/9 196/24

**dismiss** [5] 16/8 202/3 202/9 216/5 216/6

**dispense** [1] 67/14

**dispenser** [1] 197/5

**disproportionate** [1] 99/3

**disproven** [1] 218/18

**dispute** [10] 29/11 32/4 34/20 55/10 85/6 85/8 86/9 102/14 103/13 124/14

**disputed** [1] 52/17

**disputes** [3] 195/13 229/8 231/10

**disseminating** [1] 185/23

**dissimilar** [1] 71/21

**distinct** [2] 61/6 213/22

**distinction** [4] 53/2 74/19 74/24 75/1

**distort** [1] 56/15

**distributed** [2] 98/15 240/17

**distribution** [1] 179/15

**district** [21] 1/1 1/1 1/4 1/9 35/19 63/14 67/16 67/17 72/14 98/4 118/14 120/9 169/12 171/20 200/8 200/10 213/5 231/15 233/18 233/18 236/13

**divestiture** [1] 9/24 10/1

**divide** [1] 153/10

**divisible** [1] 91/17

**DMV** [1] 208/17

**do** [171] 7/15 7/19 7/23 7/25 13/19 17/17 18/11 18/25 23/1 27/2 27/13 28/6 30/5 31/25 32/1 33/9 33/9 33/15 33/23 35/8 35/17 36/5 39/8 41/6 41/7 43/21 43/22 43/22 46/12 46/25 47/12 47/16 49/12 49/25 50/10 51/20 52/15 52/24 57/14 58/21 58/22 60/5 63/25 64/2 64/4 69/10 69/14 69/19 70/7 71/13 71/24 72/23 76/2 77/5 77/14 79/6 79/24 80/3 80/10 80/21 83/9 84/20 85/9 86/9 88/13 89/10 90/21 91/18 91/22 91/24 92/11 92/21 92/21 93/10 94/17 95/7 98/8 102/16 102/16 105/16 106/1 112/1 116/5 117/11 117/6 117/20 119/18 121/10 122/16 123/4 124/2 124/3 124/23 124/24 125/20 126/3 129/23 130/6 130/6 130/22 132/2 132/3 134/5 134/11 135/9 135/19 137/17 137/17 138/17 139/22 141/4 142/7 142/22 143/2 143/3 143/6 145/21 145/22 148/9 150/4 153/2 153/24 154/19 154/22 154/25 157/4 158/14 159/2 162/16 163/13 163/16 169/18 170/21 171/4 174/12 178/18 179/18 183/7 184/1 184/8 184/16 187/14 189/22 190/2 190/4 191/13 191/14 191/18 191/20 194/1 194/7 195/2 197/23 198/7 200/10 201/20 205/9 205/11 211/8 212/15 212/21 214/9 219/11 222/25 227/20 227/21 228/7 231/20 234/18 235/7 236/1 241/2

**docket** [1] 171/14

**doctrine** [5] 36/18 36/21 41/1 57/4 62/21

**document** [3] 172/2 234/10 241/21

**documented** [1] 50/17

**documents** [4] 16/6 46/9 48/6 157/3

**does** [59] 14/22 27/4 30/16 30/20 33/23 34/2 37/11 38/14 38/14 38/14 38/18 51/16 56/5 57/25 70/8 72/5 75/6 79/10 79/10 81/4 86/7 88/25 89/4 89/5 92/21 92/21 94/1 109/3 109/25 114/2 120/1 122/21 124/21 126/6 127/9 131/9 134/9 148/18 157/16 158/7 158/13 161/17 161/19 163/1 173/24 177/21 181/7 196/13 197/22 200/5 200/5 200/6 200/19 202/16 202/19 218/14 222/2 223/19 229/19

**doesn't** [60] 11/19 19/25 21/2 23/1 28/21 31/1 31/6 31/17 33/23 42/14 43/13 44/2 45/12 66/14 68/17 68/19 70/5 74/24 78/5 87/6 91/1 92/10 103/25 117/7 121/17 121/21 121/23 122/1 122/3 131/5 131/6 131/6 133/7 152/22 163/4 164/14 171/5 173/25 176/12 177/7 177/19 178/2 180/6 184/3 187/21 193/13 199/22 202/20 203/13 205/23 206/1 206/2 206/2 209/24 211/8 211/12 211/14 224/15 224/16 225/18

**dog** [1] 114/9

**doing** [22] 18/10 20/19 25/18 29/8 35/7 36/4 56/14 69/16 82/14 82/19 129/24 130/13 141/12 162/12 162/18 167/10 171/25 177/10 186/4 211/19 233/4 233/5

**DOLAN** [1] 4/5

**dollar** [5] 168/19 168/22 169/9 172/10

**dollars** [12] 47/14 88/14 93/22 95/5 103/14 105/25 167/16 167/17 167/22 172/21 179/10 197/25

**dominant** [4] 64/5 119/22 149/21 150/14

**dominate** [1] 94/24

**dominated** [2] 12/18 63/24

**don't** [147] 7/4 15/8 18/25 19/23 22/7 22/9 22/12 22/17 25/5 26/25 30/10 34/20 36/12 40/3 40/12 40/13 40/19 40/25 41/25 42/8 42/11 43/21 44/6 45/23 46/15 47/22 48/3 48/11 59/1 66/17 70/20 75/10 79/8 79/9 79/14 82/1 84/21 87/4 88/7 90/20 92/1 93/24 95/19 103/20 104/11 104/16 105/16 111/5 111/10 112/25 114/8 114/9 114/10 114/20 119/18 128/3 128/3 130/13 130/19 131/25 132/2 132/3 133/6 133/7 133/15 133/15 133/17 133/23 134/16 135/10 136/21 137/12 137/12 137/18 139/4 139/16 140/11 141/7 141/9 141/10 141/17 142/6 142/22 142/23 143/3 144/19 144/19 145/13 159/10 159/12 160/4 160/14 161/9 161/16 164/18 165/17 165/19 169/5 172/1 172/1 172/5 174/23 178/8 178/11 178/18 178/25 179/13 180/4 183/20 184/3 184/5 184/12 185/6 185/6 185/15 185/22 187/23 188/4 191/16 191/17 192/3 192/23 193/22 193/23 194/5 194/7 199/4 200/17 200/18 202/9 205/2 205/10 205/14 208/7 208/8 208/18 216/24 229/23 230/19 230/24 234/8 236/18 238/13 238/18 240/15 240/20 241/2

**don't -- I** [1] 40/19

**Donati** [1] 189/14

**done** [26] 8/14 39/7 39/8 39/10 42/15 46/4 86/19 112/16 131/12 131/23 135/21 137/19 154/17 169/16 180/3 197/7 198/24 199/7 213/16 224/11 228/13 228/14 233/2 235/6 235/7 235/16

**donors** [1] 107/23

**Donuts** [1] 166/19

**door** [2] 60/11 98/3

**doors** [3] 39/8 144/19 150/7

**dotting** [1] 135/14

**doubt** [7] 21/12 63/2 66/12 66/12 80/2 100/14 232/1

**DOWD** [2] 1/19 3/15

**down** [27] 8/17 38/3 55/24 68/4 81/11 81/15 81/16 94/13 109/20 112/8 116/17 116/19 123/7 127/23 135/4 142/3 142/11 144/2 174/13 175/2 176/1 176/3 176/25 212/18 214/18 232/13 233/13

**downloaded** [1] 201/19

**downstairs** [1] 46/8

**downward** [1] 110/3

**dozens** [2] 10/15 100/7

**Dr** [2] 87/5 93/1

**Dr.** [15] 19/13 19/13 23/4 50/18 55/3 55/7 56/16 87/5 92/24 93/8 94/1 94/3 162/6 162/17 162/20

**Dr. Frankel** [5] 19/13 19/13 23/4 87/5 93/8

**Dr. Sykes** [9] 55/3 55/7 56/16 92/24 94/1 94/3 162/6 162/17 162/20

**Dr. Sykes's** [1] 50/18

**draconian** [2] 22/24

**draft** [1] 127/5

**drafted** [3] 146/7 161/13 190/19

**dragged** [1] 153/24

**dragging** [1] 151/2

**dramatic** [2] 9/22 24/11

**dramatically** [1] 185/10

**Drang** [1] 189/4

**drawing** [1] 103/19

**drawn** [4] 67/18 71/18 89/14 124/4

**draws** [1] 75/1

# D

dreamed [1] 105/9
drive [5] 145/22 148/21 149/3 152/21 183/23
driving [4] 28/7 145/13 184/20 190/11
drop [6] 20/18 119/24 149/1 190/4 218/12 218/16
dropped [2] 150/4 183/2
dropping [1] 149/20
drowned [1] 105/18
dry [1] 136/20
dual [3] 13/12 121/1 215/18
dub [1] 147/4
due [41] 11/10 13/24 18/24 37/2 50/13 53/17 54/23 56/6 56/7 56/9 57/21 65/5 66/1 67/5 67/7 67/10 67/22 67/25 68/3 68/8 68/11 68/20 68/25 69/1 69/3 73/18 76/23 78/3 78/22 116/6 116/11 119/17 176/8 197/13 217/22 217/24 221/15 222/2 222/13 223/2 226/18
Duke [2] 84/4 90/20
Dukes [23] 29/16 51/22 52/2 54/17 56/8 68/10 72/8 73/12 84/12 88/17 88/19 88/22 89/22 89/22 89/23 90/7 90/15 90/16 91/14 92/21 113/14 114/14 218/3
dump [1] 21/8
duplicative [2] 141/22 211/6
Durbin [1] 28/5
during [2] 165/22 197/18
duty [3] 117/8 133/9 177/22
dynamic [2] 56/20 87/16

# E

e-mail [1] 187/25
e-mails [1] 139/8
each [12] 16/23 52/13 54/20 90/6 100/7 192/4 210/21 221/21 221/25 225/13 238/1
earlier [11] 24/2 53/18 71/16 99/9 105/13 139/24 160/16 170/11 192/6 209/2 226/25
early [6] 26/19 63/18 97/13 144/3 231/16 237/7
earn [1] 95/15
earnestly [1] 185/19
easiest [2] 117/9 156/6
easily [4] 39/21 70/6 134/10 190/22
East [2] 3/21 6/2
EASTERN [2] 1/1 67/17
easy [4] 114/10 114/11
eat [1] 123/11
echo [1] 136/25
economic [6] 24/9 55/4 67/1 79/16 162/9 162/14
economics [2] 40/25 66/25
economist [3] 116/2 116/3 116/3
educate [2] 79/25 80/2
educated [1] 108/2
education [2] 15/12 214/24
EDWARD [3] 5/2 5/3 170/1
effect [25] 28/21 29/4 30/6 31/14 44/1 72/16 72/19 79/10 80/15 80/24 87/8 87/18 89/25 99/24 121/22 148/19 152/16 161/3 161/8 162/5 162/9 189/5 223/7 224/9 224/10
effective [5] 44/21 49/5 110/3 132/1 145/12
effectively [2] 11/12 208/22
effects [12] 24/11 56/17 59/19 60/18 60/21 62/2 62/5 62/10 73/8 75/5 78/11 195/12
efficacy [1] 142/9
efficiency [1] 142/9
efficient [2] 142/8 198/22
efficiently [1] 142/4
effort [5] 46/20 95/18 209/20 213/22 216/17
efforts [4] 7/5 10/12 83/8 148/21
egregious [1] 217/15
eight [6] 9/15 16/5 153/12 165/21 180/21 237/17

Eileen [2] 8/12 8/13
either [16] 26/5 24/13 88/4 104/20 105/2 122/21 127/14 134/17 143/4 160/12 160/20 177/6 207/13 210/21 211/18 213/9
elected [3] 155/15 174/23 180/25
Electrode [2] 241/18
electronically [1] 201/18
Electronics [2] 158/4
elects [3] 170/15 188/9 219/1
elegant [1] 41/19
element [2] 118/9 164/21
elements [2] 118/9 164/3
Eleven [3] 21/1 23/6 23/6
eligible [1] 160/15
eliminate [4] 30/9 111/22 180/25 212/15
eliminated [1] 229/7
ELLIS [1] 4/13
eloquent [3] 33/10
eloquently [1] 187/9
else [14] 28/2 82/25 83/17 101/18 128/7 140/15 160/4 160/17 164/6 165/18 178/5 179/1 183/18 213/18
elsewhere [1] 120/20
elusive [1] 220/7
EMANUEL [1] 3/18
Embarcadero [1] 4/8
Embodied [1] 99/13
embraces [1] 133/19
emergencies [1] 67/11
emerging [11] 56/15 58/1 59/3 59/10 59/17 60/8 60/10 62/18 195/9 195/12 195/23
Emery [1] 4/2
Emmanuel [1] 66/10
emphasize [2] 122/14 191/13
emphasized [1] 20/13
employer [1] 194/21
employers [1] 160/11
empty [1] 65/5
EMV [1] 59/4
enact [2] 189/3 214/2
enacted [2] 214/2 216/19
encompassed [1] 173/22
end [18] 7/21 7/25 21/25 27/14 33/13 33/18 33/19 33/21 55/23 102/18 122/10 134/23 165/21 181/11 187/21 217/24 228/3 242/4
endeavor [1] 7/25
endeavoring [1] 210/22
ended [6] 9/9 9/14 13/7 186/12 202/24 218/20
endless [1] 99/22
energy [1] 213/22
enforce [3] 90/13 99/14 155/2
enforced [3] 86/4 104/22 217/4
enforcement [12] 155/1 155/9 156/16 156/22 157/1 157/22 158/16 159/1 159/4 159/14 181/2 209/4
enforcing [1] 84/3
engage [7] 53/13 88/3 88/4 109/16 148/23 199/20 207/14
engaged [6] 29/9 75/24 76/22 135/25 200/17 209/20
engages [1] 229/1
engender [1] 64/21
engendered [1] 139/7
engineering [1] 84/10
enhancing [1] 84/4
enjoin [1] 210/12
enjoined [6] 52/9 70/15 84/2 84/3 90/3 90/4
enormous [1] 232/23
enough [13] 11/19 27/12 31/2 31/17 80/9 90/17 90/18 90/18 119/2 121/3 149/8 185/15 203/23
enrolled [1] 140/5
enrollment [1] 139/17

ENRON [2] 236/4 236/5
ensure [5] 62/21 124/20 130/5 150/13 152/2
enter [1] 147/16
entered [2] 30/16 30/18
entering [1] 99/16
enterprise [2] 45/21 171/6
enters [1] 124/19
Entertainment [1] 227/3
entire [9] 41/23 45/13 54/4 58/8 58/15 92/7 101/3 173/23 194/2
entirely [2] 96/3 131/17
entirety [2] 54/1 59/6
entities [8] 140/10 153/16 154/6 162/8 162/11 162/18 163/23 221/4
entitled [4] 85/11 85/13 121/25 239/18
entity [3] 155/2 155/7 155/14
entity's [1] 155/13
Entrepreneurship [1] 194/15
environments [1] 21/15
envision [1] 143/6
equal [4] 164/10 206/6 206/12 215/15
equally [3] 28/22 30/15 52/16
equation [1] 164/10
equipment [1] 113/23
equitable [4] 71/6 88/25 90/17 221/8
equivalent [1] 209/3
error [5] 29/6 162/19 162/20 162/21 162/24
escape [1] 14/20
escapes [1] 40/10
especially [2] 24/8 127/18
ESQ [41] 1/14 1/17 1/17 1/20 1/23 1/23 1/24 2/3 2/4 2/7 2/10 2/12 2/13 2/15 2/18 2/21 2/24 3/4 3/4 3/7 3/10 3/13 3/14 3/14 3/17 3/20 3/22 4/4 4/7 4/9 4/12 4/15 4/17 4/20 4/23 5/3 5/6 5/8 5/11 5/14 5/16
ESQ.'s [1] 1/18
essence [4] 180/15 182/2 206/6 221/11
essentially [3] 95/24 146/11 158/14
established [2] 131/3 199/14
estimate [2] 138/20 138/22
estimated [1] 19/4
estoppel [2] 73/8 75/4
et [1] 117/2
Europe [1] 26/19
evaluating [1] 19/4
evaluation [1] 23/1
even [77] 7/11 15/15 18/25 21/3 22/23 25/14 29/3 31/25 41/4 44/5 48/2 49/5 53/23 57/14 58/2 58/12 59/11 60/4 62/17 67/20 70/11 72/4 72/17 72/18 76/10 76/11 78/25 80/8 81/21 82/16 82/22 90/10 98/15 100/15 108/16 110/14 114/16 118/4 122/2 132/9 134/7 141/23 142/12 148/8 148/11 149/13 151/5 152/4 152/23 156/20 159/8 165/19 165/20 165/22 172/12 173/13 176/22 176/22 176/23 185/25 188/19 189/4 190/6 194/24 197/12 199/19 206/10 210/1 210/13 226/9 230/9 235/3 236/23 237/19 238/20 239/15 239/15
evenly [1] 240/17
event [4] 74/23 125/16 178/13 184/15
ever [12] 9/20 33/19 72/22 75/7 75/11 94/20 105/9 167/19 212/6 213/16 227/22 233/3
every [31] 11/13 28/21 30/22 30/22 36/10 38/9 40/2 40/20 41/3 45/2 45/4 47/9 47/10 74/8 77/16 85/18 91/2 94/20 97/1 130/17 152/8 166/3 186/1 206/7 216/11 217/9 217/14 217/14 222/4 237/13 240/18
everybody [5] 48/19 83/17 165/18 192/18 225/4
Everybody's [1] 196/17
everyone [14] 6/11 7/20 7/24 48/18 52/16 72/3 101/17 101/18 102/20 128/3 128/7 183/17 198/18 227/25
everything [12] 7/20 7/23 29/18 82/25 85/5

# E

everything... [7] 104/16 122/1 124/19 146/1
164/6 203/2 213/17
everything's [1] 116/25
evidence [6] 15/24 97/22 131/10 180/5 224/2
224/5
evolution [1] 184/19
evolving [1] 13/15
exact [3] 40/16 158/17 158/24
exacting [1] 52/15
exactly [20] 21/2 28/18 30/1 30/4 35/2 37/5
50/20 87/6 88/21 89/22 98/8 113/20 138/14
145/21 152/15 159/1 164/20 181/14 216/25
240/17
examine [2] 54/12 65/3
examining [2] 48/6 57/8
example [22] 23/6 32/15 36/2 36/10 39/13
42/9 55/12 95/2 99/25 147/8 147/12 157/14
169/11 181/16 183/12 195/17 201/16 212/20
231/5 239/22 239/23 240/17
examples [4] 90/9 119/13 233/9 233/20
exceed [1] 188/13
exceeds [1] 101/4
Excellent [1] 188/4
except [1] 81/7
exception [3] 149/16 149/17 170/19
excessive [7] 108/14 37/1 37/1 37/8 37/16 37/17
178/22 179/8 179/23
excessively [1] 109/17
exchange [1] 93/22
exchanges [4] 164/24 164/25 165/2 165/14
exclude [2] 100/23 122/23
excluded [1] 203/4
exclusion [1] 122/7
exclusively [1] 153/16
excuse [4] 12/2 12/5 155/11 241/24
executive [2] 96/13 180/16
executives [4] 46/1 47/2 48/5 112/11
exercise [1] 66/3
exercised [1] 181/8
exert [1] 77/24
exhaustive [1] 231/2
exhibit [1] 234/12
exigencies [1] 67/13
exist [8] 74/9 74/24 98/10 100/9 103/2 106/7
121/8 130/9
existed [3] 41/11 70/10 74/11
existence [3] 9/22 119/1 201/21
existing [8] 41/11 56/18 69/23 99/14 99/18
184/22 223/11 225/7
exists [4] 74/10 103/10 122/18 149/17
expand [1] 178/23
expanded [2] 14/8 223/17
expansive [1] 90/18
expansiveness [1] 122/13
expect [2] 167/25 169/4
expectations [4] 18/20 21/21 21/24 22/3
expected [1] 41/6
expended [2] 230/20 233/1
expense [9] 55/20 120/6 146/16 171/24 172/3
193/12 193/14 235/12 239/18
expenses [8] 8/24 171/10 193/18 235/8
235/10 235/15 235/16 240/13
expensive [6] 152/2 205/21 205/24 207/7
207/8 207/9
expensive card [1] 207/9
experience [6] 15/13 19/3 88/2 102/4 232/7
232/7
experienced [2] 10/6 239/2
experimental [1] 89/9
expert [2] 16/7 222/9
expert's [1] 18/1
expertise [3] 48/5 101/21 162/13

experts [1] 47/3
explain [7] 11/11 87/15 96/4 156/18 173/25
191/6 199/20
explained [2] 124/8 125/14 214/19 222/5
explains [2] 89/22 89/23
explanation [1] 159/2
explicit [1] 130/19
explicitly [4] 56/16 58/2 72/15 179/20
exploring [2] 22/4 22/15
exposes [1] 215/21
expound [1] 18/22
express [48] 14/9 16/14 23/11 43/23 46/6
46/7 46/14 47/1 47/1 47/21 49/2 49/5 49/6
52/18 52/24 53/24 77/19 115/2 117/6 117/16
118/23 118/25 119/1 119/5 119/15 119/22
119/24 119/25 121/2 121/8 121/11 121/14
121/20 122/2 122/5 122/18 122/20 131/24
145/8 150/3 176/13 196/17 196/20 205/11
207/5 207/6 207/9 213/20
Express' [1] 207/6
Express's [4] 46/22 48/5 119/9 122/15
expressed [4] 37/23 40/24 201/2 201/2
expresses [1] 229/3
expressing [1] 224/1
expressly [9] 52/15 56/22 62/6 72/14 73/2
73/7 73/9 122/11 155/6
extend [4] 58/7 58/21 58/24 195/22
extent [21] 33/14 37/1 37/1 37/8 37/16 37/17
38/1 60/16 117/4 125/20 127/4 127/10 142/25
144/8 157/19 157/20 166/5 191/22 206/6
219/21 240/8
External [1] 107/12
extinguishes [1] 51/17
extinguishing [1] 59/22
extract [1] 91/12
extraordinarily [5] 17/16 17/23 25/1 183/4
184/14
extreme [1] 59/11
extremely [4] 85/16 88/2 108/22 183/3
eve [1] 142/9

# F

F-A-N-F [1] 116/23
F-t-e-m-a [1] 144/7
F.3d [1] 218/5
F.Supp [2] 72/15 171/22
face [5] 11/13 19/19 30/21 49/5 169/2 202/18
faced [5] 15/11 15/17 16/19 17/7 23/8
facially [1] 147/7
facilitate [1] 109/5
facilities [1] 201/14
fact [58] 8/17 13/11 15/16 18/23 18/24 19/23
20/13 21/16 23/16 24/15 24/18 25/8 25/13
27/21 31/18 42/15 58/10 59/1 60/6 60/9 63/1
68/17 68/22 68/23 78/3 89/13 97/3 97/19 98/7
99/20 101/2 108/6 112/12 121/11 132/21
134/12 134/23 135/24 136/1 145/23 153/21
179/9 181/10 183/18 184/3 186/5 190/7
199/15 203/22 204/18 205/9 207/16 212/19
214/4 220/8 222/16 233/17 235/18
fact-dependent [1] 220/8
factor [8] 11/5 14/15 32/22 40/8 93/18
110/17 232/10 233/1
factors [6] 10/23 10/23 24/14 230/11 230/15
230/18
facts [6] 60/25 69/21 89/20 217/2 219/5
226/14
factual [27] 31/16 32/16 32/18 36/20 36/20
37/13 37/22 37/23 38/15 39/22 40/11 41/2
57/3 62/20 199/13 199/21 219/23 220/2 220/6
220/16 220/16 224/8 224/11 225/20 226/4
226/8 226/12
factual -- the [1] 37/22
fail [1] 215/14

failed [2] 32/14 154/16
fails [2] 100/23 125/23
failure [2] 105/13 216/11
fair [19] 7/24 16/17 31/17 67/6 80/9 91/1
93/24 101/22 103/21 106/1 106/10 161/14
187/21 191/15 199/9 222/12 227/5 228/6
240/20
fairly [6] 58/16 59/22 118/12 208/7 209/18
223/2
fairness [1] 1/8 6/10 9/7 65/3 103/5 158/8
faith [5] 14/13 68/21 185/19 212/12 212/13
faiths [1] 8/15
fall [4] 20/11 38/15 70/6 103/23
falls [2] 52/14 129/23
false [4] 62/25 136/14 140/22 189/23
familiar [2] 92/13 201/16
fancy [1] 11/23
FANF [1] 116/23
far [16] 9/19 11/19 31/2 52/14 58/22 58/24
97/14 98/8 102/25 110/22 112/4 122/17
129/25 138/22 206/3 237/23
fares [1] 242/2
FARR [1] 2/14
farther [1] 160/23
fashion [3] 24/21 124/21 228/3
fashioned [1] 74/25
fast [1] 68/5
fatal [2] 89/14 89/15
fault [1] 82/2
faulted [1] 112/24
favor [8] 55/24 110/24 150/6 202/20 204/10
204/15 231/12 231/12
favorable [1] 135/6
favored [3] 152/7 152/11 152/15
favorite [1] 212/9
Fax [1] 6/3
FCRR [1] 6/1
fear [4] 46/1 47/3 111/25 140/15
feared [1] 67/14
feasible [1] 79/23
feature [3] 28/11 30/24 68/11
features [4] 11/13 15/25 67/19 82/18
February [1] 97/20
federal [5] 118/13 158/19 210/2 217/15
224/1
Federation [6] 24/3 42/10 65/10 101/15
106/19 106/21
fee [37] 1/2 6/14 116/23 132/21 132/22 135/8
166/24 166/25 167/13 167/23 167/24 168/1
168/5 168/7 168/8 168/10 168/18 169/3 169/4
169/7 169/21 191/3 195/4 229/17 232/9
232/10 232/13 232/19 232/19 232/21 233/21
234/3 234/3 236/5 236/14 236/20 236/21
feel [14] 7/3 8/2 68/17 68/22 139/10 147/5
187/23 193/5 195/2 195/8 200/1 212/4 228/6
241/11
feeling [1] 185/24
feels [1] 68/19
fees [59] 8/23 13/16 13/21 17/11 17/15 45/3
45/3 45/5 47/18 50/3 50/5 70/17 71/14 74/14
96/23 96/25 97/5 97/7 108/19 108/19 109/7
109/8 109/12 109/14 109/17 109/19 110/4
111/1 134/11 134/18 152/1 152/1 160/19
160/19 160/21 164/7 164/13 165/24 166/22
167/7 169/17 170/5 171/8 171/9 171/10
177/17 178/20 181/1 193/17 193/21 194/5
195/14 198/25 212/5 212/11 220/23 221/1
230/6 230/6
FEINBERG [4] 4/20 5/16 159/22 163/22
fella [1] 21/1
felt [2] 105/20 204/18
fete [1] 147/5
few [9] 29/4 153/10 178/21 193/8 198/23
198/24 201/4 218/20 236/1

# F

fever [3] 163 32/13 156/4
fiduciary [2] 66/4 117/8
field [5] 49/3 52/20 181/22 190/5 205/23
Fifteen [1] 25/23
Fifteenth [2] 4/19 5/15
fifth [1] 232/10
fifth factor [1] 232/10
fight [4] 101/22 114/9 159/10 192/14
file [6] 9/11 74/12 130/1 130/20 134/15 222/9
filed [23] 9/10 9/13 9/14 10/10 12/24 27/9
  28/4 86/19 96/17 96/18 124/8 124/16 140/4
  141/24 153/18 169/2 169/5 174/25 187/6
  213/6 214/22 215/12 231/8
files [1] 47/21
filing [2] 135/11 140/6
fill [1] 24/23
fill-in [1] 24/23
film [1] 24/23
final [29] 6/13 8/22 9/7 9/16 10/23 36/17
  36/23 60/13 66/5 124/25 125/19 126/3 126/11
  126/25 127/15 128/1 130/15 147/6 152/18
  154/25 155/6 159/5 169/8 189/10 191/6
  211/17 234/3 234/3 242/9
finality [2] 55/24 56/9
finally [6] 14/10 100/10 127/2 152/6 232/20
  236/25
finance [2] 108/1 108/3
financial [3] 94/2 108/5 232/23
find [6] 13/2 104/10 126/17 178/17 197/17
  223/25
finds [1] 126/17
fine [7] 9/3 34/18 82/8 114/21 151/20 160/4
  188/12
fines [5] 153/14 154/13 156/6 159/6 195/14
finish [1] 135/2
firm [7] 5/7 120/12 171/19 232/5 232/6 234/2
  235/12
firmly [1] 189/20
firms [6] 216/17 232/1 232/3 232/6 233/10
  233/13
first [70] 3/6 9/9 9/10 9/13 9/19 11/1 14/14
  18/7 18/10 20/24 21/13 21/17 22/17 28/3
  41/23 50/25 51/10 58/15 60/21 78/21 82/11
  88/10 98/10 99/8 102/20 103/24 113/6 113/9
  113/9 113/18 113/22 113/23 114/3 114/5
  114/5 116/6 117/5 117/10 117/19 117/19
  121/15 121/20 121/23 126/19 132/20 133/23
  136/3 141/3 142/17 142/21 145/2 145/7 148/7
  154/10 165/5 165/6 170/4 170/9 189/25
  190/21 191/5 198/23 208/13 212/25 218/2
  220/9 230/12 232/25 234/21 242/1
First Data [2] 116/6 117/5
First Data's [1] 117/10
fish [1] 238/23
fit [2] 144/15 144/20
fits [1] 168/20
five [18] 6/23 21/25 22/2 26/7 28/2 28/10
  41/5 41/5 44/14 46/8 48/10 48/13 106/11
  123/24 158/5 179/21 214/22 214/22
five-minute [1] 48/13
fix [6] 42/14 96/6 109/14 112/22 143/10
  228/20
fixed [6] 45/8 45/8 45/9 50/5 116/23 220/23
fixing [3] 46/13 109/11 109/16
FL [1] 2/9
flashing [1] 38/22
flavor [1] 191/2
flee [1] 169/1
flexibility [2] 90/20 90/21
flexible [1] 90/18
FLEXNER [2] 4/10 117/16

flip [1] 43/25
flips [1] 89/2
FLOM [1] 2/16
floor [6] 3/12 3/19 4/3 4/6 4/11 5/10
flows [2] 145/19 146/1
fly [1] 123/16
fob [2] 201/16 201/17
fobs [2] 39/8 58/12
focus [6] 11/5 24/15 54/10 108/2 160/1
  189/21
focused [1] 29/8
focuses [1] 114/23
FOERSTER [1] 2/20
folks [6] 7/6 102/1 123/9 123/11 144/8
  224/19
follow [5] 76/1 159/12 188/21 191/11 215/5
followed [1] 223/14
following [7] 51/11 69/24 112/15 126/14
  154/23 196/16 228/20
follows [3] 69/13 75/16 108/5
food [2] 8/4 194/18
Foods [1] 180/23
footnote [1] 132/24
force [4] 10/7 89/7 110/22 158/15
forced [5] 50/3 51/4 85/15 85/16 110/11
forces [3] 45/6 79/18 142/13
forcibly [2] 148/20 152/20
forcing [4] 51/15 54/22 57/22 158/19
forecast [1] 55/4
foreclosed [1] 217/12
foreign [5] 100/12 100/15 100/23 120/16
  121/1
foremost [1] 47/3
foresee [1] 181/24
foreseeable [2] 37/19 41/14
foresworn [1] 72/15
forever [2] 38/10 59/6
forget [1] 142/11
forgot [2] 20/25 129/12
form [9] 18/15 19/19 23/21 55/21 88/25
  109/20 134/10 140/18 181/17
forms [6] 24/23 110/24 111/9 111/10 133/12
  202/15
forth [7] 51/22 125/7 131/18 145/5 219/25
  220/19 240/9
forthright [1] 71/25
fortunately [1] 32/7
Forty [2] 153/12 158/5
Forty-eight [1] 153/12
Forty-five [1] 158/5
forum [3] 120/15 120/19 120/20
forward [14] 26/24 46/7 55/12 57/20 57/23
  70/16 106/5 110/7 117/3 130/19 184/11 188/3
  200/21 238/14
forward-looking [3] 57/20 57/23 200/21
fostered [1] 189/1
found [7] 42/17 42/18 52/1 152/12 152/14
  213/8 224/1
fountains [1] 237/10
four [11] 27/17 4/8 10/13 55/2 59/25 124/24
  125/3 179/21 192/4 215/10 236/15
fourth [1] 118/9
FOX [1] 5/12
fraction [2] 17/11 24/19
framed [1] 201/23
framework [5] 33/24 40/20 199/14 199/15
  199/22
franchise [1] 182/20
Francisco [2] 4/9 5/19
Frankel [6] 19/3 19/13 23/4 54/25 87/5 93/8
Franklin [1] 241/17
frankly [6] 15/22 27/19 85/19 136/11 208/8
  232/2
free [8] 18/21 45/20 45/23 64/24 80/3 212/13

215/18 217/8
FREEDMAN [1] 3/5
freedom [6] 14/6 14/8 84/6 102/20 106/6
  181/4
frequently [1] 191/5
Friday [1] 143/3
FRIEDMAN [2] 2/5 2/7
friend [2] 119/17 193/25
front [6] 38/22 42/21 92/2 98/22 177/14
  229/20
frustrate [1] 80/15
FTEMA [3] 5/22 144/7 227/3
Ftema Raysor [1] 227/3
fuel [1] 193/20
full [6] 33/14 37/8 140/8 157/19 157/20
  169/18
fully [1] 16/9
function [1] 234/7
functioned [1] 99/1
fund [14] 89/21 89/23 134/18 134/22 141/14
  165/20 167/11 167/12 167/14 167/18 168/13
  171/21 179/11 232/20
fundamental [6] 29/6 41/24 42/1 68/11
  185/11 186/9
fundamentally [2] 102/19 132/13
funds [1] 164/2
FURMAN [3] 5/4 5/6 177/11
further [6] 60/25 97/24 99/5 140/13 156/21
  189/3 223/25 229/15
future [111] 11/16 30/7 30/9 31/12 31/14
  32/4 32/15 32/23 33/25 33/25 34/6 34/10
  34/21 34/25 35/5 35/15 36/11 37/12 40/3 51/1
  51/8 53/20 56/14 56/17 56/25 57/3 58/13
  59/19 60/10 60/10 60/15 60/18 60/21 62/5
  62/6 62/21 62/25 63/12 63/16 64/4 69/20
  70/11 71/1 72/2 72/6 72/6 72/16 72/19 72/23
  73/3 73/3 74/8 74/19 75/7 75/17 75/20 75/21
  76/21 80/23 82/15 82/24 83/3 84/20 84/23
  91/23 92/8 93/22 98/1 98/4 99/8 100/20 101/5
  102/11 105/10 110/8 110/14 111/8 156/8
  156/8 156/22 166/6 166/6 166/9 169/6 173/16
  173/22 173/24 174/2 174/8 176/21 176/22
  176/25 178/4 178/6 178/19 181/11 182/10
  199/24 201/24 202/3 202/10 204/20 216/23
  217/3 217/20 221/9 221/20 223/4 223/12
  228/17 235/13

# G

gain [1] 110/25
gal [1] 228/5
GALLAGHER [1] 2/14
GALLO [31] 2/12 31/13 32/8 33/2 36/1 44/9
  55/25 58/5 69/17 70/18 71/11 71/14 71/25
  72/10 74/10 76/10 85/19 92/6 94/16 95/25
  98/9 112/22 122/9 157/19 181/10 191/25
  199/3 207/22 219/20 229/13 229/13
Gallo's [1] 98/7
garages [1] 237/8
Garden [3] 35/10 35/11 200/6
Garland [1] 5/7
Garner [5] 144/6 191/23 194/8 194/14 196/3
GARRISON [1] 2/11
GARY [3] 2/7 2/13 3/14
gas [1] 193/1
gasoline [2] 193/16 193/17
Gate [1] 5/18
Gateway [1] 227/8
gauged [1] 87/20
gave [3] 6/17 6/17 7/6
Gay [3] 3/21 4/16 5/10
GBS [1] 188/7
GELLER [4] 1/19 2/1 3/15 171/19
general [24] 5/9 5/18 19/24 25/10 29/5 29/10
  29/12 123/20 155/8 157/9 157/24 158/10

Case 1:05-md-01720-MKB-JO Document 7737 Filed 11/10/19 Page 258 of 281 PageID #: 471703

**G**

general... [12] 180/17 188/16 188/19 188/20
189/14 208/4 213/2 213/4 217/14 224/17
224/18 240/19
generated [3] 141/20 182/21 214/5
generic [1] 137/4
generous [1] 241/16
GENTILE [6] 5/11 153/8 155/21 156/1
157/7 208/14
gentleman [1] 227/15
Georgia [2] 131/20 171/21
get [70] 8/18 11/19 13/23 21/3 21/25 24/9
35/7 35/17 36/4 42/3 42/7 44/5 46/17 53/4
67/8 82/3 84/11 103/20 105/18 117/9 117/20
119/12 121/24 135/7 138/10 140/8 147/6
149/16 152/2 152/4 153/3 154/17 161/23
163/8 164/2 164/25 165/11 165/18 165/19
166/14 170/23 170/25 172/1 172/1 172/5
172/19 174/19 174/20 179/10 185/20 185/23
187/18 198/17 199/7 202/1 202/1 210/3
211/11 213/21 214/11 219/6 224/7 227/25
238/13 238/22 238/22 239/1 239/18 240/21
241/23
gets [4] 21/6 85/10 192/13 201/23
getting [15] 15/22 46/16 46/21 70/25 82/4
87/20 124/11 134/23 137/14 139/9 179/23
206/12 218/7 236/19 239/11
gigantic [2] 66/15 70/25
Girl [1] 227/3
give [29] 21/11 22/7 31/21 32/9 34/24 40/1
40/13 85/16 95/2 95/10 117/2 117/2 138/13
147/8 156/1 158/15 165/17 168/21 169/22
172/13 176/20 176/23 189/18 195/10 199/16
200/21 218/2 233/9 238/20
given [34] 11/22 14/10 15/12 16/21 25/11
33/11 41/20 45/15 51/23 69/24 73/2 94/7
105/11 117/24 118/21 119/21 122/21 145/24
151/2 174/22 174/24 181/16 184/1 184/3
184/4 184/7 200/18 202/6 202/18 203/11
220/14 222/7 222/8 222/10
gives [9] 20/21 40/22 42/6 87/1 87/1 87/2
117/22 156/7 220/1
giving [7] 7/4 64/5 72/23 81/20 93/22 97/25
180/8
glass [1] 80/23
Glasses [2] 39/15 39/18
GLEESON [2] 1/8 67/17
GLIST [1] 3/14
Global [10] 129/11 129/12 130/10 130/25
134/9 136/2 136/18 138/3 138/4 142/18
Global Payments [6] 130/25 134/9 136/2
136/18 138/4 142/18
go [56] 7/17 8/19 10/17 11/19 21/7 24/13
26/9 29/18 31/1 33/8 33/11 36/9 38/17 39/13
41/14 41/16 43/11 48/13 68/15 72/2 77/9 88/8
96/5 102/22 112/23 113/18 122/17 123/5
123/7 126/21 136/22 145/10 153/25 154/1
163/23 182/4 193/17 193/18 195/6 197/21
198/9 198/13 198/22 198/23 205/16 214/10
215/17 216/24 216/24 217/8 217/16 219/10
221/16 226/2 235/15 237/6
goal [3] 33/18 45/1 181/11
God [2] 28/5 112/10
goes [10] 24/3 92/15 116/10 154/22 156/20
157/19 157/20 170/17 193/17 202/24
going [171] 7/10 7/15 7/17 7/19 7/23 8/4 8/6
8/12 8/16 10/25 16/5 18/6 18/19 18/21 19/2
20/3 20/23 21/7 21/19 21/20 21/25 22/2 22/7
22/10 22/16 22/22 23/10 24/8 24/13 25/4
27/16 28/5 30/24 31/1 31/13 32/8 32/23 33/8
33/19 33/21 35/16 36/14 38/9 38/13 38/13
40/4 40/5 40/6 40/7 40/8 40/9 41/3 41/5 41/16
43/24 44/3 44/4 44/5 51/9 65/8 68/4 70/16

**H**

71/6 71/12 80/7 80/23 82/8 83/10 85/24 86/14
87/21 88/5 89/11 95/4 103/17 106/5 106/17
106/18 106/25 107/6 111/1 117/3 119/10
121/11 123/7 125/9 127/19 127/22 130/1
130/6 130/15 130/18 130/20 130/21 130/21
133/3 133/22 134/22 135/19 135/22 136/1
136/22 137/17 139/24 140/16 140/20 141/10
141/21 143/7 143/10 144/3 144/4 145/1 145/2
145/10 145/12 145/15 145/21 145/21 146/1
146/8 148/14 149/1 151/20 153/9 153/10
153/11 154/1 154/19 161/4 165/5 165/13
165/16 171/25 173/8 174/20 178/19 178/25
179/14 179/23 193/15 194/6 194/6 194/6
197/21 198/7 198/17 199/7 201/5 204/14
204/19 204/20 204/21 204/22 207/18 207/25
212/21 215/1 217/7 217/16 218/15 218/16
219/6 227/14 227/24 228/6 229/16 229/21
230/18 235/12 238/14
gold [1] 27/14
GOLDBERG [2] 3/5 3/7
Goldberg's [1] 232/5
Goldberger [8] 167/3 167/4 167/6 230/10
230/10 230/12 230/15 235/5
Golden [1] 5/18
gone [3] 9/11 172/24 198/13
Gooch [1] 218/4
good [65] 9/4 14/12 17/4 24/20 33/3 39/1
42/1 44/10 44/11 48/3 49/16 64/9 81/13
83/19 83/22 96/11 96/12 101/12 101/13
102/25 106/13 106/14 107/10 107/11 113/4
117/14 123/19 123/21 129/6 129/21 137/15
142/15 143/15 144/23 153/7 155/18 159/18
159/19 165/22 173/1 173/2 177/9 180/13
180/14 182/17 185/19 187/1 187/3 187/7
188/4 188/5 190/4 194/10 194/11 196/7 199/1
203/5 207/23 211/25 212/1 212/13 219/14
242/12 242/16
goods [1] 218/25
Google [31] 39/15 39/18 59/12 63/21
Google Glasses [1] 39/15
Gorenstein [1] 220/5
got [27] 18/5 18/5 18/24 33/17 37/6 76/8 85/6
89/20 89/20 89/21 94/16 123/8 127/1 135/18
137/20 141/1 145/15 146/14 156/17 166/15
174/5 185/20 186/23 206/7 211/11 227/12
241/18
gotten [7] 46/9 65/21 124/10 137/11 137/25
138/14 146/7
gouging [1] 43/17
governance [2] 13/9 13/12
governed [3] 39/10 131/20 239/21
government [6] 13/11 14/8 23/11 67/15
193/19 193/23
governmental [9] 153/16 154/6 155/2 155/2
155/7 155/13 162/8 162/11 162/18
grabs [2] 86/11 86/17
grandfather [1] 226/3
grant [3] 114/7 140/21 180/7
grant our [1] 114/7
granted [1] 116/9
granting [1] 117/10
Graphite [1] 241/17
grateful [1] 7/4
gravest [1] 67/11
gray [2] 39/8 129/15
great [11] 8/14 20/20 24/12 33/5 44/24 66/3
87/12 145/11 174/7 179/12 214/7
greater [7] 65/15 87/17 148/4 162/13 162/14
163/9 163/11
greatest [1] 67/13
Green [2] 10/18 64/7
GREENE [1] 2/18
Grindal [2] 216/10 216/16
Grinnell [5] 10/22 11/1 11/4 14/15 24/14

grips [3] 41/25 42/8 44/6
grocers [3] 180/17 180/19 181/23
grocery [1] 181/19
Gross [1] 103/20
grossly [1] 99/3
ground [1] 145/10
grounded [1] 32/2
grounds [3] 16/17 29/5 122/25
group [11] 2/5 24/1 49/19 53/12 55/19 89/25
128/6 129/2 129/5 142/19 192/4
groups [12] 9/18 14/11 14/13 24/8 24/10
65/10 107/4 107/18 110/24 160/11 208/22
214/22
groups favor [1] 110/24
grow [1] 22/10
growing [1] 182/1
guaranteed [1] 50/14
guarantees [1] 67/14
guess [4] 19/18 168/9 204/7 227/16
guides [2] 99/25 146/12
Guild [2] 59/12 222/19
Guild-Google [1] 59/12
guilty [2] 7/3 188/12
Gun [1] 166/20
guy [1] 79/16
guys [4] 92/3 104/22 133/13 204/12

**H**

hac [1] 131/9
had [57] 10/1 10/3 10/15 12/7 12/8 12/12
12/20 13/11 14/25 15/21 16/7 16/13 16/22
17/17 27/6 31/25 32/12 32/12 32/13 33/9 46/1
52/4 64/23 65/25 71/16 73/9 77/1 77/13 83/9
97/6 97/20 105/20 120/12 121/1 124/3 136/4
136/8 146/4 146/7 146/7 146/10 169/4 171/20
185/18 188/16 188/19 190/10 197/14 198/9
218/3 222/13 223/8 226/25 227/6 235/7 237/6
242/12
hadn't [1] 134/24
half [3] 138/20 139/11 172/18
half-a-million [1] 172/18
Hampshire [1] 183/14
hand [3] 28/24 29/21 40/16
handcuffs [1] 182/9
handled [1] 33/16
handling [1] 197/25
hands [1] 157/23
Handschu [1] 72/13
hang [1] 85/24
happen [10] 19/8 19/10 28/6 80/23 116/19
119/8 139/24 145/15 239/24 239/24
happened [11] 18/23 56/24 74/16 98/16
118/21 146/12 162/20 162/21 212/12 214/16
227/22
happening [3] 13/25 72/9 76/9
happens [8] 56/24 74/7 80/24 81/13 88/1
114/8 163/12 179/15
happy [4] 48/9 192/18 204/7 211/16
hard [3] 40/1 57/14 94/25
hardly [3] 32/1 167/1 168/4
harm [8] 11/16 30/9 141/18 142/1 147/1
151/12 152/19 221/10
harmed [5] 109/4 134/20 146/4 146/17
163/25
harms [1] 151/15 152/16
HARPER [1] 3/8
Harrington [1] 129/15 129/19
harsh [1] 177/3
has [147] 9/11 9/17 9/22 10/21 11/13 14/19
15/13 16/20 18/19 19/3 19/24 24/12 24/24
29/3 29/9 29/17 29/18 30/2 32/4 32/27 33/16
39/24 42/15 42/16 42/17 42/19 42/22 43/20
43/22 44/1 45/7 45/11 45/21 47/10 47/12
47/20 55/12 56/24 63/25 64/1 66/25 67/18

Case 1:05-md-01720-MKB-JO Document 9024 Filed 11/20/18 Page #: 1104

has... [105] 68/21 68/24 69/3 71/16 71/22
72/22 74/16 75/11 75/18 76/1 78/3 78/5 81/5
81/17 82/25 84/12 84/12 88/2 89/16 90/20
90/21 92/15 92/19 96/17 96/21 97/6 97/23
97/24 99/1 101/1 101/21 108/23 114/2 114/14
116/3 116/3 117/8 117/21 118/7 119/22 122/9
122/15 132/10 134/2 134/12 136/13 142/22
145/24 146/12 147/10 148/2 148/9 148/10
148/19 150/6 150/16 150/18 152/12 157/9
157/10 158/10 162/21 163/18 165/4 167/4
168/2 169/9 170/10 171/9 172/6 182/2 182/3
196/23 199/10 200/17 201/1 201/21 205/25
206/3 206/5 206/11 206/12 206/13 208/14
211/14 212/9 217/9 222/1 222/15 222/16
223/2 223/2 223/21 225/3 225/10 225/17
232/22 233/4 233/7 234/21 237/4 237/11
237/13 240/18 240/18
hash [1] 137/13
hasn't [3] 18/23 137/21 137/23
hate [2] 144/14 224/25
Hausman [4] 22/20 23/17 43/12 218/10
Hausman's [1] 22/23
have [444]
haven't [12] 24/6 105/19 130/2 132/9 132/17
133/17 133/18 137/3 178/5 186/4 214/1 230/8
having [10] 28/18 46/21 48/19 74/13 112/12
133/11 133/12 157/2 160/24 238/21
he [80] 14/22 14/24 15/1 15/5 15/7 15/16
15/16 15/18 15/21 15/23 15/24 19/7 19/11
19/12 19/14 21/1 21/2 22/24 23/1 23/3 23/12
42/20 42/22 42/25 43/2 46/24 56/17 58/5
70/18 70/18 71/11 71/15 72/12 72/13 78/10
78/14 78/14 78/15 79/19 85/19 85/20 87/6
87/7 87/8 93/1 93/2 93/3 93/4 93/5 93/9 93/9
93/10 93/14 93/14 94/15 94/19 114/16 114/23
121/5 156/3 162/8 162/11 177/17 177/19
177/21 178/1 178/23 180/7 181/14 212/25
213/1 216/4 216/5 216/22 217/12 217/22
220/5 220/6 231/9 231/10
he's [6] 42/23 42/24 77/25 78/15 78/18
106/17
head [1] 89/2
headed [1] 214/17
heading [1] 184/23
health [10] 151/10 159/24 160/2 160/13
160/22 161/19 162/3 162/21 162/25 171/21
healthcare [11] 160/12 160/20 163/7 164/1
164/5 164/12 164/15 164/17 164/20 164/22
164/24
hear [14] 7/20 7/24 8/18 9/1 107/8 133/21
140/14 144/3 144/5 179/1 192/18 198/12
199/20 219/4
heard [45] 7/15 7/24 8/1 8/2 20/18 33/6
55/24 66/14 66/22 69/17 91/7 92/5 92/12
107/1 107/17 113/13 115/2 116/20 119/23
130/18 138/17 139/11 144/25 145/4 145/7
145/11 145/14 145/17 145/23 158/5 161/18
177/8 178/3 178/3 178/5 184/17 185/8 194/2
195/7 203/25 204/5 206/2 230/4 230/8 231/8
hearing [1] 1/8 6/11 8/3 9/7 48/19 65/8 70/23
143/6 199/19
hearings [1] 65/3
heart [1] 79/11
Heartland [8] 129/17 130/9 132/7 137/1
137/2 137/9 137/21 142/17
Heartland's [1] 137/5
heaven's [1] 42/6
heavily [2] 120/13 120/25
heed [1] 106/4
heightened [6] 54/9 92/13 92/14 92/16
117/24 118/4
held [4] 13/7 52/6 54/15 121/3

Hello [4] 33/2 182/16 182/17 192/9
help [5] 10/18 103/13 116/2 119/14 227/7
helped [2] 101/22 117/1
helpful [1] 182/25
helps [1] 212/18
HENRY [2] 5/21 96/13
her [4] 8/13 198/12 227/1 230/17
here [131] 7/2 7/8 7/16 8/5 8/6 8/7 9/6 9/7
9/14 9/15 12/23 30/1 32/3 34/3 34/4 40/8 43/4
43/10 44/24 46/5 46/23 47/10 47/13 47/17
47/22 49/17 51/24 67/18 70/13 71/8 72/9 74/4
74/16 74/21 76/10 76/10 77/7 77/8 80/9 80/16
80/22 82/11 85/14 85/19 90/7 90/22 91/10
95/16 99/9 103/3 103/8 103/14 104/11 104/15
105/17 105/19 107/20 108/4 109/2 117/18
118/20 118/21 119/3 119/4 119/7 119/14
120/24 121/2 121/7 121/10 121/19 122/19
125/11 135/15 141/6 141/18 142/2 144/2
144/18 144/20 146/12 150/1 151/14 152/4
152/15 153/12 155/21 156/21 157/21 158/24
159/24 162/20 164/23 166/7 166/8 166/22
168/5 168/9 168/25 169/18 169/23 172/6
179/24 185/23 186/2 189/18 191/22 193/16
198/1 199/7 204/16 205/16 208/13 212/4
212/5 212/7 213/12 213/21 214/25 216/5
216/6 218/2 219/8 219/15 228/1 228/5 231/7
233/12 240/18 241/3 241/11
here's [3] 36/7 198/7 201/16
Hey [1] 163/14
Hi [2] 159/19 192/13
hidden [2] 108/17 109/17
high [10] 45/3 45/5 109/17 149/8 165/13
170/5 212/5 213/14 231/6 231/22
higher [11] 13/23 109/9 109/20 109/21
109/23 116/11 150/15 150/16 168/5 169/4
203/20
highlight [1] 82/5
highlighted [4] 28/23 29/21 68/9 68/11
highlights [1] 57/21
highly [7] 21/14 31/15 55/8 114/23 165/15
195/16 197/12
Hill [1] 232/17
him [2] 229/20 230/17
himself [2] 107/5 232/21
hinder [1] 100/11
hinges [1] 99/7
his [24] 15/9 15/12 19/13 20/25 43/3 43/4
43/14 56/16 67/1 71/11 78/8 78/9 112/23
114/18 114/19 114/20 114/24 162/7 167/10
217/11 229/20 232/21 241/4 241/4
historic [6] 134/1 233/21 233/23 234/3 236/2
236/7
historical [4] 225/14 233/15 233/16 234/23
historically [1] 108/11
history [5] 9/21 14/10 67/12 165/9 231/9
hit [1] 161/6
hold [3] 146/5 161/22 162/24
holder [2] 170/15 188/9
holders [1] 131/25
Holdings [1] 189/15
HOLLANDER [1] 3/5
Home [26] 51/11 66/11 68/21 70/9 72/1 74/6
74/12 78/17 79/6 81/5 81/9 81/10 81/13 81/14
81/18 81/22 81/23 82/20 83/5 83/5 83/9 83/10
83/15 171/5 222/1 222/4
Home Depot [2] 70/9 74/12
honest [1] 46/13
honing [1] 233/7
honor [291]
Honor's [7] 64/17 151/9 217/19 236/9 239/23
241/10 241/15
Honor-All-Card [1] 12/25
Honor-All-Cards [44] 13/4 15/4 15/23 22/25
23/2 39/5 39/9 39/11 39/24 40/19 42/19 42/21

44/5 58/9 59/25 60/2 60/7 61/4 63/4 63/8
64/15 82/19 86/5 86/6 86/10 86/17 86/21
87/12 89/16 95/17 95/20 99/10 104/21 184/16
195/5 203/7 204/13 204/22 218/7 218/17
224/21 225/8 225/14 229/4
Honor-All-Devices [1] 184/17
HONORABLE [3] 1/8 171/23 172/4
hope [4] 48/3 106/1 111/7 229/21
hoped [1] 212/10
hopeful [1] 14/7
hopeless [1] 106/9
horizontal [2] 152/14 152/16
hour [3] 9/10 198/25 199/7
hours [4] 156/11 234/8 234/10 238/2
house [2] 17/9 218/10
houses [2] 69/2 120/10
how [62] 18/16 22/9 24/3 27/2 27/4 32/22
33/4 37/11 41/8 41/13 45/17 55/1 55/18 56/13
57/8 65/18 66/23 68/17 68/19 69/6 78/4 84/6
84/22 87/15 91/20 91/22 92/24 95/2 102/16
104/5 104/7 106/13 116/18 124/18 131/12
134/5 137/8 137/11 138/14 143/9 143/12
147/11 148/2 148/14 150/25 161/3 174/5
174/7 177/10 179/20 187/18 187/25 200/19
204/17 212/20 227/12 231/6 234/18 235/3
237/23 240/13 241/23
however [9] 49/3 76/9 91/11 100/20 121/8
125/24 126/1 150/10 170/5
huge [4] 97/5 111/4 166/12 173/15
HULETT [1] 3/8
hundred [1] 167/15
hundreds [10] 109/1 133/1 133/1 136/19
138/10 138/10 138/11 138/11 156/11 238/2
Hunt [2] 171/23 172/4
hurt [1] 38/16
husband [1] 192/25
hypothetical [6] 41/4 79/9 80/8 148/5 148/11
148/24
hypotheticals [1] 41/4

I'd [14] 11/21 83/23 88/9 88/17 92/23 92/24
99/7 107/7 117/17 170/4 194/4 194/4 221/15
230/21
I'll [10] 8/2 32/9 33/25 48/9 113/13 149/16
155/16 195/6 212/2 226/22
I'm [120] 7/15 7/19 7/23 8/6 10/25 14/20
15/19 17/1 24/13 25/4 26/14 27/16 28/12
29/15 31/9 32/8 33/5 34/16 36/13 36/17 39/1
41/7 46/13 46/14 46/23 46/24 47/20 49/17
51/9 75/13 75/13 76/19 78/19 81/22 82/1 82/2
82/2 83/20 92/12 98/8 98/20 98/22 101/14
106/18 106/24 107/12 112/24 117/25 123/7
123/19 125/11 129/25 130/4 130/8 130/11
131/8 132/17 132/17 133/5 133/21 133/23
134/25 137/17 141/5 141/15 142/5 142/11
143/7 144/3 144/4 145/1 145/2 145/9 146/1
153/10 154/1 155/13 159/20 163/5 166/22
170/1 171/10 171/24 173/3 173/8 174/10
174/10 180/16 180/16 185/23 188/3 188/5
189/18 189/18 192/11 192/18 193/15 196/5
196/6 197/15 201/5 202/4 207/25 215/2
216/13 217/12 227/14 228/1 228/4 228/5
229/21 229/25 230/18 231/19 238/15 238/15
238/24 239/8 239/9 241/10
I've [19] 11/22 41/20 45/16 45/19 79/9 85/6
88/12 98/23 147/9 185/18 198/1 233/3 233/5
236/10 238/15 238/16 238/19 239/4 242/13
ICIS [1] 63/21
idea [4] 142/16 164/4 164/14 190/4
identical [26] 20/6 32/18 32/19 36/18 36/20
37/13 37/22 39/22 40/11 41/2 57/3 62/20
146/8 146/15 199/13 199/21 215/25 219/23
220/2 220/6 220/16 224/8 225/20 226/3 226/8

# I

identical... [1] 213/1
identified [2] 71/19 162/21
identify [2] 122/11 240/8
identity [1] 37/14
ignore [4] 60/6 60/9 119/9 119/12
ignored [1] 225/3
ignores [3] 54/14 54/17 97/9
III [2] 5/19 154/3
Ikea [2] 23/19 23/19
Ilene [1] 144/18
Ill [7] 123/9 126/20 143/2 177/24 180/14 185/17 195/25
illegal [9] 42/19 75/23 151/6 151/8 200/23 200/24 207/13 217/4 221/8
illegality [2] 76/22 86/10
Illinois [1] 16/20
illusory [1] 189/23
illustrate [2] 61/3 65/2
illustration [4] 19/8 55/1 55/4 147/12
illustrative [1] 178/16
imagine [3] 41/4 147/12 159/11
immunity [5] 38/10 59/6 110/7 176/20 195/11
immunizing [1] 64/6
impact [9] 54/13 54/16 55/6 59/17 183/5 195/8 195/9 197/1 197/8
impair [2] 146/8 149/3
impairing [1] 147/2
impediment [1] 21/9
impediments [2] 77/20 85/9
imperative [1] 67/9
impermissible [1] 57/3
impermissibly [2] 56/14 65/24
implement [4] 78/25 183/16 189/6 197/13
implementing [2] 18/15 196/24
implements [1] 133/11
implication [2] 93/14 197/11
implies [1] 127/3
importance [2] 18/18 54/6
important [20] 7/12 10/4 11/2 14/15 21/17 44/21 64/21 88/2 107/8 107/17 110/25 164/23 165/4 193/5 201/4 224/13 224/24 225/4 239/22 242/10
importantly [4] 9/23 19/21 157/12 200/8
impose [10] 22/22 91/9 108/18 110/1 147/17 150/20 170/14 188/8 215/18 218/25
imposed [2] 62/2 220/23 220/25
imposing [1] 190/24
imposition [1] 152/14
impossible [6] 57/6 57/23 66/14 66/15 66/20 191/10
imprecision [1] 57/19
imprisonment [1] 188/13
improper [3] 72/6 120/5 139/10
improvement [2] 160/13 160/20
imprudent [1] 214/6
in-house [2] 172/9 172/10
inaccuracies [1] 96/19
inaction [2] 28/25 29/2
inadequate [2] 81/12 223/1
inapposite [1] 232/18
inappropriate [2] 100/24 195/16
Inc [4] 159/21 180/22 196/9 237/11
incapable [1] 40/3
incentive [20] 13/21 179/2 179/4 179/5 180/7 230/7 232/22 237/1 237/23 238/4 238/5 238/11 238/20 239/12 239/17 240/11 240/20 241/10 241/13 241/18
incidental [1] 116/5
incidentally [1] 205/6
inclined [1] 57/15
include [12] 58/11 58/23 60/10 61/4 70/16

116/22 121/21 127/9 159/9 174/1 195/18 211/18
included [13] 38/4 83/11 83/24 116/25 116/25 120/14 121/5 122/7 122/16 124/7 126/11 162/25 171/15
includes [10] 49/19 50/8 58/13 63/5 63/8 75/7 91/23 121/13 122/20 201/12
including [30] 12/7 39/6 51/8 53/24 56/10 58/8 59/9 62/13 63/21 82/14 97/11 98/5 100/25 108/3 122/19 149/20 150/10 155/8 155/22 156/15 157/13 158/2 162/21 164/6 164/18 165/7 195/5 209/1 211/4 225/8
inclusion [1] 210/18
incomplete [1] 102/10
inconsistent [3] 27/22 218/9 218/11
Incorporated [1] 158/4
incorrect [3] 199/21 200/4 205/21
increase [4] 38/18 44/2 137/5 193/21
increases [3] 164/9 182/7 193/20
increasingly [1] 161/20
incredible [2] 230/25 230/25
incredibly [1] 97/25
incur [1] 101/5
incurred [1] 240/22
indeed [3] 190/13 195/16 220/8
indefinite [1] 70/11
Independence [1] 165/8
independent [10] 13/17 16/1 27/3 65/11 106/19 106/22 107/24 180/18 185/2 193/1
independently [2] 16/10 119/2
INDEX [1] 243/1
indicate [2] 25/14 91/4
indicated [4] 98/7 148/25 197/18 197/22
indicating [1] 197/20
indication [2] 25/9 142/10
indispensable [2] 46/11 46/16
individual [11] 50/23 50/25 51/3 51/15 54/21 55/17 107/19 119/15 162/9 200/7 208/21
individually [1] 101/4
individuals [4] 160/10 161/5 178/8 209/4
indivisible [5] 52/7 84/4 89/24 89/25 91/16
indulge [1] 79/8
indulgence [1] 188/1
industries [1] 28/1
industry [30] 9/23 10/4 33/15 37/6 44/22 46/3 47/19 47/23 56/20 57/10 62/3 63/19 96/25 97/2 97/5 111/17 112/11 131/12 138/9 150/2 150/8 180/21 181/18 181/19 187/2 193/16 194/19 194/19 196/4 231/10
ineffective [1] 102/10
inefficient [1] 141/23
inevitable [2] 10/9 169/15
inevitably [1] 60/25
Infante [1] 10/18
inference [4] 26/15 26/24 111/23 111/24
inferentially [1] 156/24
inflated [1] 229/2
influence [1] 184/9
information [6] 24/25 95/12 127/24 179/13 180/5 180/7
informed [1] 215/22
informs [1] 219/2
infringed [1] 159/15
infringes [2] 156/16 158/20
Ingersoll [1] 73/23
inherent [1] 59/23
inherently [1] 57/20 99/21 195/21
inhibit [1] 67/14
initial [1] 223/17
initially [1] 233/11
Initiative [1] 63/22
inject [1] 63/18
injected [1] 148/20
injunction [42] 11/13 11/14 11/15 28/21 30/9

30/22 30/23 31/1 36/3 52/4 52/7 52/12 54/20 69/14 70/13 75/9 75/16 77/1 78/4 81/21 89/13 89/15 89/23 89/24 90/5 90/11 90/12 90/14 90/19 90/23 90/24 91/1 91/10 92/3 92/6 130/14 200/15 200/16 201/10 201/13 210/16 216/3
injunctions [4] 54/4 88/24 89/3 89/5
injunctive [35] 15/18 15/20 18/6 28/25 29/2 29/17 30/2 36/2 36/3 51/18 66/22 69/10 70/12 70/24 75/7 75/25 81/12 82/17 93/4 93/7 93/21 94/4 104/10 105/3 114/17 115/3 116/4 142/2 170/24 200/14 200/14 217/10 223/6 223/6 223/8
injure [1] 109/18
injured [2] 107/7 107/7
injuries [1] 208/21
injury [4] 121/21 125/21 127/4 127/11
innocent [1] 124/4
innovation [1] 95/21
input [1] 162/14
inquiry [2] 54/11 54/16
inserting [1] 82/22
inside [4] 46/2 95/12 95/12 144/19
insignificant [1] 25/5
install [2] 225/11 225/16
instance [5] 11/9 120/21 141/3 142/17 142/21
instances [1] 209/25
instant [1] 186/13
instead [5] 50/22 122/17 147/20 157/2 218/20
instructed [1] 63/13
instructive [1] 162/7
instrument [1] 50/1
insubstantial [1] 50/11
insulate [1] 16/25
insurance [5] 161/4 164/25 165/1 165/5 218/5
insurer [1] 162/3
insurers [8] 160/2 160/14 160/22 161/19 162/22 162/25 164/17 164/20
insurers' [1] 159/24
integral [1] 142/14
integrity [1] 70/21
intelligent [1] 44/25
intend [5] 11/7 49/5 127/23 127/24 213/21
intended [6] 16/24 89/3 208/6 208/13 224/3
intends [1] 8/21
intent [2] 98/8 224/4
intention [3] 7/18 127/21 192/3
intentionally [1] 32/18
interchange [47] 1/2 6/14 12/20 13/16 15/2 15/22 17/11 17/15 42/16 44/4 50/3 55/1 63/20 70/17 71/13 74/9 74/14 77/18 78/13 79/11 82/21 87/21 88/15 97/7 102/8 103/25 104/3 104/21 109/5 109/7 109/14 110/4 111/17 149/7 151/25 160/19 164/7 164/13 165/19 165/24 181/1 195/4 203/10 212/11 228/20 228/23 229/2
interest [12] 12/21 18/12 107/2 107/3 108/13 108/14 133/25 163/21 195/6 195/25 209/9 224/19
interested [3] 27/12 73/20 241/22
interesting [4] 15/10 28/16 162/7 171/18
interests [10] 53/25 118/13 118/15 118/15 118/18 118/19 120/7 133/25 155/3 191/16
interim [2] 101/19 103/4
internal [1] 240/19
international [1] 227/7
internationally [1] 227/20
internet [1] 24/24
interpret [4] 63/12 113/18 116/21 157/4
interpretation [6] 20/5 126/12 148/14 173/20 173/21 229/3

**I**

interpretations [1] 60/6
interpreted [1] 84/22
interpreting [2] 113/17 173/10
interrelationship [1] 70/23
interrogatories [1] 237/21
interrupt [3] 80/9 82/1 198/10
interrupted [1] 77/9
interrupting [2] 12/2 34/16
intertwined [1] 71/9
intervention [1] 151/7
introduced [1] 227/12
introducing [1] 196/24
introductory [2] 126/14 126/18
invade [1] 100/4
investigation [1] 12/16
investigative [1] 162/14
investment [2] 95/7 95/16
invite [1] 144/16
invoke [1] 60/14
involve [1] 66/15
involved [7] 83/5 98/23 152/11 159/8 221/18
239/6 241/4
involving [1] 72/11
Iowa [1] 196/11
iPad [1] 136/22
IPO [2] 13/8 178/10
IPOs [2] 16/22 42/16
irksome [1] 172/8
ironically [2] 147/4 165/19
irrelevant [2] 68/25 78/2
irreparable [2] 141/18 142/1
irreplaceable [1] 44/22
is [824]
is outside [1] 96/9
ISAAC [1] 3/13
Island [1] 183/14
isn't [13] 43/24 74/20 78/10 78/17 81/21
87/11 87/23 90/12 90/14 133/8 162/1 174/20
203/22
isolated [2] 55/19 110/3
ISOs [1] 138/8
issue [55] 8/20 11/8 14/15 21/13 22/10 22/18
28/10 33/12 37/16 45/14 45/18 47/2 47/24
58/22 58/25 63/17 68/25 69/5 71/5 71/6 73/3
73/8 78/3 78/22 83/2 100/16 108/4 116/16
117/9 117/23 119/3 130/14 131/1 156/16
158/2 171/20 173/13 177/23 178/3 179/16
187/24 190/6 190/21 193/5 199/10 207/25
208/1 211/12 216/20 217/13 218/18 224/12
226/18 229/17 236/2
issued [7] 64/15 89/3 89/5 125/1 128/5
218/13 237/5
issuer [2] 122/6 145/9
issuers [1] 113/21
issues [28] 10/19 10/20 11/1 33/17 33/22
37/15 54/21 60/24 61/5 62/3 67/2 102/2
102/24 111/18 118/22 119/1 122/15 127/16
128/7 145/24 158/13 177/19 177/21 178/20
196/18 199/24 212/2 242/10
issuing [5] 108/12 109/8 110/6 170/14 207/7
it [513]
it'll [1] 114/21
it's [146] 6/12 9/6 15/10 16/3 17/10 18/2 18/9
18/21 18/24 19/1 19/8 20/1 21/3 21/17 21/20
22/1 22/10 24/20 26/23 27/19 28/16 30/12
30/23 32/16 33/15 33/17 33/21 34/14 34/14
35/5 35/20 41/10 43/16 44/21 44/21 47/13
47/13 47/23 49/4 66/14 66/15 66/20 66/22
67/21 69/1 71/21 72/6 74/10 74/6 76/6 76/15
76/20 76/23 76/23 77/7 77/10 78/2 81/13
81/24 83/12 83/15 84/1 84/9 84/10 84/10 85/4
87/25 87/25 90/12 90/23 90/23 90/24 90/25

**J**

January [4] 64/19 64/23 65/1 165/1
January 1 [2] 64/19 65/1
January 1st [1] 165/1
JASON [2] 4/9 113/5
Jay [1] 173/4
Jeff [1] 49/16
Jefferson [1] 73/23
JEFFREY [1] 3/13
Jenkins [2] 233/17 233/19
JENNIFER [2] 4/15 144/24
jeopardy [3] 163/7 163/9 163/11
Jersey [2] 183/13 214/16
JG [1] 1/4
Jill [1] 166/21
JO [1] 1/4
job [4] 8/14 14/23 235/16 238/15
JOHN [7] 1/8 4/21 4/23 129/10 130/25
166/19 177/12
join [1] 177/23
joined [3] 97/13 105/22 199/10
joining [1] 142/13
joint [4] 143/9 143/10 151/11 151/14
jointly [3] 142/7 142/25 228/22
Jones [1] 231/14
JOSEPH [1] 3/7
JOSHUA [3] 5/4 5/6 177/11
JR [1] 4/4
judge [26] 1/9 7/3 10/18 35/14 46/8 64/7
120/9 120/23 121/3 132/19 144/10 152/14
173/1 173/8 174/16 177/8 212/25 214/23
215/13 216/3 230/16 231/14 231/23 235/1
236/12 237/5
Judge Kaplan [3] 120/9 120/23 121/3
Judge Orenstein [1] 237/5
judge's [1] 230/14
judgment [11] 16/8 17/2 30/16 39/12 40/6
52/12 125/19 126/12 126/25 154/25 211/17
judgments [1] 15/16 30/18 88/25

**K**

KANE [2] 1/17 1/23
Kansas [1] 173/7
KAPLAN [5] 1/12 3/2 120/9 120/23 121/3
keep [13] 8/2 8/6 32/1 34/16 47/18 49/10
144/14 161/2 179/9 191/25 203/13 212/16
224/25
keeps [2] 64/11 194/6
Keller [2] 123/20 127/17
Ken [1] 199/3
KENNETH [1] 2/12
KENNY [1] 2/8
kettle [1] 238/23
key [4] 47/17 52/6 89/16 89/25
kick [2] 116/18 218/15
kicked [2] 72/5 116/17
killed [1] 64/9
killer [1] 94/22
killing [2] 112/8 163/15
kind [16] 17/18 25/14 55/6 87/4 95/21 102/18
132/7 140/24 142/11 159/9 170/19 179/16
239/1
kinds [5] 81/2 102/1 104/8 104/10 120/2
KIRKLAND [1] 4/13
Kitt [1] 6/1
knew [1] 169/3
know [87] 7/12 14/19 17/4 17/5 18/8 18/11
18/14 18/17 18/25 22/9 22/14 23/24 26/18
26/20 26/25 28/3 31/20 32/21 37/7 37/12
38/20 38/20 40/3 44/19 47/25 66/18 70/21
73/16 79/14 80/16 84/21 87/7 87/10 91/22
94/18 101/18 101/20 102/4 103/1 112/23
113/17 114/11 123/8 127/5 130/13 137/18
140/11 140/22 141/8 141/10 141/16 142/23
145/16 168/15 174/2 174/23 178/8 178/18
184/10 188/4 192/3 194/7 195/7 199/4 203/19
204/9 204/16 204/16 204/17 205/2 205/10
205/10 205/14 214/7 227/8 227/17 227/22
227/25 228/6 231/1 231/6 231/16 238/7

**Index second column**

93/10 94/10 94/13 95/4 98/14 102/9 103/8
103/17 104/1 105/15 106/3 106/9 107/1 107/8
108/8 108/21 111/11 111/13 113/7 113/12 113/15
113/23 113/23 113/24 122/12 135/21 145/20
145/20 149/5 149/8 149/17 150/25 151/5
151/6 151/19 153/12 154/4 163/15 172/2
172/7 172/8 174/7 174/9 178/14 183/19
200/11 201/20 204/6 205/23 207/8 207/14
210/1 212/8 212/21 212/23 212/24 213/2
213/7 217/1 217/1 217/16 218/11 218/15
218/18 219/9 220/20 222/20 223/4 224/13
225/5 225/6 232/19 234/14 240/1
item [3] 172/7 197/8 197/10
items [1] 100/3
its [112] 11/12 13/11 14/9 20/5 30/15 30/21
36/1 36/14 36/25 37/5 37/5 38/10 39/2 39/22
39/23 40/4 40/7 40/13 40/14 40/22 40/23 41/3
50/12 53/25 53/25 56/6 58/16 59/16 62/16
63/18 63/19 64/4 66/4 68/21 85/9 87/8 89/2
93/2 95/6 95/14 99/22 105/7 110/2 113/21
116/4 116/11 116/15 116/23 117/10 118/2
122/17 123/17 126/3 131/24 131/25 132/7
132/13 132/20 132/20 135/16 135/22 135/23
136/3 136/13 136/18 138/5 138/15 139/10
139/11 139/24 148/20 150/19 151/15 158/2
158/15 158/24 159/21 176/20 178/22 179/17
180/21 182/5 183/15 185/17 187/5 188/1
189/22 189/23 192/7 193/11 197/12 199/12
200/9 201/4 201/9 201/19 201/20 202/16
202/19 203/6 204/2 204/7 204/9 205/24
225/11 231/14 236/19 237/25 238/19 240/1
240/2 240/19
itself [8] 10/13 15/16 77/23 110/17 121/3
126/20 130/12 167/10

judicata [2] 72/16 72/19
July [2] 28/4 165/21
jumped [1] 241/19
June [5] 9/10 11/25 12/6 12/12 13/15
jurisdiction [5] 37/1 45/12 131/19 169/2
169/6
jurist [1] 111/16 168/14
jury [5] 7/9 7/17 15/14 127/19 144/15
just [115] 8/12 8/20 8/22 9/21 16/18 17/13
22/1 28/13 34/14 35/8 36/12 39/23 40/19
41/21 41/21 42/24 47/11 47/16 48/23 50/10
57/8 69/24 70/18 71/15 72/5 76/17 82/5 82/7
83/4 83/24 84/15 85/24 87/3 87/16 90/25 94/6
103/11 107/17 112/6 112/8 112/14 112/17
113/8 119/11 119/14 120/13 120/19 120/21
120/23 121/2 124/4 130/2 135/10 135/19
135/23 137/17 137/21 138/25 139/10 141/7
142/5 147/11 147/21 151/20 153/2 154/2
154/21 161/22 162/5 164/11 165/16 165/18
166/10 167/23 168/7 168/16 171/4 172/14
172/17 174/17 179/8 183/20 185/15 187/15
187/18 189/4 194/5 194/6 200/4 201/15
201/15 203/22 204/2 204/9 204/14 205/8
205/12 207/25 212/21 212/22 214/4 214/4
215/11 216/12 216/14 227/4 227/6 227/23
229/19 234/6 236/1 236/6 236/15 237/20
239/23
justice [11] 5/17 12/11 12/16 82/23 102/1
119/16 119/19 153/21 217/15 227/25 228/4
justification [2] 150/10 180/2
justifications [3] 92/17 92/17 92/18
justified [2] 241/11 241/15
justifies [1] 56/8
justify [4] 58/18 65/23 66/1 101/2

**K**

know... [4] 238/15 238/18 239/3 241/23
knowing [1] 174/1
knowledge [2] 24/6 139/12
knows [7] 6/11 10/6 23/24 25/21 89/8 130/15 230/16
**KOROLOGOS** [3] 4/12 46/22 117/15

**L**

L.L.P [2] 1/12 3/2
La [2] 3/2 3/3
label [2] 215/19 227/21
labeled [1] 210/14
labels [1] 42/13
labor [3] 210/3 230/20 233/1
laboratory [1] 48/3
lack [5] 28/11 119/21 154/2 169/6 184/25
LADDIE [2] 1/17 219/16
LADNER [1] 2/21
Lafayette [1] 2/5
Lambert [7] 144/6 191/23 192/11 192/12 192/25 196/4 218/22
Land [1] 189/16
landscape [1] 81/2
Lane [1] 4/22
language [41] 28/23 32/11 34/19 62/5 62/9 88/23 100/1 114/18 114/19 114/20 114/22 124/6 125/17 125/23 126/5 126/9 126/11 126/25 127/2 127/8 154/7 154/13 154/17 154/18 154/21 154/21 154/23 156/15 157/3 173/21 174/4 175/3 177/2 202/11 222/6
large [13] 17/16 17/23 18/23 55/16 71/9 97/12 105/13 134/3 166/13 167/25 189/25 236/12 237/18
large-scale [1] 134/3
large-ticket [1] 189/25
largely [1] 216/19
larger [3] 19/22 166/2 218/14
largest [11] 9/20 27/24 49/19 88/11 101/16 107/24 182/19 193/11 194/17 194/20 220/23
LaSalle [2] 1/13 1/13
last [31] 11/7 25/12 28/3 33/10 43/8 64/3 97/20 108/7 115/1 116/24 119/14 129/7 129/13 129/18 157/25 167/13 172/7 177/13 178/25 182/22 192/3 193/12 203/24 216/13 217/18 218/18 219/4 225/5 226/25 229/20 232/21
late [1] 236/19
later [4] 9/15 48/15 198/10 227/24
law [53] 2/5 4/21 5/2 5/4 5/7 7/16 16/22 32/17 33/14 36/19 36/21 37/9 41/1 41/11 42/9 69/11 72/8 74/24 113/14 114/11 131/19 131/20 154/1 155/1 155/9 156/16 156/22 157/1 157/20 157/20 157/22 158/10 158/11 158/15 158/25 159/3 159/10 159/14 171/2 187/25 188/7 188/21 199/15 200/2 200/12 200/12 207/12 208/20 208/25 209/3 210/2 215/24 239/17
lawful [1] 219/21
Lawler [1] 62/16
laws [20] 9/21 13/12 43/24 45/21 62/7 69/15 69/15 74/20 79/2 95/22 97/17 107/20 146/13 159/12 187/12 188/23 189/3 190/18 211/4 217/16
Lawson [3] 234/2 234/11 234/15
lawsuit [7] 27/20 80/11 80/13 117/3 119/2 180/4 185/20
lawsuits [2] 59/6 86/19
lawyer [5] 10/6 46/23 47/10 94/12 94/14
lawyers [11] 16/4 68/22 69/4 105/8 141/9 160/5 169/1 186/18 230/5 233/25 239/2
lay [1] 37/11

layout [1] 197/10
lazy [1] 143/4
LCD [1] 169/11
lead [7] 101/22 110/20 171/18 212/10 212/18 219/16 232/4
Leaders [1] 187/2
leadership [1] 232/5
leading [2] 25/22 123/22
leads [1] 166/2
learned [1] 156/13
lease [1] 170/13
least [21] 15/24 18/14 26/20 26/23 84/17 101/7 102/14 122/23 123/8 139/11 143/10 157/8 160/11 163/24 164/1 177/5 177/13 177/24 184/18 238/11 242/13
leave [8] 22/21 30/20 120/1 128/3 142/15 142/16 142/21 226/25
leaves [1] 102/6
led [3] 9/22 136/16 209/12
left [7] 7/21 28/10 28/24 80/7 123/5 215/9 228/10
left-hand [1] 28/24
leg [1] 70/2
legal [12] 33/24 40/20 42/16 139/13 152/12 161/8 184/15 199/14 207/15 208/9 208/24 219/6
legged [1] 69/22
legislation [5] 80/14 105/4 181/25 196/25 197/1
legislative [2] 111/2 196/25
legislator [1] 31/25 110/23
legislators [9] 32/1 111/7 213/12 213/15 214/1 214/11 214/11 214/18 216/11
legislature [1] 33/20 190/10
legitimate [2] 41/10 155/4
legs [5] 70/1 70/3 70/5 70/7 70/9
Lehman [1] 220/5
lend [1] 79/17
length [2] 24/3 104/2 230/20
Leon's [1] 237/9
less [14] 15/5 21/19 23/8 25/3 33/14 63/2 65/19 112/4 132/24 135/8 162/18 205/21 213/23 219/22
lesser [1] 7/3
lessor [1] 170/13
let [30] 7/6 14/14 14/18 24/15 27/16 28/9 32/8 33/23 37/4 38/25 43/3 56/13 64/10 80/9 82/5 85/24 98/25 114/7 122/14 126/20 135/2 137/12 144/1 155/16 161/22 214/4 215/9 238/4 240/8 242/7
let's [8] 26/9 39/18 95/4 113/18 147/21 156/17 226/23 226/24
lets [6] 39/13 39/14 48/13 123/5 198/17 204/1
letter [4] 86/5 119/6 156/20 233/12
letting [1] 181/20
level [21] 49/3 52/20 77/17 86/22 97/18 145/25 146/19 147/5 148/15 149/7 149/9 150/13 151/23 152/5 153/2 157/10 203/19 205/23 206/1 207/13 222/25
leveled [2] 152/6 207/1
levels [2] 114/2 150/20
lever [1] 207/2
leverage [4] 102/24 103/7 103/10 106/7
Lexington [2] 4/11 4/14
liability [4] 16/25 176/21 221/3 223/21
liable [1] 215/14
license [1] 182/20
licensing [2] 35/3 35/4
lied [1] 227/23
lieu [3] 170/16 188/9 219/1
Life [1] 218/5
light [5] 41/24 136/15 144/24 167/2 217/2
like [92] 8/12 11/14 11/22 16/6 16/12 17/22 21/18 26/18 31/6 33/11 33/11 36/25 44/18

47/23 56/7 67/7 69/1 72/1 79/6 79/16 82/19 83/23 85/7 88/9 88/17 90/17 90/23 92/23 92/24 96/7 98/5 99/7 99/15 102/25 103/21 105/22 111/24 114/15 114/22 116/22 117/17 118/1 120/13 130/24 131/22 133/8 135/5 136/17 137/24 141/9 142/15 145/7 146/24 147/14 147/22 154/17 156/3 170/4 170/23 177/19 179/14 181/18 183/17 186/19 189/6 190/1 191/4 192/21 193/7 193/13 194/4 194/4 202/2 203/3 203/3 208/23 210/16 211/5 214/6 217/7 220/15 221/15 227/4 228/7 230/21 232/25 234/14 236/25 239/2 239/6 240/1 241/17
likelihood [3] 141/16 141/25 219/11
likely [11] 21/19 22/24 23/8 61/21 67/4 99/14 110/2 110/22 112/4 154/20
Likewise [2] 152/13 201/14
limit [8] 8/22 36/8 46/12 86/24 148/12 149/13 195/25 199/17
limitation [2] 52/25 220/7
limitations [2] 52/19 219/24
limited [15] 36/18 46/13 54/11 62/22 65/16 76/11 89/21 89/23 100/19 100/22 199/16 234/8 234/9 234/10 235/13
limits [5] 69/20 82/23 86/24 88/19 148/8
line [8] 32/3 32/6 32/15 58/18 59/4 71/18 133/2 162/17
Linear [1] 72/10
lines [1] 139/23
lineup [1] 83/8
link [1] 13/1
liquor [1] 193/20
list [20] 7/7 18/8 25/20 39/6 82/3 95/5 122/13 123/6 123/17 140/10 144/4 177/10 177/13 201/8 201/12 201/14 228/17 228/18 228/18 230/18
listen [3] 7/9 7/11 112/2
listening [2] 124/19 127/18
listing [1] 234/13
Literary [7] 35/1 37/10 56/11 72/24 117/24 117/25 200/5
litigant [1] 180/4
litigants [2] 162/9 162/16
litigate [1] 209/10
litigated [6] 16/4 33/16 42/3 62/3 203/4 203/6
litigating [1] 211/20
litigation [44] 1/3 6/15 9/22 10/2 12/9 22/1 33/13 37/6 42/18 43/6 64/24 73/19 93/17 94/25 96/15 96/20 99/22 110/13 110/15 110/17 119/16 122/12 124/2 124/3 124/10 124/11 153/24 153/25 158/23 169/6 171/13 178/11 180/24 210/25 211/10 219/10 220/12 226/6 230/24 230/25 231/2 231/22 236/9 238/6
litigations [1] 12/7
little [30] 5/8 7/21 11/9 12/13 14/21 18/23 24/15 25/13 25/17 39/8 44/18 45/17 48/15 68/4 82/4 86/10 110/2 113/13 121/9 121/18 135/7 137/16 138/5 173/3 190/22 192/19 204/1 215/5 226/23 238/19
live [2] 154/19 176/13
lives [1] 237/17
Liz [2] 144/6 194/14
LLP [17] 1/19 2/1 2/5 2/11 2/14 2/16 2/23 3/8 3/12 3/15 3/21 4/2 4/5 4/8 4/10 4/16 5/12
loadstar [16] 168/11 168/12 168/13 168/15 168/16 168/21 168/24 169/9 169/11 169/13 169/18 169/20 170/6 171/11 171/15 171/24
loadstars [1] 168/14
lobbying [1] 189/2
lobbyist [2] 214/14 216/16
LoBUE [1] 2/24
local [2] 155/7 155/12

**L**

located [2] 173/6 196/11
locations [4] 127/19 194/20 196/11 197/2
Locust [1] 1/16 1/22
lodestar [6] 233/3 233/8 233/16 233/19 233/21 234/4
Logan [2] 68/1 68/6
logged [1] 98/11
logic [1] 200/13
logical [1] 30/15
logistic [1] 8/20
logistics [1] 8/15
long [18] 10/5 24/7 36/25 76/5 76/6 83/15 85/20 102/22 108/5 108/16 131/3 131/13 151/6 198/3 204/19 217/2 220/20 231/9
long-term [1] 198/3
longer [7] 13/25 86/17 90/13 108/20 140/1 167/14 223/10
look [31] 11/24 12/22 14/24 17/24 18/16 28/23 29/21 31/6 32/23 37/14 37/16 37/18 37/19 40/6 41/5 67/19 88/23 93/16 94/6 103/5 103/21 112/22 141/6 148/10 179/14 179/18 186/19 219/24 221/21 221/22 222/22
looked [14] 16/5 19/14 67/1 82/22 92/25 93/2 93/2 93/3 93/4 108/12 168/8 173/19 173/19 221/25
looking [16] 25/8 25/17 26/24 57/20 57/23 80/16 80/22 82/2 87/10 93/12 168/9 168/10 179/24 188/3 200/21 221/23
looks [4] 93/9 93/25 118/1 222/18
lose [7] 44/4 44/4 83/10 166/12 203/6 203/10 203/12
losers [2] 84/10 84/11
losing [3] 98/2 98/3 183/2
loss [3] 160/8 160/9 164/22
lost [6] 13/11 42/2 65/25 186/4 212/12 212/13
lot [27] 9/11 25/12 28/7 38/3 39/6 42/3 42/23 53/19 74/23 77/7 85/5 107/1 132/24 133/7 135/5 145/4 145/14 177/15 178/3 178/4 188/24 189/20 193/13 200/12 201/3 213/23 234/7
lots [4] 68/22 68/24 80/3 145/16
loud [3] 140/14 142/5 177/15
love [1] 107/8
low [5] 97/23 183/3 186/10 193/24 234/18
low-margin [1] 183/3
lower [7] 13/24 20/23 150/7 168/1 212/11 233/16 233/24
lowering [1] 183/19
luckily [1] 166/10
lump [1] 195/22
lunch [2] 7/11 8/9

**M**

MA [1] 4/22
made [52] 7/18 27/23 40/18 43/9 47/11 64/11 66/23 67/6 77/16 83/8 95/25 97/2 97/11 106/10 118/7 118/11 118/17 120/2 120/4 127/21 131/3 132/10 132/12 133/9 149/23 151/22 152/21 154/8 161/25 185/3 187/7 187/8 189/23 191/12 198/14 199/8 200/1 200/21 203/7 203/10 203/11 203/16 213/14 216/14 216/18 217/5 218/2 222/1 222/6 223/15 241/25 242/1
Madison [5] 3/12 3/18 35/10 35/11 200/6
Magistrate [2] 220/5 231/23
Magistrate Gorenstein [1] 220/5
magnetic [1] 95/12
magnified [1] 59/17
magnitude [2] 230/23 230/25
mail [1] 187/25
mails [1] 139/8

main [2] 167/6 173/9
Maine [1] 158/18
maintain [3] 147/21 205/23/23
major [7] 17/2 18/13 26/16 111/16 186/16 186/19 230/8
majority [10] 13/16 25/15 53/5 53/10 67/20 96/16 97/2 97/10 103/16 194/22
make [58] 7/13 14/3 19/9 19/12 27/12 28/17 28/20 29/7 32/13 32/14 40/5 41/18 41/21 51/2 51/14 82/10 85/1 90/9 91/1 97/24 99/7 100/1 103/8 106/2 106/10 126/23 127/25 131/7 132/15 133/17 135/17 144/25 148/17 149/11 149/23 152/18 152/19 155/25 160/24 163/1 163/4 170/8 178/25 183/6 184/6 191/9 197/3 205/3 205/4 205/18 210/22 211/2 215/22 217/7 235/10 235/13 236/21 238/9
makers [2] 235/2 236/12
makes [12] 89/19 91/14 95/6 96/25 114/4 114/5 117/23 133/13 181/9 210/13 224/25 239/11
making [6] 8/13 152/3 160/15 162/11 228/1 235/16
MALONE [1] 3/14
managed [5] 128/6 129/2 129/4 142/19 147/6
Manager [1] 196/9
mandatory [18] 51/17 52/11 53/3 54/22 55/21 65/18 69/9 72/7 73/10 75/16 76/3 76/3 82/15 88/20 89/11 89/17 108/22 163/20 manner [3] 50/5 89/6 108/13
many [49] 9/13 16/7 16/7 45/7 45/7 45/9 49/22 51/4 53/3 58/24 65/15 66/12 66/14 66/23 67/19 69/4 82/18 91/17 97/10 101/23 104/12 104/15 105/22 108/14 114/1 131/2 137/8 137/11 138/14 141/8 141/22 144/15 147/21 154/16 180/20 186/3 187/6 188/25 189/8 194/24 190/11 199/18 199/20 202/21 204/10 209/12 209/25 218/12 218/16
margin [2] 183/3 193/25
MARK [1] 2/21
markedly [1] 240/16
market [47] 12/23 15/1 15/1 41/7 45/6 50/19 53/14 63/24 77/19 77/23 77/25 78/12 79/19 80/4 84/6 84/7 85/23 86/4 86/4 96/21 96/22 96/22 99/1 99/16 102/13 103/12 109/5 119/21 119/23 146/7 150/5 150/17 150/24 167/5 167/9 168/19 181/8 182/7 184/7 190/3 195/23 201/21 201/25 212/14 218/14 235/1 236/12
marketplace [5] 19/10 22/12 105/2 181/20 195/13
markets [10] 12/1 12/1 12/7 19/4 24/10 26/18 79/19 100/12 195/9 212/13
marshal [2] 8/14 152/13
mart [16] 23/18 25/6 51/22 68/10 73/12 98/21 98/25 99/15 100/2 100/25 101/4 171/6 231/15 232/21 233/20 235/1
Mart's [2] 98/22 100/11
MARTH [1] 3/4
mass [1] 158/8
Massachusetts [1] 183/15
master [30] 36/10 38/2 38/7 38/9 38/11 38/17 39/4 42/14 42/15 43/6 46/1 49/13 50/4 50/6 50/18 53/24 56/25 57/11 57/13 58/19 116/17 116/20 117/1 117/4 119/21 122/4 125/5 181/8 201/17 236/9
Master Card [22] 36/10 38/2 38/7 38/9 38/11 38/17 39/4 42/14 42/15 43/6 50/6 56/25 57/13 58/19 116/17 116/20 117/1 117/4 119/21 122/4 125/5 181/8
Master Card's [4] 46/1 50/18 53/24 57/11
MasterCard [98] 9/25 13/6 13/8 14/5 16/24 20/17 21/7 27/3 63/24 65/11 70/17 71/13 71/24 85/22 86/3 87/21 88/15 91/25 92/5 94/24 95/8 98/23 99/19 99/23 100/7 100/13 100/21 102/7 103/1 103/15 107/21 109/8

109/14 109/22 110/6 113/16 114/1 146/5 146/14 146/22 147/4 147/13 147/14 147/20 147/23 147/24 148/7 148/22 148/25 149/4 149/12 149/22 150/2 150/12 150/18 150/22 151/1 151/14 151/22 152/22 153/22 163/14 167/13 174/8 176/20 181/1 181/21 183/8 183/22 184/16 189/1 195/11 201/17 205/6 205/21 206/9 206/10 207/4 207/24 208/16 208/17 212/17 213/18 218/13 220/24 221/4 225/7 225/10 225/18 225/19 227/13 228/20 228/22 228/24 228/25 229/3 229/6 229/9
MasterCard's [6] 29/11 184/7 184/18 186/4 186/13 212/18
material [6] 32/22 32/24 188/6 223/19 223/22 224/9
materialize [1] 62/10
materials [5] 187/5 216/9 216/16 217/1 217/6 68/19 70/5 74/5 78/6 78/11 148/13 174/5 174/7 174/11 182/11 200/2 234/19 236/24
matters [9] 8/24 31/18 54/10 68/20 78/7 97/25 148/13 149/11 181/9
maximum [1] 37/1
may [70] 7/13 23/7 27/7 31/10 32/14 33/10 40/2 40/4 53/4 53/12 53/14 53/15 55/18 64/8 67/20 78/14 78/14 80/5 84/8 87/9 91/4 100/21 108/7 110/12 111/17 112/14 119/23 122/2 123/11 123/15 124/7 130/18 132/19 135/17 135/24 139/20 140/17 142/5 149/25 155/14 161/17 161/17 167/12 170/1 170/14 170/25 171/23 173/24 174/17 174/22 176/4 176/5 185/25 188/8 191/3 194/13 198/10 198/24 201/15 208/7 214/22 215/6 218/25 220/21 225/4 226/7 229/5 232/25 239/5 240/16
maybe [20] 8/17 38/17 72/2 87/10 95/8 114/23 132/17 133/6 134/2 135/7 135/8 135/8 135/9 156/1 168/13 188/16 189/19 191/11 194/3 220/14
Maywalt [1] 222/22
MCAG [4] 137/22 138/19 140/10 142/19
McReynolds [1] 222/23
MCX [1] 63/22
MDL [2] 1/4 127/12
MDL-1720 [1] 127/12
MDL1720 [1] 9/9
me [95] 7/6 7/12 8/12 9/3 12/2 12/5 14/14 14/18 24/15 25/14 27/16 28/9 31/6 33/23 37/4 38/25 43/3 46/13 46/18 48/24 51/11 56/13 64/10 65/8 76/17 78/7 80/9 80/17 82/5 82/7 82/8 85/5 85/6 85/8 85/20 87/15 95/10 98/25 103/8 104/1 104/6 106/15 112/2 117/2 117/2 122/14 127/24 132/9 132/17 133/14 133/17 133/18 135/2 137/12 137/18 142/15 142/24 142/25 144/1 153/9 155/11 159/22 167/6 173/18 173/21 177/8 177/21 178/10 188/1 188/15 190/10 192/22 196/8 203/25 204/2 204/6 204/9 205/13 207/17 214/4 215/5 215/9 227/5 227/7 227/9 227/15 227/20 227/23 238/4 239/11 240/8 241/24 241/25 242/7 242/14
meager [1] 50/19
MEAGHER [1] 2/16
meals [1] 194/24
mean [19] 26/2 31/21 31/24 42/9 57/18 63/12 80/11 81/4 82/1 102/16 104/1 112/25 137/12 232/12 142/6 169/21 173/24 202/9 205/16
meaning [2] 29/3 47/6
meaningful [7] 56/2 56/5 63/19 96/21 110/23 181/7 185/13
meaningfully [1] 184/8
means [11] 38/8 71/15 73/19 145/12 164/10 165/5 170/16 188/10 204/14 205/15 219/2
meant [1] 165/20
measure [1] 17/25

measures [1] 17/13
meat [1] 37/4
mechanical [1] 6/5
mechanism [5] 47/18 72/7 102/10 142/5
142/13
mechanisms [2] 102/6 130/4
media [1] 112/12
mediation [3] 10/14 146/15 237/15
mediations [1] 240/18
mediators [5] 10/14 16/13 71/5 204/17
237/16
medical [3] 160/8 160/9 164/22
medium [1] 237/19
medium-sized [1] 237/19
meet [3] 101/25 160/14 164/18
meeting [2] 52/14 240/18
meetings [1] 237/14
meets [3] 10/22 36/7 92/20
mega [6] 167/11 167/12 167/14 167/17
168/12 168/14
member [10] 52/13 54/20 77/16 90/6 97/11
133/10 155/13 177/12 179/22 222/4
members [61] 27/6 29/4 30/25 49/18 50/14
50/24 52/10 54/22 56/3 56/6 64/22 67/20
68/14 71/23 73/1 77/2 97/7 101/8 102/3
103/12 105/7 108/24 110/16 112/5 116/7
117/8 118/4 118/16 118/19 118/22 119/25
120/5 120/6 122/18 122/24 133/10 137/7
173/5 174/16 174/17 174/22 176/11 176/22
177/2 177/5 178/6 179/10 180/20 180/22
182/5 187/16 188/21 189/5 195/3 209/7 211/1
211/10 223/12 223/12 232/4 238/9
members' [1] 74/1
membership [1] 107/23
men [3] 240/24 240/25 241/2
mention [5] 101/5 110/4 150/3 154/2 162/6
mentioned [10] 72/12 72/13 88/12 89/16
144/1 184/25 188/24 209/2 227/1 239/15
merchandise [1] 227/21
merchant [54] 1/3 6/14 13/16 25/7 25/9
28/22 38/12 45/2 45/3 45/4 45/5 47/10 47/18
55/13 59/6 63/21 64/6 65/9 78/24 82/24 98/3
100/5 124/2 127/11 130/5 131/18 132/8
134/20 140/3 147/3 147/13 147/15 147/17
147/17 147/23 148/3 148/4 148/6 148/10
148/16 148/18 149/12 151/15 151/25 155/14
166/4 197/16 205/7 205/16 213/21 223/5
225/11 225/15 229/8
merchant's [1] 149/15
merchants [174] 10/5 12/10 13/22 14/1 14/3
14/6 14/11 18/7 18/10 18/11 18/24 19/6 19/9
19/15 19/20 20/2 20/14 20/15 20/18 20/21
21/10 21/13 21/14 21/20 22/4 22/6 22/10
22/11 22/21 23/18 24/9 24/22 25/2 25/4 25/9
25/13 25/15 25/18 38/1 38/6 38/17 38/20
42/23 42/25 43/4 43/21 44/24 49/20 49/21
50/2 51/14 52/18 52/21 52/23 53/4 53/7 53/8
53/10 53/12 53/13 53/14 53/17 53/20 53/20
53/21 54/5 55/16 55/19 57/22 61/6 65/9 65/9
65/15 65/23 66/16 66/18 77/23 78/12 79/24
84/5 84/8 84/11 84/13 85/11 85/13 86/25 87/1
88/11 90/1 91/18 91/23 91/23 91/24 95/10
97/11 97/14 98/15 99/15 101/16 101/18
101/20 102/9 106/23 106/23 106/24 108/14
108/25 109/20 110/21 113/23 113/25 119/9
119/11 119/23 130/10 130/17 132/7 135/14
137/5 137/8 137/10 138/21 138/23 139/11
140/22 141/5 145/13 145/21 145/24 146/21
146/23 147/10 148/25 150/5 150/21 150/21
150/23 152/20 152/21 161/18 166/5 166/6
166/6 166/11 181/9 181/22 182/9 182/13
184/20 195/24 196/14 197/19 197/20 198/3

206/14 209/7 209/10 212/9 212/19 213/10
214/6 214/13 218/14 218/16 218/20 220/23
220/25 222/17 224/14 224/22 225/4 225/24
225/25 230/8
merchants' [3] 148/21 150/6 181/3
merchants's [1] 148/22
merchantsobject.com [1] 141/2
merciful [1] 7/12
mercifully [2] 125/9 229/22
merely [1] 62/11
merging [1] 99/16
merits [9] 15/13 16/15 27/20 31/5 42/12
112/25 141/17 142/1 203/8
Merle [1] 7/16
MERRILL [1] 1/23
message [2] 106/3 159/14
messages [1] 176/19
met [1] 142/2
method [3] 109/15 154/20 209/10
methods [1] 112/5
metrics [1] 235/5
Metro [1] 193/2
Metro Petro [1] 193/2
MEYER [6] 5/21 106/16 107/9 107/10
107/12 112/16
Mia [2] 192/11 192/25
Miami [1] 2/9
mic [1] 49/11
MICHAEL [6] 1/17 1/23 3/22 5/20 98/20
123/19
mics [1] 48/20
middle [1] 28/24
midsized [1] 137/10
Midwest [1] 180/23
might [31] 10/3 19/18 19/10 20/17 55/1 55/13
55/13 72/20 80/15 80/22 80/24 98/8 119/8
119/9 135/4 135/5 135/22 138/24 148/11
148/12 148/15 173/12 183/18 185/4 199/1
203/6 203/9 203/12 205/6 207/7 226/10
mike [4] 5/9 8/16 8/17 83/20
MILLER [4] 1/12 3/2 4/18 5/15
million [33] 16/6 38/20 46/9 119/11 138/7
138/20 139/11 167/11 168/10 168/11 168/13
168/16 168/22 168/25 169/9 169/21 172/18
179/3 179/10 194/21 194/24 197/25 232/14
232/14 233/11 233/13 234/5 235/8 235/9
235/14 237/2 240/16 240/21
millions [6] 95/5 105/9 105/25 109/1 131/25
167/15
mind [5] 43/6 88/7 140/16 179/9 194/5
mind's [1] 142/9
minimum [2] 14/1 157/21
minimus [1] 40/18
Minneapolis [1] 1/14 3/3 193/2
Minnesota [5] 193/2 193/11 196/11 218/23
218/24
minority [1] 67/22
minute [2] 48/13 149/16
minutes [14] 6/22 62/23 6/23 28/10 32/9 41/18
44/14 48/10 82/7 106/18 123/11 144/3 153/10
199/1
mirror [1] 50/20
misconduct [1] 102/11
misdemeanor [1] 188/12
misguided [1] 28/7
misinformation [1] 25/12
misleading [2] 24/25 136/14
misrepresents [1] 176/11
missing [3] 137/15 137/16 179/16
Mississippi [2] 158/4 173/7
missives [1] 141/13
Missouri [3] 173/7 233/17 233/18
misspoke [1] 241/25
misstatements [1] 39/3

Mitch [1] 153/8
MITCHELL [1] 5/11
MLR [4] 163/25 164/4 164/16 164/19
MN [2] 1/14 3/3
mobile [39] 39/9 39/11 39/14 56/15 58/1 58/5
58/11 59/3 59/9 59/24 60/8 60/10 60/15 61/4
61/5 62/3 62/14 62/15 62/17 63/5 63/17 63/21
98/6 99/8 99/11 99/15 99/16 111/4 184/19
184/21 195/9 195/12 195/20 201/1 201/7
201/9 201/12 201/13 203/3
model [6] 12/21 92/8 92/9 94/18 116/22
116/23
models [1] 116/24
moderate [3] 167/1 167/2 168/16
moderation [1] 167/6
modest [2] 169/19 235/18
modifications [3] 52/23 127/14 209/23
modified [7] 12/25 126/3 127/9 161/23
162/24 223/9 229/7
modify [4] 114/6 124/18 161/22 209/22
modifying [1] 124/25
mom [1] 170/3
mom-and-pop [1] 170/3
moment [2] 140/23 221/17
monetary [5] 68/13 71/5 96/18 115/4 221/7
money [24] 17/10 17/16 17/23 18/13 66/15
70/24 71/2 71/9 98/13 98/14 103/13 105/23
114/24 116/5 134/23 135/23 171/1 172/12
186/9 186/12 193/13 227/17 227/18 236/9
monopolistic [1] 181/12
MONTAGUE [9] 1/15 1/21 70/21 71/4
198/23 215/4 219/16 226/16 233/4
MONTAGUE,JR [1] 1/17
month [1] 213/6
months [2] 165/22 197/24
MOORE [5] 5/19 153/9 155/16 155/19 211/2
more [77] 16/21 18/13 22/23 32/13 32/14
32/14 33/14 40/13 40/14 47/8 47/16 48/10
48/12 53/3 53/17 59/11 77/7 77/24 77/24 82/7
82/22 87/22 87/23 87/23 88/12 88/14 92/15 96/25
98/24 107/8 107/8 108/18 109/5 110/22
112/10 114/16 119/10 121/24 123/4 123/23
135/6 140/21 141/7 141/12 141/13 146/22
152/1 152/2 157/11 159/22 161/5 162/12
164/8 168/11 169/23 170/7 177/23 182/20
185/11 189/19 189/19 190/4 190/9 197/1 7
199/25 205/24 206/4 207/7 207/8 207/9
219/22 220/22 227/10 228/2 235/4 235/4
237/14 241/16
Moreover [3] 19/16 57/6 215/20
Morgan [1] 17/21
morning [39] 6/21 8/22 9/1 9/4 9/6 9/7 10/21
10/25 11/7 33/3 44/10 44/11 49/16 66/8 66/9
83/19 83/22 96/11 96/12 98/10 120/24 127/13
144/25 156/3 181/10 181/17 184/17 187/12
187/24 199/8 202/11 202/25 203/8 203/16
212/3 215/24 217/6 219/17 219/20
MORRISON [1] 2/20
most [41] 7/11 9/23 10/14 11/1 14/15 20/2
21/14 21/14 24/16 45/7 46/9 49/20 64/21
66/17 66/19 67/4 68/17 75/3 75/16 80/4 88/11
97/19 106/22 110/5 111/16 142/4 142/8 152/7
152/11 152/15 154/20 154/20 166/6 192/5
197/14 198/22 214/14 232/7 232/7 233/2
233/17
mostly [1] 51/22
motion [21] 6/13 8/23 9/8 66/5 80/19 114/7
117/10 121/2 128/1 178/22 180/6 189/10
198/14 202/3 216/2 216/5 216/6 226/23
226/25 242/9 242/14
motions [4] 8/23 16/8 16/8 17/2
motivation [1] 35/18
motivations [1] 13/18
mouthpiece [2] 42/24 42/25

**M**

mouths [3] 45/25 105/24 1/4/20
move [1] 207/7
moved [1] 46/7
movement [2] 97/22 182/1
mover [4] 20/24 21/13 22/18 190/21
movers [1] 21/17
moves [1] 39/23
MR [10] 2/7 36/1 106/13 112/16 112/20
155/21 169/25 187/9 207/22 208/14
Mr. [118] 6/19 6/23 6/25 7/1 7/22 8/11 18/22
23/10 31/13 32/8 33/2 42/13 42/20 44/9 44/10
46/22 48/11 48/21 49/10 51/10 55/25 58/5
66/7 66/8 69/17 70/18 70/21 71/4 71/11 71/14
71/25 72/10 74/10 76/10 77/16 83/24 84/19
85/19 92/6 94/16 95/25 98/7 98/9 98/19
105/13 107/9 107/10 112/22 116/13 118/25
119/17 119/23 120/24 122/9 122/10 123/6
123/17 127/17 131/11 136/25 144/4 155/16
156/1 156/3 157/7 157/19 164/16 170/4
172/24 177/10 177/24 177/24 178/20 178/21
178/23 180/10 180/11 181/10 182/15 182/16
187/9 188/23 191/23 191/25 192/5 192/6
196/4 198/23 203/16 207/18 211/2 212/1
215/4 215/9 215/11 216/21 217/11 217/19
218/22 219/13 219/20 222/3 222/20 224/14
226/16 226/17 229/13 229/13 229/16 231/8
232/5 232/6 233/4 233/12 233/25 234/12
234/15 241/3
Mr. Armour [1] 98/19
Mr. Arnold [11] 6/23 18/22 23/10 44/10
48/11 48/21 77/16 119/17 212/1 215/9 215/11
Mr. Arnold's [1] 118/25
Mr. Cambria [1] 136/25
Mr. Coughlin [1] 226/17
Mr. Davidoff [1] 229/16
Mr. Gallo [27] 31/13 32/8 33/2 44/9 55/25
58/5 69/17 70/18 71/11 71/14 71/25 72/10
74/10 76/10 85/19 92/6 94/16 95/25 98/9
112/22 122/9 157/19 181/10 191/25 219/20
229/13 229/13
Mr. Gallo's [1] 98/7
Mr. Gentile [2] 156/1 157/7
Mr. Goldberg's [1] 232/5
Mr. Keller [1] 127/17
Mr. Korologos [1] 46/22
Mr. Lambert [2] 196/4 218/22
Mr. Meyer [1] 107/9 107/10
Mr. Montague [6] 70/21 71/4 198/23 215/4
226/16 233/4
Mr. Moore [1] 155/16 211/2
Mr. Neuwirth [7] 51/10 66/8 83/24 84/19
116/13 216/21 217/19
Mr. Parker [1] 172/24
Mr. Pence [3] 177/24 178/20 178/23
Mr. Pentz [1] 170/4
Mr. Powell [1] 207/18
Mr. Schaeffer [1] 131/11
Mr. Schoeman [1] 241/3
Mr. Seltzer [1] 182/16
Mr. Shinder [12] 6/25 7/1 7/22 42/20 49/10
66/7 122/10 123/6 187/9 192/5 192/6 217/11
Mr. Shinder's [4] 42/13 123/17 144/4 177/10
Mr. Siegel [3] 177/24 178/21 231/8
Mr. Stewart's [1] 232/6
Mr. Undlin [2] 233/12 233/25
Mr. Undlin's [2] 234/12 234/15
Mr. Wagner [1] 191/23
Mr. Webner's [1] 164/16
Mr. Wenning [4] 180/10 180/11 182/15
188/23
Mr. Wildfang [11] 6/19 8/11 105/13 119/23
120/24 156/3 203/16 219/13 222/3 222/20

224/14
Mr. Shinder [1] 209/3
MRI [1] 163/15
Ms. [12] 127/19 153/6 158/17 186/25 189/11
191/23 191/23 194/8 196/3 198/9 226/18
227/1
Ms. Bernay [2] 133/6 138/17
Ms. Garner [3] 191/23 194/8 196/3
Ms. Murrow [1] 127/19
Ms. Raysor [3] 191/23 198/9 227/1
Ms. Sweeney [1] 226/18
Ms. White [2] 186/25 189/11
MSG [1] 72/12
much [30] 43/11 43/14 43/15 45/18 49/23
54/3 55/15 60/23 65/15 97/25 99/20 102/14
107/13 121/4 123/11 138/24 139/4 139/9
148/3 165/18 179/20 189/18 193/9 203/20
220/1 223/15 233/16 233/24 236/18 241/4
multi [3] 53/9 187/22 228/2
multi-banner [1] 53/9
multi-state [1] 187/22
multifaceted [1] 212/3
multiple [1] 47/4
multiplier [13] 168/21 169/22 170/6 171/16
233/22 233/23 234/22 234/23 234/25 235/3
236/3 236/6 236/15
multipliers [1] 168/15
multiply [2] 171/16 171/25
Murrow [1] 127/19
music [1] 187/23
must [16] 29/24 54/16 54/19 56/23 57/2
68/14 86/8 89/24 89/25 90/5 91/16 93/10
117/24 118/14 118/18 150/23
must-have [1] 150/23
my [105] 6/16 7/16 7/20 9/6 9/10 11/21 17/17
17/19 24/5 27/16 28/5 30/13 32/7 39/11 44/24
45/10 48/10 49/12 68/20 79/8 80/25 80/25
84/18 84/18 86/14 87/18 87/25 93/17 94/12
95/11 96/7 96/12 103/9 104/17 106/15 110/1
112/24 113/5 114/4 119/17 120/12 124/8
125/7 132/5 132/5 133/20 134/19 136/1
136/13 140/24 142/9 145/23 146/4 146/4
146/8 147/9 147/11 147/12 159/5 159/20
163/24 164/18 165/7 167/21 168/3 169/8
169/22 170/5 170/9 173/3 173/20 174/2 174/4
176/15 176/17 177/11 177/16 178/1 181/15
182/18 186/9 187/6 187/8 187/25 192/11
192/25 192/25 194/14 195/25 196/8 199/19
199/19 202/14 202/24 204/1 204/2 217/18
225/5 227/2 227/6 227/18 233/4 239/3 241/13
241/24
myself [1] 201/5

**N**

N.W [2] 2/11 5/15
N357 [1] 6/2
NaBaCo [1] 33/16
NaBanCo [1] 12/9
NACHWALTER [1] 2/8
NACS [4] 96/16 96/17 97/6 97/10
NACS' [1] 97/11
name [22] 20/25 56/9 96/12 99/22 106/15
113/5 127/23 129/7 129/13 129/16 129/18
159/20 173/3 177/11 182/18 192/10 192/25
194/14 196/8 199/19 227/2 227/14
named [8] 49/17 55/13 96/14 96/16 97/10
162/3 238/21 239/11
namely [1] 68/12
narrow [1] 76/20
narrowed [1] 185/11
narrowly [2] 117/16 117/18
NASDAQ [2] 235/1 236/12
Natasha [4] 7/16 7/19 123/7 127/22
nation [1] 123/23 152/7 152/11 152/15

nation's [1] 180/18
national [17] 2/12 25/22 42/10 42/17 65/19
67/7 78/24 79/5 96/14 100/15 106/19 106/21
180/17 183/16 194/15 194/17 195/1
nationwide [2] 194/20 221/6
nature [7] 38/15 41/12 51/23 52/7 75/23
184/4 186/3
NBA [2] 200/25 216/25
nearly [4] 100/9 122/1 191/10 233/5
necessarily [4] 15/8 16/14 69/24 78/25
necessary [7] 33/15 35/6 42/18 51/25 125/24
137/13 225/12
necessity [1] 67/9
need [27] 8/2 36/15 42/5 46/17 56/5 62/19
69/14 111/18 112/25 123/15 137/13 142/20
149/24 168/13 169/18 187/21 192/13 194/5
197/7 200/1 204/19 214/25 224/9 230/19
230/24 238/9 239/2
needed [1] 239/1
needs [11] 41/23 45/8 94/14 94/23 123/6
149/21 161/23 162/24 178/1 180/7 228/4
negative [2] 97/17 166/11
negatively [1] 195/8
negotiable [1] 109/8
negotiate [8] 14/11 14/12 24/4 24/5 103/6
104/16 106/7 135/6
negotiated [6] 32/12 105/8 120/12 120/13
120/25 123/1
negotiates [1] 161/17
negotiating [2] 95/10 206/13
negotiation [2] 104/2 154/16
negotiations [3] 16/16 71/4 101/9
neither [4] 26/7 108/11 219/21 225/16
network [18] 13/19 43/1 43/5 45/6 45/13
114/2 114/3 121/22 122/4 122/5 145/8 146/6
146/24 147/2 147/14 149/21 195/4 223/21
network's [1] 225/13
networks [19] 12/12 12/18 12/18 12/19 13/14
14/10 14/12 16/25 24/4 100/3 122/4 145/13
145/23 149/22 150/7 150/14 207/8 220/24
221/2
networks' [1] 146/9
NEUWIRTH [9] 3/20 51/10 66/8 66/10
83/24 84/19 116/13 216/21 217/19
never [10] 24/4 42/19 81/5 88/7 92/9 121/11
165/8 165/10 214/9 233/6
Neville [3] 85/25 86/1 204/4
new [83] 1/1 1/5 2/6 2/15 2/17 2/21 2/24 3/13
3/19 4/3 4/6 4/12 4/14 5/13 6/2 19/23 20/15
23/17 31/16 32/5 32/16 37/15 37/18 38/23
40/4 40/6 40/25 41/7 56/22 57/22 60/5 60/5
63/20 67/17 71/17 71/20 72/14 84/17 86/5
94/21 94/23 94/25 98/5 100/8 108/19 111/13
116/22 117/13 131/17 146/17 168/14 170/19
177/1 183/13 183/13 183/14 184/21 187/24
188/7 190/21 190/21 213/3 213/5 213/7
213/13 214/16 215/12 215/13 215/24 223/5
223/9 223/9 224/13 224/20 224/22 225/2
225/2 228/5 228/25 229/1 229/3 229/4 234/18
New Hampshire [1] 183/14
New Jersey [1] 183/13
New York [4] 117/13 183/13 187/24 188/7
newest [1] 111/10
newsreel [1] 85/20
next [20] 19/5 35/21 36/3 61/7 83/18 98/19
113/3 115/5 121/18 128/10 142/10 143/18
144/22 175/5 188/20 193/12 196/25 206/15
207/18 235/19
NGA [5] 180/21 180/25 181/5 182/5 182/12
NGA's [1] 180/20
NHL [3] 35/12 35/12 35/15
Nice [2] 219/14 219/15
night [2] 135/20 140/24
nine [3] 155/22 179/4 237/1

**N**

Ninth [1] 175/19

NM [1] 3/7

no [148] 1/4 8/4 9/3 11/9 13/9 13/25 21/12 22/1 26/4 29/11 33/14 33/14 34/4 34/18 34/18 35/18 36/8 36/23 40/18 43/8 43/10 43/16 44/1 44/1 44/6 52/16 58/3 65/19 66/12 66/12 73/9 74/1 74/6 74/16 76/15 79/2 80/2 81/3 81/8 81/17 82/13 83/25 84/1 84/11 84/11 84/22 86/17 87/6 89/4 89/13 90/13 90/14 90/19 91/15 91/17 94/6 97/21 100/14 101/7 101/8 103/15 104/19 104/19 105/9 105/11 105/20 108/20 109/2 113/14 114/4 114/5 118/18 118/20 124/14 134/19 140/1 140/8 141/12 141/13 149/15 149/17 149/24 150/4 150/10 150/16 150/17 150/20 151/2 152/3 152/4 152/14 153/18 155/7 157/9 159/2 162/2 163/2 164/2 165/18 166/7 167/14 167/16 168/3 168/3 169/4 169/18 170/12 170/23 174/1 174/5 174/7 174/9 174/11 174/14 174/18 174/18 176/8 176/16 176/17 176/23 178/15 181/19 181/24 185/1 188/8 196/15 197/20 198/2 200/11 200/11 201/10 201/12 201/20 202/1 202/4 203/12 206/3 213/16 216/21 217/3 217/25 218/3 223/10 224/4 232/1 236/22 242/1 242/1

no-charge [1] 91/17

no-surcharge [9] 22/1 83/25 84/1 84/11 84/22 90/14 149/15 150/4 150/20

nobody [4] 34/2 36/19 176/21 236/22

Nod [1] 189/16

non [47] 57/18 109/8 223/22 223/22

non-material [1] 223/22

non-negotiable [1] 109/8

non-substantial [1] 223/22

non-substantive [1] 57/18

none [12] 52/10 54/9 56/9 70/22 72/8 73/17 122/6 150/11 162/3 162/4 166/14 218/12

nonetheless [1] 19/13

nonmaterial [1] 57/18

nonprofit [1] 107/23

normal [1] 131/4

normally [2] 79/19 234/8

Northern [2] 169/12 171/20

not [407]

not -- they [1] 135/15

note [3] 50/17 83/4 140/2

notebook [1] 11/22

noted [8] 18/12 20/12 26/16 73/1 73/7 78/23 108/6 120/23

notes [4] 28/16 28/17 88/23 222/20

noteworthy [1] 94/9

nothing [17] 43/21 43/22 64/1 64/1 74/15 83/9 88/13 90/3 98/12 124/2 124/3 136/17 148/9 163/13 184/8 222/15 227/22

notice [30] 7/6 7/18 29/23 73/20 74/2 121/16 124/5 127/21 130/17 131/15 137/3 137/4 137/5 137/20 137/22 137/23 139/21 139/22 141/21 142/16 173/10 173/19 173/25 174/9 176/7 176/10 176/11 176/23 177/1 222/5

notices [2] 132/11 201/8

notification [4] 133/12 136/3 136/10 138/14

notified [1] 134/13

noting [1] 190/8

notion [4] 52/8 86/9 211/3 220/10

Notwithstanding [1] 126/15

November [4] 155/1 158/5 234/4 234/21

November 30th [1] 234/21

November 30th was [1] 234/4

November 6th [1] 158/5

now [88] 10/9 13/3 13/8 13/17 14/1 15/6 16/18 17/8 19/7 19/18 20/15 21/22 22/9 22/19 22/22 23/1 24/4 25/2 25/11 27/21 28/2 28/5

28/20 30/6 30/10 31/18 36/7 36/14 38/3 38/14 38/25 39/3 39/13 40/3 41/5 42/22 44/17 45/8 45/14 47/20 48/12 50/16 51/9 52/2 54/7 54/24 56/21 59/16 62/10 69/20 70/10 71/16 74/10 78/19 82/4 82/21 95/9 97/13 102/13 111/5 116/3 119/17 120/8 124/12 130/14 139/11 155/16 156/23 158/12 159/13 164/18 167/9 167/12 169/14 176/12 178/8 191/7 198/8 201/25 203/13 210/19 214/13 217/12 217/12 226/23 235/3 236/1 242/13

nowhere [2] 58/21 177/22

NRF [4] 101/21 104/25 105/7 187/9

number [28] 16/5 25/1 34/6 45/19 48/24 66/16 66/18 138/13 138/16 139/8 157/12 159/21 163/23 165/4 203/17 203/22 205/20 205/25 212/23 214/10 214/13 214/15 214/16 234/3 234/3 234/8 234/10 235/10

numbers [8] 18/24 102/3 105/13 132/23 138/10 138/19 138/25 179/20

numerous [4] 59/7 237/14 237/15 237/15

Nw [1] 4/9

NY [12] 2/6 2/15 2/17 2/21 2/24 3/13 3/19 4/3 4/6 4/12 4/14 5/13

**O**

o'clock [4] 7/17 123/10 127/20 127/25

Oaks [1] 5/5

object [20] 18/14 25/3 25/20 25/24 26/3 26/10 30/11 49/18 51/5 51/16 51/18 65/14 65/15 80/6 105/21 107/14 124/9 187/5 219/8 222/24

objected [10] 24/19 24/22 25/4 25/9 25/13 26/7 66/19 121/16 145/2 235/9

objecting [7] 27/18 31/3 139/9 163/19 203/15 203/21 230/6

objection [9] 24/3 31/6 76/14 151/18 203/17 203/19 231/7 235/12 235/14

objections [17] 10/3 65/6 96/17 104/12 104/15 105/22 106/25 136/4 145/5 145/6 159/25 185/18 204/25 205/1 205/2 226/20 231/8

objective [1] 134/7

objectivity [1] 162/15

objector [8] 7/13 7/18 8/3 155/23 177/13 219/5 226/25 231/21

objector's [1] 218/11

objectors [54] 6/24 11/5 12/5 13/3 17/10 18/8 19/16 20/10 20/13 22/19 24/15 24/17 24/23 25/2 27/24 28/8 28/20 29/7 30/10 30/20 36/8 38/8 41/25 42/8 42/10 43/9 43/12 43/19 49/14 80/4 80/6 83/9 83/21 84/25 86/18 88/10 102/15 103/6 114/12 116/7 120/25 144/4 145/14 185/24 203/2 203/3 203/9 204/11 217/7 218/6 230/5 231/6 232/18 235/8

objectors' [9] 7/10 11/11 29/14 30/6 30/14 46/17 48/14 198/13 207/12

obligation [2] 117/8 135/12

obligations [2] 66/4 180/4

observations [1] 41/21

observed [1] 232/21

obstacle [2] 152/20 152/21

obtain [1] 96/21

obtained [3] 10/2 44/20 211/5

obtaining [1] 10/7

obvious [1] 71/1

obviously [10] 17/5 45/14 46/19 93/5 94/10 185/19 200/9 220/8 238/6 242/9

occurred [3] 120/17 120/18 120/21

Ocean [1] 152/10

October [1] 165/2

October 1st of [1] 165/2

of Wisconsin [1] 200/10

off [13] 10/17 17/21 24/24 63/19 69/20 82/23 104/20 104/21 108/18 157/17 191/19 215/1

215/10

offensive [1] 254/21

offer [4] 139/15 165/1 210/18 219/5

offered [4] 103/13 150/10 189/9 210/20

offers [1] 104/19

office [2] 5/18 157/24

officer [1] 96/13

OFFICES [2] 4/21 5/2

official [1] 155/7

offramp [1] 152/4

offset [3] 211/5 211/7 211/12

often [3] 67/8 97/13 239/14

OGDEN [1] 5/21

oh [8] 3/22 4/17 5/11 28/5 117/5 144/12 151/19 179/8

OHIO [3] 5/9 153/8 158/3

Oil [1] 190/7

okay [34] 6/10 8/25 28/14 34/16 44/16 49/8 49/9 51/12 76/23 77/10 82/5 86/2 91/13 103/19 112/19 113/2 113/7 123/14 129/9 129/21 144/1 144/17 144/22 151/24 183/24 186/20 198/17 198/19 201/24 225/6 229/12 229/18 230/3 240/10

Oklahoma [1] 173/7

OKSANA [1] 5/14

old [6] 24/21 37/15 87/17 107/4 223/8 229/6

omission [1] 210/7

once [42] 22/13 48/3 48/4 121/5

one [139] 7/9 8/9 8/20 11/23 12/7 12/22 15/10 15/13 17/17 17/20 18/15 18/19 20/10 21/5 21/7 21/22 22/14 26/14 26/20 27/20 28/20 29/4 32/10 34/2 40/8 45/15 45/19 46/12 46/12 46/15 47/8 48/23 52/17 55/11 55/12 56/8 58/18 59/4 63/15 64/12 67/9 70/1 70/5 70/6 71/5 71/6 73/9 80/11 82/7 95/9 96/1 102/25 104/8 105/9 107/18 108/1 112/10 115/1 116/14 118/2 118/8 119/8 120/8 120/13 123/4 123/8 123/15 124/20 130/17 132/9 133/8 134/20 135/7 136/6 138/18 141/5 141/24 142/6 145/20 146/20 152/8 154/11 157/4 157/9 160/1 162/2 165/7 165/10 166/4 167/25 167/25 170/5 170/22 171/18 172/7 176/14 177/6 177/16 178/4 178/21 182/6 185/3 188/13 189/21 190/4 190/21 190/24 191/10 192/13 193/9 195/6 200/14 200/19 201/15 205/20 205/22 207/25 209/23 212/10 213/1 213/10 214/2 216/16 222/18 223/19 226/25 230/20 231/5 231/7 231/13 232/16 234/21 235/8 235/12 236/12 237/13 237/14 238/20 241/3

one's [1] 213/16

one-sided [1] 182/6

onerous [1] 146/23

ones [4] 55/16 111/10 178/22 240/14

ongoing [2] 64/25 100/12

onion [1] 214/25

online [3] 136/22 172/5 227/19

only [76] 10/11 10/11 17/20 19/25 21/4 24/18 24/21 25/8 25/13 27/9 29/4 41/17 44/3 46/12 47/24 50/12 50/17 51/20 52/9 52/11 52/21 53/8 55/16 56/24 69/25 76/20 83/5 90/19 93/11 93/16 94/1 94/4 96/1 96/2 99/3 107/18 108/25 122/4 124/5 124/17 143/7 145/8 146/21 147/24 149/11 155/11 155/11 155/12 155/14 161/24 164/6 167/21 169/8 170/8 170/22 176/20 182/6 185/25 192/1 205/24 207/13 208/11 209/14 211/2 212/4 215/14 218/9 223/21 224/4 224/14 224/15 225/14 226/20 231/13 235/11 236/4

open [7] 6/9 8/2 39/8 60/11 104/16 161/2 186/12

open-ended [1] 186/12

opened [1] 150/7

opening [2] 30/13 60/13

Case 1:05-md-01720-MKB-JO Document 6094 Filed 11/20/13 Page 267 of 281 PageID #: 71112

**openly** [1] 53/25
**operate** [16] 53/7 53/8 53/10 53/17 54/6 78/4 88/12 123/23 124/1 157/16 181/4 182/20 183/9 187/16 187/17 193/1
**operates** [1] 189/16
**operating** [7] 134/3 158/24 181/23 185/12 193/11 193/17 193/24
**operation** [1] 170/3
**operational** [2] 78/11 182/9
**operator** [6] 123/25 125/20 125/21 126/7 127/4 127/10
**operators** [5] 97/4 124/22 125/23 127/6 127/8
**opinion** [6] 16/14 78/4 102/17 114/16 158/2 232/21
**opinions** [1] 40/14
**opponents** [4] 12/3 44/24 45/18 80/21
**opportunity** [21] 20/8 22/2 33/5 46/22 73/21 74/2 74/6 84/5 96/8 98/21 107/14 122/22 155/20 177/3 180/9 184/20 196/1 216/24 222/9 222/11 222/13
**oppose** [4] 112/18 150/5 178/22 181/5
**opposed** [5] 24/18 108/23 120/25 160/10 163/2
**opposes** [2] 121/2 195/1
**opposing** [2] 13/3 182/11
**opposite** [6] 54/2 90/7 90/8 158/17 158/24 232/18
**opposition** [4] 10/11 65/19 108/4 108/7
**opt** [74] 11/9 25/19 26/4 26/9 27/2 27/8 28/11 55/25 56/3 56/11 65/16 65/16 67/24 68/12 71/22 72/11 73/2 73/4 73/21 74/2 74/6 81/18 83/15 86/19 89/4 89/10 94/2 96/8 101/9 102/10 102/21 104/19 105/8 105/14 106/2 108/9 114/7 116/8 116/9 116/12 117/11 117/11 122/22 134/10 134/14 135/11 136/5 137/12 137/20 137/23 138/21 140/1 174/5 174/10 174/10 174/14 174/17 174/17 174/18 174/21 174/22 174/23 174/25 176/5 176/8 176/21 177/3 177/5 177/7 187/5 204/13 216/23 226/1
**opt-out** [36] 28/11 56/3 56/11 65/16 67/24 71/22 72/11 73/4 81/18 86/19 89/4 89/10 94/5 102/10 116/8 116/9 116/12 117/11 117/11 122/22 134/10 135/11 136/5 137/12 137/20 137/23 138/21 140/1 176/5 176/8 176/21 177/5 177/7 187/5 204/13 216/23
**opt-outs** [3] 55/25 134/14 226/1
**opted** [16] 18/13 26/3 26/8 64/24 65/13 66/19 86/18 88/13 96/17 105/19 105/24 108/7 163/18 182/22 183/25 184/2
**optical** [1] 237/9
**Optics** [1] 237/8
**opting** [5] 130/7 130/7 141/14 174/20 203/21
**option** [1] 125/2
**options** [2] 22/4 161/2
**orally** [3] 8/1 222/9 242/8
**Orange** [1] 166/20
**oranges** [1] 152/3
**order** [42] 6/16 10/7 33/9 34/8 34/24 36/17 36/23 46/24 48/4 69/13 90/13 96/6 96/7 119/12 121/20 124/25 125/19 126/3 126/4 127/3 127/15 128/5 129/1 130/16 139/19 140/2 140/19 149/21 154/25 155/6 189/2 191/5 191/9 197/25 206/10 210/4 226/5 229/22 232/15 237/6 239/1 239/2
**ordered** [5] 75/8 75/19 77/13 129/22 217/21
**ordering** [2] 77/5 141/15
**orderly** [1] 8/13
**orders** [1] 76/2
**Orenstein** [3] 212/25 231/24 237/5
**organization** [1] 107/23 107/24 110/1

**organizations** [2] 106/21 110/12
**organize** [1] 213/11
**orient** [1] 145/1
**original** [3] 101/23 187/6 234/22
**origins** [1] 52/3
**Ortiz** [8] 73/24 74/1 78/17 88/19 89/19 89/22 92/12 92/14
**other** [118] 8/24 9/13 12/14 15/6 16/23 17/8 17/24 18/3 20/5 20/12 21/20 23/23 24/10 24/13 26/18 26/22 33/12 39/5 40/16 46/15 48/8 48/14 56/1 58/1 60/1 60/15 63/5 65/9 69/15 70/3 70/7 70/9 71/5 71/7 73/5 73/14 77/20 80/10 80/14 82/20 87/1 88/21 88/25 89/6 89/20 107/4 108/18 108/24 109/23 110/12 110/23 113/10 116/7 118/16 118/19 118/22 119/13 119/25 120/6 123/9 124/13 127/11 129/3 136/6 137/3 138/7 139/4 145/7 146/9 146/23 153/15 153/20 154/6 154/13 156/6 157/4 159/2 159/6 161/16 164/10 164/21 171/6 171/7 171/14 176/10 178/2 178/21 181/2 185/12 189/3 190/17 190/20 191/2 194/4 196/19 198/9 201/18 203/17 204/6 205/3 206/7 207/8 211/2 211/15 214/8 218/10 218/10 220/4 222/4 222/14 224/24 225/12 225/18 232/4 232/23 238/11 238/19
**others** [8] 26/25 63/22 80/13 135/5 215/7 236/17 237/16 241/17
**otherwise** [7] 31/19 35/6 35/15 48/9 80/15 122/23 211/13
**ought** [3] 111/22 134/7 138/24
**our** [159] 8/22 10/21 15/2 15/5 15/7 15/13 17/25 18/1 18/6 20/1 23/25 25/17 28/21 32/12 44/19 45/20 46/6 49/15 49/19 50/10 50/17 65/22 67/11 68/9 69/2 69/2 75/15 78/22 78/23 94/17 94/17 96/20 96/24 97/2 97/5 97/7 97/13 99/24 100/12 102/3 102/4 103/12 104/18 105/22 105/23 107/17 107/22 107/22 108/1 108/4 108/5 108/6 108/7 112/5 113/19 114/7 119/19 124/17 125/13 125/25 131/2 131/13 131/19 132/4 132/23 134/13 136/19 137/2 145/5 145/5 145/24 146/25 147/2 149/5 149/15 149/19 150/6 150/7 151/7 151/18 153/10 153/22 154/2 154/15 154/15 155/23 156/16 158/1 160/2 161/2 161/21 163/21 166/3 166/4 166/14 171/2 173/9 173/13 174/4 174/25 175/1 176/4 179/7 182/2 182/14 183/5 183/15 187/16 188/20 188/21 189/5 190/1 190/16 190/16 190/17 191/11 191/12 191/16 192/5 193/4 193/11 193/12 193/16 193/17 193/17 193/20 193/24 193/25 194/7 194/19 195/3 196/21 197/2 197/10 197/15 197/15 207/20 208/11 209/9 210/4 211/1 211/3 211/9 211/19 214/6 214/14 216/15 217/1 217/6 220/17 221/11 221/18 223/17 223/18 232/13 234/4 234/16 234/21 240/9
**ours** [1] 191/4
**ourselves** [3] 156/12 161/1 161/6
**out** [193] 11/10 17/10 18/13 19/7 19/17 22/13 22/17 23/5 23/7 23/8 26/3 26/4 26/8 28/11 32/8 33/8 34/7 34/10 34/21 37/11 38/20 43/23 43/24 50/22 56/3 56/11 64/24 65/13 65/16 65/16 66/19 67/24 68/12 71/22 72/11 73/2 73/4 73/21 74/2 74/7 74/25 80/5 80/6 80/14 80/14 81/2 81/18 83/15 84/7 86/6 86/18 86/19 88/13 89/4 89/10 92/5 92/20 94/5 95/7 95/14 95/20 96/2 96/8 96/17 101/9 102/10 102/21 104/19 105/8 105/14 105/18 105/19 105/24 108/7 108/9 114/7 114/7 114/9 114/10 114/11 114/19 116/8 116/9 116/12 116/12 116/24 117/1 117/9 117/11 117/11 121/6 122/10 122/22 130/7 130/7 130/13 131/25 134/10 135/11 135/14 135/15 136/5 137/12 137/20 137/21 137/23 137/23 138/21 139/5 139/6 139/20 140/1 140/2 140/18 141/3 141/14 142/4 142/4 142/5 143/7 144/15 145/9 156/5 161/22 161/23 163/17 163/18 164/3 165/24 166/12 169/12 174/5 174/10 174/10 174/14 174/17 174/17 174/18 174/20 174/22 174/22 174/23 174/25 176/5 176/8 176/21 177/4 177/5 177/7 179/10 179/17 179/19 182/22 183/25 184/2 185/5 187/5 187/18 188/16 189/23 192/14 197/4 197/17 200/10 202/17 203/21 204/5 204/13 205/8 205/15 206/11 206/12 206/13 208/4 213/20 214/12 216/23 218/9 218/15 219/17 223/25 224/13 228/10 231/25 236/10 237/24 238/10 238/24 238/25 239/9 239/13 240/13
**out-of-pocket** [7] 237/24 238/10 238/24 238/25 239/9 239/13 240/13
**outcome** [4] 10/9 109/10 203/5 203/6
**outpouring** [1] 65/19
**outright** [2] 154/11 211/9
**outs** [9] 25/19 26/9 27/2 27/8 55/25 106/2 117/7 134/14 226/1
**outset** [1] 129/23
**outside** [8] 8/8 96/9 100/16 120/18 144/10 144/11 146/3 152/5
**over** [54] 10/11 10/13 13/22 16/2 16/7 18/10 19/1 19/5 24/22 25/11 25/13 33/17 44/17 45/18 46/1 53/15 54/25 55/3 65/13 65/19 81/3 99/22 145/10 151/18 153/11 153/13 163/15 167/22 168/23 170/6 173/5 179/10 193/3 194/19 194/21 194/23 194/25 198/13 198/13 204/22 207/7 211/11 220/24 233/5 233/11 234/6 236/12 236/14 237/4 237/11 237/17 238/24 238/25 239/25
**overall** [2] 110/3 139/10
**overbroad** [2] 63/14 108/23
**overcharges** [1] 221/8
**overcome** [2] 18/19 18/21
**overflow** [2] 7/9 48/19
**overhead** [2] 171/15 171/23
**overlap** [2] 13/13 145/6
**overlapping** [1] 118/24
**overlay** [1] 141/6
**oversight** [2] 111/20 112/3
**overwhelming** [3] 102/3 136/19 202/6
**overwhelmingly** [1] 24/17
**OWEN** [1] 3/14
**own** [10] 51/14 68/21 102/4 107/2 123/23 134/16 135/10 136/13 158/15 193/1
**owned** [3] 12/17 180/18 209/4
**owner** [6] 123/25 126/7 127/10 127/10 227/6 228/2
**owners** [4] 124/13 124/22 125/23 127/7
**ownership** [1] 9/24

**P**

**P.A** [3] 2/8 3/5 5/7
**P.C** [2] 1/15 1/21
**P.O** [1] 3/6
**PA** [2] 1/16 1/22
**packed** [1] 65/7
**page** [22] 31/7 31/10 35/21 61/7 115/5 118/1 118/8 128/10 143/18 162/7 172/8 172/13 175/5 206/15 219/18 228/16 231/9 234/11 234/14 235/13 235/19 243/2
**Page 245** [1] 118/8
**Page 249** [1] 118/1
**pages** [4] 16/6 46/9 100/9 117/1
**paid** [7] 17/11 17/15 70/25 71/2 71/10 193/12 238/13
**pain** [1] 212/5
**paired** [1] 186/12
**pairing** [1] 186/21
**pale** [1] 179/5
**paper** [2] 54/25 227/3
**papers** [8] 53/25 57/17 66/23 68/9 69/25

papers... [3] 121/19 124/6 151/7
paradigm [1] 63/24
paragraph [7] 31/10 34/12 34/14 63/3 63/6
122/10 126/15
Paragraph 1-BB [1] 126/15
Paragraph 68 [1] 122/10
paragraphs [6] 100/21 122/11 125/7 154/8
154/12 219/25
Paragraphs 28 [1] 125/7
paralegal [1] 187/25
paralegals [1] 234/14
paralyzed [2] 213/17 213/17
parameters [1] 140/11
paraphrase [1] 114/21
paraphrasing [1] 34/14
Pardon [1] 104/6
parens [15] 153/14 154/12 154/25 155/9
156/5 156/22 156/24 157/1 157/16 158/7
158/21 159/6 209/23 210/1 210/6
Park [1] 5/13
Parker [2] 172/24 173/5
Parkway [1] 237/8
parole [1] 117/7
part [43] 9/9 31/21 35/8 35/12 36/5 40/1
41/19 44/22 46/2 46/5 46/6 58/16 59/22 69/18
71/1 71/10 101/8 103/23 107/21 122/24
126/19 140/20 142/14 154/8 161/9 161/11
171/14 171/25 178/7 180/1 185/1 185/4
191/17 191/17 202/7 202/14 205/13 212/4
219/8 219/23 222/19 222/19 231/16
parted [1] 45/10
participant [1] 113/10
participants [1] 135/6
participate [6] 133/3 134/16 134/22 137/14
176/5 180/25
participated [1] 237/15
participating [2] 132/8 134/17
participation [5] 130/5 131/7 134/2 137/6
142/15
particular [8] 20/20 53/21 80/12 80/12 99/20
112/5 156/9 196/15
particularly [8] 27/25 65/15 104/22 111/13
187/8 219/25 224/20 234/17
parties [38] 14/17 14/21 16/3 16/10 36/1
57/14 69/14 69/18 70/9 72/18 73/17 73/20
74/18 75/3 77/5 102/23 106/6 109/4 118/12
122/23 126/17 128/2 128/5 128/7 150/9
153/17 154/5 156/8 156/8 156/14 158/14
158/25 159/1 159/7 159/11 177/14 178/2
216/4
partner [1] 241/24
partners [6] 73/5 169/16 192/15 193/1 220/9
234/13
parts [2] 93/2 166/11
party [8] 75/19 76/2 77/14 83/10 140/6
154/22 155/10 209/8
pass [2] 103/1 190/17
passed [2] 109/19 197/1
passes [1] 140/24
past [6] 64/25 72/6 117/20 132/5 193/3
221/19
patently [1] 63/14
Patient [1] 160/6
patriae [15] 153/14 154/13 155/1 155/9
156/5 156/22 156/24 157/1 157/16 158/7
158/21 159/6 209/23 210/1 210/6
PATRICK [3] 2/3 129/4 138/19
PATTERSON [1] 2/23
PAUL [5] 2/11 5/19 153/9 153/11 155/19
pay [9] 38/21 67/4 88/14 95/19 109/10
109/21 135/18 164/13 238/12
paying [4] 96/25 134/18 160/21 165/23

Payless [3] 237/4 237/7 240/17
payment [50] 1/2 6/14 9/23 12/1 12/6 45/6
45/13 45/15 61/5 95/5 98/9 99/8 101/22
101/23 109/15 109/23 111/9 111/10 111/14
111/17 112/5 112/7 112/10 128/6 129/3
129/11 129/12 129/17 130/2 132/6 132/16
133/16 133/19 137/1 142/13 142/18 160/14
160/19 161/5 166/13 170/16 180/16 191/6
202/15 208/17 219/1 225/11 225/12 225/13
225/15
payments [37] 56/15 58/1 59/3 59/10 59/24
60/1 60/8 60/10 60/15 61/4 61/5 62/3 62/14
62/18 63/5 63/18 63/22 98/6 98/24 99/1 99/15
99/17 107/22 111/4 130/25 134/9 136/2
136/18 138/4 142/18 160/15 160/24 161/7
174/6 184/21 195/9 208/17
Paypal [2] 183/22 201/21
payroll [1] 193/12
pays [1] 97/5
peace [8] 40/22 42/6 70/19 70/19 71/10 71/11
85/19 204/1
PEASE [2] 3/21 4/16
peeling [1] 214/25
penality [1] 160/16
penalties [7] 153/15 154/14 156/6 159/6
160/3 161/15 210/14
penalty [1] 210/9
Pence [3] 177/24 178/20 178/23
pendency [1] 73/21
pending [3] 169/12 216/3 216/6
PENTZ [5] 4/21 4/23 166/19 169/25 170/4
people [44] 8/1 8/6 8/18 38/21 45/18 47/14
47/24 48/2 48/24 67/19 68/17 80/5 82/3 95/11
103/23 112/23 129/25 134/10 135/12 136/21
139/15 141/7 147/22 161/16 170/21 178/17
178/18 191/4 192/4 194/21 201/20 202/21
202/23 203/11 203/14 212/5 213/14 227/5
227/7 227/15 227/16 227/16 230/5 238/1
people's [1] 214/20
per [11] 60/7 61/1 74/20 74/21 74/23 151/6
151/8 151/13 151/16 179/25 207/16
perceived [1] 149/3
percent [56] 18/1 18/2 21/1 21/4 24/21 24/22
25/3 25/8 47/16 52/21 65/13 97/3 103/2
130/22 132/14 132/20 132/21 135/9 138/24
146/6 146/6 147/2 160/11 160/14 160/22
163/2 163/5 163/7 164/1 164/5 164/6 164/11
167/23 167/24 168/18 169/4 169/7 169/14
169/19 169/21 183/10 190/1 190/16 190/16
190/17 193/4 194/23 196/21 197/1 203/20
232/10 234/6 236/6 236/6 236/11 236/15
percentage [6] 65/14 135/9 136/19 167/22
236/5 236/14
perfectly [1] 90/9
performed [1] 169/16
performing [1] 186/16
perhaps [8] 43/5 64/21 71/17 93/11 110/5
110/7 166/24 241/20
period [4] 123/16 131/13 142/23 165/20
PERKINS [2] 4/8 113/5
permanent [1] 19/1
permissibility [1] 148/5
permissible [1] 171/12
permit [6] 53/9 72/5 77/12 211/4 211/10
226/7
permits [1] 109/13
permitted [10] 37/2 64/7 68/14 77/23 86/23
102/21 109/12 110/14 148/25 193/10
pernicious [1] 86/22
perniciousness [1] 95/2
perpetrators [1] 106/9
perpetuate [1] 184/10
perpetuity [2] 36/9 109/15
persisted [1] 10/17

persistent [1] 10/12
person [1] 23/8
personal [1] 108/2
personally [1] 24/7
personnel [1] 171/14
persons [2] 11/14 231/24
perspective [12] 46/14 49/24 63/17 93/3 93/4
93/5 104/19 114/6 117/10 141/7 146/11 184/8
persuade [3] 9/15 15/12 222/11
persuaded [9] 15/14 93/15 130/8 130/11
131/8 132/17 133/17 133/18 134/25
persuasively [1] 23/4
pertain [2] 59/9 62/14
PETER [1] 2/18
Petro [1] 193/2
Petroleum [2] 67/23 73/22
Ph.D [1] 5/21
Philadelphia [2] 1/16 1/22
PHILIP [2] 4/12 117/15
Phillips [3] 67/23 73/14 73/22
Phillips v [1] 73/14
phone [7] 38/22 39/9 39/11 39/15 39/23
95/12 225/12
phones [3] 201/9 201/12 201/18
Photos [1] 237/11
phrase [3] 99/21 126/8 223/20
phrased [1] 178/14
Physicians [1] 152/10
picking [3] 84/9 84/10 125/11
pictures [1] 113/2
piece [4] 46/11 80/13 132/4 215/1
pieces [1] 81/2
piechart [1] 24/21
pin [2] 13/22 13/23
pioneer [1] 191/10
PIRG [1] 106/20
pizza [1] 130/24
place [17] 22/1 34/8 34/22 34/23 57/1 59/10
62/12 62/18 80/7 89/10 95/24 109/25 134/13
190/22 200/22 212/14 233/7
placed [2] 55/19 148/4
places [6] 22/14 32/3 32/5 177/16 214/8
218/11
plain [1] 177/2
plainfield [14] 97/18 145/25 146/19 147/5
148/16 149/7 149/9 150/13 151/1 151/23
152/5 152/7 153/2 207/1
plaintiff [7] 96/14 101/24 158/9 161/25 200/7
238/22 239/11
plaintiff's [2] 68/22 118/15
plaintiffs [41] 6/17 9/8 42/2 49/17 55/17
66/22 69/12 69/20 70/4 70/22 72/4 72/25 73/6
76/10 81/9 84/15 89/5 89/7 90/3 91/12 93/15
96/16 97/10 119/7 119/15 120/11 124/12
124/15 125/12 153/21 162/3 166/4 166/16
180/23 203/6 207/2 228/16 231/12 231/21
232/2 239/16
plaintiffs' [7] 102/14 108/15 119/4 150/1
156/14 162/4 169/1
plan [1] 179/15
plane [3] 72/22 78/3 216/21
planned [1] 33/9
planning [1] 18/11
plans [2] 159/23 211/16
plant [1] 216/24
Plastic [1] 19/10
play [1] 190/5
players [3] 64/5 104/3 119/22
playing [6] 17/18 49/3 52/20 181/22 205/23
206/1
plays [1] 113/20
Plaza [5] 1/13 3/2 3/6 4/2 6/2
pleadings [2] 59/14 116/21
please [5] 48/18 49/11 68/5 82/6 170/1

# P

**pleasure** [3] 6/19 9/6 9/15
**plus** [3] 132/21 152/1 168/19
**pocket** [2] 237/24 238/10 238/24 238/25 239/9 239/13 240/13
**podium** [1] 82/3
**point** [66] 10/23 14/2 17/2 17/7 17/10 19/7 24/14 24/16 33/22 42/5 43/8 43/9 43/13 43/14 51/10 58/18 87/16 88/1 100/18 103/9 103/9 103/24 103/24 131/10 136/5 139/4 140/15 152/18 157/25 159/5 160/2 162/11 164/16 166/2 169/8 178/17 178/25 179/13 179/16 180/1 184/11 187/19 192/2 197/4 200/18 201/18 203/7 203/10 203/11 203/16 203/24 211/2 212/10 212/15 215/17 216/8 216/13 217/6 217/18 218/2 218/9 219/4 224/13 231/5 233/23 234/24
**pointed** [7] 19/17 80/5 80/6 122/10 136/13 204/5 236/10
**pointedly** [1] 202/21
**pointing** [2] 139/6 152/19
**points** [21] 7/12 23/4 33/12 41/24 42/1 51/10 55/2 82/6 82/10 99/7 145/1 155/25 170/8 191/12 199/9 199/10 200/19 205/18 216/12 216/20 230/1
**polar** [1] 54/2
**policies** [12] 34/7 34/23 35/13 35/15 37/25 38/5 40/23 160/10 197/10 200/22 200/23 200/24
**policy** [13] 57/5 62/8 74/8 83/1 83/2 154/5 158/16 200/20 204/3 204/10 204/15 225/3 232/20
**political** [3] 27/19 83/8 182/12
**poorest** [1] 214/19
**pop** [1] 170/3
**population** [1] 158/24
**portion** [9] 9/19 17/15 20/16 59/18 81/6 96/18 110/2 121/4 215/11
**POS** [1] 190/23
**poses** [1] 99/5
**poshed** [3] 228/11 242/13 242/13
**posit** [1] 134/21
**posited** [2] 105/12 166/12
**position** [19] 19/24 44/23 65/24 78/18 85/1 95/3 99/10 124/16 142/7 145/18 149/5 149/19 188/20 188/21 207/20 207/20 211/1 213/6 231/24
**positive** [1] 55/6
**Posner** [1] 152/14
**possibility** [5] 141/22 161/1 213/23 213/25 214/3
**possible** [4] 11/15 74/3 81/25 85/18
**possibly** [4] 142/13 151/1 205/4 218/12
**post** [6] 8/3 64/23 64/25 86/1 113/14 218/3
**post-911** [1] 86/1
**post-dating** [1] 64/25
**post-hearing** [1] 8/3
**pot** [2] 27/14 94/3
**potatoes** [1] 172/15
**potent** [1] 110/17
**potential** [10] 19/15 55/7 59/17 64/5 72/19 97/8 97/24 100/10 195/9 212/20
**potentially** [5] 55/8 63/20 87/1 160/24 183/12
**POWELL** [3] 2/15 207/18 207/23
**power** [19] 7/20 15/1 50/19 53/14 53/14 85/23 86/4 86/4 86/7 106/10 119/21 150/5 178/2 181/8 182/7 184/7 190/3 191/18 230/1
**powerful** [3] 47/1 106/3 214/14
**powerless** [1] 106/22
**powers** [2] 96/22 162/14
**practicable** [1] 79/23
**practical** [2] 183/15 183/21
**practice** [9] 53/9 53/13 56/23 57/1 60/17 60/18 60/19 188/2 189/24
**practices** [16] 57/11 58/24 58/25 59/7 59/9 59/20 70/14 70/15 96/24 98/4 98/5 110/13 111/1 181/13 182/9 195/4
**preamble** [2] 220/18 221/18
**precedent** [4] 50/15 74/17 82/13 159/7
**precious** [1] 183/2
**precise** [1] 138/13
**precisely** [6] 31/7 67/3 98/15 131/4 131/21 241/9
**preclude** [2] 75/7 76/21
**precludes** [1] 88/7
**predatory** [1] 111/1
**predicate** [26] 31/16 32/17 32/18 36/18 36/21 37/13 37/23 38/15 39/22 40/11 41/2 57/4 61/1 62/20 199/13 199/21 219/23 220/3 220/7 220/16 224/8 224/11 225/20 226/4 226/8 226/13
**predicates** [3] 58/3 58/17 63/2
**prediction** [2] 19/8 19/13
**predominate** [1] 116/5
**preeminent** [1] 10/14
**prefer** [2] 13/22 144/20
**preferred** [1] 31/20
**prejudice** [1] 121/10
**preliminary** [11] 27/17 34/8 34/24 70/23 74/11 74/14 121/16 145/1 149/25 196/24 216/2
**premised** [1] 76/6
**premium** [3] 160/11 168/22 168/24
**prepare** [1] 234/20
**prepared** [8] 9/15 123/6 136/7 136/9 209/17 226/17 226/19
**preprinted** [1] 133/12
**prerequisites** [1] 89/17
**present** [9] 5/20 64/22 98/21 110/8 140/19 154/18 158/11 159/24 229/21
**presentable** [1] 126/20
**presentation** [1] 233/3
**presented** [5] 158/7 222/21 226/10 226/14 242/11
**presently** [3] 91/24 92/7 117/20
**presents** [1] 157/12
**preservation** [1] 195/5
**preserve** [1] 56/4
**preserved** [2] 74/3 74/4
**preserves** [1] 182/7
**preserving** [1] 60/14
**president** [4] 96/13 107/12 180/16 182/18
**Preska** [1] 35/14
**press** [2] 51/1 214/9
**pressing** [1] 67/12
**pressure** [8] 47/18 53/18 77/25 110/3 119/4 119/5 212/19 213/17
**pretax** [1] 96/25
**pretension** [2] 92/14 92/16
**pretty** [11] 39/21 54/3 55/15 79/16 139/9 161/9 162/6 188/15 220/1 220/6 220/19
**prevail** [5] 119/16 119/18 119/19 186/1 186/7
**prevent** [5] 122/19 152/23 220/11 221/1 226/6
**prevented** [1] 109/11
**prevents** [5] 121/13 152/17 156/25 157/1 163/20
**previously** [1] 153/22
**price** [24] 24/11 42/14 47/14 53/15 77/17 78/12 104/9 104/9 110/4 145/13 145/22 147/13 147/16 147/22 148/21 149/3 150/9 150/17 150/17 152/21 152/24 215/15 215/15 215/21
**priced** [2] 150/15 150/16
**prices** [10] 26/21 38/18 43/13 44/2 109/16
**pricing** [10] 24/9 47/12 47/13 47/17 47/18 104/25 116/22 116/23 116/24 215/18
**primarily** [2] 105/17 173/6
**primary** [4] 18/1 97/15 108/1 114/4
**principal** [1] 96/20
**Principally** [1] 105/1
**principals** [1] 237/14
**principles** [7] 38/13 68/11 73/13 77/12 79/17 102/19 106/6
**prior** [5] 37/16 37/18 37/21 38/16 223/20
**privacy** [1] 100/4
**private** [11] 89/7 153/17 153/25 154/5 154/22 158/14 158/25 159/7 159/11 162/16 194/20
**privately** [1] 180/18
**pro** [9] 15/25 42/22 43/15 43/18 71/2 71/10 119/20 207/3 207/11
**pro-competitive** [7] 15/25 42/22 43/15 43/18 119/20 207/3 207/11
**probably** [9] 18/7 18/22 37/23 82/4 147/21 189/13 198/25 225/19 233/2
**problem** [59] 16/20 16/21 16/22 18/19 20/12 20/14 20/24 21/5 21/13 21/14 27/25 34/4 36/23 40/21 45/13 45/21 47/5 67/3 69/17 70/7 70/13 71/19 71/20 71/21 77/6 77/8 79/11 80/4 82/20 83/25 84/9 85/7 85/14 85/22 86/3 86/18 88/16 99/4 105/2 111/24 114/11 114/12 139/16 139/16 146/10 147/11 151/19 152/23 157/12 159/11 170/11 174/9 182/23 186/22 189/25 210/9 212/3 212/6 212/23
**problematic** [2] 114/16 210/6
**problematically** [1] 110/5
**problems** [15] 19/16 19/17 20/10 42/3 42/11 57/22 59/16 69/22 97/8 120/2 122/9 122/13 139/6 150/2 189/20
**procedural** [1] 67/10
**procedure** [2] 118/14 134/3
**proceed** [3] 8/10 138/22 158/19
**proceeding** [1] 118/3
**proceedings** [6] 6/5 48/17 113/10 128/9 143/17 198/16
**process** [41] 11/10 13/14 13/20 21/24 37/2 50/13 54/23 56/6 56/7 56/9 57/21 66/1 67/5 67/7 67/10 67/22 67/25 68/3 68/8 68/12 68/20 68/25 69/1 69/4 73/18 76/24 78/3 78/22 116/6 116/11 135/18 136/8 137/23 176/9 217/23 217/24 221/15 222/2 222/13 223/2 226/18
**processed** [2] 133/13 220/24
**Processer** [1] 14/22
**processes** [1] 137/9
**processing** [6] 130/3 132/6 132/16 133/16 133/19 138/23
**processor** [2] 122/6 197/15
**processors** [3] 128/7 129/3 142/14
**produce** [3] 79/19 79/20 185/4
**produced** [2] 6/5 27/11
**product** [6] 13/5 40/4 40/7 40/17 77/17 86/22 98/23 195/21 201/24
**products** [8] 40/7 40/25 41/7 61/6 78/12 98/23 195/21 201/24
**professional** [1] 230/5
**professions** [1] 157/15
**Professor** [24] 10/18 14/18 14/24 15/12 15/15 15/17 19/11 20/12 20/25 21/5 22/20 22/23 23/4 23/17 40/24 43/12 66/25 68/19 68/23 114/16 167/10 201/2 218/10 225/1
**Professor Sykes'** [1] 114/16
**profits** [1] 97/1
**profoundly** [1] 102/5
**progeny** [1] 62/17
**program** [10] 134/9 134/12 137/4 138/15 138/21 139/8 140/1 140/5 140/12 197/20
**programming** [3] 197/4 197/10 197/24
**prohibit** [5] 19/23 19/25 53/8 85/1 97/18

**P**

prohibited [5] 176/14 181/24 183/11
prohibiting [2] 83/3 197/2
prohibitions [2] 84/15 84/16
prohibits [4] 19/25 110/16 156/24 218/23
prominence [1] 215/15
prominently [1] 215/20
pronounced [1] 177/23
proof [2] 60/25 92/19
propaganda [1] 47/11
proper [4] 34/25 122/20 151/11 225/23
properly [7] 35/5 71/18 76/7 77/2 199/23
208/12 210/15
property [7] 50/8 67/24 68/3 68/8 69/5
217/25 218/1
property protected [1] 68/3
proponents [8] 56/10 62/19 89/18 93/13 96/4
198/11 199/6 228/13
proponents' [3] 55/23 56/22 57/25
proportion [2] 179/17 179/17
proportionally [1] 193/21
proposal [1] 112/18
propose [7] 126/5 126/8 126/14 142/24
142/24 155/6 240/14
proposed [49] 6/11 49/24 50/9 50/12 50/16
50/23 51/13 51/16 51/20 52/14 52/22 53/3
53/16 55/18 60/4 99/2 100/14 101/2 101/6
102/5 107/14 108/21 109/3 109/13 118/18
124/23 125/3 125/13 125/16 125/17 125/22
126/11 128/2 134/18 142/4 148/9 182/6
182/11 189/7 190/10 195/2 195/10 195/15
195/18 195/21 196/13 198/2 198/11 232/15
proposes [1] 157/19
proposing [1] 36/19
proposition [3] 69/13 134/21 216/22
proprietary [1] 208/15
proprietorship [1] 177/17
propriety [2] 73/9 210/24
prosecuted [1] 240/7
prospect [1] 14/25
protect [10] 87/3 95/23 107/20 117/8 118/3
118/13 158/23 161/1 161/6 221/9
protected [5] 32/25 67/22 67/25 68/3 68/8
protecting [7] 43/17 67/5 69/3 163/21 211/21
215/16 221/1
protection [13] 37/8 73/19 107/24 108/5
110/6 110/25 111/5 111/11 112/4 149/23
160/7 178/1 185/13
protectionism [1] 181/21
protections [2] 125/24 195/23
protective [2] 46/23 48/4
protects [1] 223/21
prove [6] 15/2 15/8 43/19 89/20 89/21 240/1
proved [1] 31/24
proven [1] 89/17
proves [2] 43/14 43/15
provide [11] 52/12 52/16 90/6 96/7 125/23
127/24 181/7 184/3 185/12 196/14 199/22
provided [11] 7/22 50/19 56/12 65/17 91/15
94/5 131/20 150/9 177/2 180/1 219/2
provider [2] 123/23 164/15
provides [12] 14/12 54/20 56/3 98/12 99/2
101/3 131/3 160/9 195/2 198/2 199/13 221/13
providing [3] 29/5 113/23 177/3
proving [2] 15/1 16/22
provision [6] 24/2 52/20 89/4 127/3 149/9
196/15
provisions [19] 35/3 78/24 82/21 97/18
100/19 145/25 146/15 146/19 147/1 147/7
148/1 148/16 150/13 151/23 152/5 152/7
153/2 188/11 223/13
provisions' [1] 147/4
proviso [5] 156/18 156/19 156/25 210/19

211/18
proximity [1] 49/11
prudence [1] 168/11
PSLRA [2] 239/16 239/21
public [12] 13/18 57/4 62/8 83/1 83/2 154/4
158/16 200/20 204/3 204/9 204/15 232/20
publicity [1] 214/4
publicly [2] 13/8 42/22
publishes [1] 100/7
Puerto [1] 158/21
punishable [1] 188/12
punitive [2] 65/13 65/20
purchased [1] 160/10
purchaser [1] 219/1
purchases [1] 100/4
purchasing [3] 53/13 161/4 161/5
pure [1] 66/18
purely [2] 79/13 105/3
purport [2] 43/19 224/15
purports [3] 50/9 62/6 99/18
purpose [4] 12/19 30/8 226/12 235/2
purposes [3] 63/7 64/22 161/10
pursuant [3] 29/1 30/18 30/19
pursue [2] 100/11 158/23
pursuing [3] 68/23 68/24 224/23
push [3] 8/12 8/16 160/23
pushed [1] 8/12
put [38] 8/17 16/36 36/22 37/4 39/15 39/15
46/20 47/2 63/17 64/4 77/19 77/20 79/3 79/3
79/3 79/9 81/17 83/24 86/16 95/5 95/24
103/17 105/23 110/3 113/19 119/4 119/4
134/13 164/19 165/7 165/12 169/20 181/14
189/24 190/6 192/10 210/19 227/18
putative [7] 53/5 54/1 54/7 54/13 54/17
54/24 57/16
puts [4] 86/24 93/9 161/19 182/8
putting [6] 65/22 65/23 83/1 94/2 154/6
214/11

**Q**

quality [4] 160/13 160/20 231/22 231/25
quantify [1] 241/9
quarreling [2] 239/8 239/9
quarter [3] 123/5 138/7 172/8
quasi [6] 155/2 155/3 208/6 209/3 210/23
211/22
quasi-sovereign [5] 155/3 208/6 209/3
210/23 211/22
question [43] 11/2 27/17 29/13 31/11 31/13
32/8 33/11 33/24 40/2 40/20 41/9 41/10 48/24
54/19 57/8 63/16 69/6 75/11 80/17 80/25
80/25 81/4 84/19 86/15 93/11 94/8 94/9
118/20 124/17 133/2 134/5 158/7 163/24
167/16 168/3 178/12 201/13 201/23 202/2
203/24 211/14 217/20 228/15
questionable [1] 55/5
questioned [1] 23/21
questions [13] 40/21 41/15 48/8 48/12 81/23
82/2 83/23 215/6 220/12 226/6 226/19 226/21
226/22
quibble [1] 170/5
quick [1] 47/8
quickly [7] 27/16 27/17 28/9 31/25 49/2 82/6
214/9
quid [2] 71/2 71/10
QuikTrip [5] 196/9 196/10 196/16 197/12
198/2
QUINN [2] 3/18 66/10
quite [11] 15/7 29/15 33/10 40/18 59/9 116/4
167/16 172/8 201/19 208/25 223/4
quo [4] 71/2 71/10 182/7 223/23
quote [8] 34/19 63/6 63/8 63/10 68/14 73/25
126/19 148/8

quoted [1] 112/12
quoting [2] 34/14 117/25

**R**

R-a-y-s-o-r [1] 144/7
racking [1] 163/14
rails [1] 10/17
rainbow [1] 27/15
raise [5] 98/14 102/7 150/19 186/13 192/1
raised [9] 57/22 97/13 104/13 104/15 136/5
155/23 177/24 208/5 230/8
raises [2] 56/19 242/10
raising [1] 193/23
Rakoff [2] 215/13 216/3
Rakoff's [1] 214/23
ramification [1] 173/14
range [4] 134/14 162/13 168/15 237/3
rate [9] 20/23 22/7 79/17 87/21 134/2 149/7
167/9 168/19 236/2
rates [37] 13/23 74/9 77/18 78/13 79/11
82/21 98/14 151/25 163/14 167/5 186/14
195/11 212/16 212/18 228/21 228/23 229/2
233/15 233/16 233/16 233/19 233/21 233/22
233/22 233/24 233/24 234/9 234/13 234/18
234/24 234/25 236/7 236/7 236/8 236/11
236/16 242/9
rather [9] 10/2 11/17 88/4 109/22 148/22
181/19 204/11 225/13 233/15
ratio [3] 160/8 160/9 164/22
RAYSOR [6] 5/22 144/7 191/23 198/9 227/1
227/3
re [15] 1/2 6/14 6/17 6/20 35/1 101/24 104/22
120/9 178/10 209/10 210/25 211/10 211/20
220/12 226/6
re-allocate [1] 6/17
re-allocated [1] 6/20
re-enforced [1] 104/22
re-litigate [1] 209/10
re-litigating [1] 211/20
re-litigation [4] 101/24 211/10 220/12 226/6
reach [2] 138/24 195/15
reached [2] 71/6 103/1
reaching [1] 71/7
react [2] 79/19 183/18
reaction [8] 11/6 21/19 22/24 23/5 24/16
28/3 156/17 202/6
reactions [1] 97/17
read [14] 14/19 15/24 20/25 29/16 59/4 84/24
131/5 188/2 208/8 209/18 220/20 225/5
238/17 239/4
reader [1] 38/22
reading [5] 104/1 167/4 167/5 220/14 224/25
reads [1] 170/12
ready [1] 46/21
reaffirm [1] 52/10
real [11] 86/7 98/12 104/19 152/18 172/20
174/22 177/3 184/4 187/16 201/23 209/8
realistic [2] 21/2 145/15
realities [1] 80/14
realize [1] 81/2
realized [2] 124/6 130/12
really [45] 13/5 21/3 40/5 40/17 41/25 42/8
42/14 43/25 84/15 92/10 114/8 145/19 146/1
149/17 167/9 168/13 170/8 171/12 172/7
174/9 174/14 174/18 176/8 184/7 191/19
194/4 199/10 200/17 200/17 201/19 203/8
204/23 210/22 211/1 211/7 211/12 211/14
212/22 221/11 222/1 222/2 223/4 224/6 227/4
228/5
realm [2] 160/24 203/18
reason [29] 19/22 30/11 30/12 80/17 80/22
81/1 81/11 81/14 81/15 90/8 106/25 112/13
134/16 141/5 142/6 150/3 164/2 166/7 169/4
183/17 185/1 203/5 203/18 207/14 209/21

**R**

reason... [4] 200/21 201/4 222/22
reasonable [12] 8/10 14/25 16/12 19/9 20/8 20/8 26/24 161/14 168/17 187/22 222/12 235/6
reasonably [3] 37/19 41/13 73/20
reasoned [1] 191/15
reasons [13] 21/22 45/15 45/16 60/20 83/8 146/25 152/25 176/16 189/8 189/8 196/16 197/14 198/1
rebate [3] 160/15 160/24 161/7
rebates [1] 163/8
rebuttal [1] 198/11
recall [4] 27/7 34/15 115/1 149/25
receipt [1] 197/9
receive [3] 139/5 162/15 164/4
received [10] 9/17 101/1 124/5 161/24 209/11 211/6 222/2 222/5 223/3 224/10
receives [1] 223/5
receiving [1] 212/19
recent [6] 16/20 23/20 96/19 111/16 197/14 221/2
recently [4] 82/22 140/21 141/2 192/5
receptive [1] 214/21
recess [6] 48/17 128/1 128/8 128/9 143/17 198/16
recognition [1] 105/15
recognize [3] 158/12 236/19 237/18
recognized [1] 52/2
recognizes [2] 114/17 187/20
recommendation [1] 158/1
recommended [2] 156/25 157/9
reconciled [1] 56/8
reconsider [1] 176/4
record [15] 8/2 22/5 23/15 27/4 39/2 47/22 48/24 126/20 136/12 188/2 201/5 222/8 222/15 227/21 228/1
recorded [1] 6/5
recoupe [1] 98/14
recouped [1] 186/12
recover [1] 27/4
recoveries [3] 27/5 27/6 211/7
recovery [6] 130/22 132/21 174/6 211/6 211/11 236/14
rectify [1] 95/1
redefined [1] 122/22
reduce [2] 43/13 95/14
reduced [4] 168/9 169/10 169/13 170/7
reduction [2] 232/11 232/12
reductions [1] 55/2
redundant [1] 169/15
refer [1] 69/22
reference [4] 88/22 92/13 156/5 182/24
referenced [2] 98/10 211/3
referred [4] 160/16 215/12 222/4 227/15
Referring [1] 118/5
refine [2] 233/13 233/13
reflect [1] 27/5
reflects [1] 185/21
reform [2] 44/22 150/8
reforms [3] 96/21 110/23 111/2
refunded [1] 134/11
refusal [1] 23/5
refuse [1] 202/7
refuses [1] 23/7
refusing [1] 14/11
refute [1] 100/18
regard [6] 6/19 80/11 81/1 137/1 186/2 214/5
regarding [8] 48/9 49/24 50/4 50/18 59/6 75/8 137/4 181/16
regardless [2] 186/11 215/19
regional [1] 49/20 196/10
regular [5] 87/17 107/4 141/4 180/3 228/5

regularly [1] 101/25
regulation [6] 45/23 160/6 160/7 160/9 160/9 161/12
regulations [2] 105/5 160/3
regulators [2] 102/1 111/6
regulatory [2] 155/1 161/15
reimburse [1] 239/13
reimbursed [3] 172/1 172/2 172/5
reimbursement [3] 237/24 240/12 240/12
reinterpret [1] 99/14
reiterated [1] 68/10
reiterating [1] 73/13
reject [10] 63/15 81/1 81/5 81/6 87/12 98/17 101/6 102/12 194/2 198/4
rejected [9] 59/12 59/15 60/19 93/19 125/14 154/11 154/15 182/13 209/21
rejects [1] 88/22
relate [5] 62/11 63/4 82/16 148/1 229/21
related [14] 8/5 8/24 11/8 57/12 59/7 70/17 71/13 74/13 75/22 111/18 164/2 173/23 174/3 195/13
relates [3] 58/9 60/16 201/13
relating [2] 63/7 74/8
relation [1] 232/9
relationship [4] 100/5 130/3 132/6 132/17
relationships [3] 44/25 119/10 130/9
relative [1] 186/11
relatively [2] 17/11 17/15
release [204] 11/15 17/3 30/7 30/7 31/6 31/8 31/12 31/14 31/21 32/3 32/11 32/25 33/9 33/12 33/13 33/22 33/23 34/2 36/9 36/15 36/16 36/18 36/20 40/10 40/22 40/22 42/5 56/13 56/17 56/21 57/4 57/7 57/13 57/20 57/23 57/25 58/8 59/13 59/16 59/18 60/11 60/14 62/5 62/6 62/21 63/15 64/18 65/24 70/16 70/25 71/12 71/15 71/18 71/22 72/3 74/7 75/11 76/14 77/4 81/7 81/17 83/13 85/16 86/13 86/16 91/21 92/6 93/5 93/9 94/8 94/10 94/19 95/24 97/15 98/1 98/13 99/5 99/18 100/11 100/19 101/2 104/13 108/22 108/23 110/11 110/16 114/12 116/16 116/19 116/21 120/3 120/13 120/14 120/14 120/14 120/19 120/24 121/4 121/6 121/17 121/24 122/16 126/6 145/3 153/13 153/23 153/23 154/1 154/8 154/14 154/23 156/4 156/10 156/13 156/15 156/18 156/23 157/5 157/16 157/23 157/23 159/4 159/5 159/8 159/9 159/12 159/13 160/15 163/20 165/16 165/17 166/15 173/11 173/14 173/16 173/19 173/21 174/11 174/13 174/19 174/21 175/1 175/2 175/4 176/3 176/25 177/3 178/3 178/7 182/4 184/4 184/9 184/13 184/14 185/1 185/4 185/9 185/10 185/11 186/12 186/17 195/7 199/11 199/12 199/15 199/17 199/19 199/23 200/3 200/22 201/15 202/6 202/15 204/19 208/1 208/9 209/15 209/15 209/22 209/24 210/11 210/16 215/6 216/12 216/20 216/23 217/4 217/5 217/13 217/20 219/19 219/21 219/23 221/24 222/6 223/7 223/10 223/13 224/14 226/7 226/18 228/15 228/18
release's [1] 62/17
released [21] 34/4 35/5 35/15 37/12 38/24 39/12 60/23 62/11 99/12 100/15 116/14 155/14 156/21 174/3 208/12 208/13 208/14 223/22 223/24 228/19 229/10
releases [13] 60/5 63/3 64/18 75/5 113/17 114/13 114/15 153/14 208/5 209/8 209/12 209/18 226/13
releasing [4] 57/2 155/10 174/1 174/8
relevant [4] 15/1 16/3 215/11 230/22
reliable [1] 19/12
relief [110] 13/3 15/18 15/20 18/5 18/6 19/18 23/21 29/1 29/2 29/17 30/2 36/2 36/3 42/11 44/5 44/19 45/22 49/2 49/6 50/10 50/19 51/23

52/12 52/16 53/5 53/16 53/22 54/3 54/20 55/8 55/14 66/21 66/22 69/10 70/12 70/24 74/6 73/2 73/9 75/25 80/11 81/12 82/14 84/13 84/2 84/13 85/12 85/14 85/15 89/1 89/17 90/6 90/10 90/11 90/17 91/15 91/16 91/21 92/20 92/20 93/4 93/7 93/16 93/19 93/21 94/4 97/15 98/1 101/1 103/15 104/10 104/19 105/25 110/6 114/17 114/17 115/3 115/4 116/4 124/11 139/18 140/20 142/2 142/24 145/4 170/24 181/7 185/20 185/24 189/7 195/3 196/14 198/3 200/14 213/11 217/10 218/7 218/17 219/7 221/9 221/13 221/20 221/22 222/11 222/12 223/6 223/6 223/8 224/10
reluctant [1] 9/24
rely [2] 75/3 110/11
remain [1] 155/15
remaining [1] 41/17
remains [1] 63/24
remarkable [1] 104/1
remarks [2] 30/13 196/1
remedied [1] 54/19
remedies [4] 102/11 105/10 153/15 154/10
remedy [4] 52/5 52/7 208/20 209/11
remember [2] 17/1 231/18
remind [1] 128/3
reminded [1] 85/20
reminder [1] 127/18
remote [1] 127/18
remotely [3] 72/9 130/10 136/14
remove [5] 13/21 154/12 154/13 154/21 156/17
removed [1] 153/1
removes [1] 159/13
removing [1] 159/3
renegotiate [1] 102/24
rep [1] 179/25
repeal [1] 22/25
repealed [1] 149/15
repeals [1] 149/2
repeat [4] 106/25 113/13 144/1 201/5
repeated [1] 223/18
repeatedly [1] 203/25
repeating [1] 136/23
reply [9] 58/14 59/21 121/19 150/12 151/4 223/18 228/16 232/14 234/16
report [8] 14/19 56/17 123/10 162/8 225/1 231/3 234/11 234/15
reported [4] 108/16 170/6 203/20 233/11
reporter [2] 6/1 144/2
reporter's [1] 68/5
reporting [1] 233/11
reports [8] 16/7 106/16 107/13 108/16 108/23 110/10 110/23 222/9
represent [20] 49/21 83/4 83/20 94/12 94/15 101/17 106/19 107/4 108/16 129/11 133/24 154/3 170/2 173/4 177/12 180/20 187/16 187/23 194/22 237/24
representation [3] 166/15 231/23 231/25
representations [3] 117/5 200/21 223/1
representative [9] 23/19 104/25 118/12 153/18 208/23 209/25 210/24 238/7 238/8
representatives [14] 22/15 27/24 68/15 118/10 118/18 122/19 178/15 179/4 180/3 189/2 222/24 237/2 237/13 238/10
represented [13] 27/8 101/1 119/7 120/12 153/17 160/4 166/3 182/3 191/16 192/5 222/15 222/17 223/2
representing [6] 42/20 42/23 66/10 159/20 194/18 194/21
represents [5] 106/22 132/22 159/22 180/18 184/19
request [18] 30/22 122/21 127/8 127/14 136/2 149/15 161/21 166/24 166/25 167/13

**R**

request... [8] 168/8 170/24 209/21 210/8
230/7 230/7 232/13 234/22
requested [4] 125/25 232/9 234/23 234/23
require [5] 69/10 116/12 164/1 185/10
197/23
required [2] 28/22 197/5
requirement [4] 77/1 160/23 164/19 219/8
requirements [8] 29/24 51/21 92/20 118/3
161/16 167/2 184/23 197/17
requires [9] 20/2 73/18 84/12 89/15 100/2
190/24 191/4 214/24 225/10
requiring [1] 215/20
requisites [1] 142/1
res [2] 72/16 72/19
res judicata [1] 72/16
rescinded [2] 64/14 64/19
research [1] 172/5
resellers [2] 132/22 138/8
residents [2] 208/21 208/22
resistance [1] 159/3
resolution [2] 85/8 155/5
resolve [4] 111/24 154/15 209/20 235/14
resolved [4] 15/6 30/23 111/18 231/11
respect [38] 11/12 13/19 14/4 15/5 23/14
30/14 41/25 44/25 58/20 66/3 71/17 71/20
89/19 117/19 119/17 124/18 124/22 125/2
125/18 131/1 183/1 186/8 188/23 199/11
201/1 205/18 214/7 216/12 216/20 217/5
217/18 218/2 219/19 222/23 224/2 224/12
224/12 224/20
respected [1] 111/16
respectful [1] 8/7
respectfully [19] 68/18 71/19 72/21 78/2
92/10 112/17 122/21 127/8 127/14 132/3
132/20 170/24 176/24 189/9 194/1 203/5
205/20 236/20 239/5
respond [2] 187/11 200/1
responded [1] 225/1
responding [1] 179/7
response [5] 84/14 96/18 161/24 203/8
203/24
responses [1] 14/20
responsible [1] 98/22
rest [3] 191/12 231/19 231/20
restaurant [4] 194/16 194/17 194/18 195/1
restaurants [1] 136/21
restitution [1] 210/14
restrain [1] 96/22
restraint [1] 64/15
restraints [2] 87/2 212/16
restrict [3] 19/20 181/3 206/2
restrictions [2] 196/20 220/25
restrictive [3] 170/23 181/17 206/4
restructure [1] 28/1
restructuring [2] 16/24 221/3
rests [1] 220/10
result [20] 10/13 12/14 12/15 56/12 62/16
64/7 75/24 76/22 79/19 99/22 109/9 112/12
116/6 134/6 218/19 224/4 232/12 233/16
234/2 234/6
resulted [2] 96/24 232/11
resume [2] 48/16 198/15
retail [7] 24/2 42/10 88/12 98/23 101/15
180/18 187/2
retailer [2] 182/19 189/25
retailers [4] 49/20 97/12 108/11 108/19
retailors [5] 97/20 105/10 105/14 105/18
105/19
retain [1] 157/22
retained [1] 234/1
retaliate [1] 240/2
retaliation [2] 238/21 239/22

**R**

return [6] 33/12 81/20 95/15 135/6 197/10
232/25
revenues [1] 160/1
revert [2] 223/8 229/6
review [4] 67/1 103/5 181/6 234/10
reviewed [1] 157/10
revised [2] 232/15 234/23
revision [1] 185/10
reward [1] 230/7
rewards [2] 196/8 191/2
rhetoric [1] 182/12
Rhode [1] 183/13
Rico [1] 158/21
rid [4] 15/22 21/3 21/6 206/12
ridiculous [1] 140/2
RIFKIND [1] 2/11
rigged [2] 151/22 212/15
right [92] 6/17 6/24 8/4 8/11 8/19 11/9 28/18
29/21 30/5 32/20 33/1 36/14 37/3 37/5 38/25
39/3 39/16 44/17 46/3 48/15 51/14 68/12
68/21 71/23 72/2 73/2 73/4 73/15 74/2 76/14
76/18 77/3 78/10 78/14 78/18 81/18 82/4
83/11 85/3 87/13 87/15 95/17 95/19 102/12
102/16 102/17 111/5 111/23 111/25 116/8
116/12 123/13 130/14 132/15 133/18 135/23
136/19 139/2 140/24 144/10 144/14 163/13
164/18 174/10 174/18 174/22 174/24 176/8
177/7 184/1 184/8 185/14 192/7 192/8 196/4
199/2 202/5 202/16 202/17 202/19 204/7
207/15 213/12 213/13 217/25 218/1 218/8
221/16 228/12 229/15 242/4 242/7
right-hand [1] 29/21
righting [1] 216/25
rightly [1] 17/10
rights [33] 37/17 49/25 50/8 50/14 50/23
51/3 51/15 52/3 54/23 56/6 56/11 65/17 66/2
67/7 67/10 67/22 67/24 67/25 69/2 69/5 72/11
73/3 74/4 81/18 89/10 93/23 94/5 94/7 116/6
116/11 117/11 154/5 182/10
ripen [1] 62/9
rise [4] 34/24 103/23 145/24 222/25
rises [1] 207/13
risk [15] 15/17 65/23 65/25 93/17 99/5 161/6
161/20 162/19 162/20 231/2 231/21
riskier [1] 168/3
risks [9] 15/10 16/19 17/7 59/21 68/23 68/24
231/6 232/23 232/23
risky [2] 65/21 168/2
Rites [1] 4/22
rival [2] 146/9 151/15
river [1] 216/25
road [3] 36/7 116/17 116/19
ROBBINS [4] 1/19 2/1 3/15 171/19
ROBERT [4] 2/24 4/7 4/17 106/15
Robertson [3] 200/24 216/25 222/3
ROBINS [2] 1/12 3/2
Rock [3] 5/8 173/4 237/9
Rockefeller [1] 4/2
role [3] 13/9 104/17 205/5
roll [1] 22/13
room [9] 6/2 7/17 65/6 69/4 127/20 144/8
147/22 177/15 193/13
root [1] 102/21
Ropes [1] 129/15
rose [1] 199/8
roster [1] 127/20
ROTHSCHILD [1] 5/12
roughly [1] 194/24
RPR [1] 6/1
rubber [1] 36/7
RUDMAN [3] 1/19 2/1 3/15
ruining [1] 224/11
rule [102] 12/25 13/4 13/5 15/3 15/4 15/23
15/23 22/1 22/25 23/2 28/11 28/16 29/22

**R**

36/10 36/11 38/9 38/9 38/12 38/14 39/9 39/11
39/24 40/19 43/8 43/10 43/16 44/1 44/6 56/23
57/1 57/2 57/1 58/8 58/15 59/7 59/25 60/17
60/18 60/19 61/4 63/4 64/15 74/8 82/19 83/25
84/1 86/5 86/6 86/10 86/17 86/21 87/12 88/16
88/23 88/24 89/12 90/14 95/17 99/11 99/19
100/2 107/15 114/7 118/3 118/13 119/9 143/2
148/8 148/18 149/2 149/13 149/14 149/15
150/4 150/20 150/21 154/4 163/2 163/5 163/8
173/23 173/23 177/23 181/20 184/17 184/18
195/5 201/10 204/13 204/22 206/3 206/3
206/6 206/11 206/13 216/4 218/7 218/7
223/19 223/20 225/10 228/25
Rule 23 [3] 28/11 118/3 177/23
rule's [1] 52/15
rules [96] 13/16 15/6 20/14 21/10 29/12 32/5
34/7 34/22 37/25 38/5 38/16 38/23 39/5 46/2
46/14 52/25 56/18 57/12 58/9 58/20 58/21
58/22 59/2 59/2 59/8 59/9 59/20 60/2 60/6
60/7 60/22 62/11 62/13 62/14 63/4 64/6 91/18
92/8 94/17 95/20 97/15 99/14 99/19 99/24
100/8 100/8 100/9 108/9 117/1 119/3 119/12
119/19 145/16 146/8 146/20 146/23 147/5
148/10 148/12 148/14 148/20 149/20 150/5
163/25 164/22 173/25 174/3 176/21 181/3
183/20 184/16 184/22 185/12 190/25 191/1
195/4 195/11 195/14 197/17 206/4 207/1
213/16 213/19 223/8 223/9 223/22 223/24
224/1 224/21 225/8 225/8 225/14 225/23
225/25 229/4 229/6
ruling [1] 224/5
rulings [3] 52/23 127/25 197/5
run [6] 10/5 24/7 32/8 165/21 194/7 240/24
running [4] 13/14 13/19 164/24 165/15
RYAN [1] 3/4

**S**

sad [1] 105/15
safe [1] 50/3
safeguarding [1] 67/10
said [83] 7/23 8/21 19/13 24/13 26/10 28/5
35/4 35/5 35/14 35/20 37/14 42/21 50/7 54/18
58/5 58/5 67/9 67/24 68/7 70/18 71/16 72/18
73/8 73/18 73/25 74/10 76/25 81/5 81/24 83/1
85/19 85/20 87/7 87/8 87/18 87/19 90/19 93/5
94/16 104/16 116/1 117/4 120/24 136/13
137/1 137/2 139/24 142/11 146/2 146/4
148/22 150/1 155/21 156/1 156/3 156/14
158/18 158/21 162/6 162/17 170/5 171/4
171/23 172/4 188/17 198/10 199/6 200/2
203/11 204/11 214/7 215/24 216/21 216/22
217/19 217/22 218/10 218/22 219/20 220/6
223/17 224/3 241/25
sake [1] 42/7
sale [7] 14/2 43/14 87/16 88/1 197/4 201/18
215/17
sales [9] 170/13 182/21 183/2 188/8 190/16
190/17 193/20 196/22 197/11
Salle [2] 3/2 3/3
salutary [2] 79/10 134/6
same [26] 30/19 31/7 31/10 31/10 35/14
35/17 39/14 39/22 40/16 46/7 84/18 89/21
93/8 111/10 133/24 133/25 147/13 158/14
166/15 171/20 172/4 209/11 213/22 219/18
223/11 223/24
San [7] 1/20 2/3 3/10 3/16 4/9 5/19 232/6
sat [1] 214/18
SATER [2] 3/21 4/16
satisfied [7] 25/10 25/15 29/24 51/23 76/4
77/1 117/21
satisfies [2] 40/2 176/8
satisfy [1] 154/4
Savage [1] 35/19
save [1] 172/18

saving [1] 102/18
saw [1] 28/3
say [90] 7/6 10/1 20/22 21/2 22/19 22/22 25/2
26/15 29/15 31/12 31/18 35/16 36/8 36/10
36/12 36/13 36/14 36/17 38/8 38/8 38/14
39/14 39/17 39/21 40/20 44/3 46/11 46/21
46/25 47/23 48/2 48/23 66/14 66/16 74/21
75/16 77/12 79/7 85/3 88/20 90/22 92/2 95/8
95/8 95/8 105/11 105/19 106/18 111/21
111/22 111/23 112/14 112/23 113/11 117/2
119/23 121/21 130/6 131/6 131/9 132/1
135/19 136/24 137/17 140/15 145/18 145/21
146/1 147/21 151/4 151/19 151/24 159/12
161/25 163/14 172/14 185/17 193/7 199/9
200/11 204/21 204/22 205/2 212/8 215/7
219/6 227/4 227/14 236/25 240/23
say -- that [1] 131/6
say you [1] 79/7
saying [51] 25/18 27/22 27/24 28/2 29/16
38/19 43/25 50/20 87/11 93/14 98/25 142/12
179/8 183/25 202/16 212/20 213/2 213/3
213/6 214/23 217/13
says [53] 21/1 21/5 22/5 22/20 22/24 23/3
28/25 29/20 29/22 34/3 34/6 36/25 43/12
63/13 68/2 69/9 70/8 71/15 72/8 74/1 79/19
84/7 88/23 89/9 89/24 89/24 90/2 90/3 90/4
90/5 90/25 92/12 92/16 93/8 93/10 94/19
104/3 117/20 130/14 130/18 131/15 156/21
157/19 159/9 190/10 200/13 206/6 206/8
215/13 216/25 217/2 217/12 218/24
scale [2] 134/3 168/20
scales [1] 64/4
Scarver [1] 200/9
scenario [1] 8/1
sceptical [4] 15/2 15/5 15/17 15/21
Schaeffer [1] 131/11 136/4
schedule [2] 7/21 143/4
scheduled [2] 48/15 158/5
schemes [1] 215/18
SCHILLER [2] 4/10 117/16
SCHLAM [1] 4/5
Schoeman [1] 241/3
Schwartz [1] 59/13
scope [15] 31/8 37/15 57/7 76/14 94/10 96/9
98/13 104/13 116/16 120/3 120/24 156/9
195/15 199/23 204/1
scopes [1] 57/23
scrap [1] 187/6
scrimmage [2] 32/3 32/6
scrutiny [3] 54/9 92/14 117/24
se [8] 74/20 74/21 74/23 151/6 151/8 151/13
151/16 207/16
seat [4] 48/18 194/13 198/17 198/18
seated [1] 7/16
second [49] 13/7 36/19 36/21 42/5 51/2 51/9
56/10 61/1 62/5 63/11 63/13 64/16 70/21 72/5
73/1 73/7 73/17 75/11 77/20 77/21 82/25 83/4
99/18 102/23 103/24 113/12 114/14 116/10
117/9 117/23 118/7 118/11 118/17 120/1
120/4 122/1 132/13 136/3 167/2 190/6 193/11
194/20 206/1 210/10 217/5 220/17 230/14
230/23 235/2
Second Circuit [8] 73/1 116/10 117/23 118/7
118/11 118/17 120/1 120/4
secondary [1] 226/20
Secondly [7] 45/24 126/8 145/11 207/1
208/19 210/8 212/22
secret [1] 55/18
Secretary [1] 189/15
section [5] 152/10 157/15 188/7 188/12
218/24
Section 518 [1] 188/7

sector [1] 180/21
sectors [1] 53/17
secure [7] 189/22
secure [1] 189/22
securities [3] 178/10 236/3 239/16
see [33] 17/17 18/10 21/20 22/13 25/5 25/18
26/6 47/20 104/11 123/7 128/2 128/4 134/1
135/20 135/20 139/16 140/18 142/22 144/18
147/8 147/22 151/21 161/3 168/25 191/10
194/4 194/4 219/14 234/17 238/5 238/18
240/8 241/3
seeing [3] 21/18 169/6 241/22
seek [8] 36/1 36/2 57/25 59/5 108/18 185/24
217/10 221/7
seeking [5] 72/18 80/11 139/18 233/23 237/2
seeks [2] 193/12 151/24 159/12
seem [3] 22/14 77/11 79/15
seemed [2] 15/5 16/12
Seemingly [1] 99/23
seems [7] 14/25 25/14 65/20 85/7 178/10
205/12 238/4
seen [6] 25/11 32/10 63/24 94/18 233/4 233/6
sees [1] 38/12
SELENDY [2] 4/15 144/24
sell [1] 227/21
seller [5] 170/13 188/8 188/11 218/25 219/2
sellers [3] 215/13 215/18 215/20
Seltzer [3] 144/5 182/16 182/18
Senator [2] 28/5
send [5] 102/23 106/6 131/25 132/2 136/9
sending [1] 187/5
sends [2] 62/25 159/14
senior [1] 234/13
sense [9] 38/5 114/4 114/5 133/7 133/13
135/17 184/6 224/25 239/11
sensible [2] 80/16 85/7
sent [9] 120/9 131/15 136/3 137/3 137/21
137/23 155/21 213/9 233/12
sentence [2] 77/9 92/14 112/10
sentences [1] 188/1
separate [8] 28/18 43/9 86/20 143/1 143/11
170/25 178/15 238/22
separately [6] 93/17 94/6 192/14 221/21
221/23 221/25
September [1] 1/6 6/16 9/11 143/3 156/20
216/4
September 12th [1] 143/3
September 4th order [1] 6/16
September 9th to [1] 156/20
series [1] 12/7
serious [7] 21/14 50/16 55/4 57/21 186/6
200/18 203/9
seriously [1] 209/20
serve [3] 12/21 180/19 194/23
served [3] 12/19 227/25 228/4
service [14] 8/14 58/13 123/22 123/23 138/15
139/15 140/6 193/3 194/19 197/14 239/14
239/17 239/21 241/14
services [8] 110/5 113/25 131/16 146/7
147/14 160/12 197/16 218/25
servicing [1] 113/23
session [1] 196/25
sessions [2] 10/15 237/16
set [29] 13/16 14/1 49/4 49/4 51/22 69/9
70/14 70/14 70/15 79/21 79/22 82/3 82/25
92/20 96/23 109/8 125/7 132/21 145/5 146/20
146/23 150/18 150/18 157/17 159/7 184/22
196/23 219/5 219/25
Seth [1] 129/15
sets [3] 157/3 159/6 220/19
setting [2] 181/1 195/4
settings [2] 238/12 238/19
settle [13] 21/23 35/6 35/16 35/16 35/18 36/5
37/7 42/7 85/17 91/7 91/8 91/8 167/18
settled [10] 30/3 35/3 153/22 155/5 167/19

167/22 220/12 226/6 231/16 240/6
settlement [334]
settlement [2] 54/16 73/10
settlements [11] 17/24 18/3 30/17 56/2 65/3
75/5 107/15 160/1 167/15 167/17 221/21
settling [7] 37/8 69/18 72/17 73/17 74/18
75/3 146/12
seven [4] 24/20 214/21 234/11 234/14
Seventh [2] 2/14 4/11 73/24
Seventh Circuit [1] 73/24
several [10] 10/16 17/21 164/19 165/7 197/3
197/19 197/24 197/24 218/6 230/4
severe [2] 86/24 147/1
SEYMOUR [2] 3/21 4/16
Shakespeare [1] 188/5
shaky [1] 55/5
shall [1] 188/12
share [4] 93/19 146/6 238/4 240/20
shared [2] 132/22 133/25
she [1] 198/9
she'd [1] 198/10
she's [2] 7/16 127/22
Sheehan [3] 129/4 129/8 138/19
sheets [1] 169/19
shelf [1] 8/18
Sherman [2] 5/5 221/5
Shield [2] 159/23 163/23
shifting [1] 232/19
SHINDER [14] 3/13 6/25 7/1 7/22 42/20
49/10 49/16 66/7 122/10 123/6 187/9 192/5
192/6 217/11
Shinder's [4] 42/13 123/17 144/4 177/10
Shoe [1] 237/4
shoehorn [1] 221/24
shoes [2] 113/21 113/22
shops [1] 136/20
short [9] 52/14 64/14 117/10 134/12 148/20
192/19 229/22 229/22 231/8
shortened [1] 123/16
shortly [1] 31/14
should [51] 8/21 11/18 23/21 25/6 31/12
32/10 36/13 45/8 53/2 54/10 54/11 57/3
60/19 63/15 64/3 74/2 80/25 83/16 84/2 84/3
96/7 101/7 101/9 102/20 102/21 103/4 110/18
116/16 116/19 119/11 124/13 127/3 127/22
139/14 144/9 149/19 151/17 161/9 171/12
187/15 191/17 198/3 199/16 201/14 203/18
204/7 219/9 221/25 227/10 230/1 241/16
shoulders [1] 187/18
shouldn't [11] 69/15 72/3 80/20 85/3 116/19
117/6 130/14 130/22 142/12 153/3 202/7
shout [1] 117/1
shoved [1] 67/8
show [10] 24/10 53/4 55/18 56/2 113/20
121/3 128/5 129/1 129/22 235/3
showed [1] 15/24
showing [3] 12/3 54/8 149/24
shown [1] 223/2
shows [3] 15/17 24/21 234/22
shrug [1] 187/18
Shutts [3] 67/24 73/14 73/22
side [7] 13/2 17/8 102/14 114/24 114/25
133/24 204/6
sided [1] 182/6
sides [2] 16/17 166/13
SIEGEL [7] 5/2 5/3 170/2 177/24 178/21
231/8 231/21
sight [1] 186/4
sign [1] 132/1
signal [1] 62/25
signaling [2] 104/9 181/25
signals [2] 47/14 185/23
signature [2] 13/22 13/24
signed [4] 139/12 140/1 153/23 158/6

Case 1:05-md-01720-MKB-JO Document 101 Filed 11/20/13 Page 274 of 281 PageID #: 7149

significance [1] 88/18
significant [9] 16/19 99/24 110/20 112/13 132/23 139/7 162/12 168/12 236/23
significantly [3] 59/18 183/5 241/8
Silver [1] 167/10
similar [32] 20/5 20/7 37/17 56/18 56/23 57/9 57/17 59/8 59/20 60/17 60/22 62/12 99/19 99/21 100/1 100/9 118/17 119/1 120/8 121/7 122/25 140/21 170/16 171/3 173/23 188/10 195/11 198/14 219/2 223/16 223/19 224/7
similarly [4] 20/9 23/20 183/18 240/23
simple [6] 80/25 134/10 154/10 156/4 213/10 223/4
simplest [1] 154/20
simply [16] 30/17 69/5 74/16 92/18 103/16 119/11 147/25 150/21 154/12 154/18 161/14 166/3 166/16 181/19 187/23 210/23
since [12] 9/12 12/23 12/24 85/6 97/1 97/19 105/6 114/14 187/6 201/21 233/18
single [14] 26/15 52/4 52/11 53/11 54/19 72/21 74/25 77/16 90/5 97/3 114/14 130/17 136/12 166/4
singular [1] 59/4
sir [5] 101/11 129/9 155/17 186/23 228/7
sit [3] 94/13 135/4 142/3
sitting [2] 46/23 213/19
situated [2] 161/10 183/18
situation [4] 119/20 120/8 120/11 171/3
six [3] 27/9 179/21 230/18
sixteen [1] 179/22
size [4] 17/13 54/6 167/9 236/5
sized [1] 237/19
SKADDEN [1] 2/16
skeptical [1] 15/7
skies [1] 163/15
skip [1] 112/6
SLATE [1] 2/16
slender [1] 59/4
slides [1] 230/1
slightest [1] 130/8
slightly [2] 13/24 25/3
slippery [1] 69/2
slope [1] 69/2
slow [2] 68/4 112/8
Slowdown [1] 34/9
small [32] 17/11 17/15 20/16 24/9 25/1 25/7 49/21 53/12 55/9 70/15 87/9 97/3 97/12 99/23 100/1 104/22 106/23 106/23 108/8 114/23 121/20 137/10 170/2 172/7 172/11 172/14 172/15 180/20 194/23 205/10 205/10 228/1
smaller [2] 105/14 240/23
smart [2] 79/16 225/12
smithing [1] 224/8
Snapp [2] 158/21 209/1
so [181] 8/6 8/18 9/15 10/20 10/25 12/22 13/13 13/21 14/14 14/18 15/15 16/1 17/22 19/1 21/20 22/16 23/10 23/20 24/11 24/25 26/10 26/23 27/16 28/15 29/12 29/25 30/19 31/24 32/8 32/21 33/10 33/22 37/4 37/10 37/22 38/8 40/12 45/18 46/3 48/8 48/19 49/2 51/24 51/25 52/19 53/23 56/14 57/14 57/18 70/13 72/17 73/3 74/11 74/15 77/1 78/7 81/22 82/10 83/7 85/3 85/15 86/21 87/12 90/10 90/23 91/5 91/16 92/8 93/18 94/4 95/11 99/20 103/17 104/18 106/10 109/23 111/2 113/13 113/18 114/10 116/21 123/15 124/8 126/1 126/3 127/8 128/7 131/18 134/5 134/14 137/18 138/1 138/8 139/4 139/10 141/12 141/14 141/25 142/2 145/2 145/9 146/1 147/11 149/16 149/21 151/16 151/24 152/3 152/6 152/25 155/5 156/23 157/2 157/18

157/25 161/2 162/23 162/24 163/10 164/14 165/10 165/17 166/14 170/18 173/18 173/21 174/13 174/17 176/1 176/15 176/18 176/24 183/12 183/25 184/1 185/9 187/6 187/15 187/17 187/19 189/4 189/8 191/20 192/21 193/7 193/9 198/15 200/11 201/3 201/14 201/23 202/18 202/21 202/21 203/14 203/22 204/7 204/21 205/12 205/12 205/23 206/9 206/11 207/10 209/6 210/4 210/17 211/1 211/12 211/19 218/15 223/1 224/19 225/17 230/10 234/6 234/20 235/5 235/16 240/13 242/6
so-called [5] 52/19 83/7 85/15 90/10 138/8
social [1] 33/18
software [1] 201/19
sole [3] 107/18 158/9 177/17
solely [3] 77/4 83/11 155/12
solution [7] 22/23 23/3 87/5 156/5 156/7 184/13 208/4
solutions [1] 97/8
solve [8] 45/11 45/12 45/21 45/22 45/23 45/24 212/4 212/6
solved [1] 45/11
solver [1] 47/5
some [86] 8/10 9/18 17/4 17/5 17/13 17/17 18/11 19/16 19/19 20/8 23/15 24/3 24/24 26/4 27/24 29/14 30/25 32/22 37/4 37/11 39/3 44/15 48/2 49/19 53/4 53/14 66/21 80/19 80/24 84/7 84/8 113/19 113/25 117/7 117/17 120/5 122/2 125/17 133/9 134/23 135/22 139/6 143/11 144/13 144/18 145/24 149/15 149/22 156/1 156/2 163/24 164/18 166/5 166/13 170/19 170/25 171/6 171/12 179/10 179/20 185/24 187/11 187/13 188/15 190/11 196/18 196/19 197/17 198/9 199/16 199/22 200/12 200/20 202/10 202/23 203/2 203/3 203/14 203/17 213/2 214/6 233/9 235/6 236/17 237/18 242/12
somebody [3] 38/11 39/16 178/18
somehow [4] 203/25 211/3 211/6 229/4
someone [5] 72/20 114/19 134/21 143/4 225/17
someone's [1] 73/15
something [39] 9/1 16/6 17/22 24/11 28/2 37/12 45/16 56/24 56/25 58/2 76/2 77/13 78/24 82/14 91/12 112/15 121/24 131/25 134/13 137/15 137/19 139/23 142/8 157/7 162/6 183/10 188/17 189/6 190/2 190/12 190/22 192/21 219/9 224/9 228/7 228/10 236/6 236/25 241/22
sometime [1] 33/18
sometimes [4] 24/10 165/6 185/22 185/23
somewhat [1] 226/20
somewhere [1] 169/20
sooner [2] 11/23 215/14
sophisticated [3] 49/20 49/22 88/11
sorry [14] 28/13 34/16 87/18 112/24 129/12 129/16 135/3 155/13 171/10 196/6 197/16 202/4 216/13 229/25
sort [7] 16/1 17/17 77/25 84/7 136/10 155/25 226/3
sorts [1] 67/19
sought [4] 139/19 140/2 140/10 209/15
sound [2] 193/13 217/7
sounds [2] 142/15 202/2
source [4] 86/7 88/16 160/8 237/4
sources [1] 63/20
southern [7] 72/13 120/9 173/6 173/20 231/15 233/18 236/13
sovereign [13] 154/6 155/2 155/3 158/20 208/6 208/6 209/3 209/3 210/3 210/23 210/23 211/22 211/22
space [2] 124/3 144/20
spare [1] 125/9 187/4

speak [17] 6/23 7/7 7/8 7/19 8/16 50/2 105/17 126/20 127/21 153/10 155/16 166/22 180/9 192/13 192/18 196/8 207/18
speakers [2] 192/4 243/2
speaking [4] 6/21 83/10 106/18 193/9
speaks [1] 43/2
special [6] 160/3 160/3 160/6 161/12 161/15 162/5
species [2] 68/2 68/7
specific [15] 43/10 43/22 75/11 75/17 75/18 77/5 90/15 99/7 100/3 103/8 103/20 108/17 125/3 163/25 225/2
specifically [14] 6/12 70/15 86/6 88/22 100/23 118/9 125/17 136/2 146/19 153/14 154/8 199/25 204/25 207/19
speculative [7] 60/24 74/15 79/14 84/21 93/21 162/1 164/17
spend [7] 95/5 164/1 164/5 164/6 164/12 230/24 239/19
spent [6] 160/12 199/6 235/4 238/1 240/19 241/21
spill [1] 44/17
spoke [2] 192/4 192/6
spoken [2] 116/3 116/4
spot [1] 32/6
spots [1] 144/18
Spuds [1] 63/11
spun [1] 17/21
squabbling [1] 222/23
Square [4] 2/17 35/10 35/11 200/6
squared [1] 62/16
squarely [2] 62/19 108/5
St [2] 2/5 4/19
staff [2] 156/11 157/10
staffing [1] 162/13
stage [2] 91/17 121/17
stages [2] 63/18 210/20
staggering [1] 195/16
stand [9] 46/24 49/23 70/2 103/8 119/20 142/11 153/23 155/23 209/17
standard [4] 52/15 54/9 134/3 229/8
standards [2] 154/4 234/17
standing [7] 92/1 92/3 94/14 154/3 177/20 191/25 217/9
stands [6] 69/12 106/8 156/23 176/7 216/22 230/12
Stanley [1] 17/21
Stanton [1] 179/19
star [1] 114/2
stark [1] 51/25
start [13] 11/21 14/18 21/17 21/23 22/8 41/16 43/1 43/5 56/21 165/21 192/23 214/11 215/9
started [5] 82/18 136/8 219/17 224/14 227/6
starting [5] 6/21 12/9 164/25 165/2 165/14
starts [2] 21/6 167/11
state [77] 5/17 19/19 19/23 20/6 20/9 43/24 53/9 79/2 97/17 152/10 153/8 153/9 155/6 155/7 155/12 155/19 157/23 158/9 158/10 158/15 158/15 158/19 158/22 158/23 159/14 170/3 170/9 170/10 171/2 187/12 187/22 188/16 188/19 188/24 190/18 190/25 193/11 193/19 196/23 197/8 207/20 207/25 207/25 208/3 208/7 208/12 208/16 208/18 208/19 208/20 209/12 209/19 209/22 209/25 210/2 210/19 211/4 211/13 211/21 213/2 213/3 213/4 213/4 213/7 213/12 213/13 213/15 213/18 214/1 214/10 214/16 215/12 215/13 216/11 216/11 217/14 224/17
state's [4] 154/19 158/20 158/25 159/3
stated [7] 108/14 178/23 181/11 198/1 214/8 220/9 221/18
statement [5] 118/17 137/22 142/10 213/9 228/1

**S**

statements [6]  27/23 140/23 187/6 187/7
187/8 214/6
states [79]  1/1 1/4 1/9 19/18 19/21 19/22
26/21 45/2 48/7 53/7 54/5 56/17 65/12 67/16
79/4 79/6 84/11 85/4 87/2 100/16 100/20
100/22 101/17 107/25 118/5 118/8 120/15
120/17 120/18 120/19 120/22 153/12 153/19
153/20 154/6 155/22 155/23 157/7 157/13
157/15 157/21 158/5 159/8 165/12 170/22
171/3 171/5 173/5 173/6 176/14 181/23
181/25 183/10 187/17 188/25 189/3 190/7
190/8 190/15 190/17 208/15 208/21 208/22
208/23 209/7 212/23 212/24 212/24 213/5
213/23 214/15 214/17 216/8 217/9 224/17
226/4 231/14 232/8 237/5
states' [2]  9/21 155/8
stating [2]  63/6 151/11
station [1]  193/2
stations [1]  95/6
Statue [1]  213/13
statues [1]  216/9
status [3]  182/7 216/1 223/23
statute [13]  19/19 19/24 20/5 36/25 170/12
170/23 211/13 213/3 213/8 215/14 215/19
218/23 218/24
statutes [6]  19/22 20/6 20/7 20/9 84/22
212/24
statutory [3]  118/21 208/19 232/19
stay [7]  8/7 48/19 49/11 89/11 105/7 184/6
194/12
stayed [1]  105/20
stays [1]  223/7
stealing [1]  227/16
steer [2]  147/19 150/7
stenography [1]  6/5
step [6]  11/22 18/24 121/15 121/18 137/16
238/14
STEPHEN [2]  3/20 66/10
steps [2]  121/9 130/4
Stevenson [1]  73/16
STEWART [2]  3/8 3/10
Stewart's [1]  232/6
stick [1]  128/4
sticks [1]  167/6
still [19]  7/15 7/21 12/17 13/13 13/15 17/16
18/2 63/18 103/3 104/3 109/12 168/10 171/2
174/10 187/21 210/15 229/20 238/14 239/18
Stoia [1]  2/1
STONE [1]  4/5
stood [3]  8/21 85/19 150/1
stop [9]  122/16 130/15 141/12 141/15 142/2
150/21 194/6 214/14 216/18
store [10]  20/20 23/7 23/8 25/21 97/3 190/24
191/10 196/10 196/18 197/4
stores [17]  22/13 22/21 25/22 25/24 26/3
78/13 88/12 96/14 98/21 147/20 182/21 183/9
183/10 190/16 237/4 237/11 241/5
straightforward [3]  74/5 74/5 147/25
strange [1]  47/23
strategic [1]  54/6
strategically [1]  55/19
street [10]  1/16 1/22 2/11 3/9 3/21 4/16 5/7
5/10 5/15 135/15
strength [1]  14/16
strengths [3]  11/2 16/2 16/11
strict [1]  46/23
strictly [1]  179/17
strike [7]  153/2 156/5 157/5 157/6 176/25
209/23 210/8
strikes [4]  174/13 175/2 176/1 176/3
stringent [1]  51/21
strip [1]  95/12

strips [4]  50/25 51/2 51/6 51/13
strixe [1]  160/22
strokes [1]  238/5
strong [3]  158/1 159/14 204/15
strongly [8]  44/20 98/16 101/6 105/21 195/1
195/8 198/2 204/17
struck [1]  56/2
structural [2]  10/4 58/20 59/5 105/2
structure [4]  9/23 12/14 33/17 38/4
struggle [1]  173/14
stuck [3]  163/8 163/13 174/10
studied [1]  47/2
studies [1]  24/10
study [2]  167/10 167/11
stuffing [1]  152/1
Sturm [1]  189/4
stylistic [1]  224/4
subclass [2]  170/25 178/15
subdivision [1]  29/3
subissues [1]  38/4
subject [17]  38/10 52/19 52/24 57/13 59/25
60/2 70/12 82/16 127/23 160/3 160/15 160/18
161/15 188/18 207/4 207/10 209/8
subjected [1]  79/18
subjects [1]  127/23
submission [10]  8/3 8/3 27/13 78/22 78/23
108/6 137/2 143/9 143/10 182/24
submissions [7]  10/22 103/5 130/23 143/1
143/11 231/4 234/1
submit [16]  22/19 62/14 63/5 68/18 71/19
72/21 100/2 105/12 132/3 142/25 162/19
169/22 176/18 232/15 236/17 236/20
submitted [7]  131/6 180/5 216/9 233/8 234/4
234/16 235/17
subscribers [2]  107/22 110/2
subsequent [1]  126/23
subsidiaries [2]  159/21 159/23
subsidizing [1]  214/20
substance [4]  11/21 42/15 182/12 185/16
substantial [13]  7/10 13/13 18/7 19/2 47/25
51/25 93/6 138/16 196/14 202/7 203/22
223/22 241/18
substantially [17]  56/18 56/23 57/9 57/17
59/8 59/20 60/17 60/22 62/12 99/19 99/21
100/1 100/8 145/6 223/16 223/18 224/6
substantive [3]  57/18 65/6 101/21
subtle [2]  40/13 40/14
succeeded [1]  30/11
success [2]  141/17 141/25
successful [1]  216/19
successfully [2]  240/6 240/7
such [38]  8/3 8/14 24/1 51/1 52/4 52/8 53/15
55/21 56/4 56/9 57/2 57/4 59/3 59/8 59/22
60/11 60/18 60/19 60/24 62/3 62/13 62/16
63/15 64/7 65/19 75/25 89/6 90/2 93/11 97/5
100/3 100/12 108/7 110/17 127/16 160/19
182/5 238/13
Sudbury [1]  4/22
sudden [1]  120/12
sue [3]  70/11 163/14 204/12
sued [11]  35/7 35/17 36/4 42/7 69/15 70/20
105/19 121/12 122/24 193/2 200/16
suffer [3]  76/16 241/7 241/8
sufficient [6]  20/17 47/22 80/7 84/16 108/13
184/5
sufficiently [3]  37/20 76/20 109/3
suggest [7]  31/19 54/11 92/10 126/2 147/15
154/23 202/10
suggested [10]  80/20 122/8 132/25 136/8
156/19 157/7 168/18 202/13 211/18 212/25
suggesting [1]  47/20
suggestion [3]  29/14 187/13 188/16
suggestions [1]  103/9
suggests [1]  90/22

suing [2]  118/24 118/25
suit [3]  23/11 25/19 27/9
Suite [13]  1/19 2/2 2/6 2/9 3/6 3/9 3/16 4/8
4/19 5/5 5/13 5/15 5/18
suited [1]  28/1
SULLIVAN [1]  3/18
sum [1]  17/23
summary [3]  16/8 17/1 182/5
sunsets [1]  53/22
super [2]  50/3 63/11
superficial [1]  57/18
superlatives [1]  66/13
Supermarkets [1]  180/22
superseded [1]  126/24
Superspuds [3]  61/2 120/2 120/4
supervised [2]  12/8 216/17
supplemental [2]  234/12 234/16
supplier [2]  237/9 237/10
supplies [1]  45/23
support [15]  44/19 44/20 45/15 55/17 56/12
66/17 111/17 112/13 113/14 170/4 171/13
180/6 187/8 197/23 226/24
supported [2]  46/4 69/23
supports [2]  72/9 213/14
suppose [3]  64/3 95/4 147/14
supposed [3]  32/1 149/22 150/25
Supreme [16]  50/7 50/15 51/22 52/2 54/14
54/18 67/23 68/2 68/10 73/13 73/24 118/5
158/2 158/3 158/18 209/1
surcharge [69]  14/6 18/18 19/20 20/3 20/23
21/6 22/1 22/22 23/9 43/8 43/10 43/16 44/1
44/6 77/17 78/23 83/25 84/1 84/11 84/16
84/22 90/14 97/21 97/23 110/1 146/21 147/18
148/2 149/15 150/4 150/20 164/8 164/12
164/14 170/11 170/15 170/17 171/1 176/12
176/15 176/16 176/17 181/19 183/10 183/12
183/13 183/14 183/22 184/3 185/1 188/9
190/18 191/8 196/15 196/25 197/6 197/8
197/13 197/19 201/10 203/12 203/13 206/3
206/7 206/7 206/14 212/20 218/8 218/25
surcharged [1]  206/10
surcharges [9]  21/18 22/14 26/20 149/13
176/15 197/2 197/25 218/23 226/19
surcharging [67]  18/8 18/16 18/19 19/6
19/15 19/17 19/23 19/25 19/25 20/17 20/22
21/8 21/10 22/8 22/20 23/14 23/19 23/21
23/21 26/25 43/13 43/19 43/24 46/2 47/4 47/6
47/7 47/11 47/15 48/1 52/23 53/8 53/16 55/1
55/14 77/20 79/20 86/22 87/4 97/16 97/17
109/25 145/12 145/22 148/8 148/13 164/3
181/16 181/24 182/25 183/7 184/12 185/7
189/6 189/19 189/22 190/9 190/24 193/10
196/21 197/23 206/2 207/4 207/10 212/16
214/1 214/8
sure [23]  14/20 15/19 17/1 26/14 29/15 31/9
46/24 91/8 92/13 163/5 189/18 213/1 215/8
231/19 235/11 235/13 235/16 236/21 238/15
238/15 238/24 241/25 242/1
surely [2]  65/14 203/18
surgery [2]  186/16 186/19
surprise [2]  43/17 215/16
survived [2]  12/7 12/12
SWEENEY [3]  1/20 3/17 226/18
sweeping [1]  110/11
sweet [2]  64/14 235/1
swinging [1]  144/19
swipe [1]  109/19
switch [1]  191/5
Sykes [24]  14/22 15/12 15/15 15/17 19/11
20/12 20/25 21/5 40/24 55/3 55/7 56/16 66/25
68/19 68/23 87/5 92/24 93/1 94/1 94/3 162/6
162/17 162/20 201/2
Sykes' [6]  14/18 14/19 14/24 114/16 225/1
231/3

Case 1:05-md-01720-MKB-JO   Document 1394   Filed 11/20/13   Page 276 of 281 PageID #:

**S**

Sykes [1] 50/18
symptom [1] 71/21
system [6] 45/6 45/13 101/22 197/22 204/15 212/13
systemic [1] 111/24
systems [6] 111/14 129/11 129/17 137/1 190/23 190/23

**T**

T-Chek [1] 196/20
tab [10] 11/23 12/22 17/12 17/12 17/25 24/20 28/13 215/10 222/20 229/25
table [7] 51/24 103/3 104/20 104/21 162/16 191/19 193/16
tabs [2] 28/12 229/20
take [65] 6/22 8/8 8/10 8/17 18/21 21/9 21/20 22/16 23/6 23/7 48/13 48/14 48/16 52/22 52/24 52/25 53/15 54/16 55/13 70/5 72/18 73/15 77/23 80/16 81/19 82/7 84/8 88/6 91/24 109/25 114/10 127/22 127/23 130/21 137/18 142/23 143/16 153/11 158/1 158/25 164/11 169/14 185/22 188/20 190/12 191/18 194/13 197/24 198/7 198/15 198/18 209/19 211/19 212/21 226/23 229/12 232/24 236/18 238/5 238/7 238/8 239/23 240/4 241/6 242/14
takedown [1] 232/11
taken [18] 19/24 29/3 48/17 50/8 95/3 99/10 101/4 104/20 104/21 121/6 121/15 128/9 165/9 174/18 188/19 198/16 201/8 233/7
takes [4] 71/22 142/6 181/3 181/17
taking [13] 69/23 70/2 78/17 87/19 87/19 106/17 113/24 165/6 165/13 194/5 218/20 237/19 239/7
talk [12] 10/25 20/22 88/25 92/23 107/8 113/8 178/5 201/3 215/5 220/8 226/18 226/19 197/16 197/19 212/3
talked [8] 25/23 112/6 184/12 184/13 196/17
talking [14] 17/22 73/7 75/4 132/5 132/14 137/8 156/9 156/12 177/20 178/6 178/7 179/1 179/21 225/2
talks [5] 73/17 88/24 127/6 167/5 179/19
tandem [1] 185/2
tantamount [1] 110/7
target [8] 42/9 83/20 86/18 88/10 88/10 95/4 95/14 199/1
task [1] 7/4
tasks [2] 169/15 169/15
tautologically [1] 220/8
tax [7] 159/12 193/20 193/20 193/20 193/20 197/9 197/11
taxable [1] 197/8
taxes [1] 193/24
taxing [1] 191/1
TBK [8] 37/10 37/14 38/13 40/9 73/5 200/4 220/9 226/2
team [1] 233/25
technically [3] 165/25 165/25 219/8
technologically [1] 56/20
technologies [19] 56/16 58/1 58/4 59/3 59/10 59/17 60/2 60/5 60/8 60/11 60/12 60/16 62/18 63/6 71/17 71/20 98/5 98/9 99/9
technology [27] 32/5 32/16 33/4 33/5 34/1 36/11 38/23 39/14 39/22 40/2 86/6 94/22 94/23 94/25 95/6 95/8 95/11 95/15 201/1 201/7 203/3 224/13 224/20 224/22 225/2 225/11 225/15 225/17
Tel [1] 6/3
telegraphs [1] 62/6
telephones [1] 58/11
tell [12] 25/4 27/13 95/16 127/22 129/23 129/25 135/20 137/18 176/13 176/15 177/21 192/22

telling [5] 46/18 76/17 76/19 97/19 102/4
temptation [1] 67/13
ten [14] 21/25 22/2 49/17 53/3 65/4 79/4 79/6 132/21 135/9 142/23 170/22 171/2 192/17 193/3
ten-day [1] 142/23
tend [2] 38/18 105/18
term [6] 19/14 32/18 57/15 188/13 198/3 227/8
terminology [1] 136/5
terms [22] 22/24 35/5 43/10 43/22 57/9 57/23 66/25 72/23 74/1 81/6 95/23 110/15 136/5 145/22 153/4 161/4 161/19 163/5 168/7 168/9 177/3 186/19
term's [1] 54/13
terribly [1] 220/20
terrific [1] 67/21
territory [1] 143/11
test [12] 27/21 28/25 37/13 39/22 40/9 41/2 151/11 199/13 199/17 199/21 199/21 220/10
testified [4] 23/17 23/18 23/20 214/7
testimony [1] 218/10
Texas [1] 173/7
than [66] 10/2 12/14 13/18 25/3 33/14 33/14 40/13 40/14 43/11 47/16 48/10 48/15 50/11 59/11 65/24 77/7 87/19 88/12 88/14 88/15 88/21 89/20 91/15 96/25 98/2 98/24 101/18 101/19 109/22 116/11 119/20 121/24 123/16 123/23 127/11 132/24 134/2 135/7 137/3 139/4 141/8 148/23 159/22 168/1 168/3 168/5 168/11 169/4 169/23 170/7 170/18 181/19 182/20 204/6 205/3 205/21 206/4 218/1 218/8 218/14 220/22 225/18 227/10 233/15 233/24
thank [75] 33/1 44/8 44/9 44/13 48/11 49/13 66/6 66/7 66/9 83/18 96/10 96/11 98/18 98/19 101/10 101/11 106/11 106/12 112/10 112/17 112/19 117/12 117/13 123/2 123/3 127/17 139/2 143/15 144/21 153/5 153/6 155/17 155/19 159/16 159/17 166/17 166/18 169/24 169/25 172/20 172/23 177/8 177/9 180/10 182/14 182/15 186/23 186/24 189/11 189/12 191/21 191/22 192/24 194/8 194/11 196/1 196/3 196/7 198/5 198/6 199/3 207/17 207/21 207/22 211/24 219/12 219/13 219/15 226/15 226/16 226/18 228/9 242/3 242/7 242/15
thanks [2] 8/12 180/8
that [1757]
that's [148] 8/11 8/25 9/3 16/1 19/7 21/15 23/3 24/11 24/25 25/5 25/25 27/20 28/1 28/6 28/7 28/22 30/11 31/3 32/4 32/23 32/24 33/22 34/18 34/25 35/8 35/18 37/6 38/24 39/1 39/14 39/21 40/8 40/9 40/13 41/14 41/19 43/14 45/22 46/13 46/13 46/20 46/20 47/19 56/25 69/11 70/6 71/2 71/14 72/8 72/24 76/9 76/13 76/14 81/8 81/14 81/22 82/22 84/21 86/17 86/18 86/22 87/6 87/7 89/4 89/10 89/25 90/16 91/20 92/7 93/18 93/24 94/14 103/5 103/24 104/17 111/12 114/10 119/5 121/7 130/12 132/15 133/20 134/11 135/18 140/20 141/14 141/20 142/8 145/14 145/15 154/7 154/21 158/4 159/1 160/16 161/21 163/16 167/14 169/12 171/2 171/25 172/11 172/17 172/20 173/16 178/4 178/16 179/12 179/18 179/24 180/3 180/5 183/3 184/18 188/15 189/6 190/15 190/17 190/22 193/14 194/23 200/24 204/23 205/16 205/17 205/17 208/15 209/18 210/9 210/17 211/1 213/24 214/25 217/13 217/24 218/4 218/23 219/7 223/11 223/12 224/6 226/12 227/8 228/7 229/11 232/16 232/18 235/13
the -- one [1] 118/8
the point [1] 203/11
their [168] 9/24 12/13 13/21 16/3 16/16

19/19 20/16 20/19 21/1 22/13 22/21 22/21 27/12 27/5 27/5 38/18 38/22 46/3 48/6 49/25 50/9 50/25 51/1 51/2 51/3 51/6 51/14 51/17 54/6 54/24 54/23 55/20 56/4 56/6 57/17 58/8 58/15 58/15 58/20 58/21 58/23 59/7 59/21 60/1 60/14 64/6 66/23 68/15 69/21 69/25 70/2 78/13 79/25 86/4 86/7 86/19 88/6 92/7 92/8 92/8 92/9 93/19 95/20 98/7 99/10 99/14 99/15 99/23 102/7 105/23 105/24 105/25 106/2 107/1 107/2 107/3 107/5 117/1 119/6 120/6 120/20 121/19 130/1 130/7 133/15 133/17 134/10 134/15 135/18 140/4 140/4 140/8 140/9 146/17 147/19 147/20 149/3 150/12 151/4 151/15 152/19 153/4 153/13 154/7 154/7 154/8 155/8 156/20 159/12 159/23 162/13 165/9 165/12 168/10 168/11 168/21 168/23 169/13 169/20 170/11 171/13 171/13 171/14 171/15 173/14 173/18 174/3 174/21 176/12 176/21 181/4 181/12 182/9 187/18 189/1 190/10 191/9 197/22 205/5 205/25 206/12 206/14 207/7 208/3 208/3 208/15 208/21 208/22 211/22 212/6 212/16 214/19 217/13 221/4 225/3 225/8 229/4 233/11 237/17 237/20 237/25 238/10 239/10 239/18 240/4 241/7 241/7 241/7
them [103] 6/18 7/11 7/19 10/10 16/25 19/18 21/11 22/13 23/25 24/4 25/19 27/10 30/11 41/25 44/25 45/7 45/20 47/2 49/22 49/25 50/8 50/14 50/25 51/2 51/4 51/6 51/15 52/10 59/8 63/23 66/14 66/17 70/11 77/24 82/9 84/24 84/24 84/25 85/12 85/14 85/15 87/2 87/16 87/19 88/7 93/18 93/23 102/10 102/11 103/24 103/17 113/18 117/9 122/3 125/14 125/15 131/11 132/4 135/11 135/18 135/22 135/22 137/16 138/16 139/15 141/9 141/13 144/13 144/14 144/20 149/11 152/20 154/1 169/22 172/13 174/21 176/13 177/16 180/19 187/14 187/19 195/22 197/16 197/23 207/2 210/20 213/20 214/19 218/12 219/7 221/1 221/7 226/13 226/22 230/18 233/5 237/3 238/5 238/6 238/12 240/22 241/1 241/3
themselves [13] 22/17 65/9 68/14 85/11 85/13 86/20 87/3 108/20 146/16 213/11 221/1 221/9 233/10
themselves are [1] 108/20
then [60] 9/12 11/4 17/3 18/5 21/5 21/7 31/6 35/17 36/5 39/23 40/5 42/7 44/3 67/12 73/12 76/23 77/10 82/5 84/2 84/5 84/7 85/9 90/5 91/12 93/16 94/1 94/16 124/6 139/8 140/2 142/23 143/1 143/2 143/11 144/4 144/18 150/21 153/2 153/11 154/23 155/14 157/7 170/17 176/14 176/4 188/17 198/23 198/24 198/25 200/15 201/23 205/22 223/9 229/7 231/10 231/15 233/15 234/1 238/3 238/22
Theodore [2] 216/10 216/16
theories [2] 42/4 219/6
theory [6] 40/17 45/24 46/8 52/25 158/13 207/10
there [205] 8/18 9/13 9/18 10/15 12/8 12/10 13/13 16/17 17/3 17/12 19/11 19/17 19/22 20/7 20/13 20/18 21/12 21/13 22/17 23/15 23/23 24/1 24/9 25/7 26/20 27/8 27/14 27/23 29/1 29/11 29/14 30/1 32/21 35/2 35/3 37/19 38/20 40/2 40/4 43/15 43/23 43/24 53/3 54/4 56/8 58/3 63/2 66/12 67/6 67/13 67/17 72/11 72/18 72/21 73/4 74/6 74/16 74/25 77/11 79/6 80/2 80/12 80/14 80/14 80/15 80/22 81/2 82/13 82/18 84/12 87/2 89/13 90/8 102/13 102/19 102/25 104/8 111/13 116/13 118/20 118/22 118/24 120/11 120/14 120/16 120/19 120/25 121/4 121/12 124/14 130/4 130/11 130/15 131/4 133/7 133/8 134/1 134/19 135/14 135/14 135/25 136/12 137/15 137/16 138/6 138/7 138/7 139/20 139/25 141/17

**T**

there... [95] 141/19 141/19 144/17 144/19
145/16 147/12 147/21 148/3 148/7 150/1
150/11 153/11 153/18 159/2 162/18 163/2
163/3 163/25 164/17 167/21 168/3 168/4
168/6 169/13 170/10 170/19 171/2 176/20
177/15 184/9 185/3 186/2 186/16 187/13
187/24 188/15 188/24 190/11 192/21 194/12
196/1 197/20 199/11 199/16 199/18 199/25
200/12 200/14 200/18 201/7 201/9 201/20
202/10 202/17 203/8 203/14 203/20 203/22
204/21 204/22 207/2 208/11 210/7 213/22
213/23 214/3 214/12 214/16 214/17 215/6
215/10 216/2 216/9 217/15 218/3 218/6
220/10 222/15 224/3 224/4 224/8 225/24
225/25 226/1 229/20 230/1 230/19 232/22
234/6 234/12 235/11 237/1 238/21 241/25
242/1

there's [75] 7/20 22/5 32/2 34/20 36/8 39/3
39/6 39/7 41/6 41/8 42/1 42/3 44/23 46/12
47/15 47/24 68/22 68/24 74/15 74/19 79/21
79/22 80/3 81/2 81/8 85/8 86/22 89/4 94/6
97/21 113/14 123/8 127/7 135/16 136/17
141/4 141/16 141/18 141/22 141/25 142/10
163/12 164/21 167/16 169/18 174/9 174/14
174/18 176/8 178/15 179/18 183/21 184/5
184/7 185/15 189/20 190/7 191/7 200/11
200/12 201/3 201/12 203/5 204/9 204/14
204/15 216/6 216/21 217/7 219/10 223/15
228/16 230/9 231/2 232/1

thereby [2] 51/3 64/5

therefore [12] 41/9 52/18 60/25 90/17 124/17
160/21 167/25 168/4 198/3 205/7 217/4 226/4

these [113] 10/10 11/25 15/8 15/14 17/7 19/4
20/7 20/9 22/12 22/16 27/18 28/7 28/15 32/5
33/17 33/22 38/23 39/18 40/21 45/3 45/3 45/5
45/18 54/25 58/4 60/24 67/1 67/3 67/10 68/10
68/23 68/24 78/23 79/17 83/12 85/4 89/13
92/3 99/11 102/1 102/23 102/24 104/2 105/8
106/21 113/10 130/8 130/17 131/20 131/21
132/16 135/12 141/5 141/7 141/20 147/1
147/4 152/5 152/6 152/25 153/15 161/6 163/6
163/25 164/25 165/1 169/2 171/4 173/25
174/22 176/16 178/2 178/17 179/4 180/2
186/5 200/13 200/23 201/5 204/12 205/19
207/1 209/7 209/8 209/12 210/11 210/24
212/5 212/24 212/24 213/16 213/23 214/20
216/18 217/2 221/21 224/3 227/5 227/7
227/15 227/16 227/19 232/6 232/24 234/20
237/13 237/18 238/1 238/5 239/21 240/3
240/18 240/23

they [327]

they'll [3] 96/5 96/6 240/21

they're [69] 21/19 22/22 23/8 23/8 23/24
26/24 27/21 28/2 30/2 37/8 44/3 44/4 44/5
48/18 69/8 82/4 85/15 88/5 93/22 103/3
106/25 116/5 121/11 121/24 121/25 122/3
135/15 136/22 141/8 141/8 144/10 144/10
144/12 145/21 149/1 152/3 163/11 163/25
164/20 165/13 165/24 166/9 166/14 168/10
172/9 178/8 179/3 179/8 179/16 188/22 191/7
191/22 205/13 205/24 207/3 212/19 213/7
214/21 223/11 229/24 229/25 237/3 237/3
238/12 238/12 239/10 239/10 239/14 239/18
they've [12] 47/11 72/15 88/13 105/23
105/25 107/2 107/6 171/9 197/19 208/5
209/22 223/16

thing [37] 28/18 30/5 34/2 35/7 35/17 36/4
47/8 48/23 64/3 82/12 89/21 92/12 93/9 96/1
104/8 106/1 117/19 132/9 134/15 135/16
135/17 136/12 137/15 138/18 149/11 167/6
171/7 172/4 172/16 178/4 190/20 190/21
203/25 213/19 224/24 227/13 227/13

thing Honorable [1] 172/4

things [42] 9/18 12/23 17/7 22/12 24/20
15/15 19/9 19/11 20/9 22/21 22/2 23/15
23/15 23/25 24/10 25/23 41/6 69/11 69/11
69/16 76/11 77/5 80/3 80/6 80/14 82/16 85/5
104/9 116/22 117/17 119/8 126/4 131/22
136/6 145/16 161/3 164/10 165/4 171/12
185/12 193/8 194/3 201/4 227/19 228/17
228/18 229/9 234/7

think [189] 9/10 10/4 11/18 14/22 14/25 16/2
17/4 18/9 18/22 19/1 19/9 20/2 20/7 20/16
23/12 23/15 23/22 24/7 24/11 24/14 25/7
25/11 26/23 26/9 27/19 28/6 28/7 28/9 28/17
29/7 29/13 30/4 31/11 32/2 32/13 32/5 32/24
33/21 34/15 34/20 36/13 37/24 40/12 40/12
40/13 40/14 41/10 47/22 49/4 67/6 76/1 76/25
78/15 81/13 87/16 91/4 93/24 96/3 97/19
102/19 103/22 104/12 104/14 111/4 114/19
119/18 119/18 129/24 133/15 133/17 133/23
133/24 133/24 133/25 134/6 135/21 137/4
137/14 137/19 139/13 139/13 140/14 141/16
141/17 141/18 141/22 141/25 142/24 145/4
145/20 146/10 150/3 154/22 155/25 161/8
161/9 162/6 166/13 169/5 170/6 174/16
178/16 178/21 178/22 178/23 179/24 183/17
184/3 184/12 184/20 184/23 185/6 185/9
185/15 186/18 189/23 190/3 190/4 190/20
191/12 191/14 191/16 191/17 191/18 198/21
198/24 198/25 199/8 200/4 200/17 200/18
201/4 202/24 203/5 205/20 207/18 208/7
208/8 208/14 208/18 209/2 209/15 209/18
210/2 210/6 210/10 210/17 211/13 211/19
212/25 216/21 217/19 217/24 218/22 219/7
219/9 219/17 220/18 221/11 222/20 223/1
223/16 224/6 224/12 224/13 225/4 225/17
226/2 226/12 227/4 230/13 230/19 230/21
230/24 231/23 234/17 236/10 236/20 237/25
239/5 239/12 240/15 240/20 240/21 241/3 241/4
241/6 241/14 241/16 242/13

thinking [6] 21/16 40/3 95/9 141/5 142/5
220/14

thinks [4] 34/2 67/21 136/10 143/4

third [4] 51/6 51/9 113/16 140/6

third-party [1] 140/6

this [506]

THOMAS [4] 3/4 5/8 144/5 180/16

thorough [1] 181/6

thoroughly [1] 14/19

those [101] 10/23 13/19 15/24 19/21 21/21
22/3 24/23 26/4 26/16 27/8 27/15 35/4 35/14
41/14 46/14 50/4 57/12 59/2 64/23 67/21
69/16 70/1 70/7 74/4 77/20 79/3 80/10 83/3
84/15 86/23 88/18 92/18 100/8 103/14 105/18
105/20 105/22 108/15 110/14 111/2 111/11
113/24 113/24 121/1 122/7 123/11 125/7
125/10 127/14 127/18 128/6 128/7 129/2
137/11 138/19 138/25 140/21 140/22 144/8
146/23 151/21 152/8 160/21 167/23 171/5
177/6 179/23 187/14 187/14 189/3 189/8
190/17 191/1 191/9 198/14 199/10 200/19
200/23 202/15 208/8 208/9 208/17 209/2
209/4 209/7 209/9 209/10 209/13 209/14
210/2 210/13 210/15 211/7 213/19 221/1
222/25 223/23 224/19 229/9 231/11 238/20

though [22] 15/15 20/15 21/3 48/2 57/6 58/3
60/4 62/17 72/17 79/15 100/15 108/13 148/8
165/20 165/22 180/1 187/11 197/12 199/19
210/1 226/9 239/15

thought [17] 15/23 17/6 19/12 21/22 39/20
45/16 45/24 49/1 94/9 135/2 136/8 162/2
185/17 220/15 224/21 227/24 241/20

thoughtful [1] 45/1

thousand [2] 138/12 193/3

thousands [6] 49/21 95/6 97/6 133/1 136/20
138/10

THRASH [3] 5/7 5/8 173/3

threat [1] 10/24

threaten [2] 20/3 147/1

threatened [1] 29/4

threatens [1] 56/14

three [26] 10/25 17/12 33/9 38/21 47/24
50/22 69/22 70/1 70/9 93/2 99/7 113/8 125/3
126/4 150/1 165/2 165/14 180/21 188/1
189/19 199/8 199/10 230/19 232/4 241/5
241/5

three-legged [1] 69/22

threshold [6] 103/2 110/15 160/14 160/23
163/16 164/16

through [36] 10/11 23/16 23/25 24/13 27/16
45/25 45/25 46/1 59/4 65/18 65/24 66/21
69/13 71/12 72/7 74/15 80/22 84/3 86/4 94/25
100/21 103/6 122/11 125/8 138/8 138/21
147/9 151/15 186/13 202/17 215/2 234/1
234/4 234/21 235/15 237/6

throughout [3] 67/11 73/19 105/5

throw [1] 138/9

thrown [1] 215/1

thumb [1] 64/4

thus [4] 138/21 193/11 193/22 215/16

ticket [1] 189/25

tide [1] 64/9

tie [4] 62/2 68/15 157/23 193/19

time [82] 6/16 6/17 6/25 7/21 18/10 18/21
19/1 21/20 21/23 22/16 27/16 32/7 34/8 41/17
44/15 58/15 64/15 69/19 70/10 85/21 103/12
103/12 103/15 105/5 105/6 113/12 122/25
123/12 123/17 127/13 131/14 131/20 131/21
134/12 142/10 149/16 153/10 165/6 165/22
168/23 169/19 180/8 180/15 182/2 182/8
184/20 192/19 195/6 195/25 197/20 197/22
198/5 198/13 199/5 204/19 207/18 213/1
227/6 230/20 230/24 233/1 233/7 233/11
233/12 233/14 234/21 235/4 236/19 236/22
236/23 237/19 237/25 238/2 239/18 239/18
239/24 240/4 240/5 241/1 241/6 241/21
242/14

timely [3] 7/6 7/18 127/21

times [8] 2/17 10/16 16/20 25/6 73/19 179/21
179/22 199/20

tinkering [1] 186/16

tiny [4] 24/18 87/3 121/9 121/15

tobacco [1] 193/20

today [70] 14/3 18/25 39/7 39/10 40/8 49/23
50/17 52/17 53/18 55/10 55/25 57/1 58/2 58/5
59/1 59/10 59/24 60/23 62/12 62/14 62/18
65/6 66/14 69/18 71/16 71/25 73/25 74/10
92/2 98/7 99/7 100/9 105/17 107/1 107/14
116/21 117/18 118/21 119/23 122/8 124/19
141/11 143/2 145/5 158/13 159/22 159/24
160/5 161/18 166/22 168/25 170/11 171/7
176/7 180/9 189/9 193/13 193/16 194/2 196/8
196/17 198/1 199/14 200/22 201/19 202/17
203/8 204/11 225/4 240/19

today's [1] 167/15

together [12] 13/23 88/19 93/10 104/14
142/12 146/5 146/7 146/14 153/3 153/3
195/22 219/24

token [1] 103/14

told [17] 22/7 27/22 28/1 45/20 46/4 48/24
71/11 71/15 71/25 103/12 119/5 119/11
119/13 132/9 216/3 227/8 227/18

Tom [1] 173/3

tomorrow [2] 74/12 74/15

tomorrows [1] 111/1

too [18] 11/24 36/24 43/14 43/15 45/3 45/5
68/4 102/25 103/20 110/2 110/3 121/4 138/12
143/4 143/4 152/24 216/6 236/18

took [4] 16/7 101/8 121/18 241/1

tool [1] 26/25

# T

top [11]  15/19 25/20 25/23 26/2 26/9 82/25
166/20 167/19 213/19 232/1 232/2
topic [2]  11/7 166/23
topics [1]  113/9
total [3]  205/7 237/2 240/16
totality [1]  102/21
totally [1]  232/18
touch [3]  59/3 204/17 204/24
touches [1]  42/13
towards [4]  102/22 190/12 213/12 213/17
trade [4]  49/20 65/9 101/16 217/15
traded [1]  13/8
tradition [1]  108/5
traditional [2]  61/5 79/16
Traditions [1]  237/12
tramples [2]  50/13 50/23
Trampling [1]  56/7
transacted [2]  193/4 194/24
transaction [11]  14/2 25/3 39/11 79/17 100/2
122/6 148/9 165/9 170/13 188/8 191/5
transactions [12]  39/7 39/7 39/10 50/4 58/5
62/15 165/14 194/25 195/20 220/24 225/9
228/24
transcript [2]  1/8 6/5
Transmission [1]  237/9
trap [1]  104/23
trapped [1]  184/22
traps [3]  102/9 102/10 106/9
traveled [1]  237/14
Treasurer [1]  182/19
Treasury [1]  196/9
treat [1]  93/17
treated [3]  30/3 84/1 206/8
treatment [3]  151/13 206/6 206/13
tremendous [5]  82/20 130/11 141/19 240/4
240/5
trial [6]  30/16 30/17 98/2 230/14 230/16
232/7
tried [7]  24/6 32/13 190/22 199/12 205/3
210/18 223/25
triggered [2]  149/7 149/8
trouble [1]  48/19
troubled [1]  100/10
troubles [1]  94/13
troubling [1]  94/10
true [14]  13/15 17/14 31/24 38/10 40/21
40/22 80/5 89/21 113/12 150/8 200/11 218/4
218/23 240/2
truly [1]  113/9
trump [3]  95/17 95/18 95/21
trumping [1]  66/1
trust [3]  100/5 101/20 101/20
trusted [1]  227/7
truth [2]  204/10 205/17
try [25]  10/20 16/25 49/10 53/12 54/24 57/14
83/23 87/3 96/6 99/14 103/6 111/23 113/13
133/22 134/7 150/19 154/5 154/17 180/14
188/21 199/7 209/20 215/4 216/18 217/7
trying [19]  13/23 15/20 34/19 43/1 43/5
95/22 100/18 117/6 121/24 134/1 156/11
158/25 159/2 192/1 202/10 208/4 210/23
213/7 218/1
tune [1]  55/2
turn [14]  1/14 11/23 14/14 17/12 24/20 27/16
28/9 28/12 56/13 81/11 81/14 81/16 166/23
221/15
turned [1]  105/25
twice [1]  167/25
two [67]  8/9 10/14 17/12 17/25 19/21 19/21
20/7 25/7 27/8 28/18 33/12 33/15 33/22 34/6
41/21 41/24 42/1 47/16 60/20 65/3 65/3 70/3
70/7 70/11 82/7 82/10 102/19 104/14 106/5
107/4 124/23 128/6 129/3 136/6 140/17
142/22 151/12 152/10 154/19 155/25 157/2
157/3 159/11 160/4 170/8 189/18 191/8
205/25 208/11 209/14 209/22 210/19 212/2
215/7 216/12 216/20 221/6 221/19 229/20
230/1 230/1 231/9 231/24 232/4 233/19
234/24 235/8
TYLER [1]  2/23
type [8]  108/22 134/4 147/22 150/9 167/20
184/17 210/5 210/12
types [8]  47/15 67/3 78/23 117/22 131/21
136/15 153/15 238/6
typical [1]  104/10
typically [2]  169/10 179/5

# U

U.S [2]  124/1 158/18
U.S. [4]  121/1 182/21 182/22 194/21
U.S. and [1]  182/21
U.S. claims [1]  121/1
U.S. last [1]  182/22
U.S. representing [1]  194/21
UK [1]  100/13
ultimate [3]  112/22 141/19 142/14
ultimately [4]  107/20 109/6 109/9 109/18
unable [1]  15/12
unaided [1]  214/13
unanimously [1]  181/5
unavailable [1]  54/3
unbalanced [1]  15/3
unbundled [1]  47/12
uncertain [4]  55/8 74/1 114/23 148/6
uncertainties [2]  84/20 186/2
uncertainty [3]  57/21 148/24 186/6
unchallenged [1]  102/6
uncompetitive [1]  15/3
unconstitutional [5]  11/13 11/17 30/21 50/13
213/8
under [65]  9/11 11/14 14/15 22/11 37/12
40/9 46/23 53/11 57/3 62/9 67/10 67/12 68/20
69/15 75/25 76/2 81/15 81/16 91/12 93/19
94/2 95/17 97/21 99/25 110/10 110/14 114/7
114/13 114/17 115/4 116/6 117/11 146/12
148/6 148/15 154/3 158/8 164/22 164/25
165/1 165/19 167/23 173/13 177/23 178/10
178/12 184/22 190/15 199/15 208/20 210/2
211/15 215/14 215/19 217/10 222/13 224/13
229/24 229/25 233/17 235/5 236/6 236/15
239/16 242/14
underestimating [1]  239/5
underlying [1]  226/8
undermine [2]  56/1 100/5
underneath [1]  100/5
understand [25]  31/23 38/19 40/24 49/7
84/24 84/25 85/18 88/8 133/6 133/7 140/23
155/4 172/11 172/22 176/6 177/18 192/20
202/12 220/15 238/9 238/11 239/9 239/12
241/10 241/15
understanding [5]  173/10 173/14 173/15
175/1 179/12
undertake [1]  75/19
undertaken [1]  7/15
undiluted [1]  118/4
undisputed [2]  43/16 52/17
UNDLIN [3]  3/4 233/12 233/25
Undlin's [2]  234/12 234/15
undue [1]  96/22
unfair [7]  98/4 100/23 102/5 102/6 102/9
165/15 191/19
unfairly [2]  181/3 223/16
unfairness [1]  92/24
unfortunately [5]  97/9 125/12 125/22 214/14
218/19
unhappy [1]  31/1

unheard [1]  10/8
unilateral [3]  152/9 152/11 152/13
unintended [4]  15/18 56/19 110/20 110/20
Union [3]  106/17 106/20 107/9
unique [4]  40/23 113/9 184/19 193/15
unitary [1]  10/8
united [28]  1/1 1/4 1/9 9/21 26/21 45/2 48/7
49/24 67/16 100/16 100/20 100/22 101/17
107/25 118/5 120/15 120/17 120/18 120/19
120/22 210/10 211/15 213/5 217/9 224/17
231/13 232/8 237/5
United States [9]  45/2 48/7 118/5 120/15
120/17 120/18 120/19 120/22 237/5
universally [1]  106/23
unlawful [2]  52/9 109/4
unless [10]  37/7 134/20 135/10 135/19
137/17 140/4 143/3 149/2 174/13 200/23
unlevel [2]  151/1 181/22
unlike [4]  64/20 113/10 150/22 181/16
unlikely [3]  108/19 197/12 218/16
Unlimited [1]  166/20
unnamed [1]  214/10
unnecessary [2]  7/14 169/15
unnoticed [1]  217/17
unpleasant [1]  215/16
unprecedented [2]  17/9 82/14
unrestricted [1]  104/4
unripe [1]  60/22
unscathed [1]  12/13
untie [1]  13/1
until [3]  48/14 70/10 144/4
untold [1]  101/5
unwilling [1]  158/19
unworkable [1]  97/16
unwritten [1]  58/24
up [75]  8/21 9/9 9/14 32/1 41/20 46/24 47/2
47/11 49/4 49/4 49/10 49/10 66/20 69/9 70/14
72/23 81/20 81/25 83/6 83/18 85/16 86/10
86/17 93/22 94/7 94/14 94/16 94/20 97/2
97/12 103/1 106/17 117/13 120/8 123/17
125/11 128/7 134/23 137/12 139/12 140/1
141/6 142/16 142/17 142/21 144/9 144/22
147/9 147/10 150/1 158/15 163/15 164/24
165/9 165/15 165/17 173/24 178/20 183/6
188/13 191/3 191/24 192/9 193/17 193/17
193/18 198/19 199/24 201/23 203/14 218/2
218/20 227/1 241/11 241/19
upon [10]  17/25 31/15 59/3 59/19 60/25
90/13 131/18 158/20 159/15 215/6
urge [7]  66/3 98/16 101/6 102/12 182/13
189/9 191/19
urging [1]  12/20
URQUHART [1]  3/18
us [56]  22/7 27/12 30/20 46/3 47/9 85/1
94/13 94/13 101/20 101/20 101/21 101/22
102/4 103/12 106/19 108/8 108/11 112/5
112/25 114/7 120/1 124/7 125/9 125/14
135/20 139/10 148/22 151/2 152/17 152/23
154/3 160/17 160/23 161/14 161/19 161/22
161/23 163/15 163/20 163/21 180/8 184/3
184/20 190/1 190/15 191/4 191/10 193/7
193/14 193/14 193/24 197/22 199/6 211/8
211/12 221/13
use [33]  1/9 19/13 21/18 29/18 32/18 47/15
47/17 73/3 73/10 89/11 95/13 103/7 106/7
111/11 114/6 114/18 114/20 140/6 144/19
147/19 148/15 164/13 170/15 184/16 188/9
191/9 201/17 210/5 210/15 215/19 219/1
220/16 234/25
used [9]  48/10 88/21 96/23 171/19 190/14
227/8 233/15 233/19 233/21
useful [4]  24/8 36/22 87/11 242/12
useless [1]  181/18
users [1]  215/16

Case 1:05-md-01720-MKB-JO Document 8094 Filed 11/20/13 Page 279 of 281 PageID #: 71124

## U

using [11] 19/4 21/16 22/24 46/14 89/6
114/19 119/4 145/22 169/11 190/1 218/17
utility [2] 85/9 184/25
utilizing [1] 26/21

## V

vacations [2] 166/20 214/20
vague [2] 59/5 99/21
valid [2] 176/8 177/6
validate [1] 91/24
validates [1] 109/14
valuable [5] 18/9 23/23 66/23 85/16 214/8
value [28] 11/3 14/17 16/11 17/8 18/7 19/2
19/5 19/15 20/16 23/17 24/12 50/19 55/7 93/7
93/21 97/23 98/12 99/3 115/2 115/3 135/16
135/17 140/8 176/17 181/24 196/16 202/18
220/10
varies [1] 16/6
various [4] 9/17 79/2 210/20 231/3
varying [1] 190/25
vast [7] 25/15 53/5 53/10 57/11 58/21 97/2
103/16
vehicle [2] 111/23 212/18
Ventura [1] 5/5
venture [1] 10/1
verba [1] 131/9
verdict [2] 30/19 30/24
versa [2] 218/21 221/25
version [2] 13/4 60/17 185/11 211/18
versions [1] 59/8 62/13
versus [17] 14/17 26/22 53/8 53/10 53/13
53/20 67/23 68/6 73/23 158/4 171/22 216/25
218/4 231/15 232/22 233/20 236/2
very [80] 12/13 15/21 17/4 19/4 19/4 20/6
20/6 20/20 24/8 33/17 35/7 36/3 36/4 36/5
44/23 56/6 71/19 78/2 82/6 87/9 90/15 94/25
97/23 101/7 102/22 106/18 107/13 110/20
119/3 119/20 120/8 143/13 143/14 146/22
156/4 159/14 165/4 165/6 167/19 170/22
173/8 177/15 177/16 177/24 177/24 178/4
179/20 187/9 189/23 191/14 191/15 191/15
193/5 204/19 204/24 208/2 210/11 212/2
212/8 218/15 218/16 218/19 219/19 219/19
221/18 225/2 229/12 230/13 230/22
231/20 231/22 235/16 237/25 238/17 239/21
240/1 241/4 242/10 242/10
vesture [1] 10/7
via [1] 10/2
viability [1] 56/7
viable [1] 184/13
vice [5] 107/12 180/16 182/18 218/20 221/24
Vicente [2] 170/2 231/7
victims [1] 106/9
Victoria [1] 189/14
view [20] 15/9 16/10 16/16 18/6 26/13 30/20
42/22 46/15 58/15 60/13 78/5 124/17 168/3
181/15 183/15 184/18 186/16 208/11 210/4
241/13
viewed [1] 93/1
views [6] 25/6 25/7 97/9 182/14 241/10
241/15
vigilant [1] 67/5
vigorous [1] 49/22
vigorously [1] 32/11
violate [4] 46/24 48/4 200/20 221/5
violated [2] 13/12 146/13
violates [4] 11/10 83/1 83/2 188/11
violating [2] 163/7 171/2
violation [6] 74/20 74/21 74/23 151/17 213/8
217/16
violations [2] 62/7 83/12
Virginia [1] 144/6

virtually [13] 10/8 12/13 18/12 26/16 43/16
45/4 65/4 65/11 97/21 101/17 101/19 103/13
215/25
vis [4] 150/15 163/14 163/1
vis-a-vis [2] 150/15 163/1
Visa [152] 9/25 12/15 12/24 12/25 13/5 13/6
13/20 14/5 16/23 17/3 20/17 20/22 21/6 27/3
27/3 29/11 38/2 38/7 38/17 39/4 42/14 42/15
43/6 45/25 50/3 50/5 50/18 53/23 56/4 56/25
57/10 57/12 58/19 63/23 64/10 64/13 64/20
65/11 70/17 71/13 71/23 85/22 86/3 86/5
87/20 88/15 91/24 92/4 94/24 95/8 95/16
98/16 98/23 99/19 99/23 100/7 100/12 100/20
101/24 102/7 102/25 103/15 104/24 107/22
109/8 109/13 109/22 110/6 113/16 114/1
116/17 116/20 116/25 117/4 119/21 122/4
125/5 136/16 146/5 146/13 146/21 147/4
147/13 147/18 147/20 147/23 147/24 148/11
148/18 148/21 149/4 149/12 149/22 150/2
150/12 150/18 150/22 151/1 151/14 151/21
152/22 153/22 161/5 163/14 167/1 167/13
167/24 168/4 168/20 174/8 176/20 181/1
181/8 181/21 183/7 183/22 184/7 184/15
186/3 186/13 189/1 195/10 205/22 207/4
208/16 208/17 212/16 212/18 213/18 218/13
218/19 220/24 221/3 225/7 225/10 225/18
225/19 227/13 228/18 228/20 228/22 228/23
228/25 229/3 229/6 229/8 231/14 231/15
232/22 233/20 235/1 236/9
Visa's [2] 116/22 148/14
Visa/MasterCard [6] 99/19 99/23 149/12
167/13 218/13 227/13
visions [1] 151/21
vitally [1] 110/25
Vitamin [1] 222/18
vocal [1] 123/8
voice [3] 49/10 107/17 109/2
voiced [1] 153/13
voices [2] 105/18 177/15
void [2] 57/4 62/7
volume [6] 20/19 25/4 25/19 25/25 26/10
52/22
volumes [1] 165/13
voluntarily [1] 176/2
VORYS [2] 3/21 4/16
vote [2] 13/17 105/14
voted [1] 181/5
vulcanized [1] 53/23
vulnerable [1] 116/10

## W

Wagner [5] 144/6 189/13 191/23 196/5 196/8
Waichman [1] 173/5
wait [1] 158/2
waiting [1] 144/19
wake [1] 104/24
Wal [18] 23/18 25/6 51/22 68/10 73/12 98/21
98/22 98/25 99/15 100/2 100/11 100/25 101/4
171/6 231/15 232/21 233/20 235/1
Wal-Mart [16] 23/18 25/6 51/22 68/10 73/12
98/21 98/25 99/15 100/2 100/25 101/4 171/6
231/15 232/21 233/20 235/1
Wal-Mart's [2] 98/22 100/11
walk [6] 23/7 23/8 23/16 23/25 105/9 136/21
walkway [1] 190/2
want [86] 7/13 7/15 7/19 8/7 9/1 11/5 14/4
18/13 20/2 20/23 37/8 38/20 38/24 40/25
43/22 46/25 50/22 70/19 70/20 71/11 72/20
79/8 81/7 82/3 84/6 88/3 88/13 89/9 92/2 92/5
92/6 92/6 94/8 95/2 104/16 113/8 114/18
116/17 123/4 128/2 128/2 128/3 130/23
134/16 136/24 136/25 138/17 138/25 139/15
141/7 141/12 142/2 142/3 142/6 142/24
144/25 145/9 145/18 146/21 153/24 155/25

159/10 161/1 161/2 162/5 163/16 163/23
175/1 176/2 176/4 176/5 184/21 187/11
190/20 191/13 194/13 194/13 201/5 204/1
204/12 204/13 215/7 219/7 226/21 231/5
236/18
wanted [6] 7/7 41/18 41/21 48/23 94/12
112/17
wanting [1] 147/8
wants [11] 7/24 70/19 81/19 85/17 85/19
94/12 94/15 95/7 148/16 185/1 236/18
Warehousing [1] 190/23
warranted [2] 52/8 151/13
was [197] 9/10 9/13 10/3 10/9 10/10 12/14
12/15 12/25 13/13 13/14 13/15 13/20 15/1
15/3 15/3 15/7 15/9 15/11 15/17 15/18 15/21
16/9 16/24 17/2 17/3 17/6 17/21 19/7 19/11
19/12 19/13 21/22 23/19 25/22 28/4 28/4 30/4
31/21 32/11 34/3 34/14 35/1 35/2 35/3 37/24
38/16 40/16 40/17 41/13 41/16 42/18 42/18
42/20 42/22 46/3 46/4 46/21 48/17 49/1 54/12
56/4 58/2 64/15 64/19 65/21 67/16 71/5 71/6
71/6 72/12 72/17 73/4 73/7 73/8 73/12 74/22
74/23 76/25 77/5 87/8 90/16 90/17 90/17
91/20 91/21 94/9 95/25 98/10 100/16 100/25
102/18 104/25 105/8 105/12 115/2 120/13
120/16 120/19 120/22 120/23 120/25 121/6
122/8 122/25 124/4 128/9 129/7 134/21 136/1
137/22 140/3 140/20 141/3 144/2 146/5
151/10 151/12 152/10 156/17 156/17 162/6
162/11 166/16 167/24 168/2 168/3 168/8
168/24 173/13 173/15 174/5 174/9 175/1
180/5 183/25 187/24 187/25 188/15 190/9
192/1 192/3 193/25 198/16 199/9 199/19
201/9 202/10 202/10 202/10 203/25 204/5
206/10 207/5 207/7 210/4 210/17 212/14
212/25 213/1 214/5 214/17 214/23 216/13
217/21 217/21 218/6 219/17 220/6 220/15
224/7 224/8 224/21 225/3 227/13 227/18
231/7 231/13 231/13 231/15 233/8 233/12
233/22 234/3 234/4 234/6 234/23 235/3
235/11 235/17 236/5 236/7 236/10 236/14
236/14 236/15 236/15 236/23
Washington [3] 2/12 4/20 5/16
wasn't [9] 19/12 27/14 34/13 34/19 52/17
126/19 203/8 213/1 224/7
watch [1] 39/15
water [3] 9/11 237/10 237/10
way [76] 5/2 19/12 19/14 29/15 30/17 32/12
36/24 37/24 44/23 46/15 48/2 49/4 58/9 60/16
62/11 63/4 65/2 69/8 71/21 71/25 79/19 81/9
81/23 82/13 82/21 83/25 87/23 88/21 93/25
102/22 103/17 104/4 108/22 113/15 114/10
114/11 116/15 117/9 121/10 121/20 131/12
131/23 134/17 136/15 137/19 141/4 142/4
147/10 149/14 149/20 152/4 157/4 159/9
163/25 174/1 178/13 178/14 179/12 181/14
183/22 185/22 186/16 187/23 190/18 198/22
201/7 206/1 206/11 206/12 206/13 213/20
216/23 217/24 219/17 223/25 229/4
ways [12] 25/7 37/24 47/16 50/22 66/20
91/17 108/18 124/23 146/18 176/10 186/3
238/12
we [528]
we'd [2] 169/5 180/6
we'll [5] 7/24 8/9 8/9 142/22 156/17
we're [87] 7/10 8/4 8/11 8/16 20/22 20/23
22/7 28/5 31/9 35/16 85/6 87/10 87/18 87/19
87/20 91/6 91/10 100/10 103/19 105/17
105/18 107/18 111/13 114/9 121/12 124/4
128/1 128/8 130/18 130/20 130/20 130/21
133/24 134/19 135/19 136/9 136/9 139/9
141/10 141/11 152/2 152/19 153/9 153/23
157/2 157/21 159/23 161/10 161/11 163/13
163/15 169/17 174/1 177/16 177/20 178/6

we've... [24] 178/7 178/25 179/24 182/19
184/14 188/25 192/15 192/19 194/1 194/20
198/7 210/5 210/12 211/16 213/12 213/12
214/24 215/1 219/19 233/23 235/12 235/17
236/23 237/2
we've [46]   10/15 15/6 25/11 42/6 45/14 45/17
46/8 46/9 47/9 50/20 66/13 66/22 68/9 96/18
97/13 101/22 108/2 116/20 119/23 121/9
123/7 124/23 125/2 145/14 156/11 161/18
161/24 161/25 183/25 184/12 198/13 204/18
209/20 211/18 213/14 223/1 230/4 233/2
235/6 235/6 235/7 235/14 236/20 236/21
242/12 242/12
weaknesses [5]   11/3 14/16 16/2 16/11 42/12
wean [1]   63/19
WEBB [1]   2/23
WEBNER [2]   4/17 159/20
Webner's [1]   164/16
website [1]   222/7
websites [1]   24/24
week [1]   119/14
weeks [5]   165/2 165/14 237/6 237/6 237/6
weighing [1]   14/16
WEISS [1]   2/11
welcome [8]   6/10 6/24 8/7 33/7 44/12 139/14
150/8 194/12
Welfare [1]   171/21
well [77]   7/13 10/19 17/19 20/22 24/12 25/2
25/3 26/12 27/25 31/9 32/2 36/5 36/13 38/8
46/5 48/13 48/14 48/16 50/17 73/16 74/18
74/22 75/10 76/16 77/7 77/11 78/15 78/17
78/19 78/21 79/5 79/15 90/22 91/4 103/11
103/22 104/8 108/10 110/12 111/15 112/11
112/16 112/22 129/22 135/1 135/24 139/23
142/5 143/2 143/13 143/14 148/19 153/14
154/12 158/6 158/23 164/8 178/21 178/23
183/9 184/2 185/11 191/14 195/13 198/7
198/13 198/15 198/15 202/23 203/12 205/9
222/9 230/12 230/13 231/1 231/20 242/11
well-being [1]   158/23
well-grounded [1]   32/2
WellPoint [2]   159/21 163/18
Wenning [7]   144/5 180/10 180/11 180/16
182/15 187/9 188/23
went [10]   86/1 173/18 173/19 220/16 223/25
224/1 227/13 230/16 231/20 234/1
were [114]   9/13 10/15 12/10 12/18 13/6
13/16 13/23 15/11 15/19 15/21 15/24 16/15
16/16 16/17 16/19 18/17 20/3 24/23 25/18
27/8 27/11 27/14 35/3 37/17 39/20 40/8 47/5
48/6 56/12 58/19 58/25 59/12 59/14 59/14
59/15 62/3 63/1 63/9 64/14 64/24 71/5 72/11
72/18 73/1 82/18 82/19 83/8 87/2 90/11 93/17
99/9 101/23 105/6 109/4 112/16 112/21 116/1
120/25 122/24 146/8 150/1 155/19 155/21
155/23 159/8 166/3 167/13 169/7 183/20
184/1 187/7 189/9 191/16 193/1 194/3 197/17
197/20 197/21 199/18 199/25 200/21 201/7
204/4 204/16 205/14 207/4 210/7 212/14
213/18 214/1 214/14 214/17 216/19 219/18
222/7 222/8 225/1 227/16 227/16 227/24
228/12 230/5 231/7 231/11 233/21 234/18
234/25 235/9 235/10 235/11 240/11 240/12
242/1 242/2
weren't [1]   174/23
Wes [1]   207/23
WESLEY [1]   2/15
west [4]   2/2 3/9 111/12 111/13
Western [1]   200/10
WHARTON [1]   2/11
what [232]   7/15 11/1 12/3 16/3 17/18 19/8
19/9 19/10 19/12 20/24 21/9 25/18 26/10 27/5

27/22 28/1 28/22 29/8 29/20 31/5 31/15 31/18
31/25 33/23 33/23 34/12 36/7 36/17 37/6
37/24 38/19 40/3 40/6 40/7 40/16 40/17 40/20
41/4 43/25 45/11 45/19 46/12 46/18 46/21
47/3 47/22 47/25 49/1 49/25 50/20 54/2 55/15
55/24 58/4 63/12 63/25 68/20 69/18 69/18
69/21 70/8 70/18 71/14 72/8 72/22 73/12
76/25 80/24 81/4 82/9 84/21 85/9 87/7 87/8
87/11 88/1 88/7 88/9 89/22 89/23 90/7 90/7
90/16 90/21 91/10 91/11 92/4 92/24 93/10
93/14 94/18 94/18 95/7 95/10 95/22 96/5 96/9
98/15 99/25 102/4 102/16 103/20 104/18
105/8 105/12 107/5 107/20 111/2 111/6
111/12 114/8 116/20 118/1 119/5 119/10
120/23 129/7 129/16 129/23 130/7 130/13
131/5 132/13 134/9 134/11 136/25 139/13
139/18 139/22 139/23 140/21 141/12 142/11
142/22 142/25 143/1 144/1 144/25 145/18
145/21 146/12 147/10 148/13 148/13 148/19
148/22 152/15 153/25 154/17 154/19 156/1
157/7 157/19 157/20 158/22 159/1 160/16
161/16 161/18 161/19 162/16 162/17 162/19
163/1 163/12 164/11 167/1 168/5 168/22
169/3 170/4 173/14 173/24 173/25 174/1
174/5 174/11 179/13 179/18 179/24 180/2
182/23 186/5 186/11 186/19 192/3 193/15
194/1 194/7 197/17 198/7 201/24 201/25
203/1 203/1 203/4 203/14 204/23 205/2
205/10 206/5 211/11 212/12 212/20 213/3
214/5 214/15 215/6 216/13 216/22 218/10
219/20 219/21 220/2 220/15 220/19 221/11
224/6 225/3 227/8 228/6 229/21 230/12
230/16 231/21 233/2 233/19 235/17 235/17
237/24 238/16 238/24
what's [33]   6/19 28/7 31/15 31/16 33/24 72/9
76/9 77/15 77/18 77/22 78/1 78/7 78/9 80/23
84/14 107/2 114/13 114/15 115/2 118/21
129/13 129/18 141/21 142/18 162/1 162/20
171/18 192/10 193/15 202/17 213/25 216/1
239/6
whatever [8]   130/18 134/16 135/9 136/10
139/20 164/4 171/16 207/6
when [72]   8/21 10/10 10/16 11/25 14/2 16/10
21/17 37/6 42/20 43/25 44/6 45/18
45/22 46/3 47/14 48/6 52/11 56/25 60/23
62/10 63/13 64/16 67/7 67/21 78/19 82/18
85/20 93/9 94/9 97/20 98/10 105/7 108/17
108/23 117/24 118/1 121/16 121/18 124/5
127/15 131/24 132/22 138/9 141/6 148/15
151/20 156/13 158/9 162/17 165/14 167/12
168/12 168/15 169/4 173/18 178/18 179/14
190/9 190/13 193/16 193/19 201/23 215/14
219/24 224/25 225/2 233/20 238/7 239/6
240/24 241/6
whenever [1]   74/3
where [63]   6/25 20/19 30/1 30/20 34/12
35/11 36/1 36/7 41/16 45/10 46/16 47/4 52/3
54/15 54/15 54/17 56/11 56/17 58/5 59/13
62/12 67/4 72/11 89/10 105/23 113/20 116/14
120/1 120/20 123/10 127/6 130/1 131/23
144/9 145/1 145/2 152/11 153/25 158/24
159/8 167/15 169/10 170/19 172/24 177/19
183/10 184/23 191/4 200/13 202/24 203/5
203/9 203/19 203/20 205/24 214/17 215/9
218/19 220/5 228/12 229/13 239/17 241/18
whereas [3]   52/23 53/5 53/16
whether [53]   7/8 14/4 15/14 17/25 18/25
23/1 30/23 37/12 37/18 37/19 37/20 38/21
38/22 41/12 51/18 61/5 62/1 63/23 68/15
78/18 81/19 83/16 85/12 85/13 88/5 91/11
94/19 108/21 109/10 110/16 112/1 116/13
118/12 130/15 141/10 145/12 148/7 148/24
149/10 149/11 151/24 161/4 178/12 179/17
186/15 190/13 202/14 207/8 212/6 217/10

whether,' [1]   248/14
which [126]   11/5 11/14 11/15 14/16 16/20
17/4 20/9 24/3 24/24 24/2 25/12 28/25 29/5
35/1 36/17 36/19 36/21 37/10 37/16 37/17
38/16 46/10 50/5 50/6 50/7 51/4 51/17 52/21
52/24 53/4 53/15 53/24 54/5 55/18 56/2 58/19
58/24 59/14 63/8 67/14 71/22 73/5 73/17
73/19 73/24 74/1 75/18 81/3 82/12 82/13
82/20 84/19 85/16 90/22 98/15 100/8 102/6
103/25 107/19 109/15 113/25 119/2 131/17
132/15 132/22 137/16 138/9 139/24 141/23
143/8 151/10 153/4 158/16 165/16 166/2
166/13 169/10 169/21 169/22 170/2 170/12
171/19 173/20 180/17 184/12 184/13 185/18
186/15 189/16 193/12 193/24 194/24 195/11
196/19 197/9 197/24 199/15 200/13 201/17
201/17 206/6 209/10 210/10 210/21 210/21
213/9 216/10 222/3 222/5 228/3 228/19 229/6
232/17 233/24 234/11 234/22 235/8 236/4
236/17 237/4 237/5 237/8 237/10 239/23
240/9 240/17
whichever [1]   205/22
while [11]   19/11 41/9 63/17 80/5 122/4
166/24 199/18 203/18 211/20 212/21 231/9
White [4]   144/5 186/25 187/2 189/11
who [102]   7/6 7/16 7/18 7/24 8/1 8/6 8/14
11/14 13/18 16/14 19/3 20/18 21/3 21/14 22/5
22/20 25/4 42/25 43/4 51/10 52/18 52/23
53/13 53/17 54/7 55/17 74/18 80/5 82/3 84/20
93/12 94/12 95/11 101/8 105/19 105/20
105/22 108/25 109/2 109/21 111/11 120/6
120/25 121/1 123/8 123/9 123/17 123/18
124/4 127/20 127/21 130/15 134/15 134/20
134/21 138/3 139/12 146/5 146/21 147/22
153/16 156/9 160/17 161/4 170/15 170/21
171/14 174/16 174/17 176/22 177/12 178/17
178/18 178/22 187/5 187/9 188/9 188/11
189/2 192/4 198/14 198/19 209/7 212/5 215/7
216/16 216/17 219/1 222/1 222/24 223/5
226/25 227/11 227/16 230/5 230/5 230/16
231/8 233/12 237/14 238/14 240/24
who's [5]   83/18 98/19 113/3 117/13 144/22
Whoever [1]   123/5
whole [17]   47/3 70/14 71/20 74/25 79/21
79/22 93/1 94/1 94/17 164/4 164/14 164/21
213/19 223/12 225/22 227/13 238/10
wholeheartedly [1]   139/3
wholesale [1]   237/8
wholesalers [1]   180/19
whom [3]   131/2 138/7 214/6
whose [7]   57/23 70/21 80/10 85/10 105/18
107/18 209/5
why [53]   21/3 21/15 25/6 27/18 36/12 39/1
40/13 45/15 46/20 46/20 63/13 78/10 78/15
79/15 79/16 79/18 80/25 81/22 85/3 86/18
86/21 87/11 89/4 90/12 90/14 112/13 124/6
125/14 130/14 130/22 133/6 133/7 142/22
142/23 143/3 144/19 161/21 163/10 163/16
174/21 186/15 191/7 192/23 199/21 199/22
202/7 202/19 205/8 205/16 205/17 210/17
234/20 238/3
wide [6]   52/22 55/2 55/6 97/14 110/8 196/12
widespread [1]   22/9
Widow [1]   4/22
wife [3]   192/11 241/4 241/4
wild [1]   111/12 111/13
WILDFANG [15]   1/14 6/19 8/11 9/5 105/13
119/23 120/24 156/3 198/20 203/16 215/3
219/13 222/3 222/20 224/14
will [141]   6/21 6/22 6/23 10/5 10/20 11/4
11/11 11/19 14/8 17/1 18/10 18/22 20/9 20/11
22/21 23/12 33/12 36/9 36/9 41/11 41/12
41/14 41/15 41/16 44/15 46/24 49/4 49/12

## W

will... [13] 49/25 50/7 51/10 51/11 53/5
55/6 55/25 56/1 62/21 63/12 63/23 67/14
69/10 70/6 77/22 77/23 77/24 78/4 78/24
79/23 84/7 84/8 84/22 85/14 86/16 94/19
95/10 95/13 95/15 98/13 99/3 99/13 99/22
100/8 100/11 100/14 101/5 103/14 106/1
107/7 108/24 109/10 109/12 109/19 109/21
110/1 110/11 110/19 110/22 110/25 112/4
112/23 118/12 119/14 119/18 127/25 128/4
130/5 131/17 132/1 133/6 135/7 135/9 140/1
141/19 141/23 142/21 144/15 146/20 147/17
147/19 156/18 157/23 160/21 160/23 164/24
164/24 165/1 165/23 165/23 166/22 179/10
187/4 187/6 188/5 189/21 196/15 197/3 197/7
197/9 197/12 197/23 197/24 198/23 198/24
199/15 204/24 211/2 212/6 212/21 213/21
213/23 215/4 215/4 217/8 220/11 223/14
232/12 232/15 234/17 235/15 236/21 239/22
WILLIAM [1] 2/10
willing [2] 137/2 153/23
Willis [2] 171/23 172/4
WILLKIE [1] 2/14
win [3] 49/6 185/20 185/22
windfalls [1] 167/7
window [1] 87/3
winners [1] 84/10
winning [2] 14/8 17/6
Wisconsin [4] 196/11 196/23 197/8 200/10
withdraw [1] 141/24
within [8] 29/3 38/15 89/12 120/21 199/7
203/18 220/2 234/24
without [17] 33/20 39/7 50/9 54/21 55/7 71/7
103/13 121/19 125/25 126/2 130/19 139/12
139/13 139/24 216/23 224/11 240/7
won [2] 231/13 231/14
won't [4] 23/16 23/25 46/24 148/13
wonder [1] 15/13
wondered [1] 124/5
wonderful [2] 67/19 227/19
wondering [1] 63/25
wont [6] 43/13 43/20 135/8 135/8 139/25
182/4
word [8] 20/6 20/6 47/11 64/10 210/5 210/14
215/7 224/8
worded [1] 174/9
words [11] 32/13 32/14 71/8 121/22 156/4
189/19 189/19 209/23 210/7 210/8 223/15
work [25] 8/13 22/14 22/17 43/13 43/20
43/20 43/24 79/10 79/10 136/7 137/2 139/15
140/7 140/18 142/7 150/25 164/15 181/20
197/7 204/20 208/4 209/24 212/21 235/6
235/7
workable [1] 185/7
worked [7] 140/11 141/3 153/20 156/11
168/23 227/15 234/19
working [4] 8/6 137/22 142/12 188/5
works [6] 37/10 56/11 72/24 117/24 117/25
179/20
world [9] 18/1 18/2 47/3 133/13 135/17
167/15 182/20 187/16 205/10
world's [1] 49/19
worried [3] 15/18 45/17 212/5
worry [1] 117/6
worrying [1] 48/7
worse [6] 50/11 58/12 65/24 97/25 98/2
181/9
worsen [1] 99/4
Worst [1] 7/25
worth [5] 25/6 57/8 93/23 174/7 233/14
would [194] 7/3 8/24 10/17 15/14 15/19 20/2
21/11 24/4 27/6 28/12 30/15 31/20 32/12
32/15 33/10 33/11 35/7 35/18 36/22 36/23

39/17 39/21 41/8 42/2 44/17 45/24 47/2 47/23
48/4 48/4 52/12 60/24 61/4 62/1 62/10 65/25
68/18 71/18 71/20 72/21 72/21 73/16 75/21
77/11 77/12 79/13 79/26 79/25 81/7 82/6
82/10 82/13 82/23 83/4 84/4 84/5 87/11 87/16
87/17 88/4 94/25 96/1 96/3 98/3 100/23
102/22 103/20 103/22 103/22 103/24 105/6
105/7 105/10 105/12 108/9 109/6 112/2
116/22 122/23 126/5 126/8 126/12 126/22
130/24 134/20 136/11 137/6 138/1 139/4
139/14 140/3 140/5 146/10 147/14 147/16
147/22 147/24 147/25 148/7 149/7 149/8
149/10 150/8 150/21 152/18 154/1 154/17
155/6 156/3 159/11 162/19 162/23 167/2
167/14 167/25 168/1 168/20 169/8 169/20
169/21 169/21 169/22 170/7 170/24 171/1
177/6 178/7 178/17 182/25 183/2 183/4
183/23 184/2 184/10 184/15 184/23 185/10
185/12 185/24 186/10 186/19 188/2 189/5
190/3 190/7 191/9 191/11 191/19 191/23
193/7 197/1 202/15 203/2 203/3 204/11
205/18 206/9 207/5 208/8 208/12 209/8
209/17 210/6 210/25 211/10 211/16 211/19
212/10 213/11 214/8 214/9 216/4 217/7 218/9
220/15 225/14 225/19 226/5 227/4 227/19
227/20 228/7 228/17 228/19 232/25 235/2
236/25 237/24 240/6 240/6 240/13 240/16
240/23 241/7
wouldn't [14] 31/19 41/6 43/5 79/15 79/16
79/18 91/2 92/3 183/1 183/6 184/21 188/18
203/12 214/2
Wrecker [1] 166/20
WRIGHT [2] 5/14 196/19
wrist [2] 39/15 39/23
write [1] 112/21
writing [1] 222/10
written [8] 88/22 130/23 188/22 195/18
238/15 238/16 238/19 242/8
wrong [21] 32/6 36/11 36/14 48/25 77/15
77/18 77/22 78/1 78/7 78/9 78/14 78/15 78/16
78/18 96/5 132/17 132/18 135/22 137/18
137/19 185/22
wrote [1] 121/18

## Y

Yeah [1] 205/12
year [15] 25/12 47/5 55/2 55/11 55/11 88/15
93/23 97/1 100/7 116/24 165/3 165/21 182/22
188/13 193/12
years [32] 9/15 10/14 12/8 16/5 17/22 18/20
19/3 21/25 22/2 28/2 33/17 37/7 38/21 41/5
41/5 42/6 45/9 46/9 55/3 60/3 65/4 98/24
136/15 180/21 192/17 193/3 214/25 220/22
227/24 233/5 233/6 237/17
yes [24] 12/4 23/13 26/1 36/8 48/21 48/22
75/15 76/5 76/6 78/10 83/22 112/20 116/14
180/10 180/12 182/15 194/9 216/7 217/20
220/21 221/16 227/2 229/14 241/9
yet [14] 18/23 24/4 50/9 56/24 58/21 59/4
96/25 92/4 130/19 157/11 165/12 165/24
166/14 178/9
yield [1] 48/5
YORK [33] 1/1 1/5 2/6 2/15 2/17 2/21 2/24
3/13 3/19 4/3 4/6 4/12 4/14 5/13 6/2 19/23
67/17 72/14 84/17 117/13 170/19 183/13
187/24 188/7 213/3 213/5 213/7 213/13
215/12 215/13 215/24 228/5 234/18
you [459]
you'd [3] 38/17 183/7 192/21
you'll [1] 142/23
you're [60] 7/7 7/8 12/3 16/10 21/24 33/7
38/19 46/18 65/8 68/4 76/17 79/5 82/8 85/24
87/11 89/11 92/13 94/2 112/8 125/9 129/24
130/1 130/6 130/13 132/5 132/13 135/11

136/19 136/23 137/15 137/16 140/22 140/23
141/12 142/7 143/9 149/6 151/19 151/20
154/19 163/4 164/8 164/15 164/15 169/10
179/21 189/13 194/8 194/12 202/2 202/5
202/15 202/19 218/15 227/10 229/12 238/7
238/14 240/2 241/20
you've [19] 7/5 33/16 37/6 46/5 71/19 89/19
89/20 92/12 135/21 139/11 145/4 145/6
145/11 145/15 178/3 178/3 195/7 199/5
228/11
young [1] 227/5
your [327]
yourself [2] 132/14 136/23
yourselves [1] 142/6
YURASEK [2] 4/9 113/5

## Z

Zealand [1] 23/17
Zimmerman [3] 68/1 68/6 177/12