UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

Case No:   05-MD-1720 (JG)

<br>

**SETTLEMENT RECOVERY GROUP, LLC'S
PRE-HEARING MEMORANDUM OF LAW**

<br>

BINDER & SCHWARTZ LLP

28 West 44th Street, 6th Floor
New York, NY 10036
(347) 334-5090 (tel.)
(347) 772- 3072 (fax)

*Attorneys for Settlement Recovery Group, LLC*

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................ 2

A.  Settlement Recovery Group ............................................................................ 2

B.  SRG's Relationship with Premier ................................................................... 2

C.  Class Counsel's Submissions to the Court...................................................... 4

D.  SRG's Response to Class Counsel's Complaint and the Court's Order .................................. 5

ARGUMENT ........................................................................................................... 5

A. The Evidence Does Not Support a Finding that the Communications at Issue
    Were Made by SRG .......................................................................................... 5

B.  The Evidence Does Not Support a Finding that SRG Is Liable for Premier's Actions ............ 6

    1.  Premier and SRG Had Separate and Distinct Roles with Respect to Class Members.......... 6

    2.  Premier Is Not SRG's Agent Under New York Law............................................. 8

        a.  Legal Standard ........................................................................ 8

        b.  The Agreement Does Not Support a Finding of an Agency Relationship..................... 9

        c.  SRG Did Not Exercise Control Over Premier ........................................... 11

C.  The Court Lacks Subject Matter Jurisdiction.................................................. 12

CONCLUSION........................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Cabrera v. Jakabovitz,* 24 F.3d 372, 385 (2d Cir. 1994) ............................................................... 10

*Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) ............................................................. 14, 15

*Cleveland v. Caplaw Enters.,* 448 F.3d 518, 522 (2d Cir. 2006) .............................................. 8, 9

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) ................................................... 7

*G.K. Alan Assoc., Inc. v. Lazzari,* 840 N.Y.S.2d 378, 384 (N.Y. App. Div. 2007) ...................... 10

*I.K. Bery v. Irving R. Boody & Co., Inc.*, 99 Civ. 10968, 2000 WL 218398, at *4
  (S.D.N.Y. Feb. 23, 2000) ....................................................................................................... 11

*In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) ....................................................................... 14

*In re Parmalat Securities Litig.*, 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ........................... 13

*In re Shulman Transport Enter., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984) ..................................... 9

*In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588,
  No. 96-CV-5238 (JG) (E.D.N.Y. Mar. 31, 2006) ..................................................................... 14

*Koninklijke Nedlloyd BV v. Uniroyal, Inc.*, 433 F. Supp. 121, 128 (S.D.N.Y. 1977): ................. 11

*Maung Ng We v. Merrill Lynch & Co.,* No. 99 Civ. 9687, 2000 WL 1159835,
  at *7 (S.D.N.Y. Aug. 15, 2000) ............................................................................................... 9

*Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 420-23
  (S.D.N.Y. 2007) .................................................................................................................. 9, 10

*Slotkin v. Citizens Cas. Co.,* 614 F.2d 301, 317 (2d Cir. 1979) .................................................. 10

*Spiro v. Pence,* 149 Misc. 2d 613 (N.Y. City Ct. 1991) ............................................................. 11

*Steinbeck v. Steinbeck Heritage Found.,* 400 Fed. Appx. 572, 575 (2d Cir. 2010) ............ 8, 10, 13

*Tip Top Farms, Inc. v. Dairylea Coop., Inc.,* 497 N.Y.S.2d 99, 105 (N.Y. App. Div. 1985) ........ 9

*Wholesale Corp., v. S.B. Mech. Corp.,* 512 N.Y.S.2d 130, 131 (N.Y. App. Div. 1987) ............... 9

*Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121-22 (E.D.N.Y. 2011) ....................................... 11

Settlement Recovery Group, LLC ("SRG") respectfully submits this memorandum of law in advance of the hearing scheduled for January 17, 2014. The Court has ordered the hearing to determine who is responsible for certain solicitations directed at class members. Although it is Class Counsel's burden to prove that SRG knowingly made the solicitations that are the subject of the Court's inquiry, SRG will nonetheless present a witness at the hearing, and on the basis of his testimony and documentary evidence, it will be evident that SRG did not make and is not responsible for the solicitations.

SRG anticipates that Class Counsel will seek to establish that those statements were made by Premier Enterprises Group, Inc. ("Premier"), a company that referred its clients to SRG. Many claims filing services, including SRG, work with companies that have an existing client base and who refer their clients to claims filing services. These referral arrangements typically allow the referring party to share the administration fee earned by the claims filing service. This was the relationship that SRG had with Premier. SRG is not related to or affiliated with Premier in any way, other than through the arms' length referral agreement that was terminated by SRG following Class Counsel's notice regarding the solicitations at issue here. No SRG employees work for Premier in any capacity or have any relationship with any Premier employee outside of the terminated referral agreement. Although the Court asked to hear from Premier, we understand that no witness from Premier will appear at the hearing. In fact, Class Counsel cancelled the scheduled deposition of Lane Courkamp, Premier's president, once Class Counsel was advised that Mr. Courkamp would refuse to answer questions at his deposition on Fifth Amendment grounds.

SRG has absolutely no interest in making false or misleading statements. It believes that its services have value and anyone signing up for those services should be fully informed of

1

SRG's role in the process.  SRG has attempted to keep its potential clients informed through its communications and the terms of its services agreements, and has no objection to including whatever further or more detailed disclosures the Court orders.

For these reasons, and those discussed below, the Court should not order any further relief against SRG.

## BACKGROUND

### A.  Settlement Recovery Group

SRG is a claims filing and fund recovery service for class action settlements that contracts with class members to assist them in filing their claims to participate in settlements. SRG saves companies the time and expense of filing, tracking, and claiming their share of class action settlements by managing the entire recovery process, allowing class members to focus instead on their core business.  SRG requires no up-front payment from class members:  class members pay SRG a share of their recovery only in the event they actually recover funds.

While SRG does contact class members directly to discuss SRG's services, it also engages the services of third-party referrers who have preexisting relationships with potential claimants.  SRG is committed to fair and honest solicitation practices, and expects those it works with have the same commitment.

### B.  SRG's Relationship with Premier

SRG was introduced to Premier on June 3, 2013.  Based on conversations with Mr. Courkamp, Premier's president, soon after their introduction, SRG understood that Premier had an extensive merchant client base for its existing business.  SRG also understood that Premier intended to contact its clients to refer them to SRG, who could then enter into a separate contract with the merchants to provide them with claims filing services.  In exchange for the referral,

Premier would receive a fee based on the amount of recovery, if any, that the merchant would receive as part of the class action settlement.

SRG did not direct or in any way control the manner in which Premier contacted its clients that it hoped to refer to SRG. Indeed, throughout the course of its relationship with Premier, SRG had no role in Premier's solicitation process and did not review Premier's materials prior to their use. Nor did SRG provide Premier with solicitation material, phone scripts, or website assistance.

At Premier's request, SRG did provide a list of ten frequently asked questions by class members regarding SRG's services, and proposed answers to those questions, all of which were accurate. The very first question on that list that a merchant might ask was: "Can't I do this on my own?" The answer provided by SRG began as follows: "You certainly can do this on your own . . . ." The answer then described the services provided by SRG and the benefits of using its services.

SRG also provided Premier the contract that a referred merchant would sign with SRG. The contract, which was only one-page long, consisted of ten paragraphs. Of these ten paragraphs, two expressly advised merchants that they were not required to use SRG's services to obtain a recovery in this case:

> **1. Services**. SRG agrees to make reasonable efforts to file complete and accurate claims, and to seek payment of the Reimbursement on behalf of the Claimant in the Interchange Fee Settlements. Claimant has been informed of its right to file claims on its own behalf, but has decided to retain SRG to file its claims for settlement….
>
> …
>
> **10. Disclaimers**. SRG is not affiliated with the Claims Administrator or any other parties associated with the Interchange Fee Settlements. As set forth in Paragraph 3 above, SRG charges a fee for the Services. The Services include assisting Claimant in filing a claim. Claimant is not required to use the services of SRG in

3

filing such claim, but has voluntarily chosen to do so. There will be no fee or expense to Claimant if Claimant does not recover. . . .

The "Disclaimers" paragraph appeared directly above the signature line.

With the exception of these early communications, most of SRG's contact with Premier involved ministerial issues. The evidence will show that SRG received a handful of complaints from class members regarding alleged communications from Premier. In those instances, SRG promptly sent the complaints to Premier to address. Those complaints did not cause SRG concern that Premier was soliciting in an improper manner.

### C. Class Counsel's Submissions to the Court

On November 14 and 18, 2013, Class Counsel presented a letter submission to the Court regarding certain solicitations it alleged were made by SRG in connection with this case. Specifically, Class Counsel alleged that class members had contacted Epiq, the claims administrator, questioning whether they must sign up with SRG to file a claim after receiving "official-sounding voicemails from men identified as only 'Ryan' or 'Mark' at merchantclaim.com." ECF No. 6008. Class Counsel further alleged that when calling the number provided on the voicemails, class members heard another recorded message containing confusing and misleading information about the settlement, and that when a class member went to the merchantclaim.com website, they could download a "Frequently Asked Questions" document that also contained confusing and misleading information about the settlement. *Id.* The "Frequently Asked Questions" document, which bears the name "Merchant Claim Center" at the top, was accompanied by a form agreement that the class member could sign and return for SRG's counter-signature. *Id.*

Class Counsel's allegations came as a surprise to SRG. SRG had never heard (and certainly did not create) the recording and had not authored the "Frequently Asked Questions"

4

form that accompanied the SRG agreement.  SRG determined that Premier was responsible for

the communications at issue.  SRG immediately requested that Premier cease all solicitation

activity and shut down its website, which Premier agreed to do.  Soon thereafter, SRG terminated

its agreement with Premier.

### D.  SRG's Response to Class Counsel's Complaint and the Court's Order

Following the Court's order on December 3, 2013 (the "Order"), SRG notified over 4,000

merchant class members who were referred by Premier that their contracts with SRG were void.

Also pursuant to the Order, SRG provided to Class Counsel all materials it proposes to distribute

in connection with this case and sought Class Counsel's input on the materials.  Class Counsel

approved the materials without comment or revision.

## ARGUMENT

For the reasons discussed herein, the evidence will not support a finding that SRG made

any misleading communications.  Additionally, the evidence will not support a finding that SRG

is responsible for communications by Premier or any other third party referrer.  Finally, the

Court lacks subject matter jurisdiction to conduct the hearing.

### A.  The Evidence Does Not Support a Finding that the Communications at Issue Were Made by SRG

The Court seeks to determine who is responsible for the communications that were the

subject of Class Counsel's application.  *See* Order at 1.  The Court, in its December 3, 2013

Order, asked very specific questions about what role, if any, was played by SRG and Premier in

connection with the solicitation of class members.  In answer to those questions, the evidence

will show that SRG had no role in the solicitations identified by Class Counsel.  The voice on the

message produced by Class Counsel is not that of an SRG employee (nor is it familiar to SRG).

SRG did not create, provide to Premier, or distribute the "Frequently Asked Questions"

5

document.  *See* ECF No. 6088, Ex. 2.  SRG did not create or operate Premier's website (www.merchantclaim.com).  It did not receive calls made to Premier's toll free telephone line (1-800-256-5161) or faxes sent to Premier's fax line (1-800-256-1692).

Unfortunately, notwithstanding its express request, the Court will not hear directly from Premier regarding who made the solicitations and received calls via the 800 number (individuals identified only as "Ryan" and "Mark")[1] because no witness for Premier will appear at the hearing.  Class Counsel has stated that it does not plan to examine any witness other than Marc Rosenberg from SRG, who will testify that SRG employees were not soliciting on behalf of Premier and that SRG was not aware of or involved in Premier's solicitations.

**B.  The Evidence Does Not Support a Finding that SRG Is Liable for Premier's Actions**

Even if the Court determines that class members received misleading statements, there is no basis for a finding that SRG is responsible for those statements.

**1.  Premier and SRG Had Separate and Distinct Roles with Respect to Class Members**

SRG and Premier entered into a referral agreement (the "Agreement") in June 2013 that defined the terms of their relationship.  *See* ECF No. 6109.  The parties had no previous relationship, and the Agreement was negotiated at arms' length.

The Agreement contemplated a two-step process, with each party responsible for different steps.  Under this agreed framework, Premier managed the referral process, and SRG managed the claims process.  Premier's role was to contact potential class members, discuss

---

[1]  Coincidentally, the SRG employee who interacted with Mr. Courkamp is also named Marc (though with a different spelling than that contained in the documents produced by Premier).  Marc Rosenberg, the SRG employee who will testify at the hearing, is not the "Mark" apparently associated with Premier or Merchants Claim.

SRG's services with them, and then refer any interested class members to SRG.  Based on

communications with Mr. Courkamp, SRG understood that Premier had an extensive merchant

client base for its existing business, which it would primarily contact.

SRG's role was to assist Premier-referred class members with the class claims process, if

they entered into a contract with SRG.  After Premier's referral, SRG would establish a separate

relationship with the class member by way of a separate client agreement.  At that point, it was

contemplated that Premier would have no further role with the class member regarding SRG's

services.  It was not until Premier made initial contact with a class members and referred the

class members to SRG that SRG had any contact with the class members or even knew their

identities.

Given the nature of the parties' relationship, SRG may not be held responsible for

Premier's actions with respect to communications prior to referral.  *See Ehrens v. Lutheran*

*Church*, 385 F.3d 232, 235 (2d Cir. 2004) (a party "'generally has no duty to control the conduct

of third persons so as to prevent them from harming others'" (quoting *D'Amico v. Christie,* 518

N.E.2d 896, 901 (N.Y. 1987))).[2]  As discussed above, the evidence will show that SRG did not

make any of the communications that are the subject of Class Counsel's application.  SRG had

no knowledge of, or involvement in, Premier's communications.  Such involvement by SRG was

not contemplated under the Agreement.

---

[2]  Nor can SRG be held liable under a theory that SRG had a duty to supervise Premier.  A party
may be liable under a theory of negligent supervision or retention under New York law if it is
demonstrated, *inter alia*, that a tort-feasor and another party were in an employee-employer
relationship.  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).   Here, there is no
such evidence.  The employment contracts for the individuals who allegedly made misleading
misstatements at issue are with Premier (and make no mention of SRG) and predate any
relationship between Premier and SRG.

The evidence will show that when SRG received a handful of complaints from class members regarding alleged communications from Premier, it promptly sent the complaints to Premier to address.  SRG had no mechanism – by contract or otherwise – to involve itself in Premier's solicitation process.

### 2.  Premier Is Not SRG's Agent Under New York Law

The evidence will also demonstrate that Premier was not SRG's agent under New York law, and therefore SRG should not be held responsible for Premier's actions.[3]

### a.  Legal Standard

An agency relationship is created by "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 522 (2d Cir. 2006) (internal quotations omitted); *see also Steinbeck v. Steinbeck Heritage Found.,* 400 Fed. Appx. 572, 575 (2d Cir. 2010).

An essential element of agency is that the agent acts subject to the principal's direction and control.  *See Steinbeck,* 400 Fed. Appx. at 575; *In re Shulman Transport Enter., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984); *E.B.A. Wholesale Corp., v. S.B. Mech. Corp.,* 512 N.Y.S.2d 130, 131 (N.Y. App. Div. 1987). "The essence of control in an agency sense is in the *necessity* of the consent of the principal on a given matter." *Maung Ng We v. Merrill Lynch & Co.,* No. 99 Civ. 9687, 2000 WL 1159835, at *7 (S.D.N.Y. Aug. 15, 2000).  Control is established when a principal "prescrib[es] what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times." *Cleveland*, 448 F.3d at 522 (citing Restatement (Second) of Agency § 14 cmt. a).

---

[3]  The Agreement is governed by New York law.  *See ECF No. 6109.*

Control alone is not sufficient, however, to establish the existence of an agency

relationship.  The agent's power to alter legal relations between the principal and third persons is

also an essential element of the agency relationship.  *See Tip Top Farms, Inc. v. Dairylea Coop.,*

*Inc.,* 497 N.Y.S.2d 99, 105 (N.Y. App. Div. 1985) (an agent must be "placed in a position to

affect or alter the legal relations between the principal and third parties in matters within the

scope of the agency"); *see also Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d

414, 423 (S.D.N.Y. 2007) ("The authority of the agent is the very essence of the principal and

agent relationship.  Unless otherwise agreed, it includes only authority to act for the benefit of

the principal, and the source of the authority is always the principal, never the agent." (internal

quotations omitted)).[4]

### b.  The Agreement Does Not Support a Finding of an Agency Relationship

When an agency relationship is alleged to be established by contract, a court will

examine the language of the agreement to ascertain the nature of the relationship between the

parties.  *See Steinbeck,* 400 Fed. Appx. at 575; *G.K. Alan Assoc., Inc. v. Lazzari,* 840 N.Y.S.2d

378, 384 (N.Y. App. Div. 2007) ("The duties of an agent are defined by the terms of the

agreement that gave rise to the agency.").  The Agreement is devoid of language that could

support a finding that Premier is SRG's agent.  The term "agent" appears nowhere, and the

Agreement does not indicate that SRG may exercise control over or direct Premier in any

---

[4]  "[T]he question of whether an agency relationship exists is a mixed question of law and fact."
*Cabrera v. Jakabovitz,* 24 F.3d 372, 385 (2d Cir. 1994).  Unless the material facts from which
agency is to be inferred are undisputed, the question of agency should be submitted to the fact
finder. *Id. at 386; Slotkin v. Citizens Cas. Co.,* 614 F.2d 301, 317 (2d Cir. 1979).  "However,
where the material facts from which agency is to be inferred are not in dispute, the question of
agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in
the case, agency is a question for the court." *Mouawad Nat. Co. v. Lazare Kaplan Int'l Inc.*, 476
F. Supp. 2d 414, 420-23 (S.D.N.Y. 2007) (quotations omitted).

9

manner.  To the contrary, the Agreement merely provides that Premier "shall make Prospect Introductions of Qualified Prospects" to SRG "for the purpose of securing agreements under which [SRG] would prepare and submit claims on behalf of the Qualified Prospects in the Interchange Fee Settlements," without granting SRG authority over any aspect of Premier's undertaking.

The fact that Premier agreed to refer its customers to SRG does not provide a basis for the conclusion that there was an agency relationship.  *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121-22 (E.D.N.Y. 2011) (mere fact that putative agent sold a Maytag product did not plausibly support a finding that he was acting as Maytag's agent, and his alleged misrepresentation could therefore not be attributed to Maytag).  SRG's agreement to pay Premier a commission is also insufficient to demonstrate that their relationship was one of principal and agent.  *See I.K. Bery v. Irving R. Boody & Co., Inc.*, 99 Civ. 10968, 2000 WL 218398, at *4 (S.D.N.Y. Feb. 23, 2000) (payment of brokers' commissions does not show that the brokers were acting as agents); *Koninklijke Nedlloyd BV v. Uniroyal, Inc.*, 433 F. Supp. 121, 128 (S.D.N.Y. 1977):  ("[T]he mere payment of a commission pursuant to a statutory authorization does not establish an agency relationship."); *Spiro v. Pence,* 149 Misc. 2d 613 (N.Y. City Ct. 1991) (travel agent was independent contractor and not agent of provider of vacation services even though it received commissions from provider).

Furthermore, under the Agreement, not only did Premier lack the power to alter legal relationship between third parties and SRG – it was contractually *prohibited* from doing so.   The Agreement provides:

**Acting as Referrer Only**

It is understood that the Referrer is ONLY acting as a Referrer for Prospect Introduction purposes, and shall have NO authority to enter into any commitments on the Company's

10

behalf. Likewise, the Referrer has NO authority to bind the Company or make any representations other than those contained in the written materials provided by the Company.

ECF No. 6109 (emphasis in original).  SRG's name appeared on the class member agreements, and representatives of SRG reviewed them and executed them on SRG's behalf before a relationship with a class member was established.  Premier had no power, authority, or consent from SRG to do anything other than refer class members to SRG, and it was expressly prohibited from making any representations on behalf of SRG beyond those provided by SRG to the class member.

### c.   SRG Did Not Exercise Control Over Premier

The evidence at the hearing will also show that SRG did not control the manner in which Premier communicated with class members.  SRG did not review, approve, or provide feedback on any call script or voice message that Premier may have used.  SRG similarly did not review, approve, or provide feedback on Premier's written materials in advance of their use.

The evidence will also show that SRG sent Premier only limited materials regarding SRG's services, which contained none of the allegedly misleading representations that are the subject of the Court's inquiry.  Mr. Rosenberg, the primary SRG employee who communicated with Premier during the course of the parties' now-terminated agreement, sent Mr. Courkamp in the ordinary course an information sheet on the settlement and a written overview of SRG's services.  These were sent early on in the parties' dealings to educate Premier, and were not intended to guide Premier with respect to its communications with class members.  The evidence will also show that SRG provided additional information only at Premier's request, including a list of some questions commonly asked by class members regarding SRG's services and SRG's usual answers to those questions, based on SRG's general experiences.  SRG did not instruct

11

Premier to use that information, or any other information or materials, in its communications with class members.  SRG similarly did not provide call scripts or recordings to Premier.

The evidence will also show that communications between SRG and Premier were limited.  Mr. Rosenberg never met Mr. Courkamp (or any other Premier representative) in person.  Mr. Rosenberg received emails from Mr. Courkamp only a few times a week.  Mr. Rosenberg had no knowledge of how many class members Premier contacted or their identities (other than those who engaged SRG).

For these reasons, the evidence will show there was no agency relationship between Premier and SRG.  *See In re Parmalat Securities Litig.*, 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("When the existence of an agency relationship is uncertain, the courts often look to control as a critical indicator." (internal quotation and footnote omitted)); *see also Steinbeck,* 400 Fed. Appx. at 575-76 (holding no agency relationship existed when alleged principal had no control over alleged agent).

### C.  The Court Lacks Subject Matter Jurisdiction

SRG recognizes that the Court has expressed its view in this case and in prior proceedings that it has jurisdiction to address allegations of misleading communications by claims processing services.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, No. 96-CV-5238 (JG) (E.D.N.Y. Mar. 31, 2006).  SRG respectfully disagrees and objects to the Court's exercise of jurisdiction because neither Fed. R. Civ. P. 23 nor the All Writs Act, 28 U.S.C. § 1651(a) (1982) provides a basis for jurisdiction in these circumstances.

Moreover, even if the Court had jurisdiction over an actual dispute, it lacks jurisdiction here.  The case is moot because the issues before the Court "are no longer 'live.'"  *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001); *In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999).  All

issues raised by Class Counsel have been resolved, and no case or controversy remains that warrants an evidentiary hearing by the Court.

Class Counsel sought five items of relief in the proposed order they submitted to the Court on November 14, and SRG has satisfied each.  As Class Counsel advised the Court at the November 25 hearing, "Items [one] through three … [were] taken care of by the takedown of the website and representations that the telephone solicitations have ceased…." *See* Tr. at 3.  On November 26, 2013, SRG satisfied Class Counsel's fourth item, which requested the list of all merchants that signed up for SRG's services as a result of the solicitations here at issue.  *See* ECF No. 6113.  Finally, SRG satisfied Class Counsel's final request when SRG mailed the Court-ordered letter to notify each class member referred by Premier that its agreement with SRG was void.  *See* ECF No. 6130.  Thus, all relief that Class Counsel requested has been provided.

The issue for the hearing – whether SRG should be enjoined from assisting class members in this case going forward – was raised *sua sponte* by the Court.  Class Counsel has not requested that relief with respect to SRG.  *See* ECF No. 6104 (stating that "Class Counsel currently takes no position regarding the Court's Order to Show Cause 'why SRG and its principals should not be enjoined from engaging in any manner in clams processing services . . . related to any settlement of this case'").

Where, as here, "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation, the issue is moot." *Catanzano*, 277 F.3d at 107 (citations and quotations omitted).  The steps taken by SRG have resolved any potential class member confusion resulting from communications made by Premier, and SRG has agreed to take

13

steps to prevent any misleading communications with class members regarding SRG's services in the future. Therefore, because the Court's concerns have been sufficiently addressed, the issue is moot. Class Counsel's decision not to seek additional relief with respect to SRG further underscores the sufficiency of the relief already implemented. Further relief, including precluding SRG from participating in claims processing in this case, would be unwarranted and unjust.

## CONCLUSION

Because the evidence will show that SRG did not make and had no knowledge of the solicitations at issue, and there is no factual or legal basis for holding SRG responsible. For these reasons, and the reasons discussed herein, the Court should not order further relief against SRG.

Dated: January 15, 2014                    Respectfully submitted,

                                           BINDER & SCHWARTZ LLP

                                           By:    /s/ Neil S. Binder

                                                 Neil S. Binder
                                                 Daniel E. Clark
                                                 Lauren K. Handelsman
                                                 28 West 44th Street, 6th Floor
                                                 New York, NY 10036
                                                 (347) 334-5090 (tel.)
                                                 (347) 772-3072 (fax)

                                           *Attorneys for Settlement Recovery Group, LLC*

14