# United States District Court
# Eastern District Of New York

| | |
|---|---|
| In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation<br><br>This Document Relates to:<br>　　ALL ACTIONS | Case No. 1:05–md-1720–MKB-JO |

### Class Counsel's Memorandum of Law in Support of Settling Class Counsel's Motion for Establishment of Escrow Fund Sequestering a Percentage of Opt-Out Plaintiffs' Settlement Proceeds

Robins Kaplan LLP
K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Tel: 612-349-8500
Fax: 612-339-4181

Berger & Montague, P.C.
H. Laddie Montague
Merrill G. Davidoff
Michael J. Kane
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

Robbins Geller Rudman & Dowd LLP
Patrick Coughlin
Alexandra S. Bernay
Carmen A. Medici
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: 619-231-1058
Fax: 619-231-7423

*Co-Lead Counsel for Class Plaintiffs*

i

**TABLE OF CONTENTS**

Page

I.      Introduction ................................................................................................. 1

II.     Factual Background ...................................................................................... 2

        A.      History of this litigation and settlement ........................................ 2

        B.      Procedural history ......................................................................... 5

III.    Class Counsel Conferred a Substantial Benefit on the Opt-Out Plaintiffs .............. 7

IV.     Class Counsel are Entitled to Compensation from Opt-Out Plaintiffs ................... 8

        A.      Courts hold that counsel should be compensated for common-
                benefit work .................................................................................. 8

V.      The Proposed Manner of Compensation and Reimbursement to Class
        Counsel is Efficient ................................................................................... 10

VI.     Conclusion ................................................................................................ 13

# TABLE OF AUTHORITIES

Page

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.,*
611 F. Supp. 1296 (E.D.N.Y. 1985) ............................................................... 10

*In re Air Crash Disaster at Florida Everglades,*
549 F.2d 1006 (5th Cir. Fla. 1977) ............................................................... 12

*In re Diet Drugs,*
582 F.3d 524 (3d Cir. 2009) ..................................................................... 9, 12

*In re Genetically Modified Rice Litig.,*
2010 WL 716190 (E.D. Mo. Feb. 24, 2010) ................................................... 11

*In re Linerboard Antitrust Litig.,*
292 F. Supp. 2d 644 (E.D. Pa. 2003) ......................................................... 9, 10

*In re MGM Grand Hotel Fire Litig.,*
660 F. Supp. 522 (D. Nev. 1987) .................................................................. 12

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
1996 WL 900349, MDL No. 1014 (E.D. Pa. Jun. 17, 1996) .......................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................ 3

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................... passim

*In re Protegen Sling and Vesica System Prods. Litig.,*
2002 WL 31834446, MDL 1387 (D. Md. Apr. 12, 2002) ............................... 11

*In re Rezulin Prods. Liab. Litig.,*
2002 WL 441342, MDL No. 1348 (S.D.N.Y. 2002) ...................................... 11

*In re WorldCom, Inc. Securities Litig.,*
2004 U.S. Dist. LEXIS 22991 (S.D.N.Y. Nov. 10, 2004) ............................... 9

*In re Zyprexa Prods. Liab. Litig.,*
467 F. Supp. 2d 256 (E.D.N.Y. 2006) ........................................................... 9

*In re Zyprexa Prods. Liab. Litig.,*
    594 F.3d 113 (2d Cir. 2010) ........................................................................... 9

*Smiley v. Sincoff,*
    958 F.2d 498 (2d Cir. 1992) ........................................................................... 9

*Turner v. Murphy Oil,*
    422 F. Supp. 2d 676 (E.D. La. 2006) ........................................................... 11

**Other Authorities**

Manual for Complex Litigation § 20.312 (4th ed. 2011) ......................................... 9

*Report of the Third Circuit Task Force on Court Awarded Attorney Fees,*
    108 F.R.D. 237 (1985) ................................................................................. 10

I.    **Introduction**

For more than eight years, Class Counsel litigated this complex antitrust case against the nation's largest financial institutions and some of its most prominent defense law firms. Through these efforts, Class Counsel obtained a record-setting settlement and secured injunctive relief and other reforms that have forever altered the payment-card industry. In order to achieve this result, Class Counsel spent tens of millions of dollars in out-of-pocket costs, and over $160 million in attorney time. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 439 (E.D.N.Y. 2014). Thirteen individual merchants (the "Individual Plaintiffs") pursued claims alongside Class Counsel and participated in the litigation and settlement process that led to the class and Individual Plaintiff settlements.[1]

After the Class settlement, several of the merchants that opted out of the $7.25 billion cash settlement (the "Opt-Out Plaintiffs") settled their virtually identical claims with Defendants after little-to-no independent litigation of their claims. Class Counsel anticipate that there will be more and even larger settlements in the future and therefore respectfully request the entry of an Order that creates a framework for compensating Class Counsel for the benefits they conferred on the Opt-Out Plaintiffs. Pursuant to well-established law, Class Counsel propose that the Court: (1) assess each

---

[1]    This motion is not directed at these plaintiffs, known as the Individual Plaintiffs, which include: Ahold, U.S.A., Inc., Albertson's Inc., BI-LO, LLC, Bruno's Supermarkets, Inc., Delhaize America, Inc., Eckerd Corporation, The Great Atlantic & Pacific Tea Company, H.E. Butt Grocery Company, Hy-Vee, Inc., The Kroger Co., Maxi Drug, Inc., Meijer, Inc., Meijer Stores Limited Partnership, Pathmark Stores, Inc., Publix Supermarkets, Inc., QVC, Inc., Raley's, Rite Aid Corporation, Safeway, Inc., Supervalu Inc., Wakefern Food Corporation, and The Walgreen Co.  Individual Plaintiffs have settled their cases against Defendants.

settling Opt-Out Merchant an equitable fee payable to Class Counsel, in the amount of 9.56%[2] of the amount of each settlement; (2) order that Defendants retain 9.56% of any Opt-Out settlement entered into after the date of this Order; and (3) place any such assessments and retentions in a separate escrow fund for the benefit of Class Counsel.

## II.   Factual Background

### A.   History of this litigation and settlement

In the materials filed in connection with their motion for final approval, Class Counsel set forth details regarding their efforts over the course of this action.[3] As the Court noted in its January 10, 2014 Order awarding fees and costs, Class Counsel: (1) investigated and developed their case without the benefit of a prior government investigation; (2) hired and worked extensively with their expert witnesses; (3) conducted wide-ranging discovery, including substantial involvement in hundreds of party and non-party depositions; (4) reviewed millions of pages of documents to select exhibits for depositions and for use in written submissions; (5) negotiated numerous discovery disputes and brought those disputes to the Court's attention when necessary; (6) filed and argued dispositive and non-dispositive motions; (7) defended against motions served on them by multiple, sophisticated defense counsel; (8) prepared regular status reports; (9) participated in numerous case-management conferences and other hearings; and (10) participated in Court-supervised mediation proceedings.

---

[2]      As fully explained below, 9.56% corresponds to the percentage of the cash settlement fund that was awarded to Class Counsel as attorney fees.

[3]      *See* Declaration of K. Craig Wildfang, Esq. in Support of Class Plaintiffs' Motion for Final Approval of Settlement and Class Plaintiffs' Joint Motion for Award of Attorneys' Fees, Expenses and Class Plaintiffs' Awards (D.E. 2113-6) ("Wildfang Decl.").

*Payment Card*, 991 F. Supp. 2d at 440-42; (Wildfang Long Form Decl. ¶¶ 55-100 [D.E. 2113–6], Apr. 11, 2014.) By late 2011, Class Counsel built the class cases to a point where a second set of Rule 12 motions, as well as class certification, summary-judgment and *Daubert* motions were fully briefed and argued, and the case was all but trial-ready, with a Court-set tentative trial date of September 2012. Class Counsel then completed a negotiation and mediation effort that had spanned many years and which resulted in the approved settlement. (*See generally* Wildfang Long Form Decl. ¶¶ 170–189.)

On December 13, 2013, the Court granted Class Counsel's motion for final approval of the settlement, concluding that it was both procedurally and substantively fair. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 241 (E.D.N.Y. 2013). Shortly thereafter, on January 10, 2014, the Court ordered attorney fees in the amount of $544.8 million for Class Counsel's efforts and reimbursement of $27,037,716.97 in expenses. *Payment Card*, 991 F. Supp. 2d at 440. In awarding this fee, the Court concluded that this case "stands out in size, duration, complexity, and in the nature of the relief afforded to both the injunctive relief and damages classes." *Id*. at 439. The Court acknowledged that Class Counsel took significant risks in pursuing this case, including proceeding without the benefit of any government investigation and contending with the risk of dismissal based on the unfavorable *NaBanco* decision or the *Illinois Brick* doctrine. *Id*. at 441. The Court noted that Class Counsel overcame those risks with "skill and tenacity," such that they "should be rewarded for undertaking [these risks] and for achieving substantial value for the class." *Id*. at 442. The Court recognized that the value that Class Counsel

3

achieved for the Class included assisting in securing the passage of the Durbin Amendment, and the DOJ's consent decree with Visa and MasterCard. *Id*. at 442. Despite committing this effort to achieve a historic result for the Class, Class Counsel voluntarily reduced their requested fees to account for the merchants that opted out of the damages class. *Id*. at 439 n.3. Class Counsel recognized the inequity of penalizing those class members who chose to remain in the Class from the result of some merchants opting out. *Id*. at 441 n.3. Citing authority that authorizes such equitable awards, the Court acknowledged that Class Counsel "reserve[d] the right to seek additional fees from opt-outs on the theory that they benefited from Class Counsel's efforts." *Id*.

In contrast to Class Counsel and the Class Representatives, many merchants sat on the litigation sidelines for years. These merchants finally opted out of the damages class and commenced their own damages actions only after a settlement was reached. The Opt-Out Plaintiffs—many of which are Fortune 500 companies that have the wherewithal to litigate their claims themselves[4]—now seek to take advantage of the fruits of Class Counsel's efforts. Indeed, because of the "take-down" provisions in the settlement—capped at 25% of the total cash fund—these late-comers will seek to extract at least $1.5 billion from the cash fund generated by the Class (set aside for opt-outs), and perhaps even more. Some of the most significant and well-known merchants in the United States filed those cases, including among others:

---

[4]       In contrast, the Individual Plaintiffs did not sit on the sidelines, but rather actively litigated their claims from the beginning. While they no doubt benefitted from the efforts of Class Counsel, they at least shouldered their own burdens.

- Walmart
- The Home Depot
- Target
- Bloomingdales;
- Delta Air Lines;
- Hewlett-Packard;
- Kohl's;
- Macy's;
- Office Depot;
- Saks Fifth Avenue;
- Staples;
- T.J. Maxx; and
- Victoria's Secret.

**B.    Procedural history**

The Judicial Panel on Multidistrict Litigation transferred to this Court all of the Opt-Out Plaintiffs' cases filed in other districts, as they became ripe for transfer, including cases in which the Opt-Out Plaintiffs objected to such transfer. *See* JPMDL Transfer Order (D.E. 6060). Since that time, the Opt-Out Plaintiffs and their counsel have relied heavily—if not exclusively—on the litigation record that Class Counsel painstakingly assembled at great cost and at great risk. In fact, some of the first documents that the Opt-Out Plaintiffs received in discovery was the discovery record in MDL 1720, which was the product of Class Counsel's extraordinary efforts over almost a decade. (Jt. Case Status Rep. & Conf. Agenda at 1 [D.E. 4], Feb. 21. 2014.) And in response to Defendants' motions to dismiss their complaints, the Opt-Out Plaintiffs submitted legal memoranda that made many of the same substantive arguments and cited the same cases as Class Counsel had done years earlier, including novel arguments developed by Class Counsel such as the claim that the networks' IPOs' violated Section 7 of the Clayton Act, or that the Bank Defendants were engaged in a

5

horizontal conspiracy even after the IPOs. *Compare* 7-11 Mem. Opp Mot. Dismiss at 17-40 [Opt-Out D.E. 59] (May 5, 2014) *with* Cl. Pls' Opp. Mot. Sum. J. at 22-40, 65-77 [D.E. 1478] (Jul. 6, 2011) (each addressing Defendants' arguments that *Illinois Brick* doctrine and networks' IPOs defeated Plaintiffs' claims for damages under Section 1 of the Sherman Act). The Opt-Out Plaintiffs and their counsel will undoubtedly continue to use or refer to the legal arguments, the expert analysis, the deposition testimony and exhibit collection, and the analysis, organization and presentation of the evidence developed by Class Counsel on motions for summary judgment, and in class-certification submissions. Class Counsel do not seek to preclude the Opt-Out Plaintiffs from using their intellectual property and work product. Class Counsel does, however, seek equitable compensation for the value we have conferred on the Opt-Out Plaintiffs, which will continue to rely heavily on the Class's discovery record and work product.

Many Merchants[5] have now settled their claims at this early stage in their litigation, likely without conducting any of their own discovery or otherwise independently litigating their cases. It is highly likely that these settlements approximate what would have been the Opt-Out Plaintiffs' share of the Class Fund, except of course, their recoveries are not reduced by the value of Class Counsel's fees and costs. Once Class Counsel learned of the first of these settlements, apparently with Delta Air Lines—they sent a letter to counsel for Delta, seeking to initiate a dialogue on compensating the Class and Class Counsel fairly for creating the litigation records that

---

[5]     Some of the settling Opt-Out Plaintiffs include Delta Air Lines, Hewlett-Packard, DOTS, Live Nation Entertainment, Cox Media, and Progressive Casualty Insurance.

Delta relied upon in settling its case. Class Counsel has never received any response from Delta's counsel. However, shortly after the letter was sent to Delta, Class Counsel was contacted by Visa's counsel who requested that we not send any more such letters, or to file the instant motion, because such actions would "complicate" Defendants' attempts to settle with the Opt-Out Plaintiffs. Class Counsel decided to bring this motion now to avoid any argument by settling Opt-Out Plaintiffs, or by Defendants, that such a motion was untimely.[6]

## III.   Class Counsel Conferred a Substantial Benefit on the Opt-Out Plaintiffs

At the outset of this proceeding, the Court designated Co-Lead Counsel for the class and ordered that they would be "generally . . . responsible for coordinating the activities of" their respective clients and the Class.  (Pretrial Or. 5 at 1, 2–3 [D.E. 279]). Class Counsel executed this duty by performing the activities noted above.

Beginning in the fall of 2012, at the initiation of the Objecting Plaintiffs' counsel, whose major clients also opted out,  Class Counsel produced copies of key documents, including but not limited to: (1) all of Class Plaintiffs' and Defendants' expert reports in the Class case, including exhibits; (2) all transcripts of all Defendants' and Class Plaintiffs' experts' depositions in the Class case, including exhibits; and (3) Class Plaintiffs' and Defendants' Summary Judgment and *Daubert* briefs and Rule 56.1 face statements in the Class case. (*See* D.E. 2157 & 2157-1 (Apr. 18, 2013)).

---

[6]     Any such argument would not be true in this circumstance, since the Opt Outs have been on notice since August 16, 2013 that Class Counsel reserved the rights to seek such equitable fee, which the Court recognized in its attorney-fee order. *Payment Card*, 991 F. Supp. 2d at 439 n.3; (Rep. Mem. Sup. Atty Fees at 7, D.E. 5940).

This production of Class Counsel's work product—which was compiled for the common benefit of the Class—clearly confers a valuable benefit on Opt-Out Plaintiffs and their counsel. But for the work of Class Counsel, Opt-Out Plaintiffs and their counsel would have had to invest the time and effort that Class Counsel expended to secure a favorable result for their clients. The Opt-Outs who have already settled are clear examples of merchants whose counsel have relied exclusively on Class Counsel's efforts. They have presumably settled their claims for cash or other consideration worth millions of dollars, all without undertaking the burden of briefing dispositive motions, creating a factual record, and putting their resources—as well as those of their counsel—at risk.

Opt-Out Plaintiffs and their counsel that have not yet settled will continue to benefit from Class Counsel's efforts in litigating their own cases. Any recovery Opt-Out Plaintiffs secure will be attributable in some part—and likely in substantial part—to the efforts of Class Counsel. As equitable compensation for services rendered and benefits conferred, under well-settled precedent of this and other federal courts, Class Counsel seek a reasonable portion of any recovery Opt-Out Plaintiffs secure in connection with the settlement of any claims that have been or could have been brought in MDL 1720, by the mechanisms proposed by this Motion.

## IV.  Class Counsel are Entitled to Compensation from Opt-Out Plaintiffs

### A.  Courts hold that counsel should be compensated for common-benefit work

"A necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive

reasonable compensation for their work." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003). Thus, courts recognize the "common benefit doctrine" to award attorney fees when "litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009); *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128–130 (2d Cir. 2010) (Kaplan, J. concurring); *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992). It is well established that an MDL judge has authority to create a common fund for the benefit of class counsel by directing defendants to deposit a portion of settlement funds into escrow. *See Linerboard*, 292 F. Supp. 2d at 654; Manual for Complex Litigation § 20.312 (4th ed. 2011). Indeed, "it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds." *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265–266 (E.D.N.Y. 2006) (Weinstein, J.); *In re WorldCom, Inc. Securities Litig.*, 2004 U.S. Dist. LEXIS 22991 at *2 (S.D.N.Y. Nov. 10, 2004).

The common-fund doctrine exists also to prevent the unjust enrichment of parties and counsel that rely on the work of others who created a litigation record and settlement fund which form the basis for later settlements by those parties. *See Report of the Third Circuit Task Force on Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985). As the Second Circuit held, "foreclosing those recoveries as a source of funding for the common benefit work would enrich the non-contributing individual plaintiffs unjustly at the expense of either or both of the lead counsel and any contributing individual

plaintiffs." *Zyprexa*, 594 F.3d at 130 (Kaplan, J., concurring). The creation of a common-benefit fund, therefore, "is analogous to an action in *quantum merit*: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1296, 1305 (E.D.N.Y. 1985) (citation omitted).

In *Linerboard*, the plaintiffs that opted out of the class initially sought access to the discovery amassed by class counsel "for the limited purpose of deciding whether to opt out of the classes or object to the settlement." *Linerboard*, 292 F. Supp. 2d at 659. They subsequently sought broader access to discovery "for use in formulating their cases." *Id.* The court held that there was a "sufficient showing to warrant establishment of a framework to ensure that funds will be available to compensate [the counsel who did the work] should the court later determine such compensation is warranted." *Id.* at 662. Those counsel for opt-outs in *Linerboard*—like Opt-Out Plaintiffs' counsel here—had not been "actively engaged in the cases from the outset," and had not "participated in the early stages of the litigation and obtained a settlement on behalf of their clients before the class action had resulted in a . . . settlement." *See also Id.* at 662-63. (citing "the benefit [opt out plaintiffs] have already received through [settling counsel's] work."

## V.   The Proposed Manner of Compensation and Reimbursement to Class Counsel is Efficient

Class Counsel propose that the Court establish an escrow fund, into which a reasonable portion (9.56%) of the proceeds from any settlements of any claims that have been or could have been brought in MDL 1720 against any Defendant will be deposited

in a fund designated by Class Counsel. The fund would rightfully account for both fees earned and costs incurred by Class Counsel to achieve a result that now benefits the Opt-Out Plaintiffs.[7]

The best measure of the reasonable value of Class Counsel's time has already been established, *i.e.* the 9.56% of the Class Settlement Fund the Court has already determined represents fair compensation to Class Counsel for the risks and costs they incurred.[8] There is no reason to believe that some other amount is a better measure.

The 9.56% figure is consistent with amounts assessed for opt-out plaintiffs and their counsel in similar cases. *See In re Genetically Modified Rice Litig.*, 2010 WL 716190 at *6 (E.D. Mo. Feb. 24, 2010) ("Courts have ordered contributions between 9% and 17% in MDLs for common benefit work."). *Accord, e.g., In re Genetically Modified Rice Litig.*, 2010 WL 716190 at *1 (11, 10 and 9 percent set aside for each of three types of opt-out cases respectively); *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 456-57 (E.D. Pa. 2008), *aff'd*, 582 F.3d at 532 (9 percent withheld for fees and costs for federal claims); *Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 684 (E.D. La. 2006) (12 percent contribution); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 441342, MDL No. 1348 (S.D.N.Y. 2002) (6 percent in federal cases placed into escrow); *In re Protegen Sling and Vesica System Prods. Litig.*, 2002 WL 31834446, at *1, MDL 1387 (D. Md. Apr. 12, 2002) (9 percent contribution); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1996 WL 900349, MDL No. 1014 (E.D. Pa. Jun. 17, 1996) (5 percent for costs and as much as 12 percent for fees); *In re*

---

[7]       Class Counsel will transfer the cost portion of any assessment upon Opt-Outs to the Class Fund, since Class Counsel have been fully reimbursed for the costs they have incurred. *See Payment* Card, 991 F. Supp. 2d at 448.

[8]       *Payment* Card, 991 F. Supp. 2d at 445, 448.

*MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522 (D. Nev. 1987) (5 percent for fees and 1.5 percent for costs); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1018 (5th Cir. Fla. 1977) (8 percent of fees of inactive counsel awarded to active counsel).

To reduce administrative burden, Class Counsel propose that: (1) with regard to settlements already consummated, that the settling Opt-Out Plaintiffs pay into a fund designated by Class Counsel 9.56% of the economic value of its recovery;[9] and (2) with regard to settlements not yet consummated, the Defendants hold back the appropriate amount from settlements reached and deposit the amounts in the escrow fund. Upon regular intervals, any funds in escrow could either (1) be distributed upon Class Counsel's petitions to the Court; or (2) await further orders of the Court based on subsequent developments in the case. This mirrors the procedure implemented by the district court and upheld by the Third Circuit in the *Diet Drugs* litigation, in which the defendant "with[held] 9% of the payments it made to plaintiffs whose cases were transferred to the MDL and place those funds in the 'MDL Fee and Cost Account,' from which Class Counsel would be compensated for providing case-wide services. . . . . The percentages were to be deducted from the fees due to the individual lawyers for the opt-out claimants who recovered against [the defendant]." *See, e.g., Diet Drugs*, 582 F.3d at 532.

---

[9]      So, for example, if the consideration for the settlement included future fee reductions, or other items of economic value, the Opt-Out should pay the ordered percentage of the present value of those future fee reductions.

12

## VI.  Conclusion

Class Counsel's diligence and risk taking created a settlement fund and a structure of rules reforms that benefit every merchant who has accepted Visa or MasterCard and will continue to benefit them in the future. On Class Counsel's own initiative, Class Counsel has to this point received *no compensation* for creating the $1.5 billion takedown from this fund that presumably will be paid out to Opt-Out Plaintiffs.  Class Counsel, therefore, respectfully requests that this Court order the creation of a fund with modest contributions for Opt-Out Plaintiffs to compensate Class Counsel for their efforts and prevent others from unjustly benefitting from them.

January 12, 2015                    Respectfully submitted,

                                    ROBINS KAPLAN LLP

                                    *s/ Ryan W. Marth*
                                    K. Craig Wildfang
                                    Thomas J. Undlin
                                    Ryan W. Marth
                                    2800 LaSalle Plaza
                                    800 LaSalle Avenue South
                                    Minneapolis, MN 55402-2015
                                    Telephone: 612-349-8500
                                    612-339-4181 (fax)

                                    BERGER & MONTAGUE, P.C.
                                    H. Laddie Montague, Jr.
                                    Merrill G. Davidoff
                                    Michael J. Kane
                                    1622 Locust Street
                                    Philadelphia, PA 19103
                                    Telephone: 215-875-3000
                                    215-875-4604 (fax)

13

ROBBINS GELLER RUDMAN & DOWD LLP
Patrick J. Coughlin
Alexandra S. Bernay
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
619-231-7423 (fax)

85244106.4