UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720<br><br>Master File No. 05-md-01720-MKB-JO |
| This Document Relates To: ALL ACTIONS | |

**RESPONSE IN SUPPORT OF APPLICATION OF STEVE D. SHADOWEN, MICHAEL J. FREED, AND ROBERT G. EISLER FOR APPOINTMENT AS CO-LEAD COUNSEL FOR EQUITABLE-RELIEF CLASS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.   The Court Should Appoint Separate Counsel for the (b)(2) Class ................................1

    II.  HFG Counsel Are Best Qualified to Represent the 23(b)(2) Class ..............................4

        A.  Proposal for a "Non-Surcharge Subclass" …………………………………..4

        B.  Proposal to Eliminate the HAC Rule and Default Interchange…………….…...5

CONCLUSION.....................................................................................................................7

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    1996 WL 167347, 1996-1 Trade Cas. (CCH) ¶ 71,350 (N.D. Ill. Apr. 4, 1996) ......................7

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ..................................................................................................7

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................................................................................2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    --- F.3d ---, No. 12-4671-CV, 2016 WL 3563719 (2d Cir. June 30, 2016) .........................2, 3

*People ex rel. Spitzer v. Applied Card Sys., Inc.*,
    11 N.Y.3d 105, 894 N.E.2d 1 (2008) ........................................................................................3

**STATUTES AND RULES**

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

**OTHER AUTHORITIES**

*Official Journal of the European Union*, Reg. 2015/751 on Interchange Fees for Card-based
Payment Transactions, ¶ 37 ........................................................................................................6

**INTRODUCTION**

The Court should appoint separate counsel to represent a Rule 23(b)(2) class for purposes of pursing equitable relief. The Second Circuit decision vacating the prior settlement essentially requires a separate equitable-relief class with separate counsel. And even if that were not clear, prudence dictates appointing separate counsel in this rapidly changing industry. It would be a disaster for merchants to find themselves back here again in another three years – still with no injunctive relief – after another reversal by the Court of Appeals.

The Court should appoint HFG Counsel[1] to represent the (b)(2) class. We have the antitrust experience, case-specific knowledge, firepower, and trial expertise to bring this case to a prompt and successful resolution.

**ARGUMENT**

**I.     The Court Should Appoint Separate Counsel for the (b)(2) Class.**

Several of the responses to the August 11, 2016 Order (ECF #6654) argue that the Court should not appoint separate counsel for the (b)(2) class because class members can get equitable relief through a (b)(3) class while preserving their opt-out rights.[2] The fundamental premise of these responses is that the conflicts that caused the Second Circuit reversal were not structural – were not inherent in the differing interests of current and future merchants – but arose solely from the particular settlement terms that class counsel negotiated. For example, 7-Eleven argues that the reversal "stemmed *entirely* from class counsel's settlement choices—namely, an unprecedented misuse of a (b)(2) class construct to resolve future interests."[3] And the responses

---

[1] Steve Shadowen of Hilliard & Shadowen LLP; Michael Freed of Freed Kanner London & Millen LLC; and Robert Eisler of Grant & Eisenhofer P.A.

[2] *See* submissions by Home Depot (ECF #6663), Former Class Plaintiff Group (ECF #6676), 7-Eleven Plaintiffs (ECF #6668), and Target Plaintiffs (ECF #6673).

[3] ECF #6668 at p. 7 (emphasis added).

1

argue that different settlement terms for a (b)(3) class can avoid what these parties contend is a narrow conflict.

The assumption underlying these responses – that the Second Circuit was concerned only with the conflicts created by the particular settlement terms – is not correct. Citing Supreme Court and its own precedent, the Second Circuit noted that "fault lines between present and future plaintiffs and among plaintiffs with differently valued claims" may be "so fundamental that they require[] 'structural protection' in the form of subclasses with separate counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F.3d --- No. 12-4671-CV, 2016 WL 3563719, at *5 (2d Cir. June 30, 2016) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)). The Court's opinion makes unmistakably clear its conclusion that the conflicts here require such structural protection:

- "The conflict is clear between merchants of the (b)(3) class, which are pursuing solely monetary relief, and merchants in the (b)(2) class, defined as those seeking only injunctive relief. The former would want to maximize cash compensation for past harm, and the latter would want to maximize restraints on network rules to prevent harm in the future." *Id*. at *6.
- "The class counsel and class representatives who negotiated and entered into the Settlement Agreement were in the position to trade diminution of (b)(2) relief for increase of (b)(3) relief." *Id*.
- "*Structural defects in this class action* created a fundamental conflict between the (b)(3) and (b)(2) classes and sapped class counsel of the incentive to zealously represent the latter." *Id*. at *8 (emphasis added).


argue that different settlement terms for a (b)(3) class can avoid what these parties contend is a narrow conflict.

The assumption underlying these responses – that the Second Circuit was concerned only with the conflicts created by the particular settlement terms – is not correct. Citing Supreme Court and its own precedent, the Second Circuit noted that "fault lines between present and future plaintiffs and among plaintiffs with differently valued claims" may be "so fundamental that they require[] 'structural protection' in the form of subclasses with separate counsel." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F.3d --- No. 12-4671-CV, 2016 WL 3563719, at *5 (2d Cir. June 30, 2016) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)). The Court's opinion makes unmistakably clear its conclusion that the conflicts here require such structural protection:

- "The conflict is clear between merchants of the (b)(3) class, which are pursuing solely monetary relief, and merchants in the (b)(2) class, defined as those seeking only injunctive relief. The former would want to maximize cash compensation for past harm, and the latter would want to maximize restraints on network rules to prevent harm in the future." *Id*. at *6.
- "The class counsel and class representatives who negotiated and entered into the Settlement Agreement were in the position to trade diminution of (b)(2) relief for increase of (b)(3) relief." *Id*.
- "*Structural defects in this class action* created a fundamental conflict between the (b)(3) and (b)(2) classes and sapped class counsel of the incentive to zealously represent the latter." *Id*. at *8 (emphasis added).

- "many members of the (b)(3) class have little to no interest in the efficacy of the injunctive relief because they no longer operate, or no longer accept Visa or MasterCard, or have declining credit card sales," while "many members of the (b)(2) class have little to no interest in the size of the damages award because they did not operate or accept Visa or MasterCard before November 28, 2012, or have growing credit card sales." *Id*. at *7.

- "Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order to somehow reach settlement." *Id*.

Regardless of whether one *agrees* with the Court of Appeals' decision, the fact is the Court plainly concluded that the conflict did not arise solely from the settlement's terms. The Court found that the conflict is inherent in the differing circumstances of millions of merchants. Lumping the damages and equitable relief claims into a single (b)(3) class would not make that conflict go away.[4]

Even if the Second Circuit's decision were not clear – it is – the class's interests would still prescribe appointment of separate counsel for a (b)(2) class. This industry is in a period of rapid technological change, and the worst possible outcome for merchants would be years more of delayed relief brought about by another appellate reversal. In the face of the Second Circuit's decision, the risks of not appointing separate counsel for a (b)(2) class are far too great.

---

[4] A (b)(2) class's pursuit of equitable relief in the form of restitution would not create the conflict that arose from the class's pursuit of money damages and equitable relief. Unlike money damages, restitution is recoverable by future as well as current merchants. *See, e.g.*, *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 125–26, 894 N.E.2d 1, 14–15 (2008) (approving restitution for future-arising claims).

## II. HFG Counsel Are Best Qualified to Represent the 23(b)(2) Class.

In addition to HFG Counsel, several well-regarded firms have applied to lead the (b)(2) class. HFG Counsel are unique, however, in combining antitrust expertise, case-specific knowledge, firepower, and antitrust-trial experience. As set forth in HFG Counsel's application, we can hit the ground running and bring this case to a prompt and successful resolution, through settlement or trial. *See* HFG Counsel Application for Appointment, ECF #6673, pp. 4-8.

A few applications touched on the substantive relief that counsel would pursue, and we address those briefly here.

### A. Proposal for a "Non-Surcharge Subclass"

One applicant seeks to represent a "Non-Surcharge Subclass" comprised of only merchants who are currently prohibited by state law or their acceptance of American Express cards from imposing a surcharge on Visa or MasterCard transactions. ECF #6682 at pp. 4-6 (Keller Rohrback Application for Appointment). Such a subclass would add unnecessary complexity.

A subclass is unnecessary because *all* merchants – not just those who *currently* are in no-surcharge states or accept American Express – have an interest in maximizing their ability to steer transactions. Every state could enact no-surcharge legislation tomorrow, so merchants who currently are in states that permit surcharging have an interest in equitable relief that preserves an ability to steer transactions in no-surcharge states. And every state that currently prohibits surcharging could eliminate that anticompetitive statute tomorrow, so merchants currently in those states have an interest in maximizing all merchants' ability to surcharge. Indeed, all merchants share a common interest in maximizing the ability of all merchants in every state to steer transactions to low-cost cards so that new providers will enter the market with low

4

interchange fees – new competition that will benefit merchants in all states.[5] And all merchants, regardless of whether they currently accept American Express, benefit from an ability to steer Visa and MasterCard transactions that is independent of the merchant's current or future decision to accept American Express.

HFG Counsel intend to pursue relief that includes making the Honor All Cards ("HAC") Rule inapplicable in states that prohibit surcharging, and making all of the equitable relief effective regardless of whether the merchant accepts American Express. ECF #6673 at p. 3 (HFG Counsel Application for Appointment). This relief will maximize the ability of all merchants to steer transactions, regardless of current or future state law and of the merchant's current or future acceptance of American Express. A (b)(2) subclass is not necessary.

### B. Proposal to Eliminate the HAC Rule and Default Interchange

One application opposing a (b)(2) class seems to suggest that the (b)(3) class should pursue across-the-board elimination of the HAC Rule and imposition of a court-set default interchange rate. ECF #6676 at pp. 11-15 (Kirby McInerny Application for Appointment). As noted in HFG Counsel's application, a definitive decision regarding appropriate relief must await additional discovery, further economic analysis, and full consultation with all stakeholders. *See* HFG Counsel Application for Appointment, ECF #6673, pp. 2-3. But we offer these preliminary observations:

---

[5] We also note that countless merchants engage in relevant transactions in multiple states, some of which permit surcharging and some of which do not. What would be the point of having these merchants represented by two different sets of lawyers regarding injunctive relief? Would it even be practically workable?

*HAC Rule*

The HAC Rule has some procompetitive benefits, among which are facilitating communication to the consumer that a merchant will accept her card. *See, e.g., Official Journal of the European Union*, Reg. 2015/751 on Interchange Fees for Card-based Payment Transactions, ¶ 37. We note that no jurisdiction, whether applying a competition-law regime or a regulatory regime, has required across-the-board elimination of the HAC Rule. And jurisdictions that have addressed the Rule through regulations have parsed it to a fare-thee-well. *Id*.

Under U.S. antitrust law, the fate of the HAC Rule will be determined by the Court's balancing of the Rule's procompetitive benefits against its anticompetitive effects. HFG Counsel are confident that the Rule's anticompetitive effects strongly predominate in states that prohibit surcharging. But it is not obvious why the HAC Rule – and its pro-consumer aspects – should be eliminated in states that permit surcharging. That is why HFG Counsel's preliminary view is that the HAC Rule should be made inoperable only in states that prohibit surcharging.[6]

*Court-Set Interchange Rate*

An interchange rate allows merchants and issuing banks to exchange a price for the services that they provide each other. When merchants have a full ability to steer transactions at the point of sale, the interchange fee may flow from the issuing bank to the merchant. Or it may continue to flow from the merchant to the issuing bank, but at a rate set by competition. In these circumstances, it is not obvious why antitrust law would require a court to eliminate the interchange-fee mechanism or to set the fee at a particular level, including at $0.

---

[6] One applicant suggests that some merchants lack the practical ability to surcharge but could selectively refuse to honor high-priced cards. ECF #6676 at p. 4 (Kirby McInerny Application for Appointment). But it seems very unlikely that substantial volumes of transactions are handled by merchants who are unable practically to surcharge but are able to selectively refuse to honor particular cards. What circumstances would permit a merchant to do the latter but not the former?

6

Moreover, this Court's eliminating or setting the interchange fee is clearly the action that would create the greatest risk of appellate reversal. *See, e.g.*, *O'Bannon v. NCAA*, 802 F.3d 1049, 1078-79 (9th Cir. 2015) (reversing injunction that set a $5,000 cap on the amount that universities could pay athletes because it was an "arbitrary limit imposed by the district court" and a "quantum leap" from allowing competition to determine athletes' salaries); *In re Brand Name Prescription Drugs Antitrust Litigation*, 1996 WL 167347, at *7, 1996-1 Trade Cas. (CCH) ¶ 71,350 (N.D. Ill. Apr. 4, 1996) (rejecting proposed settlement that did not eliminate collusive pricing system, but refusing to require defendants to adopt any particular alternative pricing structure because such relief was "not legally attainable in this or any other court" and "[a]ny injunction or requirement along [those] lines would discourage competition, not enhance it").

This industry is changing rapidly, and further lengthy delays could render equitable relief less than fully effective or even chimerical. It is therefore especially important that counsel who represent the (b)(2) class exercise sound judgment in pursuing all of the equitable relief that the antitrust law provides, while not overreaching and thereby subjecting the settlement or judgment to undue risk of reversal.[7] Obtaining for merchants the right to surcharge Visa and MasterCard transactions regardless of the American Express rules, and to selectively refuse to honor cards in states with no-surcharge statues – relief that HFG Counsel preliminarily intend to pursue – strikes the right balance.

## CONCLUSION

For the reasons stated above and in our opening papers, the Court should appoint HFG Counsel to represent the (b)(2) class.

---

[7] It is equally important that counsel not pursue relief that unnecessarily eliminates the procompetitive aspects of any rules, such as those of the HAC Rule.

7

Dated: September 15, 2016                    Respectfully Submitted,

**GRANT & EISENHOFER P.A.**


*/s/ Robert G. Eisler*
Robert G. Eisler (EDNY Bar # RE1398)
James J. Sabella (EDNY Bar # JS5454)
485 Lexington Avenue
New York, NY  10017
reisler@gelaw.com
jsabella@gelaw.com

Tel:    646-722-8500
Fax:    646-722-8501

**HILLIARD & SHADOWEN LLP**

Steve D. Shadowen (*pro hac* forthcoming)
Jack A. Staph (*pro hac* forthcoming)
D. Sean Nation (*pro hac* forthcoming)
2407 S. Congress Ave, Ste E 122
Austin, Texas 78704
steve@hilliardshadowenlaw.com
sean@hilliardshadowenlaw.com

Tel:    (855) 344-3928
Fax:    (361) 882-3015

**FREED KANNER LONDON & MILLEN LLC**

Michael J. Freed
Robert J. Wozniak
2201 Waukegan Road, Ste. 130
Bannockburn, IL 60015
mfreed@fklmlaw.com
rwozniak@fklmlaw.com

Tel. (224) 632-4500
Fax (224) 632-4521

8

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ *Robert G. Eisler*

Robert G. Eisler