UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE PAYMENT CARD                               MEMORANDUM
INTERCHANGE FEE AND MERCHANT                     AND ORDER
DISCOUNT ANTITRUST LITIGATION
                                                 05-MD-1720 (MKB)(JO)
This document refers to: ALL ACTIONS
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Several parties and attorneys have submitted proposals for appointing lead counsel for the putative classes of plaintiffs in this multi-district litigation.[1] Such appointment is necessary as a result of the decision vacating an earlier class certification and settlement on the basis of a conflict of interest that the court found to inhere in the appointment of counsel to represent all class plaintiffs. *See* 986 F. Supp. 2d 207 (E.D.N.Y. 2013) ("*Interchange I*"), *rev'd*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange II*"). Having considered all of the written and oral submissions on the matter, for the reasons set forth below, I now make the following appointments. The three firms previously appointed as counsel for the entire class (Robins Kaplan LLP, Berger & Montague P.C., and Robbins Geller Rudman & Dowd LLP) are appointed interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Damages Class Counsel"). The Nussbaum Law Group, P.C. (the "Nussbaum Group"); Hilliard & Shadowen LLP ("H&S"); Freed Kanner London & Millen LLC ("FKLM"); and Grant & Eisenhofer P.A. ("G&E" or, collectively with H&S and FKLM, the "Shadowen Group") are appointed interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Rule 23(b)(2) ("Injunctive Relief Class Counsel").

---

[1] *See* Docket Entry ("DE") 6662 (Target Plaintiffs' submission); DE 6663 (Home Depot's submission); DE 6664 (defendants' submission); DE 6665 (current co-lead counsel's motion); DE 6668 (7-Eleven Plaintiffs' proposal); DE 6669 (Nussbaum Law Group's motion); DE 6670 (Non-Surcharge Merchants' motion); DE 6673 (motion of Steve D. Shadowen, *et al.*); DE 6675 (FCP Group's motion); DE 6678 (Retailers & Merchants Group's motion); DE 6679 (motion to appoint Kaplan Fox & Kilsheimer LLP); DE 6697 (Merchant Trade Group's submission).

I.  Background

I assume the reader's general familiarity with the extensive prior proceedings in this litigation. In *Interchange II*, the circuit court vacated this court's certification of a settlement class, and its approval of a settlement agreement, on the ground that the group of attorneys serving as lead counsel for all members of the class labored under an inherent conflict of interest in representing merchants with interests that were deemed to be materially divergent. *See* 827 F.3d at 233, 240. Accordingly, on remand, it is necessary to appoint interim lead counsel for the class plaintiffs in a way that avoids such conflict.

At my invitation, *see* DE 6654, the parties submitted a variety of proposals for the appointment of interim lead counsel. Briefly stated, the parties generally agreed that the court should appoint interim lead counsel for a putative class seeking certification under Rule 23(b)(3), but they disagreed as who should be appointed to that position; and they also disagreed as to whether and how to appoint interim lead counsel for some other grouping of plaintiffs who might seek to litigate claims for injunctive relief pursuant to Rule 23(b)(2). Suggestions as to the latter included making no appointment, appointing counsel to represent claims for injunctive relief generally (without regard to the distinction between subsections (b)(2) and (b)(3) of Rule 23), and various nominations for leadership of a group that would seek (b)(2) certification.[2] I heard oral argument on October 19, 2016. *See* DE 6723 (minute order); DE 6728 (transcript).

---

[2] I refer to the appointed interim class counsel leaders as representing, respectively, the putative "Damages Class" and the putative "Injunctive Relief Class." The labels are somewhat imprecise: reference to subsections (b)(3) and (b)(2), respectively, of Rule 23, would more accurately capture the distinction between the two client groups. In particular, a putative class certified under subsection (b)(3) would not necessarily be limited to seeking money damages as the sole form of relief. I use the more imprecise labels only as a more convenient shorthand than "(b)(3) Class" and "(b)(2) Class."

2

II. <u>Discussion</u>

A court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The role of such counsel is to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). The appointment of lead counsel helps to avoid duplication of effort, promote efficiency and avoid unruly proceedings. *See Farber v. Riker-Maxson Corp.*, 442 F.2d 457, 459 (2d Cir. 1971); *MacAlister v. Guterma*, 263 F.2d 65, 68-69 (2d Cir. 1958). An interim appointment at this stage, while not required, can help "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation* (the "*Manual*") § 21.11. Experience in this litigation since the initial appointment of interim lead counsel over a decade ago, *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2006 WL 2038650 (E.D.N.Y. Feb. 24, 2006), has served only to highlight the role's utility.

A court considering the appointment of interim lead class counsel should consider the same factors that a court appointing lead counsel for a certified class must consider, including the candidates' qualifications and competence, their ability to fairly represent diverse interests, and their attorneys' ability "to command the respect of their colleagues and work cooperatively with opposing counsel and the court." *Manual* § 10.224; *see* Fed. R. Civ. P. R. 23(g)(1)(C). Also appropriate for consideration is anything else that is "pertinent to counsel's ability to fairly and adequately represent the interests of the class," Fed. R. Civ. P. 23(g)(1)(B), including "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3761986, at *2–3 (E.D.N.Y. Sept. 22, 2006).

3

A.  Damages Class Counsel

There are three proposals for interim leadership of the Damages Class:

- the group of three law firms previously appointed as co-lead counsel for the entire class (Robins Kaplan LLP, Berger & Montague P.C., and Robbins Geller Rudman & Dowd LLP) (collectively, the "Robins Group") seeks to continue in a leadership role (and suggests that other counsel be appointed for the Injunctive Relief Class), *see* DE 6665;

- the Home Depot Plaintiff seeks the appointment of Goldstein & Russell, P.C. as additional co-lead counsel for a single (b)(3) class, *see* DE 6663; and

- the Former Class Plaintiff ("FCP") Group, the 7-Eleven Plaintiffs, and the Merchant Trade Group all support the appointment of Kirby McInerney LLP and Goldstein & Russell, P.C. ("Kirby/Goldstein") as co-lead counsel for a single (b)(3) class, *see* DE 6675; DE 6694; DE 6697.[3]

As a threshold matter, I am confident that all leadership candidates are eminently qualified to serve as class counsel. Each brings to the table an array of experienced attorneys who have achieved successful results for class clients. I conclude, however, that in the circumstances of this litigation, the Robins Group is in the best position to continue to represent the interests of the Damages Class. They have already demonstrated their ability to work cooperatively with the court and with the other non-lead counsel, they have the support of a larger and more diverse group of clients, and those clients collectively advance a broader array of the legal theories at issue in this litigation. As former Judge Gleeson noted, despite certain objectors' dissatisfaction with the terms of the now-vacated settlement agreement, the record "demonstrates beyond any reasonable doubt that the negotiations were adversarial and conducted at arm's length by extremely capable counsel." *Interchange I*, 986 F. Supp. 2d at 222. Notably, in holding that the Robins Group necessarily labored under a conflict of

---

[3] The FCP and Merchant Trade Groups oppose appointment of a separate interim lead counsel for any other group of plaintiffs. DE 6676 (FCP Group's submission) at 12; DE 6697 (Merchant Trade Group's submission) at 2-3. In contrast, the 7-Eleven Plaintiffs do support the appointment of separate interim lead counsel, albeit not for an Injunctive Class as such; instead, they support the appointment of some counsel other than Kirby/Goldstein to serve as the "guardians of future interests." DE 6668 at 5-6.

interest in representing all class plaintiffs, the appellate court did not suggest that their representation was in any way inadequate or that the lawyers from that group were anything other than eminently qualified to continue in a leadership role. Given the Robins Group's ample resources and its extensive experience, I readily conclude that it is in the best position to continue to represent the interests of the Damages Class.

B. Injunctive Relief Class Counsel

The following firms seek appointment as interim lead counsel for the putative Injunctive Relief Class or, alternatively, for some grouping of plaintiffs other than those led by interim Damages Class Counsel:

- the Nussbaum Group (which seeks appointment as interim lead counsel for injunctive relief claims, whether certified pursuant to subsection (b)(2) or (b)(3) of Rule 23), *see* DE 6669;

- Keller Rohrback L.L.P. (which seeks appointment to lead a subclass of merchants who are prohibited by state law from seeking to impose a surcharge on payment card transactions), *see* DE 6670;

- the Shadowen Group, *see* DE 6673;

- a group of several law firms, led by Cuneo Gilbert & LaDuca, LLP, who serve as counsel for the Retailers and Merchants Plaintiffs (the "R&M Group"), *see* DE 6678; and

- Kaplan Fox & Kilsheimer LLP, *see* DE 6679.

Here again, the plaintiffs enjoy an embarrassment of riches: all of the counsel seeking leadership roles are well qualified to do so.

In reversing the earlier class settlement in this litigation, the circuit court concluded that "'a class divided between holders of present and future claims … requires division into homogenous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel.'" *Interchange II*, 827 F.3d at 232 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999)).

5

The court, however, neither prescribed nor prohibited any particular class structure to alleviate the overall class's internal divergence of interests – and the parties' several proposals make clear that there are several viable possibilities. I conclude that dividing leadership responsibility between a putative Damages Class that will seek certification under Rule 23(b)(3) and a putative Injunctive Relief Class that may seek certification under Rule 23(b)(2) (but which may also conclude that the class will be best served by not seeking relief that is mandatory for all merchants) is the most likely to achieve fair representation for all of the plaintiffs' interests.

I further conclude that the Nussbaum Group and the Shadowen Group are in the best position to represent the interests of the putative Injunctive Relief Class. The firms in these groups have been steeped in this litigation since its inception, and have demonstrated their ability to work cooperatively with each other, with the court, and with numerous non-lead counsel representing plaintiffs with very significant interests in this litigation. Further, the Nussbaum Group's merchant clients have resolved their claims and are no longer parties to this litigation. That fact does not create a conflict of interest, but rather reduces the chances of one; in particular, the participation in the leadership team of a firm that has extensive experience in the litigation but has no client relationship with any current member of the putative class heightens the likelihood that holders of future claims will have an effective voice in debates about how best to represent the putative class. Finally, these firms have substantial resources at their disposal to devote to the litigation and potential trial of this case, and it is evident from the work that they have undertaken to investigate the equitable relief claims at issue in this litigation that they are willing to expend such resources to represent the putative Injunctive Relief Class. *See Buonasera v. Honest Co., Inc.*, 2016 WL 3647601, at *2 (S.D.N.Y. June 22, 2016).

III.   Conclusion

For the reasons set forth above, I appoint Robins Kaplan LLP, Berger & Montague P.C., and Robbins Geller Rudman & Dowd LLP to serve as interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23(b)(3); and I appoint the Nussbaum Law Group, P.C.; Hilliard & Shadowen LLP; Freed Kanner London & Millen LLC; and Grant & Eisenhofer P.A. to serve as interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Rule 23(b)(2).

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2016

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge