UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>PAYMENT CARD INTERCHANGE FEE AND MERCHANT-ISCOUNT ANTITRUST LITIGATION<br><br>This document relates to: All Class Actions | Master File No. 1:05-MD-1720-MB-JO<br><br>**RULE 23(b)(3) CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT** |

## Introduction

Just over eight years ago, on January 29, 2009, Class Plaintiffs filed the three operative complaints in this class action. Since then, the parties completed fact and expert discovery, briefing and arguments on class certification and dispositive motions, and have proceeded through lengthy settlement negotiations that culminated in a multi-billion dollar settlement agreement that was approved by this Court in 2013 and vacated by the Second Circuit over three years later in June of 2016. Now, having reverted to litigation and reopening a discovery record that has been dormant since 2010, the operative pleadings do not account for eight years of developments in the industry and the legal and regulatory landscape. Rule 23(b)(3) Class Plaintiffs respectfully request leave under Fed. R. Civ. P. 15(a) to file a Third Consolidated Amended Class Action Complaint to reflect these developments, as well as the change in counsel structure ordered by the Court in response to the Second Circuit's decision.  Rule 23(b)(3) Class Plaintiffs have acted timely and in good faith and Defendants will suffer no prejudice by granting this motion.

## Factual Background

Rule 23(b)(3) Class Plaintiffs are asserting antitrust challenges that go to the heart of the Defendants' fee-setting practices, their rules governing point-of-sale conduct, and their corporate restructurings. The litigation of these claims has involved wide-ranging discovery into the Defendants' practices directed toward merchants and cardholders, as well as the Plaintiffs' own payment-acceptance and payment-card-use practices. Many of the fruits of Class Plaintiffs' first three years of discovery efforts are captured in the operative class-action complaints from January 2009.[1]

In the eight years since the operative complaints were filed, meaningful developments occurred in the litigation and the payment-card industry that are not addressed in the pleadings. Since that time, the parties concluded fact discovery and expert discovery, submitted reports and conducted depositions of over a dozen experts, and based on this extensive factual record, briefed and argued motions for class certification and for summary judgment.

While the Class Plaintiffs' class-certification motions and the parties' cross motions for summary judgment were pending, the parties entered into a settlement agreement in July 2012 that provided for billions of dollars in damages and significant injunctive relief for the class. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp.2d 207, 217 (E.D.N.Y. 2013). This injunctive relief included a modification to the networks' prohibitions on merchant surcharging that went into force in early 2013 and remain in effect today. The settlement-approval process involved objections from several of the current Direct Action Plaintiffs and resulted in a final-approval order by this

---

[1] Second Consolidated Amended Class Action Complaint, Dkt. No. 1140; First Amended Supplemental Class Action Complaint, Dkt. No. 1139; Second Supplemental Class Action Complaint, Dkt. No. 1138.

Court on December 13, 2013. *Id*. at 241. The Direct Action Plaintiffs and others opted out of the Rule 23(b)(3) settlement and filed their own lawsuits against Visa, MasterCard, and certain Bank Defendants. While the settlement was pending before the Second Circuit, the Direct Action Plaintiffs began discovery in their opt-out actions, receiving tens of millions of pages of documents generated after 2009. On June 30, 2016, the Second Circuit vacated the settlement and remanded it to this Court, holding that a settlement class certified under both Rules 23(b)(2) and (b)(3) required separate representation for each class. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 234 (2d Cir. 2016). On November 30, 2016, this Court appointed Robins Kaplan LLP, Berger & Montague, P.C., and Robbins Gellar Rudman & Dowd LLP as counsel for a putative Rule 23(b)(3) class and the Nussbaum Law Group, P.C., Hilliard & Shadowen LLP, Freed Kanner London & Millen LLC, and Grant & Eisenhofer P.A. as interim co-lead counsel for a putative class under Rule 23(b)(2). Mem. & Order at 1, Dkt. 6754 (Nov. 30, 2016).

During this same period of time, the payment-card industry was experiencing significant developments outside of this litigation. In 2010, the Justice Department concluded a multi-year investigation into Visa and MasterCard's point-of-sale rules with a consent decree that required the networks to repeal those rules to the extent they prohibited merchants from providing discounts to consumers who used particular payment cards and engaged in various forms of non-price steering. Later that year, Congress enacted the Dodd-Frank Act, including the Durbin Amendment that allowed the Federal Reserve to cap debit-card interchange fees and further required the networks to loosen their restrictions on merchant steering. Also in the early 2010s, the networks required merchants to adopt EMV "Chip" technology, and adopted restrictive rules regarding mobile

3

payments, in a way that further insulated their substantial market power from competition. *See* 3d Consol. Am. Cl. Action Compl. ¶¶ 269–302.

Despite the meaningful developments over the past eight years, the defendants continue to impose their Honor-All-Cards Rules and Default-Interchange Rules on merchants. Because these rules—and the lingering effects of the No-Surcharge Rules—cause merchants to pay higher Interchange Fees than they would have paid in an unrestrained market, Rule 23(b)(3) Class Plaintiffs and other members of the proposed Rule 23(b)(3) class continue to suffer damages from the Defendants' conduct. Rule 23(b)(3) Class Plaintiffs amend the operative complaint to reflect the changes in the industry since the filing of the earlier complaints.  The proposed amendments to the complaint also seeks to simplify the pleadings by incorporating the central allegations challenging Visa's and MasterCard's respective IPOs thereby eliminating the two supplemental complaints.  The proposed amended complaint explains how they continue to suffer antitrust injury in light of the industry developments noted above.

## Analysis

A party may amend its pleading by leave of court, which the court "should freely give when justice so requires." Fed. R. Civ. P. 15(a)(2); *Nakahata v. N.Y. Presbyterian Healthcare Sys.*, 723 F.3d 192, 198 (2d Cir. 2013). Because of the Rules' preference for amendment, leave should be denied only when the moving party has engaged in "undue delay, bad faith or [has a] dilatory motive," when the opposing party will suffer "undue prejudice" from the amendment, or when amendment is futile. *Cummings-Fowler v. Suffolk County Cmty. College*, 282 F.R.D. 292, 297 (E.D.N.Y. 2012).

The opposing party bears the burden of demonstrating prejudice or futility. *Id*. at 296. In examining whether amendment would prejudice the nonmoving

4

party, courts consider whether amendment would (i) "require the opponent to expend significant additional resources to conduct discovery and prepare for trial," (ii) "significantly prolong the resolution of the action," or (iii) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* at 297 (citing *Monahan v. N.Y. City Dep't. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). The fact that discovery has begun does not constitute undue prejudice, especially when no trial date has been set and any additional discovery as a result of the amendment "will not be unreasonable, unfair, or cause substantial delay." *Id.* (citing *State Teachers Ret. Bd. v. Flour Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Even a change in legal theory will not normally justify denying a motion to amend, unless the opposing party can demonstrate that it will be unfairly disadvantaged in presenting its case. *DiMare Homestead, Inc. v. Alphas Co. of N.Y.*, 547 Fed. Appx. 68, 70 (2d Cir. 2013).

In this case, justice favors granting the Rule 23(b)(3) Class Plaintiffs' motion to amend. The motion to amend is not a result of intentional delay or bad faith, but rather was brought about by the Second Circuit's reversal of a previously approved settlement and instruction that representation of the classes be revisited. Since the time of the reversal, Rule 23(b)(3) Class Plaintiffs and their counsel have moved expeditiously to petition for a leadership role and are currently participating in the ongoing discovery and working in good faith to help the case progress toward trial. Days after the order appointing them Rule 23(b)(3) Class Plaintiffs' Counsel, counsel appeared at a status conference where amendments to pleadings were discussed, proposed a schedule for amendment, and are now submitting this motion and a proposed, amended complaint consistent with those undertakings.

The Rule 23(b)(3) Class's proposed amendment will help expedite the progression and conclusion of this litigation. The proposed amendments reflect industry developments that have occurred since 2009 and places them in the

5

context of alleged violations of various state and federal antitrust laws. It also addresses the Second Circuit's opinion in *United States v. American Express*, 838 F.3d 179 (2d Cir. 2016), by adding alternative relevant markets that consist of both merchants and cardholders, and explaining how competition in those markets is injured by Defendants' conduct. Despite updating factual allegations and explaining how the operative facts constitute antitrust violations, even in more expansive relevant markets to the extent they may be applicable, the core of Rule 23(b)(3) Class Plaintiffs' case—that Defendants' collusive agreements and network rules inflate prices to supracompetitive levels—remains the same. Accordingly, the claims presented in the Third Consolidated Amended Class Action Complaint will rely on the same facts the Rule 23(b)(3) Class Plaintiffs would have relied upon under the previous operative complaints.

In this case, Defendants will suffer no prejudice if Rule 23(b)(3) Class Plaintiffs are granted leave to amend. Document and deposition discovery is already underway and will not be delayed by the amendments. Because dates for trial and other milestones such as class certification and summary judgment have yet to be set, amendment will not affect the larger case-management schedule. Nor does the addition of alternative relevant markets that include cardholders prejudice Defendants. Defendants have consistently argued for many years that the relevant market includes both cardholders and merchants, such that they have conducted discovery in an attempt to prove such a market, while Plaintiffs have secured the discovery necessary to disprove the existence of such a market, or in the alternative to demonstrate harm to competition in such a market. Defendants' economic experts' claimed that the relevant market is a two-sided market and Class Plaintiffs' economic expert explained why that was incorrect but nevertheless showed that the total price in a two-sided market was supra-competitive. *See, e.g.*, Expert Report of Dr. Benjamin Klein (Dec. 14, 2009) ¶¶ 34,

116, 118; Expert Report of Prof. Kenneth G. Elzinga (Dec. 14, 2009) § IV.B.; Report of Christopher M. James (Dec. 14, 2009) p. 37; Rebuttal Report of Alan S. Frankel, Ph.D. (June 22, 2010) ¶¶ 16, 27, 29, 30, 215-37. The parties also addressed these issues at summary judgment. *See, e.g.*, Dkt. 1550 [Defs.' Counterstatement in Opposition to Class Plaintiffs' Statement of Undisputed Facts Pursuant to Local Rule 56.1(b)] ¶¶ 45a, 46 and 48 ("Interchange Fees are not set to balance the two sides of the claimed two-sided market"), 57.

## Conclusion

In light of the already expansive scope of discovery and the relatively early stage of proceedings, the Rule 23(b)(3) Class Plaintiffs' proposed amendments will not cause prejudice to the Defendants—let alone undue prejudice. Rule 23(b)(3) Class Plaintiffs therefore respectfully request that this Court grant their motion.

February 8, 2017                                         ROBINS KAPLAN LLP


                                                                      *s/ K. Craig Wildfang*
                                                                      K. Craig Wildfang
                                                                      Thomas J. Undlin
                                                                      Ryan W. Marth

                                                                      800 LaSalle Avenue
                                                                      Suite 2800
                                                                      Minneapolis, MN  55402
                                                                      KCWildfang@RobinsKaplan.com
                                                                      TUndlin@RobinsKaplan.com
                                                                      RMarth@RobinsKaplan.com
                                                                      Tel:  612-349-8500
                                                                      Fax:  612-339-4181

BERGER & MONTAGUE, P.C.

   *s/ H. Laddie Montague*
H. Laddie Montague
Merrill G. Davidoff
Michael J. Kane

1622 Locust Street
Philadelphia, PA 19103
hlmontague@bm.net
mdavidoff@bm.net
mkane@bm.net
Tel: 215-875-3000
Fax: 215-875-4604

ROBBINS GELLER RUDMAN & DOWD LLP

   *s/ Patrick J. Coughlin*
Patrick J. Coughlin
Joseph David Daley
Alexandra Senya Bernay

655 West Broad Way
Suite 1900
San Diego, CA 92101
patc@rgrdlaw.com
joed@rgrdlaw.com
xanb@rgrdlaw.com
Tel: 619-231-1058
Fax: 619-231-7423

*Counsel for Rule 23(b)(3) Class Plaintiffs*

87305467.2