UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This document relates to: All Class Actions | Master File No. 1:05-MD-1720-MB-JO |

**RULE 23(b)(3) CLASS PLAINTIFFS'
REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION FOR LEAVE TO AMEND COMPLAINT**

ROBINS KAPLAN LLP
K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth
800 LaSalle Plaza, Suite 2800
Minneapolis, MN  55402

BERGER & MONTAGUE, P.C.
H. Laddie Montague
Merrill G. Davidoff
Michael J. Kane
1622 Locust Street
Philadelphia, PA  19103

ROBBINS GELLER RUDMAN & DOWD LLP
Patrick J. Coughlin
Alexandra S. Bernay
Carmen A. Medici
655 West Broadway, Suite 1900
San Diego, CA  92101

*Counsel for Rule 23(b)(3) Class Plaintiffs*

## TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................................. 1
Background ............................................................................................................................. 1
Analysis ................................................................................................................................... 4
I. Plaintiffs' motion for leave to amend should be granted............................................. 4
    A. Defendants' arguments against amendment lack merit. .............................. 4
        1. Plaintiffs' amendment is not the product of undue delay. ................. 4
        2. Plaintiffs' amendment is not unduly prejudicial................................ 7
        3. To the extent that it is applicable to this case, the Second Circuit's *Amex* decision is intervening legal authority that justifies amendment. ........................................................................................ 8
II. The Proposed Third Amended Complaint Relates Back to the Original Complaint Under Rule 15(c)........................................................................................................ 8
Conclusion .............................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012) ...................................................................................................8

*Addison v. Reitman Blacktop, Inc.*,
  283 F.R.D. 74 (E.D.N.Y. 2011) ............................................................................................5

*Agerbrink v. Model Serv. LLC*,
  155 F. Supp. 3d 448 (S.D.N.Y. 2016) ...................................................................................5

*Allstate Ins. Co. v. Elzanaty*,
  916 F. Supp. 2d 273 (E.D.N.Y. 2013) ................................................................................5, 7

*AMA v. United Healthcare Corp.*,
  No. 00-cv-2800, 2600 WL 3833440 (S.D.N.Y. Dec. 29, 2006) ............................................5

*Barclay v. Deko Lounge*,
  No. 10-cv-0190, 2014 WL 198317 (E.D.N.Y. Jan. 14, 2014) ...............................................5

*Bernhard v. Cent. Parking Sys. of N.Y., Inc.*,
  282 F.R.D. 284 (E.D.N.Y. 2012) ..........................................................................................7

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) .................................................................................................4

*Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*,
  No. 15-cv-05488, 2016 WL 5719790 (S.D.N.Y. Sep. 29, 2016) ..........................................6

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60 (2d Cir. 1990) ...................................................................................................5

*Duling v. Gristede's Operating Corp.*,
  265 F.R.D. 91 (S.D.N.Y. 2010) ............................................................................................6

*Enzo Biochem v. Amersham PLC*,
  981 F. Supp. 2d 217 (S.D.N.Y. 2013) ...................................................................................5

*In re Gen. Elec. Co. Sec. Litig.*,
  No. 09-cv-1951, 2012 WL 2892376 (S.D.N.Y. Jul. 12, 2012) .............................................5

*New York v. Kraft Gen. Foods*,
    926 F. Supp. 321 (S.D.N.Y. 1995) ................................................................................... 6

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
    No. 08-cv-42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) .............................................. 8, 9

*Slayton v. Am. Express Co.*,
    460 F.3d 215 (2d Cir. 2006) .............................................................................................. 8

*Techreserves, Inc. v. Delta Controls Inc.*,
    No. 13-cv-00752, 2014 WL 1325914 (S.D.N.Y. Mar. 31, 2014) ..................................... 6, 7

*United States ex rel Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co.*,
    889 F.2d 1248 (2d Cir. 1989) ............................................................................................ 7

*United States v. Am. Express Co.*,
    838 F. 3d 179 (2d Cir. 2016) ............................................................................................. 7

*W. Penn Allegheny Health Sys. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) ................................................................................................ 6

**Rules**

Fed. R. Civ. P. 15(a) ................................................................................................................ 6

Fed. R. Civ. P. 15(c) ................................................................................................................ 8

Fed. R. Civ. P. 15(c)(1)(B) ...................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 1, 2, 5, 7, 9

## Introduction

The class claims sat dormant for four years until the 2012 settlement was vacated by the Second Circuit on June 30, 2016. Rule 23(b)(3) Class Counsel filed this motion to amend their pleadings to account for regulatory reforms, industry developments, and intervening case law. Defendants cannot credibly attack Class Plaintiffs' diligence, as the prior settlement and stay caused them to discontinue actively litigating this case. In addition, Defendants will not suffer undue prejudice by the amendments because they *already* have conducted extensive discovery into the alleged "two-sided" relevant market, discovery is ongoing, and no trial date has been set. Class Plaintiffs therefore respectfully request that the Court grant their motion for leave to amend and rule that their proposed amendments "relate back" to the conduct described in their prior pleadings.

## Background

The Defendants' opposition to Rule (b)(3) Class Plaintiffs' motion misstates the factual record and procedural history of this litigation.

First, without citing any facts other than the passage of time since the Second Amended Class Action Complaint, the Defendants wrongly suggest that Rule (b)(3) Class Plaintiffs have not diligently pursued this action. Defs.' Opp. at 14. This could not be further from the truth. The operative complaints[1] were filed near the conclusion of pre-settlement fact discovery in January 2009. After that filing, Class Plaintiffs completed expert discovery, moved for and opposed summary judgment, and in 2011 agreed to a mediator's proposal that led to the settlement of the class action, and a stay

---

[1] The current operative complaints include the Second Consolidated Amended Class Action Complaint ("SCACAC") [D.E. 1138], the First Amended Supplemental Class Action Complaint ("FASCAC") [D.E. 1140], and the Second Supplemental Class Action Complaint ("SSCAC") [D.E. 1139].

1

that lasted until the Second Circuit's order vacating that settlement. In the first status conference after being reappointed, Rule 23(b)(3) Class Counsel stated their intention to amend the pleadings to conform to factual and legal developments and their new charge from the Court. Hr'g Tr. 17:23-18:9 (Dec. 8, 2016) (C. Wildfang). The proposed amended complaint was served on Defendants two months later.

Second, Defendants grossly minimize the pre-settlement discovery record regarding the alleged "two-sided" relevant market, which Defendants cast as an entirely new and previously unexplored inquiry. *See* Defs.' Opp. at 17-18. Several of Defendants' written discovery requests to Plaintiffs addressed the effects of Defendants' practices in a claimed "two-sided" relevant market.[2] In fact, even the "additional" discovery that Defendants complain amendment would force them to seek (documents "concerning consumer preferences regarding rewards" . . . including analyses "regarding differentiation of rewards at the point of sale," Defs. Opp. at 20) was included in their pre-settlement discovery requests.[3] Defs.' Opp. at 20. Effects on cardholders[4] and effects on merchants *as cardholders*—*i.e.*, when merchants issue corporate payment cards to their employees[5]—were also explored at length in the parties' respective depositions. Thus, even though the Defendants have not answered the operative complaints, their discovery pursuits make clear that the "two-sided" relevant market has been part of their defense for over a decade.

---

[2]    *See, e.g.,* Marth Decl. Ex. 1 (Visa U.S.A. Interrog. No. 7 to Class Pls.)(Inquiring as to "the extent to which fees you incur in accepting any form of payment are passed on to your customers;" Marth Decl. Ex. 12 (Defs.' Req. for Prod. 24) ("All documents concerning rewards, services, and other benefits provided to your consumers by any issuing bank."); *id*. (Defs.' Req. for Prod. 32) (requesting analyses of "particular costs and benefits of [premium cards]," "the extent of any additional or incremental sales associated with those cards," and "your consumers' spending levels on premium or commercial cards").
[3]    *See id*.
[4]    *See* Tabs DD, GG, Jt. Ex. of Target et al., (Feb. 8, 2017).
[5]    Marth Decl. Ex. 2 (Coborn Dep. Tr. 165:24-170:17); Marth Decl. Ex. 3 (Platkin Dep. Tr. 168:4-170:22); Marth Decl. Ex. 4 (Hayes Dep. Tr. 259:14-263:13); Marth Decl. Ex. 5 (Jurasek Dep. Tr. 184:20-187:17); Marth Decl. Ex. 6 (Zentner Dep. Tr. 155:13-160:25); Marth Decl. Ex. 7 (Emmert Dep. Tr. 169:24-170:22, 172:4-24).

The parties' experts also extensively debated the question of whether the relevant market included both consumers and merchants. Class Plaintiffs' expert, Dr. Alan Frankel, concluded that interchange fees are not entirely "passed through" from merchants to the cardholder "side" of any two-sided "market," Marth Decl. Ex. 8 (Frankel Rep. ¶¶ 107-12, 115-17.) In response, Defendants submitted the report of Kevin Murphy, who argued that interchange-fee increases were completely passed through from merchants to cardholders *at the margin*.[6] Another defense expert, Robert Topel, argued that interchange fees were not supracompetitive because any reduction in fees would harm cardholders—a proposition that is relevant only in a "two-sided" relevant market. Marth Decl. Ex. 9 (Topel Rep. ¶ 87.)

The Defendants also opposed Class Plaintiffs' summary-judgment motion by arguing that "the relevant evidence in this record suggests . . . that positive interchange rates lead to higher credit card usage, which in turn causes merchants to lower retail prices." And in disputing Class Plaintiffs' Undisputed Fact No. 48 that "[i]nterchange fees are not set to balance the two sides of the claimed two-sided market," the Defendants cited evidence from their own documents, their witnesses' testimony, and their experts, arguing that the record created a genuine issue of material fact as to whether the relevant market for analyzing the challenged conduct was one-sided or two-sided. Marth Decl. Ex. 10 (Defs' CSF Opp. Cl. Mot. Sum. J. ¶ 48.) Unquestionably, the Defendants will not be prejudiced by addressing an alternative relevant market that they have already advocated for and analyzed.

Nevertheless, Defendants now argue that their prior discovery does not suffice to establish the "net costs and benefits to merchants, networks, issuers, and cardholders."

---

[6] Marth Decl. Ex. 11 (Murphy Rep. ¶¶ 240-47.) Murphy argued that while the totality of interchange fees were not passed through in the form of rewards, marginal increases in interchange fees over time were fully passed through. *Id*. Dr. Frankel disputed this conclusion. Marth Decl. Ex. 8 (Frankel Rebuttal Rep. ¶ 103.)

3

Defs.' Opp. at 18. But this claimed shortcoming is not the result of surprise. Prof. Murphy sought to do precisely this by arguing that payment cards "make retail trade . . . more convenient and less costly for both buyers and sellers." Murphy also opined that interchange fees increase merchant sales by "transferring" funds from merchants to cardholders, and that those fees counterintuitively decrease merchant prices. Marth Decl. Ex. 11 (Murphy Rep. ¶¶ 10-12.) Murphy addressed payment-card markets as "two-sided," devoting a section of his report to "the effects of merchant discounts on cardholders and non-cardholders. *Id*. (Murphy Rep. ¶¶ 238-304.) He then conducted a twenty-one-page analysis that concluded that the "correctly defined price of card services," which he claimed was the "combined total merchant and cardholder payments," (Murphy Rep. § VII.B.) was not supracompetitive[7]—in other words, the very analysis that Defendants now claim they were incapable of performing.

## Analysis

**I.     Plaintiffs' motion for leave to amend should be granted.**

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Defendants have not shown and cannot show either requirement here.

### A.     Defendants' arguments against amendment lack merit.

#### 1.     Plaintiffs' amendment is not the product of undue delay.

Defendants suggest that Plaintiffs have failed to provide a "satisfactory explanation" for the delay. But "[a]lthough *some* explanation must be provided to

---

[7]     As Class Plaintiffs pointed out in their motion to exclude Murphy's opinions [D.E. 1504], this analysis was deeply flawed. Regardless of its shortcomings, however, Defendants were confident enough in his opinions to present them to Plaintiffs and defend them to this Court.

4

excuse a delay," where the defendant is not unduly prejudiced, "even vague or 'thin' reasons are sufficient." *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011) (emphasis and alterations in original). "Length of time, in and of itself, does not provide a basis to deny a motion to amend." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 303 (E.D.N.Y. 2013). Accordingly, courts in this circuit routinely grant leave to amend following years of litigation. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 453 (S.D.N.Y. 2016) (collecting cases).[8]

Plaintiffs' explanation for the interregnum period in the proceedings before the present motion is neither vague nor thin. The timing of the amendment is not the result of intentional delay, bad faith, or dilatory motive; rather, the timing was driven by the procedures for the parties' class-action settlement—a settlement that Defendants supported throughout—and the Second Circuit's unexpected reversal. The proposed amendments will expedite the progression and conclusion of this case, which is now back in active litigation, by reflecting developments in the industry and in the case law. Amendment also accommodates Defendants' stated desire to understand the legal and factual bases of Plaintiffs' case. *See* Hr'g Tr. 23:24-24:14 (Dec. 8, 2016) (K. Gallo).

Defendants' contention that the proposed amendment represents some "abrupt and fundamental change in [the Plaintiffs'] legal and factual allegations" is baseless.

---

[8] The cases Defendants cite for the proposition that they will be "unduly prejudiced" by the Rule (b)(3) Class's supposed delay in seeking amendment are distinguishable in that, in each case discovery had closed and the case was heading for trial. *See Barclay v. Deko Lounge*, No. 10-cv-0190, 2014 WL 198317, at *2 (E.D.N.Y. Jan. 14, 2014) (denying amendment "several months" after discovery concluded and after parties drafted a pretrial order); *Enzo Biochem v. Amersham PLC*, 981 F. Supp. 2d 217, 224 (S.D.N.Y. 2013) (granting summary judgment and noting in dicta that, even if amendment were sought it would be denied because of advanced stage of litigation); *In re Gen. Elec. Co. Sec. Litig.*, No. 09-cv-1951, 2012 WL 2892376, at *4 (S.D.N.Y. Jul. 12, 2012) (denying leave to amend when scheduling order did not contemplate such amendments); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of motion for leave to amend, which was made after discovery closed). One case cited by Defendants, *AMA v. United Healthcare Corp.*, No. 00-cv-2800, 2600 WL 3833440, at *4 (S.D.N.Y. Dec. 29, 2006), supports Plaintiffs by confirming the appropriateness of amending pleadings to conform to information gathered through discovery and distinguishes other cases (including *Cresswell*) that denied leave to amend because discovery was closed and the case was approaching trial.

Defs.' Opp. at 15. The core of Plaintiffs' allegations has been and continues to be that Defendants' collusive agreements and network rules inflate prices to supracompetitive levels. These core allegations are not affected by Plaintiffs' proposal to plead in the alternative a two-sided relevant market in light of the Second Circuit's intervening *Amex* decision and Defendants' professed intention to rely on that decision. Even if (b)(3) Class Plaintiffs were trying to "hedge their bets," as Defendants contend, Defs. Opp. at 8 n.7, "[a] change in litigation strategy is a legitimate reason for seeking to amend a pleading under the liberal standard of Rule 15(a)." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (S.D.N.Y. 2010).

Defendants argue that pleading multiple relevant product markets in the alternative constitutes an "inappropriate pleading tactic" and results in "a patchwork of factually and legally inconsistent market definitions." Defs.' Opp. at 8 n. 7. But antitrust Plaintiffs routinely plead multiple relevant product markets in the alternative. *See, e.g.*, *New York v. Kraft Gen. Foods*, 926 F. Supp. 321, 325 (S.D.N.Y. 1995) (defendants' merger alleged to substantially lessen competition in the adult ready-to-eat cereal market, or, in the alternative, in the entire ready-to-eat cereal market); *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 96 (3d Cir. 2010) (plaintiffs pleaded relevant market for Allegheny County acute-care inpatient services, or, in the alternative, Allegheny County high-end tertiary and quaternary acute-care inpatient services).

Defendants' assertion that Plaintiffs' alternative-relevant-market allegations are "inconsistent and contradictory" is not supported by their cited cases. In *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.* the plaintiff designated the Forest Hills neighborhood of Queens as the relevant geographic market and offered facts to support a claim of restricted price competition in Forest Hills only, yet "repeatedly slid[] into assertions of market harm to the entire borough of Queens" and New York as a whole. No. 15-cv-05488, 2016 WL 5719790, at *5 (S.D.N.Y. Sep. 29, 2016). The relevant market allegations in *Techreserves, Inc. v. Delta Controls Inc.* were dismissed as "varying, inconsistent, and imprecise" because the complaint alleged a relevant market for general building-

6

management-system software and then factually narrowed the alleged product market to a single manufacturer's products without justification. No. 13-cv-00752, 2014 WL 1325914, at *5 (S.D.N.Y. Mar. 31, 2014). Those cases are distinguishable because both involved single-relevant-market pleadings that were internally inconsistent or imprecise, rather than allegations of two properly defined relevant markets, pleaded in the alternative.

### 2. Plaintiffs' amendment is not unduly prejudicial.

The party opposing an amendment bears the burden of proving that leave to amend would be *unduly* prejudicial. *Bernhard v. Cent. Parking Sys. of N.Y., Inc.*, 282 F.R.D. 284, 291 (E.D.N.Y. 2012). The "undue" or "substantial" prejudice burden that defendants must carry is animated by two paramount questions: (1) has the defendant shown that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered?; and (2) to what degree will the amendment delay the final disposition of the action? *See Allstate Ins. Co.*, 916 F. Supp. 2d at 304. As to (1), the Defendants have already taken extensive pre-settlement discovery into topics regarding the alleged "two-sided" relevant market, as (b)(3) Class Plaintiffs note above. And even if they did have to "redo" or undertake additional discovery, that burden, "standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States ex rel Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989). As to (2), any deficiencies that Defendants may believe exist in that record may be cured as the parties are once again in the middle of discovery and no trial date has been set. *Allstate Ins. Co.*, 916 F. Supp. 2d at 304. (granting leave to amend where ongoing discovery allowed nonmovant "sufficient time and opportunity to defend against any additional allegations").

7

### 3. To the extent that it is applicable to this case, the Second Circuit's *Amex* decision is intervening legal authority that justifies amendment.

As Plaintiffs have noted, the Second Circuit's decision in *United States v. Am. Express Co.*, 838 F. 3d 179 (2d Cir. 2016), is distinguishable from this case both factually and legally. To the extent that it does apply to this case, however, it represents a change in governing law, which commonly justifies leave to amend. *See, e.g., Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (plaintiff granted leave to amend in order to conform pleadings to intervening authority).

Defendants' arguments to the contrary further ignore the history of this litigation. *See* Defs.' Opp. at 15. Defendants moved to dismiss the Second Consolidated Amended Class Action Complaint on four separate grounds [D.E.1172] and sought summary judgment on nine grounds [D.E. 1495], none of which argued that the relevant market had to include merchants and cardholders as a matter of law. Thus, at least before this case was settled, Defendants appeared to understand that the law did not compel the inclusion of merchants and cardholders into the same antitrust relevant market. Any change in this view acknowledges that *Amex* changed the governing law.

## II. The Proposed Third Amended Complaint Relates Back to the Original Complaint Under Rule 15(c).

An amendment relates back under Rule 15(c) so long as it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . ." Fed. R. Civ. P. 15(c)(1)(B). Courts interpret Rule 15(c) broadly, such that even when factual allegations are "amplified, or stated in a slightly different way [than the] claim of the original complaint," or the "revised pleading contains alternative theories based on the same core facts," the amendments relate back. *Slayton v. Am. Express Co.*, 460 F.3d 215, 227, 229 (2d Cir. 2006). That is what the TCACAC does here and Defendants cannot credibly argue otherwise.

8

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), is instructive. In that case, the plaintiffs brought antitrust claims against multiple freight forwarders, alleging "a single global conspiracy." *Id.* at *46. They amended their complaint to assert "three regional conspiracies and one global conspiracy, based on those individual local conspiracies." *Id.* This Court concluded that the amendments related back because the claims in the amended pleading "arose out of the conduct complained of in their original pleading," even though discovery led the plaintiffs to "alter their legal theories" and the conspiracies they identified. *Id*. Based on this similarity of factual and legal allegations, this Court concluded that the defendants were given adequate notice of the "general fact situation alleged in the original pleading." *Id.*

As shown above, Defendants' defense of the claims in this action has always been premised on their version of how a two-sided payment platform operates and the benefits it purportedly creates for cardholders and merchants. The discovery record demonstrates that the issue of the alleged "two-sidedness" of the relevant market has been— and continues to be—an area of focus in document, deposition, and expert discovery. *See supra* at 2-4. The Defendants' claim of surprise is belied by the record. For the same reason, Defendants cannot plausibly argue that these allegations do not arise out of the "conduct, transaction, or occurrence set forth" in the original pleadings. *Precision Assocs.*, 2011 WL 7053807, at *46.

## Conclusion

Rule 23(b)(3) Class Plaintiffs have acted diligently to amend their pleading after they were reappointed in November. Because Defendants have not carried their burden to show that they will be unduly prejudiced by the proposed amendments, Rule

9

23(b)(3) Class Plaintiffs respectfully request that the Court grant their motion for leave to amend their pleadings and find that the amendments relate back to prior pleadings.

| | |
|---|---|
| March 31, 2017 | ROBINS KAPLAN LLP |
| | |
| | *s/ K. Craig Wildfang* |
| | K. Craig Wildfang |
| | Thomas J. Undlin |
| | Ryan W. Marth |
| | |
| | 800 LaSalle Avenue |
| | Suite 2800 |
| | Minneapolis, MN 55402 |
| | KCWildfang@RobinsKaplan.com |
| | TUndlin@RobinsKaplan.com |
| | RMarth@RobinsKaplan.com |
| | Tel: 612-349-8500 |
| | Fax: 612-339-4181 |
| | |
| | BERGER & MONTAGUE, P.C. |
| | |
| | *s/ H. Laddie Montague* |
| | H. Laddie Montague |
| | Merrill G. Davidoff |
| | Michael J. Kane |
| | |
| | 1622 Locust Street |
| | Philadelphia, PA 19103 |
| | hlmontague@bm.net |
| | mdavidoff@bm.net |
| | mkane@bm.net |
| | Tel: 215-875-3000 |
| | Fax: 215-875-4604 |

ROBBINS GELLER RUDMAN & DOWD LLP

  *s/ Patrick J. Coughlin*
Patrick J. Coughlin
Alexandra Senya Bernay
Carmen A. Medici

655 West Broadway
Suite 1900
San Diego, CA 92101
patc@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
Tel: 619-231-1058
Fax: 619-231-7423

*Counsel for Rule 23(b)(3) Class Plaintiffs*