

**quinn emanuel**      C O N S T A N T I N E   C A N N O N   LLP

**Steig Olson**
212-849-7152
steigolson@quinnemanuel.com

**Jeffrey Shinder**
212-350-2709
jshinder@constantinecannon.com

**James Wilson**
614-464-5606
jawilson@vorys.com

April 27, 2017

<u>**VIA ECF**</u>

The Honorable Magistrate Judge James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
        <u>05-md-1720 (MKB)(JO)</u>

Dear Magistrate Judge Orenstein:

     The 7-Eleven Plaintiffs, the Target Plaintiffs, and The Home Depot (the "Direct Action Plaintiffs") submit this letter responding to issues raised at the conference on April 20, 2017.

     <u>**Amendment of the Complaints.**</u>  The arguments during the status conference further establish that the governing standards—which liberally permit amendments absent a showing of bad faith, prejudice, or futility, *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995)—are satisfied and that the amendments through which the Direct Action Plaintiffs offer alternative market definitions responsive to *United States v. American Express*, 838 F.3d 179 (2d Cir. 2016*)* ("*Amex*") must be allowed.

     There is no basis to claim that the Direct Action Plaintiffs acted in bad faith.  In fact, the admission by Defendants' counsel that *Amex* is the first case applying a two-sided market construct to this area, *see* 04/20/17 Tr. ("Tr.") at 44-45, precludes any claim of improper delay or bad faith.  While the Direct Action Plaintiffs believe *Amex* does not apply in this horizontal conspiracy case, we nonetheless acted promptly to allege an alternative, two-sided market definition.  Defendants' admission thus places this case squarely within the line of cases holding that plaintiffs may amend pleadings to address intervening changes in the law.  *See Absolute Activist Value Master Fund v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012).

     Nor is there any basis for finding that Defendants would experience unfair prejudice if amendment is allowed.  Defendants cannot claim surprise given the huge record of prior discovery and expert reports on two-sided market concepts that Defendants developed, and they do not argue that they failed to retain evidence related to two-sided market issues —which is the true measure of unfair prejudice.  *See N.Y. State Elec.& Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 104 (2d Cir. 1996).  Defendants are left to argue only that they would have conducted discovery differently in the class case.  Such arguments—which do not amount to cognizable prejudice in any event—even if true, are irrelevant because, *inter alia*, the Direct Action Plaintiffs' cases are separate from the class case.  The only pertinent issue is whether Defendants have been

Magistrate Judge James Orenstein
Page 2

prejudiced in *these cases*—and there is no basis for claiming unfair prejudice *in these cases*. Defendants received the proposed amended complaints before depositions began, and they have conducted substantial discovery into merchant understanding of cardholder preferences in these cases. For example, Defendants' document request no. 30, served on October 15, 2014, asked for "[a]ll documents concerning rewards, services, and other benefits provided to your consumers by any issuing bank." Defendants also questioned Direct Action Plaintiff witnesses about such issues at depositions, as the attached samples demonstrate. Even now, more than six months remain in the deposition period set by the case schedule and the parties are actively negotiating supplemental document productions. There is ample time for Defendants to conduct discovery as to cardholders or any other groups, individuals, or entities. Discovery also will proceed on the two-sided market theory alleged in the initial Complaint of the injunctive relief class. Moreover, no expert reports have been produced, no expert depositions have been taken, and there is no schedule for briefing of summary judgment motions. For all of these reasons, Defendants cannot claim unfair prejudice if the amendments are permitted.

Finally, Defendants cannot argue that the proposed amendments would be futile. To the contrary, Defendants' counsel acknowledged at the status conference that Defendants will likely move to dismiss the Direct Action Plaintiffs' claims if their Complaints are *not* amended. Tr. at 44. Defendants therefore argue the *opposite* of futility: they seek to bar amendments that they contend are needed to state a claim under the new approach articulated in *U.S. v. Amex*.

**Market Definition.** An antitrust plaintiff need not prevail on its originally pleaded market definition to win the case. (Indeed, market definition is not a required element of antitrust claims, *see Federal Trade Comm'n v. Indiana Fed. of Dentists*, 476 U.S. 447, 461 (1986).) The definition of a proper market is "a deeply fact-intensive inquiry," *Todd v. Exxon Corp*., 275 F.3d 191, 199 (2d Cir. 2001) (Sotomayor, J.), that is ultimately a question for the fact finder. *See Dial Corp. v. News Corp*., 165 F. Supp. 3d 25, 34 (S.D.N.Y. 2016) ("The jury may accept the market definition proposed by either party or may develop its own definition based upon the evidence."); *US Airways v. Sabre Holdings*, 2017 U.S. Dist. LEXIS 40932 (S.D.N.Y. Mar. 21, 2017) (jury determined proper market was one-sided rather than two-sided). The fact that a jury adopts a market that varies from that alleged in a complaint is not fatal, so long as the plaintiff offers sufficient evidence to show an anticompetitive effect in the market the jury selects. The Second Circuit ruled against the government in *Amex* not because it *pleaded* the wrong market, but because it found the government had not met its burden of proving overall competitive harm in the two-sided market the Court identified. *See* 838 F.3d at 206-07.

At the conference, the Court asked whether the amendments should be analogized to a change to a factually inconsistent theory—from a red light to a green light scenario. Such an analogy is inapplicable because there is no factual inconsistency here. Under either market definition, the focus of the Direct Action Plaintiffs' claims is the same anticompetitive rules, practices, and conduct by Visa and Mastercard. Nor is a merchant-facing market factually inconsistent with one that encompasses both merchants on one side and cardholders or issuing banks on the other. Indeed, the courts that adopted the merchant-facing market advanced in the Direct Action Plaintiffs' initial Complaints recognized that that market co-existed with an "interrelated" market for card issuance. *See United States v. Visa*, 344 F.3d 229, 238-40 (2d Cir. 2003); *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 333 (S.D.N.Y. 2001). Expanding the analysis of the Defendants' anticompetitive practices to examine and quantify their overall

Magistrate Judge James Orenstein
Page 3

impact on these "interrelated" markets—which is what the alternative market definitions address—thus does not create a "red light/green light," factually inconsistent change in theory. The two-sided market construct simply shifts the consideration of evidence already being discovered into the Direct Action Plaintiffs' affirmative case.  And, in any event, the rules clearly permit antitrust plaintiffs to plead alternative markets.  *See* Fed. R. Civ. P. 8(d)(2), 8(d)(3).

**_American Pipe_ Tolling.**  At the conference, Defendants' counsel agreed that the Direct Action Plaintiffs could file a separate action alleging two-sided market concepts, and added that if they did so, the new action "undoubtedly would be consolidated with the MDL."  Tr. at 46. That acknowledgement supports the Direct Action Plaintiffs' position on *American Pipe* tolling. The relevant issue under *American Pipe* is whether there is sufficient commonality between Defendants' alleged acts challenged in the prior class case and the acts alleged in the new action to alert Defendants to the relevant evidence and preclude a claim of unfair surprise. *See Benfield v. Mocatta Metals Corp*., 26 F.3d 19, 23 (2d Cir. 1994); *Cullen v. Margiotta*, 811 F.2d 698, 721 (2d Cir. 1987).  Defendants' acknowledgement that new actions alleging two-sided market concepts have common factual questions under 28 U.S.C. § 1407(a) with the pending class and individual cases in which one-sided, interrelated market concepts are pleaded—because the new actions would address the same rules, practices, and conduct by Defendants and invoke the same statutory bases for relief—is tantamount to an acknowledgment that tolling is proper.

Notably, when addressing what Defendants would have done differently in the class case had it been litigated as a two-sided case, counsel offered only that Defendants would have performed additional expert analysis of the effect of Defendants' rules and practices on both sides of the market. Tr. at 43-44.  That admission not only reflects the lack of prejudice to Defendants if amendment is permitted—because expert reports will not be prepared for months—but also shows that whether the case be litigated with a one-sided or two-sided market definition, the conduct at issue (and the core claims) are the same, and Defendants cannot point to any evidence that they failed to preserve because the class case addressed a one-sided market.

**Effect of _Salveson_ decision.**  At the conference, this Court asked whether the decision in *Salveson v. JP Morgan Chase & Co.*, 663 Fed. App'x 71 (2016), *cert. denied*, No. 16-1104 (U.S. Apr. 24, 2017), established the "law of the case" that the market applicable to the Direct Action Plaintiffs' claims is a one-sided market for merchant acceptance as opposed to the two-sided market addressed in *Amex*.  *See* Tr. at 31.   Although the Direct Action Plaintiffs would certainly welcome a holding that the only proper market is the merchant-facing market, *Salveson*, which was decided on the pleadings, did not address the factual question as to whether the market is one-sided or two-sided.  Moreover, *Salveson* would not be law of the case, even if it were applicable, because it concerned a different lawsuit with different defendants.

**Conclusion.**  This Court should reject Defendants' effort to deprive the Direct Action Plaintiffs of their ability to respond to what Defendants concede is a new development in the law.  Defendants' position is flatly contrary to the purpose of the Federal Rules generally, *see* Rule 1, and Rule 15 specifically:  "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  *Slayton v. Am. Express*, 460 F.3d 215, 228 (2d Cir. 2006) (internal quotation marks omitted).  This Court should grant the Direct Action Plaintiffs' motions for leave to amend their Complaints.

Magistrate Judge James Orenstein
Page 4

       Respectfully submitted,

/s/ Jeffrey Shinder         /s/ Steig D. Olson        /s/ James Wilson

02441-62541/9229940.1