SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

DIRECT DIAL
(212) 735-3834
DIRECT FAX
(917) 777-3834
EMAIL ADDRESS
BORIS.BERSHTEYN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

January 11, 2018

**VIA ECF**

The Honorable James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> RE:   *In re Payment Card Interchange Fee and Merchant*
> *Discount Antitrust Litigation*, 05-MD-1720 (MKB)(JO)

Dear Magistrate Judge Orenstein:

We write on behalf of the Bank of America, Chase, Citi, Wells Fargo, Visa, and Mastercard defendants (the "Defendants") seeking an order compelling the putative (b)(3) class plaintiffs (the "(b)(3) Plaintiffs") to (i) perform custodial searches for documents in response to each of Defendants' Second Set of Requests for Production (*see* Appendix A, the "Requests") beginning August 1, 2006; and (ii) perform custodial searches, with more limited search terms, for documents responsive to a limited set of Requests concerning recently added allegations pertaining to two-sided markets (the "Two-Sided Market Requests") beginning January 1, 2000.  The (b)(3) Plaintiffs do not object in substance to the Requests but have refused to perform any custodial searches prior to July 2009.  The parties have met and conferred numerous times over more than two months, and have reached an impasse on both issues.

**Custodial Discovery from August 2006 until July 2009:**  The (b)(3) Plaintiffs allege unlawful conduct dating back decades, and seek to certify a class of all merchants that have accepted Visa or Mastercard credit or debit cards in the United States "at any time from and after January 1, 2004" and to recover damages accrued over that period.  (*See* ECF No. 7118, the "Third Consolidated Amended

The Honorable James Orenstein
January 11, 2018
Page 2

Class Action Complaint," at ¶ 66.)  As part of prior discovery in this action, the (b)(3) Plaintiffs made broad document productions through August 1, 2006. Following that date, the (b)(3) Plaintiffs made discrete supplemental productions through mid-2009.  Defendants now seek to compel the (b)(3) Plaintiffs to perform custodial searches for documents from August 1, 2006, until July 1, 2009.

The (b)(3) Plaintiffs do not meaningfully dispute that documents created in between August 1, 2006, and July 1, 2009—but omitted from the supplemental productions for that period—are relevant to the parties' claims and defenses.  Indeed, (b)(3) Plaintiffs advance claims and seek damages covering that entire time period. Courts routinely compel parties to produce documents from time periods consistent with or even preceding allegations of injury.  *See, e.g.*, *Mar. Cinema Serv. Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 591 (S.D.N.Y. 1973) (allowing discovery four years prior to damages period and noting "[d]iscovery in antitrust cases routinely goes beyond the damage period"); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 (LAK)(JLC), 2014 U.S. Dist. LEXIS 88175, at *43-45 (S.D.N.Y. June 26, 2014) (granting motion to compel production during time period consistent with class period).  But the (b)(3) Plaintiffs take the position that they need to undertake custodial searches only for documents that postdate their final limited supplemental productions.  This position is incorrect.

First, the (b)(3) Plaintiffs' proposed July 1, 2009 date to begin their custodial productions would essentially create a three-year gap in those productions.  Even a cursory comparison of the (b)(3) Plaintiffs' supplemental productions with Defendants' Requests demonstrates the limited nature of the former.  The supplemental production—covering the period between August 1, 2006, and mid-2009—is composed of updates on certain financial information, certain contracts and requests for proposals, and certain policy-related documents.  (*See, e.g.*, Appendix B, March 6, 2008 Letter.)  By contrast, the 110 Requests that Defendants served in September 2017 address numerous other subjects on which the (b)(3) Plaintiffs had produced documents through August 1, 2006—including, for example, plaintiffs' relationships with payment-related entities, analyses of payment card usage, and efforts to steer customers to a particular payment type.  (Defendants' September 2017 Requests also addressed new allegations of the Third Amended Complaint, such as those related to two-sided markets.)  The supplemental productions therefore offer no substitute for the documents responsive to the Requests.  Were the (b)(3) Plaintiffs permitted to begin their custodial productions in July 2009, a three-year gap would occur in several categories of relevant documents.[1]

---

[1]   While the (b)(3) Plaintiffs stated that they would consider producing documents from the 2006 to 2009 time period responsive to a small number of special categories that they asked Defendants to identify, such a limited production would be no substitute for full custodial searches.

The Honorable James Orenstein
January 11, 2018
Page 3

Second, the (b)(3) Plaintiffs are seeking an undue advantage over Defendants.  Although Defendants, like the (b)(3) Plaintiffs, initially made only targeted supplemental productions from August 2006 through 2009, they later made comprehensive document productions post-dating August 2006 in response to document requests served by the direct action plaintiffs.  The (b)(3) Plaintiffs sought and were granted access to those productions in August 2016.  The (b)(3) Plaintiffs should not be permitted to evade reciprocal discovery for the same period of time.

**Two-Sided Market Discovery Beginning January 2000:**  Your Honor has rejected the (b)(3) Plaintiffs' contention that their allegations—made for the first time in 2017 in the Third Amended Complaint—concerning two-sided markets should relate back to their original 2005 complaint.  The (b)(3) Plaintiffs have appealed that ruling to Judge Brodie.  In light of the upcoming discovery cut-off, the parties have agreed to engage in discovery negotiations on the basis of the broad relation-back theory that (b)(3) Plaintiffs unsuccessfully asserted.  But despite maintaining their two-sided market theory should relate back to their 2005 complaint, the (b)(3) Plaintiffs assert that all of their custodial productions should begin July 1, 2009.

Following the filing of the proposed Third Amended Complaint in 2017, Defendants made sixteen new requests directed to Plaintiffs' new allegations concerning two-sided markets.  Plaintiffs refused to produce pre-July 2009 documents in response.  Nor have they agreed to determine (let alone represent) whether the documents responsive to Defendants' sixteen new requests from the pre-August 2006 time period have already been produced.  It is highly unlikely that they have been; as the parties have previously addressed before this Court, Plaintiffs' pre-2017 discovery would not have fully addressed Plaintiffs' new two-sided market allegations.  *See, e.g.*, Hr'g Tr., April 20, 2017, at 19:13–17 ("THE COURT: [I]f what you are hoping to do is convince me that discovery would not have looked different if this had been your complaint all along, you have got a real steep climb.").

Defendants therefore respectfully request that this Court compel the (b)(3) Plaintiffs to (i) make productions from custodial searches beginning August 1, 2006, with respect to all Requests; and (ii) make productions from custodial searches, with an agreed-upon limited set of search terms, beginning January 1, 2000, in response to the Two-Sided Market Requests.

Respectfully submitted,

Boris Bershteyn

Cc:     Counsel of record (via ECF)

# Appendix A

61097222
Sep 11 2017
10:13AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE PAYMENT CARD
INTERCHANGE FEE AND MERCHANT
DISCOUNT ANTITRUST LITIGATION

Case No. 05-MD-01720-MKB-JO

This Document Applies to: ALL ACTIONS

DEFENDANTS' SECOND SET OF REQUESTS
FOR PRODUCTION AND INSPECTION OF DOCUMENTS
TO EACH OF THE PUTATIVE (b)(3) CLASS PLAINTIFFS

Pursuant to Federal Rules of Civil Procedure 26 and 34 and Eastern District Local

Civil Rule 26.3, Defendants,[1] by and through their undersigned attorneys, hereby request that

Putative (b)(3) Class Plaintiffs[2] each individually produce the documents and things

described below for examination, inspection, and copying in response to Defendants' Second

Set of Requests for Production and Inspection of Documents to Putative (b)(3) Class

Plaintiffs (the "Requests"), at a time and place to be mutually agreed upon by counsel and in

accordance with the definitions and instructions that follow.

## INSTRUCTIONS

Solely for the purpose of these Requests, the following instructions shall apply:

---

[1] Visa Inc., Visa U.S.A. Inc., and Visa International Service Association; Mastercard Incorporated and
Mastercard International Incorporated; JP Morgan Chase & Co., JP Morgan Chase Bank, N.A., Chase Bank
USA, N.A., Chase Manhattan USA, N.A., and Chase Paymentech Solutions, LLC; Citibank, N.A., Citigroup
Inc., and Citicorp Payments Services, Inc.; Wells Fargo Bank, N.A. (for itself and as successor to Wachovia
Bank, N.A.) and Wells Fargo & Company (for itself and as successor to Wachovia Corporation); and Bank of
America Corp., Bank of America, N.A., BA Merchant Services LLC (f/k/a Defendant National Processing,
Inc.), and MBNA America Bank, N.A.

[2] The Putative (b)(3) Class Plaintiffs include: 30 Minute Photos Etc. Corp.; Traditions Ltd.; Capital Audio
Electonics, Inc.; CHS Inc.; Crystal Rock, LLC; Discount Optics, Inc.; Leon's Transmission Service, Inc.;
Parkway Corp.; Payless, Inc.

1.      Unless stated in a particular Request, all Requests seek documents generated, created, received, or distributed from August 1, 2006 through a later date to be mutually agreed by the parties or ordered by the Court in MDL 1720.

2.      Except where otherwise specifically provided, these Requests are to be construed to request documents pertaining to conditions, activities, events, information and persons within the United States.

3.      If any document responsive to these Requests is withheld because you claim such document is privileged or for any other reason, provide the information required by Rule 26.2 of the Local Rules of the United States District Court for the Eastern District of New York ("Local Civil Rules") in a separate privilege log accompanying your responses.

4.      Where an objection is made to any Request, the objection shall state with specificity all grounds therefor.

5.      Documents produced in response to these Requests should be provided in the same form in which they are kept in the usual course of business and, where attached, are not to be separated or disassembled.  Electronic data, as that term is defined herein, should be produced in electronic form.

6.      Each page or sheet produced is to be marked so as to identify which Plaintiff is producing the document and with consecutive document control numbers.  Also, for each document or group of documents, please identify the individual employee from whose files the documents were obtained, or if not obtained from an individual employee's files, the department from which the documents were obtained.

7.      In order to bring within the scope of these Requests all documents that might otherwise be construed to be outside of their scope, the following rules of construction apply:

(i) the masculine, feminine, or neuter pronoun shall not exclude other genders; and (ii) the use of the verb in any tense shall be recognized as the use of that verb in all other tenses.

8.      These Requests are continuing in nature and require supplemental responses to the extent called for by Federal Rules of Civil Procedure 26(e).

9.      All terms used in these Requests have the broadest meaning accorded to them under Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, and all information should be provided in accordance with those rules.  In particular:

   a.   The terms "all" and "each" shall be construed as all and each.

   b.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of the scope.

   c.   The use of the singular form of any word includes the plural and vice versa.

10.     Requests below that follow "BEGIN TARGETED REQUESTS" and precede "END TARGETED REQUESTS" are limited such that responding to them will not require electronic searching.

<u>**DEFINITIONS**</u>

Solely for the purpose of these Requests, the following definitions shall apply, without regard to capitalization:

1.      "Acquiring bank" means a bank that contracts with a merchant to acquire and sometimes process payment card transactions from that merchant.

2.      "Bank Defendants" means Bank of America, N.A., BA Merchant Services, LLC, Bank of America Corporation, Barclays Bank plc, Barclays Bank Delaware, Barclays Financial Corp., Barclays Delaware Holdings, LLC, Capital One Bank, N.A., Capital One Financial Corporation, Capital One F.S.B., Chase Paymentech Solutions, LLC, Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., JPMorgan Chase & Co., Citibank, N.A., Citigroup Inc., Fifth Third Bancorp, First National Bank of Omaha, HSBC Finance Corporation, HSBC North America Holdings, Inc., HSBC Holdings, plc, HSBC Bank USA, N.A., HSBC Bank plc, PNC Financial Services Group, Inc., SunTrust Bank, SunTrust Banks, Inc., Texas Independent Bancshares, Inc., Wells Fargo & Company, and Wells Fargo Merchant Services, LLC,

3

including their affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

3. "Challenged Rules" means "competitive restraints," "anti-competitive restraints," "anti-steering restraints," "merchant restraints," "anti-steering rules," or "anticompetitive rules" as any of those terms is used throughout your Complaint, or any other rule, policy, or procedure of Visa or Mastercard that you allege, in whole or in part, violates the anti-trust laws.

4. "Charge card" or "travel & entertainment card" means an access device, usually a payment card, enabling the holder to purchase on credit goods and services to be paid on behalf of the holder by the issuer of such device. Typically, the contractual terms of such cards require that payment from the holder to the issuer be made in full each month, for all payments made on behalf of the cardholder by the issuer during the preceding month. The issuer does not extend credit to the holder beyond the date of the monthly statement, nor does it impose interest charges on the balance due except as a penalty for late payment. Examples of charge cards are the American Express Green, Gold, Platinum, arid Black cards as well as the Diners Club and Carte Blanche cards issued by Citibank.

5. "Putative Class Member" means any member of the Rule 23(b)(3) putative class or the Rule 23(b)(2) putative class in *In re Interchange Fee and Merchant Discount Antitrust Litigation* (E.D.N.Y. 05-MD-1720).

6. "Communication" means any oral, electronic, or written communication of which you have knowledge, information, or belief.

7. "Complaint" refers to the First Consolidated Amended Class Action Complaint filed in this action on April 24, 2006, the Second Consolidated Amended Class Action Complaint filed in this action on January 29, 2009, the First Amended Supplemental Class Action Complaint filed in this action on January 29, 2009, the Second Supplemental Class Action Complaint filed in this action on January 29, 2009, and the proposed Third Consolidated Amended Class Action Complaint filed in this action on February 8, 2017.

8. "Concerning" means relating to, referring to, describing, evidencing or constituting.

9. "Consumer" includes any individual or entity who has purchased goods or services from you, or to whom you have marketed or offered such goods or services.

10. "Credit card" means an access device, usually a payment card, enabling the holder to (i) effect transactions on credit for goods and services purchased, which are paid on behalf of the holder by the issuer of such devices; or (ii) obtain cash with credit extended by the issuer.

11. "Debit card" means an access device, usually a payment card, enabling the holder, among other things, to effect a cash withdrawal from the holder's

4

depository bank account, either at an Automated Teller Machine ("ATM") or a point of sale.

12.    "Defendants" means any and all of Visa, Mastercard and the Bank Defendants.

13.    "Discount Fee" means the fee charged by an acquiring bank to a merchant for acquiring payment card transactions.

14.    "Document" has the same meaning as in Federal Rule of Civil Procedure 34(a) and Local Civil Rule 26.3(c)(2), and includes electronic data.  In addition, "document" shall mean any "writing" as defined in Federal Rule of Evidence 1001.

15.    "Electronic data" means all information of all kinds maintained by electronic data processing systems and includes all non-identical copies of such information.

16.    "EMV Co." means the consortium of payment card networks that created and manages the EMV standard and specifications.

17.    "EMV Chip" means the computer chips embedded onto a credit card or other payment card that securely store payment card data of the sort that resides on payment cards' magnetic stripes, using any standards adopted or provided by EMV Co.

18.    "Includes" and "including" means "including but not limited to."

19.    "Interchange fee" means a fee that an acquiring bank pays to an issuing bank for each retail transaction where the issuing bank's payment card is used as a payment device at one of the acquiring bank's merchant accounts.

20.    "Issuing bank" means a bank that issues payment cards to consumers for their use as payment systems and access devices.

21.    "Mastercard" means Defendants Mastercard International Incorporated and Mastercard Incorporated, including their affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

22.    "Merchant" means any person operating a retail or service business, and includes Plaintiffs.

23.    "Merchant agreement" means any contract, agreement or understanding, whether written or oral, including any unexecuted drafts or proposals, with acquiring banks or third-party processors concerning the acquisition or processing of transactions involving payment cards.

24.    "Mobile device" means any portable computing device such as a cellular phone or tablet computer.

25.    "Mobile Payment Service" means a payment system in which payment for goods or services is made with a mobile device.

5

26.    "Individual Plaintiff" means any member of the Rule 23(b)(3) class in *In re Interchange Fee and Merchant Discount Antitrust Litigation* (E.D.N.Y. 05-MD-1720), that has brought a lawsuit against any Defendant separate from either of the putative classes.

27.    "Payment card" means a card that enables consumers to make purchases from merchants that accept the consumer's payment card.

28.    "Payment system" means any method of paying for goods or services, including, but not limited to, the types referred to as cash, traveler's checks, money orders, checks, ACH, credit cards, ATM cards, charge cards, debit cards, deferred debit cards, store or proprietary cards, co-branded cards, affinity cards, payroll cards, stored value cards, gift cards, on-line debit cards and off-line debit cards, and including brands such as American Express, China Union Pay, JCB, Optima, Discover, NYCE, PayPal, Pulse, Maestro, Interlink, the STAR Network, Visa and Mastercard.

29.    "Person" means any natural person or any business, legal or governmental entity or association.

30.    "Point of sale" or "POS" means the physical location at which the consumer provides payment for goods or services, such as a retail store, hotel, airline ticket counter, gasoline service station, etc.

31.    "Premium cards" means credit cards such as the Visa Signature card and the Mastercard World card that offer rewards or other benefits to the cardholder, generally exceeding the rewards and benefits associated with other payment cards.

32.    "Proprietary card" means a payment card issued by or on behalf of a merchant for the sole or predominant purpose of making purchases at stores owned or operated by the merchant.

33.    "Store" means (i) any retail store or service location open to the public or (ii) any location from which any of your employees or your independent contractors conduct catalog, telephone, computer, or other sales of products or services in which the consumer does not appear in person.

34.    "Third-party processor" means any firm, other than Visa, Mastercard, a client bank, or an entity affiliated with a client bank, that performs the authorization, clearing, and settlement functions of a payment card transaction.

35.    "This litigation" means the above-captioned litigation and the complaints coordinated or consolidated therein.

36.    "Visa" means Visa Inc., Visa U.S.A. Inc., and Visa International Service Association, including their affiliates, subsidiaries, agents, representatives, employees, officers, and directors.

37.    "You" and "your" means each of the Putative (b)(3) Class Plaintiffs and includes any and all of their representatives, agents, employees, officers,

directors, and all other persons acting or purporting to act on any or all of their behalf, whether authorized or not.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**BEGIN TARGETED REQUESTS**

1.      Documents sufficient to show the structure of your organization and all of your officers at all times from August 1, 2006 to the present, including organization charts that show all such persons, including such persons' names, titles, and reporting relationships.

2.      All of your 10Qs, 10Ks, annual reports, corporate disclosure reports, income statements, and profit and loss statements for each year since 2006.  If you do not generate 10Qs, 10Ks, annual reports, income statements, or profit and loss statements, produce all of your income tax returns for 2006 and each year since 2006.

3.      Documents sufficient to show the terms of all agreements or arrangements involving you and any (i) acquiring bank, (ii) third-party processor or independent service organization (ISO), (iii) issuing bank, (iv) payment card network (*e.g.*, Visa, Mastercard, American Express, Discover, Wright Express, Voyager, Blackboard One), or (v) any other entity relating to any payment cards you accept.  This Request includes, but is not limited to, all co-brand, incentive, promotional, marketing, or preferred acceptance agreements as well as any similar agreements.

4.      All franchise agreements or similar agreements in which you have sold goods or services under another entity's brand or logo.

5.      Documents sufficient to show any fees you pay, have paid, or have been assessed, as a result of your acceptance of, or participation in, any type of payment system, including discount fees, check acceptance fees, and commercial bank fees and service charges.

6.      Documents sufficient to show your annual sales volume broken down by payment system.

7.      All documents you have provided to, or received from, persons identified by you in response to Interrogatory No. 6 of Network Defendants' Second Set of Interrogatories to Putative (b)(3) Class Plaintiffs.

8.      All dashboard or other regular reports provided to you by your acquirer or third-party processor.

9.      Documents sufficient to show payments-related requests for proposals, and responses to requests for proposals, between you and any issuing banks, acquiring banks, payment card networks, or third-party processors.  This request includes summaries or recommendations from consultants you have retained to assist in any such process.

10.     The rules, regulations, bylaws, and standards governing any payment form that you accept, including but not limited to American Express, Discover, any regional PIN debit network, and digital wallets.

11.     Documents sufficient to show (i) the current terms of all of your rewards or loyalty programs and (ii) the costs, revenues and profitability of any such programs.

12.     Documents sufficient to show any payment form steering initiatives (including but not limited to discounting by issuer at the point of sale, and surcharging) considered or implemented by you in physical or digital environments.

13.     Documents sufficient to show all waivers, variances, or modifications to requirements of Mastercard's or Visa's rules that you have requested or otherwise obtained, including in connection with co-brand cards or other card products.

14.     Documents sufficient to show your company's direct lobbying efforts regarding issues pertaining to payment cards, or any such lobbying materials your company has received from any trade association or organization to which you belong.

15.     Documents sufficient to show the impact of reduced interchange fees on (i) the (a) annual number and (b) annual cost to you of regulated PIN debit and signature debit transactions following the implementation of the Durbin Amendment by the Federal Reserve and (ii) your prices charged to consumers.

16.     All materials prepared for your Board of Directors and your Board committees concerning payments issues.

**END TARGETED REQUESTS**

17.     Documents sufficient to show all of your lines of business.

18.     All documents concerning any franchise agreements or similar agreements in which *you have sold* goods or services under another entity's brand or logo and that relate in any way to payment cards, including but not limited to any such agreements, summaries of such agreements, documents concerning your decision to enter into any such agreements, and the negotiations regarding such agreements.

19.     All documents concerning any franchise agreements or similar agreements in which *another entity or third party has sold* goods or services under your brand or logo and that relate in any way to payment cards, including but not limited to any such agreements, summaries of such agreements, documents concerning your decision to enter into any such agreements, and the negotiations regarding such agreements.

20.     Documents sufficient to show any fees you pay, or have paid, to any franchisor as a result of your acceptance of, or participation in, any type of payment system, including discount fees, check acceptance fees, service charges, or blended payment card fees.

21.     Documents sufficient to show (i) any revenue you have received that is associated with the use of payment cards and that you have received from an entity besides an

10

acquiring bank, and (ii) any payment card processing fees or merchant discount fees you have been obligated to pay to any entity besides an acquiring bank.

22.     All documents concerning communications, agreements, or arrangements involving you and any (i) acquiring bank, (ii) third-party processor, (iii) issuing bank, (iv) payment card network (*e.g.*, Visa, Mastercard, American Express, Discover, Wright Express, Voyager, Blackboard One), or (v) any other entity relating to any payment cards you accept. This Request includes all documents concerning (i) the negotiation of any proposed merchant agreement, (ii) any amendments, modifications, or proposed amendments or modifications to any term of any merchant agreement to which you are a party, (iii) any reaction or response by you to such a change, (iv) any request by you to change any such term, or (v) any complaint by you concerning any such term.

23.     All documents concerning your choice of, and your deliberations over your choice of, acquiring bank or third-party processor, including any marketing, advertising, promotional materials, sales pitches, solicitations or offers to you concerning any proposed merchant agreements, any analysis of such offers, whether conducted by you or a third party, or the factors you considered in choosing an acquiring bank or third-party processor.

24.     Documents sufficient to show any fees you pay or have paid to any third-party processor or independent sales organization as a result of your acceptance of, or participation in, any type of payment system, including discount fees, network fees, check acceptance fees, service charges, or processing fees.

25.     All documents concerning any breakdown, study, or analysis, whether conducted by you or a third party, of the types of goods or services purchased at your stores as a function of the type of payment system used to effectuate the sale.

26.     All documents concerning any breakdown, study, or analysis, whether conducted by you or a third party, of the interchange rate(s) applicable to purchases made with a payment card, including but not limited to (i) efforts to qualify for, or track transactions that qualify for, specific categories of interchange, or (ii) efforts considered, whether implemented or not, to meet specific volume thresholds published or privately disclosed by any payment card network or the subject of a contractual agreement with that payment card network.

27.     All documents concerning any breakdown, study, or analysis, whether conducted by you or a third party, of the average transaction size based on the type of payment system used to effectuate the sale.

28.     All documents concerning any rule or requirement of any payment system that requires you to accept all payment cards of a particular brand (*e.g.*, Visa, Mastercard, American Express, or Discover) if you accept any cards of that brand.

29.     All documents concerning any rule or requirement of any payment system that prevents you from discriminating against that payment system, including but not limited to rules or requirements restricting your ability to surcharge or discount some payment cards but not others at the POS.

30.     All documents concerning any rule or requirement of any payment system except Visa and Mastercard that prevents you from surcharging or discounting at the POS.

31.     All documents concerning (i) any cost/benefit analysis for accepting or not accepting various payment systems; (ii) the actual or potential impact of any payment system on (a) consumer behavior or satisfaction, (b) sales volume, (c) operating costs, (d) profit margins, (e) the efficiency of processing sales transactions at your stores, (f) any additional or incremental purchases made by consumers, and (g) the financial or projected financial effect

12

of such acceptance or non-acceptance; and (iii) any other study, analysis, consideration or decision by you or on your behalf to accept, decline to accept, or discontinue the acceptance of any payment system.

32.     Documents sufficient to show the payment methods accepted for your non-face-to-face sales.

33.     Documents sufficient to show the business impact to you of offering non-face-to-face sales to consumers.

34.     Documents sufficient to show any projections of payment system growth or consumer usage.

35.     All documents concerning a consumer's ability to use one payment system as an alternative to another payment system, including at your stores.

36.     Documents sufficient to show the terms of any relationship between you and (i) any of your acquiring banks, or (ii) any issuer of payment cards that you accept.

37.     All documents concerning any payment cards issued to you, including but not limited to any corporate, purchasing, or commercial cards, and the terms of your relationships with the issuers of such cards.

38.     All documents, including studies, surveys, deliberations, comparisons, or analyses, concerning the direct or indirect costs to you or other merchants of accepting any payment system.  This Request includes (i) costs concerning loss from theft, fraud, forgery, or payment default (such as dishonored checks), (ii) costs incurred in transmission of payment from the consumer to you, or from you to any deposit account maintained by you, (iii) costs of maintaining staffing levels necessary to support each payment system, (iv) costs from human error, (v) costs incurred as a result of chargebacks, (vi) processing costs, and (vii) hardware costs.

39.     All documents concerning the rate of theft, fraud, forgery, or payment default (such as dishonored check) from your acceptance of any payment system.

40.     All documents, including studies, surveys, deliberations or analyses, concerning the direct or indirect costs to you or other merchants of *not* accepting any payment system.

41.     Documents sufficient to show your actual or potential ability to pass on to consumers your cost of accepting any payment system (*e.g.*, through price increases or additional fees).

42.     All documents concerning any contemplated or actual communication concerning rebates, reimbursements, or any other form of payment made to you by any issuing bank, acquiring bank, payment card network, or third-party processor regardless of whether any actual rebate, reimbursement or payment was ever made.

43.     Documents sufficient to show any payments received by you as a result of your acceptance of, or participation in, any type of payment system, including any rebates, reimbursements or other monetary incentives.

44.     All documents concerning any reasons that prevent you or have prevented you from accepting any payment system, including any financial, contractual, or infrastructural limitations.

45.     Documents sufficient to show all hardware you employ for processing transactions using any payment system, including the capabilities, features, and programming of such hardware.

46.     All documents, including studies, surveys, deliberations or analyses, concerning Mobile Payment Services (*e.g.*, Apple Pay), including but not limited to documents concerning any fees you pay, have paid, or have been assessed, as a result of your

acceptance of any Mobile Payment Service, and the hardware and software, including

terminals and payment systems, used to process or accept payments on a Mobile Device.

47.     All documents concerning the application of any payment system rules or

requirements to Mobile Payment Services.

48.     All documents, including studies, surveys, deliberations or analyses,

concerning EMV Co. (including EMV Chip cards and EMV standards), including but not

limited to the hardware and software, including terminals and payment systems, used to

process or accept EMV Chip cards.

49.     All communications between you and any payment network related to (i)

EMV standards or specifications, (ii) cardholder verification methods, (iii) the routing of

debit card transactions, (iv) software or hardware for terminals used by you (including the

programming of the terminals and terminal display screens and prompts), (v) the Durbin

Amendment or Regulation II, (vi) and any acceptance, incentive, or promotional agreement,

and documents related to the communications in (i)-(vi).

50.     All communications between you and any acquirer or third-party processor

related to (i) EMV standards or specifications, (ii) cardholder verification methods, (iii) the

routing of debit card transactions, (iv) software or hardware for terminals used by you

(including the programming of the terminals and terminal display screens and prompts), (v)

the Durbin Amendment or Regulation II, (vi) and any acceptance, incentive, or promotional

agreement, and documents related to the communications in (i)-(vi).

51.     All communications between you and any merchant or trade association

related to (i) EMV standards or specifications, (ii) cardholder verification methods, (iii) the

routing of debit card transactions, (iv) software or hardware for terminals used by you

(including the programming of the terminals and terminal display screens and prompts), (v)

the Durbin Amendment or Regulation II, (vi) and any acceptance, incentive, or promotional agreement, and documents related to the communications in (i)-(vi).

52.     All internal communications related to (i) EMV standards or specifications, (ii) cardholder verification methods, (iii) the routing of debit card transactions, (iv) software or hardware for terminals used by you (including the programming of the terminals and terminal display screens and prompts), (v) the Durbin Amendment or Regulation II, (vi) and any acceptance, incentive, or promotional agreement, and documents related to the communications in (i)-(vi).

53.     All documents concerning the liability shift associated with EMV Chip cards and effective as of October 2015.

54.     All documents, including studies, surveys, deliberations or analyses, concerning consumer usage, preferences, practices, perceptions, or attitudes towards any payment system, including whether consumers prefer any payment system over another and the reasons for that preference, including demographics.

55.     All documents concerning rewards, services, and other benefits provided to your consumers by any issuing bank.

56.     All documents concerning any relationship between interchange fees and (i) any cardholder benefits, or (ii) the revenue you, or any other merchants, receive.  The time period for this Request is January 1, 2000 to the present.

57.     All documents concerning any contemplated or actual communication between you and consumers regarding any payment system, including but not limited to any consumer complaint concerning your acceptance or non-acceptance of any type of payment system.

58.     All documents concerning any differences in your consumers' rights to cancel, rescind, or invalidate a purchase for any reason between different types of payment systems.

59.     All documents concerning any proposed, draft, or actual agreement or arrangement involving your acquiring bank and any (i) third-party processor, (ii) issuing bank, or (iii) payment card network that directly or indirectly affects, by any means, the discount fee you pay, whether or not such agreements currently are in force, including any documents received from acquiring banks or third-party processors describing the steps needed to qualify transactions for certain preferred interchange fees or discount rates offered by any payment card network.

60.     All documents concerning actual or proposed signage, electronic display prompts, marketing, or advertising concerning any type or brand of payment system.

61.     All documents concerning actual or potential efforts, promotions, advertising, programs, incentives, or card features designed to decrease the time necessary for you to process point of sale transactions on credit, charge, or debit cards, including but not limited to eliminating a signature requirement on some types of transactions.

62.     All documents concerning any preference that you have that a consumer use a certain type of payment system, including but not limited to documents concerning your plans, efforts, consideration and ability to encourage or "steer" any consumer to use or refrain from using any payment system to pay for purchases, including but not limited to prompting for PIN verification when a debit card is presented to initiate a transaction, or offering discounts or rewards for consumers' use of a particular payment system, a particular payment card or the payment cards of a particular issuer.

17

63.    All documents concerning ChaseNet or ChasePay, including but not limited to discussions, studies, analyses, and reports regarding your use or consideration of ChaseNet or ChasePay.

64.    All documents concerning your efforts to provide a POS experience for your Visa or Mastercard payment card-using customers that is differentiated by issuing bank, including but not limited to any negotiations or attempted negotiations with issuing banks over discounts, rebates, or marketing associated with the use of Visa- or Mastercard-branded payment cards that the banks issue.  The time period for this Request is January 1, 2000 to the present.

65.    All studies, reports, and analyses concerning the benefits or drawbacks, or potential benefits or drawbacks, of providing a POS experience for your Visa or Mastercard payment card-using customers that is differentiated by issuing bank, and all documents concerning those studies, reports, and analyses.  The time period for this Request is January 1, 2000 to the present.

66.    Documents sufficient to show on an annual basis the costs of any discounts you provide to your customers on sales of goods and services, regardless of the payment system used.

67.    All documents concerning any fees or surcharges you impose, have ever imposed, or have contemplated imposing on consumers for using any type of payment system.  This Request includes, but is not limited to, fees or charges you impose on consumers who pay by check (including charges for insufficient funds) and fees or surcharges charged to your consumers for your acceptance of any type of debit card.

68.    All documents concerning your acceptance or non-acceptance of premium or commercial cards, including (i) any analysis of particular costs and benefits of such cards, (ii)

18

the extent of any additional or incremental sales associated with those cards, or (iii) your consumers' spending levels on premium or commercial cards.

69.     All agreements concerning ATMs in your stores or in any adjacent area on property owned by or leased to you, and all documents concerning the effect of such agreements on the use of any payment system in your stores.

70.     All documents concerning your policies or procedures for accepting any payment system for purchases at any of your stores, including any training or education you provide to or require of your employees concerning any payment system you accept.

71.     All documents concerning mandatory or priority routing rules employed in the processing of any type of payment method at your stores.

72.     All documents, including studies, surveys, deliberations or analyses, concerning the efforts or costs of forming, operating or supporting a payment card network, including any efforts of which you are aware to develop any type of merchant-controlled or merchant-operated payment card network.

73.     All documents concerning Merchant Customer Exchange (MCX).

74.     All documents concerning any extension of credit by you to your consumers, including but not limited to any revenues, costs, profits and losses from any such credit extension, and if applicable, documents concerning the discontinuance of such a program, including the expected replacement source for extending credit to your customers.

75.     All documents concerning any credit card, charge card, co-branded card, proprietary card, debit card, gift card, or any other payment cards (i) in which your name appears or has appeared on the cards, (ii) in which you have a financial or proprietary interest, or (iii) with which you have an affiliation.  This Request includes, but is not limited to, documents or analyses concerning such program's influence on your (i) sales, (ii) average

ticket size per transaction, (iii) profit margins, (iv) revenue received from the merchant's program partner, (v) market position, and (vi) ability to compete with other merchants. The time period for this Request is January 1, 2000 to the present.

76.     All documents concerning interchange fees, merchant discount fees, or acquirer network fees (fixed or variable), including but not limited to studies, analyses, reports, memoranda and communications. This Request includes documents concerning your consideration or potential consideration of merchant discount fees in setting the actual prices for goods or services to your consumers.

77.     All documents concerning the effect of any mandatory or voluntary modification or abolition of a payment card network's "no surcharge rule."

78.     All documents concerning the effect of any mandatory or voluntary modification or abolition of a payment card network's "no discount rule."

79.     All documents concerning "Network services," as that term is used throughout your Complaint, including but not limited to communications and analyses regarding such services, requests for such services, and documents concerning any analyses, costs, benefits, prices, and sources of such services.

80.     All documents concerning the Challenged Rules.

81.     All documents concerning the effects, including but not limited to any harm suffered or benefits accrued, of the Challenged Rules on (i) cardholders or other consumers, (ii) you, or any other merchant, (iii) issuing banks, or (iv) innovation or competition between or among issuing banks. The time period for this Request is January 1, 2000 to the present.

82.     All documents concerning the effects, including but not limited to any harm suffered or benefits accrued, of the Challenged Rules on innovation in payment card

technologies, including anti-fraud measures.  The time period for this Request is January 1, 2000 to the present.

83.     All documents referring or reflecting any consideration or analysis of differentiated card acceptance practices at the point of sale, including but not limited to all documents referring to or reflecting analysis of incremental sales you would or could have made if there was differentiated card acceptance practices at the point of sale for Visa- or Mastercard-branded payment cards.  The time period for this Request is January 1, 2000 to the present.

84.     All documents referring to or reflecting requests or inquiries you have made to anyone, including but not limited to any payment card network or any merchant acquirer or processor, pertaining to differentiating card acceptance practices at the point of sale. The time period for this Request is January 1, 2000 to the present.

85.     All documents concerning any injury you claim to have suffered as a result of any Defendant's alleged unlawful practices as described in your Complaint.

86.     All documents concerning the amount you contend you were damaged as a result of any Defendant's alleged unlawful practices as described in your Complaint.

87.     All documents concerning any steps you have taken to mitigate the damages you claim against each and any Defendant in this action, including the costs and benefits of taking each such step.

88.     All documents concerning *In re Visa Check/MasterMoney Antitrust Litigation* (E.D.N.Y. 96-CV-5238), including but not limited to (i) your participation or nonparticipation in the settlement in that case, (ii) any consideration you received as a result of that settlement, and (iii) any documents you produced in that litigation.

89.     All documents concerning *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (E.D.N.Y. 05-MD-1720), including but not limited to (i) your participation or nonparticipation in any settlement in that case, (ii) your participation or nonparticipation in the appeal of that settlement, (iii) any consideration you received as a result of that settlement, and (iv) any documents you produced in that litigation.

90.     Documents sufficient to show any litigation in which you have been a party and (i) a payment card network, issuing bank, acquiring bank or third-party processor was a party, and (ii) which pertained to the acceptance of any payment system, or the rules of any payment system.

91.     All documents concerning communications between you and any other party, including any Defendant, Putative Class Member, or Individual Plaintiff, and its counsel or other representative, concerning this litigation, the potential bringing of this litigation, or any other litigation involving Visa or Mastercard.

92.     All documents containing, reflecting, or concerning public statements, including those on the internet, you have made concerning discount fees, interchange fees, this litigation or any other litigation involving Mastercard or Visa.

93.     All documents concerning contracts or agreements regarding your participation in this litigation.

94.     All documents, including Board minutes, concerning your consideration of bringing, and ultimate decision to bring, this litigation as a Plaintiff.

95.     All documents called for, identified by, referred to in, or concerning any interrogatory in Network Defendants' Second Set of Interrogatories to Putative (b)(3) Class Plaintiffs.

96.    All documents you have subpoenaed concerning the claims or defenses that are subject of this litigation.

97.    All documents concerning any settlements, consent decrees, judgments, orders, legislation (or proposed legislation), or regulations (or proposed regulations) relating to payment systems and involving any of the Defendants.

98.    All documents concerning your or any of your employees' participation in, involvement with, or communications with, any trade association or comparable organization that has addressed payment system issues, including but not limited to any such documents provided to and received from any such organization concerning payment systems, and any pre-reads, minutes or notes reflecting any such meetings insofar as they concerned payment systems.

99.    All documents concerning the ways in which your customers have been harmed by or benefited from any payment system, or from your lack of differentiated card acceptance practices at the point of sale.  The time period for this Request is January 1, 2000 to the present.

100.    All documents referring to or reflecting an analysis of the effects of the Durbin Amendment on (i) debit card rewards, (ii) consumer choice of payment type, (iii) average ticket size per transaction, (iv) incremental sales, and (v) merchant profit margins.

101.    All documents assessing the effects of any regulation of interchange fees, foreign or domestic, on (i) debit card rewards, (ii) consumer choice of payment type, (iii) average ticket size per transaction, (iv) incremental sales, and (v) merchant, including but not limited to your, profit margins.  The time period for this Request is January 1, 2000 to the present.

102.    All documents referring to or reflecting an analysis of actual or anticipated cardholder reaction, including any modification in customer spend, to changes in rewards or point of sale benefits.  The time period for this Request is January 1, 2000 to the present.

103.    All documents discussing any technological innovation, or lack of innovation, by Visa and Mastercard, including but not limited to all documents comparing EMV Chip cards or EMV standards or specifications to alternative anti-fraud technologies.  The time period for this Request is January 1, 2000 to the present.

104.    All documents referring to or reflecting an analysis of the efficacy, cost, and anticipated benefits to you of the "more effective technologies [that] had developed that would have addressed fraud in e-commerce transactions," as alleged in Paragraph 278 of your proposed Complaint dated February 8, 2017.  The time period for this Request is January 1, 2000 to the present.

105.    All documents referring to or reflecting an analysis of the anticipated or actual cardholder reaction to "more effective technologies [that] had developed that would have addressed fraud in e-commerce transactions," as alleged in Paragraph 278 of your proposed Complaint dated February 8, 2017.  The time period for this Request is January 1, 2000 to the present.

106.    All documents containing communications or analyses comparing technology used by the Visa and/or Mastercard networks with other payment systems.  The time period for this Request is January 1, 2000 to the present.

107.    All documents containing communications or analyses comparing technology used by the Visa and/or Mastercard networks in the U.S. with Visa and/or Mastercard networks outside the U.S.  The time period for this Request is January 1, 2000 to the present.

108.    All documents concerning your contention that classes should be certified pursuant to Federal Rule of Civil Procedure 23, including documents concerning whether common issues will predominate over individual issues, whether your claims are typical of those of the putative class, and whether there are conflicts of interest that would preclude you from serving as an adequate class representative.

109.    All documents concerning the allegations set forth in paragraph 58 of your proposed Complaint dated February 8, 2017, including but not limited to the allegation that "[e]ven after the corporate Restructuring of the Visa and MasterCard Networks, the banks continue to conspire to fix Interchange Fees and to impose the Anti-Steering Restraints and the other forms of anticompetitive conduct described herein."

110.    All documents concerning alleged or actual two-sided markets or platforms. The time period for this Request is January 1, 2000 to the present.

Dated: September 11, 2017

**HOLWELL SHUSTER & GOLDBERG LLP**

By:  ___/s/ _Demian A. Ordway_____
Michael S. Shuster
Demian A. Ordway
750 Seventh Avenue, 26th Floor
New York, NY 10019
mshuster@hsgllp.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Robert C. Mason
250 West 55th Street
New York, NY 10019
(212) 836-8000
robert.mason@apks.com

Robert J. Vizas
Three Embarcadero Center, 10th Floor
San Francisco, CA   94111

Mark R. Merley
Matthew A. Eisenstein
601 Massachusetts Ave, NW
Washington, DC 20001

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Gary R. Carney
1285 Avenue of the Americas
New York, NY 10019

Kenneth A. Gallo
Donna Ioffredo
2001 K Street, NW Washington, DC 20006 (202) 223-7300
kgallo@paulwiess.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Peter E. Greene
Boris Bershteyn
4 Times Square
New York, NY 10036
(212) 733-3000
peter.greene@skadden.com
boris.bershteyn@skadden.com

*Attorneys for Defendants JP Morgan Chase & Co., JP Morgan Chase Bank, N.A., Chase Bank USA, N.A., Chase Manhattan USA, N.A., and Chase Paymentech Solutions, LLC*

**SIDLEY AUSTIN LLP**

David F. Graham
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
dgraham@sidley.com

Benjamin R. Nagin
Eamon Joyce
787 Seventh Avenue
New York, NY 10019

*Attorneys for Defendants Citibank, N.A., Citigroup Inc., and Citicorp Payments Services, Inc.*

**PATTERSON BELKNAP WEBB & TYLER LLP**

Robert P. LoBue
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
rplobue@pbwt.com

*Attorneys for Defendants Wells
Fargo Bank, N.A. (for itself and as
successor to Wachovia Bank, N.A.)
and Wells Fargo & Company (for
itself and as successor to Wachovia
Corporation)*

**MORRISON & FOERSTER LLP**

Mark P. Ladner
Michael B. Miller
250 West 55th Street
New York, NY 10019
(212) 468-8000
mladner@mofo.com
mbmiller@mofo.com

*Attorneys for Defendants Bank of
America Corp., Bank of America,
N.A., BA Merchant Services LLC
(f/k/a Defendant National
Processing, Inc.), and MBNA
America Bank, N.A*

# Appendix B

# ARNOLD & PORTER LLP

**Matthew A. Eisenstein**
Matthew_Eisenstein@aporter.com

202.942.6606
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

March 6, 2008

**VIA LEXIS / NEXIS FILE & SERVE**

Kevin J. Murray, Esq.
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Blvd.
Miami, FL 33131-4327

Ryan Marth, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015

David P. Germaine, Esq.
Vanek, Vickers & Masini P.C.
111 S. Wacker Drive, Suite 4050
Chicago, IL 60606

Kristen Anderson, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
401 B. Street, Suite 1700
San Diego, CA 92101

Re:     *In re Payment Card Interchange Fee and Merchant Discount
Antitrust Litigation*

Dear Counsel:

We write to memorialize the results of our March 3, 2008 telephonic meet-and-confer concerning the Individual and Putative Class Plaintiffs' Responses to Defendants' Requests for Supplementation of Prior Discovery (the "Requests"). We ask that, within ten days, you inform us if you have a different understanding as to any of the matters discussed below, and state your positions on any open issues. (Per Kristen Anderson's March 3 e-mail following the meet-and-confer, we understand that Putative Class Plaintiff Payless will respond separately if its positions differ from those of the other Putative Class Plaintiffs.)

As a preliminary matter, we reiterate the reservation rights stated in the Requests. In particular, nothing in this letter or the Requests should be construed to limit the requirement that Plaintiffs provide complete responses to Defendants' prior discovery requests for the period of January 1, 2000 to August 1, 2006. Defendants also reserve all rights to seek other discovery from Plaintiffs and to seek supplementation of any discovery request not specifically mentioned herein in the future.

We next address three overarching issues discussed during the meet-and-confer.

*First*, in response to Individual Plaintiffs' General Objection No. 19 -- in which Individual Plaintiffs objected to conducting any "custodial searches" for responsive documents -- the parties agreed that the Requests seek discrete sets of documents dated between August 1, 2006 and December 31, 2007, and should not require comprehensive searches of all documents

# ARNOLD & PORTER LLP

Kevin Murray, et al.
March 6, 2008
Page 2

in any employee's files.  However, we also conveyed our expectation that Plaintiffs will conduct diligent and thorough searches of any source within their possession, custody or control that is reasonably likely to contain the responsive materials.  In some instances, we anticipate that Plaintiffs may need to collect discrete sets of documents from individual employees.

*Second*, Plaintiffs' written responses state that Plaintiffs will produce documents "at a mutually agreeable time which shall be no earlier than the date on which Defendants agree to produce supplemental discovery to Plaintiffs."  In response to this point, we explained that the Network Defendants and Plaintiffs are close to agreement on all issues with respect to the Network Defendants' supplemental productions (i.e., documents covering August 1, 2006 to December 31, 2007).  The Network Defendants expect to start making rolling productions within the next month and hope to complete their productions (including their "custodial productions") on or before April 30, 2008.  (We understand that Plaintiffs' negotiations with the Bank Defendants are on a separate track.)  In light of the Network Defendants' expected production schedule, we ask that Plaintiffs likewise commit to making their supplemental productions on a rolling basis, beginning as soon as possible and targeting a completion date of April 30.  We believe that this request is reasonable, given the discrete nature of the Requests, which will not require Plaintiffs to undertake "custodial searches."

*Third*, in those instances where Plaintiffs indicated they would produce non-privileged documents responsive to a particular Request, we understand that Plaintiffs will not withhold any such documents on the basis of general objections or objections to definitions or instructions set forth in Plaintiffs' written responses.

Finally, and subject to the foregoing, we set forth below the parties' positions on each Request.

Request 1.  <u>Actual agreements and amendments concerning payment cards</u>.  This Request seeks "[a]ll actual agreements and amendments to agreements between you and any processor, acquiring bank, issuing bank, payment card network, or any other entity, concerning any credit card, charge card, co-branded card, proprietary card, debit card, or any other payment card in which your name appears or in which you have a financial or proprietary interest."  Putative Class Plaintiffs agreed to produce any non-privileged, responsive documents.  Individual Plaintiffs agreed to "produce any executed contract relating to payment forms with any processor, acquiring bank, issuing bank or payment card network that has been entered into between August 1, 2006 and December 31, 2007," but objected to the phrase "any other entity" as too vague to meaningfully respond.

Individual Plaintiffs requested that Defendants describe the "other entities" that would be covered by this Request.  We agreed to do so.  However, we also explained that Individual Plaintiffs would be in a better position than Defendants to identify entities that supply (or have

# ARNOLD & PORTER LLP

Kevin Murray, et al.
March 6, 2008
Page 3

supplied) services relating to payment cards to Individual Plaintiffs. We thus asked that Individual Plaintiffs agree to produce contracts with any entities falling within the categories we describe, even if we do not identify such entities by name. Subject to that understanding, the phrase "any other entities" includes providers of:

- so-called "alternate payment systems," such as Blackboard BbOne, Tempo Payments, PayPal, Bill Me Later, Google Checkout or Revolution Money;

- gift cards, such as Blackhawk, InComm, or Chockstone (to the extent that an Individual Plaintiff has a "financial interest" in those payment cards, such as receiving a commission from their sales);

- loyalty or affinity rewards programs, such as Affinity Solutions, United Airlines, or American Airlines; and

- consulting services.

We request Individual Plaintiffs' position.

Request 2. <u>Proposed agreements or responses to RFPs concerning payment cards</u>. This Request seeks "[d]ocuments sufficient to show proposed agreements or arrangements, or responses to requests for proposals, from any processor, acquiring bank, issuing bank, payment card network, or any other entity, concerning any credit card, charge card, co-branded card, proprietary card, debit card, or any other payment card in which your name appears or in which you have a financial or proprietary interest." We explained the relevance of documents showing proposals for, and terms of, potential agreements concerning payment cards, including those in which a Plaintiff has decided not to enter the relationship or is still considering doing so. We also explained that the burden of searching for these materials should be limited, given that the Request seeks documents only on a "sufficient to show" basis. Putative Class Plaintiffs agreed to produce any non-privileged, responsive documents.

As in response to Request 1, Individual Plaintiffs objected to the phrase "any other entity." The parties agreed that any resolution of that objection would apply to both Requests 1 and 2. Individual Plaintiffs further objected to producing documents pertaining to "ongoing negotiations," on the grounds that such documents are "highly sensitive." Individual Plaintiffs stated that such information could (i) "get into the wrong hands" and affect the course of the negotiations; or (ii) paint a "misleading picture" of Individual Plaintiffs' position. As to the "misleading picture" issue, we explained that such a concern exists with any documents produced in discovery, not just those relating to ongoing negotiations; the Rules require production of responsive, non-privileged documents regardless of whether the producing party believes such documents present a complete or representative account of the matters they address. As to the "highly sensitive" issue, we explained that the agreed-upon Protective Order that governs the use of discovery materials in this case simply would not permit the use (or

# ARNOLD & PORTER LLP

Kevin Murray, et al.
March 6, 2008
Page 4

dissemination) of any materials in the manner that Individual Plaintiffs suggest. To be sure, if "sensitivity" were an adequate basis for withholding documents, the Network Defendants could not have agreed to supplement their productions with documents from the files of certain custodians (Bill Sheedy, Steve Jonas and Deborah Doyle), Board of Directors materials, etc.

We request Individual Plaintiffs' position.

Request 3. <u>Changes in policies and procedures concerning payment systems</u>. Putative Class Plaintiffs questioned the meaning of the terms "policies and procedures." In response, we referred back to the parties' agreement on Request for Production 34 in Defendants' First Set. As the parties previously agreed, the Request "encompasses policies, procedures, employee training materials, store operating manuals, and related documents that concern the methods of payments accepted at Plaintiffs' stores in all forms: paper, electronic, digital, or other forms." *See* ltr. from M. Eisenstein to K. Wildfang, et al. (Aug. 8, 2006). Subject to those terms, Putative Class Plaintiffs and Individual Plaintiffs agreed to produce non-privileged, responsive documents.

Requests 4-8. <u>Data requests</u>. Putative Class and Individual Plaintiffs agreed to respond to these Requests by "rolling-forward" their prior data productions to cover the period of August 1, 2006 to December 31, 2007. We made clear that, given the ongoing discussions with Plaintiffs about their data productions, the supplemental productions must include any type of data that each Plaintiff has agreed (or will agree) to produce from January 1, 2000 to August 1, 2006, as a result of those discussions. We also note that these Requests track paragraphs one through four of Michael Johnson's letter to Plaintiffs of June 8, 2007, to which Putative Class responded on September 14, 2007 and Individual Plaintiffs responded on June 29 and September 6, 2007. Plaintiffs previously agreed to identify the data responsive to each of these Requests, and we ask that Plaintiffs again do so in connection with their supplemental data productions.

*        *        *

We look forward to your responses to the points raised in this letter.

Sincerely,

Matthew Eisenstein