UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION

This Document Relates To:

    ALL ACTIONS.

---------------------------------------------------------- x

No. 05-md-1720 (MKB)(JO)

JOINT STATUS CONFERENCE STATEMENT

CONFERENCE DATE: JANUARY 23, 2018

    The parties respectfully submit this Joint Case Status Report and Proposed Agenda for the Case Management Conference currently scheduled for January 23, 2018.

## I.   PENDING MOTIONS

    Defendants' motion to compel certain (b)(3) class discovery will be fully briefed at the time of the conference.

    Plaintiffs have appealed Magistrate Judge Orenstein's Order dated September 27, 2017, regarding the amended complaints, which remains pending before Judge Brodie.

    The action captioned *Luby's Fuddruckers Restaurants, LLC v. Visa Inc., et al.*, 1:17-cv-04555-MKB-JO was transferred to this Court by the Judicial Panel for Multidistrict Litigation. Plaintiff in that action has filed a motion to remand the action to Texas state court. That motion has been fully briefed and argued by the parties and is pending before the Court.

## II.   STATUS OF DEPOSITION DISCOVERY

**<u>Defendants' Position</u>**

    The parties continue to work cooperatively on deposition scheduling. While many DAP witness depositions have been scheduled, Defendants are awaiting dates for depositions from several DAPs requested months ago. These depositions should be scheduled promptly in order to avoid unnecessarily burdening the back end of the schedule given the extensive number of

depositions of other plaintiffs that defendants still need to schedule and conduct. To that end, defendants have also requested that all of the class named plaintiffs and "new" individual plaintiffs in the 7-Eleven, Hertz, Roundy's, Dollar General and Sunoco actions begin working on providing dates for Rule 30(b)(6) depositions before April 30, 2018. Since Defendants likely will have to take at least several dozen more depositions, timely scheduling is critical. Depending on the ability of these merchants (the class named Plaintiffs and "new" individual Plaintiffs) to complete requested document productions (see below), Defendants may have to take some necessary depositions after April 30.

With minor exceptions, Defendants have provided to plaintiffs dates for depositions of their requested witnesses. Defendants will continue to work with plaintiffs to schedule these remaining witnesses promptly. Defendants will object to any further depositions identified by plaintiffs.[1] Visa in particular objects to the broad additional Rule 30(b)(6) deposition requested by Plaintiffs on January 9, 2018, but will discuss that issue with Plaintiffs further. Finally, the parties are also beginning to schedule additional third-party depositions.

Defendants do not believe that there are any deposition-related disputes that require the Court's attention at this time.

**Direct Action Plaintiffs' Position**

The Direct Action Plaintiffs continue to work diligently to provide dates for the small number of plaintiffs' depositions remaining to be scheduled.

---

[1] Plaintiffs point to their June 6, 2017 reservation of rights, but defendants have expressly objected to that improper blanket reservation. *See* June 12, 2017 Letter from Visa counsel at 1 ("We therefore reject your letter's 'reservation of rights' to seek additional time with any witness, or to take additional 30(b)(6) testimony, that would extend beyond those limits."); June 23, 2017 Letter from Mastercard counsel at 2 ("We also reject the Direct Action Plaintiffs' 'reservation of rights' to seek additional time with any witness, or to take additional 30(b)(6) testimony."); and July 7, 2017 Letter from Bank Defendants counsel (same).

While plaintiffs also await some deposition dates from defendants, most have been scheduled. Defendant's blanket assertion that they "will object to any further depositions identified by plaintiffs" is inconsistent with the parties' prior agreement memorialized in the Direct Action Plaintiffs' letter of June 6, 2017, in which the Direct Action Plaintiffs in good faith attempted to identify all remaining requested depositions while also reserving the right to notice additional 30(b)(6) depositions on certain topics as necessary. With respect to Visa, on January 9, 2018 the Direct Action Plaintiffs noticed a single additional 30(b)(6) deposition of Visa related to narrow, EMV-specific issues, including specialized EMV network rules. The Direct Action Plaintiffs will continue to discuss the notice with Visa.

In addition, like defendants, the Direct Action Plaintiffs have requested dates for depositions of certain representatives of the Equitable Relief Class Plaintiffs, and are awaiting a response from their counsel regarding same.

The Direct Action Plaintiffs are continuing to schedule depositions of certain nonparty witnesses. While they are still working cooperatively with most of these nonparties, such that there are not currently any issues ripe for discussion at the January 23 conference, should that cooperation break down, Direct Action Plaintiffs will notify the Court so that those issues can be resolved promptly.

### III. DOCUMENT PRODUCTION STATUS

**Defendants' Position**

*Requests for Production to DAPs*: With respect to the parties' initial and supplemental discovery requests, the defendants and DAPs are in the process of completing supplemental document production and addressing cooperatively any final open issues, including the production of relevant transaction data and the production of documents regarding certain

3

merchant data breaches. Defendants have also served second sets of document requests on the DAPs pertaining to two-sided market issues, to which the DAPs have responded and objected. Defendants appropriately served these requests to ensure that the DAPs have produced documents relevant to their new allegations. To the extent the responsive documents have been produced, the DAPs can represent that to Defendants. Currently, the parties are in the process of meeting and conferring on the DAPs' objections and production of documents responsive to that second set of requests. There is no dispute requiring the Court's attention at this time.

*Requests for Production on Class Plaintiffs and "new" individual plaintiffs*: Defendants have also served updated Requests for Production on both the Damages and Equitable Relief class plaintiffs, the newly-added 7-Eleven merchant plaintiffs, the Hertz group plaintiffs, Roundy's, the Dollar General group plaintiffs, and Sunoco. The parties are at various stages of discussions on scope, custodians and search terms, and certain of these plaintiffs have begun making productions. Defendants have requested that these productions be completed in a timely fashion that will leave ample time for deposition discovery of these plaintiffs prior to the April 30 deadline.

Defendants and the (b)(3) Damages class plaintiffs have identified one dispute concerning the (b)(3) plaintiffs' objection to producing documents prior to 2009, even though (i) the prior document production cut-off in the case occurred in 2006 (from which point Defendants have updated their productions), and (ii) Defendants have requested two-sided market documents back to 2000. Defendants have now filed a motion to compel the production of those documents, and the motion is scheduled to be fully briefed in advance of the status conference.

4

**Direct Action Plaintiffs' Position**

*Second Set of Requests for Production to the Direct Action Plaintiffs.*  Defendants served a broad-sweeping Second Set of Requests for Production on the 7-11 Plaintiffs on October 19, 2017, and waited until December 1, 2017 to serve a similar request upon the Target Plaintiffs, and until December 4, 2017 to serve a similar request upon The Home Depot.  The 7-Eleven Plaintiffs and the Target Plaintiffs have served responses and objections to these requests, and have begun the process of meeting and conferring with defendants.  Meanwhile, The Home Depot's responses and objections are due January 17, 2018.

While defendants characterize their Second Sets of Requests for Production as "pertaining to two-sided market issues," the requests are actually far broader than that.  For instance, defendants requested "[a]ll documents" relating to the relationship between interchange fees and merchants' revenue (Request No. 1), "[a]ll documents" relating to merchants' proprietary payment cards (Request Nos. 2, 13), documents relating to the impacts of the 2011 Durbin Amendment or other interchange rate regulation (Request Nos. 8, 9), and documents relating to defendants' initial public offerings (Request Nos. 20, 21).  The defendants also seek documents related to a number of merchants' data breaches, to which the Direct Action Plaintiffs have objected as irrelevant.  Further, many of the requests included in defendants' Second Set of Requests for Production are duplicative of requests previously served on the Direct Action Plaintiffs over the past several years, as to which the parties have previously negotiated.  Finally, the search terms defendants have so far proposed to use for collection and review of documents in response to the Second Set of Requests for Production overlap significantly with those search terms the Direct Action Plaintiffs already used for document collection and review, such that further document collections will necessarily bear duplicative review of documents.

Regardless, the Direct Action Plaintiffs are continuing to meet and confer with defendants regarding these requests.

*Requests for Production on "New" Individual Plaintiffs.* The 7-Eleven Plaintiffs are producing documents from new plaintiffs added as part of their Fifth Amended Complaint on a rolling basis. The 7-Eleven Plaintiffs agree that in cases where the timing of the document production from certain new plaintiffs makes scheduling depositions before April 30 impractical, they will not object to these depositions taking place after that date, provided defendants agree that any delay of those depositions will not affect, or be used as a basis for seeking to extend, the overall case schedule. The parties will discuss these depositions and their timing on a case-by-case basis.

### (b)(3) Class Plaintiffs' Position

Defendants served 110 document requests on (b)(3) Class Plaintiffs, most of which contemplated custodial searches of employees of each of the nine (b)(3) Class Representatives, going back to 2006 or 2000. Given the breadth of Defendants' requests, Class Plaintiffs have engaged in eleven hours of meet-and-confer negotiations over the past months and are near agreement on most subject matters. While Class Counsel had been in constant contact with Defendants' counsel regarding these requests, including the afternoon in which Defendants served their motion to compel, Class Counsel was not aware that Defendants would file a motion until they were served with it by ECF.

## IV. AMENDED COMPLAINTS

### Defendants' Position

As noted in the November 21, 2017, Joint Status Conference Statement (Dkt. 7128), Defendants believe that plaintiffs' amended complaints do not comply with the Court's

September 27, 2017, Memorandum and Order granting in part, and denying in part, plaintiffs' contested motions to amend. In that Memorandum and Order, Your Honor explained: "Specifically, I grant plaintiffs leave to amend their complaints to include allegations pertaining to a two-sided relevant market over defendants' objections, but only to the extent that these claims are not time-barred: the two-sided market claims do not relate back to earlier pleadings and are not subject to equitable tolling." The Court then directed plaintiffs "to amend their complaints in accordance with this order and to file the amended complaints as separate entries on the docket by October 27, 2017."

Plaintiffs filed objections to Your Honor's decision with Judge Brodie, and Defendants have responded to plaintiffs' objections. Plaintiffs also have filed amended complaints. The parties have stipulated that Defendants' time to respond to the amended complaints is extended until 21 days after Judge Brodie rules on plaintiffs' objections to Your Honor's Memorandum and Order of September 27, 2017.

Despite being given a month to revise their complaints, plaintiffs filed amended complaints on October 27, 2017, that track almost verbatim the proposed amended complaints that Your Honor denied, in part, leave to file. In particular, plaintiffs made no changes to reflect Your Honor's ruling that "two-sided market claims do not relate back to earlier pleadings and are not subject to equitable tolling."

Defendants respectfully submit that plaintiffs have not complied with Your Honor's direction, and the newly filed amended complaints exceed the leave granted by the Court. Plaintiffs contend that the language in their pleadings limiting damages to those "permitted by the applicable statutes of limitations" (in the (b)(3) complaint) or "permitted by law" (in the Target complaint) automatically addresses this Court's ruling, but Defendants do not agree. In

7

the interest of conserving judicial resources, Defendants respectfully ask that Your Honor direct plaintiffs to re-file amended complaints that comply with your September 27 Order. If plaintiffs do not re-file amended complaints that comply with Your Honor's Order, Defendants are concerned that the parties and the Court may spend unnecessary resources on responding (by answer or motion 21 days after Judge Brodie rules on the objections) to multiple complaints that may have been filed without leave, and engaging at this advanced stage of the litigation in discovery that may not accurately reflect the permitted scope of plaintiffs' allegations. The parties met and conferred on this issue on January 5, 2018, and were unable to reach a resolution.

**Plaintiffs' Position**

As noted in the last status report (ECF No. 7128), Defendants' suggestion that the Court's Order required substantial revisions to the proposed amended complaints surprised each and every group of plaintiffs in MDL 1720. Reading the Order separately and filing their amended complaints independently, no individual or class plaintiff interpreted the Order as the Defendants do−to require the plaintiffs to make substantive "changes to reflect Your Honor's ruling that 'two-sided market claims do not relate back to earlier pleadings and are not subject to equitable tolling.'" That is because the Defendants' position makes no legal or practical sense. Indeed, when the parties met and conferred, the Defendants were unable to identify *a single specific example* of how the amended complaints violated the Court's order. Nor have Defendants explained how the parties are somehow at risk of "engaging at this advanced stage of the litigation in discovery that may not accurately reflect the permitted scope of plaintiffs' allegations."

That is because it is both premature and legally unnecessary to require plaintiffs to delineate the proper "scope" of the plaintiffs' allegations for damages purposes. As an initial

8

matter, the two-sided market allegations are framed in the "alternative" because, as the Court noted in the Order, it is premature to decide the relevant markets in this case. The question of the precise nature and definition of the appropriate market in this case will be affected by a number of factors, including the District Court's decision on whether to adopt Your Honor's recommendations, the Supreme Court's decision in the *American Express* case, and the ongoing discovery being conducted by the parties, and is properly reserved for resolution at the summary judgment stage or by the jury at trial. Plaintiffs' notice pleading requirements have been satisfied by pleading these markets in the alternative. Rule 8 requires nothing more.

Moreover, as plaintiffs noted in their briefing on the relation back issue, the same rules and conduct are at issue whether the case is deemed one-sided or two-sided, and allegations going back to 2004 and possibly prior bear on the case irrespective of which approach to market definition is applied at summary judgment or trial. It is routine for antitrust complaints to include allegations from periods outside the applicable statute of limitations if conduct in that period created continuing anticompetitive effects that caused harm to competition and damages in the limitations period. Plaintiffs alleged just that for the period prior to 2004 if the market is one-sided and those allegations would be still relevant if the market is determined to be two-sided. Once again, Rule 8 requires nothing more.

For these reasons, there is no requirement that a plaintiff specifically renounce relation back in its pleadings. Not only have Defendants failed to cite any authority other than the Order, to the contrary, plaintiffs may arguably be required to adhere to their contested alternative allegations to preserve for appeal their position that relation back and class action tolling should apply. In any event, as noted, the effect of the statute of limitations on plaintiffs' claims is a matter for another day.

With respect to their claims for relief, as Defendants note, the amended complaints are self-limiting. Rule 23(b)(3) Class Plaintiffs, for example, seek damages "sustained by the Plaintiffs and Class Members for the fullest time period *permitted by the applicable statutes of limitations* and the settlement and release in *In re Visa Check/MasterMoney Antitrust Litigation*." Rule 23(b)(3) Class Pls.' Pr. For Rel. D. (first italics added; second in original). Other plaintiff groups have similar language in their pleadings. *See, e.g.*, Target Amended Compl. at Pr. For Rel. A (requesting damages to the extent permitted by law). Thus, to the extent the District Court adopts Your Honor's order, and applies it to limit the extent to which Rule 23(b)(3) Class Plaintiffs—or any other plaintiff for that matter—may recover damages, that limitation is captured within their prayer for relief, and need not be altered.

Other than erecting new hoops for the plaintiffs to jump through, there is no practical effect to Defendants' objections. If the Defendants need any more specific information about which amendments were added to further address "two-sided" market issues, they can refer to the redlined versions of the amended complaints filed in connection with the motions for leave.

Dated: January 17, 2018

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  */s/ Kenneth A. Gallo*
Kenneth A. Gallo
Donna M. Ioffredo
2001 K Street, NW
Washington, DC 20006
(202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

Gary R. Carney
Alex M. Hyman
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
gcarney@paulweiss.com
ahyman@paulweiss.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*