UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to: ALL ACTIONS

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

A putative class of over twelve million merchants brought antitrust actions under the

Sherman Act, 15 U.S.C. §§ 1 and 2, and state antitrust laws, against Defendants Visa and

MasterCard networks, as well as various issuing and acquiring banks, including Bank of

America. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d

207 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016). Plaintiffs allege that

Defendants harmed competition and charged merchants supracompetitive prices by creating

unlawful contracts and rules and by engaging in conspiracies. *Id*. at 213. One of the challenged

rules is the "Honor All Cards" rule, which requires merchants that accept any Visa-branded or

MasterCard-branded payment cards to accept all Visa or MasterCard payment cards. *Id.*

Plaintiffs argue that their inability to steer customers away from particular cards has resulted in

supracompetitive interchange rates established by the networks. *Id.*

In addition to the class actions, groups of some of the largest merchants brought actions

against Defendants, which actions were consolidated together with the class actions into a multi-

district litigation ("MDL") in 2005.  *Id.* at 223.  One such group is the 7-Eleven Plaintiffs ("7-Eleven").[1]  *7-Eleven, Inc., v. Visa Inc.*, No. 13-CV-5746 (E.D.N.Y. Feb. 17, 2015).

Currently before the Court is 7-Eleven's appeal of Magistrate Judge James Orenstein's Order denying 7-Eleven's request to overrule Bank of America's assertions of work product and attorney-client privilege over documents produced from the files of Bank of America's former, non-attorney employee Herbert Fellman (the "Fellman Documents").  (Minute Order dated Aug.

---

[1]  The 7-Eleven Plaintiffs  are: Academy, Ltd. d/b/a Academy Sports + Outdoors, Alimentation Couche-Tard Inc., Alon USA, LP, Amazon.com, Inc., American Multi-Cinema, Inc., Ashley Furniture Industries, Inc., Barnes & Noble, Inc., Barnes & Noble College Booksellers, LLC, Beall's, Inc., Boscov's, Inc., Brookshire Grocery Company, The Buckle, Inc., The Children's Place, Inc. f/k/a The Children's Place Retail Stores, Inc., Coborn's, Incorporated, Costco, Wholesale Corp., Cracker Barrel Old Country Store, Inc., Cumberland Farms, Inc., D'Agostino Supermarkets, Inc., Dick's Sporting Goods, Inc., Dillard's, Inc., Drury Hotels Company, LLC, Euromarket Designs, Inc., d/b/a Crate & Barrel and CB2, Meadowbrook, LLC., d/b/a The Land of Nod, Express, LLC, Family Dollar Stores, Inc., Family Express Corporation, Fleet Wholesale Supply Co., Inc., Fleet and Farm of Alexandria, Inc., Fleet Wholesale Supply of Fergus Falls, Inc., Fleet and Farm of Green Bay, Inc., Fleet and Farm of Menomonie, Inc., Mills Fleet Farm, Inc., Fleet and Farm of Manitowoc, Inc., Fleet and Farm of Plymouth, Inc., Fleet and Farm Supply Company of West Bend, Inc., Fleet and Farm of Waupaca, Inc., Mills E-Commerce Enterprises, Inc., Brainerd Lively Auto, LLC, Foot Locker, Inc., The Gap, Inc., Genesco, Inc., GNC Holdings, Inc., Gulf Oil Limited Partnership, HMSHost Corporation, IKEA North America Services, LLC, Jetro Cash & Carry Enterprises, LLC, Lowe's Companies, Inc., Marathon Petroleum Company LP, Michaels Stores, Inc., National Association of Convenience Stores, National Community Pharmacists Association, National Grocers Association, National Railroad Passenger Corporation, New York & Company, Inc., NIKE, Inc., P.C. Richard & Son, Inc., Pacific Sunwear of California, Inc., Panda Restaurant Group, Inc., Panera Bread Company, The Priceline Group, Inc., Priceline.com, LLC, Ralph Lauren Corporation, Recreational Equipment, Inc., Republic Services, Inc., Restoration Hardware, Inc., Sears Holdings Corporation, Speedway, LLC, Starbucks Corporation, Stein Mart, Inc., Swarovski U.S. Holding, Ltd, The Talbots, Inc., Thermo Fisher Scientific Inc., Thorntons, Inc., The Wet Seal, Inc., Whole Foods Market Group, Inc., Whole Foods Market Rocky Mountain/Southwest, LP, Whole Foods Market California, Inc., Mrs. Gooch's Natural Food Markets, Inc., Whole Food Company, Whole Foods Market Pacific Northwest, Inc., WFM-WO, Inc., WFM Northern Nevada, Inc., WFM Hawaii, Inc., WFM Southern Nevada, Inc., The William Carter Company, and Yum! Brands, Inc.  *7-Eleven, Inc., v. Visa Inc.*, No. 13-CV-5746 (E.D.N.Y. Feb. 17, 2015).

24, 2017 ("August 2017 Order"), Docket Entry No. 7051.)  For the reasons set forth below, the

Court affirms Judge Orenstein's August 2017 Order.

## I.   Background

At issue is a collection of documents retrieved from the files of Mr. Fellman including

emails, PowerPoint presentations, handwritten notes, and graphs.  These documents are

identified as Exhibits A through T and cover a range of ███████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████.  According to Bank of America, it

inadvertently disclosed these documents in the course of discovery.  (Bank of America's Mem.

of Law in Opp'n to 7-Eleven Pls. Obj. to Magistrate Judge Orenstein's Order Regarding Bank of

America's Assertions of Privilege 5 ("Def. Opp'n on Appeal"), Docket Entry No. 7081.)

### a.   Procedural background

On March 15, 2017, and April 18, 2017, Bank of America notified 7-Eleven that it would

seek to claw back the Fellman Documents because they were produced inadvertently and are

subject to work product protection and the attorney-client privilege.[2]  (*See* 7-Eleven Pls. Obj. to

Magistrate Judge Orenstein's Order Regarding Bank of America's Assertions of Privilege ("Pls.

Appeal"), Docket Entry No. 7063.)

On August 4, 2017, after the parties met and conferred, 7-Eleven filed a motion seeking

an order invalidating Bank of America's assertions of work product protection and attorney

client privilege over the Fellman Documents.  (Pls. Mot. to Invalidate Def. Assertion of Privilege

("Pls. Mot."), Docket Entry No. 7043.)  On August 16, 2017, Bank of America opposed 7-

---

[2]  Pursuant to the Protective Order, applicable privileges are not waived due to
inadvertent disclosure.  (Protective Order dated April 9, 2015, Case No. 1:14-MD-01720, Docket
Entry No. 227-1).

Eleven's motion.  (Def. Mem. of Law in Opp'n to Pls. Mot. ("Def. Resp."), Docket Entry No.

7043-3.)  Judge Orenstein denied 7-Eleven's motion on August 24, 2017.  (August 2017 Order.)

On September 8, 2017, 7-Eleven appealed Judge Orenstein's August 2017 Order, in

accordance with Rule 72(a) of the Federal Rules of Civil Procedure, requesting that the Court set

aside the order based on clear error and as contrary to law.  (Pls. Appeal.)  On October 3, 2017,

Bank of America opposed 7-Eleven's appeal.  (Def. Opp'n on Appeal.)  7-Eleven submitted its

reply brief on October 12, 2017.  (Pls. Reply Br. in Supp. of the Appeal ("Pls. Reply"), Docket

Entry No 7095.)

> **b.  Factual background**

The Fellman Documents include PowerPoint slides, emails and handwritten notes.  (*Id.*)

As to some documents, Bank of America claims privilege for selected pages rather than the

entire document.[3]  (*See e.g.*, PowerPoint slides annexed to Pls. Appeal as Ex. Q.)

> **i.  The parties' arguments before Judge Orenstein**

7-Eleven made several arguments before Judge Orenstein.  First, it argued that the

Fellman documents do not contain any attorney-client communication and instead were "fact-

based business analyses evaluating ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████.  (Pls. Mot. 2.)  Second, it argued that the documents do

not constitute work product as they contain Bank of America's "strategic business response" and

not the "mental processes of . . . counsel or its litigation strategy."  (*Id.* at 4.)  Third, it argued

that even if the documents can be labeled work product, they are merely factual and do not

involve any legal analysis or opinion, and are therefore only entitled to minimal protection.  (*Id.*)

---

[3]  Because of the nature of the documents, the Court only describes them generally.

Finally, 7-Eleven argued that any minimal protection is outweighed by its "substantial need for the documents" and the inability to "obtain the information without undue hardship." (*Id.*)

In response, Bank of America argued that the documents are both attorney-client communication and work product, as they include information gathered at the direction of outside counsel in anticipation of litigation and reflect "mental impressions" and "analysis" of counsel. (Def. Resp. 2.) Specifically, Bank of America argued that the Fellman Documents were created as part of a project entitled "Workstreams," ███████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████. (*Id.* at 1.) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. (*Id.* at 2.)

### ii.   August 24, 2017 hearing and Judge Orenstein's decision

On August 24, 2017, Judge Orenstein heard oral arguments on the motion, and allowed the parties to argue the merits without specific references to the content of the documents because of the nature of the motion. Judge Orenstein told the parties that if they needed to reference the contents of the documents, he would allow them to argue those issues in a hearing closed to the public. (Aug. 24, 2017 Hr'g Tr. ("Hr'g Tr.") 11–12, Docket Entry No. 7052.) The parties never referenced the content of the documents and did not request a closed hearing to do so. (*See id.*)

Consistent with their written submissions, 7-Eleven argued that the documents are not privileged under the work product doctrine, and do not constitute attorney-client communication. Bank of America argued that the documents are protected under both doctrines.

Judge Orenstein ruled that the documents are subject to work product protection, and therefore declined to determine whether the documents are also protected by attorney-client privilege. (*Id.* at 36–37.) Judge Orenstein found that the documents at issue are "clearly created for this litigation" and are "opinion" work product and therefore entitled to heightened protection. *Id.* He further ruled that 7-Eleven already had access to the underlying facts, and failed to make a showing sufficient to breach the higher protection afforded to opinion work product. (*Id.*)

### iii.   7-Eleven's Appeal

7-Eleven argues that Judge Orenstein's decision should be set aside as clearly erroneous and contrary to law because: (1) Judge Orenstein failed to examine each of the Fellman Documents individually to determine their eligibility for work product protection; (2) to the extent that some documents are entitled to work product protection, they are not opinion work product and are therefore only entitled to a lower level of protection, which can be overcome by 7-Eleven's "substantial need," (Pls. Appeal 2); and (3) Judge Orenstein erred by not deciding that the documents are not protected by attorney client privilege. (*Id.* at 3.)

7-Eleven argues[4] that Exhibits C, D, E, Q, S and T are "business documents, devoid of any legal analysis concerning litigation or settlement and would have been generated . . . in the ordinary course of business." (*Id.* at 12.) As to Exhibits A, B, F, G, H, I, J, K, L, N and P,[5] 7-Eleven concedes that they constitute work product, but argues that they are not "opinion" work

---

[4]   7-Eleven did not make document-specific arguments in its initial moving papers, (*see* Pls. Mot.), but did so at the hearing as to some of the documents, (*see* Aug. 24, 2017 Hr'g Tr. ("Hr'g Tr.") Docket Entry No. 7052).

[5]   7-Eleven does not make document-specific arguments with regard to Exhibits M, O and R.

product, subject to heightened protection because, to the extent they reflect opinions, the opinions are not those of an attorney and the documents are therefore entitled to a lower level of protection — a protection that can be overcome by 7-Eleven's demonstrated substantial need and inability to access the information elsewhere without "undue hardship." (*Id.*)

7-Eleven also challenges Mr. Fellman's response to a question about these documents at his deposition. ██████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████ (Fellman Dep. Tr. 204:8–25, annexed to Pls. Appeal as Ex. Y.)  7-Eleven contends that "even assuming that it was counsel who first asked Mr. Fellman to provide ██████████ ████████████████████████████████████████████████████, that topic cannot be immunized from discovery entirely." (Pls. Appeal 18.)

### iv.   Bank of America's objections on appeal

On appeal, Bank of America states that all of the documents were prepared for litigation at the direction of its inside and outside counsel for the "Workstreams" project and therefore constitute opinion work product subject to heightened protection. (Def. Opp'n on Appeal 10–11.)  Bank of America contends that the Fellman Documents are "the product of ████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████ and are therefore attorney opinions. (*Id.* at 12.)  Bank of America argues that none of those documents was "used for business purposes independent of the litigation, and they have not been located in any other Bank

of America business-person's files." (*Id.*)

In response to 7-Eleven's argument that the documents are only entitled to a lower level of protection because they contain a business-person's opinions and not those of an attorney, Bank of America argues that Rule 26 (b)(3)(B) of the Federal Rules of Civil Procedure affords heightened protection to opinions of an "attorney or other representative concerning litigation," and Mr. Fellman is one such representative because he was "working on a litigation project directly and in conjunction with the attorneys themselves, and the documents were not shared with other business people."[6] (*Id.* at 16.) Bank of America further argues that because the documents are opinion work product and are entitled to a heightened level of protection, 7-Eleven's substantial need for the documents is irrelevant, and even if it is relevant, 7-Eleven has failed to demonstrate such need. (*Id.* at 17–18.)

Lastly, Bank of America argues that the documents constitute attorney-client communication and are therefore protected under attorney-client privilege. (*Id.* at 18–20.)

## II.  Discussion

### a.  Standard of review

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of

---

[6] Bank of America also argues that 7-Eleven has changed its position on appeal because 7-Eleven argued before Judge Orenstein that the documents contain facts and not opinions and therefore are only entitled to a lower level of protection, but on appeal, 7-Eleven argues that the documents are only entitled to a lower level of protection because they contain the opinion of Mr. Fellman, who is an employee and therefore not a "representative" within the meaning of Rule 26 (b)(3). (Bank of America's Mem. of Law in Opp'n to 7-Eleven Pls. Objection to Magistrate Judge Orenstein's Order Regarding Bank of America's Assertions of Privilege, ("Def. Opp'n on Appeal") 15, Docket Entry No. 7081.) Although Bank of America is correct that 7-Eleven's moving papers before Judge Orenstein did not contain the latter argument, 7-Eleven made the argument at the hearing before Judge Orenstein. (*See e.g.* Aug. 24, 2017 Hr'g Tr. 24–26 arguing that even as opinion, the Fellman documents are only entitled to the ordinary protection because they belong to a business executive and not an attorney.)

Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Ebo v. N.Y. Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014))); *see also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007)).  An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal quotations omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Ebo*, 2015 WL 4078550, at *4.  An order is only contrary to law if it misapplies existing law and the district judge is convinced that a mistake has been made.  *In re Gordon*, 780 F.3d at 158. "Consequently, [a] magistrate judge's order simply cannot be contrary to law when the law itself is unsettled." *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008); *Mfg. Admin. & Mgmt. Sys., Inc. v. ICT Grp., Inc.*, 212 F.R.D. 110, 119 (E.D.N.Y. 2002).

Under this highly deferential standard, magistrate judges are "afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *McNamee*, 2014 WL 1338720, at *2 (first citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990); and then citing *United States v. Dist. Council*, 782 F. Supp. 920, 922 (S.D.N.Y. 1992)).  Therefore, "a party seeking to overturn a discovery order [by a magistrate judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y 2011)).  "[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Pall*

*Corp.*, 655 F. Supp. 2d at 172.

**b.    Work product doctrine**

The work product doctrine exists to protect attorneys' mental impressions, opinions, and/or legal theories concerning litigation. *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989).  The doctrine creates a "zone of privacy" for developing litigation theories and strategies free from unnecessary intrusion by adversaries. *United States v. Adlman*, 68 F.3d 1495, 1500–01 (2d Cir. 1995) (*Adlman I)* (citing *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). Rule 26 (b)(3) of the Federal Rules of Civil Procedure codifies the work product doctrine, and provides:

> (A) Documents and Tangible Things.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26 (b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26 (b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure.  If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

As specified by Rule 26 (b)(3)(A) and (B), there are two categories of work product, each afforded a different level of protection — one that can be subject to discovery upon a showing of "substantial need" and "undue hardship" to acquire the document or substantial equivalent (26 (b)(3)(A)), and a second (26 (b)(3)(B)) that, "at a minimum," requires "a highly persuasive showing," *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (*Adlman II)*, or extraordinary justification to secure its release, *In re Grand Jury Proceedings*, 219 F.3d 175, 191

(2d Cir. 2000).[7]

The work product afforded higher protection is generally referred to as "opinion" work product.  *See, e.g., Adlman II,* 134 F.3d at 1197.  ("[The] documents that tend[ ] to reveal the attorney's mental process . . . described by commentators as opinion work product, receive special protection not accorded to factual material.") (citing *Upjohn*, 449 U.S. at 399) (internal quotation marks omitted.)  The work product afforded lesser protection is generally characterized as "fact" work product.  *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183–84 (2d Cir. 2007) ("There are two types of work product, ordinary or fact (herein 'fact') and opinion.  As we have stated previously, fact work product may encompass factual material, including the result of a factual investigation.")

However, the differentiation in protection is not only based on whether the document is factual or whether it reflects a qualifying opinion, but is also based on to whom the work product is attributed.  Fed. R. Civ. P. 26 (b)(3).  "The most protected category includes 'mental impressions, conclusions, opinions or legal theories of an attorney or other representative,' and even a showing of 'substantial need' can be insufficient to compel disclosure of such materials."  *Id.* at 1204 (citing Fed. R. Civ. P. 26 (b)(3)).  In contrast, work product which was prepared by or for a party, or by or for his representative is afforded a lower — "ordinary" level of protection.  *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642 n.6 (E.D.N.Y. 1997) ("ordinary work product, which essentially can be any material prepared by or for a party in anticipation of

---

[7] Some Circuits equate the heightened protection to a virtually absolute protection.  *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) ("The mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning litigation is virtually undiscoverable"); *Leviton Mfg. Co. v. Universal Sec. Instruments*, 606 F.3d 1353, 1365 (Fed. Cir. 2010) ("Opinion work product generally remains immune from discovery; exceptions to this protection are very rare and exist only in extraordinary circumstances.")

litigation, and not to the second sentence, which admonishes courts to refrain from ordering disclosure of core work product."); *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 400 (S.D.N.Y. 2016) ("work product analysis . . . turns on the author and nature of the notes, not the identity of the interviewer.")

A party asserting work product protection, whether with a heightened or lower level of protection, has the initial burden of showing that the material (1) is a document or tangible thing, and (2) was prepared in anticipation of litigation. Fed. R. Civ. P. 26 (b)(3)(A). In addition, if the party is seeking ordinary protection, it has to demonstrate that the work product was prepared *by or for a party, or by or for his representative.* Fed. R. Civ. P. 26 (b)(3)(A) (emphasis added). However, if the party is seeking heightened protection, the party must demonstrate that the work product is an *opinion* attributed to the party's "attorney or other representative." Fed. R. Civ. P. 26 (b)(3)(B) (emphasis added); *Adlman II,* 134 F.3d at 1197.

There is no dispute that the Fellman Documents constitute documents or tangible things within the meaning of Rule 26 (b)(3). The Court reviews whether Judge Orenstein correctly found that Bank of America has met its burden of demonstrating that the documents were prepared in anticipation of litigation, and are entitled to heightened protection.

### i.   The Fellman Documents were prepared in anticipation of litigation

Bank of America argues that the Fellman Documents were prepared in the course of the litigation, within the framework of the "Workstreams" project, which was initiated by Bank of America's in-house counsel ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████   (Def. Opp'n on Appeal 3.)

Bank of America provides the following explanation for the documents.  Exhibits A, B and N were drafted by Mr. Fellman at the direction of in-house and outside counsel and provide ████████████████████████████████████████████████████.  (*Id.* at 8.) Exhibits C, D, and E are PowerPoint presentations prepared at the direction of counsel ██ ███████████████████████████████████████ (*Id.*)  Exhibits F, G, H, and L are PowerPoint slides, some of which were prepared as a part of the Workstreams project and therefore subject to recall.  Bank of America contends that these specific slides provide ███████████████████████████████████ ████████████████████████████████████████████████ ████████████  (*Id.* at 9.)  Exhibits P and R are paper copies of the specific pages included in Exhibits C through L, and contain █████████████████████████████ █████████.  Exhibit M is a PowerPoint presentation prepared by ██████████████ ███████████████████████████████████████████████████ ████████████████████████████ (*Id.*)  Exhibit O is a paper copy of Exhibit M, containing █████████████████████████████████████ (*Id.*)  Exhibit S contains ███████████████████████████████ ███████████████████████.  (*Id.* at 9–10.)  Finally, Exhibit T is a █████████████ ████████████████████████████████████████████████ ████████████████████████.[8]

7-Eleven contends that the majority of the documents make no reference to the litigation, and their subject matter "has nothing to do with this action."  (Pls. Appeal 12.)  7-Eleven also

---

[8]  Mr. Ladner, the lead outside counsel for Bank of America in this litigation, a Morrison and Foerster attorney, provides the contextual information about the documents.  (*See* Ladner Decl., annexed to Def. Opp'n on Appeal as Ex. 2.).

contends that Exhibits C, D, E, Q, S and T are not work product documents because they are business documents "devoid of any legal analysis concerning litigation or settlement, and would have been generated in the same or similar form in the ordinary course of business irrespective of litigation." (*Id.*)  7-Eleven argues that these specific documents discuss issues such as ██████████ ████████████████████████████████████████████████████, and make only "scant references to the litigation" which do not indicate that these documents were made "because of the litigation." (*Id.*)  As an example, 7-Eleven points to Exhibit Q, which lists ████████████████████████████████████████████████████████. (*Id.* at 13.) ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ which are not related to this litigation. (*See* Ex. Q.)

The Second Circuit has adopted a "because of" test for work product, under which any document prepared "'because of' existing or expected litigation" is protected from discovery under the work product doctrine. *Adlman II*, 134 F.3d at 1198 (rejecting the narrower formulation that encompasses only those documents "prepared primarily or exclusively to assist in litigation" (citation omitted)).  The determination of whether a document "ha[s] been prepared or obtained because of" litigation is made "in light of the nature of the document and the factual situation in the particular case." *Id.* at 1202.  Whether a document is entitled to the work product status turns on whether it "would have been prepared irrespective of the expected litigation." *Id.* at 1203–04.  Work product protection is not available for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Id.* at 1202; *Int'l Design Concepts v. Saks Inc.*, 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006); *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-

CV-8997, 2015 WL 3450045, at *5 (S.D.N.Y. May 28, 2015).  However, documents prepared both for litigation and business purposes may be protected under Rule 26 (b)(3).  "[A] document . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation."  *Adlman II*, 134 F.3d at 1195.

The Court agrees with Judge Orenstein that the Fellman Documents were "clearly created for this litigation."  (Hr'g Tr. 36:22).  The litigation was commenced in 2005, and the documents were created between 2008 and 2009, while the litigation was ongoing.  Exhibits A and B analyze ██████████████████████████████████████ ███████████████████████████████████.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d at 220.  Even if these documents were created to assess business implications of the litigation or settlement, they are protected under *Adlman II.*

Although the connection of some of the remaining documents to this litigation is not apparent from the face of the documents, the Court determines the documents' entitlement to work product protection "in light of the nature of the document and the factual situation in the particular case."  *Adlman II*, 134 F.3d at 1202.  Here, Bank of America's outside counsel, hired specifically for this litigation, has submitted a declaration stating that these documents were prepared for the litigation at the request of counsel in the context of ██████████████ ██████████████████████████████████████████ ██████████████████████.  (*See* Ladner Decl.)  Bank of America also states that the recalled portions of the Fellman Documents were not used for business purposes independent of the litigation, and they have not been located in any other Bank of America business-person's

files.  (Hr'g Tr. 31:19–32:7.)  In addition, Mr. Fellman testified at the deposition that the documents were prepared at the instruction of counsel hired for the purposes of this litigation.  (Hr'g Tr. 32:8-33:14.)  Thus, Judge Orenstein correctly found that Bank of America met its burden of demonstrating that the documents were prepared because of the litigation.

### ii.   The level of work product protection

The Court next determines whether Judge Orenstein correctly determined that the Fellman Documents should be afforded heightened work product protection.

### 1.   The parties' arguments

7-Eleven contends that not every item that reveals some "inkling of a lawyer's mental impression" is afforded heightened protection, rather, only documents that include the "attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case and the inferences he draws from interviews or witnesses," are entitled to such heightened protection.  (Pls. Appeal 14 (citing *United States v. Weisman,* No. 94-CR-760, 1995 WL 244522 (S.D.N.Y. Apr. 26, 1995).))  7-Eleven argues that none of the Fellman Documents qualify as opinion work product because opinion work product is reserved for the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  (Pls. Appeal 2.)

7-Eleven also argues that because the author of the document, Mr. Fellman, is a business executive/employee, his opinions cannot be afforded heightened protection.  Thus, it argues, Judge Orenstein's ruling was contrary to law because he recognized that the documents in question were Mr. Fellman's opinion and nonetheless afforded them heightened protection.  (*Id.* (citing Hr'g Tr. 24).)

7-Eleven further argues that examining the documents shows that they do not reflect any

assessment or impressions of counsel with regard to this case.  Specifically, it argues that Exhibits A, B, and N include ███████████████████████████████ ██████████████████████████████.  (Pls. Appeal 15.)  Similarly, 7-Eleven argues that exhibits F, G, H, I, J, K, L and P are about █████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████ (*Id.* at 16.)

Bank of America argues that all of the documents are entitled to heightened protection for two reasons: (1) the documents were created as a result of "back and forth" between counsel and Mr. Fellman and therefore necessarily reflect attorney opinions, and, alternatively, (2) the documents reflect mental impressions of Banks of America's "other representative[s]" — Mr. Fellman and other Bank of America's line of business employees.  (Def. Opp'n on Appeal 12–14.)

In support of its first argument, Bank of America states that ████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ the meetings included "give and take and back and forth" over "what's the question the lawyers should pose, " and "what sort of answer is necessary to feed into the litigation process, and ultimately resulting in the attorneys proposing counterfactuals regarding litigation outcomes for the business, and advising the business on how to most hopefully phrase its answers."  (Def. Opp'n on Appeal 12 (quoting Hr'g Tr. 34:5–18).)  Bank of America quotes the language from Exhibit F ██████████████████████████████ ████████████████████) and Exhibit M ████████████████████████████).  (Def. Opp'n on Appeal 13.)  Bank of America does not make any other document-specific arguments but states that all of the documents were created as a result of "back and forth" with counsel.  (*Id.*

at 12.)  Bank of America also does not specify any portions of the documents that are likely to reflect attorneys' opinions rather than Mr. Fellman's opinions.

In support of its second, alternative, argument — that Mr. Fellman's opinions qualify as opinions of Bank of America's "other representative" — Bank of America relies on cases that afforded heightened protection to opinions of "lawyers and non-lawyers alike."  (Def. Opp'n on Appeal 19.)

### 2.   Judge Orenstein's decision

Judge Orenstein made a factual determination that the documents are the opinions of the business person,[9] Mr. Fellman, and a legal determination that, as opinions, the documents were entitled to heightened protection.  (*See* Hr'g Tr. 24:17–18; 27:17-26; 36–37.)  Pursuant to Rule 72, the Court reviews the factual finding for clear error and the legal finding to determine if it is contrary to law.

### A.   Factual finding

Judge Orenstein did not err in finding that the documents reflect Mr. Fellman's opinion. There is no dispute that the Fellman Documents were authored by Mr. Fellman, a business executive employed by Bank of America.  At his deposition, ███████████████████ ████████████████████████████████████████████████ ███████████████████████████████████.  (Fellman Dep. Tr. 181:14–15).  Bank of America asserts that there was "back and forth" and "give and take" but points to no specific portions of the documents that are likely to reveal mental impressions or thoughts of in-house or

---

[9]  Bank of America argues that Judge Orenstein did not find that the documents are Mr. Fellman's opinion, (Def. Opp'n on Appeal 15), but the record demonstrates otherwise.  (*See, e.g.,* Hr'g Tr. 24, 27 (Judge Orenstein referring to the content of the documents as Mr. Fellman's "opinions" about the "facts.").)  The Court therefore reviews this finding of fact for clear error, as this finding was a necessary step for Judge Orenstein's legal conclusion.

outside counsel.

Based on the record before the Court, there is no evidence that Judge Orenstein committed error in finding that the documents are Mr. Fellman's opinion.  *See In re Gordon*, 780 F.3d at 158 (noting that a finding is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed" (internal quotations omitted) (quoting *Murphy*, 703 F.3d at 188)); *Ebo*, 2015 WL 4078550, at *4.

### B.  Legal finding

Judge Orenstein determined that because the documents are "opinion work product," they are subject to heightened protection.  (Hr'g Tr. 36–37 ("I don't think you meet the burden for breaching the privilege as to opinion work product.").)  This ruling is not contrary to law.

Throughout the hearing, Judge Orenstein focused on whether the documents contained opinions or facts in determining whether the documents were subject to heightened work product protection.  For example:

> THE COURT: You mentioned something that I very much wanted to ask you about.  In terms of the work product argument, there's the opinion work product and fact work product and you're for understandable reasons trying to put this in the fact work product category but as you just mentioned, a lot of this is about counterfactuals and it's analysis of what will happen in certain scenarios.  How can that be a fact?
>
> MR. SHINDER: Well, it's fact opinion.
>
> THE COURT: But --
>
> MR. SHINDER: It could get in as lay opinion.
>
> THE COURT: But it's not – look, you want to use this stuff largely, I hope I'm not running afoul of my own admonition, but as I understand, a lot of the utility of what you're seeking to use here is to undermine their experts who are giving opinions and basically you want to say, well, look, here's somebody else who has an opinion that doesn't agree with you but it is all opinion and I don't see how you shoehorn that into the fact work product and where –

19

and I don't want to paint with too broad a brush, I'm sure there are within these documents citations to purely factual matters but as to that, I'm hard pressed to see how you don't have alternate sources for the facts. What you can't get readily through other forms of discovery is Feldman's [*sic*] opinion about the facts. Is that fair?

MR. SHINDER: I think it's largely fair.

THE COURT: Okay.

MR. SHINDER: Well, respectfully, Your Honor, I understand that there's opinion, there's a patina of opinion here but this is done by business people based upon underlying facts.

THE COURT: It's based on underlying facts but, you know, maybe we're just going to end up disagreeing which is fine but asking a businessman or an economist or the guy selling hotdogs at the Midtown Tunnel entrance what's going to happen if X happens to the way payment cards are processed, it's an opinion. It may be a good prediction or a poor prediction but it's a prediction and it's not a fact. That's how I see it.

(Hr'g Tr. 23–24, 27.) Judge Orenstein stated that these were "counterfactuals" and therefore opinions, and he further found that they were Mr. Fellman's opinion. (*Id.*) Judge Orenstein does not appear to have considered whether the fact that Mr. Fellman's opinion was that of a businessperson and an employee of Bank of America, rather than an attorney, was relevant in determining the level of work product protection to be afforded to the documents. (*See id.*) Because Rules 26 (b)(3)(A) and 26 (b)(3)(B) afford different levels of protection and each enumerate different authors to whom work product is attributed, the Court will review whether Judge Orenstein's determination that the opinion of Mr. Fellman was entitled to heightened work product protection is contrary to law.

Bank of America contends that Judge Orenstein's ruling was correct because heightened protection is afforded to "attorney and other representative" and Mr. Fellman qualifies as "other representative." (Def. Opp'n on Appeal 14–15.) In support of this argument, Bank of America relies on cases from other Circuit Courts where heightened work product protection was afforded

20

to non-attorneys to argue that Mr. Fellman's opinions are entitled to heightened work product

protection.  (Def. Opp'n on Appeal 19 (first citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658

(3d Cir. 2003), where heightened work product protection was extended to a non-testifying jury

consultant who was retained to assist a party's trial counsel; and then citing *Duplan Corp. v.

Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976), which involved the work product of

a party's *conseil en brevets*, a French patent counselor).)

      7-Eleven argues that as an employee of Bank of America, Mr. Fellman is not a

"representative" within the meaning of Rule 26 (b)(3), and instead is a party, whose work

product is entitled  to ordinary protection under Rule 26 (b)(3)(A).  (Pls. Reply 4–5 "[T]he

categories of individuals whose opinions are eligible for heightened 'opinion' work product

protection [under Rule 26 (b)(3)(B)] are narrower than the persons whose documents are eligible

for . . . ordinary work product protection [under Rule 26 (b)(3)(A)].  Critically, only ordinary

work product protection applies to documents prepared 'by' a party.").)  7-Eleven relies on

*PG&E v. United States*, 69 Fed. Cl. 784, 816 (2006), where the Court of Federal Claims found

that employees could not be considered "representatives" and refused to extend work product

protection to employee responses to deposition questions regarding the preparation of the

plaintiff's damages.[10]  (Pls. Reply 4.)  7-Eleven also distinguishes a jury consultant in *In re*

---

    [10]  In *PG&E v. United States*, 69 Fed. Cl. 784 (2006), an electric utility company brought
suit against the United States seeking damages for breach of contract.  The defendant moved to
compel production of documents and deposition testimony from the employees involved in the
calculation of damages.  The plaintiff's counsel instructed employees not to respond to questions
about the damages calculation claiming they were privileged under the work product doctrine.
The Court of Federal Claims ruled that responses to questions in a deposition were not protected
under Rule 26 (b)(3) because they were not in a tangible form.  The court also ruled that to the
extent the privilege extends to work product in intangible form under *Hickman*, it is limited to
mental impressions of an attorney or other representative, and employee responses in a
deposition are not covered by this limited protection.  *Id.* at 816.

*Cendant Corp. Securities Litigation*, 343 F.3d 658 (3d Cir. 2003), and a patent counselor in *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir. 1976), as representatives of a party as contemplated by Rule 26 (b)(3), unlike Mr. Fellman who is a non-attorney employee, and therefore is a party and not a representative.  (*Id.* at 5 ("Unlike a party's business executives, "consultant" is clearly a "representative" as enumerated in Rule 26 (b)(3)(A).").)

The Court finds it instructive that Rule 26 (b)(3) subsections (A) and (B), grant different levels of protection, and list different sets of authors for the documents that are afforded protection — subsection (A), ordinary protection, includes documents "by or for another *party* or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," and subsection (B), heightened protection, only includes documents by "attorney or other representative."  Fed. R. Civ. P. 26 (b)(3) (emphasis added).

Generally, if a statute enumerates some actors, but omits others, it may be presumed that the omitted actors fall outside the scope of the statute.  *See, e.g., Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013) (interpreting Rule 26 (b)(3)(A)); *Groover, Christie & Merritt v. LoBianco*, 336 F.2d 969 (D.C. Cir. 1964) (interpreting the pre-1970 work product protection rules ).  In *Republic of Ecuador*, when interpreting the applicability of Rule 26 (b)(3)(A) to documents prepared by experts, the Eleventh Circuit was guided by the fact that "expert" was absent from the enumerated list of "representatives," and found that the "silence speaks volumes."  *Republic of Ecuador*, 741 F.3d at 1190  ("While Rule 26 (b)(3)(A) mentions a "party or its representative," including an "attorney, consultant, surety, indemnitor, insurer, or agent," the word "expert" is noticeably absent.  This silence speaks volumes.").  Similarly, in *Groover, Christie & Merritt v. LoBianco*, when interpreting the pre-1970 version of the rules protecting work product, which did not include "party" as one of the authors entitled to work product

22

protection, the D.C. Circuit Court of Appeals refused to extend work product protection to the party's memorandum summarizing interviews conducted following a lawsuit against him.  *See Groover, Christie & Merritt*, 336 F.2d at 972; *see also* Charles A. Wright *et al.* Federal Practice and Procedure § 2024 (3d ed.) ("The 1970 amendment also extended the work product protection to documents and things prepared for litigation or trial by or for the adverse party itself or its agent.  Prior to the adoption of Rule 26(b)(3), some cases had held that documents of this kind were not within the immunity") (citing *Groover, Christie & Merritt*, 336 F.2d at 972).

Although 7-Eleven is correct that none of the cases cited by Bank of America afforded heightened work product protection to non-attorney employees, 7-Eleven has not cited any Second Circuit or Supreme Court authority, and the Court has found none, ruling that company employees cannot be considered a "representative" within the meaning of Rule 26 (b)(3) or that an employee can only be considered a "party" within the meaning of Rule 26 (b)(3)(A). Therefore, although the Court may have rendered a different result, had it been conducting a *de novo* review of whether an employee is a *representative* within the meaning of Rule 26 (b)(3), in the absence of controlling Second Circuit authority stating otherwise, a magistrate judge's finding that an employee's opinion is afforded a heightened work product protection cannot be set aside as contrary to law.  *In re Gordon*, 780 F.3d at 158; *Pall Corp.*, 655 F. Supp. 2d at 172 ("Under the clearly erroneous [and contrary to law] standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently . . . and a [m]agistrate [j]udge's order simply cannot be contrary to law when the law itself is unsettled.").[11]

---

[11]  Having found that the Fellman Documents are protected under the work product doctrine, the Court does not review the applicability of the attorney-client privilege to the documents.

### iii.   Mr. Fellman's Deposition

In addition to challenging Bank of America's claim of work product protection over the documents, 7-Eleven challenges Mr. Fellman's response to the question concerning the subject matter of the Fellman Documents at his deposition.  When Mr. Fellman was asked, ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ and therefore protected by work product doctrine.  (Pls. Mot. 2; Pls. Appeal 7).  Bank of America argues that "the Fellman Documents served a solely legal purpose" because Mr. Fellman ████████████████████████████████ ████████ (Def. Opp'n on Appeal at 5), but otherwise does not explicitly address the grounds for protection of Mr. Fellman's oral responses.  Judge Orenstein did not address whether the assertion of work product protection in response to this question was proper.  The Court decides the issue.

Rule 26 of the Federal Rules of Civil Procedure protects only "documents and tangible things" that are prepared for litigation.  Fed. R. Civ. P. 26 (b)(3); *United States v. Ghavami*, 882 F. Supp. 2d 532, 539–40 (S.D.N.Y. 2012) (Rule 26 (b)(3) provides immunity only for "documents and tangible things" otherwise qualifying as work product.).  Work product that is not in a tangible form is protected under *Hickman v. Taylor*, 329 U.S. 495 (1947).  *See Ghavami*, 882 F. Supp. 2d at 539–40 ("[T]he work product doctrine, as originally articulated in *Hickman v. Taylor*, is broader than the Rule."); *Abdell v.New York City*, No. 05-CV-8453, 2006 WL 2664313, at *3 (S.D.N.Y. Sept. 14, 2006) (stating that the work product doctrine is only codified in part under Rule 26) (citing *In re Grand Jury Subpoenas* Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 383 (2d Cir. 2003)); Charles A. Wright *et al.* Federal Practice and Procedure

§ 2024 (3d ed.) (citing *Hickman*, 329 U.S. at 495); David Greenwald *et al.*, Testimonial

Privileges, § 2:12.Documents, Tangible Things, and Intangible Work Product (3d ed.) ("It is

*Hickman* — and not Rule 26(b)(3), applicable to "documents and tangible things"— that protects

a party from having to disclose work product in response to deposition questions.")

The protection afforded under *Hickman*, while including intangible matters such as

mental impressions, is limited to mental impressions of an attorney.  *Hickman*, 329 U.S. at 508–

09.  In *Hickman,* the Supreme Court ruled that *attorney* recollections were not subject to

discovery due to work product protection, emphasizing lawyers' need for "privacy, free from

unnecessary intrusion by opposing parties and their counsel" and noted that an opposite ruling

would have a "demoralizing" effect on the "legal profession." [12]  *Id.* at 511; *see also United

States v Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010) ("Rule 26 (b)(3) only partially codifies

the work-product doctrine announced in *Hickman*. . . . Moreover, in *Hickman*, the Court

explained that the attorney's 'mental impressions' were protected from discovery, so that he

could not be forced to 'repeat or write out' that information in discovery." (internal citations

omitted) (quoting *Hickman*, 329 U.S. at 512)); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141

(D. Mass. 2004) ("Rule 26(b)(3) more clearly protects non-attorney work product than *Hickman*

does." (internal citations omitted)); *Holton v. S & W Marine, Inc.*, No. 00-CV-1427, 2000 WL

1693667, at *2 (E.D. La. Nov. 9, 2000) ("The [c]ourt has reviewed . . . statement in-camera and

is confident that the statement is free of the thoughts and impressions of counsel that *Hickman* is

---

[12]  In *Hickman v. Taylor*, 329 U.S. 495 (1947), the defendants were two tug owners who
hired an attorney to interview several of the surviving crew members of a tug boat accident prior
to litigation.  *Id.* at 499.  The representative of one of the victims of the accident sought the
content of the interviews conducted by the tug owners' attorney.  *Id.*  The district court ordered
the attorney "to produce all written statements of witnesses and to state in substance any facts
learned through oral statements of witnesses to him."  *Id.* at 509.  The Third Circuit overturned
the lower court's decision, and the Supreme Court affirmed the Third Circuit's decision.

intended to protect . . . this is not to say that a statement given to a non-attorney cannot be protected under Rule 26(b)(3)"); *but see PG&E*, 69 Fed. Cl. 784, 816 (2006) (ruling that the work product protection under *Hickman* extends to attorneys *and representatives*, but then finding that company non-attorney employees are not *representatives*).

Here, Mr. Fellman is not an attorney, his impressions are not protected by *Hickman*, and his oral responses to the questions at deposition are not protected by the work product doctrine. *See, e.g., Holton*, 2000 WL 1693667, at *2 (denying to extend work product protection under *Hickman* upon finding the documents "free of the thoughts and impressions of counsel"); *Bross v. Chevron U.S.A. Inc.*, No. 06-CV-1523, 2009 WL 854446, at *6 (W.D. La. Mar. 25, 2009) (declining to extend the "work product doctrine to intangible information held by non-attorneys").[13]  The Court makes no determination as to whether 7-Eleven is entitled to depose Mr. Fellman about his personal opinion as to ███████████████████████ ███████████████████████████████████ (Pls. Appeal at 18).  The Court's ruling is limited to its finding that Fellman's oral responses to questions that do not ask for his impressions formed in consultation with counsel are not protected by the work product doctrine.[14]

---

[13]  Although in *Bross v. Chevron U.S.A. Inc.*, No. 06-CV-1523, 2009 WL 854446, (W.D. La. Mar. 25, 2009), in declining to extend the work product protection to a deponent–employee's responses, the court differentiated between documents as opinion work product and witness' verbal responses at deposition as "underlying facts," the court also noted the "intangib[ility]" of deposition responses and the fact that they were by "non-attorneys."  *Id.* at *5–6 (emphasis added).  Moreover, in setting guidelines for the deposition, the court only prohibited the inquiries that would reveal attorney-client privilege or "counsel's mental impressions concerning [the] case."  *Id.* at *7.

[14]  Mr. Fellman was chosen to be a part of the Workstreams project as a business executive with knowledge of the subject matter, ██████████████████████. His impressions on the issue cannot be shielded entirely by the work product doctrine, simply

### III.  Conclusion

For the foregoing reasons, the Court affirms Judge Orenstein's Order that the Fellman

Documents are afforded heightened work product protection.  The Court also finds that Mr.

Fellman's personal opinion in intangible form is not entitled to work product protection.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge


Dated: February 26, 2018
        Brooklyn, New York

---

because some of those impressions were ultimately used in preparation of the Fellman
Documents in anticipation of litigation.