# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

April 2, 2018

Robert P. LoBue
(212) 336-2596
Direct Fax: (212) 336-2395
rplobue@pbwt.com

By ECF

The Honorable James Orenstein
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 05-MD-1720 (E.D.N.Y.) (MKB)(JO)

Dear Judge Orenstein:

      We are counsel to Wells Fargo, a defendant in the *Interchange* class actions and a non-party in the *Target* action against Visa and MasterCard. Having exhausted the meet-and-confer process, Wells Fargo respectfully moves to quash the Target Plaintiffs' Rule 30(b)(6) deposition subpoena, which is annexed hereto as Exhibit A (the "Subpoena"). As a preliminary matter, we ask the court to stay the deposition date of April 16 set forth in the subpoena pending your decision so that, in the event this motion is denied, Wells Fargo will have sufficient time to identify and prepare its witness or witnesses on the various topics.

      The subpoena seeks detailed corporate testimony on an array of questions related to the investigation of Wells Fargo's sales practices that was commissioned by the outside directors of Wells Fargo. The subpoena should be quashed in its entirety for three reasons: (1) it seeks information that is irrelevant to the alleged antitrust conspiracy that is the crux of all the *Interchange* litigations in MDL 1720, including Target's claims against the Networks; (2) it would require collection of information so detailed as to be virtually impossible to convey in a Rule 30(b)(6) deposition and thus an inappropriate burden to impose on non-party Wells Fargo; and (3) it comes far too late in the agreed discovery protocol.

      Background: On June 6, 2017, the parties exchanged what were supposed to be final deposition requests and the DAPs requested, *inter alia*, the depositions of three former senior executives at Wells Fargo: John Stumpf, Carrie Tolstedt, and Debra Rossi. (Exh. B.) Although each of the requested witnesses was a former senior executive and likely protected by the "apex" doctrine, Wells Fargo nonetheless met and conferred with Plaintiffs and, after extended on-and-off negotiations, reached a resolution that we thought was agreeable to all plaintiff groups in MDL 1720. (Exh. C.) In that agreement, Wells Fargo agreed not to object to the depositions of two of three requested witnesses, including that of John Stumpf, its former chief executive who has already been deposed once in the case, so long as his deposition was limited in time and did not inquire into sales-practice related issues *other than* any communications between Wells Fargo

10288241

The Honorable James Orenstein
April 2, 2018
Page 2

and the Networks concerning Wells Fargo's sales practices. Only after the parties arrived at that compromise, as a condition of agreeing to it, Target insisted on reserving the right to seek a Rule 30(b)(6) deposition to address a set of questions about the Independent Directors of the Board of Wells Fargo & Company Sales Practices Investigation Report, dated April 10, 2017 ("Report"). (Exh. D.) In the course of negotiations, Target supplied a list of topics on which it sought testimony from Wells Fargo as to sales practice-related issues. (Exh. E.) Target issued the Subpoena a few days later and, after a further meet-and-confer failed to resolve the issue, Wells Fargo now moves to quash.

Argument: *First*, Rule 45 directs the court to quash any subpoena that subjects a person to undue burden. FED. R. CIV. P. 45. To assess undue burden, courts look to, *inter alia*, the relevance of the discovery sought and, if irrelevant, quash the challenged subpoena. *See, e.g.*, *Giugliano v. FS2 Capital Partners, LLC*, No. 14-cv-7240, 2016 U.S. Dist. LEXIS 45925, at *15-16 (E.D.N.Y. Mar. 31, 2016) (quashing all topics in the subpoena judged irrelevant); *Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 412 (D. Conn. 2007) ("Whether a subpoena imposes an 'undue burden' depends on [*inter alia*] relevance . . . .").

The allegations concerning Wells Fargo's sales practices generally assert the unauthorized opening of accounts for services or products offered by Wells Fargo. This topic has been heavily covered by the press, has resulted in several days of public testimony before Congress, and has been the subject of several lawsuits and government investigations. On its face, this subject has nothing to do with the issues in MDL 1720: the setting of default interchange rates, a variety of Network point-of-sale rules, the Network IPOs, certain EMV requirements adopted by the Networks, and the like.

The sole argument Target raised as to relevance was that it wished to demonstrate through the testimony of Wells Fargo that Visa and MasterCard do not adequately protect their Network brands when it comes to policing the issuing banks' behavior.[1] That contention is flawed at every level: there is no reason to believe that an issuer's sales practices reflect on the Network brands; there is no showing that the Networks had any right to discipline Wells Fargo for allegedly opening unauthorized accounts; there is no reason to believe that the alleged issuance of unauthorized cards in any way relates to interchange revenues, which accrue only when a card is used, not when it is issued; and there is no reason to believe that intrusive questioning regarding the investigative process employed by the outside counsel retained by the independent directors of Wells Fargo would shed any light on the Visa or MasterCard brand strategies. To the contrary, if Target's focus is on those strategies, or on why the Networks did or did not punish Wells Fargo for alleged sales practice abuses, their questions should be directed to the Networks. *See* FED. R. CIV. P. 26(b)(2)(C) ("[T]he court must limit the . . . extent of discovery . . . if it determines that the discovery . . . can be obtained from some other source that is more convenient . . . ."). Indeed, Target has already questioned Visa witnesses regarding whether Visa took any punitive action against Wells Fargo because of the sales practices allegations and Visa's ability to police the banks for such practices.

---

[1] Target at one point contended that it needed 30(b)(6) testimony to authenticate the Report, yet the Report was filed with the SEC on April 11, 2017 and thus is self-authenticating under Federal Rule of Evidence 902(4). In the parties' agreement, Wells Fargo also undertook to authenticate the publicly-filed report. (Exh. C.)

10288241

The Honorable James Orenstein
April 2, 2018
Page 3

*Second*, even if Wells Fargo's sales practices *were* somehow relevant, the specifications of the Subpoena are by turns both so expansive and so detailed as to be overbroad and burdensome and thus should also be quashed under the other factors of undue burden. *E.g.*, *Jackson*, 246 F.R.D. at 412 (noting that "undue burden" is also assessed by looking at the party's need for the information, the breadth of information requested, the time period covered by the requests, the particularity with which the topics are described, and the burden imposed). Here, the burden imposed would be substantial: the witness would have to recount the total number of accounts allegedly improperly opened (Topic 1); whatever Wells Fargo knows about every governmental investigation of this subject (Topic 2); and the terms of any consent decree (Topic 3). The witness would have to review all testimony given by Wells Fargo's past and present employees to any governmental body and identify any inaccuracies (Topic 4); would have to interview every independent director and every member of Wells Fargo's "management" to learn whether any of them disagreed with anything in the Report (Topics 5(f)-(g)); and would have to be prepared to explain how and why Shearman & Sterling was selected to conduct the investigation and all of its investigative steps and findings (Topic 5 preamble, (a) and (d)). The even more granular list of topics that Target provided during the meet-and-confer process (Exh. E) further reveals the level of detail it is seeking: for example, the identity of the specific Shearman & Sterling attorneys who conducted the investigation, how they determined which documents to review, "how" they reviewed those documents, and the work done by a consulting firm. The intrusiveness of this inquiry at a time when other governmental and private litigations regarding Wells Fargo sales practices are ongoing underscores the inappropriateness of Target's expedition here.

*Third*, the Subpoena comes nine months too late. The parties agreed they would make their "best efforts . . . to identify all remaining depositions" and exchange lists of all remaining depositions by June 1, 2017 so that all sides could promptly resolve any disputes early on and avoid a flurry of motions just prior to the close of discovery. (Dkt. 6874, at 2-3.) On June 1, 2017, when supposedly "final" deposition requests were issued, Target had all the information it needed to serve the Subpoena: the Report had been issued, Wells Fargo's sales practices issues had been covered extensively by the press for the past two years, and governmental hearings and enforcement actions were public record. The delay is unjustified.

In sum, the effect of the Subpoena is to needlessly annoy, embarrass, harass, and burden Wells Fargo, a non-party to Target's case. For these reasons, the Subpoena is clearly improper and should be quashed. *See* FED. R. CIV. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

    Respectfully submitted,

    */s/ Robert P. LoBue*

    Robert P. LoBue

    *Counsel for the Wells Fargo Defendants*

cc:    All Counsel of Record by ECF

10288241