

**Robert G. Eisler**
reisler@gelaw.com

**Michael J. Freed**
mfreed@fklmlaw.com

**Steve D. Shadowen**
steve@hilliardshadowenlaw.com

**Linda Nussbaum**
LNussbaum@nussbaumpc.com

June 4, 2018

<u>VIA ECF</u>

The Honorable Magistrate Judge James Orenstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
      <u>05-md-1720 (MKB)(JO): Motion to Compel Non-Party Production</u>

Dear Magistrate Judge Orenstein:

      We represent Equitable Relief Class Plaintiffs ("Plaintiffs") in the above-referenced action and request that this Court compel non-party American Express Company ("American Express") to produce documents in response to a subpoena pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i).

      **I.**      <u>**Introduction**</u>

      Plaintiffs served a document subpoena on American Express on December 28, 2017 ("Subpoena"). *See* Ex. A (Notice of Subpoena and Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection of Premises In A Civil Action). The Subpoena had 10 requests seeking documents that go to the heart of Plaintiffs' claim: How various network anti-steering and merchant restraints in the payment card industry affect merchants.

      Among the 10 requests, Plaintiffs sought a narrow set of documents, including production of all expert reports and supporting exhibits served by American Express in two antitrust payment card matters, *United States of America, et al. v. American Express Co., et al.*, No. 10-cv-04496 (NGG)(RER) (E.D.N.Y.) ("Government Action") and *American Express Anti-Steering Rules Antitrust Litigation (NO II)*, No. 11-md-02221 (NGG)(RER) (E.D.N.Y.) ("MDL 2221"). *See* Ex. A. The relevance of these documents is clear: the actions of American Express, specifically in regards to addressing allegations it unreasonably restrained trade through anti-steering provisions in its merchant agreements, is relevant to the analysis and potential modification of the Visa and MasterCard network rules in the instant case.

      American Express served Responses and Objections to the Subpoena on January 11, 2018. *See* Ex. B (Responses and Objections of Non-Party American Express Co. to the Equitable Relief Class Plaintiffs' Subpoena). It generally offered to meet and confer on all 10 Subpoena requests. *Id.* In subsequent correspondence, American Express advised it will not produce its expert reports, arguing, among other grounds, that such evidence would be inadmissible hearsay. *See* Ex. C (Feb. 19, 2018 Ltr. from Plaintiffs) and D (April 6, 2018 Ltr. from American Express). In addition to

email correspondence and letters, Plaintiffs have met and conferred in good faith with American Express by telephone, including on May 31 and June 1, pursuant to Local Civil Rule 37.3(a).

## II.     Legal Standard for Discovery

Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1). *See Ford Motor Credit Co. v. Meehan*, No. 05-cv-4807, 2008 WL 2746373, at *4 (E.D.N.Y. July 11, 2008). Federal Rule of Civil Procedure 26(b), as amended in December 2015, provides that parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26. "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *Barrett v. City of New York,* 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable").

In determining whether discovery is proportional, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Sibley v. Choice Hotels Int'l*, No. 14-cv-634, 2015 WL 9413101, at *3 (E.D.N.Y. Dec. 22, 2015).

## III.     Argument

There is minimal burden associated with American Express producing its expert reports and supporting exhibits from the Government Action and MDL 2221, as well as a strong case for the relevance of the requested documents. The Court should reject American Express's objections and order it to produce the responsive documents. American Express cannot demonstrate that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). For that reason alone, Plaintiffs' discovery request should be granted.

Plaintiffs seek the requested discovery from American Express because it is relevant to the core issues in this case and reasonably calculated to lead to evidence related to the payment card marketplace, various network rules, merchants steering at the point of sale, and pricing behavior of a major payment card provider during the period of the alleged conspiracy. *See In re Currency Conversion Fee Antitrust Litig.,* No. M 21–95, 2004 WL 848171, at *1 (S.D.N.Y. Apr. 21, 2004) (in alleged price-fixing conspiracy by and among Visa and Mastercard and their member banks, for non-party American Express "to argue that the production of documents concerning [its] foreign currency conversion pricing and practices is irrelevant to an antitrust action borders on the frivolous. This Court gives no credence to American Express' contention that foreign currency conversion information from the third player in a three-player market is irrelevant to an antitrust action focusing on foreign currency conversion fees.").

American Express's expert reports are especially important here for Plaintiffs seeking equitable relief. American Express ties its anticompetitive merchant restraints to those of Visa and MasterCard, and vice versa. Through its so-called Non-Discrimination rule, American Express prohibits merchants that accept its card from "discriminating" against the American Express card by, for example, surcharging that card if they do not also surcharge Visa and MasterCard credit cards or debit cards. *See United States v. American Express Co.*, 88 F. Supp.3d 143, 163 (E.D.N.Y.

2015). Visa prohibits merchants from surcharging its debit cards, and both Visa and MasterCard prohibit merchants from surcharging their credit cards unless the merchants also surcharge all higher-priced payment cards, which includes American Express cards. Long story short: the *collective effect* of the American Express and Visa/MasterCard restraints is that merchants that accept American Express are altogether prohibited from surcharging Visa and MasterCard or would find it uneconomic to try to do so.

American Express's restraints are not peripheral to this lawsuit. A Court considering whether and to what extent to grant equitable relief in this case–considering how to reform the network rules going forward–should have access to American Express's analysis of the nature, scope, and intended effect of its restraints. That analysis is contained in these expert reports.

More generally, as a major payment-card provider American Express undoubtedly has informative views on, for example, the differences between "three-party" platforms and "closed-loop" platforms. Again, these differences may affect the nature or extent of the equitable relief that the Court may grant in this case. And, again, those views are likely to have their most fulsome expression in American Express's expert reports.

The proportionality factors all weigh in favor of the expert reports being discoverable. First, courts in this circuit have recognized "American Express is a sophisticated company with vast experience in litigation of all types, and can certainly undertake [discovery] production with a minimum of disruption to its normal practices." *See In re Currency Conversion Fee Antitrust Litig.*, at *1. Second, the expert reports sought, excluding exhibits, number less than 10. Lastly, American Express's responses to allegations that it unreasonably restrained trade through anti-steering provisions is undeniably relevant, important to the relief being sought by merchants, and not outweighed by the minimal burden and expense.

Any concerns American Express may have regarding disclosure of the expert reports can be easily addressed through the protective order (Dkt. No. 1312-2). *See In re Currency Conversion Fee Antitrust Litig.*, at *1 ("American Express' concern that production of the subpoenaed documents would compromise its trade secrets and other confidential information is obviated by the presence of the confidentiality agreement and protective order in this action."); *see also U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11-cv-3543, 2013 WL 5882921, at *3 (S.D.N.Y. Oct. 25, 2013) *aff'd*, 593 F. App'x 32 (2d Cir. 2014) ("non-party objectors fail to articulate a 'defined, specific and serious injury' that warrants excluding their business information from limited review as contemplated by the protective orders, strictly for litigation purposes.").

### IV.    **Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and order American Express to comply with Subpoena Request No. 1(b) and produce the expert reports and supporting exhibits it served in the Government Action and MDL 2221.

                        Sincerely,

                        */s/ Robert G. Eisler*      */s/ Michael J. Freed*
                        */s/ Steve D. Shadowen*    */s/ Linda Nussbaum*

Cc: All Counsel of Record (via ECF)