UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to: ALL ACTIONS

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

A putative class of over twelve million merchants brought antitrust actions under the

Sherman Act, 15 U.S.C. §§ 1 and 2, and state antitrust laws, against Defendants Visa and

MasterCard networks, as well as various issuing and acquiring banks. *In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd*

*and vacated*, 827 F.3d 223 (2d Cir. 2016). Plaintiffs allege that Defendants harmed competition

and charged merchants supracompetitive prices by creating unlawful contracts and rules, and by

engaging in conspiracies. *Id*. at 213.

In addition to the class actions, groups of some of the largest merchants brought separate

actions against Defendants, which actions were consolidated together with the class actions into

a multi-district litigation in 2005. *Id.* at 223. After years of litigation, former District Judge John

Gleeson approved a settlement of the class action. *Id.* at 240. On June 30, 2016, the Second

Circuit vacated the class certification and settlement of the action, noting the inherent conflict of

interest in the appointment of a single set of counsel to represent the two classes certified for

settlement purposes under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 229 (2d Cir.

2016). Upon remand, the Court appointed separate counsel to represent two separate putative

classes — an injunctive class under Rule 23(b)(2) and a damages class under Rule 23 (b)(3). Plaintiffs subsequently moved to amend the Complaints.[1] (*See, e.g.*, Class Pls. Mot. for Leave to Amend Compl. 3, 5, Docket Entry No. 6880; September 2017 Order.) Defendants consented to the proposed amendments except for the addition of the alternative two-sided definition of the relevant market. (Defs. Opp'n to Pls. Mot. for Leave to Amend Compl. ("Defs. Opp'n") 1, 25, Docket Entry No. 6881-2; September 2017 Order 9.)

By order dated September 27, 2017, Magistrate Judge James Orenstein granted in part and denied in part Plaintiffs' motion to amend the Complaints. (September 2017 Order.) Judge Orenstein granted Plaintiffs' motion to amend the Complaints asserting an alternative, two-sided market definition. (*Id.* at 13–16; 18.) However, Judge Orenstein determined that the amendments do not relate back to the time of the original pleadings. (*Id.* at 16, 18–19.) Judge Orenstein further ruled that Direct Action Plaintiffs are not entitled to tolling based on *American*

---

[1] The Court refers to all plaintiff groups who moved to amend their respective Complaints, and subsequently appealed Magistrate Judge James Orenstein's decision, as "Plaintiffs." (Mem. and Order Granting in Part and Denying in Part Mots. to Amend Compl. dated September 27, 2017, 16 ("September 2017 Order"), Docket Entry No. 7076.) The Court collectively refers to the 7-Eleven, Target, and Home Depot Plaintiffs as "Direct Action Plaintiffs." The Court's reference to "Class Plaintiffs" is to the Rule 23(b)(3) class only. Similarly, the Court's reference to "Complaints" is to the operative Complaints of all appealing Plaintiffs, and "Class Complaints" refers to Rule 23(b)(3) putative class operative Complaints, prior to Plaintiffs' motions for leave to amend. "Amended Complaints" and "Amended Class Complaint" refers to the complaints inclusive of amendments currently sought.
   Direct Action Plaintiffs filed a joint brief appealing the September 2017 Order. (Direct Action Pls. Appeal of the September 2017 Order ("Direct Action Pls. Appeal"), Docket Entry No. 7103.) Class Plaintiffs filed a separate appeal. (Class Pls. Appeal of the September 2017 Order ("Class Appeal"), Docket Entry No. 7104.) The two remaining Plaintiffs in *Delta Air Lines, Inc., v. Visa, Inc.,* 13-cv-04766 (E.D.N.Y.) — Blarney Castle Oil Co. and Ricker Oil Company Inc. — filed their own appeal, reiterating arguments made by Class and Direct Action Plaintiffs. (Pls. Blarney Castle Oil Co. and Ricker Oil Company Inc.'s Appeal of the September 2017 Order ("Delta Pls. Appeal") Docket Entry No. 7101); Plaintiffs Sunoco Retail, LLC and Aloha Petroleum, Ltd., join the appeals of the Delta Plaintiffs and Direct Action Plaintiffs. (Pls. Sunoco Retail, LLC, and Aloha Petroleum, Ltd., Appeal of the September 2017 Order, and Joinder ("Sunoco Appeal"), Docket Entry No. 7106.)

*Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554 (1974) (*"American Pipe"*).  (*Id.* at 19.)

Currently before the Court are Plaintiffs' appeals of Judge Orenstein's ruling that the amendments do not relate back to the original Complaints and that Direct Action Plaintiffs are not entitled to *American Pipe* tolling.  For the reasons discussed below, the Court finds that the amendments relate back to the original Complaints, and that Direct Action Plaintiffs are entitled to *American Pipe* tolling.

**I.  Background**

The Court assumes the parties' familiarity with the facts and procedural history as set forth in Judge Orenstein's September 2017 Order.  (*See* September 2017 Order.)  The Court provides only a summary of the relevant facts.

**a.  Plaintiffs' motions to amend the Complaints**

Plaintiffs sought leave to amend the Complaints (1) to update them based on "industry developments that occurred" since the last amended complaints were filed for each respective group; and (2) to add "alternative relevant markets that consist of both merchants and cardholders," and explain how Defendants' conduct affected competition in those markets.  (*See, e.g.,* Class Pls. Mot. for Leave to Amend Compl. 3, 5; September 2017 Order.)

Defendants consented to the amendments based on developments in the industry, but opposed the alternative relevant markets amendments, "to the extent that they asserted new legal and factual allegations regarding market definitions, market power, and competition for or effects on cardholders." (Defs. Opp'n 1, 25; September 2017 Order 9.)  Defendants also argued that, to the extent the Court allowed Plaintiffs to amend the Complaints to add the two-sided market theory, the amendments should not relate back to the time of the original pleadings and the amendments by Direct Action Plaintiffs should not be subject to tolling pursuant to *American*

*Pipe.*  (*Id.*)

**b.  Judge Orenstein's September 2017 Order**

Judge Orenstein granted in part and denied in part Plaintiffs' motions to file amended complaints.  (September 2017 Order.)  Judge Orenstein (1) granted leave to amend the Complaints to add the alternative two-sided market theory to the extent that the claims were not time-barred, but found that the amendments could not relate back to the time of the filing of the original Complaints pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, and (2) determined that Direct Action Plaintiffs' amendments are not entitled to *American Pipe* tolling.  (September 2017 Order 22.)

**i.  Amendments to include two-sided market theory**

In his September 2017 Order, Judge Orenstein explained that, in their original Complaints, Class Plaintiffs defined the scope of the relevant market as a one-sided market based on then-existing case law and their understanding of two separate markets — the network services market and the general purpose payment cards market.  Judge Orenstein stated:

> In defining the scope of the relevant market, the Class Plaintiffs relied on controlling case law arising from earlier litigation concerning the same networks' practices . . . . (*See id.* [("First Class Compl.")] citing *In re Visa Check/MasterMoney Antitrust Litig.* ("*Visa Check*"), 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003); *United States v. Visa* ("*Visa*"), 163 F. Supp. 2d 322, 335 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003).  As the circuit court had explained in *Visa*, and as the Class Plaintiffs alleged here, there exist[ed] two related but distinct markets relevant to the instant dispute.  In the market for network services — the market in which the Class Plaintiffs alleged that the defendants had engaged in unlawful anticompetitive conduct — payment card networks are sellers that compete with one another to secure the business of the banks and merchants that purchase such services.  In the separate market for general purpose payment cards, the sellers are the banks that issue the cards and the buyers are the consumers who obtain the cards and use them for purchases.  *See Visa*, 344 F.3d at 238-39; First Class Compl.

(September 2017 Order 3.)

Plaintiffs, however, sought to amend the Complaints to assert an alternative, two-sided market theory following the Second Circuit's decision in *United States v. American Express Co.*, 838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. American Express Co.*, 625 U.S. ---, ---, 138 S. Ct. 2274, 2285 (2018) ("*AmEx*"). Judge Orenstein noted that the Second Circuit:

> has held that the relevant market for similar complaints by a nationwide class of merchants against another payment card network – American Express – is a single, two-sided market that encompasses the networks, the processing banks, the merchants who accept cards for payments, and the consumers who use those cards. *See United States v. American Express, Co. ("AmEx")*, 838 F.3d 179, 196-200 (2d Cir. 2016), *petition for cert. filed*, No. 16-1454 (U.S. June 6, 2017). That decision has been a significant factor in prompting the instant motions to amend.

(September 2017 Order 3.) Finding no "undue delay, bad faith, or futility of the newly asserted claims, predicated on the existence of a two-sided market," Judge Orenstein granted Plaintiffs' motion for leave to amend. (*Id.* at 16.)

### ii. Relation back of amendments based on two-sided market theory

Judge Orenstein ruled, however, that the proposed amendments do not relate back to the original date of the Complaints because the amendments "rely on a legal theory that is not only new, but fundamentally distinct from the legal violation that they previously asserted." (September 2017 Order 12, 17.) Judge Orenstein reasoned that the definition of the relevant market is a critical aspect of antitrust litigation, and a plaintiff "must allege a plausible relevant market in which competition will be impaired." (*Id.* at 17 (quoting *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011)).) Therefore, because the newly asserted "theory of liability accounts for benefits to cardholders that [Plaintiffs] had affirmatively rejected earlier in the litigation," Plaintiffs could not have possibly put Defendants on notice of such theory, as required for relation back under Rule 15. (*Id.* at 12, 17.) In finding lack of notice, Judge

Orenstein was not persuaded by Plaintiffs' argument that Defendants were on notice because Defendants had argued the two-sided market theory in refuting Plaintiffs' initial pleadings asserting a one-sided market theory.  (*Id.* at 17.)

### iii.   *American Pipe* tolling

Judge Orenstein also determined that Direct Action Plaintiffs' amendments were not entitled to *American Pipe* tolling because of lack of notice to Defendants.  He explained that "courts in this circuit considering the availability of such tolling employ a notice-based analysis similar to that used to determine the availability of relation back under Rule 15(c)."  (*Id.* at 19–21.)  Having denied relation back based on the lack of notice of the two-sided theory, Judge Orenstein thus denied *American Pipe* tolling for the "same reasons."  (*Id.*)

In addressing Direct Action Plaintiffs' reliance on the fact that the proposed amendments rely on the "same anticompetitive rules and conduct" as alleged in the Class Complaint, Judge Orenstein found that the argument "incorrectly narrows the scope of the notice required," because in order to prove an antitrust violation, "a plaintiff must identify not only the defendant's allegedly anticompetitive conduct, but also the relevant market and the resulting anticompetitive harm."  (*Id.* (citing *Grp. Health, Inc.*, 649 F.3d at 155).)  Judge Orenstein concluded that "[D]efendants were never on sufficient notice that they needed to preserve and develop evidence relating to the effect of their conduct on cardholders who were actors in a two-sided market." (*Id.*)

Judge Orenstein also rejected Direct Action Plaintiff Home Depot's argument that without tolling, absent plaintiffs will be forced to file separate actions if they disagree with any of class counsel's litigation decisions.  (*Id.* at 20.)  Judge Orenstein noted that "the goal of *American Pipe* tolling is to prevent a needless multiplicity of actions which might result if

putative class members were required to file separate actions to hedge against the possibility of the class action failing," but concluded that such a goal is not served in this case because prior to *AmEx*, no putative class member ever had an incentive to file "a separate claim predicated on allegations of competitive harm to a two-sided market." (*Id.* at 21.)

### c. Plaintiffs' appeal of Judge Orenstein's September 2017 Order

Four different Plaintiff groups appealed Judge Orenstein's decision: Class Plaintiffs, Direct Action Plaintiffs, Delta Plaintiffs, and Sunoco Plaintiffs. (*See* Class Pls. Appeal; Direct Action Pls. Appeal; Delta Pls. Appeal; Sunoco Appeal.) On November 17, 2017, Defendants filed a consolidated response to Plaintiffs' appeals. (Defs. Resp. to Pls. Appeal, Docket Entry No. 7126.) Direct Action Plaintiffs filed a reply in support of their appeal on December 6, 2017. (Direct Action Pls. Reply, Docket Entry No. 7132.)

### i. Class Plaintiffs' arguments

Class Plaintiffs contend that pursuant to Rule 15(c), the amendments should relate back to the original filing because the amendments arose out of the same conduct, transaction, or occurrence described in the original pleading. (Class Pls. Appeal 4.) Class Plaintiffs argue that the amendments do not result in any new claims for the purposes of the relation back analysis, and contend that Judge Orenstein "improperly conflates elements of an antitrust claim with a conduct, transaction, or occurrence under Rule 15."[2] Class Plaintiffs also argue that Defendants were on notice of the alternative market theory. (Class Pls. Appeal 4–11.)

First, Class Plaintiffs argue that Judge Orenstein's analysis implies that the alleged

---

[2] Rule 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2).

"conduct, transaction, or occurrence" under Rule 15(c) "is coextensive with the elements required to plead an antitrust cause of action, in particular the relevant-market element." (*Id.* at 5–6.) Class Plaintiffs disagree and argue that if "conduct, transaction, or occurrence relevant to Rule 15" were defined "by reference to the elements necessary to plead a cause of action . . . amending a complaint to plead a new . . . cause of action would necessarily implicate a different conduct, transaction, or occurrence and therefore be disallowed by Rule 15." (*Id.*) Such an outcome, Class Plaintiffs argue, would be inconsistent with the caselaw allowing new claims and their relation back. (*Id.*) Class Plaintiffs also argue that an assertion of an alternative, two-sided market theory is not a claim, and that both the prior operative Class Complaints and the Amended Class Complaint "allege simply that competition was injured 'in the Relevant Markets.'" (*Id.* at 10.)

Second, Class Plaintiffs argue that Defendants had notice of the two-sided market theory because Defendants themselves repeatedly argued that the applicable relevant market is two-sided. (*Id.* at 8.) Class Plaintiffs argue that the fact that Defendants themselves asserted such a theory is not necessarily an indication that they put themselves on notice, as noted by Judge Orenstein, but rather is an indication that the two-sided market theory arises out of the same fact situation as the one-sided market asserted in Plaintiffs' original Complaints. (*Id.*)

### ii. Direct Action Plaintiffs

Direct Action Plaintiffs' relation back arguments are similar to those of Class Plaintiffs. They argue that the proposed amendments challenge the same conduct as set forth in the prior Complaints and therefore satisfy Rule 15, and, in any event, they are not bound by the prior definition of the relevant market. Direct Action Plaintiffs further contend that the denial of relation back prevents adjudication of the case on the merits. Finally, Direct Action Plaintiffs

contend that Defendants had requisite notice both for the purposes of relation back and *American Pipe* tolling.  (*See* Direct Action Pls. Appeal.)

First, Direct Action Plaintiffs argue that the proposed amendments satisfy the requirement of Rule 15(c) because they challenge "identical conduct" alleged in the original Complaints, and "seek damages for the identical set of transactions in which merchants allegedly paid supracompetitive interchange fees as a result of the challenged conduct."  (*Id.* at 2.)

Second, Direct Action Plaintiffs argue that Defendants had notice of the two-sided market theory both for the purposes of relation back and *American Pipe* tolling because they "themselves raised the issue long before" Plaintiffs moved for leave to amend, and the two-sided market theory was repeatedly raised throughout the litigation, including in expert reports.  (*Id.* at 16.)  Direct Action Plaintiffs argue that pleadings are not the exclusive source of notice to Defendants and, furthermore, a plaintiff is not bound by the relevant market definition asserted in the original pleading and can change its definition throughout the course of the case.  (*Id.* at 17 (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001)).)

Lastly, Direct Action Plaintiffs argue that by not allowing the proposed amendments to relate back, Judge Orenstein is preventing the case from being decided on the merits, in contravention of the very purpose of Rule 15, and is allowing Defendants to enforce "artificial limits on the evidence that [Plaintiffs] can introduce to prove competitive harm for the earlier time period."  (*Id.* at 22.)

### iii.   Delta Plaintiffs and Sunoco Plaintiffs

Delta Plaintiffs reiterate the arguments made by Class Plaintiffs and Direct Action Plaintiffs.  (*See* Delta Pls. Appeal.)  Plaintiffs Sunoco Retail, LLC and Aloha Petroleum, Ltd., join in the appeals by Delta Plaintiffs and Direct Action Plaintiffs.  (*See* Sunoco Appeal.)

**d. Defendants' response to Plaintiffs' appeal**

Defendants contend that the Court should affirm the September 2017 Decision in its entirety because Judge Orenstein correctly found that the amendments should not relate back to the date of the original Complaints in view of the fact that Defendants lacked notice that "they would be forced to defend themselves against factual claims directed to the cardholder side of a two-sided market."  (Defs. Resp. to Pls. Appeal 2.)

Moreover, Defendants contend that Plaintiffs' amendments are based on new factual allegations, and therefore do not relate back.  (*Id.* at 17.)  Defendants argue that they did not have notice of the two-sided market theory because Plaintiffs not only asserted that the relevant market was one-sided, but opposed the two-sided market theory.  (*Id.* at 15.)  Defendants also argue that, to the extent that the two-sided market theory was mentioned in documents outside of Complaints, such as expert reports, these documents do not provide notice, as notice can be given only through pleadings.  (*Id.* at 16.)

**e. Applicable standard of review**

The parties disagree as to the applicable standard that the Court should apply in reviewing the September 2017 Decision.  Defendants argue that the Court should apply a "clear error" standard for factual determinations and "contrary to law" standard for legal conclusions because a ruling on a motion to amend a complaint is non-dispositive.  (Defs. Resp. to Pls. Appeal 14 (citing *Fielding v, Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007)).)  Defendants also argue that even if such ruling is dispositive, Plaintiffs consented to Judge Orenstein's authority by filing their motions to amend before him.  (*Id.* at 12.)

Plaintiffs argue that the Court should conduct a *de novo* review because, "[w]hile the grant of leave to amend is generally considered non-dispositive, a ruling that a claim is or is not

time-barred is dispositive and therefore subject to *de novo* review."  (Class Pls. Appeal 4; *see also* Direct Action Pls. Appeal 12 (citing *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006)).)

## II.  Discussion

### a.  Standard of review

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, a magistrate judge "may issue orders regarding nondispositive pretrial matters . . . [and] the district court reviews such orders under the clearly erroneous or contrary to law standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations and internal quotation marks omitted); *see also Fielding*, 510 F.3d at 178 (the district judge "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law" (quoting Fed. R. Civ. P. 72(a))).

An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal quotations marks omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, LLC, No. 15-CV-8459, 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017) (citation and internal quotation marks omitted); *Ebo v. New York Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (same).

A magistrate judge can report and recommend a ruling on a dispositive matter, upon referral by a district judge.  28 U.S.C. § 636(b)(1)(B); *Collins v. Foreman*, 729 F.2d 108, 116 (2d Cir. 1984); *see also Jean-Laurent v. Wilkerson,* 461 F. App'x 18, 25 (2d Cir. 2012) ("As to

nondispositive matters, the magistrate judge may rule, but as to dispositive matters, the

magistrate judge may do no more than recommend.").  When a party submits a timely objection

to a magistrate judge's report and recommendation, the district court reviews *de novo* the parts of

the report and recommendation to which the party objected.  *United States v. Romano*, 794 F.3d

317, 340 (2d Cir. 2015) ("If a party timely objects to any portion of a magistrate judge's report

and recommendation, the district court must make a *de novo* determination of those portions of

the report or specified proposed findings or recommendations to which objection is made."

(citation and internal quotation marks omitted)).  On *de novo* review, a district court reviewing a

magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *Rojas v.

Heath*, No. 11-CV-4322, 2012 WL 5878752, at *1 (S.D.N.Y. Nov. 16, 2012).  The district court

may adopt those portions of the recommended ruling to which the parties did not timely object,

provided no clear error is apparent from the face of the record.  *Williams v. Beemiller, Inc.*, 527

F.3d 259, 264 (2d Cir. 2008); *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015

WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).

  **b. The Court applies a *de novo* standard of review**

   Although the parties disagree as to whether a motion to amend a complaint is a

dispositive or non-dispositive ruling, they do not object to the September 2017 Decision granting

leave to amend the Complaints, (*see* Class Pls. Appeal; Direct Action Pls. Appeal; Defs. Resp. to

Pls. Appeal).  As a result, the Court need not resolve this dispute and declines to determine

whether a motion to amend a complaint is dispositive.  *See Tardif v. City of New York*, No. 13-

CV-4056, 2016 WL 2343861, at *2 (S.D.N.Y. May 3, 2016) (stating that the Second Circuit "has

not clearly stated whether a denial of leave to amend a pleading should be treated as dispositive

or non-dispositive for Rule 72 purposes" and citing cases treating the issue as non-dispositive and a case treating the issue as dispositive).

Instead, the Court focuses on the issues disputed by the parties to determine the appropriate standard of review. Plaintiffs appeal the ruling that the amendments do not relate back to the filing of the original Complaints pursuant to Rule 15(c). (Class Pls. Appeal; Direct Action Pls. Appeal.) Direct Action Plaintiffs appeal the additional determination that the amendments are not entitled to *American Pipe* tolling. (Direct Action Pls. Appeal 19.) The Court therefore determines the applicable standard of review to resolve the relation back and tolling disputes. As discussed below, Judge Orenstein's relation back and tolling decisions are dispositive and therefore these rulings require *de novo* review.

### i. Relation back and tolling decisions are dispositive

Section 636(b)(1)(A) of the Magistrates Act specifies a non-exhaustive list of the matters that a magistrate judge cannot hear and determine. It provides:

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A); *see Williams*, 527 F.3d at 264 (stating the list is not exhaustive). In addition, Federal Rule of Civil Procedure 72(b) states that a magistrate judge, in the absence of consent by the parties, must recommend a ruling for a "matter dispositive of a claim or defense." Fed. R. Civ. P. 72(b). While a magistrate judge can make a report and recommendation as to the enumerated and other dispositive matters, a magistrate judge cannot decide them. Fed. R. Civ. P. 72(b) and Advisory Committee Notes, 1983 Addition (noting that Rule 72(b) addresses district

court-ordered referrals of dispositive matters under § 636(b)(1)(B)); *Williams*, 527 F.3d at 264 (finding that without consent of the parties, a magistrate judge's ruling on a motion to remand to a state court is dispositive because it was the "functional equivalent" of an order of dismissal); *Jean-Laurent*, 461 F. at 25 ("As to nondispositive matters, the magistrate judge may rule, but as to dispositive matters, the magistrate judge may do no more than recommend.").

A ruling that a claim is time-barred is dispositive. *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 120 (E.D.N.Y. 2009) (citing *Unilever Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384, 386 (S.D.N.Y. 1977)). A decision that a claim does not relate back and is not subject to tolling bars the claim as untimely. *Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) ("The claims in the amended petition . . . do not relate back to the claims in the original petition and are time-barred."); *see also Johnson v. Nyack Hosp.*, 86 F.3d 8, 13 (2d Cir. 1996) (affirming district court's dismissal of claims as time bared upon finding that they were not subject to tolling); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1263 (S.D.N.Y. 1992) ("Since the claims against the [defendants] do not relate back, they are time-barred under the applicable statutes of limitations . . . . Accordingly, Counts I and II of the Amended Complaint are dismissed with prejudice.").

A ruling that terminates a claim is a dispositive ruling. *Williams*, 527 F.3d at 264 (stating that a decision that is equivalent of an order of dismissal is dispositive); *see also Kiobel v. Millson*, 592 F.3d 78, 86 (2d Cir. 2010) (holding that a ruling on a motion for sanctions is dispositive because it resolves what is "the functional equivalent of an independent claim" (citing *Williams*, 527 F.3d at 265)); *Nitchman v. Union Pac. R. Co.*, No. 05-CV-01219, 2006 WL 2781416, at *2 (D. Colo. Sept. 26, 2006) (treating as dispositive the rulings concerning joinder of parties because a denial "would end Plaintiff's claim against the [defendants] in this court" (citing *First Union Mortgage v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000))); *cf. Cumming v.*

*Indep. Health Ass'n, Inc.*, No. 13-CV-969, 2014 WL 3533460, at *1 (W.D.N.Y. July 16, 2014) (stating that a ruling compelling arbitration is nondispositive because the arbitrator's judgement of award is "subject to judicial confirmation").

### ii. Plaintiffs did not consent to Judge Orenstein deciding a dispositive motion

Defendants argue that the Court can only review the September 2017 Order for clear error because Plaintiffs consented to Judge Orenstein's authority by filing the original motion to amend the Complaints with him. (Defs. Resp. to Pls. Appeal 12.) Defendants cite to Judge Orenstein's Individual Practice Rules that only allow for nondispositive motions to be directly filed with him. (*Id.*)

The practice in this district requires parties consenting to a magistrate judge's authority to rule on a dispositive matter to sign a document acknowledging their consent, which document must then be so-ordered by a district judge. (*See* Rule 73.1. of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.) Consent may be implied where a party is aware of the need to consent in an unequivocally dispositive matter. *Roell v. Withrow*, 538 U.S 580, 590 (2003); *Astra USA, Inc. v. Bildman*, 375 F. App'x 129, 132 (2d Cir. 2010) (holding that court may imply consent for purposes of section 636(c)(1) "where . . . the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge" (citing *Roell*, 538 U.S. at 590)).

A motion to amend a complaint is not unequivocally dispositive. Unlike in *Roell*, where entering judgment after a jury verdict was an unequivocally dispositive matter, it is unclear whether a motion to amend a complaint is dispositive. *Tardif*, 2016 WL 2343861, at *2 (discussing that the Second Circuit has not ruled on whether a motion to amend is dispositive, but that the district courts differ in their treatment of motions to amend); *Charlot v. Ecolab, Inc.*,

97 F. Supp. 3d 40, 46 (E.D.N.Y. 2015) (same); *see also Louis v. Metro. Transit Auth.,* No. 12–CV–6333, 2014 WL 5311455, at \*1 (E.D.N.Y. Oct. 16, 2014) (noting that the Second Circuit has referred to a motion to amend as a non-dispositive matter, but has not explicitly decided the issue, and that district courts in this circuit have suggested that a magistrate judge's denial of a motion to amend should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive). Given the lack of clarity, the Court cannot conclude that Plaintiffs were aware of the need for consent in filing the motion before Judge Orenstein. The lack of clarity as to whether a magistrate judge, when considering a motion to amend, can decide the issue or must submit a recommended ruling to a district judge also weighs in favor of the Court conducting a *de novo* review. *See Williams*, 527 F.3d at 264 (stating that because of the possible constitutional implications of delegating Article III judges' duties to magistrate judges, . . . the Federal Magistrates Act is construed narrowly).

### iii. Contrary to law and *de novo* standards of review

In reviewing issues of *law*, as is the case here,[3] there is also no practical difference between a court's application of the "contrary to law" standard and the *de novo* standard under Rule 72(b). *See Wakefern Food Corp. v. Prospect Plaza Improvements, LLC*, No. 10-CV-827,

---

[3] In *Slayton*, after determining that whether claims relate back to an earlier complaint is a question of law and is not in the district court's discretion, the Second Circuit conducted *de novo* review of the district court's conclusion as to that issue. *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006). However, the Second Circuit's *de novo* review of the district court's ruling that the proposed amendments did not relate back is not controlling in this case because determination of the standard of review to be used by a court of appeals turns on whether or not a question under review is a question of law or fact, *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. ---,---, 134 S. Ct. 1744, 1748, (Apr. 29, 2014), while a district court's review of a magistrate judge's ruling depends on whether the ruling is dispositive, *Kiobel v. Millson*, 592 F.3d 78, 106 (2d Cir. 2010) (Jacobs, J., concurring) ("When a district court refers a matter to a magistrate judge under § 636(b), the extent of the magistrate judge's authority turns generally on whether the matter is dispositive.").

2010 WL 4514287, at *2 n.2 (D. Conn. Nov. 2, 2010) ("Regarding legal issues, the language 'contrary to law' appears to invite plenary review." (quoting 12 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3069, at 350 (2d ed. 1997))); *see also Powershare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) ("When . . . review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' [standard]").

The Court therefore reviews *de novo* Judge Orenstein's rulings that Plaintiffs' amendments do not relate back and that Direct Action Plaintiffs' amendments are not subject to tolling.

### c.    The Amended Complaints relate back to the earlier Complaints

Class Plaintiffs contend that in order to determine if the amendments relate back, the Court must review Defendants' alleged anticompetitive conduct as alleged in the earlier Complaints — "[C]ollusive agreements and network rules inflat[ing] prices to supracompetitive levels." (Class Pls. Mot. for Leave to Amend Compl. 6.) Direct Action Plaintiffs argue in their appeal that the amendments at issue challenge the same conduct as the original Complaints — the Visa and Mastercard rules that restrain horizontal competition among card issuers, resulting in supracompetitive interchange fees charged to merchants. (Direct Action Pls. Appeal 14.) Direct Action Plaintiffs further argue that "both the original and [A]mended [C]omplaints bring the same causes of action (federal and state antitrust claims), alleging that the same restraints on competition among card issuing banks caused the identical harm to merchants (supracompetitive interchange fees) on the same set of payment-card transactions." (*Id.*)

Defendants argue that the amendments make "a litany of new factual allegations regarding competition for cardholders and alleged cardholder harm," and they did not have

notice of these new factual allegations. (Defs. Resp. to Pls. Appeal 10.) Defendants note that in the prior iterations of the Complaints, Plaintiffs did not allege any harm to cardholders, but in the Amended Complaints allege that absent Defendants' anticompetitive conduct, cardholders would have been better off because issuers would compete for these cardholders. *Id.*

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 23 (2d Cir. 2016) (quoting *Slayton*, 460 F.3d at 228). Pursuant to Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct[,] transactions, or occurrence set out — or attempted to be set out — in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B).

In applying this rule, courts review whether the conduct giving rise to amended claims or defenses was alleged in the timely filed complaints; if alleged, the amendments relate back. *S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10-CV-7547, 2013 WL 1234937, at *4 (S.D.N.Y. Mar. 26, 2013) (finding that the new claim related back to the original complaint because the conduct giving rise to the complaint was a part of the factual situation alleged in the original complaint).[4] If not, the amendments do not relate back. *See Stevelman v.*

---

[4] In *S.A.R.L. Galerie*, an art gallery sued another art gallery for engaging in a campaign to eliminate competition and achieve a monopoly over an artist's ceramic artwork. *S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc.*, No. 10-CV-7547, WL 1234937, at *4 (S.D.N.Y. Mar. 26, 2013). The plaintiff sought to amend its complaint to add a claim of tortious

*Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (stating that if the amended complaint "introduced sufficiently new conduct, transactions, and occurrences," it "would not relate back to the date of the original complaint"); *see also ASARCO LLC v. Goodwin,* 756 F.3d 191, 203 (2d Cir. 2014) (denying relation back when new claims were based on "different conduct, in a different location, and attributable to different entities than the claims set forth in [the original] pleading"); *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *4 (S.D.N.Y. Oct. 19, 2017) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged." (quoting *Jewell v. Capital Cities/ABC, Inc.*, No. 97-CV-5617, 1998 WL 702286, at *2 (S.D.N.Y. Oct. 7, 1998))); *Naughright v. Robbins*, No. 10-CV-8451, 2014 WL 5315007, at *6 (S.D.N.Y. Oct. 17, 2014) (finding that new claims did not relate back because "the conduct giving rise" to such claims "was not mentioned in the FAC [first amended complaint] or the initial complaint"); *In re Noah Educ. Holdings, Ltd., Sec. Litig.*, No. 08-CV-9203, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010).[5]

---

interference with the production agreement that the plaintiff had with the artist. The defendants argued that the amended claim did not relate back because it alleged interference with the production agreement, whereas the plaintiffs' original claims alleged interference only with the plaintiff's Hong Kong contract. The court ruled that the "lack of identity, however, is not decisive." *Id.* The court further noted that that "[a]lthough the original complaint did not assert a tortious interference claim arising out of the Production Agreement," it did allege the defendant's conduct of "demand[ing] that the Production Agreement be terminated." *Id.* (citations and internal quotation marks omitted).

[5] In this securities action, the claims in the original complaint were based on allegations of the defendant's omission of information about the cost of raw materials from the registration statement and prospectus. *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, No. 08-CV-9203, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010). In the amended complaint, the plaintiffs' allegations were based on the defendant's "noncompliance with Chinese regulatory requirements, its labeling practices, or its brand image." *Id.* The court found that the claim of failure to disclose the noncompliance with Chinese regulations did not relate back to the original

"Provided the amended pleading is based on the same series of transactions and occurrences alleged in the original pleading, the revised pleading will relate back to the original pleading, even where the revised pleading contains legal theories not included in the original." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 116 (2d Cir. 1997) (first citing *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 125 (2d Cir. 1994);[6] and then citing *Villante v. Dep't of Corrections of the City of New York,* 786 F.2d 516, 520 (2d Cir. 1986)); *see also Mercier v. Greenwich Acad., Inc.*, No. 13-CV-4, 2013 WL 3874511, at *6 (D. Conn. July 25, 2013) ("The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." (quoting 6A Wright et al., Federal Practice and Procedure § 1497 (3d ed. 2010))).

In determining whether the amendments arise out of previously alleged conduct, "[u]nder Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Slayton*, 460 F.3d at 228 (quoting *Stevelman*, 174 F.3d at 86; *see also ASARCO LLC*, 756 F.3d at 202–03 (rejecting that there was "adequate notice" where the new claims were based on "different conduct" not previously alleged); *New*

---

complaint because "relation back is only appropriate in securities actions where the new allegations relate to the same or similar conduct complained of in the original complaint." *Id.* (citing *Slayton*, 460 F.3d at 229).

[6] In *Travelers*, the plaintiff-mortgagor brought a claim of fraudulent conveyance against the mortgagee, a partnership which distributed most of its funds to the partners prior to defaulting on the mortgage. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114 (2d Cir. 1994). The plaintiff later amended its complaint to include claims of waste and breach of contract. *Id.* at 117. The Second Circuit held that the new legal theories were "based on the very series of transactions and occurrences alleged in the original complaint," and therefore the claims in the "amended complaint relate[d] back to the time of the original complaint." *Id.*

*York Univ. v. Factory Mut. Ins. Co.*, 15-CV-8505, 2018 WL 1737745, at \*7 (S.D.N.Y. Mar. 27, 2018) (finding no "adequate notice" of claims based on inducement in the sale of an insurance policy where initial complaint alleged denial of claims under that policy); *S.A.R.L. Galerie Enrico Navarra*, WL 1234937, at \*4 (finding that a new claim of tortious interference with an agreement related back to the original complaint because the defendant's conduct giving rise to the  new claim was alleged in the original complaint, providing clear notice to the defendant); *see also Slayton* (concluding that there was notice of the amended claims as the conduct at issue was "amplified, or stated in a slightly different way").[7]

Defendants correctly note that the Amended Complaints include new facts about the impact of Defendants' conduct on cardholders, a group not previously identified by Plaintiffs. However, that conduct — Defendants' horizontal agreements and network rules resulting in supracompetitve prices — was previously alleged in Plaintiffs' earlier Complaints.  Specifically, the alleged anticompetitive conduct supporting Plaintiff's claim that Defendants imposed supracompetitive interchange fees consists of the rules implemented by Defendants, such as the Honor All Cards Rule, the No Surcharge Rule, the Honor All Issuers Rule, and other Anti-Steering Restraints.  (*See, e.g.,* First Am. Class Compl. ¶¶ 154, 155,157, 215, Docket Entry No. 317; Second Am. Class Compl. ¶¶ 241–247.)  As noted above, the relevant inquiry is not whether the amendments include any new facts, but whether the amendments rely on facts

---

[7]  In *Slayton*, the amendment stated that "Amex failed to disclose its lack of risk management controls," and the original complaint alleged that Amex failed to disclose that it was investing in high-yield instruments "involving complex risk factors that [Amex] management and personnel did not fully comprehend." *Slayton*, 460 F.3d at 226.  The Second Circuit concluded that, "[i]n stating that Amex did not properly comprehend the risks of its portfolio, no leap of imagination is required to expect that the lack or adequacy of risk management controls might be one reason behind the failure to comprehend the risks." *Id*. Therefore, Amex had sufficient notice of risk management claims, and the amended claims related back to the original complaint. *Id.*

consisting of new conduct that was not previously alleged. *See, e.g., Slayton*, 460 F.3d at 229 (finding relation back when the original complaint did not include factual allegations about defendant's lack of risk management controls, but the amended complaint did because the lack of management controls was the reason behind the defendant's failure to comprehend the risks, and this failure was alleged in the original complaint).

Defendants rely on *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961 (E.D.N.Y. Aug. 14, 2009), to support their argument that new factual allegations cannot relate back to the original complaint, but their reliance is misplaced. In *Griffith*, the district court adopted the magistrate judge's recommendation denying relation back where the plaintiff sought to amend the complaint by adding an excessive force claim to the previously alleged claims of false arrest and malicious prosecution. *Griffith*, 2009 WL 2524961, at *4. In denying relation back, the court noted that "it is of no moment that the arrest complained of in the original complaint occurred at the same time as the newly alleged excessive force" claim, and because "not a word in the complaint even suggested a claim of physical assault, the defendants cannot be said to have been on notice of a claim for excessive force." *Id*. (citations and internal quotation marks omitted). Unlike the plaintiff in *Griffith*, who did not allege any conduct of physical assault in the original pleading, Plaintiffs alleged the relevant conduct in the earlier Complaints and the two-sided relevant market theory requires consideration of the same conduct — Defendants entering into horizontal agreements and instituting network rules resulting in supracompetitve prices.[8]

---

[8] Defendants' reliance on *Avila v. Riexinger & Associates*, 2015 WL 1731542 (E.D.N.Y. Apr. 2015) is equally inapposite. In *Avila*, the original complaint alleged a claim of unfair collection practice and the amended complaint alleged that the interest rate charged by the defendant was in excess of New York laws. *Id*. at *8. In concluding that the amendments did

Thus, since the amendment of the alternative market definition does not involve any new conduct by Defendants, but rather calls for consideration of additional impact from the conduct already alleged in the original Complaints, the amendments relate back to the original Complaints.[9]

### d. *American Pipe* tolling

Defendants and Direct Action Plaintiffs agree that the Court's decision on whether the amendments relate back informs the applicability of *American Pipe* tolling to Direct Action Plaintiffs' amendments because both doctrines require notice to the opposing party. (Direct Action Pls. Appeal 19; Defs. Resp. to Pls. Appeal 22.) Direct Action Plaintiffs argue that they are entitled to *American Pipe* tolling because in applying this doctrine, "courts consider whether the factual basis of the absent class members' claims was the same as in the initial putative class action," so that there is "notice to preserve evidence." (Direct Action Pls. Appeal 20.) Direct Action Plaintiffs further contend that the inquiry under this standard is limited to the "challenged conduct" notwithstanding changes in the proposed legal theories. (*Id.*) Defendants argue that *American Pipe* does not toll Direct Action Plaintiff's amendments due to lack of notice because

---

not relate back, the court reasoned that the amended complaint relied on the defendant charging excessive interest rate, which was "not at issue in the original complaint." *Id.* Similar to the amended claims in *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961 (E.D.N.Y. Aug. 14, 2009), the amended claim in *Avila* relied on conduct that was not previously alleged.

[9] Moreover, as Plaintiffs argue, the claimants, claims, and types of damages all remain the same, thereby favoring relation back of the amendments. For example, in *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 (11th Cir. 2004), in denying relation back and *American Pipe* tolling, the Eleventh Circuit noted that the amendment substantially changed the size of the class (from state-wide to nation-wide) and was prejudicial to the defendants due to the lack of notice. The court reasoned that "[w]ithin the period set by the statute of limitations, the defendants [should] have the essential information necessary to determine both the subject matter and size of the prospective litigation . . . ." (quoting *Arneil v. Ramsey*, 550 F.2d 774, 782–83 (2d Cir.1977)). Defendants have had this information since the start of the litigation.

the amendments consist of "new factual theories" not found in the original Class Complaints. (Defs. Resp. to Pls. Appeal 22–23.)

Commencement of a class action tolls the statute of limitations for the claims of all potential members of the class. *See Am. Pipe*, 414 U.S. at 554. "[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id*.; *In re WorldCom Sec. Litig.*, 496 F.3d 245, 254 (2d Cir. 2007). The Supreme Court has noted that, were it to hold otherwise, putative class members would be forced to file motions to join or intervene simply to ensure their ability to share in any final judgment, a result that would "breed needless duplication of motions" and frustrate the goals of "efficiency and economy" that Rule 23 was designed to promote. *Am. Pipe*, 414 U.S. at 553–54. This rule "applies not only to putative class members who seek to intervene in an action [where class certification has been denied], but also to would-be class members who later file their own independent actions." *Police and Ret. Firefighter Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 105 (2d Cir. 2013) (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983)).

"[T]he source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions," and equity in class members receiving justice is weighed against prejudice to the defendant from lack of notice of claims to be defended. *California Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. ---,---, 137 S. Ct. 2042, 2051 (Apr. 17, 2017) ("By filing a class complaint within the statutory period, the named plaintiff notified the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (alteration and internal quotations omitted)). This tolling is available so that

"absent putative class members [can] remain passive" and "rely on the named plaintiffs to press their claims." *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987).

Complaints introducing new legal theories can be tolled under *American Pipe*, so long as they rely on the same facts as those alleged by the class. *Id.* at 721 ("[W]e do not regard the fact that the state court action was premised on different legal theories as a reason not to apply *American Pipe* tolling . . . . Indeed, limiting *American Pipe* tolling to the identical 'causes of action' asserted in the initial class action would encourage and require absent class members to file protective motions to intervene . . . , thereby producing the very results the New York courts seek to prevent . . . ."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2015 WL 4634541, at *136 (S.D.N.Y. Aug. 4, 2015), *amended sub nom. In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262, 2015 WL 13122396 (S.D.N.Y. Oct. 19, 2015) (stating that *American Pipe* tolling is available to subsequent actions that are based on different legal theories, but are not available to those that are based on different "factual theories").

The requirements of *American Pipe* tolling "operate in harmony with the amendment and relation back rules of the Federal Rules of Civil Procedure," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *148, and therefore deciding one issue has implications for the other. Similar to the relation back analysis, a court deciding whether claims can be tolled under *American Pipe* needs to ensure that the defendant had notice of such claims. *Crown, Cork & Seal Co.*, 462 U.S. at 355 (quoting *Am. Pipe*, 414 U.S. at 562).

Judge Orenstein based his decision that *American Pipe* tolling did not apply to Direct Action Plaintiffs' claims on his finding that the amendments proposed by Class Plaintiffs did not relate back to the original Complaints due to lack of notice of the two-sided market theory. (*See*

September 2017 Order 19 ("Thus, whether viewed through the prism of relation back or that of equitable tolling under *American Pipe*, the pertinent question is whether the original class complaint sufficed to put the defendants on fair notice of the plaintiffs' later claims.").) Defendants concede that the denial of *American Pipe* tolling is a "logical" continuation of the finding that the class amendments do not relate back. (Defs. Resp. to Pls. Appeal 22.)

Having found that Plaintiffs' Amended Complaints relate back to their prior Complaints because Defendant had the requisite notice of the alleged anticompetitive conduct resulting in supracompetitive interchange fees, the Court finds that *American Pipe* tolling applies to Direct Action Plaintiffs' amendments for the same reason.

## III. Conclusion

For the foregoing reasons, the Court finds that the amendments to the Class Complaint relate back to the original pleadings, and that *American Pipe* tolling applies to the amended claims by Direct Action Plaintiffs.[10]  The Court sets aside Judge Orenstein's decision to the contrary.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 29, 2018
       Brooklyn, New York

---

[10]  The Court is cognizant that this Memorandum and Order may be in tension with its decision in *Salveson v. JP Morgan Chase & Co.*, 14-CV-3529, 2014 WL 12770235 (E.D.N.Y. Nov. 26, 2014), *on reconsideration in part*, 166 F. Supp. 3d 242 (E.D.N.Y. 2016), *and aff'd*, 663 F. App'x 71 (2d Cir. 2016).  The plaintiffs in *Salveson* are invited to brief whether they are entitled to any relief in light of the Supreme Court's decision in *Ohio v. American Express Co.*, 625 U.S. ---, 138 S. Ct. 2274 (2018), and this decision.  Any submission must be made by October 1, 2018.  Any party may respond to any submission on or before November 15, 2018.