UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
LUBY'S FUDDRUCKERS RESTARAUNTS,
LLC,

                              Plaintiff,

                    v.

VISA INC., VISA U.S.A., INC., VISA
INTERNATIONAL SERVICE ASSOCIATION,
MASTERCARD INCORPORATED,
MASTERCARD INTERNATIONAL
INCORPORATED, BA MERCHANT SERVICES
LLC, BANK OF AMERICA CORPORATION,
BARCLAYS BANK OF DELAWARE, CAPITAL
ONE, N.A., CAPITAL ONE BANK (USA), N.A.,
CAPITAL ONE FINANCIAL CORPORATION,
CHASE BANK USA, N.A., JPMORGAN CHASE
BANK, N.A., JPMORGAN CHASE & CO.,
CITIBANK, N.A., CITIGROUP, INC., FIFTH
THIRD BANCORP, FIRST NATIONAL BANK
OF OMAHA, HSBC FINANCE CORPORATION,
HSBC NORTH AMERICA HOLDINGS, INC.,
PNC FINANCIAL SERVICES GROUP, INC.,
SUNTRUST BANKS, INC., SUNTRUST BANK,
TEXAS INDEPENDENT BANCSHARES, INC.,
WELLS FARGO & COMPANY, and WELLS
FARGO MERCHANT SERVICES, LLC,

                              Defendants.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
05-MD-1720 (MKB) (JO)
17-CV-4555 (MKB) (JO)

MARGO K. BRODIE, United States District Judge:

  Plaintiff Luby's Fuddruckers Restaurants, LLC commenced the above-captioned action

in Texas state court, on February 17, 2017, against the above-listed Defendants.  (Pl. Pet., Docket

Entry No. 1-2.)  On April 5, 2017, invoking the Edge Act, 12 U.S.C. § 611 *et seq.*, Defendants

removed the case to the United States District Court for the Southern District of Texas.  (Notice

of Removal, Docket Entry No. 1.)  On April 7, 2017, Plaintiff filed an Amended Complaint,

(Am. Compl., Docket Entry No. 4), and moved to remand the case to the Texas state court, (Pl. Mot. to Remand ("Pl. Mot."), Docket Entry No. 6). Defendants opposed Plaintiff's motion. (Defs. Opp'n. to Pl. Mot. ("Defs. Opp'n), Docket Entry No. 54-1.) On August 3, 2017, while the motion to remand was pending, the Judicial Panel for Multidistrict Litigation ("MDL") transferred the case to the Eastern District of New York because it shares "substantially similar factual allegations with [cases consolidated in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-MD-1720], and thus falls squarely within the subject matter of the MDL." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. MDL 1720, 2017 WL 4582708, at *1 (J.P.M.L. Aug. 2, 2017). By order dated September 14, 2017, the Court referred Plaintiff's motion to Magistrate Judge James Orenstein for a report and recommendation. (Order dated Sept. 14, 2017.)

By report and recommendation dated July 12, 2018, Judge Orenstein recommended that the Court deny Plaintiff's motion ("R&R"). (*See generally* R&R, Docket Entry No. 76.) Plaintiff filed objections to the R&R on July 18, 2018. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 77.) Defendants responded to the objections on August 1, 2018. (Defs. Resp. to Pl. Obj. ("Defs. Resp."), Docket Entry No. 78.) For the reasons set forth below, the Court adopts the R&R and denies Plaintiff's motion to remand the case to state court.

## I. Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts and procedural background.

Plaintiff commenced this action in Texas state court alleging that Defendants "conspired, combined, and made agreements to restrain trade" in violation of the Texas Free Enterprise and

Antitrust Act of 1983. (Pls. Pet. ¶ 3.) The Complaint[1] alleges that Defendants harmed merchants, such as Plaintiff, by imposing "competitive restraints" that resulted in "supracompetitive interchange fees." (*Id.* ¶ 11.) Plaintiff does not bring any claims under federal law. (*See generally* Pl. Pet.)

### a. Defendants' removal to federal court and Plaintiff's motion to remand

Defendants removed the case to federal court pursuant to the Edge Act, which states in relevant part:

> all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district.

12 U.S.C. § 632. Defendants contend that removal was proper because the action is a "suit of a civil nature at common law or in equity," five of the Defendants are "corporation[s] organized under the laws of the United States" ("Edge Act corporations"),[2] and the action arises out of "transactions involving international or foreign banking, or banking in a dependency or insular

---

[1] Although Plaintiff filed its Amended Complaint contemporaneously with the motion to remand, the Court bases its decision on the operative complaint at the time of removal. *See infra.*

[2] Defendants' notice of removal enumerates five Edge Act corporations: Capital One, N.A.; Capital One Bank (USA), N.A.; Chase Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Citibank, N.A. (Notice of Removal ¶ 15.) Defendants' opposition to Plaintiff's motion to remand lists First National Bank of Omaha as an additional Edge Act corporation. (Defs. Opp'n 5.)

possession of the United States." (Notice of Removal ¶ 15.)

Plaintiff contends that the Edge Act does not confer federal jurisdiction, and the Court should remand the case back to the state court for four reasons. (Pl. Mot. 1.) First, Plaintiff contends the Court must determine jurisdiction based on its pleadings and cannot consider extrinsic evidence of foreign issued cards used at Plaintiff's restaurants. (*Id.* at 13–14.) Plaintiff also argues that even if the Court could consider such evidence, Defendants' argument is without merit because the use of foreign issued cards at Plaintiff's restaurants is too "fortuitous" and does not satisfy the Edge Act requirement that the suit arise out of transactions involving international or foreign banking. (*Id.*)

Second, Plaintiff contends that "setting fees and rules for a restaurant's use of a non-banking entity's network such as Visa and MasterCard" does not fall within the Edge Act's requirement of "an international or foreign transaction which falls within the realm of those characterized as traditional banking activities," or "international or foreign financial operations." (*Id.* at 15–17.)

Third, Plaintiff contends that even if the case arose out of "an international or foreign transaction which falls within the realm of those characterized as traditional banking activities," or "international or foreign financial operations," federal jurisdiction is still improper because the transaction must be through direct participation of an Edge Act corporation.[3] (*Id.* at 18–19.)

---

[3] Plaintiff does not dispute that a typical Visa or Mastercard card transaction involves at least four parties in addition to the Visa or Mastercard network: (1) the cardholder; (2) the "issuer" or "issuing bank" that issued the cardholder's payment card (which can be foreign or domestic); (3) the merchant that accepts the cardholder's payment card as a form of payment; and (4) the "merchant acquirer" or "acquiring bank" with which the merchant has contracted to process the payment card transaction, (Notice of Removal ¶ 4). Rather, Plaintiff argues that because Plaintiff's "acquiring bank's engagement is limited to dealing with Plaintiff on the one

Finally, Plaintiff argues that the Court should remand the action on the basis of Plaintiff's Amended Complaint, because it "expressly disclaims any damages related to attenuated purchases" made by foreign-issued cards. (*Id.* at 20.)

### b. **Judge Orenstein' recommendations**

Judge Orenstein recommended that the Court deny Plaintiff's motion to remand the case to state court. (*See generally* R&R.)

Judge Orenstein found that the supracompetitive fees complained of by Plaintiff arise from multi-party payment card transactions that include both issuing and acquiring banks, and that some issuing banks are foreign, including dozens identified by Defendants that approved transactions with Plaintiff and its acquiring bank Chase, an Edge Act corporation. (*Id.* at 5 (citing Decl. of R. Garrison Harvey ("Harvey Decl."), annexed to Defs. Opp'n as Ex. A, Docket Entry No. 54-2).) Judge Orenstein noted that these transactions "fall[] within the realm of those 'characterized as traditional banking activity'" because a "foreign issuing bank's role in approving payments made on a consumer's credit card is an essential element of administering the four-way transactions at the center of this lawsuit." *Id.* at 6–7 (internal citations omitted) (citing *Pinto v. Bank One Corp.*, No. 02-CV-8477, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003)). In recommending denial of the motion to remand, Judge Orenstein noted that there is "federal jurisdiction over a case if *any part of it* arises out of transactions involving international or foreign banking, even when foreign banking activity [is] not central to the case." (R&R 4 (citing *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005)). Judge

---

hand, and Visa or MasterCard on the other hand, all in the United States, there is no direct link between an Edge Act corporation and a qualifying transaction. (Pl. Mot. 19.)

Orenstein further noted that the practices complained of by Plaintiff "are inextricably intertwined with foreign banking transactions involving traditional banking activity."[4]

## II. Discussion

### a. Standards of review

#### i. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring

---

[4] Judge Orenstein did not directly address Plaintiff's request that the Court determine the applicability of the Edge Act based on the Amended Complaint, but noted that "even in its Amended Complaint, [Plaintiff] continues to seek injunctive relief that would affect foreign transactions. For example, by seeking to enjoin the alleged violations of Texas antitrust laws, . . . [Plaintiff] presumably seeks to free itself of the obligation to honor payment cards issued by foreign banks." (R&R 6 n2.)

the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### ii. Motion to remand

A defendant may remove a civil action brought in state court to a federal court of original jurisdiction. 28 U.S.C. § 1441(a). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)); *Balram v. Cohen & Slamowitz, LLP*, No. 13-CV-07213, 2014 WL 527899, at *1 (E.D.N.Y. Feb. 7, 2014). The party asserting jurisdiction bears the burden of proving that jurisdiction and procedural requirements are met. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper."); *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *Bankhead v. New York*, No. 13CV3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013). A district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011); *see also Kenmore Assocs., L.P. v. Burke*, 367 F. App'x 168, 169 (2d Cir. 2010).

### b. Plaintiff's objections and Defendants' response

Plaintiff objects to Judge Orenstein's recommendation that the Court deny its motion to remand on three grounds. Plaintiff argues that: (1) jurisdiction is determined on the basis of

Plaintiff's pleading and Judge Orenstein improperly considered "affidavits from Defendants alleging that a few purchases at [Plaintiff's restaurants] were made with a foreign issued card," (Pls. Obj. 4); (2) "[e]ven if the Court were to consider Defendants' extraneous evidence of foreign issued card purchases, the Edge Act requires that the case 'arise out of' — not merely 'involve' or 'include' foreign banking," and foreign issued card purchases do not rise to that standard, (*id.* at 5–6); and (3) Judge Orenstein erroneously determined that by requesting injunctive relief that would impact foreign transactions, and despite disclaiming damages from any foreign-issued card transactions, the Amended Complaint confers jurisdiction under the Edge Act. (*Id.* at 8.) Plaintiff contends that the injunctive relief requested is against Defendants' anticompetitive behavior in the United States, and, if granted, Plaintiff "could still choose to accept foreign issued card purchases absent the competitive restraints." (*Id.*)

Defendants contend that the R&R should be adopted in its entirety because: (1) Judge Orenstein properly relied on declarations to determine jurisdiction because the precedent in the Second Circuit allows the Court to do so and none of the cases cited by Plaintiff show otherwise, (Defs. Resp. 5–6); (2) Judge Orenstein applied the correct standard in determining that this suit "arises out of" foreign or international banking transactions or other foreign financial operations because in this Circuit "a suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking," (*id.* at 7–8 (citations omitted)); and (3) Plaintiff should not be allowed to circumvent jurisdiction by amending its Complaint because jurisdiction is determined based on the complaint at the time of removal, (*id.*). In addition, Defendants argue that even if Plaintiff was allowed to amend its Complaint, Plaintiff's claim that the Amended Complaint only includes claims for antitrust injuries related to purchases by customers using credit and debit cards issued to them in the United States, does not

defeat the Court's jurisdiction under the Edge Act because the Amended Complaint does not

disclaim damages from cards issued in Puerto Rico or Guam — "dependenc[ies] of insular

possession of the United States," as specified by the Edge Act, or cards issued by foreign banks

to individuals in the United States. (*Id.* at 12.)

The Court considers each of Plaintiff's arguments below.

### c. The Court may look beyond Plaintiff's pleading to determine subject matter jurisdiction

Plaintiff contends that in finding jurisdiction pursuant to Edge Act, Judge Orenstein

impermissibly considered Defendants' declarations showing the use of foreign-issued cards at

Plaintiff's restaurants. (Pls. Obj. 4.) "Whether federal courts have federal question jurisdiction

over an action is typically governed by the 'well-pleaded complaint' rule, pursuant to which

federal question jurisdiction exists only if 'plaintiff's statement of his own cause of action shows

that it is based' on federal law.'" *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (quoting

*Vaden v. Discover Bank*, 556 U.S. 49, 70 (2009); *Jana Master Fund, Ltd. v. JP Morgan Chase &

Co.*, 490 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) ("Federal jurisdiction must be found from what

necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything

alleged in anticipation of avoidance of defenses which it is thought the defendant may

interpose.") (quoting *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 100 (2d Cir.

2001)). A plaintiff "is free to avoid federal jurisdiction by 'pleading only state claims even

where a federal claim is also available.'" *Romano*, 609 F.3d at 518 (quoting *Marcus v. AT&T

Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)).

However, the "artful pleading" rule prevents a plaintiff from "avoid[ing] removal by

declining to plead 'necessary federal questions.'" *Romano*, 609 F.3d 518–19 (quoting *Rivet v.

Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)). "If the artful pleading rule applies,

courts look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has 'clothed a federal law claim in state garb' by pleading state law claims that actually arise under federal law." *Id.* at 519 (quoting *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)). The artful pleading rule applies either when state claims have been completely preempted by federal law or Congress has "expressly provided for the removal of particular actions asserting state law claims in state court."[5] *Id.* (citing *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003)).

The artful pleading rule applies because the Edge Act provides for the removal to federal court of qualifying claims arising out of foreign transactions otherwise filed in state court. 12 U.S.C. § 632; *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 268–69 (2d Cir. 1996), *abrogated on other grounds by Vaden*, 556 U.S. at 70 (citing Edge Act as an example of Congress providing an explicit exception to the "well-pleaded complaint rule"). Accordingly, the Court can look beyond the face of the Complaint to consider Defendants' statements in the notice of removal with regard to foreign transactions implicated by the allegations in Plaintiff's Complaint. As a result, the Court takes into consideration the records maintained by Visa and MasterCard showing that customers used cards issued by foreign banks (originating from countries like Mexico, Japan, Israel, and others) at Plaintiff's restaurants on many occasions within the relevant period, and that those foreign banks were the recipients of interchange fees for those

---

[5]  In *Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010), the Second Circuit applied the artful pleading exception based on the express removal provision of the Securities Litigation Uniform Standards Act (SLUSA) for claims involving securities covered by SLUSA. 609 F.3d at 520. Although the amended complaint did not acknowledge that plaintiffs invested in covered securities, in upholding removal, the Second Circuit considered the defendants' notice of removal, which introduced account statements demonstrating investments in covered securities. *Id.*

transactions.  (Notice of Removal ¶ 19.)

### d.  Edge Act jurisdiction

### i.  Requirements for removal

"The Edge Act was enacted in 1919 for the purpose of supporting U.S. foreign trade." *Am. Int'l Grp., Inc.*, 712 F.3d at 778–79.  The Act authorized the creation of banking corporations to be chartered and supervised by the Federal Reserve Board, so that they could be freed "from regulation by state and local banking authorities" to ensure their ability to "compete more effectively with foreign banks in offshore banking operations."  *Id.*  In 1933, Congress added section 632 to provide "for federal court jurisdiction of certain suits to which these Edge Act banks were parties . . . to give Edge Act banks predictable uniformity of adjudication supervised in the federal courts . . . ."  *Id.* at 779; 12 U.S.C. § 632.  As the Second Circuit has acknowledged, "[t]he statute is somewhat confusingly drafted and perhaps ambiguous."  *Am. Int'l Grp., Inc.*, 712 F.3d at 780.  However, "[w]hat is clear is . . . [i]n order to qualify for removal to federal court" under the Edge Act:

> 1. The suit must be a civil suit "at common law or in equity."
>
> 2. A "corporation organized under the laws of the United States" (i.e., an Edge Act corporation) must be a party to the suit.
>
> 3. The suit must "aris[e] out of" one of three described types of offshore transactions or operations: "transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations."

*Id.* at 779–80.[6]

---

[6]  Because the first two prongs are not disputed, the Court focuses on whether the suit "arises out of" transactions qualifying as "involving international or foreign banking."

### ii. "[A]ris[ing] out of" transactions involving foreign banking

Case law interpreting the "arise out of transaction involving foreign or international banking" requirement of the Edge Act is sparse and at times conflicting.

### 1. Conflicting case law

Some courts have interpreted this provision of the Edge Act broadly to apply to all cases where any part arises out of transactions involving international or foreign banking. For example, in *Pinto*, the district court stated that "[a] suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking." *Pinto*, 2003 WL 21297300 at *3 (citing *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996)). "Indeed, federal courts in this Circuit have consistently interpreted the Edge Act's jurisdictional provision broadly, 'routinely appl[ying] Section 632, even in cases based on state law causes of action and containing only an incidental connection to banking law, and 'even though the international or foreign banking activity was not central to the case.'" *Bank of Am. Corp.*, 385 F. Supp. 2d at 214 (citing *In re Lloyd's*, 928 F. Supp. at 340) (citations and international quotation marks omitted); *see also Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 734–36 (N.D. Tex. 2008) (finding that "the fact that the underlying transaction took place entirely within the United States does not preclude a finding of foreign character" when at least one of the parties is a foreign company (citing *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 793 (2d Cir. 1980))); *Contitrade Servs. Corp. v. Eddie Bauer, Inc.*, 794 F. Supp. 514, 517 (S.D.N.Y. 1992) (finding sufficient foreign banking transaction under the Edge Act when letters of credit were issued by a national bank for a foreign corporation).

Other courts require a more direct relationship between the claims and the foreign

transaction at issue. *Sollitt v. KeyCorp*, 463 F. App'x 471, 473 (6th Cir. 2012) (declining to follow "cases asserting that 'a suit satisfies the jurisdictional requisites of Section 632 if *any part of it* arises out of transactions involving international or foreign banking.'"[7] (quoting *Pinto*, 2003 WL 21297300 at *3)); *People v. Wells Fargo & Co.*, 15-CV-4181, 2015 WL 4886391, at *6 (C.D. Cal. Aug. 13, 2015) (finding no jurisdiction where the claims arose out of the defendant's fraudulent "bundling" practice, where one of the services bundled with checking accounts offered to customers was the service of transferring funds abroad ("ExpressSend")[8] because the claims arose out of the defendant's misrepresentations that bundling was necessary, rather than the use of ExpressSend); *Weiss v. Hager*, No. 11-CV-2740, 2011 WL 6425542, at *3 (S.D.N.Y. Dec. 19, 2011) (finding no jurisdiction because the heart of the matter was the defendants' defrauding the plaintiff, causing him to wire funds to banks accounts in their control, but the fact the defendants' accounts were in European banks was "incidental" and not "legally significant" (citing *Bank of New York*, 861 F. Supp. at 232)).

### 2. The requirement of a direct nexus between an Edge Act Corporation and the foreign transaction

In a relatively recent decision, the Second Circuit imposed a limitation to removals

---

[7] In *Sollitt v. KeyCorp*, 463 F. App'x 471 (6th Cir. 2012), a former employee filed suit for wrongful termination in state court against his employer, a foreign currency trading company. The employee alleged that he had been fired in retaliation for reporting other traders' misconduct. *Id.* at 472. The employer removed the suit to federal court pursuant to the Edge Act. The court held that the employer's firing of the employee was not an "aspect of banking" and, therefore, the claim of "wrongful termination did not 'arise out of' a banking transaction, even though the entire episode arguably can be traced back to the . . . foreign currency transaction." *Id.* at 475.

[8] ExpressSend is a product for sending money to foreign countries. *People v. Wells Fargo & Co.*, 15-CV-4181, 2015 WL 4886391, at *5–6 (C.D. Cal. Aug. 13, 2015).

pursuant to the Edge Act by requiring a direct nexus between an Edge Act Corporation and the

foreign transaction. *Am. Int'l Grp., Inc.*, 712 F.3d at 784.[9] For removal to be proper, the

transactions involving international or foreign banking have to be attributed to the Edge Act

corporation. *Id.*; *see also Landesbank Baden-Wurttemberg v. Capital One Fin. Corp.*, 954 F.

Supp. 2d 223, 227 (S.D.N.Y. 2013) (concluding that the court lacked jurisdiction because there

was no connection between an Edge Act corporation and the foreign transaction in question);

*Dexia SA/NV v. Bear, Stearns & Co.*, 945 F. Supp. 2d 426, 429 (S.D.N.Y. 2013) ("[B]ecause

defendants relied solely on the origination of the eighteen Virgin Islands mortgages to support

removal under the Edge Act, and those loans were not originated by [the Edge Act corporation-

defendant], this case does not 'arise out of' any 'offshore banking or financial transaction of [the]

federally chartered corporation.'" (citing *Am. Int'l Grp.*, 712 F.3d at 784)); *Sealink Funding Ltd.*

*v. Bear Stearns & Co. Inc.*, No. 12-CV-1397, 2012 WL 4794450, at *5 (S.D.N.Y. Oct. 9, 2012)

(finding that the court lacked subject matter jurisdiction because Edge Act corporation did not

"originate[] territorial mortgages, or . . . participate[] in the actual sale of the RMBS [Residential

---

[9] In *American International Group v. Bank of America Corp.,* 712 F.3d 775, 778 (2d Cir. 2013), the plaintiffs invested in residential mortgage-backed securities ("RMBSs") that the defendants underwrote, sponsored, or sold. The plaintiffs alleged in the complaint that the defendants engaged in various fraudulent misrepresentations while underwriting or sponsoring 349 RMBSs, in which the plaintiffs invested approximately $28 billion, and suffered large losses when the RMBSs fell into default. 712 F.3d at 778. A small percentage of the mortgages in question were secured by real property in U.S. territories such as Puerto Rico. The plaintiffs argued before the district court that the removal was improper because the Edge Act corporation defendant was "not a party to any of AIG's claims on RMBS involving territorial U.S. mortgages." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 820 F. Supp. 2d 555, 557–58 (S.D.N.Y. 2011). The district court ruled that the plaintiffs were not required to demonstrate a "perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought." *Id.* In reversing the district court's decision, the Second Circuit found that in order for the removal to be proper, the transactions involving international or foreign banking had to be attributed to the Edge Act corporation. *Am. Int'l Grp., Inc.*, 712 F.3d at 778.

Mortgage-Backed Securities] to buyers, domestic or abroad," but rather, only created the U.S. trusts that held U.S. mortgages — actions that had no international dimension"); *see also Speedy Stop v. Visa Inc.,* C.A. No. 13-CV-0073, slip op. at 7–8 (S.D. Tex. Dec. 26, 2013) (requiring a "three-part nexus" between the Edge Act corporation, "the banking or financial transaction, and the offshore component").

### 3. The suit arises out of transactions involving foreign banking

In objecting to Judge Orenstein's recommendation, Plaintiff asserts that Judge Orenstein incorrectly relied on "older" case law to state that there is "federal jurisdiction over a case if any part of it arises out of transactions involving international or foreign banking, even when foreign banking activity [is] not central to the case," contrary to more recent authority. (Pls. Obj. 5.) Plaintiff also argues that there is only "incidental connection to banking law," because whether or not a restaurant customer uses a foreign issued card to pay for a meal is irrelevant to [Plaintiff's] antitrust claims." (*Id.* at 7.) In addition, Plaintiff argues that there is no Edge Act jurisdiction because "[n]one of [Plaintiff's] claims stems from a foreign purchase, a foreign merchant, a foreign merchant/acquiring bank that settled credit card charges outside of the United States, or any of the separate, additional fees that might apply to purchases made with foreign issued cards." (*Id.* at 6.)

The Edge Act corporation–Defendants are six national banks, including Chase Bank, Plaintiff's acquiring bank. In its Complaint, Plaintiff alleges conspiracy to restrain trade in violation of Texas antitrust law that resulted in supracompetitve interchange fees. (*See generally* Pl. Pet.) The process for charging those fees consists of multiple steps:

> In general terms, a Visa or MasterCard credit card transaction is processed as follows: the customer presents a credit card to pay for goods or services to the merchant; the merchant relays the transaction information to the acquiring bank; the acquiring bank processes the information and relays it to the network (here, Visa or

> MasterCard); the network relays the information to the issuing bank;
> if the issuing bank approves the transaction, that approval is relayed
> to the acquiring bank, which then relays it to the merchant.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 228 (2d Cir.

2016). The interchange fee at the core of this litigation is charged by the issuing bank, which

transfers the payment made by the credit card holder minus the interchange fee to the acquiring

bank, which in turn transfers the payment to the merchant's account minus any other applicable

fees. (Notice of Removal ¶ 6.) If the issuing bank in question is a foreign bank, then the

interchange fee is charged by the foreign bank, making the transaction foreign. The record

indicates that Defendant Chase Bank, an Edge Act corporation, served as an acquiring bank for

Plaintiff in a number of transactions involving foreign issuing banks. (*Id.* ¶ 19.) Those

transactions required participation of both the acquiring bank — Chase Bank — and the issuing

foreign bank. Therefore, there is a direct nexus between the qualifying transaction and an Edge

Act corporation that is not fortuitous.[10]

Relying on *Speedy Stop*, Plaintiff argues that there must be a more direct relationship

between its claim and the foreign transaction. (Pl. Obj. 6–7.) In *Speedy Stop*, although

---

[10] The qualifying foreign transaction under the Edge Act needs to be within the realm of "traditional banking." *Pinto v. Bank One Corp.*, No. 02-CV-8477, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003) (citing *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994)). Traditional banking activities include "various types of credit, for example: unsecured personal and business loans, mortgage loans, loans secured by securities or accounts receivable, automobile installment and consumer goods installment loans, tuition financing, bank credit cards, revolving credit funds." *Id.* (citing *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 327 n.5 (1963)); *see Nacional Financiera S.N.C. v. Chase Manhattan Bank, N.A.*, 00-CV-1571, 2001 WL 327159, at *3 (S.D.N.Y. Apr. 4, 2001) (noting that loans and payment and processing of drafts are typical banking activities). Judge Orenstein found that "the [D]efendants easily satisfy this burden, as credit card transactions constitute banking activity under the Edge Act." (R&R 7.) Because Plaintiff did not object to this portion of the R&R, the Court reviews it for clear error, *Williams*, 527 F.3d at 264, and finds none. *See Pinto*, 2003 WL 21297300 *3 ("[I]t is clear that the basic components of administering credit cards . . . represent what banks do, and have been doing for centuries.").

considering the same type of payments by foreign issued cards as are before the Court, the court relied on *American International Group* to conclude that "[t]he involvement of any foreign banks [was] fortuitous and legally insignificant to Speedy Stop's lawsuit," and remanded the case to state court. *Speedy Stop*, No. 13-CV-0073, slip op. at 7–8.

In the R&R, Judge Orenstein disagreed with *Speedy Stop's* application of *American International Group*, stating that "[w]hile [it is] true . . . that . . . plaintiffs were not complaining specifically about the subset of transactions that were approved by foreign issuing banks, it also glosses over the relevant inquiry. [Plaintiff] is targeting in its [C]omplaint an entire category of transactions, some entirely domestic but others that involve foreign issuing banks." (R&R 5.) Judge Orenstein also noted that Plaintiff "is challenging the [D]efendants' respective roles in creating and implementing the system that regulates those transactions," for example, Plaintiffs challenge to Defendants' "Honor All Cards" rules imposed upon the merchants, requiring a merchant to accept all cards if it accepts one card, including those that are issued by foreign banks. (*Id.* at 5–6.) Judge Orenstein concluded that "it is thus clear that payment card transactions in which one of the parties is a foreign bank play an inextricable part of the conduct at the heart of this case," and therefore, removal was proper. (*Id.* at 6.)

Despite the limitations placed on the Edge Act jurisdiction by the Second Circuit in *American International Group*, the Edge Act does not require the foreign transaction to be central to the claim. The Edge Act reads in relevant part that the suit must "aris[e] out of transactions involving international or foreign banking." 12 U.S.C. § 632. The statute does not require that the suit arise out of the foreign transaction but out of transactions involving foreign banking. As noted by Judge Orenstein, Plaintiff's claim is based on an "entire category of transactions" that involve, among others, foreign transactions when a customer uses a card issued by a foreign bank. In addition, the very antitrust conduct that Plaintiff challenges, such as the

Honor All Cards rules, necessarily include the use of foreign cards.[11]  (R&R 6.)

Furthermore, the facts here are distinguishable from cases where courts lacked

jurisdiction due to the lack of connection between the claim and the foreign transaction.  For

example, in *Wells Fargo*, the complaint alleged that "Wells Fargo employees lied to customers

and 'bundled' products, including ExpressSend, in order to meet sales quotas." *Wells Fargo &*

*Co.*, 2015 WL 4886391, *5–6.  The *Wells Fargo* court noted that "the [c]omplaint [did] not

allege that Wells Fargo employees caused customers to use the ExpressSend product; it only

assert[ed] that Wells Fargo employees would tell customers that opening a checking account

would 'automatically' come with other accounts and/or enroll customers in other services,

including ExpressSend." *Id.*  In contrast, the conduct Plaintiff challenges, such as the Honor All

Card rules, requires merchants to accept all cards, including those issued by foreign banks.

Therefore, even though the claims do not arise out of any fees specific to foreign-issued cards,

the use of foreign issued cards is sufficiently integral to Plaintiff's claims challenging the rules

requiring acceptance of *all* cards.  Thus, the Court finds that the suit arises out of transactions

---

[11]  As described in Plaintiff's Complaint and Amended Complaint, the Honor All Card rules:

> require in relevant part that a merchant that accepts any Visa-branded or MasterCard-branded credit card must accept all Visa-branded or MasterCard-branded credit cards, regardless of which bank issued the card or the card type. Similarly, a merchant that accepts Visa-branded or MasterCard-branded debit cards, must accept all Visa-branded or MasterCard-branded debit cards, regardless of the issuing bank. Because of the Honor All Cards Rules, Plaintiff cannot reject any or all of the types of cards issued by any particular issuing bank.  Thus, Plaintiff is precluded from gaining the benefits of competition as to the terms upon which they will accept or reject the cards of any issuing bank that is a member of Visa or MasterCard.  As a result, the "default" interchange fees become binding on Plaintiff.

(R&R 6 (citing Am. Compl. ¶ 94); *see also* Pl. Pet. ¶ 96.)

involving foreign banking and the removal was proper pursuant to the Edge Act.

>    **e.  The Court's jurisdiction is determined based on the operative pleading at the time of removal**

Plaintiff contends that the Court should exercise its discretion to decide Plaintiff's motion to remand based on its Amended Complaint, rather than the Complaint, and because it expressly disclaims any interchange fees stemming from the use of foreign-issued cards in the Amended Complaint, the Court should find that the Edge Act is not implicated and remand the case to state court.  (Pls. Obj. 9.)

It is well established that "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101–02 (2d Cir. 2015) ("[J]urisdiction under CAFA [Class Action Fairness Act] is secure even though, after removal, the plaintiffs amended their complaint to eliminate the class allegations."). A plaintiff cannot "oust" the federal court's jurisdiction upon removal by simply amending the complaint and dropping all federal questions because doing so would "destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute." *Id. (quoting Boelens v. Redman Homes, Inc*., 759 F.2d 504, 507–08 (5th Cir. 1985)); *see also Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 625 (2d Cir. 2012) ("A plaintiff 'cannot seek to deprive a federal court of jurisdiction' by changing its pleadings 'once the jurisdictional threshold has been satisfied.'" (citing *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010))).At the time Defendant removed the action to this Court, the Complaint was the operative pleading.  In its Complaint, as set forth above, the damages included supracompetitive interchange fees without any distinction as to the issuing banks of the credit and debit cards used at Plaintiff's restaurant locations.  (*See supra*.)  Based on Plaintiff's allegations in the Complaint,

the Court has jurisdiction.

Plaintiff's reliance on *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), is misplaced. In *Carnegie-Mellon*, which dealt with the federal court's discretion to remand when the only remaining claims were state claims over which the court originally had supplemental jurisdiction, the Supreme Court expressly instructed the courts to "guard against forum manipulation":

> Petitioners' concern appears to be that a plaintiff whose suit has been removed to federal court will be able to regain a state forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case. This concern, however, hardly justifies a categorical prohibition on the remand of cases involving state-law claims regardless of whether the plaintiff has attempted to manipulate the forum and regardless of the other circumstances in the case. A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case. The district courts thus can guard against forum manipulation without a blanket rule that would prohibit the remand of all cases involving pendent state-law claims.

*Id* at 357 (internal citation omitted).

Consistent with the concerns expressed in *Carnegie-Mellon*, Plaintiff cannot defeat the Court's jurisdiction by its attempt in the Amended Complaint to plead around the Edge Act removal provision. Plaintiff amended the Complaint to disclaim damages from the use of foreign-issued cards after Defendants removed the case to federal court, filing the Amended Complaint simultaneously with its motion for remand. (Am. Compl. ¶ 161.) Indeed, Plaintiff does not offer any other reason for amending the Complaint other than its attempt to strip the Court of its jurisdiction pursuant to the Edge Act. (*See generally* Mot. to Remand.) Having found that the Court has jurisdiction based on the original Complaint, the Court declines to

remand the action back to state court based on the Amended Complaint.[12]

## III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion to remand the case to state court.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 18, 2018
      Brooklyn, New York

---

[12] The Court does not address whether the facts, as alleged in the Amended Complaint, would give rise to the Court's jurisdiction.