UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ x

In re PAYMENT CARD INTERCHANGE          :   MDL No. 1720(MKB)(JO)
FEE AND MERCHANT DISCOUNT               :
ANTITRUST LITIGATION                    :   Civil No. 05-5075(MKB)(JO)
                                        :
_____ :   MEMORANDUM IN SUPPORT OF RULE
                                        :   23(b)(3) CLASS PLAINTIFFS' MOTION
This Document Relates To:               :   FOR CLASS SETTLEMENT
                                        :   PRELIMINARY APPROVAL
        ALL ACTIONS.                    :
                                        :
_____ x

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    PROCEDURAL BACKGROUND.......................................................................2

III.   THE COURT WILL LIKELY GRANT FINAL APPROVAL OF THE
       PROPOSED SETTLEMENT ...............................................................................8

       A.     The Settlement Is Presumptively Fair Because It Resulted from Arm's
              Length Negotiations by Experienced and Informed Counsel ................................10

       B.     The *Grinnell* Factors and Rule 23(e)(2) Support Granting Preliminary
              Approval ...............................................................................................12

              1.     Further Litigation Would Be Protracted and Risky ...................................13

              2.     The Settling Parties Are Well-Informed about the Strengths and
                     Weaknesses of Their Claims at This Advanced Stage..............................16

              3.     The Settlement Amount Is Fair, Reasonable, and Adequate in
                     Light of the Risks of Further Litigation ....................................................17

              4.     Defendants' Ability to Withstand a Greater Judgment Does Not
                     Weigh Against Settlement .........................................................................21

              5.     The Release Terms Are Tailored to the Settled Claims............................22

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ......................25

       A.     The Settlement Class Meets the Requirements of Rule 23(a) ..............................26

              1.     The Membership of the Class Is so Numerous that Joinder Is
                     Impracticable............................................................................................26

              2.     There Are Questions of Law and Fact Common to All Class
                     Members ...................................................................................................27

              3.     Class Plaintiffs' Claims Are Typical of Those of the Class ....................28

              4.     The Settlement Class Is Adequately and Fairly Represented ..................29

       B.     The Settlement Class Meets the Requirements of Rule 23(b)(3) .........................33

              1.     Common Questions of Law and Fact Predominate ..................................33

              2.     A Class Action Is the Superior Method for Resolving This Case ............37

**Page**

V.      BOTH THE NOTICE PLAN AND PLAN OF ALLOCATION AND
        DISTRIBUTION ARE REASONABLE ..........................................................................38

        A.      The Notice Plan.........................................................................................38

        B.      The Plan of Allocation and Distribution ...................................................39

VI.     CONCLUSION......................................................................................................41

1473583_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................25, 29, 33, 34

*Barry's Cut Rate Stores, Inc., et. al. v. Visa, Inc., et al.*,
    MDL No. 1720, No. 05-md-01720-MKB-JO (E.D.N.Y.) .............................................. *passim*

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d 123 (E.D.N.Y. 2015) ......................................................................8

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006) ..................................................................26, 38

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)..................................................................................37

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)..............................................................21

*Claridge v. N. Am. Power & Gas, LLC*,
    No. 15-cv-1261, 2016 WL 7009062
    (S.D.N.Y. Nov. 30, 2016) .............................................................................31

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009) ..................................................................25, 34

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)...........................................................................34

*D'Alauro v. GC Services, Ltd. Partnership*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ...................................................................37

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
    *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)..................................... *passim*

*Dial Corp. v. News Corp.*,
    317 F.R.D. 426 (S.D.N.Y. 2016) ................................................................9, 12, 15

*Dover v. British Airways, PLC (UK)*,
    No. 12 CV 5567 (RJD)(CLP), 2018 WL 2411220
    (E.D.N.Y. May 29, 2018) ...........................................................................8, 9

1473583_1

**Page**

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...................................................................16

*Hall v. ProSource Techs., LLC*,
    No. 14-cv-2502 (SIL), 2016 WL 1555128
    (E.D.N.Y. Apr. 11, 2016)...................................................................................39

*In re Aggrenox Antitrust Litig.*,
    No. 3:14-md-02576 (SRU), 2017 WL 4278788
    (D. Conn. Sept. 19, 2017) ...........................................................................10, 12

*In re Air Cargo Shipping Services Antitrust Litig.*,
    No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100
    (E.D.N.Y. Oct. 15, 2014) ...................................................................................27

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 (JG)(VVP), 2009 WL 3077396
    (E.D.N.Y. Sept. 25, 2009) ..................................................................................16

*In re American Int'l Group, Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)...................................................................25, 33, 35

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................16

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...........................................................16, 40

*In re Currency Conversion Fee Antitrust Litig.*,
    224 F.R.D. 555 (S.D.N.Y. 2004) .....................................................................28, 38

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) .............................................................10, 12, 20

*In re Domestic Drywall Antitrust Litig.*,
    No. 13-MD-2437, 2018 WL 3439454
    (E.D. Pa. July 17, 2018).....................................................................................12

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)...............................................................................26

*In re Elec. Books Antitrust Litig.*,
    639 F. App'x 724 (2d Cir. 2016) .........................................................................12

- iv -

**Page**

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................38

*In re IMAX Sec. Litig.*,
  No. 06 Civ. 6128 (NRB), 2012 WL 2359653
  (S.D.N.Y. June 20, 2012) ..................................................................38

*In re Literary Works in Electronic Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011).............................................................24

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ........................................................34

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................13

*In re Packaged Ice Antitrust Litig.*,
  322 F.R.D. 276 (E.D. Mich. 2017) .....................................................22

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................41

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated*,
  827 F.3d 223 (2d Cir. 2016).................................................... *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...........................................19, 20

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016).................................................... *passim*

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  No. 05-MD-1720 (MKB)(JO), 2016 WL 8138988
  (E.D.N.Y. Nov. 30, 2016) ..............................................................5, 32

*In re Platinum & Palladium Commodities Litig.*,
  No. 10cv3617, 2014 WL 3500655
  (S.D.N.Y. July 15, 2014) ..................................................................27

- v -

**Page**

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) .......................................................................27, 29, 34

*In re Processed Egg Products Antitrust Litig.*,
   No. 08-md-2002, 2016 WL 3584632
   (E.D. Pa. June 30, 2016) ...........................................................................................35

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
   No. 06 CIV. 5173 (RPP), 2008 WL1956267
   (S.D.N.Y. May 1, 2008)...........................................................................................38

*In re Towers Fin. Corp. Noteholders Litig.*,
   177 F.R.D. 167 (S.D.N.Y. 1997) ...........................................................................31

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ...........................................................................34

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) .............................................................15, 19

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)......;........................................................................34

*In re Vitamin C Antitrust Litig.*,
   No. 06-md-1738 (BMC)(JO), 2012 WL 5289514
   (E.D.N.Y. Oct. 23, 2012) ......................................................................................13

*Kelen v. World Fin. Network Nat. Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) ...........................................................................11

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...................................................................................28

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................................... *passim*

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (June 25, 2018).............................................................................14

*Parker v. City of New York*,
   No. 15 CV 6733 (CLP), 2017 WL 6375736
   (E.D.N.Y. Dec. 11, 2017) ................................................................................8, 9, 10

**Page**

*Reid v. SuperShuttle Int'l, Inc.*,
   No. 08-cv-4854 (JG)(VVP), 2012 WL 3288816
   (E.D.N.Y. Aug. 10, 2012) ................................................................................................29

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015).............................................................................................34

*Sanders v. CJS Sols. Grp., LLC*,
   No. 17 CIV 3809 (ER), 2018 WL 1116017
   (S.D.N.Y. Feb. 28, 2018)..................................................................................................11

*TBK Partners, Ltd. v. Western Union Corp.*,
   675 F.2d 456 (2d Cir. 1982).............................................................................................24

*US Airways, Inc. v. Sabre Holdings Corp.*,
   105 F. Supp. 3d 265 (S.D.N.Y. 2015)..............................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..........................................................................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................... *passim*

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)...............................................................................................19

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §1...........................................................................................................................................17
   §2...........................................................................................................................................17

**Page**

Federal Rules of Civil Procedure

Rule 23 ................................................................................................................ *passim*
Rule 23(a) ........................................................................................................... *passim*
Rule 23(a)(1) ............................................................................................................ 26
Rule 23(a)(2) ......................................................................................................27, 28
Rule 23(a)(2)(3) ........................................................................................................ 28
Rule 23(a)(3) ......................................................................................................29, 34
Rule 23(a)(4) ...................................................................................... 4, 29, 31, 33
Rule 23(a)(4)(g) ........................................................................................................ 33
Rule 23(b)(2) ....................................................................................................... *passim*
Rule 23(b)(3) ....................................................................................................... *passim*
Rule 23(c)(2)(B) .....................................................................................................2, 38
Rule 23(c)(2)(B)(v) ................................................................................................... 2
Rule 23(e) ................................................................................................................. 8
Rule 23(e)(1) ............................................................................................................. 9
Rule 23(e)(2) ....................................................................................................... *passim*
Rule 23(e)(2)(B) ...................................................................................................... 10
Rule 23(e)(2)(A) ...................................................................................................... 33
Rule 23(e)(2)(C)(ii) .............................................................................................20, 40
Rule 23(e)(2)(C)(iii) ................................................................................................ 20
Rule 23(e)(2)(C)(iv) ................................................................................................ 20
Rule 23(e)(2)(D) ...................................................................................................... 41
Rule 23(g) ............................................................................................................... 31

## SECONDARY AUTHORITIES

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014)
§13:15 ................................................................................................................ 19

## I.      INTRODUCTION

After 13 years of hard-fought litigation, the Rule 23(b)(3) Class Counsel ("Class Counsel"), on behalf the Rule 23(b)(3) Class Plaintiffs ("Class Plaintiffs") and Defendants have reached an historic settlement.  The settlement resolves Class Plaintiffs' claims for damages arising from the conduct challenged in Class Plaintiffs' Third Consolidated Amended Class Action Complaint. Class Plaintiffs now respectfully request this Court to preliminarily approve the proposed settlement and preliminarily certify a settlement class under Rules 23(a) and (b)(3).  The monetary settlement for the merchant class – as much as approximately $6.26 billion but no less than approximately $5.56 billion[1] – was negotiated at arm's length by highly experienced antitrust counsel with the assistance of two nationally recognized mediators who have mediated this case over the past decade.  The parties were fully informed of the significant litigation risks based on an extensive factual record, expert opinions and insights, and previously briefed and argued class, dispositive, and *Daubert* motions.

The settlement is on behalf of the following proposed Rule 23(b)(3) class (the "Settlement Class"):

> All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date, except that the Rule 23(b)(3) Settlement Class shall not include (a) the Dismissed Plaintiffs, (b) the United States government, (c) the named Defendants in this Action or their directors, officers, or members of their families, or (d) financial institutions that have issued Visa-Branded Cards or Mastercard-Branded Cards or acquired Visa-Branded Card transactions or Mastercard-Branded Card transactions at any time from January 1, 2004 to the Settlement Preliminary Approval Date.

---

[1]    This is the amount of the settlement as of September 7, 2018.  However, approximation is necessary because the potential future opt-out reduction is unknown and the settlement funds, which have continued to be held in escrow accounts since the prior settlement, continue to earn interest while related taxes and fees are paid from the funds.

Pursuant to the terms of the settlement and Rule 23(c)(2)(B)(v), all members of the Settlement Class have the right to opt out.

The settlement releases only claims arising out of or relating to conduct or acts that were alleged or raised or that could have been alleged or raised relating to the subject matter of this litigation. The Class Plaintiffs and each Settlement Class member receive the same benefit – a *pro rata* share of the monetary fund based on the interchange fees attributable to their transactions during the class period – and give up the same rights – releasing claims that have accrued or that accrue no later than five (5) years following the Court's approval of the settlement and the exhaustion of any appeals. The proposed Settlement Class is therefore completely cohesive and unified.

For the reasons stated below, Class Counsel respectfully suggest that the proposed Settlement Class and the proposed settlement should be preliminarily – and ultimately finally – approved by the Court. Class Plaintiffs have submitted forms of notice that comply with Rule 23(c)(2)(B) and a plan for the dissemination of notice that satisfies due process. Thus, notice of the proposed settlement in the form and manner proposed by Class Counsel should be issued to the Settlement Class members and a hearing to consider final approval and related dates should be set.

## II.    PROCEDURAL BACKGROUND

Class Plaintiffs and Defendants (the "Settling Parties") have reached an agreement to resolve this long and contentious litigation that provides billions of dollars in monetary relief to U.S. merchants who claim to have paid supra-competitive interchange fees as a result of Defendants' unlawful practices.

The first of more than 40 class complaints was filed in June 2005. Later that year, the Judicial Panel on Multidistrict Litigation consolidated all class cases, and seven similar individual cases before this Court. *Payment Card Interchange Fee & Merchant Discount Fee Antitrust Litig.*,

- 2 -

MDL 1720, ECF No. 70 (J.P.M.L. Oct. 19, 2005).  The Court appointed three firms as Co-Lead Counsel for both Rule 23(b)(2) and (b)(3) classes.  ECF No. 279.

Before the prior proposed settlement of this litigation in 2012, Class Counsel reviewed and analyzed documents from the 65 million pages produced by the parties and non-parties, participated in nearly 400 depositions, and served expert reports comprising nearly 2000 pages.  Declaration of K. Craig Wildfang in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Preliminary Approval of Settlement ("Wildfang Decl."), filed concurrently, ¶¶53, 57, 64-80.  Defendants' experts testified at their depositions for a total of 15 days, and Class Plaintiffs' and Individual Plaintiffs' experts were also deposed for a total of 15 days.  Wildfang Decl., ¶¶119, 121.  Class Plaintiffs filed a class certification motion and Defendants filed motions to dismiss and for summary judgment seeking to dismiss all of Class Plaintiffs' claims and to exclude Class Plaintiffs' experts.  Defendants contended, among other things: (1) interchange fees are pro-competitive and do not improperly restrain trade; (2) Class Plaintiffs' allegations must be judged under the rule of reason rather than the *per se* rule; (3) they cannot be properly charged with having conspired after the networks' respective IPOs; (4) those IPOs at a minimum cut short the damages period for each of the intra-network conspiracies; (5) Class Plaintiffs' damages claims are barred by the *Illinois Brick* doctrine; and (6) Visa's and Mastercard's other challenged rules are not anticompetitive.  *See, e.g.*, ECF Nos. 1172, 1179, 1880, 1495-2 and 1534.  The Court heard oral argument on those motions and the motions to exclude the opinions of the parties' principal experts.  The motions raised substantial risks but were not ruled on.

In 2012, the parties requested the Court's approval of a proposed settlement which included damages on behalf of a Rule 23(b)(3) class and injunctive relief on behalf of a Rule 23(b)(2) class.  Wildfang Decl., ¶¶153-154.  That settlement created two cash funds in connection with Rule

- 3 -

1473583_1

23(b)(3) class relief, which, after accounting for takedowns due to class member opt outs, totaled approximately $5.3 billion available to pay merchants' claims.[2]  Wildfang Decl., ¶153.  The Rule 23(b)(2) class portion of the prior settlement reformed certain of the network Defendants' rules, such as the no-surcharge rules challenged in this litigation.[3]  ECF No. 1656-2 at 2-3; Wildfang Decl., ¶153.  This Court granted final approval to the prior settlement, over the objections of a number of merchants, including some of the former class representatives.  ECF Nos. 1745, 6124.  The objections focused on the Rule 23(b)(2) injunctive relief class settlement.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 230-37 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) (hereinafter, "*Payment Card 2013*").

The Court of Appeals reversed, however, on June 30, 2016. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016).  It held that the Rule 23(b)(2) class merchants were not adequately represented under Rule 23(a)(4) because the two settlement classes – the Rule 23(b)(3) opt-out damages-only class and a separate Rule 23(b)(2) non-opt-out injunctive relief class – had conflicting interests and therefore could not be represented by the same counsel.  *Id*. at 236.  It also expressed concern with the Rule 23(b)(2) settlement release, including the lack of an end date on the release.  *Id*. at 239-40.  The Second Circuit did not criticize the settlement amount for members of the Rule 23(b)(3) damages class.

---

[2]   At the time of the prior settlement, based on data from Defendants, Class Counsel estimated that the total of the two cash funds could equal as much as $7.25 billion.  The actual amount that was available to pay merchants' claims fell short of this estimate, however, after one of the cash funds was taken down by 25 percent to account for opt outs and the other totaled less than initial estimates because of both opt outs and a somewhat lower than expected total Visa and Mastercard transaction volume during the eight-month period covered by the prior settlement agreement. Definitive Class Settlement Agreement, ¶¶12-13, 18-20.

[3]   Those rules changes remain in place today.  Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

On November 30, 2016, after remand from the Court of Appeals, this Court appointed the same three firms as interim Class Counsel for only the proposed damages class seeking certification under Rule 23(b)(3).  ECF No. 6754 at 1.  In the same order, the Court appointed a separate group of counsel to represent a proposed injunctive relief class seeking certification under Rule 23(b)(2).  *Id*. The Court found that Class Counsel were "eminently qualified" and had demonstrated that they were "in the best position to continue to represent the interests in the Damages Class" through their cooperative work "with the court and with the other non-lead counsel."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB)(JO), 2016 WL 8138988, at *2 (E.D.N.Y. Nov. 30, 2016). It described Class Counsel as "an array of experienced attorneys who have achieved successful results for class clients."[4]  *Id.*  The Court further remarked that while the Court of Appeals had found a conflict of interest existed between the Rule 23(b)(3) and (b)(2) classes, the "appellate court did not suggest that their [Interim Class Counsel's] representation was in any way inadequate or that the lawyers from that group were anything other than eminently qualified to continue in a leadership role."[5]  *Id.*

Immediately upon being appointed as interim co-lead counsel, Class Counsel resumed intensive litigation activities.  Indeed, a new round of depositions negotiated by the merchants who had opted out of the earlier settlement began the day after the Court's November 30, 2016 order. These new litigation activities included reviewing and analyzing more than 5 million additional pages of documents from among Defendants' productions, producing more than 500,000 pages of

---

[4]   *See* n.14 *infra* citing supporting materials describing the experience and qualifications of Class Counsel.

[5]   The Court of Appeals explained that "[w]e expressly do not impugn the motives or acts of class counsel. Nonetheless, class counsel was charged with an inequitable task."  *Payment Card*, 827 F.3d at 234.

1473583_1

documents from Class Plaintiffs, participating in 147 depositions of defense witnesses and 32 depositions of third-party witnesses, and defending 4 Class Plaintiff depositions.  Wildfang Decl., ¶¶207, 210-223.  Class Counsel has also worked closely with economic experts on class and merits expert reports.

Starting in February 2017, Class Counsel began the process of negotiating a new potential settlement agreement with Defendants.  With the assistance of 2 experienced mediators, Hon. Edward Infante and Prof. Eric Greene, both of whom already had extensive knowledge of the litigation from their past mediation efforts, Class Counsel conducted 12 in-person mediation sessions with Defendants and held numerous telephonic meetings with Defendants and with one or both of the mediators.  *See* Declaration of Hon. Edward A. Infante in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Preliminary Approval of Settlement ("Infante Decl."), filed concurrently, ¶¶12-27; Declaration of Eric Green in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Preliminary Approval of Settlement ("Green Decl."), filed concurrently, ¶9; Wildfang Decl., ¶235.  Rule 23(b)(2) Class Counsel did not participate in these negotiations.  Infante Decl., ¶30; Green Decl., ¶12; Wildfang Decl., ¶234.  This process permitted the parties to make substantial progress toward a new settlement, but certain issues remained unresolved.  These issues were proposed to be resolved by the issuance of a mediators' proposal on June 2, 2018. Infante Decl., ¶26; Green Decl., ¶11; Wildfang Decl., ¶238.  All parties agreed to the mediators' proposal and reached an agreement in principle during an in-person meeting on June 7, 2018, which, after additional negotiation, was reduced to a written definitive settlement agreement dated September 17, 2018.  Infante Decl., ¶¶26-27; Green Decl., ¶11; Wildfang Decl., ¶239.

The Superseding and Amended Definitive Class Settlement Agreement ("Superseding and Amended Class Settlement Agreement") creates the largest ever class settlement fund in an antitrust action, and is subject to none of the problems that led the Second Circuit to reject the previous Rule 23(b)(2) injunctive relief class settlement. Defendants have agreed to contribute the entire remainder of the prior settlement funds and to add $900 million in additional funds, subject to reductions for additional opt outs capped at $700 million, to pay merchants' claims in this settlement.[6] The settlement fund will thus be as large as approximately $6.26 billion but no less than approximately $5.56 billion, larger than the amount of the prior $5.3 billion settlement (the amount of the settlement fund after reduction to account for opt outs). The settlement is not contingent on the resolution of the Rule 23(b)(2) class action, or any other action, and expressly does not release a class member's continued participation, as a named representative or non-representative class member, in the injunctive relief claims in the Rule 23(b)(2) class action.[7] The Settlement Class is limited to merchants that accepted Visa-Branded Cards and Mastercard-Branded Cards between January 1, 2004 and the Settlement Preliminary Approval Date and Settlement Class members have full opt out rights, permitting those merchants to pursue individual actions if they so choose.[8] Those that stay in the Settlement Class also retain rights as a class member of the 23(b)(2) injunctive relief class. Moreover, only those claims arising out of or relating to conduct or acts that were alleged or raised or that could have been alleged or raised relating to the subject matter of this action are released.[9] Finally, the release is limited in duration, terminating and permitting merchants to again

---

[6]   Superseding and Amended Class Settlement Agreement, ¶¶13-14, 22.

[7]   *Id*., ¶34.

[8]   *Id*., ¶4.

[9]   *Id*., ¶31.

challenge the conduct released in this case for claims that start accruing five years after the "Settlement Final Date" – *i.e.*, the date when the settlement becomes final after any appeal.[10]

## III.    THE COURT WILL LIKELY GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

Preliminary approval is the first of a two-step process leading to final approval of a class action settlement. *Parker v. City of New York*, No. 15 CV 6733 (CLP), 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017). The second step is a fairness hearing to confirm whether the proposed settlement is fair, reasonable and adequate pursuant to Rule 23(e). *See id.*; *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 130-31 (E.D.N.Y. 2015).

"[T]o grant preliminary approval, the court need only determine that there is what might be termed 'probable cause' to submit the [proposed settlement] to class members and hold a full-scale hearing as to its fairness." *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD)(CLP), 2018 WL 2411220, at *8 (E.D.N.Y. May 29, 2018) (quotations omitted); *Parker*, 2017 WL 6375736, at *4. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval." *Dover*, 2018 WL 2411220, at *8; *Berkson*, 147 F. Supp. 3d at 130 (same). This step is a "preliminary" review of the fairness of the settlement. *See Berkson*, 147 F. Supp. 3d at 130.

---

[10]    *Id.*, ¶31.

Although not required for preliminary approval, "the factors that will be relevant to final approval can be instructive in considering a motion for preliminary approval." *Dover*, 2018 WL 2411220, at *9; *Parker*, 2017 WL 6375736, at *5.  These factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[11]  In applying these factors, "not every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016).  These factors are analyzed in the following sections except for the reaction of the class which cannot be considered on preliminary approval because it follows notice and thus cannot be evaluated until final approval briefing and a fairness hearing.

A preliminary review of the *Grinnell* factors and the requirements of Rule 23(e)(2) demonstrates not only that the settlement falls within the range of reasonableness, but also that the

---

[11]   Class Plaintiffs note that effective in December 2018, Rule 23(e)(1) will be amended to identify issues a court should consider before issuing notice to the class about the settlement, and 23(e)(2) will be amended to include a list of factors to be considered on final approval.  These amendments largely mirror current practice under applicable law, and while they have no immediate bearing on the present motion for preliminary approval, Class Plaintiffs will identify any instance where a forthcoming amendment may be implicated and discuss it to the extent appropriate.  Specifically, in the context of preliminary approval, the amendments will direct future settling class counsel to provide the court with information sufficient to enable the court to determine that notice is justified because the court will likely be able to approve the settlement under 23(e)(2) and that certification for settlement is warranted (indeed, this is the basic analysis that has been applied in this jurisdiction for many years). Fed. R. Civ. P. 23(e)(1) (am. 2018).  The proposed settlement here fully meets this standard.

- 9 -

Court is likely to grant final approval of the settlement.  The Court should therefore authorize notice to the proposed Settlement Class.

A.     **The Settlement Is Presumptively Fair Because It Resulted from Arm's Length Negotiations by Experienced and Informed Counsel**

When considering approval of a class action settlement, the Court must "determine if the settlement was achieved through arm's length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Parker*, 2017 WL 6375736, at \*5 (quotation marks omitted).[12]  A proposed settlement resulting from arm's length negotiations between experienced, capable counsel at an advanced stage of the case is entitled to a presumption of fairness. *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02576 (SRU), 2017 WL 4278788, at \*3 (D. Conn. Sept. 19, 2017).[13]

Class Counsel are highly experienced in antitrust law, class actions, and the payment card industry itself.[14]  In this context, the opinions of these experienced and informed counsel supporting settlement are entitled to considerable weight.  *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (finding settlement procedurally fair where due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"); *Currency Conversion*, 263

---

[12]   This factor will also be expressly included in the Rule 23 amendments for final approval as Rule 23(e)(2)(B): "The proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).

[13]   *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.").

[14]   The experience and qualifications of Class Counsel are described in the Memorandum of Law in Support of Certain Class Plaintiffs and Certain Non-Class Plaintiffs to Consolidate, Coordinate, Appoint Lead and Liaison Counsel and Other Relief, ECF No. 27-3, in Co-Lead Counsel's Application for Continued Leadership of the Rule 23(b)(3) Class, ECF No. 6665, and in the supporting materials accompanying those memoranda of law.

- 10 -

1473583_1

F.R.D. at 122 (citing the "extensive" class action experience of counsel). The mediators' participation further ensures that negotiations were non-collusive and conducted at arm's length. *See Sanders v. CJS Sols. Grp., LLC*, No. 17 CIV 3809 (ER), 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement."); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

This settlement demonstrates all the hallmarks of an arm's length agreement. Class Counsel had extensive knowledge of the case record and the payment-card industry, resulting from many years of hard-fought litigation and time spent lobbying Congress and assisting the Department of Justice. *Meredith*, 87 F. Supp. 3d at 662; Wildfang Decl., ¶¶21-143, 198-228. The new settlement negotiations between Class Plaintiffs and Defendants were contentious and lasted over a year, all while discovery was continuing. Infante Decl., ¶¶13-27, 31; Green Decl., ¶¶9-13; Wildfang Decl., ¶¶234-239. Class Plaintiffs insisted on safeguards in the negotiation process and in the settlement itself to cure the conflict issues previously identified by the Court of Appeals. Infante Decl., ¶30; Green Decl., ¶12; Wildfang Decl., ¶¶234, 237. Specifically, the Rule 23(b)(2) Plaintiffs were not included in any aspect of these negotiations. Infante Decl., ¶30; Green Decl., ¶12; Wildfang Decl., ¶234. Further, this Rule 23(b)(3) damages settlement is not contingent upon a resolution of the (b)(2) injunctive relief claims. Infante Decl., ¶30; Green Decl., ¶12; Wildfang Decl., ¶234. Class Plaintiffs also made sure that the injunctive relief claims of the Rule 23(b)(2) Class Plaintiffs in *Barry's Cut Rate Stores, Inc., et. al. v. Visa, Inc., et al.*, MDL No. 1720, No. 05-md-01720-MKB-JO (E.D.N.Y.) ("*Barry's*") are explicitly excluded from, and unaffected by, the release and remain to be

resolved in the *Barry's* case, that the Settlement Class members retain their rights as prospective class members in *Barry's*, that the release of claims is of limited duration, and that only those claims arising out of or relating to conduct or acts that were alleged or raised or that could have been alleged or raised relating to the subject matter of the litigation are released. Superseding and Amended Class Settlement Agreement, ¶¶31, 34; Wildfang Decl., ¶237. In short, this settlement was the product of extensive and hard-fought litigation occurring alongside equally intensive negotiations, in a framework which fully respected the conflict issues noted by the Court of Appeals. The lengthy mediation culminated in a mediators' proposal which formed the basis for this settlement agreement. These extensive negotiations facilitated by experienced mediators bolster the settlement's presumption of fairness. *See Aggrenox Antitrust Litig.*, 2017 WL 4278788, at *3.

This factor weighs in favor of Court approval of the proposed settlement.

**B.    The *Grinnell* Factors and Rule 23(e)(2) Support Granting Preliminary Approval**

The proposed settlement provides a gross monetary fund of as much as approximately $6.26 billion but no less than approximately $5.56 billion from which members of the Settlement Class may receive a *pro rata* share to resolve their antitrust claims.[15] This settlement is similar to numerous other antitrust damages class settlements that have received final approval over decades of antitrust litigation.[16] Like those prior litigants, Class Plaintiffs here decided to settle their claims in favor of the certainty of substantial monetary recovery to be distributed *pro rata* to the Settlement

---

[15]   For purposes of this settlement, the opt-outs that reduced the dollar amount of the 2012 settlement are effectively removed from the takedown calculation in this settlement, because no takedown payment is due unless and until opt outs total at least 15%. *See* Superseding and Amended Class Settlement Agreement, ¶22.

[16]   *See, e.g.*, *In re Elec. Books Antitrust Litig.*, 639 F. App'x 724, 727 (2d Cir. 2016); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005); *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2018 WL 3439454 (E.D. Pa. July 17, 2018); *Dial Corp.*, 317 F.R.D. 426; *Currency Conversion*, 263 F.R.D. 110.

Class rather than suffering the risk of delay, and the possibility of no recovery at all if their claims were litigated through summary judgment, trial and post-trial proceedings.

### 1.     Further Litigation Would Be Protracted and Risky

The likelihood that further litigation of this case would be protracted and risky supports preliminary approval of the settlement.  *See Wal-Mart*, 396 F.3d at 118 ("Federal antitrust cases are complicated, lengthy, and bitterly fought."); *In re Vitamin C Antitrust Litig.*, No. 06-md-1738 (BMC)(JO), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (same); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (noting that antitrust cases are "generally complex, expensive and lengthy" and that antitrust class actions in particular "have a well-deserved reputation as being most complex").  It is hard to imagine a case that better satisfies this *Grinnell* factor and justifies approval of the settlement.  This case has already consumed enormous resources of the parties and the courts for more than 13 years.

Discovery in this case has been conducted over more than a decade.  From the time discovery commenced until this new settlement, more than a hundred million pages of documents have been produced; Class Plaintiffs have reviewed and analyzed more than 65 million pages of documents[17] and participated in more than 550 depositions; and the parties exchanged more than 17 expert reports, consisting of thousands of pages of analyses and back-up materials.  Wildfang Decl., ¶¶53, 57, 64-70, 115-121, 207, 210-211.

Every stage of this litigation has been fiercely contested. Motions for class certification, summary judgment and exclusion of expert opinions have been briefed and argued, although not

---

[17]   Although more than 100 million additional pages of documents were produced in the second wave of discovery, the advent of new software technology, among other things, enabled Class Plaintiffs to identify duplicative documents and to perform targeted assisted reviews which reduced the number of pages of documents reviewed to under 10 million.

decided.  Wildfang Decl., ¶¶84-88, 106-111, 123-138.  These motions would have to be briefed and argued again, given the significant legal and factual developments, and additional discovery since their original briefing and argument over six years ago.  Wildfang Decl., ¶241.  Should Class Plaintiffs fail to win certification for a litigation class, Defendants' risks would be dramatically reduced, and their incentives to settle the case for the amount of monetary relief contained in the proposed settlement would substantially diminish.

Assuming that a litigation class were certified and that Class Plaintiffs' claims survive in whole or in part, the renewal of dispositive and exclusionary motions and trial would also pose significant risks.  The outcome of a trial involving complex facts and untested legal theories is invariably unpredictable.  Given the complexity of the factual and legal issues here, the number of defendants, the conflicting expert testimony, the extraordinarily voluminous discovery record in this case, and the stakes at issue, the damages trial could last months. Post-trial motions followed by appeals are inevitable, delaying resolution by many more years.

The passage of time also increases the chance that a change in law can potentially impact a case, as has already occurred in this case.  The Supreme Court's recent decision affirming reversal of a trial verdict against American Express concerning its "antisteering" rules in *Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (June 25, 2018) (*American Express*), represents the first time the Supreme Court has analyzed the conduct of a credit card network towards both its cardholders and merchants as a single so-called two-sided market, not as two separate markets (cardholders and merchants). For the first time, the Court applied a market analysis where changes on one side of the platform, say merchant fees, were analyzed for their impact on the other side of the platform, cardholder products. *See generally id.* at 2285-88.  Although the use of a "two-sided market" analysis in this case continues to be highly disputed by the parties, the threat of applying *American Express* to any trial in

this case raises many significant questions of first impression, substantially increasing the risks to all parties and necessarily requiring significant additional expenditure of the parties' and the court's resources.

The *American Express* decision also illustrates how a plaintiff can prevail on a complex antitrust claim only to see that favorable trial result overturned after years of appellate and Supreme Court review.[18] *See Wal-Mart*, 396 F.3d at 118 ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). The uncertainty arising from the risk of a lengthy trial followed by years of the appellate review process in antitrust cases favors approval of the settlement. *Dial Corp.*, 317 F.R.D. at 431 ("The Settlement obviates the need for a trial, calculation of damages, and any post-verdict appeals" and thus this factor "weighs strongly in favor of approval."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003).

In evaluating the prior proposed settlement in this case, this Court found that the monetary settlement secured a "significant" damage award "for a class of merchants that would face a substantial likelihood of securing no relief at all if this case were to proceed." *Payment Card 2013*, 986 F. Supp. 2d at 218. The settlement proposed to be preliminarily approved by this motion achieves the same, or likely greater, benefit in the face of even greater risks now.

Accordingly, this factor weighs heavily in favor of preliminary approval.

---

[18]   The time lapse in *American Express* between the District Court's Final Order (April 30, 2015) and the U.S. Supreme Court's decision (June 25, 2018) was over 3 years.

- 15 -

## 2. The Settling Parties Are Well-Informed about the Strengths and Weaknesses of Their Claims at This Advanced Stage

In approving the prior proposed settlement almost five years ago, the Court found that this case had been "extensively litigated," giving the parties a "more than adequate basis for assessing the claims." *Payment Card 2013*, 986 F. Supp. 2d at 215, 224. That is even more true now. In this case, it is unquestionable that "the parties ha[ve] adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiffs' claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2009 WL 3077396, at *8 (E.D.N.Y. Sept. 25, 2009). As detailed above, an enormous discovery record has been compiled. The Settling Parties also previously briefed and argued class certification, summary judgment and *Daubert* motions. Following the appeal of the prior settlement and remand to this Court, the Court approved the restructuring of the class representation to eliminate the concerns raised by the Court of Appeals, and the parties participated in more fact discovery, pursued additional motion practice amending the Complaint and engaged in lengthy, hard-nosed mediation and settlement negotiations.

Accordingly, this factor weighs heavily in favor of preliminary approval. *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015) (factor satisfied where litigants conducted significant discovery prior to entering negotiations, conducting in-depth interviews of dozens of class members, reviewing extensive document production, and participating in mediation and extensive settlement negotiations); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 382 (S.D.N.Y. 2013) (factor satisfied where parties completed extensive discovery that included

- 16 -

millions of pages of documents and depositions of key witnesses on both sides); *see also*, Infante Decl., ¶¶31-32; Green Decl., ¶13.

### 3. The Settlement Amount Is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation

The proposed settlement for the Settlement Class will total as much as approximately $6.26 billion but not less than approximately $5.56 billion, placing it easily within the possible range of approval as a "fair, reasonable, and adequate" settlement of the Settlement Class's claims in light of the "complexity, expense and likely duration of the litigation" and the "risks of establishing liability . . . [and] damages." *See Grinnell*, 495 F.2d at 463; *see also* Infante Decl., ¶¶31-32; Green Decl., ¶13. As with the prior settlement, any trial of Class Plaintiffs' claims will involve difficult proof issues. For example, if the Court were to determine that the Class Plaintiffs' Sherman Act Section 1 claims must be analyzed under the "rule of reason" to establish liability, then they would have to prove that Defendants' default interchange rates and anti-steering conduct caused anticompetitive harm that outweighs any claimed pro-competitive benefits. While Class Plaintiffs disagree with Dr. Alan Sykes, the Court's independent expert retained in connection with consideration of the prior settlement, he opined, in his August 28, 2013 memorandum to Judge Gleeson, that the Class would "face considerable difficulty" in making this proof and, therefore, "face a substantial probability of securing little to no relief at the conclusion of trial." ECF No. 5965 at 3.

In addition, developments since the prior class settlement may further complicate this proof. The possible application of the "two-sided market" analysis in the recent *American Express* decision to the claims in this case would undoubtedly complicate proof that Defendants exercised illegal market power and that the core conduct alleged constituted unreasonable restraints of trade under Section 1 of the Sherman Act. Class Plaintiffs' monopolization claims, under Sherman Act Section

- 17 -

2, face similar risks in proving liability.  Moreover, the realities of the payment card market since this litigation began – *e.g.*, Mastercard and Visa operating post-IPO's, the Visa and Mastercard rule changes as result of the prior settlement (which remain in effect), and the federal government's regulation of debit interchange rates under the Durbin Amendment – might add complications to Class Plaintiffs' case.

In reviewing the risks, in finally approving the prior settlement, including the issues raised in Defendants' previous motions for summary judgment and to exclude Class Plaintiffs' experts, this Court found that the amount of the prior settlement (approximately $5.3 billion after takedown payments for opt-outs) was reasonable, and the Second Circuit did not criticize that amount. *See Payment Card 2013*, 986 F. Supp. 2d at 229-30. Considering the potential additional risks now faced in in proving liability and damages, this multi-billion dollar settlement, which guarantees a higher settlement amount, is reasonable.  *See, e.g.*, *Wal-Mart*, 396 F.3d at 119 (describing $3 billion settlement); *see also* Infante Decl., ¶¶31-32; Green Decl., ¶13; Wildfang Decl., ¶¶240-241, 243.

Further, assuming the Settlement Class can prove liability, the settlement is also reasonable in view of the vast disparity in the parties' damages calculations. For example, as reflected in certain of the parties' merits experts' reports (exchanged in 2009 and 2010), for the period of 2004 to 2008 alone,[19] the parties' damages estimates range from, on the one hand, Defendants' expert's estimation of damages for that shorter period at zero or no more than $661 million (attributable to Defendants' point-of-sale restriction on surcharging only) to, on the other hand, Class Plaintiffs' pre-trebling damages for that shorter period of more than a hundred billion dollars (the largest possible estimate

---

[19]   Although Class Plaintiffs believe that the alleged damages have continued to accrue since then, when the parties agreed in principle to settle this case, discovery was ongoing with expert reports not due until later under the case scheduling order.  However, the previous damages estimates reflect the wide disparity in damages estimates that is likely to continue.

- 18 -

of damages attributable to all of Defendants' unlawful conduct). *Compare* Expert Report of Robert H. Topel at 62-63 (attached as SUFEX304 to Marth Declaration in Support of ECF. No. 1538, Class Ps' MSJ) *with* Report of Alan S. Frankel at 155 & Table 9.10 (SUFEX240-0155). *See Payment Card 2013*, 986 F. Supp. 2d at 229-30 (finding that the prior settlement fund of approximately $7.25 billion (before takedown for opt-outs and based on estimating the amount of the interchange fund) which was approximately 2.5% of total interchange paid by class members during the class period, was reasonable in light of the risks). As was evidenced by the parties' previous expert discovery, the Settling Parties hotly contest the impact and damages theories and methodologies that produce damages estimates ranging from hundreds of millions to more than a hundred billion – a dispute that would have continued through revised damages estimates and any trial. This damages disparity confirms the reasonableness of this settlement. *See, e.g.*, *Visa Check*, 297 F. Supp. 2d 503 (approving $3 billion settlement where plaintiffs' pre-trebling damages estimates were between $37 and $102 billion); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (class action settlement approved as fair, reasonable and adequate even where "it is not disputed that the recovery will be only a negligible percentage of the losses suffered by the class") *accord* 4 William B. Rubenstein, *Newberg on Class Actions* §13:15 (5th ed. 2014). Viewing the billions in relief against the risks associated with continuing litigation (as discussed in §III.B.1, *supra*), this settlement is within the range of reasonableness warranting approval. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 439 (E.D.N.Y. 2014) (describing how the case stands out in "size, duration, [and] complexity"); *see also* Infante Decl., ¶¶31-32; Green Decl., ¶13; Wildfang Decl., ¶¶240-241, 243.

- 19 -

It is also noteworthy that this settlement fund was obtained without the benefit of a prior government investigation, much less any indictments.[20] *See Currency Conversion*, 263 F.R.D. at 123 (noting a settlement of $336 million and injunctive relief "represent a[n] extraordinarily significant recovery" in light of the fact that "Plaintiffs did not have the benefit of a Government investigation").

The forthcoming December 2018 amendments to Rule 23(e)(2), governing *final* approval, enumerate three additional factors that a court should consider when examining whether the settlement relief is adequate: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any so-called "side agreements." *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (am. 2018).  While none of these factors govern the present motion for *preliminary* approval, the first issue is discussed in greater detail at Section V, *infra*. Class Plaintiffs briefly address the second factor (attorneys' fees) in this section.[21]

Class Counsel will request an award of attorneys' fees and litigation expenses consistent with the request made, and approved by the Court, in the prior settlement.  Class Counsel will seek an attorneys' fee award as a percentage of the settlement fund, not to exceed 10%, and will submit lodestar information as a cross-check on the reasonableness of the requested fee award.  Class Counsel will suggest that the Court utilize the same methodology it used to award attorneys' fees under the previously proposed settlement.

---

[20]   To the contrary, the government benefited from Class Counsel's efforts in this case by obtaining access to Class Counsel's work-product, which helped precipitate the networks' consent decree with the Department of Justice.  *See Payment Card*, 991 F. Supp. 2d at 442; Wildfang Decl., ¶¶97-101; ECF No. 1235. Class Counsel also worked toward the elimination of no-surcharge statutes across the country, and passage of the Durbin Amendment, which removed discounting restrictions at the network level – a significant and lasting legislative benefit to merchants.  Wildfang Decl., ¶¶90-93, 193-195.

[21]   The third factor is inapplicable as there are no such agreements.

While not required for preliminary approval purposes, Class Counsel also note that they will seek service awards, not to exceed $250,000 for any of the eight Class Plaintiffs for their important contributions to this litigation, including dedicating substantial time to this case. These Class Plaintiffs have not only responsibly discharged their typical litigation obligations, but have been a driving force behind the case. They have spoken out to the Court, Congress, the media, and the public on behalf of merchants. Class Counsel will present this request in the same manner as with the prior settlement, and further note that the Court previously granted such awards, ranging in amount from $50,000 to $200,000. *See* ECF No. 6395, Order on Class Plaintiffs' Notice of Motion and Motion for Class Representative Service Awards.

### 4. Defendants' Ability to Withstand a Greater Judgment Does Not Weigh Against Settlement

The next *Grinnell* factor is whether a defendant can withstand a greater judgment. Defendants could withstand a greater judgment, but this factor alone provides no basis for rejecting a settlement. As the Court recognized in approving the prior proposed settlement, this factor is but one factor and it must be weighed against the other *Grinnell* factors. *Payment Card 2013*, 986 F. Supp. 2d at 229, 241.

The same analysis applies here. While virtually no defendant would be able withstand a judgment of a treble damages award amounting to hundreds of billions of dollars, Defendants could pay a greater settlement amount. But the ability to possibly pay more is not the standard by which settlements are assessed. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) ("A defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.") (quotation marks omitted); *Meredith*, 87 F. Supp. 3d at 665 ("A defendant is not required to empty its coffers before a settlement can be found adequate.") (quotation marks omitted).

- 21 -

As explained above, the potential risks, an assessment of the strength of the claims and defenses, the possible complications that may arise from future changed circumstances, and the vigorous negotiation at arm's length on behalf of the class are all additional factors that place the amount of the recovery in richer context. When balancing all of these factors, in particular, the litigation risks, courts have approved settlements that represent small fractions of the anticipated total losses or harm. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Accordingly, this factor does not impede the Court's ability to grant preliminary approval of this settlement, which otherwise readily satisfies the Rule 23(e)(2) final approval standard that it be fair, reasonable and adequate.

### 5.    The Release Terms Are Tailored to the Settled Claims

In pertinent part, Settlement Class members release all claims they:

> "ever had, now ha[ve], or hereafter can, shall, or may have and that have accrued as of the Settlement Preliminary Approval Date or accrue no later than five years after the Settlement Final Date arising out of or relating to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(3) Settlement Class Released Party that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act."[22]

For those who do not opt-out, this means that the settlement will resolve and release any claims for relief *except for the injunctive relief sought in the Barry's action* (as discussed below) by merchants against Visa, Mastercard, or the other Defendants arising out of or relating to conduct or

---

[22]    Superseding and Amended Class Settlement Agreement, ¶31.

- 22 -

acts that were alleged or raised or that could have been alleged or raised relating to the subject matter of the lawsuit.[23]  In particular, claims based on interchange fees, network or merchant fees, no-surcharge rules, no-discounting rules, honor-all-cards rules, and certain other rules, including any continuing or future rules that are substantially similar to the above-mentioned rules, are released.[24]

The release applies only to merchants who accepted Visa-Branded Cards or Mastercard-Branded Cards between January 1, 2004 and the Settlement Preliminary Approval Date.[25] It does not apply to future merchants or to current or out-of-business merchants who elect to opt out. Membership in this Settlement Class is thus fixed and finite.

Moreover, the release is limited in duration.  The release will bar claims that have accrued within five years following the Court's approval of the settlement and the exhaustion of all appeals.[26] *See US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 279 (S.D.N.Y. 2015) (finding that a settlement agreement releasing antitrust claims for a limited period of time (in that case seven years) is consistent with public policy).  However, the Settlement Class members may bring claims that accrue after that five year period has elapsed.

Finally, the release does not bar the injunctive relief claims asserted in the pending proposed Rule 23(b)(2) class action in *Barry's*.  Nothing in the release affects in any way the scope of injunctive relief which the *Barry's* Plaintiffs and proposed class can seek.  And, as to all such claims for injunctive relief in the *Barry's* action, merchants will retain all rights pursuant to Rule 23 of the Federal Rules of Civil Procedure which they have as a named representative plaintiff or absent class

---

[23]   *Id.*, ¶34.

[24]   *Id.*, ¶31.

[25]   *Id.*, ¶4.

[26]   *Id.*, ¶31.

member in the *Barry's* action, except that merchants electing to remain in the Settlement Class will release their right to initiate a new and separate action until five years after the Court's approval of the settlement and exhaustion of all appeals.[27]

In sum, the release here extinguishes claims for a defined period of time only for those who are afforded the right to recover from the settlement fund. The release here does not immunize Defendants from future liability for their conduct.  The release is therefore consistent with typical class action releases that "achieve a comprehensive settlement that [will] prevent relitigation of settled questions at the core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *see also In re Literary Works in Electronic Databases Copyright Litig.,* 654 F.3d 242, 247-48 (2d Cir. 2011) ("Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle."); *Wal-Mart,* 396 F. 3d at 106 ("Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." A settlement can release "claims that were or could have been pled in exchange for settlement relief." *Wal-Mart*, 396 F.3d at 106; *see also Literary Works*, 654 F.3d at 247 (same).  Claims that were or could have been alleged arise out of the "identical factual predicate" as the settled conduct. *Wal-Mart*, 396 F.3d at 106; *see also Literary Works*, 654 F.3d at 248. Finally, the parties agreed that the release extends to claims as far as, but only as far as, federal law permits.[28]

---

[27]  *Id.*, ¶¶31, 34.

[28]  *Id.*, ¶31(a) ("For avoidance of doubt, this release shall extend to, but only to, the fullest extent permitted by federal law.").

- 24 -

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Pursuant to Rules 23(a) and (b)(3), Class Plaintiffs respectfully request certification for settlement purposes of a class consisting of all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date, except that the Rule 23(b)(3) Settlement Class shall not include (a) the Dismissed Plaintiffs, (b) the United States government, (c) the named Defendants in this Action or their directors, officers, or members of their families, or (d) financial institutions that have issued Visa-Branded Cards or Mastercard-Branded Cards or acquired Visa-Branded Card transactions or Mastercard-Branded Card transactions at any time from January 1, 2004 to the Settlement Preliminary Approval Date.[29]

A court asked to certify a class for settlement purposes only "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The court's focus instead is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id*. at 621; *see also In re American Int'l Group, Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012).  The court will engage in a rigorous analysis to ensure the Rule 23 requirements are met, *AIG*, 689 F.3d at 237-38, but in doing so the court "must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009).

As demonstrated below, the proposed Settlement Class is made up of a discrete and identifiable group of merchants who accepted Visa-Branded Cards or Mastercard-Branded Cards

---

[29]    *Id*., ¶4.

during a limited and defined time period, and it readily satisfies the certification requirements of Rules 23(a) and (b)(3).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

The proposed Settlement Class satisfies each of the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy. In reviewing the prior settlement, the Court of Appeals did not disturb the finding that the Rule 23(a) requirements were satisfied as to the (b)(3) damages class. *Payment Card*, 827 F.3d at 231. The proposed Settlement Class here is similarly fixed and finite and also should be certified because it satisfies all four of the Rule 23(a) standards.

### 1. The Membership of the Class Is so Numerous that Joinder Is Impracticable

The numerosity requirement simply looks at the size of the class to assess whether joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Precise quantification is not required and the court may "make some common sense assumptions" and "rely on reasonable inferences drawn from the available facts." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 351 (E.D.N.Y. 2006). The Settlement Class numbers substantially more than 10 million merchants dispersed throughout the country, such that joinder is impracticable and the numerosity requirement is readily met here. *See Payment Card*, 827 F.3d at 235 (recognizing that the class proposed in this case would include more than 10 million merchants); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992).

The members of the Settlement Class are ascertainable and identifiable. Class members are merchants that accepted Visa-Branded Cards or Mastercard-Branded Cards in the United States between January 1, 2004 and the Settlement Preliminary Approval Date. In addition, the members of the Settlement Class are identifiable from Defendants' records, and those of third parties as

- 26 -

demonstrated by Class Plaintiffs meeting this requirement when giving notice to the proposed settlement classes in connection with the prior settlement.

### 2.   There Are Questions of Law and Fact Common to All Class Members

The commonality requirement of Rule 23(a)(2) assesses whether class members seek to adjudicate the same questions of law and fact.  The standard may be met by a single common issue even though there may be some factual variances among the class members' grievances.  Common questions "are often present where there are legal or factual disputes pertaining to the defendants' 'unitary course of conduct,' since such questions tend to give rise to answers that are broadly applicable to the entire class."  *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014) (citations omitted).  It is enough "that the class members have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Class members seeking to recover damages from price-fixing schemes readily satisfy the commonality requirement "because price-fixing presumably subjects purchasers in the market to common harm."  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998); *see also In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *9 (S.D.N.Y. July 15, 2014) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a) (2).").

The proposed Settlement Class here seeks redress for claimed injuries from paying supra-competitive fees to accept Visa and Mastercard cards due to Defendants' uniform course of conduct. The challenged common course of Defendants' conduct includes Class Plaintiffs' allegations that:

- Visa, and its respective member banks, including the Bank Defendants, violated the law because they collectively fixed and set interchange fees.

1473583_1

- Mastercard and its respective member banks, including the Bank Defendants, violated the law because they collectively fixed and set interchange fees.

- Visa and its respective member banks, including the Bank Defendants, violated the law because they collectively imposed and enforced rules that limited merchants from steering their customers to other payment methods. Those rules include so-called no-surcharge rules, no-discounting rules, honor-all-cards rules, and certain other rules. Doing so insulated them from competitive pressure to lower the interchange fees.

- Mastercard and its respective member banks, including the Bank Defendants, violated the law because they collectively imposed and enforced rules that limited merchants from steering their customers to other payment methods. Those rules include so-called no-surcharge rules, no-discounting rules, honor-all-cards rules, and certain other rules. Doing so insulated them from competitive pressure to lower the interchange fees.

- Visa and Mastercard conspired together about some of the business practices challenged.

- Visa and its respective member banks continued in those activities despite the fact that Visa changed its corporate structure and became a publicly owned corporation after this case was filed.

- Mastercard and its respective member banks continued in those activities despite the fact that Mastercard changed its corporate structure and became a publicly owned corporation after this case was filed.

Because each Settlement Class member has an interest in establishing the challenged course of common conduct, including "the existence, scope and efficacy of an alleged antitrust conspiracy," the commonality requirement of Rule 23(a)(2) is met. *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 562 (S.D.N.Y. 2004).

### 3.    Class Plaintiffs' Claims Are Typical of Those of the Class

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Currency Conversion*, 224 F.R.D. at 562 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). This requirement is met where "the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest

- 28 -

of the class." *Reid v. SuperShuttle Int'l, Inc.*, No. 08-cv-4854 (JG)(VVP), 2012 WL 3288816, at *4 (E.D.N.Y. Aug. 10, 2012).

As discussed with respect to the commonality requirement above, all Settlement Class members are pursuing the same antitrust claims based on the same legal theories and seek redress for the overcharges allegedly caused by the same challenged course of conduct. Accordingly, the Rule 23(a)(3) typicality requirement is met. *See Playmobil*, 35 F. Supp. 2d at 241 ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants.").

### 4.  The Settlement Class Is Adequately and Fairly Represented

To meet the adequacy requirement of Rule 23(a)(4), the "proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Payment Card*, 827 F.3d at 231. Adequacy must be assessed independently of the fairness of the settlement itself, and instead look to whether the proposed settlement class is "sufficiently cohesive to warrant adjudication." *Id.* at 232. The standard looks to uncover any conflicts between the representatives and the class members, *Amchem*, 521 U.S. at 625, and to ferret out any "fundamental conflict that goes to the very heart of the litigation," *Payment Card*, 827 F.3d at 231.

In reviewing the earlier proposed settlement, the Court of Appeals found that the interests of the Rule 23(b)(2) class there warranted separate representation, and therefore concluded that the adequacy requirement was not met. *See id.* at 233. In particular, it found "[u]nitary representation of separate classes that claim distinct, competing, and conflicting relief" could not meet the adequacy of representation requirement. *Id.* at 234. The Second Circuit stated that members of the Rule 23(b)(2) class had an interest in maximizing injunctive relief to prevent future harm while

- 29 -

members of the Rule 23(b)(3) class had an interest in maximizing monetary relief to redress past harm. *See id.* at 233. According to the Court of Appeals, these divergent interests resulted in an essential allocation decision and that decision required separate, not single, representation for each class to maximize the benefits to both. *See id.* at 233-34.

By contrast, no such conflict arises here. This settlement solely resolves the claims of a Rule 23(b)(3) Settlement Class. All members of the proposed Settlement Class have a unified and unitary interest in seeking the maximum monetary relief. Importantly, a single Settlement Class under Rule 23(b)(3) is proposed. The tension arising from any type of competing interests that undermined adequacy in the earlier settlement is thus completely absent here. The Settlement Class is a "fixed and finite" Rule 23(b)(3) class, as was the prior unassailed Rule 23(b)(3) Settlement Class, and its membership simply covers a lengthier time period. The Settlement Class members are identifiable from the records held by the network Defendants and other Defendants and non-parties. The end date for being a Settlement Class member is the Settlement Preliminary Approval Date, meaning there are no future members or claimants included in the class. Each member is challenging the same unlawful conduct that caused each member to pay supra-competitive fees to accept Visa-Branded Cards and Mastercard-Branded Cards. Each member has the same interest in maximizing the recovery of funds from Defendants. Each member has a knowable quantity of transactions eligible to participate in the settlement fund. Each member (following final approval) who files a valid claim form will receive its *pro rata* share of the settlement based on the interchange fees attributable to the Settlement Class member's transactions during the class period. Put differently, there are no divided interests and no essential allocation decisions because each Settlement Class member receives the same benefit – a *pro rata* share of the monetary fund.

Each of these interests are the same for all Settlement Class members. This proposed Settlement Class is "sufficiently cohesive," *id.* at 232, and lacks antagonistic interests among the Class Plaintiffs and the Settlement Class members, thus resolving and eliminating the problems identified with the previous settlement. Because the Class Plaintiffs' interest in proving liability and damages is harmonious with those of the Settlement Class, the Rule 23(a)(4) adequacy requirement is readily satisfied here.

A related aspect of the adequacy standard is whether Class Counsel will adequately represent the Settlement Class, which was previously part of the Rule 23(a)(4) inquiry but is now separately controlled by Rule 23(g). This Rule requires that Class Counsel "fairly and adequately represent the interests of the class." When "determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261, 2016 WL 7009062, at *7 (S.D.N.Y. Nov. 30, 2016); *see also* Notes of Advisory Comm. on 2018 Amendments to Fed. R. Civ. P. 23 ("[T]he focus at this point is on the actual performance of counsel acting on behalf of the class."). Counsel are adequate where they are experienced in the relevant area of litigation, had represented the plaintiffs "diligently and ably" in the years the litigation was pending before the court, and secured a fair payment for the class. *See In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997).

Class Counsel here fully satisfy this adequacy test having represented Class Plaintiffs and the proposed Settlement Class diligently and ably since 2005. *See* Wildfang Decl. (describing in detail Class Counsel's work in this case). Prior to the 2012 proposed settlement, Class Counsel litigated the case through the close of discovery, retained and worked with multiple experts who submitted expert reports, briefed class certification and summary judgment, and resolved the claims through

- 31 -

settlement.  Wildfang Decl., ¶¶21-88, 102-143.  Following the appeal of the settlement, Class Counsel were reappointed as interim class counsel for a putative Rule 23(b)(3) class and continued to vigorously litigate the case in that capacity – filed an Amended Complaint to address factual and legal developments since the filing of the prior complaints, participating in a large number of additional depositions, and spending countless hours reviewing and analyzing newly produced documents.  Wildfang Decl., ¶¶196-228.  Class Counsel have unquestionably diligently and doggedly litigated this case, and have now secured a substantial settlement of a maximum of approximately $6.26 billion and a minimum of at least approximately $5.56 billion for the Settlement Class, which is the subject of this motion for preliminary approval.

When this Court (by Orenstein, M.J.) revisited the need to appoint interim class counsel for the Rule 23(b)(3) class following the appeal, it found Class Counsel had "demonstrated their ability to work cooperatively with the court and with the other non-lead counsel" and the record "demonstrates beyond any reasonable doubt that the negotiations were adversarial and conducted at arm's length by extremely capable counsel."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB)(JO), 2016 WL 8138988, at *2 (E.D.N.Y. Nov. 30, 2016) (order reappointing interim class counsel).  It described Class Counsel as "an array of experienced attorneys who have achieved successful results for class clients."[30]  *Id.*  It further remarked that while the Court of Appeals found a conflict of interest existed between the Rule 23(b)(3) and (b)(2) classes, the "appellate court did not suggest that their representation was in any way inadequate or that the lawyers from that group were anything other than eminently qualified to continue in a leadership role." *Id.*

---

[30]   *See* n.14, *supra*, citing supporting materials describing the experience and qualifications of Class Counsel.

The preceding analysis demonstrates that both Class Plaintiffs and Class Counsel meet the adequacy of representation standards set forth in Rules 23(a)(4) and 23(g),[31] and in consideration of all of the Rule 23(a) factors, they respectfully request that the Court find that certification of the proposed settlement class is warranted under Rule 23(a).

**B.      The Settlement Class Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying the requirements of Rule 23(a), the Settlement Class also satisfies the requirements of Rule 23(b)(3) that: (1) common issues predominate over individual issues; and (2) a class action is the superior method of adjudicating this controversy.  Fed. R. Civ. P. 23(b)(3).

**1.      Common Questions of Law and Fact Predominate**

Much like other aspects of the Rule 23 standards for certification, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *AIG*, 689 F.3d at 239 (same).  This analysis differs depending on whether the certification is sought for litigation or settlement purposes. In the former, the court must determine whether litigating the class claims will pose "intractable management problems," but in the latter these management concerns "drop out" because with settlement the "proposal is that there be no trial." *AIG*, 689 F.3d at 240.  In the settlement context, the predominance "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  As the Supreme Court has noted, in a settlement context "the predominance requirement of Rule 23(b)(3) is similar to the requirement

---

[31]   The 2018 amendments to Rule 23(e)(2) will also require an analysis of whether the class representatives and the class counsel have adequately represented the class for purposes of final settlement approval.  *See* Fed. R. Civ. P. 23(e)(2)(A) (am. 2018).  Since the amended rule addresses the same issues and concerns encompassed by Rules 23(a)(4) and (g), the same factors and analysis discussed above would also meet the 2018 amended rule addressing final approval.

- 33 -

of Rule 23(a)(3) that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id*. at n.18.  That is clearly the case here (*see* §§IV.A.2-IV.A.3, *supra*).

As a general matter, antitrust cases, like this one, are recognized by the courts as well suited for certification under Rule 23(b)(3) because they present issues that are capable of proof by generalized evidence that "are more substantial than the issues subject only to individualized proof."[32]  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *see also Cohen*, 262 F.R.D. at 159 (test readily met in cases where court's inquiry focuses on "the conduct of the defendant rather than that of individual plaintiffs, making it particularly susceptible to common, generalized proof").  For this reason, courts regularly certify antitrust claims under Rule 23(b)(3), in both litigation and settlement contexts, because issues concerning conspiracy and monopoly are shared by all class members and these will predominate in any test of liability.  *See, e.g.*, *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (finding predominant "all factual and legal questions that must be resolved to decide whether, assuming a plaintiff paid supracompetitive prices, that payment was caused by the defendants' antitrust violation and constitutes the kind of injury with which the antitrust laws are concerned"); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("In price-fixing cases, courts have regarded the existence of a conspiracy as the overriding issue even when the market involves diversity in products, marketing, and prices."); *Playmobil*, 35 F. Supp. 2d at 240 ("[P]rice-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("Courts repeatedly have held that the existence of a conspiracy is the predominant

---

[32]  Predominance, however, does not require all issues be common; it is enough that issues of liability predominate "even when there are some individualized damage issues."  *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *Roach*, 778 F.3d at 405.

issue in price fixing cases, warranting certification of the class even where significant individual issues are present.").

Here, the claims of Class Plaintiffs and the members of the proposed Settlement Class focus on the same operative set of facts and legal theories. The Settlement Class members were all allegedly harmed by Defendants' conduct which includes, *inter alia*, the collective fixing of interchange fees and adoption of rules that hindered any competitive pressure to reduce those fees. These issues are common to each and every member of the Settlement Class, and, as Class Plaintiffs' filings relating to the summary judgment motions show,[33] all Settlement Class members would have to prove liability for this anticompetitive conduct, including the existence of the conspiracies, through the use of generalized evidence. These issues go to the heart of the case concerning Defendants' conduct and antitrust liability and, therefore, they will predominate over other issues, such as individual damages amounts. In sum, the predominance requirement for a settlement class is clearly met here as "[a]ll plaintiffs [] claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage" because "[a]ll claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion." *AIG*, 689 F.3d at 240 (trial management issues like individual reliance (*i.e.*, fraud on the market presumption) should not be considered when determining whether the predominance requirement is met for a litigation class); *In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (in certifying a settlement class under Rule 23(b)(3), finding the predominance requirement is met without establishing antitrust impact because antitrust impact is a trial management issue).

---

[33]  *See, e.g.*, ECF Nos. 1494-1, 1494-3, 1495-4, 1543, 1545.

More specifically, as explained more fully during the earlier class certification briefing in this litigation, each of the following key elements of Class Plaintiffs' claims and issues in the case present questions common to the proposed Settlement Class and would be the subject of class-wide evidence:  (1) whether Defendants' conspired to fix and impose interchange fees, including whether Defendants require merchants to pay fixed interchange so as to fix the price of card acceptance services at supra-competitive levels;[34] (2) whether Class Plaintiffs' price-fixing claims would be analyzed under the *per se* rule or the rule of reason;[35] (3) whether the imposition of the anti-steering rules insulated fixed interchange fees from competitive pressure;[36] (4) the anticompetitive effects and procompetitive effects, if any, of Defendants' conduct;[37] (5) the relevant market;[38] (6) whether Defendants had market power;[39] (7) whether Defendants willfully maintained monopoly power;[40] (8) whether the restructuring agreements that resulted in Mastercard's and Visa's initial public offerings, and the IPOs themselves, are antitrust violations;[41] (9) whether the *NaBanco* decision applies to the claims in this case;[42] and (10) whether the *Illinois Brick* indirect purchaser doctrine is a defense to

---

[34]  *See* ECF No. 1165 Plaintiffs' Memorandum of Law in Support of Class Plaintiffs' Motion for Class Certification ("Pls.' Mem.") at 13-17, 43-51.

[35]  *See id*. at 47.

[36]  *See id*. at 19-22.

[37]  *See id.* at 47-51.

[38]  *See id*. at 51-53.

[39]  *See id*. at 53-57.

[40]  *See id*. at 72.

[41]  *See id*. at 73.

[42]  *See id*. at 73-74.

- 36 -

Plaintiffs' claims.[43]  Consequently, each member of the proposed Settlement Class would have to rely upon the same documents and testimony and legal theories to prove Defendants' liability under the antitrust laws.

Because the Settlement Class members' claims arise out of Defendants' uniform course of conduct and they suffered a like harm in the form of paying overcharges, the proposed class is sufficiently cohesive to satisfy the Rule 23(b)(3) predominance requirement for settlement purposes.

### 2.     A Class Action Is the Superior Method for Resolving This Case

The second element of the Rule 23(b)(3) analysis is that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[44] The superiority requirement is met "when the main objectives of Rule 23 are served," including "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications."  *D'Alauro v. GC Services, Ltd. Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

Here, the superiority requirement is satisfied, particularly given the context of this being a Settlement Class, offering a common benefit to millions of merchants while leaving those who wish to continue to pursue their own individual actions free to do so.  A class action would be the only possible means of resolving the claims of millions of merchants while, at the same time, avoiding the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought

---

[43]   *See id*. at 74-75.

[44]   As Rule 23(b)(3) further provides, "[t]he matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

separately. *Bourlas*, 237 F.R.D. at 354. Also, the overwhelming majority of Settlement Class members who have neither the incentive nor the means to litigate their claims individually may pursue those claims only via the class device. *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL1956267, at *14 (S.D.N.Y. May 1, 2008); *Currency Conversion*, 224 F.R.D. at 566. Certifying the proposed Settlement Class represents "an efficient means of resolving the claims at issue," *Bourlas*, 237 F.R.D. at 354, particularly given the millions of merchants who can participate in the proposed settlement fund upon final approval.

## V.    BOTH THE NOTICE PLAN AND PLAN OF ALLOCATION AND DISTRIBUTION ARE REASONABLE

### A.    The Notice Plan

Class Counsel, together with the Class Administrator, have devised a notice program and prepared mail and publication notices that fully satisfy the Rule 23(c)(2)(B) notice standards, which govern a class certified pursuant to Rule 23(b)(3). *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 2359653, at *5 (S.D.N.Y. June 20, 2012) (notice requirements for Rule 23(b)(3) classes stricter than for Rule 23(b)(2) classes) (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004)). Rule 23(c)(2)(B) requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." As required by Rule 23(c)(2)(B), the notices appended to the Superseding and Amended Class Settlement Agreement as Appendix G state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class that is being certified; (iii) the class claims, issues, or defenses; (iv) the basic terms of the settlement agreement; (v) that a class member may enter an appearance through an attorney if the member so desires; (vi) that the court will exclude from the class any member who requests exclusion; (vii) the time and manner for requesting exclusion; (viii) the binding effect of a class judgment on members and the

- 38 -

terms of the releases;[45] (ix) the claim filing process and a description of the Plan of Allocation and Distribution; and (x) the requests for an award of attorneys' fees, reimbursement of costs and an award to the Class Representatives. The Notice further directs Settlement Class members to the case website and provides contact information for the Claims Administrator.

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Hall v. ProSource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016), and it can "be understood by the average class member," *Wal-Mart*, 396 F.3d at 114. In this case, the Notice Plan (attached as Appendix F to the Superseding and Amended Class Settlement Agreement) was prepared with the aid of an experienced class administrator and provides for widespread direct mailed notice and published notice, robust media coverage, a comprehensive website, and a call-in site. The case website, which has been operational since December 7, 2012 and which will be updated to reflect information concerning the proposed settlement, is currently available in multiple languages and will offer English, Spanish, and other language versions of the notice and claim form. Every criterion of proper notice has been addressed.

## B.    The Plan of Allocation and Distribution

Class Counsel have also prepared a plan (the "Plan of Administration and Distribution" (Appendix I to the Superseding and Amended Class Settlement Agreement) to equitably and fairly distribute the settlement fund to Settlement Class members. A plan for distribution need only "have

---

[45]    The long form Notice includes the full text of the release.

a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."[46] *Meredith*, 87 F. Supp. 3d at, 667; *see also Citigroup*, 965 F. Supp. 2d at 385 (same).

The proposed plan meets this standard. The Settlement Class consists of a fixed group of merchants as of the date of preliminary approval, each with a fixed and determinable amount of interchange fees attributable to their Visa and Mastercard transactions paid during a finite period of time.  The proposed plan to allocate the settlement fund assures that each class member who timely submits a valid claim will receive its *pro rata* share of the net settlement fund.  That *pro rata* share reflects each claimant's percentage of the net settlement fund as calculated by comparing total interchange fees attributable to that claimant's transactions during the class period to the total interchange fees attributable to all claimants' transactions during the class period.  Using data provided by Visa, and potentially Mastercard and other parties, Class Counsel believe that the majority of the claim forms can be "pre-populated," providing those Settlement Class members with at least an estimate of their interchange fees and total dollar transaction volume on Visa-Branded and Mastercard-Branded Cards. Settlement Class members will have the ability to either supplement their information or provide back-up in the event they dispute the pre-populated amount. Distributions from the settlement fund to the Settlement Class will be made on a *pro rata* basis.  This method of apportioning relief among the Settlement Class members will "take[] appropriate account of differences" among their respective claims.  *See* Notes of Advisory Comm. on 2018 Amendments to Fed. R. Civ. P. 23.  It is a logical, straightforward, and equitable distribution of a large fund to a

---

[46]   As noted earlier at Section III.B.3 above, the 2018 rule amendments will direct courts on *final* approval to review the effectiveness of the proposed method of distributing relief, including the method for processing class member claims, when determining the fairness of a proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii) (am. 2018).  Section V.B provides additional detail concerning the proposed plan of distribution and demonstrates that this element of the proposed settlement would also satisfy this forthcoming rule amendment.

large class. *See, e.g.*, *Meredith*, 87 F. Supp. 3d at 667 (approving *pro rata* plan of allocation because it "has an obvious rational basis, appears to treat the class members equitably, . . . and has the benefit of simplicity); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997) (*pro rata* distribution provides "a straightforward and equitable nexus for allocation").[47]

Further, the scope of the release is uniform: all Settlement Class members give up all of their released claims through a period of five years after approval of the settlement and exhaustion of any appeals. *See* §III.B.5. After that date, any Settlement Class member may bring suit on any newly accrued claims based on the same conduct. The uniform effect of the release further demonstrates that the apportionment of relief is equitable and supports approval of the settlement.

In sum, the proposed plans for notice and distribution of the settlement fund are reasonable and fair, and will treat each Settlement Class member's claim equitably, and, therefore, the Court should preliminarily approve the settlement and authorize notice to the Settlement Class.

## VI.   CONCLUSION

For all of the reasons stated above, Class Counsel respectfully submit that both preliminary approval of the Superseding and Amended Class Settlement Agreement and certification of the proposed Settlement Class are appropriate.

Dated: September 18, 2018                     Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              PATRICK J. COUGHLIN
                                              ALEXANDRA S. BERNAY
                                              CARMEN A. MEDICI

                                              _____
                                                     s/ Alexandra S. Bernay
                                                  ALEXANDRA S. BERNAY

---

[47]   The amended Rule 23(e)(2) will also look to see whether the settlement proposal treats class members equitably relative to each other (*see* Fed. R. Civ. P. 23(e)(2)(D) (am. 2018)), and a *pro rata* distribution is one such equitable method to distribute a settlement fund.

- 41 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Dated: September 18, 2018    ROBINS KAPLAN LLP
              K. CRAIG WILDFANG
              THOMAS J. UNDLIN
              RYAN W. MARTH


               s/ K. Craig Wildfang
                 K. CRAIG WILDFANG

              2800 LaSalle Plaza
              800 LaSalle Avenue South
              Minneapolis, MN  55402-2015
              Telephone:  612/349-8500
              612/339-4181 (fax)

Dated: September 18, 2018    BERGER MONTAGUE PC
              H. LADDIE MONTAGUE, JR.
              MERRILL G. DAVIDOFF
              MICHAEL J. KANE


               s/ H. Laddie Montague, Jr.
                H. LADDIE MONTAGUE, JR.

              1818 Market Street, Suite 3600
              Philadelphia, PA  19103
              Telephone:  215/875-3000
              215/875-4604 (fax)

              Attorneys for Rule 23(b)(3) Class Plaintiffs in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*