**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**

**Case No. 05-MD-01720 (MKB) (JO)**

---

**MEMORANDUM IN OPPOSITION TO**
**<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ......................................................................................2

II.  LEGAL STANDARD............................................................................................................5

III.  ARGUMENT .......................................................................................................................7

    A.  The proposed class settlement should not be approved because it includes class members with competing claims for settlement proceeds for the same merchant transactions and therefore fails to protect the interests of large segments of the class...................................................................................................................................7

        1.  The proposed settlement places class members in direct conflict with each other over the same settlement dollars.........................................................8

        2.  The proposed class definition is overbroad because it includes class members at different levels of the payment chain. ...................................12

        3.  The interests of the Branded Operators are not being adequately represented. .................................................................................................14

        4.  The magnitude of the intra-class conflict is substantial as it potentially involves tens of thousands of class members and billions of payment transactions. ..............................................................................................18

    B.  The proposed class settlement fails to disclose the fact and identity of hundreds of class members that have been excluded from the class in whole or in part..........19

    C.  Because the proposed notice plan is insufficient, this issue must be addressed prior to preliminary approval. ............................................................................21

IV.  CONCLUSION..................................................................................................................23

116260659.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*In re Advanced Battery Techs. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................7

*Aliano v. CVS Pharm. Inc.*,
  2018 U.S. Dist. LEXIS 85986 (E.D.N.Y. May 21, 2018) ......................6

*Allen v. Dairy Farmers of Am., Inc.*,
  2014 U.S. Dist. LEXIS 94007 (D. Vt. July 9, 2014) ..............................6

*Amchem Products, Inc. v. Windsor*
  521 U.S. 591 (1997).......................................................................... *passim*

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)....................................................................7

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
  446 U.S. 318, 331(1980)........................................................................16

*Hess v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ..................................................................4

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)................................................................................9

*Literary Works in Electronic Databases Copyright Litig.*,
  654 F.3d 242, 246 (2d Cir. 2011)..........................................................16

*Matsushita Electric Indus. Co., Ltd v. Esptein*,
  516 U.S. 367 (1996)..............................................................................14

*Oladapo v. Smart One Energy, LLC*,
  2017 U.S. Dist. LEXIS 187299 (S.D.N.Y Nov. 9, 2017) ......................7

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)..............................................................12, 15, 16, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  827 F.3d 223 (2016).......................................................................... *passim*

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)..............................................................................14

*Prado-Steiman ex rel. v. Bush*,
   221 F.3d 1266, 1279 (11th Cir. 2000) ....................................................................16

*Speedy Stop Food Stores, LLC v. Visa Inc.*,
   No. 13-10-75377-A (Tex. Dist. Ct., Victoria City) ......................................4, 12, 13

*Zink v. First Niagara Bank*,
   155 F. Supp. 3d 297 (W.D.N.Y. 2015)..............................................................2, 6

## FEDERAL STATUTES

Sherman Act, 15 U.S.C. § 1.................................................................................4, 12

## FEDERAL RULES

Federal Rule of Civil Procedure 23 .......................................................... *passim*

Federal Rule of Civil Procedure 62.1 ...................................................................17, 18

116260659.1

On September 18, 2018, Class Plaintiffs filed a Notice of Motion for Class Settlement Preliminary Approval, together with supporting papers seeking this Court's preliminary approval of a proposed settlement agreement between Plaintiffs and Defendants.[1] Class members Fikes Wholesale, Inc., Midwest Petroleum Company and Slidell Oil Company, LLC ("Objectors") hereby file declarations in support of their objections and submit this accompanying brief.[2] These class members own and/or operate dozens of gas stations and convenience stores that sell petroleum products produced and branded by major refiners including Shell, ChevronTexaco, ConocoPhillips and Valero (hereafter "Refiners" or "Oil Brands"). Their interest in obtaining a fair share of any recovery that is obtained in this action is identical to that of tens of thousands of other class members who sell branded fuel (hereafter referred to as the "Branded Operators") at various retail locations throughout the country.[3]

As noted below and in the accompanying brief submitted by the National Association of Shell Marketers, the Petroleum Marketers Association of America, and the Society of Independent Gasoline Marketers of America, hereafter ("Marketers" or "Associations") fuel retailers serve 160 million people per day – approximately half of the U.S. population – and the industry processes over 73 billion payment transactions per year. More than half of the fuel

---

[1] Notice of Rule 23(b)(3) Class Plaintiffs' Motion and Motion for Class Settlement Preliminary Approval ("Mot. for Prelim. Approval"), Sept. 18, 2018, ECF No. 7257.

[2] *See* Declaration of Tate E. Seideman ("Seideman Decl."), Declaration of Brian Baker ("Baker Decl."), and Declaration of Donald W. McNutt ("McNutt Decl."), all concurrently filed herewith. The Objectors are represented, in part, by Hagens Berman Sobol Shapiro LLP, a firm that specializes in complex litigation and class actions. *See* Declaration of Steve W. Berman in Support of Opposition to Preliminary Approval of Class Settlement ("Berman Decl."), Ex. A, concurrently filed herewith.

[3] In addition to the Objectors, undersigned counsel represent more than 50 other petroleum marketers who sell branded fuel, among other products, at hundreds of locations nationwide, and who share the concerns expressed herein.

116260659.1

retailers in this country sell branded fuel. The concerns set forth by the Objectors impact tens of thousands of absent class members whose interests have not been adequately represented by this proposed settlement. If this Court holds a preliminary approval hearing, the Objectors intend to appear through counsel.

## I.    SUMMARY OF ARGUMENT

The proponents of this class settlement cannot demonstrate that the settlement is likely to be approved as fair, reasonable and adequate because it has significant structural flaws.

*First*, the settlement contains an intra-class conflict implicating the rights of tens of thousands of class members in that every branded gas station and convenience store that accepts Visa and MasterCard payment cards at their retail locations is competing for the exact same settlement dollars with the Oil Brands that handle the processing for those same transactions. The class definition in the settlement includes all entities "that have accepted any Visa-Branded Cards and/or MasterCard-Branded Cards" during the class period.[4] While the plain meaning of "accepted" (which is not a defined terms in the Agreement,) seems to indicate that merchants who own or operate customer-facing retail establishments are the class members entitled to relief under the proposed settlement, the Defendants and many of the major Oil Brands have taken the contrary position that ***they*** are the proper claimants by virtue of their role in processing the transactions.[5] This fundamental contradiction and resulting confusion for class members cannot

---

[4] Mot. for Prelim. Approval at 17.

[5] *See e.g.*, Joint Status Report re Opt-in and Other Issues ("Status Report"), June 20, 2014, ECF No. 6335; Seideman Decl., Ex. B (Request for Exclusion from *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* ("Valero Exclusion List"), May 28, 2013). In their recent submission to this Court, Class Counsel present a view that differs from the Defendants, yet adds no clarity. Class Counsel state that the Branded Operators are entitled to recover settlement proceeds for the branded locations at which they accept Visa and MasterCard credit cards, "unless by contract they transferred those claims to the oil companies." Class Counsel Letter to the Hon. Judges M. Brodie and J. Orenstein ("Class Counsel Letter") at 3,

stand. Unless it is clear who will receive distributions from the settlement for the transactions accepted by Branded Operators, class members will not know whether they can or should participate in the settlement or opt out.

Intra-class conflicts like this are fatal to class settlements. A settlement class cannot be certified where it includes class members with competing claims.[6] Moreover, the new class settlement rules, that class counsel confirmed are applicable here,[7] require the Court to find that the proposed settlement treats class members equitably relative to each other.[8] The Branded Operators are not being treated equitably as compared to other class members. Other class members, such as department stores, for example, are to receive a *pro rata* share of the settlement fund based on the interchange fees they paid for their retail locations.[9] The Branded Operators, by contrast, cannot be afforded the same allocation because the Oil Brands are in direct competition with them for settlement dollars for the same locations.

---

Nov. 15, 2018, ECF No. 7294. Class Counsel claim that this "transfer" question raises an allocation issue between class members, but they don't explain why or how that allocation issue is to be addressed. *Id.*

[6] *See Amchem Products, Inc. v. Windsor* 521 U.S. 591, 627 (1997) (citing *In re Joint E. and S. Dist. Asbestos Litigation*, 982 F.2d 721, 742–743 (1992)).

[7] *See* Berman Decl., Ex. B at 6:19-21 (Excerpts of Transcript of Status Conference).

[8] Fed. R. Civ. P. 23(e)(2)(D) (Proposed Amendments to the Federal Rules of Civil Procedure, to take effect December 1, 2018), *available at* https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf

[9] Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants ("Settlement Agreement") at Appendix I, I-2, Sept. 18, 2018, ECF No. 7257-2 ("Each claimant will receive its pro rata share of the Cash Fund based on the Claimant's Interchange Fees Paid"; *See also* Mot. for Prelim. Approval at 30 ("Each member (following final approval) who files a valid claim form will receive its *pro rata* share of the settlement based on the interchange fees attributable to the Settlement Class member's transactions during the class period.").

Second, given the conflict noted above, the class definition and release are overbroad in that they encompass and release *all* antitrust claims, regardless of whether those claims were brought or pursued in this litigation by Class Counsel, and regardless of whether class members are being compensated for those claims. In particular, the Branded Operators are members of the proposed settlement class because they accepted payment cards at their locations, and they were injured by the alleged overcharge because they paid it. However, the Defendants and the Oil Brands' position that the Branded Operators are not the "direct payors" and do not have standing to pursue claims under the Sherman Act,[10] creates a direct conflict. The proposed settlement does not have any mechanism for resolving this conflict, but if it is ultimately determined that the Branded Operators do not have standing under the Sherman Act, the proposed settlement release and class definition are so broad that the Branded Operators' state laws indirect purchaser claims would be released, that they would receive no compensation whatsoever. Such a result could not be sustained under Rule 23 because: (1) it is unfair and inequitable to large numbers of class members, and (2) it provides inadequate (i.e., zero) relief.[11]

Third, the interests of the Branded Operators are not being adequately represented and Class Counsel is not protecting the rights of all class members equally. In a class action it is fundamental that "The Due Process Clause . . . requires that the named plaintiff at all times adequately represent the interests of the absent class members."[12] Neither the settlement nor Class Counsel provide a definitive answer as to which set of class members – the Branded

---

[10] *See e.g.*, Status Report, ECF No. 6335; *Speedy Stop Food Stores, LLC v. Visa Inc.*, No. 13-10-75377-A (Tex. Dist. Ct., Victoria City); Seideman Decl., ¶ 11; Defs.' Pre-Motion Conference Letter, October 11, 2018, ECF No. 7271.

[11] *See* Fed. R. Civ. P. 23(e)(2)(C) and (D).

[12] *Hess v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).

Operators or the Oil Brands – can recover under the proposed class settlement, and none of the class representatives have interests that are aligned with the Branded Operators.

Finally, the proposed class settlement cannot be preliminarily approved because the notice fails to adequately inform class members whether they will be entitled to recovery under the terms of the settlement. Not only is the settlement agreement unclear about whether Branded Operators can recover, as explained below, it also purports to release thousands of class members' claims without providing them any notice whatsoever that their claims have been excluded from the settlement, either in whole or in part.

The intra-class conflict, the ambiguity of the class definition, and the failure to notify hundreds of class members that they are purportedly excluded from the settlement, must be addressed prior to preliminary approval because, as it stands, class members do not have enough information to make an informed decision about whether to participate in the class settlement, object or exclude themselves. As explained below, Class Counsel's claim that Objectors should not be heard at preliminary approval is incorrect.[13] Without understanding their compensation rights, tens of thousands of class members would be left to guess at whether to participate in the settlement. Addressing these issues at the final approval stage or during the distribution phase – which would occur after the exclusion deadline – would not help class members make that decision. Moreover, sending out a defective and ambiguous notice would be an enormous waste of resources and would undoubtedly confuse class members even further.

## II.    LEGAL STANDARD

The amendments to Rule 23 instruct courts to direct notice *only if* the parties have demonstrated that (1) the proposed settlement likely will be granted final approval, and (2) the

---

[13] Class Counsel Letter at 1.

court likely will certify the class for purposes of judgment on the settlement proposal.[14] Parties seeking preliminary approval must demonstrate the adequacy of class counsel and class representatives and that class members are treated equitably as to each other.[15] As the Advisory Committee noted, the duty is on the proponent(s) of the settlement to provide the court with information sufficient to determine whether or not notice should be issued.[16]

In their zeal to convince the Court to approve the proposed settlement without considering the objections put forth by absent class members whose interests they claim to represent, Class Counsel erroneously contend that Rule 23 does not permit objections to be considered prior to preliminary approval. This is not the case.[17]

As the recent amendments to Rule 23 make clear, "preliminary approval of a proposed class action settlement 'is not simply a judicial 'rubber stamp' of the parties' agreement. . . . Indeed, the Court must be particularly scrupulous because preliminary approval establishes an

---

[14] *See* Fed. R. Civ. P. 23 Advisory Committee Note Subdivision (e)(1) ("The amended rule also specifies the standard the court should use in deciding whether to send notice – that it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, if it has not previously certified a class, to certify the class for purposes of judgment on the proposal.").

[15] Fed. R. Civ. P. 23(e)(2)(D) (Proposed Amendments to the Federal Rules of Civil Procedure, to take effect December 1, 2018).

[16] *See* Fed. R. Civ. P. 23 Advisory Committee Note Subdivision (e)(1) ("The parties must provide the court with information sufficient to determine whether notice should be sent . . . "[t]he court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing.").

[17] *See, e.g.*, *Aliano v. CVS Pharm. Inc.*, 16-cv-2624, 2018 U.S. Dist. LEXIS 85986 (E.D.N.Y. May 21, 2018) (recommending denial of preliminary approval based on objections to adequacy of representation); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2014 U.S. Dist. LEXIS 94007, at *16 (D. Vt. July 9, 2014) (requiring disclosure of class representatives' objections before ruling on motion for preliminary approval; noting that the Court has to fulfill its own fiduciary obligations to the class).

- 6 -

initial presumption of fairness."[18]  If no class has previously been certified, as here, the Court

bears an independent responsibility to "ensure that the requirements of Rule 23(a) and (b) have

been met."[19] "Even at the preliminary approval stage, the Court must satisfy itself that 'the

proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections

of Rule 23(b).'"[20]

## III.    ARGUMENT

**A.    The proposed class settlement should not be approved because it includes class members with competing claims for settlement proceeds for the same merchant transactions and therefore fails to protect the interests of large segments of the class.**

As the Second Circuit recognized when it overturned the first settlement in this case, "the

focus of the Rule 23(a) inquiry remains on 'inequity and potential inequity at the precertification

stage.'"[21] The U.S. Supreme Court held in *Amchem Products, Inc. v. Windsor*, that the

requirements of Rule 23 are "designed to protect absentees by blocking unwarranted or

overbroad class definition" and "demand undiluted, even heightened attention in the settlement

context."[22] The proposed class settlement does not protect the interests of a large segment of the

putative class. In light of the different positions on the key question of whether the Branded

Operators are or are not entitled to their full pro rata share of the settlement for transactions at

their retail establishments, absent class members are unable to determine whether they will or

---

[18] *Zink v. First Niagara Bank*, 155 F. Supp. 3d 297, 309 (W.D.N.Y. 2015).

[19] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

[20] *Oladapo v. Smart One Energy, LLC*, No. 14-cv-7117, 2017 U.S. Dist. LEXIS 187299 (S.D.N.Y Nov. 9, 2017) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004)). *Accord In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 180-81 (S.D.N.Y. 2014).

[21] *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223, 232 (2016) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999)).

[22] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

- 7 -

will not receive any recovery from the settlement.[23] The proposed class definition is vague and appears to sweep in class members with competing claims; it suffers from obvious deficiencies that need to be rectified to ensure that all class members are treated equitably, as required by Rule 23.

### 1. The proposed settlement places class members in direct conflict with each other over the same settlement dollars

The Branded Operators are not being treated equitably as compared to other class members because they are competing directly against the Oil Brands for recovery of settlement proceeds for credit card transactions for the same locations. The Defendants recognized this serious conflict and raised it with the Court before the last settlement was overturned. Specifically, the Defendants asked the Court for guidance in determining which class members had the right to recover settlement proceeds as between "franchisors" and "franchisees."[24]  As an example, the Defendants noted that numerous Branded Operators that had opted out of the class settlement had filed claims that were in direct competition with Oil Brands that remained in the class.[25]  The Defendants explained that a significant problem of duplicative claims had arisen

---

[23] As the Associations correctly note in their brief, the Oil Brands have no entitlement to fees paid on card transactions involving products sold at jobber and dealer-operated service stations and convenience stores. The Oil Brands do not own the products sold in the transaction; the products are owned by the station or convenience store operator. The Oil Brands should be entitled to recover the overcharges they paid only for transactions at their company-owned and operated locations - where they are the ones who "accept" Visa and MasterCard. Nonetheless, because the Defendants and many of the Oil Brands have taken a contrary position, the proposed settlement must be clarified and cannot stand.

[24] The Defendants explain that franchisors often have the relationship with the acquiring bank and they contend that the franchisor should therefore be the class member who recovers. The Defendants use the term "franchisor" in reference to the Oil Brands and "franchisee" when referring to the Branded Operators. In addition to these entities, the Status Report makes clear that there are other franchisor/franchisee conflicts outside of the convenience store/petroleum industry.

[25] Status Report at 4.

among class members and opt outs. The Defendants also noted that the issue of duplicative claims was likely to be a significant problem as between class members: "There are thousands, if not tens of thousands, of franchisees that [are] members of the Rule 23(b)(3) Settlement Class. Accordingly, the same potential issue of duplicative claims covering the same transactions is virtually certain to arise in that context as well, with franchisees filing claims for settlement funds based on the same transactions that are the basis for franchisor claims."[26]

The Defendants explained their position that only one of the competing class members should be entitled to receive the settlement proceeds, because a decision to pay both the "franchisor" and "franchisee" would negatively affect other class members by reducing the limited amount of recovery available to the remainder of the class. The Defendants concluded by suggesting that the franchisors that have the relationship with the acquiring bank should be the class members that recover, arguing that "ensuring that only the entity that paid the merchant discount fee to the acquiring entity can recover for the alleged interchange overcharge on a transaction would be consistent with the animating principle of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977)."[27] At that time, class counsel did not take a position on which competing class member would own the claim but did agree that a procedure should be established for determining which entity had a "right to opt out of and be compensated from the fund."[28] Class counsel did not appear concerned about the harm to class members that would necessarily derive from leaving open the critical question of whether a class member does or does not have a right to recovery – until *after* the deadline to opt out or stay in the class has already passed.

---

[26] *Id*. at 5.

[27] *Id*. at 6.

[28] *Id*. at 7.

Even more troubling, having recognized the significance of this issue to "thousands, if not tens of thousands of franchisees," Class Counsel and the Defendants did nothing to address this intra-class conflict in the class settlement that was proposed in September. The proposed settlement does not address this issue at all. In fact, before the last settlement was overturned, the Defendants proposed that this issue be addressed in a supplemental notice to class members.[29] The Defendants recognized that class members were confused and did not know whether or not they were entitled to relief under the settlement. Class counsel opposed including any notice to class members at that time, and no notice was provided.[30] Despite their awareness of the significance of this issue, the settling parties declined to incorporate anything into the new proposed settlement to address these problems.

For the first time in its filing last week, Class Counsel set forth a position that appears to be directly at odds with the Defendants' position.  Class counsel wrote: "It appears that Branded Operators accept cards for payment thereby under the class definition owning the claims relating to the transactions they accept unless by contract they transferred those claims to oil companies."[31] Of course, any class member that transferred its claims no longer owns those claims. Yet, Class Counsel characterize the question of whether Branded Operators transferred their claims as a "potential claims allocation issue," without explaining why this would be the case, or what that means for the tens of thousands of Branded Operators who are absent class members. Rather than adding any clarity, Class Counsel's letter instead adds another layer of

---

[29] Letter to the Court, Sept. 19, 2016, ECF Nos. 6346 and 6346-1 (providing the Court with Proposed Notice and Proposed Form to class members who previously opted out of settlement to provide option of rejoining cash settlement class).

[30] *Id*. at 2, ECF No. 6346.

[31] Class Counsel Letter at 3.

complexity by introducing the possibility that a mini-trial will need to take place on a contested issue of contractual rights, before these class members can obtain any recovery. This is a far cry from answering the simple question of whether Branded Operators are to be treated the same as other merchants – or not.

And more importantly, the settlement does not propose any allocation methodology or adjudication procedure to determine which of these competing sets of class members will receive settlement funds for those transactions, despite having all of their claims released. Nor would any allocation procedure solve the conflict because the interchange fee is not apportioned among the Oil Brands and the Branded Operators; rather, this is an all-or-nothing issue where one set of class members necessarily will be left without any compensation in the class settlement. It will either by the Oil Brands, who process the payment transactions in the aggregate, or the Branded Operators who pay the interchange fees.

Rather than squarely addressing the conflict or lack of clarity in the settlement agreement or notice, Class Counsel's recent position simply underscores the parties' differing positions regarding class membership and does nothing to resolve it. Class Counsel and Defendants purport to have an agreement on which there was a meeting of the minds but they do not agree on the key point of who owns these claims. Class members need to know whose view of the settlement agreement will prevail before being forced to decide whether to opt out.

Under the new Federal Rules, the expected relief to the class is a "central concern."[32] Thus, the Court should evaluate the claims process and any agreements regarding allocation to determine whether it bears on the adequacy of relief, especially as it pertains to the equitable treatment of the class. Here, the Defendants and Class Counsel have already recognized the

---

[32] Fed. R. Civ. P. Advisory Committee Note Paragraphs (C) and (D).

significance of this intra-class conflict and the Defendants have proposed that only the Oil Brands and franchisors obtain recovery while the tens of thousands of Branded Operators get nothing. Nothing in the proposed settlement or class counsel's recent response to these objections has explained how this intra-class conflict is to be resolved.

2.    **The proposed class definition is overbroad because it includes class members at different levels of the payment chain.**

Rule 23(a)'s class certification requirements, which are "designed to protect absentees by blocking unwarranted or overbroad class definitions[,] demand undiluted, even heightened attention in the settlement context."[33] The Oil Brands and Defendants in this and other related litigation have taken the position that the Branded Operators are not the "direct payors" of the interchange fee, and that they do not have standing to pursue claims under the Sherman Act.[34]

The Oil Brands process payment card transactions for the tens of thousands of gas stations and convenience stores that fall within their brand.[35] Nevertheless, the Branded Operators are responsible for payment of the entire interchange fee on all payment card transactions at their respective locations.[36] The interchange fees are deducted directly from the transaction amounts.[37] Thus, while the Oil Brands may have processed the payment, the Branded Operators are the ones that actually paid and sustained injury by the overcharge.

---

[33] *Amchem*, 521 U.S. at 620; *accord Ortiz*, 527 U.S. 815.

[34] *See e.g.*, Status Report; *Speedy Stop Food Stores, LLC v. Visa Inc.*, No. 13-10-75377-A (Tex. Dist. Ct., Victoria City); Seideman Decl., ¶ 11; Pre-Motion Conference Letter, ECF No. 7271.

[35] *See e.g.*, Seideman Decl., ¶ 5.

[36] *See e.g.*, *id.*, ¶ 6.

[37] *Id.*

116260659.1

Many of the Oil Brands believe that by virtue of their processing mechanics, they are members of the proposed settlement class because they are "direct payers" under the antitrust laws.[38] Although we submit that this is factually and legally incorrect, many Oil Brands believe they are entitled to compensation for any overcharges on the interchange fees paid on sales at all branded retail locations nationwide.[39] The payment card transactions at the retail locations necessarily overlap with and are duplicative of the payment card transactions processed by the Oil Brands at those locations. As a result, the retailers and the Refiners each claim entitlement to the same overcharges on the same payment card transactions.

Because interchange fees are paid directly to an issuing bank from the customer payment made at the point of sale, the Branded Operators are the direct payers under the antitrust laws. The only Court that has ruled on this precise issue is a Texas court which denied Defendants' motion for summary judgment on the claims of a branded operator.[40] The facts in that case demonstrated that the Branded Operator's claims that it paid the interchange fee were likely to prevail over Defendants' view. This issue has not been resolved by this Court.

Critically, the proposed class settlement requires class members to make a decision about releasing their claims before any determination is made about whether they are direct or indirect payors, and whether they are entitled to any relief. Because it is not clear how this intra-class conflict will be resolved or at what stage it might be resolved, class members cannot make an informed decision about whether to participate in the class settlement or opt out. And, if the Court later determine that "franchisees" are not the "direct payors," their state law indirect

---

[38] *Id.* at 7; Baker Decl., ¶ 11; McNutt Decl., ¶ 6.

[39] Seideman Decl., ¶ 7; Baker Decl., ¶ 11; McNutt Decl., ¶ 6.

[40] *Speedy Stop Food Stores, LLC v. Visa Inc.*, No. 13-10-75377-A (Tex. Dist. Ct., Victoria City).

- 13 -

purchaser claims would be released through the proposed class settlement without any compensation whatsoever. If the Branded Operators cannot recover as direct payers under this settlement, they should not be precluded from pursuing claims as indirect purchasers. The lack of clarity and overbreadth in the class definition would deprive them of that right. Far from adequate relief, such a result would be unfair and inequitable relative to other class members and thus would violate class members' constitutional right to due process.[41]

### 3. The interests of the Branded Operators are not being adequately represented.

The requirement of adequate representation cannot be minimized or ignored because, among the factors a court is asked to consider in connection with a proposed settlement, it alone is of constitutional dimension. Indeed, the Supreme Court has emphasized repeatedly that "the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of absent class members,"[42] and that adequacy of representation is "a continuing [duty]."[43]

The protection of absentee class members is particularly important where they have antagonistic interests. Rule 23(a)(4) specifically furnishes this protection, permitting a court to certify a class "only if . . . the representative parties will fairly and adequately protect the interests of the class." This protects absent class members "by blocking unwarranted or overbroad class definitions[.]"[44] Because class action settlements surrender the legal rights of

---

[41] *Payment Card*, 827 F.3d at 236 (citing *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 260 (2d Cir. 2001)) ("Part of the due process inquiry (and part of the Rule 23(a) class certification requirements) involves assessing adequacy of representation and intra-class conflicts.").

[42] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

[43] *Matsushita Electric Indus. Co., Ltd v. Esptein*, 516 U.S. 367, 374 (1996) (Ginsburg, J., concurring).

[44] *Amchem*, 521 U.S. at 620.

- 14 -

persons not actually party to the suit, the adequate-representation requirements demand "undiluted, even heightened, attention in the settlement context."[45] One of those requirements is "intraclass equity."[46] The intraclass-equity requirement mitigates the incentive to sacrifice some class members' interests to benefit others.

Echoing *Amchem*, *Ortiz* reaffirmed that intraclass equity, or "the fairness of distributions to those within" the class, is one of Rule 23(a)(4)'s requirements.[47] For *Amchem* made it obvious "that a class divided" among claimants with distinct injuries "requires division into homogenous subclasses . . . with separate representation to eliminate conflicting interests of counsel."[48]

Here, although the Branded Operators have interests diverse and distinct from those of other class members who are not competing directly with other class members for compensation for their pro rata recovery of the interchange fees they paid, neither they nor any other "franchisee" has any representation in the class. In addition, class counsel is inherently conflicted based on its representation of a class that contains dueling class members. Class Counsel has been unwilling – and unable – to clearly define the limits of its class.

The adequacy requirement is paramount, and applies to both the named plaintiff(s) and counsel.[49] A primary purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent."[50] The adequate representation requirement "is typically construed to foreclose the class action where there is a conflict of interest between

---

[45] *Id.*

[46] *Ortiz*, 527 U.S. at 863.

[47] *Id.* at 854, 863.

[48] *Id.* at 856.

[49] *Amchem*, 521 U.S. at 626.

[50] *Id.* at 625-626.

the named plaintiff and the members of the putative class."[51] Of course, Class Counsel may dismiss the conflicts here and argue that the lead plaintiffs identified in this case owe nothing to the tens of thousands of putative class members that sell branded fuel – but that is exactly the point. No one is looking out for the interests of these class members. Class Counsel may also argue that the many brands may exclude themselves from the class settlement, thereby mitigating the problem. However, as evidenced by the Valero exclusion and settlement, this conflict will only be exacerbated if the uncertainty over whether the Oil Brands are or are not class members for the same transactions as the Branded Marketers is not addressed before notice is issued and an opt-out deadline is established.

The Second Circuit has policed settlements (including overturning the prior settlement in this case) to ensure that safeguards are in place to prevent unfair and inadequate settlements from being consummated – especially when "[c]lass counsel stood to gain enormously if they got the deal done."[52] For example, the class counsel in *Literary Works in Electronic Databases Copyright Litigation* attempted to negotiate compensation from Google for three separate "categories" of class members in a single settlement.[53] As in *Ortiz*, each category had legally distinct claims of varying strength.[54] Yet each class representative "served generally as a representative for the whole, not for a separate constituency."[55] The court found that the

---

[51] *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331(1980); *Prado-Steiman ex rel. v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (noting that the "incentives" of the class representative must "align with those of absent class members so as to assure that the absentees' interests will be fairly represented").

[52] *Payment Card*, 827 F.3d at 234, 236.

[53] *Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 246 (2d Cir. 2011).

[54] *Id*.

[55] *Id*. at 251 (quoting *Amchem*, 521 U.S. at 627).

representation was inadequate and rejected certification because the class representatives "cannot have had an interest in maximizing compensation for *every* category."[56] This structural error alone was sufficient to warrant reversal and remand; the court did not address whether the compensation negotiated for any given category was unfair or inadequate. The Second Circuit also previously rejected unitary representation as inadequate in this case, when the representatives "were in the position to trade diminution [of one subgroup's] relief for increase of [another subgroup's] relief."[57]

Similarly, in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, in the Northern District of California, the district court originally, in 2016, approved the settlement of nationwide class of indirect purchasers, and a plan of allocation that did not allow for monetary relief for residents of states that did not provide for standing for indirect purchasers (and yet these class members released their claims).[58] Residents of some of the repealer states objected and appealed the final approval of the settlement to the Ninth Circuit Court of Appeals. At oral argument, the Ninth Circuit indicated some concern with the proposed plan of allocation. In response (and without a ruling from the Ninth Circuit Court of Appeals), class counsel offered a revised proposal whereby they would give up part of their fee for residents of Missouri, Massachusetts, and New Hampshire. *CRT* class counsel then requested an indicative ruling from the district court judge regarding this revised proposal.[59] In response to this request for indicative ruling, the district

---

[56] *Id*. at 252 (emphasis in original).

[57] *Payment Card*, 827 F.3d at 234.

[58] Order Granting Final Approval, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-5944 JST (N.D. Cal. Nov. 16, 2016), ECF No. 5040.

[59] Indirect Purchaser Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 62.1 for An Indicative Ruling, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-5944 JST (N.D. Cal. Oct. 1, 2018), ECF No. 5335.

- 17 -

court denied the request and held that it now concluded that it had "erred in approving the parties' original settlement" given the release of class members' claims without compensation, and questioned whether class counsel was adequate to represent both segments of the class.[60] But regardless of whether the issue was framed as one of conflict of interest, or adequacy of counsel, the district court ruled that it required "further exploration and potentially the appointment of separate counsel."[61]

So too, here. As noted by the court in *CRT*, despite laudatory efforts to obtain a favorable result for the majority of clients, "pitting one set of clients' claims against those of another is a classic indication of a potential conflict of interest."[62] Class counsel cannot ignore the conflict of interest that exists within the proposed class.

### 4. The magnitude of the intra-class conflict is substantial as it potentially involves tens of thousands of class members and billions of payment transactions.

The representative declarations provided herewith attest to the significance of these issues and this conflict as it relates to nearly every major gasoline brand. The representative clients cover nearly every brand and operate at locations throughout the country. In addition to the clients who submitted detailed objections to this Court, there are thousands of similarly situated Branded Operators who owned and operated tens of thousands of branded convenience stores and gas stations during the class period. Moreover, submissions from major marketer and convenience store associations, including the National Association of Shell Marketers (NASM),

---

[60] Order Denying Indirect Purchaser Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 62.1 for An Indicative Ruling, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-5944 JST (N.D. Cal. Nov. 8, 2018), ECF No. 5362.

[61] *Id.* at 2.

[62] *Id.*

the Petroleum Marketers Association of America (PMAA) and the Society of Independent

Gasoline Marketers of America (SIGMA), further underscore the widespread nature of this

problem. Those associations collectively represent more than 80 percent of all retail motor fuel

sales in the United States.

Given the size and complexity of the class, the issue of duplicative claims is also virtually

certain to arise in other franchisor/franchisee contexts beyond the oil industry. Indeed, the

defendants already confirmed that there were thousands if not tens of thousands of franchisees

that would potentially have claims covering the same transactions as their franchisors.[63]

Defendants agree that "[t]his will likely give rise to disputes regarding who is entitled to

recovery based on the transactions, and lead to obvious issues of administration."[64] Because of

the magnitude of this problem and the significance of the conflict to the Branded Operators, this

class settlement should not proceed until these issues are properly addressed and rectified.

**B.      The proposed class settlement fails to disclose the fact and identity of hundreds of class members that have been excluded from the class in whole or in part.**

In addition to the foregoing issues, the Defendants have been allowing the Oil Brands to

negotiate opt-out settlement agreements on behalf of all of their branded operators without the

consent of the operators.[65] The proposed class settlement excludes from the class all entities

identified in any exclusion list submitted by the companies. For example, the list of excluded

entities already submitted by Valero identifies more than 400 branded operators that are now

---

[63] Status Report at 5.

[64] *Id.*

[65] *See e.g.*, Seideman Decl., ¶ 16.

- 19 -

purportedly excluded from the proposed settlement. However, the list has not been provided to the Court, and none of the parties on the list are identified in the proposed notice.[66]

Adding to the problem, class members on the Valero exclusion list cannot determine from the class settlement or the proposed class notice whether the settlement purports to exclude them from recovery based on *all* sales at *all* of their locations, whether processed through Valero, another brand, or through a third-party processor selected by the marketer. That is, while Valero-related claims seem to have been (wrongly) excluded from the class settlement, the class members on the exclusion list have no way of knowing whether they are included or excluded from the proposed class settlement for all other payment card sales unrelated to Valero.[67] The exclusion list submitted by Valero and the class settlement agreement are so all-encompassing that they appear to release all claims based on all transactions – even if they had nothing to do with Valero. Release of such claims, which would have nothing whatsoever to do with Valero, would be patently unfair, but the settlement papers do not give class members enough information to understand whether that is in fact the case.[68] The wrongful exclusion of the Valero operators without their consent and without compensation (and without a mechanism in place to even provide them with notice of their exclusion) further illustrates the fundamentally defective nature of the proposed settlement. Moreover, other oil companies are currently attempting to negotiate the same type of settlements, potentially releasing the claims of thousands of other operators as well.[69] The Oil Brands are attempting to negotiate these opt-out settlements exactly

---

[66] *Id.*, ¶¶ 14, 19.

[67] *See e.g.*, *id.*, ¶ 17 (explaining that branded operators sell a variety of both branded and unbranded fuels along with other food and convenience store items that are not related to or processed through the oil companies).

[68] *Id.*

[69] *See e.g.*, *id.*, ¶¶ 19-20.

because of the conflicts addressed in this objection; that is, they believe they own all of these

claims, whereas the Branded Operators believe they are the proper claimants. Purporting to

dismiss and exclude the claims of hundreds of class members – with the imprimatur of this

Court, as is required under Rule 23 – without even providing these class members with notice

that identifies them as excluded and gives them an opportunity to be heard, is unfair and it would

violate their constitutional right to due process.[70]

**C.    Because the proposed notice plan is insufficient, this issue must be addressed prior to preliminary approval.**

The resolution of these issues cannot be delayed until after preliminary approval or

through some sort of later-determined allocation methodology. Because of the existence of the

intra-class conflicts described herein, tens of thousands of class members do not have enough

information to make an informed decision about whether to participate in the class or opt out.

These issues need to be resolved before the opt-out deadline so that class members can make a

truly informed decision about whether they have any compensation rights at all and/or if they are

releasing their claims for nothing. Indeed, the Defendants have already acknowledged that

"[a]bsent a decision from this Court, which is supervising the settlements, there exists significant

potential for increased settlement administration costs and duplicative claims and payments, all

of which could frustrate the class settlement."[71]  Class counsel's attempt to persuade the Court to

disregard this issue now and postpone resolution until after notice has been issued, disregards

both the law and the prejudice to class members that would result from the unnecessary delay

---

[70] *Ortiz*, 527 U.S. at 848 (citing *Shutts*, 472 U.S. at 812 ("[b]efore an absent class member's right of action was extinguishable, due process required that the member 'receive notice plus an opportunity to be heard and participate in the litigation,' and . . . 'at a minimum . . . an absent plaintiff [must] be provided with an opportunity to remove himself from the class.'")).

[71] Status Report at 3.

that Class Counsel request. The Court is required to find that the proposed settlement is likely to be finally approved before it grants preliminary approval.[72] The significant intra-class conflicts noted herein preclude such a determination.

Class counsel's reference to the Court's order in V*isa/Check/MasterMoney Antitrust Litigation*, CV-96-5238 (JG)(RLM) is inapposite. As their letter brief notes, the conflict among class members in that case was first revealed in the claims administration stage of the case; there were no objections filed and the Court had no occasion to address the conflicts in evaluating the settlement. By contrast here, Defendants agreed before this new settlement was proposed that "addressing this issue now could provide important guidance for opt-outs and facilitate the settlement of opt-out suits."[73] Defendants and Class Counsel failed to do so before submitting a new proposed class settlement to this Court. The same fundamental flaws and conflicts that the parties previously recognized still remain and should be addressed now.  Waiting only will exacerbate the problem. As explained above, the proposed class notices do not include a list of excluded entities. Thus, Branded Operators who have been excluded without their consent pursuant to opt-out settlements negotiated by the Oil Brands have no way of knowing that their claims will be released and/or that they should take steps to protect their rights. Thus, if the Court fails to resolve these deficiencies now, the most likely outcome will be the opt-out/exclusion deadline passing before a class member is made aware their claims have been released by other parties. Notice itself will not address the issue of multiple levels of the distribution channel asserting the same claims because class members will still not be able to determine whether they are or are not entitled to recovery under the settlement. Because the

---

[72] Fed. R. Civ. P. 23(e)(1)(B), as amended.

[73] Status Report at 6.

settlement is obviously deficient and is not likely to be finally approved, preliminary approval should be denied.

## IV.  CONCLUSION

For the reasons set forth above, this Court should deny preliminary approval of the settlement and direct the parties to address the obvious deficiencies detailed above prior to issuing notice to class members.


DATED: November 20, 2018              Respectfully submitted,

                                      HAGENS BERMAN SOBOL SHAPIRO LLP


                                      By:  s/ Steve W. Berman
                                          STEVE W. BERMAN

                                      1301 Second Avenue, Suite 2000
                                      Seattle, WA 98101
                                      Tel: (206) 623-7292
                                      Fax: (206) 623-0594
                                      Email: steve@hbsslaw.com


                                      Shana E. Scarlett
                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                      715 Hearst Avenue, Suite 202
                                      Berkeley, CA 94710
                                      Tel: (510) 725-3000
                                      Fax: (510) 725-3001
                                      Email: shanas@hbsslaw.com

                                      Nathaniel A. Tarnor
                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                      555 Fifth Avenue, Suite 1700
                                      New York, NY 10017
                                      Telephone: (212) 752-5455
                                      Facsimile: (917) 310-2980
                                      nathant@hbsslaw.com

                                      LAW OFFICE OF JANA EISINGER, PLLC

                                      Jana Eisinger
                                      4610 South Ulster Street, Suite 150
                                      Denver, CO 80237
                                      Tel: (303)209-0266

- 23 -

Fax: (303) 353-0786
jeisinger@eisingerlawfirm.com

*Counsel for Objectors Fikes Wholesale, Inc., Midwest Petroleum Company and Slidell Oil Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*

STEVE W. BERMAN

116260659.1