# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Applies to: All Cases. | No. 05-MD-01720 (MKB) (JO) |

## SUPPLEMENTAL DECLARATION OF MICHAEL R. O'CONNOR REGARDING ESTIMATED RULE 23(b)(3) CLASS PLAINTIFF AWARDS

I, Michael R. O'Connor, declare as follows:

1. I am a Vice President at Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Class Administrator for the above-captioned case. I am a licensed attorney in Oregon. Prior to joining Epiq in November of 2010, I was an owner at the Garvey Schubert Barer law firm in Portland, Oregon and was engaged in private practice for 13 years. I received my *Juris Doctorate* from the University of Oregon Law School and my Bachelor of Arts degree from Yale University. I have first-hand knowledge of, and am competent to testify regarding the matters stated herein.

2. The Rule 23(b)(3) Class Plaintiffs, as defined in Paragraph 3(ii) of the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants ("2018 Settlement Agreement") ECF No. 7257-2, are:

   a. Photos Etc. Corporation (d/b/a ScanMyPhotos.com);

   b. Traditions, Ltd.;

   c. Capital Audio Electronics, Inc.;

   d. CHS Inc.;

   e. Discount Optics, Inc.;

   f. Leon's Transmission Service, Inc.;

   g. Parkway Corporation (also known as Parkway Corp.); and

  h. Payless, Inc. (and on behalf of Payless ShoeSource, Inc.).

3. Members of the Rule 23(b)(3) Settlement Class, of which the Rule 23(b)(3) Class Plaintiffs are members, will receive payments from the Net Cash Settlement Fund. 2018 Settlement Agreement, ¶27.

4. The payments from the Net Cash Settlement Fund that Authorized Claimants may ultimately receive are difficult to estimate at this time and these estimates rely upon many factors and assumptions, which include, but are not limited to, the following:

  a. The amount of the Net Cash Settlement Fund is not yet known and depends upon many variables, including what payments, and the amounts of those payments, are made from the escrow accounts. *Id.* at 22-25.

  b. The total Interchange Fees Paid in the U.S. during the Class Period is approximately $642B. For purposes of this calculation, that number has been reduced by 10%, which is an estimate of the purchase volume attributable to parties excluded from the Class Definition, which includes the U.S. Government, Defendants, and the Dismissed Plaintiffs[1] (listed in Appendix B to the settlement agreement). *Id.*, ¶4. The resulting number is $578B. From that number, we assume a 15% reduction to account for those plaintiffs who have filed their own complaint in the coordinated litigation, who will presumably exclude themselves from the settlement.[2] For this Declaration, recovery estimates were generated assuming: (1) there are no additional opt outs; (2) that 15% of the Class opts out (enough to result in the full takedown amount of $700 million);[3] and (3) that 25% of the Class opts out (enough to trigger the blow provision in the

---

[1] The exact interchange activity of Dismissed Plaintiffs has not been calculated at this time.
[2] The exact interchange activity attributable to opted-out entities is unknowable this time because the postmark deadline for an Opt Out is July 23, 2019. Once these numbers are known, the estimated payments will change.
[3] 2018 Settlement Agreement, ¶22.

settlement).[4] Using these assumptions, the total interchange fees attributable to the Class are $491B, $404B, and $347B.

  c. The participation rate cannot be known until the conclusion of the claims-filing period and any rate from 0% to 100% is possible. Given the high publicity and value of this settlement, the claims filing rate could be high, resulting in smaller Rule 23(b)(3) Class Plaintiff awards. However, with the large quantity of small businesses who are Authorized Claimants, the claims rate could also be lower, resulting in higher Rule 23(b)(3) Class Plaintiff awards. In order to provide a conservative estimate, participation rates of 70% and 100% were used for these estimates even though a 100% participation rate in a class action of this size has never been observed, to my knowledge.

  d. This calculation assumes 10% paid in attorney fees and $40,000,000 in expenses.

  e. Detailed Mastercard transactional data is not available. Therefore, an assumption that Mastercard is roughly one-third of the transaction volume was used.

  5. Based upon the assumptions outlined above, six scenarios arise: (1) estimated percent of interchange fees attributable to the Class is 100% of the total Interchange Fees Paid by the Class less attorneys' fees and expenses and 15% to account for the opt-outs who have filed their own complaint in the coordinated action, if all Class Members file a claim; (2) estimated percent of fees attributable to the Class is 100% of the Interchange Fees Paid by the Class less attorneys' fees and expenses and 15% to account for the opt-outs who have filed their own complaint in the coordinated action, as well as an additional 15% opt-out rate if all Class Members file a claim; (3) estimated percent of interchange fees attributable to the Class is 100% of the total Interchange Fees Paid by the Class less attorneys' fees and expenses and 15% to account for the opt-outs who have filed their own complaint in the coordinated action, as well as an additional 25% opt-out rate if all Class Members file a claim; (4) – (6) are the same numbers as (1) – (3)

---

[4]  *Id.*, ¶62.

assuming 70% of Class Members file a claim. Using these assumptions, the approximate value of each Rule 23(b)(3) Class Plaintiff's award from the Net Cash Settlement Fund are as follows:

Table 1: Estimated Awards

| Entity | Scenario 1 | Scenario 2 | Scenario 3 | Scenario 4 | Scenario 5 | Scenario 6 |
|---|---|---|---|---|---|---|
| Photos Etc. Corporation | $2,140 | $2,272 | $2,651 | $3,057 | $3,246 | $3,787 |
| Traditions, Ltd. | $9,659 | $10,257 | $11,966 | $13,799 | $14,652 | $17,094 |
| Capital Audio Electronics, Inc. | $410 | $435 | $508 | $585 | $621 | $725 |
| CHS Inc. | $7,724,762 | $8,202,513 | $9,569,598 | $11,035,374 | $11,717,875 | $13,670,855 |
| Discount Optics, Inc. | $1,509 | $1,602 | $1,869 | $2,155 | $2,288 | $2,670 |
| Leon's Transmission Service, Inc. | $6,769 | $7,187 | $8,385 | $9,669 | $10,267 | $11,979 |
| Parkway Corporation | $46,130 | $48,983 | $57,146 | $65,900 | $69,975 | $81,638 |
| Payless Inc. | $1,453,408 | $1,543,297 | $1,800,513 | $2,076,297 | $2,204,709 | $2,572,161 |

6. Based upon the assumptions outlined above in paragraph 4, the estimated mean award for all Authorized Claimants, including those that have not been in business for the entire class period-is approximately $304 to $497, depending on the scenario. Each of the Rule 23(b)(3) Class Plaintiffs has been in business for the entire class period and has accepted Visa and Mastercard during that entire period. The interchange fees paid by each of the Rule 23(b)(3) Class Plaintiffs will have likely changed since 2013 in absolute terms as well as relative to the total interchange fees paid.

7. The interchange activity considered by this declaration covers the period from January 1, 2004 through December 31, 2017. Epiq recently received the Visa Data for 2018-2019 and is still incorporating that data into the transaction database. Once this data is incorporated into

our database, estimated payments will change; however, given that all the named plaintiffs are still in business, both the numerator and denominator of the calculation will have increased, so the above estimates given the assumptions made will be unlikely to change significantly.

8. The estimated calculations outlined in this Declaration are based on myriad assumptions, which: (a) likely will change as this case progresses; (b) could prove to be incorrect; and (c) cannot be fully ascertained at this time. The actual awards likely will be different from those estimated in this Declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 6, 2019 in Washington, District of Columbia.

Michael R. O'Connor