# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————— x

In re PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

—————————————————— 

This Document Relates To:

    ALL ACTIONS.

—————————————————— X

:  MDL No. 1720(MKB)(JO)
:
:  Civil No. 05-5075(MKB)(JO)
:
:  MEMORANDUM IN SUPPORT OF R&M
:  OBJECTORS' MOTION FOR AWARD OF
:  ATTORNEYS' FEES, EXPENSES, AND
:  SERVICE AWARDS
:
:  Judge:      The Honorable Margo K. Brodie
   Date:       November 7, 2019
   Time:      10:00 a.m.
   Courtroom: 6F

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    RELEVANT BACKGROUND ......................................................................................... 1

      A.    As The First Non-Parties To Oppose The Original Settlement, the R&M Objectors Vigorously And Persistently Fought For Fairness Since The Earliest Disclosure Of That Initial Agreement .......................................... 2

      B.    Over The Years, The R&M Objectors Made Significant And Meaningful Arguments Against The Original Settlement, And These Were A Substantial Cause Of The Second Circuit's Rejection Of The Agreement ...................................................................................................... 6

      C.    The R&M Objectors Are A Substantial Cause Of The New Benefits Available Through The Superseding Settlement ...................................................... 9

III.   ARGUMENT ................................................................................................................. 10

      A.    Counsel For The R&M Objectors Should Receive A Reasonable Attorneys' Fee Because They Were A Substantial Cause Of The Improved Benefits Now Available To The Class ..................................................... 10

           1.    The R&M Objectors Are A Substantial Cause Of The Increased Benefits Available By Virtue Of The Superseding Settlement ........................ 12

           2.    Because The R&M Objectors Are A Substantial Cause Of The Increased Value Of The Superseding Settlement, Their Counsel Should Receive A Reasonable Fee .................................................................. 14

      B.    Counsel For The R&M Objectors Should Be Allowed To Recover Their Litigation Costs ...................................................................................... 15

      C.    The R&M Objectors Should Receive Reasonable Service Awards ......................... 15

IV.   CONCLUSION .............................................................................................................. 16

i

# TABLE OF AUTHORITIES

Page

## CASES

*Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541 (1984) ................................................................ 14

*Camden I Condominium Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ................................................................ 14

*Frankenstein v. McCrory Corp.*, 425 F. Supp. 762 (S.D.N.Y. 1977) ................................ 11, 12

*Great Neck Capital Appreciation Inv. P'ship v.*
    *PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002) ................................ 11

*Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) ................................................................ 14

*In re AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853 (SWK),
    2007 WL 4225486 (S.D.N.Y. Nov. 28, 2007) ................................................ 11-12

*In re Anchor Sec. Litig.*, No. CV-88-3024,
    1991 WL 53651 (E.D.N.Y. Apr. 8, 1991) ................................................................ 11

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ................................................................ 12, 14

*In re Holocaust Victim Assets Litig.*, 424 F.3d 150 (2d Cir. 2005) ................................ 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................ 14

*In re Payment Card Interchange Fee & Merch. Disc.*
    *Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) ................................................ 8, 9, 12, 13

*In re: Prudential Ins. Co. of Am. Sales Practices Litig.*,
    273 F. Supp. 2d 563 (D.N.J. 2003) ................................................................ 14

*In re: Petrobras Sec. Litig.*, 320 F. Supp. 3d 597 (S.D.N.Y. 2018) ................................ 12

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................................ 15

*MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................ 11

*Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682 (7th Cir. 2008) ................................ 11

ii

*Park v. Thompson Corp.*, 633 F. Supp. 2d 8 (S.D.N.Y. 2009)......................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011).........................................7

*White v. Auerbach*, 500 F.2d 822 (1974)..............................................................................10, 15

*Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) .......................... 15-16

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
      Rule 23(b)(2) ..................................................................................................... 4-6
      Rule 23(b)(3) ..................................................................................................... 5-8

**SECONDARY AUTHORITIES**

Chris Isidore, *Visa and MasterCard Agree to Settle Swipe Fee
      Class Action for $6.2 billion*, CNN.com (Sept. 18, 2018)................................................10

## I.    INTRODUCTION

The Retailer and Merchant Objectors, or "R&M Objectors," have moved this Court to approve the allowance of a reasonable attorneys' fee and the reimbursement of litigation expenses to their counsel, and to grant the R&M Objectors Service Awards, in recognition of their significant contributions to the much improved Superseding and Amended Definitive 23(b)(3) Class Settlement Agreement (the "Superseding Settlement") now pending.[1]  As shown throughout this Memorandum, the R&M Objectors and their attorneys are a substantial cause of the new benefits made available to the Class via the Superseding Settlement.  In fairness and in recognition of these efforts, they should both be entitled, in some small way, to share in those augmented proceeds.  As such, the R&M Objectors' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards (the "Motion") should be granted.[2]

## II.    RELEVANT BACKGROUND

The R&M Objectors are a diverse group of restaurants, clothing stores, gas stations, and all manner of small to mid-sized businesses hailing from 13 states across the heart of the country. In 2012, as they began to develop a picture of the Original Settlement through news reports and other similar sources, the first R&M Objectors[3] approached the undersigned counsel with

---

[1] Movants have been known as the R&M Objectors since first objecting to the original Class Settlement (the "Original Settlement") on October 18, 2012.  The material terms of the Original Settlement were made public as part of a Memorandum of Understanding filed on July 13, 2012. (ECF No. 1588 (Ex. 2).)

[2] The R&M Objectors' counsel worked on a contingency fee basis and have not been paid for any of the work, effort, or expenses described in this Memorandum.

[3] As word spread of their determination to speak up for the smaller enterprises otherwise deprived of a voice in the proposed settlement of this action, additional entities joined the group of R&M Objectors.  Numbering 38 when they first cautioned that the Original Settlement did not merit even preliminary approval (*see* ECF No. 1653 (Ex. 3)), the membership of the R&M Objectors had swelled to over 60 just months later when they filed an objection to final approval (*see* ECF Nos. 2281 (Ex. 4), 2421 (Ex. 5)).

questions and concerns regarding various aspects of the Original Settlement. Those opening inquiries led to investigation, research, and further consultations, ultimately ending with the R&M Objectors' decision to challenge the Original Settlement on the general grounds set forth below. As demonstrated in the succeeding paragraphs, the R&M Objectors' unwillingness to accept unreasonable settlement terms, a position ultimately shared by the Second Circuit, has helped to create a Superseding Settlement that has, among other improvements, made available an additional $900 million to the Class.

A.     **As The First Non-Parties To Oppose The Original Settlement, The R&M Objectors Vigorously And Persistently Fought For Fairness Since The Earliest Disclosure Of That Initial Agreement**

When they opposed the Original Settlement on October 18, 2012, the R&M Objectors distinguished themselves as the first non-parties to docket shortcomings in the terms of that compromise.[4] (ECF No. 1653 (Ex. 3).)[5] From there, the R&M Objectors made themselves active participants in the effort to undo a deficient settlement. By way of example, only days after publicly voicing their disagreement with the settlement, counsel for the R&M Objectors wrote Judge Gleeson to recommend creation of a Proposed Objectors' Committee to be given access to the "400 depositions and 50 million pages of discovery which led to the [Original Settlement]," for the purpose of "pooling resources to examine, analyze and . . . report on the viability of any proposed objections." (ECF No. 1657 (Ex. 7).) Although this proposed committee never materialized, observations made by the R&M Objectors apparently made an impression. In an Order which soon followed, the Court specifically mentioned that it had "received a request from

---

[4] Certain Plaintiffs and Class Representatives, represented by the Constantine Cannon law firm, also objected to the Original Settlement (the "Plaintiff-Objectors") and had already voiced their disapproval to the Court. (*See, e.g.,* ECF No. 1621 (Ex. 6).)

[5] Exhibit designations refer to a document's position as an exhibit to the Motion.

a large group of retailers and merchants" (ECF No. 1668 (Ex. 8), at 1) before announcing an intention to break with its "[o]rdinar[y]" custom of "not schedul[ing] oral argument of preliminary approval motions" (*id.* at 2). Significantly, the R&M Objectors had previously requested just such a hearing on preliminary approval, given the important issues at play in this massive litigation. (*See* ECF No. 1653 (Ex. 3) ¶ 20, at 14.) The Court followed through to schedule such an oral argument here, citing the "expectation among some interested parties that the preliminary approval process should be more involved in this case than in the usual class action." *Id.*

Counsel for the R&M Objectors attended the November 9, 2012 hearing addressing preliminary approval, but the Court at that early stage concluded that the Original Settlement bore no marks such as "indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys" necessary to justify denial of preliminary approval. (ECF No. 1732 (Ex. 9), at 61.) Nonetheless, the Court acknowledged the presence of "a number of issues that have been well-briefed by the objecting parties that are going to require significantly more careful scrutiny before there is any final approval of the proposed settlement." *Id.* at 62. In the following months, the R&M Objectors did their best to sharpen their approach so that their arguments would carry the day as the Original Settlement was subject to the heightened scrutiny of final approval, to which the Court had alluded.

In furtherance of this mission, the R&M Objectors on May 15, 2013 filed a 31 page objection to final approval containing much more developed and refined versions of the arguments they had previously raised. (ECF No. 2281 (Ex. 4); *see also* ECF No. 2421 (Ex. 5), adding eight additional objectors on May 24, 2013).) The substance of that objection is discussed more thoroughly in the next subsection of this Memorandum, but it presently suffices to say that the R&M Objectors pointed out to the Court that the Original Settlement violated due process because

it (i) purported to release future antitrust liability under the guise of a Rule 23(b)(2) mandatory class[6] (ECF No. 2281 (Ex. 4), at 8-11); (ii) inappropriately sought to release future antitrust liability on behalf of a (b)(3) class (*id.* at 11-20); and (iii) undertook to release conduct far more extensive than Defendants' actions at the center of the litigation (*id.* at 20-22). In addition to these rather glaring incidents of impermissible overreach, the R&M Objectors raised more nuanced issues as well. First, the Notice to the Class offered no real ability to opt-out, because the concomitance of a mandatory (b)(2) Class meant that, opt-out or not, future antitrust claims against Defendants were set to be released nonetheless. *Id.* at 22-24. Next, one supposed feature of the settlement – the ability to surcharge – was illusory to many because of numerous states' prohibitions on surcharging. To that substantial portion of R&M Objectors (and the Class), the theoretical ability to surcharge was worthless. *Id.* at 24-27.

The R&M Objectors' opposition to final approval again sought limited discovery to allow "a meaningful inquiry on cross-examination into the merits of the [Original] Settlement." (ECF No. 2281 (Ex. 4), at 31.) This was not forthcoming. Undeterred, however, counsel for the R&M Objectors communicated with Professor Alan Sykes of the NYU School of Law, who had been appointed by the Court to review "economic issues related to the [Original Settlement]" (ECF No. 5873 (Ex. 10)), to recommend specific categories of discovery that might aid his analysis (ECF No. 5948 (Ex. 11)). Moreover, at the same time they were presenting their objections to final approval, counsel for the R&M Objectors were simultaneously filing "conditional" opt-outs applicable to members of the group who wanted no part of the broad, perpetual release granted

---

[6] The Original Settlement was fatally flawed, from the outset, because it presumed to compromise claims on behalf of a (b)(3) class, with the mandatory prerogative to opt-out, and also a (b)(2) class, with no opt-out rights, at whose expense, it would be argued, the Original Settlement had been reached. *Cf.* Fed. R. Civ. P. 23(b)(2)-(3).

Defendants under the Original Settlement.  (*See* ECF Nos. 2422 (Ex. 12), 2618 (Ex. 13).)  The

conditional Notice of Opt-Outs filed on behalf of some R&M Objectors described the impossible

position into which those entities had been thrust by the Original Settlement:

> All of the businesses opting out by way of this notice of opt-out feel
> compelled to do so in an attempt to preserve future claims against Defendants . . . .
> Both of the settlement classes described in the Notice of Settlement waive these
> future claims, but it is presently unclear whether this Court will approve that waiver.
> These potential Class members do not believe a waiver of future claims is valid
> under either Rule 23(b)(2) or 23(b)(3). . . .
>
> Given the uncertainty surrounding this settlement, the unclear and
> confusing class notice, and with no way of knowing what this Court will ultimately
> approve, these businesses feel forced to opt-out of the Rule 23(b)(3) class at this
> time to preserve their substantive rights and not be bound by a judgment entered in
> this case.

(ECF Nos. 2422 (Ex. 12), 2618 (Ex. 13).)

As was so at the preliminary approval hearing, counsel for the R&M Objectors attended

the final approval hearing.  R&M counsel addressed the Court to reiterate what the group viewed

as the most significant impediments to approval:  The confounding notice, as an inevitable product

of the blend of (b)(2) and (b)(3) classes for the purposes of this settlement, and the worthless

surcharge.  (ECF No. 6094 (Ex. 14), at 173-77.)  Still, when all was said and done, final approval

was granted.  (ECF No. 6124.)

The R&M Objectors remained vigilant and on the front lines of an issue that went to the

very core of their businesses.  As appeals followed, the R&M Objectors were intimately involved

in the process by filing separate briefs – emphasizing their own arguments about the inadequacy

of notice and the worthlessness of the surcharge "benefit" – and coordinating with counsel for

Plaintiff-Objectors to ensure that the appellate arguments for the R&M Objectors and the Plaintiff-

Objectors were consistent, cogent, and persuasive.  In the end, the years of work put in by the

R&M Objectors were successful when the Second Circuit ultimately adopted objectors' arguments
to dismantle the Original Settlement.

The preceding summary shows that counsel for the R&M Objectors diligently worked,
from the time the Original Settlement was first announced through the conclusion of the successful
appeal, to ensure that the unfair and unreasonable Original Settlement would not be consummated.
The following subsection establishes that the value of the points made by the R&M objections
matched the intensity of those efforts.

      **B.**      **Over The Years, The R&M Objectors Made Significant And Meaningful
Arguments Against The Original Settlement, And These Were A Substantial
Cause Of The Second Circuit's Rejection Of The Agreement**

Back in October of 2012, when they posited the first objection to the Original Settlement
by an absent Class Member, the R&M Objectors generally alerted the Court to the most grievous
attributes of the agreement, such as its vastly overbroad release[7] and its woefully inadequate
injunction (which would have prevented Defendants from engaging in similar anticompetitive
activity for *only 8 months*). (*See* ECF No. 1653 (Ex. 3) ¶¶ 40, 49, 51, 54, at 8, 11-14.) These
arguments would mature more fully months later when the R&M Objectors filed their formal
opposition to final approval. At that time, after directing the Court to the established case law
which questioned the efficacy of the Original Settlement on due process grounds (*see* ECF No.
2281 (Ex. 4), at 8-22), the R&M Objectors turned to the core of their objection. Specifically, the
R&M Objectors sounded the alarm that the blending in this action of both (b)(2) and (b)(3) classes

---

[7] Throughout the settlement approval process, the R&M Objectors maintained that the proposed
release was excessively overbroad because it purported to bind unknown parties not yet in
existence, claimed to shield Defendants from future antitrust liability into perpetuity, and
supposedly required Class Members to abandon claims related to *any* Visa or Mastercard rule then
in existence. (*See* ECF No. 1653 (Ex. 3) ¶¶ 40(c), at 8; ECF No. 1703 (Ex. 15), at 6; ECF No.
2281 (Ex. 4), at 8-22.)

served to nullify class notice, and that the settlement's authorization of a surcharge was worthless

to many Class Members.

With regard to the ineffective notice caused by the rush to settle clams on behalf of both

(b)(2) and (b)(3) classes, the R&M Objectors highlighted the predicament of Class Members:

> This settlement is so fundamentally flawed, and the Notice is so intrinsically deficient, that even the most legally astute Class Member would be uncertain of what action to take upon receiving this Notice. As things stand now, all absent Class Members have been told that even if they opt-out of the Rule 23(b)(3) Class, they will lose the ability to sue Visa/Mastercard in the future [because of the mandatory (b)(2) release]. In this circumstance, even if a merchant disagrees with the relief afforded by the . . . "damages" settlement, it is likely to stay in the class so as to retain the ability to object to the more significant waiver of future rights. Should this Court agree that the relinquishment of future damage claims under a mandatory Rule 23(b)(2) class is improper, or conclude that such a release is inappropriate under Rule 23(b)(3), or both, the entire analysis surrounding a decision to opt out is altered. In that scenario, if a business could preserve future damage claims by opting out of the 23(b)(3) class – without being forced to accept the loss of future damage claims [under 23(b)(2)] – it may well decide to opt-out even though it is not doing so now. On the other hand, if this Court invalidates future damages releases under both 23(b)(2) and 23(b)(3), the same Class Member might determine that it makes sense to remain a party [as] to the claim for current damages. Basically, the point is that a ***new notice, containing a new – and legitimate – opportunity to opt out,*** will be required should this Court revise the aspect of the [Original Settlement] releasing future damages claims.

(ECF No. 2281 (Ex. 4), at 23-24 (emphasis in original).) On the subject of the surcharge, the R&M

Objectors advised that a significant and growing number of states prohibited these assessments.

*Id.* at 25. Moreover, as a practical matter, many businesses in the Class would be unlikely to pass

along to customers a credit card surcharge. *Id.* at 26-27. Most fundamentally, as a component of

the (b)(2) settlement, it was imperative that the surcharge be part of "an individual injunction

*benefitting all its members at once*," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362, 131 S. Ct.

2541, 2558 (2011) (emphasis added), and the surcharge relief fell far short of this. As argued by

the R&M Objectors: "The surcharge, proposed as an element of class relief, is *not* nationwide

relief and does *not* benefit the entire class. Class members are treated differently." (ECF No. 2281

7

(Ex. 4), at 25.) Summing it up, the surcharge featured as a "benefit" of the Original Settlement actually had no value for many Class Members and thus impaired the entirety of the deal. *See generally id.* at 24.

Counsel for the R&M Objectors stressed the notice and surcharge issues during his remarks at the final approval hearing. (*See* ECF No. 6094 (Ex. 14), at 173-77.) After this Court approved the Original Settlement over the objections, the R&M Objectors continued the fight before the Second Circuit. In close consultation with attorneys for the Plaintiff-Objectors, the R&M Objectors made the unique notice and surcharge arguments the centerpiece of their appellate briefs (*see* Opening Brief for Appellant Retailer & Merchant Objectors ("R&M Opening Brief"), No. 12-4671, at 13-30 (2d Cir.) (Ex. 16); Reply Brief for Appellant Retailer & Merchant Objectors ("R&M Reply Brief"), No. 12-4671 (2d Cir.) (Ex. 17), specifically illustrating the real-world impact of the illusory surcharge relief on R&M members. The R&M Objectors used as examples the situations of 105 Degrees (an Oklahoma business denied the ability to surcharge under that state's law) and Whole Hog (an Arkansas business unable to surcharge because of rules applicable to those who, like Whole Hog, also accept American Express cards). (*See* R&M Opening Brief (Ex. 16), at 30-42; R&M Reply Brief (Ex. 17), at 2-8.)

The Second Circuit took heed of these arguments. In reversing approval of the Original Settlement, the court explained that intractable conflict between the (b)(2) and (b)(3) classes made simultaneous representation of both impossible. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231-36 (2d Cir. 2016). As the R&M Objectors had been arguing for years, it was this inherent tension between the classes that made the notice unworkable. (*See* ECF No. 2281 (Ex. 4), at 23-24; ECF No. 6094 (Ex. 14), at 173-77.) And when it came to surcharge, the Second Circuit echoed the arguments of the R&M Objectors:

8

> [I]t is imperative that the (b)(2) class in fact benefit from the right to surcharge. But
> that relief is less valuable for any merchant that operates in New York, California,
> or Texas (among other states that ban surcharging), or accepts American Express
> (whose network rules prohibit surcharging . . .). Merchants in New York and
> merchants that accept American Express can get no advantage from the principal
> relief their counsel bargained for them.

*In re Payment Card Interchange Fee*, 827 F.3d at 238. Continuing on, the court concluded that

"[t]here is no basis for this unequal intra-class treatment: the more valuable the right to surcharge

. . ., the more unfair the treatment of merchants that cannot avail themselves of surcharging." *Id.*

The Second Circuit reversed approval of the Original Settlement on largely the same

grounds championed by the R&M Objectors since Day One. The R&M Objectors were a

substantial cause of the eventual disapproval of the unfair and unreasonable Original Settlement.

C.     **The R&M Objectors Are A Substantial Cause Of The New And Improved
       <u>Benefits Available Through The Superseding Settlement</u>**

The Superseding Settlement now before the Court exhibits none of the defects that caused

the R&M Objectors to challenge the Original Settlement. New notice has issued to Class

Members, and it is intelligible with a real opportunity to opt-out. (*Cf.* ECF No. 2281 (Ex. 4) (R&M

Objection to Final Approval), at 23 ("The notice [issued in conjunction with the Original

Settlement] does not provide a legitimate opportunity to opt-out . . . .").) The Superseding

Settlement does not delve into surcharging at all. (*See* ECF No. 7257-2 (Superseding Settlement).)

It also includes a reasonable release that only insulates Defendants for 5 years (as opposed to

indefinitely) and is only applicable to claims that could have been alleged relating to the subject

matter of this litigation. (*Compare* ECF No. 2281 (Ex. 4) (R&M Objection to Final Approval), at

11-22 (objecting to Original Settlement because it contained those offensive attributes), *with* ECF

No. 7257-2 ¶ 31(a), at 30 (new release).) The superseding release does *not* presume to sacrifice

claims belonging to entities not yet in existence, but applies only to merchants that accepted Visa

9

or Mastercard between January 1, 2004, up to the date of preliminary approval. (*Compare* ECF No. 2281 (Ex. 4) (R&M Objection to Final Approval), at 18 ("[F]uture claims of unknown entities cannot be released . . . ."), *with* ECF No. 7257-2 ¶ 4, at 17-18 (defining settlement class).) Importantly, the Superseding Settlement increases by $900 million the cash available to the Class. *See* Chris Isidore, *Visa and MasterCard Agree to Settle Swipe Fee Class Action for $6.2 billion*, CNN.com, https://money.cnn.com/2018/09/18/news/companies/visa-mastercard-lawsuit-settlement/index.html (last visited June 1, 2019) (Class Counsel has acknowledged that "[t]he amended settlement represents a $900 million increase over the previous one.").

The R&M Objectors played a key role in the creation of the new and improved settlement benefits. The next section of this Memorandum establishes that the law entitles the R&M Objectors and their counsel to share in the results of their efforts.

## III.    ARGUMENT

### A.    Counsel For The R&M Objectors Should Receive A Reasonable Attorneys' Fee Because They Were A Substantial Cause Of The Improved Benefits Now Available To The Class

It has long been the law in this circuit that objectors to a class action settlement "are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974). This is so because "objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *Id.* One court put it like this:

> Class counsel and defendant's counsel may reach a point where they are cooperating in an effort to consummate the settlement. Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative. Thus, objectors serve as a highly useful vehicle for class members, and for the court and for the public generally. *From conflicting points come clear thinking.* Therefore, a lawyer for an objector who raises pertinent

questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service.

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412-13 (E.D. Wis. 2002) (emphasis added) (citations omitted).

The possibility of compensation is necessary to entice "objectors [to] serve as a highly useful vehicle for class members." *Great Neck*, 212 F.R.D. at 412; *see also In re Anchor Sec. Litig.*, No. CV-88-3024, 1991 WL 53651, at *1 (E.D.N.Y. Apr. 8, 1991) (Sifton, J.)  ("In order to encourage persons with potentially meritorious objections, attorney's fees are available to counsel for objectors who make the proper showing."). Any reluctance to award fees to counsel for a meritorious objector undercuts the class settlement process, for "'it is desirable to have as broad a range of participants in the class action fairness hearing as possible.'" *Park v. Thompson Corp.*, 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009) (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008)).

Whether an objector has "improved" a settlement, thereby justifying receipt of a fee, is not merely a matter of dollars and cents. *See MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 367 (E.D.N.Y. 2010) (Weinstein, J.) ("An award of attorneys' fees for an objector does not require that an economic benefit to the class occur, or that the objection influence the court's decision."). Even when an objector's impact cannot be measured financially, attorney's fees may follow if the objector "assisted the court, and/or enhanced the recovery in any discernible fashion." *In re Anchor Sec.*, 1991 WL 53651, at *1 (quotations omitted); *see also Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977) ("[W]here the objections filed produced a beneficial effect upon the progress of the litigation, an award of fees is appropriate."). Indeed, "[s]ome courts have also 'rewarded objectors' counsel for advancing non-frivolous arguments and transforming the settlement hearing into a truly adversarial proceeding.'" *Park*, 633 F. Supp. at 11 (quoting *In re*

11

*AOL Time Warner ERISA Litig.*, No. 02 Cv. 8853 (SWK), 2007 WL 4225486, at *2 (S.D.N.Y. Nov. 28, 2007)).

In the final analysis, the critical inquiry is whether the objector was a "'substantial cause of the benefit obtained.'" *In re: Petrobras Sec. Litig.*, 320 F. Supp. 3d 597, 599 (S.D.N.Y. 2018) (quoting *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157 (2d Cir. 2005)). Because the R&M Objectors are a substantial cause of the improved benefits available to the Class as a result of the Superseding Settlement, their counsel should receive a reasonable fee, and the R&M Objectors should receive a reasonable Service Award.

1.      The R&M Objectors Are A Substantial Cause Of The Increased Benefits Available By Virtue Of The Superseding Settlement

From the initial announcement of the Original Settlement, the R&M Objectors led the charge of absent Class Members in questioning its reasonableness. (*See, e.g.,* ECF No. 1653 (Ex. 3) (representing first objection filed by an absent Class Member).) The dedicated tenacity of the R&M Objectors is exemplified by the fact that this Court mentioned them in the first Order regarding preliminary approval of the Original Settlement (ECF No. 1668 (Ex. 8) ("I have received a request from a large group of retailers and merchants . . . .")), and they were still on the scene years later when the Second Circuit essentially adopted and repeated their arguments regarding the worthless surcharge, *see In re Payment Card Interchange Fee*, 827 F.3d at 238. These bookends leave no doubt that, at the very minimum, the R&M Objectors during the course of this litigation "cast in sharp focus the question of the fairness and adequacy of the settlement," *Frankenstein*, 425 F. Supp. at 767, which alone merits approval of their fee request, *see In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993) ("If objectors' appearance sharpens the issues and debate on the fairness of the settlement, their performance of the role of devil's advocate warrants a fee award."). But the R&M Objectors did much more than that.

The new, improved Superseding Settlement incorporates virtually every ground raised by the R&M Objectors when challenging the Original Settlement.  The R&M Objectors argued that the surcharge "benefit" of the Original Settlement had no value to many businesses, and the Second Circuit agreed that "[t]here is no basis for this unequal intra-class treatment."  *In re Payment Card Interchange Fee*, 827 F.3d at 238.  The Superseding Settlement eliminates any mention of a surcharge.  Consider also:

| | |
|---|---|
| **Objection:** | The R&M Objectors complained that the notice for the Original Settlement was incomprehensible and offered no legitimate opt-out rights. |
| **Result:** | There has been new notice of the Superseding Settlement with a real chance for Class Members to opt-out. |
| **Objection:** | The R&M Objectors insisted that the release accompanying the Original Settlement violated due process because it released future antitrust conduct into perpetuity and presumed to release claims for unknown entities who did not yet exist |
| **Result:** | The superseding release extends only to conduct over the next 5 years, and it applies only to merchants who accepted Visa or Mastercard between January 1, 2004 through the date of preliminary approval. |
| **Objection:** | The Original Settlement's release applied to conduct relating to any Mastercard or Visa rule in existence. |
| **Result:** | The superseding release is valid only as to claims that could have been alleged relating to the subject matter of this litigation. |

Most tellingly, of course, the Superseding Settlement has an increased value to Class Members of $900 Million.  This benefit would never have been available had the R&M Objectors not objected to the grossly unfair and unreasonable Original Settlement.  The R&M Objectors are a substantial cause of the enhanced monetary and other benefits of the Superseding Settlement.

13

2.      Because The R&M Objectors Are A Substantial Cause Of The Increased
        Value Of The Superseding Settlement, Their Counsel Should Receive A
        Reasonable Fee

The R&M Objectors are a substantial cause of the additional $900 Million and other new

benefits available by way of the Superseding Settlement.  That being so, under the law of the

Second Circuit, their counsel is entitled to a reasonable fee.  In determining an appropriate fee, the

trend in the Second Circuit is to award lawyers a percentage of the fund in whose creation they

have played a part, because this will allow a judge "to focus on 'a showing that the fund conferring

a benefit on the class resulted from the lawyers' efforts,' rather than [on] collateral disputes over

billing."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 485 (S.D.N.Y. 1998)

(quoting *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)); *see also*

*Blum v .Stenson*, 465 U.S. 886, 900 n.16 (1984) (1984) ("[U]nder the 'common fund doctrine,' . .

. a reasonable fee is based on a percentage of the fund bestowed on the class.").  In cases in which

an objection has favorably altered the terms of a class settlement, courts have been inclined to

award the objector's counsel some percentage of the enhanced settlement.  *See In re:  Prudential*

*Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003) (awarding objector's

counsel 1.4% of Class Counsel's fee award); *In re Domestic Air Transp.*, 148 F.R.D. at 359-60

(determining it appropriate to award objector's counsel .266% of common fund); *Howes v. Atkins*,

668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (awarding objector's counsel 10% of settlement fund).

The R&M Objectors respectfully suggest that their counsel should receive a small

percentage of whatever fees are ultimately awarded by the Court in this case.  *Cf. In re:  Prudential*,

273 F. Supp. 2d at 572 (awarding objector's counsel 1.4% of Class Counsel's fee award).  The

R&M Objectors commend Lead Counsel for the work they have performed in this case, and the

R&M Objectors agree that Lead Counsel has produced an impressive result after years of hard-

fought litigation.   However, it was the flawed Original Settlement which caused the R&M
Objectors to embark on their own years-long effort to put something better in place.   In these
circumstances, the R&M Objectors respectfully suggest that it would be fitting to award a
percentage fee to counsel for the R&M Objectors.   Because the Class should not be responsible
for any of this, the R&M Objectors further respectfully suggest that their counsel's fees should be
paid from the overall fee awarded in the case.

### B.    Counsel For The R&M Objectors Should Be Allowed To Recover Their Litigation Costs

Where an objector has shown that it is a substantial cause of increased settlement benefits,
the law in the Second Circuit allows objector's counsel to recover its litigation costs. *See White*,
500 F.2d at 828.   This is in keeping with general circuit law that to award litigation costs to an
appropriate applicant. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503,
525 (E.D.N.Y. 2003) (Gleeson, J.) (referring to the "common practice in this circuit of granting
expense requests).   R&M Objectors respectfully request that this Court reimburse their counsel
reasonable litigation expenses in the sum of $20,344.65.   Itemization of the costs will be made
available to the Court upon request.

### C.    The R&M Objectors Should Receive Reasonable Service Awards

The R&M Objectors respectfully request that the Court approve reasonable service awards
for each of them.   The R&M Objectors first filed their objections to the Original Settlement in
2012, and over the past seven years they have shown their commitment to ensure that the Class
would be presented a fair and reasonable settlement.   That has now occurred, and the R&M
Objectors respectfully suggest that they should be recognized for their willingness to stand up for
the Class. *See Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)
("Small incentive awards, which serve as premiums to any claims-based recovery from the

15

Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."). The Plaintiffs and Class Representatives have indicated that they will seek service awards of up to $250,000 apiece. In these circumstances, the R&M Objectors believe that it would be appropriate for each of them to receive a reasonable service award.

## IV.    CONCLUSION

For the reasons stated in this Memorandum, the R&M Objectors respectfully request that the Motion be granted.

Dated this seventh day of June, 2019.

Respectfully Submitted,

By:    /s/ Jay L.T. Breakstone
Jerrold S. Parker
Jay L.T. Breakstone
**Parker Waichman, LLP**
6 Harbor Park Drive
Port Washington, NY 11050
Telephone:  (516)-723-4620
jbreakstone@yourlawyer.com
jerry@yourlawyer.com

Thomas P. Thrash, ABN #80147
Marcus N. Bozeman, ABN #95287
**Thrash Law Firm, P.A.**
1101 Garland Street
Little Rock, Arkansas 72201
Telephone: 501-374-1058
tomthrash@sbcglobal.net
bozemanmarcus@sbcglobal.net

Phillip Duncan
Richard Quintus
**Duncan Firm, P.A.**
900 S. Shackleford, Suite 725
Little Rock, AR 72211
Telephone:  (501) 228-7600
phillip@duncanfirm.com
richard@duncanfirm.com