**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | Case No. 05-MD-01720 (MKB) (JO) |

## STATEMENT OF OBJECTIONS TO
### <u>FINAL APPROVAL OF CLASS SETTLEMENT</u>

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    SUMMARY OF ARGUMENT ................................................................................... 3

III.   ARGUMENT ............................................................................................................. 8

     A.     The proposed settlement should not be approved because it includes class members with competing claims for the same settlement proceeds. ................................................. 8

         1.     The proposed settlement places class members in direct conflict with each other over the same settlement dollars. ................................................................. 8

         2.     No post-approval administrative procedure can fix the problems created by the unaddressed conflicts. .......................................................................... 12

         3.     The proposed class definition is overbroad because it gives rise to the notion that there are class members at different levels of the payment chain, which has engendered conflicts. ........................................................................... 14

         4.     The interests of the Branded Operators are not being adequately represented. ............................................................................................. 17

         5.     The magnitude of the intra-class conflict is substantial as it potentially involves tens of thousands of class members and billions of payment transactions. ............................................................................................. 23

     B.     The potential exclusion of many Oil Brands from the settlement increases the likelihood that thousands of additional Branded Operators will be precluded from recovery within the class. ............................................................................................... 24

IV.   CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................8, 14, 18, 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 3:07-CV-5944 JST (N.D. Cal) .............................................................. 7, 21, 22

*Cent. States Se. & Sw. Areas of Health & Welfare Fund v. Merck– Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ...................................................................................5

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................................6

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*,
    446 U.S. 318, 100 S. Ct. 1698 (1980) .................................................................. 19

*Hess v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ................................................................................7

*In re: Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3rd Cir. 2008) ......................................................................... 16, 17

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .............................................................................................9

*In re Joint E. & S. Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992) ...................................................................................5

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) .............................................................................. 13

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    2019 WL 1789789 (S.D.N.Y. Apr. 22, 2019) ...........................................................6

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) ................................................................4, 19, 20, 21

*Matsushita Electric Industrial Co., Ltd v. Esptein*,
    516 U.S. 367 (1996) .......................................................................................... 17

*In re Packaged Seafood Products Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...................................................................6

*In re Parking Heaters Antitrust Litig.*,
   310 F.R.D. 54 (E.D.N.Y. 2015) ................................................................................. 6

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ...........................................................................*passim*

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................................. 17

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3rd Cir. 2011) .................................................................................... 17

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................. 16

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ..........................................................................*passim*

## OTHER AUTHORITES

Manual for Complex Litigation, Fourth, § 21.132 ..............................................3, 12

010781-11 1155089 V1

## I.      INTRODUCTION

Fikes Wholesale, Inc., Midwest Petroleum Company. and Slidell Oil Company, LLC (Branded Operators or Objectors) object to final approval[1] of the parties' proposed class settlement.[2] These Objectors own and operate dozens of gas stations and convenience stores.  As such, they are entities that accepted Visa- and MasterCard-branded cards at their stores and paid the alleged overcharges; therefore, they are quintessential settlement class members.[3]  Unfortunately, a conflict imperils their ability to enjoy the benefits ostensibly promised by the settlement.  Due to the class definition and broad release that Class Counsel negotiated, the oil companies that processed certain card transactions for the Objectors also lay claim to these self-same settlement benefits.  Class Counsel is well aware of this conflict and should have resolved it during settlement negotiations with the aid of separate counsel appointed to represent the Branded Operators to whom the settlement promises benefits.

This is no small matter. The interest of the Branded Operators in obtaining their rightful recovery is identical to that of tens of thousands of other class members who also sell branded fuel.[4] As noted in the accompanying brief submitted by the Petroleum Marketers Association of America, the National Association of Shell Marketers and the Society of Independent Gasoline Marketers of America (collectively, the "Associations") fuel retailers serve 160 million people per day— approximately half of the U.S. population—which results in 73 billion payment transactions per year.

---

[1] *See* Declarations of Tate E. Seideman (Seideman Decl.) Brian Baker (Baker Decl.) and Donald W. McNutt, (McNutt Decl.) submitted herewith. Objectors also filed declarations and an accompanying brief in Opposition to Preliminary Approval, Nov. 20, 2018, ECF 7300. The Court overruled these objections.  Order Granting Prelim. Appr. at 29-31, 34 n.28, 86-87.

[2] Notice of Rule 23(b)(3) Class Plaintiffs' Motion and Motion for Settlement Final Approval ("Mot. for Final Approval"), June 7, 2019, ECF No. 7469.

[3] Superseding and Amended Definitive Class Settlement Agreement of the Rule 23*b)(3) Class Plaintiffs and the Defendants, Sept. 18, 2018, ECF No. 7257 at ¶ 4.

[4] In addition to the Objectors, undersigned counsel represent approximately 100 other petroleum marketers who sell branded fuel, among other products, at thousands of locations nationwide, and who share the concerns expressed herein.

And more than half of the fuel retailers in this country sell branded fuel. The concerns set forth by the Objectors impact tens of thousands of absent class members whose interests have not been adequately addressed by this proposed settlement.

Due to the seriousness of the conflict at hand, and because the parties' proposed notice did not advise class members of it, Branded Operators also objected in response to Class Counsel's motion for preliminary approval. But the Court concluded that there was no conflict among class members; rather, there was a contest "between entities disputing who has the right to claim class status."[5] This is consistent with the premise of the question that Judge Orenstein posed during the status conference on December 6, 2018—is it a conflict for Class Counsel to represent a store with claims based on credit card transactions when there is an ancillary dispute between sibling heirs as to "who owns the store and, therefore, owns the claim"?[6]  Accordingly, the Court determined that Class Counsel did not have a duty to represent the interests of Branded Operators in relation to the settlement—Class Counsel's duty will run only to whatever entity ultimately wins the dispute over the right to settlement funds.[7]

But, respectfully, this is incorrect.  With respect to Judge Orenstein's analogy, Class Counsel also undertook to determine who would be entitled to claim settlement benefits.  This endeavor is reflected in the fact that "Authorized Claimant" is defined in the settlement agreement, as is the term "Rule 23(b) Settlement Class," to which "Authorized Claimant" refers.  In other words, in Judge Orenstein's parlance, Class Counsel undertook to determine who "owns the claim."  Yet Class Counsel did so in a way that actually gave rise to and fueled the conflict rather than resolving it.

---

[5] Memorandum and Order, Jan. 28, 2019, ECF No. 7363 (Prelim. App. Order), at 30.

[6] *See* Transcript of Status Conference, Dec. 8, 2018, ECF No. 7331, at 15-17.

[7] Prelim. Appr. Order at 30 ("Class Counsel and Class Plaintiffs are not responsible to, and do not represent, the entity that loses the dispute over the right to claim settlement funds.").

From the Objectors' standpoint, they should have had separate counsel strongly advocating that the settlement benefits corresponding to their card transactions belong solely to them. They are the merchants who "accept" the cards, and they are the ones who paid the overcharge in its entirety. Separate counsel would have insisted that key settlement definitions be crystal-clear on the point, so that there would be no contest for the very same benefit during the claims process.  Negotiations might have ensued, but the Branded Operators would have had their say, such that a true resolution could have been reached.  Instead, there is open conflict.

A settlement that leads two groups to think they own a claim for the very same portion of settlement benefits—with both groups releasing their claims even though one will get no benefits—cannot be approved by the Court.

> As in a litigation class, counsel seeking certification of a settlement class *must show that there are no actual conflicts among the anticipated claims of class members or must show that conflicts can be avoided or ameliorated by proposing subclasses or by providing a plan for distributing benefits based on objective criteria.* The court must determine whether the process for presenting claims and awarding relief to individual class members is manageable *and takes account of differences among class members without creating conflicting interests.*

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.132 (footnotes omitted) (emphasis added).

The persistence of a serious, unresolved conflict portends an appeal that will delay benefits to all settlement class members.  This needless delay can be avoided if Class Counsel's motion is denied, so that all concerned can work through this conflict, via separate counsel, *prior to* final approval.

## II.    SUMMARY OF ARGUMENT

The settlement is not fair, reasonable, or adequate because it has significant structural flaws:

*First*, because its imprecise class definition sweeps in all entities in the payment chain "that have accepted any Visa-Branded Cards and/or MasterCard-Branded Cards" during the class period,[8]

---

[8] Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants, Sept. 18, 2018, ECF 7257-2 at 17.

the proposed settlement creates an intra-class conflict that implicates the rights of tens of thousands of class members. The Branded Operators are undeniably class members given that they accept credit cards from customers at the gas stations and convenience stores they operate. In fact, Class Counsel has conceded that the operators are class members: "It appears that Branded Operators accept cards for payment thereby under the class definition owning the claims relating to the transactions they accept unless by contract they transferred those claims to oil companies."[9]

Yet under the settlement agreement before the Court, Oil Brands contend that *they* are class members, at least to the extent that they "accepted" and paid interchange fees for their owned locations during the class period.[10] Indeed, as discussed *infra*, the defendants have taken the position that the Oil Brands are the entities with the right to proceeds from the settlement. Thus, under the current class definition, both Oil Brands and Branded Operators appear to be class members. This is problematic in that every Branded Operator that accepts Visa and MasterCard payment cards at their retail locations is competing for the exact same settlement dollars with the Oil Brands that handle the processing for those same transactions at those same retail locations. Critically, the claims of both sets of class members will be released by operation of law under the settlement but only one will presumably receive compensation. Moreover, the claims of countless other similarly situated "franchisees" in other industries who accept credit cards under terms set by their "franchisors" will likewise be released without compensation. For this reason, the settlement is impermissibly overbroad.

Intra-class conflicts like this are fatal to class settlements. A settlement class cannot be certified where it includes class members with competing claims.[11] Moreover, the conflict is not eliminated

---

[9] Letter from Rule 23(b)(3) Class Counsel to Judges Brodie and Orenstein, Nov. 15, 2018, ECF No. 7294 at 3.

[10] *See, eg.*, Seideman Decl., ¶ 7.

[11] The Second Circuit has consistently decertified settlement classes "when categories of claims have different settlement values" and lack subclasses and "separate counsel." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 250-51, 253 (2d Cir. 2011); *see In re Payment Card*

simply because Class Counsel and the defendants intend for only one payment to be made per location. On the contrary, this fact only makes the conflict more obvious and significant.

Here, the defendants seek to avoid paying multiple "victims" along a supposed payment chain by sweeping all non-bank entities into the same settlement. But under the current structure, it is impossible for the claims administrator to provide full *pro rata* recovery for each competing claimant along such a payment chain as this would result in multiple payments for the same credit transaction. As a result, Branded Operators in the class are at risk to receive nothing, even though they ultimately paid the interchange fees at issue. The proposed solution of empowering a Special Master to determine thousands of competing claims does not resolve the core structural problem of having dualing claimants fighting for settlement dollars corresponding to the very same transactions.

In order to grant final approval to this settlement, the Court must find that the proposed settlement treats class members equitably relative to each other.[12] This is plainly not the case for Branded Operators. Other class members, department stores, for example, are to receive a *pro rata* share of the settlement fund based on the interchange fees they paid for their retail locations. The Branded Operators, by contrast, cannot be afforded the same allocation because the Oil Brands are in direct competition with them for settlement dollars for the same locations.

*Second*, given the conflict noted above, the class definition and release are overbroad in that they encompass and release <u>all</u> antitrust claims, regardless of whether those claims were brought or pursued in this litigation by Class Counsel, and regardless of whether class members are being compensated for those claims. In particular, the Branded Operators are members of the proposed settlement class because they accepted payment cards at their locations, and they were injured by the

---

*Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 232-36 (2016); *Cent. States Se. & Sw. Areas of Health & Welfare Fund v. Merck– Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 742-43 (2d Cir. 1992).

[12] Fed. R. Civ. P. 23(e)(2)(D).

alleged overcharge because they paid it. However, the defendants and the Oil Brands have taken the position that the Branded Operators are not the "direct payors" and do not have standing to pursue claims under the Sherman Act.[13] If it is ultimately determined that the Branded Operators are not Authorized Claimants (perhaps because a Special Master determines they have no standing under the Sherman Act), the proposed settlement release and class definition are so broad that the Branded Operators' state law indirect purchaser claims would be released, even they would receive no compensation whatsoever. Such a result cannot be sustained under Rule 23 because: (1) it is unfair and inequitable to large numbers of class members; and (2) it provides inadequate (*i.e.*, zero) relief to a subset of class members. For this reason, it is commonplace for direct and indirect payor antitrust class actions to proceed separately, with separate Class Counsel, typically on parallel tracks.[14]

*Third*, and critically, Class Counsel is not protecting the rights of all class members equally and none of the class representatives has interests that are aligned with the Branded Operators. Indeed, the Branded Operators would not be in this position—and the proposed settlement would not suffer from its current fundamental deficiencies—if the operators had been adequately represented in this

---

[13] *See, e.g.*, Status Report, June 20, 2014, ECF No. 6335; *Speedy Stop Food Stores, LLC v. Visa Inc.* (Tex. Dist. Ct., Victoria City, No. 13-10-75377-A); Seideman Decl., ¶ 11; Defs.' pre-motion request to Judge Brodie, Oct. 11, 2018, ECF No. 7271.

[14] *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2019 WL 1789789, at *7 (S.D.N.Y. Apr. 22, 2019) (appointing separate counsel to represent interests of direct and indirect purchasers); *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033, 1056 (S.D. Cal. 2017) (citing order appointing separate leadership for direct and indirect purchasers); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1140 n.3 (N.D. Cal. 2009) ("On January 5, 2007, Plaintiff Trong Nguyen, on behalf of himself and others similarly situated, sued Defendants for violating section 1 of the Sherman Act, 15 U.S.C. § 1. The Court later related and consolidated 23 cases with the Nguyen action. The Court appointed interim lead counsel for the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs on November 15, 2007.") (citations omitted); *see also In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 59 (E.D.N.Y. 2015) (appointing separate co-lead interim counsel for putative classes of direct and indirect purchasers).

matter.[15] In a class action it is fundamental that "The Due Process Clause . . . requires that the named plaintiff at all times adequately represent the interests of the absent class members."[16]

When a district court recently addressed this very issue in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, it was unequivocal that "when subclasses have sufficiently different and antagonistic interests in the litigation, they cannot be represented by the same counsel."[17] Noting that the proposed settlement in that case would have released the asserted claims of a certain subset of indirect purchaser plaintiffs without compensation, the Court directed that those plaintiffs "need to be represented by counsel other than lead counsel for the indirect purchaser plaintiffs."[18]

This is precisely the case here. The Branded Operators and Oil Brands clearly have different and antagonistic interests given their ongoing dispute as to who owns the claims related to their branded operations, yet both are being represented by the same Class Counsel. While each group is asserting ownership of the claims, the proposed settlement would compensate only one of them, necessarily extinguishing the claims of the other without remuneration. This result simply cannot be reconciled with the fundamental due-process and fairness considerations addressed in the *CRT* ruling and overarching adequacy requirements of Rule 23. For these reasons, the Court should deny final approval of the proposed settlement and appoint separate counsel to represent the Branded Operators in new settlement negotiations.

---

[15] Class Counsel's attempt to diminish the legitimate concerns of these class members by claiming, incorrectly, that this is a contractual issue between the Branded Operators and the Oil Brands only underscores Class Counsel's inadequate representation. As explained in the Objector declarations, the contracts between the Branded Operators and the Oil Brands do not and cannot determine who "accepted" credit cards under the parameters of this settlement.

[16] *Hess v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010).

[17] Declaration of Steve W. Berman in Support of Statement of Objections to Final Approval of Class Settlement (Berman Decl.), Ex. 1, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-5944 JST (N.D. Cal.), Transcript of Proceedings (June 6, 2019) at 12:9-12 (filed herewith).

[18] Berman Decl., Ex. 1 at 12:3-5.

### III.   ARGUMENT

**A.   The proposed settlement should not be approved because it includes class members with competing claims for the same settlement proceeds.**

As the Second Circuit recognized when it overturned the first settlement proposed in this case, "the focus of the Rule 23(a) inquiry remains on 'inequity and potential inequity at the precertification stage.'"[19] The U.S. Supreme Court held in *Amchem Products, Inc. v. Windsor*, that the requirements of Rule 23 are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened attention in the settlement context."[20] But the proposed settlement does not protect the interests of a large segment of the putative class. In light of the vague class definition and differing positions on the key question of whether the Branded Operators are or are not entitled to their full *pro rata* share of the settlement for transactions at their retail establishments, absent class members have received no assurances that they will receive any recovery from the settlement, let alone the *pro rata* share promised in the class notice. This obvious deficiency must be rectified to ensure that all class members are treated equitably, as required by Rule 23.

### 1.   The proposed settlement places class members in direct conflict with each other over the same settlement dollars.

The Branded Operators are not being treated equitably as compared to other class members because they are competing directly against the Oil Brands for recovery of settlement proceeds for credit card transactions for the same locations. The defendants recognized this serious conflict and raised it with the Court before the last settlement was overturned. Specifically, the defendants asked the Court for guidance in determining which class members had the right to recover settlement

---

[19] *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 232 (2016) (citing *Ortiz*, 527 U.S. at 858).

[20] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

proceeds as between "franchisors" and "franchisees."[21] As an example, the defendants noted that numerous Branded Operators that had opted out of the class settlement filed claims that were in direct competition with Oil Brands that still remained in the class.[22] The defendants explained that the problem of duplicative claims had arisen among class members and opt outs and would likely continue to be a significant issue between class members: "There are thousands, if not tens of thousands, of franchisees that [are] members of the Rule 23(b)(3) Settlement Class. Accordingly, the same potential issue of duplicative claims covering the same transactions is virtually certain to arise in that context as well, with franchisees filing claims for settlement funds based on the same transactions that are the basis for franchisor claims."[23]

The defendants took the position that only one of the competing class members should be entitled to receive the settlement proceeds because a decision to pay both the "franchisor" and "franchisee" would negatively affect other class members by reducing the limited amount of recovery available to the remainder of the class. They concluded by suggesting that the franchisors that have the relationship with the acquiring bank should be the class members that recover, arguing that "ensuring that only the entity that paid the merchant discount fee to the acquiring entity can recover for the alleged interchange overcharge on a transaction would be consistent with the animating principle of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 (1977)." *Id.* at 6.

---

[21] Status Report, June 20, 2014, ECF No. 6335, at 5. The defendants explain that franchisors often have the relationship with the acquiring bank and they contend that the franchisor should therefore be the class member that recovers. The defendants use the term "franchisor" in reference to the Oil Brands and "franchisee" when referring to the Branded Operators. In addition to these entities, the Status Report makes clear that there are other franchisor-franchisee conflicts outside of the convenience store/petroleum industry.

[22] *Id.* at 4.

[23] *Id.* at 5.

At that time, Class Counsel did not take a position on which competing class member would own the claim but did agree that a procedure should be established for determining which entity had a "right to opt out of and be compensated from the fund."[24] Class Counsel did not appear concerned about the harm to class members that would necessarily derive from leaving open the critical question of whether a class member does or does not have a right to recovery until *after* the deadline to opt out or stay in the class has already passed. In fact, in response to Objectors' submissions prior to preliminary approval, Class Counsel again minimized the harm to class members resulting from this conflict by incorrectly characterizing the dispute as one stemming from a contractual issue. But the structural flaws in the settlement that result from the imprecise class definition cannot be cured by reference to thousands of contracts between franchisors and franchisees that do not and cannot determine who is entitled to payment from this settlement.[25]

Even more troubling, having recognized the significance of this issue to "thousands, if not tens of thousands of franchisees," before the last settlement was overturned, *id.* at 4, Class Counsel and the defendants did nothing to address this intra-class conflict in the current settlement. Class Counsel and defendants again did nothing to address these issues after Objectors brought them to light in advance of preliminary approval. Indeed, the proposed settlement still does not address or rectify this conflict at all.

Before the last settlement was overturned, the defendants proposed that this issue be addressed in a supplemental notice to class members.[26] The defendants recognized that class members were confused and did not know whether or not they were entitled to relief under the settlement.

---

[24] *Id.* at 7.

[25] *See* Seideman Decl., ¶ 9; Baker Decl., ¶ 10; McNutt Decl., ¶ 8.

[26] Settling Parties' letter to Judges Gleeson and Orenstein, Sept. 19, 2014, ECF No. 6346; 6346-1.

Class Counsel opposed including any notice to class members at that time, and no notice was provided.[27] Despite their awareness of the significance of this issue, the parties declined to incorporate anything into the new proposed settlement to address these problems. As a result, the class notice disseminated misleading and incorrect information to thousands of Branded Operators who were led to believe that they would receive their *pro rata* share of the interchange fees they paid if they remained in the class—even though Class Counsel and the defendants know this is not guaranteed given the competing claims being made by the brands.

For the first time in a filing on November 15, 2018, Class Counsel set forth a position that appeared to be directly at odds with the defendants' position. Class Counsel wrote: "It appears that Branded Operators accept cards for payment thereby under the class definition owning the claims relating to the transactions they accept unless by contract they transferred those claims to oil companies."[28]

Of course, any class member that *transferred* its claims no longer owns those claims (though such a transferor is distinct from a merchant that arranged for someone to process claims while continuing itself to pay overcharges).   Yet, Class Counsel characterizes the question of whether Branded Operators transferred their claims as a "potential claims allocation issue," without explaining why this would be the case, or what that means for the tens of thousands of Branded Operators who are absent class members.  Rather than adding any clarity, Class Counsel's letter instead added another layer of complexity by introducing the possibility that a mini-trial would need to take place on a contested issue of contractual rights, before these class members can obtain any recovery.[29] This is a

---

[27] Civil Conference Minute Order, Sept. 23, 2014, ECF No. 6348.

[28] Class Counsel Letter, Nov. 15, 2018, ECF No. 7294, at 3.

[29] The Court similarly indicated that a Special Master may need to be appointed to address these conflicts, but no notice containing, *inter alia*, information specifying how these determinations would be made, what evidence would be required of class members, and what allocation methodology

far cry from answering the simple question of whether Branded Operators are to be treated the same as other merchants—or not.

The confusion among Branded Operators has only been exacerbated since the Court granted preliminary approval. Branded Operators were forced to make a decision to opt out or stay in the class without any understanding of what, if anything, they would receive from the settlement. Neither the Court nor the settlement itself specified any procedure to be applied to resolve this conflict in a manner that would have enabled the operators to evaluate what they would receive in the class and what would be required of them in order to attain any payment.[30]

### 2. No post-approval administrative procedure can fix the problems created by the unaddressed conflicts.

An administrative procedure cannot solve the conflicts here, which go to the very definition of class membership and define the parameters of the class. The settlement and notice can be read to advise both Branded Operators *and* Oil Brands that they are proper claimants to the *same* portion of settlement funds corresponding to the same transactions. And Class Counsel knows this is how both of those groups are reading the agreement and notice. The settlement specifies no negotiated apportionment among these claimants, nor does it specify how to address the problem of competing claimants filing for the very same portion of the settlement fund. Thus, no one knows for certain which entity will be deemed the Authorized Claimant as between these applicants for settlement benefits. Rather, the settlement sets up a blind, all-or-nothing situation where one group of contestants necessarily will be left without any compensation under the class settlement.

Again, this grave clash among anticipated claimants should have been—and was required to have been—worked out, via separate and non-conflicted counsel, *prior* to presentation of a settlement

---

would be applied, has been disseminated to class members or determined by this Court. *See* Prelim. Appr. Order, at 30 n.26.

[30] *Id.*

for final approval.  *E.g.*, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.132 ("The court must determine whether the process for presenting claims and awarding relief to individual class members is manageable and takes account of differences among class members *without creating conflicting interests*.") (emphasis added); *cf. In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194 (5th Cir. 2010) (in limited fund case, the court stated: "[T]he settlement provides for the appointment of a special master to 'provide to the Court a recommended disposition and protocol with regard to the remaining [settlement fund], and treatment of Claims of Class members.' This arrangement simply punts the difficult question of equitable distribution from the court to the special master, without providing any more clarity as to how fairness will be achieved. The lack of any 'procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves,' . . . leads us to reverse the district court's order certifying this class.") (citing *Ortiz*, 527 U.S. at 848).

Rather than squarely addressing the conflict or lack of clarity in the settlement agreement or notice, Class Counsel's position simply underscores the parties' differing positions regarding class membership and does nothing to resolve it. Class Counsel and the defendants purport to have an agreement on which there was a meeting of the minds but they do not agree on the key point of who owns these claims. The Court has indicated that Branded Operators may or may not be class members.[31] Yet the Court thus far has not required the threshold determination of class membership to be made until *after* the settlement is been finally approved, leaving Branded Operators without any way of determining whether they are in the class, such that they can expect the same pro rata share of settlement benefits provided to other class members.

To compound this problem, it appears that many Branded Operators did not even receive notice of the settlement. It remains unclear whether the Oil Brands were required to provide lists of

---

[31] Prelim. App. Order, at 34 n.28.

their Branded Operators to facilitate notice—in order to ensure notice was disseminated to all Branded Operator class members. Branded Operators need to know whether they are in or out of the class, and whether they will recover their *pro rata* share of funds from the settlement before final approval can be granted. It is the province and burden of Class Counsel to clearly and appropriately define the class so that class members can ascertain whether or not they are included and whether they are being treated fairly.[32]

No *post hoc* administrative proceedings, with or without a Special Master, can cure these essential and fatal defects. Like the parties, the Court recognizes the conflict *pre-approval*. It has written that *"[t]he Court acknowledges that the issue of competing claims is a genuine issue* that will need to be addressed in the future."[33] This present recognition means there is no justification to be found for final approval based on *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003), where a Special Master was appointed to attempt to resolve unanticipated conflicts.[34] In that case, there were no objectors and the conflict was not brought to the parties' attention until after final approval had been granted. Here, the parties were well aware of this conflict before the current parameters of the settlement were even finalized. Final approval should be denied so the parties can fix this "genuine issue" now.

3.    **The proposed class definition is overbroad because it gives rise to the notion that there are class members at different levels of the payment chain, which has engendered conflicts.**

Rule 23(a)'s class certification requirements, which are "designed to protect absentees by blocking unwarranted or overbroad class definitions[,] demand undiluted, even heightened attention

---

[32] *Amchem*, 521 U.S. 591 (1997).

[33] Prelim. Appr. Order at 30 n.26 (emphasis added).

[34] *See* Prelim. Appr. Order at 30 n.26 ("There, the court appointed a special master to resolve disputes over claims *that did '*not fit within the category of challenges contemplated by the Settlement Agreement and Plan of Allocation.'*"*) (emphasis added) (citation omitted).

in the settlement context."[35] The Oil Brands and the defendants in this and other related litigation have taken the position that the Branded Operators are not the "direct payors" of the interchange fee, and that they do not have standing to pursue claims under the Sherman Act.[36]

The Oil Brands process payment card transactions for the tens of thousands of gas stations and convenience stores that fall within their brand.[37] Nevertheless, the Branded Operators are responsible for payment of the entire interchange fee on all payment card transactions at their respective locations.[38] The interchange fees are deducted directly from the transaction amounts.[39] Thus, while the Oil Brands may have processed the payment, the Branded Operators are the ones that actually paid and sustained injury by the overcharge.

Many of the Oil Brands believe that by virtue of their processing mechanics, they are members of the proposed settlement class because they are "direct payors" under the antitrust laws.[40] Although the Branded Operators submit that this is factually and legally incorrect, many Oil Brands believe they are entitled to compensation for any overcharges on the interchange fees paid on sales at all branded retail locations nationwide.[41] The payment card transactions at the retail locations necessarily overlap with and are duplicative of the transactions processed by the Oil Brands at those locations. As a result, the retailers and the refiners each claim entitlement to the same overcharges on the same transactions.

---

[35] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord*, *Ortiz*, 527 U.S. at __.

[36] *See, e.g.*, Status Report [ECF No. 6335]; *Speedy Stop Food Stores, LLC v. Visa Inc.* (Tex. Dist. Ct., Victoria City, No. 13-10-75377-A); Seideman Decl., ¶ 11; Defs.' October 11 Letter [ECF No. 7271].

[37] *See, e.g.*, Seideman Decl., ¶ 5.

[38] *See, e.g.*, Seideman Decl., ¶ 6.

[39] *Id.*

[40] *Id.* at 7; Baker Decl., ¶ 8; McNutt Decl., ¶ 6.

[41] Seideman Decl., ¶ 7; Baker Decl., ¶ 8; McNutt Decl., ¶ 6.

Because interchange fees are paid directly to an issuing bank from the customer payment made at the point of sale, the Branded Operators are the direct payors under the antitrust laws. The only Court that has ruled on this precise issue is a Texas court which denied the defendants' motion for summary judgment on the claims of a Branded Operator.[42] The facts in that case demonstrated that the operator's claims that it paid the interchange fee were likely to prevail over the defendants' view. But the issue has not been resolved by this Court.

Critically, the proposed settlement appears to sweep in class members at all levels of the payment chain that "accepted" credit cards, before any determination is made about whether they are direct or indirect payors, and whether they are entitled to any relief. Certification of a class under the Federal Rules of Civil Procedure requires a determination that the elements of any certified claim can be proven through evidence common to the class.[43] Rule 23's requirements must also be interpreted in keeping with the Rules Enabling Act, which prohibits courts from abridging or enlarging substantive rights by certifying a class under Rule 23.[44] Here, because both Oil Brands and Branded Operators are included within the same poorly defined class, the proposed settlement will by necessity either abridge or enlarge the rights of one or the other class member. The class must be redefined in order to comply with the strictures of the Rules Enabling Act and the requirements of Rule 23.

Because it is not clear how this intra-class conflict will be resolved or at what stage it might be resolved, the proposed settlement should not be finally approved. If the Court or a Special Master later determines that "franchisees" are not the "direct payors," their state law indirect purchaser claims would be released through the proposed settlement without any compensation whatsoever. Because the Branded Operators clearly fall within the current class definition of merchants who "accepted"

---

[42] *Speedy Stop Food Stores, LLC v. Visa Inc.* (Tex. Dist. Ct., Victoria City, No. 13-10-75377-A).

[43] *In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3rd Cir. 2008).

[44] *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011).

010781-11 1155089v1

credit cards, it remains unclear how they can be released from the class based on the future findings of a Special Master. And, if the Branded Operators cannot recover as direct payors under this settlement, they should not be precluded from pursuing claims as indirect purchasers. Far from adequate relief, such a result would be unfair and inequitable relative to other class members and thus would violate class members' constitutional right to due process.[45]

"A concern for merits-avoidance should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether the plaintiff has met her burden of establishing each of the Rule 23 class action requirements."[46] Here, Class Counsel has not definitively established which of these competitors (the Oil Brands or the Branded Operators) is the class member and proper claimant. A class cannot be certified with such uncertainty about the basic boundaries of class membership. "No matter how much [the defendants] want to bind everyone in America, and no matter how much the attorneys stand to gain from their percentage of the settlement, and no matter how laudatory the 'global' resolution of a price-fixing case may be as a policy matter, there are limits on the power of federal courts to facilitate settlements and bind absent class members and objectors."[47]

### 4. The interests of the Branded Operators are not being adequately represented.

The requirement of adequate representation cannot be minimized or ignored because, among the factors a court is asked to consider in connection with a proposed settlement, it alone is of constitutional dimension. Indeed, the Supreme Court has emphasized repeatedly that "the Due

---

[45] *Interchange*, 827 F.3d at 236 (citing *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 260 (2d Cir. 2001)) ("Part of the due process inquiry (and part of the Rule 23(a) class certification requirements) involves assessing adequacy of representation and intra-class conflicts.").

[46] *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 318 n. 17 (3rd Cir. 2008).

[47] *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 354 (Dissent) (3rd Cir. 2011).

Process Clause of course requires that the named plaintiff at all times adequately represent the interests of absent class members,"[48] and that adequacy of representation is "a continuing [duty]."[49]

The protection of absent class members is particularly important where they have antagonistic interests. Rule 23(a)(4) specifically furnishes this protection, permitting a court to certify a class "only if … the representative parties will fairly and adequately protect the interests of the class." This protects absent class members "by blocking unwarranted or overbroad class definitions[.]"[50] Because class-action settlements surrender the legal rights of persons not actually party to the suit, the adequate-representation requirements demand "undiluted, even heightened, attention in the settlement context."[51] As explained in *Amchem*, one of those requirements is "intraclass equity" which seeks to mitigate the incentive to sacrifice some class members' interests to benefit others. [52]

Echoing *Amchem*, the Supreme Court reaffirmed in *Ortiz v. Fibreboard Corporation* that intraclass equity, or "the fairness of distributions to those within" the class, is one of Rule 23(a)(4)'s requirements.[53] For *Amchem* made it obvious "that a class divided" among claimants with distinct injuries "requires division into homogenous subclasses…, with separate representation to eliminate conflicting interests of counsel."[54]

Here, although the Branded Operators have interests diverse and distinct from those of other class members who are not competing directly with other class members for compensation for their

---

[48] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

[49] *Matsushita Electric Industrial Co., Ltd v. Epstein*, 516 U.S. 367, 374 (1996) (Ginsburg, J., concurring).

[50] *Amchem*, 521 U.S. at 620.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 854, 863.

[54] *Id.* at 856.

*pro rata* recovery of the interchange fees they paid, neither they nor any other "franchisee" has any representation in the class. In addition, Class Counsel is inherently conflicted based on its representation of a class that contains dueling class members.

The adequacy requirement is paramount, and applies to both the named plaintiff(s) and counsel.[55] A primary purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent."[56] The adequate representation requirement "is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class."[57] Of course, Class Counsel may dismiss the conflicts here and argue that the lead plaintiffs identified in this case owe nothing to the tens of thousands of putative class members that sell branded fuel—but that is exactly the point. No one is looking out for the interests of these class members.

The Second Circuit has policed settlements (including overturning the prior settlement in this case) to ensure that safeguards are in place to prevent unfair and inadequate settlements from being consummated—especially when "[c]lass counsel stood to gain enormously if they got the deal done."[58] For example, Class Counsel in *In re Literary Works in Electronic Databases Copyright Litigation* attempted to negotiate compensation from Google for three separate "categories" of class members in a single settlement.[59] As in *Ortiz*, each category had legally distinct claims of varying strength.[60] Yet each class

---

[55] *Id.* at 626.

[56] *Id.* at 625-626.

[57] *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331, 100 S. Ct. 1698, 1707 (1980); *Prado-Steiman ex rel. v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (noting that the "incentives" of the class representative must "align with those of absent class members so as to assure that the absentees' interests will be fairly represented").

[58] *Interchange*, 827 F.3d. at 234, 236.

[59] 654 F.3d 242, 246 (2d Cir. 2011).

[60] *Id.*

representative "served generally as a representative for the whole, not for a separate constituency."[61] The Court found that the representation was inadequate and rejected certification because the class representatives "cannot have had an interest in maximizing compensation for *every* category."[62] This structural error alone was sufficient to warrant reversal and remand; the Court did not address whether the compensation negotiated for any given category was unfair or inadequate. The Second Circuit also previously rejected unitary representation as inadequate in this case, when the representatives "were in the position to trade diminution [of one subgroup's] relief for increase of [another subgroup's] relief."[63]

The Second Circuit has repeatedly enforced Rule 23's procedural protections with "added solicitude" in the settlement context, standing guard against the "imperatives of the settlement process."[64] As the appeals court explained in overturning the prior settlement in this case, "divergent interests require separate counsel when it impacts the 'essential allocation decisions' of plaintiffs' compensation and defendants' liability."[65] The Second Circuit does not encourage district courts to examine the fairness of a class settlement to varying class members only where there are separate classes to be certified under 23(B)(2) and 23(B)(3) and has firmly held that the value of any subgroup of claims cannot be properly assessed in the settlement context without independent counsel pressing its most compelling case.

In *Literary Works*, for example, the named plaintiffs held "a variety of claims across the spectrum" (including all compensation categories). "[T]he attorneys conducting the negotiations . . .

---

[61] *Id.* at 251 (quoting *Amchem*, 521 U.S. at 627).

[62] *Id.* at 252 (emphasis in original).

[63] *Interchange,* 827 F.3d at 234.

[64] *Id.* at 235.

[65] *Id.* at 233-34.

represented holders of all three species of claims from the outset," and "[n]o claims unique to a portion of the class [we]re forfeited without compensation."[66]  In that case, there was no incentive to bargain future claims against currently injured claimants.[67] Still, the Second Circuit invalidated the settlement and required subclasses.[68] It probed the "settlement's substance for evidence of prejudice to the interests of a subset of plaintiffs" and found that it was there.[69] Because the disparate treatment of that subset lacked "credible justification," it "strongly suggest[ed] a lack of adequate representation for those class members."[70]

Where, as here—for the second time in this case—a release is broader than the relief provided, such that some entities could receive "valueless relief while releasing a host of claims of unknown value," the Second Circuit will not hesitate to strike the deal.[71] In fact, the Second Circuit's procedural protections are so robust that it has allowed a collateral attack on a global settlement (in the *Agent Orange* litigation), holding that "the plaintiffs could not be bound by the settlement release" because "their class representative negotiated a settlement and release that extinguished their claims without affording them any recovery."[72]

In *CRT,* the district court originally approved the settlement of nationwide class of indirect purchasers, with a plan of allocation that did not allow for monetary relief for residents of states that did not provide for standing for indirect purchasers (even as these class members released their

---

[66] *Id.* at 261- 62 (Straub, J., dissenting).

[67] *Id.* at 263.

[68] *Literary Works*, 654 F.3d at 256 n.10.

[69] *Id.* at 252.

[70] *Id.* at 254.

[71] *Interchange*, 827 F.3d at 239.

[72] *Id.* at 237.

claims).[73] Residents of some of the repealer states objected and appealed the final approval of the settlement to the Ninth Circuit Court of Appeals.

At oral argument, the Ninth Circuit indicated some concern with the proposed plan of allocation. In response (and without a ruling from the Ninth Circuit), class counsel offered a revised proposal whereby they would give up part of their fee for residents of Missouri, Massachusetts, and New Hampshire. Class counsel then requested an indicative ruling from the district court judge regarding this revised proposal.[74] The district court denied the request and concluded that it had "erred in approving the parties' original settlement" given the release of class members' claims without compensation, and it questioned whether class counsel was adequate to represent both segments of the class.[75] But regardless of whether the issue was framed as one of conflict of interest, or adequacy of counsel, the district court ruled that it required "further exploration and potentially the appointment of separate counsel."[76] The district court did ultimately appoint separate counsel for the previously disregarded subclass.

As noted by the court in *CRT*, despite laudatory efforts to obtain a favorable result for the majority of clients, "pitting one set of clients' claims against those of another is a classic indication of

---

[73] Order Granting Final Approval, *In re CRT*, No. 3:07-CV-5944 JST, Nov. 16, 2016, ECF No. 5040 (N.D. Cal.).

[74] Indirect Purchaser Plaintiffs' Notice of Motion and Motion Pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling on Their Motion to Amend the IPP Fee Order and Amend the Plan of Distribution, *In re CRT*, No. 3:07-CV-5944 JST, Oct. 1, 2018, ECF No. 5335 (N.D. Cal.).

[75] Order Denying Indirect Purchaser Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling on Their Motion to Amend the IPP Fee Order and Amend the Plan of Distribution, *In re CRT*, No. 3:07-CV-5944 JST, Nov. 8, 2018, ECF No. 5362 (N.D. Cal.).

[76] *Id.* at 2.

a potential conflict of interest."[77] Class Counsel simply cannot ignore the conflict of interest that exists within this proposed class.

### 5. The magnitude of the intra-class conflict is substantial as it potentially involves tens of thousands of class members and billions of payment transactions.

The declarations provided herewith attest to the significance of these issues and this conflict as it relates to nearly every major gasoline brand. The representative clients themselves cover almost every brand and operate at locations throughout the country. And in addition to the clients who submitted detailed objections to this Court, there are thousands of similarly situated Branded Operators who owned and operated tens of thousands of branded convenience stores and gas stations during the class period. Moreover, the accompanying submissions from the Associations, further underscore the widespread nature of this problem. Those associations collectively represent more than 50 percent of all retail motor fuel sales in the United States, including 90 percent of all domestic retail diesel fuel.

Given the size and complexity of the class, the issue of duplicative claims is also virtually certain to arise in other franchisor-franchisee contexts beyond the oil industry. Indeed, the defendants already have confirmed that there were thousands if not tens of thousands of franchisees that would potentially have claims covering the same transactions as their franchisors.[78] Defendants agree that "[t]his will likely give rise to disputes regarding who is entitled to recovery based on the transactions, and lead to obvious issues of administration."[79] Because of the magnitude of this problem and the significance of the conflict to the Branded Operators, this settlement should not be finally approved until these issues are properly addressed and rectified.

---

[77] *Id.*

[78] Status Report, June 20, 2014, ECF No. 6335 at 5.

[79] *Id.*

**B.     The potential exclusion of many Oil Brands from the settlement increases the likelihood that thousands of additional Branded Operators will be precluded from recovery within the class.**

As noted in their declarations, Objectors expect that many of the Oil Brands will exclude themselves from the class settlement and pursue independent settlements. Rather than minimize the conflict explained herein, this will cause an even more significant problem with the proposed settlement. Because the Oil Brands will be seeking recovery for the same locations owned and operated by the Branded Operators, under the current structure of the settlement, the Oil Brands' exclusion of those locations will leave the Branded Operators with no opportunity to recover for those locations within the class settlement.

The defendants have already permitted Oil Brands, including Valero, to negotiate opt-out settlement agreements on behalf of all of their Branded Operators without the consent of the operators.[80] And the proposed settlement purports to exclude from the class all entities identified in any exclusion list submitted by the companies. For example, the list of excluded entities submitted by Valero identified more than 400 Branded Operators that have been excluded from the proposed settlement.[81] Class Counsel's exclusion of the claims of hundreds of class members that owned and operated convenience stores and gas stations selling Valero fuel—with the imprimatur of this Court, as is required under Rule 23—is patently unfair and violates their constitutional right to due process.[82]

---

[80] *See e.g.*, Seideman Decl., ¶¶ 16-17.

[81] In their opposition to preliminary approval, the Objectors produced a list of more than 400 Branded Operators that were purportedly excluded from the class. Objector Slidell Oil is one of the Branded Operators that had been excluded by Valero, without its consent. In response to these objections, Class Counsel's revised notice clarified that Branded Operators were excluded from the settlement only for their Valero locations, but Class Counsel has not rectified the wrongful exclusion of these Branded Operators from the settlement without their consent.

[82] *Ortiz*, 527 U.S. at 848 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("before an absent class member's right of action was extinguishable due process required that the member 'receive notice plus an opportunity to be heard and participate in the litigation,' and… 'at a

The wrongful exclusion of the Valero operators, and all of the locations they own or operate (or both), without their consent and without compensation,[83] illustrates the fundamentally defective nature of the proposed settlement and exposes the risk that hundreds or thousands of other Branded Operators will similarly be excluded. Other oil companies are expected to attempt to negotiate the same type of settlements, potentially releasing the claims of thousands of other operators, by virtue of the release of the claims for the locations they operate.[84] The Oil Brands are attempting to negotiate these opt-out settlements precisely because of the conflicts addressed in this objection; that is, they believe they own all of these claims, whereas the Branded Operators believe they do.

## IV.     CONCLUSION

Under the Federal Rules, the expected relief to the class is a "central concern."[85] Thus, the Court must carefully evaluate the claims process and any agreements regarding allocation to determine whether it bears on the adequacy of relief, especially as it pertains to the equitable treatment of the class.  For the reasons set forth herein, the obvious and significant conflict among a large segment of the class cannot be disregarded. The conflict and potential obliteration of the claims of the Branded Operators will continue and only worsen if the Court does not protect these absent class members and deny Class Counsels' motion for final approval of the proposed settlement.

---

minimum… an absent plaintiff [must] be provided with an opportunity to remove himself from the class.'")).

[83] Prior to the Objectors' intervention, Class Counsel had not even proposed to provide these hundreds of marketers with notice of their exclusion.

[84] *See, e.g.*, Seideman Decl., ¶ 18.

[85] FRCP 23 Advisory Committee Note Paragraphs (C) and (D).

DATED: July 23, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _/s/ Steve W. Berman_
    Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
shanas@hbsslaw.com

Nathaniel A. Tarnor
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 310-2980
nathant@hbsslaw.com

LAW OFFICE OF JANA EISINGER, PLLC

By: _/s/ Jana Eisinger_
    Jana Eisinger
4610 South Ulster Street, Suite 150
Denver, CO 80237
Tel: (303)209-0266
Fax: (303) 353-0786
jeisinger@eisingerlawfirm.com

*Counsel for Objectors Fikes Wholesale, Inc., Midwest Petroleum, Inc. and Slidell Oil Company, LLC*

- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2019, I electronically filed the foregoing document using the

CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the

CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN

010781-11 1155089v1