UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: <br> PAYMENT CARD INTERCHANGE FEE <br> AND MERCHANT DISCOUNT <br> ANTITRUST LITIGATION | 05-MD-01720 (MKB)(JO) |

## DECLARATION OF TATE A. SEIDEMAN

I, Tate A. Seideman, hereby declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness at any proceeding before this Court, I could and would competently testify as set forth herein.

**Background Regarding My Companies**

2. I am the Vice President and General Counsel of Fikes Wholesale, Inc. ("Fikes"). Fikes is a multi-branded petroleum products marketer that has been in business since the 1950s. We distribute to retail fueling stations throughout the Southeastern United States refined petroleum products produced and "branded" by refiners such as Shell, ExxonMobil, ChevronTexaco, and Valero (the "Refiners"). In addition, Fikes distributes "non-branded" refined petroleum products to commercial and retail customers.

3. During the class period identified in the proposed settlement agreement in this action (the "Class Period"), Fikes distributed Refiner-branded and non-branded motor fuel to its own company-operated retail gas stations and convenience stores (which were operated under

1

entity names such as CEFCO, Food Fast Corporation, Deweese Enterprises, Inc.) and to retail gas stations and convenience stores operated by its third-party customers (collectively the "Fikes Retailers").

4. During the Class Period, Fikes Retailers accepted from customers Visa-Branded and MasterCard-Branded payment cards at all of their retail locations. As a result, Fikes Retailers are members of the proposed Rule 23(b)(3) Settlement Class in this action.

**The Refiners**

5. The Refiners (or their designees) process all payment card transactions at their respective Fikes Retailer locations, including on all inside sales on things like food, snacks, and drinks and all fuel sales. For example, Shell (or its designee) processes all payment card transactions at Shell-branded Fikes Retailer locations; Chevron (or its designee) processes all payment card transactions at Chevron-branded Fikes Retailer locations, and so on. Regardless of which Refiner transactions are processed through, and regardless of which third-party processing company handles the transactions, the mechanics of payment card processing is materially similar at every Fikes Retailer location. For stores that are not Refiner-branded, we use a third-party processing company to processes our payment card transactions, just as they are processed for our Refiner-branded locations.

6. Fikes Retailers are responsible for payment of the entire interchange fee, among other processing fees, on all payment card transactions at their respective retail locations. The agreements between fuel distributers and various Refiners do not address the unique situation here. The agreements do not alter the fact that the retailers are responsible for and pay the interchange and credit card fees that give rise to the antitrust claims at issue in the lawsuit. The interchange fees are deducted directly from the transactions at the point of sale. Since Fikes

Retailers pay 100% of the interchange fees, any interchange fee processed by the Refiners on sales at Fikes Retailer locations -- and any antitrust overcharge on that interchange fee -- was incurred entirely by Fikes Retailers. While payments may have been processed through the Refiners, the Fikes Retailers are the ones that actually paid and sustained injury as a result of the overcharge.

**The Refiners' Claims Conflict with Claims of the Fikes Retailers, and the Settlement Does Not Address the Conflict Or Give Me Enough Information to Make an Informed Decision About My Rights**

7. I understand from several sources that many of the Refiners, including Shell, Chevron, CITGO, Sunoco, and Phillips believe that by virtue of their processing mechanics, they are members of the proposed settlement class and that they are entitled to compensation for any overcharges on the interchange fees paid on sales at Refiner-branded Fikes Retailer locations. I also understand that the defendants have taken the same position and that they believe that the Refiners, and not the tens of thousands of retail store owners and operators like the Fikes Retailers, are the proper class members who are entitled to relief from the proposed class settlement. I have reviewed a Status Report provided to the Court in this case in which the defendants explain their belief that the Refiners, and not the retail owners and operators, have a right to recoup the overcharges at issue in this case. If that is the case, it would be a windfall for the Refiners since it was the Fikes Retailers, not the Refiners, that absorbed the overcharge.

8. Even more troubling to the Fikes Retailers (and the thousands of other branded operators like us) is that we are being asked by this class settlement to fully settle and release any claims we have for recovery against the defendants, while we are being given no reason to believe that we will be able to obtain any monetary recovery at all for our Refiner-branded locations. We are certainly not being treated equitably or in the same manner as other class

members (department stores, for example) who are not competing against other class members for settlement proceeds for the same retail locations and same transactions.

9. The payment card transactions at Fikes Retailer locations necessarily overlap with and are duplicative of the payment card transactions processed through the Refiners at those locations. As a result, Fikes Retailers and the Refiners each claim entitlement to the same overcharges on the same payment card transactions, and therefore are competing for the exact same set of class settlement dollars. This seems to me to be a direct conflict between members of the proposed class. This conflict is not a "contract dispute." The contracts between Fikes Retailers and the Refiners do not address which entity is entitled to settlement funds from this class action, and do not address which party is the first "payor" of the interchange fees such that they might be entitled to recovery under the Sherman Act. Rather, those are factual disputes (stemming from the imprecise class definition, which sweeps in multiple levels of the payment chain) that cannot be adequately resolved in an administrative settlement proceeding.

10. To my knowledge, no "allocation procedure" has been proposed in the class settlement that would ensure Fikes Retailers obtain any recovery, nor would any allocation procedure seem to be able to resolve the direct conflict regarding which set of class members (the Fikes Retailers and the tens of thousands of gas stations and convenience stores, on the one hand, or the Refiners, on the other hand) is entitled to settlement funds for transactions occurring at these retail locations.

11. These facts lead me to believe that the class is not properly defined, as one of those sets of class members (most likely, the Fikes Retailers and other operators of Refiner-branded outlets, as evidenced by the position of the defendants and the Refiners) may recover no compensation through the proposed class settlement. It is not clear how that will be resolved,

4

and so I cannot make an informed decision about whether to participate in the class settlement or opt out. Resolving these issues *after* I am obligated to make a decision about whether to opt-out or participate in the class has put me in an unfair position of simply guessing about whether the class settlement will compensate the Fikes Retailers at all in exchange for the release we would be giving the defendants.

**Fikes Retailers Are Defined as Class Members, But Multiple Parties Have Taken the Position That Fikes Retailers are Indirect Payors and Not Entitled to Compensation**

12. I understand that the defendants in this action have taken the position in related litigation, as also reflected in the attached Status Report submitted in this case, with respect to Refiner-branded gas stations, that retail gas stations in general are "indirect purchasers" as opposed to "direct purchasers," and therefore lack standing to recover any damages under the Sherman Act. Although the defendants take the position that Refiner-branded retailers and other "franchisees" are indirect purchasers, to my understanding this proposed settlement does not clearly provide relief to "indirect purchasers" who accepted Visa-Branded or MasterCard-Branded Cards at their retail locations, even though they appear to be defined as being in the class. The defendants explained in the Status Report that the payments to be made under the settlement (and to any Refiners that opt out) are to be paid only once. Yet, Fikes Retailers and other similarly-situated fuel distributors and gas station operators will have all of our claims released, including Sherman Act *and* indirect purchaser state law claims (which, to my knowledge, were not even pursued in this litigation by the class plaintiffs). If payments for any retail location are only to be made once, and the defendants prevail in their position that those payments belong to the Refiners, then Fikes Retailers will get nothing in exchange for the broad release of all our claims.

13. In addition, many of the Fikes Retailers' locations have changed the brand of motor fuel being sold during the Class Period. Just this year (and in prior years), many of the Fikes Retailers locations changed from being Refiner-branded stores to non-branded stores. Importantly, when a store changes from being Refiner-branded to being non-branded, nothing changes with respect to who incurs the interchange and credit fees for sales conducted at the location. It is always the Fikes Retailer who incurs those fees. Thus, accepting the Refiners' position would lead to the unsound conclusion that there are many retail locations where the Refiner would be entitled to settlement dollars for sales during a portion of the Class Period, while the Fikes Retailer is entitled to settlement dollars for sales during a different portion of the Class Period, despite the fact that the change in brands did nothing to alter the fact that interchange and credit card fees were consistently incurred by the Fikes Retailers during the entire Class Period, not by any Refiner.

14. For the reasons discussed above, the settlement papers and proposed notice for the settlement class do not address any of these issues and do not indicate to me whether Fikes Retailers would receive any compensation for Refiner-branded locations through the class settlement and/or how any allocation methodology relating to the Refiners that might be proposed in the future would work. As a result, the settlement papers do not give me enough information to make an informed decision about whether Fikes Retailers should participate in the class settlement or exclude ourselves and pursue alternative avenues of recovery.

**My Companies Were Wrongly Excluded From a Portion of the Settlement**

15. In addition to the issues above, there is another significant deficiency with the proposed class settlement as it relates to Fikes Retailers and hundreds of other branded marketers who operated retail locations selling Valero Energy Corporation's ("Valero") branded fuel. The

6

proposed class settlement excludes "Dismissed Plaintiffs" identified on Appendix B to the settlement agreement, and also excludes from the class all other entities identified in any exclusion list submitted to the claims administrator.

16. I have received a copy of the list of excluded entities previously submitted by Valero, which I submitted to this Court in connection with my objection to preliminary approval of this settlement. This exclusion list purportedly excludes two of our entities, Fikes Wholesale, Inc. and Food Fast Corporation, from the current proposed class settlement.

17. Fikes Wholesale, Inc. and Food Fast Corporation never authorized their claims to be excluded or released by the defendants or by Valero. In fact, even the address reflected on the exclusion list is an old company address that we have not used for years, and the Federal Tax ID numbers are not in any way related to Fikes or Food Fast Corporation. From the face of the proposed settlement, it appears that hundreds of entities who may have operated one or more Valero-branded retail locations during the class period have also purportedly been excluded from the class settlement.

**Like Valero, the Other Brands Are Trying to Wipe Out Our Claims**

18. While I believe that the unauthorized exclusion and purported dismissal of the claims of Fikes Retailers should not be permitted by this Court, this issue also supports my concern that, like Valero, other Refiners and the defendants may wipe out Fikes Retailers' claims, and that Fikes Retailers may not receive any compensation through the proposed class settlement. I understand that some of the Refiners are attempting to negotiate settlements with the defendants outside the class context, which further supports and underscores these concerns. If the Court approves this proposed class settlement, and the defendants are indeed negotiating and settling with other Refiners on an opt-out basis and they subsequently identify the released

7

locations (i.e., our independently owned and operated locations) on a forthcoming request for exclusion, the defendants and the Refiners would effectively obtain the Court's imprimatur on wiping out the marketers' claims for recovery in the class settlement altogether. The Court would then be condoning and permitting the extinction of the claims of thousands of operators like the Fikes Retailers – even though we are identified as class members in this proposed class settlement because we accepted Visa and MasterCard payment cards. Apart from objecting to this settlement and asking this Court to ensure that we and tens of thousands of Refiner-branded operators like us can obtain their fair share of recovery from this class settlement, we have little other recourse.

**The Court Should Not Approve the Settlement**

19. I urge this Court to find that this proposed settlement is not fair, reasonable and adequate, because it does not protect the interests of thousands of retailers nationwide who operate Refiner-branded stores. Fikes Retailers and others like us have paid billions of dollars in interchange fees to the defendants during the class period. We should not be asked to release our claims without any clarity as to what we may receive in return.

20. As a result of the foregoing, I do not know whether Fikes Retailers have any material compensation rights under the class settlement, even though the class settlement would seem to release all of their claims -- whether under the Sherman Act, state law, or otherwise. Since the settlement papers do not give me enough information to make an informed decision about whether we should participate in the class settlement or exclude ourselves and pursue alternative avenues of recovery, I believe the proposed class settlement has obvious deficiencies, is unfair, unclear, ambiguous, contains conflicts among class members, and should not be approved without changes that rectify the problems addressed above.

21. The reasons for my objection are stated above in this Declaration, and the laws and other evidence that support my objection are discussed in the Statement of Objections filed contemporaneously with this Declaration, along with the other evidence filed therewith. I am authorized by my position as Vice President and General Counsel of Fikes Wholesale, Inc. to object to the Rule 23(b)(3) Class Settlement on behalf of the Fikes Retailers.

22. My address is at the headquarters of Fikes Wholesale, Inc.: 6261 Central Point Parkway, Temple, Texas 76504. My telephone number is 254-791-0009 ext. 2212.

23. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated July 18, 2019

_____
Tate A. Seideman

The contact information for my attorneys is contained at the signature block of my Statement of Objections, filed contemporaneously with this Declaration.