

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 25 2019 ★

**BROOKLYN OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE: PAYMENT CARD
INTERCHANGE FEE AND MERCHANT
DISCOUNT ANTITRUST LITIGATION

This document relates to:

ALL CASES

**MDL Docket No. 1720**

**MASTER FILE NO.**
**1:05-MD-1720-MKB-JO**

**OBJECTION OF GNARLYWOOD**
**LLC, AND QUINCY WOODRIGHTS,**
**LLC, TO CLASS PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT, and**
**CLASS PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES AND**
**REIMBURSEMENT OF EXPENSES**

## STATEMENT OF OBJECTIONS:

### I.

### INTRODUCTION AND OBJECTION PREREQUISITES

a.  <u>Introduction</u>

In the captioned matter, Gnarlywood LLC, and Quincy Woodrights, LLC object to the RULE 23(b)(3) CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT, Docket Entry No. 7469 ("Final Approval Motion"), and the RULE 23(b)(3) CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, Docket Entry No. 7471 ("Fee Motion"), on the grounds that:

(1)    The Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants (Docket Entry No. 7257-2) ("Superseding Settlement Agreement") is substantively unfair in that it purports to provide the Rule

23(b)(3) Settlement Class Released Parties ("Defendants") a release against their future misconduct – the value of associated un-accrued claims on which is unknown – without corresponding consideration to members of the Rule 23(b)(3) Settlement Class ("Class Members");

(2)     The Superseding Settlement Agreement provides an inequitable distribution of the Net Cash Settlement Fund among members of the Rule 23(b)(3) Settlement Class ("Class Members"), thus implicating Rule 23(e)(2)(A) and (D) and Due Process concerns;

(3)     Class Counsel Fee Motion seeks attorneys' fees of "9.56% of the settlement fund deposited in the *Net Cash Settlement Escrow Account* and *Net Interchange Settlement Escrow Account*" (emphasis added) – neither of which terms is defined in the Final Approval Motion or the Fee Motion – while the Fee Memo, Settlement Agreement, and Class Notice use a variety of other terms to describe the amount against which the sought percentage fee is to be calculated, presenting either a lack of real notice to Class Members or a substantial overreach on the part of Class Counsel;

(4)     Class Counsel's Fee Motion disregards the ruling of the United States Court of Appeals, Second Circuit, in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 827 F.3d 223 (2016),  by including in its lodestar calculations those hours spent prior to September 12, 2013 (i.e. the date of the fairness hearing on the Original Settlement Agreement) in pursuit of Rule 23(b)(2) relief – though the Second Circuit held that in the developing the Definitive Class Settlement Agreement members of the Rule 23(b)(2) "class were inadequately represented in violation of both Rule 23(a)(4) and the Due Process Clause" (*ibid* at 231) – while failing to provide the benefit of any Rule 23(b)(2) relief under the Superseding Settlement Agreement.  Declaration of Thomas J. Undlin in

Page 2

Support of Rule 23(b)(3) Class Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursements of Expenses, Docket Entry No. 7471-2, p. 3 of 101, ¶ 20. ("**Combining the two time periods, from inception through January 2019,** [Class Counsel] spent **over 630,000 hours** prosecuting this case, **generating a total lodestar** of $203,753,749.78.") (Emphasis added.); and,

(5)     Class Counsel seeks to recover fees in the same percentage amount as granted in December 2013 on Class Counsel's April 11, 2013, motion for final approval of the Original Settlement Agreement though under the current Superseding Settlement Agreement the damage period has been substantially extended (though the settlement amount has not been correspondingly increased), the size of the class has increased dramatically, Visa and Mastercard revenues have soared[1], the individual recovery of Class Members relative to their individual damages is reduced, Rule 23(b)(2) relief is non-existent, and a period during which Class Members will suffer compensable damages without recourse or relief has been established.

b.     Class Membership/Standing

Gnarlywood LLC, a California limited liability company, and its affiliate Quincy Woodrights, LLC, a Michigan limited liability company, (collectively "Gnarlywood") are providers of inventory management, product fulfillment, webstore[2] and/or manufacturing services, and/or retail and wholesale sales, and have since 2014 accepted payment from customers by both

---

[1] See attached Exhibits 1 and 2 describing the remarkable revenue growth (and other financial indicators) between 2006 and 2019.

[2] Gnarlywood's provision of webstore services presents an issue similar to that generally described as being between branded suppliers vs. branded marketers regarding who between them has the right to make a claim against the common fund. Gnarlywood reiterates those objections regarding the failure of the Superseding Settlement Agreement to address this basic issue.

Visa and Mastercard. Gnarlywood is among those "persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States" at times during the period of "January 1, 2004 to the Settlement Preliminary Approval Date." Thus, Gnarlywood is a member of the putative Rule 23(b)(3) Settlement Class in the captioned matter. See Memorandum and Order, Docket Entry No. 7363, p. 12, and Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 21, ¶ 4. As a Class Member, Gnarlywood has standing to object to both the Final Approval Motion and the Fee Motion.

c.      Objector's Contact Information

Gnarlywood LLC is a California limited liability company doing business at 2081 Faraday Avenue, Carlsbad, California 92008; telephone: 808.397.0818.

d.      Identification of Objector's Counsel

Gnarlywood is represented by Kendrick Jan, an attorney licensed to practice law in the State of California, but not a member of the bar of the United States District Court, Eastern District of New York. Attorney Jan intends to file a motion for admission to appear *pro hac vice* in the Eastern District of New York for the limited purpose of participating as Gnarlywood's counsel in the captioned matter. Attorney Jan's contact information is: Kendrick Jan, Attorney, Kendrick Jan, APC, 402 West Broadway, Suite 1520, San Diego, California 92101; telephone: 619.231.7702. (Note: This Objection of Gnarlywood LLC to Class Plaintiffs' Motion for Final Approval of Class Action Settlement, and Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses is prepared and submitted with assistance of counsel.)

e.      Notice of Intent to Appear at Fairness Hearing

Gnarlywood intends to appear through counsel at the November 7, 2019, final approval hearing ("Fairness Hearing") to provide perspective and argument in support of this objection.

f.     Objector Does Not Intend to Call Witnesses

Gnarlywood does not intend to call witnesses at the November 7, 2019, Fairness Hearing.

## II.

## THE SUPERSEDING SETTLEMENT AGREEMENT IS SUBSTANTIVELY UNFAIR TO CLASS MEMBERS

"A court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 116 (2d Cir. 2005), citing *Joel A. v. Giulani*, 218 F.3d 132, 138 (2d Cir. 2000).   A settlement's fairness is determined by both settlement terms and the underlying settlement process. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.* 396 F.3d at 116, citing *Manual for Complex Litigation Third,* § 30.42 (1995).  While the Superseding Settlement Agreement is the product of arm's-length negotiations of long duration between experienced, capable counsel after meaningful discovery, the presumption does not bear out due to the substantively unreasonable release provisions, and the unfair and inequitable distribution provisions, of the Superseding Settlement Agreement.

a.     The Third Amended Complaint:   The controlling Third Amended Complaint is a remarkable treatise on Defendants' "collusive and anticompetitive practices under the antitrust laws of the United States and the State of California." Third Consolidated Amended Class Action Complaint, Docket Entry No. 7123, ¶ 4.  The Third Amended Complaint alleges Defendants are "direct horizontal competitors of each other in the Relevant Markets. *Ib.* at ¶ 108, 409, 419, 429, 453, 463, and 473.   The Third Amended Complaint further describes the "contracts, combinations, conspiracies, and understandings entered into by the Defendants harm competition and impose

upon Plaintiffs and Class Members supracompetitive, exorbitant, and collectively fixed prices."
*Ib*. at ¶ 4, 5, 409, 411, 414, 416, 419, 421, 424, 426, and 429.

b.      Settlement Fund and Distribution to Class Members:    The Superseding Settlement
Agreement is built in part on the October 19, 2012, Definitive Class Settlement Agreement, Docket
Entry No. 1656-1.  The current Superseding Settlement Agreement combines settlement monies
contributed by Defendants to two different escrow accounts pursuant to the earlier Definitive Class
Settlement Agreement with a $900,000,000 Additional Cash Payment Amount contributed under
the current agreement.  In combination the cash settlement is "as much as $6.26 billion in relief
before opt-out reduction and expense takedowns."  Memorandum and Order, Docket Entry No.
7363, p. 12-13.  After appropriate fund adjustments (i.e. reductions for opt-outs, attorneys' fees,
and expenses), Class Members are supposed to receive the "same benefit – a *pro rata* share of the
monetary fund based on the interchange fees attributable to their transaction during the [period
from January 1, 2004 and January 24, 2019]."  Class Members include "all persons, businesses,
and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards
in the United Sates at any time from January 1, 2004 to [January 24, 2019]."[3]  Superseding
Settlement Agreement, Docket Entry No. 7257-2, p. 21 of 284.  Memorandum and Order, Docket
Entry No. 7363, p. 12 of 88.

c.      Release of Un-accrued Future Damages (Anticompetitive Conduct):  In exchange for the
Defendants' contributions to the settlement fund, and for each Class Member's *pro rata* share of
the Net Cash Settlement Fund[4], Class Members "release 'claims arising out of or relating to

---

[3] It should be noted, the Superseding Settlement Agreement does allow that "all [Class Members] will have the right
to "opt out – or exclude themselves – from participating in the class and from being bound by the terms of the
Superseding Settlement Agreement."  Memorandum and Order, Docket Entry No. 7363, p. 12.

[4] "Net Case Settlement Fund" is defined as "the amount in the Class Settlement Case Escrow Account, plus the
Additional Case Payment Amount, and the amount transferred from the Class Settlement Interchange Escrow

conduct or acts that were alleged or raised or that could have been alleged or raised relating to the subject matter of this litigation' that have accrued through the date of the Court's preliminary approval of the settlement, i.e., January 24, 2019, **and that 'accrue no later than five years after the Settlement Final Date'."** ("Emphasis added.) Memorandum and Order, Docket Entry No. 7363, p. 13. See also Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 34 of 284, ¶ 31(a) (Class Members "fully, finally, and forever … release [Defendants] from … claims … that have accrued as of the Settlement Preliminary Approval Date or accrue no later than five years after the Settlement Final Date arising out of or relating to any conduct … alleged or otherwise raised … or that could have been alleged or raised …. or arising out of or relating to a continuation or continuing effect of any such conduct.") The term "Settlement Final Date" is defined by the Superseding Settlement Agreement as being the business day after conclusion of several specified conditions precedent, but is more simply described by this Court to mean "the business day after the affirmation by any appeals court of this Court's final approval of the proposed settlement." Memorandum and Order, Docket Entry No. 7363, p. 13, fn. 15.

The release language of the Superseding Settlement Agreement, which runs across eleven pages, purports to release Defendants for both past, and an undetermined period of future, misconduct. Of particular concern is the following severely overbroad language releasing claims:

> "that any [Class Member] ever had, now has, or hereafter can, shall, or may have and that have accrued as of the Settlement Preliminary Approval Date or **accrue no later than five years after the Settlement Final Date** arising out of or relating to any conduct, acts, transactions events, occurrences, statements, omissions, or failures to act of any [Defendant] that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, **or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences,**

---

Account, as reduced by the Class Exclusion Takedown Payments and other payments permitted under Paragraph 13-25." Superseding Settlement Agreement, Docket Entry No. 7257-2, ¶ 27.

**statements, omissions, or failures to act.**" (Emphasis added.)   Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 34 of 284, ¶ 31(a).

Defendants are not by the Superseding Settlement Agreement in any way inhibited from persisting in their patterns of antitrust misbehavior, including acting on their contracts, combinations, conspiracies, and understandings, in ways that will continue to undermine competition and impose upon Class Members supracompetitive, exorbitant, and collectively fixed prices.

The value of each Class Member's claim is "based on the actual or estimated interchange fees attributable to the merchant's Mastercard and Visa payment card transactions from January 1, 2004, to January 24, 2019." Superseding Settlement Agreement, Appendix GI, Docket Entry No. 7257-2, p. 221 of 284. Class Members, however, are required to release all claims for the period January 1, 2004, through a date five years following the Settlement Final Date. Superseding Settlement Agreement, Appendix GI, Docket Entry No. 7257-2, p. 222 of 284 ("The release will bar claims that have accrued within five (5) years following the court's approval of the settlement and the exhaustion of all appeals."[5])  In other words, a merchant wishing to participate as a Class Member will receive damages suffered during a well-defined and limited period, but will be waiving recovery of currently incalculable un-accrued future damages for a substantially longer period of unknown duration.

The burden of the proposed release is especially unreasonable when considered from the perspective of merchants who became Class Members toward the end of the Class Period – and

---

[5] This language is distinct from other language contained in the Notice which provides that Class Members "will release their right to initiate a new and separate action for the period up to five (5) years following the courts approval of the settlement and the exhaustion of appeals," which language suggests a stipulated stay on filing, but not on accrual of actions. Superseding Settlement Agreement, Appendix GI, Docket Entry No. 7257-2, p. 223 of 284.

who will recover *pro rata* according to only a very few transactions – but may have tens of thousands of transactions during the extended release period – for which they will recover nothing.

While Class Members, merchants large and small, are afforded the right to opt-out of the settlement, that right can be practically exercised only by those merchants whose claims can justify the substantial expense of pursuing damages in a separate antitrust litigation against the Defendants – who possess nearly unlimited financial litigation resources. It is the smaller merchant, the little guy, to whom "economic reality dictates that petitioner's suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Gnarlywood is practically compelled to participate in the settlement or walk away without compensation, but there is no good reason for the settlement to unnecessarily and without compensation extend Gnarlywood's, or any Class Member's, exposure to the continuing burden of Defendants' anti-competitive behavior.

d.    Lack of Rule Modifications:   The Second Circuit's decision in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223 (2016), seems to have caused Class Counsel to shy away from a coordinated pursuit of Rule 23(b)(2) efforts along with the advance of Rule 23(b)(3) claims. The Second District specifically stated "none of this is to say that (b)(3) and (b)(2) class cannot be combined in a single case … problems arise when the (b)(2) and (b)(3) class do not have independent counsel." *Ib.*, at 235. The issue on which the Second District focused was not that the claims were being pursued in the same case, but rather that the (b)(2) class did not have counsel acting independently and in the interest of the (b)(2) class and sub-classes.

The original settlement in the captioned case pursuant to the Definitive Class Settlement Agreement, Docket Entry No. 1656-1, was unacceptable for lack of independent counsel advocating the interest(s) of the Rule 23(b)(2) class/sub-classes. Nonetheless, the Definitive Class

Settlement Agreement contained 27 pages of negotiated rule changes and restrictions by which the offensive conduct of Defendants was resolved or substantially amended – so as to comport with negotiated standards considered reasonable for the protection of (b)(2) class members – (collectively "Rule Modifications").   These Rule Modifications were intended to encourage competitive, and protect against anti-competitive, behavior on the part of Defendants. I.e. Under the Definitive Class Settlement Agreement, the bad behavior was coming to a negotiated end and the accrual of damages was likewise being concluded.  The Rule Modifications were imperfect, but they were substantial and offered protections the Superseding Settlement Agreement completely lacks.  The Rule Modifications made the release of future claims acceptable in the Definitive Class Settlement.   Conversely, the lack of similar protective provisions in the Superseding Settlement Agreement renders the currently proposed release of future claims substantively unfair and entirely untenable.

## III.

### THE SUPERSEDING SETTLEMENT PROVIDES AN INEQUITABLE DISTRIBUTION TO CLASS MEMBERS (Rule 23(e)(2)(A) and (D))

Class Plaintiffs have participated in the prosecution of the captioned action since June 2005. Class Plaintiffs first conditionally settled this case by the signing of the October 19, 2012, Definitive Class Settlement Agreement, Docket Entry No. 1656-1.   The original settlement received final approval in the District Court on December 13, 2012, which final approval was reversed by the Second Circuit on June 30, 2016. The basis for the reversal was that "unitary class representation was inadequate and violated due process."   Holding: *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223 (2d Cir. 2016).

Page 10

In November 2016, Class Counsel initiated a second phase prosecution of this matter in support of Rule 23(b)(3) Class Members, only, and separate counsel renewed efforts in support of the Rule 23(b)(2) class members through the filing in the same MDL an Equitable Relief Class Action Complaint captioned *Barry's Cut Rate Stores Inc., et al., v. Visa, Inc., et al.* Equitable Relief Class Action Complaint, Docket Entry No. 6910.

The current Final Approval Motion, Docket Entry No. 7469, and Fee Motion, Docket Entry No. 7471, are brought by Class Counsel representing only the Rule 23(b)(3) class in connection with the financial settlement contained in the Superseding Settlement Agreement, only. I.e. The pending motions have nothing whatsoever to do with the Rule 23(b)(2) efforts in *Barry's Cut Rate Stores* toward injunctive, declaratory, and other equitable relief against Defendants.

It is unfortunate, however, that settlement of the (b)(2) claims was not negotiated to coincide with settlement of the (b)(3) claims, and that these matters are not before the Court as a collective solution to the various problems presented by the Defendants' historic and continuing course of anticompetitive conduct. Instead, Class Counsel has presented the Superseding Settlement Agreement which – unlike the earlier Definitive Class Settlement Agreement – offers no relief against future misconduct on the part of Defendants. If such forward-going relief – similar to the Rule Modifications contained in the Definitive Class Settlement Agreement – had been a component of the Superseding Settlement Agreement, then the issue of disproportionate and inequitable distribution among Class Members would not present. However, the Superseding Settlement Agreement provides no restraint on the future conduct of Defendants, and the release of claims for future damages, along with the apportionment of recovery prorated according to only historic losses, renders inequitable the distribution of the Net Settlement Fund among Class Members.

By way of example, Class Plaintiffs each incurred Interchange Fees since January 2004 through at least January 24, 2019, a period of 15 years. Therefore, if the Superseding Settlement Agreement is finally approved, and if the Settlement Final Date expires in December 2024 (i.e. five years and 30 days out from the November 7, 2019 approval hearing), then each Class Plaintiff will: (1) enjoy a prorated recovery share of the Net Settlement Fund based on 15 years of paying Interchange Fees; and (2) release claims for a total of nearly 21 years of Defendants' anticompetitive conduct. Effectively, each Class Plaintiff will enjoy its *pro rata* share of the Net Settlement Fund, which recovery will represent compensation for 71.4% of the period covered by the release.

On the other hand, consider a merchant that began accepting Visa and Mastercard on January 1, 2019 ("New Merchant"). If the Superseding Settlement Agreement is finally approved, the New Merchant will receive a *pro rata* share of the Net Settlement Fund based on its transactions during one month of the class period. Nonetheless, New Merchant will release claims for a period of one month, plus six years. Memorandum in Support, Docket Entry No. 7257-1, p. 11 of 51. Since the Defendants' anticompetitive conduct is unrestrained by the Superseding Settlement Agreement, New Merchant will recover prorated compensation for less than two percent (i.e. 1.37%) of the period covered by the release.

a.      Inequitable Distribution: Rule 23(e)(2)(D) requires that a settlement proposal treat "class members equitably relative to each other." The recovery period, however, is not co-extensive with the release period, thus the distribution of the Net Settlement Fund will disfavor those with shorter participation in the claims period – and relatively longer periods in post-claim extended release period for which recovery rights are being waived.

Page 12

Federal Circuits may in some circumstances permit the release of future claims, but in considering the approach taken has found "the Eight Circuit's analysis of the settlement process is especially compelling … where class representatives possessed the released claims and **did not agree to preclude lawsuits arising out of similar conduct in the future**." (Emphasis added.) *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 111 (2005), discussing *In re General American Life Ins. Co. Sales Practices Litigation*, 357 F.3d 800 (8th Cir. 2004)[6]. That didn't happen here, instead the Superseding Settlement Agreement surrendered Class Members' rights to bring claims arising out of the same collusive, anticompetitive, and conspiratorial misconduct for at least five years and 30 days following final approval.

The distribution can be made equitable by a variety of means, e.g. disallowing the additional five-year release period, extending the claims period to make it co-extensive with the release period, or delaying final approval pending resolution of the Rule 23(b)(2) claims in *Barry's Cut Rate Stores*, etc.

b.    Inadequate Representation:  Rule 23(e)(2)(A) requires that "class representatives and class counsel have adequately represented the class."

In this case, Class Plaintiffs do not seek to simply release current known and unknown claims, rather the Superseding Settlement Agreement seeks to release future claims and future injury. In *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, the Second Circuit described that "future claims had not been considered separate from claims involving current injury." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 111 (2005), citing *Stephenson v. Dow Chem. Co.*, 273 F.3d

---

[6] *In re General American Life Ins. Co. Sales Practices Litigation*, 357 F.3d 800 (8th Cir. 2004) concerned contractual language in an insurance policy.  The release of future claims, and importance of *res judicata* to the litigation of contract claims is quite distinct from a waiver of un-accrued claims based on future misconduct under federal and state antitrust statutes, as indicated by the Second Circuits reference to class representatives who "did not agree to preclude lawsuits arising out of similar conduct in the future."

Page 13

249, 261 ("A class which purports to represent both present and future claimants may encounter internal conflicts.")

To satisfy the adequacy requirement of Rule 23(a)(4), and presumably the same requirement of 23(e)(2)(A), the named plaintiffs must "possess the same interests and suffer the same injuries as the class members." Citing *In re Literary Works in Elec. Databases Copyright Litig.* 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Amchem Prods., Inc. v. Windsor* 521 U.S. 591, 625-626. See also "Scope of Release of Claims and Parties," 4 *Newberg on Class Actions*, § 13:61 (5th ed.). ("One of the key factors not found among those now enumerated in Rule 23(e)(2) is the question of the scope of the release of claims and parties in the proposed settlement agreement.")

Although each of the Class Plaintiffs possesses a right of recovery being released by the waiver of future claims, this issue is not one of simple common interest or uniformity of factual predicate. Rather, it is a question of whether Class Plaintiffs could adequately represent the interests of those Class Members being required to give up future claims relatively more substantial than their own compensated claims – or those of their Class Plaintiff counterparts. If the interest or the injuries are different, then Class Plaintiffs' representation of Class Members with an imbalance between the class period and additional release period is inadequate, and Due Process has been violated.

## IV.

### CLASS MEMBERS ARE CONFUSINGLY AND INADEQUATELY INFORMED OF THE ATTORNEYS' FEES SOUGHT BY CLASS COUNSEL

Gnarlywood as a Rule 23(b) Class Member has the right to object to the Fee Motion. FRCP 23(h). "The right to object connotes that class members ought to be given sufficient time ... but it also means that class members must be given sufficient *information* to do so." "Fee Notice

Content," 3 Newberg on Class Actions § 8:25 (5th ed.). Rule 54 requires that the Fee Motion "state the amount sought or provide a fair estimate of it." FRCP Rule 54(d)(2)(B)(iii). As relates to the instant Fee Motion, Class Members have been provided insufficient and confusing information regarding the amount against which Class Counsel proposes to calculate its attorneys' fees in violation of Rule 23(h) and 54(d)(2)(B)(iii).

a.     The Fee Memo and Superseding Settlement Agreement: According to the Fee Memo, the Rule 23(b)(3) Class Counsel seeks a percentage totaling "9.56% of the settlement fund." Memorandum in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses ("Fee Memo"), Docket Entry No. 7471-1, p. 7 of 46. The "value of the settlement fund as of June 6, 2019, [was] $6,322,607,198.34," but continues to earn interest and pay taxes. Fee Memo, Docket Entry No. 7471-1, p. 7 of 46, fn. 2.

The Superseding Settlement Agreement provides that "Class Counsel intend to apply for an Attorneys' Fee Award in a reasonable amount not to exceed ten percent (10%) of the Total Cash Consideration." Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 52 of 284, ¶ 57. The term "Total Cash Consideration" is defined as the "total dollar value of the contents of the Class Settlement Cash Escrow Account and the Class Settlement Interchange Escrow Account as of the last day of the month after both (a) the Settlement Preliminary Approval Date has occurred, and (b) the [Defendants] have made payment of the Additional Cash Payment Amount." Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 28 of 284, ¶ 22. The Settlement Preliminary Approval Date was January 24, 2019, and the Additional Cash Payment Amount of $900 million was to be deposited within 10 days thereafter. Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 24 of 284, ¶ 14.

The Fee Memo and the Superseding Settlement Agreement indicate Class Counsel is seeking a fee out of a "settlement fund" that is equivalent to the Total Cash Consideration of approximately $6.3 billion.

b.   Class Notice:  On the other hand, the Long Form Notice to Class Members describes that Class Counsel "will ask the Court for an amount that is a reasonable proportion of the settlement fund, not to exceed 10% of the settlement fund."  Long Form Notice, Docket Entry No. 7257-2, p. 238-239 of 284, § 17.  The Notice also states "[Class Members] will be paid from the settlement fund.  This settlement fund will be reduced by an amount not to exceed $700 million to account for merchants who exclude themselves from the Rule 23(b)(3) Settlement Class.  The money in this settlement fund after reduction for [opt-outs] will also be used to pay: … Attorneys, fees."[7]  Long Form Notice, Docket Entry No. 7257-2, p. 231-232 of 284, § 7.

c.   Confusion Regarding Sought Fee:  The above confusion begs the question, is Class Counsel seeking a percentage fee calculated on the gross Total Cash Consideration as suggested by the Fee Memo and specifically described by the Superseding Settlement Agreement?  Or, is Class Counsel seeking a percentage fee calculated on the net settlement fund (i.e. after reductions for opt-outs)?  If the former, Class Counsel seeks a fee on dollar amounts of up to $700 million that make up the Total Opt Out Percentage; amounts that can never be enjoyed by a Class Member.  Superseding Settlement Agreement, Docket Entry No. 7257-2, p. 28 of 284, ¶ 22.

If the latter, the opt-out period does not expire until July 23, 2019 – the first date on which an accurate calculation of the net settlement fund actually available for payment of costs, attorneys' fees, administrative fees and costs, and Class Member claims can be made – then Class Members

---

[7] It should be noted, Judge Gleeson earlier awarded a 9.56% fee of the net settlement fund of $5.7 billion (after opt-outs) out of a gross settlement of $7.25 billion. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F.Supp 2d 437, at 439 (EDNY 2014).

will not have been provided a meaningful opportunity to understand and comment on the actual fees sought by Class Counsel.

d.     Undefined Terms:  Bringing further confusion to the identification of the amount against which Class Counsel is seeking its percentage fee is the language of the Fee Motion describing the sought fee to be 9.56% of the "settlement fund deposited in the *Net Cash Settlement Escrow Account* and *Net Interchange Settlement Escrow Account*" (emphasis added).   Fee Motion, Docket Entry No. 7471, p. 2 of 4.  Neither of these terms is defined anywhere in the Superseding Settlement Agreement, the Final Approval Motion, the Fee Motion, the Fee Memo, or the Long Term Notice.   Thus, the Fee Motion describes an unknown amount – referenced by undefined terms – against which the percentage fee is to be calculated, hence providing inadequate notice of, and opportunity to consider and object to, Class Counsel's fee motion.

**V.**

**CLASS COUNSEL'S SOUGHT FEE OF 9.56% OF THE
COMMON FUND IS EXCESSIVE**

a.     Relative Recovery Benefits:  In Phase One of this case Judge Gleeson, in connection with the Definitive Class Settlement Agreement, allowed Class Counsel an award of a 9.56% common fund percentage fee to compensate for Class Counsel's pursuit of both Rule 23(b)(2) and 23(b)(3) claims. The Definitive Class Settlement Agreement provided a net settlement fund of $5.3 billion, a claims period of approximately eight years, fewer Class Member merchants[8], and negotiated Rule 23(b)(2) relief,

The Superseding Settlement Agreement incorporates the Phase One net settlement fund monies and requires Defendants to contribute an additional $900 million, but the Rule 23(b)(2)

---

[8] Gnarlywood, for instance would not have been a Phase One class member.

relief is gone, the claims period is now 15 years, the number of claimants has substantially increased, and there is an extended release period of five years. So rather than a $5.3 billion recovery being shared among fewer merchants for an eight-year damages period (i.e. a recovery amounting to $662.5 million per year), the now much larger Class will share $6.3 billion to compensate for a 15 year damages period (i.e. $420 million per year), and Defendants' fees continue to increase[9].

Nonetheless, Class Counsel seeks the same 9.56% fee against the relatively inferior recovery and relief afforded by the Superseding Settlement Agreement. In view of what is effectively a less valuable and protective settlement, Class Counsel's request for a 9.56% common fund fee is unreasonable.

b.  <u>Goldberger (Factor 1) and Lodestar Cross-Check</u>: In the Second Circuit "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Irrespective of "which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel." *Ib*. at 50. If a percentage fee is preferred, the Second Circuit encourages "the practice of requiring documentation of hours as a "cross-check" on the reasonableness of the requested percentage." *Ib*. at 50.

For Class Counsel's services provided between 2004 and November 30, 2012 ("Phase One" of this case), Judge Gleeson awarded a percentage fee award of $544,800,000 or 9.56% of the net settlement fund. *In re Payment Card Interchange Fee and Merchant Discount Antitrust*

---

[9] During the extended release period Defendants are continuing to raise their fees. See Erick Serman, "Credit Card Merchant Fee Hikes Could Mean Higher Prices for Everyone", *Fortune*, February 15, 2019, attached as Exhibit 3.

*Litigation*, 991 F.Supp 2d 437, 445 (EDNY 2014).  In making its application for the Phase One attorneys' fees, Class Counsel described to the Court that Class Counsel and Class Supporting Counsel had expended work that supported a "total lodestar" of $161,681,596.07.  Declaration of Thomas J. Undlin in Support of Class Plaintiffs' Joint Motion for Award of Attorneys' Fees, Expenses and Class Plaintiffs' Awards, Docket Entry No. 2113-2, p. 9 of 40, ¶ 12.

In their current motion, Class Counsel suggests that Judge Gleeson's earlier 9.56 percentage fee award augurs in favor of such percentage being awarded against Phase Two's Total Cash Consideration – which combines Phase One's Class Settlement Cash Escrow Account and the Class Settlement Interchange Escrow Account and the $900,000,000 Additional Cash Payment Amount.  Fee Memo, Docket Entry No. 7471-1, p. 7 and 36 of 46.

While Judge Gleeson did a fine job of examining the work of Class attorneys in making his award and issuing his earlier decision, the Definitive Settlement Agreement established that in Phase One the ""Attorneys' Fee Awards" means **all attorneys' fees** that are awarded by the Court to Class Counsel or other counsel in the Class Actions **for work performed for the benefit of members of the Rule 23(b)(3) Settlement Class or the Rule 23(b)(2) Settlement Class.**" (Emphasis added.)  Definitive Class Settlement Agreement, Docket Entry No. 1656-1, p. 10 of 379, ¶ 1(b). The Second Circuit ultimately decided that in Phase One "class members of the (b)(2) class were inadequately represented in violation of Rule 23(a)(4) and the Due Process Clause." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223, 231 (2d. Cir. 2016).  The Second Circuit's opinion renders invalid both the Phase One percentage fee award – intended to compensate for Class Counsel's time spent pursuing Rule 23(b)(3) damages and Rule 23(b)(2) relief – and the District Court's earlier lodestar cross-check.

"The common fund doctrine holds that an attorney responsible for recovering a common fund is generally entitled to a fee from that fund. In assessing the question of whether the attorney's efforts generated the common fund, **courts look to whether counsel's work creates, enhances, preserves, or protects the fund**." (Emphasis added.) *Newberg on Class Actions* § 15:59 (5th ed.). Necessarily, Phase One's $161.7 million lodestar included those wasted efforts of Class Counsel spent in pursuit of the Phase One's Rule 23(b)(2) settlement. Although fruitless, Class Counsel includes hours attributable to Phase One's pursuit of Rule 23(b)(2) relief in its calculation of its collective lodestar of $203.8 million. Declaration of Thomas J. Undlin in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, Docket Entry No. 7471-2, p. 3 of 101, ¶ 3. (Combining the two time periods [i.e. Phase One – 2004 through November 30, 2012, and Phase Two – December 1, 2012 through January 31, 2019] from inception through January 2019, Co-Lead Counsel and Class Supporting Counsel … spent over 630,000 hours prosecuting this case, generating a total lodestar of $203,753,749.78.")

"The measuring stick of counsel's entitlement comes back to the single question of whether their [collateral efforts] did in fact create, enhance, preserve, or protect the fund. … a court will not award such fees if it believes the collateral work did not in fact benefit the current class's fund." "Entitlement Rule: Creation, Preservation, or Enhancement of Common Fund—Collateral Work by Class Counsel," 5 *Newberg on Class Actions,* § 15:59 (5th ed.)

That portion of Class Counsel's $161,681,596.07 Phase One lodestar attributable to Rule 23(b)(2) concerns ought not be included in the Court's analysis of the first *Goldberger* factor – i.e. time and labor expended by counsel in creating, enhancing, preserving, or protecting the Rule

(b)(3) Class Settlement. *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).

Neither the Court nor the Class has been realistically informed of Class Counsel's actual Rule 23(b)(3) common fund-related lodestar. Consequently, the Court lacks a meaningful and adequate description of Class Counsel's lodestar sufficient to determine the reasonableness of the requested common fund percentage fee. Thus, Class Members have not been accorded their right to understand how Class Counsel supports its fee request, and the Court cannot fulfill its duties "as a fiduciary who must serve as a guardian of the rights of absent class members" by "requiring documentation of hours as a "cross-check" on the reasonableness of the requested percentage." *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 and 52 (2d Cir. 2000).

When viewed in light of the Court's Phase One fee award, including Judge Gleeson's earlier lodestar analysis, Class Counsel's current request for a 9.56% common fund fee is excessive and unsupported by an informed cross-check.

## VI.

## CONCLUSION

For the foregoing reasons, this Court should deny the pending Final Approval Motion, and the associated Superseding Settlement Agreement, for advancing a substantively unfair settlement and release, and failing to provide equitable distribution among Class Members. Alternatively, this Court should award Class Counsel a percentage common fund fee, within applicable mega-

////

////

////

////

////

fund standards, calculated on benefits actually enjoyed by Class Members, and subject to the constraints of an informed and practical lodestar cross-check.

Respectfully submitted,

Date:   July 19, 2019

OBJECTOR:
Gnarlywood LLC:
Quincy Woodrights, LLC

Jay Consolloy, CFO
Gnarlywood LLC
Quincy Woodrights, LLC

Counsel for Objector:

Kendrick Jan, CA State Bar No. 105149
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA  92101
Phone:  (619) 231-7702
Email:  kj@jan-law.com
Attorney for Objector Gnarlywood LLC

Page 22

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **OBJECTION OF GNARLYWOOD LLC, TO CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, and CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** has been served by U.S. Mail, First Class Postage prepaid, and via Overnight Carrier, sent July 19, 2019, on each of the following:

**U.S. District Court:**

United States District Court for the Eastern District of New York
Clerk of the Court
225 Cadman Plaza
Brooklyn, New York 11201

**Designated Rule 23(b)(3) Class Counsel:**

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

**Designated Defendants' Counsel:**

Matthew A. Eisenstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Date: July 19, 2019

Kendrick Jan, CA State Bar No. 105149
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Phone: (619) 231-7702
kj@jan-law.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **OBJECTION OF GNARLYWOOD LLC, TO CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, and CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** has been served by U.S. Mail, First Class Postage prepaid, and via Overnight Carrier, sent July 19, 2019, on each of the following:

**U.S. District Court:**

United States District Court for the Eastern District of New York
Clerk of the Court
225 Cadman Plaza
Brooklyn, New York 11201

**Designated Rule 23(b)(3) Class Counsel:**

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

**Designated Defendants' Counsel:**

Matthew A. Eisenstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743

Date: July 19, 2019

_____
Kendrick Jan, CA State Bar No. 105149
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Phone: (619) 231-7702
kj@jan-law.com

Page 1

# EXHIBIT 1

**macrotrends**
(http://www.macrotrends.net)

Stock Screener    Stock Research    Market Indexes    Precious Metals    (/stocks/stock-screener) (/stocks/research) (/

Search over 200,000 charts...

Energy    Commodities    (/charts/precious-m

Exchange Rates    (

Interest Rates    Futures    Economy    Global Metrics    rates) (/charts/interest-rates) (/futures) (/charts/economy) (/countries/topic-overview)

# Visa Revenue 2007-2019 | V

Prices (https://www.macrotrends.net/stocks/charts/V/visa/stock-price-history)

Financials (https://www.macrotrends.net/stocks/charts/V/visa/financial-statements)

Revenue & Profit (https://www.macrotrends.net/stocks/charts/V/visa/revenue)

Assets & Liabilities (https://www.macrotrends.net/stocks/charts/V/visa/total-assets)

Margins (https://www.macrotrends.net/stocks/charts/V/visa/profit-margins)

Price Ratios (https://www.macrotrends.net/stocks/charts/V/visa/pe-ratio)

Other Ratios (https://www.macrotrends.net/stocks/charts/V/visa/current-ratio)

Dividends (https://www.macrotrends.net/stocks/charts/V/visa/dividend-yield-history)

Revenue (https://www.macrotrends.net/stocks/charts/V/visa/revenue)

Gross Profit (https://www.macrotrends.net/stocks/charts/V/visa/gross-profit)

Operating Income (https://www.macrotrends.net/stocks/charts/V/visa/operating-income)

EBITDA (https://www.macrotrends.net/stocks/charts/V/visa/ebitda)

Net Income (https://www.macrotrends.net/stocks/charts/V/visa/net-income)

EPS (https://www.macrotrends.net/stocks/charts/V/visa/eps-earnings-per-share-diluted)

Shares Outstanding (https://www.macrotrends.net/stocks/charts/V/visa/shares-outstanding)

Visa annual/quarterly revenue history and growth rate from 2007 to 2019. Revenue can be defined as the amount of money a company receives from its customers in exchange for the sales of goods or services. Revenue is the top line item on an income statement from which all costs and expenses are subtracted to arrive at net income.

- Visa revenue for the quarter ending March 31, 2019 was $5.494B, a 8.3% increase year-over-year.
- Visa revenue for the twelve months ending March 31, 2019 was $21.674B, a 11.98% increase year-over-year.
- Visa annual revenue for 2018 was $20.609B, a 12.26% increase from 2017.
- Visa annual revenue for 2017 was $18.358B, a 21.72% increase from 2016.
- Visa annual revenue for 2016 was $15.082B, a 8.66% increase from 2015.

Search for ticker or company name...

From:  09/30/2007   To:  04/01/2019          Zoom:  1Y  2Y  3Y  5Y  All



EXHIBIT 1



| Visa Annual Revenue (Millions of US $) | | Visa Quarterly Revenue (Millions of US $) | |
| --- | --- | --- | --- |
| 2018 | $20,609 | Q2 2019 | $5,494 |
| 2017 | $18,358 | Q1 2018 | $5,506 |
| 2016 | $15,082 | Q4 2018 | $5,434 |
| 2015 | $13,880 | Q3 2018 | $5,240 |
| 2014 | $12,702 | Q2 2018 | $5,073 |
| 2013 | $11,778 | Q1 2017 | $4,862 |
| 2012 | $10,421 | Q4 2017 | $4,855 |
| 2011 | $9,188 | Q3 2017 | $4,565 |
| 2010 | $8,065 | Q2 2017 | $4,477 |
| 2009 | $6,911 | Q1 2016 | $4,461 |
| 2008 | $6,263 | Q4 2016 | $4,261 |
| 2007 | $3,590 | Q3 2016 | $3,630 |
| 2006 | $2,948 | Q2 2016 | $3,626 |

| Sector | Industry | Market Cap | Revenue |
| --- | --- | --- | --- |
| Business Services (https://www.macrotrends.net/stocks/sector/86/business-services) | Financial Transaction Services (https://www.macrotrends.net/stocks/industry/282/) | $357.595B | $20.609B |

Visa Inc. is a global payment technology company that connects consumers, businesses, banks, and governments enabling them to use digital currency instead of cash and checks. Visa Inc. mission is to connect the world through the most innovative, reliable and secure payment network - enabling individuals, businesses and economies to thrive. Visa Inc. advanced global processing network, VisaNet, provides secure and reliable payments around the world, and is capable of handling more than 65,000 transaction messages a second. The company's relentless focus on innovation is a catalyst for the rapid growth of connected commerce on any device, and a driving force behind the dream of a cashless future for everyone, everywhere. As the world moves from analog to digital, Visa is applying brand, products, people, network and scale to reshape the future of commerce.

EXHIBIT 1

| Stock Name | Country | Market Cap | PE Ratio |
|---|---|---|---|
| Mastercard (MA) (/stocks/charts/MA/mastercard/revenue) | United States | $281.204B | 40.66 |
| Fidelity National Information Services (FIS) (/stocks/charts/FIS/fidelity-national-information-services/revenue) | United States | $42.293B | 22.52 |
| Worldpay (WP) (/stocks/charts/WP/worldpay/revenue) | United States | $41.106B | 35.03 |
| Fiserv (FISV) (/stocks/charts/FISV/fiserv/revenue) | United States | $36.933B | 29.59 |
| Global Payments (GPN) (/stocks/charts/GPN/global-payments/revenue) | United States | $25.951B | 32.06 |
| FleetCor Technologies (FLT) (/stocks/charts/FLT/fleetcor-technologies/revenue) | United States | $24.973B | 28.66 |
| Total System Services (TSS) (/stocks/charts/TSS/total-system-services/revenue) | United States | $23.600B | 30.79 |
| Equifax (EFX) (/stocks/charts/EFX/equifax/revenue) | United States | $16.673B | 24.86 |
| PagSeguro Digital (PAGS) (/stocks/charts/PAGS/pagseguro-digital/revenue) | Brazil | $14.973B | 45.68 |
| WEX (WEX) (/stocks/charts/WEX/wex/revenue) | United States | $9.448B | 29.32 |
| Western Union (WU) (/stocks/charts/WU/western-union/revenue) | United States | $8.782B | 10.96 |
| Alliance Data Systems (ADS) (/stocks/charts/ADS/alliance-data-systems/revenue) | United States | $7.896B | 7.12 |
| Ingenico Group (INGIY) (/stocks/charts/INGIY/ingenico-group/revenue) | France | $5.398B | 0.00 |
| Envestnet (ENV) (/stocks/charts/ENV/envestnet/revenue) | United States | $3.499B | 59.31 |
| Green Dot (GDOT) (/stocks/charts/GDOT/green-dot/revenue) | United States | $2.544B | 18.20 |
| Loomis AB (LOIMF) (/stocks/charts/LOIMF/loomis-ab/revenue) | Sweden | $2.504B | 0.00 |
| EVO Payments (EVOP) (/stocks/charts/EVOP/evo-payments/revenue) | United States | $2.447B | 0.00 |
| Evertec (EVTC) (/stocks/charts/EVTC/evertec/revenue) | United States | $2.370B | 18.97 |
| Cardtronics (CATM) (/stocks/charts/CATM/cardtronics/revenue) | United States | $1.272B | 15.78 |
| QIWI (QIWI) (/stocks/charts/QIWI/qiwi/revenue) | | $1.207B | 18.34 |
| PAYPOINT (PYPTF) (/stocks/charts/PYPTF/paypoint/revenue) | | $0.818B | 0.00 |
| 3PEA International (PAYS) (/stocks/charts/PAYS/3pea-international/revenue) | United States | $0.792B | 152.46 |
| Diebold Nixdorforporated (DBD) (/stocks/charts/DBD/diebold-nixdorforporated/revenue) | United States | $0.711B | 0.00 |

EXHIBIT 1

| Stock Name | Country | Market Cap | PE Ratio |
|---|---|---|---|
| INTERNATIONAL MONEY EXPRESS, INC (IMXI) (/stocks/charts/IMXI/international-money-express,-inc/revenue) | United States | $0.542B | 0.00 |
| PAX GLOBAL TECH (PXGYF) (/stocks/charts/PXGYF/pax-global-tech/revenue) | China | $0.473B | 0.00 |
| LongFin (LFIN) (/stocks/charts/LFIN/longfin/revenue) | United States | $0.068B | 0.00 |

© 2010-2019 Macrotrends LLC  |  Terms of Service (/terms)  |  Privacy Policy (/privacy)  |  Contact Us (mailto:%69n%66o@%6Dac%72otrends%2En%65t)
Fundamental data from Zacks Investment Research, Inc. (http://www.zacksdata.com)

EXHIBIT 1

# EXHIBIT 2

**macrotrends**
(http://www.macrotrends.net)

Search over 200,000 charts...

Stock Screener    Stock Research    Market Indexes    Precious Metals    (/stocks/stock-screener) (/stocks/research) (/

Energy    Commodities    /charts/precious-m

Exchange Rates

Interest Rates    Futures    Economy    Global Metrics    rates) (/charts/interest-rates) (/futures) (/charts/economy) (/countries/topic-overview)

## Mastercard Revenue 2006-2019 | MA

Prices (https://www.macrotrends.net/stocks/charts/MA/mastercard/stock-price-history)

Financials (https://www.macrotrends.net/stocks/charts/MA/mastercard/financial-statements)

Revenue & Profit (https://www.macrotrends.net/stocks/charts/MA/mastercard/revenue)

Assets & Liabilities (https://www.macrotrends.net/stocks/charts/MA/mastercard/total-assets)

Margins (https://www.macrotrends.net/stocks/charts/MA/mastercard/profit-margins)

Price Ratios (https://www.macrotrends.net/stocks/charts/MA/mastercard/pe-ratio)

Other Ratios (https://www.macrotrends.net/stocks/charts/MA/mastercard/current-ratio)

Dividends (https://www.macrotrends.net/stocks/charts/MA/mastercard/dividend-yield-history)

Revenue (https://www.macrotrends.net/stocks/charts/MA/mastercard/revenue)

Gross Profit (https://www.macrotrends.net/stocks/charts/MA/mastercard/gross-profit)

Operating Income (https://www.macrotrends.net/stocks/charts/MA/mastercard/operating-income)

EBITDA (https://www.macrotrends.net/stocks/charts/MA/mastercard/ebitda)

Net Income (https://www.macrotrends.net/stocks/charts/MA/mastercard/net-income)

EPS (https://www.macrotrends.net/stocks/charts/MA/mastercard/eps-earnings-per-share-diluted)

Shares Outstanding (https://www.macrotrends.net/stocks/charts/MA/mastercard/shares-outstanding)

Mastercard annual/quarterly revenue history and growth rate from 2006 to 2019. Revenue can be defined as the amount of money a company receives from its customers in exchange for the sales of goods or services. Revenue is the top line item on an income statement from which all costs and expenses are subtracted to arrive at net income.

- Mastercard revenue for the quarter ending March 31, 2019 was **$3.889B**, a **8.63%** increase year-over-year.
- Mastercard revenue for the twelve months ending March 31, 2019 was **$15.259B**, a **14.36%** increase year-over-year.
- Mastercard annual revenue for 2018 was **$14.95B**, a **19.63%** increase from 2017.
- Mastercard annual revenue for 2017 was **$12.497B**, a **15.97%** increase from 2016.
- Mastercard annual revenue for 2016 was **$10.776B**, a **11.47%** increase from 2015.

Search for ticker or company name...

From:  12/31/2005   To:  04/01/2019        Zoom:  1Y   2Y   3Y   5Y   All



EXHIBIT 2



| Mastercard Annual Revenue (Millions of US $) | | Mastercard Quarterly Revenue (Millions of US $) | |
|---|---|---|---|
| 2018 | $14,950 | Q1 2019 | $3,889 |
| 2017 | $12,497 | Q4 2018 | $3,807 |
| 2016 | $10,776 | Q3 2018 | $3,898 |
| 2015 | $9,667 | Q2 2018 | $3,665 |
| 2014 | $9,441 | Q1 2018 | $3,580 |
| 2013 | $8,312 | Q4 2017 | $3,312 |
| 2012 | $7,391 | Q3 2017 | $3,398 |
| 2011 | $6,714 | Q2 2017 | $3,053 |
| 2010 | $5,539 | Q1 2017 | $2,734 |
| 2009 | $5,099 | Q4 2016 | $2,756 |
| 2008 | $4,992 | Q3 2016 | $2,880 |
| 2007 | $4,068 | Q2 2016 | $2,694 |
| 2006 | $3,326 | Q1 2016 | $2,446 |

| Sector | Industry | Market Cap | Revenue |
|---|---|---|---|
| Business Services (https://www.macrotrends.net/stocks/sector/86/business-services) | Financial Transaction Services (https://www.macrotrends.net/stocks/industry/282/) | $281.204B | $14.950B |

MASTERCARD INCORPORATED advances global commerce by providing a critical economic link among financial institutions, businesses, cardholders and merchants worldwide. As a franchisor, processor and advisor, MasterCard develops and markets payment solutions and provides industry-leading analysis and consulting services to financial institution customers and merchants. Its family of brands include MasterCard, Maestro and Cirrus.

| Stock Name | Country | Market Cap | PE Ratio |
|---|---|---|---|
| Visa (V) (/stocks/charts/V/visa/revenue) | United States | $357.595B | 35.69 |

EXHIBIT 2

| Stock Name | Country | Market Cap | PE Ratio |
|---|---|---|---|
| Fidelity National Information Services (FIS) (/stocks/charts/FIS/fidelity-national-information-services/revenue) | United States | $42.293B | 22.52 |
| Worldpay (WP) (/stocks/charts/WP/worldpay/revenue) | United States | $41.106B | 35.03 |
| Fiserv (FISV) (/stocks/charts/FISV/fiserv/revenue) | United States | $36.933B | 29.59 |
| Global Payments (GPN) (/stocks/charts/GPN/global-payments/revenue) | United States | $25.951B | 32.06 |
| FleetCor Technologies (FLT) (/stocks/charts/FLT/fleetcor-technologies/revenue) | United States | $24.973B | 28.66 |
| Total System Services (TSS) (/stocks/charts/TSS/total-system-services/revenue) | United States | $23.600B | 30.79 |
| Equifax (EFX) (/stocks/charts/EFX/equifax/revenue) | United States | $16.673B | 24.86 |
| PagSeguro Digital (PAGS) (/stocks/charts/PAGS/pagseguro-digital/revenue) | Brazil | $14.973B | 45.68 |
| WEX (WEX) (/stocks/charts/WEX/wex/revenue) | United States | $9.448B | 29.32 |
| Western Union (WU) (/stocks/charts/WU/western-union/revenue) | United States | $8.782B | 10.96 |
| Alliance Data Systems (ADS) (/stocks/charts/ADS/alliance-data-systems/revenue) | United States | $7.896B | 7.12 |
| Ingenico Group (INGIY) (/stocks/charts/INGIY/ingenico-group/revenue) | France | $5.398B | 0.00 |
| Envestnet (ENV) (/stocks/charts/ENV/envestnet/revenue) | United States | $3.499B | 59.31 |
| Green Dot (GDOT) (/stocks/charts/GDOT/green-dot/revenue) | United States | $2.544B | 18.20 |
| Loomis AB (LOIMF) (/stocks/charts/LOIMF/loomis-ab/revenue) | Sweden | $2.504B | 0.00 |
| EVO Payments (EVOP) (/stocks/charts/EVOP/evo-payments/revenue) | United States | $2.447B | 0.00 |
| Evertec (EVTC) (/stocks/charts/EVTC/evertec/revenue) | United States | $2.370B | 18.97 |
| Cardtronics (CATM) (/stocks/charts/CATM/cardtronics/revenue) | United States | $1.272B | 15.78 |
| QIWI (QIWI) (/stocks/charts/QIWI/qiwi/revenue) | | $1.207B | 18.34 |
| PAYPOINT (PYPTF) (/stocks/charts/PYPTF/paypoint/revenue) | | $0.818B | 0.00 |
| 3PEA International (PAYS) (/stocks/charts/PAYS/3pea-international/revenue) | United States | $0.792B | 152.46 |
| Diebold Nixdorforporated (DBD) (/stocks/charts/DBD/diebold-nixdorforporated/revenue) | United States | $0.711B | 0.00 |

EXHIBIT 2

| Stock Name | Country | Market Cap | PE Ratio |
|---|---|---|---|
| INTERNATIONAL MONEY EXPRESS, INC (IMXI) (/stocks/charts/IMXI/international-money-express,-inc/revenue) | United States | $0.542B | 0.00 |
| PAX GLOBAL TECH (PXGYF) (/stocks/charts/PXGYF/pax-global-tech/revenue) | China | $0.473B | 0.00 |
| LongFin (LFIN) (/stocks/charts/LFIN/longfin/revenue) | United States | $0.068B | 0.00 |

© 2010-2019 Macrotrends LLC  |  Terms of Service (/terms)  |  Privacy Policy (/privacy)  |  Contact Us (mailto:%69n%66o@%6Dac%72otrends%2En%65t)
Fundamental data from Zacks Investment Research, Inc. (http://www.zacksdata.com)

EXHIBIT 2

# EXHIBIT 3

Visa, Mastercard, Discover to Increase Credit Card Processing Fees | Fortune

COMMENTARY

**A New 'Bill of Rights' for Domestic Workers Will Let Them Finally Bargain Collectively**

ENTERTAINMENT

BRIEFING • CREDIT CARDS

# Credit Card Merchant Fee Hikes Could Mean Higher Prices for Everyone

By Erik Sherman
February 15, 2019



Facebook
Twitter
LinkedIn

Credit card companies Visa, Mastercard, and Discover, will raise their processing fees in April, according to the *Wall Street Journal.* That's likely to mean prices of everything will sneak up a bit, no matter how people pay.

EXHIBIT 3

Visa, Mastercard, Discover to Increase Credit Card Processing Fees | Fortune

The card-networks authorize banks to issue credit cards to people. Separately, businesses get merchant accounts that let them present credit card transactions with their customers for payment. There are two types of fees on the rise. One is the interchange fee, set by the credit card networks. That is the percentage of a sale the bank that issued the credit card charges the merchant bank to handle the transaction. Then there is a fee the card networks charge for each transaction.

The business making a sale gets charged a merchant discount to the bank that processes its transactions, as Visa explains. That amount ranges up to nearly 3% of a sale, depending on the size of the business. When those costs rise, the merchants typically raise their prices a bit to cover the additional cost. That means no matter how consumers pay—credit card, check, or cash—they still are charged for the fee hikes.

In September 2018, the card networks settled an anti trust lawsuit over these fees with a $6.2 billion payment.

The card networks, however, still manage to do well. Visa's 2018 annual report shows revenue of $20.6 billion and net income, commonly known as profit, of $10.3 billion, or 50%. Mastercard's 2018 report saw roughly $15 billion in revenue and net income of $5.9 billion, or 39%. Discover hasn't released its 2018 annual report yet but the 2017 one showed $9.6 billion in revenue and net income of $2.1 billion, or 22%. And the net income or profit reports were after taxes.

# You May Like

ENTERTAINMENT

## Sass as a Strategy: How Netflix's Twitter Became Just as Entertaining as Its Shows and Movies



EXHIBIT 3