UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE PAYMENT CARD | : | |
| INTERCHANGE FEE AND | : | MDL Docket No. 1720 |
| MERCHANT DISCOUNT | : | |
| ANTITRUST LITIGATION | : | MASTER FILE NO. |
| | : | 1:05-md-1720-MKB-JO |
| This Document Relates To: | : | |
| | : | |
| ALL CASES | : | |
| | : | |
| | : | |

**MEMORANDUM IN OPPOSITION TO R&M OBJECTORS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

III. LEGAL ARGUMENT............................................................................................5

    A. R&M Objectors Did Not Substantially Cause Any Changes
       in Benefits Under the Superseding Settlement ............................................7

    B. R&M Objectors' Fee Request Should be Denied as Unsubstantiated .......12

    C. R&M Objectors' Requests to Recover Costs Should be Denied ...............14

    D. R&M Objectors Should Not Receive Service Awards ..............................14

IV. CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .................................................................................... 12, 13
*Howes v. Atkins*,
   668 F. Supp. 1021 (E.D. Ky. 1987) .............................................................................. 13
*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................ 5, 6
*In re Domestic Air Transp.*,
   148 F.R.D. 297 (N.D. Ga. 1993) .................................................................................. 13
*In re Holocaust Victim Assets Litig.*,
   424 F.3d 150 (2d Cir. 2005) ........................................................................................ 5, 6
*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................... 13
*In re Nigeria Charter Flights Litig.*,
   No. 04-CV-304, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011) .................................. 6
*In re Nigeria Charter Flights Litig.*,
   No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) .................................. 6
*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................... 4, 9
*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................... 14
*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ........................................................................................... 4
*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   No. 05-MD-1720 (MDB) (JO), 2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ............ 13
*In re Petrobras Securities Litig.*,
   320 F. Supp. 3d 597 (S.D.N.Y. 2018) ........................................................................ 5, 6
*In re Prudential Ins. Co. of America Sales Practices Litig.*,
   273 F. Supp. 2d 563 (D.N.J. 2003) .............................................................................. 13
*Lobur v. Parker*,
   378 Fed. Appx. 63 (2d Cir. 2010) ................................................................................ 14
*White v. Auerbach*,
   500 F.2d 822 (2d Cir. 1974) ........................................................................................... 5

## I. INTRODUCTION

Retailer and Merchant Objectors' ("R&M Objectors") Motion for Award of Attorneys' Fees, Expenses and Service Awards (ECF No. 7474) should be denied.[1] The R&M Objectors had nothing to do with the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants ("Superseding Settlement Agreement" or "Superseding Settlement") and the approximately $6.3 billion the Superseding Settlement provides to the Rule 23(b)(3) settlement class. R&M Objectors' lawyers do not claim, nor could they, that they played any role in litigating the merits of the claims in this case or that they had any role in the negotiations that culminated in the Superseding Settlement Agreement. Nevertheless, they claim to be "a substantial cause of the new benefits made available to the Class via the [Superseding Settlement]." R&M Br. at 1. Merely objecting to the 2012 Rule 23(b)(2) injunctive relief settlement is not a substantial cause of the increase in the value of a damages settlement. The facts belie R&M Objectors' assertion that they were a substantial cause of increasing the Superseding Settlement by any amount, let alone $900 million.

At final approval of the 2012 settlement and on appeal, R&M Objectors did not object to the monetary relief to the Rule 23(b)(3) settlement class and echoed the objections first raised by

---

[1] On July 23, 2019, the R&M Objectors filed Objections to Final Approval of the Superseding and Amended Settlement Agreement and the Rule 23(b)(3) Class Plaintiffs' Motion for Attorneys' Fees (ECF No. 7575). The sole basis for the objection is that the Superseding Settlement Agreement and Rule 23(b)(3) Class Counsel's motion for fees did not "provide for a reasonable service award to the R&M Objectors and a reasonable fee to their counsel." ECF No. 7575 at 1. The R&M Objectors' objection raises no arguments not already submitted in their motion for attorneys' fees, expenses and service awards. And they still fail to provide any time and lodestar information to support their fee request nor do they describe their work in detail. Accordingly, for the reasons explained in detail in this memorandum, R&M Objectors' objections should be rejected as meritless. R&M Objectors are not entitled to service awards and their counsel are not entitled to attorneys' fees and reimbursement of expenses. Rule 23(b)(3) Class Plaintiffs' rely on the arguments in in this memorandum to respond to R&M Objectors' objection and will not file a separate response.

others. R&M Objectors' only unique objection was to the class notice, which was not addressed by, and did not cause, the Second Circuit to vacate the 2012 settlement. The R&M Objectors thus were not a "substantial cause" in reaching either the current settlement or vacating the prior settlement, even by their faulty reasoning. R&M Objectors' lawyers are not entitled to a fee simply because the Second Circuit vacated the original 2012 settlement and a new settlement has been reached. Any award of attorneys' fees to R&M Objectors' lawyers is unwarranted and would be a complete windfall as would be reimbursement of their claimed litigation costs. Finally, R&M Objectors provide no basis to receive service awards. Accordingly, R&M Objectors' motion should be denied in its entirety.

## II. BACKGROUND

The current settlement was made possible by Rule 23(b)(3) Class Counsel's ("Co-Lead Counsel") litigation efforts over nearly fourteen years. The history of this litigation and Co-Lead Counsel's litigation efforts have been fully described in the motions for preliminary and final approval of the Superseding Settlement Agreement, motion for attorneys' fees, and elsewhere, and will not be repeated here. *See, e.g.,* ECF Nos. 7257, 7469 and 7471. Only the background relevant to R&M Objectors' motion is described below.

Following seven years of contentious and exhaustive litigation and years of mediations and settlement negotiations, in July 2012, a settlement was reached between the classes and defendants and a memorandum of understanding was filed with the Court. The proposed settlement included damages on behalf of a Rule 23(b)(3) class and injunctive relief on behalf of a Rule 23(b)(2) class. Immediately thereafter, several former named plaintiffs and certain other merchant trade groups publicly campaigned among the merchant community to oppose the proposed Rule 23(b)(2) injunctive relief class settlement on the grounds that the injunctive relief

was inadequate, the release was improper and the Rule 23(b)(2) class was not adequately represented. In addition, those former named plaintiffs requested the Court's permission to oppose the motion for preliminary approval of the 2012 settlement, which was granted, and after extensive negotiations with Co-Lead Counsel and counsel for Defendants, they were provided access to the litigation record. *See, e.g.*, ECF Nos. 1616, 1617 and 1633.

Co-Lead Counsel filed the motion for preliminary approval on October 19, 2012. ECF No. 1656. On October 24, 2012, the Court scheduled a hearing on preliminary approval for November 9, 2012, required written objections to preliminary approval be filed by October 31 and denied R&M Objectors' request for an Objectors' Committee and for discovery. ECF No. 1668. Objections were filed and the Court held a lengthy hearing on November 9, 2012. The Court rejected all objections and granted preliminary approval.

As a result, the proposed settlement moved forward to the final approval process. An extensive notice program, approved by the Court, provided notice of the proposed settlement to the Rule 23(b)(3) and Rule 23(b)(2) settlement classes. Approximately 25% of the damages class by transaction volume opted out of the Rule 23(b)(3) settlement class and a large number of objections, primarily aimed at the Rule 23(b)(2) injunctive relief settlement, were filed. Notably, the R&M Objectors did not object to the Rule 23(b)(3) cash settlement. They objected to the Rule 23(b)(2) settlement claiming the release was improperly broad, the settlement notice was somehow confounding because it addressed both the (b)(2) and (b)(3) class settlements and provided a right to opt-out of solely the Rule 23(b)(3) class, and that the surcharging relief was inadequate. *See* R&M Br. at 3-5; ECF No. 2281. Similar types of objections to the scope of the Rule 23(b)(2) release, the inadequacy of the injunctive relief and the inability to opt out of the (b)(2) injunctive relief settlement class were made by others starting in the summer of 2012, and

R&M Objectors do not seriously contend otherwise.[2] *Id*. The Court granted final approval of the settlement and even though the Court addressed several objections to the settlement notice, the R&M Objectors' objection was not one of them. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 238-39, 241 (E.D.N.Y. 2013).

Appeals of the final approval followed. R&M Objectors had, at most, a secondary role in the appellate process, and R&M Objectors acknowledge that the primary arguments were made by others. R&M Br. at 5-6 and Ex. 14. R&M Objectors' arguments centered on the claimed deficiencies with the notice and the inability of class members to opt out of the Rule 23(b)(2) settlement class. The Second Circuit reversed on June 30, 2016 but not because of R&M Objectors' notice arguments. *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016). It held that the Rule 23(b)(2) settlement class was not adequately represented under Rule 23(a)(4) because the two settlement classes—the Rule 23(b)(3) opt-out damages-only class and a separate Rule 23(b)(2) non-opt-out injunctive relief class—had conflicting interests and therefore could not be represented by the same counsel. *Id*. at 236. It also expressed concern with the Rule 23(b)(2) settlement release, including the lack of an end date on the release. *Id*. at 239-40. The Second Circuit did not criticize the approximately $5.34 billion settlement fund (after reduction for opt outs) made available for members of the Rule 23(b)(3) damages class.

While the original settlement was on appeal, developments occurred in the law and in the industry. Following remand, Co-Lead Counsel, who were reappointed interim Co-Lead Counsel for the (b)(3) Class, resumed intensive litigation activities concentrating discovery and other litigation efforts on these developments. Co-Lead Counsel spent tens of thousands of hours

---

[2] R&M Objectors concede that the Court did not permit their requested discovery and their letter to the Court-appointed expert had no impact on his report and findings. R&M Objectors Br. at 4.

4

developing an additional factual record and expert analysis to address the changes in the market and the law since the 2012 settlement. They also engaged in intensive efforts negotiating the Superseding Settlement. The Defendants, who argued vociferously that intervening changes in the industry and the law had tilted the negotiating table sharply in their favor, ultimately agreed (only after exhaustive negotiation and litigation effort) to contribute the entire remainder of the prior settlement funds. Moreover, at the insistence and as a result of the efforts of Co-Lead Counsel, Defendants added $900 million in additional funds subject to opt out reductions capped, however, at $700 million.[3] R&M Objectors' objections contributed nothing to the securing of these increased settlement benefits or the settlement's other terms. These additional benefits that enhanced the settlement fund were solely the result of Co-Lead Counsel's dogged litigation efforts, even after the setback in the Court of Appeals and changes in the law and the industry, which made success in the case even more uncertain.

## III. LEGAL ARGUMENT

R&M Objectors have a substantial burden to demonstrate that they should be awarded attorneys' fees. Attorneys' fees are not awarded unless objectors show they are "a substantial cause of the benefit obtained." *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157 (2d Cir. 2005); *In re Petrobras Securities Litig.*, 320 F. Supp. 3d 597, 599 (S.D.N.Y. 2018) (same); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 132 (S.D.N.Y. 2009) (objectors must show that they "substantially enhanced the benefits to the class under the settlement"). In other words, objectors must show that their particular efforts improved the settlement. *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974).

---

[3] Superseding and Amended Class Settlement Agreement ¶¶ 13-14, 22.

To be a "substantial cause," the change in the settlement benefits must be directly linked to the objector's specific objection. For example, in *In re Petrobras Securities Litig.*, the court found an objection directly benefitted the class by $46 million when the objector was the *only one* to argue and identify the case law to show that the fees class counsel paid to foreign attorneys should have been classified as an expense and not included as part of its attorneys' fees request. *In re Petrobras Securities Litig.*, 320 F. Supp. 3d at 600. The court also found, however, that the objector should not receive fees for arguments that were known to the court and thus did not directly benefit the class. *Id*. at 601. Other courts in this Circuit have reached similar conclusions when the objector did not advance the particular argument that prevailed. *See Holocaust Victim Assets Litig.*, 424 F.3d 150 (denying attorneys' fees where certain changes made to the settlement were not urged by the objector and other changes resulted from objections previously made by others); *In re Nigeria Charter Flights Litig.*, No. 04-CV-304, 2011 WL 7945548, at *9-*10 (E.D.N.Y. Aug. 25, 2011), *R. & R. adopted,* No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) (denying attorneys' fees to objecting counsel because the objections "did not affect the recovery or assist the court in evaluating the fairness of the settlement," and appeared to be "a thinly veiled attempt to support his claim for attorneys' fees"); *Currency Conversion*, 263 F.R.D. 110 (denying attorneys' fees where objections were not the cause of changes to the settlement notice and raised issues known to the court). The court has discretion to determine whether a fee is appropriate and is in the best position to determine if the objector's efforts improved the settlement. *In re Petrobras Securities Litig.*, 320 F. Supp. 3d at 600.

A.  **R&M Objectors Did Not Substantially Cause Any Changes in Benefits Under the Superseding Settlement**

R&M Objectors do not show that they alone asserted an objection that directly improved the benefits available to the Rule 23(b)(3) Settlement Class members under the Superseding Settlement Agreement.

First, R&M Objectors do not, and cannot, show their efforts directly caused the increase in the Superseding Settlement's value. R&M Objectors' showing consists of a single conclusory statement that the $900 million increase in the Superseding Settlement "would never have been available had the R&M Objectors not objected to the grossly unfair and unreasonable Original Settlement." R&M Br. at 13. This statement has no basis. R&M Objectors do not, and cannot, link any of their particular objections, or litigation efforts, at final approval or on appeal to the $900 million increase in the Superseding Settlement. The most fundamental evidence of their inability to do so lies in the fact that R&M Objectors *did not* object to the adequacy of the monetary compensation under the 2012 (b)(3) settlement at final approval or on appeal. To the contrary, at the final approval hearing, R&M Objectors' lawyer told the Court "the amount of damages that might be awarded under the (b)(3) class was not even an issue to our clients" and that they "may want to participate in the damages."[4] ECF No. 6094 at 173, 176. The Second Circuit also did not criticize the settlement amount for members of the Rule 23(b)(3) damages class. Having failed to object to the amount of the prior settlement fund and the adequacy of the settlement fund not having been an issue on appeal, it is impossible for R&M Objectors to have

---

[4] R&M's counsel stated at the Final Approval Hearing on September 12, 2013: "But if the Court strikes down the broad release in both the (b)(2) and the (b)(3) Class, then we may want to reconsider our opt-out. We may want to participate in the damages." Tr. At 176 (attached as Exhibit 14 to R&M's Motion For Award of Attorneys' Fees (Doc. 7474)).

been a substantial cause of the additional $900 million in the Superseding Settlement. The Superseding Settlement increased solely because of Co-Lead Counsel's diligence following remand by continuing to develop the factual record, honing legal and economic arguments, meeting adverse changes in the law and industry and ultimately persuading Defendants that the value of the case had increased. After remand, a damages settlement, much less one that increased the monetary settlement fund above the 2012 settlement fund amount, was far from certain. R&M Objectors never offered a single idea, fact, legal or economic argument, or any reason that caused the increased settlement value here. They did not participate in the case post remand. R&M Objectors simply cannot transform their objections to the prior Rule 23(b)(2) injunctive relief class settlement into a basis for asserting any role in bringing about the maintenance of the prior settlement fund, now enhanced, not through their own efforts but through the efforts of Co-Lead Counsel.

Second, R&M Objectors strangely assert that they substantially caused the Superseding Settlement Agreement to "eliminate[] any mention of a surcharge." R&M Br. at 13. This assertion reflects a fundamental misunderstanding that the MDL 1720 class action litigation involves two distinct proposed classes: (1) a damages class under Rule 23(b)(3); and (2) an injunctive relief class under Rule 23(b)(2). Following remand from the Second Circuit, the Court appointed different and separate interim class counsel and class representatives for each respective class. ECF No. 6754. The Superseding Settlement Agreement is solely on behalf of the Rule 23(b)(3) damages class. For that reason, the Superseding Settlement Agreement does not involve or address surcharging or any other form of injunctive relief. The injunctive relief claims continue to be litigated by separate counsel and class representatives whose claims are

expressly preserved in the Superseding Settlement Agreement.[5] And while R&M Objectors may believe that surcharging has little to no value to them or other merchants, the modifications to the surcharging rules obtained in the 2012 settlement remain in place.

Third, R&M Objectors claim the notice of the 2012 settlement "was incomprehensible and offered no legitimate opt-out rights" and that their objection caused the notice of the Superseding Settlement to be understandable and provide an opt-out right. R&M Br. at 13. R&M Objectors' objections to the notice were rejected. The Court found that the notice satisfied due process requirements and the Second Circuit implicitly rejected R&M Objectors' notice argument by not addressing it. Notice of the 2012 settlement appropriately informed merchants of the right to opt-out of the (b)(3) settlement class but not the (b)(2) settlement class because there is no due process right to opt out of a (b)(2) class. *Payment Card*, 986 F. Supp. 2d at 236. In addition, class member merchants clearly understood they could opt out of the Rule 23(b)(3) class settlement as evidenced by approximately 25% of the transaction volume opting out followed by many of those merchants filing direct action claims which are either still being litigated or have settled. Even certain of the R&M Objectors claim to have conditionally opted out of the settlement in an attempt to not be bound by the prior release for the (b)(2) injunctive relief class. R&M Br. at 4-5. The Superseding Settlement necessarily permits merchants to opt out of the Rule 23(b)(3) settlement class in accordance with Rule 23, as did the prior settlement. The Rule 23(b)(2) class is separately represented and continues to independently litigate their claims. So, of course, the notice of the Superseding Settlement does not address the ability to opt out of the Rule 23(b)(2) class.

---

[5] Superseding and Amended Class Settlement Agreement ¶ 34.

Finally, R&M Objectors wrongly attempt to take credit for the release language in the Superseding Settlement Agreement. In particular, they claim the prior release lasted into perpetuity, included future claimants and claims, and released all claims as to all Visa and Mastercard rules. They then state the current (b)(3) settlement release is limited to "conduct over the next [five] years", "applies only to merchants who accepted Visa or Mastercard between January 1, 2014 through the date of preliminary approval" and is limited to "claims that could have been alleged relating the subject matter of this litigation." R&M Br. at 13. But, the R&M Objectors appear erroneously to compare the 2012 release that applied solely to the (b)(2) injunctive relief settlement class to the current release in the Superseding Settlement Agreement for the (b)(3) damages settlement class. Importantly, it was only the scope and effect of the release for the prior 2012 (b)(2) injunctive relief settlement class that the Second Circuit criticized and was the focus of many objections, including those by the R&M Objectors. But, this settlement is for the (b)(3) class only and the (b)(2) class is not implicated. For this reason alone, R&M Objectors' efforts did not and could not have impacted the release language in the Superseding Settlement Agreement.

A comparison of the relevant releases shows that the R&M Objectors' assertions are fatally flawed. The release of future claimants and claims in the 2012 settlement was a function of the separate release that applied solely to the proposed Rule 23(b)(2) injunctive relief settlement class and not the release that applied solely to the proposed Rule 23(b)(3) damages settlement class. Specifically, the Rule 23(b)(2) injunctive relief settlement class was defined to include "persons, businesses, and other entities that as of the Settlement Preliminary Approval Date or in the future accept any Visa-Branded Cards and/or MasterCard-Branded Cards in the United States." 2012 settlement agreement ¶ 2(b). By contrast, the Rule 23(b)(3) damages

settlement class was defined in the 2012 settlement agreement and is currently defined in the Superseding Settlement Agreement to include businesses, persons or other entities that accepted Visa-Branded and Mastercard-Branded cards from January 1, 2004 through the date of preliminary approval. *See* 2012 settlement agreement ¶ 2(a); Superseding Settlement Agreement ¶ 4. Because this settlement is only on behalf of a (b)(3) damages settlement class, any merchant that opts-out and future merchants not in existence now are not and could not be bound by the release in accordance with Rule 23. The 2012 release for the proposed Rule 23(b)(3) damage class included this same limitation.[6] And the releases for the proposed damages settlement class in both the Superseding Settlement Agreement and the 2012 settlement agreement include language limiting the scope to actions or conduct that were alleged or could have been alleged:

**Superseding Settlement Agreement ¶ 31(a)**: "arising out of or relating to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(3) Settlement Class Released Party that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act."

**2012 settlement agreement ¶ 33**: "arising out of or relating in any way to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(3) Settlement Class Released Party that are alleged or which could have been alleged from the beginning of time until the date of the Court's entry of the Class Settlement Preliminary Approval Order in any of the Operative Class Complaints or Class Action complaints, or in any amendments to the Operative Class Complaints or Class Action complaints"

The identical factual predicate doctrine was and is the law of the Second Circuit and thus necessarily cabined the scope of released claims in 2012 release and the release in the Superseding Settlement Agreement.[7] However, while the current release expressly states that it

---

[6] This explains why the vast majority of the objectors to the 2012 settlement had opted out of that settlement.

[7] Mastercard's counsel, Mr. Gallo, conceded at the September 12, 2013 Final Approval Hearing that the identical factual predicate doctrine applied to the scope of the 2012 release and suggested it be so stated in the final approval order. Final Fairness Hearing Tr. at p. 36.

11

"extend[s] to, but only to, the fullest extent permitted by federal law" and, as explained to the Court and reflected in the class notices, the release is to be construed consistent with the federal law on the identical factual predicate doctrine, this did not cause any substantive change in the scope of the release. *See* Superseding Settlement Agreement ¶ 31(a); ECF No. 7354 at 2. And Co-Lead Counsel independently negotiated a short, and reasonable, duration to the release applying only to Rule 23(b)(3) Class members who remain in the settlement class. R&M had nothing to do with it.

Finally, R&M Objectors' objections to the 2012 Rule 23(b)(2) injunctive class release were not unique. Similar objections had been aired publicly and made to the Court by the former named plaintiffs, and others, before R&M Objectors objected. The R&M Objectors are therefore not a substantial cause of any changes in the release currently before the Court.

### B. R&M Objectors' Fee Request Should be Denied as Unsubstantiated

In addition to not satisfying the "substantial cause" requirement, R&M Objectors' attorneys' fee request should be denied because they do not request a specific fee amount, do not provide a detailed description of the work performed, do not submit hour and lodestar information and generally ignore the factors governing the award of attorneys' fee requests in this Circuit. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Rather, R&M Objectors ask for an unspecified percentage of "whatever fees are ultimately awarded by the Court in this case" based on "their own years-long effort." R&M Br. at 14-15.

R&M Objectors' claimed "years-long effort" is hyperbole, at best. Their effort is limited in time and scope to a couple of briefs and oral argument objecting to approval of the settlement. They otherwise sat on the sidelines contributing nothing while Co-Lead Counsel and Class Representatives have litigated this case over the last fourteen years. Tellingly, R&M Objectors

neither submitted any time and lodestar information to support their fee request nor described their work in detail. In this Circuit, courts generally assess the hours submitted by counsel as a "cross-check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. Moreover, courts determine a reasonable fee based on the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*; *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 359981, at *26 n.40 (E.D.N.Y. Jan. 28, 2019). Having failed to submit the required lodestar information and having not addressed the *Goldberger* factors, R&M Objectors' attorneys' fee request should be denied. R&M Objectors' attorneys should not be rewarded for merely objecting to the prior 2012 Rule 23(b)(2) injunctive relief settlement while not increasing the benefits to the Rule 23(b)(3) damages settlement class.[8]

---

[8] R&M Objectors cite several inapposite cases to claim that the Court should award them "some percentage of the enhanced settlement." R&M Objectors Br. at 14. However, unlike here, in each of those cases the objectors played a critical role in either directly improving the settlement or assisting the court in examining the appropriateness of the settlement. *See In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 368 (E.D.N.Y. 2010) (objector supported his lodestar with proper records yet the court cut the award due to his "very limited contribution"); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 273 F. Supp. 2d 563 (D.N.J. 2003) (undisputed that the objection led to a $56 million increase in the settlement); *In re Domestic Air Transp.*, 148 F.R.D. 297, 359-60 (N.D. Ga. 1993) (objections directly led to changes in the settlement and certain objectors actively participated in discussions with the settlement administration to clarify claims forms and streamline the claims process); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (court determined that objectors "vigorous attack on the settlement and [pursuit] of extensive discovery" provided the court with the comfort it needed and confirmed that the settlement should be approved as fair, reasonable and adequate).

## C. R&M Objectors' Requests to Recover Costs Should be Denied

For the same reasons R&M Objectors are not entitled to attorneys' fees, their request for reimbursement of litigation costs should also be denied.[9]

## D. R&M Objectors Should Not Receive Service Awards

R&M Objectors claim they should receive service awards because "over the past seven years they have shown their commitment to ensure that the Class would be presented a fair and reasonable settlement." R&M Objectors Br. at 15. Other than putting their names on an objection, R&M Objectors have not participated in this litigation. They did not sit for depositions, or answer interrogatories, or produce documents, or provide any assistance with the Superseding Settlement Agreement. R&M Objectors were, and continue to be, absent class members and have risked nothing. *See Lobur v. Parker*, 378 Fed. App'x 63, 65 (2d Cir. 2010) (appropriate to deny incentive awards to objectors who take no risk and make minimal effort). This Court previously required that adequate legal and factual justifications be submitted prior to awarding service awards to the named plaintiffs. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 448-49 (E.D.N.Y. 2014); ECF No. 6395. R&M Objectors provide no factual or legal basis justifying their request for service awards.

## IV. CONCLUSION

For the reasons stated above, the Court should deny R&M's Motion for Attorneys' Fees, Expenses and Service Awards.

---

[9] R&M Objectors' $20,344.65 in claimed costs seem high. R&M Objectors have not detailed any of these costs and their counsel's work has been limited to a couple of briefs and oral argument.

14

Dated: July 31, 2019	BERGER MONTAGUE PC

By:	*/s/ H. Laddie Montague, Jr.*
H. Laddie Montague, Jr.
Merrill G. Davidoff
Michael J. Kane
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 Fax


K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth
ROBINS KAPLAN LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500
(612) 339-4181 Fax


Patrick J. Coughlin
Alexandra S. Bernay
Carmen Medici
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway
Suite 1900
San Diego, CA 92101
(619) 231-1058
(619) 231-7423 Fax

*Attorneys for Rule 23(b)(3) Class Plaintiffs in
In re Payment Card Interchange Fee and
Merchant Discount Antitrust Litigation*