UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————— x

In re PAYMENT CARD INTERCHANGE       :     MDL No. 1720(MKB)(JO)
FEE AND MERCHANT DISCOUNT            :
ANTITRUST LITIGATION                 :     Civil No. 05-5075(MKB)(JO)
                                     :
—————————————————————— :
                                     :
This Document Relates To:            :
                                     :
       ALL ACTIONS.                  :
                                     :
—————————————————————— x


**RULE 23(B)(3) CLASS PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND CLASS PLAINTIFFS' SERVICE AWARDS**

**TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ..................................................................................................1

II.     RESPONSES TO OBJECTIONS ........................................................................2

        A.      Objections of Unlimited Vacations (ECF No. 7555).........................................2

                1.      There was no ethics violation ..................................................................2

                2.      The requested fee is reasonable ..............................................................7

                3.      The requested service awards are reasonable .......................................10

        B.      Objection of Kevan McLaughlin (ECF No. 7571) ..........................................12

                1.      The lodestar is not the presumptively reasonable fee ..........................12

                2.      A percentage of the final settlement fund resulting in a multiplier
                        is appropriate here................................................................................14

                3.      The requested fee is supported by fees awarded in other cases............16

                4.      The requested fee is reasonable in relation to the settlement fund .......17

                5.      Courts routinely grant requests for service awards..............................17

        C.      Objection of Nejat Kohan, Esq. (ECF No. 7550) ...........................................18

                1.      Class members had more than sufficient information to object to
                        the request for attorneys' fees and reimbursement of expenses ...........18

                2.      This case could not have been litigated in 35,000-40,000 hours..........19

                3.      Kohan's proposed 1% fee is unfair and baseless .................................20

                4.      Kohan's objection to reimbursement of expenses is erroneous............21

        D.      Objection of Jack Rabbit, LLC (ECF No. 7574) .............................................21

# TABLE OF CONTENTS

Page(s)

E.   Objection of Gnarlywood LLC (ECF No. 7610) ............................................23

    1.   The class notice appropriately informed class members
of the maximum attorneys' fees to be requested ..................................23

    2.   The requested 9.56% attorneys' fee is reasonable ...............................24

    3.   The submitted lodestar is appropriate ..................................................26

F.   Boilerplate and Unsubstantiated Objections ....................................................27

    1.   Unsupported objections to fees should be rejected ..............................27

    2.   Unsupported objections to service awards should be rejected.............28

III.   CONCLUSION.........................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alexander v. Fedex Ground Package System, Inc.,*
  2016 WL 1427358 (N.D. Cal. April 12, 2016) ....................................................................... 12

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany &*
  *Albany Cty. Bd. Of Elections,* 522 F.3d 182 (2d Cir. 2008) ........................................... 13, 14

*Bradburn Parent Teacher Store, Inc. v. 3M,*
  513 F. Supp. 2d 322 (E.D. Pa. 2007) ..................................................................................... 12

*Carlson v. Xerox Corp.,*
  596 F. Supp. 2d 400 (D. Conn. 2009) ...................................................................................... 9

*Carlson v. Xerox Corp.,*
  355 F. App'x 523 (2d Cir. 2009) .............................................................................. 19, 23, 24

*Central Railroad & Banking Co. v. Pettus,*
  113 U.S. 116 (1885) ................................................................................................................ 17

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ................................................................................................... 24

*CLRB Hanson Indus., LLC v. Weiss & Assoc., PC,*
  465 F. App'x 617 (9th Cir. 2012) .......................................................................................... 21

*Demmick v. Cellco Partnership,*
  2015 WL 13643682 (D.N.J. May 1, 2015) ............................................................................ 23

*Fresno Cty. Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust,*
  925 F.3d 63 (2d Cir. 2019) ......................................................................................... 13, 14, 15

*Geneva Pharmaceuticals Technology Corp. v. Barr Labs., Inc.,*
  386 F.3d 485 (2d Cir. 2004) ................................................................................................... 26

*Goldberger v. Integrated Res., Inc.,*
  209 F.3d 43 (2d Cir. 2000) ............................................................................................. *Passim*

*Gortat v. Capala Bros.,*
  949 F. Supp. 2d 374 (E.D.N.Y. 2013) .................................................................................... 18

*Grant v. Martinez,*
  973 F.2d 96 (2d Cir. 1992) ..................................................................................................... 14

*Hefler v. Wells Fargo & Co.,*
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................................................... 3

*Huyer v. Buckley,*
  849 F.3d 395 (8th Cir. 2017) .................................................................................................. 21

*In re Agent Orange Product Liability Litig.,*
  800 F.2d 14 (2d Cir. 1986) ....................................................................................................... 3

*In re AOL Time Warner Inc.,*
  2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ..................................................................... 9, 22

*In re Austrian and German Bank Holocaust Litig.,*
  317 F.3d 91 (2d Cir. 2003) ....................................................................................................... 3

*In re Bisys Securities Litig.,*
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................................................................ 19

*In re Bolar Pharm. Co., Inc. Sec. Litig.,*
  966 F.2d 731 (2d Cir. 1992) ................................................................................................... 14

iii

**TABLE OF AUTHORITIES**

Page(s)

Cases

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. April 26, 2016) ...................................................................9

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009) ............................................................................................2

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ....................................................................9

*In re Hydroxycut Marketing and Sales Practices Litig.*,
2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) ...............................................................23

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................................11

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ..........................................................................................21

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D. Pa. June 2, 2004),
*amended*, No. CIV. A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) .....................12

*In re Online DVD-Rental Antitrust, Litig.*,
779 F.3d 934 (9th Cir. 2015) ....................................................................................18, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................*Passim*

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) .........................................................................................6, 7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 20

*In re Polyurethane Foam Antitrust Litig.*,
178 F. Supp. 3d 635, (N.D. Ohio 2016) ..........................................................................3

*In re Royal Ahold N.V. Securities & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) .................................................................................3

*In re Tremont Sec. Law*,
2019 WL 516148 (S.D.N.Y. Feb. 11, 2019) ..........................................................8, 9, 22

*In re Tremont Sec. Law*,
699 F. App'x 8 (2d Cir. 2017),
*cert. denied sub nom. Haines v. Lange*, 138 S. Ct. 1264, 200 L. Ed. 2d 417 (2018) ...........15

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..............................................................................9

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc.
v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................................9, 15, 16, 22

*In re WorldCom Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................9, 21, 22

*Internal Imp. Fund Trustees v. Greenough*,
105 U.S. 527, 26 L. Ed. 1157 (1881) ........................................................................17, 18

iv

# TABLE OF AUTHORITIES

Page(s)

Cases

*Lazy Oil Co. v. Witco*,
  166 F.3d 581 (3d Cir. 1999) ...........................................................................4

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .........................................................................23

*McDaniel v. Cty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) .....................................................................9, 15

*Melito v. Am. Eagle Outfitters, Inc.*,
  2017 WL 3995619 (S.D.N.Y. Sept. 8, 2017), judgment entered,
  No. 1:14-CV-02440-VEC, 2017 WL 6403883 (S.D.N.Y. Sept. 8, 2017),
  *and aff'd in part, appeal dismissed in part sub nom.*
  *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) ........................................18

*Melito v. Experian Mkt. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ...........................................................................18

*Muransky v. Godiva Chocolate Chocolatier, Inc.*,
  2016 WL 11601079 (S.D. Fla. Sept. 16, 2016) .................................................12

*Muransky v. Godiva Chocolatier, Inc.*,
  922 F.3d 1175 (11th Cir. 2019) ...............................................................13, 17

*Perdue v. Kenny A.*,
  130 S. Ct. 1552, 1559 (2010) ......................................................................12

*Petrobras Secs. Litig.*,
  317 F. Supp. 2d (S.D.N.Y. 2018) ....................................................................9

*Radcliffe v. Experian Info. Solutions, Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ....................................................................5, 6

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ................................................................11

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................4, 5, 6

*Shelton v. Shelton*,
  151 A.D.2d 659, 542 N.Y.S.2d 719 (N.Y. App. Div. 1989) .................................4

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*,
  56 A.D.3d 1, 865 N.Y.S.2d 14 (N.Y. App. Div. 2008) .......................................4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..........................................................................21

Statutes

15 U.S.C. §78u-4 .......................................................................................11

Rules

Fed. R. Civ. P. 23.................................................................17, 18, 19, 20, 23, 24

## I.       INTRODUCTION

Co-Lead Counsel seek an attorneys' fee award of 9.56% of the value of the settlement fund after it is reduced to reflect the Takedown amount attributable to opt-outs ("Final Settlement Fund").[1] Co-Lead Counsel have previously explained in detail why their request for attorneys' fees of 9.56% is reasonable under the *Goldberger* factors, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), and well within the range of fees awarded by other courts in complex antitrust litigation and supported their motion with a declaration by a leading authority on attorneys' fees, Professor Charles Silver.[2] *See* Motion in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses (ECF No. 7471).

The requests for attorneys' fees, reimbursement of expenses, and service awards, along with the deadline and requirements for objecting to those requests, were set forth in the long form notice (mailed to over 16 million class members), in a widely disseminated publication notice and the case settlement website. Subsequently, the motion for attorneys' fees and reimbursement of expenses and the motion for service awards to the Class Representatives, along with all supporting papers, were posted on the case settlement website.

---

[1] On June 12, 2019, Goldstein & Russell, P.C. ("Goldstein") told the Court that it objected to class counsel's fee request claiming an entitlement to a portion of fees which may be awarded to Co-Lead Counsel. ECF No. 7478. On July 23, 2019, Co-Lead Counsel informed the Court that an agreement had been reached with Goldstein and the law firms within its group ("Goldstein Group") to resolve their objection. ECF No.  7569. The settlement with the Goldstein Group is presumptively for $7 million. But that amount would be reduced if the Court makes certain reductions of the fee request of the counsel to the Rule 23(b)(3) class (class counsel). The fee paid to the Goldstein Group would be deducted from any fee awarded to class counsel. The Goldstein Group has represented the following to Co-Lead Counsel. The fees will be paid to the Goldstein firm. The Goldstein firm, in turn, will both (1) reimburse certain fees that it was already paid, and (2) waive certain contingent fee agreements under which it stands to recover in the future. The multiplier of the Goldstein Group under the settlement is less than the multiplier requested by class counsel.

[2] Second Declaration of Professor Charles Silver Concerning the Reasonableness of Class Counsel's Request for an Award of Attorneys' Fee ("Silver Decl.") (ECF No. 7471-5).

Twenty-one objections to the requests for fees and expenses were filed. All of them lack merit. These objections either fail to set forth any reasons supporting the objection, or ignore, or otherwise misstate or misapply, the standards governing attorneys' fees, and disregard both the work done by Co-Lead Counsel and the many complicated legal, factual and economic issues in this case and the risks those issues created.

Class Plaintiffs have also provided detailed reasons and support for their request for services awards. The few objections to the requested service awards also should be rejected because they either fail to set forth any reason supporting their objection or do not apply the governing law and ignore the facts of this case.[3]

Class Plaintiffs respectfully request the Court grant their motions for attorneys' fees[4] and reimbursement of expenses and for service awards.

## II.  RESPONSES TO OBJECTIONS

### A.  Objections of Unlimited Vacations (ECF No. 7555)

#### 1.  There was no ethics violation

Unlimited Vacations and Cruises, Inc., and USA Pets LLC (collectively "Unlimited Vacations") object to the requested attorneys' fees claiming Co-Lead Counsel has committed an

---

[3] Because there were few substantive objections to the request for Class Representative Service Awards (Rule 23(b)(3) Class Plaintiffs' Memorandum of Law in Support of Motion for Class Representative Service Awards, ECF No. 7472-1 ("Service Awards Mem.")), Co-Lead Counsel addresses those objections in this reply memorandum, rather than in a separate filing.

[4] As they did in connection with the 2012 Settlement, Co-Lead Counsel are reducing their request for fees to 9.56% of that portion of the settlement fund that remains, after the Exclusion Takedown Payments are made to Defendants, pursuant to Paragraphs 21-23 of the Superseding Settlement Agreement. Co-Lead Counsel "reserve the right to seek additional fees from opt outs." *See In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 439 n.3 (E.D.N.Y. 2014) (citing *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009) (Judge Gleeson noting Co-Lead Counsel's decision to voluntarily reduce their fee request, while reserving their right to seek equitable payments from opt-outs, and citing authority for same).

ethics violation by virtue of its prior representation of both the Rule 23(b)(3) and Rule 23(b)(2) classes in this case and thus cannot receive any fees for the work done while representing both classes.[5] Specifically, Unlimited Vacations claims that "under New York Professional Rules of Conduct," a conflict of interest arising under the adequacy of representation prong of Rule 23(a)(4) "requires forfeiture of all fees generated prior to the resumption of this case in this Court after the Court of Appeals reversed the prior settlement approval." Unlimited Vacations Br. at 4. This claim is unsupported by citation to any rule under the New York Professional Rules of Conduct or any legal authority. *See* Unlimited Vacations Br. at 4-5. New York does not have a rule that makes it unethical to represent both a damages class and an injunctive relief class or that a conflict of interest under Rule 23(a)(4) is itself a mandatory professional conduct violation.

The law is to the contrary. Unlimited Vacations ignores the Second Circuit's admonition that "the traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation." *In re Agent Orange Product Liability Litig.*, 800 F.2d 14, 19 (2d Cir. 1986). *See also In re Austrian and German Bank Holocaust Litig.*, 317 F.3d 91, 102 (2d Cir. 2003) (same). The Third Circuit has also recognized that "the conflict rules do not appear to be drafted with class action procedures in mind and may

---

[5] Unlimited Vacations is represented by professional objector John J. Pentz. One court noted that "Pentz is a professional and generally unsuccessful objector" and found that Pentz "provided no coherent explanation for his contention that the fee is excessive. In summary, the Pentz/Tsai objection was not well reasoned and was not helpful." *In re Royal Ahold N.V. Securities & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006). *See also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *16 n.19 (N.D. Cal. Dec. 18, 2018) (noting that Pentz is a "serial meritless objector[]"); *In re Polyurethane Foam Antitrust Litig.*, 178 F.Supp.3d 635, 639 (N.D. Ohio 2016) (noting that "attorney John Pentz, another well-known 'professional objector' who seeks to 'make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements'") (internal citations omitted).

3

be at odds with the policies underlying the class action rules.'" *Lazy Oil Co. v. Witco Co.*, 166 F.3d 581, 589 (3d Cir. 1999) (internal quotations and citations omitted).

Unlimited Vacations does not cite a single case holding that an actual or potential conflict of interest arising under the adequacy of representation prong of Rule 23(a)(4) is itself a mandatory ethics violation. Instead, Unlimited Vacations assumes it is an ethics violation and then relies upon cases addressing the propriety of receiving attorneys' fees if an attorney commits an ethics violation. Unlimited Vacations cites two New York state court cases neither of which involves a class action, much less a conflict of interest resulting from the representation of damages and injunctive relief classes in the same class action. Unlimited Vacations Br. at 5. Both cases stand for the unremarkable proposition that an attorney who engages in misconduct that violates an ethics rule may be required to forfeit attorneys' fees. *See Shelton v. Shelton*, 151 A.D.2d 659, 660 (N.Y. App. Div. 1989) (an attorney who engages in misconduct that violates the rules of conduct may be required to forfeit attorneys' fees, but court found no misconduct); *Ulico Cas. Co. v. Wilson Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 865 N.Y.S.2d 14 (N.Y. App. Div. 2008) (applying ethics rules in context of conflict-free representation, applicable in a non-class action lawsuit).

Unlimited Vacations also asserts that "under similar circumstances, the Ninth Circuit held that an ethics violation leads to a forfeiture of attorneys' fees under California professional conduct rules, which are similar to New York's." Unlimited Vacation Br. at 4. But this ignores the very different facts and misstates the holding in *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). In *Rodriguez*, class counsel engaged in willful, affirmative misconduct at the inception of the case that created an irreconcilable conflict of interest by entering into retainer agreements with the class representatives that tied the level of incentive rewards that would be

4

requested at settlement to various monetary settlement amounts. In addition, those agreements were not disclosed to the court. *Id.* at 959-61. While the Ninth Circuit recognized that "[s]imultaneous representation of clients with conflicting interests (and without written informed consent) is an automatic ethics violation in California," and that the rule was implicated in that case, the court nonetheless "express[ed] no opinion on the impact of these principles on the fees request[ed]." *Id.* at 968. The court then explained "[w]e realize that conflicts of interest among class members are not uncommon and arise for many different reasons. However, the conflict of interest inhering in the incentive agreements did not just happen, nor was it a conflict that developed beyond the control or perception of class counsel. It was inserted into the retainer agreement." *Id.* It then remanded to the district court to determine the impact of class counsel's misconduct on the attorneys' fee award. *Id*.

Unlimited Vacations also relies on the following supposed quotation from *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013): "We hold that settling class counsel ultimately represented parties that had a conflict of interest and therefore class counsel could not adequately represent the class and are entitled to no fees for their legal efforts during the conflicted representation." Unlimited Vacations Br. at 4-5. But, that quote appears nowhere in the opinion cited. The *Radcliffe* court merely held that if the district court approved the settlement upon remand, "it may then exercise its discretion in deciding whether, and to what extent, class counsel are entitled to fees under the common-fund doctrine" where class counsel had entered into conditional-incentive-awards with class representatives (thus creating a conflict of interest). *Radcliffe*, 715 F.3d at 1167-68. *Radcliffe*, like *Rodriguez*, is completely distinguishable from this case.

The circumstances in this case that led the Second Circuit to find a conflict of interest under Rule 23(a)(4) are not comparable to those in the *Rodriguez* and *Radcliffe* cases, where class counsel created the conflict of interest through improper promises made to class representatives. By contrast, here, the conflict of interest was neither fundamental nor created by counsel through improper conduct. It was not the result of undisclosed promises made to the representative Plaintiffs, at the outset of the case, which pitted the representative Plaintiffs' interests against the Class's interests. In fact, this Court, seeing no impropriety, initially appointed Co-Lead Counsel as interim Co-Lead Counsel on behalf of both the damages class and injunctive relief class at the inception of the case. ECF No. 278.

The case was litigated for years with the primary goal to establish that the challenged conduct violated the antitrust laws. The goal was shared equally by both classes and those litigation efforts benefitted both classes. The potential conflict which concerned the Second Circuit arose by virtue of the prior settlement because, in the Second Circuit's view, at that juncture, the two classes had divergent interests in the relief sought. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223, 234 (2d Cir. 2016). Accordingly, contrary to Unlimited Vacations' representation, the Second Circuit did not find "an irreconcilable conflict of interest for the duration of this case." Unlimited Vacations Br. at 5.

In addressing the conflict of interest, the Second Circuit was clear in specifying that it found no fault with Co-Lead Counsel: "We expressly do not impugn the motives or acts of class counsel. Nonetheless, class counsel was charged with an inequitable task." *Id.* And the Second Circuit further recognized there is no inherent conflict in representing both a (b)(3) class and (b)(2) class: "None of this is to say that (b)(3) and (b)(2) classes cannot be combined in a single case, or that (b)(3) and (b)(2) classes necessarily and always require separate representation….

6

Of course we have blessed multi-class settlements that were the product of unitary representation, but those were entered into *after* class certification." *Id.* at 235-36. Subsequently, this Court appointed Co-Lead Counsel on behalf of solely the (b)(3) damages class noting that the Second Circuit "did not suggest that their representation was in any way inadequate or that the lawyers from that group were anything other than eminently qualified to continue in a leadership role." ECF No. 6754 at 5.

Because Unlimited Vacations' objection to fees is premised on a nonexistent ethics violation and is contrary to both the law and facts, it must be rejected.

## 2. The requested fee is reasonable

The absence of an ethics violation is fatal to Unlimited Vacations' assertion that the requested attorneys' fee is excessive. It is only by purporting to limit Co-Lead Counsel's lodestar to $44 million[6] (for the post November 2012 time period) based on the groundless premise that the entire lodestar in the first phase of the case should be disqualified, that Unlimited Vacations can support their claim that the multiplier here is 13.68. Unlimited Vacations completely fails to address the requested fee, or the resulting multiplier, in light of the actual total lodestar of approximately $204 million.[7] Finally, Unlimited Vacations' argument is unsupported because

---

[6] $44 million is not the lodestar for this period. The lodestar for the period after November 2012 is approximately $52.4 million. Declaration of Thomas J. Undlin in Support of Rule 23(b)(3) Class Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses Declaration (ECF No 7471-2), ¶20. Unlimited Vacations subtracted the approximately $160 million submitted lodestar in support of the fee petition in 2013 from the approximately $204 million lodestar submitted now for entire case. For purposes of this fee petition, the Friedman Law Group's time was not included in the submitted lodestar which resulted in the lodestar for the period through November 2102 being reduced by approximately $9.6 million. *Id.* at ¶7.

[7] $204 million is the lodestar *after* a review and reduction of lodestar was made and *after* further reductions were made as a result of the initial settlement being overturned. *See* Undlin Decl., ¶¶ 5-7, 11, 12, 14-20.

the analysis is limited to a lodestar cross check and does not address at all whether the requested attorneys' fees are reasonable under the *Goldberger* factors.[8]

Unlimited Vacation's suggestion that a fee of 1.7% of the gross settlement fund, or $110 million, is reasonable is premised on the same flawed assumption that the lodestar here is $44 million. Under its analysis, Co-Lead Counsel would be receiving only 54% of their lodestar which is obviously unreasonable in light of the *Goldberger* factors, including the enormous work done by Co-Lead Counsel over fourteen years and the approximately $6.3 billion settlement. Unlimited Vacation's assertion that a 1.7% fee is supported by *In re Tremont Sec. Law*, 2019 WL 516148 (S.D.N.Y. Feb. 11, 2019), is disingenuous. In *Tremont*, the court did not award a fee based on a percentage of a class action settlement common fund. *Tremont* involved two related but distinct actions with two separate funds and two separate fee awards. The first fund of $100 million was for the settlement of a class action and the court awarded class counsel a $30 million (30%) fee. *Tremont*, 2019 WL 516148, at 2-3. The second fund of $1 billion was secured through claims made against a bankruptcy estate in a separate litigation involving separate counsel, not the class counsel in the class action. *Id*. at 3. The court awarded class counsel their lodestar, a 1.79% fee, for class counsel's work in developing and administrating a plan of allocation for the $1 billion fund. *Id*. at 2. The court awarded no multiplier because the work entailed zero risk and counsel did not secure the fund. *Id*. at 13. *Tremont* has no bearing on the reasonableness of the fee requested here.

---

[8] Whether the Court awards attorneys' fees using the percentage of the fund or the lodestar method, the fee must be reasonable as determined by applying the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

Unlimited Vacations also claims that a 1.7% fee is reasonable compared to the 7% average fee awarded in class action settlements exceeding "$1 billion post-*Goldberger* in the Second Circuit" and the average 6% fee in settlements exceeding $3 billion. Unlimited Vacations Br. at 7. Such a comparison is irrelevant because the "reasonableness" of a fee is not judged by its relationship to an "average" of what courts, performing case specific analyses have awarded in the past, and there is no reason to limit analysis of fee awards to just this Circuit. The Second Circuit requires the reasonableness of a fee to be judged under the *Goldberger* factors and "should be based on scrutiny of the unique circumstances" of each particular case. *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (quoting *Goldberger*, 209 F.3d at 53). And although attorneys' fees awarded in other cases of a similar subject matter, size and complexity are a relevant consideration in determining a reasonable fee, that analysis requires scrutiny of the specific circumstances of those cases not merely a calculation of a mathematical average fee percentage awarded in all class actions above a certain monetary amount. Unlimited Vacations does not discuss the subject matter, size and complexity of the cases in its billion dollar class action settlement chart and does not provide the multiplier for any of those cases,[9]

---

[9] *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (4 multiplier); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) (3.5 multiplier); *In re AOL Time Warner Inc. Sec.*, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) (3.15 multiplier); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *16 (S.D.N.Y. April 26, 2016) (6 multiplier); *In re Nortel Networks Corp. Sec. Litig.*, No. 01-cv-1855 (S.D.N.Y. 2007) (*Nortel I*) (2.1 multiplier as reported in *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 408 (D. Conn. 2009); *In re Nortel Networks Corp. Sec. Litig.*, No. 04-cv-2115 (S.D.N.Y. 2006) (*Nortel II*) (4.6 multiplier as reported in *Carlson*, 596 F. Supp. 2d at 408); *In re Petrobras Secs. Litig.*, 317 F. Supp. 2d 858 (S.D.N.Y. 2018) (1.78 multiplier); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) (1.72 multiplier). For reasons discussed above, *Tremont* does not belong in the chart. Unlimited Vacation's reliance on *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2002), for the proposition that multipliers above 2 are rejected is misplaced. *Twinlab* cites to just two cases, *Goldberger* and another district court opinion, and is undermined by the multipliers awarded in the cases

9

many of which exceed the multiplier here whether based on the gross settlement fund or the Final Settlement Fund.[10] Unlimited Vacations Br. at 7. A more fulsome discussion of fee awards in comparable megafund cases that support the reasonableness of the attorneys' fee requested here is set forth in Rule 23(b)(3) Class Plaintiffs' opening brief and in Professor Silver's declaration. *See* ECF No. 7471-1 (Opening Br.) at 29-30; Silver Decl. at 5-7, 16-20.

Unlimited Vacations' objection to the reasonableness of the requested attorneys' fees is meritless.

### 3.     The requested service awards are reasonable

Unlimited Vacations concedes that all but one of the Class Representatives should receive service awards, albeit lower than the requested amounts. Unlimited Vacations Br. at 2-3. They rehash the same arguments objecting to the amount of the service awards that their same attorney submitted in objecting to the request for service awards following the original settlement. Rather than filing a brief now with all of the required legal arguments, Unlimited Vacation attaches its appellate brief from 2015.[11] The primary argument is that the awards are "outrageous" and that class members who do not submit evidence of lost wages or income should not receive no service award.

Contrary to Unlimited Vacations' argument, service awards are not limited to lost wages and out-of-pocket expenses except in the narrow context of the Private Securities Litigation

---

included in Unlimited Vacations' own chart and the many other cases awarding higher multipliers in the seventeen years since that case was decided.

[10] Based on the approximately $6.3 billion gross settlement fund, the multiplier based using historical rates is approximately 2.96 while based on the Final Settlement Fund (accounting for a maximum $700 million takedown) the multiplier is lower at approximately 2.62. If current rates are used instead, the multiplier using the gross settlement fund is approximately 2.1 while it is lower at approximately 1.87 using the Final Settlement Fund.

[11] This motion was mooted by the Second Circuit's decision vacating the original 2012 settlement. Court of Appeals ECF No. 158.

Reform Act, which explicitly limits service awards to class representatives in securities actions to "reasonable costs and expenses (including lost wages) directly relating to the representation of the class," 15 U.S.C. §78u-4(a)(4); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 500 (S.D.N.Y. 2009) (interpreting same). In non-securities litigation, lost wages and out-of-pocket expenditures are but one factor considered, along with other factors, in determining the amount of service awards. Those factors include "the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value[,]" "other burdens sustained by [the] plaintiff in lending himself or herself to the prosecution of the claim," any "special circumstances including the personal risk" borne by the representative, "and, of course, the ultimate recovery." *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Unlimited Vacations ignores these factors and instead applies a methodology not recognized by courts that caps the service award based on the monetary value of the time spent by the largest class representatives and further capped by the value of the particular class representative's individual claim. In complex antitrust cases, the class representatives' individual recoveries may be small, but this does not reflect the value of their time and effort litigating these cases on behalf of the class. While the sacrifices of large businesses should not be understated— the large class representatives in this case bore the greatest burdens of discovery—they generally have legal departments that routinely manage litigation thereby limiting the day-to-day involvement by senior management. Small businesses, with few employees, who step forward as class representatives, however, require their key employees to participate in discovery and other aspects of litigation which necessarily diverts their attention away from the day-to-day

11

operations of their business.[12] *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007). Here, the time, effort and various sacrifices of the Class Representatives are detailed in the submitted Declarations and provide a sufficient basis for the requested service awards.[13] For these reasons, Unlimited Vacations' objections should be denied.

**B.    Objection of Kevan McLaughlin (ECF No. 7571)**

**1.    The lodestar is not the presumptively reasonable fee**

Relying on *Perdue v. Kenny A.*, 130 S. Ct. 1552, 1559 (2010), Kevan McLaughlin[14] ("McLaughlin") claims that the Supreme Court has held that for "contingent fee class actions … class counsel's flat lodestar is presumptively adequate compensation and thus a 'reasonable' attorneys' fee." *Id.* at 10. This misstates the Supreme Court's holding. As explained by the

---

[12] Unlimited Vacations also argues that Class Representative Traditions should not receive any service award because the company's principal worked less than full time, and thus has no lost wages. Unlimited Vacations Br. at 2-3. Unlimited Vacations' argument relies on cases decided under the PSLRA which do not apply to this case. Unlimited Vacations is also incorrect that the Court should not consider Class Representative Photos Etc.'s significant efforts supporting the litigation through management and writing a blog related to payment card matters which were important to the litigation. Like class counsel, "the class representatives [confer] benefits on all other class members" and as such "deserve to be compensated accordingly." *In re Linerboard Antitrust Litig.*, No. 1261, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004), *amended*, No. CIV. A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

[13] ECF Nos. 2113-7 to -10, 2113-12 to -16, 5940-3 to -12; 6367-2 to -10; 7472-3 to -10. Unlimited Vacations' argument regarding the sealed declarations is meaningless here. A limited amount of information in the declarations were filed under seal to protect certain personal financial information. Nothing filed under seal impacts the arguments regarding the propriety of awards and Unlimited Vacations could have, but did not, move to unseal the materials or taken steps to obtain them. Notably, Unlimited Vacations' counsel, Mr. Pentz, previously agreed to abide by the protective order in this case and was provided with the sealed version of documents previously filed. *See* September 11, 2015 Appellate brief at 9-10.

[14] McLaughlin is represented by John W. Davis, another serial objector. *See, e.g.*, *Alexander v. Fedex Ground Package System, Inc.*, 2016 WL 1427358, at *4 n.9 (N.D. Cal. April 12, 2016) (finding Davis represented an objector in eleven cases in the Northern District of California alone); *Muransky v. Godiva Chocolate Chocolatier, Inc.*, 2016 WL 11601079, at *3 (S.D. Fla. Sept. 16, 2016) (recognizing that Davis has represented objectors many times in federal class actions and overruling his objections to attorneys' fees as meritless).

Second Circuit, "where a class action results in a common-fund settlement for the benefit of the class, the common-fund doctrine applies and permits a district court to use its discretion to award class counsel either an unenhanced lodestar fee or a fee calculated as a percentage of the settlement fund. This principle applies even when claims are initiated pursuant to a statute with a fee-shifting provision." *Fresno Cty. Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 72 (2d Cir. 2019). The Eleventh Circuit reached the same conclusion in rejecting a similar argument made by McLaughlin's counsel, Mr. Davis, there: "The common-fund doctrine applies to class settlements that result in a common fund even when class counsel could have pursued attorney's fees under a fee-shifting statute." *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195 (11th Cir. 2019)). And while the district court may apply the lodestar[15] or percentage of the fund methods under the common-fund doctrine to determine a reasonable fee, the Second Circuit has recognized "that the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation. Thus, once the parties have agreed to settle, the percentage-of-the-fund methodology serves as important motivation for counsel to maximize the class's recovery, and, *a fortiori*, counsel's fee." *Fresno Cty.*, 925 F.3d at 71-72 (internal citations and quotes omitted). "Critically, a reasonable fee from the plaintiff's perspective can account for contingency risk where such risk exists, and a common-fund fee may therefore exceed what would be a 'reasonable fee' in the fee-shifting context." *Id.* at 70. Accordingly, contrary to McLaughlin's assertion, the Second Circuit does not presume that an unenhanced

---

[15] Although the Second Circuit has noted that the lodestar is more appropriately called the "presumptively reasonable fee," it is disingenuous to suggest, as McLaughlin does, that the lodestar is the presumptively reasonable attorneys' fee to be awarded in a common-fund case. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany & Albany Cty. Bd. Of Elections*, 522 F.3d 182,183 (2d Cir. 2008).

lodestar is the appropriate fee in a common-fund case and thus his objection should be rejected.[16]

McLaughlin Br. at 10.

### 2.   A percentage of the final settlement fund resulting in a multiplier is appropriate here

McLaughlin's contention that the Court should not award any multiplier in this case is premised on a distortion of the Second Circuit's recent opinion in *Fresno County* and the facts of this case. McLaughlin Br. at 12-14. In *Fresno County*, the Second Circuit recognized that multipliers are entirely appropriate under the common-fund doctrine because "[t]he class, having been enriched by counsel's acceptance of its cause at the expense of other clients' causes, may be charged for counsel's assumption of risk on its behalf." *Fresno Cty.*, 925 F.3d at 70. The risk that supports a multiplier is not, as McLaughlin incorrectly suggests, whether counsel would have made "two or three times as much money for the same time expended on other foregone cases." McLaughlin Br. at 13. Rather, in the Second Circuit, risk assessment focuses squarely on the contingency risk associated with achieving a successful result in the case that was actually litigated and settled.[17]

---

[16] McLaughlin relies on inapposite cases to support his assertion. In *In re Bolar Pharm. Co. Inc. Sec. Litig.*, 966 F.2d 731, 733 (2d Cir. 1992), the court questioned the propriety of applying a risk multiplier to the lodestar because it was an issue that was in front of the Supreme Court. The opinion predates *Goldberger* and *Fresno County*, among other decisions, and is inconsistent with the current governing standards. In *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992), the Second Circuit affirmed the award of attorneys' fees to class counsel under a fee shifting statute to be paid by defendant and rejected defendant's argument that the fee should be adjusted downward because the awarded lodestar was a presumptively reasonable fee. Finally, in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany & Albany Cty. Bd. Of Elections*, 522 F.3d 182 (2d Cir. 2008), the court awarded attorneys' fees to the prevailing party under a fee shifting statute so, unlike here, there was not a settlement that created a common-fund.

[17] Even if a case poses zero risk of recovery, that ignores that the attorney may have made more fees on cases they could accept if it were not for their work on the settled case.

As the Second Circuit stated in *Fresno County*, "Lead Counsel is entitled to compensation not only for skillfully negotiating that settlement fund but for bearing the risk that the suit would not generate any recovery." *Fresno Cty.*, 925 F.3d at 72. *See also McDaniel*, 595 F.3d at 424 ("the propriety of a multiplier" is determined, most importantly, by "[t]he level of risk associated with litigation"); *In re Tremont Sec. Law*, 699 F. App'x 8, 17 (2d Cir. 2017), *cert. denied sub nom. Haines v. Lange*, 138 S. Ct. 1264, 200 L. Ed. 2d 417 (2018) (contingency risk is the "the most important [factor] in determining whether to award a lodestar multiplier"). The risk to be assessed is whether the chances of recovery were highly certain or uncertain, not what is the potential value of the attorneys' fees on the work not done on other matters. Thus, a higher multiplier is warranted where the litigation contingency risk is high.

McLaughlin ignores the substantial litigation risks[18] and instead suggests this case is not particularly risky because of the prior *Visa Check* litigation. However, Judge Gleeson, who presided over both cases, found exactly the opposite: "[t]his case was more challenging. The impediments to the tying allegation in the [*Visa Check*] case were not as ominous as the obstacles faced by the plaintiffs here." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 444 (E.D.N.Y. 2014). Judge Gleeson further found that "the risk in this case was enormous" and "from an *ex ante* perspective, counsel no doubt had serious doubts about taking on such a risky and expensive litigation." *Id.* at 441.

McLaughlin, ignoring Co-Lead Counsel's efforts in this case, also asserts that a multiplier is improper because the case could have been litigated more efficiently and "the lodestar is unusually high." McLaughlin Br. at 9, 13. Unsurprisingly, McLaughlin neither submits evidence nor explains how this case could have been litigated more efficiently, nor what

---

[18] The litigation risks are detailed in ECF No. 7471-1 (Opening Br.) at 23-28.

makes the lodestar unusually high (*e.g.*, compared to what?), and fails to identify any specific time or litigation activities that he believes was unnecessary or wasteful. He does not claim to be an expert in antitrust law or class actions. And McLaughlin assumes that the identical settlement could have been achieved with much less time and effort. Such unsubstantiated assumptions do not demonstrate a requested fee is unreasonable.

### 3.  The requested fee is supported by fees awarded in other cases

McLaughlin also claims that the 9.56% requested fee is unreasonably high compared to the 6.5% awarded in *Visa Check*. But Judge Gleeson found a higher fee percentage was warranted here than in the *Visa Check* case because this case was more challenging and risky and noted that the multiplier here is nearly the same as the multiplier in *Visa Check* and "it is also comparable to multipliers in other large, complex cases." *Payment Card*, 991 F. Supp. 2d at 447-48. The percentage of the fund requested here is lower than the percentages awarded in five other antitrust class action settlements exceeding a billion dollars, and is only greater than one. ECF No. 7471-1 (Opening Br.) at 28-31. McLaughlin ignores these inconvenient findings.

McLaughlin also carefully selects a few cases to support his claim that multipliers of 1-2 are the norm in this Circuit. McLaughlin Br. at 11. But fee awards in numerous megafund cases, and Prof. Silver's analysis, support the reasonableness of the requested fee here, based on an approximately $5.6 billion settlement fund (accounting for a maximum $700 million takedown), which equates to a multiplier of approximately 2.62 times the lodestar using historical rates and 1.87 using current rates.[19] *See* ECF No. 7471-1 (Opening Br.) at 36; Silver Decl. at 20-22.

---

[19] As previously explained, based on a $6.3 billion gross settlement fund this equates to a multiplier of approximately 2.96 times the lodestar using historical rates and approximately 2.1 using current rates.

#### 4.      The requested fee is reasonable in relation to the settlement fund

McLaughlin argues that the reasonableness of the requested fee "is hindered by the uncertain temporal scope of the release" and that the requested fee is unreasonable because of the relation of the settlement amount to what is a wide-range of potential damages outcomes which start at 0. McLaughlin Br. at 8. He also argues that the fee is unreasonable because the settlement does not include injunctive relief. *Id.* These arguments attempt unsuccessfully to denigrate Co-Lead Counsel's fourteen year effort in achieving this settlement, but they do not show that the requested fee is unreasonable. McLaughlin concedes the injunctive relief (beyond that which was previously achieved by Co-Lead Counsel and remains in place to this day) cannot be part of this settlement. McLaughlin Br. at 8. Thus, it should not be a consideration in determining the reasonableness of the fee requested.

#### 5.      Courts routinely grant requests for service awards

McLaughlin admits that courts have "made a practice of granting" service awards thus eviscerating his own argument that Supreme Court precedent from the 1800s—long before FED. R. CIV. P. 23 was adopted—prohibits such awards. McLaughlin Br. at 14-15. Courts have rejected the identical argument made here that *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), prohibit service awards. McLaughlin's counsel, Mr. Davis, does not tell this Court that he made this same argument to the Eleventh Circuit and they summarily rejected it holding: "No circuit has applied *Greenough* or *Central Bank*, which were decided well before the adoption of Rule 23, to prohibit incentive awards in the class-action context. We do not view granting a monetary award as an incentive to a named class representative[] as categorically improper." *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir. 2019). McLaughlin concedes that the Second

17

Circuit rejected this same argument earlier this year but claims the factual circumstances in that

case differed from those in *Greenough* and *Pettus*. McLaughlin Br. at 16 (citing *Melito v.*

*Experian Mkt. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019)). The Second Circuit held that

*Greenough* and *Pettus* were "inapposite" and McLaughlin does not tell the Court that the district

court in *Melito* rejected the same argument he makes here stating:

> Ms. Bowes argues that [*Greenough*] and [*Pettus*], preclude an incentive award, in
> any amount, to class representatives. This argument is meritless. As Plaintiffs
> point out, both of these case are extremely old and pre-date Rule 23 by decades.
> As discussed *supra*, courts routinely award named plaintiffs payment for 'special
> circumstances' arising out of their participation in the class litigation.

*Melito v. Am. Eagle Outfitters, Inc*., No. 14-cv-2440 (VEC), 2017 WL 3995619, at *16 n. 21

(S.D.N.Y. Sept. 8, 2017).[20] Consequently, McLaughlin's objection to service awards is baseline.

### C.  Objection of Nejat Kohan, Esq. (ECF No. 7550)

#### 1.  Class members had more than sufficient information to object to the request for attorneys' fees and reimbursement of expenses

Objector Nejat Kohan, Esq. ("Kohan") asserts that "in as much as no sufficient facts for

the fees and expenses have been published, a detailed analysis of a reasonable fee cannot be

articulated." Kohan Br. at 4. This is wrong. As Kohan concedes, the notice identified the

maximum amount of the attorneys' fees and expenses that would be requested. This suffices to

meet the notice requirements under Rule 23(h) of the Federal Rules of Civil Procedure. *See In re*

*Online DVD-Rental Antitrust, Litig*., 779 F.3d 934, 954 (9th Cir. 2015) (providing notice of the

maximum fee requested as a percentage of the settlement fund and the time to object satisfies the

---

[20] McLaughlin's reliance on *Gortat v. Capala Bros*., 949 F. Supp. 2d 374, 379 (E.D.N.Y. 2013)
is misplaced. In *Gortat*, the court did cite *Greenough* but rejected a request for service awards
because it was unsupported and "exaggerated …, and if granted, would be akin to a winning
lottery ticket charged to the defendants." By contrast, here, the Class Representatives have
provided detailed information regarding their significant work during this case and the service
award would be paid out of a common-fund.

requirements of Rule 23(h)); C*arlson v. Xerox Corp.*, 355 F. App'x 523, 525 (2d Cir. 2009) (notice is sufficient to form objections where the maximum amount of attorneys' fees to be requested as a percentage of the gross settlement fund and reimbursement of expenses are identified); *In re Bisys Securities Litig.*, 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007) (notice provides class members with sufficient information to object where it stated that attorneys would seek as much as a third of the settlement fund and reimbursement of expenses). In addition, on June 7, 2019, more than six weeks before the deadline to submit objections, Rule 23(b)(3) Class Plaintiffs' filed their Motion for Attorneys' Fees and Reimbursement of Expenses, along with a brief and supporting declarations (ECF No. 7471) and posted those papers on the case settlement website. These papers provided detailed explanations of the work performed, expenses incurred and the justifications for the requested attorneys' fees and reimbursement of expenses. Settlement class members therefore had all the information needed to form objections to the requested attorneys' fees and reimbursement of explanation.

### 2.     This case could not have been litigated in 35,000-40,000 hours

Kohan's assertion that this case should have been litigated in no more than 35,000-40,000 hours implying that approximately 94% of Co-Lead Counsel's time was unnecessary and wasteful, demonstrates that he has no appreciation for the efforts necessary to litigate a case like this one. Kohan Br. at 4. Merely being an attorney in California is insufficient to make an informed and reasoned judgment about the appropriateness of the time spent litigating a complex antitrust case. *Id*. Kohan does not claim to be an expert on antitrust litigation, or class action litigation or an authority on attorneys' fees. Kohan does not challenge or identify any specific time or litigation activities that he believes was unnecessary or wasteful. He offers no reason or justification for proposing to eliminate approximately 94% of the time expended in this

litigation. Kohan's argument also assumes that Defendants would have settled for approximately $6.3 billion regardless of the time and effort expended litigating this case. This assumption is specious. There were many risks and hurdles in this case and a successful result was never a certainty. ECF No. 7471-1, Opening Br. at 23-28. *See also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 37-40 (E.D.N.Y. 2019) (discussing the significant litigation risks facing the class absent a settlement).

After eliminating all of the time he claims is unnecessary, Kohan argues that awarding 10% of the settlement fund in attorneys' fees would result in Rule 23(b)(3) Class Counsel being paid "$15,000 for each hour of their litigation on this case" making the fee request "unconscionable." Kohan Br. at 4-5. Kohan's argument is uninformed, frivolous and belied by the Court's acknowledgement that "Rule 23(b)(3) Class Counsel have expended enormous time and effort in litigating this action and should be rewarded for those efforts." *Payment Card*, 330 F.R.D. at 42.

### 3.   Kohan's proposed 1% fee is unfair and baseless

Kohan claims that "attorneys' fees should not exceed one percent (1%) of the total settlement proceeds" and a portion of that fee should be shared with "public or private institutions that protect the public interests … instead of paying unconscionable fees to each counsel." Kohan Br. at 5. Ironically, Co-Lead Counsel are private attorneys acting to protect the public interests by bringing this class action antitrust litigation. But, more importantly, Kohan's suggested 1% fee ignores the *Goldberger* factors and he cites no law or facts supporting such a low fee. Kohan's proposed 1% is facially unreasonable as it would result in a fee approximately $141 million below Co-Lead Counsel's lodestar (a significant negative multiplier) and bears no relationship to the result achieved, Co-Lead Counsel's litigation efforts and the risk and

complexities of this antitrust case. In this case, such a meager percentage for an attorneys' fee award is contrary to the public policy purpose of awarding reasonable attorneys' fees: "to provide appropriate financial incentives" to attract "well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

### 4.  Kohan's objection to reimbursement of expenses is erroneous

Kohan objects to the reimbursement of expenses because there "is a separate category of the Cost of Administration and Notices, and Taxes on the Settlement Fund." Kohan Br. at 5. This objection is nonsensical. Litigation expenses are distinct from and unrelated to settlement administrative costs and taxes owed on the settlement fund. Because Kohan does not provide any reason or basis for objecting to the reimbursement of litigation expenses, he cannot and does not show that the requested reimbursement of expenses is unreasonable.

### D.  Objection of Jack Rabbit, LLC (ECF No. 7574)

Jack Rabbit, LLC and Cahaba Heights Service Center, Inc. d/b/a Cahaba Heights Chevron (collectively "Jack Rabbit") object to the requested 9.56% attorneys' fee as unreasonable and instead propose a 5.97% fee.[21] Jack Rabbit Br. at 3. Jack Rabbit's proposed fee is based on an improper and contrived benchmark analysis rather than analyzing the reasonableness of the requested fee under the required *Goldberger* factors. Jack Rabbit's

---

[21] Jack Rabbit is represented by N. Albert Bacharach, Jr., a serial objector to settlements. *See, e.g., Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) (rejecting objection that the fees awarded were unreasonable); *CLRB Hanson Indus., LLC v. Weiss & Assoc., PC*, 465 F. App'x 617 (9th Cir. 2012) (finding objections unconvincing); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (rejecting objections to fairness of the settlement and attorneys' fees award); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 n.15 (D.N.J. 2012) (rejecting objections to fees as meritless).

benchmark fails for the same reasons as does Unlimited Vacations' benchmark analysis discussed above. *Supra* at §II.A.2.

Jack Rabbit's proposed benchmark is limited to cases that have settled above $2.5 billion in the Second Circuit.[22] Jack Rabbit Br. at 3. This benchmark is fundamentally flawed for several reasons. First, Jack Rabbit provides no basis, and there is none, for limiting any analysis to solely cases in the Second Circuit. Second, only three cases satisfy Jack Rabbit's artificial benchmark criteria of cases that have settled for above $2.5 billion in the Second Circuit: 1) *Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003) – a 6.5% fee; 2) *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) – a 5.5% fee; and 3) *In re AOL Time Warner Inc. Sec.*, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) – a 5.9% fee. Third, Jack Rabbit's analysis also fails to reflect that the multipliers on the lodestar cross-checks in each of those cases are higher than the multiplier here: *Visa Check* – 3.5; *Worldcom* – 4; and *AOL* – 3.15. Fourth, other than the settlement amount, Jack Rabbit provides no basis for the *WorldCom* and *AOL* securities cases being an appropriate comparison to this antitrust case. The risks and complexity of securities cases are far different than those for antitrust cases. *See Goldberger*, 209 F.3d at 53 (noting that the recovery risk in securities cases is lower).

Jack Rabbit also claims that Judge Gleeson's reduction of the requested 18% fee (and 9.68 multiplier) to a 6.5% fee (and 3.5 multiplier) in *Visa Check* requires that the fee requested here be significantly reduced. Jack Rabbit Br. at 4-5. This claim is incorrect. Jack Rabbit disregards Judge Gleeson's rejection of similar arguments in awarding a 9.56% fee following the

---

[22] Jack Rabbit concedes that the average fee would increase to 7.05% if it included class action settlements between $1 billion and $3 billion in this Circuit. This analysis is wrong and incomplete, as explained above at §II.A.2, and is further flawed because, as discussed above, the fee awarded in *Tremont* was not the result of a class action settlement common-fund and thus should not be included in any analysis.

original settlement in this case. *Payment Card*, 991 F. Supp. 2d at 444; *see also supra* at §II.B.2. Nor does Jack Rabbit acknowledge that Judge Gleeson used a sliding scale, where the fee percentage decreased as the settlement amount increased, to determine that an overall 9.56% fee was reasonable. *Id*. at 445.

### E.     Objection of Gnarlywood LLC (ECF No. 7610)

#### 1.     The class notice appropriately informed class members of the maximum attorneys' fees to be requested

Gnarlywood LLC and Quincy Woodrights, LLC (collectively "Gnarlywood") argue that the notice to class members of the requested fee is confusing because it does not say whether the fee is being calculated on the gross settlement fund or the fund after being reduced for opt-outs.[23] Gnarlywood Br. at 14-17. As explained above in the response to the objection by Nejat Kohan, the notice to the Rule 23(b)(3) Settlement Class is appropriate if it informs class members of the maximum amount attorneys' fees that counsel might seek. The notice does not need to specify the precise fee if the actual amount requested is lower. *Supra* at §II.C.1. As Gnarlywood concedes, the notice did precisely this by telling class members that Rule 23(b)(3) Class Counsel would seek attorneys' fees of no more than 10% of the total settlement fund. Ultimately, Co-Lead Counsel requested the Court award a fee of 9.56% of the total settlement fund (and now seek the fee based on the Final Settlement Fund) which is proper and less than the maximum described in the notice. *See Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 436-37 (2d Cir. 2007) (attorneys' fees may awarded on the gross settlement amount); *Carlson*, 355 F. App'x

---

[23] Gnarlywood is represented by Kendrick Jan who has objected to other class action settlements. *See Demmick v. Cellco Partnership*, 2015 WL 13643682 (D.N.J. May 1, 2015) (rejecting objections to the fairness of the settlement and unreasonableness of fees); *In re Hydroxycut Marketing and Sales Practices Litig.*, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) (striking objection to settlement because objector lacked standing to assert objections).

at 525-26 (affirming attorneys' fee awarded on gross fund). Gnarlywood's objection based on not knowing the precise amount of the attorneys' fees requested is therefore baseless. *See* Gnarlywood Br. at 14-17.

### 2. The requested 9.56% attorneys' fee is reasonable

Gnarlywood's objection to the sufficiency of the class notice is undermined by their objection to the requested 9.56% as unreasonable whether it is calculated based on the gross settlement fund or after reduction for opt outs. Gnarlywood argues a 9.56% attorneys' fee is excessive because the current settlement is supposedly less valuable and protective than the vacated original settlement but this ignores the *Goldberger* factors and what could be accomplished in this settlement. Gnarlywood also argues that a lodestar cross check cannot be calculated unless the lodestar eliminates time spent pursuing Rule 23(b)(2) relief but this shows a lack of understanding of antitrust law. Gnarlywood Br. at 18-21. Neither argument demonstrates the requested fee is unreasonable.

The requested attorneys' fees can only be judged against the size of the common-fund actually created by this settlement. Gnarlywood is wrong that the current settlement is less valuable than the vacated settlement because the class settlement period is longer than it would have been if the original settlement had not been vacated and there are more class members now than before. That argument goes to the fairness and adequacy of the settlement,[24] not the reasonableness of requested fee. Gnarlywood makes no attempt to analyze the *Goldberger* factors and therefore does not show the requested attorneys' fees are unreasonable under controlling law. Moreover, Gnarlywood incorrectly assumes that after the original settlement

---

[24] The proposed settlement here is more than fair and adequate "in light of the best possible recovery" and certainly "in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

was vacated a new settlement could or would be achieved, much less that a new settlement would or should be multiples more than the monetary amount of the vacated settlement. Gnarlywood's objection ignores the changes in law and industry that made proving liability and damages even more complex and uncertain. Indeed, Defendants argued vociferously that these intervening changes in the industry and the law had tilted the negotiating table sharply in their favor. Nevertheless, only after exhaustive negotiation and litigation effort, Defendants agreed to contribute the entire remainder of the prior settlement funds. Moreover, at the insistence of and as a result of the efforts of Co-Lead Counsel, Defendants added $900 million in additional funds subject to opt out reductions capped, however, at $700 million. As a gross fund, the current settlement fund exceeds the vacated settlement fund by at least $200 million. That it covers a longer time period or more merchants is irrelevant as all class members are treated equally under the plan of allocation which provides for each authorized claimant to receive a pro-rata share of the fund based on interchange fees paid. What matters now is whether the 9.56% requested attorneys' fees of the Final Settlement Fund is reasonable under the *Goldberger* factors. But Gnarlywood jettisoned the *Goldberger* factors in favor of ill-conceived metrics based on the length of the class period and the number of class members. Consequently, Gnarlywood fails to show the requested fee is unreasonable.

Gnarlywood also claims the requested fee is unreasonable because the current settlement does not include injunctive relief. As Gnarlywood undoubtedly knows, the settlement on behalf of the Rule 23(b)(3) Settlement Class could not include injunctive relief.[25] And, Rule 23(b)(3) Class Plaintiffs appropriately engaged in settlement negotiations independent from any

---

[25] As previously pointed out, the rules reforms obtained in the original settlement remain in place to the benefit of merchants.

settlement negotiations taking place between Rule 23(b)(2) Class Plaintiffs and Defendants. The reasonableness of the requested fee cannot be judged against relief that could not obtained in this settlement. To do so would be inherently unfair.

### 3. The submitted lodestar is appropriate

Gnarlywood contends that any "lodestar attributable to Rule 23(b)(2) concerns" in the litigation through November 2012 must be removed for purposes of a lodestar cross-check and to consider the time spent achieving this damages settlement. Gnarlywood Br. at 20-21. Gnarlywood's contention demonstrates a fundamental misunderstanding of antitrust law. Whether seeking damages or injunctive relief, an antitrust plaintiff must demonstrate that Defendants' conduct violated the antitrust laws. To prove a violation of section 1 of the Sherman Act, Plaintiffs "must demonstrate: (1) a combination or some form of concerted action between at least two legally distinct economic entities that (2) unreasonably restrains trade." *Geneva Pharmaceuticals Technology Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 506 (2d Cir. 2004). To prove a violation of section 2 of the Sherman Act, Plaintiffs "must prove that defendants possessed monopoly power, and willfully acquired or maintained that power in the relevant market." *Id*. at 495. As the elements of these two antitrust claims make clear, the law does not distinguish between damages and injunctive relief to prove an antitrust violation. It is therefore wrong to suggest that the lodestar in this litigation can be artificially parsed between time pursuing damages and time pursuing injunctive relief. The total lodestar therefore provides this Court with ample basis to perform a lodestar cross-check.

F.      **Boilerplate and Unsubstantiated Objections**

1.      **Unsupported objections to fees should be rejected**

Thirteen objections to attorneys' fees and/or expenses are conclusory statements providing no reason or support for the objections.[26] Another objects to the "10% of settlement funds," potential additional fees for settlement administration work, "expenses of administrative costs of settlements not to exceed 40 million," and "out of pocket expenses and service award for each lawyer not to exceed $250,000."[27] In addition to misunderstanding the fee, expense and service awards requests, it suggests that the fee request is too low and Co-Lead Counsel should instead be awarded one-third of the settlement fund[28] which far exceeds the amount requested. Another objection appears unaware that the requested attorneys' fee would be for no more than 10% of the settlement fund, as set forth in the class notice, and instead objects to a request never made for one-third of the fund but agrees the attorneys "deserve fair pay for their time, as has been paid by other Federal law suits ranging in the billions."[29] In addition, one other objection incorrectly believes that the settlement class representatives will divide the settlement proceeds equally amongst themselves and thus Co-Lead Counsel should be paid 10% out of each share.[30] None of these sixteen objections requires a response as none provide any reason that the requested attorneys' fees and reimbursement of expenses are unreasonable.

---

[26] See ECF Nos. 7393, 7394, 7404, 7409, 7410, 7438, 7447, 7490-7494, and 7585. Another objection, was submitted by someone who had a credit card but was not a non-class member. ECF No. 7608. Two other objections were submitted using page 15 of the notice, which sets forth the requirements for objecting, but provided no reason for objecting. In addition, it appears that both submissions are requesting that they be included as class members in the class action. ECF Nos. 7405, 7647.

[27] ECF No. 7468

[28] *Id.*

[29] ECF No. 7482.

[30] ECF No. 7500.

### 2.     Unsupported objections to service awards should be rejected

Thirteen "objections" to the requested service awards provide no supporting reasons instead reciting the boilerplate language set forth in the Class Notice.[31] Three other objections are incomprehensible and also cite to no legal authority or other basis for the objection.[32] Because these sixteen objections provide no reason for their objections, no response is required.

## III.   CONCLUSION

For all the reasons stated above, and in their opening briefs, Class Plaintiffs respectfully request that the Court grant Rule 23(b)(3) Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses and their motion for service awards.

Dated: August 30, 2019                     BERGER MONTAGUE PC


                                    By:    */s/ H. Laddie Montague, Jr.*
                                           H. Laddie Montague, Jr.
                                           Merrill G. Davidoff
                                           Michael J. Kane
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           (215) 875-3000 / (215) 875-4604 Fax

                                           K. Craig Wildfang
                                           Thomas J. Undlin
                                           Ryan W. Marth
                                           ROBINS KAPLAN LLP
                                           2800 LaSalle Plaza
                                           800 LaSalle Avenue
                                           Minneapolis, MN  55402-2015
                                           (612) 349-8500 / (612) 339-4181 Fax

---

[31] *See* ECF Nos. 7393, 7394, 7404, 7409, 7410, 7447, 7490-7493, 7494, 7585, and 7608.

[32] *See* ECF No. 7468 (noting that compensation might be excessive, including service awards, but also suggesting the class lawyers receive a 33% fee, more than 20% more than the current request); *see also* ECF No. 7482 (wrongly suggesting "attorney staff" request an award of $2.5 billion); ECF No. 7500 (purporting to object to service awards, but as legal authority cites to a government code section that has no applicability to this matter).

Patrick J. Coughlin
Alexandra S. Bernay
Carmen Medici
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058 / (619) 231-7423 Fax

*Attorneys for Rule 23(b)(3) Class Plaintiffs in*
*In re Payment Card Interchange Fee and*
*Merchant Discount Antitrust Litigation*