UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | MDL No. 1720(MKB)(JO) |

**RETAILERS AND MERCHANTS' AMENDED OBJECTION TO FINAL APPROVAL OF THE SUPERSEDING AND AMENDED SETTLEMENT AGREEMENT AND THE RULE 23(B)(3) CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

## I.    INTRODUCTION AND PRELIMINARY STATEMENT

The Retailer and Merchant Objectors (the "R&M Objectors") opposed the initial Class Settlement presented to this Court in 2012 (the "Original Settlement"), and the Second Circuit largely agreed with the R&M Objectors when overturning that grievously deficient agreement. Nonetheless, even though the R&M Objectors and their attorneys are a substantial cause of the new benefits made available to the Class via the much improved Superseding and Amended Definitive 23(b)(3) Class Settlement Agreement (the "Superseding Settlement"), neither that Superseding Settlement nor the Rule 23(b)(3) Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses ("Class Counsel's Fee Motion") recognizes in any way the contributions of the R&M Objectors and their counsel. The R&M Objectors object to the Superseding Settlement and Class Counsel's Fee Motion because of the failure of those instruments to provide for a reasonable service award to the R&M Objectors and a reasonable fee to their counsel while at the same time claiming fees for conflicted hours. These problems primarily concern the (b)(2) work but also concern the (b)(3) common fund and the cash benefits

1

to that class. Significantly, the Second Circuit found a fundamental conflict existed for Class Counsel; therefore, their work performed on the conflicted part of the case is at issue in this settlement and Class Counsel's fee request.  In fact, the Second Circuit ruled: "The conflict is clear between the merchants of the (b)(3), which are pursuing solely monetary relief, and the merchants in the (b)(2) class, defined as those seeking only injunctive relief. The former would want to maximize cash compensation for past harm, and the latter would want to maximize restraints on network rules to prevent harm in the future." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223 at 233 (2016).

The Second Circuit further found that, "Structural defects in this class action created a fundamental conflict between the (b)(3) and (b)(2) classes and sapped class counsel of the incentive to zealously represent the latter." *Id*. at 236. The latter included the R&M Objectors. Therefore, Class Counsel's efforts (hours) and results were fatally flawed during the conflicted period.

R&M Objectors  amend their Original Objection to Class Counsel's Superseding and Amended Settlement Agreement and expand it to include the following: (1) Class Counsel improperly lays claim to all of the benefits made available to the class, including those only made available by the R&M Objections to the Original Settlement and (2) Class Counsel's claim for their attorneys' fees is unsubstantiated for class members' and absent class members' review.

## II.     THE OBJECTING PARTIES

The R&M objectors opposing the Superseding Settlement and Class Counsel's Fee Motion in this Objection have been previously identified in their originally filed objection.[1]

---

[1] The R&M Objecting Parties are identified in Section II of their Retailers and Merchants' Objections to Final Approval of the Superseding and Amended Settlement Agreement and the Rule 23(B)(3) Class Plaintiffs' Motion for Attorney Fees, filed 7/23/19, document number 7575.

The R&M Objectors represented in this Objection to Final Approval of the Superseding Settlement and Class Counsel's Fee Motion are a broad-based, diverse group of businesses made up of restaurants, clothing stores, oil and gas companies, convenience stores, car dealerships, jewelry shops, beverage retailers, and other types of trades in numerous states, including New York, Vermont, Maryland, Arkansas, Tennessee, Mississippi, Alabama, Georgia, Kansas, Missouri, Oklahoma, Texas, and Louisiana.  These objecting retailers and merchants sell goods to consumers in exchange for payment by credit cards, and each of them paid interchange, or swipe, fees during the Class Period.

### III.    THE ORIGINAL SETTLEMENT WAS SERIOUSLY FLAWED

R&M Objectors filed the first formal objection to speak out against the terrible infirmities in the Original Settlement.  (*See* ECF No. 1653.)  Among those defects was the fact that the Original Settlement proposed to grant the Defendants immunity from liability stemming from the *future* application or interpretation of their rules governing merchants, meaning that even merchants *not yet in existence* would be prevented from challenging Defendants' conduct.  To make matters worse, the release proposed by the Original Settlement purported to insulate Defendants from litigation of claims involving *any* provision in Defendants' rulebooks, which span hundreds of pages, even though very few of those rules were actually at issue in this case. Furthermore, a supposed "benefit" of the Original Settlement – the ability to pass along a "surcharge" to credit card customers – was actually worthless to many Class Members.  Glaring shortcomings like these made the Original Settlement clearly improper, and the R&M Merchants made that point loud and clear.  (*See, e.g.,* ECF No. 2281.)

On appeal, the Second Circuit's Opinion noted glaring deficiencies in the Original Settlement and Class Counsel's work, where it cited the following fatal flaws:

1) Class Members, represented by the R&M Objectors, were inadequately represented due to a fundamental conflict between the (b)(2) and (b)(3) classes. *Id*. at 227, 231.

2) Merchants, represented by the R&M Objectors, in the (b)(2) class that accept American Express or operate in states that prohibit surcharging gained no appreciable benefit in the Original Settlement. *Id*. at 238.

3) Merchants, represented by the R&M Objectors, that begin business after July 20, 2021 gain no benefit at all and were denied due process. *Id.* at 239.

4) The Original Settlement consumed a class of all merchants, represented by R&M objectors, that would ever in the future accept Visa and MasterCard to be compelled to release *forever* the Defendants from any and all claims for past or future conduct (other than the conduct enjoined) that relate in any way to any of Defendants' practices that are alleged or could have been alleged in the suit. *Id.* at 241 (Leval, P., concurring).

5) Terms of the Original Settlement precluded all future merchants, represented by the R&M Objectors, that will accept the Defendants' cards (the (b)(2) class) from bringing claims without ever having an opportunity to opt out (or even object). *Id.* at 240 (Leval, P., concurring).

6) This is not a settlement; it is a confiscation. No merchants operating from November 28, 2012, until the end of time will ever be allowed to sue the Defendants, either for damages or for an injunction, complaining of any conduct (other than that enjoined) that could have been alleged in the present suit. The

4

future merchants, represented by R&M objectors, are barred by the Court's adoption of the terms of the settlement from suing for relief from allegedly legal conduct, although they have no ability to elect not to be bound by it. One class of Plaintiffs receives money as compensation for the Defendants' arguable past violations, and in return gives up the future rights of others. *Id*. at 241 (Leval, P., concurring).

The benefits and protections noted by the Second Circuit and the fundamental conflict between Class Counsel were brought to the attention of the Second Circuit by the R&M Objectors in the first objection lodged October 18, 2012. The clear, fundamental conflict between merchants of the (b)(3) class and (b)(2) class "sapped class counsel of the incentive to zealously represent the latter." *Id.* at 236. The Second Circuit held that, "[C]lass plaintiffs were inadequately represented" and that "the bargain that was struck between relief and release on behalf of absent class members is so unreasonable that it evidences inadequate representation." *Id*. at 227, 231, 236. Judge Leval, in his concurring opinion, went as far as to find, "This is not a settlement; it is a confiscation." The confiscation was of the due process rights of the R&M Objectors. *Id*. at 241 (Leval, P., concurring).

Here, Class Counsel's inadequate representation for the R&M Objectors and the "confiscation" of current and future rights necessitated the R&M Objections to protect their due process rights. Class Counsel claims all of the attorneys' fees available, even for work the Second Circuit ruled provided no appreciable benefit to current and absent class members and the confiscation of absent class and future merchants' rights, all as a result of Class Counsel's fundamental conflict between the (b)(2) and (b)(3) classes, and that the "only unified interests served by herding these competing claims into one class are…(i) the interest of class counsel in fees…". *Id*. at 236.

5

Put simply, it is inequitable to allow Class Counsel all of the available attorneys' fees when some of their work provided no appreciable benefits to class members and confiscated rights of absent class members. Class Counsel claims the benefits and protections noted despite the fact that the Second Circuit found the Original Settlement woefully inadequate for the aforementioned reasons, which were the crux of R&M Objectors' objection, and now the basis for R&M Objectors' claim to their attorneys' fees. R&M Objectors were required to work on behalf of their clients to protect their clients' rights. All R&M Objectors' work was necessitated by Class Counsel's fundamental conflict and failure to adequately represent the R&M Objectors in the Original Settlement.

**IV. THE R&M OBJECTORS AND THEIR COUNSEL PLAYED A MAJOR PART IN UNDOING THE ORIGINAL SETTLEMENT AND MAKING AVAILABLE THE ENHANCED BENEFITS IN THE SUPERSEDING SETTLEMENT**

In 2012, as they began to develop a picture of the Original Settlement through news reports and other similar sources, the first R&M Objectors[2] approached the undersigned counsel with questions and concerns regarding various aspects of the Original Settlement. Those opening inquiries led to investigation, research, and further consultations, ultimately ending with the R&M Objectors' decision to challenge the Original Settlement on the general grounds set forth below. As demonstrated in the succeeding paragraphs, the R&M Objectors' unwillingness to accept unreasonable settlement terms, a position ultimately shared by the Second Circuit, has helped to create a Superseding Settlement that has, among other improvements, made available an additional $900 million to the Class.

---

[2] As word spread of their determination to speak up for the smaller enterprises otherwise deprived of a voice in the proposed settlement of this action, additional entities joined the group of R&M Objectors. Numbering 38 when they first cautioned that the Original Settlement did not merit even preliminary approval (*see* ECF No. 1653), the membership of the R&M Objectors had swelled to over 60 just months later when they filed an objection to final approval (*see* ECF Nos. 2281, 2421).

### A. As The First Non-Parties To Oppose The Original Settlement, The R&M Objectors Vigorously And Persistently Fought For Fairness Since The Earliest Disclosure Of That Initial Agreement

When they opposed the Original Settlement on October 18, 2012, the R&M Objectors distinguished themselves as the first non-parties to docket shortcomings in the terms of that compromise.[3] (ECF No. 1653.) Upon receiving word of the Original Settlement, the R&M Objectors retained an expert to help evaluate the terms of the settlement. After reviewing the expert's analysis, the R&M Objectors made themselves active participants in the effort to unravel a deficient settlement. By way of example, only days after publicly voicing their disagreement with the settlement, counsel for the R&M Objectors wrote Judge Gleeson to recommend creation of a Proposed Objectors' Committee to be given access to the "400 depositions and 50 million pages of discovery which led to the [Original Settlement]," for the purpose of "pooling resources to examine, analyze and . . . report on the viability of any proposed objections." (ECF No. 1657.) Although this proposed committee never materialized, observations made by the R&M Objectors apparently made an impression. In an Order which soon followed, the Court specifically mentioned that it had "received a request from a large group of retailers and merchants" (ECF No. 1668, at 1) before announcing an intention to break with its "[o]rdinar[y]" custom of "not schedul[ing] oral argument of preliminary approval motions" (*id.* at 2). Significantly, the R&M Objectors had previously requested just such a hearing on preliminary approval, given the important issues at play in this massive litigation. (*See* ECF No. 1653 ¶ 20, at 14.) The Court followed through to schedule such an oral argument here, citing the "expectation among some

---

[3] Certain Plaintiffs and Class Representatives, represented by the Constantine Cannon law firm, also objected to the Original Settlement (the "Plaintiff-Objectors") and had already voiced their disapproval by letter to the Court. (*See, e.g.,* ECF No. 1621.)

interested parties that the preliminary approval process should be more involved in this case than in the usual class action." *Id.*

Counsel for the R&M Objectors attended the November 9, 2012 hearing addressing preliminary approval, but the Court at that early stage concluded that the Original Settlement bore no marks such as "indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys" necessary to justify denial of preliminary approval. (ECF No. 1732, at 61.) Nonetheless, the Court acknowledged the presence of "a number of issues that have been well-briefed by the objecting parties that are going to require significantly more careful scrutiny before there is any final approval of the proposed settlement." *Id.* at 62. In the following months, the R&M Objectors did their best to sharpen their approach so that their arguments would carry the day as the Original Settlement was subject to the heightened scrutiny of final approval, to which the Court had alluded.

In furtherance of this mission, the R&M Objectors on May 15, 2013 filed a 31 page objection to final approval containing much more developed and refined versions of the arguments they had previously raised. (ECF No. 2281; *see also* ECF No. 2421 (adding eight additional objectors on May 24, 2013).) The substance of that objection is discussed more thoroughly in the next subsection of this current Objection, but it presently suffices to say that the R&M Objectors pointed out to the Court that the Original Settlement violated due process because it (i) purported to release future antitrust liability under the guise of a Rule 23(b)(2) mandatory class[4] (ECF No. 2281, at 8-11); (ii) inappropriately sought to release future antitrust liability on behalf of a (b)(3)

---

[4] The Original Settlement was fatally flawed, from the outset, because it presumed to compromise claims on behalf of a (b)(3) class, with the mandatory prerogative to opt-out, and also a (b)(2) class, with no opt-out rights, at whose expense, it would be argued, the Original Settlement had been reached. *Cf.* Fed. R. Civ. P. 23(b)(2)-(3).

8

class (*id.* at 11-20); and (iii) undertook to release conduct far more extensive than Defendants' actions at the center of the litigation (*id.* at 20-22). In addition to these rather obvious incidents of impermissible overreach, the R&M Objectors raised more nuanced issues as well. First, the Notice to the Class offered no real ability to opt-out, because the concomitance of a mandatory (b)(2) Class meant that, opt-out or not, future antitrust claims against Defendants were set to be released nonetheless. *Id.* at 22-24. Next, one supposed feature of the settlement – the ability to surcharge – was illusory to many because of numerous states' prohibitions on surcharging. To that substantial portion of R&M Objectors (and the Class), the theoretical ability to surcharge was worthless. *Id.* at 24-27.

The R&M Objectors' opposition to final approval again sought limited discovery to allow "a meaningful inquiry on cross-examination into the merits of the [Original] Settlement." (ECF No. 2281, at 31.) This was not forthcoming. Undeterred, however, counsel for the R&M Objectors spent thousands of dollars to retain an economic expert, upon whose analysis for the Class the R&M Objectors relied when recommending specific categories of discovery to aid the work of Professor Alan Sykes of the NYU School of Law, who had been appointed by the Court to review "economic issues related to the [Original Settlement]." (ECF No. 5873.) Moreover, at the same time they were presenting their objections to final approval, counsel for the R&M Objectors were simultaneously filing "conditional" opt-outs applicable to members of the group who wanted no part of the broad, perpetual release granted Defendants under the Original Settlement. (*See* ECF Nos. 2422, 2618.) The conditional Notice of Opt-Outs filed on behalf of some R&M Objectors described the impossible position into which those entities had been thrust by the Original Settlement:

> All of the businesses opting out by way of this notice of opt-out feel compelled to do so in an attempt to preserve future claims against Defendants . . . .

9

>Both of the settlement classes described in the Notice of Settlement waive these future claims, but it is presently unclear whether this Court will approve that waiver. These potential Class members do not believe a waiver of future claims is valid under either Rule 23(b)(2) or 23(b)(3). . . .
>
>Given the uncertainty surrounding this settlement, the unclear and confusing class notice, and with no way of knowing what this Court will ultimately approve, these businesses feel forced to opt-out of the Rule 23(b)(3) class at this time to preserve their substantive rights and not be bound by a judgment entered in this case.

(ECF Nos. 2422, 2618.)

As was so at the preliminary approval hearing, counsel for the R&M Objectors attended the final approval hearing. R&M counsel addressed the Court to reiterate what the group viewed as the most significant impediments to approval: The confounding notice, as an inevitable product of the blend of (b)(2) and (b)(3) classes for the purposes of this settlement, and the worthless surcharge. (ECF No. 6094, at 173-77.) Still, when all was said and done, final approval was granted. (ECF No. 6124.)

The R&M Objectors remained vigilant and on the front lines of an issue that went to the very core of their businesses. As appeals followed, the R&M Objectors were intimately involved in the process by filing separate briefs – emphasizing their own arguments about the inadequacy of notice and the worthlessness of the surcharge "benefit" – and coordinating with counsel for Plaintiff-Objectors to ensure that the appellate arguments for the R&M Objectors and the Plaintiff-Objectors were consistent, cogent, and persuasive. Indeed, at the request of counsel for the Plaintiff-Objectors, the R&M Objectors contributed thousands of dollars toward expenses in the United States Supreme Court and joined with the Plaintiff-Objectors in certiorari briefing before the Supreme Court. In the end, the years of work put in by the R&M Objectors were successful when the Second Circuit ultimately adopted objectors' arguments to dismantle the Original Settlement.

The preceding summary shows that counsel for the R&M Objectors diligently worked, from the time the Original Settlement was first announced through the conclusion of the successful appeal, to ensure that the unfair and unreasonable Original Settlement would not be consummated. The following subsection establishes that the value of the points made by the R&M objections matched the intensity of those efforts.

### B. Over The Years, The R&M Objectors Made Significant And Meaningful Arguments Against The Original Settlement, And These Were A Substantial Cause Of The Second Circuit's Rejection Of The Agreement

Back in October of 2012, when they posited the first objection to the Original Settlement by an absent Class Member, the R&M Objectors generally alerted the Court to the most grievous attributes of the agreement, such as its vastly overbroad release[5] and its woefully inadequate injunction (which would have prevented Defendants from engaging in similar anticompetitive activity for *only 8 months*). (*See* ECF No. 1653 ¶¶ 40, 49, 51, 54, at 8, 11-14.) These arguments would mature more fully months later when the R&M Objectors filed their formal opposition to final approval. At that time, after directing the Court to the established case law which questioned the efficacy of the Original Settlement on due process grounds (*see* ECF No. 2281, at 8-22), the R&M Objectors turned to the core of their objection. Specifically, the R&M Objectors sounded the alarm that the blending in this action of both (b)(2) and (b)(3) classes served to nullify class notice, and that the settlement's authorization of a surcharge was worthless to many Class Members.

---

[5] Throughout the settlement approval process, the R&M Objectors maintained that the proposed release was excessively overbroad because it purported to bind unknown parties not yet in existence, claimed to shield Defendants from future antitrust liability into perpetuity, and supposedly required Class Members to abandon claims related to *any* Visa or Mastercard rule then in existence. (*See* ECF No. 1653 ¶¶ 40(c), at 8; ECF No. 1703, at 6; ECF No. 2281, at 8-22.)

11

With regard to the ineffective notice caused by the rush to settle claims on behalf of both (b)(2) and (b)(3) classes, the R&M Objectors highlighted the predicament of Class Members:

> This settlement is so fundamentally flawed, and the Notice is so intrinsically deficient, that even the most legally astute Class Member would be uncertain of what action to take upon receiving this Notice.  As things stand now, all absent Class Members have been told that even if they opt-out of the Rule 23(b)(3) Class, they will lose the ability to sue Visa/Mastercard in the future [because of the mandatory (b)(2) release].  In this circumstance, even if a merchant disagrees with the relief afforded by the . . . "damages" settlement, it is likely to stay in the class so as to retain the ability to object to the more significant waiver of future rights.  Should this Court agree that the relinquishment of future damage claims under a mandatory Rule 23(b)(2) class is improper, or conclude that such a release is inappropriate under Rule 23(b)(3), or both, the entire analysis surrounding a decision to opt out is altered.  In that scenario, if a business could preserve future damage claims by opting out of the 23(b)(3) class – without being forced to accept the loss of future damage claims [under 23(b)(2)] – it may well decide to opt-out even though it is not doing so now.  On the other hand, if this Court invalidates future damages releases under both 23(b)(2) and 23(b)(3), the same Class Member might determine that it makes sense to remain a party [as] to the claim for current damages.  Basically, the point is that a ***new notice, containing a new – and legitimate – opportunity to opt out,*** will be required should this Court revise the aspect of the [Original Settlement] releasing future damages claims.

(ECF No. 2281, at 23-24 (emphasis in original).)  On the subject of the surcharge, the R&M Objectors advised that a significant and growing number of states prohibited these assessments.  *Id.* at 25.  Moreover, as a practical matter, many businesses in the Class would be unlikely to pass along to customers a credit card surcharge.  *Id.* at 26-27.  Most fundamentally, as a component of the (b)(2) settlement, it was imperative that the surcharge be part of "an individual injunction *benefitting all its members at once*," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362, 131 S. Ct. 2541, 2558 (2011) (emphasis added), and the surcharge relief fell far short of this.  As argued by the R&M Objectors:  "The surcharge, proposed as an element of class relief, is *not* nationwide relief and does *not* benefit the entire class.  Class members are treated differently."  (ECF No. 2281, at 25.)  Summing it up, the surcharge featured as a "benefit" of the Original Settlement

actually had no value for many Class Members and thus impaired the entirety of the deal. *See generally id.* at 24.

Counsel for the R&M Objectors stressed the notice and surcharge issues during his remarks at the final approval hearing. (*See* ECF No. 6094, at 173-77.) After this Court approved the Original Settlement over the objections, the R&M Objectors continued the fight before the Second Circuit. In close consultation with attorneys for the Plaintiff-Objectors, the R&M Objectors made the unique notice and surcharge arguments the centerpiece of their appellate briefs (*see* Opening Brief for Appellant Retailer & Merchant Objectors ("R&M Opening Brief"), No. 12-4671, at 13-30 (2d Cir.); Reply Brief for Appellant Retailer & Merchant Objectors ("R&M Reply Brief"), No. 12-4671 (2d Cir.)), specifically illustrating the real-world impact of the illusory surcharge relief on R&M members. The R&M Objectors used as examples the situations of 105 Degrees (an Oklahoma business denied the ability to surcharge under that state's law) and Whole Hog (an Arkansas business unable to surcharge because of rules applicable to those who, like Whole Hog, also accept American Express cards). (*See* R&M Opening Brief, at 30-42; R&M Reply Brief, at 2-8.)

The Second Circuit took heed of these arguments. In reversing approval of the Original Settlement, the court explained that intractable conflict between the (b)(2) and (b)(3) classes made simultaneous representation of both impossible. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231-36 (2d Cir. 2016). As the R&M Objectors had been arguing for years, it was this inherent tension between the classes that made the notice unworkable. (*See* ECF No. 2281, at 23-24; ECF No. 6094, at 173-77.) And when it came to surcharge, the Second Circuit echoed the arguments of the R&M Objectors:

> [I]t is imperative that the (b)(2) class in fact benefit from the right to surcharge. But that relief is less valuable for any merchant that operates in New York, California,

13

>   or Texas (among other states that ban surcharging), or accepts American Express (whose network rules prohibit surcharging . . .). Merchants in New York and merchants that accept American Express can get no advantage from the principal relief their counsel bargained for them.

*In re Payment Card Interchange Fee*, 827 F.3d at 238. Continuing on, the court concluded that "[t]here is no basis for this unequal intra-class treatment: the more valuable the right to surcharge . . ., the more unfair the treatment of merchants that cannot avail themselves of surcharging." *Id.*

The Second Circuit reversed approval of the Original Settlement on largely the same grounds championed by the R&M Objectors since Day One. The R&M Objectors were a substantial cause of the eventual disapproval of the unfair and unreasonable Original Settlement.

### V. BECAUSE THE R&M INVESTORS AND THEIR COUNSEL ARE A SUBSTANTIAL CAUSE OF THE SUPERSEDING SETTLEMENT, THEY SHOULD RECEIVE REASONABLE SERVICE AWARDS AND ATTORNEYS' FEES

The R&M Objectors commend Class Counsel for their efforts in converting the woefully inadequate Original Settlement into a Superseding Settlement that provides meaningful benefits, including an additional $900 million, to the Rule 23(b)(3) Class. As shown above, however, the R&M Objectors and their attorneys were also a substantial cause of the eventual rejection of the badly flawed Original Settlement, and they are a substantial cause of the enhanced benefits to the Class available via the Superseding Settlement. The law in the Second Circuit is that reasonable service awards and attorneys' fees are in order whenever an objector and its lawyers are a substantial cause of benefits available to the class. Nonetheless, neither the Superseding Settlement nor Class Counsel's Fee Motion provides for service awards or attorneys' fees for the R&M Objectors and their counsel. For that reason, the R&M Objectors object to Class Counsel's Fee Request and to final approval of the Superseding Settlement.

### VI. CLASS COUNSEL'S FEE REQUEST SHOULD BE DENIED AS UNSUBSTANTIATED

Class Counsel's attorneys' fee request should be denied because Class Counsel has failed to provide a detailed description of the work performed and has failed to submit hour and lodestar information regarding the work performed for review by class members and the public, particularly for work during the period the Second Circuit found Class Counsel was in fundamental conflict.

While it is clear Class Counsel has expended enormous time and efforts over the years to effectuate a settlement, the Second Circuit found much of that work provided no appreciable benefit to the (b)(2) class, including the R&M Objectors. Class Counsel's inadequate representation of the R&M Objectors necessitated their objections and R&M Objectors' representation in this litigation, and but for the R&M objections, the benefits and protections noted to be deficient in the Original Settlement by the Second Circuit may never have been cured.

In this Circuit, courts generally assess the hours submitted by counsel as a "cross-check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. Moreover, courts determine a reasonable fee based on the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*; *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 359981, at *26 n.40 (E.D.N.Y. Jan. 28, 2019).

After review of the public filings, R&M Objectors were unable to locate Class Counsel's public submittal of the required lodestar information. As such, Class Counsel's attorneys' fee request should be denied. In light of the fundamental conflict between the (b)(2) and (b)(3) classes, the incentivization of Class Counsel to effectuate a settlement to earn fees, and the enormous amount of attorneys' fees requested, there is an important public policy for Class Counsel to

publicly file and document its work and time to be scrutinized by the public, class members, and outside counsel. Thus, Class Counsel should provide a full and public disclosure of its work.

Finally, Class Counsel should not be awarded all of the available attorneys' fees while failing to provide adequate representation to the R&M Objectors, necessitating their objections, and failing to properly substantiate their work for public review.

Dated: September 27, 2019

        Respectfully Submitted:

        /s/   Jerrold S. Parker
        Jerrold S. Parker
        Jay L.T. Breakstone
        **Parker Waichman, LLP**
        6 Harbor Park Drive
        Port Washington, NY 11050
        Telephone: (516)-723-4620
        jbreakstone@yourlawyer.com
        jerry@yourlawyer.com

        -and-

        Thomas P. Thrash
        **THRASH LAW FIRM, P.A.**
        1101 Garland Street
        Little Rock, Arkansas 72201
        (501) 374-1058 – Telephone
        (501) 374-2222 – Facsimile

        -and-

        Phillip Duncan
        Richard Quintus
        **Duncan Firm, P.A.**
        900 S. Shackleford, Suite 725
        Little Rock, AR 72211
        Telephone: (501) 228-7600
        phillip@duncanfirm.com
        richard@duncanfirm.com

                           Counsel for the R&M Objectors