UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB) (JO)

This document refers to: ALL ACTIONS

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On January 24, 2019, the Court granted preliminary approval of a Rule 23(b)(3) class settlement agreement in this multi-district litigation ("January 2019 Order"). (Jan. 2019 Order, Docket Entry No. 7361); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 19 (E.D.N.Y. 2019). Currently before the Court are (1) a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (2) a motion for a pre-final fairness hearing conference, both filed by Objector Jack Rabbit LLC, and 280 Station LLC[1] ("Proposed Intervenors"). (Mot. to Intervene, Docket Entry No. 7694; Mem. of Law in Supp. of Mot. to Intervene ("Intervenor Mem."), Docket Entry No. 7730; Mot. for Hearing, Docket Entry No. 7733.) For the reasons explained below, the Court denies the motions.

I. **Background**

The Court assumes familiarity with the facts and extensive procedural history as set forth in the January 2019 Order. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust*

---

[1] On July 23, 2019, Jack Rabbit filed objections to the Rule 23(b)(3) class settlement agreement, and a notice of intention to appear at the November 7, 2019 final class settlement fairness hearing. (Obj. to Class Action Settlement and Class Counsel's Request for Attorneys' Fees and Notice of Intent to Appear ("Jack Rabbit Obj."), Docket Entry No. 7574.) 280 Station LLC did not file objections to the settlement agreement.

*Litig.*, 330 F.R.D. 11.  On July 23, 2019, the last day to file objections to the Rule 23(b)(3) class settlement agreement, Jack Rabbit filed objections and a notice of intention to appear at the November 7, 2019 final class settlement fairness hearing.  (Obj. to Class Action Settlement and Class Counsel's Request for Attorneys' Fees and Notice of Intent to Appear ("Jack Rabbit Obj."), Docket Entry No. 7574.)  Jack Rabbit states that it is a "petroleum dealer engaged in the retail sale of branded motor fuels," and has paid interchange fees associated with credit card transactions at its locations.  (*Id.* at 2.)  Jack Rabbit asserts that even though those transactions "were processed by [an] applicable branded fuel supplier," the suppliers "deducted the interchange (base cost) fees charged by Visa or Mastercard from [Jack Rabbit's] proceeds before remitting" the proceeds to Jack Rabbit, and that it is therefore Jack Rabbit, and not the branded fuel suppliers, who is "entitled to recover from the settlement." (*Id.*)  In its objections, Jack Rabbit argues that it "and all other class members similarly situated . . . are members of an unrepresented subclass, whose interests have not been adequately protected by the proposed settlement." (*Id.* at 2–3.)

This objection echoes other nearly identical objections to final approval of the Rule 23(b)(3) class settlement agreement that have been filed by similarly situated merchants that sell branded fuel, a group that the Court has collectively labeled, the "Branded Operators."  As Class Counsel for the Rule 23(b)(3) class state:

> Like many of the other 140-odd Branded Operators that objected to the proposed settlement, Jack Rabbit and 280 Station have expressed concerns that their upstream oil-company suppliers may seek to claim settlement funds to which Jack Rabbit and 280 Station claim they are rightfully entitled.  And like many of the other Branded Operator objectors, Jack Rabbit filed an objection and notified the Court of its intent to make its objections heard at the final fairness hearing.

(Resp. in Opp'n re Mot. to Intervene ("Class Counsel Opp'n") 1, Docket Entry No. 7737.)

2

Several Branded Operators filed similar objections at the preliminary approval stage. At the time, the Court noted:

> [T]he Branded Operators argue that preliminary settlement approval should not be granted because an intra-class conflict exists and class members will have competing claims over funds for the same merchant transactions. The Branded Operators contend that the major oil companies will attempt to make claims for funds that the Branded Operators are allegedly owed.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 25.

On September 16, 2019, Proposed Intervenors filed the motion to intervene. (Mot. to Intervene.) They state that they "objected to the settlement, in part, because the settlement creates a conflict between [Proposed Intervenors] and other potential class members," such as the branded fuel suppliers, "for the same portion of settlement benefits." (Intervenor Mem. 5.) In support, they argue that the class is not properly defined "because it lumps all entities in the payment chain [together] 'that have accepted any Visa-Branded Cards and/or MasterCard-Branded Cards' during the class period." (*Id.*) As a result, they "seek to intervene . . . to affirmatively assert their claim to recovery," because of "the sharp conflict involving [Proposed Intervenors'] claims to the settlement," and argue that they "are entitled to intervene because of the express lack of diligence on behalf of [C]lass [C]ounsel to represent their interests." (*Id.* at 6.) Class Counsel oppose the motion. (Class Counsel Opp'n.)

On October 11, 2019, Proposed Intervenors filed their motion for a pre-final fairness hearing conference to address (1) "a conflict between the Branded Operators and the major integrated oil companies and non-retail entities," (2) Proposed Intervenors' "requested remedy, *inter alia*, which is to create a subclass for the Branded Operators and require major integrated oil companies and non-retail entities to carry the burden under contract law to establish their entitlement to settlement proceeds," and (3) "Branded Operators' entitlement to the settlement

proceeds" absent concrete contract language. (Mot. for Hearing.) Proposed Intervenors argue that they will be unfairly prejudiced if these matters are not raised before the final fairness hearing. (*Id.*)

## II. Discussion

### a. Standard of review

Rule 24(a) of the Federal Rules of Civil Procedure allows intervention as of right under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010). To establish intervention as of right pursuant to Rule 24(a)(2), an intervenor must show that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *XL Specialties Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)); *see also Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 84–85 (2d Cir. 2018). "Denial of the motion to intervene is proper if any of these requirements is not met." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (citation omitted); *see also Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988).

Rule 24(b) of the Federal Rules of Civil Procedure allows a court to exercise its discretion and permit intervention under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 103 n.7 (2d Cir. 2013). In exercising its discretion, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, . . . the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). Permissive intervention is wholly within the court's discretion. *See St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention . . . .").

### b. Intervention as of right is not warranted because Proposed Intervenors have not shown that existing parties do not adequately protect their interest

Proposed Intervenors argue that their direct interest in the settlement is "their claim to the settlement proceeds for their acceptance of Visa and MasterCard Branded Cards and payment of the related interchange charges." (Intervenor Mem. 11–12.) They state that "Proposed Intervenors' interests are threatened if they are not permitted to appear in these proceedings because non-retail distribution entities (e.g. Oil Brands) and Defendants have already expressed a bias at how they interpret who is able to recover under the settlement," that "Class Counsel was of no help resolving this issue, as they contend the matter is a determination of the contract

between [Branded Operators] and Oil Brands," (*id.* at 12 (citations omitted)), and that "[n]one of the existing parties thought it was even necessary to address this inherent conflict of distribution among the interested entities," (Reply to Class Counsel Opp'n ("Intervenor Reply") 7, Docket Entry No. 7726). They further appear to argue that "Class Counsel inadequately represented Proposed Intervenors' interests" because "the Court determined [in the January 2019 Order] that Class Counsel did not have a duty to represent the interests of Operators in relation to the settlement." (Intervenor Mem. 13.)

Class Counsel argue that Branded Operators' objections, including the objections of Proposed Intervenors, "do not raise a valid claim of intra-class conflict, but rather point to an inevitable feature of administering many class-action settlements that include suppliers and distributors or franchisors and franchisees among the class plaintiffs." (Class Counsel Opp'n 3.) They emphasize that apart from Proposed Intervenors, "*none* of the other Branded Operators have sought to intervene in this action." (*Id.* at 8.)

The Court finds that Proposed Intervenors have failed to show that their interest, which they state is "their claim to the settlement proceeds for their acceptance of Visa and MasterCard Branded Cards and payment of the related interchange charges," (Intervenor Mem. 11–12), is not protected by named plaintiffs, who undoubtedly possess the same interest.[2] "While the burden to

---

[2] The Court makes its determination of adequate representation only pursuant to a Rule 24(a)(2) intervention as of right analysis, and finds that, based on the papers before it, Proposed Intervenors have not shown that the existing parties do not adequately represent their interests. The Court makes no determination as to the adequate representation analysis it will undertake in considering whether to grant final approval of the Rule 23(b)(3) class settlement agreement, at which stage it will take all objections, including Jack Rabbit's, into full consideration. *See Little-King v. Hayt Hayt & Landau*, No. 11-CV-5621, 2013 WL 4874349, at *20–21 (D.N.J. Sept. 10, 2013) (finding that the third and fourth factors of the intervention of right analysis had not been met, "that [o]bjectors' interests [were] adequately preserved and they have been afforded a full and fair opportunity to make their objections and argue them at the fairness hearing," that

demonstrate inadequacy of representation is generally speaking 'minimal,' [the Second Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (first quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); and then citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990)). "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80.

Courts often look to whether there is a true divergence of interests or an actual impediment to a named plaintiff's representation, such as a standing issue or that a named plaintiff settled their claims. *See, e.g.*, *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) ("Given that [a named plaintiff] has settled his individual claim, it is apparent that he can no longer adequately represent the interests of the proposed class. Therefore, [proposed intervenor] is permitted to intervene as of right."). As persuasively

---

"[t]herefore, their motion for leave to intervene [was] unnecessary," and that "[a]lthough approval of the settlement affects the [o]bjectors, the [c]ourt's decision regarding the intervention motion will not finally dispose of any right or claim they might have differently than if they were allowed to intervene"); *Dewey v. Volkswagen of Am.*, No. 07-CV-2249, 2012 WL 8433901, at *5–6 (D.N.J. Nov. 26, 2012), *aff'd sub nom.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191 (3d Cir. 2014) (denying motion to intervene by objector and holding that the proposed intervenor had not shown that his interests would be impaired if not permitted to intervene, that "[t]o the contrary, the class will be certified only if the court determines that the representative plaintiffs are adequate to represent the interests of all class members, including [proposed intervenor]," that proposed intervenor's objection "w[ould] be considered in the same way as if it were presented by a party," and that "[a]s a result, the intervention motion need not be granted simply to advocate that which the [c]ourt is duty-bound to do and which is being pursued by [proposed intervenor] in his capacity as an objector and by other objectors").

summarized in one case where the proposed intervenor failed to show that existing parties did not adequately represent its interests:

> [W]hile [the proposed intervenor] correctly points out that intervention is commonly granted to absent class members, that outcome ensues because it is granted to rectify an adequacy of representation issue. Many of the cases cited by [the proposed intervenor] involved situations where named plaintiffs could not adequately protect the movants' interests due to changed circumstances or standing issues. *See Chen-Oster*, 2015 WL 4619663, at *7 (granting intervention in part because named plaintiffs did not have standing to seek injunctive relief); *New Jersey Carpenters Health Fund*, 2010 WL 5222127, at *4 (finding that intervenors had a different interest in "prosecuting violations with respect to the particular offerings in which [i]ntervenors purchased securities"); *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (named plaintiff settled individual suit); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (named plaintiff died). This case presents no such special circumstances.

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 296–98 (S.D.N.Y. 2018). While the Court acknowledges and understands Proposed Intervenors' concerns regarding their ultimate right to recover as opposed to a branded fuel supplier, Proposed Intervenors nevertheless admit that their interest is one that is common to all class members, including named plaintiffs, i.e., economic recovery for interchange fees paid. *See L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18-CV-1902, 2018 WL 1782709, at *4 (E.D.N.Y. Apr. 12, 2018) (denying motion for intervention because "[w]hile [the movant] may have an interest that is not represented by any of the parties currently before the court, both [parties] desire the same outcome in this case"); *Demarco v. Avalonbay Cmtys., Inc.*, No. 15-CV-628, 2016 WL 5934704, at *6 (D.N.J. Oct. 12, 2016) (denying motion for intervention "because the existing [p]laintiffs are seeking to maximize their economic recovery in the same way as the potential intervenors," and therefore "there is no adversity of interest"); *In re NASDAQ Mkt.-*

*Makers Antitrust Litig.*, 187 F.R.D. 465, 491–92 (S.D.N.Y. 1998) (stating that "[p]otential intervenors . . . must 'take the pleadings in a case as they find them'; they may not by intervention 'radically alter th[e] scope to create a much different suit,' or 'inject collateral issues into an existing action,'" and further noting that "[i]nterjecting any new issues . . . following the negotiation of settlements, would be unsettling and untimely" (quoting *Wash. Elec. Co-op.*, 922 F.2d at 97)).

The Court therefore declines to grant Proposed Intervenors intervention as of right.[3]

---

[3] The Court notes that case law supports a finding that Proposed Intervenors' motion is untimely because Proposed Intervenors waited months after receiving notice, filing objections over the same underlying issue, and close of the opt-out and objection period, to file their motion for intervention. *See, e.g.*, *D'Amato*, 236 F.3d at 84 (upholding district court's determination that motion to intervene was untimely where motion was made "more than a year after the complaint was filed, approximately three months following the district court's order that notice be sent to class members, and three days prior to the [f]airness [h]earing scheduled by the district court"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 69 (S.D.N.Y. 2003) (noting that a motion to intervene was untimely where it was filed "nearly a year and half after the named class members filed the instant lawsuit, three months after the settlement notice campaign began, and only days before the time to object closed"); *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) ("We are not persuaded that [o]bjectors' motion was timely, because the motion was filed after four years of ongoing litigation, on the eve of settlement, and threatened to prejudice settling parties by potentially derailing settlement talks, and especially where [o]bjectors' concerns could largely be addressed through the normal objection process." (citation omitted)); *cf. In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314–15 (3d Cir. 2005) (noting that there is a presumption of timeliness when a motion to intervene is filed *within* the opt-out period); *Dewey*, 2012 WL 8433901, at *3–4 (same).

The Court also notes that case law supports a finding that Proposed Intervenors have failed to meet the third factor of the Rule 24(a)(2) analysis — that disposing of the action will impair or impede their ability to protect their interest. Proposed Intervenors do not thoroughly describe why they cannot protect their interests via typical Rule 23 processes as putative class members, processes through which the Court will rigorously consider any and all objections submitted in writing and at the final fairness hearing, including objections already submitted by Jack Rabbit, and processes which the other approximately 140 Branded Operators are utilizing to raise nearly identical objections. Proposed Intervenors' arguments — that the settlement creates a class conflict and that the settlement class is not properly defined — speak to the ultimate fairness of the settlement, which the Court will consider at the final fairness hearing. (*See* Intervenor Mem. 5–6.) Courts have denied motions to intervene in similar circumstances. *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831, 2013 WL 2145588, at *2 (S.D.N.Y. May

### c. The Courts declines to grant intervention by permission

Proposed Intervenors argue that as an alternative to intervention as of right, intervention by permission is warranted. (Intervenor Mem. 15.) They argue that they "will bring a novel perspective to and clarify the issue before the Court, presenting important facts about the actual operation of credit card transactions for [Branded] Operators." (*Id.* at 16.)

Class Counsel argue that Proposed Intervenors' request for permissive intervention should be denied "[b]ecause the Proposed Intervenors are protecting and can continue to protect

---

16, 2013) (denying intervention as of right and noting that the proposed intervenor "d[id] not distinguish or adequately explain why intervention is appropriate in lieu of exercising his rights to either opt out of the settlement or to object and be heard at the fairness hearing" (citing *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 201 (2d Cir. 2000)); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2012 WL 1674299, at *2–3 (S.D.N.Y. May 14, 2012) (finding that "[u]nder the third factor, the [p]roposed [i]ntervenors have not adequately explained why intervention is required to protect their interests, as distinguished from exercising their rights as objectors under Rule 23.1," and further noting that "[a]s the [p]roposed [i]ntervenors' arguments are directed to the settlement's ultimate fairness and adequacy, they are best weighed alongside those of other likely objectors"); *Lopez v. Delta Funding Corp.*, No. 98-CV-7204, 2004 WL 7196764, at *2 (E.D.N.Y. Aug. 9, 2004) ("In short, since the proposed intervenors have had an opportunity to present their objections, to opt out of the proposed class and to appeal any determination with respect to the settlement, I find that their interests are neither impaired with respect to the motion for approval of the class settlement nor have their interests been inadequately represented, at least at this juncture of the litigation."); *Cody v. SoulCycle, Inc.*, No. CV-1506457, 2017 WL 8811114, at *3–4 (C.D. Cal. Sept. 20, 2017) (denying motion to intervene because it was not necessary to protect proposed intervenor's interests because "[a]s a putative class member, the [p]roposed [i]ntervenor has two other options that would protect his interests: (1) voice his concerns prior to final settlement approval and (2) opt out of the [s]ettlement [a]greement and continue to litigate his claims separately"); *Demarco*, 2016 WL 5934704, at *5 (denying the motion to intervene and rejecting proposed intervenors argument that class counsel and the named plaintiffs' interests were in conflict with proposed intervenors because "[t]he implication [would be] that class counsel and the class members are not interested in maximizing the settlement"); *Zepeda v. PayPal, Inc.*, No. CV-10-02500, 2014 WL 1653246, at *4 (N.D. Cal. Apr. 23, 2014) ("[C]ourts have frequently denied intervention in the class action settlement context, citing concerns about prejudice, as well as putative interveners' ability to protect their interests by less disruptive means, such as opting out of the settlement class or participating in the fairness hearing process.").

their interests through the regular class-action-objection process, [and] their intervention in this case would do nothing but potentially introduce undue delay, prejudice, and confusion." (Class Counsel Opp'n 10.) Class Counsel also argue that "[h]aving to resolve the Proposed Intervenors' claim-ownership issue in collateral litigation before final approval would severely prejudice Class Plaintiffs and Defendants." (*Id.*)

The Court declines to grant permissive intervention under Rule 24(b)(2), (1) for the reasons set forth above, (2) because Proposed Intervenors seek to intervene after fourteen years of litigation at this late stage of class settlement, having submitted a fully briefed motion less than one month before the final fairness hearing, and over two months after Jack Rabbit submitted its substantially similar objections, (3) because granting intervention might unduly delay the class settlement proceedings, which includes the right to appear for the other objectors with substantially similar concerns, and (4) because the Court does not believe that the Proposed Intervenors "will significantly contribute to full development of the underlying factual issues," given that one of the Proposed Intervenors already submitted substantive objections of almost identical substance, and approximately 140 other objectors have raised nearly identical objections. *See Citizens Against Casino Gambling in Erie Cty.*, 417 F. App'x at 50 ("[T]he court must consider 'whether the intervention will unduly delay or prejudice . . . the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit.'" (quoting *H.L. Hayden Co. of N.Y., Inc.*, 797 F.2d at 89)); *D'Amato*, 236 F.3d at 84 ("The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances before the court." (internal quotations omitted)); *Athale v. Sinotech Energy*

*Ltd.*, No. 11-CV-05831, 2013 WL 2145588, at *3 (S.D.N.Y. May 16, 2013) (denying permissive intervention where proposed intervenor filed his motion thirteen months after lead plaintiff had been named and "two months after the parties had entered a[ ] [memorandum of understanding] with regard to the settlement," and emphasizing that "[t]o the extent . . . that [proposed intervenor's] claims shares common questions of law or fact with those in the current action, they are more properly addressed during the fairness hearing, in conjunction with those of other likely objectors," and that "intervention at this point in litigation . . . would cause undue delay and prejudice by derailing the current settlement process at a point when [proposed intervenor] still has ample opportunity to protect his rights through the regular class action settlement process" (citing *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 201–02 (2d Cir. 2000))).

      **d. The Court declines to grant Proposed Intervenors a pre-final fairness hearing conference**

Proposed Intervenors have not shown why they will not be able to sufficiently address and protect any rights they have through alternative processes, such as the final fairness hearing or a separate claims process directly against the branded fuel suppliers. In accordance with the above analysis, the Court finds that "Proposed Intervenor[s'] arguments are directed to the settlement's ultimate fairness and adequacy, [and] are best weighed alongside those of other likely objectors." *Athale*, 2013 WL 2145588, at *2 (second alteration in original) (quoting *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012)). Moreover, if Proposed Intervenors disagree with any decision by the Court, including decisions made with respect to the final approval motion, they can seek review of the Court's decision. *See Devlin v. Scardelletti,* 536 U.S. 1, 7 (2002); *Lopez v. Delta Funding Corp.*, No. 98-CV-7204, 2004 WL 7196764, at *2 (E.D.N.Y. Aug. 9, 2004); *Dewey v. Volkswagen of Am.*, No. 07-CV-2249, 2012

WL 8433901, at *5 (D.N.J. Nov. 26, 2012), *aff'd sub nom.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191 (3d Cir. 2014) ("If [proposed intervenor] disagrees with the [c]ourt's ruling on his objection, then he may seek review by the Court of Appeals.").

The Court therefore denies Proposed Intervenors' motion for a pre-final fairness hearing conference.

### III. Conclusion

For the foregoing reasons, the Court denies Jack Rabbit and 280 Station's motion to intervene and motion for a pre-final fairness hearing conference.

Dated: October 30, 2019
       Brooklyn, New York

                                          SO ORDERED:

                                          _____s/ MKB_____
                                          MARGO K. BRODIE
                                          United States District Judge