UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION . | MDL No. 1720 (MKB)(JO) 1:05-md-01720 (MKB) (JO) Civil No. 05-5075 (MKB)(JO) |

### DECLARATION OF JACK W. KIDD UNDER PENALTY OF PERJURY

Jack W. Kidd, hereby declares as follows:

1. I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness at any proceeding before this Court, I could, and would, competently testify as set forth herein.

2. I am the managing member of both Jack Rabbit, LLC and 280 Station LLC. Each of these LLCs is a retail petroleum marketer that owns and operates a retail gas station and convenience store.

3. Both Jack Rabbit, LLC and 280 Station LLC are members of the proposed settlement class because, during the class period identified in the proposed settlement agreement, both Jack Rabbit, LLC and 280 Station LLC accepted from customers Visa and MasterCard payment cards at their retail gas station and convenience store, and paid illegal antitrust interchange fees overcharges to both Visa and Mastercard.

4. During the class period, both Jack Rabbit, LLC and 280 Station LLC purchased the petroleum products sold at their retail gas stations and convenience stores from Suppliers, *i.e.*, oil distributors who sell at wholesale either branded or unbranded petroleum products.

5. Following the general trade usage and contractual practice in the industry, the Suppliers, provide the point-of-sale hardware and software to the retail petroleum marketers, Jack Rabbit,

1

LLC and 280 Station LLC.

6. Following the general trade usage and contractual practice in the industry, our Suppliers, rather than the petroleum products retail marketers, such as Jack Rabbit, LLC and 280 Station LLC, have the relationship with the acquiring bank processing the credit card transactions at the retail gas stations and convenience stores owned and operated by Jack Rabbit, LLC and 280 Station LLC .

7. Following the general trade usage and contractual practice in the industry, the petroleum products retail marketers, such as Jack Rabbit, LLC and 280 Station LLC, are solely and completely responsible for payment of the entire interchange fee, and any and all other Visa or Mastercard processing fees, paid to either the issuing bank or the merchant bank on all payment card transactions at their retail locations. As a result, any and all antitrust overcharges regarding the interchange fee are incurred solely and completely by the petroleum products retail marketer.

8. Following the general trade usage and contractual practice in the industry, if a customer purchases anything at the retail gas stations and convenience stores owned and operated by Jack Rabbit, LLC and 280 Station LLC, with a Visa or Mastercard, the Supplier receives the money paid for the sale by the customer's issuing bank, less the interchange fee. Then the Supplier pays themselves the wholesale price of the petroleum product owed to the Supplier by the retail marketers, and then pays the money remaining to the retail marketer.

9. Thus, it was the petroleum products retail marketers, such as Jack Rabbit, LLC and 280 Station LLC, who solely and directly paid, and thereby were damaged, by the illegal antitrust interchange fees overcharges. In all instances the illegal antitrust interchange fees overcharges were paid directly to the issuing bank from the customer's retail payment, either at the pump or in the convenience store, at the point of sale.

10. Conversely, the Suppliers never paid any of the illegal antitrust interchange fees overcharges, and suffered no damage whatsoever.

11. The proposed settlement, by its definition of class membership, includes the Suppliers, as well as petroleum products retail marketers, such as Jack Rabbit, LLC and 280 Station LLC, within the definition of class members, even though the interchange fees were never paid, either directly or indirectly by the Suppliers, and were always paid by the petroleum products retail marketers.

12. Because of the general trade usage and contractual practice in the industry, the payment card transactions at retail locations may give the appearance to someone not familiar with the industry of being the Supplier's payment card transactions, because the Suppliers provide the point of sale hardware and software to the retail locations.

13. But anyone familiar with the industry knows that suppliers never pay the payment card fees associated with retail sale. Therefore, the Suppliers have no right to recover damages that are only suffered by petroleum products retail marketers.

14. I understand that the Court has been told that the entitlement to file a claim and receive damages is a contract dispute between the Suppliers and the petroleum products retail marketers, such as Jack Rabbit, LLC and 280 Station LLC. I don't understand how this could be true, as during the relevant time period, every contract entered into with a supplier by Jack Rabbit, LLC and 280 Station LLC, provided: that the retail locations would accept payment cards and that the retail location shall pay any payment card processing fee that may be assessed. Therefore, under the simple language of the contract, the retailer is the direct purchaser, or direct payor, of the interchange fees.

15. Additionally, for there to be a contract dispute, the contract, by its terms, would need to

deal with the issue of either the allocation of antitrust damages arising out of a violation of the antitrust acts by a third party, such as Visa and MasterCard; or even, which of the contracting parties is the direct purchaser or direct payor of the interchange fees.

16. The fact that there is an issue at all with regard to who is entitled to the antitrust damages arising out of the antitrust overcharges regarding the interchange fees for retail purchases at the gas pump or convenience store is proof that the interests of retail marketers, such as Jack Rabbit, LLC and 280 Station LLC, were not adequately represented, or were perhaps not represented at all, during the settlement process.

17. I understand that it will be suggested to the Court, that the obvious flaws in the settlement agreement, such as the imprecise class definition, can be dealt with by the Court, after the settlement is approved. But that approach will require the Court to decide tens of thousands of disputed claims between Suppliers and the petroleum products retail marketers.

18. This Court should not to approve a settlement that is so intrinsically flawed that it remains unknown whether Suppliers or the petroleum products retail marketers will be entitled to receive damages.

19. I declare under penalty of perjury that the above, under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on November 6, 2019.

                                                                      *s/ Jack W. Kidd*
                                                                      Jack W. Kidd

Respectfully submitted,

| /s/ Paul S. Rothstein | /s/ N. Albert Bacharach, Jr |
|---|---|
| Attorney Paul S. Rothstein | N. Albert Bacharach, Jr. |
| Florida Bar Number: 310123 | Florida Bar Number: 209783 |
| Attorney for Class Members/ | Attorney for Class Members/ |
| Jack Rabbit, LLC & 280 Station LLC | Jack Rabbit, LLC & 280 Station LLC |
| (d/b/a/ Cowboys) | (d/b/a/ Cowboys) |
| Attorney Paul S. Rothstein, P.A. | N. Albert Bacharach, Jr., P.A. |
| 626 N.E. 1st Street | 4128 NW 13th Street |
| Gainesville, FL 32601 | Gainesville, FL 32609-1807 |
| (352) 376-7650 | (352) 378-9859 |
| (352) 374-7133 (Fax) | (352) 338-1858 (Fax) |
| E-Mail: psr@rothsteinforjustice.com | E-Mail: N.A.Bacharach@att.net |