# Robbins Geller Rudman & Dowd LLP

Boca Raton     Melville     San Diego
Chicago     Nashville     San Francisco
Manhattan     Philadelphia     Washington, D.C.

November 21, 2019

<u>VIA ECF</u>

The Honorable Margo K. Brodie
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom 6F
Brooklyn, NY  11201

> Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
> No. 1:05-MD-1720 (MKB)(JO)

Dear Judge Brodie:

Rule 23(b)(3) Class Counsel and Defendants here submit a joint response to the Court's questions following the November 7, 2019 final approval hearing.  In the Court's minute entry following the hearing, the Court ordered the parties to submit a "draft proposed notice to be sent to merchants that previously received a notice of exclusion from the class based on their relationship with a third party which third party settled its claims."  ECF No. 7774.  The Court also ordered the parties to "submit the names of three potential candidates for special master as well as a suggested procedure for the special master to follow."  *Id.*  Finally, the Court required Class Counsel and Defendants to "respond to the argument raised by the Branded Operators that allowing merchants previously excluded to submit claims should impact the opt-out reductions and expense takedowns from the settlement fund."  *Id.*  The below responds to the Court's Order.

## I.  Proposed Draft Notice

First, the parties have prepared a proposed draft notice to be mailed to certain persons or entities originally identified as "Dismissed Plaintiffs" under the Superseding and Amended Definitive Class Settlement Agreement ("Settlement Agreement").  The draft notice is attached  as Exhibit A.  The notice will be sent to all persons and entities included on the 2013 exclusion request of a Dismissed Plaintiff unless class counsel has determined that it clearly had no oil company/branded operator or franchisor/franchisee relationships.  The draft notice explains to its recipients why they are receiving the additional notice, and how, if their claims were not in fact settled, they can make a claim to the settlement fund.

**II.      Special Master Submission and Suggested Procedures**

Second, the Court requested the parties to submit the names of three candidates for Special Master, as well as a suggested procedure for the Special Master to follow.

The following three individuals along with their CVs (*see* Exhibit B) are submitted for the Court's consideration:

Hon. Elizabeth Laporte (Ret.)

Hon. A. Howard Matz (Ret.)

Professor Francis McGovern

The parties expect the Court may want to reach out directly to these individuals and they have been informed the Court may contact them.

The suggested procedures for the Special Master are as follows:

A Special Master shall be appointed to resolve any disputes or matters arising out of or relating to the Settlement Agreement's Plan of Administration and Distribution, including the proper scope of a requested exclusion from the Rule 23(b)(3) Settlement Class and the resolution of claims made to the Net Cash Settlement Fund. Upon such appointment, the Special Master shall have the authority specified in Fed. R. Civ. P. 53(c). A proposed Order appointing a Special Master is attached as Exhibit C.

The following is the proposed procedure regarding the Special Master's work and references the mandatory elements under Fed. R. Civ. P. 53 to be included in any order appointing a Special Master.

1.      Matters arising out of or relating to the Settlement Agreement's Plan of Administration and Distribution and its claims process shall be raised in the first instance with the Class Administrator. The Class Administrator may address the matter or refer it to the Special Master for resolution. If the Class Administrator addresses the matter, any interested party may appeal the Class Administrator's resolution to the Special Master. That party shall provide the Special Master with an application describing the nature of the dispute, a suggested resolution, and basis for that resolution. Any party that wishes to respond to the application shall have fifteen business days to submit its opposition papers to the Special Master. The party making the application shall thereafter have five business days to submit reply papers to the Special Master. Reasonable adjustments to the briefing schedule for a dispute may be made by the Special Master.

All submissions to the Special Master shall be served on any interested party and Rule 23(b)(3) Class Counsel, who shall promptly provide such submissions to counsel for the defendants.

2.      Unless otherwise directed by the Court, the Special Master's report and recommendation on each matter, and all evidence considered by the Special Master in making or recommending any findings of fact, shall be filed on the Court's 05-md-01720 docket and served on any affected parties no later than 30 days after the reply papers have been received by the Special Master.  Any interested party shall have 21 days, following the filing and service, to file objections to the Special Master's report and recommendation with the Court; any responses to objections may be filed within 21 business days thereafter.  No replies regarding objections shall be permitted unless they are authorized by the Court.  The Court shall review the Special Master's reports and recommendations de novo, and that review shall be on the record before the Special Master.

3.      The Special Master is permitted to have ex parte contact with the Court.  Further, the Special Master is permitted to have ex parte contact with parties involved in any dispute (including Class Counsel), if the parties to the dispute approve those ex parte contacts.  Such ex parte communications shall not be deemed to waive any attorney-client or other privileges.  The Court shall also direct the Special Master to proceed with all reasonable diligence.

4.      The Special Master must preserve all materials considered in making its determinations and upon completion of a ruling by the Special Master, the Special Master shall file the materials with the Court.  These materials include: (a) formal written reports or recommendations regarding any matter; and (b) a record of the evidence considered by the Special Master in making or recommending findings of fact.

5.      The Special Master is to be paid his or her reasonable hourly rate and reimbursed for reasonable expenses.  The Special Master shall periodically submit to the Court for approval normal billing records of time spent and expenses, with reasonably detailed descriptions of activities and matters worked on.  The Special Master's fees and expenses in connection with resolving disputes shall be paid out of the Class Settlement Cash Escrow Account.  The Special Master's appointment shall be for a period of two years, with the option of renewal.

## III.    How/Whether Dismissed Plaintiffs Affect the Settlement

Third, if any Valero branded operators or other "Dismissed Plaintiffs" can show that their claims were settled without authority, this will not alter any of the fundamentals of the Settlement Agreement.  The Settlement Agreement secures a very significant fund for pro rata distribution to members of the Class comprising millions of merchants.  Further, there should be no effect on the takedown calculation.

As an initial matter, the class includes all persons who accepted Visa- or Mastercard-Branded Cards within the class period. *See* Settlement Agreement, ¶ 4. All such persons, unless expressly excluded from the class or dismissed from the case, are entitled to submit claims. The notice sent to the class makes this clear, stating that "All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019" (Notice of Class Action Settlement at 6) are class members (subject to express exclusions set forth there and in the settlement agreement) and, under the heading "How much money will I get," the "amount paid from the settlement fund will be based on your actual or estimated interchange fees attributable to Visa and Mastercard card transactions (between you and your customers)." *Id.* at 7. The Plan of Administration and Distribution further makes clear that allocation of the settlement fund will be by "Interchange Fee amounts attributable to their Visa- and Mastercard-Branded Card transactions during the Class Period." *See* Settlement Agreement, Appendix I-2.

While it is unclear exactly how many persons or entities (if any) will fall into the category of Dismissed Plaintiffs whose claims were settled without their authorization, our data suggests that they would constitute a tiny percentage of the class and thus have no effect on the takedown payments. Also, as explained further below, because this settlement is a fixed fund, none of the class members has a set expectation of a precise recovery amount. The precise amount any individual class member will recover depends on several factors including, most importantly, the claims rate.

Claims by persons or entities purportedly excluded from the Rule 23(b)(3) Settlement Class without authorization should not affect the size of the takedown. Paragraph 22 of the Settlement Agreement establishes the "takedown" formula based on Visa and Mastercard sales volume. Per that formula, defendants would receive the $700 million maximum takedown as long as the "Total Opt Out Percentage" is 24.42% or greater. Defendants calculated a Total Opt Out Percentage of 28.55%. Looking at the Valero 2013 exclusion request discussed at the November 7, 2019 hearing, even if *all* of the sales volume covered by Valero's exclusion request were *included* in the current settlement class, the Total Opt Out Percentage would fall only to 28.44%, and well short of having any impact on the $700 million takedown payments, because Valero represents less than 0.4% of class-wide sales volume.

Moreover, beyond Valero, even if (hypothetically) the sales of a large portion of all the other Dismissed Plaintiffs also were treated as class sales rather than Dismissed Plaintiff sales, the Total Opt Out Percentage would still exceed 24.42%. Including the sales of *all* the Dismissed Plaintiffs as class sales would reduce the Total Opt Out Percentage to approximately 23.9%. However, this outcome is not realistic because the Dismissed Plaintiffs include large retailers with high sales volumes – such as Walgreens, Safeway, Google, Hewlett-Packard, CVS, Delta Air Lines

and many others – who had claims of their own that they undisputedly settled.  Further, pursuant to the terms of the Settlement Agreement, in the event of any appeal concerning or relating to the takedown payments, which results in an order requiring the takedown payments to be modified, defendants are required to refund appropriate amounts to the Class Settlement Cash Escrow Account.  *See* Settlement Agreement, ¶ 21.

Furthermore, the compensation negotiated in the Settlement Agreement was based on the **total universe** of Visa and Mastercard transactions and, accordingly, the total amount of interchange reimbursement fees paid in the United States during the relevant period.  *See* 11/07/2019 Final Approval Hearing Tr. at 88.  Thus, even if a class member was misidentified as a Dismissed Plaintiff, its potential claims were still accounted for in the overall settlement fund.

The Plan of Allocation also makes clear that recovery by class members will be pro rata, based in part on the claimant's relative share of the total allowed claims, as is common.  Thus, every additional allowed claim by a class member (whether a class member that is not a Dismissed Plaintiff or one that was misidentified as a Dismissed Plaintiff) to some extent "dilutes" the claim of all others.  However, that is a normal function of the pro rata character of claim allocation among class members in a fixed fund settlement.[1]

Finally, a dispute about ownership of claims has arisen with respect to oil suppliers and branded operators.  This does not establish a conflict between any set of class members.  All class members have the right to claim against the settlement fund.  To the extent that any two claimants each claim a right to payment on the same transaction – and it has not been shown that any such overlapping claims will in fact exist – entitlement to the claim can be resolved by the Class Administrator in the first instance, and then the Special Master as necessary.  If an entity is paid class settlement funds based on transaction volume another entity has purported to settle in an individual lawsuit, it is the defendants alone who bear that risk under the Settlement's takedown provisions.

As for any potential effect on the settlement fund of unauthorized opt outs, the same analysis described above applies.  A class member that was purportedly opted out by another without authorization was always and remains a class member, and any "dilution" from such a claimant is no different than the "dilution" that necessarily occurs when a given number of

---

[1]     Because the exact allocation of the settlement funds among class members is to be determined during the claims process, it would be highly burdensome and inefficient to attempt to address fully in advance each dispute that might arise with respect to a particular class member's claim to settlement funds.  That sort of process is common as part of the allocation process in class settlements.

claimants claim from a static fund. It also bears noting, again, that we expect that there would be no effect on the takedown, given that the Total Opt Out Percentage of 28.55% exceeds by 4% the Total Opt Out Percentage at which the takedown is capped at $700 million.

Out of an abundance of caution, to avoid any issue relating to the takedown, the parties propose that the final approval order be revised to provide that if the claims process results in any determinations that would reduce the calculation of the takedown payments below $700 million, defendants would be required to pay any amounts that would need to be refunded from the takedown payments. The provision would parallel the language in paragraph 21 of the Settlement Agreement relating to revisions to the takedown based on appeals.

Respectfully submitted,

| */s/ K. Craig Wildfang* | */s/ H. Laddie Montague, Jr.* | */s/ Patrick J. Coughlin* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Alexandra S. Bernay |
| **Robins Kaplan LLP** | **Berger Montague PC** | **Robbins Geller Rudman** |
| | | **& Dowd LLP** |

Attachments

cc:     Counsel of Record via ECF