UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB) (JO)

This document refers to: ALL ACTIONS

------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 7, 2019, a group of objectors previously identified in this multi-district

litigation (the "MDL") as Retailer and Merchant Objectors ("R&M Objectors") filed a motion

to be compensated for attorneys' fees, expenses, and service awards for their role in objecting

to the previously approved settlement agreement (the "2013 Settlement Agreement") that was

later set aside by the Second Circuit. (R&M Mot. for Attys' Fees, Expenses, and Service

Awards ("R&M Mot."), Docket Entry No. 7474; R&M Mem. in Supp. of R&M Mot. ("R&M

Mem."), Docket Entry No. 7474-1.) The Rule 23(b)(3) Class Plaintiffs ("Plaintiffs") opposed

the motion. (Pls. Opp'n to R&M Mot. ("Pls. Opp'n"), Docket Entry No. 7635.)

On July 24, 2019, the Court referred the motion to Magistrate Judge James Orenstein

for a report and recommendation. (Order dated July 24, 2019.) On September 5, 2019, Judge

Orenstein heard oral argument on the motion. (Min. Order dated Sept. 5, 2019, Docket Entry

No. 7678; Sept. 5, 2019 Hr'g Tr. ("Sept. 2019 Tr."), Docket Entry No. 7683.) By report and

recommendation dated October 11, 2019 (the "R&R"), Judge Orenstein recommended that

the Court deny the motion. (R&R, Docket Entry No. 7734.) R&M Objectors timely objected

to the R&R, and Plaintiffs responded to the objections. (R&M Obj. to the R&R ("R&M

Obj."), Docket Entry No. 7744; Pls. Opp'n to R&M Obj. ("Opp'n to Obj."), Docket Entry No. 7754.)

On December 13, 2019, the Court granted final approval of a Rule 23(b)(3) class settlement agreement (the "Superseding Settlement Agreement"). (Final Approval Order, Docket Entry No. 7818.) By Memorandum and Order dated December 16, 2019 (the "Attorneys' Fees Order"), the Court granted attorneys' fees and expenses to Rule 23(b)(3) Plaintiffs' Class Counsel ("Class Counsel"). (Attys' Fees Order, Docket Entry No. 7822.) In the Attorneys' Fees Order, the Court also adopted the R&R in its entirety and denied R&M Objectors' motion for attorneys' fees, expenses, and services awards, noting that it would set forth its reasons for doing so in a separate opinion. (Attys' Fees Order 17 n.10.)

The Court explains its reasons for adopting the R&R in its entirety and denying R&M Objectors' motion.

## I. Background

R&M Objectors consist of "restaurants, clothing stores, gas stations, and all manner of small to mid-sized businesses" located in thirteen different states. (R&M Mem. 1.) The Court assumes familiarity with the facts and extensive procedural history of the MDL, as set forth in prior decisions.[1] The Court therefore provides only a summary of the relevant facts and procedural history.

---

[1] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 213, 223 (E.D.N.Y. 2013) ("*Interchange Fees I*"), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange Fees II*"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) ("*Interchange Fees III*"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437 (E.D.N.Y. Jan. 10, 2014); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019).

### a. R&M Objectors' objections to the 2013 Settlement Agreement

#### i. Objections before the district court

On October 18, 2012, R&M Objectors submitted objections to the then-proposed settlement agreement (the "2012 Proposed Settlement Agreement"). (R&M Obj. to 2012 Proposed Settlement Agreement, Docket Entry No. 1653; 2012 Proposed Settlement Agreement, Docket Entry No. 1588-1.) R&M Objectors articulated "four primary reasons" for objecting: (1) the "monetary fund and proposed refund [was] inadequate for the class"; (2) the "injunctive relief [was] inadequate for the class"; (3) the "release [was] excessive and overbroad"; and (4) the "proposed attorney[s'] fees award [was] excessive." (R&M Obj. to 2012 Proposed Settlement Agreement ¶ 40.) They argued that the proposed relief was insufficient given the broad release of claims against Defendants, (*id.* ¶ 49), and that, "[a]t a minimum, <u>all</u> unlawful fees should be refunded as restitution to the class," (*id.* ¶ 53), and the injunctive relief period should be "extended for five years into the future to allow the marketplace to regulate this behavior," (*id.* ¶ 54). Finally, R&M Objectors requested that former District Judge John Gleeson hold a hearing on the preliminary approval motion then before the court. (*Id.* ¶ 56.) By letter dated October 22, 2012, R&M Objectors "suggest[ed] that the [c]ourt organize a Proposed Objectors' Committee to allow for a pooling of resources to examine, analyze and, if necessary, report on the viability of any proposed objections." (Letter dated Oct. 22, 2012, Docket Entry No. 1657.)

By Order dated October 24, 2012 (the "October 2012 Order"), Judge Gleeson invited all parties opposing preliminary approval to submit their written objections by October 31, 2012, and scheduled oral argument on the preliminary approval motion, despite not

"[o]rdinarily" doing so, noting that "it seem[ed] clear that there [was] an expectation among some interested parties that the preliminary approval process should be more involved in this case than in the usual class action." (Oct. 2012 Order 2, Docket Entry No. 1668.) Judge Gleeson denied R&M Objectors' request that the court form an Objectors' Committee and grant it access to certain discovery. (*Id.*)

On November 5, 2012, R&M Objectors submitted a memorandum in opposition to preliminary approval, arguing that (1) the release was overbroad, particularly given the short period of injunctive relief and limited money damages relief, (R&M Opp'n to Prelim. Approval of 2012 Proposed Settlement Agreement 6, Docket Entry No. 1703); (2) the proposed monetary and injunctive relief was "illusory and facially inadequate," in part because not all members of the (b)(2) class would benefit from the surcharge provision, (*id.* at 6–7); and (3) the 2012 Proposed Settlement Agreement "[did] not change the marketplace as is," and ultimately would "leave[] the broken, anti-competitive system in place," (*id.* at 7).

On November 9, 2012, Judge Gleeson held oral argument on the motion for preliminary approval and granted the motion. (2012 Prelim. Approval Hr'g Tr. 61:7–8, annexed to R&M Mot. as Ex. 9, Docket Entry No. 7474-9.) Counsel for R&M Objectors were present at the hearing. (R&M Mem. 3.)

On May 15, 2013, R&M Objectors filed their objections to final approval of the 2012 Proposed Settlement Agreement, arguing that (1) the release of future damages claims by the mandatory Rule 23(b)(2) class was impermissible under Supreme Court precedent, (R&M Obj. to Final Approval of 2012 Proposed Settlement Agreement 8–11, Docket Entry No. 2281); (2) the release of future claims by the Rule 23(b)(3) class, with no "legitimate

4

opportunity to opt out," was "[i]nappropriate" and unconstitutional, (*id.* at 11–20); (3) the 2012 Proposed Settlement Agreement did not comply with the "identical factual predicate" rule governing releases in class actions, (*id.* 20–22); (4) the notice to the class was insufficient to inform even "the most legally astute Class Member," and did "not provide a legitimate opportunity to [opt out] to protect individual claims against the Defendants for their future conduct," (*id.* at 22–24); and (5) the surcharge element of the proposed relief would not benefit all members of the class, given differences in state law as well as practical barriers, and thus would not constitute uniform class relief as required, (*id.* at 24–27).

On September 12, 2013, Judge Gleeson held a fairness hearing to hear arguments as to final approval, (2013 Final Approval Hr'g Tr., Docket Entry No. 6094), at which R&M Objectors raised the two issues they believed to be "the most significant impediments to approval" — the "confounding notice" and the "worthless surcharge." (R&M Mem. 5, 8.) Counsel for R&M Objectors informed the court that:

> The main concern that [their] clients [had] is understanding and interpreting the notice and the language and the brea[d]th, as it describes the brea[d]th of the release. . . .
>
> No matter . . . what the settlement payments are, the settlement awards and the recovery in the settlement, no matter how great they are it's not worth releasing future claims on MasterCard and Visa. But the problem was in the notice. [They] can opt out but [they're] still in. [They're] stuck with the broad release of the (b)(2) settlement no matter what [they] do.
>
> So unless the court strikes down the broad release in the (b)(2) settlement, there's really no opt out in the (b)(3) . . . class.

(2013 Final Approval Hr'g Tr. 173:9–11, 174:5–15.) Counsel added that "the amount of damages that might be awarded under the (b)(3) class was not even an issue to our clients

because of their struggle with understanding what the release was," (*id.* at 173:12–15), and noted that "if the [c]ourt strikes down the broad release in both the (b)(2) and the (b)(3) Class, then we may want to . . . participate in the damages," (*id.* at 176:3–5). Counsel also argued that the "notice misrepresent[ed]" the surcharge provision because it did not explain that "if [class members] accept American Express, or they live in one of the states that have barred or prohibited surcharges, they can't surcharge." (*Id.* at 176:10–15.)

On December 13, 2013, Judge Gleeson granted the final approval motion, *Interchange Fees I*, 986 F. Supp. 2d 207; that decision was subsequently appealed to the Second Circuit, *see Interchange Fees II*, 827 F.3d 223.

### ii. Objections on appeal

On appeal, R&M Objectors "wholeheartedly join[ed] in the [b]rief[s]" filed by other objectors- and plaintiffs-appellants — specifically, the Joint Merchant Appellants, the Retail Industry Leaders Association, and the National Retail Federation — but "wr[o]te separately . . . to emphasize the inadequacy of the Notice . . . and to highlight the due process shortcomings of a Settlement featuring benefits that were falsely represented in the Notice to Class Members and are of ***no value*** to many of them." (R&M App. Br. 3–4, annexed to R&M Mot. as Ex. 16, Docket Entry No. 7474-16.) R&M Objectors argued that the Notice failed to (1) "provide absent Class Members with their constitutional right to [opt out] of classes involving monetary damages," (2) "adequately describe the breadth of applicable releases," and (3) "accurately inform Class Members of what the Settlement achieve[d]." (*Id.* at 4.) R&M Objectors reiterated that to them, the "release of futures claims [was] by far the most significant feature of this deal." (*Id.* at 5.) In addition, R&M Objectors argued that

because many merchants would not benefit from the surcharge provision of the 2013 Settlement Agreement, "the (b)(2) class lack[ed] the cohesion required by Rule 23."[2]  (*Id.* at 32.)

### b.   Second Circuit's decision

In June of 2016, the Second Circuit vacated the certification of the class, reversed the approval of the settlement, and remanded the case to the district court. *See Interchange Fees II*, 827 F.3d at 240.

In setting aside the 2013 Settlement Agreement, the Second Circuit first held that "[s]tructural defects . . . created a fundamental conflict between the (b)(3) and (b)(2) classes and sapped class counsel of the incentive to zealously represent the latter," *id.* at 236, rendering "unitary representation of these plaintiffs . . . inadequate," *id.* at 233.  The Court of Appeals found a clear conflict between the members of the (b)(3) class, pursuing monetary relief, and members of the (b)(2) class, seeking only injunctive relief — "[t]he former would want to maximize cash compensation for past harm, and the latter would want to maximize restraints on network rules to prevent harm in the future." *Id.* at 233.  Meanwhile, attorneys' fees for class counsel — who, the court observed, had strong incentives to reach a settlement — were linked to relief for the (b)(3) class only, and not to relief for the (b)(2) class. *Id.* at 234.  The Second Circuit noted that the "trouble with unitary representation . . . [was] exacerbated because the members of the worse-off (b)(2) class could not opt out." *Id.*

---

[2]  As noted above, R&M Objectors joined "wholeheartedly" in the brief filed by the Joint Merchant Appellants, which contained extensive arguments that the (b)(2) class lacked cohesion, which they argued was "best illustrated by" the surcharge provision.  (Joint Br. for Merchant Appellants, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 12-4671, 2014 WL 2794832, at \*48–66 (2d Cir. June 16, 2014).)

Second, the Court of Appeals found that "[m]erchants in the (b)(2) class that accept[ed] American Express or operate[d] in states that prohibit surcharging" and those "that [would] begin business after July 20, 2021 . . . were denied due process," because, in exchange for little or no benefit, they had been "forced [to] . . . release virtually any claims they would ever have against the [D]efendants." *Id.* at 238. Other merchants, in contrast, stood to "derive a potentially substantial benefit" from what everyone agreed was "the most valuable relief" for the (b)(2) class in the 2013 Settlement Agreement. *Id.* The Second Circuit found there was "no basis for this unequal intra-class treatment." *Id.* Those same merchants who did not stand to benefit from the surcharge provision were "also bound to an exceptionally broad release," *id.* at 239, and "had no notice and no opportunity to opt out of this deal," *id.* at 240.

### c. Superseding Settlement Agreement

Following remand, two putative classes — the Rule 23(b)(2) injunctive class and the Rule 23(b)(3) damages class — have proceeded separately, and are each represented by separate counsel. (*See* Mem. and Order dated Nov. 30, 2016 ("Interim Class Counsel Order"), Docket Entry No. 6754.) After additional extensive discovery and renegotiations, the named representatives of the damages class and Defendants reached a new and separate settlement agreement, which the Court finally approved on December 13, 2019. (Final Approval Order.) Members of the (b)(2) class are not party to the Superseding Settlement Agreement.

R&M Objectors do not claim to have had any involvement in the litigation, including discovery or settlement negotiations, following the Second Circuit's decision.

## II. Report and recommendation

Judge Orenstein recommended that the Court deny R&M Objectors' motion in its entirety. (R&R.)

### a. Attorneys' fees

Judge Orenstein recommended that the Court deny the motion for attorneys' fees because "R&M Objectors have not demonstrated that they are a substantial cause of material benefit to the (b)(3) Class resulting from the proposed settlement agreement."[3] (R&R 3.)

#### i. Focus of the objections

First, Judge Orenstein found that "R&M Objectors' arguments opposing the earlier settlement sought primarily to vindicate the interests of the (b)(2) Class," which "efforts did nothing to advance the interests of the (b)(3) Class members whose claims the [Superseding Settlement Agreement] would resolve."[4] (*Id.* at 4.) He noted that, in reversing the 2013 Settlement Agreement, the Second Circuit found that counsel had "labored under an inherent conflict of interest that made it impossible for them to adequately vindicate the rights of all members," and "produced a result that disfavored certain members of the (b)(2) Class." (*Id.* (citing *Interchange II*, 827 F.3d at 231).) The Second Circuit "expressed no such concern

---

[3] Judge Orenstein assumed, for purposes of analyzing the motion, "that the new settlement agreement does produce a more favorable result for (b)(3) Class members than its predecessor," but noted that "the greater dollar amount of the settlement fund does not necessarily translate into a more favorable outcome for (b)(3) Class members." (R&R 6 n.3.)

[4] In analyzing whether R&M Objectors were a substantial cause of the benefit conferred on members of the (b)(3) class by the Superseding Settlement Agreement, Judge Orenstein "assume[d] for the sake of discussion that the R&M Objectors can fairly be deemed responsible for making the arguments that ultimately persuaded the [Second Circuit] to reject the original settlement." (R&R 7.) Ultimately, however, as discussed below, Judge Orenstein found that "the record . . . does not support that proposition." (*Id.*)

about the original settlement's effect on members of the (b)(3) Class — that is, the class that now proposes to settle its claims on revised terms, and the class that R&M Objectors claim to have helped by objecting to the earlier settlement." (*Id.*) Judge Orenstein reasoned that "nothing in the [Second Circuit's] decision suggests that undoing the settlement would help members of the (b)(3) Class" — and, in fact, "the (b)(3) Class may be worse off" as "they no longer enjoy what the [Second Circuit] perceived to be an advantage over the (b)(2) Class members." (*Id.* at 5.)

To the extent R&M Objectors argue that "their efforts opposing the original settlement were the but-for cause of the benefits under the current one," Judge Orenstein concluded that such an argument, even if correct, fails to establish that R&M Objectors substantially caused the benefits conferred by the Superseding Settlement Agreement. (*Id.* at 5–6 (citing *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157 (2d Cir. 2005)).)

Finally, Judge Orenstein found that "attributing the new settlement to the R&M Objectors' efforts to oppose the earlier one ignores the history of this litigation." (*Id.* at 6.) Noting that R&M Objectors' argument would be more convincing had the parties reached a new settlement agreement soon after the prior settlement was remanded by the Second Circuit, Judge Orenstein noted that instead, the parties then "spent years . . . engaged in extensive discovery," and "[o]nly with that supplemental discovery largely completed did the (b)(3) Class and the [D]efendants hammer out a new agreement." (*Id.*) Even if R&M Objectors "may have played some role in causing the parties to have to engage in further discovery," Judge Orenstein found that it would "blink reality" to find R&M Objectors were the "substantial cause of the benefits under that new agreement." (*Id.* at 6–7.)

### ii. Cumulative nature of the objections

Second, Judge Orenstein found that "R&M Objectors' arguments were cumulative," and thus "even if they were not inapposite to the current proposed settlement," he could not "conclude that they made any difference to the result in the circuit court or the later agreement to settle the claims of the (b)(3) Class." (*Id.* at 4.)

In reaching this conclusion Judge Orenstein noted that R&M Objectors' "initial objections were largely unrelated to the ones that ultimately prevailed on appeal — and it was others who framed the successful arguments that the R&M Objectors joined." (*Id.* at 7.) Although R&M Objectors did eventually submit arguments to the Court grounded in the "ultimately persuasive theory of inadequate representation," Judge Orenstein concluded that those arguments "merely amplified [those] . . . previously made by others." (*Id.* at 8.) Judge Orenstein reached similar conclusions as to R&M Objectors' arguments to the Second Circuit. (*Id.*)

Judge Orenstein rejected the argument that R&M Objectors "deserve credit for the arguments made in the first instance on appeal by their fellow objectors because the objectors worked cooperatively to coordinate the various arguments to be presented." (*Id.* at 9.) Even if R&M Objectors "were part of a group effort that generated a variety of arguments, some of which others used to persuade" the Second Circuit, Judge Orenstein concluded that such a claim "does not establish that the R&M Objectors were a substantial cause of those arguments being made or being made persuasively." (*Id.*)

Finally, Judge Orenstein again noted that objectors seeking attorneys' fees must show "substantial causation," which is a more demanding standard than mere but-for causation.

(*Id.* at 9 n.5.)  Nevertheless, he found that "R&M Objectors cannot satisfy even that more relaxed standard," because "had they never objected to the original settlement, it seems likely that the result on appeal would have been the same."  (*Id.*)

### b.  Service awards

Judge Orenstein also recommended that the Court deny R&M Objector's request for service awards because "[R&M] [O]bjectors themselves did not incur any risk" or "provide any service that sets them apart."  (*Id.* at 11.)  Judge Orenstein noted that R&M Objectors' "assert[ion] that they assumed a risk by challenging the original settlement on a contingency basis . . . misperceives the purpose of a service award," which "recognizes the litigant's risk and service, not that of the litigant's counsel."  (*Id.*)

## III. Discussion

### a.  Standard of review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections.  *Benitez v. Parmer*, 654 F. App'x 502, 503–04

(2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain de novo review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### b. Objections to the R&R

R&M Objectors object to Judge Orenstein's findings that the arguments they made to the district court objecting to the 2012 Proposed Settlement Agreement were "largely unrelated to the ones that ultimately prevailed on appeal," and that, on appeal, they "merely joined in the challenges to the settlement that ultimately prevailed, rather than making them on their own in the first instance." (R&M Obj. 4 (quoting R&R 7–8).) R&M Objectors argue that the "record shows a *joint* effort, not just the mere 'me too' statement of a nominal participant in the circuit court briefing," and that "this analysis . . . produces a harsh result for counsel who participates as part of a team." (R&M Obj. 4.) R&M Objectors argue that their "cooperation [with co-counsel] to make a single, coordinated effort . . . produced" the Second Circuit's decision, (*id.* at 5), and that "there is very little support for the deconstruction" of the appellate briefs "down to the level of individual point headings and only giving credit for those that matched that court's final ruling," (*id.* at 4).

R&M Objectors also argue that the Second Circuit's decision was driven by the "damage done to *both* the (b)(2) and (b)(3) Classes," and object to the R&R's "dissect[ion]"

of their "efforts," arguing that it improperly "extricat[es] only those [efforts] which it believes failed." (*Id.* at 6.) They further argue that their "provision-opt out and due process argument, while based in the (b)(2) Class, was bound together by an inadequate monetary award to the (b)(3) Class," and that "[t]his conflict was part of the reason" the Second Circuit set aside the 2013 Settlement Agreement. (*Id.* at 10.) In addition, R&M Objectors argue that, "[i]n deciding" that they "only advocated on behalf of the (b)(2) Class," Judge Orenstein "failed to recognize R&M Objectors retaining experts on behalf of their clients," and using one of those expert's findings to support their argument for "higher payment" for the (b)(3) class. (*Id.* at 11–12.) R&M Objectors further argue that the "inadequate notice provisions of the original settlement violated the rights of *all* absent class members," in both the (b)(2) and (b)(3) classes, and R&M Objectors should get credit for "precisely and uniquely address[ing] this point with their own creative objection." (*Id.* at 12.)

R&M Objectors further object to Judge Orenstein's finding that R&M Objectors did not assume any risk in objecting to the settlement, arguing that under this analysis, only well-resourced objectors who can afford to retain counsel at an hourly rate and absorb the costs, regardless of whether they win, will be entitled to service awards. (*Id.* at 8.) They argue that contingency fee agreements do not "eliminate risk, but shift[] it in return for an enhanced fee should counsel be successful." (*Id.* at 8–9.)

### c. Attorneys' fees

R&M Objectors argue that they are entitled to attorneys' fees because they "were a substantial cause of the [Second Circuit's] eventual disapproval of the . . . Original Settlement," and "played a key role in the creation of the new and improved settlement

benefits."[5]  (R&M Mem. 9, 10.)  Plaintiffs argue that R&M Objectors "were not a 'substantial cause' in reaching either the current settlement or vacating the prior settlement," and that "[a]ny award of attorneys' fees to R&M Objectors' lawyers is unwarranted."  (Pls. Opp'n 2.) The Court denied R&M Objectors' motion for attorneys' fees because, as explained below, R&M Objectors were not a substantial cause of the increased benefit conferred by the Superseding Settlement Agreement.

The Second Circuit "has recognized the 'valuable and important role' of objectors, holding that objectors are 'entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts.'"  *In re Petrobras Sec. Litig.*, --- F. App'x. ---, ---, 2019 WL 4197114, at *1 (2d Cir. Sept. 5, 2019) (quoting *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974)); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 132 (S.D.N.Y. 2009) ("Objectors have a valuable and important role to perform in policing class action settlements." (alteration omitted) (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-CV-6689, 2003 WL 22801724, at *1 (S.D.N.Y. Nov. 24, 2003))).  In order to recover attorneys' fees, a party's "actions . . . must[] be 'a substantial cause of the benefit obtained.'" *In re Holocaust Victim Assets Litig.*, 424 F.3d at 156–57 (quoting *Savoie v. Merchs. Bank*, 84 F.3d 52, 56 (2d Cir. 1996)).   "In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement they are not entitled to fees."  *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. at 132 (alteration omitted) (quoting

---

[5] The Court assumes, for the purpose of this Memorandum and Order, that the Superseding Settlement Agreement does in fact confer an increased benefit on the (b)(3) class, as compared to the 2013 Settlement Agreement.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002)).

The district court "has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since . . . [the district court] is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *In re Petrobras Sec. Litig.*, 2019 WL 4197114, at *1 (quoting *White*, 500 F.2d at 828); *see also In re Holocaust Victim Assets Litig.*, 424 F.3d at 157 ("The district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." (alterations omitted) (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992))).

### i. R&M Objectors were not a substantial cause of the Second Circuit's decision to overturn the 2013 Settlement Agreement

In support of their request for attorneys' fees, R&M Objectors focus on their role in objecting to the 2013 Settlement Agreement, first in the district court and then on appeal. They point to their early involvement, starting in October of 2012, claiming that "when they posited the first objection to the Original Settlement by an absent Class Member, the R&M Objectors generally alerted the Court to the most grievous attributes of the agreement." (R&M Mem. 6.) They further argue that the Second Circuit ultimately "took heed" of the two arguments that they "stressed" at the final approval hearing and "made the centerpiece of their appellate briefs," regarding what they viewed as inadequate notice and issues with the surcharge provision of the injunctive relief. (*Id.* at 8.) According to R&M Objectors, in setting aside the 2013 Settlement Agreement, the Second Circuit relied "on largely the same grounds championed by the R&M Objectors since [d]ay [o]ne." (*Id.* at 9.)

After reviewing R&M Objectors' arguments, both in the district court and on appeal,

the Court is not persuaded that R&M Objectors were a substantial cause of the Second Circuit's decision to set aside the 2013 Settlement Agreement.

While R&M Objectors objected early and consistently, their initial objections did not raise any concerns about the adequacy of class counsel's inherently conflicted representation or the problems with the surcharge benefit. (*See* R&M Obj. to 2012 Proposed Settlement Agreement ¶ 40 (objecting to the proposed settlement because "the monetary fund and proposed refund [was] inadequate for the class"; (2) the "injunctive relief [was] inadequate for the class"; (3) the "release [was] excessive and overbroad"; and (4) the "proposed attorney[s'] fees award [was] excessive").)

R&M Objectors did eventually make the argument, starting at the preliminary approval stage, that the surcharge provision of the injunctive relief would not benefit all class members, (*see* R&M Opp'n to Prelim. Approval of 2012 Proposed Settlement Agreement 6–7; R&M Obj. to Final Approval of 2012 Proposed Settlement Agreement 24–27; R&M App. Br. 28–42) — an argument that the Second Circuit ultimately found persuasive. However, they were not the first to make this argument, (*see, e.g.*, Letter filed Oct. 9, 2012 by Florida Retail Federation 1, Docket Entry No. 1635 (noting that the "much-touted provision that would allow vendors to surcharge is meaningless in Florida, where credit card surcharging is unlawful"), and, in later rounds of briefing, largely echoed the more comprehensive arguments of other parties' briefs, in which R&M Objectors joined, (*see, e.g.*, Joint Br. for Merchant Appellants, 2014 WL 2794832, at *48–66.)

Although R&M Objectors did argue, at the final approval stage, that there were conflicts between the remaining class representatives and class counsel, and the objecting

class representatives and other absent class members,[6] they never argued that class counsel's unitary representation of the (b)(2) and (b)(3) class was improper, as the Second Circuit ultimately found.

The Court finds that R&M Objectors were not a substantial cause of the Second Circuit's decision. However, even if they were, such a finding, without more, would not warrant granting attorneys' fees. Even assuming that R&M Objectors were a substantial cause of the Second Circuit's decision, as discussed below, they still cannot establish that they substantially caused the benefits conferred by the Superseding Settlement Agreement.

### ii. R&M Objectors were not a substantial cause of the benefits conferred by the Superseding Settlement Agreement

R&M Objectors argue that they "played a key role in the creation of the new and improved settlement benefits," and that the "new, improved Superseding Settlement incorporates virtually every ground raised by the R&M Objectors when challenging the Original Settlement." (R&M Mem. 10, 13.) In addition, they argue that the "increased [monetary] value" of the Superseding Settlement Agreement "would never have been available had the R&M Objectors not objected to the . . . Original Settlement." (*Id.* at 13.) Plaintiffs argue, *inter alia*, that R&M Objectors "do not, and cannot, link any of their particular objections, or litigation efforts, at final approval or on appeal to the $900 million increase in the Superseding Settlement," and that R&M Objectors' attempt to link their

---

[6] (*See* R&M Obj. to Final Approval of 2012 Proposed Settlement Agreement 18 (arguing that there "are at least three conflicts present in this class settlement": (1) the "large segment of class representatives who have withdrawn"; (2) the "future claims of unknown entities" that are released and the inadequacy of "present class representatives . . . releas[ing] these claims for future entities"; and (3) the lack of "legitimate opportunity [for absent class members] to [opt out] of the settlement class").)

objections to various aspects of the Superseding Settlement Agreement are misguided or unfounded. (Pls. Opp'n 7–12.) The Court finds that R&M Objectors were not a substantial cause of any increased benefits conferred by the Superseding Settlement Agreement.

As discussed above, following the Second Circuit's decision in 2016, Class Counsel engaged in extensive discovery and renegotiations with Defendants, and, after several years, were able to reach a settlement for the Rule 23(b)(3) damages class, which the Court finally approved on December 13, 2019. R&M Objectors do not claim to have had any direct role in this process. R&M Objectors appear to argue that they were a substantial cause of the increased value of the settlement fund because, but for their objections to the 2013 Settlement Agreement, there would be no Superseding Settlement Agreement. (*See* Sept. 5, 2019 Tr. 8:2–5 (counsel for R&M Objectors arguing that "[t]he essence here is that had we not become involved in this case, the Court and all the litigants would be saddled with a settlement agreement that violated fundamental due process.").) Given the extensive objections to the settlement,[7] the Court is not convinced that, in the absence of R&M Objectors, the outcome

---

[7] The Court notes that from the time it was initially proposed in the summer of 2012 until the Second Circuit's decision four years later in June of 2016, there was substantial opposition to the 2013 Settlement Agreement, and there was significant overlap between various parties' objections. In addition to being consistent objectors, R&M Objectors were similarly consistent in pointing out the large and ever-growing number of objections to the settlement. (*See* R&M Obj. to 2012 Proposed Settlement Agreement ¶¶ 46–47 (noting that the "the amount and variety of objection to the class settlement at this point in the process is significant," and that the "proposed class settlement ha[d] not been viewed favorably by many groups, entities and individuals"); R&M Opp'n to Prelim. Approval of 2012 Proposed Settlement Agreement 6 (noting the "large number of objectors, both named plaintiffs and otherwise, who [had] taken issue with the [proposed] Settlement Agreement"); R&M Obj. to Final Approval of 2012 Proposed Settlement Agreement 7 (noting the numerous parties, both class members and objectors, opposing the settlement); R&M App. Br. 5 & n.1 (arguing that the "release of future claims is by far the most significant feature of this deal to the R&M

on appeal would have been any different. But even assuming that were the case, the Court would still not be able to find that R&M Objectors had substantially caused any increased value of the Superseding Settlement Agreement, which the Court instead attributes to the years of additional discovery and renegotiation that followed the Second Circuit's decision, and which R&M Objectors had no involvement in.

The Court also notes that R&M Objectors' primary concerns with the prior settlement, highlighted both at the final approval hearing before Judge Gleeson in 2013 and in their appellate briefing, related to the notice to class members and the surcharge provision, and not to the adequacy of the damages award. In addition, on appeal, the Second Circuit did not take issue with the adequacy of relief for the (b)(3) class — to the contrary, the basis of the court's opinion was that "class counsel and class representatives . . . were in the position to trade diminution of the (b)(2) relief for *increase of (b)(3) relief.*" *Interchange Fees II*, 827 F.3d at 234 (emphasis added). In other words, even to the extent that R&M Objectors' played a role in convincing the Second Circuit to set aside the 2013 Settlement Agreement, such efforts cannot be said to have substantially caused the increased benefits at issue here, i.e., monetary relief to the (b)(3) class.[8]

_____

Objectors," and noting that, "[i]n light of the amount and content of objections to this Settlement, it appears that the same is true for a significant portion, if not a majority, of Class Members").)

[8] Similarly, while R&M Objectors note that the Superseding Settlement Agreement "eliminates any mention of a surcharge," (R&M Mem. 13), in an attempt to argue that the new settlement incorporates their objections, Plaintiffs rightly note that the surcharge provision, a form of injunctive relief, is irrelevant to the Superseding Settlement Agreement, (Pls. Opp'n 8).

For these reasons, the Court denied R&M Objectors' request for attorneys' fees.[9]

### d. Service awards

R&M Objectors argue that "over the past seven years they have shown their commitment to ensure . . . a fair and reasonable settlement," and now "should be recognized for their willingness to stand up for the Class." (R&M Mem. 15.) At oral argument on the motion, counsel for R&M Objectors argued that they "had the ultimate risk" because they "received no monies from [their] clients . . . and did this solely on a contingency basis." (Sept. 5, 2019 Tr. 15:15–18.) Plaintiffs argue that R&M Objectors are not entitled to service awards because, "[o]ther than putting their names on an objection," they "have not participated in this litigation," and note that they "did not sit for depositions, or answer interrogatories, or produce documents, or provide any assistance with the Superseding Settlement Agreement." (Pls. Opp'n 14.) The Court denied R&M Objectors' motion for service awards because, as explained below, R&M Objectors have not demonstrated that they incurred any risk from the litigation or that any other special efforts or circumstances warrant a service award.

"An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001).

---

[9] Because the Court found R&M Objectors are not entitled to attorneys' fees, the Court also declined to grant the request for reimbursement of litigation expenses. *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) ("It is well-settled in this Circuit that 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998))).

Courts in this Circuit have applied the same standard to objectors' requests for service awards as that applied to named plaintiffs' requests for service awards. *See Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 279) (E.D.N.Y. 2009) (citing *Park v. Thompson Corp.*, 633 F. Supp. 2d 8, 14 (S.D.N.Y. 2009)), *aff'd*, 378 F. App'x 63 (2d Cir. 2010)). When "determining . . . incentive award[s]," courts consider:

> the existence of special circumstances including the personal risk (if any) incurred . . . in becoming and continuing as a litigant, the time and effort expended . . . in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained . . . in lending [one's self] to the prosecution of the claim, and of course, the ultimate recovery.

*Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 133 (E.D.N.Y. 2015) (quoting *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997)). "[T]he decision to grant the award, and the amount thereof, rests solely within the discretion of the Court." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (citing *Roberts*, 979 F. Supp. at 200).

The Court finds that R&M Objectors have not established any circumstances to warrant a service award. While the Court does not disagree with counsel's statement to Judge Orenstein at oral argument that, in choosing to take on a group of clients on a contingency basis, counsel assumed a certain amount of risk, that is irrelevant to the inquiry here, which looks at risk assumed by R&M Objectors themselves. In their objections to the R&R, R&M Objectors attempt to reframe the argument, contending that they did themselves take on certain risks associated with contingency fee representation. (R&M Obj. 8–9.) R&M Objectors argue that the "nature of a contingency fee retainer creates a partnership of sorts between the client and counsel, one that doesn't eliminate risk, but shifts it in return for an

enhanced fee should counsel be successful." (*Id.*) The Court is not persuaded that the possibility of a reduced award to objectors in the event that counsel is successful constitutes the type of risk that warrants a service award. Finally, while the Court is sympathetic to the argument that objectors with fewer resources may have no choice but to retain counsel on a contingency fee basis, R&M Objectors have not demonstrated that they made any special efforts in connection with this litigation, beyond having retained counsel, who in turn made arguments on their behalf over the course of several years.

For these reasons, the Court denied R&M Objectors' request for service awards.

## IV. Conclusion

For the foregoing reasons, the Court adopted the R&R in its entirety and denied R&M Objectors' motion for attorneys' fees, expenses, and service awards.

Dated: January 2, 2020
Brooklyn, New York

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge