UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――― X

In re PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

――――――――――――――――――――――――――

This Document Relates To:

    ALL ACTIONS.

――――――――――――――――――――――――――x

: No. 05-md-1720 (MKB)(JO)
:
: JOINT STATUS CONFERENCE STATEMENT
:
: CONFERENCE DATE:  MARCH 11, 2020
:
:
:
:
:
:
:

The parties respectfully submit this Joint Case Status Report for the Case Management Conference currently scheduled for March 11, 2020.

## I.  PENDING MOTIONS

On November 1, 2019, the *Salveson* Plaintiffs filed a motion for relief from final judgment. (Doc. 7762.)  The Defendants served their opposition on December 16, 2019 and filed it with the Court on December 17, 2019 (Doc. 7825), and the *Salveson* Plaintiffs filed a reply brief in support of their motion on January 10, 2020 (Doc. 7852).

## II.  STATUS OF DISCOVERY WITH DIRECT ACTION PLAINTIFFS

The parties continue to work cooperatively on discovery.  Depositions of the Defendants, the Target Plaintiffs, The Home Depot, the 7-Eleven Plaintiffs, and representatives for the Rule 23(b)(2) Plaintiffs are complete.

Several parties are continuing to work with each other concerning questions and issues related to their respective document and data productions.  There are no discovery disputes that are ripe for the Court to address.  The parties reserve their rights to raise data issues that they are unable to resolve, including questions about data that has yet to be produced.

### A. Elgin Avenue Recovery LLC Scheduling

<u>Elgin's position</u>: Elgin has been working diligently with defendants and co-plaintiffs to reach a suitable resolution concerning expert retention and scheduling that would keep the case schedule and deadlines. At the October 11, 2019 scheduling conference, when Elgin originally suggested submitting replacement expert disclosures on its behalf, defendants raised two objections to this type of proposal: (i) that it could result in pushing the case schedule (10/11/19 Hearing Tr. at 25:21-25); and (ii) that defendants would not be able to adequately respond to any supplemental disclosure without knowing "the identity of those experts" or the "subject matter of those experts." (*Id*. at 26:1-10).

In order to alleviate those concerns, on January 7, 2020, Elgin proposed an agreement in which Elgin would serve a damages-only report by Dr. Jeffrey Leitzinger while continuing to rely on its previously-retained experts through summary judgment and trial. Given that Elgin is still a plaintiff in the 7-Eleven case, Elgin believes that a trial with all 7-Eleven Plaintiffs—inclusive of Elgin—in which Elgin would be able to use the work product for which it paid, is fair to all parties and it conserves judicial resources and promotes judicial economy. Elgin provided Dr. Leitzinger' proposed supplemental report to Defendants on January 10, 2020, and informed Defendants that Dr. Leitzinger was available for deposition within the same schedule as the rest of the experts. Under this proposal, Elgin believes that Defendants would not be prejudiced, as (i) the schedule would remain the same; and (ii) defendants would be aware of the precise identity and subject matter of the experts upon which Elgin would rely. Defendants rejected this proposal in full. The other 7-Eleven Plaintiffs have objected to having their case tried together with Elgin.

Elgin has participated in all expert discovery since the October 2019 status conference and is prepared to engage in summary judgment and *Daubert* motions on the current case schedule,

including by submitting any affirmative summary judgment is motion(s). Elgin also is prepared to respond to any motion for summary judgment filed by Defendants using its original expert opinions, as well as the opinion of Dr. Leitzinger. Elgin, therefore, also proposed to Defendants that they agree to stipulate that Elgin may do so, and then the parties may continue to meet and confer regarding any supplemental expert disclosures, if necessary. Defendants rejected this counter-proposal, claiming prejudice but without identifying how they would be prejudiced by such a compromise. Elgin did not agree to Defendants' counter-proposal (outlined below) to participate in the case schedule for the new opt-out plaintiffs because it unfairly prejudices Elgin and Transform. Defendants' proposal unduly delays the resolution of Elgin's claims, which have been litigated for over five years and for which fact discovery has been completed. Elgin and Transform should not be forced to wait for this process to be completed for a wholly new group of plaintiffs.

The parties appear to be at an impasse regarding these discussions. Elgin has invested a lot of time and money in the 7-Eleven Plaintiffs' expert opinions, as well as the expert discovery. Accordingly, Elgin respectfully requests that the Court permit Elgin to serve Dr. Letizinger's expert report, stay with the case schedule through briefing of summary judgment, and order either that Elgin's claims be tried with the other 7-Eleven Plaintiffs such that Elgin may use its prior expert opinions at trial on the merits or, alternatively that, following the conclusion of summary judgment briefing, the parties meet and confer regarding a timeframe for Elgin to serve any replacement expert disclosures and any related expert discovery and *Daubert* motions, to the extent necessary. The remainder of the 7–Eleven Plaintiffs do not object to Elgin's participation in summary judgment, but do object to Elgin's participation in trial. Such proposal does not unduly prejudice Defendants given that Defendants' proposal includes the opportunity for Elgin to submit

3

additional expert reports; the question is merely one of timing. Elgin's proposal to, at a minimum, stay with the current case schedule at least through summary judgment is the only option that leads to the possibility that Defendants may not have to incur any additional expense.

Defendants' position: At the October 11, 2019 scheduling conference requested by Elgin, the Court encouraged defendants to confer with Elgin (as the apparent assignee of Sears' claim in this case) about a case schedule, given that Elgin was no longer part of the 7-Eleven group and, according to its counsel, was "told [it] cannot use [the 7-Eleven group's] experts at all to present any affirmative opinions . . . at trial." Oct. 11 Hrg. Tr. 17:11-17.

Defendants made two proposals that would preserve Elgin's ability to offer expert evidence at trial while minimizing prejudice to defendants. First, in November, defendants proposed that Elgin join the case schedule for the new opt-out plaintiffs (e.g., Grubhub and CenturyLink) for purposes of disclosing experts, as well as for Daubert and summary judgment motions. Elgin did not respond to that proposal. Second, defendants sent Elgin's counsel a proposed stipulation that would allow Elgin to stay on the current 7-Eleven group case schedule and serve a damages report. However, to avoid any prejudice to defendants, it would make clear that Elgin could not disclose any new experts or expert opinions to support its claims at a later point. Elgin would retain the ability to seek to rely upon the 7-Eleven group's experts (if Elgin's claims were tried together with the 7-Eleven group claim), and defendants would retain the right to object to such reliance and to any joint trial involving Elgin. Elgin rejected that proposal.

Elgin apparently wants defendants to give Elgin the unfettered right to rely on the 7-Eleven group's experts if the cases are tried together, and also to substitute unnamed experts at a future point if the cases are not tried together, while remaining on the current summary judgment schedule. That would unfairly prejudice defendants. Defendants are entitled to know what Elgin's

4

evidence is before Defendants file their summary judgment papers as to Elgin. Defendants remain agreeable to either of their proposals outlined above.

7-Eleven Plaintiffs' Position. Neither Elgin nor Transform is a member of the 7-Eleven group of plaintiffs. The 7-Eleven Plaintiffs intend to file an amended complaint shortly that will not include Elgin or Transform. The 7-Eleven Plaintiffs oppose Elgin's request for the Court to order the cases be tried together, and in any event, submit that it is premature for the Court to adjudicate that question. With respect to summary judgment, the 7-Eleven Plaintiffs do not object to Elgin moving or opposing defendants' motion(s) on the current schedule.

## III. EXPERT DEPOSITIONS

Expert depositions related to the Target, 7-Eleven, The Home Depot and Equitable Relief actions are complete.

## IV. NEWLY-FILED OPT-OUT ACTIONS

The parties in the newly-filed opt-out actions have been meeting and conferring on a discovery and case schedule. The parties have agreed to the following dates, and request that the Court so order these dates:

1. On March 19, 2020, (1) plaintiffs will serve (a) their responses to defendants' discovery requests, (b) custodian lists, and (c) their initial discovery requests; and (2) defendants will provide plaintiffs with access to their prior productions in the MDL (although defendants may identify a discrete number of documents that are still going through the third-party notice process). Plaintiffs reserve the right to seek reasonable discovery on any issue, and defendants reserve all rights to object.

2. On April 30, 2020, defendants will respond in writing to plaintiffs' initial discovery requests. Following April 30, 2020, the parties will begin to confer regarding the scope of production (custodians, search terms, and the production time period) that each will use for its/their document collection and productions, and the parties will begin to confer regarding the number and scope of depositions. Defendants reserve all rights (i) to oppose plaintiffs' discovery requests if they seek anything more than documents specific to the plaintiffs from defendants' prior collections; and (ii) to oppose additional fact witness depositions. Defendants further reserve all rights to oppose plaintiffs' discovery requests to the extent they seek documents outside of the relevant time period for discovery currently agreed to by the other

parties in MDL 1720 and to contend that all issues of supplementation for additional time periods should be addressed separately by all parties to MDL 1720.

3. On May 31, 2020, the plaintiffs will produce documents in response to the targeted (i.e., non-custodial) requests for production (defendants having already done so on March 19), and, by May 31, 2020, the parties will either reach agreement regarding the scope of custodial document productions or submit to the Court any issues upon which there is an impasse. Plaintiffs will thereafter make rolling productions of documents.

4. By July 30, 2020, (1) the parties will substantially complete their document productions and will either reach agreement regarding the number and scope of depositions or submit to the court any issues upon which there is an impasse, and (2) defendants will produce all prior fact deposition transcripts and exhibits. Should the date for substantial completion be extended, defendants' obligation to produce prior deposition transcripts and exhibits shall be extended to the same date.

The parties continue to discuss scheduling of the newly-filed opt-out actions beyond these dates, and propose that they bring any agreement or impasse regarding the same to the Court at the next status conference.

### V. RECENT SETTLEMENTS

Defendants wish to update the Court regarding the progress of settlements of opt-out claims. Beginning around the time of this Court's final approval decision, approximately 100 opt-out plaintiffs have settled with defendants and voluntarily dismissed their claims with prejudice. These settlements include some of the largest merchants in the country, including Verizon, Expedia, Hertz, Royal Caribbean, Dollar General, Uber, Dell, Shell, and Sunoco. Defendants also entered into a binding term sheet to settle the claims of 44 of the 45 plaintiffs in the *Accor* complaint, including several other large merchants. Based on the Visa data, the settlements described in this paragraph represent more than a third of the total opt-out sales volume, i.e., including the volume of the plaintiffs that have been litigating since 2013.

### VI. BRIEFING SCHEDULE

In accordance with the parties' June 28, 2019 letter (Doc. 7505), "so ordered" on July 2,

2019, except in the newly filed opt-out actions and subject to the Elgin dispute above, the parties will serve opening summary judgment motion papers and Daubert motions on April 1, 2020. Per Defendants' agreement with counsel for Equitable Relief Plaintiffs, any opening Daubert motion directed at Equitable Relief Plaintiffs' Expert Joseph Stiglitz and memoranda in support of any such motion will be served on April 17, 2020, given that Professor Stiglitz's schedule required that he be deposed several weeks after the scheduled close of expert discovery. Given the breadth of this litigation and the number of parties involved, the defendants currently anticipate filing a number of issue-specific summary judgment and expert-specific Daubert motions and accompanying memoranda that would efficiently condense discussion of common legal issues across the multiple cases before the Court. Defendants are in the process of determining a reasonable proposal for page limits and have opened dialog with the direct action plaintiff groups, and will soon open discussion with the Rule 23(b)(2) plaintiffs, to ascertain whether a joint proposal can be made to the Court. The parties will be prepared to discuss these issues with the Court at the conference.

The Equitable Relief Plaintiffs likewise anticipate that they will file a partial summary judgment motion.

## VII.   UPDATE REGARDING EPIQ'S RANSOMWARE ATTACK

On March 4, 2020 the Court issued an Order regarding the Payment Card Settlement website being non-operational. On the same day Rule 23(b)(3) Class Counsel wrote to the Court and provided information regarding the website and related matters. (ECF 7890). As Rule 23(b)(3) Class Counsel explained, counsel has been in constant consultation with Epiq since March 2, when counsel first learned that Epiq had been the victim of a ransomware attack. Live agent support was briefly interrupted, but as of 11:30 am March 4, live agent support is fully operational. The case

website is still not operational, but a temporary landing page has been established. The temporary landing page was available beginning in the early morning hours of March 6.

Rule 23(b)(3) Class Counsel has expressed its serious concerns about the website being inaccessible to class members and has written to Epiq on several occasions seeking more details regarding the site's operational status and proposed fixes. Rule 23(b)(3) Class Counsel has also sought assurances regarding how such issues will be dealt with in the future, should there be another system-wide attack. Rule 23(b)(3) Class Counsel has also been assured by Epiq that costs related to the attack will in no way be imposed on the class.

Rule 23(b)(3) Class Counsel has had high-level telephone meetings with Epiq executives as well as counsel for defendants. Epiq has assured all parties that no data was affected in the attack and that there are no security concerns at this time. The parties have asked Epiq to provide additional details regarding the attack and its response to it. That information is provided below. Additionally, an Epiq executive will be available at the status conference on March 11 with counsel for the class to answer any questions the Court may have and to provide a current update.

Epiq's statement regarding the ransomware attack and its response:

"On February 29, Epiq detected unauthorized activity on its systems, which has been confirmed as a ransomware attack. As part of Epiq's comprehensive response plan, it immediately took all systems offline globally to contain the threat and began working with a third-party forensic firm to conduct an independent investigation.

U.S. federal law enforcement authorities were notified and are involved in the investigation, in addition to Mandiant, IBM X-Force, and Microsoft working with Epiq to remediate and investigate the attack. The preliminary investigation has determined that at this time, there is no evidence of any unauthorized access or transfer or misuse or

8

exfiltration of any MDL 1720-related data in Epiq's possession. The investigation is ongoing and may take several weeks to conclude. However, the third-party firm is confident in its initial assessment that there is no evidence of any unauthorized access, transfer, misuse or exfiltration of any data in Epiq's possession. This initial assessment and report is based on a) the work of third-party experts in consultation with our IT professionals, b) no evidence of exfiltration in the data logs, c) the variant of ransomware and d) no remnants or evidence of tools that would have been used to remove data. The stored data was encrypted at rest.

Epiq is wholly focused on remediating the outage and bringing systems back on-line in a staged and secure manner. On March 5th, Epiq posted a temporary maintenance page on the settlement class website and has had toll-free call center support for class member inquiries available since early March 4th. Epiq is working on incremental improvements to the website and estimates the settlement class website will be fully restored by end of day Monday, March 9th."

## VIII. NEXT STATUS CONFERENCE

The parties will confer about scheduling the next status conference, and will propose to the Court a set of mutually agreeable dates in May.

| | |
|---|---|
| Dated:  March 6, 2020 | Respectfully submitted,<br><br>VORYS, SATER, SEYMOUR AND PEASE LLP<br><br><br>By:  s/ Alycia Broz<br>James A. Wilson<br>Robert N. Webner<br>Douglas R. Matthews<br>Kimberly Weber Herlihy<br>Alycia N. Broz<br>Kenneth J. Rubin<br>52 E. Gay Street, P.O. Box 1008<br>Columbus, Ohio  43216-1008<br>(614) 464-5606<br>jawilson@vorys.com<br>rnwebner@vorys.com<br>drmatthews@vorys.com<br>kwherlihy@vorys.com<br>anbroz@vorys.com<br>kjrubin@vorys.com<br><br>*Attorneys for Target Plaintiffs,*<br>*on behalf of all parties* |