**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**IN RE PAYMENT CARD**
**INTERCHANGE FEE AND MERCHANT**
**DISCOUNT ANTITRUST LITIGATION**

Case No. 05-md-01720 (MKB) (JO)

ORAL ARGUMENT REQUESTED

This Document Applies to:

*Barry's Cut Rate Stores Inc., et al. v. Visa,*
*Inc., et al.*, No. 05-md-1720 (MKB) (JO)
(E.D.N.Y.)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO RULE 23(B)(2)**
**CLASS PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................2

I.     RELEVANT PORTIONS OF THE MURPHY AND ELZINGA REPORTS ...................2

II.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ...........................5

ARGUMENT ...............................................................................................................5

I.     PLAINTIFFS' MOTION IS IMPROPER AND PREMATURE...........................................6

II.    PROFESSORS MURPHY AND ELZINGA DESCRIBE LEGALLY
       COGNIZABLE TWO-SIDED PROCOMPETITIVE EFFECTS IN THE
       CHALLENGED BUYING GROUP ANALOGY ................................................................8

III.   PROFESSORS MURPHY AND ELZINGA DO NOT ANALOGIZE PAYMENT
       CARD NETWORKS OR THEIR RULES TO *PER SE* UNLAWFUL BUYER
       CARTELS OR TIES.............................................................................................11

       A.     Professors Murphy and Elzinga Do Not Describe a *Per Se* Unlawful Buyer
              Cartel.............................................................................................11

       B.     Professors Murphy and Elzinga Do Not Describe an Unlawful Tie......................13

CONCLUSION............................................................................................................16

i

## TABLE OF AUTHORITIES

### <u>CASES</u>

*Anderson News, L.L.C. v. American Media, Inc.,*
   123 F. Supp. 3d 478 (S.D.N.Y. 2015)...............................................................................11

*Barry's Cut Rate Stores, Inc. v. Visa, Inc.,*
   2019 WL 7584728 (E.D.N.Y. Nov. 20, 2019)....................................................................2

*California Dental Ass'n v. FTC,*
   526 U.S. 756 (1999)..........................................................................................................6

*Capital Imaging Assocs. v. Mohawk Valley Medical Assocs.,*
   996 F.2d 537 (2d Cir. 1993)..............................................................................................6

*Castro v. Sanofi Pasteur, Inc.,*
   2012 WL 12516573 (D.N.J. Dec. 20, 2012).....................................................................11

*Clarett v. National Football League,*
   306 F. Supp. 2d 379 (S.D.N.Y. 2004)..............................................................................10

*In re Currency Conversion Fee Antitrust Litigation,*
   2012 WL 401113 (S.D.N.Y. Feb. 8, 2012).........................................................................7

*Eastman Kodak Co. v. Image Technology Services,*
   504 U.S. 451 (1992).........................................................................................................14

*Kaufman v. Time Warner,*
   836 F.3d 137 (2d Cir. 2016)..................................................................................13, 14, 15

*Law v. NCAA,*
   134 F.3d 1010 (10th Cir. 1998) ..................................................................................7, 8, 10

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.,*
   551 U.S. 877 (2007)...........................................................................................................8

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.,*
   715 F.3d 102 (2d Cir. 2013)...............................................................................................5

*Major League Baseball Properties, Inc. v. Salvino, Inc.,*
   542 F.3d 290 (2d Cir. 2008)...............................................................................................5

*NCAA v. Board of Regents of University of Oklahoma,*
   468 U.S. 85 (1984).............................................................................................................8

*Ohio v. American Express Co.,*
   138 S. Ct. 2274 (2018).........................................................................................6, 8, 10, 14

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019)....................................................................................................10

### **RULES**

Fed. R. Civ. P. 56(a) ...............................................................................................................5, 6, 7

### **OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* ...................................14

Defendants Visa Inc., Mastercard Incorporated, Mastercard International Incorporated, Bank of America, N.A., BA Merchant Services LLC, Bank of America Corporation, Barclays Bank plc, Barclays Bank Delaware, Barclays Financial Corp., Capital One Bank, (USA), N.A., Capital One Financial Corporation, JPMorgan Chase Bank, N.A., JP Morgan Chase & Co., Paymentech, LLC, Citibank (South Dakota), N.A., Citibank, N.A., Citigroup Inc., Citicorp, and Wells Fargo & Company ("Defendants") respectfully submit this memorandum of law in opposition to the Rule 23(b)(2) Class Plaintiffs' Motion for Partial Summary Judgment ("Mot.").

## PRELIMINARY STATEMENT

Rule 23(b)(2) Class Plaintiffs ("Plaintiffs") brought this motion—which no other plaintiff in this MDL has joined—seeking partial summary judgment related to an analogy that appears in three paragraphs of Professor Kevin Murphy's 226-page report and a single paragraph of Professor Kenneth Elzinga's 260-page report. The motion is not only procedurally improper, but also rests on fundamental misconceptions of the isolated portions of the expert reports that Plaintiffs reference, the law governing the rule-of-reason inquiry, and facts required to prove *per se* unlawful buyer cartels and tying arrangements.

In the relevant excerpts of their reports, Professors Murphy and Elzinga opined that the benefits of payment card use function as effective discounts to cardholders. Merchants help to fund these benefits by paying the merchant discount fee and, in turn, profit from the effective discounts to cardholders in the form of increased sales. In offering these opinions, Professors Murphy and Elzinga occasionally analogized the cardholders in a network to "buyers' clubs" or a "buying group" being offered to the merchants on the network. Plaintiffs now are attempting to seize on this analogy and move for partial summary judgment on the grounds that this "characterization of the facts of this case . . . is precluded as a matter of law," purportedly because the analogy is a one-sided "'procompetitive' justification [that] posits that [Defendants]

act like buying cartels" and "have unlawfully tied the alleged 'buying groups' to merchants' purchase of the Defendants' credit-card transactions." Mot. 1-2.

Plaintiffs' motion is meritless and should be denied for multiple independent reasons. *First*, the motion is improper (and at best premature) because it asks the Court to assume away the first step of the rule of reason—which requires plaintiffs to show that the challenged Visa and Mastercard rules cause anticompetitive effects—and skip to the second step of analyzing an analogy that might support a procompetitive justification Defendants' experts proffer in response. *Second*, in offering the analogy Plaintiffs seek to preclude, Professors Murphy and Elzinga properly address two-sided procompetitive aspects of payment card networks that benefit both merchants and cardholders. *Third*, at no point do Professors Murphy and Elzinga analogize the structures of payment card networks to *per se* unlawful buyer cartels or tying arrangements, as Plaintiffs claim.

At bottom, Plaintiffs mischaracterize the analyses performed by Professors Murphy and Elzinga to seek partial summary judgment against an argument Defendants and their experts do not make. Their motion should be denied.

## BACKGROUND

### I.   RELEVANT PORTIONS OF THE MURPHY AND ELZINGA REPORTS

In their respective 226- and 260-page reports, Professors Murphy and Elzinga offer their opinions concerning market definition, market power, and the economic consequences of the Visa and Mastercard rules that Plaintiffs allege are unlawful.[1] *See* SJDX 1232, Murphy Rep.[2]

---

[1] The challenged network rules "include default interchange rules, honor-all-cards rules, no-surcharge rules, and no-discount rules." *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, 2019 WL 7584728, at *4 (E.D.N.Y. Nov. 20, 2019).

[2] A copy of the evidence on which Defendants rely has been submitted as exhibits (referred to herein as "SJDX ##"). Exhibits SJDX 1–1140 are attached to the Transmittal Declaration of Rosemary Szanyi

¶ 8; SJDX 388, Elzinga Rep.[3] 2. They also detail flaws in the analysis conducted by Plaintiffs'

experts. *See* SJDX 1232, Murphy Rep. ¶ 8; SJDX 388, Elzinga Rep. 2.

Plaintiffs' motion challenges as "not legally cognizable," Mot. 9-10, one analogy

concerning a procompetitive justification offered by Professors Murphy and Elzinga. Some

background is necessary to put that analogy in context.

In relevant part, Professor Murphy concluded that:

> Merchants benefit [from payment cards] by accepting a discounted price in return
> for increased sales to cardholders, including cardholders who would otherwise
> shop elsewhere—the payment card 'delivers' additional sales volume in exchange
> for a discount. . . . [C]ardholders benefit because [among other reasons] they
> typically share in the discounted price via rewards and other transactional benefits
> of card use; they pay a lower net price.

SJDX 1232, Murphy Rep. ¶ 17. Professor Elzinga likewise opined:

> The amenities of card use, *e.g.*, delayed payment, rewards, and simplified record
> keeping, are effectively a discount off the merchant's price available to
> cardholders who use their card. If a merchant's prospective customers want to
> use payment cards, then the merchant's ability to make sales depends, in part, on
> the acceptance of payment cards.

SJDX 388, Elzinga Rep. 17.

Because payment card transactions facilitate discounts to cardholders that benefit

merchants through increased sales, Professors Murphy and Elzinga both concluded that these

effective discounts lead to more—and more valuable—transactions over the Visa and Mastercard

networks. *See* SJDX 1232, Murphy Rep. ¶ 16 ("Balancing fees toward the merchant side causes

merchants to benefit from accepting payment cards more through increased sales—*an output-*

---

(June 1, 2020). Exhibits SJDX 1141–1232 are attached to the Transmittal Declaration of Gary Carney
(Sept. 22, 2020). SJDX 1232 is the Expert Report of Kevin M. Murphy (June 10, 2019) ("Murphy
Rep.").

[3] SJDX 388 is Exhibit A to the Declaration of Kenneth Elzinga, Expert Report of Kenneth Elzinga and
appendices and exhibits thereto (June 10, 2019) ("Elzinga Rep.").

*expanding effect*—and less through higher margins, while consumers benefit by paying lower net prices and purchasing more." (emphasis added)); SJDX 388, Elzinga Rep. 172 ("When merchants agree to honor all cards and not surcharge any of the payment cards from Visa and Mastercard, they benefit from increased sales resulting from the added value provided to their potential customers.").

In their reports, Professors Murphy and Elzinga also explained why the challenged Visa and Mastercard rules are necessary to preserve the benefits to *both* merchants and cardholders that result from the effective cardholder discounts. *See* SJDX 1232, Murphy Rep. ¶ 35 ("Such actions [selective merchant acceptance prohibited by the challenged rules] reduce the value of the network in two distinct ways. First, in terms of the value created by payment cards through the exchange of a discount for cardholders in return for increased volume for merchants, such actions represent a net economic loss and reduce efficiency."); SJDX 388, Elzinga Rep. 152-55 ("The ability of Visa and Mastercard to assemble such large groups of prospective customers is supported by assuring cardholders that they will receive attractive and uniform treatment in the use of their cards when consummating a transaction. The HAC rules and the other rules that limit merchants' ability to obstruct cardholders' use of their cards [thus] promote increased transaction volume across the Visa and Mastercard platforms . . . .").

Plaintiffs have not sought to exclude any of these opinions, which go to core issues in this litigation. This motion apparently arises because, at one point in the course of describing the relevant economics, Professor Murphy analogized the effect of card-facilitated discounts to "buyers' clubs . . . such as Costco or a group purchasing organization offering sellers a shift in demand in exchange for reduced prices for the buyers the entity represents" and "retail intermediaries that deliver customers to major retailers in exchange for a discount or rebate

4

provided to the customer." SJDX 1232, Murphy Rep. ¶ 69 n.216.  Professor Elzinga wrote that "[t]he Visa and Mastercard platforms in effect assemble 'buying groups' of consumers and offer them to merchants." SJDX 388, Elzinga Rep. 152. Plaintiffs have made these isolated analogies the sole focus of their motion for partial summary judgment.

## II.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In a motion that no other plaintiff in this MDL joined, Plaintiffs request partial summary judgment on the basis that the "buying group justification" offered by Professors Murphy and Elzinga is improperly *one-sided*." Mot. 1.  According to Plaintiffs, the analogy purportedly suggests that "rather than selling credit-card transactions to merchants and cardholders, [Defendants] instead organize 'buying groups' of cardholders that obtain discounts from merchants, and that the buying-group 'discounts' (the rewards provided to cardholders) are procompetitive." *Id.*  Plaintiffs further argue that these discounts are "not legally cognizable" procompetitive effects because obtaining discounts from merchants in the manner described by Professors Murphy and Elzinga is properly viewed as: (1) a *per se* unlawful buyer cartel; and (2) an unlawful tie between payment card transactions and a supposed "buying group service." *Id.* at 3-4.  Accordingly, Plaintiffs ask the Court "for partial summary judgment on the ground that this proffered procompetitive justification [i.e., the "buying group explanation"] . . . is precluded as a matter of law." *Id.* at 1.

### ARGUMENT

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).  "In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable inferences in favor

of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## I.   PLAINTIFFS' MOTION IS IMPROPER AND PREMATURE

Plaintiffs ask the Court to assume they have demonstrated anticompetitive effects of the challenged network rules and thereby have satisfied Step 1 of the rule of reason, which is something their motion does not even attempt to show. Plaintiffs then ask the Court to grant partial summary judgment on an isolated analogy offered by two defense experts that might be proffered in support of a procompetitive justification that Defendants might offer at Step 2 of the rule of reason analysis. But assuming away Plaintiffs' burden here would be procedurally improper, especially because the isolated analogy at issue does not form a discrete element or "part of" a defense that could properly be addressed at summary judgment. *See* Fed. R. Civ. P. 56(a).

Under the rule of reason, defendants must proffer a procompetitive justification for an allegedly unlawful agreement only "[i]f the plaintiff carries its burden" of demonstrating anticompetitive effects. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) [hereinafter *Amex*]. If the plaintiff does not prove an agreement resulting in anticompetitive effects (as the Supreme Court concluded the plaintiffs had failed to do in *Amex*), then defendants need not establish a procompetitive justification. *See Cap. Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 547 (2d Cir. 1993) (procompetitive "justifications are unnecessary where [plaintiff] . . . has not carried its own initial burden of showing a restraint on competition"); *see also Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 775 n.12 (1999) ("[B]efore a theoretical claim of anticompetitive effects can justify shifting to a defendant the burden to show empirical evidence of procompetitive effects, . . . there must be some indication that the court making the decision

6

has properly identified the theoretical basis for the anticompetitive effects and *considered whether the effects are actually anticompetitive*." (emphasis added)).

Thus, unless and until a plaintiff has proven that a challenged restraint causes anticompetitive effects, it is improper for a plaintiff to move for summary judgment concerning an analogy that might be proffered in support of a procompetitive justification for the restraint. Indeed, the analogy at issue here does not even form an element or discrete "part of" a defense, Fed. R. Civ. P. 56(a), and the issue is, at best, impermissibly "premature." *See In re Currency Conversion Fee Antitrust Litig.*, 2012 WL 401113, at *9 (S.D.N.Y. Feb. 8, 2012) (denying motion for partial summary judgment "regarding . . . pro-competitive justifications" as "premature" because at the summary judgment stage plaintiffs "have not proven their case by a preponderance of the evidence, and may not be able to do so"); *see also Law v. NCAA*, 134 F.3d 1010, 1020-21 (10th Cir. 1998) (addressing summary judgment motion regarding procompetitive effects only after holding that plaintiffs had "demonstrated anticompetitive effect so conclusively that summary judgment on the issue was appropriate").

In short, Plaintiffs' motion for partial summary judgment is premature because they have not established that the challenged network rules cause anticompetitive effects.[4]  Rather, Plaintiffs concede that the Court must "assum[e] that the[y] have established that *prima facie* case," Mot. 8, so that the Court may assess an analogy that might be used to support one of Defendants' potential procompetitive rationales.  There is no reason for the Court to make that assumption, much less endeavor to place an isolated analogy in the context of proof that

---

[4] Indeed, no group of plaintiffs in the Interchange MDL has even moved for summary judgment on the issue of anticompetitive effects.  By contrast, Defendants have moved for summary judgment on multiple grounds, including the absence of anticompetitive effects.  *See* Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment Under *Ohio v. American Express*, at 20-39.

Plaintiffs concede they have not offered.  Accordingly, this motion should be denied as improper

(or at best, premature).

## II.  PROFESSORS MURPHY AND ELZINGA DESCRIBE LEGALLY COGNIZABLE TWO-SIDED PROCOMPETITIVE EFFECTS IN THE CHALLENGED BUYING GROUP ANALOGY

In any event, Plaintiffs fail to establish—much less to a summary judgment standard—

that the buying group analogy describes an impermissibly one-sided economic benefit of the

network rules.  Making a product more attractive to consumers, improving a product vis-à-vis its

competitors, and increasing output constitute well-established procompetitive justifications.  *See*

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 891-92 (2007) (explaining that

agreements that "increase interbrand competition" are procompetitive); *NCAA v. Bd. of Regents*

*of Univ. of Okla.*, 468 U.S. 85, 103 (1984) (stating that arrangements that "increase sellers'

aggregate output [are] procompetitive" (citing *Broadcast Music, Inc. v. Columbia Broad. Sys.,*

*Inc.*, 441 U.S. 1, 18-23 (1979))); *Law*, 134 F.3d at 1023 ("[I]ncreasing output, creating operating

efficiencies, making a new product available, enhancing product or service quality, and widening

consumer choice have been accepted by courts for otherwise anticompetitive agreements . . . .").

Plaintiffs acknowledge that Visa and Mastercard are two-sided transaction platforms that

compete with each other and other forms of payment for transactions between two distinct sets of

customers: merchants and cardholders.  *See* Mot. 4-5 (citing *Amex*, 138 S. Ct. at 2286-87, 2296

n.8).  Thus, the effect of any challenged restraint must consider its impact on both merchants and

cardholders.  *See id.*

Critically, contrary to the premise of Plaintiffs' motion, Professors Murphy and Elzinga

analyzed two-sided procompetitive effects of the challenged network rules.  They opined that

Visa and Mastercard *cardholders* receive an effective discount—in the form of "delayed

payment, rewards, and simplified record keeping"— from which *merchants* also benefit in the

8

form of increased sales.  SJDX 388, Elzinga Rep. 16-17; *see also* SJDX 1232, Murphy Rep. ¶ 17

(cardholders receive a "discounted price via rewards and other transactional benefits of card

use").  Professors Murphy and Elzinga explained that these features make Visa and Mastercard

transactions attractive to *both* merchants and cardholders, expand the number of transactions that

occur over the Visa and Mastercard networks, and help them compete against other forms of

payment.  *See, e.g.*, SJDX 1232, Murphy Rep. ¶¶ 16-17, 383; SJDX 388, Elzinga Rep. 16-17, 67-

68, 172.  Professors Murphy and Elzinga further opined that the rules that Plaintiffs challenge

preserve these procompetitive features of the Visa and Mastercard networks.  *See* SJDX 1232,

Murphy Rep. ¶ 35; SJDX 388, Elzinga Rep. 152-55.  Accordingly, Professors Murphy and

Elzinga analyzed cognizable two-sided procompetitive effects of the challenged rules.

Plaintiffs do not contend that these opinions themselves are somehow incorrect or the

result of faulty methodology.  Rather, they wrongly argue that the procompetitive effects

Professors Murphy and Elzinga highlighted by analogy are "*one-sided*" because those experts

"assert . . . that rather than selling credit-card transactions to merchants and cardholders,

[Defendants] instead organize 'buying groups' of cardholders."  Mot. 1.  But Professors Murphy

and Elzinga say no such thing.  Rather, they *do* focus on the benefits of network rules to

merchants *and* cardholders, explaining that the network rules help to facilitate effective discounts

that enhance the value of the Visa and Mastercard platforms for both merchants and cardholders,

and result in a procompetitive increase in the number of payment card transactions.  And while a

merchant-funded discount causes certain effects analogous to "buyers' clubs," "group purchasing

organizations," and "retail intermediaries," because it "deliver[s] additional customers and sales

to the merchant in exchange for a discount," SJDX 1232, Murphy Rep. ¶ 144 n.216, providing

increased sales to merchants and assorted benefits to cardholders as described in that analogy is

precisely the *two-sided* value that the Supreme Court attributed to credit cards in *Amex*. *See Amex*, 138 S. Ct. at 2282-83 (explaining that "to fund those investments [in enhanced rewards for cardholders], [Amex] must charge merchants higher fees" and "Amex's investments benefit merchants by encouraging cardholders to spend more money"); *see also US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 50, 58 (2d Cir. 2019) (global distribution systems provide airlines with "access to travel agents," which the global distribution systems entice to use their two-sided transaction platforms by offering, among other things, a negative per transaction cost funded by fees from the airlines).[5]

Finally, the cases Plaintiffs cite in which courts rejected purported procompetitive effects as not legally cognizable, *see* Mot. 11-12, are inapposite because the purported procompetitive effects in those cases primarily concerned "cost-cutting," not improving the product or increasing output. *See, e.g.*, *Law*, 134 F.3d at 1024 ("The undisputed record reveals that the REC Rule is nothing more than a cost-cutting measure . . . ."); *Clarett v. NFL*, 306 F. Supp. 2d 379, 409 (S.D.N.Y.) ("[T]he NFL's desire to keep its costs down is not a legitimate procompetitive justification."), *rev'd on other grounds*, 369 F.3d 124 (2d Cir. 2004).

Accordingly, the analogies related to procompetitive justifications on which Plaintiffs seek summary judgment are not improperly one-sided, and Plaintiffs' motion should be denied for this reason alone.

---

[5] *See also Amex*, 138 S. Ct. at 2281 (payment networks can offer rewards "because increasing the number of cardholders increases the value of accepting the card to merchants and, thus, increases the number of merchants who accept it"); *id.* at 2288 ("As explained, Amex has historically charged higher merchant fees than [its] competitors because it delivers wealthier cardholders who spend more money."); *id.* at 2280 (payment card network services "save[] merchants the trouble and risk of extending credit to customers, and it increases the number and value of sales that they can make"); *id.* at 2282 ("To compete for the valuable cardholders that Amex attracts, both Visa and MasterCard have introduced premium cards that, like Amex, charge merchants higher fees and offer cardholders better rewards.").

III. **PROFESSORS MURPHY AND ELZINGA DO NOT ANALOGIZE PAYMENT CARD NETWORKS OR THEIR RULES TO *PER SE* UNLAWFUL BUYER CARTELS OR TIES**

Plaintiffs also fail to show that the "buying group" analogy—which Professors Murphy and Elzinga used in a few paragraphs of their reports to describe cardholder customers and certain benefits of payment card networks—characterizes Defendants' conduct as either *per se* unlawful buyer cartels or tying arrangements. Indeed, Plaintiffs' motion rests on a mischaracterization of these experts' analogy.

A. Professors Murphy and Elzinga Do Not Describe a *Per Se* Unlawful Buyer Cartel

Buying groups are not necessarily—or even usually—*per se* unlawful. *See Castro v. Sanofi Pasteur, Inc.*, 2012 WL 12516573, at *6 (D.N.J. Dec. 20, 2012) (buying groups involving horizontal agreements among rivals are subject to the rule of reason if they provide "transactional efficiencies"). And buying groups certainly are not subject to *per se* condemnation absent some illegitimate horizontal agreement, because vertical agreements commonly deliver procompetitive benefits and therefore "are 'subject to the rule of reason.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 123 F. Supp. 3d 478, 497 (S.D.N.Y. 2015) (quoting *United States v. Apple Inc.*, 791 F.3d 290, 321 (2d Cir. 2015)), *aff'd*, 899 F.3d 87 (2d Cir. 2018); *see also Castro*, 2012 WL 12516573, at *5 ("Horizontal purchasing agreements subject to the *per se* rule are those 'found among rivals in the buying market limiting the price they will pay or the amount they will purchase.'" (citation omitted)).

Neither Professor Murphy nor Professor Elzinga analogized the effective discounts cardholders receive as a result of using payment cards to *per se* unlawful horizontal buyer cartels among competitors. *See* SJDX 1232, Murphy Rep. ¶ 144 n.216 (analogizing to "buyers' clubs . . . such as Costco or a group purchasing organization" and "retail intermediaries" such as Hoopla Doopla); SJDX 388, Elzinga Rep. 152 ("The Visa and Mastercard platforms in effect

11

assemble 'buying groups' of consumers and offer them to merchants.").  None of the business models (including some operated by plaintiffs in this MDL) to which the experts compared these effective discounts involve horizontal agreements among customers: Costco members have agreements with Costco, not with each other; members of group purchasing organizations have agreements with the group purchasing organization, not necessarily with each other; and users of Hoopla Doopla have agreements with the platform, not with each other.  Likewise, and fundamentally, there is no suggestion from Professor Murphy or Professor Elzinga (or anyone, for that matter) that payment card networks are a product of a horizontal agreement *among cardholders*.

Plaintiffs also disregard the substance of the reports from Professors Murphy and Elzinga when they claim that "the Defendants' expert economists have attempted to justify the purported 'buying groups' on the sole ground that they extract lower prices from merchants."  Mot. 12.  In fact, Professors Murphy and Elzinga repeatedly explained that—similar to the effect of a buying group—the effective discounts to cardholders result in increased sales to merchants, as well as an increase in the network's payment card transactions.  *See, e.g.*, SJDX 1232, Murphy Rep. ¶ 16 ("Balancing fees toward the merchant side causes merchants to benefit from accepting payment cards more through increased sales—*an output-expanding effect*—and less through higher margins, while consumers benefit by paying lower net prices and purchasing more." (emphasis added)); SJDX 388, Elzinga Rep. 172 ("When merchants agree to honor all cards and not surcharge any of the payment cards from Visa and Mastercard, they benefit from increased sales resulting from the added value [which Professor Elzinga terms a 'discount'] provided to their potential customers.").

Thus, neither Professor Murphy nor Professor Elzinga has described a *per se* unlawful buyer cartel, and Plaintiffs are not entitled to partial summary judgment based on this strawman theory.

B.   Professors Murphy and Elzinga Do Not Describe an Unlawful Tie

Plaintiffs' assault on a supposed "tying arrangement" is likewise a red herring. "A tying arrangement is 'an agreement by a party to sell a product but only on the condition that the buyer also purchase[] a different (or tied) product.'" *Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016) (citation omitted). "The fear of tie-ins is that a monopolist in one product market will seek to expand its monopoly by conditioning the purchase of the monopolized product upon the purchase of a product in a separate market." *Id.* A tying claim requires the plaintiff to prove, among other things, that the tying and the tied product are "separate product[s]," that the seller has market power in the tying product, and that "the tie-in has anticompetitive effects in the tied market." *Id.*

Plaintiffs wrongly contend that Professors Murphy and Elzinga described a tie between "rewards that the banks provide to the cardholders [funded by] discounts that merchants give to [cardholders]" in exchange for increased sales—i.e., the "'buying group' services"—and "their credit-card transactions." Mot. 15. According to Plaintiffs, the "tying product" is payment card transactions and the "tied product" is the alleged buying group services that Defendants purportedly sell to merchants and cardholders. *See id.* Plaintiffs' tying argument fails on at least three distinct grounds: no tie between separate products; no evidence of anticompetitive effects in the tied product market; and no showing that Defendants have market power in the tying product market.

As an initial matter, Plaintiffs have made no attempt to demonstrate—much less to a summary judgment standard—that the purported buying group services constitute a separate or

distinct "product" from payment card transactions. *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 462-63 (1992) (finding separate and distinct product markets existed where there was evidence that the two products had been sold separately and continued to be sold separately to other categories of consumers). Any suggestion by Plaintiffs that payment card transactions and rewards—or merchants providing effective discounts to fund rewards in exchange for increased sales—are separate products in distinct markets is contrary to the Supreme Court's treatment of rewards as one component of the price of transactions in the single, two-sided transactions market. *See, e.g., Amex*, 138 S. Ct. at 2288. It is also contrary to the buying group analogy presented by Professors Murphy and Elzinga, which addressed merchants funding effective discounts to cardholders as part of the value of payment card transactions to both cardholders and merchants. *See supra* Part II. Plaintiffs' argument fails for this reason alone.

That transactions and the purported buying group services are not separate products for the purpose of a tying claim is reinforced by the absence of any evidence that Visa and Mastercard or their competitors sell rewards—and require merchants to fund effective discounts to cardholders in exchange for increased sales—separately from transactions. *See Kaufman*, 836 F.3d at 142 ("If a court finds . . . that the entire 'competitive fringe' engages in the same behavior as the defendant [i.e., selling products as a package] then the tying and tied products should be declared one product . . . ." (citation omitted)); *see also* Phillip E. Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* ¶ 1744(c)(4) (4th ed., 2020 Cum. Supp.) (explaining that a "bundle should be treated as one product" if there is "parallel bundling" by competitors in the tying product market even where defendant has market power over the tying product market because such bundling likely reflects consumer preference or cost and quality

14

considerations). Indeed, Plaintiffs' experts (and Professors Murphy and Elzinga, for that matter) do not even define separate product markets for transactions and the purported buying group services as would be necessary for the Plaintiffs to establish an unlawful tie to a summary judgment standard. *See Kaufman*, 836 F.3d at 141 ("The 'separate product' element requires that the alleged tying product and tied product be separate, *i.e.*, they must exist in separate and distinct product markets.").

Plaintiffs' tying argument also fails for want of "separate products" because they misunderstand what Professors Murphy and Elzinga opine comprises the effective discount to cardholders. According to these experts, the effective discount includes benefits beyond just rewards, such as delayed payment and simplified recordkeeping. *See* SJDX 388, Elzinga Rep. 16-17. And Plaintiffs present no evidence that these benefits are sold separately from transactions by Visa and Mastercard, or any of their competitors, much less that the challenged rules require merchants to fund these other benefits of card use for consumers.

Moreover, Plaintiffs' citation to *In re Visa Check/MasterMoney Antitrust Litigation*, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003), *see* Mot. 14, does not support their "separate products" argument because that case involved an alleged tie between merchants' acceptance of credit cards and debit cards, not credit card transactions and the individual value components of credit card transactions. Plaintiffs' assertion that ██████████████████████████████ ██████████████████████████████ *see* Mot. 15, is similarly inapposite because it does not suggest that Visa and Mastercard previously allowed merchants to selectively accept specific Visa and Mastercard payment cards, or choose which components of value to cardholders—i.e., the effective discounts—they would fund.

15

Finally, Plaintiffs also do not show that Defendants have market power in the purported tying market or that there are any anticompetitive effects in the purported tied market—e.g., increased prices or reduced output market-wide in a supposed buying group services market. Indeed, Plaintiffs fail to present *any* evidence of market power or anticompetitive effects. Rather, Plaintiffs rely solely on "the procedural posture of this motion"—which presumably refers to their assertion that they would meet their burden at the first step of the rule of reason— to assume that there is no genuine dispute of material fact concerning these elements.  Mot. 16. But Plaintiffs' reasoning is purely circular: First, they ask the Court to assume these prerequisites to unlawful tying without offering any proof (much less proof sufficient to satisfy a summary judgment standard).  Then they ask the Court to preclude certain analyses by Professors Murphy and Elzinga because those experts supposedly endorsed the unlawful tie that Plaintiffs just conjectured by assumption.  Nothing about the "procedural posture of this motion" permits these illogical acrobatics.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that Plaintiffs' motion for partial summary judgment be denied.

16

Dated: September 22, 2020          Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ *Boris Bershteyn*
    Boris Bershteyn
    Kamali P. Willett
    One Manhattan West
    New York, NY 10001
    (212) 735-3000
    boris.bershteyn@skadden.com

    *Attorneys for Defendants JPMorgan Chase
    Bank, N.A., JP Morgan Chase & Co., and
    Paymentech, LLC*

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP

By: /s/ *Gary R. Carney*
    Gary R. Carney
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Tel.: (212) 373-3000
    Fax: (212) 757-3990
    gcarney@paulweiss.com

    Kenneth A. Gallo
    Craig A. Benson
    Jeannie S. Rhee
    Donna M. Ioffredo
    2001 K Street, NW
    Washington, DC 20006-1047
    Tel.: (202) 223-7300
    Fax: (202) 223-7420

    *Attorneys for Defendants Mastercard
    Incorporated and Mastercard
    International Incorporated*

17

ARNOLD & PORTER KAYE SCHOLER LLP

By: /s/ *Robert C. Mason*
     Robert C. Mason
     250 West 55th Street
     New York, NY 10019-9710
     (212) 836-8000
     robert.mason@arnoldporter.com

     Robert J. Vizas
     Three Embarcadero Center, 10th Floor
     San Francisco, CA 94111-4024

     Mark R. Merley
     Matthew A. Eisenstein
     Rosemary Szanyi
     Michael A. Rubin
     601 Massachusetts Avenue,
     NW Washington, DC 20001-3743


HOLWELL SHUSTER & GOLDBERG LLP

     Michael S. Shuster
     Demian A. Ordway
     Blair E. Kaminsky
     Jayme Jonat
     425 Lexington Avenue
     New York, NY 10017
     (646) 837-5151
     mshuster@hsgllp.com

     *Attorneys for Defendant Visa Inc.*

18

MORRISON & FOERSTER LLP

By: /s/ *Michael B. Miller*
    Michael B. Miller
    Mark P. Ladner
    250 West 55th Street
    New York, NY 10019-9601
    (212) 468-8000
    mbmiller@mofo.com

    Natalie Fleming Nolen
    2000 Pennsylvania Avenue, NW
    Washington, DC 20006

    *Attorneys for Defendants Bank of America, N.A. (including, as successor-by-merger, FIA Card Services, N.A.), BA Merchant Services LLC, and Bank of America Corporation*


SIDLEY AUSTIN LLP

By: /s/ *Benjamin R. Nagin*
    Benjamin R. Nagin
    Marissa Alter-Nelson
    787 Seventh Avenue
    New York, NY 10019
    (212) 839-5911
    bnagin@sidley.com
    malternelson@sidley.com

    *Attorneys for Defendants Citibank, N.A., for itself and as successor in interest to Citibank (South Dakota), N.A., Citigroup Inc., and Citicorp*

19

PATTERSON BELKNAP WEBB & TYLER LLP

By: */s/ Robert P. LoBue*
 Robert P. LoBue
 William F. Cavanaugh
 1133 Avenue of the Americas
 New York, NY 10036
 (212) 336-2000
 rplobue@pbwt.com

 *Attorneys for Defendants Wells Fargo*
 *& Company*


O'MELVENY & MYERS LLP

By: */s/ Abby F. Rudzin*
 Andrew J. Frackman
 Abby F. Rudzin
 O'Melveny & Myers LLP
 Times Square Tower
 7 Times Square
 New York, NY 10036
 (212) 326-2000
 afrackman@omm.com
 arudzin@omm.com

 *Attorneys for Capital One Bank, (USA), N.A.,*
 *and Capital One Financial Corporation*

20

SHEARMAN & STERLING

By: */s/ Richard Schwed*
    Richard Schwed
    Grace J. Lee
    Shearman & Sterling
    599 Lexington Avenue
    New York, NY 10022
    (212) 848-4000
    rschwed@shearman.com
    grace.lee@shearman.com

*Attorneys for Barclays Bank plc, Barclays Bank Delaware, and Barclays Financial Corp.*

21

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury that on September 22, 2020, I caused true copies of the following:

- Defendants' Response in Opposition to Rule 23(b)(2) Class Plaintiffs' Statement of Undisputed Facts Pursuant to Local Rule 56.1
- Defendants' Memorandum of Law in Opposition to Rule 23(b)(2) Class Plaintiffs' Motion for Partial Summary Judgment

to be served electronically through an FTP site upon designated counsel per the parties' agreement.

Dated: New York
        September 22, 2020

/s/ Evan R. Kreiner
Evan R. Kreiner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
evan.kreiner@skadden.com

22