E-SERVICE
66460960
Mar 27 2021
08:47PM
File & ServeXpress™

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE,<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY,<br><br>Defendants. | MDL No. 1720<br><br>Docket No. 05-md-01720-MKB-VMS |

**MERCHANT TRADE GROUPS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

**PAGE NO.**


**TABLE OF CONTENTS** ............................................................ i

**TABLE OF AUTHORITIES** ............................................................ ii

**PRELIMINARY STATEMENT** ............................................................ 1

**BACKGROUND** ............................................................ 2

**ARGUMENT** ............................................................ 6

**I. MERCHANT TRADE GROUPS MAY INTERVENE AS OF RIGHT UNDER RULE 24(a)** ............................................................ 6

**A. Merchant Trade Groups' Motion Is Timely** ............................................................ 7

**B. Merchant Trade Groups Have an Interest in the Proceedings, and the Disposition of the Present Case Could Impede Their Interests** .................. 9

**C. The Equitable Relief Plaintiffs Do Not Adequately Represent Merchant Trade Groups' Interests** ............................................................ 9

**II. AT A MINIMUM, MERCHANT TRADE GROUPS SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(B)** ....................................... 13

**III. MERCHANT TRADE GROUPS REQUEST PERMISSION TO INTERVENE WITHOUT ATTACHING INTERVENOR COMPLAINT** ........ 15

**CONCLUSION** ............................................................ 17

**TABLE OF AUTHORITIES**

**PAGE NO.**

**CASES**

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014) ........ 14

*Bano v. Union Carbide Corp.*,
No. 99 Civ. 11329, 2005 WL 6800401 (S.D.N.Y. Aug. 12, 2005) ........ 16

*Blesch v. Holder*,
2012 WL 1965401 (E.D.N.Y. May 31, 2012) ........ 16

*Brown v. City of Barre, Vt.*,
No. 5:10-cv-81, 2010 WL 5141783 (D. Vt. Dec. 13, 2010) ........ 7, 14

*Copeland v. Perales*,
141 F.R.D. 11 (E.D.N.Y. 1992) ........ 7, 14

*Davis v. J.P. Morgan Chase & Co.*,
775 F. Supp. 2d 601 (W.D.N.Y. 2011) ........ 11

*Del. Tr. Co. v. Wilmington Tr., N.A.*,
534 B.R. 500 (S.D.N.Y. 2015) ........ 9

*Eckert v. Equitable Life Assurance Soc'y of U.S.*,
227 F.R.D. 60 (E.D.N.Y. 2005) ........ 10

*Endress v. Gentiva Health Servs., Inc.*,
276 F.R.D. 62 (E.D.N.Y. 2011) ........ 14

*Golden Ins. Co. v. PCF State Restorations, Inc.*,
No. 17-cv-5390 (BCM), 2018 WL 10593630 (S.D.N.Y. May 11, 2018) ........ 16

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
297 F.R.D. 90 (S.D.N.Y. 2013) ........ 10

*In re Lendingclub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ........ 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*,
827 F.3d 223 (2d Cir. 2016) ........ 2, 3, 4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ........ 3

*In re Snap Inc. Sec. Litig.*,
334 F.R.D. 209 (C.D. Cal. 2019) ........ 15

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
No. CV 12-1633 JMA AKT, 2015 WL 777248 (E.D.N.Y. Feb. 13, 2015)........................... 16

*NAACP v. New York*,
413 U.S. 345 (1973)........................................................................................................... 7

*Rivera v. N. Y. City Hous. Auth.*,
No. 94 Civ. 4366, 1995 WL 375912 (S.D.N.Y. June 23, 1995)............................................. 8

*Sackman v. Liggett Grp., Inc.*,
167 F.R.D. 6 (E.D.N.Y. 1996)............................................................................................. 8

*Schnorbach v. Fuqua*,
70 F.R.D. 424 (S.D. Ga. 1975)........................................................................................... 15

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)........................................................................................................... 10

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)........................................................................................................... 9

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994)............................................................................................ 7, 8, 14

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016)................................................................................................ 7

*Woolen v. Surtran Taxicabs, Inc.*,
684 F.2d 324 (5th Cir. 1982)............................................................................................... 9

**OTHER AUTHORITIES**

Website,
David Heun, *Card brands postpone fee hike, but merchants want interchange reform*,
PaymentsSource (Mar. 16, 2021), https://www.paymentssource.com .................................... 3

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................ passim

Fed. R. Civ. P. 24 ........................................................................................................ passim

**TREATISES**

3 Newberg on Class Actions
§ 9:35 (5th ed.)........................................................................................................ 10, 11

5 A. Conte & H. Newberg, Class Actions
§ 16:7, p. 154 (4th ed. 2002)............................................................................................ 10

**PRELIMINARY STATEMENT**

The Equitable Relief Plaintiffs ask this Court to certify a mandatory class seeking injunctive relief under Federal Rule of Civil Procedure 23(b)(2). The National Retail Federation ("NRF") and the Retail Industry Leaders Association ("RILA") (collectively "Merchant Trade Groups") are putative class members in this action because they accept Visa and Mastercard branded cards as payment for a wide range of services, such as payment for membership dues, conference registrations, and a wide variety of other services that they provide. As trade associations, NRF and RILA have merchant members which account for over $1.5 trillion in annual retail sales, millions of American jobs, and more than 100,000 store locations nationwide. NRF and RILA here represent their own interests, but those interests are informed by their in-depth knowledge of the broader merchant community that constitutes Merchant Trade Groups' memberships.

NRF and RILA join together as Merchant Trade Groups in this motion to seek to intervene to highlight their serious concerns about the proposed Rule 23(b)(2) class. Because Merchant Trade Groups—non-profit associations—incur costs due to interchange fees, and such fees are often the largest expense after payroll for U.S. retailers, Merchant Trade Groups have closely monitored this longstanding action and, where necessary, weighed in. They opted out of the 2013 Rule 23(b)(3) class settlement and objected to the simultaneous Rule 23(b)(2) class settlement. They appealed the Court's 2013 approval of the settlement, filing one of the two primary appellate briefs for the merchant community. They weighed in when the Court sought briefing on which counsel to appoint to represent the putative equitable relief class. They opted out of the 2019 Rule 23(b)(3) settlement (but did not object). And now, as Equitable Relief Plaintiffs seek to certify a mandatory and overbroad class, Merchant Trade Groups seek to intervene and levy their objections on their own behalf, as well as on behalf of their merchant

members and not-yet-existent merchants included in the proposed class who by definition cannot raise their own concerns.

Absent class members rarely seek to intervene, generally comforted that named representatives and class counsel sufficiently represent their interests. But where, as here, absent class members are not well served, the U.S. Supreme Court and courts around the country have made clear that absent class members should be permitted to intervene. Absent class members' need to intervene is particularly acute where the proposed class would not permit opt-outs. If Merchant Trade Groups cannot intervene and a mandatory class is certified, they and their current and future members may have no opportunity to forge their own litigation path. They face being tied to Equitable Relief Plaintiffs' litigation strategy—including using class certification to bind merchants, many of whom do not yet exist, to a settlement or judgment in this case—even as they disagree mightily with it.

Merchant Trade Groups ask this Court to grant their motion to intervene as of right under Rule 24(a), or alternatively, to permissively intervene under Rule 24(b). In either case, Merchant Trade Groups seek intervention for the limited purpose of objecting to certification of a class as defined by Equitable Relief Plaintiffs.

## BACKGROUND

As this Court is aware, this multidistrict litigation ("MDL") originated in 2005. In the sixteen years since this MDL was created, substantial changes have taken place in the rules and policies governing the credit card industry, including Visa's and Mastercard's initial public offerings ("IPOs"), the "Durbin Amendment," and a 2011 consent decree with the Department of Justice permitting discounting. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* ("*Payment Card II*"), 827 F.3d 223, 229 (2d Cir. 2016). But "[n]one of these developments affected the honor-all-cards or no-surcharging rules, or the existence of a default interchange

fee," the core restrictive rules that enable Visa and Mastercard to extract high, and still rising, interchange fees without facing downward pricing pressure. *Id.* Indeed, despite industry changes and critical technological advances (like the smartphone), the market for payment card acceptance remains broken and non-competitive—merchants and consumers continue to pay continually higher prices.[1]

In 2012, the parties proposed a settlement with two classes: a Rule 23(b)(2) class that would receive injunctive relief but no right to opt out, and a Rule 23(b)(3) class, where those who did not opt out could receive monetary relief (the "Settlement"). *Payment Card II*, 827 F.3d at 229. Citing the breadth of the mandatory release compared to the largely illusory injunctive relief, thousands of merchants objected to the mandatory (b)(2) Settlement; additionally, over 7,500 merchants opted out of the (b)(3) class. Report of Exclusion Requests, Dkt. 6154-2. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* ("*Payment Card I*"), 986 F. Supp. 2d 207, 223 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016). Merchant Trade Groups were among the objectors and opt-outs. Greenberger Decl. Ex. 2 (Obj. of Retail Industry Leaders Association to Final Approval of the Settlement, Dkt. 2469); Greenberger Decl. Ex. 3 (National Retail Federation Statement of Objection to Final Approval of the Proposed Rule 23(b)(2) Agreement, Dkt. 2538).

After the District Court approved the Settlement, Merchant Trade Groups, along with numerous other objectors and opt-out plaintiffs, appealed. Appeal, Dkt. 6148; Notice of Appeal, Dkt. 6251. NRF and RILA joined together to submit one of the two primary merchant briefs opposing the Settlement before the Second Circuit. Greenberger Decl. Ex. 4 (Br. For

[1] *See, e.g.*, David Heun, *Card brands postpone fee hike, but merchants want interchange reform*, PaymentsSource (Mar. 16, 2021), https://www.paymentssource.com/news/card-brands-postpone-fee-hike-but-merchants-want-interchange-reform.

Objectors-Appellants, *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 12-4671, at 3 (2d Cir. June 16, 2014), Dkt. 55).

In 2016, the Second Circuit vacated the class certification and reversed the approval of the Settlement, holding that class counsel was conflicted because the "class counsel and class representatives who negotiated and entered into the Settlement Agreement were in the position to trade diminution of (b)(2) relief for increase of (b)(3) relief." *Payment Card II*, 827 F.3d at 234. And that improper trade-off, in fact, occurred: "the bargain that was struck between relief and release on behalf of absent class members is so unreasonable that it evidences inadequate representation." *Id.* The Court particularly highlighted the broad future-looking relief of injunctive claims, which had no end date, binding class members *in perpetuity*: "This release permanently immunizes the defendants from any claims that any plaintiff may have now, or will have in the future, that arise out of, *e.g.*, the honor-all-cards and default interchange rules. . . . The defendants never have to worry about future antitrust litigation based on their honor-all-cards rules and their default interchange rules." *Id.* at 239.

Following the Second Circuit's decision, Merchant Trade Groups joined former class plaintiffs in requesting that the Court comprehensively reconsider class representation. They urged the Court to appoint independent counsel "who are willing to reconsider, and, as appropriate, deviate from, prior counsel's (conflicted) decisions about prospective relief—such as the decision to seek certification of a mandatory (b)(2) class and the decision to focus on meaningless surcharging relief." Greenberger Decl. Ex. 5 at 2–3 (Merchant Trade Groups' Mem. of Law in Supp. of Appointment of Kirby/Goldstein, Dkt. 6697).

In 2017, Equitable Relief Plaintiffs filed a new class action complaint. Equitable Relief Class Action Compl., Dkt. 6892 (sealed), Dkt. 6910 (redacted). Equitable Relief Plaintiffs

now consist of just seven small merchants located in Illinois, Texas, Florida, and Georgia, and seek to represent a class of millions of merchants across the nation that accept Visa and/or Mastercard. *Id.* at 3, 11–12. Meanwhile, although certain merchants decided to litigate their individual claims against Defendants, Merchant Trade Groups elected not to do so.[2]

Instead, beginning in mid-2017, counsel and representatives from Merchant Trade Groups began discussions with appointed Equitable Relief Counsel, who Merchant Trade Groups understood were appointed to represent all merchants in the class, including Merchant Trade Groups and their members. Merchant Trade Groups were uniquely situated to share not only their own views but the views of a much broader member community than that to which the Equitable Relief Counsel had access, because the Equitable Relief Plaintiffs are few in number and do not have insight into large portions of the retail industry. In contrast, Merchant Trade Groups are in regular contact with a large number of merchants because of their wide and varied memberships. Merchant Trade Groups sought to share privileged information with their putative appointed counsel about their views regarding the appropriate certification of any Rule 23(b)(2) class and what equitable relief would be meaningful to the broad merchant community beyond Equitable Relief Plaintiffs. These discussions included multiple in-person meetings where Merchant Trade Groups brought member retail representatives with deep experience with the payment industry to share their views with Equitable Relief Counsel.

The last such meeting was in April 2019. It was not intended to be the final meeting, and the parties contemplated another meeting in the summer of 2019. But then, without

[2] In December 2019, Defendants reached a settlement *with opt-out rights* for the Rule 23(b)(3) class. Final Approval Order, Dkt. 7818. Future merchants were not part of that Rule 23(b)(3) class and did not release any claims. Merchant Trade Groups were among the 675 class members that opted out. Report of Exclusion Requests, Dkt. 7796-2.

explanation, Equitable Relief Counsel stopped responding to Merchant Trade Groups' repeated communications, including ignoring emails in May 2019, July 2019, and December 2019; a voicemail in December 2019; and a letter in February 2020. Only in March 2020, after nearly a year of silence, did Merchant Trade Groups receive a response; but Equitable Relief Counsel remained uninterested in scheduling a further meeting. There have not been any further meetings or discussions since, though Equitable Relief Plaintiffs have publicly stated they are having settlement discussions with Defendants. *See* Dkt. 7281, 8009.

## ARGUMENT

Merchant Trade Groups should be permitted to intervene in this action for the limited purpose of opposing the certification of a mandatory Rule 23(b)(2) class, as defined by the Equitable Relief Plaintiffs. Because Merchant Trade Groups' motion is timely, they have a demonstrated interest at stake that may be impeded by the disposition of the case, and the Equitable Relief Plaintiffs may not be able to adequately represent their interests, Merchant Trade Groups meet the standard for mandatory intervention and must be allowed to intervene under Federal Rule of Civil Procedure 24(a). At the very least, this Court should permit Merchant Trade Groups to intervene under Rule 24(b), as they have claims that may be affected by a mandatory class certification. Although it is fairly unusual for absent class members to feel the need to intervene to raise concerns about the certification of a class that would encompass them, where absent class members *have* sought intervention, courts from across the country generally grant their request.

### I. MERCHANT TRADE GROUPS MAY INTERVENE AS OF RIGHT UNDER RULE 24(a)

Rule 24(a) requires a court to allow intervention where (i) the motion is timely; (ii) the intervenor has an interest relating to the subject of the dispute; (iii) any disposition of the

dispute "may as a practical matter impair or impede the [intervenor]'s ability to protect its interest"; and (iv) the existing parties do not adequately represent the intervenor's interest. Fed. R. Civ. P. 24(a). Because Merchant Trade Groups satisfy all four requirements of the rule, this Court "must permit [them] to intervene" in this action. *Id.*

**A. Merchant Trade Groups' Motion Is Timely**

The motion is timely under Rule 24. "Timeliness is to be determined from all the circumstances" and is left to the court's discretion. *NAACP v. New York*, 413 U.S. 345, 366 (1973). In examining the circumstances, courts evaluate (i) how long the intervenor had notice of the interest before filing; (ii) the prejudice to the existing parties resulting from the intervention; (iii) the prejudice to the intervenor if the motion is denied; and (iv) any other "unusual circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

Courts have adopted a "presumption of timeliness" for class member intervention, where, as here, the intervention motion is made before the class is certified. *Wallach v. Eaton Corp.*, 837 F.3d 356, 361 (3d Cir. 2016); *see also Copeland v. Perales*, 141 F.R.D. 11, 14 (E.D.N.Y. 1992) (permitting putative class member to intervene after filing of class certification motion for the purpose of opposing class certification); *Brown v. City of Barre, Vt.*, No. 5:10-cv-81, 2010 WL 5141783 (D. Vt. Dec. 13, 2010) (same).

Merchant Trade Groups' motion is presumptively timely because no class has yet been certified and they are seeking to intervene for the limited purpose of objecting to the Equitable Relief Plaintiffs' class certification motion, which was filed just three months ago. Merchant Trade Groups have filed this motion by the Court-ordered deadline for opposition. Merchant Trade Groups are seeking to intervene and object at the first opportunity after they were included in the class the Equitable Relief Plaintiffs have asked this Court to certify.

Moreover, the intervention will not prejudice the parties. "When a case is in its early stages, a motion to intervene is timely." *Rivera v. N. Y. City Hous. Auth.*, No. 94 Civ. 4366, 1995 WL 375912, at *3 (S.D.N.Y. June 23, 1995). Although this litigation has been ongoing for many years, the Court's consideration of the propriety of Equitable Relief Plaintiffs' proposed class has only just begun. Merchant Trade Groups' proposed intervention is limited to making a timely objection to class certification to be considered alongside any other objections. Their intervention will neither unduly delay the proceedings nor prejudice the parties. *See Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996) ("Applying [the Supreme Court's] flexible standard [set forth in *Pitney Bowes*], the Court finds that the motions to intervene are timely" where they were "for the limited purpose of objecting" to the court's decision and "were filed within ten days of the court's decision.").

By contrast, Merchant Trade Groups face substantial risk of prejudice should their motion be denied. The whole purpose of their intervention is to object, as absent class members, to a class certification that could force them to give up claims through final judgment or settlement. If the Court denies Merchant Trade Groups' motion to intervene and therefore to object to class certification, Merchant Trade Groups could be substantially harmed by a class action judgment in which they were not adequately represented by Equitable Relief Plaintiffs and had no opportunity to ensure their voice is heard.

Given the early stages of the Court's consideration of class certification, the lack of prejudice to the parties should the motion be granted, and the strong prejudice to Merchant Trade Groups should it be denied, the factors weigh in favor of a finding of timeliness.

### B. Merchant Trade Groups Have an Interest in the Proceedings, and the Disposition of the Present Case Could Impede Their Interests

Merchant Trade Groups satisfy the second and third requirements of Rule 24(a) because they have an interest in the proceedings and "disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)).

As detailed above, Merchant Trade Groups have consistently become involved in this multidistrict litigation at every point where plaintiffs have attempted to certify a class that would affect—and likely impede—their own interests as well as those of the merchant community more broadly. Merchant Trade Groups and their members are expressly within the mandatory class definition as proposed by Equitable Relief Plaintiffs because they accept Visa and Mastercard. Thus, if the class is certified as requested, Merchant Trade Groups' interests will inevitably be affected by the outcome of this litigation. And for reasons explained below, Equitable Relief Plaintiffs do not adequately represent Merchant Trade Groups' interests. *See Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 331–33 (5th Cir. 1982) (remanding denial of intervention as of right in a Rule 23(b)(2) action because, "[f]rom proceedings in this Court, it is clear that the [putative class plaintiffs], through opposing the motion of intervention and subsequent appeal, are not aligned with the [intervenor-] plaintiffs").

### C. The Equitable Relief Plaintiffs Do Not Adequately Represent Merchant Trade Groups' Interests

As to the final requirement, Merchant Trade Groups can make the "minimal" showing that "representation" by the Equitable Relief Plaintiffs "*may* be inadequate." *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972) (emphasis added) (internal quotation marks omitted). To meet this requirement, "a proposed intervenor's interests cannot be 'identical' to those of other parties[] and cannot be adequately represented by another party." *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 509 (S.D.N.Y. 2015) (cleaned up).

"Members of a class have a right to intervene if their interests are not adequately represented by existing parties." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (in dicta, quoting 5 A. Conte & H. Newberg, Class Actions § 16:7, p. 154 (4th ed. 2002) (alterations omitted)). The Advisory Committee's comments to Rule 24(a) also make clear that intervention as of right is meant to be available to absent putative class members whose rights and remedies may be affected by the outcome of a class action:

> A class member who claims that his "representative" does not adequately represent him, and is able to establish that proposition with sufficient probability, should not be put to the risk of having a judgment entered in the action which by its terms extends to him, and be obliged to test the validity of the judgment as applied to his interest by a later collateral attack. Rather he should, as a general rule, be entitled to intervene in the action.

Fed. R. Civ. P. 24(a)(2) advisory committee's note to 1966 amendment. Second Circuit courts have, accordingly, recognized that absent class members have a right to intervene where their interests are not adequately represented by the named plaintiffs. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013) (finding that a putative class member had a right to intervene in a settlement class in order to obtain a payment where "the other members of the class would likely prefer to exclude [intervenor] since that would increase its payout"); *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (granting intervention where named plaintiff could not " adequately represent the interests of the proposed class").

Even if the Court believed the Equitable Relief Plaintiffs established adequacy of representation under Rule 23(a)(4), intervenors could still establish the representation was inadequate under Rule 24, because a "lesser showing" is required under Rule 24. *See* 3 Newberg on Class Actions § 9:35 (5th ed.) ("To accomplish" the advisory committee's goal of ensuring a putative class member is not put in the position of testing a judgment later by collateral attack,

"an intervenor must be able to intervene on a lesser showing of adequacy than that demanded by Rule 23."). In *Woolen v. Surtran Taxicabs, Inc.*, the Fifth Circuit reversed, finding that Rule 23(b)(2) absent class members' intervention may be proper because the named plaintiffs were "not aligned" with the proposed intervenors—the plaintiffs being primarily concerned with injunctive relief and the proposed intervenors being primarily concerned with damages. 684 F.2d at 328, 331–33. The Fifth Circuit explained that permitting intervention did not require disturbing the certification of the class, because "adequacy of representation" under Rule 23(a)(4) is not "necessarily equivalent to the adequacy of representation contemplated by Rule 24." *Id.*

In a case, as here, where a putative class member seeks to intervene in an action where the named plaintiffs are seeking to certify a mandatory class without opt-out rights, the right to intervene is especially important. Newberg, a noted class action treatise, observes that permitting absent class members to intervene in order to oppose class certification "is particularly important in non-opt-out class actions brought under Rule 23(b)(1) and Rule 23(b)(2) because absent class members do not have an exit option." 3 Newberg on Class Actions § 9:35 (5th ed.). Were the Equitable Relief Plaintiffs' class certification motion granted, the Merchant Trade Groups would be presumptively bound by a future judgment or settlement. It is disputed whether an absent class member has the right to intervene in *Rule 23(b)(3)* certifications where such an objecting class member could always opt out and bring its own lawsuit;[3] that an

[3] *Compare* 3 Newberg on Class Actions § 9:34 (5th ed.) (decrying as fallacious the claim that intervention is unnecessary where the proposed intervenor can opt out as "it would mean a class member could never intervene in a (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24 explicitly envision intervention as a means of securing adequacy of representation") *with Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (denying a motion to intervene in a Rule 23(b)(3) class action because "any class members who believe that their interests will not be fully protected by the proposed

opt-out right in the (b)(3) context casts doubt on the ability of an absent class member to intervene only highlights that where, as here, a class member would have no escape if the proposed class were certified, intervention is even further warranted. Because the Equitable Relief Plaintiffs seek a Rule 23(b)(2) class where members cannot opt out, class members' interests are necessarily impacted by any settlement or judgment that ultimately binds the class, and a court should find that they can intervene as of right under Rule 24(a).

The Equitable Relief Plaintiffs do not adequately represent Merchant Trade Groups' litigation goals. At bottom, the Merchant Trade Groups believe that Defendants' core anticompetitive practices must be eliminated—not tinkered with on the margins—and that every merchant—economic actors each, many with their own counsel—must be permitted to determine whether to be represented by the Equitable Relief Plaintiffs and their counsel or whether to exclude itself from the class. Indeed, Merchant Trade Groups see no value to merchants (but ample value to Defendants) in binding all merchants to a mandatory class—yet Equitable Relief Plaintiffs have so sought. Similarly, Merchant Trade Groups see no basis to include future merchants in the class—yet Equitable Relief Plaintiffs have so sought, and without explanation.

The Merchant Trade Groups are also concerned (as detailed in the accompanying brief, Greenberger Decl. Ex. 1) that Equitable Relief Plaintiffs are focusing on surcharging relief instead of the relief the Merchant Trade Groups have repeatedly and consistently made clear is essential to remedying Defendants' entrenched anti-trust violations: removing the Honor-all-Cards and Default Interchange rule. *See, e.g.*, Greenberger Decl. Ex. 4 (Br. For Objectors-Appellants, *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No.

settlement will have the opportunity to opt out of the settlement and pursue their own separate claims").

12-4671, at 3 (2d Cir. June 16, 2014), Dkt. 55); Greenberger Decl. Ex. 2 (Obj. of Retail Industry Leaders Association to Final Approval of the Settlement, Dkt. 2469); Greenberger Decl. Ex. 3 (National Retail Federation Statement of Obj. to Final Approval of the Proposed Rule 23(b)(2) Agreement, Dkt. 2538). Equitable Relief Plaintiffs are very small businesses in only a handful of states who seek to certify a mandatory class that includes future merchants. *See* Equitable Relief Class Action Compl. at 3, 11–12, Dkt. 6892 (sealed), Dkt. 6910 (redacted) (describing Equitable Relief Plaintiffs as several small merchants located in only four states). By contrast, Merchant Trade Groups' views on the critical importance of meaningful equitable relief are not only based on their own experience as class members but are augmented by the insights they have obtained from the millions of large and small merchants nationwide that are their members. Despite Merchant Trade Groups' access to a wealth of industry knowledge from their members, the Equitable Relief Plaintiffs have refused to engage with the Merchant Trade Groups since spring 2019, notwithstanding repeated requests and the fact that Equitable Relief Counsel has stated that they have been engaged in settlement discussion with Defendants during that period of time. Greenberger Decl. ¶¶ 16–21; Dkt. 7281, 8009.

Because Equitable Relief Plaintiffs cannot adequately represent Merchant Trade Groups due to their differing claims, injuries, and apparent relief priorities, Merchant Trade Groups should be allowed to intervene as of right under Rule 24(a).

## II. AT A MINIMUM, MERCHANT TRADE GROUPS SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(B)

At a minimum, this Court should allow Merchant Trade Groups to intervene under the permissive standard of Rule 24(b), which allows "anyone" who "has a claim . . . that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b). "A grant of permissive intervention is soundly within a district court's discretion."

*Endress v. Gentiva Health Servs., Inc.*, 276 F.R.D. 62, 63 (E.D.N.Y. 2011) (permitting absent class member to intervene where the class member shared claims with the class plaintiff and intervention would not unduly delay proceedings). To grant Rule 24(b) intervention, a court need only find (1) that intervenors have "a claim or defense that shares with the main action a common question of law or fact," and (2) that intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b); *see also Pitney Bowes, Inc.*, 25 F.3d at 73 ("The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" (quoting Fed. R. Civ. P. 24(b)(3)).

Courts have permitted absent class members to intervene at least permissively, if not as of right. *See, e.g.*, *Copeland*, 141 F.R.D. at 14 (granting permissive intervention where intervenor's claims "are virtually identical" to plaintiff's); *Brown*, 2010 WL 5141783, at *11 ("Regardless of whether [intervenor] may intervene as of right, Rule 24(b)(1)(B) allows for permissive intervention by anyone who 'has a claim or defense that shares with the main action a common question of law or fact.'").

Where class members have sought intervention for the specific purpose of opposing a motion to certify a class, courts have also repeatedly granted the request, at least permissively if not as of right, where there is a threat that the class action could harm absent class members' interests—an approach the Second Circuit has endorsed. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 521 (2d Cir. 2014) (rejecting defendants' claim that remedy would harm some class members because "not a single member of the certified class has attempted to intervene in order to object either to the class certification or to the relief ordered by the court," suggesting that such intervention would be permissible). For example, in *In re Lendingclub*

*Securities Litigation*, shareholder plaintiffs in a state class action were permitted to intervene in a parallel federal class action to oppose class certification, filing the opposition to class certification as an attachment to their motion to intervene. 282 F. Supp. 3d 1171, 1177 (N.D. Cal. 2017). The court agreed that because those shareholders (putative class members) preferred to have their claims resolved in the state class action, they could be affected by a certification in the federal case and thus were entitled to intervene. *Id.* In a similar case, another court permitted putative class member shareholders to intervene because they were pursuing state court actions that "share[d] multiple common questions of law or fact with this action" and sought to object to putative class plaintiffs' adequacy and typicality. *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 215, 229 (C.D. Cal. 2019) (internal alterations omitted). Another court emphasized the importance of considering the intervenors' concerns about class certification: "coming from members of the proposed class, these arguments must be considered in the decision on certification." *Schnorbach v. Fuqua*, 70 F.R.D. 424, 431 (S.D. Ga. 1975). The courts in these cases did not undertake any analysis under Rule 24(a), likely finding such analysis unnecessary since class member intervention was at least proper under Rule 24(b).

As already discussed herein, Merchant Trade Groups' interests and future claims and remedies are threatened by Equitable Relief Plaintiffs' proposed class. For these reasons, even if the Court does not grant their motion to intervene as of right under Rule 24(a), it should at least permit Merchant Trade Groups to intervene under Rule 24(b), for purposes of opposing class certification as defined by Equitable Relief Plaintiffs.

## III. MERCHANT TRADE GROUPS REQUEST PERMISSION TO INTERVENE WITHOUT ATTACHING INTERVENOR COMPLAINT

Because Merchant Trade Groups have made clear that they seek intervention for the limited purpose of opposing class certification, and they do not seek to bring their own

claims against Defendants at this time, they ask the Court for permission to intervene without attaching any intervenor complaint.

While Rule 24(c) states that proposed intervenors should include a proposed pleading, courts have dispensed with this requirement where movant's position is "apparent from other filings" and there is no prejudice, because "Rule 24(c) permits a degree of flexibility with technical requirements." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, No. CV 12-1633 JMA AKT, 2015 WL 777248, at *17 (E.D.N.Y. Feb. 13, 2015), *report and recommendation adopted*, No. 12-cv-1633 JMA AKT, 2015 WL 1345814 (E.D.N.Y. Mar. 25, 2015) (quoting *Bano v. Union Carbide Corp.*, No. 99 Civ. 11329, 2005 WL 6800401, at *14 (S.D.N.Y. Aug. 12, 2005) (cleaned up), *adopted as modified by* 2005 WL 2464589 (S.D.N.Y. Oct.5, 2005)); *see also Blesch v. Holder*, 2012 WL 1965401, at *2 (E.D.N.Y. May 31, 2012) (granting motion to intervene where movant did not file a separate pleading because movant's "position . . . is clearly articulated in its motion papers"); *Golden Ins. Co. v. PCF State Restorations, Inc.*, No. 17-cv-5390 (BCM), 2018 WL 10593630, at *8 (S.D.N.Y. May 11, 2018) (compliance with Rule 24(c) unnecessary because plaintiff had "adequate notice" of intervenor's position "from the arguments raised in [intervenor]'s moving papers and briefs").

Courts have specifically permitted class members to intervene without filing a pleading in cases where, as here, class members sought to intervene for the limited purposes of objecting to class certification. *See, e.g.*, *In re Snap Inc. Sec. Litig.*, 2:17-cv-03679-SVW-AGR (C.D. Cal. July 8, 2019), Dkt. 285, 324 (court granted motion to intervene to object to class certification without filing intervenor complaint); *In re Lendingclub Sec. Litig.*, 3:16-cv-02627-WHA (N.D. Cal. Sept. 21, 2017), Dkt. 221, 252 (same).

Merchant Trade Groups therefore ask this Court to use its discretion to permit intervention for this limited purpose without the filing of any additional pleading.

**CONCLUSION**

Merchant Trade Groups' claims and interests are directly implicated by the class proposed by Equitable Relief Plaintiffs. Merchant Trade Groups therefore seek to intervene for the limited purpose of opposing class certification as defined by Equitable Relief Plaintiffs. Because they have satisfied the requirements to intervene as of right under Rule 24(a), and at the very least have met the standard for permissive intervention under Rule 24(b), Merchant Trade Groups' motion to intervene should be granted for this limited purpose.

Dated: March 26, 2021
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: *\/s/Debra L. Greenberger*

Debra L. Greenberger
Noel R. León

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
dgreenberger@ecbawm.com
nleon@ecbawm.com

*Attorneys for Merchant Trade Groups*