UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY'S CUT RATE STORES INC., et al.<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED, et al.<br>Defendants. | MDL No. 1720<br><br>Docket No. 05-md-01720-MKB-VMS |

**WALMART'S REPLY IN SUPPORT
OF ITS MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.    The ERPs Will Not Adequately Represent Walmart's Interests and Are Not Entitled to a Presumption of Adequacy. .................................................................................................. 2

    A.    Walmart's Arguments Are Neither Speculative Nor Premature. ..................................... 5

    B.    The ERPs' Conflicts of Interest Preclude Any Finding of Adequacy .............................. 7

II.    Walmart Must Intervene to Protect Its Interests and Cannot Rely on the DAPs. ................... 8

III.    Walmart's Motion to Intervene Is Timely. ............................................................................. 9

IV.    Permissive Intervention Is Warranted Because There Is No Risk of Prejudice and Walmart's Class Certification Challenge Is Not Redundant. ............................................. 10

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allco Fin. Ltd. v. Etsy*,
  300 F.R.D. 83 (D. Conn. 2014) ................................................................................................ 9

*Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  297 F.R.D. 90 (S.D.N.Y. 2013) ................................................................................................ 4

*Butler et al. v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) .................................................................................................. 7, 8

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................................................. 10

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) .................................................................................................. 4, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) .............................................................................................. 4, 6, 8

*Kane Cty., Utah v. U.S.*,
  928 F.3d 877 (10th Cir. 2019) ................................................................................................ 10

*Martens v. Thomann*,
  273 F.3d 159 ......................................................................................................................... 4, 5

*S.E.C. v. Credit Bancorp, Ltd.*,
  2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000) ......................................................................... 9

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) ..................................................................................................... 9

**Rules**

Fed. R. Civ. P. 24(a)(2) .................................................................................................... 2, 4, 7
Fed. R. Civ. P. 24(b) ............................................................................................................... 2
Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................... 10

# INTRODUCTION

Walmart is a national retailer with locations in every state, a major presence both on-line and in brick and mortar, and hundreds of billions in annual net sales. It has moved to intervene in this case brought by the Equitable Relief Plaintiffs ("ERPs"). The ERPs are a collection of small, local merchants. The ERPs have filed a motion to certify a no-opt-out class action seeking to represent all merchants (including Walmart) in the United States, regardless of whether those other merchants wish to participate in this case and regardless of whether the other merchants value the same form of relief sought by the ERPs.

Defendants have not objected to Walmart's motion to intervene. The ERPs, however, oppose Walmart's intervention—and their response to the motion demonstrates their disregard for the interests of the largest member of their purported class. The ERPs first assert (counterfactually) that their interests are aligned with Walmart's, but then complain that Walmart's intervention would cause distraction and delay, despite this alleged alignment of interests. In truth, a clear conflict exists. This conflict, in turn, creates incentives for the ERPs to develop legal theories and a settlement strategy that will harm Walmart, not benefit it.

As discussed below, the conflict is reflected in the ERPs' steadfast pursuit of an injunction barring Defendants from imposing "no-surcharge" rules. Such "relief" would not, by itself, benefit Walmart. Walmart has no present interest in surcharging its customers. At the same time, to the nominal extent the ERPs have revealed their intentions to absent class members, the ERPs have shown limited interest in eliminating Defendants' "Honor All Cards" rules. In contrast, Walmart has a firm, long-standing interest in ending those rules (and the other anticompetitive practices of Defendants). As a result of these conflicts, the ERPs have an incentive to bargain *for* relief that does not benefit Walmart (the right to surcharge) and bargain *away* relief Walmart does seek

1

(elimination of "Honor all Cards" rules)—and in the process attempt to bind Walmart to a broad, prospective release that benefits Defendants, not consumers.

The ERPs also assert that Walmart's interests can be protected by the Direct Action Plaintiffs ("DAPs"), who have opted out of the money damages class action. In this case involving claims for equitable relief, the DAPs emphasize that they have pending, material claims for money damages against Defendants. Pursuit of these money damages is a proper emphasis of the DAPs' litigation strategy. These monetary claims are also part of the basis for the DAPs to seek opt-out rights from the injunctive relief class. Walmart is in a different posture from the DAPs. It has settled some of its past claims against Defendants. Walmart also does not currently seek money damages, but it does have a critical interest in its ability to opt out of a class action that threatens to undermine its prior agreements with Defendants and that will attempt to bind it to terms that do not benefit Walmart and indeed might harm it. Walmart would exclude itself from the ERPs' proposed class **today** if it had the right to do so. It should be allowed to intervene.

## ARGUMENT

Walmart should be permitted to intervene as a matter of right under Federal Rule 24(a)(2) because the ERPs will not adequately represent its interests and intervention is necessary to protect its interests. Alternatively, the Court should permit Walmart to intervene under Rule 24(b).

### I. The ERPs Will Not Adequately Represent Walmart's Interests and Are Not Entitled to a Presumption of Adequacy.

The ERPs' contention that they represent Walmart's interests in this case is without merit. The conflict manifests itself in a dispute between Walmart and the ERPs over what forms of injunctive relief are most valuable to merchants. The ERPs do not meaningfully refute the existence of this conflict. Nor do they dispute that this conflict creates differing incentives between themselves and Walmart about what legal theories should be developed in litigation or pursued in

2

settlement. Nor do the ERPs deny that they seek to bind Walmart to terms that may be different from (and less beneficial than) terms Walmart can negotiate or settle on its own with Defendants.

The conflict centers on relief related to "no surcharge" and "Honor All Cards" rules. The ERPs *do* value the right to surcharge their customers. Mem. in Support of Class Cert. at 41 (calling such relief "profound"). Walmart *does not* value this right in a similar way. *See* Cook Decl. [Doc. 2644] ¶ 39; Cook Dep. Tr. at 146:12-20. The ERPs *do not* value elimination of "Honor All Cards" as a primary objective. Brief [Doc. 6695] at 6 (explaining limited nature of this relief the ERPs seek). Walmart *does* value the elimination of those anti-competitive rules.

The conflict also manifests in the pursuit of relief involving direct regulation of the rates of interchange fees charged by Defendants. The ERPs seek to use this class action to impose uniform, binding rules regulating these rates. *See* Tr. of Status Conf. [Doc. 7331] at 5 (Dec. 6, 2018) (ERP counsel: "we do intend at trial to request or we may well request at trial a temporary rate cap on interchange fees going forward"). Walmart, in contrast, has a strong interest in negotiating its own interchange rates with Defendants, either in business negotiations or settlement. Walmart is uniquely positioned and motivated to drive interchange fees lower to pass those savings along to customers. The ERPs and their lawyers do not have the same incentives. Walmart would be harmed if the ERPs obtain an injunction that Defendants could then use to tell Walmart that it can no longer negotiate its own terms, or one that eviscerated previous agreements.

In short, a conflict exists on the appropriate approach to take in litigation or in any settlement. A conflict also exists on whether it is possible for the ERPs to be a representative of a retailer like Walmart, a large, publicly-traded company whose operations are so different from those of the ERPs. This conflict will play out in litigation, as the ERPs develop evidence to support

3

the granting of relief they value at the expense of relief they do not.  Were there no conflict, surely the ERPs would welcome Walmart's participation in this case.

The conflict will re-emerge in settlement negotiations, when the ERPs are incentivized to "trade" elimination of "no-surcharge rules" for the preservation of the "Honor All Cards" rules—all while granting (in a no-opt-out settlement) a broad, prospective release that would bar Walmart from protecting its own interests.  This conflict of interest justifies intervention, as well as the denial of class certification (or at least the provision of opt-out rights), because it defeats adequacy of representation.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238-39 (2d Cir. 2016); *id.* at 234 ("Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order somehow to reach a settlement."); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011) (fundamental conflict among class subgroups precluded class certification where "[t]he selling out of one category of claim for another [was] not improbable"); *Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013) (absent class member permitted to intervene in class action under Rule 24(a)(2) where other class members likely preferred to exclude it from previously approved settlement, and thus it "lack[ed] adequate representation among the parties to the action").

The ERPs suggest that Walmart and the other intervenors can be excluded here because "the class action procedures set forth in Rule 23 are designed to protect absent class members." Opp. at 2.  The ERPs and their counsel seek to stand in the relationship of fiduciaries to Walmart. *See Martens v. Thomann*, 273 F.3d 159, 173 n. 10 (2d Cir. 2001) (class representatives owe fiduciary duties to the other members of their class).  The ERPs and Walmart know that Walmart

4

does not want the relief the ERPs seek – and certainly not at the expense of a granting a release that would prevent Walmart from protecting itself in litigation or negotiation with Defendants. The ERPs should be protecting Walmart's interests, agreeing to intervention and supporting the request for opt-out rights for those merchants who do not benefit from this case. Instead, the ERPs want to force Walmart into a litigation and settlement strategy it does not want to pursue, so that they can offer a release of Walmart's claims to Defendants. A true fiduciary would not undertake such a course of action. Nor is it consistent with protecting Walmart's due process rights.

### A. Walmart's Arguments Are Neither Speculative Nor Premature.

#### 1. The ERPs' Approach to Equitable Relief is Known.

The ERPs assert that Walmart is speculating about their intentions. Yet the ERPs have made no secret that they seek only limited relief regarding Defendants' "Honor All Cards" rules. *See* Brief [Doc. 6695] at 6 (stating ERPs' counsel's "preliminary view . . . that the HAC Rule should be made inoperable only in states that prohibit surcharging," and stressing that "it is not obvious why the HAC Rule—and its pro-consumer aspects—should be eliminated in states that permit surcharging"). Nor have they hidden that they seek to eliminate "no-surcharge" rules. *See id.*; Mem. in Support of Class Cert. at 41 ("The effect of removing the No-Surcharge Rule would be profound."). Nor have they denied that they seek to impose their own interchange fee rates. *See* Tr. of Status Conf. [Doc. 7331] at 5 (Dec. 6, 2018). Nor have they hidden their goal of having a no-opt-out-class that would result in them giving Defendants a release on behalf of Walmart. None of these prior statements has been disavowed. It is not speculation for Walmart to say the ERPs value relief Walmart does not and do not value relief that Walmart seeks.

It is also not speculation that the ERPs and their counsel plan to enter settlement negotiations. *See* Letters [Doc. 7281, 8009] (noting ERPs' settlement discussions); Leffler Rpt.

5

¶¶ 65-79 (analyzing "the possibility of settlement"). Their incentives in those negotiations are different from those of Walmart due to the conflict. It is not speculative to say that settlement negotiations involve trade-offs. Here that trade-off will be to abandon Walmart's interest in eliminating "Honor All Cards" and other rules to get the right to surcharge consumers. Similarly, the ERPs seem to want to require a prescriptive approach to interchange rates that might prejudice Walmart's ability to obtain better terms, and savings for its customers. Nor is it speculative to expect that the ERPs will offer a settlement that prohibits opt-outs and grant a broad, prospective release that Defendants no doubt would contend precludes Walmart from seeking different terms. The parties' hard experience shows that these conflicts will emerge. *See In re Payment Card*, 827 F.3d at 238-39.

The ERPs are correct to say that Walmart lacks full access to information that may reveal more regarding the ERPs' strategy. Walmart has not been granted access to "highly confidential" expert reports and exhibits in this case. The conflict of interest will be more apparent from those materials, which Walmart will seek permission to review under the protective order once intervention is granted. Indeed, if those materials showed an alignment of interests between the ERPs and Walmart, the ERPs no doubt would have cited those materials in its opposition. In any event, the public statements by the ERPs (and their refusal to disavow them later) are sufficient to show the clear conflict of interest.

### 2. Walmart's Motion is Not Premature.

Though they provide no evidence that Walmart has misunderstood their litigation and settlement strategy, the ERPs contend that Walmart's arguments are premature. They want to relegate Walmart to the position of objector, left to challenge any class-wide settlement once that settlement has been negotiated. As to a litigated judgment, they assert that the Court will decide

6

appropriate relief, presumably after a trial resolved with no input from Walmart. These arguments are without merit. Having Walmart and the other intervenors before the Court as class certification is decided would assist the Court. As to Walmart, it makes no sense to have a major class member who knows it will eventually object and seek opt-out rights sit on the sidelines while the certification proceedings progress. (Indeed, Walmart would opt out immediately if that right were granted.) Given that the Court will ultimately need to evaluate the fairness of a settlement or injunctive relief, intervention at an earlier stage will be more beneficial than a later objection.

### B. The ERPs' Conflicts of Interest Preclude Any Finding of Adequacy.

The ERPs argue that their adequacy as representatives of Walmart and other absent class members must be presumed. They say they seek the same ultimate objective as Walmart (challenging network rules affecting all merchants). They dismiss Walmart's points as mere disagreements over litigation strategy and "relief priorities." Opp. at 12-13. These arguments fail because they ignore the ERPs' clear conflicts of interest described above. If Walmart and the ERPs had general agreement on the injunctive relief pursued in the case, Walmart would not be pursuing this motion. Nor would the ERPs be opposing intervention—they would be inviting the largest member of their class to assist in the pursuit of joint objectives.

A movant can satisfy Rule 24(a)(2) with only a minimal showing that an existing party does not adequately represent its interests, unless the movant and existing party have the "same ultimate objective" and an "identity of interest"—in which case the existing party enjoys a rebuttable presumption of adequacy. *See Butler et al. v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001). The ERPs can only claim to have the same "ultimate objective" as Walmart by defining that objective at such a high level as to render it meaningless. While the ERPs and Walmart both oppose network rules, they are not trying to overturn the *same* rules, or to achieve results that even

7

resemble each other in the slightest. The ERPs seek a settlement that would spare Defendants' "Honor All Cards" rules in exchange for the ability to surcharge. Walmart, on the other hand, wants to roll back the "Honor All Cards" (and other) rules that the ERPs would leave in place. Walmart needs the right to negotiate its own agreements with Defendants, including with card-issuing banks, who currently have little incentive to negotiate with Walmart because of the HAC rules. The ERPs' false assertion that these opposing goals reflect the "same ultimate objective" proves that they do not have Walmart's interests at heart. The ERPs' desire for a settlement that trades away the relief that would benefit Walmart represents a fundamental conflict of interest, as is clear from the Second Circuit's prior ruling in this very MDL. *See In re Payment Card*, 827 F.3d at 234, 238-39; *see also In re Literary Works*, 654 F.3d at 252. Thus, no presumption of adequacy can apply here. *See also Butler*, 250 F.3d at 180 ("[E]vidence of . . . adversity of interest . . . may suffice to overcome the presumption of adequacy.").

## II. Walmart Must Intervene to Protect Its Interests and Cannot Rely on the DAPs.

The ERPs argue that Walmart need not intervene to protect its interests because the DAPs already make Walmart's arguments. But the DAPs and Walmart are differently situated. The DAPs, unlike Walmart, are currently pursuing separate money damages claims against Defendants; this gives them distinct arguments against class certification and in favor of opt-out rights. Accordingly, a ruling on class certification that favors the DAPs based on their pending monetary claims might not benefit Walmart. The Court could accept the DAPs' arguments and decide to provide *only them* with opt-out rights, which would leave Walmart stuck in the mandatory class. Walmart must intervene to show that *Walmart* should be granted opt-out rights or be excluded from the class, even without monetary claims, due to its interest in protecting its right to pursue its own negotiated terms or injunctive relief, and to protect prior agreements with

8

Defendants. Since Walmart is uniquely situated relative to other merchants in the MDL, it offers the Court an original perspective.

The ERPs argue that Walmart already had its opportunity to negotiate for the equitable relief it wanted when it settled with Visa in 2017. The settlement (and other separate acceptance agreements between Walmart and Defendants) proves why Walmart should *not* be forced into this class, which may seek to undermine prior agreements or deny Walmart the ability to negotiate new ones. In any event, the issue before the Court is not about what Walmart did or could have done in its private negotiations four years ago—a topic on which the ERPs have no insight. The issue before the Court is about what the ERPs and their lawyers—and Defendants (who do not oppose class certification)—want to **force** Walmart to do now, against its wishes and against its interests. Walmart must intervene to protect its ability to negotiate with Defendants from the effects of a class-wide settlement or judgment it does not want. It should be permitted to do so without Defendants using the result here as a bar to Walmart's efforts, or as a trump card in negotiations. Rather than undercutting intervention, Walmart's prior settlement with Visa shows that Walmart has unique interests different from those of *both* the ERPs and the DAPs.

### III. Walmart's Motion to Intervene Is Timely.

The ERPs attack Walmart's motion to intervene as untimely. But Walmart moved to intervene promptly upon learning that the ERPs sought certification of a class that would prejudice it. *See Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 86-88 (D. Conn. 2014) (motion to intervene filed three months after action commenced was not untimely under the circumstances); *S.E.C. v. Credit Bancorp, Ltd.*, 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (motion to intervene filed five months after movant learned of proceedings was not untimely under the circumstances). Walmart also attached its opposition to class certification to its motion to intervene.

9

It is unclear how intervention will delay the disposition of the case. The Court has not held argument on class certification, much less made a ruling. *See Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (timeliness presumed if motion to intervene is filed before class is certified); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1177 (N.D. Cal. 2017) (intervention to challenge class certification was timely when filed three weeks before hearing). In any event, the ERPs should not be heard to complain about delay. They moved for class certification years after filing and sought (or did not oppose) multiple extensions to the briefing schedule. *E.g.*, Letters [Doc. 8046, 8423]. They therefore cannot claim they will be prejudiced by Walmart's opposition to class certification. *See Kane Cty., Utah v. U.S.*, 928 F.3d 877, 891 (10th Cir. 2019) (motion to intervene was timely when the alleged prejudice was not caused by movant's delay in moving but by existing parties having to respond to briefs).

### IV. Permissive Intervention Is Warranted Because There Is No Risk of Prejudice and Walmart's Class Certification Challenge Is Not Redundant.

In the alternative, the Court should permit Walmart to intervene under Rule 24(b)(1)(B). Walmart's intervention will not prejudice the parties. Defendants do not oppose intervention. The ERPs, though, claim that Walmart's intervention and briefing on class certification "offer[s] nothing" different from that of the DAPs. Opp. at 14-15. As explained above, this is incorrect because Walmart and the DAPs are differently situated. Again, the DAPs (unlike Walmart) are pursuing money damages claims, and one of their major objectives is protecting those claims. Walmart's intervention will assist the Court by showing why merchants who are not pursuing monetary claims should be permitted to opt out of the mandatory class to protect their interests (e.g., their interests in eliminating "Honor All Cards" rules), or why no class can be certified.

### CONCLUSION

For these reasons, the Court should grant Walmart's motion to intervene.

Dated: April 30, 2021

Respectfully submitted,

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

/s/ Paul H. Schoeman
Paul H. Schoeman
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100 (phone)
(212) 715-8064 (facsimile)

**DOWD BENNETT LLP**

James F. Bennett
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314-889-7300 (phone)
314-863-2111 (facsimile)

*Attorneys for Walmart Inc.*