UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

BARRY'S CUT RATE STORES INC.; DDMB,
INC. d/b/a EMPORIUM ARCADE BAR; DDMB
2, LLC d/b/a EMPORIUM LOGAN SQUARE;
BOSS DENTAL CARE; RUNCENTRAL, LLC;
CMP CONSULTING SERV., INC.; TOWN
KITCHEN, LLC d/b/a TOWN KITCHEN &
BAR; GENERIC DEPOT 3, INC. d/b/a
PRESCRIPTION DEPOT; and PUREONE, LLC
d/b/a SALON PURE,

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

                        Plaintiffs,

                v.

VISA, INC.; MASTERCARD
INCORPORATED; MASTERCARD
INTERNATIONAL INCORPORATED; BANK
OF AMERICA, N.A.; BA MERCHANT
SERVICES LLC (f/k/a DEFENDANT
NATIONAL PROCESSING, INC.); BANK OF
AMERICA CORPORATION; BARCLAYS
BANK PLC; BARCLAYS BANK DELAWARE;
BARCLAYS FINANCIAL CORP.; CAPITAL
ONE BANK, (USA), N.A.; CAPITAL ONE
F.S.B.; CAPITAL ONE FINANCIAL
CORPORATION; CHASE BANK USA, N.A.;
CHASE MANHATTAN BANK USA, N.A.;
CHASE PAYMENTECH SOLUTIONS, LLC;
JPMORGAN CHASE BANK, N.A.; JPMORGAN
CHASE & CO.; CITIBANK (SOUTH
DAKOTA), N.A.; CITIBANK N.A.;
CITIGROUP, INC.; CITICORP; and WELLS
FARGO & COMPANY,

                        Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On May 4, 2021, the putative Rule 23(b)(2) injunctive relief class plaintiffs ("Plaintiffs" or "Rule 23(b)(2) Class Plaintiffs")[1] filed their fully briefed motion for certification of a Rule 23(b)(2) class in this multi-district litigation ("MDL"). (Pls.' Mot. for Class Certification, Docket Entry No. 8444.) The National Retail Federation (the "NRF") and the Retail Industry Leaders Association (the "RILA") (together, the "Merchant Trade Groups") and Walmart, Inc., (collectively, the "Proposed Intervenors"), move to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure for the limited purpose of opposing the Plaintiffs' motion for class certification. (Walmart, Inc. Mot. to Intervene ("Walmart Mot."), Docket Entry No. 8463; Walmart, Inc. Mem. in Supp. of Walmart Mot. ("Walmart Mem."), Docket Entry No. 8464; Merchant Trade Groups Mot. to Intervene ("Merchant Trade Groups Mot."), Docket Entry No. 8466; Merchant Trade Groups Mem. in Supp. of Merchant Trade Groups Mot. ("Merchant Trade Groups Mem."), Docket Entry No. 8467.)

For the reasons set forth below, the Court grants the motions for permissive intervention.

### I. Background

The Court assumes familiarity with the facts and extensive procedural history as set forth in its prior decisions. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6888488, (E.D.N.Y. Dec. 16, 2019); *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720, 2019 WL

---

[1] Documents and filings refer to the Rule 23(b)(2) action in a variety of ways. In the MDL, the Rule 23(b)(2) action is proceeding as *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720. In addition, the action is sometimes referred to as "*Barry's*" and the class is sometimes referred to as the "equitable relief class." For the purposes of consistency across opinions, the Court uses the terms "Rule 23(b)(2)" and "injunctive relief" to refer to the action, as opposed to "*Barry's*" and "equitable relief."

7584728 (E.D.N.Y. Nov. 20, 2019).  The Court therefore provides only a summary of the relevant facts and procedural history.

### a.    Plaintiffs' class certification motion

On May 4, 2021, Plaintiffs filed their fully briefed motion for certification of a Rule 23(b)(2) class in this multi-district litigation.  (Pls.' Mot. for Class Certification; Pls.' Mem. in Supp. of Pls.' Mot. for Class Certification ("Pls.' Mem."), Docket Entry No. 8446.)  Plaintiffs seek certification of a Rule 23(b)(2) class defined as:

> All persons, businesses, and other entities (referred to [therein] as "Merchants") that accept Visa and/or Mastercard Credit and/or Debit cards in the United States at any time during the period between December 18, 2020 and [eight] years after the date of entry of Final Judgment in this case.

(Pls.' Mem. 5.)  Plaintiffs request that the Court certify the class without permitting any opt-out rights.  (*Id.* at 6.)

The Direct Action Plaintiffs[2] oppose certification of a mandatory class, arguing that certifying a mandatory class would "threaten the individualized monetary claims of class members" who are pursuing damages claims should the injunctive relief class lose on liability issues, and would "confiscate" claims for injunctive relief and "turn them over to parties with different interests."  (Direct Action Pls.' Opp'n to Pls.' Mot. for Class Certification ("Direct Action Pls.' Class Certification Opp'n") 1–2, Docket Entry No. 8450.)  The Direct Action Plaintiffs further argue that Plaintiffs will "seek to place the commercial agreements of large

---

[2]  For purposes of this Memorandum and Order, "Direct Action Plaintiffs" collectively refers to the Target Plaintiffs, the 7-Eleven Plaintiffs, and Home Depot.  The Target Plaintiffs and 7-Eleven Plaintiffs in turn are comprised of many other merchants, as described in their respective complaints.  (*See* Target Pls.' Second Am. Compl., Docket Entry No. 7117; Sixth Am. Compl., *7-Eleven, Inc., v. Visa Inc.*, No. 13-CV-5746 (E.D.N.Y. Apr. 30, 2020), Docket Entry No. 183; *see also* Decl. of Jeffrey I. Shinder in Supp. of Direct Action Pls.' Class Certification Opp'n ¶ 3, Docket Entry No. 8451 (listing the Direct Action Plaintiffs).)

merchants (like the Direct Action Plaintiffs) with Defendants under ongoing scrutiny by the Court" which is adverse to the interests of large merchants. (*Id.* at 2.) The Direct Action Plaintiffs argue that the Court should provide an opt-out right should an injunctive relief class be certified. (*Id.* at 3.) The Grubhub Plaintiffs,[3] who opted out of the Rule 23(b)(3) settlement, also oppose certification of a mandatory class, arguing that certification of a mandatory class would hold them to the "same restrictions imposed on the entities that voluntarily accepted the Rule 23(b)(3) monetary settlement and its limitations on their right to seek injunctive relief." (Grubhub Pls.' Mem. in Opp'n to Pls.' Mot. for Class Certification ("Grubhub Pls.' Class Certification Opp'n") 1–2, Docket Entry No. 8453.) In addition, the Grubhub Plaintiffs argue that the differences between the large companies that make up the Grubhub Plaintiffs and the "small, single-location businesses that pay only a fraction of the interchange fees paid by the Grubhub Plaintiffs" which make up both the class representatives and the vast majority of the putative class give rise to different interests and therefore different remedies and relief. (*Id.*)

Defendants do not oppose class certification as Plaintiffs define it but argue that the Court "should not certify the Rule 23(b)(2) class and allow opt-outs or carve outs from the class, or exclude the future merchants from the class as the opponents of class certification . . . suggest." (Defs.' Reply Mem. to Opp'n to Pls.' Mot. for Class Certification ("Defs.' Class Certification Opp'n Reply") 1, Docket Entry No. 8460.)

### b. Merchant Trade Groups' involvement in the litigation

The Merchant Trade Groups state that they are nonprofit associations that have merchant members that "account for over $1.5 trillion in annual retail sales, millions of American jobs, and

---

[3] "Grubhub Plaintiffs" refers to the seven companies described in the Grubhub Plaintiffs' operative Complaint. (*See* Grubhub Pls.' Am. Compl. ¶ 1, Docket Entry No. 7906.)

more than 100,000 store locations nationwide." (Merchant Trade Groups Mem. 1.) The Merchant Trade Groups are putative class members because they "accept Visa and Mastercard branded cards as payment for a wide range of services, such as payment for membership dues, conference registrations, and a wide variety of other services that they provide." (*Id.*)

In 2013, the Merchant Trade Groups were among the objectors and opt-outs to the settlement for an injunctive relief class and a monetary damages relief class (the "2013 Settlement Agreement"),[4] which the Second Circuit vacated on June 30, 2016, and remanded to this Court. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 213, 223 (E.D.N.Y. 2013) ("*Interchange Fees I*"), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange Fees II*"). In 2014, the Merchant Trade Groups submitted one of the merchant briefs opposing the 2013 Settlement Agreement to the Second Circuit. (*See* Merchant Trade Groups Appellate Br., annexed to Greenberger Decl. as Ex. 4, Docket Entry No. 8468-4.)

After the Second Circuit's decision in 2016, the Merchant Trade Groups requested that the Court reconsider class representation and instead appoint independent counsel "who are willing to reconsider, and, as appropriate, deviate from[] prior counsel's (conflicted) decisions about prospective relief — such as the decision to seek certification of a mandatory (b)(2) class and the decision to focus on meaningless surcharging relief." (Merchant Trade Groups Mem. in Supp. Appointment of Kirby/Goldstein 1–2, annexed to Greenberger Decl. as Ex. 5, Docket Entry No. 8468-5.)

---

[4] (*See* RILA Obj. to 2013 Settlement Agreement, annexed to Decl. of Debra L. Greenberger in Supp. Merchant Trade Groups Mot. ("Greenberger Decl.") as Ex. 2, Docket Entry No. 8468-2; NRF Obj. to 2013 Settlement Agreement, annexed to Greenberger Decl. as Ex. 3, Docket Entry No. 8468-3.)

In December of 2019, the Court granted the motion for final approval of the settlement reached between Defendants and the Rule 23(b)(3) class (the "2019 Settlement Agreement"). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *2. The Merchant Trade Groups were among the 675 class members that opted out from the 2019 Settlement Agreement. (*See* Report of Exclusion Requests, annexed to Letter from Rule 23(b)(3) Class dated Nov. 26, 2019 as Ex. 1, Docket Entry No. 7796-2.) The Merchant Trade Groups are not pursuing any individual claims against Defendants. (Merchant Trade Groups Mem. 5.)

On March 26, 2021, the Merchant Trade Groups served their motion to intervene for the limited purpose of opposing the Rule 23(b)(2) Plaintiffs' motion for class certification, and the motion was fully briefed on May 4, 2021. (*See* Merchant Trade Groups Mot.) The Merchant Trade Groups state that beginning in mid-2017, "counsel and representatives from the Merchant Trade Groups began discussions with appointed [Rule 23(b)(2) Class] Counsel, who Merchant Trade Groups understood were appointed to represent all merchants in the class," to "share privileged information with their putative appointed counsel about their views regarding the appropriate certification of any Rule 23(b)(2) class and what equitable relief would be meaningful to the broad merchant community." (Merchant Trade Groups Mem. 5.) Member retail representatives from the Merchant Trade Groups held "multiple in-person meetings" with Rule 23(b)(2) Class Counsel[5] until April of 2019. (*Id.*) While the parties "contemplated another meeting in the summer of 2019," Merchant Trade Groups state that counsel for the Rule 23(b)(2) Class Plaintiffs stopped responding to Merchant Trade Groups' emails, calls, letters, and

---

[5] "Rule 23(b)(2) Class Counsel" refers to interim class counsel appointed for the putative Rule 23(b)(2) class. (*See* Mem. and Order dated Nov. 30, 2016, Docket Entry No. 6754.)

voicemails. (*Id.* at 5–6.) Merchant Trade Groups state that counsel for the Rule 23(b)(2) Class Plaintiffs are "uninterested in scheduling a further meeting" and that the two groups have not held any further meetings or discussions since April of 2019. (*Id.* at 6.) While the Merchant Trade Groups seek to represent their own interests, they state that "[their] interests are informed by their in-depth knowledge of the broader merchant community that constitutes Merchant Trade Groups' memberships." (*Id.* at 1.)

In support of their motion to intervene, the Merchant Trade Groups argue that the Rule 23(b)(2) Class Plaintiffs do not adequately represent them because the Merchant Trade Groups "believe that Defendants' core anticompetitive practices must be eliminated — not tinkered with on the margins — and that every merchant . . . must be permitted to determine whether to . . . exclude itself from the class." (*Id.* at 12.) In addition, the Merchant Trade Groups argue that the Rule 23(b)(2) Class Plaintiffs are focused on surcharging relief instead of removing the honor-all-cards and default interchange rules. (*Id.*)

Plaintiffs oppose the Merchant Trade Groups' motion. (*See* Pls.' Omnibus Mem. in Opp'n ("Pls.' Opp'n"), Docket Entry No. 8470.)

### c. Walmart's involvement in the litigation

Walmart is a "major retailer and a significant participant in the U.S. credit and debit card markets." (Walmart Mem. 1.) Walmart states that it has "long been active in lobbying efforts to reform the payments industry, and in particular the anticompetitive practices of Defendants." (*Id.* at 4.)

In 2013, Walmart opted out and objected to the 2013 Settlement Agreement. (Walmart Obj. to 2013 Settlement Agreement, Docket Entry No. 2644; Report of Exclusion Requests 93, annexed to Third Report of the Class Administrator as Ex. B, Docket Entry No. 6154-2.) In

2013, Visa "filed a declaratory judgment action against Walmart in this MDL" and in 2014, Walmart brought its own antitrust action against Visa, arguing that Visa employed anticompetitive practices such as the honor-all-cards rule to "acquire and maintain the market power necessary to charge Walmart supracompetitive fees." (Walmart Mem. 2–3; Compl., *Visa U.S.A. v. Wal-Mart Stores, Inc.*, No. 13-CV-3355 (E.D.N.Y. June 12, 2013), Docket Entry No. 1; Compl. ¶¶ 11, 44, 74, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, No. 14-CV-2318 (E.D.N.Y. Mar. 25, 2014), Docket Entry No. 1.) On November 3, 2017, Walmart and Visa fully settled all claims against each other and dismissed both cases. (*See* Walmart Stipulation and Order of Dismissal, Docket Entry No. 7120; Visa Stipulation and Order of Dismissal, Docket Entry No. 7121.) Walmart states that since dismissing its case against Visa, it has "remained engaged with this litigation in order to protect its interests" and attended a meeting on April 9, 2019, with other plaintiffs' counsel, including the Rule 23(b)(2) Class Counsel to discuss case strategy. (Walmart Mem. 3 n.6.) Walmart states that it "opted[] out of a subsequent proposed settlement for a Rule 23(b)(3) class." (*Id.* at 3 n.5.)

On March 26, 2021, Walmart filed the instant motion to intervene for the limited purpose of opposing the Rule 23(b)(2) Plaintiffs' motion for class certification, which was fully briefed on May 4, 2021. (Walmart Mot.) Walmart contends that the Rule 23(b)(2) Class Plaintiffs will "undermine Walmart's interests if a mandatory class is certified" and therefore Walmart must intervene. (Walmart Mem. 2.) In support, Walmart argues that the Rule 23(b)(2) Class Plaintiffs do not represent Walmart's interests because Plaintiffs "can be expected to pursue relief that is at best worthless, and more likely harmful, to Walmart, and to enter into a settlement that permits Defendants to continue their anticompetitive conduct and releases claims far into the future." (*Id.* at 3.) Walmart argues that it should not be "saddled with an injunction that justifies

Defendants in refusing to negotiate different arrangements, waive network rules, or agree to different interchange rates with larger and smaller merchants." (*Id.* at 3–4.) Walmart requests access to materials designated confidential and highly confidential by the protective order and seek an opportunity to supplement its objection based on those materials.[6] (*Id.* at 8 n.10.)

The Rule 23(b)(2) Plaintiffs oppose Walmart's motion. (*See* Pls.' Opp'n.)

## II. Discussion

### a. Standard of review

Rule 24(a) of the Federal Rules of Civil Procedure allows intervention as of right under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *see also Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 70 (2d Cir. 2020) (quoting Fed. R. Civ. P. 24(a)); *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (same). To establish intervention as of right pursuant to Rule 24(a)(2), an intervenor must show that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the

---

[6] The Merchant Trade Groups join in Walmart's request regarding access to confidential materials and supplemental briefing. (*See* Letter dated Apr. 5, Docket Entry No. 8423.) Plaintiffs state in their briefing that they did not provide access to documents covered by the protective order because Proposed Intervenors were not parties to the litigation, but should the Court grant Proposed Intervenors' motions, it will "immediately provide access to materials marked 'highly confidential.'" (*See* Pls.' Opp'n 10 n.6.)

applicant's interest is not adequately represented by the other parties." *XL Specialties Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)); *see also CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n*, 790 F. App'x 260, 262 (2d Cir. 2019) (quoting *MasterCard Int'l Inc.*, 471 F.3d at 389). "The '[f]ailure to satisfy any one of these [four] requirements is a sufficient ground to deny the application.'" *Penn-Star Ins. Co.*, 818 F. App'x at 70 (alterations in original) (emphasis omitted) (quoting *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006)); *Harris-Clemons v. Charly Trademarks Ltd.*, 751 F. App'x 83, 85 (2d Cir. 2018) ("If the party fails to satisfy any one of the factors, the application for intervention must be denied." (citing *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996))).

Rule 24(b) of the Federal Rules of Civil Procedure allows a court to exercise its discretion and permit intervention under certain circumstances. It provides in pertinent part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Penn-Star Ins. Co.*, 818 F. App'x at 70 (quoting Fed. R. Civ. P. 24(b)); *Griffin v. Sheeran*, 767 F. App'x 129, 133 (2d Cir. 2019) (same). "'In exercising its discretion, the court must consider 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties,' . . . the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

Permissive intervention is wholly within the court's discretion. *See Penn-Star Ins. Co.*, 818 F. App'x at 70 ("Rule 24(b) . . . provides for permissive intervention, at the discretion of the court . . . ."); *St. John's Univ., N.Y. v. Bolton*, 450 F. App'x 81, 84 (2d Cir. 2011) ("A district court has broad discretion under Rule 24(b) to determine whether to permit intervention . . . .").

### b. In weighing the relevant factors, the Court determines that Proposed Intervenors are not entitled to intervene as of right

#### i. Timeliness

Proposed Intervenors argue that their motion is timely because (1) no injunctive relief class has yet been certified and they filed their motions by the Court-ordered deadline for opposition to the Rule 23(b)(2) Plaintiffs' motion for class certification, (*see* Merchant Trade Groups Mem. 7; Walmart Mem. 7), (2) intervention will not prejudice the parties because the motions will not delay the proceedings and the Court's consideration of the propriety of an injunctive relief class just begun, (Merchant Trade Groups Mem. 8; Walmart Mem. 7), and (3) denying the intervention motion will prejudice Walmart by "inviting a significant threat to its interests," (Walmart Mem. 7), and the Merchant Trade Groups because certification of a mandatory class would "force them to give up claims through final judgment or settlement" resulting in "substantial[] harm[]" by a class action judgment in which they were not adequately represented . . . and had no opportunity to make sure their voice is heard," (Merchant Trade Groups Mem. 8).

Plaintiffs argue that Proposed Intervenors' motions are not timely because they did not seek to intervene until after the motion for class certification was served on December 18, 2020, and the motion is now fully briefed. (Pls.' Opp'n 5.) In response to the Merchant Trade Groups' citation to a Third Circuit case stating that there is a "presumption of timeliness" if a motion to intervene is filed before a class is certified, Plaintiffs argue that such a presumption has not been

adopted by the Second Circuit. (*Id.* at 5 n.2 (discussing *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016)).)

In assessing whether a motion to intervene is timely, the Court considers "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Frankel v. Cole*, 490 F. App'x 407, 408 (2d Cir. 2013) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). "The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *Penn-Star Ins. Co.*, 818 F. App'x at 70 (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986)); *see also CWCapital Cobalt Vr Ltd.*, 790 F. App'x at 263 ("We have ruled that a timeliness analysis in the intervention context should take the form of a balancing exercise, and we vest substantial discretion in the district court that is conducting that exercise . . . ." (quoting *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014))).

Proposed Intervenors' motions are timely.[7] First, Proposed Intervenors received notice that they were included in the putative class when Plaintiffs moved for class certification which motion was served on December 18, 2020, and filed on May 4, 2021. *See Doe #1 by Parent #1 v. N.Y.C. Dep't of Educ.*, No. 16-CV-1684, 2018 WL 3637962, at *7 (E.D.N.Y. July 31, 2018) (finding that the proposed intervenors who sought to intervene for the limited purpose of objecting to a proposed settlement had notice of their interest when the settlement became public because the proposed intervenors sought "to intervene only to object to the terms of the proposed

---

[7] Because the Court finds that the motions are timely, the Court does not address whether there is a presumption of timeliness.

12

settlement, not to participate in the litigation generally").  Proposed Intervenors moved to

intervene for the limited purpose of opposing Plaintiffs' motion for class certification on March

26, 2021, (*see* Merchant Trade Groups Mot.; Walmart Mot.) — a little over three months after

Plaintiffs first moved for class certification on December 18, 2020, but before the motion was

fully briefed on May 4, 2021.  *See In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 215 (C.D. Cal.

2019) (assessing timeliness of a motion to intervene to oppose class certification relative to when

the motion for class certification was filed).  In addition, Proposed Intervenors filed their motions

by the Court-ordered deadline for opposition to class certification.  (*See* Order dated Nov. 18,

2020 (setting the deadline for class certification opposition as March 26, 2021).)  Accordingly,

the three-month period between Plaintiffs' motion for class certification and Proposed

Intervenors' motions do not render them untimely.  *See Neversink Gen. Store v. Mowi USA, LLC*,

No. 20-CV-9293, 2021 WL 1930320, at *3 n.2 (S.D.N.Y. May 13, 2021) ("Intervenors' motion,

filed about four months after [the plaintiff] commenced this action and within weeks of the

proposed class settlement, is not untimely."); *In re Snap Inc. Sec. Litig.*, 334 F.R.D. at 215

(finding that moving to intervene three weeks after a motion for class certification was filed was

timely).

The second and third factors, on balance, also support a finding of timeliness.  While

Proposed Intervenors' three-month delay in filing their motions may result in some prejudice to

Plaintiffs, that prejudice does not weigh heavily against a finding of timeliness.  Intervention will

delay the resolution of the class certification motions to some degree because Proposed

Intervenors request an opportunity to supplement their briefing should their motions to intervene

be granted.  *See Molinari v. Bloomberg*, No. 08-CV-4539, 2009 WL 87576, at *4 (E.D.N.Y. Jan.

13, 2009) (finding that allowing intervention would result in undue delay to the proceedings and

stating that "allowing the [a]pplicant to intervene in this matter, which might well necessitate additional briefing and discovery, would undoubtedly delay my decision on the merits"); *cf. Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529, 2016 WL 845333, at *2 (S.D.N.Y. Mar. 2, 2016) (finding no prejudice when intervention "should necessitate minimal discovery or additional briefing" and will not delay adjudication of the pending motions while waiting for any briefing).  However, for the reasons stated below with respect to impairment, Proposed Intervenors, on the other hand, may suffer prejudice if their motion to intervene is denied.  *See Ball v. Kasich*, No. 16-CV-282, 2017 WL 3172778, at *9 (S.D. Ohio July 25, 2017) (finding that proposed intervenors may intervene because Rule 23(b)(2) "provides neither notice nor the ability for class members to opt-out").  The slight prejudice to the existing parties does not outweigh the potential prejudice to Proposed Intervenors should their motions be denied.  *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102–03 (D. Conn. 2007) (stating that while "[a]dditional parties always take additional time which may result in delay, this does not mean that intervention should be denied" and finding that intervention will not prejudice the parties and that "additional briefing and argument will only help to facilitate a speedy, fair and accurate resolution of the case"); *see also* 3 Newberg on Class Actions § 9:31 (5th ed.) ("Courts will generally assess only the prejudice to existing parties that derives from the timing of the application for intervention as the prejudice caused by intervention itself is irrelevant to the timeliness inquiry.").

The fourth factor — whether there are any unusual circumstances militating for or against a finding of timeliness — is neutral as neither Plaintiffs nor Proposed Intervenors identify any such circumstances, (*see* Merchant Trade Groups Mem.; Walmart Mem.; Pls.' Opp'n), and the Court is aware of none.  *See CWCapital Cobalt Vr Ltd.*, 790 F. App'x at 264 (holding that the

"unusual circumstance" factor "lends no further persuasive weight to [the proposed intervenor's] position" when there were no unusual circumstances identified); *Rudolph v. Hudsons Bay Co.*, No. 18-CV-8472, 2019 WL 1416986, at *3 (S.D.N.Y. Mar. 29, 2019) ("The proposed intervenors have not identified unusual circumstances to be weighed in a timeliness analysis . . . .").

Accordingly, because two of the three factors weigh in Proposed Intervenors' favor and the fourth factor is neutral, the Court finds their motions to be timely.

### ii. Proposed Intervenors' interest and impairment

Merchant Trade Groups argue that they have an interest in the proceedings because they would be included in the putative class and therefore certification of the class would "impede . . . their own interests as well as those of the merchant community more broadly." (Merchant Trade Groups Mem. 9.) In support, the Merchant Trade Groups contend that intervention as of right is "meant to be available to absent putative class members whose rights and remedies may be affected by the outcome of a class action." (*Id.* at 10.) Walmart argues that it has two interests: (1) an interest in "eliminating anticompetitive conduct that can cause it injury, and in particular it has an interest in rolling-back Defendants' [honor-all-cards] rules," and (2) in "negotiating with Defendants and using influence it has as a large merchant to try and secure the terms that most benefit Walmart and its customers." (Walmart Mem. 7–8.)

Plaintiffs do not dispute that Proposed Intervenors have an interest "relating to the subject of the action." (Pls.' Opp'n 4.) Plaintiffs argue that intervention is not necessary to protect the Proposed Intervenors' interests because they "offer nothing new or original in their motions" and "seek intervention for the limited purpose of echoing the arguments made by the Direct Action Plaintiffs" regarding opt-out rights. (*Id.* at 5–6.) In addition, Plaintiffs argue that Walmart

settled its case against the Visa Defendants in 2017 on a basis that it found satisfactory with the knowledge that "it could very well be included in a future Rule 23(b)(2) [c]lass." (*Id.* at 6.) In response to the Merchant Trade Groups' argument that it is particularly important for absent class members to be able to intervene in a Rule 23(b)(2) case, Plaintiffs argue that any concerns arising from the "lack of an 'exit option' for absent class members in a mandatory class" have already been raised by the Direct Action Plaintiffs' opposition to class certification and any additional briefing would be duplicative. (*Id.* at 14.) In addition, Plaintiffs argue that denial of the motions to intervene will not "impair or impede" their ability to protect their interests because their stated reasons for intervening to "oppos[e] class certification of a non-opt out class[] are being argued by [the] Direct Action Plaintiffs." (*Id.* at 8.)

An interest is cognizable under Rule 24(a)(2) if it is "direct, substantial, and legally protectable." *Bridgeport Guardians, Inc*, 602 F.3d at 473 (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "[A]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *St. John's Univ., N.Y*, 450 F. App'x at 83 (quoting *Wash. Elec. Coop., Inc.*, 992 F.2d at 97); *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 342 (E.D.N.Y. 2018) (same).

Proposed Intervenors have a cognizable interest in the proceedings as putative class members injured by Defendants' alleged anticompetitive conduct. *See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 295 (S.D.N.Y. 2018) ("[C]lass members who have similar claims as named plaintiffs generally qualify as having an interest under Rule 24." (citing *McBean v. City of New York*, No. 02-CV-5426, 2007 WL 473711, at *1 (S.D.N.Y. Feb. 13, 2007)); *see also Raquedan v. Centerplate of Del. Inc.*, 376 F. Supp. 3d 1038, 1041 (N.D. Cal.

2019) (stating that the proposed intervenor has a protectable interest in the case as a member of the class); *Ligas v. Maram*, No. 05-CV-4331, 2010 WL 1418583, at *6 (N.D. Ill. Apr. 7, 2010) (finding that the proposed intervenors had an interest in class definition when the proposed intervenors were putative class members and "waiting until the class action fairness hearing to entertain concerns regarding the class definition can be both burdensome and costly"); *cf. Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445, 2017 WL 3278926, at *18 (S.D.N.Y. Aug. 1, 2017) (finding the proposed intervenors' interest was "too remote to justify intervention" when "as the MDL [p]anel made clear in refusing to consolidate the actions, these cases raise different issues, have partially non-overlapping class definitions, and will require different discovery, thereby limiting the extent of the [proposed intervenors'] interest and the commonalities shared by these actions").

Proposed Intervenors' interest may be impaired if it is not allowed to intervene to oppose class certification because putative class members may not be allowed to opt out of the injunctive relief class. In the Rule 23(b)(3) class context, courts in the Second Circuit have consistently held that a party seeking to intervene does not meet the impairment requirement solely due to its status as an absent class member because Rule 23 has procedural safeguards designed to protect the absent class member's interest; however, courts reaching such a conclusion have frequently highlighted the proposed intervenors' ability to opt out of the litigation. *See Neversink Gen. Store*, 2021 WL 1930320, at *4 (stating that "[c]ourts in this Circuit . . . have routinely held that a party's status as an absent class member, standing alone, does not meet Rule 24(a)'s impairment requirement" and noting that "typically the safeguards provided by Rule 23 will — and indeed are specifically designed to — guard against the impairment of class members' interests"); *Calderon v. Clearview AI, Inc.*, No. 20-CV-1296,

2020 WL 2792979, at *6 (S.D.N.Y. May 29, 2020) (stating that "intervention is not needed for [the proposed intervenor] to protect his interest" because "[i]f a class of which he would otherwise be a member should be certified in an action not controlled by him, he is perfectly free to opt out and pursue his claim on his own in the court of his choice"); *Rudolph*, 2019 WL 1416986, at *3 ("The proposed intervenors assert that they have a clear interest in this action because they may be members of a potential class. But if the parties to the instant action endeavored to settle it on a class-wide basis, the proposed intervenors would have the right to opt out of the class. If they elected to stay in the class, they would have the right to object to the settlement." (citing *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012))); *Travis*, 284 F. Supp. 3d at 344–45 (stating that "if the [c]ourt were to certify a class in this action that includes proposed intervenors and their putative class, their rights would be deemed protected, and not impaired" because Rule 23 requires adequacy of representation and "[p]roposed intervenors and members of their putative class could also choose to opt out of any class that may be certified, . . . or, alternatively, enter an appearance through counsel" (citation omitted)); *Calibuso v. Bank of Am. Corp.*, No. 10-CV-1413, 2013 WL 5532631, at *2 (E.D.N.Y. Oct. 4, 2013) (dismissing class member's claim that her interest in opposing settlement would impaired absent intervention when she would "have an opportunity, vis-a-vis the settlement process," to object to the settlement or opt out).

While the Court is not aware of a case reaching the same conclusion in the context of a Rule 23(b)(2) class, class members in the putative class as defined by Plaintiffs would not be allowed to opt out of the litigation. (*See* Pls.' Mem. 5–6.) Without deciding whether the putative class would be afforded opt-out rights, the Court notes that Rule 23(b)(2) does not

require that a court provide opt-out rights to class members although some district courts have recognized that a court may decide to do so in its discretion. *See, e.g., Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 137 (E.D.N.Y. 2020) ("Although the [g]overnment is correct that Rule 23(b)(2) does not require district courts to give notice or the opportunity for class members to opt out, 'the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in . . . (b)(2) class actions.'" (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009))); *see also Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (stating that in a Rule 23(b)(2) class, "absent class members need not receive notice or an opportunity to opt out" (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011))). While they would have the opportunity to object to any settlement, Proposed Intervenors seek to intervene for the limited purpose of opposing class certification and the proposed class would already be defined at the settlement stage. Accordingly, the Court finds that Proposed Intervenors may have their interests impaired should they not be permitted to intervene. *See Royal Park Invs. SA/NV*, 356 F. Supp. 3d at 295 ("Class actions present a common example of cases in which an adverse judgment would impair the movant. When a class is certified or likely to be certified, absent class members who do not opt out are bound by any judgment in a class action, and they are therefore clearly at risk of impairment. . . . Of course, the risk of adverse judgment turns partly on whether class certification is likely and whether the movant is part of the proposed class." (citing *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950, 2015 WL 4619663, at *4 (S.D.N.Y. Aug. 3, 2015))); *cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 367 (D.D.C. 2001) ("[T]he [proposed intervenors] may still opt out and preserve their rights; there are no restraints on the ability of any defendant to settle with any opt outs nor on the ability of any opt out,

including the [proposed intervenors] if they choose to do so, to pursue their own claims independently.").

### iii. Adequacy of representation

The Merchant Trade Groups argue that there is no adequacy of representation because (1) Plaintiffs have "differing claims, injuries, and apparent relief priorities," (*see* Merchant Trade Groups Mem. 13), and (2) there is no other party representing their interest, (*see* Merchant Trade Groups Reply in Supp. Merchant Trade Groups Mot. ("Merchant Trade Groups Reply") 7–8, Docket Entry No. 8472).  First, the Merchant Trade Groups argue that their interests are different because they believe "Defendants' core anticompetitive practices must be eliminated — not tinkered with on the margins" and that each merchant should have the choice of deciding whether to be represented by Plaintiffs' counsel or whether to exclude themselves from the class. (Merchant Trade Groups Mem. 12.)  The Merchant Trade Groups contend that in contrast, Plaintiffs "are focus[ed] on surcharging relief" instead of "removing the [h]onor-all-[c]ards and [d]efault [i]nterchange rule[s]," which the Merchant Trade Groups contend are "essential to remedying Defendants' entrenched [antitrust] violations." (*Id.*)  In addition, the Merchant Trade Groups argue that Plaintiffs are "very small businesses in only a handful of states" who "have refused to engage with the Merchant Trade Groups since spring [of] 2019, notwithstanding repeated requests." (*Id.* at 13.)  Second, the Merchant Trade Groups argue that there is no other party representing their interest because the Direct Action Plaintiffs request that the Court "*either* permit opt-outs *or* simply exclude Direct Action Plaintiffs from any certified class" whereas the Merchant Trade Groups argue that "their interests would *only* be protected by a class that permits opt-outs, not one that simply excludes some specified merchants." (Merchant Trade Groups

Reply 8.)  In addition, Merchant Trade Groups argue that they are the only party to object to inclusion of future merchants in the proposed class.  (*Id.*)

Like the Merchant Trade Groups, Walmart contends that Plaintiffs are not entitled to a presumption of adequacy of representation because "there is no identity of interest or shared ultimate objective."  (Walmart Mem. at 10.)  Walmart argues that there is no adequacy of representation because (1) Plaintiffs prioritize different forms of relief, (2) Plaintiffs are comprised of small retailers in contrast to Walmart, which is a large publicly traded company, and (3) no other party represents their interests because the Direct Action Plaintiffs are not similarly situated.  (*Id.* at 10; Walmart Reply in Supp. of Walmart Mot. ("Walmart Reply"), Docket Entry No. 8471.)  First, Walmart argues that Plaintiffs will undermine its interests because Plaintiffs "do not appear to have any actual interest in rolling back [the honor-all-cards] rules or addressing Defendants' anticompetitive behavior" and instead seek to eliminate Defendants' no-surcharge rules.  (Walmart Mem. 9.)  Walmart contends that Plaintiffs will also undermine its interest in "negotiating the best possible terms in its dealings with Visa and Mastercard" because Plaintiffs will seek "an injunction that effectively prevents merchants from trying to negotiate for lower interchange rates for themselves (and lower prices for their customers)."  (*Id.* at 9–10.)  Second, Walmart argues that Plaintiffs are not representative of a large publicly traded company with different types of operations.  (Walmart Reply 3.)  Third, Walmart argues that the Direct Action Plaintiffs do not make the same arguments because the Direct Action Plaintiffs are currently pursuing separate money damages claims against Defendants and "a ruling on class certification that favors the Direct Action Plaintiffs based on their pending monetary claims might not benefit Walmart."  (*Id.* at 8.)

Plaintiffs argue that they are entitled to a presumption of adequacy of representation under *Butler, Fitzgerald & Potter v. Sequa Group*, 250 F.3d 171, 179 (2d Cir. 2001) because Plaintiffs "have the same 'ultimate objective' as Proposed Intervenors — challenging existing anticompetitive network rules that impact *all* merchants." (Pls.' Opp'n 9.) In addition, Plaintiffs contend that Proposed Intervenors speculate prematurely about Plaintiffs' relief priorities when "expert reports regarding appropriate injunctive relief are not even due until *after a liability verdict*." (*Id.* at 10.) Plaintiffs state that Proposed Intervenors will have an opportunity to "object and air their views" on a proposed settlement should one be reached pursuant to Rule 23. (*Id.* at 11.) Further, Plaintiffs argue that Proposed Intervenors cannot overcome the presumption of adequacy because Plaintiffs and Proposed Intervenors "seek to challenge the same conduct and rules" and "representation is not inadequate simply because [the] [parties] have different ideas about how to achieve those goals." (*Id.* at 12–13 (second alteration in original) (quoting *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999)).)

"While the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' [the Second Circuit has] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler*, 250 F.3d at 179 (first quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); and then citing *Wash. Elec. Coop., Inc.*, 922 F.2d at 98). "Where there is an identity of interest . . . the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80. Although not an exhaustive list, the Second Circuit has held that "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Id.* at 180 (citing *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 538 (S.D.N.Y. 1974)); *see also St. John's Univ., N.Y.*, 450 F. App'x at 84

("[W]e have previously stated that 'when there is an identi[t]y of interest between a putative intervenor and an existing party to the action,' a 'presumption of adequate representation' attaches in the absence of 'evidence of collusion, adversity of interest, nonfeasance, or incompetence.'" (quoting *Butler*, 250 F.3d at 180)); *Neversink Gen. Store*, 2021 WL 1930320, at *5 (same (quoting *Butler*, 250 F.3d at 180)).  Courts often look to whether there is a true divergence of interests or an actual impediment to a named plaintiff's representation, such as a standing issue or that a named plaintiff settled their claims.  *See, e.g.*, *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) ("Given that [a named plaintiff] has settled his individual claim, it is apparent that he can no longer adequately represent the interests of the proposed class.  Therefore, [proposed intervenor] is permitted to intervene as of right.").

The Court finds that Proposed Intervenors are adequately represented in this litigation.[8]

---

[8]  The Court makes its determination of adequate representation only pursuant to a Rule 24(a)(2) intervention as of right analysis, and finds that, based on the papers before it, Proposed Intervenors have not shown that the existing parties do not adequately represent their interests. The Court makes no determination as to the adequate representation analysis it will undertake in considering whether to grant certification of the 23(b)(2) class.  *See Little-King v. Hayt Hayt & Landau*, No. 11-CV-5621, 2013 WL 4874349, at *20–21 (D.N.J. Sept. 10, 2013) (finding that the third and fourth factors of the intervention of right analysis had not been met, "that [o]bjectors' interests [were] adequately preserved and they have been afforded a full and fair opportunity to make their objections and argue them at the fairness hearing," that "[t]herefore, their motion for leave to intervene [was] unnecessary," and that "[a]lthough approval of the settlement affects the [o]bjectors, the [c]ourt's decision regarding the intervention motion will not finally dispose of any right or claim they might have differently than if they were allowed to intervene"); *Dewey v. Volkswagen of Am.*, No. 07-CV-2249, 2012 WL 8433901, at *5–6 (D.N.J. Nov. 26, 2012), *aff'd sub nom.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191 (3d Cir. 2014) (denying motion to intervene by objector and holding that the proposed intervenor had not shown that his interests would be impaired if not permitted to intervene, that "[t]o the contrary, the class will be certified only if the court determines that the representative plaintiffs are adequate to represent the interests of all class members, including [proposed intervenor]," that proposed intervenor's objection "w[ould] be considered in the same way as if it were presented by a party," and that "[a]s a result, the intervention motion need not be granted simply to advocate that which the [c]ourt is duty-bound to do and which is being pursued by [proposed intervenor] in his capacity as an objector and by other objectors"); *see also* 3 Newberg

### 1. Plaintiffs are entitled to a presumption of adequate representation

Proposed Intervenors and Plaintiffs share an identity of interest in that both seek to hold Defendants accountable for alleged anticompetitive activity stemming from Defendants' network rules which Plaintiffs claim imposes supracompetitive and collectively fixed fees on the merchants. Among the challenged network-developed rules are the default interchange rules, honor-all-cards rules, no-surcharge rules, and no-discount rules. (*See* Injunctive Relief Class Action Compl. ("Compl."), Docket Entry No. 6910); *Barry's Cut Rate Stores Inc.*, 2019 WL 7584728, at *4. Proposed Intervenors similarly have an interest in challenging Defendants' alleged anticompetitive conduct stemming from these rules. (*See* Walmart Mem. 3, 11 (stating that Walmart has an interest in preventing antitrust injury stemming from Defendants' anticompetitive conduct through the use of their honor-all-cards rules and that "Walmart's intervention will not introduce new claims or issues into the case or otherwise prejudice the existing parties"); Merchant Trade Groups Mem. 12 (stating that they "believe Defendants' core anticompetitive practices must be eliminated" and that removing the honor-all-cards and default interchange rules is "essential to remedying Defendants' entrenched anti-trust violations").)

Accordingly, because Plaintiffs and Proposed Intervenors have the same ultimate objective in the litigation, the presumption of adequate representation attaches. *See Butler*, 250 F.3d at 179 (stating that a presumption of adequate representation attached when "there is an identity of interest"); *see also High Farms, LLC v. King*, No. 16-CV-736, 2021 WL 1137995, at

---

on Class Actions § 9:35 (5th ed.) ("[A]n intervenor must be able to intervene on a lesser showing of adequacy than that demanded by Rule 23. This is particularly important in non-opt-out class actions brought under Rule 23(b)(1) and Rule (b)(2) because absent class members do not have an exit option; enabling them to use their voice in the current case is therefore particularly pressing.").

*14 (E.D.N.Y. Mar. 25, 2021) (finding that the proposed intervenor and the defendant have the same objective in the suit where both parties shared the ultimate objective of dismissal); *Travis*, 284 F. Supp. 3d at 346 (finding a presumption of adequate representation when the plaintiff and the proposed intervenors both sought to hold the defendant "accountable for allegedly steering borrowers toward forbearance").

**2. Proposed Intervenors have not rebutted the presumption of adequate representation**

Proposed Intervenors' arguments that Plaintiffs may seek a different form of relief are not sufficient to rebut the presumption of adequate representation. The Second Circuit has stated that "[r]epresentation is not inadequate simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief,' . . . or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy." *City of New York*, 198 F.3d at 367 (quoting *Orange Env't Inc. v. County of Orange*, 817 F. Supp. 1051, 1061 (S.D.N.Y. 1993)); *see also Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5667181, at *5 (S.D.N.Y. Sept. 23, 2020) (finding presumption of adequate representation was not rebutted when both the plaintiffs and the proposed intervenor shared the ultimate objective of challenging the constitutionality of a state law because "representation is not inadequate simply because they have different ideas about how best to achieve these goals" (citing *City of New York*, 198 F.3d at 367)); *Schwartz v. Town of Huntington Zoning Bd. of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000) ("Representation is not inadequate simply because 'the applicant would insist on more elaborate . . . pre-settlement procedures or press for more drastic relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy.'" (quoting

*City of New York*, 198 F.3d at 367)); *see also Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at \*31 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ("The fact that some class members would prefer to litigate claims rather than compromise them, or would 'press for more drastic relief,' raises no issue of inadequate representation." (quoting *City of New York*, 198 F.3d at 367)). In addition, as discussed above, Proposed Intervenors' concerns regarding settlement or relief priorities can be addressed through Rule 23's objections process. *See Rudolph*, 2019 WL 1416986, at \*3; *Travis*, 284 F. Supp. 3d at 344; *Calibuso*, 2013 WL 5532631, at \*2; *see also Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 381 (D. Del. 1990) (stating, in response to the proposed intervenors' concerns that the named plaintiff would no longer adequately represent the class, that "[f]ear of future divergence of interests is insufficient to establish inadequate representation in the absence of a current conflict"). Proposed Intervenors' arguments that the Rule 23(b)(2) Class Counsel have not worked with their counsel are similarly unavailing.[9] *See Rudolph*, 2019 WL 1416986, at \*3 ("The assertion that [the plaintiff] and her counsel will not adequately protect their interests because, among other things, the refusal of her counsel to work with [proposed intervenors'] counsel in the other two actions, shows little of relevance.").

---

[9] Walmart states that Plaintiffs have not allowed them to "review materials in their motion papers designated 'highly confidential' under the protective order, including reports from certain . . . experts that may shed the most light on the relief the [Plaintiffs] seek to impose on absent class members." (Walmart Mem. 2.) To the extent that Walmart suggests that such conduct evinces adversity of interests between the parties, the Court notes that refusing to provide confidential documents is not evidence of a conflict of interest. *See Neversink Gen. Store v. Mowi USA, LLC*, No. 20-CV-9293, 2021 WL 1930320, at \*7 (S.D.N.Y. May 13, 2021) ("[T]he leap from such reluctance to share still-confidential settlement documents to a nefarious purpose or conflict of interest is implausible."); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 368 (D.D.C. 2001) ("Merely refusing to provide a document request does not by itself evidence a conflict of interest.").

To the extent that Proposed Intervenors' interests are not adequately represented by Plaintiffs, Proposed Intervenors are adequately represented by the Direct Action Plaintiffs and the Grubhub Plaintiffs, both of whom oppose certification of a mandatory class. The Direct Action Plaintiffs argue that the Court should provide an opt-out right should an injunctive relief class be certified. (Direct Action Pls.' Class Certification Opp'n 3.) The Grubhub Plaintiffs also oppose certification of a mandatory class, arguing that certification of a mandatory class would shape the scope of relief by holding them to the "same restrictions imposed on the entities that *voluntarily accepted* the Rule 23(b)(3) monetary settlement and its limitations on their right to seek injunctive relief." (Grubhub Pls.' Class Certification Opp'n 1–2.) Proposed Intervenors' arguments that they are not adequately represented by the Direct Action Plaintiffs are unpersuasive because both Proposed Intervenors and the Direct Action Plaintiffs share an interest in seeking opt-out rights so that they may negotiate with Defendants directly. *Cf. Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 510 (S.D.N.Y. 2015) (finding intervention as of right warranted when "no other party represents the [proposed intervenors] or can adequately advocate their position"). The Merchant Trade Groups argue that the Direct Action Plaintiffs do not adequately represent them because the Direct Action Plaintiffs request that the Court "*either* permit opt-outs *or* simply exclude Direct Action Plaintiffs from any certified class" while the Merchant Trade Groups argue that "their interests would *only* be protected by a class that permits opt outs, not one that simply excludes some specified merchants." (Merchant Trade Groups Reply 8.) However, the argument as to permitting opt-outs from the injunctive relief class is already before the Court. If the Court required every putative class member who had a different motivation for opting out from the 23(b)(2) class to seek intervention before class certification, this would result in the very multiplicity of litigation that Rule 23 was designed to avoid. *See*

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974) (noting that encouraging motions to intervene in class actions would "frustrate the principal function of a class suit" by occasioning "precisely the multiplicity of activity which Rule 23 was designed to avoid").

Accordingly, the Court finds that Proposed Intervenors are adequately represented under Rule 24. Because Proposed Intervenors only meet three of the four factors required for intervention under Rule 24(a), they are therefore not entitled to intervention as of right. *See Harris-Clemons*, 751 F. App'x at 85 (stating that intervention as of right must be denied if a party "fails to satisfy any one of the factors").

### c. Proposed Intervenors may intervene permissively

In the alternative, Proposed Intervenors argue that they should be permitted to intervene permissively pursuant to Rule 24(b). The Merchant Trade Groups argue that they should be allowed to intervene because they are putative absent class members. (*See* Merchant Trade Groups Mem. 14.) Walmart argues that it should be allowed to intervene because intervention "will not introduce new claims or issues into the case or otherwise prejudice the existing parties." (Walmart Mem. 11.)

Plaintiffs argue that the Court should deny permissive intervention because granting intervention would "multiply briefing on class certification issues that the Direct Action Plaintiffs are well equipped to address on their own" and because Proposed Intervenors do not offer arguments "that will not be sufficiently addressed by other parties opposing class certification." (Pls.' Opp'n 14.)

The Court grants Proposed Intervenors permissive intervention under Rule 24(b)(1)(B) because (1) Proposed Intervenors' motions were timely and (2) in view of the risk of impairment of their interests, the Court believes that Proposed Intervenors "will significantly contribute to

full development of the underlying factual issues" around the opt-out issue. *See Citizens Against Casino Gambling in Erie Cnty.*, 417 F. App'x at 50 ("[T]he court must consider 'whether the intervention will unduly delay or prejudice . . . the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit.'" (quoting *H.L. Hayden Co. of N.Y., Inc.*, 797 F.2d at 89)). Unlike the Direct Action Plaintiffs and the Grubhub Plaintiffs, Proposed Intervenors are not currently pursuing damages claims against Defendants and therefore they will add the perspective of absent class members not otherwise litigating their cases who nevertheless seek opt-out rights from the litigation. In addition, the Merchant Trade Groups are the only party to voice concerns regarding the inclusion of future merchants in the class, (*compare* Merchant Trade Groups Opp'n to Pls.' Mot. for Class Certification 18–26, annexed to Greenberger Decl. as Ex. 1, Docket Entry No. 8468-1, *with* Direct Action Pls.' Class Certification Opp'n, *and* Grubhub Pls.' Class Certification Opp'n), which will also contribute to the development of the issues before the Court on class certification.[10] *See 335-7 LLC v. City of New York*, No. 20-CV-1053, 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020) (granting permissive intervention when the proposed intervenors were "grassroots organizations that closely serve[d] tenants directly impacted by the [challenged law]" and were "intimately involved in efforts in connection with the [challenged law] for decades" who "will undoubtedly contribute 'to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented'" (quoting *Grewal v. Cueno*, No. 13-CV-6836, 2014 WL 2095166, at *3 (S.D.N.Y.

---

[10]  The Court notes that Defendants have already submitted a brief opposing, *inter alia*, Merchant Trade Groups' argument that future merchants should not be included in the putative class. (*See* Defs.' Class Certification Opp'n Reply.)

May 20, 2014)); *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y.

1996) ("The intervenors will bring a different perspective to the case and will contribute relevant

factual variations that may assist the court in addressing the constitutional issue raised."); *cf.*

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc.*, 2020 WL 5667181, at *7 (denying

permissive intervention where the proposed intervenor did "not appear to offer a unique

perspective that would be lost without its participation").

    Accordingly, the Court grants Proposed Intervenors' permissive intervention.[11]

### d. Proposed Intervenors may intervene without attaching an intervenor complaint

    Proposed Intervenors request to intervene without attaching an intervenor complaint

because they seek to intervene for the limited purpose of opposing class certification. (*See*

Merchant Trade Groups Mem. 15; Walmart Mem. 1 n.2.) Proposed Intervenors argue that an

intervenor complaint is not necessary because their position is clear from their motion papers.

(*See* Merchant Trade Groups Mem. 15–16; Walmart Mem. 1 n.2.)

    Plaintiffs do not address whether Proposed Intervenors should be required to attach a

separate pleading. (*See generally* Pls.' Opp'n.)

    Rule 24(c) requires that motions to intervene "be accompanied by a pleading that sets out

the claim or defense for which intervention is sought." Fed. R. Civ. P. 23(c); *see also In re*

*Lehman Bros. Holdings Inc.*, 697 F.3d 74, 76 (2d Cir. 2012) ("Rule 24(c) of the Federal Rules of

---

[11] Proposed Intervenors seek access to documents designated confidential or highly confidential for purposes of supplementing their opposition to Plaintiffs' class certification motion. (*See* Walmart Mem. 8 n.10; Letter dated Apr. 5.) Plaintiffs state in their briefing that they did not provide access to documents covered by the protective order because Proposed Intervenors were not parties to the litigation, but should the Court grant Proposed Intervenors' motions, it will "immediately provide access to materials marked 'highly confidential.'" (Pls.' Opp'n 10 n.6.) Accordingly, the Court grants Proposed Intervenors' request on consent.

Civil Procedure . . . requires an intervention motion to be accompanied by a proposed pleading."); *High Farms, LLC*, 2021 WL 1137995, at *10 ("Rule 24(c) requires all motions to intervene, whether by right or permission, to 'be accompanied by a pleading that sets out the claim or defense for which intervention is sought.'" (quoting Fed. R. Civ. P. 24(c))).  Courts within the Second Circuit have held that Rule 24(c) permits a "degree of flexibility with technical requirements" and have dispensed with the pleading requirement when the proposed intervenors position is "clearly articulated" in its motion papers.  *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 12-CV-00196, 2017 WL 9400673, at *8 n.4 (N.D.N.Y. Jan. 6, 2017) (stating that courts "have waived the pleading requirement where the party clearly articulates its position in its motion papers" and waiving the pleading requirement when the proposed intervenor sought to intervene "for the sole purpose of challenging the parties' motions to seal [their] summary judgment submissions"); *see also N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, No. 12-CV-1633, 2015 WL 777248, at *17 (E.D.N.Y. Feb. 13, 2015) ("In general, Rule 24(c) requires the submission of a formal motion and supplemental pleadings in order to trigger the motion.  Where, however, the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." (quoting *Bano v. Union Carbide Corp.*, No. 99-CV-11329, 2005 WL 6800401, at *4 (S.D.N.Y. Aug. 12, 2005))), *report and recommendation adopted*, 2015 WL 1345814 (E.D.N.Y. Mar. 25, 2015); *Blesch v. Holder*, No. 12-CV-1578, 2012 WL 1965401, at *2 (E.D.N.Y. May 31, 2012) ("The [c]ourt agrees that waiver of the pleading requirement is justified here because the [intervenor's] position on this litigation is clearly articulated in its motion papers."); *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) ("In general, Rule 24(c) requires the submission of a formal motion and

supplemental pleadings in order to trigger the motion. Where, however, the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements."); *see also Conn. Fine Wine & Spirits, LLC v. Harris*, No. 16-CV-1434, 2016 WL 9967919, at *4 (D. Conn. Nov. 8, 2016) (concluding that "the movants' failure to file a 'pleading' with their [m]otions is not fatal to their efforts to intervene" because the motions put the plaintiffs "sufficiently on notice as to their interests and positions in the case").

The Court waives the pleading requirement for Proposed Intervenors because they seek to intervene for the limited purpose of opposing class certification and because their position on this litigation is clearly articulated in their motion papers, which include copies of their proposed briefing in opposition to class certification. *See Blesch*, 2012 WL 1965401, at *2 (waiving intervenor pleading requirement).

### III. Conclusion

Accordingly, the Court grants Proposed Intervenors' motions for permissive intervention for the limited purpose of opposing the Rule 23(b)(2) Class Plaintiffs' motion for class certification. The Court directs the parties to submit a proposed schedule for Proposed Intervenors' supplemental briefing within seven days of this Memorandum and Order.

Dated: June 28, 2021
      Brooklyn, New York

                            SO ORDERED:


                                ____s/ MKB_____
                                MARGO K. BRODIE
                                United States District Judge