E-SERVICE
66812306
Jul 30 2021
05:03PM
File & ServeXpress

# Exhibit A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE, | MDL No. 1720<br><br>Docket No. 05-md-01720-MKB-VMS |
|         Plaintiffs, | |
|         v. | |
| VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY, | |
|         Defendants. | |

## WALMART'S MEMORANDUM OF LAW IN OPPOSITION TO EQUITABLE RELIEF PLAINTIFFS' <u>MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.   Walmart Has Significant Interests at Stake in this Litigation. ................................. 2

II.  A Previous Attempt to Certify a Mandatory Settlement Class Failed Because It Inadequately
     Protected the Interests of Absent Merchants. .......................................................... 4

III. The ERPs Seek Relief that Will Undermine Many Class Members' Interests. ...................... 5

ARGUMENT ...................................................................................................................... 9

I.   Adequacy of Representation Is Lacking Under Rule 23(a)(4) Because the Equitable Relief
     Plaintiffs Will Undermine Absent Class Members' Interests. ................................................ 9

II.  Cohesion Is Lacking, and Rule 23(b)(2) Is Not Satisfied, Because the ERPs Will Not Seek
     Injunctive Relief that Benefits the Entire Class and Have Failed to Show that Such Relief
     Exists. ...................................................................................................................... 14

III. The Court Should Either Deny Class Certification, Grant Walmart an Opt-Out Right, or
     Exclude Walmart from the Class. ............................................................................ 20

CONCLUSION .................................................................................................................. 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
   279 F.R.D. 257 (D. Vt. 2011) ............................................................................. 13

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 9, 14

*Cty. of Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 1990) ............................................................................. 20

*Harris v. Union Pac. R.R. Co.*,
   953 F.3d 1030 (8th Cir. 2020) ............................................................................ 15

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
   2020 WL 1873989 (D. Kan. Feb. 27, 2020) ...................................................... 18

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   407 F. Supp. 3d 422 (S.D.N.Y. 2019) ............................................................... 11

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ................................................................................. 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................................................... 11

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) ................................................................. 9, 10, 13, 14

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) .............................................................................. 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016) ........................................................................ passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ............................................................ 8, 13

*In re St. Jude Med.*,
   425 F.3d 1116 (8th Cir. 2005) ........................................................................ 15, 20

*In re Visa Check/Mastermoney Antitrust Litig.*,

    192 F.R.D. 68 (E.D.N.Y. 2000) ............................................................................... 3

*Kartman v. State Farm Mut. Auto. Ins. Co.*,

    634 F.3d 883 (7th Cir. 2011) ...................................................................... 17, 18, 19

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,

    209 F.R.D. 323 (S.D.N.Y. 2002) .............................................................. 15, 18, 20

*In re Visa Check/MasterMoney Antitrust Litig.*,

    280 F.3d 124 (2d Cir. 2001) ................................................................................ 21

*Lemon v. Int'l Union of Operating Eng'rs*,

    216 F.3d 577 (7th Cir. 2000) ............................................................................... 20

*M.D. ex rel. Stukenberg v. Perry*,

    675 F.3d 832 (5th Cir. 2012) ......................................................................... 17, 18

*McReynolds v. Richards-Cantave*,

    588 F.3d 790 (2d Cir. 2009) ................................................................................ 20

*Ortiz v. Fibreboard Corp.*,

    527 U.S. 815 (1999) ............................................................................................ 14

*Scholtisek v. Eldre Corp.*,

    229 F.R.D. 381 (W.D.N.Y. 2005) ....................................................................... 21

*Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*,

    543 F.3d 597 (10th Cir. 2008) ..................................................................... 15, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) .................................................................................. 15, 16, 17, 19

*Wexler v. AT&T Corp.*,

    2019 WL 4874746 (E.D.N.Y. Sept. 30, 2019) ................................................... 10

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 20

Fed. R. Civ. P. 23(a)(4) ................................................................................... 9, 10, 14

Fed. R. Civ. P. 23(b)(2) ............................................................................... passim

Fed. R. Civ. P. 23(b)(3) ................................................................................ 2, 4, 15, 20

**Other Authorities**

*Due Process, Class Action Opt Outs, and the Right Not To Sue*,

    115 Colum. L. Rev. 599 (2015) ................................................................................ 21

*McLaughlin on Class Actions* § 5:15 (2012) ............................................................. 15

*Preclusion and Procedural Due Process in Rule 23(b)(2) Class Actions*,

    21 U. Mich. J. L. Reform 347 (1988) ...................................................................... 21

# INTRODUCTION

Walmart Inc. ("Walmart"), a major retailer and a significant participant in the U.S. credit and debit card markets, respectfully opposes the Equitable Relief Plaintiffs' ("ERPs") motion to certify a mandatory class under Fed. R. Civ. P. 23(b)(2), because the injunctive relief and settlement the ERPs seek will undermine the interests of many absent class members (including Walmart). The ERPs will not adequately protect the interests of Walmart or many other merchants in the proposed class. Rather, they intend to trade away absent class members' interests (including the injunctive relief that would protect them) to secure relief that narrowly benefits the ERPs themselves, and to secure a fee for their counsel—in the process no doubt giving Defendants a sweeping, forward-looking release. Furthermore, cohesion is lacking (and Rule 23(b)(2) is not satisfied) because the ERPs will not pursue injunctive relief that benefits the entire class, and they have not suggested that such effective classwide injunctive relief exists.

When Walmart requested copies of their motion papers, the ERPs only provided Walmart with public, redacted versions of their memorandum of law and of the report of one of their experts (Dr. Keith Leffler). The ERPs have not permitted Walmart to review materials in their motion papers designated "highly confidential" under the protective order, including reports from certain ERP experts that may shed the most light on the relief the ERPs seek to impose on absent class members. The available evidence already establishes that the requirements for class certification have not been met, or at the very least that merchants like Walmart should be given an opt-out right. However, should the Court determine that questions remain on the point, Walmart should be allowed to intervene and permitted to review and respond to these materials before the Court rules on the ERPs' motion for class certification.

For all of these reasons, class certification should be denied; in the alternative, Walmart should be excluded from the class or given an opt-out right.

1

# BACKGROUND

**I.  Walmart Has Significant Interests at Stake in this Litigation.**

Walmart is uniquely situated relative to other merchants in this multidistrict litigation, in which claims have been brought on behalf of millions of merchants against Defendants Visa U.S.A. Inc. ("Visa"), Mastercard International Incorporated ("Mastercard") and various banks for violating the Sherman Act.  In 2013, Walmart opted-out of the first proposed Rule 23(b)(3) settlement class in this case, and also objected to the proposed mandatory Rule 23(b)(2) settlement and class.  Visa then filed a declaratory judgment action against Walmart in this MDL, and Walmart brought its own antitrust action against Visa (which was transferred to this MDL).  In its action against Visa, Walmart challenged anticompetitive practices that included, but were not limited to, Visa's use of "Honor All Cards" ("HAC") rules[1] to acquire and maintain the market power necessary to charge Walmart supracompetitive fees.[2]  Walmart eventually dismissed its case against Visa, and Visa dismissed its declaratory judgment action against Walmart, in 2017.[3]

[4]  Thus, while Walmart was previously a named plaintiff pursuing claims in this MDL, it is not

---

[1] Honor All Cards rules require merchants to accept all Visa and Mastercard cards that are defined by the networks as "credit" or "debit," regardless of cost or issuing bank.  Declaration of Michael A. Cook ("Cook Decl.") [Doc. 2644] ¶ 8.

[2] Complaint ¶¶ 11(k), 44, 74, *Wal-Mart Stores, Inc., et al. v. Visa U.S.A. Inc., et al.,* No. 14-cv-02318 (E.D.N.Y.) (MKB) (JO) [Doc. 1].

[3] *See* Stipulation and Orders of Dismissal with Prejudice of All Claims [MDL Doc. 7120, 7121].  Walmart then opted-out of a subsequent proposed settlement for a Rule 23(b)(3) class.

[4] Even after dismissing its case against Visa, Walmart remained engaged with this litigation in order to protect its interests.  For example, Walmart representatives attended an April 9, 2019 meeting with other plaintiffs' counsel (including counsel for the ERPs) to discuss case strategy.  Also, Michael A. Cook, Walmart's Senior Vice President of Finance and Assistant Treasurer, was later deposed for this MDL.

one currently, while other merchants who also oppose class certification are still litigating their individual claims.

In any event, Walmart has significant interests that remain at stake in this litigation. In particular, Walmart has an obvious interest in preventing Visa and Mastercard ("Defendants") from injuring Walmart through anticompetitive conduct (e.g., their use of HAC rules). That interest would be undermined by certification of a mandatory class that includes Walmart and is led by the ERPs. And as explained below, the ERPs and their counsel can be expected to pursue relief that is at best worthless, and more likely harmful, to Walmart, and to enter into a settlement that permits Defendants to continue their anticompetitive conduct and releases claims far into the future. Walmart also has an interest in being free to negotiate for the best possible terms in its dealings with Defendants. That interest would be undermined if Walmart is forced to remain in a class saddled with an injunction that justifies Defendants in refusing to negotiate different arrangements, waive network rules, or agree to different interchange rates with larger and smaller merchants. This is the type of injunction the ERPs want.

The significance of Walmart's interests in this MDL is evidenced by its history of grappling with the issues at hand. Walmart has brought other litigation against Visa and Mastercard to protect its interests, and indeed has pursued claims on behalf of other merchants as a named class representative in a prior antitrust case before this Court. *See In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000), *aff'd sub nom. In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001). Walmart has also long been active in lobbying efforts to reform the payments industry, and in particular the anticompetitive practices of Defendants.

## II. A Previous Attempt to Certify a Mandatory Settlement Class Failed Because It Inadequately Protected the Interests of Absent Merchants.

A group of plaintiffs previously sought in this case to certify a mandatory Rule 23(b)(2) settlement class, which the Second Circuit rejected because (among other things) the proposed settlement failed to adequately protect the interests of absent class members. The court noted that while the settlement targeted Defendants' no-surcharge rules (offering injunctive relief that many class members could not implement), it offered no injunctive relief to merchants injured by Defendants' Honor All Cards and "default interchange" rules. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238 (2d Cir. 2016) (noting that the proposed settlement offered "no appreciable benefit" for merchants in states prohibiting surcharging and that the proposed settlement lacked "forms of relief" that "might have conferred a real and palpable benefit, such as remedies that affected the default interchange fee or honor-all-cards rule"). The court also expressed concern that class counsel had traded-away the interests of absent class members during settlement negotiations for relief that did not benefit them (while offering Defendants an "exceptionally broad release" in the process). *Id.* at 238-39. As the court found:

> This is not a matter of certain merchants (*e.g.*, those based in New York and those that accept American Express) arguing that class counsel did not bargain for their preferred form of relief, did not press certain claims more forcefully, or did not seek certain changes to the network rule books more zealously. This is a matter of class counsel trading the claims of many merchants for relief they cannot use: they actually received nothing.

*Id.* at 238.

The Second Circuit also objected to plaintiffs' attempt to certify and represent both a Rule 23(b)(2) and a Rule 23(b)(3) settlement class. The court found a "clear" conflict of interest between the merchants seeking monetary relief and those seeking injunctive relief. *Id.* at 234. Dangerous incentives arise, the court recognized, when groups seeking conflicting relief have the

same class representatives: "Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order somehow to reach a settlement." *Id.* This problem was exacerbated because "members of the worse-off (b)(2) class could not opt out." *Id.* The court also observed that class counsel "stood to gain enormously" from this settlement where they had incentives to trade away some merchants' interests to benefit other merchants (although the court declined to impugn their motives or actions). *Id.*

As explained below, any classwide settlement secured by the ERPs here will inevitably reflect some of the same flaws that were fatal to the prior proposed settlement, and reflect the same trading-away of other merchants' interests (including Walmart's).

## III. The ERPs Seek Relief that Will Undermine Many Class Members' Interests.

The Equitable Relief Plaintiffs have now moved to certify a mandatory class under Rule 23(b)(2). Among other things, the ERPs' motion argues that Defendants' Honor All Cards rules, no-surcharge rules and interchange fee policies affect each member of their proposed class. ERP Br. at 32-42. Walmart strongly disputes any suggestion that each of Defendants' relevant policies affects every class member.[5] In any event, the ERPs, like the settlement class plaintiffs before them, purport to seek "classwide relief" but actually seek a resolution that shortchanges many absent class members, including Walmart.

*First*, the ERPs seek to certify an expansive mandatory class that reaches far into the future. The proposed class would include:

> All persons, businesses, and other entities (referred to herein as "Merchants") that accept Visa and/or Mastercard Credit and/or Debit cards in the United States at any

---

[5] Walmart will provide evidence on this point under seal if it is contested.

time during the period between December 18, 2020 and 8 years after the date of entry of Final Judgment in this case.

ERP Br. at 5. This class definition would sweep in every merchant currently injured by Defendants' anticompetitive practices, and countless merchants that Defendants might injure in the distant future. (Walmart is indisputably, and unfortunately, within this class definition.) Any settlement or judgment secured by the ERPs would either have to carefully protect the interests of a vast and varied class or potentially leave many merchants vulnerable to antitrust violations by Defendants.

*Second*, the ERPs are uninterested in securing injunctive relief that would meaningfully protect Walmart (and other merchants), specifically a rollback of Defendants' Honor All Cards rules. Instead, they seek a disposition that would leave many merchants vulnerable.

As Walmart has already testified, HAC rules are a key tool Defendants use to restrain Walmart and other merchants, and Walmart has a considerable interest in rolling-back these rules. *See* Cook Decl. [Doc. 2644] ¶ 49 ("The Honor All Cards rules have consistently been used by Visa and MasterCard to force merchants to accept new products and thereby give Visa and MasterCard the ability to foreclose competition regarding those products."); *see also* Deposition of Michael Cook ("Cook Depo. Tr.") at 121:8-14.[6] By contrast, eliminating Defendants' no-surcharge rules, without more, would not meaningfully benefit Walmart if HAC rules remained in effect. *See id.*

---

[6] *See* Cook Decl. [Doc. 2644] ¶ 8 ("[Defendants'] longstanding price-fixing, when combined with Honor All Cards rules and no-bypass rules, prevents competition for both merchant acceptance among issuing banks and transaction volume among networks."); *id.* ¶ 48 (stressing that the then-proposed class settlement "provides no relief on Visa's and MasterCard's Honor All Cards rules, which are also central to the case and to Visa's and MasterCard's power over merchants," and noting that the settlement's broad release would allow Defendants to "use these rules in a variety of problematic ways including extensions to cover future technologies"); *id.* ¶ 50 ("The Honor All Cards rules are harmful to competition in another respect – they prevent the banks that issue Visa and MasterCard products, credit or debit, from competing for merchant acceptance.").

¶ 39 (concluding that "surcharging, standing alone, an insufficient remedy to the interchange problem"); *see also* Cook Depo. Tr. at 146:12-20. Walmart is far from the only class member with the above priorities; the Second Circuit has noted many merchants would gain from rolling-back HAC rules but not meaningfully benefit from curtailing no-surcharge rules. *See In re Payment Card*, 827 F.3d at 229-30, 238.[7] It follows that Walmart's interests (and those of many other merchants) would not be adequately served by an injunction that merely eliminates the no-surcharging rules, and does not eliminate the HAC rules.

Yet the Equitable Relief Plaintiffs have made clear that they are not interested in aggressively rolling-back Defendants' HAC rules. Their counsel ("ERP counsel") conveyed as much in a 2016 brief seeking their appointment as co-lead counsel for an equitable relief class, stating their "preliminary view . . . that the HAC Rule should be made inoperable only in states that prohibit surcharging." [Doc. 6695] at 6; *see also id.* ("[I]t is not obvious why the HAC Rule – and its pro-consumer aspects – should be eliminated in states that permit surcharging.").[8]

The ERPs are preoccupied with seeking the relief that they believe most benefits them – permitting surcharging – and uninterested in systematically eliminating HAC rules (a priority for Walmart and other merchants).[9] It follows that, during settlement negotiations, the ERPs will

---

[7] *See id.* at 229-30 (noting the limited value and utility of permitting surcharging given that many states prohibit surcharging); *id.* at 238 (noting that the proposed settlement's primary relief was "virtually worthless to vast numbers of class members," and that the settlement lacked "forms of relief" that "might have conferred a real and palpable benefit, such as remedies that affected the default interchange fee or honor-all-cards rule") (noting class counsel had traded the claims of "many merchants" for relief that they could not use).

[8] Three of the four law firms representing the ERPs on their pending motion also filed this 2016 brief.

[9] This much is clear from the available evidence, although Walmart would have even greater insight into the ERPs' intentions if it could review materials that have been designated "highly confidential."

likely trade away relief that benefits many other class members for relief that most benefits the ERPs, and broadly release Defendants to continue their abusive use of HAC rules.[10]  But the Second Circuit rejected the previous mandatory class settlement in part because it did not offer merchants meaningful relief from HAC rules.  *See In re Payment Card*, 827 F.3d at 238.  The ERPs will replicate that problem and thereby undermine many class members' interests.

*Third*, it appears the ERPs seek relief that will restrain merchants (including Walmart) from entering into pro-competitive arrangements with Defendants.  In particular, the ERPs will likely seek an injunction that effectively prevents merchants from trying to use what bargaining power they have to secure lower interchange rates for themselves and lower prices for their customers.[11]  As this Court has noted, some merchants have used their bargaining power to mitigate somewhat the damage caused by Defendants' anticompetitive conduct.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 239 (E.D.N.Y. 2013) ("[D]efault interchange operates only in the absence of bilateral agreement, and some of the very large merchants have sufficient transaction volume that they can actually negotiate for their own, lower interchange structures."), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016).  Thus, the ERPs'

---

[10] Dr. Leffler's extensive analysis of "the possibility of settlement" evidences that the ERPs seek a classwide settlement in this case.  Leffler Rpt. ¶¶ 65-79.

[11] For example, the ERPs will likely ask the Court to scrutinize agreements between merchants and Defendants that concern interchange rates.  This would reflect the ERPs' expressed interest in a judgment directly affecting interchange rates going forward.  *See* Tr. of Status Conf. [Doc. 7331] at 5 (Dec. 6, 2018) (ERP counsel Steve Shadowen states: "we do intend at trial to request or we may well request at trial a temporary rate cap on interchange fees going forward").  That said, Walmart would have a better understanding of the injunction the ERPs want if it could review materials from the ERPs' experts designated "highly confidential."  Thus, Walmart should be permitted to intervene, review these materials, and respond to these materials before the Court rules on the ERPs' motion, should the Court determine that what Walmart and the other intervenors have already presented is not enough to deny certification.

envisioned relief (disabling that bargaining power) will undermine the interests of at least some merchants in their class.

## ARGUMENT

Certification of a Rule 23(b)(2) class is inappropriate because the proposed class lacks adequate representation and cohesion. The Equitable Relief Plaintiffs are inadequate class representatives because they seek a case outcome that will undermine many absent class members' interests and forfeit the injunctive relief that would protect these class members (including Walmart). Furthermore, the proposed class lacks cohesion (and fails to satisfy Rule 23(b)(2)) because the ERPs will not seek injunctive relief that benefits the entire class, and they have not suggested that such injunctive relief exists. For these reasons, class certification should be denied; or in the alternative, Walmart should be given an opt-out right or excluded from the class altogether.

### I. Adequacy of Representation Is Lacking Under Rule 23(a)(4) Because the Equitable Relief Plaintiffs Will Undermine Absent Class Members' Interests.

The Equitable Relief Plaintiffs are inadequate class representatives for purposes of Rule 23(a)(4) because they will undermine the interests of Walmart and other class members during settlement (in particular, the latter's interests in rolling-back HAC rules and negotiating pro-competitive card acceptance agreements with Defendants).

Rule 23(a)(4) only permits a class to be certified where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). For a class representative to be adequate, it "must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Literary Works in*

*Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (citation and quotation marks omitted). A fundamental conflict among class members that goes to the heart of the litigation will violate Rule 23(a)(4)'s adequacy requirement. *See In re Payment Card*, 827 F.3d at 231; *In re Literary Works*, 654 F.3d at 252. The Second Circuit has already warned, in this very MDL, that adequacy is lacking where different groups seek conflicting forms of relief, incentivizing class counsel to trade away one group's interests for the other's and settle on terms that disfavor certain class members. *See In re Payment Card*, 827 F.3d at 234 ("Unitary representation of separate classes that claim distinct, competing, and conflicting relief create unacceptable incentives for counsel to trade benefits to one class for benefits to the other in order somehow to reach a settlement.").[12] Adequacy is lacking here under these standards because the ERPs will undermine, not protect, other class members' interests.

*First*, the ERPs will undermine merchants' interests in eliminating anticompetitive conduct, and in particular Defendants' HAC rules. Walmart has already testified to how Defendants use HAC rules to harm competition and explained why eliminating these rules is a priority.[13] This is not just a priority for Walmart; the Second Circuit has acknowledged HAC rules' significance to other merchants in this litigation,[14] and the ERPs themselves allege that Defendants' HAC rules affect every member of their (expansive) proposed class.[15] But despite

---

[12] *See also Wexler v. AT&T Corp.*, 2019 WL 4874746, at *2 (E.D.N.Y. Sept. 30, 2019) ("A proposed representative may be an inadequate if, for example, they have a close relationship with class counsel *or would otherwise permit a settlement on terms less favorable to absent class members*." (emphasis added)).

[13] *See* Cook Decl. [Doc. 2644] ¶¶ 8, 48-50; Cook Depo. Tr. at 121:8-14.

[14] *See In re Payment Card*, 827 F.3d at 238-39.

[15] ERP Br. at 36.

claiming to challenge HAC rules in their motion for class certification[16], the ERPs have little actual interest in rolling-back these rules. In a 2016 filing, ERP counsel informed the Court that they only sought to eliminate HAC rules in just a few states (ones that prohibit surcharging).[17] This evidences that the ERPs are far more concerned with eliminating Defendants' no-surcharge rules, even though such relief would not by itself meaningfully benefit Walmart[18] or other merchants.[19]

The danger presented is not merely that the ERPs will put insufficient energy into challenging Defendants' HAC rules once their class is certified, though this significant risk is enough by itself defeat adequacy.[20] Rather, the ERPs will *trade away* other merchants' interests during settlement negotiations, granting Defendants an extremely broad release of claims that lets them keep abusing HAC rules in exchange for relief that narrowly benefits the ERPs (i.e., the ability to surcharge).[21] This very danger was already realized in the previous Rule 23(b)(2) class

---

[16] ERP Br. at 11, 36-38.

[17] Response in Support of Application for Appointment as Co-Lead Counsel for Equitable-Relief Class [Doc. 6695] at 6 (ERP counsel's "preliminary view is that the HAC Rule should be made inoperable only in states that prohibit surcharging"); *see also id.* ("[I]t is not obvious why the HAC Rule – and its pro-consumer aspects – should be eliminated in states that permit surcharging.").

[18] *See* Cook Decl. [Doc. 2644] ¶ 39; Cook Depo. Tr. at 146:12-20.

[19] *In re Payment Card*, 827 F.3d at 229-30, 238.

[20] *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 439-40 (S.D.N.Y. 2019) (class representatives were inadequate who "lack[ed] sufficient incentives to prove that their counterparties were injured by Defendants' conduct"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 539 (S.D.N.Y. 2018) (adequacy lacking where differences between class members "undermine[d] the class representatives' incentive to fully pursue the class's claims").

[21] The ERPs' motion betrays how they see absent class members' claims as bargaining chips they can use to strengthen their negotiating leverage. ERP Br. at 49 (arguing that "allowing opt-outs would permit individual Merchants to monetize for themselves an asset . . . that is valuable precisely because it would benefit all Merchants," and that "individual monetization of a collective asset significantly diminishes its overall value").

settlement, which the Second Circuit rejected because (among other reasons) it offered Defendants a broad release while failing to benefit many class members (including those affected by HAC rules). *See In re Payment Card*, 827 F.3d at 238 (noting with disapproval that class counsel "knew at the time the Settlement Agreement was entered into that [its primary] relief was virtually worthless to vast numbers of class members" and that "[a]lternative forms of relief might have conferred a real and palpable benefit, such as remedies that affected the default interchange fee or honor-all-cards rule").[22] That settlement agreement reflected "class counsel trading the claims of many merchants for relief they cannot use: they actually received nothing." *Id.*[23] The same danger is presented here, especially given the ERPs' demonstrated lack of concern about HAC rules (compared to Walmart).

The proposed class would sweep in every merchant that "accept[s] Visa and/or Mastercard Credit and/or Debit cards in the United States at any time during the period between December 18, 2020 and 8 years after" final judgment is entered, with no ability for any such merchant to hold itself apart from the class.[24] Certifying such a broad class would give the ERPs an enormous gift to offer Defendants in settlement – a release of every merchant's challenge to HAC rules *going forward for years* – in exchange for the narrower relief the ERPs want most (or that would be, at least, most palatable to Defendants). This transaction is the ERPs' clear objective.

---

[22] *See also id.* at 239 (finding the proposed settlement "particularly unreasonable" for certain merchants who would "have released all of their claims pertaining to a whole book of rules, including (perhaps most importantly) the honor-all-cards and default interchange rules, and in return have the *chance* that the defendants will permit surcharging" (emphasis in original)).

[23] *See id.* (clarifying that the issue presented was not merely class counsel failing to bargain for certain merchants' preferred form of relief or not pressing certain claims more forcefully).

[24] ERP Br. at 5.

The ERPs' conflict of interest is fundamental.  A fundamental conflict that goes to the heart of the litigation defeats adequacy and precludes class certification (absent some structural assurance of fair and adequate representation for the diverse groups among the class).  *See In re Payment Card*, 827 F.3d at 231; *In re Literary Works*, 654 F.3d at 249.  In this antitrust action, whether merchants can be protected from Defendants' anticompetitive conduct (including Defendants' use of HAC rules) lies at the heart of the case.  The ERPs' incentive to trade away other merchants' needed injunctive relief thus presents a fundamental conflict that defeats adequacy.  *See In re Literary Works*, 654 F.3d at 252 (fundamental conflict among class subgroups precluded class certification where "[t]he selling out of one category of claim for another [was] not improbable").

*Second*, the ERPs will undermine some merchants' interests in negotiating for the best possible terms in their dealings with Visa and Mastercard.  In particular, and as explained above, the ERPs will likely seek an injunction that effectively prevents merchants like Walmart from trying to use their hamstrung bargaining power to negotiate for lower interchange rates for themselves.  Again, large merchants' limited bargaining power has enabled them to mitigate (to some degree) the damage caused by Defendants' anticompetitive conduct.[25]  The ERPs' plan to disable such bargaining power proves that they will undermine other class members' interests if their mandatory class is certified.  Adequacy is lacking where named plaintiffs seek relief directly adverse to other class members' interests.  *See Allen v. Dairy Farmers of Am., Inc.*, 279 F.R.D.

---

[25] *See In re Payment Card*, 986 F. Supp. 2d at 239 ("[D]efault interchange operates only in the absence of bilateral agreement, and some of the very large merchants have sufficient transaction volume that they can actually negotiate for their own, lower interchange structures.").

257, 274 (D. Vt. 2011) (named plaintiffs inadequate who sought to "recover from, punish, and prohibit" the activities of other class members).

In short, the ERPs have fundamental conflicts of interest with Walmart and other class members. They have no inclination to "vigorously pursu[e]" certain claims of the class, and they have interests "antagonistic to the interests of other class members." *In re Literary Works*, 654 F.3d at 249 (citation and quotation marks omitted). They (and their counsel) have incentives to trade the interests of one group of merchants for those of another group. *In re Payment Card*, 827 F.3d at 234. Thus, they are not adequate class representatives for purposes of Rule 23(a)(4).[26]

## II.   Cohesion Is Lacking, and Rule 23(b)(2) Is Not Satisfied, Because the ERPs Will Not Seek Injunctive Relief that Benefits the Entire Class and Have Failed to Show that Such Relief Exists.

The proposed class is not sufficiently cohesive to be certified, and fails the express requirements of Rule 23(b)(2), because the ERPs will not seek an injunction that benefits the entire class and have not shown that a single injunction *could* provide classwide relief.

Rule 23(b)(2) permits a mandatory class to be certified when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief *is appropriate respecting the class as a whole*." Fed. R. Civ. P.

---

[26] The foregoing also raises questions about the motives of ERP counsel. "Class counsel stood to gain enormously" from the settlement that the Second Circuit rejected; a settlement where counsel had incentives to trade away some merchants' interests to benefit other merchants. *In re Payment Card*, 827 F.3d at 234; *but see id.* (declining to impugn class counsel's motives or actions). This precedent suggests that ERP counsel similarly expect a windfall here, especially given that they are not seeking meaningful relief for many class members—and are not providing adequate disclosure to absent class members of what relief they are seeking. The adequacy prong of Rule 23(a)(4) requires that class counsel be free of conflicts of interest. *See Amchem*, 521 U.S. at 626 n.20 (adequacy analyzes, among other things, the "competency and conflicts of class counsel"); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (holders of present and future claims in the same class must have subclasses with separate representation "to eliminate conflicting interests of counsel").

23(b)(2) (emphasis added). The Supreme Court has held that this Rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class," and "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (emphasis in original). As a result, "[t]he touchstone of a 23(b)(2) class is that the class claims must be cohesive." *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020); *see In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 343 (S.D.N.Y. 2002) ("The hallmark of the (b)(2) action is homogeneity." (citation and quotation marks omitted)). This cohesion requirement stems from the text of the Rule. *See Shook v. Bd. of Cty. Commissioners of Cty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (the "cohesiveness" requirement relates to the need for final injunctive relief to be appropriate respecting the class as a whole); *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 5:15 (2012) ("Every circuit to address the issue (other than the Ninth Circuit) has held that Rule 23(b)(2) requires a showing of cohesiveness among class members."). The need for cohesion is particularly great in mandatory classes because these classes do not offer opt-out rights to class members who will be bound by an action's outcome. *In re MTBE*, 209 F.R.D. at 343 ("Indeed, '[t]he cohesiveness requirement is greater in a Rule 23(b)(2) class action [than in a 23(b)(3) action], because unnamed class members are bound by the action without the opportunity to opt out.'" (citation omitted)).[27]

---

[27] *See also In re St. Jude Med.*, 425 F.3d 1116, 1121 (8th Cir. 2005) (because class members "are bound by the action without the opportunity to opt out of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class") (citation and internal quotation marks omitted).

The lack of cohesion here (and the ERPs' failure under the text of Rule 23(b)(2)) is evident because the ERPs do not intend to seek relief that benefits the entire class.  The ERPs suggest that, because Defendants' anticompetitive practices allegedly affect each class member, Rule 23(b)(2) certification is warranted because an injunction against these practices would benefit all class members.[28]  *See* ERP Br. at 34-42.  The ERPs also suggest that certifying a mandatory class is permissible even where class members would benefit to different degrees from the injunction sought.[29]  But the ERPs have proposed injunctive "relief" that would (a) not meaningfully help many merchants (ending no-surcharge rules), (b) restrain merchants from negotiating for the best possible terms in their dealings with Defendants, and (c) forfeit relief that many merchants need (a thorough rollback of HAC rules).  Many class members would be *harmed* by an injunction such as the one the ERPs apparently intend to seek; this is one reason why the Second Circuit previously rejected a proposed class settlement with some of these same features.  *See In re Payment Card*, 827 F.3d at 238.  That the ERPs (a handful of small merchants) and other class members (including larger merchants) want divergent forms of injunctive relief underscores how differently they have been injured by Defendants' conduct.[30]

---

[28] Again, Walmart disputes the premise of this argument, as not all of Visa and Mastercard's network rules apply to every merchant.

[29] *See* ERP Br. at 45 ("The fact that class members may differ in their willingness and/or ability to take full advantage of [classwide] relief does not negate the value of that relief.").

[30] Fellow intervenors NRF and RILA (the "Merchant Trade Groups") provide other examples of how injunctive relief benefitting some merchants would not benefit others.  As they note, under Visa's and Mastercard's network rules following the 2013 settlement, class members that accept American Express cannot surcharge, while those that do not accept American Express have limited surcharging rights.  For that reason, any changes to no-surcharge rules will affect those class members differently and will not "provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.  Furthermore, merchants that do not take mobile payments will not benefit from injunctive relief that eliminates anti-competitive Visa and Mastercard rules concerning mobile payments.

Thus, class members' conflicting interests and priorities ensure that any injunction the ERPs secure (including through settlement) will not meaningfully benefit many other merchants. Practically speaking, many class members (particularly large merchants) must seek injunctive relief separately to avoid further restraint or injury. This is functionally the same as class members having individualized injuries and needing individualized injunctions, which defeats cohesion. *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012) ("Accordingly, we find that the requested individual relief implicitly establishes that at least some of the proposed class's underlying claims allege individual injuries that are not uniform across the class; thus, as currently pleaded, the proposed class lacks cohesiveness to proceed as a 23(b)(2) class.").[31] Put another way, there is effectively no "indivisible" remedy providing relief to each class member, *Dukes*, 564 U.S. at 360, 362. And the named plaintiffs would not seek one even if one could be crafted. *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 n.8 (7th Cir. 2011) (Rule 23(b)(2) certification is "typically not appropriate" where "a uniform remedy will not redress the injuries of *all* plaintiffs" (emphasis in original)). Any final injunctive relief secured by the ERPs will not be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court should scrutinize whether the injunction the ERPs have in mind will benefit the entire class, and not stop its Rule 23(b)(2) analysis at whether Defendants have allegedly harmed the entire class. As courts have noted, the Rule requires *both* that defendants' actions affect all class members *and* that final injunctive relief be appropriate for the class as a whole; these are "two independent but related requirements," and the latter "is more restrictive." *Shook*, 543 F.3d at 604. The burden thus falls on movants to articulate how a specific injunction will benefit every

---

[31] *See also id*. at 848 (movants seeking certification under Rule 23(b)(2) must show that class members "have been harmed in essentially the same way" (citation and quotation marks omitted)).

class member, and courts have declined to certify mandatory classes where named plaintiffs failed to make this showing. *See M.D.*, 675 F.3d at 847-48 (finding cohesion lacking where named plaintiffs did not "give content to what it would mean" to provide their desired relief and "attempted to aggregate" multiple discrete challenges to Texas' conduct into one "super-claim"); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1873989, at *59 (D. Kan. Feb. 27, 2020) (denying Rule 23(b)(2) certification where plaintiffs "fail[ed] to describe the injunctive relief they seek with sufficient detail," leaving the court unable to "determine whether classwide injunctive relief is appropriate").[32] Here, the ERPs vaguely state that "[t]he equitable relief that Plaintiffs seek will be effective market-wide," ERP Br. at 45; meanwhile, their counsel and experts have suggested injunctive relief that will harm many class members and leave them vulnerable to further injury. Far from meeting their burden to show they will provide relief to every class member, the ERPs have shown the opposite.

The foregoing also points to another (related) problem. The ERPs' failure to propose relief appropriate for the entire class suggests that not only will *they* not pursue such relief, but that such relief does not even exist. The ERPs have not shown that a single injunction can offer meaningful "classwide relief" to every merchant that uses Visa and Mastercard payment cards. The Court should infer that there is no such uniform remedy and deny class certification accordingly. *See*

---

[32] *See also Kartman*, 634 F.3d at 893 (reversing class certification where proposed injunction was "far too general to satisfy Rule 65(d), yet to be more specific would essentially require the court to write an insurance-adjustment code"); *Shook*, 543 F.3d at 604 (stressing that "individual issues cannot be avoided simply by formulating an injunction at a stratospheric level of abstraction") (affirming denial of class certification because of difficulty of crating specific injunctive relief applicable to class as a whole); *In re MTBE*, 209 F.R.D. at 343 (Rule 23(b)(2) not satisfied where, among other things, the class' lack of cohesiveness "precludes this Court from issuing an injunction that would comply with Rule 65(d)'s requirement of specificity").

*Kartman*, 634 F.3d at 893 n.8 (Rule 23(b)(2) certification is "typically not appropriate" where "a uniform remedy will not redress the injuries of *all* plaintiffs").

Such problems will only get worse as time goes by. The ERPs seek to certify a class consisting of all merchants who accept Defendants' payment cards between December 18, 2020 "and *8 years* after the date of entry of Final Judgment in this case" (whenever that is). ERP Br. at 5 (emphasis added). This class definition reveals that the ERPs intend to bind absent class members to the relief ERPs choose to seek, or accept in settlement, well into the future. Yet the payments markets will continue to evolve in ways that were not contemplated when Visa and Mastercard devised the rules and practices currently being challenged[33]; and merchants will have new antitrust challenges to Defendants' network rules and anticompetitive conduct in the coming years. The ERPs cannot predict the circumstances under which those future claims will arise, and cannot adequately represent other merchants on the question of whether to release such claims.

This presents obvious concerns under Rule 23(b)(2). As explained above, the Rule requires the ERPs to show that the same injunction will provide relief to each member of the class. *See Dukes*, 564 U.S. at 360-61. The ERPs cannot hope to make this showing where they cannot predict the type of injunctive relief the members of their class will require. Merchants who innovate in the coming years should have the right to decide for themselves whether to challenge Defendants'

---

[33] The Merchant Trade Groups provide noteworthy examples in their opposition to class certification. When this MDL began, smartphones were not generally available; now, consumers routinely use their smartphones to pay for purchases, and merchants can similarly accept payments through their smartphones (generally with hardware add-ons). Furthermore, new peer-to-peer payment systems, such as Venmo and its competitors, have been developed. Visa recently sought to merge with a company that develops technology to operate payment platforms; in its antitrust lawsuit to block the merger, DOJ alleged that changes in the payments market are likely to increase as new companies innovate financial technology. Compl. [Doc. 1], *USA v. Visa Inc*., 4:20-cv-07810 (N.D. Cal. Nov. 5, 2020).

rules and conduct, as they are applied to new forms of payment and new technologies, and not be bound by a release imposed on a class certified in 2021.  At the least, class members (including Walmart) should be granted opt-out rights.

## III.    The Court Should Either Deny Class Certification, Grant Walmart an Opt-Out Right, or Exclude Walmart from the Class.

The adequacy, cohesion, and other conflict-of-interest problems presented here warrant outright denial of the ERPs' motion for class certification for failure to satisfy the requirements of Rule 23.  But should the Court decide that a class may be certified, it should provide Walmart an opt-out right or modify the class definition to exclude Walmart altogether.

Permitting Walmart to opt out of the class is fully warranted.  The ERPs and their counsel cannot adequately represent Walmart because of their conflicts of interest; these conflicts disappear (for Walmart) if Walmart can opt out.  Cohesion is critical in a mandatory class because class members lack opt-out rights, *see In re MTBE*, 209 F.R.D. at 343[34]; since cohesion is lacking here, it follows that opt-out rights are necessary.

There is also ample precedent and authority for providing opt-out rights to classes seeking injunctive relief.  The Second Circuit has explained that "the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) (citation and quotation marks omitted).[35]  Other Circuits agree.  *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577,

---

[34] *Id.* ("Indeed, '[t]he cohesiveness requirement is greater in a Rule 23(b)(2) class action [than in a 23(b)(3) action], because unnamed class members are bound by the action without the opportunity to opt out.'" (citation omitted)); *see also In re St. Jude Med.*, 425 F.3d at 1121 (because class members "are bound by the action without the opportunity to opt out of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class" (citation omitted)).

[35] *See also Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304-05 (2d Cir. 1990) (noting that "a district court, in a proper case and in the exercise of sound discretion, may allow a

20

582 (7th Cir. 2000) (reversing and remanding Rule 23(b)(2) certification to allow district court to consider various options, including certifying under Rule 23(b)(2) but using "its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity to opt out, as though the class was certified under Rule 23(b)(3)"); *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004) (while opt-out rights are not required, a district court has the discretion to order notice and opt-out rights when certifying a Rule 23(b)(2) class).[36] Walmart's prior litigation against Defendants provides a notable example. In *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 147 (2d Cir. 2001), this Court certified a class under both Rules 23(b)(2) and 23(b)(3). On appeal, the court affirmed only under Rule 23(b)(3), avoiding the "thorny question" of whether certification was proper under Rule 23(b)(2) and guaranteeing class members notice and opt-out rights. *Id.* at 147, *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006). The Court should permit Walmart to opt out here.

Any grant of opt-out rights (or revision of the class definition) should account for Walmart's unique posture in this litigation. Unlike other merchants who oppose class certification,

---

class member to opt out of a limited fund class action under Rule 23(b)(1)(B) in order to facilitate the fair and efficient conduct of the action" (internal quotation marks omitted)); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 393 n.10 (W.D.N.Y. 2005) (noting that "[a] district court has discretion to permit opt-outs in a (b)(1) or (b)(2) action").

[36] *See also* Ryan C. Williams, *Due Process, Class Action Opt Outs, and the Right Not To Sue*, 115 Colum. L. Rev. 599, 605 (2015) ("Taking seriously the right of absent class members to control whether or not their claims will be asserted may require that opt-out rights be extended to all situations in which the inclusion [in the class] . . . has the potential to affect the scope of a defendant's remedial obligation – *even where the action seeks only injunctive relief*.") (emphasis added); Mark C. Weber, *Preclusion and Procedural Due Process in Rule 23(b)(2) Class Actions*, 21 U. Mich. J. L. Reform 347, 381-87 (1988) ("An application of *Shutts* to Rule 23(b)(2) class actions demonstrates that the minimum due process requirements of notice and the opportunity to opt out are conspicuously absent. The Rule therefore violates due process.").

Walmart is not currently pursuing separate claims against Defendants. Thus, an opt-out right (or carve-out) provided only to those merchants that are now litigating their own individual claims would not address Walmart's situation. An opt-out right should be granted to Walmart specifically (along with other groups of merchants as the Court sees fit) or to class members, generally.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Equitable Relief Plaintiffs' motion for class certification under Rule 23(b)(2); or in the alternative, either grant Walmart an opt-out right or exclude Walmart from the class so that Walmart may protect its interests.

Dated: March 26, 2021

Respectfully submitted,

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

/s/ Paul H. Schoeman
Paul H. Schoeman
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100 (phone)
(212) 715-8064 (facsimile)

**DOWD BENNETT LLP**

James F. Bennett
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314-889-7300 (phone)
314-863-2111 (facsimile)

*Attorneys for Walmart Inc.*