UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE, <br><br> Plaintiffs, <br><br> v. <br><br> VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY, <br><br> Defendants. | MDL No. 1720 <br><br> Docket No. 05-md-01720-MKB-VMS |

**EQUITABLE RELIEF PLAINTIFFS' REPLY TO WALMART'S AND
MERCHANT TRADE GROUPS' OPPOSITIONS
TO MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

**PAGE**

I. DIFFERING PREFERENCES, WITHIN THE SET OF REFORMS THAT ALL MERCHANTS SEEK, DO NOT CREATE A CONFLICT WITHIN THE CLASS. ............. 2

II. THE POTENTIAL NEED FOR COURT MONITORING OF AN INJUNCTION DOES NOT CREATE A CONFLICT WITHIN THE CLASS ............................................. 5

III. THERE IS GOOD REASON TO INCLUDE FUTURE MERCHANTS IN THE CLASS. ........................................................................................................................ 6

CONCLUSION ......................................................................................................................... 9

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Alexander v. Miller*,
  2021 U.S. Dist. LEXIS 54545 (D. Kan. Mar. 23, 2021)..........................................................7

*Friedman v. Cal. State Employees Ass'n*,
  2000 WL 288468 (E.D. Cal. Mar. 15, 2000) ........................................................................5

*Fuller v. Fruehauf Trailer Corp.*,
  16 F.R.D. 588 (E.D. Mich. 1996) ........................................................................................5

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014).....................................................................................4

*Laumann v. National Hockey League*
  105 F. Supp. 3d 384 (S.D.N.Y. 2015)...................................................................................5

*Messier v. Southbury Training Sch.*,
  183 F.R.D. 350 (D. Conn. 1998)...........................................................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016).................................................................................................7

*Plaintiffs #1-21 v. Cty. of Suffolk*,
  2021 U.S. Dist. LEXIS 48462 (E.D.N.Y. Mar. 12, 2021) ....................................................7

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004).............................................................................................5

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012)........................................................................................4, 9

**Other Authorities**

Fed. R. Civ. P. 23(c)(1)(C) ...........................................................................................................7

Red. R. Civ. P. 23(b)(2) ..................................................................................................... *passim*

William B. Rubenstein, 1 *Newberg on Class Actions* § 3:15 (5th ed.)..........................................7

Equitable Relief Plaintiffs ("ERPs") submit this reply to the briefs submitted by the intervenors Walmart Inc. ("Walmart") and the Merchant Trade Groups ("MTGs") in opposition to ERPs' motion for class certification.[1] The intervenors' briefs largely echo the meritless arguments made by the Direct Action Plaintiffs ("DAPs") that there are differences among class members as to their preferences for remedies that make the class insufficiently cohesive or make the class representatives inadequate.[2] As ERPs have explained in their prior briefs, they seek to eliminate or overhaul Visa and Mastercard rules that apply to *all* merchants[3]—including the No-Surcharge, Default-Interchange, and Honor-All-Cards ("HAC") rules—and such relief would benefit *all* merchants, either directly or indirectly by fostering competition with respect to market-wide interchange fees.[4] In that context, intervenors' objections, like those of the DAPs, provide no basis for this Court to deny certification of a mandatory (b)(2) class.

---

[1] *See* Walmart's Supplemental Mem. of Law in Further Opposition to Equitable Relief Plaintiffs' Motion for Class Certification, ECF No. 8617 ("Walmart Supp. Mem."); Merchant Trade Groups' Supplemental Opposition to Equitable Relief Plaintiffs' Motion for Class Certification, ECF No. 8619 ("MTG Mem. #3").

[2] Walmart frames its opposition in terms of cohesion and adequacy; MTGs' opposition refers to intra-class conflict. The supplemental briefs also largely repeat Walmart's and MTGs' own earlier briefs. *See* Walmart's Mem. of Law in Opposition to Equitable Relief Plaintiffs' Motion for Class Certification, ECF No. 8465 ("Walmart Mem."); Merchant Trade Groups' Mem. of Law in Opposition to Equitable Relief Plaintiffs' Motion for Class Certification as Proposed, ECF No. 8468 ("MTG Mem. #1"); Merchant Trade Groups' Response to Defendants' and ERPs' Reply Mem. in Response to Oppositions to Class Certification, ECF No. 8479 ("MTG Mem. #2").

[3] Walmart asserts that not every one of the Merchant Restraints affects every class member. Walmart Mem. at 5, 16 & n. 28. But the network rules by their terms do in fact *apply* to every merchant. And it is undisputed that terminating or reforming those rules will *benefit* every merchant directly (e.g., allowing them to surcharge or selectively refuse acceptance of certain cards) or indirectly by generating a competitive payments marketplace that will lower interchange rates, and provide other benefits, for all merchants. *See* Reply Mem. in Further Support of Equitable Relief Plaintiffs' Motion for Class Certification, ECF 8457 ("ERP Reply Mem.") at 1, *See also* Ex. 3 to Declaration of Robert G. Eisler ("Eisler Decl.") in Support of ERPs' Mem., ECF No. 8448 (Expert Report of Keith Leffler dated December 18, 2020 ("Leffler Rpt.")), ¶79. All other exhibits appended to the Eisler Declaration ECF. No. 8448 will be referred to as "Ex.__").

[4] *See* Mem. of Law in Support of Equitable Relief Plaintiffs' Motion for Class Certification, ECF No. 8447 ("ERP Mem.") 29-31, 32-42, 45-46; ERP Reply Mem. 15-18.

1

Walmart and MTGs essentially raise three issues. First, Walmart and the MTGs erroneously claim that ERPs' "priorities" differ from those of the intervenors and other merchants because, the intervenors contend, ERPs' "focus" is on eliminating restrictions on surcharging rather than eliminating the HAC rules or default interchange. These complaints are premature, overstated, and irrelevant; differences over the best way to respond to common injury are not germane to the Rule 23(b)(2) analysis. Second, Walmart misreads Professor Stiglitz's innocuous suggestion that any decree should allow for court monitoring of Defendants' compliance, erroneously contending that it means that ERPs likely will seek an injunction that restrains large merchants from using their bargaining power to negotiate lower interchange rates from Defendants. Third, intervenors object that the proposed class includes future merchants, but this objection is also premature and unsupported by authorities.[5]

## I. DIFFERING PREFERENCES, WITHIN THE SET OF REFORMS THAT ALL MERCHANTS SEEK, DO NOT CREATE A CONFLICT WITHIN THE CLASS.

Intervenors contend that class members are not aligned with respect to remedies. As ERPs have already explained, however, it is premature to address purported conflicts with respect to the details of remedies. *See* ERP Reply Mem. 13. Should the class prevail on liability, the Court will determine the scope of the equitable relief based on its liability findings and further expert reports

---

[5] MTGs acknowledge that beginning in mid-2017, ERPs' counsel engaged in multiple extensive discussions with representatives from the Merchant Trade Groups. MTG Mem. #1 at 6. During these in-person meetings, and through additional written correspondence and other communications, representatives from the MTGs provided their views regarding the facts, the legal issues, and potential equitable relief. Counsel for the ERPs paused these conversations in 2019 because there was not then (and is not currently) a need for additional information; MTGs do not identify any such additional need. As we have done—extensively—in the past, we will continue to consult with MTGs, and with numerous other sources of industry knowledge and information, as the need arises.

2

and additional proceedings directed to the appropriate remedies.[6] In addition, should the class reach a settlement, it would have to be approved by the Court. In either case, intervenors (and other class members) will have the ability to object to relief that they deem adverse to or insufficiently aligned with their interests.

Intervenors' contention that ERPs are uninterested in substantially eliminating the Honor-All-Cards rules or default-interchange rules is simply untrue.[7] Indeed, ERPs' original class certification brief discusses the Honor-All-Cards Rule and default interchange *before* the No-Surcharge rule. ERP Mem. 8-12. ERPs' complaint alleges that the Honor-All-Cards rules and default-interchange rules are anticompetitive and unlawful.[8] Professor Stiglitz opines that Honor-All-Cards and default interchange are anticompetitive,[9] and his preliminary remedy proposal is largely to eliminate them.[10] Professor Carlton proposes eliminating Honor-All-Cards in states

---

[6] *See* ECF 7397 (Apr. 17, 2019) (order deferring expert reports as to appropriate injunctive relief until after any determination of liability). While intervenors seek to pick apart those portions of ERPs' experts' reports addressing remedies, those reports overwhelmingly addressed liability, and the remedy proposals are preliminary. *See, e.g.,* Stiglitz Dep. Tr. 209:16-24 (recommendation as to remedy was "preliminary . . . because as I said before, the market is evolving very quickly, and so — and evolving in terms of technology, and there are a lot of uncertainties about how this market is going to evolve, and uncertainties about how the market will evolve once we remove the merchant restraints").

[7] *See* Walmart Mem. at 7-8 (ERPs "not interested" in rolling back HAC rules), 11-12 (ERPs will "trade away" broad release that lets defendants keep abusing HAC rules), 16 (ERPs will "forfeit relief that many merchants need (a thorough rollback of HAC rules")); Walmart Supp. Mem. 3-4 ("ERPs will undermine merchants' interests in eliminating the anticompetitive conduct enabled and perpetuated by Defendants' HAC rules"); MTGs Mem. #3 at 6 ("ERPs' focus [is] on surcharging to the exclusion of relief that is more valuable to the merchant community writ large," and ERPs "give short shrift to Defendants' Honor-all-cards and default interchange rules").

[8] *See* ERP Compl., ECF No. 6910, ¶¶ 94, 113, 139-40, 144, 155-56, 216, 288-299, 364-428.

[9] *See* Ex. 2 ("Stiglitz Rpt.") ¶¶18-19, 22-23, 30, 34-35, 37, 87.

[10] *See* Stiglitz Rpt. ¶ 7(R)(iv) (eliminating default interchange for large banks); (v) eliminating honor-all-cards rule for large banks); ¶¶ 134-138; Ex. 25 ("Stiglitz Reply Rpt."), ¶¶ 83-85.

3

where surcharging is illegal.[11] Furthermore, ERPs' experts have opined that it is particularly important to remedy the "honor-all-wallets" rule, which is an application of the HAC rule to mobile devices.[12] Contrary to the contention of MTGs, ERPs did not ignore the "evidence about the harms to merchants from Honor-all-Cards and default interchange." MTG Supp. Mem. 5. Rather, ERPs cite extensive evidence of such harms (including references to the expert reports) in their class certification and summary judgment briefing.[13]

Moreover, no "cases suggest that class members all must have suffered the same exact injury in the exact same way. The cohesiveness element merely requires that plaintiffs' legal injuries be similar enough that they all can be remedied with a single 'indivisible' injunction." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 250 (S.D.N.Y. 2014). "Differences between the extent of harm suffered by each class member do not make Rule 23(b)(2) certification inappropriate." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 117 (E.D.N.Y. 2012).

---

[11] *See* Ex. 1 ("Carlton Rpt.") ¶¶ 8, 122. MTGs assert that "[s]urcharging alone will not meaningfully affect inflated interchange rates because surcharging is illegal in some states." MTG Mem. #3 at 2; *see id.* at 3 ("surcharging . . . is unavailable to the many merchants operating in states that ban the practice"); *id.* at 6. But that is exactly why Professor Carlton proposes to eliminate the Honor-All-Cards rule in those states. And contrary to MTGs' contention (Mem. #3 at 8) Professor Stiglitz would not limit the elimination of HAC to states that prohibit surcharging. *See* Stiglitz Rpt. ¶ 135 ("The Honor-All-Cards Rule has anticompetitive impact beyond the states not allowing merchants to charge for high-cost credit card use."); *infra* at n. 9-10.

[12] *See, e.g.,* Transcript of Dr. Keith Leffler dated February 26, 2021, 140:25-141:6 ("in my view the most beneficial economic impacts of equitable relief will be opening new ways of doing things, and I think electronic wallets represent an existential threat to Visa and Mastercard so that [eliminating the "honor-all-wallets" rules] will be a very important part of equitable relief"); Carlton Rpt. ¶ 115 (competition would be protected if Defendants were prevented from using tying to obtain market power over new payment methods); Stiglitz Rpt. ¶ 121 (Merchant Restraints impede competition from mobile wallets and emerging systems); *see also* ERP Mem. 11-12 (discussing anticompetitive effects of HAC rule as "honor-all-devices" rule).

[13] *See e.g.,* ERP Mem. at 11-12, 15-18, 34-38, ERP Opposition to Defendants' Motion for Summary Judgment on Plaintiffs' Post-IPO Conspiracy Claims, ECF No. 8167 at 1, 4, 5-7, 10-11, 19-21, ERP Opposition To Defendants' Motion for Summary Judgment Under *Ohio v. American Express*, ECF No. 8168 at 4-5, 7, 9 n. 102, 33, ERP Opposition to Visa and Bank Defendants' Motion for Summary Judgment on Plaintiffs' Monopolization Claims, ECF No. 8169 at 5-6.

Additionally, as ERPs have previously explained, a disagreement about the proper scope of relief is not a basis for denying certification.[14] Intervenors, like the DAPs, have "confuse[d] the question of whether a common injury unites the class with the distinct question of whether all class members agree how best to *respond* to the injury. It is the former, not the latter, that drives the Rule 23 analysis." [15] *Laumann v. National Hockey League* 105 F. Supp. 3d 384, 400 (S.D.N.Y. 2015) (also noting that "divergent interests within the class militate *in favor* of certification—because certification gives affected parties a greater voice in the litigation").[16]

## II. THE POTENTIAL NEED FOR COURT MONITORING OF AN INJUNCTION DOES NOT CREATE A CONFLICT WITHIN THE CLASS

Like the DAPs, Walmart misreads Professor Stiglitz's innocuous suggestion in his preliminary remedy proposal that it may be necessary for the Court to monitor Defendants' compliance to ensure that they "are not engaged in any conduct designed to undermine or

---

[14] *See* ERP Mem. at 30, 45 (citing cases); ERP Reply Mem. at 16 n.27 (citing additional cases).

[15] MTGs cite the *Visa Check/MasterMoney* case and the example of the (b)(3) settlements in this case to show that allowing opt outs will not scuttle the possibility of settling the injunctive relief claims. MTG Mem. #2 at 11-12. But they fail to address Dr. Leffler's analysis demonstrating that the ability of opt outs to hold up Defendants makes a settlement unlikely and certainly precludes an efficient settlement that benefits the class as a whole. Leffler Rpt., ¶¶70-79. The same hold-up pressure does not apply where only damages are stake, as with the prior (b)(3) settlements. Moreover, the *Visa Check/MasterMoney* case does not support MTGs' position for the reasons stated in ERPs' Reply Mem. at 19.

[16] As previously explained, "opt outs are inappropriate in a 23(b)(2) case where solely indivisible injunctive relief is sought that applies to—and benefits—all class members." ERP Reply Memo 19. The cases cited by intervenors to support opt-right rights (not previously addressed in ERPs' Reply Memo) are distinguishable. *See, e.g., Fuller v. Fruehauf Trailer Corp.*, 16 F.R.D. 588, 605 (E.D. Mich. 1996) (explaining opt-out rights in hybrid case that presented common issues for monetary relief and injunctive relief); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 680-81 (D. Kan. 2004) (discussing opt-out rights for (b)(2) hybrid class where "the monetary damages aspect of the conspiracy claim is certainly significant"); *Friedman v. Cal. State Employees Ass'n*, 2000 WL 288468, at *2, *5 (E.D. Cal. Mar. 15, 2000) (permitting opt-outs because some union members may not want the "fees" they paid returned).

5

circumvent the specific remedies ordered by the Court."[17] Walmart misreads this to mean that ERPs intend to seek relief that "effectively prevents merchants from trying to use what bargaining power they have to secure lower interchange rates for themselves."[18] In fact, ERPs have made clear that enhancing the ability of merchants, including large merchants, to negotiate lower interchange rates is the object of eliminating the Merchant Restraints,[19] and that "[d]isallowing opt outs would not prevent any individual Merchant from negotiating with the Defendants for better card-acceptance terms or rates."[20] In any event, the issue is premature for the reasons noted above and in ERPs' prior briefs.[21]

### III. THERE IS GOOD REASON TO INCLUDE FUTURE MERCHANTS IN THE CLASS.

MTGs object to the inclusion of future merchants, contending that ERPs do not explain why future merchants should be including in the mandatory class.[22] That is incorrect. ERPs have affirmatively shown in their class certification briefing that the Defendants' Merchant Restraints expressly apply to *every* merchant that accepts their payment cards. These *same* Restraints *will continue* to generally apply *to every future* merchant unless they are enjoined as a result of this

---

[17] Stiglitz Rpt. ¶ 169; *see id.* ¶ 166 ("*If* a *pattern* of . . . "selective" special deals develops, the Court *may* need to determine *whether* that pattern reflects the outbreak of competition, or its opposite – Defendants' limiting of deals to merchant category leaders designed to deter the outbreak of wider competition within the category.") (emphasis added).

[18] Walmart Mem. 8; *see id.* at 13; *id.* at 16 ("restrain merchants from negotiating for the best possible terms in their dealings with Defendants"); Walmart Supp. Mem. 4-5 ("ERPs will seek an injunction that disables large merchants' bargaining power" and "restrain[s] large merchants from negotiating for themselves").

[19] Stiglitz Rpt. ¶¶ 135, 176.

[20] ERP Mem. 50; *see also id.* at 30-31 (relief "will serve only as a baseline for all Merchants going forward"); ERP Reply Mem. 12.

[21] ERP Mem. 30; ERP Reply Mem. 12-13.

[22] MTG Mem. #1 at 21; MTG Mem. #2 at 5.

6

litigation. It is only logical then that a class trying to enjoin the Defendants' Restraints would include future class members, as is routinely done when courts certify a Rule 23(b)(2) class.[23] In fact, MTGs concede that they have no objection to future class members receiving the *benefit* of the injunctive relief obtained by ERPs in part because reforming the Merchant Restraints will benefit, directly and indirectly, every merchant in the class, including future merchants. *See* MTG Mem. #1 at 19. Moreover, the eight-year period is not random, but reflects the anticipated length of any decree ordered in the case. In the original (b)(2) settlement that was vacated by the Court of Appeals, for example, the injunctive relief was to last between eight and nine years,[24] and the Court raised no issue about including future merchants for that period of time. What the Court found problematic, at least in the context of the combined (b)(2) and (b)(3) classes, was that the vacated settlement "cover[ed] merchants that accepted (or will accept) Visa and/or MasterCard from November 28, 2012 onwards *forever*" and released certain claims *in perpetuity*, notwithstanding that the injunction terminated after eight to nine years.[25]

---

[23] *See* ERP Reply Mem. 18-19; *see also Plaintiffs #1-21 v. Cty. of Suffolk*, 2021 U.S. Dist. LEXIS 48462, *35-36 (E.D.N.Y. Mar. 12, 2021) (classes for injunctive relief can include future members and inclusion of future members does not cause a class to be unascertainable); *Messier v. Southbury Training Sch.*, 183 F.R.D. 350, 356 (D. Conn. 1998) ("a (b)(2) class may include future members who stand to benefit from a favorable outcome in the case"); *Alexander v. Miller*, 2021 U.S. Dist. LEXIS 54545, at *10 (D. Kan. Mar. 23, 2021) (including future class members protects [those] who would otherwise have to wait for [a violation] to occur before they seek a post-hoc remedy, and is precisely what the class action device is designed to prevent.); *see generally* William B. Rubenstein, 1 *Newberg on Class Actions* § 3:15 (5th ed.) (citing cases).

[24] *See* ECF No. 1656-1 Exh. 1, at ¶¶ 40, 58; *see also* Department of Justice, *New Approaches in the New Decade* ("the policy of the Antitrust Division is now generally to limit any behavioral relief stemming from consent decrees to ten years"), https://www.justice.gov/atr/division-operations/antitrust-division-update-2020/new-approaches-new-decade; David Gelfand & Elaine Ewing, *"Be Careful What You Wish For": U.S. Government Enforcement of Merger Consent Decrees*, 58 Antitrust Bulletin 225, 231 (2013) ("[t]he typical term of a consent decree is ten years").

[25] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 239 (2d Cir. 2016).

7

MTGs' argument against including future merchants in the Rule 23(b)(2) class based on "due process concerns" relating to any release of claims by future merchants as part of any settlement in this litigation[26] is premature. There is no settlement or release on the table, and the class definition can be amended before any judgment, if needed.[27] If, in fact, MTG's "mission [is] to speak for these [future] merchants, who by definition, cannot bring their views,"[28] they will be well placed to raise on their behalf any concerns relating to the terms of an actual settlement release at the appropriate settlement juncture, if necessary.[29]

MTGs also argue against including future merchants in the class because it is "a broad imprecise group" that will be part of an evolving payment card space.[30] As ERPs have previously pointed out, however, every adjudicative body that has reformed network rules like those at issue—whether judicial, administrative, or legislative—made the reforms *equally* applicable to all merchants. There is no reason to think that merchants that start up over the next eight years will be affected fundamentally differently from current merchants. *See* ERP Reply Mem. 5. Intervenors speculate that market conditions in the payment space will evolve over the next eight years in ways that will create a divergence in future merchants' interests. But they also concede that since the inception of this multi-district litigation some *15 years* ago, the payment space has already significantly changed (for example, they cite the introduction of the smart phone), yet Merchants are *still* vehemently fighting Defendants over the *same* Network Restrictions.

---

[26] *See* MTG Mem. #1 at 19, 23-24; MTG Mem. #2 at 5-8.

[27] *See* Fed. R. Civ. P. 23(c)(1)(C).

[28] Mot. to Intervene, ECF No. 8467, at 9.

[29] MTGs cite *Meachem v. Wing*, 227 F.R.D. 232, 234 (S.D.N.Y. 2005), *adhered to on denial of reconsideration*, 227 F.R.D. 237 (S.D.N.Y. 2005), for the proposition that future merchants should be excluded for due process reasons. That case, however, was decided based on a conflict between future and present class members in a settlement context that is not present here.

[30] *See* MTG Mem. #1, at 19-20; MTG Mem. #2, at 5-7.

8

Finally, MTGs argue that more confusion and protracted litigation will occur by including future merchants in the mandatory class because future merchants will seek to be excepted from any release or negative litigation result, claiming they were inadequately represented.[31] But this is groundless speculation. ERPs are adequate representatives of the future merchants for all the reasons discussed in their class certification briefing, namely that Defendants' Restraints *apply generally* to the class. Fed. R. Civ. P. 23(b)(2). With a certified class, ERPs will continue to litigate in the best interests of the future merchants. In contrast, if the class does not include them, future merchants face the risk of having to litigate their entitlement to relief ordered in this case, and the prospect that weaker or no relief will be obtainable in a settlement because Defendants are unwilling to settle without some protection from lawsuits by future merchants.[32] In short, the alternative to including future merchants in the class is the potential for the very "multiplicity of litigation" that Rule 23(b)(2) was designed to avoid.[33]

## CONCLUSION

For the foregoing reasons and the reasons in their opening memorandum of law and reply memorandum in further support of class certification, ERPs respectfully request that the Court grant their class certification motion.

Dated: August 27, 2021                By:    */s/ Robert G. Eisler*
                                             Robert G. Eisler
                                             Deborah A. Elman
                                             Chad B. Holtzman

---

[31] See MTG Mem. #1 at 25.

[32] Again, the Merchant Restraints *will continue* to generally apply *to every future* merchant unless they are enjoined as a result of this litigation.

[33] *In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 110 (finding class members will benefit from a single proceeding that is "far more manageable than a series of disjoined proceedings" and "adjudicating the claims in a single class action will promote uniformity of decisions and will protect courts from wasting resources on duplicative litigation") (citation omitted).

9

**Grant & Eisenhofer P.A.**
485 Lexington Ave., 29th Floor
New York, NY 10017
Phone: 646-722-8500
reisler@gelaw.com
delman@gelaw.com

Linda P. Nussbaum
Bart D. Cohen
Marc E. Foto
**Nussbaum Law Group, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Phone: 917-438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
mfoto@nussbaumpc.com

Steve D. Shadowen
Richard M. Brunell
Frazar W. Thomas
**Hilliard & Shadowen LLP**
2407 S Congress Ste E 122
Austin, TX 78704
Phone: 855-344-3298
steve@hilliardshadowenlaw.com
rbrunell@hilliardshadowenlaw.com
fraz@hilliardshadowenlaw.com

Michael J. Freed
Robert J. Wozniak
Brian M. Hogan
**Freed Kanner London & Millen LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: 224-632-4500
mfreed@fklmlaw.com
rwozniak@fklmlaw.com
bhogan@fklmlaw.com

*Interim Co-Lead Counsel for the Equitable Relief Class*