UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to: ALL ACTIONS

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

In December of 2019, this Court approved a class settlement agreement that resolved and terminated antitrust claims brought by a Rule 23(b)(3) Plaintiff Class against the Visa and Mastercard networks and various issuing and acquiring banks.[1] (Final Approval Order, Docket Entry No. 7818; Mem. & Order dated Dec. 16, 2019 (the "December 2019 Mem. & Order"), Docket Entry No. 7821.) In its order approving the settlement agreement, the Court expressed its intention to appoint a special master to resolve franchisor/franchisee disputes regarding who may claim settlement funds. (*See* December 2019 Mem. & Order 44.) The Court's approval orders are currently pending before the United States Court of Appeals for the Second Circuit on appeal. (*See* Remand Order, Docket Entry No. 8702.)

Currently before the Court is an order from the United States Court of Appeals for the Second Circuit, directing the Court to consider whether, in the event the Court's disposition of these franchisor/franchisee disputes is deemed not a final Judgment, "there is no just reason for delay in the appeal of all other issues." (Remand Order.)

---

[1] The action by the Rule 23(b)(3) class is one of many actions — some class actions and some individual lawsuits — that were consolidated together into a multi-district litigation in 2005. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 220 n.12 (E.D.N.Y. 2013).

For the reasons discussed below, the Court concludes that there is no just reason for delay and certifies the Final Approval Order as a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure.

**I. Background**

The Court assumes familiarity with the facts and extensive procedural history as set forth in prior decisions. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019). The Court therefore provides only a summary of the relevant facts and procedural history.

In June of 2019, the Rule 23(b)(3) Plaintiff Class moved for final approval of a class settlement agreement (the "Superseding Settlement Agreement") pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure. (Rule 23(b)(3) Class Pls.' Notice of Mot. for Final Approval ("Pls. Mot."), Docket Entry No. 7469; Mem. of Law in Supp. of Pls. Mot. ("Pls. Mem."), Docket Entry No. 7469-1.) The Court had preliminarily approved the class settlement in January of 2019. (Preliminary Approval Order, Docket Entry No. 7361.) On December 13, 2019, the Court granted final approval of the Superseding Settlement Agreement (Final Approval Order), and on December 16, 2019, the Court issued a Memorandum and Order explaining its December 13 Order, (December 2019 Mem. & Order).

The December 2019 Memorandum and Order discussed the objections to the Superseding Settlement Agreement, the majority of which were filed by "a group of entities that own and/or operate gas stations and convenience stores that sell petroleum products that are produced and branded by major oil refiners such as Shell and ConocoPhillips" (collectively, the "Branded Operators"). (December 2019 Mem. & Order 9, 16, 12–25.) The Branded Operators raised a

series of objections related to their concerns that they would be improperly excluded from settlement funds due to their franchisor/franchisee relationship with major oil suppliers and brands. (*Id.* at 16–25.)

The Court considered the Branded Operators' objections in its analysis of whether the Superseding Settlement Agreement was fair, reasonable, and adequate. (*See id.* at 31–63.) As relevant here, first, in considering the adequacy of representation by class counsel, the Court noted the Branded Operators' objections that they were not adequately represented by the Class Plaintiffs or Class Counsel, that they were members of an "unrepresented subclass," and that their interests would not be protected due to an "intra-class conflict" between the major oil suppliers and the Branded Operators. (*Id.* at 35–36.) In its Preliminary Approval Order, the Court had "found that the Branded Operators had not shown that Class Plaintiffs could not fairly and adequately protect the interests of the Branded Operators" because "the named Rule 23(b)(3) Class Plaintiffs seek to represent a finite class that desires and will receive the same type of relief — damages for past harm — and [] therefore all Rule 23(b)(3) Class Plaintiffs and members of the Rule 23(b)(3) class will have the same incentive to 'maximize cash compensation for past harm.'" (*Id.* at 36.) In the December 2019 Memorandum and Order, the Court "remain[ed] unpersuaded" that the class's interests were antagonistic to the Branded Operators' interests "or that [C]lass Counsel cannot adequately represent the Rule 23(b)(3) class." (*Id.*) In addition, the Court noted that the dispute between the Branded Operators and major oil suppliers would need to be resolved, but "need not be resolved through creation of subclasses or appointing new class representatives or counsel." (*Id.* at 37.) Although "[i]ssues will arise when settling such a large class," "[w]aiting to approve a class settlement until each and every issue is resolved would result in an unacceptable delay." (*Id.* at 38.) Further, the Court found that Class Counsel did

"not appear to be ignoring this issue," but rather "ha[d] been actively monitoring this issue and [was] cognizant that a claims administration process will need to be established to resolve these issues." (*Id.* at 38–39.)

Second, in assessing whether the settlement would effectively distribute relief to the class, the Court noted the Branded Operators' objections that they were "in the dark" as to whether "any mechanism [was] in place" to resolve the franchisor/franchisee issue and that an "administrative procedure" would be insufficient to resolve "the conflicts here." (*Id.* at 41.) The Court "acknowledge[d] that a process need[ed] to be in place to determine claim ownership in franchise/franchisee disputes such as those that the Branded Operators have raised" and stated that it would "appoint a special master to resolve such disputes." (*Id.* at 44.) It noted that a "nearly identical issue arose" in *In re Visa Check/Mastermoney Antitrust Litigation*, and that the court in that case "appointed a special master to resolve disputes over claims that did 'not fit within the category of challenges contemplated by the Settlement Agreement and Plan of Allocation.'" (*Id.* at 45; *see In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (E.D.N.Y.), Order dated Jan. 19, 2006, Docket Entry No. 1242.) The Plan of Administration and Distribution prepared by Class Counsel, which the Court approved, (December 2019 Mem. & Order 43), anticipated a process to challenge decisions by the Class Administrator, and "[a]dditional claims and dispute resolution procedures" could be "put in place with the appointment of a special master," (*id.* at 46).[2]

---

[2] The Court also denied the request by Jack Rabbit, LLC to appoint a "separate Special Master" to "exclusively handle the resolution of claims made[] by any Branded or Unbranded Gas Station owner versus their distributor," stating that if it became "apparent that a second special master [was] needed" during the administration of the settlement, the Court would "consider appointing one" at that time. (*Id.* at 44 n.16.) The Court also rejected Jack Rabbit,

4

Third, the Court noted that several of the Branded Operators critiqued the class definition, which the Court interpreted as a challenge to "the Rule 23(a) implied factor of ascertainability." (*Id.* at 63–64.) Some of the Branded Operators argued that the class definition and release were overbroad because they "encompass[ed] and release[d] all antitrust claims," and that if it were determined that the Branded Operators were not authorized claimants, "the proposed settlement release and class definition are so broad that the Branded Operators' state law indirect purchaser claims would be released, even though they would receive no compensation whatsoever." (*Id.* at 64.) The Court found that the class definition of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date" met the "modest threshold" of ascertainability and that "[t]he fact that disputes will inevitably arise and proof of who holds a claim may ultimately need to be analyzed during a claims administration process is not a sufficient basis to reject class certification." (*Id.* at 65–66.)

On December 20, 2019, the Clerk of Court entered judgment disposing of the Rule 23(b)(3) class's claims. (Clerk's Judgment, Docket Entry No. 7832.) Multiple parties and groups of parties subsequently appealed the Clerk's Judgment, the Final Approval Order, and the December 2019 Memorandum and Order to the United States Court of Appeals for the Second Circuit.[3]

---

LLC's request to "include a rebuttable presumption in favor of Branded Operators," finding that there was "no legal basis to do so." (*Id.*)

[3] (*See* Notice of Appeal, Docket Entry No. 7837; Notice of Appeal, Docket Entry No. 7839; Subsequent Notice of Appeal, Docket Entry No. 7840; Notice of Appeal, Docket Entry No. 7845; Subsequent Notice of Appeal, Docket Entry No. 7846; Notice of Appeal, Docket

On July 12, 2022, the United States Court of Appeals for the Second Circuit remanded the case to this Court for the limited purpose of determining whether, in the event its disposition of the dispute between the service stations and oil companies is deemed not a final Judgment, there is no just reason for delay in the appeal of all other issues. (Remand Order.) The Circuit reserved jurisdiction pursuant to this "*Jacobson* remand." *See United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994).

## II. Discussion

### a. Standard of review

Certification pursuant to Rule 54(b) of the Federal Rules of Civil Procedure is a "permissive, not mandatory, mechanism to be 'exercised in the interests of sound judicial administration.'" *B.V. v. Allergan, Inc.*, No. 12-CV-2650, 2016 WL 3390802, at *2 (S.D.N.Y. June 14, 2016) (quoting *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). "Rule 54(b) authorizes a district court to enter partial final judgment 'when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an "express[] determin[ation] that there is no just reason for delay."'" *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (alterations in original) (quoting *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014)); *see also Genomma Lab USA, Inc. v. Carruitero*, 763 F. App'x 110, 111–12 (2d Cir. 2019) ("Before certifying a judgment, district courts are required to expressly determine that there are 'no just reasons for delay.'" (quoting Fed. R. Civ. P. 54(b))); *S.E.C. v. Frohling*, 614 F. App'x 14, 17 (2d Cir. 2015) (describing

---

Entry No. 7848; Notice of Appeal, Docket Entry No. 7853; *see also* Mandate of U.S. Ct. of App., Docket Entry No. 7932 (stipulating to withdraw appeal); Mandate of U.S. Ct. of App., Docket Entry No. 8687 (stipulating to dismiss appeal).)

conditions under which district court may enter partial final judgment (quoting Fed. R. Civ. P. 54(b))); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 355 (2d Cir. 2011) (discussing a district court's ability to find "no just reason for delay" (quoting Fed. R. Civ. P. 54(b))). "The determination of whether there is no just reason to delay entry of a final judgment is a matter committed to the sound discretion of the district court." *Roberts v. Bennaceur*, 658 F. App'x 611, 619 (2d Cir. 2016) (quoting *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998)); *see also Negrete v. Citibank, N.A.*, No. 15-CV-7250, 2017 WL 2963494, at *2 (S.D.N.Y. July 11, 2017) (noting that the determination of whether just reason for delay exists "is left to the [c]ourt's discretion[,] . . . provided that [the certified claims] are not 'inherently inseparable from' or 'inextricably interrelated to' other claims remaining in the suit" (quoting *HSW Enters., Inc., v. Woo Lae Oak, Inc.*, No. 08-CV-8476, 2010 WL 1630686, at *1 (S.D.N.Y. Apr. 21, 2010))).

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved." *Roberts*, 658 F. App'x at 619 (alterations in original) (quoting *Novick v. AXA Network, LLC*, 642 F.3d 304, 311 (2d Cir. 2011)). "[I]n making the 'express determination' required under Rule 54(b), district courts should not merely repeat the formulaic language of the rule, but rather should offer a brief, reasoned explanation." *Guippone v. Bay Harbour Mgmt. LC*, 434 F. App'x 4, 6 (2d Cir. 2011) (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)); *see also NYSA Series Tr. v. Dessein*, 631 F. App'x 54, 56 (2d Cir. 2015) ("A statement by a district court only of its conclusion, in the language of [Rule 54(b)],

that 'there is no just reason for delay,' unaccompanied by any explanation of the assessments that led to that conclusion, would be insufficiently explained." (collecting cases)).

In light of the "historic federal policy against piecemeal appeals," the Second Circuit has cautioned that "[a] certification under Rule 54(b) should be granted only if there are interests of sound judicial administration and efficiency to be served, or, in the infrequent harsh case," where "there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal.'" *Harriscom Svenska AB*, 947 F.2d at 629 (first quoting *Curtiss–Wright Corp.*, 446 U.S. at 8; and then quoting *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980) (per curiam), *overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987)). In determining whether certifying partial final judgment pursuant to Rule 54(b) is appropriate, courts should "consider such factors as whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Novick*, 642 F.3d at 311 (alteration omitted) (quoting *Curtiss–Wright Corp.*, 446 U.S. at 8).

Claims are generally treated as separable within the meaning of Rule 54(b) "if they involve at least some different questions of fact and law and could be separately enforced, or if 'different sorts of relief' are sought." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21–22 (2d Cir. 1997) (first citing *United States v. Kocher*, 468 F.2d 503, 509 (2d Cir. 1972); then citing *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, AAA U.S. 572, 580–81 & n.18 (1980); and then citing 10 Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 2657 (2d ed. 1983)); *see also Gallo Wine Distrib., L.L.C. v. Niebaum-Coppola Est. Winery, L.L.P.*, 56 F. App'x 8, 9 (2d Cir. 2003) (stating that claims may be treated as separable "if they

8

involve different questions of fact and law, even if they arose out of the same transaction and occurrence" (citing *Cullen*, 811 F.2d at 711)).

### b. There is no just reason for delay in the appeal of all other issues

The Second Circuit has ordered that this Court render a determination regarding one of the three requirements for certification under Rule 54(b): whether there is "no just reason for delay" in the appeal of all other issues. (Remand Order.) The Court therefore considers whether (1) judicial administrative interests or (2) equitable considerations weigh in favor of certifying a partial final judgment on the Damages claims pursuant to Rule 54(b). *Roberts*, 658 F. App'x at 619.

#### i. Judicial administrative interests weigh in favor of certification

The policy against piecemeal appeals "requires that the court's power to enter such a final judgment before the entire case is concluded, thereby permitting an aggrieved party to take an immediate appeal, be exercised sparingly." *Harriscom Svenska AB*, 947 F.2d at 629. The Second Circuit has therefore advised against Rule 54(b) certification "if the same or closely related issues remain to be litigated," because the interests of judicial economy are not generally served by "'piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case' in successive appeals from successive decisions on interrelated issues." *Novick*, 642 F.3d at 311 (quoting *Harriscom Svenska AB*, 947 F.2d at 629, 631); *see also NYSA Series Tr*, 631 F. App'x at 56 ("[A] 'unified' appeal 'is particularly desirable where . . . the adjudicated and pending claims are closely related and stem from essentially the same factual allegations.'" (quoting *Cullen*, 618 F.2d at 228)); *see also Negrete*, 2017 WL 2963494, at *2 (denying certification because dismissed and remaining claims arose out of the same factual circumstances, even if implicating different legal questions).

9

Judicial administrative interests weigh in favor of certification because, although approval of class settlement and resolution of disputes over the distribution of settlement funds are conceptually related, they rely on distinct fact and law. *See Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989) (describing "the purposes and policies behind the distinct and separate claims requirement of Rule 54(b)" as "the desire to avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law" (citing *Curtiss–Wright Corp.*, 446 U.S. at 8)). First, the two issues rest on entirely separate law. Whether the Superseding Settlement Agreement is "fair, reasonable, and adequate" turns on factors outlined in Rule 23(e) and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). (*See* December 2019 Mem. & Order, 26–28); *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154–55 (S.D.N.Y. 2013). Before approving a class settlement agreement, a court also must determine "whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re American Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012); (*see also* December 2019 Mem. & Order, 28–30). Whether a franchisor or franchisee is properly entitled to settlement funds, on the other hand, requires no consideration of any of these factors. Rather, at issue is the much narrower question of whether it was the franchisor or franchisee that "accepted [] Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date." (December 2019 Mem. & Order 65 (quoting Superseding Settlement Agreement, annexed to Pls. Mot., Docket Entry No. 7469-2).) Second, the two issues do not meaningfully rest on the same set of facts. In a general sense, both class settlement and the distribution of the class settlement funds arise from the facts underlying the

Rule 23(b)(2) Class settlement. Evaluation of the class action settlement, however, requires the reviewing court to evaluate the settlement procedures, the terms of the settlement agreement, and the larger context of the litigation, including the interests of the class members and the costs, risks, and possible outcomes of litigation. (*See* December 2019 Mem. & Order 31–74); *Weinberger v. Kendrick*, 698 F.2d 61, 73–74 (2d Cir. 1982) (stating that "whether a proposed class action settlement is fair, reasonable and adequate involves consideration of two types of evidence," namely "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and "the negotiating process by which the settlement was reached" (citations omitted)); *see also Grinnell*, 495 F.2d at 463 (listing the factors to be considered in determining whether to approve a class settlement, namely "the complexity, expense and likely duration of the litigation," "the reaction of the class to the settlement," "the stage of the proceedings and the amount of discovery completed," "the risks of establishing liability," "the risks of establishing damages," "the risks of maintaining the class action through the trial," "the ability of the defendants to withstand a greater judgment," and the range of reasonableness of the settlement fund in light of the "best possible recovery" and "in light of all the attendant risks of litigation"); *see, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118–19 (2d Cir. 2005) (applying *Grinnell* factors). Resolution of franchisor/franchisee disputes, on the other hand, requires an evaluation of the specific facts governing acceptance of Visa and Mastercard branded cards and payment of associated interchange fees. (Notably, because all members of the class, including both franchisors and franchisees, "have the same incentive to 'maximize cash compensation for past harm,'" whether the franchisors or franchisees are ultimately members of the class is irrelevant to the possible outcome of the litigation. (December 2019 Mem. & Order 36.))

11

Because final settlement approval and franchisor/franchisee disputes stem from neither the same law nor "essentially the same factual allegations," *NYSA Series Tr.*, 631 F. App'x at 56 (quoting *Cullen*, 618 F.2d at 228), there is no risk of requiring the appellate court to "review identical facts" in successive appeals, *Horn v. Med. Marijuana, Inc.*, No. 15-CV-701, 2019 WL 4871499, at *1 (W.D.N.Y. Oct. 3, 2019) (quoting *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 154 (E.D.N.Y. 1999)). The Court therefore concludes that judicial administrative interests weigh in favor of certification.

### ii. Equitable considerations weigh in favor of certification

"[I]n light of the policy against piecemeal appeals, it is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment." *Novick*, 642 F.3d at 314. In determining whether to grant Rule 54(b) certification, courts should consider whether "postponing appeal until after a final judgment has been entered . . . [would] cause unusual hardship or work an injustice." *Shaheed v. City of New York*, No. 14-CV-7424, 2018 WL 3455406, at *2 (S.D.N.Y. July 18, 2018) (quoting *Hogan*, 961 F.2d at 1026); *Hogan*, 961 F.2d at 1025 (reversing the district court's Rule 54(b) certification as insufficiently reasoned because the court gave no indication that "the case was an exceptional one or that there would be any unusual hardship in requiring [the parties] to await, in accordance with normal federal practice, the disposition of the entire case before obtaining appellate review of the dismissal of their claims"). For example, equitable considerations may weigh in favor of granting certification "where a plaintiff might be prejudiced by a delay in recovering a monetary award." *Advanced Magnetics, Inc.*, 106 F.3d at 16 (first citing *Curtiss–Wright Corp.*, 446 U.S. at 11–12; and then citing *Ginett v. Comput. Task Grp, Inc.*, 962 F.2d 1085, 1097 (2d Cir. 1992));

*see also Pereira v. Cogan*, 275 B.R. 472, 474 (S.D.N.Y. 2002) ("Courts have frequently found no just reason for delay, and entered a Rule 54(b) judgment, when the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings." (collecting cases)); *New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605, 2018 WL 3046514, at *4 (S.D.N.Y. June 20, 2018) (declining to grant Rule 54(b) certification as "[p]laintiff has not been awarded any judgment or monetary recovery for his . . . claims, . . . [and therefore,] is not prejudiced by any delay in payment," in contrast to cases where "the district courts entered monetary judgments in favor of plaintiffs, and the appellate courts affirmed the district courts' decisions to enter final judgments under Rule 54(b) because further delay in receiving the adjudged payment would work undue hardship on the plaintiffs" (first citing *Curtiss–Wright Corp.*, 446 U.S. at 11–12; and then citing *Ginett*, 962 F.2d at 1097)).

The Court concludes that equitable considerations weigh in favor of Rule 54(b) certification. Because the settlement fund will be apportioned on a *pro rata* basis, (December 2019 Mem. & Order 6), resolution of the franchisor/franchisee disputes will not affect the funds payable to the non-franchisor/franchisee members of the class. These class members will face hardship if they are required to wait for a final judgment until all franchisor/franchisee disputes have been resolved. *See Curtiss–Wright Corp.*, 446 U.S. at 6 (1980) (finding that a party would "suffer severe daily financial loss from nonpayment of the $19 million judgment because current interest rates were higher than the statutory prejudgment rate"); *Advanced Magnetics, Inc.*, 106 F.3d at 16 (noting that there is "some danger of hardship or injustice through delay" where "a plaintiff might be prejudiced by a delay in receiving a monetary award"); *Ginett*, 962 F.2d at 1097 (affirming decision that "further delay would work an undue hardship on" a plaintiff who "was fired three years ago and has yet to receive any of the severance pay to which he was

13

entitled"). The Court notes that at least one court in this District has previously found that requiring a plaintiff to "wait for a separate trial to pursue damages" did not constitute an "'unusual hardship' or injustice." *Samtani v. Cherukuri*, No. 11-CV-2159, 2013 WL 2181037, at *4 (E.D.N.Y. May 20, 2013). However, the current litigation has been extraordinarily prolonged — the first consolidated Amended Class Action Complaint was filed in April of 2006, (Am. Compl., Docket Entry No. 317) — and the settlement amount is extraordinarily large, (*see* December 2019 Mem. & Order (noting that Class Counsel believes the award to be "the largest cash settlement in antitrust class action history")). Given how long these claims have been pending and "the large amount of money involved," the Court concludes that the equities weigh in favor of Rule 54(b) certification. *Curtiss–Wright*, 466 U.S. at 6.

### III. Conclusion

For the foregoing reasons, the Court certifies its December 13, 2019 Final Approval Order approving the Superseding Settlement Agreement as a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure.

Dated: July 18, 2022
      Brooklyn, New York

SO ORDERED:

        s/ MKB
MARGO K. BRODIE
United States District Judge