**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE PAYMENT CARD
INTERCHANGE FEE
AND
MERCHANT DISCOUNT
ANTITRUST LITIGATION

**Case No. 05-MD-01720 (MKB) (JO)**

**PROPOSED INTERVENORS, JACK RABBIT, LLC, AND 280 STATION
LLC (D/B/A/ COWBOYS), AMENDED, RENEWED, MOTION FOR LEAVE TO
INTERVENE AND MEMORANDUM IN SUPPORT PURSUANT TO FED. R. CIV. P. 24**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **i**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**AMENDED RENEWED MOTION TO INTERVENE** . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**MEMORANDUM OF LAW IN SUPPORT OF AMENDED RENEWED MOTION TO INTERVENE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**INTRODUCTION/PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**I.  THIS COURT HAS JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**II.  PROPOSED INTERVENORS MEET THE REQUIREMENTS FOR INTERVENTION AS A MATTER OF RIGHT PURSUANT TO RULE 24(A)** . . . . . . . . . .

    **A.  THE PROPOSED INTERVENORS' MOTION IS TIMELY** . . . . . . . . . . . . . . . . . . .

    **B.  THE PROPOSED INTERVENORS' INTERESTS IN THESE PROCEEDINGS ARE DIRECT AND SUBSTANTIAL AND MAY BE IMPAIRED ABSENT THEIR INVOLVEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    **C.  PROPOSED INTERVENORS' INTERESTS WILL BE INADEQUATELY REPRESENTED IF THEY ARE NOT PERMITTED TO INTERVENE** . . . . . . . . . . .

**III.  IN THE ALTERNATIVE, PROPOSED INTERVENORS MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(B)** . . . . . . . .

**IV. AT THE FAIRNESS HEARING, CLASS COUNSEL PROVIDED THIS COURT REGARDING THE USE OF A SPECIAL MASTER IN THE CASE OF VISA CHECK MASTERMONEY ANTITRUST LITIGATION; IN WHICH THE COURT APPOINTED A SPECIAL MASTER.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**V.  PROPOSED INTERVENORS HAVE NOT BEEN ABLE TO IDENTIFY ANY CASE WHEREIN A DISTRICT COURT GAVE THE AUTHORITY TO DECIDE THE CONSTITUTIONAL ISSUE OF A CLASS MEMBER'S STANDING TO A SPECIAL MASTER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# TABLE OF AUTHORITIES

## CASES

*(JBA),* 2019 WL 3337889 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*1 (U.S. Nov. 13, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

136 S. Ct 1036, 194 L. Ed. 2d 124 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 17

626 N.E. 1st . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*In re AOL Time Warner ERISA Litig., Number 02 CV. 8853 (SWK),* 2007 WL 3145111 . . . . .  26

*In re Agent Orange Production Liability Litig.,* 94 F.R.D. 173 (E.D.N.Y. 1982) . . . . . . . . . .  25

*Belfiore v. New York Times Company,* 826 F.2d 177 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . .  25

*C.D.S., Incorporated v. Bradley Zetler, cDs, LLC, Number 16 CIV. 3199 (VM),* 2016 WL 7668473. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*CIT Bank, N.A. v. Langley, 117CV1548ADSAKT,* 2019 WL 6050258 . . . . . . . . . . . . . . . . . . .  23

*CIT Bank, N.A. v. Metcalfe, Number 15-CIV-1829,* 2017 WL 3841852. . . . . . . . . . . . . . . . . .  23

*Chesa Internationall, Limited v. Fashion Assocs., Incorporated,* 425 F. Supp. 234 (S.D.N.Y.), aff'd, 573 F.2d 1288 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Cobell v. Norton,* 184 F. Supp. 2d 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Commack Self-Serv. Kosher Meats, Incorporated v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) . .  18

*In re Emex Corporation Sec. Litigation., Number 01 CIV. 4886(SWK),* 2004 WL 444538 . . . .  26

*In re Enron Corporation Securities, Derivative and Erisa Litigation,* 2004 WL 405886 (S.D. Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Gonzalez v. Mid-Continent Casualty Company,* 969 F.3d 554 (5th Cir. 2020) . . . . . . . . . . . .  11

*Grutter v. Bollinger,* 188 F.3d 394 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Gulino v. Board of Educational of City Schools District of City of New York, Number 96 CV*

*8414 KMW,* 2013 WL 4647190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hanover Shoe, Incorporated v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S. Ct 2224, 20
L. Ed. 2d 1231 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 8

*Hatten-Gonzales v. Earnest, Number CV 88-0385 KG/CG,* 2018 WL 1665643 . . . . . . . . . . . 22

*Hnot v. Willis Grp. Holdings, Limited.,* 234 F. App'x 13 (2d Cir. 2007) . . . . . . . . . . . . . . . 12

<u>*Illinois Brick Company v. Illinois,*</u> 431 U.S. 720, 97 S. Ct 2061, 52 L. Ed. 2d 707
(1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 27

*In re Holocaust Victim Assets Litig.,* 302 F. Supp. 2d 89 (E.D.N.Y. 2004), aff'd, 424 F.3d 132
(2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Hooker Chems. and Plastics Corp.,* 749 F.2d 968 (2d Cir. 1984) . . . . . . . . . 12

*Howard v. Canandaigua National Bank and Trustee Company, Number 09-CV-6513,* 2010 WL
11685276. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Joint Eastern and Southern Districts Asbestos Litig., Number CV 93-2129,* 1993 WL
604077. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*LaRouche v. Federal Bureau of Investigation,* 677 F.2d 256 (2d Cir. 1982) . . . . . . . . . . . 15, 17

*MasterCard International Incorporated v. Visa International Service Associationn,
Incorporated,* 471 F.3d 377 (2d Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Miller v. Silbermann,* 832 F. Supp. 663 (S.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Monsanto Company v. McFarling,* 363 F.3d 1336 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . 11

*Munoz v. Board of Educational of City Schools District of City of New York,* 841 F. App'x 310
(2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re New York City Asbestos Litigation,* 129 F.R.D. 434 (E.D.N.Y. and N.Y.Sup.Ct.1990) 23, 24

*New York v. Abraham,* 204 F.R.D. 62 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Peterson v. Islamic Republic of Iran, Number 10-CV-4518 (KBF),* 2018 WL 3019879 . . . . . . 26

*United States v. Pitney Bowes, Inc.,* 25 F.3d 66 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . 13, 15

*In re Rezulin Production Liability Litig.,* Number 00 CIV. 2843 (LAK), 2003 WL 649116 . . . . 24

*Rispler v. Sol Spitz Company,* Number 04 CV 1323 DLI ARL, 2006 WL 3335056 . . . . . . . . . 22

*Robertson Class Plaintiffs v. National Basketball Association,* 625 F.2d 407 (2d Cir. 1980) . . 23

*Seggos v. Datre,* Number 17CV2684SJFARL, 2017 WL 11681160 . . . . . . . . . . . . . . . . . . . . . . 26

*Sierra Club v. Robertson,* 960 F.2d 83 (8th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. Marsh,* 194 F.3d 1045 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Spangler v. Pasadena City Board of Educ.,* 552 F.2d 1326 (9th Cir. 1977)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Spokeo, Incorporated v. Robins,* 578 U.S. 330, 136 S. Ct 1540 (2016) . . . . . . . . . . . . . . . . 5, 14

*State of Kan. v. State of Colo.,* Number 105, ORIGINAL, 2003 WL 24027914 . . . . . . . . . . . . 25

*Tennison Brothers., Incorporated v. Thomas,* 556 S.W.3d 697 (Tenn. Ct. App. 2017) . . . . . . . 24

*In re Texaco, Incorporated Shareholder Litig.,* 20 F. Supp. 2d 577 (S.D.N.Y. 1998) . . . . . . . . 26

*Transunion LLC v. Ramirez,* 141 S. Ct 2190 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13, 17

*Trbovich v. United Mine Workers,* 404 U.S. 528 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United Nat. Foods, Inc.,* Number 3:09 CV 1983 JBA, 2011 WL

5930467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States Postal Service v. Brennan,* 579 F.2d 188 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . 19

*United States v. Visa U.S.A., Inc.,* Number 98 CIV. 7076 (BSJ), 2007 WL 1741885 . . . . . . . . 22

*United States v. Yonkers Bd. of Educ.,* 108 F.R.D. 199, 200 (S.D.N.Y. 1985) . . . . . . . . . . . . . 24

*In re Vivendi Universal, S.A. Sec. Litig.,* 284 F.R.D. 144 (S.D.N.Y.     2012) . . . . . . . . . . . . . 25

*Wash. Elec. Cooperative., Incorporated v. Mass. Municipal Wholesale Elec. Company,*
922 F.2d 92 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

iv

*Wells Fargo Bank, N.A. v. 390 Park Avenue Assocs., LLC, Number 16 CIV. 9112 (LGS),* 2018 WL 4373996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wolfe v. McDonough,* 34 Vet. App. 162 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Xerox Corporation v. International Business Machines Corp.,* 64 F.R.D. 367 (S.D.N.Y. 1974) 25

*United States v. Yonkers Board of Educ.,* 108 F.R.D. 199 (S.D.N.Y.    1985). . . . . . . . . . . . . 24

*Young v. Pierce,* 685 F. Supp. 984 (E.D. Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Zyprexa Production Liability Litig.,* 233 F.R.D. 122 (E.D.N.Y. 2006) . . . . . . . . . . . . . . 26

*In re Zyprexa,* 375 F. Supp. 2d 190 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1746 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. Rule 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. Rule 24(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 27

Fed. R. Civ. P. Rule 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 27

## AMENDED RENEWED MOTION TO INTERVENE

Proposed Intervenors, Jack Rabbit, LLC, and 280 Station LLC (d/b/a/ Cowboys),

("Proposed Intervenors") are Class Members who, all times during the January 1, 2004 to January

25, 2019 Class Period, ("the Class Period") were Retail Gas Stations which accepted Visa and

MasterCard Payment Cards from customers for payment at the gas pumps, and in their respective

convenience stores. Jack W. Kidd ("Mr. Kidd") is the managing member of both the Jack Rabbit

LLC, and the 280 Station LLC (d/b/a Cowboys). In his capacity as the managing member of both

LLCs, Mr. Kidd operates both Retail Gas Stations.

Under Mr. Kidd's management, during the Class Period, the Proposed Intervenors: had an

estimated $36 million in Visa and MasterCard Payment Card retail sales; and paid the entire

Interchange Fee and the Merchant Discount Fee on those retail Payment Card sales - as a portion

of the costs included in their Cost-Plus contracts with their Oil Distributors.

During the Class Period the Retail Gas Stations/ Proposed Intervenors were Cost-Plus

Direct Purchasers under *Illinois Brick's* Cost-Plus exception to the Indirect Purchaser rule[1]. i.e.,

during the Class Period, their Oil Distributors provided products and services, including the

processing of all of the Visa and MasterCard Payment Card transactions at the Proposed

---

[1] "But this Court in *Hanover Shoe* indicated the narrow scope it intended for any exception to its rule barring pass-on defenses by citing, as the only example of a situation where the defense might be permitted, **a preexisting cost-plus contract**. In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case. The competitive bidding process by which the concrete block involved in this case was incorporated into masonry structures and then into entire buildings can hardly be said to circumvent complex market interactions **as would a cost-plus contract**. *Ill. Brick Co. v. Illinois*, 431 U.S. 720 at 736, 97 S. Ct. 2061at 2069 (1977). (emphasis added)

1

Intervenors' Retail Gas Stations, at the gas pumps, and inside the convenience stores, on a Cost-Plus basis. And, during the Class Period, irrespective of whether the Oil Distributors, or a third party Payment Card processor on the Oil Distributer's behalf, processed Retail Gas Stations Visa and MasterCard Payment Card transactions, the Proposed Intervenors' paid the Interchange Fee and the Merchant Discount Fee - as a portion of the costs included in their Cost-Plus contracts with their Oil Distributors.                              .

During the Class Period, as the direct and proximate result of their Cost-Plus contracts with their Oil Distributors, the Proposed Intervenors suffered concrete injury and harm because, the Interchange Fee and the Merchant Discount Fee on the Proposed Intervenors' estimated $36 million in Visa and MasterCard Payment Card retail sales, were costs included in their Cost-Plus contracts with their Oil Distributors.

During the Class Period, as the direct and proximate result of their Cost-Plus contracts with the Proposed Intervenors, the Oil Distributors had no concrete injury or harm because - both the Interchange Fee and the Merchant Discount Fee paid on the Proposed Intervenors' estimated $36 million in Visa and MasterCard Payment Cards retail sales during the Class Period were one of the included costs paid by both Retail Gas Stations to their Oil Distributors.

Furthermore, on information and belief, pursuant to the industry standard, during the Class Period, all of the Oil Distributors entered into Cost-Plus contracts with all the Retail Gas Stations Owners in the United States who accepted any Visa-Branded Cards and/or MasterCard-Branded Cards. And those Cost-Plus contracts included the Interchange Fee and the Merchant Discount Fee as costs to be paid by the Retail Gas Stations to the Oil Distributers. Thus, at all times during the Class Period, no Oil Distributor suffered concrete injury or harm

2

from any Visa and MasterCard Payment Card transaction, at any Retail Gas Station.

Mr. Kidd's Declaration Pursuant to 28 U.S.C. § 1746, attached hereto and incorporated herein as Exhibit A, confirms the factual allegations of the preceding paragraphs under penalty of perjury.

Class Counsel are inviting constitutional error by arguing that this Court can rely on the business records of the Visa and MasterCard Defendants, compiled during the Class Period, to determine who was damaged by the Defendants[2]. This is clearly erroneous because: at all times during the Class Period, the Visa and MasterCard Defendants[3] were without knowledge of the existence of the Oil Distributors Cost-Plus contracts with the Proposed Intervenors, and all other Retail Gas Stations Owners in the United States; or that those Cost-Plus contracts included both the Interchange Fee and the Merchant Discount Fee as one of the included costs paid on a Cost-Plus basis by the Proposed Intervenors, and all other Retail Gas Stations Owners in the

---

[2] THE COURT [responding to Mr. Wildfang]:  No, but even your earlier statement when you seemed to suggest a position that I know defendants have taken that in fact the suppliers or distributors are really the ones with the claim here, which is a question I had for defendants, who I would like to hear from them as to why they believe that, but you've now stated on the record why the evidence before the Court or at least before you, I assume it's in the record somewhere, suggests that through the processing system it appears that the suppliers or the distributors are the ones with the claim. Fairness Hearing Transcript ("FHT"), page 66, lines 9-18

[3] MR. GALLO:  My opinion in that case would be that it's whoever directly pays the fee to the acquirer.  That's what I believe the planned administration says fairly read.
I don't think we need to get into direct and indirect who has antitrust standing.
THE COURT:  That's kind of where we are, that's what the parties are fighting over. The suppliers are saying we made the payment, right, and so ultimately even if a Jack Rabbit paid it subsequently, it sounds like you're saying they don't have a claim.
MR. GALLO:  I agree that it's the first person, the person that paid the fee in the first instance, that's true as a made of what the plan of administration says.  And I think it's also true as a matter of federal antitrust law. It's the person that paid directly that has the claim.  I think both of those things are true. FHT, page 91, lines 4-20

United States, to the Oil Distributors. To date neither Class Counsel or the Defendants have produced a single document that refutes the Proposed Intervenors legal position regarding Retail Gas stations Cost-Plus contracts.

Class Counsel are also inviting constitutional error by arguing that the constitutional issues with this settlement can be solved by a Special Master making individual claim decisions. Class Counsel is wrong. The Constitution requires that each and every class member have Article III standing. "Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) quoting from *Tyson Foods, Inc. v. Bouaphakeo*, 577 U. S. 442, 466, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). As discussed at the Fairness Hearing, the question of standing is a legal issue[4].

A Special Master cannot make a putative class members lack of Article III standing issue go away. Article III standing requires a plaintiff or class member to have suffered concert harm and injury. At all times during the Class Period, the Proposed Intervenors, and all the other Retail Gas Stations Owners in the United States, suffered concrete injury and harm as a result of their Cost-Plus contracts with their Oil Distributors.  Thus, as between the Proposed Intervenors and all other Retail Gas Stations Owners in the United States, and their Oil Distributors, only the

---

[4] MR. BACHARACH:  My name is Albert Bacharach I represent one client who has two LLCs, one of which sells at the merchant level branded gasoline and one that sells unbranded gasoline.  And my client, rather than the oil distributor, has Article III standing because my client actually paid the antitrust interchange fees and his oil suppliers didn't.
THE COURT:  So you're arguing this is a legal issue.
MR. BACHARACH:  It is, in fact, a legal issue that the Court can --
THE COURT:  So why hasn't anyone made a motion for the Court to decide this as a legal issue?
MR. BACHARACH:  I don't know, your Honor. FHT, page 15, lines 3-15

4

Retail Gas Stations Owners, such as the Proposed Intervenors - have Article III standing - and the right to recover individual damages from this class action settlement. Only the Proposed Intervenors and all other Retail Gas Stations Owners in the United States have suffered concrete injury and harm, as required by the Supreme Court.

As class members with Article III standing, the Proposed Intervenors move to intervene to ensure that all named plaintiffs, satisfy the constitutional concrete injury-in-fact requirement.

As the Court is aware: even when, as in this matter, a statute grants a person a statutory right, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540 (2016).

When Plaintiffs and Defendants entered into the Settlement Agreement, subsequently approved by this Court, they neglected to adequately define the class so as to ensure that every class member had Article III standing, arising from concrete injury and harm. i.e., they defined the settlement class as: "All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or MasterCard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019." They failed to include a final clause "and were damaged thereby." On its face that is a constitutional error because "**No concrete harm, no standing**." *Transunion LLC v. Ramirez,* 141 S. Ct. 2190 at 2214 (2021). (emphasis added)

As Cost-Plus Direct Purchasers under *Illinois Brick's* Cost-Plus exception to the Indirect Purchaser rule, Proposed Intervenors are class members with Article III standing because: during the Class Period, they accepted Visa and MasterCard Payment Cards from customers for payment at the gas pumps, and in their respective convenience stores; and they paid both the Interchange Fee and the Merchant Discount Fee as one of the included costs, paid on a Cost-Plus

basis to their Oil Distributors.

Class Counsel, and the putative class members who are Oil Distributers, have taken the position with the Court that the Proposed Intervenors, and all of the other Retail Gas Stations, are not *Illinois Brick* direct purchasers, and, as a result, do not have a legally cognizable injury and therefore lack standing to pursue their claims under the Sherman Act[5].

As a matter of law Class Counsel, the putative class members who are Oil Distributers, and the putative class members who are Franchisors are incorrect because, they have not taken into account the Supreme Court's Cost-Plus Direct Purchaser exception to the Direct Purchaser rule set forth by Justice White[6] in *Illinois Brick*.

At all times during the Class Period, irrespective of whether an Oil Distributor, or a third party Payment Card processor on their behalf, processed the Proposed Intervenors Visa and MasterCard Payment Card transactions, it was the Proposed Intervenors that paid the Interchange Fee and the Merchant Discount Fee, on each and every Payment Card transaction - as one of the costs included in their Cost-Plus contracts with their Oil Distributors.

---

[5] THE COURT:  Is that always the case, or is that just it depends on the relationship between the franchisee and franchisor? FHT, page 15, line 24- page, 16, line1.

   ...

   MR. BACHARACH:  In any industry where the supplier has the ability to insure their payment by factoring the payments from their customer in my case because the oil distributor sees my client, Jack Kidd, as their customer or franchisor or sees the dollar store owner as their franchisee/customer, ... FHT, page 16, lines 8-13

[6] Justice White first delineated the Cost-Plus Direct Purchaser exception to the Indirect Purchaser rule in *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 at 494, 88 S. Ct. 2224 (1968). (We recognize that there might be situations -- for instance, when an overcharged buyer has a pre-existing "cost-plus" contract, thus making it easy to prove that he has not been damaged -- where the considerations requiring that the passing-on defense not be permitted in this case would not be present.)

The Court's expressed intention to sort out the competing claims by empowering a Special Master to determine who "owns" any competing claims will not resolve the constitutional problem with the Settlement created by the class definition. However, a review of over 8,00 cases in this circuit fails to reveal a single instance wherein a Special Master was tasked with determining whether class members had Article III standing. In contrast, federal judges are regularly called upon to determine Article III standing in matters before them.

Pursuant to an Article III standing analysis, there are no competing claims for the same dollars between the Proposed Intervenors, and all others similarly situated class members, who are *Illinois Brick* Cost-Plus Direct Purchasers and the Oil Distributors, who are not class members because they have no concrete injury or damages, and thus, they have no Article III standing.

In light of the constitutional standing issue, which to date has been ignored by Class Counsel and the Defendants, Proposed Intervenors seek to intervene to protect their constitutional rights, and the constitutional rights of all other similarly situated Retail Gas Station class members, who are *Illinois Brick* Cost-Plus Direct Purchasers.

Proposed Intervenors are entitled to intervene because of the express failure of Class Counsel and all of the Named Plaintiffs to represent the interests of the Proposed Intervenors, and all other similarly situated Retail Gas Station class members, who are *Illinois Brick* Cost-Plus Direct Purchasers.

Furthermore, pending the Court's resolution of the Article III standing issue, and in consideration of the colossal effect that this issue will have on the distribution of the settlement res, it is respectfully suggested that no funds be distributed to class members pending final

7

resolution of the Retail Gas Station owners verses Oil Distributers standing issue.

Wherefore, the Proposed Intervenors seek to intervene as of right, pursuant to Rule 24(a), Fed. R. Civ. P., or with the Court's permission, pursuant to Rule 24(b), Fed. R. Civ. P. Intervention is necessary because of the express failure of Class Counsel and all of the Named Plaintiffs to represent their interests of the Proposed Intervenors and all other similarly situated Retail Gas Station class members who are Illinois Brick Cost-Plus Direct Purchasers.

### MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS, JACK RABBIT, LLC, AND 280 STATION LLC's (D/B/A/ COWBOYS), RENEWED MOTION TO INTERVENE

### PRELIMINARY STATEMENT

In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968) ("Hanover Shoe") and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ("Illinois Brick") the US Supreme Court created a bright line rule ("the *Illinois Brick* rule") to simplify determining damages in antitrust actions where an anti-competitively priced product sold by the manufacturer, may be sold, and resold, numerous times down the chain of distribution, linking the manufacturer to the ultimate consumer.

The *Illinois Brick* rule provides that for simplicity and manageability courts will presume that the antitrust injury, arising out of the purchase of an anticompetitively priced product, is only suffered by the first purchaser who is directly injured by the purchase; and delineated as the Direct Purchaser. Everyone else down the economic chain of distribution is ignored; those purchasers are delineated as the Indirect Purchasers. Thus, pursuant to *Illinois Brick* the proper antitrust plaintiff is, almost always, the first purchaser.

However, there is a major exception to the "almost always" first purchaser simplicity of

the *Illinois Brick* rule. That exception applies when the first purchaser has avoided antitrust-injury by having previously contracted to sell the product or service to a customer on a Cost-Plus basis. i.e., *Illinois Brick* provides that whenever the first purchaser, in this matter the Oil Distributor, is unaffected economically by the manufacturer or service provider's anticompetitive pricing - because their Customer/ Retailer is contractually obligated to absorb all of the first purchaser's costs - plus an agreed profit - the first purchaser's Customer/Retailer becomes the Cost-Plus Direct Purchaser because they are the first party directly injured by the manufacturer or service provider's anticompetitive pricing.

In *Illinois Brick* the Supreme Court reasoned that because the Cost-Plus Customer/ Retailer, and not the, first purchaser, in this matter the Oil Distributor, has suffered the concrete injury or harm, it is the Cost-Plus Customer/Retailer who has sustained the antitrust injury; which in turn gives rise to the Cost-Plus Customer/Retailer's Article III standing. As a result, the Cost-Plus Customer/Retailer, as a Cost-Plus Direct Purchaser, becomes the proper plaintiff to pursue the antitrust defendant.

In this matter, Proposed Intervenors are, like 168,000 other class members, Retail Gas Station Owners. During the Class Period: all 168,000 Retail Gas Station Owners accepted Visa and MasterCard Payment Cards for payment at the pump, and in their respective convenience stores; and paid the Defendants' Interchange Fee and the Merchant Discount Fee as a cost included in their Cost-Plus contract with their Oil Distributors.

As such, Proposed Intervenors, and all othe similar class members that are Retail Gas Station Owners, are all Cost-Plus Direct Purchasers pursuant to the Cost-Plus contract exception to the *Illinois Brick* rule.

9

The determination of which class members suffered the concrete injury or harm from any particular Payment Card transaction during the Class Period is problematic for the Court because the Defendants have no knowledge of any Oil Distributor/ account holder's Cost-Plus contracts[7] with the Retail Gas Stations, who accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time during the Class Period. To the best of the Defendants' knowledge they were only charging illegal Interchange Fees to the Oil Distributors/ account holders, and not the Retail Gas Station Owners. Thus, the Court and the claims administrator cannot use the Defendant's records of Payment Card transactions to determine who sustained concrete injury or harm. Payment to Oil Distributers, who are class members as the class is defined, but who have not sustained concrete injury or harm is constitutionally prohibited by Article III.

## I.
## POST ITS RULE 54(b) MEMORANDUM & ORDER, THIS COURT RETAINED JURISDICTION OVER ALL UNRESOLVED MATTERS, <u>INCLUDING THE PROPOSED INTERVENORS AMENDED, RENEWED, MOTION</u>

Absent this Court's Rule 54(b) partial-judgment determination, the Courts interim rulings that did not end the litigation in its entirely would be interlocutory, not immediately appealable,

---

[7] MR. GALLO:  My opinion in that case would be that it's whoever directly pays the fee to the acquirer.  That's what I believe the planned administration says fairly read. I don't think we need to get into direct and indirect who has antitrust standing.
THE COURT:  That's kind of where we are, that's what the parties are fighting over. The suppliers are saying we made the payment, right, and so ultimately even if a Jack Rabbit paid it subsequently, it sounds like you're saying they don't have a claim.
MR. GALLO:  I agree that it's the first person, the person that paid the fee in the first instance, that's true as a made of what the plan of administration says.  And I think it's also true as a matter of federal antitrust law. It's the person that paid directly that has the claim.  I think both of those things are true. FHT, page 91, lines 4-20

and subject to your possible revision. By entering a Rule 54(b) Memorandum & Order [ECF 8704], this court severed what became a final judgment regarding one or more - but fewer than all claims or parties - from the remaining claims and parties in the case. As a result the Second Circuit's review of the current appeals is now limited to those specific claims and parties regarding which the 54(b) determination was granted. Conversely, this Court retains jurisdiction over all other aspects of this ongoing litigation.  See *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 562 (5th Cir. 2020); *Monsanto Co. v. McFarling*, 363 F.3d 1336, 1343 n.1 (Fed. Cir. 2004).

## II.
## PROPOSED INTERVENORS MEET THE REQUIREMENTS
## FOR INTERVENTION AS A MATTER OF RIGHT

Proposed Intervenors seek to intervene in these actions to protect their direct interests in their claims to the settlement proceeds as Cost-Plus Direct Purchasers who actually paid the Interchange Fee and the Merchant Discount Fee on their retail VISA and MasterCard Payment Card sales and thereby sustained concrete injury or harm.  Proposed Intervenors easily meet the four-part test required by Rule 24(a)(2) for applicants for intervention as of right. Under Rule 24(a)(2), Proposed Intervenors motion must show that: (1) the application is timely; (2) it claims "an interest relating to the property or transaction which is the subject matter of the action;" (3) it is situated such that "disposition of the action may, as a practical matter, impair or impede [its] ability to protect [its] interests;" and, (4) its interest is "not adequately protected by an existing party." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir.2006); accord *St. John's Univ., New York v. Bolton*, 450 Fed.Appx. 81, 83–84 (2d Cir.2011) (summary

11

order).

While the Proposed Intervenors must meet all four requirements to intervene as of right, "[a]pplication of the Rule requires that its components be read not discretely, but together." *United States v. Hooker Chems. & Plastics Corp*., 749 F.2d 968, 983 (2d Cir. 1984). Thus, for instance, as in this matter, wherein Class Counsel has created a constitutional problem for the class and this Court "[a] showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation," while, "[s]imilarly, **where representation is clearly inadequate**, a lesser interest may suffice as a basis for granting intervention." Id. "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (emphasis added). "A district court has broad discretion under Rule 24(b) to determine whether to permit intervention on the basis that the Intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *St. John's Univ*., 450 Fed.Appx. at 84 (quoting Fed. R. Civ, P. 24(b)(2)).

Examination of the four factors reveals that Proposed Intervenors are timely seeking to protect direct interests that are imperiled by this litigation, and are not otherwise adequately represented, and will, without intervention, leave their interests unprotected, into the future, by Class Counsel.

### A.  THE PROPOSED INTERVENORS' MOTION IS TIMELY

"The determination of timeliness is in large part an equitable one, to be made based upon the totality of the circumstances" *Hnot v. Willis Grp. Holdings*, Ltd., 234 F. App'x 13, 14 (2d Cir.

2007), and "defies precise definition, although it certainly is not confined strictly to chronology," *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The totality of circumstances, and the constitutional issue raised, demonstrates that the Proposed Intervenors' motion is timely.

Bringing the constitutional issue created by Class Counsel and the Defendants to the attention of the Court, and again moving to intervene to protect class members who have suffered Article III concrete injury and harm from the claims of definitional class members who lack Article III standing is timely for any number of reasons.  First, Proposed Intervenors Renewed motion was circulated to all parties within 61 days from the date of the Second Circuit's July 8,2022 Certified Order to this Court (ECF 8702), and within 51 days of this Court's entry of a responsive Memorandum & Order (ECF 8704) on July 18, 2022.

That Memorandum & Order triggered the filing of the Renewed Motion. The Proposed Intervenors believe that the constitutional Article III standing issue must be resolved prior to the appointment of a Special Master; and that without their intervention, experience[8] shows neither Class Counsel or the Defendants will do so. This is especially concerning in light of the possibility that the Second Circuit may, based on their July 8, 2022 Certified Order to this Court (ECF 8702), take a pass on deciding any significant issue on appeal, and remand this matter for further proceedings. This would place the Proposed Intervenors, and all other similarly situated Retail Gas Station class members, before this Court without adequate, or any, representation. With intervention, the Proposed Intervenors will be assured that no settlement funds will be distributed before this Court decides the constitutional Article III standing argument, as required by *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ("Every class member must have Article

---

[8] THE COURT:  So why hasn't anyone made a motion for the Court to decide this as a legal issue? FHT, page 15, lines 33-14.

13

III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.' ... "No concrete harm, no standing." ) and *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Granting intervention would also reinforce the Court's position as a neutral umpire.

Uninjured class members, e.g., the Oil Distributor beneficiaries of their Cost-Plus contracts with Retail Gas Stations, can not be prejudiced, as they have not suffered concrete injury and harm.  "The most important criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993). Absent such prejudice, a motion will generally be deemed timely. Id.

Because the issue of Article III standing cannot be waived by the federal courts, Proposed Intervenors are not seeking to re-litigate any issue that has already been decided in this matter. Bringing the Article III standing issue once again to the attention of the Court will not add new or collateral issues. To the contrary, intervention will add to the focus and  assist moving forward in light of this Court's July 18, 2022 Memorandum & Order (ECF 8704) finding the previously entered Final Approval Order to be a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure. Cf. *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (denying motion to intervene when proposed intervenors sought to introduce new issues thus causing delay and prejudice to existing parties); *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (denying motion to intervene when intervention would radically alter scope of lawsuit and inject collateral issues). The focus of the Proposed

14

Intervenors is congruent with the Court's constitutional Article III class member standing obligations. Therefore, in the absence of any prejudice to the existing parties, Proposed Intervenors' motion should be deemed timely.

In addition to the primary question of whether existing parties have been prejudiced by any delay, another factor to be considered in determining timeliness includes the prejudice to the Proposed Intervenors, and all other similarly situated Retail gas Station class members, who have Article III standing - arising out of their concrete injury and harm - if the motion is denied. *Pitney Bowes*, 25 F.3d at 70. Furthermore, in the context of a motion to intervene as of right, a showing that Proposed Intervenors otherwise qualified to intervene, militates in favor of a finding of timeliness. *LaRouche v. Fed. Bureau of Investigation*, 677 F.2d 256, 258 (2d Cir. 1982). Currently this antitrust litigation focuses squarely on the recovery that class members with Article III standing are due under the settlement. If the Proposed Intervenors are not permitted to intervene, and the litigation continues in their absence, the potential constitutionally infirm resulting inconsistent - an unconstitutional - determinations of entitlement to settlement proceeds will result in appeals of the constitutional standing issue. The potential prejudice to the Proposed Intervenors, and all other similarly situated class members, who have Article III standing - arising out of their concrete injury and harm - is highlighted by the lack of advocacy specific to their interests leading to settlement. Without explicit representation the Proposed Intervenors, and all other similarly situated class members, who have Article III standing - arising out of their concrete injury and harm - will be subject to a prejudicial conflict under the settlement's terms and definitions without being provided a constitutionally mandated requirement that class members have Article III standing to recover from the settlement res.

**B.  PROPOSED INTERVENORS' INTERESTS IN THESE PROCEEDINGS ARE DIRECT AND SUBSTANTIAL AND MAY BE IMPAIRED ABSENT THEIR INVOLVEMENT**

Proposed Intervenors' interests in these proceedings are, without question, "direct, substantial, and legally protectable." *Wash. Elec. Coop*., 922 F.2d at 97. Proposed Intervenors have a direct interest in the subject matter: their claim to the settlement proceeds for their acceptance of Visa and MasterCard Payment Cards and their payment of the related interchange charges pursuant to their Cost-Plus contracts with their Oil Distributors. This interest is heightened by the fact that if Proposed Intervenors' interests, and the interests of all other similarly situated Retail gas Station class members, who have Article III standing - arising out of their concrete injury and harm - who are not being adequately represented by Class Counsel, who to date have shown no interest in the Article III standing issue: as it pertains to to Proposed Intervenors' interests, and the interests of all other similarly situated Retail gas Station class members; or even whether definitional class members - such as the Oil Distributors - have suffered concrete harm or injury.  Proposed Intervenors' interests are, and will continue to be, threatened if they are not permitted to appear in these proceedings because the Oil Distributers and the Defendants have already expressed a bias at the Fairness Hearing regarding how they interpret which class members will be able to recover under the Settlement. In any event, Class Counsel's suggestion to appoint a Special Master and wait-and-see approach does not sufficiently cover Proposed Intervenors, and all other similarly situated Retail Gas Station class members' constitutionally protected interests.

**C.  PROPOSED INTERVENORS' INTERESTS WILL BE INADEQUATELY REPRESENTED IF THEY ARE NOT PERMITTED TO INTERVENE.**

If Proposed Intervenors are not permitted to intervene, the existing parties to the litigation

16

will not adequately represent their interests. The Supreme Court has described the burden of showing inadequate representation as "minimal" and has made clear that a proposed intervenor need only show that representation "**may be inadequate**." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); see also LaRouche, 677 F.2d at 258. As a result, "[t]he proposed intervenors need show only that there is a potential for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999). "The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden." *Utah Ass'n of Counties*, 255 F.3d at 1254 (internal quotation marks omitted).

Lead to constitutional error by Class Counsel and the Defendants, this Court has previously stated that Class Counsel's duty will run only to whatever entity ultimately wins the dispute over the right to settlement funds. [D.E. 7363, Prelim. Appr. Order at 30 ("Class Counsel and Class Plaintiffs are not responsible to, and do not represent, the entity that loses the dispute over the right to claim settlement funds.")]. But pursuant to *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), "**Every class member must have Article III standing in order to recover individual damages**. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.' *Tyson Foods, Inc. v. Bouaphakeo*, 577 U. S. 442, 466, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). ... **No concrete harm, no standing**." (emphasis added)

The Court must resolve the Article III standing issue before a Special Master can determine actual competing claims - should any exist - between two, or more, class members who each have Article III standing with regard to the same Payment Card transaction.

Unlike Class Counsel or the Defendants, the Proposed Intervenors are prepared to provide

the necessary representation to develop a mechanism to be used to determine who has the Article III standing necessary to contest a claim. *See In re Enron Corp. Securities, Derivative & Erisa Litigation*, 2004 WL 405886, (S.D. Tex. 2004) "The Fifth Circuit Court of Appeals has approved the addition of plaintiffs to better represent potential subclasses where the named plaintiffs were not inadequate representatives." Additionally, to date, none of the named plaintiffs who have similar Article lII standing based on Cost-Plus contracts have brought the constitutional issue governing distribution of the settlement res to this Court's attention; despite actual knowledge of the Proposed Intervenors constitutional issue.

## II.
## IN THE ALTERNATIVE, PROPOSED INTERVENORS MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER RULE 24(B)

In the alternative, Proposed Intervenors should be allowed to intervene pursuant to Rule 24(b), which provides: "Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common" and the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." As a general rule, "[p]ermissive intervention is accorded the broad discretion of the court and is to be liberally granted." *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (internal quotation marks and citations omitted). Under Rule 24(b) there is no requirement that a proposed intervenor demonstrate inadequate representation of its interests by existing parties. See e.g. *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996); *New York v. Abraham*, 204 F.R.D. 62, 66–67 (S.D.N.Y. 2001).

For the reasons set out above, the instant motion is timely. And, as set out above, intervention will not prejudice the adjudication of the constitutional rights of the existing parties.

In considering the Purposed Intervenors' request for permissive intervention, this Courts may properly consider "whether parties seeking intervention will significantly contribute to full development of ... the legal questions presented." *United States Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The "just and equitable adjudication of the legal questions presented," id., requires the presence of Proposed Intervenors in this matter.

Thus, even if this Court should find intervention as of right inappropriate in this case, it should grant permissive intervention under Rule 24(b).

### IV.
### AT THE FAIRNESS HEARING, CLASS COUNSEL PROVIDED THIS COURT-INFORMATION REGARDING THE USE OF A SPECIAL MASTER IN THE CASE OF VISA CHECK MASTERMONEY ANTITRUST LITIGATION; IN WHICH THE COURT APPOINTED A SPECIAL MASTER

Parties to this case have contended that there is precedent to have class member disputes over ownership of claims remanded to a Special Master for adjudication. Specifically, this court was told that in *In Re Visa Check/Mastermoney Antitrust Litigation* ("Visa Check/Mastermoney"), that was how the disputes were resolved. That is misleading at best, because the circumstances of Visa Check/Mastermoney differ substantially from the payment card case before this Court. First, it should be noted that the parties in the current litigation have long been apprised of, and were well aware of the dispute between the oil companies/distributors and branded operators. In fact, the dispute was discussed at length at the fairness hearing. By contrast, in Visa Check/Mastermoney, the dispute between oil companies and branded operators was not disclosed to the Court until years after the approval of the settlement agreement. Furthermore, in Visa Check/Mastermoney, the Special Master was appointed to deliberate on

19

matters "relating to the relief agreed to in the parties' Settlement Agreements" *prior to* the disclosure to the court of the dispute between oil companies and branded operators. Last, following the order placing the dispute between oil companies and branded operators to the Special Master in Visa Check/Mastermoney, Lead Counsel informed the Court that "no such dispute [was] yet ripe for resolution by the Special Master."  As a result, the Court promptly vacated the deadline set for the Special Master's report and recommendation. More than a little Intrigued, Proposed Intervenors' Counsel contacted Special Master Robin Wilcox to find out what happened. She advised that she had "no recollection", but she was not comfortable researching the issue without Judge Brodie providing direction.

In a comprehensive review of the docket in that earlier case, Visa Check/Mastermoney Antitrust Litigation, it appears that Judge Gleeson ordered on December 20, 2005 [Doc.1242], Special Master Robin Wilcox submit a report and recommendation by January 6, 2006 regarding various disputes, including the dispute between oil companies and "the independent franchisees that license and operate under their brands…" Lead Counsel, in that case sent a letter to the Court seeking direction on November 17, 2005 [Doc.1220] which seems to have triggered the entry of the Court's order requiring Special Master Wilcox to submit a report by the above deadline. However, on January 19, 2006 [Doc. 1244], Judge Gleeson vacated the deadline in a text order referencing information obtained from, Lead Counsel, indicating that no such dispute is "yet ripe for resolution by the Special Master". Our further review of the docket in VISA Check indicates that there were no further entries regarding this issue.

At the Fairness Hearing on November 7, 2019, Class Counsel represented to the Court, "*And if Your Honor does what Judge Gleeson did back in 2005, he set up a process with a*

*Special Master to basically have test cases to see whether - you know, who owned the claim in a particular franchisor/franchisee situation.*."(Tr.p.67 Line 6-10) In response to the Court regarding "*has this issue come up in any other industry, so the hotel industry or anywhere else*?"(Tr. P.76L7-9), Class Counsel answered "*yes.*" (Tr.p.76 Line10)

The Court then asked, "*And how have you dealt with that*?" (Tr.p.76 Line11) Class Counsel responded, ". . .*It also came up years ago in the Visa check case where you had a franchisor/franchisee you actually had the petroleum industry at issue there with a Special Master was appointed*." (Tr.p.76 L12-15)

The details of the conclusion of the dispute in Visa Check/Mastermoney is material and relevant to this case. Yet that information has never been provided to this Court.  If granted the right, or permitted to, intervene Proposed Intervenors will make sure that this Court has all the mterial and relevant information regarding how the Visa Check/Mastermoney class member disputes over ownership of claims were resolved.

### V.
### PROPOSED INTERVENORS HAVE NOT BEEN ABLE TO IDENTIFY ANY CASE WHEREIN THE COURT GAVE THE AUTHORITY TO DECIDE THE CONSTITUTIONAL ISSUE OF A CLASS MEMBER'S STANDING TO A SPECIAL MASTER

In federal courts, Special Masters are appointed for specific purposes and are delegated a limited and defined scope of authority. Authorizing a Special Master to deliberate and resolve, what is know to be, a contested question of Article III standing between two class members reflects a disconnect from the well established duties, and scope of authority, bestowed upon Special Masters. A cursory search on Westlaw of cases involving Special Masters yields over 8,000 results in the Second Circuit alone.

For illustrative purposes, the typical obligations and responsibilities required of a Special Master are outlined below.

Special Masters are often tasked with monitoring, reporting and aiding in parties' compliance with court orders, settlement agreements and other matters that arise out of complex litigations. *See C.D.S., Inc. v. Bradley Zetler, cDs, LLC*, No. 16 CIV. 3199 (VM), 2016 WL 7668473, at *1 (S.D.N.Y. June 29, 2016) (Court appointed Daniel Garrie as a Special Master "to advise and make recommendations to the Court and the parties with respect to the technical questions in dispute [...], monitor compliance with the preliminary injunctive relief [...], and mediate disputes within the scope of the Preliminary Injunction Order."); *United States v. Visa U.S.A., Inc.*, No. 98 CIV. 7076 (BSJ), 2007 WL 1741885, at *1 (S.D.N.Y. June 15, 2007) (See Order of Aug. 18, 2005 ("Order of Reference") ( The Court appointed Special Master Paul Shechtman to determine whether Visa's By-Law 3.14 violates the Final Judgment); *Hatten-Gonzales v. Earnest*, No. CV 88-0385 KG/CG, 2018 WL 1665643, at *1 (D.N.M. Apr. 5, 2018)(Special Master to provide "expertise and advice to Defendant on issues related to compliance with the Consent Decree, court orders, and federal law…"); *Cobell v. Norton*, 184 F. Supp. 2d 1, 4-5 (D.D.C. 2002) (Special Master ordered to "verify compliance"); *Wolfe v. McDonough*, 34 Vet. App. 162 (2021)(" appointment of a Special Master to enforce the Court of Appeals for Veterans Claims' judgment…"); *Young v. Pierce*, 685 F. Supp. 984, 984 (E.D. Tex. 1988) ("Special Master for this action, to monitor the desegregation of HUD-assisted housing during the remedial phase of this litigation…").

Special Masters have also traditionally been appointed to assist the court in performing various accounting duties throughout the course of a particular case. *See Rispler v. Sol Spitz Co.*,

22

No. 04 CV 1323 DLI ARL, 2006 WL 3335056, at *1 (E.D.N.Y. Oct. 18, 2006) ("By order dated July 11, 2006 and modified August 29, 2006, this court appointed James F. Castro-Blanco, Esq. as Special Master to 'perform an accounting of all the retirement trust accounts and profit sharing plans relating to the instant litigation to determine whether earnings, forfeiture, and losses were properly allocated to the accounts of all participants.'" Order Appointing Special Master (ECF docket no. 121)); *CIT Bank, N.A. v. Langley*, 117CV1548ADSAKT, 2019 WL 6050258, at *6 (E.D.N.Y. Nov. 15, 2019); *CIT Bank, N.A. v. Metcalfe*, No. 15-CIV-1829, 2017 WL 3841852, at *1-2 (E.D.N.Y. Sept. 1, 2017) (appointing a Special Master to calculate "the outstanding principal, accrued late charges, related expenses and attorneys' fees" with respect to a mortgage foreclosure); *Chesa Int'l, Ltd. v. Fashion Assocs*., Inc., 425 F. Supp. 234, 238 (S.D.N.Y.), aff'd, 573 F.2d 1288 (2d Cir. 1977)(holding that "the Special Master was correct in computing defendants' profits…"); *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs*., LLC, No. 16 CIV. 9112 (LGS), 2018 WL 4373996, at *1 (S.D.N.Y. Sept. 12, 2018) ("appoint a Special Master or magistrate judge pursuant to Federal Rule of Civil Procedure 53 to calculate the amount due under the loan, as well as Plaintiff's fees, costs and expenses.")

Courts have also appointed Special Masters for the purposes of aiding in the settlement process. *See 456Corp. v. United Nat. Foods, Inc*., No. 3:09 CV 1983 JBA, 2011 WL 5930467, at *1 (D. Conn. Nov. 29, 2011) (Appointing "attorney Ecker as a Special Master for purpose of conducting a settlement conference."); *Robertson Class Plaintiffs v. Nat'l Basketball Ass'n*, 625 F.2d 407, 409 (2d Cir. 1980) ("District Court would appoint a Special Master 'who shall have exclusive jurisdiction to enforce the terms' of the settlement".); *In re Joint Eastern and Southern Districts Asbestos Litigation*; *In re New York City Asbestos Litigation*, 129 F.R.D. 434 (E.D.N.Y.

& N.Y.Sup.Ct.1990) ("Mr. Feinberg was to act as a settlement master-referee, mediating between the parties to avoid the necessity of extended trials in cases involving asbestos exposure at the Brooklyn Navy Yard. He was directed to attempt to settle the cases in four months, by June 1, 1990."); *In re New York City Asbestos Litig.*, 142 F.R.D. 60, 62 (E.D.N.Y. 1992) ("Special Master/Referee for the purpose of assisting in achieving a comprehensive resolution". ); *United States v. Yonkers Bd. of Educ.*, 108 F.R.D. 199, 200 (S.D.N.Y. 1985) ("[S]pecial master whose sole responsibility would be to assist the parties in efforts to achieve a negotiated settlement of this controversy."); *In re Holocaust Victim Assets Litig.*, 302 F. Supp. 2d 89, 91 (E.D.N.Y. 2004), aff'd, 424 F.3d 132 (2d Cir. 2005) ("Special Master's Proposed Plan of Allocation and Distribution of Settlement Proceeds 110-142."); *Howard v. Canandaigua Nat'l Bank & Tr. Co.*, No. 09-CV-6513, 2010 WL 11685276, at *1 (W.D.N.Y. Nov. 3, 2010) ("Special Master to oversee all aspects of the settlement and the settlement approval process, including a final recommendation to this Court as to whether the Class Action Settlement should be finally approved."); *In re Rezulin Prod. Liab. Litig.*, No. 00 CIV. 2843 (LAK), 2003 WL 649116, at *1 (S.D.N.Y. Feb. 27, 2003) ("[A]llocation of settlement payments among plaintiffs are confidential shall be made by the paying defendant or defendants to the Special Master.")

Courts have also employed Special Masters for the purposes of assessing damages in cases. *See Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 236 (S.D.N.Y.), aff'd, 573 F.2d 1288 (2d Cir. 1977) ("We appointed the Special Master to determine plaintiff's damages."); *Munoz v. Bd. of Educ. of City Sch. Dist. of City of New York*, 841 F. App'x 310, 311 (2d Cir. 2021) (Special Master tasked with assessing and appropriately adjusting damages.); *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 703 (Tenn. Ct. App. 2017) ("The trial court appointed a

24

Special Master to calculate damages and adopted the master's report in its entirety".); *Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2019 WL 3337889, at *1 (D. Conn. May 31, 2019), report and recommendation adopted, No. 3:14-CV-956 (JBA), 2019 WL 7602150 (D. Conn. Aug. 6, 2019) ("The Order specifies that the Special Master 'shall oversee the damages data retrieval, exchange and calculation process regarding the damages issues outlined…'"); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CV 8414 KMW, 2013 WL 4647190, at *13 (S.D.N.Y. Aug. 29, 2013) ("The Court also anticipates decisions regarding classwide damages calculations and individual hearings to be managed by a Special Master pursuant to Rule 53."); *State of Kan. v. State of Colo.*, No. 105, ORIGINAL, 2003 WL 24027914, at *1 (U.S. Nov. 13, 2003); *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 158 (S.D.N.Y. 2012) ("Any other damage calculation issues that may arise shall be referred initially to the Special Master…").

Special Masters have been appointing by the courts for the purposes of aiding and supervising the discovery process. *See In re Agent Orange Prod. Liab. Litig.*, 94 F.R.D. 173, 173 (E.D.N.Y. 1982) ("With discovery about to begin under control of the court, the defendants requested the appointment of a Special Master to supervise discovery".); *Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 369 (S.D.N.Y. 1974) ("Special Master for the purpose of recommending to the court resolutions of certain discovery disputes."); *In re Zyprexa*, 375 F. Supp. 2d 190 (E.D.N.Y. 2005) ("District Court would suggest to parties appointment of Special Master who would conduct, as opposed to supervise, general discovery on behalf of all plaintiffs, given likelihood that counsel for some plaintiffs would settle before discovery was completed."); *Belfiore v. New York Times Co.*, 826 F.2d 177, 179 (2d Cir. 1987) ("The district court appointed

25

a Special Master, Kenneth Wallace, to supervise discovery and pretrial proceedings."); *In re Joint E. & S. Districts Asbestos Litig.*, No. CV 93-2129, 1993 WL 604077, at *1 (E.D.N.Y. July 1, 1993) ("Special Master for purposes of holding hearings and reporting to the court…"); *Seggos v. Datre*, No. 17CV2684SJFARL, 2017 WL 11681160, at *1 (E.D.N.Y. Dec. 19, 2017) ("The Special Master shall manage and supervise the discovery phase of this case…").

Courts have further tasked Special Masters with assessing applications for attorney's fees. *See In re Zyprexa Prod. Liab. Litig.*, 233 F.R.D. 122 (E.D.N.Y. 2006) ("Special Masters would be ordered after consultation to recommend to the court a fee schedule providing for allocation of expenses and a reasonable attorney fee."); *In re Texaco, Inc. S'holder Litig.*, 20 F. Supp. 2d 577, 578 (S.D.N.Y. 1998) ("Court appointed Charles G. Moerdler, Esq. as a Special Master, pursuant to Fed.R.Civ.Pro. 53, to hear the application of plaintiffs' counsel for reasonable legal fees."); *In re AOL Time Warner ERISA Litig.*, No. 02 CV. 8853 (SWK), 2007 WL 3145111, at *1 (S.D.N.Y. Oct. 26, 2007) (Special Master Tasked with calculating attorney's fees and costs.); *In re Emex Corp. Sec. Litig.,* No. 01 CIV. 4886(SWK), 2004 WL 444538, at *1 (S.D.N.Y. Mar. 10, 2004) ("Court appointed Special Master Douglas Land, Esq. to review the attorneys' fee application."); *Peterson v. Islamic Republic of Iran*, No. 10-CV-4518 (KBF), 2018 WL 3019879, at *1 (S.D.N.Y. June 18, 2018) (Adopting Special Master's report and recommendation concerning "disputes among counsel regarding their entitlement to attorneys' fees for their claimed representation of plaintiffs…").

## CONCLUSION

For all of the foregoing reasons, Proposed Intervenors Jack Rabbit, LLC and 280 Station LLC (d/b/a/ Cowboys) are entitled to participate in this matter as Plaintiff-Intervenors to ensure

that the claims administrator and the Special Master do not resolve any class member disputes

over ownership of claims, or distribute any Settlement funds until after this Court resolves the

Proposed Intervenors' Article III standing issue regarding their - and 168,000 other similarly

situated Retail Gas Station class members, who are *Illinois Brick* Cost-Plus Direct Purchasers.

The Proposed Intervenors should be allowed ti inervene, either as a matter of right pursuant to

Fed. R. Civ. P. Rule 24(a) or permissively pursuant to Fed. R. Civ. P. Rule 24(b).


Dated this 3rd day of November, 2022.

Respectfully Submitted,

| | |
|---|---|
| /s/ Paul S. Rothstein<br>Attorney Paul S. Rothstein<br>Florida Bar Number: 310123<br>Attorney for Class Members/Proposed<br>Plaintiffs In Intervention Jack Rabbit, LLC &<br>280 Station LLC (d/b/a/ Cowboys)<br>Attorney Paul S. Rothstein, P.A.<br>626 N.E. 1st Street<br>Gainesville, FL 32601<br>(352) 376-7650<br>(352) 374-7133<br>E-Mail: psr@rothsteinforjustice.com | s/ N. Albert Bacharach, Jr.<br>N. Albert Bacharach, Jr.<br>Florida Bar Number: 209783<br>Attorney for ClassMembers/Proposed<br>Plaintiffs In Intervention Jack Rabbit, LLC &<br>280 Station LLC (d/b/a/ Cowboys)<br>N.Albert Bacharach, Jr., P.A.<br>4128 NW 13th Street<br>Gainesville, FL 32609-1807<br>(352) 378-9859<br>(352) 338-1858 (Fax)<br>E-Mail: N.A.Bacharach@att.net<br>        CourtDocuments@nabjr.com |


<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 3rd day of November, 2022, a true and correct copy of

the foregoing MOTION FOR LEAVE TO INTERVENE AND MEMORANDUM IN SUPPORT

has been served by ( ) United States Mail; ( ) Hand Delivery; (X) E-mail to: Service

Service List begins on Page 28

27

| Co-Lead Counsel for Class Plaintiffs | Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association |
|---|---|
| K. Craig Wildfang<br>Thomas J. Undlin<br>Ryan W. Marth<br>Robins Kaplan LLP<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402<br>Telephone: 612-349-8500<br>Facsimile: 612-339-4181<br>E-Mail: kcwildfang@robinskaplan.com<br>E-Mail: tundlin@robinskaplan.com<br>E-Mail: rmarth@robinskaplan.com | Robert J. Vizas<br>Arnold & Porter Kaye Scholer LLP<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111-4024<br>Telephone: 415-471-3100<br>Facsimile: 415-471-3400<br>E-Mail: robert.vizas@arnoldporter.com |
| H. Laddie Montague, Jr.<br>Merrill G. Davidoff<br>Michael J. Kane<br>Berger Montague PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Telephone: 215-875-3000<br>Facsimile: 215-875-4604<br>E-Mail: hlmontague@bm.net<br>E-Mail: mdavidoff@bm.net<br>E-Mail: mkane@bm.net | Mark R. Merley<br>Matthew A. Eisenstein<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, DC 20001-3743<br>Telephone: 202-942-5000<br>Facsimile: 202-942-5999<br>E-Mail: mark.merley@arnoldporter.com<br>E-Mail: matthew.eisenstein@arnoldporter.com |
| Patrick J. Coughlin<br>Alexandra S. Bernay<br>Carmen A. Medici<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619-231-1058<br>Facsimile: 619-231-7423<br>E-Mail: patc@rgrdlaw.com<br>E-Mail: xanb@rgrdlaw.com<br>E-Mail: cmedici@rgrdlaw.com | Robert C. Mason<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>Telephone: 212-836-8000<br>Facsimile: 212-836-8689<br>E-Mail: robert.mason@arnoldporter.com |
| | Michael S. Shuster<br>Demian A. Ordway<br>Blair E. Kaminsky<br>Holwell Shuster & Goldberg LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>Telephone: 646-837-5151<br>Facsimile: 646-837-5153<br>E-Mail: mshuster@hsgllp.com<br>E-Mail: dordway@hsgllp.com<br>E-Mail: bkaminsky@hsgllp.com |

| | |
|---|---|
| Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated<br><br>Kenneth A. Gallo<br>Zachary A. Dietert<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>Telephone: 202-223-7300<br>Facsimile: 202-223-7420<br>E-Mail: kgallo@paulweiss.com<br>E-Mail: zdietert@paulweiss.com<br><br>Gary R. Carney<br>Paul, Weiss, Rifkind, Wharton & Garrison, LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Telephone: 212-373-3000<br>Facsimile: 212-757-3990<br>E-Mail: gcarney@paulweiss.com | Attorneys for Defendants Bank of America, N.A., BA Merchant Services LLC (f/k/a National Processing, Inc.), and Bank of America Corporation<br><br>Mark P. Ladner<br>Michael B. Miller<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019-9601<br>Telephone: 212-468-8000<br>Facsimile: 212-468-7900<br>E-Mail: mladner@mofo.com<br>E-Mail: mbmiller@mofo.com |
| Attorneys for Defendants Barclays Bank plc, Barclays Delaware Holdings, LLC, (f/k/a Juniper Financial Corporation), Barclays Bank Delaware (f/k/a Juniper Bank), and Barclays Financial Corp.<br><br>Wayne D. Collins<br>James P. Tallon<br>Shearman & Sterling<br>599 Lexington Avenue<br>New York, NY 10022-6069<br>Telephone: 212-848-4000<br>Facsimile: 212-848-7179<br>E-Mail: wcollins@shearman.com<br>E-Mail: jtallon@shearman.com | Attorneys for Defendants Capital One Bank (USA), N.A., Capital One F.S.B., and Capital One Financial Corporation<br><br>Andrew J. Frackman<br>Abby F. Rudzin<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone: 212-326-2000<br>Facsimile: 212-326-2061<br>E-Mail: afrackman@omm.com<br>E-Mail: arudzin@omm.com |

| | |
|---|---|
| Attorneys for Defendants JPMorgan Chase & Co. (and as successor to Bank One Corporation), JPMorgan Chase Bank, N.A., Chase Bank USA, N.A. (and as successor to Chase Manhattan Bank USA, N.A. and Bank One Delaware, N.A.), and Paymentech, LLC (and as successor to Chase Paymentech Solutions, LLC)<br><br>Peter E. Greene<br>Boris Bershteyn<br>Kamali P. Willett<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>Telephone: 212-735-3000<br>Facsimile: 212-735-2000<br>E-Mail: peter.greene@skadden.com<br>E-Mail: boris.bershteyn@skadden.com<br>E-Mail: kamali.willett@skadden.com | Attorneys for Defendants Citibank, N.A., Citigroup Inc., and Citicorp.<br><br>David F. Graham<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: 312-853-7000<br>Facsimile: 312-853-7036<br>E-Mail: dgraham@sidley.com<br><br>Benjamin R. Nagin<br>Sidley Austin LLP<br>787 Seventh Ave<br>New York, NY 10019<br>Telephone: 212-839-5300<br>Facsimile: 212-839-5599<br>E-Mail: bnagin@sidley.com |
| Attorneys for Defendant Fifth Third Bancorp<br><br>Richard L. Creighton, Jr.<br>Drew M. Hicks<br>Keating Muething & Klekamp PLL<br>One East Fourth Street, Suite 1400<br>Cincinnati, OH 45202<br>Telephone: 513-579-6400<br>Facsimile: 513-579-6457<br>E-Mail: rcreighton@kmklaw.com<br>E-Mail: dhicks@kmklaw.com | Attorneys for Defendant First National Bank of Omaha<br><br>John P. Passarelli<br>James M. Sulentic<br>Kutak Rock LLP<br>1650 Farnam Street<br>The Omaha Building<br>Omaha, NE 68102<br>Telephone: 402-346-6000<br>Facsimile: 420-346-1148<br>E-Mail: John.Passarelli@KutakRock.com<br>E-Mail: James.Sulentic@KutakRock.com |

| | |
|---|---|
| Attorneys for HSBC Finance Corporation, HSBC Bank USA, N.A., HSBC North America Holdings Inc., HSBC Holdings plc, and HSBC Bank plc<br><br>David S. Lesser<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, NY 10007<br>Telephone: 212-230-8800<br>Facsimile: 212-230-8888<br>E-Mail: david.lesser@wilmerhale.com | Attorneys for Defendants The PNC Financial Services Group, Inc. (and as acquirer of National City Corporation), National City Corporation, and National City Bank of Kentucky<br><br>Frederick N. Egler<br>Reed Smith LLP<br>Redd Smith Center<br>225 Fifth Avenue<br>Pittsburgh, PA 15222<br>Telephone: 412-288-3396<br>Facsimile: 412-288-3063<br>Email: fegler@reedsmith.com |
| Attorneys for Defendants SunTrust Banks, Inc. and SunTrust Bank<br><br>Teresa T. Bonder<br>Valarie C. Williams<br>Kara F. Kennedy<br>Alston & Bird LLP<br>1201 West Peachtree Street NW<br>Atlanta GA 30309<br>Telephone: 404-881-7000<br>Facsimile: 404-881-7777<br>E-Mail: Teresa.Bonder@alston.com<br>E-Mail: Valarie.Williams@alston.com<br>E-Mail: Kara.Kennedy@alston.com | Attorneys for Defendant Texas Independent Bancshares, Inc.<br>Jonathan B. Orleans<br>Adam S. Mocciolo<br>Pullman & Comley, LLC<br>850 Main Street<br>PO Box 7006<br>Bridgeport, CT 06601-7006<br>Telephone: 203-330-2000<br>Facsimile: 203-576-8888<br>E-Mail: jborleans@pullcom.com<br>E-Mail: amocciolo@pullcom.com |
| Attorneys for Defendants Wells Fargo & Company (and as successor to Wachovia Corporation)<br><br>Robert P. LoBue<br>William F. Cavanaugh<br>Patterson Belknap Webb & Tyler LLP<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Telephone: 212-336-2000<br>Facsimile: 212-336-2222<br>E-Mail: rplobue@pbwt.com<br>E-Mail: wfcavanaugh@pbwt.com | s/ N. Albert Bacharach, Jr.<br>N. Albert Bacharach, Jr. |

31