Clerk's Office
Filed Date: 3/8/23

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

IN RE PAYMENT EXCHANGE INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to: ALL ACTIONS

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On January 24, 2019, the Court granted preliminary approval of a Rule 23(b)(3) Plaintiff

Class settlement agreement that resolved and terminated antitrust claims brought by Rule

23(b)(3) Plaintiff Class against the Visa and Mastercard networks and various issuing and

acquiring banks in this multi-district litigation.[1] (Jan. 2019 Order, Docket Entry No. 7361.) On

July 23, 2019, Jack Rabbit, LLC ("Jack Rabbit") and Cahaba Heights Service Center, Inc.

("Cahaba Heights") filed objections to the settlement agreement and a notice of intention to

appear at the November 7, 2019 final class settlement fairness hearing. (Obj. to Class Action

Settlement and Class Counsel's Request for Attorneys' Fees and Notice of Intent to Appear

("Jack Rabbit Obj."), Docket Entry No. 7574.) On September 16, 2019, Jack Rabbit and 280

Station, LLC filed a motion to intervene. (Mot. to Intervene, Docket Entry No. 7694; Mem. of

Law in Supp. of Mot. to Intervene, Docket Entry No. 7730.) On October 30, 2019, the Court

denied the motion to intervene. (Mem. & Order dated Oct. 30, 2019 ("October 2019 Decision"),

Docket Entry No. 7755.) In December of 2019, the Court approved the class settlement

---

[1] The action by the Rule 23(b)(3) class is one of many actions — some class actions and some individual lawsuits — that were consolidated into a multi-district litigation in 2005. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 220 n.12 (E.D.N.Y. 2013) (*Interchange Fees I*), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) (*Interchange Fees II*).

agreement (the "Superseding Settlement Agreement").[2] (Final Approval Order, Docket Entry

No. 7818; Mem. & Order dated Dec. 16, 2019 (the "December 2019 Decision"), Docket Entry

No. 7821.) In its order approving the Superseding Settlement Agreement, the Court expressed

its intention to appoint a special master to resolve disputes between service stations and oil

companies regarding who may claim settlement funds. (*See* December 2019 Decision 44–46.)

The Court's approval orders are currently pending before the United States Court of Appeals for

the Second Circuit.[3] (*See* Remand Order, Docket Entry No. 8702.)

Currently before the Court is Jack Rabbit's and 280 Station, LLC's (the "Proposed

Intervenors") renewed motion to intervene in the action before the Court (the "Renewed Motion

to Intervene"). (Renewed Mot. to Intervene, Docket Entry No. 8749.) For the reasons set forth

below, the Court denies the Renewed Motion to Intervene as barred by the pending appeal of the

Superseding Settlement Agreement.

## I. Background

The Court assumes familiarity with the facts and extensive procedural history set forth in

the December 2019 Decision and other previous orders. *In re Payment Card Interchange Fee &

Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472, at \*2 (E.D.N.Y. Dec. 16,

---

[2] On June 30, 2016, the Second Circuit vacated the original settlement agreement from 2013 and remanded the case to the Court. *Interchange Fees II*, 827 F.3d at 227.

[3] On July 12, 2022, the United States Court of Appeals for the Second Circuit "remand[ed] pursuant to the procedure set out in *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), for the District Court to consider whether, in the event the court's disposition of the dispute between the service stations and oil companies is deemed not a final Judgment, there is no just reason for delay in the appeal of all other issues" (the "*Jacobson* Remand Order"). (Remand Order, Docket Entry No. 8702.) In accordance with the *Jacobson* Remand Order, the Court found there was "no just reason for delay" in the appeal of all other issues and "certifie[d] December 13, 2019 Final Approval Order approving the Superseding Settlement Agreement as a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure." (Mem. & Order dated July 18, 2022 ("July 2022 Decision") 9, 14, Docket Entry No. 8704.)

2019) (summarizing the background and citing previous orders detailing additional facts and procedural history). The Court therefore provides only a summary of the relevant facts and procedural history.

In granting final approval of the Superseding Settlement Agreement, the Court considered objections, which, for the most part, were filed by a group of entities, including Proposed Intervenor Jack Rabbit, that own and/or operate gas stations and convenience stores that sell petroleum products that are produced and branded by major oil refiners such as Shell and ConocoPhillips. (December 2019 Decision 9, 12–25.) The objectors raised a series of objections related to their concerns that they would be improperly excluded from settlement funds due to their franchisor/franchisee relationship with major oil suppliers and brands. (*Id.* at 16–25.) First, they argued that they were not adequately represented by the Class Plaintiffs or Class Counsel, that they were members of an "unrepresented subclass," and that their interests would not be protected due to an "intra-class conflict" between the major oil suppliers and the gas station owners/operators. (*Id.* at 35–36.) Second, the objectors argued that they were "in the dark" as to whether "any mechanism [was] in place" to resolve the franchisor/franchisee issue and that an "administrative procedure" would be insufficient to resolve "the conflicts here." (*Id.* at 41.) Third, several of the gas station owners/operators critiqued the class definition, which the Court interpreted as a challenge to "the Rule 23(a) implied factor of ascertainability." (*Id.* at 63–64.) At the time of its initial objection, Jack Rabbit and Cahaba Heights took the additional step of moving to intervene based on those same objections, (Mot. to Intervene), which the Court denied on October 30, 2019, (October 2019 Decision). On December 16, 2019, after considering the objections, the Court granted final approval of the settlement. (December 2019 Decision.)

Jack Rabbit appealed both the denial of its motion to intervene and the approval of the Superseding Settlement Agreement.[4] However, on May 5, 2020, Jack Rabbit stipulated to the dismissal with prejudice of its appeal from the denial of the motion to intervene. *See* Order, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, No. 19-4065 (2d Cir. May 14, 2020). On January 5, 2021, Jack Rabbit filed an appellate brief arguing that the Court erred in: (1) ignoring that Class Counsel's interests are adverse to those of the appellants and that the appellants have Article II standing and are a subclass of cost-plus direct purchasers under *Illinois Brick*; (2) finding that Rule 23(A)(4)'s adequacy requirements were satisfied because class membership is not ascertainable and the class definition fails to require that the class members suffered an injury; and (3) breaching its fiduciary duty by failing to create a subclass of retail gas station owners, not appointing the subclass counsel, and delegating the court's decision making responsibility to a special master. Initial Brief of Objectors-Appellants Jack Rabbit and Cahaba Heights, *In re Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339 (2d Cir. Jan. 5, 2021) ("Jack Rabbit Merits Br."); *see also* Jack Rabbit's and Cahaba Heights' Letter dated August 4, 2022, *In re Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339, at *2 (2d Cir. Aug. 4, 2022) (requesting the Second Circuit remand the case to the district court due to a "constitutional deficiency" with the settlement class definition); Jack Rabbit's and Cahaba Heights' Letter dated March 15, 2022, *In re Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339, at *1–2 (2d Cir. Mar. 15, 2022) (raising supplemental arguments and citing new caselaw regarding Article III standing).

---

[4] Notice of Appeal, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, No. 19-4065 (2d Cir. Dec. 3, 2019); Notice of Appeal, *In re Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339 (2d Cir. Jan. 7, 2020).

On July 12, 2022, the United States Court of Appeals for the Second Circuit remanded

the case for the limited purpose of determining whether, in the event its disposition of the dispute

between the service stations and oil companies is deemed not a final Judgment, there is no just

reason for delay in the appeal of all other issues.  The remand order specified:

> The District Court intends to appoint a special master to decide which, as
> between the integrated oil companies and their branded service stations,
> shall be deemed to have accepted payment cards, and thus is within the
> certified settlement class. In order to obviate any complications regarding
> appellate jurisdiction that might otherwise arise from this unresolved issue,
> we remand pursuant to the procedure set out in *United States v. Jacobson*,
> 15 F.3d 19 (2d Cir. 1994), for the District Court to consider whether, in the
> event the court's disposition of the dispute between the service stations and
> oil companies is deemed not a final Judgment, there is no just reason for
> delay in the appeal of all other issues. If the court so concludes, it should
> provide a reasoned, even if brief, explanation of its conclusion and certify
> that the Judgment previously entered and appealed from should be
> considered a partial final judgment in accordance with Rule 54(b) of the
> Federal Rules of Civil Procedure.

(*Jacobson* Remand Order.)

In response to the *Jacobson* Remand Order, the Court considered whether there was "no

just reason for delay" in the appeal of all other issues and whether to certify "a partial final

judgment on the Damages claims pursuant to Rule 54(b)."  (July 2022 Decision 9.)  The Court

found judicial administrative interests weighed in favor of Rule 54(b) certification because final

settlement approval and franchisor/franchisee disputes do not stem from the same law or factual

allegations, and therefore there was no risk of the appellate court reviewing identical facts in

successive appeals.  (*Id.* at 12.)  The Court also found that equitable considerations weighed in

favor of certification because class members would face hardship if they were required to wait

for a final judgment until all franchisor/franchisee disputes were resolved.  (*Id.* at 12–13.)  The

Court therefore "certifie[d] its December 13, 2019 Final Approval Order approving the

Superseding Settlement Agreement as a partial final judgment in accordance with Rule 54(b) of the Federal Rules of Civil Procedure." (*Id.* at 14.)

On December 2, 2022, Jack Rabbit and 280 Station, LLC filed the Renewed Motion to Intervene, raising the same issues raised in the pending appeal and seeking the same relief before this Court and the Court of Appeals. (*Compare* Renewed Mot. to Intervene 26–27 (seeking an order allowing Jack Rabbit "to participate in this matter as Plaintiff-Intervenors to ensure that the claims administrator and the Special Master do not resolve any class member disputes over ownership of claims, or distribute any Settlement funds until after this Court resolves the Proposed Intervenors' Article III standing issue") *with* Jack Rabbit 2d Cir. Reply 27, *In re Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339 (2d Cir. Jan. 5, 2021) (arguing that the Judgment should be remanded with instructions to the district court to appoint counsel to represent the subclass of class members who are Cost plus Direct Purchasers under *Illinois Brick*'s cost-plus exceptions to the indirect purchaser rule and to then determine who has Article III standing and is a member of the class).)

Proposed Intervenors argue that the Court has jurisdiction over the Renewed Motion to Intervene because the issues raised in the pending motion to intervene are not duplicative with the issues before the Second Circuit. (Proposed Intervenors' Reply in Supp. of Renewed Mot. to Intervene ("Proposed Intervenors' Reply") 2, Docket Entry No. 8750.) In support, Proposed Intervenors contend that they have presented the Court with additional information and new case law that the Court had not previously considered. (*Id.* at 2–3.) Specifically, they argue that since 2019, the Supreme Court has drastically altered the definition and threshold for constitutional standing by requiring each plaintiff have a "concrete harm." (*Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. ---, ---, 141 S. Ct. 2190, 2206 (June 25, 2021)).)

Second, Proposed Intervenors argue that the Court regained jurisdiction over the question

of whether the gas station is within the settlement class once the Second Circuit issued the

*Jacobson* Remand Order for the Court to determine whether to certify a partial judgment under

Rule 54(b) in the event the portion of the judgment that deals with that question is not deemed a

final judgment and the Court certified a partial final judgment under Rule 54(b). (Renewed Mot.

to Intervene 10–20.)

Class Plaintiffs argue in response to the motion that the same issues raised in the

Renewed Motion to Intervene are currently before the Second Circuit and therefore the Court

lacks jurisdiction to decide these issues. (Class Pls.' Opp'n to Renewed Mot. to Intervene 2–4,

Docket Entry No. 8751.) They also argue that "[t]he Court of Appeals' limited remand of the

case to this Court was for the sole purpose of determining whether, in the event its disposition of

the dispute between the service stations and oil companies is deemed not to be a final judgment,

there nonetheless is no just reason for delay in the appeal of all other issues." (*Id.* at 4.) In

addition, Class Plaintiffs note that the Second Circuit "did not ask this Court to broadly exercise

simultaneous jurisdiction over the exact same issues the Second Circuit is currently deciding on

appeal, or to countenance motions to intervene and add new parties to the action when the relief

sought overlaps with the issues currently on appeal." (*Id.* at 5.)

## II. Discussion

### a. The notice of appeal conferred jurisdiction on the Second Circuit and divested this Court of jurisdiction

"[T]he filing of a notice of appeal is an event of jurisdictional significance — it confers

jurisdiction on the court of appeals and divests the district court of its control over those aspects

of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58

(1982); *Chevron Corp. v. Donziger*, 990 F.3d 191, 210 (2d Cir. 2021) (same) (quoting *Griggs*,

459 U.S. at 58); *Negron v. United States,* 394 F. App'x 788, 792 (2d Cir.2010) (same) (quoting

*Griggs*, 459 U.S. at 58); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53 (2d Cir. 2004) (same)

(quoting *Griggs*, 459 U.S. at 58); *see also New York v. United States Dep't of Homeland Sec.*,

974 F.3d 210, 216 (2d Cir. 2020) ("The filing of a 'timely and sufficient notice of appeal' divests

the district court of jurisdiction 'as to any matters involved in the appeal' or 'as to the matters

covered by the notice.'" (quoting *Leonhard v. United States*, 633 F.2d 599, 609–10 (2d Cir.

1980))).  Thus, a district court lacks jurisdiction to decide issues involved in the appeal. *New*

*York*, 974 F.3d at 214–15; *see also Ching v. United States,* 298 F.3d 174, 180 n.5 (2d Cir. 2002)

(stating that "[t]he district court could not rule on any motion affecting an aspect of the case that

was before [the Second Circuit], including a motion to amend the motion, while that appeal was

pending"); *Ramirez v. United States,* No. 05-CV-4179, 2013 WL 247792, at *2 (S.D.N.Y. Jan.

22, 2013) ("[T]he filing of a Notice of Appeal divest[s] [the district court] of jurisdiction over

petitioner's original . . . motion." (citing *Ching*, 298 F.3d at 180)).  "[O]nce a notice of appeal has

been filed, a district court may take actions only 'in aid of the appeal or to correct clerical

errors.'" *New York*, 974 F.3d at 216 (quoting *Int'l Ass'n of Machinists and Aerospace Workers,*

*AFL-CIO v. E. Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir. 1988)).

In the Renewed Motion to Intervene, the Proposed Intervenors are impermissibly raising

the same issues previously before the Court and now before the Second Circuit — whether the

Proposed Intervenors have suffered harm, have standing, and are adequately represented by the

settlement class.  (*Compare* Renewed Mot. to Intervene 26–27 (seeking "to participate in this

matter as Plaintiff-Intervenors to ensure that the claims administrator and the Special Master do

not resolve any class member disputes over ownership of claims, or distribute any Settlement

funds until after this Court resolves the Proposed Intervenors' Article III standing issue") *with*

Jack Rabbit 2d Cir. Reply 27 (arguing the judgment should be remanded for the district court to appoint counsel to represent the subclass of class members who are Cost plus Direct Purchasers under *Illinois Brick*'s cost plus exceptions to the indirect purchaser rule and to determine who has Article III standing).)  Thus, the filing of the Notice of Appeal in the Second Circuit, divested the Court of jurisdiction over these issues.[5]  *New York*, 974 F.3d at 216 (explaining that the filing of the notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal" (citation omitted)).  The Court therefore lacks jurisdiction to decide Proposed Intervenor's Renewed Motion to Intervene.[6]

---

[5]  Because Jack Rabbit withdrew the appeal of the original motion to intervene, the Court would have had regained jurisdiction over that motion.  *See Sheppard v. N.Y.C. Dep't of Corr.*, No. 20-CV-9405, 2021 WL 76403 (S.D.N.Y. Jan. 7, 2021) (instructing the plaintiff to withdraw his appeal so the district court would regain jurisdiction and could reopen the case based on new information).  However, because the same issues raised in the Renewed Motion to Intervene are before the Second Circuit on the appeal of the Superseding Settlement Agreement, the Court lacks jurisdiction over Proposed Intervenor's Renewed Motion to Intervene.

[6]  The Court notes that to the extent Jack Rabbit is seeking reconsideration of the Court's order denying Jack Rabbit's original motion to intervene, the Court denies the motion as untimely.  *See Verizon N.Y. Inc. v. Village of Westhampton Beach*, Nos. 11-CV-0252, 11-CV-0213, 2013 WL 5762926 (2d Cir. Oct. 18, 2013) (denying a motion to reconsider the denial of a motion to intervene because the district court lacked jurisdiction to decide the issues in part because the reconsideration motion was untimely as it was filed more than fourteen days after the entry of the court's order).  The Court denied the original motion to intervene on October 30, 2019, and Proposed Intervenors served the Renewed Motion to Intervene on September 8, 2022, (Letter Regarding Renewed Mot. to Intervene, Docket Entry No. 8709).  Therefore, a motion for reconsideration is untimely.  *See also* Local Civ. R. 6.3 ("[A] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion"); *Otto v. Town of Washington*, 71 F. App'x 91, 92 (2d Cir. 2003) (affirming district court's order denying the plaintiff's motion for reconsideration as untimely); *Bennett v. Care Corr. Sol. Med. Contracted*, No. 15-CV-3746, 2017 WL 4250519, at *2 (S.D.N.Y. Sept. 25, 2017) (denying as untimely plaintiff's seven-day-late motion for reconsideration and collecting cases).

b. **Neither the *Jacobson* Remand Order nor the Rule 54(b) certification provide a basis for the Court to assert jurisdiction over the Renewed Motion to Intervene**

The Court finds that neither the *Jacobson* Remand Order nor the subsequent order certifying a partial final judgment pursuant to Rule 54(b) confers the Court with jurisdiction to decide the issues raised in the Renewed Motion to Intervene.

A *Jacobson* remand confers "partial jurisdiction to the district court to supplement the record on a discrete factual or legal issue while retaining jurisdiction over the original appeal" in the court of appeals. *United States v. Rosa*, 957 F.3d 113, 121 n.29 (2d Cir. 2020) (quoting *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex–Exploración Y Producción*, 832 F.3d 92, 115 (2d Cir. 2016) (Winter, J., concurring)); *see also United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994) (recognizing the authority of federal appellate courts to seek "supplementation of a record without a formal remand or the need for a new notice of appeal before the appellate panel acts on the supplemental record").

A court of appeals may specifically remand to a district court to consider a Rule 54(b) certification for the entry of a partial final judgment. *See, e.g.*, *Mangouras v. Squire Patton Boggs*, 740 F. App'x 757, 758 (2d Cir. 2018); *S.E.C. v. Frohling*, 614 F. App'x 14, 18–19 (2d Cir. 2015). Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. Pro. 54(b); *see also Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (quoting *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014)) (explaining that "Rule 54(b) authorizes a court to enter partial final judgment where there are multiple claims or parties, at least one claim or the rights and liabilities

of at least one party has been finally determined, and the court expressly determines there is no reason for delay); *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (explaining that 54(b) certification of a partial final judgment must be used sparingly to avoid piecemeal appeals and take into account judicial administrative interests and equities). Where a district court supplements the record with a Rule 54(b) certification for the entry of a partial final judgment, the appeal is thereafter reinstated without the need for a new notice of appeal or additional filing fee. *Mangouras*, 740 F. App'x at 758; *Frohling*, 614 F. App'x at 18–19.

The *Jacobson* Remand Order directed the Court to consider "whether, in the event the court's disposition of the dispute between the service stations and oil companies is deemed not a final Judgment, there is no just reason for delay in the appeal of all other issues." (*Jacobson* Remand Order.) The key phrase is "in the event." (*See id.*) While the Second Circuit suggested that the Court's "disposition of the dispute between the service stations and oil companies" may not be "a final Judgment" and that 54(b) certification was therefore necessary for the Second Circuit to have jurisdiction over the remaining issues, the Second Circuit has not yet held that the Court's "disposition of the dispute between the service stations and oil companies" is "not a final Judgment." The Court reserved the question of whether the Court's disposition of the dispute was a final Judgment, and once the Court supplemented the record with a Rule 54(b) certification for the entry of a partial final judgment, the appeal was automatically reinstated. *See Mangouras*, 740 F. App'x at 758 (explaining that once a court supplements the record with a Rule 54(b) certification pursuant to a *Jacobson* remand, the appeal is automatically reinstated). Therefore, the Court's "disposition of the dispute between the service stations and oil companies" is still before the Second Circuit and the Court does not have jurisdiction to decide issues involved in this dispute. Until the Second Circuit either decides this dispute or holds that

11

the Court's disposition of this dispute is not final and issues an ordinary remand, the Court cannot address these issues raised by Proposed Intervenors. *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V.*, 832 F.3d at 104 n.8 ("[T]here is a basic and serviceable difference between a *Jacobson* remand (which elicits an answer to a question that may assist resolution of the pending appeal) and an ordinary remand (which allows reconsideration of the outcome).").

The Second Circuit did not direct the Court to reconsider certain objections to the Superseding Settlement Agreement or to vacate the original Judgment. *See, e.g.*, *United States v. Geraldo*, 687 F. App'x 101, 109 (2d Cir. 2017) (issuing a *Jacobson* remand directing the district court to determine whether it had properly retained federal jurisdiction over the defendant's case and to vacate the defendant's conviction in the case it had not); *see also Mangouras*, 740 F. App'x at 758 (remanding to the district court to either complete discovery proceedings prior to entering a final judgment or to certify the order as a partial final judgment pursuant to Rule 54(b)). Nor did the Second Circuit remand the case to the Court to reconsider its disposition of the dispute in light of new materials. *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 189 (2d Cir. 2016) (remanding for the court to reconsider in light of FBI disclosures and any additional materials the court allows the parties to submit); *N.Y. Times v. U.S. Dep't of Justice*, 756 F.3d 100, 110 n.8 (2d Cir. 2014) (explaining that the panel granted "the Government's request for an opportunity to submit new material concerning public disclosures made after the District Court's decision"). Further, the Second Circuit did not instruct the Court to consider whether it intended to grant Judgment on the entire case, and, in the event it did not, authorize the Court to revoke its judgment, enter a new partial judgment and consider whether that new partial judgment should be deemed appealable under Rule 54(b). *California v. Amgen, Inc.*, No. 13-4102, 2014 WL

12959605, at *1 (2d Cir. March 11, 2014) ("expressly authoriz[ing]" the district court to "revoke its judgment, if appropriate," enter a new judgment and consider any new partial judgment should be deemed final under Rule 54(b)).  The remand was limited for the Court "to consider whether, *in the event* the court's disposition of the dispute between the service stations and oil companies is deemed not a final Judgment, there is no just reason for delay in the appeal of all other issues."  (*Jacobson* Remand Order (emphasis added).)  The Court in turn issued the 54(b) certification *in case* the Second Circuit decided that the Court's disposition of the issue was not final to ensure that the Second Circuit would retain jurisdiction over the remaining issues.  The 54(b) certification did not vacate the Judgment originally entered or divest the Second Circuit of jurisdiction over any issues.  *See Mangouras*, 740 F. App'x at 758 (explaining that once a court supplements the record with a Rule 54(b) certification pursuant to a *Jacobson* remand, the appeal is automatically reinstated); *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (citation omitted) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals.").  Therefore, the Court does not have jurisdiction over the issues before the Second Circuit, which includes the issues raised in the Renewed Motion to Intervene.

**III.  Conclusion**

For the foregoing reasons, the Court lacks jurisdiction over the issues raised in the

Proposed Intervenors' Renewed Motion to Intervene and therefore denies the motion.

Dated: March 6, 2023
      Brooklyn, New York

                                        SO ORDERED:


                                            s/ MKB
                                        MARGO K. BRODIE
                                        United States District Judge