# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MASTER FILE 05-MD-1720 |
| This Document Relates To:<br><br>Rule 23(b)(3) Class Action | ***OLD JERICHO* PLAINTIFFS' OPPOSITION TO JACK RABBIT OBJECTORS' MOTION FOR APPOINTMENT AS LEAD COUNSEL** |

## PRELIMINARY STATEMENT

The *Old Jericho* plaintiffs respectfully submit this memorandum of law in opposition to Jack Rabbit's counsel's multiple applications to be appointed lead counsel for a nationwide subclass of branded gasoline operators. In an apparent effort to do an end-run around procedural requirements, Jack Rabbit, LLC and 280 Station LLC ("Jack Rabbit") submitted a letter attaching declarations (ECF No. 8838) and filed Proposed Intervenors, Jack Rabbit, LLC, and 280 Station LLC (D/B/A/ Cowboys), Second Renewed Motion For Leave To Intervene (ECF No. 8832) (collectively, "Jack Rabbit's papers"), all in support of Jack Rabbit's request for appointment as lead counsel for a purported subclass of branded gas retailers located nationwide. The Court directed responses (including from the *Old Jericho* plaintiffs) to Jack Rabbit's Second Renewed Motion to be filed by June 1, 2023. ECF No. 8828 (minute entry order). In addition to being procedurally improper, Jack Rabbit's papers demonstrate that it has conducted virtually no factual investigation of the gas industry and the contractual relationships at issue here. Their papers also misconstrue the law, and admit facts showing Jack Rabbit lacks antitrust standing under *Illinois Brick*. Critically, Jack Rabbit's leadership bid also would create a fundamental conflict with gas retailers from *Illinois Brick* repealer states, who could be materially prejudiced by Jack Rabbit's attempt to manufacture standing for them under federal antitrust law.

Jack Rabbit admits that it and other gas retailers generally are indirect purchasers, but argues that the bar to recovery under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), does not apply because its contracts with its gas suppliers are "Cost-Plus" contracts. But Jack Rabbit fails to show that its contracts (or those of the industry in general) satisfy the two elements for the narrow cost-plus exception to apply, namely that the contract require the purchase of a (1) fixed quantity of the relevant product (2) at the supplier's cost plus a predetermined markup. In fact, Jack Rabbit's *own declarations* expressly admit that the supposedly "fixed" volume Jack Rabbit

1

points to—purchases of gas from its supplier—is not even the relevant product in question (card acceptance services), and moreover is not fixed at all, but variable. Thus *Illinois Brick* would bar any monetary recovery by Jack Rabbit under federal law. And Jack Rabbit, based in Alabama, also lacks any state antitrust claim, as the Alabama antitrust law applies to conduct that falls exclusively within intrastate commerce.[1] In short, there is no basis to appoint Jack Rabbit as a representative of any subclass or Jack Rabbit's counsel as lead counsel for any subclass.

Moreover, a fundamental conflict exists between Jack Rabbit (which has no indirect purchaser claims available to it under state law) and gas retailers in *Illinois Brick* repealer states (which do have such claims available). Gas retailers in repealer states have a material interest in arguing the indirect purchaser theory because (1) they could stand to recover more on those claims than under the Rule 23(b)(3) Class Settlement if (incorrectly) deemed direct purchasers and (2) their indirect purchaser claims could be released if they are (incorrectly) found to be within the direct purchaser class. Thus Jack Rabbit's attempt to shoehorn all gas retailers into having *Illinois Brick* standing under the cost-plus exception is contrary to the interests of those retailers who are in repealer states. Finally, Jack Rabbit's counsel lack the experience necessary to serve as subclass counsel.

## STATEMENT OF FACTS

**Old Jericho *plaintiffs***

The *Old Jericho* plaintiffs are 19 branded gas retailer businesses from *Illinois Brick* repealer states. These states have rejected the direct purchaser rule of *Illinois Brick* and allow

---

[1] *Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.*, 746 So. 2d 966, 989–90 (Ala. 1999) (holding that Alabama antitrust statute "does not provide a cause of action for damages allegedly resulting from an agreement to control the price of goods shipped in interstate commerce" and that "these statutes regulate monopolistic activities that occur 'within this state'—within the geographic boundaries of this state").

antitrust claims for damages by indirect purchasers. *See* First Amended Class Action Compl. ¶¶ 8-26, *Old Jericho Enter., Inc. v. Visa, Inc.*, No. 2:20-cv-02394 (E.D.N.Y.) (MKB)(VMS) ("*Old Jericho*"), ECF No. 8058 ("*Old Jericho* Compl."). The *Old Jericho* plaintiffs' lawsuit alleges on behalf of gas retailers in repealer states (24 states, plus the District of Columbia) that these retailers are indirect purchasers of Defendants' credit card acceptance services and seeks redress under the laws of these states. *See id.* ¶¶ 4, 89-90.

*Old Jericho* plaintiffs' counsel has obtained agreements used by numerous major oil companies, including Chevron, Citgo, Exxon, Gulf, Motiva, Shell, Sinclair, and Sunoco, with their gas retailers. All of these oil companies' standard agreements confer indirect purchaser status on gas retailers.

### *Jack Rabbit*

Based in Alabama, Jack Rabbit "currently . . . operates a BP station." (ECF No. 8838-1 at ¶ 3). As an initial matter, Jack Rabbit admits it is an indirect purchaser: "the Oil Distributors provided . . . services, including the processing of all of the Visa and MasterCard Payment Card transactions at the Kidd Stations, at the gas pumps, and inside the convenience stores." (*Id.* ¶ 10). Without attaching a single contract, Jack Rabbit nevertheless maintains that it has entered into "Cost-Plus contracts" at all times between January 1, 2004 and January 25, 2019 with "Oil Distributors." (*Id.* ¶ 7). Moreover, apparently without any investigation into the industry, Jack Rabbit simply makes a conclusory statement that "[o]n information and belief, pursuant to industry standards, the Oil Distributors entered into Cost-Plus contracts with all other Retail Gas Stations Owners." (*Id.* ¶ 14).

Tellingly, Jack Rabbit admits its contracts have never required the purchase of a fixed quantity of gasoline (let alone card acceptance services). The Declaration of Jack W. Kidd explains:

> Early in the Class Period the Kidd Stations' exclusive, time based, (ten (10) year) Cost-Plus contracts included minimum monthly purchase amounts. Subsequently, as the businesses grew they were purchasing multiples of the Oil Distributers minimum amount per month.

(*Id*. ¶ 8 n.1).

Jack Rabbit's counsel also do not purport to have been lead counsel in any antitrust class action.

## ARGUMENT

**I. NEITHER JACK RABBIT'S NOR STANDARD INDUSTRY CONTRACTS SATISFY THE NARROW COST-PLUS EXCEPTION**

The cost-plus exception to *Illinois Brick* is a "narrow one that is only appropriate when the contract has removed all doubts about who bore the antitrust injury." *Simon v. KeySpan Corp.*, 694 F.3d 196, 202 (2d Cir. 2012). *See also Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216–18 (1990). The Second Circuit explained: "[a]n indirect purchaser may have standing, however, if it had a pre-existing cost-plus contract with the direct purchaser, meaning that the indirect purchaser has agreed in advance to **[1] purchase a fixed quantity, [2] paying the direct purchaser's costs plus a predetermined additional fee**." *KeySpan*, 694 F.3d at 202 (emphasis added). This is so because "[i]n such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case." *Id.*

Notably, a requirements contract does not satisfy the cost-plus exception. *See, e.g.*, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 06-0620, 2020 WL 5211035, at *6–7 (E.D. Pa. Sept. 1, 2020). In that case, "Bi-Lo assert[ed], repeatedly, that it bought mushrooms from C&S subject to a pre-existing cost-plus contract. As a result, it claims to have standing to pursue damages under *Illinois Brick*." In rejecting application of the cost-plus exception, the court noted that "Bi-Lo freely admits, and as is clear from the face of the contract, Bi-Lo's agreement with C&S was not for a 'fixed quantity' of mushrooms." The court held, "[w]hile Bi-Lo was required to purchase its mushroom 'requirements' from C&S, the contract does not specify a fixed quantity of mushrooms. As a result, Bi-Lo's contract with C&S does not qualify it for an exception to *Illinois Brick*'s bar on antitrust damage actions by indirect purchasers."

Here, Jack Rabbit admits that its contracts—which it claims are industry standard—had only minimum purchase requirements with respect to gasoline. (ECF No. 8838-1 at ¶¶ 8 & 14). In fact, Jack Rabbit admits it often exceeded the minimum requirements. (*Id.* ¶ 8 n.1). Moreover, gas is not even the relevant product at issue in this litigation—card acceptance services are. Indeed, a minimum purchase requirement for gas does not even translate to any quantity requirement for the purchase of credit card acceptance services because, for example, (1) the retailers' customers can use cash and other non–credit card payment methods to buy gas and (2) many retailers also use their supplier to process their sales of food and other convenience-store items purchased via credit card.

The *Old Jericho* plaintiffs' counsel's review of industry contracts from gas brands confirms that, while these contracts consistently establish the retailers as indirect purchasers of card acceptance services, none of the contracts contain fixed-quantity purchase requirements of either card acceptance services or gas. Thus, there is no factual basis for Jack Rabbit to argue

5

that the fixed-quantity element of the cost-plus exception would be met or that Jack Rabbit or other gas retailers have standing under *Illinois Brick*.

Moreover, Jack Rabbit offers no contracts or any other evidence to support its contention that it is paying the distributors' costs for card acceptance services plus a predetermined additional fee, the second requirement for meeting the cost-plus exception under *KeySpan*. Again, the *Old Jericho* plaintiffs' counsel's review of industry contracts confirms that there is no such cost-plus pricing.[2]

**II.   APPOINTING JACK RABBIT'S COUNSEL AS LEAD COUNSEL FOR A NATIONWIDE SUBCLASS WOULD CREATE AN IMPERMISSIBLE CONFLICT AND PREJUDICE GAS RETAILERS IN *ILLINOIS BRICK* REPEALER STATES**

Appointing counsel for Jack Rabbit (or any other gas retailers arguing the direct purchaser theory) as lead counsel for repealer state retailers, who have indirect purchaser claims available to them under state law, would create an impermissible conflict and prejudice repealer state retailers. This is so primarily because, under the terms of the Settlement, a finding that the gas retailers' claims are direct purchaser claims could result in the release of state-law indirect purchaser claims with respect to those transactions. *See* Superseding and Amended Definitive Class Settlement Agreement of Rule 23(b)(3) Class Plaintiffs and the Defendants, at ¶ 31 (ECF

---

[2] In his concurrence, Judge Leval posited that gas brands and gas retailers might be joint purchasers of credit card acceptance services such that they are both direct purchasers. But Judge Leval conceded that this theory was speculative, as he acknowledged "[n]ot knowing the facts that define each of the relationships between oil companies and their service stations with respect to gas sales at the pump." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 733 (2d Cir. 2023) (Leval, J., concurring). *Old Jericho* plaintiffs' counsel's review of the relevant agreements reveals that no such joint-purchaser relationship exists. The agreements provide that the gas retailer will pay for card processing transactions, and not that the retailers and brands will "shar[e] the cost of the purchase." *Id.* at 731. That is a classic example of an indirect purchaser relationship. Indeed, Jack Rabbit does not contend that Judge Leval's theory applies. (May 11, 2023 Hearing Tr. at 19:3-20:8).

6

No. 7257-2). Indeed, this risk exists even for indirect-purchaser gas retailers who do not file claims against the Settlement Fund. *See* Answer to Question 10 ("Members of the Rule 23(b)(3) Settlement Class who do not exclude themselves by the deadline will be bound by the terms of the Class Settlement Agreement, including the release of claims against the Defendants and other released parties identified in Paragraph 30 of the Class Settlement Agreement, whether or not the members file a claim for payment."). This release could harm indirect purchasers because of the possibility that they could achieve a larger per capita recovery by pursuing indirect purchaser claims than they would receive from the Settlement Fund if deemed direct purchasers. Moreover, true direct purchaser class claimants would also be harmed by seeing their recoveries diluted if gas retailers were incorrectly deemed direct purchasers.

It is thus imperative that the *Old Jericho* plaintiffs and other repealer state retailers be represented by counsel who will present and argue the indirect purchaser theory to the Special Master on their behalf.[3] Jack Rabbit is arguing the exact opposite, because its position and interests are in complete conflict with those of gas retailers with viable indirect purchaser claims, as Jack Rabbit's only hope of recovery is a direct-purchaser theory (however unsupported by the facts). The Court should therefore decline to appoint Jack Rabbit's counsel, or any other gas retailers' counsel arguing the direct-purchaser theory, as lead counsel for repealer-state gas retailers.

---

[3] Given these facts, under FRCP 24, the *Old Jericho* plaintiffs are entitled to intervene as of right for the limited purpose of advancing the indirect purchaser theory before the Special Master in order to ensure adequate representation of repealer-state gas retailers' interest in their state-law indirect purchaser claims. The *Old Jericho* plaintiffs intend to bring such a motion shortly.

### III. JACK RABBIT'S COUNSEL LACK THE EXPERIENCE TO EFFECTIVELY REPRESENT AN ANTITRUST CLASS

Jack Rabbit's counsel also lacks the requisite expertise to serve as lead counsel for any class or subclass before the Special Master. Notably absent from Jack Rabbit's papers is any description of antitrust class action leadership experience. As described above, Jack Rabbit's submissions to date have suffered from major errors as to governing substantive law (and failures to investigate the relevant facts) and have also gone against this Court's established procedures.

### CONCLUSION

For the reasons stated above, Jack Rabbit's counsel's requests to be appointed lead counsel for any class or subclass including gas retailers in *Illinois Brick* repealer states should be denied.

June 1, 2023

Respectfully submitted,

*/s/ Christopher J. Bateman*
Christopher J. Bateman
Sharon K. Robertson
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838- 7745
cbateman@cohenmilstein.com
srobertson@cohenmilstein.com

Benjamin D. Brown
Richard A. Koffman
Matthew S. Wild
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
mwild@cohenmilstein.com

Manuel J. Dominguez
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Tel: (561) 515-2604
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

Robert W. Cohen
**LAW OFFICES OF ROBERT W. COHEN, P.C.**
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel: (310) 282-7586
Fax: (310) 282-7589
rwc@robertwcohenlaw.com

Edward S. Zusman
Kevin K. Eng
**MARKUN ZUSMAN FRENIERE COMPTON LLP**
465 California Street, Suite 500
San Francisco, CA 94104
Tel: (415) 438-4515
Fax: (415) 434-4505
ezusman@mzclaw.com

David Song
Tracey Kitzman
**SONG P.C.**
26 Broadway, Fl 8
New York, NY 10004
Tel: 212-599-0700

*Attorneys for the* Old Jericho *plaintiffs*