## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Relates To:<br>Rule 23(b)(3) Class Action | MASTER FILE 05-MD-1720<br><br>**FIKES PLAINTIFFS' MOTION TO: (1) INTERVENE (2) CERTIFY SUBCLASS AND (3) APPOINT SUBCLASS COUNSEL, AND INCORPORATED MEMORANDUM OF LAW** |

133608201.2

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT..........................................................................................................................3

   I.    INTERVERNTION SHOULD BE GRANTED .............................................................3

       A.   The Fikes Plaintiffs .............................................................................................3

       B.   Intervention Should be Granted Under Rule 24(a)...............................................5

           1.   The Motion Is Timely..................................................................................5

           2.   The Fikes Plaintiffs Have an Interest in the Subject of the Action That Would Be Significantly Impaired Without Intervention .............................................6

           3.   The Parties in the Action Do Not Adequately Represent the Fikes Plaintiffs' Interests....................................................................................................7

       C.   In the Alternative, Permissive Intervention Under Rule 24(b) Should be Granted....7

       D.   Intervention Should be Permitted Without an Intervenor Complaint......................9

   II.   THE COURT SHOULD CERTIFY A SUBCLASS AND APPOINT SUBCLASS COUNSEL ...............................................................................................................9

       A.   The Court Should Certify a Subclass of Franchisees and Appoint the Fikes Plaintiffs as Class Representatives ...................................................................10

           1.   The Proposed Franchisee Subclass Meets the Requirements of Rule 23(a)....11

           2.   The Proposed Franchisee Subclass Meets the Requirements of Rule 23(b)(3) ...................................................................................................19

           3.   Notice to the Class is Not Necessary ..........................................................21

       B.   The Court Should Appoint Subclass Counsel for the Franchisees.........................22

CONCLUSION.....................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

*In re Air Cargo Shipping Services Antitrust Litig.*,
No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)........................12

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)……………………………………………………………….22

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013)……………………………………………………………...............22

*Barry's Cut Rate Stores Inc. v. Visa, Inc.*,
No. 05-MD-1720, 2021 WL 2646349 (E.D.N.Y. June 28, 2021) ..................................5, 8, 9

*Bourlas v. Davis Law Assocs.*,
237 F.R.D. 345 (E.D.N.Y. 2006) ................................................................................. 11, 21

*Claridge v. N. Am. Power & Gas, LLC*,
No. 15-cv-1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016)...........................................18

*D'Alauro v. GC Services, Ltd. Partnership*,
168 F.R.D. 451 (E.D.N.Y. 1996) .......................................................................................21

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) .............................................................................................12

*Eddystone Rail Co. v. Jamex Transfer Servs., LLC*,
289 F. Supp. 3d 582 (S.D.N.Y. 2018)..................................................................................5

*Encinas v. J.J. Drywall Corp.*,
265 F.R.D. 3 (D.D.C. 2010)...............................................................................................23

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) .....................................................................................*passim*

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
No. 12-cv-5067, 2018 WL 840081 (S.D.N.Y. Feb. 12, 2018) ...............................................8

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ........................................................................................... 13, 15, 21

*Jenkins v. United Gas Corp.*,
400 F.2d 28 (5th Cir. 1968) ..............................................................................................10

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
800 F. Supp. 2d 328 (D. Me. 2011)……………………………………………………………….22

iii

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................................................10

*Paxton v. Union Nat'l Bank*,
   688 F.2d 552 (8th Cir. 1982) ..........................................................................................10

*Pearson v. Target Corp.*,
   893 F.3d 980 (7th Cir. 2018) …………………………………………………………..22

*Pruitt v. Allied Chem. Corp.*,
   85 F.R.D. 100 (E.D. Va. 1980) .......................................................................................10

*Reid v. SuperShuttle Int'l, Inc.*,
   No. 08-cv-4854 (JG)(VVP), 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012) ........................16

*Sackman v. Liggett Grp.*,
   167 F.R.D. 6 (E.D.N.Y. 1996) .........................................................................................7

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
   No. 06 CIV. 5173 (RPP), 2008 WL1956267 (S.D.N.Y. May 1, 2008) ...............................21

*In re Towers Fin. Corp. Noteholders Litig.*,
   177 F.R.D. 167 (S.D.N.Y. 1997) .....................................................................................18

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978) ............................................................................................7

## INTRODUCTION

As previewed in letters to the Court on June 14 and July 14, 2023 (ECF 8848, 8867) and at the status conference on May 11, 2023, the following  proposed class representatives -- Fikes Wholesale, Inc., CEFCO, Food Fast Corporation, Deweese Enterprises, Inc., Calloway Oil Company, E-Z Stop Foodmarts, Inc., Slidell Oil Company LLC and S & F Investments, Inc. (collectively, the "Fikes Plaintiffs") – move the Court to intervene, certify a subclass of franchisees, and appoint counsel to represent that subclass.

## BACKGROUND

The Fikes Plaintiffs[1] are representatives from a large group of franchisees represented by undersigned counsel.  They and other Branded Operators and associations[2] have repeatedly appeared before this Court to express their concern that they would be cut out of any recovery in this case, even though they are the direct payors of interchange fees for the transactions at their retail locations.  They now have support from many of the country's largest franchisee associations and trade groups, who want to make sure that all franchisees have the representation they need to ensure they can recover their fair share of settlement proceeds.[3] For the most part, franchisees and

---

[1] Several of the proposed class representatives objected to and appealed this Court's final approval of the class settlement because they were concerned about their ability to recover their fair share of the settlement based on their status as "Branded Operators," merchants who sell branded gasoline and process payment card transactions through major oil brands.  They are joined here by other similarly-situated merchants, including by a business that operates several restaurant franchises.

[2] Undersigned counsel for the "Branded Operators" represent the National Association of Shell Marketers, Inc., the Energy Marketers of America (f/k/a the Petroleum Marketers Association of America), and the Society of Independent Gasoline Marketers of America.  These organizations, as well as other Branded Operators represented by undersigned counsel, support this motion.

[3] While associations and trade groups do not have standing to formally join in this Motion, the following groups support this Motion: the Coalition of Franchisee Associations (representing the interests of over 46,000 franchisees operating over 120,000 independently owned and operated locations in businesses as diverse as restaurants, car repair, gyms, hair salon services and education), the North American Association of Subway Franchisees, the Popeye's International Franchisee Association, the Wendy's Franchise Association, the Bojangles' Franchisee Association, Blue Roof Franchisee Association (a member

Branded Operators are small business owners without their own counsel and without significant resources. They accept payment cards at their retail locations, pay interchange fees out of those transactions, and incurred the economic harm arising from the defendants' alleged anti-competitive behavior. Recovery of funds in the Class Settlement would make a tremendous difference to them. The franchisees and Branded Operators (collectively, "Franchisees") are concerned about adversity with their franchisors during the claims administration and Special Master process, and they do not have the wherewithal to overcome these conflicts without help. They need representation and, according to the Court of Appeals, it appears that Class Counsel cannot provide that representation because they are conflicted.

The Branded Operators first raised objections to Preliminary Approval of the Class Settlement in October 2018 [ECF 7280] because, among other things, they asserted that the Settlement created intra-class conflicts between franchisors and franchisees. The Branded Operators objected to Final Approval in July 2019 [ECF 7559], and then filed an appeal of the Order granting Final Approval and briefed the conflict issue before the Second Circuit.

In its March 15, 2023 Opinion, the Court of Appeals agreed in part with the Branded Operator's position, and concluded that while no conflict existed when the settlement was approved:

> Going forward, however, franchisors and franchisees will become adverse to each other for resolution of the questions regarding which should be deemed to have accepted the cards and therefore to come within the class and receive settlement funds, and how those funds should be allocated. It appears that class counsel will be conflicted on those questions. The district court should ensure that franchisors and franchisees will be represented by counsel, enabling each side to present arguments to the special master and the district court as to why they should be favored over the adversary, and enabling them to negotiate toward settlements of the disputes affecting each adverse pair. Whether this will require designations of

---

association representing IHOP franchisees), the Taco Bell Franchise Management Advisory Council, the International Midas Dealers Association, the International Association of Kumon Franchisees, and the Supercuts Franchisee Association.

subclasses and appointment of further counsel to represent them or whether their existing privately retained counsel will adequately serve the needs, we leave to the good judgment of the district court.

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 718 (2d Cir. 2023). Given this clear guidance from the Court of Appeals, the Fikes Plaintiffs now move the Court for permission to intervene and to designate a subclass of franchisees and appoint counsel to represent them. Deferring these issues until later, when membership in the Settlement Class has already been decided by the Special Master (as Class Counsel proposes) – would be a mistake: franchisees need their own counsel now, before the Special Master process begins, so they can make threshold arguments to the Special Master about class membership and entitlement. For the reasons discussed below, this Motion should be granted.

## ARGUMENT

**I.    INTERVERNTION SHOULD BE GRANTED**

### A.    The Fikes Plaintiffs

Fikes Wholesale, Inc. is a multi-branded petroleum products marketer that has been in business since the 1950s. During the class period, Fikes Wholesale owned and operated retail gas station franchisees of Shell, ExxonMobil, ChevronTexaco, and Valero, and retail restaurant franchisees including Subway, Which Wich, Huddle House, Carl's Jr. and Sonic. Fikes Wholesale operated these retail locations under the entities CEFCO, Food Fast Corporation, Deweese Enterprises (the "Fikes Retailers").[4] The Fikes Retailers accepted from customers Visa-Branded

---

[4] Fikes Wholesale also distributes and in the past has distributed motor fuel to retail gas stations and convenience stores operated by its third-party customers; however the Fikes Retailers are only seeking recovery in the Class Settlement for interchange fees paid by Fikes Retailers at their own locations. Contrary to the claims of Jack Rabbit, Fikes Retailers are in precisely the same position as the tens of thousands of other gas Branded Operators that own and operate their own retail locations.

and MasterCard-Branded payment cards at all of their retail locations. *See* Decl. of Tate A. Seidman, previously filed at ECF 7559-1.

Calloway Oil Company ("Calloway") and E-Z Stop Foodmarts, Inc. ("E-Z Stop") are Tennessee corporations with their principal places of business in Maryville, Tennessee. Calloway and E-Z Stop accept, and at relevant times accepted, both Visa and MasterCard debit and credit cards for payment. During the relevant time, Calloway and E-Z Stop owned and operated more than twenty retail stations as a franchisee of branded fuel products, including Exxon branded fuel, and they directly paid interchange fees associated with the payment cards used by their customers.

Slidell Oil Company LLC ("Slidell") is a Louisiana company with its principal place of business in Louisiana. Slidell at all relevant times accepted both Visa and MasterCard debit and credit cards for payment. During the relevant period, Slidell owned and operated more than a dozen retail stations and convenience stores in multiple states as a franchisee of branded fuel products including Exxon, Chevron, Shell, and Valero. During the relevant time period, Slidell directly paid interchange fees associated with the payment cards used by its customers. *See* ECF 7559-2

S & F Investments, Inc. ("S & F") is a South Carolina corporation with its principal place of business in Orangeburg, South Carolina. During the relevant time period, S & F owned and operated several fast food fried chicken restaurants under the "Popeyes" brand. At all relevant times, S & F operated as a franchisee under Popeye's Louisiana Kitchen, Inc. and its predecessors. During the relevant period, S & F accepted Visa and MasterCard-branded credit and debit cards at its retail locations and directly paid interchange fees associated with these payment cards used by its customers.

4

### B.    Intervention Should be Granted Under Rule 24(a)

Under Rule 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who…claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "To establish intervention as of right pursuant to Rule 24(a)(2), an intervenor must show that '(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.'" *Barry's Cut Rate Stores Inc. v. Visa, Inc.*, No. 05-MD-1720, 2021 WL 2646349, at \*4 (E.D.N.Y. June 28, 2021) (quoting *XL Specialties Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015)) (additional citations omitted). The Fikes Plaintiffs satisfy each of the requirements for intervention as of right.

### 1.    The Motion Is Timely

The timeliness of a motion to intervene is "left largely to the court's discretion which must be guided by consideration of all of the circumstances surrounding the requested intervention." *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 591 (S.D.N.Y. 2018) (internal citations and quotations omitted). "In assessing whether a motion to intervene is timely, the Court considers '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *Barry's Cut Rate Stores*, 2021 WL 2646349, at \*5 (quoting *Frankel v. Cole*, 490 F. App'x 407, 408 (2d Cir. 2013)) (additional citations omitted).

5

The Fikes Plaintiffs began expressing concern and asserting their rights as class members (through objections and then appeal) immediately following the public announcement of the Class Settlement.  There was no need to intervene at that point.  It was only after the Second Circuit's March 15, 2023 ruling and issuance of the mandate on May 2, 2023, along with recent filings by the Jack Rabbit and Old Jericho objectors, that intervention became necessary to protect the Fikes Plaintiffs' rights.  The Fikes Plaintiffs updated the Court on May 11, June 14, and July 14, 2023 (ECF 8848, 8867) about their intention to intervene and seek certification of a subclass.  They have acted timely.

The other timeliness factors also weigh in favor of intervention. The claims process has not yet begun, and the Fikes Plaintiffs seek to intervene only for the limited purpose of ensuring that they (and the proposed subclass of franchisees) are "represented by counsel, enabling each side to present arguments to the special master and the district court as to why they should be favored over the adversary, and enabling them to negotiate toward settlements of the disputes affecting each adverse pair." *Fikes Wholesale, Inc.,* 62 F.4th at 718.  No prejudice will result from the Fikes Plaintiffs' requested intervention. Indeed, the Settlement Class members will *benefit* from intervention, as it will help ensure that the issues of class membership, entitlement, and allocation are fairly vetted by the Special Master and the Court. On the other hand, the Fikes Plaintiffs – and all franchisees under the subclass proposed here – will be prejudiced if intervention is not allowed for the reasons identified by the Second Circuit.

## 2.     The Fikes Plaintiffs Have an Interest in the Subject of the Action That Would Be Significantly Impaired Without Intervention

The Fikes Plaintiffs satisfy the other requirements of Rule 24(a) because they have an interest in the transactions that are the subject of this case and "disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2).

6

The disputed "transactions" at issue here are the sales made using payment cards at franchisee locations. The question is whether retailer franchisees such as the Fikes Plaintiffs "accepted" payment card transactions and directly paid the interchange fee that is the subject of this litigation, or whether their franchisors are the ones that meet the class definition.  The Fikes Plaintiffs assert that *they* accepted payment cards and directly paid the fee (and overcharge), and that they therefore qualify as class members. A finding that franchisees are not direct payors could eliminate the Fikes Plaintiffs' – and all franchisees' -- ability to pursue any relief, especially those in states that do not allow indirect purchaser claims.  Thus, the Fikes Plaintiffs have an interest in the subject matter of the proceeding that may be impaired by the disposition of the claim ownership question.

3.     **The Parties in the Action Do Not Adequately Represent the Fikes Plaintiffs' Interests**

"In general, Rule 24(a)(2) requires a showing that the representation of [a proposed intervener's] interest 'may be' inadequate, and…the burden of making that showing is 'minimal.'" *Sackman v. Liggett Grp.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Here, given the Second Circuit's conclusion that "[i]t appears that class counsel will be conflicted on [the questions of franchisor vs franchisee claims]" and that "[t]he district court should ensure that franchisors and franchisees will be represented by counsel" [*Fikes Wholesale,* 62 F.4th at 718], there can be little dispute that the Fikes Plaintiffs' interests are not adequately represented by Class Counsel, or by the Jack Rabbit or Old Jericho objectors, who have taken different positions. Thus, the inadequate representation element is met, and the Fikes Plaintiffs should be entitled to intervene as of right.

C.     <u>**In the Alternative, Permissive Intervention Under Rule 24(b) Should be Granted**</u>

In the alternative, the Court should permit the Fikes Plaintiffs to intervene under Rule 24(b)(1)(B), which provides that "the court may permit anyone to intervene who . . . has a claim

or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Whether to permit intervention under Rule 24(b) is "wholly discretionary with the trial court" and the trial court's discretion is "very broad." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Other relevant factors include: "(1) the nature and extent of the movant's interests; (2) whether the existing parties adequately represent those interests; and (3) whether allowing intervention would significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-cv-5067, 2018 WL 840081, at *3 (S.D.N.Y. Feb. 12, 2018) (citations omitted).

The Fikes Plaintiffs have questions of law and fact almost entirely in common with those of other class members. Indeed, the Fikes Plaintiffs believe they are class members entitled to the same treatment as every other class member.  But because they have an issue that is also unique – a potential adversary in the claims administration process – they are not perfectly aligned with other class members.  Given their motion to certify a subclass (below), the Fikes Plaintiffs "will significantly contribute to the full development of the underlying factual issues" central to the matters that the Special Master is being appointed to determine. *Barry's Cut Rate Stores*, 2021 WL 2646349, at *12 (internal citation and quotations omitted).  The Fikes Plaintiffs will add – and already have added -- a perspective not otherwise being advanced, "which will also contribute to the development of the issues before the Court." *Barry's Cut Rate Stores*, 2021 WL 2646349, at *12. Accordingly, the Court should permit the Fikes Plaintiffs to intervene under Rule 24(b) if it does not grant their motion to intervene as a matter of right under Rule 24(a).

8

### D.      Intervention Should be Permitted Without an Intervenor Complaint

The Fikes Plaintiffs are seeking intervention for the limited purpose of arguing that they and the franchisees they seek to represent are members of the Class and are entitled to a share of the settlement fund. As this Court has noted, "[c]ourts within the Second Circuit have held that Rule 24(c) permits a degree of flexibility with technical requirements and have dispensed with the pleading requirement when the proposed intervenors position is clearly articulated in its motion papers." *Barry's Cut Rate Stores*, 2021 WL 2646349, at *13 (collecting cases) (internal citations and quotations omitted). Waiving the pleading requirement is particularly appropriate where, as here, proposed intervenors seek to intervene for a limited purpose. *Id.* at *14-15. Accordingly, the Fikes Plaintiffs respectfully request permission to intervene without attaching an intervenor complaint.

## II.    THE COURT SHOULD CERTIFY A SUBCLASS AND APPOINT SUBCLASS COUNSEL

If allowed to intervene, the Fikes Plaintiffs move the Court to certify a subclass of franchisees (defined below) and appoint undersigned counsel to represent the subclass. As noted above, the Court of Appeals concluded that, until now, franchisors and franchisees were not adverse for purposes of Final Approval of the Rule 23(b)(3) Class Settlement, but they will become adverse once the claims process begins. *Fikes Wholesale, Inc.* 62 F.4th at 718. To resolve Class Counsel's conflict and the adversity between franchisees and franchisors, the Court of Appeals provided two options: (1) designate a subclass and appoint counsel to represent them; or (2) determine that franchisees' existing privately retained counsel will adequately serve their needs. *Id.*

The Fikes Plaintiffs respectfully suggest that the ***only*** one of those options that adequately protects all franchisees is to designate a subclass and appoint counsel to represent them throughout

the entire claims administration process. As discussed above, this Motion is supported by large numbers of franchisees and their associations, who believe franchisees are not currently adequately represented.  Most franchisees are small business owners.  They do not generally have their own counsel, let alone counsel that will adequately serve their needs in this case, or that possess knowledge about the complex antitrust and class action issues present here.  Franchisee associations do not – and cannot -- pay to retain counsel to represent individual franchisees. Rather, the only way for all franchisees to be properly represented is for the Court to designate a subclass and appoint counsel to represent them. And that should happen now, before the Special Master makes any determinations about entitlement or allocation.

### A.  The Court Should Certify a Subclass of Franchisees and Appoint the Fikes Plaintiffs as Class Representatives

Pursuant to Rules 23(a) and (b)(3), the Fikes Plaintiffs request the Court to certify for settlement purposes a subclass consisting of all persons, businesses, and other entities that: (a) own a branded gas station or branded outlet of a retail chain under a franchisee agreement; and (b) otherwise meet the criteria for membership in the Rule 23(b)(3) Settlement Class (the "Franchisee Subclass").

"When appropriate, a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5).  The purpose of this rule is to provide the court with the ability to "treat common things in common and to distinguish the distinguishable." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968). Subclasses may be certified to provide adequate representation to plaintiffs who have interests that are in some respects adverse to one another, *see Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999), or to distinguish groups of plaintiffs by injury sustained, *see, e.g., Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), or to isolate common issues of law or fact shared by distinct groups of plaintiffs, *see, e.g., Pruitt v. Allied Chem.*

*Corp.*, 85 F.R.D. 100, 111-12 (E.D. Va. 1980). Because each subclass is "treated as a class," each "subclass must independently satisfy all the prerequisites of Rule 23(a) and (b). Manual for Complex Litigation § 21.23 (4th ed. 2004).

The Court has already certified the Rule 23(b)(3) Settlement Class. The primary issues for the main Class – recovery of overcharges arising from the Defendants' alleged anti-competitive conduct -- apply equally to the proposed Franchisee Subclass, but the proposed Franchisee Subclass has three additional, distinct issues: (1) whether a competing claim on the same underlying transaction is asserted by a franchisor; (2) if so, or if otherwise required by the Special Master, determination of which entity – franchisee or franchisor -- should be deemed to have "accepted" the payment card and therefore to come within the Settlement Class and receive settlement funds; and (3) how those funds should be allocated. *Fikes Wholesale, 6*2 F.4th at 718. These are the three issues identified by the Court of Appeals, which concluded that each side (franchisor and franchisee) should be represented to enable them to present arguments to the Special Master as to why they should be favored over their adversary, and to negotiate toward settlements of the disputes affecting each adverse pair. *Id.*

As discussed below, the proposed Franchisee Subclass is a discrete and identifiable subset of the main Rule 23(b)(3) Class that also satisfies the requirements of Rule 23.

## 1. The Proposed Franchisee Subclass Meets the Requirements of Rule 23(a)

The proposed Franchisee Subclass satisfies each of the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy.

### a. *Membership of the Proposed Franchisee Subclass Is so Numerous that Joinder Is Impracticable*

The numerosity requirement looks at the size of the class to assess whether joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Precise quantification is not required and

11

the Court may "make some common sense assumptions" and "rely on reasonable inferences drawn from the available facts." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 351 (E.D.N.Y. 2006).

According to the 2017 Economic Census Franchise Statistics Report, roughly 11 percent of all businesses in the United States are franchises. And according to a report prepared by the claims administrator in this case, there are likely more than 600,000 franchisee class members alone whose data will not be reflected in the existing database. ECF 7469-7, at 9. Joinder of all franchisees is impracticable and the numerosity requirement is met. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992).

> b.  *There Are Questions of Law and Fact Common to All Franchisee Subclass Members*

The commonality requirement of Rule 23(a)(2) assesses whether class members seek to adjudicate the same questions of law and fact. Common questions "are often present where there are legal or factual disputes pertaining to the defendants' 'unitary course of conduct,' since such questions tend to give rise to answers that are broadly applicable to the entire class." *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-MD-1175 (JG)(VVP), 2014 WL 7882100, at *30 (E.D.N.Y. Oct. 15, 2014) (citations omitted).

Again, the Court already concluded that the Rule 23(b)(3) Class met the requirements for certification as a settlement class. Therefore, any argument by Class Counsel that a subset of those class members (like franchisees) is not similarly situated would be contrary to their previous positions in this case. Beyond that, though, the proposed Franchisee Subclass is itself sufficiently common because, by definition, each member faces the prospect of having a competing claim (by a franchisor) on the same underlying transaction and, if there were a competing claim asserted, the competing claimants would then need to litigate which of those two entities "accepted" the payment cards and how settlement funds should be allocated as between the two. Each franchisee

12

will have a common set of issues to resolve these questions, and each need counsel at every step of the way.[5]

Indeed, there are significant common issues with respect to the proposed Franchisee Subclass, such as: (a) in a franchisor/franchisee relationship, whether the "acceptance" of a payment card happens at the retail point of sale or at the brand level; (b) whether payment of the interchange fee by a franchisee at the retail point of sale is "direct" under the antitrust laws; (c) whether some other legal theory grants one or both groups "direct payor" status, such as the cost-plus or co-conspirator exceptions to the *Illinois Brick* Rule: (d) whether franchise contracts identify which entity is the "direct payor" in these circumstances;[6] (e) whether there is a fair or negotiable allocation of settlement funds if both franchisee and franchisor make viable claims; and (f) how to identify and evaluate franchisee level transaction data.

This last point – transaction data -- is an especially common and pertinent issue among franchisees, and illustrates why separate, experienced subclass counsel is necessary.   In our experience, few franchisees' transactions are accounted for separately in the Defendants' transaction records or in the Epiq class database.  This is true across the board for most (if not all) franchisees, and it is an issue that all franchisees will need to deal with during the claims administration process.

---

[5] Given their resources, franchisors may not need their own subclass counsel.  Nor have they requested such an appointment.

[6] We have reviewed many franchisee/franchisor contracts, and we have seen no contractual provisions that resolve this issue definitively.

The lack of available data stems largely from the fact that in franchised systems, payment card transaction data is aggregated in the Defendants' records at the national/franchisor level, not at the local franchisee level.  ECF 7469-7, at 9.[7]

Because franchisee level transactions typically are not available through the existing Epiq database, in order to "prove up" a franchisee's claim, the franchisee will need to compile data from various sources, including the franchisor, payment card processors, banks, and from the franchisee's own records (which often are incomplete, given the long class period and the variances in record keeping practices). In our experience, this effort requires an investment of time and industry savvy.  The truth of the matter is, if franchisees are left without counsel to coordinate and unify these data efforts, many simply will abandon their claims.  This is especially true if the franchisor adversary is represented at the Special Master stage by private counsel with resources and access to their data histories.  Put simply, a decision not to appoint counsel for franchisees amounts to a pre-determined "win" by the franchisors and the prospect of a low claims rate by franchisees.

Class Counsel has argued that the issues of class membership, direct payor status, and franchisor/franchisee disputes should be deferred until after the Special Master receives claims and makes determinations.  But the lack of comprehensive data for franchisees illustrates why this approach will lead to unfair and uninformed results.  How can the Special Master make a determination about entitlement and allocation without a full record, including transaction data

---

[7] According to a report prepared by the claims administrator, Epiq Class Action & Claims Solutions, Inc. (Epiq) there are likely more than 600,000 franchisee class members whose data will not be reflected in the Epiq database. As explained in the Epiq report, in some instances a single Taxpayer Identification Number (TIN) was linked to thousands of records. "In an effort to provide franchisees who may be ... Class Members with mailed notice, a manual review was undertaken to evaluate whether the records were associated with possible franchise operations in which the TIN was for the franchisor rather than the franchisee. For TINs determined to be likely franchisees, Epiq generated mailings for each unique candidate address rather than a single mailing for the TIN. A total of 671,161 unique mailings resulted from this process."

from each side? For franchisees with complicated data issues and limited resources, many franchisees may abandon the administration process altogether, or may accept settlement funds that are lower than they deserve.  That should not be allowed to happen.  Subclass counsel should be appointed to coordinate a better, more fair process.

The fact that the Old Jericho Plaintiffs are pursuing different legal theories – namely indirect purchaser claims under certain state laws – does not obviate the need to designate a subclass, and does not make the franchisees' issues uncommon.  The Old Jericho Plaintiffs are not a certified class, and the lawyers representing them cannot speak for anyone except the 19 Old Jericho Plaintiffs.[8]  The Old Jericho Plaintiffs certainly have the right to make the strategic choice to abandon their right to settlement funds in this case in favor of pursuing their own claims through an indirect purchaser theory in a separate uncertified class action lawsuit.  But the argument they are advancing here – that all gas retailers are indirect purchasers – would, if successful, cause significant harm to gas retailers and other franchisees in Non-Repealer states, including several of the Fikes Plaintiffs.  In other words, if the Fikes Plaintiffs do not recover in this Class Settlement, there is no other mechanism for many of them to recover at all because they reside in states that do not allow indirect purchaser claims.  This amounts to real potential harm to them and half the other gas retailers nationwide that do not reside in Non-Repealer states,[9] and it illustrates why class counsel must be appointed to represent franchisees, as a class, at the earliest possible moment.

---

[8] For this reason, the Old Jericho Plaintiffs have no right to argue before the Special Master that all gas retailers in *Illinois Brick* Repealer States – *en masse* -- are indirect purchasers and therefore not bound by the release in the Rule 23(b)(3) Class Settlement.  They can make that argument on their own behalf, but not on behalf of anyone else.

[9] A decision barring gas retailers in Repealer states from recovering in this Class Settlement is also potentially harmful. No determination has been made as to the viability of any of the indirect payor claims, and it is far from clear that those claims will benefit from class action tolling back to 2004 – which makes the claim in this case valuable to many merchants.

Nor does Jack Rabbit's positon on the cost-plus exception create lack of commonalities among the proposed subclass.[10] Like the Old Jericho Plaintiffs, Jack Rabbit is free to pursue whatever strategy and legal theories it wishes on its own behalf, but it has no authority or standing to pursue relief on behalf of an entire class or group. There are always going to be modest strategy differences pursued by claimants with competent counsel (like Old Jericho and Jack Rabbit), but the Court should also give voice to the hundreds of thousands of franchisees who do not have the luxury of retaining their own private attorneys.

c.      *The Proposed Franchisee Subclass' Claims Are Typical*

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." *Currency Conversion*, 224 F.R.D. at 562 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). This requirement is met where "the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class." *Reid v. SuperShuttle Int'l, Inc*., No. 08-cv-4854 (JG)(VVP), 2012 WL 3288816, at *4 (E.D.N.Y. Aug. 10, 2012).

As discussed with respect to the commonality requirement above, all proposed Franchisee Subclass members are pursuing the same right to recovery through the Special Master process, based on the same legal theories, seeking redress for the overcharges allegedly caused by the same challenged course of conduct.

The proposed subclass representatives (the Fikes Plaintiffs) are each members of the proposed subclass. They each own a branded outlet of a retail chain under a franchisee agreement, they each accepted payment cards during the relevant time period at their retail locations, and they

---

[10] The cost-plus exception has rarely (if ever) been used successfully by antitrust plaintiffs. It appears to require a fixed quantity contract that predates the misconduct period (here 2004), and runs continuously throughout the entire misconduct period (here 2019). *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 736 (1977).

16

each otherwise are members of the Settlement Class.  Their interests are aligned with the proposed Franchisee Subclass.

        d.        *The Proposed Franchisee Subclass Is Adequately and Fairly Represented*

To meet the adequacy requirement of Rule 23(a)(4), the "proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Payment Card*, 827 F.3d at 231. Adequacy must be assessed independent of the fairness of the settlement itself, and instead should look to whether the proposed class is "sufficiently cohesive to warrant adjudication." *Id*. at 232. The standard looks to uncover any conflicts between the representatives and the class members, *Amchem*, 521 U.S. at 625, and to ferret out any "fundamental conflict that goes to the very heart of the litigation," *Payment Card*, 827 F.3d at 231.

The proposed subclass representatives and members of the proposed Franchisee Subclass have a unified and unitary interest in seeking the maximum monetary relief through the Special Master process, and in beneficially answering and resolving the common issues identified above, such as whether there are competing claims by a franchisor, which of the two entities 'accepted' payment cards, how settlement funds should be allocated, and the transaction data challenges. These questions are common to all franchisees, and answers will be sufficiently common to render a subclass the best vehicle for resolution.

Each proposed subclass member is challenging the same unlawful conduct that caused them to pay supra-competitive fees, and arguing that they are the direct payor of that overcharge. Each member has the same interest in maximizing the recovery of funds. Put differently, there are no divided interests and no essential allocation decisions as between proposed subclass members because each proposed Franchisee Subclass member receives the same benefit – a pro rata share of the monetary fund.  Each proposed Franchisee Subclass member <u>does</u> have a divided interest

17

and potential allocation adversity with its franchisor, which is why a subclass of franchisees is necessary.

A related aspect of the adequacy standard is whether the proposed subclass counsel will adequately represent the proposed subclass. This Rule requires that class counsel "fairly and adequately represent the interests of the class." When "determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance." *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261, 2016 WL 7009062, at *7 (S.D.N.Y. Nov. 30, 2016); *see also* Notes of Advisory Comm. on 2018 Amendments to Fed. R. Civ. P. 23 ("[T]he focus at this point is on the actual performance of counsel acting on behalf of the class."). Counsel are adequate where they are experienced in the relevant area of litigation, and had represented the plaintiffs "diligently and ably" in the years the litigation was pending before the court. *See In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997).

Undersigned counsel satisfy this adequacy test, and their proposed leadership structure demonstrates their commitment to industry-level focus and expertise: Jana Eisinger has represented the Branded Operators diligently and ably for many years, and will oversee representation of the entire proposed Franchisee Subclass. *See* accompanying Declaration of Jana Eisinger. David Esau is an experienced antitrust lawyer who has represented plaintiffs seeking affirmative recovery in a variety of antitrust actions, including oil and gas retailers in opt out litigation in this case. *See* accompanying Declaration of David B. Esau. Given his expertise representing clients in the oil and gas industry in this case, he and his firm will focus solely on counseling and assisting the oil and gas franchisees in the subclass. Ronald Gardner has almost 30 years of experience representing only franchisees in a variety of industries, including

18

restaurants, car repair and education.  *See* accompanying Declaration of Ronald K. Gardner.  He and his firm, along with Ms. Eisinger, will focus on counseling and assisting franchisees in the subclass outside the oil and gas industry. Undersigned counsel have the resources, expertise and experience needed to represent the interests of the proposed subclass.

> **2.      The Proposed Franchisee Subclass Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying the requirements of Rule 23(a), the proposed subclass also satisfies the requirements of Rule 23(b)(3) that: (1) common issues predominate over individual issues; and (2) a class action is the superior method of adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

> *a.      Common Questions of Law and Fact Predominate*

Like other aspects of the Rule 23 standards, the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *AIG*, 689 F.3d at 239 (same). As discussed above, the Court has already certified the Settlement Class, finding that it meets all the requirements of Rule 23.   The proposed Franchisee Subclass is a discrete component of that already certified class. The claims of the proposed Franchisee Subclass and the members of that subclass focus on the same operative set of facts and legal theories. The proposed Franchisee Subclass members were all harmed by Defendants' alleged conduct, and they all operated under franchise relationships -- which could impair their right to recover funds in the Settlement Class. These issues are common to each and every member of the proposed Franchisee Subclass.  As discussed above, the questions of: (1) whether a competing claim on the same underlying transaction is asserted by a franchisor; (2) if so, which entity – franchisee or franchisor -- should be deemed to have "accepted" the payment card and therefore to come within the Settlement Class and receive settlement funds; and (3) how those funds should be allocated -- all apply to every member of the proposed Franchisee Subclass

19

While each franchisee has contracts with its franchisor that are different than those in a different franchise system, those contract differences are not dispositive of either the cohesiveness question or the underlying question about class membership.  Rather, the relevant factor in determining whether the proposed Franchisee Subclass is sufficiently cohesive to warrant adjudication by common representation is the simple existence of a franchise relationship. That is the cohesive glue that binds the subclass together, because that question drives the conflict identified by the Court of Appeals, which is whether that class member has a potential conflict with other class members such that they need counsel to represent their interests independently. The question of any contract differences can and will be addressed during the claims administration and Special Master processes.

But to foreshadow the argument before the Special Master: individual differences in contracts are a red herring to whether a franchisee is a class member or not.  There are no contracts that we have seen (and we have reviewed many of them) that indicate which entity – franchisor or franchisee – is a direct payor versus an indirect payor, or that is otherwise dispositive on the question of class membership, entitlement, or allocation.  ECF 7559-1 at ¶ 6.

Rather, what will matter is answering common questions, such as whether "acceptance" of a payment card happens at the retail point of sale or at the franchisor level; whether payment of the interchange fee is "direct" at the retail point of sale or some other place in the transaction chain in a franchised system; whether some other legal theory applies to grant one or both groups "direct payor" status, such as the cost-plus or co-conspirator exceptions to the *Illinois Brick* Rule; whether there is a fair or negotiable allocation of settlement funds if both franchisee and franchisor make viable claims; and whether there are common sources of data that can benefit the Special Master's determination of membership, entitlement, and allocation. Because these questions are common

20

to the proposed Franchisee Subclass, and can be answered with common evidence, the proposed subclass is sufficiently cohesive to satisfy the Rule 23(b)(3) predominance requirement for settlement purposes.

   b.   *A Subclass Is the Superior Method for Resolving This Case*

The superiority requirement is met "when the main objectives of Rule 23 are served," including "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *D'Alauro v. GC Services, Ltd. Partnership*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

The Court has already determined that a class action is the superior method of resolving this case.  The proposed Franchisee Subclass offers a further common benefit to hundreds of thousands of merchants: separate, un-conflicted representation. A subclass is the only possible means of resolving the claims of franchisees while, at the same time, avoiding the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought before the Special Master separately. *Bourlas*, 237 F.R.D. at 354. Also, the overwhelming majority of proposed subclass members who have neither the incentive nor the means to litigate their claims individually may pursue those claims only through the subclass device. *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL1956267, at *14 (S.D.N.Y. May 1, 2008); *Currency Conversion*, 224 F.R.D. at 566.

   **3.   Notice to the Class is Not Necessary**

The Court previously certified the Settlement Class and determined that the Settlement is fair and reasonable.  Class members – including those in the proposed Franchisee Subclass -- were already sent notices about the Settlement and given the opportunity to opt out or object.  The proposed subclass does not change any of the substantive terms of the Settlement, or abridge any

21

class member's rights. Rather, the designation of a subclass would simply put certain class members (franchisees) on equal footing with all other class members by ensuring that they have class counsel that are not conflicted – which provides those subclass members with additional, valuable benefits. New notice is only required where there are "[m]aterial alterations" to a class settlement. *Pearson v. Target Corp.*, 893 F.3d 980, 986 (7th Cir. 2018); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n.10 (3d Cir. 2013); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 800 F. Supp. 2d 328, 334 (D. Me. 2011). Amendments that benefit the class do not require supplemental notice. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018) ("When the modification makes the settlement less desirable, notice may be required because courts cannot be sure whether more class members would have chosen to object to the settlement or exclude themselves from the class.… [W]hen the modification makes the settlement more valuable to the class, courts have routinely concluded that notice is unnecessary."); *see also In re New Motor Vehicles*, 800 F.3d at 334 (where new settlement terms result in "benefits not substantially less than those proposed in the original settlement," new notice is not required). The Fikes Plaintiffs respectfully suggest that no additional notice is necessary. Of course, if the Court is inclined to give notice, we will provide a proposal for doing so.

**B.**     **The Court Should Appoint Subclass Counsel for the Franchisees**

Upon certifying the class, the Court should appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B); 23(g). Rule 23(g) requires the Court to consider the following four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.* at 23(g)(1)(A)(i)–(iv).

Undersigned counsel satisfy all four criteria. As discussed above, all counsel are skilled federal litigators, with experience representing plaintiffs in complex antitrust cases, franchise law, the oil and gas industry and class action litigation. *See* Declarations of Jana Eisinger, David B. Esau, and Ronald K. Gardner. Undersigned counsel have already devoted substantial time and resources – at their own expense and with no promise of compensation -- investigating the factual and legal issues in this case, and will continue to do so throughout the pendency of the claims administration process. *See, e.g., Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) ("The plaintiffs have shown that they will adequately represent the class. . . . Counsel have already committed substantial time and resources to identifying and investigating potential claims in the action."). Undersigned counsel are prepared to devote the resources necessary to protect the interests of the subclass, and the Court should so appoint them.[11]

<u>CONCLUSION</u>

For the reasons discussed above, the Court should: (1) permit the Fikes Plaintiffs to intervene; (2) certify the proposed Franchisee Subclass and appoint the Fikes Plaintiffs as class representatives; and (3) appoint the undersigned attorneys as subclass counsel.

By: /s/ Jana Eisinger
    Jana Eisinger
    **LAW OFFICE OF JANA EISINGER, PLLC**
    4610 South Ulster Street, Suite 150
    Denver, CO 80237
    Tel: (303) 209-0266
    jeisinger@eisingerlawfirm.com

---

[11] If appointed, undersigned counsel intend to petition the Court after the claims administration process is complete (or as directed by the Court) for an award of attorneys' fees and costs under Rule 23(h) and Fed R. Civ. P. 54(d)(2), to be paid solely out of the existing attorneys' fee award so as not to dilute the class settlement fund.

23

David B. Esau
**CARLTON FIELDS, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401
Tel: (561) 659-7070
desau@carltonfields.com

Ronald K. Gardner
**DADY & GARDNER, P.A.**
80 South Eighth Street
#5100 IDS Center
Minneapolis, MN 55402
Tel: (612) 359-3501
rkgardner@dadygardner.com

*Counsel for the Fikes Plaintiffs*