UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re PAYMENT CARD INTERCHANGE : MDL No. 1720(MKB)(VMS)
FEE AND MERCHANT DISCOUNT :
ANTITRUST LITIGATION : Civil No. 05-5075(MKB)(VMS)
 :
---------------------------------------------------------- : JOINT STATUS REPORT IN ADVANCE OF
 : SEPTEMBER 7, 2023 STATUS
This Document Relates To: : CONFERENCE
 :
    ALL ACTIONS. :
 :
---------------------------------------------------------- x

4855-4927-8077.v1

The parties respectfully submit this Joint Status Report for the Status Conference in MDL 1720 scheduled for September 7, 2023 at 2:00 p.m. This Status Report sets forth the status of certain matters related to the Rule 23(b)(3) class settlement as well as other matters parties wish to discuss with the Court. Addressed below are matters the Rule 23(b)(3) Class Counsel ("Class Counsel") wish to raise related to claims administration and service awards to Named Plaintiffs. Defendants raise an issue regarding pending litigation brought by Square and Intuit. Old Jericho Plaintiffs raise an issue regarding their claims. Intuit, Jack Rabbit, and Block also raise various matters.

I. **Rule 23(b)(3) Matters**

   A. **Claims Administration**

As Class Counsel has reported, matters related to the claims administration process have been proceeding for some time. At the May 11, 2023 Status Conference, Class Counsel provided some information regarding pre-work related to data gathering and analysis. That work continues. Class Counsel will be prepared to update the Court on the ongoing data-related work at the Status Conference.

Now that the Settlement Final Date has occurred, Class Counsel is submitting with this Status Report a proposed Claim Form for the Court's review and approval. Additionally, at the Status Conference, Class Counsel will provide the Court with sample envelopes that will be used to draw the attention of Class Members so that the mailing containing the Claim Form is not ignored.

Class Counsel has also been working to determine the best way to ensure Class Members are aware of the settlement and to encourage them to file claims. As part of that effort, Class Counsel and Epiq – the Court-appointed Class Administrator – have met with a PR firm to discuss educational and public relations outreach plans. Class Counsel and Epiq believe retaining this firm will: (1) assist in making Class Members aware that the claims process is beginning; and (2) how to

participate in the process to get their pro-rata share of the settlement funds, a needed educational component – particularly in this action where there are potentially millions of Class Members from underserved communities and it has been nearly four years since the Court granted final approval of the settlement. We anticipate that this will drive Class Members to submit their Claim Forms. Class Counsel have signed a letter of engagement that is cancelable at any time, but seek Court approval of this retention. Class Counsel requests the Court approve the retention of (W)right On Communications to manage an education and outreach PR program, through the end of the claims filing process. An initial proposed budget of no more than $500,000 has been suggested. Julie Wright, President, will be attending the Status Conference and will be available to answer questions.

**B.     Timelines**

At the upcoming Status Conference, Class Counsel plan to share some initial timelines that have been developed with Epiq regarding the mailing of Claim Forms, the claims period, and other administration milestones.

**C.     Claim Form**

Working closely with Epiq, Class Counsel has created for Court approval a proposed Claim Form packet. This packet (consisting of a Claim Form, envelope, and return envelope) provides detailed information to Class Members regarding how to file a claim either via an online portal or via mail. The proposed Claim Form is attached as Exhibit 1. The Claim Form provides information including interchange fees paid, total credit and debit transactions, and more, to the extent known in the data. The Claim Form provides unique QR codes as well as unique Claimant IDs that can be used to file online claims and to review additional data, to the extent available. The Claim Form also informs Class Members that Claim Forms are available in a number of languages besides English

and how to contact the administrator via email, mail and toll-free phone number. It is expected that more than 16 million Claim Forms will be mailed, based on the current known address database.

### D.      Service Awards

At the last Status Conference, the Court inquired as to whether the dispute regarding service awards to Named Plaintiffs which was remanded by the Second Circuit might be resolved between the parties. Class Counsel reached out to the objectors and the discussions were not productive. Class Counsel has reviewed the prior submissions and time entries and proposes to submit revised requests for service awards that comport with the direction from the Second Circuit regarding lobbying time. It should be noted that several Named Plaintiffs had no lobbying time. Class Counsel will be prepared to submit the revised requests within two weeks following the Status Conference and will work with any objectors to set up a briefing schedule. This issue should not affect the claims process in any way.

### E.      Response Regarding Old Jericho and other Entities

Class Counsel responded to certain of Old Jericho's claims in a letter filed on August 23, 2023 (ECF 8893), and is prepared to further respond at the Status Conference. Issues raised today by Jack Rabbit, Block, and Intuit will also be addressed at the Status Conference.

## II.     Defendants

Now that the Settlement Final Date has occurred and Class Counsel are proposing steps (i) to make Class Members aware that the claims process is beginning, and (ii) to send out claims forms, Defendants wish to ensure that the Class Members serviced by "Payment Facilitators" including Block (aka, Square) and Intuit, which act as the Class Members' agents, understand that they are entitled to submit claims and participate in the Class Settlement. Defendants are concerned that the opt-out complaints filed by Square and Intuit, and the supposed "indirect purchaser" actions filed by

putative classes of so-called "Square Sellers," could create confusion for millions of small merchants.

Relatedly, for the reasons summarized in Defendants' August 24, 2023 letter to the Court (DE 8894), Defendants believe that merchants serviced by Payment Facilitators are Class Members and have released their claims and those of their Payment Facilitator agents in return for the right to file claims and participate in the Class Settlement. Defendants have requested either a pre-motion conference or an order requiring the parties to submit a briefing schedule concerning this issue.

Defendants received the inserts to the status report from Intuit and Square a few hours before the report was due to be filed. Defendants do not agree with the assertions made by those entities. Among other things, it is wrong to suggest that Class Members serviced by Intuit and Square did not receive notice of the Class Settlement in 2019. This Court assessed the Notice Plan – with mailings to over 16 million merchants and a significant publication notice – and found it sufficient to adequately notify Class Members of the proposed settlement. (DE 7821, at 8.) Square, Intuit, and Lanning *thereafter* filed complaints with allegations that call into question whether millions of small Class Members should participate in the settlement. The self-serving assertions by Square and Intuit that they are "direct purchasers" and "directly pay interchange" (which are wrong factually since acquiring banks are the sole entities to directly pay interchange, DE 8857), and by Lanning that they are "indirect purchasers," all miss the point: Payment Facilitators are not Class Members and never have been. Defendants seek to avoid any confusion when claims forms or further communications are distributed to small Class Members serviced by Square and Intuit.

To the extent it affects the claims administration process, Defendants will be prepared to address the issues pertaining to Payment Facilitators at the upcoming conference, if the Court wishes. To the extent the Court is inclined to hold a premotion conference on Defendants' proposed

- 4 -

motion to enforce, counsel for Square and Intuit requested that the Court hold such a conference later in September, to which Defendants consented given the stated unavailability of counsel for Square and Intuit on September 7.

Regarding the *Old Jericho* Plaintiffs, as Defendants have stated previously (DE 8878), Defendants have no objection to the *Old Jericho* Plaintiffs' participation in the special master process, where all counsel who represent various groups of gas station retailers and other franchises will be able to submit claims. Defendants do not agree with the *Old Jericho* Plaintiffs' self-designated status as non-Class Member "indirect purchasers." Rather, any entity in that group may file a claim and have its Class Members status determined according to the procedures set forth in this Court's August 2, 2023 Order (DE 8883).

### III.  Old Jericho Plaintiffs

As set forth in our letter of August 21, 2023, Counsel for Old Jericho Plaintiffs want to discuss at the hearing the process for claims administration being proposed by defendants and counsel for direct purchaser plaintiffs, specifically with regard to gas retailers, who are in a very different legal position than other claimants.[1] The Old Jericho Plaintiffs would like to understand and discuss the following:

(1) How will a claims administrator, with no formal legal training or understanding of the law related to standing under federal antitrust law, determine "in the first instance" whether a gas retailer is a direct purchaser, if that is indeed the process that will be used?

(2) How does the administrator determine whether a branded gas retailer is a direct purchaser when most, if not all, of the brands have opted out of the class, meaning that any branded gas

---

[1] It is our understanding that other franchise arrangements work very differently than those for branded gas retailers. From our review of franchise agreements, it appears that fast-food, motel, and other franchisees have their own contracts with acquirer/processors. At most, the franchisor-brand directs that franchisees use a certain acquirer, but the franchisee seems, for the most part, to contract with the acquirer directly. Gas retailers, on the other hand, have no contractual relationship with the acquirer/processors, but instead run transactions via the oil companies or jobbers.

- 5 -

retailer direct purchaser claim, if it ever did exist, is no longer in the class and is not part of the settled class?

(3) How will the various interested parties in this action, beyond defendants and Rule 23(b)(3) class counsel, receive notice of the claims administrator's decision on gas retailer claims so they are able to appeal the decision to the special master?

(4) Do gas retailers in *Illinois Brick* repealer states have to make a claim in this action to preserve their indirect purchaser rights, specifically in light of defendants' affirmative defense in the *Old Jericho* action that gas retailer indirect purchaser claims have been waived by the class settlement in MDL 1720?

(5) If the claims administrator determines in error that a gas retailer is a direct purchaser, how will that gas retailer appeal the decision or even be advised on how to move forward?

(6) Proposals for how to address these issues before claims administration in order to create efficiencies in this process and provide guidance to the claims administrators and gas retailers. One such proposal would include referring this to the special master, so it can be addressed in a summary proceeding with a full evidentiary record, allowing each interested party the opportunity to advocate for their position and for the special master to make a ruling on this standing issue.

(7) Entering a ruling on the Old Jericho Plaintiffs' motion for intervention allowing it the opportunity to represent the interest of gas retailers in repealer states.

**IV. Jack Rabbit**

The Second Circuit made clear in its decision in this matter that it did not rule on "how damages should be allocated as between branded oil companies and their branded service station franchisees ..." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023). The decision mentions franchisees or franchisors 32 times, each time the only plausible interpretation would be that the Second Circuit exclusively referred to integrated oil companies and their franchised service stations operating under the trademark of the franchisor. "We agree with the district court that the arguments advanced by the franchisees present no reason why the settlement affecting all claimants other than the franchisors and franchisees of integrated oil companies should not be consummated."(Doc 503-1,p.25). The decision, therefore, makes clear that members of our

- 6 -

proposed subclass of Retail Gas Station Franchisees have separate interests, that still require separate attention, which we submit is best accomplished through separate formal representation.

This remains a direct purchaser case where class members must have accepted payment through credit cards and be direct purchasers. The Old Jericho plaintiffs concede that they are indirect purchasers with a separate cause of action that they are pursuing. By class definition, they are not members of this class. Moreover, since their position is adverse to the Retail Gas Station Franchisees class members, and favors the Oil Distributor Franchisors with regard to who is the direct purchaser, they bring nothing to the table as an additional subclass. The Major Oil Distributers already have adequate representation for their position through their own counsel.

Jack Rabbit's position is that the Retail Gas Station Franchisees fall within the Cost Plus exception to the general Direct Purchaser only rule for purposes of antitrust standing, pursuant to *Illinois Brick* and § 4 of the Clayton Act. It is a position we believe we can argue successfully to the Special Master, or this Court.

Any attempt to view the Second Circuit opinion as opening and expanding the franchisor/franchisee conflict to include all such entities must be rejected. There is nothing in the Second Circuit opinion that can be reasonably interpreted to define the dispute between franchisors and franchisees beyond the stated conflict between oil distributors and retail gas station franchisees. Furthermore, theoretical, new, possible conflicts or disputes between any other group of franchisees or franchisors are not before this Court as they were subsumed by the Second Circuits approval of this Court December 2019 Judgment with the only exception being the integrated oil companies and their franchised service stations.

Finally, Jack Rabbit reaffirms its position to be granted intervention and appointed subclass Counsel for Retail Gas Station Franchisees. To that end, Jack Rabbit also requests permission to add

a section to the notice to be distributed to potential claim holders regarding the status of Retail Gas Station Franchisees.

## V.      Intuit Inc. and Intuit Payment Solutions, LLC

As discussed in previous status conference statements, Intuit Inc. and Intuit Payment Solutions, LLC ("collectively, "Intuit") assert three categories of claims in which Intuit directly paid interchange fee: direct sales of its own products (QuickBooks, etc.), transactions in which it acted as an independent sales organization ("ISO"), and transactions where it acted as a payment facilitator ("PayFac"). Pursuant to the Court's August 25, 2023 Order, Intuit plans to submit a fulsome response to Defendants' August 24, 2023 letter (Dkt. 8894) this Friday, September 1, 2023. Furthermore, pursuant to a letter filed yesterday (Dkt. 8905), Defendants consented to hearing any pre-motion conference on that letter between September 27-29, 2023, if the Court believes a conference is necessary and is available any of those days, because neither Intuit's nor Block's counsel are available for the September 7, 2023 conference.

Above, Defendants suggest there may be some administration issues with Intuit's or Block's PayFac customers, but Intuit believes no such issues should exist. A PayFac enters into a "master" merchant agreement with an acquiring bank, and its customers (typically, small businesses that cannot obtain a full merchant agreement with an acquirer or do not want to do so) enter into submerchant agreements with Intuit. Intuit pays interchange fee directly on all transactions it facilitates and all amounts transferred from an issuer to an acquirer for transaction settlement first go to Intuit. What that practically means for class settlement administration is that notice of all PayFac-related transactions went to Intuit, so it is the party that could have made a claim on the class settlement fund for those amounts. However, Intuit timely opted out and filed its own lawsuit years ago, in 2021, and is pursuing that opt-out lawsuit now.

- 8 -

Furthermore, it bears noting that, were this a real issue for Class Settlement administration, Defendants had years to raise it with the Court, Class Counsel, or both. Intuit provided Defendants with a list of its PayFac submerchants years ago and more recently updated that list as part of ongoing discovery. Had Defendants believed there was the potential for confusion or that these submerchants erroneously did not receive notice of the Class Settlement, but should have, they had ample time to identify the supposed issue so the parties could address it. In truth, Intuit received notice because it, not its submerchants, directly pay interchange fees on those transactions, and its list of submerchants is simply a list of indirect purchasers of interchange fee.

Defendants' request to discuss these issues in the context of class administration is really an attempt to argue Intuit's PayFac-related antitrust standing through an artificial, non-summary judgment process. There is no current dispute between class settlement fund claimants about PayFac transactions. Furthermore, if any of Intuit's submerchants actually received notice (which it doubts, given the structure of PayFac transactions) and make a claim on the fund, the parties that would presumably object would be other fund claimants. To the extent Defendants claim they need to discuss these issues at all when there is no demonstrated confusion or similar issues, Intuit respectfully requests that the Court defer such discussion until Intuit counsel can provide its input in person, at any pre-motion conference the Court sets on Defendants' August 24, 2023 letter.

**VI.    Block, Inc., f/k/a Square, Inc.**

Block, Inc., f/k/a Square, Inc. ("Block") timely opted out of the Rule 23(b)(3) Class Settlement and on July 14, 2023 filed an opt-out action related to all transactions which it facilitated on behalf of its clients (known as "Square Sellers"). As directed by the Court, Block will respond fully on September 1, 2023 to Defendants' request for a pre-motion conference. Block opposes Defendants' attempt to use the upcoming status conference and the claims administration process to

- 9 -

litigate standing issues and sow confusion by asserting that entities which never directly paid interchange fees "are entitled to submit claims and participate in the Class Settlement."

This Court and the Second Circuit have been consistent that the Rule 23(b)(3) settlement class definition is informed by federal antitrust law, which limits damages claims to direct payors. Block's Complaint makes clear that Block—and not the Square Sellers for whom it facilitates transactions—directly pays interchange fees. Indeed, Square Sellers have filed their own class actions in this matter, seeking relief under state laws as *indirect purchasers*. These Sellers accurately allege that "Square is the 'direct purchaser' of card acceptance services within the meaning of the federal antitrust laws" with "sole standing to pursue federal antitrust damages claims." *Lanning et al v. Visa, Inc. et al.*, 21-cv-2360-MKB-VMS, Dkt. No. 1 ¶20. The assertion in Defendants' August 24 letter that Square Sellers released both their claims and those of Block is baseless. The Square Sellers *never directly paid interchange fees*, and Defendants conspicuously fail to argue otherwise. Entities that never directly paid interchange fees (and never received notice of the class settlement) cannot participate in the class settlement, have no claims to release, and the notion that they could release Block's claims is frivolous.

As requested in Block's August 28 letter, which was joined by Intuit, and consented to by the Indirect Purchaser Plaintiffs and Defendants, Block respectfully requests that any pre-motion conference addressing Defendants' August 24, 2023 letter be held during September 27–29, at a date and time convenient for the Court.

## VII. Indirect Purchaser Plaintiffs - *Lanning* and *Camp Grounds Coffee*

As set out in the Parties' Joint Status Report filed on April 21, 2023 [ECF No. 8819] at 30-31, the Plaintiffs in the *Lanning* and *Camp Grounds Coffee* cases are indirect purchasers and therefore outside of the direct purchaser settlement that has been reached. Defendants' position that

the settlement class somehow now includes those indirect purchasers runs contrary to, among other things, the holdings of this Court and the Court of Appeals, *see Fikes Wholesale, Inc. v. HSBC Bank USA N.A.*, 62 F4th 704, 716-17 (2d Cir. 2023).

On August 24, 2023, Defendants served a letter [ECF No. 8894] seeking a pre-motion conference. On August 25, 2023, the Court ordered that responses to that letter be filed "on or before September 1, 2023" [Order dated Aug. 25, 2023]. As such, Plaintiffs in the *Lanning* and *Camp Grounds Coffee* cases will respond by that deadline but wish to state in this joint filing that any suggestion that indirect purchasers have settled and released their claims is simply wrong.

DATED: August 29, 2023    Respectfully submitted for the parties,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
ALEXANDRA S. BERNAY


           s/ Alexandra S. Bernay
           ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBINS KAPLAN LLP
K. CRAIG WILDFANG
THOMAS J. UNDLIN
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs