W OLF  H ALDENSTEIN  A DLER  F REEMAN  &  H ERZ LLP

F O U N D E D   1 8 8 8

270 M ADISON  A VENUE

N EW  Y ORK , NY 10016

212-545-4600

T HOMAS  H. B URT
DIRECT DIAL : 212-545-4669
FACSIMILE : 212-686-0114
Burt@whafh.com

SYMPHONY TOWERS
750 B STREET-SUITE 2770
SAN DIEGO, CA 92101
619-239-4599

70 WEST MADISON STREET
SUITE 1400
CHICAGO, IL 60603
312-984-0000

September 1, 2023

**BY ECF**

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-md-01720 (MKB) (VMS)

Dear Judge Brodie:

  Counsel for the plaintiff class in the *Lanning* and *Camp Ground Coffee* cases write in response to Defendants' letter, ECF No. 8894, requesting a pre-motion conference. Defendants' request is nominally directed to the plaintiffs in the *Intuit* and *Block* matters. However, because the plaintiffs and the classes they seek to represent in the *Lanning* and *Camp Ground Coffee* matters are "Square Sellers" using Block's Square service as a payment facilitator, Defendants' letter request and the arguments it raises bear on their rights as well. Accordingly, the plaintiffs in *Lanning* and *Camp Ground Coffee* request the Court's permission to participate in any pre-motion conference on this subject and on any subsequent briefing if the Court grant's Defendants' request.

  Defendants seek to argue that Block is not entitled to claim against it for damages as a direct purchaser and—by implication—that Square Sellers are direct purchasers whose claims have been released in the direct-purchaser settlement. Defendants' position, however, contradicts undisputed facts and flies in the face of its own prior judicial admissions.

  First, Block is plainly a direct purchaser, and Square Sellers are classically indirect purchasers. Square Sellers obtain card-acceptance service from Block. They have no direct contact with the card networks or any acquiring banks. Block contracts with the acquiring banks for Visa and Mastercard services and ***pays a merchant discount that includes the interchange fee*** to the banks. Block likewise contracts for Discover, Amex, and debit card acceptance service in the same manner. Block then re-sells a bundle of card-acceptance service through its flagship Square business to Square Sellers. It builds the interchange and other fees it pays to the various

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

The Honorable Margo K. Brodie
September 1, 2023
Page 2

card networks into its pricing structure, passing along its costs of acceptance plus a profit margin. Interchange is a built-in component of the bundle sold downstream to Square Sellers, making them indirect purchasers under *Illinois Brick v. Illinois,* 431 U.S. 720 (1977).

Second, the Defendants have acknowledged the Square Sellers' indirect purchaser status—and their resulting exclusion from the direct purchaser settlement—in prior judicial filings. Before the Second Circuit, Defendants made clear that, where two merchants have claims related to a single transaction, "only the merchant that is ***the more direct payor of the interchange fee*** can recover in the settlement. And it is that merchant—and no other—that is encompassed in the class definition." Defs. App. Br. at 23. As Defendants further recognized, "an indirect payor with a claim under state law . . . will retain that claim, subject to any applicable defenses." *Id.* at 41. Here, Block and Square Sellers are plainly claiming for the same retail transactions—Block as a direct purchaser and the Square Sellers as indirect purchasers. The antitrust laws permit precisely this. *See California v. Arc America Corp.,* 490 U.S. 93 (1989)(indirect purchaser actions under state statutes not preempted).

Defendants' new position is particularly at odds with their prior, mutually exclusive assertion that even merchants like 7-Eleven and Target are indirect purchasers because they obtain Visa and Mastercard acceptance service from third-party acquiring banks. *See* Defendants Mo. for S.J. Based On *Illinois Brick*, ECF No. 8350.

The latest shift in position raises a troubling issue, highlighted by Defendants' indication that it views its letter as an attempt to enforce the settlement. Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions § 8.2 at 162-65 (4th ed. 2002). The "standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005). Here, Square Sellers did not receive proper or effective notice of the settlement so neither the Due Process Clause nor the Federal Rules are satisfied. Visa, Mastercard, and other third parties provided Epiq with data containing merchant name, address and related information. *See* Cameron R. Azari Decl., ECF 1:05-md-01720, 7469-6, ¶ 21. Epiq then used this information to effectuate notice to individuals by direct mail. *Id.* Block, believing (correctly) that it was a direct purchaser, opted out of the settlement. Square Sellers were strangers to this process. There was neither an attempt to properly notice them, nor would any Square Seller following the litigation even have had inquiry notice. The Defendants' own appellate papers would have led a Square Seller to conclude that all indirect purchasers (which they appeared to be, and which they are) were unaffected by the settlement, were not entitled to submit claims, and were not releasing any claims. If Visa's new position were correct (which it is not), the Square Sellers had a due process right to receive notice, and an opportunity to opt out, to object to the settlement, or to

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

The Honorable Margo K. Brodie
September 1, 2023
Page 3

participate in the recovery thereunder. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 814 (1985)(opportunity to opt out satisfies the Due Process Clause).

That Defendants' novel argument about the scope of the release conflicts with the settlement notice program, and it is specious. Accordingly, Defendants' request for a pre-motion conference should be denied.

Respectfully,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: /s/ Thomas H. Burt
Thomas H. Burt

THB:jg\814763