**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7441**

WRITER'S EMAIL ADDRESS
manishasheth@quinnemanuel.com

September 1, 2023

**VIA ECF**
Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 1:05-md-01720-MKB-VMS; *Block, Inc. v. Visa Inc. et al.*, 1:23-cv-05377-MKB-VMS

Dear Chief Judge Brodie:

  Pursuant to this Court's August 25 Order, Plaintiff Block, Inc. ("Block") respectfully submits this response to Defendants' August 24, 2023 letter (the "Letter") requesting a pre-motion conference or a briefing schedule about a motion "to enforce the Class Settlement Agreement." Letter at 1. Although couched as a matter of settlement administration, Defendants' request is, in fact, an improper and wholly meritless effort to extinguish the significant damages claims brought under federal antitrust law by Block, the direct purchaser and direct payor of fees in connection with the transactions it facilitates. This Court should deny Defendants' request for permission to file a motion to terminate Block's claims.

  **Background:** Block, formerly known as Square, Inc., offers products and services under the name Square which help small and medium-sized businesses (known as "Sellers") start, run, and grow, including by enabling their customers to use payment cards. Square accepts Visa and Mastercard credit and debit cards for payment at millions of Sellers through a variety of methods, including its card processing services. To do this, Square has direct contractual agreements with Visa and Mastercard that establish Square as the "Merchant of Record" for each transaction using those payment cards. As the Merchant of Record, Square directly pays the interchange fees fixed by Visa and Mastercard to the card-issuing bank on behalf of its Sellers. Over time, Square has directly paid Visa and Mastercard millions of dollars in network fees and directly paid Visa and Mastercard issuing banks *billions of dollars* in interchange fees.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

To pursue its claims, Square timely opted out of the Rule 23(b)(3) class settlement over four years ago, and recently filed an opt-out Complaint.[1] Square's Complaint alleges that it is the direct purchaser of Visa and Mastercard transactions and the direct payor of interchange fees to Visa and Mastercard issuing banks. Compl. ¶¶32-38. Square alleges that Visa and Mastercard have fixed those interchange fees at artificially high levels and implemented and managed an agreement not to compete for merchant acceptance among issuing banks through the Honor All Cards Rules. *Id.* ¶¶46-82. The Complaint also explains that Square charges *separate* fees to its Sellers for the services it provides—fees that Square sets on its own. *Id.* ¶37.

**As Square Is the Direct Payor and Purchaser, Its Sellers Could Not Release Its Claims:** Defendants now request leave to file a motion to extinguish Square's claims before any discovery has taken place. The premise for their extraordinary request is that Sellers "accepted" payment cards (thus supposedly falling within the class definition) and did not opt out of the settlement. According to Defendants, this means all claims related to their transactions are released. Defendants fail to mention, however, that Sellers were not even sent notice of the class settlement because they do not exist within Defendants' transactional data, since they do not pay interchange fees. Rather, **Square** directly paid all interchange (and other) fees on transactions it facilitated for its Sellers, which makes Square the only entity under federal antitrust law that can pursue these claims and the only party that could have released such claims (which did not happen because Square timely opted out).

Square's status as direct purchaser and payor is hardly controversial. Indeed, the fact that only Square can pursue these claims is underscored by the fact that Sellers have filed their own class actions, seeking relief under state laws as ***indirect purchasers***. These Sellers accurately allege that "Square is the 'direct purchaser' of card acceptance services within the meaning of the federal antitrust laws" with "sole standing to pursue federal antitrust damages claims." *Lanning, et al. v. Visa, Inc. et al.*, 21-cv-2360-MKB-VMS, Dkt. No. 1 ("Lanning Compl.") ¶20.[2] This stands in stark contrast to the other dispute relating to who owns direct purchaser claims between gasoline branded operators, where different entities dispute who pays interchange fees directly. Here, Defendants are asking this Court to eliminate the claims of the only entity (Square) with standing under federal law to seek damages, by arguing that entities that do not have standing because they are indisputably *less direct* than Square somehow released Square's federal damages claims by not opting out of the class settlement. The Court should swiftly reject this ploy to eliminate Square's claims.

Indeed, the argument Defendants now seek leave to advance contradicts the argument they previously made to the Second Circuit in defense of the class settlement:

> Although defendants have maintained that *all* merchants are indirect payors and thus barred from recovery, defendants compromised that defense to reach a settlement. But there has never been a dispute that, consistent with federal law, only one entity can recover in the settlement for any given transaction. As a result, and as the parties have long understood about the settlement, only the merchant that

---

[1] *See Block, Inc. v. Visa Inc. et al.*, 23-cv-5377-MKB-VMS, Dkt. No. 1 ("Compl.") (July 14, 2023).

[2] *See also* Lanning Compl. ¶¶1 ("Square serves as the merchant of record for purposes of the Visa and MasterCard networks and incurs fees . . . to Visa, MasterCard and their participating banks"), 4, 5, 25.

2

is ***the more direct payor of the interchange fee*** can recover in the settlement. And it is that merchant—and no other—that is encompassed in the class definition.[3]

In upholding the settlement, the Second Circuit held that, although "the word 'accepted' lends itself to ambiguity," this Court "properly concluded" that federal antitrust law clarified this term to mean only those entities "deemed to be ***direct payors*** of the challenged fees." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716 (2d Cir. 2023) (emphasis added). Here, there can be no real dispute that—as between Square and its Sellers—Square is the direct payor of interchange fees. Both Square and its Sellers agree on this, and Defendants do not argue otherwise. Any such an argument would be contradicted by Defendants' own transactional data, which reflects the billions of dollars of interchange fees paid by ***Square*** (and not its Sellers, which again, is why they were apparently not even sent notice of the settlement).

Defendants seemingly want to thread this needle by arguing that Square is not a merchant at all—and is merely an "agent" for its Sellers. But Defendants' argument hinges on one general sentence from Square's extensive terms, while ignoring all of the numerous and valuable services that Square provides to facilitate the ability of customers to use payment cards with Sellers which go far beyond what a mere "agent" would provide.[4] As noted, Square directly contracts with Visa and Mastercard and their acquiring banks regarding the terms of payment card acceptance, and these agreements expressly recognize that ***Square*** is the "***Merchant of Record***" responsible for paying interchange fees. Compl. ¶¶17, 37, 38, 41. *See also id.* ¶39 (Square's contracts with acquiring banks "expressly provide that Square is and stands in the shoes of the typical 'merchant' for all purposes"). These contracts also require ***Square*** to assume all liability (including for chargebacks) in connection with transactions, and directly bind ***Square*** to the relevant card acceptance rules (including the Honor All Cards rules challenged by this litigation). *Id.* ¶¶53, 56, 76. In contrast, Sellers do not have any contractual relationship with Visa or Mastercard and do not even "have their own merchant identification numbers." *Id.* ¶38. Accordingly, Square, as the Merchant of Record and direct payor of interchange, falls plainly within the class definition as found by the Second Circuit, and so Square had the right to preserve its claims by opting out of the settlement, which it did over four years ago.

**Conclusion**: The Court should reject Defendants' argument that Square's valuable damages claims were extinguished because its Sellers did not opt out of a class settlement of which they were not even sent notice. Those Sellers are indisputably indirect purchasers and they themselves acknowledge that Square is the entity that directly paid interchange fees in connection with Visa and Mastercard transactions. Square is prepared to brief these issues at greater length should the Court desire. But Square respectfully submits that the Court can and should deny Defendants' request to file a meritless motion under the guise of settlement administration, and instead direct the parties to set a pretrial schedule for Square's action to move toward resolution on the *merits*.

---

[3] *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 20-339-cv(L) (2d Cir.), Dkt. No. 209, at 24 (Brief of Defendants-Appellees) (Oct. 15, 2020) (second emphasis added).

[4] Defendants ignore that the very terms they cite expressly make clear that Sellers pay *Square* pursuant to a Fee Schedule set by Square alone. *See* Square Payment Terms §4 ("Our Fees"), *available at* https://squareup.com/us/en/legal/general/payment ("You agree to pay the applicable fees listed on our Fee Schedule or the fees as described in your Dashboard for card payments and other payment methods ('Fees').").

Respectfully submitted,

*/s/ Manisha M. Sheth*

Manisha M. Sheth

cc: All Counsel of Record via ECF