**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

IN RE PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

Case No. 1:05-md-1720 (MKB) (VMS)

This Document Relates To:

*Grubhub Holdings, Inc., et al. v. Visa Inc., et al.*, No.
19-cv-06555 (E.D.N.Y.) (MKB) (VMS)

---

**DEFENDANTS' REPLY IN SUPPORT OF**
**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**<u>AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED</u>**

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

**HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement...................................................................................................................... 1

I.      Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants'
        Statement of General Background Facts................................................................................. 5

II.     Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Undisputed
        Material Facts Relating to Defendants' Motion for Summary Judgment under *Ohio v.
        American Express* ................................................................................................................... 5

III.    Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants'
        Undisputed Material Facts Relating to Defendants' Motion for Summary Judgment on
        Post-IPO Conspiracy Claims ............................................................................................... 19

IV.     Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants'
        Argument That Plaintiffs' Claims Are Barred by the *Illinois Brick* Doctrine................... 20

V.      Mastercard's Reply to Grubhub Plaintiffs' Responses and Objections to Mastercard's
        Undisputed Material Facts Relating to Lack of Market Power  ....................................... 26

## **Preliminary Statement**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the

Eastern District of New York, Defendants respectfully submit this reply to Grubhub Plaintiffs'

Response to Defendants' Rule 56.1 Statement.[1]  This reply is submitted in further support of

Defendants' motions for summary judgment on all claims in the operative Complaint filed by

Grubhub Plaintiffs.

Grubhub Plaintiffs filed two separate responses to Defendants' 2023 SMF[2]: (1) Grubhub

Plaintiffs' Responses to Defendants' Incorporation of Certain Paragraphs of Defendants' 2020

Statement of Material Fact,[3] which responds to paragraphs in Defendants' 2023 SMF that

incorporate portions of Defendants 2020 Statement of Material Facts,[4] and (2) GH Pl. Resp. to

2023 SMF, which responds to the remaining additional paragraphs in Defendants' 2023 SMF.

This reply addresses GH Pl. Resp. to 2023 SMF.  Defendants reply separately to GH Pl. Resp. to

2020 SMF in Defendants' Reply in Support of Defendants' Incorporation of Certain Paragraphs

of Defendants' 2020 Statement of Material Fact.[5]

To the extent Grubhub Plaintiffs repeat the same or similar arguments that Direct Action

Plaintiffs already made in their responses to Defendants' 2020 SMF, Defendants incorporate

their prior replies addressing those arguments in Defendants' Reply in Support of Defendants'

---

[1] Grubhub Plaintiffs' Response to Defendants' Rule 56.1 Statement (August 11, 2023) ("GH Pl. Resp. to 2023 SMF").
[2] Defendants' Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried (July 14, 2023) ("2023 SMF").
[3] Grubhub Plaintiffs' Responses to Defendants' Incorporation of Certain Paragraphs of Defendants' 2020 Statement of Material Fact (August 11, 2023) ("GH Pl. Resp. to 2020 SMF").
[4] Defendants Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried (June 1, 2020), *In re Payment Card Interchange Fee and Merchant Discount Litig.*, No. 1:05-md-01720-MKB-VMS (E.D.N.Y.), ECF Nos. 8068, 8262 ("2020 SMF").
[5] Defendants' Reply in Support of Defendants' Incorporation of Certain Paragraphs of Defendants' 2020 Statement of Material Facts ("Defendants' 2023 Reply Supporting Defendants' 2020 SMF").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried.[6]

Part V of this statement supports the motion by Mastercard for summary judgment based on lack of market power; Visa does not join that section.

Grubhub Plaintiffs assert that Defendants' 2023 SMF violates Local Civil Rule 56.1 because it is "massive and verbose."  (GH Pl. Resp. to 2023 SMF at 4.)  And yet, Grubhub Plaintiffs have served almost 2,000 pages in response to Defendants' 76-page statement. Moreover, Grubhub Plaintiffs ignore that the "'[t]he appropriate length of the 'short and concise' statement contemplated by Local Civil Rule 56.1 varies by case complexity,' and there is no hard and fast page limit."  *Olin Corp. v. Lamorak Ins. Co.,* 332 F. Supp. 3d 818, 839 (S.D.N.Y. 2018) (quoting *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 6606629, at *1 (S.D.N.Y. Dec. 20, 2017)).  Accordingly, district courts within this circuit routinely deny motions to strike lengthy statements when justified by the complexity of the case.  *See, e.g.*, *Olin Corp.*, 332 F. Supp. 3d at 839 (collecting cases).

This case is sufficiently complex to warrant the length of Defendants' 2023 SMF. Defendants filed four motions for summary judgment, each based on distinct sets of complex material facts on which there is no issue to be tried.  The motions address claims brought by seven plaintiffs and their subsidiaries, based on conduct spanning a period of 19 years and involving significant industry developments.  To minimize the size of their 2023 SMF, Defendants incorporated by reference facts that were previously included in Defendants' 2020 SMF submitted in support of Defendants' summary judgment motions against Direct Action

---

[6] Defendants' Reply in Support of Defendants' Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried (Dec. 18, 2020), filed at ECF Nos. 8103, 8281 ("Defendants' 2020 Reply").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Plaintiffs and Rule 23(b)(2) Plaintiffs in December 2020.  Grubhub Plaintiffs' response—which includes almost 2,000 pages, including a 759-page "Counterstatement of Material Facts"—belies any suggestion that the issues in this case are not complex.

Grubhub Plaintiffs incorrectly assert that Defendants' 2023 SMF relies on: (1) statements that are not supported by admissible evidence; (2) statements that consist of legal argument instead of factual statements; (3) statements that are conclusory and argumentative characterizations of the supporting evidence; (4) statements that are material misstatements of the supporting evidence; and (5) statements that are irrelevant to Defendants' summary judgment motions.  In addition, as demonstrated below, on issues where Grubhub Plaintiffs carry the burden of proof, they merely object to and criticize the evidence cited by Defendants, without putting forward their own evidence from which a jury could find in their favor on the material facts on which Defendants' motions for summary judgment turn.  Defendants are able to carry their burden on summary judgment simply by pointing out Grubhub Plaintiffs' lack of evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (burden is not "on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact"; instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case").  Even if certain of Grubhub Plaintiffs' evidentiary objections and criticisms were well taken (they are not), they would leave no admissible evidence at the end of Grubhub Plaintiffs' case-in-chief, entitling Defendants to judgment as a matter of law.  Stated differently, "ultimately inconclusive" evidence on essential elements of Grubhub Plaintiffs' claims means that Defendants prevail.  *See, e.g., Ohio v. Am. Express Co.* ("*Amex*"), 138 S. Ct. 2274, 2289 (2018) ("[T]he evidence about whether Amex charges more than its competitors was ultimately

**HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL**

inconclusive.").  Because Defendants' motions for summary judgment do not turn on the admissibility of evidence to which Grubhub Plaintiffs erroneously object, Defendants will respond to their objections at the appropriate time before or at trial.

Copies of the evidence on which Defendants rely have already been submitted as exhibits.  Exhibits SJDX 1–1140 are attached to the Transmittal Declaration of Rosemary Szanyi in Connection with Defendants' Motions for Summary Judgment and Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried, dated June 1, 2020.  Exhibits SJDX 1141–1232 are attached to the Transmittal Declaration of Gary Carney in Connection with Defendants' Oppositions to Motions for Partial Summary Judgment by Target Plaintiffs, by Rule 23(b)(2) Class Plaintiffs, and by 7-Eleven Plaintiffs and The Home Depot, dated September 22, 2020.  Exhibits SJDX 1233–1292 are attached to the Second Transmittal Declaration of Rosemary Szanyi in Connection with Defendants' Motions for Summary Judgment and Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried, dated December 18, 2020.  Exhibits SJDX 1293–1385 are attached to the Transmittal Declaration of Jayme Jonat, dated July 14, 2023.  Exhibits GPX001–223 are attached to the Declaration of James A. Wilson in Support of Grubhub Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment, dated August 11, 2023.

Defendants set forth below their specific responses to Grubhub Plaintiffs' responses and objections to Defendants' statements of undisputed facts and evidence in support thereof.  In an effort to streamline the Court's consideration, Defendants have grouped together paragraphs and identified in summary fashion the essential undisputed facts justifying the relief sought in each motion.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

I.    **Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants' Statement of General Background Facts**

The background section of Defendants' 2023 SMF includes a list of the parties in the case at issue.[7]  (2023 SMF ¶ 2.)  Grubhub Plaintiffs do not meaningfully dispute the accuracy of that list.  To the extent that Grubhub Plaintiffs argue that ████████ is not a plaintiff in this lawsuit, the evidence cited by Grubhub Plaintiffs does not provide sufficient grounds for concluding that ████████ has been withdrawn as a Plaintiff in this lawsuit.  (GH Pl. Resp. to 2023 SMF ¶ 2.)

II.   **Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Undisputed Material Facts Relating to Defendants' Motion for Summary Judgment under *Ohio v. American Express***

Paragraphs 3–86 of Defendants' 2023 SMF support Defendants' Motion for Summary Judgment under *Amex*.[8]  In their responses, Grubhub Plaintiffs fail to identify admissible evidence that creates a material disputed issue of fact sufficient to defeat Defendants' motion.

A.    **Grubhub Plaintiffs Concede That Visa and Mastercard Are Two-Sided Platforms Requiring a Two-Sided Market Analysis of the Challenged Rules (2023 SMF ¶¶ 3–14)**

Paragraphs 3–14 of Defendants' 2023 SMF set out the factual basis to demonstrate that there is no material dispute of fact that Visa and Mastercard must be analyzed as two-sided platforms under *Amex*.  Grubhub Plaintiffs and their expert concede as much.  (*See* Grubhub

---

[7] Section I of Defendants' 2023 SMF incorporates by reference SJDX 1369, Defendants' 2020 SMF, paragraphs 1, 8–66.  Plaintiffs' response to the sections of Defendants' 2020 SMF that are incorporated into Defendants' 2023 SMF are contained in the GH Pl. Resp. to 2020 SMF, to which Defendants respond in Defendants' 2023 Reply Supporting Defendants' 2020 SMF.  Defendants reply separately here only to GH Pl. Resp. to 2023 SMF.

[8] Section II of Defendants' 2023 SMF incorporates by reference SJDX 1369, Defendants' 2020 SMF, paragraphs 70–74, 125–27, 152–60, 170–72, and 175–85.  Plaintiffs' response to the sections of Defendants' 2020 SMF that are incorporated into Defendants' 2023 SMF are contained in the GH Pl. Resp. to 2020 SMF, to which Defendants respond in Defendants' 2023 Reply Supporting Defendants' 2020 SMF.  Defendants reply separately here only to GH Pl. Resp. to 2023 SMF.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Plaintiffs' Counterstatement of Material Facts[9] ¶ 161 ("Mr. Romaine also performs a two-sided economic analysis, identifying a debit transactions market and a credit transactions market, and assessing the nature of competition on both sides of the Visa and Mastercard platforms." (citing SJDX 1130 (Romaine Report) ¶¶ 221, 366–69)).) They quibble around the edges of how Defendants have characterized their expert's definition of a two-sided platform, a two-sided transaction market, or a four-party network model, *see, e.g.*, GH Pl. Resp. to 2023 SMF ¶¶ 7, 9, 11–12, but they fail to raise any material dispute with respect to the underlying conclusion that *Amex* mandates that two-sided platforms require a two-sided analysis.

Grubhub Plaintiffs do not ultimately dispute that a transaction will not occur unless a cardholder decides to use a card at a merchant who accepts the card. Their contention that the Durbin Amendment allows *merchants* to route debit transactions through alternative networks*, see* GH Pl. Resp. to 2023 SMF ¶ 6, does not refute their expert's agreement that "a single transaction on either the Visa or Mastercard platform requires both the merchant and a consumer or a cardholder to participate." (2023 SMF ¶ 6 (citing SDJX 1319, Romaine Dep. at 106:10–14).) Nonetheless, Grubhub Plaintiffs further assert that Visa and Mastercard are not "necessary" to effect a transaction. (GH Pl. Resp. to 2023 SMF ¶ 5.) This is both misleading and irrelevant to Defendants' *Amex* motion, as nothing in the Visa or Mastercard rules prevents entities such as First Data or an issuing bank from forming a new payment network to compete with Visa or Mastercard.

Finally, Grubhub Plaintiffs' unsubstantiated contentions that each network does not compete for card transactions, but rather competes only for "the cartel manager role over their

---

[9] Grubhub Plaintiffs' Counterstatement of Material Facts (Aug. 11, 2023) ("GH Pl. 2023 Counterstatement").

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

respective cartels," GH Pl. Resp. to 2023 SMF ¶ 4, is immaterial to Defendants' motions and unsupported by the record.  For the reasons set out in Defendants' IPO motion papers and Part III of Defendants' 2023 Reply Supporting Defendants' 2020 SMF, there is no support for Grubhub Plaintiffs' conclusory assertions regarding "cartels."  And as set out below in the discussion of paragraphs 55–86 of Defendants' 2023 SMF, *infra* Part II.D, and as held in *Amex*, Visa and Mastercard are indisputably competitors for payment card transactions both with each other and with other card networks.

**B.    Grubhub Plaintiffs Fail to Establish Any Genuine Disputed Issue of Material Fact Showing That the Challenged Rules Caused Supracompetitive Pricing (2023 SMF ¶¶ 15–30)**

In paragraphs 15–30 of Defendants' 2023 SMF, Defendants set out the purported basis for Grubhub Plaintiffs' contentions that the challenged rules caused supracompetitive pricing of Visa and/or Mastercard credit or debit transactions.  Grubhub Plaintiffs fail to credibly dispute these statements inasmuch as they rely on expert opinion, which is insufficient to create a dispute of material fact.[10]

Grubhub Plaintiffs contend that the default interchange, and to a lesser extent the merchant-side fees they allegedly pay, are supracompetitive.  (*See, e.g.*, SJDX 1320, Romaine Rep. ¶¶ 656, 949.)  But they concede that the two-sided prices for Visa and Mastercard credit and debit transactions generally declined during the relevant period.  (*See, e.g.*, GH Pl. Resp. to 2023

---

[10] *See Virgin Atl. Airways Ltd. v. Brit. Airways PLC*, 69 F. Supp. 2d 571, 579 (S.D.N.Y. 1999) ("[A]n expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case."), *aff'd*, 257 F.3d 256 (2d Cir. 2001).  Expert opinion is not a substitute for actual factual evidence at summary judgment.  *See* Minute Order (May 13, 2023), *In re Payment Card Interchange Fee and Merchant Discount Litig.*, No. 1:05-md-01720-MKB-VMS (E.D.N.Y.), ECF No. 8828 (citing *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) and *Virgin Atl. Airways*, 257 F.3d at 264); *see also 1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 118 (2d Cir. 2021) (expert "theoretical and anecdotal" opinions are not a substitute for "empirical analysis" showing "actual anticompetitive change in prices after the restraint was implemented"); *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 113–14 (2d Cir. 2018) (expert testimony "accomplishe[d] little" on summary judgment).

**HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL**

SMF ¶ 26.)  This price decline is consistent with vigorous competition among networks for cardholder use and merchant acceptance.

Grubhub Plaintiffs insist that their expert purports to calculate a "net price" for Visa and Mastercard credit and debit transactions in the actual world based on merchant and cardholder "prices." (*See* GH Pl. Resp. to 2023 SMF ¶¶ 25–27.)  However, Grubhub Plaintiffs do not establish that their expert calculates any such net price in the allegedly competitive but-for world during the relevant period where the challenged rules do not exist.  *See* GH Pl. Resp. to 2023 SMF ¶ 28.

Grubhub Plaintiffs offer no evidence that the total transaction prices for Visa or Mastercard transactions are materially higher than those prices for each other, than those prices for their primary credit network competitors, American Express and Discover, or than those prices for their other debit network competitors such as Star and Pulse.  If anything, evidence throughout the record demonstrates that ████████████████████████████████████ ████████████████████████████████ (*See, e.g.,* ████████████████████████ ██ █ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ █ ████████████████ █████████████████████████████████████████████████████████████ ██ ██ ████████████████████████████████████████████████████t

---

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

The evidence likewise shows that Grubhub Plaintiffs incur higher fees as compared to Visa and Mastercard to accept Buy Now, Pay Later ("BNPL") payment services. (*See* 2023 SMF ¶ 24.)  And, on the other side of the platform, the competition among Visa or Mastercard issuers with American Express or Discover has indisputably increased cardholder rewards and benefits across the industry, which effectively lower cardholder transaction prices. (2020 SMF ¶¶ 170–77.)

Furthermore, Grubhub Plaintiffs' conclusory assertions that Visa and Mastercard pricing are merely designed to benefit the purported "cartels" they manage, *see, e.g.*, GH Pl. Resp. to 2023 SMF ¶¶ 4, 58, 174, 186, 188, do not create material disputes of fact because they are unsupported by the record.  Grubhub Plaintiffs offer no evidence to support the existence of any cartel (*see* Defendants' 2023 Reply Supporting Defendants' 2020 SMF Part III); rather, the undisputed record and testimony from Visa and Mastercard witnesses demonstrate that interchange and network fees are set to incentivize acceptance and issuance in a competitive environment among networks trying to obtain transaction volume.  (2023 SMF ¶¶ 58, 70; 2020 SMF ¶¶ 154, 160.)  All networks seek to drive transaction volume through their pricing, their

---

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

agreements with and incentives to issuers, acquirers and merchants, and the development of cardholder benefits to encourage consumers to use their respective cards.  (2023 SMF ¶ 54; 2020 SMF ¶¶ 47–51.)  Moreover, as the *Amex* Court recognized, networks operate in full awareness of the actions of competing networks.  *See Amex*, 138 S. Ct. at 2288 (describing interplay between American Express pricing on its platform and the pricing of Visa and Mastercard).

Grubhub Plaintiffs identify interchange and network fees passed on to them by their acquirers as the primary components of the alleged "price" they pay on the merchant side of the platform.  (2023 SMF ¶ 25.)  Grubhub Plaintiffs do not dispute that the interchange paid by acquirers to issuers on each transaction is not collected by either Visa or Mastercard.  (*See* GH Pl. Resp. to 2020 SMF ¶¶ 40–41.)  Nor do they dispute that Visa and Mastercard each impose networks fees on both acquirers and issuers that they alone collect.  (*See id*. ¶ 44 (not disputing that network fees are levied on acquirers and issuers nor that they are ultimately collected by the networks).)  Grubhub Plaintiffs do not dispute that interchange revenue is used by issuers to develop and issue cards that have benefits to consumers, such as rewards, and that these rewards in effect cause consumers to pay a negative price for such cards.  (*See* GH Pl. Resp. to 2023 SMF ¶ 72; GH Pl. Resp. to 2020 SMF ¶¶ 164, 170–77.)  Finally, Grubhub Plaintiffs do not dispute that issuers earn revenue from a variety of sources other than interchange, such as finance charges on cards issued to cardholders who revolve balances.  (*See* GH Pl. Resp. to 2020 SMF ¶¶ 254–55 ("Issuers . . . receive revenue from several sources.  Interchange is only one small component of that revenue, with finance-charge revenue being much more significant.").)

Although Grubhub Plaintiffs and their expert purport to calculate a "net price" for Visa and Mastercard credit and debit transactions in the actual world based on merchant and cardholder "prices," they do not calculate any such net prices in the allegedly competitive but-for

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

world during the relevant period where the challenged rules do not exist.  (GH Pl. Resp. to 2023 SMF ¶¶ 25–28.)  Instead, Grubhub Plaintiffs use their experts to offer several different arguments claiming that the net price would be "lower" without the challenged rules.  These expert opinions alone are insufficient to create a triable issue of fact.  *See Virgin Atl. Airways*, 69 F. Supp. 2d 571, 579 (S.D.N.Y. 1999) ("[A]n expert's opinion is not a substitute for a plaintiff's obligation to provide evidence of facts that support the applicability of the expert's opinion to the case."), *aff'd*, 257 F.3d 256 (2d Cir. 2001).

Primarily, Grubhub Plaintiffs assert that because the pass-through rate of interchange through issuers to cardholders is less than 100%, that is evidence of supracompetitive pricing.  (GH Pl. Resp. to 2023 SMF ¶ 15.)  Even if supported by the record, these assertions cannot create a dispute of fact.  Both the total price and marginal price pass-through analyses relied on by the Grubhub Plaintiffs' experts were rejected by either the Second Circuit or Supreme Court in *Amex* because "[a] finding that not every dime of merchant fees is passed along to cardholders says nothing about other expenses that [American Express as an issuer or network] faces, let alone whether its profit margin is abnormally high."  *United States v. Am. Express Co.*, 838 F.3d 179, 205 (2d Cir. 2016).

Absent more direct evidence, Grubhub Plaintiffs ask the Court to draw an inference of supracompetitive prices based on Visa's and Mastercard's purported profitability.  (*See* GH Pl. Resp. to 2023 SMF ¶ 15 ("[T]he transaction price for credit transactions is above the competitive price based on . . . the fact that Visa and Mastercard are highly profitable.").)  First, Grubhub Plaintiffs assert that interchange constitutes the lion's share of the "price" they pay, but since it is undisputed that neither Visa nor Mastercard collect interchange as revenue, *see* GH Pl. Resp. to 2020 SMF ¶ 41, the profitability of the networks is not a reliable proxy for demonstrating that

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

interchange is supracompetitive.  *Cf. US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 50, 61–62 (2d Cir. 2019) (holding that a defendant's revenues and profits are evidence of supracompetitive pricing only if the revenues and profits are derived from the relevant transactions at issue in the case).

Second, it is undisputed that Grubhub Plaintiffs offer no evidence of network profitability in the United States, the relevant geographic market.  Neither Visa nor Mastercard report profitability measures only for the relevant network business in the United States, and Grubhub Plaintiffs do not compare the profitability of Visa or Mastercard's U.S. business with the U.S. profitability of any other payment network.  Instead, Grubhub Plaintiffs present only evidence of Visa's and Mastercard's global profit margins.  (*See* GH Pl. 2023 Counterstatement ¶ 264.)  Grubhub Plaintiffs' reliance on global, rather than U.S.-specific, profitability figures makes the connection between profits and the challenged conduct even more attenuated.  Grubhub Plaintiffs cannot legitimately ask the Court to rely on non-U.S. profitability figures for use in this U.S. case.

Further, Grubhub Plaintiffs point to aggregate profit evidence that makes no distinction between credit and debit.  But if Grubhub Plaintiffs want to use profits as a proxy for supracompetitive credit transaction pricing or supracompetitive debit transaction pricing, it is incumbent upon them to break out such profit data first for it to have any relevance.  They have not done so.

Grubhub Plaintiffs had ample opportunity to develop profitability evidence through their own analyses, calculations or comparisons of relevant profit measures, but either failed to do so or purposefully avoided evidence unhelpful to them.  (*See* 2023 SMF ¶ 15 (citing Romaine Rep. ¶ 537).)  For example, Grubhub Plaintiffs do not assess the U.S. profitability of either Visa or

12

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

Mastercard through reference to any other of the substantial costs each incurs in developing,

maintaining and investing in their networks, such as for ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ ███████████████████████████

████████████████████████████████ ████████████████████

████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████

████████████████████

█ ████████████████████████████████████████████████████

█ ████████████████████████████████████████████████████

█ ████████████████████████████████████████████████

█ ████████████████████████████████████████████████████████

████████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Grubhub Plaintiffs' other arguments cannot support a factual dispute over whether prices are supracompetitive.  They fundamentally claim that competition would be greater and prices would be lower if the challenged Visa and Mastercard rules were eliminated and banks were free to compete for merchant acceptance directly.  (*See, e.g.*, GH Pl. Resp. to 2020 SMF ¶¶ 26, 155–59.)  Putting aside that this alleged impact on "intra-network" competition has no antitrust significance in a case about "inter-network" competition, Grubhub Plaintiffs just assume that prices on the merchant side would decrease without any credible analysis.  Grubhub Plaintiffs offer no facts to suggest that in the but-for world Visa and Mastercard would not maintain a role setting prices or interchange while allowing issuers to establish acceptance agreements using the networks' infrastructure, acceptance marks, and other services.  This only reveals that Grubhub Plaintiffs cannot assert any factual basis showing what merchant prices would be, or whether they would change at all.

### C.    There Is No Dispute That Payment Card Transaction Output Has Grown Enormously During the Damages Period (2023 SMF ¶¶ 31–54)

Paragraphs 31–54 of Defendants' 2023 SMF detail the substantial growth of credit and debit card transactions and dollar volume during the relevant period.

The significant growth of the market for payment card transactions during the damages period of this case demonstrates that the challenged rules have not curbed the output of credit or debit transactions.  From 2004 to 2021, the total value of purchase transactions for credit cards in the United States increased from around $1.6 trillion to $4.6 trillion.  (2023 SMF ¶ 34.)  The number of credit card purchase transactions in the United States increased from around 19 billion transactions in 2004 to over 48 billion transactions in 2021.  (*Id.* ¶ 36.)  From 2004 to 2021, the total value of purchase transactions for debit cards in the United States increased from over $700

14

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

billion to over \$4.5 trillion.  (*Id.* ¶ 35.)  The number of debit card purchase transactions in the United States increased from over 20 billion in 2004 to over 98 billion in 2021.  (*Id.* ¶ 37.)

Additionally, payment card transaction output for both Visa and Mastercard in the United States increased over the same time period, by both purchase volume and number of transactions. Visa credit card transaction output increased from more than \$600 billion in purchase volume and more than 7 billion transactions in 2004 to \$1.9 trillion in purchase volume and 23 billion transactions in 2020.  (*Id.* ¶ 40.)  Visa debit card transactions increased from approximately \$367 billion in purchase volume and 9.37 billion purchase transactions in 2004 to approximately \$2.8 trillion in purchase volume and approximately 57 billion purchase transactions in 2021.  (*Id.* ¶¶ 41–42.)  Mastercard credit card transactions increased from approximately \$434 billion in purchase volume and 5.2 billion in purchase transactions in 2004 to \$1.08 trillion in purchase volume and 11.8 billion purchase transactions in 2021.  (*Id.* ¶¶ 43–44.)  Mastercard debit card transactions increased from approximately \$93 billion in purchase volume and 2.2 billion purchase transactions in 2004 to \$1.09 trillion in purchase volume and 23 billion purchase transactions in 2021.  (*Id.* ¶¶ 45–46.)

Grubhub Plaintiffs do not create a material dispute of fact by arguing that if the alleged restraints did not exist in the credit or debit transactions markets, there would be even greater growth in a ***different*** relevant market—one for all retail transactions—in the but-for world.  *See, e.g.*, GH Pl. Resp. to 2023 SMF ¶ 32.  Grubhub Plaintiffs do not offer any data as to what that overall output would be or why it would be material when the alleged relevant market is credit and debit transactions.  Grubhub Plaintiffs contend, without more, that lower costs of acceptance would lead to lower retail prices and greater output, *see, e.g.*, 2023 SMF ¶ 51, but never account for, among other things:  (1) cardholder insistence that would cause merchants to maintain full

15

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

acceptance of all cards at current competitive prices (*see* 2020 SMF ¶¶ 415–16); (2) volume declines for the cards of small issuers that merchants would drop if these issuers are unable to negotiate with millions of merchants (2023 SMF ¶ 53); or (3) Visa's and Mastercard's competitive reactions in a but-for world that would lead to merchant pricing for Visa and Mastercard card acceptance to remain at current competitive levels (*see, e.g.*, 2023 SMF ¶ 50). All of these possible scenarios in the but-for world could lead to retail prices remaining at competitive levels or overall output to decrease, not increase.

In short, Grubhub Plaintiffs have done nothing to disturb the *Amex* Court's conclusion that "[t]he output of credit-card transactions grew dramatically from 2008 to 2013, increasing 30%," *Amex*, 138 S. Ct. at 2288, or the undisputed record of growth of Visa and Mastercard credit and debit transactions in the years before and after.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

D.   **Grubhub Plaintiffs Do Not Materially Dispute That the Challenged Rules Have Not Stifled Either Network Competition or Innovation (2023 SMF ¶¶ 55–86)**

In paragraphs 55–86 of Defendants' 2023 SMF, Defendants set out undisputed evidence that Visa and Mastercard compete vigorously against each other for issuance, acceptance, and transaction volume, as well as against other card networks and payment systems.  (*See* 2023 SMF ¶¶ 55–70 (listing examples of network competition, including quotes from Grubhub Plaintiffs' experts).)  The nature of this strong competition was recognized by the *Amex* Court. *See Amex*, 138 S. Ct. at 2289 ("[F]ierce competition between networks has constrained Amex's ability to raise [merchant fees] and has, at times, forced Amex to lower them").  Defendants have set out numerous examples of competition between Visa and Mastercard.  (*See, e.g.*, 2023 SMF ¶¶ 60–64 (competing for ███████████████), ¶¶ 65–67 (competing for ████  ███████).)

Grubhub Plaintiffs do not dispute the existence of strong network competition; they just do not like its effects on the merchant side of the platform.  Grubhub Plaintiffs characterize this continual network competition for issuer business as "distorted," because it reflects the networks competing through financial incentives provided on one side of the platform that may negatively impact acquirers and merchants on the other side of the platform.  (*See* GH Pl. Resp. to 2023 SMF ¶ 69–70.)  Yet, this is the nature of two-sided platform competitive activity.  *See Amex*, 138 S. Ct. at 2285–86 ("[T]he fact that two-sided platforms charge one side a price that is below or above cost reflects differences in the two sides' demand elasticity, not market power or anticompetitive pricing"); *see also* 2020 SMF ¶¶ 47, 70–72 (citing evidence and testimony that Visa and Mastercard compete with each other by setting interchange and network fees on both sides of the platform at a level that maximizes the number of transactions that run on their networks).

17

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

The network competition over many decades had led to numerous innovations in the payments space, improvements that the Grubhub Plaintiffs do not and cannot contest.  (*See, e.g.*, GH Pl. Resp. to 2023 SMF ¶¶ 71–75 (rewards cards), ¶ 78 (contactless payment methods), ¶ 79 (tokenization and fraud monitoring technologies), ¶¶ 80–81 (digital wallets), and ¶¶ 85–86 (BNPL platforms).)

Grubhub Plaintiffs try to sidestep these big-picture innovations by arguing that certain innovations could have been more favorable to merchants or cardholders, rolled out faster or slower, or that Visa or Mastercard were not first to market.  (*See, e.g.*, GH Pl. Resp. to 2023 SMF ¶¶ 79–80, 84.)  But that quibbling does not rebut the undisputed dramatic changes and innovations in the payments space with which both Visa and Mastercard were intimately involved, all while the challenged rules were in place.

For example, Grubhub Plaintiffs point to the networks' respective dealings with ▮▮▮▮ as evidence that Visa and Mastercard have restrained competition and innovation in the payments industry.  (GH Pl. Resp. to 2023 SMF ¶ 81.)  But Visa and Mastercard are entitled to engage in commercial dealings with entities that leverage each network.  There is no dispute that ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see, e.g.*, GH Pl. 2023 Counterstatement ¶¶ 431–32), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (*See, e.g.*, 2020 SMF ¶ 582 (▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ); GH Pl. Resp. to 2020 SMF ¶ 582 (▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (2020 SMF ¶¶ 579–86.)  Subsequently, ▮▮▮ has thrived, and Grubhub Plaintiffs offer no evidence to the contrary.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

(*See, e.g.*, GH Pl. Resp. to 2023 SMF ¶ 81.)  Further, Grubhub Plaintiffs ignore that ██ ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ .  (2020 SMF ¶¶ 571, 580–85.)

In short, Grubhub Plaintiffs do not offer any evidence to counter the Supreme Court's finding of increased output and improved quality in the payments ecosystem during the same time period.  *See Amex*, 138 S. Ct. at 2289.  The challenged rules did nothing to squelch competition or innovation.

## III.  Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants' Undisputed Material Facts Relating to Defendants' Motion for Summary Judgment on Post-IPO Conspiracy Claims

Paragraph 88 of Defendants' 2023 SMF supports Defendants' Motion for Summary Judgment on Grubhub Plaintiffs' Post-IPO Conspiracy Claims.[20]  In their responses, Grubhub Plaintiffs fail to identify admissible evidence that creates a material disputed issue of fact sufficient to defeat Defendants' motion.

Paragraph 88 of Defendants' 2023 SMF describes Grubhub Plaintiffs' claims and theories regarding the alleged "conspiracies" among Visa and banks and Mastercard and banks to set Visa's and Mastercard's interchange fees and network rules.  This statement of fact cannot be genuinely disputed; it simply conveys what Grubhub Plaintiffs have alleged in their interrogatory responses.  In response to Paragraph 88, Grubhub Plaintiffs quibble with how

---

[20] Section III of Defendants' 2023 SMF incorporates by reference SJDX1369, Defendants' 2020 SMF, paragraphs 185–265.  Plaintiffs' response to the sections of Defendants' 2023 SMF that incorporate Defendants' 2020 SMF are contained in the GH Pl. Resp. to 2020 SMF, to which Defendants respond in Defendants' 2023 Reply Supporting Defendants' 2020 Statement of Material Facts.  Defendants reply separately here only to GH Pl. Resp. to 2023 SMF.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Defendants have quoted the various Grubhub Plaintiffs' interrogatory responses. But Grubhub

Plaintiffs do not dispute that they, like the Direct Action Plaintiffs, contend that communications

between the networks and their customers support their theories of post-IPO conspiracies among

Visa and banks and Mastercard and banks to set Visa's and Mastercard's interchange fees and

network rules. As Defendants have shown, Defendants' communications with their bank

customers do not support a finding of conspiracy under Section 1 of the Sherman Act.[21]

## IV.  Defendants' Reply to Grubhub Plaintiffs' Responses and Objections to Defendants' Argument That Plaintiffs' Claims Are Barred by the *Illinois Brick* Doctrine

Paragraphs 89–125 of Defendants' 2023 SMF support Defendants' Motion for Summary

Judgment under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*").[22] In their

responses, Grubhub Plaintiffs fail to identify admissible evidence that creates a material disputed

issue of fact sufficient to defeat Defendants' motion.

### A.  Grubhub Plaintiffs' Response Fails to Controvert the Fact that Acquirers Serve as Intermediaries between Issuers and Merchants, and Acquirers Pay Interchange to Issuing Banks and Network Fees to Visa and Mastercard (SMF ¶¶ 89–125)

Paragraphs 89–125 of Defendants' 2023 SMF of Material Fact demonstrate that

acquirers, not merchants, pay interchange and network fees, and that acquirers pass on some or

all of those costs to merchants, pursuant to the terms of negotiated agreements between

merchants and their acquirers and/or processors. Grubhub Plaintiffs' response, notwithstanding

---

[21] Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Pls.' Post-IPO Conspiracy Claims (June 1, 2020), ECF No. 8273, at pp. 14–16; Defs.' Reply Mem. of Law in Supp. of Their Mot. for Summ. J. on Pls.' Post-IPO Conspiracy Claims (Dec. 18, 2020), ECF No. 8276, at pp. 8–9; Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Pls.' Post-IPO Conspiracy Claims (July 14, 2023) at pp. 2–3.

[22] Section IV of Defendants' Statement of Material Fact incorporates by reference SJDX1369, Defendants' 2020 SMF, paragraphs 275–78, 283–86, and 287–95. Plaintiffs' response to the sections of Defendants' 2023 SMF that incorporate Defendants' 2020 SMF are contained in the Grubhub Plaintiffs' Responses to Defendants' Incorporation of Certain Paragraphs of Defendants' 2020 Statement of Material Facts, to which Defendants respond in Defendants' 2023 Reply Supporting Defendants' 2020 SMF. Defendants reply separately here only to Grubhub Plaintiffs' "Response to Defendants' Rule 56.1 Statement."

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

its length, does not challenge the undisputed payment mechanics of payment card transactions, which are documented in Grubhub Plaintiffs' agreements with their acquirers and payment processors.  (*See* GH Pl. Resp. to 2023 SMF ¶ 90 (citing to Grubhub Plaintiffs' acquiring and processing agreements).)

Agreements between acquirers/processors and Grubhub Plaintiffs reflect that interchange and network fees are imposed on the acquirers and then, as in *Paycom Billing Servs., Inc. v. MasterCard Int'l Inc.,* 467 F.3d 283 (2d Cir. 2006), "passed on" in whole or in part to merchants based upon the negotiated terms of merchant agreements with their acquirers and processors. (*See, e.g.*, GH Pl. Resp. to 2023 SMF¶¶ 91 ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██ ██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

Although Grubhub Plaintiffs concede the undisputed evidence that interchange and network fees are passed on to Grubhub Plaintiffs from their acquirers, as they must, they nonetheless make the contrary statement that each Plaintiff "pays interchange fees directly to issuers, … and pays network fees directly to Visa and Mastercard."  (GH Pl. Resp. to 2023 SMF ¶¶ 120–25.)  This claim is not supported by any admissible evidence of direct payments.  Instead,

---

██ ███████████████████████████████████████
██ ███████████████████████████████████████
███████████████████████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Grubhub Plaintiffs rely on semantics and the titles of documents as purported evidence that merchants pay interchange. (*See id.* ¶ 91.) Grubhub Plaintiffs' claim cannot be squared with their concession that "[i]ssuers deduct interchange fees from the transaction funds before remitting the remaining funds on to the acquirer and the merchant." (*Id.*) Grubhub Plaintiffs additionally cite to testimonial evidence that the merchant ██████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ Other testimonial evidence cited by Grubhub Plaintiffs is either incomplete or misleading. (Fed. R. Evid. 106; *see, e.g.*, GH Pl. Resp. to 2023 SMF ¶ 91 (citing testimonial evidence that ████████████████████████████████████████████████████████████

██████ as supportive of the claim that merchants pay interchange to issuing banks).) The undisputed evidence, however, shows that no Plaintiff pays interchange *directly* to any issuing bank, nor network fees directly to Visa or Mastercard. (*See* 2023 SMF ¶¶ 91, 98–103.)

Indeed, Grubhub Plaintiffs' preference for "cost-plus" or "interchange-plus agreements," which Grubhub Plaintiffs' concede provide for the complete or near complete pass-through of fees, confirms that acquirers pay interchange. (*See, e.g.*, GH Pl. Resp. to 2023 SMF ¶ 107 (citing

---

[25] ████████████████████████████████████████████████████████

██████████████████████████

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**



Further, evidence that acquirers are not required to and often do

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

not pass on the full cost of interchange fees corroborates Defendants' argument that acquirers, not merchants pay interchange and network fees. (2023 SMF ¶ 108–15; *see, e.g.,* █████████

████████████ ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████

Grubhub Plaintiffs attempt to distract from the fact that they do not directly pay interchange and network fees by submitting hundreds of pages of conclusory statements, often from merchant witnesses. But these assertions do not contravene the material facts at the core of Defendants' *Illinois Brick* argument. Grubhub Plaintiffs' citations to merchants' and Defendants' colloquial deposition testimony and internal documents regarding who "pays" interchange and network fees, (*see, e.g.,* GH Pl. Resp. to 2023 SMF ¶ 91), do not alter the clear and undisputed terms of Grubhub Plaintiffs' agreements with their acquirers and processors. (2023 SMF ¶¶ 116–25; s*ee, e.g.,* ████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

████████████████████████████████████████
██████████████████████ ██████████████████
██████████████████████████ ██████████████
██████████████████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

███████████████ █████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████ Moreover, Grubhub Plaintiffs cite to no evidence to support their claim that "[i]t does not logically follow that, because the Grubhub Plaintiffs have agreements with processors, that they do not pay interchange fees to issuing banks and network fees to Visa and Mastercard." (GH Pl. Resp. to 2023 SMF ¶ 117.)

### B. Grubhub Plaintiffs' Response Fails to Raise a Disputed Issue of Material Fact Regarding Purported Exceptions to the *Illinois Brick* Direct Purchaser Rule (SMF ¶¶ 116–25)

Paragraphs 116–25 of Defendants' Statement of Material Fact establish that Grubhub Plaintiffs have produced no evidence of any conspiracy involving Plaintiffs' acquirers or processors to fix any amounts paid by the Grubhub Plaintiffs. In both their Responses to Defendants' Statement of Material Facts and their Counterstatement of Material Facts, Grubhub Plaintiffs have pointed to no evidence of any conspiracy involving Grubhub Plaintiffs' acquirers or processors to fix any amounts paid by Plaintiffs. Grubhub Plaintiffs have also not named any purported co-conspirator acquirers or processors as defendants, which is fatal to any potential co-conspirator argument. *See In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982).

Grubhub Plaintiffs have also failed to provide any evidence that any Grubhub Plaintiff

---

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

has entered into a pre-existing "cost-plus" contract to sell a specified quantity to the indirect payor, or that a Grubhub Plaintiff is owned or controlled by an acquirer.  (*Cf.* GH Pl. Resp. to 2023 SMF ¶¶ 116–25.)  Instead, Grubhub Plaintiffs concede that the payment of interchange is set forth in Grubhub Plaintiffs' agreements with their acquirers/processors.  (*See, e.g.*, GH Pl. Resp. to 2023 SMF ¶ 16 (citing

## V.  Mastercard's Reply to Grubhub Plaintiffs' Responses and Objections to Mastercard's Undisputed Material Facts Relating to Lack of Market Power

Paragraphs 126 through 189 of Defendants' 2023 SMF support Mastercard's Motion for Summary Judgment Based on Mastercard's Lack of Market Power.[36]  In their responses, Grubhub Plaintiffs fail to identify admissible evidence that creates a material disputed issue of fact sufficient to defeat Mastercard's motion.  To the extent Grubhub Plaintiffs repeat the same or similar arguments that Direct Action Plaintiffs already made in their responses to Defendants' 2020 SMF, Mastercard incorporates its prior replies addressing those arguments in Defendants' 2020 Reply.

### A.  Mastercard's Market Shares Have Been Low and Declining for Well over a Decade (2023 SMF ¶¶ 128–133)

It is undisputed that Mastercard's market shares in the relevant credit and debit markets have been low and declining for well over a decade, trailing far behind Visa's.

---

[36] Section V of Defendants' 2023 SMF incorporates by reference SJDX1369, Defendants' 2020 SMF paragraphs 404–629.  Grubhub Plaintiffs' responses to the sections of Defendants' 2020 SMF that are incorporated into Defendants' 2023 SMF are contained in the GH Pl. Resp. to 2020 SMF, to which Defendants respond in Defendants' 2023 Reply Supporting Defendants' 2020 Statement.  Defendants reply separately here only to GH Pl. Resp. to 2023 SMF.

26

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

From 2004 through 2020, Mastercard's market share in credit fell from 30.5% to 23.2%, remaining below 30% since 2005 and below 25% since 2011.  (*See* 2023 SMF ¶ 128.)  During this time period, Mastercard has consistently faced a much larger, growing competitor:  Visa's share rose from 42.9% to 53.7%, remaining above 40% since 2004, and above 50% since 2016.  (*See* 2023 SMF ¶ 129.)  Grubhub Plaintiffs do not dispute these undeniable market trends.  (*See* GH Pl. Resp. to 2023 SMF ¶¶ 128–129.)  Nor can they credibly dispute that American Express's credit share has for many years matched or exceeded Mastercard's:  from 2010 through 2016, American Express's share in credit was comparable to or greater than Mastercard's.  (*See* 2023 SMF ¶ 130.)  In 2010—the one year that Grubhub Plaintiffs claim that Mastercard's share was "greater" than American Express's—American Express's share was 25.5%, on par with Mastercard's share at 25.6%.  (*See* 2023 SMF ¶ 128.)

In debit, similarly, Mastercard's market share has remained consistently low.  From 2006 through 2011, Mastercard's share in debit remained between 20% and 23%.  (*See* 2023 SMF ¶ 131.)  From 2012 through 2020—the period following the implementation of the Durbin Amendment—Mastercard's share remained between 22% and 24%.  (*See* 2023 SMF ¶ 131.)  As in credit, Mastercard has trailed behind Visa:  from 2006 through 2020, Visa's share in debit remained above 55%.  (*See* 2023 SMF ¶ 132.)  Grubhub Plaintiffs do not dispute these market facts either, other than to offer an alternative calculation of market share that shows Mastercard having an even *lower* share in debit from 2006 through 2011.  (*See* GH Pl. Resp. to 2023 SMF ¶¶ 131–132.)

Rather than dispute these facts, Grubhub Plaintiffs repeat their unsupported (and irrelevant) assertion that, in a but-for world without the challenged rules, output in the relevant markets would have been even greater.  (*See* GH Pl. Resp. to 2023 SMF ¶¶ 128–129, 131–132.)

This assertion—based only on speculative expert testimony—does not alter the fact that Mastercard's shares in the credit and debit markets have remained consistently low throughout the relevant time period, and is no substitute for the empirical evidence needed to show anticompetitive effects resulting from an exercise of market power. *See 1-800 Contacts, Inc.* v. *FTC*, 1 F.4th 102, 118 (2d Cir. 2021). Grubhub Plaintiffs effectively concede that they must rely on "factors" other than market share, including speculative output theories, to argue that Mastercard has market power. (GH Pl. Resp. to 2023 SMF ¶ 133.) They do not dispute, and their economic expert admits, that Mastercard's market shares in credit and debit are insufficient on their own to support an inference of market power. (*See* 2023 SMF ¶ 133.)

Mastercard incorporates by reference Part V.C of Defendants' 2020 Reply.

**B.    Transaction Volumes in the Credit and Debit Markets Have Grown Consistently (2023 SMF ¶¶ 134–142)**

There is no dispute that transaction volumes on the Mastercard network, and in the credit and debit markets more broadly, have continued to grow throughout the relevant time period. (*See* 2023 SMF ¶¶ 134–142.) From 2004 through 2020, Mastercard's credit card transaction volume grew approximately 93%, from $434 billion to $837 billion. (*See* 2023 SMF ¶ 136.) During that time period, the number of Mastercard credit transactions per year grew approximately 83%, from 5.2 billion transactions to 9.5 billion transactions. (*See* 2023 SMF ¶ 138.) The trend is similar in debit. From 2006 through 2020, Mastercard's general purpose debit card transaction volume increased as a share of total consumer spending from 3.0% to 8.5%. (*See* 2023 SMF ¶ 140.)

Grubhub Plaintiffs do not materially dispute these facts. With respect to debit transaction volumes, Grubhub Plaintiffs repeat the Direct Action Plaintiffs' objection that those volumes

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

allegedly include transactions that are authorized, cleared, and settled over systems shared with regional networks like Star, NYCE, and Pulse.  (*See* GH Pl. Resp. to 2023 SMF ¶ 140; *see* DAPs Resp. ¶ 481.)  As explained in Part V.D of Defendants' 2020 Reply, those objections are immaterial:  Grubhub Plaintiffs, like the Direct Action Plaintiffs, do not dispute that Mastercard's debit transaction volumes have increased substantially over the relevant time period.  (*See* GH Pl. Resp. to 2023 SMF ¶ 140; DAPs Resp. ¶¶ 434–435.)  Nor do they dispute that there has been significant growth in output in the debit market overall—regardless of how that output is allocated among Mastercard and the regional networks.  Moreover, to the extent that Mastercard's reported transaction volumes include regional network transactions, that would mean that Mastercard's market share in debit is even *smaller* than reported.

Faced with this undisputed growth in the relevant markets, Grubhub Plaintiffs, like the Direct Action Plaintiffs, again speculate that output would have been greater in a but-for world without the challenged rules, because "merchants will pass the savings from lower payment acceptance costs on to consumers in the form of lower prices or improved quality or service." (GH Pl. Resp. to 2023 SMF ¶¶ 141–142, *see* GH Pl. Resp. to 2023 SMF ¶¶ 134–139.)  As stated, such speculation cannot substitute for the empirical evidence needed to show anticompetitive effects resulting from market power.  *See 1-800 Contacts, Inc*., 1 F.4th at 118.  Grubhub Plaintiffs' economic expert admits that he has not attempted to calculate what output would be in the but-for world.  (*See* 2023 SMF ¶ 142.)  He also admits that he did not calculate the alleged rate of pass-through of interchange fee costs from merchants to customers in the but-for world. (*See* 2023 SMF ¶ 50.)  In addition, Grubhub Plaintiffs' witnesses were unaware of having passed on to their customers any savings resulting from decreased debit interchange rates following the implementation of the Durbin Amendment.  (*See* █████████████████████████

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

As for Grubhub Plaintiffs' suggestion that Mastercard has "restricted output" with respect to small-ticket transactions (*see* GH Pl. Resp. to 2023 SMF ¶ 141), the record demonstrates otherwise:  The average transaction size for Mastercard consumer credit cards has fallen since 2004, showing that credit cards have become a more widespread method of payment for small transactions.  (*See* SJDX 1323, McCrary Rebuttal Rep. ¶ 22.)  And in 2022, Mastercard decreased default interchange rates for small-ticket transactions (*i.e.*, transactions with a dollar value of less than $5) in order to further increase acceptance.  (*See* SJDX 1322, McCrary Rep. ¶ 60.)

Mastercard incorporates by reference Part V.D of Defendants' 2020 Reply.

## C.  There Is No Evidence That Mastercard Prices Are Supracompetitive (2023 SMF ¶¶ 143–152)

The undisputed record establishes that Mastercard sets default interchange fees and network fees in competition with Visa and other networks, with the goal of maximizing transaction volume.  (*See* 2023 SMF ¶ 141.)  As a result, the two-sided price for Mastercard credit transactions has declined during the relevant time period, and Mastercard network fees have remained largely flat.  (*See* 2023 SMF ¶¶ 143–144.)  The undisputed record also shows that Grubhub Plaintiffs have negotiated for reduced costs of acceptance in connection with their co-brand deals involving Mastercard.  (*See* 2023 SMF ¶¶ 148–152.)

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

Grubhub Plaintiffs do not dispute that the two-sided price for Mastercard credit transactions has fallen.  On the contrary, their expert's own calculations of that two-sided price show a substantial decrease between 2004 and 2020.  (*See* 2023 SMF ¶ 144; GH Pl. Resp. to 2023 SMF ¶ 144.)  And while Grubhub Plaintiffs assert that "the price to the merchants," including merchant-side network fees, has increased (GH Pl. Resp. to 2023 SMF ¶¶ 143–144), the Second Circuit has held that evidence of price increases on just the merchant side of the two-sided platform does not constitute evidence of market power.  *See United States* v. *American Express Co*., 838 F.3d 179, 201–02 (2d Cir. 2016) ("*American Express*").

Grubhub Plaintiffs likewise do not dispute that merchants are able to negotiate for reduced costs of acceptance through co-brand deals.  In particular, Grubhub Plaintiffs ▉▉▉ ▉ have both negotiated co-brand deals that include custom interchange rates and other interchange concessions.  (*See* 2023 SMF ¶¶ 148–152.)  While Grubhub Plaintiffs contend that these co-brand deals do not evidence network competition for merchants (*see* GH Pl. Resp. to 2023 SMF ¶¶ 148–150, 152), they do not dispute the existence of these deals, nor that they result in lower costs of acceptance for those merchants.  (*See* GH Pl. Resp. to 2023 SMF ¶¶ 149–150, 152.)

Mastercard incorporates by reference Parts V.F and V.G of Defendants' 2020 Reply.

### D.   Mastercard Faces Increased Competition and Innovates to Improve Quality (2023 SMF ¶¶ 153–173)

The undisputed record shows that Mastercard faces increased competition from new entrants into the payments space, and has continuously innovated in order to remain competitive and improve the quality of its network.  (*See* 2023 SMF ¶¶ 153–173.)

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

While Grubhub Plaintiffs dispute the extent to which Mastercard has contributed to various market innovations (*see* GH Pl. Resp. to 2023 SMF ¶¶ 153, 170–173), they do not dispute that those innovations have happened while the challenged rules were in place.  On the contrary, their expert acknowledges that innovations in areas such as digital wallets and contactless payments occurred during that time period.  (*See* 2023 SMF ¶ 153; GH Pl. Resp. to 2023 SMF ¶ 153.)  Grubhub Plaintiffs rehash the Direct Action Plaintiffs' allegations that Mastercard "stood in the way of innovation" from new entrants such as ▮▮▮▮▮▮▮▮▮▮ (*see* GH Pl. Resp. to 2023 SMF ¶ 153), but the record shows that both of those firms have been highly successful and consistently bring innovations to the payments space.  (*See* 2020 SMF ¶ 184, 586; 2023 SMF ¶ 81.)  Grubhub Plaintiffs also make reference to Mastercard's recent consent order with the Federal Trade Commission, which resolved allegations relating to whether Mastercard's tokenization technology complied with the Durbin Amendment's routing requirements.  (*See* GH Pl. Resp. to 2023 SMF ¶ 153.)  But that consent order—which contained no admission of wrongdoing, nor any findings that Mastercard suppressed innovation or engaged in any other anticompetitive conduct—does not create a genuine dispute as to the existence of competition or innovation in the relevant markets.  (*See* GPX 206, Complaint, *In re Mastercard Inc*., No. C-4795 (May 30, 2023); GPX 207, Decision, *In re Mastercard Inc*., No. C-4795 (May 30, 2023).)

Similarly, Grubhub Plaintiffs do not dispute that they are among the many merchants who have taken advantage of innovations in the payments industry.  In particular, while Grubhub Plaintiffs dispute whether new entrants in the BNPL and digital payments space compete in the same market as Visa and Mastercard (*see* GH Pl. Resp. to 2023 SMF ¶¶ 154–168), they do not dispute the existence of those new entrants, nor that many merchants accept those alternative payment methods.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ all accept BNPL providers such as Klarna,

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

Affirm, and Afterpay, while BJ's and Grubhub accept digital payment methods such as PayPal and Venmo.  (*See* 2023 SMF ¶¶ 154–158, 165–168; GH Pl. Resp. to 2023 SMF ¶¶ 154–158, 165–168.)

Grubhub Plaintiffs also do not materially dispute that many merchants accept BNPL options ███████████████████████████████████ ████████████████████. (*See* 2023 SMF ¶¶ 159–160.)  Grubhub Plaintiffs assert, citing predominantly Visa documents, that this cost comparison is "inaccurate" because merchants that do not contract with BNPL providers are "required under Visa['s] and Mastercard's Honor All Cards rules to accept high priced virtual cards."  (GH Pl. Resp. to 2023 SMF ¶¶ 159–164; *see* GH Pl. Resp. to 2023 SMF ¶ 24.)  The one Mastercard document that Grubhub Plaintiffs cite in support of this allegation (*see* GH Pl. Resp. to 2023 SMF ¶ 24) states only that ████████ ████████████████████████████████████—another example of Mastercard's recent innovation—███████████████████████████████████ ████████  (*See* GPX 50, MC_MDL_28387007 at -009.)  Grubhub Plaintiffs do not identify any merchants, or attempt to quantify the number of merchants, who have been "required" to accept allegedly higher prices in connection with virtual cards.  And their expert admits that he has not attempted to calculate what percentage of BNPL transactions are conducted using virtual cards. (*See* SJDX 1319, Romaine Dep. at 271:14–24.)

Mastercard incorporates by reference Part V.H of Defendants' 2020 Reply.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

E.   **Merchants Accept Mastercard Because It Is in Their Economic Interest to Do So (2023 SMF ¶¶ 174–183)**

There is no genuine dispute that merchants choose to accept Mastercard because it is in their economic interest to do so.  (*See* 2023 SMF ¶¶ 174–183.)  Grubhub Plaintiffs have so testified.  (*See* 2023 SMF ¶¶ 175–182.)

Grubhub Plaintiffs admit that "among the reasons merchants accept Mastercard payment cards is consumer demand and the prospect of losing sales to competitors that do accept Mastercard payment cards."  (GH Pl. Resp. to 2023 SMF ¶¶ 176–178, 180–183.)  While Grubhub Plaintiffs contend that this is the result of allegedly "competitive restraints" (GH Pl. Resp. to 2023 SMF ¶¶ 176–178, 180–183), this assertion does not create a material disputed issue of fact as to Mastercard's lack of market power:  The Second Circuit has ruled that cardholder insistence cannot support a finding of market power, *see American Express*, 838 F.3d at 202–04, and Judge Garaufis, applying the Second Circuit's ruling, found that the prospect of merchants losing business by dropping acceptance is simply "cardholder insistence by another name."  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 346–47 (E.D.N.Y. 2019).

Mastercard incorporates by reference Part V.E of Defendants' 2020 Reply.

F.   **The Challenged Rules Date Back to Mastercard's Inception and Other Payment Card Networks Maintain Similar Rules (2023 SMF ¶¶ 184–185)**

There is no dispute that Mastercard established its Honor All Cards rule and other challenged rules at or near its inception, and that Mastercard's competitors maintain similar rules.  (*See* 2023 SMF ¶¶ 184–185.)  While Grubhub Plaintiffs attempt to caveat their expert's testimony as to the implications of these facts, they do not dispute them.  (*See* GH Pl. Resp. to 2023 SMF ¶¶ 184–185.)

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**
**TO BE FILED UNDER SEAL**

Mastercard incorporates by reference Parts V.A and V.B of Defendants' 2020 Reply.

**G.     Grubhub Plaintiffs Do Not Allege a Conspiracy Among the Networks (2023 SMF ¶¶ 186–189)**

Absent an allegation of a conspiracy or other concerted action among the networks, it is inappropriate to aggregate Mastercard's market share with Visa's for the purpose of determining market power. *See Bookhouse of Stuyvesant Plaza, Inc.* v. *Amazon.com*, 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013). Grubhub Plaintiffs do not dispute that there is no allegation in this case that Visa and Mastercard conspired in enacting the challenged network rules. (*See* GH Pl. Resp. to 2023 SMF ¶ 187.)

Dated:  September 8, 2023
        New York, New York

Respectfully submitted,

**HOLWELL SHUSTER & GOLDBERG LLP**

/s/ *Michael S. Shuster*
Michael S. Shuster
Demian A. Ordway
Blair E. Kaminsky
Jayme Jonat
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
mshuster@hsgllp.com
dordway@hsgllp.com
bkaminsky@hsgllp.com
jjonat@hsgllp.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Anne P. Davis
Matthew A. Eisenstein
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com

Robert J. Vizas
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
(415) 471-3100
robert.vizas@arnoldporter.com

*Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ *Gary R. Carney*
Brette Tannenbaum
Gary R. Carney
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
btannenbaum@paulweiss.com
gcarney@paulweiss.com

Kenneth A. Gallo
Donna M. Ioffredo
2001 K Street, N.W.
Washington, DC 20006-1047
(202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2023, I caused a true and correct copy of the foregoing to be served on all counsel in the above-referenced action via FTP, in accordance with the parties' prior agreement.

Dated: September 8, 2023

/s/ *Gary R. Carney*
Gary R. Carney