UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Grubhub Holdings Inc., et al.* v. *Visa Inc., et al.*, No. 19-cv-06555 (E.D.N.Y.) (MKB) (VMS). | No. 1:05-md-1720 (MKB) (VMS)<br><br>ORAL ARGUMENT REQUESTED |

**MASTERCARD'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
<u>BASED ON MASTERCARD'S LACK OF MARKET POWER</u>**

**HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL**

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.    Grubhub Plaintiffs Cannot Overcome the Presumption That a Firm with Mastercard's Low Market Share Lacks Market Power ........................................... 3

    II.    Grubhub Plaintiffs Cannot Show That Mastercard Exercises Market Power to Restrict Output, Raise Prices, or Reduce Quality ................................................ 4

        A.    Grubhub Plaintiffs' Expert Opinions Do Not Show That Mastercard Exercises Market Power ........................................................... 5

        B.    Grubhub Plaintiffs' Other Purported Evidence Does Not Show That Mastercard Exercises Market Power ..................................................... 7

    III.    Grubhub Plaintiffs Cannot Establish That Mastercard Has Market Power By Improperly Combining Mastercard with Visa ................................................. 10

CONCLUSION ........................................................................................................................ 12

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800 Contacts, Inc.* v. *FTC*,
   1 F.4th 102 (2d Cir. 2021) ..................................................................................................5

*Abbott Labs* v. *Adelphia Supply USA*,
   No. 15-CV-5826 (CBA) (LB), 2018 WL 8967057 (E.D.N.Y. Aug. 7, 2018).........................11

*Ohio* v. *American Express Co.*,
   138 S. Ct. 2274 (2018)................................................................................................ *passim*

*United States* v. *American Express Co.*,
   838 F.3d 179 (2d Cir. 2016)........................................................................................ *passim*

*MacDermid Printing Sols. LLC* v. *Cortron Corp.*,
   833 F.3d 172 (2d Cir. 2016).................................................................................................12

*Major League Baseball Props., Inc.* v. *Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)...................................................................................................6

*Suture Express, Inc.* v. *Owens & Minor Distrib., Inc.*,
   No. 12-2760-DDC-KGS, 2016 WL 1377342 (D. Kan. Apr. 7, 2016).......................................6

*US Airways, Inc.* v. *Sabre Holdings Corp.*,
   938 F.3d 43 (2d Cir. 2019).....................................................................................................6

*United States* v. *Visa*,
   344 F.3d 229 (2d Cir. 2003)......................................................................................... *passim*

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

## PRELIMINARY STATEMENT

In its opening brief, Mastercard showed that it is entitled to summary judgment on Grubhub Plaintiffs' claims. Even if Grubhub Plaintiffs could show any anticompetitive effects in the relevant markets—which, as explained in Defendants' separate motion under *Ohio* v. *American Express Co.*, 138 S. Ct. 2274 (2018) ("*Amex*"), they cannot—their claims against Mastercard still fail because they cannot show that those anticompetitive effects resulted from an exercise of Mastercard's market power, as opposed to other market forces.

In their opposition, Grubhub Plaintiffs do not dispute the fundamental facts that establish Mastercard's lack of market power: They do not dispute that Mastercard's market share remains below 30% in both credit and debit. They do not dispute that output is expanding and Mastercard's transaction volume continues to grow. They do not dispute that the relevant two-sided prices for credit and debit transactions have decreased. And they do not dispute that there are new entrants and innovations across the payments industry.

Instead, Grubhub Plaintiffs resort to the same baseless arguments as other direct action plaintiffs. They rely on inapposite and stale case law, and seek to paper over their lack of empirical analysis with expert speculation and mischaracterizations of the record. All these arguments were squarely rebutted by Mastercard in its 2020 summary judgment briefing, which Mastercard fully incorporates by reference here.[1]

Like other plaintiffs before them, Grubhub Plaintiffs still have no answer to the Supreme Court's holding in *Amex*, that American Express, despite being larger than Mastercard, did not

---

[1] Mastercard adopts and incorporates by reference Mastercard and Bank Defendants' Memorandum of Law and Reply Memorandum of Law in Support of the Motion for Summary Judgment Based on Mastercard's Lack of Market Power (respectively, "Market Power Br." and "Market Power Reply"), filed at ECF Nos. 8073 and 8157.

