UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**ORDER**
05-MD-1720 (MKB)

This document refers to:

ALL RULE 23(b)(3) CLASS ACTIONS

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

The Court, having considered the Rule 23(b)(3) Class Plaintiffs' Renewed Motion for Class Representative Service Awards, (Renewed Mot. for Class Rep. Serv. Awards ("Pls.' Mot."), Docket Entry No. 8980), and all of the submissions, arguments, and objections made with respect to the motion,[1] approves the service awards and expenses in the amounts requested and as specified in this Order.

## I. Background

The service awards requested in Class Counsel's renewed motion have been contested for nearly a decade. Although the Court assumes familiarity with the procedural history of this multidistrict litigation as set forth more extensively in prior decisions, *see, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013) (*Interchange Fees I*), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) (*Interchange Fees II*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019)

---

[1] (Class Plaintiffs' Mem. of Law in Supp. of Renewed Mot. for Class Rep. Serv. Awards ("Pls.' Mem."), Docket Entry No. 8980-1; Objectors Unlimited Vacations and Cruises, Inc., USA Pets LLC, Gnarlywood LLC, and Quincy Woodwrights, LLC Mem. in Opp'n to Pls.' Mot. ("Objectors' Opp'n"), Docket Entry No. 8987; Objector Kevan McLaughlin's Resp. in Opp'n to Pls.' Mot. ("McLaughlin Opp'n"), Docket Entry No. 8988; Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply"); Docket Entry No. 8995.)

(*Interchange Fees III*), the Court briefly reviews the procedural history of the service awards at issue.

In January of 2014, following a 2013 settlement between Class Plaintiffs and Defendants (the "2013 Settlement"), Judge John Gleeson denied without prejudice Class Counsel's request for $1.8 million in incentive payments for nine named Class Plaintiffs, finding that "Class Counsel ha[d] not come close to justifying such large awards." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 448 (E.D.N.Y. 2014). The Court directed Class Counsel to provide "documentation setting forth the approximate value of each Class Plaintiff's claim[,] . . . each one's proposed incentive award[,] . . . [and] any relevant authority, factual and legal, for the requested awards." *Id.* at 449.[2]

In January of 2015, the Court approved $950,000 in service awards and $35,643.01 in expenses, collectively, for nine named Class Plaintiffs. (*See* Order on Class Plaintiffs' Mot. For Class Rep. Serv. Awards (the "2015 Order"), Docket Entry 6395). In June of 2016, the Second Circuit vacated the Court's certification of the settlement class and reversed approval of the 2013 Settlement. *See Interchange Fees II*, 827 F.3d 223. About two years later, the Rule 23(b)(3) Class reached a new settlement with Defendants (the "2019 Settlement"), which the Court preliminarily approved on January 24, 2019, (Order, Docket Entry No. 7361), and finally approved on December 13, 2019, (Order, Docket Entry No. 7818).

In December of 2019, the Court approved $900,000 in service awards and $35,643.01 in

---

[2] The case was reassigned from Judge John Gleeson to the undersigned on December 17, 2014. (Order Reassigning Litigation, Docket Entry No. 6359.)

expenses for eight named Class Plaintiffs.[3] (*See* Order granting Mot. For Class Rep. Serv. Awards (the "2019 Order"), Docket Entry No. 7823.) The Court found that the requested awards were comparable to the awards granted in cases with smaller settlement fund sizes and for cases that had proceeded for substantially shorter periods of time. (*Id.* at 1–2 (collecting cases).) Further, the Court noted that "Class Representatives spent an enormous period of time and resources in serving as named representatives in this complex litigation that ha[d] spanned well over a decade." (*Id.* at 2.) Finally, the Court noted that Class Counsel had not sought awards any greater than had been approved in the 2013 Settlement Agreement, even though Class Plaintiffs expended considerable additional efforts in the intervening six years, "including time spent as a result of another round of discovery." (*Id.* at 3.)

