# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

**MARK C. RIFKIN**
DIRECT DIAL: 212-545-4762
FACSIMILE: 212-686-0114
rifkin@whafh.com

SYMPHONY TOWERS
750 B STREET - SUITE 1820
SAN DIEGO, CA 92101
619-239-4599

March 22, 2024

<u>VIA ECF</u>
The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-md-01720 (MKB) (VMS)

Dear Judge Brodie:

We write on behalf of the Square Seller Plaintiffs in response to the March 19, 2024, letter from Rule 23(b)(3) Class Counsel (ECF No. 9158).[1] Rule 23(b)(3) Class Counsel say that Settlement Class membership requires a person or entity to be a "direct purchaser of 'card acceptance services,'" which, they acknowledge, is a "factual matter that must be analyzed" in light of the evidence. *Id*. They express a "belief" on this factual question that the Square Sellers are members of the Settlement Class and that Square is not. However, Rule 23(b)(3) Class Counsel admit they have ***not*** read the parties' briefs on the Square Sellers' cross-motion for partial summary judgment, which they also admit could impact that fact-based conclusion. ECF No. 9158 at 2.

Rule 23(b)(3) Class Counsel identify four kinds of "factors that may inform the decision" on class membership. *Id.* The Square Sellers agree that those kinds of factors are relevant, and the evidentiary record on them strongly supports a finding that ***Square***, not the Square Sellers, was the direct purchaser of card acceptance services from Visa and Mastercard, and thus a member of the Settlement Class before opting out. The Square Sellers note that Rule 23(b)(3) Class Counsel, having not considered the motion papers, did not express an opinion on the pending cross-motion for partial summary judgment and did not address the notice issue raised by the Square Sellers.

**<u>Square, Not the Square Sellers, Is the Direct Purchaser of Payment Card Services</u>**

While Rule 23(b)(3) Class Counsel decline to perform the necessary factual analysis, the factors they articulate, when applied to the detailed factual record made by both Square and the Square Sellers, shows that each of the four factors supports the opposite conclusion: that Square

---

[1] We understand that Square is submitting a request to file its own response to the letter from Rule 23(b)(3) Class Counsel. To avoid unnecessary duplication of effort, we adopt and incorporate Square's response, which we supplement herein.

Hon. Margo K. Brodie
March 22, 2024
Page 2

is the Settlement Class member and the Square Sellers are classic *indirect* purchasers of card acceptance services.² Square buys the acceptance service from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and many other debit and credit card issuers. Square agrees to pay a multitude of fees (including interchange fees) to all those issuers at varying rates. Square then sells a bundle of goods and services to the Square Sellers, including supported hardware and software as well as card acceptance services, for which it charges the Square Sellers a single, fixed rate of 2.6% on each transaction, no matter what brand or card type.

*First*, we join in Square's contract analysis and its detailed discussion of the undisputed evidence that, for all purchases made by customers of the Square Sellers, **Square** negotiated and entered into all the contracts and established its own merchant account with ▮▮▮▮▮▮ so that **Square** – as the "merchant of record" – could "accept" Visa and Mastercard payment cards. We add that it is undisputed that the Square Sellers did ***not*** enter into any contracts with ▮▮▮▮▮ or create any merchant accounts with them for card-acceptance services. Instead, the Square Sellers purchased those services – **together with hardware, software, and other services** – indirectly from Square pursuant to contracts they signed with Square.³

Rule 23(b)(3) Class Counsel speculate that a "PayFac" may "appear" to be an agent of "either acquirers or merchants," but quickly note that whether any such relationship actually exists presents "a factual matter that must be analyzed." ECF No. 9158 at 2. Rule 23(b)(3) Class Counsel do not perform that analysis. However, Square has done so, and we join in Square's "Payfac" analysis. There is no evidence in the summary judgment record that Square is an agent of the acquirers, and likewise no evidence that Square entered into any contracts with Visa or Mastercard **as the agent for the Square Sellers**.

*Second*, we join in Square's analysis and detailed discussion of the undisputed facts that the networks set the interchange fees pursuant to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. We add that **Square** alone, ***not*** the Square Sellers, paid interchange fees it negotiated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which Square recorded as its own expense.⁴

---

² To avoid possible ambiguity created by the word "accepted" used in the Settlement Class definition, this Court previously "found that federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, ___ (2d Cir. 2023) (affirming settlement approval). More recently, the Court held that the *Illinois Brick* direct purchaser rule should not be "transform[ed]" into a simple "'who pays' rule," any more than it could be transformed into a "'who sets the price' rule." ECF No. 9151 at 27 (citing *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1522 (2019)). In doing so, the Court did not, as Rue 23(b)(3) Class Counsel's letter implies, reverse its prior holding that only direct payors of the challenged fees can be members of the Settlement Class; to be sure, it did not reverse the Second Circuit's decision in *Fikes Wholesale*. Instead, the Court simply acknowledged that other factors also may be relevant to the direct purchaser question.

³ *See* Square Seller Declarations, ECF Nos. 9112-9119, at ¶¶ 4 & 9.

