**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | No. 1:05-md-01720 (MKB) (JAM) |
| This Document Relates to:<br><br>*Old Jericho Enterprise, Inc. et al. v. Visa, Inc. et al.*, No. 2:20-cv-02394 (E.D.N.Y.) (MKB)(JAM) | **OLD JERICHO PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## TABLE OF CONTENTS


INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 5

I. The Old Jericho Plaintiffs and Other Branded Gas Retailers Pay Interchange Fees Indirectly Via Their Suppliers ........ 5

II. Relevant Procedural History ........ 7

LEGAL STANDARD ........ 10

ARGUMENT ........ 11

I. The Old Jericho Plaintiffs' Claims Are Not Released by the Rule 23(b)(3) Class Settlement ........ 11

A. The Settlement Binds Only Direct Purchasers of Card Processing Services ........ 12

B. Defendants Are Judicially Estopped from Arguing to the Contrary ........ 12

C. The Old Jericho Plaintiffs Are Indirect Purchasers of Card Processing Services, and Thus Are Not Bound by the Settlement Release ........ 16

D. The Law of Release Confirms That the Old Jericho Plaintiffs, Including "Hybrids," Retain Their Indirect Purchaser Claims ........ 19

II. The Court Should Grant Partial Summary Judgment to the Old Jericho Plaintiffs ........ 22

CONCLUSION ........ 25

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)....................14, 15

*Adidas Am., Inc. v. Thom Browne, Inc.*,
No. 21-CV-5615 (JSR), 2022 WL 17736799 (S.D.N.Y. Dec. 16, 2022)....................10

*Azurite Corp., Ltd. v. Amster & Co.*,
844 F. Supp. 929 (S.D.N.Y. 1994) (Sotomayor, J.), *aff'd*, 52 F.3d 15 (2d Cir. 1995)....................11

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989)....................3

*Caudle v. Sprint/United Mgmt. Co.*,
No. 17-06874, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018)....................15, 16

*City of St. Paul v. FMC Corp.*,
Civ. No. 3-89-0466, 1990 WL 265171 (D. Minn. Feb. 27, 1990)....................4, 19, 20, 21

*Eisenhauer v. Culinary Inst. of Am.*,
84 F.4th 507 (2d Cir. 2023)....................10

*Faust Harrison Pianos Corp. v. Allegro Pianos, LLC*,
No. 09 CIV. 6707 ER, 2013 WL 2292050 (S.D.N.Y. May 24, 2013)....................11

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d. Cir. 2023).................... *passim*

*Hausler v. JP Morgan Chase Bank, N.A.*,
127 F. Supp. 3d 17 (S.D.N.Y. 2015)....................18

*In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*,
No. 14-MD-2542 (VSB), 2021 WL 1393336 (S.D.N.Y. Apr. 13, 2021)....................3

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011)....................21

*Monachino v. Bair*,
481 F. App'x 20 (2d Cir. 2012)....................11

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 1:05-md-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019)....................7, 8

*Phoenix Ins. Co. v. Hudson Excess Ins. Co.*,
No. 21 CIV. 4474, 2023 WL 5048629 (S.D.N.Y. Aug. 8, 2023) ......................................10, 11

*Simon v. KeySpan Corp.*,
694 F.3d 196 (2d Cir. 2012)..........................................................................................18

*Wal-Mart Stores, Inc v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................3, 4, 19, 21

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ..........................................................................10, 23

## INTRODUCTION

The Rule 23(b)(3) Settlement approved by this Court and affirmed by the Second Circuit defined the Settlement Class to include "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to [January 24, 2019]." Superseding & Am. Definitive Class Settlement Agreement ¶ 4, ECF No. 7257-2 ("Class Settlement Agreement"); *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 715 (2d. Cir. 2023). That definition was met with strenuous objections that the word "accepted" is sufficiently ambiguous to be read to include merchants (such as many gas station operators) who offer customers the option to pay by credit or debit card but who do not process those sales directly with an acquiring bank, instead relying on card processing provided by their supplier (such as Shell or BP), which contracts with an acquiring bank and remits payment to the merchant net of interchange fees and other costs. The Rule 23(b)(3) Class Plaintiffs ("Class Plaintiffs") and, importantly, Defendants rebutted that objection by explaining that the settlement class was comprised only of "direct purchasers" and that indirect purchasers, such as branded gasoline franchisees, neither could claim settlement funds nor were bound by its release. Br. of Defs.-Appellees at 24, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339-cv(L) (2d Cir. Oct. 15, 2020), ECF No. 209 ("Defs.' 2d Cir. Br.") ("[A]s the parties have long understood about the settlement, only the merchant that is the more direct payor of the interchange fee can recover . . . And it is that merchant—and no other—that is encompassed in the class definition."); *see also id.* at 42 (a "franchisee that is deemed not to be the appropriate claimant for any of its Visa or Mastercard transactions is not a class member and thus not bound by the

release. If that non-class member has a claim—for example, because it is an indirect payor with a claim under state law—it will retain that claim").[1]

This Court accepted Defendants' position and "properly concluded that 'the [Settlement] class definition is . . . objectively guided by federal antitrust standards,'" namely *Illinois Brick*'s bright-line direct-purchaser rule. *Fikes*, 62 F.4th at 716 & n.5 (citation omitted). The Second Circuit approved this Court's finding "that federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees." *Id.* at 716; *see also id.* at 718 (class member is the "direct payor"). Non-direct payors are "by definition excluded from the class and . . . not bound by the settlement." *Id.* at 717.

