**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**<br><br>**This Document Applies to:** | **No. 05-md-01720 (MKB) (JAM)** |
| ***Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.***, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM), also now known as ***DDMB, Inc., et al. v. Visa, Inc., et al.***, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM). | |

**CLASS SETTLEMENT AGREEMENT OF THE**
**RULE 23(b)(2) CLASS PLAINTIFFS AND THE DEFENDANTS**

**Table of Contents**

**Page**

Preamble ......................................................................................................  1

Definitions ...................................................................................................  6

Effective Date .............................................................................................  15

Rule 23(b)(2) Class .....................................................................................  16

Rule 23(b)(2) Class Settlement Escrow Account ......................................  16

Payments to the Rule 23(b)(2) Class Settlement Escrow Account ...........  17

Consideration Provided to Members of the Rule 23(b)(2) Class ..............  21

Consideration Provided by the Visa Defendants ......................................  21

Limitations on Consideration Provided by the Visa Defendants ..............  41

Consideration Provided by the Mastercard Defendants ............................  41

Limitations on Consideration Provided by the Mastercard Defendants ....  61

Release and Covenant Not to Sue of the Rule 23(b)(2) Class ..................  62

Motion for Approval of this Rule 23(b)(2) Class Settlement Agreement ..  71

Rule 23(b)(2) Class Settlement Notice and Objections ............................  76

Termination .................................................................................................  78

Continuing Court Supervision and Jurisdiction ........................................  80

Additional Terms and Conditions ..............................................................  82

APPENDIX A – Actions in MDL 1720 ....................................................  A-1

APPENDIX B – Rule 23(b)(2) Class Settlement Escrow Agreement .......  B-1

APPENDIX C – Notice Plan ......................................................................  C-1

APPENDIX D – Rule 23(b)(2) Class Notices ...........................................  D-1

APPENDIX E – Rule 23(b)(2) Class Settlement Notice and Scheduling Order ...................  E-1

APPENDIX F – Rule 23(b)(2) Class Settlement Order and Final Judgment ......................... F-1

APPENDIX G – Section IV of Final Judgment in *United States v. American Express, et al.*,

No. 10-CV-04496 (E.D.N.Y.) (NGG) (RER), as modified ................................................... G-1

APPENDIX H – Counsel Names and Contact Information ................................................... H-1

APPENDIX I – Visa Applicable Credit Interchange Rates as of December 31, 2023 ........... I-1

APPENDIX J – Mastercard Applicable Credit Interchange Rates as of December 31, 2023 . J-1

## CLASS SETTLEMENT AGREEMENT OF THE
## <u>RULE 23(b)(2) CLASS PLAINTIFFS AND THE DEFENDANTS</u>

Subject to the approval of the Court, and as further set forth below, this Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants (the "Rule 23(b)(2) Class Settlement Agreement") is made as of the 25th day of March, 2024, by and between the Rule 23(b)(2) Class Plaintiffs defined below, individually and as representatives of the Rule 23(b)(2) Class defined below, the Rule 23(b)(2) Class Counsel defined below, the Visa Defendants defined below, and the Mastercard Defendants defined below.

WHEREAS, on June 22, 2005, Photos Etc. Corporation, Traditions Ltd., CHS Inc., and other plaintiffs filed a class action complaint captioned *Photos Etc. Corp., et al. v. Visa U.S.A. Inc., et al.*, No. 05-cv-01007 (D. Conn.);

WHEREAS, the *Photos Etc. Corp.* action was subsequently consolidated for pretrial proceedings with additional putative class actions and individual plaintiff actions alleging similar or identical claims, in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-01720 (E.D.N.Y.);

WHEREAS, certain class plaintiffs and defendants entered into a Definitive Class Settlement Agreement, which was filed with the Court on October 19, 2012, and which sought certification of settlement classes under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2);

WHEREAS, the Court preliminarily and finally approved the Definitive Class Settlement Agreement in orders filed on November 27, 2012 and December 13, 2013, and certified a settlement class under Federal Rule of Civil Procedure 23(b)(3) from which opt-outs were permitted and a settlement class under Federal Rule of Civil Procedure 23(b)(2) from which opt-outs were not permitted;

WHEREAS, on June 30, 2016, the United States Court of Appeals for the Second Circuit vacated the Court's class certification and approval of the Definitive Class Settlement Agreement;

WHEREAS, on November 30, 2016, the Court appointed the law firms of Robins Kaplan LLP, Berger Montague PC, and Robbins Geller Rudman & Dowd LLP to be interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23(b)(3), and appointed Hilliard & Shadowen LLP, Grant & Eisenhofer P.A., Freed Kanner London & Millen LLC, and The Nussbaum Law Group, P.C. to be interim co-lead counsel for a putative class of plaintiffs seeking class certification pursuant to Federal Rule of Civil Procedure 23(b)(2);

WHEREAS, on or about March 31, 2017, interim co-lead counsel for the putative Rule 23(b)(2) class, on behalf of named class plaintiffs that were not signatories to the Definitive Class Settlement Agreement, filed an action captioned *Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.) ("*Barry's*"), in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-01720 (E.D.N.Y.), which sought certification of a class pursuant only to Federal Rule of Civil Procedure 23(b)(2);

WHEREAS, on October 27, 2017, class plaintiffs that were signatories to the Definitive Class Settlement Agreement filed a Third Consolidated Amended Class Action Complaint, which sought certification of a class pursuant only to Federal Rule of Civil Procedure 23(b)(3);

WHEREAS, class plaintiffs and defendants entered into a Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants, which was filed with the Court on September 18, 2018, which excluded from its release claims

2

reflecting class members' participation in *Barry's* solely as to the injunctive relief claims alleged in that action;

WHEREAS, the Court preliminarily and finally approved the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants in orders filed on January 24 and December 13, 2019, and certified a settlement class under Federal Rule of Civil Procedure 23(b)(3) from which opt-outs were permitted;

WHEREAS, on March 15, 2023, the Second Circuit Court of Appeals affirmed the Court's approval of the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants;

WHEREAS, on September 27, 2021, on the motion of the class plaintiffs in *Barry's*, the Court certified a class under Federal Rule of Civil Procedure 23(b)(2) from which opt-outs were not permitted;

WHEREAS, in their complaint, the Rule 23(b)(2) Class Plaintiffs in *Barry's* allege that the Visa Defendants and the Mastercard Defendants defined below separately engaged in conduct in violation of the Sherman Act (15 U.S.C. § 1 *et seq.*) and state antitrust law, alleging that those Defendants each adopted interchange rules and rates, and other network rules, which constituted unlawful price fixing and unreasonable restraints of trade, and monopolization, and which allegedly injured class plaintiffs in accepting Visa-Branded Cards and Mastercard-Branded Cards as payment for goods or services;

WHEREAS, Rule 23(b)(2) Class Plaintiffs and Rule 23(b)(2) Class Counsel have analyzed and conducted substantial discovery, including obtaining and analyzing more than 60 million pages of documents and reviewing transcripts of and participating in more than 550 depositions, and have carefully investigated and analyzed the facts and underlying events relating to the subject matter of their claims and the applicable legal principles;

WHEREAS, as a result of arm's-length negotiations over several years, including numerous mediation sessions before Professor Eric Green, Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants have entered in this Rule 23(b)(2) Class Settlement Agreement;

WHEREAS, the Rule 23(b)(2) Class Plaintiffs and Rule 23(b)(2) Class Counsel have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens, and costs of further prosecution of their claims, and taking into account the substantial benefits to be received by the Rule 23(b)(2) Class as defined below pursuant to this Rule 23(b)(2) Class Settlement Agreement, and for the purpose of putting to rest all injunctive and related declaratory relief claims that were or could have been alleged in *Barry's*, that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Rule 23(b)(2) Class, and will improve competition;

WHEREAS, the Visa Defendants and Mastercard Defendants, for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing to litigate the Rule 23(b)(2) Class Plaintiffs' claims, and for the purpose of putting to rest all injunctive and related declaratory relief claims with the Rule 23(b)(2) Class Plaintiffs and the Rule 23(b)(2) Class that were or could have been alleged in *Barry's*, desire to enter into this Rule 23(b)(2) Class Settlement Agreement;

WHEREAS, the Rule 23(b)(2) Class Plaintiffs and their experts have contended that, even with effective reform of the Rules challenged in this Action, "the [competitive] adjustment will still require a significant period of time to reach the new more competitive equilibrium," and that during this period of time "[i]t will be necessary for the Court to supervise the implementation of the maximum merchant fees."  Expert Report of Joseph E. Stiglitz (Oct. 5, 2018) ¶¶ 170, 173;

WHEREAS, the Defendants deny the allegations in the preceding paragraph, but in order to put to rest all injunctive and related declaratory relief claims with the Rule 23(b)(2) Class Plaintiffs and the Rule 23(b)(2) Class that were or could have been alleged in *Barry's*, the Visa Defendants and Mastercard Defendants have agreed to the terms of this Rule 23(b)(2) Class Settlement Agreement;

WHEREAS, it is agreed that this Rule 23(b)(2) Class Settlement Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by any of the Defendants, any of the Rule 23(b)(2) Class Released Parties defined below, or any of their alleged co-conspirators, or of the truth of any of the claims that the Rule 23(b)(2) Class Plaintiffs have asserted; and

WHEREAS, Rule 23(b)(2) Class Counsel represent and warrant that they are fully authorized to enter into this Rule 23(b)(2) Class Settlement Agreement on behalf of the Rule 23(b)(2) Class Plaintiffs, and have consulted with and confirmed that all Rule 23(b)(2) Class Plaintiffs fully support and have no objection to this Rule 23(b)(2) Class Settlement Agreement;

NOW, THEREFORE, without any admission or concession by the Rule 23(b)(2) Class Plaintiffs of any lack of merit to their allegations and claims, and without any admission or concession by the Defendants of any liability, wrongdoing, or lack of merit in their defenses, in consideration of the mutual covenants and terms contained herein, and subject to the approval of the Court, the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants agree as follows:

**Definitions**

1.      For the purposes of this Rule 23(b)(2) Class Settlement Agreement, the following words and terms shall be defined to have the meanings set forth below, and all undefined words and phrases shall have their usual and customary meaning.

(a)      "Action," "this Action," or "MDL 1720" means all actions that are consolidated for pretrial proceedings in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-01720 (E.D.N.Y.), including without limitation *Barry's* and the Actions listed in Appendix A hereto.

(b)      "Applicable Domestic Credit Transactions" include all U.S. domestic Credit Card transactions (*i.e.*, transactions on U.S.-issued Credit Cards that are acquired at merchant locations in the U.S., including, *e.g.*, Consumer Credit, Small Business Credit, Large and Middle Market Corporate Credit) subject to the Visa Defendants' or Mastercard Defendants' "Honor All Cards" Rule, except that for the posted rate reductions and posted rate caps referenced in Paragraphs 34-35 and 66-67 below, "Applicable Domestic Credit Transactions" shall include only rates applicable to (i) Credit Card transactions issued in and acquired at merchant locations in the 50 states of the U.S. and the District of Columbia, and (ii) Credit Card transactions issued in and acquired at merchant locations in Puerto Rico.  "Applicable Domestic Credit Transactions" shall not include transactions in any channel in which merchant acceptance of a Credit Card is exclusive.  Transactions on any existing Credit Cards subject to a network's "Honor All Cards" Rule are included in Applicable Domestic Credit Transactions regardless of any future change to their inclusion within that Rule.  Transactions on any existing Credit Cards, or any new Credit Cards created in the future, that are not subject to a network's "Honor All Cards" Rule, and for which merchant acceptance of such product or service is optional, are not Applicable Domestic Credit Transactions.  By way of example, current optional Credit Card

acceptance products or services include (i) Visa's Commercial Choice Program, in which acceptance is optional and the merchant or supplier and cardholder or buyer must agree to the applicable interchange rate; (ii) Visa's Installment Service, in which a merchant must choose to opt-in to participate in the service; (iii) Mastercard's Buy Now Pay Later Installments Program, in which merchant acceptance is optional; (iv) Mastercard's Variable Interchange Programs, in which merchant acceptance is optional; and (v) Mastercard's IRD TK Commercial Interchange Program, which is Mastercard's optional interchange rate designator program for commercial products associated with negotiated interchange rates that are agreed between issuers and acquiring processors or merchants.

(c)     "Attorneys' Fees and Expenses" means all attorneys' fees and all costs and expenses, including any fees and costs for experts and consultants, and including any incentive or service awards to be paid to a Rule 23(b)(2) Class Plaintiff, that the Court awards to Rule 23(b)(2) Class Counsel or Rule 23(b)(2) Class Plaintiffs for work performed for the benefit of members of the Rule 23(b)(2) Class.

(d)     "Bank Defendants" means Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; Barclays Bank plc; Barclays Bank Delaware (formerly known as Juniper Bank); Barclays Financial Corp. (formerly known as Juniper Financial Corporation); Capital One Bank (USA), N.A.; Capital One, N.A. (as successor to Capital One F.S.B.); Capital One Financial Corporation; JPMorgan Chase Bank, N.A. (and as successor to Chase Bank USA, N.A. (and as successor to Chase Manhattan Bank USA, N.A.) and Washington Mutual Bank); Paymentech, LLC (as successor to Chase Paymentech Solutions, LLC); JPMorgan Chase & Co. (and as successor to Bank One Corporation and Bank One Delaware, N.A.); Citibank, N.A. (and as successor to Citibank (South

7

Dakota), N.A.); Citibank, N.A.; Citicorp LLC (as successor to Citicorp); and Wells Fargo & Company (and as successor to Wachovia Bank N.A.).

(e)     "*Barry's*" or "*Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*" means *Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.) (also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.)).

(f)     "Case Website" means the website established for the purposes of this Action, which is described in Appendix C below.

(g)     "Class Administrator" means Epiq Systems, Inc., which shall effectuate and administer the Notice Plan, and which firm is unrelated to and independent of the Rule 23(b)(2) Class Plaintiffs and the Defendants within the meaning of Treasury Regulations § 1.468B-1(d) and § 1.468B-3(c)(2)(A).

(h)     "Class Objection Period" means the period in which an Objector must file any objections to this Rule 23(b)(2) Class Settlement Agreement, which period is specified in Paragraph 92(f)(ii) below.

(i)     "Court" means the United States District Court for the Eastern District of New York.

(j)     "Credit Card" means any card, plate, or other payment code, device, credential, account, or service, even where no physical card is issued and the code, device, credential, account, or service is used for only one transaction or multiple transactions — including, without limitation, a plastic card, a mobile telephone or other mobile communications device, a fob, a home assistant or other internet-connected device, or any other current or future code, device, credential, account, or service by which a person, business, or other entity can pay for goods or services — that is issued or approved for use through a payment network and that

may be used to access a line of credit or otherwise defer payment of debt or incur debt and defer its payment, including cards commonly known as credit cards, charge cards, commercial credit cards, corporate credit cards, fleet cards, or purchasing cards.

(k)     "Debit Card" means any card, plate, or other payment code, device, credential, account, or service, even where no physical card is issued and the code, device, credential, account, or service is used for only one transaction or multiple transactions — including, without limitation, a plastic card, a mobile telephone or other mobile communications device, a fob, a home assistant or other internet-connected device, or any other current or future code, device, credential, account, or service by which a person, business, or other entity can pay for goods or services — that is issued or approved for use through a payment network to debit an asset or deposit account, or that otherwise is not a Credit Card, regardless of whether authentication is based on signature, personal identification number (or PIN), or other means (or no means at all), and regardless of whether or not the issuer holds the account (such as decoupled debit), including cards commonly known as signature or offline debit cards, PIN or online debit cards, gift cards, or other prepaid cards.

(l)     "Defendants" means the Visa Defendants, the Mastercard Defendants, and the Bank Defendants.

(m)     "Effective Date" means the date on which this Rule 23(b)(2) Class Settlement Agreement becomes effective as provided in Paragraph 2 below.

(n)     "Effective Interchange Rate" means all network-set default interchange fees (without regard to any network assessments or fees) assessed to acquirers in connection with Visa-Branded Credit Card or Mastercard-Branded Credit Card transactions authorized, cleared, and settled by the Visa Defendants or the Mastercard Defendants, respectively, including any individually-negotiated interchange reductions implemented as a result of an agreement between

the network and a merchant, divided by the sales volume of the corresponding transactions.  The "Effective Interchange Rate" is calculated net of returns and chargebacks.  As to Visa-Branded Credit Card or Mastercard-Branded Credit Card transactions involving individually-negotiated interchange reductions or rebates implemented as a result of an agreement between an issuer and a merchant or its acquirer, the "Effective Interchange Rate" is calculated using the network-set default interchange fees corresponding to those transactions.

(o)     "Independent Auditor" means the independent-third party auditor selected by the Rule 23(b)(2) Class Counsel to undertake the activities described in Paragraphs 33, 36-37, 65, and 68-69 below.

(p)     "Independent Auditor Expenses" means any expenses that the Court awards for the Independent Auditor to undertake the activities described in Paragraphs 33, 36-37, 65, and 68-69 below.

(q)     "Mastercard-Branded Card" means any Credit Card or Debit Card that bears or uses the name Mastercard, Maestro, Cirrus, or any other brand name or mark owned or licensed by a Mastercard Defendant, or that is issued under any such brand or mark.

(r)     "Mastercard Defendants" or "Mastercard" means Mastercard International Incorporated and Mastercard Incorporated, and each of their respective subsidiaries, successors, purchasers, and assigns (including an acquirer of all or substantially all of their respective assets, stock, or other ownership interests).

(s)     "Merchant Education Expenses" means any expenses that the Court awards for education of members of the Rule 23(b)(2) Class as provided in Paragraphs 40-43 and 72-75 below.

(t)     "Merchant Fee" means any amount that reduces from the face amount of a transaction the funds that a merchant receives in the settlement of a Credit Card or Debit Card

transaction, or is otherwise charged to or paid by a merchant, or any interchange fee, network fee or assessment, or acquirer, issuer, or processor fee, including Visa's Fixed Acquirer Network Fee.

(u)    "Notice Costs" means any expenses that the Court awards for providing notice of this Rule 23(b)(2) Class Settlement Agreement to the Rule 23(b)(2) Class.

(v)    "Notice Plan" means the plan for providing notice of the *Barry's* action and this Rule 23(b)(2) Class Settlement Agreement to members of the Rule 23(b)(2) Class, which is contained in Appendix C hereto.

(w)    "Objector" means any person or entity with legal standing to object and that timely and properly submits a legally-cognizable objection to this Rule 23(b)(2) Class Settlement Agreement in the manner provided in Paragraph 99 below.

(x)    "Paragraph" or "Paragraphs" means one or more paragraphs of this Rule 23(b)(2) Class Settlement Agreement.

(y)    "Rule" means any rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card or any Mastercard-Branded Card.

(z)    "Rule 23(b)(2) Class Counsel" means Hilliard & Shadowen LLP, Grant & Eisenhofer P.A., Freed Kanner London & Millen LLP, and Nussbaum Law Group, P.C., which were appointed co-lead Rule 23(b)(2) Class Counsel in the Court's Memorandum and Order filed in this Action on September 27, 2021.

(aa)    "Rule 23(b)(2) Class Plaintiffs" means Boss Dental Care; Runcentral, LLC; CMP Consulting Serv., Inc.; Generic Depot 3, Inc. (doing business as Prescription Depot); and PureOne, LLC (doing business as Salon Pure).

(bb)   "Rule 23(b)(2) Class Settlement Agreement" means this Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants, including all of its Appendices.

(cc)   "Rule 23(b)(2) Class Settlement Escrow Account" means the bank account established pursuant to the escrow agreement in Appendix B hereto, as provided in Paragraph 4 below.

(dd)   "Rule 23(b)(2) Class Escrow Agent" means The Huntington National Bank, which shall maintain, administer, and make payments from the Rule 23(b)(2) Class Settlement Escrow Account as provided in this Rule 23(b)(2) Class Settlement Agreement and Appendix B, and which shall be unrelated to and independent of the Rule 23(b)(2) Class Plaintiffs and the Defendants within the meaning of Treasury Regulations § 1.468B-1(d) and § 1.468B-3(c)(2)(A).

(ee)   "Rule 23(b)(2) Class" means the class certified by the Court's order dated September 27, 2021 (ECF No. 8647), which consists of all persons, businesses, and other entities that accept Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time during the period between December 18, 2020 and the date of entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment, and from which no exclusions are permitted.

(ff)   "Rule 23(b)(2) Class Settlement Notice and Scheduling Order" means the Court's order providing for Notice to the Rule 23(b)(2) Class and setting forth a schedule for an approval hearing on this Rule 23(b)(2) Class Settlement Agreement, which is described in Paragraph 92 below and is in substantially the form contained in Appendix E hereto.

(gg)   "Rule 23(b)(2) Class Settlement Order and Final Judgment" means the Court's order approving this Rule 23(b)(2) Class Settlement Agreement and the final judgment

dismissing *Barry's* with prejudice, which is described in Paragraph 93 below and is in substantially the form contained in Appendix F hereto.

(hh)    "Rule 23(b)(2) Class Released Parties" means the persons, businesses, or other entities described in Paragraph 81 below.

(ii)    "Rule 23(b)(2) Class Releasing Parties" means the persons, businesses, or other entities described in Paragraph 80 below.

(jj)    "Rule 23(b)(2) Class Notices" means the website and publication notices concerning the *Barry's* action and this Rule 23(b)(2) Class Settlement Agreement to be provided to members of the Rule 23(b)(2) Class, which are in substantially the form(s) contained in Appendix D hereto.

(kk)    "Settlement Approval Date" means the business day after all of the following conditions have been satisfied:  (i) notice of this Rule 23(b)(2) Class Settlement Agreement has been provided to the members of the Rule 23(b)(2) Class as provided in Paragraphs 95-99 below and ordered by the Court; and (ii) the Court has entered the Rule 23(b)(2) Class Settlement Order and Final Judgment without substantial modification from the form contained in the attached Appendix F, including without modification of the definition of the Rule 23(b)(2) Class (from which exclusions are not permitted), and including without any modification of the release and covenant not to sue provided by the Rule 23(b)(2) Class.

(ll)    "Settlement Final Date" means the business day after all of the following conditions have been satisfied:  (i) all conditions for the Settlement Approval Date have been satisfied; (ii) the Court has entered the Rule 23(b)(2) Class Settlement Order and Final Judgment without substantial modification from the form contained in the attached Appendix F, including without modification of the definition of the Rule 23(b)(2) Class (from which exclusions are not permitted), and including without any modification of the release and covenant not to sue

13

provided by the Rule 23(b)(2) Class; (iii) in the event that there is an appeal from the Court's Rule 23(b)(2) Class Settlement Order and Final Judgment, it is affirmed without substantial modification, including without modification of the definition of the Rule 23(b)(2) Class (from which exclusions are not permitted), and including without modification of the release and covenant not to sue provided by the Rule 23(b)(2) Class; and (iv) the Rule 23(b)(2) Class Settlement Order and Final Judgment is no longer subject to further court review by rehearing, appeal, petition for certiorari, or otherwise.  The Rule 23(b)(2) Class Settlement Order and Final Judgment shall be deemed to be no longer subject to further court review either (x) seventy-five days after the Rule 23(b)(2) Class Settlement Order and Final Judgment has been entered by the Court if no notice, motion, or other document is filed within that time seeking any rehearing, reconsideration, vacatur, review, appeal, or any other action regarding the Rule 23(b)(2) Class Settlement Order and Final Judgment or this Rule 23(b)(2) Class Settlement Agreement, or (y) if any such notice, motion, or document is filed, then ten business days after the date on which all appellate and/or other proceedings resulting from any such notices, motions, or documents have been finally terminated or resolved without modification of the Rule 23(b)(2) Class Settlement Order and Final Judgment or this Rule 23(b)(2) Class Settlement Agreement and in such a manner as to permit no further judicial action, challenge, modification, or review of the Rule 23(b)(2) Class Settlement Order and Final Judgment or this Rule 23(b)(2) Class Settlement Agreement.

(mm)   "United States" or "U.S." means all the States, territories, and possessions of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any political subdivision of the foregoing.

(nn)    "Visa-Branded Card" means any Credit Card or Debit Card that bears or uses the name Visa, Plus, Interlink, or any other brand name or mark owned or licensed for use by a Visa Defendant, or that is issued under any such brand or mark.

(oo)    "Visa Defendants" or "Visa" means Visa Inc., including Visa U.S.A. Inc. and Visa International (also known as Visa International Service Association), and each of their respective subsidiaries, successors, purchasers, and assigns (including an acquirer of all or substantially all of their respective assets, stock, or other ownership interests).

**Effective Date**

2.    This Rule 23(b)(2) Class Settlement Agreement shall become effective on the business day on which all of the following conditions have been satisfied (the "Effective Date"):

(a)    this Rule 23(b)(2) Class Settlement Agreement has been approved by the Board of Directors of each of the Visa Defendants and, in relevant part, by the requisite vote of the members of Visa U.S.A. Inc. entitled to vote thereon;

(b)    this Rule 23(b)(2) Class Settlement Agreement has been approved by the Mastercard Defendants and, in relevant part, by the Bank Defendants in accordance with the agreement among themselves;

(c)    the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants have executed this Rule 23(b)(2) Class Settlement Agreement;

(d)    the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants have established the Rule 23(b)(2) Class Settlement Escrow Account; and

(e)    the Court has entered the Rule 23(b)(2) Class Settlement Notice and Scheduling Order without material modification from the form of the attached Appendix E.

**Rule 23(b)(2) Class**

3.        The Rule 23(b)(2) Class Plaintiffs and Defendants stipulate and agree that, in paragraph 49 of the Complaint in *Barry's*, the definition of the Class is amended to be the same as the Rule 23(b)(2) Class, and that the Rule 23(b)(2) Class Plaintiffs will seek an Order from the Court approving this Rule 23(b)(2) Class Settlement Agreement, that so amends the Complaint.

**Rule 23(b)(2) Class Settlement Escrow Account**

4.        Within seven business days after the execution of this Rule 23(b)(2) Class Settlement Agreement:

(a)        The Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants shall establish the Rule 23(b)(2) Class Settlement Escrow Account pursuant to the terms of the escrow agreement provided in Appendix B hereto.  Funds in the Rule 23(b)(2) Class Settlement Escrow Account shall be invested solely as provided in Appendix B hereto.  The Rule 23(b)(2) Class Plaintiffs and Defendants agree that the Rule 23(b)(2) Class Settlement Escrow Account is intended to be and shall be treated as a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and any analogous local, state, and/or foreign statute, law, regulation, or rule.  No signature or approval from the Visa Defendants or the Mastercard Defendants shall be required for disbursement from the Rule 23(b)(2) Class Settlement Escrow Account.

(b)        Rule 23(b)(2) Class Counsel and the Rule 23(b)(2) Class Escrow Agent shall provide counsel for the Visa Defendants and the Mastercard Defendants with the wire payment information, ACH payment information, taxpayer identification number, and Form W-9 for the Rule 23(b)(2) Class Settlement Escrow Account.  Rule 23(b)(2) Class Counsel also will provide promptly thereafter any additional information that counsel for the Visa Defendants, the

Mastercard Defendants, or the Bank Defendants may reasonably request in order to facilitate a wire or ACH transfer to the Rule 23(b)(2) Class Settlement Escrow Account.

5.      Rule 23(b)(2) Class Counsel and Rule 23(b)(2) Class Plaintiffs hereby assign all rights to any Notice Costs, Attorneys' Fees and Expenses, Independent Auditor Expenses, and Merchant Education Expenses to the Rule 23(b)(2) Class Settlement Escrow Account.

6.      In no event shall any Defendant or any other Rule 23(b)(2) Class Released Party have any obligation, responsibility, or liability arising from or relating to the administration, maintenance, preservation, investment, use, allocation, adjustment, distribution, disbursement, or disposition of any funds in the Rule 23(b)(2) Class Settlement Escrow Account.  Nor shall any Defendant or any other Rule 23(b)(2) Class Released Party have any right to any interest or investment returns accruing on the funds in the Rule 23(b)(2) Class Settlement Escrow Account, except as provided in Paragraph 104(a) below.

7.      No payments from the Rule 23(b)(2) Class Settlement Escrow Account, or any other use of the Rule 23(b)(2) Class Settlement Escrow Account, shall be made without the prior approval of the Court.  All taxes with respect to any sums in the Rule 23(b)(2) Class Settlement Escrow Account, the administrative costs of paying such taxes, and any other costs of establishing, maintaining, or administering the Rule 23(b)(2) Class Settlement Escrow Account shall be paid from the Rule 23(b)(2) Class Settlement Escrow Account by the Rule 23(b)(2) Class Escrow Agent subject to the approval of the Court.

**Payments to the Rule 23(b)(2) Class Settlement Escrow Account**

8.      Within ten business days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, for Notice Costs and related expenses of $5,300,000: (a) the Visa Defendants shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account, from the litigation escrow account established under the Visa Defendants'

17

Retrospective Responsibility Plan, two-thirds of $5,300,000 (i.e., $3,533,333); and (b) the Mastercard Defendants and the Rule 23(b)(2) Class Released Parties identified in Paragraphs 81(c) – (q) below shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account one-third of $5,300,000 (i.e., $1,766,667) in accordance with the agreement among themselves regarding their respective shares.  No Defendant shall be responsible for payment of any additional Notice Costs even if they exceed $5,300,000.  In the event that the Notice activities undertaken pursuant to this Rule 23(b)(2) Class Settlement Agreement do not exhaust the $5,300,000 allocated for those activities, at the end of the period covered by the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement, the Rule 23(b)(2) Class Counsel will file a motion requesting the Court to issue an Order authorizing the *cy pres* distribution of the remaining funds.  In no event shall any of the funds revert to the Defendants or any of the Rule 23(b)(2) Class Released Parties.

9.     Within 20 business days after the Settlement Approval Date, for Merchant Education Expenses of $15,000,000:  (a) the Visa Defendants shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account, from the litigation escrow account established under the Visa Defendants' Retrospective Responsibility Plan, two-thirds of $15,000,000 (i.e., $10,000,000); and (b) the Mastercard Defendants and the Rule 23(b)(2) Class Released Parties identified in Paragraphs 81(c) – (q) below shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account one-third of $15,000,000 (i.e., $5,000,000) in accordance with the agreement among themselves regarding their respective shares.  No Defendant shall be responsible for payment of any additional Merchant Education Expenses even if they exceed $15,000,000.  In the event that the Merchant Education activities undertaken pursuant to this Rule 23(b)(2) Class Settlement Agreement do not exhaust the $15,000,000 allocated for those activities, at the end of the period covered by the release and covenant not to sue set forth in this

Rule 23(b)(2) Class Settlement Agreement, the Rule 23(b)(2) Class Counsel will file a motion requesting the Court to issue an Order authorizing the *cy pres* distribution of the remaining funds.  In no event shall any of the funds revert to the Defendants or any of the Rule 23(b)(2) Class Released Parties.

10. Within 20 business days after the Settlement Approval Date, for Independent Auditor Expenses of $3,000,000:  (a) the Visa Defendants shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account, from the litigation escrow account established under the Visa Defendants' Retrospective Responsibility Plan, two-thirds of $3,000,000 (i.e., $2,000,000); and (b) the Mastercard Defendants and the Rule 23(b)(2) Class Released Parties identified in Paragraphs 81(c) – (q) below shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account one-third of $3,000,000 (i.e., $1,000,000) in accordance with the agreement among themselves regarding their respective shares.  No Defendant shall be responsible for payment of any additional Independent Auditor Expenses even if they exceed $3,000,000.  In the event that the Independent Auditor activities undertaken pursuant to this Rule 23(b)(2) Class Settlement Agreement do not exhaust the $3,000,000 allocated for those activities, at the end of the period covered by the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement, the Rule 23(b)(2) Class Counsel will file a motion requesting the Court to issue an Order authorizing the *cy pres* distribution of the remaining funds.  In no event shall any of the funds revert to the Defendants or any of the Rule 23(b)(2) Class Released Parties.

11. Within 20 business days after district court approval of an application for Attorneys' Fees and Expenses, for Attorneys' Fees and Expenses up to $170,000,000:  (a) the Visa Defendants shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account, from the litigation escrow account established under the Visa Defendants'

Retrospective Responsibility Plan, two-thirds of the approved amount up to $170,000,000 (i.e., up to $113,333,333), and (b) the Mastercard Defendants and the Rule 23(b)(2) Class Released Parties identified in Paragraphs 81(c) – (q) below shall pay by wire transfer into the Rule 23(b)(2) Class Settlement Escrow Account one-third of the approved amount up to $170,000,000 (i.e., up to $56,666,667) in accordance with the agreement among themselves regarding their respective shares.  Subject to district court approval and to Paragraph 104(a) below, Rule 23(b)(2) Counsel shall be entitled to receive the interest and investment returns on the funds deposited for payment of Attorneys' Fees and Expenses.  No Defendant shall be responsible to Rule 23(b)(2) Class Counsel or to Rule 23(b)(2) Class Plaintiffs for payment of any additional Attorneys' Fees and Expenses even if they exceed $170,000,000.

12.     Nothing in this Rule 23(b)(2) Class Settlement Agreement shall prevent the Rule 23(b)(2) Class Counsel from applying to the Court for permission to use any excess expense monies in the funds described in Paragraphs 8 or 10 above for the activities described in either of those Paragraphs.

13.     The payments described in Paragraphs 8-11 above shall exhaust and fully satisfy any and all payment obligations under this Rule 23(b)(2) Class Settlement Agreement of the Defendants and any other Rule 23(b)(2) Class Released Parties, and shall extinguish entirely any further obligation, responsibility, or liability to pay any notice expenses, attorneys' fees, litigation costs, costs of administration, taxes, settlement sums, or sums of any kind to the Rule 23(b)(2) Class Settlement Escrow Account, or to the Rule 23(b)(2) Class, or to any of their respective counsel, experts, advisors, agents, or representatives, all of whom shall look solely to the Rule 23(b)(2) Class Settlement Escrow Account for settlement and satisfaction of such claims.

14.     Defendants that make a payment to the Rule 23(b)(2) Class Settlement Escrow Account will issue Form 1099-MISC documents in the form and to the extent required.  Rule 23(b)(2) Class Plaintiffs reserve their rights to seek appropriate relief from the Court in the event the payments described in Paragraphs 8-11 above are not timely made, including but not limited to relief consisting of immediate payment, interest, and penalties.

**Consideration Provided to Members of the Rule 23(b)(2) Class**

15.     Members of the Rule 23(b)(2) Class shall receive no money payments, but shall receive the consideration set forth below.  That consideration shall commence on the respective dates set forth below and extend for five years after the commencement of the Average Effective Rate Limit.  Nothing in this Rule 23(b)(2) Class Settlement Agreement shall impose any limitation upon any conduct of any Rule 23(b)(2) Class Released Party not expressly addressed below.

**Consideration Provided by the Visa Defendants**

16.     All Visa Rules, by-laws, operating regulations, practices, policies, or procedures effecting its obligations in Paragraphs 18-39 below shall be enforced pursuant to Visa's existing Rules and standards relating to compliance.

17.     No later than sixty days after the Settlement Approval Date, and before any modifications of the Visa Defendants' Rules necessary to effect Paragraphs 18-39 below become effective, the Visa Defendants shall (a) post on the Visa website a written notification that describes these modifications, (b) provide that written notification to all Visa issuers and acquirers in the United States, and (c) direct Visa acquirers in the United States to provide that written notification to all merchants with whom they have acquiring relationships.  The Visa Defendants agree to provide Rule 23(b)(2) Class Counsel with an opportunity to offer comments on the language of that written notification.

### Visa "No-Discounting" or "Non-Discrimination" Rules

18.     The Visa Defendants shall continue to maintain their "no discounting" and "non-discrimination" Rules consistent with the terms of Section IV of the final judgment that the court entered on July 20, 2011 in *United States v. American Express Co., et al.*, No. 10-CV-04496 (E.D.N.Y.), the text of which is attached as Appendix G (with the marked modifications described in Paragraph 19 below), and shall maintain at no cost in the United States, consistent with the terms of the final judgment, the Visa Product Eligibility Service described in the Declaration of Judson Reed filed on June 14, 2011 in that action.

19.     Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their "no discounting" and "non-discrimination" Rules to clarify that discounting at the issuer level—i.e., providing discounts that vary by the issuing financial institution of the Visa-Branded Credit Card or Visa-Branded Debit Card—is permitted, consistent with the modifications to Section IV of the final judgment as shown in Appendix G.

20.     Nothing in Paragraphs 18-19 shall prevent the Visa Defendants from maintaining or promulgating Rules against non-factual brand denigration, including specifically Visa Core Rule 1.3.3.

### Visa "All-Outlets" Rules and Non-Acceptance Pilots

21.     The Visa Defendants will continue to permit a merchant to decline acceptance of all "Visa POS Debit Devices" or all "Other Visa Products," as defined pursuant to Visa's settlement agreement in *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-05238 (E.D.N.Y.), at all outlets that operate under the same trade name or banner in the United States, even if that merchant accepts all "Visa POS Debit Devices" or all "Other Visa Products" at outlets that operate under a different trade name or banner within or outside of the United States. The Visa Defendants will not promulgate or implement any Rule inconsistent with the terms of

this Paragraph for the duration of the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement.  Nothing herein shall prevent the Visa Defendants from retaining or promulgating any Rules that require a merchant, (a) to the extent that the merchant accepts "Visa POS Debit Devices" at any of the merchant's outlets operating under a given trade name or banner in the United States, to accept "Visa POS Debit Devices" at all outlets operating under that trade name or banner, or (b) to the extent that the merchant accepts "Other Visa Products" at any of the merchant's outlets operating under a given trade name or banner in the United States, to accept "Other Visa Products" at all outlets operating under that trade name or banner.  Nothing herein shall prohibit the Visa Defendants from (y) using volume-based pricing and pricing incentives, or (z) contracting with an individual merchant, including for more favorable pricing, based on its acceptance at all outlets in the United States; provided, however, that the Visa Defendants shall not require merchant acceptance at all outlets in connection with a volume-based incentive program made generally available to all merchants in the United States.

22.     Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their Rules, and specifically Visa Core Rule 1.5.4.11 (Visa's Uniform Services – Merchant Requirements), to clarify that merchants may engage in the acceptance practices as provided in Paragraph 21 above.  The Visa Defendants shall also modify those Rules to permit a merchant to decline acceptance of all "Visa POS Debit Devices" or all "Other Visa Products," as defined pursuant to Visa's settlement agreement in *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-05238 (E.D.N.Y.), at some but not all outlets that operate under the same trade name or banner in the United States, on a pilot basis, subject to the following:

(a)     the non-acceptance pilot is limited to outlets within the same trade name or banner;

(b)      the merchant does not engage in any such pilot for more than 120 days every 12 months, at no more than 20% of the merchant's outlets within the same trade name or banner; and

(c)      the merchant provides Visa and the merchant's acquirer with no less than 30 days' advance written notice that the merchant intends to engage in the pilot program, which notice shall identify the outlets at which non-acceptance would occur.

23.      Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their Rules to clarify that merchants do not need to employ the same types of permissible steering (*i.e.*, steering in a manner otherwise permitted by the Rules, as modified herein) in all of their outlets.

### Visa "Honor All Wallets" Requirements

24.      Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their "Honor All Cards" Rules to permit a merchant in the United States to accept some digital wallets at brick-and-mortar locations but decline others, subject to the following:

(a)      any such non-acceptance must be of the digital wallet itself (i.e., regardless of the payment card brands within that digital wallet);

(b)      any such non-acceptance cannot include a Visa-Branded Card provisioned in a digital wallet that is owned or operated by the Visa Defendants, if the acceptance characteristics of that transaction (as defined by applicable network rules, network fees, interchange rates, and transaction data) are the same as those of a non-digital wallet Visa-Branded Card transaction, provided, however, that the Visa Defendants will not require that the merchant accept any non-Visa-Branded Cards provisioned in the wallet; and

(c)      the merchant provides Visa with no less than 30 days' advance written notice that the merchant intends to decline certain digital wallets and identifies the digital wallets for which acceptance shall be declined.

25.      The Visa Defendants agree to maintain the network system coding and technological upgrades required to implement Paragraph 24.

26.      Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their "Honor All Cards" Rules to confirm that a merchant in the United States may enable some digital wallets for on-line transactions but not enable others; provided, however, that (i) any such non-acceptance must be of the digital wallet itself (i.e., regardless of the payment card brands within that digital wallet); and (ii) any such non-acceptance cannot include a Visa-Branded Card provisioned in a digital wallet that is owned or operated by the Visa Defendants, if the acceptance characteristics of that transaction (as defined by applicable network rules, network fees, interchange rates, and transaction data) are the same as those of a non-digital wallet Visa-Branded Card transaction, provided, however, that the Visa Defendants will not require that the merchant accept any non-Visa-Branded Cards provisioned in the wallet.

27.      Rules of the Visa Defendants relating to permissible steering (*i.e.*, steering in a manner otherwise permitted by the Rules, as modified herein) will apply to Visa-Branded Cards provisioned in digital wallets.

### Visa "Surcharge" Rules

28.      Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their "surcharge" rules to permit a merchant in the United States to surcharge Visa-Branded Credit Card transactions at either (but not both) the "Brand Level" or the "Product Level," as defined below in this Paragraph and subject to the terms and conditions in this Paragraph.  For the avoidance of doubt, a merchant in the United States may surcharge both

Visa-Branded Credit Card transactions and Mastercard-Branded Credit Card transactions; may surcharge Visa-Branded Credit Card transactions, but not Mastercard-Branded Credit Card transactions, or vice-versa, at either the "Brand Level" or the "Product Level," as defined below; and may surcharge Visa-Branded Credit Card transactions at the "Brand Level," as defined below, and surcharge Mastercard-Branded Credit Card transactions at the "Product Level," as defined below, or vice-versa. Moreover, as noted below, a merchant's right to surcharge Visa-Branded Credit Card transactions at up to 3%, under certain conditions, does not depend on whether the merchant also surcharges Mastercard-Branded Credit Card transactions.

      (a)    <u>Brand Level Surcharging</u>: A permitted Brand Level Surcharge is one in which:

    (i)    A merchant adds the same surcharge to all Visa Credit Card Transactions, regardless of the card's issuer or product type, after accounting for any discounts or rebates offered by the merchant on Visa Credit Card Transactions at the point of sale;

    (ii)    The surcharge on each Visa Credit Card Transaction is no greater than:

        (A)    the lesser of 3% or the merchant's Visa Credit Card Cost of Acceptance, if the merchant (i) actually surcharges all other Comparator Credit Card Brands that it accepts in at least the same amount or (ii) does not accept any Comparator Credit Card Brands; or

        (B)    1%.

    (iii)    The merchant does not engage in surcharging at the product level as described in Paragraph 28(b) below; and

    (iv)    The merchant complies with the merchant surcharging disclosure requirements set forth in Paragraph 28(c) below.

As used in this Paragraph 28(a):

- "After accounting for any discounts or rebates offered by the merchant at the point of sale" means that the amount of the surcharge for a Visa Credit Card is to include the amount of any discount or rebate that is applied to that card at the point of sale but that is not equally applied to all Visa Credit Card Transactions.

- "Comparator Credit Card Brand" includes any brand of Credit Card or electronic credit payment form of a nationally accepted payment network other than Visa or

Mastercard, specifically including without limitation American Express and Discover.

- "Visa Credit Card Cost of Acceptance" is the average effective interchange rate plus the average of all fees imposed by the network upon acquirers or merchants, expressed as a percentage of the transaction amount, applicable to Visa Credit Card Transactions at the merchant for the preceding one or twelve months, at the merchant's option. If a merchant cannot determine its Visa Credit Card Cost of Acceptance, then the merchant may consider its Visa Credit Card Cost of Acceptance to be 3% for purposes of this Paragraph.

- "Visa Credit Card Transaction" is a transaction in which a Visa Credit Card is presented for payment and the transaction is subject to Visa's Operating Regulations.

  (b)    <u>Product Level Surcharging</u>:  A permitted Product Level Surcharge is one in which:

  (i)    A merchant adds the same surcharge to all Visa Credit Card Transactions of the same product type (e.g., Visa Classic Card, Visa Traditional Rewards Card, Visa Signature Card, Visa Infinite Card, Visa Commercial Card), regardless of the card's issuer, after accounting for any discounts or rebates offered by the merchant at the point of sale;

  (ii)   The surcharge on each Visa Credit Card Transaction is no greater than:

  (A)    the lesser of 3% or the merchant's Visa Credit Card Product Cost of Acceptance for that product, if the merchant (i) actually surcharges all Comparator Credit Card Products of the same product type that it accepts in at least the same amount or (ii) does not accept any Comparator Credit Card Brands; or

  (B)    1%.

  (iii)  The merchant does not engage in surcharging at the brand level as described in Paragraph 28(a) above; and

  (iv)   The merchant complies with the merchant surcharging disclosure requirements set forth in Paragraph 28(c) below.

As used in this Paragraph 28(b):

- "After accounting for any discounts or rebates offered by the merchant at the point of sale" means that the amount of the surcharge for Visa Credit Cards of the same product type is to include the amount of any discount or rebate that is applied to that product at the point of sale but that is not equally applied to all Visa Credit Card Transactions of the same product type.

- "Comparator Credit Card Product" includes any product within a brand of Credit Card or electronic credit payment form of a nationally accepted payment network other than Visa or Mastercard, specifically including without limitation American Express and Discover.

- "Visa Credit Card" is any Credit Card that bears or uses the name Visa or is branded or licensed by Visa.

- "Visa Credit Card Product Cost of Acceptance" is the average effective interchange rate plus the average of all fees imposed by the network upon acquirers or merchants, expressed as a percentage of the transaction amount, applicable to Visa Credit Card Transactions of a product type at the merchant for the preceding one or twelve months, at the merchant's option.  If a merchant cannot determine its Visa Credit Card Product Cost of Acceptance, including because the merchant cannot identify the specific Visa-Branded Card product and applicable interchange rate, using available electronic data with one swipe/dip/tap of the customer's Credit Card, before authorizing the transaction at the point of sale, then the merchant may consider its Visa Credit Card Product Cost of Acceptance to be 3% for purposes of this Paragraph.

- "Visa Credit Card Transaction" is a transaction in which a Visa Credit Card is presented for payment and the transaction is subject to Visa's Operating Regulations.

    (c)    <u>Merchant Surcharging Disclosure Requirements</u>:  A merchant's ability to apply either a Brand Level or Product Level Surcharge is conditioned on the merchant's agreement to abide by the following disclosure requirements.  A merchant must:

    (i)    Provide Visa and the merchant's acquirer with no less than thirty days' advance written notice that the merchant intends to impose surcharges, which notice shall identify whether the merchant intends to impose surcharges at the brand level or the product level.

    (ii)    Provide clear disclosure to the merchant's customers of the merchant's surcharging practices, at the point of interaction or sale with the customer, in a manner that does not disparage the brand, network, issuing bank, or the payment card product being used.  By way of illustration and without limitation, disparagement does not include a merchant's accurate statement in words or substance that the merchant prefers or requests that a cardholder pay with a Credit Card or Debit Card that has a lower cost of acceptance to the merchant than the payment card presented for payment by the cardholder.  The information on the merchant's surcharging practices at the point of interaction must include (A) the amount of any surcharge that the merchant imposes, and (B) a statement that the surcharge is being imposed by the merchant.

28

(iii)   Provide clear disclosure of the dollar amount of the surcharge on the transaction receipt provided by the merchant to the customers.

(iv)   For the avoidance of doubt, nothing in this Paragraph shall prevent a merchant from employing a dual pricing scheme in which the merchant discloses to customers a total price for a transaction using a Visa Credit Card and a separate total price for a transaction using cash.

(d)   For the avoidance of doubt, nothing in this Rule 23(b)(2) Class Settlement Agreement, including this Paragraph, shall preclude the Visa Defendants from maintaining their prohibition of surcharging at the issuer level, i.e., adding surcharges that are not the same, after accounting for any discounts or rebates offered by a merchant at the point of sale, for all Visa Credit Cards or all Visa Credit Cards of a given product type, regardless of the issuing financial institution.

(e)   The Visa Defendants shall modify any other rules as necessary to ensure that the changes set forth in this Paragraph above are also applicable to merchants located in all United States territories and possessions, and the Commonwealth of Puerto Rico.

(f)   Nothing in this Rule 23(b)(2) Class Settlement Agreement shall prevent the Visa Defendants from contracting with merchants not to surcharge Visa-Branded Credit Cards or any product type of Visa-Branded Credit Card as long as the agreement (i) is for a fixed duration, (ii) is not subject to an evergreen clause, (iii) is individually negotiated with the merchant or merchants organized in accordance with the provisions of Paragraph 29 and is not a standard agreement or part of a standard agreement generally by the Visa Defendants, and (iv) is supported by independent consideration; provided, however, that nothing in this Rule 23(b)(2) Class Settlement Agreement shall affect any right of the Visa Defendants to limit or decline acceptance of Visa-Branded Cards by a payment aggregator or payment services provider with a proprietary acceptance mark that surcharges or discriminates against Visa; provided further that

29

nothing in the immediately prior clause affects the rights of properly-formed Merchant Buying Groups, by whomever formed or sponsored, described in Paragraphs 29-32 below.

(g)     The Visa Defendants shall not create default interchange rate structures that specifically target or penalize a specific merchant or have the effect of specifically targeting or penalizing a specific merchant with a higher default interchange rate relative to similarly situated merchants solely on the basis of such specific merchant compliantly surcharging under Visa's Rules.  This provision is not intended to prohibit the Visa Defendants from establishing default interchange rate structures, subject to the Posted Interchange Rate Caps in Paragraph 35 below, generally available to similarly situated merchants where such merchants are eligible for a lower default interchange rate when no cardholder fee is assessed (*e.g.*, no surcharge or convenience fee).  Examples of such existing programs are the Utility Program and the Small Merchant Program.  This provision does not prohibit the Visa Defendants from engaging in standard compliance actions if any merchant is surcharging in a manner non-compliant with Visa's Rules.

(i)     By way of example, Merchant X and Merchant Y are similarly situated merchants.  If Merchant X elects to surcharge Visa Credit Card Transactions and Merchant Y does not, the Visa Defendants could not create a default interchange structure or provision that specifically targets Merchant X with a higher credit interchange rate on the basis that Merchant X is surcharging.  However, subject to the Posted Interchange Rate Caps described in Paragraph 35, the Visa Defendants could create a default interchange rate structure available to all merchants for the segment in which Merchant X and Merchant Y operate, with a higher default rate available (merchant choice to surcharge) and a lower default rate available with eligibility based on merchants not surcharging.  In this case Merchant X and Merchant Y could either choose

to surcharge and be assessed the higher interchange rate (subject to the Posted Interchange Rate Caps described in Paragraph 35) or not surcharge and be subject to the lower interchange rate.

### Buying Groups

29.     Within 90 days after the Settlement Approval Date, the Visa Defendants shall modify their Rules to the extent necessary to remove any restrictions contained therein on merchants' rights to organize Merchant Buying Groups that comply with the requirements of the FTC's and DOJ's "Antitrust Guidelines for Collaborations Among Competitors" dated April 2000, and any subsequent editions of that guidance; any other competition guidelines and policy statements of the FTC or DOJ; and any other applicable legal standards.  As used in this Paragraph, a "Merchant Buying Group" means two or more merchants, which conform to the Visa Defendants' requirements of "Merchants" under their Rules and that accept Visa-Branded Cards, that form a group and incorporate as a not-for-profit corporation in any state in the United States for the purpose of negotiating with the Visa Defendants in conformance with this Rule 23(b)(2) Class Settlement Agreement, and that comply with the requirements of the FTC's and DOJ's "Antitrust Guidelines for Collaborations Among Competitors" dated April 2000, and any subsequent editions of that guidance; any other competition guidelines and policy statements of the FTC or DOJ; and any other applicable legal standards.  The purpose of a Merchant Buying Group shall be to negotiate with the Visa Defendants on behalf of its member merchants on any proposal submitted in writing by the Merchant Buying Group to the Visa Defendants concerning interchange rates and rate categories; merchant rules; merchant fees; network practices and procedures; and any other aspect of the operation of the Visa Defendants that impacts merchants.

30.     The Visa Defendants shall exercise their discretion and business judgment in good faith: (i) to consider each Merchant Buying Group proposal; (ii) to determine whether the

proposal sets forth commercially reasonable benefits to merchants, consumers, the network, and all other stakeholders; and, if so, (iii) to conduct reasonable, *bona fide* negotiations with the Merchant Buying Group concerning the proposal.

31.     In the event that any dispute arises with respect to Paragraphs 29-30, the parties will be subject to the jurisdiction of, and the dispute shall be resolved by, the Court presiding over this Action as part of the continuing jurisdiction of the Court over this Rule 23(b)(2) Class Settlement Agreement and the Rule 23(b)(2) Class.

32.     In the event of such dispute, the party raising the dispute shall be limited to seeking declaratory relief and to no other form of relief.  The declaratory relief available shall be limited to deciding whether: (i) the putative buying group is a properly organized, *bona fide* buying group that complies with all applicable legal standards; (ii) whether the Visa Defendants exercised their discretion and business judgment in good faith in determining whether the proposal set forth commercially reasonable benefits to merchants, consumers, the network, and all other stakeholders; and (iii) whether the Visa Defendants negotiated in good faith with the buying group.  The parties, including all members of the Rule 23(b)(2) Class, waive all rights to appeal from any such determination of the Court.  Upon resolution of the dispute by the Court, the losing party shall be responsible for all attorneys' fees and expenses of the prevailing party, unless the Court determines that the circumstances make such award unjust.

### Visa Default Interchange on Applicable Domestic Credit Transactions

33.     **Average Effective Rate Limit.**

(a)     Commencing the first April or October that is no earlier than April 2025 and no earlier than four months following the Settlement Approval Date, with the timing to coincide with the typical cycle for updates to the Visa Defendants' Rules and interchange rates— *i.e.*, the Visa Business Enhancement Release issued in April and October—the Visa Defendants

will implement a system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions that is at least seven basis points lower than the combined system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions on both Visa-Branded Credit Cards and Mastercard-Branded Credit Cards (the "Average Effective Rate Limit").

(b)     The Average Effective Rate Limit will continue for five years after it commences and for the duration of the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement.

(c)     Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or otherwise limit the ability of the Visa Defendants to:

(i)     implement a system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions that is lower than the Average Effective Rate Limit;

(ii)     negotiate custom Credit Card interchange rate agreements with any merchant at any rate level; except for exclusive acceptance transactions, transactions conducted pursuant to custom rate agreements are Applicable Domestic Credit Transactions and will be included in the calculation of whether the Average Effective Rate Limit has been met;

(iii)     modify published interchange rates on Applicable Domestic Credit Transactions at any time provided that such modifications comply with the Average Effective Rate Limit, Posted Interchange Rate Reduction, and Posted Interchange Rate Cap referenced in this Paragraph and Paragraphs 34-35 below; and

(iv)      introduce any new Credit Card product or service; if the product or service falls under the Visa Defendants' "Honor All Cards" Rule, it will be included in the calculation of whether the Average Effective Rate Limit has been met.

(d)      The Independent Auditor will calculate the Average Effective Rate Limit based upon the 12-month period ending March 31, 2024.

(e)      No later than 90 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Visa Defendants will make available to the Independent Auditor, who will in turn make available to Rule 23(b)(2) Class Counsel and their experts, reasonably requested data used by the Visa Defendants in the ordinary course of business, which data the Independent Auditor will use to calculate the system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions on Visa-Branded Credit Cards for the 12-month period ending March 31, 2024.  The Visa Defendants will make knowledgeable personnel available to the Independent Auditor and to Rule 23(b)(2) Class Counsel and their experts to understand (i) the Visa Defendants' systems that maintain such data, (ii) the process by which the data was retrieved from such systems, including selection of the data fields, and (iii) in general, the nature, source, and scope of such data.  The Visa Defendants will cooperate with reasonable requests of the Independent Auditor and of Rule 23(b)(2) Class Counsel and their experts for documents, data, and other information necessary to evaluate the Visa Defendants' compliance with requirements of this Paragraph.

(f)      No later than 120 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Independent Auditor will inform the Visa Defendants and the Rule 23(b)(2) Class Counsel of the Average Effective Rate Limit that the Independent Auditor has calculated, and will provide them with sufficient data and other information to evaluate and provide any comments on the underlying calculation.  Following that

34

evaluation, the Independent Auditor will (i) determine the Average Effective Rate Limit, and (ii) submit to the Court a summary of its findings and any other information that the Court may request.  The Independent Auditor's determination of the Average Effective Rate Limit is final and binding unless disapproved by the Court.  Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.  In no event shall Rule 23(b)(2) Class Counsel or their experts have any responsibility, financial obligation, or liability whatsoever, including any legal liability, for any actions, judgments, determinations, or any purported errors made by the Independent Auditor, including but not limited to the calculation of the system-wide volume-weighted average Effective Interchange Rate.

34.  **Posted Interchange Reduction of Four Basis Points**.  For a period of not less than three years from the commencement of the Average Effective Rate Limit, the Visa Defendants will reduce all posted interchange rates for Applicable Domestic Credit Transactions by a minimum of four basis points ("Posted Interchange Rate Reduction").  The Posted Interchange Rate Reduction will be implemented based on posted interchange rates effective as of December 31, 2023, which are attached as Appendix I.  For any interchange rate expressed only as a fixed amount (*e.g.*, $0.75 or $1.00 per transaction), the Visa Defendants will reduce the interchange rate by the equivalent of no less than four basis points, calculated based on the average ticket of transactions with that interchange rate for the 12 months ending March 31, 2024.  Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or otherwise limit the ability of the Visa Defendants to implement posted interchange rates that are lower than the Posted Interchange Rate Reduction.

35.  **Posted Interchange Rate Cap.**  Commencing with the Effective Date of this Rule 23(b)(2) Class Settlement Agreement and continuing for the duration of the release and

covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement, the Visa Defendants will not increase any of their posted rates for Applicable Domestic Credit Transactions above Visa's posted rates for Applicable Domestic Credit Transactions effective as of December 31, 2023, which are attached as Appendix I ("Posted Interchange Rate Cap"). Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or otherwise limit the ability of the Visa Defendants to implement posted interchange rates that are lower than the Posted Interchange Rate Cap.

36.    **Independent Verification/Certification.**

(a)    No less than 90 days prior to the commencement of the Average Effective Rate Limit and Posted Interchange Rate Reduction, the Visa Defendants will provide to the Independent Auditor all of the following information:

(i)    The new posted interchange rate schedules that will reflect, and will be used to implement, the Posted Interchange Rate Reduction.

(ii)    Sufficient data to demonstrate how the Visa Defendants intend to satisfy the Average Effective Rate Limit for the first 12-month period, with such 12-month period commencing on the first day of the month after the Average Effective Rate Limit becomes effective under Paragraph 33(a).  For purposes of clarity, if the Average Effective Rate Limit and Posted Interchange Rate Reduction commence on April 15, 2025, then the 12-month period referenced in this Paragraph is May 1, 2025 to April 30, 2026.

(iii)    A list of merchants with transactions in any channel in which merchant acceptance of a credit product is exclusive such that the exclusive-acceptance transactions are excluded from the Average Effective Rate Limit, as well as verification that such exclusively-accepted transactions have been excluded from the system-wide

volume-weighted average Effective Interchange Rate.  Nothing in this Paragraph shall require the Visa Defendants to provide to the Independent Auditor the interchange rates or volume attributable to those merchants' exclusive-acceptance transactions.

(b)      Within 60 days following the expiration of the first 12-month period (with such period commencing on the first day of the month after the Average Effective Rate Limit becomes effective under Paragraph 33(a)), and on an annual basis thereafter, the Visa Defendants will provide to the Independent Auditor all of the following information:

(i)      The system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions for the prior 12-month period.

(ii)      A list of merchants with transactions in any channel in which merchant acceptance of a credit product is exclusive such that the exclusive-acceptance transactions are excluded from the Average Effective Rate Limit, as well as verification that such exclusively-accepted transactions have been excluded from the system-wide volume-weighted average Effective Interchange Rate.  Nothing in this Paragraph shall require the Visa Defendants to provide to the Independent Auditor the interchange rates or volume attributable to those merchants' exclusive-acceptance transactions.

(iii)      Data sufficient to demonstrate compliance with the Interchange Adjustment Obligations below, as warranted.

(iv)      A certification of compliance with the requirements of this section regarding the Average Effective Rate Limit provisions.

(c)      Following the completion of each of its reviews, the Independent Auditor will submit to the Court a summary of its findings and any other information that the Court may request.  The Independent Auditor's findings as to the Visa Defendants' compliance with the Average Effective Rate Limit provisions in this section are final and binding unless disapproved

by the Court. Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.

37. **Interchange Adjustment Obligation**. In the event that the data submitted to the Independent Auditor show that the Visa Defendants' system-wide volume-weighted average Effective Interchange Rate for a 12-month period exceeds the Average Effective Rate Limit, the Visa Defendants will retroactively rebalance sufficient transactions within 120 days to a lower interchange level such that the system-wide volume-weighted average Effective Interchange Rate comes into compliance with the Average Effective Rate Limit. The Visa Defendants will rebalance transactions on posted interchange rates on a weighted, pro-rata basis for merchants, with such transactions to be rebalanced at the acquirer level. The Independent Auditor will submit to the Court a summary of its findings regarding any necessary reconciliation and rebalancing, and any other information that the Court may request. Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.

38. **Anti-Circumvention.** The Visa Defendants have the right to continue setting default and custom interchange rates and network fees (i.e., fees other than interchange fees that the Visa Defendants assess to acquirers or issuers in connection with Visa-Branded Credit Card transactions, including the Visa Fixed Acquirer Network Fee), subject to the commitments in this Rule 23(b)(2) Class Settlement Agreement. The Visa Defendants will not circumvent or attempt to circumvent these commitments either directly or indirectly. In particular, but not limited to, the Visa Defendants will refrain from implementing practices that have the equivalent object or effect of interchange rates, including specifically but not limited to implementing programs whereby the Visa Defendants systematically transfer Visa network fees assessed to acquirers and

pass the economics to issuers.  The Visa Defendants also will refrain from actions that have the effect of artificially reducing the calculated average Effective Interchange Rate for Applicable Domestic Credit Transactions, for example, manipulating which credit products are or are not subject to the "Honor All Cards" Rule for the specific purpose of affecting the calculation of the average Effective Interchange Rate.  Except for the anti-circumvention provisions stated herein, these provisions are not intended to limit or restrict the Visa Defendants' ability to set issuer or acquirer fee programs, or negotiate custom fee incentives with any particular issuer, acquirer, or merchant, or sets of them.  The Visa Defendants further agree that the merchant benefits received from the commitments in this Rule 23(b)(2) Class Settlement Agreement will not be defeated by the Visa Defendants increasing other network fees or Merchant Fees to restore the revenues that issuers lost from the interchange commitments herein.  Notwithstanding this provision, the Rule 23(b)(2) Class Plaintiffs and Rule 23(b)(2) Class Counsel agree that the Visa Defendants need reasonably necessary flexibility in operating the Visa network to respond to market conditions in the ordinary course of business.

39.    **Posted Rate Transparency**.  The Visa Defendants will continue to publicly disclose the U.S. interchange rates applicable within each transaction category in each product category.

### Merchant Education Program

40.    Following the Settlement Approval Date, Rule 23(b)(2) Class Counsel will commence a Merchant Education Program, funded by the Merchant Education Expenses identified in Paragraph 9 above.  The topics of Merchant Education will include, but are not limited to, advising merchants and their processors, acquirers, and payments consultants on:

(a)      the proper interpretation and application of, and compliance with, all merchant Rules, including those modified by this Rule 23(b)(2) Class Settlement Agreement, and all changes from the historical merchant rules;

(b)      the benefits of this Rule 23(b)(2) Class Settlement Agreement;

(c)      the benefits of steering tools that merchants may use to reduce the costs of acceptance, including those modified by this Rule 23(b)(2) Class Settlement Agreement; and

(d)      the benefits of and the methods for forming and joining Merchant Buying Groups as defined in this Rule 23(b)(2) Class Settlement Agreement.

41.      Merchant Education shall not include any lobbying activities or any activities that disparage any brand, network, issuing bank, or payment card products.  For further clarity, no Merchant Education Expenses shall be used directly or indirectly to fund any lobbying or trade association activities.

42.      All materials and scripts prepared for Merchant Education will be reviewed and approved by Rule 23(b)(2) Class Counsel and, if needed, provided to counsel for the Visa Defendants for the purpose of ensuring the accuracy of all materials.  The Visa Defendants agree that the Merchant Education materials may include information about permissible scenarios consistent with Appendix G.

43.      The Visa Defendants shall make available at least one Visa employee knowledgeable with respect to the merchant Rules to be designated as the contact person for, and to provide reasonable assistance to, an administrator designated by Rule 23(b)(2) Class Counsel to answer questions about the Rules and other issues that might arise from the Merchant Education program.

**Limitations on Consideration Provided by the Visa Defendants**

44.     The Visa Defendants shall not be required to continue or modify their by-laws, Rules, operating regulations, practices, policies, or procedures in any manner other than as provided in Paragraphs 18-39 above.

45.     The Visa Defendants' obligations under Paragraphs 18-39 shall extend only up to five years after the commencement of the Average Effective Rate Limit. After that date, the Visa Defendants shall have the discretion to continue to provide any consideration provided in Paragraphs 18-39 above, but the Visa Defendants' obligation to provide any of that consideration under this Rule 23(b)(2) Class Settlement Agreement shall expire.

46.     The Visa Defendants retain the right, but are in no way obligated, to further modify their by-laws, Rules, operating regulations, practices, policies, or procedures addressed in Paragraphs 18-39 in a manner that is more permissive of a merchant's ability to engage in the point of sale practices described therein.

47.     Nothing in the foregoing changes to the Visa Defendants' Rules, by-laws, and/or operating regulations described in Paragraphs 18-39 above shall affect any obligation of any Defendant or any member of the Rule 23(b)(2) Class to comply with all applicable state or federal laws, including but not limited to state laws regarding surcharging of credit or debit card transactions, and federal and state laws regarding deceptive or misleading disclosures.

**Consideration Provided by the Mastercard Defendants**

48.     All Mastercard Rules, by-laws, operating regulations, practices, policies, or procedures effecting its obligations in Paragraphs 50-71 below shall be enforced pursuant to Mastercard's existing Rules and standards relating to compliance.

49.     No later than sixty days after the Settlement Approval Date, and before any modifications of the Mastercard Defendants' Rules necessary to effect Paragraphs 50-71 below

become effective, the Mastercard Defendants shall (a) post on the Mastercard website a written notification that describes these modifications, (b) provide that written notification to all Mastercard issuers and acquirers in the United States, and (c) direct Mastercard acquirers in the United States to provide that written notification to all merchants with whom they have acquiring relationships.  The Mastercard Defendants agree to provide Rule 23(b)(2) Class Counsel with an opportunity to offer comments on the language of that written notification.

### **Mastercard "No-Discounting" or "Non-Discrimination" Rules**

50.     The Mastercard Defendants shall continue to maintain their "no discounting" and "non-discrimination" Rules consistent with the terms of Section IV of the final judgment that the court entered on July 20, 2011 in *United States v. American Express Co., et al.*, No. 10-CV-04496 (E.D.N.Y.), the text of which is attached as Appendix G (with the marked modifications described in Paragraph 51 below).  By April 1, 2025, Mastercard will include an Interchange Structure Field ("ISF") in the authorization messages sent to acquirers that identifies the interchange structure associated with a Mastercard-Branded Card, which would provide the acquirer and merchant with the same information as the Product Validation service that is described in the Declaration of Brad Tomcheck dated May 31, 2011 in that action.

51.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their "no discounting" and "non-discrimination" Rules to clarify that discounting at the issuer level—i.e., providing discounts that vary by the issuing financial institution of the Mastercard-Branded Credit Card or Mastercard-Branded Debit Card—is permitted, consistent with the modifications to Section IV of the final judgment as shown in Appendix G.

52.     Nothing in Paragraphs 50-51 shall prevent the Mastercard Defendants from maintaining or promulgating Rules against non-factual brand denigration, including specifically Mastercard Rule 4.1.1.

### Mastercard "All-Outlets" Rules and Non-Acceptance Pilots

53.   The Mastercard Defendants will continue to permit a merchant to decline acceptance of all "Mastercard POS Debit Devices" or all "Other Mastercard Products," as defined pursuant to Mastercard's settlement agreement in *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-05238 (E.D.N.Y.), at all outlets that operate under the same trade name or banner in the United States, even if that merchant accepts all "Mastercard POS Debit Devices" or all "Other Mastercard Products" at outlets that operate under a different trade name or banner within or outside of the United States.  The Mastercard Defendants will not promulgate or implement any Rule inconsistent with the terms of this Paragraph for the duration of the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement. Nothing herein shall prevent the Mastercard Defendants from retaining or promulgating any Rules that require a merchant, (a) to the extent that the merchant accepts "Mastercard POS Debit Devices" at any of the merchant's outlets operating under a given trade name or banner in the United States, to accept "Mastercard POS Debit Devices" at all outlets operating under that trade name or banner, or (b) to the extent that the merchant accepts "Other Mastercard Products" at any of the merchant's outlets operating under a given trade name or banner in the United States, to accept "Other Mastercard Products" at all outlets operating under that trade name or banner. Nothing herein shall prohibit the Mastercard Defendants from (y) using volume-based pricing and pricing incentives, or (z) contracting with an individual merchant, including for more favorable pricing, based on its acceptance at all outlets in the United States; provided, however, that the Mastercard Defendants shall not require merchant acceptance at all outlets in connection with a volume-based incentive program made generally available to all merchants in the United States.

54.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their Rules, and specifically Mastercard Rule 5.11 (Merchant Obligations for Acceptance), to clarify that merchants may engage in the acceptance practices as provided in Paragraph 53 above.  The Mastercard Defendants shall also modify those Rules to permit a merchant to decline acceptance of all "Mastercard POS Debit Devices" or all "Other Mastercard Products," as defined pursuant to Mastercard's settlement agreement in *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96-CV-05238 (E.D.N.Y.), at some but not all outlets that operate under the same trade name or banner in the United States, on a pilot basis, subject to the following:

(a)     the non-acceptance pilot is limited to outlets within the same trade name or banner;

(b)     the merchant does not engage in any such pilot for more than 120 days every 12 months, at no more than 20% of the merchant's outlets within the same trade name or banner; and

(c)     the merchant provides Mastercard and the merchant's acquirer with no less than 30 days' advance written notice that the merchant intends to engage in the pilot program, which notice shall identify the outlets at which non-acceptance would occur.

55.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their Rules to clarify that merchants do not need to employ the same types of permissible steering (*i.e.*, steering in a manner otherwise permitted by the Rules, as modified herein) in all of their outlets.

### Mastercard "Honor All Wallets" Requirements

56.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their "Honor All Cards" Rules to permit a merchant in the United States to accept some digital wallets at brick-and-mortar locations but decline others, subject to the following:

(a)     any such non-acceptance must be of the digital wallet itself (i.e., regardless of the payment card brands within that digital wallet);

(b)     any such non-acceptance cannot include a Mastercard-Branded Card provisioned in a digital wallet that is owned or operated by the Mastercard Defendants, if the acceptance characteristics of that transaction (as defined by applicable network rules, network fees, interchange rates, and transaction data) are the same as those of a non-digital wallet Mastercard-Branded Card transaction, provided, however, that the Mastercard Defendants will not require that the merchant accept any non-Mastercard-Branded Cards provisioned in the wallet; and

(c)     the merchant provides Mastercard with no less than 30 days' advance written notice that the merchant intends to decline certain digital wallets and identifies the digital wallets for which acceptance shall be declined.

57.     The Mastercard Defendants have commenced the network system coding and technological upgrades required to implement Paragraph 56.  Such upgrades involve the redigitalization of tokens to include a token requestor identifier tag (TRID) on all token profiles. This process will be completed by March 1, 2025.

58.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their "Honor All Cards" Rules to confirm that a merchant in the United States may enable some digital wallets for on-line transactions but not enable others; provided, however, that (i) any such non-acceptance must be of the digital wallet itself (i.e., regardless of the

45

payment card brands within that digital wallet); and (ii) any such non-acceptance cannot include a Mastercard-Branded Card provisioned in a digital wallet that is owned or operated by the Mastercard Defendants, if the acceptance characteristics of that transaction (as defined by applicable network rules, network fees, interchange rates, and transaction data) are the same as those of a non-digital wallet Mastercard-Branded Card transaction, provided, however, that the Mastercard Defendants will not require that the merchant accept any non-Mastercard-Branded Cards provisioned in the wallet.

59.     Rules of the Mastercard Defendants relating to permissible steering (*i.e.*, steering in a manner otherwise permitted by the Rules, as modified herein) will apply to Mastercard-Branded Cards provisioned in digital wallets.

### Mastercard "Surcharge" Rules

60.     Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their "surcharge" rules to permit a merchant in the United States to surcharge Mastercard-Branded Credit Card transactions at either (but not both) the "Brand Level" or the "Product Level," as defined below in this Paragraph and subject to the terms and conditions in this Paragraph.  For the avoidance of doubt, a merchant in the United States may surcharge both Mastercard-Branded Credit Card transactions and Visa-Branded Credit Card transactions; may surcharge Mastercard-Branded Credit Card transactions, but not Visa-Branded Credit Card transactions, or vice-versa, at either the "Brand Level" or the "Product Level," as defined below; and may surcharge Mastercard-Branded Credit Card transactions at the "Brand Level," as defined below, and surcharge Visa-Branded Credit Card transactions at the "Product Level," as defined below, or vice-versa.  Moreover, as noted below, a merchant's right to surcharge Mastercard-Branded Credit Card transactions at up to 3%, under certain conditions, does not depend on whether the merchant also surcharges Visa-Branded Credit Card transactions.

    (a)   <u>Brand Level Surcharging</u>:  A permitted Brand Level Surcharge is one in which:

    (i)   A merchant adds the same surcharge to all Mastercard Credit Card Transactions, regardless of the card's issuer or product type, after accounting for any discounts or rebates offered by the merchant on Mastercard Credit Card Transactions at the point of sale;

    (ii)   The surcharge on each Mastercard Credit Card Transaction is no greater than:

    (A)   the lesser of 3% or the merchant's Mastercard Credit Card Cost of Acceptance, if the merchant (i) actually surcharges all other Comparator Credit Card Brands that it accepts in at least the same amount or (ii) does not accept any Comparator Credit Card Brands; or

    (B)   1%.

    (iii)   The merchant does not engage in surcharging at the product level as described in Paragraph 60(b) below; and

    (iv)   The merchant complies with the merchant surcharging disclosure requirements set forth in Paragraph 60(c) below.

As used in this Paragraph 60(a):

- "After accounting for any discounts or rebates offered by the merchant at the point of sale" means that the amount of the surcharge for a Mastercard Credit Card is to include the amount of any discount or rebate that is applied to that card at the point of sale but that is not equally applied to all Mastercard Credit Card Transactions.

- "Comparator Credit Card Brand" includes any brand of Credit Card or electronic credit payment form of a nationally accepted payment network other than Mastercard or Visa, specifically including without limitation American Express and Discover.

- "Mastercard Credit Card Cost of Acceptance" is the average effective interchange rate plus the average of all fees imposed by the network upon acquirers or merchants, expressed as a percentage of the transaction amount, applicable to Mastercard Credit Card Transactions at the merchant for the preceding one or twelve months, at the merchant's option.  If a merchant cannot determine its Mastercard Credit Card Cost of Acceptance, then the merchant may consider its Mastercard Credit Card Cost of Acceptance to be 3% for purposes of this Paragraph.

- "Mastercard Credit Card Transaction" is a transaction in which a Mastercard Credit Card is presented for payment and the transaction is subject to Mastercard's Operating Regulations.

(b)     <u>Product Level Surcharging</u>:  A permitted Product Level Surcharge is one in which:

    (i)     A merchant adds the same surcharge to all Mastercard Credit Card Transactions of the same product type (e.g., Mastercard Standard, Mastercard World, Mastercard World Elite, Mastercard Business World Elite), regardless of the card's issuer, after accounting for any discounts or rebates offered by the merchant at the point of sale;

    (ii)    The surcharge on each Mastercard Credit Card Transaction is no greater than:

        (A)    the lesser of 3% or the merchant's Mastercard Credit Card Product Cost of Acceptance for that product, if the merchant (i) actually surcharges all Comparator Credit Card Products of the same product type that it accepts in at least the same amount or (ii) does not accept any Comparator Credit Card Brands; or

        (B)    1%.

    (iii)   The merchant does not engage in surcharging at the brand level as described in Paragraph 60(a) above; and

    (iv)    The merchant complies with the merchant surcharging disclosure requirements set forth in Paragraph 60(c) below.

As used in this Paragraph 60(b):

- "After accounting for any discounts or rebates offered by the merchant at the point of sale" means that the amount of the surcharge for Mastercard Credit Cards of the same product type is to include the amount of any discount or rebate that is applied to that product at the point of sale but that is not equally applied to all Mastercard Credit Card Transactions of the same product type.

- "Comparator Credit Card Product" includes any product within a brand of Credit Card or electronic credit payment form of a nationally accepted payment network other than Mastercard or Visa, specifically including without limitation American Express and Discover.

- "Mastercard Credit Card" is any Credit Card that bears or uses the name Mastercard or is branded or licensed by Mastercard.

- "Mastercard Credit Card Product Cost of Acceptance" is the average effective interchange rate plus the average of all fees imposed by the network upon acquirers or merchants, expressed as a percentage of the transaction amount, applicable to Mastercard Credit Card Transactions of a product type at the merchant for the preceding one or twelve months, at the merchant's option.  If a merchant cannot determine its Mastercard Credit Card Product Cost of Acceptance, including because the merchant cannot identify the specific

Mastercard-Branded Card product and applicable interchange rate, using available electronic data with one swipe/dip/tap of the customer's Credit Card, before authorizing the transaction at the point of sale, then the merchant may consider its Mastercard Credit Card Product Cost of Acceptance to be 3% for purposes of this Paragraph.

- "Mastercard Credit Card Transaction" is a transaction in which a Mastercard Credit Card is presented for payment and the transaction is subject to Mastercard's Operating Regulations.

(c) <u>Merchant Surcharging Disclosure Requirements</u>:  A merchant's ability to apply either a Brand Level or Product Level Surcharge is conditioned on the merchant's agreement to abide by the following disclosure requirements.  A merchant must:

(i)   Provide Mastercard and the merchant's acquirer with no less than thirty days' advance written notice that the merchant intends to impose surcharges, which notice shall identify whether the merchant intends to impose surcharges at the brand level or the product level.

(ii)   Provide clear disclosure to the merchant's customers of the merchant's surcharging practices, at the point of interaction or sale with the customer, in a manner that does not disparage the brand, network, issuing bank, or the payment card product being used.  By way of illustration and without limitation, disparagement does not include a merchant's accurate statement in words or substance that the merchant prefers or requests that a cardholder pay with a Credit Card or Debit Card that has a lower cost of acceptance to the merchant than the payment card presented for payment by the cardholder.  The information on the merchant's surcharging practices at the point of interaction must include (A) the amount of any surcharge that the merchant imposes, and (B) a statement that the surcharge is being imposed by the merchant.

(iii)   Provide clear disclosure of the dollar amount of the surcharge on the transaction receipt provided by the merchant to the customers.

(iv)   For the avoidance of doubt, nothing in this Paragraph shall prevent a merchant from employing a dual pricing scheme in which the merchant discloses to customers a total price for a transaction using a Mastercard Credit Card and a separate total price for a transaction using cash.

(d)   For the avoidance of doubt, nothing in this Rule 23(b)(2) Class Settlement Agreement, including this Paragraph, shall preclude the Mastercard Defendants from maintaining their prohibition of surcharging at the issuer level, i.e., adding surcharges that are not the same, after accounting for any discounts or rebates offered by a merchant at the point of

sale, for all Mastercard Credit Cards or all Mastercard Credit Cards of a given product type, regardless of the issuing financial institution.

(e)     The Mastercard Defendants shall modify any other rules as necessary to ensure that the changes set forth in this Paragraph above are also applicable to merchants located in all United States territories and possessions, and the Commonwealth of Puerto Rico.

(f)     Nothing in this Rule 23(b)(2) Class Settlement Agreement shall prevent the Mastercard Defendants from contracting with merchants not to surcharge Mastercard-Branded Credit Cards or any product type of Mastercard-Branded Credit Card as long as the agreement (i) is for a fixed duration, (ii) is not subject to an evergreen clause, (iii) is individually negotiated with the merchant or merchants organized in accordance with the provisions of Paragraph 61 and is not a standard agreement or part of a standard agreement generally by the Mastercard Defendants, and (iv) is supported by independent consideration; provided, however, that nothing in this Rule 23(b)(2) Class Settlement Agreement shall affect any right of the Mastercard Defendants to limit or decline acceptance of Mastercard-Branded Cards by a payment aggregator or payment services provider with a proprietary acceptance mark that surcharges or discriminates against Mastercard; provided further that nothing in the immediately prior clause affects the rights of properly-formed Merchant Buying Groups, by whomever formed or sponsored, described in Paragraphs 61-64 below.

(g)     The Mastercard Defendants shall not create default interchange rate structures that specifically target or penalize a specific merchant or have the effect of specifically targeting or penalizing a specific merchant with a higher default interchange rate relative to similarly situated merchants solely on the basis of such specific merchant compliantly surcharging under Mastercard's Rules.  This provision is not intended to prohibit the Mastercard Defendants from establishing default interchange rate structures, subject to the Posted

50

Interchange Rate Caps in Paragraph 67 below, generally available to similarly situated merchants where such merchants are eligible for a lower default interchange rate when no cardholder fee is assessed (*e.g.*, no surcharge or convenience fee).  This provision does not prohibit the Mastercard Defendants from engaging in standard compliance actions if any merchant is surcharging in a manner non-compliant with Mastercard's Rules.

(i)      By way of example, Merchant X and Merchant Y are similarly situated merchants.  If Merchant X elects to surcharge Mastercard Credit Card Transactions and Merchant Y does not, the Mastercard Defendants could not create a default interchange structure or provision that specifically targets Merchant X with a higher credit interchange rate on the basis that Merchant X is surcharging.  However, subject to the Posted Interchange Rate Caps described in Paragraph 67, the Mastercard Defendants could create a default interchange rate structure available to all merchants for the segment in which Merchant X and Merchant Y operate, with a higher default rate available (merchant choice to surcharge) and a lower default rate available with eligibility based on merchants not surcharging.  In this case Merchant X and Merchant Y could either choose to surcharge and be assessed the higher interchange rate (subject to the Posted Interchange Rate Caps described in Paragraph 67) or not surcharge and be subject to the lower interchange rate.

### Buying Groups

61.      Within 90 days after the Settlement Approval Date, the Mastercard Defendants shall modify their Rules to the extent necessary to remove any restrictions contained therein on merchants' rights to organize Merchant Buying Groups that comply with the requirements of the FTC's and DOJ's "Antitrust Guidelines for Collaborations Among Competitors" dated April 2000, and any subsequent editions of that guidance; any other competition guidelines and policy

statements of the FTC or DOJ; and any other applicable legal standards.  As used in this Paragraph, a "Merchant Buying Group" means two or more merchants, which conform to the Mastercard Defendants' requirements of "Merchants" under their Rules and that accept Mastercard-Branded Cards, that form a group and incorporate as a not-for-profit corporation in any state in the United States for the purpose of negotiating with the Mastercard Defendants in conformance with this Rule 23(b)(2) Class Settlement Agreement, and that comply with the requirements of the FTC's and DOJ's "Antitrust Guidelines for Collaborations Among Competitors" dated April 2000, and any subsequent editions of that guidance; any other competition guidelines and policy statements of the FTC or DOJ; and any other applicable legal standards.  The purpose of a Merchant Buying Group shall be to negotiate with the Mastercard Defendants on behalf of its member merchants on any proposal submitted in writing by the Merchant Buying Group to the Mastercard Defendants concerning interchange rates and rate categories; merchant rules; merchant fees; network practices and procedures; and any other aspect of the operation of the Mastercard Defendants that impacts merchants.

62.     The Mastercard Defendants shall exercise their discretion and business judgment in good faith: (i) to consider each Merchant Buying Group proposal; (ii) to determine whether the proposal sets forth commercially reasonable benefits to merchants, consumers, the network, and all other stakeholders; and, if so, (iii) to conduct reasonable, *bona fide* negotiations with the Merchant Buying Group concerning the proposal.

63.     In the event that any dispute arises with respect to Paragraphs 61-62, the parties will be subject to the jurisdiction of, and the dispute shall be resolved by, the Court presiding over this Action as part of the continuing jurisdiction of the Court over this Rule 23(b)(2) Class Settlement Agreement and the Rule 23(b)(2) Class.

64.     In the event of such dispute, the party raising the dispute shall be limited to seeking declaratory relief and to no other form of relief.  The declaratory relief available shall be limited to deciding whether: (i) the putative buying group is a properly organized, *bona fide* buying group that complies with all applicable legal standards; (ii) whether the Mastercard Defendants exercised their discretion and business judgment in good faith in determining whether the proposal set forth commercially reasonable benefits to merchants, consumers, the network, and all other stakeholders; and (iii) whether the Mastercard Defendants negotiated in good faith with the buying group.  The parties, including all members of the Rule 23(b)(2) Class, waive all rights to appeal from any such determination of the Court.  Upon resolution of the dispute by the Court, the losing party shall be responsible for all attorneys' fees and expenses of the prevailing party, unless the Court determines that the circumstances make such award unjust.

### Mastercard Default Interchange on Applicable Domestic Credit Transactions

65.     **Average Effective Rate Limit.**

(a)     Commencing the first April or October that is no earlier than April 2025 and no earlier than four months following the Settlement Approval Date, with the timing to coincide with the typical cycle for updates to the Mastercard Defendants' Rules and interchange rates—*i.e.*, the Mastercard U.S. Region Interchange Programs and Rates issued in April and October—the Mastercard Defendants will implement a system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions that is at least seven basis points lower than the combined system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions on both Visa-Branded Credit Cards and Mastercard-Branded Credit Cards (the "Average Effective Rate Limit").

(b)      The Average Effective Rate Limit will continue for five years after it commences and for the duration of the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement.

(c)      Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or otherwise limit the ability of the Mastercard Defendants to:

(i)      implement a system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions that is lower than the Average Effective Rate Limit;

(ii)      negotiate custom Credit Card interchange rate agreements with any merchant at any rate level; except for exclusive acceptance transactions, transactions conducted pursuant to custom rate agreements are Applicable Domestic Credit Transactions and will be included in the calculation of whether the Average Effective Rate Limit has been met;

(iii)      modify published interchange rates on Applicable Domestic Credit Transactions at any time provided that such modifications comply with the Average Effective Rate Limit, Posted Interchange Rate Reduction, and Posted Interchange Rate Cap referenced in this Paragraph and Paragraphs 66-67 below; and

(iv)      introduce any new Credit Card product or service; if the product or service falls under the Mastercard Defendants' "Honor All Cards" Rule, it will be included in the calculation of whether the Average Effective Rate Limit has been met.

(d)      The Independent Auditor will calculate the Average Effective Rate Limit based upon the 12-month period ending March 31, 2024.

(e)      No later than 90 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Mastercard Defendants will make available to the

Independent Auditor, who will in turn make available to Rule 23(b)(2) Class Counsel and their experts, reasonably requested data used by the Mastercard Defendants in the ordinary course of business, which data the Independent Auditor will use to calculate the system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions on Mastercard-Branded Credit Cards for the 12-month period ending March 31, 2024.  The Mastercard Defendants will make knowledgeable personnel available to the Independent Auditor and to Rule 23(b)(2) Class Counsel and their experts to understand (i) the Mastercard Defendants' systems that maintain such data, (ii) the process by which the data was retrieved from such systems, including selection of the data fields, and (iii) in general, the nature, source, and scope of such data.  The Mastercard Defendants will cooperate with reasonable requests of the Independent Auditor and of Rule 23(b)(2) Class Counsel and their experts for documents, data, and other information necessary to evaluate the Mastercard Defendants' compliance with requirements of this Paragraph.

(f)     No later than 120 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Independent Auditor will inform the Mastercard Defendants and the Rule 23(b)(2) Class Counsel of the Average Effective Rate Limit that the Independent Auditor has calculated, and will provide them with sufficient data and other information to evaluate and provide any comments on the underlying calculation.  Following that evaluation, the Independent Auditor will (i) determine the Average Effective Rate Limit, and (ii) submit to the Court a summary of its findings and any other information that the Court may request.  The Independent Auditor's determination of the Average Effective Rate Limit is final and binding unless disapproved by the Court.  Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.  In no event shall Rule 23(b)(2)

Class Counsel or their experts have any responsibility, financial obligation, or liability whatsoever, including any legal liability, for any actions, judgments, determinations, or any purported errors made by the Independent Auditor, including but not limited to the calculation of the system-wide volume-weighted average Effective Interchange Rate.

66.     **Posted Interchange Reduction of Four Basis Points**.  For a period of not less than three years from the commencement of the Average Effective Rate Limit, the Mastercard Defendants will reduce all posted interchange rates for Applicable Domestic Credit Transactions by a minimum of four basis points ("Posted Interchange Rate Reduction").  The Posted Interchange Rate Reduction will be implemented based on posted interchange rates effective as of December 31, 2023, which are attached as Appendix J.  For any interchange rate expressed only as a fixed amount (*e.g.*, \$0.75 or \$1.00 per transaction), the Mastercard Defendants will reduce the interchange rate by the equivalent of no less than four basis points, calculated based on the average ticket of transactions with that interchange rate for the 12 months ending March 31, 2024.  Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or otherwise limit the ability of the Mastercard Defendants to implement posted interchange rates that are lower than the Posted Interchange Rate Reduction.

67.     **Posted Interchange Rate Cap.**  Commencing with the Effective Date of this Rule 23(b)(2) Class Settlement Agreement and continuing for the duration of the release and covenant not to sue set forth in this Rule 23(b)(2) Class Settlement Agreement, the Mastercard Defendants will not increase any of their posted rates for Applicable Domestic Credit Transactions above Mastercard's posted rates for Applicable Domestic Credit Transactions effective as of December 31, 2023, which are attached as Appendix J ("Posted Interchange Rate Cap").  Nothing in this Rule 23(b)(2) Class Settlement Agreement shall at any time restrict or

otherwise limit the ability of the Mastercard Defendants to implement posted interchange rates that are lower than the Posted Interchange Rate Cap.

68.     **Independent Verification/Certification.**

(a)     No less than 90 days prior to the commencement of the Average Effective Rate Limit and Posted Interchange Rate Reduction, the Mastercard Defendants will provide to the Independent Auditor all of the following information:

(i)     The new posted interchange rate schedules that will reflect, and will be used to implement, the Posted Interchange Rate Reduction.

(ii)     Sufficient data to demonstrate how the Mastercard Defendants intend to satisfy the Average Effective Rate Limit for the first 12-month period, with such 12-month period commencing on the first day of the month after the Average Effective Rate Limit becomes effective under Paragraph 65(a).  For purposes of clarity, if the Average Effective Rate Limit and Posted Interchange Rate Reduction commence on April 15, 2025, then the 12-month period referenced in this Paragraph is May 1, 2025 to April 30, 2026.

(iii)     A list of merchants with transactions in any channel in which merchant acceptance of a credit product is exclusive such that the exclusive-acceptance transactions are excluded from the Average Effective Rate Limit, as well as verification that such exclusively-accepted transactions have been excluded from the system-wide volume-weighted average Effective Interchange Rate.  Nothing in this Paragraph shall require the Mastercard Defendants to provide to the Independent Auditor the interchange rates or volume attributable to those merchants' exclusive-acceptance transactions.

(b)     Within 60 days following the expiration of the first 12-month period (with such period commencing on the first day of the month after the Average Effective Rate Limit

becomes effective under Paragraph 65(a)), and on an annual basis thereafter, the Mastercard Defendants will provide to the Independent Auditor all of the following information:

    (i)     The system-wide volume-weighted average Effective Interchange Rate on Applicable Domestic Credit Transactions for the prior 12-month period.

    (ii)     A list of merchants with transactions in any channel in which merchant acceptance of a credit product is exclusive such that the exclusive-acceptance transactions are excluded from the Average Effective Rate Limit, as well as verification that such exclusively-accepted transactions have been excluded from the system-wide volume-weighted average Effective Interchange Rate.  Nothing in this Paragraph shall require the Mastercard Defendants to provide to the Independent Auditor the interchange rates or volume attributable to those merchants' exclusive-acceptance transactions.

    (iii)     Data sufficient to demonstrate compliance with the Interchange Adjustment Obligations below, as warranted.

    (iv)     A certification of compliance with the requirements of this section regarding the Average Effective Rate Limit provisions.

    (c)     Following the completion of each of its reviews, the Independent Auditor will submit to the Court a summary of its findings and any other information that the Court may request.  The Independent Auditor's findings as to the Mastercard Defendants' compliance with the Average Effective Rate Limit provisions in this section are final and binding unless disapproved by the Court.  Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.

    69.    **Interchange Adjustment Obligation**.  In the event that the data submitted to the Independent Auditor show that the Mastercard Defendants' system-wide volume-weighted

average Effective Interchange Rate for a 12-month period exceeds the Average Effective Rate Limit, the Mastercard Defendants will retroactively rebalance sufficient transactions within 120 days to a lower interchange level such that the system-wide volume-weighted average Effective Interchange Rate comes into compliance with the Average Effective Rate Limit. The Mastercard Defendants will rebalance transactions on posted interchange rates on a weighted, pro-rata basis for merchants, with such transactions to be rebalanced at the acquirer level. The Independent Auditor will submit to the Court a summary of its findings regarding any necessary reconciliation and rebalancing, and any other information that the Court may request. Any confidential information that the Independent Auditor may provide to the Court shall be filed under seal consistent with the sealing provisions of the operative Protective Order(s) described in Paragraph 113.

70.    **Anti-Circumvention.** The Mastercard Defendants have the right to continue setting default and custom interchange rates and network fees (i.e., fees other than interchange fees that the Mastercard Defendants assess to acquirers or issuers in connection with Mastercard-Branded Credit Card transactions, including any merchant location fee), subject to the commitments in this Rule 23(b)(2) Class Settlement Agreement. The Mastercard Defendants will not circumvent or attempt to circumvent these commitments either directly or indirectly. In particular, but not limited to, the Mastercard Defendants will refrain from implementing practices that have the equivalent object or effect of interchange rates, including specifically but not limited to implementing programs whereby the Mastercard Defendants systematically transfer Mastercard network fees assessed to acquirers and pass the economics to issuers. The Mastercard Defendants also will refrain from actions that have the effect of artificially reducing the calculated average Effective Interchange Rate for Applicable Domestic Credit Transactions, for example, manipulating which credit products are or are not subject to the "Honor All Cards"

Rule for the specific purpose of affecting the calculation of the average Effective Interchange Rate.  Except for the anti-circumvention provisions stated herein, these provisions are not intended to limit or restrict the Mastercard Defendants' ability to set issuer or acquirer fee programs, or negotiate custom fee incentives with any particular issuer, acquirer, or merchant, or sets of them.  The Mastercard Defendants further agree that the merchant benefits received from the commitments in this Rule 23(b)(2) Class Settlement Agreement will not be defeated by the Mastercard Defendants increasing other network fees or Merchant Fees to restore the revenues that issuers lost from the interchange commitments herein.  Notwithstanding this provision, the Rule 23(b)(2) Class Plaintiffs and Rule 23(b)(2) Class Counsel agree that the Mastercard Defendants need reasonably necessary flexibility in operating the Mastercard network to respond to market conditions in the ordinary course of business.

71.     **Posted Rate Transparency**.  The Mastercard Defendants will continue to publicly disclose the U.S. interchange rates applicable within each transaction category in each product category.

### Merchant Education Program

72.     Following the Settlement Approval Date, Rule 23(b)(2) Class Counsel will commence a Merchant Education Program, funded by the Merchant Education Expenses identified in Paragraph 9 above.  The topics of Merchant Education will include, but are not limited to, advising merchants and their processors, acquirers, and payments consultants on:

(a)     the proper interpretation and application of, and compliance with all merchant Rules, including those modified by this Rule 23(b)(2) Class Settlement Agreement, and all changes from the historical merchant rules;

(b)     the benefits of this Rule 23(b)(2) Class Settlement Agreement;

(c)     the benefits of steering tools that merchants may use to reduce the costs of acceptance, including those modified by this Rule 23(b)(2) Class Settlement Agreement; and

(d)     the benefits of and the methods for forming and joining Merchant Buying Groups as defined in this Rule 23(b)(2) Class Settlement Agreement.

73.     Merchant Education shall not include any lobbying activities or any activities that disparage any brand, network, issuing bank, or payment card products.  For further clarity, no Merchant Education Expenses shall be used directly or indirectly to fund any lobbying or trade association activities.

74.     All materials and scripts prepared for Merchant Education will be reviewed and approved by Rule 23(b)(2) Class Counsel and, if needed, provided to counsel for the Mastercard Defendants for the purpose of ensuring the accuracy of all materials.  The Mastercard Defendants agree that the Merchant Education materials may include information about permissible scenarios consistent with Appendix G.

75.     The Mastercard Defendants shall make available at least one Mastercard employee knowledgeable with respect to the merchant Rules to be designated as the contact person for, and to provide reasonable assistance to, an administrator designated by Rule 23(b)(2) Class Counsel to answer questions about the Rules and other issues that might arise from the Merchant Education program.

**Limitations on Consideration Provided by the Mastercard Defendants**

76.     The Mastercard Defendants shall not be required to continue or modify their by-laws, Rules, operating regulations, practices, policies, or procedures in any manner other than as provided in Paragraphs 50-71 above.

77.     The Mastercard Defendants' obligations under Paragraphs 50-71 shall extend only up to five years after the commencement of the Average Effective Rate Limit.  After that

date, the Mastercard Defendants shall have the discretion to continue to provide any consideration provided in Paragraphs 50-71 above, but the Mastercard Defendants' obligation to provide any of that consideration under this Rule 23(b)(2) Class Settlement Agreement shall expire.

78.     The Mastercard Defendants retain the right, but are in no way obligated, to further modify their by-laws, Rules, operating regulations, practices, policies, or procedures addressed in Paragraphs 50-71 in a manner that is more permissive of a merchant's ability to engage in the point of sale practices described therein.

79.     Nothing in the foregoing changes to the Mastercard Defendants' Rules, by-laws, and/or operating regulations described in Paragraphs 50-71 above shall affect any obligation of any Defendant or any member of the Rule 23(b)(2) Class to comply with all applicable state or federal laws, including but not limited to state laws regarding surcharging of credit or debit card transactions, and federal and state laws regarding deceptive or misleading disclosures.

**Release and Covenant Not to Sue of the Rule 23(b)(2) Class**

80.     The "Rule 23(b)(2) Class Releasing Parties" are individually and collectively the Rule 23(b)(2) Class Plaintiffs and each member of the Rule 23(b)(2) Class, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, estates, purchasers, predecessors, successors, and assigns — whether or not they object to the settlement set forth in this Rule 23(b)(2) Class Settlement Agreement, and whether or not they exercise any benefit provided under this Rule 23(b)(2) Class Settlement Agreement, whether directly, representatively, derivatively, or in any other capacity.

81.     The "Rule 23(b)(2) Class Released Parties" are all of the following:

(a)     Visa U.S.A. Inc., Visa International Service Association, Visa International, Visa Inc., Visa Asia Pacific Region, Visa Canada Association, Visa Central & Eastern Europe, Middle East & Africa Region, Visa Latin America & Caribbean Region, Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Visa-Branded Cards or to acquire any Visa-Branded Card transactions.

(b)     Mastercard International Incorporated, Mastercard Incorporated, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Mastercard-Branded Cards or to acquire any Mastercard-Branded Card transactions.

(c)     Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; NB Holdings; MBNA America Bank, N.A.; and FIA Card Services, N.A.

(d)     Barclays Bank plc; Barclays Delaware Holdings, LLC (formerly known as Juniper Financial Corporation); Barclays Bank Delaware (formerly known as Juniper Bank); and Barclays Financial Corp.

(e)     Capital One, N.A. (as successor to Capital One F.S.B. and Capital One Bank (USA), N.A.); and Capital One Financial Corporation.

(f)     JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A. (and as successor in interest to Chase Bank USA, N.A. and Washington Mutual Bank); and Paymentech, LLC (and as successor to Chase Paymentech Solutions, LLC).

(g)     Citibank, N.A.; Citigroup Inc.; Citicorp LLC; Citicorp Credit Services, Inc. (USA) (as successor to Citicorp Payment Services, Inc.).

(h)      Fifth Third Bancorp.

(i)      First National Bank of Omaha.

(j)      HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; HSBC Bank plc; and HSBC U.S.A. Inc.

(k)      National City Corporation and National City Bank of Kentucky.

(l)      The PNC Financial Services Group, Inc. (and as acquirer of National City Corporation) and PNC Bank, National Association.

(m)      SunTrust Banks, Inc. (now known as Truist Financial Corporation) and SunTrust Bank (now known as Truist Bank).

(n)      Texas Independent Bancshares, Inc.

(o)      Wachovia Bank, N.A. and Wachovia Corporation.

(p)      Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); and Providian Financial Corporation.

(q)      Wells Fargo & Company (and as successor to Wachovia Corporation) and Wells Fargo Bank, N.A. (and as successor to Wachovia Bank, N.A.).

(r)      Each and every entity or person alleged to be a co-conspirator of any Defendant in any of the complaints in the Action.

(s)      Each of the past, present, or future member or customer financial institutions of Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., Mastercard International Incorporated, or Mastercard Incorporated.

(t)      For each of the entities or persons in Paragraphs 81(a)-(s) above, each of their respective past, present, and future, direct and indirect, parents (including holding

64

companies), subsidiaries, affiliates, and associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), or any other entity in which more than 50% of the equity interests are held.

(u)      For each of the entities or persons in Paragraphs 81(a)-(t) above, each of their respective past, present, and future predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the Defendants to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs 81(a)-(t) above).

(v)      For each of the entities or persons in Paragraphs 81(a)-(u) above, each of their respective past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, estates, shareholders, advisors, predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of each of the foregoing entities to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs 81(a)-(u) above).

82.      In addition to the effect of the Rule 23(b)(2) Class Settlement Order and Final Judgment filed in accordance with this Rule 23(b)(2) Class Settlement Agreement, including but not limited to any *res judicata* effect:

(a)      The Rule 23(b)(2) Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(2) Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, to the extent that they seek any form of declaratory, injunctive, or equitable relief, or attorneys' fees, costs, expenses, or interest, to the extent such fees, costs, expenses, or interest are related to those

claims, demands, actions, suits, and causes of action, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Class Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the Settlement Approval Date or accrue no later than five years after the commencement of the Average Effective Rate Limit, arising out of or relating to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Class Released Party that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act.  For avoidance of doubt, this release shall extend to, but only to, the fullest extent permitted by federal law.

(b)     It is expressly agreed, for purposes of clarity, that any claims that seek any form of declaratory, injunctive, or equitable relief arising out of or relating to any of the following conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act are claims that were or could have been alleged in this Action and relate to the subject matter thereof:

(i)     any interchange fees, interchange rates, or any Rule of any Visa Defendant or Mastercard Defendant relating to interchange fees, interchange rates, or to the setting of interchange fees or interchange rates with respect to any Visa-Branded Card transactions in the United States or any Mastercard-Branded Card transactions in the United States;

(ii)      any Merchant Fee of any Rule 23(b)(2) Class Released Party

relating to any Visa-Branded Card transactions in the United States or any Mastercard-Branded

transactions in the United States;

(iii)     any actual or alleged "no surcharge" rules, "honor all cards" rules,

"honor all issuers" rules, "honor all devices" rules, rules requiring the honoring of all credentials

or accounts, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules,

"anti-steering" rules, rules that limit merchants in favoring or steering customers to use certain

payment systems, "all outlets" rules, "no bypass" rules, "no multi-issuer" rules, "no multi-bug"

rules, routing rules, cross-border acquiring rules, card authentication or cardholder verification

rules, "cardholder selection" rules or requirements, PAVD rules, rules or conduct relating to

routing options regarding acceptance technology for mobile, e-commerce, or online payments, or

development and implementation of tokenization standards;

(iv)      any reorganization, restructuring, initial or other public offering, or

other corporate structuring of any Visa Defendant or Mastercard Defendant;

(v)       any service of an employee or agent of any Rule 23(b)(2) Class

Released Party on any board or committee of any Visa Defendant or Mastercard Defendant; or

(vi)      any actual or alleged agreement (or alleged continued participation

therein) (A) between or among any Visa Defendant and any Mastercard Defendant, (B) between

or among any Visa Defendant or Mastercard Defendant and any other Rule 23(b)(2) Class

Released Party or Parties, or (C) between or among any Defendant or Rule 23(b)(2) Class

Released Party or Parties, relating to (i)-(v) above or to any Rule 23(b)(2) Class Released Party's

imposition of, compliance with, or adherence to (i)-(v) above.

(c)      For purposes of clarity, references to the Rules identified in this

Paragraph 82 mean those Rules as they are or were in place on December 18, 2020 and up to the

Settlement Approval Date, Rules as they may be modified in the manner provided in Paragraphs 18-39 and 50-71 above, and Rules in place thereafter that are substantially similar to those Rules.

83.     Each Rule 23(b)(2) Class Releasing Party further expressly and irrevocably waives, and fully, finally, and forever settles and releases, any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in the preceding Paragraphs 80-82. Without limiting the generality of the foregoing, each Rule 23(b)(2) Class Releasing Party expressly and irrevocably waives and releases any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party might otherwise have in relation to the release by virtue of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction. SECTION 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." In addition, although each Rule 23(b)(2) Class Releasing Party may hereafter discover facts other than, different from, or in addition to those that it or he or she knows or believes to be true with respect to any claims released in the preceding Paragraphs 80-82, each Rule 23(b)(2) Class Releasing Party hereby expressly and irrevocably waives, and fully, finally, and forever settles, discharges, and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claims within the scope of the preceding Paragraphs 80-82, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts. Rule

23(b)(2) Class Plaintiffs acknowledge, and the members of the Rule 23(b)(2) Class shall be deemed by operation of the Rule 23(b)(2) Class Settlement Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of this Rule 23(b)(2) Class Settlement Agreement.

84.    The release in Paragraphs 80-83 above does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests.

85.    Notwithstanding anything to the contrary in Paragraphs 80-84 above, the release in Paragraphs 80-84 above shall not release:

(a)    Any claim of a Rule 23(b)(2) Class Releasing Party that is based on standard commercial disputes arising in the ordinary course of business under contracts or commercial relations regarding loans, lines of credit, or other related banking or credit relations, individual chargeback disputes, products liability, breach of warranty, misappropriation of cardholder data or invasion of privacy, compliance with technical specifications for a merchant's acceptance of Visa-Branded Credit Cards or Debit Cards, or Mastercard-Branded Credit Cards or Debit Cards, and any other dispute arising out of a breach of any contract between any of the Rule 23(b)(2) Class Releasing Parties and any of the Rule 23(b)(2) Class Released Parties; provided, however, that Paragraphs 80-84 above and not this Paragraph shall control in the event that any such claim challenges the legality of interchange rules, interchange rates, or interchange fees, or any other Rule, fee, charge, or other conduct covered by any of the claims released in Paragraphs 80-84 above.

(b)    Claims based only on an injury suffered as (i) a payment card network competitor of the Visa Defendants or the Mastercard Defendants, or (ii) an ATM operator that is

not owned by, or directly or indirectly controlled by, one or more of the Rule 23(b)(2) Class Released Parties.

(c)     Any claim of a Rule 23(b)(2) Class Releasing Party seeking monetary damages but not any form of declaratory, injunctive, or equitable relief with respect to the claims released herein.

86.     Upon the Settlement Approval Date each of the Rule 23(b)(2) Class Releasing Parties agrees and covenants not to:  (a) sue any of the Rule 23(b)(2) Class Released Parties on the basis of any claim released herein; (b) assist any third party in commencing or maintaining any private civil lawsuit against any Rule 23(b)(2) Class Released Party related in any way to any claim released herein; or (c) take any action or make any claim until five years after the commencement of the Average Effective Rate Limit that a Rule 23(b)(2) Class Released Party has continued to participate in, and failed to withdraw from, any alleged unlawful conspiracies or agreements relating to the claims released herein, which allegedly arise from or relate to the pre-IPO structure or governance of any of the Visa Defendants or the pre-IPO structure or governance of any of the Mastercard Defendants, or any Bank Defendant's participation therein. For the avoidance of doubt, however, nothing in this Paragraph shall preclude a Rule 23(b)(2) Class Releasing Party from taking any action compelled by law or court order.

87.     Each Rule 23(b)(2) Class Releasing Party further releases each of the Visa Defendants, Mastercard Defendants, and Bank Defendants and their counsel and experts in this Action from any claims that seek any form of declaratory, injunctive, or equitable relief relating to the defense and conduct of this Action, including the negotiation and terms of this Rule 23(b)(2) Class Settlement Agreement or any other settlement agreement in this Action, except for any claims relating to enforcement of this Rule 23(b)(2) Class Settlement Agreement.  Each Rule 23(b)(2) Class Releasing Party releases the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2)

Class Counsel, and their respective experts in *Barry's*, from any claims relating to their institution or prosecution of *Barry's*, including the negotiation and terms of this Rule 23(b)(2) Class Settlement Agreement, except for any claims relating to enforcement of this Rule 23(b)(2) Class Settlement Agreement.

88.     For purposes of clarity, it is specifically intended for the release and covenant not to sue provisions in this Rule 23(b)(2) Class Settlement Agreement to preclude all members of the Rule 23(b)(2) Class from seeking or obtaining any form of declaratory, injunctive, or equitable relief with respect to the claims released herein until five years after the commencement of the Average Effective Rate Limit with respect to any Rule of any Visa Defendant or any Mastercard Defendant in effect between December 18, 2020 and the Settlement Approval Date, and the compliance by any Bank Defendant with any such Rule, as it is alleged to exist, now exists, may be modified in the manner provided in Paragraphs 18-39 and 50-71 above, or may in the future exist in the same or substantially similar form thereto.

89.     In the event that this Rule 23(b)(2) Class Settlement Agreement is terminated pursuant to Paragraphs 102-103 below, or any condition for the Settlement Approval Date is not satisfied, the release and covenant not to sue provisions in this Rule 23(b)(2) Class Settlement Agreement shall be null and void and unenforceable.

**Motion for Approval of this Rule 23(b)(2) Class Settlement Agreement**

90.     Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants agree to use reasonable and good faith efforts to effectuate the Court's final approval of this Rule 23(b)(2) Class Settlement Agreement, including filing necessary motion papers and scheduling any necessary hearings for a date and time that are convenient for the Court.

91.     Rule 23(b)(2) Class Plaintiffs and Rule 23(b)(2) Class Counsel agree to file with the Court a motion and supporting papers seeking approval of this Rule 23(b)(2) Class Settlement Agreement, after providing the Visa Defendants and the Mastercard Defendants with at least ten business days advance notice of the contents of those papers.

92.     The motion and supporting papers seeking approval of this Rule 23(b)(2) Class Settlement Agreement shall seek the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order in the form in Appendix E hereto, which will:

(a)     Determine that notice of *Barry's* and this Rule 23(b)(2) Class Settlement Agreement should be provided to members of the Rule 23(b)(2) Class, and appoint Epiq Systems, Inc. as the Class Administrator to assist Rule 23(b)(2) Class Counsel in effectuating and administering the Notice Plan.

(b)     Approve the notice to be provided to the Rule 23(b)(2) Class in substantially the form described in the Notice Plan and budget contained in Appendix C hereto, including use of the website notice and the publication notice in substantially the form contained in Appendix D hereto, and direct any further notice (and expenses therefor) that the Court may find necessary to provide due process.

(c)     Order that Defendants make the payments for Notice Costs described in Paragraph 8 above within ten business days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order.

(d)     Stay *Barry's* and all further proceedings in MDL 1720, to the extent that they seek declaratory, injunctive, or equitable relief against the Defendants that is being released against the Rule 23(b)(2) Class Released Parties, except for proceedings in MDL 1720 related to effectuating and complying with this Rule 23(b)(2) Class Settlement Agreement, pending the

Court's determination of whether this Rule 23(b)(2) Class Settlement Agreement should be finally approved or the termination of this Rule 23(b)(2) Class Settlement Agreement.

(e)    Pending the Court's determination of whether this Rule 23(b)(2) Class Settlement Agreement should be approved or the termination of this Rule 23(b)(2) Class Settlement Agreement, enjoin the members of the Rule 23(b)(2) Class from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any claims being released against the Rule 23(b)(2) Class Released Parties, except for proceedings in MDL 1720 related to effectuating and complying with this Rule 23(b)(2) Class Settlement Agreement.

(f)    Order the following schedule (or as the Court may modify it) for further proceedings in connection with this Rule 23(b)(2) Class Settlement Agreement:

(i)    Within 30 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Notice Plan shall be substantially completed and any motions seeking approval of Attorneys' Fees and Expenses shall be filed with the Court.

(ii)    Within 90 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, any objections to the Rule 23(b)(2) Class Settlement Agreement or motions seeking approval of any Attorneys' Fees and Expenses shall be filed with the Court.

(iii)    Within 120 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, any replies and supporting papers that respond to any objections to this Rule 23(b)(2) Class Settlement Agreement or motions seeking approval of Attorneys' Fees and Expenses shall be filed with the Court.

(iv)    At least 150 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, set a date and time for a final approval hearing

convenient for the Court, at which hearing the Court will conduct an inquiry into the fairness, reasonableness, and adequacy of this Rule 23(b)(2) Class Settlement Agreement, address any objections to it, and determine whether to finally approve this Rule 23(b)(2) Class Settlement Agreement and make any awards of Attorneys' Fees and Expenses.

93.    The motion and supporting papers seeking approval of this Rule 23(b)(2) Class Settlement Agreement also shall seek the Court's entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment in the form in Appendix F hereto, which will:

(a)    Determine that the Court has jurisdiction over the Rule 23(b)(2) Class Plaintiffs, all members of the Rule 23(b)(2) Class, and the Defendants, and jurisdiction to approve this Rule 23(b)(2) Class Settlement Agreement.

(b)    Approve the notice procedures provided to the Rule 23(b)(2) Class as fair, adequate, and sufficient, and as reasonably calculated to apprise members of the Rule 23(b)(2) Class of the Action, this Rule 23(b)(2) Class Settlement Agreement, and their objection rights, and as fully satisfying the requirements of Federal Rule of Civil Procedure 23, any other applicable laws or rules of the Court, and due process.

(c)    Finally approve this Rule 23(b)(2) Class Settlement Agreement, including its consideration and release provisions, and find that the Rule 23(b)(2) Class Settlement Agreement was made in good faith, following arm's-length negotiations, and was not collusive, and further find that the Rule 23(b)(2) Class Settlement Agreement is fair, reasonable, and adequate for the Rule 23(b)(2) Class, and consistent with the requirements of federal law and all applicable court rules, including Federal Rule of Civil Procedure 23.

(d)    Certify that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

(e)     Incorporate all terms and conditions of this Rule 23(b)(2) Class Settlement Agreement by reference, state the settlement consideration and full terms of the release and covenant not to sue of the Rule 23(b)(2) Class, provide that each Rule 23(b)(2) Class Releasing Party unconditionally, fully, and finally releases and forever discharges each of the Rule 23(b)(2) Class Released Parties from all released claims and waives any rights of Rule 23(b)(2) Class members to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws.

(f)     Enjoin all members of the Rule 23(b)(2) Class, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any claims released against Rule 23(b)(2) Class Released Parties, and enjoin all members of the Rule 23(b)(2) Class, and those subject to their control, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any claims released against Rule 23(b)(2) Class Released Parties.

(g)     Provide that the Court retains exclusive continuing jurisdiction in MDL 1720 over the Rule 23(b)(2) Class Plaintiffs, the members of the Rule 23(b)(2) Class, and the Defendants to implement, administer, consummate, and enforce this Rule 23(b)(2) Class Settlement Agreement and the Rule 23(b)(2) Class Settlement Order and Final Judgment, including any disputes relating to, or arising out of, the release and covenant not to sue of the Rule 23(b)(2) Class or any claim concerning declaratory, injunctive, or equitable relief with respect to any by-law, Rule, operating regulation, practice, policy, or procedure of any Visa Defendant or Mastercard Defendant.

(h)     Direct the dismissal with prejudice and without costs (except as provided for herein), of all claims for declaratory, injunctive, and equitable relief released herein against

any of the Defendants and any of the Rule 23(b)(2) Class Released Parties in *Barry's* and in all other putative class and individual actions consolidated in MDL 1720 and listed in Appendix A hereto.

(i)     Determine that there is no just reason for delay in entering the final judgment, and direct that the Rule 23(b)(2) Class Settlement Order and Final Judgment shall be final and appealable.

**Rule 23(b)(2) Class Settlement Notice and Objections**

94.     Within ten days after the filing with the Court of this Rule 23(b)(2) Class Settlement Agreement and the accompanying motion papers seeking its approval, the Visa Defendants and the Mastercard Defendants shall cause notice of this Rule 23(b)(2) Class Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715, and will certify to the Court that the notice was provided.

95.     Rule 23(b)(2) Class Counsel and the Class Administrator shall be responsible for and shall carry out the procedures for notice to the Rule 23(b)(2) Class, as ordered by the Court, and shall perform such related duties as may be necessary to provide those notice procedures.

96.     Rule 23(b)(2) Class Counsel shall pay the Class Administrator's expenses for the foregoing notice activities, including those of any third-party vendors it uses to perform tasks necessary for the implementation or effectuation of its duties, from the Rule 23(b)(2) Class Settlement Escrow Account.  In no event shall any Defendant or Rule 23(b)(2) Class Released Party have any obligation, responsibility, or liability with respect to the Class Administrator or the Notice Plan, including with respect to the costs, administration expenses, or any other charges for any notice procedures, except for the payments provided in Paragraph 8 above.

97.     The Class Administrator shall complete the website and publication notice to members of the Rule 23(b)(2) Class, using the Rule 23(b)(2) Class Notices contained in Appendix D hereto, as provided in the Rule 23(b)(2) Class Settlement Notice and Scheduling Order or as otherwise ordered by the Court.

98.     Within forty-five days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Class Administrator shall prepare and file with the Court a report that confirms that the Notice Plan was carried out and that the website notice, publication notice, and any other notice to members of the Rule 23(b)(2) Class was provided in the manner directed by the Court.

99.     As provided in the Rule 23(b)(2) Class Settlement Notice and Scheduling Order:

(a)     Any Objector must file with the Court within the Class Objection Period and send to a designee of Rule 23(b)(2) Class Counsel and a designee of counsel for the Defendants, by first-class mail and postmarked within the Class Objection Period, a written statement of objections.  The Objector's statement must:  (i) contain the words "In re Interchange Fee and Merchant Discount Antitrust Litigation"; (ii) state each and every objection of the Objector and the specific reasons therefor; (iii) provide all legal support and all evidence that the Objector wishes to bring to the Court's attention in support of any objection; (iv) state the full name, address, and telephone number of the Objector; (v) provide information sufficient to establish that the Objector is a member of the Rule 23(b)(2) Class; and (f) state the full name, mail address, email address, and telephone number of any counsel representing the Objector in connection with the objections.

(b)     In addition, any Objector or counsel for an Objector that desires to appear at the final approval hearing must file with the Court within the Class Objection Period, and send to a designee of Rule 23(b)(2) Class Counsel and a designee of counsel for the Defendants, by

first-class mail and postmarked within the Class Objection Period, a separate notice of intention to appear that identifies by name, position, address, and telephone number each person who intends to appear at the approval hearing on behalf of the Objector.

100.    Upon receipt of any objection to the Rule 23(b)(2) Class Settlement Agreement or notice of intention to appear at the final approval hearing, Rule 23(b)(2) Class Counsel, counsel for the Defendants, and the Class Administrator shall confer to ensure that they each receive a complete copy of all objections and any notice of intention to appear.

101.    The Court may consider any applications for Attorneys' Fees and Expenses separately from the motion for approval of this Rule 23(b)(2) Class Settlement Agreement, and may enter orders regarding such applications separately from the Rule 23(b)(2) Class Settlement Order and Final Judgment.  Any rehearing, reconsideration, vacatur, review, appeal, or any other action taken regarding only a separate order concerning only an application for Attorneys' Fees and Expenses, and not in any way concerning the Rule 23(b)(2) Class Settlement Order and Final Judgment, shall not delay the Settlement Final Date that otherwise would occur with respect to the Rule 23(b)(2) Class Settlement Order and Final Judgment.

**Termination**

102.    In the event that any condition for the Settlement Approval Date is not satisfied, Rule 23(b)(2) Class Plaintiffs as a group or Defendants as a group may terminate this Rule 23(b)(2) Class Settlement Agreement.

103.    Rule 23(b)(2) Class Plaintiffs as a group or the Defendants as a group, after conferring with the other group, also may unilaterally terminate this Rule 23(b)(2) Class Settlement Agreement by providing written notice to the other parties and the Court within twenty business days in the event that the Court's Rule 23(b)(2) Class Settlement Order and Final Judgment are materially modified or not fully affirmed on any appeal or otherwise,

including but not limited to any modification of the definition of the Rule 23(b)(2) Class (from which exclusions are not permitted), and including but not limited to any modification of the release and covenant not to sue provided by the Rule 23(b)(2) Class.  Rule 23(b)(2) Class Plaintiffs and Defendants agree to confer in good faith about whether to modify the twenty business day period provided in this Paragraph based on the circumstances.

104.    In the event that this Rule 23(b)(2) Class Settlement Agreement is terminated pursuant to Paragraphs 102-103 above:

(a)    Two-thirds of any sums remaining in the Rule 23(b)(2) Class Settlement Escrow Account, less any taxes due and class administration costs approved by the Court and already paid or incurred, shall promptly be paid to an account that the Visa Defendants shall designate, and one-third of any sums in the Rule 23(b)(2) Class Settlement Escrow Account, less any taxes due and class administration costs approved by the Court and already paid or incurred, shall promptly be paid to an account that the Mastercard Defendants shall designate.

(b)    The Visa Defendants shall no longer be obligated to comply with Paragraphs 16-43 above, and the Mastercard Defendants shall no longer be obligated to comply with Paragraphs 48-75 above.

(c)    The terms and conditions of this Rule 23(b)(2) Class Settlement Agreement, any publicly disseminated information regarding this Rule 23(b)(2) Class Settlement Agreement, and any orders, motion filings, objections, or oral argument concerning this Rule 23(b)(2) Class Settlement Agreement, including any motion papers with respect to final approval of this Rule 23(b)(2) Class Settlement Agreement, or for Attorneys' Fees and Expenses, may not thereafter be used as evidence, and shall not be admissible as such, in the Action or any other civil action or other proceeding.

(d)     With the exception of Paragraphs 4-7, 96, 104(a)-(c) above and Paragraphs 113-115 below, this Rule 23(b)(2) Class Settlement Agreement, including its release and covenant not to sue, shall be null and void, and of no force and effect, and the Rule 23(b)(2) Class Plaintiffs and the Defendants shall revert to their positions before the execution of this Rule 23(b)(2) Class Settlement Agreement as if this Rule 23(b)(2) Class Settlement Agreement had not been reached or executed.

**Continuing Court Supervision and Jurisdiction**

105.    The Visa Defendants' obligations under Paragraphs 16-43 are subject to modification by the Court, upon the motion of either the Visa Defendants or Rule 23(b)(2) Class Counsel, pursuant to the processes and standards for modification of consent decrees.  The Mastercard Defendants' obligations under Paragraphs 48-75 are subject to modification by the Court, upon the motion of either the Mastercard Defendants or Rule 23(b)(2) Class Counsel, pursuant to the processes and standards for modification of consent decrees.

106.    The Court will retain continuing jurisdiction over the Rule 23(b)(2) Class Plaintiffs, the members of the Rule 23(b)(2) Class, and the Defendants to implement, administer, consummate, and enforce this Rule 23(b)(2) Class Settlement Agreement and the Rule 23(b)(2) Class Settlement Order and Final Judgment.  The Court's implementation and administration of this Rule 23(b)(2) Class Settlement Agreement shall include, without limitation, the receipt and review of information provided to the Court by the Independent Auditor, as specified above.

107.    The Defendants and the Rule 23(b)(2) Class Plaintiffs agree, and the members of the Rule 23(b)(2) Class will be deemed to have agreed, to submit irrevocably to the exclusive jurisdiction of the United States District Court for the Eastern District of New York for the resolution of any matter covered by the Rule 23(b)(2) Class Settlement Order and Final

Judgment, or the applicability of this Rule 23(b)(2) Class Settlement Agreement or the Rule 23(b)(2) Class Settlement Order and Final Judgment.

108.    All applications to the Court with respect to any aspect of this Rule 23(b)(2) Class Settlement Agreement or the Rule 23(b)(2) Class Settlement Order and Final Judgment shall be presented to and be determined by United States District Court Judge Margo K. Brodie for resolution as a matter within the scope of MDL 1720, or, if she is not available, any other District Court Judge designated by the Court.  Without limiting the generality of the foregoing, it is hereby agreed that any suit, action, proceeding, or dispute of a Rule 23(b)(2) Class Plaintiff or member of the Rule 23(b)(2) Class, in which the provisions of this Rule 23(b)(2) Class Settlement Agreement or the Rule 23(b)(2) Class Settlement Order and Final Judgment are asserted as a ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection, constitutes a suit, action, proceeding, or dispute arising out of or relating to this Rule 23(b)(2) Class Settlement Agreement or the Rule 23(b)(2) Class Settlement Order and Final Judgment.

109.    In the event that the provisions of the Rule 23(b)(2) Class Settlement Order and Final Judgment are asserted by any Defendant or Rule 23(b)(2) Class Released Party as a ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection in any other suit, action, or proceeding by a Rule 23(b)(2) Class Plaintiff or member of the Rule 23(b)(2) Class, it is hereby agreed that the Rule 23(b)(2) Class Released Parties shall be entitled to an immediate stay of that suit, action, or proceeding until after the Court has entered an order or judgment determining any issues relating to the defense or objections based on such provisions, and no further judicial review of such order or judgment is possible.

**Additional Terms and Conditions**

110.    The Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants and the Mastercard Defendants, and counsel for those Defendants agree that they:

(a)    Shall not in any way encourage, promote, or solicit any person, business, or entity within the definition of the Rule 23(b)(2) Class, or their counsel, to object to this Rule 23(b)(2) Class Settlement Agreement, or to seek any relief inconsistent with this Rule 23(b)(2) Class Settlement Agreement.

(b)    Shall not in any way encourage, promote, or solicit any person, business, or entity within the definition of the Rule 23(b)(2) Class, or their counsel, to facilitate, induce, or cause the non-fulfillment of a condition, or the occurrence of an event, that could result in the termination of this Rule 23(b)(2) Class Settlement Agreement.

111.    The Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants shall undertake reasonable efforts to timely obtain any required approvals or consents to execute and proceed with this Rule 23(b)(2) Class Settlement Agreement.

112.    The Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants shall execute all documents and perform any additional acts reasonably necessary and proper to effectuate the terms of this Rule 23(b)(2) Class Settlement Agreement.

113.    The terms and provisions of the Fourth Amended Protective Order, filed on October 29, 2009, and approved by the Court on October 30, 2009, and the terms and provisions of the Protective Order filed on April 3, 2015 on the 14-md-01720 docket and approved by the Court on April 9, 2015, shall survive and continue in effect through and after any final adjudication of the Action.

114.     Each of the Defendants specifically denies any and all liability in this Action.  It is expressly understood and agreed that, by entering into this Rule 23(b)(2) Class Settlement Agreement, each Defendant, and each Rule 23(b)(2) Class Released Party, is not admitting any liability or wrongdoing whatsoever to the Rule 23(b)(2) Class Plaintiffs, any member of the Rule 23(b)(2) Class, or any other person or entity, and is not admitting the truth of any allegations or circumstances, nor is any Defendant or other Rule 23(b)(2) Class Released Party waiving any defense.

115.     This Rule 23(b)(2) Class Settlement Agreement, and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights, positions, or privileges of any Rule 23(b)(2) Class Plaintiff or Defendant or other Rule 23(b)(2) Class Released Party (except as expressly provided for in this Rule 23(b)(2) Class Settlement Agreement), and shall not be construed as, or deemed to be, an admission or evidence on the part of any Defendant or other Rule 23(b)(2) Class Released Party of any violation of any statute, regulation, law, rule, or principle of common law or equity, or of any liability or wrongdoing, or of the truth or merit of any allegations or claims in this Action, and shall not be discoverable, used, offered, or accepted, directly or indirectly, as evidence of such in this Action or any other action, litigation, arbitration, or other proceeding, and shall have no precedential value; provided, however, that nothing contained herein shall preclude use of this Rule 23(b)(2) Class Settlement Agreement in any proceeding to enforce this Rule 23(b)(2) Class Settlement Agreement or the Rule 23(b)(2) Class Settlement Order and Final Judgment.

116.     Nothing in this Rule 23(b)(2) Class Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or

other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

117.    This Rule 23(b)(2) Class Settlement Agreement shall constitute the entire, complete, and integrated agreement between and among the Rule 23(b)(2) Class Plaintiffs, on behalf of themselves and the Rule 23(b)(2) Class, the Visa Defendants, and the Mastercard Defendants, with respect to the settlement of *Barry's*.  All of the Appendices to this Rule 23(b)(2) Class Settlement Agreement are material and integral parts of it and are incorporated by reference as if fully set forth herein.

118.    The terms of this Rule 23(b)(2) Class Settlement Agreement are not severable, but are interdependent and have been agreed to only as a whole by the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants.

119.    This Rule 23(b)(2) Class Settlement Agreement supersedes all prior negotiations and agreements, and is not subject to any condition not provided for in this Rule 23(b)(2) Class Settlement Agreement.  In entering into and executing this Rule 23(b)(2) Class Settlement Agreement, the Rule 23(b)(2) Class Plaintiffs, the Visa Defendants, and the Mastercard Defendants warrant that they are acting upon their respective independent judgments and upon the advice of their respective counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other person or entity, other than the warranties and representations expressly made in this Rule 23(b)(2) Class Settlement Agreement.

120.    This Rule 23(b)(2) Class Settlement Agreement shall be governed, construed, enforced, and administered in accordance with the laws of the State of New York without reference to its conflict of laws principles.

121.    This Rule 23(b)(2) Class Settlement Agreement may not be modified or amended except by a writing signed by the Rule 23(b)(2) Class Plaintiffs, the Visa Defendants, and the Mastercard Defendants, or their respective counsel, and approved by the Court.

122.    This Rule 23(b)(2) Class Settlement Agreement or any portion thereof shall not be construed more strictly against any party to it merely because it may have been prepared by counsel for one of them, it being recognized that because of the arm's-length negotiations resulting in this Rule 23(b)(2) Class Settlement Agreement, all parties to this Rule 23(b)(2) Class Settlement Agreement have contributed substantially and materially to the preparation of it.

123.    All headings used in this Rule 23(b)(2) Class Settlement Agreement are for reference and convenience only and shall not affect the meaning or interpretation of this Rule 23(b)(2) Class Settlement Agreement.

124.    The waiver by any Rule 23(b)(2) Class Plaintiff or Defendant of any breach of this Rule 23(b)(2) Class Settlement Agreement shall not be deemed or construed as a waiver of any other breach of this Rule 23(b)(2) Class Settlement Agreement, whether prior, subsequent, or contemporaneous.

125.    This Rule 23(b)(2) Class Settlement Agreement shall be binding upon, and shall inure to the benefit of, the Rule 23(b)(2) Class Plaintiffs, the members of the Rule 23(b)(2) Class, the Visa Defendants, and the Mastercard Defendants.  The Rule 23(b)(2) Class Released Parties, other than the Visa Defendants and the Mastercard Defendants, are third party beneficiaries of this Rule 23(b)(2) Class Settlement Agreement and are authorized to enforce the provisions of this Rule 23(b)(2) Class Settlement Agreement, including without limitation the release and covenant not to sue provisions in this Rule 23(b)(2) Class Settlement Agreement, the continuing jurisdiction provisions in Paragraphs 105-109 above, and such other provisions of this Rule 23(b)(2) Class Settlement Agreement as are applicable to them.

126.     Any notice or materials to be provided to the Rule 23(b)(2) Class Plaintiffs pursuant to this Rule 23(b)(2) Class Settlement Agreement shall be sent to Rule 23(b)(2) Class Counsel, and any notice or materials to be provided to Defendants pursuant to this Rule 23(b)(2) Class Settlement Agreement shall be sent to their counsel in MDL 1720, whose names and contact information are set forth in Appendix H hereto.  Any notice or materials to be submitted to the Court pursuant to this Rule 23(b)(2) Class Settlement Agreement shall also be filed in MDL 1720 through the Electronic Court Filing (ECF) system of the Court.

127.     Each of the undersigned representatives of each Rule 23(b)(2) Class Plaintiff and Defendant represents that it is fully authorized to enter into, and to execute, this Rule 23(b)(2) Class Settlement Agreement on behalf of that party.  Each of the parties hereto agrees that, in return for the agreements in this Rule 23(b)(2) Class Settlement Agreement, it is receiving good and valuable consideration, the receipt and sufficiency thereof is hereby acknowledged.

128.     This Rule 23(b)(2) Class Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the signatories below have read and understood this Rule 23(b)(2) Class Settlement Agreement, have executed it, represent that the undersigned are authorized to execute this Rule 23(b)(2) Class Settlement Agreement on behalf of their respectively represented parties, have agreed to be bound by its terms, and have duly executed this Rule 23(b)(2) Class Settlement Agreement.

FOR RULE 23(b)(2) CLASS PLAINTIFFS

Dated: _____ March 25 _____, 2024.

By: _____
Steve D. Shadowen
Hilliard & Shadowen LLP

Dated: _____, 2024.

By: _____
Robert G. Eisler
Grant & Eisenhofer P.A.

Dated: _____ March 25 _____, 2024.

By: _____
Michael J. Freed
Freed Kanner London & Millen LLP

Dated: _____, 2024.

By: _____
Linda P. Nussbaum
Nussbaum Law Group, P.C.

FOR RULE 23(b)(2) CLASS PLAINTIFFS

Dated: _____, 2024.

By: _____
Steve D. Shadowen
Hilliard & Shadowen LLP

Dated: *Mara 25*, 2024.

By: _____
Robert G. Eisler
Grant & Eisenhofer P.A.

Dated: _____, 2024.

By: _____
Michael J. Freed
Freed Kanner London & Millen LLP

Dated: _____, 2024.

By: _____
Linda P. Nussbaum
Nussbaum Law Group, P.C.

FOR RULE 23(b)(2) CLASS PLAINTIFFS

Dated: _____, 2024.

By: _____
    Steve D. Shadowen
    Hilliard & Shadowen LLP


Dated: _____, 2024.

By: _____
    Robert G. Eisler
    Grant & Eisenhofer P.A.


Dated: _____, 2024.

By: _____
    Michael J. Freed
    Freed Kanner London & Millen LLP


Dated: March 25, 2024.

By: _____
    Linda P. Nussbaum
    Nussbaum Law Group, P.C.

FOR DEFENDANTS VISA INC., VISA U.S.A. INC., AND VISA INTERNATIONAL SERVICE ASSOCIATION

Dated:  March 25, 2024.          By:  _____

                                                 Julie B. Rottenberg
                                                 EVP, General Counsel
                                                 Visa Inc.

FOR DEFENDANTS MASTERCARD INTERNATIONAL INCORPORATED AND MASTERCARD INCORPORATED

Dated:  _____, 2024.          By:  _____

                                                 Rob Beard
                                                 Chief Legal Officer, General Counsel and
                                                 Head of Global Policy
                                                 Mastercard International Incorporated

FOR DEFENDANTS VISA INC., VISA U.S.A. INC., AND VISA INTERNATIONAL SERVICE ASSOCIATION

Dated: _____, 2024.          By: _____

         Julie B. Rottenberg
         EVP, General Counsel
         Visa Inc.

FOR DEFENDANTS MASTERCARD INTERNATIONAL INCORPORATED AND MASTERCARD INCORPORATED

Dated: 3/25/2024 | 10:32 AM EDT, 2024.          By: _____

         Rob Beard
         Chief Legal Officer, General Counsel and
         Head of Global Policy
         Mastercard International Incorporated

## APPENDIX A – Actions in MDL 1720

*7-Eleven, Inc., et al. v. Visa Inc., et al.*, No. 13-cv-05746-MKB-JAM (E.D.N.Y.), formerly No. 13-cv-04442-AKH (S.D.N.Y.).

*Block, Inc. v. Visa Inc., et al.*, No. 23-cv-05377-MKB-JAM (E.D.N.Y.).

*Camp Grounds Coffee, LLC, et al. v. Visa, Inc., et al.*, No. 21-cv-03401-MKB-JAM (E.D.N.Y.).

*E-Z Mart Stores, Inc., et al. v. Visa Inc., et al*, No. 13-cv-05352-MKB-JAM (E.D.N.Y.), formerly No. 13-cv-00697 (E.D. Tex.).

*Grubhub Holdings Inc., et al. v. Visa Inc., et al.*, No. 19-cv-06555-MKB-JAM (E.D.N.Y.), formerly No. 19-cv-07273 (N.D. Ill.).

*The Home Depot, Inc., et al. v. Visa Inc., et al.*, No. 16-cv-5507-MKB-JAM (E.D.N.Y.), formerly No. 16-cv-01947-MHC (N.D. Ga.)

*Intuit Inc., et al. v. Visa Inc., et al.*, No. 21-cv-01175-MKB-JAM (E.D.N.Y.), formerly No. 21-cv-01234-VKD (N.D. Cal.)

*Lanning, et al. v. Visa, Inc., et al.*, No. 21-cv-02360-MKB-JAM (E.D.N.Y.).

*Old Jericho Enterprise Inc., et al. v. Visa, Inc., et al.*, No. 20-cv-02394-MKB-JAM (E.D.N.Y.).

*Palladino, et al. v. JP Morgan Chase & Co., et al.*, No. 23-CV-01215-MKB-JAM (E.D.N.Y.), formerly No. CGC-22-603801 (Cal. Super. Ct.).

*Target Corporation, et al. v. Visa Inc., et al.*, No. 13-cv-05745-MKB-JAM (E.D.N.Y.), formerly No. 13-cv-3477-AKH (S.D.N.Y.).

*Visa U.S.A. Inc., et al. v. National Association of Convenience Stores, et al.*, No. 13-cv-03074-MKB-JAM (E.D.N.Y.).

## APPENDIX B – Rule 23(b)(2) Class Settlement Escrow Agreement

### CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated March ___, 2024 is made among Hilliard & Shadowen LLP, Grant & Eisenhofer P.A., Freed Kanner London & Millen LLP, and Nussbaum Law Group, P.C., ("Rule 23(b)(2) Class Counsel"), and THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow agent ("Rule 23(b)(2) Class Escrow Agent").

### Recitals

A.      This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants (the "Settlement Agreement") dated March 25, 2024, attached hereto as Exhibit A, entered into by, among others, Rule 23(b)(2) Class Counsel on behalf of the Rule 23(b)(2) Class Plaintiffs, will be paid for costs of notice, settlement administration, merchant education, attorneys' fees and incentive awards to class plaintiffs, tax liabilities, and other uses in connection with a class action captioned *Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.) (also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.)) ("Class Action"), pending in the United States District Court for the Eastern District of New York (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, Defendants have agreed to pay or cause to be paid up to $193.3 million in cash (the "Settlement Amount") for the purposes described in paragraph A above in the Class Action.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into the Rule 23(b)(2) Class Settlement Escrow Account and used to satisfy payments described in paragraph A, above, and other costs pursuant to the terms of the Settlement Agreement.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1.      **Appointment of Rule 23(b)(2) Class Escrow Agent.**  The Rule 23(b)(2) Class Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      **The Rule 23(b)(2) Class Settlement Escrow Account.**  The Rule 23(b)(2) Class Escrow Agent shall establish and maintain one or more custodian/escrow accounts titled as Payment Card Interchange Fee Rule 23(b)(2) Settlement Fund (the "Rule 23(b)(2) Class Settlement Escrow

B-1

Account"). Payments will be made by the Defendants pursuant to Paragraphs 8 – 11 of the Settlement Agreement. The Rule 23(b)(2) Class Escrow Agent shall receive the Settlement Amount into the Rule 23(b)(2) Class Settlement Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein and shall be released by the Rule 23(b)(2) Class Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund, if appropriate.

3. **Investment of Settlement Fund.** At the written direction of Rule 23(b)(2) Class Counsel, the Rule 23(b)(2) Class Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Rule 23(b)(2) Class Escrow Agent.

4. **Custodian/Escrow Funds Subject to Jurisdiction of the Court.** The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5. **Tax Treatment & Report.** The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Rule 23(b)(2) Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. §1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Rule 23(b)(2) Class Counsel. Rule 23(b)(2) Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Rule 23(b)(2) Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6. **Tax Payments of Settlement Fund.** All taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Rule 23(b)(2) Class Escrow Agent shall timely pay such taxes out of the Settlement Fund without prior order of the Court, as directed by Rule 23(b)(2) Class Counsel. Rule 23(b)(2) Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. Rule 23(b)(2) Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Rule 23(b)(2) Class Escrow Agent

at Rule 23(b)(2) Class Counsel's direction. The Settlement Fund shall indemnify and hold the Defendants harmless for any taxes that may be deemed to be payable by the Defendants by reason of the income earned on the Settlement Fund, and the Rule 23(b)(2) Class Escrow Agent, as directed by Rule 23(b)(2) Class Counsel, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendants pursuant to the terms of the Settlement Agreement, the Defendants shall provide the Rule 23(b)(2) Class Escrow Agent with a properly completed Form W-9.

7.  **Disbursement Instructions**

    (a)    Rule 23(b)(2) Class Counsel may, without further order of the Court or authorization by the Defendants' Counsel, instruct the Rule 23(b)(2) Class Escrow Agent to disburse the funds necessary to pay notice and administration Expenses.

    (b)    Disbursements other than those described in paragraph 7(a), including disbursements for distribution of the Settlement Fund, must be authorized by either (i) an order of the Court, or (ii) the written direction of all 4 of Rule 23(b)(2) Class Counsel: Michael Freed, Steven Shadowen, Robert Eisler, and Linda Nussbaum.

    (c)    In the event funds transfer instructions are given (other than in writing at the time of execution of this Custodian/Escrow Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, the Rule 23(b)(2) Class Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and the Rule 23(b)(2) Class Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if the Rule 23(b)(2) Class Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, the Rule 23(b)(2) Class Escrow Agent may record such call backs. If the Rule 23(b)(2) Class Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by the Rule 23(b)(2) Class Escrow Agent. Rule 23(b)(2) Class Counsel will notify the Rule 23(b)(2) Class Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a

result of the Rule 23(b)(2) Class Escrow Agent's error, the Rule 23(b)(2) Class Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     The Rule 23(b)(2) Class Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Rule 23(b)(2) Class Escrow Agent's reliance upon and compliance with such instructions notwithstanding if such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Rule 23(b)(2) Class Escrow Agent, including, without limitation, the risk of the Rule 23(b)(2) Class Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Rule 23(b)(2) Class Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Rule 23(b)(2) Class Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

**8.   Termination of Settlement**.  If the Settlement Agreement terminates in accordance with its terms, Rule 23(b)(2) Class Counsel shall notify the Rule 23(b)(2) Class Escrow Agent of the termination of the Settlement Agreement.  Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid taxes due, as determined by Rule 23(b)(2) Class Counsel and the Defendant, shall be returned in accordance with instruction from the Rule 23(b)(2) Class Counsel and Defendants.

**9.   Fees**.  The Rule 23(b)(2) Class Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of the Rule 23(b)(2) Class Escrow Agent shall be paid solely from the Settlement Fund.  The Rule 23(b)(2) Class Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Rule 23(b)(2) Class Counsel.  If the Rule 23(b)(2) Class Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

**10.   Duties, Liabilities and Rights of the Rule 23(b)(2) Class Escrow Agent**.  This Custodian/Escrow Agreement sets forth all of the obligations of the Rule 23(b)(2) Class Escrow

Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     The Rule 23(b)(2) Class Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Rule 23(b)(2) Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  The Rule 23(b)(2) Class Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     The Rule 23(b)(2) Class Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent the Rule 23(b)(2) Class Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  The Rule 23(b)(2) Class Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Rule 23(b)(2) Class Settlement Escrow Account only (i) upon approval by Rule 23(b)(2) Class Counsel or (ii) pursuant to an order of the Court.

(c)     The Rule 23(b)(2) Class Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     The Rule 23(b)(2) Class Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     The Rule 23(b)(2) Class Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement.  The Rule 23(b)(2) Class Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Rule 23(b)(2) Class Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Rule 23(b)(2) Class Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Rule 23(b)(2) Class Escrow Agent of, any of the Rule 23(b)(2) Class Escrow Agent's duties under this Agreement, except as a

result of the Rule 23(b)(2) Class Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Rule 23(b)(2) Class Settlement Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, the Rule 23(b)(2) Class Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Rule 23(b)(2) Class Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets.  The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Rule 23(b)(2) Class Escrow Agent a party to same.

11.   <u>**Non-Assignability by Rule 23(b)(2) Class Escrow Agent**</u>. The Rule 23(b)(2) Class Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Rule 23(b)(2) Class Counsel.

12.   <u>**Resignation of the Rule 23(b)(2) Class Escrow Agent**</u>.  The Rule 23(b)(2) Class Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein.  On the effective date of such resignation, the Rule 23(b)(2) Class Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Rule 23(b)(2) Class Settlement Escrow Account to the successor Rule 23(b)(2) Class Escrow Agent, subject to this Custodian/Escrow Agreement.  If a successor Rule 23(b)(2) Class Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then the Rule 23(b)(2) Class Escrow Agent may petition the Court for the appointment of a successor Rule 23(b)(2) Class Escrow Agent, or

other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

     **13.**   **Notices.**  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

| | |
|---|---|
| **If to Rule 23(b)(2) Class Counsel:** | Michael Freed<br>Freed Kanner London & Millen LLC<br>100 Tri-State International<br>Suite 128<br>Lincolnshire, Illinois 60069<br>mfreed@fklmlaw.com<br>0ffice: 224- 632-4501<br>Cell – 847-873-6581<br><br>Steven Shadowen<br>Hilliard & Shadowen LLP<br>1135 W 6th St.<br>#125<br>Austin, TX 78703<br>steve@hilliardshadowenlaw.com<br>Office : 855- 344-3298<br>Cell: 717-903-1177<br><br>Robert Eisler<br>Grant & Eisenhofer P.A.<br>123 Justison Street<br>7th Floor<br>Wilmington, DE 19801<br>reisler@gelaw.com<br>Office: 302-622-7030<br>Cell: 215-738-0090<br><br>Linda Nussbaum<br>Nussbaum Law Group, PC<br>1133 Ave of the Americas,<br>31st  Floor<br>New York, NY, 10036<br>Lnussbaum@nussbaumpc.com<br>Office: 917-438-9189<br>Cell: 914-874-7152 |

|  |  |
|---|---|
| **If to Rule 23(b)(2) Class Escrow Agent:** | THE HUNTINGTON NATIONAL BANK<br>Liz Lambert, Senior Managing Director<br>2 Great Valley Parkway, Suite 300<br>Malvern, PA  19355<br>Telephone: (215) 568-2382<br>E-mail:  liz.lambert@huntington.com |
|  | Susan Brizendine, Trust Officer<br>Huntington National Bank<br>7 Easton Oval – EA5W63<br>Columbus, Ohio 43219<br>Telephone: (614) 331-9804<br>E-mail:  susan.brizendine@huntington.com |

14.    **Patriot Act Warranties.**  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Custodian/Escrow Agreement agree that they will provide the Rule 23(b)(2) Class Escrow Agent with such Identification Information as the Rule 23(b)(2) Class Escrow Agent may request in order for the Rule 23(b)(2) Class Escrow Agent to satisfy the requirements of the Patriot Act.

15.    **Entire Agreement.**  This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.    **Governing Law.**  This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects.  The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding the Rule 23(b)(2) Class Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Rule 23(b)(2) Class Escrow Agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.    **Termination of the Rule 23(b)(2) Class Settlement Escrow Account.**  The Rule 23(b)(2) Class Settlement Escrow Account will terminate after all funds deposited in it, together with all

B-9

interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18. **Miscellaneous Provisions.**

    (a)    **Counterparts.**  This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

    (b)    **Further Cooperation**.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as th eRule 23(b)(2) Class Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give the Rule 23(b)(2) Class Escrow Agent confirmation and assurance of the Rule 23(b)(2) Class Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable the Rule 23(b)(2) Class Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to the Rule 23(b)(2) Class Escrow Agent.

    (c)    **Electronic Signatures.**  The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Rule 23(b)(2) Class Escrow Agent) of a party to this Custodian/Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Custodian/Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

    (d)    **Non-Waiver.**  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**THE HUNTINGTON NATIONAL BANK, as Rule 23(b)(2) Class Escrow Agent**

**By:** _____

     **Liz Lambert, Senior Managing Director**

**Rule 23(b)(2) Class Counsel**

**By:** _____

**Exhibit A**

**Settlement Agreement**

**Exhibit B**

**Fees of Rule 23(b)(2) Class Escrow Agent**

| | |
|---|---|
| **Acceptance Fee:** | **Waived** |

The Acceptance Fee includes the review of the Custodian/Escrow Agreement, acceptance of the role as Rule 23(b)(2) Class Escrow Agent, establishment of Rule 23(b)(2) Class Settlement Escrow Account(s), and receipt of funds.

| | |
|---|---|
| **Annual Administration Fee:** | **Waived** |

The Annual Administration Fee includes the performance of administrative duties associated with the Rule 23(b)(2) Class Settlement Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Custodian/Escrow Agreement.  Administration Fees are payable annually in advance without proration for partial years.

| | |
|---|---|
| **Out of Pocket Expenses:** | **Waived** |

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.

**APPENDIX C — NOTICE PLAN**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**<br><br>**This Document Applies to:** | **No. 05-md-01720 (MKB) (JAM)** |
| ***Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM), also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM).** | |

**DECLARATION OF CAMERON R. AZARI, ESQ.,**
**ON PROPOSED CLASS NOTICE PLAN**

I, Cameron R. Azari, Esq., declare as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing, and implementing large-scale legal notification plans.  Hilsoft is a business unit of Epiq.

4.      Epiq is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters.  Epiq has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below.  My team and I have experience with legal noticing in more than 575 cases, including more than 70 multidistrict litigation settlements, and have prepared notices that have

appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world.  Courts have recognized and approved numerous notice plans developed by Epiq, and those decisions have invariably withstood appellate review.

## RELEVANT EXPERIENCE

5.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many large and significant cases, including:

(a)      A previous settlement in this litigation, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), which involved a $5.5 billion settlement reached by Visa and Mastercard.  An intensive notice program included more than 19.8 million direct mail notices sent to potential class members, together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, with notices in multiple languages, and an extensive online notice campaign featuring banner notices that generated more than 770 million adult impressions.  Sponsored search listings and a settlement website in eight languages expanded the notice program.  For the subsequent settlement reached by Visa and Mastercard, an extensive notice program was implemented, which included over 16.3 million direct mail notices to class members together with more than 354 print publication insertions and banner notices, which generated more than 689 million adult impressions.  The Second Circuit recently affirmed the settlement approval (*See* No. 20-339 *et al.*, — F.4th —, 2023 WL 2506455 (2d Cir. Mar. 15, 2023)) and the claims process is currently ongoing.

(b)      *In Re: Zoom Video Communications, Inc. Privacy Litigation*, 3:20-cv-02155 (N.D. Cal.), involved an extensive notice plan for a $85 million privacy settlement involving Zoom, the most popular videoconferencing platform.  Notice was sent to more than 158 million class members by email or mail, and millions of reminder notices were sent to stimulate claim filings.  The individual notice efforts reached approximately 91% of the class and were enhanced by supplemental media notice, which was provided via regional newspaper notice, nationally distributed digital and social media notice (delivering more than 280 million impressions), sponsored search, an informational release, and a settlement website.

2

APPENDIX C NOTICE PLAN

(c)    *In re Takata Airbag Products Liability Litigation*, MDL No. 2599, 1:15-md-02599 (S.D. Fla.), involved $1.91 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, Ford, and Volkswagen regarding Takata airbags.  The notice plans for those settlements included individual mailed notice to more than 61.8 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

(d)    *In Re: Capital One Consumer Data Security Breach Litigation*, MDL No. 2915, 1:19-md-02915 (E.D. Va.), involved an extensive notice program for a $190 million data breach settlement.  Notice was sent to more than 93.6 million settlement class members by email or mail.  The individual notice efforts reached approximately 96% of the identified settlement class members and were enhanced by a supplemental media plan that included banner notices and social media notices (delivering more than 123.4 million impressions), sponsored search, and a settlement website.

(e)    *In re: Disposable Contact Lens Antitrust Litigation*, 3:15-md-02626 (M.D. Fla.), involved several notice programs to notify retail purchasers of disposable contact lenses regarding four settlements with different settling defendants totaling $88 million.  For each notice program, more than 1.98 million email or postcard notices were sent to potential class members and a comprehensive media plan was implemented, with a well-read nationwide consumer publication, internet banner notices (delivering more than 312.9 million – 461.4 million impressions per campaign), sponsored search listings, and a case website.

(f)    *In re: fairlife Milk Products Marketing and Sales Practices Litigation*, 1:19-cv-03924 (N.D. Ill.), involved a $21 million settlement with The Coca-Cola Company, fairlife, LLC, and other defendants regarding allegations of false labeling and marketing of fairlife milk products.  A comprehensive media-based notice plan was designed and implemented, which included a consumer print publication notice, targeted banner notices, and social media (delivering more than 620.1 million

3

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-3

impressions in English and Spanish nationwide). Combined with individual notice to a small percentage of the class, the notice plan reached approximately 80.2% of the class. The reach was further enhanced by sponsored search, an informational release, and a website.

(g) *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.), involved a $60 million settlement for Morgan Stanley Smith Barney's account holders in response to "Data Security Incidents." More than 13.8 million emailed or mailed notices were delivered, reaching approximately 90% of the identified potential settlement class members. The individual notice efforts were supplemented with nationwide newspaper notice and a settlement website.

(h) *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill. Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

6. Courts have recognized my testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable and/or appropriate under the circumstances. Numerous court opinions and comments regarding my testimony, and the adequacy of our notice efforts, are included in Hilsoft's *curriculum vitae* included as **Attachment 1**.

7. In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Epiq since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Overall, I have more than 23 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in hundreds of successful notice programs.

APPENDIX 2 NOTICE PLAN

8.     The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business.

## OVERVIEW

9.     This declaration details the proposed Settlement Notice Plan ("Notice Plan") and Notices ("Notice" or "Notices") for the Rule 23(b)(2) Settlement in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720 in the United States District Court for the Eastern District of New York.  Epiq designed the proposed Notice Plan based on our extensive prior experience and research into the notice issues particular to this case, and specifically based on our experience with providing notice to the Rule 23(b)(3) Class.  We have analyzed and proposed notice that is appropriate under the circumstances to provide notice to the Rule 23(b)(2) Class.

10.     As described in detail below, the Notice Plan includes:  (i) Publication Notices placed in National Business Publications, National Trade and Specialty Publications, Local Business Journals, Specialty Language and Targeted Newspapers, and U.S. Territory Newspapers; (ii) an all-encompassing  Digital Notice Campaign using banner display notices, social media, podcast and streaming TV advertisements, and targeted website placements; (iii) audio advertisements over Streaming and Satellite Radio; (iv) a Case Website containing all pertinent information and documents related to the Settlement, including a long-form Website Notice, as well as a toll-free telephone number, email and postal address to contact for information regarding the Settlement; (v) Sponsored Search Listings on the three most highly visited search engines that will include links to the Case Website; and (vi) a nationwide Informational Release that will include the Case Website address and the toll-free telephone number to call for information about the Settlement.

11.     We estimate that this blanket coverage of the relevant markets in both print and digital media will reach more than 82% of U.S. Business Owners and more than 84% of all U.S. Adults in Business and Finance Occupations.  *See* ¶ 27, below.

12.     Given the facts that:  (i) the Rule 23(b)(2) Class has already been certified, (ii) there are no claim forms or opt-out forms to be disseminated to Rule 23(b)(2) Class members, who will

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-5

APPENDIX 2 NOTICE PLAN

instead automatically receive the benefits of the Settlement, and (iii) the extensive expected reach of the Notice Plan, there is no need here to incur the additional burden and expense of providing individual notice to millions of Rule 23(b)(2) Class members.  It is our opinion that the Notice Plan provides the best practicable means to provide appropriate notice to the Class.[1]

## DATA PRIVACY AND SECURITY

13.     Epiq has procedures in place to protect the security of class data.  As with all cases, Epiq will maintain extensive data security and privacy safeguards in its official capacity as the Class Administrator for this Action.  A Services Agreement, which formally retains Epiq, will govern Epiq's administration responsibilities for this Action.  Service changes or modification beyond the original contract scope will require formal contract addendum or modification.  Epiq maintains adequate insurance in case of errors.

14.     As a data processor, Epiq performs services on data provided, only as outlined in a contract and/or associated statement(s) of work.  Epiq does not utilize or perform other procedures on personal data provided or obtained as part of services to a client.  Epiq does not use any information provided by class members for any purpose other than providing administration services.  Specifically, the information will not be used, disseminated, or disclosed by or to any other person for any other purpose.

15.     The security and privacy of clients' and class members' information and data are paramount to Epiq.  That is why Epiq has invested in a layered and robust set of trusted security personnel, controls, and technology to protect the data we handle.  To promote a secure environment for client and class member data, industry leading firewalls and intrusion prevention systems protect and monitor Epiq's network perimeter with regular vulnerability scans and penetration tests.  Epiq deploys best-in-class endpoint detection, response, and anti-virus solutions on our endpoints and servers.  Strong authentication mechanisms and multi-factor authentication are required for access to

---

[1] *See, e.g., In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,* 527 F. Supp. 3d 269, 275 (E.D.N.Y. 2021) ( "Where plaintiffs' digital plan will reach 80 percent of the class, requiring them to supplement the plan with individual notice is unnecessarily burdensome."); Fed. R. Civ. P. 23(c)(2)(A) (with respect to a Rule 23(b)(2) class, "the Court may direct appropriate notice").

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-6

Epiq's systems and the data we protect.  In addition, Epiq has employed the use of behavior and signature-based analytics as well as monitoring tools across our entire network, which are managed 24 hours per day, 7 days per week, by a team of experienced professionals.

16.     Epiq's world class data centers are defended by multi-layered, physical access security, including formal ID and prior approval before access is granted, closed-circuit television ("CCTV"), alarms, biometric devices, and security guards, 24 hours per day, 7 days per week.  Epiq manages minimum Tier 3+ data centers in 18 locations worldwide.  Our centers have robust environmental controls including uninterruptable power supply ("UPS"), fire detection and suppression controls, flood protection, and cooling systems.

17.     Beyond Epiq's technology, our people play a vital role in protecting class members' and our clients' information.  Epiq has a dedicated information security team comprised of highly trained, experienced, and qualified security professionals.  Our teams stay on top of important security issues and retain important industry standard certifications, like SysAdmin, Audit, Network, and Security ("SANS"), Certified Information Systems Security Professional ("CISSP"), and Certified Information Systems Auditor ("CISA").  Epiq is continually improving security infrastructure and processes based on an ever-changing digital landscape.  Epiq also partners with best-in-class security service providers.  Our robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties.

18.     Epiq holds several industry certifications including Trusted Information Security Assessment Exchange ("TISAX"), Cyber Essentials, Privacy Shield, and ISO 27001.  In addition to retaining these certifications, we are aligned to Health Insurance Portability and Accountability Act ("HIPAA"), National Institute of Standards and Technology ("NIST"), and Federal Information Security Management Act ("FISMA") frameworks.  Epiq follows local, national, and international privacy regulations.  To support our business and staff, Epiq has a dedicated team to facilitate and monitor compliance with privacy policies.  Epiq is also committed to a culture of security mindfulness.  All employees routinely undergo cybersecurity training to ensure that safeguarding

APPENDIX C NOTICE PLAN

information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

19.     Upon completion of a project, Epiq continues to host all data until otherwise instructed in writing by a customer to delete, archive, or return such data.  When a customer requests that Epiq delete or destroy all data, Epiq agrees to delete or destroy all such data; provided, however, that Epiq may retain data as required by applicable law, rule, or regulation, and to the extent such copies are electronically stored in accordance with Epiq's record retention or back-up policies or procedures (including those regarding electronic communications) then in effect.  Epiq keeps data in line with client retention requirements.  If no retention period is specified, Epiq returns the data to the client or securely deletes it as appropriate.

## NOTICE PLANNING METHODOLOGY

20.     It is my understanding from reviewing the *Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants* ("Rule 23(b)(2) Settlement Agreement") that the "Rule 23(b)(2) Class" is defined as the following:

> [A]ll persons, businesses, and other entities that accept Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time during the period between December 18, 2020 and the date of entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment, and from which no exclusions are permitted.

21.     With respect to a class-wide settlement solely seeking equitable relief, Federal Rule of Civil Procedure 23 provides that the Court has the discretion to "direct appropriate notice to the class."[2]   The proposed Notice Plan provides reasonable and appropriate notice under the circumstances to advise the Rule 23(b)(2) Class of the terms of the Settlement and their rights to object and be heard.

22.     Data sources and tools commonly employed by experts in the advertising industry were used to analyze and develop the media component of the proposed Notice Plan.  These resources include

---

[2] FRCP 23(c)(2)(A).

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C NOTICE PLAN

MRI-Simmons,[3] which provides statistically significant readership and product usage data, Comscore,[4] which provides similar usage data specific to online media, and Alliance for Audited Media ("AAM")[5] statements, which certify how many readers buy or obtain copies of publications. These tools, as applicable, along with demographic breakdowns indicating how many people use each media vehicle, as well as computer software that takes the underlying data and factors out the duplication among audiences of various media vehicles, allow the net (unduplicated) reach of a particular media schedule to be determined. The combined results of this analysis are used to help determine the sufficiency and effectiveness of a notice plan.

23.     ***Tools and data trusted by the communications industry and courts.*** Virtually all of the nation's largest advertising agency media departments utilize, scrutinize, and rely upon such independent, time-tested data and tools, including net reach and de-duplication analysis methodologies, to guide the billions of dollars of advertising placements seen today, providing assurance that these

---

[3] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry. MRI-Simmons is a joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research. MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample. As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States. MRI-Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the United States.

[4] Comscore is a global internet information provider for planning, transacting, and evaluating media across platforms. With a data footprint that combines digital, linear TV, OTT, and theatrical viewership intelligence with advanced audience insights, Comscore allows media buyers and sellers to quantify their multiscreen behavior. A leader in measuring digital and TV audiences and advertising at scale, Comscore is the industry's emerging, third-party source for reliable and comprehensive cross-platform measurement.

[5] Established in 1914 as the Audit Bureau of Circulations ("ABC") and rebranded as Alliance for Audited Media ("AAM") in 2012, AAM is a non-profit cooperative formed by media, advertisers, and advertising agencies to audit the paid circulation statements of magazines and newspapers. AAM is the leading third-party auditing organization in the United States. It is the industry's leading, neutral source for documentation on the actual distribution of newspapers, magazines, and other publications. Widely accepted throughout the industry, it certifies thousands of printed publications as well as emerging digital editions read via tablet subscriptions. Its publication audits are conducted in accordance with rules established by its Board of Directors. These rules govern not only how audits are conducted, but also how publishers report their circulation figures. AAM's Board of Directors is comprised of representatives from the publishing and advertising communities.

9

figures are not overstated.  These analyses and similar planning tools have become standard analytical tools for evaluating legal notice programs and have been regularly accepted by courts.

24.     In fact, advertising and media planning firms around the world have long relied on audience data and techniques:  AAM data has been relied on since 1914;[6] 90 to 100% of media directors use reach and frequency planning;[7] all the leading advertising and communications textbooks cite the need to use reach and frequency planning.[8]  MRI-Simmons data is used by ninety of the top one hundred media firms.  Comscore is used by major holding company agencies worldwide, including Dentsu Aegis Networking, GroupM, IPG, and Publicis, in addition to independent agencies for TV and digital media buying and planning.  At least 25,000 media professionals in 100 different countries use media planning software.[9]

25.     **_Demographics._**  In selecting media to target the Rule 23(b)(2) Class, the demographics of likely members of the Rule 23(b)(2) Class were analyzed.  According to MRI-Simmons syndicated media research, business owners have the following demographics:

- 60.7% men / 39.3% women;
- 63% are aged 35-64;
- 52.3% have a household income of $100K or more;
- 80% more likely than the average adult to have a household income of $250K or more;
- 60.7% are currently married;
- 72.2% own a home, and business owners are 7% more likely to own a home than the average adult; and

---

[6] https://auditedmedia.com/about/who-we-are.
[7] See generally Peter B. Turk, Effective Frequency Report: Its Use And Evaluation By Major Agency Media Department Executives, 28 J. ADVERTISING RES. 56 (1988); Peggy J. Kreshel et al., How Leading Advertising Agencies Perceive Effective Reach and Frequency, 14 J.ADVERTISING 32 (1985).
[8] Textbook sources that have identified the need for reach and frequency for years include:  JACK S. SISSORS & JIM SURMANEK, ADVERTISING MEDIA PLANNING, 57-72 (2d ed. 1982); KENT M. LANCASTER & HELEN E. KATZ, STRATEGIC MEDIA PLANNING 120-156 (1989); DONALD W. JUGENHEIMER & PETER B. TURK, ADVERTISING MEDIA 123-126 (1980); JACK Z. SISSORS & LINCOLN BUMBA, ADVERTISING MEDIA PLANNING 93 122 (4th ed. 1993); JIM SURMANEK, INTRODUCTION TO ADVERTISING MEDIA: RESEARCH, PLANNING, AND BUYING 106-187 (1993).
[9] For example, Telmar, founded in 1968, provides strategic targeting and media planning solutions to advertisers, agencies, data suppliers, and media sales houses.  Over 25,000 media professionals in 100 countries use Telmar systems for media and marketing planning tools including reach and frequency planning functions.

10

APPENDIX C — NOTICE PLAN

- 17.9% identify as Spanish/Hispanic.

26.     ***Target Audience.***   To determine the Target Audience for class action notice planning purposes, most often a proxy audience that closely matches the definition of the class is used.   This is commonplace since the precise definition of the class is not always available as an exact match in the advertising and media planning tools.   The proxy audience is generally the closest/best match to the desired audience, here the defined Rule 23(b)(2) Class.   Based on the analysis of the proxy audience within the advertising and media planning tools, the Target Audience is determined.   This method of using a proxy audience is standard practice throughout the advertising industry, beyond class action noticing.[10]   The proposed Notice Plan is designed to reach the Rule 23(b)(2) Class by targeting two broad target audiences:   all U.S. Business Owners and all U.S. Adults in Business and Finance Occupations.

<u>**NOTICE PLAN DETAIL**</u>

27.     The proposed Notice Plan is designed to reach the greatest practicable number of the Rule 23(b)(2) Class.   Given our experience with similar notice efforts, we expect the proposed Notice Plan media notice efforts will reach approximately 82.2% of all U.S. Business Owners with an average frequency of 4.5 times, and 84.8% of all U.S. Adults in Business and Finance Occupations with an average frequency of 4.1 times.   "Reach" refers to the estimated percentage of the unduplicated audience exposed to the notice.   "Frequency," in contrast, refers to how many times, on average, each member of the target audience had the opportunity to view the notice.   In my experience, the projected reach of the Notice Plan is consistent with other court-approved notice plans, provides appropriate notice to the Rule 23(b)(2) Class under the circumstances of this case, and has been designed to satisfy the requirements of due process, including its "desire to actually

---

[10] "If the total population base (or number of class members) is unknown, it is accepted advertising and communication practice to use a *proxy-media* definition, which is based on accepted media research tools and methods that will allow the notice expert to establish that number.   The percentage of the population reached by supporting media can then be established."   *See* Duke Law School, *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, at 56.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C: NOTICE PLAN

inform" requirement.[11]

28.     Reflected in the calculated reach and average frequency are an extensive schedule of national business publications, digital and social media, including audio and video noticing.  Notices will also appear in trades, local business journals, specialty language publications, U.S. Territory newspapers, internet sponsored search listings, an informational release, newspaper publication notice and a Case Website, which are non-measured and are not included in the estimated reach calculation.

### *Media Plan Summary*

### *National Business Publications*

29.     The Publication Notice will appear in English in national business publications and will be targeted nationwide.  The selected seven national business publications have a combined circulation of more than 2.2 million.  More details regarding the selected publications, distribution, language, and specific ad sizes are included in the following table.

| *National Business Publication* | *Insertions* | *Distribution* | *Language* | *Ad Size* |
|---|---|---|---|---|
| *Barron's* | 2 | National | English | Half-page |
| *Financial Times* | 1 | National | English | Quarter-page |
| *Forbes* | 1 | National | English | Full-page |
| *Fortune* | 1 | National | English | Half-page |
| *Investor's Business Daily* | 1 | National | English | Sixth-page |
| *New York Times* | 1 | National | English | Sixth-page |
| *Wall Street Journal* | 1 | National | English | Sixth-page |

30.     These national business publications were selected to reach the target audience.

- *Barron's* - Business owners are 32% more likely to read *Barron's* than the

---

[11] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX A NOTICE PLAN

average adult.

- *Financial Times* - One of the world's leading news organizations recognized internationally for its authority, integrity, and accuracy.
- *Forbes* - Business owners are 23% more likely to read Forbes than the average adult.
- *Fortune* - Business owners are 34% more likely to read Fortune than the average adult.
- *Investor's Business Daily* - An American newspaper covering the stock market, international business, finance, and economics.
- *New York Times* - Business owners are 19% more likely to read the *New York Times* than the average adult.
- *Wall Street Journal* - Business owners are 37% more likely to read the *Wall Street Journal* than the average adult.

### *Digital Notice Campaign*

31.     Internet advertising has become a standard component in legal notice programs.  The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of a class action settlement.  According to MRI-Simmons data, 98.3% of all business owners in the United States are online and 87.6% of business owners use social media.[12]

32.     ***Display Banner Notices.***   The proposed Notice Plan includes targeted digital advertising in English and Spanish on the selected advertising networks *Google Display Network* and the *Yahoo Audience Network*, which together represent thousands of digital properties across all major content categories.

33.     ***Business Websites.***   Banner Notices will be displayed on several business-related websites to target those interested in business and finance content.

34.     ***Specialty Language Websites.***   The proposed Notice Plan includes Banner Notice ads that will run across a variety of websites focused on non-English speakers.  Two-thirds of these Banner Notices will be in Spanish since according to the U.S. Census Bureau Spanish is the most spoken language after English in the United States.[13]   Banners will run in Spanish, Chinese, Korean, Vietnamese, Japanese, Thai and Russian as appropriate.

---

[12] MRI-Simmons 2023 Survey of the American Consumer®.

[13] U.S. Census Bureau.  "Language Spoken at Home."  American Community Survey, ACS 1-Year Estimates Subject Tables, Table S1601, 2022, https://data.census.gov/table/ACSST1Y2022.S1601?q= Language Spoken at Home.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C — NOTICE PLAN

35.     **Social Media.**  Digital Notices will also be placed on the social media sites *Facebook*, *Instagram*, *X (Twitter), LinkedIn, Reddit*, and *YouTube*.  Social media digital Notices will be targeted to adults likely to be business owners.

- *Facebook* is the leading social networking site in the United States with 49.9% of all social media usage with 175 million users,[14] and *Instagram* has more than 140 million active users in the United States.[15]

- *X (Twitter)* is a popular microblogging social media website that allows posts/tweets containing images or videos and up to 280 characters.  Users can like, comment and share/retweet posts.  *X (Twitter)* has more than 95 million users in the United States.[16]

- *LinkedIn* is the world's largest professional network on the internet with 200 million members in the United States.[17]

- *Reddit* is a widely used social forum website that contains more than a million communities known as subreddits.  These communities cover specific topics making this an ideal platform to reach individuals with focused interests.  *Reddit* has over 57 million daily active users in the United States.[18]

- *YouTube* is the largest streaming video website in the United States with more than 240 million users.[19]  Video ads placements will focus on business/financial content as well as specific *YouTube* channels such *CNBC*, *Forbes* and *Wall Street Journal*.

36.     **Podcasts (Spotify, Apple, and Google).**  In the third quarter of 2022, Americans spent an average of one hour and two minutes a day listening to podcasts.[20]  Podcasts are an excellent way

---

[14] Statista Digital 2023: Global Overview Report.  Statista, founded in 2007, is a leading provider of worldwide market and consumer data and is trusted by thousands of companies around the world for data. Statista.com consolidates statistical data on over 80,000 topics from more than 22,500 sources and makes it available in German, English, French and Spanish.
[15] Statista Digital 2023: Global Overview Report.
[16] Statista Digital 2023: Global Overview Report.
[17] Statista Digital 2023: Global Overview Report.
[18] Statista Digital 2023: Global Overview Report.
[19] Statista Digital 2023: Global Overview Report.
[20] Statista Digital 2023: The United States of America.

14

to reach an engaged audience based on targeted content.  Thirty second audio ads will air across major podcasting platforms such as *Spotify*, *Apple* and *Google* targeted to entrepreneurship, business news and professional content.

37.     ***Streaming TV.***  Video ads will run on streaming TV platform services such as *ESPN+*, *Hulu*, and *Sling*, among others, and will be targeted to adults 18+ and business owners.

38.     All digital Notices will be targeted to selected target audiences and are designed to encourage participation by members of the Rule 23(b)(2) Class—by linking directly to the Case Website, allowing visitors easy access to relevant information and documents.  Consistent with best practices, the digital Notices will use language from the long-form Website Notice headline, which will allow users to identify themselves as potential members of the Rule 23(b)(2) Class.

39.     All digital Notices will appear on desktop, mobile, and tablet devices and be displayed nationwide.  Banner Notices will also be targeted (remarketed) to people who click on a digital Notice.

40.     More details regarding the target audiences, distribution, specific ad sizes of the digital Notices, and the number of planned impressions are included in the following table.

| Network/Property | Target | Language | Ad Size | Planned Impressions[21] |
|---|---|---|---|---|
| *Google Display Network* | Adults 18+ and Custom Affinity[22] for business owner and/or business and finance | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 100,000,000 |
| *Google Display Network* | Adults 18+ and Custom Intent[23] for business owner and/or business and finance | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 100,000,000 |
| *Yahoo Audience Network* | Adults 18+; business and finance content | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | 50,000,000 |

[21] Impression inventory may vary slightly at the time of booking the Banner Notice ads and as a result the number of delivered impressions may vary slightly as well.
[22] "Custom Affinity Audience" allows us to target specific websites, keywords, and/or relevant content that our target may be viewing.
[23] "Custom Intent Audience" allows us to target people that are researching or purchasing certain items on the web.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C NOTICE PLAN

| Network/Property | Target | Language | Ad Size | Planned Impressions[21] |
|---|---|---|---|---|
| Bizjournals.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 5,000,000 |
| Bloomberg.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 2,000,000 |
| Forbes.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 4,000,000 |
| WSJ.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 2,500,000 |
| Time.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 1,000,000 |
| Fortune.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 1,000,000 |
| Inc.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 1,000,000 |
| BusinessInsider.com | Adults 18+; business and finance content | English | 728x90, 300x250, 300x600 & 970x250 | 1,000,000 |
| Spanish Website Targeting[24] | Adults 18+ | Spanish | 728x90, 300x250, 300x600 & 970x250 | 50,000,000 |
| Multi-cultural Language Targeting | Adults 18+; business and finance content | Spanish, Chinese, Japanese, Vietnamese, Korean, Thai & Russian | 728x90, 300x250, 300x600 & 970x250 | 25,000,000 |
| Facebook | Adults 18+ with interest in Mastercard, Visa, business, and/or small business | English | Newsfeed & Right Hand Column | 100,000,000 |
| Facebook | Adults 18+ who are in business & finance or with demographics of small business owner | English | Newsfeed & Right Hand Column | 50,000,000 |

[24] Spanish websites may include Univision.com, Telemundo.com, Elpais.com, CNNespanol.CNN.com and/or IndependentEspanol.com, among others.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C NOTICE PLAN

| Network/Property | Target | Language | Ad Size | Planned Impressions[21] |
|---|---|---|---|---|
| Facebook | Adults 18+ with job title of business owner[25] | English | Newsfeed & Right Hand Column | 25,000,000 |
| Instagram | Adults 18+ with interest in Mastercard, Visa, business, and/or small business | English | Newsfeed | 30,000,000 |
| Instagram | Adults 18+ who are in business & finance or with demographics of small business owner | English | Newsfeed | 10,000,000 |
| Instagram | Adults 18+ with job title of business owner[26] | English | Newsfeed | 15,000,000 |
| X (Twitter) | Adults 18+ with interests in business owner, business & finance, and/or small business | English | Twitter Feed Ads | 20,000,000 |
| X (Twitter) | Adults 18+ and Post Engagement Targeting for Business Owner, Small Business Owner, Visa Merchant Services, and/or Mastercard Merchant Services | English | Twitter Feed Ads | 40,000,000 |
| LinkedIn | Adults 18+ with job titles in senior management[27] | English | LinkedIn Feed Ads | 20,000,000 |
| Reddit | Adults 18+ targeted to feeds r/Business, r/SmallBusiness, r/Entrepreneurs/, /r/BusinessHub/, and /r/Businessideas/ | English | Reddit Feed Ads | 17,500,000 |

---

[25] Job titles may include auto body owner, daycare owner, dry cleaner/laundromat owner, gym owner, hotel/motel owner, landscaping owner, retail merchandise store owner, salon owner, spa owner and/or restaurant owner.

[26] Id.

[27] Job titles to include Owner, Business Partner, CEO, President, Vice President, CFO, CTO, COO, CIO, Business Director, Chief of Staff and/or Manager, among others.

17

APPENDIX C — NOTICE PLAN

| Network/Property | Target | Language | Ad Size | Planned Impressions[21] |
|---|---|---|---|---|
| *YouTube* | Adults 18+ and Custom Affinity for business owner and/or business and finance | English | :30 second video ads | 22,500,000 |
| *YouTube* | Adults 18+ and Custom Intent for business owner and/or business and finance | English | :30 second video ads | 22,500,000 |
| *YouTube* | Adults 18+ and select channel and video targeting[28] | English | :30 second video ads | 20,000,000 |
| *Podcast Targeting (Spotify, Apple, Google)* | Entrepreneurship, business news, and professional content | English | :30 second audio ads | 5,000,000 |
| *Streaming TV* | Adults 18+; business owners | English | :30 second video ads | 5,000,000 |
| **Total** | | | | **745,000,000** |

41.     Combined, approximately 745 million impressions will be generated by the digital Notices.[29]  The digital Notices will run for approximately 60 days.  Clicking on the digital Notices will link the readers to the Case Website, where they can easily obtain detailed information about the Rule 23(b)(2) Settlement.

### *Streaming and Satellite Radio*

42.     Audio ads on *Pandora* and *Sirius XM* will be used to reach members of the Rule 23(b)(2) Class.  Pandora is one of the most frequently used online media services in the United States.  According to MRI-Simmons data, business owners are 18% more likely to listen to Pandora than the average U.S. adult.[30]  Thirty second audio placements across *Pandora* streaming radio will run across

---

[28] Select channel and video targeting may include youtube.com/bloomberg, youtube.com/Forbes, youtube.com/InsiderBusiness, youtube.com/wsj, youtube.com/markets and/or youtube.com/CNBC, among others.

[29] The third-party ad management platform, ClickCease, will be used to audit digital Banner Notice ad placements.  This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, block clicks from fraudulent sources, and quarantine dangerous IP addresses.  This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

[30] MRI-Simmons 2023 Survey of the American Consumer®.

18

all devices targeted to business owners.  Notice will run on a variety of music channels and will run for approximately 60 days.  In addition, thirty second audio placements will air across *Sirius XM* radio to mobile devices and connected vehicles.  The ads will air on news channels, talk radio, and sports programming and will run for approximately 60 days.  *Sirius XM* is a leading audio entertainment company with more than 33 million subscribers.[31]

### *National Trade & Specialty Publications*

43.     The Publication Notice will appear as a half-page ad unit in English in national trade and specialty publications and will be targeted nationwide.  The selected 13 national trade and specialty publications have a combined circulation of more than 500,000.  More details regarding the selected publications, distribution, language, and specific ad sizes are included in the following table.

| *National Business Publication* | *Distribution* | *Language* | *Ad Size* |
|---|---|---|---|
| *Crain's New York* | New York | English | Half Page |
| *Crain's Chicago* | Chicago | English | Half Page |
| *Crain's Detroit* | Detroit | English | Half Page |
| *Crain's Cleveland* | Cleveland | English | Half Page |
| *Convenience Store News* | National | English | Half Page |
| *Mass Market Retailers* | National | English | Half Page |
| *Supermarket News* | National | English | Half Page |
| *C-Store Decisions* | National | English | Half Page |
| *Total Food Service* | National | English | Half Page |
| *CleanFacts* | California | English | Half Page |
| *Fabricare* | National | English | Half Page |
| *Hardware Retailing* | National | English | Half Page |
| *Retail Merchandiser* (digital only) | National | English | Half Page |

---

[31] Sirius Holdings Q4 2023 Earnings Release.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX – NOTICE PLAN

### *Local Business Journals*

44.     The Publication Notice will appear twice as a half-page ad unit in English local business journals and cover all major metropolitan areas in the United States.  The selected 56 local business journals have a combined circulation of more than 670,000.  More details regarding the selected publications, distribution, language, and specific ad sizes are included in the following table.

| *Local Business Journal* | *Language* | *Ad Size* |
|---|---|---|
| *Albany Business Review* | English | Half-page |
| *Albuquerque Business First* | English | Half-page |
| *Atlanta Business Chronicle* | English | Half-page |
| *Austin Business Journal* | English | Half-page |
| *Baltimore Business Journal* | English | Half-page |
| *Birmingham Business Journal* | English | Half-page |
| *Boston Business Journal* | English | Half-page |
| *Buffalo Business Journal* | English | Half-page |
| *Charlotte Business Journal* | English | Half-page |
| *Cincinnati Business Courier* | English | Half-page |
| *Columbus Business First* | English | Half-page |
| *Dallas Business Journal* | English | Half-page |
| *Dayton Business Journal* | English | Half-page |
| *Denver Business Journal* | English | Half-page |
| *Triad Business Journal* (Greensboro) | English | Half-page |
| *Pacific Business News* (Honolulu) | English | Half-page |
| *Houston Business Journal* | English | Half-page |
| *Jacksonville Business Journal* | English | Half-page |
| *Kansas City Business Journal* | English | Half-page |
| *Louisville Business First* | English | Half-page |
| *Memphis Business Journal* | English | Half-page |

20

APPENDIX C NOTICE PLAN

| Local Business Journal | Language | Ad Size |
|---|---|---|
| South Florida Business Journal | English | Half-page |
| Milwaukee Business Journal | English | Half-page |
| Minneapolis/St. Paul Business Journal | English | Half-page |
| Nashville Business Journal | English | Half-page |
| Orlando Business Journal | English | Half-page |
| Philadelphia Business Journal | English | Half-page |
| Phoenix Business Journal | English | Half-page |
| Pittsburgh Business Times | English | Half-page |
| Portland Business Journal | English | Half-page |
| Triangle Business Journal (Raleigh/Durham) | English | Half-page |
| Sacramento Business Journal | English | Half-page |
| San Antonio Business Journal | English | Half-page |
| San Francisco Business Times | English | Half-page |
| Silicon Valley Business Journal | English | Half-page |
| Puget Sound Business Journal | English | Half-page |
| St. Louis Business Journal | English | Half-page |
| Tampa Bay Business Journal | English | Half-page |
| Washington Business Journal | English | Half-page |
| Wichita Business Journal | English | Half-page |
| Alaska Journal of Commerce | English | Half-page |
| Central New York Business Journal | English | Half-page |
| Business Record (Central Iowa) | English | Half-page |
| Fairfield County Business Journal &Westchester County Business Journal (Combined Online Issue) (NY) | English | Half-page |
| Long Island Business News | English | Half-page |
| Los Angeles Business Journal | English | Half-page |
| Mississippi Business Journal (Jackson) | English | Half-page |

21

APPENDIX C: NOTICE PLAN

| Local Business Journal | Language | Ad Size |
|---|---|---|
| New Orleans City Business | English | Half-page |
| NJBIZ | English | Half-page |
| Orange County Business | English | Half-page |
| Pacific Coast Business Times (Santa Barbara, CA) | English | Half-page |
| Rochester Business Journal (Rochester, NY) | English | Half-page |
| San Diego Business Journal | English | Half-page |
| San Fernando Valley Business Journal | English | Half-page |
| North Bay Business Journal (Sonoma & Napa, CA) | English | Half-page |
| The Journal Record (Oklahoma) | English | Half-page |

### Specialty Language and Targeted Newspapers

45.     The Publication Notice will appear as a half-page ad unit in specialty language and targeted newspapers, targeted nationwide.  The Publication Notice will run in Spanish, Chinese, Korean, Vietnamese, Japanese, Thai, and Russian to reach business owners for whom English is not their primary language.  According to the U.S. Census Bureau, 16.7% of adult citizens in the United States speak a language at home other than English.[32]  The selected 85 specialty language and targeted newspaper publications have a combined circulation of more than 3.8 million.  More details regarding the selected publications, distribution, language, and specific ad sizes are included in the following table.

| Specialty Language & Targeted Newspapers | Distribution | Language | Ad Size |
|---|---|---|---|
| Atlanta Inquirer | Atlanta | English | Half-page |
| Mundo Hispanico | Atlanta | Spanish | Half-page |
| Atlanta Voice | Atlanta | English | Half-page |
| Boston Banner (Baystate Banner) | Boston/Manchester | English | Half-page |

---

[32]   U.S. Census Bureau.  "Language Spoken at Home." American Community Survey, ACS 1-Year Estimates Subject Tables, Table S1601, 2022, https://data.census.gov/table/ACSST1Y2022.S1601?q= Language Spoken at Home.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C - NOTICE PLAN

| Specialty Language & Targeted Newspapers | Distribution | Language | Ad Size |
|---|---|---|---|
| El Mundo | Boston/Manchester | English & Spanish | Half-page |
| Vocero Hispano | Boston/Manchester | Spanish | Half-page |
| El Planeta | Boston/Manchester | Spanish | Half-page |
| Sing Tao Daily - Chicago | Chicago | Chinese | Half-page |
| Chicago Citizen Newspaper Group (5 papers) | Chicago | English | Half-page |
| Crusader Group (2 papers) | Chicago | English | Half-page |
| La Raza | Chicago | Spanish | Half-page |
| Lawndale Group News | Chicago | English & Spanish | Half-page |
| Pinoy News (f/n/a Pinoy Monthly) | Chicago | English | Half-page |
| US Asian Post | Chicago | English | Half-page |
| Via Times | Chicago | English | Half-page |
| Svet | Chicago | Russian | Half-page |
| Epoch Times - Chicago (Chinese Edition) | Chicago | Chinese | Half-page |
| Korea Times - Chicago | Chicago | Korean | Half-page |
| Dallas Chinese News | Dallas/Ft. Worth | Chinese | Half-page |
| Dallas Examiner | Dallas/Ft. Worth | English | Half-page |
| Al Dia | Dallas/Ft. Worth | Spanish | Half-page |
| Epoch Times - Dallas (Chinese Edition) | Dallas/Ft. Worth | Chinese | Half-page |
| Novedades News | Dallas/Ft. Worth | Spanish | Half-page |
| The Houston Sun | Houston | English | Half-page |
| Forward Times | Houston | English | Half-page |
| La Informacion | Houston | Spanish | Half-page |
| La Voz De Houston | Houston | Spanish | Half-page |
| Houston Defender | Houston | English | Half-page |
| Asian Journal | Las Vegas | English | Half-page |
| California Journal | Los Angeles | English | Half-page |
| Saigon Times | Los Angeles | Vietnamese | Half-page |

23

APPENDIX 3: NOTICE PLAN

| Specialty Language & Targeted Newspapers | Distribution | Language | Ad Size |
|---|---|---|---|
| US Asian Post | Los Angeles | English | Half-page |
| Chinese Daily News (World Journal Los Angeles) | Los Angeles | Chinese | Half-page |
| Korea Times | Los Angeles | Korean | Half-page |
| Asian Journal | Los Angeles | English | Half-page |
| La Opinion | Los Angeles | Spanish | Half-page |
| Philippine News | Los Angeles | English | Half-page |
| Viet Bao Daily News (f/n/a Viet Bao Kinh Te) | Los Angeles | Vietnamese | Half-page |
| Lighthouse | Los Angeles | Japanese | Half-page |
| Korea Daily | Los Angeles | Korean | Half-page |
| Sing Tao Daily | Los Angeles | Chinese | Half-page |
| Precinct Reporter/Tri-County Bulletin/Long Beach Leader | Los Angeles | English | Half-page |
| Nguoi Viet Daily News | Los Angeles | Vietnamese | Half-page |
| Los Angeles News Observer | Los Angeles | English | Half-page |
| Wave Community Newspapers (8 publications) | Los Angeles | English | Half-page |
| Daily Sun New York | New York | Japanese | Half-page |
| El Diario (f/k/a El Diario La Prensa) | New York | Spanish | Half-page |
| Korea Times | New York | Korean | Half-page |
| US Asian Post | New York | English | Half-page |
| El Especialito - Northern Jersey | New York | Spanish | Half-page |
| New York Trend | New York | English | Half-page |
| Rolling Out New York | New York | English | Half-page |
| New York Amsterdam News | New York | English | Half-page |
| Sing Tao Daily - New York | New York | Chinese | Half-page |
| World Journal New York - Chinese Daily News | New York | Chinese | Half-page |
| La Voz Hispana | New York | Spanish | Half-page |
| Russkaya Reklama | New York | Russian | Half-page |

24

APPENDIX C: NOTICE PLAN

| Specialty Language & Targeted Newspapers | Distribution | Language | Ad Size |
|---|---|---|---|
| Epoch Times - New York (Chinese Edition) | New York | Chinese | Half-page |
| Seikatsu Press | New York | Japanese | Half-page |
| Korean New York Daily | New York | Korean | Half-page |
| Korea Daily - New York | New York | Korean | Half-page |
| NY Japion | New York | Japanese | Half-page |
| Impacto Latino Newspaper | New York | Spanish | Half-page |
| Epoch Times | Philadelphia | Chinese | Half-page |
| Metro Chinese Weekly | Philadelphia | Chinese | Half-page |
| Metro Viet News | Philadelphia | Vietnamese | Half-page |
| Philadelphia Asian News | Philadelphia | Vietnamese | Half-page |
| China Press | Philadelphia | Chinese | Half-page |
| Al Dia | Philadelphia | Spanish | Half-page |
| El Sol Latino | Philadelphia | English & Spanish | Half-page |
| Philadelphia Observer | Philadelphia | English | Half-page |
| Philadelphia Sunday Sun | Philadelphia | English | Half-page |
| Philadelphia Tribune | Philadelphia | English | Half-page |
| Korean Phila Times | Philadelphia | Korean | Half-page |
| Reporter Publications (3 papers) | San Francisco/ Oakland/San Jose | English | Half-page |
| San Francisco Bay View Newspaper | San Francisco/ Oakland/San Jose | English | Half-page |
| El Observador | San Francisco/ Oakland/San Jose | English & Spanish | Half-page |
| La Opinion De La Bahia (f/n/a El Mensajero) | San Francisco/ Oakland/San Jose | English & Spanish | Half-page |
| El Reportero | San Francisco/ Oakland/San Jose | English & Spanish | Half-page |
| Post News Group Newspaper Network (8 Papers) | San Francisco/ Oakland/San Jose | English | Half-page |
| El Pregonero | Washington, DC | Spanish | Half-page |
| Afro-American | Washington, DC | English | Half-page |
| El Tiempo Latino | Washington, DC | Spanish | Half-page |

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX C NOTICE PLAN

| Specialty Language & Targeted Newspapers | Distribution | Language | Ad Size |
|---|---|---|---|
| *Washington Informer* | Washington, DC | English | Half-page |
| *Washington Hispanic* | Washington, DC | Spanish | Half-page |

### United States Territory Newspapers

46.     The Publication Notice will appear once as a full-page ad unit in English and Spanish language newspapers targeting the United States Territories. The selected five newspapers have a combined circulation of 442,500. More details regarding the selected publications, distribution, language, and specific ad sizes are included in the following table.

| Newspaper Publication | Distribution | Language | Ad Size |
|---|---|---|---|
| *El Nuevo Dia* | Puerto Rico | Spanish | Full-page |
| *El Vocero De Puerto Rico* | Puerto Rico | Spanish | Full-page |
| *Primera Hora* | Puerto Rico | Spanish | Full-page |
| *Samoa News* | American Samoa | English | Full-page |
| *Virgin Islands Daily News* | Virgin Island | English | Full-page |

### Sponsored Search Listings

47.     To facilitate locating the Case Website, sponsored search listings will be acquired on the three most highly visited internet search engines: *Google*, *Yahoo!* and *Bing*. When search engine visitors search on selected common keyword combinations related to the Rule 23(b)(2) Settlement, the sponsored search listing created for the Rule 23(b)(2) Settlement will be generally displayed at the top of the visitor's website page prior to the search results or in the upper right-hand column of the web-browser screen. The sponsored search listings will be displayed nationwide. All sponsored search listings will link directly to the Case Website. The sponsored search listings will run for approximately 45-60 days.

### Informational Release

48.     To build additional reach and extend exposures, a party-neutral Informational Release will be issued nationwide in English, Spanish and Chinese over *PR Newswire* to approximately 5,000 general

26

APPENDIX 3: NOTICE PLAN

media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States, as well as approximately 4,500 websites, online databases, internet networks, and social networking media. The Informational Release will also be issued to the "microlist" Small Business Influencer distribution, targeting niche media appropriate for the Rule 23(b)(2) Class.

49. The Informational Release will include the address of the Case Website and the toll-free telephone number. Although there is no guarantee that any news stories will result, the Informational Release will serve a valuable role by providing additional notice exposures beyond what will be provided by the paid media.

### *Case Website*

50. Epiq will create and maintain a website for the Rule 23(b)(2) Settlement with an easy to remember domain name. Members of the Rule 23(b)(2) Class will be able to obtain detailed information about the Rule 23(b)(2) Settlement and review documents including, but not limited to, the Publication Notice, the Website Notice, Rule 23(b)(2) Settlement Agreement, and other important Court documents. In addition, the Case Website will include answers to frequently asked questions ("FAQs"), instructions for how members of the Rule 23(b)(2) Class may object, contact information for the Class Administrator, and how to obtain other case-related information.

51. The existing Interchange Rule 23(b)(3) case website is currently available in English and translated and available in Spanish, Chinese, Japanese, Korean, Russian, Thai, and Vietnamese. The updated information regarding the Rule 23(b)(2) Settlement as well as the Publication Notice and the Long Form Notice will also be available in English and translated and available in Spanish, Chinese, Japanese, Korean, Russian, Thai, and Vietnamese. Links for each language and corresponding country flag are displayed prominently in the top right corner of all key pages of the Case Website. The Case Website address will be displayed prominently on all Notice documents. The Banner Notices will link directly to the Case Website.

### *Toll-free Telephone Number, Email Address, and Postal Mailing Address*

52. A toll-free telephone number will be available to members of the Rule 23(b)(2) Class.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

Callers will be able to call for additional information, listen to answers to FAQs, and request that a Long Form Notice be mailed to them. The automated telephone system will be available 24 hours per day, 7 days per week. The toll-free telephone number will be prominently displayed in the Notice documents as appropriate.

53. An email address and postal mailing address will be provided, allowing members of the Rule 23(b)(2) Class the opportunity to request additional information or ask questions.

### PLAIN LANGUAGE NOTICE DESIGN

54. The Notices are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by members of the Rule 23(b)(2) Class. The design of the Notices follows the principles embodied in the Federal Judicial Center's ("FJC") illustrative "model" notices posted at www.fjc.gov. Many courts, and the FJC itself, have approved notices that we have written and designed in a similar fashion. The Notices contain substantial, albeit easy-to-read, summaries of all key information about the Rule 23(b)(2) Settlement and the rights of the members of the Rule 23(b)(2) Class, including the ability to object, and the deadline to do so. Copies of the Publication Notice and Website Notice are annexed to the Settlement Agreement as Appendix D. Consistent with our standard practice, all Notice documents will undergo a final edit prior to dissemination for grammatical errors and accuracy.

### COST OF THE NOTICE PLAN & SETTLEMENT ADMINISTRATION

55. Based on reasonable assumptions, the cost for implementing all components of the Notice Plan and handling settlement administration is estimated to be $4,634,118 million and will be capped at $4.7 million total. This approximate cost encompasses providing notice to the Rule 23(b)(2) Class with an extensive schedule of national business publications, digital and social media, including audio and video noticing, notices that appear in trade publications, local business journals, specialty language publications, U.S. Territory newspapers, internet sponsored search listings, an informational release, and newspaper publication notice. Notice will be provided in English, Spanish, Chinese, Korean, Vietnamese, Japanese, Thai and Russian as appropriate. This approximate cost also includes costs associated with providing settlement administration, including the case website, toll-

APPENDIX C NOTICE PLAN

free telephone number, communications with members of the Rule 23(b)(2) Class, etc.  All costs are subject to the Service Contract under which Epiq will be retained as the Class Administrator, and the terms and conditions of that agreement.

## <u>CONCLUSION</u>

56.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the recognized notice standards under Federal Rule of Civil Procedure 23.  This framework directs that the notice plan be optimized to reach the class, and to provide class members with easy access to the details of how the class action may impact their rights.  All of these requirements will be met in this case.

57.     The proposed Notice Plan media notice efforts will reach approximately 82.2% of all U.S. Business Owners with an average frequency of 4.5 times, and 84.8% of all U.S. Adults in Business and Finance Occupations with an average frequency of 4.1 times.  Reflected in the calculated reach and average frequency are an extensive schedule of national business publications, digital and social media, including audio and video noticing.  Notices will also appear in trade publications, local business journals, specialty language publications, U.S. Territory newspapers, internet sponsored search listings, an informational release, newspaper publication notice, and a Case Website, which are non-measured and are not included in the estimated reach calculation.

58.     The Notice Plan will be targeted nationwide to reach members of the Rule 23(b)(2) Class.  The Federal Judicial Center's ("FJC's") *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which is relied upon for federal cases, states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."[33]  Here, we have developed a Notice Plan that will readily achieve a reach within that standard.

59.     In my opinion, the proposed Notice Plan follows the guidance for how to satisfy due

---

[33] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so.

- "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

- "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

60.    The Notice Plan is appropriate under the circumstances of this case for providing notice to the Rule 23(b)(2) Class, conforms to all aspects of Federal Rule of Civil Procedure 23, comports with the guidance for effective notice articulated in the Manual for Complex Litigation 4th Edition and FJC guidance, and meets the requirements of due process, including its "desire to actually inform" requirement.

61.    The Notice Plan schedule will afford enough time to provide full and proper notice to members of the Rule 23(b)(2) Class before the Class Objection Period deadline.

62.    At the conclusion of the Notice Plan, I will provide a final report verifying the effective implementation of the Notice Plan.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 22, 2024.

_____
Cameron R. Azari, Esq.

APPENDIX 5 – NOTICE PLAN

# Attachment 1

APPENDIX 3: NOTICE PLAN

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications ("Hilsoft") is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, notice plan development.  Our notice programs satisfy due process requirements and withstand judicial scrutiny.  Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq").  Hilsoft has been retained by defendants or plaintiffs for more than 575 cases, including more than 70 MDL case settlements, with notices appearing in more than 53 languages and in almost every country, territory, and dependency in the world.  For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts.  Case examples include:

➢ Hilsoft implemented an extensive notice program for a $190 million data breach settlement.  Notice was sent to more than 93.6 million settlement class members by email or mail.  The individual notice efforts reached approximately 96% of the identified settlement class members and were enhanced by a supplemental media plan that included banner notices and social media notices (delivering more than 123.4 million impressions), sponsored search, and a settlement website. ***In Re: Capital One Consumer Data Security Breach Litigation*** MDL No. 2915, 1:19-md-02915 (E.D. Va.).

➢ Hilsoft designed and implemented an extensive notice plan for a $85 million privacy settlement involving Zoom, the most popular videoconferencing platform.  Notice was sent to more than 158 million class members by email or mail and millions of reminder notices were sent to stimulate claim filings.  The individual notice efforts reached approximately 91% of the class and were enhanced by supplemental media provided with regional newspaper notice, nationally distributed digital and social media notice (delivering more than 280 million impressions), sponsored search, an informational release, and a settlement website. ***In Re: Zoom Video Communications, Inc. Privacy Litigation*** 3:20-cv-02155 (N.D. Cal.).

➢ Hilsoft designed and implemented several notice programs to notify retail purchasers of disposable contact lenses regarding four settlements with different settling defendants totaling $88 million. For each notice program more than 1.98 million email or postcard notices were sent to potential class members and a comprehensive media plan was implemented, with a well-read nationwide consumer publication, internet banner notices (delivering more than 312.9 million – 461.4 million impressions per campaign), sponsored search listings, and a case website. ***In re: Disposable Contact Lens Antitrust Litigation*** 3:15-md-02626 (M.D. Fla.).

➢ For a $21 million settlement that involved The Coca-Cola Company, fairlife, LLC, and other defendants regarding allegations of false labeling and marketing of fairlife milk products, Hilsoft designed and implemented a media based notice plan.  The plan included a consumer print publication notice, targeted banner notices, and social media (delivering more than 620.1 million impressions in English and Spanish nationwide). Combined with individual notice to a small percentage of the class, the notice plan reached approximately 80.2% of the class.  The reach was further enhanced by sponsored search, an informational release, and a website. ***In re: fairlife Milk Products Marketing and Sales Practices Litigation*** 1:19-cv-03924 (N.D. Ill.).

➢ For a $60 million settlement for Morgan Stanley Smith Barney's account holders in response to "Data Security Incidents," Hilsoft designed and implemented an extensive individual notice program.  More than 13.8 million email or mailed notices were delivered, reaching approximately 90% of the identified potential settlement class members.  The individual notice efforts were supplemented with nationwide newspaper notice and a settlement website. ***In re Morgan Stanley Data Security Litigation*** 1:20-cv-05914 (S.D.N.Y.).

➢ Hilsoft designed and implemented numerous monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, Ford, and Volkswagen vehicles as part of $1.91 billion in settlements regarding Takata airbags.  The Notice Plans included mailed notice to more than 61.8 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, 4.0 times each. ***In re: Takata Airbag Products Liability Litigation*** MDL No. 2599 (S.D. Fla.).

> Hilsoft designed and implemented a notice plan for a false advertising settlement. The notice plan included a nationwide media plan with a consumer print publication, digital notice and social media (delivering more than 231.6 million impressions nationwide in English and Spanish) and was combined with individual notice via email or postcard to more than 1 million identified class members. The notice plan reached approximately 79% of Adults, Aged 21+ in the U.S. who drink alcoholic beverages, an average of 2.4 times each. The reach was further enhanced by internet sponsored search listings, an informational release, and a website. **_Browning et al. v. Anheuser-Busch, LLC_** 20-cv-00889 (W.D. Mo.).

> For a $63 million settlement, Hilsoft designed and implemented a comprehensive, nationwide media notice effort using magazines, digital banners and social media (delivering more than 758 million impressions), and radio (traditional and satellite), among other media. The media notice reached at least 85% of the class. In addition, more than 3.5 million email notices and/or postcard notices were delivered to identified class members. The individual notice and media notice were supplemented with outreach to unions and associations, sponsored search listings, an informational release, and a website. **_In re: U.S. Office of Personnel Management Data Security Breach Litigation_** MDL No. 2664, 15-cv-01394 (D.D.C.).

> For a $50 million settlement on behalf of certain purchasers of Schiff Move Free® Advanced glucosamine supplements, nearly 4 million email notices and 1.1 million postcard notices were sent. The individual notice efforts sent by Hilsoft were delivered to approximately 98.5% of the identified class sent notice. A media campaign with banner notices and sponsored search combined with the individual notice efforts reached at least 80% of the class. **_Yamagata et al. v. Reckitt Benckiser LLC_** 3:17-cv-03529 (N.D. Cal.).

> In response to largescale municipal water contamination in Flint, Michigan, Hilsoft's expertise was relied upon to design and implement a comprehensive notice program. Direct mail notice packages and reminder email notices were sent to identified class members. In addition, Hilsoft implemented a media plan with local newspaper publications, online video and audio ads, local television and radio ads, sponsored search, an informational release, and a website. The media plan also included banner notices and social media notices geo-targeted to Flint, Michigan and the state of Michigan. Combined, the notice program individual notice and media notice efforts reached more than 95% of the class. **_In re Flint Water Cases_** 5:16-cv-10444, (E.D. Mich.).

> Hilsoft implemented an extensive notice program for several settlements alleging improper collection and sharing of personally identifiable information (PII) of drivers on certain toll roads in California. The settlements provided benefits of more than $175 million, including penalty forgiveness. Combined, more than 13.8 million email or postcard notices were sent, reaching approximately 93% - 95% of class members across all settlements. Individual notice was supplemented with banner notices and publication notices in select newspapers all geo-targeted within California. Sponsored search listings and a settlement website further extended the reach of the notice program. **_In re Toll Roads Litigation_** 8:16-cv-00262 (C.D. Cal.).

> For a landmark $6.05 billion settlement reached by Visa and MasterCard, Hilsoft implemented an extensive notice program with more than 19.8 million direct mail notices together with insertions in more than 1,500 newspapers, consumer magazines, national business publications, and trade and specialty publications, with notices in multiple languages, and an online banner notice campaign that generated more than 770 million impressions. Sponsored search listings and a website in eight languages expanded the notice efforts. For a subsequent, $5.54 billion settlement reached by Visa and MasterCard, Hilsoft implemented a notice program with more than 16.3 million direct mail notices, more than 354 print publication insertions, and banner notices that generated more than 689 million impressions. **_In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation_** MDL No. 1720, 1:05-md-01720, (E.D.N.Y.). The Second Circuit affirmed the settlement approval. _See_ No. 20-339 _et al._, — F.4th —, 2023 WL 2506455 (2d Cir. Mar. 15, 2023).

> Hilsoft provided notice for the $113 million lithium-ion batteries antitrust litigation settlements with individual notice via email to millions of class members, banner and social media ads, an informational release, and a website. **_In re: Lithium Ion Batteries Antitrust Litigation_** MDL No. 2420, 4:13-md-02420, (N.D. Cal.).

> For a $26.5 million settlement, Hilsoft implemented a notice program targeted to people aged 13+ in the U.S. who exchanged or purchased in-game virtual currency for use within _Fortnite_ or _Rocket League_. More than 29 million email notices and 27 million reminder notices were sent to class members. In addition, a targeted media notice program was implemented with internet banner and social media notices, _Reddit_ feed ads, and _YouTube_ pre-roll ads, generating more than 350.4 million impressions. Combined, the notice efforts reached approximately 93.7% of the class. **_Zanca et al. v. Epic Games, Inc._** 21-CVS-534 (Sup. Ct. Wake Cnty., N.C.).



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

➢ Hilsoft developed an extensive media-based notice program for a settlement regarding Walmart weighted goods pricing. Notice consisted of highly visible national, consumer print publications and targeted digital banner notices and social media. The banner notices generated more than 522 million impressions. Sponsored search, an informational release, and a settlement website further expanded the reach. The notice program reached approximately 75% of the class an average of 3.5 times each. ***Kukorinis v. Walmart, Inc.*** 1:19-cv-20592 (S.D. Fla.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program that reached 78.8% of all U.S. adults aged 35+, approximately 2.4 times each. ***Hale v. State Farm Mutual Automobile Insurance Company et al.*** 3:12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program for a $32 million settlement. Notice efforts included 8.6 million double-postcard notices and 1.4 million email notices sent to inform class members of the settlement. The individual notice efforts reached approximately 93.3% of the settlement class. An informational release, geo-targeted publication notice, and a website further enhanced the notice efforts. ***In re: Premera Blue Cross Customer Data Security Breach Litigation*** MDL No. 2633, 3:15-md-2633 (D. Ore.).

➢ For a $20 million Telephone Consumer Protection Act ("TCPA") settlement, Hilsoft created a notice program with mail or email notice to more than 6.9 million class members and media notice via newspaper and internet banners, which combined reached approximately 90.6% of the class. ***Vergara et al., v. Uber Technologies, Inc.*** 1:15-cv-06972 (N.D. Ill.).

➢ An extensive notice effort was designed and implemented by Hilsoft for asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner ads, an informational release, and a website. ***In re: Kaiser Gypsum Company, Inc. et al.*** 16-cv-31602 (Bankr. W.D. N.C.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet program further enhanced the notice efforts. ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*** MDL No. 2672 (N.D. Cal.).

➢ Hilsoft handled a large asbestos bankruptcy bar date notice effort with individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. ***In re: Energy Future Holdings Corp. et al.*** 14-10979 (Bankr. D. Del.).

➢ For overdraft fee class action settlements from 2010-2020, Hilsoft developed programs integrating individual notice, and in some cases paid media notice efforts for more than 20 major U.S. commercial banks. ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.).

➢ For one of the largest and most complex class action cases in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote Indigenous people for this multi-billion-dollar settlement. ***In re: Residential Schools Class Action Litigation*** 00-cv-192059 CPA (Ont. Super. Ct.).

➢ For BP's $7.8 billion settlement related to the Deepwater Horizon oil spill, possibly the most complex class action case in U.S. history, Hilsoft opined on all forms of notice and designed and implemented a dual notice program for "Economic and Property Damages" and "Medical Benefits." The notice program reached at least 95% of Gulf Coast region adults with more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications and trade journals, digital media, and individual notice. Hilsoft also implemented one of the largest claim deadline notice campaigns, with a combined measurable paid print, television, radio, and internet notice effort, reaching in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas, an average of 5.5 times each. ***In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*** MDL No. 2179 (E.D. La.).

➢ A point of sale notice effort with 100 million notices distributed to Lowe's purchasers during a six-week period regarding a Chinese drywall settlement. ***Vereen v. Lowe's Home Centers*** SU10-cv-2267B (Ga. Super. Ct.).



## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Epiq Senior Vice President, Hilsoft Director of Legal Notice*

Cameron Azari, Esq. has more than 22 years of experience in the design and implementation of legal notice and claims administration programs.  He is a nationally recognized expert in the creation of class action notice campaigns in compliance with FRCP Rule 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In Re: Zoom Video Communications, Inc. Privacy Litigation, In re: Takata Airbag Products Liability Litigation, In re: fairlife Milk Products Marketing and Sales Practices Litigation, In re: Disposable Contact Lens Antitrust Litigation, In re Flint Water Cases, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MasterCard & Visa)*, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch Settlement)*, In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, In re: Checking Account Overdraft Litigation,* and *In re: Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from FRCP Rule 23 notice requirements, email noticing, response rates, and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

### *Kyle Bingham, Director – Epiq Legal Noticing*

Kyle Bingham has more than 15 years of experience in the advertising industry.  At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy, and other legal cases.  Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, Browning et al. v. Anheuser-Busch, LLC, Zanca et al. v. Epic Games, Inc., Kukorinis v. Walmart, Inc., In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch)*, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MasterCard & Visa)*, In re: Energy Future Holdings Corp. et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation,* and *Hale v. State Farm Mutual Automobile Insurance Company*.  Kyle also handles and has worked on more than 350 CAFA notice mailings.  Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million-dollar branding campaigns and regional direct response initiatives.  He received his B.A. from Willamette University.  Kyle can be reached at kbingham@epiqglobal.com.

### *Stephanie Fiereck, Esq., Director of Legal Noticing*

Stephanie Fiereck has more than 20 years of class action and bankruptcy administration experience.  She has worked on all aspects of class action settlement administration, including pre-settlement class action legal noticing work with clients and complex settlement administration.  Stephanie is responsible for assisting clients with drafting detailed legal notice documents and writing declarations.  During her career, she has written more than 1,000 declarations while working on an array of cases including: *In Re: Zoom Video Communications, Inc. Privacy Litigation, In re: Takata Airbag Products Liability Litigation, In Re: Capital One Consumer Data Security Breach Litigation, In re: fairlife Milk Products Marketing and Sales Practices Litigation, In re Flint Water Cases, In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MasterCard & Visa)*, In re: Energy Future Holdings Corp. et al.* (Asbestos Claims Bar Notice)*, Hale v. State Farm Mutual Automobile Insurance Company, In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* and *In re: Checking Account Overdraft Litigation.*  Stephanie has handled more than 400 CAFA notice mailings.  Prior to joining Hilsoft, she was a Vice President at Wells Fargo Bank for five years where she led the class action services business unit.  She has authored numerous articles regarding legal notice and settlement administration.  Stephanie is an active member of the Oregon State Bar.  She received her B.A. from St. Cloud State University and her J.D. from the University of Oregon School of Law.  Stephanie can be reached at sfie@epiqglobal.com.

### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005.  High profile actions he has been involved in include working with companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX 2. NOTICE PLAN

**ARTICLES AND PRESENTATIONS**

- ➢ **Cameron Azari** Chair, "Panel Discussion: Class Actions Case Management." Global Class Actions Symposium 2022, Amsterdam, The Netherlands, Nov. 17, 2022.

- ➢ **Cameron Azari** Speaker, "Driving Claims in Consumer Settlements: Notice/Claim Filing and Payments in the Digital Age." Mass Torts Made Perfect Bi-Annual Conference, Las Vegas, NV, Oct. 12, 2022.

- ➢ **Cameron Azari** Chair, "Panel Discussion: Class Actions Case Management." Global Class Actions Symposium 2021, London, UK, Nov. 16, 2021.

- ➢ **Cameron Azari** Speaker, "Mass Torts Made Perfect Bi-Annual Conference." Class Actions Abroad, Las Vegas, NV, Oct. 13, 2021.

- ➢ **Cameron Azari** Speaker, "Virtual Global Class Actions Symposium 2020, Class Actions Case Management Panel." Nov. 18, 2020.

- ➢ **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop." Federal Trade Commission, Washington, DC, Oct. 29, 2019.

- ➢ **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases." ACI's Automotive Product Liability Litigation Conference, American Conference Institute, Chicago, IL, July 18, 2019.

- ➢ **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, Nov. 6, 2018.

- ➢ **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability." 30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.

- ➢ **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

- ➢ **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts, Clyde & Co LLP, San Francisco, CA, June 22, 2018.

- ➢ **Cameron Azari** and **Stephanie Fiereck** Co-Authors, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice*. E-book, published, May 2017.

- ➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates." DC Consumer Class Action Lawyers Luncheon, Dec. 6, 2016.

- ➢ **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

- ➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, Apr. 25, 2016.

- ➢ **Stephanie Fiereck** Author, "Tips for Responding to a Mega-Sized Data Breach." *Law360,* May 2016.

- ➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, Feb. 10, 2015.

- ➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.



➤ **Cameron Azari** and **Stephanie Fiereck** Co-Authors, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➤ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, Apr. 7-8, 2014.

➤ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, Chicago, IL, Apr. 28-29, 2014.

➤ **Stephanie Fiereck** Author, "Planning For The Next Mega-Sized Class Action Settlement." *Law360,* Feb. 2014.

➤ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 29-30, 2014.

➤ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, Oct. 25, 2013.

➤ **Cameron Azari** and **Stephanie Fiereck** Co-Authors, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, Apr. 2013.

➤ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 31-Feb. 1, 2013.

➤ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➤ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 26-27, 2012.

➤ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➤ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, Jan. 2011.

➤ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➤ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➤ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➤ **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➤ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➤ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements." Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➤ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.



➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Stephanie Fiereck** Author, "Consultant Service Companies Assisting Counsel in Class-Action Suits." *New Jersey Lawyer*, Vol. 14, No. 44, Oct. 2005.

➢ **Stephanie Fiereck** Author, "Expand Your Internet Research Toolbox." The American Bar Association, *The Young Lawyer*, Vol. 9, No. 10, July/Aug. 2005.

➢ **Stephanie Fiereck** Author, "Class Action Reform: Be Prepared to Address New Notification Requirements." BNA, Inc. The Bureau of National Affairs, Inc. *Class Action Litigation Report*, Vol. 6, No. 9, May 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Stoel Rives Litigation Group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements." Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Stephanie Fiereck** Author, "Bankruptcy Strategies Can Avert Class Action Crisis." TMA - *The Journal of Corporate* Renewal, Sept. 2004.

➢ **Cameron Azari** Author, "FRCP 23 Amendments: Twice the Notice or No Settlement." Current Developments – Issue II, Aug. 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication." Weil Gotshal Litigation Group, New York, NY, 2003.

### JUDICIAL COMMENTS

**Judge David O. Carter,** *In re: California Pizza Kitchen Data Breach Litigation* (Feb. 22, 2023) 8:21-cv-01928 (C.D. Cal.):

> *The Court finds that the Class Notice plan provided for in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide due and sufficient notice to the Settlement Class regarding the existence and nature of the Consolidated Cases, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the settlement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

**Judge David Knutson,** *Duggan et al. v. Wings Financial Credit Union* (Feb. 3, 2023) 19AV-cv-20-2163 (Dist. Ct., Dakota Cnty., Minn.):

> *The Court finds that notice of the Settlement to the Class was the best notice practicable and complied with the requirements of Due Process.*

**Judge Clarence M. Darrow,** *Rivera v. IH Mississippi Valley Credit Union* (Jan. 26, 2023) 2019 CH 299 (Cir. Ct 14th Jud. Cir., Rock Island Cnty., Ill.):

> *The Court finds that the distribution of the Notices and the notice methodology were properly implemented in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order. The Court further finds that the Notice was simply written and readily understandable and Class members have received the best notice practicable under the circumstances of the pendency of this action, their right to opt out, their right to object to the settlement, and all other relevant matters. The notices provided to the class met all requirements of due process, 735 ILCS 5/8-2001, et seq., and any other applicable law.*

 **HILSOFT NOTIFICATIONS**

PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

APPENDIX 5 NOTICE PLAN

**Judge Andrew M. Lavin,** *Brower v. Northwest Community Credit Union* (Jan. 18, 2023) 20CV38608 (Ore. Dist. Ct. Multnomah Cnty.):

> *This Court finds that the distribution of the Class Notice was completed in accordance with the Preliminary Approval/Notice Order, signed September 8, 2022, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Gregory H. Woods,** *Torretto et al. v. Donnelley Financial Solutions, Inc. and Mediant Communications, Inc.* (Jan. 5, 2023) 1:20-cv-02667 (S.D.N.Y.):

> *The Court finds that the notice provided to the Class Members was the best notice practicable under the circumstances, and that it complies with the requirements of Rule 23(c)(2).*

**Judge Ledricka Thierry,** *Opelousas General Hospital Authority v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana* (Dec. 21, 2022) 16-C-3647 (27th Jud. D. Ct. La.):

> *Notice given to Class Members and all other interested parties pursuant to this Court's order of October 31, 2022, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as defined, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members' rights to appear in Court to have their objections heard, and to afford persons or entities within the Class definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as defined…"*

**Judge Dale S. Fischer,** *DiFlauro, et al. v. Bank of America, N.A.* (Dec. 19, 2022) 2:20-cv-05692 (C.D. Cal.):

> *The form and means of disseminating the Class Notice as provided for in the Order Preliminarily Approving Settlement and Providing for Notice constituted the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort. Said Notice provided the best notice practicable under the circumstances of the proceedings and the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.*

**Judge Stephen R. Bough,** *Browning et al. v. Anheuser-Busch, LLC* (Dec. 19, 2022) 4:20-cv-00889 (W.D. Mo.):

> *The Court has determined that the Notice given to the Classes, in accordance with the Notice Plan in the Settlement Agreement and the Preliminary Approval Order, fully and accurately informed members of the Classes of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable law. The Court further finds that the Notice given to the Classes was adequate and reasonable.*

**Judge Robert E. Payne,** *Haney et al. v. Genworth Life Insurance Co. et al.* (Dec. 12, 2022) 3:22-cv-00055 (E.D. Va.):

> *The Court preliminarily approved the Amended Settlement Agreement on July 7, 2022, and directed that notice be sent to the Class. ECF No. 34. The Notice explained the policy election options afforded to class members, how they could communicate with Class Counsel about the Amended Settlement Agreement, their rights and options thereunder, how they could examine certain information on a website that was set up as part of the settlement process, and their right to object to the proposed settlement and opt out of the proposed case. Class members were also informed that they could contact independent counsel of their choice for advice.*

> *In assessing the adequacy of the Notice, as well as the fairness of the settlement itself, it is important that, according to the record, as of November 1, 2022, the Notice reached more than 99% of the more than 352,000 class members.*

> *All things considered, the Notice is adequate under the applicable law….*



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX 3: NOTICE PLAN

**Judge Danielle Viola,** *Dearing v. Magellan Health, Inc. et al.* (Dec. 5, 2022) CV2020-013648 (Sup. Ct. Cnty. Maricopa, Ariz.):

> *The Court finds that the Notice to the Settlement Class fully complied with the requirements of the Arizona Rules of Civil Procedure and due process, has constituted the best notice practicable under the circumstances, was reasonably calculated to provide, and did provide, due and sufficient notice to Settlement Class Members regarding the existence and nature of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, the rights of Settlement Class Members to exclude themselves from or object to the Settlement, the right to appear at the Final Fairness Hearing, and to receive benefits under the Settlement Agreement.*

**Judge Michael A. Duddy,** *Churchill et al. v. Bangor Savings Bank* (Dec. 5, 2022) BCD-CIV-2021-00027 (Maine Bus. & Consumer Ct.):

> *The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice.*

**Judge Andrew Schulman,** *Guthrie v. Service Federal Credit Union* (Nov. 22, 2022) 218-2021-CV-00160 (Sup. Ct. Rockingham Cnty., N.H.):

> *The notice given to the Settlement Class of the Settlement and the other matters set forth therein was the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort. Said notice provided due and adequate notice of these proceedings and of the matters set forth in the Agreement, including the proposed Settlement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of New Hampshire law and due process.*

**Judge Charlene Edwards Honeywell,** *Stoll et al. v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute* (Nov. 14, 2022) 8:20-cv-01798 (M.D. Fla):

> *The Court finds and determines that the Notice Program, preliminarily approved on May 16, 2022, and implemented on June 15, 2022, constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Notice Program involved direct notice via e-mail and postal mail providing details of the Settlement, including the benefits available, how to exclude or object to the Settlement, when the Final Fairness Hearing would be held, and how to inquire further about details of the Settlement. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members. The Court further finds that notice has been provided to the appropriate state and federal officials in accordance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, drawing no objections.*

**Judge Thomas W. Thrash, Jr.,** *Callen v. Daimler AG and Mercedes-Benz USA, LLC* (Nov. 7, 2022) 1:19-cv-01411 (N.D. Ga.):

> *The Court finds that notice was given in accordance with the Preliminary Approval Order (Dkt. No. 79), and that the form and content of that Notice, and the procedures for dissemination thereof, afforded adequate protections to Class Members and satisfy the requirements of Rule 23(e) and due process and constitute the best notice practicable under the circumstances.*

**Judge Mark Thomas Bailey,** *Snyder et al. v. The Urology Center of Colorado, P.C.* (Oct. 30, 2022) 2021CV33707 (2nd Dist. Ct, Cnty. of Denver Col.):

> *The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the Settlement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Colorado Rules of Civil Procedure, the United States Constitution, and all other applicable law.*



APPENDIX 9 NOTICE PLAN

**Judge Amy Berman Jackson,** *In re: U.S. Office of Personnel Management Data Security Breach Litigation* (Oct. 28, 2022) MDL No. 2664, 15-cv-01394 (D.D.C.):

> The Court finds that notice of the Settlement was given to Class Members in accordance with the Preliminary Approval Order, and that it constituted the best notice practicable of the matters set forth therein, including the Settlement, to all individuals entitled to such notice. It further finds that the notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

**Judge John R. Tunheim,** *In re Pork Antitrust Litigation (Commercial and Institutional Indirect Purchaser Actions - CIIPPs)* **(Smithfield Foods, Inc.)** (Oct. 19, 2022) 18-cv-01776 (D. Minn.):

> The notice given to the Settlement Class, including individual notice to all members of the Settlement Class who could be identified through reasonable effort, was the most effective and practicable under the circumstances. This notice provided due and sufficient notice of the proceedings and of the matters set forth therein, including the proposed settlement, to all persons entitled to such notice, and this notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.

**Judge Harvey E. Schlesinger,** *In re Disposable Contact Lens Antitrust Litigation* **(Alcon Laboratories, Inc. and Johnson & Johnson Vision Care, Inc.)** (Oct. 12, 2022) 3:15-md-02626 (M.D. Fla):

> The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; and (vi) the right to appear at the Fairness Hearing; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreements; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).

**Judge George H. Wu,** *Hameed-Bolden et al. v. Forever 21 Retail, Inc. et al.* (Oct. 11, 2022) 2:18-cv-03019 (C.D. Cal):

> [T]he Court finds that the Notice and notice methodology implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted methods that were reasonably calculated to inform the members of the Settlement Class of the Settlement and their rights thereunder; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

**Judge Robert M. Dow, Jr.,** *In re: fairlife Milk Products Marketing and Sales Practices Litigation* (Sept. 28, 2022) MDL No. 2909, 1:19-cv-03924 (N.D. Ill.):

> The Court finds that the Class Notice Program implemented pursuant to the Settlement Agreement and the Order preliminarily approving the Settlement … (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Litigation, of their right to object to or exclude themselves from the proposed Settlement, of their right to appear at the Fairness Hearing, and of their right to seek monetary and other relief, (iii) constituted reasonable, due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of due process and any other applicable law.

**Judge Ethan P. Schulman,** *Rodan & Fields LLC; Gorzo et al. v. Rodan & Fields, LLC* (Sept. 28, 2022) CJC-18-004981, CIVDS 1723435 & CGC-18-565628 (Sup. Ct. Cal., Cnty. of San Bernadino & Sup. Ct. Cal. Cnty. of San Francisco):

> The Court finds the Full Notice, Email Notice, Postcard Notice, and Notice of Opt-Out (collectively, the "Notice Packet") and its distribution to Class Members have been implemented pursuant to the Agreement and this Court's Preliminary Approval Order. The Court also finds the Notice Packet: a) Constitutes notice reasonably calculated to apprise Class Members of: (i) the pendency of the class action lawsuit; (ii) the material terms and provisions of the Settlement and their rights; (iii) their right to object to any aspect of the Settlement; (iv) their right to exclude themselves from the Settlement; (v) their right to claim a Settlement Benefit; (vi) their right to


DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-41

APPENDIX 5 NOTICE PLAN

*appear at the Final Approval Hearing; and (vii) the binding effect of the orders and judgment in the class action lawsuit on all Participating Class Members; b) Constitutes notice that fully satisfied the requirements of Code of Civil Procedure section 382, California Rules of Court, rule 3.769, and due process; c) Constitutes the best practicable notice to Class Members under the circumstances of the class action lawsuit; and d) Constitutes reasonable, adequate, and sufficient notice to Class Members.*

**Judge Anthony J Trenga, *In Re: Capital One Customer Data Security Breach Litigation*** (Sept. 13, 2022) MDL No. 1:19-md-2915, 1:19-cv-02915 (E.D Va.):

*Pursuant to the Court's direction, the Claims Administrator appointed by the Court implemented a robust notice program … The Notice Plan has been successfully implemented and reached approximately 96 percent of the Settlement Class by the individual notice efforts alone…. Targeted internet advertising and extensive news coverage enhanced public awareness of the Settlement.*

*The Court finds that the Notice Program has been implemented by the Settlement Administrator and the Parties in accordance with the requirements of the Settlement Agreement, and that such Notice Program, including the utilized forms of Notice, constitutes the best notice practicable under the circumstances and satisfies due process and the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Court finds that the Settlement Administrator and Parties have complied with the directives of the Order Granting Preliminary Approval of Class Action Settlement and Directing Notice of Proposed Settlement and the Court reaffirms its findings concerning notice ….*

**Judge Evelio Grillo, *Aseltine v. Chipotle Mexican Grill, Inc.*** (Sept. 13, 2022) RG21088118 (Cir. Ct. Cal. Alameda Cnty.):

*The proposed class notice form and procedure are adequate. The email notice is appropriate given the amount at issue for each member of the class.*

**Judge David S. Cunningham, *Muransky et al. v. The Cheesecake Factory et al.*** (Sept. 9, 2022) 19 stcv 43875 (Sup. Ct. Cal. Cnty. of Los Angeles):

*The record shows that Class Notice has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) constitutes reasonable and the best notice that is practicable under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the terms of the Agreement and the Class Settlement set forth in the Agreement ("Class Settlement"), and the right of Settlement Class Members to object to or exclude themselves from the Settlement Class and appear at the Fairness Hearing held on May 20, 2022; (iii) constitutes due, adequate, and sufficient notice to all person or entities entitled to receive notice; and (iv) meets the requirements of due process, California Code of Civil Procedure § 382, and California Rules of Court, Rules 3.760-3.771.*

**Judge Steven E. McCullough, *Fallis et al. v. Gate City Bank*** (Sept. 9, 2022) 09-2019-cv-04007 (East Cent. Dist. Ct. Cass Cnty. N.D.):

*The Courts finds that the distribution of the Notices and the Notice Program were properly implemented in accordance with N.D. R. Civ. P. 23, the terms of the Agreement, and the Preliminary Approval Order. The Court further finds that the Notice was simply written and readily understandable and that the Notice (a) constitutes the best notice practicable under the circumstances; (b) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of the Agreement and their right to exclude themselves or object to the Agreement and to appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to notice; and (d) meets all applicable requirements of North Dakota law and any other applicable law and due process requirements.*

**Judge Susan N. Burke, *Mayo v. Affinity Plus Federal Credit Union*** (Aug. 29, 2022) 27-cv-20-11786 (4th Jud. Dist. Ct. Minn.):

*The Court finds that Notice to the Settlement Class was the best notice practicable and complied with the requirements of Due Process, and that the Notice Program was completed in compliance with the Preliminary Approval Order and the Agreement.*

**Judge Paul A. Engelmayer, *In re Morgan Stanley Data Security Litigation*** (Aug. 5, 2022) 1:20-cv-05914 (S.D.N.Y.):

*The Court finds that the emailed and mailed notice, publication notice, website, and Class Notice plan implemented pursuant to the Settlement Agreement and Judge Analisa Torres' Preliminary Approval Order: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice*



APPENDIX 2 NOTICE PLAN

*practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to appraise Settlement Class Members of the pendency of this Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of their right to exclude themselves from or object to the proposed Settlement, of their right to appear at the Fairness Hearing, of the Claims Process, and of Class Counsel's application for an award of attorneys' fees, for reimbursement of expenses associated with the Action, and any Service Award; (d) provided a full and fair opportunity to all Settlement Class Members to be heard with respect to the foregoing matters; (e) constituted due, adequate and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (f) met all applicable requirements of Rule 23 of the Federal Rule of Civil Procedure, the United States Constitution, including the Due Process Clause, and any other applicable rules of law.*

**Judge Denise Page Hood,** *Bleachtech L.L.C. v. United Parcel Service Co.* (July 20, 2022) 14-cv-12719 (E.D. Mich.):

*The Settlement Class Notice Program, consisting of, among other things, the Publication Notice, Long Form Notice, website, and toll-free telephone number, was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Robert E. Payne,** *Skochin et al. v. Genworth Life Insurance Company et al.* (June 29, 2022) 3:21-cv-00019 (E.D. Va.):

*The Court finds that the plan to disseminate the Class Notice and Publication Notice the Court previously approved has been implemented and satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. The Class Notice, which the Court approved, clearly defined the Class and explained the rights and obligations of the Class Members. The Class Notice explained how to obtain benefits under the Settlement, and how to contact Class Counsel and the Settlement Administrator. The Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") to fulfill the Settlement Administrator duties and disseminate the Class Notice and Publication Notice. The Class Notice and Publication Notice permitted Class Members to access information and documents about the case to inform their decision about whether to opt out of or object to the Settlement.*

**Judge Fernando M. Olguin,** *Johnson v. Moss Bros. Auto Group, Inc. et al.* (June 24, 2022) 5:19-cv-02456 (C.D. Cal.):

*Here, after undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 125, PAO at 18-21). As discussed above, the notice program was implemented by Epiq. (Dkt. 137-3, Azari Decl. at ¶¶ 15-23 & Exhs. 3-4 (Class Notice)). Accordingly, based on the record and its prior findings, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement….*

**Judge Harvey E. Schlesinger,** *Beiswinger v. West Shore Home, LLC* (May 25, 2022) 3:20-cv-01286 (M.D. Fla.):

*The Notice and the Notice Plan implemented pursuant to the Agreement (1) constitute the best practicable notice under the circumstances; (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, their right to object to or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing; (3) are reasonable and constitute due, adequate, and sufficient notice to all Persons entitled to receive notice; and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.*

**Judge Scott Kording,** *Jackson v. UKG Inc., f/k/a The Ultimate Software Group, Inc.* (May 20, 2022) 2020L0000031 (Cir. Ct. of McLean Cnty., Ill.):

*The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*



APPENDIX 2 NOTICE PLAN

**Judge Denise J. Casper,** *Breda v. Cellco Partnership d/b/a Verizon Wireless* (May 2, 2022) 1:16-cv-11512 (D. Mass.):

> The Court hereby finds Notice of Settlement was disseminated to persons in the Settlement Class in accordance with the Court's preliminary approval order, was the best notice practicable under the circumstances, and that the Notice satisfied Rule 23 and due process.

**Judge William H. Orrick,** *Maldonado et al. v. Apple Inc. et al.* (Apr. 29, 2022) 3:16-cv-04067 (N.D. Cal.):

> [N]otice of the Class Settlement to the Certified Class was the best notice practicable under the circumstances. The notice satisfied due process and provided adequate information to the Certified Class of all matters relating to the Class Settlement, and fully satisfied the requirements of Federal Rules of Civil Procedure 23(c)(2) and (e)(1).

**Judge Laurel Beeler,** *In re: Zoom Video Communications, Inc. Privacy Litigation* (Apr. 21, 2022) 20-cv-02155 (N.D. Cal.):

> Between November 19, 2021, and January 3, 2022, notice was sent to 158,203,160 class members by email (including reminder emails to those who did not submit a claim form) and 189,003 by mail. Of the emailed notices, 14,303,749 were undeliverable, and of that group, Epiq mailed notice to 296,592 class members for whom a physical address was available. Of the mailed notices, efforts were made to ensure address accuracy and currency, and as of March 10, 2022, 11,543 were undeliverable. In total, as of March 10, 2022, notice was accomplished for 144,242,901 class members, or 91% of the total. Additional notice efforts were made by newspaper … social media, sponsored search, an informational release, and a Settlement Website. Epiq and Class Counsel also complied with the court's prior request that best practices related to the security of class member data be implemented.
>
> [T]he Settlement Administrator provided notice to the class in the form the court approved previously. The notice met all legal prerequisites: it was the best notice practicable, satisfied the requirements of Rule 23(c)(2), adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably provided class members with all required information ....

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* **(Volkswagen)** (Mar. 28, 2022) MDL No. 2599 (S.D. Fla.):

> [T]he Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order … The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge James Donato,** *Pennington et al. v. Tetra Tech, Inc. et al.* (Mar. 28, 2022) 3:18-cv-05330 (N.D. Cal.):

> On the Rule 23(e)(1) notice requirement, the Court approved the parties' notice plan, which included postcard notice, email notice, and a settlement website. Dkt. No. 154. The individual notice efforts reached an impressive 100% of the identified settlement class. Dkt. No. 200-223. The Court finds that notice was provided in the best practicable manner to class members who will be bound by the proposal. Fed. R. Civ. P. 23(e)(1).

**Judge Edward J. Davila,** *Cochran et al. v. The Kroger Co. et al.* (Mar. 24, 2022) 5:21-cv-01887 (N.D. Cal.):

> The Court finds that the dissemination of the Notices: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that is appropriate, in a manner, content, and format reasonably calculated, under the circumstances, to apprise Settlement Class Members …; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United (including the Due Process Clause), and all other applicable laws and rules.



13

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-44

APPENDIX X – NOTICE PLAN

**Judge Sunshine Sykes,** *In re Renovate America Finance Cases* (Mar. 4, 2022) RICJCCP4940 (Sup. Ct. of Cal., Riverside Cnty.):

> The Court finds that notice previously given to Class Members in the Action was the best notice practicable under the circumstances and satisfies the requirements of due process …The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, the Court has jurisdiction over all Class Members.

**Judge David O. Carter,** *Fernandez v. Rushmore Loan Management Services LLC* (Feb. 14, 2022) 8:21-cv-00621 (C. D. Cal.):

> Notice was sent to potential Class Members pursuant to the Settlement Agreement and the method approved by the Court.  The Class Notice adequately describes the litigation and the scope of the involved Class. Further, the Class Notice explained the amount of the Settlement Fund, the plan of allocation, that Plaintiff's counsel and Plaintiff will apply for attorneys' fees, costs, and a service award, and the Class Members' option to participate, opt out, or object to the Settlement.  The Class Notice consisted of direct notice via USPS, as well as a Settlement Website where Class Members could view the Long Form Notice.

**Judge Otis D. Wright, II,** *In re Toll Roads Litigation* (Feb. 11, 2022) 8:16-cv-00262 (C. D. Cal.):

> The Class Administrator provided notice to members of the Settlement Classes in compliance with the Agreements, due process, and Rule 23.  The notice: (i) fully and accurately informed class members about the lawsuit and settlements; (ii) provided sufficient information so that class members were able to decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the proposed settlements; (iii) provided procedures for class members to file written objections to the proposed settlements, to appear at the hearing, and to state objections to the proposed settlements; and (iv) provided the time, date, and place of the final fairness hearing. The Court finds that the Notice provided to the Classes pursuant to the Settlement Agreements and the Preliminary Approval Order and consisting of individual direct postcard and email notice, publication notice, settlement website, and CAFA notice has been successful and (i) constituted the best practicable notice under the circumstances; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object to the Settlements or exclude themselves from the Classes, and to appear at the Final Approval Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) otherwise met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

**Judge Virginia M. Kendall,** *In re Turkey Antitrust Litigations* **(Commercial and Institutional Indirect Purchaser Plaintiffs' Action)** *Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli et al. v. Agri Stats, Inc.* (Feb. 10, 2022) 1:19-cv-08318 (N.D. Ill.):

> The notice given to the Settlement Class, including individual notice all members of the Settlement Class who could be identified through reasonable efforts, was the most effective and practicable under the circumstances. This notice provided due and sufficient notice of proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to such notice, and this notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.

**Judge Beth Labson Freeman,** *Ford et al. v. [24]7.ai, Inc.* (Jan. 28, 2022) 5:18-cv-02770 (N.D. Cal.):

> The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members.  The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiffs.  The Notice and notice program constituted sufficient notice to all persons entitled to notice.  The Notice and notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

**Judge Terrence W. Boyle,** *Abramson et al. v. Safe Streets USA LLC et al.* (Jan. 12, 2022) 5:19-cv-00394 (E.D.N.C.):

> Notice was provided to Settlement Class Members in compliance with Section 4 of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure.  The notice: (a) fully and accurately informed Settlement Class Members about the Actions and Settlement Agreement; (b) provided sufficient information



*so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (c) provided procedures for Settlement Class Members to submit written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (d) provided the time, date, and place of the Final Approval Hearing.*

**Judge Joan B. Gottschall, *Mercado et al. v. Verde Energy USA, Inc.*** (Dec. 17, 2021) 1:18-cv-02068 (N.D. Ill.):

*In accordance with the Settlement Agreement, Epiq launched the Settlement Website and mailed out settlement notices in accordance with the preliminary approval order. (ECF No. 149). Pursuant to this Court's preliminary approval order, Epiq mailed and emailed notice to the Class on October 1, 2021. Therefore, direct notice was sent and delivered successfully to the vast majority of Class Members.*

*The Class Notice, together with all included and ancillary documents thereto, complied with all the requirements of Rule 23(c)(2)(B) and fairly, accurately, and reasonably informed members of the Class of: (a) appropriate information about the nature of this Litigation, including the class claims, issues, and defenses, and the essential terms of the Settlement Agreement; (b) the definition of the Class; (c) appropriate information about, and means for obtaining additional information regarding, the lawsuit and the Settlement Agreement; (d) appropriate information about, and means for obtaining and submitting, a claim; (e) appropriate information about the right of Class Members to appear through an attorney, as well as the time, manner, and effect of excluding themselves from the Settlement, objecting to the terms of the Settlement Agreement, or objecting to Lead and Class Counsel's request for an award of attorneys' fees and costs, and the procedures to do so; (f) appropriate information about the consequences of failing to submit a claim or failing to comply with the procedures and deadline for requesting exclusion from, or objecting to, the Settlement; and (g) the binding effect of a class judgment on Class Members under Rule 23(c)(3) of the Federal Rules of Civil Procedure.*

*The Court finds that Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of applicable laws and due process.*

**Judge Patricia M. Lucas, *Wallace v. Wells Fargo*** (Nov. 24, 2021) 17CV317775 (Sup. Ct. Cal. Cnty. of Santa Clara):

*On August 29, 2021, a dedicated website was established for the settlement at which class members can obtain detailed information about the case and review key documents, including the long form notice, postcard notice, settlement agreement, complaint, motion for preliminary approval … (Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Settlement Notice Program ["Azari Dec."] ¶19). As of October 18, 2021, there were 2,639 visitors to the website and 4,428 website pages presented. (Ibid.).*

*On August 30, 2021, a toll-free telephone number was established to allow class members to call for additional information in English or Spanish, listen to answers to frequently asked questions, and request that a long form notice be mailed to them (Azari Dec. ¶20). As of October 18, 2021, the telephone number handled 345 calls, representing 1,207 minutes of use, and the settlement administrator mailed 30 long form notices as a result of requests made via the telephone number.*

*Also, on August 30, 2021, individual postcard notices were mailed to 177,817 class members. (Azari Dec. ¶14) As of November 10, 2021, 169,404 of those class members successfully received notice. (Supplemental Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Settlement Notice Program ["Supp. Azari Dec."] ¶10.)*

**Judge John R. Tunheim, *In Re Pork Antitrust Litigation (Commercial and Institutional Indirect Purchaser Plaintiff Action)* (JBS USA Food Company, JBS USA Food Company Holdings)** (Nov. 18, 2021) 18-cv-01776 (D. Minn.):

*The notice given to the Settlement Class, including individual notice to all members of the Settlement Class who could be identified through reasonable effort, was the most effective and practicable under the circumstances. This notice provided due and sufficient notice of the proceedings and of the matters set forth therein, including the proposed settlement, to all persons entitled to such notice, and this notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge H. Russel Holland, *Coleman v. Alaska USA Federal Credit Union*** (Nov. 17, 2021) 3:19-cv-00229 (D. Alaska):

*The Court approved Notice Program has been fully implemented. The Court finds that the Notices given to the Settlement Class fully and accurately informed Settlement Class Members of all material elements of the proposed Settlement and constituted valid, due, and sufficient Notice to Settlement Class Members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process.*



APPENDIX 8 – NOTICE PLAN

**Judge A. Graham Shirley,** *Zanca et al. v. Epic Games, Inc.* (Nov. 16, 2021) 21-CVS-534 (Sup. Ct. Wake Cnty., N.C.):

> Notice has been provided to all members of the Settlement Class pursuant to and in the manner directed by the Preliminary Approval Order.  The Notice Plan was properly administered by a highly experienced third-party Settlement Administrator.  Proof of the provision of that Notice has been filed with the Court and full opportunity to be heard has been offered to all Parties to the Action, the Settlement Class, and all persons in interest.  The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given full compliance with each of the requirements of North Carolina Rule of Civil Procedure 23, due process, and applicable law.

**Judge Judith E. Levy,** *In re Flint Water Cases* (Nov. 10, 2021) 5:16-cv-10444 (E.D. Mich.):

> (1) a "Long Form Notice packet [was] mailed to each Settlement Class member … a list of over 57,000 addresses—[and] over 90% of [the mailings] resulted in successful delivery;" (2) notices were emailed "to addresses that could be determined for Settlement Class members;" and (3) the "Notice Administrator implemented a comprehensive media notice campaign." …  The media campaign coupled with the mailing was intended to reach the relevant audience in several ways and at several times so that the class members would be fully informed about the settlement and the registration and objection process.

> The media campaign included publication in the local newspaper … local digital banners … television … and radio spots … banner notices and radio ads placed on Pandora and SoundCloud; and video ads placed on YouTube .... [T]his settlement has received widespread media attention from major news outlets nationwide.

> Plaintiffs submitted an affidavit signed by Azari that details the implementation of the Notice plan ....  The affidavit is bolstered by several documents attached to it, such as the declaration of Epiq Class Action and Claims Solutions, Inc.'s Legal Notice Manager, Stephanie J. Fiereck.  Azari declared that Epiq "delivered individual notice to approximately 91.5% of the identified Settlement Class" and that the media notice brought the overall notice effort to "in excess of 95%." The Court finds that the notice plan was implemented in an appropriate manner.

> In conclusion, the Court finds that the Notice Plan as implemented, and its content, satisfies due process.

**Judge Vince Chhabria,** *Yamagata et al. v. Reckitt Benckiser LLC* (Oct. 28, 2021) 3:17-cv-03529 (N.D. Cal.):

> The Court directed that Class Notice be given to the Class Members pursuant to the notice program proposed by the Parties and approved by the Court.  In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Settlement Administrator caused the forms of Class Notice to be disseminated as ordered.  The Long-form Class Notice advised Class Members of the terms of the Settlement Agreement; the Final Approval Hearing, and their right to appear at such hearing; their rights to remain in, or opt out of, the Settlement Class and to object to the Settlement Agreement; procedures for exercising such rights; and the binding effect of this Order and accompanying Final Judgment, whether favorable or unfavorable, to the Settlement Class.

> The distribution of the Class Notice pursuant to the Class Notice Program constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. § 1715, and any other applicable law.

**Judge Otis D. Wright, II,** *Silveira v. M&T Bank* (Oct. 12, 2021) 2:19-cv-06958 (C.D. Cal.):

> Notice was sent to potential class members pursuant to the Settlement Agreement and the method approved by the Court.  The Class Notice consisted of direct notice via USPS first class mail, as well as a Settlement Website where Class Members could view and request to be sent the Long Form Notice. The Class Notice adequately described the litigation and the scope of the involved class. Further, the Class Notice explained the amount of the Settlement Fund, the plan of allocation, that Plaintiff's counsel and Plaintiff will apply for attorneys' fees, costs, and a service award, and the class members' option to participate, opt out, or object to the settlement.

**Judge Timothy J. Korrigan,** *Smith v. Costa Del Mar, Inc.* (Sept. 21, 2021) 3:18-cv-01011 (M.D. Fla.):

> Following preliminary approval, the settlement administrator carried out the notice program ....  The settlement administrator sent a summary notice and long-form notice to all class members, sent CAFA notice to federal and state officials … and established a website with comprehensive information about the settlement ....  Email notice was sent to class members with email addresses, and postcards were sent to class members with only physical addresses ....  Multiple attempts were made to contact class members in some cases, and all notices



APPENDIX 5 NOTICE PLAN

*directed recipients to a website where they could access settlement information ....  A paid online media plan was implemented for class members for whom the settlement administrator did not have data ....  When the notice program was complete, the settlement administrator submitted a declaration stating that the notice and paid media plan reached at least seventy percent of potential class members ....  [N]otices had been delivered via postcards or email to 939,400 of the 939,479 class members to whom the settlement administrator sent notice—a ninety-nine and a half percent deliverable rate....*

*Notice was disseminated in accordance with the Preliminary Approval Order ....  Federal Rule of Civil Procedure 23(c)(2)(B) requires that notice be "the best notice that is practicable under the circumstances." Upon review of the notice materials … and of Azari's Declaration … regarding the notice program, the Court is satisfied with the way in which the notice program was carried out.  Class notice fully complied with Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and was sufficient notice to all persons entitled to notice of the settlement of this lawsuit.*

**Judge Jose E. Martinez,** *Kukorinis v. Walmart, Inc.* (Sept. 20, 2021) 1:19-cv-20592 (S.D. Fla.):

*[T]he Court approved the appointment of Epiq Class Action and Claims Solutions, Inc. as the Claims Administrator with the responsibility of implementing the notice requirements approved in the Court's Order of Approval ....  The media plan included various forms of notice, utilizing national consumer print publications, internet banner advertising, social media, sponsored search, and a national informational release ....  According to the Azari Declaration, the Court-approved Notice reached approximately seventy-five percent (75%) of the Settlement Class on an average of 3.5 times per Class Member ....*

*Pertinently, the Claims Administrator implemented digital banner notices across certain social media platforms, including Facebook and Instagram, which linked directly to the Settlement Website … the digital banner notices generated approximately 522.6 million adult impressions online ....  [T]he Court finds that notice was "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."*

**Judge Steven L. Tiscione,** *Fiore et al. v. Ingenious Designs, LLC* (Sept. 10, 2021) 1:18-cv-07124 (E.D.N.Y.):

*Following the Court's Preliminary Approval of the Settlement, the Notice Plan was effectuated by the Parties and the appointed Claims Administrator, Epiq Systems.  The Notice Plan included a direct mailing to Class members who could be specifically identified, as well as nationwide notice by publication, social media and retailer displays and posters.  The Notice Plan also included the establishment of an informational website and toll-free telephone number.  The Court finds the Parties completed all settlement notice obligations imposed in the Order Preliminarily Approving Settlement.  In addition, Defendants through the Class Administrator, sent the requisite CAFA notices to 57 federal and state officials.  The class notices constitute "the best notice practicable under the circumstances," as required by Rule 23(c)(2).*

**Judge John S. Meyer,** *Lozano v. CodeMetro, Inc.* (Sept. 8, 2021) 37-2020-00022701 (Sup. Ct. Cal. Cnty. of San Diego):

*The Court finds that Notice has been given to the Settlement Class in the manner directed by the Court in the Preliminary Approval Order.  The Court finds that such Notice: (i) was reasonable and constituted the best practicable notice under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the Settlement, their right to exclude themselves from the Settlement Class or object to all or any part of the Settlement, their right to appear at the Final Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of final approval of the Settlement on all persons who do not exclude themselves from the Settlement Class; (iii) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Mae A. D'Agostino,** *Thompson et al. v. Community Bank, N.A.* (Sept. 8, 2021) 8:19-cv-0919 (N.D.N.Y.):

*Prior to distributing Notice to the Settlement Class members, the Settlement Administrator established a website, … as well as a toll-free line that Settlement Class members could access or call for any questions or additional information about the proposed Settlement, including the Long Form Notice.  Once Settlement Class members were identified via Defendant's business records, the Notices attached to the Agreement and approved by the Court were sent to each Settlement Class member.  For Current Account Holders who have elected to receive bank communications via email, Email Notice was delivered.  To Past Defendant Account Holders, and Current Account Holders who have not elected to receive communications by email or for whom*



APPENDIX 3 NOTICE PLAN

the Defendant does not have a valid email address, Postcard Notice was delivered by U.S. Mail.  The Settlement Administrator mailed 36,012 Postcard Notices and sent 16,834 Email Notices to the Settlement Class, and as a result of the Notice Program, 95% of the Settlement Class received Notice of the Settlement.

**Judge Anne-Christine Massullo,** *UFCW & Employers Benefit Trust v. Sutter Health et al.* (Aug. 27, 2021) CGC 14-538451 consolidated with CGC-18-565398 (Sup. Ct. of Cal., Cnty. of San Fran.):

*The notice of the Settlement provided to the Class constitutes due, adequate and sufficient notice and the best notice practicable under the circumstances, and meets the requirements of due process, the laws of the State of California, and Rule 3.769(f) of the California Rules of Court.*

**Judge Graham C. Mullen,** *In re: Kaiser Gypsum Company, Inc. et al.* (July 27, 2021) 16-cv-31602 (W.D.N.C.):

*[T]the the Declaration of Cameron R. Azari, Esq. on Implementation of Notice Regarding the Joint Plan of Reorganization of Kaiser Gypsum Company, Inc. and Hanson Permanente Cement, Inc. … (the "Notice Declaration") was filed with the Bankruptcy Court on July 1, 2020, attesting to publication notice of the Plan.*

*[T]he Court has reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Agent Declaration, the Affidavits of Service, the Publication Declaration, the Notice Declaration, the Memoranda of Law, the Declarations, the Truck Affidavits and all other pleadings before the Court in connection with the Confirmation of the Plan, including the objections filed to the Plan.  The Plan is hereby confirmed in its entirety ....*

**Judge Anne-Christine Massullo,** *Morris v. Provident Credit Union* (June 23, 2021) CGC-19-581616 (Sup. Ct. Cal. Cnty. of San Fran.):

*The Notice approved by this Court was distributed to the Classes in substantial compliance with this Court's Order Certifying Classes for Settlement Purposes and Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") and the Agreement.  The Notice met the requirements of due process and California Rules of Court, rules 3.766 and 3.769(f).  The notice to the Classes was adequate.*

**Judge Esther Salas,** *Sager et al. v. Volkswagen Group of America, Inc. et al.* (June 22, 2021) 18-cv-13556 (D.N.J.):

*The Court further finds and concludes that Class Notice was properly and timely disseminated to the Settlement Class in accordance with the Class Notice Plan set forth in the Settlement Agreement and the Preliminary Approval Order (Dkt. No. 69).  The Class Notice Plan and its implementation in this case fully satisfy Rule 23, the requirements of due process and constitute the best notice practicable under the circumstances.*

**Judge Josephine L. Staton,** *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc. et al.* (June 10, 2021) 8:17-cv-00838 and 18-cv-02223 (C.D. Cal.):

*The Class Notice was disseminated in accordance with the procedures required by the Court's Orders … in accordance with applicable law, and satisfied the requirements of Rule 23(e) and due process and constituted the best notice practicable for the reasons discussed in the Preliminary Approval Order and Final Approval Order.*

**Judge Harvey Schlesinger,** *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC) (May 31, 2021) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Order; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the Releases to be provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Haywood S. Gilliam, Jr.** *Richards et al. v. Chime Financial, Inc.* (May 24, 2021) 4:19-cv-06864 (N.D. Cal.):

*The Court finds that the notice and notice plan previously approved by the Court was implemented and*



APPENDIX – NOTICE PLAN

*complies with Rule 23(c)(2)(B) … The Court ordered that the third-party settlement administrator send class notice via email based on a class list Defendant provided … Epiq Class Action & Claims Solutions, Inc., the third-party settlement administrator, represents that class notice was provided as directed …. Epiq received a total of 527,505 records for potential Class Members, including their email addresses …. If the receiving email server could not deliver the message, a "bounce code" was returned to Epiq indicating that the message was undeliverable …. Epiq made two additional attempts to deliver the email notice …. As of Mach 1, 2021, a total of 495,006 email notices were delivered, and 32,499 remained undeliverable …. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.*

**Judge Henry Edward Autrey,** *Pearlstone v. Wal-Mart Stores, Inc.* (Apr. 22, 2021) 4:17-cv-02856 (C.D. Cal.):

*The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.*

**Judge Lucy H. Koh,** *Grace v. Apple, Inc.* (Mar. 31, 2021) 17-cv-00551 (N.D. Cal.):

*Federal Rule of Civil Procedure 23(c)(2)(B) requires that the settling parties provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Court finds that the Notice Plan, which was direct notice sent to 99.8% of the Settlement Class via email and U.S. Mail, has been implemented in compliance with this Court's Order (ECF No. 426) and complies with Rule 23(c)(2)(B).*

**Judge Gary A. Fenner,** *In re: Pre-Filled Propane Tank Antitrust Litigation* (Mar. 30, 2021) MDL No. 2567, 14-cv-02567 (W.D. Mo.):

*Based upon the Declaration of Cameron Azari, on behalf of Epiq, the Administrator appointed by the Court, the Court finds that the Notice Program has been properly implemented. That Declaration shows that there have been no requests for exclusion from the Settlement, and no objections to the Settlement. Finally, the Declaration reflects that AmeriGas has given appropriate notice of this settlement to the Attorney General of the United States and the appropriate State officials under the Class Action Fairness Act, 28 U.S.C. § 1715, and no objections have been received from any of them.*

**Judge Richard Seeborg,** *Bautista v. Valero Marketing and Supply Company* (Mar. 17, 2021) 3:15-cv-05557 (N.D. Cal.):

*The Notice given to the Settlement Class in accordance with the Notice Order was the best notice practicable under the circumstances of these proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Settlement Agreement, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge James D. Peterson,** *Fox et al. v. Iowa Health System d.b.a. UnityPoint Health* (Mar. 4, 2021) 18-cv-00327 (W.D. Wis.):

*The approved Notice plan provided for direct mail notice to all class members at their last known address according to UnityPoint's records, as updated by the administrator through the U.S. Postal Service. For postcards returned undeliverable, the administrator tried to find updated addresses for those class members. The administrator maintained the Settlement website and made Spanish versions of the Long Form Notice and Claim Form available upon request. The administrator also maintained a toll-free telephone line which provides class members detailed information about the settlement and allows individuals to request a claim form be mailed to them.*

*The Court finds that this Notice (i) constituted the best notice practicable under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class members of the Settlement, the effect of the Settlement (including the release therein), and their right to object to the terms of the settlement and appear at the Final Approval Hearing; (iii) constituted due and sufficient notice of the Settlement to all reasonably identifiable persons entitled to receive such notice; (iv) satisfied the requirements of due process, Federal Rule of Civil Procedure 23(e)(1) and the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all applicable laws and rules.*

 HILSOFT NOTIFICATIONS          PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-50

APPENDIX C NOTICE PLAN

**Judge Larry A. Burns,** *Trujillo et al. v. Ametek, Inc. et al.* (Mar. 3, 2021) 3:15-cv-01394 (S.D. Cal.):

The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. See Dkt. 181-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing .... The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

**Judge Sherri A. Lydon,** *Fitzhenry v. Independent Home Products, LLC* (Mar. 2, 2021) 2:19-cv-02993 (D.S.C.):

Notice was provided to Class Members in compliance with Section VI of the Settlement Agreement, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice: (i) fully and accurately informed Settlement Class Members about the lawsuit and settlement; (ii) provided sufficient information so that Settlement Class Members could decide whether to accept the benefits offered, opt-out and pursue their own remedies, or object to the settlement; (iii) provided procedures for Class Members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.

**Judge James V. Selna,** *Alvarez v. Sirius XM Radio Inc.* (Feb. 9, 2021) 2:18-cv-08605 (C.D. Cal.):

The Court finds that the dissemination of the Notices attached as Exhibits to the Settlement Agreement: (a) was implemented in accordance with the Notice Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the Releases to be provided thereunder); (v) Named Plaintiffs' application for the payment of Service Awards; (vi) Class Counsel's motion for an award an attorneys' fees and expenses; (vii) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for attorneys' fees and expenses (including a Service Award to the Named Plaintiffs and Mr. Wright); and (viii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.

**Judge Jon S. Tigar,** *Elder v. Hilton Worldwide Holdings, Inc.* (Feb. 4, 2021) 16-cv-00278 (N.D. Cal.):

"Epiq implemented the notice plan precisely as set out in the Settlement Agreement and as ordered by the Court." ECF No. 162 at 9-10. Epiq sent initial notice by email to 8,777 Class Members and by U.S. Mail to the remaining 1,244 Class members. Id. at 10. The Notice informed Class Members about all aspects of the Settlement, the date and time of the fairness hearing, and the process for objections. ECF No. 155 at 28-37. Epiq then mailed notice to the 2,696 Class Members whose emails were returned as undeliverable. Id. "Of the 10,021 Class Members identified from Defendants' records, Epiq was unable to deliver the notice to only 35 Class Members. Accordingly, the reach of the notice is 99.65%." Id. (citation omitted). Epiq also created and maintained a settlement website and a toll-free hotline that Class Members could call if they had questions about the settlement. Id.

The Court finds that the parties have complied with the Court's preliminary approval order and, because the notice plan complied with Rule 23, have provided adequate notice to class members.

**Judge Michael W. Jones,** *Wallace et al. v. Monier Lifetile LLC et al.* (Jan. 15, 2021) SCV-16410 (Sup. Ct. Cal.):

The Court also finds that the Class Notice and notice process were implemented in accordance with the Preliminary Approval Order, providing the best practicable notice under the circumstances.



PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-51

APPENDIX 3 NOTICE PLAN

**Judge Kristi K. DuBose,** *Drazen v. GoDaddy.com, LLC* **and** *Bennett v. GoDaddy.com, LLC* (Dec. 23, 2020) 1:19-cv-00563 (S.D. Ala.):

> The Court finds that the Notice and the claims procedures actually implemented satisfy due process, meet the requirements of Rule 23(e)(1), and the Notice constitutes the best notice practicable under the circumstances.

**Judge Haywood S. Gilliam, Jr.,** *Izor v. Abacus Data Systems, Inc.* (Dec. 21, 2020) 19-cv-01057 (N.D. Cal.):

> The Court finds that the notice plan previously approved by the Court was implemented and that the notice thus satisfied Rule 23(c)(2)(B).  [T]he Court finds that the parties have sufficiently provided the best practicable notice to the class members.

**Judge Christopher C. Conner,** *Al's Discount Plumbing et al. v. Viega, LLC* (Dec. 18, 2020) 19-cv-00159 (M.D. Pa.):

> The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Fed. R. Civ. P. 23(c)(2)(B) and due process.  Specifically, the Court ordered that the third-party Settlement Administrator, Epiq, send class notice via email, U.S. mail, by publication in two recognized industry magazines, Plumber and PHC News, in both their print and online digital forms, and to implement a digital media campaign.  (ECF 99).  Epiq represents that class notice was provided as directed.  See Declaration of Cameron R. Azari, ¶¶ 12-15 (ECF 104-13).

**Judge Naomi Reice Buchwald,** *In re: Libor-Based Financial Instruments Antitrust Litigation* (Dec. 16, 2020) MDL No. 2262, 1:11-md-02262 (S.D.N.Y.):

> Upon review of the record, the Court hereby finds that the forms and methods of notifying the members of the Settlement Classes and their terms and conditions have met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all members of the Settlement Classes of these proceedings and the matters set forth herein, including the Settlements, the Plan of Allocation and the Fairness Hearing. Therefore, the Class Notice is finally approved.

**Judge Larry A. Burns,** *Cox et al. Ametek, Inc. et al.* (Dec 15, 2020) 3:17-cv-00597 (S.D. Cal.):

> The Class has received the best practicable notice under the circumstances of this case.  The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate.  Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order.  See Dkt. 129-6.  The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing … The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

**Judge Timothy J. Sullivan,** *Robinson v. Nationstar Mortgage LLC* (Dec. 11, 2020) 8:14-cv-03667 (D. Md.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the United States Constitution, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The Class Notice fully satisfied the requirements of Due Process.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Dec. 10, 2020) MDL No. 2420, 4:13-md-02420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter.  (See Dkt. No. 2571.)  The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign.  Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as



APPENDIX 8 NOTICE PLAN

*Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational release was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*

**Judge Katherine A. Bacal,** *Garvin v. San Diego Unified Port District* (Nov. 20, 2020) 37-2020-00015064 (Sup. Ct. Cal.):

*Notice was provided to Class Members in compliance with the Settlement Agreement, California Code of Civil Procedure §382 and California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing notice to all individual Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The Notice fully satisfied the requirements of due process.*

**Judge Catherine D. Perry,** *Pirozzi et al. v. Massage Envy Franchising, LLC* (Nov. 13, 2020) 4:19-cv-807 (E.D. Mo.):

*The COURT hereby finds that the CLASS NOTICE given to the CLASS: (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the time and manner by which CLASS MEMBERS could submit a CLAIM under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances, constituted a reasonable manner of notice to all class members who would be bound by the SETTLEMENT, and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Robert E. Payne,** *Skochin et al. v. Genworth Life Insurance Company et al.* (Nov. 12, 2020) 3:19-cv-00049 (E.D. Va.):

*For the reasons set forth in the Court's Memorandum Opinion addressing objections to the Settlement Agreement, … the plan to disseminate the Class Notice and Publication Notice, which the Court previously approved, has been implemented and satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process.*

**Judge Jeff Carpenter,** *Eastwood Construction LLC et al. v. City of Monroe* (Oct. 27, 2020) 18-cvs-2692 and *The Estate of Donald Alan Plyler Sr. et al. v. City of Monroe* (Oct. 27, 2020) 19-cvs-1825 (Sup. Ct. N.C.):

*The Settlement Agreement and the Settlement Notice are found to be fair, reasonable, adequate, and in the best interests of the Settlement Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement Agreement in accordance with the terms and provisions set forth in the Settlement Agreement, and the Clerk of the Court is directed to enter and docket this Order and Final Judgement in the Actions.*

**Judge M. James Lorenz,** *Walters et al. v. Target Corp.* (Oct. 26, 2020) 3:16-cv-1678 (S.D. Cal.):

*The Court has determined that the Class Notices given to Settlement Class members fully and accurately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members consistent with all applicable requirements. The Court further finds that the Notice Program satisfies due process and has been fully implemented.*

**Judge Maren E. Nelson,** *Harris et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* (Oct. 26, 2020) BC 579498 (Sup. Ct. Cal.):

*Distribution of Notice directed to the Settlement Class Members as set forth in the Settlement has been completed in conformity with the Preliminary Approval Order, including individual notice to all Settlement Class members who could be identified through reasonable effort, and the best notice practicable under the circumstances. The Notice, which reached 99.9% of all Settlement Class Members, provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement, to all persons entitled to Notice, and the Notice and its distribution fully satisfied the requirements of due process.*



APPENDIX 2 NOTICE PLAN

**Judge Vera M. Scanlon,** *Lashambae v. Capital One Bank, N.A.* (Oct. 21, 2020) 1:17-cv-06406 (E.D.N.Y.):

> The Class Notice, as amended, contained all of the necessary elements, including the class definition, the identifies of the named Parties and their counsel, a summary of the terms of the proposed Settlement, information regarding the manner in which objections may be submitted, information regarding the opt-out procedures and deadlines, and the date and location of the Final Approval Hearing.  Notice was successfully delivered to approximately 98.7% of the Settlement Class and only 78 individual Settlement Class Members did not receive notice by email or first class mail.

> Having reviewed the content of the Class Notice, as amended, and the manner in which the Class Notice was disseminated, this Court finds that the Class Notice, as amended, satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules. The Class Notice, as amended, provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances and provided this Court with jurisdiction over the absent Settlement Class Members. See Fed. R. Civ. P. 23(c)(2)(B).

**Chancellor Walter L. Evans,** *K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals* (Oct. 14, 2020) CH-13-04871-1 (30th Jud. Dist. Tenn.):

> Based upon the filings and the record as a whole, the Court finds and determines that dissemination of the Class Notice as set forth herein complies with Tenn. R. Civ. P. 23.03(3) and 23.05 and (i) constitutes the best practicable notice under the circumstances, (ii) was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of Class Settlement, their rights to object to the proposed Settlement, (iii) was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, (iv) meets all applicable requirements of Due Process; (v) and properly provides notice of the attorney's fees that Class Counsel shall seek in this action.  As a result, the Court finds that Class Members were properly notified of their rights, received full Due Process ....

**Judge Sara L. Ellis,** *Nelson v. Roadrunner Transportation Systems, Inc.* (Sept. 15, 2020) 1:18-cv-07400 (N.D. Ill.):

> Notice of the Final Approval Hearing, the proposed motion for attorneys' fees, costs, and expenses, and the proposed Service Award payment to Plaintiff have been provided to Settlement Class Members as directed by this Court's Orders.

> The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

**Judge George H. Wu,** *Lusnak v. Bank of America, N.A.* (Aug. 10, 2020) 14-cv-01855 (C.D. Cal.):

> The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties.  The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.

**Judge James Lawrence King,** *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A.* (Aug. 10, 2020) 1:10-cv-22190 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

> The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).  This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.

---



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-54

APPENDIX 3: NOTICE PLAN

**Judge Jeffrey S. Ross,** *Lehman v. Transbay Joint Powers Authority et al.* (Aug. 7, 2020) CGC-16-553758 (Sup. Ct. Cal.):

> The Notice approved by this Court was distributed to the Settlement Class Members in compliance with this Court's Order Granting Preliminary Approval of Class Action Settlement, dated May 8, 2020. The Notice provided to the Settlement Class Members met the requirements of due process and constituted the best notice practicable in the circumstances. Based on evidence and other material submitted in conjunction with the final approval hearing, notice to the class was adequate.

**Judge Jean Hoefer Toal,** *Cook et al. v. South Carolina Public Service Authority et al.* (July 31, 2020) 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.):

> Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.

**Judge Peter J. Messitte,** *Jackson et al. v. Viking Group, Inc. et al.* (July 28, 2020) 8:18-cv-02356 (D. Md.):

> [T]he Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order as amended. The Court finds that the Notice Plan: (i) constitutes the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Lawsuit and the terms of the Settlement, their right to exclude themselves from the Settlement, or to object to any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Approval Order and the Final Judgment, whether favorable or unfavorable, on all Persons who do not exclude themselves from the Settlement Class, (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

**Judge Michael P. Shea,** *Grayson et al. v. General Electric Company* (July 27, 2020) 3:13-cv-01799 (D. Conn.):

> Pursuant to the Preliminary Approval Order, the Settlement Notice was mailed, emailed and disseminated by the other means described in the Settlement Agreement to the Class Members. This Court finds that this notice procedure was (i) the best practicable notice; (ii) reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Civil Action and of their right to object to or exclude themselves from the proposed Settlement; and (iii) reasonable and constitutes due, adequate, and sufficient notice to all entities and persons entitled to receive notice.

**Judge Gerald J. Pappert,** *Rose v. The Travelers Home and Marine Insurance Company et al.* (July 20, 2020) 19-cv-00977 (E.D. Pa.):

> The Class Notice … has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. Such Class Notice (i) constituted the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency and nature of this Action, the definition of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class to exclude themselves from the settlement or to object to any part of the settlement, the rights of the Settlement Class to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Settlement Agreement on all persons who do not exclude themselves from the Settlement Class, (iii) provided due, adequate, and sufficient notice to the Settlement Class; and (iv) fully satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.

**Judge Christina A. Snyder,** *Waldrup v. Countrywide Financial Corporation et al.* (July 16, 2020) 2:13-cv-08833 (C.D. Cal.):

> The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute



APPENDIX 6 NOTICE PLAN

*(including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

**Judge James Donato,** *Coffeng et al. v. Volkswagen Group of America, Inc.* (June 10, 2020) 17-cv-01825 (N.D. Cal.):

*The Court finds that, as demonstrated by the Declaration and Supplemental Declaration of Cameron Azari, and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with FED. R. CIV. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

**Judge Michael W. Fitzgerald,** *Behfarin v. Pruco Life Insurance Company et al.* (June 3, 2020) 17-cv-05290 (C.D. Cal.):

*The Court finds that the requirements of Rule 23 of the Federal Rule of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been satisfied ....*

*This Court finds that the Claims Administrator caused notice to be disseminated to the Class in accordance with the plan to disseminate Notice outlined in the Settlement Agreement and the Preliminary Approval Order, and that Notice was given in an adequate and sufficient manner and complies with Due Process and Fed. R. Civ. P. 23.*

**Judge Nancy J. Rosenstengel,** *First Impressions Salon, Inc. et al. v. National Milk Producers Federation et al.* (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

*The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger,** *In re: Disposable Contact Lens Antitrust Litigation* **(CooperVision, Inc.)** (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

*The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt-out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant,** *Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*



APPENDIX 3: NOTICE PLAN

**Judge Michael H. Simon,** *In re: Premera Blue Cross Customer Data Security Breach Litigation* (Mar. 2, 2020) MDL No. 2633, 3:15-md-2633 (D. Ore.):

> The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.

**Judge Maxine M. Chesney,** *McKinney-Drobnis et al. v. Massage Envy Franchising* (Mar. 2, 2020) 3:16-cv-06450 (N.D. Cal.):

> The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.

**Judge Harry D. Leinenweber,** *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* (Feb. 6, 2020) 1:18-cv-01061 (N.D. Ill.):

> The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

> The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.

**Judge Robert Scola, Jr.,** *Wilson et al. v. Volkswagen Group of America, Inc. et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

> The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances.  The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

> The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.



APPENDIX 5 NOTICE PLAN

**Judge Bruce Howe Hendricks,** *In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D.S.C.):

> The Classes have been notified of the settlement pursuant to the plan approved by the Court.  After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives.  The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.

**Judge Margo K. Brodie,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2019) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

> The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120).  The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances.  The Court further finds that the notice was clearly designed to advise the class members of their rights.

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

> The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Va.):

> The Court finds that the manner and form of notice (the "Notice Plan") as provided for in this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator ....  The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement.  The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.

**Judge Brian McDonald,** *Armon et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

> The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate instructions as to how to obtain additional information regarding this Litigation and the Settlement.  In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.



HILSOFT NOTIFICATIONS          PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-58

**Judge Andrew J. Guilford,** *In re: Wells Fargo Collateral Protection Insurance Litigation* (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

> *Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney,** *Burch v. Whirlpool Corporation* (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

> *[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Gene E.K. Pratter,** *Tashica Fulton-Green et al. v. Accolade, Inc.* (Sept. 24, 2019) 2:18-cv-00274 (E.D. Pa.):

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres,** *Burrow et al. v. Forjas Taurus S.A. et al.* (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

> *Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*

**Judge Amos L. Mazzant,** *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

> *The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

> *In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Karon Owen Bowdre,** *In re: Community Health Systems, Inc. Customer Data Security Breach Litigation* (Aug. 22, 2019) MDL No. 2595, 2:15-cv-00222 (N.D. Ala.):

> *The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.*

> *The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.*

**Judge Christina A. Snyder,** *Zaklit et al. v. Nationstar Mortgage LLC et al.* (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

> *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process.  No Settlement Class Members have objected to the terms of the Settlement.*

 HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-59

APPENDIX A NOTICE PLAN

**Judge Brian M. Cogan,** *Luib v. Henkel Consumer Goods Inc.* (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

*The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Aug. 16, 2019) MDL No. 2420, 4:13-md-02420 (N.D. Cal.):

*The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each.  As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims.  That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.*

**Judge Jon Tigar,** *McKnight et al. v. Uber Technologies, Inc. et al.* (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

*The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval.  ECF No. 162 at 17-18.  Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17.  Epiq also created a website, banner ads, and a toll free number.  Id. at 17-18.  Epiq estimates that it reached through mail and other formats 94.3% of class members.  ECF No. 164 ¶ 28.  In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gary W.B. Chang,** *Robinson v. First Hawaiian Bank* (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

*This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.*

**Judge Karin Crump,** *Hyder et al. v. Consumers County Mutual Insurance Company* (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis Cnty. Tex.):

*Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.*

**Judge Wendy Bettlestone,** *Underwood v. Kohl's Department Stores, Inc. et al.* (July 24, 2019) 2:15-cv-00730 (E.D. Pa.):

*The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.*

**Judge Andrew G. Ceresia, J.S.C.,** *Denier et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.*

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group, LLC* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

*Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings.  The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members.  The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class*



APPENDIX—NOTICE PLAN

and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice.  The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement.  The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.

**Judge John C. Hayes III,** *Lightsey et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice….  Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.

**Judge Stephen K. Bushong,** *Scharfstein v. BP West Coast Products, LLC* (June 4, 2019) 1112-17046 (Ore. Cir., Cnty. of Multnomah):

The Court finds that the Notice Plan … fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.

**Judge Cynthia Bashant,** *Lloyd et al. v. Navy Federal Credit Union* (May 28, 2019) 17-cv-1280 (S.D. Cal.):

This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments.  The Court affirms once more that notice was adequate.

**Judge Robert W. Gettleman,** *Cowen v. Lenny & Larry's Inc.* (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order.  Adequate notice of the amended settlement and the final approval hearing has also been given.  Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.

**Judge Edward J. Davila,** *In re: HP Printer Firmware Update Litigation* (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

**Judge Claudia Wilken,** *Naiman v. Total Merchant Services, Inc. et al.* (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process.  The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.

**Judge Paul Gardephe,** *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-61

APPENDIX L NOTICE PLAN

**Judge Alison J. Nathan,** *Pantelyat et al. v. Bank of America, N.A. et al.* (Jan. 31, 2019) 16-cv-08964 (S.D.N.Y.):

> The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.

**Judge Kenneth M. Hoyt,** *Al's Pals Pet Card, LLC et al. v. Woodforest National Bank, N.A. et al.* (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> [T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.

**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817, 18-cv-00864 (N.D. Ill.):

> The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* **(Ford)** (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

> The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund et al. v. Bank of America, N.A. et al.* (Nov. 13, 2018) 14-cv-07126 (S.D.N.Y.):

> The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.



APPENDIX 7 NOTICE PLAN

**Judge William L. Campbell, Jr.,** *Ajose et al. v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

> The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.

**Judge Joseph C. Spero,** *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

> [T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B) … The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.

**Judge Marcia G. Cooke,** *Dipuglia v. US Coachways, Inc.* (*Sept. 28, 2018*) 1:17-cv-23006 (S.D. Fla.):

> The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Judge Beth Labson Freeman,** *Gergetz v. Telenav, Inc.* (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

> The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.

**Judge M. James Lorenz,** *Farrell v. Bank of America, N.A.* (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

> The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.

**Judge Dean D. Pregerson,** *Falco et al. v. Nissan North America, Inc. et al.* (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

> Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.

**Judge Lynn Adelman,** *In re: Windsor Wood Clad Window Product Liability Litigation* (July 16, 2018) MDL No. 2688, 16-md-02688 (E.D. Wis.):

> The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due



APPENDIX 3: NOTICE PLAN

*Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.*

**Judge Stephen K. Bushong,** *Surrett et al. v. Western Culinary Institute et al.* (June 18, 2018) 0803-03530 (Ore. Cir. Cnty. of Multnomah):

*This Court finds that the distribution of the Notice of Settlement … fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund et al. v. Bank of America, N.A. et al.* (June 1, 2018) 14-cv-07126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman,** *Larson v. John Hancock Life Insurance Company (U.S.A.)* (May 8, 2018) RG16813803 (Sup. Ct. Cal.):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*

**Judge Federico A. Moreno,** *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* (May 8, 2018) 17-cv-22967 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Chancellor Russell T. Perkins,** *Morton v. GreenBank* (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

*The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.*

**Judge James V. Selna,** *Callaway v. Mercedes-Benz USA, LLC* (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

*The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.*

*The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.*

*The Court has considered and rejected the objection … [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator.*



33

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-64

APPENDIX 3 – NOTICE PLAN

**Judge Thomas M. Durkin,** *Vergara et al., v. Uber Technologies, Inc.* (Mar. 1, 2018) 1:15-cv-06972 (N.D. Ill.):

> The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case, certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* **(Honda & Nissan)** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

> The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order.  The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Susan O. Hickey,** *Larey v. Allstate Property and Casualty Insurance Company* (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

> Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.

**Judge Muriel D. Hughes,** *Glaske v. Independent Bank Corporation* (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

> The Court-approved Notice Plan satisfied due process requirements …   The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.

**Judge Naomi Reice Buchwald,** *Orlander v. Staples, Inc.* (Dec. 13, 2017) 13-cv-00703 (S.D.N.Y.):

> The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

**Judge Lisa Godbey Wood,** *T.A.N. v. PNI Digital Media, Inc.* (Dec. 1, 2017) 2:16-cv-132 (S.D. Ga.):

> Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.



34

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-65

APPENDIX 2 – NOTICE PLAN

**Judge Robin L. Rosenberg,** *Gottlieb v. Citgo Petroleum Corporation* (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

> The Settlement Class Notice Program was the best notice practicable under the circumstances.  The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Judge Donald M. Middlebrooks,** *Mahoney v. TT of Pine Ridge, Inc.* (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

> Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).

**Judge Gerald Austin McHugh,** *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric et al.* (Nov. 8, 2017) 2:14-cv-04464 (E.D. Pa.):

> Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby.  The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation* **(BMW, Mazda, Toyota, & Subaru)** (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

> [T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order.  The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

> The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement.  The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)

**Judge Rebecca Brett Nightingale,** *Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma et al.* (May 15, 2017) CJ-2015-00859 (Dist. Ct. Okla.):

> The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (Apr. 13, 2017) 8:15-cv-00061 (D. Neb.):

> The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December



35

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-66

*7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process.  Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers,** *Bias v. Wells Fargo & Company et al.* (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc. et al.* (Dec. 14, 2016) 2:12-cv-02247 and *Gary, LLC v. Deffenbaugh Industries, Inc. et al.* 2:13-cv-02634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests.  The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*

**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (Nov. 21, 2016) 60CV03-4661 (Ark. Cir. Ct.):

*The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.*

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A.,* **as part of** *In re: Checking Account Overdraft Litigation* (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

*This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.*

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (Sept. 20, 2016) MDL No. 2540 (D.N.J.):

*The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances.  Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (Apr. 11, 2016) 14-cv-23120 (S.D. Fla.):

*Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the*


HILSOFT NOTIFICATIONS          PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-67

APPENDIX E: NOTICE PLAN

Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Yvonne Gonzalez Rogers,** *In re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) MDL No. 2420, 4:13-md-02420 (N.D. Cal.):

From what I could tell, I liked your approach and the way you did it.  I get a lot of these notices that I think are all legalese and no one can really understand them.  Yours was not that way.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp et al.* (July 30, 2015) 14-cv-10979 (Bankr. D. Del.):

Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D.S.C.):

The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.

The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.

**Judge Robert W. Gettleman,** *Adkins et al. v. Nestlé Purina PetCare Company et al.* (June 23, 2015) 1:12-cv-02871 (N.D. Ill.):

Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order.  Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.):

The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).  This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so.  Azari Decl. ¶¶ 30-39.



APPENDIX 3 NOTICE PLAN

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.* (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances.  The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices.  Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation et al.* (Aug. 29, 2014) 5:11-cv-02390 & 5:12-cv-00400 (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing.   The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) CGC-12-519221 (Sup. Ct. Cal.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order.  Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Dec. 13, 2013) MDL No. 1720, 05-md-01720 (E.D.N.Y.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards … The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk,** *Evans et al. v. TIN, Inc. et al.* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation* (Apr. 5, 2013) 3:08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out … The Court … concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re: Zurn Pex Plumbing Products Liability Litigation* (Feb. 27, 2013) MDL No. 1958, 08-md-01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*


HILSOFT NOTIFICATIONS            PORTLAND AREA OFFICE        10300 SW ALLEN BLVD            BEAVERTON, OR 97005        T 503-597-7697

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-69

*The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.* (Jan. 28, 2013) 3:10-cv-00960 (D. Ore.):

*Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement)* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

*Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.) All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*

*The Court received no objections to the scope or content of the [Medical Benefits] Notice Program. (Azari Supp. Decl. ¶ 12.) The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort. Likewise, the Notice and Notice Plan satisfied the requirements of Due Process. The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*

**Judge Carl J. Barbier,** *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement)* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-70

**Judge Alonzo Harris,** *Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.* (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

> Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.

**Judge James Lawrence King,** *Sachar v. Iberiabank Corporation* (Apr. 26, 2012) as part of *In re: Checking Account Overdraft* MDL No. 2036 (S.D. Fla):

> The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims … [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment."…. The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers* (Apr. 13, 2012) SU10-cv-2267B (Ga. Super. Ct.):

> The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.

> The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.

**Judge Lee Rosenthal,** *In re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation* (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement … Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re: Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.

**Judge John D. Bates,** *Trombley v. National City Bank* (Dec. 1, 2011) 1:10-cv-00232 (D.D.C.) as part of *In re: Checking Account Overdraft Litigation* MDL No. 2036 (S.D. Fla.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate



APPENDIX 3: NOTICE PLAN

*and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** ***Schulte v. Fifth Third Bank*** (July 29, 2011) 1:09-cv-06655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** ***Williams v. Hammerman & Gainer Inc.*** (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others … were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Stefan R. Underhill,** ***Mathena v. Webster Bank, N.A.*** (Mar. 24, 2011) 3:10-cv-01448 (D. Conn.) as part of ***In re: Checking Account Overdraft Litigation*** MDL No. 2036 (S.D. Fla.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart,** ***Miller v. Basic Research, LLC*** (Sept. 2, 2010) 2:07-cv-00871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** ***Pavlov v. Continental Casualty Co.*** (Oct. 7, 2009) 5:07-cv-02580 (N.D. Ohio):

*[T]he elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** ***In re: Department of Veterans Affairs (VA) Data Theft Litigation*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-72

APPENDIX 3: NOTICE PLAN

**LEGAL NOTICE CASES**

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| *In Re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation* | N.D. Cal., No. 19-md-02913 |
| *Rogowski et al. v. State Farm Life Insurance Company et al.* (Whole Life or Universal Life Insurance) | W.D. Mo., No. 4:22-cv-00203 |
| *Ingram v. Jamestown Import Auto Sales, Inc.  d/b/a Kia of Jamestown* (TCPA) | W.D.N.Y., No. 1:22-cv-00309 |
| *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation* | S.D. Ind., No. 3:21-cv-00007 |
| *Meier v. Prosperity Bank* (Bank Fees & Overdraft) | 239th Jud. Dist., Brazoria Cnty, Tex., No. 109569-CV |
| *Middleton et al. v. Liberty Mutual Personal Insurance Company et al.* (Auto Insurance Claims Sales Tax) | S.D. Ohio, No. 1:20-cv-00668 |
| *Checchia v. Bank of America, N.A.* (Bank Fees) | E.D. Penn., No. 2:21-cv-03585 |
| *McCullough v. True Health New Mexico, Inc.* (Data Breach) | 2nd Dist. Ct, N.M., No. D-202-CV-2021-06816 |
| *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG et al.* (Swiss Franc LIBOR-Based Derivatives) | S.D.N.Y., No. 1:15-cv-00871 |
| *Duggan et al. v. Wings Financial Credit Union* (Bank Fees) | Dist. Ct., Dakota Cnty., Minn., No. 19AV-cv-20-2163 |
| *Miller v. Bath Saver, Inc. et al.* (TCPA) | M.D. Penn., No. 1:21-cv-01072 |
| *Chapman v. Insight Global Inc.* (Data Breach) | M.D. Penn., No. 1:21-cv-00824 |
| *Thomsen et al. v. Morley Cos., Inc.* (Data Breach) | E.D. Mich., No. 1:22-cv-10271 |
| *In re Scripps Health Data Incident Litigation* (Data Breach) | Sup. Ct. Cal. Cnty. of San Diego, No. 37-2021-00024103 |
| *In Re Robinhood Outage Litigation* (Trading Outage) | N.D. Cal., No. 3:20-cv-01626 |
| *Walker v Highmark BCBSD Health* (TCPA) | W.D. Penn., No. 20-cv-01975 |
| *Dickens et al. v. Thinx, Inc.* (Consumer Product) | S.D.N.Y., No. 1:22-cv-04286 |
| *Service et al. v. Volkswagen Group of America et al.* (Data Breach) | Sup. Ct. Cal. Cnty. of Contra Costa, No. C22-01841 |
| *Paris et al. v. Progressive American et al. & South v. Progressive Select Insurance Company* (Automobile Total Loss) | S.D. Fla., No. 19-cv-21761 & 19-cv-21760 |
| *Wenston Desue et al. v. 20/20 Eye Care Network, Inc. et al.* (Data Breach) | S.D. Fla., No. 21-cv-61275 |
| *Rivera v. IH Mississippi Valley Credit Union* (Overdraft) | Cir. Ct 14th Jud. Cir., Rock Island Cnty., Ill., No. 2019 CH 299 |
| *Guthrie v. Service Federal Credit Union* (Overdraft) | Sup. Ct. Rockingham Cnty, N.H., No. 218-2021-CV-00160 |
| *Opelousas General Hospital Authority. v. Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana* (Medical Insurance) | 27th Jud. D. Ct. La., No. 16-C-3647 |
| *Churchill et al. v. Bangor Savings Bank* (Overdraft) | Maine Bus. & Consumer Ct., No. BCD-CIV-2021-00027 |
| *Brower v. Northwest Community Credit Union* (Bank Fees) | Ore. Dist. Ct. Multnomah Cnty., No. 20CV38608 |
| *Kent et al. v. Women's Health USA, Inc. et al.* (IVF Antitrust Pricing) | Sup. Ct. Jud. Dist. of Stamford/Norwalk, Conn., No. FST-CV-21-6054676-S |



APPENDIX 2 – NOTICE PLAN

| | |
|---|---|
| *In re: U.S. Office of Personnel Management Data Security Breach Litigation* | D.D.C., No. MDL No. 2664, 15-cv-01394 |
| *In re: fairlife Milk Products Marketing and Sales Practices Litigation* (False Labeling & Marketing) | N.D. Ill., No. MDL No. 2909, No. 1:19-cv-03924 |
| *In Re: Zoom Video Communications, Inc. Privacy Litigation* | N.D. Cal., No. 3:20-cv-02155 |
| *Browning et al. v. Anheuser-Busch, LLC* (False Advertising) | W.D. Mo., No. 20-cv-00889 |
| *Callen v. Daimler AG and Mercedes-Benz USA, LLC* (Interior Trim) | N.D. Ga., No. 1:19-cv-01411 |
| *In re: Disposable Contact Lens Antitrust Litigation* (Alcon Laboratories, Inc. and Johnson & Johnson Vision Care, Inc.) (Unilateral Pricing Policies) | M.D. Fla., No. 3:15-md-02626 |
| *Ford et al. v. [24]7.ai, Inc.* (Data Breach - Best Buy Data Incident) | N.D. Cal., MDL No. 2863, No. 5:18-cv-02770 |
| *In re Takata Airbag Class Action Settlement* - Australia Settlement *Louise Haselhurst v. Toyota Motor Corporation Australia Limited* *Kimley Whisson v. Subaru (Aust) Pty Limited* *Akuratiya Kularathne v. Honda Australia Pty Limited* *Owen Brewster v. BMW Australia Ltd* *Jaydan Bond v. Nissan Motor Co (Australia) Pty Limited* *Camilla Coates v. Mazda Australia Pty Limited* | Australia; NSWSC, No. 2017/00340824 No. 2017/00353017 No. 2017/00378526 No. 2018/00009555 No. 2018/00009565 No. 2018/00042244 |
| *In Re Pork Antitrust Litigation (Commercial and Institutional Indirect Purchaser Actions - CIIPPs)* (Smithfield Foods, Inc.) | D. Minn., No. 0:18-cv-01776 |
| *Jackson v. UKG Inc., f/k/a The Ultimate Software Group, Inc.* (Biometrics) | Cir. Ct. of McLean Cnty., Ill., No. 2020L31 |
| *In Re: Capital One Consumer Data Security Breach Litigation* | E.D. Va., MDL No. 2915, No. 1:19-md-02915 |
| *Aseltine v. Chipotle Mexican Grill, Inc.* (Food Ordering Fees) | Cir. Ct. Cal. Alameda Cnty., No. RG21088118 |
| *In re Morgan Stanley Data Security Litigation* | S.D.N.Y., No. 1:20-cv-05914 |
| *DiFlauro et al. v. Bank of America, N.A.* (Mortgage Bank Fees) | C.D. Cal., No. 2:20-cv-05692 |
| *In re: California Pizza Kitchen Data Breach Litigation* | C.D. Cal., No. 8:21-cv-01928 |
| *Breda v. Cellco Partnership d/b/a Verizon Wireless* (TCPA) | D. Mass., No. 1:16-cv-11512 |
| *Snyder et al. v. The Urology Center of Colorado, P.C.* (Data Breach) | 2nd Dist. Ct, Cnty. of Denver Col., No. 2021CV33707 |
| *Dearing v. Magellan Health Inc. et al.* (Data Breach) | Sup. Ct. Cnty. of Maricopa, Ariz., No. CV2020-013648 |
| *Torretto et al. v. Donnelley Financial Solutions, Inc. and Mediant Communications Inc.* (Data Breach) | S.D.N.Y., No. 1:20-cv-02667 |
| *In Re: Takata Airbag Products Liability Litigation* (Volkswagen) | S.D. Fla., MDL No. 2599, No. 1:15-md-02599 |
| *Beiswinger v. West Shore Home, LLC* (TCPA) | M.D. Fla., No. 3:20-cv-01286 |
| *Arthur et al. v. McDonald's USA, LLC et al.; Lark et al. v. McDonald's USA, LLC et al.* (Biometrics) | Cir. Ct. St. Clair Cnty., Ill., Nos. 20-L-0891; 1-L-559 |
| *Kostka et al. v. Dickey's Barbecue Restaurants, Inc. et al.* (Data Breach) | N.D. Tex., No. 3:20-cv-03424 |
| *Scherr v. Rodan & Fields, LLC; Gorzo et al. v. Rodan & Fields, LLC* (Lash Boost Mascara Product) | Sup. Ct. of Cal., Cnty. San Bernardino, No. CJC-18-004981; Sup. Ct. of Cal., Cnty. of San Francisco, Nos. CIVDS 1723435 and CGC-18-565628 |
| *Cochran et al. v. The Kroger Co. et al.* (Data Breach) | N.D. Cal., No. 5:21-cv-01887 |



DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

C-74

APPENDIX 3 NOTICE PLAN

| Fernandez v. Rushmore Loan Management Services LLC (Mortgage Loan Fees) | C.D. Cal., No. 8:21-cv-00621 |
|---|---|
| Abramson v. Safe Streets USA LLC (TCPA) | E.D.N.C., No. 5:19-cv-00394 |
| Stoll et al. v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute (Data Breach) | M.D. Fla., No. 8:20-cv-01798 |
| Mayo v. Affinity Plus Federal Credit Union (Overdraft) | 4th Jud. Dist. Ct. Minn., No. 27-cv-11786 |
| Johnson v. Moss Bros. Auto Group, Inc. et al. (TCPA) | C.D. Cal., No. 5:19-cv-02456 |
| Muransky et al. v. The Cheesecake Factory, Inc. et al. (FACTA) | Sup. Ct. Cal. Cnty. of Los Angeles, No. 19 stcv43875 |
| Haney v. Genworth Life Ins. Co. (Long Term Care Insurance) | E.D. Va., No. 3:22-cv-00055 |
| Halcom v. Genworth Life Ins. Co. (Long Term Care Insurance) | E.D. Va., No. 3:21-cv-00019 |
| Mercado et al. v. Verde Energy USA, Inc. (Variable Rate Energy) | N.D. Ill., No. 1:18-cv-02068 |
| Fallis et al. v. Gate City Bank (Overdraft) | East Cent. Dist. Ct. Cass Cnty. N.D., No. 09-2019-cv-04007 |
| Sanchez et al. v. California Public Employees' Retirement System et al. (Long Term Care Insurance) | Sup. Ct. Cal. Cnty. of Los Angeles, No. BC 517444 |
| Hameed-Bolden et al. v. Forever 21 Retail, Inc. et al. (Data Breach for Payment Cards) | C.D. Cal., No. 2:18-cv-03019 |
| Wallace v. Wells Fargo (Overdraft Fees on Uber and Lyft One-Time Transactions) | Sup. Ct. Cal. Cnty. of Santa Clara, No. 17-cv-317775 |
| In re Turkey Antitrust Litigations (Commercial and Institutional Indirect Purchaser Plaintiffs' Action – CIIPPs) Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli et al. v. Agri Stats, Inc. | N.D. Ill., No. 1:20-cv-02295 |
| Coleman v. Alaska USA Federal Credit Union (Retry Bank Fees) | D. Alaska, No. 3:19-cv-00229 |
| Fiore et al. v. Ingenious Designs, L.L.C. and HSN, Inc. (My Little Steamer) | E.D.N.Y., No. 1:18-cv-07124 |
| In Re Pork Antitrust Litigation (Commercial and Institutional Indirect Purchaser Actions - CIIPPs) (JBS USA Food Company, JBS USA Food Company Holdings) | D. Minn., No. 0:18-cv-01776 |
| Lozano v. CodeMetro Inc. (Data Breach) | Sup. Ct. Cal. Cnty. of San Diego, No. 37-2020-00022701 |
| Yamagata et al. v. Reckitt Benckiser LLC (Schiff Move Free® Advanced Glucosamine Supplements) | N.D. Cal., No. 3:17-cv-03529 |
| Cin-Q Automobiles, Inc. et al. v. Buccaneers Limited Partnership (TCPA) | M.D. Fla., No. 8:13-cv-01592 |
| Thompson et al. v. Community Bank, N.A. (Overdraft) | N.D.N.Y., No. 8:19-cv-00919 |
| Bleachtech L.L.C. v. United Parcel Service Co. (Declared Value Shipping Fees) | E.D. Mich., No. 2:14-cv-12719 |
| Silveira v. M&T Bank (Mortgage Fees) | C.D. Cal., No. 2:19-cv-06958 |
| In re Toll Roads Litigation; Borsuk et al. v. Foothill/Eastern Transportation Corridor Agency et al. (OCTA Settlement - Collection & Sharing of Personally Identifiable Information) | C.D. Cal., No. 8:16-cv-00262 |
| In Re: Toll Roads Litigation (3M/TCA Settlement - Collection & Sharing of Personally Identifiable Information) | C.D. Cal., No. 8:16-cv-00262 |
| Pearlstone v. Wal-Mart Stores, Inc. (Sales Tax) | C.D. Cal., No. 4:17-cv-02856 |
| Zanca et al. v. Epic Games, Inc. (Fortnite or Rocket League Video Games) | Sup. Ct. Wake Cnty. N.C., No. 21-CVS-534 |

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN
C-75

APPENDIX 2 NOTICE PLAN

| *In re: Flint Water Cases* | E.D. Mich., No. 5:16-cv-10444 |
|---|---|
| *Kukorinis v. Walmart, Inc.* (Weighted Goods Pricing) | S.D. Fla., No. 1:19-cv-20592 |
| *Grace v. Apple, Inc.* (Apple iPhone 4 and iPhone 4S Devices) | N.D. Cal., No. 17-cv-00551 |
| *Alvarez v. Sirius XM Radio Inc.* | C.D. Cal., No. 2:18-cv-08605 |
| *In re: Pre-Filled Propane Tank Antitrust Litigation* | W.D. Mo., No. MDL No. 2567, No. 14-cv-02567 |
| *In re: Disposable Contact Lens Antitrust Litigation* (ABB Concise Optical Group, LLC) (Unilateral Pricing Policies) | M.D. Fla., No. 3:15-md-02626 |
| *Morris v. Provident Credit Union* (Overdraft) | Sup. Ct. Cal. Cnty. of San Fran., No. CGC-19-581616 |
| *Pennington v. Tetra Tech, Inc. et al.* (Property) | N.D. Cal., No. 3:18-cv-05330 |
| *Maldonado et al. v. Apple Inc. et al.* (Apple Care iPhone) | N.D. Cal., No. 3:16-cv-04067 |
| *UFCW & Employers Benefit Trust v. Sutter Health et al.* (Self-Funded Payors) | Sup. Ct. of Cal., Cnty. of San Fran., No. CGC 14-538451 Consolidated with CGC-18-565398 |
| *Fitzhenry v. Independent Home Products, LLC* (TCPA) | D.S.C., No. 2:19-cv-02993 |
| *In re: Hyundai and Kia Engine Litigation and Flaherty v. Hyundai Motor Company, Inc. et al.* | C.D. Cal., Nos. 8:17-cv-00838 & 18-cv-02223 |
| *Sager et al. v. Volkswagen Group of America, Inc. et al.* | D.N.J., No. 18-cv-13556 |
| *Bautista v. Valero Marketing and Supply Company* | N.D. Cal., No. 3:15-cv-05557 |
| *Richards et al. v. Chime Financial, Inc.* (Service Disruption) | N.D. Cal., No. 4:19-cv-06864 |
| *In re: Health Insurance Innovations Securities Litigation* | M.D. Fla., No. 8:17-cv-02186 |
| *Fox et al. v. Iowa Health System d.b.a. UnityPoint Health* (Data Breach) | W.D. Wis., No. 18-cv-00327 |
| *Smith v. Costa Del Mar, Inc.* (Sunglasses Warranty) | M.D. Fla., No. 3:18-cv-01011 |
| *Al's Discount Plumbing et al. v. Viega, LLC* (Building Products) | M.D. Pa., No. 19-cv-00159 |
| *Rose v. The Travelers Home and Marine Insurance Company et al.* | E.D. Pa., No. 19-cv-00977 |
| *Eastwood Construction LLC et al. v. City of Monroe The Estate of Donald Alan Plyler Sr. et al. v. City of Monroe* | Sup. Ct. N.C., Nos. 18-CVS-2692 & 19-CVS-1825 |
| *Garvin v. San Diego Unified Port District* | Sup. Ct. Cal., No. 37-2020-00015064 |
| *Consumer Financial Protection Bureau v. Siringoringo Law Firm* | C.D. Cal., No. 8:14-cv-01155 |
| *Robinson v. Nationstar Mortgage LLC* | D. Md., No. 8:14-cv-03667 |
| *Drazen v. GoDaddy.com, LLC* and *Bennett v. GoDaddy.com, LLC* (TCPA) | S.D. Ala., No. 1:19-cv-00563 |
| *In re: Libor-Based Financial Instruments Antitrust Litigation* | S.D.N.Y., MDL No. 2262, No. 1:11-md-2262 |
| *Izor v. Abacus Data Systems, Inc.* (TCPA) | N.D. Cal., No. 19-cv-01057 |
| *Cook et al. v. South Carolina Public Service Authority et al.* | Ct. of Com. Pleas. 13th Jud. Cir. S.C., No. 2019-CP-23-6675 |

APPENDIX NOTICE PLAN

| | |
|---|---|
| **K.B., by and through her natural parent, Jennifer Qassis, and Lillian Knox-Bender v. Methodist Healthcare - Memphis Hospitals** | 30th Jud. Dist. Tenn., No. CH-13-04871-1 |
| **In re: Roman Catholic Diocese of Harrisburg** | Bank. Ct. M.D. Pa., No. 1:20-bk-00599 |
| **Denier et al. v. Taconic Biosciences, Inc.** | Sup Ct. N.Y., No. 00255851 |
| **Robinson v. First Hawaiian Bank (Overdraft)** | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| **Burch v. Whirlpool Corporation** | W.D. Mich., No. 1:17-cv-00018 |
| **Armon et al. v. Washington State University (Data Breach)** | Sup. Ct. Wash., No. 17-2-23244-1 consolidated with No. 17-2-25052-0 |
| **Wilson et al. v. Volkswagen Group of America, Inc. et al.** | S.D. Fla., No. 17-cv-23033 |
| **Prather v. Wells Fargo Bank, N.A. (TCPA)** | N.D. Ill., No. 1:17-cv-00481 |
| **In re: Wells Fargo Collateral Protection Insurance Litigation** | C.D. Cal., No. 8:17-ml-02797 |
| **Ciuffitelli et al. v. Deloitte & Touche LLP et al.** | D. Ore., No. 3:16-cv-00580 |
| **Coffeng et al. v. Volkswagen Group of America, Inc.** | N.D. Cal., No. 17-cv-01825 |
| **Audet et al. v. Garza et al.** | D. Conn., No. 3:16-cv-00940 |
| **In re: Disposable Contact Lens Antitrust Litigation (CooperVision, Inc.) (Unilateral Pricing Policies)** | M.D. Fla., No. 3:15-md-02626 |
| **Hyder et al. v. Consumers County Mutual Insurance Company** | D. Ct. of Travis Cnty. Tex., No. D-1-GN-16-000596 |
| **Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens** | E.D. Tex., No. 4:19-cv-00248 |
| **In re: TD Bank, N.A. Debit Card Overdraft Fee Litigation** | D.S.C., MDL No. 2613, No. 6:15-MN-02613 |
| **Liggio v. Apple Federal Credit Union** | E.D. Va., No. 1:18-cv-01059 |
| **Garcia v. Target Corporation (TCPA)** | D. Minn., No. 16-cv-02574 |
| **Albrecht v. Oasis Power, LLC d/b/a Oasis Energy** | N.D. Ill., No. 1:18-cv-01061 |
| **McKinney-Drobnis et al. v. Massage Envy Franchising** | N.D. Cal., No. 3:16-cv-06450 |
| **In re: Optical Disk Drive Products Antitrust Litigation** | N.D. Cal., MDL No. 2143, No. 3:10-md-02143 |
| **Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens** | E.D. Tex., No. 4:17-cv-00001 |
| **In re: Kaiser Gypsum Company, Inc. et al. (Asbestos)** | Bankr. W.D. N.C., No. 16-31602 |
| **Kuss v. American HomePatient, Inc. et al. (Data Breach)** | M.D. Fla., No. 8:18-cv-02348 |
| **Lusnak v. Bank of America, N.A.** | C.D. Cal., No. 14-cv-01855 |
| **In re: Premera Blue Cross Customer Data Security Breach Litigation** | D. Ore., MDL No. 2633, No. 3:15-md-02633 |
| **Elder v. Hilton Worldwide Holdings, Inc. (Hotel Stay Promotion)** | N.D. Cal., No. 16-cv-00278 |
| **Grayson et al. v. General Electric Company (Microwaves)** | D. Conn., No. 3:13-cv-01799 |

APPENDIX C: NOTICE PLAN

| | |
|---|---|
| *Harris et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup. Ct. Cal., No. BC 579498 |
| *Lashambae v. Capital One Bank, N.A.* (Overdraft) | E.D.N.Y., No. 1:17-cv-06406 |
| *Trujillo et al. v. Ametek, Inc. et al.* (Toxic Leak) | S.D. Cal., No. 3:15-cv-01394 |
| *Cox et al. v. Ametek, Inc. et al.* (Toxic Leak) | S.D. Cal., No. 3:17-cv-00597 |
| *Pirozzi et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-cv-00807 |
| *Lehman v. Transbay Joint Powers Authority et al.* (Millennium Tower) | Sup. Ct. Cal., No. GCG-16-553758 |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., MDL No. 2744 & No. 16-md-02744 |
| *Dasher v. RBC Bank (USA) predecessor in interest to PNC Bank, N.A., as part of In re: Checking Account Overdraft* | S.D. Fla., No. 1:10-cv-22190, as part of MDL No. 2036 |
| *Behfarin v. Pruco Life Insurance Company et al.* | C.D. Cal., No. 17-cv-05290 |
| *In re: Renovate America Finance Cases* (Tax Assessment Financing) | Sup. Ct., Cal., Cnty. of Riverside, No. RICJCCP4940 |
| *Nelson v. Roadrunner Transportation Systems, Inc.* (Data Breach) | N.D. Ill., No. 1:18-cv-07400 |
| *Skochin et al. v. Genworth Life Insurance Company et al.* | E.D. Va., No. 3:19-cv-00049 |
| *Walters et al. v. Target Corp.* (Overdraft) | S.D. Cal., No. 3:16-cv-01678 |
| *Jackson et al. v. Viking Group, Inc. et al.* | D. Md., No. 8:18-cv-02356 |
| *Waldrup v. Countrywide Financial Corporation et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Burrow et al. v. Forjas Taurus S.A. et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Super. Ct., No. 2762-16cp |
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Pa., No. 2:09-md-02034 |
| *Lightsey et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA et al.* | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |
| *Rabin v. HP Canada Co. et al.* | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| *Di Filippo v. The Bank of Nova Scotia et al.* (Gold Market Instrument) | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| *McIntosh v. Takata Corporation et al.; Vitoratos et al. v. Takata Corporation et al.; and Hall v. Takata Corporation et al.* | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct. of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| *Adlouni v. UCLA Health Systems Auxiliary et al.* | Sup. Ct. Cal., No. BC589243 |
| *Lloyd et al. v. Navy Federal Credit Union* | S.D. Cal., No. 17-cv-01280 |
| *Luib v. Henkel Consumer Goods Inc.* | E.D.N.Y., No. 1:17-cv-03021 |
| *Zaklit et al. v. Nationstar Mortgage LLC et al.* (TCPA) | C.D. Cal., No. 5:15-cv-02190 |
| *In re: HP Printer Firmware Update Litigation* | N.D. Cal., No. 5:16-cv-05820 |
| *In re: Dealer Management Systems Antitrust Litigation* | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX 5 NOTICE PLAN

| | |
|---|---|
| **Mosser v. TD Bank, N.A. and Mazzadra et al. v. TD Bank, N.A.,** as part of *In re: Checking Account Overdraft* | E.D. Pa., No. 2:10-cv-00731, S.D. Fla., No. 10-cv-21386 and S.D. Fla., No. 1:10-cv-21870, as part of S.D. Fla., MDL No. 2036 |
| **Naiman v. Total Merchant Services, Inc. et al. (TCPA)** | N.D. Cal., No. 4:17-cv-03806 |
| **In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation** | Sup. Ct. of Maricopa Ariz., No. CV2016-013446 |
| **Parsons v. Kimpton Hotel & Restaurant Group, LLC (Data Breach)** | N.D. Cal., No. 3:16-cv-05387 |
| **Stahl v. Bank of the West** | Sup. Ct. Cal., No. BC673397 |
| **37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)** | S.D.N.Y., No. 15-cv-09924 |
| **Tashica Fulton-Green et al. v. Accolade, Inc.** | E.D. Pa., No. 2:18-cv-00274 |
| **In re: Community Health Systems, Inc. Customer Data Security Breach Litigation** | N.D. Ala., MDL No. 2595, No. 2:15-cv-00222 |
| **Al's Pals Pet Card, LLC et al. v. Woodforest National Bank, N.A. et al.** | S.D. Tex., No. 4:17-cv-03852 |
| **Cowen v. Lenny & Larry's Inc.** | N.D. Ill., No. 1:17-cv-01530 |
| **Martin v. Trott (MI - Foreclosure)** | E.D. Mich., No. 2:15-cv-12838 |
| **Knapper v. Cox Communications, Inc. (TCPA)** | D. Ariz., No. 2:17-cv-00913 |
| **Dipuglia v. US Coachways, Inc. (TCPA)** | S.D. Fla., No. 1:17-cv-23006 |
| **Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN (TCPA)** | N.D. Cal., No. 3:16-cv-05486 |
| **First Impressions Salon, Inc. et al. v. National Milk Producers Federation et al.** | S.D. Ill., No. 3:13-cv-00454 |
| **Raffin v. Medicredit, Inc. et al.** | C.D. Cal., 15-cv-04912 |
| **Gergetz v. Telenav, Inc. (TCPA)** | N.D. Cal., No. 5:16-cv-04261 |
| **Ajose et al. v. Interline Brands Inc. (Plumbing Fixtures)** | M.D. Tenn., No. 3:14-cv-01707 |
| **Underwood v. Kohl's Department Stores, Inc. et al.** | E.D. Pa., No. 2:15-cv-00730 |
| **Surrett et al. v. Western Culinary Institute et al.** | Ore. Cir., Ct. Cnty. of Multnomah, No. 0803-03530 |
| **Vergara et al., v. Uber Technologies, Inc. (TCPA)** | N.D. Ill., No. 1:15-cv-06972 |
| **Watson v. Bank of America Corporation et al.;** **Bancroft-Snell et al. v. Visa Canada Corporation et al.;** **Bakopanos v. Visa Canada Corporation et al.;** **Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank et al.;** **Hello Baby Equipment Inc. v. BofA Canada Bank and others (Visa and Mastercard Canadian Interchange Fees)** | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| **In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru, and Toyota)** | S.D. Fla., MDL No. 2599 |
| **In re: Takata Airbag Products Liability Litigation (OEMs – Honda and Nissan)** | S.D. Fla., MDL No. 2599 |
| **In re: Takata Airbag Products Liability Litigation (OEM – Ford)** | S.D. Fla., MDL No. 2599 |
| **Poseidon Concepts Corp. et al. (Canadian Securities Litigation)** | Ct. of QB of Alberta, No. 1301-04364 |

DECLARATION OF CAMERON R. AZARI, ESQ., ON PROPOSED CLASS NOTICE PLAN

APPENDIX 8: NOTICE PLAN

| | |
|---|---|
| *Callaway v. Mercedes-Benz USA, LLC* (Seat Heaters) | C.D. Cal., No. 8:14-cv-02011 |
| *Hale v. State Farm Mutual Automobile Insurance Company et al.* | S.D. Ill., No. 3:12-cv-00660 |
| *Farrell v. Bank of America, N.A.* (Overdraft) | S.D. Cal., No. 3:16-cv-00492 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 2688, No. 16-md-02688 |
| *Wallace et al. v. Monier Lifetile LLC et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-00940 |
| *Pantelyat et al. v. Bank of America, N.A. et al.* (Overdraft / Uber) | S.D.N.Y., No. 16-cv-08964 |
| *Falco et al. v. Nissan North America, Inc. et al.* (Engine – CA & WA) | C.D. Cal., No. 2:13-cv-00686 |
| *Alaska Electrical Pension Fund et al. v. Bank of America N.A. et al.* (ISDAfix Instruments) | S.D.N.Y., No. 14-cv-07126 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Sup. Ct. Cal., No. RG16813803 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Orlander v. Staples, Inc.* | S.D.N.Y., No. 13-cv-00703 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* (TCPA) | S.D. Fla., No. 1:17-cv-22967 |
| *Gordon et al. v. Amadeus IT Group, S.A. et al.* | S.D.N.Y., No. 1:15-cv-05457 |
| *Alexander M. Rattner v. Tribe App., Inc., and Kenneth Horsley v. Tribe App., Inc.* | S.D. Fla., Nos. 1:17-cv-21344 & 1:14-cv-02311 |
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric et al.* | E.D. Pa., No. 2:14-cv-04464 |
| *Mahoney v. TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Ma et al. v. Harmless Harvest Inc.* (Coconut Water) | E.D.N.Y., No. 2:16-cv-07102 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA")* (Bankruptcy) | D. Puerto Rico, No. 17-cv-04780 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-cv-15-3785 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. Ga., No. 2:16-cv-00132 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct. of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *McKnight et al. v. Uber Technologies, Inc. et al.* | N.D. Cal., No. 14-cv-05615 |
| *Gottlieb v. Citgo Petroleum Corporation* (TCPA) | S.D. Fla., No. 9:16-cv-81911 |
| *Farnham v. Caribou Coffee Company, Inc.* (TCPA) | W.D. Wis., No. 16-cv-00295 |
| *Jacobs et al. v. Huntington Bancshares Inc. et al.* (FirstMerit Overdraft Fees) | Ohio C.P., No. 11CV000090 |
| *Morton v. Greenbank* (Overdraft Fees) | 20th Jud. Dist. Tenn., No. 11-135-IV |



| Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma et al. (Overdraft Fees) | Dist. Ct. Okla., No. CJ-2015-00859 |
| Klug v. Watts Regulator Company (Product Liability) | D. Neb., No. 8:15-cv-00061 |
| Bias v. Wells Fargo & Company et al. (Broker's Price Opinions) | N.D. Cal., No. 4:12-cv-00664 |
| Greater Chautauqua Federal Credit Union v. Kmart Corp. et al. (Data Breach) | N.D. Ill., No. 1:15-cv-02228 |
| Hawkins v. First Tennessee Bank, N.A. et al. (Overdraft Fees) | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement) | N.D. Cal., MDL No. 2672 |
| In re: HSBC Bank USA, N.A. | Sup. Ct. N.Y., No. 650562/11 |
| Glaske v. Independent Bank Corporation (Overdraft Fees) | Cir. Ct. Mich., No. 13-009983 |
| MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| In re: Lithium Ion Batteries Antitrust Litigation | N.D. Cal., MDL No. 2420, No. 4:13-md-02420 |
| Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co. | S.D. Fla., No. 14-cv-23120 |
| Small v. BOKF, N.A. | D. Colo., No. 13-cv-01125 |
| Forgione v. Webster Bank N.A. (Overdraft Fees) | Sup. Ct. Conn., No. X10-UWY-cv-12-6015956-S |
| Swift v. BancorpSouth Bank, as part of In re: Checking Account Overdraft | N.D. Fla., No. 1:10-cv-00090, as part of S.D. Fla, MDL No. 2036 |
| Whitton v. Deffenbaugh Industries, Inc. et al. Gary, LLC v. Deffenbaugh Industries, Inc. et al. | D. Kan., No. 2:12-cv-02247 D. Kan., No. 2:13-cv-02634 |
| In re: Citrus Canker Litigation | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation | D.N.J., MDL No. 2540 |
| In re: Shop-Vac Marketing and Sales Practices Litigation | M.D. Pa., MDL No. 2380 |
| Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc. | 27th Jud. D. Ct. La., No. 12-C-1599 |
| Opelousas General Hospital Authority v. PPO Plus, L.L.C. et al. | 27th Jud. D. Ct. La., No. 13-C-5380 |
| Russell Minoru Ono v. Head Racquet Sports USA | C.D. Cal., No. 2:13-cv-04222 |
| Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc. | 27th Jud. D. Ct. La., No. 13-C-3212 |
| Gattinella v. Michael Kors (USA), Inc. et al. | S.D.N.Y., No. 14-cv-05731 |
| In re: Energy Future Holdings Corp. et al. (Asbestos Claims Bar Notice) | Bankr. D. Del., No. 14-10979 |
| Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc. | Cir. Ct., Lawrence Cnty., Ala., No. 42-cv-2012- 900001.00 |
| Kota of Sarasota, Inc. v. Waste Management Inc. of Florida | 12th Jud. Cir. Ct., Sarasota Cnty., Fla., No. 2011-CA-008020NC |
| Steen v. Capital One, N.A., as part of In re: Checking Account Overdraft | E.D. La., No. 2:10-cv-01505 and 1:10-cv-22058, as part of S.D. Fla., MDL No. 2036 |
| Childs et al. v. Synovus Bank et al., as part of In re: Checking Account Overdraft | S.D. Fla., MDL No. 2036 |



| In re: MI Windows and Doors Inc. Products Liability Litigation (Building Products) | D.S.C., MDL No. 2333 |
|---|---|
| Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank, as part of In re: Checking Account Overdraft | S.D. Fla., MDL No. 2036 |
| Scharfstein v. BP West Coast Products, LLC | Ore. Cir., Cnty. of Multnomah, No. 1112-17046 |
| Adkins et al. v. Nestlé Purina PetCare Company et al. | N.D. Ill., No. 1:12-cv-02871 |
| Smith v. City of New Orleans | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |
| Hawthorne v. Umpqua Bank (Overdraft Fees) | N.D. Cal., No. 11-cv-06700 |
| Gulbankian et al. v. MW Manufacturers, Inc. | D. Mass., No. 1:10-cv-10392 |
| Costello v. NBT Bank (Overdraft Fees) | Sup. Ct. Del Cnty., N.Y., No. 2011-1037 |
| In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant) | E.D.N.Y., MDL 2221, No. 11-md-2221 |
| Wong et al. v. Alacer Corp. (Emergen-C) | Sup. Ct. Cal., No. CGC-12-519221 |
| Mello et al. v. Susquehanna Bank, as part of In re: Checking Account Overdraft | S.D. Fla., MDL No. 2036 |
| In re: Plasma-Derivative Protein Therapies Antitrust Litigation | N.D. Ill., No. 09-cv-07666 |
| Simpson v. Citizens Bank (Overdraft Fees) | E.D. Mich., No. 2:12-cv-10267 |
| George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC et al. v. Bestcomp, Inc. et al. | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| Simmons v. Comerica Bank, N.A., as part of In re: Checking Account Overdraft | S.D. Fla., MDL No. 2036 |
| McGann et al., v. Schnuck Markets, Inc. (Data Breach) | Mo. Cir. Ct., No. 1322-CC00800 |
| Rose v. Bank of America Corporation et al. (TCPA) | N.D. Cal., Nos. 5:11-cv-02390 & 5:12-cv-00400 |
| Johnson v. Community Bank, N.A. et al. (Overdraft Fees) | M.D. Pa., No. 3:12-cv-01405 |
| National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al. | E.D. Ark., No. 4:13-cv-00250 |
| Price v. BP Products North America | N.D. Ill., No. 12-cv-06799 |
| Yarger v. ING Bank | D. Del., No. 11-154-LPS |
| Glube et al. v. Pella Corporation et al. (Building Products) | Ont. Super. Ct., No. CV-11-4322294-00CP |
| Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools) | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 |
| Miner v. Philip Morris Companies, Inc. et al. (Light Cigarettes) | Ark. Cir. Ct., No. 60CV03-4661 |
| Williams v. SIF Consultants of Louisiana, Inc. et al. | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| Opelousas General Hospital Authority v. Qmedtrix Systems, Inc. | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| Evans et al. v. TIN, Inc. et al. (Environmental) | E.D. La., No. 2:11-cv-02067 |
| Casayuran v. PNC Bank, as part of In re: Checking Account Overdraft | S.D. Fla., MDL No. 2036 |



| *Anderson v. Compass Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
|---|---|
| *Eno v. M & I Marshall & Ilsley Bank* as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Blahut v. Harris, N.A.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *In re: Zurn Pex Plumbing Products Liability Litigation* | D. Minn., MDL No. 1958, No. 08-md-1958 |
| *Saltzman v. Pella Corporation* (Building Products) | N.D. Ill., No. 06-cv-04481 |
| *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Mastercard & Visa) | E.D.N.Y., MDL No. 1720, No. 05-md-01720 |
| *RBS v. Citizens Financial Group, Inc.*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-00960 |
| *Vodanovich v. Boh Brothers Construction* (Hurricane Katrina Levee Breaches) | E.D. La., No. 05-cv-04191 |
| *Marolda v. Symantec Corporation* (Software Upgrades) | N.D. Cal., No. 3:08-cv-05701 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Medical Benefits Settlement) | E.D. La., MDL No. 2179 |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (Economic & Property Damages Settlement) | E.D. La., MDL No. 2179 |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Fontaine v. Attorney General of Canada* (Stirland Lake and Cristal Lake Residential Schools) | Ont. Super. Ct., No. 00-cv-192059 CP |
| *Nelson v. Rabobank, N.A.* (Overdraft Fees) | Sup. Ct. Cal., No. RIC 1101391 |
| *Case v. Bank of Oklahoma*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *McKinley v. Great Western Bank*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Lawson v. BancorpSouth* (Overdraft Fees) | W.D. Ark., No. 1:12-cv-01016 |
| *LaCour v. Whitney Bank* (Overdraft Fees) | M.D. Fla., No. 8:11-cv-01896 |
| *Sachar v. Iberiabank Corporation*, as part of *In re: Checking Account Overdraft* | S.D. Fla., MDL No. 2036 |
| *Williams v. S.I.F. Consultants* (CorVel Corporation) | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Gwiazdowski v. County of Chester* (Prisoner Strip Search) | E.D. Pa., No. 2:08-cv-04463 |
| *Williams v. Hammerman & Gainer, Inc.* (SIF Consultants) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Risk Management) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc.* (Hammerman) | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gunderson v. F.A. Richard & Assocs., Inc.* (First Health) | 14th Jud. D. Ct. La., No. 2004-002417 |



APPENDIX 3: NOTICE PLAN

| | |
|---|---|
| *Delandro v. County of Allegheny* (Prisoner Strip Search) | W.D. Pa., No. 2:06-cv-00927 |
| *Mathena v. Webster Bank, N.A.*, as part of *In re: Checking Account Overdraft* | D. Conn, No. 3:10-cv-01448, as part of S.D. Fla., MDL No. 2036 |
| *Vereen v. Lowe's Home Centers* (Defective Drywall) | Ga. Super. Ct., No. SU10-cv-2267B |
| *Trombley v. National City Bank*, as part of *In re: Checking Account Overdraft* | D.D.C., No. 1:10-cv-00232, as part of S.D. Fla., MDL No. 2036 |
| *Schulte v. Fifth Third Bank* (Overdraft Fees) | N.D. Ill., No. 1:09-cv-06655 |
| *Satterfield v. Simon & Schuster, Inc.* (Text Messaging) | N.D. Cal., No. 06-cv-02893 |
| *Coyle v. Hornell Brewing Co.* (Arizona Iced Tea) | D.N.J., No. 08-cv-02797 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., No. 3:07-cv-03018 |
| *In re: Heartland Data Payment System Inc. Customer Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., No. 07-cv-08742 |
| *Gunderson v. F.A. Richard & Assocs., Inc.* (Cambridge) | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Miller v. Basic Research, LLC* (Weight-loss Supplement) | D. Utah, No. 2:07-cv-00871 |
| *In re: Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No. 1998 |
| *Boone v. City of Philadelphia* (Prisoner Strip Search) | E.D. Pa., No. 05-cv-01851 |
| *Little v. Kia Motors America, Inc.* (Braking Systems) | N.J. Super. Ct., No. UNN-L-0800-01 |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| *Steele v. Pergo* (Flooring Products) | D. Ore., No. 07-cv-01493 |
| *Pavlov v. Continental Casualty Co.* (Long Term Care Insurance) | N.D. Ohio, No. 5:07-cv-02580 |
| *Dolen v. ABN AMRO Bank N.V.* (Callable CD's) | Ill. Cir. Ct., Nos. 01-L-454 & 01-L-493 |
| *In re: Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *In re: Katrina Canal Breaches Consolidated Litigation* | E.D. La., No. 05-cv-04182 |

Hilsoft-cv-148



## APPENDIX D – Rule 23(b)(2) Class Notices

### APPENDIX D1 – PUBLICATION NOTICE

*Notice of Class Action Settlement*

*Authorized by the U.S. District Court, Eastern District of New York*

## — Notice of Class Action Settlement —

*Si desea leer este aviso en español, llámenos o visite nuestro sitio web.*

**TO:** Merchants who accepted Visa or Mastercard at any time since December 18, 2020.

This notice is authorized by the Court to inform you about an agreement to settle a class action lawsuit. The lawsuit claims that Visa and Mastercard, separately, and together with certain banks, violated antitrust laws and caused merchants to pay excessive fees for accepting Visa and Mastercard credit and debit cards, including by adopting interchange rules and rates, and other network rules, which the lawsuit claims constituted unlawful price fixing, unreasonable restraints of trade, and monopolization.

The defendants say they did nothing wrong. They maintain that their business practices are legal, justified, the result of independent competition, and have benefitted both merchants and consumers. The Court has not decided who is right because the parties agreed to a settlement, which was preliminarily approved by the Court on MM DD, 202Y.

### A.    What Merchants will get from the Settlement

During the lawsuit, the Court previously certified an Equitable Relief Class under Federal Rule of Civil Procedure 23(b)(2) and has now preliminarily approved a settlement of the Class claims (the Rule 23(b)(2) Class Settlement). Under the Settlement, Visa and Mastercard have agreed to substantive changes to the Visa and Mastercard rules applicable to merchants who accept their cards as a form of payment.

The Class includes all persons, businesses, and entities that accept any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time during the period between December 18, 2020 and the date of entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment. The Court has set MM DD, 202Y as the date for a Final Approval and Fairness Hearing in connection with the Settlement, after members of the Class have had the opportunity to evaluate the Settlement and exercise their rights, as set forth in the Notice. Further information regarding the Settlement and the final hearing will be posted on [Insert B2 Class Settlement Website Address.

Under the Settlement, Mastercard and Visa will modify certain rules to preserve, establish, or expand the circumstances in which merchants can, among other things, do the following:

- Surcharge customers a fee for the use of any Visa- or Mastercard-Branded Credit Cards, including based on the type of card used (e.g., a different surcharge for rewards and non-rewards cards).
- Offer discounts to customers who do not pay with Visa- or Mastercard-Branded Credit Cards, or based on the financial institution that issued the Visa- or Mastercard-Branded Credit Card.
- Decline acceptance of Visa- or Mastercard-Branded Cards at all outlets operating under the same trade name or banner, even if that merchant accepts those same cards at outlets operating under a different trade name or banner, and to engage in Pilot Programs whereby they accept Visa- or Mastercard-Branded Cards at some but not all outlets operating under the same trade name or banner for a limited duration.

- Accept some digital wallets at brick-and-mortar locations but decline others, and enable some digital wallets for on-line transactions but not enable others, and to "steer" among the cards within a digital wallet under the same rules that govern steering among traditional cards.
- Receive the benefit of credit interchange rate reductions: Visa and Mastercard will reduce published credit card interchange rates for U.S. merchants.
- Receive the benefit of credit interchange rate caps: The Settlement caps credit card interchange rates, such that neither Visa nor Mastercard will increase any of its published credit card interchange rates above the rates effective as of December 31, 2023, and will reduce its network-wide average credit card interchange rate to or below the specified level.
- Form merchant Buying Groups that meet certain criteria to negotiate with Visa and Mastercard.
- Receive access to a Merchant Education Program established and administered under the Settlement to help merchants understand and maximize the benefits of the rule changes.

### B.   Monetary Aspects of the Rule 23(b)(2) Class Settlement

There is no monetary payment to members of the Class in this Settlement.  This Rule 23(b)*(2)* Settlement concerns only the Equitable Relief Claims set forth in the lawsuit.  Claims for monetary damages arising out of the defendants' alleged antitrust violations are the subject of a separate settlement for the Rule 23(b)*(3)* Class.  For information concerning the separate Rule 23(b)(3) Cash Settlement Class, please visit the website: *www.PaymentCardSettlement.com*.

The Settlement does provide for Visa and Mastercard to make certain payments into the Rule 23(b)(2) Class Settlement Escrow Account, which money will be used to pay:

- The cost of settlement administration and notice, as approved by the Court,
- The cost of Merchant Education Expenses, as approved by the Court,
- The cost of an Independent Auditor who will ensure that Visa and Mastercard comply with the credit card interchange-rate commitments, and
- Attorneys' fees and expenses, including any named Class Representative Service Awards, as approved by the Court.

The money in these funds will be distributed only if the Court grants final approval of the Settlement, and the money for attorneys' fees and expenses will be distributed only if the Settlement has become final and all appeals are exhausted.

<u>Attorneys' fees and expenses and service awards to the class representatives</u>:  For work done through final approval of the settlement by the district court, Class Counsel will ask the Court for attorneys' fees in an amount of [_____] to compensate all of the lawyers and their law firms that have worked on the Rule 23(b)(2) Class case, and for work they will be required to do in the future.  Class Counsel will also request reimbursement of their expenses, not to exceed [_____], and up to [_____] per named Class Representative as service awards for their efforts on behalf of the Class.  The Settlement Agreement requires Visa and Mastercard to pay these fees and expenses; members of the Class will not be required to pay any amount toward these fees and expenses.

### C.   Legal rights and options

Merchants who are included in this lawsuit have the legal right to **Object to the Settlement.**  The deadline to object is: MM DD, 202Y.  To learn how to object, see: [Insert B2 Class Settlement Website Address]

or call [_____].

*Note:* **You cannot elect to be excluded from the Rule 23(b)(2) Class Settlement**

For more information about these rights and options, visit: [Insert B2 Class Settlement Website Address .

### D.     If the Court approves the final settlement

If the Court grants final approval to the Settlement, members of the Rule 23(b)(2) Class will be bound by the terms of the Settlement and will release all claims against all released parties listed in the Settlement Agreement.  The Settlement will resolve and release any claims by payment card acceptors against Visa, Mastercard or other defendants that were or could have been alleged in the lawsuit, including any claims based on interchange or other fees, no-surcharge rules, no-discounting rules, honor-all-cards rules, and any other rules.   The Settlement will also resolve any payment card acceptor claims based upon the future effect of any Visa or Mastercard rules not modified by the Settlement, as of MM DD, 202Y, the modified rules provided for in the Settlement, or any other rules substantially similar to those rules.   The release will not bar claims involving certain specified standard commercial disputes arising in the ordinary course of business.

For more information on the release, see the Settlement Agreement at: [Insert B2 Class Settlement Website Address].

### E.     The Court hearing about this Settlement

On MM DD, 202Y, the Court will hold a hearing to decide whether to approve the proposed Settlement, Class Counsels' requests for attorneys' fees and expenses, and service awards for the named Class Representatives.  The hearing will take place at:

> United States District Court for the Eastern
> District of New York Courtroom # XX
> 225 Cadman Plaza
> Brooklyn, NY 11201

You do not have to attend the court hearing or hire an attorney, though you may do either at your own expense.  The Court appointed the law firms of Hilliard Shadowen LLP; Grant & Eisenhofer PA; Freed Kanner London & Millen LLC; and Nussbaum Law Group, P.C. to represent the Class ("Class Counsel").

### F.     Questions?

For more information about this case *(In re Payment Card Interchange Fee and Merchant Discount  Antitrust Litigation,* MDL 1720), you may:

  Call toll-free: _____

  Visit: [Insert B2 Class Settlement Website Address].
  Write to the Class Administrator:_____
  or Email: _____

## APPENDIX D2 – WEBSITE NOTICE

### NOTICE OF CLASS ACTION SETTLEMENT

### AUTHORIZED BY THE U.S. DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

# An Equitable Relief settlement will provide new benefits to merchants that accepted Visa or Mastercard at any time since December 18, 2020.

*A federal court directed this Notice. This is not a solicitation from a lawyer.*

- The Court has preliminarily approved a proposed settlement of the equitable relief claims in a class action lawsuit called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05 MDL 1720 (MKB)(JAM). The lawsuit is about claims that merchants paid excessive fees to accept Visa and Mastercard cards because Visa and Mastercard, individually, and together with their respective member banks, violated the antitrust laws.

- During the lawsuit, the Court previously certified a Rule 23(b)(2) Equitable Relief Class (the Rule 23(b)(2) Class) and has now preliminarily approved a settlement of the Class claims (the Rule 23(b)(2) Class Settlement). A separate settlement, approved by the Court in 2019, addressed claims for monetary damages (the "Cash Settlement Class"). You may visit the website *www.PaymentCardSettlement.com* for more information concerning the Cash Settlement Class.

- The Rule 23(b)(2) Class Settlement will require Visa and Mastercard to change certain rules for merchants who accept their cards, including changes that will preserve, establish, or expand the circumstances in which merchants may do the following:

  - Surcharge customers a fee for the use of any Visa- or Mastercard-Branded Credit Cards, including based on the type of card used (e.g., a different surcharge for rewards and non-rewards cards).
  - Offer discounts to customers who do not pay with Visa- or Mastercard-Branded Credit Cards, or based on the financial institution that issued the Visa- or Mastercard-Branded Credit Card.
  - Decline acceptance of Visa- or Mastercard-Branded Cards at all outlets that operate under the same trade name or banner, even if that merchant accepts those same cards at outlets that operate under a different trade name or banner, and to engage in Pilot Programs whereby they accept Visa- or Mastercard-Branded Credit Cards at some but not all outlets operating under the same trade name or banner for a limited duration.
  - Accept some digital wallets at brick-and-mortar locations but decline others, and enable some digital wallets for on-line transactions but not enable others, and to "steer" among the cards within a digital wallet under the same rules that govern steering among traditional cards.
  - Receive the benefit of credit interchange rate reductions: Visa and Mastercard will reduce published credit card interchange rates for U.S. merchants.
  - Receive the benefit of credit interchange rate caps: The Settlement Agreement caps credit card interchange rates, such that neither Visa nor Mastercard will increase any of its published credit card interchange rates above the rates effective as of December 31, 2023, and will reduce its network-wide average credit card interchange rate to or below the specified level.

QUESTIONS? CALL 1-800-000-0000 OR VISIT [B2 Class Settlement Website Address]

SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

- • Form Buying Groups that meet certain criteria to negotiate with Visa and Mastercard.
- • Receive access to a Merchant Education Program established and administered under the Settlement Agreement to help understand and maximize the benefits of the rule changes.

The rule changes are explained in greater detail below and in the Rule 23(b)(2) Class Settlement Agreement.

- • This Notice has important information for merchants that accept Visa or Mastercard now or that accepted Visa and Mastercard at any time since December 18, 2020.  It explains the Settlement in the class action lawsuit.  It also explains your rights and options in this case.

For the full terms of the Settlement, you should look at the Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and Defendants, and its Appendices ("Settlement Agreement"), which are available at [Insert B2 Class Settlement Website Address or by calling _____.   In the event of any conflict between the terms of this Notice and the Settlement Agreement, the terms of the Settlement Agreement shall control.

### Legal Rights and Options

**Merchants in the Rule 23(b)(2) Class:**

● You automatically benefit from the Visa and Mastercard rule changes described below.  You do not have to file any forms.

● You cannot exclude yourself from the Rule 23(b)(2) Class Settlement.

● You may object to any part of the Settlement.

The Court has given its preliminary approval to this Settlement.   The Court has not yet given its final approval.

**Read this Notice to learn more about the case**.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ............................................................................................................... PAGE

    1. Why should I review this Notice?
    2. What is this lawsuit about?
    3. What is an interchange fee?
    4. Why is this a class action?
    5. Why is there a settlement?
    6. Am I part of this Settlement?

SETTLEMENT BENEFITS............................................................................................................ PAGE

    7. Will the Settlement provide money to me?
    8. What do the members of the Rule 23(b)(2) Class get?
    9. Can I exclude myself from the Rule 23(b)(2) Class Settlement?

HOW TO DISAGREE WITH THE SETTLEMENT ...................................................................... PAGE

    10. What if I disagree with the Settlement?
    11. Is objecting the same as being excluded?

THE LAWYERS REPRESENTING YOU ..................................................................................... PAGE

    12. Who are the lawyers that represent the Rule 23(b)(2) Class?
    13. How much will the lawyers and named Class Representatives be paid?
    14. How do I disagree with the requested attorneys' fees, expenses or awards to the named Class Representatives?

THE COURT'S FAIRNESS HEARING ........................................................................................ PAGE

    15. When and where will the Court decide whether to approve the Settlement?
    16. Do I have to come to the hearing?
    17. What if I want to speak at the hearing?

IF YOU DO NOTHING................................................................................................................. PAGE

    18. What happens if I do nothing?

GETTING MORE INFORMATION .............................................................................................. PAGE

    19. How do I get more information?

THE FULL TEXT OF THE RELEASE.......................................................................................... PAGE

    20. What is the full text of the Release for the Rule 23(b)(2) Class Settlement?

## BASIC INFORMATION

| 1.   Why should I review this Notice? |
| --- |

This Notice tells you about your rights and options in a class action lawsuit in the U.S. District Court for the Eastern District of New York.    Judge Margo K. Brodie and Magistrate Judge Joseph A. Marutollo are overseeing this class action, which is called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720(MKB)(JAM).  This Notice also explains the lawsuit, the proposed Settlement, the benefits available, and how to object to the Settlement.

The companies or entities that started this case are called the "Plaintiffs."  The companies they are suing are the "Defendants."

This case has been brought on behalf of merchants.  The specific merchant Plaintiffs that filed the case are the named Class Representatives and the Court has authorized them to act on behalf of all merchants in the class described below in connection with the lawsuit and the proposed Settlement.  The named Class Representatives are:

> Boss Dental Care; Runcentral, LLC; CMP Consulting Serv., Inc.; Generic Depot 3, Inc. (doing business as Prescription Depot); and PureOne, LLC (doing business as Salon Pure).

The companies that the Plaintiffs have been suing are the "Defendants."  The Defendants are:

- "Visa Defendants":  Visa, Inc., Visa U.S.A. Inc. and Visa International (also known as Visa International Service Association);

- "Mastercard Defendants":  Mastercard International Incorporated and Mastercard Incorporated; and

- "Bank Defendants":  Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; Barclays Bank plc; Barclays Bank Delaware (formerly known as Juniper Bank); Barclays Financial Corp. (formerly known as Juniper Financial Corporation); Capital One Bank (USA), N.A.; Capital One, N.A. (as successor to Capital One F.S.B.); Capital One Financial Corporation; JPMorgan Chase Bank, N.A. (and as successor to Chase Bank USA, N.A. (and as successor to Chase Manhattan Bank USA, N.A.) and Washington Mutual Bank); Paymentech, LLC (as successor to Chase Paymentech Solutions, LLC); JPMorgan Chase & Co. (and as successor to Bank One Corporation and Bank One Delaware, N.A.); Citibank, N.A. (and as successor to Citibank (South Dakota), N.A.); Citibank, N.A.; Citicorp LLC (as successor to Citicorp); and Wells Fargo & Company (and as successor to Wachovia Bank N.A.).

| 2.   What is this lawsuit about? |
| --- |

- This lawsuit is principally about Visa's and Mastercard's interchange fees and their rules for merchants that have accepted their cards at any time since December 18, 2020.

The Plaintiffs claim that:

- Visa and its respective member banks, including the Bank Defendants, violated the law by setting artificially high interchange fees.

- Mastercard and its respective member banks, including the Bank Defendants, violated the law by setting artificially high interchange fees.

- Visa and its respective member banks, including the Bank Defendants, violated the law because they imposed and enforced rules that limited merchants from steering their customers to other payment methods. Those rules include so-called no-surcharge rules, no-discounting rules, honor-all-cards rules, and certain other rules. Doing so insulated them from competitive pressure to lower the interchange fees.

- Mastercard and its respective member banks, including the Bank Defendants, violated the law because they imposed and enforced rules that limited merchants from steering their customers to other payment methods. Those rules include so-called no-surcharge rules, no-discounting rules, honor-all-cards rules, and certain other rules. Doing so insulated them from competitive pressure to lower the interchange fees.

- Visa and Mastercard each independently conspired with one or more of the Bank Defendants about some of the business practices challenged.

- Visa and its respective member banks unlawfully continued in those activities even after Visa changed its corporate structure and became a publicly owned corporation after this case was filed.

- Mastercard and its respective member banks unlawfully continued in those activities even after Mastercard changed its corporate structure and became a publicly owned corporation after this case was filed.

- The Defendants' conduct caused the merchants to pay excessive fees for accepting Visa and Mastercard cards.

- But for Defendants' conduct the interchange fees would have been lower.

The Defendants say they did nothing wrong. They maintain that their business practices are legal, justified, the result of independent competition, and have benefitted merchants and consumers.

## 3. What is an interchange fee?

When a cardholder makes a purchase with a credit or debit card, there is an *interchange fee* attributable to those transactions, which for credit cards is usually around 2% to 2.5% of the purchase price. Interchange fees typically account for the greatest part of the fees paid by merchants for accepting Visa and Mastercard cards.

Visa and Mastercard set interchange fee rates for different kinds of transactions and publish them on their websites, usually twice a year.

## 4.   Why is this a class action?

In a class action, people or businesses sue not only for themselves, but also on behalf of other people or businesses with similar legal claims and interests. Together all of these people or businesses with similar claims and interests form a class, and are class members.

When a court decides a class action case or approves a settlement, it is applicable to all members of the class. In this case, the Court has previously certified the Rule 23(b)(2) Class, and the Court has now given its preliminary approval to the Settlement and approved the publication of this Notice.

## 5.   Why is there a settlement?

The Court has not decided which side was right or wrong or if any laws were violated.    Instead, both sides agreed to settle the case and avoid the cost and risk of trial and appeals that would follow a trial.

In this case, the Settlement is the product of extensive negotiations, including mediation with an experienced mediator chosen by the parties. Settling this case allows class members to receive the benefits of the Rule 23(b)(2) Class Settlement Agreement. The named Class Representatives and their lawyers believe the Settlement is best for all class members.

The parties agreed to settle this action after many years of extensive litigation.    The Settlement was preceded by a lengthy discovery process and motion practice. Specifically, the parties engaged in extensive and voluminous fact discovery. Plaintiffs briefed and argued their motion for class certification, which the Court granted. The parties prepared and exchanged numerous—and complex—expert reports. The parties briefed several motions for summary judgment. The Court denied the Defendants' motions for summary judgment, and also denied the Class Plaintiffs' motion for partial summary judgment.

## 6.   Am I part of this Settlement?

**If you accept Visa or Mastercard now or  accepted Visa and Mastercard at any time since December 18, 2020, you are part of this Rule 23(b)(2) Class, which consists of:**

all persons, businesses, and other entities that accept Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time during the period between December 18, 2020 and the date of entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment.

If you are not sure whether you are part of this Settlement, contact the Class Administrator at:

Call the toll-free number,_____
Visit:_____
Write to:_____
Or Email: _____

## SETTLEMENT BENEFITS

| 7. Will the Settlement provide money to me? |
|---|

There is no monetary payment to class members in this Settlement.  For information concerning the separate Rule 23(b)(3) Cash Settlement Class, please visit the website *www.PaymentCardSettlement.com*.

This Settlement does provide for the Visa and Mastercard Defendants to make certain payments into the Rule 23(b)(2) Class Settlement Escrow Account, which money will be used to pay:

- The cost of settlement administration and notice, as approved by the Court,
- The cost of Merchant Education Expenses, as approved by the Court,
- The cost of an Independent Auditor who will ensure that Visa and Mastercard comply with the credit card interchange-rate commitments, and
- Attorneys' fees and expenses, including any named Class Representative Service Awards, as approved by the Court.

The money in these funds will be distributed only if the Court grants final approval of the Settlement, and the money for attorneys' fees and expenses will be distributed only if the Settlement has become final and all appeals are exhausted.

| 8. What do the members of the Rule 23(b)(2) Class get? |
|---|

If the Court approves the Settlement, Visa and Mastercard will make changes to their rules and practices. These changes will apply to all members of the Rule 23(b)(2) Class, and will remain in effect for at least five years, unless otherwise noted.

The rule changes and other benefits for the Class are summarized below.  For a detailed description of the rule changes and other benefits, see the Rule 23(b)(2) Class Settlement Agreement, paragraphs 16–79, which is available at [Insert B2 Class Settlement Website Address].

**Surcharge Rules on Credit (not Debit) Cards**

Merchants will have an expanded ability to charge a fee to customers who pay with Visa- or Mastercard-Branded Credit Cards, at the brand or product level as follows:

**Brand Level Surcharge Rules on Credit (not Debit) Cards**

A brand-level surcharge is one in which the merchant imposes the same surcharge on all of a particular network's (e.g., Visa's) credit cards regardless of the issuing bank (e.g., Chase) or the product (e.g., Visa Signature card).

Under the Settlement Agreement, a merchant can surcharge all Visa-Branded Credit Cards up to 1% regardless of whether the merchant also surcharges other comparator credit cards that it accepts, e.g., American Express or Discover.  Under the Settlement Agreement, a merchant can surcharge all Visa-Branded Credit Cards up to 3% (or the merchant's cost of acceptance if it is less than 3%), if the merchant either (a) does not accept other comparator credit cards (e.g., American Express or Discover) or (b) does accept those comparator credit cards but also surcharges them in at least the same amount.

The same rules apply to surcharging Mastercard-Branded Credit Cards at the brand level.

See the details in the Rule 23(b)(2) Class Settlement Agreement, paragraphs 28 and 60, which is

available at [Insert B2 Class Settlement Website Address].

### Product Level Surcharge Rules on Credit (not Debit) Cards

A product-level surcharge is one in which the merchant imposes the same surcharge on all of the network's (e.g., Visa's) credit cards of a specific product type, e.g., Visa Signature credit cards, regardless of the issuing bank (e.g., Chase).

Under the Settlement Agreement, a merchant can surcharge a particular Visa-Branded Credit Card product up to 1% regardless of whether the merchant also surcharges the comparable products of other comparator credit cards that it accepts (e.g., American Express or Discover).  Under the Settlement Agreement, a merchant can surcharge a particular Visa-Branded Credit Card product up to 3% (or the merchant's cost of acceptance if it is less than 3%), if the merchant either (a) does not accept other comparator credit cards (e.g., American Express or Discover) or (b) does accept those comparator credit cards but also surcharges their comparable products in at least the same amount.  If the merchant cannot readily determine its cost of acceptance of the Visa product at the point-of-sale, before authorization using electronic data, the merchant can consider its cost of acceptance to be 3%.

The same rules apply to surcharging Mastercard-Branded Credit Cards at the product level.

See the details in the Rule 23(b)(2) Class Settlement Agreement, paragraphs 28 and 60, which is available at [Insert B2 Class Settlement Website Address].

### Surcharging Visa but not Mastercard, and Vice-Versa

The Settlement Agreement provides that, subject to the rules described above, a merchant may surcharge Visa-Branded Credit Cards (at the brand or product level) but not Mastercard-Branded Credit Cards (at the brand or product level), or surcharge Visa-Branded Credit Cards at one level (brand or product) and surcharge Mastercard-Branded Credit Cards at a different level (brand or product), and vice versa, in any combination.

### No-Discounting and Non-Discrimination Rules

Visa and Mastercard will modify their "no discounting" and "non-discrimination" rules to clarify that merchants may offer discounts to their customers at the issuer level, *i.e.* discounts that vary by the issuing financial institution of the credit or debit card.

### All-Outlets and Non-Acceptance Rules

Visa and Mastercard will continue to permit a merchant to decline acceptance of Visa- or Mastercard-Branded Cards at all outlets that operate under the same trade name or banner, even if the merchant accepts Visa- or Mastercard-Branded Cards at outlets that operate under a different trade name or banner.  Visa and Mastercard will also clarify that merchants do not need to employ the same types of permissible steering (*i.e.*, steering in a manner otherwise permitted by the rules, as modified by the Settlement Agreement) in all of their outlets.

### Non-Acceptance Experiments

The Settlement Agreement requires the networks to modify their rules to permit merchants to  run Pilot Programs.  In particular, the revised rules will permit a merchant to decline acceptance of Visa- or Mastercard-Branded Credit Cards at up to 20% of its outlets that operate under the same trade name or banner, for up to 120 days.

**Honor All Wallets Requirements**

Visa and Mastercard will modify their "Honor All Cards" Rules to indicate that a merchant may: (1) accept some but not all digital wallets that are provisioned with a Visa- or Mastercard-Branded Card at brick-and-mortar locations; and (2) enable some but not all digital wallets that are provisioned with a Visa- or Mastercard-Branded Card for on-line transactions, subject to certain conditions.

The Settlement Agreement also allows merchants to steer cardholders among the cards within a digital wallet under the same rules that govern steering among traditional Visa- and Mastercard-Branded Cards.

**Rate Reductions for Merchants**

Beginning upon the district court's approval of the Settlement Agreement and continuing for at least five years, neither Visa nor Mastercard will increase any of its posted U.S. credit card interchange rates above the rate that existed as of December 31, 2023.

In addition to those posted-rate caps, each of Visa and Mastercard will also implement a **Posted Interchange Rate Reduction** of at least four basis points from the posted U.S. credit card interchange rates that existed as of December 31, 2023. The Posted Interchange Rate Reduction will stay in effect for a period of not less than three years.

In addition to the provisions regarding posted interchange rates, each of Visa and Mastercard will also implement an **Average Effective Rate Limit.** The Settlement Agreement requires each of Visa and Mastercard to ensure that its average effective credit card interchange rate (including posted rates and negotiated rates) is at least seven basis points lower than the average effective credit card interchange rate for the 12-month period ending on March 31, 2024. The Average Effective Rate Limit will continue in effect for five years.

An independent third-party auditor will monitor and review Visa's and Mastercard's compliance with the Average Effective Rate Limit and will submit annual summaries of its findings to the Court. Visa and Mastercard will implement any adjustments, including retroactive reconciliation or rebalancing, necessary to come into compliance with the Average Effective Rate Limit.

**Merchant Buying Groups**

To the extent necessary, Visa and Mastercard will modify their rules to permit merchants to form Merchant Buying Groups. Merchants that form buying groups that meet certain criteria may make proposals to Visa and Mastercard, on behalf of the group's members, concerning interchange rates and rate categories; merchant rules; merchant fees; network practices and procedures; and any other aspect of the operation of Visa or Mastercard that impacts merchants. Visa or Mastercard is obliged to, in good faith: consider the Merchant Buying Group's proposals; determine if the proposal sets forth commercially reasonable benefits to merchants, consumers, the network, and all other stakeholders; and, conduct reasonable, *bona fide* negotiations with the Merchant Buying Group concerning the proposal.

**Merchant Education Program**

The Settlement Agreement establishes a fund of $15 million for a third party to set up and operate a Merchant Education Program to advise and educate merchants about the rule changes and how

merchants can benefit from them.  The education will include information about the benefits of and methods for forming and joining Merchant Buying Groups.  It will also include specific information on permissible ways to differentiate among Visa- or Mastercard-Branded Credit Cards based on the issuing bank (i.e., issuer-level differentiation).

All of these rule changes are set forth in full in the Settlement Agreement, which appears on the website: [Insert Rule 23(b)(2) Class Settlement Website Address].

## 9. Can I exclude myself from the Rule 23(b)(2) Class Settlement?

No.  You cannot be excluded from the Rule 23(b)(2) Class Settlement.  But you may object to the Rule 23(b)(2) Class Settlement, if you want to.

## HOW TO DISAGREE WITH THE SETTLEMENT

## 10. What if I disagree with the Settlement?

You may tell the Court you object to (disagree with) the Settlement for the Rule 23(b)(2) Class. The Court will consider your objection(s) when it decides whether or not to finally approve the Settlement.

**How do I tell the Court I disagree with the Settlement?**

You must file a Statement of Objections with the Court at this address:

United States District Court for the Eastern District of
New York Clerk of Court
225 Cadman Plaza
Brooklyn, New York
11201

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Defendants at the following addresses:

      Designated Class Counsel:  Robert G. Eisler, Grant & Eisenhofer
      P.A., 485 Lexington Ave., 29th Floor, New York, NY 10017.

      Designated Defendants' Counsel:  Matthew A. Eisenstein, Arnold &
      Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC
      20001-3743.

You must send your Statement of Objections to the Court, Designated Class Counsel, and Designated Defendants' Counsel postmarked no later than MM DD, 202Y (i.e., 90 days after the Court's entry of the Rule 23(b)(2) Class Settlement Notice and Scheduling Order).

**What should my Statement of Objections say?**

Your Statement of Objections must contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF NEW YORK

_____

| In re Payment Card Interchange Fee and | : | No. 05-MD-01720 |
| (MKB)(JAM) Merchant Discount Antitrust Litigation | : | |

_____ :

Statement of Objections

I am a member of the Rule 23(b)(2) Class in the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

I am a Class member because [*List information that will prove you are a class member, such as your business name and address, and how long you have accepted Visa or Mastercard cards*].

I object to the settlement in this lawsuit.  I object to *(list what part(s) of the Settlement you disagree with, e.g. the Rule 23(b)(2) Class Settlement, notice procedures, other features.)* [Note that you may also object to any requests for attorneys' fees and expenses or service awards for the named Class Representatives as part of the same objection, or as part of a separate objection described below].

My reasons for objecting are:

The laws and evidence that support each of my objections are:

My personal information is:

Name (first, middle, last):

Address:

Phone No.:

The contact information for my lawyer (if any) is:

**Can I call the Court or the Judge's office about my objections?**

No.  If you have questions, you may visit the website for the settlement or call the Class Administrator:

Visit:  _____

Or Call:_____

## 11. Is objecting the same as being excluded?

No.  **Objecting** means you tell the Court which part(s) of the Settlement you disagree with (including the request for attorneys' fees and expenses or service awards for named Class Representatives).

You cannot opt-out of or be excluded from the Rule 23(b)(2) Class.

# The Lawyers Representing You

| **12. Who are the lawyers that represent the Rule 23(b)(2) Class?** |
|---|

The Court has appointed the lawyers listed below to represent you.  These lawyers are called Class Counsel.  Many other lawyers have also worked with Class Counsel to represent you in this case. Because you are a class member, you do not have to pay any of these lawyers.   They will be paid, upon Court approval, from the Rule 23(b)(2) Class Settlement Escrow Account as described in the response to Question 7, above.

**Linda P. Nussbaum**
**Nussbaum Law Group, P.C.**
1133 Avenue of the Americas, 31st Floor
New York, New York 10036

**Steve D. Shadowen**
**Hilliard & Shadowen LLP**
1717 W. 6th Street, Suite 370
Austin, TX 78703

**Robert G. Eisler**
**Grant & Eisenhofer**
**P.A.**
485   Lexington   Ave,
29th Floor
New York, NY 10017

**Michael J. Freed**
**Freed Kanner London & Millen LLP**
100 Tri-State International
Suite 128
Lincolnshire, IL 60069

**Should I hire my own lawyer?**

You do not have to hire your own lawyer.  But you can if you want to, at your own cost.

If you hire your own lawyer to appear in this case, you must tell the Court and send a copy of your notice to Class Counsel at any of the addresses above.

| **13. How much will the lawyers and named Class Representatives be paid?** |
|---|

As explained in the response to Question 7 above, the Visa and Mastercard Defendants will make certain payments into the Rule 23(b)(2) Class Settlement Escrow Account, which money will be used to pay, among other things, attorneys' fees and expenses, and any named Class Representative Service Awards, as approved by the Court.

Class Counsel will ask the Court for _____.  This includes compensation for the work that Class Counsel have done to date, plus anticipated additional work to, among other things,

administer the settlement and monitor the successful implementation of relief.

Class Counsel will also request reimbursement of their incurred and expected litigation expenses, not to exceed [      ], and up to [      ] per named Class Representative in Service Awards for their efforts on behalf of the class.

The amounts requested for attorneys' fees, reimbursement of expenses, and named Class Representatives' Service Awards will be awarded only if the Court grants final approval of the Settlement, and the money for attorneys' fees and expenses will be distributed only if the Settlement has become final and all appeals are exhausted.  Class Counsel must file their requests for fees and expenses and other costs to the Court by MM DD, 202Y.  You can object to the requests for attorneys' fees, expenses, or named Class Representative Service Awards in compliance with the instructions in response to Question 14 below.

Copies of the lawyers' requests for f e e s ,  e x p e n s e s ,  a n d  S e r v i c e  A w a r d s  will be posted at the settlement website, [Insert Rule 23(b)(2) Class Settlement Website Address], the same day they are filed, which will be no later than MM DD, 202Y.

## 14. How do I disagree with the requested attorneys' fees, expenses or awards to named Class Representatives?

You may tell the Court you object to (disagree with) any request for attorneys' fees and expenses or named Class Representative Service Awards.   The Court will consider your objection(s) when it evaluates any request for attorneys' fees and expenses and Service Awards in connection with its decision on final approval of the Settlement.

To file an objection, you must file a Statement of Objections with the Court at this

address: United States District Court for the Eastern District of New York
Clerk of
Court  225
Cadman
Plaza
Brooklyn, New York 11201

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Defendants at the following addresses:

> Designated Class Counsel:   Robert G. Eisler, Grant & Eisenhofer
> P.A., 485 Lexington Ave., 29th Floor, New York, NY 10017.

> Designated Defendants' Counsel: Matthew A. Eisenstein, Arnold & Porter
> Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC
> 20001-3743.

You must send your Statement of Objections to the Court, Designated Class Counsel, and Designated Defendants' Counsel postmarked no later than MM DD, 202Y.

**I.  What should my Statement of Objections say?**

Your Statement of Objections must contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF NEW YORK

_____

In re Payment Card Interchange Fee and     :     No. 05-MD-01720
(MKB)(JAM) Merchant Discount Antitrust Litigation   :

_____:

Statement of Objections

I am a member of the Rule 23(b)(2) Class in the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

I am a Class member because [*List information that will prove you are a class member, such as your business name and address, and how long you have accepted Visa or Mastercard cards*].

I object to class counsel's request for attorneys' fees and expenses and/or to the request for service awards to the named Class Representatives.

My reasons for objecting are:

The laws and evidence that support each of my objections are:

My personal information is:

Name (first, middle, last):

Address:

Phone No.:

The contact information for my lawyer (if any) is:

**Can I call the Court or the Judge's office about my objections?**

No.  If you have questions, you may visit the website for the Settlement or call the Class Administrator.

Visit:_____

Call:_____

## THE COURT'S FAIRNESS HEARING

| 15. When and where will the Court decide whether to approve the Settlement? |
| --- |

There will be a Fairness Hearing at **_:___.m.** on **MM DD, 202Y**.  The hearing will take

place at: United States District Court for the Eastern District of New York
Courtroom #
XX 225
Cadman
Plaza
Brooklyn, NY 11201

We do not know how long the Court will take to make its decision.

***Important!***  The time and date of this hearing may change without additional published notice. For updated information on the hearing, visit: [Insert Rule 23(b)(2) Class Settlement Website Address]

**Why is there a hearing?**

The hearing is about whether or not the Settlement is fair, adequate, and reasonable.

The Court will consider any objections and listen to class members who have asked to speak at the hearing.

The Court will also decide whether it should give its final approval of the Plaintiffs' requests for attorneys' fees and expenses, service awards, and other costs.

| 16. Do I have to come to the hearing? |
| --- |

No.   You do not have to go to the hearing, even if you sent the Court an objection.  But, you can go to the hearing or hire a lawyer to go to the hearing if you want to, at your own expense.

| 17. What if I want to speak at the hearing? |
| --- |

You must file a Notice of Intention to Appear with the Court at this

address: United States District Court for the Eastern District of New

York
Clerk of
Court  225
Cadman
Plaza
Brooklyn, New York 11201

Your Notice of Intention to Appear must be filed by <mark>MM DD, 202Y</mark>.  You must also mail a copy of your letter to Class Counsel and Counsel for the Defendants at the addresses listed in the response to Question 10 above.

**What should my Notice of Intention to Appear say?**

Your Notice of Intention to Appear must be signed and contain the following information:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

| In re Payment Card Interchange Fee and | : | No. 05-MD-01720 |
| (MKB)(JAM) Merchant Discount Antitrust Litigation | : | |

_____ :

• Notice of Intention to Appear

• I want to speak at the Fairness Hearing for the case called *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*.

• My personal information is:

• Name (first, middle, last):

• Address:

•    Phone No.:

•    Personal information for other people (including lawyers) who want to speak at the hearing:

## IF YOU DO NOTHING

| 18. What happens if I do nothing? |
|---|

Upon the Court's approval of this Settlement, you will receive the benefits of, and be bound by the Release applicable to, the Rule 23(b)(2) Class Settlement.

## GETTING MORE INFORMATION

| 19. How do I get more information? |
|---|

There are several ways to get more information about the Settlement.

You will find the following information at: [Insert Rule 23(b)(2) Class Settlement Website Address]

• The complete Rule 23(b)(2) Class Settlement Agreement, including all Appendices, and
• Other documents related to this lawsuit.

To receive a copy of the Rule 23(b)(2) Class Settlement Agreement or other documents related to this lawsuit, you may:

Visit:          [Insert Rule 23(b)(2) Class Settlement Website Address]
Write to:       _____
Email:          _____
Call :          _____ – toll-free

**Please Do Not Attempt to Contact Judge Brodie or the Clerk of Court With Any Questions.**

## THE FULL TEXT OF THE RELEASE

| 20. What is the full text of the Release for the Rule 23(b)(2) Class Settlement? |
|---|

Release and Covenant Not to Sue of the Rule 23(b)(2) Class

The "Rule 23(b)(2) Class Releasing Parties" are individually and collectively the Rule 23(b)(2) Class Plaintiffs and each member of the Rule 23(b)(2) Class, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, estates, purchasers, predecessors, successors, and assigns — whether or not they object

to the settlement set forth in this Rule 23(b)(2) Class Settlement Agreement, and whether or not they exercise any benefit provided under this Rule 23(b)(2) Class Settlement Agreement, whether directly, representatively, derivatively, or in any other capacity.

The "Rule 23(b)(2) Class Released Parties" are all of the following:

(a)     Visa U.S.A. Inc., Visa International Service Association, Visa International, Visa Inc., Visa Asia Pacific Region, Visa Canada Association, Visa Central & Eastern Europe, Middle East & Africa Region, Visa Latin America & Caribbean Region, Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Visa-Branded Cards or to acquire any Visa-Branded Card transactions.

(b)     Mastercard International Incorporated, Mastercard Incorporated, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Mastercard-Branded Cards or to acquire any Mastercard-Branded Card transactions.

(c)     Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; NB Holdings; MBNA America Bank, N.A.; and FIA Card Services, N.A.

(d)     Barclays Bank plc; Barclays Delaware Holdings, LLC (formerly known as Juniper Financial Corporation); Barclays Bank Delaware (formerly known as Juniper Bank); and Barclays Financial Corp.

(e)     Capital One, N.A. (as successor to Capital One F.S.B. and Capital One Bank (USA), N.A.); and Capital One Financial Corporation.

(f)     JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A. (and as successor in interest to Chase Bank USA, N.A. and Washington Mutual Bank); and Paymentech, LLC (and as successor to Chase Paymentech Solutions, LLC).

(g)     Citibank, N.A.; Citigroup Inc.; Citicorp LLC; Citicorp Credit Services, Inc. (USA) (as successor to Citicorp Payment Services, Inc.).

(h)     Fifth Third Bancorp.

(i)     First National Bank of Omaha.

(j)     HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; HSBC Bank plc; and HSBC U.S.A. Inc.

(k)     National City Corporation and National City Bank of Kentucky.

(l)     The PNC Financial Services Group, Inc. (and as acquirer of National City Corporation) and PNC Bank, National Association.

(m)     SunTrust Banks, Inc. (now known as Truist Financial Corporation) and SunTrust Bank (now known as Truist Bank).

(n)     Texas Independent Bancshares, Inc.

(o)     Wachovia Bank, N.A. and Wachovia Corporation.

(p)     Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); and Providian Financial Corporation.

(q)     Wells Fargo & Company (and as successor to Wachovia Corporation) and Wells Fargo Bank, N.A. (and as successor to Wachovia Bank, N.A.).

(r)     Each and every entity or person alleged to be a co-conspirator of any Defendant

in any of the complaints in the Action.

(s)     Each of the past, present, or future member or customer financial institutions of Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., Mastercard International Incorporated, or Mastercard Incorporated.

(t)     For each of the entities or persons in Paragraphs (a)-(s) above, each of their respective past, present, and future, direct and indirect, parents (including holding companies), subsidiaries, affiliates, and associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), or any other entity in which more than 50% of the equity interests are held.

(u)     For each of the entities or persons in Paragraphs (a)-(t) above, each of their respective past, present, and future predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the Defendants to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs (a)-(t) above).

(v)     For each of the entities or persons in Paragraphs (a)-(u) above, each of their respective past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, estates, shareholders, advisors, predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of each of the foregoing entities to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs (a)-(u) above).

In addition to the effect of the Rule 23(b)(2) Class Settlement Order and Final Judgment filed in accordance with this Rule 23(b)(2) Class Settlement Agreement, including but not limited to any res judicata effect:

(a)     The Rule 23(b)(2) Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(2) Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, parens patriae, or otherwise in nature, to the extent that they seek any form of declaratory, injunctive, or equitable relief, or attorneys' fees, costs, expenses, or interest, to the extent such fees, costs, expenses, or interest are related to those claims, demands, actions, suits, and causes of action, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Class Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the Settlement Approval Date or accrue no later than five years after the commencement of the Average Effective Rate Limit, arising out of or relating to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Class Released Party that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act.  For avoidance of doubt, this release shall extend to, but only to, the fullest extent permitted by federal law.

(b)     It is expressly agreed, for purposes of clarity, that any claims that seek any form of declaratory, injunctive, or equitable relief arising out of or relating to any of the following conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act are claims that were or could have been alleged in this Action and relate to the subject matter thereof:

(i)     any interchange fees, interchange rates, or any Rule of any Visa Defendant or Mastercard Defendant relating to interchange fees, interchange rates, or to the setting of interchange fees or interchange rates with respect to any Visa-Branded Card transactions in the United

States or any Mastercard-Branded Card transactions in the United States;

(ii)     any Merchant Fee of any Rule 23(b)(2) Class Released Party relating to any Visa-Branded Card transactions in the United States or any Mastercard-Branded transactions in the United States;

(iii)     any actual or alleged "no surcharge" rules, "honor all cards" rules, "honor all issuers" rules, "honor all devices" rules, rules requiring the honoring of all credentials or accounts, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules, "anti-steering" rules, rules that limit merchants in favoring or steering customers to use certain payment systems, "all outlets" rules, "no bypass" rules, "no multi-issuer" rules, "no multi-bug" rules, routing rules, cross-border acquiring rules, card authentication or cardholder verification rules, "cardholder selection" rules or requirements, PAVD rules, rules or conduct relating to routing options regarding acceptance technology for mobile, e-commerce, or online payments, or development and implementation of tokenization standards;

(iv)     any reorganization, restructuring, initial or other public offering, or other corporate structuring of any Visa Defendant or Mastercard Defendant;

(v)     any service of an employee or agent of any Rule 23(b)(2) Class Released Party on any board or committee of any Visa Defendant or Mastercard Defendant; or

(vi)     any actual or alleged agreement (or alleged continued participation therein) (A) between or among any Visa Defendant and any Mastercard Defendant, (B) between or among any Visa Defendant or Mastercard Defendant and any other Rule 23(b)(2) Class Released Party or Parties, or (C) between or among any Defendant or Rule 23(b)(2) Class Released Party or Parties, relating to (i)-(v) above or to any Rule 23(b)(2) Class Released Party's imposition of, compliance with, or adherence to (i)-(v) above.

(c)     For purposes of clarity, references to the Rules identified in this Paragraph mean those Rules as they are or were in place on December 18, 2020 and up to the Settlement Approval Date, Rules as they may be modified in the manner provided in the Rule 23(b)(2) Class Settlement Agreement, and Rules in place thereafter that are substantially similar to those Rules.

Each Rule 23(b)(2) Class Releasing Party further expressly and irrevocably waives, and fully, finally, and forever settles and releases, any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in the preceding Paragraphs. Without limiting the generality of the foregoing, each Rule 23(b)(2) Class Releasing Party expressly and irrevocably waives and releases any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party might otherwise have in relation to the release by virtue of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction.  SECTION 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."  In addition, although each Rule 23(b)(2) Class Releasing Party may hereafter discover facts other than, different from, or in addition to those that it or he or she knows or believes to be true with respect to any claims released in the preceding Paragraphs, each Rule 23(b)(2) Class Releasing Party hereby expressly and irrevocably waives, and fully, finally, and forever settles, discharges, and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claims within the scope of the preceding Paragraphs, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts.  Rule 23(b)(2) Class Plaintiffs acknowledge, and the members of the Rule 23(b)(2) Class shall be deemed by operation of the Rule 23(b)(2) Class Settlement Order and Final Judgment to have acknowledged, that

the foregoing waiver was separately bargained for and is a key element of this Rule 23(b)(2) Class Settlement Agreement.

The release in the Paragraphs above does not bar an investigation or action, whether denominated as parens patriae, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests.

Notwithstanding anything to the contrary in the Paragraphs above, the release in the Paragraphs above shall not release:

(a)     Any claim of a Rule 23(b)(2) Class Releasing Party that is based on standard commercial disputes arising in the ordinary course of business under contracts or commercial relations regarding loans, lines of credit, or other related banking or credit relations, individual chargeback disputes, products liability, breach of warranty, misappropriation of cardholder data or invasion of privacy, compliance with technical specifications for a merchant's acceptance of Visa-Branded Credit Cards or Debit Cards, or Mastercard-Branded Credit Cards or Debit Cards, and any other dispute arising out of a breach of any contract between any of the Rule 23(b)(2) Class Releasing Parties and any of the Rule 23(b)(2) Class Released Parties; provided, however, that the Paragraphs above and not this Paragraph shall control in the event that any such claim challenges the legality of interchange rules, interchange rates, or interchange fees, or any other Rule, fee, charge, or other conduct covered by any of the claims released in the Paragraphs above.

(b)     Claims based only on an injury suffered as (i) a payment card network competitor of the Visa Defendants or the Mastercard Defendants, or (ii) an ATM operator that is not owned by, or directly or indirectly controlled by, one or more of the Rule 23(b)(2) Class Released Parties.

(c)     Any claim of a Rule 23(b)(2) Class Releasing Party seeking monetary damages but not any form of declaratory, injunctive, or equitable relief with respect to the claims released herein.

Upon the Settlement Approval Date each of the Rule 23(b)(2) Class Releasing Parties agrees and covenants not to:  (a) sue any of the Rule 23(b)(2) Class Released Parties on the basis of any claim released herein; (b) assist any third party in commencing or maintaining any private civil lawsuit against any Rule 23(b)(2) Class Released Party related in any way to any claim released herein; or (c) take any action or make any claim until five years after the commencement of the Average Effective Rate Limit that a Rule 23(b)(2) Class Released Party has continued to participate in, and failed to withdraw from, any alleged unlawful conspiracies or agreements relating to the claims released herein, which allegedly arise from or relate to the pre-IPO structure or governance of any of the Visa Defendants or the pre-IPO structure or governance of any of the Mastercard Defendants, or any Bank Defendant's participation therein.  For the avoidance of doubt, however, nothing in this Paragraph shall preclude a Rule 23(b)(2) Class Releasing Party from taking any action compelled by law or court order.

Each Rule 23(b)(2) Class Releasing Party further releases each of the Visa Defendants, Mastercard Defendants, and Bank Defendants and their counsel and experts in this Action from any claims that seek any form of declaratory, injunctive, or equitable relief relating to the defense and conduct of this Action, including the negotiation and terms of this Rule 23(b)(2) Class Settlement Agreement or any other settlement agreement in this Action, except for any claims relating to enforcement of this Rule 23(b)(2) Class Settlement Agreement.  Each Rule 23(b)(2) Class Releasing Party releases the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, and their respective experts in Barry's, from any claims relating to their institution or prosecution of Barry's, including the negotiation and terms of this Rule 23(b)(2) Class Settlement Agreement, except for any claims relating to enforcement of this Rule 23(b)(2) Class Settlement Agreement.

For purposes of clarity, it is specifically intended for the release and covenant not to sue provisions in this Rule 23(b)(2) Class Settlement Agreement to preclude all members of the Rule

23(b)(2) Class from seeking or obtaining any form of declaratory, injunctive, or equitable relief with respect to the claims released herein until five years after the commencement of the Average Effective Rate Limit with respect to any Rule of any Visa Defendant or any Mastercard Defendant in effect between December 18, 2020 and the Settlement Approval Date, and the compliance by any Bank Defendant with any such Rule, as it is alleged to exist, now exists, may be modified in the manner provided in the Rule 23(b)(2) Class Settlement Agreement, or may in the future exist in the same or substantially similar form thereto.

In the event that this Rule 23(b)(2) Class Settlement Agreement is terminated pursuant to Paragraphs 102-103 of the Rule 23(b)(2) Class Settlement Agreement, or any condition for the Settlement Approval Date is not satisfied, the release and covenant not to sue provisions in this Rule 23(b)(2) Class Settlement Agreement shall be null and void and unenforceable.

**APPENDIX E – Rule 23(b)(2) Class Settlement Notice and Scheduling Order**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**<br><br>**This Document Applies to:**<br><br>*Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM), also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM). | **No. 05-MD-1720 (MKB) (JAM)** |

**CLASS SETTLEMENT NOTICE AND SCHEDULING ORDER**

WHEREAS, the Court has considered the Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants, including its Appendices, dated as of _____, 2024 (the "Rule 23(b)(2) Class Settlement Agreement"), which sets forth the terms and conditions for a proposed settlement of the action captioned *Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket No. 05-md-01720 (E.D.N.Y.) ("*Barry's*"), in MDL 1720, and the termination and disposition of all causes of action against the Defendants in the *Barry's* action, and certain claims for declaratory, injunctive, and equitable relief against the Defendants in the actions consolidated in MDL 1720 and listed in Appendix A to the Rule 23(b)(2) Class Settlement Agreement, with prejudice; and

WHEREAS, the Court has considered the motion of the Rule 23(b)(2) Class Plaintiffs for approval of the Rule 23(b)(2) Class Settlement Agreement, the Memorandum of Law and evidence filed in support thereof, and all other papers submitted in connection with the Rule 23(b)(2) Class Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED AND DECREED as follows:

1.      The Court hereby approves the Rule 23(b)(2) Class Plaintiffs, the Visa Defendants, and Mastercard Defendants entering into the Rule 23(b)(2) Class Settlement Agreement.  In addition, the Court has considered whether the Rule 23(b)(2) Class Settlement Agreement preliminarily satisfies the class action settlement requirements of Federal Rule of Civil Procedure 23.  Based on its consideration, the Court hereby also preliminarily approves the Rule 23(b)(2) Class Settlement Agreement for class action settlement purposes as within the range of a fair, reasonable, and adequate settlement within the meaning of Federal Rule of Civil Procedure 23 and applicable law, and consistent with due process.

2.      This Class Settlement Notice and Scheduling Order incorporates by reference the definitions in the Rule 23(b)(2) Class Settlement Agreement, and all terms herein shall have the same meanings as set forth in the Rule 23(b)(2) Class Settlement Agreement.

3.      The Court has subject matter and personal jurisdiction over the Rule 23(b)(2) Class Plaintiffs, all members of the Rule 23(b)(2) Class, and the Defendants.

4.      The Court orders Rule 23(b)(2) Class Counsel, the Visa Defendants, and the MasterCard Defendants to establish and maintain the Rule 23(b)(2) Class Settlement Escrow Account as provided in Paragraphs 4-7 of the Rule 23(b)(2) Class Settlement Agreement and the Rule 23(b)(2) Class Settlement Escrow Agreement in Appendix B to the Rule 23(b)(2) Class Settlement Agreement.

5.      Based on and pursuant to the class action criteria of Federal Rules of Civil Procedure 23(a) and 23(b)(2), on September 27, 2021, the Court certified a Rule 23(b)(2) class, from which exclusions shall not be permitted, consisting of all persons, businesses, and other entities that accept Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at

any time during the period between December 18, 2020 and the date of entry of the Rule 23(b)(2) Class Settlement Order and Final Judgment.

6.     The definition of the proposed class in the operative class complaint is hereby amended to be the same as that certified in the Court's September 27, 2021 Order.

7.     The Court orders Defendants to cause notice of the Rule 23(b)(2) Class Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715, and certify to the Court that the notice was provided.

8.     The Court appoints Epiq Systems, Inc. as the Class Administrator to assist Rule 23(b)(2) Class Counsel in effectuating and administering the Notice Plan delineated in Appendix C to the Rule 23(b)(2) Class Settlement Agreement.  The Court determines that notice should be provided to members of the Rule 23(b)(2) Class, but that exclusion rights should not be afforded to members of the Rule 23(b)(2) Class.

9.     The Court approves the method of notice to be provided to the Rule 23(b)(2) Class that is described in the Rule 23(b)(2) Class Settlement Agreement and in the Notice Plan and budget contained in Appendix C to the Rule 23(b)(2) Class Settlement Agreement, including use of the website notice and the publication notice contained in Appendix D to the Rule 23(b)(2) Class Settlement Agreement.  The Court finds and concludes that such notice:  (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Rule 23(b)(2) Class that would be bound by the Rule 23(b)(2) Class Settlement Agreement and to apprise them of the Action, the terms and conditions of the Rule 23(b)(2) Class Settlement Agreement, and the right to object to the Rule 23(b)(2) Class Settlement Agreement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

10. Consistent with the Notice Plan, the Court directs the Class Administrator, as soon as practicable following the Court's entry of this Order, but before commencement of the notice, to establish the dedicated Case Website, post office box, and toll-free telephone line for providing notice and information to members of the Rule 23(b)(2) Class.

11. Within ten business days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Class Administrator's expenses for the foregoing notice activities, including those of any third-party vendors it uses to perform tasks necessary for the implementation or effectuation of its duties, shall be paid from the Rule 23(b)(2) Class Settlement Escrow Account.  In no event shall any Rule 23(b)(2) Class Released Party have any obligation, responsibility, or liability with respect to the Class Administrator or the Notice Plan.

12. Within 30 days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order, the Class Administrator shall substantially complete the notice to members of the Rule 23(b)(2) Class that is described in the Notice Plan, using the website notice and the publication notice contained in Appendix D to the Class Settlement Agreement.

13. Within 30 days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order, any motions seeking approval of Attorneys' Fees and Expenses shall be filed with the Court.

14. Within 90 days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order — i.e., 60 days after the last date for completion of notice under the Notice Plan (the "Class Objection Period") — any objections to the Rule 23(b)(2) Class Settlement Agreement or motions seeking approval of Attorneys' Fees and Expenses shall be filed with the Court by any Objector.

15. Such an Objector must file a written statement of objections with the Court within the Class Objection Period, and send it to the following designees of Rule 23(b)(2) Class

E-4

Counsel and counsel for the Defendants, by first-class mail and postmarked within the Class Objection Period:

> Designee of Rule 23(b)(2) Class Counsel:  Robert G. Eisler, Grant & Eisenhofer P.A., 485 Lexington Ave., 29th Floor, New York, NY 10017

> Designee of Defendants:  Matthew A. Eisenstein, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001-3743

16.     The Objector's statement must:  (i) contain the words "In re Interchange Fee and Merchant Discount Antitrust Litigation"; (ii) state each and every objection of the Objector and the specific reasons therefor; (iii) provide all legal support and all evidence that the Objector wishes to bring to the Court's attention in support of any objection; (iv) state the full name, address, and telephone number of the Objector; (v) provide information sufficient to establish that the Objector is a member of the Rule 23(b)(2) Class; and (f) state the full name, mail address, email address, and telephone number of any counsel representing the Objector in connection with the objections.

17.     In addition, any Objector or counsel for an Objector that desires to appear at the final approval hearing must file with the Court within the Class Objection Period, and send to a designee of Rule 23(b)(2) Class Counsel and a designee of counsel for the Defendants by first-class mail and postmarked within the Class Objection Period, a separate notice of intention to appear that identifies by name, position, address, and telephone number each person who intends to appear at the approval hearing on behalf of the Objector.

18.     Within 120 days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order, any replies and supporting papers that respond to any objections to the Rule 23(b)(2) Class Settlement Agreement or motions seeking approval of Attorneys' Fees and Expenses shall be filed with the Court.  Rule 23(b)(2) Class Counsel will provide notice of such motions and any additional details to members of the Rule 23(b)(2) Class by causing all

such motions and supporting papers to be posted prominently on the Case Website prior to, or simultaneously with, their filing with the Court.

19.     The Court will hold a final approval hearing at least 150 days after the Court's entry of this Rule 23(b)(2) Class Settlement Notice and Scheduling Order, at __ o'clock on _____ __, 2024, at the Courthouse for the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.  At that final approval hearing, the Court will conduct an inquiry as it deems appropriate into the fairness, reasonableness, and adequacy of the Rule 23(b)(2) Class Settlement Agreement, address any objections to it, and determine whether the Rule 23(b)(2) Class Settlement Agreement should be finally approved, whether final judgment should be entered thereon, and whether to approve any motions for Attorneys' Fee and Expenses.

20.     The Court stays *Barry's* and all further proceedings in MDL 1720 to the extent they seek declaratory, injunctive, or equitable relief against the Defendants that is being released against the Rule 23(b)(2) Class Released Parties, except for proceedings in MDL 1720 related to effectuating and complying with the Rule 23(b)(2) Class Settlement Agreement, pending the Court's determination of whether the Rule 23(b)(2) Class Settlement Agreement should be finally approved or the termination of the Rule 23(b)(2) Class Settlement Agreement.

21.     The Court enjoins all members of the Rule 23(b)(2) Class, pending the Court's determination of whether the Rule 23(b)(2) Class Settlement Agreement should finally be approved or the termination of the Rule 23(b)(2) Class Settlement Agreement, from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on their behalf, any claims being released against the Rule 23(b)(2) Class Released Parties, except for proceedings in MDL 1720 related to effectuating and complying with the Rule 23(b)(2) Class Settlement Agreement.

IT IS SO ORDERED.

DATED: _____

                                             _____

                                             THE HONORABLE MARGO K. BRODIE
                                             UNITED STATES DISTRICT JUDGE

**APPENDIX F – Rule 23(b)(2) Class Settlement Order and Final Judgment**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION** | **No. 05-md-01720 (MKB) (JAM)** |
| **This Document Applies to:** | |
| ***Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.***, **No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM), also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM).** | |

**CLASS SETTLEMENT ORDER AND FINAL JUDGMENT**

On _____ __, 2024, the Court held a final approval hearing on (1) whether the terms and

conditions of the Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the

Defendants, including all its Appendices, dated _____ __, 2024 (the "Rule 23(b)(2) Class

Settlement Agreement") are fair, reasonable, and adequate for the settlement of all claims in the

action captioned *Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, MDL No. 1720 Docket

No. 05-md-01720 (E.D.N.Y.) ("*Barry's*" or the "Action"), in MDL 1720, by the Rule 23(b)(2)

Class certified by the Court; and (2) whether judgment should be entered dismissing the

Defendants from *Barry's*, and all claims for declaratory, injunctive, and equitable relief, with

respect to any and all claims released against the Rule 23(b)(2) Class Released Parties in the

actions consolidated in MDL 1720 and listed in Appendix A to the Rule 23(b)(2) Class

Settlement Agreement, with prejudice.

The Court having considered all papers filed concerning the Rule 23(b)(2) Class

Settlement Agreement, and all matters submitted to the Court at the final approval hearing and

otherwise, hereby FINDS, with all terms used herein having the same meanings set forth and defined in the Rule 23(b)(2) Class Settlement Agreement, that:

A.     This Court has jurisdiction over the Rule 23(b)(2) Class Plaintiffs, all members of the Rule 23(b)(2) Class, and the Defendants, and jurisdiction to finally approve the Rule 23(b)(2) Class Settlement Agreement.

B.     The notice procedures provided to the Rule 23(b)(2) Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(2) Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(2) Class of the Action, the terms of the Rule 23(b)(2) Class Settlement Agreement, and their objection rights, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, any other applicable laws or rules of the Court, and due process.

C.     The notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

D.     The Court has held a final approval hearing to consider the fairness, reasonableness, and adequacy of the Rule 23(b)(2) Class Settlement Agreement, and has been advised of all objections to the Rule 23(b)(2) Class Settlement Agreement and has given due consideration thereto.

E.     The Rule 23(b)(2) Class Settlement Agreement, including its consideration and release provisions:

(1)     was entered into in good faith, following arm's-length negotiations, and was not collusive;

(2)     is fair, reasonable, and adequate, and is in the best interests of the Rule 23(b)(2) Class;

(3)      is consistent with the requirements of federal law and all applicable court

rules, including Federal Rule of Civil Procedure 23; and

(4)      was entered into at a time when the record was sufficiently developed and

complete to enable the Rule 23(b)(2) Class Plaintiffs and the Defendants to have adequately

evaluated and considered all terms of the Rule 23(b)(2) Class Settlement Agreement.

ACCORDINGLY, pursuant to Federal Rule of Civil Procedure 23(e), the Rule 23(b)(2)

Class Settlement Agreement, the terms and conditions of which are hereby incorporated by

reference, is hereby fully and finally APPROVED by the Court.

NOW, THEREFORE, based on good cause appearing therefor, [and as set forth in the

accompanying opinion,] it is hereby ORDERED, ADJUDGED, and DECREED that:

1.      Based on and pursuant to the class action criteria of Federal Rules of Civil

Procedure 23(a) and 23(b)(2), on September 27, 2021, the Court certified a Rule 23(b)(2) class,

from which exclusions shall not be permitted, consisting of all persons, businesses, and other

entities that accept Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at

any time during the period between December 18, 2020 and the date of entry of the Rule

23(b)(2) Class Settlement Order and Final Judgment, which is the same as the Rule 23(b)(2)

Class.

2.      The Rule 23(b)(2) Class Plaintiffs shall continue to serve as representatives of the

Rule 23(b)(2) Class.  The law firms of Hilliard & Shadowen LLP, Grant & Eisenhofer P.A.,

Freed Kanner London & Millen LLP, and Nussbaum Law Group, P.C. shall continue to serve as

Class Counsel for the Rule 23(b)(2) Class.

3.      Rule 23(b)(2) Class Counsel, the Visa Defendants, and the Mastercard Defendants

shall maintain the Rule 23(b)(2) Class Settlement Escrow Account as provided in the Rule

23(b)(2) Class Settlement Agreement, including the Rule 23(b)(2) Class Settlement Escrow Agreement contained in Appendix B to the Rule 23(b)(2) Class Settlement Agreement.

4.      The terms and provisions of the Fourth Amended Protective Order, filed on October 29, 2009, and approved by the Court on October 30, 2009, and the terms and provisions of the Protective Order filed on April 3, 2015 on the 14-md-1720 docket and approved by the Court on April 9, 2015, shall survive and continue in effect through and after entry of this Class Settlement Order and Final Judgment.

5.      Nothing in the Rule 23(b)(2) Class Settlement Agreement or this Class Settlement Order and Final Judgment is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any of the Defendants, or of the truth or validity or lack of truth or validity of any of the claims or allegations alleged in *Barry's* or other actions in MDL 1720.

6.      Nothing in this Class Settlement Order and Final Judgment is intended to or shall modify the terms of the Rule 23(b)(2) Class Settlement Agreement.

7.      Each member of the Rule 23(b)(2) Class and each Rule 23(b)(2) Class Releasing Party unconditionally, fully, and finally releases and forever discharges the Defendants and each of the other Rule 23(b)(2) Class Released Parties from all claims released in the Rule 23(b)(2) Class Settlement Agreement, and waives any rights to the protections afforded under California Civil Code §1542 and/or any other similar, comparable, or equivalent laws.

8.      Specifically, the members of the Rule 23(b)(2) Class provide the following release and covenant not to sue:

    a.      The "Rule 23(b)(2) Class Releasing Parties" are individually and collectively the Rule 23(b)(2) Class Plaintiffs and each member of the Rule 23(b)(2) Class, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators,

estates, purchasers, predecessors, successors, and assigns — whether or not they object to the settlement set forth in the Rule 23(b)(2) Class Settlement Agreement, and whether or not they exercise any benefit provided under the Rule 23(b)(2) Class Settlement Agreement, whether directly, representatively, derivatively, or in any other capacity.

      b.      The "Rule 23(b)(2) Class Released Parties" are all of the following:

      i.      Visa U.S.A. Inc., Visa International Service Association, Visa International, Visa Inc., Visa Asia Pacific Region, Visa Canada Association, Visa Central & Eastern Europe, Middle East & Africa Region, Visa Latin America & Caribbean Region, Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Visa-Branded Cards or to acquire any Visa-Branded Card transactions.

      ii.      Mastercard International Incorporated, Mastercard Incorporated, and any other entity that now authorizes or licenses, or in the past has authorized or licensed, a financial institution to issue any Mastercard-Branded Cards or to acquire any Mastercard-Branded Card transactions.

      iii.      Bank of America, N.A.; BA Merchant Services LLC (formerly known as National Processing, Inc.); Bank of America Corporation; NB Holdings; MBNA America Bank, N.A.; and FIA Card Services, N.A.

      iv.      Barclays Bank plc; Barclays Delaware Holdings, LLC (formerly known as Juniper Financial Corporation); Barclays Bank Delaware (formerly known as Juniper Bank); and Barclays Financial Corp.

      v.      Capital One, N.A. (as successor to Capital One F.S.B. and Capital One Bank (USA), N.A.); and Capital One Financial Corporation.

      vi.      JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A. (and as successor in interest to Chase Bank USA, N.A. and Washington Mutual Bank); and Paymentech, LLC (and as successor to Chase Paymentech Solutions, LLC).

      vii.      Citibank, N.A.; Citigroup Inc.; Citicorp LLC; Citicorp Credit Services, Inc. (USA) (as successor to Citicorp Payment Services, Inc.).

      viii.      Fifth Third Bancorp.

      ix.      First National Bank of Omaha.

      x.      HSBC Finance Corporation; HSBC Bank USA, N.A.; HSBC North America Holdings Inc.; HSBC Holdings plc; HSBC Bank plc; and HSBC U.S.A. Inc.

      xi.      National City Corporation and National City Bank of Kentucky.

xii.     The PNC Financial Services Group, Inc. (and as acquirer of National City Corporation) and PNC Bank, National Association.

xiii.    SunTrust Banks, Inc. (now known as Truist Financial Corporation) and SunTrust Bank (now known as Truist Bank).

xiv.     Texas Independent Bancshares, Inc.

xv.      Wachovia Bank, N.A. and Wachovia Corporation.

xvi.     Washington Mutual, Inc.; Washington Mutual Bank; Providian National Bank (also known as Washington Mutual Card Services, Inc.); and Providian Financial Corporation.

xvii.    Wells Fargo & Company (and as successor to Wachovia Corporation) and Wells Fargo Bank, N.A. (and as successor to Wachovia Bank, N.A.).

xviii.   Each and every entity or person alleged to be a co-conspirator of any Defendant in any of the complaints in the Action.

xix.     Each of the past, present, or future member or customer financial institutions of Visa U.S.A. Inc., Visa International Service Association, Visa Inc., Visa Europe, Visa Europe Limited, Visa Europe Services, Inc., Mastercard International Incorporated, or Mastercard Incorporated.

xx.      For each of the entities or persons in Paragraphs b(i)-(xix) above, each of their respective past, present, and future, direct and indirect, parents (including holding companies), subsidiaries, affiliates, and associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), or any other entity in which more than 50% of the equity interests are held.

xxi.     For each of the entities or persons in Paragraphs b(i)-(xx) above, each of their respective past, present, and future predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of any of the Defendants to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs b(i)-(xx) above).

xxii.    For each of the entities or persons in Paragraphs b(i)-(xxi) above, each of their respective past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, estates, shareholders, advisors, predecessors, successors, purchasers, and assigns (including acquirers of all or substantially all of the assets, stock, or other ownership interests of each of the foregoing entities to the extent a successor's, purchaser's, or acquirer's liability is based on the Rule 23(b)(2) Class Released Parties as defined in Paragraphs b(i)-(xxi) above).

c.    In addition to the effect of the Rule 23(b)(2) Class Settlement Order and Final Judgment entered in accordance with the Rule 23(b)(2) Class Settlement Agreement, including but not limited to any *res judicata* effect, and except as provided herein in Paragraphs f and i below:

i.    The Rule 23(b)(2) Class Releasing Parties hereby expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Rule 23(b)(2) Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, *parens patriae*, or otherwise in nature, to the extent that they seek any form of declaratory, injunctive, or equitable relief, or attorneys' fees, costs, expenses, or interest, to the extent such fees, costs, expenses, or interest are related to those claims, demands, actions, suits, and causes of action, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Class Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the Settlement Approval Date or accrue no later than five years after the commencement of the Average Effective Rate Limit, arising out of or relating to any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Class Released Party that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act.  For avoidance of doubt, this release shall extend to, but only to, the fullest extent permitted by federal law.

ii.    It is expressly agreed, for purposes of clarity, that any claims that seek any form of declaratory, injunctive, or equitable relief arising out of or relating to any of the following conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act are claims that were or could have been alleged in this Action and relate to the subject matter thereof:

I.    any interchange fees, interchange rates, or any Rule of any Visa Defendant or Mastercard Defendant relating to interchange fees, interchange rates, or to the setting of interchange fees or interchange rates with respect to any Visa-Branded Card transactions in the United States or any Mastercard-Branded Card transactions in the United States;

II.    any Merchant Fee of any Rule 23(b)(2) Class Released Party relating to any Visa-Branded Card transactions in the United States or any Mastercard-Branded transactions in the United States;

III.    any actual or alleged "no surcharge" rules, "honor all cards" rules, "honor all issuers" rules, "honor all devices" rules, rules requiring the honoring of all credentials or accounts, "no minimum purchase" rules, "no discounting" rules, "non-discrimination" rules, "anti-steering" rules, rules that limit merchants in favoring or steering customers to use certain payment systems, "all outlets" rules, "no bypass" rules, "no multi-issuer" rules, "no multi-bug" rules, routing rules, cross-border acquiring rules, card authentication or cardholder verification rules, "cardholder

selection" rules or requirements, PAVD rules, rules or conduct relating to routing options regarding acceptance technology for mobile, e-commerce, or online payments, or development and implementation of tokenization standards;

IV.     any reorganization, restructuring, initial or other public offering, or other corporate structuring of any Visa Defendant or Mastercard Defendant;

V.     any service of an employee or agent of any Rule 23(b)(2) Class Released Party on any board or committee of any Visa Defendant or Mastercard Defendant; or

VI.     any actual or alleged agreement (or alleged continued participation therein) (A) between or among any Visa Defendant and any Mastercard Defendant, (B) between or among any Visa Defendant or Mastercard Defendant and any other Rule 23(b)(2) Class Released Party or Parties, or (C) between or among any Defendant or Rule 23(b)(2) Class Released Party or Parties, relating to I-V above or to any Rule 23(b)(2) Class Released Party's imposition of, compliance with, or adherence to I-V above.

iii.     For purposes of clarity, references to the Rules identified in this Paragraph mean those Rules as they are or were in place on December 18, 2020 and up to the Settlement Approval Date, Rules as they may be modified in the manner provided in the Rule 23(b)(2) Class Settlement Agreement, and Rules in place thereafter that are substantially similar to those Rules.

d.     Each Rule 23(b)(2) Class Releasing Party further expressly and irrevocably waives, and fully, finally, and forever settles and releases, any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in the preceding Paragraphs a-c. Without limiting the generality of the foregoing, each Rule 23(b)(2) Class Releasing Party expressly and irrevocably waives and releases any and all defenses, rights, and benefits that the Rule 23(b)(2) Class Releasing Party might otherwise have in relation to the release by virtue of the provisions of California Civil Code Section 1542 or similar laws of any other state or jurisdiction.  SECTION 1542 PROVIDES:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."  In addition, although each Rule 23(b)(2) Class Releasing Party may hereafter discover facts other than, different from, or in addition to those that it or he or she knows or believes to be true with respect to any claims released in the preceding Paragraphs a-c, each Rule 23(b)(2) Class Releasing Party hereby expressly and irrevocably waives, and fully, finally, and forever settles, discharges, and releases, any known or unknown, suspected or unsuspected, contingent or non-contingent claims within the scope of the preceding Paragraphs a-c, whether or not concealed or hidden, and without regard to the subsequent discovery or existence of such other, different, or additional facts.  Rule 23(b)(2) Class Plaintiffs

acknowledge, and the members of the Rule 23(b)(2) Class shall be deemed by operation of the Rule 23(b)(2) Class Settlement Order and Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Rule 23(b)(2) Class Settlement Agreement.

e.      The release in Paragraphs a-d above does not bar an investigation or action, whether denominated as *parens patriae*, law enforcement, or regulatory, by a state, quasi-state, or local governmental entity to vindicate sovereign or quasi-sovereign interests.

f.      Notwithstanding anything to the contrary in Paragraphs a-e above, the release in Paragraphs a-e above shall not release:

i.      Any claim of a Rule 23(b)(2) Class Releasing Party that is based on standard commercial disputes arising in the ordinary course of business under contracts or commercial relations regarding loans, lines of credit, or other related banking or credit relations, individual chargeback disputes, products liability, breach of warranty, misappropriation of cardholder data or invasion of privacy, compliance with technical specifications for a merchant's acceptance of Visa-Branded Credit Cards or Debit Cards, or Mastercard-Branded Credit Cards or Debit Cards, and any other dispute arising out of a breach of any contract between any of the Rule 23(b)(2) Class Releasing Parties and any of the Rule 23(b)(2) Class Released Parties; provided, however, that Paragraphs a-e above and not this Paragraph shall control in the event that any such claim challenges the legality of interchange rules, interchange rates, or interchange fees, or any other Rule, fee, charge, or other conduct covered by any of the claims released in Paragraphs a-e above.

ii.     Claims based only on an injury suffered as (i) a payment card network competitor of the Visa Defendants or the Mastercard Defendants, or (ii) an ATM operator that is not owned by, or directly or indirectly controlled by, one or more of the Rule 23(b)(2) Class Released Parties.

iii.    Any claim of a Rule 23(b)(2) Class Releasing Party seeking monetary damages but not any form of declaratory, injunctive, or equitable relief with respect to the claims released herein.

g.      Upon the Settlement Approval Date each of the Rule 23(b)(2) Class Releasing Parties agrees and covenants not to:  (a) sue any of the Rule 23(b)(2) Class Released Parties on the basis of any claim released herein; (b) assist any third party in commencing or maintaining any private civil lawsuit against any Rule 23(b)(2) Class Released Party related in any way to any claim released herein; or (c) take any action or make any claim until five years after the commencement of the Average Effective Rate Limit that a Rule 23(b)(2) Class Released Party has continued to participate in, and failed to withdraw from, any alleged unlawful conspiracies or agreements relating to the claims released herein, which allegedly arise from or relate to the pre-IPO structure or governance of any of the Visa Defendants or the pre-IPO structure or governance of any of the Mastercard Defendants, or any Bank Defendant's participation therein.  For the

avoidance of doubt, however, nothing in this Paragraph shall preclude a Rule 23(b)(2) Class Releasing Party from taking any action compelled by law or court order.

h.      Each Rule 23(b)(2) Class Releasing Party further releases each of the Visa Defendants, Mastercard Defendants, and Bank Defendants and their counsel and experts in this Action from any claims that seek any form of declaratory, injunctive, or equitable relief relating to the defense and conduct of this Action, including the negotiation and terms of the Rule 23(b)(2) Class Settlement Agreement or any other settlement agreement in this Action, except for any claims relating to enforcement of the Rule 23(b)(2) Class Settlement Agreement.  Each Rule 23(b)(2) Class Releasing Party releases the Rule 23(b)(2) Class Plaintiffs, Rule 23(b)(2) Class Counsel, and their respective experts in *Barry's*, from any claims relating to their institution or prosecution of *Barry's*, including the negotiation and terms of the Rule 23(b)(2) Class Settlement Agreement, except for any claims relating to enforcement of the Rule 23(b)(2) Class Settlement Agreement.

i.      For purposes of clarity, it is specifically intended for the release and covenant not to sue provisions of the Rule 23(b)(2) Settlement Agreement to preclude all members of the Rule 23(b)(2) Class from seeking or obtaining any form of declaratory, injunctive, or equitable relief with respect to the claims released herein until five years after the commencement of the Average Effective Rate Limit with respect to any Rule of any Visa Defendant or any Mastercard Defendant in effect between December 18, 2020 and the Settlement Approval Date, and the compliance by any Bank Defendant with any such Rule, as it is alleged to exist, now exists, may be modified in the manner provided in the Rule (23)(b)(2) Class Settlement Agreement, or may in the future exist in the same or substantially similar form thereto.

j.      In the event that the Rule 23(b)(2) Class Settlement Agreement is terminated pursuant to Paragraphs 102-103 of the Rule 23(b)(2) Class Settlement Agreement, or any condition for the Settlement Approval Date is not satisfied, the release and covenant not to sue provisions of Paragraphs a-h above shall be null and void and unenforceable.

9.      All members of the Rule 23(b)(2) Class, and those subject to their control, are hereby enjoined and forever barred from commencing, maintaining, participating in, assisting any third party in commencing or maintaining any private civil lawsuit, or permitting another to commence, maintain, or participate in on their behalf, any claims released against Rule 23(b)(2) Class Released Parties.

10.     Without affecting the finality of this judgment in any way, and as further provided in Paragraphs 105-109 of the Rule 23(b)(2) Class Settlement Agreement, this Court hereby retains continuing and exclusive jurisdiction in MDL 1720 over the Rule 23(b)(2) Class

Plaintiffs, the members of the Rule 23(b)(2) Class, and the Defendants to implement, administer, consummate, and enforce the Rule 23(b)(2) Class Settlement Agreement and this Class Settlement Order and Final Judgment, including any disputes relating to, or arising out of, the release and covenant not to sue of the Rule 23(b)(2) Class or any claim concerning declaratory, injunctive, or equitable relief with respect to any by-law, rule, operating regulation, practice, policy, or procedure of any Visa Defendant or Mastercard Defendant.  The Court's implementation and administration of the Rule 23(b)(2) Class Settlement Agreement shall include, without limitation, the receipt and review of information provided to the Court by the Independent Auditor, as specified in the Rule 23(b)(2) Class Settlement Agreement.

11.      The Rule 23(b)(2) Class Plaintiffs, members of the Rule 23(b)(2) Class, and the Defendants irrevocably submit to the exclusive jurisdiction of this Court for the resolution of any matter covered by this Class Settlement Order and Final Judgment, or the applicability of the Rule 23(b)(2) Class Settlement Agreement or this Class Settlement Order and Final Judgment. All applications to the Court with respect to any aspect of the Rule 23(b)(2) Class Settlement Agreement or this Class Settlement Order and Final Judgment shall be presented to and determined by United States District Court Judge Margo K. Brodie for resolution as a matter within the scope of MDL 1720, or, if she is not available, any other District Court Judge designated by the Court.

12.      In the event that the provisions of this Class Settlement Order and Final Judgment are asserted by any Defendant or Rule 23(b)(2) Class Released Party as a ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection in any other suit, action, or proceeding by a Rule 23(b)(2) Class Plaintiff or member of the Rule 23(b)(2) Class, the Rule 23(b)(2) Class Released Parties shall be entitled to an immediate stay of that suit, action, or proceeding until after this Court has entered an order or judgment

determining any issues relating to the defense or objections based on such provisions, and no further judicial review of such order or judgment is possible.

13.     This Class Settlement Order and Final Judgment terminates and dismisses with prejudice any and all claims for declaratory, injunctive, and equitable relief released herein against any of the Defendants and any of the Rule 23(b)(2) Class Released Parties in *Barry's* and in all other putative class and individual actions consolidated in MDL 1720 and listed in Appendix A to the Rule 23(b)(2) Class Settlement Agreement.  There is no just reason for delay in entering final judgment.  The Court hereby directs the Clerk to enter judgment forthwith in accordance with the terms of this Class Settlement Order and Final Judgment, which judgment shall be final and appealable.

DATED: _____     _____
                                       THE HONORABLE MARGO K. BRODIE
                                       UNITED STATES DISTRICT JUDGE

**APPENDIX G – Section IV of Final Judgment in *United States v. American Express Co., et al.*, No. 10-CV-04496 (E.D.N.Y.) (NGG) (RER), as modified**

## II.     PROHIBITED CONDUCT

A.     ~~The purpose of this Section IV is to allow Merchants to attempt to influence the General Purpose Card or Form of Payment Customers select by providing choices and information in a competitive market. This Final Judgment should be interpreted to promote such efforts and not limit them. Accordingly, n~~Neither Mastercard nor Visa shall adopt, maintain, or enforce any Rule, or enter into or enforce any agreement that directly or indirectly prohibits, prevents, or restrains any Merchant in the United States from

1.     offering the Customer a discount or rebate, including an immediate discount or rebate at the point of sale, if the Customer uses a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~, a particular Form of Payment, or a General Purpose Card of a Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a Form of Payment other than the General Purpose Card the Customer initially presents;

2.     offering a free or discounted product if the Customer uses a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~, a particular Form of Payment, or a General Purpose Card of a Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a Form of Payment other than the General Purpose Card the Customer initially presents;

3.     offering a free or discounted or enhanced service if the Customer uses a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~, a particular Form of Payment, or a General Purpose Card of a Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a Form of Payment other than the General Purpose Card the Customer initially presents;

4.      offering the Customer an incentive, encouragement, or benefit for using a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~, a particular Form of Payment, or a General Purpose Card of a Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a Form of Payment other than the General Purpose Card the Customer initially presents;

5.      expressing a preference for the use of a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a particular Form of Payment;

6.      promoting the use of General Purpose Cards of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a particular Form or Forms of Payment through posted information, through the size, prominence, or sequencing of payment choices, or through other communications to a Customer;

7.      communicating to a Customer the reasonably estimated or actual costs incurred by the Merchant when a Customer uses a General Purpose Card of a particular Brand, ~~or~~ Type, or Issuing Bank ~~of General Purpose Card~~ or a particular Form of Payment or the relative costs of using General Purpose Cards of different Brands, ~~or~~ Types, or Issuing Banks ~~of General Purpose Cards~~ or different Forms of Payment; or

8.      engaging in any other practices substantially equivalent to the practices described in Sections IV.A.1 through IV.A.7 of this Final Judgment.

B.      Subject to compliance with the antitrust laws, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and any other applicable state or federal law, nothing in this Final Judgment shall prohibit Mastercard or Visa from

       1.       enforcing existing agreements or entering into agreements pursuant to which a Merchant selects General Purpose Cards bearing the Defendant's Brand as the only General Purpose Cards the Merchant will accept as payment for goods and services;

       2.       enforcing existing agreements or entering into agreements pursuant to which a Merchant agrees that it will encourage Customers to use co-branded or affinity General Purpose Cards bearing both the Defendant's Brand and the co-brand or affinity partner's name, logo, or brand as payment for goods and services and will not encourage Customers to use General Purpose Cards bearing the Brand of any other General Purpose Card Network;

       3.       enforcing existing agreements or entering into agreements pursuant to which a Merchant agrees (i) that it will encourage Customers, through practices enumerated in Sections IV.A.1 through IV.A.8 of this Final Judgment, to use General Purpose Cards bearing the Defendant's Brand as payment for goods and services, and (ii) that it will not use one or more practices enumerated in Sections IV.A.1 through IV.A.8 of this Final Judgment to encourage Customers to use General Purpose Cards bearing any other Person's Brand as payment for goods and services; *provided that* (a) any such agreement is individually negotiated with the Merchant and is not a standard agreement or part of a standard agreement generally offered by the Defendant to multiple Merchants, and (b) the Merchant's acceptance of the Defendant's General Purpose Cards as payment for goods and services is unrelated to and not conditioned upon the Merchant's entry into any such agreement.;

       4.       adopting, maintaining, and enforcing Rules that prohibit Merchants from encouraging Customers to pay for goods or services using one of its General Purpose Cards issued by one particular Issuing Bank rather than by another of its General Purpose Cards issued by any other Issuing Bank, except as provided in Section IV.A of this Final Judgment.

C.      Subject to Section IV.A of this Final Judgment, nothing in this Final Judgment shall prohibit Mastercard or Visa from adopting, maintaining, and enforcing Rules that prohibit Merchants from disparaging its Brand.

D.      Neither Mastercard nor Visa shall adopt, maintain, or enforce any Rule, or enter into or enforce any agreement, that prohibits, prevents, restrains, deters, or inhibits an Acquiring Bank from supplying a Merchant, on a transaction-by-transaction or other basis, information regarding the costs or fees the Merchant would incur in accepting a General Purpose Card, including a particular Type of General Purpose Card, presented by the Customer as payment for that Customer's transaction.

## <u>APPENDIX H – Counsel Names and Contact Information</u>

### <u>Co-Lead Counsel for Rule 23(b)(2) Class Plaintiffs</u>

Robert G. Eisler
Deborah A. Elman
Chad B. Holtzman
Grant & Eisenhofer P.A.
485 Lexington Ave., 29th Floor
New York, NY 10017
Phone: 646-722-8500
reisler@gelaw.com
delman@gelaw.com
choltzman@gelaw.com

Linda P. Nussbaum
Susan R. Schwaiger Nussbaum Law Group, P.C.
1133 Avenue of the Americas, 31st Floor
New York, NY 10036-6710
Phone: 917-438-9189
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com

Steve D. Shadowen
Richard M. Brunell
Hilliard & Shadowen LLP
1717 W. 6th St., Suite 370
Austin, TX 78703
Phone: 855-344-3298
steve@hilliardshadowenlaw.com
rbrunell@hilliardshadowenlaw.com

Michael J. Freed
Robert J. Wozniak
Brian M. Hogan
Freed Kanner London & Millen LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Phone: 224-632-4500
mfreed@fklmlaw.com
rwozniak@fklmlaw.com
bhogan@fklmlaw.com

**Attorneys for the Visa Defendants**

Robert J. Vizas
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, Seventh Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3100
robert.vizas@aporter.com

Anne P. Davis
Matthew A. Eisenstein
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: 202-942-5000
anne.davis@arnoldporter.com
matthew.eisenstein@arnoldporter.com

Michael S. Shuster
Demian A. Ordway
Blair E. Kaminsky
Holwell Shuster & Goldberg LLP
425 Lexington Avenue
New York, NY 10017
Telephone: 646-837-5151
mshuster@hsgllp.com
dordway@hsgllp.com
bkaminsky@hsgllp.com

**Attorneys for the Mastercard Defendants**

Kenneth A. Gallo
Donna M. Ioffredo
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, N.W.
Washington, DC 20006-1047
Telephone: 202-223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

Gary R. Carney
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: 212-373-3000
gcarney@paulweiss.com

## APPENDIX I – VISA APPLICABLE CREDIT INTERCHANGE RATES
## AS OF DECEMBER 31, 2023

### A    Visa U.S.A. Consumer Credit Interchange Reimbursement Fees

| Fee Program | Visa Infinite Spend Qualified | Visa Infinite Spend Not Qualified | Visa Signature Preferred | Visa Signature | Traditional Rewards | All Other Products |
|---|---|---|---|---|---|---|
| Supermarket Credit—Tier* 0 | 1.65% + $0.05 | 1.55% + $0.05 | 1.65% + $0.05 | 1.55% + $0.05 | 1.18% + $0.05 | 1.18% + $0.05 |
| Supermarket Credit—Tier* I | 1.65% + $0.05 | 1.55% + $0.05 | 1.65% + $0.05 | 1.55% + $0.05 | 1.20% + $0.05 | 1.20% + $0.05 |
| Supermarket Credit—Tier* II | 1.65% + $0.05 | 1.55% + $0.05 | 1.65% + $0.05 | 1.55% + $0.05 | 1.22% + $0.05 | 1.22% + $0.05 |
| Supermarket Credit—Tier* III | 1.75% + $0.05 | 1.60% + $0.05 | 1.75% + $0.05 | 1.60% + $0.05 | 1.22% + $0.05 | 1.22% + $0.05 |
| Supermarket Credit—All Other | 2.00% + $0.07 | 1.65% + $0.07 | 2.00% + $0.07 | 1.65% + $0.07 | 1.50% + $0.07 | 1.50% + $0.07 |
| Retail Credit-Performance Threshold* I | 2.30% + $0.10 | 1.90% + $0.10 | 2.10% + $0.10 | 1.65% + $0.10 | 1.43% + $0.10 | 1.43% + $0.10 |
| Retail Credit-Performance Threshold* II | 2.30% + $0.10 | 1.90% + $0.10 | 2.10% + $0.10 | 1.65% + $0.10 | 1.47% + $0.10 | 1.47% + $0.10 |
| Retail Credit-Performance Threshold* III | 2.30% + $0.10 | 1.90% + $0.10 | 2.10% + $0.10 | 1.65% + $0.10 | 1.51% + $0.10 | 1.51% + $0.10 |
| Small Merchant Product 2 | 1.88% + $0.10 | 1.43% + $0.10 | 1.88% + $0.10 | 1.43% + $0.10 | 1.43% + $0.10 | 1.29% + $0.10 |
| Product 2 | 2.30% + $0.10 | 1.90% + $0.10 | 2.10% + $0.10 | 1.65% + $0.10 | 1.65% + $0.10 | 1.51% + $0.10 |
| Small Ticket | 2.20% (min. $0.04) | 2.20% (min. $0.04) | 2.20% (min. $0.04) | 2.20% (min. $0.04) | 1.90% (min. $0.04) | 1.90% (min. $0.04) |
| Small Merchant CPS/Recurring Payments MCCs: 4814 (Telco); 4899 (Cable) | 2.20% + $0.05 | 1.43% + $0.05 | 2.20% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| CPS/Recurring Payments MCCs: 4814 (Telco); 4899 (Cable) | 2.20% + $0.05 | 1.43% + $0.05 | 2.20% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| CPS/Recurring Payments – Non-Tokenized MCCs: 4814 (Telco); 4899 (Cable) | 2.30% + $0.05 | 1.53% + $0.05 | 2.30% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 |
| Small Merchant Insurance | 2.25% + $0.10 | 1.43% + $0.05 | 2.25% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |

| Fee Program | Visa Infinite Spend Qualified | Visa Infinite Spend Not Qualified | Visa Signature Preferred | Visa Signature | Traditional Rewards | All Other Products |
|---|---|---|---|---|---|---|
| Insurance | 2.25% + $0.10 | 1.43% + $0.05 | 2.25% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Insurance – Non-Tokenized | 2.35% + $0.10 | 1.53% + $0.05 | 2.35% + $0.10 | 1.53% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 |
| Small Merchant Services | 2.30% + $0.10 | 1.85% + $0.10 | 2.30% + $0.10 | 1.85% + $0.10 | 1.70% + $0.10 | 1.55% + $0.10 |
| Services applies to transactions >=$100 | 2.30% + $0.10 | 1.85% + $0.10 | 2.30% + $0.10 | 1.85% +$0.10 | 1.70% + $0.10 | 1.55% + $0.10 |
| Services – Non-Tokenized applies to transactions >=$100 | 2.40% + $0.10 | 1.95% + $0.10 | 2.40% + $0.10 | 1.95% + $0.10 | 1.80% + $0.10 | 1.65% + $0.10 |
| Small Merchant Education | 2.15% + $0.10 | 1.43% + $0.05 | 2.15% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Education applies to transactions >=$500 | 2.15% + $0.10 | 1.43% + $0.05 | 2.15% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Education – Non-Tokenized applies to transactions >=$500 | 2.25% + $0.10 | 1.53% + $0.05 | 2.25% + $0.10 | 1.53% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 |
| Small Merchant Healthcare | 2.30% + $0.10 | 1.43% + $0.05 | 2.30% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Healthcare applies to transactions >=$500 | 2.30% + $0.10 | 1.43% + $0.05 | 2.30% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Healthcare – Non-Tokenized applies to transactions >=$500 | 2.40% + $0.10 | 1.53% + $0.05 | 2.40% + $0.10 | 1.53% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 |
| Small Merchant Real Estate | 2.15% + $0.10 | 1.43% + $0.05 | 2.15% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Real Estate applies to transactions >=$500 | 2.15% + $0.10 | 1.43% + $0.05 | 2.15% + $0.10 | 1.43% + $0.05 | 1.43% + $0.05 | 1.43% + $0.05 |
| Real Estate – Non-Tokenized applies to transactions >=$500 | 2.25% + $0.10 | 1.53% + $0.05 | 2.25% + $0.10 | 1.53% + $0.05 | 1.53% + $0.05 | 1.53% + $0.05 |
| Small Merchant Advertising | 2.30% + $0.10 | 1.75% + $0.10 | 2.30% + $0.10 | 1.75% + $0.10 | 1.70% + $0.10 | 1.55% + $0.10 |
| Advertising | 2.30% + $0.10 | 1.75% + $0.10 | 2.30% + $0.10 | 1.75% + $0.10 | 1.70% + $0.10 | 1.55% + $0.10 |
| Advertising – Non-Tokenized | 2.40% + $0.10 | 1.85% + $0.10 | 2.40% + $0.10 | 1.85% + $0.10 | 1.80% + $0.10 | 1.65% + $0.10 |
| CPS/Charity and Religious Organizations | 1.35% + $0.05 | 1.35% + $0.05 | 1.35% + $0.05 | 1.35% + $0.05 | 1.35% + $0.05 | 1.35% + $0.05 |
| CPS/Government | 1.55% + $0.10 | 1.55% + $0.10 | 1.55% + $0.10 | 1.55% + $0.10 | 1.55% + $0.10 | 1.55% + $0.10 |
| Fuel | 1.15% + $0.25 ($1.10 Cap) | 1.15% + $0.25 ($1.10 Cap) | 1.15% + $0.25 ($1.10 Cap) | 1.15% + $0.25 ($1.10 Cap) | 1.15% + $0.25 ($1.10 Cap) | 1.15% + $0.25 ($1.10 Cap) |
| Service Station and Government Small Ticket | n/a | 1.65% + $0.04 | n/a | 1.65% + $0.04 | 1.65% + $0.04 | 1.65% + $0.04 |
| CPS/Utility | $0.75 | $0.75 | $0.75 | $0.75 | $0.75 | $0.75 |
| Travel | 2.55% + $0.10 | 2.25% + $0.10 | 2.40% + $0.10 | 2.25% + $0.10 | 1.95% + $0.10 | 1.75% + $0.10 |

| Fee Program | Visa Infinite Spend Qualified | Visa Infinite Spend Not Qualified | Visa Signature Preferred | Visa Signature | Traditional Rewards | All Other Products |
|---|---|---|---|---|---|---|
| Small Merchant Taxi | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.10% (min. $0.04) | 2.10% (min. $0.04) |
| Taxi 2** | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.10% (min. $0.04) | 2.10% (min. $0.04) |
| Taxi 1 | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.20% (min. $0.08) | 2.20% (min. $0.08) |
| Small Merchant Restaurant | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.10% (min. $0.04) | 2.10% (min. $0.04) |
| Restaurant 2*** | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.60% (min. $0.04) | 2.10% (min. $0.04) | 2.10% (min. $0.04) |
| Restaurant 1 | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.70% (min. $0.08) | 2.20% (min. $0.08) | 2.20% (min. $0.08) |
| Small Merchant Product 1 | 2.18% + $0.10 | 1.73% + $0.10 | 2.18% + $0.10 | 1.73% + $0.10 | 1.73% + $0.10 | 1.58% + $0.10 |
| Product 1 Tokenized | 2.50% + $0.10 | 2.10% + $0.10 | 2.40% + $0.10 | 1.95% + $0.10 | 1.95% + $0.10 | 1.80% + $0.10 |
| Product 1 | 2.60% + $0.10 | 2.20% + $0.10 | 2.50% + $0.10 | 2.05% + $0.10 | 2.04% + $0.10 | 1.89% + $0.10 |
| Consumer Bill Payment Service, Consumer Credit | 2.60% + $0.10 | 2.20% + $0.10 | 2.50% + $0.10 | 2.05% + $0.10 | 2.04% + $0.10 | 1.89% + $0.10 |
| Non-Qualified Consumer Credit | 3.15% + $0.10[1] | 3.15% + $0.10[1] | 3.15% + $0.10[1] | 3.15% + $0.10[1] | 3.15% + $0.10[1] | 3.15% + $0.10[1] |

Note: Fees in this table are listed in U.S. dollars; fees are paid to cardholder financial institutions.
* See page I-4 for performance threshold criteria.
** Taxi 1 transactions that are tokenized may also qualify for this rate.
*** Restaurant 1 transactions that are tokenized may also qualify for this rate.
[1] Non-Qualified Consumer Credit transactions from AFDs and service stations are eligible for a US $1.10 cap.

## B   Visa U.S.A. Credit Performance Threshold Criteria For Retail, Supermarket, and Small Merchant Categories

| Retail Performance Thresholds** | Transaction Minimum | Volume Minimum | Maximum Dispute Financials Ratio* | PCI Compliance |
|---|---|---|---|---|
| Threshold I | 118.7 million | $8.21 billion | 0.020% | ✓ |
| Threshold II | 76.7 million | $4.39 billion | 0.020% | ✓ |
| Threshold III | 17.1 million | $995 million | 0.020% | ✓ |

| Supermarket Performance Tiers** | Transaction Minimum | Volume Minimum | Maximum Dispute Financials Ratio* | PCI Compliance |
|---|---|---|---|---|
| Tier 0 | 416.5 million | $22.05 billion | 0.020% | ✓ |
| Tier I | 149.0 million | $11.98 billion | 0.020% | ✓ |
| Tier II | 81.5 million | $4.73 billion | 0.020% | ✓ |
| Tier III | 18.6 million | $1.07 billion | 0.020% | ✓ |

* Dispute Financials ratio calculated as a percentage of a merchant's gross transaction count.

| Small Merchant Category | Volume Maximum |
|---|---|
| Gross Visa Consumer Credit Sales ** | $280,000 |

** based on 12 months of Visa system activity ending September 30 of each year and applicable upon Visa's Business Enhancement Release the April immediately thereafter

Please reference *U.S. Interchange Reimbursement Fee Rate Qualification Guide* for complete details on performance threshold criteria.

## C    Visa U.S.A. Corporate and Purchasing Interchange Fees

| Fee Program | Purchasing* & Corporate T&E |
|---|---|
| Commercial Level III | 1.90% + $0.10 |
| Commercial Level II – Fuel | 2.20% + $0.10 |
| Commercial Level II | 2.50% + $0.10 |
| Commercial Card Present | 2.50% + $0.10 |
| Commercial Travel Service | 2.65% + $0.10 |
| Commercial Card Not Present | 2.70% + $0.10 |
| Consumer Bill Payment Service, Commercial | 2.70% + $0.10 |
| Non-Qualified | 2.95% + $0.10 |
| Non-Qualified with Data | 2.95% + $0.10 |
| Commercial Product Large Ticket | 1.45% + $35.00 |

\* Includes Fleet cards

| Fee Program | Purchasing Only |
|---|---|
| Government-to-Government (G2G) | 1.65% + $0.10 |
| GSA Large Ticket | 1.20% + $39.00 |

| Straight Through Processing (STP) Fee Program | Applicable Interchange Rate |
|---|---|
| Tier 1 – Less than $7,000 | 2.00% + $0.10 |
| Tier 2 – $7,000 - $14,999.99 | 1.30% + $35.00 |
| Tier 3 - $15,000 - $49,999.99 | 1.10% + $35.00 |
| Tier 4 - $50,000 - $99,999.99 | 0.95% + $35.00 |
| Tier 5 - $100,000 and greater | 0.80% + $35.00 |

| Visa Large Purchase Advantage Fee Program | Applicable Interchange Rate |
|---|---|
| Card Present: All Ticket Sizes | Visa Purchasing card rates apply |
| Card Not Present: $10,000 or less | Visa Purchasing card rates apply |
| Card Not Present: $10,000.01 - $25,000 | 0.70% + $49.50 |
| Card Not Present: $25,000.01 - $100,000 | 0.60% + $52.50 |
| Card Not Present: $100,000.01 - $500,000 | 0.50% + $55.50 |
| Card Not Present: Greater than $500,000 | 0.40% + $58.50 |

## D   Visa U.S.A. Business Interchange Reimbursement Fees

| Business Credit Fee Program | Business Credit Spend Tier I | Business Credit Spend Tier II | Business Credit Spend Tier III | Business Credit Spend Tier IV | Business Credit Spend Tier V |
|---|---|---|---|---|---|
| Business Level II | 1.90% + $0.10 | 2.05% + $0.10 | 2.10% + $0.10 | 2.20% + $0.10 | 2.25% + $0.10 |
| Business Product 2 | 1.90% + $0.10 | 2.05% + $0.10 | 2.10% + $0.10 | 2.20% + $0.10 | 2.25% + $0.10 |
| Business Product 1 | 2.65% + $0.10 | 2.80% + $0.10 | 2.85% + $0.10 | 2.95% + $0.10 | 3.00% + $0.10 |
| Consumer Bill Payment Service, Business Credit | 2.65% + $0.10 | 2.80% + $0.10 | 2.85% + $0.10 | 2.95% + $0.10 | 3.00% + $0.10 |
| Business Travel | 2.35% + $0.10 | 2.50% + $0.10 | 2.55% + $0.10 | 2.65% + $0.10 | 2.70% + $0.10 |
| Business Non-Qualified | 3.15% + $0.20 | 3.15% + $0.20 | 3.15% + $0.20 | 3.15% + $0.20 | 3.15% + $0.20 |
| Business Utility Program | $1.50 | $1.50 | $1.50 | $1.50 | $1.50 |

## E   Visa U.S.A. Other Transactions Interchange Reimbursement Fees

| Credit Voucher Transaction Type | Rate |
|---|---|
| Passenger Transport Service Category—Credit | 2.33% |
| Non-Passenger Transport—Consumer Credit | 1.76% |
| Non-Passenger Transport—Corporate and Business Card | 2.35% |
| Mail/Phone Order and eCommerce Merchants—Consumer Credit | 2.05% |
| Non-Passenger Transport—Non GSA Purchasing $0 - $10,000 | 2.40% |
| Non-Passenger Transport—Non GSA Purchasing $10,000.01 - $25,000 | 2.30% |
| Non-Passenger Transport—Non GSA Purchasing $25,000.01 - $100,000 | 2.20% |
| Non-Passenger Transport—Non GSA Purchasing $100,000.01 - $500,000 | 2.00% |
| Non-Passenger Transport—Non GSA Purchasing $500,000.01 + | 1.80% |
| Non-Passenger Transport—GSA Purchasing $0 - $10,000 | 2.35% |
| Non-Passenger Transport—GSA Purchasing $10,000.01 - $25,000 | 2.15% |
| Non-Passenger Transport—GSA Purchasing $25,000.01 - $100,000 | 2.00% |
| Non-Passenger Transport—GSA Purchasing $100,000.01 + | 1.80% |

## F    Puerto Rico Consumer Credit Domestic Transactions Interchange Reimbursement Fees

The following table sets forth the interchange reimbursement fees applied on Visa financial transactions completed within Puerto Rico on Visa transactions originating at merchants acquired by Visa Puerto Rico clients on Visa cards issued by Visa Puerto Rico clients.

| Fee Program | Visa Classic, Visa Gold | Visa Platinum | Visa Signature / Visa Infinite Non-Spend Qualified | Visa Signature Preferred / Visa Infinite Spend Qualified |
|---|---|---|---|---|
| Gas Stations | 1.00% | 1.15% | 1.23% | 1.30% |
| Supermarket | 1.05% | 1.18% | 1.33% | 1.50% |
| Emerging and Small Ticket | 1.10% | 1.25% | 1.48% | 1.65% |
| Retail Group 1 | 1.35% | 1.95% | 2.10% | 2.40% |
| Retail Group 2 | 1.30% | 1.90% | 2.05% | 2.35% |
| Standard | 1.65% | 1.95% | 2.20% | 2.50% |

## APPENDIX J – MASTERCARD APPLICABLE CREDIT INTERCHANGE RATES
## AS OF DECEMBER 31, 2023

| A | U.S. Region Mastercard Consumer Credit Rates |
|---|---|

| Program Name | Core | Enhanced Value | World | World High Value | World Elite |
|---|---|---|---|---|---|
| **Airline** | N/A | N/A | N/A | 2.55% + 0.10 | 2.55% + 0.10 |
| **Charities** | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 |
| **Convenience Purchases Base** | 1.65% + 0.04 | 1.80% + 0.04 | 1.90% + 0.04 | 2.30% + 0.04 | 2.30% + 0.04 |
| **Convenience Purchases Tier I** | 1.35% + 0.00 | 1.35% + 0.00 | 1.45% + 0.00 | 1.60% + 0.00 | 1.60% + 0.00 |
| **Full UCAF** | 1.95% + 0.10 | 2.10% + 0.10 | 2.20% + 0.10 | 2.60% + 0.10 | 2.60% + 0.10 |
| **Key-entered** | 1.95% + 0.10 | 2.10% + 0.10 | 2.20% + 0.10 | 2.60% + 0.10 | 2.60% + 0.10 |
| **Lodging and Auto Rental** | 1.65% + 0.10 | 1.75% + 0.10 | N/A | N/A | N/A |
| **Merchant UCAF** | 1.95% + 0.10 | 2.10% + 0.10 | 2.20% + 0.10 | 2.60% + 0.10 | 2.60% + 0.10 |
| **Merit I** | 1.95% + 0.10 | 2.10% + 0.10 | 2.20% + 0.10 | 2.60% + 0.10 | 2.60% + 0.10 |

| **Merit I  (Insurance MCCs[1])** | 1.43% + 0.05 | 1.43% + 0.05 | 1.43% + 0.05 | 2.25% + 0.10 | 2.25% + 0.10 |
|---|---|---|---|---|---|
| **Merit I  (Real Estate MCCs[2])** | 1.43% + 0.05 | 1.43% + 0.05 | 1.43% + 0.05 | 2.20% + 0.10 | 2.20% + 0.10 |
| **Merit I  (Day Care MCCs[3])** | 1.60% + 0.10 | 1.60% + 0.10 | 1.60% + 0.10 | N/A | N/A |
| **Merit III Base** | 1.65% + 0.10 | 1.80% + 0.10 | 1.90% + 0.10 | 2.30% + 0.10 | 2.30% + 0.10 |
| **Merit III Tier 1** | 1.43% + 0.10 | 1.43% + 0.10 | 1.53% + 0.10 | 2.05% + 0.10 | 2.05% + 0.10 |
| **Merit III Tier 2** | 1.48% + 0.10 | 1.48% + 0.10 | 1.58% + 0.10 | 2.10% + 0.10 | 2.10% + 0.10 |

---

[1]  Applies to Insurance MCCs (5960 and 6300)

[2]  Applies to Real Estate MCC (6513)

[3]  Applies to Child Day Care Services MCC (8351)

| | | | | | |
|---|---|---|---|---|---|
| **Merit III Tier 3** | 1.55% + 0.10 | 1.55% + 0.10 | 1.65% + 0.10 | 2.15% + 0.10 | 2.15% + 0.10 |
| **Passenger Transport** | 1.65% + 0.10 | 1.75% + 0.10 | N/A | N/A | N/A |
| **Payment Transaction (Gaming Payments MCCs[4])** | 0.00% + 0.10 | 0.00% + 0.10 | 0.00% + 0.10 | 0.00% + 0.10 | 0.00% + 0.10 |
| **Payment Transaction** | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 |
| **Petroleum Base** | 1.90% + 0.00 (0.95 max) | 1.90% + 0.00 (0.95 max) | 2.00% + 0.00 (0.95 max) | 2.00% + 0.00 (0.95 max) | 2.00% + 0.00 (0.95 max) |
| **Public Sector** | 1.55% + 0.10 | 1.55% + 0.10 | 1.55% + 0.10 | 1.55% + 0.10 | 1.55% + 0.10 |
| **Restaurant** | N/A | N/A | 1.85% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 |
| **Service Industries** | 1.15% + 0.05 | 1.15% + 0.05 | 1.15% + 0.05 | 1.15% + 0.05 | 1.15% + 0.05 |
| **Small Ticket[5] Card Present** | 1.65% + 0.02 | 1.80% + 0.02 | 1.90% + 0.02 | 2.30% + 0.02 | 2.30% + 0.02 |
| **Small Ticket[5] Card-Not-Present** | 1.95% + 0.02 | 2.10% + 0.02 | 2.20% + 0.02 | 2.60% + 0.02 | 2.60% + 0.02 |
| **Standard** | 3.15% + 0.10 | 3.15% + 0.10 | 3.15% + 0.10 | 3.15% + 0.10 | 3.15% + 0.10 |
| **Supermarket Base** | 1.45% + 0.10 | 1.60% + 0.10 | 1.70% + 0.10 | 2.10% + 0.10 | 2.10% + 0.10 |
| **Supermarket Tier 1** | 1.15% + 0.05 | 1.15% + 0.05 | 1.25% + 0.05 | 1.25% + 0.05 | 1.25% + 0.05 |
| **Supermarket Tier 2** | 1.15% + 0.05 | 1.15% + 0.05 | 1.25% + 0.05 | 1.25% + 0.05 | 1.25% + 0.05 |
| **Supermarket Tier 3** | 1.22% + 0.05 | 1.22% + 0.05 | 1.32% + 0.05 | 1.32% + 0.05 | 1.32% + 0.05 |
| **T&E** | N/A | N/A | 2.25% + 0.10 | 2.55% + 0.10 | 2.55% + 0.10 |
| **T&E Large Ticket** | N/A | N/A | N/A | 2.55% + 0.00 | 2.55% + 0.00 |
| **Utilities** | 0.00% + 0.75 | 0.00% + 0.75 | 0.00% + 0.75 | 0.00% + 0.75 | 0.00% + 0.75 |
| **Consumer Credit Refund Group 1** | N/A | N/A | 2.30% + 0.00 | 2.30% + 0.00 | 2.30% + 0.00 |
| **Consumer Credit Refund Group 2** | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 |
| **Consumer Credit Refund Group 3** | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 |
| **Consumer Credit Refund Group 4** | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 |

---

[4]  Gaming and Lottery MCCs (7800 , 7801, 7802, 7994, and 7995)

[5]  New Small Ticket Ticket effective 21.Q2 Small Ticket rates will apply to transactions $5 and below.

| | | | | | |
|---|---|---|---|---|---|
| **Consumer Credit Refund Group 5** | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 | 1.75% + 0.00 |

## B     U.S. Region Mastercard Consumer Credit Tier Qualifying Criteria

| Tier[6] – Minimum Annual Consumer Credit Core Value, Enhanced Value, World, World High Value, and World Elite Volume | |
|---|---|
| **Merit III** | |
| Tier 1 | USD 1.80 billion |
| Tier 2 | USD 1.25 billion |
| Tier 3 | USD 750 million |
| **Supermarket** | |
| Tier 1 | USD 6.00 billion |
| Tier 2 | USD 2.00 billion |
| Tier 3 | USD 750 million |
| **Convenience Purchases** | |
| Tier 1[7] | USD 1.00 billion |

---

[6] The minimum annual Consumer Credit Core Value, Enhanced Value, World, World High Value, and World Elite volume is based on a merchant's October 2021 – September 2022 volume settled through the Global Clearing Management System (GCMS) that qualified for the Merit III, Supermarket, or the Convenience Purchase interchange programs and requires a Mastercard approved and assigned Merchant ID. Only retail and restaurant MCCs may qualify for Merit III Tier 1, 2, or 3.

[7] A merchant may also qualify for the Convenience Purchases tier if ALL the following requirements are met (1) Minimum annual Mastercard Consumer Credit volume of USD 75 million settled through GCMS that qualified for the Convenience Purchases interchange rate programs, (2) 60% of Mastercard Consumer Credit transactions are USD 20 or lower, (3) Merchant must offer Mastercard prepaid products (gift or reloadable), (4) Provide acceptance message at the point-of-sale (POS) AND (5) Not a tiered merchant for Consumer Credit Merit 3.

## C    U.S. Region Mastercard Commercial Rates – Small Business Credit

| Program Name | Level 1 / Business Core | Level 2 / Business Word | Level 3/ Business World Elite | Level 4 | Level 5 |
|---|---|---|---|---|---|
| Charities | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 | 2.00% + 0.10 |
| Data Rate I | 2.65% + 0.10 | 2.80% + 0.10 | 2.85% + 0.10 | 2.95% + 0.10 | 3.00% + 0.10 |
| Data Rate II | 1.90% + 0.10 | 2.05% + 0.10 | 2.10% + 0.10 | 2.20% + 0.10 | 2.25% + 0.10 |
| Payment Transaction | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 | 0.19% + 0.53 |
| Rebate | 0.00% + 0.00 | 0.00% + 0.00 | 0.00% + 0.00 | 0.00% + 0.00 | 0.00% + 0.00 |
| Standard | 2.95% + 0.10 | 3.10% + 0.10 | 3.15% + 0.10 | 3.25% + 0.10 | 3.30% + 0.10 |
| T&E Rate | 2.35% + 0.10 | 2.50% + 0.10 | 2.55% + 0.10 | 2.65% + 0.10 | 2.70% + 0.10 |
| Utilities | 0.00% + 1.50 | 0.00% + 1.50 | 0.00% + 1.50 | 0.00% + 1.50 | 0.00% + 1.50 |
| Commercial Refund Group 1 | 2.37% + 0.00 | 2.37% + 0.00 | 2.37% + 0.00 | 2.37% + 0.00 | 2.37% + 0.00 |
| Commercial Refund Group 2 | 2.30% + 0.00 | 2.30% + 0.00 | 2.30% + 0.00 | 2.30% + 0.00 | 2.30% + 0.00 |
| Commercial Refund Group 3 | 2.21% + 0.00 | 2.21% + 0.00 | 2.21% + 0.00 | 2.21% + 0.00 | 2.21% + 0.00 |
| Commercial Refund Group 4 | 2.16% + 0.00 | 2.16% + 0.00 | 2.16% + 0.00 | 2.16% + 0.00 | 2.16% + 0.00 |

## D    U.S. Region Mastercard Commercial Rates –Large Market Credit

| Program Name | Large Market Credit (USD) |
|---|---|
| Charities | 2.00% + 0.10 |
| Data Rate I | 2.70% + 0.10 |
| Data Rate II | 2.50% + 0.10 |
| Data Rate II (Petroleum MCCs) | 2.20% + 0.10 |
| Data Rate III | 1.90% + 0.10 |
| Large Ticket | 1.45% + 35.00 |
| Payment Transaction | 0.19% + 0.53 |
| Rebate | 0.00% + 0.00 |
| Standard | 2.95% + 0.10 |
| T&E Rate | 2.65% + 0.10 |
| Commercial Refund Group 1 | 2.37% + 0.00 |
| Commercial Refund Group 2 | 2.30% + 0.00 |
| Commercial Refund Group 3 | 2.21% + 0.00 |
| Commercial Refund Group 4 | 2.16% + 0.00 |

## E    U.S. Region Mastercard Commercial Rates – Commercial Payments Account

| Commercial Payments Account Transaction Amount | Rate (USD) |
|---|---|
| Less than USD 10,000.00 | Commercial rates apply |
| Large Ticket 1 (USD 10,000.00–25,000) | 1.20% |
| Large Ticket 2 (USD 25,000.01–100,000) | 1.00% |
| Large Ticket 3 (USD 100,000.01–500,000) | 0.90% |
| Large Ticket 4 (USD 500,000.01–1,000,000) | 0.80% |
| Large Ticket 5 (More than USD 1,000,000) | 0.70% |

| Bill Pay Commercial (BPC) | Rate (USD) |
|---|---|
| Commercial Bill Pay Standard | 2.50% + 0.10 |

## F    Puerto Rico Intracountry Mastercard Credit Rates

Transactions meeting interchange program criteria qualify for associated rates.

| IRD and Program Name | Rate (USD) |
|---|---|
| IRD 30—Puerto Rico Intracountry Petroleum–Core Consumer | 1.16% + 0.00 |
| IRD 30—Puerto Rico Intracountry Petroleum–Premium | 1.85% + 0.00 |
| IRD 30—Puerto Rico Intracountry Petroleum–Super Premium | 1.98% + 0.00 |
| IRD 30—Puerto Rico Intracountry Petroleum–Commercial | 2.00% + 0.00 |
| IRD 31—Puerto Rico Intracountry Warehouse–Core Consumer | 1.00% + 0.00 |
| IRD 31—Puerto Rico Intracountry Warehouse–Premium | 1.85% + 0.00 |
| IRD 31—Puerto Rico Intracountry Warehouse–Super Premium | 1.98% + 0.00 |
| IRD 31—Puerto Rico Intracountry Warehouse–Commercial | 2.00% + 0.00 |
| IRD 40—Puerto Rico Intracountry Government–Core Consumer | 1.65% + 0.00 |
| IRD 40—Puerto Rico Intracountry Government–Premium | 1.85% + 0.00 |
| IRD 40—Puerto Rico Intracountry Government–Super Premium | 1.98% + 0.00 |
| IRD 40—Puerto Rico Intracountry Government–Commercial | 2.00% + 0.00 |
| IRD 60—Puerto Rico Intracountry Supermarket–Core Consumer | 1.20% + 0.00 |
| IRD 60—Puerto Rico Intracountry Supermarket–Premium | 1.85% + 0.00 |
| IRD 60—Puerto Rico Intracountry Supermarket–Super Premium | 1.98% + 0.00 |
| IRD 60—Puerto Rico Intracountry Supermarket–Commercial | 2.00% + 0.00 |
| IRD 61, 62, 63, 67—Puerto Rico Intracountry Commercial | 2.37% + 0.00 |
| IRD 70—Puerto Rico Intracountry Emerging Markets–Core Consumer | 1.94% + 0.00 |
| IRD 70—Puerto Rico Intracountry Emerging Markets–Premium | 2.12% + 0.00 |
| IRD 70—Puerto Rico Intracountry Emerging Markets–Super Premium | 2.18% + 0.00 |
| IRD 70—Puerto Rico Intracountry Emerging Markets–Commercial | 2.37% + 0.00 |
| IRD 71—Puerto Rico Intracountry Utilities Markets–Core Consumer | 1.15% + 0.00 |
| IRD 71—Puerto Rico Intracountry Utilities Markets–Premium | 1.85% + 0.00 |

| | |
|---|---|
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Super Premium** | 1.98% + 0.00 |
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Commercial** | 2.00% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Core Consumer** | 1.16% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Premium** | 2.12% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Super Premium** | 2.18% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Commercial** | 2.37% + 0.00 |
| **IRD 73, 83—Puerto Rico Intracountry Core Consumer Electronic** <br><br> Transactions conducted with these cards that qualify for one of the other categories in this table are eligible for the lower interchange rate. | 1.73% + 0.00 |
| **IRD 75, 85, 95—Puerto Rico Intracountry Core Consumer Standard** <br><br> Transactions conducted with these cards that qualify for one of the other categories in this table are eligible for the lower interchange rate. | 1.73% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer** | 0.00% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer– Premium** | 1.85% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer–Super Premium** | 1.98% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer– Commercial** | 2.00% + 0.00 |
| **IRD ES—Puerto Rico Intracountry Super Premium** | 2.18% + 0.00 |
| **IRD MS—Puerto Rico Intracountry Consumer Mastercard MoneySend** | 2.12% + 0.00 |
| **IRD PS—Puerto Rico Intracountry Premium** | 2.12% + 0.00 |

## G    Puerto Rico Intracountry Mastercard Credit Rates for Digital First Transactions

Transactions meeting interchange program criteria qualify for associated rates.

| IRD and Program Name | Rate (USD) |
|---|---|
| **IRD 30—Puerto Rico Intracountry Petroleum–Core Consumer** | 1.26% + 0.00 |
| **IRD 30—Puerto Rico Intracountry Petroleum–Premium** | 1.95% + 0.00 |
| **IRD 30—Puerto Rico Intracountry Petroleum–Super Premium** | 2.08% + 0.00 |
| **IRD 30—Puerto Rico Intracountry Petroleum–Commercial** | 2.10% + 0.00 |
| **IRD 31—Puerto Rico Intracountry Warehouse–Core Consumer** | 1.10% + 0.00 |
| **IRD 31—Puerto Rico Intracountry Warehouse–Premium** | 1.95% + 0.00 |
| **IRD 31—Puerto Rico Intracountry Warehouse–Super Premium** | 2.08% + 0.00 |
| **IRD 31—Puerto Rico Intracountry Warehouse–Commercial** | 2.10% + 0.00 |
| **IRD 40—Puerto Rico Intracountry Government–Core Consumer** | 1.75% + 0.00 |
| **IRD 40—Puerto Rico Intracountry Government–Premium** | 1.95% + 0.00 |
| **IRD 40—Puerto Rico Intracountry Government–Super Premium** | 2.08% + 0.00 |
| **IRD 40—Puerto Rico Intracountry Government–Commercial** | 2.10% + 0.00 |
| **IRD 60—Puerto Rico Intracountry Supermarket–Core Consumer** | 1.30% + 0.00 |
| **IRD 60—Puerto Rico Intracountry Supermarket–Premium** | 1.95% + 0.00 |
| **IRD 60—Puerto Rico Intracountry Supermarket–Super Premium** | 2.08% + 0.00 |
| **IRD 60—Puerto Rico Intracountry Supermarket–Commercial** | 2.10% + 0.00 |
| **IRD 61, 62, 63, 67—Puerto Rico Intracountry Commercial** | 2.47% + 0.00 |
| **IRD 70—Puerto Rico Intracountry Emerging Markets–Core Consumer** | 2.04% + 0.00 |
| **IRD 70—Puerto Rico Intracountry Emerging Markets–Premium** | 2.22% + 0.00 |
| **IRD 70—Puerto Rico Intracountry Emerging Markets–Super Premium** | 2.28% + 0.00 |
| **IRD 70—Puerto Rico Intracountry Emerging Markets–Commercial** | 2.47% + 0.00 |
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Core Consumer** | 1.25% + 0.00 |

| | |
|---|---|
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Premium** | 1.95% + 0.00 |
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Super Premium** | 2.08% + 0.00 |
| **IRD 71—Puerto Rico Intracountry Utilities Markets–Commercial** | 2.10% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Core Consumer** | 1.26% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Premium** | 2.22% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Super Premium** | 2.28% + 0.00 |
| **IRD 72—Puerto Rico Intracountry Rapid Payments–Commercial** | 2.47% + 0.00 |
| **IRD 73, 83—Puerto Rico Intracountry Core Consumer Electronic**<br><br>Transactions conducted with these cards that qualify for one of the other categories in this table are eligible for the lower interchange rate. | 1.83% + 0.00 |
| **IRD 75, 85, 95—Puerto Rico Intracountry Core Consumer Standard**<br><br>Transactions conducted with these cards that qualify for one of the other categories in this table are eligible for the lower interchange rate. | 1.83% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer** | 0.00% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer– Premium** | 1.95% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer–Super Premium** | 2.08% + 0.00 |
| **IRD 76—Puerto Rico Intracountry Charities–Core Consumer– Commercial** | 2.10% + 0.00 |
| **IRD ES—Puerto Rico Intracountry Super Premium** | 2.28% + 0.00 |
| **IRD MS—Puerto Rico Intracountry Consumer Mastercard MoneySend** | 2.22% + 0.00 |
| **IRD PS—Puerto Rico Intracountry Premium** | 2.22% + 0.00 |