UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This Document Applies to:<br><br>*Barry's Cut Rate Stores, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM), also now known as *DDMB, Inc., et al. v. Visa, Inc., et al.*, No. 05-md-01720 (E.D.N.Y.) (MKB) (JAM). | No. 05-md-01720 (MKB) (JAM) |

**DECLARATION OF ERIC D. GREEN**

ERIC D. GREEN declares as follows pursuant to 28 U.S.C. § 1746:

1. I am a principal and co-founder of Resolutions LLC, an ADR firm located in Concord, Massachusetts, and I am a full-time professional Mediator. I am a retired Professor at the Boston University School of Law where for thirty years I taught negotiation, mediation, complex ADR processes, resolution of mass torts, constitutional law and evidence. I was also a visiting professor at Harvard Law School where I taught Evidence. I am a co-founder and principal of Resolutions, LLC. I previously co-founded JAMS/EnDispute and was a member of the Center for Public Resources Institute of Dispute Resolution virtually since its inception and have served on many of its panels and committees and spoken at numerous of its conferences and programs on mediation and ADR. I was a co-author with Professors Frank Sander and Stephen Goldberg of the first edition of *Dispute Resolution*, the first legal textbook on ADR, and have written numerous books and articles on dispute resolution and evidence. I maintain an active ADR/mediation practice for complex, legally-intensive disputes, including class actions such as the present dispute.

2. I have successfully mediated many high stakes cases, including the *United States v. Microsoft* antitrust case, prior Mastercard/Visa merchants' class action antitrust cases, portions of the Enron Securities class action cases, the Monsanto PCB cases in Alabama, the childhood and adult cancer cases in Toms River, New Jersey, numerous PFOA contamination cases, numerous large construction cases, including most of the disputes arising out of the design and construction of major league baseball and football stadiums, insurance coverage, intellectual property, international disputes, ERISA cases, and consumer cases. I have also mediated many complex, multi-party mass and class action cases involving horizontal and vertical price-fixing antitrust claims (such as the recent cases alleging wrongful information sharing and bid-rigging in the broilers, beef, and pork industries), mergers and acquisitions, contract disputes, patent disputes, securities fraud, shareholder derivative claims, accounting problems, mass torts, employment and

consumer claims, and opioid abatement claims by the fifty State Attorneys General, thousands of cities and countries, and hundreds of Tribes.

3. I am a 1968 Honors graduate of Brown University and graduated in 1972 from Harvard Law School, magna cum laude, where I was Executive Editor of the Harvard Law Review. I am a member of the bars of the states of California (inactive) and Massachusetts, the United States District Courts for the Northern and Central Districts of California and the District of Massachusetts, several Courts of Appeal, and the Supreme Court of the United States. Prior to teaching at Boston University School of Law, I clerked for the Hon. Benjamin Kaplan, Supreme Court of Massachusetts, and then was an associate and partner at Munger Tolles & Olson in Los Angeles.

4. I have delivered hundreds of lectures, panel discussions and training sessions on ADR and taught or supervised more than a thousand students in ADR while mediating more than a hundred cases a year for over 40 years. In 2001, I was awarded a Lifetime Achievement Award from the American College of Civil Trial Mediators. I was voted Boston's Lawyer of the Year for Alternative Dispute Resolution for 2011 based on my "particularly high level of peer recognition." In 2011, I received the rarely awarded James F. Henry Award for Outstanding Contributions to the field of ADR from The International Institute for Conflict Prevention & Resolution.

5. I was originally retained in 2009 by certain of the parties in the above-referenced matter (the "Interchange Litigation"), to serve, along with Hon. Edward J. Infante, as private Mediators to facilitate potential settlement discussions.

6. Initially I was asked to mediate the claims of the "Individual Plaintiffs" against Visa and Mastercard in light of an impasse that was occurring in settlement discussions between

Class Plaintiffs and Defendants. The first mediation session in which I was involved took place on April 30, 2009 in New York.

7. Since the time I first became involved with the Interchange Litigation, including during the period leading up to the initial settlement of which the Court was informed in June 2012, and then once again during the period following reversal of the initial class settlement by the United States Court of Appeals for the Second Circuit to the present, I conducted numerous mediation sessions and had dozens of separate meetings with counsel and representatives for the various parties. I worked extensively and in close coordination with Judge Infante as co-Mediator throughout this process.

8. This case has been extensively and vigorously litigated for years. After almost a decade of litigation, on December 13, 2013, the District Court granted final approval of the original settlement. However, following appeals, on June 30, 2016, the Second Circuit reversed and remanded the case.

