UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NO. 1:05-MD-01720 (MKB) (JAM)

**IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**

**THIS DOCUMENT APPLIES TO:**

*OLD JERICHO ENTERPRISE, INC., ET AL. V. VISA INC., ET AL.*,
No. 2:20-cv-02394 (E.D.N.Y.) (MKB) (JAM)

**JACK RABBIT'S MEMORANDUM OF LAW IN OPPOSITION TO THE OLD JERICHO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION/PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**I. OLD JERICHO'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED BECAUSE BRANDED GAS RETAILERS SUCH AS JACK RABBIT AND THE OLD JERICHO PLAINTIFFS, ARE COST PLUS DIRECT PURCHASERS[1] OF CARD PROCESSING SERVICES WHO PURCHASED THE SERVICES, ALONG WITH GASOLINE, FROM THEIR BRANDED SUPPLIERS AND AS A RESULT ARE BOUND BY THE RULE 23 B3 CLASS SETTLEMENT RELEASE** . . . . . . . . . . . . . . . . . . 2

**II. BECAUSE THE COST-PLUS DIRECT PURCHASER BRANDED GAS STATIONS ARE MEMBERS OF THE RULE 23(B)(3) SETTLEMENT CLASS THEY CANNOT CONCURRENTLY BE MEMBERS OF ANY CLASS ARISING UNDER ANY STATE'S ILLINOIS BRICK REPEALER STATUTE WHICH EXTENDS STATE ANTITRUST PLAINTIFFS'S STATUS TO INDIRECT PURCHASERS WHO LACK ANTITRUST DAMAGE AND ARTICLE III STANDING TO PROCEED IN FEDERAL COURT** . . . . 5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

---

[1] For clarity regarding legal standing, in the nomenclature of this Memorandum, a person who purchases a good or service, pursuant to an Illinois Brick "preexisting cost-plus contract," is referred to as a Cost Plus Direct Purchaser.

# TABLE OF AUTHORITIES

# CASES

*Hanover Shoe, Incorporated v. United Shoe Machinery Corp.,* 392 U.S. 481, 88
    Southern Ct. 2224, 20 L. Ed. 2d 1231 (1968) . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 8

*Illinois Brick Company v. Illinois,* 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707
    (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 5, 8

*Major League Baseball Props., Incorporated v. Salvino, Inc.,* 542 F.3d 290 (2d
    Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Spokeo, Incorporated v. Robins,* 578 U.S. 330, 136 S. Ct. 1540 (2016). . . . . . . . . 7

*Transunion LLC v. Ramirez,* 141 Southern Ct. 2190 (2021). . . . . . . . . . . . . . . 6, 7

T

# INTRODUCTION/PRELIMINARY STATEMENT

In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 88 S. Ct. 2224, 20 L. Ed. 2d 1231 (1968) ("Hanover Shoe") and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977) ("Illinois Brick") the US Supreme Court created a bright line rule ("the Illinois Brick rule") to simplify determining damages in antitrust actions where an anti-competitively priced product sold by the manufacturer, may be sold, and resold, numerous times down the chain of distribution, linking the manufacturer to the ultimate consumer.

The Illinois Brick rule provides, that for simplicity and manageability, courts shall presume that the antitrust-injury, arising out of the purchase of an anticompetitively priced product, is only suffered by the Direct Purchaser, i.e. the first person in the chain of distribution.

Pursuant to Illinois Brick, the only person suffering antitrust-injury is, with one specific exception, always the Direct Purchaser. Everyone else down the economic chain of distribution is deemed to have no antitrust-injury or damage and, as a result, no Article III standing.

There is only one exception to the "almost always" Direct Purchaser simplicity of the Illinois Brick rule. That exception applies when the Direct Purchaser has avoided antitrust-injury by having previously contracted to sell a fixed quantity of the product or service in question to a customer who is contractually bound to purchase the product or service on a cost-plus basis[2]. i.e., whenever the Direct Purchaser is economically unaffected by the antitrust actor's anticompetitive

---

[2] "this Court in *Hanover Shoe* indicated the narrow scope it intended for any exception to its rule barring pass-on defenses by citing, as the only example of a situation where the defense might be permitted, **a preexisting cost-plus contract**. In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price." *Illinois Brick, supra* at 22. (emphasis added)

-1-

pricing because their customer is contractually obligated to absorb all of the Direct Purchaser's cost, plus an agreed profit, the Direct Purchaser's customer becomes the Cost-Plus Direct Purchaser who becomes the party directly injured by the antitrust actor's anticompetitive pricing.

