# EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

JONATHAN S. ABADY
MATTHEW D. BRINCKERHOFF
ANDREW G. CELLI, JR.
RICHARD D. EMERY
DEBRA L. GREENBERGER
DIANE L. HOUK
DANIEL J. KORNSTEIN
JULIA P. KUAN
HAL R. LIEBERMAN
ILANN M. MAAZEL
KATHERINE ROSENFELD
ZOE SALZMAN
SAM SHAPIRO
EARL S. WARD
O. ANDREW F. WILSON

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbawm.com

VASUDHA TALLA

ERIC ABRAMS
NAIRUBY L. BECKLES
MARISSA BENAVIDES
DAVID BERMAN
NICK BOURLAND
DANIEL M. EISENBERG
SARA LUZ ESTELA
ANDREW K. JONDAHL
SANA MAYAT
HARVEY PRAGER
VIVAKE PRASAD
MAX SELVER
EMILY K. WANGER

April 26, 2024

***Via ECF***

The Honorable Margo K. Brodie
United States Chief District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MKB) (JAM), No. 05-MD-1720

Dear Chief Judge Brodie:

  We represent the National Retail Federation ("NRF") and the Retail Industry Leaders Association ("RILA") (collectively, the "Merchant Trade Groups"), trade associations for thousands of large and small merchants across the retail industry that comprise their memberships. NRF is the world's largest trade association of retailers, representing stores in every retail sector across the United States. RILA is the trade association for retailers that have earned leadership status by virtue of their sales volume, innovation, or aspiration; its members include the largest and fastest growing companies in the industry.

  The Merchant Trade Groups are permissive intervenors in the above-captioned matter and each of their members is part of the certified Rule 23(b)(2) class. *See* Dkt. 8605 (Mem. and Order dated June 28, 2021). We write pursuant to the Court's Order of April 1, 2024 to object to preliminary approval of the class settlement agreement (the "settlement agreement" or the "proposed settlement agreement"). In this letter, we preview some of the settlement agreement's key deficiencies without prejudice to our submission of formal objections to the settlement agreement by the objection deadline should the Court approve it preliminarily.

  For years, the Merchant Trade Groups have attempted to work with Equitable Class Counsel—whose clients are just a handful of small businesses purportedly representing one of the largest classes in the history of Rule 23(b)(2)—to explain what relief would be meaningful to merchants. But despite our unique position and relationship to the merchant community, Equitable Class Counsel have effectively frozen us out; the Merchant Trade Groups only learned

of the proposed settlement when it was publicly announced. The result is a settlement that serves the Defendants' desire for "litigation peace" in exchange for illusory relief for the merchants. And now, should the Court approve the settlement agreement as drafted, our members will be bound by its unfavorable terms.[1] Both the substance of the settlement agreement and process rights afforded to the Merchant Trade Groups' members are incompatible with the protections set forth in Rule 23(c).

The Merchant Trade Groups raise the following substantive and legal objections to the settlement agreement. *First*, the proposed settlement agreement fails to redress the core of Defendants' antitrust violations: the Honor-all-Cards and Default Interchange rules. *Second*, it imposes terms on thousands of merchants that are manifestly insufficient, and without an opportunity for the merchants to opt-out and choose to seek more meaningful injunctive relief. *Third*, the settlement agreement's release forces all class members to waive all injunctive claims through the point of settlement, irrespective of whether those claims relate to the misconduct at issue or not. *Fourth*, it improperly precludes Rule 23's due process rights of voice or exit for future merchants created between the time of preliminary and final approval. *Fifth*, this settlement would operate as a prospective waiver of antitrust claims, a waiver that several Courts of Appeals have found to violate the Sherman Act. This issue is the subject of a pending petition for writ of certiorari to the Supreme Court.

Accordingly, the Merchant Trade Groups ask this Court to deny preliminary approval of the proposed settlement agreement because its terms are inadequate and unfair; because it does not include opt-out rights; because the scope of the release of future litigation is virtually limitless; because it binds class members that have not yet formed; and because it may be illegal to waive future claims for equitable relief under the antitrust laws.

