UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to:

ALL RULE 23(b)(3) CLASS ACTIONS

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On February 28, 2024, two groups of objectors (collectively, the "Objectors")[1] in this litigation filed a joint motion for an award of attorneys' fees in the amount of $983,605, and costs in the amount of $13,241.[2] (Objectors' Mot. for Att'ys' Fees ("Objectors' Mot."), Docket Entry No. 9142.) Between 2013 and 2023, Objectors have objected to approval of the settlement, and Rule 23(b)(3) Class Counsel's requests for awards of attorneys' fees and costs, and service awards for named plaintiffs.[3] On March 13, 2024, Class Counsel opposed Objectors'

---

[1] The first group of objectors consists of Unlimited Vacations and Cruises, Inc. ("Unlimited") and USA Pets LLC ("Pets") represented by John J. Pentz. (*See* Objectors' Mot. 1; Decl. of John J. Pentz ("Pentz Decl.") ¶ 2, Docket Entry No. 9142-1.) The second group of objectors consists of Gnarlywood LLC ("Gnarlywood") and Quincy Woodrights, LLC ("Quincy") represented by Kendrick Jan. (*See* Objectors' Mot. 1; Decl. of Kendrick Jan ("Jan Decl.") ¶ 1, Docket Entry No. 9142-2.)

[2] Counsel for Unlimited and Pets seeks $663,845 in attorneys' fees and $6,786 in costs. Counsel for Gnarlywood and Quincy seeks $319,760 in attorneys' fees and $6,455 in costs. (Objectors' Mot. 5.)

[3] (*See, e.g.*, Obj. to Proposed Settlement & Request for Att'ys' Fees, Docket Entry No. 2586; Notice of Appeal, Docket Entry No. 6397; Obj. to Class Counsel's Mot. for Final Approval of Class Action Settlement & Att'ys' Fees, Docket Entry No. 7617; Opp'n to Class Counsel's Renewed Mot. for Class Rep. Serv. Awards, Docket Entry No. 8987.)

motion for attorneys' fees.  (Class Counsel's Opp'n to Objectors' Mot. ("Class Counsel Opp'n"), Docket Entry No. 9153.)

For the reasons set forth below, the Court grants in part and denies in part Objectors' motion.

## I. Background

### a. Procedural history

The Court assumes familiarity with the facts and extensive procedural history as set forth in prior decisions.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013) (*Interchange Fees I*), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) (*Interchange Fees II*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) (*Interchange Fees III*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F. Supp. 3d ---, 2024 WL 278565 (E.D.N.Y. Jan. 8, 2024) (*Interchange Fees IV*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 1014159 (E.D.N.Y. Feb. 22, 2024) (*Interchange Fees V*). The Court therefore provides only a summary of the relevant facts and procedural history.

In January of 2014, following a 2013 settlement between Class Plaintiffs and Defendants (the "2013 Settlement"), the Court approved Class Counsel's attorneys' fees in the amount of $544.8 million, and Class Counsel's request for costs in the amount of $27,037,716.97.[4]  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 448–49 (E.D.N.Y. 2014).  On appeal of the 2013 Settlement, numerous objectors argued that the class

---

[4] The case was reassigned from Judge John Gleeson to the undersigned on December 17, 2014.  (Order Reassigning Case, Docket Entry No. 6359.)

2

action was improperly certified, and in June of 2016, the Second Circuit vacated the class certification and reversed approval of the settlement. *See Interchange Fees II*, 827 F.3d at 227.

In December of 2019, after additional discovery and renegotiations, the Court approved a settlement between the Rule 23(b)(3) Class Plaintiffs and Defendants (the "2019 Settlement"). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472 at *2 (E.D.N.Y. Dec. 16, 2019). The Court also granted the Rule 23(b)(3) Class Plaintiffs' request for attorneys' fees in the amount of $523.3 million, and costs in the amount of $39,155,068.01. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6888488, at *2 (E.D.N.Y. Dec. 16, 2019). In March of 2023, the Second Circuit affirmed the approval of the 2019 Settlement "in all respects," "with the exception that [the Court was] direct[ed] . . . to reduce the service award to class representatives" to account for time spent on lobbying activities. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 721–23, 727 (2d Cir. 2023).

