# EXHIBIT A

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION**<br><br>**This Document Applies to:  All Cases.** | **No. 05-MD-1720 (MKB) (JAM)** |

### DECLARATION OF LOREE KOVACH REGARDING CLAIM DEADLINE

I, LOREE KOVACH, declare and state as follows:

1.      I am a Senior Vice President for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Class Administrator in the above-captioned case.  In this capacity, I am authorized to make the following Declaration on behalf of Epiq.  I have approximately 20 years of experience overseeing all aspects of many large, complex, and high-profile consumer matters. With my extensive background in the class action administration space, I am routinely called upon by clients to provide strategic direction on the handling of large and complex data and claim sets. I received my Bachelor of Business Administration degree in finance from Florida State University and Juris Doctor degree from Florida State University College of Law. The following statements are based upon my personal knowledge, information provided to me by associates and staff under common supervision, and upon a review of the business records maintained by Epiq.

2.      The purpose of this Declaration is to provide the Court with an update regarding activity in the Settlement related to the May 31, 2024 claim deadline ("May 2024 Claim Deadline") including extensive activity from Third-Party Filers ("TPFs") and research requests from claimants regarding Merchant Class data.

3. As discussed in greater detail below, based on the Class Member activity in this Settlement, Epiq recommends a three-month extension of the claim filing deadline, to August 30, 2024.

## CLASS MEMBER ACTIVITY

4. In preparation for the claims submission phase of this Settlement, Epiq identified interchange fees paid during the Class period for as many of the 18 million Class Members as possible, based on the data in its possession. Claim Forms preprinted with this information, when available, were mailed to Class Members beginning in December 2023. Class Members who agree with the preprinted information can submit their claim by mail, or online via a simple process that requires them to merely scan a QR Code, which takes them to their specific record in the portal designed by Epiq for the Settlement (the "Merchant Portal"). From there, they simply provide contact details to finalize their claim submission. Class Members who did not receive their Claim Form in the mail can register with their Taxpayer Identification Number ("TIN") via the Merchant Portal, and file their claim that way once they have provided proof of their authority to act on behalf of that TIN.

5. The Merchant Portal also includes several other features to make administration of the Settlement more efficient, including the following:

    a. a mechanism by which Class Members who disagree with the interchange fees identified by Epiq can engage in the various steps outlined in the Plan of Distribution to challenge those fees with their own data and documentation;

    b. a mechanism by which Class Members can see all communications sent to them by Epiq and respond to those where needed; and

c. a mechanism by which Class Members who operate(d) multiple businesses under different TINs, or TPFs that represent multiple Class Member clients, can register and manage all TINs via one user account.

6. If a TPF is registering via the Merchant Portal on behalf of a Class Member client, or if a Class Member uses its TIN to register instead of scanning the QR code, proof of authority documentation is required. Due to the volume of TPF activity in this Settlement, as well as the volume of Class Members who chose to register via their TIN rather than using the Claim Form that was mailed to them, Epiq received a significant influx of proof of authority documentation to review. In addition to the tens of thousands of proof of authority documents provided by TPFs prior to the launch of the claims phase, Epiq has received approximately 54,000 proof of authority documents since the launch of the claims phase of the Settlement. To date, Epiq has sent out deficiency notices to over 60,000 Class Members with inadequate or missing proof of authority documentation, and has received over 32,000 responses from Class Members. Response deadlines are still pending for many of the deficiency notices as Class Members are given 30 days from the date of the notice to respond. Epiq continues to send additional notices on a rolling basis as proof of authority documentation is reviewed and deemed deficient.

7. There have been numerous communications with Class Members. In the last five weeks alone, Epiq has received and sent more than 65,000 email communications. Further, Epiq has received more than 84,000 calls to the Settlement toll-free number and handled over 61,000 calls with a live agent since December 1, 2023.

8. Recently, Epiq sent out approximately 12 million reminder postcards over the span of two weeks to Class Members who had not yet registered or filed claims. These postcards

resulted in an increase in claim submission and communication activity, which we expect to continue past the current May 2024 Claim Deadline.

## THIRD-PARTY FILER ACTIVITY

9. TPFs, including claim purchasers, have been very active in this Settlement. To date, there are more than 150 TPF registrant accounts set up via the Merchant Portal, some with thousands or tens of thousands of Class Member records linked to their accounts. TPFs continue to add new Class Members as clients daily and update their accounts in the Merchant Portal accordingly. In addition to reviewing proof of authority documentation related to TPF registrations of Class Members, there are many other TPF-related tasks that Epiq is currently handling.

10. A "conflict" is when more than one entity attempts to act on behalf of a Class Member in the Settlement. For instance, a Class Member may have signed a representation agreement with a TPF, forgotten about the agreement, and then attempted to submit a claim themselves while the TPF is also attempting to submit a claim based on the agreement. Conflicts are most frequently created, however, because more than one TPF is attempting to act pursuant to a claimed contract with a single Class Member. While Epiq anticipated this scenario and has processes in place to address it, the volume of conflicts is not only unprecedented, but the instances where more than just two parties are attempting act on behalf of a single Class Member are significant. Ten percent of conflicts involve more than two parties, and some conflicts involve as many as six parties. There are multiple instances where more than one claim purchaser is asserting ownership of a Class Member's claim, more than one TPF claims to have a contract with the same Class Member, and the Class Member is also attempting to file a claim on its own behalf. Epiq sends conflict notices to all parties to a conflict with instructions for how to resolve the conflict.

Once a conflict is resolved, all parties must inform Epiq of the resolution, and the Class Member record is updated accordingly. As of May 10, 2024, there are over 30,000 conflicts pending resolution. Epiq continues to send Conflict notices on a rolling basis as new conflicts arise.

11. The volume and complexity of conflicts has led to a significant amount of communication with and between TPFs, Class Members, and Epiq, and Epiq expects the volume of conflicts created, and the corresponding communication necessitated by the conflicts, to continue to increase leading up to the current May 2024 Claim Deadline.

12. In addition, the majority of the instances where a registrant's proof of authority to act on behalf of a Class Member is deficient are instances where a TPF is purporting to represent a class member, but their documentation authorizing them to do so is insufficient. TPF authorization documentation is often deficient because the name in the TPF's records does not match the Merchant name in Epiq's records, which causes confusion for TPFs and requires them to obtain additional documentation from their clients to resolve the deficiency.

13. This high volume of conflict and deficiency activity, and the fact that a registrant cannot submit a claim while a conflict or deficiency is pending, has caused numerous expressions of concern from TPFs and Merchants about the May 2024 Claim Deadline.

## MERCHANT CLASS DATA RESEARCH REQUESTS

14. If a Class Member disagrees with the interchange fees identified for it by Epiq, the first step to contest those fees is submission of a research request, whereby the Class Member provides Epiq with various data points it can use to re-query its records and attempt to identify any missing interchange fees. Over the past five weeks, Epiq has seen an influx in the number of research requests submitted by Class Members. Each request requires manual effort by a data analyst to resolve, and the length of time to resolve a request varies greatly depending on the

DECLARATION OF LOREE KOVACH REGARDING CLAIM DEADLINE - 5

quantity and quality of the data provided.  Substantial efforts have been undertaken by Epiq to handle this high volume as quickly and efficiently as possible.  However, given the approaching May 2024 Claim Deadline, Class Members with unresolved research requests are expressing concerns.

## CLAIM FILING DEADLINE EXTENSION

15. Based on the volume of activity described above, Epiq recommends a three-month extension of the claim filing deadline, to August 30, 2024.  While Epiq is equipped to allow claimants with claims that are active as of the filing deadline to continue to take steps to perfect their claims after the May 2024 Claim Deadline passes, a three-month extension will alleviate Class Member concerns around timing and resolution of their submissions and hopefully may increase the number of claimants.

16. Based on Epiq's experience, it is not unusual to extend the initial claim deadline for myriad of reasons including complex claim and/or data issues and high class contact activity related to claim filing (*see Schmitt v Kaiser*, No. 2:17-cv-01611-RSL (USDC WD WA) (claim deadline extended to allow for the adjudication of a volume of late filed claims); *SEC v. Citigroup*, No. 1:10-cv-01277-ESH (USDC D.C.) (claim deadline extended due to the volume of claims received days before the filing deadline and the volume of calls asking if late claims would be accepted); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 1:12cv04069 (USDC ND IL) (claim deadline extended to provide additional time to obtain Class Member records and/or provide further documentary support for claim compensation); *In Re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (USDC ND CA) (claim deadline extended to maximize the volume of claims); *In Re PG&E Corp. and Pacific Gas and Electric Comp.*, No. 3:19-cv-05257 (USDC ND CA) (claim deadline extended to allow for the filing of additional claims); *In re Navistar*

*MaxxForce Engines Marketing, Sales Practices and Products Liability Litig.*, No. 1:14-cv-10318 (USDC ND IL) (claim deadline extended to allow Class Members additional time to gather documentation and submit claims).

17. Epiq is committed to adding additional resources if and as needed to manage the volume of class member communications, as well as to manage conflicts, deficiencies, and research requests, through the filing deadline and until all claims have been fully resolved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 14, 2024 at Seattle, Washington.

_____
Loree Kovach