UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720(MKB)(JAM) |
| | Civil No. 05-5075(MKB)(JAM) |
| This Document Relates To:<br><br>ALL ACTIONS. | RULE 23(b)(3) CLASS COUNSEL'S MONTHLY REPORT REGARDING THIRD-PARTY ENTITIES |

## I. INTRODUCTION

This is the eighth monthly report regarding third-party claims filers following the Court's request.

Rule 23(b)(3) Class Counsel ("Class Counsel") and Epiq continue to receive communications regarding third parties. This month, there were 34 new communications received by Epiq and multiple communications received by Class Counsel. Calls received via the toll-free number are tracked and reported to Class Counsel from Epiq. Class Counsel also directly receives calls and emails regarding third parties that are followed up on immediately. Additionally, Class Counsel regularly searches online using various keywords in an attempt to monitor what is a fluid situation.

In this report, Class Counsel describes current issues related to third parties.

## II. NEW ISSUES

### A. Apparently False Documents Filed with Epiq

#### 1. Class Counsel's Report

An issue has recently surfaced that may require the Court's intervention, although facts are still being gathered. Class Counsel learned this week through two different channels that the law firm Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg") has been registering clients with Epiq for third-party-filing services for certain companies which came from a referral partner and that Milberg has subsequently acknowledged are fraudulent.[1] This issue surfaced when another entity informed Class Counsel this week that in several instances where a conflict notice has issued, Milberg agreed to withdraw their purported contract, acknowledging that the contracts were fraudulent.

---

[1] As part of the claims process, Epiq requires those filing on behalf of others to demonstrate proof of authority to file. In many cases a contract between the third party and the class member is submitted to Epiq and then Epiq grants the third party permission to file. The submission of these documents may trigger a conflict, where more than one entity has submitted on behalf of a given TIN. Notices of conflict are then sent to all affected parties with information regarding processes to clear conflicts.

Class Counsel has reviewed several of these purported contracts and on their face it appears that even a cursory review by Milberg upon receipt from the referral partner would have revealed they are not legitimate. Several of these "Authority to Represent" contracts that were submitted to Epiq are for large, multinational corporations that are household names. The person "signing" the contract does not appear to have any presence at the subject companies and has signed the document as the "owner," a designation that makes no sense in the context of a publicly traded company. The email addresses associated with the companies, appear to be fraudulent as well. Class Counsel can share samples with the Court *in camera*, if requested.[2]

Class Counsel reached out to Milberg immediately upon learning of this issue and following investigation by Milberg, Class Counsel was informed of 30 instances where a the proof of authorization document was withdrawn, either because of a conflict or for unknown reasons that all came from the same referral partner. Upon discussion with Milberg, Class Counsel learned that there are 7 other claims that came from the same referral partner that remained active as of May 23, 2024. Class Counsel believes these seven claims must also be withdrawn. Class Counsel requested Milberg alert Epiq to this issue and Milberg did so.

An initial review by Class Counsel of a sample of other contracts submitted by Milberg to Epiq revealed many additional contracts with the same pattern of questionable names, titles, and email addresses. Class Counsel provided several examples to Milberg and asked whether these contracts were from the same referral partner. Today, in response to additional questions from Class Counsel, Milberg reported that there were in fact many more contracts that appeared to come from the referral partner. While Milberg's review is ongoing, as of Friday at 2 p.m. Eastern, the firm had found approximately 133 claims from the referral source. Milberg was unable to answer on Friday how many of these claims remained "active," but stated they were working to gather this information.

---

[2] The "Authority to Represent" form contracts instruct Epiq to pay 30% of the gross amount due to the client's claim to the law firm and the remainder to the client.

Class Counsel has been told that Milberg terminated its relationship with the referral partner and will no longer be accepting any additional referrals. Further, the firm stated that it is doing an independent audit of all the claims it has submitted to Epiq and that an employee has been disciplined within the firm.

Class Counsel asked Milberg a number of questions regarding the instant matter and had not received answers until the morning of May 24, 2024. Because of the seriousness of the matter, Class Counsel believes the below-listed questions should be answered immediately, should additional steps be needed (such as an independent audit of the firm's submissions, referral to any law enforcement or other steps), all parties and the Court will have a complete understanding of how the instant matter occurred. Those questions include the following:

- Who is the referring entity?;

- Are there other referral partners following the same pattern?;

- How was or is that entity being compensated?;

- When did Milberg learn of this issue?;

- What exactly did Milberg do when it learned of this issue (which it appears it knew at least in part before Class Counsel's call)?;

- How were these contracts vetted – if at all?; and

- What screens or rules has Milberg implemented regarding referrals generally?

Class Counsel has shared the above with Milberg and has invited Milberg to provide its own submission, below.

### 2. Milberg's Response

Milberg is taking the allegations raised by Class Counsel very seriously and is fully aware of its obligations regarding the submission of claims in this matter. As discussed herein, it has been discovered that one of the firm's referral partners submitted fraudulent claims to us, which we then submitted. We are embarrassed and have immediately terminated our relationship with this referral

- 3 -
4868-5361-5041.v1

partner. We have withdrawn all improper claims and, as discussed herein, we are undertaking an audit of every claim submitted to this Court. As discussed herein, although we have an excellent internal review process for every submitted claim, these claims somehow slipped through without detection. In that regard, we are strengthening our internal audit and review procedures so that this will not happen again. We would ask that the Court give the firm two weeks to complete this process, whereupon we will provide a more complete and detailed analysis of all claims submitted by the firm.

This issue first came to light when the team processing submissions and conflicts caught on to a pattern on or around May 5, 2024. There was a sudden increase in the number of conflict notifications from a series of high-profile corporations that started coming through. This included correspondence from several in-house counsel or outside-counsel for these businesses/merchants where they asserted that Milberg did not have authority over the claim. Some asked how or why Milberg was bringing the claim when they had been representing that merchant for a great deal of time. The simple answer was that Milberg had a signed Authorization to Represent on behalf of the merchant. It was through the first few conflict notifications of this sort that the pattern was recognized, and it was determined that the names and contact information for the person signing the agreement were not authorized to do so on behalf of these businesses. The processing team made numerous attempts to reach the signing parties of these agreements in an effort to validate their authority and authenticity. It became more apparent that there was a systemic issue. At this point, Milberg had started withdrawing from these claims and launched a deeper investigation internally. The initial finding was that all conflicts following this pattern came from a single referring source.

On May 7, 2024 the issue was brought to the attention of the referring source. It was explained that a series of high-profile submissions were disputed and that many of the names of the

signing parties were found to be invalid. A list was ultimately provided to Milberg containing the leads this referral source had compiled. This referral source was immediately removed from any further involvement on the project. This list of leads contained the merchants that Milberg provided to Class Counsel on May 23, 2024. Milberg sent notice to the referring party on May 23, 2024 severing the referral relationship. Although, it is worth noting that Milberg hasn't received a referral from this source since March 25, 2024.

While Milberg is still investigating, Milberg believes it has isolated the issue to this single referral source. Moreover, Milberg is fully cooperating with Class Counsel. Immediately upon Class Counsel's request, Milberg provided a spreadsheet of the claims submitted by this referrer and then offered to withdraw all claims submitted through the referral source. Milberg then terminated its relationship with this referrer, advised it will no longer be accepting any more referrals from this referrer, and then sent an email to the referrer documenting all of this.

In the meantime, Milberg has voluntarily undertaken an independent audit of all the claims it submitted – regardless of the source – to ensure the accuracy of the outstanding claims. In addition, an employee has been disciplined within Milberg for failing to follow protocols for claim submissions. At this time, while Milberg is still investigating, it has no reason to believe this issue involves claims beyond those from the referrer at issue.

Further, Milberg has advised Class Counsel that it will fully cooperate regarding any additional questions surrounding the claims it submitted. To that end, Class Counsel has raised a number of questions in this status report, which Milberg answers as follows:

- Who is the referring entity?;

    **ANSWER**: Laverne Hallak of San Diego, California

- Are there other referral partners following the same pattern?;

- **ANSWER**: Milberg is not aware of any other referral partners that fit this pattern.

- How was or is that entity being compensated?;

    **ANSWER**: The referral source was to be invoiced for time and services, to be reconciled upon completion of the project. There is a service agreement in place that in no way suggests or states any fee percentage paid to a non-law firm referral partner.

- When did Milberg learn of this issue?;

    **ANSWER**: Answered above.

- What exactly did Milberg do when it learned of this issue (which it appears it knew at least in part before Class Counsel's call)?;

    **ANSWER**: Answered above.

- How were these contracts vetted – if at all?; and

    **ANSWER**: The contracts were vetted by evaluating corporate information provided by the signing party, including the corporation or merchant name, Tax Identification Number, and other merchant detail. Regular spot audits and engagement with merchant clients throughout the duration of the process also occurred. We have now implemented a much more robust audit process going forward in addition to auditing every claim that has been submitted.

- What screens or rules has Milberg implemented regarding referrals generally?

    **ANSWER**: Milberg always requires its referring partners to uphold the highest compliance standards. Any referring partner must verify and validate their referred parties/cases/clients/leads in an effort to prevent fraudulent submissions. A document outlining Milberg's referral partner compliance standards is also supplied during the onboarding of any referral partner. Despite the foregoing, obviously these procedures need improvement which we are currently investigating.

Moving forward, Milberg has voluntarily agreed to undertake an audit of every single claim it has submitted to date to verify for accuracy. This process includes contacting every merchant to verify they still want Milberg to handle their claim. To the extent a merchant declines, Milberg will withdraw from handling that merchant's claim. Milberg anticipates this entire process will take

approximately two weeks. Milberg is not submitting any further claims in connection with this action and will continue to cooperate with Class Counsel should any further issues arise.

## B. Additional Matters

In the past month, Class Counsel has been able to have corrections made to solicitations from a third party that failed to include the required disclaimer language. This company agreed to send a corrective communication within days of being alerted to a concern.

Another company was discovered to be soliciting merchants without any disclaimer language. Further, the company appeared to claim that it knew how much a merchant could expect to receive. Class Counsel sent an overnight letter to an address associated with the company, sent a LinkedIn message, and also sent a letter to an email address that appears to be related to the company. A call with the company's counsel appears to have corrected the matter. They agreed to remove all misleading information and further agreed to include the proper disclaimers on any materials going forward. At this time, no further action is suggested.

Another issue was brought to Class Counsel's attention on Monday, May 20, 2024. In that case it appeared that a referral partner of a claims-filing company had, without permission, created solicitation materials that failed to include the disclaimer language and made a number of misleading statements. A call with a representative of the claims filing company has resulted in a number of corrective measures being immediately taken, including: the company sending a cease-and-desist letter to the referral partner; notification to affected clients and potential claimants that had been referred; communication with all of the company's referral partners; and a decision to cease accepting new claims. The speed at which the corrections were taken, as well as the responsiveness of the company, indicate that no further action is needed at this time.

## III. UPDATES REGARDING THIRD-PARTY ISSUES

### A. Conflict Notices

As part of the claims process, on March 8, 2024, Epiq began sending conflict notices where more than one registrant has registered to file claims for the same Tax Identification Number

- 7 -
4868-5361-5041.v1

("TIN")/Legal Entity. This conflict most often occurs when a third-party claims-filing company and a merchant have both registered to file claims for the same TIN. The conflict notices provide contact information for the other registrant in conflict and requests that the parties resolve the conflict amongst themselves (where possible) and alert Epiq as to how it is to be resolved. In many instances, Epiq has received responses from merchants expressing confusion and annoyance upon learning about a prior agreement with a third-party filer that they do not remember or recognize. Class Counsel has contacted class members and third parties regarding these conflicts. More than 75 communications have been sent and in the vast majority of cases the third party agreed to step back and allow the class members to file on their own Some third parties have yet to respond and regular follow-up emails have been sent. To the extent no resolution has been reached, those conflicts will likely go to the Special Master for resolution.[3] Where appropriate, Class Counsel will provide details to aid the Special Master. There are many conflicts yet to be resolved. Epiq is actively managing issues related to conflicts.

A new issue related to conflicts has recently surfaced. Class Counsel and Epiq are still attempting to gather information regarding the matter. In short, certain third party filing entities who are in conflict with other third-party filers have reported that at least two third parties are insisting that in order to resolve any conflict, the company with the larger percentage recovery rate be the "winner" of the conflict and the parties would then split the fee, without regard for other issues such as the date a contract was entered. Class Counsel's primary concern is whether class members are being given notice that a conflict is being resolved in this manner, with the higher rate "winning." Class Counsel and Epiq have calls set up with two of the entities who were named. A proposed solution related to this practice was raised by one of the companies who provided examples of communications going to class members. These examples appeared to provide sufficient disclosure

---

[3] Other conflict notices have also issued, including conflicts between third-party filing companies and claims-buying entities as well as conflicts between claims-buying entities and merchants.

and Epiq and Class Counsel are considering sending a communication to all known third parties suggesting best practices regarding the settling of conflicts and disclosure to class members.

## IV. OUTREACH TO THIRD PARTIES BY EPIQ

As Class Counsel previously reported, since August 18, 2023, Epiq has been performing specific outreach efforts to known third-party claims filers.

As of May 13, 2024, Epiq has been in communication with 256 third-party claims filers, law firms, and non-traditional bulk filers following the outreach that took place on August 18, 2023. Of those 256 third parties, Epiq has received client lists from 60 third-party claims filers which claim representation of 289,712 TINs. These client lists also include multiple rows for a single TIN, and multiple rows that lack TINs or have invalid TINs (alphabetic characters, too few or too many digits). Several third-party claims filers have combined their documentation into a single .pdf that covers multiple clients, so the true number is likely higher than the current document count can substantiate. Work continues, including the development of processes to efficiently handle the expected increase in third-party claims.

## V. CONCLUSION

Class Counsel will continue to apprise the Court regarding issues with third-party claims filers via monthly reports and will bring urgent matters to the Court's attention via letter or other means should the Court wish a different method to be used. The next monthly report will be filed on June 28, 2024.

DATED: May 24, 2024

ROBBINS GELLER RUDMAN  
  & DOWD LLP  
PATRICK J. COUGHLIN  
ALEXANDRA S. BERNAY

s/ Alexandra S. Bernay  
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBINS KAPLAN LLP
K. CRAIG WILDFANG
THOMAS J. UNDLIN
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs