UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | No. 05-md-1720 (MKB) (JAM) |
| This Document Relates to:<br><br>*Target Corp. et al. v. Visa Inc. et al.*,<br>No. 13-cv-05745 (MKB) (JAM)<br><br>*7-Eleven, Inc. et al. v. Visa Inc. et al.*,<br>No. 13-cv-05746 (MKB) (JAM)<br><br>*Grubhub Holdings, Inc. et al. v. Visa Inc. et al.*,<br>No. 19-cv-06555 (MKB) (JAM) | Conference Scheduled:<br><br>June 13, 2024 |

**PARTIES' JOINT STATUS REPORT**

The parties respectfully submit this joint status report in advance of the status conference in the Direct Action Plaintiffs' cases in MDL 1720 scheduled to follow the 2:00 p.m. hearing on preliminary approval of the Rule 23(b)(2) class action settlement, pursuant to the Court's Order of April 11, 2024.

**PLAINTIFFS' SUBMISSION**

I.  **Background Relevant to This Report**

There are three remaining Direct Actions coordinated for pretrial proceedings in MDL1720, one of the oldest multidistrict litigation cases still pending. The *Target* action, involving 17 merchants, was filed in May of 2013. The *7-Eleven* action, involving 43 remaining merchants, was filed on June 26, 2013. The *Grubhub* action, involving 7 merchants, was filed on November 4, 2019. The *Target* and *7-Eleven* actions were each filed in the Southern District of New York; the *Grubhub* action was filed in the Northern District of Illinois. Each of these

1

actions involve Plaintiff claims for monetary damages beginning on January 1, 2004—twenty years ago. In short, these Direct Action Plaintiffs ("DAPs") have been fiercely litigating for more than a decade.

Fact discovery in the *Target* and *7-Eleven* cases (other than limited, targeted supplementation) ended six years ago, in 2018. Expert discovery (other than supplementation that will occur soon) concluded over four years ago, in February 2020. Virtually all summary judgment motions were denied by the Court in comprehensive rulings totaling several hundred pages in the Fall of 2023 and Winter of 2024. The Court also decided a dozen *Daubert* motions in the Fall of 2022. In November 2023 the parties substantially completed the supplemental fact discovery ordered by the Court in May 2023.

## II.     Scheduling for the Trial of the Target and 7-Eleven Plaintiffs

Given this Court's comprehensive rulings, which delineate the scope of claims to be tried and the expert evidence admissible at trial, these Plaintiffs' claims are now ready to be decided by a jury. There is no reason to delay setting them for trial. To do so, the Court lacks only three things: (i) Defendants' decision on whether they will waive their *Lexecon* rights and agree to try these claims, here, in the Court most familiar with them; (ii) a prompt schedule to brief remand proceedings, if Defendants do not consent to try these cases here; and (iii) regardless of the ultimate court in which these cases will be tried, a schedule to complete the required components of a Joint Pretrial Order. All are issues ripe for decision and a proposed Order establishing a schedule for all of them is attached as Exhibit "A" to this submission.

**Issue One – Scheduling a Consolidated Jury Trial Before this Court.** It is the preference of both the *Target* and the *7-Eleven* Plaintiffs that this Court retain jurisdiction and promptly try their cases together, given the Court's deep familiarity with the facts and law

2

governing these cases. That familiarity, shown through the hundreds of pages that comprise the Court's *Daubert* and summary judgment Orders, will allow these decade-old matters to finally be resolved in an efficient manner—something that is critical, as the issues that these cases raise are of substantial public import, touching virtually every American consumer, merchant, and financial institution. In addition, a joint trial will serve the interests of justice, avoid any risk of inconsistent adjudications, and remove the burden associated with having two juries decide claims concerning the same anticompetitive conduct. Accordingly, it would be helpful for all parties to know whether this Court is willing to retain jurisdiction and try the *Target* and *7-Eleven* actions together. If the Court is willing to retain jurisdiction, the *Target* Plaintiffs and the *7-Eleven* Plaintiffs ask that the Court now schedule these cases for a prompt jury trial on liability and damages.

By previous stipulation of all parties, *see* ECF No. 7397, the jury trial of both Direct Actions is limited to issues of liability and damages. The jury trial will <u>not</u> address injunctive relief. Instead, by agreement of all parties, "the scope and form of any injunctive remedy ***is a matter to be decided by a trial judge, not a jury***." (Emphasis added). This Court "so ordered" this stipulation with the following notation: "The stipulation, Docket Entry [7397], is so ordered. ***In the event of a subsequent finding of liability***, the parties shall confer regarding a schedule for the serving of expert reports directed at the scope and form of any proposed injunctive relief and report to the Court within twenty-eight days following any such liability determination . . . ."

Below, Defendants argue that preparations for a jury trial should not proceed now, but rather should be delayed until the Court determines whether the DAPs maintain claims for injunctive relief. That is meritless, particularly because the jury has no authority to adjudicate injunction claims in the first place. Contrary to defendants' argument, the trial of DAP liability

3

and damages claims must precede any determination of DAP injunctive claims. That way, the Court can consider the effect of any "finding of liability" in deciding whether to grant further injunctive relief, which is "a matter to be decided by a trial judge, not a jury."

Under *Lexecon*, any party has the right to insist that these cases be remanded to the Court where they were filed; in this instance, the Southern District of New York (before the Honorable Alvin J. Hellerstein). The *Target* and *7-Eleven* Plaintiffs share a strong belief, however, that it would serve the interests of justice and be far more efficient to try their cases in this Court. This Court has deep familiarity with the evidence, as well as the parties' claims and defenses. It has decided the law governing the trial of these actions in comprehensive summary judgment rulings. And it has resolved all issues related to the admissibility of expert testimony and defined which issues will—and will not—go to the jury for decision.

We ask the Court, therefore, to advise the parties at the conference:

- Whether it would retain jurisdiction to try these cases if all parties will consent; and,
- If so, on what date the Court could convene the liability and damages trial of these cases.

To assist the Court in identifying a trial date on the Court's docket, the Plaintiffs anticipate that a consolidated trial of both the *Target* and the *7-Eleven* actions would require no more than twelve weeks of trial time.

**Issue Two – Potential Remand Proceedings.** Notwithstanding that this Court has become fully familiar with the facts and law in these proceedings and the judicial economy that having a trial before this Court would foster, it is unclear whether Defendants will agree to waive their remand rights under *Lexecon*.

We have asked Defendants repeatedly whether they intend to insist on remand; to date, they have refused to answer this question. Accordingly, we request that the Court order each Defendant to state by **June 30, 2024** whether it invokes its remand rights or not.

No purpose is served by allowing Defendants to continue to vacillate on this crucial question. Defendants have all the information they need by now to decide whether they will demand remand under *Lexecon*. Plaintiffs' position on trial structure—that there should be an efficient, consolidated trial of all DAP claims—is well known to Defendants and supported by both law and economy considerations (as we set forth further below). If Defendants intend to demand remand, then they should be compelled to do so promptly, to ensure these cases can proceed to trial.

In their section below, Defendants appear to suggest, for the first time, that they may "consider waiving *Lexecon* if . . . the parties are able to reach agreement" on trial structure. *See infra* Excuse No. 3.  Respectfully, the *structure* of any trial has no bearing on *where* the trial will occur. Defendants' suggestion that they would be willing to "discuss a trial before this Court that looks dramatically different" so long as it is "non-preclusive," *see infra*, is remarkable only for its cheek. No Court is obliged to spend its time trying a case that will have *no effect at all* on the Defendants' conduct.

Determining where a trial will occur is a threshold issue that should be resolved now and a schedule to invoke remand rights will do that. If Defendants do not agree to try these cases here, in a consolidated trial, then we request that the Court immediately remand both actions to the SDNY. In that event, the DAPs will respectfully urge this Court to include in its suggestion of remand a communication to the SDNY suggesting (a) the propriety of a transfer of both cases back to this Court for trial under 28 U.S.C. § 1404, or (b) an intra-circuit assignment order

authorizing this Court to sit, temporarily and by assignment, as a judge in the SDNY, pursuant to 28 U.S.C. § 292(b). In the alternative, if Defendants invoke their remand rights, then the Court should establish a concise briefing schedule for remand motions. We propose the following schedule:

    **July 12, 2024:**    Motions to Remand filed

    **July 26, 2024:**    Responses to Motions to Remand filed

    **August 2, 2024:**    Replies in Support of Motions to Remand filed

**Issue Three - Schedule for Joint Pretrial Order.** Regardless of where trial will occur, the Court should also now establish dates for completing the required elements of a Joint Pretrial Order. At the core of Rule 16 is the expectation that parties will cooperate with the Court "to formulate a trial plan, including a plan to facilitate the admission of evidence." Fed. R. Civ. P. 16(e). Pursuant to this Rule, this Court, *see* Chambers Rule 4(A-B) ("Joint Pretrial Orders in Civil Cases") and Judge Hellerstein in the Southern District of New York, *see* Chambers Rule 3(A-B), each mandate that all parties cooperate in preparing a Joint Pretrial Order embodying all key components of a Rule 16(e) trial plan, including exhibit lists, witness lists, voir dire questions, and the jury instructions.

For months, the DAPs have sought to negotiate an agreed-upon schedule to complete the Joint Pretrial Order with the Defendants. Unfortunately, Defendants have steadfastly refused to provide *any* alternative dates to complete these tasks. Accordingly, we request that the Court order all parties to complete an agreed schedule for completion of the Joint Pretrial Order by **June 30, 2024**, or, in the alternative, submit their competing scheduling proposals to the Court by that date.

Defendants, below, continue to argue that it is "premature" to set these actions for trial and to schedule pretrial procedures because of the claimed uncertainty about whether injunctive relief will remain available to the DAPs when they try their cases. As we discuss above, none of these issues should impede the parties' ability to set a reasonable schedule for completing pretrial tasks for a *jury* trial. The availability *vel non* of injunctive relief is a dispute that has no bearing on either the trial setting or the content of the Joint Pretrial Order, because both concern only issues that will be submitted to the jury for decision. No part of the Joint Pretrial Order is even conceivably affected by whether these Plaintiffs are entitled to seek injunctive relief if they prevail at trial, because the jury will not decide that question at all. Only the Court can decide that question and it can do so *only after* the Plaintiffs prevail in proving liability to the jury in the first instance. Defendants' assertion that a jury trial on liability cannot happen until after the availability of injunctive relief is decided, after stipulating that injunctive relief cannot be decided until after the jury trial on liability happens, is a circular argument made with one obvious goal in mind: delaying a liability trial for months, if not years, unless the DAPs abandon their statutory right to injunctive relief, right now. Nothing in the antitrust laws or the settlement requires such an onerous result.

Defendants' gambit is simple: they are attempting to delay the prosecution of the DAPs' claims indefinitely. The Court should reject this for many reasons. *See e.g.*, ECF No. 9220 (Target Pls. Opp'n to Application for Prelim. Approval) at 6-10 (identifying how Class Counsel's request to stay Plaintiffs' cases creates an impermissible intra-class conflict); 7-Eleven Obj. at 10. The attempt to impose a punitive "stay" only on the DAPs seeks, in effect, to impose a wrongful and *de facto* anti-suit injunction against the prosecution of DAPs' damages claims, without meeting any part of the extraordinarily high burden required to obtain such an

7

injunction. *See, e.g.*, *Alfandary v. Nikko Asset Mgmt. Co.*, 2021 WL 1577649, at *3 (S.D.N.Y. Apr. 22, 2021) ("anti-suit injunctions should be used sparingly and 'granted only with care and great restraint'") (internal quotation marks omitted). The Court should reject that.

Defendants offer an array of excuses for their refusal to discuss a pretrial schedule and trial setting for these cases. None have merit.

**Excuse No. 1:** Defendants claim they are unsure of the anticipated trial's scope: in particular, Defendants have claimed that they are unsure of which Plaintiffs will be participating in the anticipated trial. This is false. On multiple occasions, Plaintiffs reaffirmed their proposal that all DAP claims be adjudicated in a consolidated trial.

**Excuse No. 2:** Defendants suggest that they cannot engage in scheduling discussions now because it may be "unfairly prejudicial" to require them to try a single, consolidated case against the 60 Plaintiffs prosecuting the DAP actions. They apparently also claim that such "prejudice" would exist even if the *Target* or *7-Eleven* plaintiffs tried their cases without consolidation. Indeed, we understand that Defendants have made the same assertion of prejudice in the *Grubhub* action where there are only 7 plaintiffs.

Defendants' claim of prejudice—to the extent that they are making that claim—should be rejected. The law presumes that claims filed together will be tried together: courts routinely "'permit all logically related claims by or against different parties to be tried in a single proceeding.'" *Todaro v. Siegel Fenchel & Peddy, P.C.*, 2008 WL 682596 at *2 (E.D.N.Y. Mar. 3, 2008) (*quoting Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)); s*ee also Morris*, v. *Northrop Gruman Corp.*, 37 F.Supp.2d 556 (E.D.N.Y. 1999). Here, Defendants' conduct towards all of the Plaintiffs has been uniform: through twin horizontal conspiracies, they have imposed their default interchange and Honor All Cards rules on all of the DAPs (not to

8

mention tens of millions of other merchants) forcing all of them to pay inflated supra-competitive prices for necessary payment card services. Efficiency, in addition to law, thus demands that the matters be tried together.

**Excuse No. 3:** Defendants also suggest a consolidated trial would be inefficient. For the first time, they claim that they may also be "willing to discuss a trial before this Court that looks dramatically different—for example, ***a non-preclusive bellwether trial*** involving two to four plaintiffs to be selected by the parties." *See infra* p. 18 (emphasis added). This is just another gambit to stave off a trial setting and avoid a deadline to complete the Joint Pretrial Order. No judicial efficiency is to be gained (in fact, efficiency is *lost*) through Defendants' proposal for serial, *non-preclusive* trials, even assuming the law permitted the empty charade trial Defendants propose, which it does not.

The Court has before it two cases of national importance, filed by some of the nation's largest merchants against some of the nation's largest financial institutions, asserting claims arising from concerted, intractable, interlocking conspiracies that operated uniformly as to all Plaintiffs. Having separate trials of these claims—with the risk of inconsistent adjudications on the lawfulness of these rules that would entail—would be wholly inefficient. It would also have potentially disastrous economic consequences, as inconsistent results could leave both the DAPs and Defendants without the certainty a decisive, consolidated adjudication can provide. Judicial economy is not served by trying, in serial fashion, each plaintiff's individual damage claim when—as it does here—the liability of Defendants for all claims, of all Plaintiffs, rests on the same liability facts.

Adjudicating the legality of Defendants' uniform conduct in a single trial is not only fair but will serve purposes of judicial economy and vindicate the Seventh Amendment, which

9

protects the *general right of a litigant to have only one jury pass on a common issue of fact.*" *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 513-14 (1931)).

### III. Grubhub Plaintiffs' Position

The Grubhub Plaintiffs' Motion for Suggestion of Remand has been fully briefed and at issue since April 22, 2024. The Grubhub Plaintiffs respectfully seek a ruling on this motion and are prepared to address any questions the Court has regarding the motion at the status conference. In brief, Defendants concede that the Court has resolved all discovery issues and pretrial motions related to the Grubhub Plaintiffs' claims. Defendants' only basis for opposing remand is the assertion that the Court should not remand the case until it has determined whether to grant final approval to the injunctive relief class's proposed settlement, or until the Grubhub Plaintiffs dismiss their individual claims for injunctive and declaratory relief.

The Grubhub Plaintiffs dispute that remand should be linked to resolution of the proposed class settlement. First, after remand the Grubhub Plaintiffs would remain members of the injunctive relief class, and bound by any orders the Court directs to members of the class, unless or until the Court determines that the Grubhub Plaintiffs should no longer be members of the class. Second, under this Court's April 18, 2019 Entry adopting the parties' April 17, 2019 Stipulation and Proposed Order (ECF # 7397), injunctive relief has been bifurcated from the trial of liability and damages claims, and, accordingly, the issue of whether the Grubhub Plaintiffs can seek injunctive relief would only become ripe after they succeed at trial on liability. While Defendants claim that they would somehow try the liability case differently if they face the possibility of injunctive relief, despite repeated requests, they have failed to offer any explanation of how they would defend the case differently than if they are "only" facing the

10

Grubhub Plaintiffs' $1.89 billion damages claims. Finally, delay in remanding the Grubhub Plaintiffs' claims for trial prejudices these plaintiffs by exposing claims that are now ready for trial to the need for supplemental discovery and the increased chance that important witnesses will become unavailable.

## DEFENDANTS' SUBMISSION

Defendants have been willing to discuss reasonable and efficient next steps to move the *7-Eleven*, *Target*, and *Grubhub* actions closer to trials on their damages claims—the only claims that the opt-out Plaintiffs have following this Court's certification of a mandatory class under Rule 23(b)(2). The most significant impediment to progress has been the Plaintiffs' refusal to budge from their unreasonable and unworkable demands. In this status report, Plaintiffs first improperly re-argue their already ruled upon (and rejected) objections to this Court's certification of a non-opt-out class, and use that as a basis to insist on an entitlement to pursue individualized injunctive relief claims in their damages actions. Defendants have advised Plaintiffs that their insistence on a right to press claims for injunctive relief in their individual cases (in contravention of this Court's certification order) stands in the way of making any real progress on advancing their cases to trial, but Plaintiffs have refused to reconsider their stance.

In addition to insisting that, notwithstanding the Court's earlier ruling certifying a non-opt out injunctive relief class, they are entitled to seek the very relief that the non-opt out class is seeking, Plaintiffs seek to dictate the structure, location, timing, and logistics of a trial. As Defendants have made clear, Plaintiffs' proposal is unworkable and highly prejudicial: The 7-Eleven and Target groups propose—and ask the Court to bless the idea of—a single, consolidated, *60-plaintiff, 3-month* jury trial.

11

Plaintiffs' tactics fly in the face of the Court's previous rulings, would create the chaos of different plaintiffs with different experts seeking different injunctive relief with respect to the same market-wide rules, and would result in an overlong, massively inefficient, and confusing trial that would deny Defendants their due process right to defend each claim by each individual plaintiff. Their approach should be rejected out of hand. Defendants should not be forced to face the prospect of multiple injunctions setting different network rules for different merchants; it was to avoid this scenario that a mandatory (b)(2) class was certified and a class settlement accomplished. Defendants should also not be compelled to perform the time-consuming, expensive work necessary to generate exhibit lists, witness lists, deposition designations, and other pre-trial submissions in the abstract, for an unscheduled trial of unknown scope. Sensible trial practice dictates that these materials should be prepared once it is clear what case will be tried and where, and once the parties have agreed upon, or a court has ordered, a trial structure that is reasonable and practicable. Plaintiffs' 12-week all-merchant trial proposal fails that basic test..

Defendants are not seeking indefinite delay, as Plaintiffs unfairly contend. Defendants respectfully submit that this Court should continue to proceed in an orderly manner to address the injunctive relief issue in the context of the Rule 23(b)(2) settlement approval process, permit the parties to continue to prepare for trial through the agreed-upon expert supplementation schedule, and then address remand and trial issues thereafter, once they become ripe.

I.  **Status of the Opt-Out Actions and Rule 23(b)(2) Class Settlement**

As described in the parties' joint status report dated April 21, 2023 (ECF No. 8819), the great majority of actions brought by plaintiffs who opted out of the Rule 23(b)(3) class settlement have now been settled and dismissed. Of the thirty opt-out actions consolidated in

MDL 1720, only five actions remain pending before this Court: the *7-Eleven* action (where twenty-four plaintiffs including 7-Eleven have settled); the *Target* action (where one plaintiff has settled); the *Grubhub* action (which has overlapping counsel with the *Target* action, and where no plaintiffs have settled); and the later-filed *Intuit* and *Block* actions, both brought by the same counsel. The *7-Eleven*, *Target* and *Grubhub* actions alone have 67 merchants remaining in the case.

The parties in the *7-Eleven* and *Target* actions concluded the bulk of document discovery in 2016; supplemental document discovery was substantially completed in November 2023. The parties have largely agreed to a schedule to supplement expert discovery, which will conclude on December 3, 2024. The parties in the *Grubhub* action substantially completed fact and expert discovery in March 2023. The Court has now ruled on summary judgment motions in all three actions, and has recently ruled on motions in the *Intuit* and *Square* actions that have substantially circumscribed those actions.

On March 26, 2024, the Rule 23(b)(2) class filed a motion requesting preliminary approval of a settlement reached after years of extensive negotiations with Visa and Mastercard. (ECF No. 9179.) If approved, the proposed settlement would require Visa and Mastercard to make significant changes to their rules and practices, including reforming each network's merchant steering rules and imposing interchange rate caps and rollbacks for the benefit of the class as a whole. Consistent with this Court's order certifying a mandatory Rule 23(b)(2) class, *see DDMB, Inc.* v. *Visa, Inc.*, 2021 WL 6221326, at *49 (E.D.N.Y. Sept. 27, 2021), the proposed settlement would release the equitable relief claims of all class members, including all such claims asserted by Plaintiffs in the opt-out actions. (ECF No. 9179-2, at ¶¶ 80, 82(a).) The proposed preliminary approval order likewise contains an express provision staying the ability of

13

all class members, including all opt-out Plaintiffs, from pursuing any injunctive or equitable relief claims in parallel actions.  (ECF No. 9179-8, at ¶ 21.)  Those opt-out Plaintiffs are not restricted from pursuing their individual liability and damages claims.

## II.     Plaintiffs Should Not Be Permitted to Pursue Any Equitable Relief Claims.

The Rule 23(b)(2) class settlement has now been submitted to this Court for preliminary approval, and the equitable relief stay provision in the proposed order is now before the Court.  Until the Court expressly resolves the issue of whether these Plaintiffs are entitled to pursue individual equitable relief claims as part of any damages trial or otherwise, the *7-Eleven*, *Target*, and *Grubhub* actions should not be remanded, and the parties in the opt-out actions should work within MDL 1720 to complete expert supplementation.

Despite the Court's certification of a mandatory Rule 23(b)(2) class—from which no opt-outs are permitted, and from which Plaintiffs did not seek interlocutory appellate review—Plaintiffs in those actions have made clear in this report and in their preliminary approval objections that they wish to have the right to opt out to pursue claims for equitable relief in conjunction with their trials on their individual damages claims.  *See*, *supra*, and ECF No. 9220 at 4; ECF No. 9221 at 1; ECF No. 9230 at 6.  But while Plaintiffs complain about Defendants dragging their feet, it is the Plaintiffs themselves that are injecting delay into the process by insisting on pursuing equitable relief claims that as absent class members they are not entitled to pursue.

For reasons set forth in greater detail in Defendants' prior submissions to the Court, including their response to the Grubhub Plaintiffs' motion for a suggestion of remand (ECF No. 9199), Plaintiffs should not be permitted to re-argue positions that were already rejected by this Court in establishing a mandatory (b)(2) class.  Class counsel has litigated the equitable class

14

claims and is now moving for approval of a settlement that reflects numerous network rule changes and other equitable relief to be provided by Visa and Mastercard. If the opt-out Plaintiffs were simply free to ignore the Court's certification order and collaterally attack it by seeking varying and inconsistent network rule changes through satellite litigation, the entire premise for the certification of a mandatory class and a class-wide settlement would be eviscerated. Having settled a mandatory class action including all merchants, Visa and Mastercard should not be compelled to defend against continuing individual attacks, seeking other rules changes, by absent class members that are permitted to pursue only damages claims.

Plaintiffs' repeated reliance on a stipulation from 2019 addressing post-trial expert reports is meritless. That stipulation stated only that, in the event of a liability finding, the parties would confer regarding a schedule for serving expert reports addressing "the scope and form of any proposed injunctive relief." (ECF No. 7397.) But, as explained in Defendants' memorandum in support of preliminary approval of the proposed Rule 23(b)(2) class settlement (ECF No. 9292 at 23), that stipulation has been entirely superseded by this Court's (b)(2) class certification opinion issued several years later that subsumed all equitable relief claims into the (b)(2) class action. The 2019 stipulation retains no weight because equitable relief claims have not been available in any individual actions since 2021. Particularly on an issue as significant as this one, Plaintiffs' repeated attempts to use the 2019 stipulation as a "gotcha" tool are absurd.

The Grubhub Plaintiffs are in no different position in this respect. They assert that they are ready to proceed to trial in the Northern District of Illinois, but they too refuse to acknowledge that any equitable relief claims that they may have had have been subsumed by the (b)(2) class certified by this Court.

All Plaintiffs complain that Defendants have not explained why they could not proceed with a damages trial until this Court addresses their attempt to pursue conflicting injunctive relief orders in another venue. They contend that a jury will only assess damages and the trial court will be addressing any equitable relief separately. But Defendants' concern should be obvious: So long as Plaintiffs insist that they retain some right to pursue conflicting injunctive relief, Defendants have no idea what a judicial "remedy" phase of any damages trial would look like or what a judge will want to hear, and thus would have to alter their liability trial presentation to have witnesses and evidence address the dangers and risks of potential remedies that Plaintiffs may seek, the future of the industry, and other forward-looking issues that likely will be very different from the witnesses and evidence Defendants would rely on in a case focused only on past damages.

Accordingly, Defendants request that the Court confirm that the opt-out Plaintiffs have no entitlement to equitable relief in their individual actions. Plaintiffs remain free to object to settlement approval in this Court if they wish, and the parties should continue to engage in trial preparation by completing expert supplementation and related deposition discovery in this Court in the coming months.

### III. Plaintiffs' Current Proposed Trial Structure Is Not Acceptable.

For the reasons above, the Court should not countenance Plaintiffs' repeated efforts to force premature decisions by Defendants on remand and trial structure. The parameters of any such trial or trials—including the scope of the requested relief, the identity of the court(s), timing, and how such a multiple-merchant, large damages jury trial can be structured to protect jurors and the fairness to the parties alike—remain entirely uncertain. Nonetheless, Plaintiffs are now pressing Defendants to consent to a single trial of the *7-Eleven* and *Target* cases before this

Court, encompassing the individual claims of some 60 merchants, which Plaintiffs blithely suggest can be tried before a jury for 12 weeks. None of the cases Plaintiffs cite above to support a single trial of all parties come remotely close to addressing the complex and burdensome structure proposed by Plaintiffs.

As Plaintiffs concede, Defendants have a right to have these actions remanded to the courts where they were originally filed. *See Lexecon Inc*. v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998). Given Plaintiffs' insistence on pursuing a massively complicated, consolidated trial involving 60 plaintiffs that Defendants believe will be unfair and prejudicial to them, as well as highly confusing to jurors, Defendants have not agreed to waive their *Lexecon* rights. Defendants remain willing to discuss different trial structures and further consider waiving *Lexecon* if Plaintiffs move away from their unreasonable position and the parties are able to reach agreement.

Plaintiffs' trial structure proposal is also unworkable. A joint consolidated trial of both actions in this Court—which would involve no less than 60 mostly large corporate plaintiffs covering a 20-year damages period, and multiple sets of counsel for each of the two plaintiff groups and the six defendants—would be highly prejudicial to Defendants, and impose substantial burdens on the Court and any jury. Among other obvious issues, Plaintiffs will not be able to credibly explain how each of these large corporate merchants will be able to prove up each of their cases while allowing their witnesses to be fairly cross-examined by Defendants to highlight for the jury weaknesses in each individual merchant's liability and damages cases. Dozens of merchant plaintiffs will almost assuredly lead to juror confusion and fatigue, unfair time restrictions, and a muddled record that does not befit a case of this magnitude. Even Plaintiffs concede that their proposed consolidated trial would require at least *twelve weeks* of

17

trial time (and in Defendants' view, would likely require an even longer period for Defendants to have a meaningful opportunity to present their defenses as to each Plaintiff).

The parties have discussed this issue and Plaintiffs have offered no alternative. Defendants remain willing to discuss a trial before this Court that looks dramatically different— for example, a non-preclusive bellwether trial involving two to four plaintiffs to be selected by the parties. Absent an agreement on a workable trial structure, Defendants have not waived their *Lexecon* rights. Regardless, however, there is no reason for the Court to address remand now before the equitable relief issue is resolved and expert supplementation in this Court completed.

### IV. It Is Premature to Set Trial Dates or Establish Pretrial Procedures

Finally, 7-Eleven and Target Plaintiffs' insistence on setting pretrial order schedules and obligations makes no sense and turns normal trial practice on its head. Plaintiffs contend that because the pretrial procedures of this Court and those of Judge Hellerstein in the Southern District are similar, this Court should order specific deadlines now. But this is unworkable and unfair where Plaintiffs have improperly injected confusion into the relief being sought in any trial, further proceedings are scheduled to take place in the MDL, the parties do not know which judge will actually hear the cases, each court may have its own ideas on trial structure, and the number of parties at trial will dictate the scope of the pretrial materials. Plaintiffs are demanding that Defendants identify pretrial materials for Plaintiffs' preferred consolidated trial, but Defendants do not agree to that structure. Witness lists, exhibit lists, deposition designations, and *in limine* motions will look very different depending on whether there are 60 merchants or 4, or whether a trial takes place next year or some later time in the future. Simply put, Defendants cannot practically name witnesses, identify deposition designations, or select exhibits for a trial

of unknown scope (involving unknown plaintiffs), in an unknown venue, to be held on some unknown date.

Sound considerations of judicial management also compel the conclusion that each judge trying the case should be afforded the flexibility to set any pretrial deadlines and trial schedule in the manner that makes sense for the court and the parties at the particular time.  Any trial court should determine trial structure and pretrial procedures in the case before it.  As Defendants have explained in their prior submissions to the Court, and in their discussions with Plaintiffs, it would be impractical, inefficient, and improper for the parties to stipulate—or for a different court to order—pretrial and trial structure, schedules and procedures when trial management issues are best left to the trial court.  Here, the parties should work together on expert supplementation and, of course, continue to efficiently prepare for trial on their own until the appropriate trial courts and structures are determined.

Dated:  June 6, 2024

Respectfully submitted for the parties,

**CONSTANTINE CANNON LLP**

By: /s/ Jeffrey I. Shinder

Jeffrey I. Shinder
A. Owen Glist
Ankur Kapoor
Taline Sahakian
David A. Scupp
6 East 43rd Street
New York, New York 10017
Telephone: (212) 350-2700
Email: jshinder@constantinecannon.com

*Counsel for the 7-Eleven Plaintiffs*

19