UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**SUGGESTION OF REMAND**
24-CV-4053 (MKB)

This document refers to:
*Mirage Wine + Spirits, Inc. v. Apple, Inc.*,
No. 24-CV-4053 (E.D.N.Y.)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 6, 2024, the above-captioned action was transferred from the United States District Court for the Southern District of Illinois to this Court for consolidation with *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MDL 1720) pursuant to an order of the Judicial Panel on Multidistrict Litigation (the "Panel"). (Notice of Case Transfer dated June 6, 2024, *Mirage Wine + Spirits, Inc. v. Apple, Inc.*, No. 24-CV-4053 (E.D.N.Y. June 6, 2024); Transfer Order dated June 5, 2024 ("Transfer Order"), *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720 (J.P.M.L. June 5, 2024), Docket Entry No. 534.)

For the reasons explained below, the Court respectfully issues a suggestion of remand to the Panel pursuant to 28 U.S.C. § 1407 and Rule 10.3 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.

## I. Background

### a. Factual background

Mirage Wine + Spirits, Inc. ("Plaintiff") brought this putative class action against Apple Inc., Visa Inc., and Mastercard Incorporated ("Defendants") for alleged violations of Section 1 of

the Sherman Act.[1]  (*See* Compl., *Mirage Wine + Spirits, Inc. v. Apple, Inc.*, No. 24-CV-4053 (E.D.N.Y.), Docket Entry No. 1.)  The alleged violations relate to agreements that Apple has with Visa and Mastercard, and the alleged effects of these agreements on the market for card transaction services.  (*Id.* ¶¶ 1–7.)

Visa and Mastercard operate networks that facilitate credit- and debit-card payments both in the United States and internationally.  (*Id.* ¶¶ 15–16, 22–24.)  The networks allow consumers, merchants, and banks to communicate and process these transactions, and for these services, Visa and Mastercard charge fees to financial institutions and merchants.  (*Id.* ¶¶ 23–24.)  In addition, card-issuing banks retain a portion of any transaction initiated using one of their cards.  (*Id.* ¶ 24.)  This fee is known as the "interchange fee," and Visa and Mastercard facilitate the deduction of this interchange fee from every card transaction that occurs on their networks.  (*Id.* ¶¶ 23–25.)

Apple designs and sells mobile devices, including iPhones, which allow users to make payments through the "Apple Pay" digital platform.  (*Id.* ¶¶ 14, 35.)  Cardholders can use Apple Pay to make card payments at any merchant that has a payment terminal with near-field communication ("NFC") technology.  (*Id.* ¶¶ 34–37.)  As of 2020, over 5,000 banks globally had enabled the use of Apple Pay to make payments using their cards.  (*Id.* ¶ 53.)

Plaintiff alleges that in 2014, Apple reached agreements with Visa and Mastercard with "three principal components that worked together to restrain competition" in the card transaction services market.  (*Id.* ¶¶ 54, 62.)  First, the agreements prevented Apple from creating its own

---

[1] The Court draws from the allegations in the Complaint solely to establish the nature of the action for comparison to the issues at the core of MDL 1720.  In addition, unless otherwise specified, all docket entry numbers refer to docket entries in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (E.D.N.Y.).

2

payment network to compete with Visa's and Mastercard's payment networks. (*Id.* ¶¶ 54, 65–70.) Plaintiff calls this aspect of the agreement a "horizontal market allocation" prohibited by federal antitrust laws. (*Id.* ¶ 66.) Second, the agreements prevented Apple from allowing users to transfer funds from their bank accounts directly to a merchant's bank account using Apple Pay. (*Id.* ¶¶ 54, 71–72.) Plaintiff contends that by preventing Apple from facilitating direct payments, this provision stopped Apple from offering merchants transaction fees lower than those offered by Visa and Mastercard, thereby eliminating a source of competition. (*Id.* ¶ 72.) Third, the agreements required Apple to prohibit third-party payment applications from using the NFC hardware on iPhones to facilitate payments. (*Id.* ¶¶ 54, 79–85.) Plaintiff contends that "by excluding potential competitors like PayPal and other fintech firms, such as Plaid, from access to the iPhone and Apple Watch's NFC hardware, Apple ensured the success of its horizontal market division" with Visa and Mastercard. (*Id.* ¶ 84.)

Plaintiff contends that, but for these agreements, Apple would have been incentivized to enter the payment processing market, allow direct bank-to-bank transfers, and allow third-party developers to use the NFC hardware. (*Id.* ¶¶ 55–56.) In exchange for each of these prohibitions, Apple received a small percentage of the value of every card transaction made using Apple Pay. (*Id.* ¶ 59–60.) Plaintiff alleges that this exchange prevented competition between Apple and the existing payment networks that would have otherwise driven down transaction fees that merchants pay. (*Id.* ¶¶ 86–97.)

    b.  **Procedural history**

On December 14, 2023, Plaintiff filed a complaint in the Southern District of Illinois against Defendants, alleging violations of Section 1 of the Sherman Act. (*See* Compl.) On January 5, 2024, Visa filed a Notice of Potential Tag-Along with the Panel. (Notice of "Tag

3

Along" Action, *In re Payment Card*, MDL No. 1720 (J.P.M.L. Jan. 5, 2024), Docket Entry No. 500.)  On February 2, 2024, the Panel entered a conditional transfer order stating that "[i]t appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of New York and assigned to Judge Brodie."  (Conditional Transfer Order 1, *In re Payment Card*, MDL No. 1720 (J.P.M.L. Feb. 2, 2024), Docket Entry No. 502.)  On February 26, 2024, Plaintiff moved to vacate the conditional transfer order.  (Pl.'s Mot. to Vacate Conditional Transfer Order ("Pl.'s Mot."), *In re Payment Card*, MDL No. 1720 (J.P.M.L. Feb. 26, 2024), Docket Entry No. 517; Pl.'s Mem. in Support of Pl.'s Mot., MDL No. 1720 (J.P.M.L. Feb. 26, 2024), Docket Entry No. 517-1.)  On February 28, 2024, the Direct Action Plaintiffs in MDL 1720 filed a response as an interested party in support of Plaintiff's motion to vacate the conditional transfer order.[2]  (*See* Direct Action Pls.' Resp. to Mot. to Vacate Conditional Transfer Order ("DAP's Mem."), *In re Payment Card*, MDL No. 1720 (J.P.M.L. Feb. 26, 2024), Docket Entry No. 523.)  On March 18, 2024, Defendants opposed Plaintiff's motion.  (Defs. Visa & Mastercard's Mem. in Opp'n. to Pl.'s Mot. ("Defs.' Opp'n"), *In re Payment Card*, MDL No. 1720 (J.P.M.L. Mar. 18, 2024), Docket Entry No. 525; Def. Apple's Mem. in Opp'n to Pl.'s Mot., *In re Payment Card*, MDL No. 1720 (J.P.M.L. Mar. 18, 2024), Docket Entry No. 526.)  On March 25, 2024, Plaintiff filed a reply to Defendants' responses.  (Pl.'s Reply to Defs.' Opp'n ("Pl.'s Reply"), *In re Payment*

---

[2]  The term "Direct Action Plaintiffs" refers to a group of plaintiffs who opted out of the damages settlement between the Rule 23(b)(3) class plaintiffs and defendants in MDL 1720 that was approved by the Court in 2019, and who subsequently filed opt-out actions that were consolidated with the *In re Payment Card* action.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F. Supp. 3d ---, ---, 2024 WL 278565, at *1 n.1 (E.D.N.Y. Jan. 8, 2024).

4

*Card*, MDL No. 1720 (J.P.M.L. Mar. 25, 2024), Docket Entry No. 528.) Finally, on June 5, 2024, the Panel entered an order transferring *Mirage* to this Court. (*See* Transfer Order.)

In support of its motion to vacate the conditional transfer order, Plaintiff first argued that, "[u]nlike the MDL 1720 actions, which focus on the rules and practices that allegedly inflate the fees that Visa and Mastercard impose on merchants, *Mirage* takes those fees as a given, and challenges in a single count Apple's agreements with Visa and Mastercard to refrain from establishing a competing payment network," (Pl.'s Mem. 7), and thus contends that "[t]he facts of MDL 1720 and the *Mirage* Action overlap only peripherally," (*id.* at 9). In support, Plaintiff asserted that the focus of the *Mirage* action "is completely different" from MDL 1720 because *Mirage* focuses on "payments [Visa and Mastercard made] to Apple in exchange for Apple foregoing entry into the U.S. point-of-sale payment card network services market," and alleges that these agreements constitute *per se* violations of Section 1 of the Sherman Act. (*Id.* at 10–11.) Plaintiff also argued that "the fact that certain agreements between the Defendants and Apple appeared in discovery for MDL 1720 indicates little as to whether these actions actually share sufficient factual commonalities . . . because it ignores facts that differentiate *Mirage* from MDL 1720, such as the relevant markets, the theories of harm, the ident[ies] of the classes, and the proposed class periods." (Pl.'s Reply 5.) Thus, Plaintiff argued that "[f]ew efficiencies [could] be gained when 'factual commonality across the actions appears to be superficial at best.'" (Pl.'s Mem. 13 (quoting *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020)).) Second, Plaintiff argued that consolidation would not "promote just and efficient conduct." (*Id.* at 13.) In support, Plaintiff noted that the iPhone, "the device at the center of the *Mirage* case," had not yet been invented when the Panel first consolidated MDL 1720 in 2005, and that "Apple Pay did not debut until 2014, after the majority of discovery in

5

MDL 1720 had been completed." (*Id.* at 14.) Plaintiff argues that the "consequence of . . . Defendants' reasoning would be the transfer and consolidation, to the Eastern District of New York, of any case whose factual allegations or discovery also involve[] payments or merchants."[3] (Pl.'s Reply 7.) Plaintiff also argued that the late stage of the MDL 1720 litigation weighed against consolidation because discovery was closed and dispositive motions had been ruled on, thus mitigating any likely efficiencies to be achieved by consolidation.[4] (Pl.'s Mem. 14–15; *see also id.* at 14–17 (collecting decisions of the Panel vacating conditional transfer orders due to the late stage of the litigation in the transferor court).)

Defendants first argued that *Mirage* was related to MDL 1720 because "Apple['s] agreements with Visa and Mastercard at the center of [*Mirage*] were produced in MDL 1720, examined in deposition testimony, and featured in expert opinions and motion practice." (Defs.' Mem. 1.) Defendants also faulted Plaintiff for "identif[ying] no individual questions of fact that

---

[3] Plaintiff also argued that the *Intuit*, *Block*, *Old Jericho*, *Camp Grounds*, and *Lanning* actions were properly consolidated with MDL 1720 "because they are disputes over who can properly recover from the Defendants' conduct challenged in MDL 1720," but "do not strengthen the case for consolidation [of *Mirage*] because those cases challenge the same allegedly unlawful conduct as" the lead cases in MDL 1720. (Pl.'s Reply 8.)

[4] Direct Action Plaintiffs offered additional arguments in support of Plaintiffs' motion. First, Direct Action Plaintiffs argued that "[a]n MDL is meant to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts,'" and that "[n]one of these purposes w[ould] be served" by consolidating *Mirage* with MDL 1720. (DAP's Mem. 2 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015)).) Second, Direct Action Plaintiffs argued that there was "no efficiency to be gained from 'coordinating' a brand-new case filed in 2023 with those in an MDL that is almost 20 years old and nearing its end." (*Id.*) Third, Direct Action Plaintiffs summarized this Court's actions with respect to MDL 1720 and concluded that "[a]s a result of the Court's efforts, rulings on virtually all common legal issues have been resolved." (*Id.* at 5.) Thus, Direct Action Plaintiffs argued that "the advantages of transferring a particular tag-along no longer clearly outweigh the disadvantages." (*Id.* at 6 (quoting *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 655 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009)).)

6

'overwhelm' the common facts in MDL 1720." (*Id.*)  In support, Defendants noted that "[t]he fifty-eight additional actions transferred to MDL 1720 all contain some unique facts but share common factual allegations that Visa's and Mastercard's conduct supposedly caused merchants to pay supra-competitive fees for Visa and Mastercard acceptance." (*Id.* at 3.)  Defendants argued that it is "undisputed" that *Mirage* and MDL 1720 "share key common facts: Apple's development and marketing of Apple Pay as well as the negotiation and terms of Apple's agreements with Visa and Mastercard." (*Id.* at 10; *see also id.* at 12 (asserting that *Mirage* presents the "same core factual questions and alleged anticompetitive conduct at issue in MDL 1720").)  Second, Defendants argued that consolidation was "necessary" because the *Mirage* action "pose[d] serious risks of inconsistent rulings regarding class certification" and with respect to the extent of the release in the settlement of the Rule 23(b)(3) class action.  (*Id.* at 2, 14–16.)  Finally, Defendants argued that the "length and breadth of experience in the MDL 1720 court favor[ed] transfer" and that the *Mirage* action would "benefit from the expertise and experience of Chief Judge Brodie." (*Id.* at 16–20.)

The Panel concluded that that "the *Mirage* action shares questions of fact with the actions transferred to MDL No. 1720, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." (Transfer Order 1.)  In reaching this conclusion, the Panel first observed that the facts at the center of *Mirage* constitute "a subset of the conduct at issue in the MDL." (*Id.* at 1–2.)  The Panel commented that this "common factual core" was further bolstered by the fact that discovery in MDL 1720 "covered the Apple Pay agreement at issue in *Mirage*, including a Rule 30(b)(6) deposition of Apple." (*Id.* at 2.)  Second, the Panel reasoned that consolidation was warranted by the overlap between the putative class in *Mirage* and the Rule 23(b)(2) equitable

7

relief class in MDL 1720, which had recently filed a motion for preliminary approval of a class settlement. (*Id.*) Consequently, the Panel concluded that consolidation would prevent inconsistent rulings with respect to this overlapping portion of the class. (*Id.*) Finally, the Panel rejected Plaintiff's argument that the advanced state of the MDL weighed against consolidation. (*Id.*) It concluded that, although common discovery and motion practice had concluded, this Court "remains in the best position to streamline pretrial proceedings in newly-filed actions with the discovery and motions practice that have been completed." (*Id.*) The Panel nonetheless invited this Court to suggest remand of the *Mirage* action to the transferor court if "at any point in the pretrial proceedings [the Court finds] that the inclusion of *Mirage* will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation." (*Id.*)

## II. Discussion

### a. Legal standard

"Title 28 U.S.C. § 1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact 'to any district for coordinated or consolidated pretrial proceedings,' but imposes a duty on the Panel to remand any such action to the original district 'at or before the conclusion of such pretrial proceedings.'" *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998) (quoting 28 U.S.C. § 1407(a)); *see also id.* at 34 ("[Section 1407] obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542, 2021 WL 2983141, at *1 (S.D.N.Y. July 15, 2021) ("If 'pretrial proceedings have run their course,' the Panel is obligated to remand any pending cases to their originating courts, an obligation that is 'impervious to

8

judicial discretion.'" (quoting *Lexecon*, 523 U.S. at 34–35)).  "This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome.  The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441." *In re Generic Pharms. Pricing Antitrust Litig.*, --- F. Supp. 3d. ---, ---, 2024 WL 560576, at *2 (J.P.M.L. Jan. 31, 2024) (quoting *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017)).

Although the ultimate authority to remand an action lies with the Panel, *see* 28 U.S.C. § 1407(a), the remand process is typically initiated when a transferee court recommends remand of an action to the transferor court by filing a suggestion of remand with the Panel.  *In re Keurig*, 2021 WL 2983141, at *1 (citing R.P.J.P.M.L. 10.1(b)).  "In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 560 F. Supp. 2d 1351, 1352–53 (J.P.M.L. 2008) (quoting *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)); *see also In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("[T]he transferee judge . . . has special insight into the question of whether further coordinated or consolidated proceedings are likely to be useful.").

"In determining whether to issue a suggestion of remand to the Panel, the [c]ourt is guided by the standards for remand employed by the Panel." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-5440, 2011 WL 1046162, at *3 (S.D.N.Y. Mar. 22, 2011) (internal quotation marks omitted).  The Court's "discretion to suggest remand generally turns on the question of whether the case will benefit from . . . coordinated proceedings as part of

9

the MDL." *In re Keurig*, 2021 WL 2983141, *2 (quoting *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09-MD-2030, 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010)). "When 'everything that remains to be done is case-specific,' it does not necessarily mean that 'consolidated proceedings have concluded'; nevertheless, 'the Panel has the discretion to remand a case' at that point." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 08-CV-312, 2019 WL 4744250, at *2 (S.D.N.Y. Sept. 30, 2019) (*In re MTBE*) (quoting *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)). As the leading guide on multidistrict litigation has stated: "The transferee court should consider when remand will best serve the expeditious disposition of the litigation." Manual for Complex Litigation (Fourth) § 20.133. "Because the purpose of multidistrict litigation is for the convenience of the parties and witnesses and to promote the just and efficient conduct of the cases, the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *4 (internal quotation marks omitted).

      **b.   Remand would better serve the purposes of section 1407 to promote the "convenience of the parties" and the "just and efficient conduct" of the litigation**

Mindful of the fact that the "transferee court should consider when remand will best serve the expeditious disposition of the litigation," Manual for Complex Litigation (Fourth) § 20.133, and that "[t]he objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts," *id*. § 20.131 (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)), the Court concludes that consolidation would serve none of these purposes. The Court therefore finds that remand would better serve the dual purposes of section

10

1407 to promote "the convenience of the parties" and "the just and efficient conduct" of the litigation, and respectfully issues a suggestion of remand. *See* 28 U.S.C. § 1407(a).

      **i.**    **The *Mirage* action is too dissimilar from MDL 1720 to promote the dual purposes of section 1407**

For the following reasons, the Court finds that the facts at the core of the *Mirage* action are not similar enough to those at the heart of MDL 1720 to warrant consolidation.

First, although Apple's agreements with Visa and Mastercard regarding Apple Pay appeared in one sentence of a decision regarding MDL 1720 defendants' allegedly anticompetitive conduct, the Court did not assess the nature of these agreements or inquire into whether the agreements — on their own — constituted violations of federal antitrust law. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F. Supp. 3d ---, ---, 2024 WL 278565, at *34 & n.40 (E.D.N.Y. 2024) ("Finally, in response to perceived competition from mobile wallets like Apple Pay, the networks entered into bilateral agreements with Apple to prevent it from developing a competing payment network."). Beyond the Court's brief acknowledgment that these agreements existed and restrained Apple's ability to enter the market for payment card network services, the Court neither inquired into the substance of these agreements nor considered (or even saw) evidence of the effects of these agreements on the market for payment processing services.

Second, MDL 1720 primarily concerns the effects of Visa's and Mastercard's card acceptance rules — such as the Honor All Cards rule and various "anti-steering" rules, *see In re Payment Card*, 2024 WL 278565, at *5 — on the numerous fees assessed at various stages of every card transaction. These fees include the interchange fee retained by the card-issuing bank, the network fee charged by Visa and Mastercard, and the "merchant discount fee" retained by the merchant's bank (referred to as the "acquiring bank" or "Acquirer" in the Court's other

11

decisions). *Id.* at *4. In particular, the evidence and expert reports, as well as the parties' arguments, emphasized the effects of these network rules on the "two-sided price" of a credit card transaction, taking into account the interchange fee paid by the merchant and the rewards paid out to the cardholder. *See id.* at *23 (considering expert evidence comparing Visa's and Mastercard's interchange rates in the United States to those in Australia, where interchange rates were fixed by the Reserve Bank of Australia); *id.* at *26 (discussing expert report that predicted "competitive" interchange rates in a world without the challenged network rules); *id.* at *27 (evaluating the two-sided price with "merchant interchange" and "cardholder reward" at competitive levels). *Mirage*, however, concerns Apple's agreements with Visa and Mastercard — rather than Visa's and Mastercard's own rules — and how these agreements keep Apple and other third parties out of the market for payment card network services. (*See, e.g.*, Compl. ¶¶ 78, 103.) Plaintiff alleges that these agreements allowed Visa and Mastercard to avoid competing with other entities on the network fees they charge. Plaintiff does not, however, allege that these fees led to supracompetitive interchange fees — a central concern in MDL 1720. Indeed, the existence of an "interchange fee" is noted exactly once in Plaintiff's forty-five-page Complaint, (*see* Compl. ¶ 24), and only for the sake of describing the structure of a card transaction.

Stated differently, the existence of Apple's agreements with Visa and Mastercard are central to the *Mirage* action, and absent those agreements, Plaintiff would have no facts upon which to base its claim. Plaintiffs in MDL 1720, however, could prove their case even in the absence of these agreements, because the allegations rely entirely on Visa's and Mastercard's own rules.

Finally, transfer of the *Mirage* action is not necessary to avoid inconsistent rulings with respect to the settlement proposed by the Rule 23(b)(2) class plaintiffs. In addition to the fact

12

that the Court recently denied the plaintiffs' motion for preliminary approval, (*see* Mem. & Order re: Equitable Relief Class Pls.' Mot. for Preliminary Settlement Approval ("Preliminary Approval Decision") 4, Docket Entry No. 9333), the unlawful conduct alleged in MDL 1720 is so removed from that alleged in the *Mirage* action that the Court cannot conceive of a possible result for the Rule 23(b)(2) class that would limit or affect how a court could rule on the legality of Apple's agreements with Visa and Mastercard.  For example, if the Rule 23(b)(2) class plaintiffs obtained complete injunctive relief, then Visa and Mastercard would be required, *inter alia*, to roll back their interchange fees substantially and to eliminate the Honor All Cards rule which currently forces merchants to accept all Visa cards if they accept any Visa cards (with the same rule for Mastercard).  (*See id.* at 58–59.)  The Court fails to see how such a result could affect the legality of Apple's agreements with Visa and Mastercard, or how liability concerning Visa's and Mastercard's network rules could affect whether Apple itself is liable for violating antitrust laws through these agreements.  In the Court's view, no combination of results in the two cases could be deemed inconsistent: Apple's agreements with Visa and Mastercard could continue existing in the absence of the network rules challenged in MDL 1720, and the reverse is also true.  This independence of results further underscores that the two cases lack a common factual core, and that consolidation of the *Mirage* action is not warranted.

> ii. **The *Mirage* action would be more efficiently prosecuted in the transferor district**

For several reasons, the Court finds that the Mirage action would be more efficiently prosecuted in the transferor district.  First, after nearly twenty years, MDL 1720 is in its final stages.  As the parties have observed, coordinated fact discovery is complete, the Court has ruled on all dispositive motions related to the Direct Action Plaintiffs' opt-out actions, and the Direct Action Plaintiffs' cases will likely be remanded to the transferor districts in the near future.  The

13

Court recently issued a suggestion of remand to the Panel for the Grubhub Plaintiffs' action, (*see* Suggestion of Remand, Docket Entry No. 9334-1), and — as discussed at a recent hearing on the status of the Direct Action Plaintiffs' actions — defendants in those actions had until June 30, 2024, to indicate to the Court whether they intended to exercise their *Lexecon* rights to have the Target Plaintiffs' and 7-Eleven Plaintiffs' actions remanded to the Southern District of New York, (*see* Tr. of Settlement Preliminary Approval Hr'g ("Hr'g Tr.") 58:13–62:13, Docket Entry No. 9330; *see also* Min. Entry dated June 13, 2024). On June 28, 2024, Defendants asserted their *Lexecon* rights, (*see* Defs.' Letter re: Remand, Docket Entry No. 9336), and the Court will shortly issue suggestions of remand for those actions. Although the Court recently denied preliminary approval to the settlement reached between the Rule 23(b)(2) class plaintiffs and defendants, the Rule 23(b)(2) class plaintiffs' claims are also trial-ready. (*See* Preliminary Approval Decision 10 n.15.) Thus, if the (b)(2) action had not originally been filed in this District, it too would likely be remanded to its court of origin. Finally, although the Court retains jurisdiction over the now-settled Rule 23(b)(3) class action and is in the process of administering that settlement, (*see, e.g.,* Order dated June 10, 2024; Order dated June 7, 2024; Order dated May 26, 2024), no efficiencies are gained by appending *Mirage* to a relatively straightforward claims administration process.

Second, as discussed in section II.b.i above, the claims and issues raised in *Mirage* are substantially dissimilar from those asserted in MDL 1720 and the Court anticipates that none of its substantive rulings are likely to have much, if any, bearing on the *Mirage* action. For example, even if the parties were to retain the same experts who appeared in MDL 1720, the subject matter of the *Mirage* reports would focus on Apple's agreements with Visa and Mastercard — a fact mentioned only in passing in some of the Direct Action Plaintiffs' expert

14

reports.  (*See* Expert Rep. of Dr. Robert G. Harris ¶¶ 573–74, annexed to Decl. of Rosemary Szanyi ("Szanyi Decl.") as SJDX391, Docket Entry No. 8526-12; Expert Rep. of Prof. Jerry Hausman ¶¶ 447–49, annexed to Szanyi Decl. as SJDX400, Docket Entry No. 8526-17.)  Thus, the Court's *Daubert* rulings on the Direct Action Plaintiffs' expert reports are unlikely to be instructive with respect to the admissibility of any prospective *Mirage* expert reports.[5]  The Court's summary judgment rulings are also unlikely to be applicable to the *Mirage* action.  To provide a few examples: (1) the Court's decision on defendants' motion under *Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) (*Amex*), is likely inapplicable to an action asserting a *per se* violation of the Sherman Act by means of "horizontal market allocation," because, as far as the Court is aware, no court has applied *Amex*'s two-sided market analysis to a case alleging horizontal market allocation;[6] (2) the Court's decision with respect to Mastercard's market

---

[5] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2022 WL 15053250 (E.D.N.Y. Oct. 7, 2022) (experts Dr. Reto Kohler and Profs. Robert Harris, Jerry Hausman, and Joseph Stiglitz); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2022 WL 14862098 (E.D.N.Y. Oct. 8, 2022) (experts Prof. Kevin Murphy, Marc Cleven, and Dr. Stuart Fiske); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2022 WL 15044626 (E.D.N.Y. Oct. 8, 2022) (experts Mansour Karimzadeh, Prof. Dennis Carlton, Stephen Mott, and Prof. David Stowell); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2022 WL 14863110 (E.D.N.Y. Oct. 8, 2022) (experts Prof. Jerry Hausman, Prof. Stephen Rowe, and Robert Hutchins); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227 (E.D.N.Y. 2022) (experts R. Garrison Harvey, Prof. Glenn Hubbard, Prof. Barbara Kahn, Dr. David Teece, and David Kaplan).

[6] Moreover, this finding is unsurprising because *Amex* demands a rule of reason analysis for vertical agreements on either or both sides of a two-sided market, while horizontal market allocation is typically subject to *per se* condemnation.  *See Amex*, 585 U.S. at 541 (vertical agreements subject to rule of reason); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (*per se* treatment for horizontal market allocation); *see also Snow v. Align Tech., Inc.*, 586 F. Supp. 3d 972, 978 (N.D. Cal. 2022) (explaining how the defendant sought to characterize its agreement with a potential competitor as "vertical," so that it would be subject to the rule of reason, but concluding that "a market division agreement between potential competitors

15

power is inapplicable, because no showing of market power is necessary for a *per se* violation of the Sherman Act, *see, e.g.*, *United States v. Aiyer*, 33 F.4th 97, 114–15 (2d Cir. 2020) (explaining that the rule of reason's "fact-specific assessment of market power and market structure" is not required for *per se* cases); and (3) the Court's decisions with respect to Direct Action Plaintiffs' Section 2 monopolization claims are inapplicable to a suit asserting only claims under Section 1. Accordingly, no efficiencies are obtained by consolidating *Mirage* with MDL 1720.

Finally, the Court will necessarily have to prioritize its resolution of the pending dispositive motions in the *B & R Supermarket* action over any forthcoming motions in the *Mirage* action.[7] With *B & R Supermarket*, the Court found that the factual allegations and legal issues were sufficiently dissimilar to warrant disassociation from MDL 1720. (*See* Min. Entry dated June 8, 2017 ("I respectfully direct the Clerk to disassociate the *B&R Supermarket* case from the MDL 1720 docket.").) Nevertheless, any forthcoming motions in *Mirage* would necessarily be delayed, pending the Court's resolution of the pending motions in *B & R Supermarket* that have yet to be decided. Accordingly, it is likely that *Mirage* could be more efficiently prosecuted in the transferor district.

---

constitutes a horizontal restraint on trade." (citing *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 (1990))).

[7] (*See e.g.,* Def. Discover's Mot. to Compel Arbitration & Stay Claims Against Discover Fin. Servs., *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738 (E.D.N.Y. July 27, 2023), Docket Entry No. 793; Def. Discover's Mot. for Summ. J., *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738 (E.D.N.Y. July 27, 2023), Docket Entry No. 795; Defs. Visa & Mastercard's Mot. to Decertify Class, *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738 (E.D.N.Y. July 31, 2023), Docket Entry No. 806; Defs. Visa & Mastercard's Renewed *Daubert* Mot. to Exclude the AFD Benchmark Ops. of Dr. Micah Officer for Purposes of Summ. J. & Trial, *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738 (E.D.N.Y. July 31, 2023), Docket Entry No. 810; Pls.' Mot. to Exclude the Testimony of Defs.' Visa and Mastercard's Expert Julie Conroy, *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738 (E.D.N.Y. July 31, 2023), Docket Entry No. 820.)

### III. Conclusion

For the foregoing reasons, the Court suggests that the Panel remand this action to the United States District Court for the Southern District of Illinois. The Clerk of Court is directed to transmit a copy of this Suggestion of Remand to the Judicial Panel on Multidistrict Litigation.

Dated: July 1, 2024
      Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge