UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**SUGGESTION OF REMAND**
13-CV-5745 (MKB)
13-CV-5746 (MKB)

This document refers to:
*Target Corp. v. Visa Inc.*, No. 13-CV-5745
*7-Eleven, Inc. v. Visa Inc.*, No. 13-CV-5746

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On October 21, 2013, the above-captioned actions were transferred from the United States District Court for the Southern District of New York to this Court for consolidation with *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (MDL 1720) pursuant to an order of the Judicial Panel on Multidistrict Litigation (the "Panel"). (Notice of Case Transfer dated Oct. 21, 2013, *Target Corp. v. Visa Inc.*, No. 13-CV-5745 (E.D.N.Y. Oct. 21, 2013), Docket Entry No. 96; Notice of Case Transfer dated Oct. 21, 2013, *7-Eleven, Inc. v. Visa Inc.*, No. 13-CV-5746 (E.D.N.Y. Oct. 21, 2013), Docket Entry No. 10; Transfer Order, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720 (J.P.M.L. Oct. 16, 2013) ("Transfer Order"), Docket Entry No. 204.)

For the reasons explained below, the Court respectfully issues a suggestion of remand to the Panel pursuant to 28 U.S.C. § 1407 and Rule 10.3 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation.

### I. Background

The Court assumes familiarity with the facts and extensive procedural history as set forth in prior decisions. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986

F. Supp. 2d 207 (E.D.N.Y. 2013) (*Interchange Fees I*), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016) (*Interchange Fees II*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) (*Interchange Fees III*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F. Supp. 3d ---, 2024 WL 278565 (E.D.N.Y. Jan. 8, 2024) (*Interchange Fees IV*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 1014159 (E.D.N.Y. Feb. 22, 2024) (*Interchange Fees V*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, --- F. Supp. 3d. ---, 2024 WL 1556931 (E.D.N.Y. Apr. 2, 2024) (*Interchange Fees VI*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 3236614 (E.D.N.Y. June 25, 2024). The Court therefore provides only a summary of the relevant facts and procedural background.

In October of 2005, several complaints asserting similar antitrust claims against Visa, Mastercard, and various issuing banks were consolidated for pretrial purposes and transferred to the Eastern District of New York, where they were joined by other similar cases. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *1 (E.D.N.Y. Jan. 8, 2008). The consolidated cases included both class actions and individual actions. *Id.* In April of 2006, plaintiffs in the putative class actions filed a consolidated amended class complaint that defined two classes: one seeking damages and the other seeking equitable relief. *Id.* at *1–2. In November of 2012, the Court provisionally certified a class and preliminarily approved a class settlement agreement between class plaintiffs and Defendants. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2012 WL 12929536, at *1–2 (E.D.N.Y. Nov. 27, 2012). Following preliminary settlement approval, "three groups of merchants that had not previously appeared as named parties," including the Target

and 7-Eleven[1] Plaintiffs, "opted out of the settlement's damages class and filed their own complaints in other districts, all of which were ultimately transferred to this court and consolidated in the instant multidistrict litigation." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2017 WL 4325812, at *3 (E.D.N.Y. Sept. 27, 2017), *order set aside on other grounds*, 2018 WL 4158290 (E.D.N.Y. Aug. 30, 2018). The Panel ordered transfer to this Court "for inclusion in the coordinated or consolidated pretrial proceedings," (Transfer Order 3), and the Target and 7-Eleven Plaintiffs have been litigating their opt-out actions in this Court since then. The Court approved the settlement in 2013, *Interchange Fees I*, 986 F. Supp. 2d at 241, but in 2016, the Second Circuit vacated certification of the class and reversed approval of the settlement, *Interchange Fees II*, 827 F.3d at 240.[2]

In November of 2016, the Court appointed counsel to two putative classes under Rule 23(b)(2) (the "Equitable Relief Class") and Rule 23(b)(3) (the "Damages Class") of the Federal Rules of Civil Procedure. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2016 WL 8138988, at *1 (E.D.N.Y. Nov. 30, 2016). In 2019, the Court approved a subsequent settlement between the Damages Class and the Defendants (the "2019 Settlement"), and in 2023, the Second Circuit affirmed the approval in all material respects. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL

---

[1] On January 3, 2024, 7-Eleven, in its capacity as an individual member of the "7-Eleven Plaintiffs," settled its claims against all Defendants. (*See* Stipulation & Order of Dismissal, Docket Entry No. 9038.) The Court nevertheless continues to refer to the remaining plaintiffs in *7-Eleven, Inc., et al. v. Visa, Inc., et al.*, No. 13-CV-5746 (E.D.N.Y.), as the "7-Eleven Plaintiffs" for consistency across the Court's decisions.

[2] The case was reassigned from Judge John Gleeson to the undersigned on December 17, 2014. (Order Reassigning Case dated Dec. 17, 2014, Docket Entry No. 6359.)

6875472 (E.D.N.Y. Dec. 16, 2019), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023).

Discovery as to the Target and 7-Eleven Plaintiffs (collectively, "Plaintiffs") was completed around March of 2020.  (*See* Joint Status Conf. Stmt. 2–5, Docket Entry No. 7891.) In December of 2020, Defendants moved for summary judgment on all of Plaintiffs' claims. (Defs.' Mot. For Summ. J., Docket Entry No. 8067.)  In three separate decisions, the Court denied Defendants' motion.  *See Interchange Fees IV*, 2024 WL 278565 (denying Defendants' motion based on arguments that Plaintiffs had presented insufficient evidence of (1) anticompetitive harm in a two-sided market and (2) Mastercard's market power); *Interchange Fees V*, 2024 WL 1014159 (denying Defendants' motion based on the arguments that Plaintiffs (1) lacked standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and (2) had presented insufficient evidence of a post-IPO conspiracy); *Interchange Fees VI*, 2024 WL 1556931 (denying Defendants' motion as to 7-Eleven Plaintiffs' claims for monopolization and attempted monopolization, but granting Defendants' motion as to the conspiracy to monopolize claims).

In April of 2024, Plaintiffs requested that the Court hold a status conference to establish "a schedule for remaining pretrial procedures and trial," arguing that because "all the pending summary judgment motions in [their] cases" had been resolved, the cases were ready for trial.[3] Defendants opposed the motion, arguing that "there is still substantial supplemental discovery work that must be done" and that the issues Target and 7-Eleven Plaintiffs wished to address at a

---

[3] (7-Eleven Pls.' Letter Mot. for Pretrial Status Conf. 1, Docket Entry No. 9188; *see also* Target Pls.' Letter Mot. for Pretrial Status Conf., Docket Entry No. 9192; 7-Eleven Pls.' Reply Letter in Supp. of Mot. for Pretrial Status Conf., Docket Entry No. 9195; Target Pls.' Reply Letter in Supp. of Mot. for Pretrial Status Conf., Docket Entry No. 9196.)

conference were "not ripe for resolution." (Defs.' Letter Resp. to Pls.' Letter Mot. for Pretrial Status Conf. 1, Docket Entry No. 9194.) The Court granted the request and held a status conference on June 13, 2024. (Scheduling Order dated Apr. 11, 2024; Min. Entry dated June 13, 2024.) At the conference, the Court indicated that Plaintiffs' cases were likely ready for trial, and discussed whether Defendants would waive their rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998), ("*Lexecon* rights") to have the case remanded to the Southern District of New York. (Tr. of Settlement Approval Hr'g ("Hr'g Tr.") 57:3–59:3, Docket Entry No. 9330.) The Court indicated that if Defendants did not waive their *Lexecon* rights, the cases would be remanded to the Southern District of New York.[4] (*Id.* at 58:13–59:3, 63:12–25.) The Court gave Defendants until June 30, 2024, to inform the Court as to whether they would waive their rights to remand. (Min. Entry dated June 13, 2024.)

On June 21, 2024, Plaintiffs filed a letter containing "relevant authorities under 28 U.S.C. § 1404 and 28 U.S.C. § 292" that Plaintiffs assert would "allow the Court to preside at the trial of the *Target* and *7-Eleven* matters, if Defendants exercise their *Lexecon* rights." (Pls.' Letter Providing Authority ("Pls.' Letter") 1, Docket Entry No. 9331.)

On June 28, 2024, Defendants notified the Court that they would not be waiving their *Lexecon* rights, and they requested that the Court issue a suggestion of remand to the Panel with respect to the *Target* and *7-Eleven* actions. (Defs.' Letter Regarding Remand ("Defs.' Letter"), Docket Entry No. 9336.) Later the same day, Plaintiffs filed responses requesting that the Court's suggestion of remand include either "(a) an invitation to the Southern District of New York to transfer the case back to this Court," or "(b) a suggestion that the Second Circuit

---

[4] At the same hearing, the Court considered preliminary approval of the Proposed Settlement. (Min. Entry dated June 13, 2024.)

5

consider an intra-circuit assignment" of the undersigned to sit in the Southern District of New York. (Target Pls.' Letter Reply Regarding Remand ("Target Pls.' Reply"), Docket Entry No. 9337; 7-Eleven Pls.' Letter Reply Regarding Remand ("7-Eleven Pls.' Reply"), Docket Entry No. 9341.) Plaintiffs do not oppose remand and "submit that remand is now appropriate." (Target Pls.' Reply.)

## II. Discussion

### a. Legal standard

"Title 28 U.S.C. § 1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact 'to any district for coordinated or consolidated pretrial proceedings,' but imposes a duty on the Panel to remand any such action to the original district 'at or before the conclusion of such pretrial proceedings.'" *Lexecon*, 523 U.S. at 28 (quoting 28 U.S.C. § 1407(a)); *see also id.* at 34 ("[Section 1407] obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MD-2542, 2021 WL 2983141, at *1 (S.D.N.Y. July 15, 2021) ("If 'pretrial proceedings have run their course,' the Panel is obligated to remand any pending cases to their originating courts, an obligation that is 'impervious to judicial discretion.'" (quoting *Lexecon*, 523 U.S. at 34–35)). "This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome. The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441." *In re Generic Pharms. Pricing Antitrust Litig.*, --- F. Supp. 3d ---, ---, 2024 WL 560576, at *2 (J.P.M.L. Jan. 31, 2024) (quoting *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017)).

Although the ultimate authority to remand an action lies with the Panel, *see* 28 U.S.C.

6

§ 1407(a), the remand process is typically initiated when a transferee court recommends remand of an action to the transferor court by filing a suggestion of remand with the Panel. *In re Keurig*, 2021 WL 2983141, at *1 (citing R.P.J.P.M.L. 10.1(b)). "In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 560 F. Supp. 2d 1351, 1351–52 (J.P.M.L. 2008) (quoting *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)); *see also In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003) ("[T]he transferee judge . . . has special insight into the question of whether further coordinated or consolidated proceedings are likely to be useful.").

"In determining whether to issue a suggestion of remand to the Panel, the [c]ourt is guided by the standards for remand employed by the Panel." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-5440, 2011 WL 1046162, at *3 (S.D.N.Y. Mar. 22, 2011) (internal quotation marks and citation omitted). The Court's "discretion to suggest remand generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Keurig*, 2021 WL 2983141, *2 (quoting *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09-MD-2030, 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010)). "When 'everything that remains to be done is case-specific,' it does not necessarily mean that 'consolidated proceedings have concluded'; nevertheless, 'the Panel has the discretion to remand a case' at that point." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 08-CV-312, 2019 WL 4744250, at *2 (S.D.N.Y. Sept. 30, 2019) (*In re MTBE*) (quoting *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)). As the leading guide on multidistrict litigation

7

has stated: "The transferee court should consider when remand will best serve the expeditious disposition of the litigation."  Manual for Complex Litigation (Fourth) § 20.133 (2004). "Because the purpose of multidistrict litigation is for the convenience of the parties and witnesses and to promote the just and efficient conduct of the cases, the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 WL 1046162, at *4 (alterations, internal quotation marks, and citation omitted).

      **b.  Remand is warranted for the *Target* and *7-Eleven* actions**

The *Target* and *7-Eleven* actions are ready for trial.  As discussed above, discovery has been completed and all dispositive motions have been resolved.  (*See* section I *supra*.)  At the status conference on June 13, 2024, all parties agreed that the cases are ready for trial — the only question was whether Defendants would exercise their *Lexecon* rights to have the cases remanded to the Southern District of New York.  (Hr'g Tr. 56:6–59:3.)  Because they have now done so, (*see* Defs.' Letter), the Court issues a suggestion of remand.  *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 3161774 (E.D.N.Y. June 25, 2024) (granting Grubhub Plaintiffs' motion for a suggestion of remand).

      **c.  The Court declines the Target and 7-Eleven Plaintiffs' request for transfer or reassignment**

Plaintiffs argue that "28 U.S.C. § 1404 and 28 U.S.C. § 292 . . . would allow the Court to preside at the trial of the *Target* and *7-Eleven* matters," and "request that the Court include in its suggestion of remand an invitation for a transfer of these actions to this Court for trial under § 1404 or, in the alternative, suggest that the Chief Judge of the Second Circuit order a temporary assignment of Your Honor to the Southern District of New York . . . to allow this

highly experienced Court to preside over the trial of these actions." (Pls.' Letter 1, 3.) Plaintiffs first argue that the Supreme Court in *Lexecon* "confirmed" that a transferor court could assign a case to a transferee district for trial "if that would be appropriate following pretrial proceedings under § 1407(a)." (*Id.* at 2 (quoting *Lexecon*, 523 U.S. at 39 n.2).) They observe that this procedure was followed in *Kenwin Shops, Inc. v. Bank of Louisiana*, in which the court "granted a § 1404 transfer in the interests of justice," and sent the case back to the transferee court for trial. (*Id.* (citing *Kenwin Shops, Inc. v. Bank of La.*, No. 97-CV-907, 1999 WL 294800 (S.D.N.Y. May 11, 1999)).) Plaintiffs further contend that transfer would be appropriate in this case because their actions "could have been filed, originally, in this district," and because "[s]everal actions in this MDL were initially filed in this District without any venue objection." (*Id.*) Second, Plaintiffs argue that the Court could "request intra-circuit assignment to the Southern District under 28 U.S.C. § 292(b)." (*Id.*) Plaintiffs note that "[t]here is precedent for MDL judges . . . to preside over trials of MDL cases via *inter*-circuit assignment under 28 U.S.C. § 292(d)," which they contend is subject to a "more stringent" standard than intra-circuit assignment. (*Id.*) In support, Plaintiffs cite *Jowers v. BOC Group, Inc.*, in which an MDL court sitting in the Northern District of Ohio "obtained the necessary approvals for inter-circuit assignment and presided over a trial in the Southern District of Mississippi." (*Id.* at 2–3 (citing *Jowers v. BOC Grp., Inc.*, 608 F. Supp. 2d 724, 729 n.2 (S.D. Miss. 2009)).) Finally, 7-Eleven Plaintiffs argue that "it [would] promote judicial economy" for the Court to preside over the *Target* and *7-Eleven* actions because the Court denied preliminary approval of the Rule 23(b)(2) class settlement, and that action is also ready for trial. (7-Eleven Pls.' Reply 1.)

       Defendants first argue that "Target's and 7-Eleven's application contravenes the statutory requirement of § 1407, which unambiguously requires that both actions '*shall be remanded* . . .

9

at or before the conclusion of such pretrial proceedings.'" (Defs.' Letter 1 (quoting 28 U.S.C. § 1407).) Defendants also note that Plaintiffs chose to file in the Southern District of New York and that they "fought transfer to this MDL" and argued to the Panel that "'transferring this case to the Eastern District of New York will not promote the convenience of the parties or witnesses' and that 'the Southern District of New York [is] equally convenient to all parties and witnesses.'" (*Id.* (alteration in original) (emphasis omitted) (quoting Target Pls.' Mem. in Supp. of Target Pls.' Mot. to Vacate Conditional Transfer Order 10 n.3, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720 (J.P.M.L. June 27, 2013), Docket Entry No. 127-1).) Thus, Defendants argue that the Court should reject Plaintiffs' "second . . . attempt to choose a forum of their liking." (*Id.* at 2.) Second, Defendants argue that "*Lexecon* itself extinguishes the judicial efficiency/experience arguments that Target and 7-Eleven advance," because section 1407 "is an 'unconditional command . . . impervious to judicial discretion.'" (*Id.* (quoting *Lexecon*, 523 U.S. at 35–36).) Finally, Defendants argue that the cases Plaintiffs cite are inapposite because "the transferor courts transferred the actions back to the MDL court because it could conduct a consolidated trial of *all* pending actions," and contend that this requirement cannot be met due to the remand of the *Grubhub* action. (*Id.* at 3.) Defendants also argue that "no particular public interest [would] be served through the extraordinary measure of an intra-circuit assignment." (*Id.*)

   The Court declines to invite transfer back to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404 and will not seek intra-circuit reassignment pursuant to 28 U.S.C. § 292(b). Although the Court does not agree with Defendants' suggestion that such actions are foreclosed by *Lexecon*, the Court agrees with Defendants to the extent that such measures would be contrary to the purpose of *Lexecon*. For

10

example, this Court's familiarity with the *Target* and *7-Eleven* actions is insufficient to override Mastercard's interest in having the case tried before a jury in the district in which it is headquartered. (*See* Hr'g Tr. 61:24–62:13 ("[M]y client is headquartered in the Southern District of New York . . . . We do have very substantial people and investments in the Southern District of New York.").) In addition, the purpose of consolidation in multidistrict litigation is to obtain efficiencies from coordinated discovery and pre-trial procedures; now that these steps are completed, trial before this Court is no more efficient than trial before a court in the Southern District of New York.[5] *See* 28 U.S.C. § 1407. Moreover, as the Court stated at the status conference on the *Target* and *7-Eleven* actions, "there's no difference between [the Eastern District and the Southern District] when it comes to location." (Hr'g Tr. 62:2–3.) Ultimately, Plaintiffs elected to file suit in the Southern District of New York and they will not be prejudiced by trying their case before a judge in that district.

## III. Conclusion

For the foregoing reasons, the Court suggests that the Judicial Panel on Multidistrict Litigation remand these actions to the United States District Court for the Southern District of

---

[5] Even if the Court presides over a trial in the Rule 23(b)(2) class action, the action would not be tried together with the *Target* and *7-Eleven* actions. Thus, contrary to Plaintiffs' argument, it would not "promote judicial economy." (7-Eleven Pls.' Reply 1.)

11

New York.  The Clerk of Court is directed to transmit a copy of this Suggestion of Remand to the Judicial Panel on Multidistrict Litigation.

Dated: July 8, 2024
      Brooklyn, New York

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge