UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This document refers to: ALL ACTIONS | **OPINION AND ORDER**<br><br>05-MD-1720<br>(Brodie, J.)<br>(Marutollo, M.J.) |

-------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On May 24, 2024, Rule 23(b)(3) Class Counsel (Class Counsel) informed the Court that "the law firm Milberg Coleman Bryson Phillips Grossman, LLC (Milberg) has been registering clients with [Class Administrator Epiq Systems, Inc. (Epiq)] for third-party-filing services for certain companies which came from a referral partner [] that Milberg has subsequently acknowledged are fraudulent." Dkt. No. 9306. Following additional litigation and orders from the Court, on July 12, 2024, Class Counsel filed a joint stipulation between Class Counsel and Milberg (the Stipulation) regarding cost payments to Epiq. *See* Dkt. No. 9353. As part of the Stipulation, "Milberg has agreed to pay $25,000 to [] Epiq, to cover Epiq's costs incurred in handling fake proofs of authority submitted by Milberg and to cooperate fully in any law enforcement investigation related [to] Ms. Laverne Hallak." *Id.*

For the reasons stated below, and in light of the Stipulation, the Court declines to sanction Milberg at this time. Milberg, however, shall file a status report by July 26, 2024 regarding any pending claims submitted to Epiq. The Court reserves the right to issue sanctions should it be deemed necessary following further investigation.

**I.    Pertinent Background**

A putative class of over twelve million nationwide merchants brought this antitrust action under the Sherman Act, 15 U.S.C. §§ 1 and 2, and state antitrust laws, against Visa U.S.A. Inc.,

MasterCard International Inc., and numerous banks that serve as payment-card issuers for those networks. Plaintiffs alleged that Visa and MasterCard adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction. Following extensive litigation, a settlement of $5.6 billion was approved by the United States District Court for the Eastern District of New York. *See, e.g., Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023).

On September 25, 2018, Class Counsel informed the Court that it had "received a number of calls from various third-parties seeking guidance regarding the appropriate language to use in solicitations and marketing materials." Dkt. No. 7259. Class Counsel requested that the Court enter an order to help ensure that merchants receive accurate information. *See id.*

On September 26, 2018, the Court entered an order in response to Class Counsel's request. *See* Dkt. No. 7260. The Court noted that, "since 2012, the Court has determined that certain solicitations of class members regarding third-party claims filing services have been misleading," and that "the Court has expressed concern about additional instances of class member confusion." *Id.* The Court recognized that, in light of the anticipated settlement agreement, "various third-party entities [will] seek new business relationships based on the proposed settlement." *Id.* The Court thereby ordered that:

> All third-party claims filing companies wishing to represent merchants are required to include in any solicitation to prospective clients the following to ensure that any solicitation is truthful and accurate []:
>
> 1. A statement that claim forms are not yet available.
>
> 2. A statement making clear that class members need not sign up for a third-party service in order to participate in any monetary relief and explaining that no-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.
>
> 3. [D]irecting class members to the Court-approved website for additional

2

information.

*Id.* Further, the Court ordered that:

1. The proposed relief outlined above must be included in any solicitation, in any form including websites, mail and email solicitations, contracts, telephone and in-person solicitations;

2. Solicitations that do not contain the required information (as set forth above), may be deemed misleading and following notice and an opportunity to cure, those entities may be enjoined permanently from taking any role in the settlement; and

3. Class Counsel is ordered to alert all known third-party claims filing entities of the requirements within five days of entry of this Order.

*Id.*

The litigation continued for several years. At the September 7, 2023 Status Conference, the Court requested that Class Counsel provide monthly reports to the Court regarding issues relating to third-party claim filers. These reports are to provide general information regarding third-party issues and, to the extent relevant, information regarding any entity-specific matters.

On October 5, 2023, Class Counsel filed a status report in which it stated, *inter alia*, that "[f]or the past several years, formally since November 2019, Class Counsel has tasked Epiq Systems, Inc. ["Epiq"] with providing monthly reporting regarding class member concerns or complaints regarding third-party claims-filing entities as well as claim-buying entities." *See* Dkt. No. 8982. Class Counsel noted that it addresses these concerns or complaints informally and without court intervention wherever possible. *See id.* Class Counsel noted that "Epiq continues to alert Class Counsel to new issues as they arise in addition to the monthly reporting process already in place." *Id.*

On May 24, 2024, as part of its monthly status reports to the Court, Class Counsel informed the Court that Milberg "has been registering clients with Epiq for third-party-filing services for certain companies which came from a referral partner [] that Milberg has subsequently acknowledged are fraudulent." Dkt. No. 9306 at 1. Class Counsel explained that the issue

3

"surfaced when another entity informed Class Counsel [the week of May 24, 2024] that in several instances where a conflict notice has issued, Milberg agreed to withdraw their purported contract, acknowledging that the contracts were fraudulent." *Id.* Class Counsel "reviewed several of these purported contracts and on their face[,] it appears that even a cursory review by Milberg upon receipt from the referral partner would have revealed they are not legitimate." *Id.* at 2. Class Counsel were "informed of 30 instances where [] the proof of authorization document was withdrawn, either because of a conflict or for unknown reasons that all came from the same referral partner." Dkt. No. 9306 at 3. Class Counsel promptly raised its concerns with Milberg and sought Court intervention to ensure timely responses. *See id.* at 2-4.

In the same May 24, 2024 status report, Milberg stated that it took Class Counsel's allegations "very seriously" and recognized that it is "fully aware of its obligations regarding the submission of claims in this matter." *Id.* at 3. Milberg stated that it has "withdrawn all improper claims and [Milberg is] undertaking an audit of every claim submitted to this Court." *Id.* at 3-4. Specifically, Milberg "has voluntarily agreed to undertake an audit of every single claim it has submitted to date to verify for accuracy. This process includes contacting every merchant to verify they still want Milberg to handle their claim. To the extent a merchant declines, Milberg will withdraw from handling that merchant's claim." *Id.* Milberg added that it is not submitting any further claims in connection with this action and will continue to cooperate with Class Counsel should any further issues arise." *Id.* at 6-7. Milberg also identified the problematic referring entity as Ms. Laverne Hallak of San Diego, California.

On May 26, 2024, the Court ordered, *inter alia*, Class Counsel to file a status report by July 6, 2024 regarding the allegedly false documents filed with Epiq. *See* Text Order, dated May 26, 2024. The Court ordered Class Counsel to include a response from Milberg as to the status of the above-described process. *See id.*

4

On June 6, 2024, Class Counsel and Milberg filed a joint status report. *See* Dkt. No. 9318. Milberg stated that it has withdrawn all claims submitted through the referral source that purportedly submitted fraudulent claims to Milberg. *See* Dkt. No. 9318 at 4-6. Milberg explained that since May 24, 2024, "Milberg has withdrawn its registration of authorities to represent 116 entities that were submitted to Epiq"; "[e]ach of these 116 entities was submitted to Milberg by the same problematic third-party referral source." *Id.* at 5 ("To be clear, Milberg did not submit claims on behalf of any of these 116 entities. Rather, Milberg registered its representation of these entities via the platform and protocols implemented by Class Counsel and the Court so that Epiq could review and vet them as intended. Following the registration of these 116 entities is when the fraud was first detected."). Additionally, Milberg stated that it has "audited each claim submitted to Epiq, regardless of source, to verify the accuracy of the same." *Id.*

On June 7, 2024, the Court issued an order requiring further briefing. *See* Text Order, dated June 7, 2024. In that order, the Court noted that "[w]hile Milberg states that it has 'ceased advertising for clients in connection with this matter as of April 1, 2024, and has not retained any new clients since that date from any source' (Dkt. No. 9318 at 6), a number of questions remain regarding the claims that Milberg has already submitted to Epiq, including for clients in which Milberg is 'working to secure signatures that are missing from the retainer agreements,' as well as the '782 merchant clients with conflicted claims' (Dkt. No. 9318 at 7)." *Id.* The Court ordered Milberg to file "by June 17, 2024, a letter providing a more detailed overview of their claims review process, including updates on all claims submitted to Epiq. Milberg shall attach declarations or affidavits where appropriate."

The Court also ordered Milberg to address, with citations to applicable law, "whether, as Class Counsel suggests, Milberg should be ordered to 'reimburse Epiq for the time spent related to these fake submissions, which has come at the expense of the class.'" *Id.* (citing Dkt. No. 9318

5

at 5). Additionally, the Court ordered Milberg to address whether a referral should be made to the Department of Justice regarding [Ms.] Hallak, the referring source at issue." *Id.* (citing Dkt. No. 9306 at 6; Dkt. No. 9318 at 5). The Court ordered Class Counsel respond to Milberg's letter by June 24, 2024.

On June 17, 2024, Milberg filed its response to the Court's June 7, 2024 order. *See* Dkt. No. 9328-1. In its response, Milberg provided (1) a more detailed overview of its claims review process, including updates on all claims submitted to Epiq; (2) its position on whether, as Class Counsel suggests, Milberg should be ordered to reimburse Epiq for the time spent related to fraudulent submissions; and (3) its position on whether a referral should be made to the Department of Justice regarding Ms. Hallak. *See* Dkt. No. 9328-1 at 1. In connection with its detailed overview of its claims review process, Milberg filed a declaration from its Vice President of Global Operations, Austin Camp, who explained, in detail, "Milberg's process for claimant onboarding and review for the Payment Card Interchange." *See id*. Milberg also explained that

> Milberg still has not formally filed a single claim for compensation for any of its merchant clients. [As of June 17, 2024], it has only registered merchant clients and their Authority to Represent documents for initial review and approval via the procedure set forth by the claims administrator. To this day, Epiq has a record of 5,064 claimants for whom Milberg submitted an Authority to Represent document for review. 2,527 of those claimants have since been withdrawn for conflict resolutions, false applications, deficient or uncured claims, little or no interchange fee data found and with no response from the claimants to cure or resolve. 26 claimants were found to be excluded parties. There are 27 remaining claimants with the status of "Deficient" due to the provision of illegible signatures from the merchant clients. Milberg is in the process of attempting to cure these deficiencies by engaging with these 27 clients via email and phone calls. Those who do not respond will also be withdrawn. In the status of "Conflict," Milberg has 935 claimants that it is still attempting to resolve. Finally, there are 1,549 "Approved" claims. Milberg will soon be withdrawing an additional 430 of these approved claims due to unresponsive clients failing to reaffirm their intent to have Milberg continue representing them.

Dkt. No. 9328-1 at 5 (internal citations omitted). Milberg argued that "[w]hile Milberg could have done a better job of screening the would-be clients' information—and will do so in the future—

6

such mistakes do not amount to bad faith" sufficient to warrant sanctions." *Id.* at 6. Milberg added that "[g]iven the severity of Ms. Hallak's actions in connection with the submission of fraudulent claimant information to Milberg and the toll it has taken on Class Counsel, the claims administrator, the Court, and the reputation of Milberg in the eyes of all of the above, Milberg supports any action the Court wishes to take in connection with the referral of Ms. Hallak to the Department of Justice." *Id.* at 7-8.

On June 24, 2024, Class Counsel filed its response to the Court's June 7, 2024 order. *See* Dkt. No. 9332. Class Counsel took issue with Milberg appearing "to blame, in part, Epiq's processes and systems for Milberg's fraudulent submissions." *Id.* at 1. In its response, Class Counsel noted that it requested that Epiq provide an estimate regarding the time spent dealing with this issue; Epiq estimates that about $25,000 in costs have been incurred to date. *See id.* at 4. Class Counsel argued that "Milberg's actions imposed costs on the Class by causing Epiq to spend time inputting, reviewing, and seeking to untangle the fake submissions." *Id.* at 1. Class Counsel also agreed that a referral to the Department of Justice regarding Ms. Hallak "appears appropriate." *Id.* at 7.

On June 28, 2024, the Court issued an order scheduling a conference for July 22, 2024 to discuss the above issues. The Court also set a further briefing schedule.

On July 10, 2024, Class Counsel filed a letter with the Court setting forth case law on the Court's authority to assess costs against a non-party. *See* Dkt. No. 9348. Class Counsel argued that the Court possesses the authority to sanction Milberg "for its conduct relating to the submission of more than 115 fake proofs of authority to Epiq." *Id.* at 1. Class Counsel noted that this Court "previously noted in relation to third-party claims filers, 'a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both

7

parties and non-parties.'" *Id.* at 2 (citing *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2006 WL 1025588, at *1 (E.D.N.Y. Mar. 31, 2006) and Dkt. No. 6349 at 55 (granting injunction as to third-party claims filer)). Class Counsel argued that "[i]n this case, the Court may assess the reasonable costs incurred by Epiq stemming from Milberg's conduct related to the submissions – the settlement agreement is a specific Court order," as "[t]his would protect the settlement as the costs incurred would otherwise come from the settlement fund." Dkt. No. 9348 at 2.

On July 12, 2024, Class Counsel filed the Stipulation regarding cost payments to Epiq. *See* Dkt. No. 9353. As set forth in the Stipulation, Class Counsel and Milberg agree and stipulate to the following:

> 1. Milberg has agreed to pay to Epiq $25,000, the total estimated costs incurred by Epiq in handling fake proofs of authority submitted to Epiq by Milberg. This payment shall be made to Epiq within 10 business days.
>
> 2. Milberg agrees that a referral to law enforcement is to occur related to Ms. Laverne Hallak, its previous referral partner. Class Counsel will contact the U.S. Attorney's office in San Diego, the county in which Ms. Hallak is believed to reside. Milberg agrees to cooperate fully in any investigation that may occur.
>
> 3. Class Counsel and Milberg agree that, in light of the foregoing agreement, sanctions against the Milberg firm are no longer necessary and the July 22, 2024 status conference is no longer necessary, but the Parties leave the decision to the Court's sound discretion.

Dkt. No. 9353 at 1-2.

## II. Discussion

The integrity of the claims process in this matter remains essential. Indeed, throughout this litigation, efforts have been made to proactively protect class members from deception. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, -- F. Supp. 3d -- 2023 WL 8642541 (E.D.N.Y. Dec. 14, 2023) (addressing a false website that sought to mirror the official, Court-approved settlement website); Dkt. No. 6147 ("It is clear to the Court that the overwhelming

8

majority of the members of the merchant class need protection from overreaching claims filing services, and [the Court] intend[s] to provide that protection proactively. Preventing confusion and deception before they can happen is far preferable to taking remedial measures after they happen.").

The Court agrees with Class Counsel that it has the authority to sanction Milberg. *See Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514, 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power). But in light of Milberg's agreement to pay Epiq $25,000 for all of its costs to date, the Court finds that a Court-ordered sanction is unnecessary at this time. Further, as Class Counsel and/or Milberg will refer Ms. Hallak's actions to the Department of Justice, the referral issue for Ms. Hallak is deemed moot.[1]

The Court notes, however, that Milberg concedes that there remain claimants with "deficient" status "due to the provision of illegible signatures from the merchant clients." Dkt. No. 9328-1 at 5. While the Court recognizes that Milberg is in the process of attempting to cure these deficiencies along with other unresolved claims, the Court seeks additional assurance from Milberg that the fraudulent claims have been eliminated.

Therefore, Milberg shall file a status report by July 26, 2024 regarding any pending claims submitted to Epiq. The status report shall be made part of Class Counsel's July 26, 2024 status report filing. *See* Dkt. No. 9340 at 4. Milberg's status report shall provide an update regarding, *inter alia*, the outstanding issues raised in Milberg's June 17, 2024 submission, as well as any other

---

[1] In its July 26, 2024 status report to the Court, Class Counsel shall provide an update as to when it referred Ms. Hallak's actions to the United States Attorney for the Southern District of California.

9

pertinent updates. *See* Dkt. No. 9328-1 at 5. Milberg shall also state whether it will be submitting any more claims to Epiq going forward.

### III.  Conclusion

In light of the above, the Court declines to sanction Milberg at this time. The Court adjourns the July 22, 2024 conference and Milberg's corresponding July 17, 2024 deadline *sine die*. Milberg shall file a status report by July 26, 2024 regarding any pending claims submitted to Epiq. Class Counsel shall serve a copy of this order on Milberg by July 15, 2024.

Dated:      Brooklyn, New York
            July 13, 2024                              **SO ORDERED.**


                                                        */s/ Joseph A. Marutollo*
                                                       JOSEPH A. MARUTOLLO
                                                       United States Magistrate Judge