**ROBBINS GELLER RUDMAN & DOWD LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

August 6, 2024

<u>VIA ECF</u>

The Honorable Judge Margo K. Brodie
United States District Court
   for the Eastern District of New York
225 Cadman Plaza East
Courtroom 6F
Brooklyn, NY  11201

      Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
            No. 1:05-MD-1720 (MKB)(JAM)

Dear Judge Brodie:

     Rule 23(b)(3) Class Counsel ("Class Counsel") write: (i) to request an extension of the claims-filing deadline; (ii) to report to the Court an issue involving data from Square Inc. ("Square") that is important to the ability of the Class Administrator to get certain merchants claim forms; and (iii) to report to the Court Class Counsel's and Epiq's ("Epiq" or "Class Administrator") proposal to establish a minimum payment option for approved claimants.

     Class Counsel does not make this request lightly and does not expect that another request for an extension will be necessary.

     **A.**    **The Request for an Extension is Necessary**

     Epiq has provided a declaration from Senior Vice President Loree Kovach explaining the factors related to the request for an extension.  *See* Exhibit 1 (Declaration of Loree Kovach, dated August 6, 2024) ("Kovach Declaration").[1]  For the 2019 Notice Mailing, the Class Administrator, in conjunction with Class Counsel, employed data compiled from data sources produced for the 2013 Settlement along with supplemental data sets produced by various parties through 2019.  *See* ECF 7469-7 (Declaration of Nicole Hamann, dated June 6, 2019), ¶¶8-17.  The developed methodology resulted in, for the vast majority of cases, a single mailing of the long-form notice to each unique Taxpayer Identification Number ("TIN") in the data set at an address identified based on a number

---

[1]    A prior request for an extension was made on May 14, 2024 and granted on the same day.  ECF 9294.  *See also* ECF 9294-1 (Declaration of Loree Kovach, dated May 14, 2024).  The reasons for that request are different from the reasons for this current request, although additional time will likely also help to manage those concerns which included many thousands of unresolved conflicting claims between third-party filers, class members, and claim buyers as well as thousands of requests from class members regarding data, including requests to re-query the database and to provide additional data to determine interchange fees paid which has been greater than anticipated.

**Robbins Geller Rudman & Dowd LLP**

The Honorable Margo K. Brodie
August 6, 2024
Page 2

of criteria. *Id.*, ¶18.a.-g. Merchants which were not excluded parties and for which the data was usable were included in the mailing, with the exception of a subset of records. All merchants who received the long-form notice via mail were informed they would automatically be sent a claim form if and when the settlement was approved by the Court.

Since 2019 Epiq has received additional data, including updated data from Visa Acquirer Merchant Master File ("Visa AMMF 5") which contains additional merchant TINs.[2] In all, Epiq possesses four large sets of data, including the disputed Square data (as discussed below), that could and should be used to check if a claim form has been mailed and/or mail additional claim forms. If the Square issue is resolved in favor of allowance to use the data, then data from Intuit Inc. and Intuit Payment Solutions, LLC ("Intuit"), Visa AMMF 5, Square, and one additional smaller subset of data will be used after Epiq works to combine and de-duplicate the data sets. Epiq will also analyze address data from multiple sources to identify the best address for mailing purposes as well as create mailing files. Exhibit 1, ¶¶8-10. The proposed data work is detailed in the Kovach Declaration. *Id.* Following the creation of mailing files, printing would commence on a rolling basis. *Id.*, ¶10. As printing is completed, the Claim Forms will be dropped into the mailstream. Epiq expects to complete the mailings over the next two months, and requests the claim deadline be extended 180 days from now. *Id.*, ¶¶4, 10.

There is an enormous volume of data in this case and the understanding of that data and the use to which it can be put has evolved as the claims process has progressed. Class Counsel and Epiq want to ensure that as many class members as possible are able to obtain settlement benefits and mailing claim forms to additional potential claimants which can be recovered from these additional data sets will advance that goal. If granted, this additional time for the claims process will benefit all class members.

### B. Square's Refusal to Allow Use of Important Data for Claims Administration Purposes

Class Counsel has reached an impasse with Square regarding a request to use for claims purposes only, data previously provided by Square to effectuate its opt out in 2019. Class Counsel requests the Court order Square to allow the data provided in 2019 be used to check if a claim form has already been sent directly, and if not, send claim forms to certain submerchants who may be

---

[2] From investigation, it appears clear that while these new data sources may contain a large number of new TINs that may reflect potential class member, the corresponding amount of relevant commerce is quite small.

4893-8986-5173.v1

**Robbins Geller Rudman & Dowd LLP**

The Honorable Margo K. Brodie
August 6, 2024
Page 3

unique in Square's data. Without this data, some set of merchants who only used Square as a payment facilitator during the relevant time, may not be mailed claim forms,[3] despite the data being extant.

As part of its original request to opt out of the settlement, Square provided Epiq a significant volume of data to effectuate that opt out. In providing that data, Epiq and Square executed a mutual non-disclosure agreement ("MNDA"). Following receipt of Square's data, Epiq and Square discussed the planned destruction of this data. After several discussions, the matter was left unresolved, and Epiq still possess the data.

On July 2, 2024, Class Counsel wrote to Square's counsel and requested, because of the MNDA, permission to use the opt-out data for claims administration purposes.[4] Having received no response, Class Counsel followed up on July 10, 2024. On July 11, 2024, Class Counsel again requested permission to use the data.

On July 17, 2024, Square's counsel responded that he could not respond without further discussions with Square. Class Counsel followed up on the original request that same day. On July 18, 2024, Square's counsel raised several issues that are not relevant to providing claim forms to the Square submerchants but instead relate to Defendants' Motion to Enforce. Class Counsel responded on July 22, 2024 explaining that the request was made for claims administration purposes and Square's counsel's questions and statements made in response to that request appeared to try to draw Class Counsel into a dispute between defendants and Square. Class Counsel further noted that Square's references to views of Class Counsel reported in defendants' motion to enforce were neither inaccurate nor contradictory to the request regarding the data. Class Counsel further addressed what appeared to be notice-related questions, by pointing out that the Court long ago held that the notice provided to the Rule 23(b)(3) Settlement Class was the best notice practicable under the circumstances. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *34 (E.D.N.Y. Dec. 16, 2019) ("For the reasons set forth in the Preliminary Approval Order, the Court finds that the notices that were sent to putative class members were the best

---

[3] Claim forms are available in multiple languages to anyone on the Court-approved website. https://www.paymentcardsettlement.com/en/Document/ClaimForms.

[4] It should be noted that Intuit, an entity that also provided a significant volume of data related to its opt-out request and also entered into a non-disclosure agreement with Epiq, acceded to Class Counsel's request to use their data for claims-administration purposes. A review of the data possessed and the mailings made directly to submerchants shows 2.3 million out of 2.6 million submerchants did indeed receive a mailed claim form directly. Intuit was also one of several entities that were subpoenaed in 2019 to obtain merchant data. There have been several communications with Intuit regarding matters related to notice to Intuit's submerchants. The parties appear to be at odds over some issues, which Intuit may raise with the Court, but Intuit did agree to the request regarding use of the data.

Robbins Geller
Rudman & Dowd LLP

The Honorable Margo K. Brodie
August 6, 2024
Page 4

practicable notices under the circumstances."), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC*, 62 F.4th 704 (2d Cir. 2023). This included both mailed notice and a massive publication notice program. Finally, Class Counsel sought a firm response by July 25, 2024 so that it could raise the issue with the Court.

On July 25, 2024, Square responded stating that Class Counsel refused to explain the need for data. The need for the data is to ensure that merchants receive a mailed claim form and to crosscheck that data with data provided by Visa and others. While the volume of the submerchant PayFac interchange fees may be small, perhaps less than 3% of the overall interchange volume, the number of small merchants is large. On July 25, 2024, Class Counsel explained the request and notified Square's counsel that Class Counsel would raise the data permission request with the Court.

    **C.**    **Minimum Payment Proposal**

Class Counsel and Epiq propose a minimum payment option be offered to class members, following a determination that, particularly as to certain submerchants, the technological challenges that exist in determining interchange fees paid would result in a significant expenditure of the settlement funds for likely modest claims without a corresponding benefit. Specifically, attempts to match the interchange fees paid by certain merchants will take so much time to determine that the administrative costs will greatly exceed the small claim amount they might otherwise receive.

Based upon Epiq's current understanding of the data in its possession, transactions of a particular payment facilitator are often associated to aggregate merchant identifiers such that these Visa monthly roll-up reports ***do not*** include a distinct merchant identifier for each distinct underlying payment facilitator submerchant. Without a distinct merchant identifier Epiq does not have a way to link the submerchant to the interchange fee data without substantial and costly work, that may not even result in a "match." This type of analysis therefore would be extraordinarily burdensome.

The proposal would allow for a minimum payment of $25 for all eligible class members who file an otherwise valid Claim and for whom Epiq is unable to identify interchange fee data in its data set, regardless of whether the class member is a submerchant or not. Should this minimum payment provision be implemented, Epiq would update the settlement website and would engage in a media campaign using internet banner ads and social media to inform class members of this minimum payment option. In addition, should the extension of the claim filing deadline be granted, Class Counsel and Epiq intend to send a reminder postcard to all class members who have not yet filed a claim. The minimum payment can be addressed on the reminder postcard.

Review of the Appendix I – Plan of Administration and Distribution (ECF 7257-2) ("Plan") authorizes Epiq to make "a reasonable estimate of . . . claim value" and expressly describes principles in carrying out the Plan as including reaching results that are "fair and equitable" and "ensures that

4893-8986-5173.v1

**Robbins Geller Rudman & Dowd** LLP

The Honorable Margo K. Brodie
August 6, 2024
Page 5

the administration is as simple and cost-effective and imposes as minimal a burden on Claimants as possible." *Id.* at I-2, I-8.  Class Counsel believes the minimum payment proposal is within the Class Administrator's designated duties.  Class Counsel present this proposal to the Court in the event the Court considers the proposal a modification of the Plan.  If so, the media campaign and postcard reminder notice plan mentioned above would satisfy any notice concerns.

Respectfully submitted,

| */s/ Ryan W. Marth* | */s/ Michael J. Kane* | */s/ Alexandra S. Bernay* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Alexandra S. Bernay |
| Ryan W. Marth | Michael J. Kane | **Robbins Geller Rudman** |
| **Robins Kaplan LLP** | **Berger Montague PC** | **& Dowd LLP** |

Exhibit 1

cc:     All Counsel via ECF

4893-8986-5173.v1