**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

August 7, 2024

**VIA ECF**
Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
05-md-1720 (MKB) (JAM)
*Intuit, Inc., et al. v. Visa Inc., et al.*, 21-cv-1175 (MKB) (JAM)
*Block, Inc. v. Visa Inc. et al.*, 23-cv-5377 (MKB) (JAM)

Dear Chief Judge Brodie:

We write on behalf of Plaintiffs Intuit and Square in response to Defendants' August 2, 2024 letter (ECF 9374) ("Letter") request for a pre-motion conference in connection with their contemplated Motion for Injunction Compelling Dismissal of Released Claims and for an Interim Stay ("Motion for Injunction"). *See also* ECF No. 9370-1 (Defs.' Mem. in Supp. of Mot. for Injunction). For multiple reasons, the Motion for Injunction is improper and futile.

*First*, Defendants' proposed Motion is an untimely and improper motion for reconsideration. Defendants' previous Motion to Enforce Settlement Agreement or, in the Alternative, for Summary Judgment (ECF 9056), asked the Court to dismiss the PayFac portion of Intuit's and Square's claims, on the basis that the Settlement Agreement supposedly released those claims due to Intuit's and Square's role as "agents" for their submerchants. ECF 9057. In the proposed Motion, Defendants seek the exact same relief—"dismissal of the released claims of Square and Intuit based on transactions in which they acted as payment-facilitator agents" based on the exact same Settlement Agreement. ECF 9370-1, at 1.

Defendants concede they previously sought this same relief based on the same purported authority. *E.g.*, Letter at 2 (noting that proposed Motion again seeks "dismissal of [Square's and Intuit's] payment-facilitator claims"). They also acknowledge that the Court denied their prior request, while separately holding that Intuit's and Square's submerchants were Settlement Class members according to the contractual (not antitrust standing) definition of "accepted" in the Settlement Agreement. Defendants contend the proposed Motion "raises issues the Court has not previously decided." Letter at 1. But these issues were unquestionably put before the Court, *see* ECF 9308, at 13 n.17, 14 n.18, 29-30, and thus the proposed Motion involves "matters . . . which counsel believes the court has overlooked." Local Civil Rule 6.3. The Motion for Injunction is,

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

therefore, a motion for reconsideration. *Meehan v. Brookliv LLC*, 2022 WL 523545, at *1 (E.D.N.Y. Feb. 22, 2022) (denying motion to vacate under reconsideration standard where application sought same relief on same grounds as previous motion).

If Defendants wanted to ask this Court to reconsider its prior decision, they were required to file their motion within 14 days of the challenged order. In addition, it is black letter law that a motion for reconsideration must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). Defendants' proposed motion does not even try to meet this standard. It identifies no change in controlling law, new evidence, or manifest injustice. It is also inappropriate because a party seeking reconsideration "cannot rely upon facts, issues, or arguments that were previously available but not presented to the court," *Hoeffner v. D'Amato*, 664 F. Supp. 3d 269, 272 (E.D.N.Y. 2023), and reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Dieujuste v. Sin*, 2024 WL 2308693, at *1 (E.D.N.Y. May 22, 2024). Defendants' request to file an untimely and improper motion for reconsideration should be denied because the Court has already held that the issue of Intuit's and Square's antitrust standing is in dispute. If Intuit and Square have antitrust standing, which this Court has held a reasonable jury could find, then their submerchants had nothing to release and could not relinquish claims that did not belong to them. It is futile to brief these issues yet again, given the Court's previous reasoned decision.

*Second*, while now invoking the All-Writs Act (a "new theory" foreclosed by the reconsideration standard), Defendants identify no case in which any court employed that Act to order a party before it to self-dismiss rather than to affirmatively order dismissal under Rule 12 or 56. The cases Defendants cite, *see* Letter at 2 n.2, stand for the general proposition that a party required to proceed in a court presiding over a class action may be enjoined from bringing a parallel action elsewhere. That proposition offers no support for Defendants' Motion. Instead, these cases **support** allowing Intuit and Square to proceed. In *California v. IntelliGender, LLC*, 771 F.3d 1169 (9th Cir. 2014), the Ninth Circuit enjoined California from bringing a restitution claim that duplicated class members' previously-settled restitution claim, and which California asserted on their behalf after having an opportunity to object to the settlement and intervene directly in the federal case. The remainder of California's claims, which were unique to it as an individual plaintiff, could proceed. *Id.* at 1171-72, 1179-82. Here, Intuit's and Square's PayFac claims do *not* overlap with submerchants' claims because the latter are indirect purchasers. Even if Defendants ultimately settled federal antitrust claims with parties that do not have antitrust standing, *IntelliGender* means the Court cannot and should not enjoin Intuit and Square from pursuing claims for which they have unique standing and rights.[1]

---

[1] *White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) certified a non-opt-out class action and enjoined parallel actions. *Id.* at 1433-35. Here, the Rule 23(b)(3) Settlement Class was opt-out and the Court ruled that Intuit and Square were not Settlement Class members. *White* is thus distinguishable, and illustrates that enjoining Intuit and Square would violate due process. In *Robertson v. Nat'l Basketball Ass'n*, 413 F. Supp. 88 (S.D.N.Y. 1976), the court enjoined an action brought in California by a class member who had notice of his right to opt out,

2

*Third*, the anticipated Motion is an unsupported, futile Rule 56 motion for summary judgment that seeks to force Intuit and Square to self-dismiss their claims by way of an "injunction" rather than have the Court grant dismissal. To achieve this outcome, Defendants ask the Court to make factual determinations about the scope and nature of the limited agency relationships between Intuit or Square and their respective submerchants under New York law, even though Intuit's and Square's submerchant contracts are governed by California law. In any event, both California and New York law are clear that the existence and scope of agency is a factual dispute inappropriate for summary judgment. *See Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 994 (2d Cir. 1991); *Siegelman v. Salimi*, 2023 WL 4721212, at *10 (Cal. Ct. App. July 25, 2023). Moreover, agency relationships are limited in scope to the purposes intended by the principal and agent, and defined by control and authority. *United States v. Meregildo*, 920 F. Supp. 2d 434, 443-44 (S.D.N.Y. 2013). Defendants' agency argument is predicated on the notion that Settlement Class members, as principals, had authority to bind agents with respect to the payment of card acceptance fees. Defendants never explain how or why Intuit's or Square's submerchants had such authority. Nor have Defendants ever argued that the limited agency relationship between Intuit or Square and their submerchants makes submerchants direct purchasers under federal antitrust law. *See generally* ECF 9057, 9370.[2] Since the submerchants were not direct purchasers on PayFac transactions, the *only* basis on which they could release Intuit's or Square's PayFac claims is if they were both Settlement Class Members *and* had authority to do so.

This is important because, under the New York law governing the Settlement Agreement, "a contract cannot bind a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the 'alter ego' of the party." *See Malmsteen v. Univ. Music Grp., Inc.*, 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2013) (citation omitted). Defendants have **never** argued or provided any record evidence to prove that Intuit's or Square's submerchants were their **PayFac's** agent or had actual, apparent, or implied authority to bind their PayFac to the Settlement Agreement's release. Nor have Defendants argued Intuit or Square assigned their antitrust claims to their submerchants, or that a submerchant is its PayFac's alter ego. This means Defendants have not provided evidence that submerchants had any ability to bind non-parties Intuit or Square to the Settlement Agreement. That the contract in question is a settlement agreement does not change this analysis. *See Davis v. Blige*, 505 F.3d 90, 102-03 (2d Cir. 2007) ("Settlement agreements are not to be used as a device by which A and B, the parties to the decree, can (just because a judge is willing to give the parties' deal a judicial imprimatur) take away the legal rights of C, a nonparty.") (cleaned up); *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011) ("It is elementary that a settlement agreement cannot release claims that the parties were not authorized to release.").

---

but did not do so. *Id.* at 90-91. Even if the Court had not held (as it did) that Intuit and Square were never Settlement Class members, both opted out of the Settlement Class.

[2] Although *the Court* held there was a genuine dispute about whether submerchants or PayFac are direct purchasers, *see* ECF 9308 at 29-30, Defendants never made that argument, instead contending that only acquiring banks are direct purchasers. ECF 9100 at 20.

3

Respectfully submitted,

 /s/ *Adam B. Wolfson*
Adam B. Wolfson
*Counsel for Plaintiffs Intuit Inc. and Intuit Payment Solutions, LLC*


 /s/ *Steig D. Olson*
Steig D. Olson
*Counsel for Plaintiff Block, Inc., f/k/a/ Square, Inc.*