# quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7140

WRITER'S EMAIL ADDRESS
marcgreenwald@quinnemanuel.com

August 8, 2024

**VIA ECF**
Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720 (MKB) (JAM)

Dear Chief Judge Brodie:

We represent Block, Inc. ("Square") and write in response to Rule 23(b)(3) Class Counsel's letter dated August 6, 2024 (ECF 9380, "Letter"), which requested that the "Court order Square to allow the data provided in 2019 be used to check if a claim form has already been sent directly, and if not, send claim forms to certain submerchants who may be unique in Square's data." Letter at 2-3.

Class Counsel claims that it "has reached an impasse with Square regarding a request to use for claims purposes only, data previously provided by Square to effectuate its opt out in 2019." Letter at 1. To the contrary, on July 26, Square expressly informed Class Counsel that it has "***not*** refused to grant Class Counsel's request to use this highly-sensitive data" (emphasis added). Square did, however, reiterate its need to protect its customer's data and investigate the privacy implications of Class Counsel's request. Square also noted Class Counsel's continued "refusal to explain your need for the data, your contemplated uses of the data, or how your request is in any way consistent with prior representations to the Court."

Square's questions were motivated not by any desire to obstruct the claim administration process, but by an obligation to protect its customers' data. That is the very reason why Square

only provided this data subject to a non-disclosure agreement and directed its destruction after it was used to process Square's exclusion request.[1]

In addition, Square does seek to understand Class Counsel's statements that there exist "submerchants who had not yet received" claim forms and that the "opt-out data provided by Square contained novel records not otherwise available in the data in Epiq's possession from other sources." Such statements remain difficult to reconcile with representations made to the Court by Visa and Mastercard. Specifically, Defendants stated in recent briefing that:

- Square was "wrong" to "suggest that [Square's submerchants] 'do not exist within Defendants' transactional data'" (ECF 9100 at 21 (quoting Square's September 1, 2023 letter, ECF 8917)),

- "[M]erchants serviced by payment facilitators do exist within Defendants' transactional data" (ECF 9100 at 21),

- "Defendants have confirmed that the data the class administrator is using to provide claims forms to merchants include the millions of customers of payment facilitators" (ECF 9103 at 2), and

- "To provide direct notice, the class administrator compiled [records that] would have captured merchants that used payment facilitators during the class period." (ECF 9103 at 15).

Class Counsel ignored Square's requests for clarification and refused to explain its need to use Square's opt-out data for claim administration purposes. Indeed, Class Counsel's Letter to the Court is the first time Class Counsel has explained in any way their need for Square's data. Based on these representations, Square will agree that its 2019 opt-out data may be used by Class Counsel to provide notice to the "large" number of submerchants (Letter at 2 n.3, 4) that Class Counsel now acknowledges have never been provided with notice or claim forms.[2]

---

[1] Class Counsel's letter suggests that the question of whether to delete Square merchant data was "unresolved." Letter at 3. Not so. After extensive discussion with the Class Administrator, on June 26, 2020, Epiq proposed to strengthen its hashing to address security concerns and provide additional data protection. Only on this basis did Square agree on July 6, 2020, that Epiq could safely retain certain data while deleting other fields.

[2] The declaration from the Class Administrator (ECF 9380-1) confirms that Square is the direct purchaser of card-acceptance services from Visa and Mastercard. Epiq indicates that Visa and Mastercard's data is only capable of tracking Square's payment of interchange fees, and cannot associate any such payments with Square's customers (and, as a result, suggests that Square's many customers should receive a flat payment of just $25). *See* ECF 9380-1 at ¶11 & n.1 ("[T]here are many otherwise eligible Class Members for whom the Class Administrator was unable to identify Interchange Fees Paid . . . a large number of Class Members are merchant-customers of payment facilitators. . . . [T]ransactions of a particular payment facilitator are often associated to aggregate merchant identifiers such that the Visa monthly roll-up reports of

2

Respectfully submitted,

*/s/ Marc L. Greenwald*

Marc L. Greenwald

---

interchange transaction activity do not include a distinct merchant identifier for each distinct underlying payment facilitator merchant-customer.").

3