UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to:

ALL RULE 23(b)(3) CLASS ACTIONS;
*Block, Inc. v. Visa Inc.*, No. 23-CV-5377;
*Lanning v. Visa Inc.*, No. 21-CV-2360;
*Camp Grounds Coffee, LLC v. Visa, Inc.*, No. 21-CV-3401; *Intuit, Inc. v. Visa Inc.*, No. 21-CV-1175

-----------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On July 19, 2024, plaintiffs in *Lanning v. Visa Inc.*, No. 21-CV-2360 (E.D.N.Y.), and *Camp Grounds Coffee v. Visa, Inc.*, No. 21-CV-3401 (E.D.N.Y.) (collectively, "*Lanning* Plaintiffs"), moved for a stay of the Court's May 28, 2024 decision pending their appeal to the Second Circuit. (*Lanning* Pls.' Letter Mot. to Stay May 28, 2024 Order ("Pls.' Mot."), Docket Entry No. 9358.) In the May 28, 2024 decision, the Court found that the *Lanning* Plaintiffs, who use services offered by Block, Inc., formerly known as Square, Inc. ("Square"), to accept payment cards, "accepted" payment cards within the meaning of the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and Defendants (the "Settlement Agreement"), and were therefore members of the settlement class. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 2816049, at *13 (E.D.N.Y. May 28, 2024). *Lanning* Plaintiffs timely filed a notice of appeal on June 12, 2024, and filed a motion for an expedited appeal with the Second Circuit on July 19, 2024. (Notice of Appeal, Docket Entry No. 9327; Mot. for Expedited Appeals Calendar, *In re Payment*

*Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 24-1653 (2d Cir. July 19, 2024), Docket Entry No. 22.) *Lanning* Plaintiffs seek an order staying "(1) any additional notice program by the Rule 23(b)(3) Settlement Class claims administrator regarding the direct purchaser settlement to members of the Class alleged in the *Lanning* and *Camp Grounds* actions (the 'Square Sellers'); and (2) distribution of settlement funds to the Rule 23(b)(3) Settlement Class," (Pls.' Mot. 1), and argue that all relevant factors warrant a stay in their favor, (*id.* at 2–5). On July 25, 2024, Rule 23(b)(3) class counsel ("Class Counsel") filed a response opposing *Lanning* Plaintiffs' motion, (Class Counsel's Letter Resp. in Opp'n to Pls.' Mot. ("Class Opp'n"), Docket Entry No. 9361), and on July 26, 2024, Visa filed a letter joining Class Counsel's opposition, (Visa Letter Joining Class Opp'n, Docket Entry No. 9364). On July 31, 2024, the Second Circuit denied *Lanning* Plaintiffs' request for an expedited appeal. (Mot. Order Denying Mot. to Expedite Appeal, *In re Payment Card*, No. 24-1653 (2d Cir. July 31, 2024), Docket Entry No. 37.) On August 6, 2024, Class Counsel requested, *inter alia*, a 180-day extension of the claims filing deadline. (Letter from Rule 23(b)(3) Class Counsel Requesting Extension of Claims-filing Deadline, Docket Entry No. 9380.) On August 8, 2024, the Court granted Class Counsel's request. (Order dated Aug. 8, 2024.)

For the reasons explained below, the Court denies *Lanning* Plaintiffs' motion for a stay.

**I. Background**

On January 31, 2024, Defendants[1] in this multidistrict litigation moved to enforce the Settlement Agreement against Square and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit"), based on transactions in which Square or Intuit served as a "payment

---

[1] Defendants consist of the Visa and Mastercard networks (the "Network Defendants") as well as "various issuing and acquiring banks" (the "Bank Defendants"). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 18 (E.D.N.Y. 2019).

2

facilitator" for their merchant customers. (Defs.' Mot. to Enforce Settlement Agreement or, in the Alternative, for Summ. J., Docket Entry No. 9056.) Square, Intuit, and *Lanning* Plaintiffs opposed the motion and cross-moved for partial summary judgment, seeking a ruling that Intuit has antitrust standing to bring claims based on the transactions at issue, and a ruling that *Lanning* Plaintiffs are not members of the Settlement Class.

On May 28, 2024, the Court granted Defendants' motion and found that *Lanning* Plaintiffs and other similarly situated merchants — referred to below as "Sellers" — "accepted" payment cards as defined by the Settlement Agreement and were therefore members of the Settlement Class. *In re Payment Card*, 2024 WL 2816049, at *13. First, the Court found that the term "accepted" as used in the Settlement Agreement was ambiguous and looked to extrinsic evidence to determine the intent of the parties. *Id.* at *7–8. Second, the Court determined that the meaning of the term "accepted" was "guided by federal antitrust standards." *Id.* at *8. Accordingly, the Court was "guided by the Supreme Court's decision in *Illinois Brick* and its progeny, which make clear that only one entity in a chain of transactions can have antitrust standing — the direct purchaser." *Id.* The Court concluded that, under *Illinois Brick*, "only one entity in the payment chain can be deemed to have 'accepted' a payment card." *Id.* Third, the Court reviewed the record evidence and found that Sellers, rather than Square or Intuit, accepted payment cards because (1) Square's and Intuit's merchant agreements established that Sellers accepted payment cards, (2) Visa's and Mastercard's rules provided that Sellers accepted payment cards, and (3) *Lanning* Plaintiffs themselves admitted in their declarations that they accepted payment cards. *Id.* at *9–11; *id.* at *11 ("Hayley Lanning declares, for example, that she 'operate[s] a cosmetology business and accept[s] all major credit and debit cards.'" (alterations in original)). In addition, "the way real-world transactions are conducted support[ed]

3

the conclusion that Sellers 'accept' payment cards. In the prototypical transaction, the cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale, just as the Seller could have instead accepted cash from a customer." *Id.* at *9; *see also id.* ("[I]t would strain the meaning of the word 'accepted' to interpret it to mean that Square or Intuit 'accepts' a payment card, but the Seller 'accepts' cash, for two otherwise identical transactions.").

## II. Discussion

### a. Standard of review

In deciding whether to grant a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Grote*, 961 F.3d 105, 122–23 (2d Cir. 2020) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)). The issuance of a stay is "left to the court's discretion." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Carroll v. Trump*, 687 F. Supp. 3d 394, 399–400 (S.D.N.Y. 2023) ("[A] stay is 'not a matter of right.' Rather, it is 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" (second alteration in original) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926))).

### b. The Court denies *Lanning* Plaintiffs' motion for a stay pending appeal

*Lanning* Plaintiffs argue that a stay is warranted because all four factors that the Court is required to consider weigh in favor of granting the stay. (Pls.' Mot.) First, *Lanning* Plaintiffs argue that they are likely to succeed on the merits of their appeal because the Second Circuit has held that the scope of the Settlement Class is to be interpreted with "reference to the direct

4

purchaser standing requirement under the federal antitrust law." (*Id.* at 2.) They argue that the Sellers paid no interchange fees on any transactions, and that they therefore cannot be included in the Settlement Class definition. (*Id.*) Second, *Lanning* Plaintiffs argue that irreparable injury would result from denying a stay. (*Id.* at 3–4.) In support, they contend that if any amount of the settlement fund is distributed before the Second Circuit rules on the appeal, "the entire settlement process will be thrown into disarray if the Second Circuit reverses" the Court's decision. (*Id.* at 3.) Moreover, *Lanning* Plaintiffs argue that because of the then-current claims filing deadline of August 30, 2024, Square Sellers face a "dilemma" requiring them to either "give up their appellate rights and their right to bring their own indirect purchaser claims, sign a broad release, and accept pennies on the dollar; or refuse to make a claim, perhaps knowing that if the Second Circuit affirms the May 28 Order, they will lose their opportunity to claim against the settlement and forego their only remedy." (*Id.*) Third, *Lanning* Plaintiffs contend that other parties would be injured without a stay because if they, along with other Sellers, make claims from the settlement fund after being "erroneously included in the Settlement Class," those claims would "unfairly dilute the amount to be distributed among direct purchasers who are members of the" Settlement Class. (*Id.* at 4.) *Lanning* Plaintiffs further argue that because "[d]istribution appears months away," a stay would not "meaningfully delay the distribution of settlement funds," and no party would be subject to any "meaningful prejudice." (*Id.*) Finally, *Lanning* Plaintiffs argue that the public interest favors a stay because "in one of the largest and most vigorously litigated settlements in history, the public interest strongly favors doing the distribution correctly, and only once." (*Id.* at 5.)

Class Counsel opposes the motion, arguing that *Lanning* Plaintiffs have failed to show that a stay is warranted. (Class Opp'n.) First, Class Counsel argues that *Lanning* Plaintiffs have

5

not shown they are likely to succeed on the merits. (*Id.* at 2–3.) In support, Class Counsel contends that "*Lanning* Plaintiffs' sole argument that [they] will succeed on the merits is that they 'paid no interchange fees to Visa or Mastercard, or to anyone else.'" (*Id.* at 2 (quoting Pls.' Mot. 2).) Further, Class Counsel notes that *Lanning* Plaintiffs failed to identify the standard of review that will be applied on appeal, and contends that the Court's factual findings were not "clearly erroneous." (*Id.* at 2–3.) Second, Class Counsel argues that *Lanning* Plaintiffs "provide[d] no basis to establish they will suffer irreparable injury" absent a stay. (*Id.* at 3.) In support, Class Counsel contends that it is "pure speculation" that Sellers who file claims and receive payment would need to "pay back any settlement funds received" should the Second Circuit subsequently reverse this Court's decision. (*Id.*) Class Counsel argues that the "total amount of interchange fees paid" by the Sellers is "a tiny fraction of the total amount of interchange fees paid by all Rule 23(b)(3) Settlement Class members," and, as a result, "the amounts at stake would be small enough not to impose any financial burden," and "would not significantly dilute the remainder of the" settlement fund. (*Id.* at 4.) Class Counsel further argues that any harm that *Lanning* Plaintiffs might suffer could be avoided by holding in trust any payments owed to the Sellers while the appeal is pending. (*Id.*) Class Counsel also disputes that the *Lanning* Plaintiffs will suffer irreparable harm due to the limited time to file a claim by the August 30, 2024 claims filing deadline. (*Id.*) Third, Class Counsel argues that a stay "would harm all Rule 23(b)(3) Settlement Class members" because a stay would "inject unnecessary delay into the claims administration process causing Rule 23(b)(3) Settlement Class members to wait even longer to receive settlement payments." (*Id.* at 5.) Class Counsel reiterates that Sellers constitute "a tiny amount of the interchange fees paid," and that, if necessary, the Court can put the amounts owed to the Sellers in trust pending the appeal. (*Id.*) Finally, Class Counsel

6

asserts that "[t]he public has an interest in bringing this nearly 20-year-old case to conclusion [through] an efficient and timely claims administration process." (*Id.*)

The Court finds that, on balance, the *Grote* factors do not weigh in favor of a stay and, accordingly, denies *Lanning* Plaintiffs' motion.

As to the first factor, the Court finds that *Lanning* Plaintiffs have not made a strong showing that they are likely to succeed on the merits.[2] As the Court explained in a related decision denying Defendants' motion for summary judgment under *Illinois Brick*, the Supreme Court has made clear that only the direct *purchaser* has standing. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 1014159, at *7–9 (E.D.N.Y. Feb. 22, 2024). First, the Court reasoned that a threshold inquiry is identifying the product being purchased, and found that the relevant product is "card-acceptance services." *Id.* at *11. Second, because the product in question is a service, unlike a tangible good such as concrete blocks, multiple intermediaries may facilitate the service without being considered purchasers of the service. *Id.* Thus, the Court explained that the direct purchaser is not always the same entity as the direct payor.[3] *Id.* at *12 ("[T]he Court concludes that the identity of the direct payor may be probative of the identity of the direct purchaser, but it does not accept [the]

---

[2] Although Class Counsel argues that *Lanning* Plaintiffs "will need to show this Court's factual finding was clearly erroneous," (Class Opp'n 3), the Second Circuit will review the Court's legal conclusions *de novo*. *See, e.g., Juzumas v. Nassau County*, 33 F.4th 681, 686 n.6 (2d Cir. 2022) (describing this standard of review as "well known").

[3] *See also In re Payment Card*, 2024 WL 1014159, at *12 ("For example, where a credit-card cardholder purchases a good on Amazon and then defaults on his credit-card obligations to Chase, it is the Issuer (Chase) who pays the merchant (Amazon). Because Chase has paid Amazon the amount owed to it, Amazon is indifferent whether the cardholder ever satisfies his obligations to Chase for the amount of the purchase. There is no question, however, that the cardholder is the direct purchaser from Amazon, notwithstanding the fact that Chase paid for the product on the cardholder's behalf.").

7

contention that only direct payors have standing under *Illinois Brick*."). Stated differently, the identity of the direct payor is often a good proxy for the identity of the direct purchaser, but when the payor and purchaser differ, it is the purchaser who has standing. *Id.* ("If the payor and purchaser are separate entities, the Court is bound by the Supreme Court's decision to confer standing on the purchasers."). Accordingly, in deciding Defendants' motion to enforce the Settlement Agreement, the Court understood the Second Circuit's references to the "direct payors of the challenged fees," *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716 (2d Cir. 2023), to be a proxy for the relevant inquiry: the direct purchaser of card-acceptance services, in part because no party is *purchasing* interchange fees. Rather, the fees are the price paid for the service being purchased. Finally, consistent with all of the above, the Court concluded that whoever "accepted" payment cards within the meaning of the Settlement Agreement is deemed the "direct purchaser" of card-acceptance services for the limited purpose of the Settlement Agreement.[4] The Court's conclusion best effectuated the intent of the parties and was most compatible with governing Supreme Court precedent.

As discussed above, the evidence in the record supported the conclusion that *Lanning* Plaintiffs accept payment cards because (1) Square's and Intuit's merchant agreements established that *Lanning* Plaintiffs accepted payment cards, (2) Visa's and Mastercard's rules provided that *Lanning* Plaintiffs accepted payment cards, and (3) *Lanning* Plaintiffs themselves

---

[4] The party who accepts a payment card is deemed a direct purchaser for purposes of the Settlement Agreement because Defendants waived their direct purchaser arguments in order to reach a settlement. (Defs.' Mem. in Supp. of Defs.' Mot. to Enforce Settlement Agreement or, in the Alternative, for Summ. J. 3, Docket Entry No. 9057 ("[A]ll entities other than acquiring banks . . . are indirect purchasers that are barred from seeking damages under federal law. Defendants compromised their indirect-purchaser defense solely to reach a settlement with the millions of class merchants . . . ." (emphasis omitted)).)

8

admitted in their declarations that they accepted payment cards. *In re Payment Card*, 2024 WL 2816049, at *9–11; *id.* at *11 ("Hayley Lanning declares, for example, that she 'operate[s] a cosmetology business and accept[s] all major credit and debit cards.'" (alterations in original)). Further, the same evidence supports the conclusion that *Lanning* Plaintiffs are the direct purchasers of card-acceptance services.[5]  *Lanning* Plaintiffs' payment facilitator — in this case, Square — does not purchase some quantity of card-acceptance services and re-sell those services to *Lanning* Plaintiffs, unlike the intermediary in *Illinois Brick* that purchased concrete brick and then re-sold it to the Illinois governmental entities. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726–27 (1977).  Rather, the evidence supports the conclusion that *Lanning* Plaintiffs are the first and only purchasers of card-acceptance services, and Square merely facilitated *Lanning* Plaintiffs' purchases of those services from Visa and Mastercard.  Accordingly, this factor weighs against granting a stay.

      The Court finds that *Lanning* Plaintiffs have, however, shown that irreparable injury could result from the denial of a stay.  If *Lanning* Plaintiffs are successful in their appeal and the Second Circuit concludes that they are not members of the Settlement Class, reversing the distribution of funds to *Lanning* Plaintiffs or other Sellers could cause severe disruptions to the claims administration process and the settlement fund may accordingly be reduced by some amount.  Although Class Counsel states that "no party has suggested that claimants will be required to pay back funds" in the event that the Second Circuit rules in favor of *Lanning* Plaintiffs, (Class Opp'n 3), the *pro rata* distributions to rightful claimants would still be reduced by any payments made to Sellers.  In the event that claimants are ordered to return such

---

[5] The Court notes, however, that it did not reach this conclusion to resolve Defendants' motion to enforce the Settlement Agreement.

9

erroneously distributed funds, the likelihood is high that not all such funds could be clawed back from parties deemed to be outside the Settlement Class.  In either case, the settlement fund would be erroneously reduced by some indeterminate amount, and this reduction could prove to be irreparable.  The Court concludes, however, that this risk of irreparable injury can be mitigated by placing funds owed to the Sellers in a trust account, as suggested by Class Counsel, (Class Opp'n 4), and a stay is therefore not required by this factor alone.[6]  If the Second Circuit determines that *Lanning* Plaintiffs are part of the Class, then they will suffer no injury because funds have been reserved for their benefit; if the Second Circuit determines they are not class members, then those funds can be redistributed to proper claimants.

In addition, the Court finds that the third factor — injury to other parties — weighs against granting the stay.  Class Counsel is correct that a stay is likely to cause additional delay to the claims administration process.  Class Plaintiffs, who represent nearly all merchants in the country, reached an initial settlement with Defendants in 2013, and the Court approved a subsequent settlement in 2019.  However, no class member has received any distribution from the settlement fund, due in part to a lengthy appeals process involving the 2019 settlement.  Given that the Second Circuit has denied *Lanning* Plaintiffs' request for an expedited appeal, it is conceivable that a stay pending the appeal would force class members to wait multiple additional years to receive any recovery in this decades-long litigation.

Finally, the Court agrees with Class Counsel that the public interest is advanced by denying a stay.  This litigation has been ongoing for nearly two decades, and no merchants have received any payments from the settlement.  The public has a legitimate interest in "an efficient

---

[6] In addition, the Court notes that its approval of Class Counsel's request for a six-month extension of the claims-filing deadline operates as a *de facto* six-month stay of the claims administration process.

10

and timely claims administration process," especially where nearly every merchant in the country is a class member. (*See* Class Opp'n 5.) Further, in view of the Second Circuit's denial of an expedited schedule for *Lanning* Plaintiffs' appeal, what *Lanning* Plaintiffs seek is essentially "an indeterminate delay in the submission of claims . . . and payments of approved claims." (*Id.*) The public interest is not served by further delay, and to the extent that the public has an interest in accurate administration of the settlement, such concern is alleviated by securing funds owed to the Sellers in a trust pending resolution of *Lanning* Plaintiffs' appeal.

Accordingly, the Court finds that only one of the four factors weighs in favor of granting a stay. To the extent *Lanning* Plaintiffs may be injured in the absence of a stay, this risk is mitigated by reserving funds in trust for the *Lanning* Plaintiffs. On balance, the Court concludes that *Lanning* Plaintiffs' low likelihood of success on the merits, the injury to class members caused by a potentially multi-year delay in the claims administration process, and the public interest in finality of this prolonged litigation weigh against granting a stay.

### III. Conclusion

For the foregoing reasons, the Court finds that a stay is unwarranted and denies *Lanning* Plaintiffs' motion. Class Counsel is directed to establish and fund a trust account with settlement funds owed to merchants who used the services of payment facilitators such as Square and Intuit, pending the Second Circuit's resolution of the appeal.

Dated: August 8, 2024
      Brooklyn, New York

SO ORDERED:

        /s MKB
MARGO K. BRODIE
United States District Judge