# EXHIBIT B

1   Daniel A. Sasse (State Bar No. 236234)
    CROWELL & MORING LLP
2   3 Park Plaza, 20th Floor
    Irvine, California 92614
3   Telephone: 949.263.8400
    Facsimile: 949.263.8414
4   DSasse@crowell.com

5   *Attorney for Defendants Optium Capital LLC,*
    *Neil Kornswiet, Tony Raleigh, David Sloan,*
6   *and Hugh Alexander*

7

8                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11  CASCADE SETTLEMENT SERVICES LLC,          **Case No.:**
    a Delaware limited liability company,

12                                            **DEFENDANTS OPTIUM CAPITAL**
                   Plaintiff,                 **LLC, NEIL KORNSWIET, TONY**
                                              **RALEIGH, DAVID SLOAN, AND**
13          v.                                **HUGH ALEXANDER'S NOTICE OF**
                                              **REMOVAL**
14  OPTIUM CAPITAL LLC, a Wyoming
    limited liability company; NEIL           **Complaint Filed:** August 13, 2024
15  KORNSWIET, an individual; TONY
    RALEIGH, an individual; DAVID SLOAN,      **Removed From:** Superior Court of the
16  an individual; HUGH ALEXANDER, an         State of California, City and County of
    individual; and DOES 1-50, inclusive,     Marin, Case No. CV0003663
17
                   Defendants.
18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF CASCADE SETTLEMENT SERVICES, LLC ("CASCADE") AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and the authority cited below, Defendants Optium Capital LLC ("Optium"), Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander (collectively, "Defendants") hereby remove this action, Case No. CV0003663 in the Superior Court of the State of California, City and County of Marin, to this Court. Removal is proper based on the original subject-matter jurisdiction of this Court under 28 U.S.C. § 1332 (diversity) and 28 U.S.C. § 1331 (federal question). This removal comports with 28 U.S.C. § 1446 (procedure for removal of civil actions).

In further support of this Notice of Removal, Defendants provide the following non-exhaustive summary of the grounds for removal:

## TIMELINESS OF REMOVAL

This notice of removal is timely under 28 U.S.C. § 1446(b) as it is being filed "within 30 days after receipt by the defendant, through service, or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based." The Complaint here was filed on August 13, 2024 and Defendants have not yet been served. Decl. of Daniel A. Sasse ¶ 5.

## VENUE

For purposes of removal, venue is proper in this Court because the U.S. District Court for the Northern District of California, San Francisco Division, is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## CONSENT

Pursuant to 28 U.S.C. § 1446(b)(2)(A), defendants "who have been properly joined and served must join in or consent to the removal of the action." Plaintiff has not served any of the Defendants named in the Complaint. Decl. of Daniel A. Sasse ¶ 5. Accordingly, the requirements of 28 U.S.C. § 1446(b)(2)(A) are met here. In any event, all Defendants have consented to removal. Decl. of Daniel A. Sasse ¶ 6.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

1

1    **THIS COURT HAS DIVERSITY JURISDICTION**

2    This action may be removed under 28 U.S.C. § 1441(a) because this Court has original

3    jurisdiction under 28 U.S.C. § 1332(a). District courts have original jurisdiction over all civil

4    actions (1) where the amount in controversy exceeds $75,000, exclusive of interest and costs, and

5    (2) between "citizens of different States." 28 U.S.C. § 1332(a).

6    Complete diversity currently exists in this case under section 1441(b)(2). Courts have

7    consistently held that a forum defendant does not actually exist until that defendant has been

8    properly joined and served. *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir.), amended on denial

9    of reh'g, 250 F.3d 997 (6th Cir. 2001) ("the inclusion of an unserved resident defendant in [an]

10   action does not defeat removal" based on diversity jurisdiction."); *Encompass Ins. Co. v. Stone*

11   *Mansion Rest. Inc.*, 902 F.3d 147, 154 (3d. Cir. 2018) (upholding removal and noting that while it

12   requires "pre-service machinations to remove a case that [] otherwise could not [be

13   removed]…[T]he plain meaning of the statute" and the absence of "an extraordinary showing of

14   contrary legislative intent" require removal); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699,

15   707 (2d Cir. 2019) (holding removal "is neither absurd nor fundamentally unfair." "Put simply,

16   the result here—that a home-state defendant may in limited circumstances remove actions filed in

17   state court on the basis of diversity of citizenship—is authorized by the text of Section

18   1441(b)(2)[.]"); *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020)

19   (holding the court does not have "any doubt about the propriety of removal because . . . the text

20   [section 1441(b)(2)] is unambiguous."); *Kornfeind v. Kia Am., Inc.*, No. 8:23-cv-01796-

21   JVS(KESx), 2023 WL 8456111, at *2 (C.D. Cal. Dec. 6, 2023) ("The plain language of the statute

22   makes clear that only if a forum defendant has not been 'properly joined and served' may an action

23   not be removed."). "[T]he Northern District of California has consistently held a defendant may

24   remove an action prior to receiving proper service, even when the defendant resides in the state in

25   which the plaintiff filed the state claim." *Humana Inc. v. Handa Pharms., LLC*, No. 23-cv-01550-

26   DMR, 2023 WL 5227191, at *3 (N.D. Cal. Aug. 15, 2023) (quotations omitted); *see also Fobb v.*

27   *Uber Techs., Inc.*, No. 21-cv-07778-HSG, 2022 WL 620336, at *2 (N.D. Cal. Mar. 3, 2022)

28   (recognizing "nearly unanimous[] support" in the Northern District of California); *Monfort v.*

CROWELL
& MORING LLP
ATTORNEYS AT LAW

*Adomani, Inc.*, No. 18-CV-05211-LHK, 2019 WL 131842, at *4 (N.D. Cal. Jan. 8, 2019) ("plain language" of section 1441(b)(2) "permits an in-state defendant who has not been both joined and served to remove a case to federal court on the basis of diversity jurisdiction."). Because no forum-resident Defendant has been "properly joined and served" within the meaning of section 1441(b)(2), complete diversity exists between the parties.

If the complaint does not specify damages, a defendant may establish that it is "more likely than not" that the amount in controversy exceeds the jurisdictional requirement. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 1996); *see also Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010) (removal based on diversity was proper where declaration established "Plaintiff is seeking recovery from a pot that Defendant has shown could exceed" the amount in controversy requirement).

Although Defendants deny liability, if Plaintiff were to prevail on its claims, it is more likely than not that the amount in controversy would significantly exceed $75,000, not including interest and costs. The Complaint seeks damages and disgorgement of profits arising from the alleged breach and tortious interference of contract claims against Defendants. Compl., "Prayer for Relief," ¶¶ 4-5. At the core of its claims, Plaintiff alleges that this case arises out of agency contracts for clients entitled to class action settlement claims, including claims in *In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litig.*, Case No. 1:05-md-01720-MKB-VMS (E.D.N.Y.) (the "*Visa Antitrust Litigation*"). *Id.* ¶¶ 13, 14, 34. The court in E.D.N.Y. has already established a procedure to review these precise claims. Plaintiff admits that these disputes have been raised in that process. *Id.* ¶¶ 33, 40, 41, 46, 50. Without these claims, Plaintiff has no case.

Plaintiff allegedly entered into agency agreements with the Vail Corporation ("Vail"), Peet's Coffee and Tea, Inc. ("Peet's"), Sleepy's, LLC ("Sleepy's"), The Sleep Train, Inc. ("Sleep Train"), and Redcats USA, Inc. (now FullBeauty Brands, L.P.) ("FullBeauty Brands"), whereby these companies purportedly "appoint[ed] Cascade to act as their agent to file claims on their behalf in class action settlements, in exchange for a contingency fee upon recovery." *Id.* ¶¶ 13, 38, 48, 55, 56, 63. Plaintiff alleges that these agency agreements were entered into prior to its 2015 settlement with Optium, making these companies "then-existing Cascade Client[s]" per the terms

of the settlement agreement. *Id.* ¶¶ 25, 38, 48, 55, 56, 63. Plaintiff alleges that the settlement agreement requires Optium to "assume [these entities'] Cascade Agency Contracts whenever Optium purchased" these claims, and thereafter allow Cascade to assume the claims filing process for these claims. *Id.* ¶ 25.

In 2018, the *Visa Antitrust Litigation* settled for "approximately $5.5 billion." *Id.* ¶ 14. The Complaint alleges that the "financial compensation received by Cascade through its agency agreements depends on the value of claim recovery," which is determined by the Claims Administrator in the *Visa Antitrust Litigation*. *Id.* ¶¶ 31-32. Optium conducts its own analyses to determine the likely value of an entity's settlement claim when evaluating at what price to purchase the claim. *See* Decl. of Daniel A. Sasse ¶ 8. Optium purchased class action claims from Vail, Peet's, Sleepy's, Sleep Train, and FullBeauty Brands in the *Visa Antitrust Litigation*. *Id.* ¶ 9. Although the individual purchase price for each claim is confidential, the aggregate purchase price for these claims exceeds $5 million. *Id.* ¶ 10. Plaintiff has claimed, through its agreements with Vail, Peet's, Sleepy's, Sleep Train, and FullBeauty Brands, its total contingency fee would exceed 10% of the total settlement recovery for these claims. *Id.* ¶ 12. Based on the allegations in the Complaint and a contingency fee of 10-30% (the standard term and range of Spectrum's filing agreements) on a $5 million total recovery, it is more likely than not that the amount in controversy far exceeds the $75,000 threshold requirement.

## THIS COURT HAS FEDERAL QUESTION JURISDICTION

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Whether a case "arises under" federal law is be determined based on the contents of a "well-pleaded complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983).

A "longstanding . . . variety of federal 'arising under' jurisdiction" is when state-law claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The Supreme Court has recognized this category of federal question jurisdiction "for nearly 100 years," acknowledging that such cases "indicat[e] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 312-313. In

determining whether claims arise under federal law, courts consider whether a federal issue is: (1) "necessarily raised," (2) "actually disputed," (3) "substantial," and (4) "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable*, 545 U.S. at 314.

### A.  Plaintiff's Claims Necessarily Raise Substantial Issues Implicating Federal Antitrust Law.

A federal issue is "necessarily raised" and is "actually disputed" where "'the vindication of [Plaintiff's] right[s] under state law necessarily turn[s] on some construction of federal law.'" *Hornish v. King Cnty.*, 899 F.3d 680, 689-690 (9th Cir. 2018); *see also Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d. Cir. 2021) ("federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case.").

As the Complaint makes clear, federal issues are "actually disputed" because Plaintiff's state law claims stem from settlement claims in the *Visa Antitrust Litigation*.  *Gunn*, 568 U.S. at 259 (federal issue is "actually disputed" because "on the merits, it is the central point of dispute.") And these federal issues are necessarily implicated because the validity of Plaintiff's state law claims depends on the resolution of the class action settlement claim disputes within the ongoing *Visa Antitrust Litigation*.  *See*, *e.g.*, *Hornish*, 899 F.3d at 689-690 (state law claims implicate federal law because resolution of dispute turns on interpretation of federal issue); *Wapato Heritage LLC v. Evans*, 430 Fed App'x 557, 559 (9th Cir. 2011) (affirming finding of federal question jurisdiction for breach of contract and tortious interference claims "because federal law sets conditions for the Settlement Agreement's validity and effectiveness.").  Plaintiff's success on its state law claims depend on whether or not Vail, Peet's, Sleepy's, Sleep Train, and FullBeauty Brands have sufficiently shown they are entitled to recover settlement funds under the federal antitrust class action.

A claimant in the *Visa Antitrust Litigation* must register and submit its claims with the appointed Claims Administrator, who ultimately determines the validity and value of the claimant's settlement claim.  Compl. ¶¶ 16, 32.  To illustrate, once Vail submits a claim for recovery, the Claims Administrator then evaluates whether Vail has a legitimate claim, and is thus a class

1  member in the underlying antitrust litigation. If the Claims Administrator determines that Vail does

2  not have a valid claim in the *Visa Antitrust Litigation*, then Plaintiff's alleged contractual right to

3  process Vail's settlement claims does not arise; Vail would have no claim to recovery funds, and

4  Plaintiff in turn would not collect a contingency fee for Vail's class action claim. In other words:

5  if Plaintiff's claim in the federal antitrust litigation fails, then its state law contract claims against

6  Defendants likewise cannot stand. Because the validity of Plaintiff's claims in the *Visa Antitrust*

7  *Litigation* form the basis of its state law claims, the state law claims at issue necessarily implicate

8  federal issues.

9      **B.**    **Plaintiff's Claims Can and Should Be Resolved in Federal Court to Preserve**

10      **the Federal Court's Authority and Ability to Effectuate Judgments.**

11      Removal for federal question jurisdiction is proper where the federal issues are "importan[t]

12  . . . to the federal system as a whole." *Hornish*, 899 F.3d at 690. The Government has a strong

13  interest in "the availability of a federal forum to vindicate . . . an important issue of federal law that

14  sensibly belong[s] in a federal court." *Id.* (quotations omitted); *see also Grable*, 545 U.S. at 312.

15      Plaintiff's claims are best resolved in federal court, where these issues have already been

16  litigated for nearly two decades. As alleged in the Complaint, the *Visa Antitrust Litigation* has a

17  long and complex procedural history—which includes an initial settlement in 2012, later vacated

18  on appeal, and eventually followed by a second settlement that was finally approved in 2018.

19  Compl. ¶ 14. In addition, "[b]ecause of the size and complexity of the class and claims process,

20  Plaintiff expects the claims filing and approval process to continue into 2025, with payments to

21  class members no sooner than 2025, if not later." *Id.* Given the obvious complexities in evaluating

22  claim disputes, the government has a strong interest in leaning on the "experience, solicitude, and

23  hope of uniformity that [the] federal forum offers" in resolving Plaintiff's claims. *Grable*, 545 U.S.

24  at 312. In fact, the *Visa Antitrust Litigation* already sets forth procedures "to resolve any disputes

25  or matters arising out of or relating to the Plan of Administration and Distribution" of the settlement

26  funds, including the claims process. Order Appointing Special Master at 1, *Visa Antitrust*

27  *Litigation*, ECF No. 8883. As a result, not only is the federal court "capable" of evaluating these

28  issues, but is the forum best suited to resolving Plaintiff's claims. The Government has a strong

interest in removal in order to reinforce the federal court's authority to decide substantial issues of federal law and to avoiding unnecessary litigation. Because Plaintiff's state law claims implicate significant federal issues, removal based on federal "arising under" jurisdiction is appropriate.

### COPIES OF STATE-COURT DOCUMENTS AND STATE-COURT NOTICE

Because none of the Defendants have been served, it is not possible for Defendants to include with its Notice of Removal "a copy of all process, pleadings, and orders served upon such . . . defendants in such [state court] action." 28 U.S.C. § 1446(a). However, Defendants have obtained a copy of the unserved state-court Complaint and a copy of the state-court docket sheet as well as any filings thereof, which are attached as Exhibit A to the accompanying Declaration of Daniel A. Sasse. In accordance with 28 U.S.C. § 1446(d), Defendants are concurrently filing a Notice of Filing of Notice of Removal with exhibits, which includes a copy of this Notice of Removal and accompanying exhibits, with the Clerk of the Superior Court of the State of California, City and County of Marin, and providing written notice to Plaintiff. *See* Exhibit B.

Dated: August 19, 2024

Respectfully submitted,

CROWELL & MORING LLP

*/s/ Daniel A. Sasse*
Daniel A. Sasse (State Bar No. 236234)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414
DSasse@crowell.com

*Attorney for Defendants Optium Capital LLC, Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander*

## CERTIFICATE OF SERVICE

I, Daniel A. Sasse, the undersigned, hereby declare as follows:

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. I am employed by Crowell & Moring LLP, counsel of record for Defendants Optium Capital LLC, Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander (collectively, "Defendants") in the removed action captioned above. My business and mailing address is 3 Park Plaza, 20th Floor, Irvine, CA 92614.

On August 19, 2024, I served and caused to be served true and correct copies of the following document(s):

- Defendants' Notice of Removal
- Declaration of Daniel A. Sasse in Support of Defendants' Notice of Removal and accompanying exhibits

by sending them via electronic transmission and couriering physical copies to be delivered on August 20, 2024 to the following persons at the mail addresses below:

Kassra P. Nassiri (215405)
kass@njfirm.com
Russell Taylor (320375)
russ@njfirm.com
NASSIRI & JUNG LLPs
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, 2024, in Irvine, California.

Dated: August 19, 2024                    /s/ Daniel A. Sasse
                                          Daniel A. Sasse

CROWELL
& MORING LLP
ATTORNEYS AT LAW

8

DEFENDANTS' NOTICE OF REMOVAL

1    Daniel A. Sasse (State Bar No. 236234)
     CROWELL & MORING LLP
2    3 Park Plaza, 20th Floor
     Irvine, California 92614
3    Telephone: 949.263.8400
     Facsimile: 949.263.8414
4    DSasse@crowell.com

5    *Attorney for Defendants Optium Capital LLC,*
     *Neil Kornswiet, Tony Raleigh, David Sloan, and*
6    *Hugh Alexander*

7

8                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**

9

10

11   CASCADE SETTLEMENT SERVICES LLC,          **Case No.:**
     a Delaware limited liability company,

12                                             **DECLARATION OF DANIEL A. SASSE**
                  Plaintiffs,                  **IN SUPPORT OF DEFENDANTS**
                                               **OPTIUM CAPITAL LLC, NEIL**
13          v.                                 **KORNSWIET, TONY RALEIGH,**
                                               **DAVID SLOAN, AND HUGH**
14   OPTIUM CAPITAL LLC, a Wyoming             **ALEXANDER'S NOTICE OF**
     limited liability company; NEIL           **REMOVAL**
15   KORNSWIET, an individual; TONY
     RALEIGH, an individual; DAVID SLOAN,      **Removed from:** Superior Court of the State
16   an individual; HUGH ALEXANDER, an         of California, City and County of Marin,
     individual; and DOES 1-50, inclusive,     Case No. CV0003663
17
                  Defendants.
18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

I, Daniel A. Sasse, declare as follows:

1.      I am an active member in good standing of the bar of the State of California, and I am admitted in the U.S. District Court for the Northern District of California.  I am a partner in the law firm of Crowell & Moring LLP and counsel of record for Optium Capital LLC ("Optium"), Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander (collectively, "Defendants") in the above-captioned matter.  I have personal knowledge of the facts set forth herein and, if called upon, could and would competently testify thereto under oath.

2.      I submit this declaration in connection with Defendants' Notice of Removal, filed contemporaneously herewith.

3.      Attached as Exhibit A is a true and correct copy of all purported "process, pleadings and orders" that Defendants received on August 15, 2024, in connection with the Complaint filed in the Superior Court of the State of California, City and County of Marin, Case No. CV0003663 against Defendants on August 13, 2024.

4.      Attached as Exhibit B is a true and correct copy of the Notice of Filing of the Notice of Removal to be promptly filed with the Clerk of the Superior Court of the State of California, City and County of Marin, providing the Superior Court with a copy of Defendants' Notice of Removal.

5.      Defendants have not been served process, or been subject to an attempt at purported service of process.

6.      All Defendants have consented to file the Notice of Removal.

7.      Optium purchases class action claims from members of class action lawsuits, including class action claims in *In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litig.*, Case No. 1:05-md-01720-MKB-VMS (E.D.N.Y.) (the "*Visa Antitrust Litigation*").

8.      Optium analyzes the value of recovery funds that individuals and entities are likely to be entitled to in class action settlements in order to determine an appropriate purchase price for a specific class settlement claim.  Optium's business model is to purchase class action claims at an amount lower than the expected recovery fund, in order for the company to collect a higher return from the actual settlement recovery.

9.      Optium purchased class action claims from the Vail Corporation ("Vail"), Peet's Coffee and Tea, Inc. ("Peet's"), Sleepy's, LLC ("Sleepy's"), The Sleep Train, Inc. ("Sleep Train"), and Redcats USA, Inc. (now FullBeauty Brands, L.P.) ("FullBeauty Brands") in the *Visa Antitrust Litigation*.

10.      Optium's purchase agreements with its clients are confidential.  However, the aggregated purchase price for the Vail, Peet's, Sleepy's Sleep Train, and FullBeauty Brands class action claims exceeds $5 million.

11.      Third-party claims processors, including Plaintiff Cascade Settlement Services, LLC ("Cascade") provide filing services to individuals and entities with settlement claims in class action lawsuits in exchange for a contingency fee from the recovery funds.  These contingency fees vary across claims processors, with some as low as 10% and some as high as 30% of the total recovery.

12.      Plaintiff has claimed that its agreements with Vail, Peet's, Sleepy's, Sleep Train, and FullBeauty would exceed 10% of the total settlement recovery for these claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, in Irvine, California.


_/s/ Daniel A. Sasse_____
Daniel A. Sasse

CROWELL
& MORING LLP
ATTORNEYS AT LAW

2

DECLARATION OF DANIEL A. SASSE IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

# EXHIBIT A

# MARIN COUNTY SUPERIOR COURT

## COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming... Marin

| Case | Filings | Parties | Documents | Events | Case Transfer |
|------|---------|---------|-----------|--------|---------------|

## Summary

### ∨ Parties

| Type | Name | Represented By |
|------|------|----------------|
| **Complaint - Contract: Breach Cont/Warranty (06) filed on 08/13/2024** | | |
| Plaintiff | CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company | Nassiri, Kassra P. |
| Defendant | OPTIUM CAPITAL LLC, a Wyoming limited liability company | |
| Defendant | KORNSWIET, NEIL | |
| Defendant | RALEIGH, TONY | |
| Defendant | SLOAN, DAVID | |
| Defendant | ALEXANDER, HUGH | |

**Next Event**

| | |
| --- | --- |
| **Next Event** | |
| 12/13/2024 9:00 AM Case Management Conference in Courtroom A | |

## ⌄ Events

| Date/Time | Type | Official | Location |
| --- | --- | --- | --- |
| 12/13/2024 09:00 AM | Case Management Conference | Freccero | Courtroom A |

Copyright © Journal Technologies, USA. All rights reserved.



MARIN COUNTY SUPERIOR COURT

COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyomi

Marin

Case   Filings   Parties   Documents   Events   Case Transfer

## Filings

### ⌄ Case

| Filing Date | Case Caption | Disposition |
|---|---|---|
| 08/13/2024 | CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming limited liability company et al | |

### ⌄ Filings

| Filing | Disposition |
|---|---|
| Complaint - Contract: Breach Cont/Warranty (06) filed on 08/13/2024 | |
| Plaintiff CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company | |
| Defendant OPTIUM CAPITAL LLC, a Wyoming limited liability company | |
| Defendant KORNSWIET, NEIL | |
| Defendant RALEIGH, TONY | |

| Filing | Disposition |
| --- | --- |

Defendant SLOAN, DAVID

Defendant ALEXANDER, HUGH

Copyright © Journal Technologies, USA. All rights reserved.

# MARIN COUNTY SUPERIOR COURT

## COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming... Marin

| Case | Filings | Parties | Documents | Events | Case Transfer |

## Parties

### Parties

| Type | Name | Represented By |
|------|------|----------------|
| Complaint - Contract: Breach Cont/Warranty (06) filed on 08/13/2024 | | |
| Plaintiff | CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company | Nassiri, Kassra P. |
| Defendant | OPTIUM CAPITAL LLC, a Wyoming limited liability company | |
| Defendant | KORNSWIET, NEIL | |
| Defendant | RALEIGH, TONY | |
| Defendant | SLOAN, DAVID | |
| Defendant | ALEXANDER, HUGH | |

Copyright © Journal Technologies, USA. All rights reserved.

# MARIN COUNTY SUPERIOR COURT

## COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyomir
Marin

| Case | Filings | Parties | Documents | Events | Case Transfer |

## Documents

### Documents

| Filed | Description | Filed By |
|---|---|---|
| CV0003663 : CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming limited liability company et al | | |
| 08/13/2024 | Complaint **EFILED** | Plaintiff - CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company |
| 08/13/2024 | Summons **EFILED** | Plaintiff - CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company |
| 08/13/2024 | Civil Case Cover Sheet **EFILED** | Plaintiff - CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company |
| 08/13/2024 | Notice - Case Management Conference | Clerk |
| 08/13/2024 | Notice - Judicial Assignment | Clerk |

Copyright © Journal Technologies, USA. All rights reserved.

# MARIN COUNTY SUPERIOR COURT

## COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming
Marin

| <u>Case</u> | <u>Filings</u> | <u>Parties</u> | <u>Documents</u> | Events | Case Transfer |
|---|---|---|---|---|---|

## Events

### ∨ Events

| Date/Time | Type | Result | Official | Location |
|---|---|---|---|---|
| CV0003663: CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming limited liability company et al | | | | |
| 12/13/2024 09:00 AM | Case Management Conference | | Freccero | Courtroom A |
| Complaint - Contract: Breach Cont/Warranty (06) filed on 08/13/2024 | | | | |

Copyright © Journal Technologies, USA. All rights reserved.

MARIN COUNTY SUPERIOR COURT

COUNTY OF MARIN - ePORTAL

**CV0003663**

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyomir
Marin

| Case | Filings | Parties | Documents | Events | Case Transfer |

### Case Transfer

Copyright © Journal Technologies, USA. All rights reserved.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

OPTIUM CAPITAL LLC, a Wyoming limited liability company; NEIL KORNSWIET, an individual; TONY RALEIGH, an individual; DAVID SLOAN, an individual; HUGH ALEXANDER, an individual; and DOES 1-50, inclusive Defendants.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company, Plaintiff,

**ELECTRONICALLY FILED**
Superior Court of California
County of Marin
08/13/2024
James M. Kim, Clerk of the Court
By: D. Harrison, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Marin County Superior Court

3501 Civic Center Drive, San Rafael, California 94903

**CASE NUMBER:**
*(Número del Caso):*
CV0003663

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kassra P. Nassiri (215405), kass@njfirm.com, NASSIRI & JUNG LLP, 1700 Montgomery Street, Suite 207, San Francisco, CA 94111

DATE:
*(Fecha)* 08/13/2024    James M. Kim    Clerk, by *(Secretario)* D. Harrison , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**ELECTRONICALLY FILED**
Superior Court of California
County of Marin
**08/13/2024**
James M. Kim, Clerk of the Court
By: D. Harrison, Deputy

Kassra P. Nassiri (215405)
(kass@njfirm.com)
Russell Taylor (320375)
russ@njfirm.com
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone:  (415) 762-3100
Facsimile:   (415) 534-3200

Attorneys for Plaintiff
CASCADE SETTLEMENT SERVICES LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE CITY AND COUNTY OF MARIN

| | |
|---|---|
| CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>OPTIUM CAPITAL LLC, a Wyoming limited liability company; NEIL KORNSWIET, an individual; TONY RALEIGH, an individual; DAVID SLOAN, an individual; HUGH ALEXANDER, an individual; and DOES 1-50, inclusive<br><br>Defendants. | Case No.  CV0003663<br><br>**COMPLAINT FOR:**<br><br>1.  **Breach of Contract**<br><br>2.  **Anticipatory Breach of Contract**<br><br>3.  **Declaratory Relief**<br><br>4.  **In the Alternative: Intentional Interference with Prospective Economic Relations**<br><br>5.  **Preliminary and Permanent Injunction**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cascade Settlement Services LLC ("Plaintiff" or "Cascade") complains and alleges as follows:

## I.    PARTIES

1.    Plaintiff Cascade Settlement Services LLC ("Cascade") is a Delaware limited liability company, with its principal places of business during the relevant period in the City of Mill Valley in the County of Marin. Cascade is in the business of providing financial services to members of class action settlements, specifically through claims filing and claims monetization in connection with these settlements. Cascade has acquired several interests and entities over the years, including Claimco LLC ("Claimco"), Spectrum Settlement Recovery, LLC ("Spectrum"), and Cascade continues to operate as Claimco or Spectrum. For purposes of this complaint, references to Cascade shall also refer to Spectrum, Claimco and other affiliates, subsidiaries and related entities, and vice versa.

2.    Defendant Optium Capital LLC ("Optium") is, upon information and belief, a Wyoming limited liability company with its principal place of business in Newport Beach, California. Optium purchases class action claims from class members.

3.    Defendant Neil Kornswiet ("Kornswiet") is an individual who, upon information and belief, resides in Orange County, California. At all relevant times, Kornswiet has served as Optium's Chief Executive Officer.

4.    Defendant Tony Raleigh is an individual who, upon information and belief, resides in Orange County, California. At all relevant times, Raleigh has served as Optium's Chief Investment Officer.

5.    Defendant David Sloan is an individual who, upon information and belief, resides in in the County of San Francisco. At all relevant times, Sloan has served as Optium's Chief Financial Officer.

6.    Defendant Hugh Alexander is, upon information and belief, an individual residing in Spain. At all relevant times, Alexander has served as Optium's General Counsel.

7.    The true names and capacities, whether individual, corporate, or otherwise of the Defendants named in this Complaint as Does 1 through 50, inclusive, are unknown to Plaintiff.

Plaintiff is informed and believes, and on that basis alleges, that each of said fictitiously named Defendants is liable to Plaintiff on the causes of action herein alleged and/or asserts some interest, legal or equitable, in the subject matter of this action, and therefore Plaintiff sues said Defendants by said fictitious names. Plaintiff will substitute named Defendants for fictitiously named Defendants as the true names and capacities of fictitiously named Defendants are determined.

8.    Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned in this Complaint the Defendants, and each of them, were the agents, servants, employees, and/or alter egos of each of the other Defendants, and in doing the things alleged in this Complaint were acting within the scope of their authority as such agent, servant, employee, and/or alter ego, and with the permission and consent of the other Defendants.

## II.    JURISDICTION AND VENUE

9.    The Court has jurisdiction over this action pursuant to Cal. Civ. Proc. Code § 410.10, which provides that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Jurisdiction is constitutionally warranted because each Defendant has availed itself of this Court's jurisdiction by conducting business, owning property, maintaining bank accounts, residing, and/or entering into contracts in California.

10.    Venue is proper in this County pursuant to Cal. Civ. Proc. Code §§ 395(a) and 395.5 because the contract at issue in this Complaint was entered into in Marin County; and because Defendants' breaches of the contract occurred in large part in Marin County.

11.    As a direct and proximate result of Defendant's conduct described herein, Plaintiff has been damaged in an amount that exceeds $25,000, said amount to be proven at trial.

## III.    FACTUAL ALLEGATIONS

12.    This case arises out of a 2015 settlement arising from Optium's misappropriation of Plaintiff's trade secrets, unfair competition and interference with Plaintiff's contracts and other business interests. Rather than comply with the terms of the settlement, Optium has engaged in numerous surreptitious and fraudulent acts designed to conceal its breaches of the settlement agreement, to take control over the subject claims, and to avoid its financial obligations to Cascade.

Plaintiff was left with no choice but to file this Complaint to give effect to the terms of its settlement agreement with Optium.

13.     Among other things, Plaintiff Cascade provides filing services to individuals and entities entitled to recover funds from class action lawsuit settlements. Clients typically appoint Cascade to act as their agent to file claims on their behalf in class action settlements, in exchange for a contingent fee upon recovery. Cascade also purchases class action claims from class members in pending class action litigation that may or may not result in a settlement.

14.     One such class action litigation is the 2005 case *In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No. 1:05-md-01720-JG-JO; E.D.N.Y.) (the "Visa Antitrust Litigation"). Plaintiff—including the companies and businesses it has acquired over the years, such as Claimco LLC and Spectrum Settlement Recovery, LLC—has been engaged in analyzing and developing proprietary information in the Visa Antitrust Litigation since at least 2007, and hundreds of class members have hired Plaintiff to serve as their agent in that litigation ("Cascade Agency Contracts"). The case initially settled in 2012 but was vacated on appeal to the Second Circuit. The case settled again in 2018 for approximately $5.5 billion and, after a subsequent appeal, became final in 2023. The process for submitting claims began in December 2023 and is underway. Because of the size and complexity of the class and claims process, Plaintiff expects the claims filing and approval process to continue into 2025, with payments to class members no sooner than 2025, if not later.

15.     The class action claim fulfillment process is quite technical and often spans years. It begins long before the claims are filed and can continue for years after filing. To prepare for the eventual claims filing in connection with the Visa Antitrust Litigation, Cascade has over the years and at great expense continually gathered data and engaged economists to analyze and model the claims recovery for its clients' claims and claims Cascade has purchased, and to evaluate and scrutinize the claims administrator's data and calculations. Cascade's team has also engaged lawyers to conduct legal analyses of the settlement agreement. Expertise in these steps is needed to recover the full value of the claims.

16.     As is usual in class action settlements, a claims administrator is retained to provide

notice to class members, manage class member data and prepare preliminary claim values, provide and manage interactions with class members in the filing of claims, determine claim values for each class member, and resolve class member disputes. The claims administrator in the Visa Antitrust Litigation is Epiq Systems, Inc. ("Claims Administrator").

17.     In connection with its work on the Visa Antitrust Litigation and dozens of other class actions, Cascade has devoted substantial time and money to develop a deep portfolio of proprietary information ("Cascade Proprietary Information"). Cascade Proprietary Information includes the identities and other details for all of Cascade's clients over the years, such as which class action settlements they have participated in and how much they recovered in those class actions. It also includes economic models, legal analyses, a sales prospect list of entities for all class actions, relevant contact information within those entities, and notes from all conversations with those entities going back to 2002 concerning organizational hierarchies and approval processes, offers, claims, and data gathering efforts.

**A.     Optium's Misappropriation of Cascade Proprietary Information and Interference with Cascade Contracts, and the 2015 Settlement**

18.     Optium was founded in 2014 by Neil Kornswiet, its current CEO. Optium is in the business of purchasing class action claims from class members and has been purchasing class members claims in the Visa Antitrust Litigation since its founding. Because Cascade also purchases class member settlement claims, Optium competes directly with Cascade.

19.     Immediately prior to founding Optium, from approximately September 2013 through February 2014, Kornswiet was the CEO of Cascade. After being employed in that position for a mere five months, having added little value to Cascade, Kornswiet requested the immediate grant of 30% of Cascade's equity, in addition to salary and bonus compensation. When Cascade refused his demand, Kornswiet left Cascade on bad terms to start Optium. Within months, he also arranged the departure of two of Cascade's most knowledgeable employees—CFO David Sloan and Business Development Officer, Tony Raleigh, who each left Cascade for Optium in 2014. Eventually, Hugh Alexander, in-house counsel for Cascade for many years including 2015, would also join Optium. Alexander currently serves as Optium's general counsel.

20.     While at Cascade, Kornswiet, Sloan, Raleigh and Alexander had broad access to Cascade Proprietary Information. This included lists of all of Cascade's clients, many of whom had engaged Cascade as their agent to file claims in the Visa Antitrust Litigation ("Cascade Clients").

21.     Kornswiet, Sloan and Raleigh's departure to form Optium raised serious concerns over the potential misappropriation of Cascade Proprietary Information. It was widely understood at Cascade that Defendant Raleigh kept much of Cascade's Proprietary Information—including a comprehensive list of Cascade Clients and details about their contracts with Cascade—on a portable USB drive that he would regularly take home with him. When Raleigh joined Optium, he acknowledged that he had possession of the USB drive but claimed to have destroyed it. In ensuing discussions between the parties, Raleigh and Optium continued to deny having possession of any Cascade Proprietary Information. Cascade was forced to consider taking legal action against Raleigh and Optium to prevent them from undercutting the foundation of Cascade's business by using the Cascade Proprietary Information.

22.     The parties engaged in extensive pre-litigation settlement discussions. Cascade's primary concern was that Optium would use Cascade Proprietary Information to interfere with Cascade's agency contracts by, among other things, inducing Cascade Clients to terminate their agency agreements with Cascade, and by purchasing class action claims from Cascade Clients. Kornswiet, Sloan and Raleigh each had extensive knowledge of Cascade Proprietary Information, including which merchants had entered into Cascade Agency Contracts and on what terms. Cascade also had concerns that Optium was in possession of tangible copies of Cascade Proprietary Information, including details on the contacts and decision makers at Cascade Client companies and the specific terms of their engagements with Cascade.

23.     After weeks of negotiations (Kornswiet was the primary party negotiating for both Optium and Raleigh), the parties agreed to compromise and began working on written settlement agreements. The parties exchanged several redlines of the draft agreements, including redlines to what would become Section 2 of the settlement agreement with Optium. In exchange for not pursuing legal and equitable relief, Cascade sought two important concessions from Optium—first, that Optium would not interfere with any Cascade Agency Contracts by encouraging Cascade

Clients to cancel those contracts. Second, that should Optium purchase any class member claims from a Cascade Client, Optium would assume Cascade's Agency Contract and allow Cascade to file such claims, deposit receipts into a deposit account, retain its contractual fees, and distribute the balance to Optium.

24. During the negotiations, Cascade's concerns about Defendants plans were so acute that it proposed the unusual step of attaching to the settlement a list of all Cascade Clients. Even though Kornswiet, Sloan and Raleigh likely remembered many, if not all, of Cascade's largest clients, Cascade believed that attaching its client list would serve as an acknowledgment by Optium of the specific Cascade Clients, would clearly define the scope of Cascade Clients existing at the time of the settlement, and would mitigate the risk that Optium would interfere with Cascade's Agency contracts, whether inadvertently or intentionally. Kornswiet rejected Cascade's offer to attach a list of Cascade Agency Contracts to the settlement.

25. On or around May 28, 2015, Cascade and Optium entered into a written settlement agreement (the "2015 Settlement"). The settlement required that Optium would assume Cascade Agency Contracts whenever Optium purchased claims from a then-existing Cascade Client. It also required that for each Cascade Client, Optium would allow Cascade to control the claims filing process and receive settlement proceeds from the Claims Administrator.

26. The 2015 Settlement defines "Company" as "Cascade Settlement Services, LLC and all of its parents, subsidiaries, predecessors and affiliated entities, including Claimco LLC." The 2015 Settlement also refers to Spectrum as "Company."

27. Section 2 of the 2015 Settlement, entitled "Cooperation and Non-interference," provides as follows:

**2. Cooperation and Non-interference**

Optium agrees that it will not use or disclose any Company Confidential Information in any future business activities.

Optium also agrees that existing Cascade / Spectrum agency contracts are important assets of the Company and Optium will not knowingly solicit, induce interfere with or otherwise cause a client with an existing Company agency filing contract ("Filing Contract") to cancel or in any way diminish the value of that contract to the Company. In order to comply with the

terms of this provision, Optium agrees that it and its employees, agents, and anyone acting on its behalf, in any substantive contract negotiations with a potential client, will inquire whether that client has an existing filing contract with another company and, if so, if the company is Cascade/Spectrum. Failure to inquire and obtain the information on any existing filing contract shall constitute a "knowing'" violation of this clause.

In the event Optium purchases a Visa claim from a Company client, Optium will purchase the entire claim and assume the Filing Contract with the Company on the existing terms. Optium will not seek to purchase a "net claim" leaving the original claimant responsible for a service fee for an asset they no longer own, and therefore, are unlikely to pay. Per the terms of that Filing Contract, the Company will notify the Claims Administrator of its role in servicing the claim, will perform the filing services in a manner similar to the filing services performed for other Company clients according to the Filing Contract, and the Claims Administrator will distribute the settlement recovery check to the Company. The Company will deposit the settlement check in a deposit control account ("DCA"), deduct its contractual service fees, and make a net settlement payment to Optium on the same time schedule and basis as net settlement payments are made to other Company clients. These are the standard terms and procedures of the Company's agency filing contract and Optium will not subvert these terms by directing the Claims Administrator to distribute the settlement check to Optium.

28.    The second paragraph of Section 2 addresses Cascade's concern that Optium would encourage Cascade Clients to cancel their contracts with Cascade. This "non-interference" paragraph prohibits Optium from inducing any Cascade Client to "cancel or diminish" a Cascade Agency Contract (the "Non-Interference Provisions"). The paragraph imposes an affirmative obligation on Optium—intended to "comply with the terms of ***this provision***"—to ask any potential Optium client whether it is also an existing Cascade client (emphasis added). The provisions of this paragraph apply to all *potential* Optium clients, whether they ever became actual Optium clients. Importantly, nothing in the 2015 Settlement indicates that compliance with the Non-Interference Provisions provides Optium with a safe harbor to avoid its obligations to Cascade.

29.    During the exchange of written drafts, Kornswiet sought to weaken Optium's obligation not to interfere with Cascade Agency Contracts and inserted the word "knowingly" in the first sentence of the Non-Interference Provisions. Cascade responded by adding an additional

requirement to the Non-Interference Provisions—that Optium ask each potential Optium client whether it had a contract with Cascade prior to buying any claims. Cascade's addition illustrates one way, but not the only way, that Optium might "knowingly" interfere with Cascade Agency Contracts.

30.     The third paragraph of Section 2 applies to all Cascade Clients who sold their claims to Optium. It stands apart from the Non-Interference Provisions. It provides, without qualification or limitations, that should Optium purchase a claim from a Cascade Client, Optium would have to pay Cascade its agency fees as set forth in Cascade's Agency Contract with that client (the "Cooperation Provisions"). The Cooperation Provisions also require Optium to notify the settlement Claims Administrator that Cascade will control and manage the claims, receive the settlement monies from the Claims Administrator, deduct its fee, and convey the balance of the settlement proceeds to Optium ("Cascade Claim Control Rights").

31.     The financial compensation received by Cascade through its agency agreements depends on the value of claim recovery. Cascade – through its management, employees, and agents – brings experience and expertise going back more than 20 years as a leader in claim servicing, filing, and prosecuting well-documented claims to increase the value of recoveries. Cascade obtained the Cascade Claim Control Rights, which give Cascade the irrevocable right to take all steps necessary to obtain any claim recovery, to ensure that the value of claims would not be diminished by less experienced and less capable parties like Optium.

32.     Inadequate claim filing by Optium—who has little or no expertise in claim filing— would prejudice the value of claims, risk claim filings being delayed or rejected, result in potential lost compensation, and potentially cause substantial and irreparable harm to Cascade. Because of the complexity of claim filing, and the need to prove the value of claims to the Claims Administrator and ultimately the Visa Antitrust Litigation court, it is effectively impossible to determine on an ex post facto basis the additional value that Cascade would have added to any claim had Optium not interfered with the Cascade Claim Control Rights.

**B.      Optium's Breach of the 2015 Settlement**

33.     The Visa Antitrust Litigation finally moved into settlement claims processing in 2023

COMPLAINT
CASE NO.

and all participating class members, or their agents or transferees, have registered with the settlement Claims Administrator. Where more than one entity or claimant has registered a particular claim, that claim goes into "conflict" status and all parties seeking to control the claim receive notice of the conflict. It was through this process that Cascade learned, in 2024, that it was in conflict with Optium on a number of claims, and, after some investigation, that Optium had breached the 2015 Settlement by claiming to have the authority to file the claims of certain Cascade Clients.

34.     Optium breached the 2015 Settlement in two ways. First, Optium interfered with Cascade Agency Contracts (breach of the Non-Interference Provisions) by encouraging Cascade clients to terminate their agreements with Cascade. Second, Optium has misconstrued the 2015 Settlement, claiming that it does not have to assume Cascade Agency Contracts for claims that Optium purchased from existing Cascade clients. Optium also claims that it (and not Cascade) has the right to control, file and collect on the claims at issue (breach and anticipatory breach of the Cooperation Provisions and Cascade Claim Control Rights).

35.     Optium's construction of the intent and function of the 2015 Agreement is not only legally incorrect, but also irrational. Optium has construed the Non-Interference Provisions as imposing a ministerial obligation whose only function is to provides Optium a safe harbor from which it can avoid its obligations under the Cooperation Provisions. Taken to its extreme, Optium's position is that even if it had affirmative and actual knowledge of the existence of a Cascade Agency Contract at the time it bought a claim from a Cascade Client, it would not have any obligation to assume the agency contract if the seller did not disclose its existence to Optium. For example, Cascade has referred several Cascade Clients to Optium who wished to sell their Visa claims. Under Optium's contractual interpretation, even when a Cascade Client is referred to Optium by Cascade, Optium could avoid assuming the Cascade Agency Contract if the Cascade Client failed to disclose the existence of the Cascade Agency Contract.

### C.     Claims at Issue

36.     What follows details the claims in dispute here. Every claim in dispute involves Cascade Agency Contracts that existed before the departure of Kornswiet, Sloan and Raleigh from Cascade. Thus, as of 2014, Kornswiet, Sloan and Raleigh (and later Alexander) had constructive, if

not actual, knowledge of the existence of the Cascade Agency Contracts in dispute here.

37.     Not one conflict between Cascade and Optium concerns class members who signed agreements with Cascade after Kornswiet's departure. This is curious, since Cascade continued to enter into agency contracts with more than eighty Visa Antitrust Litigation class members after Kornswiet's departure from Cascade, and yet, upon information and belief, Optium did not buy a single claim from any of those Cascade clients. It is improbable that this occurred randomly. Based on available evidence, it appears likely that Cascade's contact list was a primary source used by Optium when soliciting Visa class members. Cascade does not yet know how many Visa claims, if any, Optium purchased that it did not learn about from Cascade Proprietary Information.

### 1.     The Vail Corporation ("Vail")

38.     Spectrum entered into agency agreement with Vail on May 10, 2012. Accordingly, under the 2015 Settlement, Vail is a "Company client" and Optium is required to assume the Cascade Agency Contract with Vail.

39.     Cascade preregistered Vail's claims in the Visa Antitrust Litigation in 2014. Between 2012 and 2024, Cascade contacted Vail more than fifty times and gathered data to use to maximize Vail's claims.

40.     Once the claims process was underway, around April 2024, the Claims Administrator informed Cascade that several other parties—including Optium—had also registered Vail's claims, putting those claims in conflict. The conflict showed that Optium had purchased Vail's claims. Prior to receiving the conflict report, Cascade did not know that Optium had purchased Vail's claims.

41.     Immediately upon receiving notice of conflict from the Claims Administrator, Cascade contacted Vail to clear up the conflicts and forwarded to Vail a copy of the 2012 agency contract. On April 26, 2024, Vail emailed Cascade denying any knowledge of its contract with Cascade and stating that to the extent any such agreement existed, Vail was terminating it, effective immediately.

42.     Shortly thereafter, Optium told Cascade, for the first time, that Optium had purchased Vail's claims in 2020. When terminating its contract with Cascade, Vail never told Cascade that Vail no longer owned the claims, or that those claims had been sold to a third party (Optium). And

1    Vail never explained why it was terminating a contract to file a claim it no longer owned.

2        43.    Upon information and belief, Optium knowingly and intentionally interfered with

3    Cascade's contract by encouraging Vail to deny knowledge of the existence of its agency contract

4    with Cascade, in breach of the Non-Interference Provisions of the 2015 Settlement. Upon further

5    information and belief, Optium did so to avoid its financial obligations to Cascade under the

6    Cooperation Provisions of the 2015 Settlement.

7        44.    In subsequent conversations with Cascade, Optium claimed that because Vail did not

8    disclose the existence of the Cascade contract to Optium when Optium purchased Vail's claim in

9    2020, the Cooperation Provisions of the 2015 Settlement do not apply. (Notably, although Cascade

10   has requested it, Optium has not provided Cascade with any evidence of its claim that Vail did not

11   disclose the existence of the Cascade contract.)

12       45.    Optium conflates the Non-Interference Provisions with the Cooperation Provisions to

13   arrive at this untenable position. The Cooperation Provision is not conditional on a class member's

14   disclosure to Optium of its agreement with Cascade. And in any event, Optium had actual or

15   constructive knowledge of Cascade's agreement with Vail because Kornswiet and other Optium

16   principals had access to that agreement when they were Cascade employees.

17       46.    On July 2, 2024, Optium's counsel sent a letter to Class Counsel in the Visa Antitrust

18   Litigation, seeking to resolve the Vail conflict in Optium's favor. In that letter, Optium's counsel

19   referenced the April 26, 2024, email from Vail terminating Cascade's agency. By failing to

20   relinquish control of Vail's claim to Cascade, Optium is in breach of the Cascade Claim Control

21   Rights provisions.

22       47.    Optium has also unequivocally told Cascade that it will not pay Cascade its agency

23   fee. This is an anticipatory breach of the Cooperation Provisions.

24        **2.    Peet's Coffee and Tea, Inc. ("Peet's")**

25       48.    Spectrum entered into agency agreement with Peet's Coffee and Tea, Inc. on June 2,

26   2005, as amended on August 2, 2011. Accordingly, under the 2015 Settlement, Peet's is a

27   "Company client" and Optium is required to assume the Cascade Agency Contract with Peet's.

28       49.    Cascade preregistered Peet's claims in the Visa Antitrust Litigation in 2014. Between

-11-

COMPLAINT
CASE NO.

2011 and 2024, Cascade contacted Peet's more than seventy times about the Visa case (and at least thirty times regarding other settlements) and gathered data to use to maximize Peet's claims.

50.     Once the claims process was underway, around April 2024, the Claims Administrator informed Cascade that several other parties—including Crowell & Moring ("Crowell"), a law firm that also serves as a third-party claim filer—had also registered Peet's claims, putting those claims in conflict. Cascade would later learn that Optium purchased Peet's claims, and that Optium also engaged Crowell to represent it in its present dispute with Cascade concerning the 2015 Settlement.

51.     On May 2, 2024, Peet's sent Cascade a letter terminating Cascade's agency contract. When Cascade asked Peet's if Crowell advised Peet's on the language of the termination letter, Peet's declined to answer, citing attorney-client privilege. On information and belief, Optium encouraged Peet's to terminate its contract with Cascade and directed Crowell to advise Peet's on the specific language for the termination letter. This constitutes a breach by Optium of the Non-Interference Provisions.

52.     It was not until June 6, 2024, that Optium finally revealed to Cascade that it had purchased Peet's claims in January 2017. This surprised Cascade, since neither Optium nor Peet's had disclosed this fact previously. Optium further claims that when it bought Peet's claim, Peet's did not disclose the existence of the agency contract with Cascade. Optium has rejected Cascade's request for evidence that it asked if Peet's had an agency agreement with Cascade at the time Optium tendered its offer to buy Peet's claim. And in any event, Optium had actual or constructive knowledge of Cascade's agreement with Peet's because Kornswiet and other Optium principals had access to that agreement when they were Cascade employees.

53.     As with the Vail claim, Optium has conflated the Non-Interference Provisions and the Cooperation Provisions to argue that because Peet's did not disclose the existence of the Cascade contract to Optium when Optium purchased Peet's claim in 2017, the Cooperation Provisions of the 2015 Settlement do not apply.

54.     Optium has also unequivocally told Cascade that it will not pay Cascade its agency fee. This is an anticipatory breach of the Cooperation Provisions. Optium also refuses to relinquish control of Peet's claim and is thus in breach of the Cascade Claim Control Rights provisions.

### 3. Sleepy's and The Sleep Train

55. Claimco LLC entered into agency agreement on September 1, 2011, with Sleepy's, LLC ("Sleepy's"). Accordingly, under the 2015 Settlement, Sleepy's is a "Company client" and Optium is required to assume the Cascade Agency Contract with Sleepy's.

56. Claimco LLC entered into agency agreement on August 26, 2011, with The Sleep Train, Inc. ("The Sleep Train"). Accordingly, under the 2015 Settlement, The Sleep Train is a "Company client" and Optium is required to assume the Cascade Agency Contract with The Sleep Train.

57. Cascade preregistered the Sleepy's and The Sleep Train claims with the Claims Administrator in 2014. Between 2011 and 2024, Cascade contacted Sleepy's more than eighty times and The Sleep Train at least fifty times and gathered data to use to maximize their respective claims.

58. Upon information and belief, Mattress Firm Holding Corp. ("Mattress Firm") acquired The Sleep Train in 2014 and Sleepy's in 2016.

59. Optium purportedly purchased Sleepy's and The Sleep Train's claims from Mattress Firm on April 17, 2020.

60. On December 13, 2021, Mattress Firm sent a letter to Cascade purporting to terminate the Sleepy's and The Sleep Train agency agreements. On information and belief, Optium provoked Mattress Firm to terminate those contracts with Cascade, which constitutes a breach by Optium of the Non-Interference Provisions.

61. Optium further asserts that when it bought the Sleepy's and The Sleep Train claims, Mattress Firm did not disclose the existence of the agency contract with Cascade. Although Cascade has requested it, Optium has provided no evidence of this. And in any event, Optium had actual or constructive knowledge of Cascade's agreements with Sleepy's and The Sleep Train because Kornswiet and other Optium principals had access to that agreement when they were Cascade employees.

62. As with Vail and Peet's, Optium has argued that because Mattress Firm did not disclose its agency contracts with Cascade, Optium is not required to and will not pay Cascade its agency fee. This is an anticipatory breach of the Cooperation Provisions. Optium also refuses to

relinquish control of the Sleepy's and The Sleep Train claims and thus in breach of the Cascade Claim Control Rights provisions.

**4.     FullBeauty Brands, L.P. fka Redcats USA, Inc. ("FullBeauty Brands")**

63.     Spectrum entered into agency agreement with Redcats USA, Inc. ("Redcats") on October 3, 2005. Redcats changed its name several times and in 2015 became FullBeauty Brands, L.P. Accordingly, under the 2015 Settlement, FullBeauty Brands is a "Company client" and Optium is required to assume the Cascade Agency Contract – and the financial and control benefits to Cascade - with FullBeauty Brands fka Redcats USA, Inc.

64.     On information and belief, FullBeauty Brands filed for Chapter 11 bankruptcy in 2019. Within 24 hours of filing, FullBeauty Brands received court approval for a prepackaged bankruptcy restructuring plan ("FullBeauty Restructuring Plan") that allowed the company to exit bankruptcy and continue operating.

65.     The FullBeauty Restructuring Plan provides that all executory contracts were assumed. For bankruptcy purposes, the Cascade Agency Contract with FullBeauty Brands was an executory contract. Therefore, the Cascade Agency Contract with FullBeauty Brands survived the bankruptcy and remains a valid and enforceable contract.

66.     Optium purportedly purchased FullBeauty Brands claims. As of the filing of this complaint, Optium has refused to provide Cascade with any information about when and under what circumstances Optium purchased the claims.

67.     Upon information and belief, Optium failed to ask FullBeauty Brands whether it had an existing agency contract with Cascade. Optium thus breached the Non-Interference Provisions of the 2015 Settlement. And in any event, Optium had actual or constructive knowledge of Cascade's agreement with FullBeauty Brands because Kornswiet and other Optium principals had access to that agreement when they were Cascade employees.

68.     Optium has told Cascade that it has no obligation to assume the Cascade Agency Agreement Contract with FullBeauty Brands, and that it will not pay Cascade its agency fee. This is an anticipatory breach of the Cooperation Provisions. Optium also refuses to relinquish control of the FullBeauty Brands claims and thus in breach of the Cascade Claim Control Rights provisions.

**5.      Other Conflicts Not Yet Discovered**

69.      Cascade is currently not aware of any other Cascade Client claims purchased by Optium and will amend this complaint to add additional claims if and when they are discovered.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(Against Optium)**

70.      Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

71.      On or about May 28, 2015, Plaintiff entered into a written contract with Optium Capital LLC.

72.      Plaintiff, on its own and through its agents, has at all times performed the terms of the contract in the manner specified by the contract and has remained ready and able to continue such performance.

73.      Optium has failed and refused, and continues to refuse, to tender performance as required by the contract. Optium has encouraged Cascade clients to cancel their agency contracts in violation of the Non-Interference Provisions of the contract. Optium has also prevented Plaintiff from managing certain claims as required by the Cascade Claim Control Rights of the contract.

74.      Defendant's failure to perform its obligations under the contract has caused direct damage to Plaintiff in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**Anticipatory Breach of Contract**

**(Against Optium)**

75.      Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

76.      On or about May 28, 2015, Plaintiff entered into a written contract with Optium Capital LLC.

77.      Plaintiff, on its own and through its agents, has at all times performed the terms of the contract in the manner specified by the contract and has remained ready and able to continue

COMPLAINT
CASE NO.

1   such performance.

2       78.     Optium refuses to release its claims of control with the Claims Administrator, thus

3   keeping the subject claims in conflict status and preventing Cascade from using its expertise to

4   ensure full value is received, as is required by the Cascade Claim Control Rights in the 2015

5   Settlement.

6       79.     Optium has clearly and positively indicated that it will not pay Plaintiff's agency fees

7   as required by the Cooperation Provisions in Section 2 of the contract. Optium is thus in anticipatory

8   breach of the contract.

9       80.     Defendant's failure to perform its obligations under the contract will cause direct

10  damage to Plaintiff in an amount to be determined at trial.

11  ## **THIRD CAUSE OF ACTION**

12  ### **Declaratory Judgment**

13  ### **(Against Optium)**

14      81.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of

15  the preceding paragraphs as though fully set forth herein.

16      82.     An actual controversy has arisen between Plaintiff and Defendant Optium as to their

17  respective rights and duties under the Cooperation Provisions of the 2015 Settlement. Specifically,

18  Plaintiff asserts that the Cooperation Provisions apply in full to the Vail, Peet's, Sleepy's, The Sleep

19  Train, and FullBeauty Brands claims. Optium has clearly indicated that it has no obligations to

20  Plaintiff with respect to those claims because, according to Optium, those entities did not disclose

21  the existence of their contracts with Plaintiff to Optium when Optium purchased their claims.

22      83.     A present and actual controversy exists between Plaintiff and Defendant concerning

23  the legal rights and duties of the parties relating to the Cooperation Provisions of the 2015

24  Settlement.

25      84.     A judicial declaration regarding Cascade's and Optium's respective rights and

26  obligations is warranted and necessary because, as alleged above, Cascade has no adequate remedy

27  at law. Such a declaration is necessary and appropriate at this time because Defendant has refused to

28  relinquish to Plaintiff all control of the subject claims, as required by the Cascade Claim Control

-16-

COMPLAINT
CASE NO.

Rights provisions, and Defendant has further declared that it will not pay Plaintiff its agency fee on those claims, as required by the Cooperation Provisions.

## FOURTH CAUSE OF ACTION

### In the Alternative: Intentional Interference with Prospective Economic Relations

### (Against All Defendants)

85.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

86.     Cascade and each of Vail, Peet's, Sleepy's, The Sleep Train, and FullBeauty Brands were in an economic relationship that probably would have resulted in an economic benefit to Cascade.

87.     Defendants Optium, Kornswiet, Raleigh, Sloan and Alexander each knew of each of those economic relationships.

88.     By engaging in the conduct set forth herein, Optium, Kornswiet, Raleigh, Sloan and Alexander each intended to or knew that disruption of those relationships was certain or substantially certain to occur.

89.     As a result of Defendants' actions, each of those relationships was disrupted, resulting in harm to Cascade. Defendants' conduct was a substantial factor in causing Cascade's harm.

## FIFTH CAUSE OF ACTION

### Preliminary and Permanent Injunction

### (Against All Defendants)

90.     Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

91.     On or about May 28, 2015, Cascade and Optium entered into the 2015 Settlement.

92.     Under the terms of the 2015 Settlement, and in particular, the Cascade Claim Control Rights provisions, for each Cascade Agency Client from whom Optium purchases a claim, Cascade is required to notify the Claims Administrator of its role in servicing the claims, perform filing services, and receive the monies paid on those claims.

-17-

COMPLAINT
CASE NO.

93.     Also under the Cascade Claim Control Rights provisions, "Optium will not subvert these claims by directing the Claims Administrator to distribute settlement checks to Optium."

94.     Defendants have breached the 2015 Settlement by registering the Vail, Peet's, Sleepy's, The Sleep Train, and FullBeauty Brands claims with the Claims Administrator, and by continuing to assert a purported right to control those claims over Cascade's objections.

95.     By putting the claims into conflict, Defendants have prevented Cascade from servicing and eventual monetizing the claims, which will result in the full value of those assets and others not being obtained to the detriment of Cascade.

96.     Unless and until enjoined and restrained by this Court, Defendants' conduct will continue to cause Cascade great and irreparable harm in that it undermines its lawful and contractual right to manage and file claims, and to receive the proceeds of those claims from the Claims Administrator.

97.     While Cascade has suffered, and is continuing to suffer, growing monetary damages as the result of Defendants' conduct, and while reserving the right to seek those damages in this or another action, the Cascade Claim Control Rights can only be secured if Defendants cease their efforts to obstruct Plaintiff's control. Plaintiff thus has no adequate remedy at law.

98.     Unless Defendant is restrained and enjoined from continuing to assert with the Claims Administrator control over the subject claims, in violation of the 2015 Settlement, the injury to Cascade will be irreversible.

99.     Although the monetary damage to Cascade (to the extent it can be calculated) can be remedied through damages, no adequate remedy at law will make Plaintiff whole from the difficult-to-quantify diminution in value of the claims resulting from Optium's lack of experience in the claim servicing industry. Nor does any adequate remedy at law exist by which the rights and duties of the parties may be determined.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

1.  That the Court issue a declaration that the Vail, Peet's, Sleepy's, The Sleep Train, and FullBeauty Brands claims are subject to the Cascade Claim Control Rights and

Cooperation Provisions of the 2015 Settlement, and Defendant Optium must assume the Cascade Agency Agreement for each pursuant to the 2015 Settlement;

2. For a temporary, preliminary, and permanent injunction enjoining Defendants from continuing to assert control over the filing of the claims at issue;

3. For a judgement, in the alternative, that Defendants have intentionally interfered with the Cascade Agency Contracts at issue;

4. That Plaintiff be awarded general, special, and/or compensatory damages it has suffered in an amount to be proven at trial;

5. Disgorgement of profits and cost of modification for Defendants' breaches of contract;

6. That Plaintiff be awarded attorney's fees and costs of suit as permitted by law; and

7. Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all causes of action so triable.

DATED: August 13, 2024

Respectfully submitted,
NASSIRI & JUNG LLP

By:_____

Kassra Nassiri
Attorneys for Plaintiff
CASCADE SETTLEMENT SERVICES LLC

COMPLAINT
CASE NO.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kassra P. Nassiri (215405)  Russell Taylor (320375)  NASSIRI & JUNG LLP<br>1700 Montgomery Street, Suite 207, San Francisco, California 94111<br><br>TELEPHONE NO.: (415) 762-3100     FAX NO.: : (415) 534-3200<br>EMAIL ADDRESS: kass@njfirm.com  russ@njfirm.com<br>ATTORNEY FOR *(Name)*:  Plaintiff CASCADE SETTLEMENT SERVICES LLC | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Marin<br>**08/13/2024**<br>James M. Kim, Clerk of the Court<br>By: D. Harrison, Deputy |

SUPERIOR COURT OF CALIFORNIA  COUNTY OF  MARIN
 STREET ADDRESS: 3501 Civic Center Drive, San Rafael, California 94903
 MAILING ADDRESS: P.O. Bo  49  , San Rafael, California 94913
 CITY AND ZIP CODE: San Rafael 94903
 BRANCH NAME:

CASE NAME:
 Cascade Settlement Services LLC v. Optium Capital LLC, et al.

| CIVIL CASE COVER SHEET | | Co  e Ca e De g a o | | CASE NUMBER: CV0003663 |
|---|---|---|---|---|
| [x] U   ed<br>(Amount demanded e ceeds $35,000) | [ ] L   ed<br>(Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check o e bo  below for the case type that best describes this case:

| A o Tor | Co ra | Pro o a Co e C L ga o |
|---|---|---|
| [ ] Auto (22) | [x] Breach of contract warranty (06) | **Ca R e of Corre     00   0** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust Trade regulation (03) |
| **O er PI PD  D Per o a l r Pro er** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Da age ro gf Dea   Tor** | [ ] Insurance coverage (1 ) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Rea Pro er** | [ ] Environmental To ic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI PD WD (23) | condemnation (14) | above listed provisionally comple  case |
| **No -PI PD  D O er Tor** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort unfair business practice (07) | [ ] Other real property (26) | **E or e e  of dg e** |
| [ ] Civil rights (0 ) | **U a f Dea er** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **M ea eo  C Co a** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (3 ) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **a Re e** | **M ea eo  C Pe o** |
| [ ] Other non-PI PD WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **E o e** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [x] is not   comple  under rule 3.400 of the California Rules of Court. If the case is comple , mark the factors requiring e ceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] E tensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary  declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 5
5. This case [ ] is  [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 13, 2024

Kassra P. Nassiri
_____
(TYPE OR PRINT NAME)

▶  _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (e cept small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is comple  under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a comple  case, this cover sheet will be used for statistical purposes only.

Page 1 of

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400  3.403, 3.740<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22) Personal Injury Property Damage Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

| **Superior Court of the State of California** | **FOR COURT USE ONLY** |
|---|---|
| **County of Marin** <br> 3501 Civic Center Dr <br> PO Box 4988 <br> San Rafael, CA 94913-4988 | **ELECTRONICALLY FILED** <br> Superior Court of California <br> County of Marin <br> **08/13/2024** <br> James M. Kim, Clerk of the Court <br> D. Harrison, Deputy |
| CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming limited liability company et al | |
| **Notice – Judicial Assignment** | **Case Number:** CV0003663 |

**To All Parties and their Attorneys of Record:**

This case has been assigned to **Judge Stephen P. Freccero** for all purposes. All future hearings will be scheduled before this assigned Judge in **Courtroom A**.

**Notice**: This assignment for all purposes must be provided to all non-appearing parties by the moving party.

---

I am over the age of 18 years and not a party to the action above. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On August 13, 2024, I served this **Notice – Judicial Assignment** on the interested parties in said action to the addresses indicated below:

> **Kassra P. Nassiri**
> kass@njfirm.com

Electronically Served CCP1013(g)

I declare under penalty of perjury, that the foregoing is true and correct.

**James M. Kim**
**Clerk of the Court and Executive Officer**
Superior Court of the State of California
County of Marin

Executed at San Rafael, California
On: August 13, 2024

By: D. Harrison, Deputy Clerk

| Superior Court of the State of California<br>County of Marin<br><br>3501 Civic Center Dr<br>PO Box 4988<br>San Rafael, CA 94913-4988 | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Marin<br>**08/13/2024**<br>James M. Kim, Clerk of the Court<br>D. Harrison, Deputy |
|---|---|
| CASCADE SETTLEMENT SERVICES LLC, a Delaware limited liability company vs. OPTIUM CAPITAL LLC, a Wyoming limited liability company et al | |
| **Notice – Case Management Conference – GC68600** | **Case Number:** CV0003663 |

Pursuant to **Local Rule (LR) 2.3**, the **Plaintiff** must serve the following documents together with the complaint on all parties:

- Notice - Case Management Conference (a copy of this notice)
- Case Management Statement (Judicial Council Form CM-110)
- Notice of Settlement of Entire Case (Judicial Council Form CM-200)
- Alternative Dispute Resolution Informational Notice (CV006) together with the complaint on all parties.

1. The parties/counsel to this action shall comply with the filing and service deadlines in **LR 2.5** and **CRC3.110**.
2. Parties must appear for: **Case Management Conference** on **December 13, 2024** at **9:00 am** in **Courtroom A.**
3. The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the Case Management Conference** and should be prepared to discuss with the court their authority to participate in ADR.
4. Case Management Conference Statements must be filed with the court and served on all parties <u>at least 15 calendar days</u> before the Case Management Conference. **(Late filing may result in issuance of sanctions.)**

I am over the age of 18 years and not a party to the action above. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On August 13, 2024, I served this **Notice** on the interested parties in said action to the addresses indicated below:

**Kassra P. Nassiri**
kass@njfirm.com

Electronically Served CCP1013(g)

I declare under penalty of perjury, that the foregoing is true and correct.

Executed at San Rafael, California
On: **August 13, 2024**

**James M. Kim, Clerk of the Court and Executive Officer**
Superior Court of the State of California, County of Marin
By: D. Harrison, Deputy Clerk

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: | | |
| FIRM NAME: | | |
| STREET ADDRESS: | | |
| CITY: | STATE: ZIP CODE: | |
| TELEPHONE NO.: | FA NO.: | |
| EMAIL ADDRESS: | | |
| ATTORNEY FOR | | |

**SUPERIOR COURT OF CALIFORNIA  COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF PETITIONER:

DEFENDANT RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(C* ): ☐ **UNLIMITED CASE** ☐ **LIMITED CASE** | |

*(C* ): ☐ **UNLIMITED CASE** (Amount demanded e ceeds $35,000) ☐ **LIMITED CASE** (Amount demanded is $35,000 or less)

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date: Time: Dept.: Div.: Room:

Address of court *d r r ddr*

☐ No e of l e o A ear Te e o e ( ):

INSTRUCTIONS: A a a e o e e e ed a d e e f ed for a o e ro ded

1. **Par or are** *r*

   a. ☐ This statement is submitted by party

   b. ☐ This statement is submitted o by parties

2. **Co a a d ro -o a** *r d d r*

   a. The complaint was filed on *d*

   b. ☐ The cross-complaint, if any, was filed on *d*

3. **Ser e** *r d d r*

   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.

   b. ☐ The following parties named in the complaint or cross-complaint

      (1) ☐ have not been served *d*

      (2) ☐ have been served but have not appeared and have not been dismissed

      (3) ☐ have had a default entered against them

   c. ☐ The following additional parties may be added *r d d r d*

4. **De r o of a e**

   a. Type of case in ☐ complaint ☐ cross-complaint *D r d*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2024]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720 3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF PETITIONER:<br>DEFENDANT RESPONDENT: | CASE NUMBER: |
|---|---|

4. b. Provide a brief statement of the case, including any damages

☐

5. r o r o o r r a

The party or parties request ☐ a jury trial. ☐ a nonjury trial.

6. **Tr a da e**

a. ☐ The trial has been set for

b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint

c. Dates on which parties or attorneys will not be available for trial

7. **E    a ed e g  of r a**

The party or parties estimate that the trial will take

a. ☐ days

b. ☐ hours (short causes)

. **Tra re re e a o        r d r      r**

The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:

a. Attorney:

b. Firm:

c. Address:

d. Telephone number:

e. Email address:

f. Fa  number:

g. Party represented:

☐ Additional representation is described in Attachment  .

9. **Prefere  e**

☐ This case is entitled to preference

10. **A er a  e d   e re o  o  ADR**

a. **ADR  for a o   a  age** Please note that different ADR processes are available in different courts and communities  read the ADR information package provided by the court under rule 3.221 of the California Rules of Court for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b. **Referra  o  d  a ar  ra o  or    a o  ed a o** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not e ceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is e empt from judicial arbitration under rule 3. 11 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq.

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF PETITIONER:<br>DEFENDANT RESPONDENT: | CASE NUMBER: |
|---|---|

10. c. In the table below, indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in          *d  r d          d   r*

| | The party or parties completing this form **are**      g to participate in the following ADR processes | If the party or parties completing this form in the case   **a  e agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes           *r  '  DR* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for  (*d*  )<br>☐ Agreed to complete mediation by (*d*  )<br>☐ Mediation completed on (*d*   ) |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (*d*   )<br>☐ Agreed to complete settlement conference by (*d*   )<br>☐ Settlement conference completed on (*d*   ) |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for  (*d*   )<br>☐ Agreed to complete neutral evaluation by (*d*   )<br>☐ Neutral evaluation completed on (*d*   ) |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for  (*d*   )<br>☐ Agreed to complete judicial arbitration by (*d*   )<br>☐ Judicial arbitration completed on (*d*   ) |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for  (*d*   )<br>☐ Agreed to complete private arbitration by (*d*   )<br>☐ Private arbitration completed on (*d*   ) |
| (6) Other (       ): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for  (*d*  )<br>☐ Agreed to complete ADR session by (*d*   )<br>☐ ADR completed on  (*d*   ) |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF PETITIONER:<br>DEFENDANT RESPONDENT: | CASE NUMBER: |
|---|---|

**11. I ra e**

a. ☐ Insurance carrier, if any, for party filing this statement

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case

**12. r d o**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other

Status:

**13. Re a ed a e o o da o a d oord a o**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *r*

**14. B f r a o**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *r* *d r*

**15. O er o o**

☐ The party or parties e pect to file the following motions before trial *r* *d*

**16. D o er**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *d r* *d d* *r*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated

**CM-110**

| PLAINTIFF PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT RESPONDENT: | |

17. **Economic litigation**

    a. ☐  This is a limited civil case (i.e., the amount demanded is $35,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-9 will apply to this case.

    b. ☐  This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *r d r r d r r r d*

18. **Other issues**

    ☐  The party or parties request that the following additional matters be considered or determined at the case management conference

19. **Meet and confer**

    a. ☐  The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court

    b. ☐  After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following

20. Total number of pages attached   _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM- 00

| ATTORNEY OR PARTY WITHOUT ATTORNEY *N* *S* *r* *r* *d* *ddr* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:  FA NO. *O* : | |
| E-MAIL ADDRESS *O* : | |
| ATTORNEY FOR (*N* ): | |

**SUPERIOR COURT OF CALIFORNIA COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF PETITIONER:

DEFENDANT RESPONDENT:

| **NOTICE OF SETTLEMENT OF ENTIRE CASE** | CASE NUMBER: |
|---|---|
| | JUDGE: |
| | DEPT.: |

**NOTICE TO PLAINTIFF OR OTHER PARTY SEE ING RELIEF**
You must file a request for dismissal of the entire case within 45 days after the date of the settlement if the settlement is
 o d o a You must file a dismissal of the entire case within 45 days after the date specified in item 1b below if the settlement
is o d o a Unless you file a dismissal within the required time or have shown good cause before the time for dismissal has
e pired why the case should not be dismissed, the court will dismiss the entire case.

To e or a are a d a ar ra or or o er o r- o e ed ADR e ra o ed a e:

1. This entire case has been settled. The settlement is:
   a. ☐ **U o d o a** A request for dismissal will be filed within 45 days after the date of the settlement.
   Date of settlement:
   b. ☐ **Co d o a** The settlement agreement conditions dismissal of this matter on the satisfactory completion of
   specified terms that are not to be performed within 45 days of the date of the settlement. A request for dismissal will
   be filed no later than *d*

2. Date initial pleading filed:

3. Ne t scheduled hearing or conference:
   a. Purpose:
   b. ☐ (1) Date:
   (2) Time:
   (3) Department:

4. Trial date:
   a. ☐ No trial date set.
   b. ☐ (1) Date:
   (2) Time:
   (3) Department:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

_____
(SIGNATURE)

Page 1 of

**CM- 00**

| PLAINTIFF PETITIONER:<br><br>DEFENDANT RESPONDENT: | CASE NUMBER: |
|---|---|

## PROOF OF SERVICE BY FIRST-CLASS MAIL

### NOTICE OF SETTLEMENT OF ENTIRE CASE

*(NOTE: Y        r      No  e of Se  e  e  of E   re Ca  e      r      r          T    r          r  d*
*r          r      )*

1. I am at least 1   years old and  **o  a  ar  o      a  o**  I am a resident of or employed in the county where the mailing took place, and my residence or business address is

2. I served a copy of the **N        S            E   r  C** by enclosing it in a sealed envelope with postage fully prepaid and

   a. ☐   deposited the sealed envelope with the United States Postal Service.

   b. ☐   placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The **N        S            E   r  C** was mailed:

   a. on **d**

   b. from            **d**

4. The envelope was addressed and mailed as follows:

   a. Name of person served:            c. Name of person served:

     Street address:                   Street address:
     City:                            City:
     State and zip code:             State and zip code:

   b. Name of person served:            d. Name of person served:

     Street address:                   Street address:
     City:                            City:
     State and zip code:             State and zip code:

     ☐  Names and addresses of additional persons served are attached. **Y        r    OS**

5. Number of pages attached _____ .

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(TYPE OR PRINT NAME OF DECLARANT)

    ▶ _____
                   (SIGNATURE OF DECLARANT)

<div style="border:1px solid">

**MARIN COUNTY SUPERIOR COURT**
3501 Civic Center Drive
P.O. Box 4988
San Rafael, CA 94913-4988
(415) 444-7040

</div>



**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATIONAL NOTICE**
(California Rule of Court 3.221)

**The plaintiff <u>must</u> serve a copy of this notice with the complaint on all parties to this case.**

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial.  Using ADR may have a variety of benefits, depending on the type of ADR process used and the  circumstances of the particular case.

## ADVANTAGES OF ADR

### Save Time
A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

### Save Money
When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

### Increase Control Over the Process and the Outcome
In ADR, parties typically play a greater role in shaping both the process and its outcome.  In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial.  Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

### Preserve Relationships
ADR can be a less adversarial way to resolve a dispute.  For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

### Increase Satisfaction
In a trial, there is typically a winner and a loser.  The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome.  ADR can help the parties find win-win solutions and achieve their real goals.  This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

## DISADVANTAGES OF ADR

If the case is resolved using ADR, the parties forgo their right to a public trial and they do not receive a decision by a judge or jury. If the case is not resolved using ADR and it proceeds to trial, the overall costs of the case may increase.

## TYPES OF ADR

**Mediation**
In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Settlement Conferences**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**Arbitration**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Neutral Evaluation**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

## LOCAL ADR PROGRAMS

For a Directory of Mediators and Arbitrators or information about the Modest Means Mediation Program, contact the Marin County Bar Association (MCBA) by calling (415) 499-1314 or emailing *info@marinbar.org*. Additional information is also available on the MCBA website: *www.marinbar.org*.

## STIPULATION TO USE ADR

If all parties in the action agree to participate in ADR, a *Stipulation to Use Alternative Dispute Resolution Process (CV002)* may be filed with the court. This form is available at *www.marincourt.org* or in the Clerk's Office.

Please note, **you are required to complete and submit the *Notice of Settlement of Entire Case (Judicial Council Form CM-200)* within 10 days of the resolution of your case.**

Case 3:24-cv-05372 Document 1-34 Filed 08/19/24 Page 1 of 4

# EXHIBIT B

1   Daniel A. Sasse (State Bar No. 236234)
    CROWELL & MORING LLP
2   3 Park Plaza, 20th Floor
    Irvine, California 92614
3   Telephone: 949.263.8400
    Facsimile: 949.263.8414
4   DSasse@crowell.com

5   *Attorney for Defendants Optium Capital LLC,*
    *Neil Kornswiet, Tony Raleigh, David Sloan,*
6   *and Hugh Alexander*

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE CITY AND COUNTY OF MARIN**

10

11  CASCADE SETTLEMENT SERVICES LLC,        Case No. CV0003663
    a Delaware limited liability company,
12                                           **NOTICE OF FILING OF NOTICE OF**
                                             **REMOVAL**
13              Plaintiffs,

14          v.

15  OPTIUM CAPITAL LLC, a Wyoming
    limited liability company; NEIL
16  KORNSWIET, an individual; TONY
    RALEIGH, an individual; DAVID SLOAN,
17  an individual; HUGH ALEXANDER, an
    individual; and DOES 1-50, inclusive,
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

DEFENDANTS' NOTICE FILING OF NOTICE OF REMOVAL

Defendants Optium Capital LLC, Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander (collectively, "Defendants") hereby give notice that on August 19, 2024, a Notice of Removal of this action was filed in the United States District Court for the Northern District of California. A true and correct copy of the Notice of Removal, the accompanying Declaration of Daniel A. Sasse, and its exhibits are attached hereto as Exhibit 1.

Dated: August 19, 2024

Respectfully submitted,

CROWELL & MORING LLP

/s/ Daniel A. Sasse

Daniel A. Sasse (State Bar No. 236234)
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, California 92614
Telephone: 949.263.8400
Facsimile: 949.263.8414
DSasse@crowell.com

*Attorney for Defendants Optium Capital LLC, Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander*

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel A. Sasse, the undersigned, hereby declare as follows:

I am a resident of the State of California, over the age of eighteen years, and not a party to this action. I am employed by Crowell & Moring LLP, counsel of record for Defendants Optium Capital LLC, Neil Kornswiet, Tony Raleigh, David Sloan, and Hugh Alexander (collectively, "Defendants") in the removed action captioned above. My business and mailing address is 3 Park Plaza, 20th Floor, Irvine, CA 92614.

On August 19, 2024, I served and caused to be served true and correct copies of the following document(s):

- Notice of Filing of Notice of Removal

by sending them via electronic transmission and couriering physical copies to be delivered on August 20, 2024 to the following persons at the mail addresses below:

Kassra P. Nassiri (215405)
(kass@njfirm.com)
Russell Taylor (320375)
russ@njfirm.com
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of August, 2024, in Irvine, California.

Dated: August 19, 2024

_____
Daniel A. Sasse

CROWELL
& MORING LLP
ATTORNEYS AT LAW

2

DEFENDANTS' NOTICE OF FILING OF NOTICE OF REMOVAL

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CASCADE SETTLEMENT SERVICES LLC

**DEFENDANTS**

OPTIUM CAPITAL LLC; NEIL KORNSWIET; TONY RALEIGH; DAVID SLOAN; HUGH ALEXANDER

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kassra P. Nassiri/Russell Taylor
NASSIRI & JUNP LLP
1700 Montgomery Street, Suite 207, San Francisco, CA 94111 (415) 762-3100

Attorneys *(If Known)*

Daniel A. Sasse
CROWELL & MORING LLP
3 Park Plaza, 20th Floor, Irvine, CA 92614 (949) 263-400

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 | U.S. Government Plaintiff |
| ☐ 2 | U.S. Government Defendant |
| ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | ☒ 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | 950 Constitutionality of State Statutes |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer |
| ☐ 8 Multidistrict Litigation–Direct File | |

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1441 (removal of civil action), 28 U.S.C. § 1446 (procedure for removal of civil action)

Brief description of cause:
Antitrust

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $ 75,000.00 +

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII.  RELATED CASE(S), IF ANY *(See instructions):*

JUDGE Hon. Margo K. Brodie

DOCKET NUMBER 1:05-md-01720-MKB-JO (E.D.N.Y.)

## IX.  DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*

☒ SAN FRANCISCO/OAKLAND  ☐ SAN JOSE  ☐ EUREKA-MCKINLEYVILLE

DATE  08/19/2024

SIGNATURE OF ATTORNEY OF RECORD  *Dan A. Sasse*

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1)   <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2)   <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3)   <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4)   <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.   Origin.** Place an "X" in one of the six boxes.

(1)   <u>Original Proceedings</u>. Cases originating in the United States district courts.

(2)   <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3)   <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4)   <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5)   <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6)   <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8)   <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

<u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** <u>Example</u>: U.S. Civil Statute: 47 USC § 553. <u>Brief Description</u>: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

<u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

<u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.   Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.