# EXHIBIT D



**Daniel A. Sasse**
DSasse@crowell.com
(949) 798-1347  direct

Crowell & Moring LLP
3 Park Plaza
20th Floor
Irvine, CA 92614
+1.949.263.8400  main
+1.949.263.8414  fax

July 2, 2024

**VIA EMAIL**

Alexandra S. Bernay (xanb@rgrdlaw.com)
Robbins Geller Rudman & Dowd LLP
655 W Broadway, Ste 1900
San Diego, CA 92101-8498

Payment Card Interchange Fee Settlement (conflicts@paymentcardsettlement.com)
P.O. Box 2530
Portland, OR 97208-2530

Re:     *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
        No. 05-md-01720-MKB-VMS (E.D.N.Y.)

Dear Xan and Claims Administrator –

We write on behalf of Optium Capital, LLC ("Optium") with regard to certain claims in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* ("*Interchange* case") that have been registered by both Optium and Spectrum Settlement Recovery ("Spectrum") on behalf of **The Vail Corporation**, **Sleepy's and Sleep Train**, and **Aeropostale, Inc.** (collectively, "Merchants").  These claims are considered in "conflict" by the Administrator.[1]  However, Spectrum knowingly pursued each of these claims *without authority* after Spectrum's agency to act on behalf of these Merchants had been clearly extinguished.  Accordingly, only Optium's claims on behalf of these Merchants should be allowed to proceed.[2]

### A.   Termination of Spectrum filing contracts by The Vail Corporation, Sleepy's and Sleep Train

On May 2, 2024, Spectrum informed the Claims Administrator in writing that it was withdrawing the claims it filed on behalf of The Vail Corporation ("Vail").  *See* Exhibit A (email correspondence, "Subject:

---

[1]  A complete list of the Merchant's Tax Identification Numbers (TINs) and Conflict IDs appears at Appendix A.  As noted more fully in Section A, while Spectrum sent correspondence to Epiq withdrawing its claims for The Vail Corporation and Epiq may therefore no longer show these claims as conflicting, Spectrum's subsequent oral indication to Optium that it plans to revoke those withdrawals puts the Vail claims back in conflict for purposes of this correspondence.

[2]  Optium made repeated efforts to resolve these disputes with Spectrum directly and regrets that the parties have reached an apparent impasse notwithstanding Spectrum's acknowledged non-existent filing contracts with these Merchants.

**Crowell**

INTERCHANGE FEE WITHDRAWAL NOTICE MULTIPLE CLAIMS"). Spectrum's explicit withdrawal should have resolved the conflicting claim issue as to Vail in full. But mere days later on May 7, 2024, Spectrum indicated to Optium that it planned to revoke the withdrawals it previously agreed to in writing with the Claims Administrator and, in an about face, assert its non-existent right to pursue claims on Vail's behalf. To be clear, not only did Spectrum already withdraw its claims for Vail, but it has no authority to pursue them regardless.

As Vail's Deputy General Counsel indicated in an April 26, 2024, email to Spectrum:

> [W]e have searched our email systems and Spectrum has not communicated with me, nor or the litigation team, at all on this claim for the past several years. From our call, it also sounds that you have not had any communication from anyone at Vail Resorts for at least 5 years. As a result, it was extremely surprising to learn of Spectrum's involvement considering I have been overseeing this matter for many years. I hear from your competitors monthly, but have never heard from, nor or communicated with Spectrum, until last week.
>
> I have talked internally, and while we continue to maintain that no agreement exists, to the extent Spectrum is asserting a service agreement and letter of agency are in existence, The Vail Corporation, individually and on behalf of any subsidiaries, terminates any agreement(s) and revokes any letter(s) of agency, pursuant to paragraph 9 of the service agreement and the terms of the letter of agency. If you have entered any documents on our behalf, they can be withdrawn.

*See* Exhibit B (email correspondence, "RE: Payment Card Interchange Claim Resolution").

Vail's April 26, 2024, correspondence terminating any service agreement with Spectrum is unequivocal and leaves no doubt that Spectrum does not have an existing filing contract with Vail. It also begs the question of how Spectrum could file a claim for Vail without an existing filing contract, especially in light of the fact that the Claims Administrator is requiring updated confirmations from third-party filers. In fact, Spectrum itself acknowledged to Optium on May 1, 2024, that its service contracts with Vail had been terminated at Vail's request. *See* Exhibit C (Spectrum spreadsheet listing all Vail entities as "Client termination").

Similarly, on May 14, 2024 the General Counsel of Sleepy's and Sleep Train (both part of Mattress Firm) wrote: "There were agreements with Spectrum signed by Sleepy's and Sleep Train prior to our acquisition of those entities. However, we terminated those agreements a few years ago. Accordingly, Spectrum has no authority on behalf of those entities relating to any Visa/MC claims." *See* Exhibit D (email correspondence, "[EXTERNAL]:RE: [EXTERNAL] Re: Claim Purchase - 4/17/2020"). These terminations were communicated to Spectrum "a few years ago" yet Spectrum still filed claims on behalf of Sleepy's and Sleep Train notwithstanding. Like Vail, the history with Sleepy's and Sleep Train begs the question of how Spectrum could file claims for these Merchants without an existing filing contract.

**B.  Discharge of Spectrum's filing contract with Aeropostale, Inc. by the United States Bankruptcy Court**

Aeropostale's filing contract with Spectrum was discharged by the United States Bankruptcy Court for the Southern District of New York by order issued February 2, 2018. *See* Exhibit E (ARO Liquidation, Inc. (f/k/a Aeropostale, Inc.) Order Pursuant to 11 U.S.C. § 365(a) to Reject Spectrum Contract). Accordingly,

**Crowell**

Spectrum has not had a valid filing contract with Aeropostale for more than six years.  Notwithstanding, Spectrum knowingly registered a claim on behalf of Aeropostale and continues to assert a (non-existent) contractual right to do so.  *See also* Exhibit D (Spectrum spreadsheet listing Aeropostale as "BK terminated agreement").

**C.   Merchant's *Interchange* claim purchases by Optium**

Optium purchased and now owns claims in the *Interchange* matter for each of these Merchants. Attached at Exhibits F-H are proofs of each Merchant's claim purchase by Optium.

**D.   Conclusion**

The client terminations and Bankruptcy Court rejection of Spectrum's filing contracts with these Merchants, coupled with the knowingly unauthorized filing of claims by Spectrum after its agency to act on behalf of these Merchants had been extinguished, should be more than sufficient grounds to invalidate Spectrum's claims.

If, after full consideration of the aforementioned facts, the Administrator continues to consider these claims in conflict, Optium will have no choice but to refer this issue to the Special Master in accordance with Judge Brodie's orders for the resolution of disputes regarding third-party claim filers.

Sincerely,

Daniel A. Sasse

cc:    Kassra Nassiri, Nassiri & Jung LLP, counsel for Spectrum Settlement Recovery
       Tim Walker, Assistant General Counsel, The Vail Corporation
       Kindel Nuno, EVP Legal and General Counsel, Mattress Firm
       Neil Kornswiet, CEO, Optium Capital, LLC

**Crowell**

APPENDIX A

**The Vail Corporation**

| Entity | TIN | Conflict ID |
|---|---|---|
| Sierra-At-Tahoe LLC | 680305344 | 156915 |
| Vail Holdings, Inc. | 840601461 | 145290 |
| Arrabelle at Vail Square, LLC | 202754896 | 144948 |
| Grand Teton Lodge Company | 830161154 | 145046 |
| Heavenly Valley Limited Partnership | 880266125 | 145056 |
| Rockresorts International, LLC | 841606606 | 145033 |
| SSI Venture LLC | 841466271 | 145051 |
| Trimont Land Company | 941640750 | 145064 |
| VR US Holdings, Inc. | 461305875 | 145003 |

**Mattress Firm, Inc.**

| Entity | TIN | Conflict ID |
|---|---|---|
| Sleep Train Inc. | 680062942 | 145281 |
| Sleepy's Inc. | 208781144 | 145253 |
| Sleepy's Inc. | 943479284 | 145223 |
| Sleepy's Mattress Discounters | 900906406 | 145246 |

**Aeropostale, Inc.**

| Entity | TIN | Conflict ID |
|---|---|---|
| PS From Aeropostale Inc. | 263625900 | 145276 |

**Thursday, May 23, 2024 at 12:08:06 Pacific Daylight Time**

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE - MULTIPLE CLAIMS
**Date:** Monday, May 20, 2024 at 3:34:57 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Date:** May 2, 2024 at 3:00:03AM EDT
**To:** conflicts@paymentcardsettlement.com
**Cc:** David Morgenstein <dmorgenstein@spectrumsettlement.com>, Tim Walker <Etwalker@vailresorts.com>, David Sloan <dsloan@optiumcapital.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>
**Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE - MULTIPLE CLAIMS**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the eight (8) claims listed below, all related to Vail Resorts.

| MERCHANT NAME | TIN | CONFLICT ID |
|---|---|---|
| VAIL HOLDINGS, INC. | 840601461 | 145290 |
| ARRABELLE AT VAIL SQUARE, LLC | 202754896 | 144948 |
| GRAND TETON LODGE COMPANY | 830161154 | 145046 |
| HEAVENLY VALLEY LIMITED PARTNERSHIP | 880266125 | 145056 |
| ROCKRESORTS INTERNATIONAL, LLC | 841606606 | 145033 |
| SSI VENTURE LLC | 841466271 | 145051 |
| TRIMONT LAND COMPANY | 941640750 | 145064 |
| VR US HOLDINGS, INC. | 461305875 | 145003 |

If any additional information is needed, please let me know. Thank you.

--

Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019


This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**Thursday, May 23, 2024 at 12:08:32 Pacific Daylight Time**

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE
**Date:** Monday, May 20, 2024 at 3:34:43 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
> **Date:** May 2, 2024 at 3:34:42AM EDT
> **To:** conflicts@paymentcardsettlement.com
> **Cc:** arivera@frsco.com, Tim Walker <Etwalker@vailresorts.com>, David Sloan <dsloan@optiumcapital.com>, David Morgenstein <dmorgenstein@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>, clancellotti@sierraattahoe.com, Robin Niemiec <rniemiec@frsco.com>
> **Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the claim below.

**SIERRA-AT-TAHOE LLC, TIN 680305344, CONFLICT ID 156915**

If any additional information is needed, please let me know. Thank you.
--
Best, AG

Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and

do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

<u>Visa Interchange Settlement</u>: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE
**Date:** Monday, May 20, 2024 at 3:34:13 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
> **Date:** May 2, 2024 at 3:53:15AM EDT
> **To:** conflicts@paymentcardsettlement.com
> **Cc:** David Sloan <dsloan@optiumcapital.com>, David Morgenstein <dmorgenstein@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>, Claim <claim@optiumcapital.com>, jmcfarland@fbbrands.com
> **Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the claim below.

**JESSICA LONDON, INC., TIN 133941070, CONFLICT ID 145389**

If any additional information is needed, please let me know. Thank you.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not

constitute waiver of any privilege.

<u>Visa Interchange Settlement</u>: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

2 of 2

**Thursday, May 23, 2024 at 12:09:12 Pacific Daylight Time**

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE
**Date:** Monday, May 20, 2024 at 3:34:07 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
> **Date:** May 2, 2024 at 4:04:01AM EDT
> **To:** conflicts@paymentcardsettlement.com
> **Cc:** David Sloan <dsloan@optiumcapital.com>, Claim <claim@optiumcapital.com>, David Morgenstein <dmorgenstein@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>
> **Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE**

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the claim below.

**PS FROM AEROPOSTALE, INC., TIN 263625900, CONFLICT ID 145276**

If any additional information is needed, please let me know. Thank you.


--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.  If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**Thursday, May 23, 2024 at 12:09:27 Pacific Daylight Time**

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE
**Date:** Monday, May 20, 2024 at 3:33:48 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
> **Date:** May 2, 2024 at 4:13:57AM EDT
> **To:** conflicts@paymentcardsettlement.com
> **Cc:** David Sloan <dsloan@optiumcapital.com>, Claim <claim@optiumcapital.com>, David Morgenstein <dmorgenstein@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>
> **Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE**

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the claim below.

**GUTHY-RENKER, TIN 330587817, CONFLICT ID 145296**

If any additional information is needed, please let me know. Thank you.
--
Best, AG

Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.  If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not

constitute waiver of any privilege.

<u>Visa Interchange Settlement</u>: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**Subject:** Fwd: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE - MULTIPLE CLAIMS
**Date:** Monday, May 20, 2024 at 3:33:37 PM Pacific Daylight Time
**From:** David Sloan
**To:** Neil Kornswiet

Sent from my iPhone

Begin forwarded message:

> **From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
> **Date:** May 2, 2024 at 5:25:29AM EDT
> **To:** conflicts@paymentcardsettlement.com
> **Cc:** David Sloan <dsloan@optiumcapital.com>, Claim <claim@optiumcapital.com>, David Morgenstein <dmorgenstein@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, clientservice <clientservice@spectrumsettlement.com>
> **Subject: [EXTERNAL]:INTERCHANGE FEE WITHDRAWAL NOTICE - MULTIPLE CLAIMS**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Claims Administrator,

Spectrum Settlement Recovery withdraws from the forty-four (44) claims below, all related to Apple-Metro Inc..

| MERCHANT NAME | TIN | CONFLICT ID |
|---|---|---|
| APPLE-METRO (TRIANGLE APPLE, LLC | 263022387 | 148419 |
| APPLE-METRO (BRAVO HYLAN, LLC | 133921790 | 148627 |
| APPLE-METRO (ZANARO'S NEW ROCHELLE, LLC | 134044845 | 148420 |
| APPLE-METRO (BATTERY PARK APPLE, LLC | 113413334 | 148589 |
| APPLE-METRO (ZANARO'S WHITE PLAINS, LLC | 50581378 | 148511 |
| APPLE-METRO (MAMARONECK APPLE, LLC | 133803475 | 148529 |
| APPLE-METRO (BATTERY PARK FRESH, LLC | 134070770 | 148404 |

| APPLE-METRO (BRAVO RICHMOND, LLC) | 133921793 | 147987 |
|---|---|---|
| 117TH APPLE LLC | 274861296 | 156822 |
| APPLE-METRO (FLATBUSH APPLE, LLC | 43599404 | 156744 |
| APPLE-METRO (CROSSROADS APPLE, LLC | 522370971 | 156676 |
| APPLE-METRO (MO APPLE, LLC | 611681985 | 156814 |
| APPLE-METRO (SVC APPLE, LLC | 264194715 | 156830 |
| APPLE-METRO (NEW DORP APPLE, LLC | 133833195 | 157014 |
| APPLE-METRO (EXPRESSWAY APPLE, LLC | 133936776 | 156897 |
| APPLE-METRO (JAMAICA APPLE, LLC | 270729595 | 156901 |
| APPLE-METRO (AT APPLE, LLC | 270908684 | 156982 |
| APPLE-METRO (CI APPLE, LLC | 611702388 | 156847 |
| APPLE-METRO (OUTERBRIDGE APPLE, LLC | 43819740 | 156842 |
| 42ND APPLE, LLC | 134070895 | 156808 |
| APPLE-METRO (SHEEPSHEAD APPLE, LLC | 10620751 | 156813 |
| APPLE-METRO (BTM APPLE, LLC | 223934873 | 156780 |
| APPLE-METRO (KISCO APPLE, LLC | 133923140 | 156806 |
| APPLE-METRO (HARLEM APPLE, LLC | 263022318 | 156821 |
| APPLE-METRO (BAY PLAZA APPLE, LLC | 113413362 | 156878 |
| APPLE-METRO (NEW ROCHELLE APPLE, LLC | 134044848 | 156911 |
| APPLE-METRO (BROADWAY APPLE, LLC | 371473547 | 156772 |
| APPLE-METRO (PORT CHESTER APPLE, LLC | 263022537 | 156864 |
| APPLE-METRO (FORDHAM APPLE, LLC | 264212559 | 157017 |
| APPLE-METRO (FRESH MEADOWS APPLE, LLC | 522282999 | 156874 |
| APPLE-METRO (REGO PARK APPLE, LLC | 542092599 | 156873 |
| APPLE-METRO (RIVERDALE APPLE, LLC | 20638813 | 156958 |
| APPLE-METRO, INC | 223272455 | 156868 |
| APPLE-METRO (CROSS COUNTRY APPLE, LLC | 133948655 | 156754 |
| APPLE-METRO (QUEENS CENTER APPLE, LLC | 562459470 | 156753 |
| APPLE-METRO (BAY TERRACE APPLE, LLC | 522283159 | 157007 |
| APPLE-METRO (CORTLANDT APPLE, LLC | 134006175 | 157008 |
| APPLE-METRO (BED-STUY APPLE, LLC | 510527829 | 156846 |
| S.I. MALL APPLE, L.L.C | 133770688 | 156699 |
| AIRMONT APPLE, LLC | 133974491 | 156697 |
| APPLE-METRO (HAWTHORNE APPLE, LLC | 134104462 | 156831 |
| APPLE-METRO (EB APPLE, LLC | 272522744 | 156996 |
| APPLE-METRO (ASTORIA APPLE, LLC | 770690742 | 157020 |
| APPLE-METRO (WHITE PLAINS APPLE, LLC | 50581374 | 156892 |

If any additional information is needed, please let me know. Thank you.

--

Best, AG

**From:**           Tim Walker <Etwalker@vailresorts.com>
**Sent:**           Friday, April 26, 2024 3:01 PM
**To:**             Alan Greinetz
**Cc:**             clientservice; Joey Hodges
**Subject:**        RE: Payment Card Interchange Claim Resolution

Thanks, Alan.

As I mentioned on our call Tuesday, we have searched our email systems and Spectrum has not communicated with me, nor or the litigation team, at all on this claim for the past several years.  From our call, it also sounds that you have not had any communication from anyone at Vail Resorts for at least 5 years.  As a result, it was extremely surprising to learn of Spectrum's involvement considering I have been overseeing this matter for many years.  I hear from your competitors monthly, but have never heard from, nor or communicated with Spectrum, until last week.

I have talked internally, and while we continue to maintain that no agreement exists, to the extent Spectrum is asserting a service agreement and letter of agency are in existence, The Vail Corporation, individually and on behalf of any subsidiaries, terminates any agreement(s) and revokes any letter(s) of agency, pursuant to paragraph 9 of the service agreement and the terms of the letter of agency.  If you have entered any documents on our behalf, they can be withdrawn.

Thank you for bringing this to my attention.

Tim

E. Tim Walker
VP, Deputy General Counsel
Pronouns: he, him
Vail Resorts Management Company
390 Interlocken Crescent
Broomfield, CO 80021
303.905.3650 (Cell)
etwalker@vailresorts.com
www.vailresorts.com



**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Thursday, April 25, 2024 6:06 PM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Hi Tim,

Thank you again for your time this past Tuesday.

As I am sure you are aware, we have already withdrawn from the claims for the Peak Resorts properties that were in conflict status. We regret any inconvenience.

As we discussed, you wanted to have time to review our Service Agreement, before we consider the best path forward to maximize your claim value. We look forward to continuing the conversation whenever you are ready.

Thank you for your consideration.

Best, A


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

---

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Monday, April 22, 2024 9:15 AM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Thanks Tim. I will send a Zoom link a little later today.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**From:** Tim Walker <Etwalker@vailresorts.com>
**Date:** Monday, April 22, 2024 at 5:55 AM
**To:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** RE: Payment Card Interchange Claim Resolution

**CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks.  I'm available at 11:30 PT.

Tim

---

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Sunday, April 21, 2024 9:44 PM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Hi Tim,

Thank you for the prompt reply. I would appreciate the opportunity to eliminate any misunderstanding on our part. I can be available on Tuesday, 4/23 between 11:30 am and 1:30 pm PDT. Please let me know if that time can work. If it doesn't work, please let me know what might work for you.

Thank you.

Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

---

**From:** Tim Walker <Etwalker@vailresorts.com>
**Sent:** Friday, April 19, 2024 6:36 PM
**To:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

**CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Let me know when you have time next week, but unfortunately you're incorrect for a number of reasons.   Regardless, the claims Leah is referencing aren't for The Vail Corporation and are instead for Peak Resorts and its subsidiaries, which are entirely separate entities and are not owned by The Vail Corporation.  Most of the entities were not even in existence in 2012.


Please also forward any correspondence you have with me.

Tim


---

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Friday, April 19, 2024 5:43 PM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Hi Tim,

As promised in my email a few minutes ago, I have attached the Service Agreement by and between Spectrum and VAIL, dated May 8, 2012.

If you have any questions or concerns, please let me know. I look forward to hearing from you so we can determine how best to move forward to maximize your claims. Thank you for your consideration.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Date:** Friday, April 19, 2024 at 5:36 PM
**To:** To: Bryant, Leah <leah.bryant@claimscompensation.com>, Etwalker@vailresorts.com <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>,

analyst@claimscompensation.com <analyst@claimscompensation.com>
**Subject:** Re: Payment Card Interchange Claim Resolution
Dear Leah and Tim,

We have received Leah's email below regarding certain claims in the Payment Card Interchange Fee and Merchant Discount Antitrust Litigation ("Visa Interchange Litigation"), that have been registered by both Spectrum Settlement Recovery ("Spectrum") and Claims Compensation Bureau LLC ("CCB"). Those certain claims are considered in "Conflict" by the Claims Administrator.

I have attached a Letter of Agency by and between Spectrum and Vail Corporation, dated May 8, 2012 ("LOA"), that confirms that the Vail Corporation, as well as the 8 related entities and "all of their respective affiliates and subsidiaries" listed on the attached Exhibit A (collectively, "VAIL"), appointed Spectrum as its limited agent and attorney-in-fact to file VAIL's claims for recovery under the Visa Interchange Litigation. The LOA was signed on behalf of VAIL by Mark Schoppet, Senior Vice President.

I will send a separate email shortly to only Tim, with the Service Agreement by and between Spectrum and VAIL dated May 8, 2012 ("SA"). The SA is related to and referenced in the LOA, and also confirms that Spectrum has been appointed as VAIL's agent to take all steps reasonable and necessary to obtain for VAIL any recovery it may be entitled to as a beneficiary of the Visa Interchange Litigation. The SA was signed on behalf of VAIL by Mark Schoppet, Senior Vice President.

In addition, our records indicate that we have been communicating steadily with staff at VAIL over the past 12 years regarding the status of the litigation, as well as gathering data so that we can maximize the value of the claims. Most recently, Tim Jones in our Client Services group communicated with Brian Barker, Kirsten Lynch, Angela Korch and Julie DeCecco, among others. Spectrum has fully performed our obligations pursuant to our Agreement, and we are ready willing and able to continue to do so.

Please review the information I have provided, and I would be happy to connect with either or both of you via phone or zoom to further clarify the situation and resolve the Conflicts appropriately. Thank you for your consideration.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

**From:** Tim Walker <Etwalker@vailresorts.com>
**Date:** Monday, April 15, 2024 at 8:49 AM
**To:** Bryant, Leah <leah.bryant@claimscompensation.com>

**Cc:** clientservice <clientservice@spectrumsettlement.com>, Analyst CCB <analyst@claimscompensation.com>
**Subject:** RE: Payment Card Interchange Claim Resolution

**CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks.  Was not aware of this.  The administrator should consolidate these claims and that CCB has the authority to manage the consolidated claim and should be the primary contact.

Tim

E. Tim Walker
VP, Deputy General Counsel
Pronouns: he, him
Vail Resorts Management Company
390 Interlocken Crescent
Broomfield, CO 80021
303.905.3650 (Cell)
etwalker@vailresorts.com
www.vailresorts.com


EXPERIENCE OF A LIFETIME

---

**From:** Bryant, Leah <Leah.Bryant@claimscompensation.com>
**Sent:** Monday, April 15, 2024 7:47 AM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** 'clientservice@spectrumsettlement.com' <clientservice@spectrumsettlement.com>; Analyst CCB <analyst@claimscompensation.com>
**Subject:** Payment Card Interchange Claim Resolution

**ATTENTION: This eMail originated from outside of Vail Resorts and may or may not be legitimate. Although we do our best to screen phishing emails, please use extra caution before opening any attachments or clicking on any links unless you are absolutely sure the source of the email is trusted. If in doubt about the legitimacy of this email, please use the Report Phish button for validation.**

Good morning, Tim,
We've been notified by the administrator of the Payment Card Interchange Fee and Merchant Discount Antitrust (PCI) settlement* that there are multiple claims (Conflict ID 146080, 146210,147702,149742,146137) that have been submitted on your entity's behalf, one by CCB and one by the following party(ies): SPECTRUM SETTLEMENT RECOVERY, who is CC'd on this email. The merchant accounts impacted is Whitetail Mountain Op, JFBB Ski Areas Inc, Hidden Valley Golf and S, Peak Resorts, Inc, New Paoli Peaks Inc.
This happens sometimes and is easily rectified. Please respond (reply all) to this email to confirm that the administrator should consolidate these claims and that CCB has the authority to manage the consolidated claim and should be the primary contact.
Kind Regards,
Leah Bryant
AVP of Business Development

Claims Compensation Bureau, LLC
a subsidiary of PRA Group
Main Office Number: (610) 834-9010
Direct: 757-431-7958
Toll Free Direct Extension: 1-888-772-7326 x17958
www.claimscompensation.com

* The 2018 settlement supersedes and amends the previous settlement from 2012 and was granted final approval on December 13, 2019. Additional information about the case can be found at the court approved website www.paymentcardsettlement.com. Claim forms are being delivered and are available online beginning December 1, 2023.

The information contained in this message is confidential and intended only for the use of the individual or entity named above, and may be privileged. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please reply to the sender immediately, stating that you have received the message in error, then please delete this e-mail. Thank you.

---

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Monday, April 22, 2024 9:15 AM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Thanks Tim. I will send a Zoom link a little later today.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019


This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

---

**From:** Tim Walker <Etwalker@vailresorts.com>
**Date:** Monday, April 22, 2024 at 5:55 AM
**To:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** RE: Payment Card Interchange Claim Resolution

**CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks.  I'm available at 11:30 PT.

Tim

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Sunday, April 21, 2024 9:44 PM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Hi Tim,

Thank you for the prompt reply. I would appreciate the opportunity to eliminate any misunderstanding on our part. I can be available on Tuesday, 4/23 between 11:30 am and 1:30 pm PDT. Please let me know if that time can work. If it doesn't work, please let me know what might work for you.

Thank you.

Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need only sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.


**From:** Tim Walker <Etwalker@vailresorts.com>
**Sent:** Friday, April 19, 2024 6:36 PM
**To:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

**CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Let me know when you have time next week, but unfortunately you're incorrect for a number of reasons.   Regardless, the claims Leah is referencing aren't for The Vail Corporation and are instead for Peak Resorts and its subsidiaries, which are entirely separate entities and are not owned by The Vail Corporation.  Most of the entities were not even in existence in 2012.


Please also forward any correspondence you have with me.

Tim

**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Sent:** Friday, April 19, 2024 5:43 PM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>; Joey Hodges <jhodges@spectrumsettlement.com>
**Subject:** Re: Payment Card Interchange Claim Resolution

Hi Tim,

As promised in my email a few minutes ago, I have attached the Service Agreement by and between Spectrum and VAIL, dated May 8, 2012.

If you have any questions or concerns, please let me know. I look forward to hearing from you so we can determine how best to move forward to maximize your claims. Thank you for your consideration.
--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.   Unintended transmission shall not constitute waiver of any privilege.

Visa Interchange Settlement: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.


**From:** Alan Greinetz <agreinetz@spectrumsettlement.com>
**Date:** Friday, April 19, 2024 at 5:36 PM
**To:** To: Bryant, Leah <leah.bryant@claimscompensation.com>, Etwalker@vailresorts.com <Etwalker@vailresorts.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>, Joey Hodges <jhodges@spectrumsettlement.com>, analyst@claimscompensation.com <analyst@claimscompensation.com>
**Subject:** Re: Payment Card Interchange Claim Resolution
Dear Leah and Tim,

We have received Leah's email below regarding certain claims in the Payment Card Interchange Fee and Merchant Discount Antitrust Litigation ("Visa Interchange Litigation"), that have been registered by both Spectrum Settlement Recovery ("Spectrum") and Claims Compensation Bureau LLC ("CCB"). Those certain claims are considered in "Conflict" by the Claims Administrator.

I have attached a Letter of Agency by and between Spectrum and Vail Corporation, dated May 8, 2012 ("LOA"), that confirms that the Vail Corporation, as well as the 8 related entities and "all of their respective affiliates and subsidiaries" listed on the attached Exhibit A (collectively, "VAIL"), appointed Spectrum as its limited agent and attorney-in-fact to file VAIL's claims for recovery under the Visa Interchange Litigation. The LOA was signed on behalf of VAIL by Mark Schoppet, Senior Vice President.

I will send a separate email shortly to only Tim, with the Service Agreement by and between Spectrum and VAIL dated May 8, 2012 ("SA"). The SA is related to and referenced in the LOA, and also confirms that Spectrum has been appointed as VAIL's agent to take all steps reasonable and necessary to obtain for VAIL any recovery it may be entitled to as a beneficiary of the Visa Interchange Litigation. The SA was signed on behalf of VAIL by Mark Schoppet, Senior Vice President.

In addition, our records indicate that we have been communicating steadily with staff at VAIL over the past 12 years regarding the status of the litigation, as well as gathering data so that we can maximize the value of the claims. Most recently, Tim Jones in our Client Services group communicated with Brian Barker, Kirsten Lynch, Angela Korch and Julie DeCecco, among others. Spectrum has fully performed our obligations pursuant to our Agreement, and we are ready willing and able to continue to do so.

Please review the information I have provided, and I would be happy to connect with either or both of you via phone or zoom to further clarify the situation and resolve the Conflicts appropriately. Thank you for your consideration.

--
Best, AG


Alan Greinetz
Spectrum Settlement Recovery
415-305-0019

This email and any attachments may contain confidential, proprietary, or attorney-client privileged information.   If you are not the intended recipient, please inform us promptly, delete the email, and do not copy, distribute, or disclose its contents it to anyone.  Unintended transmission shall not constitute waiver of any privilege.

<u>Visa Interchange Settlement</u>: Claim forms are being delivered and are available online beginning December 1, 2023.  Class members need not sign up for a third-party service in order to participate in any monetary relief.  No-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.  You may visit https://www.paymentcardsettlement.com/en for more information.

---

**From:** Tim Walker <Etwalker@vailresorts.com>
**Date:** Monday, April 15, 2024 at 8:49 AM
**To:** Bryant, Leah <leah.bryant@claimscompensation.com>
**Cc:** clientservice <clientservice@spectrumsettlement.com>, Analyst CCB <analyst@claimscompensation.com>
**Subject:** RE: Payment Card Interchange Claim Resolution

> **CAUTION:** This email originated from outside Spectrum. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks.  Was not aware of this.  The administrator should consolidate these claims and that CCB has the authority to manage the consolidated claim and should be the primary contact.


Tim

E. Tim Walker
VP, Deputy General Counsel
Pronouns: he, him
Vail Resorts Management Company
390 Interlocken Crescent

Broomfield, CO 80021
303.905.3650 (Cell)
etwalker@vailresorts.com
www.vailresorts.com



VAIL RESORTS®
EXPERIENCE OF A LIFETIME

---

**From:** Bryant, Leah <Leah.Bryant@claimscompensation.com>
**Sent:** Monday, April 15, 2024 7:47 AM
**To:** Tim Walker <Etwalker@vailresorts.com>
**Cc:** 'clientservice@spectrumsettlement.com' <clientservice@spectrumsettlement.com>; Analyst CCB <analyst@claimscompensation.com>
**Subject:** Payment Card Interchange Claim Resolution

> **ATTENTION: This eMail originated from outside of Vail Resorts and may or may not be legitimate. Although we do our best to screen phishing emails, please use extra caution before opening any attachments or clicking on any links unless you are absolutely sure the source of the email is trusted. If in doubt about the legitimacy of this email, please use the Report Phish button for validation.**

Good morning, Tim,

We've been notified by the administrator of the Payment Card Interchange Fee and Merchant Discount Antitrust (PCI) settlement* that there are multiple claims (Conflict ID 146080, 146210,147702,149742,146137) that have been submitted on your entity's behalf, one by CCB and one by the following party(ies): SPECTRUM SETTLEMENT RECOVERY, who is CC'd on this email. The merchant accounts impacted is Whitetail Mountain Op, JFBB Ski Areas Inc, Hidden Valley Golf and S, Peak Resorts, Inc, New Paoli Peaks Inc. This happens sometimes and is easily rectified. Please respond (reply all) to this email to confirm that the administrator should consolidate these claims and that CCB has the authority to manage the consolidated claim and should be the primary contact.

Kind Regards,

Leah Bryant

AVP of Business Development

Claims Compensation Bureau, LLC

a subsidiary of PRA Group

Main Office Number: (610) 834-9010

Direct: 757-431-7958

Toll Free Direct Extension: 1-888-772-7326 x17958

www.claimscompensation.com

* The 2018 settlement supersedes and amends the previous settlement from 2012 and was granted final approval on December 13, 2019. Additional information about the case can be found at the court approved website www.paymentcardsettlement.com. Claim forms are being delivered and are available online beginning December 1, 2023.

The information contained in this message is confidential and intended only for the use of the individual or entity named above, and may be privileged. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please reply to the sender immediately, stating that you have received the message in error, then please delete this e-mail. Thank you.

| Name | Conflict ID | Conflict party | Reason | TIN |
|---|---|---|---|---|
| Redacted | | | | |
| Aeropostale | 145276 | Optium | BK terminated agreement | 263625900 |
| Redacted | | | | |
| Vail Resorts | 156915 | Optium | Clent termination | 680305344 |
| Vail Resorts | 145290 | Optium | Clent termination | 840601461 |
| Vail Resorts | 144948 | Optium | Clent termination | 202754896 |
| Vail Resorts | 145046 | Optium | Clent termination | 830161154 |
| Vail Resorts | 145056 | Optium | Clent termination | 880266125 |
| Vail Resorts | 145033 | Optium | Clent termination | 841606606 |
| Vail Resorts | 145051 | Optium | Clent termination | 841466271 |
| Vail Resorts | 145064 | Optium | Clent termination | 941640750 |
| Vail Resorts | 145003 | Optium | Clent termination | 461305875 |

**From:** Kindel Nuno <Kindel.Nuno@MFRM.com>
**Date:** Tuesday, May 14, 2024 at 1:26 PM
**To:** David Sloan <dsloan@optiumcapital.com>
**Cc:** Daria Russell <Daria.Russell@MFRM.com>
**Subject:** [EXTERNAL]:RE: [EXTERNAL] Re: Claim Purchase - 4/17/2020

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello Dave,

There were agreements with Spectrum signed by Sleepys and Sleep Train prior to our acquisition of those entities.  However, we terminated those agreements a few years ago.  Accordingly, Spectrum has no authority on behalf of those entities relating to any Visa/MC claims.

Thank you,
Kindel

Kindel Nuno
EVP Legal and General Counsel
O. 346.718.5310 |

www.mattressfirm.com | www.sleep.com
Get Matched. Sleep at Night.™

This electronic mail (including any attachments) may contain information that is privileged, confidential, and/or otherwise protected from disclosure to anyone other than its intended recipient(s).



**From:** David Sloan <dsloan@optiumcapital.com>
**Sent:** Tuesday, May 14, 2024 3:27 PM
**To:** Kindel Nuno <Kindel.Nuno@MFRM.com>
**Subject:** [EXTERNAL] Re: Claim Purchase - 4/17/2020

With apologies – I had the wrong email address and it bounced.  Please see below for intended message.

Best,

Dave

David B. Sloan
Chief Financial Officer
Optium Capital, LLC
2193 Fillmore Street
San Francisco, CA 94115
(415) 805-8137 (office)
(415) 595-6939 (cell)
dsloan@optiumcapital.com

Notice For Payment Card Fee Interchange Settlement Only: Please note that claim forms for the Payment Card Interchange Fee Settlement class action are being delivered and are available online beginning December 1, 2023. Class members need not sign up for a third-party service in order to participate in any monetary relief. No-cost assistance is available from the Class Administrator and Class Counsel during the claims-filing period. For additional information regarding the status of the litigation, interested persons may visit www.paymentcardsettlement.com, the Court-approved website for this case.

**From:** David Sloan <dsloan@optiumcapital.com>
**Date:** Tuesday, May 14, 2024 at 11:59 AM
**To:** daria.russell@mattressfirm.com <daria.russell@mattressfirm.com>, kindel.elam@mattressfirm.com <kindel.elam@mattressfirm.com>
**Subject:** Claim Purchase - 4/17/2020

Hi Daria and Kindel,

I hope this finds you both well.   It has been a few years since we last connected.  I am writing to seek your input on a matter that has surfaced.     On April 17, 2020, we purchased from the Mattress Firm its claim rights ("Claim") in the In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MDL 1720 (MKB) (JO) for $4.67 million.  I've

attached a copy of our purchase agreement(s) for your convenience.  Recently, a third party filing company, Spectrum Settlement Recovery ("Spectrum"), reached out to us and said they have a filing contract with Sleepy's entities as well as Sleep Train to service said portions of the Claim.  No such filing contract(s) was disclosed at the time of our purchase by Mattress Firm.  We have requested to see a copy of this contract(s) from Spectrum but they have yet to provide it.  We would like to schedule a call with you to discuss this issue once you have had a chance to review this matter.

We look forward to hearing from you and appreciate the opportunity to have completed this purchase with Mattress Firm.  We also wish you every success with your upcoming Tempur Sealy transaction.  Should there be interest in monetizing a claim on the Tempur side, we would love to make that happen and add to our shared successes.


Best,

Dave

David B. Sloan
Chief Financial Officer
Optium Capital, LLC
2193 Fillmore Street
San Francisco, CA 94115
(415) 805-8137 (office)
(415) 595-6939 (cell)
dsloan@optiumcapital.com

<u>Notice For Payment Card Fee Interchange Settlement Only</u>: Please note that claim forms for the Payment Card Interchange Fee Settlement class action are being delivered and are available online beginning December 1, 2023. Class members need not sign up for a third-party service in order to participate in any monetary relief. No-cost assistance is available from the Class Administrator and Class Counsel during the claims-filing period. For additional information regarding the status of the litigation, interested persons may visit www.paymentcardsettlement.com, the Court-approved website for this case.


CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ARO LIQUIDATION, INC., *et al.*, | : | Case No. 16-11275 (SHL) |
|  | : |  |
| Debtors[1]. | : | (Jointly Administered) |
|  | : |  |
| _____ | : |  |

## ORDER PURSUANT TO 11 U.S.C. § 365(a)
## TO REJECT SPECTRUM CONTRACT

Upon the motion (the "Motion")[2] of ARO Liquidation, Inc., and its

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "Debtors"), pursuant to section 365(a) of the Bankruptcy Code,

for entry of an order approving the rejection of the Spectrum Contract (the "Contract")

as more fully set forth in the Motion; and the Court having jurisdiction to decide the

Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and

1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. 157(b); and venue being proper before this Court

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows: ARO Liquidation, Inc. (3880); ARO Liquidation West, Inc. (7013); ARO Liquidation Surf Co., LLC (0461); ARO Liquidation GC Management LLC (4257); ARO Liquidation Procurement Company, Inc. (8518); ARO Liquidation Licensing, Inc. (8124); ARO Liquidation (Kids), Inc. (5900); ARO Liquidation GJ LLC (4923); ARO Liquidation Holdings, Inc. (7729); and ARO Liquidation Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 125 Chubb Avenue, Lyndhurst, NJ 07071.

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

pursuant to 29 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion; and the Contract having been previously rejected pursuant to the Debtors' *Notice of Rejection of Executory Contracts* [Dkt. No. 997]; and the Debtors having become aware of an additional address for Spectrum and served the Motion on such additional address; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their respective estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The Contract is deemed rejected as of the date of the entry of this Order pursuant to section 365(a) of the Bankruptcy Code.

3.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this order.

4.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

DATED:   February 2, 2018
         New York, New York

*/s/ Sean H. Lane*
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## NOTICE OF TRANSFER AND ASSIGNMENT OF RIGHTS

To: Claims Administrator for Any Recovery Arising from IN RE: PAYMENT CARD INTERCHANGE
FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION (MDL 1720 (MKB) (JO))

We hereby give notice that pursuant to that certain Claim Purchase Agreement (the "Agreement") dated March 26, 2020 between The Vail Corporation and certain of its Affiliated Sellers set forth in Schedule 1 to this Notice of Transfer and Assignment of Rights   (collectively, "Seller") and Optium Fund 3, LLC ("Purchaser"),  Seller has absolutely, unconditionally and irrevocably transferred and assigned to Purchaser all of Seller's rights, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement, judgment or recovery of funds or other consideration (collectively, Settlement Funds") arising from the class action litigation of In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (MDL 1720 (MKB) (JO)) (such action, together with all other actions in any forum constituting a reformation of the causes of action therein or in which the same claims are alleged, the "Litigation") (the "Claim").

Purchaser is now the legal and equitable owner of all rights, title and interest associated with the Settlement Funds and the Litigation and you should deal directly with Purchaser (or its assignees and/or duly appointed agents) on all matters regarding the Claim, Settlement Funds, or the Litigation.  In particular, the rights assigned and transferred by Sellers to Purchaser include, but are not limited to, the right to: (1) file, modify, compromise or amend a claim in connection with the Litigation; (2) communicate and receive communications from the District Court (or any other court involved in the Litigation), claims administrator, class counsel or other interested parties with respect to the Litigation; (3) receive Settlement Funds; and (4) challenge and/or negotiate the amount of Settlement Funds to be paid to Purchaser in connection with the Litigation.  All of  Seller's third party service providers and counterparties are directed to provide Purchaser with any and all of  Seller's transactional information, sales information, purchase information, and other information requested by Purchaser.  We would appreciate receiving an acknowledgment of receipt of this Notice of Transfer and Assignment of Rights from the Claims Administrator at the Claim Administrator's earliest opportunity. For the Claim Administrator's convenience, we have attached a sample receipt letter to this Notice of Transfer and Assignment of Rights.

From this date forward, all payments of Settlement Funds shall be directed to the following bank account unless the Purchaser notifies you otherwise:

| | |
|---|---|
| Bank: | First Republic Bank |
| Routing Number: | 321081669 |
| Account Name: | Optium Fund 3, LLC |
| Account Number: | 80008188924 |

All communications regarding the Litigation or the Settlement Funds, should be sent to Purchaser at the following address:

Optium Fund 3, LLC
620 Newport Center Drive
Suite 670
Newport Beach, CA 92660
Attn:  Chief Executive Officer
nkornswiet@optiumcapital.com

Date:    March 26, 2020

THE VAIL CORPORATION, ON BEHALF OF ITSELF AND THE AFFILIATED SELLERS
LISTED ON EXHBIT D TO THE AGREEMENT

By
Name:  David T. Shapiro
Title:  Executive Vice President, General Counsel & Secretary
Contact Details: 390 Interlocken Crescent, Broomfield, CO 80021, dtshapiro@vailresorts.com

Form Date 1/14/20

DocuSign Envelope ID: 0988A538-B566-4222-AECF-8GBFAC152827

## SCHEDULE 1

| Entity | Address | Tax ID |
|---|---|---|
| THE VAIL CORPORATION | 390 Interlocken Crescent, Broomfield CO 80021 | 840601461 |
| VR US HOLDINGS, INC. | 390 Interlocken Crescent, Broomfield CO 80021 | 320483045 |
| VR US HOLDINGS INC | 390 Interlocken Crescent, Broomfield CO 80021 | 461305875 |
| GRAND TETON LODGE COMPANY | PO Box 250 5 Miles N of Moran Junction Hwy 89 Moran, WY 83013 | 830161154 |
| FLAGG RANCH COMPANY | 390 Interlocken Crescent, Broomfield CO 80021 | 275445444 |
| ROCKRESORTS INTERNATIONAL | 390 Interlocken Crescent, Broomfield CO 80021 | 841606606 |
| HEAVENLY VALLEY, LIMITED PARTNERSHIP | 3860 Saddle Road South Lake Tahoe, CA 96150 | 880266125 |
| ARRABELLE AT VAIL SQUARE, LLC | 450 E. Lionshead Circle Vail, CO 81657 | 202754896 |
| VR CPC HOLDINGS, INC. | 390 Interlocken Crescent, Broomfield CO 80021 | 462395750 |
| TRIMONT LAND COMPANY | 390 Interlocken Crescent, Broomfield CO 80021 | 941640750 |
| SSI VENTURE LLC, now known as SSI VENTURE, INC. | 390 Interlocken Crescent, Broomfield CO 80021 | 841466271 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## NOTICE OF TRANSFER AND ASSIGNMENT OF RIGHTS

To: Claims Administrator for Any Recovery Arising from IN RE: PAYMENT CARD INTERCHANGE
FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION (MDL 1720 (MKB) (JO))

We hereby give notice that pursuant to (i) that certain Claim Purchase Agreement (the "Agreement") dated April 17, 2020 between Mattress Firm, Inc. and certain of its Affiliated Sellers set forth in Schedule 1 to this Notice of Transfer and Assignment of Rights (collectively, "Seller") and Seaport Loan Products LLC ("Seaport"), and (ii) that certain Claim Purchase Agreement dated April 17 , 2020 between Seaport and Optium Fund 3 LLC ("Purchaser"),  Seller has absolutely, unconditionally and irrevocably transferred and assigned to Purchaser all of Seller's rights, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement, judgment or recovery of funds or other consideration (collectively, Settlement Funds") arising from the class action litigation of In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (MDL 1720 (MKB) (JO)) (such action, together with all other actions in any forum constituting a reformation of the causes of action therein or in which the same claims are alleged, the "Litigation") (the "Claim"), such Claim also including, without limitation, those rights and benefits of the Acquired Companies set forth on Schedule 1 to the Settlement Funds acquired by Seller.

Purchaser is now the legal and equitable owner of all rights, title and interest associated with the Settlement Funds and the Litigation and you should deal directly with Purchaser (or its assignees and/or duly appointed agents) on all matters regarding the Claim, Settlement Funds, or the Litigation. In particular, the rights assigned and transferred by Sellers to Purchaser include, but are not limited to, the right to: (1) file, modify, compromise or amend a claim in connection with the Litigation; (2) communicate and receive communications from the District Court (or any other court involved in the Litigation), claims administrator, class counsel or other interested parties with respect to the Litigation; (3) receive Settlement Funds; and (4) challenge and/or negotiate the amount of Settlement Funds to be paid to Purchaser in connection with the Litigation.  All of Seller's third party service providers and counterparties are directed to provide Purchaser with any and all of Seller's transactional information, sales information, purchase information, and other information requested by Purchaser.  We would appreciate receiving an acknowledgement of receipt of this Notice of Transfer and Assignment of Rights from the Claims Administrator at the Claim Administrator's earliest opportunity. For the Claim Administrator's convenience, we have attached a sample receipt letter to this Notice of Transfer and Assignment of Rights.

From this date forward, all payments of Settlement Funds shall be directed to the following bank account unless the Purchaser notifies you otherwise:

Bank:               First Republic Bank
Routing Number:     321081669
Account Name:       Optium Fund 3, LLC
Account Number:     80008188924

All communications regarding the Litigation or the Settlement Funds, should be sent to Purchaser at the following address:

Optium Fund 3, LLC
620 Newport Center Drive
Suite 670
Newport Beach, CA 92660
Attn:  Chief Executive Officer
nkornswiet@optiumcapital.com

Date:   April 17, 2020

Mattress Firm, Inc., ON BEHALF OF ITSELF AND THE AFFILIATED SELLERS
LISTED ON EXHBIT D TO THE AGREEMENT

By
Name:  Maarten Jager
Title:  Chief Financial Officer
Contact Details: Mattress Firm, Inc., 10201 S Main Street, Houston, Texas 77025, Attn: General Counsel

Form Date 1/14/20

**SCHEDULE 1**

Affiliated Sellers

| Entity | Addreess | EIN |
|---|---|---|
| 1800mattresscom. LLC | 10201 S Main Street, Houston, TX 77025 | 94-3479284 |
| American Internet Sales LLC | 10201 S Main Street, Houston, TX 77025 | 46-2565538 |
| CCP IV Holdings, LLC | 10201 S Main Street, Houston, TX 77025 | 45-4766480 |
| CCP IV SBS Holdings, LLC | 10201 S Main Street, Houston, TX 77025 | 45-4766595 |
| Custom Fundraising Solutions, LLC | 10201 S Main Street, Houston, TX 77025 | 34-4012800 |
| CXV Holdings, LLC | 10201 S Main Street, Houston, TX 77025 | 45-4766412 |
| Dial Operations, LLC | 10201 S Main Street, Houston, TX 77025 | 01-0941408 |
| HMK Intermediate Holdings LLC | 10201 S Main Street, Houston, TX 77025 | 37-1665671 |
| HMK Mattress Holdings LLC | 10201 S Main Street, Houston, TX 77025 | 90-0799351 |
| Maggie's Enterprises, LLC | 10201 S Main Street, Houston, TX 77025 | 54-1372133 |
| Mattress Discounters Group LLC | 10201 S Main Street, Houston, TX 77025 | 26-3725735 |
| Mattress Discounters Operations LLC | 10201 S Main Street, Houston, TX 77025 | 90-0906406 |
| Mattress Firm – Arizona, LLC | 10201 S Main Street, Houston, TX 77025 | 26-0065695 |
| Mattress Giant Corporation | 10201 S Main Street, Houston, TX 77025 | 75-2427860 |

| Entity | Address | EIN |
|---|---|---|
| MD Acquisition LLC | 10201 S Main Street, Houston, TX 77025 | 35-2458949 |
| Sleep Country USA, LLC | 10201 S Main Street, Houston, TX 77025 | 06-1572714 |
| Sleepy's, LLC | 10201 S Main Street, Houston, TX 77025 | 20-8781144 |
| ST San Diego, LLC | 10201 S Main Street, Houston, TX 77025 | 71-0864426 |
| The Sleep Train, Inc. | 10201 S Main Street, Houston, TX 77025 | 68-0062942 |

Acquired Companies

**Mattress Firm Inc.**

**Schedule**

| Entity | EIN # |
|---|---|
| Triple S Properties, LLP dba American Mattress | 20-3521871 |
| Michael Leigh Sleep Shop, Inc. dba America's Mattress (E. WA stores) | 20-4694883 |
| American Closeout Wholesale dba Crazy Mikes | 77-0660860 |
| B29 LLC | 46-3610474 |
| Bed Time Mattress Company, Inc. | 88-0287954 |
| Best Mattress Co., Inc. dba Mattress Discounters | 25-1888264 |
| Better Bedding Shops, Inc. | 06-0960736 |
| Blue Ocean Waters, LLC (Birmingham, AL) | 26-0222319 |
| Christian's Solid Wood Furniture Inc. dba Mattress Express (Fresno, CA stores) | 77-0546685 |
| Crackerbox Company dba Sleep With Grace (Idaho stores) | 91-1892897 |
| Custom Fundraising Solutions, LLC | 26-1822446 |
| Discount Mattress USA LLC | 45-2647755 |
| Double J-RD LLC | 27-2451929 |
| Dreamz Agency,Inc. | 20-8289702 |
| Elite Management Team, Inc. | 76-0487084 |
| Fresto, Inc. | 76-0477125 |
| Back To Bed, Inc. | 36-4409580 |
| M World LLC dba Bedding Experts | 27-3128536 |
| TBE Orlando LLC dba Mattress Barn | 45-3645352 |
| L&S Mattress Enterprises, LLC | 57-1226335 |
| Maggie's Enterprises dba Mattress Discounters | 54-1372133 |
| Mattress Discounters Group LLC | 26-3725735 |
| Mike Lindsey and Bob Lindsey dba Mattress Expo | 458709373; 464806748 |
| Mattress Express, LLC | 90-0642151 |
| Mattress, Inc. | 90-0587977 |
| Mattress Liquidators, Inc. dba Bed Mart & Mattress King | 84-1446228 |
| Mattress Man, Inc. (Greensboro, NC) | 562267535 |
| Mattress Matters G.P. | 34-1887415 |
| The Mattress Outlet, Inc. (E. WA stores) | 91-2093821 |
| MattPro of Nevada, LLC | 47-0897896 |
| MattPro of Texas, LLC | 20-1751955 |
| Factory Mattress & Waterbed Outlet of Charlotte Inc. dba Mattress Source | 56-1456226 |
| Mattress Team LLC dba America's Mattress Hawaii | 20-5834737 |
| Mattress World, Inc. | 27-3128370 |
| Mattress Xpress, Inc. and Mattress Xpress of Georgia, Inc. | 20-3646061/45-2869299 |
| Metropolitan Mattress | 86-0740273 |
| Mattress Firm Holding Corp. and Mattress Firm, Inc. | 06-1652172 /76-0596008 |
| Mattress Giant Holding Corp. and subsidiaries | 20-5218453 |
| Miforma LLC | 36-4618256 |
| Mountaineer Mattress, LLC (WV) | |
| NE Mattress People LLC | 45-4309020 |
| PCG | |
| Peak Management Team, LLC | 26-2371987 |
| Perfect Mattress WI LLC | 27-1014943 |
| Pro Mattress Ventures, LLC | 20-1655095 |
| Retail Mattress Ventures, L .P. | 20-1560843 |
| Rockaway Bedding Inc. | 22-2452528 |
| Del Monte Furniture Rental Inc. dba Mattress Direct (Salinas, CA) | 94-2389720 |
| Sleep America, LLC | 20-4355306 |
| Sleep City, Inc. (California) | 68-0285707 |
| Sleep Country USA, LLC | 06-1572714 |
| Sleep Experts Partners, LP | 75-3109496 |
| Sleep Experts II, LLC | 45-4455447 |
| Sleep Shoppe, Inc. dba Sleep City (Idaho and E. WA stores) | 48-0908092 |
| The Sleep Train, Inc. | 68-0062942 |
| Sleep Xperts Inc. | 27-0045649 |
| HMK MATTRESS HOLDING LLC (Holding company for Sleepy's business) | 90-0799351 |
| Southern Max LLC | 27-3208695 |
| ST San Diego LLC | 71-0864426 |
| Sweet Dreams | |
| Yotes, Inc. | 84-1261081 |
| | |
| | |
| Total Brick and Mortar stores | |
| | |
| | |
| **Ecommerce** | |
| Entity | EIN # |
| American Internet Sales LLC (Olejo Parent) | 46-2565538 (26-4051546) |
| 1-800 Mattress (Dial A Mattress) | 11-2667049 |
| | |
| **Total Ecommerce sites** | |

Form Date 1/14/20

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ARO LIQUIDATION, INC., *et al.*, | : | Case No. 16-11275 (SHL) |
|  | : |  |
| Debtors[1]. | : | (Jointly Administered) |
|  | : |  |
| | : | |

## ORDER (A) APPROVING THE SALE OF VISA/MC LITIGATION CLAIM AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this

"Order") pursuant to sections 105(a), 363(b), 363(f), 363(m), 1107, and 1108 of title 11 of

the United States Code (as amended, the "Bankruptcy Code"), and Rules 9002, 9007,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

(i) authorizing the Debtors to sell or transfer the Visa/MC Litigation Claim to Optium

Fund 2 LLC (the "Buyer") in accordance with the agreement, dated as of February 12,

2018 (together with all related agreements, documents or instruments and all exhibits,

schedules, and supplements to any of the foregoing, the "Stalking Horse Agreement",

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows: ARO Liquidation, Inc. (3880); ARO Liquidation West, Inc. (7013); ARO Liquidation Surf Co., LLC (0461); ARO Liquidation GC Management LLC (4257); ARO Liquidation Procurement Company, Inc. (8518); ARO Liquidation Licensing, Inc. (8124); ARO Liquidation (Kids), Inc. (5900); ARO Liquidation GJ LLC (4923); ARO Liquidation Holdings, Inc. (7729); and ARO Liquidation Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 125 Chubb Avenue, Lyndhurst, NJ 07071.

[2]  Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

and the transactions described therein, the "Sale Transaction"), by and among the Debtors and the Buyer, free and clear of all Liens, Claims (as defined herein) and encumbrances, with such Liens attaching to the proceeds of the Sale Transaction with the same validity, extent, and priority as had attached to the Visa/MC Litigation Claim immediately prior to the Sale Transaction, and (ii) granting certain related relief; and the Court having held a hearing on February 20, 2018 at 11:00 a.m. (the "Sale Hearing") to approve the proposed Sale Transaction as set forth in the Stalking Horse Agreement; and the Court having reviewed and considered (a) the Motion, (b) the O'Malley Declaration, (c) the objections to the Motion, if any, and (d) the arguments made by counsel, and the evidence proffered or adduced at the Sale Hearing; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore;

**IT IS HEREBY FOUND AND DETERMINED THAT**

A. **Jurisdiction and Venue**. This Court has jurisdiction (i) to consider the Motion and (ii) over the property of Debtors, including the Visa/MC Litigation Claim to be sold, transferred, and conveyed pursuant to the Stalking Horse Agreement, under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Legal Predicates**. The legal predicates for the relief sought in the Motion

are sections 105(a), 363(b), 363(f), 1107, and 1108 of the Bankruptcy Code, and

Bankruptcy Rules 2002, 6004 and 9007.

C.    **Final Order**.  This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 7062, and to the

extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of

Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly

finds that there is no just reason for delay in the implementation of this Order and

expressly directs entry of this Order as set forth herein.

D.    **Notice**.  As evidenced by the affidavits of service filed with the Court at

Docket No. 1601, and based on the representations of counsel at the Sale Hearing,

(i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the

Stalking Horse Agreement and the Sale Transaction has been provided in accordance

with Bankruptcy Code sections 102(1), 363, and Bankruptcy Rules 2002, 6004 and 9006,

and the case management procedures established in that certain *Order Pursuant to 11*

*U.S.C. Sections 105(a) and (d) and Fed. R. Bankr. 1015(c), 2002(m), and 9007 Implementing*

*Certain Notice and Case Management Procedures* [Docket No. 255] (the "Case Management

Order"), to each party entitled to such notice, (ii) such notice was good, sufficient, and

appropriate under the particular circumstances, and (iii) no other or further notice of

the Motion, the Sale Hearing, the Stalking Horse Agreement and the Sale Transaction is

or shall be required.

E.    On February 2, 2018 in accordance with the Bidding Procedures Order,

the Debtors served the Sale Notice upon:  (i) counsel and co-counsel to the Debtors;

(ii) the U.S. Trustee for the Southern District of New York;  (iii) counsel for the Creditors

Committee;  (iv) counsel to (a) Aero Investors LLC in its capacities as administrative

agent and lender under the Prepetition Term Loam Agreement and (b) MGF Holdings,

Limited in its capacity as a lender under the Prepetition Term Loan Agreement;  and

(v) all parties who have requested notice in these Chapter 11 Cases pursuant to

Bankruptcy Rule 2002 (collectively, the "Standard Parties"), and (vi) any person or

entity with a particularized interest in the subject matter of a certain Document (each,

an "Affected Party") as described in the Case Management Order.

      **F.**      As evidenced by the affidavits of service previously filed with this Court,

proper, timely, adequate and sufficient notice of the Auction, Sale Hearing and the Sale

Transaction has been provided in accordance with sections 105(a) and 363 of the

Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors have

also complied with all obligations to provide notice of the Auction, Sale Hearing and

Sale Transaction required by the Bidding Procedures Order.  The notices described

above were good, sufficient and appropriate under the circumstances, provided all

interested parties with timely and proper notice of the Auction, Sale Hearing and the

Sale Transaction, and no further or other notice of the Auction, Sale Hearing and the

Sale Transaction is required.

      **G.**      On February 13, 2018, the Debtors filed with the Court a notice stating

that Buyer is the Prevailing Purchaser, and that the Buyer's bid pursuant to the Stalking

Horse Agreement is the Successful Bid.  A copy of the Stalking Horse Agreement, as

revised as result of the auction, is attached hereto as Exhibit 1.

**H.** The disclosures made by the Debtors concerning the Stalking Horse Agreement, Auction, Sale Hearing and the Sale Transaction were good, complete and adequate.

**I.** **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (a) all entities known to have expressed an interest in a transaction with respect to the Visa/MC Litigation Claim; (b) any such other party entitled to notice pursuant to Bankruptcy Rule 2002, Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, or the Case Management Order.

**J.** **Sale in Best Interests**. The consideration provided by the Buyer under the Stalking Horse Agreement constitutes the highest or otherwise best offer for the Visa/MC Litigation Claim and provides fair consideration and reasonably equivalent value to the Debtors in exchange for the Visa/MC Litigation Claim. The transactions contemplated by the Stalking Horse Agreement represent the best opportunity to maximize and realize the value of the Visa/MC Litigation Claim for the Debtors' estate.

**K.** **Highest and Best Offer**. The Debtors engaged in a marketing process for the Visa/MC Litigation Claim prior to entering into the Stalking Horse Agreement and conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Visa/MC

5

Litigation Claim. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and/or better offer for the Visa/MC Litigation Claim.

**L.** Based upon the Bidding Procedures approved pursuant to the Bidding Procedures Order, the Debtors determined that the bid evidenced by the Stalking Horse Agreement is the highest and/or best offer for the Visa/MC Litigation Claim.

**M.** The transaction contemplated by the Stalking Horse Agreement constitutes the highest and/or best offer for the Visa/MC Litigation Claim, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Stalking Horse Agreement constitutes the highest and/or best offer constitutes a valid and sound exercise of the Debtors' business judgment.

**N.** The Stalking Horse Agreement represents a fair and reasonable offer to purchase the Visa/MC Litigation Claim under the circumstances of these Chapter 11 Cases. No other Person or entity or group of entities has offered to purchase the Visa/MC Litigation Claim for greater value to the Debtors' estates than the Purchaser.

**O.** **Business Justification**. Sound business reasons exist for the Sale Transaction. Entry into the Stalking Horse Agreement, and the Sale Transaction and constitutes the Debtors' exercise of sound business judgment and such acts are in the best interests of the Debtors, their estates and all other parties in interest.

**P.** The terms of the Stalking Horse Agreement and the Sale Transaction are fair and reasonable, reflect the Debtors' exercise of prudent business judgment

6

consistent with its fiduciary duties and are the best available to the Debtors under the circumstances. For these reasons and based on the other evidence of record, the Court finds that (i) the Stalking Horse Agreement constitutes the highest or otherwise best offer for the Visa/MC Litigation Claim under the circumstances, (ii) the Stalking Horse Agreement and the closing of the Sale Transaction present the best opportunity to realize value for the Visa/MC Litigation Claim, and (iii) any other transaction would create a substantial risk of delay and a significant reduction in value.

Q. **Condition to Sale Transaction**. Entry of this Order approving the Stalking Horse Agreement and all the provisions thereof is a condition precedent to the Buyer's obligation to consummate the Sale Transaction.

R. **Good Faith Purchaser**. The Buyer (i) is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law, and (ii) has otherwise proceeded in good faith in all respects in connection with this proceeding. Specifically: (a) all payments to be made by the Buyer in connection with the Sale Transaction have been disclosed; (b) the negotiation and execution of the Stalking Horse Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; (c) the Buyer did not in any way induce or cause the filing of the Chapter 11 Cases; and (d) the Buyer has not acted in a collusive manner with any person. Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Stalking Horse Agreement or the Sale Transaction to be avoided or result in the imposition of any costs

or damages under 11 U.S.C. § 363(n) and the Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Stalking Horse Agreement.

**S.** **Free and Clear**. Debtors have provided notice as set forth in this Order to (i) Counsel to the DIP Agent and DIP Arrangers and (ii) all other entities asserting or holding Liens (as defined in the Stalking Horse Agreement) or Claims (as defined below) on the Visa/MC Litigation Claim. Such notice expressly stated that the failure of any person holding any lien, encumbrance or other interest with respect to the Visa/MC Litigation Claim to object to the relief requested in the Motion may be deemed to consent to the sale of the Visa/MC Litigation Claim free and clear of such person's liens, encumbrances or interests. The Debtors has complied with the requirements of Bankruptcy Code section 363(f) because in each case, one or more of the standards set forth in within section 363(f)(1)-(5) has been satisfied, and may sell the Visa/MC Litigation Claim free and clear of all Liens and Claims against the Debtors, their estates or the Visa/MC Litigation Claim. The requisite DIP Lenders have consented to the Sale Transaction on the terms set forth in the Stalking Horse Agreement and this Order as required by the DIP Credit Agreement, in accordance with section 363(f)(2) of the Bankruptcy Code. All other holders of Liens and Claims in or against the Visa/MC Litigation Claim have either expressly consented or did not object, or withdrew their objections to the Motion and are deemed to have consented in accordance with section 363(f)(2) of the Bankruptcy Code.

**T.** **No Reliance on Representations and Warranties.** The purchase of the

Visa/MasterCard Litigation Claim shall be deemed to be satisfied with and/or have accepted the claim and obligations from and after closing "as is," "where is."

U.     **Prompt Consummation.**  The sale of the Visa/MC Litigation Claim must be approved and consummated promptly in order to preserve the value of the Visa/MC Litigation Claim.  To maximize the value of the Visa/MC Litigation Claim, it is essential that the Sale Transaction occur within the timeframe set forth in the Stalking Horse Agreement.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.

V.     **No Fraudulent Transfer**.  The Stalking Horse Agreement was not entered into, and neither the Debtors nor the Buyer proposes to consummate the Sale Transaction, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

W.     **Consideration**.  As demonstrated by the O'Malley Declaration, the other evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the consideration provided by the Buyer for the Visa/MC Litigation Claim pursuant to the Stalking Horse Agreement (i) is fair, full, adequate, and reasonable, (ii) is the highest or otherwise best offer for the Visa/MC Litigation Claim, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes

reasonably equivalent value, reasonable market value, and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory,

possession, or the District of Columbia (including, without limitation, the Uniform

Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

    **X.**    **Buyer Not a Successor**.  The Buyer is not and shall not be deemed a

successor to the Debtors as a result of the consummation of the Sale Transaction.

    **Y.**    **Legal and Factual Bases**.  The legal and factual bases set forth in the

Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

    1.    The Motion is GRANTED to the extent set forth herein.

    2.    All objections to the Motion or the relief requested therein that have

not been withdrawn, waived, or settled, and all reservations of rights included therein,

are overruled on the merits and denied with prejudice.  All persons and entities given

notice of the Motion that failed to timely object thereto are deemed to consent to the

relief sought therein.

**Approval of the Sale of the Visa/MC Litigation Claim**

    3.    The Stalking Horse Agreement, including any amendments,

supplements, and modifications thereto, and all of the terms and conditions therein, is

hereby approved.

    4.    The Debtors are hereby authorized and empowered to:  (1) execute

the Stalking Horse Agreement, along with any additional instruments or documents

that may be necessary to implement the Stalking Horse Agreement, provided that such

additional documents do not materially change its terms;  (2) do all things and take all

actions necessary to consummate the Sale Transaction in accordance with the terms and

conditions of the Stalking Horse Agreement and the instruments and agreements

contemplated thereby;  and (3) take all further actions as may reasonably be requested

by the Buyer for the purpose of transferring or reducing to possession the Visa/MC

Litigation Claim, in each case without further application to, or order of, the Court.

**Sale and Transfer of Visa/MC Litigation Claim**

5.      Except as otherwise expressly provided in the Stalking Horse

Agreement and the terms of this Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f) the

Visa/MC Litigation Claim shall be transferred on the Closing Date free and clear of all

(i) claims Liabilities (as defined in the Stalking Horse Agreement), interests, rights, and

encumbrances, in each case against or otherwise in respect of the Visa/MC Litigation

Claim being transferred, including, without limitation, all restrictions (including,

without limitation, any restriction on the use, voting rights, transfer rights, claims for

receipt of income, or other exercise of any attributes of ownership), hypothecations,

charges, indentures, instruments, options, security interests, conditional sale rights or

other title retention agreements, pledges, judgments, demands, rights of first refusal,

consent rights, contract rights, rights of recovery, reimbursement rights, contribution

claims, indemnity rights, exoneration rights, alter-ego claims, tax claims, regulatory

violations by any governmental entity, decrees of any court or foreign or domestic

governmental entity, charges of any kind or nature, debts arising in any way in

connection with any agreements, acts, or failures to act, obligation claims, demands,

guaranties, contractual or other commitment rights and claims, and all other matters of

any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

unperfected, allowed or disallowed, contingent or non-contingent, liquidated or

unliquidated, matured or unmatured, material or non-material, disputed or

undisputed, whether arising prior to or subsequent to the commencement of the

Debtors' Chapter 11 Case, and whether imposed by agreement, understanding, law,

equity or otherwise, including claims otherwise arising under any theory, law or

doctrine of successor liability or related theories, as well as any and all "claims" as that

term is defined and used in the Bankruptcy Code, including section 101(5) thereof (all of

the foregoing, collectively, "Claims"), (ii) Liens (as defined in the Stalking Horse

Agreement), including, without limitation, the DIP Liens, any other liens arising under

or set forth in any DIP Loan Document (each of the foregoing, as defined in the Final

DIP Order), and any other Liens on or against the Visa/MC Litigation Claim, arising

prior to the Closing Date (the "Liens"), with such Liens to attach to the proceeds of the

Sale Transaction in the order of their priority, with the same validity, force and effect

which they now have as against such Visa/MC Litigation Claim, and (iii) to the

maximum extent permitted by law, any other interests within the meaning of section

363(f) of the Bankruptcy Code.

6.     Following the Closing, the Debtors and the Buyer are authorized to

file a certified copy of this Order, which, once filed, registered or otherwise recorded,

shall at the time of the Closing constitute conclusive evidence of the release of all Liens and Claims of any kind or nature whatsoever with respect to the Visa/MC Litigation Claim being transferred at the Closing. On the Closing Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the applicable Visa/MC Litigation Claim transferring good and marketable title in and to such Visa/MC Litigation Claim in accordance with the Stalking Horse Agreement.

7. At the Closing, all of the Debtors' legal, equitable, and beneficial right, title and interest in and to, and possession of, the respective Visa/MC Litigation Claim being transferred at such Closing shall be immediately vested in the Buyer pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Liens and Claims. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Visa/MC Litigation Claim and shall vest the Buyer with good and marketable title to the Visa/MC Litigation Claim. All persons or entities, presently, or on or after each Closing, in possession of some or all of the respective Visa/MC Litigation Claim being transferred are directed to surrender possession of such Visa/MC Litigation Claim directly to the Buyer or its designees on the Closing or at such time thereafter as the Buyer may request.

8. The Buyer is hereby authorized in connection with the consummation of the Sale Transaction to assign, transfer, allocate, or otherwise dispose of any of the Visa/MC Litigation Claim to and among its affiliates, designees, assignees, and/or successors (i) in a manner as it, in its sole discretion, deems appropriate and

(ii) with all of the rights and protections accorded under this Order and the Stalking Horse Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

9. This Order: (a) shall be effective as a determination that, as of the Closing, (i) no Liens or Claims with respect to any of the Visa/MC Litigation Claim will be capable of being asserted against the Buyer or any of its direct assets (including such Visa/MC Litigation Claim), (ii) each of the Visa/MC Litigation Claim shall have been transferred to the Buyer free and clear of all Liens and Claims, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Agreement, provided that nothing herein shall relieve any entity of the obligation to pay filing fees required to be paid under non-bankruptcy law.

10. All persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Liens or

Claims of any kind or nature whatsoever arising under or out of, in connection with, or in any way relating to, the Visa/MC Litigation Claim or the Chapter 11 Cases are, as of the Closing Date, forever barred, estopped, and permanently enjoined from asserting such Liens or Claims against the Buyer, its successors or assigns, or the Visa/MC Litigation Claim.  Following the Closing, no holder of any Lien or Claim shall interfere with the Buyer's title to the Visa/MC Litigation Claim transferred in connection with the Closing based on or related to any such Lien or Claim, or based on any action the Debtors may take in its Chapter 11 Case.

11.    Each person or entity that has filed financing statements or other documents or agreements evidencing Liens or Claims on or against any of the Visa/MC Litigation Claim shall use commercially reasonable efforts to deliver to the Debtors and the Buyer prior to the Closing of the Sale Transaction in proper form for filing, and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all such Liens and Claims on or against any of the Visa/MC Litigation Claim.   If any person or entity that has filed financing statements or other documents or agreements evidencing Liens or Claims on or against any of the Visa/MC Litigation Claim shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing, and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all such Liens and Claims, then only with regard to the Visa/MC Litigation Claim that are purchased by the Buyer in connection with the Closing, and pursuant to the Stalking Horse Agreement and this Order:  (a) the Debtors and the Buyer are hereby authorized to

15

execute and file such statements, instruments, releases, and other documents on behalf

of the person or entity with respect to any of the Visa/MC Litigation Claim;  (b) the

Buyer is hereby authorized to file, register or otherwise record a certified copy of this

Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive

evidence of the release of all such Liens and Claims against the Buyer and the Visa/MC

Litigation Claim;  and (c) the Buyer may seek in this Court or any other court to compel

appropriate parties to execute termination statements, instruments of satisfaction, and

releases of all such Liens and Claims with respect to the any of the Visa/MC Litigation

Claim.  This Order is deemed to be in recordable form sufficient to be placed in the

filing or recording system of each and every federal, state, or local government agency,

department, or office.  Notwithstanding the foregoing, the provisions of this Order

authorizing the sale and assignment at the Closing of the Visa/MC Litigation Claim free

and clear of Liens and Claims shall be self-executing, and neither the Debtors nor the

Buyer shall be required to execute or file releases, termination statements, assignments,

consents, or other instruments to effectuate, consummate, and implement the

provisions of this Order.

           12.    All persons and entities are hereby forever prohibited and

permanently enjoined from taking any action to adversely affect or interfere with the

ability of the Debtors to transfer the Visa/MC Litigation Claim in accordance with the

Stalking Horse Agreement and this Order;  provided, however, that the foregoing

restriction shall not prevent any party from appealing this Order in accordance with

applicable law or opposing any appeal of this Order.

**No Successor or Transferee Liability**

13. The Buyer is not and shall not be deemed a successor to the Debtors or any of the other Debtors as a result of the consummation of the Sale Transaction.

14. The Buyer shall not have any responsibility for any liability or other obligation of the Debtors or any of the other Debtors, whether known or unknown, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including under any law or theory of successor or vicarious liability, antitrust law, environmental law, foreign, federal, state or local revenue law, or products liability law. Without limiting the generality of the foregoing, the Buyer shall not be liable for any liabilities, debts, or obligations on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the ownership of the Visa/MC Litigation Claim prior to the Closing (all liabilities described in paragraphs 14 and 15 of this Order, "Successor or Transferee Liability").

15. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, or its assets (including the Visa/MC Litigation Claim), with respect to any (a) Lien or Claim or (b) Successor or Transferee Liability, in each case, relating to the Visa/MC Litigation Claim, including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating,

perfecting or enforcing any Lien or Claim; (iv) asserting any setoff, right of

subrogation, or recoupment of any kind; or (v) commencing or continuing any action,

in any manner or place, that does not comply with, or is inconsistent with, the

provisions of this Order or other orders of this Court, or the agreements or actions

contemplated or taken in respect hereof.

**Good Faith**

16.     The Buyer has acted without collusion, in good faith in undertaking

the Sale Transaction contemplated by the Stalking Horse Agreement.  The Sale

Transaction may not be avoided, nor may any costs or damages be imposed, under 11

U.S.C. § 363(n) and the Buyer is entitled to all of the protections afforded by Bankruptcy

Code section 363(m).

**Other Provisions**

17.     The terms and provisions of the Stalking Horse Agreement and this

Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors

and their respective affiliates and subsidiaries, successors and assigns, their estates, and

their creditors, the Buyer, and its affiliates, successors and assigns, and any affected

third parties including, but not limited to, all persons asserting Liens or Claims on or

against the Visa/MC Litigation Claims to be sold to the Buyer pursuant to the Stalking

Horse Agreement, notwithstanding any subsequent appointment of any trustee(s),

examiner with expanded powers, or other responsible person or officer under any

chapter of the Bankruptcy Code, as to which persons such terms and provisions

likewise shall be binding.  Nothing contained in any chapter 11 plan confirmed in any

18

of the Debtors' Chapter 11 Cases, any order confirming any such chapter 11 plan, any order approving wind-down or dismissal of any of the Debtors' Chapter 11 Cases or any subsequent chapter 7 cases, or any other order of any type or kind entered in the Debtors' Chapter 11 Cases shall conflict with or derogate from the provisions of the Stalking Horse Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Stalking Horse Agreement and such future plan or order, the terms of this Order and the Stalking Horse Agreement shall control.

18.     The Stalking Horse Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Stalking Horse Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

19.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective and enforceable immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rule 6004(h).  Time is of the essence in closing the sale, and the Debtors and the Buyer intend to close the sale as promptly as practicable following entry of this Order in accordance with the terms of the Stalking Horse Agreement.

20.     The provisions of this Order and the Stalking Horse Agreement are

nonseverable and mutually dependent.  The provisions of this Order shall be self-

executing.

21.     The requirements set forth in Local Bankruptcy Rule 9013-1(b) are

satisfied by the contents of the Motion.

22.     The failure to specifically include any particular provisions of the

Stalking Horse Agreement in this Order shall not diminish or impair the effectiveness of

such provision, it being the intent of the Court that the Stalking Horse Agreement be

authorized and approved in its entirety;  provided, however, that this Order shall

govern if there is any direct conflict, and only to the extent of such conflict, between the

Stalking Horse Agreement (including all ancillary documents executed in connection

therewith) and this Order.

23.     Notwithstanding anything to the contrary contained herein, any

authorizations granted hereunder, and the disposition of any and all proceeds obtained

by the Debtors pursuant to the Sale Transaction, shall be subject to any applicable

requirements imposed on the Debtors under the *Final Order Pursuant to 11 U.S.C*

*Sections 105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of*

*Bankruptcy Procedure (I) Authorizing Incurrence by the Debtors of Postpetition Secured*

*Indebtedness, (II) Granting Liens, (III) Authorizing Use of Cash Collateral by the Debtors and*

*Providing for Adequate Protection, and (IV) Modifying the Automatic Stay* [Docket No. 298]

(the "Final DIP Order") and the other DIP Loan Documents (as defined in the Final DIP

Order);  provided, however, that nothing contained in this paragraph, the Final DIP

Order or the DIP Loan Documents shall affect the Debtors' obligation to pay any

amounts due on account of the Break-up Fee pursuant to the terms of the Stalking

Horse Agreement to the extent such amounts become due and payable pursuant to the

terms of the Stalking Horse Agreement.

24.     Nothing in this Order or the Stalking Horse Agreement releases,

nullifies, precludes or enjoins the enforcement of any liability arising after the date of

entry of this Order to a governmental unit under police and regulatory statutes or

regulations (including but not limited to environmental laws or regulations), and any

associated liabilities for penalties, damages, cost recovery, or injunctive relief that any

entity would be subject to as the owner, lessor, lessee, or operator of property that is the

subject of the Sale Transaction.  Nothing in this Order or the Asset Purchase Agreement

authorizes the transfer to the Buyer of any licenses, permits, registrations, or

governmental authorizations and approvals without the Buyer's compliance with all

applicable legal requirements under non-bankruptcy law governing such transfers.

25.     This Court shall retain exclusive jurisdiction to, among other

things, interpret, enforce, and implement the terms and provisions of this Order and the

Stalking Horse Agreement, including all amendments thereto, any waivers and

consents thereunder, and of each of the agreements executed in connections therewith

in all respects, and to adjudicate, if necessary, any and all disputes concerning or

relating in any way to the Sale Transaction.  This Court retains jurisdiction to compel

delivery of the Visa/MC Litigation Claim, to protect the Buyer and its assets, including

the Visa/MC Litigation Claim, against any Claims, Liens, and Successor or Transferee

Liability and to enter orders, as appropriate, pursuant to sections 105 or 363 (or other

21

applicable provisions) of the Bankruptcy Code necessary to transfer the Visa/MC

Litigation Claim to the Buyer.

Dated:   New York, New York
          February 23, 2018

                              */s/ Sean H. Lane*
                              HONORABLE SEAN H. LANE
                              UNITED STATES BANKRUPTCY JUDGE

# CLAIM PURCHASE AGREEMENT

THIS CLAIM PURCHASE AGREEMENT ("Agreement") is made and entered into this 12th day of February, 2018, by and between Optium Fund 2 LLC, a Delaware limited liability company ("Purchaser"), and ARO Liquidation, Inc. ("Parent Seller") and each of the other affiliated entities of Parent Seller listed on Exhibit C to this Agreement ("Affiliated Sellers" and, collectively, together with Parent Seller, the "Sellers").  Purchaser and Sellers are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.     Each Seller is a class member in, and a potential beneficiary of, the class action lawsuit known as In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein or in which the same claims are alleged (the "Litigation" and the district court presiding over the Litigation is referred to as the "District Court").  Any capitalized term used but not defined in this Agreement shall have the meaning given to such term in the Litigation filings.

B.     As a member of the plaintiff class (the "Class") in the Litigation, each Seller has a claim for damages (the "Claim") against the defendant or defendants in the Litigation (the "Defendants") that is more particularly described on Exhibit A to this Agreement.  Sellers may be entitled to a monetary or other recovery with respect to the Claim upon the occurrence of any of the following events (each, a "Settlement Event"):  a final non-appealable judgment in favor of the plaintiffs or a voluntary final settlement or other final non-appealable disposition of the Litigation in favor of the plaintiffs.  Whether such recovery will occur may be unknown by Sellers and Purchaser at the time of this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1     The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1 <u>Sale and Purchase of Claim</u>.

(a) Purchaser agrees to purchase all right, title and interest in each Claim from each Seller, and each Seller agrees to sell, transfer and assign all right, title and interest in each Claim to Purchaser for the aggregate sum of One Million, Three Hundred and Thirty Thousand Dollars ($1,330,000.00) ("Purchase Price"), such Purchase Price to be delivered by Purchaser to the Parent Seller (only) for the further benefit of all Sellers.

(b) Each Seller acknowledges and agrees that the sale, transfer and assignment of each Claim to Purchaser includes, without limitation, the sale, transfer and assignment to Purchaser of all of each Seller's direct and indirect rights, title and interest in and to the following:

(1) all agreements, instruments, invoices, purchase orders, proofs of delivery, correspondence (including, without limitation, correspondence with the District Court), counsel appointed for the Class ("Class Counsel") or the claims administrator appointed in the Litigation (the "CA")), and other documents (whether now existing or hereafter arising) evidencing, creating, relating or referred to in, the Claim (collectively, the "Claim Documents");

(2) all interest, fees, payments, credits, coupons, reimbursements or rights thereto or other distributions in any form whatsoever (whether cash, securities, instruments, or other property) made or to be made on account of or in respect of the Claim or distributions issued in respect or satisfaction of the Claim and any proceeds of any of the foregoing;

(3) all other claims, suits, causes of action, and other rights of any Seller or any predecessor in interest to any Seller, whether known or unknown, against the Defendants or any other party relating to or arising from or in connection with the Claim or the Claim Documents; and

(4) all of any Seller's right to receive any payment, distribution or proceeds in respect of, or in connection with, any of the foregoing; and, all of the foregoing items collectively being defined as the "Transferred Rights".

(c) From and after the Closing Date (as defined below), Purchaser shall be deemed to be the owner of each Claim and the Transferred Rights, and shall be entitled to identify itself as the owner of each Claim and the Transferred Rights for all purposes, and after the Closing no Seller shall identify itself as the owner of any Claim or the relevant Transferred Rights or object in any forum, including, without limitation, any court hearing in any Litigation, to the terms of this Agreement or the sale and purchase contemplated hereby. The Parties acknowledge that the benefit of the bargain under this Agreement is, without

2

limitation, the transfer of the full value of each Claim and the relevant Transferred Rights.

2.2   <u>Bankruptcy Court Approval</u>.

(a)   Purchaser and Sellers acknowledge that this Agreement and the transactions contemplated hereby are subject to the approval of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the entry by the Bankruptcy Court of a final order approving the transaction contained in the Agreement and affording Purchaser the protections under section 363 of the Bankruptcy Code as a good faith purchaser (the "Approval Order") and Sellers' obligation and Purchaser's obligation to consummate the transaction contemplated hereunder is subject to approval by the Bankruptcy Court.

(b)   If the Approval Order is not obtained within ninety (90) days after the Effective Date, then unless otherwise agreed in writing by Purchaser and Sellers, this Agreement will automatically terminate.

2.3   <u>Closing</u>.   The transaction contemplated by this Agreement will be consummated at a closing as follows:

(a)   The closing of the purchase and sale of each Claim ("Closing") will take place on or before the 15th day following the entry of the Approval Order.   The date and time the Closing actually occurs are referred herein to as the "Closing Date".   The Closing will be effective as of 12:01 a.m., Eastern Time, on the Closing Date.

(b)   Provided that each Seller has executed and delivered to Purchaser this Agreement, all known Claim Documents in its possession and a Notice of Assignment in the form attached hereto as Exhibit B to this Agreement, Purchaser shall pay to Parent Seller, on behalf of each Seller, at the Closing an amount equal to the Purchase Price in immediately available funds by wire transfer to a bank account to be designated by Parent Seller no later than the second business day prior to the Closing Date.

2.4   <u>Cooperation, etc</u>.   Each Seller understands and acknowledges that, if and to the extent that Purchaser is not in its reasonable judgment fully recognized as the owner of the Claim from and after the Closing Date by the CA, Purchaser may require any such Seller's assistance, and each Seller agrees to provide such assistance to Purchaser, as may be necessary for the prosecution and collection of the Claim as further provided in this Agreement.   Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect of the Claim. Purchaser has not, and shall not, assume or in any way become liable for any obligation or liability relating to the Claim or any Seller.

**SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLERS**

3

Each Seller represents and warrants to Purchaser as of the date of this Agreement and as of the Closing Date as follows:

3.1     <u>Organization; Authorization; Etc</u>. Each Seller is duly organized, validly existing and (if relevant) in good standing under the laws of the state of its incorporation or other organization. Each Seller has the requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby, and the transfer of any Claim pursuant to this Agreement will not constitute a violation of (i) any law, regulation or order, (ii) the relevant Seller's certificate of incorporation or by-laws or other organizational documents, or (iii) any instrument or agreement to which the relevant Seller is a party or by which such Seller may be bound. This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of each Seller, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity. The Parent Seller has the requisite power and authority to execute this Agreement on behalf of the Affiliated Sellers listed in Exhibit C to this Agreement.

3.2     <u>No Litigation</u>. There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry pending or, to the best knowledge of each Seller, threatened against any Seller or any of its affiliates or concerning any Claim that could prevent or prohibit any such Seller from selling any Claim or from otherwise complying in full with the provisions of this Agreement or prevent Purchaser from receiving the benefits of any Claim and the relevant Transferred Rights.

3.3     <u>Title to Claims; No Liens</u>. Each Seller has good, valid and marketable title to any Claim and the relevant Transferred Rights and it is selling each such Claim and the relevant Transferred Rights free and clear of any mortgage, pledge, lien, security interest, claim, set-off or encumbrance of any kind or nature. Neither any Seller nor any of such Seller's affiliates has transferred any Claim or any related Transferred Rights or any interest therein except to Purchaser hereunder. The Sellers listed on the signature pages hereto include all direct or indirect subsidiaries of and other entities affiliated with Parent Seller that own any Claim. No Settlement Event has occurred and neither any Seller nor any of such Seller's affiliates has received any payment or distribution in connection with any Claim.

3.4     <u>Rule 23</u>. The Litigation is a valid class action certified pursuant to Rule 23 of the Federal Rules of Civil Procedure and each Seller is, and has taken all action necessary to be included as, a member of the Class as defined in the order certifying the Class for purposes of the Litigation and has never attempted to (and shall never) opt out of the Class.

3.5     <u>No Bad Acts</u>. Each Seller has a valid factual and documentary basis for the Claim and neither any Seller nor any of its relevant affiliates has engaged in any acts, conduct or omissions or had or will have any relationship with the Defendants or any of their

4

respective affiliates that might result in any Seller receiving in respect of any Claim or the relevant Transferred Rights proportionately less payments or distributions, or any other less favorable treatment (including the timing of payments or distributions) with respect to any Claim or the relevant Transferred Rights, than is received by any other member of the Class.

3.6     <u>Filing Service</u>.  No Seller has engaged a filing service for the Litigation or the Claim except for Claimco LLC, dba Spectrum Settlement Recovery ("Spectrum").  An order was entered by the Bankruptcy Court on February 2, 2018 approving the rejection of the contract between the Sellers and Spectrum.

3.7     <u>Information Provided to Purchaser</u>.  Each Seller has provided to Purchaser all material information about the Claim and all such information is true, correct and complete.  Each Seller has also provided to Purchaser originals or true, accurate and complete copies of all material Claim Documents.  Other than as evidenced by the Claim Documents, no Seller has had any communications regarding the Litigation with the District Court, Lead Counsel, the CA or any other entity involved in the Litigation.

3.8     <u>No Reliance</u>.  Each Seller is a sophisticated party that has conducted its own independent evaluation of the transactions contemplated by this Agreement and has made its own independent decision (based on its own judgment and upon advice from such advisers as it has deemed necessary) to sell the Claim for the relevant amount included in the aggregate Purchase Price upon the terms and conditions set forth in this Agreement. With the exception of the specific representations and warranties set forth in Section 4 of this Agreement, no Seller is relying on (i) any information provided to such Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, representatives, agents or affiliates or (ii) any information provided to such Seller by Purchaser or its respective shareholders, officers, directors, employees, representatives, agents or affiliates in assessing the reasonableness of the Purchase Price or the other terms of this Agreement.

3.9     <u>Excluded Information</u>.  Each Seller, for itself and its affiliates, acknowledges that (i) Purchaser may currently have, and may later come into possession of, information relating to any Claim, the relevant Transferred Rights, the Litigation or the Defendants that is not known to such Seller and that may be material to a decision to buy or sell any Claim and the relevant Transferred Rights (the "<u>Excluded Information</u>"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of each Claim and the relevant Transferred Rights hereunder without receiving the Excluded Information, and (iii) Purchaser shall have no liability to it, and each Seller waives and releases any claims that it might have against Purchaser or Purchaser's members, shareholders, officers, directors, employees, representatives, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; <u>provided</u>, <u>however</u>, that, in each case, the Excluded Information shall not and does not affect either the truth or accuracy of Purchaser's representations and

warranties or any Seller's rights and remedies with respect to Purchaser's representations, warranties and covenants;

3.10 <u>Expectation of Return</u>. Each Seller acknowledges that Purchaser has entered into this Agreement for investment purposes, and Purchaser's intention and expectation in entering into this Agreement is to earn a positive financial return on each Claim and the relevant Transferred Rights. Each Seller understands that Purchaser's recovery on any Claim and the relevant Transferred Rights may exceed the relevant portion of the aggregate Purchase Price or collectively the Purchase Price.

3.11 <u>No Fiduciary Relationship</u>. Each Seller acknowledges that such Seller and Purchaser are not in a fiduciary, agency or other special relationship.

3.12 <u>OFAC</u>. Neither any Seller nor any affiliate of any Seller, nor, to the best knowledge of any Seller, any director, officer, agent, employee or affiliate of any such Seller or any of its affiliates is currently subject to any U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC").

3.13 <u>AML Matters</u>. The operations of each Seller and its respective affiliates are and have been conducted at all times in compliance with applicable financial recordkeeping and reporting requirements of the Currency and Foreign Transactions Reporting Act of 1970, as amended, the anti-money laundering statutes of all applicable jurisdictions, the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "Anti-Money Laundering Laws"); and no action, suit or proceeding by or before any court or governmental agency, authority or body or any arbitrator involving any such Seller or any of its respective affiliates with respect to the Anti-Money Laundering Laws is pending or, to the best knowledge of such Seller, threatened.

3.14 <u>No Defenses or Setoff</u>. To each Seller's knowledge, the Claims and other Transferred Rights are not subject to any defense, claim or right of setoff, recoupment, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by any party. Each Seller has no obligation or liability related to or in connection with the Claim or the Litigation, and has not effected and will not effect any netting, set-off, recoupment or other recovery of all or any portion of the Claim against any claim or obligations owed to the Defendants in the Litigation or any of their affiliates.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to each Seller as follows:

4.1     <u>Organization; Authorization; Etc</u>.  Purchaser is duly organized, validly existing and (if relevant) in good standing under the laws of the state of its incorporation or other organization.  Purchaser has the requisite power and authority to purchase the Claim from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.2     <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or, to the best knowledge of Purchaser, threatened against Purchaser that could prevent or prohibit Purchaser from purchasing any Claim or from otherwise complying in full with the provisions of this Agreement.

4.3     <u>Purchaser Solvent</u>.  That Purchaser is solvent and the funds to pay the Purchase Price will be available at Closing.

4.4     <u>No Reliance</u>.  Purchaser is a sophisticated party that has conducted its own independent evaluation of the transactions contemplated by this Agreement and has made its own independent decision to purchase the Claims for the Purchase Price upon the terms and conditions set forth in this Agreement.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by any Seller or its respective agents or affiliates, or (ii) any information provided to Purchaser by any Seller or its respective agents or affiliates.

4.5     Disclaimers. PURCHASER SHALL BE DEEMED TO BE SATISFIED WITH AND/OR TO HAVE ACCEPTED THE CLAIM AND OBLIGATIONS ARISING FROM AND AFTER CLOSING, "AS IS", "WHERE IS"

4.6     <u>Excluded Information</u>.  Purchaser acknowledges that, except as otherwise provided herein, (i) any Seller may come into possession of, information relating to the Claim, the Transferred Rights, the Litigation or the Defendants that is not known to Purchaser and that may be material to a decision to buy or sell any Claim and the relevant Transferred Rights (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Claim and the Transferred Rights hereunder without receiving the Excluded Information, and (iii) no Seller shall have any liability to it, and Purchaser waives and releases any claims that it might have against each Seller or such Seller's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information;

7

provided, however, that, in each case, the Excluded Information shall not and does not affect either the truth or accuracy of any such Seller's representations and warranties or Purchaser's rights and remedies with respect to any Seller's representations, warranties and covenants;

4.7    No Fiduciary Relationship.  Purchaser acknowledges that no Seller and Purchaser in a fiduciary, agency or other special relationship.

## SECTION 5 - COVENANTS OF SELLERS

Each Seller covenants to Purchaser as follows:

5.1    Further Assurances.  Each Seller agrees at its own expense to (a) provide, duly execute or deliver (as the case may be), or cause to be provided, duly executed or delivered (as the case may be), to Purchaser such further information, documents and instruments reasonably available to it or under its possession, custody or control and (b) do and cause to be done such further acts, in each case as may be reasonably necessary to (1) give effect to the transfer of the Claims and the Transferred Rights contemplated by this Agreement, and/or (2) permit recovery on the Claims and the Transferred Rights; without limitation, this shall include causing any other direct or indirect subsidiary or controlled affiliate of the Parent Seller to enter into a counterpart of this Agreement as a Seller hereunder to the extent any such entity owns any Claims, and to cause any such entity to comply with the related obligations hereunder as if such entity entered into this Agreement as a Seller as of the date hereof.  Without limitation, each Seller shall or shall cause its affiliates to use all commercially reasonable efforts, without undue delay, to obtain or consent to and direct its counterparties to obtain and deliver to Purchaser information relating to the amount and / or validity of any Claims or Transferred Rights, and shall use all commercially reasonable efforts to provide such other support of the validity and amount of the Claims and the Transferred Rights as Purchaser may request; provided, that Purchaser shall bear the reasonable out of pocket costs associated with the obtaining and delivery of such information or other actions required by this sentence.

5.2    Waiver of Claims; Agreement Not To Sue.  To the maximum extent permitted by law, each Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement or the transactions contemplated hereby or thereby based on an assertion that: (i) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (ii) the value and scope of any Claim, alone or in the aggregate, exceeds the Purchase Price.  Each Seller agrees not to commence or maintain any suit against Purchaser or any of its members, shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement or the transactions contemplated hereby, whether at law or in equity, based on a claim that: (i) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (ii) the value and scope of any Claim, alone or in the aggregate, exceeds the Purchase Price.

8

5.3 <u>Proxy and Attorney-in-fact</u>. To the extent Purchaser is not recognized by the CA as the owner of the Claims and the Transferred Rights as contemplated by this Agreement, each Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact and authorizes Purchaser to act in such Seller's name, place and stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claims and other Transferred Rights and to do all things necessary to enforce the Claims or any portion thereof and each Seller's rights hereunder or thereunder or related hereto or thereto. Each Seller agrees that the powers granted by this paragraph are discretionary and that Purchaser may exercise or decline to exercise such powers at Purchaser's sole option. Purchaser shall have no obligation to take any action to prove or defend the validity or amount of any Claim in any litigation (including the Litigation) or bankruptcy case. Each Seller agrees that it shall take no action whatsoever in respect of or in connection with the Claims or the Transferred Rights or any portion thereof without Purchaser's express consent, unless such action is expressly contemplated by this Agreement.

5.4 <u>Distributions and Notices</u>. Each Seller agrees that in the event such Seller shall receive payments, distributions or notices with respect to or relating to the Claims or the Transferred Rights at any time, such Seller shall accept the same as Purchaser's agent and shall hold the same in trust on behalf of and for the sole benefit of Purchaser, and shall promptly deliver the same forthwith to Purchaser in the same form received within two Business Days in the case of cash, within three Business Days in the case of securities (which shall be in good deliverable form, with the endorsement of any such Seller when necessary or appropriate) and within one Business Day in the case of any notice. In the event any Seller fails to deliver any payment or distribution to Purchaser within the relevant period from such Seller's receipt, such Seller shall be obligated to pay Purchaser interest on such payment or distribution (in the case of securities the value of each such security shall be the closing price as reported on the national securities exchange on which the security is listed or the average of the bid and ask price as reported on the automated inter-dealer quotation system on which the security is traded or such other value as Purchaser may reasonably determine) at the per annum rate of 10% (the "Interest Rate"), from the date of such Seller's receipt to the date of Purchaser's receipt.

5.5 <u>Indemnification</u>. The purchase of the Claim is made without recourse to any Seller, provided, however that each Seller agrees to indemnify, reimburse and hold harmless Purchaser from all costs, expenses, losses, damages and liabilities, including, without limitation, reasonable attorneys' fees and expenses and whether or not arising out of any third party claim, which arise out of or result from or in connection with (a) any breach or inaccuracy in any of the Sellers representations, warranties, or covenants set forth herein; or (b) any failure to vest in Purchaser any Seller's (or any herein listed affiliate's or subsidiary's) right, title and interest in and to the Claims and the Transferred Rights. Nothing herein shall in any way limit any claim for fraud or intentional misrepresentation or misconduct.

5.6 <u>Remedy for Disallowed Purchase</u>. If the purchase of a Claim is disallowed, for any reason, following the payment of the Purchase Price, the Purchaser has the option of

9

(i) recovering from future recoveries from the Litigation an amount equal to the sum of the Purchase Price plus interest accrued at an annual rate of 10% ("Interest Payment"); or (ii) directing Seller, in which event Seller agrees to pursue the Claim as directed by and at the sole cost of Purchaser, and to remit to the Purchaser all amounts actually received by Seller as a result of its pursuit of the Claim. The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Purchaser.

## SECTION 6 - GENERAL

6.1     <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, the remainder of this Agreement shall continue in full force and effect without said provision, and any such provision shall be construed to be enforceable to the maximum extent permitted under applicable law for the benefit of the party arguing against the treatment of such provision as illegal, unenforceable or void.

6.2     <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred in negotiating, preparing, executing and performing this Agreement.

6.3     <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Claims and supersedes any and all prior representations, warranties, agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Claims.

6.4     <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Purchaser and Seller Parent.

6.5     <u>Governing Law</u>.  This agreement shall be governed by and construed in accordance with the laws of the state of California.  Each Party hereto irrevocably and unconditionally consents to the jurisdiction of the courts located in the state of California and county of Orange and of the United States district court for the Central District of California (Southern Division) for any action to enforce, interpret or construe any provision of this agreement, and also irrevocably waives any defense of improper venue or forum non conveniens to any such action brought in those courts and waives any right to demand trial by jury.  Each Party consents to service of process by certified first class mail at such Party's address listed below. Notwithstanding the above, the Bankruptcy Court shall have exclusive jurisdiction to consider any disputes arising from or related to the Approval Motion and the Approval Order.

**6.6     <u>Jury Trial Waiver</u>.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement. The Parties agree that any such action or proceeding shall be tried before a court and not a jury.**

6.7     Reliance on Representations.  Reliance by a Party on a representation or warranty of any other Party shall not be affected in any way by information such Party possesses as the result of the delivery of documents and information by any other Party in accordance with the terms of this Agreement or otherwise or by any other person or entity.

6.8     Assignment.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of and be enforceable by Purchaser and its successors and assigns.  Sellers acknowledge that Purchaser may at any time sell, transfer, assign or sub-participate the Claims and the Transferred Rights, together with all right, title and interest of Purchaser in and to this Agreement, in whole or in part, without the consent of or notice to Sellers. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and any such sale, transfer, assignment or participation of all or any portion of the Claims and the Transferred Rights.  Any successors, transferees or assigns of the Purchaser shall be entitled to enforce the rights of the Purchaser under this Agreement as if such person or entity were the Purchaser, and any such transferee or assignee is an intended beneficiary of this Agreement. Notwithstanding anything herein to the contrary, Sellers may not transfer or assign their obligations under this Agreement and any purported assignment of those obligations shall be void ab initio.

6.9     Confidentiality.  Each Party agrees that, without the prior written consent of the Parent Seller or the Purchaser, as the case may be, it shall not disclose the contents or existence this Agreement to any other person (other than affiliates); provided, however, that any Party may make any such disclosure: (a) to the extent required to do so by any law, court, regulation or legal process, (b) to give effect to the transfer of the Claims and other Transferred Rights contemplated by this Agreement, (c) to its professional advisors, auditors, representatives and other service providers as reasonably necessary to effect the transfer of the Claims; or (d) to any governmental authority having or asserting jurisdiction over it; and provided further that Purchaser and its affiliates may make such disclosure to any potential assignees, purchasers, sellers, transferees, counterparties or participants.  Notwithstanding the foregoing, Seller agrees that Purchaser or Purchaser's affiliates may disclose Seller's identity and the Purchase Price to prospective sellers in an effort to promote Purchaser's business.

6.10    Headings.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.11    Counterparts.  This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

6.12 <u>Voluntary Execution of Agreement</u>. This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.13 <u>Notices</u>. All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered by hand or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser: | If to any Seller: |
|---|---|
| Optium Fund 2 LLC | _____ |
| 610 Newport Center Drive | _____ |
| Suite 610 | _____ |
| Newport Beach, CA 92660 | _____ |
| Attention: Chief Executive Officer | _____ |
| nkornswiet@optiumcapital.com | Attention: |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein. Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

**Signature Page Follows.**

12

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.


OPTIUM FUND 2, LLC                          ARO LIQUIDATION, INC.




By _____        By _____
Name: Neil B. Kornswiet                     Name:
Title:   Chief Executive Officer            Title:

16-11275-shl Doc 1682 Filed 02/23/18 Entered 02/23/18 09:50:04 Main Document Pg 86 of 38

## Claim Purchase Agreement

Capitalized terms shall have the meanings set forth in the related Claim Purchase Agreement.

In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein.

The sale, transfer and assignment of each Claim to Purchaser includes, without limitation, the sale, transfer and assignment to Purchaser all of each Seller's direct and indirect rights, title and interest in and to the following:

(1)  all agreements, instruments, invoices, purchase orders, proofs of delivery, correspondence (including, without limitation, correspondence with the District Court), counsel appointed for the Class ("Class Counsel") or the claims administrator appointed in the Litigation (the "CA")), and other documents (whether now existing or hereafter arising) evidencing, creating, relating or referred to in, the Claim (collectively, the "Claim Documents");

(2)  all interest, fees, payments, credits, coupons, reimbursements or rights thereto or other distributions in any form whatsoever (whether cash, securities, instruments, or other property) made or to be made on account of or in respect of the Claim or distributions issued in respect or satisfaction of the Claim and any proceeds of any of the foregoing;

(3)  all other claims, suits, causes of action, and other rights of any Seller or any predecessor in interest to any Seller, whether known or unknown, against the Defendants or any other party relating to or arising from or in connection with the Claim or the Claim Documents; and

(4)  all of any Seller's right to receive any payment, distribution or proceeds in respect of, or in connection with, any of the foregoing;

all of the foregoing, collectively being defined as the "Transferred Rights".

Exhibit 38
to

**Claim Purchase Agreement**

# NOTICE OF ASSIGNMENT

ARO Liquidation, Inc. (the "Company") and Optium Fund 2 LLC (the "Assignee") have entered into a Claim Purchase Agreement dated _____, 201_ (the "Agreement"). Pursuant to that Agreement, the Company and its Affiliated Sellers as set forth in Exhibit C to the Agreement (collectively, the "Company Sellers") have irrevocably assigned and transferred to Assignee all of the their rights, title and interest in, to, or connected in any manner with, any settlement, judgment or recovery of funds or other consideration (collectively, "Settlement Funds") arising from the litigation entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein or in which the same claims are alleged (the "Litigation"). Assignee is now the legal and equitable owner of all rights, title and interest associated with the Settlement Funds and the Litigation and you should deal directly with Assignee (or its duly appointed agents) on all matters regarding the Settlement Funds or the Litigation. In particular, the rights assigned and transferred by the Company Sellers to Assignee include, but are not limited to, the right to: (1) file, modify, compromise or amend a claim in connection with the Litigation; (2) communicate and receive communications from the Court, claims administrator, class counsel or other interested parties with respect to the Litigation; (3) receive Settlement Funds; and (4) challenge and/or negotiate the amount of Settlement Funds to be paid to Assignee in connection with the Litigation. All of the Company Sellers' third party service providers and counterparties are directed to provide Assignee with any and all of the Company Sellers' transactional information, sales information, purchase information, and other information requested by Assignee.

From this date forward, all payments of Settlement Funds shall be directed to the following bank account unless the Assignee notifies you otherwise:

|  |  |
|---|---|
| Bank: | Comerica Bank |
| ABA Number: | 121137522 |
| Account Name: | Optium Fund 2 LLC Settlement Account |
| LLC Account Number: | _____ |

All communications regarding the Litigation or the Settlement Funds, should be sent to Assignee at the following address:

> Optium Fund 2 LLC
> 610 Newport Center Drive
> Suite 610
> Newport Beach, CA 92660
> Attn: Chief Executive Officer
> nkornswiet@optiumcapital.com

Date: _____, 201_

_____, ON BEHALF OF ITSELF AND THE AFFILIATED SELLERS
LISTED ON EXHBIT D TO THE AGREEMENT

By     ARO Liquidation, Inc.
Name:
Title:
Contact Details:

Case 1:05-md-01720-MKB-JAM Document 9394-6 Filed 08/20/24 Page 79 of 79 PageID #: 54585

**Exhibit C**
to
**Claim Purchase Agreement**

# Affiliated Sellers

1. ARO Liquidation, Inc.

2. ARO Liquidation West, Inc.

3. ARO Liquidation Surf Co., LLC

4. ARO Liquidation GC Management LLC

5. ARO Liquidation Procurement Company, Inc.

6. ARO Liquidation Licensing, Inc.

7. ARO Liquidation (Kids), Inc.

8. ARO Liquidation GJ LLC

9. ARO Liquidation Holdings, Inc.

10. ARO Liquidation Puerto Rico, Inc.