UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | : : : : : : : : : : : | MDL No. 1720(MKB)(JAM)<br><br>Civil No. 05-5075(MKB)(JAM)<br><br>RULE 23(b)(3) CLASS COUNSEL'S MONTHLY REPORT REGARDING THIRD-PARTY ENTITIES |
| This Document Relates To:<br><br>    ALL ACTIONS. | | |

## I. INTRODUCTION

This is the eleventh monthly report regarding third-party claims filers following the Court's request.

Rule 23(b)(3) Class Counsel ("Class Counsel") and Epiq continue to receive communications regarding third parties. This month, there were less than a dozen new communications received by Epiq and multiple communications received by Class Counsel. Calls received via the toll-free number are tracked and reported to Class Counsel from Epiq. Class Counsel also directly receives calls and emails regarding third parties that are followed up on immediately. Additionally, Class Counsel regularly searches online using various keywords to monitor what is a fluid situation. A number of contacts this month came through the conflicts process.

On August 13, 2024, the Court held a status conference. As part of that conference, some issues related to third-party claims filing companies were addressed. The Court instructed Class Counsel to bring to its attention any issues that appeared to raise issues of fraud right away, as opposed to waiting for the monthly report. Following that guidance, Class Counsel alerted the Court to an issue regarding a referral agent. The Court ordered Class Counsel and the referral partner to provide updated information in this report. That matter is addressed directly below.

Class Counsel was also directed to provide updates regarding certain communications received by the Court from class members. That is addressed in §V.

## II. CLASS COUNSEL SOUGHT AN ORDER TO SHOW CAUSE

On Thursday, August 15, 2024, Epiq alerted Class Counsel to a complaint from a class member reporting that she had received numerous messages regarding her need to file a claim using a third party. The class member provided Epiq with a series of text messages from a person named Polly Bauer (claiming to work with Brownstone Recovery Group ("Brownstone")), as well as other information regarding her claim. Those messages, detailed below, contain information that is false and/or misleading. In addition to the false statements, Class Counsel's investigation into this matter revealed a failure to provide the Court-ordered disclaimers.

Ms. Bauer's texts made the following false claims:

"Brownstone is the company that is assigned to negotiate for everybody from the Visa Settlement that had to do with the courts";

Brownstone will "go through the challenges all of the problems all the transactions we don't have access to that you don't have access to";

the class member can "see[] how much money you're gonna get" because some form was "done by hand";

told the class member "you'll get paid in January"; and

the "third-party service is the number one legal team that fights . . . interchange against the car[d] companies in the United States.

There were numerous other false statements in the communication with the class member. Further, links sent in email to the class member failed to include the Court-mandated disclaimers. The disclaimers are also missing from the texts and the email solicitations, in contravention of the Court's Order. ECF 7260.

The next day, Class Counsel wrote to Brownstone to alert them to the situation. Class Counsel detailed the false and misleading statements and asked several questions regarding the relationship between Ms. Bauer and Brownstone. Class Counsel also asked whether other Brownstone agents were providing similar false and misleading information to class members. Brownstone provided a response stating in part:

> We understand and share the concerns raised by Class Counsel regarding the recent issues with Ms. Bauer that have come to light, and we are equally disturbed by her actions. Ultimately, this situation involves a single independent agent who failed to comply with both their own referral partner's instructions and the specific guidelines provided by Brownstone Recovery.

While it appears that Brownstone has taken this issue seriously and has taken steps to limit the harm caused by Ms. Bauer's actions. The Court issued an Order on Tuesday, August 21, 2024 directing that Ms. Bauer be ordered to show cause in writing "why the Court should not issue an order enjoining her from any claims-filing or related activities relating to *In re Payment Card Interchange*

*Fee and Merchant Discount Antitrust Litigation*, No. 1:05-MD-1720 (MKB) (JAM) ("MDL 1720")." ECF 9395 at 1. The Court also ordered that Class Counsel "include in its August 27, 2024 status report any response from Bauer and an update regarding this matter, including information from Brownstone related to those contracts where Bauer is the referring entity." *Id.* at 2.

Class Counsel served both Brownstone and Ms. Bauer with the Court's order. On August 21, 2024, Ms. Bauer wrote to state that she had received Class Counsel's original August 19, 2024 letter and the Court's Order and that she was going to provide a response. After reviewing Ms. Bauer's statement, it appears she will no longer have any role in anything related to the settlement. The information Ms. Bauer provided to at least one (if not more) class member was clearly false and/or misleading. Class Counsel will continue to monitor this situation and if Ms. Bauer reengages with the settlement, Class Counsel will renew its request for an Order to Show Cause.

Class Counsel and Brownstone have also been in communication. Brownstone provided a draft letter to class members who have signed up through Ms. Bauer. The language was agreed to and on August 21, 2024 Class Counsel was blind copied on a number of emails to class members.

### A. Brownstone's Further Response

On August 21, 2024, Brownstone Recovery sent corrective emails to the nine merchants who were affected by Ms. Polly Bauer's potentially misleading statements. We received one response from this communication in which the merchant replied that they would like to cancel their contract with Brownstone Recovery. Brownstone replied to the merchant, acknowledging their request.

On August 26, 2024, Brownstone Recovery sent follow-up corrective emails to the eight merchants who did not respond. We reminded them that they could simply cancel their agreement and requested a response either way. Later in the day, we made outbound phone calls to each of the merchants to inform them of the issue and see which path they would like to take.

As of 9 am EST on August 27, 2024, of the nine affected merchants:

– 1 merchants want to cancel their contract with Brownstone Recovery

– 2 merchants still want Brownstone Recovery to file their claim

– 6 merchants have not responded

We will continue to proactively communicate with merchants regularly to determine if and how they would like to participate in the Visa/MasterCard settlement.

**B.**    **Bauer's Response**:

I would never ever knowingly mislead, misspeak or misrepresent any person, company or product. I pride myself on helping merchants.

I am writing to address the specific allegations made regarding statements forwarded to me by the court. I apologize for any confusion this may have caused. Below, I will respond to each allegation individually.

**Allegation 1**: "Brownstone is the company that is assigned to negotiate for everybody from the Visa Settlement that had to do with the courts."

**Response 1**: I thought Brownstone was the assigned organization.

**Allegation 2**: Brownstone "goes through the challenges, all of the problems, all the transactions we don't have access to that you don't have access to."

**Response 2**: I received a couple phone calls from clients asking if they can still qualify to apply if they do not have access to years of card statements.

**Allegation 3**: The class member can "see how much money you're gonna get" because some form was "done by hand."

**Response 3**: It is obvious that this communication was voice to text as I would not use the term "gonna get". Effective immediately, I have ceased using voice talk to text.

I was trying to say two different things. 1. If the merchant doesn't apply thru us, or directly with Brownstone, they will never know if they ever qualified. 2. REDACTED, is a business colleague of mine. He asked me to reach out to her and make sure she had a copy of the letter. It was clear that she was extremely busy. In respect of the application deadline at that time, We

preregistered REDACTED, knowing that no action of any kind would take place unless she agreed, completed a DocuSign and entered her EIN number.

**Allegation 4**: I told the class member "you'll get paid in January."

**Response 4**: What I meant to say was after January. I humbly apologize for this misstatement and there was no harm or misrepresentation intended.

**Allegation 5**: The "third-party service is the number one legal team that fights interchange against the card companies in the United States."

**Response 5**: I did make that statement. I sincerely apologize. I googled Brownstone website and assumed they had attorneys behind them. I was comfortable with their site. My intent was to answer REDACTED as quickly as possible because of her timeline and REDACTED and my colleague, had sent me a thank you to me for helping her. There was never, ever an intent to mislead or misrepresent. Because my mission was to provide REDACTED quality service, I responded as quickly as I saw she had reached out to me. I have researched my system and cannot locate the exact text REDACTED is referring to. I Must have deleted these texts. I knew she was not to receive calls at work, I could have responded voice to text , text or email.

Regarding the claim that some of my communications lacked the Court-mandated disclaimers, I acknowledge that I did send emails without these disclaimers. This was done without knowledge that such disclaimers were required, and there was no intent to contravene the Court's Order (ECF 7260).

In hindsight, I understand that the missing disclosure may have been incorrect or misleading. I apologize for any confusion this may have caused.

I confirm that I will no longer be involved in any claims-filing or related activities concerning MDL 1720. Effective immediately, I will cease all communications with class members and will not engage in any further actions related to this matter.

I am a 75 year old woman who still works daily and also is caregiver for my husband who had failed spine surgery. He is disabled and requires my assistance. I have been his sole caregiver for the last 3 years and this is overwhelming at times. He is disabled, has multiple medical

appointments monthly and we both have had covid and the flu over the summer. My days are extremely busy and I was clearly rushed to get answers . I apologize for any oversight on my part.

## III. MISLEADING WEBSITES

On August 21, 2024, Class Counsel received information regarding two separate issues related to the entity Certificate Clearing Corporation ("CCC"). A detailed letter was written that same day. The first issue concerned a document titled "Monetization Case Study" that falsely claimed to know the amount a class member will receive. It also falsely claimed that class members will not receive payment for five to eight years. The document also purports to promise an enhanced claim, "validated by administrator." It appeared to be a document used to value claims for claims purchasing by CCC. A representative from CCC told Class Counsel that the document was an internal document not meant to be publicly distributed and that it would not be distributed. It remains unclear how the class member received the document.

The second issue is far more problematic and concerns a website that was riddled with errors, false statements and lacking the required disclaimers. Although these issues appear to have been rectified, Class Counsel believes that CCC should be ordered to explain in writing how this happened in the first place. Specifically, Epiq received a report from a class member that asked whether they were required to use CCC to file their claim and mentioned by name a person known to be affiliated with CCC. In reviewing the information from the class member, Epiq discovered that an email the class member received included information for a website called https://swipefeesettlement.org. After further investigation by Class Counsel, additional websites were discovered.[1] The disclaimers were not present anywhere on the websites and did not appear until after someone clicked on "submit a claim" which then led to a contract sign up page with CCC. Moreover, the website was riddled with errors, false statements, invented merchants giving false

---

[1] Two other sites were found that were also highly problematic. One, paymentcardsettlements.org, was so close to the official Court-approved site that Class Counsel requested it be taken down. As discussed further herein, the site now directs to swipefeesettlement.org. The other site was swipefeesettlementclaim.com.

testimonials, and more. The misstatements were so pervasive that it was unclear whether the website could even be corrected. It appeared in large part to be written by artificial intelligence as it referred to made-up merchants, insurance policies, and other strange content. The two other websites linked to this were swipefeesettlementclaims.com and paymentcardsettlements.org that also led to contract sign ups with CCC under the "submit a claim here" button and contained the same or similar false and/or misleading content.[2] All of the websites lead to contracts with CCC to either file a merchants' claim or buy a merchants' claim.

Class Counsel contacted the company that was working with CCC and had several productive conversations. A senior vice president of sales accepted all of Class Counsel's proposed changes and made those changes to the websites. CCC has claimed that they did not review or approve the websites, but the CEO of the company that put up the websites said in an email that it was reviewed and approved by CCC. Class Counsel does not have a way to determine at this time what transpired, but received prior email communications between the company and CCC that appear to show the company fully disclosed the URL and landing page approach to CCC and CCC approved it. It appears the sites are now generally in compliance, but Class Counsel intends to closely monitor them going forward.

**IV.     UPDATE REGARDING NATIONAL PROCESSING ALLIANCE INC.**

Pursuant to the Court's Order of August 23, 2024 and its direction at the August 13, 2024 status conference, Class Counsel provide an update regarding National Processing Alliance Inc. ("NPA").

On August 21, 2024, Class Counsel wrote to Mr. Fuhrman regarding the agreement reached to provide Class Counsel with the names of those merchants who signed up for claims filing services with NPA and to discuss the content of the agreed communication to class members that would provide class members the opportunity to cancel their contract with NPA. Class Counsel provided a draft message to NPA and sought a response from NPA by August 23, 2024. On August 23, 2024,

---

[2]   Class Counsel saved a version of the website from August 21, 2024 that contained the problematic content, should the Court wish to review it. The print out spans more than 560 pages.

Class Counsel was contacted by an attorney working for NPA on this matter. The parties had a call to discuss the current situation and exchanged edits to a proposed letter to be sent to class members. On Monday, August 26, 2024, counsel for NPA wrote to approve the edits to the proposed letter, but asked whether Class Counsel could get "the names from the administrator." Class Counsel declined as NPA had agreed to provide this information as the basis for mooting the proposed Order to Show Cause. In addition, the class should not have to pay for Epiq to do this work, when NPA should possess the names and caused the problem. Class Counsel followed up three times on this point with NPA's counsel and did not receive a timely response. Therefore, Class Counsel requests that the Court reopen the Order to Show Cause as to NPA.

## V. UPDATES REGARDING CLASS MEMBER CONCERNS DISCUSSED AT AUGUST 13, 2024 STATUS CONFERENCE

Class Counsel here provides updates regarding certain class member communications discussed at the August 13, 2024 Status Conference.

### A. Jenne Corp.

Following the hearing with the Court on August 13, 2024, Class Counsel contacted Jenne Corp.'s General Counsel, James Sammon, to discuss the logistics of providing Epiq with the data it needs to complete research requests for the two Jenne entities referenced in Sammon's August 7 letter to the Court. ECF 9381. The two arranged a videoconference for the following, Tuesday, August 20, 2024. In preparation for the videoconference, Class Counsel sent Sammon a list of materials that would be helpful to have available to complete a research request on the Payment Card Settlement Portal.

Sammon was joined by a senior accountant at Jenne for the videoconference. During the conference, Class Counsel walked Sammon and the accountant through the process of submitting research requests for both entities referenced in the August 7th letter. The process of completing the research requests took approximately 20 minutes.

After the research request was submitted, Epiq's data team was able to find a significant amount of additional transaction- and interchange-fee volume, which Class Counsel shared with

Jenne on August 26, 2024. Jenne indicated that it would check the updated figures against its internal data and revert to Class Counsel if additional assistance is needed.

### B. Class Member Bernadette Harper

Following the August 13, 2024 status conference, Class Counsel received a call from class member Bernadette Harper who had previously written to the Court regarding issues trying to file her claim. Class Counsel spoke to Ms. Harper for nearly an hour. Class Counsel asked Ms. Harper to provide some times to talk with the Class Administrator to try to resolve her concerns. Having not heard from Ms. Harper since the 13th, on August 22, 2024 Class Counsel wrote to her to again try to set up a conference call with the Class Administrator and Class Counsel. Ms. Harper responded late on August 22, 2024 and said she could be available for a call on Monday, August 26, 2024. On Monday, Class Counsel and an Epiq representative waited on a conference line for 15 minutes and Ms. Harper did not attend. After 5 minutes, Class Counsel sent a reminder invitation. Class Counsel and Epiq sent Ms. Harper an email providing additional information to her regarding next steps she can take, should she wish. Later in the day on August 26, 2024, Ms. Harper called Class Counsel. She stated that she had received the email and would review the steps provided and would contact Epiq or Class Counsel if she had additional questions.

## VI. ISSUES RELATED TO LAW FIRM BETZ & BARIL

### A. Class Counsel's Report

Class Counsel has received another concerning complaint from the Class Administrator regarding the law firm Betz & Baril. A class member contacted Epiq and left a message stating that they had signed up for claims filing services after being told false information.

Class Counsel spoke to the class member on August 22, 2024. The class member confirmed that he was told the claims-filing firm would take 40% and that this figure was "regulated by the federal court because attorneys could be charging 60-70-80%." He also reported being told "there is only one law firm that is allocated in that state." The class member was not able to provide the name of the person that called, but the contracts were signed by Betz & Baril.

Class Counsel immediately contacted Betz & Baril. During a phone conference on August 22, 2024, Jason Baril stated that he was not aware of the name of the person who called the class member. He did have a search conducted and was able to find three contracts associated with the class member. As to those, Mr. Baril agreed to cease all representation and cancel the contract. The class member and the Class Administrator were informed via email. Mr. Baril stated that since the last report raising problems, he had ceased all outgoing marketing. The three contracts associated with this class member were from May and early to mid-July. Mr. Baril also committed to contacting the referral agents to determine more clearly what might have been said.

Class Counsel informed Mr. Baril that due to the repeated issues related to his firm, any future problems will likely result in Class Counsel seeking an order to show cause barring his firm from participating in the settlement in any manner. Mr. Baril stated that he understood the seriousness of the issue. It should be noted that Betz & Baril has submitted more than 9,100 proofs of authority to Epiq.

### B. Betz & Baril Statement

It has come to our attention that a class member may have been told false and/or misleading information while signing up for Betz and Baril services. We were informed one of our agents may have told a client that Betz & Baril's fees are regulated by the courts & that we are the only firm working in a state. Upon hearing said information we immediately let the class member out of their contract with Betz and Baril.

## VII. UPDATE REGARDING MILBERG

### A. Class Counsel's Update

Epiq has received the $25,000 payment from Milberg. Class Counsel has not heard anything further from the U.S. Attorney's Office since the acknowledgment of Class Counsel's detailed letter on July 25, 2024. No other issues related to Milberg are pending apart from the Order that Milberg provide a further update in this report.

B.  **Status Report from Milberg Coleman Bryson Phillips Grossman, PLLC**

Pursuant to the Court's Order dated July 26, 2024 (ECF No. 9363), the law firm of Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") submits the following status report regarding any pending claims submitted to Epiq:

As of the date of this filing,

- **Withdrawn:** Milberg has withdrawn 3,466 claims submitted to Epiq. Reasons range from lack of response to request for affirmation of Milberg's representation, lost but resolved conflicts, or lacking transaction and interchange fee data to which claimants did not respond to Milberg's attempts to cure.

- **Approved:** Epiq has approved 1,107 claims submitted by Milberg. Of those, 124 have been filed under the Research Request process within the claim portal. To date, 118 of those claims remain, 28 of which are in the claim status of Research Request Pending. The remaining 89 are in the status of Claim Received. Milberg had intended to file the previously reported 1,001 approved claims over the 2 weeks following its last report dated July 13, 2024, but after learning of the extended claim deadline, and due to various vacation schedules over the summer months, has chosen to take advantage of the additional time to ensure the claims are properly filed.

- **Deficient:** Epiq has identified 24 deficient claims submitted by Milberg, down from the 33 previously reported. Milberg has otherwise processed all deficiencies that have been flagged for resolution. Milberg is waiting for Epiq to publish a deficiency notice for the remaining claims that have been flagged as deficient. These efforts are ongoing.

- **Conflicts:** Milberg has been notified of a remaining 426 conflicts, down from the 758 conflicts last reported to the Court on July 13, 2024. Milberg is attempting to resolve all remaining conflicts with merchants and third-party filers, but if Milberg is unsuccessful in resolving those conflicts, it will withdraw those claims as well.

Lastly, Milberg does not intend to register any additional claims with Epiq going forward.

## VIII. OUTREACH TO THIRD PARTIES BY EPIQ

As Class Counsel previously reported, since August 18, 2023, Epiq has been performing specific outreach efforts to known third-party claims filers.

As of August 12, 2024, Epiq has been in communication with 284 third-party filers, law firms, and non-traditional bulk filers following the outreach that took place on August 18, 2023. Of those 284 third parties, Epiq has received client lists from 143 third-party claim filers claiming

representation of 10 or more claimants.  Those third parties claim total representation of 475,099 Tax Identification Numbers ("TINs").  These client lists also include multiple rows for a single TIN, and multiple rows that lack TINs or have invalid TINs (alphabetic characters, too few or too many digits).  Several third-party claims filers have combined their documentation into a single .pdf that covers multiple clients, so the true number is likely higher than the current document count can substantiate.  Work continues, including the development of processes to efficiently handle the expected increase in third-party claims.

## IX.  CONCLUSION

Class Counsel will continue to apprise the Court regarding issues with third-party claims filers via monthly reports and will bring urgent matters to the Court's attention via letter.  The next monthly report will be filed on September 27, 2024.

DATED:  August 27, 2024  ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
ALEXANDRA S. BERNAY


s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBINS KAPLAN LLP
K. CRAIG WILDFANG
THOMAS J. UNDLIN
RYAN W. MARTH
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN  55402-2015
Telephone:  612/349-8500
612/339-4181 (fax)

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs