Robbins Geller
Rudman & Dowd LLP

Chicago   Melville   Nashville   San Diego   Wilmington
Boca Raton   Manhattan   Philadelphia   San Francisco   Washington, D.C.

September 5, 2024

VIA ECF

Magistrate Judge Joseph A. Marutollo
United States District Court
   for the Eastern District of New York
225 Cadman Plaza East
Courtroom N324
Brooklyn, NY  11201

      Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-MD-1720 (MKB)(JAM)

Dear Judge Marutollo:

Rule 23(b)(3) Class Counsel ("Class Counsel") seek an Order to Show Cause regarding a law firm, Betz & Baril, that it has repeatedly warned regarding false and/or misleading statements made by its agents and referral partners. The Proposed Order to Show Cause seeks to have Betz & Baril, show cause as to why it should not be barred from any role in this action and seeks to have contracts entered into by the law firm cancelled and class members alerted to such cancellation at Betz & Baril's expense. While this is a harsh penalty, the firm has repeatedly come to the attention of Class Counsel and it appears that the firm is unable to stop its agents from making false and/or misleading statements regarding the settlement. Class Counsel also seeks an Order to Show Cause as to two of the agents, Certainty Management and LenCred, as detailed below.

I.      **Background**

    A.      **Actions by Jason Baril in 2019**

As far back as 2019, Class Counsel has been alerted to issues related to Jason Baril. In 2019, Class Counsel sought an Order to Show Cause related to another business entity Mr. Baril appeared to control. That entity, Business Refunds of America ("Business Refunds"), had a website that contained numerous false and misleading statements, including videos and social media posts. *See* ECF 7498 (June 24, 2019 letter to Court and attachments thereto). On June 26, 2019, Judge Orenstein issued an Order granting Class Counsel's application. *See* ECF 7502. Then, following discussions and representations from Mr. Baril, Class Counsel alerted the Court that Business Refunds had complied with all of Class Counsel's requests and thus consented to Mr. Baril's request to not have to appear before the Court. *See* ECF 7511 (July 8, 2019 letter to Court). The Court then excused Mr. Baril. July 8, 2019 (text-only Order regarding ECF 7511).

B.  **Actions by Betz & Baril in 2024**

Beginning in May 2024, Class Counsel was alerted to five separate incidents relating to agents or referral partners of Betz & Baril. Four of these incidents have been detailed in prior status reports and the most recent, discovered just days ago, is the impetus for Class Counsel's application for an Order to Show Cause. Each incident is discussed below.

1.  **Private Millionaire**

In May 2024, Class Counsel discovered a company called "Private Millionaire" soliciting merchants without any disclaimer language. The company also appeared to claim that it knew how much a merchant could expect to receive. Class Counsel sent an overnight letter to an address associated with the company, sent a LinkedIn message, and also sent a letter to an email address that appeared to be related to the company. Private Millionaire appeared to have a relationship with Betz & Baril. A call resulted in an agreement to remove all misleading information and the company further agreed to include the proper disclaimers on any materials going forward.

2.  **LinkedIn Issue**

As Class Counsel reported in July 2024, Class Counsel learned that a posting on LinkedIn from a group that had contracted with a law firm to provide claims-filing services to class members failed to include the required disclaimers and had several incorrect statements. Class Counsel contacted the firm, which had the post taken down within 24 hours. At the time, Class Counsel believed no further action on this specific issue was warranted.

3.  **AddTraffic and ClickFunds**

As Class Counsel also reported in July 2024, Class Counsel was alerted to certain YouTube videos from an online web-services-advertising entity (AddTraffic) that had partnered with Betz & Baril and an entity called ClickFunds. These videos contained numerous false and misleading statements regarding the settlement, including statements regarding purported numbers of claims filed, expected payouts and incorrect information regarding the filing process. The disclaimers were also not present on the materials. On the day that Class Counsel was alerted to these videos, a letter was sent to Betz & Baril, AddTraffic (the advertising company), and ClickFunds demanding that the videos be taken down and that the Betz & Baril contact Class Counsel immediately to discuss the matter. Letters were received from the advertising company, from Betz & Baril, and from ClickFunds. Each vowed to remove the offending content right away, with the advertising company sending a new draft video for review. Betz & Baril also agreed to send a letter to the approximately 1,700 clients that may have signed up following receipt of misleading information, explaining that false and/or misleading information had been given and that any merchant that signed up for the

firm's services could cancel, no questions asked.  Class Counsel reviewed the proposed communication and concluded that the letter properly informed class members of their right to file on their own.  It also appeared the entities did remove the questionable videos and the firm indicated that they were no longer working with ClickFunds or the advertising company.  Betz & Baril submitted a statement to the Court.  *See* ECF 9363, §III.D.

### 4. Class Member Complaint in August

A class member contacted Epiq and left a message stating that they had signed up for claims filing services after being told false information.  Class Counsel spoke to the class member on August 22, 2024.  The class member confirmed that he was told the claims-filing firm would take 40% and that this figure was "regulated by the federal court because attorneys could be charging 60-70-80%."  He also reported being told: "There is only one law firm that is allocated in that state."  The class member was not able to provide the name of the person that called, but the contracts were signed by Betz & Baril. Jason Baril was contacted and he conducted a search and found three contracts associated with the class member.  Those contracts were cancelled.  During an August 22, 2024 phone conference, Mr. Baril stated that since July 2024 when a prior status report detailed problems, he had ceased all outgoing marketing.  Mr. Baril was told by Class Counsel that future issues would likely result in Class Counsel seeking an order to show cause barring the firm from participating in the settlement in any manner.

### 5. Certainty Management/LenCred Issues

Days ago, Class Counsel became aware of another website with false and misleading information about the settlement, including two embedded videos.  Betz & Baril is mentioned specifically in one of the videos.  The website lacks any of the Court-ordered disclaimers and, to the contrary, gives the impression that merchants must "opt in" with this entity to receive settlement funds.  The website states: "To apply, we just need your business name and basic contact information.  That's it.  Once received, our team will send you our retainer agreement via DocuSign."  Exs. A, B, attached hereto.  The site also makes it appear that Class Counsel is involved in this business venture.  The site notes: "Funds recovered are split 60/40 with the facilitation team.  You retain 60%; the legal and fintech team receives 40% (***remember, in many cases, the team members who have been working on this settlement have been doing so for 20+ years***)."  Exs. A, B, attached hereto.  Of course Betz & Baril had nothing to do with the settlement.  It falsely claims to know when payments are to occur and provides baseless estimates regarding expected settlement returns.

Even more troubling are the statements made in the videos.[1]

- "[T]he Firm Betz & Baril who we work with is a court-appointed attorney. They have been authorized to facilitate these settlements." Ex. C.

- "All we need is your name and email address. We'll send you the e-signature agreement the DocuSign in which they ask for a little bit more information . . . that gives them authorization to go to the Visa/Mastercard portal, collect the data that they need to show how much you processed and how much your share in the settlement would be due." *Id.*

- "You receive 60% of whatever the settlement is. The other 40% goes to the law firm for their work and marketing and so forth and so on. [T]hey are court appointed; they have access to the Visa/Mastercard portal as I said, they can collect the data they need as soon as you complete that DocuSign signature."[2] *Id.*

- "[L]ess than 2% of the merchants nationwide are aware of this."[3] *Id.*

- "We're estimating it could be as much as $10,000 or even more per million dollars processed." *Id.* This baseless estimate is also repeated on a flyer available on the site. *See* Ex. E, attached hereto.

The video also refers to "[o]ur fintech partner who is the facilitator of this settlement," giving the false impression that Certainty Management and Betz & Baril are collaborating with the Court-appointed Class Administrator, Epiq. Ex. D.

Class Counsel called Mr. Baril on September 4, 2024. At the time, Mr. Baril stated that he was not familiar with Certainty Management and that he had heard of LenCred but thought he had a "conflict" with that entity. Class Counsel informed Mr. Baril that it would be seeking an order to

---

[1] A transcription of the two videos is attached, but the following examples demonstrate the false and/or misleading nature of the online materials. Exs. C, D, attached hereto. The two videos are available on YouTube (https://www.youtube.com/watch?v=_nF0V9Ie8aA&t=288s; https://www.youtube.com/watch?v=B2ETyA4kJmQ&t=23s).

[2] The video and website also misstate the settlement amount.

[3] The second video baselessly states: "As of the time of this recording, we have only about 2.1% of all merchants nationwide who have opted in." Ex. D. Unlike the first video, this second video does not directly refer to Betz & Baril or any other law firm.

show cause based on the repeated issues related to his firm.  Mr. Baril stated that he understood the seriousness of the issue.  Class Counsel stated that he would likely have an opportunity to address the Court.

On September 4, 2024, Class Counsel also sent an email to the contact listed on the website, https://www.certaintyteam.com/settlement, demanding that it cease and desist.  Class Counsel also called and left detailed messages with Certainty Management on September 4 and 5, 2024.  As of 2 p.m. PT / 5 p.m. ET on the date of filing, no response has been received from LenCred or Certainty Management.

## II. THE COURT'S AUTHORITY TO BAR THESE ENTITIES FROM ANY ROLE IN THE SETTLEMENT IS CLEAR

Class Counsel here provides authority detailing the Court's ability to protect class members from overreaching third parties.  Class Counsel provided much of this in a letter on August 16, 2024, but includes it here as well.  Over the past 10 years, the Court has issued several rulings examining its authority to act to protect class members from overreaching third parties.  The guiding principle was detailed in a lengthy Order issued in 2014.  The Court held:

> The Court's authority is clear, and its obligation to protect class members is strong.  The only effective way to avoid confusion and intolerable inefficiencies in the claims filing process is to be firm: any third-party claims filing company that knowingly makes – directly or through an agent acting on its behalf – material false or misleading statements to merchants in an effort to solicit their business risks being permanently enjoined from filing claims in this case.[4]

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014).

There the Court imposed a permanent injunction against a third party and provided significant legal support for its holding, including details regarding a situation that arose in the *Visa Check* action where a third-party claims filing entity was found to have misled class members.  *Payment Card*, 2014 WL 4966072, at *1-*3; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006).  In *Visa Check*, the Court imposed an order requiring corrective

---

[4] Unless otherwise noted, all emphasis is added and citations are omitted.

notices be sent to class members and to mail a notice allowing merchants to void contracts they had entered into.  *Payment Card*, 2014 WL 4966072, at *6.

Throughout the litigation, the Court has made clear its intention to "proactively protect class members from overreaching claims filing companies by 'preventing confusion and deception before they can happen," as opposed "to taking remedial measures after they happen.'"  *Id.* at *17 (quoting ECF 6147 at 1).

As the Court has noted: "common sense dictates that the onus for ensuring that solicitations to class members are truthful must necessarily fall on the third-party claims filing company seeking class members' business."  *Id.* at *30; *see also Visa Check*, 2006 WL 1025588, at *6.  "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class."  Manual for Complex Litigation (Fourth) §21.33 (2004) (the "Manual").  "[T]he court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members."  *Payment Card*, 2014 WL 4966072, at *31 (citing Manual).

As the Court held:

> Pursuant to Rule 23(d), courts have taken various curative actions to "prevent court-approved class notification materials from being nullified by competing and inaccurate information."  1 Litigating Tort Cases §9:16; *see e.g.*, *In re Lupron Marketing and Sales Practices Litigation*, 2004 WL 3049754, at *1-2 (D.Mass.2004) (ordering counsel for intervenors to remove website content found to be "blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs" and to provide corrective notice); *In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1239, 1246-47 (N.D.Cal.2000) (ordering that misleading statements made by outside attorney be remedied by curative notice to solicited class members, inclusion of court-mandated disclosures in attorney's future solicitations, and permitting rescission of solicited agreements); *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 489, 496-98 (E.D.Pa.1995) (invalidating opt-outs and creating second opt-out period where several law firms opposed to the settlement sent misleading communications and advertisements to absent class members).

*Payment Card*, 2014 WL 4966072, at *31.

As the Court further noted, "the proper exercise of judicial authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *Id.*

> This Court also has the authority to enjoin a third party pursuant to the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "An injunction, where necessary to protect the court's earlier orders . . . is authorized under the All Writs Act. That power extends to non-parties." *In re Synthroid Marketing Litigation*, 197 F.R.D. 607, 610 (N.D.Ill.2000) (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) ("The power conferred by the Act extends . . . to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."); *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir.1998) (noting court's authority to grant injunctive relief against nonparty trade association that sent unauthorized, confusing letter to class members but instead invoking Rule 23 to order offending nonparty to send corrective notice)).

*Id.* (alternations in original). "Because . . . contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel." *Visa Check*, 2006 WL 1025588, at *5; *see also Makere v. Fitzpatrick*, 2023 WL 3010539, at *1 (N.D. Fla. Mar. 22, 2023), *aff'd*, 2024 WL 2152114 (11th Cir. May 14, 2024) ("[Under] the All Writs Act, and the court's inherent authority, sanctions are imposed as set out in this order.").

In sum: "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *Visa Check*, 2006 WL 1025588, at *4; *Payment Card*, 2014 WL 4966072, at *31.

### III. The Court Also Possesses Inherent Authority to Impose Sanctions Against Non-Parties

"A federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Tr. v. Sabino*, 230 F.3d 1357, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991); *see also Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1995) (as amended). The Court has the discretion to fashion appropriate sanctions for conduct which abuses

the judicial process. *See Chambers*, 501 U.S. at 44-45. Indeed, there is significant, well-settled case law regarding the Court's inherent authority to sanction a non-party "'for abuse of the judicial process.'" *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022) (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended)); *see also Bartos v. Pa.*, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010) ("It is also beyond serious dispute that this power extends, not only to parties in civil litigation, but also to other persons, such as witnesses, who may be embroiled in that litigation."); *In re Rainbow Mag., Inc.*, 77 F.3d 278, 282 (9th Cir. 1996) (sanction imposed against a non-party for filing false statement). The Court has the discretion to fashion appropriate sanctions for conduct which abuses the judicial process. *Chambers*, 501 U.S. at 44-45.[5]

An entity's status as a non-party, while relevant, is not dispositive. *See, e.g.*, *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court – a party, an attorney, or a nonparty witness – the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *see also Sundby v. Marquee Funding Grp., Inc.*, 2020 WL 5709445, at *5 (S.D. Cal. Sept. 24, 2020) ("The Court's inherent authority to sanction willful conduct also includes 'the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses.'"). *See In re Holloway*, 884 F.2d 476, 477 & n.2 (9th Cir. 1989) (per curiam) (sanctioning a court reporter for "repeated and flagrant failures to meet court-imposed deadlines" that resulted in "severe prejudice to both the parties and the court").

While "'many courts have addressed the issue of whether the inherent authority of a court to sanction litigants extends to non-parties'" there is some debate where the non-parties are found not to have violated "'any specific court order.'" *Ganci v. U.S. Limousine Serv., Ltd.*, 2012 WL 13109965, at *4 (E.D.N.Y. Sept. 28, 2012).

Some courts hold that a specific finding of bad faith is necessary in order to support the invocation of the court's inherent power to impose sanctions to a non-party for a violation of a court order. *See, e.g.*, *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*, 432 F. App'x 25 (2d Cir. 2011). Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "'tantamount to bad faith.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Bad faith, in turn, is associated with conduct that is intentional or reckless. *See Schafer v. City of Defiance Police Dep't*, 529 F.3d

---

[5] "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.* at 57.

731, 737 (6th Cir. 2008); *United States v. Wheeler*, 154 F. Supp. 2d 1075, 1078-79 (E.D. Mich. 2001) (sanctions under court's inherent authority warranted for reckless or bad-faith conduct, and defining "'recklessness'" as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care,'" such that it is "'more than mere negligence but less than intent'").

### IV. CONCLUSION

The conduct of Betz & Baril, as well as LenCred and Certainty Management, is egregious. And in the case of Betz & Baril, it is recurring, despite repeated attempts to get the firm to comply with this Court's orders. The attached proposed Order to Show Cause should therefore be granted.

Respectfully submitted,

| */s/ Ryan W. Marth* | */s/ Michael J. Kane* | */s/ Alexandra S. Bernay* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Alexandra S. Bernay |
| Ryan W. Marth | Michael J. Kane | **Robbins Geller Rudman** |
| **Robins Kaplan LLP** | **Berger Montague PC** | **& Dowd LLP** |

Exhibits

cc:   All Counsel via ECF