**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | Case No. 1:05-MD-01720 (MKB-JAM) |

## CASCADE SETTLEMENT SERVICES LLC'S OPPOSITION TO OPTIUM CAPITAL LLC'S MOTION FOR A PRELIMINARY JUNCTION

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

PROCEDURAL HISTORY.................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.      Optium's Motion Should be Limited to the Relief and Basis Therefor Specified in Its
Notice of Motion.................................................................................................................... 4

II.     Optium's Motion Is Moot. ............................................................................................ 6

   A.    The California State Court Proceeding Is Not Proceeding. ............................................ 6

   B.    Cascade Amended Its Complaint to Streamline the Litigation in California. ................... 7

III.    Even if It Were Not Moot, Optium's Motion Would Violate the Anti-Injunction Act. ..... 8

   A.    Optium's Removal of Cascade's Case Was Improper Because There Is No Federal
Jurisdiction over the Breach of Contract Claims. ....................................................... 8

   B.    No Exception to the Anti-Injunction Act Is Present Here. ................................................ 9

IV.    Optium Cannot Satisfy the Requirements for a Preliminary Injunction.......................... 11

   A.    Optium Lacks Article III Standing in this Choice of Forum Dispute............................. 11

   B.    The Requested Injunction Would Dramatically Change the Status Quo......................... 12

   C.    Optium Fails to Satisfy the Requirements for Injunctive Relief..................................... 12

     1.    Optium Will Not Suffer Irreparable Harm................................................................. 12

     2.    Optium Cannot Show a Likelihood of Success on the Merits, and the Balance of
Hardships Tips in Favor of Cascade. .................................................................... 13

     3.    There Is No Public Interest in Granting the Requested Injunction.............................. 15

CONCLUSION..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143 (2d Cir. 2023) ........................................... 6

*Almonte v. Target Corp.*, 462 F. Supp. 3d 360 (S.D.N.Y. 2020) .................................................. 6

*Atl. Coast Line R.R. Co. v. Locomotive Engineers*, 398 U.S. 281 (1970) ................................... 10

*Berg v. Leason*, 32 F3d 422 (9th Cir. 1994) ............................................................................... 14

*Bergh v. State of Washington*, 535 F.2d 505 (9th Cir. 1976) ......................................................... 5

*Bridge Street LLC v. RK & G Associates LLC* (E.D.N.Y., Dec. 7, 2009, No. 09 CV 1704 (ILG))

    2009 WL 4745663 ................................................................................................................... 15

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) .............................. 12

*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007) ............................... 12

*In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425 (2d Cir.1993) ..................................... 15

*In re Prudential Ins. Co. of America Sales Practice Litigation*, 261 F.3d 355 (3d Cir. 2001) ..... 11

*In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, WL 2100930 (E.D.N.Y. Aug.

    31, 2005) .............................................................................................................................. 10

*K2 America Corp. v. Roland Oil & Gas, LLC*, 653 F3d 1024 (9th Cir. 2011) ............................ 13

*MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978 (10th Cir. 1992) ......................................... 5, 8

*NSI Intern., Inc. v. Mustafa*, No. 09 Civ. 1536, WL 2601299 (E.D.N.Y. Aug. 20, 2009) ........... 15

*State Farm Mut. Ins. Co. v. Metro Pain Specialists P.C.,* No. 21-CV-5523 (MKB), WL 1606523,

    (E.D.N.Y. May 20, 2022) .............................................................................................. 10, 12, 14

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ............................................................ 11

*United States ex rel. Echevarria v. Silberglitt*, 441 F.2d 225 (2d Cir. 1971) ............................... 6

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977) ................................................................. 9

*Walters v. T & D Towing Corp.*, No. 17-CV-0681, WL 1184169 (E.D.N.Y., Mar. 29, 2017) ...... 9

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ...................................... 12

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020) ........................................................................... 12

**Statutes**

28 U.S.C. § 1446................................................................................................................... 6

**Rules**

E.D.N.Y. Local Civ. R. 7.1 ............................................................................................... 4, 6

Fed. R. Civ. Pro. Rule 7 .................................................................................................... 4, 6

# INTRODUCTION

Nonparty Optium Capital LLC's ("Optium") motion for a preliminary injunction can be decided by answering one question about its dispute with nonparty Cascade Settlement Services LLC ("Cascade"):

> *What might a court in California do that would impair this Court's*
> *authority or flexibility to manage the Visa case and settlement?*

The answer is: Nothing. No matter how a court in California rules on the contract dispute for money damages between Optium and Cascade, there will be no effect on this Court, this case or the settlement administration. Because an injunction is not required in aid of this Court's jurisdiction over the *Visa Antitrust Litigation*, Optium's motion should be denied.

This is not a third-party claim-filer dispute. It does not raise or require the resolution of any claim-filing conflicts because Cascade is not challenging Optium's rights to file any Visa claims. And neither Cascade nor Optium is a *Visa* class member or a party to the *Visa Antitrust Litigation*.

The question presented by Optium's motion is whether this one-of-a-kind breach of contract suit[1] between former colleagues, now competitors, will be litigated in California state court, California federal court, this Court, or problematically, not at all. But Optium cannot show that it will suffer any harm based on *where* the Cascade litigation takes place. In that regard, Optium fails to present a case or controversy and lacks Article III standing to seek injunctive relief. For this additional reason, Optium's request should be denied.

The underlying dispute, briefly summarized: In 2014, Cascade's Chief Executive Officer Neil Kornswiet and several other high level Cascade employees—who, along with Optium are all California residents—left Cascade to form competitor Optium. (FAC ¶ 20.) They took with

---

[1] The operative First Amended Complaint ("FAC") is attached hereto as Exhibit G to the Declaration of Kassra Nassiri. Although Optium is incorporated in Wyoming, its principal place of business is in Newport Beach, California. (FAC ¶ 2.) Cascade's principal place of business is in Mill Valley, California. (FAC ¶ 1.)

them Cascade's client list, details about Cascade's contracts with claimants, and other valuable proprietary Cascade information. (FAC ¶ 22.) Cascade thereafter threatened to sue Optium for misappropriation of trade secrets, among other things.

After extensive pre-litigation negotiations, Cascade and Optium resolved the dispute and entered into the "2015 Settlement Agreement." (FAC ¶ 26.) The 2015 Settlement Agreement was crafted to address Cascade's concerns that Optium would use Cascade's proprietary information to unfairly compete and interfere with Cascade's business. Chief among the 2015 Settlement Agreement's provisions was a requirement that Optium must pay Cascade a fee if Optium purchased any *Visa Antitrust Litigation* settlement claims from then-existing Cascade clients. (FAC ¶ 31.)

In 2024, Optium unexpectedly declared that it would not pay Cascade any fees for certain claims it purchased from Cascade clients after all. After further negotiations failed, Cascade filed its complaint for breach of contract in California state court on August 13, 2024 ("California Litigation"). No class member is being sued in the California Litigation. More broadly, no class-member interest is at issue, as Optium has already paid the relevant class members (e.g., Vail, Peet's) to purchase their *Visa* settlement claims, leaving those class members mere bystanders to the private contract dispute.

The crux of the California Litigation is the proper interpretation of the 2015 Settlement Agreement, an issue of no import to the *Visa Antitrust Litigation*. And although the payment of Cascade's money damages by Optium depends on the actual monies received by Optium for the disputed claims, there is no overlap in issues to be decided in the California Litigation on the one hand, and the *Visa Antitrust Litigation* Claims Administrator on the other.

Most importantly, there is no conflict between Cascade and Optium suitable for resolution by this Court. Cascade has withdrawn its registration of the disputed claims, thereby removing any actual or potential claim-filing conflict that might be resolved by the Special Master. Cascade's First Amended Complaint seeks only monetary damages, *after* any of

Optium's rights to settlement monies are determined by the Special Master (a process in which Cascade has and is asserting no role).

Optium is plainly forum-shopping. It has tried to move this case to its forum of choice by (1) improperly removing Cascade's complaint to federal court, (2) seeking a conditional transfer order from the MDL, (3) seeking to transfer Cascade's complaint to this Court, (4) seeking to intervene in this case, and (5) seeking to enjoin Cascade from pursuing its claims in California. It is playing procedural whack-a-mole in an attempt to create obstacles to the resolution of the underlying breach of contract action. But because nothing in the California Litigation would interfere with or impair this Court's ability to manage the *Visa Antitrust Litigation*, this Court should reject Optium's motion for a preliminary injunction.

Finally, if this Court grants Optium's request, then Cascade's complaint will not be pending in any court and Cascade will be forced to file and litigate its complaint in this Court. But as argued in its remand motion with the Northern District of California, there is no diversity jurisdiction and no federal question jurisdiction over Cascade's breach of contract claims. Accordingly, for this additional reason, this Court should deny Optium's motion.

## **PROCEDURAL HISTORY**

Cascade filed its complaint in the Superior Court of California on August 13, 2024. (See Declaration of Kassra P. Nassiri ("Nassiri Decl.") at ¶ 3 & Exh. A.) On August 15, 2024, counsel for Cascade sent a courtesy copy of the complaint to Daniel Sasse of Crowell & Moring LLP,[2] Optium's counsel, and asked if Mr. Sasse would accept service on behalf of defendants. Mr. Sasse never responded. (Nassiri Decl. at ¶ 4 & Exh. B.)

Instead, on August 19, 2024, Optium removed Cascade's complaint to the United States District Court for the Northern District of California. The removal was predicated first on supposed diversity jurisdiction, and secondarily on federal question jurisdiction. (Nassiri Decl. at ¶ 6 & Exh. C.) On the same day, Optium also filed a "Notice of Potential Tag-Along Action" in

---

[2]      Crowell & Moring is also an active third-party claim filer that is heavily involved in the *Visa Antitrust Litigation* and competes with Cascade. (Nassiri Decl. at ¶ 5.)

MDL 1720. (Nassiri Decl. at ¶ 7 & Exh. D.)  On August 21, 2024, the Clerk of the Panel in MDL 1720 determined that Cascade's complaint was not appropriate for inclusion in the MDL. (Nassiri Decl. at ¶ 8 & Exh. E.)

On August 20, 2024, Optium filed its Notice of Motion for Preliminary Injunction (ECF 9394) and a Notice of Motion to Intervene (ECF 9393) with this Court. (Nassiri Decl. at ¶ 9.)

On August 22, 2024, Cascade filed with the Northern District of California a motion to remand the case to California state court. The briefing is complete and the motion is scheduled to be heard on October 10, 2024. (Nassiri Decl. at ¶ 10 & Exh. F.)

On September 4, 2024, Cascade filed its First Amended Complaint. The First Amended Complaint dropped the claim for injunctive relief related to the claim filing conflict between Cascade and Optium. (Nassiri Decl. at ¶ 11 & Exh. G.)

On the same day, Cascade also informed the Claims Administrator that it was withdrawing its registration to file the disputed claims, thereby removing any claims filing conflict between Cascade and Optium. (Nassiri Decl. at ¶ 12 & Exh. H.) The amendment streamlined the dispute to concern only money damages arising from the breach of the Settlement Agreement and not to affect the resolution of any claims in the MDL.

On September 5, 2024, Optium moved to transfer Cascade's case to this Court. Briefing is ongoing, and the motion is scheduled to be heard on October 10, 2024. (Nassiri Decl. at ¶ 13 & Exh. I.)

## ARGUMENT

### I.      Optium's Motion Should be Limited to the Relief and Basis Therefor Specified in Its Notice of Motion.

Under Local Civil Rule 7.1, a motion must include "[a] notice of motion . . . that specifies the rules or statutes under which the motion is brought and the relief sought." E.D.N.Y. Local Civ. R. 7.1; *see also* Fed. R. Civ. Pro. Rule 7(b)(1) ("A request for a court order must be made

by motion . . . state with particularity the grounds for seeking the order; and [ ] state the relief sought.").

In its notice, Optium states: "Pursuant to 28 U.S.C. § 2283," – which is the Anti-Injunction Act – "Optium seeks the following relief: granting Optium's Motion for a Preliminary Injunction and enjoining Cascade Settlement Services LLC's California state court proceeding." (ECF No. 9394.) But in its memorandum in support of its motion, Optium seeks different relief. There, it asks the Court to enjoin Cascade itself.[3] Even then, it is unclear what Cascade is to be enjoined from doing. First (at 1), Optium asks to enjoin Cascade from "*bringing* suit in any other jurisdiction." But that makes no sense, as Cascade brought its suit in California long before Optium filed this memorandum. Later (at 7), Optium asks to enjoin Cascade from "*pursuing* [its] claims outside of this Court's jurisdiction." But what does Optium mean by "outside of this Court's jurisdiction"? That Cascade's claims against Optium must be brought in the Eastern District? Or before this Court? Or within the *Visa Antitrust Litigation*? And what jurisdiction – or interest – does this district, this Court, or the special master have over a contract dispute for damages between nonparty California entities Optium and Cascade? And what of Cascade's claims against the individual California residents (also not parties to this action) sued in the California action? Optium's memorandum implicates – but does not answer – these questions.

It is also unclear under what authority nonparty Optium hopes this Court will act. Its notice specifies the Anti-Injunction Act – which is not a source of authority, but a limitation (and exceptions to that limitation) on the Court's inherent authority. Then, Optium refers to the All Writs Act, but only once – and possibly by accident, as Optium instead cites to the Anti-Injunction Act (Mem. at 3 ["Under the All Writs Act, 28 U.S.C. § 2283. . ."]) and never asks the Court to issue a writ.

---

[3]     Insofar as Optium is also asking this Court to enjoin the U.S. District Court for the Northern District of California, "considerations of comity require more than the usual measure of restraint; such injunctions should be granted only in the most unusual cases." *MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 988 (10th Cir. 1992); *see also Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir. 1976).

Out of an abundance of caution, Cascade will address the relief and basis for that relief asserted in both Optium's notice and its memorandum. But in ruling on the motion, the Court should consider only the relief and statute specified in Optium's notice. *See* E.D.N.Y. Local Civ. R. 7.1 & Fed. R. Civ. Pro. Rule 7(b)(1).

## II.     Optium's Motion Is Moot.

Optium's motion is moot for at least two reasons. First, because the California state court proceeding is *not* proceeding, having been improperly removed to federal court. Second, because Cascade withdrew from the claim-filing conflicts and also amended its complaint to streamline its claim for money damages against Optium, this Court has no interest in the one-of-a-kind dispute between nonparties Cascade and Optium.

### A.     The California State Court Proceeding Is Not Proceeding.

Optium seeks to enjoin the "California state court proceeding." Mot at. 1 (ECF 9394). But Optium removed that case to federal court. "Once a case is removed, 'the State court shall proceed no further unless and until the case is remanded.'" *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 146 (2d Cir. 2023) (quoting 28 U.S.C. § 1446(d)). Indeed, "[t]he state court is deprived of jurisdiction to proceed with the removed action unless and until the case is remanded, irrespective of whether the action is removable." *Almonte v. Target Corp.*, 462 F. Supp. 3d 360, 365 n.2 (S.D.N.Y. 2020) (quoting *United States ex rel. Echevarria v. Silberglitt*, 441 F.2d 225, 227–28 (2d Cir. 1971)). Thus, Optium mooted its own motion to enjoin the California state court proceeding by removing that case to federal court. Though nonparty Cascade has moved to remand, because the case involves California residents and presents no federal issue, there is no state court proceeding to be enjoined "unless and until the case is remanded." *Abbo-Bradley*, 73 F.4th at 146 (quoting 28 U.S.C. § 1446(d)). Thus, Optium's motion is also unripe unless and until that case is remanded to state court. And because Optium's removal was improper, and because there is no possible interference with this Court's

jurisdiction over or management of the *Visa Antitrust Litigation*, this Court should not enjoin the already-instituted California Litigation.

**B.      Cascade Amended Its Complaint to Streamline the Litigation in California.**

After Optium filed its notice of motion, Cascade filed a First Amended Complaint removing its request to enjoin Optium from filing the claims at issue. Cascade also withdrew its registration with the Claims Administrator to file those claims in this Settlement. Thus, there is no longer any dispute (i.e., claim-filing conflict) suitable for resolution by the Special Master.

Optium's motion materially mischaracterizes the California Litigation. Optium falsely contends that "Cascade asserts that these companies owe it money notwithstanding the fact that these companies entered into subsequent contracts with Optium to sell their *Visa Antitrust Litigation* claims to Optium." (Mem. at 3.) Cascade makes no such assertion. Optium also falsely claims that "these disputes have already been raised with Class Counsel and the Claims Administrator," and that "Cascade has filed a separate and potentially inconsistent lawsuit in California." (Mem. at 3.)

But the California Litigation is a contract dispute for money damages, and nothing more. Optium argues that "[a]llowing a California court—or any other court—to interfere with the settlement claims' dispute resolution process . . .would impair this Court's authority and flexibility to resolve disputes at issue in Cascade's California proceeding." (Mem. at 4.) While Cascade's original complaint did seek to enjoin Optium from filing the claims at issue, Cascade's First Amended Complaint simplifies the dispute by removing this claim. Cascade also informed the Claims Administrator in the *Visa Antitrust Litigation* that it is withdrawing its registration of the disputed claims. (Nassiri Decl. at ¶ 12 & Exh. H.) Thus, there is no longer any conflict over who—Optium or Cascade—has authority to file the disputed claims.

**III.    Even if It Were Not Moot, Optium's Motion Would Violate the Anti-Injunction Act.**

**A.    Optium's Removal of Cascade's Case Was Improper Because There Is No Federal Jurisdiction over the Breach of Contract Claims.**

After Cascade filed its complaint in California state court, Optium removed the case to the Northern District of California. It argued for diversity jurisdiction and "snap" removal. Optium also asserted federal question jurisdiction. Cascade immediately challenged removal and moved to remand. In its opposition to remand, Optium abandoned its specious diversity argument without acknowledgment or comment and now relies entirely on federal-question jurisdiction.[4]

But there is no federal question jurisdiction here. This is a contract dispute arising from competing interpretations of a private settlement agreement in which Cascade seeks only monetary damages from Optium. It challenges no current or future decision in the *Visa Antitrust Litigation*. It asserts no federal claims, whether under the antitrust laws or otherwise. None of Cascade's state claims requires the interpretation (or application) of any federal law or any aspect of the remaining claims administration in the *Visa Antitrust Litigation*. Neither this Court nor any *Visa* class member has any interest in the outcome of Optium's and Cascade's private dispute. No ruling in that case will control in any other case, nor is there even the remote possibility of inconsistent judgments. That case is a one-of-a-kind fact-bound breach-of-contract case that presents no federal issue and has no relevance to the federal judicial system.

Additionally, if this Court enjoins Cascade from proceeding in California state court, and if the Northern District of California later determines that no federal court has jurisdiction over Cascade's breach of contract claims, Cascade would, paradoxically, be left without any forum in which to pursue its contract claims. For this reason, if the Court does not deny Optium's motion, it should defer its decision until the Northern District of California determines whether federal jurisdiction exists. *See, e.g., MAI Basic Four, Inc. v. Basis, Inc. (*10th Cir. 1992) 962 F.2d 978,

---

[4]    Optium's illegitimate "snap removal" appears to have been a tactical maneuver to avoid the Anti-Injunction Act. But that gambit cannot solve Optium's fatal jurisdiction problem, as argued below.

987 ("conditions on litigation cannot be so burdensome as to deny a litigant meaningful access to the courts"). That would also be the most efficient path, as jurisdiction has been fully briefed in the Northern District.

**B.     No Exception to the Anti-Injunction Act Is Present Here.**

In its motion, Optium concedes that to enjoin the California Litigation, this Court must find an exception to the Anti-Injunction Act. (Mem. at 4.) Optium asserts that the "where necessary in aid of its jurisdiction" exception applies but fails to explain how.

But the in-aid-of-jurisdiction exception does not apply here. Here, a counterfactual can help clarify the issue: suppose that Cascade had waited for the *Visa Antitrust Litigation* settlement distribution to be completed, and then filed its California complaint. There could be no risk of inconsistent judgments, nor could there be any possibility of interference with the Court's consideration or disposition of this case. This Court would have no judicial interest in the outcome of the California dispute. The same is true now. The California court will not be deciding the merits of any claims in the Visa Antitrust settlement. That Cascade has already filed its complaint for money damages does not change the fact that there is no overlap in the factual or legal issues to be decided in this case and the California Litigation.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." This is not a grant of power to federal courts, but a limitation (and exceptions to that limitation). *See, e.g., Walters v. T & D Towing Corp.*, No. 17-CV-0681 (2017 WL 1184169, at *5 (E.D.N.Y., Mar. 29, 2017) ("The Anti-Injunction Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act, which are to be narrowly construed,") (citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (cleaned up)). The Supreme Court has held that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in

favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Locomotive Engineers*, 398 U.S. 281, 297 (1970).

As emphasized by the Supreme Court, an order directed at a state court proceeding must be *necessary* in aid of jurisdiction—"it is not enough that the requested injunction is related to that jurisdiction." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. And as noted by this Court, the exception should be narrowly construed to imply "something similar to the concept of injunctions to 'protect or effectuate' judgments," and that "[t]he exception is only applicable where the federal action has yet to go to final judgment." *State Farm Mut. Ins. Co. v. Metro Pain Specialists P.C.,* No. 21-CV-5523 (MKB), 2022 WL 1606523, at *10 (E.D.N.Y. May 20, 2022). Neither condition is satisfied here. The *Visa Antitrust Litigation* has gone to final judgment, and because there is no overlap between this case and the California Litigation, no injunction is necessary to protect or effectuate any judgment of this Court. Similarly, the California Litigation could not possibly trigger any breakdown in settlement negotiations or the administration of the *Visa Antitrust Litigation*, since this case has already settled, and Cascade's breach of contract claims stand entirely apart from the settlement administration in this case. *Id.* at *11;[5] *see also In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2005 WL 2100930, at *4 (E.D.N.Y. Aug. 31, 2005) (declining to enjoin a state court case because although the federal action was "no doubt a large, complex federal class action," it was not "on the verge of settling" but had already settled).

Cascade has dropped all Optium-related *Visa* claim conflicts with the Claims Administrator, severing any potential nexus between Cascade's dispute with Optium and this Court's administration of the *Visa Antitrust Litigation* settlement. Thus, because an injunction is not necessary to "protect or effectuate" any judgment of this Court, including the settlement

---

[5] There also is no possibility of a preclusive ruling in the California Litigation. But even if there were, this Court also held that the "pendency of a parallel proceeding in state court, in and of itself, is insufficient grounds to invoke the in-aid-of jurisdiction exception, even where the state proceeding threatens to preclude the federal court from reaching the same issue through res judicata or collateral estoppel." *State Farm*, 2022 WL 1606523 at *10.

claims dispute resolution process, the in-aid-of-jurisdiction exception to the Anti-Injunction Act does not apply here.[6] The Court should therefore deny Optium's request for injunctive relief.

## IV.    Optium Cannot Satisfy the Requirements for a Preliminary Injunction.

### A.    Optium Lacks Article III Standing in this Choice of Forum Dispute.

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Here, Optium cannot meet even one requirement, let alone all of them.

The dispute before this court concerns choice of forum, not the merits of the underlying breach of contract litigation. And in that regard, Optium has failed to present a justiciable case or controversy to this Court. Here, not only has Optium failed to identify irreparable harm, as argued below; it has identified no injury in fact. Optium does not explain what harm it would suffer if a California court—state or federal—were to adjudicate the breach of contract claim for money damages. It cites no statute or order from this Court. It cites no procedural safeguards available in this Court that might apply to its breach of contract dispute with Cascade. And if the dispute is litigated before a California court, Optium—who, along with several of its principals, is in California—can expect a full and fair opportunity to defend its claims under California substantive and procedural law. Because Optium fails to identify any actual and imminent threat of concrete and particularized harm if the injunction is not granted, it lacks Article III standing with this Court.

---

[6]    Optium has not argued for the Court to issue a writ under the All Writs Act. Even if it had, Optium's request would suffer from the same defects. "The parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All–Writs Act and the Anti–Injunction Act." *In re Prudential Ins. Co. of America Sales Practice Litigation* (3d Cir. 2001) 261 F.3d 355, 365.

**B.     The Requested Injunction Would Dramatically Change the Status Quo.**

As this Court held, "[t]he purpose of a preliminary injunction is to 'preserve the relative positions of the parties until a trial on the merits can be held.'" *State Farm Mutual Automobile Insurance Company v. Metro Pain Specialists P.C.* (E.D.N.Y., May 20, 2022, No. 21-CV-5523 (MKB)) 2022 WL 1606523, at *6.

Here, the status quo is that Cascade and Optium are parties to a pending litigation in California. Optium, however, would for its own tactical reasons prefer to have Cascade's claim heard in this Court, and not in California. But Cascade has not filed a complaint with this Court, and if Optium's motion for an injunction is granted, Cascade's complaint will not be pending or proceeding in any court. Cascade will be forced to either abandon its claim altogether or file its lawsuit in this Court.

Because the requested injunction would alter the status quo and move the forum from that of Plaintiff's choosing to that of Defendants', this Court should deny Optium's request.

**C.     Optium Fails to Satisfy the Requirements for Injunctive Relief**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Optium fails on all four grounds.

**1.     Optium Will Not Suffer Irreparable Harm.**

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). To establish irreparable harm, the "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm. *State Farm*, 2022 WL

1606523, at \*18 (citing *Faiveley Transp. Malmo AB*, 559 F.3d at 118 (alteration in original) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).”

Optium argues only that absent a preliminary injunction, it will suffer "irreparable harm because [the California Litigation] creates the risk that the California state court could resolve the disputed claims inconsistently with how this Court intended to resolve the dispute through its dispute resolution process. (Mem. at 5.) It identifies no other harm.

But Cascade has withdrawn from all claim-filing conflicts with Optium, and the First Amended Complaint seeks only money damages. This Court has not indicated any intention to resolve contract disputes between non-class members, and it is not evident that this Court has any judicial interest in doing so.

Because Optium has failed to establish that it will suffer irreparable harm if Cascade's complaint is litigated in California, where Optium will have a full and fair opportunity to defend itself, this Court should deny its request for an injunction.

### 2. Optium Cannot Show a Likelihood of Success on the Merits, and the Balance of Hardships Tips in Favor of Cascade.

Optium has not asserted any claims against Cascade. Instead, it argues that there are "serious questions" with the merits of Cascade's claim. (Mem. at 6.) But again, Optium's complaint here is not about the merits of Cascade's claims—it is about the forum in which those claims will be litigated. As argued throughout this opposition, Optium cannot show a likelihood of success on its attempts to move the litigation to this Court.

As an initial matter, Optium cannot establish federal jurisdiction over its dispute with Cascade. There is no diversity between the California parties, and the underlying business dispute raises no federal question. It only concerns the interpretation and application of a private settlement agreement between two competitors concerning the resolution of allegations of trade secret misappropriation and unfair competition. Simply because the monies at issue are distributions to Optium from this settlement does not confer federal jurisdiction over the dispute or give Optium the right to have the case litigated in this Court. *See, e.g., K2 America Corp. v.*

*Roland Oil & Gas, LLC*, 653 F3d 1024, 1032 (9th Cir. 2011) (while tribal oil and gas leases are federally regulated and potentially implicate substantial federal issues, asserting an interest in such leases does not give rise to a federal question when the claims do not require reference to federal statutory or common law); *Berg v. Leason*, 32 F3d 422, 425 (9th Cir. 1994) (to prove malicious prosecution, plaintiff had to show an earlier federal action was brought "without probable cause;" even though it raised the issue whether the earlier federal claim was legally tenable, state law created the cause of action).

Even if there were federal jurisdiction, the balance of hardships tips in Cascade's favor. This Court has held that the "'serious questions' standard permits a district court to grant a preliminary injunction . . . where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *State Farm* (E.D.N.Y., May 20, 2022, No. 21-CV-5523 (MKB)) 2022 WL 1606523, at *15 (cleaned up). "If there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation," courts inquire into whether there is "a balance of the hardships tipping decidedly in favor of the moving party." *State Farm* (E.D.N.Y., May 20, 2022, No. 21-CV-5523 (MKB)) 2022 WL 1606523, at *20. Optium has not met this standard.

First, Optium has not established that there are "serious questions" going to the merits of Cascade's claims. In fact, Optium has not even accurately summarized Cascade's complaint for this Court. For example, Optium writes that "Cascade asserts that [certain class members] owe it money notwithstanding that these [class members] entered into subsequent contracts with Optium to sell their *Visa Antitrust Litigation* claims to Optium." (Mem. at 3.) But nowhere in Cascade's complaint does it make any such assertions, and Cascade has not named any class member as a defendant in its lawsuit. Even a cursory read of Cascade's complaint makes clear that the dispute concerns only Cascade and Optium, and no class member's interest is implicated in the lawsuit.

Even if Optium could establish "serious questions," it has not argued that the costs outweigh the benefits of not granting the injunction. The closest Optium gets is a cursory statement that "permitting Cascade's California state court action would allow Cascade to forgo the dispute resolution process established by this Court and deprive Optium of this process and instead subject it to costly and protracted litigation in another court." (Mem. at 6.) But as explained above, the Special Master process for resolving claims filing disputes is not relevant to Cascade's complaint. And if this Court were to assume jurisdiction over Cascade's complaint, it would be no less costly or protracted a litigation than it would be in California.[7]

To the contrary, if Cascade is forced to litigate its claims in the Eastern District of New York, it will not only be deprived of its forum of choice, but it will have to employ local counsel and incur the additional costs of litigating this California contract dispute between California residents almost three thousand miles from home.

Because the balance of hardships tips in Cascade's favor, this Court should deny Optium's request for injunctive relief.

### 3.    There Is No Public Interest in Granting the Requested Injunction.

Optium argues that the public interest weighs in favor of granting the injunction because it would "encourage relevant parties to use this Court's dispute resolution process, as opposed to filing individual state court actions." (Mem. At 6.)

To the contrary, it would be *against* the public interest to require every private contract dispute even tangentially related to the *Visa Antitrust Litigation* to be litigated in this Court. The *Visa Antitrust Litigation* already involves thousands of interested parties and class members, and tens of thousands of disputes to be resolved. Adding one-of-a-kind contract disputes between

---

[7]    Even if there were procedures in place in this case for the resolution of contract disputes between non-class members, Cascade, as master of its complaint, should be free to proceed in California court, and Optium should not be permitted to end-run Cascade's choice of forum. *See, e.g., NSI Intern., Inc. v. Mustafa*, No. 09 Civ. 1536, 2009 WL 2601299, at *3 (E.D.N.Y. Aug. 20, 2009) (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1430 (2d Cir.1993)); *Bridge Street LLC v. RK & G Associates LLC* (E.D.N.Y., Dec. 7, 2009, No. 09 CV 1704 (ILG)) 2009 WL 4745663, at *4 ("As 'master of [its] complaint,' the plaintiff was entirely free to "elect to proceed solely under state law even if federal remedies are available.").

non-class members would further burden this Court and slow down resolution of the *Visa* litigation. This is not in the best interests of the class or the public.

## CONCLUSION

There are no issues to be decided in Cascade's breach of contract complaint that overlap with the settlement administration in this case. If Cascade's litigation proceeds in California, there is no action or ruling that a California case might make that would interfere with this Court's jurisdiction and management of the *Visa Antitrust Litigation*. If this Court grants Optium's motion, Cascade will be forced to file and litigate its complaint in this Court, nearly three thousand miles from its home and where the underlying contract was formed. For these reasons, this Court should deny Optium's request for a preliminary injunction.

Dated:  September 16  2024              */s/ Kassra P. Nassiri*
                                        Kassra P. Nassiri
                                        NASSIRI & JUNG LLP
                                        1700 Montgomery Street, Suite 207
                                        San Francisco, California 94111
                                        kass@njfirm.com
                                        (415) 762-3100
                                        *Attorney for Cascade Settlement Services LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2024, the foregoing document entitled

**CASCADE SETTLEMENT SERVICES LLC'S OPPOSITION TO OPTIUM CAPITAL**

**LLC'S MOTION FOR A PRELIMINARY JUNCTION** was served on all other parties by

causing a copy of the same to be filed electronically through the Court's ECF system.

*/s/ Kassra P. Nassiri*
Kassra P. Nassiri
