UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE     *SUA SPONTE*
AND MERCHANT DISCOUNT ANTITRUST     **REPORT AND**
LITIGATION     **RECOMMENDATION**

This document refers to: ALL ACTIONS     05-MD-1720
    (Brodie, C.J.)
    (Marutollo, M.J.)

-------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Following more than fifteen years of litigation, the United States District Court for the Eastern District of New York has approved a settlement in this antitrust action of $5.6 billion. On July 26, 2024, class counsel for the Fed. R. Civ. P. 23(b)(3) Class ("Class Counsel") alerted the Court to a class member's complaint regarding an interaction that the class member had with a third-party entity/payment processor, National Processing Alliance and its principal, Thomas Fuhrman (collectively, "NPA"). *See* Dkt. No. 9363.[1] In short, Class Counsel alleged that the class member—and potentially other class members—had received misleading information from NPA about the claims-filing process in connection with the settlement of this action.

       On September 7, 2024, the Court ordered NPA to show cause why it should not be ordered to, *inter alia*, (1) provide Class Counsel with a list of any and all class members who have signed up for claims-filing services with NPA or any associated entity; and (2) provide written notice to any such class members that they may cancel their contracts with NPA. *See* Order to Show Cause, Dkt. No. 9410.

       For the reasons set forth below, this Court *sua sponte* respectfully recommends that Chief

---

[1] Docket entries references are to the docket *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720 (MKB) (JAM) unless otherwise stated.

Judge Brodie **GRANT** the relief set forth in the Court's September 7, 2024 Order to Show Cause and direct NPA to (1) provide Class Counsel with a list of all merchants who signed up for claims-filing services with NPA; (2) provide those merchants with notice that they may cancel their contract with NPA and file their own claims, and that such notice consist solely of language approved by Class Counsel; and (3) provide Class Counsel with a copy of its call with the class member who submitted the complaint to Epiq, if it has not done so already.

This Court further respectfully recommends that Class Counsel be ordered to post a PDF and/or a weblink to the order on the Court-authorized website, https://www.paymentcardsettlement.com.

I.  **Relevant Factual and Procedural Background**

The action arises out of the claims of a putative class of over twelve million nationwide merchants who allege that Visa, MasterCard, and numerous banks that serve as payment-card issuers for those networks had adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction.  *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d 365, 368 (E.D.N.Y. 2023).

On September 26, 2018, the Court entered an Order in this multi-district litigation ("MDL") regarding third-party claims-filing services.  Dkt. No. 7260.  The September 26, 2018 Order was entered in response to a request from Class Counsel about various calls they had received from "third-parties seeking guidance regarding the appropriate language to use in solicitations and marketing materials."  Dkt. No. 7259.

The September 26, 2018 Order sets forth information that "third-party claims filing

2

companies wishing to represent merchants are required to include in any solicitation to prospective clients," including:

1. A statement that claim forms are not yet available.

2. A statement making clear that class members need not sign up for a third-party service in order to participate in any monetary relief and explaining that no-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period.

3. Information directing class members to the Court-approved website for additional information.

Dkt. No. 7260 at 1.

As stated in the September 26, 2018 Order, this information "must be included in any solicitation, in any form including websites, mail and email solicitations, contracts, telephone and in-person solicitations." *Id.* The September 26, 2018 Order further states that any solicitations without this information "may be deemed misleading and following notice and an opportunity to cure, those entities may be enjoined permanently from taking any role in the settlement." *Id.* at 2. Class Counsel was "ordered to alert all known third-party claims filing entities of the requirements within five days" of entry of the September 26, 2018 Order. *Id.*

The MDL continued over the next several years. On September 7, 2023, the Court held a status conference and requested Class Counsel to provide monthly status reports to the Court regarding any issues relating to third-party claim filers.

On July 26, 2024, Class Counsel filed its tenth monthly status report, wherein it raised an entity-specific matter regarding the conduct of NPA.[2] *See* Dkt. No. 9363 at 4. According to the status report, a class member in Florida had submitted a complaint to Epiq regarding a telephone call that the caller had received from NPA, which purportedly represented itself as the official

---

[2] On its website, NPA identifies itself as "[a] leader in payment processing." *See* https://nationalprocessingalliance.com/ (last visited September 25, 2024).

3

settlement administrator. *Id.* The class member claimed that NPA had told them that they qualified for a $5,000-$6,000 settlement award, but that in order to be eligible to receive the award, an auditor needed to travel to the class member's place of business. *Id.* Class Counsel subsequently spoke with the class member and confirmed that, contrary to NPA's purported assertion, Epiq does not send auditors. *Id.* Class Counsel also informed the class member that it appeared that they had received false and misleading information. *Id.*

As part of its investigation into the class member's complaint, Class Counsel spoke with, among others, Fuhrman. *Id.* Fuhrman "insisted that his company follows all the rules" and denied the class member's claims. *Id.* (noting that Fuhrman said "you can't do a single thing to me"). Fuhrman informed Class Counsel that NPA provides claims-filing services for free and that all of their calls are recorded. *Id.* at 5. When Class Counsel asked Fuhrman if NPA uses the settlement as a means to sell payment processing services, he stated that he did not have to answer. *Id.*

As a result of this interaction, Class Counsel expressed "concern[] that merchants are being misled by [NPA]." *Id.* Class Counsel proposed that NPA "be ordered to show cause that they are including the Court-mandated disclaimers in all solicitations, that they are not purporting to be from the official settlement administrator, and that they are providing only accurate and truthful information." *Id.*

On August 1, 2024, the Court entered an Order to Show Cause, directing NPA to submit a letter to Class Counsel, by August 9, 2024, that addressed the following items:

1. [W]hether NPA includes the Court-mandated disclaimers with all of its solicitations in connection with the current litigation, including oral solicitations;

2. [W]hether NPA purports to be from the official settlement administrator in its contacts with class members; and

3. [W]hy [NPA] should not (a) provide Class Counsel with a list of any and all

4

> class members who have signed up for claims-filing services with NPA or any associated entity, and (b) provide written notice to any such class members so that they may cancel any contract entered into with NPA for claims-filing or other services related to the current litigation.

Dkt. No. 9372. The Order to Show Cause also directed NPA to provide Class Counsel with a copy of the purported recording of the call made to the class member who submitted the complaint to Epiq. *Id.*

On August 16, 2024, Class Counsel informed the Court that NPA had agreed to provide them with a list of merchants who had signed up for claims-filing services with NPA. Dkt. No. 9390. Class Counsel also reported that NPA had agreed to provide those merchants with notice that they could cancel their contracts with NPA and file their own clams. *Id.* As a result of this agreement, the Court entered an Order indicating that the Order to Show Cause was moot and directing Class Counsel to provide a status update on these issues in its next monthly status report. *See* Aug. 23, 2024 Dkt. Order.

On August 27, 2024, Class Counsel filed its eleventh monthly status report, wherein Class Counsel informed the Court that NPA had reneged on its agreement to provide Class Counsel with the list of merchants who had signed up for claims-filing services. *See* Dkt. No. 9399 at 8. Class Counsel claimed that NPA was taking the position that Class Counsel should obtain the list of merchants from Epiq. *Id.* at 9. Class Counsel disagreed with NPA's position; Class Counsel contends that NPA's agreement to provide this information was the basis for mooting the proposed Order to Show Cause, and "the class should not have to pay for Epiq to do this work, when NPA should possess the names and caused the problem." *Id.* In light of these issues, Class Counsel requested that the Court reopen the Order to Show Cause. *Id.*

On September 7, 2024, the Court entered a second Order to Show Cause against NPA. *See* Dkt. No. 9410. The Order to Show Cause states, *inter alia*, that:

5

>By September 16, 2024, NPA shall file a letter as to why the Court should not issue an order directing NPA to: (i) provide Class Counsel with a list of any and all class members who have signed up for claims-filing services with NPA or any associated entity, and provide written notice to any such class members (blind copying Class Counsel) so that they may cancel any contract; and (ii) report to Class Counsel that the foregoing actions have been completed before the September 27, 2024 deadline for Class Counsel to file its next monthly status report entered into with NPA for claims-filing or other services related to this action.

*Id.*

On September 16, 2024, Class Counsel filed NPA's response to the Second Order to Show Cause.  *See* Dkt. No. 9420.  In its response, NPA describes its business practices and represents that "no sales are made during phone calls with class members."  Dkt. No. 9420-1 at 2.  Instead, NPA states that its calls to class members "are solely intended to arrange face-to-face meetings at the class members' locations, during which NPA provides claims-filing assistance without cost" and "no contractual obligations are imposed upon [class members] regarding third-party services."  *Id.*[3]

NPA argues that it should not be required to disclose the names of merchants who have engaged NPA for claims-filing services because disclosure "would unjustifiably expose NPA to a 'fishing expedition,' risking significant and irreparable harm to our business."  *Id.*  NPA states that "[e]ven a suggestion of impropriety, whether substantiated or not, could severely damage NPA's reputation and client relationships."  *Id.*

NPA does agree, however, to send an email to class members who signed up for claims-

---

[3] NPA also argues that "Class Counsel's report omitted key details that would have provided a more balanced and fair representation." Dkt. No. 9420-1 at 3.  For instance, NPA argues that Class Counsel's report fails to mention that Class Counsel initiated their call to NPA after working hours, around 7 PM Eastern Time, while Mr. Fuhrman was off-duty celebrating with friends.  *Id.*  NPA argues that "the context of an after-hours call, coupled with Class Counsel's hostile tone, was not inconsequential and played a significant role in the perceived adversarial nature of the conversation."  *Id.*  In response, Class Counsel claims that NPA mischaracterizes the exchanges but notes that "those issues [] are irrelevant to the Court's Order to Show Cause."  Dkt. No. 9420 at 1.

6

filing assistance. *Id.* at 4. NPA's response provides template language for this email. *Id.* (". . . As you know, NPA offers claims assistance at no cost to you. But what you may not know is that you may cancel our representation of your claim at any time if you wish to represent yourself moving forward. If you do wish to move forward on your own, the claims administrator and class counsel will continue to provide you with no-cost claims assistance going forward. If you wish to cancel our assistance, please reply 'Cancel' to this email. If you wish to continue with our assistance, please reply 'Continue' to this email.").

Class Counsel opposes NPA's template because "it differs from the draft that was previously agreed [to] in an important way," to wit: the proposed template "does not state that some NPA clients may have been led to believe NPA to be the Court-appointed Claims Administrator, or received other incorrect details regarding the case." Dkt. No. 9420 at 2. Class Counsel thus requests that if NPA is required to send a letter, that the language of the letter state what the parties previously agreed upon "so as to provide accurate and necessary information to class members." *Id.*

Class Counsel adds that, in 2022, NPA and Fuhrman were alleged to have been providing "false and/or misleading information to merchants on a website and in a video." *Id.* at 2 (citing Dkt. No. 9369-1). While the company ultimately addressed the issues presented in that situation, Class Counsel notes that "the fact that NPA is a repeat player, should weigh in favor of granting the Order to Show Cause." Dkt. No. 9420 at 2.

## II. Discussion

### A. Legal Standard

As part of its obligation to protect class members, the Court has broad authority to regulate the behavior of non-parties in their dealings with the class. *See In re Payment Card Interchange*

7

*Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014) ("The Court's authority is clear, and its obligation to protect class members is strong."). This authority includes maintaining "ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." *Id.* (citation omitted). The Court is authorized to "take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members." *Id.*; *see also Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power). The Court's "authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 (citation omitted).

The All Writs Act, 28 U.S.C. §1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary "to protect the settlement from threats by both parties and non-parties." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985)). The curative orders may extend to anyone "in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (explaining that sanctions against a nonparty would be available

8

under the Court's "inherent power" "for abuse of the judicial process."). Courts can "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at *5.

Rule 23(d) of the Federal Rules of Civil Procedure also gives courts the authority to regulate communications by parties and their counsel with class members. As the Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Erhardt*, 629 F.2d at 846. Rule 23(d) extends not only to communications that mislead or coerce, but also to those that "threaten to create confusion and to influence the threshold decision whether to remain in the class." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005).

Courts have required corrective remedies under Rule 23(d) when class members have received unauthorized communications that contain misleading information that could affect their decisions regarding the case. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d at 368; *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at *5; *see also Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG) (SMG), 2010 WL 1879922, at *6 (E.D.N.Y. May 10, 2010) (ordering defense counsel to cease communications with class members "on any matter related to this litigation" without prior consent of the Court or class counsel); *Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 490 (E.D. Pa. 1995) (ordering new opt-out phase where objectors sent misleading communications to class counsel that "contain[ed] one-sided attacks on the proposed settlement without any mention of its benefits").

9

B. **Analysis**

In light of the facts presented by Class Counsel and the response submitted by NPA, it is imperative that corrective action be taken to ensure that class members receive accurate and truthful information about this case and the claims-filing process.

Class Counsel has presented sufficient evidence that at least one class member who signed up with NPA for claims-filing services may have received misleading information about the settlement and claims-filing process. Based on the complaint received by Epiq, Class Counsel's interview with the complaining class member, and Class Counsel's communications with NPA, Class Counsel has established that at least one class member—but likely many more—may have been misled into believing that NPA is associated with the official settlement administrator or may not have been provided the Court-mandated disclaimers in their communications with NPA. Instead of refuting these allegations or producing a copy of their communications with class members, NPA agreed to take corrective measures, including providing Class Counsel with a list of clients that had signed up for claims-filing services and sending a letter to these clients regarding their right to cancel their contracts without penalty. Even in its opposition to the Second Order to Show Cause, NPA does not address whether it has, and whether it still is, complying with the Court's September 26, 2018 Order regarding third-party claims-filing services. *See* Dkt. No. 9420-1. At bottom, Class Counsel has presented the Court with sufficient evidence to warrant corrective action under both the All Writs Act and Fed. R. Civ. P. 23(d).

To ensure that any corrective action reaches all potentially-impacted class members, Class Counsel needs a list of the merchants who signed up for claims-filing services with NPA. As the entity who signed up these members, and as the entity who distributed the potentially misleading information, NPA is in the best position to prepare this list. *See In re Payment Card Interchange*

10

*Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *30 ("[C]ommon sense dictates that the onus for ensuring that solicitations to class members are truthful must necessarily fall on the third-party claims filing company seeking class members' business."). Moreover, any costs associated with the preparation of this list should be borne by NPA, not the class, not Epiq or Class Counsel.

It is also imperative that the notice sent to potentially-impacted class members adequately apprises them of the issues at hand. Specifically, these class members must be alerted to the fact that they may have received inaccurate or untruthful information, what this information consists of, and how they can receive truthful and accurate information. Class Counsel is in the best position to prepare this notice and to articulate the language that should be included.

As a result, this Court respectfully recommends that Chief Judge Brodie order NPA to provide Class Counsel with a list of all merchants who signed up for claims-filing services with NPA, and to provide those merchants with notice that they may cancel their contract with NPA and file their own claims, and that such notice consist solely of language approved by Class Counsel. Additionally, is not clear to the Court whether NPA provided Class Counsel with a copy of the purported recording of the call made to the class member who submitted the complaint to Epiq, as initially directed in the first Order to Show Cause. *See* Dkt. No. 9372. This Court respectfully recommends that NPA be ordered to provide Class Counsel with a copy of the call, if it has not done so already.

Moreover, should Chief Judge Brodie adopt this Report and Recommendation, this Court respectfully recommends that Class Counsel be ordered to post a PDF or a weblink to the order on the Court-authorized website. Posting such an order will help reduce the effects of the potential deception stemming from NPA and its affiliated webpage(s). *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2023 WL 7001851, at *1 (N.D. Fla. Oct. 14, 2023) (positing

11

an order related to a "scam" on the Court's website).

### III. Conclusion

For the reasons set forth above, this Court *sua sponte* respectfully recommends that the Chief Judge Brodie **GRANT** the relief set forth in the Court's September 7, 2024 Order to Show Cause and direct NPA to (1) provide Class Counsel with a list of all merchants who signed up for claims-filing services with NPA; (2) provide those merchants with notice that they may cancel their contract with NPA and file their own claims, and that such notice consist solely of language approved by Class Counsel; and (3) provide Class Counsel with a copy of its call with the class member who submitted the complaint to Epiq, if it has not done so already. This Court also respectfully recommends that Class Counsel be ordered to post a PDF and/or a weblink to the order on the Court-authorized website.

A copy of this Report and Recommendation is being electronically served on counsel. Class Counsel is directed to serve a copy of this Order on NPA by September 26, 2024 and file proof of service on the same date.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Chief Judge Brodie. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

12

Dated:     Brooklyn, New York         **SO ORDERED.**
        September 25, 2024

                                                    _/s/ Joseph A. Marutollo_
                                              JOSEPH A. MARUTOLLO
                                              United States Magistrate Judge