UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION<br><br>This document refers to: ALL ACTIONS | **REPORT & RECOMMENDATION**<br><br>05-MD-1720<br>(Brodie, C.J.)<br>(Marutollo, M.J.) |

-----------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Presently before the Court are two motions from non-party Optium Capital LLC ("Optium"). First, Optium moves to intervene in this antitrust multidistrict litigation pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, Fed. R. Civ. P. 24(b)(1)(B). *See* Dkt. No. 9393. Second, Optium moves for a preliminary injunction enjoining a lawsuit filed by non-party Cascade Settlement Services LLC ("Cascade") against Optium in the Superior Court of the State of California for Optium's alleged breach of a settlement agreement between the parties (the "California Action").[1] *See* Dkt. No. 9394.

For the reasons set forth below, this Court respectfully recommends that both of Optium's motions be **DENIED**.

**I.      Background**

**A.      Visa/Mastercard MDL**

In October of 2005, several complaints asserting similar antitrust claims against Visa, Mastercard, and various issuing banks were consolidated for pretrial purposes and transferred to the Eastern District of New York, where they were joined by other similar cases ("Visa/Mastercard

---

[1] The California Action is entitled *Cascade Settlement Services LLC v. Optium Capital LLC, et al.*, Case No. CV 3663 (Superior Court of California, County of Marin). *See* Dkt. No. 9394-3.

MDL"[2]).  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008).  Plaintiffs alleged that Visa and MasterCard adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction.  *Id.*

After more than fifteen years of litigation, a settlement of $5.6 billion was approved by the United States District Court for the Eastern District of New York.  *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023).  Pursuant to the terms of the settlement, merchants who do not opt out of the Rule 23(b)(3) settlement class are entitled to their pro rata share of the settlement fund "based on the Claimant's Interchange Fees Paid as compared to the total amount of Interchange Fees Paid attributable to all Claimants." Dkt. No. 7257-2 at 264.[3]  The Settlement Plan of Administration and Distribution (the "Plan of Administration"), attached as Appendix I to the Settlement Agreement, sets forth the process for the submission of settlement claims.  *See* Dkt. No. 7257-2.

On August 3, 2023, the Court appointed a Special Master, pursuant to Fed. R. Civ. P. 53, to aid and streamline disputes arising in connection with the Plan of Administration.  *See* Dkt. Nos. 8893, 9403.[4]  The Order Appointing Special Master grants the Special Master the authority "to

---

[2] Optium refers to the Visa/Mastercard MDL as the "Visa Antitrust Litigation."  The terms are used interchangeably here.

[3] Page citations are to the ECF-stamped pages, unless otherwise noted.

[4] The Court issued a Revised Order Appointing Special Master on September 3, 2024.  *See* Dkt. No. 9403. The Revised Order directs the Clerk of Court "to establish a master miscellaneous docket (In re MDL 1720 damages class settlement disputes, No. 24-MC-XXXX (E.D.N.Y.)) for disputes over claims made to the Net Cash Settlement Fund as well as any other matters the Court refers to the Special Master."  *See* Sep. 3, 2024 Dkt. Entry.  The Revised Order further states that "upon receipt of a report and recommendation from the Special Master, the Clerk of Court shall establish a dispute-specific miscellaneous docket (*e.g.*, In re MDL 1720 damages class settlement dispute no. [X], No. 24-MC-XXXX (E.D.N.Y.)), to which the relevant entities will be added as parties, and on which the Clerk of Court shall file the underlying report and

resolve any disputes or matters arising out of or relating to the Plan of Administration, including the proper scope of a requested exclusion from the Rule 23(b)(3) Settlement Class and the resolution of claims made to the Net Cash Settlement Fund as well as any other matters the Court refers to the Special Master." Dkt. No. 9403 ¶ 1. The Order further provides that such disputes "shall be raised in the first instance with the Class Administrator,[5] except for any specific matter the Court directly refers to the Special Master." *Id.* Upon receipt of a claim dispute, "[t]he Class Administrator may address the matter or refer it to the Special Master for resolution." *Id.* "If the Class Administrator addresses the matter, any interested party may appeal the Class Administrator's resolution to the Special Master." *Id.* The Special Master must then prepare a report and recommendation regarding the dispute, which is subject to *de novo* review by the Court. *Id.* Interested parties can file objections to the Special Master's reports and recommendations. *Id.* The fees and expenses charged by the Class Administrator and the Special Master are paid out of the Class Settlement Escrow Account. *Id.*; *see also* Dkt. No. 7257-2 at 26, 44.

In addition to the foregoing dispute resolution process, the Court has also taken various steps to protect against overreaching by third-party claims filing companies and to ensure that class members receive accurate information about the Visa/Mastercard MDL Settlement.[6] For example, on October 3, 2014, the Court issued an omnibus order requiring certain Court-mandated language

---

recommendation." *Id.* The Revised Order does not otherwise alter the scope of the Special Master's appointment or the process for resolving disputed claims set forth in the August 3, 2023 Order.

[5] Epiq Class Action and Claims Solutions, Inc. ("Epiq") is the Court-approved Class Administrator responsible for "effectuat[ing] and administer[ing] the Notice Plan, the exclusion process for Opt Outs, and the claims process and distribution for the members of the Rule 23(b)(3) Settlement Class." Dkt. No. 7257-2 at 11, 274.

[6] The first hearing in this case regarding allegedly misleading and false statements of a claims-filing company took place on September 12, 2013. *See* Dkt. No. 6349 at 14.

to be included in any solicitations to class members or "any contracts drafted by third-party claims filing services to be signed by class members." Dkt. No. 6349 at 34. The Court also enjoined one third-party claims filer, Premier Enterprises Group, Inc. ("Premier"), from activities relating to the MDL settlement based on a finding that Premier made materially false or misleading statements to merchants.[7] *Id.* at 57.

## B. Relevant Factual and Procedural Background Pertaining to Cascade and Optium

According to the Complaint filed by Cascade in the California Action, Cascade offers financial services related to class action settlements, focusing on claims filing and monetization. Dkt. No. 9394-3 ¶ 1. Clients typically appoint Cascade as their agent for filing claims in class action settlements, agreeing to pay a contingent fee upon recovery. *Id.* ¶ 13. Cascade also purchases class action claims from class members involved in ongoing litigation, including the Visa/Mastercard MDL. *Id.* ¶¶ 13-14.

In 2014, a group of senior employees left Cascade to start Optium, an investment firm specializing in purchasing litigation claims and settlement assets, including claims from class members in the Visa/Mastercard MDL. *Id.* ¶¶ 18-20. Concerned that these former employees might retain access to its proprietary information, Cascade threatened legal action against them and Optium for potential trade secret misappropriation. *Id.* ¶ 21.

The parties engaged in pre-litigation negotiations, resulting in a written settlement agreement on May 28, 2015 (the "Settlement Agreement"). *Id.* ¶ 25. Under this agreement, Optium was required to verify whether prospective clients had an "existing filing contract" with Cascade or Spectrum, a company acquired by Cascade. *Id.* ¶ 27. Optium's "[f]ailure to inquire

---

[7] The Court declined to enjoin several other third-party claims filers, including Spectrum Settlement Recovery ("Spectrum"), upon finding that these companies "ha[d] shown cause why injunctive relief against them should not be ordered." Dkt. No. 6349 at 3.

and obtain the information on any existing filing contract" would be considered a "knowing" breach of the agreement. *Id.* Additionally, if Optium acquired a "Visa claim" from a Cascade client, it was required to assume Cascade's filing contract on the original terms and pay Cascade a fee for such claims. *Id.*

In April 2024, the Visa/Mastercard MDL Claims Administrator notified both Cascade and Optium of a dispute involving claims filed on behalf of five class members: Vail Corporation; Peet's Coffee and Tea, Inc.; Sleepy's, LLC; The Sleep Train, Inc. ("Sleep Train"); and Redcats USA, Inc. (now FullBeauty Brands, L.P.) (collectively, the "Companies"). *Id.* ¶¶ 33, 40, 50, 59, 66. The Claims Administrator identified that both Cascade and Optium had submitted claims for the Companies, resulting in a conflict. *Id.* ¶¶ 33, 40, 50, 59, 66. The parties were referred to the Claims Administrator for a determination on which entity could proceed with filing claims for the Companies. *See* Dkt. No. 9394-6.

Cascade had previously entered into claims filing contracts with the Companies, who designated Cascade as their claims filing agent in exchange for a contingent fee. Dkt. No. 9394-3 ¶¶ 13, 36. These companies, however, later terminated their contracts with Cascade and signed contracts with Optium to sell their Visa/Mastercard MDL claims. *Id.* ¶¶ 34, 41, 42, 51, 52, 59-60. The Companies allegedly assured Optium that they had not engaged third-party claims-filing services. *See* Dkt. No. 9430-1 ¶ 4. Consequently, Optium maintained that it had legitimate authority to submit the claims and was not obligated to assume the Companies' contracts with Cascade/Spectrum under the terms of the Settlement Agreement. Dkt. No. 9394-3 ¶ 34.

## C. The California Action

On August 13, 2024, amid the ongoing claims conflict dispute before the Class Administrator, Cascade commenced the California Action against Optium and several former

Cascade employees for breach of contract and intentional interference with prospective economic relations under California law. *See generally* Dkt. No. 9394-3. Cascade's Complaint alleges that Optium breached their 2015 Settlement Agreement by persuading the Companies to end their contracts with Cascade and by refusing to assume the contracts. *Id.* ¶¶ 70-74. The Complaint seeks monetary damages and an injunction preventing Optium from "continuing to assert control over the filing of" the Companies' claims. *Id.* at 21.

Optium removed the Complaint to the United States District Court for the Northern District of California on August 19, 2024, citing federal-question jurisdiction on the ground that "[Cascade's] state law claims stem from settlement claims in the *Visa Antitrust Litigation*" and necessarily turn on federal antitrust law. *See* Dkt. No. 9394-4 at 7. Describing the process for submitting settlement claims, Optium contended that "Plaintiff's success on its state law claims depend on whether or not [the Companies] have sufficiently shown they are entitled to recover settlement funds under the federal antitrust class action." *Id.*

That same day, Optium also submitted a "Notice of Potential Tag-Along" to the Judicial Panel on Multidistrict Litigation, asserting that Cascade's Complaint relates to the Visa/Mastercard MDL. *See* Dkt. No. 9394-5. On August 21, 2024, the Judicial Panel declined to transfer the California Action to the Visa/Mastercard MDL, finding that the Complaint was "not appropriate for inclusion." *See* Dkt. No. 9422-6. Cascade then filed a motion to remand the case to California Superior Court for lack of federal subject matter jurisdiction. *See* Dkt. No. 9422-7.

On September 4, 2024, Cascade filed an Amended Complaint in the Northern District of California. *See* Dkt. No. 9422-8. The Amended Complaint withdraws Cascade's request for injunctive relief and seeks only monetary damages for Optium's alleged breach of the 2015 Settlement Agreement and intentional interference with prospective economic relations. *Id.* at 19-

20.  Cascade also informed the Claims Administrator that it was withdrawing its registration of the Companies' claims, effectively yielding them to Optium.  *See* Dkt. No. 9422-9.  Optium, in response, sought to transfer the case to this Court, arguing that the California Action is "intrinsically tied to the Visa Antitrust Litigation."  *See* Dkt. No. 9422-10 at 8.

On October 21, 2024, the Northern District of California granted Cascade's motion to remand, finding no federal subject matter jurisdiction over Cascade's state law claims.  *See* Dkt. No. 9469-1.  Finding that the Amended Complaint presented "a contract dispute governed by state law involving competing interpretations of a settlement agreement," the court held that the California Action did not "implicate significant federal issues" sufficient to confer federal question jurisdiction under 28 U.S.C. § 1331.  *Id.* at 8.  The Northern District of California therefore remanded the California Action to the Marin County Superior Court in California.  *Id.* at 9.

### D.  Optium's Motion to Intervene

On August 20, 2024, Optium moved to intervene in the Visa/Mastercard MDL as a "Plaintiff and real party in interest" under Fed. R. Civ. P. 24(a)(2), or alternatively, under Fed. R. Civ. P. 24(b)(1)(B).  *See* Dkt. No. 9393; Dkt. No. 9393-1 at 4.

Optium argues that as a class member, it has an "articulable, already proven interest in this subject of [the Visa/Mastercard MDL]," including an interest in "ensuring that the validity of Cascade's purported agreements with [the Companies] is treated consistently with this Court's previous findings and orders concerning similar third-party filing agreements."  Dkt. No. 9393-1 at 6; Dkt. No. 9429 at 2.  Optium contends that the California Action must be heard by this Court, who "has spent nearly two decades grappling with the complexities of the *Interchange Fee Litigation*, including the difficulties in administering the settlement and ensuring that class members are protected from misconduct by third-party filers."  Dkt. No. 9429 at 5-6.  Optium

argues that its "ability to protect its interest" in the Visa/Mastercard MDL could be impaired if it is not permitted to intervene because the California Superior Court—"bereft of the nuanced history behind the third-party filing agreements in this litigation, Spectrum's track record of misconduct with merchant class members, and the additional protections imposed by this Court to protect class members[—]could arrive at a different conclusion than the one intended by this Court." *Id.* at 5.

Alternatively, Optium argues that permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) is warranted because the "Complaint brought by third-party filer Cascade raises questions of law and fact that wholly derivative and almost entirely in common with those raised by all class members in Visa Antitrust Litigation." Dkt. No. 9393-1 at 8. Optium also requests that it be permitted to intervene without attaching a proposed intervenor complaint because it "is seeking intervention as a class member," and the "Court has already concluded that it is inconsistent with the public interest to allow claims to proceed outside of this forum." *Id.* at 8-9.

On September 16, 2024, Cascade filed its opposition to Optium's motion to intervene, arguing both procedural and substantive points. *See* Dkt. No. 9423). Procedurally, Cascade argues that Optium's motion should be denied for failing to include a proposed intervenor complaint, as required by Fed. R. Civ. P. 24(c). *See* Dkt. No. 9423 at 6.

On the merits, Cascade argues that Optium has not shown a right to intervene under Fed. R. Civ. P. 24(a) because Optium's interests will not be impaired by the outcome of the Visa/Mastercard MDL. *Id.* at 7. Cascade emphasizes how it withdrew its registration of the Companies' claims with the Claims Administrator and removed its request for related injunctive relief in the California Action. *Id.* As a result, Cascade contends that the California Action is now solely about whether Optium breached the 2015 Settlement Agreement and owes Cascade damages, issues that do not implicate the administration of the Visa/Mastercard MDL settlement.

*Id.*

Cascade also argues that there is no connection between the California Action and the Visa/Mastercard MDL that would justify intervention under Fed. R. Civ. P. 24(b)(1)(B). Cascade notes that no class members are bound by the 2015 Settlement Agreement or involved in the California Action, negating any common question of law or fact that might support Optium's request for permissive intervention. *Id.* Finally, Cascade argues that Optium lacks standing to intervene and that the Court does not have subject matter jurisdiction over the California Action. *Id.*

### E.     Optium's Motion for a Preliminary Injunction

On August 20, 2024, Optium filed a motion for preliminary injunction, seeking to enjoin the California Action—as well as suits in any other jurisdiction—pursuant to the All Writs Act, 28 U.S.C. § 1651(a) and traditional elements of injunctive relief. *See* Dkt. No. 9394; Dkt. No. 9394-1.[8] Optium argues that the anti-suit injunction is necessary in aid of this Court's jurisdiction

---

[8] Optium's notice of motion cites to the Anti-Injunction Act, 28 U.S.C. § 2283, but its memorandum of law also refers to the All Writs Act, 28 U.S.C. § 1651(a). *See* Dkt. Nos. 9394, 9394-1. Optium explains that it inadvertently referred to the Anti-Injunction Act in its notice of motion and meant to cite to the All Writs Act. Dkt. No. 9430 at 4 n.3. Notwithstanding this error, it is clear from the quoted language and cited references in the Notice of Motion that Optium is seeking injunctive relief under the All Writs Act. *See, e.g.*, Dkt. No. 9394-1 at 6. Indeed, Cascade recognized as much and fully briefed the issue of the Court's authority under the All Writs Act in its opposition to Optium's Motion. *See generally* Dkt. No. 9422. As a result, this Court find's Optium's error harmless and declines to limit its analysis to the statute specified in the notice of motion. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's motion for summary judgment and the defendant is not harmed by the delay in correction."); *Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, No. 3:16-CV-2832, 2018 WL 3741890, at *9 n.6 (M.D. Tenn. Aug. 7, 2018) ("Despite the incorrect statutory citation, the allegations put Starr on notice of what the claim entails and what facts support it. And, recognizing as much, Starr has briefed the issue in full. Because the arguments on both sides are fully before the court, dismissal without prejudice would only unnecessarily delay resolution of the claim."); *Vernell v. Nuvell Credit Co. LLC*, No. 15-CV-674 (FTM) (MRM), 2016 WL 931104, at *2 (M.D. Fla. Mar. 11, 2016) (declining to dismiss counterclaim that cited wrong jurisdictional statute because it was clear from the allegations that defendant intended to cite a different statute).

over the Visa/Mastercard MDL settlement and to protect the Court's established claims resolution procedures. Dkt. No. 9394-1 at 4. Optium argues that it will be irreparably harmed if Cascade is allowed to proceed with the California Action because "the California state court could resolve the disputed claims inconsistently with how this Court intended to resolve the dispute through its dispute resolution process." *Id.* at 8.

In response, on September 16, 2024, Cascade opposed the motion, arguing that it was moot due to Cascade's withdrawal of the Companies' claims from the Claims Administrator and the filing of the Amended Complaint, which no longer seeks injunctive relief against Optium. *See* Dkt. No. 9422. Cascade argues that, with these changes, there is no longer a conflict over which party can file the Companies' claims, thus eliminating any connection between the California Action and the administration of the Visa/Mastercard MDL settlement. *Id.* at 13-14.

Cascade also argues that, even if the motion is not moot, the anti-suit injunction would violate the Anti-Injunction Act, which limits federal courts' authority to interfere with state proceedings unless certain exceptions apply. *Id.* at 12-14. Cascade contends that the "in aid of jurisdiction" exception of the Anti-Injunction Act does not apply because the California Action will not disrupt the Visa/Mastercard MDL settlement or the claims administration process. *Id.* at 12-14. Cascade also argues that Optium cannot satisfy the traditional elements of injunctive relief for similar reasons. *Id.* at 14-16.

Non-party Claims Compensation Bureau, LLC ("CCB") filed a letter pointing to in *In re National Football League Players' Concussion Injury Litigation*, 923 F.3d 96 (3d Cir. 2019), where the U.S. Court of Appeals for the Third Circuit held that federal courts lack jurisdiction over third-party funding deals between class members and third-party funders. Dkt. No. 9434. CCB argues that this decision bolsters Cascade's position that the California Action falls outside the

Court's subject matter jurisdiction. *Id.*

The Court heard oral argument regarding Optium's motions on October 1, 2024 and reserved decision. *See* Dkt. No. 9453 (Transcript).

## II.   Discussion

### A.   Optium's Motion to Intervene

Optium seeks to intervene in the Visa/Mastercard MDL as a Plaintiff and real-party in interest pursuant to Fed. R. Civ. P. 24(a)(2), or alternatively, pursuant to Fed. R. Civ. P. 24(b)(1)(B), "for the limited purpose of preventing Cascade from pursuing this dispute outside of this forum." Dkt. No. 9393-1 at 4. For the reasons discussed below, Optium does not meet the requirements for intervention under either Fed. R. Civ. P. 24(a)(2) or Fed. R. Civ. P. 24(b)(1)(B).

### 1.   Legal standard

Under Fed. R. Civ. P. 24(a)(2), parties may intervene as of right if they "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992). Failure to satisfy any one of these requirements is sufficient to deny the application. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) ("Denial of the motion to intervene is proper if any of these requirements is not met.").

Under Fed. R. Civ. P. 24(b)(1)(B), the court may permit intervention for a party who makes a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ P. 24(b)(1)(B). Permissive intervention is "within the court's broad discretion." *Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 70 (E.D.N.Y. 2012). In addition to the Rule 24(a)(2) factors, "the court must consider whether permissive intervention will unduly delay

or prejudice the adjudication of the original parties' rights." *Sylla v. Amazon Lab. Union*, No. 23-CV-05261 (AMD) (TAM), 2024 WL 2079601, at *4 (E.D.N.Y. May 9, 2024) (cleaned up) (quoting Fed. R. Civ. P. 24(b)(3)).

Timeliness under Rule 24 is determined based on factors including "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes*, 25 F.3d 66, 70 (2d Cir. 1994). This timeliness assessment must be "evaluated against the totality of the circumstances before the court." *D'amato*, 236 F.3d at 84.[9]

As to both intervention of right and permissive intervention, Fed. R. Civ. P. 24(c) requires the movant to "state the grounds for intervention" and attach a "pleading that sets out the claim or defense for which intervention is sought."[10] Fed. R. Civ. P. 24(c).

### 2.     Intervention as-of-right is not warranted under Fed. R. Civ. P. 24(a)

To intervene as of right under Fed. R. Civ. P. 24(a)(2), Optium must establish that it has a "direct, substantial, and legally protectable" interest in the subject matter of the Visa/Mastercard MDL. *See Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting

---

[9] The parties do not dispute the timeliness of Optium's motion. In consideration of the factors set forth in *Pitney Bowes* and the "totality of the circumstances before the court," this Court finds that Optium's motion is timely insofar as Optium moved to intervene in this case less than one week after being served with Cascade's lawsuit in the California Action. *See* Dkt. No. 9393-1 at 7.

[10] Optium does not attached a proposed pleading to its motion to intervene. Courts in this Circuit have excused the failure to include a pleading where the accompanying motion clearly sets forth the intervenor's purpose for seeking intervention. *See, e.g., Murray v. City of New York*, No. 21-CV-6892 (EK) (VMS), 2023 WL 3984342, at *2 n.3 (E.D.N.Y. June 13, 2023) (collecting cases) (granting intervention despite intervenor's failure to file proposed pleading because the accompanying motion clearly set forth the intervenor's purpose for seeking intervention). Here, Optium's memorandum of law clearly establishes that it is seeking to intervene in this case for the purpose of obtaining an injunction enjoining the California Action. *See* Dkt. No. 9393-1. As a result, this Court finds that Optium's failure to attach a proposed pleading is not prejudicial and should not bar the Court from considering Optium's motion.

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec.*, 922 F.2d at 97.

Here, Optium has an interest in the Visa/Mastercard MDL that stems from its purchase of the Companies' claims. *See* Dkt. No. 9394-3 ¶ 34; Dkt. No. 9394-1 at 4. This interest aligns with the general interests of the Rule 23(b)(3) settlement class in securing pro-rata shares of the settlement funds. *See generally* Dkt. No. 7257-2. Critically, Optium has not shown how this interest will be impaired if it is not permitted to intervene in the Visa/Mastercard MDL, nor has Optium shown that that the Rule 23(b)(3) class representatives or Class Counsel have failed to adequately protect Optium's interests. *See Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 342 (E.D.N.Y. 2018) (explaining how Fed. R. Civ. P. 24(a) requires absent class members to show that their interests will be impaired absent intervention and that their interest is not adequately protected by an existing party).

Optium's interest in obtaining a pro-rata share of the Visa/Mastercard MDL settlement is entirely distinct from its contractual interests and obligations under the 2015 Settlement Agreement.[11] Optium contends that Cascade's state law claims are dependent on whether the Companies' contracts with Cascade/Spectrum were valid. *See* Dkt. No. 9429 at 3. But this Court is not persuaded by Optium's attempt to conflate the issues raised by Cascade's breach of contract and related business torts claims in the California Action with this Court's administration of the MDL/Visa Settlement, which is premised on the resolution of antitrust claims.

First, Optium's liability in the California Action will turn on whether Cascade had "existing

---

[11] This Court expresses no opinion as to the merits of the California Action.

filing contract[s]" with the Companies such that Optium was required to assume the contracts and pay Cascade a contingency when it purchased the Companies' claims pursuant to the 2015 Settlement Agreement. *See* Dkt. No. 9394-3 ¶ 27. While Optium argues that the "[t]he parties clearly intended that an 'existing' contract must be valid and enforceable in order to trigger Optium's obligations under the agreement," Dkt. No. 9430 at 3, Cascade argues that "whether those contracts [were] later voidable or voided is besides the point[,] [a]nd to be sure, not one has been invalidated, nor has anyone asked the Court to invalidate them," Dkt. No. 9443 at 4.

Importantly, regardless of how the California Superior Court resolves this issue of contract interpretation, Optium's interest in filing the Companies' claims and obtaining a pro-rata share of the settlement will not be impacted. This remains the case even if the California Superior Court ultimately concludes that the Companies' contracts are invalid based on Cascade/Spectrum's purported noncompliance with the Court's October 3, 2014 Order. While that decision would impact Cascade's right to recover monetary damages from Optium for breach of the 2015 Settlement Agreement, it would not prevent or hinder Optium from filing the Companies' claims or receiving its pro-rata share of the Visa/Mastercard MDL settlement. This point is underscored by Cascade's withdrawal of the Companies' claims from the Claims Administrator. *See* Dkt. No. 9422-9. As Cascade points out, there is now no longer a "claim conflict" for the Class Administrator or Special Master to resolve in accordance with the Plan of Administration or Order Appointing Special Counsel. *See* Dkt. No. 9423 at 9.

At bottom, Optium's interest in the Visa/Mastercard MDL stems from its purchase of the Companies' claims. This interest stands apart from any contractual interest that Optium has in the 2015 Settlement Agreement. While Optium argues that this Court is best equipped to determine whether Spectrum/Cascade complied with the Court's October 3, 2014 Order and that it has an

interest in obtaining consistent rulings, this Court is confident that the California Superior Court is equipped to interpret the October 3, 2014 Order, if it deems necessary to do so, and resolve Cascade's breach of contract claims under California law. But at the end of the day, that decision will not impact Optium's right to file a settlement claim in the Visa/Mastercard MDL.

As a result, Optium has failed to establish that its interest in the Visa/Mastercard MDL settlement will be impaired unless it is permitted to intervene under Fed. R. Civ. P. 24(a). *See Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972) (affirming denial of motion to intervene where intervenors failed to establish that their right to bring their own, separate action for money damages would be impaired absent intervention); *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 725 F.2d 584 (10th Cir. 1984) (holding that investor in commodity pool was not entitled to intervene as a matter of right in Commodity Futures Trading Commission action where claims procedures set up by defendant's receiver would permit the intervenor to protect his or her claimed interest in assets under the receiver's control); *Norwalk Core v. Norwalk Bd. of Ed.*, 298 F. Supp. 208, 210 (D. Conn. 1968) (denying motion to intervene because "applicants have asserted no interest which is threatened in the present action").

Independently, Optium has also not shown that the existing Plaintiffs fail to adequately represent its interests. *See* Dkt. No. 9393-1 at 8. While "the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' [courts] have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (internal citations omitted). "Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179-80. "The [Second] Circuit has not set forth an 'exhaustive list' of what may suffice to overcome

that presumption, but generally 'evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy.'" *Neversink Gen. Store v. Mowi USA, LLC*¸ No. 20 CV-9293 (PAE), 2021 WL 1930320, at \*5 (S.D.N.Y. May 13, 2021) (quoting *Butler*, 250 F.3d at 180); *see also Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987) ("So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented.").

Here, both Optium and the Rule 23(b)(3) class share the same interest: obtaining their pro-rata share of the settlement fund. Optium's conclusory and circular claim about how its "interests can only be adequately represented if it is treated consistently with other class members," Dkt. No. 9393-1 at 8, is insufficient to overcome the presumption of adequate representation in this case. *See Neversink*, 2021 WL 1930320, at \*5 (finding intervenors' conclusory claims inadequate representation insufficient to warrant intervention under Fed. R. Civ. P. 24(a)). And as Optium has not presented any "evidence of collusion, adversity of interest, nonfeasance, or incompetence" on the part of the Rule 23(b)(3) class representatives or Class Counsel, Optium has failed to meet its burden of establishing inadequacy of representation under Fed. R. Civ. P. 24(a). *See id.*; *see also Remick v. City of Philadelphia*, No. 20-CV-1959, 2022 WL 742707, at \*15 (E.D. Pa. Mar. 11, 2022) (denying motion to intervene where "[n]o potential intervenor has shown 'proof of collusion between the representative and the adverse party,' that 'the representative has an interest adverse to the intervenor,' or a 'failure of the representative to fulfill his duty'" (citation omitted)).

Ultimately, Optium has an interest in the Visa/Mastercard MDL insofar as it is a purchaser of class member claims. Like the Rule 23(b)(3) class representatives, Optium has an interest in

obtaining its pro-rata share of the settlement fund.  As Optium has not established that this interest will be impaired unless it is permitted to intervene or that the existing parties are inadequately representing this interest, Optium has failed to establish a right to intervene under Fed. R. Civ. P. 24(a).

Accordingly, this Court respectfully recommends that Optium's motion to intervene under Fed. R. Civ. P. 24(a) is denied.

### 3. Permissive intervention is also not warranted under Fed. R. Civ. P. 24(b)(1)(B)

For similar reasons, Optium has also failed to satisfy the requirements of permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003) ("[I]nsofar as we affirm the District Court's denial of [the] motion to intervene as a matter of right, we need not also examine its denial of permissive intervention," given that "[s]ubstantially the same factors are considered in determining whether to grant an application for permissive intervention.").

Here, the claims asserted by Cascade in the California Action do not share any "common questions of law or fact with" the antitrust claims asserted in the Visa/Mastercard MDL.  *See* Fed. R. Civ. P. 24(b)(1)(B); *see also United States v. Carrols Dev. Corp.*, 454 F. Supp. 1215, 1221 (N.D.N.Y. 1978) (denying permissive intervention because intervenor's interest in protecting its rights under a lease and covenant agreement did not raise any questions of law or fact in common with those involved in main antitrust action).  Moreover, allowing Optium to intervene in this lawsuit will "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *see Levin v. Mississippi River Corp.*, 47 F.R.D. 294, 299 (S.D.N.Y. 1969) (denying permissive intervention upon finding that "allow[ing] applicant to intervene, would greatly complicate the present litigation, would involve the trial of collateral issues unduly

delaying resolution of the issues raised by the original parties, and would consequently prejudice their rights.").  It is in the interest of this Court and the parties that the Visa/Mastercard MDL is resolved as expeditiously as possible.  Allowing Optium to intervene to adjudicate unrelated breach of contract claims with a non-class member would seriously undermine these efforts.

Accordingly, this Court respectfully recommends that Optium's motion to intervene under Fed. R. Civ. P. 24(b)(1)(b) be denied.

**B.    Optium's Motion for a Preliminary Injunction Enjoining the California Action**

Optium's motion for a preliminary injunction seeks an order enjoining the California Action pursuant to the All Writs Act, 28 U.S.C. § 1651(a), the "in aid of jurisdiction" exception to the Anti-Injunction Act, 28 U.S.C. § 2283, and traditional elements of injunctive relief.  *See* Dkt. Nos. 9394, 9394-1.  For the reasons explained below, Optium has failed to establish that the "in aid of jurisdiction" exception applies or that it is entitled to an anti-suit injunction against the California Action under the traditional elements of injunctive relief.

**1.    Legal standards**

**a)    All Writs Act and the Anti-Injunction Act**

The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  The Supreme Court has interpreted this statute to authorize federal courts to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977).

The All Writs Act must be read in tandem with the Anti-Injunction Act, 28 U.S.C. § 2283, "which tempers the potency of the All Writs Act by limiting the circumstances under which a

federal court may enjoin state court proceedings." *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013). Pursuant to the Anti-Injunction Act, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "If an injunction falls within one of these three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 225 (E.D.N.Y. 2018) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 143 (3d Cir. 1998)).

In construing the "in aid of jurisdiction" exception, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Schurkman*, 728 F.3d at 135 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)). Moreover, because "the Anti-Injunction Act's prohibitory provision 'rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction.'" *Schurkman*, 728 F.3d at 135 (quotation omitted). Thus, "[p]roceedings in state courts . . . should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court." *Id.* (quotation omitted).

**b)      Traditional elements of injunctive relief**

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, No. 22-CV-1318, 2024 WL 4559452, at *8 (2d Cir. Oct. 24, 2024) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510

(2d Cir. 2005)).

"A party seeking injunctive relief must 'establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest.'" *New Falls Corp. v. Soni Holdings, LLC*, No. 19-CV-00449 (HG) (LGD), 2022 WL 20058522, at *2 (E.D.N.Y. Sept. 13, 2022) (quoting *Conn. State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022)); *see also Esses v. Rosen*, No. 24-CV-3605 (RPK) (CLP), 2024 WL 4494086, at *2 (E.D.N.Y. Oct. 15, 2024) ("The Supreme Court has consistently instructed that unless a statute states otherwise, a court's decision whether to grant a preliminary injunction is governed by 'the traditional four-factor test . . . articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).' Under that test, 'a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" (citing *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1574 (2024) and quoting *Winter*, 555 U.S. at 20)).

## 2.    The necessary in aid of jurisdiction exception does not apply here

Optium's central argument is that this Court has the authority to enjoin Cascade from proceeding with the California Action under the "in aid of jurisdiction" exception to the Anti-Injunction Act.  Dkt. No 9394 at 7.  Optium argues that an anti-suit injunction is necessary because the California Action threatens to interfere with this Court's jurisdiction over the Visa/Mastercard MDL settlement by permitting Cascade "to forego the court's claims resolution process."  Dkt. No. 9394-1 at 8.  Optium contends that Cascade must instead litigate its breach of contract and

20

related business torts claims in accordance with the procedures set forth in the Order Appointing Special Master to both protect that procedure and to ensure that the issues are resolved in accordance with the Court's prior orders regarding third-party-claims filers. *Id.*; *see also* Dkt. No. 9430 at 7.

The necessary in aid of jurisdiction exception of the Anti-Injunction Act permits federal injunctive relief against state court actions where "necessary in aid of [the court's] jurisdiction." 28 U.S.C. § 2283. Historically, courts applied this exception only to cases involving the disposition of real property where the federal court acquired jurisdiction over a *res* before the state court. *See Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 641 (1977) ("[T]he 'necessary in aid of' exception to § 2283 may be fairly read as incorporating this historical *in rem* exception."); *Schurkman*, 728 F.3d at 137 (explaining that the "in aid of jurisdiction" exception "is generally reserved for state court actions *in rem* . . . [b]ecause an *in personam* action involves a controversy over liability rather than over possession of a thing," and thus, "an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending" (internal quotations and citation omitted)); *Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008) (explaining historical exception). In these cases, the federal court was "thought to have custody of the property, and thus [could] enjoin other courts from hearing the case." *Wyly v. Weiss*, 697 F.3d 131, 138 (2d Cir. 2012) (explaining how a state court's exercise of jurisdiction over a res could "necessarily impair[], and may, defeat" the federal court's jurisdiction over the res (citation omitted)); *New Falls Corp.*, 2022 WL 20058522, at *3 (explaining that this exception "generally applies only where necessary to protect a federal court's jurisdiction over a *res*" (citation omitted)).

Over time, courts have extended the "necessary in aid of jurisdiction" exception beyond *in*

*rem* cases to cases that, while technically in *personam*, are analogous to *in rem* cases, or, even more broadly, to cases where some federal injunctive relief may be necessary "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295; *see also Sierra*, 528 F. Supp. 2d at 468 (collecting cases). For example, "[c]ourts have analogized both multidistrict [] proceedings and large class actions to *in rem* actions." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2005 WL 2100930, at *3 (E.D.N.Y. Aug. 31, 2005). This analogy is "based in part on the limited resources of a defendant in a mass tort or securities case and the court's interest in both equitable treatment of plaintiffs and in the possible viability of corporate defendants." *Id.*

In *In re Baldwin*, the U.S. Court of Appeals for the Second Circuit upheld a federal injunction against 32 state attorneys general preventing them from bringing state court *in personam* claims against defendants named in a federal multidistrict litigation securities action on the ground that the state actions would hinder the settlement of the federal suit. *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985). In affirming the injunction, the Second Circuit recognized how "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control. *Id.* The Second Circuit affirmed the district court's decision finding that an injunction was "necessary or appropriate in aid of" the federal court's jurisdiction because the state court actions threatened the "court's ability to craft a settlement" because "[i]f states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement." *Id.* at 338.

Similarly, in *Battle*, the U.S. Court of Appeals for the Eleventh Circuit upheld an injunction

enjoining a state court proceeding, explaining how the "lengthy, complicated litigation" was the "virtual equivalent of a *res*." *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) (citation omitted). In *Battle*, the district court had entered final judgment pursuant to a settlement agreement in three consolidated class actions alleging federal antitrust violations in connection with defendants' burial insurance policies. *Id.* at 779. Thereafter, a group of plaintiffs commenced class actions in state court against defendants, alleging a failure to provide services required under their burial policies. *Id.* at 880. Though plaintiffs alleged breach of contract claims for money due under their burial policies, the claims were "substantially similar" to the federal consolidated litigation. *Id.* at 779-80. In affirming the injunction against the state court actions, the Eleventh Circuit explained how "[a]ny state court judgment would destroy the settlement worked out over seven years, nullify this court's work in refining its Final Judgment over the last ten years, add substantial confusion in the minds of a large segment of the state's population, and subject the parties to added expense and conflicting order." *Id.* Thus, the court found that it "it ma[de] sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered." *Id.* at 882.

Echoing the concerns in *In re Baldwin* and *Battle*, the U.S. Court of Appeals for the Third Circuit upheld an anti-suit injunction in a case where there was a conditional class certification and pending settlement, noting that "[i]n complex cases where certification or settlement has received conditional approval, or perhaps even where settlement is pending, the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002). Like the courts in *In re Baldwin* and *Battle*, the court in *In re Diet Drugs* was concerned that the state court action could threaten the federal settlement, which had taken significant time

and resources to reach. *Id.*

But a federal court's involvement in complex litigation does not, on its own, justify an anti-suit injunction "in aid of" the court's jurisdiction. *See Wyly*, 697 F.3d at 139 ("We have never held that a district court's involvement in complex litigation justifies, without more, issuance of an injunction "in aid of" the court's jurisdiction, and we decline to create such a rule here."); *In re Diet Drugs*, 282 F.3d at 236 ("This is not to say that class actions are, by virtue of that categorization alone, exempt from the general rule that *in personam* cases must be permitted to proceed in parallel."). Similarly, "the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same in *personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action." *In re Baldwin*, 770 F.2d at 336. Instead, the "necessary in aid of jurisdiction" exception of the Anti-Injunction Act only applies if the state court action has the potential to "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *Atl. Coast*, 398 U.S. at 295.

Here, Optium has not demonstrated that the California Action will "seriously impair" this Court's ability to maintain its control over the Visa/Mastercard MDL settlement such that an anti-suit injunction is necessary to protect the Court's jurisdiction.[12] *Atl. Coast*, 398 U.S. at 295. The

---

[12] As noted above, the Anti-Injunction Act "provides three exceptions under which a district court may determine a stay is appropriate." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 159 (2d Cir. 2019). Optium appears to argue that only the "in aid of jurisdiction" exception applies here. Dkt. No. 9394-1 at 7. In any event, there is no basis to argue that the other exceptions apply. "The Anti-Injunction Act's first exception applies when a specific statute enacted by Congress authorizes a federal court to enjoin state court proceedings." *New Falls Corp.*, 2022 WL 20058522, at *3 (citation omitted). But "the mere existence of a federal claim does not, by itself, allow the Court to disregard the [Anti-Injunction Act's] limitations to federal jurisdiction." *Id.* (citation omitted). This first exception does not apply here, as Cascade has not asserted any federal claims against Optium (and indeed, the Northern District of California has remanded the case back to state court).

Similarly, the third exception to the Anti-Injunction Act—often referred to as the "relitigation exception" and "designed to implement well-recognized concepts of claim and issue preclusion," *New Falls Corp.*,

dispute between Cascade and Optium centers on a private breach of contract dispute that is, at best, only tangentially related to the antitrust claims in the Visa/Mastercard MDL.  Importantly, Cascade is neither a class member nor subject to this Court's jurisdiction.  *See* Dkt. Nos. 9422-6, 9469-1; *see also Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1271 (9th Cir. 1982) (affirming district court's refusal to enjoin state court action because the plaintiff in the state court action was "not a direct purchaser, ha[d] never been and [could not] be a member of the federal class, and ha[d] never been subject to the jurisdiction of the [MDL]").  Although the Second Circuit has recognized that federal courts can enjoin state court proceedings even when the state court plaintiffs are not participants in the federal case, this applies only if the enjoined claims seek damages that benefit the same plaintiffs as those in the federal case.  *See In re Baldwin*, 770 F.2d at 337.

But here, Cascade is not seeking damages on behalf of the Plaintiffs in the Visa/Mastercard MDL.  Nor is Cascade seeking damages from the Visa/Mastercard MDL Defendants.  Indeed, this is not a case where non-parties to a federal multidistrict litigation are requesting damages in a state court case on behalf of plaintiffs in a pending federal case.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 2005 WL 2100930, at *6 (distinguishing *Baldwin* because plaintiffs in state court action were not parties to the multidistrict litigation and did not seek damages from the "same configuration of defendants" as in the multidistrict litigation).  This is also not a situation where a judgment entered in the California Action could threaten the resources of the Defendants in the Visa/Mastercard MDL.  *See In re Visa Check/Mastermoney Antitrust Litig.*, 2005 WL 2100930, at *3.  Nor is this a case where some class members, after committing to an agreement in a federal

---

2022 WL 20058522, at *3—is not applicable here.  The relitigation exception to the Anti-Injunction Act does not apply because Cascade's Complaint does not raise any issues that might trigger claim preclusion or issue preclusion in the present Visa/Mastercard MDL.

multidistrict litigation, went to state court to subvert or improve upon the federal settlement. *See In re Diet Drugs*, 282 F.3d at 226.

Rather, the California Action poses no threat to this Court's jurisdiction over the Visa/Mastercard MDL settlement. Regardless of whether Optium is deemed liable for breach of the Settlement Agreement, Optium will still be entitled to receive its pro-rata of the Visa/Mastercard MDL settlement funds pursuant to the Plan of Administration. *See* Dkt. No. 7257-2. The California Superior Court will merely decide whether Optium must give a portion of the settlement proceeds to Cascade as a contingency under the terms of the Settlement Agreement. *See generally* Dkt. No. 9394-3. That determination, which turns on an issue of contract interpretation under California law, will have no impact on this Court's ability to finalize the Visa/Mastercard MDL settlement.

Optium nonetheless argues that the parties' competing interpretations of the Settlement Agreement threaten to frustrate the Court's prior orders. *See* Dkt. No. 9430 at 7. Pointing to this Court's October 3, 2014 Order imposing certain requirements on third-party claims filers, Optium argues that whether the Companies' contracts were "existing" under the terms of the Settlement Agreement hinges on whether Cascade/Spectrum complied with the requirements set forth in the Order. *Id.* Optium contends that Cascade/Spectrum violated this Order by not sending the required disclaimer notices or amending its contracts, and as a result, the Companies' contracts are invalid and were thus not "existing" under the terms of the Settlement Agreement. *Id.* Optium argues that this interpretation is supported by the plain meaning of the Settlement Agreement because "any contrary interpretation requiring Optium to inquire about *in*valid, *no-longer-existing* contracts would be entirely nonsensical." *Id.* (emphasis in original).

But as explained above, even if the California Superior Court ultimately interprets the

Settlement Agreement to apply to "valid, existing" contracts and decides that Cascade/Spectrum's contracts with the Companies failed to comply with the October 2014 Order, that decision will have no impact on this Court's distribution of the Visa/Mastercard MDL settlement. In short, no class member's interests will be affected by the California Superior Court's decision. And though Optium argues that this Court is the only appropriate forum to decide whether Cascade/Spectrum complied with the October 3, 2014 Order, a California state court is equipped to perform a breach-of-contract analysis in connection with its interpretation of the Settlement Agreement under California law.

Accordingly, this Court respectfully recommends that Optium's motion for preliminary injunction be denied because the requested relief is not necessary in aid of this Court's jurisdiction over the Visa/Mastercard MDL settlement.

### 3. The traditional elements of injunctive relief also do not support an anti-suit injunction

For similar reasons, the traditional elements of injunctive relief also do not support an injunction against the California Action.

As explained above, as a general rule, a party seeking a preliminary injunction "must establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New Falls Corp. v. Soni Holdings, LLC*, 2022 WL 20058522, at *2 (cleaned up). While the movant must establish all three elements, "[i]rreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). "Irreparable harm is injury that is neither remote nor speculative, but

actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

Here, Optium has failed to establish that it will be irreparably harmed in the absence of an anti-suit injunction against the California Action. Optium argues that absent injunctive relief, it will suffer "irreparable harm because [the California Action] creates the risk that the California state court could resolve the disputed claims inconsistently with how this Court intended to resolve the dispute through its dispute resolution process." Dkt. No. 9394-1 at 8. But given that Cascade has (1) withdrawn from all claim-filing conflicts with Optium and (2) filed the Amended Complaint that seeks only money damages, Plaintiff's argument is moot and cannot support a claim of irreparable harm.[13] *See State Farm Mut. Auto. Ins. Co. v. Eclipse Med. Imaging, P.C.*, 700 F. Supp. 3d 4, 12 (E.D.N.Y. 2023) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" (citation omitted)).

Optium has also failed to establish that there are "sufficiently serious questions" going to the merits of Cascade's claims. *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020). Aside from simply asserting its position, Optium has made no effort to explain why its interpretation of the Settlement Agreement should necessarily prevail over

---

[13] In its reply brief, Optium argues that it faces irreparable harm because "[t]here is no mechanism in place to prevent Cascade from re-registering these same claims prior to the claims filing deadline, thereby reviving this dispute for the Special Master after Cascade has solidified a forum of its choice." Dkt. No. 9430 at 11 n.6. But as Cascade has not re-registered the Companies' claims with the Claims Administrator and has expressed no intent to do so, this too is insufficient to establish irreparable harm. *See Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *State Farm Mut. Auto. Ins. Co.*, F. Supp. 3d at 12 ("irreparable harm must be shown to be actual and imminent, not remote or speculative").

Cascade's interpretation under California contract law.  Cascade also notes that Optium "has not even accurately summarized Cascade's complaint for this Court," arguing that while "Optium writes that 'Cascade asserts that [certain class members] owe it money notwithstanding that these [class members] entered into subsequent contracts with Optium to sell their Visa Antitrust Litigation claims to Optium,' [] nowhere in Cascade's complaint does it make any such assertions, and Cascade has not named any class member as a defendant in its lawsuit."  Dkt. No. 9422 at 18 ("Even a cursory read of Cascade's complaint makes clear that the dispute concerns only Cascade and Optium, and no class member's interest is implicated in the lawsuit.").  Optium has therefore failed to establish that there are "sufficiently serious questions" going to the merits of Cascade's claims.  *See AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 473 (S.D.N.Y. 2010) (holding that movant failed to establish likelihood of success on the merits where movant only presented its interpretation of the underlying contract without establishing why its interpretation should prevail).

Additionally, Optium has not established that the balance of hardships tips in its favor. Here, too, Optium merely rehashes its argument that "permitting Cascade's California state court action would allow Cascade to forgo using the dispute resolution process established by this Court and deprive Optium of this process and instead subject it to costly and protracted litigation in another court."  Dkt. No. 9394-1 at 9.  But as explained above, the Special Master process for resolving claims filing disputes is not relevant to Cascade's claims, and Optium fails to explain why litigating Cascade's claims in a California court would be so "costly," especially considering that both parties are located in California and their dispute arises under California law.

Moreover, an anti-suit injunction against Cascade would impose an undue hardship on Cascade, who would effectively be prevented from litigating its claims in any court.  Indeed, the

injunction Optium seeks would bar Cascade from litigating its claim in any other jurisdiction but this Court. *See* Dkt. No. 9394; Dkt. No. 9394-1. But given that the Northern District of California has already been determined that there is no federal subject matter jurisdiction over Cascade's claims, Dkt. No. 9469-1, an anti-suit injunction against the California Action would effectively deprive Cascade of *any* forum to litigate its claims. The balance of hardships therefore weighs against granting Optium's motion.

Finally, an injunction is not in the public interest. To the contrary, this Court agrees with Cascade that "it would be *against* the public interest to require every private contract dispute even tangentially related to [the Visa/Mastercard MDL] to be litigated in this Court." Dkt. No. 9422 at 19. The Visa/Mastercard MDL already involves thousands of interested parties and class members, and tens of thousands of disputes to be resolved. This private breach of contract dispute brought by a non-class member need not be added to the list.

Accordingly, this Court respectfully recommends that Optium's motion for preliminary injunction be denied.[14]

## III.   <u>Conclusion</u>

For the reasons explained above, this Court respectfully recommends that Optium's motion to intervene and motion for a preliminary injunction be **DENIED**.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Chief Judge Brodie. Failure to file objections within this

---

[14] In light of this recommendation, the undersigned declines to consider the arguments raised by non-party CCB. *See* Dkt. No. 9434.

period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            November 5, 2024                   **SO ORDERED.**

                                            */s/ Joseph A. Marutollo*
                                            JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge