**Robbins Geller Rudman & Dowd LLP**

Chicago   Melville   Nashville   San Diego   Wilmington
Boca Raton   Manhattan   Philadelphia   San Francisco   Washington, D.C.

December 20, 2024

VIA ECF

Magistrate Judge Joseph A. Marutollo
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom N324
Brooklyn, NY  11201

      Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
            No. 1:05-MD-1720 (MKB)(JAM)

Dear Judge Marutollo:

Rule 23(b)(3) Class Counsel ("Class Counsel") responds to cardsettlement.org's opposition (ECF 9510) to the Court's Order to Show Cause dated December 11, 2024 (ECF 9503) and addresses Merchant Stronghold's failure to respond to the Court's Order to Show Cause.  Because Merchant Stronghold failed to respond, it should be permanently enjoined from any role in the Settlement, based on its fraudulent submission of 48 contracts that were never authorized or signed by any class members.

Cardsettlement.org's response fails to address (with anything other than general and unsubstantiated assertions) the concerns raised by the Order to Show Cause and hence cardsettlement.org should: (1) also be permanently barred from any role in the settlement; (2) not financially benefit from the contracts it entered into with class members; and (3) pay the Class Administrator ("Epiq") all administrative costs related to the past misleading conduct that has drained settlement funds as well as future costs related to notice and assistance to class members affected (some 13,000+).

**Merchant Stronghold**

On or around December 3, 2024, Class Counsel discovered that a referral partner of cardsettlement.org, Merchant Stronghold, was "signing up" merchants for claims-filing services without their knowledge or consent.  *See* ECFs 9489, 9495.  This conduct was discovered because a class member contacted Epiq and Epiq in turn contacted Class Counsel.  *See* discussion at ECFs 9489, 9495.  Class Counsel immediately wrote to cardsettlement.org demanding information regarding this plainly fraudulent situation.  Despite knowing about this issue for days, cardsettlement.org failed to alert Class Counsel or Epiq to the problem.  While it does appear cardsettlement.org sent a cease and desist to Merchant Stronghold soon after learning of the fraud, it did not share this with Class Counsel or Epiq until confronted by Class Counsel.  Class Counsel also wrote to Merchant Stronghold on

December 4, 2024. To date, the only response received from Merchant Stronghold is attached here as Exhibit A. That message did not provide information as to whether additional merchants had been wrongly signed up. Based on the company's failure to respond to the Court's Order to Show Cause and the fraudulent nature of its activities as shown in the record, Class Counsel respectfully requests that Merchant Stronghold be permanently enjoined from having any role in the Settlement. *See* ECF 9502-1 at 2, ¶2.

**Cardsettlement.org**

On December 11, 2024, the Court issued an Order to Show Cause requiring cardsettlement.org to provide a response as to why: (1) its contracts should not be cancelled at its expense; (2) provide an explanation as to why it should not be permanently barred from settlement-related services; (3) provide written responses as to why sanctions should not be imposed, including all costs incurred by Epiq; and (4) providing a complete list of referral partners, all versions of written processes and procedures, including the date of implementation and confirmation that merchants in fact consented to signing up for cardsettlement.org's claims-filing services.

**Cardsettlement.org Fails to Fully and Appropriately
Respond To the Order to Show Cause**

Cardsettlement.org's response (ECF 9510) does not properly address the issues before the Court. The response does not answer the most basic questions; submits meaningless information concerning other business ventures and roles on reality television; and in direct contravention of the Court's Order, notably fails to show when various process changes were made or include all versions of such processes or procedures. *See* ECF 9503, ¶4 (requiring "all versions of written processes and procedures, including the dates that processes and procedures were implemented"). The evidence shows that these process changes were implemented only after numerous issues related to false and misleading statements and fake submissions came to light. These after-the-fact efforts do nothing to quell the concerns of Class Counsel and Epiq that the already submitted contracts and claims are not fraudulent. Nor do these belated changes cause Class Counsel and Epiq to have confidence that cardsettlement.org takes its responsibilities seriously in an affirmative manner.

Significantly, cardsettlement.org fails to confirm "that merchants had in fact consented to sign up for cardsettlement.org's claim filing services." *Id.* at 2. It instead relies on innuendo that the contracts are legitimate based on a third-party technology consultant's statement that "of CardSettlement.org's 13,269 clients submitted to Epiq, approximately 11,810 (89%) interacted with CardSettlement.org at least one time after the authority to represent contract had been signed and after the client had already been provided with a copy of the signed agreement." ECF 9510 at 3. Notably, this statement is in a letter and not made under penalty of perjury. ECF 9510-2 (Declaration of Greg Frierson ("Frierson Decl.")), Ex. B. Furthermore, the term "interacted" is vague and

cardsettlement.org does not explain what interacted means. ECF 9510 at 3. In addition, without knowledge of the nature of the "interactions" it is impossible to draw any inference with respect to the real issue – whether the claimed representation is legitimate. The information provided about the number of interactions post-contracting in no way proves or supports the notion that this means those merchants' contracts were legitimately procured. Further, and importantly, more than 1,400 merchants have not interacted. Hiring a consultant to create a diversion instead of expending resources to actually find out and report the truth adds to Class Counsel's concerns about cardsettlement.org's *bona fides* rather than allays them.

**Cardsettlement.org Continues to Have Issues**

In addition, despite having to respond to the Order to Show Cause, it appears that cardsettlement.org is continuing to work with referral partners engaged in improper practices. On December 17, 2024, an executive at Epiq happened to receive a solicitation from what appears to be a referral partner of cardsettlement.org.[1] This email is reproduced below:

**From:** John Rogers <john@acescampaigns.com>
**Sent:** Tuesday, December 17, 2024 2:39 AM
**To:** REDACTED
**Subject:** Visa/Mastercard 5.5B Settlement - How To Sign Up Your Company

> You don't often get email from john@acescampaigns.com. Learn why this is important

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe. Report phishing by using the "Phish Alert Report" button above.

ADVANTAGE 1-888-267-6097
CONTINUING EDUCATION SEMINARS

I. **Visa/Mastercard 5.5B settlement How to sign up your company**

---

[1] Counsel for cardsettlement.org and Class Counsel held a zoom conference on December 19, 2024 to discuss this email and other issues.

Magistrate Judge Joseph A. Marutollo
December 20, 2024
Page 4



Sign Up Now

I hope this email finds you well.

I'm reaching out to share a time-sensitive opportunity that could potentially bring unexpected funds to your business. You may be eligible to participate in the Visa/Mastercard class action settlement, which has set aside 5.54 Billion for businesses like yours. The deadline to submit your claim quickly arrives on February 4, 2025.

Signing up is incredibly quick and easy—it will take no more than 2 minutes of your time. You can complete the entire process, including e-signing your documents, right from your phone or computer.

Here's why you should consider signing up:

● Effortless Process: Quick and easy online sign-up.

● No Upfront Costs: The service is contingency-based, meaning we only get paid when you do.

● Help With Your Submission: About 1/3 of the settlement claims have potential issues preventing them from receiving a settlement. We're here to help you get these problems solved. (this is definitely worth a few minutes!)

Don't miss out on this chance to claim funds that could potentially be yours. Click the link to get started:  **HERE**

If you have any questions or need assistance, please reply to this email.

**II.  Class members need not sign up for a third-party service in order to participate in any monetary relief. No-cost assistance is available from the Class Administrator and Class Counsel during the claims-filing period. For further information please visit Here**
**III.**



Sign Up Now

> Advantage Continuing Education Seminars
>
> 7247 NW 22nd Drive, Pembroke Pines, Florida, 33024, US
>
> Don't want to receive any more email from us?
> Simply unsubscribe from our list.

This email links to cardsettlement.org. The email makes false statements, including that 1/3 of claims submitted have a problem. The email is also confusing as it is unclear whether the class member is signing up to file their claim or, as it would actually be doing, signing up for claims-filing services – a critical distinction. Also concerning is that the email sender and the supposed business, "Advantage Continuing Education Seminars," do not appear on the list submitted by cardsettlement.org that purports to include all referral partners. *See* Frierson Decl., Ex. E.

Upon receiving this email, Class Counsel immediately wrote to cardsettlement.org's counsel and pointed out the false statements and that the person sending the email was not on the referral partner list.[2] Cardsettlement.org's counsel responded on December 18, 2024. The response, however, was lacking.

**Cardsettlement.org's Response to the Order to Show Cause**
**Demonstrates it Should Be Barred from Any Role in the**
**Settlement and Arrangements Made to Assist Class Members**

Cardsettlement.org's response provides irrelevant information in an effort to show the people running the entity are respectable business people. That one of the gentlemen served as a judge on a reality television show does not show that cardsettlement.org is a legitimate entity that should be permitted to profit off class members by providing third-party claims-filing services. The other business ventures are similarly irrelevant except to the extent that those businesses were potential sources of merchant sign ups, which they do not explain.

Cardsettlement.org's submission also raises numerous troubling questions. For example, Mr. Hall states he is a partner at an accounting firm with over 35,000 current active client engagements. ECF 9510 at 2. But he does not provide basic information such as: (1) the name of the accounting

---

[2] Counsel for cardsettlement.org attempted to explain that while the email was sent by one person, they work under a person who is listed as a referral partner. Class Counsel has no way to know this, obviously. He stated there was a code associated with this referral partner, also something unknown to Class Counsel or Epiq.

firm; (2) how many of the 13,000+ contracts are clients of the accounting firm; or (3) whether he personally signed them up. *Id.* The information is readily available but was withheld.

Cardsettelement.org also states that Messrs. Frierson and Rapoport were partners, along with Mr. Hall, in a company called MyTown2Go, a residential restaurant delivery service that had over 4,000 restaurant partners and operated in almost 300 cities across the United States. *Id.* Yet again, they fail to the tell this Court: (1) how many of the 13,000+ contracts were signed from the over 4,000 restaurant partners; and (2) whether they personally signed them up.

Even more troubling, cardsettlement.org states that Messrs. Rapoport and Hall are also partners in a credit card merchant services business, where since 2012 they have been specializing in credit card processing, hardware, and software for payment acceptance; their clients have included major hotel chains like Ramada. ECF 9510 at 2. The submission does not provide: (1) the name of the credit card merchant services business; (2) how many of the 13,000+ contracts were signed from the credit card merchant services business; or (3) whether they personally signed them up. This information was known yet withheld.

Cardsettlement.org submitted a list of over 2,200 partners in its "network." Frierson Decl., Ex. E. It is unclear what is meant by network. Further, certain of its referral partners do not appear on its list despite Class Counsel having been made aware of their existence. Cardsettlement.org's submission does not identify how many of the 13,000+ contracts were signed from the more than 2,200 referral partners. Class Counsel and Epiq cannot determine which referral partners have submitted contracts. Cardsettlement.org also failed to explain how it confirmed that these contracts were authentic and maintained oversight over each of the 2,200 referral partners despite clear direction from the Court.

Cardsettlement.org states it has systems and standard operating procedures in place to minimize and prevent fake and fraudulent claims. *Id.* Specifically, they claim there are six systems that are applied to each client, one automated, and five that are human and process driven. All of these systems and procedures are attached to the Frierson Declaration. Frierson Decl., Ex. A. Notably, at no point does cardsettlement.org state when these systems were put in place. It appears these systems were not implemented until after Class Counsel discovered the false and misleading claims being made as well as the fake contracts (such as one naming J.K. Rowling) being submitted. Indeed, Mr. Rapoport notes that the company updated its client onboarding process on November 20, 2024. *See* ECF 9510-3 (Declaration of Lawrence Rapoport), ¶4. Again, no details are provided. Mr. Rapoport did not explain how the client onboarding process changed and whether there was even a process in place before November 20, 2024. Importantly, he did not explain what, if anything, cardsettlement.org did prior to November 20, 2024 to prevent fraud, raising the possibility of more unknown fraud.

Cardsettlement.org's submission raises more questions than it answers.  The information and explanations it provides are superficial and not persuasive and lack the required details.  There is simply no way to know whether the 13,000+ contracts submitted are valid.  The 48 contracts that were admittedly fraudulent looked legitimate.  They had real EINs and real business names as well as "real" DocuSign signatures.

For all these reasons, the Court should bar cardsettlement.org from any role in the settlement.  While the Order to Show Cause contemplates cancelling the 13,000+ contracts, such action could harm class members.  For those contracts that are legitimate, cancelling the contract runs the risk that these class members will not file a claim and will not receive their *pro rata* share of the settlement fund.  In the alternative, Class Counsel suggests a procedure where the class members' claims that have been submitted to date by cardsettlement.org remain but cardsettlement.org does not financially benefit from those contracts.  Such a procedure would have the 13,000+ contracts either administratively filed by Epiq (paid for by cardsettlement.org) or have cardsettlement.org continue to service the claims, but not receive a percentage fee.  Cardsettlement.org has offered to pay the administrative expenses incurred by Epiq in having to manage the company's multiple, serious, fraudulent issues, and it should be required to do so.[3]  ECF 9510 at 4.  To the extent the Court believes it needs more information before imposing these suggested sanctions, Class Counsel is ready to conduct discovery, if needed.

Respectfully submitted,

| */s/ Ryan W. Marth* | */s/ Michael J. Kane* | */s/ Alexandra S. Bernay* |
|---|---|---|
| K. Craig Wildfang | H. Laddie Montague, Jr. | Patrick J. Coughlin |
| Thomas J. Undlin | Merrill G. Davidoff | Alexandra S. Bernay |
| Ryan W. Marth | Michael J. Kane | **Robbins Geller Rudman** |
| **Robins Kaplan LLP** | **Berger Montague PC** | **& Dowd LLP** |

Attachment

cc:   All Counsel via ECF

---

[3]   "The Court's authority is clear, and its obligation to protect class members is strong.  The only effective way to avoid confusion and intolerable inefficiencies in the claims filing process is to be firm: any third-party claims filing company that knowingly makes – directly or through an agent acting on its behalf – material false or misleading statements to merchants in an effort to solicit their business risks being permanently enjoined from filing claims in this case."  *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014).  Additional information regarding the Court's authority to sanction non-parties is detailed extensively in Class Counsel's August 16, 2024 letter.  ECF 9390.