**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION** | **Case No. 05-md-01720 (MKB) (JAM)** |
| **This Document Applies to:** | |
| ***Block, Inc. v. Visa Inc. et al.***, No. 23-cv-05377 (E.D.N.Y.) (MKB) (JAM). | **ORAL ARGUMENT REQUESTED** |
| ***Intuit Inc. et al v. Visa Inc. et al.***, No. 21-cv-01175 (E.D.N.Y.) (MKB) (JAM) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR INJUNCTION COMPELLING**
**DISMISSAL OF RELEASED CLAIMS AND FOR AN INTERIM STAY**

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................1

BACKGROUND .....................................................................................3

    A.    The May 28 Order Establishes that Merchants Serviced by Intuit and Square Are Rule 23(b)(3) Settlement Class Members ................................3

    B.    Rule 23(b)(3) Settlement Class Members Released Claims on Behalf of Themselves and Their Agents ................................................................4

    C.    Intuit and Square, as Payment Facilitators, Are Agents of the Rule 23(b)(3) Settlement Class Members for Which They Provide Services ..............5

    D.    Despite the Plain Language of the Release, Intuit and Square Attempt to Bring Claims, in Their Capacities as Agents of Class Members, That Have Been Released ................................................................................7

LEGAL STANDARD................................................................................8

ARGUMENT ..........................................................................................10

I.    The Class Settlement Agreement Release Unambiguously Bars the Claims of Intuit and Square Acting as Payment-Facilitator Agents of Class Members ..................11

II.    The Release Applies Because of the Agency Relationship, No Matter Who Is the "Direct Purchaser" Under *Illinois Brick* in Transactions Involving Payment Facilitators ..............................................................................14

CONCLUSION ........................................................................................15

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. CVS Pharmacy, Inc.*,
   2001 WL 1298712 (N.D. Ill. Oct. 24, 2001)..........................................................................13

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011)...............................................................................................9

*In re Auction Houses Antitrust Litig.*,
   2003 WL 1565950 (S.D.N.Y. Mar. 12, 2003) ..................................................................9

*Buxbaum v. Deutsche Bank AG*,
   216 F.R.D. 72 (S.D.N.Y. 2003) ......................................................................................14

*California v. IntelliGender, LLC*,
   771 F.3d 1169 (9th Cir. 2014) ..........................................................................................9

*In re Chase Bank USA, N.A. Check Loan Cont. Litig.*,
   2013 WL 772714 (N.D. Cal. Feb. 28, 2013), *aff'd in part, appeal dismissed in
   part*, 607 F. App'x 737 (9th Cir. 2015) ......................................................................9, 10

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*,
   773 F.3d 110 (2d Cir. 2014).............................................................................................10

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007)...............................................................................................13

*In re Delta Airlines*,
   608 F.3d 139 (2d Cir. 2010).............................................................................................10

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
   62 F.4th 704 (2d Cir. 2023) ..............................................................................................5

*In re JPMorgan Chase & Co. Sec. Litig.*,
   2016 WL 2962909 (S.D.N.Y. May 10, 2016) .................................................................13

*Lechner v. Mutual of Omaha Ins. Co.*,
   2021 WL 424421 (D. Neb. Feb. 8, 2021) .......................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   184 F.R.D. 506 (S.D.N.Y. 1999) ....................................................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) .....................................................................10

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ...........................................................................4

*In re Remeron Direct Purchaser Antitrust Litig.*,
    2005 WL 8181042 (D.N.J. Nov. 9, 2005) ...............................................................................13

*Rothstein v. AIG*,
    837 F.3d 195 (2d Cir. 2016).....................................................................................................10

*Savage v. Mayer*,
    203 P.2d 9 (Cal. 1949) ........................................................................................................12, 13

*Sweeney v. Herman Mgt.*,
    447 N.Y.S.2d 164 (1st Dep't N.Y. App. Div. 1982) ...............................................................13

*United States v. Gamma Tech Indus., Inc.*,
    265 F.3d 917 (9th Cir. 2001) ...............................................................................................12, 13

*Urakhchin v. Allianz Asset Mgmt. of America, L.P.*,
    2018 WL 8334847 (C.D. Cal. July 30, 2018)..........................................................................13

*W. Elec. Co. v. Brenner*,
    360 N.E.2d 1091 (N.Y. 1977)..................................................................................................12

*White v. Nat'l Football League*,
    822 F. Supp. 1389 (D. Minn. 1993) ...........................................................................................9

**Other Authorities**

3 Am. Jur. 2d Agency § 174, Lonnie E. Griffith Jr. (May 2024) ..................................................12

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## PRELIMINARY STATEMENT

Defendants respectfully seek an injunction compelling the dismissal of claims brought by agents of Rule 23(b)(3) class members. Those claims have been released and cannot proceed under the plain language of the Rule 23(b)(3) Class Settlement Agreement. Specifically, Defendants seek: (i) an injunction compelling dismissal of the released claims of Intuit and Square based on transactions in which they acted as payment-facilitator agents of Rule 23(b)(3) class members; and (ii) a continued stay of discovery on those aspects of the Intuit and Square actions pending resolution of this motion.[1]

This Court's May 28, 2024 Memorandum and Order, ECF No. 9308 ("May 28 Order") correctly held that merchants serviced by payment facilitators Intuit and Square "are members of the [Rule 23(b)(3)] Settlement Class." (May 28 Order at 26.) The present motion does not ask the Court to revisit any aspect of that decision. Instead, this motion seeks final disposition of Intuit's and Square's payment-facilitator claims based on this Court's determination that merchants serviced by these payment facilitators are class members. All class members released damages claims both "on behalf of themselves <u>and any of their . . . agents</u>" in exchange for a right to receive a *pro rata* share of a multi-billion-dollar settlement fund. (Superseding and Am. Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Pls. and the Defs. (Sept. 18, 2018), ECF No. 7257-2 ("Class Settlement Agreement") ¶¶ 29, 31–32 (emphasis added).) Nothing about that language is ambiguous: the release applies to both class members and their

---

[1] On November 12, 2024, Judge Marutollo stayed discovery on the claims of Intuit and Square based on transactions in which they acted as payment facilitators, and set a briefing schedule for the present motion. (*See* Nov. 12, 2024 Min. Entry.)

"Intuit" refers to Intuit Inc. and Intuit Payment Solutions, LLC, collectively, the plaintiffs in Case Number 21-cv-01175 (E.D.N.Y.). "Square" refers to Block, Inc., f/k/a Square, Inc., the plaintiff in Case Number 23-cv-05377 (E.D.N.Y.).

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

agents.  Enjoining class members and their agents from pursuing released claims is essential to uphold the settling parties' bargain, is expressly called for by the Class Settlement Agreement, and is necessary to effectuate this Court's Order and Final Judgment incorporating its terms.[2]

The only fact that matters for purposes of the release issue here is that Intuit and Square are agents of the merchants they serviced.  Unlike at summary judgment, this Court is the fact-finder on this motion under the Class Settlement Agreement.  And the fact of the principal-agent relationship is clear from the face of the contracts between Intuit and Square and their merchant customers.  It does not matter whether, under *Illinois Brick*, payment facilitators are direct purchasers on those transactions (as Intuit and Square assert[3]), or their merchant customers are the direct purchasers on those transactions (as the Settlement Class asserts[4]), or if neither are.  Because Intuit and Square acted as agents of Rule 23(b)(3) class members in facilitating those class members' payment card transactions, their claims based on those transactions have been released under the plain language of the Class Settlement Agreement and must be dismissed.  Simply put, Intuit's and Square's merchant customers obtained a substantial recovery based on

[2] Defendants acknowledge that the Court did not rely on the agency relationship between payment facilitators and the merchants they service to determine that those merchants were class members.  (*See* May 28 Order at 13 n.17.)  As noted above, Defendants are not seeking reconsideration of that class membership ruling.  Rather, the present motion seeks resolution of the separate question of whether the agency relationship triggers application of the release, which follows logically from the Court's prior ruling.  The Court has not previously ruled on that question.

[3] (*See, e.g.*, Intuit's Opp'n to Defs.' Mot. to Enforce Settlement Agreement or, in the Alternative, for Summ. J. & Mem. in Supp. of Intuit's Cross-Mot. for Partial Summ. J. Finding Intuit Has Standing on its Payment Facilitator Claims, ECF No. 9061 ("Intuit Br.") at 11–12; Square's Opp'n to Defs.' Mot. to Enforce Settlement Agreement or, in the Alternative, for Summ. J. & Mem. in Supp. of Joinder in *Lanning & Camp Grounds* Pls.' Cross-Mot. for Partial Summ. J., ECF No. 9066 ("Square Br.") at 2.)

[4] (*See, e.g.*, Ltr. from Class Counsel re: Order dated Mar. 13, 2024, ECF No. 9158 at 2.)

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

their card transactions and released claims of themselves and their agents for those transactions. As agents of those customers, Intuit and Square are barred from recovering again.

To be clear, this motion is not directed to the claims brought by Intuit and Square in their capacities as merchants—*i.e.*, those based on their acceptance of payment cards for products and services that Intuit and Square themselves sell to consumers (such as Turbo Tax products sold by Intuit or payment terminals sold by Square). But Intuit and Square should not be allowed to continue to litigate their payment-facilitator claims with Defendants' release defense left unresolved. The clear terms of the Class Settlement Agreement, as incorporated in and given effect by the Court's associated Order and Final Judgment, foreclose that approach. For good reason. It would be improper, inefficient and unfair to require that Defendants relitigate claims based on the transactions of Rule 23(b)(3) class members that those parties agreed to resolve in a multi-billion-dollar settlement. Any other result would open the door to agents of class members—in addition to other enumerated entities like officers, stockholders, legal representatives, associates, parents, subsidiaries, and others—trying to recover against Defendants on the basis of Visa and Mastercard card transactions subject to the release, even though the Class Settlement Agreement says the opposite. In addition, clarity on the release issues now will serve judicial efficiency by providing the parties with a common understanding of the scope of viable claims by Intuit and Square to guide potential resolutions prior to trial.

## BACKGROUND

### A.    The May 28 Order Establishes that Merchants Serviced by Intuit and Square Are Rule 23(b)(3) Settlement Class Members

In its May 28 Order, this Court resolved the class membership status of the typically small- and medium-sized merchants (or "Sellers") who use the services of Intuit and Square as "payment facilitators" in connection with accepting payment cards. (May 28 Order at 8.) After

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

reviewing the terms of Intuit's and Square's merchant agreements, applicable operating rules of

Visa and Mastercard, and other evidence of acceptance practices, the Court held that merchants

serviced by Intuit and Square "are members of the [Rule 23(b)(3)] Settlement Class." (*Id.* at 21–

26.)  The Court also held that, in their roles as payment facilitators, "Square and Intuit are not

members of the [Rule 23(b)(3)] Settlement Class." (*Id.* at 11; *see also id.* at 19–21.)  On these

bases, the Court granted Defendants' motion to enforce the Class Settlement Agreement without

qualification.[5]

### B.    Rule 23(b)(3) Settlement Class Members Released Claims on Behalf of Themselves and Their Agents

Under the Class Settlement Agreement, Defendants agreed to pay roughly $5.6 billion to

settle with the class of more than 12 million estimated merchant class members.  *See In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *3 & n.8,

*16 (E.D.N.Y. Dec. 16, 2019).  Class members that did not opt out obtained the right to receive

"a *pro rata* share of the monetary fund based on the interchange fees attributable to their

---

[5] The Court granted the motion in full without rejecting any aspect of it.  In doing so, however, the May 28 Order did not dismiss any claims—including the payment-facilitator claims of Intuit and Square (*see* June 11, 2024 Min. Order), as Defendants had proposed (*see* Defs.' Notice of Mot. to Enforce Settlement Agreement or, in the Alternative, for Summ. J., ECF No. 9056). Two plaintiff groups consisting of merchants serviced by Square (*i.e.*, the "Square Sellers")— whose claims are barred by the release because they have been found to be Rule 23(b)(3) class members—appealed the May 28 Order.  (June 12, 2024 Notice of Appeal, ECF No. 9327.)  Prior to filing this motion, Defendants' counsel proposed to Square Sellers' counsel that the parties agree to the entry of a final judgment in the Square Sellers' cases in order to establish a final judgment permitting appellate review; Defendants' counsel are currently awaiting a response.  A separate group of Rule 23(b)(3) class members also appealed the May 28 Order.  (June 27, 2024 Notice of Appeal, ECF No. 9335.)  Neither Intuit nor Square appealed, though they submitted an amicus brief in support of the Square Sellers' arguments.  (*See* Br. of Payment Facilitators Intuit; Square; & ACI Payments, Inc. as *Amici Curiae* in Supp. of Pls.-Appellants and Reversal, *In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, Case No. 24-1653 (2d Cir.), ECF No. 119.1 ("Payment Facilitators Br.").)

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

transactions during the class period." *Id.* at *3. "In return for a *pro rata* share of the fund, the class members will release the claims raised in the [Third Consolidated Amended Class Action Complaint]." *Id.* Merchant class members also covenanted not to sue on the basis of the released claims. (Class Settlement Agreement ¶ 35.)

The release and covenant not to sue extend to all class members "on behalf of themselves and any of their . . . agents" for all claims for damages relating to the payment card transactions they accepted. (Class Settlement Agreement ¶¶ 29, 31–32, 35 (emphasis added).) The release and covenant not to sue define the Rule 23(b)(3) Settlement Class Releasing Parties as:

> [I]ndividually and collectively Rule 23(b)(3) Class Plaintiffs and each member of the Rule 23(b)(3) Settlement Class, on behalf of themselves and any of their respective past, present, or future officers, directors, stockholders, agents, employees, legal representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, estates, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Superseding and Amended Class Settlement Agreement, and whether or not they make a claim for payment from the Net Cash Settlement Fund.

(*Id.* ¶ 29 (emphases added).)

The Court's Order and Final Judgment approving the Class Settlement Agreement incorporated this language as an order of this Court. (*See* Rule 23(b)(3) Class Settlement Order and Final Judgment, ECF No. 7832 ¶ 16.) The Second Circuit affirmed this Court's Order and Final Judgment on March 15, 2023, *see Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), and the Settlement Agreement and the Court's Order and Final Judgment became final on August 8, 2023. (Class Settlement Agreement ¶ 3(ss).)

### C. Intuit and Square, as Payment Facilitators, Are Agents of the Rule 23(b)(3) Settlement Class Members for Which They Provide Services

As payment facilitators, Intuit and Square by their own admission "enabl[e] [merchants] to accept card payments." (Compl., Case No. 23-cv-05377 (E.D.N.Y.), ECF No. 1 ("Square

5

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Compl.") ¶¶ 1, 18, 22; Compl., Case No. 21-cv-01175 (E.D.N.Y.), ECF No. 1 ("Intuit Compl.")

¶ 24(q); *see also* May 28 Order at 22 ("Square and Intuit hold themselves out as enabling Sellers

to 'accept' payment cards, and admit as much in their own complaints.").)  In doing so, payment

facilitators act as "agents" of their merchant customers.

  The contracts under which Intuit and Square operate expressly document this agency

relationship.  Intuit's publicly available "U.S. Terms of Service" provide:  "In connection with

enabling you [*i.e.*, the merchant] to receive payments from your customers through QuickBooks

Payments, you hereby appoint Intuit as your limited payments <u>agent</u> for the purpose of receiving,

holding, and settling payments to you pursuant to this Agreement." (Szanyi Decl.[6] ¶ 3 & Ex. 1,

Intuit U.S. Terms of Service Part N (emphasis added).)  The U.S. Terms of Service further

explain that "a payment received by Intuit, <u>on your behalf</u>, satisfies your customer's obligation to

pay you."  (*Id.* (emphasis added).)

---

[6] "Szanyi Decl." refers to the exhibits to the Declaration of Rosemary Szanyi, submitted herewith.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

████████████████████████████████████████████

██████████████████████████████████    ██████

████████████████████████████

Square's publicly available contract terms likewise state that a merchant "authorize[s] [Square] to act as [the merchant's] <u>agent</u> for payment processing," and that Square merely "hold[s], receiv[es], and disburs[es] funds on [the merchant's] behalf."  (Szanyi Decl. ¶ 8 & Ex. 6, Square Payment Terms § 2 (emphasis added).)  Older versions of Square's contract terms, available from public website archives, contain similar language identifying Square as its merchant customer's "agent," receiving payment on the merchant customer's "behalf."  (Szanyi Decl. ¶¶ 9–30 & Exs. 7–28.)

> **D.    Despite the Plain Language of the Release, Intuit and Square Attempt to Bring Claims, in Their Capacities as Agents of Class Members, That Have Been Released**

Intuit and Square both timely opted themselves out of the Rule 23(b)(3) Settlement Class. (*See* May 28 Order at 7.)  Years later, Intuit and Square brought individual actions asserting damages claims based not only on Visa- and Mastercard-branded card transactions they accepted in their capacity as merchants that opted out (*i.e.*, for products and services they sell to consumers), but also on transactions they enabled as payment-facilitator agents for and on behalf of millions of small merchants, which remained in the Class.  (*See, e.g.*, Intuit Compl. ¶¶ 1–19, 175–78; Square Compl. ¶¶ 1–3, 86–87; *see also* Ltr. from Square (Sept. 1, 2023), ECF No. 8917 at 1; Ltr. from Intuit (Sept. 1, 2023), ECF No. 8916 at 1.)[8]

---

[8] Intuit and Square might also have served in other roles as an intermediary providing payment-related services in a smaller subset of transactions for which they claim damages.  For example, Intuit alleges that it has separately acted as an Independent Sales Organization ("ISO") during the damages period.  (*See* Intuit Compl. ¶ 1, n.1.)  Because of the relatively small number of ISO transactions at issue and the additional discovery to be secured from Intuit and Square on their

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Intuit filed suit in February 2021.  (*See* Intuit Compl.)  Square filed suit in July 2023.

(*See* Square Compl.)  Defendants raised the Class Settlement Agreement release as a defense in

answer to both the Intuit and Square complaints.[9]

## LEGAL STANDARD

This Court retained exclusive jurisdiction to enforce the Class Settlement Agreement and

release, which were incorporated into its Order and Final Judgment.  (*See* Rule 23(b)(3) Class

Settlement Order and Final Judgment, ECF No. 7832 ¶¶ 18–20; *see also* May 28 Order at 16

n.19.)  Pursuant to that Order and Final Judgment, any application "with respect to an[] aspect of

the [Class] Settlement Agreement" must be "presented to and determined by" this Court "for

resolution as a matter within the scope of MDL 1720."  (Rule 23(b)(3) Class Settlement Order

and Final Judgment, ECF No. 7832 ¶ 19.)  Moreover, if "the provisions of the [Class] Settlement

---

potential roles as ISOs, Defendants are not seeking relief on the ISO transactions at this point,
but are reserving all rights to do so after they have reviewed relevant records in the underlying
cases that will clarify if Intuit's or Square's services as ISOs also established an agency
relationship.  Accordingly, this motion is limited to Intuit's and Square's claims based on
transactions in which they served as payment-facilitator agents.

[9] (*See* Answer of Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service
Association to Pls.' Compl., *Intuit Inc., et al. v. Visa Inc., et al.*, No. 21-cv-01175 (E.D.N.Y.),
ECF No. 27, at Sixteenth Defense ("Plaintiffs' claims are released or otherwise barred in whole
or in part by the settlements, orders and/or final judgements in *In re Payment Card Interchange
Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (E.D.N.Y.)."); Answer of
Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association to Pls.'
Compl., *Block, Inc. v. Visa Inc., et al.*, No. 23-cv-05377 (E.D.N.Y.), ECF No. 15, at Second
Defense (same); Answer of Defendants Mastercard Incorporated and Mastercard International
Incorporated to Pls.' Compl., *Intuit Inc., et al. v. Visa Inc., et al.*, No. 21-cv-01175 (E.D.N.Y.),
ECF No. 28, at Thirtieth Defense ("Plaintiffs' claims are released or otherwise barred, in whole
or in part, by the settlements, orders, and/or final judgments in *In re Payment Card Interchange
Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (E.D.N.Y.)."); Answer of
Defendants Mastercard Incorporated and Mastercard International Incorporated to Pl.'s Compl.,
*Block, Inc. v. Visa Inc., et al.*, No. 23-cv-05377 (E.D.N.Y.), ECF No. 16, at Thirty-First Defense
(same).)

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Agreement . . . are asserted by any Defendant . . . as a ground for a defense . . . to any claim or cause of action . . . the [Defendant] shall be entitled to an <u>immediate stay</u> of that suit, action, or proceeding until after this Court has entered an order or judgment determining any issues relating to the defense . . . based on such provisions, and no further judicial review of such order or judgment is possible." (*Id.* ¶ 20 (emphasis added).)

The Second Circuit has made clear that the Court "has the power to enforce an ongoing order . . . to protect the integrity of a complex class settlement over which it retained jurisdiction." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) (citation omitted) (affirming in part order granting motion to enforce class settlement agreement and dismissing complaint); 28 U.S.C. § 1651 (broadly empowering a district court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law"); *see also, e.g.*, *In re Auction Houses Antitrust Litig.*, 2003 WL 1565950, at *2 (S.D.N.Y. Mar. 12, 2003) (granting motion to enforce class settlement agreement). This power includes enjoining claims released under a class settlement agreement incorporated into the Court's Order and Final Judgment. *See, e.g.*, *California v. IntelliGender, LLC*, 771 F.3d 1169, 1171–72, 1179–80 (9th Cir. 2014) (holding district court should have enjoined state plaintiff from pursuing restitution claims brought on behalf of "individuals who were bound by the CAFA class action settlement" in order to prevent double recovery for the same losses despite state not being party to settlement, and explaining that the non-party state plaintiff had notice of the settlement and did not timely raise objections to the scope of the settlement agreement).[10]

---

[10] *See also, e.g.*, *White v. Nat'l Football League*, 822 F. Supp. 1389, 1434 (D. Minn. 1993) (describing authority of courts presiding over class actions to enjoin released claims asserted in "other actions even if the parties were not [class] members"); *In re Chase Bank USA, N.A. Check Loan Cont. Litig.*, 2013 WL 772714, at *6 (N.D. Cal. Feb. 28, 2013), *aff'd in part, appeal dismissed in part*, 607 F. App'x 737 (9th Cir. 2015) (ordering absent class member to dismiss

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

As the Court previously acknowledged, it is the fact-finder on a motion to enforce a settlement agreement. (*See* May 28 Order at 10, *citing Serby v. First Alert, Inc.*, 664 F. App'x 105, 108–09 (2d Cir. 2016), *as amended* (Dec. 22, 2016).) In addition, the Class Settlement Agreement calls for the application of New York law. (Class Settlement Agreement ¶ 79; *see also* May 28 Order at 9 n.15.) Under New York law, a court should interpret a settlement agreement based on its plain language. *See Rothstein v. AIG*, 837 F.3d 195, 205–06 (2d Cir. 2016) (applying New York law); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2008 WL 115104, at *10 (E.D.N.Y. Jan. 8, 2008) (same). When the plain language of a contract is "clear and unambiguous, the intent of the parties must be found within the four corners of the contract." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (citation omitted) (applying New York law).[11]

## ARGUMENT

The payment-facilitator claims asserted by Intuit and Square are barred by the release in the Class Settlement Agreement. This Court has already ruled that the merchants serviced by Intuit and Square are members of the Rule 23(b)(3) Settlement Class. The Class Settlement Agreement release applies to claims by both class members themselves and their agents. The

---

state-court action that was released by class settlement and imposing sanctions for non-compliance).

[11] Even if a provision is objectively susceptible to multiple reasonable readings, "if the overall intent of the parties is clear from the face of a contract, the court should 'choose that construction which will carry out the plain purpose and object of the [agreement].'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2008 WL 115104, at *10 (quoting *Kass v. Kass*, 696 N.E.2d 174, 181 (N.Y. 1998)); *accord In re Delta Airlines*, 608 F.3d 139, 146 (2d Cir. 2010) (under New York contract law principles, "[e]ach word must be considered along with not only all the other words that surround it, but also the history and education of the parties, the nature of the contract, the purposes of the parties, and all other relevant circumstances" (alteration in original)).

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

claims at issue relate exclusively to transactions at merchants where Intuit and Square served as the merchants' agents to facilitate payment card transactions. Accordingly, the claims belong to the payment facilitators' merchant customers as principals, and were released by those merchant customers on behalf of both themselves and their agents (*i.e.*, Intuit and Square). This is true regardless of whether the merchant, the payment facilitator, or neither is the "direct purchaser" under *Illinois Brick*: in all ways, these claims belong to the merchant class member as the principal in the principal-agent relationship; the claims do not belong in any way to the payment-facilitator agent. The release bars claims by both the card-accepting merchant class member and its agent. Thus, it requires dismissal of Intuit's and Square's payment-facilitator claims.

**I.      The Class Settlement Agreement Release Unambiguously Bars the Claims of Intuit and Square Acting as Payment-Facilitator Agents of Class Members**

Merchants serviced by payment facilitators are members of the Rule 23(b)(3) Settlement Class. (May 28 Order at 26.) In the Class Settlement Agreement, these merchants expressly released the claims that Intuit and Square are seeking to pursue as payment-facilitator agents. Specifically, all merchants that did not opt out of the class have released any claims against Defendants "on behalf of themselves <u>and any of their . . . agents</u>." (Class Settlement Agreement ¶¶ 29, 31–32 (emphasis added).) By the express terms of their own contracts with merchant customers, Intuit and Square are the "agent[s]" of their merchant customers when they serve as payment facilitators. *See supra* at 6–7 & n.7 (collecting and quoting contract terms). As Intuit's counsel has acknowledged to the Court, "the contracts are clear and the structure for these—for a payment facilitator is clear." (Oct. 4, 2023 Pre-motion Conference Tr. at 13:9–11; *see also id.* at 13:15–16 (counsel acknowledging "the issues are not really subject to a genuine dispute of material fact").) Applying these clear terms, the merchant class members released any claims based on payments transactions in which Intuit and Square served as agents for those merchants.

11

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Merchant class members did not need their agents' consent, or an assignment of rights, to release these claims because the flow of funds on which the claims are based, including interchange, arise from Intuit's and Square's activities as agents, and thus belong to their merchant customers as principals.  When a payment transaction is processed over the Visa network or the Mastercard network, the issuer first deducts the interchange fee before transmitting the remaining funds to the acquirer.  (*See* Feb. 24, 2024 Mem. & Order, ECF No. 9140 at 36 ("[T]he Issuer sends the Acquirer the amount of the purchase minus the interchange fee . . . .").)  If the merchant uses a payment facilitator, that facilitator then receives the net transaction funds from the acquirer before transferring the funds to the merchant.  (*See* May 28 Order at 9 (explaining that "Square . . . settles funds for Sellers that it receives from Issuers via its accounts at its Acquirers" and that "Intuit's payment facilitation services operate similarly").)  Throughout, the payment facilitator's connection to the net transaction funds is solely in its role as the merchant's "payments agent," (Szanyi Decl. Ex. 1, Intuit U.S. Terms of Service Part N), or "agent for payment processing," (Szanyi Decl. Ex. 6, Square Payment Terms § 2).

Any "advantages gained by an agent in the execution of the agency, beyond the agent's agreed compensation, <u>belong to the principal</u> unless the parties themselves have otherwise agreed."  3 Am. Jur. 2d Agency § 174, Lonnie E. Griffith Jr. (May 2024) (emphasis added); *accord W. Elec. Co. v. Brenner*, 360 N.E.2d 1091, 1094 (N.Y. 1977) (holding based "on the law of agency" that an employee agent who "receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such . . . benefit to his employer"); *see also, e.g.*, *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 929 (9th Cir. 2001) (in discussing the "principles of agency theory" under California law, citing and quoting *Savage v. Mayer*, 203 P.2d 9, 10 (Cal. 1949), for the proposition that "'[a]ll benefits and

12

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

advantages acquired by the agent as an outgrowth of the agency, exclusive of the agent's agreed compensation, are deemed to have been acquired for the benefit of the principal'").[12]  Here, nothing in Intuit's or Square's contracts with merchant class members limits the merchant class members' rights to resolve claims arising from merchant class members' payment transactions. Those rights belong to the merchant class members alone as the principals in the "payments" relationship.[13]

Courts routinely approve class settlement agreements in which class members release claims on behalf of themselves and their "agents."[14]  Moreover, despite the various objections

---

[12] Intuit and Square have argued that California agency law applies because their contracts with merchants are governed by California law.  (*See* Intuit and Square Ltr. (Aug. 7, 2024), ECF No. 9382 at 3.)  They are wrong because the question here concerns interpretation of the release in the Class Settlement Agreement, which is governed by New York law.  (*See* May 28 Order at 9 n.15.)  In any event, as shown above, New York and California law are in agreement that any advantages gained by an agent in the execution of the agency belong to the principal.

[13] For this reason, none of the case law on which Intuit and Square have previously relied is applicable.  (*See* Intuit Br. at 21–23; Square Br. at 20–24.)  Intuit and Square are not "co-owners" with their merchant customers of a property interest.  *See Davis v. Blige*, 505 F.3d 90, 102 (2d Cir. 2007).  Those merchants did not need Intuit or Square to "assign" them any claims. (Intuit Br. at 22–23; *see also* Square Br. at 20–21.)  The Class Settlement Agreement properly binds Intuit and Square in their capacity as agents, not "personally."  *Sweeney v. Herman Mgt.*, 447 N.Y.S.2d 164, 166 (1st Dep't N.Y. App. Div. 1982).  And, unlike the unsupported assertion of an agency relationship at issue in *Abbott Labs. v. CVS Pharmacy, Inc.*, 2001 WL 1298712, at *1, *5 (N.D. Ill. Oct. 24, 2001), the agency relationships here are documented in the standard contracts drafted by Intuit and Square themselves.

[14] *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, 2016 WL 2962909, at *2–3 (S.D.N.Y. May 10, 2016) (approving settlement release of claims by "each member of the Class, on behalf of themselves, and their respective  . . . agents"); *Lechner v. Mutual of Omaha Ins. Co.*, 2021 WL 424421, at *3 (D. Neb. Feb. 8, 2021) (approving settlement release of claims by "[e]ach Class Member and their . . . agents"); *Urakhchin v. Allianz Asset Mgmt. of America, L.P.*, 2018 WL 8334847, at *1 (C.D. Cal. July 30, 2018) (approving settlement release of claims by "each Class Member and their . . . agents"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 8181042, at *1–2 (D.N.J. Nov. 9, 2005) (approving settlement release of claims by "members of the class . . . (including any of their  . . . . agents, . . . acting in their capacity as such)").

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Intuit and Square have recently raised, neither sought to object to the scope of the release covering the claims of class members and their "agents" when they received notice of the class settlement or when they opted out in their capacities as merchants.[15]  Now that the settlement is final, Intuit and Square should not be permitted to salvage an objection years after the fact by pursuing claims belonging to class members that did not opt out.

Under these principles, the Class Settlement Agreement release incorporated into the Court's Order and Final Judgment unambiguously bars the claims of Intuit and Square in their roles as payment-facilitator agents of class members.

## II.    The Release Applies Because of the Agency Relationship, No Matter Who Is the "Direct Purchaser" Under *Illinois Brick* in Transactions Involving Payment Facilitators

Intuit and Square have tried to distract from their merchant customers' releases by litigating the unrelated question of whether, under *Illinois Brick*, payment facilitators or merchants (if either) are the direct purchasers on payment card transactions.[16]  (*See, e.g.*, Intuit

---

[15] While Intuit and Square opted out as merchants and were not themselves class members in their roles as payment facilitators, they nevertheless might have sought to intervene for purposes of objecting to the scope of the release.  Courts are reluctant to disturb a final judgment based on arguments of a would-be intervenor if the entity had the opportunity to seek intervention before final judgment was entered.  *See Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 76–77 (S.D.N.Y. 2003); *cf. In re NASDAQ Market-Makers Antitrust Litig.*, 184 F.R.D. 506, 514 (S.D.N.Y. 1999) (would-be intervenors must "act promptly on developments which they perceived to be adverse to their interests").

[16] In its May 28 Order, the Court denied Intuit's cross-motion for summary judgment on its direct purchaser status, in part based on evidence that Intuit acts as an agent of its merchant customers.  (*See* May 28 Order at 26–31.)  Intuit and Square have tried to take advantage of the Court's denial of Intuit's motion by asserting there is now a "triable question of fact on the scope of the agency relationships at issue."  (Payment Facilitators Br. at 6.)  But, as noted above, that decision was in the context of whether Intuit is a direct purchaser, a determination that is not relevant to the present motion.  And, unlike the standard the Court applied to deny Intuit's cross-motion for summary judgment, on this motion the Court is the finder of fact to the extent any

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Br. at 11–12; Square Br. at 15.)  For purposes of this motion, it does not matter whether payment facilitators or their merchant customers—or neither—are found to be "direct purchasers" under federal antitrust law.  The claims based on the interchange that issuers deducted from those transactions belong to the merchants as principals in their agency relationships with Intuit and Square, and those merchants expressly and unambiguously released the claims on behalf of both themselves and their agents.  There are no claims left for Square and Intuit to vindicate on behalf of class members that have already resolved their claims.

## CONCLUSION

Pursuant to Paragraphs 19 and 20 of the Court's Rule 23(b)(3) Class Settlement Order and Final Judgment, the Court should: (i) enter an injunction requiring that Intuit and Square dismiss their payment-facilitator claims; and (ii) continue the stay of discovery on those payment-facilitator aspects of the Intuit and Square cases pending resolution of Defendants' motion.

---

factual disputes as to the agency relationship exist.  (*See supra* at 10.)  This is an issue that can and should be resolved now based on the contracts submitted to the Court.

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

Dated:  November 15, 2024            Respectfully submitted,

                                    **ARNOLD & PORTER KAYE SCHOLER**
                                    **LLP**

                                    By:  */s/ Matthew A. Eisenstein*
                                        Robert J. Vizas
                                        Three Embarcadero Center, 10th Floor
                                        San Francisco, CA   94111-4024
                                        (415) 471-3100
                                        robert.vizas@arnoldporter.com

                                        Anne P. Davis
                                        Matthew A. Eisenstein
                                        Rosemary Szanyi
                                        601 Massachusetts Avenue, NW
                                        Washington, DC   20001-3743
                                        (202) 942-5000
                                        anne.davis@arnoldporter.com
                                        matthew.eisenstein@arnoldporter.com
                                        rosemary.szanyi@arnoldporter.com


                                    **HOLWELL SHUSTER & GOLDBERG LLP**

                                        Michael S. Shuster
                                        Demian A. Ordway
                                        Jayme Jonat
                                        425 Lexington Avenue
                                        New York, NY   10017
                                        (646) 837-5151
                                        mshuster@hsgllp.com
                                        dordway@hsgllp.com
                                        jjonat@hsgllp.com

                                    *Counsel for Defendants Visa Inc., Visa U.S.A.*
                                    *Inc., and Visa International Service Association*

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Brette Tannenbaum*

Brette Tannenbaum
Nina Kovalenko
Gary R. Carney
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
btannenbaum@paulweiss.com
gcarney@paulweiss.com

Kenneth A. Gallo
Donna M. Ioffredo
2001 K Street, NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
kgallo@paulweiss.com
dioffredo@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

17

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I caused a true and correct copy of the foregoing to be served on all counsel of record in the above-referenced action via Lexis Nexis File&Serve, and via FTP on counsel in *Intuit Inc. et al. v. Visa Inc. et al.*, 1:21-cv-01175-MKB-JAM (E.D.N.Y.), and *Block, Inc. v. Visa Inc. et al.*, 1:23-cv-05377-MKB-JAM (E.D.N.Y.).

Dated:  November 15, 2024

*/s/ Matthew A. Eisenstein*

Matthew A. Eisenstein