UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | : : : : | MDL No. 1720(MKB)(JAM)  Civil No. 05-5075(MKB)(JAM) |
| This Document Relates To:  ALL ACTIONS. | : : : : : : : | MEMORANDUM OF LAW IN SUPPORT OF RULE 23(b)(3) CLASS COUNSEL'S MOTION FOR SANCTIONS AGAINST THIRD-PARTIES CARDSETTLEMENT.ORG AND MERCHANT STRONGHOLD |

4905-7827-8926.v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................2

      A.    Cardsettlement.org's Website and Referral Partners' Videos Contain False and/or Misleading Information .................................................2

      B.    Cardsettlement.org Submits Numerous Fake Proof of Authority Documents .............................................................................................3

      C.    Class Members Have Been Signed Up Without Their Knowledge........................3

      D.    Another Cardsettlement.org Referral Partner Provides False and/or Misleading Information ...........................................................................5

      E.    Additional Information Comes to Light Regarding Merchants Being Signed Up Without Their Knowledge .....................................................6

      F.    Even In Mid-December, Agents of cardsettlement.org Still Spread False and/or Misleading Information .........................................................7

      G.    Discovery is Served on cardsettlement.org and Merchant Stronghold...................8

III.  LEGAL AUTHORITY .......................................................................................11

      A.    All Writs Act ........................................................................................14

      B.    Authority under Rule 23(d)...................................................................15

      C.    Inherent Authority................................................................................15

      D.    The Court has Authority to Sanction Non-Parties ...............................16

IV.   ADMINISTRATIVE FILING OF CLAIMS .....................................................19

V.    CONCLUSION...................................................................................................19

4905-7827-8926.v1

# TABLE OF AUTHORITIES

Page

## CASES

*3801 Beach Channel, Inc. v. Shvartzman*,
 2007 WL 879668 (E.D.N.Y. Mar. 21, 2007) ...................................................................12, 13

*Am. Tr. v. Sabino*,
 2000 WL 1478372 (6th Cir. Sept. 28, 2000) ..........................................................................15

*Amerisource Corp. v. Rx USA Int'l Inc.*,
 2010 WL 2730748 (E.D.N.Y. July 6, 2010),
 *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*,
 432 F. App'x 25 (2d Cir. 2011) ................................................................................................17

*Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*,
 2022 WL 1843136 (C.D. Cal. Apr. 11, 2022) .........................................................................16

*Bartos v. Pa.*,
 2010 WL 1816674 (M.D. Pa. May 5, 2010) .............................................................................16

*Bridgeport Guardians v. Delmonte*,
 371 F. Supp. 2d 115 (D. Conn. 2005),
 *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015)............................................................13

*Bryan v. United States*,
 524 U.S. 184 (1998)..................................................................................................................13

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991)...............................................................................................................15, 16

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
 602 F.2d 1062 (2d Cir. 1979)....................................................................................................13

*Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*,
 2008 WL 3852046 (S.D.N.Y. Aug. 13, 2008) .........................................................................13

*David v. Hooker, Ltd.*,
 560 F.2d 412 (9th Cir. 1977) ....................................................................................................13

*De Mañez v. Bridgestone Firestone N. Am. Tire, LLC*,
 533 F.3d 578 (7th Cir. 2008) ...............................................................................................13, 16

*Ganci v. U.S. Limousine Serv., Ltd.*,
 2012 WL 13109965 (E.D.N.Y. Sept. 28, 2012) ......................................................................16

4905-7827-8926.v1

**Page**

*Helmac Prods. Corp. v. Roth (Plastics) Corp.*,
   150 F.R.D. 563 (E.D. Mich. 1993) ......................................................................17

*In re Baldwin-United Corp.*,
   770 F.2d 328 (2d Cir. 1985)...............................................................................14

*In re Holloway*,
   884 F.2d 476 (9th Cir. 1989) .............................................................................16

*In re McKesson HBOC, Inc. Securities Litigation*,
   126 F.Supp.2d 1239 (N.D.Cal.2000) .......................................................12, 14, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014)...................................11, 12, 14, 15

*In re Rainbow Mag., Inc.*,
   77 F.3d 278 (9th Cir. 1996) ...............................................................................16

*In re Synthroid Mktg. Litig.*,
   197 F.R.D. 607 (N.D. Ill. 2000)...................................................................14, 15

*In re Visa Check/Mastermoney Antitrust Litig.*,
   2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006)............................................ *passim*

*Izzo v. ING Life Ins. & Annuity Co.*,
   235 F.R.D. 177 (E.D.N.Y. 2005) ......................................................................12

*Makere v. Fitzpatrick*,
   2023 WL 3010539 (N.D. Fla. Mar. 22, 2023),
   *aff'd by*, 2024 WL 2152114 (11th Cir. May 14, 2024)...................................15, 18

*Metz v. Unizan Bank*,
   655 F.3d 485 (6th Cir. 2011) .............................................................................18

*Microsoft Corp. v. AGA Sols., Inc.*,
   2009 WL 1033784 (E.D.N.Y. Apr. 17, 2009) ....................................................13

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   708 F.2d 492 (9th Cir. 1983) .............................................................................16

*Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*,
   1989 U.S. Dist. LEXIS 6050 (S.D.N.Y. June 1, 1989) ......................................12

- iii -

**Page**

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC,*
    280 F.R.D. 147 (S.D.N.Y. 2012) ...........................................................................12

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980)..............................................................................................18

*Schafer v. City of Defiance Police Dep't,*
    529 F.3d 731 (6th Cir. 2008) ...............................................................................18

*Sundby v. Marquee Funding Grp., Inc.,*
    2020 WL 5709445 (S.D. Cal. Sept. 24, 2020)......................................................16

*United States v. Am. Mercantile Corp.,*
    2012 U.S. Dist. LEXIS 160259 (W.D. Tenn. Nov. 8, 2012)..................................1

*United States v. New York Tel. Co.,*
    434 U.S. 159 (1977)..............................................................................................14

*United States v. Silva,*
    140 F.3d 1098 (7th Cir. 1998) .............................................................................14

*United States v. Wheeler,*
    154 F. Supp. 2d 1075 (E.D. Mich. 2001)..............................................................18

*Universitas Educ. LLC v. Nova Grp., Inc.,*
    2013 WL 3487350 (S.D.N.Y. July 11, 2013) ......................................................13

*Williams v. Quinn,*
    2010 WL 3021576 (N.D. Ill. Jul. 27, 2010)..........................................................15

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
    §1651.....................................................................................................................14
    §1651(a)................................................................................................................14

Federal Rules of Civil Procedure
    Rule 23 .................................................................................................................15
    Rule 23(d) ...............................................................................................12, 14, 15
    Rule 37 .................................................................................................................13
    Rule 37(b) .............................................................................................................13

4905-7827-8926.v1

**Page**

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (Fourth) (2023)
§21.33 ...................................................................................................................................12, 15

- v -

## I.      INTRODUCTION

Sanctioning cardsettlement.org and Merchant Stronghold for their repeated and serious misconduct affecting the fair, effective, and efficient administration of the settlement in this action is appropriate.  Where, as here, a party has "a proven track record of violations, demonstrating that they cannot achieve compliance with the law on their own" and where "promises of improvement ring hollow in light of their inability to correct the same recurring issues over time" an injunction is proper.[1] *United States v. Am. Mercantile Corp.*, 2012 U.S. Dist. LEXIS 160259, at *10-*11 (W.D. Tenn. Nov. 8, 2012).

Rule 23(b)(3) Class Counsel ("Class Counsel") seeks the following relief: (1) That both cardsettlement.org and Merchant Stronghold be permanently enjoined from any role in the Settlement; (2) that all of cardsettlement.org's class member claims be administratively filed by the Class Administrator;[2] (3) that cardsettlement.org receive no portion of any class members' settlement benefits; (4) that cardsettlement.org pay the costs associated with its prior misleading conduct as well as the costs incurred by Epiq in administratively filing claims; and (5) that cardsettlement.org pay the reasonable attorney's fees and costs of Class Counsel associated with this matter.

Class Counsel and cardsettlement.org have had two meet-and-confer sessions over the weekend to discuss the various issues before the Court and cardsettlement.org's discovery responses. Based on those meetings and the receipt of information, Class Counsel may provide additional information this week regarding a suggested resolution.  As to Merchant Stronghold, however, there has still been no response and Class Counsel believes a permanent injunction is proper as to that entity, with no further information needed.

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted. Unless otherwise noted, all references to "Ex.__" are to the exhibits attached to the declaration of Alexandra S. Bernay, concurrently filed herewith.

[2]    At the time of entry of the Court's Order to Show Cause, there were about 13,200 class member contracts with Epiq.  Since then cardsettlement.org has reported that it has signed up an additional 4,000+ merchants, for a total of more than 17,000 contracts.

An additional issue has also recently come to light which also may necessitate Court action. Several class members have reported that they were confused and misled into thinking cardsettlement.org was the official Court-authorized website.   The look and feel of the cardsettlement.org website is similar to the Court-authorized website, paymentcardsettment.com. Moreover, the ".org" designation has been noted by several class members as an issue that caused them confusion. [3]   Also, other than the word "payment," the names of the websites are the same. Based on this, Class Counsel respectfully suggests cardsettlement.org be required to display prominently on its website, in wording approved by the Court, language that clearly states that the website is not the official Court-authorized website.

## II.    FACTUAL BACKGROUND

### A.    Cardsettlement.org's Website and Referral Partners' Videos Contain False and/or Misleading Information

Beginning in early November, Class Counsel received reports about numerous problems related to cardsettlement.org.  Class Counsel sought to work cooperatively with cardsettlement.org after discovering videos on YouTube that contained numerous false and/or misleading statements about the settlement.  Class Counsel wrote a detailed letter to cardsettlement.org and engaged in multiple conversations with their representative.  For example, cardsettlement.org claimed it had "direct access to the Claims Administrator" misleadingly implying it had special access.  ECF 9536, Ex. 1.  It failed to display the Court-ordered disclaimers and made it appear that class members were directly filing claims as opposed to signing up for claims-filing services.  Materials attached to the YouTube video of its referral partner falsely claimed: "CardSettlement (our partner) makes it simple for you to file a claim.  They pull transaction data directly from Visa / Mastercard, they calculate a

---

[3]    The ".org" designation is generally understood to mean the entity is a non-profit organization. "What is the .org domain used for?  While for-profit companies can legally purchase and utilize .org domains, the public's perception is still firmly rooted in its previous methods.  Anyone who uses the .org domain is perceived as a non-profit entity, and the inability to clearly declare the for-profit nature of your business can result in severe criticism."  Rackset, https://rackset.com/blog/what-is-org-domain-name-when-to-register-an-org-domain/ (last visited Jan. 12, 2025).

- 2 -

4905-7827-8926.v1

claim in 5-7 days . . . .” Significantly, the site also included baseless statements regarding claim amounts to be expected and false information regarding the number of claims filed. One of the referral partners also claimed: “We have a partnership with the claims administrator, the court-appointed company that is in charge of making sure this money gets out.” “We have a direct partnership with them. We have an agreement with them.” It further claimed: “Our API and backend technology plugs into their dashboard.” None of this was true.

The misleading and inaccurate videos were taken down and emails were sent to merchants who may have signed up with the company after viewing the videos or receiving solicitations from the referral partners who published the videos. Class Counsel also reviewed the website of cardsettlement.org and made several suggested corrections which were later made.

### B. Cardsettlement.org Submits Numerous Fake Proof of Authority Documents

A few days after the changes were made to the website and the misleading YouTube videos were removed, Epiq contacted Class Counsel about several proof of authority documents that cardsettlement.org had submitted that appeared to be fraudulent. For example, a proof of authority for author J.K. Rowling was submitted and was signed by a character in the Harry Potter books. There were other names that used profanity. Class Counsel contacted cardsettlement.org about these plainly fake submissions. Cardsettlement.org explained that one had been a test account, but did not have an explanation for others. Cardsettlement.org committed to reviewing all prior submissions and a few days later provided a list with 96 entities that it sought to withdraw for one reason or another. Epiq spent significant time managing this issue.

### C. Class Members Have Been Signed Up Without Their Knowledge

On December 3, 2024, Epiq alerted Class Counsel to other issues with cardsettlement.org. A class member who was told that his claim was “in conflict” with a third-party claims filing company explained that he alone had filed his claim and that he had never signed up with cardsettlement.org. ECF 9489 at 2. According to an email sent by cardsettlement.org to this class member, a referral partner of cardsettlement.org called Merchant Stronghold “engaged in unethical and inappropriate

- 3 -

actions that violated the trust we strive to maintain with all our clients. Specifically, we found evidence indicating that Merchant Stronghold used your business information to sign agreements with CardSettlement.org on your behalf – without your knowledge or explicit consent." *Id.* Significantly, cardsettlement.org did not tell Class Counsel about this issue. This issue only surfaced because a class member was purportedly "in conflict." *Id.* When confronted with this information, cardsettlement.org claimed that it was investigating the issue and planned to raise it with Class Counsel. The reality, however, is that it had not. Class Counsel called the class member and spoke at length with him. The DocuSign showed that the "contract" was signed in Florida (where Merchant Stronghold is based) even though the class member was located across the country. *Id.* The class member explained that he had no business whatsoever with this entity and did not know how they obtained any of his information. According to the email message to the class member from cardsettlement.org, "[t]his action is a direct violation of our ethical standards and the referral partner agreement that Merchant Stronghold signed." *Id.*

Cardsettlement.org also stated that the fake agreements have been voided. It also claims to have severed ties with Merchant Stronghold. After further investigation, 48 fake contracts from Merchant Stronghold were discovered among cardsettlement.org's putative contracts.

According to the email to the class member at issue, cardsettlement.org was "currently taking aggressive steps to hold Merchant Stronghold accountable for their actions. Furthermore, we are working to identify any individuals associated with Merchant Stronghold who were directly involved in this misconduct. Should any additional violations come to light, we are prepared to take further action against those responsible." *Id.* at 3. They did not explain the steps that might be taken.

Class Counsel also wrote to the owner of Merchant Stronghold after receiving the information about cardsettlement.org's communications with the class member at issue. In that letter, Class Counsel requested information regarding whether there were additional merchants signed up without consent apart from the 48 that Class Counsel was aware of. Merchant Stronghold never provided the information and has failed to respond to numerous follow-ups seeking the

- 4 -

information.  Class Counsel believes the actions of this entity are so egregious that it should be barred from having any role in the settlement.[4]

### D.  Another Cardsettlement.org Referral Partner Provides False and/or Misleading Information

Also on December 3, 2024, Class Counsel received an email from a concerned class member forwarding an email from a cardsettlement.org referral partner that contained significant false and/or misleading information.  For example, it makes the following statements:

> Most businesses never learned about this because only a single postcard was ever sent out, and that's why we are contacting you.  We have been contracted to provide the details to businesses in the USA.

It also falsely claimed:

> To start the process for claiming your portion of the Visa Mastercard settlement, please click the GET YOUR SETTLEMENT AMOUNT button below.  It takes just 60 seconds and there are no upfront costs or risks.

The message also wrongly stated:

> Once you submit and allow authorization, the Claims Administrator for the Settlement will contact Visa/MC to obtain the total credit card volume you processed from 2004 – 2019.  Immediately following will be the amount of your settlement. This normally takes 3-5 business days.

ECF 9489 at 3-4.

When a person clicks on "[g]et [y]our [s]ettlement [a]mount," they are routed to the cardsettlement.org website.  *Id.* at 4.  Class Counsel contacted representatives from cardsettlement.org immediately.  Following an email detailing the concerns, the parties held a call. During the call, cardsettlement.org's counsel stated that a cease and desist was sent to this entity and that they were trying to determine how many merchants may have received the false and/or

---

[4]   A response was received from Merchant Stronghold that questioned why the issue was being brought to the Court's attention.  Class Counsel explained the seriousness of the conduct and that it is under orders to provide the Court with information regarding matters related to third parties affecting class members.  Class Counsel has sent numerous emails to Merchant Stronghold, including copies of the Court's orders and all have been ignored.  Discovery was served on Merchant Stronghold and no responses were received on January 6, 2025 or thereafter.

- 5 -

misleading information.  Cardsettlement.org indicated that it may take a day or two to determine the exact number of merchants affected.

> **E.    Additional Information Comes to Light Regarding Merchants Being Signed Up Without Their Knowledge**

On December 6, 2024, Class Counsel received an email from the original class member who had been told his claim was in conflict.  This class member, a doctor with a busy practice, reported that he received another email from cardsettlement.org earlier that evening, encouraging him to let the conflicts department at Epiq know that he wished to have cardsettlement.org represent him, despite cardsettlement.org previously acknowledging that the contract was fraudulently entered and that it had voided the contract.

Below is the text of the email received by the class member (identifying information removed):

> The purpose of this email is to confirm that  . . . (the "Client") has engaged the company CardSettlement.org, by and through . . . , signer of the Authority To Represent document for cardsettlement (collectively, "CardSettlement.org"), to act as its representative with respect to assisting with the processing and submission of its claim in this matter.

> In accordance with the conflict resolution guidelines set forth in the payment card settlement, we have included the email address of the person identified as "Owner/Employee", . . . in the Conflict.

> If . . . agrees with this, we ask that . . . please use the REPLY ALL option to respond to this email, including all recipients, and type the following statement: "I agree to allow CardSettlement.org to represent me with the Visa/Mastercard settlement."

ECF 9495 at 2.

Class Counsel immediately contacted the class member to assure him that Epiq was aware of this issue and that his claim was not affected by this email.  Class Counsel also wrote to cardsettlement.org raising the new issue and questioning the company's ability to properly manage claims.  Class Counsel also alerted cardsettlement.org that it intended to alert the Court to this latest issue and would seek the cancellation of contracts and barring of cardsettlement.org from working

- 6 -

on the settlement in any manner.  Class Counsel also stated that a referral to the U.S. Attorney's office might be warranted.

Class Counsel also learned over that weekend that cardsettlement.org had not withdrawn the 48 known-to-be-fraudulent contracts referred to above.

On Monday, December 9, 2024, Class Counsel and cardsettlement.org held a telephone conversation.  Cardsettlement.org's representative stated that they alerted the class member to their error and shared with Class Counsel the email to him.  Cardsettlement.org's representative stated that when Class Counsel previously explained "don't just withdraw" the fake claims, cardsettlement.org did not understand that sentence to mean they must *at least* withdraw the fake claims.  Cardsettlement.org committed to withdrawing the fake claims and appears to have done so. ECF 9495 at 3.

### F.   Even In Mid-December, Agents of cardsettlement.org Still Spread False and/or Misleading Information

As of December 17, 2024, cardsettlement.org's referral partners were still sending solicitations containing false and/or misleading statements.  An email, provided to the Court in Class Counsel's December 20, 2024 submission, baselessly states: "About 1/3 of the settlement claims have potential issues preventing them from receiving a settlement."  ECF 9515 at 4.  And the email makes it appear that class members are directly filing claims ("Sign Up Now") instead of signing up for claims-filing services.  *Id.*

It is unknown whether other referral partners are making similarly misleading claims, but it appears so.  Two different Instagram posts by two referral partners were exhibits at the deposition of cardsettlement.org's representative on January 9, 2025.  *See* Ex. B (Rapoport Dep. Exs. 4-5). Despite that fact that cardsettlement.org claimed that it instructed all marketing by its partners to cease, these ads were easily found by Class Counsel.  *See id.*  These ads did not have the Court-

- 7 -

ordered disclaimers and had other misleading information.[5]  Class Counsel believes that it is likely that there are more ads available online.

Other issues regarding this company have also cost the Class.  For example, after it sought to withdraw 96 contracts, cardsettlement.org recently wrote to Epiq that it wanted to rescind its withdrawal of many of these contracts.  Epiq had already removed the withdrawn contracts.

The company has filed many thousands of contracts in just the past 12 weeks.  The volume of claims is far more than many other companies that have been working on this case for years.  This volume raises red flags.  Cardsettlement.org last registered a merchant on December 10, 2024 and has registered 13,265 merchants in total, making them one of the largest third-party filing companies in the case.

### G.    Discovery is Served on cardsettlement.org and Merchant Stronghold

Following the Court's December 21, 2024 text-entry only Scheduling Order, Class Counsel served discovery on cardsettlement.org and Merchant Stronghold on December 30, 2024 focused on "cardsettlement.org's practices to ensure that the Court has sufficient information to rule on Class Counsel's proposed sanctions motion."  *See* Dec. 21, 2024 text-entry Scheduling Order.  Class Counsel served interrogatories, requests for admission, document requests, and a single deposition notice on cardsettlement.org.  Class Counsel also served interrogatories and document requests on Merchant Stronghold.  The Court's Scheduling Order required responses to be provided by January 6, 2025.

As Class Counsel shared with the Court on January 7, 2025 (*see* ECF 9536), the responses from cardsettlement.org were insufficient.  Rather than helping to clarify and explain the issues before the Court, cardsettlement.org made improper objections, largely refused to provide documents or answers and pointed only to a few after-created documents, rather than providing contemporaneous records.  The Court issued a text-entry Order on January 7, 2025 requiring

---

[5]    Cardsettlement.org's representative claimed the ads were not solicitations, but this testimony is not persuasive.  *See* Ex. A (Rapoport Dep. Tr.) at 147:2-148:25.

- 8 -

cardsettlement.org to respond to Class Counsel's concerns regarding the discovery and to explain its position regarding the deposition by January 8, 2025. Jan. 7, 2025 text-entry Order. It filed an untimely and insufficient response on January 8, 2025, which resulted in the Court issuing a second text-entry Order on January 8, 2025 requiring cardsettlement.org to file another response on January 9, 2025. Jan. 7, 2025 second text-entry Order. That response also failed to address its numerous discovery failures. On Sunday, January 12, 2025, after two meet and confers with Class Counsel, cardsettlement.org provided amended responses to Class Counsel's discovery requests.

Cardsettlement.org, with about 16-hours' notice, confirmed there would be a deposition. That deposition went forward on January 9, 2025. In the deposition its representative confirmed repeatedly that documents that would have been responsive to Class Counsel's discovery requests exist. These documents include scripts, materials provided to its referral partners through a "knowledge base," contact information for its client's, and other relevant materials that cardsettlement.org wrongly withheld. Due to these failures, Class Counsel kept the deposition open so it can potentially re-depose the witness using these documents.

Further, throughout the deposition, cardsettlement.org failed to accept responsibility for its actions. For example, it testified that the Court's mandated-disclaimers were unnecessary because its advertisements and those of its referral partners were not solicitations. *See* Ex. A (Rapoport Dep. Tr.) at 61:18-23 ("Now, that being said, the court-mandated disclosure applied specifically to solicitations. The video in question was not a solicitation but rather an explainer for an informational video. Therefore, I 100 percent believe that the inclusion of the disclosure was not originally required."). Class Counsel showed the witness two ads referral partners are currently running on Instagram, despite the fact that the company claimed it had instructed its partners to cease all advertising. The representative claimed that the ads were not solicitations, but "educational." Ex. A (Rapoport Dep. Tr.) at 147:6-7; Ex. B (Rapoport Dep. Exs. 4-5). The witness further argued that various false and/or misleading statements on its original video and website were only changed to "appease" counsel and that the website and video did not need the Court-ordered disclaimer because the site was not soliciting clients. Ex. A (Rapoport Dep. Tr.) at 61:18-63:15.

- 9 -

Critically, cardsettlement.org testified that it has not signed up any merchants for claims-filing services directly.[6] *See, e.g., id.* at 70:2-5, 126:17-22.[7] Instead, all of the many thousands of contracts have come from is approximately 2,000 referral partners. This is what is concerning because cardsettlement.org has demonstrated repeatedly that it is unable to control this massive web of partners. Even as of January 12, 2025, there are misleading ads online that link to cardsettlement.org's website. And cardsettlement.org admits that it cannot control its partners. At the deposition, the representative was asked: "[D]o you monitor all of the outgoing material that your referral partners use?" The representative testified: "It's not humanly possible." Ex. A (Rapoport Dep. Tr.) at 116:14-16.

The deposition testimony raises concerns about whether cardsettlement.org exercises the professional responsibility and business ethics necessary to suggest that it will conduct its activities ethically in conformance with this Court's orders, without constant supervision by Epiq, Class Counsel and this Court.

Also troubling is that cardsettlement.org told this Court that it was able to sign up over 13,000 class members for claims filing services because its principals had a large network of business owners through a CPA firm, in which Mr. Hall was a partner, a restaurant delivery service formerly owned by Messrs. Rapoport and Frierson, and a credit card merchant services business owned by Messrs. Hall and Rapoport. *See* ECF 9510 at 1-2. However, according to cardsettlement.org's interrogatory answers, neither these entities nor Messrs. Rapoport, Hall, or Frierson has signed up a single client for cardsettlement.org's claims filing services. ECF 9536,

---

[6] This testimony is confirmed by cardsettlement.org's discovery responses. Jan. 12, 2025 cardsettlement.org's Response to Interrogatory No. 13 ("No clients were signed up directly by CardSettlement.org."). It appears also that none of the principals in cardsettlement.org has signed up any clients.

[7] Cardsettlement.org seems to have a self-serving definition of soliciting and marketing as its representative testified repeatedly that the company never solicited any merchants or sent out marketing. *See* Ex. A (Rapoport Dep. Tr.) at 63:25-64:11. This testimony is at odds with the reality that its website, even as of January 12, 2025, is plainly seeking to enter into business relationships with class members. Ex. C (cardsettlement.org's website).

- 10 -

Ex. 1 (cardsettlement.org's Interrogatory Response Nos. 2-4, 13, 17-18, 20-21). The restaurant delivery business was sold in 2020, is no longer operational, and they apparently have no access to its database of restaurant partners. *Id.* (cardsettlement.org's Interrogatory Response No. 17).

## III.    LEGAL AUTHORITY

More than 10 years ago, this Court set forth a guiding principle related to third-party claims filing entities in the context of the Court's role in supervising the claims processing:

> The Court's authority is clear, and its obligation to protect class members is strong. The only effective way to avoid confusion and intolerable inefficiencies in the claims filing process is to be firm: any third-party claims filing company that knowingly makes – directly or through an agent acting on its behalf – material false or misleading statements to merchants in an effort to solicit their business risks being permanently enjoined from filing claims in this case.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014).

There, the Court imposed a permanent injunction against a third-party filer and provided significant legal support for its holding, including details regarding a situation that arose in the *Visa Check* action where a third-party claims filing entity was found to have misled class members. *Payment Card*, 2014 WL 4966072, at *1-*3; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006). In *Visa Check*, the Court imposed an order requiring corrective notices be sent to class members, allowing merchants to void contracts they had entered into. *Payment Card*, 2014 WL 4966072, at *6.

Throughout the litigation, the Court has made clear its intention to "proactively protect class members from overreaching claims filing companies by 'preventing confusion and deception before they can happen,' as opposed 'to taking remedial measures after they happen.'" *Id.* at *17 (quoting ECF 6147 at 1).

As the *Visa Check* Court has noted: "[C]ommon sense dictates that the onus for ensuring that solicitations to class members are truthful must necessarily fall on the third-party claims filing company seeking class members' business." *Id.* at *30; *see also Visa Check*, 2006 WL 1025588, at

- 11 -

\*6.  "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class."  Manual for Complex Litigation (Fourth) §21.33 (2023) ("*Manual*").  "[T]he court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members."  *Payment Card*, 2014 WL 4966072, at \*31 (citing *Manual*).

> As this Court held:
>
> Pursuant to Rule 23(d), courts have taken various curative actions to "prevent court-approved class notification materials from being nullified by competing and inaccurate information."  1 Litigating Tort Cases §9:16; *see e.g.*, *In re Lupron Marketing and Sales Practices Litigation*, 2004 WL 3049754, at \*1-2 (D.Mass.2004) (ordering counsel for intervenors to remove website content found to be "blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs" and to provide corrective notice); *In re McKesson HBOC, Inc. Securities Litigation*, 126 F.Supp.2d 1239, 1246-47 (N.D.Cal.2000) (ordering that misleading statements made by outside attorney be remedied by curative notice to solicited class members, inclusion of court-mandated disclosures in attorney's future solicitations, and permitting rescission of solicited agreements); *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 489, 496-98 (E.D. Pa. 1995) (invalidating opt-outs and creating second opt-out period where several law firms opposed to the settlement sent misleading communications and advertisements to absent class members).

*Payment Card*, 2014 WL 4966072, at \*31.

As this Court has recognized, in determining the need for sanctions, the Court should look at the entire record.  "Viewed as a whole, the record adequately demonstrates the need for sanctions to assure future compliance with Court orders in this matter."  *3801 Beach Channel, Inc. v. Shvartzman*, 2007 WL 879668, at \*5 (E.D.N.Y. Mar. 21, 2007); *see also Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ("In determining whether a party's 'bad faith' in discovery should dictate a severe sanction, the Court should view the party's conduct in the case as a whole.").  Where a litigant succeeds "in establishing a pattern of conduct" sanctions are warranted.  *Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*, 1989 U.S. Dist. LEXIS 6050, at \*5 (S.D.N.Y. June 1, 1989); *see Izzo v. ING Life Ins. &*

- 12 -

*Annuity Co.*, 235 F.R.D. 177, 188 (E.D.N.Y. 2005) (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (noting that the Second Circuit has characterized the imposition of reasonable expenses, including attorney's fees, on the disobedient party as "'the mildest' of the sanctions authorized by Rule 37").[8]

"Rule 37(b) provides for sanctions against either parties or nonparties who disregard a court order." *De Mañez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008); *see also David v. Hooker, Ltd.*, 560 F.2d 412, 415-17 (9th Cir. 1977) (where the nonparty was held liable for sanctions for failing to comply with discovery demands, under Rule 37). "To impose sanctions on a nonparty . . . the violation of a court order is also generally required." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008). Such violations have plainly been demonstrated here. *See, e.g.*, *Universitas Educ. LLC v. Nova Grp., Inc.*, 2013 WL 3487350, at *7 (S.D.N.Y. July 11, 2013) (quoting *Bridgeport Guardians v. Delmonte*, 371 F. Supp. 2d 115, 121 n.5 (D. Conn. 2005) ("'[A] court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it.'"), *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015).

It is well-established that a violation of a law is "knowing" if the defendant knew his actions would result in the proscribed conduct, regardless of whether the defendant knew the conduct was illegal. *Bryan v. United States*, 524 U.S. 184, 193 (1998). "'[T]he term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.'" *Microsoft Corp. v. AGA Sols., Inc.*, 2009 WL 1033784, at *3 (E.D.N.Y. Apr. 17, 2009) (Hurley, J.); *see also Visa Check*, 2006 WL 1025588, at *3-*4 (rejecting similar claim made by another third-party claims-filing service).

---

[8]    Even if cardsettlement.org was compliant (which it continues to demonstrate that it is not through problems continuing to surface and its dismissive attitude in its discovery responses): "The eventual compliance with multiple court orders after repeated failures to do so does not negate the basis for a sanctions award." *Shvartzman*, 2007 WL 879668, at*5.

As the Court further noted: "The proper exercise of judicial authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *Payment Card*, 2014 WL 4966072, at *31.

### A.    All Writs Act

The All Writs Act empowers federal courts to "'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Id*. (quoting 28 U.S.C. §1651). "'The power conferred by the Act extends . . . to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.'" *Id*. at *13 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

This power includes the power to "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *Visa Check*, 2006 WL 1025588, at *5-*6 (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000); *In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000)).

This Court also has the authority to enjoin a third-party pursuant to the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). "An injunction, where necessary to protect the court's earlier orders . . . is authorized under the All Writs Act. That power extends to non-parties." *Synthroid*, 197 F.R.D. at 610 (citing *New York Tel. Co.*, 434 U.S. at 174; *Payment Card*, 2014 WL 4966072, at *31 ("The power conferred by the Act extends . . . to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."); *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir. 1998) (noting court's authority to grant injunctive relief against nonparty trade association that sent unauthorized,

- 14 -

confusing letter to class members but instead invoking Rule 23 to order offending nonparty to send corrective notice). "Because . . . contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel." *Visa Check*, 2006 WL 1025588, at *5; *see also Makere v. Fitzpatrick*, 2023 WL 3010539, at *1 (N.D. Fla. Mar. 22, 2023), *aff'd by*, 2024 WL 2152114 (11th Cir. May 14, 2024) ("[Under] the All Writs Act, and the court's inherent authority, sanctions are imposed as set out in this order.").

In sum: "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *Visa Check*, 2006 WL 1025588, at *4; *Payment Card*, 2014 WL 4966072, at *31.

### B.    Authority Under Rule 23(d)

Moreover, Rule 23(d) of the Federal Rules of Civil Procedure grants district courts broad authority to protect absent class members from misleading communications.  This authority includes the power to "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *Visa Check*, 2006 WL 1025588, at *5 (citing *McKesson.*, 126 F. Supp. 2d at 1242; *Synthroid*, 197 F.R.D. 610); *see also Williams v. Quinn*, 2010 WL 3021576, at *3-*4 (N.D. Ill. Jul. 27, 2010) (issuing an order that prevented counsel for class-action-settlement objectors from contacting class members, after the court found that they had engaged in previous misleading communications); *Manual*, §21.33.

### C.    Inherent Authority

"A federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Tr. v. Sabino*, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991).  The Court has the discretion to fashion appropriate sanctions for conduct that abuses the judicial process, as cardsettlement.org's and Merchant Stronghold's conduct does here. *See*

- 15 -

*Chambers*, 501 U.S. at 44-45.[9]   Indeed, there is significant, well-settled case law regarding the Court's inherent authority to sanction a non-party '"for abuse of the judicial process."'   *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022) (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended)); *see also Bartos v. Pa.*, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010) ("It is also beyond serious dispute that this power extends, not only to parties in civil litigation, but also to other persons, such as witnesses, who may be embroiled in that litigation."); *In re Rainbow Mag., Inc.*, 77 F.3d 278, 282 (9th Cir. 1996) (sanction imposed against a non-party for filing false statement).

### D.    The Court has Authority to Sanction Non-Parties

Cardsettlement.org and Merchant Stronghold's status as a non-parties, while relevant, is not dispositive.  *See, e.g.*, *De Mañez*, 533 F.3d at 585 ("No matter who allegedly commits a fraud on the court – a party, an attorney, or a nonparty witness – the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *see also Sundby v. Marquee Funding Grp., Inc.*, 2020 WL 5709445, at *5 (S.D. Cal. Sept. 24, 2020) ("The Court's inherent authority to sanction willful conduct also includes 'the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses.'").  The filing of fake proofs of authority was action which caused the parties (here, the Class) additional expenses.  *See In re Holloway*, 884 F.2d 476, 477 & n.2 (9th Cir. 1989) (*per curiam*) (sanctioning a court reporter for "repeated and flagrant failures to meet court-imposed deadlines" that resulted in "severe prejudice to both the parties and the court").

While '"many courts have addressed the issue of whether the inherent authority of a court to sanction litigants extends to non-parties"' there is some debate where the non-parties are found not to have violated '"any specific court order."'   *Ganci v. U.S. Limousine Serv., Ltd.*, 2012 WL

---

[9]    "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders."  *Id.* at 57.

13109965, at *4 (E.D.N.Y. Sept. 28, 2012).  That issue is inapplicable here where, as this Court has previously noted in relation to third-party claims filers, "a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *Visa Check*, 2006 WL 1025588, at *4; *see also* ECF 6349 at 55 (granting injunction as to third-party claims filer).  In this case, the Court may assess the reasonable costs incurred by Epiq stemming from cardsettlement.org's conduct related to the submissions – the settlement agreement is a specific Court order.  This would protect the settlement as the costs incurred would otherwise come from the settlement fund.[10]

Some courts hold that a specific finding of bad faith is necessary in order to support the invocation of the court's inherent power to impose sanctions to a non-party for a violation of a court order.  *See, e.g.*, *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*, 432 F. App'x 25 (2d Cir. 2011).  As Class Counsel has detailed in prior filings related to cardsettlement.org and Merchant Stronghold, a finding of bad faith is warranted here.  *See* ECF 9332 at 6-7 (describing conduct and citing cases related to "bad faith").  Cardsettlement.org admitted that it was aware of a massive problem with materials it submitted to Epiq.  In total, at least 48 contracts were submitted to Epiq that admittedly were signed not by the class members but by Merchant Stronghold without consent.  The company has been the subject of numerous letters to Class Counsel and the Court for false and/or misleading statements made by it and by its referral partners.  And it submitted a number of purported proofs of authority (including from J.K. Rowling and various profane names) and subsequently had to withdraw those.  In addition, cardsettlement.org fails to recognize its

---

[10]  Some courts require additional findings before allowing sanctions against non-parties including finding the non-party: "(1) [Has] a substantial interest in the outcome of the litigation and (2) substantially participate[s] in the proceedings in which he interfered." *Helmac Prods. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993).  The Second Circuit has not adopted this standard, but even under this standard, the Court could sanction cardsettlement.org.  The company has a substantial monetary interest in the litigation and with more than 13,000 proofs of authority on file, that can be viewed as substantially participating in the proceedings.

responsibility to oversee the actions of its over 2,000 referral partners to ensure that they are not misleading class members when signing them up for third party claims filing services. As reflected in its January 9, 2025 letter to the Court, cardsettlement.org claims it has done nothing wrong because: "While there were some problematic authorities to represent" this was "because of one bad actor not controlled by CardSettlement.org." ECF 9541 at 1. This is particularly troubling now that it has been revealed that cardsettlement.org's clients are singed up exclusively through its referral partners. This pattern of misleading and wrongful conduct is partially explained by cardsettlement.org's initial broad resistance to discovery necessary to flesh out the facts of this controversy and its dismissive attitude toward the Court's approach to and orders with respect to supervising the conduct of third-party filers to protect class members and the integrity of the claims process.

As Class Counsel explained, that conduct meets the criteria for bad faith. Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "'tantamount to bad faith.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Bad faith, in turn, is associated with conduct that is intentional or reckless. *See Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008); *United States v. Wheeler*, 154 F. Supp. 2d 1075, 1078-79 (E.D. Mich. 2001) (sanctions under court's inherent authority warranted for reckless or bad-faith conduct, and defining "'recklessness'" as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care,'" such that it is "'more than mere negligence but less than intent'"). "Because [cardsettlement.org's] contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel." *Visa Check*, 2006 WL 1025588, at *5; *see also Makere*, 2023 WL 3010539, at *1 ("[Under] the All Writs Act, and the court's inherent authority, sanctions are imposed as set out in this order."). In sum:

> Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties.

- 18 -

*Visa Check*, 2006 WL 1025588, at *4; ECF 6349 at 55.

## IV.     ADMINISTRATIVE FILING OF CLAIMS

In the Court's Scheduling Order, the Court directed that Class Counsel "shall also elaborate on its proposed procedure whereby 'the class members' claims that have been submitted to date by cardsettlement.org remain but cardsettlement.org does not financially benefit from those contracts.'" Dec. 21, 2024 text-entry Scheduling Order.  Class Counsel has met with Epiq regarding this issue. Submitted concurrently with this memorandum is a declaration from Loree Kovach, a Senior Vice President at Epiq.  That declaration explains how Epiq could handle claims of "Class Member merchants currently represented by CardSettlement.org, so that their claims could remain active and their rights preserved, should that third-party filer be required to withdraw its representation of such merchants."  *See* Ex. D (Kovach declaration), ¶2.

Epiq provides a detailed description of how these claims could be handled, depending on whether the contracts have already been submitted and depending on the current state of those contracts and/or claims in Epiq's systems (*e.g.*, approved, conflict, deficient).  The declaration also explains that Epiq can track its costs to effectuate this proposal.

Class Counsel believes the proposal is a reasonable solution to this problem, should the Court determine that the procedures detailed by Epiq are appropriate to institute.

## V.     CONCLUSION

Cardsettlement.org and its referral partners, for whom they are responsible, repeatedly made misleading statements to class members; filed multiple fake proofs of authority; allowed at least 48 fake claims to be filed; have been unable to manage the content of material shared by its referral partners and has cost the Class significant money by causing Epiq to repeatedly manage the firm's sloppy or purposeful conduct.  Finally, cardsettlement.org has demonstrated a dismissive attitude toward the Court's orders carrying out its supervision to protect class members and the integrity of the claims process.  The record raises concerns that cardsettlement.org  does not understand or appreciate the need for vigilance in maintaining honest communications with class members with

- 19 -

respect to its claims-filing services. Class Counsel has made a significant showing that this firm should be barred from any further role in the settlement. Nothing presented by cardsettlement.org provides comfort that all the 17,000+ proofs of authority were knowingly entered into by class members or that if left unchecked it may continue to have its agents make false and misleading statements to class members, causing further harm. Its conduct so far has caused confusion among class members and considerable expenditure of resources by Epiq, Class Counsel and this Court.

DATED: January 13, 2025                     Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            PATRICK J. COUGHLIN
                                            ALEXANDRA S. BERNAY


                                                    s/ Alexandra S. Bernay
                                            ALEXANDRA S. BERNAY

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            619/231-7423 (fax)

                                            ROBINS KAPLAN LLP
                                            K. CRAIG WILDFANG
                                            THOMAS J. UNDLIN
                                            RYAN W. MARTH
                                            2800 LaSalle Plaza
                                            800 LaSalle Avenue South
                                            Minneapolis, MN  55402-2015
                                            Telephone:  612/349-8500
                                            612/339-4181 (fax)

                                            BERGER MONTAGUE PC
                                            H. LADDIE MONTAGUE, JR.
                                            MERRILL G. DAVIDOFF
                                            MICHAEL J. KANE
                                            1818 Market Street, Suite 3600
                                            Philadelphia, PA  19103
                                            Telephone:  215/875-3000
                                            215/875-4604 (fax)

- 20 -

4905-7827-8926.v1

Co-Lead Counsel for Plaintiffs

- 21 -