# EXHIBIT D

Case 1:05-md-01720-BMC-JAM     Document 9544-6     Filed 01/13/25     Page 1 of 8 PageID #: 547762

**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION** <br><br> **This Document Applies to:  All Cases.** | **No. 05-MD-1720 (MKB) (JAM)** |

## DECLARATION OF LOREE KOVACH REGARDING ADMINISTRATIVE SUBMISSION OF CERTAIN CLAIMS

I, LOREE KOVACH, declare and state as follows:

1.      I am a Senior Vice President for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Class Administrator in the above-captioned case.  In this capacity, I am authorized to make the following Declaration on behalf of Epiq.

2.      The purpose of this Declaration is to provide the Court with a description of the process by which Epiq could "administratively" submit certain claims for Class Member merchants currently represented by CardSettlement.org, so that their claims could remain active and their rights preserved, should that third-party filer be required to withdraw its representation of such merchants.

3.      As of the date of this Declaration, CardSettlement.org has 13,265 merchants associated with its registrant account via the Merchant Portal on the Settlement website.  Should CardSettlement.org be required to withdraw its representation of these merchants, Epiq recommends certain actions, based on the status of the merchant record and documentation submitted to date, to ensure each merchant is not unduly harmed by CardSettlement.org's withdrawal.

4.      In addition, CardSettlement.org has previously registered, but since withdrawn its representation of, 347 TINs.[1] Epiq recommends certain actions for a subset of these merchants to ensure they too are not unduly harmed by CardSettlement.org's withdrawal of its representation.

5.      As an initial matter, Epiq recommends CardSettlement.org be required to provide a spreadsheet of all contact information for all merchants for which it has registered, prior to any Court-ordered withdrawal of its representation.  This will ensure Epiq has that information in an easily-ingestible format.  It will also ensure Epiq has what is presumably the most current contact information for these merchants, based on the assumption that CardSettlement.org was recently in contact with them when signing them up as clients.  The earliest signature date on any CardSettlement.org representation agreement is in October 2024, thus the contact information in CardSettlement.org's possession was recently obtained and is likely more current than any contact information for these merchants otherwise available to Epiq.  Epiq understands that Class Counsel has requested, in Request for Production of Documents #3, this information, and that CardSettlement.org has refused to provide it.  If CardSettlement.org is not required to provide contact information for these merchants, Epiq can transcribe their contact information from the thousands of representation agreements CardSettlement.org has submitted to Epiq, but this would require significant administrative expense and time and would detract from Epiq's other ongoing administrative duties related to the Settlement.

---

[1] Of these 347 TINs, 192 are now represented by another registrant and thus no further action need be taken with respect to them.  For one, CardSettlement.org informed Epiq that the merchant did not operate during the class period, and Epiq has no transaction information for it in its records, thus no further action is needed for this merchant.  In addition, 89 of these were withdrawn after Class Counsel informed CardSettlement.org of proof of authority documentation it had submitted which appeared to be fraudulent.  See Class Counsel's December 4, 2024, submission to the Court, Dkt. 9489 for additional information.  Note that Dkt. 9489 references withdrawal of "96 entities" but seven of these "entities" did not include facially legitimate TINs and thus were never actually registered.  Another 48 merchants were withdrawn because of contracts with Merchant Stronghold, as further discussed in Dkt. 9489.

6. Of the merchants referenced in Paragraph 3, *supra,* 10,060 have a status of "Approved," which means the documentation submitted by CardSettlement.org included a TIN and business name that matched Epiq's records, was sufficient to show a contractual agreement between it and the merchant, and that such documentation was signed by a duly authorized representative of the merchant.

   a. Of these merchant records, claims were submitted by CardSettlement.org on behalf of 1,848 merchants. Epiq proposes the following steps for these claims. First, Epiq will create a registrant account for the merchant in the Merchant Portal using the contact information for the merchant provided by CardSettlement.org. Epiq will then make that registrant account the one authorized to act on behalf of the claim submitted for the merchant. Epiq will then email the merchant and inform it of CardSettlement.org's withdrawal, that a claim has already been submitted on its behalf, provide the merchant with login credentials, including a temporary password for the registration account it created for the merchant, and encourage the merchant to review the interchange fees associated with its record by visiting the Merchant Portal. These merchants would then have validly-submitted claims under their own names, which could ultimately be paid directly to the merchant after being valued based on the Plan of Distribution.

   b. For the remaining 8,212 merchants with an "Approved" authorization status, Epiq proposes that there is sufficient information, based on the proof of authority documentation submitted by CardSettlement.org, to evidence the merchant's intent to file a claim in the Settlement. Accordingly, Epiq can exercise its administrative authority and submit claims on behalf of these merchants, under the contact

information for the merchant as provided by CardSettlement.org.  Once the claims are submitted, Epiq would undertake the same steps as described above to create a registrant account for the merchant, inform the merchant that a claim has been submitted on its behalf, provide the merchant the login credentials for the account, and encourage the merchant to visit the Merchant Portal to review its interchange fee information.  Again, these merchants would then have validly-submitted claims under their own names, which could ultimately be paid directly to the merchant after being valued based on the Plan of Distribution.

    c.  Epiq acknowledges that administrative submission of these claims as described above, along with creation of registration accounts for the merchants, is an imperfect solution.  However, it is Epiq's opinion that this is the best way to ensure these merchants are not unduly harmed by CardSettlement.org's actions.

7. Of the merchants referenced in Paragraph 3, *supra*, 787 have an authorization status of "Deficient," which means that the proof of authority documentation submitted by CardSettlement.org was either insufficient to prove a contract between the third-party filer and the merchant, or that no documentation has yet been submitted by CardSettlement.org.  In addition, 60 of the merchants referenced in Paragraph 3, *supra*, have an authorization status of "Rejected," because the documentation provided by CardSettlement.org was insufficient to prove a contract between the third-party filer and the merchant, CardSettlement.org was given the opportunity to correct this deficiency, and the documentation it provided did not do so. Because of the insufficiency of the documentation provided, or because no documentation was provided at all Epiq does not believe a clear intent to file a claim for these 847 merchants can be evidenced, thus Epiq does not recommend administrative submission of claims for this subset of merchants.

Instead, Epiq recommends CardSettlement.org be required to notify them of its withdrawal from representing them, should the Court so order it, and to direct them to visit the Merchant Portal to create their own registration account and register their TIN in order to file a claim.

8.    Of the merchants referenced in Paragraph 3, *supra*, 14 are associated with an Excluded Party.  Similar to the Deficient and Rejected merchants referenced in Paragraph 7, *supra*, Epiq recommends CardSettlemenmt.org be required to notify these merchants of its withdrawal of representation and direct them to visit the Merchant Portal to create their own registration account. Any registrant attempting to register a TIN associated with an Excluded Party is sent a rejection notice and given the opportunity to appeal that rejection.  Accordingly, should these merchants register their TINs, they would ultimately receive the rejection notice have the opportunity to appeal the rejection if they think it in error.

9.    Of the merchants referenced in Paragraph 3, *supra*, 1,997 have an authorization status of "Conflict," indicating more than one registrant has registered the merchant's TIN via the Merchant Portal.  For these merchants, should CardSettlement.org be required to withdraw, the merchant's record would then be handled by the other party to the conflict, so no further action would be needed by Epiq.  Presumably the other registrant would work with the merchant to submit its claim.

10.    Of the 347 merchants for which CardSettlement.org has withdrawn its representation, there are 18 merchants which may require further action. CardSettlement.org provided no reason for its withdrawal regarding 12 of these merchants, for three (3) merchants it indicated that its "client wanted to withdraw," but each of the three (3) merchant TINs has not been registered by anyone else, and all three (3) have interchange fees in Epiq's records, and for two (3) merchants CardSettlement.org indicated that it made a typo in the TIN upon registration,

and asked that they be withdrawn for that reason. However, it does not appear that CardSettlement.org has registered any merchants with the same or similar names and corrected TINs. Accordingly, to ensure these merchants are fully informed of their rights, Epiq recommends CardSettlement.org be required to provide these merchants with the same notice as referenced in Paragraph 7, *supra*.

11.    Of the "Approved" merchants referenced in Paragraph 6, *supra*, 4,810 have no interchange fees in the Class Administrator's records. Of those merchants referenced in Paragraph 6a, *supra*, CardSettlement.org has submitted a Research Request on behalf of 347 of these merchants. Of these, 32 have been completed by the Class Administrator with no additional transaction information found and 3 have been completed by the Class Administrator with additional transaction information found. The remaining 312 Research Requests are currently pending review by the Class Administrator. The communication Epiq proposes sending to all CardSettlement.org merchants in an "Approved" status, as detailed in Paragraph 6, will encourage the merchant to review the interchange fees associated with its record in the Merchant Portal. If these merchants with no interchange fees follow that direction, they will be able to follow the steps outlined in the portal to challenge the data in the Class Administrator's records with respect to their interchange fees.

12.    Epiq can track time and costs related to the above activities in the event the Court were to direct CardSettlement.org to pay the administrative fees and costs associated with these activities in the form of sanctions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 13, 2025, at Seattle, Washington.


_____
Loree Kovach