UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720(MKB)(JAM)<br><br>Civil No. 05-5075(MKB)(JAM)<br><br>RULE 23(b)(3) CLASS COUNSEL'S MONTHLY REPORT REGARDING THIRD-PARTY ENTITIES |
| This Document Relates To:<br><br>ALL ACTIONS. | |

## I. INTRODUCTION

This is the seventeenth monthly report regarding third-party claims filers following the Court's request.

Rule 23(b)(3) Class Counsel ("Class Counsel") and Epiq continue to receive communications regarding third parties. Calls received via the toll-free number are tracked and reported to Class Counsel from Epiq. Class Counsel also directly receives calls and emails regarding third parties that are followed up on immediately. Additionally, Class Counsel regularly searches online using various keywords to monitor new entrants. Epiq received 70 contacts regarding third parties since the last report. It also forwarded to Class Counsel several specific issues which are discussed below.

Now that the claims-filing deadline has passed, Class Counsel and Epiq expect that issues related to the solicitation of class members for filing services to decrease, but expect issues related to third parties will continue to arise regularly. Monthly reports will continue.

## II. STATUS OF PREVIOUS ORDERS TO SHOW CAUSE

### A. Cardsettlement.org and Merchant Stronghold

Matters related to cardsettlement.org appear to be managed. Cardsettlement.org provides a report regularly to detail its efforts regarding confirmation of engagement.

Below is a chart, updated as of March 7, 2025, provided by cardsettlement.org regarding client contacts:

| Affirmed: | 185 |
|---|---|
| Pending: | 624 |
| Rejected: | 2 |
| **Total:** | **811** |

The parties reached an agreement regarding cardsettlement.org's payment of Epiq's costs in handling issues related to cardsettlement.org from November 2024. Class Counsel has confirmed the first payment has been received by Epiq.

Class Counsel has still not received any further contact from Merchant Stronghold.

## III. MISLEADING WEBSITES, SOLICITATIONS, AND OTHER MATTERS

### A. JAM3STRO

On February 14, 2025, Class Counsel informed the Court of an issue with and sought an Order to Show Cause against an entity known as JAM3STRO. ECF 9561. This entity appeared to have fraudulently signed up 2,184 merchants for claims-filing services. *Id.* Class Counsel attempted to contact the entity and received one responsive email. Following that email, there has been no further contact with the person believed to be responsible for this matter. The Court issued an Order requesting further information. Feb. 14, 2025 text-entry Order. Class Counsel provided additional information after consulting with Epiq, including recommendations regarding these class members that were listed in materials sent by JAM3STRO to Epiq. ECF 9568. Class Counsel also provided information that an attorney who appeared to be associated with the entity passed away a month before he supposedly wrote an email. *Id.* at 3. As of the Court's text-entry Order on February 25, 2025, the Court has not issued any further orders about this entity.

### B. LenCred

#### 1. Class Counsel's Statement

Another issue has arisen regarding LenCred. Epiq alerted Class Counsel to an issue this week regarding LenCred, a company previously the subject of an Order to Show Cause. Three proofs of authority appear to have problems. Two different class members contacted Epiq and insisted that they did not sign up for services with LenCred. After reviewing the documentation submitted by LenCred, Class Counsel wrote to LenCred to seek clarification. Two of the documents appeared to be signed by the class member and used the class member's address. However, the DocuSign seemed to show that the contracts were signed in places the class members both insisted they had not visited. In both cases, LenCred has withdrawn from the conflict. The third proof of authority appears to be a mistaken web form that was subsequently corrected. Class Counsel has again reminded LenCred that it must exercise extreme care prior to submitting materials to Epiq. On March 5, 2025, Class Counsel and LenCred held a conference call. During

that call, Class Counsel discussed the matter and encouraged LenCred to submit a response, sharing its view of the issue. Class Counsel shared LenCred's response with Epiq. LenCred's explanation regarding the use of a VPN may well explain the DocuSign issue, as VPNs are extremely common and often are in use without the user's full knowledge.

### 2. LenCred's March 6, 2025 Response

This correspondence serves to reaffirm our unwavering commitment to the merchants we have engaged in the Visa/Mastercard class action settlement. We wish to formally document and bring to the court's attention the facts surrounding this recent issue so the full story is understood.

#### a. Issue 1: False Allegation of Forgery

We categorically deny the fraudulent claim made by a merchant alleging that her application was "forged." This assertion is patently false and entirely without merit. We have never engaged in such conduct, nor would we ever tolerate any form of impropriety.

Upon being notified of this matter, we immediately investigated and confirmed that the merchant was signed up by an employee of one of our partners following a phone conversation with the business owner on February 4th. Subsequent to our inquiry, the merchant acknowledged that she had, in fact, spoken with this group and now recalls engaging in this process.

Notwithstanding the meritless nature of the allegation, we have honored the merchant's request for withdrawal from the settlement. However, we vehemently deny any wrongdoing. Upon further investigation, and with the Cytracom tool, we confirmed that this merchant was using a VPN which fully explains why the "location" stamp did not match their home or business address. This is very common with VPN's and part of the reason many businesses use them. We're happy to provide that evidence if needed.

#### b. Issue 2: Meritless Claim by dentist

A second matter concerns a dentist who, beyond question, voluntarily completed the settlement application. The merchant was included in one of our partner's email groups, regularly

- 3 -
4934-0219-2419.v1

receiving correspondence on multiple topics, including the settlement opportunity. The merchant responded to the email, provided his verified home address, and executed the agreement.

Despite our right to enforce the agreement, we had already voluntarily withdrawn this claim over a week ago in accordance with our policy to respect merchant requests. Any claim by the dentist suggesting impropriety is categorically false.

### c. Issue 3: Procedural Deficiency in Agreement Submission

The third concern pertains to an application that was not completed correctly. Upon identifying the deficiency, we promptly requested a corrected version from our partner, as evidenced by written communications that is available for court review if necessary. Given the impending Feb 4th deadline, we proceeded with submission in good faith to protect the merchant's right to claim settlement funds. However, as the application remains in a deficient status, we are happy to withdraw and step aside on this one as our request for a new application has not been fulfilled.

### d. Conclusion

To date, we have successfully signed up over 10,000 merchants and have consistently demonstrated full compliance and transparency in addressing any concerns that have arisen. Nearly all inquiries presented to us involve matters that we had already proactively resolved or were in the process of addressing. We also want to point out that a location stamp on agreements is very likely to be inaccurate when businesses use VPN's and we obviously have no control of that.

To be clear, we are very serious about these things as we take our role as a third party very seriously. Please be advised that I remain available for any further discussions or clarifications as needed.

### C. Certificate Clearing Corporation Issue

#### 1. Class Counsel's Statement

On Monday, March 3, 2025, during a conference with an attorney representing a state's franchise tax board, Class Counsel was informed of certain concerning communications from a representative of Certificate Clearing Corporation ("CCC"). These communications falsely implied that CCC had special access to the merchant portal following the close of the claims period that other class members did not have. It also falsely represented that Class Counsel had made statements regarding a commitment to provide the Court with late claims filings and that issues related to natural disasters in the state would garner "sympathy." These statements appear to have been made in an effort to have the state file a claim and then potentially sell that claim to CCC.

Specifically statements included the following:

- "Even though the February 4th deadline has passed, CCC still has active data portal access to Epiq, the case administrator. Also, we have informed case counsel that [State] may have additional filing activity. Case counsel told us that she will present late [State] filing activity to the case judge, and that there is a likelihood it will be accepted, in part due to sympathy surrounding the recent [natural disaster] occurring so close to the filing deadline."

- "CCC's counsel discussed the late filing issue with the case counsel who confirmed that [they] would bring any of our late filers before the case judge."

- "I don't believe there's a path for individual merchants (i.e. FTB) to self-file at this point. As communicated previously, CCC still has data portal access which is why I know that we can still submit."

- "CCC has a direct data relationship with the case administrator (Epiq)."

No disclaimers were present in any of the communications reviewed.

Class Counsel immediately reached out to CCC's counsel on March 3 and exchanged correspondence. A call was held on March 4.

CCC's counsel agreed that Class Counsel never made the statements attributed to them. He further reported that he would immediately look into the issue and report back. During the call on March 4, CCC's counsel reported that it appeared that only this state received these false and misleading messages. Class Counsel directed CCC to investigate further and provide a report for

the Court. At this time, it appears the misstatements have been corrected, but concerns remain regarding this entity. Below is counsel for CCC's report:

## 2. Outside Counsel of CCC's Response

Class Counsel was informed on March 3 of potentially misleading communications made by a representative of CCC to a representative of a government agency class member (the "Class Member"). The communication regarded the filing of late claims. The communication stated that CCC had the ability to submit untimely claims to the portal and that the representative didn't "believe" the Class Member had the ability to do so. The representative's communication also said CCC had received assurances from Class Counsel that Counsel would submit untimely claims to the court and the court was likely to approve those untimely claims.

Outside Counsel for CCC immediately communicated with Class Counsel upon becoming aware of the communication. Outside Counsel promised an immediate investigation and working with CCC found as follows. The representative in question is not an employee of CCC, but a representative of a sales organization under contract with CCC. Outside Counsel and CCC investigated relevant communications, interviewed the representative and the President of the sales organization and requested a copy of all correspondence. CCC and Outside Counsel found no other communications like this outside of the emails to the Class Member.

The representative had been working to help the Class Member file its claims prior to the deadline. As the deadline approached, the representative sought clarification from CCC and the President of the sales agency on the status and ultimate disposition of untimely claims in the event the Class Member could not collect all of its TINs. The representative "heard" that late claims in these types of cases were often considered, but there was no guarantee. The representative said, and Outside Counsel and CCC have confirmed, he included this "no guarantee" language in his communications with the Class Member. The representative stated he was not intending to mislead the Class Member in any respect, just help them file their claims. He believed the agency could not submit its own claim as the "submit a claim" button had disappeared from the website. He, in consultation with the sales agency President, believed that based on other cases, there would be a

process for untimely claims to potentially (no guarantee) get them included in the Class. The sales agency and the representative confused his understanding of what they considered the usual process with something they had heard about Class Counsel being consulted by CCC on late claims by this particular Class Member. He said he had no desire to mislead the Class Member and regretted the communication. The representative now realizes what he said to the Class Member attributing statements to Class Counsel was not true and the statements attributed to Class Counsel were not made. He also knows he should have cleared the communication through CCC procedures which would have prevented the improper communication.

CCC regrets that statements were attributed to Class Counsel that were not true. CCC acknowledges the importance of truth in communications. But CCC also believes that this representative's statements were not intended to mislead and that in his desperation to assist the Class Member, he conflated what he was told was the usual practice and incorrect statements improperly attributed to Class Counsel.

Regardless of the lack of intent and confusion, CCC has counseled the representative and the sales agency. The agency is on probation. Any more issues and CCC will terminate them as it did previously with another agent. CCC has confirmed there are no other instances of this communication as it all related to this particular Class Member. CCC has bolstered its communication protocols by instituting required disclaimer footers to email communications from the sales agency and its representative and initiating technology changes on outgoing email to attempt to flag any future issues real time.

### D. Other Issues Related To Solicitations

#### 1. Recently Received Information

After business hours on March 6, 2025, Epiq alerted Class Counsel to a potential issue with a new third-party claims filer. This entity appears to have incorrect information on its website and has certain issues with proofs of authority submitted. On March 7, 2025, Class Counsel wrote to the entity. Because a full investigation cannot be completed in time to be included in this Report,

Class Counsel plans to follow up with the Court once the issues have been better understood, including giving the company an opportunity to correct and/or respond.

### 2. Follow-Up Regarding the Court's Feb. 4, 2025 Text-Entry Order

Previously, Class Counsel alerted the Court to an issue related to the late withdrawal of representation by various third-party claims filers. The Court entered an Order setting up a method by which the third parties would alert class members they withdrew from representing and provide the class members with a grace period. Feb. 4, 2025 text-entry Order. Class Counsel sent letters to all of the third parties covered by the Order alerting them to the Court's decision, directing them to alert their former clients, and reporting to Epiq that they had followed the Court's Order. On March 4, 2025, Epiq provided a list of third-party claims filers from whom Epiq had not yet heard from. Class Counsel, on March 4, then wrote to those entities (more than a dozen) to follow-up and ask that the entities immediately report as to whether they had already provided the required information to Epiq. As of March 7, 2025, several responses have been received. Epiq is monitoring compliance.

### E. Response to Filing by Class Member Edward W. Orr

On February 28, 2025, a filing from Edward W. Orr, an apparent member of the Rule 23(b)(3) Settlement Class, was posted on the docket. ECF 9569. Mr. Orr re-submitted a filing he states he previously sent to the Court which was never filed on the docket. *Id.* Mr. Orr's (original and follow-up) letters thank the Court and Class Counsel for publicizing the misstatements made by Betz & Baril regarding the settlement. Mr. Orr neither requested any further action by the Court or Class Counsel, nor is any needed.

### F. Outreach to Third Parties by Epiq

As Class Counsel previously reported, since August 18, 2023, Epiq has been performing specific outreach efforts to known third-party claims filers.

As of February 28, 2025, Epiq has received client lists from a total of 651 third-party claim filers claiming representation of 10 or more claimants, which is an increase of 117 third-party filers

from last month's report. The third parties claim total representation of 987,270 Tax Identification Numbers ("TIN"), which is an increase of 334,936 TINs from last month's report. This increase is plausible, in part because Epiq has had 55 new third parties register since January 30, 2025. These 55 third parties alone account for 4,207 of the increased TINs since the last report.

## IV. CONCLUSION

Class Counsel will continue to apprise the Court regarding issues with third-party claims filers via monthly reports and will bring urgent matters to the Court's attention via letter. The next monthly report will be filed on April 11, 2025.

DATED: March 7, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
ALEXANDRA S. BERNAY

s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBINS KAPLAN LLP
K. CRAIG WILDFANG
THOMAS J. UNDLIN
RYAN W. MARTH
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

- 9 -

4934-0219-2419.v1

Co-Lead Counsel for Plaintiffs