UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

This document refers to: ALL ACTIONS

*SUA SPONTE*
**REPORT AND**
**RECOMMENDATION**

05-MD-1720
(Brodie, C.J.)
(Marutollo, M.J.)

------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Over the course of this long-running multidistrict litigation, the Court has repeatedly

endeavored to proactively protect class members from deception. *See, e.g., In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d 365 (E.D.N.Y. 2023) (addressing

a false website that sought to mirror the official Court-approved website); Text Order, Dkt. No.

6147 ("It is clear to the Court that the overwhelming majority of the members of the merchant

class need protection from overreaching claims filing services, and [the Court] intend[s] to provide

that protection proactively. Preventing confusion and deception before they can happen is far

preferable to taking remedial measures after they happen.").

On February 14, 2025, counsel for the Fed. R. Civ. P. 23(b)(3) Class ("Class Counsel")

alerted the Court to "an issue that appears to be a serious attempt to file fraudulent claims" in this

action. Dkt. No. 9561 at 1.[1] Specifically, on February 4, and 5, 2025, Class Counsel alleged that

an entity named "JAM3STRO" had submitted purported proofs of authority related to 2,184

accounts that raised questions about their legitimacy. *Id.* After a third-party filing company

contacted Class Counsel about having received a claim submission conflict notice on behalf of its

---

[1] Page citations are to the ECF-stamped pages.

long-standing client, Class Counsel contacted class administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq"), which had also recently discovered issues with JAM3STRO and its potentially fraudulent activity. *Id*.

In its February 14, 2025 letter to the Court, Class Counsel requested that all the claims filed by JAM3STRO be withdrawn and that JAM3STRO be required to bear costs associated with remediating its fraudulent claim submissions. *See id*. at 3. To that end, Class Counsel attached a proposed Order to Show Cause directing JAM3STRO to (1) provide a written response to the Court explaining why it should not have all 2,184 purported proofs of authority that JAM3STRO had submitted to Epiq be withdrawn; and (2) pay any expenses incurred due to the fraudulent submissions. *See* Dkt. No. 9561-2.

The Court so-ordered Class Counsel's proposed Order to Show Cause on February 14, 2025. February 14, 2025 Text Order. Class Counsel filed a letter the same day indicating that it served a copy of the Court's February 14, 2025 Order and a filed-stamped copy of Dkt. No. 9561 on JAM3STRO via email. Dkt. No. 9562. To date, JAM3STRO has failed to file any response to the Order to Show Cause or otherwise comply with it. Following JAM3STRO's failure to respond, Class Counsel filed an additional letter and a proposed order regarding JAM3STRO on February 24, 2025. *See* Dkt. No. 9566.

For the reasons set forth below, this Court *sua sponte* respectfully recommends that Chief Judge Brodie grant Class Counsel's letter-motion at Dkt. No. 9566 and order Epiq to withdraw (1) JAM3STRO's 2,184 fraudulent proofs of authority; and (2) assess against JAM3STRO the costs of remediating the fraudulent submissions made to Epiq. *Id*.

## I. Relevant Factual and Procedural Background

This multidistrict litigation arises out of the claims of a putative class of over twelve million nationwide merchants who allege that Visa, MasterCard, and numerous banks that serve as payment-card issuers for those networks had adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction. *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d at 368. After nearly fifteen years of litigation, this Court approved a class settlement in this antitrust action of $5.6 billion. *See Fikes Wholesale, Inc.*, 62 F.4th at 712.

As noted above, throughout this long-running litigation, the Court has sought to proactively protect class members from deception. Most recently, and as referenced above, on February 14, 2025, Class Counsel alerted the Court to "an issue that appears to be a serious attempt to file fraudulent claims in this Action." Dkt. No. 9561 at 1. Class Counsel alleged that on February 4, and 5, 2025, an entity named "JAM3STRO" had submitted proofs of authority related to 2,184 accounts that, as explained below, raised significant questions about the proofs' legitimacy. *Id.* After a third-party filing company contacted Class Counsel about having received a claim submission conflict notice on behalf of its long-standing client, Class Counsel contacted class administrator Epiq, which had also recently discovered issues with JAM3STRO and its potentially fraudulent activity. *Id*.

Class Counsel stated that JAM3STRO's proofs of authority for the 2,184 accounts included those for "well-known major corporate entities to individuals[,]" which seemed unusual in light of the last-minute submissions on February 4, and 5, 2025, near the Court's February 4, 2025

deadline. Dkt. No. 9561 at 1. Class Counsel also stated that JAM3STRO contemporaneously sent

Epiq a letter, *see* Dkt. No. 9561-1, as well as lists of merchants it claimed to represent. *Id.* The

letter submitted to Epiq, entitled "MULTI-BUSINESS NOTICE TO COURT REGARDING

CLAIMS ADMINISTRATION & FUND MANAGEMENT[,]" claimed that an individual

allegedly named James Tro had been "legally authorized (2023–2025) through proper channels

and authority to act on behalf of the class action." *Id.* (capitalization in original). The letter also

provides for a 30% fee charged by JAM3STRO and lists the following terms regarding "Duration

& Revocation":

> []This authorization was already obtained and remains effective within the court order authorization covering 2023–2025 issued through proper legal channels.
>
> []Due to the longevity of this claim, any business that changes its administrator during the claims period due to conflict will have its claim voided under my administration and will be removed from my administration.
>
> []Any business that is exempt from this class action may be listed for informational purposes, pending further inquiry, or as a result of an administrative oversight.
>
> []If a business loses or disputes its service contract with James Tro, a new contract will be sent via certified mail, and any funds collected under the claim will be held at an additional 10% per month until such contract is executed by an authorized officer of the business.

*Id.* at 1-2.

JAM3STRO's letter also referred to "Authorized Companies" and listed names of alleged

class members that had purported retained it for claims-filing services, including large and well-

established merchants like Ritz-Carlton and Time Warner Cable LLC, and names similar to those

of established merchants, like "Six Flags Nursery Supply, LLC and Adobe Settlement Group

LLC[.]" *Id.* at 2.

Class Counsel also reportedly analyzed correspondence regarding conflicted claim filings between class members and entities ostensibly represented by JAM3STRO, and when Class Counsel confronted JAM3STRO with that and other evidence of its malfeasance, JAM3STRO withdrew its conflicting claims submissions immediately and without protest. *Id*. Class Counsel stated that it and Epiq consider this behavior suspicious and otherwise a "red flag." *Id*.

After obtaining JAM3STRO's letter and lists from Epiq on February 12, 2025, Class Counsel contacted JAM3STRO to discuss issues raised by JAM3STRO's materials. *Id*. Class Counsel received a response from the email account associated with JAM3STRO on February 13, 2025 after JAM3STRO agreed to participate in a conference call, to wit:

> To clarify, I previously sent correspondence stating that any written or verbal agreements regarding the handling of claims may have been submitted in error or are no longer in effect. At this time, no claims have been submitted, and the authorization status remains under review. Unfortunately, there is no mechanism to remove entities when agreements expire or errors occur.
>
> Furthermore, I have provided notice to clients regarding my relinquishment of claims in cases of conflict and requested the Class Administrator to remove merchants from the exclusion and conflict lists, as I lack the option to do so. My priority is to ensure compliance while facilitating a resolution that serves all parties involved. I had already notified the Class Administrator to remove conflicted clients before the system-generated conflict letters were issued. I followed the same process for exclusions. Additionally, conflicts may arise when an assignor inadvertently assigns the same interest multiple times.
>
> While I reserve the right to dispute any conflicted claim, my primary goal is to ensure an efficient resolution of this class action, as time and resources have already been expended.

*Id*. at 2-3. According to Class Counsel, nobody subsequently joined the scheduled conference call on behalf of JAM3STRO, despite Class Counsel and representatives from Epiq waiting on the call for twenty minutes and following up with JAM3STRO via email. *Id.* at 3.

Class Counsel stated that, in light of the above, as well as the fact that much of the documentation submitted by JAM3STRO "does not meet the clear requirements that Epiq has provided regarding proofs of authority[,]" including that contracts be executed, there is "a significant possibility that a fraud is being attempted." *Id.* at 3. Thus, Class Counsel requested that all the claims filed by JAM3STRO be withdrawn and JAM3STRO be required to bear costs associated with remediating its fraudulent claim submissions. *See Id.* at 3. To that end, Class Counsel attached a proposed Order to Show Cause directing JAM3STRO to provide a written response to the Court explaining why it should not have all 2,184 purported proofs of authority it has submitted to Epiq withdrawn and be directed to pay the expenses incurred because of the fraudulent submissions. *See* Dkt. No. 9561-2.

On February 14, 2025, the Court so-ordered Class Counsel's proposed Order to Show Cause, and directed Class Counsel to send a copy of the Court's Order and Class Counsel's submission to JAM3STRO "[i]n the manner most likely to constitute timely and effective notice[,]" and to file proof the same by February 14, 2025. February 14, 2025 Text Order. Class Counsel filed a letter the same day, stating that it had served JAM3STRO by email. *See* Dkt. No. 9562. On February 20, 2025, Class Counsel emailed JAM3STRO at the email address it had previously responded from, offering to courtesy file JAM3STRO's response to the Order to Show Cause, as it did not appear to have access to ECF. Dkt. No. 9566 at 1. Class Counsel received no response. *Id.*

Following the Court's issuance of an Order to Show Cause on February 14, 2025 and JAM3STRO's failure to respond by the February 21, 2025 deadline, Class Counsel filed a proposed order regarding JAM3STRO on February 24, 2025. *See* Dkt. No. 9566. In this proposed order, Class Counsel included the following language: "[b]ased on Based on JAM3STRO's failure

to respond as well as the information provided by Class Counsel in [Dkt. No. 9561], the Court

Orders: 1. Epiq shall withdraw all 2,184 purported proofs of authority JAM3STRO has submitted.

2. JAM3STRO shall pay the expenses related to disentangling fraudulent submissions made to

Epiq." Dkt. No. 9566-1 at 2.

On February 25, 2025 the Court directed Class Counsel to file a letter by February 28, 2025

indicating "[w]hether it believes legitimate merchants or claims may have formed any part of

JAM3STRO's 2,184 proofs of authority[,]" and, if necessary, to "[p]ropose measures the Court

could take to ensure such [legitimate] merchants are not unfairly prejudiced by JAM3STRO's

conduct or any order of the Court prohibiting further involvement of JAM3STRO in this action."

February 25, 2025 Text Order.

On February 28, 2025, Class Counsel responded by letter, indicating it "[c]onferred with

Epiq and has personally reviewed the entire list of the 2,184 purported proofs of authority[,]" and

could assert the following:

> []The merchants on the list provided by JAM3STRO appear to be
> actual merchants. However, it does not appear that these merchants
> have entered into any agreements with JAM3STRO for claims-filing
> services.
>
> []Epiq has taken the information provided by JAM3STRO and
> compared it to information in its possession. It has created a
> spreadsheet that includes fields detailing the status of each of the
> 2,184 merchants provided by JAM3STRO. Those statuses are
> "Approved," "Conflict," "Excluded Party" and "Deficient."
>
> []There are 244 merchants listed on the JAM3STRO spreadsheet
> that are listed as "Conflict." According to Epiq, this means that
> another entity (or the merchant itself) has filed information with
> Epiq, that matches the Tax Identification Number submitted by
> JAM3STRO. As to those 244 merchants, Epiq can "clear" the
> conflict by removing JAM3STRO's purported proof of authority1
> and those claims can be processed as normal.

[]There are 43 merchants on the list that are designated as "Excluded Party." As to these merchants, no action is necessary. Epiq has a process in place that captures any TINs that are submitted that match any excluded party. [2] A form letter is drafted and sent to anyone that submits the TIN of an excluded entity with directions regarding how to respond, if desired.

[]There are 1,896 merchants on the list that are marked as "Deficient."[3] This means that no signed contract or other documentation has been submitted in relation to these merchants. Following the original submission by JAM3STRO of the 2,184 merchants in a list, because of the immediate concerns regarding these submissions, Epiq placed these on hold.

[]On February 25, 26, and 27, 2025, Class Counsel wrote again to the email address associated with JAM3STRO seeking to have a call to discuss the Court's February 25, 2025 Order and to attempt to understand whether JAM3STRO possessed any proof that any of the 2,184 merchants had contracted with JAM3STRO for claims-filing services. Class Counsel also attempted to call JAM3STRO at a number provided, but did not get an answer. As of February 28, no response has been received.

Dkt. No. 9568 at 1-3. Class Counsel also reportedly attempted to reach out to JAM3STRO on social media and through a purported counsel for JAM3STRO, who had passed away a month before he supposedly wrote an email. *Id*. at 3; *see also* Dkt. No. 9571 at 3. Class Counsel believes JAM3STRO may also have been fraudulently employing the deceased attorney's name. Dkt. No. 9658 at 2.

In consideration of Class Counsel's efforts as noted above and in Dkt. No. 9568, Class Counsel submits that no prejudice is likely to occur if Epiq withdraws all 2,184 proofs of authority

---

[2] "Excluded parties include those that opted out of the litigation either to pursue their own actions, are defendants, or otherwise opted out. Epiq processed all opt outs and keeps records regarding these entities." Dkt. No. 9568 at 2 n.2.

[3] "Adding together the Deficient, Excluded Party, and Conflicted merchants results in 2,183 merchants. The additional merchant is JAM3STRO itself that submitted proof of authority documentation and submitted a research request through the merchant portal. That single submission is marked 'Approved,' which means that the documentation provided has been approved, not that a claim has been approved." *Id*. at 2 n.3.

submitted by JAM3STRO. Dkt. No. 9568. With regard to the claims flagged as "Conflicted," such claims are likely fraudulent and their withdrawal will allow the legitimate claims filed on behalf of the same merchants to proceed. *Id*. With regard to claims marked "Excluded Party," such claims typically include entities that have opted out, are defendants, or are otherwise ineligible to file a claim. *Id.* Class Counsel further posits that merchants with "Deficient" claims filed by JAM3STRO were submitted without authorization and that JAM3STRO likely "found [Tax Identification Numbers] online through any number of sources, and falsely sought to claim it had authority to file on these merchants' behalf." *Id*. at 3.

## II.      Legal Standards

As part of its obligation to protect class members, the Court has broad authority to regulate the behavior of non-parties in their dealings with the class. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014) ("The Court's authority is clear, and its obligation to protect class members is strong."). This authority includes maintaining "ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." *Id.* (citation omitted). The Court is authorized to "take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members." *Id.*; *see also Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power). The Court's "authority in this context may have either a procedural basis, under

Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at \*1 (citation omitted).

The All Writs Act, 28 U.S.C. §1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary "to protect the settlement from threats by both parties and non-parties." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2006 WL 1025588, at \*4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985)). The curative orders may extend to anyone "in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (explaining that sanctions against a nonparty would be available under the Court's "inherent power" "for abuse of the judicial process."). Courts can "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at \*5.

Rule 23(d) of the Federal Rules of Civil Procedure also gives courts the authority to regulate conduct and communications by parties and their counsel with class members. As the Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Erhardt*, 629 F.2d at 846.

**III.** **Discussion**

The Court respectfully recommends that Epiq withdraw all 2,184 purported proofs of authority submitted by JAM3STRO and that expenses regarding disentangling JAM3STRO's fraudulent submissions be assessed against JAM3STRO. This Court agrees with Class Counsel that "there is a significant possibility that a fraud is being attempted [by JAM3STRO]." Dkt. No. 9561 at 3.

As Class Counsel has noted previously to the Court, "a federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Tr. v. Sabino*, 230 F.3d 1357 (6th Cir. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991) and *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1995)); *see also Sundby v. Marquee Funding Grp., Inc.*, No. 19-CV-00390 (GPC) (AHG), 2020 WL 5709445, at *5 (S.D. Cal. Sept. 24, 2020) (citations omitted) (The Court has "the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses."). This power to mitigate bad faith and fraudulent conduct that impedes the adjudication of class action litigation and the claims administration process also emanates from a Court's authority under Fed. R. Civ. P. 23 and the All Writs Act. *See Visa Check*, 2006 WL 1025588, at *5; Fed. R. Civ. P. 23(d).

Indeed, conduct that abuses the judicial process is sanctionable, even when committed by a non-party, such as JAM3STRO. *See Amerisource Corp.* 2010 WL 2730748, at *5 (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power); *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended). Courts have held that there must be a specific

finding of bad faith before a court can exercise its inherent power to impose sanctions to a non-party for violation of a court order. *See Amerisource Corp.*, 2010 WL 2730748, at \*5.

Here, there is sufficient evidence of JAM3STRO's bad faith to assess sanctions against it pursuant to the Court's inherent power, Federal Rule of Civil Procedure 23(d), and the All Writs Act. JAM3STRO attempted to fraudulently enroll thousands of merchants for claims-filing services without their knowledge or consent. Based on Class Counsel's investigation, there is no indication that any of these merchants even signed up with JAM3STRO in the first instance. Dkt. No. 9568 at 3. When confronted by Class Counsel and Epiq, JAM3STRO behaved suspiciously, as it withdrew its conflicted proofs of authority immediately and without protest. Dkt. No. 9561 at 2. Next, after agreeing to communicating with Class Counsel and Epiq regarding its proofs of authority, JAM3STRO failed to attend a conference call with Class Counsel and Epiq and has since ceased communicating with them. *See* Dkt. Nos. 9561 at 2, 9566 at 1. Despite Class Counsel's having called JAM3STRO and emailed the same address from which it had previously received correspondence from JAM3STRO, JAM3STRO has failed to respond since at least February 28, 2025. *See* Dkt. No. 9568 at 3.

Significantly, JAM3STRO failed to respond to the Court's February 14, 2025 Order to Show Cause, directing that it to provide a written response to the Court why it should not "[h]ave all 2,184 purported proofs of authority it has submitted to Epiq withdrawn and be required to pay the expenses related to disentangling fraudulent submissions made to Epiq." February 14, 2025 Text Order.

In consideration of the above, this Court respectfully recommends that the Court direct Epiq to withdraw JAM3STRO's 2,184 fraudulent proofs of authority and assessing against JAM3STRO the costs of remediating such fraudulent submissions. Dkt. No. 9566-1.

Additionally, this Court notes that Class Counsel has not explicitly requested a referral to the Department of Justice for a civil or criminal investigation regarding the underlying alleged deceptive practices JAM3STRO. *See Benthos Master Fund, Ltd. v. Etra*, No. 20-CV-3384 (VEC), 2022 WL 1555543, at *3 (S.D.N.Y. May 16, 2022) ("Because [Petitioner] did not request a referral to the United States Attorney's [] for investigation of the alleged underlying fraud, [] the Court does not consider [the magistrate judge's] suggestion that this matter be referred to the U.S. Attorney's Office."). Class Counsel, however, may wish to file a complaint with the Department of Justice or the relevant United States Attorney's Office. *See Amaker v. Kelley*, 2009 WL 385413, at *11 n.15 (N.D.N.Y. Feb. 9, 2009) (decision not to refer matter "does not preclude the plaintiff from filing a complaint" with the appropriate authority). The Court reserves its right to do the same.

## IV.    Conclusion

For the reasons set forth above, this Court *sua sponte* respectfully recommends that the Court grant Class Counsel's letter-motion at Dkt. No. 9566, ordering Epiq to withdraw JAM3STRO's 2,184 fraudulent proofs of authority, and assessing against JAM3STRO the costs of remediating its fraudulent submissions to Epiq.

A copy of this Report and Recommendation is being electronically served on counsel. Class Counsel is directed to serve a copy of this Order on JAM3STRO by March 10, 2025 and file proof of service by the same date.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Chief Judge Brodie. Failure to file objections

within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York           **SO ORDERED.**
              March 7, 2025

                                      */s/ Joseph A. Marutollo*
                                  JOSEPH A. MARUTOLLO
                                  United States Magistrate Judge