UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

This document refers to:

*Block, Inc. v. Visa Inc.*, No. 23-CV-5377;
*Intuit, Inc. v. Visa Inc.*, No. 21-CV-1175.

---------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

05-MD-1720
(Brodie, C.J.)
(Marutollo, J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Presently before the Court is a motion for a preliminary injunction (the "Motion") brought

by defendants Visa, Inc., Visa U.S.A., Inc., Visa International Service Association ("Visa"), and

Mastercard Incorporated and Mastercard International Incorporated ("Mastercard") (collectively,

"Defendants"), compelling dismissal of certain claims brought by Plaintiffs Block, Inc., f/k/a

Square, Inc. ("Square"),[1] and Intuit Inc. and Intuit Payment Solutions, LLC ("Intuit") (collectively,

"Plaintiffs"). *See* Dkt. No. 9511.[2]

Specifically, Defendants seek to enjoin claims brought by Plaintiffs based on transactions

in which Plaintiffs served as a payment facilitators ("PayFacs") for Fed. R. Civ. P. 23(b)(3) class

member merchants. *See* Dkt. 9512 at 5.[3] Defendants contend that these claims were released by

---

[1] "'Square' refers to Block, Inc., f/k/a Square, Inc., the plaintiff in Case Number 23-cv-05377 (E.D.N.Y.)." *In re Payment Card Interchange fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB) (JAM), Dkt. No. 9512 at 5 n.5. On December 1, 2021, Square, Inc. announced that it had changed its name to Block, Inc., to "differentiate[] the Square brand, which was built for the Seller business, from the corporate entit[ies,]" one of which is Square. *Square, Inc. Changes Name to Block* (Dec. 1, 2021), https://squareup.com/us/en/press/square-changes-name-to-block.

[2] Citations to the docket are to the multi-district litigation docket, *In re Payment Card Interchange fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB) (JAM), unless otherwise indicated.

[3] Page citations are to the ECF-stamped pages.

the Fed. R. Civ. P. 23(b)(3) class settlement agreement (Dkt. 7257-2), as incorporated into the Court's Fed. R. Civ. P. 23(b)(3) Class Settlement Order and Final Judgment (Dkt. 7832) ("Settlement Agreement"). *See* Dkt. No. 9511.

Defendants allege that because the Settlement Agreement expressly released the claims of all Fed. R. Civ. P. 23(b)(3) class members and their agents, and because Plaintiffs, as PayFacs, served as agents of their merchant customers ("Sub-merchants"), the Settlement Agreement operated to release these claims and therefore foreclosed Plaintiffs' recovery as PayFacs. *See* Dkt. 9512 at 5. Defendants argue that because Plaintiffs have no path to recovery on their claims as PayFacs, the Court should enjoin Plaintiffs from asserting such claims and compel dismissal of the same. *See* Dkt. Nos. 9511, 9512 at 6. Further, Defendants request the Court extend the current stay of discovery regarding Plaintiffs' PayFac claims pending resolution of this Motion. Dkt. No. 9511.

On December 30, 2024, the Honorable Margo K. Brodie, Chief United States District Judge, referred this Motion to the undersigned for a Report and Recommendation. *See* December 30, 2024 Text Order. For the reasons set forth below, this Court respectfully recommends that the Motion be denied.

## I.  Background

### A.  The Multi-District Litigation

In October of 2005, several complaints asserting similar antitrust claims against Visa, Mastercard, and various issuing banks were consolidated for pretrial purposes and transferred to the Eastern District of New York, where they were joined by other similar cases ("Visa/Mastercard MDL"). *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008). The consolidated cases included both class

actions and individual actions. *Id*. Plaintiffs alleged that Visa and MasterCard adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction. *Id.*

In April of 2006, plaintiffs in the putative class actions ("Class Plaintiffs") filed a consolidated amended class complaint that defined two classes: one seeking damages and the other seeking equitable relief. *Id*. at *1–*2.

In November of 2016, the Court appointed counsel to two putative classes under Rule 23(b)(2) (the "Rule 23(b)(2) Class") and Rule 23(b)(3) (the "Rule 23(b)(3) Class"). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2016 WL 8138988, at *1 (E.D.N.Y. Nov. 30, 2016). Thereafter, Class Plaintiffs and the Rule 23(b)(3) Class entered into a Settlement Agreement, which the Court granted final approval of on December 16, 2019. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472, at *36 (E.D.N.Y. Dec. 16, 2019); *see, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023) (approving settlement of $5.6 billion).

Pursuant to the terms of the Settlement Agreement, merchants who did not opt out of the Rule 23(b)(3) Class are entitled to ratable shares of the settlement fund "based on the Claimant's Interchange Fees Paid as compared to the total amount of Interchange Fees Paid attributable to all Claimants." Dkt. No. 7257-2 at 264. Numerous entities, however, timely opted out, including Intuit on July 23, 2019. Dkt. No. 9065-8. Intuit later filed its antitrust suit in the Northern District of California on February 19, 2021. *See Intuit Inc. et al. v. Visa Inc. et al.*, 21-cv-1175-MKB (E.D.N.Y. Feb. 19, 2021). Intuit's action was transferred to this Court on March 5, 2021, where it was consolidated with the *In re Payment Card* MDL. Dkt. No. 22.

Square also timely opted out of the Rule 23(b)(3) Class on July 19, 2019.  *See* Dkt. No 9069-16.  Square filed its respective antitrust suit against Visa and Mastercard in this Court on July 14, 2023.  *See Block, Inc. v. Visa Inc. et al.*, 23-cv-5377-MKB (E.D.N.Y. July 14, 2023).

## B.    Relevant Procedural History

On January 31, 2024, Defendants Visa and Mastercard moved to enforce the Settlement Agreement against Intuit and Square, or in the alternative, for summary judgment ("Motion to Enforce"), seeking to dismiss Intuit's and Square's claims for which they served as a PayFacs for their Sub-merchants.  *See* Dkt. Nos. 9056-9057.  In the Motion to Enforce, Defendants argued, in part, that "Intuit's and Square's asserted claims based on transactions in which they served as [PayFacs] are barred by the [] Settlement Agreement release and should be dismissed[]" because Defendants are the mere agents of Sub-merchants and were not injured by the Defendants' practices.  Dkt. No. 9057 at 5, 7.

Intuit and Square opposed the Motion to Enforce.  *See* Dkt. Nos. 9061, 9066.  Intuit argued, among other things, it was the only direct purchaser of card-acceptance services from Defendants.  *See* Dkt. No. 9061 at 18.  Square, argued, in part, that the Settlement Agreement's plain language was broad enough to encompass more than just merchants, instead including all persons, businesses, and entities that "accepted" payment cards, which included PayFacs.  *See* Dkt. No. 9066 at 17.  Intuit also cross-moved for partial summary judgment on the issue that it had antitrust standing to bring claims as a direct purchaser of card-acceptance services from Defendants.  *See* Dkt. No. 9061 at 8.

In addition, the plaintiffs in two associated cases, *Lanning v. Visa, Inc.*, No. 21-CV-2360 and *Camp Grounds Coffee, LLC v. Visa, Inc.*, No. 21-CV-3401 (collectively, the "*Lanning* Plaintiffs*"), which brought antitrust claims against defendants on behalf of Intuit's and Square's

Sub-merchant sellers, also cross-moved for partial summary judgment on the issue that they were not members of the Rule 23(b)(3) Class. *See* Dkt. No. 9070.

On May 28, 2024, the Court granted Defendants' Motion to Enforce, finding that Intuit and Square's Sub-merchants "accepted" payment cards and are therefore members of the Rule 23(b)(3) Class. *See* Dkt. Nos. 9308, 9314 ("May 28, 2024 Order"); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024). In its May 28, 2024 Order, the Court relied on the language of the Settlement Agreement, which defines members of the Rule 23(b)(3) Class as "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [of January 24, 2010]." May 28, 2024 Order at 5; Dkt. No. 7257-2 ¶4. The Court noted the following:

> The parties' only dispute is as to the meaning of the term "accepted," and the term is not defined in the Settlement Agreement, nor can its meaning be ascertained by looking within the "four corners" of the agreement. *See Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 395 (2d Cir. 2023) ("[I]n assessing whether a contract is ambiguous, a court looks within only the four corners of the document."). The Court finds that the term "accepted" is ambiguous because [the merchants ("Sellers")] Square, and Intuit can all credibly claim to have "accepted" payment cards.[] The term is therefore susceptible to more than one reasonable interpretation. *Id.* ("Ambiguity exists 'where [a contract's] terms are subject to more than one reasonable interpretation.'" (alteration in original) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 25 N.Y.3d 675, 680 (2015)))[.]

May 28, 2024 Order at 18.

In light of this ambiguity, the Court considered extrinsic evidence to determine the intent of the parties. *Id.* at 19. The Court continued, noting:

> The Second Circuit has also cited with approval this Court's determination that the meaning of the term "accepted" is "guided by federal antitrust standards." *Fikes*, 62 F.4th at 716 (citation

5

> omitted).  The parties do not appear to dispute this understanding.
> Accordingly, in ascertaining the parties' intent and the meaning of
> the term "accepted," the Court is guided by the Supreme Court's
> decision in *Illinois Brick* and its progeny, which make clear that only
> one entity in a chain of transactions can have antitrust standing —
> the direct purchaser.[]  Thus, the Court is guided by *Illinois Brick* to
> conclude that only one entity in the payment chain can be deemed
> to have "accepted" a payment card.

*Id*. at 20-21.

The Court then analyzed the language of Square's and Intuit's merchant agreements, which buttressed the notion that the Sub-merchants "accept" payment cards.  *Id.* at 21.  Specifically, Square's Payment Terms state that "Square is a payment facilitator that allows you to accept Cards from customers for the payment for goods and services[,]" and Intuit's Merchant Agreement states that "You [Sub-merchant] agree to accept all valid credit and debit card types and brands properly presented by a payor or cardholder for payment for goods or services without discrimination."[].  *Id.* at 21-22.  The Court further concluded that "the way real-world transactions are conducted supports the conclusion that Sellers 'accept' payment cards."  *Id.* at 22.

The Court also analyzed Visa's rules, which "classify an entity as either 'a Payment Facilitator' or 'a Merchant[,]'" and state that "[a]n entity that acts as both a Payment Facilitator and a Merchant must comply with the Payment Facilitator rules when acting as a Payment Facilitator and with Merchant rules when acting as a Merchant."  *Id.* at 23-24.  In light of this and other of Visa's rules regarding merchants, the Court stated that "the evidence suggests that Sellers accept payment cards because (1) Sellers, not Square, represent themselves as selling the goods or services to cardholders; (2) Sellers use their names to identify themselves to cardholders; and (3) Sellers provide recourse to cardholders in the event of a dispute."  *Id.* at 24.

The Court noted that Mastercard's rules "provide that Sellers (*i.e.*, Sub-merchants) 'accept' payment cards pursuant to their agreements with Square and Intuit (*i.e.*, the 'Payment

Facilitators')[,]" and that "*Lanning* Plaintiffs admit in their declarations that they 'accept' payment cards." *Id.* at 25. For these reasons, and among others, the Court concluded that "the Sellers 'accepted' payment cards within the meaning intended by the parties at the time they reached the Settlement Agreement." *Id.*

Additionally, the Court denied Intuit's cross-motion for partial summary judgment, holding that factual questions precluded a finding that it was the direct purchaser of card-acceptance services from Defendants under *Illinois Brick* and its progeny. *See id.* at 28-29. In this regard, the Court stated that triable questions of fact remained regarding "the identity of the direct purchaser of the card-acceptance services[,]" where Intuit's service agreements define agency relationships with its Sub-merchants. *Id.* at 29.

Importantly, the Court added that its decision regarding which entities "accepted" card-payment services per the Settlement Agreement and Sub-merchants' Rule 23(b)(3) class membership was "*not equivalent to the conclusion that no genuine dispute of fact remains* as to the identity of the direct purchaser of card-acceptance services under *Illinois Brick*." *Id.* at 27 n.27 (emphasis added).

On June 11, 2024, Intuit and Square requested a briefing schedule for a motion for clarification of the May 28, 2024 Order. *See* Dkt. Nos. 9324, 9325. Specifically, Intuit and Square requested an order clarifying that the May 28, 2024 Order did not dismiss their direct purchaser PayFac claims. Dkt. No. 9325-1 at 2. Intuit and Square stated that this clarification was necessary because Defendants had taken the position that the May 28, 2024 Order dismissed *all* of Intuit and Square's antitrust claims, including their PayFac claims. *Id.*

On June 11, 2024, the Court entered an Order denying Intuit and Square's request for a motion for clarification of the May 28, 2024 Order, stating:

> [] The Court denied the request to approve a briefing schedule as set forth in 9324 Intuit and Block Plaintiffs' letter. The Court's Memorandum and Order dated May 28, 2024 [9308], speaks for itself. *The Court did not dismiss any claims or any portion of claims brought by Intuit or Block, including any claims for damages based on transactions for which Intuit or Block served as a payment facilitator.*

June 11, 2024 Text Order (emphasis added).

On July 30, 2024, Square and Intuit filed a letter informing the Court that Defendants had served them with a motion for an injunction compelling dismissal of released claims and for an interim stay. *See* Dkt. No. 9370. Square and Intuit attached the motion for an injunction to their letter and asked the Court to deny the motion outright as an untimely attempt to relitigate the May 28, 2024 Order, or to set a pre-motion conference to determine whether such a motion is appropriate. *Id.*

On July 31, 2024, the Court entered an order directing Defendants to file a pre-motion letter setting forth the basis for the anticipated motion for injunction. *See* July 31, 2024 Text Order.

On August 2, 2024, Defendants filed a pre-motion letter in accordance with the Court's July 31, 2024 Order. *See* Dkt. No. 9374. Intuit and Square filed their joint pre-motion opposition letter on August 7, 2024. Dkt. No. 9382. On October 11, 2024, Intuit filed a letter motion for a conference regarding a discovery dispute with Defendants, alleging Defendants' lack of cooperation and further insistence that Intuit's PayFac claims had been released by the May 28, 2024 Order. *See* Dkt. No. 9459. Plaintiffs jointly responded by letter the same day. *See* Dkt. No. 9460.

On November 12, 2024, the undersigned held a pre-motion conference regarding Defendants' proposed Motion, and to hear the parties on the alleged discovery issue. November 12, 2024 Text Order.

At the November 12, 2024 pre-motion conference, Defendants argued that the May 28,

2024 Order "held that the merchants serviced by Intuit as a payment facilitator are the card acceptors and therefore, [the Sub-merchants are] the class members in the Rule 23(b)(3) settlement." Dkt. No. 9543 (November 12, 2024 Hearing Transcript) at 8:20-23. Moreover, Defendants argued that Plaintiffs serviced these Sub-merchants, and that "all class members agreed to release damages claims based on the card transactions they accepted on behalf of themselves and any of their agents." *Id.* at 9:4-6. Defendants stated that publicly available contracts between Plaintiffs and the merchants indicate that "Intuit is the agent and Square is the agent of the class members that they service as payment facilitators." *Id*. at 9:13-15. Because the word "agent" appears in paragraph 29 of the Settlement Agreement, Defendants argue that the release extends from the Sub-merchants to their agents, which in this case, Defendants allege are Plaintiffs. *Id*. at 9:21-24. Thus, Defendants contend that Plaintiffs have no claims as PayFacs not already released by the Settlement Agreement. *Id.* at 9:12-25. Defendants also requested the Court set a discovery schedule or otherwise stay discovery on Plaintiffs' PayFac claims pending resolution of the Motion. *Id*. at 11:11-21, 12:9-17.

Plaintiffs, in contrast, argued that Intuit and Square, as PayFacs, are, in fact, merchants because they have "merchant account[s] with an acquiring bank on every transaction that [they] facilitate[]," and directly pay interchange fees to the acquiring banks. *Id*. at 14:8-12. On that basis, Plaintiffs argue, they have brought direct purchaser antitrust claims in this Court. *Id*. at 14:17-18.

Plaintiffs further contend that factual issues preclude granting dismissal of Plaintiffs' direct purchaser claims, as acknowledged in the May 28, 2024 Order. *Id*. at 16:11-23; May 28, 2024 Order at 27 n.27. Plaintiffs added that the Motion "relies on the exact same facts as what was put forward before, the exact same arguments[]" as the Motion to Enforce. *Id.* at 17:10-12. Thus, according to Plaintiffs, the Motion is "[n]ot only a motion for reconsideration on the exact relief

that [Defendants] sought before, but . . . [as Local Civil Rule 6.3] has said, you've got to do it within 14 days, so [it is] untimely." *Id.* at 17:22-18:2.

Thereafter, the Court granted leave for Defendants to move for the injunction, set a briefing schedule, and stayed discovery on Plaintiffs' PayFac claims. November 12, 2024 Text Order. The Court also set a June 23, 2025 deadline for discovery related to Intuit and Square's non-payment facilitator claims. *See id.*

### C. The Motion

On December 20, 2025, the fully-briefed Motion was filed pursuant to the Court's November 12, 2024 Text Order. *See* Dkt. Nos. 9511-9514, 9516-9517.

As noted above, Defendants now seek to enjoin Plaintiffs from asserting claims allegedly released via the Settlement Agreement, based on transactions in which they acted as payment-facilitators of Rule 23(b)(3) Class members, and to compel dismissal of such claims. Dkt. No. 9511. Defendants specify that the Motion is not seeking dismissal of claims brought by Defendants in their capacities as merchants, "*i.e.*, those based on their acceptance of payment cards for products and services that [Defendants] themselves sell to consumers[.]" Dkt. No. 9512 at 7.

Defendants also deny that their Motion is an improper motion for reconsideration, alleging it does not ask the Court to reconsider any holding in the May 28, 2024 Order. Instead, Defendants argue the Motion is a "logical and lawful extension" of the May 28, 2024 Order, as the Motion raises novel issues and seeks different and additional relief than what Defendants previously requested. *See* Dkt. No. 9512 at 6 n.2.

Defendants further contend that dismissal of Plaintiffs' PayFac claims is appropriate because these claims were released as part of the Settlement Agreement vis-á-vis Plaintiffs' Sub-merchants, who released claims on behalf of their agents. *See id.* at 5. Because Square and Intuit

were agents of the Sub-merchants who utilized their PayFac services, Defendants state, the Settlement Agreement released Plaintiffs' PayFac claims, and Plaintiffs' pursuit of such claims renders the request for an injunction proper. *Id.* at 5-6. Defendants further argue that the Court has inherent power to enforce its orders, including the Settlement Agreement, and the May 28, 2024 Order, which granted Defendants' Motion to Enforce. *See id.* at 13; May 28, 2024 Order. Defendants further posit that the All Writs Act also provides the Court with the authority to issue the injunctive relief they seek. *See* Dkt. No. 9512. Defendants do not note the legal standard applicable to motions for a preliminary injunction.

Plaintiffs Intuit and Square oppose the Motion on multiple grounds. *See* Dkt. No. 9514. First, Plaintiffs argue that Defendants' request is procedurally improper, because Defendants seek relief identical to that sought in their Motion to Enforce, namely, "dismissal of the released claims of Square and Intuit based on transactions in which they acted as payment-facilitator agents." *See id.* at 20 (quoting Dkt. No. 9512 at 1). As evidence of the purported similarity of this Motion and the Motion to Enforce, Plaintiffs attach a redline version of certain sections of the two filings as an addendum to their opposition memorandum of law. Dkt. No. 9514 at 39-46. Further, Plaintiffs argue the relief Defendants seek—an injunction compelling Plaintiffs to voluntarily dismiss their PayFac claims—is procedurally improper and point to Defendants' lack of authority indicating it is permissible or warranted here. *See id* at 23. Finally, Plaintiffs argue that Defendants' anticipated motion is effectively an impermissible successive motion for summary judgment. *Id.* at 22.

## II.    Discussion

### A.    The Procedural Propriety of the Motion

As described below, the undersigned finds that the Motion is, in sum and substance, one for reconsideration of the May 28, 2024 Order.

Motions for reconsideration are governed by Local Civil Rule 6.3, which states, that "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Local Civil Rule of the Southern and Eastern Districts of New York 6.3. Such a movant must show, in a memorandum of law, "the matters or controlling decisions which the moving party believes the court has overlooked." *Id.* Motions for reconsideration of interlocutory orders are also interpreted under Federal Rule of Civil Procedure 54(b), which states that an interlocutory "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). Motions for reconsideration under Rule 54(b) in the Second Circuit are constrained by the law of the case doctrine, which binds litigants to prior holdings of the Court. *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964)). Moreover, prior holdings are not subject to revision without "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)).

Courts often treat successive motions seeking the same relief as *de facto* motions for reconsideration. *See Meehan v. Brookliv LLC*, No. 21-cv-2573 (BMC), 2022 WL 523545, at *1 (E.D.N.Y. Feb. 22, 2022) (collecting cases); *see also Al-Bukhari v. Dep't of Corr.*, No. 3:16-cv-53 (SRU), 2019 WL 2288859, at *1 n.1 (D. Conn. May 29, 2019) ("Although the second motion is not captioned [as] a motion for reconsideration, it seeks the same relief as the prior motion. The Court considers the substance of the motion, not the title"); *Edwards v. U.S. Dep't of Agric.*, No.

04-CV-6051 (MWP), 2007 WL 700898, at \*1 (W.D.N.Y. Mar. 1, 2007) ("This second motion seeks substantially the same relief that was denied Edwards in the previous motion, and is thus more properly considered a motion for reconsideration"). Courts evaluating motions for reconsideration examine the extent to which the issues have already been raised. *See Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, No. 97-CV-6612 (SJ), 2006 WL 355137, at \*1 (E.D.N.Y. Feb. 15, 2006) ("The standard for . . . reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."). Courts have substantial discretion in analyzing motions for reconsideration. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999).

Here, Plaintiffs argue that Defendants "now seek the same relief on the same grounds the Court previously denied." Dkt. No. 9514 at 20. As noted above, Plaintiffs include as Appendix A to their memorandum of law in opposition to the Motion, a redline document comparing numerous portions of the Motion to Enforce with the present Motion. *Id*. at 39-46.

A cursory review of even the headings of the Motion to Enforce and the current Motion indicates the similarity of the arguments advanced by Defendants:

| Motion to Enforce | Motion |
|---|---|
| "The Claims Advanced by Intuit and Square in their Capacity as Payment Facilitator Agents Have Been Released." | "The Class Settlement Agreement Release Unambiguously Bars the Claims of Intuit and Square Acting as Payment-Facilitator Agents of Class Members." |
| "Intuit's and Square's Merchant Customers Released the Claims of Intuit and Square as the Agents of Those Merchants"<br><br>"Intuit and Square Cannot Rewrite the [Third Amended Complaint] to Sweep Payment Facilitators into the Class Definition by Claiming They Are '"Direct Purchasers.'" | "The Release Applies Because of the Agency Relationship, No Matter Who Is the "Direct Purchaser" Under *Illinois Brick* in Transactions Involving Payment Facilitators." |

Dkt. Nos. 9057 at 2, 9512 at 2.

The redline contained in Appendix A to Plaintiffs' memorandum of law in opposition to the Motion also demonstrates the substantial similarity of arguments made (and authority cited) in the Motion, compared to the Motion to Enforce. Dkt. No. 9514 at 39-46. Moreover, the "Legal Standard" section of Defendants' memorandum of law in support of the Motion seems to imply that the Court's authority to grant Defendants' desired relief emanates largely from its ability to enforce the Settlement Agreement – an avenue Defendants already explored with their Motion to Enforce. *See* Dkt. No. 9512 at 12-13.

While the Court granted Defendants' Motion to Enforce, the Court, as Plaintiffs note, expressly held that it did not rely on the agency relationship between PayFacs and their Sub-merchants in determining that Plaintiffs were not members of the Rule 23(b)(3) Class. *See* Dkt. Nos. 9512 at 6 n.2, 9514 at 21; May 28, 2024 Order at 13 n.17, 14 n.18. Thus, because the May 28, 2024 Order considered, and declined to opine on, Defendants' arguments that Plaintiffs' PayFac claims in the Motion to Enforce had been released via the Settlement Agreement, the Motion is one for reconsideration. Defendants, in effect, seek to treat the May 28, 2024 Order "as the opening of a dialogue in which [Defendants] may . . . advance new theories or adduce new evidence in response to the court's rulings." *See de los Santos v. Fingerson*, No. 97-CV-3972 (MBM), 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1998). This Court therefore agrees with Plaintiffs that the Motion is one for reconsideration.

When construed as a motion for reconsideration, Plaintiffs argue that the Motion should be denied due to its untimeliness. *See* Dkt. No. 9514 at 20. Indeed, as noted above, pursuant to Local Civil Rule 6.3, motions for reconsideration are due within 14 days of the order seeking to be challenged. Local Civil Rule of the Southern and Eastern Districts of New York 6.3.

Defendants received a ruling on their Motion to Enforce on May 28, 2024. *See* May 28,

2024 Order. As noted above, the May 28, 2024 Order clearly states that it did not reach Defendants' arguments that Defendants' PayFac claims had been released by function of agency law and the Settlement Agreement. *See* May 28, 2024 Order at 13 n.17, 14 n.18. Thus, if Defendants felt the May 28, 2024 Order "overlooked" facts or controlling law, a motion for reconsideration was due to the Court on June 11, 2024. *See* Local Civil Rule of the Southern and Eastern Districts of New York 6.3.

Instead, on June 11, 2024, Defendants received clarity on the scope of the May 28, 2024 Order via the Court's Text Order, which expressly indicated that Plaintiffs' PayFac claims had not been dismissed by the May 28, 2024 Order. *See* June 11, 2024 Text Order. Defendants did not seek reconsideration or otherwise challenge the May 28, 2024 Order until they served a motion for an injunction on Plaintiffs on July 29, 2024—48 days after the Court's June 11, 2024 Text Order and 62 days after the May 28, 2024 Order. *See* Dkt. Nos. 9367, 9370. Thus, even in the light most favorable to them, Defendants did not meet Local Civil Rule 6.3's 14-day deadline to file a motion for reconsideration of the May 28, 2024 Order.

Nonetheless, its alleged untimeliness is not necessarily fatal to the Motion. Indeed, courts have substantial discretion to excuse procedural improprieties with regard to motions for reconsideration. *See Lemon v. Hollinger*, No. 17-CV-4725 (RA), 2018 WL 3231665, at *2 (E.D.N.Y. May 14, 2018) (noting Court's discretion, as conferred by Local Civil Rules, to consider motion for reconsideration as submitted despite belated filing and lack of notice of motion). Indeed, a district court typically "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir.), *cert. denied*, 145 S. Ct. 279 (2024) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557

U.S. 167 (2009)).

But even if the Court were to overlook its untimeliness, the Motion still fails. Motions for reconsideration evaluated under Local Civil Rule 6.3 or Federal Rule of Civil Procedure 54(b) face an exacting legal standard and must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); *Color Tile, Inc.*, 322 F.3d at 167.

Defendants have not met this standard. Defendants do not challenge any particular holding in the May 28, 2024 Order. To the contrary, Defendants tout repeatedly that their Motion to Enforce was granted "without qualification." *See* Dkt. Nos. 9512 at 8, 9543 at 8:16-25 ("[Chief Judge Brodie] didn't grant the Motion to Enforce in part and deny it in part. She granted it in full."). Defendants state that "[t]here was [] no ruling on the agency issue in the May 28 Order that Defendants could ask the Court to reconsider[,]" and that thus, the Motion is not one for reconsideration. Dkt. No. 9517 at 7. Defendants even add that they "[a]re not asking the Court to change a prior ruling or contending that the Court 'overlooked' anything," while simultaneously asking "[t]he Court to reach the agency issue that it did not reach before" in the May 28, 2024 Order. *Id*.

At bottom, the Court finds that Defendants are asking it to reconsider the May 28, 2024 Order's lack of reliance on Defendants' agency arguments in the Motion to Enforce. *See* Dkt. Nos. 9512 at 6 n.2, 9214 at 21; May 28, 2024 Order at 13 n.17, 14 n.18. In doing so, Defendants are, in fact, requesting that the undersigned reexamine items that they feel Chief Judge Brodie "overlooked." This Court will not countenance Defendants' attempt to take a "second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012); *see Funk*

*v. Belneftekhim*, No. 14-CV-376 (BMC), 2021 WL 3774196, at *1 (E.D.N.Y. Aug. 25, 2021) ("The present motion is substantively identical. I therefore deem it to be an untimely motion for reconsideration[.]"); *see also S.E.C. v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 668 (S.D.N.Y. 2020) (permitting parties on a motion for reconsideration to "examin[e] a decision and then plug [] the gaps of a lost motion with additional matters" would waste judicial resources, undermine the finality of decisions, and spawn "duplicative rulings on previously considered issues."), *objections overruled*, No. 19-CV-4355 (LGS) (GWG), 2020 WL 4496764 (S.D.N.Y. Aug. 4, 2020).

Nor do Defendants cite to a change in controlling law, or the availability of new evidence. At best, Defendants seem to imply a "need to correct a clear error or prevent manifest injustice[]" in allowing Plaintiffs' PayFac claims to proceed. *Color Tile, Inc.*, 322 F.3d at 167. Significantly, and weighing against a finding of manifest injustice, the Court has already declined—twice—to dismiss Plaintiffs' PayFac claims. Indeed, in holding that Plaintiffs' Sub-merchants were members of the Rule 23(b)(3) Settlement Class, the May 28, 2024 Order noted the following:

> Defendants also argue that "if the Court grants Defendants' motion to enforce [the Settlement Agreement], there is no need to reach Intuit's cross-motion for partial summary judgment." [] The Court's conclusion [granting] [] Defendants' motion to enforce the Settlement Agreement, however, relies on an interpretation of who "accepted" payment cards under the Settlement Agreement. Even where such a finding is "guided by federal antitrust standards," *In re Payment Card*, 2019 WL 6875472, at *31, *that finding as to the meaning of a disputed contract term is not equivalent to the conclusion that no genuine dispute of fact remains as to the identity of the direct purchaser of card-acceptance services under Illinois Brick.* [].

May 28, 2024 Order at 27 n.7 (emphasis added). Additionally, the May 28, 2024 Order, in denying Intuit's cross-motion for partial summary judgment on the issue of antitrust standing under *Illinois Brick*, stated that "triable questions of fact remain as to the identity of the direct purchaser of the card-acceptance services." *Id.* at 29-30.

While the Court acknowledged that in similar circumstances concerning acquiring banks and merchants, that "the evidence tends to show that merchants, rather than [acquiring banks], are the direct purchasers of card-acceptance services[,]" the Court nevertheless did not dismiss Plaintiffs' PayFac claims in the May 28, 2024 Order.  *See* May 28, 2024 Order at 29 (quoting Dkt. No. 9140 at 39-40).  This fact was reiterated by the Court shortly after issuing its May 28, 2024 Order.  *See* June 11, 2024 Text Order ("The Court did not dismiss any claims or any portion of claims brought by Intuit or Block, including any claims for damages based on transactions for which Intuit or Block served as a payment facilitator.").  Thus, Defendants have failed to show manifest injustice, or any other grounds for reconsideration of the May 28, 2024 Order.

Accordingly, the undersigned respectfully recommends that the Motion be construed as a motion for reconsideration of the Court's May 28, 2024 Order, and denied.

### B.      Even Assuming, *Arguendo*, the Court Did Not Construe the Motion as a Motion for Reconsideration, Denial at this Stage Remains Appropriate

Even if the Court were not to construe the Motion as one for reconsideration, denial would be appropriate.  As an initial matter, the Motion fails to even identify the legal standard applicable to a motion for a preliminary injunction.  *See Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (to prevail on a motion for preliminary injunction, a movant must demonstrate: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.").

Here, Defendants make no cogent argument regarding irreparable harm in the absence of the injunction, or make any showing of manifest injustice.  Nor have Defendants proffered arguments demonstrating that they will be successful on the merits.  Thus, Defendants have failed to demonstrate why a preliminary injunction is warranted here.

Further, denial of the Motion is appropriate given the outstanding factual questions regarding Defendants' statuses as direct purchasers under *Illinois Brick* and *Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Indeed, as noted in the May 28, 2024 Order, triable factual questions remain regarding "the identity of the direct purchaser of the card-acceptance services[,]" where Intuit's service agreements define agency relationships with its Sub-merchants. May 28, 2024 Order at 29-30. The same will likely be raised for service agreements between Square and its Sub-merchant customers. Indeed, as noted above and in the May 28, 2024 Order, the Court clarified that its determinations that the Sub-merchants "accepted" card-payment services per the Settlement Agreement, and Sub-merchants' Rule 23(b)(3) class membership, were "not equivalent to the conclusion that no genuine dispute of fact remains as to the identity of the direct purchaser of card-acceptance services under *Illinois Brick*." *Id*. at 27 n.27.

Courts in this Circuit have identified several factors relevant to determining whether a principal and an agent constitute distinct economic entities for purposes of *Illinois Brick* standing, including:

> [w]hether the agent performs a function on behalf of [its] principal other than securing an offer [or a price] from a buyer [or seller] for the . . . product; the degree to which the agent is authorized to exercise [its] discretion concerning the price and terms under which the principal's product is to be sold [or bought]; and finally whether the use of the agent constitutes a separate step in the vertical distribution of the . . . product.

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 506 (S.D.N.Y. 1996), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (quoting *Diskin v. Daily Racing Form, Inc.*, No. 92-CV-6347 (MBM), 1994 WL 330229, at *4-*5 (S.D.N.Y. July 7, 1994) (denying summary judgment on issue of whether retailers were mere agents of distributors and not a "distinct entrepreneurial link" for direct purchaser status under *Illinois Brick*).

Here, factual issues exist regarding whether Intuit and Square, as PayFacs, and pursuant to their respective service agreements with Sub-merchants, "perform function[s] on behalf of [their] principal[s] other than securing an offer [or a price] from a buyer [or seller] for the . . . product[.]" *Id.* at *4. The existence and scope of an agency relationship is often a factual inquiry. *See Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 994 (2d Cir. 1991); *see also In re JVJ Pharm. Inc.*, 630 B.R. 388, 403 (S.D.N.Y. 2021) (noting that "the existence of an agency relationship is a mixed question of law and fact that should generally be decided by the trier of fact"). Agency relationships are limited in scope to the purposes intended by the principal and agent, and defined by control and authority. *See United States v. Meregildo*, 920 F. Supp. 2d 434, 443-44 (S.D.N.Y. 2013).

Discovery, including into the scope of the agency relationships among Plaintiffs and their Sub-merchants, as stipulated in their respective service agreements, will be essential in resolving the direct-purchaser inquiry under *Illinois Brick,* and the PayFac claims, generally. Indeed, Defendants seem to vociferously assert that their roles as PayFacs "constitute[] a separate step in the vertical distribution of [card-acceptance services]." *In re NASDAQ*, 169 F.R.D. at 506. For example, Defendants state they frequently provide Sub-merchants with "proprietary software and hardware solutions (like Intuit QuickBooks Payments and the Square Reader) . . . to facilitate [payment] card use in their physical and online stores . . . [and] provide their customers [] the ability to conduct business using myriad other payment methods including ACH, PayPal, and Apple Pay." Dkt. No. 9514 at 10.

Accordingly, the undersigned respectfully recommends that, even if the Motion is not construed as a motion for reconsideration of the Court's May 28, 2024 Order, outstanding factual issues nevertheless compel denial of the Motion.

III.    **Conclusion**

For the reasons explained above, the undersigned respectfully recommends that the Motion be denied.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Chief Judge Brodie. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

The parties are directed to confer and file a joint letter attaching proposed redactions to this Report and Recommendation by March 28, 2025. The parties are further directed to explain why such redactions are warranted.

Should the Court adopt this Report and Recommendation, the undersigned will then lift the stay of discovery regarding Plaintiffs' PayFac claims under their direct purchaser theory. *See* November 12, 2024 Text Order ("Discovery on Intuit and Square's payment facilitator claims is stayed. Fact discovery on Intuit and Square's non-payment facilitator claims will close on June 23, 2025."). And should the Court adopt this Report and Recommendation, the undersigned will promptly hold a status conference to discuss next steps in discovery.

Dated:       Brooklyn, New York
              March 24, 2025         **SO ORDERED.**

                                           */s/ Joseph A. Marutollo*
                                       JOSEPH A. MARUTOLLO
                                       United States Magistrate Judge