UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

This document refers to: ALL ACTIONS

*SUA SPONTE*
REPORT AND
RECOMMENDATION

05-MD-1720
(Brodie, C.J.)
(Marutollo, M.J.)

------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Over the course of this long-running multidistrict litigation, this Court has repeatedly endeavored to proactively protect class members from deception. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d 365 (E.D.N.Y. 2023) (addressing a false website that sought to mirror the official Court-approved website); Text Order, Dkt. No. 6147 ("It is clear to the Court that the overwhelming majority of the members of the merchant class need protection from overreaching claims filing services, and [the Court] intend[s] to provide that protection proactively. Preventing confusion and deception before they can happen is far preferable to taking remedial measures after they happen.").

On March 31, 2025, counsel for the Fed. R. Civ. P. 23(b)(3) Class ("Class Counsel") alerted the Court to issues regarding a purported third-party claims administrator, Pacific Travel and Services LLC ("Pacific Travel"). *See* Dkt. No. 9585. Specifically, Class Counsel asserted that Pacific Travel had "(1) been soliciting class members for claims filing without including the Court-mandated disclaimers; (2) provided false information; and (3) sought a pre-payment for 'services' that appear calculated from a claimed refund amount with no basis." *Id*. at 1.[1]

---

[1] On the same date, Class Counsel informed the Court of misleading materials posted by so-called referral partners of LenCred, which, *inter alia*, contained statements regarding false dollar amounts purportedly

Following Class Counsel's submission, on March 31, 2025, the Court ordered Pacific Travel to show cause by April 7, 2025 regarding the issues raised by Class Counsel in Dkt. No 9585. *See* March 31, 2025 Text Order I. Through Class Counsel, Pacific Travel filed a response to the Court's Order on April 7, 2025. Dkt. No. 9594. The Court then directed Class Counsel to respond to Pacific Travel's filings, which Class Counsel did on April 8, 2025. *See* April 7, 2025 Text Order; Dkt. No. 9596. In its response, Class Counsel recommended the Court order: (i) Pacific Travel to refund all funds paid to it by class members; (ii) Pacific Travel to send correspondence to its purported class member clients containing Court-mandated disclaimers and other information; and (iii) that class administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq") administratively file Pacific Travel's claims, with costs of the same assessed to Pacific Travel. *Id.* at 3; *see also* Dkt. No. 9604.

For the reasons set forth below, the undersigned *sua sponte* respectfully recommends that Class Counsel's letter-motion at Dkt. No. 9596 be granted in its entirety. First, the undersigned respectfully recommends that the Court order Pacific Travel to refund all funds paid to it by class members. Second, the undersigned respectfully recommends that Pacific Travel send a letter or email in both English and Vietnamese (copying Class Counsel) to all 80 class members for whom it purports to act explaining that: (a) Pacific Travel failed to include or require to be included

---

received by a class member, lacked the Court-mandated disclaimer, and made other incorrect representations regarding the settlement. Dkt. No. 9587. The Court ordered LenCred to file a letter with the Court responding to the allegations in Class Counsel's letter and to provide to Class Counsel materials it supplies to referral partners, among other directives. *See* March 31, 2025 Text Order I. Through Class Counsel, LenCred filed a response to the Court's Order on April 4, 2025. Dkt. No. 9590. At the Court's direction, LenCred filed a supplemental response to the Court's Order on April 7, 2025. Dkt. No. 9594. Ultimately, during a conference before the undersigned on April 24, 2024, Class Counsel and LenCred stipulated that LenCred will pay the reasonable expenses incurred by Epiq regarding remediation of the false and misleading referral partner social media posts. *See* Minute Entry dated April 24, 2024. As noted at the conference, "LenCred is strongly cautioned that, while the Court does not recommend at this time that LenCred be barred from all settlement related services, should further issues arise, the Court may take such a step." *Id.* The Court does not further address LenCred in this Report and Recommendation.

2

Court-Ordered disclaimer language; (b) Pacific Travel lacks authority to file claims; (c) Epiq will assist class members at no cost; and (d) Pacific Travel will refund the money it took from class members as the amounts charged were not based on their expected recovery. The undersigned respectfully recommends that Epiq attempt to administratively file these claims, with costs of the same charged to Pacific Travel.[2]  *See* Dkt. Nos. 9596, 9596-5.  Additionally, the undersigned respectfully recommends that Pacific Travel be ordered provide to Class Counsel and Epiq all necessary information regarding its class member merchant clients and marketers, including contact information for the same.[3]

## I.     Relevant Factual and Procedural Background

This multidistrict litigation arises out of the claims of a putative class of over twelve million nationwide merchants who allege that Visa, MasterCard, and numerous banks that serve as payment-card issuers for those networks had adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction.  *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d at 368.  After nearly fifteen years of litigation, this Court approved a class settlement in this antitrust action of $5.6 billion.  *See, e.g.*, *Fikes Wholesale, Inc.*, 62 F.4th at 712.

As noted above, throughout this long-running litigation, the Court has sought to proactively protect class members from deception.  *See, e.g., In re Payment Card Interchange Fee & Merch.*

---

[2] It is respectfully recommended that Epiq be ordered maintain records regarding the costs associated with filing these claims to facilitate charging such expenses to Pacific Travel.

[3] As discussed further below, this information would include any and all names and contact information of its marketers, including, but not limited to the "three referral partners" noted during the April 25, 2025 Conference.  *See* Dkt. No. 9606 at 15:15-24.

3

*Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JAM), 2025 WL 1098940, at *3 (E.D.N.Y. Apr. 14, 2025) (ordering Epiq to withdraw an entity's 2,184 fraudulent proofs of authority and assessing against the entity the costs of remediating the fraudulent submissions made to Epiq.).

As referenced above, on March 31, 2025, Class Counsel alerted the Court to potential fraud by Pacific Travel. *See* Dkt. No. 9585. According to Class Counsel, Pacific Travel had "(1) been soliciting class members for claims filing without including the Court-mandated disclaimers; (2) provided false information; and (3) sought a pre-payment for 'services' that appear calculated from a claimed refund amount with no basis." *Id*. at 1.

Class Counsel stated that Epiq brought this issue to its attention on March 27, 2025 after a class member reported having signed up for claims-filing services with Pacific Travel and paid "significant sums" to the same via Zelle. *Id.* Class Counsel's inquiry revealed that Pacific Travel had submitted claims on behalf of 80 merchants, but that not one of the claims had been properly made and was able to be approved by Epiq. *Id.*

Significantly, Class Counsel's review of text messages submitted by the complaining class member indicated that the so-called marketers associated with Pacific Travel had demanded payment of thousands of dollars in advance of providing claims-administration services. *See id.* at 2. The complaining merchant had sent at least $1,500 to Pacific Travel, though the marketers had demanded an additional $9,000, based on a hypothetical "payout amount" unsupported by any calculation or evidence. *Id.*

Class Counsel wrote to Pacific Travel on March 28, 2025, requesting that it immediately refund class members' funds, and provide: "(1) information to each class member explaining that the company failed to include Court-ordered disclaimer language; (2) that it lacks authority to file these claims; (3) that [Epiq] can assist them; and (3) that Pacific Travel will be refunding the

4

money it took from class members as the amounts charged were not based on their expected recovery." *Id.* Class Counsel requested that any communication be made in English and Vietnamese. *Id.* Class Counsel attached to its March 31, 2025 letter a proposed order to show cause. *Id*.

The Court entered the order to show cause the same day, directing Pacific Travel to respond by April 7, 2025. *See* March 31, 2025 Text Order I. Specifically, the undersigned ordered Pacific Travel to:

> (1) provide a written response to the Court explaining why it should not be required to refund all monies paid to it by class members;
>
> (2) explain why it should not be required to provide, at its expense, information to each class member for whom it purports to act explaining that: (i) Pacific Travel failed to include Court-ordered disclaimer language; (ii) it lacks authority to file these claims, (iii) that the Class Administrator, Epiq, can assist class member at no cost; and (iv) Pacific Travel will refund the money it took from class members as the amounts charged were not based on their expected recovery;
>
> (3) ensure that any communication to the affected class members be made in both English and Vietnamese; and
>
> (4) explain why Epiq should not administratively file these claims.

*Id.*

Through Class Counsel, Pacific Travel filed its response to the Court's March 31, 2025 Order. Dkt. No. 9594-1. In its response, Pacific Travel stated that the 80 class members it had submitted claims on behalf had been "referred to Pacific Travel by marketers[,]" who had existing relationships with the class members. *Id*. at 2. These marketers then provided Pacific Travel with the merchants' information. *Id*. Pacific Travel emphasized that it "[d]id not receive money directly from these referred merchants[,]" and that 'these marketers are NOT affiliated with Pacific Travel in any way." *Id*. Instead, Pacific Travel alleged that it "provided services" to class members in an attempt to file their claims, and received money directly from the marketers for this purpose.

5

*Id.* at 3.

Pacific Travel further stated that, though it received a March 20, 2025 notice dictating that all solicitations include certain Court-designated disclaimers and that third-party claims filing companies could no longer sign up new class members, it "did not include Court-ordered disclaimer language because [it] did not solicit services to these class members." *Id.* Pacific Travel stated that it "thought [it had] the authorization to work on these claims since the clients provided us (through the marketers) with the business records (IRS EIN Letter, Certificate of Formation, etc.)[.]" *Id.* Pacific Travel stated that Epiq should not be ordered to administratively file the claims submitted by Pacific Travel because these class member merchants had authorized Pacific Travel to file their claims. *Id.*

On April 7, 2025, the Court directed Class Counsel to respond to Pacific Travel's filings, which it did on April 8, 2025. *See* April 7, 2025 Text Order; Dkt. No. 9596. In its response, Class Counsel provided an overview of its interactions with Pacific Travel, including, as mentioned above, that issues with it came to the attention of Epiq through a class member, who provided Epiq with text messages showing aggressive and misleading solicitation. *See* Dkt. No. 9596 at 1. Class Counsel excerpted the solicitation, which appeared to have originated from one of Pacific Travel's self-described marketers:

> Payment Card Fee Program: Fee is 15% of the total amount of claim with $1,500 to start work on the claim. If denied, $1,100 will be refunded. The rest of the fee balance is paid prior to claim is filed [sic]. If the total amount of claim is less than $1,500, full refund will be issued.

*Id.* Class Counsel noted that this solicitation lacked the Court-Ordered disclaimers. *Id.* The marketer also allegedly stated: "The account[ant] will not work on it if he doesn't get paid first!![,]" provided false information regarding the value of the class member's claim, and demanded further

6

payment of $9,000.  *Id*. at 1-2.

Class Counsel reiterated that none of the 80 claims submitted by Pacific Travel could be approved by Epiq, and that Pacific Travel's responses to the Court's order to show cause were inconsistent and raised further suspicions regarding its relationships with its marketers and class members.  *Id*. at 2.  For instance, Class Counsel noted that Pacific Travel's disclaimer of affiliation with its marketers is at odds with the fact that Pacific Travel receives class members' claim materials directly from its marketers.  *Id*.  Additionally, Pacific Travel's receipt of funds from its marketers in exchange for claims-filing services also supports a finding that they are affiliated.  *Id*. at 2-3.

According to Class Counsel, Pacific Travel's response completely failed to justify or explain its conduct and that of its marketers.  *Id.*  Thus, Class Counsel recommended the Court order: i) Pacific Travel to refund all funds paid to it by class members; ii) Pacific Travel to send correspondence to its purported class member clients containing Court-mandated disclaimers and other information; and iii) Epiq to administratively file Pacific Travel's claims, with all expenses charged to Pacific Travel.  *Id.* at 3.

On April 24, 2025, the Court held a status conference at which, *inter alia*, Class Counsel, counsel for Epiq, and Mr. Tri Nguyen, owner of Pacific Travel, appeared, without counsel.  *See* April 25, 2025 Text Order.  Class Counsel confirmed that Epiq could administratively file the 80 claims originally submitted by Pacific Travel, but noted that, to do so, Epiq required sufficient contact information for the class member merchants, which Class Counsel requested the Court order Pacific Travel to provide.  *See* Dkt. No. 9606 (April 25, 2025 Hearing Transcript) at 4:22-5:21.  Class Counsel and Epiq also stated that, as of the date of the conference, none of Pacific Travel's 80 claim submissions was able to be approved.  *See id.* at 5:19-6:3; 18:6-21.

7

Mr. Nguyen was given an opportunity to be heard and elaborate upon Pacific Travel's submission. *Id*. at 12:24-16:14. With regard to Pacific Travel's marketers, through whom it interfaced with class members, Mr. Nguyen stated "[t]hey don't work for me[,]" that they had existing relationships with class members, and had contacted Pacific Travel to file their claims. *Id*. at 13:11-15. Mr. Nguyen remarked that his marketers provided Pacific Travel with the merchants' names and documents, but not any contact information, and that Pacific Travel "get[s] paid directly from the referral partner," and not the client. *Id*. at 13:16-19.

When asked by the Court how Pacific Travel was "ensuring that class members that [it] purports to represent are not receiving false or misleading information[,]" from its marketers or otherwise, Mr. Nguyen stated that he "never kn[e]w that there was a class, a regulation that say[s] that [he has] to include a disclaimer to the client." *Id.* at 15:4-24. He further stated that, with regard to the class members, he "did not know those clients . . . . [d]id not send anything to them or approach them[,] and [o]nly filed for them[.]" *Id*. at 15:25-16:11. Thus, ultimately, he replied that he "[did not] know how to answer [the Court's] question, honestly, because [he did] not deal directly with [the class members]." *Id.* at 16:12-14.

Class Counsel briefly responded, noting, *inter alia*, that Pacific Travel and its marketers "did not follow the rules at all," and that their conduct, including demanding prepayment from class members for claims filing services was "distressing" and "pretty shocking." *Id*. at 17:2-10. The Court reserved ruling regarding Pacific Travel's alleged misconduct. *Id*. at 19:18-29.

On April 28, 2025 the Court sought additional information from Class Counsel regarding its request that Epiq's costs of administratively filing the 80 claims be assessed against Pacific Travel, including an estimate of such costs. *See* April 28, 2025 Text Order.

On April 30, 2025, Class Counsel filed a letter in accordance with the Court's Order. Dkt.

8

No. 9604. Class Counsel noted the process by which Epiq could administratively file the 80 claims and estimated that the costs for doing could be up to $20,000, but that the eventual cost depended "largely on the quality of the [80 class members'] data that Pacific Travel is able to produce[.]" Dkt. No. 9604 at 3-4. Class Counsel also stated that, while "Epiq has not had sufficient time to fully estimate the cost[s,]" assuming that the class members' data it received from Pacific Travel was "clean," it would cost Epiq roughly $5,000 to intake the data and register class members, $6,000 to draft and disseminate certain notices to class members, and $9,000 to review and process the documentation to submit the claims. *Id.* at 4. Class Counsel reiterated the serious issues faced by class members who dealt with Pacific Travel and its marketers, and that Pacific Travel, neither in its response to the Court's Order to Show Cause, *see* Dkt. No. 9594, nor during the April 24, 2025 Status Conference, provided satisfactory answers to the Court's and Class Counsel's questions. *See* Dkt. No. 9604 at 1-2.

## II. **Legal Standards**

As part of its obligation to protect class members, the Court has broad authority to regulate the conduct of third-parties in their dealings with the class. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014) ("The Court's authority is clear, and its obligation to protect class members is strong."). This authority includes maintaining "ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." *Id.* (citation omitted). The Court is authorized to "take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members." *Id.*; *see also Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at

9

\*5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power). The Court's "authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at \*1 (citation omitted).

The All Writs Act, 28 U.S.C. §1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary "to protect the settlement from threats by both parties and non-parties." *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238, 2006 WL 1025588, at \*4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985)). The curative orders may extend to anyone "in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (explaining that sanctions against a nonparty would be available under the Court's "inherent power" "for abuse of the judicial process."). Courts can "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at \*5.

Rule 23(d) of the Federal Rules of Civil Procedure also provides courts with the authority to regulate conduct and communications by parties and their counsel with class members. As the Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders

10

governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980).

**III.     Discussion**

Upon review of the submissions of Class Counsel and Pacific Travel, as well as representations made by the same during the April 24, 2025 Status Conference, the Court concludes that Pacific Travel's conduct was in complete disregard of class members' rights and has substantially disrupted administration of the class settlement. Sanctions against Pacific Travel are therefore appropriate here.

As an initial matter, "[a] federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Tr. v. Sabino*, 230 F.3d 1357 (6th Cir. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991) and *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1995)); *see also Sundby v. Marquee Funding Grp., Inc.*, No. 19-CV-00390 (GPC) (AHG), 2020 WL 5709445, at *5 (S.D. Cal. Sept. 24, 2020) (citations omitted) (The Court has "the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses."). The power to mitigate bad faith and fraudulent conduct that impedes the adjudication of class action litigation and the claims administration process also emanates from a Court's authority under Fed. R. Civ. P. 23 and the All Writs Act. *See Visa Check*, 2006 WL 1025588, at *5; Fed. R. Civ. P. 23(d).

That Pacific Travel is not a party to this action does not preclude this Court's imposition of sanctions upon it. *See Amerisource Corp.* 2010 WL 2730748, at *5 (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct" and exercising such power); *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, 2022 WL 1843136, at

11

\*1 (C.D. Cal. Apr. 11, 2022) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended).

Here, the Court determines that sanctions are an appropriate exercise of the Court's authority under its inherent power, Federal Rule of Civil Procedure 23(d), and the All Writs Act. Notably, Pacific Travel, vis-à-vis its marketers, solicited class members for claims filing without including the Court-mandated disclaimers, made misleading statements to them, including regarding the values of class members' claims, and sought pre-payment for services that ultimately resulted in not a single claim eligible of approval. Indeed, not only did one of Pacific Travel's marketers demand and apparently extract $1,500 from a class member for claims-filing services, the marketer sought an additional $9,000 payment, seemingly without explanation. This is especially egregious, considering class members can file their claims for free directly with Epiq.

The undersigned also finds Pacific Travel's response to the Court's Order to Show Cause inadequate and indicative of wholesale disregard for the rights of class members. Pacific Travel took no responsibility for the conduct of its marketers and instead attempted to distance itself from the misleading and wholly ineffective claims-submission process it undertook. Specifically, Pacific Travel stated that it "[d]id not receive money directly from these referred merchants[,]" and that 'these marketers are NOT affiliated with Pacific Travel in any way." Dkt. No. 9594-1 at 2 (capitalization in original). Instead, Pacific Travel alleged that it "provided services" to class members in an attempt to file their claims, and received money directly from the marketers for this purpose. *Id.* at 3.

Though Pacific Travel's response stated that it had received a March 20, 2025 notice mandating all solicitations include certain Court-designated disclaimers, Pacific Travel claims that it "did not include Court-ordered disclaimer language because [Pacific Travel] did not solicit

services to these class members." *Id*.  This appears at least somewhat contradictory to Mr. Nguyen's own statement during the April 24, 2025 Status Conference that he "never kn[e]w that there was a class, a regulation that say that I have to include a disclaimer to the client."  Dkt. No. 9603 at 15:4-24.  And in any event, Pacific Travel's conduct, both individually and through its marketers, deprived class members of the Court-mandated disclaimers designed to protect from this very circumstance.  Pacific Travel cannot, on one hand, profit from its relationship with these marketers and then, on the other hand, escape accountability for their unscrupulous conduct towards class members.

That not a single claim filed by Pacific Travel is eligible for approval weighs heavily in the Court's analysis that Pacific Travel's conduct is sanctionable.  Class Counsel reported in its March 31, 2025 letter that of the 80 claims submitted by Pacific Travel, five were in a status of "Conflict"; 66 were in a status of "Deficient"; two were in a status of "Excluded Party"; one was in a status of "Suspected Fraud"; and six were in a status of "Withdrawn."  Dkt. No. 9585 at 1.  At the April 24, 2025 Status Conference, Mr. Nguyen stated that he thought one of the 80 claims Pacific Travel submitted had been approved.  *See* Dkt. No. 9606 at 18:24-19:3.  Counsel for Epiq swiftly interjected, stating that, as of the date of the conference, not a single claim was able to be approved. *Id.*  Pacific Travel's (incorrect) contention that one of the claims it submitted would be approved is an implicit acknowledgement that the remaining 79 claims would be denied and result in zero compensation for those class members.  It is plainly apparent that every class member who utilized Pacific Travel and its marketers to submit claims has been harmed by their involvement with Pacific Travel and, as a result, stands to gain nothing (and lose potentially thousands of dollars) from this class action settlement.  This is an unjust result, and one that will not be countenanced by this Court.

13

In consideration of the above, the undersigned respectfully recommends that Chief Judge Brodie grant Class Counsel's letter-motion at Dkt. No. 9596 and order i) Pacific Travel to refund all monies paid to it by class members for claims-filing services; ii) Pacific Travel to send a letter or email in English and Vietnamese (copying Class Counsel) to all 80 class members for whom it purports to act, explaining that: (a) Pacific Travel failed to include or require to be included Court-Ordered disclaimer language; (b) it lacks authority to file claims, (c) that the Class Administrator, Epiq, will assist class members at no cost; and (d) that Pacific Travel will refund the money it took from class members, as the amounts charged were not based on their expected recovery; and iii) Epiq to attempt to administratively file these claims, with the costs of the same charged to Pacific Travel. Additionally, the undersigned respectfully recommends that Pacific Travel be ordered to provide to Class Counsel and Epiq all necessary information regarding its class member merchant clients and marketers, including contact information for the same.

## IV.    Conclusion

For the reasons set forth above, the undersigned *sua sponte* respectfully recommends that Class Counsel's letter-motion at Dkt. No. 9596 be granted in its entirety. First, the undersigned respectfully recommends that the Court order Pacific Travel to refund all funds paid to it by class members. Second, the undersigned respectfully recommends that Pacific Travel send a letter or email in both English and Vietnamese (copying Class Counsel) to all 80 class members for whom it purports to act explaining that: (a) Pacific Travel failed to include or require to be included Court-Ordered disclaimer language; (b) Pacific Travel lacks authority to file claims; (c) that Epiq will assist class members at no cost; and (d) that Pacific Travel will refund the money it took from class members as the amounts charged were not based on their expected recovery. The undersigned respectfully recommends that Epiq attempt to administratively file these claims, with

14

costs of the same charged to Pacific Travel. *See* Dkt. Nos. 9596, 9596-5. Additionally, the undersigned respectfully recommends that Pacific Travel be ordered provide to Class Counsel and Epiq all necessary information regarding its class member merchant clients and marketers, including contact information for the same.

A copy of this Report and Recommendation is being electronically served on counsel. Class Counsel is directed to serve a copy of this Order on Pacific Travel and file proof of service by May 9, 2025.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Chief Judge Brodie. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   Brooklyn, New York　　　　**SO ORDERED.**
　　　　　May 8, 2025

　　　　　　　　　　　　　　　　　　　　  */s/ Joseph A. Marutollo*
　　　　　　　　　　　　　　　　　　　　JOSEPH A. MARUTOLLO
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge