**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | No. 05-MD-1720 (MKB) (JAM)<br><br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VISA INC.'S MOTION TO ENFORCE THE RULE 23(B)(3) CLASS SETTLEMENT AGREEMENT AND FINAL JUDGMENT BY COMPELLING RULE 23(B)(3) CLASS MEMBERS TO DISMISS RELEASED CLAIMS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

     A.   The Rule 23(b)(3) Class Settlement Agreement and Final Judgment ............................ 3

     B.   Procedural History of *In re Visa Debit* ........................................................................ 6

     C.   The Overlap Between the CCAC and the Settled Rule 23(b)(3) Action ........................ 8

          1. *The Putative Class in the CCAC Overlaps with the Rule 23(b)(3) Settlement Class* .. 8

          2. *The CCAC Arises from the Same Predicate Facts as the Settled Action* ................... 9

LEGAL STANDARD .......................................................................................................... 15

ARGUMENT ...................................................................................................................... 16

I.    The Rule 23(b)(3) Settlement Agreement Release and Final Judgment Bar Members of the Rule 23(b)(3) Settlement Class from Pursuing Claims in the CCAC .................................. 17

     A.   The CCAC Asserts Claims Arising from Identical Predicate Facts as Those Underlying the Rule 23(b)(3) Settlement Agreement ...................................................................... 17

     B.   Plaintiffs Cannot Credibly Claim the CCAC Arises from Facts That Were Not or Could Not Have Been Litigated in MDL 1720 ...................................................................... 21

II.   Plaintiffs Were Adequately Represented in the Rule 23(b)(3) Class .................................. 23

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
272 F. App'x 9 (2d Cir. 2008) ...................................................................................20

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011).....................................................................................15

*In re Auction Houses Antitrust Litig.*,
2003 WL 1565950 (S.D.N.Y. Mar. 12, 2003) .........................................................15

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
770 F.2d 328 (2d Cir. 1985)......................................................................................16

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) .............................................................................15, 16

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ........................................................................................6

*FTC v. Americans for Financial Reform*,
720 F. App'x 380 (9th Cir. 2017) .............................................................................16

*In re Johns-Manville Corp.*,
27 F.3d 48 (2d Cir. 1994) .........................................................................................16

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ................................................................................16

*In re Lehman Bros. Sec. & Erisa Litig.*,
2012 WL 2478483 (S.D.N.Y. June. 29, 2012) ...................................................20, 21

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011).................................................................................16, 17

*In re Payment Card*,
2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ...............................4, 6, 22, 23, 24

*In re Payment Card*,
2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024) .................................3, 16, 17, 18, 24

*In re Payment Card*,
330 F.R.D. 11 (E.D.N.Y. 2019) ..........................................................................2, 3, 6, 23

*In re Payment Card*,
    729 F. Supp. 3d 298 (E.D.N.Y. 2024) ...................................................12, 13, 15, 19

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982).................................................................................19, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................16, 17, 20, 23, 24

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................................................23

*In re WorldCom, Inc. Securities Litigation*,
    2007 WL 1946685 (S.D.N.Y. July 5, 2007) ..................................................................20

**Statutes & Rules**

All-Writs Act, 28 U.S.C. § 1651 ...............................................................3, 15, 16, 25

Federal Rule of Civil Procedure 65 ..............................................................................16

## PRELIMINARY STATEMENT

Defendant Visa Inc. respectfully moves to enforce the Rule 23(b)(3) Class Settlement Agreement (Dkt. 7257-2) ("Settlement Agreement") and Final Judgment (Dkt. 7832) ("Final Judgment") by compelling members of the Rule 23(b)(3) Settlement Class to dismiss released claims in a separate action entitled *In re Visa Debit Card Antitrust Litigation*, No. 1:24-cv-07435 (S.D.N.Y.) ("*In re Visa Debit*"). This Court has exclusive jurisdiction to enforce the Settlement Agreement and Final Judgment, as the parties in *In re Visa Debit* acknowledge. On consent of those parties, the court in *In re Visa Debit* has stayed the claims at issue pending resolution of this motion.[1]

At issue here is a Consolidated Class Action Complaint ("CCAC") filed in *In re Visa Debit* by a putative class of merchants ("Plaintiffs"). *See In re Visa Debit*, Dkt. 38 (Dec. 16, 2024) (Exhibit A hereto). Like the merchant plaintiffs in MDL 1720, Plaintiffs in the new case allege that Visa has unlawfully exercised market power in debit markets and caused merchants to incur supracompetitive fees on Visa debit transactions through anticompetitive conduct that includes volume-discount agreements with merchants, acquirers, and issuers, and agreements with technology companies like Apple and PayPal. The Rule 23(b)(3) Settlement Class—comprised of all entities that accepted Visa-branded or Mastercard-branded cards at any time between January 1, 2004 and January 24, 2019—released claims arising from those facts for Visa debit transactions through August 8, 2028. This Court enjoined those class members from pursuing those claims in other actions. *See* Final Judgment ¶ 17.

---

[1]    *See* Joint Rule 26(f) R. & Case Management Plan at 3–5, nn.4–6, *In re Visa Debit*, Dkt. 98 (Jan. 28, 2025); Order Granting Mot. to Stay, *In re Visa Debit*, Dkt. 110 (Feb. 24, 2025) (released claims stayed pending decision by MDL 1720 Court).

If the putative class in the CCAC were limited to merchants that first started accepting Visa debit cards after January 24, 2019, as the first merchant complaint filed in *In re Visa Debit* was, Visa would not be bringing this motion.[2]  However, two of the class representatives—Plaintiffs Yabla, Inc. ("Yabla") and R&N Productions LLC d/b/a SewRobQnE ("R&N Productions")—allege that they began accepting Visa debit before January 25, 2019.  CCAC ¶¶ 30, 33.  Plaintiffs in the CCAC, unlike in the first merchant complaint in *In re Visa Debit*, also purport to represent "[a]ll . . . entities . . . that have incurred fees for debit . . . from January 1, 2012, through the present, imposed by Visa."  *Id*. ¶ 236.  In other words, two named Plaintiffs, and millions of merchants in the putative class in the CCAC, are members of the Rule 23(b)(3) Settlement Class.

Critically, moreover, the claims in the CCAC are based on an "identical factual predicate" as the claims asserted in MDL 1720 and covered by the release provisions in the Rule 23(b)(3) Settlement Agreement.  Both Plaintiffs in the CCAC and the Rule 23(b)(3) Settlement Class allege they were harmed by Visa's exercise of market power in debit markets to impose supracompetitive interchange fees and network fees for the same debit transactions.  A side-by-side comparison of the specific conduct alleged in the complaints in MDL 1720 and the CCAC shows the same factual predicates across the cases.  Indeed, the release provisions of the Settlement Agreement expressly identified those factual predicates as facts that were or could have been alleged in the Rule 23(b)(3) action.  This Court has already held that those "terms of

---

[2]    The CCAC names some class representatives that allege they first began accepting Visa debit transactions after January 25, 2019, which would exclude them from the Rule 23(b)(3) Settlement Class.  The CCAC's class definition also includes merchants that first began accepting Visa- or Mastercard-branded cards after the Rule 23(b)(3) class end date.  Visa is not challenging in this motion the claims of those putative class representatives or absent class members that are not members of the Rule 23(b)(3) Settlement Class, and the *In re Visa Debit* litigation is proceeding as to those non-released claims.

the Release Provision comport with the Second Circuit's identical factual predicate test." *In re Payment Card*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019). And this Court has already barred Rule 23(b)(3) class members from pursuing released claims on that basis. *See In re Payment Card*, 2024 WL 4224160, at *14 (E.D.N.Y. Sept. 18, 2024) ("*Old Jericho*"). The released claims in the CCAC cannot proceed for the same reasons.

This Court accordingly should enforce the Settlement Agreement and Final Judgment by enjoining, pursuant to the All-Writs Act, 28 U.S.C. § 1651 and the Court's inherent authority to enforce its own orders, members of the Rule 23(b)(3) Settlement Class from pursuing released claims in *In re Visa Debit*, and thus compelling Plaintiffs to dismiss Plaintiffs Yabla and R&N Productions and amend the proposed class definition in the CCAC to exclude entities that accepted Visa- or Mastercard-branded cards prior to January 25, 2019.

## BACKGROUND

### A.    The Rule 23(b)(3) Class Settlement Agreement and Final Judgment

The Rule 23(b)(3) Settlement Class includes "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [January 24, 2019]" and that did not opt out of the class. *See* Settlement Agreement ¶ 4; Final Judgment ¶ 1. The Settlement Agreement releases any claims "that have accrued as of the Settlement Preliminary Approval Date [January 24, 2019]," and "accrue no later than five years after the Settlement Final Date [August 8, 2023]."[3] Settlement Agreement ¶ 31(a). Thus, the Settlement Agreement release applies to, among other things, class members' transactions on Visa's debit network through August 8, 2028.

---

[3]    *See* Settlement Agreement ¶ 3(ss) (defining "Settlement Final Date"). "Visa-Branded Card" includes "any . . . Debit Card that bears or uses the name Visa, Plus, Interlink . . . ." *Id.* ¶ 3(bbb).

Under the Settlement Agreement, class members were entitled to "a *pro rata* share of the

monetary fund based on the interchange fees attributable to their transactions during the class

period." *In re Payment Card*, 2019 WL 6875472, at *3 (E.D.N.Y. Dec. 16, 2019). In exchange,

the Rule 23(b)(3) Settlement Class released as to Visa:

> any and all manner of claims . . . [the] Releasing Party ever had, now has, or
> hereafter can, shall, or may have and that have accrued as of the Settlement
> Preliminary Approval Date or accrue no later than five years after the Settlement
> Final Date arising out of or relating to any conduct, acts, transactions, events,
> occurrences, statements, omissions, or failures to act . . . that are or have been
> alleged or otherwise raised in the Action, or that could have been alleged or raised
> in the Action relating to the subject matter thereof, or arising out of or relating to a
> continuation or continuing effect of any such conduct, acts, transactions, events,
> occurrences, statements, omissions, or failures to act.

Settlement Agreement ¶ 31(a) (along with Paragraphs 29 to 31 of the Settlement Agreement, the

"Release").

The Settlement Agreement defines "Action" to mean "all actions that are consolidated for

pretrial proceedings in *In re Payment Card*." *Id*. ¶ 3(a). The Release therefore extends to all

"conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act"

alleged in not only the Rule 23(b)(3) plaintiffs' complaint,[4] but also in all other complaints that

were part of MDL 1720 (including the *7-Eleven* and *DDMB* complaints)—as well as that which

"could have been alleged or raised" in the MDL 1720 "Action." *See id*. ¶¶ 3(a), 31(a). And the

Release "extend[s] to, but only to, the fullest extent permitted by federal law." *Id*. ¶ 31(a).

In recognition of the limitations on class action releases pursuant to the "identical factual

predicate doctrine," the Rule 23(b)(3) parties "expressly agreed, for purposes of clarity," that

certain specific categories of facts were part of any "claims that were or could have been

---

[4] At the time of the Rule 23(b)(3) Settlement Agreement, the operative complaint in the Rule
23(b)(3) action was the Third Consolidated Amended Class Action Complaint ("TAC"). *See*
Dkt. 7123 (Nov. 6, 2017).

alleged" and that those facts "relate to the subject matter" of the "Action" and the Settlement Agreement. *See id*. ¶ 31(b). As pertinent here, the factual predicate includes:

- "(i) any interchange fees, interchange rates, or any Rule of any Visa Defendant . . . relating to interchange fees, interchange rates, or to the setting of interchange fees or interchange rates with respect to any Visa-Branded Card transactions in the United States," including "any . . . Debit Card that bears or uses the name Visa, Plus, Interlink";

- "(ii) any Merchant Fee of any Rule 23(b)(3) Settlement Class Released Party relating to any Visa-Branded Card transactions in the United States," which includes "any . . . network fee";[5]

- "(iii) any actual or alleged . . . Rules that limit merchants in favoring or steering customers to use certain payment systems . . . , routing rules . . . , [and] rules or conduct relating to routing options regarding acceptance technology for mobile, e-commerce, or online payments, or development and implementation of tokenization standards," with "rule" defined to include any "practice, procedure, activity, or course of conduct"; and

- "(vi) any actual or alleged agreement . . . (B) between or among any Visa Defendant . . . and any other Rule 23(b)(3) Settlement Class Released Party or Parties," which includes Visa's issuing banks and acquiring banks,[6] and extends to "continued participation therein."

*Id*. ¶ 31(b)(i)–(iii), (vi)(B). The Release extends to "rules" after the date of preliminary approval that are "substantially similar to those . . . in place as of [that] Date." *Id*. ¶ 31(c). "'Rule' as used in Paragraph 31" is defined to include "any rule, by-law, policy, standard, guideline, operating regulation, practice, procedure, activity, or course of conduct relating to any Visa-Branded Card . . . ." *Id*. ¶ 3(gg).

Taken together, at a minimum, the Release covers all claims for damages based on interchange fees or network fees for acceptance or use of Visa's debit networks through August

---

[5]  "'Merchant Fee' means any amount that reduces from the face amount of a transaction the funds that a merchant receives in the settlement of a . . . Debit Card transaction, or is otherwise charged to or paid by a merchant, or any interchange fee, network fee or assessment, or acquirer, issuer, or processor fee." Settlement Agreement ¶ 3(z).

[6]  "Rule 23(b)(3) Settlement Class Released Party or Parties" includes "[e]ach of the past, present, or future member or customer financial institutions" of Visa. Settlement Agreement ¶ 30(s).

8, 2028, by any entity that accepted Visa (or Mastercard) cards before January 25, 2019. Furthermore, the Release covers all claims arising out of (1) any practice, activity, or course of conduct related to Visa's debit cards concerning favoring, steering, or routing to Visa's debit networks or rival networks; (2) any practice, activity, or course of conduct related to routing options regarding acceptance technology; and (3) Visa's agreements with its issuers or acquirers. *Id.* ¶ 31(a)-(c).

As noted above, this Court found that "the terms of the Release Provision comport with the Second Circuit's identical factual predicate test," *In re Payment Card*, 330 F.R.D. at 47 (preliminary approval), which is the pertinent test here. No Rule 23(b)(3) class member— including Plaintiffs Yabla and R&N Productions—objected to the scope of the predicate facts expressly included in the Release. *See In re Payment Card*, 2019 WL 6875472, at *22–23 (confirming holding in preliminary approval decision that the Release "comports with the identical factual predicate test"). Nor did Plaintiffs Yabla or R&N Productions opt out of the Rule 23(b)(3) Settlement Class. *See* Final Judgment ¶ 2, Ex. 1.

This Court's Final Judgment incorporated the language of the Release in its entirety. *See* Final Judgment ¶ 16. The Final Judgment then "enjoined" each member of the Settlement Class "from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on its behalf," any released claims. *Id.* ¶ 17. The Settlement Agreement became final on August 8, 2023, following the Second Circuit's affirmance in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023).

### B.    Procedural History of *In re Visa Debit*

On September 24, 2024, the United States Department of Justice ("DOJ") filed a complaint alleging that Visa monopolized debit markets causing supracompetitive fees to

merchants based on Visa's agreements with its issuers and acquirers, routing agreements with merchants, and agreements with certain technology companies (e.g., Apple and PayPal) related to the availability of alternative network routing options for debit transactions on their acceptance technology. *See* Compl. ¶¶ 12, 14–16, 20–21, *United States v. Visa Inc.*, No. 1:24-cv-07214, (S.D.N.Y. Sept. 24, 2024), Dkt. 1. Following DOJ's action, a number of merchants filed putative class actions against Visa asserting that comparable conduct entitles them to damages under both the Sherman Act and state antitrust and consumer protection laws in so-called *Illinois Brick* repealer states.

Significantly, the first-filed of those merchant complaints recognized the need to exclude Rule 23(b)(3) Settlement Class members from their new putative class definitions:

- Plaintiff All Wrapped Up defined a class that "did not accept Visa-Branded Cards or Mastercard-Branded Cards prior to January 25, 2019." Compl. ¶ 199, *All Wrapped Up Signs and Graphix LLC v. Visa Inc.*, No. 1:24-cv-07435 (S.D.N.Y. Oct. 1, 2024), Dkt. 1.

- Plaintiffs NDA Aesthetics and Warren Imports excluded "any persons, businesses, and other entities whose claims have been entirely released pursuant to the Superseding and Amended Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants in Case No. 05-MD-1720 (E.D.N.Y.)." Compl. ¶ 174, *NDA Aesthetics, LLC, et al. v. Visa Inc.*, No. 1:24-cv-08269 (S.D.N.Y. Oct. 30, 2022), Dkt. 1.

- Plaintiff Broadway Grill excluded any merchant that "accept[ed] Visa-Branded Cards or Mastercard-Branded Cards prior to January 25, 2019." Compl. ¶ 178, *Broadway Grill, LLC v. Visa Inc.*, No. 1:24-cv-08422 (S.D.N.Y. Nov. 6, 2024), Dkt. 1.[7]

---

[7]    These complaints followed the example of *Mirage Wine + Spirits, Inc. v. Apple Inc.*, No. 3:23-cv-3942 (S.D. Ill.), in which counsel representing the Rule 23(b)(3) Settlement Class filed a class complaint on behalf of merchants against Visa, Mastercard, and Apple, claiming "inflated fees" on debit and credit card transactions based on a theory that Visa's (and Mastercard's) agreements with Apple concerning Apple Pay constitute agreements not to compete. *See Mirage* Am. Compl. ¶ 1 (Aug. 5, 2024), Dkt. 101. The *Mirage* class is limited to entities "who did not accept Visa or Mastercard Payment Cards (*i.e.*, purchase Network Services from Visa or Mastercard) at any time between January 1, 2004 and January 25, 2019, and have not otherwise released the claims asserted in this Complaint." *Id.* ¶ 131.

Plaintiff Yabla was the lone exception, as it sought to represent "[a]ll persons, businesses, and other entities in the United States that have accepted general-purpose Visa-Branded Debit Cards from no later than October 22, 2020, to the present"—with no exclusion for members of the Rule 23(b)(3) Settlement Class. Compl. ¶ 315, *Yabla Inc. v. Visa Inc.*, No. 1:24-cv-08045 (S.D.N.Y. Oct. 22, 2024), Dkt. 1.

On October 29, 2025, counsel for lead Plaintiff All Wrapped Up—now Interim Lead Class Counsel—informed Visa that Plaintiffs intended to file a consolidated amended complaint. Visa explained that one of the complaints did not properly exclude Rule 23(b)(3) Settlement Class members, and requested that Plaintiffs address this issue in their consolidated complaint. Plaintiffs filed the CCAC on December 16, 2024.

**C.     The Overlap Between the CCAC and the Settled Rule 23(b)(3) Action**

   1.     *The Putative Class in the CCAC Overlaps with the Rule 23(b)(3) Settlement Class*

Rather than conforming the consolidated class definition to the initial complaints that properly excluded released claims, the Plaintiffs proposed a class in the CCAC that includes Rule 23(b)(3) Settlement Class members. Specifically, the proposed class includes: "[a]ll persons, businesses, and other entities in the United States and its territories that have incurred fees for debit routing services during the period from January 1, 2012, through the present, imposed by Visa." CCAC ¶ 236. Entities that "incurred fees for debit routing services . . . imposed by Visa" from January 1, 2012 forward includes entities that accepted "Visa-Branded Cards"—as that term is defined in the Settlement Agreement, *see supra* at 3 n.3—before January 25, 2019. The proposed class thus sweeps in millions of merchants that released claims as members of the Rule 23(b)(3) Settlement Class. Plaintiffs' proposed class representatives in the CCAC also include members of the Rule 23(b)(3) Settlement Class: Yabla alleges that it

"accepted debit payments routed on Visa's network starting in 2005," and R&N Productions alleges that it "accepted debit payments routed on Visa's network starting in 2013." *Id.* ¶¶ 30, 33.

### 2. *The CCAC Arises from the Same Predicate Facts as the Settled Action*

The CCAC asserts claims arising out of the same debit transactions on Visa's network that are covered by the Release. *Compare* CCAC ¶ 236 (proposed class includes merchants that incurred fees on Visa debit transactions from January 1, 2012 through the present), *with supra* at 3 (Release extends to transactions through August 8, 2028). And the CCAC asserts that Visa exercised market power in allegedly imposing supracompetitive fees—interchange and network fees—with respect to those transactions covered by the Release. Settlement Agreement ¶¶ 3(z), 31(b)(i)–(ii) (releasing claims based on "interchange fees" and "Merchant Fees," which include "network fees"); *compare, e.g.*, CCAC ¶ 22 ("Leveraging its market power, Visa imposes high fees . . . at the expense of merchants"),[8] *with* TAC ¶ 1 (Visa's "anticompetitive conduct has caused . . . Merchants to pay . . . significant overcharges on Visa . . . branded . . . Debit Card transactions.").

A side-by-side comparison of facts alleged in the CCAC against those alleged in the MDL 1720 actions and enumerated in the Release demonstrates this overlap:

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| **Overview** ||
| "Visa imposes supracompetitive fees on merchants through their acquiring banks, who . . . charge those fees through to merchants." CCAC ¶ 5. | "Defendants' anticompetitive conduct has caused . . . Merchants to pay . . . significant overcharges on Visa . . . branded . . . Debit Card transactions." TAC ¶ 1. |

---

[8]    *See also* CCAC ¶¶ 221–25, 227, 260, 268, 275, 282.

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| Visa "imposes high fees" and "harm[s] . . . merchants in the form of higher fees." *Id.* ¶ 22; *see also id.* ¶¶ 221–25, 227, 260, 268, 275, 282. | "Defendants . . . impose . . . supracompetitive . . . prices . . . in the . . . 'Debit-Card Relevant Markets.'" *Id.* ¶¶ 4, 9(ii). |
| **Class Transactions—Settlement Agreement ¶ 4 (Class Definition)** | |
| Merchants using "debit routing services during the period from January 1, 2012, through the present" with "fees . . . imposed by Visa." CCAC ¶ 236. | "[M]illions of Merchants that have accepted and currently accept Visa . . . Debit Cards." TAC ¶ 4. |
| **Interchange Fees—Settlement Agreement ¶ 31(b)(i) ("Interchange Fees")** | |
| Merchants must pay interchange "[t]o obtain debit acceptance services." CCAC ¶ 60.<br><br>Visa "charges punitively expensive rack rates (listed pricing for . . . interchange), which are divorced from Visa's incremental costs, to merchants or acquirers that refuse to sign routing agreements [with Visa]." *Id.* ¶ 94.<br><br>"[M]erchants and acquirers that make a routing commitment to Visa receive substantial . . . interchange . . . concessions, but *only if* they meet their volume commitment." *Id.* ¶ 99.<br><br>"Visa sometimes uses credit interchange discounts to win debit routing." *Id.* ¶ 98. | "The Durbin Amendment was intended to lower Merchants' costs of accepting Payment Cards and also to provide some competition at the point-of-sale, such that Debit-Card Networks would have an incentive to lower their Interchange Fees in order to incent Merchants to route Debit-Card transactions over their Networks." TAC ¶ 270.<br><br>"Visa . . . continued to impose uniform schedules of Default Interchange Fees even after the Durbin Amendment sought to cabin those fees," certain of "the fees continue at their pre-Durbin supracompetitive levels," and "Visa . . . impose[s] Default Interchange Fees . . . regardless of whether it . . . could [charge] those fees based on costs." *Id.* ¶ 293. |
| **Network Fees—Settlement Agreement ¶¶ 3(z), 31(b)(ii) ("Merchant"/"network fees")** | |
| "Visa imposes two main types of [network] fees . . . per-transaction fees and fixed fees." CCAC ¶ 58.<br><br>"Visa's network fees are generally much higher than those of PIN networks." *Id.*<br><br>"[S]ince 2012, Visa has also imposed . . . the Fixed Acquirer Network Fee (FANF)." *Id.* | "The majority of Visa . . . revenues are derived from fees . . . charge[d] to] Member Banks." TAC ¶ 106; *see also id.* ¶ 107.<br><br>"In April 2012, Visa implemented a fixed fee known as the Fixed Acquirer Network Fee or 'FANF,'" which "the Merchant must pay . . . to 'access' Visa's Networks" if it "accepts any Visa Payment-Card transactions, Credit or Debit." *Id.* ¶ 262. |

10

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| "[M]erchants pay these fees, typically through acquirers."  *Id.* ¶ 60.<br><br>"Visa introduced the FANF in 2012 in response to threats of increased competition following the 2011 implementation of the Durbin Amendment"; "Visa has raised FANF twice in subsequent years."  *Id.* ¶ 107.<br><br>Without "significant volume commitments" to Visa, "merchant clientele face . . . punitively high network fees."  *Id.* ¶ 6; *see also id.* ¶ 94.<br><br>"Visa charges over $7 billion in network fees on United States debit volume annually, earning Visa $5.6 billion in net revenue."  *Id.* ¶¶ 83–84. | "The imposition of FANF represent[ed] a significant, unilateral price increase by . . . Visa without any commensurate benefit to Merchants or Cardholders."  *Id.* ¶ 262.<br><br>"Defendants . . . reap outsized profits."  *Id.* ¶ 273.<br><br>"In response to the Durbin Amendment, Visa implemented . . . the FANF"—"nothing more than a substantial price increase on merchants."  7-Eleven Compl. ¶ 203.[9]<br><br>As a result of FANF, "Visa . . . gain[ed] debit routing agreements with merchants that could not (and cannot) be matched by the competition . . . ."  *Id.* ¶ 204. |

The factual overlap does not end there:  it extends to Visa's conduct that supposedly led to the imposition of supracompetitive fees on debit acceptance and transactions.  The CCAC alleges that Visa "has unlawfully entrenched its monopoly by using a multi-faceted exclusionary strategy to stifle competition and innovation in the United States debit market" following the Durbin Amendment.  CCAC ¶ 2.  It alleges that "Visa has been able to leverage its market dominance" by entering into routing agreements with merchants and acquirers with "significant volume commitments"; "paying [issuers] to take actions that limit merchants and acquirers' ability to route payments to PIN networks, for instance by getting issuers to agree not to enable PINless routing"; and "t[aking] deliberate action to prevent emerging technologies from contesting Visa's control over debit transactions," limiting competition with other debit networks

---

[9]    Fifth Am. Compl., *7-Eleven, Inc. v. Visa Inc.*, No. 13-cv-5746 (E.D.N.Y. Oct. 27, 2017), Dkt. 119 ("7-Eleven Compl.").

and potential new entrants, such as digital wallet platforms using ACH as an alternative to Visa's debit network. *Id.* ¶¶ 6–7, 14–15, 18, 88.

The TAC and other MDL 1720 complaints likewise allege that Visa frustrated the Durbin Amendment through the same combination of conduct:

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| **Overview** | |
| Visa "has unlawfully entrenched its [debit] monopoly by using a multi-faceted exclusionary strategy to stifle competition and innovation." CCAC ¶ 2.<br><br>"Durbin Amendment was enacted with the purpose of increasing competition among debit networks." *Id*. ¶ 14.<br><br>"Visa has been able to leverage its market dominance despite Congress's explicit efforts to open the markets." *Id*. ¶ 14.<br><br>"Visa reacted to the Durbin Amendment by leveraging its control over huge numbers of non-contestable transactions." *Id*. ¶ 15.<br><br>"Acquiring banks . . . frequently have only one option for routing a debit transaction." *Id*. ¶ 6.<br><br>"Visa maintains its monopoly in debit against smaller competitors like PIN networks." *Id*. ¶ 88. | "[The Durbin Amendment] legislation . . . threatened to disrupt Visa['s] dominant position in the [debit] market." TAC ¶ 1.<br><br>"Durbin Amendment was intended to lower Merchants' costs . . . and . . . provide some competition." *Id*. ¶ 270.<br><br>"Defendants engaged in additional anticompetitive conduct to thwart industry reforms intended to benefit competition." *Id*. § VIII.L.<br><br>"Visa . . . leveraged . . . dominance in Credit Cards to become the dominant Debit-Card Networks." *Id*. § VIII.C.<br><br>"The threat to Visa's monopoly was exacerbated by competing PIN Debit Card networks' development of 'PINless' Debit," which can "expand significantly the number of transactions routed to Visa's . . . network competitors." *Id*. ¶ 272.<br><br>Visa "frustrat[ed] . . . the stimulation of real competition to Visa's [debit] monopoly." *7-Eleven* Compl. ¶ 231.<br><br>*In re Payment Card*, 729 F. Supp. 3d 298, 311 (E.D.N.Y. 2024) ("Plaintiffs highlight several of Visa's post-Durbin policies and argue that these policies were intended to maintain Visa's debit monopoly.") |

12

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| **Issuer Agreements—Settlement Agreement ¶ 31(b)(vi)(B) (agreements with banks)** | |
| "Visa . . . locks up issuers by paying them to . . . limit merchants and acquirers' ability to route payments to PIN networks, for instance by . . . agree[ing] not to enable PINless." CCAC ¶ 88; *see also id*. ¶¶ 112–13, 121.<br><br>"Visa uses its monopoly power to induce issuers to limit the enablement of rival networks on their Visa-branded debit cards." *Id*. ¶¶ 108–09.<br><br>"Visa has nearly 1,000 issuing contracts that . . . deter the issuer putting more debit networks on the back of the card." *Id*. ¶ 110. | "[T]o support its post-Durbin monopolization strategy, Visa entered into agreements with Issuers to incent or require them not to implement PINless Debit from PIN Debit Card networks, such as STAR and PULSE." TAC ¶ 272.<br><br>Visa's "ability to thwart competition by preventing the competitive routing options that should have been available to Merchants as a result of the Durbin Amendment . . . illustrates [Visa's] market power in [the alleged debit] market." *Id*. ¶ 404. |
| **Acquirer and Merchant Agreements—Settlement Agreement ¶¶ 31(b)(iii) ("routing" related conduct), 31(b)(vi)(B) (agreements with banks)** | |
| Visa entered into "agreements to punish businesses that seek to use alternative networks or methods to process debit transactions," which "directly targets merchants, who Visa knows have no choice but to bear the cost of Visa's fees." CCAC ¶ 2.<br><br>"Visa imposes contractual rules and terms in its merchant and acquirer agreements that, as a practical matter, require merchants to route the vast majority of their debit transactions to Visa, rather than back-of-card networks like PIN networks and Maestro." *Id*. ¶ 75.<br><br>"Other debit networks are unable to compete for non-contestable transactions and often struggle to gain a significant share of transactions involving merchants bound by a Visa routing agreement." *Id*. ¶ 16. | "Visa entered into routing agreements with large Acquirers under which the Acquirers routed transactions nearly exclusively through Visa for transactions originating at merchants not already covered by Visa's individual merchant routing agreements." *7-Eleven* Compl. ¶ 204.<br><br>"Visa gained . . . debit agreements with merchants that could not (and cannot) be matched by the competition." *Id*.<br><br>*See also In re Payment Card*, 729 F. Supp. 3d at 311–12 (summarizing claims based on Visa's merchant and acquirer routing agreements). |

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
| **Mobile, In-App, eCommerce, Digital Wallets, and Tokenization— Settlement Agreement ¶ 31(b)(iii) ("favoring or steering . . . to use certain payment systems," "routing" and "acceptance technology for mobile, e-commerce, or online payments, or . . . tokenization")** | |
| "Visa also took deliberate action to prevent emerging technologies from contesting Visa's control over debit transactions." CCAC ¶ 18. | "[T]echnology threatened to disrupt Visa['s] dominant position in the [debit] market." TAC ¶ 1. |
| "Card-not-present transactions may be effectively non-contestable if they are tokenized, an encryption technology used to facilitate some Visa-branded debit card transactions initiated online, in a mobile app, or with a digital wallet." *Id*. ¶ 76. | "Defendants . . . us[ed] . . . market power to . . . delay[] . . . implementation of more secure and less expensive (to the Merchant) payment technology." *Id*. ¶ 273. |
| | Visa "extended the abuse of its monopoly position to the mobile-payments." *Id*. ¶ 291. |
| "Visa has been concerned that fintech debit networks would displace Visa as an intermediary . . . of a debit transaction." *Id*. ¶ 142; *see also id*. ¶¶ 143–47. | "Visa . . . [did] not allow Merchants to route Debit-Card transactions to competing Networks for 'in-app' transactions." *Id*. ¶ 292. |
| "Visa Leveraged Its Debit Monopoly to Prevent PayPal and Others from Disintermediating Visa." *Id*. at 41 (Heading B); *see also id*. ¶¶ 148–55. | "Visa . . . cement[ed] its monopoly over Debit transactions conducted with a Mobile Device"—"commonly known as a 'Digital Wallet' or 'Mobile Wallet.'" *Id*. ¶ 294; *see also id*. ¶ 295 ("[D]igital wallets" include "Google Wallet" and "Apple Pay."). |
| "Visa Uses Its Leverage Over Its Potential Debit Competitors, Including Apple, Paying Them Not To Create or Promote Competitive Products." *Id*. at 45 (Heading C); *see also id*. ¶¶ 163–67. | |
| "Visa has also provided Apple with reduced merchant fees in exchange for Apple's commitment not to 'build, support, or introduce payment technologies that disintermediate Visa' or steer customers to third party payment methods such as ACH." *Id*. ¶ 166. | "Visa . . . does not allow Merchants routing on payments made through the Google Wallet," *id*. ¶ 299, or "on Apple's Apple Pay" and "secured Apple's adherence . . . by paying it fifteen basis points on . . . Apple Pay [transactions]," *id*. ¶ 300. |
| | "Visa's . . . scheme in the mobile-payments space also prevented . . . 'digital wallets' . . . from leveraging ACH networks . . . [as] a cost-effective alternative" such as "in Apple Pay." *Id*. ¶ 301. |
| "Visa has continued to condition its participation [in Apple Pay] on Apple maintaining its status as a non-competitor to Visa" since 2012. *Id*. ¶ 167. | "Visa has been plotting to block competition on mobile transactions since at least August |

14

| *In re Visa Debit* | *In re Payment Card* |
|---|---|
|  | 2012," as Visa "will not allow merchants to route to competing debit networks for 'in-app' purchases" and with "Apple Pay." *7-Eleven* Compl. ¶ 228; *see also In re Payment Card*, 729 F. Supp. 3d at 312 ("7-Eleven Plaintiffs challenge Visa's use of tokenization for card-not-present transactions, such as those made in an 'app.'"). |

## LEGAL STANDARD

This Court retained exclusive jurisdiction to enforce the Release in the Settlement Agreement.  Final Judgment ¶¶ 18, 20.  The Final Judgment further provides that all applications "with respect to any aspect of the Settlement Agreement" must be "presented to and determined by" this Court "for resolution as a matter within the scope of MDL 1720."  *Id*. ¶ 19; *see also* Dkt. 9314 at 16 n.19 (June 3, 2024) (redacted) ("Intuit/Square Order").

The Second Circuit has made clear that the Court "has the power to enforce an ongoing order . . . to protect the integrity of a complex class settlement over which it retained jurisdiction."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) (citation omitted) (affirming in part order granting motion to enforce class settlement agreement and dismissing complaint); *see also* All-Writs Act, 28 U.S.C. § 1651 (broadly empowering a district court to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law"); *In re Auction Houses Antitrust Litig.*, 2003 WL 1565950, at *2 (S.D.N.Y. Mar. 12, 2003) (granting motion to enforce class settlement agreement).  This power includes enjoining claims released under the Settlement Agreement, as incorporated in the Court's Final Judgment.  *See, e.g.*, *California v. IntelliGender, LLC*, 771 F.3d 1169, 1171–72, 1179–80 (9th Cir. 2014) (district court should have enjoined state plaintiff from pursuing claims

15

on behalf of individuals bound by a class action settlement); *cf. Old Jericho*, at *14 (applying Settlement Agreement release to claims that satisfy the "identical factual predicate" test).[10]

Likewise, the existence of factual disputes is no roadblock to enforcing the Final Judgment to compel the dismissal of released claims. As the Court previously explained, it is the fact-finder on a motion to enforce the Settlement Agreement. *See* Intuit/Square Order at 10 (*citing Serby v. First Alert, Inc.*, 664 F. App'x 105, 108–09 (2d Cir. 2016), and *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)).

## ARGUMENT

In a class action settlement, class members "may release claims that were or could have been pled in exchange for settlement relief." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). In particular, "[a] settled class action may release claims 'not presented directly in [the class action] complaint' if the subsequent claims are 'based on the identical factual predicate as that underlying the claims in the settled class action,'" provided that the released claims are adequately represented prior to settlement. *Old Jericho*, at *13 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011)); *see Wal-Mart Stores*, 396 F.3d at 106.

---

[10] Visa does not seek an injunction under Federal Rule of Civil Procedure 65. Rather, it seeks to enforce the Settlement Agreement and Final Judgment, as authorized by Paragraph 18 of the Final Judgment, by compelling Plaintiffs to dismiss their released claims. The traditional requirements for a Rule 65 preliminary injunction do not apply. *See In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985) ("[i]njunctions issued under the authority of the All-Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Fed. R. Civ. P. 65," and even a preliminary injunction under the All-Writs Act need "not comply with the requirements" of Rule 65); *In re Johns-Manville Corp.*, 27 F.3d 48, 49 (2d Cir. 1994) (same); *FTC v. Americans for Financial Reform*, 720 F. App'x 380, 383 (9th Cir. 2017) (All Writs Act injunction not required to satisfy the "dictates" of a "standard preliminary injunction"); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns").

"This rule of law serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Old Jericho*, at *13 (internal quotation marks and citation omitted). Indeed, "[p]arties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle." *In re Literary Works*, 654 F.3d at 247–48.

"Whether a class claim pleaded in a separate lawsuit is predicated on sufficiently similar facts as the class action claim to be barred by a class action settlement release is inherently an individualized, fact-specific [inquiry]." *Old Jericho*, at *13 (internal quotation marks and citation omitted). "Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Id.* (quoting *Wal-Mart Stores*, 396 F.3d at 106–07).

I.    **The Rule 23(b)(3) Settlement Agreement Release and Final Judgment Bar Members of the Rule 23(b)(3) Settlement Class from Pursuing Claims in the CCAC**

A.    **The CCAC Asserts Claims Arising from Identical Predicate Facts as Those Underlying the Rule 23(b)(3) Settlement Agreement**

The Release applies to every Visa debit transaction at a merchant that is a member of the Rule 23(b)(3) Settlement Class—from the beginning of the putative class period in *In re Visa Debit* until August 8, 2028. *See* Background §§ A at 3, C.1 at 8, C.2 at 9. Membership in the *In re Visa Debit* class is based on the merchant having "incurred fees . . . imposed by Visa." CCAC ¶ 236. Those are the same interchange fees and network fees to which the Release extends. *See* Settlement Agreement ¶ 31(b)(i)–(ii); *see also* Background §§ A at 5–6, C.2 at 9–11. Therefore, to prevail in *In re Visa Debit*, the CCAC Plaintiffs will need to prove the same factual predicate as that underlying the settled litigation—*i.e.*, that Visa, in fact, exercised market power to impose

17

supracompetitive interchange and network fees regarding the same debit transactions. *Compare, e.g.*, TAC ¶ 1 ("[Visa's] anticompetitive conduct has caused a nationwide class of Merchants to pay, and continue to pay, significant overcharges on Visa . . . branded . . . Debit Card transactions."), *with* CCAC ¶ 5 ("Visa imposes supracompetitive fees on merchants.").

This Court's decision in *Old Jericho* is instructive on this point. There, this Court found that Old Jericho and plaintiffs in the Rule 23(b)(3) action both "allege that they are harmed by Defendants' imposition of supracompetitive interchange fees," and those common predicate facts were sufficient to satisfy the "identical factual predicate test." *Old Jericho*, at *14. After comparing the two complaints' allegations, the Court concluded that Old Jericho's claims "depend on fundamentally the same facts" about payment card transactions as the Rule 23(b)(3) litigation. *Id*. Here, too, a review of the CCAC's allegations demonstrates that the CCAC also depends on the same fundamental facts about payment card transactions as the Rule 23(b)(3) action. *Compare* CCAC ¶ 48, *with* TAC ¶ 90, and *Old Jericho*, at *14.[11]

In addition to the overlapping alleged damages and transactions at issue, the CCAC challenges the same conduct in the same debit markets that has been litigated (or at a minimum could have been litigated) in the TAC and the other MDL 1720 Actions covered by the Rule 23(b)(3) Release. *See* Background §§ A at 4, C.2 at 11–15; Settlement Agreement ¶¶ 3(a), 31(a).

---

[11]    In *In re Visa Debit*, Visa moved to dismiss non-released Sherman Act damages claims under *Illinois Brick* because, unlike the actions in MDL 1720, the CCAC alleges that merchants directly purchase services from acquirers that are different from network services that Visa sells, and that the challenged fees Visa charges to acquirers for its network services (*i.e.*, interchange fees and network fees) are passed through by acquirers as part of the bundle of different services acquirers sell to merchants. *See In re Visa Debit,* Dkt. 115, at 3–4, 7, 8–11. Indeed, the CCAC includes *Illinois Brick* repealer state law claims, in addition to Sherman Act damages claims. This type of distinction is irrelevant for purposes of the identical factual predicate doctrine. As this Court held in *Old Jericho*, whether a plaintiff's claim is characterized as a "direct" or "indirect" purchaser is irrelevant to whether the claim arises from the same predicate facts as those underlying the Release. *See Old Jericho*, at *14.

At the highest level, the CCAC, TAC, and other MDL 1720 actions all challenge Visa's conduct in debit markets following the Durbin Amendment.  *Compare* TAC ¶¶ 1, 270, *with* CCAC ¶ 14; Background § C.2 at 11–15.  The combination of conduct challenged in the CCAC is the same as conduct underlying claims resolved in the Rule 23(b)(3) Settlement Agreement.  *See id*.

For example, the complaints each point to Visa's Fixed Acquirer Network Fee ("FANF") as an example of Visa's alleged power to raise prices.  *Compare* TAC ¶ 262, *with* CCAC ¶¶ 58, 107; *see also* Settlement Agreement ¶ 31(b)(ii).  They similarly allege that Visa limited unaffiliated networks enabled on debit cards and disincentivized issuers from enabling PINless to limit merchant routing options.  *Compare* TAC ¶¶ 272, 404, *with* CCAC ¶¶ 76, 108–10; *see also* Settlement Agreement ¶¶ 31(b)(iii), (vi)(B).  They recite Visa's alleged conduct with respect to mobile payments, e-commerce payments, and digital wallets—claiming that Visa limited routing to, or otherwise prevented merchants from leveraging, other debit card networks or alternative payment methods (e.g., ACH in digital wallets).  *Compare* TAC ¶¶ 292, 299–300, 333, *with* CCAC ¶¶ 76, 152, 154, 162, 166; *see also* Settlement Agreement ¶ 31(b)(iii).  And the CCAC and the MDL 1720 Actions challenge routing agreements with acquirers and merchants. *Compare* 7-Eleven Compl. ¶ 204, *and In re Payment Card*, 729 F. Supp. 3d at 311–12, *with* CCAC ¶¶ 2, 15, 75; *see also* Settlement Agreement ¶ 31(b)(iii).

At bottom, proof of liability against Visa in the CCAC involves the same set of facts at issue in the Actions in MDL 1720 and expressly enumerated in the Release.  Thus, at the time of the Settlement Agreement, future suits challenging Visa's conduct were "foreseeably obvious to notified class members":  those class members needed to look no further than (i) the suits then-pending in MDL 1720 challenging Visa's conduct in the alleged debit markets and (ii) the Settlement Agreement itself.  *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d

Cir. 1982).  Ultimately, the CCAC amounts to "just another expression of [merchants'] belief" that Visa has a monopoly in the debit industry that allegedly harms merchants.  *See In re WorldCom, Inc. Sec. Litig.*, 2007 WL 1946685, at *6 (S.D.N.Y. July 5, 2007) (holding that individual "complaint [wa]s just another expression of their belief that they should have been warned that the publicly disclosed information about WorldCom was unreliable and that their WorldCom holdings were a riskier investment than they understood at the time").

Moreover, given that the two complaints allege the same damages from interchange fees and network fees based on the same transactions arising from the same conduct, the identical factual predicate test is met regardless of any differences in the legal theories on which the complaints rely.  In *Wal-Mart Stores*, the Second Circuit affirmed the enforcement of a class release against a parallel class asserting a different theory of liability (group boycott claim instead of the *Wal-Mart Stores*' tying claim) but nevertheless seeking damages based on alleged overcharges of the same fees assessed on the same transactions.  *See* 396 F.3d at 101, 104, 107–08.  Similarly, in *In re WorldCom*, the court found that subsequent plaintiffs' claims were barred by a class release because plaintiffs were "seeking to recover for losses sustained through their investments in WorldCom securities"—*i.e.*, the same transactions formed the basis of the claims in both cases.  *See* 2007 WL 1946685, at *6.  The court rejected the argument that the "Release is overly broad in that it releases claims 'that were never investigated nor prosecuted against the released parties.'"  *Id.* at *7; *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 272 F. App'x 9, 13 (2d Cir. 2008) (enforcing release against subsequent case seeking comparable damages on same investment transactions).

This is not a situation like *In re Lehman Bros. Securities & Erisa Litigation*, 2012 WL 2478483, at *6 (S.D.N.Y. June 29, 2012), where "none of the[] factual allegations" in the settled

class action "[we]re involved in the [new] claims," which new claims required proof of "entirely different facts." Here, both the CCAC Plaintiffs and the Rule 23(b)(3) Settlement Class assert that Visa exercised market power to impose supracompetitive interchange and network fees on the same debit transactions and did so through the same combination of conduct. Moreover, the Settlement Agreement expressly prohibits class members from suing Visa again for substantially similar conduct affecting "interchange fees" and "Merchant Fees." Settlement Agreement ¶¶ 31(b)(i)-(ii).

### B.    Plaintiffs Cannot Credibly Claim the CCAC Arises from Facts That Were Not or Could Not Have Been Litigated in MDL 1720

During the parties' meet and confer prior to this motion, Plaintiffs' counsel admitted that there is at least "some partial overlap of the relevant facts (i.e., Visa's conduct in the debit market) underlying each case," but they disputed that the two cases "depend upon the very same set of facts" because the CCAC includes certain "additional" facts. Plaintiffs cannot avoid the Release by claiming that the CCAC includes a few facts that post-date the Settlement Agreement. Any facts in the CCAC that may post-date January 25, 2019, by definition, cannot have caused overcharges on debit transactions prior to that date. Rule 23(b)(3) class members settled on the basis of their acceptance of Visa's cards and Visa's conduct through January 25, 2019, and the continuation of "substantially similar" conduct through August 8, 2028. *See* Settlement Agreement ¶ 31(b). Those are the merchants subject to the Release. Merchants that first began accepting Visa-branded cards after January 25, 2019 (i.e., those that are *not* Rule 23(b)(3) class members) are not subject to the Release and not addressed by this motion, as noted above.

Plaintiffs cannot identify new facts that give rise to their claim against Visa that are not "substantially similar to those [facts] . . . in place as of" January 25, 2019 in any event. *See*

Settlement Agreement ¶ 31(c).  As this Court held in approving the Release of future conduct here, "releases are acceptable where the future claims are those based on a continuation of conduct at issue."  *In re Payment Card*, 2019 WL 6875472, at *25 (analyzing precedent).  To the extent the CCAC contains allegations of post-January 2019 facts, those allegations are nothing more than the continuation of substantially similar conduct at issue prior to that date.  *See, e.g.*, CCAC ¶¶ 122 (Visa entered into more "routing deals" and "renew[ed] issuing agreements"), 154 (new agreement with PayPal that "preserv[es]" old agreement's "preference [of] Visa . . . over other competitive alternatives"), 167 ("Visa has continued to condition its participation [in Apple Pay] on Apple maintaining its status as a non-competitor to Visa" allegedly contained in 2012 agreement), 132 (Visa waived a provision in a longstanding agreement with Chase), 133 ("Chase enter[ed] a debit routing agreement").

Tellingly, the CCAC makes no attempt to allege any theory of liability based solely on new facts after January 25, 2019.  Nor does it attempt to differentiate claims of Rule 23(b)(3) class members from those of non-class members.  To the contrary, it alleges:

- "Visa's anticompetitive conduct is applicable to all members of the Class;"

- "Plaintiffs' claims are typical of the claims of the Class members";

- "Plaintiffs and all members of the Class are similarly affected by Visa's unlawful conduct";

- "Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of other members of the Class";

- "Plaintiffs' interests are coincident with and typical of . . . those of other members of the Class"; and

- "Visa's anticompetitive conduct impacts members of the Class generally."

CCAC ¶¶ 241, 244–45, 247.

*      *      *

Visa paid billions of dollars for peace with the Rule 23(b)(3) Settlement Class—peace that resolved all claims actually brought, or that could have been brought, against Visa based on fees on, and conduct related to, debit transactions at merchants that are members of the Rule 23(b)(3) Settlement Class. For "purposes of clarity" on this issue, the Rule 23(b)(3) parties specifically enumerated categories of conduct that were part of the predicate facts underlying the claims being released. *See* Settlement Agreement ¶ 31(b); *In re Payment Card*, 330 F.R.D. at 47 (holding that release "terms . . . comport with the . . . identical factual predicate test"); *In re Payment Card*, 2019 WL 6875472, at *25 (finding "in this case" that "the released claims are based on the 'identical factual predicate' of the action at issue"). The claims in the CCAC being asserted by or on behalf of members of the Rule 23(b)(3) Settlement Class are predicated on these same basic facts: *e.g.*, their allegations about alleged overcharges on interchange fees and network fees are predicate facts covered by Release paragraphs 31(b)(i) and (ii); their allegations regarding routing, routing agreements, and routing to alternative networks like ACH on digital wallets are predicate facts covered by Release paragraph 31(b)(iii); and their allegations about acquirer routing agreements' and issuer agreements' effects on routing and PINless enablement are predicate facts also covered by Release paragraph 31(b)(vi)(B). Plaintiffs' claims in the CCAC are therefore subject to the Release. This Court should enforce the Release and Final Judgment now. *Cf. Wal-Mart Stores*, 396 F.3d at 106 ("Practically speaking '[c]lass action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.'" (quoting *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 254 (2d Cir. 2001)).

## II.    Plaintiffs Were Adequately Represented in the Rule 23(b)(3) Class

When evaluating the "scope of a settlement release" to be applied to subsequent plaintiffs, courts also consider "adequacy of representation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 341 (S.D.N.Y. 2005). "Adequate representation of a particular claim is

established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Wal-Mart Stores*, 396 F.3d at 106–07. The relevant inquiry for determining adequacy of representation is "whether the class representatives 'possess the same interest and suffer the same injury as the class members,' and whether Class Counsel advanced those interests"—*not* whether the class advanced every possible claim or legal theory. *Old Jericho*, at *15 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)).

Here, adequacy of representation does not appear in dispute. The interests of Plaintiffs Yabla and R&N Productions—as well as Rule 23(b)(3) Settlement Class members that are putative absent class members in the CCAC—are aligned with the interests of the Rule 23(b)(3) Settlement Class and were adequately advanced. "Regardless of the legal theory that [] Plaintiffs advance, . . . they seek redress for the same injury for which Class Counsel has continued to seek recovery: harm resulting from [Visa's] anticompetitive conduct." *Id*. Each Rule 23(b)(3) Settlement Class member that is also a member of the putative CCAC class is entitled to receive "a *pro rata* share of the monetary fund," demonstrating that the Rule 23(b)(3) class representatives and class counsel advanced the interests of each Rule 23(b)(3) Settlement Class member to recover an amount commensurate with each member's purported damages and the claims released. *See In re Payment Card*, 2019 WL 6875472, at *17–19 (finding adequacy of representation). Class counsel "analyz[ed] more than 60 million pages of documents and participat[ed] in more than 550 depositions" to "carefully investigate[] and analyze[] the facts and underlying events relating to the subject matter of their claims." Settlement Agreement at 3. And, to the extent Rule 23(b)(3) Settlement Class members released any claims not specifically pled in the Rule 23(b)(3) litigation, that "was part of the consideration necessary to obtain" the settlement and "did not violate due process." *Wal-Mart Stores*, 396 F.3d at 113.

## CONCLUSION

For the foregoing reasons, Visa respectfully requests that this Court enforce the Settlement Agreement and Final Judgment by issuing an injunction under the All-Writs Act and the Court's inherent authority to compel Plaintiffs in *In re Visa Debit* to dismiss Plaintiffs Yabla and R&N Productions and to amend the proposed class definition in the CCAC to exclude entities that accepted Visa- or Mastercard-branded cards prior to January 25, 2019.

Dated:  March 28, 2025                    Respectfully submitted,


                                          **ARNOLD & PORTER KAYE SCHOLER
                                          LLP**

                                          */s/ Matthew A. Eisenstein*
                                          Anne P. Davis
                                          Matthew A. Eisenstein
                                          Rosemary Szanyi
                                          601 Massachusetts Avenue, NW
                                          Washington, DC 20001-3743
                                          (202) 942-5000
                                          anne.davis@arnoldporter.com
                                          matthew.eisenstein@arnoldporter.com
                                          Rosemary.Szanyi@arnoldporter.com

                                          Robert J. Vizas
                                          Three Embarcadero Center, 10th Floor
                                          San Francisco, CA 94111-4024
                                          (415) 471-3100
                                          robert.vizas@arnoldporter.com

                                          **HOLWELL SHUSTER & GOLDBERG LLP**

                                          Michael S. Shuster
                                          Demian A. Ordway
                                          Blair E. Kaminsky
                                          425 Lexington Avenue
                                          New York, NY 10017
                                          (646) 837-5151
                                          mshuster@hsgllp.com
                                          dordway@hsgllp.com
                                          bkaminsky@hsgllp.com

                                          *Counsel for Defendant Visa Inc.*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I caused a true and correct copy of the foregoing to be served on all counsel of record in the above-referenced action via Lexis Nexis File&Serve, and via email on Plaintiffs' counsel in *In re Visa Debit Card Antitrust Litigation*, No. 1:24-cv-07435 (S.D.N.Y.), in accordance with the parties' prior agreement.


*/s/ Matthew A. Eisenstein*
Matthew A. Eisenstein