UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

**MEMORANDUM & ORDER**
05-MD-1720 (MKB)

This document refers to: ALL ACTIONS

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On May 29, 2025, Defendant Visa Inc. ("Visa") moved to enforce the Rule 23(b)(3)

Class Settlement Agreement and for an injunction pursuant to the All Writs Act, seeking an order

"compelling members of the Rule 23(b)(3) Settlement Class to dismiss related claims in a

separate action entitled *In re Visa Debit Card Antitrust Litigation*, No. 24-CV-7435 (S.D.N.Y.)

("*In re Visa Debit*")."[1]  (Def.'s Mem. 1.)  The *In re Visa Debit* Plaintiffs (the "*Visa Debit*

Plaintiffs") opposed the motion.[2]

For the reasons discussed below, the Court denies Defendant's motion.

## I.    Background

The Court assumes familiarity with the facts and extensive procedural history as set forth

in prior decisions.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986

F. Supp. 2d 207 (E.D.N.Y. 2013) (*Interchange Fees I*), *rev'd and vacated*, 827 F.3d 223 (2d Cir.

2016) (*Interchange Fees II*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust*

---

[1]  (Def.'s Mot. to Enforce the Rule 23(b)(3) Class Settlement Agreement and Final J. ("Def.'s Mot."), Docket Entry No. 9623; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 9624; Def.'s Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 9626.)

[2]  (Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Opp'n"), Docket Entry No. 9625.)

*Litig.*, 330 F.R.D. 11 (E.D.N.Y. 2019) (*Interchange Fees III*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 714 F. Supp. 3d. 65 (E.D.N.Y. 2024) (*Interchange Fees IV*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 1014159 (E.D.N.Y. Feb. 22, 2024) (*Interchange Fees V*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 729 F. Supp. 3d. 298 (E.D.N.Y. 2024) (*Interchange Fees VI*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024) (*Interchange Fees VII*); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614 (E.D.N.Y June 28, 2024) (*Interchange Fees VIII*).  The Court provides only a summary of the pertinent issues.

### a.    Procedural history

#### i.    Procedural history of the Rule 23(b)(3) Class

In October of 2005, several complaints asserting similar antitrust claims against Visa, Mastercard, and various issuing banks were consolidated for pretrial purposes and transferred to the Eastern District of New York, where they were joined by other similar cases.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2008 WL 115104, at *1 (E.D.N.Y. Jan. 8, 2008).  The consolidated cases included both class actions and individual actions.  *Id.*  In April of 2006, plaintiffs in the putative class actions ("Class Plaintiffs") filed a consolidated amended class complaint that defined two classes: one seeking damages and the other seeking equitable relief.  *Id.* at *1–2.  In November of 2012, the Court provisionally certified a class and preliminarily approved a class settlement agreement between Class Plaintiffs and Defendants.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2012 WL 12929536, at *1–2 (E.D.N.Y. Nov. 27, 2012).  In 2013, the Court approved the settlement, *Interchange Fees I*, 986 F. Supp. 2d at 241, but, in 2016, the Second Circuit

vacated certification of the class and reversed approval of the settlement, *Interchange Fees II*, 827 F.3d at 240.[3]

In November of 2016, the Court appointed counsel to two putative classes under Rule 23(b)(2) (the "Equitable Relief Class") and Rule 23(b)(3) (the "Damages Class"). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2016 WL 8138988, at *1 (E.D.N.Y. Nov. 30, 2016). In December of 2019, the Court granted final approval to a settlement agreement between Defendants and the Damages Class (the "Settlement Agreement"). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472, at *36 (E.D.N.Y. Dec. 16, 2019). The Settlement Agreement defines the Settlement Class as "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [of January 24, 2019]." (Settlement Agreement ¶ 4, annexed to Rule 23(b)(3) Class Pls.' Mot. for Class Settlement Preliminary Approval as Ex. 1, Docket Entry No. 7257-2.) The Settlement Agreement further provides that each class member who files a claim will receive a *pro rata* share of the settlement fund "in accordance with the relative economic interests of the [class member] as measured by the Interchange Fee amounts attributable to their Visa- and Mastercard-Branded Card transactions during the Class Period." (*Id.* § I-2.) In addition, each class member would release specified claims against the Defendants (the "Release"). (*Id.* ¶ 31(a).) The Release specified that members of the Settlement Class would release "any claims arising out of or relating to" the allegations of the Class, (*id.* ¶ 31(b)), including as to "any interchange fees, interchange rates, or

---

[3] The case was reassigned to the undersigned on December 17, 2014. (Order Reassigning Case, Docket Entry No. 6359.)

any Rule of any Visa Defendant or Mastercard Defendant relating to interchange fees," (*id.* ¶ 31(b)(i)), "any . . . 'honor all cards' rules . . . [or] rules or conduct relating to routing options regarding acceptance technology for mobile, e-commerce, or online payments, or development and implementation of tokenization standards," (*id.* ¶ 31(b)(iii)).  It further specified that reference to these rules "mean[t] those rules as they are or were in place on or before the Settlement Preliminary Approval Date and rules in place thereafter that are *substantially similar*."  (*Id.* ¶ 31(c) (emphasis added).)

In March of 2023, the Second Circuit affirmed in all material respects the Court's decision certifying the Settlement Class and approving the Settlement Agreement.  *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023).  In relevant part, the Court affirmed that the class was sufficiently ascertainable, because "[t]he only relevant inquiry is whether determinations as to class membership are 'objectively *possible*.'"  *Id.* at 717 (citation omitted).  The Second Circuit also affirmed the Court's decision to refer any disputes over class membership to a special master, subject to *de novo* review by this Court.  *Id.* at 719.

### ii.   Procedural history of the *In re Visa Debit* action

In November of 2024, Judge John G. Koeltl consolidated several cases asserting similar antitrust claims against Visa in the Southern District of New York, where they were joined by other related cases for pretrial purposes.  (*See* Order Granting Plaintiffs' Motion for Consolidation, *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Nov. 26, 2024), Docket Entry No. 35.)  Judge Koeltl noted that the plaintiffs "in each case seek to represent classes of persons and other entities that have accepted Visa-branded debit cards or paid Visa's fees for debit card transaction routing services."  (*Id.* ¶ 3.)  In December of 2024, Judge Koeltl consolidated additional cases "asserting similar claims against defendant Visa Inc. for engaging in the same

4

alleged misconduct but on behalf of cardholders" rather than on behalf of merchants. (*See* Order Granting Cardholder Plaintiffs' Motion for Consolidation, *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Dec. 16, 2024), Docket Entry No. 37.) In the Consolidated Class Action Complaint, *Visa Debit* Plaintiffs allege that "Visa has unlawfully entrenched its monopoly" in the debit network "by using a multi-faceted exclusionary strategy to stifle competition and innovation in the United States debit market, resulting in enormous financial harms" to merchants and cardholders. (Consolidated Class Action Compl. ("CCAC") ¶ 2, *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Dec. 16, 2024), Docket Entry No. 38.) On February 24, 2025, Defendant filed a letter requesting a stay of litigation as to two putative class action representatives, Yabla, Inc. and R&N Productions LLC d/b/a/ SewRobQnE, as well "as to all released claims asserted by the card-acceptor Plaintiffs." [4] (*See* Consent Mot. for Partial Stay of Litigation, *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Feb. 24, 2025), Docket Entry No. 108.) Defendant argued that "some of the claims the card-acceptor plaintiffs have asserted" violate the release in the Rule 23(b)(3) Settlement Agreement, which released all claims asserted by or on behalf of entities that accepted Visa-branded cards from January 1, 2004 to January 25, 2019. (*Id.* at 1–3.) Defendant argued that the Court "retains exclusive jurisdiction to resolve the scope of the release claims under the [Settlement Agreement]," and indicated that they planned move to enforce the Settlement Agreement with the Court. (*Id.* at 2.) Judge Koeltl granted the stay. (Order granting Consent Mot. for Partial Stay of Litigation, *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Feb. 24, 2025), Docket Entry No. 110.)

---

[4] On February 24, 2025, Defendant moved to dismiss the *Visa Debit* Cardholder Plaintiffs' claims. (Mot. to Dismiss Pls.' Am. Consolidated Cardholder Compl., *In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Feb. 24, 2025), Docket Entry No. 112.) While the motion is pending before Judge Koeltl, the parties are proceeding with discovery.

        **b.    Factual background**

Typically, merchants who wish to accept payment cards enter into agreements with acquiring banks ("Acquirers").[5]  Acquirers facilitate merchants' acceptance of payment cards by, among other things, providing the hardware necessary to accept payment cards, transmitting payment information across the payment card network (*e.g.*, Visa, Mastercard, American Express, or Discover), and settling funds received on behalf of merchants from issuing banks ("Issuers").  For these services, merchants pay a fee known as the "merchant discount fee" or "merchant discount," which is typically a per-transaction fee that includes the full amount of any applicable interchange fees and network fees, in addition to the Acquirer's own fees.  *See generally Interchange Fees V*, 2024 WL 1014159, at *4–5.

According to *Visa Debit* Plaintiffs, Visa accounts for more than 60% of all debit transactions in the United States, (CCAC ¶ 1), and "leverage[s] its monopoly power in non-contestable debit transactions to foreclose entry and competition in contestable debit transactions," (*id.* ¶ 21).  "Non-contestable transactions" are those "for which Visa has no competition," allowing Visa to "coerce [Acquirers] to enter into routing agreements or face high rack rates," which are "listed pricing for network fees and interchange" fees.  (*Id.* ¶¶ 15, 94.)  Rival networks "in contestable transactions" thus cannot "gain[] the necessary scale and network to compete" because many merchants are "bound by a Visa routing agreement."  (*Id.* ¶¶ 15–16.)  Visa "also took deliberate action to prevent emerging technologies from contesting Visa's control over debit transactions," including "offering incentives, sometimes worth hundreds of

---

      [5]  The background provided in this section is for the benefit of the reader and is drawn from, unless otherwise noted, the *In re Visa Debit* Consolidated Class Action Complaint ("CCAC").  (*See In re Visa Debit*, No. 24-CV-7435 (S.D.N.Y. Dec. 16, 2024), Docket Entry No. 38.)

millions of dollars annually, to . . . potential competitors [such as Apple Pay, PayPal, and Cash App] conditioned upon their agreement not to compete with Visa." (*Id.* ¶¶ 18–19.)  Visa also attempted to purchase at least one competitor, Plaid, which had "emerged as a likely competitor to Visa in the online segment of the domestic debit network." (*Id.* ¶ 20.)

## II.  Discussion

### a.  Standards of review

#### i.  Motion to enforce a settlement agreement

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  *Contant v. AMA Cap., LLC*, 66 F.4th 59, 66 (2d Cir. 2023) (quoting *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)); *see also In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 (2d Cir. 2014) (*In re WTC*) (citing *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)).  As a question of contract law, the court sits in diversity jurisdiction and "must apply the choice of law rules of the state in which it is located."[6] *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006) (citing *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999)); *see also Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024) ("We look to state law for guidance on contract interpretation principles." (citing *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 575 (2d Cir. 1983))); *Omega Eng'g*, 432 F.3d at 443 (applying "the substantive law of the forum state" to interpretation of settlement agreement); *Waldman ex rel. Elliot Waldman Pension Tr. v. Riedinger*, 423 F.3d 145 (2d Cir. 2005) (applying New York and Delaware law to dispute over interpretation of settlement agreement).

---

[6] The parties do not dispute that the Settlement Agreement provides that it "shall be governed, construed, enforced, and administered in accordance with the laws of the State of New York without reference to its conflict of laws principles."  (Settlement Agreement ¶ 79.)

In the context of enforcing settlement agreements, a court is empowered to find the facts necessary to determine the intent of the parties. *Serby v. First Alert, Inc.*, 664 F. App'x 105, 108–09 (2d Cir. 2016), *as amended* (Dec. 22, 2016) (finding term in settlement agreement ambiguous and remanding to district court "to consider and weigh the parties' extrinsic evidence as to the meaning of the" ambiguous term); *Collins*, 303 F.3d at 433–34 (finding term in settlement agreement ambiguous and remanding "for the trial court to consider and weigh extrinsic evidence to determine what the parties intended" (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 430 (2d Cir. 1992))).

### ii.    All Writs Act

"The All Writs Act authorizes federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Wyly v. Weiss*, 697 F.3d 131, 137 (2d Cir. 2012) (citation omitted) (quoting 28 U.S.C. § 1651(a)); *Higgins Ave., LLC v. Stathakis*, 711 F. App'x 54, 55 (2d Cir. 2017) (quoting *Wyly*, 697 F.3d at 137). "[W]hile the Act authorizes a federal court to issue commands that are 'necessary or appropriate to effectuate or prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained,' the remedies permitted under the Act are 'extraordinary.'" *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 130 (2d Cir. 2015) (citation omitted) (first quoting *Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Int'l Ass'n*, 157 F.3d 78, 82 (2d Cir.1998); and then quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 907 F.2d 277, 280 (2d Cir.1990)); *see Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-CV-7331, 2025 WL 1617460, at *1 (S.D.N.Y. June 6, 2025) ("The All Writs Act, 28 U.S.C. § 1651, authorizes a federal court 'to issue such commands . . . as may be necessary or appropriate to effectuate and

prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" (alteration in original) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985))); *United States v. Kaplan*, No. 23-CR-293, 2023 WL 5718901, at \*4 (E.D.N.Y. Sept. 5, 2023) ("The All Writs Act is a source of extraordinary relief and is not ordinarily called upon for routine matters." (citations omitted)); *see also Allen v. Koenigsmann*, No. 19-CV-8173, 2023 WL 6292648, at \*2 (S.D.N.Y. Sept. 27, 2023) ("The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999))). Injunctions issued under the All Writs Act must "be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Ronnie Van Zant, Inc. v. Cleopatra Records, Inc.*, 906 F.3d 253, 258 (2d Cir. 2018) (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985)).

### b. *Visa Debit* Plaintiffs are not bound by the Release

In order to rule on Defendant's motion, the Court must first determine whether the *Visa Debit* Plaintiffs are members of the Settlement Class.  The Court addresses that question before turning to the applicability of the Release.

### i. *Visa Debit* Plaintiffs are members of the Settlement Class

In construing the Settlement Agreement, as a contract, "the court's general objective should be to determine . . . the intention of the parties . . . from the language employed." *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1164 (2d Cir. 2024) (internal quotation marks omitted) (quoting *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 171–72 (1973)); *In re WTC*, 754 F.3d at 122 (explaining that the role of the court is to construe a contract "in accordance with the parties' intent" (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002))); *Williams v. Buffalo Pub. Schs.*, No. 22-2810, 2024 WL 1460134, at \*1 (2d Cir.

Apr. 4, 2024) ("[I]t is well-settled that a court's role 'is to ascertain the intention of the parties at the time they entered into the contract.'" (quoting *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004))). "The best evidence of what the parties intended 'is what they say in their writing.'" *In re WTC*, 754 F.3d at 122 (quoting *Greenfield*, 98 N.Y.2d at 569). "'[T]he key inquiry at the initial stage of interpreting a contract' is therefore 'whether it is ambiguous with respect to the issue disputed by the parties.'" *Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (alteration in original) (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010)); *Gary Friedrich Enters. v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) ("At the outset, the court must determine whether the language the parties have chosen is ambiguous, after giving all 'words and phrases . . . their plain meaning.'" (alteration in original and citations omitted)).

"A contract is unambiguous if its language has 'a definite and precise meaning,' providing 'no reasonable basis for a difference of opinion.'" *Revitalizing Auto Cmtys. Env't Response Tr.*, 92 F.4th at 441 (quoting *Greenfield*, 98 N.Y.2d at 569); *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (recognizing that a contract provision is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion" (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007))). "The language of a contract is not made ambiguous simply because the parties urge different interpretations." *Glob. Reins.*, 22 F.4th at 94 (quoting *Seiden Assocs.*, 959 F.2d at 428). Rather, a contract term is ambiguous if it "suggest[s] more than one meaning when viewed objectively by a reasonably intelligent person." *In re WTC*, 754 F.3d at 122 (quoting *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)); *see also Glob. Reins.*, 22 F.4th at 94 ("[A]n ambiguity exists where the . . . contract could suggest more

10

than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (second alteration in original and internal quotation marks omitted) (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000))); *Lockheed Martin*, 639 F.3d at 69 ("[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138–39 (2d Cir. 2000))).  In determining whether a contract provision is unambiguous, a court must consider the contract as a whole.  *See Flynn*, 120 F.4th at 1166–67 ("The contract should be 'read as a whole,' with every part 'interpreted with reference to the whole' in order, *inter alia*, 'to give effect to its general purpose,' 'to safeguard against adopting an interpretation that would render any individual provision superfluous,' and to ensure that particular words and phrases do not receive 'under emphasis'" (citations omitted)); *Glob. Reins.*, 22 F.4th at 95 ("When ascertaining the meaning of contractual language, 'it is important for the court to read the integrated agreement as a whole.'" (internal quotation marks omitted) (quoting *Lockheed Martin*, 639 F.3d at 69)).  "If the document as a whole 'makes clear the parties' over-all intention, courts examining isolated provisions should then choose that construction which will carry out the plain purpose and object of the agreement.'"  *Id.* (quoting *Lockheed Martin*, 639 F.3d at 69); *see also In re Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003) (stating contracts should be read "as a harmonious and integrated whole" and each part should be "interpreted with reference to the whole . . . to give effect to its general purpose" (quoting *Empire Props. Corp. v. Mfrs. Tr. Co.*, 288 N.Y. 242, 248 (1942))).

11

The Settlement Agreement provides that the parties intended the Settlement Class to consist of "all persons, businesses, and other entities that have *accepted* any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [of January 24, 2019]."  (Settlement Agreement ¶ 4 (emphasis added).)  The parties do not appear to dispute that the *Visa Debit* Plaintiffs "accepted" payment cards.[7] (*See* CCAC ¶ 30 ("Plaintiff Yabla, Inc. . . . accepted debit payments routed on Visa's network starting in 2005."); *id.* ¶ 33 ("Plaintiff R&N Productions LLC d/b/a SewRobQnE . . . accepted debit payments routed on Visa's network starting in 2013.")).  The Court accordingly concludes there is no ambiguity that the *Visa Debit* Plaintiffs "accepted" payment cards within the meaning intended by the parties at the time they reached the Settlement Agreement.  *Williams*, 2024 WL 1460134, at *1 ("[I]t is well-settled that a court's role is 'to ascertain the intention of the parties at the time they entered into the contract.'" (quoting *Evans*, 1 N.Y.3d at 458)).  Accordingly, the Court finds that *Visa Debit* Plaintiffs are members of the Settlement Class.

---

[7] While the Court previously concluded that the Settlement Agreement was ambiguous when applied to other parties, *see Interchange Fees VII*, 735 F. Supp. 3d at 249; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024), the Court interprets the Settlement Agreement "as applied to the facts that furnish the basis of the suit."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) (internal brackets omitted) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004)); *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 467 (E.D.N.Y. 2024) (explaining that in interpreting a contract, "a court must determine whether a contract is unambiguous as to the issue disputed by the parties"); *AGCS Marine Ins. Co. v. Hymel & Assocs., LLC*, No. 16-CV-6899, 2017 WL 2729093, at *7 (S.D.N.Y. June 22, 2017) (same).  In deciding prior motions, the parties disputed which party "accepted" payment cards for purposes of the Settlement Agreement, and the Court accordingly concluded that the meaning of "accepted" was ambiguous under those sets of facts.  *Interchange Fees VII*, 735 F. Supp. 3d at 262 ("The Court finds that the term 'accepted' is ambiguous because Sellers, Square, and Intuit can all credibly claim to have 'accepted' payment cards."); *In re Payment Card*, 2024 WL 4224160, at *10 (concluding that the term "accepted" was ambiguous because "suppliers and gas stations can both credibly claim to have 'accepted' payment cards).

### ii. *Visa Debit* **Plaintiffs' claims are not subject to the Release provisions**

Defendant argues that the *Visa Debit* Plaintiffs' proposed class and certain class representatives "sweep[] in millions of merchants that released claims as members of the Rule 23(b)(3) Settlement Class." (Def.'s Mem. 8.) First, Defendant argues that the claims in the *In re Visa Debit* litigation arise from the "same factual predicate as that underlying the settled litigation — *i.e.*, that Visa, in fact, exercised market power to impose supracompetitive interchange and network fees regarding the same debit transactions." (*Id.* at 17–18; *see also* Def.'s Reply 2–10.) In support, Defendant argues that the *Visa Debit* Plaintiffs allege damages and transactions that "overlap" with the claims in the Release, and "challenges the same conduct in the same debit markets that has been litigated (or at a minimum could have been litigated)" in *In re Payment Card*. (Def.'s Mem. 18; *see also* Def.'s Reply 2.) Defendant also argues "given that the two complaints allege the same damages from interchange fees and network fees based on the same transactions arising from the same conduct, the identical factual predicate test is met regardless of any differences in the legal theories on which the complaints rely." (*Id.* at 20.) Defendant further contends that "[t]o the extent the CCAC contains allegations of post-January 2019 facts, those allegations are nothing more than the continuation of substantially similar conduct at issue prior to that date" that was subject to the Release. (*Id.* at 22.) Second, Defendant argues that "[t]he interests of Plaintiffs Yabla and R&N Productions — as well as Rule 23(b)(3) Settlement Class members that are putative absent class members in the CCAC — are aligned with the interests of the Rule 23(b)(3) Settlement Class and were adequately advanced." (*Id.* at 24.) Defendant concludes that "adequacy of representation does not appear in dispute." (*Id.*)

*Visa Debit* Plaintiffs argue that their claims were not released by the Settlement Agreement. First, they argue that *In re Visa Debit* depends "upon a different legal theory" and

13

"will require 'proof of further facts,'" and therefore *In re Visa Debit* and *In re Payment Card* do not have identical factual predicates. (Pls.' Opp'n 12 (quoting *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982).) In support, they argue that *Visa Debit* Plaintiffs "seek to prove that Visa, acting alone, used agreements or partnerships with potential competitors to restrain trade and prevent them from introducing products that would disintermediate Visa and encroach on its monopoly or attempted monopoly of the debit network services market," while the *In re Payment Card* claims depended on proving that "Visa, working with Mastercard and their member banks, both fixed prices as to the interchange fees and imposed various anticompetitive rules that made it impossible for merchants to escape those anticompetitive charges," (*id.*). They argue that their claims arise from a different set of "core" facts than those underlying the allegations in *In re Payment Card*, (*id.* at 13–14), that Defendant overgeneralizes the allegations in their complaint, (*id.* at 14), and incorrectly implies that *Visa Debit* Plaintiffs must "base their entire damages claim on facts" and legal theories that post-date the Settlement Agreement, (*id.*). Second, they argue that the overlap in facts between *In re Visa Debit* and *In re Payment Card* do not amount to an "identical factual predicate" because the facts "overlap most on their least important issues," (*id.* at 15–19), and *In re Visa Debit* relies on facts that were "peripheral" to the allegations in *In re Payment Card*, (*id.* at 19–21). Third, *Visa Debit* Plaintiffs argue Defendant's interpretation of the Release is "virtually limitless" and would "immunize Visa from any antitrust exposure." (*Id.* at 22.) They argue that Defendant's interpretation would expand the scope of the Release and bar claims without sufficient notice, (*id.* at 22–23), and that a broad interpretation of the Release would "encourage . . . Visa to not only continue its prior anticompetitive conduct but expand it through August 8, 2028," (*id.* at 24).

A settled class action may release claims "not presented directly in [the class action]

complaint" if the subsequent claims are "based on the identical factual predicate as that underlying the claims in the settled class action." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (quoting *TBK Partners, Ltd.*, 675 F.2d at 460); *In re WorldCom, Inc. Sec. Litig.*, No. 02-CV-3288, 2005 WL 2495554, at *3 (S.D.N.Y. Oct. 11, 2005) ("[A] class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but depending upon the very same set of facts.'" (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981))); *see also Bank v. ICOT Holdings, LLC*, No. 18-CV-2554, 2020 WL 10224833, at *2 (E.D.N.Y. Sept. 29, 2020) (quoting the same). The authority to release claims "is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Interchange Fees II*, 827 F.3d at 236–37 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005)); *BNP Paribas v. N.M. State Inv. Council*, No. 24-635-CV, 2025 WL 1443654, at *3 (2d Cir. May 20, 2025) ("The identical factual predicate and adequate representation doctrines allow class action plaintiffs 'to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement.'" (quoting *Wal-Mart*, 396 F.3d at 106)). "This rule of law serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010) (internal quotation marks omitted); *TBK Partners*, 675 F.2d at 460 ("[I]n order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and

might not have been presentable in the class action."). "[W]hether a class claim pleaded in a separate lawsuit is predicated on sufficiently similar facts as the class action claim to be barred by a class action settlement release is inherently an individualized, fact-specific [inquiry]." *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476, 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016) (internal quotation marks and citation omitted). In addition, "[a]dequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim." *Wal-Mart Stores*, 396 F.3d at 106–07; *BNP Paribas*, 2025 WL 1443654, at *3 (quoting same). Thus, "[c]laims arising from a shared set of facts will not be precluded where class plaintiffs have not adequately represented the interests of class members." *Id.* at 109.

The Court finds that *Visa Debit* Plaintiffs' claims were not released by the Settlement Agreement because they do not satisfy the "identical factual predicate" test. First, *Visa Debit* Plaintiffs do not allege the same facts as the Rule 23(b)(3) Class. They allege Visa wielded and protected its monopoly power in the debit network by (1) requiring merchants to enter into loyalty contracts or face high network fees and other penalties, (CCAC ¶ 6); (2) stifling competition by offering incentives to Apple, PayPal, and Square not to compete with Visa, (*id.* ¶ 19); and (3) attempting to acquire potential debit network competitors such as Plaid, (*id.* ¶ 20). The Rule 23(b)(3) Class alleged that Visa and Mastercard conspired to impose supracompetitive interchange fees on merchants, (Third Consol. Am. Class Action Compl. of the Rule 23(b)(3) Class ("Class Compl.") ¶ 326, Docket Entry No. 7118), and, with respect to the debit card network in particular, that Visa and Mastercard leveraged their dominance in the credit card network to become the dominant debit card networks, (*id.* ¶¶ 131–39). The *In re Payment Card* allegations center on "the fees [America's largest banks have] imposed on [m]erchants for

transactions processed over the dominant Visa and MasterCard Networks," the "restrictions on

[m]erchants that prevent them from protecting themselves against those fees," and Visa's,

MasterCard's, and their banks' "attempts to avoid antitrust liability by re-structuring the Visa

and MasterCard corporate entities." (Class Compl. ¶ 1); *see also Interchange Fees IV*, 714 F.

Supp. 3d at 77–78 ("At the center of [the *In re Payment Card*] litigation are two networks: Visa

and Mastercard," which "own and operate the systems that facilitate card transactions and set the

rules regarding those transactions," including the Honor All Cards rule and various anti-steering

rules). The allegations in *In re Visa Debit* center on "Visa's anticompetitive conduct" leveraging

"its monopoly power in non-contestable debit transactions to foreclose entry and competition in

contestable debit transactions through, among other things, its volume commitment agreements

with acquiring banks," leading to "high fees, limit[ed] choices, and stifle[d] innovation."

(CCAC ¶¶ 21–22.) Although the facts in both cases overlap to some extent,[8] the facts *Visa Debit*

Plaintiffs allege are materially different from the facts alleged by the Rule 23(b)(3) Class. For

example, Visa offered "incentives, sometimes worth hundreds of millions of dollars" to Apple

"not to compete" with Visa. (CCAC ¶ 19.) The Court was broadly aware of this agreement and

referenced it in one *In re Payment Card* decision without assessing the agreement or whether it

violated antitrust law. *See Interchange Fees IV*, 714 F. Supp. 3d at 117 n.40 ("Finally, in

response to perceived competition from mobile wallets like Apple Pay, [Visa and MasterCard]

entered into bilateral agreements with Apple to prevent it from developing a competing payment

network."). As the Court has previously noted, beyond this "brief acknowledgment that these

---

[8] Similar to *In re Payment Card*, *In re Visa Debit* alleges that Visa's anticompetitive conduct has harmed merchants in the two-sided market for debit transactions by forcing them to pay supracompeitive network fees. (*Compare* CCAC ¶¶ 5, 47–50, 59–60, 123–26, 221–27, 235 *with* Class Compl. ¶¶ 1, 59–60, 90.) However, as discussed above, the facts at the core of the actions are not sufficiently similar to satisfy the "identical factual predicate" test.

agreements existed and restrained Apple's ability to enter the market for payment card network services, the Court neither inquired into the substance of these agreements nor considered (or even saw) evidence of the effects of these agreements on the market for payment processing services." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 24-CV-4053, 2024 WL 3249365, at \*5 (E.D.N.Y. July 1, 2024). The Court did not assess Visa's agreement with Apple in *In re Payment Card* because that agreement and others like it were not core to the Rule 23(b)(3) Class's allegations. (*See* Class Compl. ¶ 1 (explaining the alleged harm to merchants as a result of "significant overcharges on Visa and MasterCard branded [c]redit and [d]ebit card transactions.)) Stated differently, Visa's agreement with Apple was tangentially related to the allegations in *In re Payment Card*, but forms the core of the allegations in *In re Visa Debit*. The two cases therefore do not arise out of an "identical factual predicate." *See Dennis v. JPMorgan Chase & Co.*, No. 16-CV-6496, 2021 WL 1893988, at \*5 (S.D.N.Y. May 11, 2021) (explaining that claims that are "broadly relate[d]" but have "very little factual overlap" do not satisfy the identical factual predicate test); *Deylii v. Novartis Pharms. Corp.*, No. 13-CV-6669, 2014 WL 2757470, at \*6 (S.D.N.Y. June 16, 2014) (concluding plaintiff's age and race discrimination claims did not satisfy the "identical factual predicate" standard where the release covered claims related to gender and pregnancy discrimination); *In re Lehman Bros. Sec. & Erisa Litig.*, No. 08-CV-5523, 2012 WL 2478483, at \*6 (S.D.N.Y. June 29, 2012) (concluding that claims did not satisfy the "identical factual predicate" test even though they had "some common factual elements" because they would "require proof of entirely different facts").

Second, contrary to Defendant's claim, *Visa Debit* Plaintiffs do not merely assert a different legal theory based on the same facts alleged in *In re Payment Card*. (Def.'s Mem. 20; Def.'s Reply 6.) *Visa Debit* Plaintiffs do not only or primarily allege that they are harmed by

Defendant's imposition of supracompetitive interchange fees,[9] but allege harm based on Visa's "contractual penalties and punitively high network fees," (CCAC ¶ 6), and "reduced choice and innovation in the market," (*id.* ¶ 10), all resulting from *Visa*'s "multi-faceted exclusionary strategy" to "unlawfully entrench[] its monopoly," (*id.* ¶ 2). *Visa Debit* Plaintiffs' allegations depend upon "proof of further facts," *Burgess v. Citigroup Inc.*, 624 F. App'x 6, 8–9 (2d Cir. 2015) (quoting *TBK Partners*, 675 F.2d at 462), namely, facts proving that "Visa, acting alone, used agreements or partnerships with potential competitors to restrain trade and prevent them from introducing products that would disintermediate Visa and encroach on its monopoly or attempted monopoly of the debit network services market," (Pls.' Opp'n 12 (citing CCAC ¶¶ 134–83)). *Visa Debit* Plaintiffs therefore rely on facts related to Visa's market power, "disintermediation" strategy, and agreements with companies like Apple, PayPal, and Square, (*see generally* CCAC ¶¶ 134–83), none of which were "presented directly" in *In re Payment Card*. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d at 248. The Court therefore concludes that *Visa Debit* Plaintiffs' claims are not only based on a different legal theory but also on a different set of core facts that were not subject to the Release. *See In re Nat'l Life Ins. Co.*, No. 97-CV-314, 2014 WL 4715880, at *5 (D. Vt. Sept. 19, 2014) (denying motion to enforce a settlement agreement because a "common factual predicate [wa]s absent"); *In re Lehman Bros. Sec. & Erisa Litig.*, 2012 WL 2478483, at *7–8 (finding the "identical factual predicate" test was not satisfied because "the only connection to the class action complaint is the fact that the same securities are at issue and the same defendant is named" but the "'core' of the class action" has "nothing to do with the [present] claims"); *In re Digit. Music*

---

[9]  (Class Compl. ¶ 4 ("The contracts, combinations, conspiracies, and understandings entered into by the Defendants harm competition and impose upon Plaintiffs and Class Members supracompetitive . . . prices . . . .").)

*Antitrust Litig.*, 812 F. Supp. 2d 390, 400 (S.D.N.Y. 2011) (concluding that the claims did not arise out of an "identical factual predicate" because the "source of the alleged antitrust conspiracy here is wholly different from the source of the alleged antitrust conspiracy" in the prior case); *In re Currency Conversion Fee*, 264 F.R.D. at 119–20 (denying motion to amend an answer where the moving party advocated for "a broad reading [that] would violate the identical factual predicate doctrine by releasing claims that do no arise out of the same core nucleus of fact" (citations omitted)); *cf. In re WorldCom, Inc. Sec. Litig.*, 2005 WL 2495554, at *3 ("[A] class action settlement may 'prevent class members from subsequently asserting claims relying on a legal theory different from that relied on in the class action complaint, but depending upon the very same set of facts.'" (quoting *Nat'l Super Spuds*, 660 F.2d at 18 n.7)).[10]

## III.   Conclusion

For the foregoing reasons, the Court finds that *Visa Debit* Plaintiffs are not bound by the 2019 Rule 23(b)(3) Class Settlement's Release.  Accordingly, the Court denies Defendant's motion to enforce the settlement agreement.

Dated:  August 20, 2025
        Brooklyn, New York

                                    SO ORDERED:


                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge

---

[10]   Based on the Court's conclusion that the Release does not apply to the *In re Visa Debit* allegations, the Court declines to reach Defendant's arguments that the *In re Visa Debit* complaint "contains allegations of post-January 2019 facts" based on "the continuation of substantially similar conduct at issue prior to that date" that was subject to the Release, (Def.'s Mem. 21), or that Plaintiffs were adequately represented in the Rule 23(b)(3) Class, (*id.* at 24).