**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720<br>Docket No. 05-md-01720 (BMC-JAM) |

This Document Relates To:
BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE,

      Plaintiffs,

  v.

VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY,

      Defendants.

**DECLARATION OF HON. JAMES ORENSTEIN (Ret.)**

I, JAMES ORENSTEIN, declare and state as follows pursuant to 28 U.S.C. § 1746:

1. I am a mediator, arbitrator, special master, and court-appointed neutral evaluator associated with JAMS, the world's largest private alternative dispute resolution services provider.

2. In July 2024, I was retained by the Equitable Relief Class Plaintiffs and Defendants Visa and Mastercard as a mediator in the Equitable Relief Class Action. The parties' efforts, through mediation, culminated in the Superseding and Amended Class Settlement Agreement of the Rule 23(b)(2) Class Plaintiffs and the Defendants dated November 10, 2025 (the "Amended Settlement") now presented to the Court.

3. I joined JAMS following a legal career that included 16 years (from 2004–2020) as a Magistrate Judge in the Eastern District of New York. While on the bench, I oversaw thousands of pretrial proceedings, mediated the settlement of hundreds of cases, and presided over evidentiary hearings and bench and jury trials. Additionally, before taking the bench, I spent over a decade (from 1990–2001) as an Assistant U.S. Attorney in the Eastern District of New York and as a Justice Department official, serving as an Associate Deputy Attorney General from 1999–2001, and investigating and prosecuting hundreds of cases. I also have several years' experience as a litigator in private practice. Additional details concerning my background are set forth in Exhibit A.

4. From November 2005 until November 2020 (when I retired from the bench), I was the assigned Magistrate Judge for MDL 1720 (the "Interchange Litigation"). *See* MDL ECF No. 28, and docket entry at 11/6/2020. In that capacity, I oversaw fact and expert discovery; participated in settlement conferences (along with U.S. District Judge Gleeson and outside mediators); resolved numerous contested motions, including the appointment of separate lead class counsel for the Damages Class and the Equitable Relief Class following the Second Circuit's 2016

rejection of the 2012 combined damages and equitable relief settlement (discussed below); and recommended to the Court the resolution of several dispositive motions.

5. Accordingly, I have a deep understanding of the legal and factual matters at issue in the payments and credit card industry, and the strengths and weaknesses of the parties' claims and defenses. It is my understanding that it was this depth of knowledge of the subject matter, legal issues, and complex history of the Interchange Litigation that led the parties to jointly seek my assistance following Judge Brodie's denial of the Equitable Relief Class Plaintiffs' motion for preliminary approval of the 2024 settlement agreement (the "2024 Proposed Settlement").

6. As discussed below, my work with the parties in this mediation had two broad goals. First, I sought to help the parties achieve a fair, reasonable, and adequate resolution of the Class's claims. Second, in reaching such a resolution, I sought to focus the parties' attention on the need to satisfactorily address Judge Brodie's previously expressed concerns regarding the 2024 Proposed Settlement.

**Prior Settlement Efforts**

7. To place the parties' recent mediation efforts and resulting Amended Settlement in context, it is helpful to briefly review the history of and prior efforts to settle the equitable relief claims.

8. The Equitable Relief Class claims were first filed in 2005. After eight years of litigation, in December 2013, Judge Gleeson granted final approval of a settlement that sought to address both equitable relief and damages claims. While the appeal from the final approval order was pending, Judge Gleeson retired from the bench and Judge Brodie was assigned to the Interchange Litigation. On appeal, the Second Circuit reversed and remanded, finding that class conflicts mandated separate equitable relief and damages classes with separate class

2

representatives and class counsel. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016).

9.      Accordingly, in November 2016, I appointed separate class representatives and interim lead counsel for the Equitable Relief and Damages Classes.[1]  A separate Equitable Relief Class Complaint was filed in February 2017; and the Damages Class and Equitable Relief Class litigations continued on separate tracks.  In 2018, mediation efforts led to a settlement of the Damages Class claims, for which the Court granted final approval in December 2019.  In March 2023, the settlement was affirmed by the Second Circuit, with a reduction of the service fee awards to the class representatives. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019), *aff'd as modified*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023).[2]

10.      The Equitable Relief litigation continued apace, and the parties engaged in extensive fact and expert discovery.  The Equitable Relief Class Plaintiffs successfully moved for class certification. *DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326 (E.D.N.Y. Sept. 27, 2021).  The parties also briefed, and the Court resolved, numerous *Daubert* and summary judgment motions. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614, at *4–5 (E.D.N.Y. June 28, 2024).

11.      My understanding is that over the course of a number of years, the Equitable Relief Class Plaintiffs, Visa, and Mastercard discussed potential resolutions of the Class's claims, with

---

[1]    *See* Mem. & Order entered on Nov. 30, 2016, MDL ECF No. 6754.

[2]    On August 3, 2023, Judge Brodie appointed me to serve as Special Master to resolve disputes or matters relating to the Plan of Administration and Distribution under the settlement of the Damages Class claims. *See* Order Appointing Special Master entered on Aug. 3, 2023, MDL ECF No. 8883.

the assistance of Professor Eric D. Green as mediator.  Those mediation efforts culminated in the 2024 Proposed Settlement in March 2024.[3]  On June 25, 2024, Judge Brodie denied Plaintiffs' motion for preliminary approval.[4]

**The Current Mediation and Resulting Amended Settlement**

12.    In July 2024, the Equitable Relief Class Plaintiffs, Visa, and Mastercard retained me to assist in mediation efforts.  Since then, the parties have engaged in continuous, productive negotiations to provide additional rules reform and relief for all class members sufficient to address the concerns noted in Judge Brodie's June 2024 decision, and to obtain preliminary and final approval of a class-wide settlement.  These efforts included numerous all-day or hours-long in-person and virtual meetings; multiple exchanges of detailed financial data and documents; expert economic analysis of that data; and negotiation of multiple proposed term sheets, before the parties finally arrived at the agreement memorialized in the Amended Settlement.

13.    In all, the parties and I held five all-day in-person mediation sessions, and seven virtual discussions with counsel for all parties.  I also conducted more than thirty *ex parte* calls and Zoom sessions in support of the parties' good-faith efforts to understand each other's positions and achieve a fair, reasonable, and adequate settlement of the equitable relief claims.

14.    As I worked with the parties to reach resolution, I was guided by the governing legal standards for preliminary and final approval, and by Judge Brodie's opinion rejecting the 2024 Proposed Settlement, all of which are detailed in the parties' submissions in support of preliminary approval.  As the parties pushed each other further in negotiations to come up with

---

[3]    *See* Decl. of Eric D. Green filed on Mar. 26, 2024, MDL ECF No. 9179-7.

[4]    *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614 (E.D.N.Y. June 28, 2024).

solutions that would satisfy the requisite standards while allowing both Visa and Mastercard to continue to compete vigorously—and that would not have unintended effects of reducing industry-wide competition or harming cardholders—I probed the parties to think critically about every proposal. I independently assessed each aspect of each proposal for conformity with the requirements for preliminary and final approval and considered the extent to which each proposal addressed the issues Judge Brodie raised in rejecting the 2024 Proposed Settlement. In those instances where a proposal raised any concern for me on any of these questions, I discussed those concerns frankly with the parties. I have identified no such concerns with the Amended Settlement.

15.    In particular, the parties spent a substantial amount of time negotiating the Honor All Cards relief included in the Amended Settlement. The parties were focused on addressing Judge Brodie's criticism that the 2024 Proposed Settlement had not included any significant revisions to the Honor All Cards rules for general purpose credit cards,[5] and they understood that greater reforms would be necessary to obtain final approval. I can attest that the parties treated these negotiations with the utmost seriousness, with Class Counsel advocating strongly for the merchant class and both Visa and Mastercard carefully considering how to reform what they consider to be the most fundamental of rules that have allowed their networks to function as effective competitors and to revolutionize commerce through innovation. The parties ultimately landed on what I understand to be unprecedented and meaningful changes to the Honor All Cards rules. With respect to consumer credit, under the Amended Settlement, Visa and Mastercard will allow merchants to accept standard consumer credit without accepting premium consumer credit

---

[5]    *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614, at *27 (E.D.N.Y. June 28, 2024).

(and vice versa). Additionally, under the Amended Settlement, Visa and Mastercard will allow merchants to accept either or both of those categories of consumer credit without accepting commercial credit (and vice versa).

16. The parties likewise negotiated in numerous sessions over the form and substance of the interchange rate relief, focusing on Judge Brodie's concern that that aspect of the 2024 Proposed Settlement had been insufficient. They ultimately settled on relief that significantly modifies the rates for standard consumer credit cards and thus has the potential to complement and advance the Honor All Cards rule revisions. Importantly, given Judge Brodie's stated concerns about the 2024 Proposed Settlement, the parties sought to provide for rate relief in the Amended Settlement that would function to support merchants' ability to take advantage of the rules changes in the near term, rather than simply serving as a form of cost recoupment for transactions under rules that the 2024 Proposed Settlement left largely unchanged. This reduction in standard consumer credit rates is part of a broader framework in which Visa and Mastercard have committed not to increase their rates for five years and to decrease their systemwide average effective interchange rates by 10 basis points.

17. Additionally, the parties strengthened the surcharging relief in the 2024 Proposed Settlement. Specifically, the Amended Settlement requires the networks to completely eliminate the "level playing field" rules that limited merchants' ability to surcharge Visa and Mastercard at the brand or the product level based on whether the merchants accepted other competitors' credit cards, and the costs of those competitor cards. The resulting rule is much simplified and easier to use compared to the surcharging relief offered in the 2024 Proposed Settlement.[6]

---

[6] Judge Brodie was concerned that the surcharging relief in the 2024 Proposed Settlement was "too limited to justify approval of a settlement that does not provide most other forms of relief sought by other Class Members," including because merchants in certain states with laws

18.    These are what I see as the principal forms of negotiated relief that distinguish the current proposal from its predecessor and that the parties crafted to address the concerns that led Judge Brodie to reject the 2024 Proposed Settlement. The parties have also devoted significant additional time to negotiating other provisions of the Amended Settlement to give merchants increased options and flexibility, which are detailed in the parties' briefs.

19.    I can say without reservation that both the Equitable Relief Class and the Defendants were represented throughout this process by exceptionally experienced and qualified in-house and outside counsel. The negotiations were occasionally contentious, and at all times the parties remained ready to revert to their litigation positions if agreement could not be reached. In my opinion, the Amended Settlement was the hard-fought result of the parties' best professional efforts and judgments, taking into account the risks of continued litigation, the strengths and weaknesses of their respective positions, the equitable treatment of the entire Equitable Relief Class, and the defendants' ability to continue competing in the payments space as networks facilitating four-party payment card transactions.

20.    Finally, I understand that there was no discussion, negotiation, or agreement with respect to attorneys' fees and expenses or service awards for the class representatives until there was complete agreement as to all issues of class-wide relief.

21.    The attorneys' fees and expenses, which were negotiated by the parties subsequent to the completion of the negotiation of the Amended Settlement, will be paid by Defendants, separately from the injunctive relief, and will be the subject of a motion for Court approval. I have

---

prohibiting or limiting surcharging would be unable to take advantage of that surcharging relief. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614, at *27 (E.D.N.Y. June 28, 2024). In the Amended Settlement, the surcharging relief is broader than it was in the 2024 Proposed Settlement, <u>and</u> it is part of a more comprehensive package of rules changes long sought by the Class.

not participated in any negotiations among the parties concerning the extent of such relief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of November, 2025 in Yarmouth, Maine.

_____

Hon. James Orenstein (Ret.)

8