**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION** | Case No. 05-md-1720 (BMC) (JAM) |

**MERCHANT PLAINTIFFS' STATEMENT OF OBJECTIONS**
**TO EQUITABLE RELIEF CLASS PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF AMENDED SETTLEMENT**

# TABLE OF CONTENTS

I. **PRELIMINARY STATEMENT** ............................................................................................... 1

II. **ARGUMENT** ........................................................................................................................... 5

    A. The Proposed Amended Settlement is Not Within the Range of Settlements that Could Ever Receive Final Approval. ....................................................................................................... 5

        i. The Settlement Provides No Effective Relief in the Debit Market and Blocks Merchants' Ability to Obtain Equitable Remedies. ...................................................................... 6

        ii. The Equitable Relief Class Representatives and Their Counsel Did Not Adequately Represent the Class's Interests in Challenging Visa's Debit-Market Conduct. ...................... 9

        iii. The Proposed Amended Settlement is Fundamentally Unfair Because Its Industry-Wide Effects Cannot Be Corrected or Modified After Approval......................................... 11

    B. The Proposed Amended Settlement Must Exclude All Equitable Relief at Issue in the Debit Card Litigation to Satisfy Rule 23 by a Preponderance of the Evidence....................... 12

    C. Alternatively, the Court Should Hold Expressly that the Debit-Related Claims Asserted by the Equitable Relief Class Representatives Are Not Factually Identical to Those Pursued in the Debit Card Litigation. ..................................................................................................... 13

III. **CONCLUSION** ...................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Caccavale v. Hewlett-Packard Co.*,
  No. 22-cv-0974, 2024 WL 4250337 (E.D.N.Y. Mar. 13, 2024)............................................1, 6

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ...........................................................................................16

*In re Host Am. Corp. Sec. Litig.*,
  No. 05-cv-1250, 2007 WL 3048865 (D. Conn. Oct. 18, 2007)..........................................5, 11

*In re Lehman Bros. Sec. & ERISA Litig.*,
  No. 09-md-2017, 2012 WL 2478483 (S.D.N.Y. June 29, 2012).....................................13, 14

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ......................................................................................................6

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)................................................................................................6, 12

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  594 U.S. 69 (2021).....................................................................................................................5

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) ........................................................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019)..............................................................................1, 2, 6, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  729 F. Supp. 3d 298 (E.D.N.Y. 2024) ...............................................................................3, 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016)......................................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-md-1720, 2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024).............................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05-md-1720, 2025 WL 2412033 (E.D.N.Y. Aug. 20, 2025).......................................4, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 24-cv-4053, 2024 WL 3249365 (E.D.N.Y. July 1, 2024)................................................14

*In re Paysafe Ltd.*,
  No. 21-cv-10611, 2022 WL 1471122 (S.D.N.Y. May 10, 2022), *adopted sub
  nom. In re Paysafe Ltd. Sec. Litig.*, No. 21-cv-10611, 2024 WL 1636415
  (S.D.N.Y. Apr. 16, 2024) ............................................................................................10

*TBK Partners, Ltd. v. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ...................................................................13, 14, 16

*United States v. Visa, Inc.*,
  788 F. Supp. 3d 585 (S.D.N.Y. 2025) .......................................................................4

*United States v. Visa, Inc.*,
  No. 24-cv-07214 (S.D.N.Y. 2024) ............................................................................2

*In re Visa Debit Card Antitrust Litigation*,
  No. 1:24-cv-07435 (S.D.N.Y. 2024) ............................................................ *passim*

*Zeller v. PDC Corp.*,
  No. 13-cv-5035, 2016 WL 748894 (E.D.N.Y. Jan. 28, 2016) .................................1

## Other Authorities

Durbin Statement Rejecting Proposed Settlement Between Visa, Mastercard &
  Merchants (Nov. 17, 2025), https://www.durbin.senate.gov/newsroom/press-
  releases/durbin-statement-rejecting-proposed-settlement-between-visa-
  mastercard-and-merchants ........................................................................................8

Fed. R. Civ. P. 23 ................................................................................... *passim*

## I.     PRELIMINARY STATEMENT

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Merchant Plaintiffs in *In re Visa Debit Card Antitrust Litigation*, No. 1:24-cv-07435 (S.D.N.Y. 2024) ("*Debit Card Litigation*") object to the Equitable Relief Class Plaintiffs' "Proposed Amended Settlement," ECF No. 9692-2, on the grounds that it is not within the range of settlements that could ever receive final approval. *See, e.g.*, Fed. R. Civ. P. 23(e)(2) (requiring that settlements be "fair, reasonable, and adequate"); *Caccavale v. Hewlett-Packard Co.*, No. 22-cv-0974, 2024 WL 4250337, at *8 (E.D.N.Y. Mar. 13, 2024) ("A district court cannot grant preliminary approval of a class action settlement unless it is 'likely to be able' to grant final approval under Rule 23(e)(2)." (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*Payment Card I*"))); *Payment Card I*, 330 F.R.D. at 28 ("[C]ourts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval."); *Zeller v. PDC Corp.*, No. 13-cv-5035, 2016 WL 748894, at *2 (E.D.N.Y. Jan. 28, 2016) (noting that a court must "conclude … at the preliminary approval stage … that [the proposed settlement] 'appears to fall within the range of possible approval'" (quoting *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010))), *report and recommendation adopted*, No. 13-cv-5035, 2016 WL 775762 (E.D.N.Y. Feb. 25, 2016).

Here, the Proposed Amended Settlement can be read to expansively release Visa (and others) from anticompetitive conduct relating to its imposition of "network fees," including its Fixed Acquirer Network Fee ("FANF"),[1] which is at the center of ongoing litigation by the U.S.

---

[1]     Specifically, the Proposed Amended Settlement purports to release "any claims that seek any form of declaratory, injunctive, or equitable relief arising out of or relating to … any Merchant Fee of any Rule 23(b)(2) Class Released Party relating to any Visa-Branded Card transactions in the United States[.]" *See* Amended Class Settlement

1

Department of Justice ("DOJ")[2] *and* Merchant Plaintiffs in the *Debit Card Litigation*, comprised of two cases pending before Judge Koeltl in the Southern District of New York. In addition, the Proposed Amended Settlement offers in exchange for that release *no relief whatsoever* from the debit conduct at issue in this case. *See Payment Card I*, 330 F.R.D. at 43 ("Courts have denied preliminary approval where releases from liability are deemed to be overly broad.").

The Proposed Amended Settlement includes an expansive release of debit claims that bear little relation to the core allegations of this case. It simply is not fair, adequate, or reasonable to allow Visa, with the acquiescence (whether intentional or not) of the Equitable Relief Class, to use this proposed settlement to seek to eliminate the Merchant Plaintiffs' ability in their pending litigation against Visa to obtain robust structural relief that would enhance competition in the relevant debit markets defined in the *Debit Card Litigation*.[3] *See* Fed. R. Civ. P. 23(e)(2). But that is clearly what Visa intends, as its counsel foreshadowed recently at a hearing in the *Debit Card Litigation*, where he stated that "[a]t some point, and perhaps some point very soon, [Visa] may well seek to dismiss the injunctive relief portion of this case. It's not yet ripe." *See* Transcript of Oral Argument at 4:15–17, *Debit Card Litig.*, No. 1:24-cv-07435 (S.D.N.Y. Oct. 7, 2025), ECF No. 169.

For the following reasons, and as explained more fully below, the class as set forth in the Proposed Amended Settlement cannot be certified because the named class representatives of the Equitable Relief Class (the "Equitable Relief Class Representatives") and their counsel cannot—

---

Agreement 87-88 (¶ 116 (b)(ii)), ECF No. 9692-2. The Settlement Agreement defines "Merchant Fee" as "any amount that reduces from the face amount of a transaction the funds that a merchant receives in the settlement of a Credit Card or Debit Card transaction, or is otherwise charged to or paid by a merchant, or any interchange fee, network fee or assessment, or acquirer, issuer, or processor fee, including Visa's Fixed Acquirer Network Fee." *Id.* at 14–15 (1(u)).

[2]     *United States v. Visa, Inc.*, No. 24-cv-07214 (S.D.N.Y. 2024).

[3]     DOJ and the Merchant Plaintiffs in the *Debit Card Litigation* both define the following two debit markets in which merchants participate: the market for general-purpose debit network services and the market for general purpose card-not-present debit network services. *See Complaint*, MDL 1720, ECF No. 6892; Amended Class Settlement Agreement 13 (¶ 1(ff)), ECF No. 9692-2.

as they must, pursuant to Rule 23(a)(4)—establish that they effectively represented the interests of the proposed settlement class with respect to the release of equitable claims concerning debit transactions. The Equitable Relief Class Representatives did not vigorously pursue their concerns about Visa's debit fees during the course of the litigation in MDL 1720; those representatives failed to adduce sufficient evidence to raise a genuine issue of material fact about certain aspects of Visa's conduct relating to debit fees, and the Court granted summary judgment on the debit-related aspect of their monopolization claim. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 729 F. Supp. 3d 298, 337 (E.D.N.Y. 2024) ("*Payment Card II*").

In stark contrast—*and in the very same summary judgment order entered by this Court*—a group of large merchants, including Target and Home Depot (the "Direct Action Plaintiffs" or "DAPs"), produced sufficient evidence of wrongdoing in the debit market and were allowed to proceed to a damages trial. *See id*. at 324, 327. The Equitable Relief Class Representatives' fundamental failure to offer proof supporting their claims when other merchants were clearly able to do so illustrates their shortcoming under Rule 23(a)(4) and does not allow for a finding pursuant to Rule 23(e)(2) that the proposed broad release of Visa's debit fee related conduct by merchants is "fair, reasonable, and adequate."

Simply put, this proposed settlement purports to relinquish merchants' rights to bring claims for debit monopolization based on distinct factual allegations, in exchange for no equitable relief whatsoever pertaining to Visa's debit fees. That is so even though there is ongoing litigation by the DOJ, a putative class of merchants, and a putative nationwide class of consumers in the Southern District of New York, in which each specifically alleges anticompetitive conduct by Visa and is proceeding to discovery. The detailed and distinct assertions in that litigation include the existence of dozens of agreements between Visa and other actors in the relevant debit markets

3

concerning Visa's use of routing restrictions, volume-based incentives, and other contractual restraints that effectively foreclose rival debit networks that would compete with Visa were they provided with the appropriate economic signals to do so. *See United States v. Visa, Inc.*, 788 F. Supp. 3d 585, 593–603 (S.D.N.Y. 2025) (describing factual allegations).

The only way for the Equitable Relief Class Representatives to satisfy the Rule 23 prerequisites and indicate that the proposed settlement is within the possible range of final approval would be for the settling parties to expressly exclude any equitable relief sought in the *Debit Card Litigation* from the settlement release or, alternatively, for this Court to hold that the *Debit Card Litigation* is not encompassed within the identical factual predicate of the litigation settled by this agreement. Indeed, this Court has already found that the claims raised by the Rule 23(b)(3) class (the "damages class") did not flow from the identical factual predicate of the claims raised by the Merchant Plaintiffs in the *Debit Card Litigation*. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2025 WL 2412033, at *2, 6–8 (E.D.N.Y. Aug. 20, 2025) ("*Payment Card III*"). Both the letter of that order and the analysis therein logically apply to the claims raised by the Equitable Relief Class Representatives as well. *See Section II, infra.*

The proposed settlement as presently framed is fundamentally unfair to merchants. In any antitrust case, the equitable relief granted pursuant to a Rule 23(b)(2) class action warrants careful scrutiny because such relief is imposed on market participants as a whole without the possibility of opting out. *See* Transcript of Proceedings at 6:9–7:2, *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671 (N.D. Cal. Nov. 17, 2025), ECF No. 761 ("This is a settlement under the antitrust laws, which have a public interest component and a consumer protection component that cannot be slighted in the injunction that is going to be enforced on the basis of the jury's verdict.... Now, the goal of all of that is to ensure that there is free and fair competition that ultimately benefits

4

consumers and the public."). Accordingly, heightened scrutiny is warranted here. Because this is an antitrust settlement, where public-interest and consumer-protection considerations cannot be slighted, the court must ensure that the agreed-upon injunction adequately protects those interests. *Id.*; *see also* Minute Entry for Proceedings at 1, *Epic v. Google* (N.D. Cal. Nov. 7, 2025), ECF No. 758 (discussing the proposed settlement and joint motion to modify the injunction; further noting the Court's "concerns about whether the proposed modifications are consistent with the public interest in free and unfettered competition, which the antitrust laws are designed to protect").

Unlike equitable relief fashioned by a court after trial, a settlement provides no ongoing authority for the court to revise the relief should it later prove inadequate to safeguard competition and consumers. *See, e.g.*, *In re Host Am. Corp. Sec. Litig.*, No. 05-cv-1250, 2007 WL 3048865, at *1 (D. Conn. Oct. 18, 2007) (noting that "heightened attention" to Rule 23's fairness standards is "of vital importance" in the settlement context because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold" (cleaned up) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997))); *cf. Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 102 (2021) (noting that antitrust courts "must be open to reconsideration and modification of decrees in light of changing market realities" (citing *Cal. Dental Ass'n. v. FTC*, 526 U.S. 756, 781 (1999))). And, here, the proposed settlement simply provides no relief at all for the conduct at issue in the *Debit Card Litigation*. Preliminary approval should be denied for these reasons, and potentially others advanced by other merchants.

## II.    ARGUMENT

### A.    <u>The Proposed Amended Settlement is Not Within the Range of Settlements that Could Ever Receive Final Approval.</u>

Because the Proposed Amended Settlement fails to demonstrate that the Equitable Relief Class Representatives and class counsel have adequately protected absent class members' interests or that the relief provided is fair, reasonable, and adequate, it falls well outside the range of settlements that could ever receive final approval under Rule 23. *See* Fed. R. Civ. P. 23(e)(2); *Moses v. N.Y. Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023). As the Second Circuit has made clear, **"**[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). At the preliminary approval stage, the court must analyze whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii). Indeed, "[a] district court cannot grant preliminary approval of a class action settlement unless it is 'likely to be able' to grant final approval under Rule 23(e)(2)." *Caccavale*, 2024 WL 4250337, at *8 ("[C]ourts must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the factors weigh in favor of final settlement approval." (quoting *Payment Card I*, 330 F.R.D. at 28)). Further, "[t]o evaluate the procedural fairness of a proposed class action settlement, courts in this Circuit [have] assessed whether … plaintiffs' counsel … have engaged in the discovery[] necessary to effective representation of the class's interests." *Id*. (internal quotation marks omitted) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009)). The deficiencies present here collectively confirm that the Proposed Amended Settlement cannot satisfy Rule 23's rigorous standards of fairness and adequacy.

      i.    <u>The Settlement Provides No Effective Relief in the Debit Market and Blocks Merchants' Ability to Obtain Equitable Remedies.</u>

The Proposed Amended Settlement's pricing and interchange-rate-related remedy in the Proposed Amended Settlement is expressly limited to Visa-Branded credit card transactions—not

debit—and therefore provides no relief the anticompetitive conduct at issue in the relevant U.S. debit markets that underpin Visa's debit-related network fees, including Visa's FANF, which the Proposed Amended Settlement expressly defines as "Merchant Fee(s)." Amended Class Settlement Agreement 11-12 (¶ 1(u)), ECF No. 9692-2. In fact, every pricing-related provision in the Proposed Amended Settlement confirms that Visa's network fees—including FANF—remain entirely untouched and that all relief is expressly limited to credit transactions. The settlement's financial commitments apply exclusively to "Applicable Domestic Credit Transactions" on Visa-Branded Credit Cards—*not* debit cards—and therefore provide no debit-specific pricing relief. *Id.* ¶¶ 48–51. None of the Settlement's affirmative pricing provisions cap, reduce, or otherwise modify any Visa debit-related network fee, including FANF, which the Settlement expressly defines as a "Merchant Fee" encompassing any network fee or assessment imposed on Credit or Debit Card transactions and is allowed to continue unabated. ¶ 1(u). Although Paragraph 54 contains narrow anti-circumvention provisions, those constraints apply only to prevent Visa from undermining the Proposed Amended Settlement's credit-interchange relief; they do not limit Visa's ability to continue setting or adjusting its debit-related network fees. ¶ 54. Accordingly, all affirmative pricing commitments are confined to credit transactions, and the Proposed Amended Settlement leaves Visa's debit-network-fee structure entirely intact. ¶¶ 48–51, 54.

Because FANF and other Visa network assessments are major cost drivers for debit transactions, Equitable Relief Class Action Complaint ¶ 259, ECF No. 6910 ("ERCC"), the Proposed Amended Settlement's failure to impose any cap, reduction, or regulatory restriction on these fees confirms that merchants receive no pricing relief with respect to Visa's debit-network-fee practices.

Yet despite providing no debit-related relief, the Proposed Amended Settlement does nothing to terminate, modify, or prohibit enforcement of the anticompetitive terms in the many dozens of agreements Visa has reached with debit market participants that prevent effective competition in the relevant debit markets it dominates. In short, the Proposed Amended Settlement leaves Visa's challenged debit-related conduct entirely untouched. As Senator Richard Durbin, co-author of the landmark 2010 debit-card competition reforms, explained, "I believe this settlement falls short. This deal provides only temporary concessions and the ability for Visa … to change the rules as they go."[4]

The Proposed Amended Settlement nonetheless purports to impose a sweeping release on merchants. It extinguishes all claims challenging "any Merchant Fee of any Rule 23(b)(2) Class Released Party relating to any Visa-Branded Card transactions in the United States" which includes debit cards. *See* Amended Class Settlement Agreement 87–88 (¶ 116(b)(ii)), ECF No. 9692-2. At the same time, the covenant not to sue bars merchants from seeking any declaratory or injunctive relief relating to Visa's debit practices for the longer of five years after the Settlement Final Date or eight years after the Settlement Approval Date. *See* Amended Class Settlement Agreement 87–88 (¶ 116(b)(ii)), 91–92 (¶ 120), ECF No. 9692-2. Thus, the Settlement purports to compel merchants to surrender nearly a decade of rights to challenge Visa's debit-network conduct while receiving no limits on FANF or other network fees and no structural reforms addressing Visa's debit-market power.

These features are especially concerning because certain debit practices of Visa are the subject of active, ongoing antitrust scrutiny. *See* DOJ Compl., *Debit Litig.* Compl. The Merchant

---

[4] Press Release, Dick Durbin: U.S. Sen. for Ill., Durbin Statement Rejecting Proposed Settlement Between Visa, Mastercard & Merchants (Nov. 17, 2025), https://www.durbin.senate.gov/newsroom/press-releases/durbin-statement-rejecting-proposed-settlement-between-visa-mastercard-and-merchants.

Plaintiffs are currently prosecuting the *Debit Card Litigation*, which challenges Visa's debit-fee structure, network rules, and restraints on competitive routing through exclusivity agreements. *See Debit Litig.* Compl. ¶¶ 3–6, 17–35, 55–56, 90–97, 178–81, 273–87, 318–32; 431–72. Those claims cannot be released here under the "identical factual predicate" doctrine. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 4224160, at *13 (E.D.N.Y. Sept. 18, 2024) ("*Payment Card IV*") (holding that "[a] settled class action may release claims 'not presented directly in [the class action] complaint' if the subsequent claims are 'based on the identical factual predicate as that underlying the claims in the settled class action'" and were adequately represented before settlement (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005))). The DOJ has likewise sued Visa for using network fees and technical rules (including tokenization and PIN-less routing restrictions) to suppress competition from rival debit networks. *See* DOJ Compl. ¶¶ 43, 58–59, 87–88, 92. The ERCC alleged none of this. *See* ERCC. Under these circumstances, where a settlement purports to release meritorious claims in exchange for nothing, the Court cannot properly conclude at final approval that the Proposed Amended Settlement's sweeping release is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

> ii. <u>The Equitable Relief Class Representatives and Their Counsel Did Not Adequately Represent the Class's Interests in Challenging Visa's Debit-Market Conduct.</u>

The proposed settlement class in MDL 1720 cannot be certified under Rule 23(a) because the Equitable Relief Class Representatives and their counsel failed to adequately represent the interests of the proposed class with respect to Visa's exclusionary and anticompetitive conduct in the debit market. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827

F.3d 223, 236–37 (2d Cir. 2016) ("*Payment Card V*") (court's authority to release claim limited by the "adequacy of representation" doctrine).

Rule 23(a)(4) requires that class representatives and class counsel "fairly and adequately protect the interests of the class," a duty that includes the obligation to investigate, develop, and litigate the claims that are central to the class's alleged injury. *See, e.g.*, *In re Paysafe Ltd.*, No. 21-cv-10611, 2022 WL 1471122, at *7 (S.D.N.Y. May 10, 2022), *adopted sub nom. In re Paysafe Ltd. Sec. Litig.*, No. 21-cv-10611, 2024 WL 1636415 (S.D.N.Y. Apr. 16, 2024) (adequacy requirement met where class representatives and counsel's " interest in aggressively pursuing claims against Defendants is aligned with the interests of other putative class members who were similarly harmed as a result of Defendants' [unlawful conduct] … "and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation"). Here, the *Payment Card* Plaintiffs and their counsel failed to satisfy this requirement with respect to the conduct at issue in the debit market.

Even though the ERCC affirmatively alleged a debit-market monopolization theory, *id.*, ¶¶ 382–83 (alleging that Visa "ha[s] successfully excluded competition [maintaining monopolization] in the Relevant [Debit-Card] Market" by "adopting and enforcing the Anti-Steering Restraints, and thwarting the procompetitive reforms of the Durbin Amendment and the DOJ consent decree"), class counsel did not meaningfully pursue that claim by developing the expert and factual record necessary to support it, and the Equitable Relief Class Representatives ultimately presented no material evidence in opposition to Visa's motion for summary judgment on that claim. *See Payment Card II*, 729 F. Supp. 3d at 336 (describing Visa's argument that the Equitable Relief Class Representatives' "boilerplate debit monopolization claim fails for a lack of evidence").

10

Unsurprisingly, this Court entered summary judgment in favor of Visa on those claims, finding that the Equitable Relief Class Representatives "failed to offer sufficient evidence to permit a reasonable jury to conclude that [Visa's] conduct was exclusionary." *Id.* at 337. That failure is directly relevant to the Rule 23(a)(4) adequacy inquiry: the claims were dismissed not because they lacked merit but because the Equitable Relief Class Representatives and their counsel never developed the evidentiary record necessary to support their vaguely worded contentions—though they now place merchants' equitable relief claims in the *Debit Card Litigation* at risk of being extinguished by an overbroad release Visa inserted into the Proposed Amended Settlement. None of that history suggests that the Equitable Relief Class Representatives or their counsel have "fairly and adequately protect[ed] the interests of the class[,]" Fed. R. Civ. P. 23(a)(4), such that this Court could properly find by a preponderance of the evidence that the prerequisites of Rule 23(a)(4) are satisfied here. And without that finding, there can be no certification of the class as defined in the Proposed Amended Settlement.

iii.    <u>The Proposed Amended Settlement is Fundamentally Unfair Because Its Industry-Wide Effects Cannot Be Corrected or Modified After Approval.</u>

The Proposed Amended Settlement is also fundamentally unfair because, once approved, it will bind a class of "[a]ll persons, businesses, and other entities that accept Visa-Branded Cards in the United States at any time during the period between December 18, 2020 and the date of the preliminary settlement approval"[5] to a fixed set of remedial terms that the Court lacks authority to modify, expand, or recalibrate in order to promote competition in the relevant U.S. debit markets. Unlike an injunction issued after a full adjudication on the merits—where the Court retains ongoing supervisory power to adjust relief in response to market developments or evidence of continued anticompetitive harm—a Rule 23(b)(2) settlement freezes the negotiated relief in place

---

[5]    *See* Amended Class Settlement Agreement 13 (¶ 1(ff)), ECF No. 9692-2.

and forecloses rigorous judicial oversight. *See, e.g.*, *Host Am.*, 2007 WL 3048865, at *1 ("[A] court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." (citing *Amchem*, 521 U.S. at 620)) This inflexibility is especially problematic here, where the relief provides no meaningful constraints on Visa's debit-market practices despite the extensive evidence and allegations of Visa's monopolistic conduct in the relevant U.S. debit markets gathered by private plaintiffs and federal enforcers. Because those legal claims do not arise out of the same factual predicate, they cannot be released by this litigation at all. But they certainly should not be released without effective remedies for the benefit of merchants and the competitive process more generally. Were the Court to preliminarily approve a settlement that offers no debit-related reforms, it would—at a minimum—create significant obstacles (and more litigation) as to merchants' ongoing efforts in the *Debit Card Litigation*.

**B.**    **The Proposed Amended Settlement Must Exclude All Equitable Relief at Issue in the Debit Card Litigation to Satisfy Rule 23 by a Preponderance of the Evidence.**

For the Proposed Amended Settlement to satisfy Rule 23's requirements by a preponderance of the evidence, it must be modified to exclude all forms of equitable relief that overlap with or are currently being pursued in the *Debit Card Litigation*. *See Myers*, 624 F.3d at 547 ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."). But it once again reflects the Equitable Relief Class Representatives' and their counsel's failure to demonstrate that the Court will be able to "certify the class for purposes of judgment on the proposal" under the explicit requirements of Rule 23(e)(1)(B)(ii). *See Payment Card I*, 330 F.R.D. at 51. It offers no reductions to Visa's debit fees, no reforms to Visa's debit network rules, and no structural constraints on

Visa's use of FANF or other network fees. Any remedial measures implemented in the settlement apply exclusively to credit transactions. Yet the Proposed Amended Settlement purports to simultaneously deprive the Merchant Plaintiffs of the opportunity to pursue equitable relief in the debit market by sweeping those claims into a broad and extended release. A settlement that eliminates all viable avenues for redressing ongoing competitive harm—while offering no debit-related reforms whatsoever—cannot satisfy Rule 23's adequacy or fairness requirements. To meet Rule 23's standards, the Proposed Amended Settlement must exclude all debit-related equitable relief from its release.

C.      **Alternatively, the Court Should Hold Expressly that the Debit-Related Claims Asserted by the Equitable Relief Class Representatives Are Not Factually Identical to Those Pursued in the Debit Card Litigation.**

Even if the Court were to conclude that the Equitable Relief Class Representatives and their counsel could satisfy Rule 23(a)(4) generally, the Proposed Amended Settlement still cannot be approved because it impermissibly purports to release claims pursued in the *Debit Card Litigation*, which are outside the "identical factual predicate" of the *Payment Card I* action. Under black-letter Second Circuit law, a class settlement may release only claims that "depend[] on the very same set of facts" as the settled action. *See Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981); *see also TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982).

This Court has already ruled that the *Debit Card Litigation* does not share an identical factual predicate with *Payment Card*. This past August, the Court denied Visa's motion to enforce a prior settlement in this MDL against certain putative class members in the *Debit Card Litigation*, declining to apply a broad release because the latter case "rel[ies] on facts related to Visa's market power, 'disintermediation' strategy, and agreements with companies like Apple, PayPal, and

13

Square, none of which were 'presented directly' in *In re Payment Card*." *Payment Card III*, 2025 WL 2412033, at *7. Accordingly, this Court ruled that the *Debit Card Litigation* depends on "proof of further facts" than were at issue in *Payment Card*. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-md-2017, 2012 WL 2478483, at *6 (S.D.N.Y. June 29, 2012) (declining to release claims that share "common factual elements" because of "numerous additional facts that are central to" the subsequent litigation but not the settlement in question).

While Visa's motion to enforce concerned only the damages class settlement, the order and its logic indicate that the *Debit Card Litigation* is wholly outside of the entire *Payment Card* litigation such that no settlement there may validly release the *Debit Card* Plaintiffs' claims. That is made clear by this Court's reiteration that it "never considered (or even saw) evidence of the effects of [disintermediation] agreements on the market for payment processing services." *Id*. (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 24-cv-4053, 2024 WL 3249365, at *5 (E.D.N.Y. July 1, 2024) ("*Payment Card VI*")). The claims in *Debit Card Litigation*, which center those agreements as evidence of Visa's anticompetitive conduct, thus cannot be barred by a release in *Payment Card* because the disintermediation agreements with prospective competitors were not "at the core" of any part of MDL 1720. *See TBK Partners*, 675 F.3d at 460, 462. The proof is in the order itself. The August 2025 decision on Visa's motion to enforce takes its conclusion about these disintermediation agreements from a July 2024 decision, which held that similar claims based on Visa's anticompetitive agreements with Apple were too far outside the factual predicate of *Payment Card* to make even **consolidation** appropriate. *See Payment Card VI*, 2024 WL 3249365, at *5. That decision, of course, came down months after approval of the (b)(3) class settlement and after this Court issued its summary judgment decision

14

on monopolization—meaning this Court has already carved the *Debit Card Litigation* out not just from the (b)(3) class's litigation but from *Payment Card* as a whole.

But even focusing narrowly on the conduct in the (b)(2) class litigation to date, the stark differences between the claims asserted by the Merchant Plaintiffs and those pursued by the Equitable Relief Class Representatives confirm that they do not share an identical factual predicate. While the ERCC contains one section describing factual allegations about Visa's monopolistic conduct, it (like the operative (b)(3) class complaint, ECF No. 7118) does not plead a developed standalone theory of anticompetitive debit-specific network fees. Any reference to Visa's monopolistic conduct it makes is not to Visa's *unilateral* conduct but instead focuses on monopoly power exercised by Visa *and its Member Banks* in tandem. *See*, *e.g.*, ERCC ¶ 415 ("Visa and its Member Banks have and have exercised monopoly power with respect to Debit Card Interchange Fee imposed on Merchants and/or with respect to the total price imposed on Merchants and cardholders."). Further, the complaint provides no meaningful factual detail regarding other Visa debit-network fees, their structure, or how Visa's use of them may affect routing incentives or competition among debit networks. Likewise, the ERCC does not meaningfully plead allegations regarding any other Visa debit-network fee, the magnitude of such fees, how Visa uses them to influence routing behavior, or how they foreclose rival debit networks.

Further, to the extent the identical factual predicate analysis depends on the litigation conduct of the (b)(2) class specifically, it bears repeating that the Equitable Relief Class Representatives, unlike the DAPs, did not support their monopolization claims with sufficient evidence to survive summary judgment, and their abortive effort does not inherit broader preclusive effect because other parties pursued similar claims more diligently. By contrast, the *Debit Card Litigation* Merchant Plaintiffs' consolidated complaint advances a deeply developed

and extensively detailed theory that Visa maintains its monopoly in the U.S. debit-network-services market through a multi-pronged campaign of exclusionary conduct. The Merchant Plaintiffs specifically allege that Visa forecloses rival debit networks from achieving scale by locking merchants and acquirers into routing agreements and volume-commitment contracts that insulate roughly 75% of Visa's debit transactions from competitive routing (¶¶ 26–34, 39). They further detail how Visa leverages high rack rates, penalties, and network fees to punish merchants and acquirers that divert debit traffic to competitors (¶¶ 79–83, 146). The complaint also describes Visa's coercive issuer agreements, including incentive-laden deals that discourage or prevent issuers from enabling rival debit networks (¶¶ 92–100). Finally, the Merchant Plaintiffs provide an extensive factual account of Visa's long-term, incentive-based arrangements with major fintech firms, such as Apple, PayPal, and Square (in addition to its attempted acquisition of Plaid), designed to neutralize emerging competitive payment rails and preserve Visa's dominance (¶¶ 30–32, 144–66). These allegations span dozens of paragraphs and set forth a sophisticated, fact-intensive monopolization theory centered on Visa's debit-network foreclosure practices, underscoring that, unlike the Equitable Relief Class Representatives' amended complaint, the Merchant Plaintiffs place Visa's exclusionary debit conduct at the *core* of their case. *See TBK Partners*, 675 F.3d at 462; *see also In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010) ("[R]eleasing claims that do not arise out of the same core nucleus of fact … would violate the identical factual predicate doctrine.").

Accordingly, because the Equitable Relief Class Representatives' debit-related claims rest on an entirely different factual foundation than the claims pursued in the *Debit Card Litigation*, the Court should hold that they are not factually identical and therefore cannot be released by the Proposed Amended Settlement. This conclusion follows directly from the same logic that required

16

excluding the *Debit Card Litigation* Merchant Plaintiffs' claims from the damages class settlement: When two sets of claims arise from distinct conduct and distinct theories of harm, they do not share an identical factual predicate and may not be extinguished through a single class settlement. *See* Memorandum & Order at 13, 16–20, ECF No. 9647. The factual mismatch the Court identified in the (b)(3) context exists with equal force here. As a result, the Court's prior reasoning compels the same outcome: These distinct debit-market claims cannot be released.

## III.    CONCLUSION

For the foregoing reasons, the Merchant Plaintiffs in the *Debit Card Litigation* respectfully request that the Court deny preliminary approval to the Proposed Amended Settlement unless and until the concerns expressed above are resolved through (1) amendments to the Proposed Amended Settlement, and/or (2) appropriate findings by the Court concerning the identical factual predicate doctrine as it relates to the claims advanced by the merchants in the *Debit Card Litigation*.

Dated: December 12, 2025          Respectfully submitted,

*/s/ Christopher L. Lebsock*
Christopher L. Lebsock (*pro hac vice*)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980
clebsock@hausfeld.com

Daniel P. Weick (Bar Code 4822011)
Scott Martin (Bar Code SM7373)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
dweick@hausfeld.com
smartin@hausfeld.com

Brian A. Ratner (*pro hac vice*)
Jane Shin (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200
Fax: (202) 540-7201
bratner@hausfeld.com
jshin@hausfeld.com

*/s/ Brent W. Johnson*
Brent W. Johnson (Bar Code 4955745)
Benjamin D. Brown (*pro hac vice*)
Daniel McCuaig (*pro hac vice*)
Zachary Krowitz (*pro hac vice*)
Alex Bodaken (Bar Code 5937255)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Eighth Floor
Washington, DC 20005
Tel: (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
dmccuaig@cohenmilstein.com
zkrowitz@cohenmilstein.com
abodaken@cohenmilstein.com

Manuel J. Dominguez (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
Tel: (561) 515-2604
jdominguez@cohenmilstein.com

*Counsel for Plaintiffs and the Proposed Class*

*/s/ Matthew Tripolitsiotis*
Matthew Tripolitsiotis (Bar Code MT9413)
**BURNS CHAREST LLP**
757 Third Ave., 20th Floor
New York, NY 10017
Tel:  (469) 895-5269
mtripolitsiotis@burnscharest.com

Christopher J. Cormier (*pro hac vice*)
Matt Strauser (*pro hac vice*)
Ian Baize (*pro hac vice*)

**BURNS CHAREST LLP**
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: (202) 577-3977
ccormier@burnscharest.com
mstrauser@burnscharest.com
ibaize@burnscharest.com

Warren T. Burns (*pro hac vice forthcoming*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
wburns@burnscharest.com

*/s/ Brian Danitz*
Brian Danitz (Bar Code 5790217)
Joseph W. Cotchett (*pro hac vice forthcoming*)
Adam J. Zapala (*pro hac vice*)
Gia Jung (*pro hac vice forthcoming*)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
bdanitz@cpmlegal.com
jcotchett@cpmlegal.com
azapala@cpmlegal.com
gjung@cpmlegal.com

Karin B. Swope (*pro hac vice forthcoming*)
Thomas E. Loeser (*pro hac vice forthcoming*)
Vara Lyons (*pro hac vice forthcoming*)
**COTCHETT, PITRE & McCARTHY, LLP**
999 N. Northlake Way Suite 215
Seattle, WA 98103
Tel: (206) 802.1272
Fax: (650) 697.0577
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com

*Counsel for Plaintiffs and the Proposed Class*

19