# EXHIBIT A

# DOWD BENNETT LLP

J. Russell Jackson        Direct Dial: 314.889.7379        Email: rjackson@dowdbennett.com

**PRIVILEGED & CONFIDENTIAL RULE 408 COMMUNICATION**
**SUBJECT TO THE COMMON INTEREST/JOINT PROSECUTION PRIVILEGES**

January 10, 2025

*Via Email:*

Steve D. Shadowen, Esq.
Hilliard & Shadowen LLP
1717 W. 6th Street, Suite 290
Austin, Texas 78703

Robert G. Eisler, Esq.
Grant & Eisenhofer PA
123 Justison Street
Wilmington, Delaware 19801

Michael J. Freed, Esq.
Freed, Kanner, London & Millen LLC
100 Tri-State International Drive, Suite 128
Lincolnshire, Illinois 60069

Linda Nussbaum, Esq.
Nussbaum Law Group, P.C.
1211 Avenue of the Americas, 40th Fl.
New York, New York 10036

Re: *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-01720 (MKB) (JAM) (E.D.N.Y.)

Dear Counsel:

    I write in response to your December 9, 2024 letter in which you agreed to receive Walmart Inc.'s input into class counsel's strategy in negotiating a revised settlement of this action with defendants. Although your letter studiously avoided our request for information about the history and status of this latest phase of settlement discussions, Walmart renews its request. To provide meaningful input, we need some context to help you evaluate what strategies may actually lead to settlement terms that increase competition. Despite our objections to the mandatory nature of your class, Judge Brodie has so far not allowed Walmart to opt out and thus we have no choice but to accede to your representation of our injunctive claims in the above-referenced litigation. We want to help you reach a resolution that we and other Large National Merchants would actually be able to benefit from and support.

    We would like to have a Zoom meeting with you next week to discuss the status of negotiations and what specific types of relief may actually promote competition. You asked Walmart to send its "perspective and specific ideas in advance of a discussion." In the context of Federal Rule of Evidence 408 settlement discussions and a common interest privilege, we are including with this letter a list of some of our ideas of types of relief that would increase competition. (This communication cannot be shared with defendants.) We are not suggesting that a settlement would have to include all (or even most) of these potential provisions to meaningfully increase competition. But we have provided a thoughtful and robust list in response to your request so that you understand we are attempting to think creatively to avoid the type of settlement the

Court rejected last time—one focused almost exclusively on surcharging and small haircuts off of defendants' massive interchange fees, which would do almost nothing to increase competition.

As stated in its December 8 letter, Walmart's long-held position is that for any proposed settlement to be fair, reasonable, and adequate, the settlement must in some way modify Visa's and Mastercard's Honor All Cards, Honor All Issuers, and other Equal Treatment rules to give merchants the ability to negotiate interchange fees directly with issuing banks. With such rules changes, issuers could compete to gain acceptance or preference at merchants, and that competition would give merchants leverage to negotiate interchange rates. Today, with the current rules in place, merchants have zero ability to negotiate directly with issuing banks on the terms of Visa and Mastercard card acceptance. Walmart and other large merchants are best positioned to spur competition that will benefit *all* merchants—both large and small, in-store and online—in the United States, but only if the proposed settlement provides genuine relief from Visa's and Mastercard's competitive restraints.

Please review the enclosed Exhibit A outlining potential settlement provisions and let us know when you would be available to meet next week to discuss. We look forward to working with you to attempt to advance a settlement proposal that we (and other Large National Merchants) could actually support.

Sincerely,

J. Russell Jackson

# EXHIBIT A

- **Honor All Cards/Honor All Issuers**

    - Afford merchants with the right to not accept cards from issuers with assets in excess of $10 billion.
    - Afford merchants with the right to accept issuers' cards in certain channels (*e.g.*, ecommerce, in-app, in-store), POS devices, brands, or geographies with no obligation to accept in other channels, POS devices, brands, or geographies.
    - Afford merchants with the right to not accept new products that ride Visa's or Mastercard's networks but are not a traditional credit or debit product (e.g., Buy-Now-Pay-Later or crypto).
    - Afford merchants with the right to not accept cards from issuers/bank identification numbers that are high-risk.
    - Afford merchants with the right to accept contactless cards but not wallets (or vice versa).
    - Afford merchants with the right to differentiate between pass-through wallets, including allowing merchants to choose what wallet is accepted or not.

- **Steering**

    - Afford merchants with the right to steer or incentivize by issuer or network across all dimensions of steering, including by
        - preferencing an issuer's or network's brand online or at the POS in brick and mortar environments,
        - discriminating against issuers or networks that are unwilling to negotiate fees,
        - discounting by issuer or network, or
        - surcharging by issuer or network.
    - Elimination of rules that make surcharging impractical, including level-the-playing field, notice requirements, and disclosure requirements.

- **Tokenization**

    - Prohibit differential pricing or any fees for tokenization, detokenization, and authentication.

Case 1:05-md-01720-BMC-JAM    Document 9729-2    Filed 12/12/25    Page 5 of 9 PageID #: 553677

Page | 4

- **No Bypass**

    - Prohibit networks from preventing issuers and/or merchants to bypass the networks' rails, including the elimination of any network restriction, fee, penalty, or financial/non-financial incentive/repercussion that prevents merchants and issuers from settling transactions directly between the parties or through other parties.
    - Clarify that the PAN (including tokenized version of PAN) is owned by the consumer, and with the consumer's consent, merchants can use the PAN (including tokenized version of PAN) for purposes beyond authorization, clearing, and settlement of a transaction.

- **Surcharges**

    - Afford merchants with the right to differentiated surcharge amounts by network, issuer, or product.
    - Prohibit the collection of interchange and network fees on the surcharge amount.
    - Prohibit setting a maximum surcharge amount that is below a merchant's actual cost of acceptance for a particular transaction.
    - Prohibit differential pricing, or additional fees and penalties assessed to a merchant because it surcharges.
    - Prohibit any requirements on a merchant to disclose surcharge amounts to its acquirer or processor or to disclose to the consumer that the merchant assesses the surcharge.
    - Prohibit restrictions on a merchant's ability to surcharge based on surcharging from other networks (*e.g.*, American Express)

- **Default Interchange**

    - Prohibit default interchange setting for issuers with assets in excess of $10 billion.
    - Lower and cap interchange fee rates.
    - Lower and cap network assessment fee rates and structure as fixed rates, not ad valorem.
    - Prohibit incremental fees beyond network assessments that are unavoidable.

# DOWD BENNETT LLP

J. Russell Jackson      Direct Dial: 314.889.7379      Email: rjackson@dowdbennett.com

---

**PRIVILEGED & CONFIDENTIAL RULE 408 COMMUNICATION**
**SUBJECT TO THE COMMON INTEREST/JOINT PROSECUTION PRIVILEGES**
**DO NOT COPY OR FORWARD THIS COMMUNICATION**

February 12, 2025

*Via Email:*

Steve D. Shadowen, Esq.
Hilliard & Shadowen LLP
1717 W. 6th Street, Suite 290
Austin, Texas 78703

Michael J. Freed, Esq.
Freed, Kanner, London & Millen LLC
100 Tri-State International Drive,
Suite 128
Lincolnshire, Illinois 60069

Robert G. Eisler, Esq.
Grant & Eisenhofer PA
123 Justison Street
Wilmington, Delaware 19801

Linda Nussbaum, Esq.
Nussbaum Law Group, P.C.
1211 Avenue of the Americas,
40th Floor
New York, New York 10036

Re:    *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-01720 (MKB) (JAM) (E.D.N.Y.)

Dear Counsel:

     I regret that we were unable to come to agreement on an NDA in sufficient time to have last week's scheduled meeting. Walmart still would like to meet with you to discuss a settlement that benefits all merchants. We believe a mutually agreeable NDA is possible that can allow us to hold frank and candid discussions. I will work with Steve to see if we can agree to an NDA and schedule a meeting at a mutually agreeable time. But in case you are presently in negotiations with Defendants, my client wanted me to share these additional thoughts with you about the list of suggestions we previously provided.

     The primary problem with the prior proposed settlement—as the court understood—was that it would have done nothing to introduce real competition among issuers for the acceptance of their cards and the associated interchange fees. Temporarily taking a small haircut off the top of the fees, establishing a cap at prevailing, supracompetitive rates, or relying on surcharging will not lead to a competitive market. In an effort to assist in formulating an acceptable settlement, I have summarized below (with my client's help) a few key terms that would foster meaningful competition and lower fees over the long term. We also emphasize that, with the Defendant networks, "the devil is in the details." Walmart's treasury team

has dealt with the networks and card issuers for years and understands how they give on one point and take back somewhere else. I encourage you to enlist Walmart or other sophisticated payment professionals for help before reaching any final agreement with Defendants.

## HONOR ALL CARDS

1. **Honor All Issuers.** The single most important issue to address in any proposed settlement is the anti-competitive Honor All Cards (HAC) rule, which by default forces merchants to accept all issuers' cards. An acceptable settlement would afford merchants the right to not accept cards from issuers who have over $10B in assets. This would allow the merchant community, whether directly or through their acquirers, to have meaningful commercial negotiations with such issuers who represent the vast majority of all U.S. credit card transaction volume. These negotiations could result in the continued widespread acceptance of issuers' cards, but at a lower cost to merchants who could then pass the savings on to their customers. To achieve this competitive outcome, a settlement would need to include: (1) modifications to Visa and Mastercard HAC rules and (2) a prohibition of Visa and Mastercard using rules, disincentives, or other tools to inhibit issuers from entering such agreements with merchants and/or their acquirers.

2. **Form Factors and Funding Sources.** Also due to the current HAC rule, merchants have no choice but to accept all form-factors (*e.g.*, cards, phones, wallets) and non-traditional funding sources (*e.g.*, BNPL, Points, Rewards) that ride the Visa and Mastercard rails. An acceptable settlement would afford merchants the right to choose what form-factor and funding sources they accept. This would allow the merchant community, whether directly or through their acquirers, to have meaningful commercial negotiations to determine an acceptable cost versus allowing Visa and Mastercard to unilaterally expand their interchange rules beyond the scope of what has been established as traditional debit and/or credit cards. For example, both Visa and Mastercard have developed or plan to introduce "flex" products that can combine the functions of several different payment products at differing cost to the merchant. Merchants welcome truly innovative products, but they must have the right to decide for themselves whether the benefits of such products outweigh the associated costs.

## NO BYPASS

This rule is directly tied to the HAC rule detailed above and currently inhibits merchants' ability to have meaningful negotiations with the issuers. Both Visa and Mastercard prohibit or disincentivize issuers from bypassing the networks' rails to settle transactions directly with merchants or their acquirers. An acceptable settlement would need to include modifications—or outright prohibition—of such No Bypass practices. If fee competition is to occur, Visa and Mastercard must eliminate any rule, fee, or disincentive that prevents or discourages issuers from settling transactions *directly* with merchants or their acquirers. Although Visa may permit JP Morgan Chase to do this in a limited fashion today, misalignments in the current incentive model have inhibited merchants' ability to have meaningful negotiations that actually lower costs.

## SURCHARGING

Although we included references to surcharging in my previous letter, I want to make clear that Walmart opposes surcharging and believes that including it as a form of relief in a settlement wastes negotiation capital that is better spent elsewhere on changes that actually can result in competition and lower costs to the merchant community and their customers. Surcharging penalizes consumers and rewards issuing banks (as well as Visa and Mastercard), who receive *more* interchange *and* fees on the surcharge amount. This is the opposite of incentives the merchant community should favor. Consumers do not want surcharging. Nor does surcharging fix the circular issue related to American Express's ability to effectively bar surcharging and related so-called equal treatment provisions. Additionally, many states (including New York) prohibit or disincentivize surcharging, which negates any perceived benefit it could bring to merchants. The merchant community desires *lower* costs for consumers, which can be accomplished through issuer competition. An acceptable settlement would be one that does not rely on surcharging as the relief mechanism. If, however, Class Counsel elects to move forward with another surcharging proposal in a proposed settlement, then you must address: (1) rules that are impractical, including any level-playing-field requirements regarding other networks' rules; (2) notice requirements (to the consumer or the acquirer) that discourage merchants from implementing surcharging; and (3) enabling unfettered merchant surcharging at the issuer level.

\* \* \*

My client hopes to have time at a meeting with Class Counsel to address the remaining settlement terms listed in my prior letter, as well as to expound on the ones described above.

In closing, Walmart seeks a resolution of the (b)(2) class action that provides real relief to the broader merchant community as a whole. Walmart has been, and

continues to be, an industry champion, advocating for causes that benefit the *entire* merchant community. Walmart vigorously competes in retail to provide consumers with everyday low prices. In contrast, interchange fees are not subject to competition. The result is that interchange fees are much too high. The system is broken and needs to be fixed. Competition is the solution.

My client believes strongly that all merchants—and their customers—benefit when the interchange fees are determined by competition among issuing banks for the merchants' business. Walmart looks forward to strategizing with you about what settlement terms would best facilitate that competition over the long term. Walmart has a long history of dealing with payment card fees from a merchant's perspective and is open to providing you with feedback on strategy and specific provisions from an operational perspective as you negotiate with Defendants.

Sincerely,

J. Russell Jackson