**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3084**

WRITER'S EMAIL ADDRESS
**adamwolfson@quinnemanuel.com**

January 26, 2026

**VIA ECF**

The Honorable Joseph A. Marutollo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 1:05-md-1720 (BMC) (JAM) (E.D.N.Y.); *Intuit Inc., et al. v. Visa Inc., et al.*, No. 1:21-cv-001175 (BMC) (JAM) (E.D.N.Y.)

Dear Judge Marutollo:

Plaintiffs Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") and Defendants jointly submit this letter pursuant to Your Honor's Rule VI.B to seek the Court's assistance in resolving a dispute over the deposition of Intuit employee Angelique Kamara, which Intuit moves to quash. Below, Intuit and Defendants set forth their positions for the Court's consideration.

### Intuit's Position

Intuit moves to quash the deposition of Angelique Kamara, which was first requested on Wednesday, January 21, 2026 and officially noticed the evening of Friday, January 23, 2026. Defendants noticed a deposition for January 30, 2026, which is the last day of fact discovery in this five-year-old case and the same day Intuit must submit its opening expert reports. Even if this late notice were not so transparently aimed at diverting Intuit's resources at the last instant when it needs to instead focus on expert reports, the request simply violates the Federal Rules of Civil Procedure.

Rule 45(d)(3)(A)(i) requires a court to quash a subpoena if it "fails to allow a reasonable time to comply." In this Court, 14 days is presumptively reasonable and anything less must be considered in light of the facts and circumstances of the case. *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, 2010 WL 2219343, at *5-6 (E.D.N.Y. Feb. 5, 2010), *report and recommendation adopted in relevant part*, 2010 WL 1686811 (E.D.N.Y.

**quinn emanuel urquhart & sullivan, llp**
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO |
SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Apr. 26, 2010) (quashing subpoena with less than 14 days notice); *see also Mann v. Univ. of Cincinnati*, 824 F. Supp. 1190, 1202 (S.D. Ohio), *aff'd*, 152 F.R.D. 119 (S.D. Ohio 1993), *aff'd*, 1997 WL 280188, at *5 n.5 (6th Cir. May 27, 1997) (deposition notice of less than 14 days unreasonable). For this reason, courts within this circuit have ruled that noticing a deposition as few as five days and as much as nine days in advance of a deposition was not "reasonable time to comply." *See, e.g., Bouchard Transp. Co., Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 2015 WL 6741852, at *2 (S.D.N.Y. Nov. 4, 2015) (five days); *Brown v. Hendler*, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (nine days). Other courts have found eight and seven days unreasonably short. *See Memorial Hospice, Inc. v. Norris*, 2008 WL 4844758, at * 1 (N.D. Miss. Nov. 5, 2008) (eight days); *United States v. Woods*, 931 F. Supp. 433, 442 n. 3 (E.D. Va. 1996) (seven days).

Intuit filed this case in 2021 and the parties began discovery the same year. In the years since, Defendants tried again and again to forestall Intuit's rights to discovery and it has just regularly pushed back against those efforts. More recently, Defendants argued multiple times this Court should extend the discovery deadlines, which the Court denied each time. *See* Aug. 29, 2025 Order ("The Court is not inclined to extend discovery deadlines."); Oct. 1, 2025 Order ("As the parties acknowledge, the Court has stated that it is not inclined to extend discovery deadlines").   . Intuit continued to press forward; Defendants continued to dither.

Ms. Kamara did not start working for Intuit until early 2025, meaning she was not at the company for the vast majority of its 20-year damages period. Nevertheless, to use Defendants' own words, in her current role, she "has responsibility for Intuit's relationships with Visa, Mastercard, Chase, and other networks and financial institutions." Defendants thus well know who she is, and have known since she joined Intuit slightly less than a year ago. Furthermore, Intuit produced Ms. Kamara's responsive documents to Defendants last year, but they never once mentioned her or any supposed need to obtain discovery from her until January 21, 2026, and her job duties do not include interchange-related issues (which is the core of this case). Furthermore, in December 2025 and early January 2026, Defendants took Intuit's Rule 30(b)(6) deposition on topics involving its agreements with Visa and Mastercard, its contentions of harm, and multiple other issues about Defendants' liability for their decades-long anticompetitive conduct.

What all this means is that, at the very last instant, Defendants have requested the deposition of someone who is at best tangentially related to the case, does not have any historical personal knowledge about Intuit's dealings with Defendants, who does not actually work on interchange-related issues, and was never once mentioned as a potential deponent before last week. She also is not on Intuit's initial disclosure list, so is not someone that Intuit intends to rely on at trial.

Notably, below, Defendants largely ignore the unreasonably short nature of their deposition notice and instead argue that they are justified in seeking Ms. Kamara's deposition because she is a relevant deponent. Intuit does not dispute that Defendants could have deposed Ms. Kamara during fact discovery, even though her relevance is limited (as is her personal knowledge). The issue on this motion is that Defendants waited until the last instant to notice that deposition, thus violating Rule 45(d)(3)(A)(i). Defendants try to justify this by pointing to the parties' December 16, 2025 joint stipulation, which stated either side could "***request***" up to two more depositions to occur before January 30, 2026 if they in good faith believed such a deposition was necessary. The

parties then repeated that stock language in their January 20, 2026—language Defendants inserted at the last instant. That was of course the parties' stipulation, but Intuit never waived its rights under Rule 45(d)(3)(A)(i) and Defendants could have requested Ms. Kamara's deposition in the presumptively reasonable 14-day time period. They did not and, for the reasons noted herein, their request comes too late and is unreasonably short.

Defendants' cited cases do not change this conclusion. Each show by contrast why the facts and circumstances of this case mandate quashing Ms. Kamara's notice of deposition. *Fu* v. *Consol. Edison Co. of New York, Inc.*, 2018 WL 4373995 (S.D.N.Y. Sept. 13, 2018), for example, addressed a six-day deposition notice only issued after defense counsel: tried to schedule the deposition for ***seven months***; scheduled the deposition; had it cancelled at the last instant due to plaintiff's counsel withdrawing; obtained a court order compelling the deposition; offered multiple dates for the deposition; and then issued a notice on one of the offered dates when plaintiff's counsel did not respond. *Id.* at *5. That is the epitome of diligence, in stark contrast to what happened here, which was that Defendants never before mentioned Ms. Kamara until nine days before the close of fact discovery in a five-year-old case. *Cerco Bridge Loans 6 LLC* v. *Schenker*, 768 F. Supp. 3d 559, 586 (S.D.N.Y. 2025), similarly involved re-noticing a previously scheduled deposition that involved more than a month of negotiation regarding the new deposition date. *Id.* at 586. Again, the noticing party was clearly diligent in seeking the deposition. Moreover, the noticed plaintiff simply did not appear for their deposition, unlike Intuit's timely motion to quash here. *Id.* Finally, in *F.A.A.* v. *Landy*, 705 F.2d 624 (2d Cir. 1983), the unique facts of that case involved the plaintiff locating an important witness just days before trial, alerting the opposing side to the intention to depose them, providing a notice of deposition quickly, and then not receiving anything but a mailed notice of motion to vacate the notice days after the deposition's scheduled start. *Id.* at 634-35. Such exigent circumstances are obviously not at issue here.

What all of this confirms is the unreasonably short nature of Defendants' deposition notice. At absolute best, Defendants requested Ms. Kamara's deposition nine days before it was to occur (January 21, 2026), which fails the reasonableness test on its own. But the Second Circuit is clear that only an official notice complying with all of Rule 30(b)(1)'s requirements actually begins the clock for determining timeliness,[1] and Defendants did not provide such notice until less than seven days before the noticed deposition start time. This, too, is facially unreasonable.

But even if the short notice period were not alone dispositive on unreasonableness, Defendants' lack of diligence and the prejudicial timing of their request—*i.e.*, a deposition the same day Intuit must submit opening expert reports—further underscores the unreasonably short nature of the deposition notice.

Because the deposition notice "fails to allow a reasonable time to comply," "the court … must quash" the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(i).

---

[1] *See Cornell v. Kapral*, 483 F. App'x 590, 592 (2d Cir. 2012) (because an "informal e-mail communication between counsel did not conform to the requirements of Rule 30 of the Federal Rules of Civil Procedure" it did not count as a deposition notice).

**Defendants' Position**

Defendants have in good faith sought the deposition of Ms. Kamara because she possesses knowledge that is highly relevant to Defendants' defenses. Defendants have done so consistent with the case schedule and with the parties' agreement that if a party believes in good faith that there is an additional witness whose deposition is needed, the party may request such deposition to occur before January 30, 2026. (ECF Nos. 107, 108.) Consistent with that schedule and agreement, which the parties reiterated as recently as January 20 in their joint status report (ECF No. 108 at 1–2), Defendants noticed the deposition of Ms. Kamara to occur on January 30 after making a good-faith determination that this deposition was needed. This is the only additional deposition that Defendants have requested, and the only remaining fact deposition that Defendants anticipate occurring before the close of fact discovery. Defendants made clear to counsel for Intuit that they do not anticipate the deposition lasting a full day, that Defendants would be willing to agree to a time limit of five hours on the record to take the deposition remotely, and that Defendants are willing to meet and confer with Intuit to schedule the deposition on a date and time convenient for the witness as well as to discuss any alternative time limitation that Intuit wished to propose. Instead of engaging with Defendants on these scheduling issues, Intuit has sought to block Defendants from taking the deposition entirely, claiming—contrary to Intuit's own representations in the January 20 status report—that Defendants' notice came five days too late. Intuit's objections are meritless. Defendants respectfully submit that the deposition should proceed.

Ms. Kamara is a senior member of Intuit's Corporate Business Development team, and in that role she has significant responsibilities for Intuit's longstanding relationships with Visa, Mastercard, and other payment networks, as well as financial institutions. Intuit's claim is that each of Visa and Mastercard is in a separate conspiracy with the banks that issue that network's payment cards, resulting in adverse effects on competition, including, per Intuit's allegations, supracompetitive interchange fees, suppressed output, and reduced innovation. But Intuit's close business partnerships—for which Ms. Kamara has responsibility—show the opposite. They show that, in key respects, Intuit's incentives are aligned with Visa's and Mastercard's, and that Intuit works together with the networks to increase the volume of payment card transactions, moving transactions away from alternative payment rails, and considers itself to work alongside the networks on innovations in the payments space. These relationships show that Intuit has immense bargaining power to pit networks and financial institutions against each other to win Intuit's business, and that Intuit itself characterizes the networks as being subject to intense competition. And they show that, separate from the fees that Intuit charges its merchant customers for acting as a middleman between those merchants and acquiring banks, Intuit earns substantial revenue every year from partnering with networks and financial institutions—including direct revenue from the very interchange fees that Intuit challenges in this litigation.[2]

Plaintiffs assert that Ms. Kamara is "tangentially related to the case." That is wrong. The evidence summarized above directly undercuts Plaintiffs' theories of liability and harm. It is not up to Plaintiffs how Defendants will frame their defenses, and Defendants are entitled to discover

---

[2]    Because this is a public filing, Defendants describe the record evidence without specific reference to highly confidential information. Defendants stand ready to provide more specific information, documents, and testimony on these issues to the Court under seal if helpful.

the information that they understand to be relevant to defending themselves against Plaintiffs' damages claims, based on more than 20 years of transactions worth billions of dollars. *See, e.g.*, *Alberty* v. *Hunter*, 343 F.R.D. 1, at *8 (D. Conn. 2022) (a "party seeking discovery is entitled to … draw its own conclusions as to the documents' usefulness" (citation omitted)); *Doe* v. *Yale Univ.*, 2022 WL 3700881, at *2 (D. Conn. June 21, 2022) (denying plaintiff's motion seeking to prevent defendants from taking depositions to obtain "information relevant to their defense").

Plaintiffs' argument that Ms. Kamara does not possess historical personal knowledge of Intuit's relationships with payment card networks and financial institutions because she joined the company in early 2025 is unavailing. Plaintiffs cannot simultaneously choose to bring claims over a 20-year damages period, continuing up to and including the present day, and require that any individual Defendants seek to depose have commensurate tenure at the company. Defendants have no control over when Intuit chooses to hire the senior decision-makers responsible for its relationships with payment card networks and financial institutions. Certainly, Ms. Kamara has relevant personal knowledge about Intuit's key network and financial institution partnerships since she joined the company, but Defendants are also entitled to discover her knowledge and awareness of the Business Development team's historical view of those relationships—which Ms. Kamara likely would have been educated on when she stepped into her role. It does not matter that the historical information may not be directly admissible through Ms. Kamara; Defendants are entitled to her testimony so long as it is relevant, non-privileged, and proportional to the needs of this case. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable."); *Underwood* v. *Coinbase Glob., Inc.*, 2025 WL 3273810, at *2 (S.D.N.Y. Oct. 7, 2025) (explaining breadth of relevance standard under Rule 26).

The deposition in question clearly meets this standard. It is relevant for the reasons described above, and Plaintiffs have no argument at all that Defendants' request for a single additional deposition is not proportional to the needs of this case. When Intuit chose to pursue its copy-cat claims following decades of merchant litigation, it gained access to millions of documents and dozens of depositions from Defendants. Just in this matter, Defendants Visa and Mastercard have offered (at the demand of Intuit and Square) five different witnesses for a total of 24 testimonial hours. Intuit and Square, by contrast, have offered two witnesses, both of whom were corporate representatives, for a total of 18.5 hours—and Intuit initially resisted offering anything more than seven hours of testimony, agreeing to 8.5 only after Defendants brought the dispute to the Court's attention and the Court ordered the parties to continue meeting and conferring about the time limits. And the witness that Intuit offered as its Rule 30(b)(6) witness simply does not have the knowledge that Ms. Kamara does regarding Intuit's relationships with networks and financial institutions and the many ways in which Intuit profits from them. Plaintiffs thus do not, and cannot, argue that Ms. Kamara's deposition would be duplicative of the Rule 30(b)(6) deposition that Defendants have already taken—it would be focused on the partnerships that Ms. Kamara is responsible for overseeing, and on obtaining information about the value of those partnerships to Intuit that the Rule 30(b)(6) deponent lacked.

Unable to challenge the requested deposition under Rule 26, Plaintiffs instead challenge the timing of Defendants' request, arguing that it should have come a few days earlier. As an

5

initial matter, Intuit's accusation that Defendants have sought this deposition with an intent to delay the case schedule or somehow distract counsel's attention from expert discovery is totally unfounded.  To the contrary, Defendants made the request for Ms. Kamara's deposition in good faith promptly after endeavoring in good faith to exhaust alternative sources of discovery and considering whether an additional deposition was needed.  Specifically, Defendants made this determination following Intuit's Rule 30(b)(6) deposition (which concluded on January 9; Defendants received the transcript on January 14) and a further review of documents to identify an individual who would be able to testify to the key issues summarized above.

This timing is fully consistent with both the case schedule and the parties' agreement concerning depositions.  As noted, and as memorialized in their December 16, 2025 and January 20, 2026 status reports, the parties agreed that if a party believes in good faith that there is an additional witness whose deposition is needed, the party may request such deposition, up to two per party, to occur before January 30, 2026.  (ECF Nos. 107, 108.)  Plaintiffs reiterated that agreement as recently as January 20.  (ECF No. 108.)  The next day, on January 21, Defendants requested a limited, remote deposition of Ms. Kamara for up to five hours.  That qualifies as reasonable notice, particularly given the compressed nature of the fact discovery in this highly complex matter—which, despite Intuit's reference to a five-year-old case, has taken place largely within the last few months.[3]  *See, e.g.*, *Fu* v. *Consol. Edison Co. of New York, Inc.*, 2018 WL 4373995, at *5 (S.D.N.Y. Sept. 13, 2018) (six days' notice was reasonable); *Cerco Bridge Loans 6 LLC* v. *Schenker*, 768 F. Supp. 3d 559, 586 (S.D.N.Y. 2025) (seven days' notice was reasonable); *F.A.A.* v. *Landy*, 705 F.2d 624, 634–35 (2d Cir. 1983) (four days' notice was reasonable).[4]

Defendants have no interest in "diverting" Intuit's sizeable legal team from preparing their expert reports, nor is there any reason to think this one partial-day, remotely conducted fact deposition could possibly have that effect.  Plaintiffs cannot suggest that they lack sufficient resources to prepare the witness while completing their reports, which they have been working on for months.  Defendants therefore respectfully request that the Court order Intuit to produce Ms. Kamara for a deposition.  While Defendants noticed the deposition for January 30,[5] as they have said to Intuit repeatedly, Defendants remain willing to work with Intuit both on the date of the deposition and on the time allotted.

---

[3]     Intuit suggests that Defendants have sought to extend the case schedule, because they have at times flagged for the Court that an immense amount of discovery was happening on a very tight timeline.  Defendants have never done so; all of the deadlines have been proposed jointly.

[4]     Plaintiffs' reliance on *Brown* v. *Hendler*, 2011 WL 321139 (S.D.N.Y. Jan. 31, 2011), is inapposite.  In that case, the court found that nine days was not a reasonable time to comply with a deposition subpoena "given the distance that [the deponent] was required to travel to appear for the deposition."  *Id.* at *2.  Here, Defendants explicitly requested that Ms. Kamara's deposition take place remotely, thereby obviating the need for any travel.

[5]     Intuit seems to ask the Court to ignore that Defendants sought Ms. Kamara's deposition on January 21 and focus on the fact that Defendants served a formal notice on January 23 (as soon as Intuit requested one).  That makes no sense given that every one of the depositions taken in this matter has been negotiated over email before the parties served any formal notice.

*       *       *       *       *

We thank the Court for its consideration.

*/s/ Adam B. Wolfson*

Adam B. Wolfson