Case 1:05-md-01720-MKB-JAM    Document 9652-4    Filed 08/32/35    Page 2 of 2 PageID #: 549056

The Court, having considered Rule 23(b)(3) Class Plaintiffs' Motion for Initial, Partial Distribution of Settlement Funds, having considered all of the submissions and arguments with respect to the motion, and having ruled on the motion, ORDERS as follows: The Net Settlement Fund, shall be distributed to claimants as detailed in Rule 23(b)(3) Class Plaintiffs' Motion and accompanying declarations and exhibits thereto.

IT IS SO ORDERED.

DATED: __1-8-24__          *Barbara Kent*

THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT COURT CHIEF JUDGE

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 20 2026 ★

BROOKLYN OFFICE

*pay Any way B.K*

*Former Bisness } Kents Discount Furniture 647 Ridge Rd Golden MS*

*Barcode qrcode 10.5 KB off Line*

Clerk's Office
Received on 1/20/2026
C.C.F.
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

- 1 -

96444949.1

I was not able to do this on Line. I do not have this business. When I recieved credel card

Kent Discount Furniture
667 Ridge Rd

Case 1:05-md-01720-MKB-JAM    Document 9652-3    Filed 08/22/25    Page 19 of 21 PageID #: 554629

administrative fees through the remainder of the administration and any possible future attorney fee awards. In addition, and again to be conservative, while the settlement funds will continue to earn interest throughout the life of the settlement administration, Epiq did not include projected future interest in the calculation of this initial partial distribution.

26. It should also be noted that the pro rata value used to calculate the initial distribution amounts for claimants is not impacted because Class Counsel and Epiq recommend the more conservative calculations for funding the trusts related to the PayFac and Branded Operator Trust Orders. The overall holdback amount that results from the initial distribution calculation methodology would not change had the less conservative amounts referenced in footnotes 9 and 12 been used; only the amounts placed into trust would change.

27. Should the Court provide its approval for an initial partial distribution, Epiq proposes updating functionality on the Merchant Portal to lock any claims that would be paid in the initial partial distribution to ensure that claimants do not unintentionally take actions that would result in their removal from the payment population. Once locked, these claimants would no longer be able to submit a research request or annualized sales data disagreeing with the interchange fee amounts that they previously agreed with when filing their claim without explicit permission from Epiq. The claims in this population have been finalized for a substantial amount of time, and these claimants are unlikely to make changes at this stage since they already accepted the interchange fees in the transaction data.

28. As of August 12, 2025, after completion of all quality assurance checks, the proposed initial partial distribution population would include 605,472 merchant claims (approximately 42% of all claims filed), submitted by 499,175 registrants (approximately 44% of all registrants). The associated interchange fees for these claims amount to $36,151,062,607.90.

DECLARATION OF LOREE KOVACH REGARDING ONGOING CLAIMS PROCESS AND

## CALCULATION OF THE PRO RATA DISTRIBUTION AMOUNT

23.    In order to ascertain the initial partial distribution amount for the population of claims discussed in Paras. 16 – 18, *supra*, and again summarized in Para. 28 below, Epiq undertook a conservative approach to calculating the potential pro rata value to be applied to a claimant's interchange fees. To account for the uncertainty regarding the resolution of the *Lanning* and *Old Jericho* appeals, as well as the number of claims where claimants are still in the process of challenging their interchange fees, Epiq used the total amount of fees available in the data in its possession as the denominator, rather than the total fees claimed. While it is extremely unlikely that any resolution of the pending appeals and pending challenges results in a scenario where all interchange fees in the data produced to Epiq are claimed, this conservative approach will allow for a reasonable calculation without requiring extensive efforts to project the final value of claims where challenges to the fee amount are still in progress, and will provide a buffer for the inherent lack of precision available in calculating the funds to place in trust regarding the pending appeals.

24.    The result of this approach is a pro rata value that is likely far lower than the ultimate and final pro rata value that will be calculated after all appeals are resolved and all claims have been fully processed. Claimants eligible for the initial partial distribution will thus receive a payment that is only a portion of their total pro rata award, as is necessitated by the lack of certainty at present time. As outlined in Paras. 12 – 13, *supra*, once the outstanding legal issues are resolved and, once the challenge process has concluded and the full universe of claimed interchange fees is known, Epiq can complete the final pro rata calculation and ensure that supplemental payments are made to any merchant initially only paid a portion of their total settlement award.

25.    In calculating the net settlement amount available for distribution, Epiq has deducted amounts representing anticipated future costs. This includes Epiq's anticipated

DECLARATION OF LOREE KOVACH REGARDING ONGOING CLAIMS PROCESS AND

Case 1:05-md-01720-MKB-JAM    Document 9652-3    Filed 08/22/25    Page 21 of 21
PageID #: 549054

certain digital payment options to be determined by Class Counsel. Registrants who fail to make a payment election will be issued a paper check by mail for each claim.

31.     Making required updates to the Merchant Portal to accommodate the payment process, as described above, conducting outreach to registrants and providing them sufficient time to make a payment election, conducting any final fraud checks based on payment direction provided, and effectuating payments, is a multi-step process. As such, Epiq recommends that the Court order a distribution no earlier than 90 days from the date of its Order approving said distribution.

## CONCLUSION

32.     The proposed plan described in this declaration for issuing initial payments is reasonable and will provide a measurable benefit for more than half of the claims received to date. In recognition of the fact that Class Members have been waiting many years to receive payments, the plan is calculated to pay as many claims as possible while maintaining a reasonable and conservative holdback of sufficient funds to account for any possible results of the outstanding legal issues and the resolution of all conflicts, research requests, sales data submissions, and any other pending disputes concerning the claims excluded from the initial partial distribution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on August 19, 2025 at Seattle, Washington.

_____
Loree Kovach

DECLARATION OF LOREE KOVACH REGARDING ONGOING CLAIMS PROCESS AND

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

In re PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

————————————————————

This Document Relates To:

    ALL ACTIONS.

———————————————————— x

:  MDL No. 1720(MKB)(JAM)
:
:  Civil No. 05-5075(MKB)(JAM)
:
:
:  [PROPOSED] ORDER GRANTING
:  MOTION FOR INITIAL, PARTIAL
:  DISTRIBUTION OF SETTLEMENT FUNDS
:
:
:
:

96444949.1

Barbara Knight
667 Ridge Rd
Golden MS 38847

BIRMINGHAM AL 350

13 JAN 2026 PM 5 L

Judge Margo K Brodie
United States District of New York
225 Cadman Plaza
Brooklyn New York 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 20 2026 ★

BROOKLYN OFFICE

11201-183299