UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ————————————————————— x |  |  |
| In re PAYMENT CARD INTERCHANGE | : | MDL No. 1720(BMC)(JAM) |
| FEE AND MERCHANT DISCOUNT | : |  |
| ANTITRUST LITIGATION | : | Civil No. 05-5075(BMC)(JAM) |
|  | : |  |
| ————————————————————— | : | MEMORANDUM OF LAW IN SUPPORT |
|  | : | OF RULE 23(b)(3) CLASS PLAINTIFFS' |
| This Document Relates To: | : | MOTION FOR SANCTIONS AGAINST |
|  | : | THIRD-PARTIES BETZ & BARIL, PLLC |
| ALL ACTIONS. | : | AND CLICKFUNDS, LLC |
|  | : |  |
| ————————————————————— x |  |  |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND...........................................................................1

    A.    Betz & Baril's Prior Issues Regarding Its Claims Filing Services .........................1

    B.    ClickFunds' Prior Issues Before the Court ............................................3

    C.    Current Status Of Issues with Betz & Baril and ClickFunds..................................3

    D.    Discovery Served on Betz & Baril and ClickFunds Reveals Significant Sanctionable Conduct ................................................................................4

        1.    The Evidence Demonstrates a Lack of Training or Oversight of Any Referral Partners ......................................................................5

        2.    The Evidence Demonstrates Betz & Baril Was Aware Class Members Were Receiving False and Misleading Information ...................5

        3.    Betz & Baril Provided Incorrect Information Regarding Square to Referral Partners that Affected Class Members.............................6

        4.    Betz & Baril Admitted that False Information was Provided to Class Members............................................................................7

        5.    Betz & Baril Appears to Have Continued to Work with ClickFunds After Claiming It Had Ceased........................................................7

        6.    ClickFunds, an Agent of Betz & Baril, Provided False and Misleading Information to Class Members................................................7

III.   LEGAL AUTHORITY ..................................................................................9

    A.    All Writs Act...............................................................................12

    B.    Authority Under Rule 23(d)............................................................14

    C.    Inherent Authority.........................................................................14

    D.    The Court has Authority to Sanction Non-Parties .............................15

    E.    ClickFunds was Betz & Baril's Agent................................................17

IV.   CONCLUSION...............................................................................................18

# TABLE OF AUTHORITIES

Page

*3801 Beach Channel, Inc. v. Shvartzman*,
2007 WL 879668 (E.D.N.Y. Mar. 21, 2007) ..........................................................11

*Am. Tr. v. Sabino*,
2000 WL 1478372 (6th Cir. Sept. 28, 2000) ..........................................................14

*Amerisource Corp. v. Rx USA Int'l Inc.*,
2010 WL 2730748 (E.D.N.Y. July 6, 2010),
*aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*,
432 F. App'x 25 (2d Cir. 2011) ..........................................................16

*Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*,
2022 WL 1843136 (C.D. Cal. Apr. 11, 2022) ..........................................................14

*Bartos v. Pa.*,
2010 WL 1816674 (M.D. Pa. May 5, 2010) ..........................................................14

*Bridgeport Guardians v. Delmonte*,
371 F. Supp. 2d 115 (D. Conn. 2005),
*vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015) ..........................................................12

*Bryan v. United States*,
524 U.S. 184 (1998) ..........................................................12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ..........................................................14

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979) ..........................................................11

*Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*,
2008 WL 3852046 (S.D.N.Y. Aug. 13, 2008) ..........................................................12

*David v. Hooker, Ltd.*,
560 F.2d 412 (9th Cir. 1977) ..........................................................12

*De Mañez v. Bridgestone Firestone N. Am. Tire, LLC*,
533 F.3d 578 (7th Cir. 2008) ..........................................................11, 15

*First City Federal Sav. Bank v. Dennis*,
680 F. Supp. 579 (S.D.N.Y. 1988) ..........................................................17

*Ganci v. U.S. Limousine Serv., Ltd.*,
2012 WL 13109965 (E.D.N.Y. Sept. 28, 2012) ..........................................................15

4932-1755-5341.v1

*Helmac Prods. Corp. v. Roth (Plastics) Corp.*,
    150 F.R.D. 563 (E.D. Mich. 1993) ............................................................15

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985)......................................................................12

*In re Holloway*,
    884 F.2d 476 (9th Cir. 1989) .....................................................................15

*In re M/V Rickmers Genoa Litig.*,
    622 F. Supp. 2d 56 (S.D.N.Y. 2009).........................................................17

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1239 (N.D. Cal. 2000) ..............................................13, 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014)........................10, 11, 12, 13

*In re Rainbow Mag., Inc.*,
    77 F.3d 278 (9th Cir. 1996) .......................................................................14

*In re Shulman Transport Enters., Inc.*,
    744 F.2d 293 (2d Cir. 1984).......................................................................17

*In re Synthroid Mktg. Litig.*,
    197 F.R.D. 607 (N.D. Ill. 2000).........................................................13, 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) ............................... *passim*

*Izzo v. ING Life Ins. & Annuity Co.*,
    235 F.R.D. 177 (E.D.N.Y. 2005) ..............................................................11

*Makere v. Fitzpatrick*,
    2023 WL 3010539 (N.D. Fla. Mar. 22, 2023),
    *aff'd by*, 2024 WL 2152114 (11th Cir. May 14, 2024)....................13, 16

*Metz v. Unizan Bank*,
    655 F.3d 485 (6th Cir. 2011) .....................................................................16

*Microsoft Corp. v. AGA Sols., Inc.*,
    2009 WL 1033784 (E.D.N.Y. Apr. 17, 2009) ..........................................12

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
 708 F.2d 492 (9th Cir. 1983) (as amended on denial of reh'g Sept. 12, 1983) ......................14

*Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*,
 1989 U.S. Dist. LEXIS 6050 (S.D.N.Y. June 1, 1989) ..........................................................11

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*,
 280 F.R.D. 147 (S.D.N.Y. 2012) ...........................................................................................11

*Roadway Express, Inc. v. Piper*,
 447 U.S. 752 (1980)...............................................................................................................16

*Schafer v. City of Defiance Police Dep't*,
 529 F.3d 731 (6th Cir. 2008) .................................................................................................16

*Sundby v. Marquee Funding Grp., Inc.*,
 2020 WL 5709445 (S.D. Cal. Sept. 24, 2020).......................................................................15

*United States v. Am. Mercantile Corp.*,
 2012 WL 5457355 (W.D. Tenn. Nov. 8, 2012).........................................................................1

*United States v. New York Tel. Co.*,
 434 U.S. 159 (1977).........................................................................................................12, 13

*United States v. Silva*,
 140 F.3d 1098 (7th Cir. 1998) ...............................................................................................13

*United States v. Wheeler*,
 154 F. Supp. 2d 1075 (E.D. Mich. 2001)...............................................................................16

*Universitas Educ. LLC v. Nova Grp., Inc.*,
 2013 WL 3487350 (S.D.N.Y. July 11, 2013) .........................................................................12

*Weil v. Murray*,
 161 F. Supp. 2d 250 (S.D.N.Y. 2001).....................................................................................17

*Williams v. Quinn*,
 2010 WL 3021576 (N.D. Ill. Jul. 27, 2010)............................................................................14

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
 §1651(a) ............................................................................................................................12, 13

Federal Rules of Civil Procedure
    Rule 23.................................................................................................13
    Rule 23(b)(3)........................................................................................1
    Rule 23(d)...........................................................................10, 12, 14
    Rule 37...............................................................................11, 12
    Rule 37(b)............................................................................11

## SECONDARY AUTHORITIES

Manual for Complex Litigation (Fourth) (2004)
    §21.33.............................................................................10, 14

Restatement (Second) of Agency (1958)
    §1(1)...............................................................................17
    §26................................................................................17

4932-1755-5341.v1

## I.    INTRODUCTION

Sanctions against the law firm Betz & Baril, PLLC ("Betz & Baril") and its referral partner ClickFunds, LLC ("ClickFunds") are warranted. Where, as here, a party has "a proven track record of violations, demonstrating that they cannot achieve compliance with the law on their own" and where "promises of improvement ring hollow in light of their inability to correct the same recurring issues over time" an injunction is proper.[1] *United States v. Am. Mercantile Corp.*, 2012 WL 5457355, at *3 (W.D. Tenn. Nov. 8, 2012).

Rule 23(b)(3) Class Plaintiffs ("Plaintiffs") seek the following relief: (1) that neither Betz & Baril nor ClickFunds receive any portion of any class members' settlement benefits related to any clients signed up by Betz & Baril through any association with ClickFunds; (2) that Betz & Baril and ClickFunds be required, at their expense, to alert all class member clients that both have been sanctioned for conduct related to this action; (3) that Betz & Baril and ClickFunds pay the reasonable attorneys' fees and costs of Class Counsel associated with this action; (4) that Betz & Baril and ClickFunds pay the costs incurred by Epiq associated with this action; and (5) that Betz & Baril report any sanctions determination of this Court to the Tennessee State Bar Professional Responsibility Office.

## II.    FACTUAL BACKGROUND

### A.    Betz & Baril's Prior Issues Regarding Its Claims Filing Services

Betz & Baril has been before the Court on multiple occasions since 2019. The firm's principal, Jason Baril, was first brought to the Court's attention related to another business entity he appeared to control. That entity, Business Refunds of America ("Business Refunds"), had a website that contained numerous false and misleading statements, including videos and social media posts. *See* ECF 7498 (June 24, 2019 letter to Court and attachments thereto). On June 26, 2019, Judge Orenstein issued an Order granting Class Counsel's application. *See* ECF 7502. Then, following

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted and all references to "Ex. __" are to the exhibits attached to the Declaration of Alexandra S. Bernay, filed concurrently.

discussions and representations from Mr. Baril, Class Counsel alerted the Court that Business Refunds had complied with all of Class Counsel's requests and thus consented to Mr. Baril's request to not have to appear before the Court. *See* ECF 7511 (July 8, 2019 letter to Court). The Court then excused Mr. Baril. July 8, 2019 text-entry Order regarding ECF 7511.

Issues seemed to be at an end until spring and summer of 2024 when Class Counsel was alerted to *five* separate incidents relating to agents or referral partners of Betz & Baril. Those incidents are detailed extensively in a September 5, 2024 letter to the Court (ECF 9407), but briefly they concerned referral partners of the firm soliciting merchants without any disclaimers and claiming knowledge of the amounts merchants were expected to receive (Private Millionaire); another group that contracted with the firm also failed to include required disclaimers (LinkedIn issue); ClickFunds and AddTraffic were brought to the Court's attention related to a number of videos with numerous false and misleading statements regarding the settlement, including statements regarding purported numbers of claims filed, expected payouts and incorrect information regarding the filing process. *Id.* at 2-3. The disclaimers were also not present on the materials; a class member complaint was received stating that the claims-filing firm (Betz & Baril) would take 40% and that this figure was "regulated by the federal court." *Id.* The class member was also told: "There is only one law firm that is allocated in that state." *Id.* at 3. Finally, in late August-early September of 2024, Class Counsel became aware of a website and associated videos that lacked disclaimers and provided multiple false and misleading statements, particularly concerning Betz & Baril's role in the settlement. *Id.* at 3-5.

Following the October 17, 2024 hearing, Betz & Baril entered into a stipulation with Class Counsel regarding its future conduct. Included in that stipulation was the following:

> Betz & Baril agrees that if it violates any of the foregoing, Class Counsel will seek sanctions to include the cancellation of all contracts between Betz & Baril for claims-filing services, attorneys' fees incurred related to addressing the firm's violations, and notification to the Tennessee State Bar regarding Betz & Baril's conduct.

ECF 9465 at 2.

4932-1755-5341.v1

The Court signed the stipulation and ordered the law firm to provide a report by November 18, 2024. *See id.* & related Oct. 18, 2024 docket-text Order. That same day, the Court entered a text-entry Order requiring Class Counsel to "promptly notify the Court of any further issues pertaining to Betz & Baril." *Id.*

## B. ClickFunds' Prior Issues Before the Court

In July 2024, Class Counsel first reported an issue related to ClickFunds. In the July 26, 2024 Status Report, Class Counsel explained that it had been alerted to certain YouTube videos that were from an online web services advertising entity (AddTraffic) that had partnered with the law firm Betz & Baril and an entity called ClickFunds. ECF 9363 at 4-5. These videos contained numerous false and misleading statements regarding the settlement, including statements regarding purported numbers of claims filed, expected payouts and incorrect information regarding the filing process. *Id.* at 4. The disclaimers were also not present on the materials. *Id.* The offending materials were removed and Betz & Baril sent letters to 1,700 class member clients allowing them to cancel their contracts. *Id.* at 5. It appeared at that time that matters were at an end.

## C. Current Status Of Issues with Betz & Baril and ClickFunds

The latest issue surrounding these entities was raised with the Court on November 21, 2025 following a complaint from a class member. As reported in the November 21, 2025 Status Report (ECF 9700), Epiq informed Class Counsel that it had received a call on November 17, 2025 from a class member expressing concerns related to the firm Betz & Baril as well as its agent, ClickFunds. *Id.* at 4. This class member had a lengthy call with an Epiq representative and forwarded numerous emails. *Id.* The emails show that this class member was given false information regarding when he would receive payment and the payment amount, a figure that at this time is not available to anyone, and was given incorrect information regarding his transactions, including about Square transactions. *Id.* He also claimed that he did not receive disclaimers when he signed up for claims filing services. *Id.* According to the class member, someone at Betz & Baril told him incorrect information regarding the timing of payments and supposed reasons regarding the timing. *Id.* On November 18,

2025, Class Counsel wrote to Betz & Baril. The firm's principal agreed to let the merchant out of the contract, but at that time did not address the other issues raised.

On November 21, 2025, the Court issued an Order directing Betz & Baril and ClickFunds to respond to the allegations made by the class member that were detailed in the Status Report. November 21, 2025 text-entry Order. On November 25, 2025, Betz & Baril responded via letter stating: "Our office has been made aware that a former partner, ClickFunds, LLC, has provided false information to clients. We terminated our partnership with ClickFunds last year after similar concerns were brought to our attention, and we have not utilized their services since that time for Visa/Mastercard or any other services because of what was brought to our attention." ECF 9705-1 (November 25, 2025 letter).

It further claimed that the firm provided updates to the class member via voicemail and spoke to the class member as well. *Id*.

Following some missed deadlines, on December 30, 2025, ClickFunds responded to the Court's Order. ECF 9747-1. That response sought to distance itself from the person that wrote many of the concerning emails. It also made arguments concerning its contact with the complaining class member and claimed that it had a positive prior compliance record. *Id*. at 3.

On January 14, 2026, Class Counsel submitted an update to the Court. ECF 9772. In that update, Class Counsel detailed various issues with the responses from ClickFunds and Betz & Baril and requested discovery from the entities so that Class Counsel could fully support a motion for sanctions. The Court then set forth a schedule for expedited discovery and the briefing of this motion. *See* Jan. 15, 2026 docket-text Scheduling Order.

### D. Discovery Served on Betz & Baril and ClickFunds Reveals Significant Sanctionable Conduct

Following the Court's January 15, 2026 docket-text Order, Class Counsel served document requests and interrogatories on Betz & Baril and ClickFunds. Documents were produced and responses and objections to document requests and interrogatories were provided on Friday, January

30, 2026.  The production included more than 900 pages of emails and other documents.  The parties met and conferred on Monday, February 3, 2026.

**1.      The Evidence Demonstrates a Lack of Training or Oversight of Any Referral Partners**

The discovery produced demonstrates that Betz &Baril's "training" of referral partners was subpar.  Training consisted solely of Mr. Baril being on a call with a merchant and a referral partner three times. "Jason Baril did all the training himself.  He used the: 'I do, we do, you do' method.  For that training, Jason would call one or more merchants with the referral partner, then they would do a call together, and then the referral partner would do a call while Jason was on the phone observing." *See* Ex. 1, Response to Interrogatory No. 2 at 8.  The interrogatory response claims that partners were told to disclose the Court-ordered disclaimers and to tell merchants that the payment amounts were currently unknown.  There is not a single document that shows any type of training in the 900+ pages of discovery.

The discovery responses also do not reveal whether even this minimal "training" occurred with each referral partner.  It is unknown whether the person associated with ClickFunds who sent dozens of false and misleading emails that resulted in this motion received any training.  The numerous emails telling class members what their payments would be is strong evidence that Betz & Baril did not properly train all referral partners and that there was no oversight whatsoever.

The solely verbal "training" is further concerning because there is no evidence that there was any ongoing review of what referral agents were saying in phone calls or emails.  It appears once the verbal "training" concluded, the referral partners were left to their own devices, with no oversight whatsoever.

**2.      The Evidence Demonstrates Betz & Baril Was Aware Class Members Were Receiving False and Misleading Information**

The documents reveal that Betz & Baril was aware that class members were receiving false and misleading information, yet did not stop it.  For example, a class member was falsely told by a ClickFunds-affiliated person that they were to receive more than $300,000.00: "As it stands right

now, the preliminary amount you will receive back is $310,726.00. Congratulations!" *See* Ex. 2, BBCF 000719; *see also* Ex. 3, BBCF 000911-12 & BBCF 000991 (that class member contacted Betz & Baril, the entity they retained to file the claim, to find out additional information). The email shows the operations manager at Betz & Baril, Mr. Baril, the ClickFunds associated person, and the class member were all on an email together. *Id.* The ClickFunds associated person told a class member she was "with Click Funds, the marketing arm for Betz & Baril, the law firm handling your Visa/Mastercard Settlement claim." *See* Ex. 4, BBCF 0001029-30. She also held herself out at as "Angie Kivett Project Manager Visa/MasterCard Settlement." *Id.* at 1030. This title likely added to the confusion.

In addition to the ClickFunds affiliated person who appears to be the main driver of false information, at least one other claimant appears to have been given an estimated settlement amount, by someone, when no such figure was available.[2] *See* Ex. 5, BBCF 000315 ("I got a call from one of your associates, and I'm a claimant in the Visa MasterCard class action lawsuit. And he told me he was going to send me an email of my estimated settlement amount. He told me on the phone, I believe it was $32 ,796 [sic] and something cents, but I never got email.").

### 3. Betz & Baril Provided Incorrect Information Regarding Square to Referral Partners that Affected Class Members

In the original class member complaint underlying this motion, one facet of the class member's concern was that he was told any transactions his company made through Square were not part of the settlement. The class member told Epiq about these concerns and it appears from the materials produced, that Betz & Baril decided not to take clients who had transactions using Square. "[W]e say no to Square clients." *See* Ex. 6, BBCF 000001. Because of a lack of proper explanation and training, it appears that because Betz & Baril decided not to take clients who used Square, that meant Square transactions were not included in the settlement. This likely cost class members significant recoveries. After working with Epiq to file his claim, the class member who was the

---

[2]    It appears this class member was not referring to Ms. Kivett as the class member refers to a "he" that gave him an exact settlement amount. *See* Ex. 5, BBCF 000315.

original source of complaints had more than $2.3 million in Square sales volume. There is no way to know how many clients of Betz & Baril may have had Square transactions that were not included in the total transaction amounts submitted to the administrator.

### 4. Betz & Baril Admitted that False Information was Provided to Class Members

In addition to the above, Betz & Baril has admitted that ClickFunds provided false information to class members. "Our office has been made aware that a former partner, ClickFunds, LLC, has provided false information to clients. We terminated our partnership with ClickFunds last year after similar concerns were brought to our attention, and we have not utilized their services since that time for Visa/Mastercard or any other services because of what was brought to our attention." ECF 9705-1. Betz & Baril's acknowledgement of the false statements made by its partner should weigh heavily in the Court's decision.

### 5. Betz & Baril Appears to Have Continued to Work with ClickFunds After Claiming It Had Ceased

Betz & Baril told the Court in November of 2025 that it terminated a partnership with ClickFunds "last year after similar concerns were brought to our attention, and we have not utilized their services since that time for Visa/Mastercard or any other services because of what was brought to our attention." ECF 9705-1. Also, on September 26, 2024, the firm told the Court: "Jason Baril also ceased all work with ClickFunds and AddTraffic as a result of this incident." ECF 9438 at 3. A document in the production appears to undermine that claim. An email between the operations manager at the law firm and someone at ClickFunds is dated December 16, 2024, and shows Betz & Baril sharing information about a client. Ex. 7, BBCF 000360. While on its own, this may not be sanctionable, it is additional evidence regarding the two entities working together after claiming all work had ceased.

### 6. ClickFunds, an Agent of Betz & Baril, Provided False and Misleading Information to Class Members

Ms. Kivett, a person associated with ClickFunds, appears to be one of the main causes of the current issue. While ClickFunds previously told the Court she was not affiliated with them nor

authorized to speak for them, the record demonstrates that she sent numerous emails to class members and was on emails with other ClickFunds employees and on emails with Betz & Baril. One email from Ms. Kivett told a class member: "Also, I have the amount you are approved to receive that I can share with you from your claim reimbursement of overcharged Visa/MasterCard interchange fees you paid between January 2004-January 2019." Ex. 8, BBCF 000760. Of course, Ms. Kivett had no such actual information. There is nothing in the discovery responses showing that anyone at Betz & Baril or ClickFunds ever instructed Ms. Kivett to stop contacting class members.

At one point, Betz & Baril's operations manager states in an email that includes a class member, Mr. Baril, and Ms. Kivett: "The 310719 USD is before the Class Counsel configures the pro rata share and before our fees. We do not know the pro rata share at this time. We will not know until the filing period closes on February 4th 2025." *See* Ex. 9, BBCF 001048. At no time, however, does anyone tell the class member that the stated number is the total interchange fees paid by the class member and not the amount he was to receive. Numerous emails were sent to class members claiming "preliminary amount[s]" to be received and included only the barest explanation of the pro rata distribution.[3]

---

[3]    *See* Ex. 10, BBCF 000715 ("As it stands right now, the preliminary amount you will receive back is $95,007.00. Congratulations!"); Ex. 11, BBCF 000716 ("As it stands right now, the preliminary amount you will receive back is $62,036.00. Congratulations!"); Ex. 12, BBCF 000721 ("As it stands right now, the preliminary amount you will receive back is $46,509.00. Congratulations!"); Ex. 13, BBCF 000722 ("As it stands right now, the preliminary amount you will receive back is $51,431.00. Congratulations!"); Ex. 14, BBCF 000727 ("As it stands right now, the preliminary amount you will receive back is $173,759.00. Congratulations!"); Ex. 15, BBCF 000728 ("As it stands right now, the preliminary amount you will receive back is $65,395.00. Congratulations!"); Ex. 16, BBCF 000734 ("As it stands right now, the preliminary amount you will receive back is $106,678.00. Congratulations!"); Ex. 17, BBCF 000737 ("As it stands right now, the preliminary amount you will receive back is $284,381.00. Congratulations!"); Ex. 18, BBCF 000739 ("As it stands right now, the preliminary amount you will receive back is $19,730.00. Congratulations!"); Ex. 19, BBCF 000740 ("As it stands right now, the preliminary amount you will receive back is $47,114.00. Congratulations!"); Ex. 20, BBCF 000741 ("As it stands right now, the preliminary amount you will receive back is $35,307.00. Congratulations!"); Ex. 21, BBCF 000742 ("As it stands right now, the preliminary amount you will receive back is $46,758.00. Congratulations!"); Ex. 22, BBCF 000743 ("As it stands right now, the preliminary amount you will be receiving from this settlement for your three companies combined is $542,486.00. Congratulations!"); Ex. 23, BBCF 000746 ("As it stands right now, the preliminary amount you will

- 8 -

## III.    LEGAL AUTHORITY

More than 10 years ago, this Court set forth a guiding principle related to third-party claims

filing entities in the context of the Court's role in supervising the claims processing:

> The Court's authority is clear, and its obligation to protect class members is strong.  The only effective way to avoid confusion and intolerable inefficiencies in the claims filing process is to be firm: any third-party claims filing company that knowingly makes – directly or through an agent acting on its behalf – material false

---

receive back is $95,007.00.  Congratulations!"); Ex. 24, BBCF 000747 ("As it stands right now, the preliminary amount you will receive back is $40,761.00.  Congratulations!"); Ex. 25, BBCF 000748 ("As it stands right now, the preliminary amount you will receive back is $9,769.00. Congratulations!"); Ex. 26, BBCF 000749 ("As it stands right now, the preliminary amount you will receive back is $43,689.00.  Congratulations!"); Ex. 27, BBCF 000750 ("As it stands right now, the preliminary amount you will receive back is $173,759.00.   Congratulations!"); Ex. 28, BBCF 000751 ("As it stands right now, the preliminary amount you will receive back is $62,036.00. Congratulations!"); Ex. 29, BBCF 000752 ("As it stands right now, the preliminary amount you will receive back is $53,991.00.  Congratulations!"); Ex. 30, BBCF 000753 ("As it stands right now, the preliminary amount you will receive back is $43,496.00.  Congratulations!"); Ex. 31, BBCF 000755 ("As it stands right now, the preliminary amount you will receive back is $12,274.00. Congratulations!"); Ex. 32, BBCF 000756 ("As it stands right now, the preliminary amount you will receive back is $7,934.00.  Congratulations!"); Ex. 33, BBCF 000757 ("As it stands right now, the preliminary amount you will receive back is $44,788.00.  Congratulations!"); Ex. 34, BBCF 000759 ("As it stands right now, the preliminary amount you will receive back is $16,036.00. Congratulations!"); Ex. 35, BBCF 000762 ("As it stands right now, the preliminary amount you will receive back is $113,556.00.  Congratulations!"); Ex. 36, BBCF 000776 ("As it stands right now, the preliminary amount you will receive back is $58,401.00.  Congratulations!"); Ex. 37, BBCF 000843 ("As it stands right now, the preliminary amount you will receive back is $51,431.00. Congratulations!"); Ex. 38, BBCF 000844 ("As it stands right now, the preliminary amount you will receive back is $44,788.00"); Ex. 39, BBCF 000849 ("As it stands right now, the preliminary amount you will receive back is $46,509.00.  Congratulations!"); Ex. 4, BBCF 001029 ("As it stands right now, the preliminary amount you will receive back is $317,652.[00].  Congratulations!"); Ex. 40, BBCF 000872 ("As it stands right now, the preliminary amount you will receive back is $6,768.00. Congratulations!"); Ex. 41, BBCF 000875 ("As it stands right now, the preliminary amount you will receive back is $47,114.00. Congratulations!"); Ex. 42, BBCF 000876 ("As it stands right now, the preliminary amount you will receive back is $7,934.00.  Congratulations!"); Ex. 43, BBCF 000902 ("As it stands right now, the preliminary amount you will receive back is $95,007.00.  Congratulations!"); Ex. 44, BBCF 001083-84 ("As it stands right now, the preliminary amount you will receive back is $62,036.00.  Congratulations!"); and Ex. 45, BBCF 001086-87 ("As it stands right now, the preliminary amount you will receive back is $40,761.00.  Congratulations!"). Some of these emails did state that "we can't state the final and exact amount you will receive back, nor the date you can expect to receive your payment." *See* Exs. 10-11, 14, 16-23, 32, 35-40, 42-43, 45.  However, it is clear that class members did not understand that the amounts quoted as "preliminary" were anything other than expected payments.

or misleading statements to merchants in an effort to solicit their business risks being permanently enjoined from filing claims in this case.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014).

There, the Court imposed a permanent injunction against a third-party filer and provided significant legal support for its holding, including details regarding a situation that arose in the *Visa Check* action where a third-party claims filing entity was found to have misled class members. *Payment Card*, 2014 WL 4966072, at *1-*3; *see also In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006). In *Visa Check*, the Court imposed an order requiring corrective notices be sent to class members, allowing merchants to void contracts they had entered into. *Payment Card*, 2014 WL 4966072, at *6.

Throughout the litigation, the Court has made clear its intention to "proactively protect class members from overreaching claims filing companies by 'preventing confusion and deception before they can happen,' as opposed 'to taking remedial measures after they happen.'" *Id.* at *17 (quoting ECF 6147 at 1).

As the *Visa Check* Court has noted: "[C]ommon sense dictates that the onus for ensuring that solicitations to class members are truthful must necessarily fall on the third-party claims filing company seeking class members' business." *Id.* at *30; *see also Visa Check*, 2006 WL 1025588, at *6. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." Manual for Complex Litigation (Fourth) §21.33 (2004) ("*Manual*"). "[T]he court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members." *Payment Card*, 2014 WL 4966072, at *31 (citing *Manual* §21.33).

As this Court held:

Pursuant to Rule 23(d), courts have taken various curative actions to "prevent court-approved class notification materials from being nullified by competing and inaccurate information." [O]rdering counsel for intervenors to remove website

- 10 -

content found to be "blatantly misleading and deliberately intended to deceive potential plaintiffs into believing that the websites are either court-sanctioned or sponsored by the MDL plaintiffs" and to provide corrective notice. [O]rdering that misleading statements made by outside attorney be remedied by curative notice to solicited class members, inclusion of court-mandated disclosures in attorney's future solicitations, and permitting rescission of solicited agreements. [I]nvalidating opt-outs and creating second opt-out period where several law firms opposed to the settlement sent misleading communications and advertisements to absent class members.

*Payment Card*, 2014 WL 4966072, at *31.

As this Court has recognized, in determining the need for sanctions, the Court should look at the entire record. "Viewed as a whole, the record adequately demonstrates the need for sanctions to assure future compliance with Court orders in this matter." *3801 Beach Channel, Inc. v. Shvartzman*, 2007 WL 879668, at *5 (E.D.N.Y. Mar. 21, 2007); *see also Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ("In determining whether a party's 'bad faith' in discovery should dictate a severe sanction, the Court should view the party's conduct in the case as a whole."). Where a litigant succeeds "in establishing a pattern of conduct," sanctions are warranted. *Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl*, 1989 U.S. Dist. LEXIS 6050, at *5 (S.D.N.Y. June 1, 1989); *see Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 188 (E.D.N.Y. 2005) (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (noting that the Second Circuit has characterized the imposition of reasonable expenses, including attorney's fees, on the disobedient party as "'the mildest' of the sanctions authorized by Rule 37").

This is the seventh incident involving Betz & Baril that Class Counsel is aware of. The fact that this entity has been warned regarding some of these identical issues for more than six years indicates that sanctions are proper here. A pattern of conduct has been shown. ClickFunds too is a repeat player. More than a year and a half ago issues regarding false and misleading statements were brought before the Court. *See* §§II.A. & B., *supra*.

"Rule 37(b) provides for sanctions against either parties or nonparties who disregard a court order." *De Mañez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008);

- 11 -

*see also David v. Hooker, Ltd.*, 560 F.2d 412, 415-17 (9th Cir. 1977) (where the nonparty was held liable for sanctions for failing to comply with discovery demands, under Rule 37). "To impose sanctions on a nonparty . . . the violation of a court order is also generally required." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008). Such violations have plainly been demonstrated here. *See, e.g.*, *Universitas Educ. LLC v. Nova Grp., Inc.*, 2013 WL 3487350, at *7 (S.D.N.Y. July 11, 2013) (quoting *Bridgeport Guardians v. Delmonte*, 371 F. Supp. 2d 115, 121 n.5 (D. Conn. 2005) ("'[A] court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it.'"), *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015).

It is well-established that a violation of a law is "knowing" if the defendant knew his actions would result in the proscribed conduct, regardless of whether the defendant knew the conduct was illegal. *Bryan v. United States*, 524 U.S. 184, 193 (1998). "[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Microsoft Corp. v. AGA Sols., Inc.*, 2009 WL 1033784, at *3 (E.D.N.Y. Apr. 17, 2009) (Hurley, J.); *see also Visa Check*, 2006 WL 1025588, at *3-*4 (rejecting similar claim made by another third-party claims-filing service).

As the Court further noted: "The proper exercise of judicial authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *Payment Card*, 2014 WL 4966072, at *31.

A.     **All Writs Act**

The All Writs Act empowers federal courts to "'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Id*. (quoting 28 U.S.C. §1651(a)). "'The power conferred by the Act extends . . . to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice.'" *Id*. at *13 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

This power includes the power to "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *Visa Check*, 2006 WL 1025588, at \*5-\*6 (citing *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000); *In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000)).

This Court also has the authority to enjoin a third-party pursuant to the All Writs Act, which provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). "An injunction, where necessary to protect the court's earlier orders . . . is authorized under the All Writs Act. That power extends to non-parties." *Synthroid*, 197 F.R.D. at 610 (citing *New York Tel. Co.*, 434 U.S. at 174; *Payment Card*, 2014 WL 4966072, at \*31) ("The power conferred by the Act extends . . . to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."); *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir. 1998) (noting court's authority to grant injunctive relief against nonparty trade association that sent unauthorized, confusing letter to class members but instead invoking Rule 23 to order offending nonparty to send corrective notice). "Because . . . contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel." *Visa Check*, 2006 WL 1025588, at \*5; *see also Makere v. Fitzpatrick*, 2023 WL 3010539, at \*1 (N.D. Fla. Mar. 22, 2023) ("[Under] the All Writs Act, and the court's inherent authority, sanctions are imposed as set out in this order."), *aff'd by*, 2024 WL 2152114 (11th Cir. May 14, 2024).

In sum: "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *Visa Check*, 2006 WL 1025588, at \*4; *Payment Card*, 2014 WL 4966072, at \*31.

- 13 -

## B.     Authority Under Rule 23(d)

Moreover, Rule 23(d) of the Federal Rules of Civil Procedure grants district courts broad authority to protect absent class members from misleading communications.  This authority includes the power to "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void." *Visa Check*, 2006 WL 1025588, at *5 (citing *McKesson.*, 126 F. Supp. 2d at 1242; *Synthroid*, 197 F.R.D. at 610); *see also Williams v. Quinn*, 2010 WL 3021576, at *3-*4 (N.D. Ill. Jul. 27, 2010) (issuing an order that prevented counsel for class-action-settlement objectors from contacting class members, after the court found that they had engaged in previous misleading communications); *Manual*, §21.33.

## C.     Inherent Authority

"A federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Am. Tr. v. Sabino*, 2000 WL 1478372, at *1 (6th Cir. Sept. 28, 2000); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50 (1991).  The Court has the discretion to fashion appropriate sanctions for conduct that abuses the judicial process, as Betz & Baril's and ClickFunds' conduct does here.  *See Chambers*, 501 U.S. at 44-45.[4]  Indeed, there is significant, well-settled case law regarding the Court's inherent authority to sanction a non-party "'for abuse of the judicial process.'"  *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022) (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended on denial of reh'g Sept. 12, 1983)); *see also Bartos v. Pa.*, 2010 WL 1816674, at *5 (M.D. Pa. May 5, 2010) ("It is also beyond serious dispute that this power extends, not only to parties in civil litigation, but also to other persons, such as witnesses, who may be embroiled in that litigation."); *In re Rainbow Mag., Inc.*, 77 F.3d 278, 282 (9th Cir. 1996) (sanction imposed against a non-party for filing false statement).

---

[4]     "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders."  *Chambers*, 501 U.S. at 57.

4932-1755-5341.v1

### D.    The Court has Authority to Sanction Non-Parties

Betz & Baril's and ClickFunds' status as a non-parties, while relevant, is not dispositive. *See, e.g.*, *De Mañez*, 533 F.3d at 585 ("No matter who allegedly commits a fraud on the court – a party, an attorney, or a nonparty witness – the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *see also Sundby v. Marquee Funding Grp., Inc.*, 2020 WL 5709445, at *5 (S.D. Cal. Sept. 24, 2020) (emphasis in original) ("The Court's inherent authority to sanction willful conduct also includes 'the authority to sanction the conduct of a **nonparty** who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses.'").  Here, Class Counsel and Epiq have incurred significant expense trying to correct the false and/or misleading conduct perpetrated ClickFunds and Betz & Baril.  *See In re Holloway*, 884 F.2d 476, 477 & n.2 (9th Cir. 1989) (*per curiam*) (sanctioning a court reporter for "repeated and flagrant failures to meet court-imposed deadlines" that resulted in "severe prejudice to both the parties and the court").

While "'many courts have addressed the issue of whether the inherent authority of a court to sanction litigants extends to non-parties'" there is some debate where the non-parties are found not to have violated "'any specific court order.'"  *Ganci v. U.S. Limousine Serv., Ltd.*, 2012 WL 13109965, at *4 (E.D.N.Y. Sept. 28, 2012).  That issue is inapplicable here where, as this Court has previously noted in relation to third-party claims filers, "a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *Visa Check*, 2006 WL 1025588, at *4; *see also* ECF 6349 at 55 (granting injunction as to third-party claims filer).  In this case, the Court may assess the reasonable costs incurred by Epiq stemming from the entities' conduct – the settlement agreement is a specific Court order.  This would protect the settlement, as the costs incurred would otherwise come from the settlement fund.[5]

---

[5]    Some courts require additional findings before allowing sanctions against non-parties including finding the non-party: "(1) [Has] a substantial interest in the outcome of the litigation and (2) substantially participate[s] in the proceedings in which he interfered." *Helmac Prods. Corp. v.*

4932-1755-5341.v1

Some courts hold that a specific finding of bad faith is necessary in order to support the invocation of the court's inherent power to impose sanctions to a non-party for a violation of a court order. *See, e.g.*, *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2730748, at *5 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*, 432 F. App'x 25 (2d Cir. 2011). A finding of bad faith is warranted here. *See* ECF 9332 at 6-7 (describing conduct and citing cases related to "bad faith"). The repeated conduct by Betz & Baril and ClickFunds after being brought before the Court is sufficient to show bad faith.

As Class Counsel explained, the conduct here meets the criteria for bad faith. Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "'tantamount to bad faith.'" *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Bad faith, in turn, is associated with conduct that is intentional or reckless. *See Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008); *United States v. Wheeler*, 154 F. Supp. 2d 1075, 1078-79 (E.D. Mich. 2001) (sanctions under court's inherent authority warranted for reckless or bad-faith conduct, and defining "'recklessness'" as "'highly unreasonable conduct which is an extreme departure from the standards of ordinary care,'" such that it is "'more than mere negligence but less than intent'"). "Because [Betz & Baril's] contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel." *Visa Check*, 2006 WL 1025588, at *5; *see also Makere*, 2023 WL 3010539, at *1 ("[Under] the All Writs Act, and the court's inherent authority, sanctions are imposed as set out in this order."). In sum:

> Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties.

*Visa Check*, 2006 WL 1025588, at *4; ECF 6349 at 55.

---

*Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993). The Second Circuit has not adopted this standard, but even under this standard, the Court could sanction Betz & Baril and ClickFunds. The companies both have a substantial monetary interest in the litigation based on the number of clients they have signed up. That is substantial participation in the proceedings.

### E.    ClickFunds was Betz & Baril's Agent

Betz &Baril has never sought to deny the agency relationship it had or has with ClickFunds, nor could it.  Its contract with ClickFunds refers to ClickFunds as a "[r]eferral [p]artner."  *See* Ex. 46, BBCF 000034.  A ClickFunds representative stated they were "with Click Funds, the marketing arm for Betz & Baril, the law firm handling your Visa/Mastercard Settlement claim."  Ex. 47, BBCF 000758.

Betz & Baril gave direction to cease marketing and signing up new merchants to its agents and expected that its edicts would be followed.  *See, e.g.*, Ex. 48, BBCF 000353:

>     It is crucial that all marketing materials leading to a Betz & Baril contract be taken down and deactivated immediately.  This includes electronic flyers, physical flyers, websites, videos, podcasts, advertisements, social media posts, and any other forms of solicitation.  Please ensure that these materials are removed promptly, and that this information is communicated verbally as well.
>
>     Thank you for your immediate attention to this matter and for your cooperation.  We deeply appreciate all your hard work.

*Id.*

A principal-agent relationship exists where there is a "'manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'"  *In re Shulman Transport Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (quoting Restatement (Second) of Agency §1(1) (1958).  "An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."  *Id*. at 295. Agency is established through "'written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'"  *In re M/V Rickmers Genoa Litig*., 622 F. Supp. 2d 56, 74 (S.D.N.Y. 2009) (quoting Restatement (Second) of Agency §26 (1958)); *Weil v. Murray*, 161 F. Supp. 2d 250, 257-58 (S.D.N.Y. 2001) (same).  Even if a principal claims that the agent was acting without its consent, an agency relationship can exist when the principal "recognizes and acquiesces in an act done by the agent."  *First City Federal Sav. Bank v. Dennis*, 680 F. Supp. 579, 585 (S.D.N.Y. 1988).

The materials produced in discovery demonstrate an agency relationship between Betz & Baril and ClickFunds.

## IV.    CONCLUSION

Betz & Baril and its referral partner, ClickFunds, for whom they are responsible, repeatedly made misleading statements to class members; and have repeatedly been before the Court and received clear warning through an agreed stipulation that they would face sanctions if they were brought to Court again.  Plaintiffs have made a significant showing that the conduct here is part of a continuing failure to properly train and monitor agents and the proposed sanctions are tailored to least affect innocent class members, but harsh enough to, it is hoped, finally have all false and misleading conduct cease.

DATED:  February 9, 2026                 Respectfully submitted,

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         PATRICK J. COUGHLIN
                                         ALEXANDRA S. BERNAY


                                         _____
                                                s/ Alexandra S. Bernay
                                         ALEXANDRA S. BERNAY

                                         655 West Broadway, Suite 1900
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         ROBINS KAPLAN LLP
                                         K. CRAIG WILDFANG
                                         THOMAS J. UNDLIN
                                         RYAN W. MARTH
                                         2800 LaSalle Plaza
                                         800 LaSalle Avenue South
                                         Minneapolis, MN  55402-2015
                                         Telephone:  612/349-8500
                                         612/339-4181 (fax)

4932-1755-5341.v1

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs

- 19 -

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1(c) of the United States District Court for the Southern District of New York as it contains 6,905 words.

_____
s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY