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

have market power in the same two-sided market at issue here. Nor can they refute, through empirical evidence or otherwise, that firms with Mastercard's low market share cannot exercise market power. Their heavy reliance on *United States* v. *Visa*, 344 F.3d 229 (2d Cir. 2003)—a decision that addressed different conduct, in a different market, based on reasoning that the Second Circuit has since disavowed—is misplaced. Grubhub Plaintiffs exhort the Court to look at "market realities," but the "reality" here—where nearly 80% of credit and debit transactions run on competing networks, output is increasing, two-sided prices are falling, and innovations abound—rules out any finding that Mastercard wields market power.

As for their latest theory that Mastercard should be grouped together with Visa for the purpose of measuring its market power, that suggestion should be rejected as a matter of fact and law. Again, the *Visa* decision provides no support for Grubhub Plaintiffs' arguments: In *Visa*, the challenged conduct was an alleged agreement between the networks, which at the time were operated as joint ventures with largely overlapping membership. Here, where Grubhub Plaintiffs have alleged no conspiracy between Visa and Mastercard as independent, publicly-owned corporate competitors, there is no reason to treat those networks jointly merely to inflate Mastercard's purported market power.

This reply brief will not repeat the extensive arguments Mastercard has already made in prior briefing; instead, it will only highlight the key failures of Grubhub Plaintiffs' opposition. If this Court agrees that Grubhub Plaintiffs have failed to demonstrate anticompetitive effects, and grants Defendants' *Amex* motion, it need not resolve the issues raised here. But even if the Court does find evidence of anticompetitive effects, it should still grant Mastercard's motion. To survive summary judgment, Grubhub Plaintiffs must point to evidence showing that Mastercard, standing

2

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

alone, caused anticompetitive effects through an exercise of market power. Because they have failed to do so, their claims against Mastercard should be dismissed.

# ARGUMENT

I. **Grubhub Plaintiffs Cannot Overcome the Presumption That a Firm with Mastercard's Low Market Share Lacks Market Power**

As previously explained, the updated record in the *Grubhub* action confirms that Mastercard's market shares in credit and debit remain too low to demonstrate market power. *See* Mot. at 5–6.[2] Grubhub Plaintiffs fail to overcome the well-established presumption that firms with less than a 30% market share do not have market power. And they have no response to the Supreme Court's unequivocal holding in *Amex* that American Express—then the second largest credit network, with a roughly 26% market share—lacked the market power needed to cause anticompetitive effects. *See Amex*, 138 S. Ct. at 2282, 2288.

Like other plaintiffs before them, Grubhub Plaintiffs attempt to sidestep this controlling precedent by invoking the twenty-year-old conclusions from *United States* v. *Visa*, 344 F.3d 229 (2d Cir. 2003). *See* Opp'n at 3–6. For the same reasons set forth in Mastercard's prior summary judgment briefing, *see* Market Power Reply at 6–8, Grubhub Plaintiffs' reliance on *Visa* is misplaced. In *Visa*, the Second Circuit held that Visa and Mastercard each had market power in the "market for network services," based in part on their market shares of 47% and 26%, respectively. 344 F.3d at 234–35, 239–40. That is an *entirely different market* than the two-sided markets for credit and debit transactions at issue here. In its subsequent decision in *United States* v. *American Express Co.*, 838 F.3d 179 (2d Cir. 2016) ("*American Express*"), the Second Circuit

---

[2] Citations to "Mot." and "Opp'n" are to Mastercard's opening brief in support of, and Grubhub Plaintiffs' opposition to, Mastercard's Motion for Summary Judgment Based on Mastercard's Lack of Market Power, filed in this action. Defined terms not otherwise defined herein have the same meanings set forth in the opening brief.

3

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

explicitly clarified that the two-sided market for credit card transactions is "not the same [market] as the relevant market in *Visa*." *Id*. at 198. The same logically holds true for the two-sided market for debit transactions.

Moreover, the exclusionary rules challenged in *Visa* were alleged to be "agreements between competing . . . networks," meaning that "the contested conduct . . . occurred *between the platforms themselves*." *Id*. (emphasis added). Here, as in *American Express*, the "contested conduct"—Mastercard's Honor All Cards rule and default interchange—is "markedly different," occurring instead "among different sides of *the same network platform*." *Id.* (emphasis added).

The Second Circuit has also rejected a key premise underlying its decision in *Visa*. In *Visa*, the court relied heavily on evidence of cardholder insistence to support its finding of market power. *See* 344 F.3d at 240. The Second Circuit has since disavowed that reasoning in *American Express*, making clear that cardholder insistence is not evidence of market power: "Cardholder insistence results not from market power, but instead from competitive benefits on the cardholder side of the platform and the concomitant competitive benefits to merchants." 838 F.3d at 202.

In short, there is no reason to look to *Visa* when squarely controlling precedent makes clear that in *this* market, a network with Mastercard's low share cannot exercise market power. *See Amex*, 138 S. Ct. at 2288; *American Express*, 838 F.3d at 200–04.

## II. Grubhub Plaintiffs Cannot Show That Mastercard Exercises Market Power to Restrict Output, Raise Prices, or Reduce Quality

In its opening brief, Mastercard demonstrated that Grubhub Plaintiffs have adduced no evidence showing that Mastercard exercises market power to restrict output, price supracompetitively, reduce quality, or suppress innovation. On the contrary, it is undisputed that Mastercard has expanded output on its network, that two-sided prices for credit and debit transactions have fallen, and that Mastercard continues to innovate to respond to increased

4

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

competition. *See* Mot. at 6–13. None of the so-called "evidence" cited in Grubhub Plaintiffs' opposition disturbs these fundamental facts.

### A. Grubhub Plaintiffs' Expert Opinions Do Not Show That Mastercard Exercises Market Power

Unable to support their claims with real-world evidence, Grubhub Plaintiffs lean heavily on the opinions of their chief economic expert, Craig Romaine. For reasons already set forth in our opening brief and prior summary judgment briefing, none of these expert opinions are sufficient to demonstrate that Mastercard has market power.[3]

*First*, in response to the undisputed evidence that output has expanded, Grubhub Plaintiffs double down on their assertion that "the proper comparison is to what output would be in a 'but-for world'" without the challenged rules. Opp'n at 13. Their expert, however, admitted that he never attempted to calculate what output would be in that but-for world. *See* Mot at 7–8. Speculative expert theories cannot substitute for the empirical analysis that is needed to establish anticompetitive effects resulting from an exercise of market power. *See 1-800 Contacts, Inc*. v. *FTC*, 1 F.4th 102, 118 (2d Cir. 2021).[4]

*Second*, as purported "direct evidence" of Mastercard's market power, Grubhub Plaintiffs cite their expert's assertions that Mastercard "impose[s]" its network rules and default interchange on merchants, and that "merchants cannot refuse acceptance of Mastercard." Opp'n at 8–9. As already explained, these assertions are flatly contradicted by the record and governing law. The

---

[3] Grubhub Plaintiffs repeatedly highlight that Defendants have not moved to exclude their experts' opinions, *see* Opp'n Br. at 7, 19, but neglect to mention that the parties have discussed seeking to enter stipulations regarding the applicability of the Court's prior *Daubert* decisions to Grubhub Plaintiffs' experts—rather than briefing many of the same issues anew—and that there has been no deadline set for *Daubert* motions in this action. Mastercard has not waived its right to challenge the admissibility at trial of Grubhub Plaintiffs' experts' opinions.

[4] *See also* Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. Under *Ohio* v. *American Express*, dated July 14, 2023; Defs.' Reply Mem. of Law in Supp. of Their Mot. for Summ. J. Under *Ohio* v. *American Express*, dated Sept. 8, 2023.

5

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

challenged rules have existed since Mastercard's inception, when Grubhub Plaintiffs agree that Mastercard lacked market power, and all payment card networks—including American Express and Discover, which Grubhub Plaintiffs do not accuse of exercising market power—maintain an Honor All Cards rule. *See* Mot. at 14; Market Power Br. at 23–24; Market Power Reply at 10–12. Grubhub Plaintiffs cannot rely on these rules as "evidence" of market power when the same rules have been maintained for decades by competing firms that indisputably lack market power. *See Suture Express, Inc.* v. *Owens & Minor Distrib., Inc.*, No. 12-2760-DDC-KGS, 2016 WL 1377342, at *23–25 (D. Kan. Apr. 7, 2016) (granting summary judgment in favor of defendants where "other competitors in the market," who plaintiff did "not contend . . . ha[d] market power," used "similar bundling terms" as defendants, thus precluding any "triable issue about market power"); *see also Major League Baseball Props., Inc.* v. *Salvino, Inc.*, 542 F.3d 290, 330 (2d Cir. 2008) (affirming summary judgment in favor of defendants where there was "no genuine dispute" that "other professional sports entities have centralized licensing operations" similar to the challenged conduct).

As to their experts' contention that merchants have "no choice" but to accept Mastercard, that is undercut by Grubhub Plaintiffs' own admissions that they choose to accept Mastercard because it is profitable for them to do so, and to meet their customers' preferences. *See* Mot. at 13–14; Market Power Reply at 12–14. These concessions only reinforce the Second Circuit's conclusion that "cardholder insistence" is not evidence of market power. *American Express*, 838 F.3d at 202–04; *see US Airways, Inc.* v. *Sabre Holdings Corp.*, 938 F.3d 43, 59 (2d Cir. 2019) (rejecting expert testimony that was "wrong as a matter of law in light of *Amex*"); *see also* Mem. & Order, ECF No. 8714 at 51–52 (citing cases).

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

*Third*, Grubhub Plaintiffs also point to their expert's analysis of certain co-brand deals with large merchants as purported benchmarks against which to measure Mastercard's supposedly anticompetitive pricing. As explained in our opening brief, those co-brand deals are inconsistent with allegations of supracompetitive pricing; instead, they underscore how merchants, including Grubhub Plaintiffs ▉▉▉▉▉▉▉▉ are able to negotiate for reduced costs of acceptance. *See* Mot. at 10. Grubhub Plaintiffs' contorted response to this fact—that these co-brand deals reflect only "competition for the value of [a merchant's] brand and customer base," not "competition generally"—makes no sense and certainly does not establish supracompetitive pricing. Opp'n at 10. Merchants, like all other participants in payment card networks, leverage their own value to negotiate more favorable terms for themselves, including reduced costs of acceptance through co-brand agreements. That is evidence of competition, not market power. *See Amex*, 138 S. Ct. at 2289 (recognizing that American Express's decision to offer "lower merchant fees" to specific categories of merchants was the result of "competition").

Retreading old ground, Grubhub Plaintiffs also invoke a grab-bag of other expert opinions supposedly suggesting that Mastercard possesses market power. *See* Opp'n at 8–9. Mastercard has already rebutted each of these expert theories in detail, without any compelling response from Grubhub Plaintiffs. *See* Market Power Reply at 7–8 & n.8–9, 29–30 (addressing "barriers to entry" and "market concentration"); 24 (addressing "value-based pricing"); 24–25 (addressing network profitability); 33 (addressing post-Durbin fee adjustments); Market Power Br. at 19 & n.12 (addressing "price discrimination practices").

**B. Grubhub Plaintiffs' Other Purported Evidence Does Not Show That Mastercard Exercises Market Power**

Grubhub Plaintiffs' other purported evidence of market power fares no better.

Relying on the same stale record evidence as other plaintiffs before them, Grubhub Plaintiffs argue that "Mastercard has taken a leading role in increasing interchange costs." Opp'n at 11–12. As an initial matter, the Supreme Court has made clear that price increases on the merchant side of the platform—which are necessary to fund price reductions on the cardholder side of the platform, and to compete for cardholders—do not evidence an exercise of market power in a *two-sided* market. *See Amex*, 138 S. Ct. at 2288. Further, as explained in prior briefing, there is no evidence suggesting that Mastercard can somehow force Visa—the undisputed market leader in both credit and debit—to raise prices to supracompetitive levels. *See* Market Power Reply at 22–24. If anything, the purported price increases that Grubhub Plaintiffs point to are actually evidence of pro-competitive behavior, demonstrating that Mastercard sets default interchange and network fees in intense competition with Visa and other networks to maximize transactions. *See id*. As for Grubhub Plaintiffs' new assertion that Mastercard has "impos[ed] . . . supracompetitive interchange fees" to "restrain[] output" with respect to small-ticket transactions, Opp'n at 13–14, that assertion too is belied by the record: it is undisputed that the average transaction size for Mastercard consumer credit cards has fallen since 2004, showing that credit cards have become a more widespread method of payment for small transactions, and in 2022, Mastercard actually *decreased* default interchange rates for small-ticket transactions under $5 in order to further increase acceptance. *See* Defs.' Reply in Supp. of Defs.' 2023 Statement of Material Facts ("Reply SMF") § V.B.

Grubhub Plaintiffs' assertions that Mastercard has "stifled innovation" are likewise contradicted by the record. Opp'n at 12. Their rehashed allegations regarding Mastercard's EMV liability shift and ▬▬▬ agreements mischaracterize the evidence, which, as previously explained, is more consistent with competition than with suppression of innovation. *See* Market Power Reply

8

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

at 25–28. Grubhub Plaintiffs' supposedly "new" evidence of suppressed innovation, Opp'n at 12–13, is similarly deficient: Mastercard's recent consent order with the Federal Trade Commission, which contained no admission of wrongdoing, resolved allegations relating to whether Mastercard's tokenization technology complied with the Durbin Amendment's routing requirements, and in no way suggests that Mastercard has suppressed innovation or engaged in any other anticompetitive conduct. *See* Reply SMF § V.D. On the contrary, the record evidence in this litigation demonstrates that tokenization is an important innovation that Mastercard has undertaken to improve the safety and security of its network. *See* Mot. at 12. Grubhub Plaintiffs' vague allegations as to Mastercard's agreements with ▇ and its rules applicable to digital wallets are also undercut by the many examples in the record showing how Mastercard has partnered with new entrants such as ▇ and ▇ who have both leveraged Mastercard's open platform to participate in the payments space. *See* Market Power Reply at 27–30 & n.31.

Grubhub Plaintiffs also fail to refute that Mastercard faces more competition than ever, not only from other payment card networks, but also from new entrant payment platforms such as BNPL providers, account-to-account payment services, and various fintech and digital payment providers. *See* Mot. at 11–12. With respect to the new BNPL players that compete in the payments space, Grubhub Plaintiffs, citing predominantly Visa documents, complain that some merchants who do not have BNPL agreements, but whose "customers want[] to make purchases" using a BNPL option, are "required" to accept purportedly "high-interchange" virtual cards. Opp'n at 15–16. But the one Mastercard document cited shows only that Mastercard, in another example of innovation, has partnered with new entrants such as ▇ to develop virtual card programs. *See* Reply SMF § V.D. The fact that some merchants accept virtual cards as a result of their customers' preferences does not suggest any harm to competition, *see American Express*, 838 F.3d at 201–02,

9

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

especially in light of the undisputed evidence (which Grubhub Plaintiffs deliberately ignore) showing that many merchants choose to accept BNPL options, pursuant to separate negotiated agreements with higher costs of acceptance than Mastercard, because of the many benefits that stem from acceptance. *See* Mot. at 11–12.

### III. Grubhub Plaintiffs Cannot Establish That Mastercard Has Market Power By Improperly Combining Mastercard with Visa

Having failed to adduce any evidence of Mastercard unilaterally exercising market power, Grubhub Plaintiffs resort instead to simply lumping Mastercard together with Visa, its much larger competitor, in order to inflate Mastercard's purported market power. As explained in Mastercard's opening brief, Grubhub Plaintiffs' contention that Mastercard and Visa should be treated "jointly," merely because they each do business with a set of "overlapping" issuing banks, should be rejected as a matter of law, *see* Mot. at 14–16, and Grubhub Plaintiffs' arguments in opposition are unavailing.

In support of their theory, Grubhub Plaintiffs again hang their hat on the *Visa* decision, contending that "[t]he overlapping membership of Mastercard and Visa"—which at that time were still organized as joint ventures owned by issuing banks—was "one of the factual bases" for the Second Circuit's conclusion that the networks had market power. Opp'n at 16–18. Aside from the many reasons why *Visa* is not applicable here, *see supra* at Section I and Market Power Reply at 6–8, that decision did not address and does not endorse the theory of "joint" market power that Grubhub Plaintiffs advance here. In *Visa*, the Second Circuit affirmed the district court's finding of market power on two grounds: First, the court relied on "the fact that merchants testified that they could not refuse to accept payment by Visa or MasterCard . . . *because of customer preference*," 344 F.3d at 240 (emphasis added), which the Second Circuit has since clarified does not evidence market power. *See American Express*, 838 F.3d at 201–02. Second, the court took

10

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER
TO BE FILED UNDER SEAL

into account the networks' respective market shares in the "highly concentrated market" for "network services." *Visa*, 344 F.3d at 239–40. The overlap in issuing banks did not inform the court's analysis of market power. *Visa* also does not support Grubhub Plaintiffs' argument that their "joint" market power theory is "functionally no different" than a theory based on market concentration. Opp'n at 18. The fact that a market is concentrated does not mean that any individual firm in that market necessarily wields market power. *See Abbott Labs* v. *Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2018 WL 8967057, at *3 (E.D.N.Y. Aug. 7, 2018) (holding that firm with 20% market share was presumptively incapable of having market power even though it operated in a concentrated market); Market Power Reply at 2.

Moreover, to the extent the Second Circuit in *Visa* considered the two networks "jointly," that approach is inappropriate here, for multiple reasons. In *Visa*, the challenged exclusionary rules were alleged to be "agreements *between* competing payment-card networks"—that is, between Mastercard and Visa—which effectuated a "horizontal restraint." *American Express*, 838 F.3d at 198 (emphasis added) (citing *Visa*, 344 F.3d at 242). Here, in contrast, the challenged network rules and default interchange are vertical rules governing "different sides of the same network platform," *American Express*, 838 F.3d at 198, and there is no allegation that Mastercard and Visa conspired to enact those rules. *See* Mot. at 16. Accordingly, there is no reason to depart from the well-established principle—which Grubhub Plaintiffs do not refute—that, in the absence of a horizontal conspiracy or other concerted action, it is improper to aggregate the individual market shares of separate competing firms. *See* Mot. at 15–16. Grubhub Plaintiffs' cited cases purportedly aggregating the market shares of trade association members, *see* Opp'n at 18 & n.11, are also inapposite for this same reason.

11

Grouping the two networks together in fact makes even less sense today, two decades after the *Visa* decision, when, as explained in Defendants' briefing on their separate summary judgment motion on post-IPO conspiracy claims, Mastercard and Visa are each separate, publicly-owned corporations with independent operations and management.[5]  This is in stark contrast to the network association structure addressed in *Visa*, where the banks had overlapping membership interests in each network.

In seeking to lump Mastercard together with Visa, Grubhub Plaintiffs ignore basic principles of antitrust law: after all, "'[m]arket power' is 'defined as the ability of a *single seller* to raise prices and restrict output.'" *MacDermid Printing Sols. LLC* v. *Cortron Corp.*, 833 F.3d 172, 182 (2d Cir. 2016) (citation omitted and emphasis added).  To meet their burden on summary judgment, Grubhub Plaintiffs must demonstrate that Mastercard, standing alone, exercises market power.  Their failure to do so is fatal to their claims.

## CONCLUSION

Because Grubhub Plaintiffs have failed to raise a triable issue of fact as to whether Mastercard exercises market power, Mastercard's motion for summary judgment should be granted.

---

[5]  *See* Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on Plaintiffs' Post-IPO Conspiracy Claims (June 1, 2020), ECF No. 8273, at 4–7.

Dated:  September 8, 2023

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

/s/ *Gary R. Carney*
Brette Tannenbaum
Gary R. Carney
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
btannenbaum@paulweiss.com
gcarney@paulweiss.com

Kenneth A. Gallo
Donna M. Ioffredo
2001 K Street, N.W.
Washington, DC 20006-1047
(202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

*Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I caused a true and correct copy of the foregoing to be served on all counsel in the above-referenced action via FTP, in accordance with the parties' prior agreement.

Dated: September 8, 2023

/s/ *Gary R. Carney*
Gary R. Carney