In March of 2023, the Second Circuit affirmed the Court's approval of the 2019 Settlement "in all respects," "with the exception that [the Court was] direct[ed] . . . to reduce the service award to class representatives" to account for time spent on lobbying activities. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721–23, 727 (2d Cir. 2023). On May 2, 2023, the Second Circuit issued a mandate "direct[ing the Court] to reduce the service award to class representatives to the extent that its size was increased by time spent in lobbying efforts that would not increase the recovery of damages." (Mandate of U.S.C.A. 2d Cir. dated May 2, 2023, Docket Entry No. 8823); *Fikes*, 62 F.4th at 727 (same). On September 29, 2023, Class Counsel renewed their motion for approval of service awards and moved for disbursement of funds from the settlement fund. (*See* Pls.' Mot.) In light of the Second Circuit's decision in

---

[3] The 2015 Order included $50,000 to class representative Crystal Rock, LLC. (2015 Order 1.) Crystal Rock, LLC stipulated to dismissal of its claims in April of 2018, and the amount allocated to it was accordingly removed in the 2019 Order. (*See* Stipulation and Order of Dismissal, Docket Entry No. 7197.)

*Fikes*, Class Counsel reduced their request to account for time that the named plaintiffs spent on lobbying activities. (Pls.' Mem. 5–6.) On October 23, 2023, Unlimited Vacations and Cruises, Inc., USA Pets LLC, Gnarlywood LLC, and Quincy Woodwrights, LLC, (collectively, "Objectors") and, separately, Kevan McLaughlin filed objections to Class Counsel's motion. (*See* Objectors' Opp'n; McLaughlin Opp'n.)

## II. The Court approves the requested service awards and expenses

Plaintiffs argue that "[i]n accordance with the Second Circuit's direction, the Court should reduce the service awards to the extent they reflect time spent lobbying." (Pls.' Mem. 5.) They assert that "[o]nly four of the nine Class Representatives devoted time to lobbying," (*id.*), and request that the service awards be reduced by $6,879.00 as a result, (*id.* at 6). Plaintiffs argue that "[i]n all other respects, . . . the Court's previous Service Award Order should remain undisturbed," because "no good reason exists for any objector to once again battle for the Court's decision regarding service awards." (*Id.*; *see also id.* ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (quoting *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003))).)

Objectors argue that "[t]he Court of Appeals intended [the Court] to focus on activity that meaningfully contributed to the pursuit of (b)(3) damages, only." (Objectors Opp'n 1.) They contend that the Second Circuit would not have "reversed and remanded" over $6,879 — an amount they describe as "*de minimis*." (*Id.* at 2.) Instead, they contend that the Second Circuit's mandate "clearly requires [the] Court to consider the components that form the basis for the incentive awards." (*Id.*) They also argue that the Court failed to consider that the Class Representatives are legal entities that should only be compensated for time attributable to the

4

corporate entity, as opposed to the "personal-time hours their employees voluntarily gave to the litigation cause." (*Id.*) Specifically, Objectors argue that it is "improper to focus on the claimed time of Mitch Goldstone and Michael Schumann, as opposed to the claims of the respective businesses in which they hold ownership interests." (*Id.* at 3.) Finally, Objectors contend that Class Counsel interpreted "lobbying efforts" too narrowly and that the service awards should be further reduced for time spent "blogging and [on] social media." (*Id.* at 5–7.)

Objector Kevan McLaughlin argues that the Court "should exercise [its] solid discretion to deny service awards, rather than [its] nebulous discretion to award them." (McLaughlin Opp'n 2.) McLaughlin argues that service awards "are illegal under the common-fund doctrine established in *Trustees v. Greenough*, 105 U.S. 527, 537–38 (1882)," but concedes that Second Circuit law permits service awards. (*Id.* (first citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir. 2019); and then citing *Hyland v. Navient Corp.*, 48 F.4th 110, 123–24 (2d Cir. 2022)).) McLaughlin recognizes that the Second Circuit in *Fikes* "found that it was bound to follow its own precedents of *Melito* and *Navient*," even though it had expressed reservations about the legality of service awards. (*Id.* at 3 (citing *Fikes*, 62 F.4th at 720).) McLaughlin also concedes that this Court "is, of course, bound to follow the mandate of the Second Circuit." (*Id.* at 4.) Ultimately, McLaughlin argues that the Court "should exercise its discretion to decline the requested awards entirely," because "[d]enial of the service awards is squarely within the ambit of the mandate, particularly when the [Second Circuit opinion in *Fikes*] loudly and repeatedly deride[d] the apparent lack of authority and standards for such awards." (*Id.* at 6 (citing *Fikes*, 62 F.4th at 720–22).)

The Court adheres to the mandate of the Second Circuit and approves the reduced service awards as requested by Class Counsel. The Court agrees with McLaughlin's characterization of

5

the Second Circuit's concerns about service awards, but declines to exercise its discretion to deny the requested awards for the reasons discussed below.  In addition, the Court disagrees with Objectors' contention that "the Court of Appeals intended [the Court] to focus on activity that meaningfully contributed to the pursuit of (b)(3) damages, only."  (Objectors Opp'n 1.)  Objectors' position is not supported by *Fikes*.  Rather, the Second Circuit was clear that "[t]he class should not pay for time spent lobbying for changes in law that do not benefit the class." *Fikes*, 62 F.4th at 723; *id.* ("We direct the district court to reduce the award to the extent its size was increased because of time spent lobbying.")  A mandate to exclude time spent on lobbying activities is not tantamount to a directive for the Court to engage in a wholesale reevaluation of what activities "meaningfully contributed to the pursuit of (b)(3) damages, only."  Objectors' other arguments are also without merit and the Court declines to *sua sponte* reconsider its prior decision without a compelling reason to do so.[4]  *See Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F.

---

[4]  First, Objectors contend that the Second Circuit would not have "reversed and remanded" over $6,879.  (Objectors' Opp'n 2.)  The Court does not agree.  Any amount of time "spent lobbying for changes in law that do not benefit the class," *Fikes*, 62 F.4th at 723, prejudices the interests of the other class members.  The courts have an obligation to be responsible stewards of settlement funds.  *Cf. In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 740 (S.D.N.Y. 1994) ("Where an equitable fund is created through the settlement of a class-action suit, the court, as guardian of the rights of the class members, is not bound by the amount of the fee award that counsel has requested. . . . Rather, the court, in its fiduciary role, must recognize that regardless of how well intentioned plaintiffs' counsel may be, the attorney and the client stand as adverse claimants with respect to the same settlement fund." (citations omitted)); *see also Burger v. CPC Int'l, Inc.* 76 F.R.D. 183, 188 (S.D.N.Y. 1977) (stating that the court has a "duty in class actions to award fees with moderation and a jealous regard for the rights of those with an interest in the fund but who are not before the Court").

Second, Objectors argue that the Court failed to consider that the Class Representatives are legal entities that should only be compensated for time attributable to the corporate entity, as opposed to the "personal-time hours their employees voluntarily gave to the litigation cause." (Objectors' Opp'n 2.)  The Court notes that Objectors did not raise this argument in their opposition to the initial motion for service awards, nor in their appeal to the Second Circuit. (*See* Objection to Proposed Settlement and Request for Attorney's Fees ("Objectors' Initial Opp'n"), Docket Entry No. 7555; Br. of Appellants Unlimited Vacations and Cruises, Inc., *et al*., annexed

6

Supp. 3d 126, 134 (E.D.N.Y. 2021) ("*Sua sponte* reconsideration is appropriate where there is a need to correct a clear error or prevent manifest injustice, there is an intervening change in the applicable law, or new evidence is available." (citation omitted)); *see also Colvin v. Keen*, 900 F.3d 63, 73 (2d Cir. 2018) (observing that, under the doctrine known as the law of the case, a court should not revisit its prior decisions "unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice" (citation omitted)).

      Consistent with the Court's 2019 Order, controlling Second Circuit law, persuasive

---

to Objectors' Initial Opp'n as Exhibit A, Docket Entry No. 7555-1.) Thus, even construing Objectors' objections as if they were raised upon a motion for reconsideration — something they have not done — "[i]t is well-settled that [a motion for reconsideration] is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *Sussman Sales Co. v. VWR Int'l, LLC*, No. 20-CV-2869, 2021 WL 6065760, at *3 (S.D.N.Y. Dec. 21, 2021) ("[A] motion for reconsideration 'is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.'" (quoting *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012))); *see also RST (2005) Inc. v. Rsch. in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the [c]ourt, nor may it be used as a vehicle for relitigating issues already decided by the [c]ourt." (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001))).

      Third, Objectors contend that Class Counsel interpreted "lobbying efforts" too narrowly and that the service awards should be further reduced for time spent "blogging and [on] social media." (Objectors' Opp'n 5–7.) This argument finds no support in the Second Circuit's decision in *Fikes*. To the contrary, the Second Circuit specifically referred to lobbying activity as "legislative activit[y]." *Fikes*, 62 F.4th at 723. Approving the service awards, this Court wrote: "Regarding lobbying efforts for the Durbin Amendment, [Lead Plaintiff Mitch] Goldstone 'met with several members of Congress and their staffs . . . [and] took a 1980s-era credit-card imprinter with [him] as a visual tool to illustrate how outdated interchange fees were in the age of electronic commerce.'" (2019 Order 2–3 (citation omitted).) Class Counsel's interpretation of lobbying activity thus comports with both the Second Circuit's and this Court's usage of the term. Moreover, Objectors have offered no basis for permitting the Court to distinguish between social media activity that increased the damages award and activity that might have promoted policy changes.

authority, and *Fikes*, the Court has the discretion to award the service awards in the amounts requested. *See Fikes*, 62 F.4th at 721–22 (describing the standard governing grants of service awards as "standardless," but noting that "the decision to grant the [service] award, and the amount thereof, rests solely within the discretion of the [district court]" (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016))); (*see also* 2019 Order 1–3 (collecting cases)). The Court reiterates that "Class Representatives spent an enormous amount of time and resources in serving as named representatives in this complex litigation that has spanned" nearly two decades. (2019 Order 2.) Certain class representatives "expended additional effort that far exceeded what an average class representative might do to advocate on behalf of the class." (*Id.*) Finally, the Court notes that Class Counsel does not seek service awards in excess of the service awards requested and previously granted pursuant to the now-vacated 2013 Settlement.[5] (*See also id.* (citing *Interchange Fees I*, 986 F. Supp. 2d at 213, 223).)

Accordingly, the Court orders that awards be paid to the following Rule 23(b)(3) Class Plaintiffs as follows for their prosecution of this litigation and for their efforts to obtain settlement on behalf of the Class:

---

[5] In the 2019 Order, the Court noted that Class Counsel had not requested increased awards "despite significant additional efforts and time spent by the Class Plaintiffs in the [intervening] six years[,] . . . including time spent as a result of another round of discovery." (2019 Order 3.) In addition, the Court observes that inflation has diminished the value of the service awards by a quarter since they were initially requested. *See* Bureau of Labor Statistics, CPI Inflation Calculator, available at https://www.bls.gov/data/inflation_calculator.htm (calculating that $1.00 in December 2023 has the same buying power as $0.75 in January of 2013).

| Representative | Out-of-Pocket Expenses | Service Award | Value of Lobbying Time | Reduced Total |
|---|---|---|---|---|
| Traditions | $ 8,418.49 | $ 200,000.00 | $ (5,208.00) | $ 203,210.49 |
| Photos Etc. | $ 6,860.44 | $ 200,000.00 | $ (1,200.00) | $ 205,660.44 |
| Discount Optics | $ 12,773.55 | $ 100,000.00 | N/A | $ 112,773.55 |
| Payless | N/A | $ 100,000.00 | $ (229.00) | $ 99,771.00 |
| CHS | N/A | $ 100,000.00 | N/A | $ 100,000.00 |
| Parkway | $ 3,540.53 | $ 75,000.00 | N/A | $ 78,540.53 |
| Leon's Transmission | $ 450.00 | $ 75,000.00 | $ (242.00) | $ 75,208.00 |
| Capital Audio | $ 3,600.00 | $ 50,000.00 | N/A | $ 53,600.00 |

These amounts shall be paid from the Net Cash Settlement Escrow Account no later than thirty days from the issuance of this Order and are in addition to whatever monies these Rule 23(b)(3) Class Plaintiffs will receive in the form of their distributions from the Net Cash Settlement Escrow Account.

Dated: February 15, 2024
        Brooklyn, New York

SO ORDERED:

/s MKB
MARGO K. BRODIE
United States District Judge

9