⁴ *See* Ex. S18 (Square, Inc. 10-K dated Mar. 10, 2016), at 6 ("Square will ultimately pay the Issuing

The Square Sellers did *not* negotiate or pay any interchange fees to the networks. Rather, they paid *service fees* to **Square**. Those service fees were set by **Square** for a bundle of hardware, software, and services that Square provided to them.[5] And, as above, there is no evidence in the record that Square negotiated or paid interchange fees to Visa and Mastercard as the agent for the Square Sellers. Again, Defendants themselves have not claimed otherwise.

*Third*, we join in Square's analysis and detailed discussion of the undisputed evidence that **Square** is responsible for complying with the networks' rules, including that **Square** pays the applicable interchange fee and is bound by the "Honor All Cards Rules," which Square alleges causes it to directly pay billions of dollars of inflated interchange fees to Defendants.

Importantly, we understand that under Square's contracts ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[6] Accordingly, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for losses on credit card transactions processed within the Square ecosystem. As set forth in Block, Inc.'s 2022 Annual Report, Square is "*exposed to transaction losses due to chargebacks as a result of fraud or uncollectibility*. . . . Transaction losses include ***chargebacks for unauthorized credit card use and the inability to collect on disputes between buyers and sellers*** over the delivery of goods or services, as well as losses on Cash App activity related to peer-to-peer payments sent from a credit card, Cash for Business, and Cash Card." Block estimates an annual reserve for such transaction losses based upon Square's historical loss experience. It reserved $55.2 million for Square's anticipated transaction losses in 2022. *See* https://s29.q4cdn.com/628966176/files/doc_financials/2022/ar/Block-Annual-Report-2022.pdf, at 59 & 79.

---

Bank an interchange fee as a percentage of the amount of the transaction plus a fixed fee per transaction, which together average between 1.5% to 2.0% of the transaction amount."); *id.*, at 24 ("We are required to pay interchange fees and assessments to the payment card networks[.]"); Ex. S15 (Block, Inc. 10-K dated Feb. 23, 2023), at 40 ("We are required to pay interchange and assessment fees, processing fees, and bank settlement fees to third-party payment processors, payment networks, and financial institutions.")

Importantly, Square accounts for all card payment transaction costs within the Square ecosystem ***as its own expense***. As set forth in Block's 2022 Annual Report, those transaction-based costs consist primarily of ***interchange and assessment fees, processing fees, and bank settlement fees paid to third-party payment processors and financial institutions***. Square also accounts for its hardware costs ***as its own expense***. Hardware costs consist primarily of product costs associated with c***ontactless and chip readers, Square Terminal, Square Stand, Square Register, and third-party peripherals***. In 2020 and 2021, Square reported transaction based costs of $1.92 billion (56.6% of annual transaction revenue) and $2.73 billion (57.0% of annual transaction revenue), respectively. *See* https://s29.q4cdn.com/628966176/files/doc_financials/2022/ar/Block-Annual-Report-2022.pdf, at 32, 59 & 61-62.

[5] Ex. S7 (*Learn About Square's Fees*); *see, e.g.*, Square Seller Declarations, ECF Nos. 9112-9119, at ¶ 9.

[6] *See* fn.5 above.

And *fourth*, we join in Square's analysis and discussion of the undisputed "flow of funds" evidence, which also supports Square's direct purchaser status. We add that there is no dispute that Square Sellers are **not** part of the flow of funds at all. Rather, **Square** charges them a service fee, that is set by **Square**, pursuant to their separate contracts with Square.[7]

### **Settlement Notice Was Not Sent to Millions of Identifiable Square Sellers**

The factual record regarding notice of the settlement is now complete. And it is completely one-sided. Although millions of Square Sellers were readily identifiable, direct notice was **not** sent to them. *See, e.g.*, Square Seller Declarations, ECF Nos. 9112-9119, ¶ 13. Neither the Defendants nor Rule 23(b)(3) Class Counsel argues otherwise, and they have offered no contrary evidence. Such "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The Defendants' *post hoc* reliance on published notice is inadequate. Nothing in the record indicates that the Court was told that notice would not be sent to several million **identifiable** Settlement Class members. If the Court had been so advised at the time of notice, it seems clear that the Court would have required changes to the notice plan. *See, e.g.*, *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 93 (E.D.N.Y. 2007) (where parties had identifiable contact information, proposed plan of notice that relied on published notice and did not provide for direct notice to all identifiable class members "fails to meet the requirements of Rule 23(c), and the Court is therefore unable to approve it").

Should the Court conclude that the Square Sellers are members of the Settlement Class – which, for all the reasons explained before and reiterated above, it should **not** – the Court then must correct the settling parties' failure to send direct notice to millions of identifiable Settlement Class members, which deprived them of their constitutional due process right to object to the settlement or request exclusion from the Rule 23(b)(3) Class. Two obvious remedies are to: (i) set aside the settlement; or (ii) require that notice be re-sent to the entire Settlement Class with sufficient time for the Square Sellers to exercise their due process rights.

Thank you for Your Honor's continuing consideration. We remain available to answer any questions the Court may have.

Respectfully yours,

Mark C. Rifkin

Enclosure.

---

[7] Square Seller Declarations, ECF Nos. 9112-9119, ¶¶ 4, 8, 9.

Hon. Margo K. Brodie
March 22, 2024
Page 5


cc:     All Counsel (via ECF w/ enclosure)