The Court's holding that Class Counsel represented "only . . . the direct purchaser" and that the Settlement Class was limited to direct purchasers was necessary for the Court and the Second Circuit to conclude that there was "no intra-class conflict or inadequate representation" by Class Counsel—a prerequisite for approval of the Settlement under Rule 23(e)(2)(A)—because it meant that any dispute between franchisors and franchisees as to settlement dollars was not a conflict "between class members, but between entities disputing who has the right to claim class

[1] Defendants have at times argued that even franchisors are indirect purchasers of network services, with acquiring banks being the direct purchasers. *E.g.*, Defs.' Mem. in Support of Defs.' Mot. for S.J. Under *Illinois Brick Co. v. Illinois*, ECF No. 8174. To settle the Rule 23(b) Class case, though, Defendants waived that position, Class Settlement Agreement ¶ 32. In this brief, for clarity, the Old Jericho Plaintiffs therefore use "direct purchaser" as the parties and the courts in this litigation generally have—to indicate the "first payer" or "more direct purchaser" of network services, such as gasoline brands—and "indirect purchaser" to mean all firms downstream of that first payer, such as those brands' branded retailers. Regardless, branded gas retailers remain indirect purchasers for Sherman Act purposes, and thus outside the Settlement Class, even if the brands also are indirect purchasers, as the facts clearly show that branded gas retailers purchase card processing from their brands, and it is the brands who purchase card processing services from acquirers or issuers.

status." *Id.* at 716-17 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 33 (E.D.N.Y. 2019)).

With the Rule 23(b)(3) direct purchaser settlement now in hand, though, Defendants have changed their tune and seek to use a far broader (and previously disavowed and rejected) definition of "accepted" in the Settlement's release to bar the exclusively state law *indirect purchaser* claims brought by the Old Jericho Plaintiffs, gas retailers in *Illinois Brick* repealer states[2] who, as Defendants have effectively admitted in an opt-out case stemming from this very MDL, are "indirect purchasers" who "pay processing fees on card transactions to the oil companies, and not to any bank." Defs.' Opp'n & Cross-Mot. for Partial Summ. J. at 7, 17, *Speedy Stop Food Stores, LLC v. Visa, Inc.*, No. 13-10-75377-A (Victoria Cnty., Tex., 24th Jud. Dist. Feb. 23, 2015) ("Defs.' Speedy Stop Br."). The Old Jericho Plaintiffs believe the indirect purchaser claims will yield a larger recovery for branded gas retailers than the Settlement would, and under long-settled Supreme Court precedent they are free to pursue these claims. *See California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) (permitting indirect purchaser claims under state antitrust laws notwithstanding possibility of "imposing liability in addition to that imposed by federal [antitrust] law").

Defendants' new reading of the settlement agreement not only is directly contrary to their previous position and this Court's and the Second Circuit's holdings but also is contrary to the law of release, which requires both (1) that the supposedly released claims share an identical factual predicate with the settled claims and (2) adequate representation in the settled proceeding of the

[2] *Illinois Brick* repealer states are states that have "passed laws that repealed the holding in *Illinois [Brick Co.] v. Illinois* [], 431 U.S. 720 (1977), and thus grant standing to indirect purchasers bringing antitrust claims." *In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB), 2021 WL 1393336, at *1 (S.D.N.Y. Apr. 13, 2021).

parties sought to be bound by the release. *E.g.*, *Wal-Mart Stores, Inc v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). Sweeping indirect purchasers into the Settlement Class definition at this late date would run afoul of both requirements. In fact, Rule 23(b)(3) Class Counsel explicitly disclaimed representing indirect purchasers, acknowledging that "they represent only . . . the direct purchaser, and not every entity in the payment chain." *Fikes*, 62 F.4th at 716 (citation omitted). And Class Plaintiffs in fact litigated their case on behalf of just direct purchasers—including by settling based in part on the litigation risk that Defendants would prevail on their argument that only acquiring banks are direct purchasers, *see* Class Pls.' Mem. of Law in Supp. of Settlement at 14-15, ECF No. 7469-1—an outcome that would have eviscerated the Settlement Class's federal direct purchaser claims but not affected the Old Jericho Plaintiffs' state law indirect purchaser claims. Federal case law addressing similar facts confirms that, given the lack of adequate representation, a settlement by a direct purchaser class who "had no interest in pursuing indirect claims" cannot bind indirect purchasers proceeding under state law. *City of St. Paul v. FMC Corp.*, Civ. No. 3-89-0466, 1990 WL 265171, at *5 (D. Minn. Feb. 27, 1990).

Thus, as a matter of law, the Old Jericho Plaintiffs are not bound by the Release and are entitled to summary judgment on Defendants' defenses invoking the Release. Any suggestion that summary judgment is inappropriate and instead the claims administrator should determine whether the Old Jericho Plaintiffs are part of the Settlement Class is mistaken. Whether the Old Jericho Plaintiffs are direct or indirect purchasers is a legal question that, in this matter, only the Court, not the claims administrator, is competent to decide. Furthermore, with its timeline and appeals mechanisms, it could take years to decide this question via the claims administration process, prejudicing the Old Jericho Plaintiffs and jeopardizing the viability of this class action. The Court

therefore should grant the Old Jericho Plaintiffs summary judgment on this discrete but critical issue broadly affecting the rights of branded gas retailers in repealer states.

## STATEMENT OF FACTS

### I. <u>The Old Jericho Plaintiffs and Other Branded Gas Retailers Pay Interchange Fees Indirectly Via Their Suppliers</u>

The Old Jericho Plaintiffs are 19 branded gas retailer businesses with operations in 16 *Illinois Brick* repealer states. *See Old Jericho* Am. Compl. ¶¶ 8-26, ECF No. 8058; Pls.' 56.1 Statement of Undisputed Facts ¶ 1 ("SOF"). They have sold branded fuel from gas brands including BP, Cenex, Chevron, Gulf, Phillips 66, Shell, Sinclair, and Sunoco. *See* SOF ¶ 2.

Standard form supply agreements and "card guides" used by the gas brands with their retailers impose binding policies related to credit card acceptance on the retailers, and those policies, along with the Old Jericho Plaintiffs' own agreements with their Suppliers, uniformly reflect that the gas brands process credit card transactions for the retailers and that the retailers pay card processing fees only to their Supplier for these transactions, not to the acquiring bank or an agent thereof. [redacted]

---

[3] Some Old Jericho Plaintiffs have used processors other than their Supplier for certain card transactions involving the sale of goods or services other than branded gas, such as car repair services or unbranded gas. For example, Plaintiff Red Eagle, Inc. has used Elavon, Inc. to process card transactions for car repair services provided by Red Eagle. *See* Ex. 6, Pls.' Resps. to Defs.' First Set of Interrogatories, at 11, 13 (Jan 19. 2024). However, all Old Jericho Plaintiffs use their Suppliers to process card transactions for branded gas sales, and in many cases sales of other goods,

The contracts between branded retailers and their Suppliers show that the retailers are not required to purchase a fixed amount of card processing services, and that the contractually determined processing fee amounts are not expressed in terms of the Suppliers' card processing cost plus a fixed markup. *See* SOF ¶ 10.

Upstream, the gas brands contract with acquiring banks and/or affiliated processors to process the credit and debit card (including Visa and Mastercard) transactions at these retailer locations for the gas brands. [redacted] These contracts require the gas brands to pay processing fees, including interchange fees, on these retail transactions to the banks or their affiliated processors. [redacted], [redacted]

The gas retailers who objected to the Rule 23(b)(3) Class Settlement have confirmed that they purchase credit card processing services from their franchisors. For example, Fikes Wholesale, Inc. has acknowledged that "[t]he Refiners (or their designees) process all payment

---

such as convenience store items. *See id.* at 10-14; SOF ¶ 40. And some Old Jericho Plaintiffs have processed all of their card transactions through their Suppliers. *E.g.*, Decl. of Atul Patel (Mox); Decl. of Hayssam Tohme (OKY); Decls. of David Miller (32T, Chandler). Even for the Old Jericho Plaintiffs who have used processors other than Suppliers for some of their sales, sales processed by their brands make up a large portion of their card sales volume. *E.g.*, Decl. of David Simendinger, at ¶ 10 ("vast majority" of Wesco's credit card sales volume has been processed by its brands); Decl. of Laurence Ancker, at ¶ 10 (Shell has processed "vast majority" of Red Eagle's credit card sales volume); Decl. of Andy Harris (Old Jericho), at ¶ 9 (similar).

card transactions at their respective Fikes Retailer locations." Decl. of Tate A. Seideman ¶ 5, ECF No. 7300-4. Similarly, the principal of Jack Rabbit, LLC and 280 Station LLC has stated that, "[f]ollowing the general trade usage and contractual practice in the industry," for customer purchases made at Jack Rabbit's stores using Visa or Mastercard, "the Supplier receives the money paid for the sale by the customer's issuing bank, less the interchange fee. Then the Supplier pays themselves the wholesale price of the petroleum product owed to the Supplier by the retail marketers, and then pays the money remaining to the retail marketer." Decl. of Jack W. Kidd ¶ 8, ECF No. 7768; *see also* Ex. 7, Oral Argument Tr. at 15:22-16:9, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339-cv(L) (2d. Cir. May 16, 2022) ("2d Cir. Tr.") (similar statement by Jack Rabbit's counsel).

## II. <u>Relevant Procedural History</u>

On December 13, 2019, this Court granted final approval to the Rule 23(b)(3) Class Settlement. Final Approval Order, ECF No. 7818. In doing so, the Court rejected objections by several branded gas retailers that the "the [Settlement's] class definition is too broad and therefore creates an intra-class conflict," including because the Release purported to "encompass and release all antitrust claims" even as "[D]efendants and the Oil Brands have taken the position that the Branded Operators are not the 'direct payors' and do not have standing to pursue claims under the Sherman Act"; that "[i]f it is ultimately determined that the Branded Operators are not Authorized Claimants . . . , the proposed settlement release and class definition are so broad that the Branded Operators' state law indirect purchaser claims would be released, even [though] they would receive no compensation whatsoever"; and that "Class Counsel is not protecting the rights of all class members equally and none of the class representatives has interests that are aligned with the Branded Operators." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-1720, 2019 WL 6875472, at *9 (E.D.N.Y. Dec. 16, 2019) (citation omitted), *aff'd sub*

*nom. Fikes Wholesale, Inc. v. HSBC Bank USA, NA*, 62 F.4th 704 (2d Cir. 2023); *see also id.* at 12 (noting how several gasoline marketer associations joined these objections).

In rejecting these objections, the Court explained that "the class definition is . . . objectively guided by federal antitrust standards, and Class Counsel has stated that in line with federal antitrust law, they represent 'only the first payer, [they] sued for the first payer, the direct purchaser,' and not every entity in the payment chain." *Id.* at 67 (citing Final Approval Hr'g Tr. at 78:9-79:15 (Nov. 7, 2019)). This limitation on the class definition served as the foundation for the Court's conclusions that the definition was sufficiently precise to meet Rule 23's ascertainability standard and that Class Counsel had adequately represented the Class because there was no impermissible intra-class conflict between franchisors and franchisees. *Id.* at 63-67.

At the final approval hearing, Defendants confirmed the Settlement was limited to direct purchasers. Specifically, for example, when asked "[w]ho owns the claim" as between a "branded supplier" of gas and its franchisor, Mastercard's counsel stated that "it's whoever directly pays the fee to the acquirer. That's what I believe the planned administration says fairly read," adding, "it's the first person, the person that paid the fee in the first instance, that's true as a ma[tter] of what the plan of administration says. And I think it's also true as a matter of federal antitrust law. It's the person that paid directly that has the claim." Final Approval Hr'g Tr. at 90:25-91:20 (Nov. 7, 2019).

On appeal from the Court's final approval order, the gas retailers continued to argue these objections. *E.g.*, Branded Operators' Br., *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 20-339-cv(L), (2d Cir. June 30, 2020), ECF No. 155. In response, Defendants continued to maintain that "a franchisor or franchisee that is deemed not to be the appropriate claimant for any of its Visa or Mastercard transactions is not a class member and thus

not bound by the release. If that non-class member has a claim—for example, because it is an indirect payor with a claim under state law—it will retain that claim . . . ." Defs.' 2d Cir. Br. at 42. Defendants further stated: "as the parties have long understood about the settlement, only the merchant that is the more direct payor of the interchange fee can recover . . . . And it is that merchant—and no other—that is encompassed in the class definition." *Id.* at 24. Similarly, at oral argument, Mastercard's counsel told the Second Circuit, "I think one thing that is important to remember is that if, say, a brand operator ultimately turns out not to be able to prevail here, that brand operator is not going to be within the class and as a result is not going to be subject to the releases. And that brand operator will be free to proceed in a separate action. And . . . there is at least one of those separate actions, the Old Jericho case, that is currently proceeding. In our view, that case is a case involving indirect purchaser claims." Ex. 7, 2d Cir. Tr. at 82:15-25; *see also id.* at 84:10-16 ("[T]hese indirect purchaser claims, if they are in fact being brought on behalf of parties that are determined to be indirect purchasers, . . . those parties would not be subject to a release. The releases in this case only govern class members.").

Class Plaintiffs made similar confirmations to the Second Circuit, including in relation to the sole state law claim that the Class Plaintiffs asserted, under California's Cartwright Act:

> [W]e only brought this case on direct payer merchants under federal law. Counsel brought up the Cartwright Act claim . . . . But we brought a nationwide class on behalf of merchants that directly pay the fee. You can't bring a Cartwright Act claim, a California Cartwright Act claim for a nationwide class of indirects. Under the Qualcomm case, you can't bring such a claim.
>
> We did not bring a claim. Indirects are not mentioned at all in our case. We brought the Cartwright Act claim not to cover indirects but to cover the situation that might arise, and actually did here, of a potential conflict with a direct plaintiff claim in California, suing for California residents and suing Visa, which is located in California.

*Id.* at 51:12-52:3. Mastercard's counsel similarly confirmed that "[e]veryone . . . agreed from the outset that this case, including the state law claims under California law, was being brought on behalf of direct purchasers and not indirect purchasers." *Id.* at 73:7-11.

Rejecting the gas retailers' objections, the Second Circuit upheld the Settlement in all relevant respects. The Circuit held that this Court "properly concluded that 'the class definition is . . . objectively guided by federal antitrust standards,'" and upheld this Court's finding "that federal antitrust law clarified that the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees." *Fikes*, 62 F.4th at 716 (citation omitted).

This Court approved the Old Jericho Plaintiffs' request to move for summary judgment on Defendants' affirmative defenses asserting that the Old Jericho Plaintiffs' claims are released by the Settlement. Dec. 11, 2023 Order. At the September 7, 2023 status conference, recognizing the risk that the Settlement claims administration process posed in terms of potentially releasing the claims of the Old Jericho's Plaintiffs and their proposed class, the Court stated it would "try to move" such a motion "to the front of the line." Hr'g Tr. at 35:14-36:1 (Sept. 7, 2023).

## LEGAL STANDARD

"Under Federal Rule of Civil Procedure 56(a), '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 515 (2d Cir. 2023) (quoting Fed. R. Civ. P. 56(a)). The same standard applies to motions for summary judgment to strike affirmative defenses. *See, e.g.*, *Adidas Am., Inc. v. Thom Browne, Inc.*, No. 21-CV-5615 (JSR), 2022 WL 17736799, at *4 (S.D.N.Y. Dec. 16, 2022).

In considering the motion, "the Court may not afford the nonmovant any unreasonable inferences," *Phoenix Ins. Co. v. Hudson Excess Ins. Co.*, No. 21 CIV. 4474, 2023 WL 5048629, at *6 (S.D.N.Y. Aug. 8, 2023) (internal quotation marks and citation omitted), and, indeed,

"[u]nreasonable inferences are insufficient to defeat a motion for summary judgment." *Faust Harrison Pianos Corp. v. Allegro Pianos, LLC*, No. 09 CIV. 6707 ER, 2013 WL 2292050, at *13 (S.D.N.Y. May 24, 2013). Unsupported assertions also are insufficient to defeat summary judgment, *id.* at *7, 13, and the nonmovant's "unsupported factual allegations and innuendos" should not be credited, *Azurite Corp., Ltd. v. Amster & Co.*, 844 F. Supp. 929, 936 (S.D.N.Y. 1994) (Sotomayor, J.), *aff'd*, 52 F.3d 15 (2d Cir. 1995). Summary judgment is proper where "evidence to support [the nonmovant's] case is so slight there is no genuine issue of material fact." *Monachino v. Bair*, 481 F. App'x 20, 21 (2d Cir. 2012) (citation omitted).

## ARGUMENT

### I. <u>The Old Jericho Plaintiffs' Claims Are Not Released by the Rule 23(b)(3) Class Settlement</u>

Defendants' contention that the Settlement releases the claims of the Old Jericho Plaintiffs fails as a matter of law. This Court and the Second Circuit, in rejecting any objections that the Settlement could unfairly release the claims of branded gas retailers while giving them no compensation because they purchased card processing services only indirectly via their gasoline Suppliers, held that the Settlement and its Release bind only direct purchasers of card processing services. This conclusion—with which Defendants and Rule 23(b)(3) Class Plaintiffs explicitly agreed—was necessary to avoid impermissible intra-class conflict between direct and indirect purchasers and because of Class Counsel's frank admission that they "represent only . . . the direct purchaser, and not every entity in the payment chain.". *Fikes*, 62 F.4th at 716 (citation omitted).

There is no genuine dispute that the Old Jericho Plaintiffs—and branded gas retailers in general—are indirect purchasers of card processing services. The governing contracts between gas retailers and their gas suppliers, and the upstream contracts between brands and their payment card processors, demonstrate that the brands contract with acquiring banks for card processing services

and pay interchange fees to the banks, and that the gas retailers in turn purchase card processing services from their Suppliers. No one in this MDL has disputed these facts, and Defendants have affirmatively admitted them in an opt-out case stemming from this MDL. Because the Old Jericho Plaintiffs are indirect purchasers who purchase card processing services from their Suppliers, they are not bound by the Settlement and its Release.

### A. The Settlement Binds Only Direct Purchasers of Card Processing Services

Whatever ambiguity may once have existed in a settlement class definition that turns on whether entities "have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards," Class Settlement Agreement ¶ 4, the matter has been exhaustively litigated and now is settled: "the only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees." *Fikes*, 62 F.4th at 716; *see also id.* at 718 (class member is the "direct payor"). Non-direct payors are "by definition excluded from the class and . . . not bound by the settlement." *Id.* at 717. Defendants' cynical new position that every entity that "accepted" Visa or Mastercard credit cards in a colloquial sense is bound by the Settlement and its Release, "regardless of whether they are indirect purchasers,"[4] thus is flatly contrary to this Court's findings, as affirmed by the Second Circuit, and should be summarily rejected on that basis alone.

### B. Defendants Are Judicially Estopped from Arguing to the Contrary

At every point along the approval process—that is, when they were trying to sell the Settlement to this Court and the Second Circuit—Defendants confirmed that the Settlement was limited to direct purchasers. For example, at the final approval hearing, when asked "[w]ho owns

[4] [redacted]

the claim" as between a "branded supplier" of gas and its franchisor, Mastercard's counsel responded, "it's whoever directly pays the fee to the acquirer," adding, "it's the first person, the person that paid the fee in the first instance, that's true as a ma[tter] of what the plan of administration says. And I think it's also true as a matter of federal antitrust law. It's the person that paid directly that has the claim." Final Approval Hr'g Tr. at 90:25-91:20 (Nov. 7, 2019). And Defendants told the Second Circuit that "as the parties have long understood about the settlement, only the merchant that is the more direct payor of the interchange fee can recover. . . . And it is that merchant—and no other—that is encompassed in the class definition." Defs. 2d Cir. Br. at 24.

Defendants also repeatedly embraced the obvious corollary point that indirect purchasers, such as the Old Jericho Plaintiffs, excluded from the Settlement are not bound by its Release: "a franchisor or franchisee that is deemed not to be the appropriate claimant for any of its Visa or Mastercard transactions is not a class member and thus not bound by the release. If that non-class member has a claim—for example, because it is an indirect payor with a claim under state law—it will retain that claim . . . ." Defs.' 2d Cir. Br. at 42. Similarly, at oral argument, Mastercard's counsel assured the Second Circuit that any branded gas retailer that purchased network services only indirectly through its Supplier "is not going to be within the class and as a result is not going to be subject to the releases. And that brand operator will be free to proceed in a separate action." Ex. 7, 2d Cir. Tr. at 82:15-21. Indeed, Mastercard's counsel even explicitly suggested that these retailers would be able to pursue such claims in the *Old Jericho* action, immediately adding, "And as Mr. Coughlin pointed out, there is at least one of those separate actions, the Old Jericho case, that is currently proceeding. In our view, that case is a case involving indirect purchaser claims . . . ." *Id.* at 82:22-25; *see also id.* at 84:10-16 ("[T]hese indirect purchaser claims, if they are in

fact being brought on behalf of parties that are determined to be indirect purchasers, . . . those parties would not be subject to a release. The releases in this case only govern class members.").

Only after the Settlement was approved have Defendants changed their tune in a shameless attempt to block indirect purchaser claims such as the Old Jericho Plaintiffs' by sweeping them into the Settlement and its Release. Such a bait-and-switch, though, is squarely foreclosed by Supreme Court and Second Circuit precedent: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 742-43 (2001). "This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" or in subsequent litigation. *Id.* at 749 (internal quotation marks and citation omitted). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (quoting *New Hampshire*, 532 U.S. at 750-51). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* "[B]ecause the doctrine is primarily concerned with protecting the judicial process," judicial estoppel applies "when the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (citation omitted). Judicial estoppel also plays an important role

in ensuring the finality of judgments. *See id.* at 118-20 (applying judicial estoppel to bar claim inconsistent with representations plaintiff had made to bankruptcy court that informed bankruptcy judgment).

Courts have specifically applied judicial estoppel in situations just like this one, where defendants successfully sell the court a class action settlement based on specific guarantees as to the limited scope of its release and then turn around and try to enforce the release against the very sorts of claims they said would not be released. *Caudle v. Sprint/United Mgmt. Co.*, No. 17-06874, 2018 WL 6618280, at *6 (N.D. Cal. Dec. 18, 2018) (rejecting defendant's attempted "gimmick" of enforcing prior class action settlement release against claims that defendant had specifically assured court approving settlement would not be released).

The same result is required here. Just as in *Caudle,* Defendants here seek to backtrack on specific guarantees they made to the courts about the scope of the Release in response to concerns raised by the courts (and objectors) about the Release that were highly material to the decision as to whether to approve the Settlement. As shown above, Defendants repeatedly told this Court and the Second Circuit that the Settlement's class definition is guided by "federal antitrust law" and limited to "whoever directly pays the fee to the acquirer," and that "indirect payor[s] with a claim under state law" are "not . . . class member[s]" and are "not bound by the release" and "will retain that claim." Final Approval Hr'g Tr. at 90:25-91:20 (Nov. 7, 2019); Defs.' 2d Cir. Br. at 42. Defendants made these representations—at times directly in response to questioning by this Court and the Second Circuit, as in *Caudle*—specifically in order to rebut objections by branded gas retailers that the Settlement's class definition was impermissibly vague and could unfairly release their claims even if they were deemed to be indirect purchasers downstream from their Suppliers in the card processing supply chain. And this Court and the Second Circuit clearly relied on these

representations, explicitly adopting Defendants' position that the Settlement and Release bind only direct purchasers. *Fikes*, 62 F.4th at 716-18. Indeed, this representation was a critical premise for the courts' conclusion that the Settlement did not suffer from impermissible intra-class conflict. *Id.* at 717-18.

As in *Caudle*, Defendants "would derive an unfair advantage if, having obtained settlement approval in [the Rule 23(b)(3) Class case] by appeasing [this Court's and the Second Circuit's] concerns by representing a narrowed scope of release" preserving indirect purchaser claims, "[they] could successfully assert a *res judicata* defense to bar" those very same indirect purchaser claims. *Caudle*, 2018 WL 6618280 at *7 (internal quotation marks omitted). Thus, as in *Caudle*, Defendants should be judicially estopped from their self-serving "gimmick" of trying to undercut one of the essential premises underlying the Settlement's approval by enforcing the Release against merchants (*i.e.*, branded gas retailers) they assured this Court and the Second Circuit would not be bound thereby. *Id.* at *6.

### C. The Old Jericho Plaintiffs Are Indirect Purchasers of Card Processing Services, and Thus Are Not Bound by the Settlement Release

The undisputed evidence leaves no doubt that branded gas retailers such as the Old Jericho Plaintiffs are indirect purchasers of card processing services. As reflected above, standard form supply agreements and "card guides" used by the gas brands with their retailers, along with the Old Jericho Plaintiffs' own agreements with their Suppliers, uniformly reflect that the gas brands process credit card transactions for the retailers and that the retailers pay card processing fees to the brand, not to the acquiring bank or an agent thereof. [redacted] Upstream, the gas brands contract with acquiring banks and/or affiliated processors to process these card transactions at these retailer locations, and pay interchange and other processing fees to the banks

or processors. [redacted] Thus, these contracts demonstrate that the Old Jericho Plaintiffs (and similarly situated branded gas retailers) purchase card processing services indirectly from their Suppliers. *See also* SOF ¶¶ 12-23.

Defendants have confirmed as much in this MDL, explaining that "[i]n many franchise relationships, the merchant entity that has the relationship with the acquiring bank is the franchisor, even for transactions occurring at the franchisee's stores. In other words, the franchisor—and not the franchisee—pays the merchant discount fee to the acquiring bank for Visa- or MasterCard-branded card transactions occurring at the franchisee's stores." Joint Status Report at 4 (June 20, 2014), ECF No. 6335. They have also affirmatively made the exact point in an opt-out case, stemming from this MDL, brought by several gas retailers that sold branded gas, where Defendants moved for summary judgment against the gas retailers on the ground that they were "indirect purchasers" of card processing services and therefore "lack[ed] standing" under Texas law, which follows *Illinois Brick*'s direct purchaser rule. Defs.' Speedy Stop Br. at 17-18. Defendants wrote that the retailers were "indirect purchasers with respect to Visa and MasterCard transactions at their oil-company-branded locations" because their "contracts with their oil company fuel suppliers . . . make clear that plaintiffs pay processing fees on card transactions to the oil companies, and not to any bank." *Id.* at 7, 17. Defendants even illustrated these relationships with the following graphic, which aptly summarizes the payment card processing supply chain applicable not just to Speedy Stop, but to all branded gas retailers:




*Id.* at 2. Defendants in *Speedy Stop* drew these conclusions based on the same types of evidence that Plaintiffs offer here, including "Plaintiffs['] . . . contracts with their oil company fuel suppliers," the "Card Guide[s]" "incorporate[d]" in "[t]hose contracts," and the oil companies' contracts with acquiring banks. *Id.* at 7-8.

Defendants' concessions in *Speedy Stop* are admissible here as judicial admissions. *See Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37, 38 (S.D.N.Y. 2015) (relying on judicial admissions "made in a prior proceeding" and noting that "[a] court can . . . appropriately treat statements in briefs as binding judicial admissions of fact" (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). And these admissions are indisputably *correct* as to branded gas retailers generally, as shown by the undisputed evidence.[5]

Given the undisputed evidence that branded gas retailers such as the Old Jericho Plaintiffs are indirect purchasers of card processing services who purchase these services from their Suppliers, they cannot be and are not bound by the Rule 23(b)(3) Class Settlement Release.

[5] The contracts between branded retailers and their Suppliers also show that the retailers do not have direct purchaser standing under *Illinois Brick*'s "cost-plus exception." The contracts do not require the retailers to purchase a fixed amount of card processing services, and the processing fee amounts determined by the contracts are not expressed in terms of the Suppliers' card processing cost plus a fixed markup. *See* SOF ¶ 10. For the cost-plus exception to apply, *both* of these things would have to be true. *Simon v. KeySpan Corp.*, 694 F.3d 196, 202 (2d Cir. 2012) (further explaining that the cost-plus exception is a "narrow one that is only appropriate when the contract has removed all doubts about who bore the antitrust injury"). No party or objector in this MDL has introduced any relevant evidence to the contrary.

### D. The Law of Release Confirms That the Old Jericho Plaintiffs, Including "Hybrids," Retain Their Indirect Purchaser Claims

The law of release confirms that the Settlement cannot release the indirect purchaser claims of branded gas retailers. This includes branded retailers who also have ancillary businesses that purchase network services more directly (sometimes referred to in this litigation as "hybrids").

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief[, but] Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Wal-Mart*, 396 F.3d at 106. That is, class action plaintiffs may release claims only if (i) they "share the same integral facts as settled claims" and (ii) "the released claims are adequately represented prior to settlement." *Id.* Here, as confirmed by Class Counsel's explicit statement during the approval process that they represented "only . . . the direct purchaser," Class Counsel did not adequately represent purely indirect purchasers, so the Settlement cannot bind such purchasers, period.

As demonstrated by what appears to be the only federal court decision to have addressed this issue in the context of "hybrid" direct and indirect purchaser antitrust class actions, *St. Paul*, 1990 WL 265171, the same result prevails for those retailers, too. On remarkably similar facts, the *St. Paul* court addressed whether the claims of a class of alleged indirect and "hybrid" purchasers suing under state antitrust laws had been released by a settlement in a related class action concerning the same conduct by the same defendants, brought under the Sherman Act by a class of alleged direct purchasers. *Id.* at *1-3. The broad language of the settlement purported to release, *inter alia*, state law antitrust claims arising out of or related to the subject matter of the direct purchaser case. *Id.* at *2. Similar to the treatment here by Class Counsel, Defendants, the Court, and the Second Circuit, the Settlement Class in the first *St. Paul* action was limited to direct purchasers. Notices sent to the direct purchaser settlement class members stated that "the class

consisted of direct purchasers whose recovery would be apportioned *pro rata* according to the amount of their direct purchases." *Id.* at *3. While a stipulation entered into by defendants and the City of St. Paul—the class representative in the indirect purchaser case—had clearly "preserved indirect-purchaser claims for indirect purchasers," it did not "specifically address how parties with both indirect and direct purchase[s]—like St. Paul—[we]re to be treated." *Id.* Defendants argued that St. Paul, "as a direct-purchaser member of the Philadelphia direct purchaser class, [was] precluded from bringing this action based on the judgments in that case" given the settlement's broad release language. *Id.*

Applying the same "identical factual predicate" and "adequate representation" criteria mandated by *Wal-Mart*, the court rejected that argument and held St. Paul's indirect purchaser claims were not released by the settlement. *Id.* at *4-5. Citing *Illinois Brick*, the court based its conclusion on "the divergence of interests between a direct-purchaser representative and an indirect purchaser claimant," noting that "[t]his divergence of interest is based on the lack of an identical factual predicate. The anticompetitive conduct alleged is identical, but the indirect claims arise out of additional purchases of chlorine and caustic soda further along the distribution chain." *Id.* at *4, 5. Quoting Second Circuit case law, the court emphasized that "special care must be taken to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent 'an advantage to the class . . . by the uncompensated sacrifice of claims of members.'" *Id.* at *5 (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)). As the court explained, "the fact and form of the settlement was determined by a direct purchaser on behalf of direct purchasers resulting in [] pro rata distributions according to each member's direct purchases," such that the "the Philadelphia class representative

had no interest in pursuing indirect claims for those members who were both indirect and direct purchasers, thus diluting its own recovery." *Id.* at *5.

The same logic applies here, as this Court and the Second Circuit have already confirmed. Rule 23(b)(3) Class Counsel admitted that they represented "only . . . the direct purchaser" and not the interests of indirect purchasers, whose claims lack an identical factual predicate with direct purchaser claims because they "arise out of additional purchases of [Visa and Mastercard card processing services] further along the distribution chain." *St. Paul*, 1990 WL 265171, at *5. Moreover, the Rule 23(b)(3) Class's representatives were alleged direct purchasers and at all times exclusively pursued a direct purchaser theory, *see supra* 9-10, and justified their settlement in part based on risks and defenses that indirect purchasers do not even face.[6] Accordingly, it is clear that the Rule 23(b)(3) Class Plaintiffs "had no interest in pursuing indirect claims [and] thus diluting [their] own recovery." *Id.* at *5; *see also Wal-Mart*, 396 F.3d at 111 ("The named plaintiffs in a class action cannot represent a class of whom they are not a part." (internal quotation marks and citation omitted)); *cf. In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011) (class settlement encompassing multiple claims failed for lack of adequate representation where the different claims' values could not "be properly assessed without independent counsel pressing its most compelling case").

Finally, it is worth emphasizing that the Old Jericho Plaintiffs (non-hybrids and hybrids alike) have good reason to believe their indirect purchaser claims are worth more than the

[6] In arguing that "significant risks in establishing liability" justified their settlement result, Class Plaintiffs primarily emphasized Defendants' argument that the Class Plaintiffs lacked standing under *Illinois Brick* because acquiring banks are the only direct purchasers of Defendants' card services. Class Pls.' Mem. of Law in Supp. of Settlement at 14-15, ECF No. 7469-1. But that risk does not exist for indirect purchasers proceeding under state law. Thus, Class Plaintiffs quite clearly bargained away substantial settlement value for risks they faced as direct purchasers, but that indirect purchasers do not.

maximum they could possibly recover from the Settlement Fund, even if their indirect purchaser claims were (wrongly) approved by the claims administrator.[7] Indirect purchasers such as the Old Jericho Plaintiffs should not be bound by a settlement and release negotiated by a class that did not even purport to represent them and that bargained away settlement value for cited litigation risks that indirect purchasers do not even face. And Defendants' turnabout also would prejudice true Settlement Class members by wrongly diluting their recoveries to the extent indirect purchasers were (improperly) paid from the Settlement Fund.

## II. <u>The Court Should Grant Partial Summary Judgment to the Old Jericho Plaintiffs</u>

As set forth above, the Old Jericho Plaintiffs are entitled to a summary judgment holding that the Settlement and Release do not bind them—or similarly situated gas retailers in *Illinois Brick* repealer states. The Old Jericho Plaintiffs should not have to go through or wait for the claims administration process for the Rule 23(b)(3) Class Settlement to obtain this ruling.

Under Rule 56, "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

[7] These claims are worth more for several reasons. First, the enormous Rule 23(b)(3) Class settled their claims for less than 1% of their estimated trebled damages. *See* Class Pls.' Mem. of Law in Supp. of Settlement at 25, n.16, ECF No. 7469-1 (estimating damages at "approaching a trillion dollars after trebling" and noting risks to Class case associated with its "sheer size"). Second, indirect purchasers are not subject to any *Illinois Brick* defense, one of the primary risks that the Rule 23(b)(3) Class faced and cited as justifying their settlement result. *See supra* note 6. Third, following approval of the Settlement, the Court has denied summary judgment on three other key defenses and largely denied Defendants' *Daubert* attacks against the Direct Action Plaintiffs and Equitable Relief Class. Mem. & Order, ECF No. 9042 (denying Defendants' motions for summary judgment under *Ohio v. Amex* and Mastercard's motion for summary judgment concerning market power); Mem. & Order at 42-57, ECF No. 9140 (denying Defendants' motion for summary judgment as to post-IPO conspiracy claims); ECF Nos. 8727, 8728, 8730 (largely denying Defendants' *Daubert* motions). These rulings concern issues that (unlike *Illinois Brick*) may apply to the *Old Jericho* case (and that the Rule 23(b)(3) Class also cited as major risks to their case). These recent rejections of key defense theories represent significant developments that enhance the value of the *Old Jericho* claims compared to the valuation calculus the Rule 23(b)(3) Class faced when they settled.

law." Fed. R. Civ. P. 56(a) (emphasis added). Recognizing the risk that the Settlement claims administration process posed in terms of potentially releasing the claims of the Old Jericho Plaintiffs and their proposed class, the Court has stated that it will "try to move" the Old Jericho Plaintiffs' summary judgment motion "to the front of the line." Hr'g Tr. 35:14-36:1 (Sept. 7, 2023).

The same considerations previously raised by the Old Jericho Plaintiffs, *see* Letter Br., ECF No. 9002, continue to necessitate a prompt summary judgment ruling on this issue. The Claims Administrator is not equipped to determine whether branded gas retailers such as the Old Jericho Plaintiffs are excluded from the Settlement Class because the gas brands are the more direct purchaser. The Settlement's Plan of Administration and Distribution includes procedures to be used by the Claims Administrator to estimate "the amount of Interchange Fees Paid" by Claimants, but no procedures to determine whether Claimants are direct or indirect purchasers. *See* Class Settlement Agreement, Appendix I. The Claims Administrator appears to lack any ability, through the transactional data available to it or otherwise, to determine whether a claimant is the more direct purchaser of card processing services or purchased those services through, for example, a gas brand.[8] Even if the Claims Administrator had access to the necessary contracts and other information, the determination that branded gas retailers such as the Old Jericho Plaintiffs are indirect purchasers and thus excluded from the Settlement Class is a largely legal conclusion that the Claims Administrator cannot make.[9] *See* Mem. & Order, ECF No. 9140 (*Illinois Brick*

---

[8] Currently, the Claims Administrator appears to be sending Claims Forms to every merchant who honored Visa- or Mastercard-brand credit or debit cards as a form of payment during the Class Period, regardless of whether the merchant should be considered a direct or indirect purchaser.

[9] Indeed, in response to the Old Jericho Plaintiffs' subpoena seeking documents and data from the Claims Administrator about the criteria it will use to determine membership in the Settlement Class, the Claims Administrator conceded it "is not qualified to provide" "legal conclusions or opinions of law," and insisted during the meet and confer process that it will not make any legal conclusions as part of the Claims Administration process. Ex. 13, Non-Party Epiq Class Actions & Claim Solutions, Inc.'s Resps. & Objs. to Pls.' Subpoena Requesting Prod. of Docs., at 4.

standing is a "matter of law" and "a mixed question of law and fact"). The current procedures to be followed by the Claims Administrator threaten to wrongly determine branded gas retailers in the repealer states to be members of the Settlement Class and release their indirect-purchaser claims[10] while diluting proper claimants—an outcome the limited intervention rights granted to the Old Jericho Plaintiffs in the Special Master process (*see* Minute Entry Order (Sept. 8, 2023), ECF No. 8922) are likely inadequate to prevent.

Moreover, until there has been a definitive adjudication that branded gas retailers are indirect purchasers not subject to the Release, even gas retailers who do not submit claims could face arguments that they are subject to the wavier provisions of the Class Settlement, essentially creating an artificial hurdle to class certification. *See* Class Settlement Agreement ¶¶ 31-32. This is a potentially debilitating uncertainty for the *Old Jericho* case, as the claims administration process and related appeals could take years and are unlikely to resolve this issue globally. And there is no basis for imposing such a delay. Faced with the clear evidence described above, and despite having been involved in this litigation since its inception in 2005, Defendants cannot point to any evidence that the claims administrator "should consider" of even one instance of a branded retailer directly paying interchange fees on the sale of branded gas.

In short, granting summary judgment without waiting for the claims administration process is the only way to ensure a timely and correct determination by the proper authority on Defendants' release defense, a critical gating issue in this class action.

---

[10] The Old Jericho Plaintiffs do not concede that a mere determination by the Claims Administrator that a branded gas retailer may recover from the Settlement Fund, and/or payment on that claim, would release that retailer's indirect purchaser claims. Only a court has the power to rule that claims have been released. However, Defendants would undoubtedly argue those claims had been released and would cite the retailer's payout from the Settlement Fund in support.

## CONCLUSION

For the reasons stated above, the Court should rule on summary judgment that the Old Jericho Plaintiffs' claims are not barred by the Release.

February 26, 2024

Respectfully submitted,

*/s/ Christopher J. Bateman*

Christopher J. Bateman
Sharon Robertson
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street
New York, NY 10005
(212) 838-7797
(212) 838-7745
cbateman@cohenmilstein.com
srobertson@cohenmilstein.com

Benjamin D. Brown
Richard A. Koffman
Matthew S. Wild
Laura Gevarter Kennedy (*pro hac vice* forthcoming)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
(202) 408-4600
(202) 408-4699
bbrown@cohenmilstein.com
rkoffman@cohenmilstein.com
mwild@cohenmilstein.com
lgevarter@cohenmilstein.com

Manuel J. Dominguez
COHEN MILSTEIN SELLERS & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Garden, FL 33408
(561) 515-2604
(561) 515-1401
jdominguez@cohenmilstein.com

Robert W. Cohen
LAW OFFICES OF ROBERT W. COHEN, P.C.
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel: (310) 282-7586

Fax: (310) 282-7589
rwc@robertwcohenlaw.com

Tracey Kitzman
SONG P.C.
26 Broadway, Fl 8
New York, NY 1000
Tel: 212-599-0700

*Attorneys for Old Jericho Plaintiffs*