9. After more litigation and the appointment of separate lead plaintiffs and counsel for the Rule 23(b)(2) and (b)(3) classes, mediation was recommenced in early 2017. Eventually, after numerous and lengthy mediation sessions, the Rule 23(b)(3) Class Plaintiffs and the Defendants reached a settlement agreement which was subsequently approved by the Court. The Rule 23(b)(2) Class Plaintiffs did not reach settlement with the Defendants at this time and the Rule 23(b)(2) litigation continued.

10. After the Rule 23(b)(3) settlement, I continued to mediate the Rule 23(b)(2) class case as the sole Mediator, although for some sessions I was joined by another Mediator. The Rule 23(b)(2) mediation was extremely arduous, extended, and difficult. The issues were legally and economically complex involving developing antitrust analysis and economic theory, technical

innovation, and payment system dynamics. The contentious nature of the litigation was reflected in the mediation process. Both sides were represented by several lawyers and/or client representatives who vigorously contested virtually every issue. Based on my observations and first-hand experience, counsel involved in these mediation sessions are among the most knowledgeable, sophisticated and accomplished attorneys in the fields of antitrust, class actions, and complex litigation. The level of advocacy for all parties throughout this process was exceptionally informed, vigorous, engaged, ethical, and effective.

11. Subsequent to the Rule 23(b)(3) settlement, I conducted at least 8 in-person mediation sessions with just the Rule 23(b)(2) class lawyers in addition to over a dozen virtual sessions, as well as hundreds of telephone calls and ex-parte zoom, telephone or in-person conversations. Eventually, the parties reached general agreement on all issues involving class-wide relief. This general agreement was reduced in writing to a signed Memorandum of Understanding and subsequently to a final settlement agreement. As dictated by the Mediator and agreed by the parties, there was no discussion, negotiation, mediation, or agreement of legal fees and expenses until there was complete agreement as to all issues of class-wide relief.

12. Only after all class-wide substantive relief issues were resolved did the parties turn to mediating the issue of attorneys' fees and expenses. This part of the mediation proceeded in typical fashion: Class Counsel conveyed to the Defendants, through the Mediator, their request for fees and reimbursement of costs, and their rationale for that request. As the Mediator, I conveyed Class Counsels' request, discussed it with Defendants, and, as instructed, conveyed Defendants' response and their rationale for their position back to Class Counsel. Not surprisingly, the parties disagreed on this issue and it fell to me, as the Mediator, to try to help them resolve it as part of the overall settlement. Through a process of back-and-forth mediated negotiations, the

parties clarified and narrowed their positions on this issue, but a gap between them remained. With the parties' permission, I put out a Mediator's Proposal for resolution of this issue that I believed was fair, reasonable, and principled, and which (a) reflected the value of the settlement to the class, the effort and expense put in by Class Counsel, and the risks Class Counsel took in pursuing this litigation, (b) is consistent with the range of fees/expenses awarded by courts in similar cases in light of the factors listed in (a) above, and (c) based on the adversarial negotiations up to that point, had the highest probability of being acceptable to all parties. My Mediator's Proposal required that each party respond to me in a confidential double-blind manner whether it "ACCEPTED" or "REJECTED" the Mediator's Proposal. Both sides "ACCEPTED," and I informed them that, subject to the opinion of the Court, this issue was resolved.

13. Throughout the recommenced mediation, it was always the firm position of Class Counsel for both the (b)(2) and (b)(3) classes that these negotiations and mediations, and any settlement, and preliminary or final approval of settlement, had to be independent of each other and not contingent in any way on the resolution, by settlement or otherwise, of the other class claims. Accordingly, at no time were counsel for the (b)(2) class action involved in any mediations or negotiation of the Rule 23(b)(3) class action claims, and vice-versa.

14. In my opinion, the outcome of these mediated negotiations is the result of a fair, lengthy, thorough, and fully-informed arms-length process between highly capable, experienced and informed parties and counsel. The final settlement represents the parties' and counsels' best professional efforts and judgments about a fair, reasonable and adequate settlement after thoroughly investigating and litigating the case for years, taking into account the risks, strengths and weaknesses of their respective positions on the substantive issues of the case, the risks and costs of continued litigation, and the best interests of their clients. Of course, in a case of this size

5

and complexity, reasonable people may differ in their views of this or that component of the settlement, but based on my close observations of the conduct of the case and the negotiations between the two sides, no one could have obtained a better outcome for the class.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22 day of March at Boston, Massachusetts.

                                                                                          _____
                                                                                          Eric D. Green