Pursuant to the Supreme Court's holding in Illinois brick, when there is a Cost-plus Direct Purchaser, the antitrust-injury is suffered by the Cost-Plus Direct purchaser, who, as a result has Article III standing, and the Direct Purchaser having avoided suffering any antitrust-injury because of their pre-existing cost-plus contract does not have Article III standing.

## LEGAL STANDARD

"In determining whether the moving party is entitled to judgment as a matter of law, the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### I.
### OLD JERICHO'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED BECAUSE BRANDED GAS RETAILERS SUCH AS JACK RABBIT AND THE OLD JERICHO PLAINTIFFS, ARE COST PLUS DIRECT PURCHASERS OF CARD PROCESSING SERVICES WHO PURCHASED THE SERVICES, ALONG WITH GASOLINE, FROM THEIR BRANDED SUPPLIERS AND AS A RESULT ARE BOUND BY THE RULE 23 B3 CLASS SETTLEMENT RELEASE

At all times during the January 1, 2004 to January 25, 2019 Class Period, ("the Class Period") The Old Jericho Plaintiffs, were all Branded Retail Gas Stations ("Branded Gas Stations"), which *accepted* Visa and MasterCard Payment Cards from customers, as payment for gasoline, and thereby suffered antitrust-injury. Under proper legal analysis, the Old Jericho plaintiffs were Cost-Plus Direct purchasers pursuant to *Hanover Shoe* and *Illinois Brick*

Cost-Plus exception to the Indirect Purchaser rule.[3] i.e., during the Class Period, the Old Jericho plaintiffs were Branded Gas Stations whose Oil Distributors provided a fixed quantity of products and services, which usually included, the processing of all of the Visa and MasterCard Payment Card transactions at the Branded Gas Stations, on a Cost-Plus basis.

And, during the Class Period, if the Oil Distributor processed the Old Jericho Branded Gas Stations' Visa and MasterCard Payment Card transactions, the Branded Gas Stations paid the Interchange Fee and the Merchant Discount Fee - as a portion of the costs included in their Cost-Plus contracts with their Oil Distributors. Therefore, as the direct and proximate result of their Cost-Plus contracts with their Oil Distributors, the Branded Gas Stations suffered concrete antitrust-injury and harm because, the Interchange Fee and the Merchant Discount Fee on the Branded Gas Stations Visa and MasterCard Payment Card retail sales, were costs included in their Cost-Plus contracts with their Oil Distributors.

Conversely, during the Class Period, as the direct and proximate result of their fixed quantity Cost-Plus contracts with the Branded Gas Stations, the Oil Distributors had no concrete antitrust-injury or harm because - both the Interchange Fee and the Merchant Discount Fee - paid on the Branded Gas Stations Visa and MasterCard Payment Cards retail sales during the Class

---

[3] "But this Court in *Hanover Shoe* **indicated the narrow scope it intended for any exception to its rule barring pass-on defenses by citing, as the only example of a situation where the defense might be permitted, a preexisting cost-plus contract**. In such a situation, the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance, without reference to the interaction of supply and demand that complicates the determination in the general case. **The competitive bidding process by which the concrete block involved in this case was incorporated into masonry structures and then into entire buildings can hardly be said to circumvent complex market interactions as would a cost-plus contract**. *Ill. Brick Co. v. Illinois*, 431 U.S. 720 at 736, 97 S. Ct. 2061at 2069 (1977). (emphasis added)

Period - were one of the included costs passed on by the Oil Distributors to the Branded Gas Stations.

Thus, the Old Jericho Branded Gas Stations - as Cost-Plus Direct Purchasers - are members of the Rule 23(b)(3) settlement class and the Oil Distributers are not. As a result, the Oil Distributers, who are not Rule 23(b)(3) settlement class members are not entitled to any distribution from the settlement res. Nevertheless, Defendants' footnote 7 on page 14 of their Memorandum of Law in Opposition to the Old Jericho Plaintiffs Motion for Partial Summary Judgment implies that Branded Oil Distributors are being paid from the settlement res[4]. The Court should inquire of Class Counsel and the Defendants where the money being used to pay the settling Oil Distributors is coming from. As set forth above the Branded Oil Distributors are not members of the rule 23(b)(3) class. Therefore, any side deal settlement with a Branded Oil Distributor, that is paid out of the settlement res would improperly dilute the pro rata distribution to actual members of the rule 23(b)(3) class.

## II.
**BECAUSE THE COST-PLUS DIRECT PURCHASER BRANDED GAS STATIONS ARE MEMBERS OF THE RULE 23(B)(3) SETTLEMENT CLASS THEY CANNOT CONCURRENTLY BE MEMBERS OF ANY CLASS ARISING UNDER ANY STATE'S ILLINOIS BRICK REPEALER STATUTE WHICH EXTENDS STATE ANTITRUST PLAINTIFFS'S STATUS TO INDIRECT PURCHASERS WHO LACK ANTITRUST DAMAGE AND ARTICLE III STANDING TO PROCEED IN FEDERAL COURT**

---

[4] Defendants' footnote 7 on page 14 of their Memorandum of Law in Opposition to the Old Jericho Plaintiffs Motion for Partial Summary Judgment states "7 To the extent Plaintiffs argue otherwise, the fact that some Suppliers have settled their claims against Defendants has no bearing on Plaintiffs' class status. If it is ultimately determined that Plaintiffs are valid claimants under the Settlement Agreement, they will receive their established allocation, regardless of any funds distributed in separate settlements. Further, given that many Suppliers have settled their claims, it is unclear whether there will be any competing claims filed as to the Branded Operators, so this motion is based on entirely theoretical disputes."

In the April 2023 Parties' Joint Status Report, the Old Jericho plaintiffs informed this Court *"We believe the issue of franchisee gas retailer claim ownership would be most efficiently and effectively resolved by a review of the relevant contracts by the Court, or failing that, by the special master. Because the gas brands used form contracts with their retailers, we believe this determination could be made based on the review of between 10 and 20 sample contracts. ... The Old Jericho plaintiffs have obtained form contracts of this type from several major gas brands. The Old Jericho's plaintiffs have thereby obtained highly relevant documents and transaction data bearing on issues such as proving **pass-on of damages by gas brands to their franchisees**, in addition to the question of who is the direct payor."* (emphasis added) (ECF Document 8819 Pages 28 -29).

Based on Jack Rabbit's experience over the 19 year class period stretching from January 1, 2004 to January 25, 2019 Old Jericho, the Defendants, and this court should expect that very old business record will be lost or destroyed and that Branded Gas Stations will have entered in several Specified Period fixed quantity Cost-Plus contracts with one or more Branded Oil Distributers. Thus, any particular Branded Gas Station is likely to have been subject to different contracts at different points during the 19 your class period. Although nothing is one hundred percent, the majority of those contracts shared by the Old Jericho plaintiffs, establish that, in their contracts with their Branded Oil Distributors to provide for the Oil Distributor to process the Branded Gas Stations' Visa and MasterCard transactions, the Branded Gas Stations are Illinois Brick Cost-plus Direct Purchasers who suffered antitrust-injury and thereby acquired Article III standing.

The Constitution requires that each and every class member have Article III standing. "Every class member must have Article III standing in order to recover individual damages.

'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) quoting from *Tyson Foods, Inc. v. Bouaphakeo*, 577 U. S. 442, 466, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). Thus the Defendants in arguing to the contrary in their opposition to the Old Jericho Plaintiffs' Motion for Partial Summary Judgment are inviting error.

As Jack rabbit's counsel discussed at the Fairness Hearing[5], and the May 11, 2023 status conference, the question of Article III standing is a legal issue resolved by determining whether a class member, such as any of the Branded Gas Stations has suffered concrete antitrust injury and harm. As set forth above, all class members, not just the named Plaintiffs, have to have suffered concrete antitrust damage or harm. At various times during the Class Period, all of the Branded Gas Stations in the class, suffered concrete antitrust injury and harm as a result of their Cost-Plus contracts with their Oil Distributers. Thus, as between the Branded Gas Stations, and their Oil Distributors, only the Branded Gas Stations - have Article III standing - and the right to recover individual damages from the Rule 23(b)(3) class action settlement; because they have suffered concrete injury and harm, as required by the Supreme Court of Rule 23(b)(3) class members.

As the Court is aware: even when, as in this matter, a statute grants a person a statutory

---

[5] MR. BACHARACH: My name is Albert Bacharach I represent one client who has two LLCs, one of which sells at the merchant level branded gasoline and one that sells unbranded gasoline. And my client, rather than the oil distributor, has Article III standing because my client actually paid the antitrust interchange fees and his oil suppliers didn't.
THE COURT: So you're arguing this is a legal issue.
MR. BACHARACH: It is, in fact, a legal issue that the Court can -
THE COURT: **So why hasn't anyone made a motion for the Court to decide this as a legal issue?**
MR. BACHARACH: I don't know, your Honor. FHT, page 15, lines 3-15 (emphasis added)

right, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540 (2016). In this matter, the issue of who has the concrete damage is resolved by application of the Supreme Court instruction in *Illinois Brick* for determining who has suffered antitrust damage.

There is no question that the Settlement Class, as defined: "All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or MasterCard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019," is, as the Second Circuit noted, ascertainable. But, finding that the class is ascertainable doesn't resolve the question of whether, as a result of accepting Visa-Branded Cards and/or MasterCard-Branded Cards the persons, businesses and other entities suffered antitrust damages. Determining which class members have Article III standing, arising from concrete injury and harm requires determining which class members were damaged by the Defendants under the Supreme Court's Illinois brick antitrust standing analysis. As the Supreme Court recently explained with regard to article III: "**No concrete harm, no standing**." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 at 2214 (2021). Therefore, to the extent that the Defendants seem to be arguing in the Memorandum of Law in Opposition [ECF 9202, Exhibit 1] that being the Direct Purchaser or a Cost-plus Direct Purchaser is not a requirement for having a valid claim and recovering from the settlement, that would be a legal error. Furthermore, because the settlement distribution will be *pro rata,* paying persons, businesses and other entities willy-nilly and not requiring them to establish antitrust damage and Article III standing would unjustly dilute the *pro rata* share of actual class members, which in turn would trigger additional appellate review since it has never been a final judgment with regard to the Oil Distributors and the Branded Retail Gas Stations.

At all times during the Class Period, when an Oil Distributor processed the Branded Retail Gas Stations' Visa and MasterCard Payment Card transactions, it was the Branded Retail Gas Stations that paid the Interchange Fee and the Merchant Discount Fee, on each and every Payment Card transaction - as one of the costs included in their fixed quantity Cost-Plus contracts with their Oil Distributors.

Pursuant to both the Supreme Court's antitrust analysis and its Article III standing analysis, in the settlement there are neither competing claims nor joint claims for the same dollars between a Branded Retail Gas Stations, such as Jack Rabbit and the Old Jericho Plaintiffs, who are all *Hanover Shoe-Illinois Brick* Cost-Plus Direct Purchasers and the Oil Distributors, who, because they are the beneficiaries of their fixed quantity Cost-Plus contracts with the Branded Retail Gas Stations, are not class members because they have no antitrust injury and no Article III standing.

## **CONCLUSION**

For all of the foregoing reasons, The Old Jericho Plaintiffs' motion for partial summary judgment should be denied.

Respectfully Submitted,

| | |
|---|---|
| Attorney Paul S. Rothstein<br>Florida Bar Number: 310123<br>Attorney for Class Members Jack Rabbit,<br>LLC & 280 Station LLC (d/b/a/ Cowboys)<br>Attorney Paul S. Rothstein, P.A.<br>626 N.E. 1st Street<br>Gainesville, FL 32601<br>(352) 376-7650<br>(352) 374-7133<br>E-Mail: psr@rothsteinforjustice.com | /s/ N. Albert Bacharach, Jr.<br>N. Albert Bacharach, Jr.<br>Florida Bar Number: 209783<br>Attorney for Class Members Jack Rabbit,<br>LLC & 280 Station LLC (d/b/a/ Cowboys)<br>N. Albert Bacharach, Jr., P.A.<br>4128 NW 13th Street<br>Gainesville, FL 32609-1807<br>(352) 378-9859<br>(352) 338-1858 (Fax)<br>E-Mail: N.A.Bacharach@att.net<br>   CourtDocuments@nabjr.com |