I. **The Settlement Agreement Neither Redresses Defendants' Misconduct Nor Provides Adequate Relief to Class Members**

Neither the structure nor the terms of the settlement agreement provide adequate and meaningful relief to the class. As a threshold matter, the Merchant Trade Groups—and many others—have already made clear in their objections to the 2013 Rule (b)(2) settlement and subsequent appeal, that Defendants' antitrust violations cannot be remediated for the Merchant Trade Groups or the merchant community more broadly unless the Honor-all-Cards and default interchange rules are eliminated. The proposed settlement does not even approach the type of relief that is required here. The settlement agreement's minimal relief would always be inadequate without these core terms, but it is particularly so *now* when the case is on the

---

[1] Indeed, some of the Merchant Trade Groups members maintain claims as part of the "opt-out" litigation also in front of this Court (the "Direct Action Plaintiffs") and those Direct Action Plaintiffs have argued that this proposed settlement should not limit their claims for future relief.

(relative) eve of trial after years of litigation. To cram down a settlement with minimal relief *after* the Defendants' recent summary judgment defeat is deeply unfair.

Indeed, this settlement agreement permits Visa and Mastercard to continue their anticompetitive pricing model. Visa and Mastercard will still be allowed to dictate interchange fees to the banks, thereby precluding competition among the banks on pricing. *See, e.g.*, Dkt. 9179-2 (proposed settlement agreement) ¶ 70 ("The Mastercard Defendants have the right to continue setting default interchange rates . . .").

Other terms in the settlement agreement are impracticable or meaningless. For example, while the settlement agreement permits merchants to add a surcharge for credit cards with higher interchange fees, few merchants will do so in the highly competitive retail market. *See id.* at 202. This form of relief would not even be possible in certain states that require posting of surcharges on each item prior to sale, which is unknowable until the merchant learns of the interchange fee for a specific credit card from Defendants. *See, e.g.*, N.Y. Gen. Bus. Law § 518 (McKinney) ("Any seller in any sales transaction imposing a surcharge on a customer who elects to use a credit card in lieu of payment by cash, check, or similar means shall clearly and conspicuously post the total price for using a credit card in such transaction, inclusive of surcharge . . .").

Financial relief offered by the proposed settlement is meager and temporary. For example, the proposed settlement would reduce each Visa and Mastercard credit card interchange rate category by four basis points for three years, and reduce their overall average rates by seven basis points for five years. However, most of Visa's and Mastercard's current rates are *200 basis points* or more. This temporary reduction is but a drop in the bucket compared to current rates. The proposed settlement purports to save merchants approximately $30 billion in swipe fees over five years—an average of $6 billion in savings per year. But in 2023 alone, Visa and Mastercard credit card interchange fees *totaled $100 billion*. And, after the five-year period expires, Visa and Mastercard may again raise rates without restraint.

Additionally, the settlement agreement fails to take aim at a crucial category of fees. It temporarily reduces the fees that Visa and Mastercard fix on behalf of banks—the interchange fees—but not the network fees that that are paid directly to Visa and Mastercard. As a result, should this settlement take effect, Visa and Mastercard could simply raise their network fees at the expense of merchants and their customers, undercutting any value that the proposed settlement may offer to them.

This settlement benefits Defendants at the expense of the merchant community. Thus, it is unsurprising that this is the rare case where the Defendants *supported* class certification. *See* Dkt. 8449 (Defendants' response to motion for class certification) ("For the purpose of this motion only, defendants do not oppose certification of the non-opt out Rule 23(b)(2) class that plaintiffs have proposed."). The reason is clear: by paying what amounts to token relief, Defendants will secure releases for future equitable claims, and with that, essentially *carte blanche* to continue to mandate acceptance and to fix interchange rates.

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 4

## II. It Would Be Manifestly Unfair To Deprive Class Members of an Opt-Out from a Settlement that Does Not Afford Them Appropriate Relief

In this proposed settlement, the remaining five Class Plaintiffs—including a hair salon, pharmacy, dentist, and like entities[2]—seek to impose relief and a broad release on one of the largest mandatory classes in the history of Rule 23(b)(2)—20 million-plus merchants including nearly every merchant in the country that exists today, as well as the millions of new merchants that will open stores in the future.  Class members run the gamut from "mom and pop" shops to big box stores.  They are businesses that used, use, and will use Visa and Mastercard differently and to different extents; businesses that have been harmed in different ways from Defendants' misconduct; businesses with divergent interests in any relief from Defendants' misconduct; and businesses who are impacted differently by the proposed settlement agreement.

The class members, and the Merchant Trade Groups' members in particular, are part of an enormous, diverse group of entities whose interests were not represented in this global, mandatory settlement.  The proposed settlement would create nationwide rules for all merchants for the next several years without offering a cessation of the actual conduct from which this suit arose.  In short, it accomplishes no relevant redress while depriving merchants of the opportunity to make their own business decisions about what is best for them, their employees, and their customers.  It binds them to the judgments of other businesses, including businesses that are not similarly situated.

While this Court has already certified this Rule 23(b)(2) class over the Merchant Trade Groups' objections, the Court can and should elect to order additional process protections to class members at this stage in order to mitigate the harm otherwise imposed by the proposed mandatory settlement.  Although Rule 23(b)(2) classes are mandatory by default, "'the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in . . . (b)(2) class actions.'"  *Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG) (VMS), 2020 WL 6695076, at *12 (E.D.N.Y. Nov. 14, 2020) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009)); *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) ("Like the Second Circuit, we view Rule 23(d)(5) to be broad enough to permit the court to allow individual class members to opt-out of a (b)(1) or (b)(2) class when necessary to facilitate the fair and efficient conduct of the litigation.") (citing *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir. 1990)).  *See also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146-47 (2d Cir. 2001).

Indeed, under the Due Process Clause, Rule 23(b)(2) classes involving individualized money damages *must* contain opt-out rights.  *See* 6 Newberg and Rubenstein on Class Actions § 4:36 (citing *In re Monumental Life Ins. Co.*, 365 F.3D 408, 416-17 (5th Cir. 2004)).  While we contend that the settlement's interchange rate reductions are individualized money damages, the court need not reach this question to resolve the Merchant Trade Groups' litany of issues with the structure and terms of the settlement agreement that was negotiated without them.  *See, infra*, Section V.  Opt-out rights are more than warranted.

---

[2] *See* Dkt. 6910 at ¶¶ 10-18.

### III. The Settlement Agreement's Release of Equitable and Injunctive Claims is Virtually Limitless in Scope

The settlement agreement forces all class members to accept a release of future claims against Defendants. The release states in pertinent part:

> (a) The Rule 23(b)(2) Class Releasing Parties hereby expressly and irrevocably . . . release the Rule 23(b)(2) Class Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, . . . whether known or unknown, suspected or unsuspected, in law or in equity that any Rule 23(b)(2) Class Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued . . . **arising out of or relating to** any conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act of any Rule 23(b)(2) Class Released Party **that are or have been alleged or otherwise raised in the Action, or that could have been alleged or raised in the Action relating to the subject matter thereof, or arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act.**

Dkt. 9179-2 at 13 (emphasis added).

While we would expect there to be a release of claims arising from Defendants' misconduct challenged in this lawsuit, this release is so much broader than that, bestowing upon Defendants yet another windfall. This release insulates Defendants from any future litigation that "could have been alleged or raised" in this one no matter how distant from the allegations in the complaint. *Id.* The scope of claims that "could have been alleged or raised" in this litigation does not appear to have limits. But it does not stop there. The release waives all claims for conduct "arising out or related to" any issues that could have been raised. *Id.*

Once again in this settlement agreement, Defendants have obtained much more than what is fair and reasonable: insulation from future claims over their misconduct, claims that could have been raised, and claims that relate to any claims that could have been raised. It is unconscionable for this settlement agreement to impose these terms on mandatory class members.

### IV. The Settlement Agreement Improperly Binds Future Merchants, Depriving Them of Both Voice and Exit

As this Court explained, the rationale for denying members of a Rule 23(b)(2) class opt-out rights is that "'voice' replaces 'exit' as the operable means of class member involvement." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB), 2021 WL 6221326, at *35 (E.D.N.Y. Sept. 27, 2021) (quoting 2 Newberg and

Rubenstein on Class Actions § 4:26)).  In other words, the sole and crucial remedy for mandatory Rule 23(b)(2) class members is the opportunity to raise their objections to any proposed settlement as courts consider whether to approve it.

But the proposed settlement deprives many future businesses that will come into existence between the deadline for lodging objections and final approval of both voice *and* exit.[3] They will not exist and by definition they will not have the opportunity to raise objections to the proposed settlement agreement, and—like all merchants—will lack the ability to opt-out.  They will be bound by the judgement of the five Class Plaintiffs, who purport to represent the interests of millions of merchant businesses that have yet to be created, and, of course, in most cases, will engage with Defendants' products in fundamentally different ways than the Class Plaintiffs have.

This Court previously identified this concern about "binding future merchants who cannot receive notice of any potential settlement" in its 2021 class certification decision; ultimately the Court rejected the request to certify a class that included eight years of future merchants and limited the class temporally to the point of final judgment.  *Id.* (quoting 2 Newberg and Rubenstein on Class Actions § 4:26)).  Though the number of future merchants without "voice" is shorter in the proposed settlement as compared to the eight years of future merchants in the proposed class, the same concerns remain.  Future merchants that come into existence after the deadline for objections has expired but before settlement has been entered will have no notice of settlement, no voice to object, and no ability to exit.

Any Rule 23(b)(2) class settlement here—in addition to permitting opt-outs and providing meaningful relief—should be limited to a class of merchants in existence at the time of preliminary approval.  *See supra* note 2. That would ensure that notices could go to all class members and that each would have the opportunity to object.

V. **The Settlement Agreement's Restraint on Future Claims May Violate the Sherman Act**

The proposed settlement agreement precludes current and future class members from bringing claims for injunctive relief under the federal antitrust laws that accrue after the settlement's effective date.  *See* Dkt. 9179-2 (proposed settlement agreement) at 202.  Despite the Supreme Court's repudiation of settlement agreements that confer even "a partial immunity from civil liability for future violations" of the antitrust laws, *see Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329 (1955), there is a split among the Circuit Courts as to whether ongoing antitrust violations may ever be waived prospectively.  The Second Circuit has not definitively resolved the question.[4]

---

[3] Those created before the objection deadline but after the notice list is finalized will never receive notice to learn of their right to object to the settlement.  Similarly, those created shortly before the objection deadline will not have any meaningful opportunity to object.  Accordingly, the cleanest end point for a Rule 23(b)(2) class here would be the preliminary approval date.

[4] The Third, Fifth, Sixth, and Eighth Circuits found that they could not be waived.  *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 218 n.9 (3d Cir. 2008); *Redel's Inc. v. Gen. Elec.*

   Indeed, a future waiver would undermine the effectiveness of the private antitrust remedy, making it less likely that parties would be able to obtain relief from and deter anticompetitive conduct. This issue has been presented to the United States Supreme Court in a petition for writ of certiorari filed last month. *Home Depot U.S.A., Inc., Petitioner, v. Blue Cross Blue Shield Association, et al., Respondents.*, No. 23-1063, 2024 WL 1343252 (2024).

   The proposed settlement includes just such a future waiver: it requires "Visa and Mastercard [to] make changes to their rules and practices . . . [that] will remain in effect for at least five years []." Dkt. 9179-2 (proposed settlement agreement) at 202. In exchange, the class members release Defendants and non-parties from, *inter alia*, all "declaratory, injunctive, or equitable relief" claims "that have accrued as of the Settlement Approval Date or accrue no later than five years after the commencement of the [equitable relief negotiated therein]." *Id.* at 213.

   The Court should not approve a settlement unless the settlements ensure the ability of class members to bring claims for injunctive relief that accrue after the settlement's effective date; at a minimum this Court should not decide whether to grant preliminary approval of this settlement until after the Supreme Court has had an opportunity to review an issue that could invalidate it.

## VI. The Settlement's Substantive Infirmities Flow from the Class Plaintiffs' Exclusion of the Merchant Trade Groups from Consultation

   In anticipation of some of the structural flaws with the terms of the proposed resolution of this action, and in response to their members' deep interest in the disposition of this action due to the extensive harm that Defendants' anticompetitive business practices have caused, the Merchant Trade Groups have repeatedly sought to engage Equitable Class Counsel and consult on the terms of the proposed settlement. Since 2017, Equitable Class Counsel effectively cut the

---

*Co.*, 498 F.2d 95, 98 (5th Cir. 1974); *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 460-61 (6th Cir. 2011); *Gaines v. Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967); *Fox Midwest Theatres, Inc. v. Means*, 221 F.2d 173, 180 (8th Cir. 1955). The Seventh and Eleventh Circuits found otherwise. *See MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443, 448 (7th Cir. 1998); *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070 (11th Cir. 2023).

The Second Circuit also discussed this issue in *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 125-26 (2d Cir. 2001). There, the plaintiffs signed a release of future antitrust claims and, later, challenged the release in federal court. The district court held that the release did not violate the Sherman Act, but the Second Circuit affirmed on other grounds, holding that "[w]e see no reason, however, to decide for this Circuit whether the doctrine [of precluding future release of antitrust claims] is viable." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 125-26 (2d Cir. 2001). The issue of whether parties can release future antitrust claims—particularly in the Rule 23(b)(2) context, which is fundamentally different than the release in *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 125-26 (2d Cir. 2001), which was an individual damages case and where the release was the subject of litigation and not part of settlement—has not yet been reached. *Id*. *See also Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 720 (2d Cir. 2023) (declining to decide whether federal antitrust law prohibits releases of future antitrust claims in a class action settlement).

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP
Page 8

Merchant Trade Groups out of the process, and now, without a hint of irony, seek to bind them to an inadequate settlement. This process failure has led to the substantive deficiencies in the proposed settlement agreement outlined in this letter and otherwise.

By way of background, beginning in mid-2017, counsel and representatives from the Merchant Trade Groups began discussions with appointed Equitable Relief Counsel whom the Merchant Trade Groups understood were appointed to represent all merchants in the class, including the Merchant Trade Groups and their members. The Merchant Trade Groups sought to share privileged information with their putative appointed counsel about their views regarding the appropriate certification of any Rule 23(b)(2) class and what equitable relief would be meaningful to the broad merchant community beyond the Equitable Relief Plaintiffs. These discussions included multiple in-person meetings where the Merchant Trade Groups brought member retail representatives with deep experience with the payment industry to share their views with Equitable Relief Counsel.

During that time, the Merchant Trade Groups offered to enter into a confidentiality/non-disclosure agreement to permit Equitable Relief Counsel to share information freely. While Equitable Relief Counsel initially expressed a willingness to engage, they ultimately refused.

Repeatedly, the Merchant Trade Groups informed Equitable Relief Counsel that any settlement that preserves Honor-all-Cards and default interchange would not be meaningful. Repeatedly, we asked to be kept apprised so we can provide support and assistance given the vast disparity in collective resources and knowledge between the merchants represented by the Merchant Trade Groups, which, together, represent thousands of merchants that account for the vast majority of merchant transactions in the country, and the five merchants that are the named Rule 23(b)(2) class representatives. Yet Equitable Relief Counsel never sought our assistance. They never consulted with us on the settlement they were negotiating with Defendants despite our willingness to preserve confidentiality. Indeed, the Merchants Trade Groups were finalizing a letter to the Equitable Relief Counsel about offering our resources to plan for trial in the wake of the summary judgment decision when news broke of the settlement.

For the reasons above, this Court should deny preliminary approval of the settlement agreement.

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: ___/s/_____
Debra L. Greenberger
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Merchant Trade Groups*