In September of 2023, Class Counsel moved for approval of named representatives' service awards, reducing their prior request to account for time spent on lobbying activities in line with the Second Circuit's decision in *Fikes*. (Class Counsel's Renewed Mot. for Class Rep. Serv. Awards, Docket Entry No. 8980.) Objectors filed objections to Class Counsel's motion in October of 2023, (*see* Opp'n to Class Counsel's Renewed Mot. for Class Rep. Serv. Awards), and the Court approved the requested service awards in February of 2024, reducing the service award by $6,879, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 640266, at *2 (E.D.N.Y. Feb. 15, 2024).

In their motion for attorneys' fees and costs, Objectors contend that their objections over the past eleven years and meritorious appeals have "enhanc[ed] the adversary process [and]

3

sharpen[ed] the debate," resulting in an improved amended settlement and the "refinement of class action jurisprudence in the Second Circuit." (Objectors' Mot.)

### b. Objectors' request for attorneys' fees and costs

Counsel for Objectors, John J. Pentz and Kendrick Jan, submitted declarations in support of Objectors' motion. Pentz has represented Unlimited since 2013 and Pets since 2019. (Pentz Decl. ¶ 2.) On behalf of Objector Unlimited, Pentz "prepared an objection to the 2013 settlement and request for attorney[s'] fees, attended the fairness hearing, prepared and filed a notice of appeal, and drafted and filed an appellate brief," and "prepared an objection to the 2015 request for incentive awards, prepared and filed a notice of appeal, and drafted and filed an appellate brief." (*Id.* ¶ 4.) On behalf of Objectors Unlimited and Pets, Pentz "prepared an objection to the 2019 request for attorney[s'] fees and request for incentive awards, attended the fairness hearing, prepared and filed a notice of appeal, participated in the production of a Joint Appendix, drafted and filed an appellate brief, and participated in oral argument." (*Id.* ¶ 5.) Pentz also "prepared and filed briefing on the incentive awards," following the Second Circuit's decision in *Fikes*. (*Id.*) Pentz asserts that he has worked on this matter "on a purely contingent basis" and has "received no compensation for any of [his] hours or expenses to date." (*Id.* ¶ 2.) For the above work, Pentz claims 948.35 hours of work, broken down as follows: 193 hours in 2013; 94.5 hours for the 2014 appeal; 85.5 hours for the 2015 service award appeal;[5] 4 hours in 2016; 96 hours in 2018 and 2019; 445.55 hours for the 2020 appeal; and 29.8 hours for remand. (*Id.* ¶ 6.)

---

[5] Alhough Pentz lists work done in connection with the appeal of the 2015 service award as part of his declaration, Objectors do not seek fees in connection with this work. (*See generally* Objectors' Mot.) As Objectors recognize, the Second Circuit never addressed their objections to the incentive awards because it vacated certification of the Settlement Class on other grounds. (*See id.* at 3.)

4

Pentz claims that his "current lodestar" is $663,845, "calculated at an hourly rate of $700/hour."[6] (*Id.*)  Pentz also claims $6,786 in costs, including "three appeal filing fees of $505 each, $251 in expenses associated with the 2022 oral argument . . . , and $5020 as [his] contribution toward production of the Joint Appendix." (*Id.* ¶ 7.)

Jan represents Gnarlywood and Quincy, and has been admitted *pro hac vice* in this matter since August 27, 2019.  (Jan Decl. ¶ 1.)  Jan "prepared an objection to the 2018 settlement and fee requests, attended and participated in the fairness hearing, prepared and filed a notice of appeal, drafted and filed appellate briefs, [and] gave oral argument at the Second Circuit." (*Id.* ¶ 3.)  Jan asserts that he has worked on this matter "on a purely contingency fee basis" and has "received no compensation or reimbursement of advanced costs." (*Id.* ¶ 4.)  For the above work, Jan claims 456.8 hours of work, broken down as follows: 86.2 hours in 2019; 289.4 hours in 2020; 10.8 hours in 2021; 38.8 hours in 2022; and 21.6 hours in 2023 following remand.[7]  (*Id.* ¶ 5.)  Jan claims that his "hourly rate in this matter is $700" and claims a "total lodestar" of $319,760.00.[8]  (*Id.*)  Jan also claims costs of $6,455.  (*Id.*)

## II. Discussion

### a. Standard of review

The Second Circuit "has recognized the 'valuable and important role' of objectors" in policing class action settlements, and has held "that objectors are 'entitled to an allowance as

---

[6] In support of his hourly rate, Pentz notes that he has thirty-three years of experience as a litigator and was admitted *pro hac vice* in this matter in 2013.  (Pentz Decl. ¶ 3.)

[7] Jan asserts that he "devoted a total of 456.8 hours" to this matter, (Jan Decl. ¶ 5), which appears to be a typographical error as the sum of the hours he provided is 446.8 hours.

[8] In support of his hourly rate, Jan notes that he has forty-one years of experience as a litigator.  (Jan Decl. ¶ 2.)

5

compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *In re Petrobras Sec. Litig.*, 786 F. App'x 274, 277–78 (2d Cir. 2019) (quoting *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974)).  To recover attorneys' fees, a party's "actions . . . must[] be 'a substantial cause of the benefit obtained.'" *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 156–57 (2d Cir. 2005) (quoting *Savoie v. Merchs. Bank*, 84 F.3d 52, 57 (2d Cir. 1996)); *see also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 132 (S.D.N.Y. 2009) ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement they are not entitled to fees." (alteration omitted) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002))).  "[T]he trial judge has broad discretion in deciding whether, and in what amount, attorneys' fees should be awarded, since [she] is in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *White*, 500 F.2d at 828; *see also In re Holocaust Victim Assets Litig.*, 424 F.3d at 157 ("The district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." (alterations omitted) (quoting *In re Bolar Pharm. Co. Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992))); *Parker v. Time Warner Ent. Co.*, 631 F. Supp. 2d 242, 276–78 (E.D.N.Y. 2009) (finding the objectors helpful to the court's assessment of the settlement where they shed light on disparate benefits available to different groups of class members and challenged the notice program); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 393 (S.D.N.Y. 2005) (denying fees to an objector where the class received relatively little settlement value and the objector failed to show that modifications to a "Voucher Program" materially benefitted the class).

### b. The Court denies the request for attorneys' fees

Objectors argue for an award of fees for participation in the appeal of the 2013 Settlement and for objections raised to the 2019 Settlement, which they contend (1) improved the settlement, (2) resulted in a reduced award of attorneys' fees to Class Counsel, and (3) "refine[d] . . . jurisprudence" in this Circuit relating to service awards. (Objectors' Mot. 3–4; Objectors' Reply in Supp. of Objectors' Mot. 2–4 ("Objectors' Reply"), Docket Entry No. 9159.)

Class Counsel argues that Unlimited cannot receive attorneys' fees for work performed in connection with the 2013 Settlement, (Class Counsel's Opp'n 2–4), and that the Objectors are not entitled to attorneys' fees or costs for any subsequent work, (*id.* at 4–6).

### i. Objections to the 2013 Settlement

Objectors argue that their objections to the 2013 Settlement improved the subsequent 2019 Settlement. (Objectors' Mot. 3.) In support, Objectors argue that Unlimited's appeal of the 2013 Settlement led to the "Court of Appeals' 2016 reversal and remand" and to "the 2019 amended settlement that this Court held was an improvement over the 2013 settlement." (*Id.*) Objectors assert that "Unlimited was the first to raise" issues with "the future release, attorney[s'] fees, and incentive awards," and was "the only objector to file a brief challenging the fee award." (Objectors' Reply 3.) Objectors concede however, that the Second Circuit never addressed these issues in its review of the 2013 Settlement, because it vacated and remanded on the issue of intra-class conflict. (*Id.*); *see also Interchange Fees II*, 827 F.3d at 240 (concluding that unitary representation offended "class members' due process right to adequate representation"). Objectors assert that "the Court of Appeals' reversal on the conflict issue does not render Unlimited's participation in the earlier appeals valueless." (Objectors' Reply 3.)

7

Class Counsel argues that Objectors played no role in "litigating the merits of the claims in this case or . . . the negotiations that ultimately led to the settlement on behalf of the Rule 23(b)(3) Class," and that they made "no showing that they were a substantial cause of any substantial benefit to the Rule 23(b)(3) Class." (Class Counsel Opp'n 1.) Class Counsel contends that a "change in the settlement benefits must be directly linked to the objector's specific objection" to be considered a "substantial cause," and Unlimited could not have been a "substantial cause" of any benefit where Unlimited failed to "identify any argument it made that led the Second Circuit to vacate the original settlement" and was not the first to make objections in relation to the 2013 Settlement. (*Id.* at 2–3.) In addition, Class Counsel contends that Unlimited has not shown that the improved 2019 Settlement was caused by their objections to the original settlement. (*Id.* at 3–4.) Finally, Class Counsel contrasts Objectors' position with that of the group of objectors "who . . . were the first ones to make arguments that substantially caused the Second Circuit to vacate the original settlement," and who received $7 million for those efforts. (*Id.* at 3 n.1.)

Objectors have failed to show that Unlimited's objections to the 2013 Settlement substantially benefitted the Rule 23(b)(3) Class. Objectors offer only a conclusory statement that Unlimited's appeal of the 2013 Settlement led to the Second Circuit's vacatur of the settlement class, and fail to show that Unlimited raised the unitary class representation issue that the Second Circuit held was inadequate. (Objectors' Mot. 3; *see also* Obj. to Proposed Settlement & Request for Att'ys' Fees (objecting to future-release provisions and Class Counsel's fee award, but not objecting to unitary representation for the (b)(2) and (b)(3) Classes).) Likewise, Unlimited has failed to show how their objections to Class Counsel's award of attorneys' fees in connection with the 2013 Settlement led to an improved 2019 Settlement. Between 2013 and

8

2019, Unlimited first filed a notice of appeal in 2014, (*see* Notice of Appeal, Docket Entry No. 6221), and then in 2015: opposed disbursement of named plaintiffs' service awards, (*see* Opp'n to Pls.' Mot. for Class Rep. Serv. Awards, Docket Entry No. 6377); moved for production of documents, (*see* Mot. to Produce Docs., Docket Entry No. 6473); filed another notice of appeal (*see* Notice of Appeal, Docket Entry No. 6397); and moved to vacate the Court's order on Class Counsel's motion for attorneys' fees (*see* Mot. to Vacate Order, Docket Entry No. 6513; Reply in Supp. of Mot. to Vacate Order, Docket Entry No. 6569). Objectors do not articulate how any of these activities — which ceased in 2015 — improved the 2019 Settlement, reached four years later and only "[a]fter additional extensive discovery and renegotiations." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *3. Ultimately, Objectors' arguments are similar to the arguments advanced by the Retailer and Merchant Objectors ("R&M Objectors") in their 2019 request for attorneys' fees. *See generally In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2020 WL 29781 (E.D.N.Y. Jan. 2, 2020). There, the Court adopted Magistrate Judge James Orenstein's report and recommendation which recommended that the Court deny R&M Objectors' request for attorneys' fees. *Id.* at *4–6, 11. The Court found that R&M Objectors were not a "substantial cause of the Second Circuit's decision to set aside the 2013 Settlement Agreement," where R&M Objectors were not the first to raise an issue relating to "the surcharge provision of the injunctive relief," and where R&M Objectors "never argued that class counsel's unitary representation of the (b)(2) and (b)(3) class was improper, as the Second Circuit ultimately found." *Id.* at *8.

The Court finds that Objectors' efforts relating to the 2013 Settlement — like those of the R&M Objectors — were not a substantial cause of the Second Circuit's decision to vacate the

9

2013 Settlement and remand the case for further proceedings, and were not a substantial cause of any benefit to the class through the subsequent settlement. *See id.* at *5 (denying R&M Objectors' request for attorneys' fees because, even if their objections played some role in causing the parties to engage in further discovery, it would "blink reality" to find that the objections were a substantial cause of the benefits to the Rule 23(b)(3) Class); *In re Holocaust Victim Assets Litig.*, 311 F. Supp. 2d 363, 375 (E.D.N.Y. 2004) (noting that "[n]ot all work is entitled to be compensated, even when that work is done in the context of a lawsuit," and listing the ineffectual efforts made by the objector), *aff'd*, 424 F.3d 150 (2d Cir. 2005); *In re Petrobras Sec. Litig.*, No. 14-CV-9662, 2019 WL 4727534, at *1–2 (S.D.N.Y. Sept. 27, 2019) (awarding 10% of an objector's requested fee award because "while the [c]ourt awarded attorneys' fees to Class Counsel . . . in an amount lower than requested[,] . . . most of the reduction had nothing to do with [the objector's] objections").

### ii. Objections to the 2019 Settlement and to the award of attorneys' fees

Objectors contend that the Court's decision to reduce Class Counsel's fee award by $14 million in connection with the 2019 Settlement was "a result, in part, of Objectors' fee objections." (Objectors' Mot. 3.) Objectors argue that "their fee objections caused the Court to take a closer look at the fee request and reduce the percentage to an amount closer to the benchmark for billion-dollar settlements." (*Id.*) Objectors contend that the Court reduced Class Counsel's fees in part because "injunctive relief [was] no longer guaranteed" following vacatur of the 2013 Settlement, and that the Court's conclusion was supported by Objectors' argument that "Class Counsel should receive no credit for time spent exclusively obtaining relief for the b(2) Class." (Objectors' Reply 2.)

Class Counsel argues that the Court's decision to reduce attorneys' fees was not based on Objectors' arguments, but was instead based on the Court's own rationale, given the size of the

10

Class and that class members were no longer guaranteed injunctive relief as they were in the 2013 Settlement.  (Class Counsel's Opp'n at 4–5.)  In support, Class Counsel asserts that "[the] Court rejected each of Objectors' arguments in granting Rule 23(b)(3) Class Counsel's attorneys' fees."  (*Id.* (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6888488).)  Class Counsel quotes the Court's conclusions regarding each of Objectors' objections, (*see id.*), and concludes that "[n]one of Objectors' arguments caused the Court to reduce the attorneys' fee awards by [0].25% from the requested 9.56% to 9.31%."  (*Id.* at 5.)

Objectors have failed to show that their objections to Class Counsel's request for attorneys' fees and costs in connection with the 2019 Settlement caused the Court to reduce the award by $14 million.  The Court specifically addressed Objectors' concerns regarding the lodestar calculations' inclusion of time spent working on matters related to the Rule 23(b)(2) Class and held that this argument was unpersuasive where the fees awarded will be a "percentage of the damages fund, and not . . . a percentage of any value of injunctive relief."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6888488, at *11–12.  Objectors ignore the multifactor analysis used by the Court in deciding to reduce Class Counsel's fees, including the rejection of Objectors' arguments relating to the *Goldberger* factors[9] and the Court's own lodestar crosscheck.  *Id*. at *23–24.  The Court reduced Class Counsel's attorneys' fees not only because the 2019 Settlement no longer contained injunctive relief, but "due largely

---

[9] Under the lodestar method, courts apply a multifactor analysis to scrutinize the lodestar in determining what are reasonable attorneys' fees.  These factors include time and labor expended by counsel, the magnitude and complexity of the litigation, risk of the litigation, quality of representation, the requested fee in relation to the settlement fund, and public policy considerations.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Objectors Gnarlywood and Quincy argued for a reduction in attorneys' fees for time and labor spent on the Rule 23(b)(2) Class and the Court rejected this argument.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6888488, at *5–8, 15–24.

11

to the fact that the settlement value . . . is nevertheless a small recovery when viewed in light of the size of the class, especially given that merchants are no longer guaranteed injunctive relief as they were in the 2013 Settlement Agreement." *Id.* at *24.

Objectors' objections relating to the award of attorneys' fees were thus not a substantial cause of any benefit to the Rule 23(b)(3) Class. Objectors are therefore not entitled to attorneys' fees for work performed in connection with the fee objections to the 2019 Settlement.[10] *Cf. In re Petrobras Sec. Litig.*, 2019 WL 4727534, at *1–2 (awarding 10% of an objector's requested fee award because the objections were not the basis for reductions in class counsel's fee award).

### iii. Objections to the requested Named Representative Service Awards

Objectors argue that their objections to named plaintiffs' service awards led to "the refinement of class action jurisprudence in the Second Circuit and [to] an accurate and legally proper incentive award." (Objectors' Mot. 3.) In particular, Objectors argue that their appeal of the Court's 2019 approval of Class Counsel's fee and service awards caused the Second Circuit to "remand" on the issue of service awards for the Court to reduce the service awards for time spent lobbying. (*Id.*)

Class Counsel argues that a reduction of $6,879 from the original service award of $900,000 does not warrant an award of attorneys' fees and that Objectors' claim of "refin[ing] . . . class action jurisprudence in the Second Circuit" is a "gross exaggeration." (Class Counsel's Opp'n 5.) Class Counsel contends that "[t]he Second Circuit rejected all but one of Objectors' arguments and, contrary to Objectors' arguments, affirmed that under binding Second Circuit precedent service awards are permitted." (*Id.* at 5–6.)

---

[10] In addition, the Objectors' fee award arguments were rejected by the Second Circuit on appeal. *See Fikes*, 62 F.4th at 723–27.

12

Objectors have failed to demonstrate that their objections to the original service award appreciably benefited the Class. Although Objectors are correct that there is no minimum benefit to the Class that must be created to be entitled to a fee award, such awards require that the party's "actions . . . be 'a substantial cause of the benefit obtained.'" *In re Holocaust Victim Assets Litig.*, 424 F.3d at 156–57 (quoting *Savoie*, 84 F.3d at 57); *see also In re Petrobras Sec. Litig.*, 786 F. App'x at 277–78 (noting that objectors may be entitled to fees "where a proper showing has been made that the settlement was improved as a result of their efforts" (quoting *White*, 500 F.2d at 828)); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 393 (concluding that award of fees to objectors was "ill-advised because the Class received relatively little Settlement Value and [the o]bjectors' efforts have not been shown appreciably to have benefitted the Class"). In this case, the reduction of service awards in connection with the 2019 Settlement returned only $6,879.00 to a $5.6 billion settlement — a reduction that Objectors concede is "only a relatively small financial benefit to the Class." (Objectors' Mot. 3.) Although — as the Second Circuit noted — the Court "made no more than passing reference to time that lead plaintiffs spent on legislative activities" prior to Objectors' arguments, *Fikes*, 62 F.4th at 723, a meritorious appeal in and of itself is not enough to be awarded attorneys' fees when Objectors offer little evidence that a return of $6,879 has *appreciably* benefitted the 23(b)(3) Class, *see In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 393. In addition, the Court subsequently evaluated each of Objectors' objections to Class Counsel's renewed request for named plaintiffs' service awards and rejected each objection. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 640266, at *2–4 (rejecting Objectors' contention that the Second Circuit's mandate required the Court to do a wholesale reevaluation of the requested service awards and noting that "Objectors' other arguments are also

13

without merit"). The Court therefore denies Objectors' request for attorneys' fees for work performed in connection with their objections to service awards.[11]

Accordingly, the Court denies Objectors' request for attorneys' fees because they have failed to point to any specific objections that were a "substantial cause" of any benefit to the settlement class.

### c. The Court grants Objectors' request for costs

Objectors also move for reimbursement of costs in the amounts of $6,786 and $6,455, respectively. (*See* Pentz Decl. ¶ 7; Jan Decl. ¶ 5.) Objectors argue that "Class Counsel make[s] no principled argument against reimbursement of Objectors' expenses." (Objectors' Reply 4.) Objectors contend that "[p]aying the filing fees and the cost of the Joint Appendix was a necessary price of admission to pursue the appeal in which the Objectors were the prevailing party on incentive awards." (*Id.*) They argue that "all of their expenses should be compensated, regardless of the amount of money returned to the Class on remand, and regardless of how many of the appendix documents related specifically to the incentive award appeal." (*Id.*)

Class Counsel opposes reimbursement of costs and contends that "reimbursement of their claimed expenses" "is unwarranted and would be a complete windfall." (Class Counsel Opp'n 1.) They argue that, "[f]or the same reasons Objectors are not entitled to attorneys' fees, their request for reimbursement of expenses should also be denied." (*Id.* at 6.)

---

[11] With respect to Objectors' argument that their efforts had the benefit of resulting in "published caselaw governing lobbying in class actions," the argument is unfounded and Objectors offer no precedent to suggest that such a purported benefit entitles them to attorneys' fees. (Objectors' Reply 3–4; *see also* Objectors' Mot. 3.) It is well established that Objectors' counsel may, in some circumstances, be entitled to attorneys' fees and expenses "where a proper showing has been made that the settlement was improved as a result of their efforts." *White*, 500 F.2d at 828.

14

"[C]ounsel who prepare a partially-successful objection may sometimes be entitled to recover costs for activities that do not relate directly to the ultimately-successful objection but without the performance of which it 'would have been quite impossible' to raise any objection at all." *In re Petrobras Sec. Litig.*, 2019 WL 4727534, at *4 (quoting *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-CV-5634, 2015 WL 4776946, at *2 (N.D. Cal. Aug. 13, 2015)), *aff'd,* 828 F. App'x 754 (2d Cir. 2020). More generally, courts "have recognized that objectors' counsel are entitled to an award of fees even where the [c]ourt would have likely reached the same result, with or without the objectors' comments." *Park v. Thomson Corp.*, 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009) (collecting cases).

The Court recognizes that Objectors prepared a "partially[ ]successful objection" relating to service awards and that the objection could not have been advanced without Objectors' involvement in the appeal of the 2019 Settlement. Accordingly, the Court finds that Objectors are entitled to reimbursement for costs related to the *Fikes* appeal (*i.e.*, filing fees and costs associated with the Joint Appendix), "without . . . which it 'would have been quite impossible' to raise any objection at all." *In re Petrobras Sec. Litig.*, 2019 WL 4727534, at *4 (citation omitted).

The Court, however, observes two issues with the declarations submitted by Pentz and Jan. First, Pentz's declaration appears to misstate the appeal for which Unlimited and Pets contributed to the cost of the Joint Appendix. (*Compare* Pentz Decl. ¶ 7 (noting "$5020 as [his] contribution toward production of the Joint Appendix in Appeal No. 20-399"), *with* Deferred Appendix, *In re Payment Card Interchange*, No. 20-339 (2d Cir. Dec. 22, 2022).) As ordered below, Pentz is directed to file an amended declaration on behalf of Unlimited and Pets affirming Pentz's costs with respect to the production of the Joint Appendix. Second, Jan's declaration on

15

behalf of Gnarlywood and Quincy is unsigned and does not provide any support for its claimed costs of $6,455.  *See, e.g.*, *Volpe v. Nassau County*, No. 12-CV-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) (observing in awarding costs that "[t]he fee applicant bears the burden of adequately documenting and itemizing the costs requested" (citing *Pennacchio v. Powers*, No. 05-CV-985, 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011))); *cf. Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (noting that counsel seeking an award of fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (citation and internal quotation marks omitted)).  As ordered below, Jan is directed to file a signed declaration accounting for costs incurred on behalf of Gnarlywood and Quincy.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Objectors' motion. The Court denies Objectors' motion with respect to attorneys' fees and grants Objectors' motion with respect to reimbursement of costs, subject to Objectors' re-filing of sworn declarations accounting for the breakdown of Objectors' costs.

Dated:  May 1, 2024
         Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge