UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

This document refers to: ALL ACTIONS

*SUA SPONTE*
**REPORT AND**
**RECOMMENDATION**

05-MD-1720
(Cogan, J.)
(Marutollo, M.J.)

--------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

This Court has repeatedly endeavored to proactively protect class members from deception in this long-running multidistrict litigation.[1]  The Court continues to do so, even as the claims-filing period for the Rule 23(b)(3) class ("Damages Class") has now closed.  *See, e.g.*, Text Order, dated Aug. 8, 2024 (extending claims-filing deadline to February 4, 2025); Text Order, dated Feb. 4, 2025 (permitting a 30-day grace period—to March 6, 2025—within which class members whose contracts with third-party claims filing companies were terminated since January 21, 2025 may file their claims).

---

[1] *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 789 F. Supp. 3d 242, 252-54 (E.D.N.Y. 2025) (adopting report and recommendation and sanctioning a non-party entity for filing inappropriate claims); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 778 F. Supp. 3d 539, 543-44 (E.D.N.Y. 2025) (adopting report and recommendation and ordering the Claims Administrator to withdraw a third-party entity's 2,184 fraudulent proofs of authority and assessing against the entity Epiq's costs of remediating the fraudulent submissions made to Epiq); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 768 F. Supp. 3d 418, 423 (E.D.N.Y. 2025) (adopting report and recommendation permanently enjoining a third-party entity from any role in the $5.6 billion settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d 365, 369-74 (E.D.N.Y. 2023) (adopting report and recommendation addressing a false website that sought to mirror the official Court-approved website); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG), 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) ("In a class action litigation, the Court bears the responsibility to protect the class and preserve the integrity of the process, and Rule 23(d) gives the Court the discretion to meet that responsibility." (citation omitted)); Dkt. No. 6147 at 1 ("It is clear to the Court that the overwhelming majority of the members of the merchant class need protection from overreaching claims filing services, and [the Court] intend[s] to provide that protection proactively.  Preventing confusion and deception before they can happen is far preferable to taking remedial measures after they happen.").

On November 21, 2025, counsel for the Damages Class ("Class Counsel") alerted the Court to a new array of issues associated with third-party claims filing company Betz & Baril, PLLC ("Betz & Baril") and its referral partner ClickFunds LLC ("ClickFunds") (collectively, "Respondents").[2] *See* Dkt. No. 9700. Specifically, Class Counsel asserted that Betz & Baril (1) gave a class member "false information regarding when he would receive payment and the payment amount, a figure that at this time is not available to anyone," and "incorrect information regarding his transactions, including about Square transactions";[3] and (2) did not give a class member the required "disclaimers when he signed up for claims filing services." *Id.* at 5.[4]

Following Class Counsel's November 21, 2025 submission, and following a schedule set by the Court, Respondents attempted to address Class Counsel's allegations. *See* Text Orders, dated Nov. 21, 2025, Dec. 2, 2025, Dec. 9, 2025; Dkt. Nos. 9705-1, 9738, 9747-1, 9770-1. On January 14, 2026, Class Counsel provided a further update regarding Class Counsel's allegations against Respondents, along with the need for additional facts related to the allegations. *See* Dkt. No. 9772. On January 15, 2026, the undersigned ordered expedited discovery into Respondents'

---

[2] As discussed further below, in 2024, Class Counsel brought several issues regarding Betz & Baril and five of its agents/referral partners, including ClickFunds, to the attention of the Court. *See* Dkt. Nos. 9363, 9399, 9407, 9444. The issues raised at that time were resolved by stipulation between Class Counsel and Betz & Baril on October 18, 2024. Dkt. No. 9465.

[3] Square, Inc. ("Square"), now known as Block, Inc., provided payment facilitation services to merchants. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JAM), 2025 WL 2490442, at *1 (E.D.N.Y. Aug. 29, 2025). Some merchants, "typically small- and medium-sized businesses, may not want to contract directly with [acquiring banks] to accept payment cards," so such merchants may contract with a payment facilitator like Square, which "provides [merchants] with its white, square card readers that enable cardholders to 'insert, swipe, or tap' their payment cards when making purchases from [such merchants]." *Id.* at *3 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d 249, 256 (E.D.N.Y. 2024)). "Square maintains contracts with two [acquiring banks] to acquire transactions on behalf of Sellers, and serves as an intermediary by sending transaction information to an [acquiring bank] who, in turn, sends the transaction information across the payment card network." *Id.* (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d at 256).

[4] Page citations are to the ECF-stamped pages, unless otherwise noted.

practices and set a briefing schedule for Class Counsel's proposed sanctions motion.  Text Order, dated Jan. 15, 2026.

Presently before the Court is Class Counsel's February 9, 2026 motion for sanctions against Respondents.  Dkt. No. 9793.  Specifically, Class Counsel requests that the Court impose the following sanctions:

> (1) that neither Betz & Baril nor ClickFunds receive any portion of any class members' settlement benefits related to any clients signed up by Betz & Baril through any association with ClickFunds; (2) that Betz & Baril and ClickFunds be required, at their expense, to alert all class member clients that both have been sanctioned for conduct related to this action; (3) that Betz & Baril and ClickFunds pay the reasonable attorneys' fees and costs of Class Counsel associated with this action; (4) that Betz & Baril and ClickFunds pay the costs incurred by Epiq[5] associated with this action; and (5) that Betz & Baril report any sanctions determination of this Court to the Tennessee State Bar Professional Responsibility Office.

Dkt. No. 9793-1 at 7; *see also* Dkt. No. 9793-51.  Respondents opposed Class Counsel's motion on February 23, 2026.  Dkt. No. 9798.

For the reasons set forth below, the undersigned *sua sponte* respectfully recommends that Class Counsel's motion be granted in part and denied in part.  Specifically, the undersigned respectfully recommends as follows:

(a) The Court shall order Betz & Baril to send a communication (with language approved by Class Counsel) to all class members who have signed up for claims-filing services with Betz & Baril (blind copying Class Counsel) that alerts class members to the false and/or misleading information regarding Square transactions and settlement amounts, and offers the class members the right to terminate their contract with Betz & Baril within thirty days of the letter, no questions asked, and have the claim facilitated through Epiq at no cost;

---

[5] Epiq Systems, Inc. ("Epiq") is the Court-approved Class Administrator responsible for "effectuat[ing] and administer[ing] the Notice Plan, the exclusion process for Opt Outs, and the claims process and distribution for the members of the Rule 23(b)(3) Settlement Class."  Dkt. No. 7257-2 at 11, 274.

(b) With respect to those class members who choose to terminate their contracts with Betz & Baril and have their claims facilitated through Epiq per subsection (a) above (hereinafter "Former Betz & Baril Class Members"), the Court shall permit the Former Betz & Baril Class Members to re-file their claims during a limited re-opening of the claims-filing period for those specific class members—the parameters of which Class Counsel shall propose to the Court by a date certain following a ruling on the present Report and Recommendation;

(c) Following Court approval of the limited re-opening of the claims-filing period for the Former Betz & Baril Class Members, the Court shall permit Epiq to attempt to administratively file these claims, with the reasonable costs of the same charged to Respondents;

(d) The Court shall order Epiq to maintain records regarding the costs associated with filing such claims, to facilitate charging such expenses to Respondents;

(e) The Court shall order Respondents to provide to Class Counsel and Epiq all necessary information regarding the Former Betz & Baril Class Members, including contact information; and

(f) The Court shall order Respondents to pay reasonable attorneys' fees and costs that Class Counsel incurred in bringing the present February 9, 2026 motion, as well as the reasonable attorneys' fees and costs that Class Counsel incurs in connection with completing parts (b) through (e) above.

The undersigned also respectfully recommends that the remainder of Class Counsel's motion be denied without prejudice to renewal should Class Counsel become aware of other potentially sanctionable misconduct by Respondents.

4

Finally, the undersigned respectfully recommends that the Court direct Class Counsel and Respondents to file a joint status report concerning Respondents' compliance with the Court's directive, within thirty days of any such Order regarding this Report and Recommendation.

## I.    Relevant Factual and Procedural Background

The Court assumes familiarity with the facts and extensive procedural history of this case, and, thus, provides only a summary of the relevant issues. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2025 WL 2412033, at *1 (E.D.N.Y. Aug. 20, 2025).

The present multidistrict litigation arises out of the claims of a putative class of over twelve million nationwide merchants who allege that Visa, MasterCard, and numerous banks that serve as payment-card issuers for those networks had adopted and enforced rules and practices relating to payment cards that had the combined effect of injuring merchants, to wit, by allowing Visa and MasterCard to charge supercompetitive fees (known as "interchange fees") on each payment card transaction. *See, e.g.*, *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 712 (2d Cir. 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d at 368-69. After nearly fifteen years of litigation, this Court approved a class settlement of $5.6 billion for the Damages Class in 2019, which the Second Circuit affirmed in 2023. *See Fikes Wholesale*, 62 F.4th at 712, 727.

As noted above, throughout this long-running litigation, the Court has sought to protect class members from deception. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 778 F. Supp. 3d at 543-44; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 789 F. Supp. 3d at 246; *In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 768 F. Supp. 3d at 423; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *31-35; Dkt. No. 6147 at 1.

**A.    Issues Concerning Respondents Previously Brought Before the Court**

On July 26, 2024,[6] Class Counsel brought to the Court's attention that it had been alerted to "certain YouTube videos that were from an online web services advertising entity (AddTraffic) that had partnered with the law firm Betz & Baril and an entity called ClickFunds," and that such "videos contained numerous false and misleading statements regarding the settlement, including statements regarding purported numbers of claims filed, expected payouts and incorrect information regarding the filing process," and "[t]he disclaimers were also not present on the materials." Dkt. No. 9363 at 5. At Class Counsel's request, the videos were removed from YouTube. *Id.* at 6. Betz & Baril also "agreed to send a letter to the approximately 1,700 clients that may have signed up following receipt of misleading information, explaining that false and/or misleading information had been given and that any merchant that signed up for the firm's services could cancel, no questions asked." *Id.* Betz & Baril further "indicated that they are no longer working with ClickFunds or the advertising company." *Id.* Further, in responding to the issues concerning the YouTube videos, Betz & Baril notified the Court that it was "informed [that] one of [Betz & Baril's] agents may have suggested to a client knowing when and/or how much a merchants payout will be," and, accordingly, Betz & Baril went "back to all of [its] agents/employees and reminded them that [they] can't know what the payout will be until the pro

---

[6] Class Counsel notes that Jason Baril ("Mr. Baril"), a Betz & Baril partner/principal, was also before the Court in 2019, when Class Counsel alerted the Court to a website and social media posts containing numerous false and misleading statements about the settlement. Dkt. No. 9793-1 at 7 (citing Dkt. No. 7498). The website and posts were created by Business Refunds of America, an entity that Mr. Baril founded and controlled. *Id.* (citing Dkt. No. 7498). On June 26, 2019, the Court issued an Order to Show Cause regarding the conduct of Business Refunds of America and Mr. Baril. Dkt. No. 7502. On July 8, 2019, Class Counsel reported that Business Refunds of America had taken adequate steps to remedy their dissemination of misleading information. Dkt. No. 7511. According to Class Counsel, there were no further issues related to Mr. Baril or entities owned or controlled by him until 2024. Dkt. No. 9793-1 at 8.

rata percentage is issued nor can [they] know when payment will be issued and if anyone is caught saying otherwise it will lead to immediate termination from Betz & Baril." *Id.*

On August 27, 2024, Class Counsel notified the Court that it received another concerning complaint regarding Betz & Baril, in which a class member was falsely told by Betz & Baril or its agents that Betz & Baril, as a claims-filing firm, "would take 40% and that this figure was 'regulated by the federal court because attorneys could be charging 60-70-80%,'" and that "there is only one law firm that is allocated in that state." Dkt. No. 9399 at 10. In response, Betz & Baril "agreed to cease all representation and cancel the contract" with the complaining class member. *Id.* at 11.

On September 5, 2024, Class Counsel sought from the Court an order to show cause regarding Betz & Baril, because Class Counsel had "repeatedly warned [Betz & Baril] regarding false and/or misleading statements made by its agents and referral partners," and it appeared to Class Counsel that Betz & Baril was "unable to stop its agents from making false and/or misleading statements regarding the settlement." Dkt. No. 9407 at 1. The proposed order sought to have Betz & Baril "show cause as to why it should not be barred from any role in this action," and sought "to have contracts entered into by [Betz & Baril] cancelled and class members alerted to such cancellation at Betz & Baril's expense." *Id.*

Class Counsel's letter filed with the proposed order to show cause noted five separate incidents relating to agents or referral partners of Betz & Baril, including the YouTube videos and other false misrepresentations reported to the Court on July 26, 2024 and August 27, 2024, respectively. *Id.* at 2-3. One of those incidents occurred in May 2024, when Class Counsel discovered a company, Private Millionaire, soliciting merchants without any disclaimer language and falsely stating that it knew how much a merchant could expect to receive in the settlement. *Id.*

7

at 2.  Per Class Counsel, "Private Millionaire appeared to have a relationship with Betz & Baril." *Id.*  After Class Counsel spoke with Private Millionaire, it agreed to remove all misleading information and include the proper disclaimers on any materials going forward.  *Id.*

Another incident occurred in July 2024, when Class Counsel became aware of a LinkedIn posting from "a group that had contracted with a law firm"—now known to be Betz & Baril—"to provide claims-filing services to class members," which "failed to include the required disclaimers and had several incorrect statements."[7]  *Id.*  After Class Counsel contacted Betz & Baril, the post was quickly taken down.  *Id.*

In another incident, another website with false and misleading information about the settlement, including two embedded videos, was discovered.[8]  *Id.* at 3.  The website lacked "any of the Court-ordered disclaimers" and incorrectly "gives the impression that merchants must 'opt in' with this entity to receive settlement funds," "makes it appear that Class Counsel is involved in this business venture," and credits Betz & Baril with obtaining the settlement.  *Id.*  The website also "falsely claims to know when payments are to occur and provides baseless estimates regarding expected settlement returns."  *Id.*  As to the videos on the website, one specifically mentions Betz & Baril and incorrectly identifies the firm as "a court-appointed attorney . . . authorized to facilitate these settlements."  *Id.* at 3-4.  The videos also state, *inter alia*, false information regarding the total amount of the settlement, knowledge about the amounts merchants would receive, and fees. *Id.* at 4.  One of the videos also gave the "false impression that Certainty Management and Betz & Baril are collaborating with the Court-appointed Class Administrator, Epiq."  *Id.*  After contacting

---

[7] Class Counsel first alerted the Court to this issue in its July 26, 2024 monthly report but did not identify Betz & Baril as the associated law firm.  *See* Dkt. No. 9363 at 5.

[8] It appears that the website and videos were created or published by Certainty Management and LenCred, companies allegedly working with Betz & Baril.  *See* Dkt. No. 9407 at 3-5.

Mr. Baril—a Betz & Baril principal who "stated that he was not familiar with Certainty Management and that he had heard of LenCred but thought he had a 'conflict' with that entity"— Class Counsel informed Mr. Baril that Class Counsel "would be seeking an order to show cause based on the repeated issues related to his firm. Mr. Baril stated that he understood the seriousness of the issue." *Id.* at 4-5.

On September 7, 2024, the undersigned ordered Betz & Baril, as well as Certainty Management and LenCred, to show cause by September 16, 2024 "as to why [they] should not be permanently barred from any settlement-related services in this action." Dkt. No. 9408. On September 10, 2024, Betz & Baril was granted an extension until September 23, 2024. Dkt. No. 9413; Text Order, dated Sep. 10, 2024.

On September 12, 2024, however, Class Counsel informed the Court about the discovery of a third video attributable to Betz & Baril and Certainty Management, which was "riddled with false and misleading statements, again claiming, without correction, that the Betz & Baril firm is 'court-appointed.'" Dkt. No. 9416. The video gave the impression that "the Betz & Baril firm was counsel for the class," which "is not true," and the video contained "numerous other misleading and factually incorrect statements . . . , including statements that settlement funds could revert to defendants." *Id.* After Class Counsel contacted Betz & Baril and Certainty Management, the video appeared to have been removed, but "at least one other misleading video remain[ed] available online." *Id.* The same day that this letter was filed by Class Counsel, the undersigned ordered Betz & Baril and Certainty Management to remove the referenced video from "their website or any website of which they have control." Text Order, dated Sep. 12, 2024.

On September 26, 2024, Betz & Baril responded to the September 7, 2024 Order to Show Cause. Dkt. No. 9438.[9] Betz & Baril asserted that: (1) it "has immediately remedied any previous issues"; (2) it has performed "commendable" work through its marketing efforts; (3) all contracts Betz & Baril has with class members contain the required disclosures; (4) "Betz & Baril will honor any request from any class member at any time to cancel their contract for any reason or no reason (without compensation)"; and (5) "[d]ue to the May 2024 violation and the July 2024 violations, Betz & Baril made a decision early August 2024 to cease working with all external lead generation and networking companies," including ClickFunds. *Id.* at 1-5.

In its September 27, 2024 monthly report, Class Counsel asserted that Betz & Baril "vastly downplay[ed] the multiple times this entity has come to the attention of Class Counsel." Dkt. No. 9444 at 5. Class Counsel highlighted that, despite Betz & Baril's assertion that all prior issues of misrepresentation had been remedied, "two videos containing extensive false and misleading statements remain available online," and "[t]he problematic website is also still online." *Id.* at 6. Class Counsel requested that the Court, "at the least," bar Betz & Baril "from *any* additional work related to" this action, and that Betz & Baril "be required to send – at its expense – a communication agreed to by Class Counsel to all merchants that have signed up with the firm that alerts the clients to their right to cancel their contract and file a claim on their own due to the firm's misleading and false statements." *Id.* at 5.

The Court held a status conference on October 17, 2024 with Class Counsel and Betz & Baril. Minute Entry, dated Oct. 17, 2024. At the October 17, 2024 conference, "Class Counsel

---

[9] Betz & Baril's September 26, 2024 response to the September 7, 2024 Order to Show Cause was improperly filed as a motion for an order to show cause. *See* Dkt. No. 9438. On September 26, 2024, the undersigned denied Betz & Baril's letter motion as improperly docketed and directed Betz & Baril to re-file its response to the September 7, 2024 Order to Show Cause and attached exhibits as a "letter" by September 27, 2024. Text Order, dated Sep. 26, 2024. Betz & Baril re-filed its letter and exhibits on September 30, 2024. *See* Dkt. No. 9447.

and Betz & Baril reported that they have been working to resolve the issues raised in the Order to Show Cause pertaining to Betz & Baril," particularly in light of the approximately 9,309 class members that contracted with Betz & Baril.  *Id.*; Dkt. No. 9466 at 4:17-25.  Based on the representation that Class Counsel and Betz & Baril would soon have a finalized agreement, the undersigned ordered the parties to "file a stipulation to be so-ordered that sets forth the items and deadlines agreed upon by Class Counsel and Betz & Baril" by October 18, 2024.  Minute Entry, dated Oct. 17, 2024; Dkt. No. 9466 at 8:18-9:2. The parties also "agree[d] that once the stipulation is so-ordered, the Order to Show Cause will be moot as it pertains to Betz & Baril."  Minute Entry, dated Oct. 17, 2024.

On October 18, 2024, Class Counsel and Betz & Baril filed a joint stipulation and proposed order regarding the Order to Show Cause, which the undersigned so-ordered the same day.  *See* Dkt. Nos. 9463, 9465.  Pursuant to the October 18, 2024 joint stipulation, the parties "agreed upon a communication to be sent to all class members who have signed up for claims-filing services with Betz & Baril."  Dkt. No. 9465 at 2.  The joint stipulation included the text of the letter, which would be sent to more than 9,000 class members within fifteen days, with Class Counsel "bcc'd on the communication."  *See id.* at 2-3.  The communication alerted "class members that signed up with Betz & Baril that they may cancel their contract at any time, no questions asked, and file a claim on their own."  *Id.* at 3.  Betz & Baril also agreed to "no longer accept, or process claims either independently or through third parties."  *Id.*  In addition, Betz & Baril agreed that it would "provide the Court with an update regarding the sending of the communication, responses received, and the number of contracts cancelled" within thirty days of entry of the joint stipulation. *Id.*  Finally, Betz & Baril "agree[d] that if it violates any of the foregoing, Class Counsel will seek sanctions to include the cancellation of all contracts between Betz & Baril for claims-filing

11

services, attorneys' fees incurred related to addressing the firm's violations, and notification to the Tennessee State Bar regarding Betz & Baril's conduct." *Id.*

On November 18, 2024, pursuant to the joint stipulation, Betz & Baril reported that it had previously "signed up claimants with 9,310 different taxpayer identification numbers (TINs)," and "[o]nce Betz & Baril removed duplicate email addresses associated with multiple TINs, they were left with 6,694 unique email addresses and 200 physical addresses." Dkt. No. 9483. After it "completed the required communication on or about October 30, 2024[,] Betz & Baril received a total of 126 communications, of which, 42 TINs cancelled their contracts." *Id.* The undersigned thereafter ordered Class Counsel to "promptly notify the Court of any further issues pertaining to Betz & Baril." Text Order, dated Nov. 18, 2024.

### B.    New Allegations Concerning Respondents' Conduct

On November 21, 2025, Class Counsel raised a new assortment of issues concerning Respondents. *See* Dkt. No. 9700. Class Counsel reported that on November 17, 2025, Class Counsel was informed by Epiq that Epiq had received a call from a class member expressing concerns related to Betz & Baril and ClickFunds. *Id.* at 5. After a "lengthy" call between Epiq and the class member, as well as a review of numerous emails forwarded to Epiq by the class member, "[i]t appear[ed] from the emails that this class member was given false information regarding when he would receive payment and the payment amount," which is information not yet available to anyone. *Id.* The class member also appeared to have been "given incorrect information regarding his transactions, including about Square transactions," and he claimed "that he did not receive disclaimers when he signed up for claims filing services." *Id.* "The class member also provided details from a phone call with someone at Betz & Baril where he was told incorrect information regarding the timing of payments and supposed reasons regarding the timing." *Id.* On November 18, 2025, Class Counsel wrote to Betz & Baril, and on November 19,

2025, Betz & Baril agreed to release the complaining class member from the contracts he had entered into with Betz & Baril. *Id.* Class Counsel reported that, however, Betz & Baril did not substantively respond to Class Counsel's concerns. *Id.* at 5-6.

That same day, the undersigned directed Respondents to respond to Class Counsel's allegations by December 1, 2025. Text Order, dated Nov. 21, 2025. On November 25, 2025, Betz & Baril reported to the Court that it had "terminated [its] partnership with ClickFunds last year after similar concerns [of ClickFunds providing false information to clients] were brought to [Betz & Baril's] attention, and [Betz & Baril] ha[s] not utilized [ClickFunds'] services since that time for Visa/Mastercard or any other services because of what was brought to [its] attention." Dkt. No. 9705-1 at 2. Betz & Baril stated that it last spoke to the class member on September 11, 2025, and reiterated that Betz & Baril is "no longer affiliated with ClickFunds, LLC, and ha[s] not been since similar issues were brought to [Betz & Baril's] attention regarding ClickFunds, LLC by Class Counsel." *Id.* Betz & Baril was subsequently directed to more fully respond to Class Counsel's allegations by January 12, 2026. Text Order, dated Dec. 19, 2025; Text Order, dated Jan. 6, 2026.

ClickFunds did not initially file a response to Class Counsel's allegations. On December 2, 2025, the undersigned *sua sponte* extended the time for ClickFunds to respond until December 8, 2025. Text Order, dated Dec. 2, 2025. The undersigned again *sua sponte* extended the time for ClickFunds to respond until December 30, 2025. Text Order, dated Dec. 9, 2025.

On December 30, 2025, ClickFunds responded to Class Counsel's allegations via letter. Dkt. No. 9747-1. ClickFunds contends that Class Counsel's allegations concern emails between a class member and Angie Kivett, with whom ClickFunds claims it had no relationship. *Id.* at 2. ClickFunds claimed that Kivett "was a personal acquaintance of Chris Ormiston, an independent affiliate who worked with Click Funds," and that Kivett "briefly assisted [Ormiston] on an

13

informal basis for approximately three weeks by contacting businesses with whom she had pre-existing personal relationships." *Id.* ClickFunds claims that Kivett "operated independently and without Click Funds' knowledge or authorization." *Id.* ClickFunds also contends that the email address used by Kivett—angie@clickfundsca.com—was not ClickFunds' "official domain." *Id.* at 3. ClickFunds claims that this domain was "set up temporarily by affiliates when Click Funds was experiencing technical difficulties with its primary domain," and "Click Funds, LLC as a corporate entity did not own, register, control, or operate the 'clickfundsca.com' domain." *Id.*

In addition, ClickFunds reported that Ormiston, its affiliate, spoke to the class member on December 23, 2025, and that the class member stated that "he did not feel misled or deceived by the communications he received;" "he understood that the amount quoted was preliminary and subject to pro rata distribution and court approval;" and "he was grateful for the assistance he received." *Id.*

ClickFunds also argued that the emails at issue contained "disclaimers [to] mitigate the potential for actual class member harm" relating to the specific dollar amount quoted in the emails. *Id.* Further, ClickFunds stated that, rather than Betz & Baril initiating the termination of their relationship, as Betz & Baril stated, it was actually ClickFunds that terminated the relationship "after learning that Betz & Baril had undisclosed prior compliance issues with Class Counsel." *Id.*

On January 12, 2026, Betz & Baril provided a further response to Class Counsel's allegations. Dkt. No. 9770-1. Betz & Baril broadly stated that it "gave multiple reminders to all referral partners and lead generators. [*sic*] about the rules and regulations, they need to follow" regarding disclaimers, findings accurate information, and the unavailability of the value of specific claims. *Id.* at 2-3.

14

On January 14, 2026, Class Counsel filed another letter, which responded to Respondents' letters. Dkt. No. 9772. As to Betz & Baril, Class Counsel noted that Betz & Baril's "submission is light on details and makes only general statements concerning the firm's conduct in relation to ClickFunds, but fails to provide specifics." *Id.* at 2. Betz & Baril provided "no information regarding what materials it shared with Lead Generators and Referral Partners, it fails to explain who or what Lead Generators and Referral Partners are, and how these entities work with the law firm to find and sign up class members." *Id.*

As to ClickFunds, Class Counsel argued that, based on ClickFunds' response, "it seems clear that [Kivett], regardless of their employment relationship, was working with an affiliate of ClickFunds according to ClickFunds' own response," and noted that "[t]he class member . . . would have no reason to know the details of Ms. Kivett's employment relationship. The class member reasonably relied on an email related to his claim that contained false and misleading information. The ownership of the domain name is irrelevant as well." *Id.* at 3. Class Counsel also highlighted that "the class member was told repeatedly that he could not submit Square sales . . . , but class members have always been able to submit all sales data, including payment facilitator-linked transactions." *Id.* ClickFunds did not address this in their letter, even though the emails stating that the class member could not submit Square sales "are plainly from ClickFunds," and "[o]ne is even signed by the company's general manager." *Id.* Class Counsel also addressed ClickFunds' claim that an affiliate spoke directly with the class member on December 23, 2025. *Id.* The class member relayed that conversation to Epiq on the same day, and the class member's recount differed significantly from ClickFunds'. *Id.* Of note, "[t]he class member told Epiq that he thought at first he was speaking to Epiq because the caller did not identify the entity he was calling on behalf of. Since he was no longer under contract with Betz & Baril as of mid-November, he

15

thought he was speaking with Epiq." *Id.* The class member also reported that "he was again told by Mr. Ormiston that Square transactions were not included," and that Kivett "was now in the hospital." *Id.* He was also told that, "I hope you can do something really nice for Angie," and "[b]etween B & B and Angie they are facing a loss of over $100K." *Id.*

As to possible sanctions, Class Counsel recommended that the Court "require that Betz & Baril and ClickFunds send a letter at their expense to all class members who signed up with Betz & Baril as an agent (or otherwise) offering those class members the right to terminate their contract and have the claim facilitated through Epiq," and that "the two entities be required to cover all of Epiq's costs related to this issue." *Id.* at 4. Class Counsel noted that, although "[h]arsher sanctions may be warranted . . . [,] additional facts are likely needed to support the imposition of terminating sanctions." *Id.* Class Counsel further noted the possibility that "undoing many thousands of contracts may not be in the class members' best interests, although the Class Administrator has the ability to assist these class members." *Id.* at 2 n.3.

Class Counsel asserted that, before a sanctions finding is made, Betz & Baril should be required to produce certain documents and information. *Id.* Specifically, Class Counsel argued that Betz & Baril should produce and/or explain: "all materials it shared with Lead Generators and Referral Partners it used to train them"; "all emails it sent to the Lead Generators and Referral Partners" regarding training and correcting misinformation; the absence of any training materials, if relevant; "the agency relationship it has with its partners"; and the "normal channels," as stated by Betz & Baril, by which it obtains contracts from ClickFunds. *Id.* at 2-3.

On January 15, 2026, the undersigned ordered expedited discovery into Respondents' practices and set a briefing schedule for Class Counsel's proposed sanctions motion. Text Order, dated Jan. 15, 2026. Class Counsel subsequently served document requests and interrogatories on

16

Betz & Baril and ClickFunds.  Dkt. No. 9793-1 at 10.  Respondents provided responses and
objections to Class Counsel's demands and produced "more than 900 pages of emails and other
documents."  *Id.* at 10-11.  The parties also met and conferred.  *Id.* at 11.

**C.    Class Counsel's Motion for Sanctions Against Respondents**

On February 9, 2026, after the exchange of discovery, Class Counsel filed the instant
motion for sanctions against Respondents.  Dkt. No. 9793.  Class Counsel argues that sanctions
are warranted because the evidence demonstrates a lack of training or oversight of any of Betz &
Baril's referral partners; that Betz & Baril was aware that class members were receiving false and
misleading information, including from ClickFunds, but did not stop it; that Betz & Baril provided
incorrect information regarding Square transactions to its referral partners, which harmed class
members; that Betz & Baril misrepresented its relationship with ClickFunds to the Court; and that
ClickFunds was Betz & Baril's agent and provided misleading information to class members.  *See*
Dkt. No. 9793-1 at 11-14.

First, as to Betz & Baril's training and oversight of its referral partners, Class Counsel
argues that such training and oversight was "subpar" because Mr. Baril's training "consisted solely
of Mr. Baril being on a call with a merchant and a referral partner three times."  *Id.* at 11.  Betz &
Baril told Class Counsel that its referral partners "were told to disclose the Court-ordered
disclaimers and to tell merchants that the payment amounts were currently unknown," but "[t]here
is not a single document that shows any type of training in the 900+ pages of discovery."  *Id.*  Class
Counsel argues that the "solely verbal 'training' is further concerning because there is no evidence
that there was any ongoing review of what referral agents were saying in phone calls or emails."
*Id.*  Class Counsel argues that Betz & Baril's "discovery responses also do not reveal whether even
this minimal 'training' occurred with each referral partner," including Kivett.  *Id.*  Class Counsel
asserts that "[t]he numerous emails telling class members what their payments would be is strong

evidence that Betz & Baril did not properly train all referral partners and that there was no oversight whatsoever." *Id.*

Second, Class Counsel argues that the documents that were produced "reveal that Betz & Baril was aware that class members were receiving false and misleading information, yet did not stop it." *Id.* For example, Kivett told a class member that they would receive a "preliminary amount" of $310,726.00, and that class member contacted Betz & Baril to find out additional information. *Id.* at 12 (citing Dkt. Nos. 9793-4, 9793-5). Kivett, Mr. Baril, and Betz & Baril's operations manager, Bailyn Pierce, were all on the follow-up emails with the class member. *Id.* (citing Dkt. Nos. 9793-4, 9793-5). Further, Class Counsel highlights that "Betz & Baril has admitted that ClickFunds provided false information to class members," particularly in its November 25, 2025 letter. *Id.* at 13 (quoting Dkt. No. 9705-1 ("Our office has been made aware that a former partner, ClickFunds, LLC, has provided false information to clients. We terminated our partnership with ClickFunds last year after similar concerns were brought to our attention, and we have not utilized [ClickFunds'] services since that time for Visa/Mastercard or any other services because of what was brought to our attention.")). Class Counsel argues that "Betz & Baril's acknowledgement of the false statements made by its partner should weigh heavily in the Court's decision." *Id.*

Third, Class Counsel alleges that Betz & Baril provided incorrect information regarding the eligibility of Square transactions to referral partners, which negatively impacted class members. *Id.* at 12. "Betz & Baril decided not to take clients who had transactions using Square." *Id.* (quoting Dkt. No. 9793-8). Class Counsel argues that, "[b]ecause of a lack of proper explanation and training . . . Square transactions were not included in the settlement" as to class members who contracted with Betz & Baril, notwithstanding the fact that Square transactions

should have qualified.  *Id.*  According to Class Counsel, "[t]his likely cost class members significant recoveries." *Id.*  Indeed, the class member who complained on November 17, 2025 and was subsequently released from their contract with Betz & Baril, had "more than $2.3 million in Square sales volume," which was only included in the class member's claim once they began working with Epiq.  *Id.* at 12-13.  Class Counsel notes that "[t]here is no way to know how many clients of Betz & Baril may have had Square transactions that were not included in the total transaction amounts submitted to the administrator." *Id.* at 13.

Fourth, Class Counsel refers to Betz & Baril's November 2025 letter to the Court, in which it stated that it terminated a partnership with ClickFunds "last year after similar concerns were brought to [Betz & Baril's] attention, and [Betz & Baril] ha[s] not utilized [ClickFunds'] services since that time for Visa/Mastercard or any other services because of what was brought to [Betz & Baril's] attention." *Id.* (quoting Dkt. No. 9705-1).  Betz & Baril had also told the Court in September 2024 that it had "ceased all work with ClickFunds." *Id.* (quoting Dkt. No. 9438 at 3).  Class Counsel argues that, despite Betz & Baril's representations, "[a] document in the production appears to undermine that claim" because "[a]n email between the operations manager at the law firm [(Pierce)] and someone at ClickFunds is dated December 16, 2024, and shows Betz & Baril sharing information about a client." *Id.* (citing Dkt. No. 9793-9).  Class Counsel claims that this "is additional evidence regarding the two entities working together after claiming all work had ceased." *Id.*

Fifth, Class Counsel points to false or misleading information that ClickFunds provided to class members and argues that ClickFunds was Betz & Baril's agent. *Id.* at 13-15.  Class Counsel highlights that Kivett is a main cause of the instant issues. *Id.* at 13.  Kivett sent numerous emails to class members and was on emails with other ClickFunds employees and Betz & Baril. *Id.* at

14. But there is no evidence that "anyone at Betz & Baril or ClickFunds ever instructed Ms. Kivett to stop contacting class members." *Id.*

Indeed, in one email from Kivett to a class member, Kivett states that she "ha[s] the amount [the class member] [is] approved to receive that [she] can share with [the class member] from [the class member's] claim reimbursement of overcharged Visa/MasterCard interchange fees [the class member] paid between January 2004-January 2019." *Id.* (quoting Dkt. No. 9793-10). Kivett, however, "had no such actual information." *Id.* Further, Pierce, Betz & Baril's operations manager, emailed a class member, Mr. Baril, and Kivett, and stated that "[t]he 310719 USD is before the Class Counsel configures the pro rata share and before our fees. We do not know the pro rata share at this time. We will not know until the filing period closes on February 4th 2025." *Id.* (quoting Dkt. No. 9793-11). "At no time, however, does anyone tell the class member that the stated number is the total interchange fees paid by the class member and not the amount he was to receive." *Id.* Indeed, there are numerous emails from Kivett to class members "claiming 'preliminary amount[s]' to be received and included only the barest explanation of the pro rata distribution." *Id.* (footnote citing Dkt. Nos. 9793-6, 9793-12 – 9793-47). While a few of those emails did state that Respondents "can't state the final and exact amount you will receive back, nor the date you can expect to receive your payment," *see* Dkt. Nos. 9793-12 – 9793-13, 9793-16, 9793-18 – 9793-25, 9793-34, 9793-37 – 9793-42, 9793-44 – 9793-45, 9793-47, "it is clear that class members did not understand that the amounts quoted as 'preliminary' were anything other than expected payments." Dkt. No. 9793-1 at 15 n.3.

Class Counsel argues that the Court has authority under the All Writs Act, Federal Rule of Civil Procedure 23(d), and its inherent authority to impose sanctions on Betz & Baril and

ClickFunds. *Id.* at 15-24.  Specifically, Class Counsel requests that the Court impose the following sanctions:

> (1) that neither Betz & Baril nor ClickFunds receive any portion of any class members' settlement benefits related to any clients signed up by Betz & Baril through any association with ClickFunds; (2) that Betz & Baril and ClickFunds be required, at their expense, to alert all class member clients that both have been sanctioned for conduct related to this action; (3) that Betz & Baril and ClickFunds pay the reasonable attorneys' fees and costs of Class Counsel associated with this action; (4) that Betz & Baril and ClickFunds pay the costs incurred by Epiq associated with this action; and (5) that Betz & Baril report any sanctions determination of this Court to the Tennessee State Bar Professional Responsibility Office.

*Id.* at 7.  In short, Class Counsel argues that "Betz & Baril and its referral partner, ClickFunds, for whom they are responsible, repeatedly made misleading statements to class members; and have . . . received clear warning through an agreed stipulation that they would face sanctions if they were brought to Court again." *Id.* at 24.  Class Counsel argues that it has set forth "a significant showing that the conduct here is part of a continuing failure to properly train and monitor agents," and that "the proposed sanctions are tailored to least affect innocent class members, but harsh enough to, it is hoped, finally have all false and misleading conduct cease." *Id.*

### D.    Respondents' Opposition

Respondents opposed Class Counsel's motion on February 23, 2026.  Dkt. No. 9798.  They argue that Class Counsel's "motion seeks drastic relief—including voiding thousands of private contracts with class members and barring Respondents from compensation—without a concrete showing that any class member was harmed, without a developed evidentiary record, and without a proportionate fit between the alleged communications and the punishment requested." *Id.* at 2.

First, Respondents argue that Class Counsel has not demonstrated actual harm or prejudice to any class members, rendering any sanctions unwarranted. *Id.* at 5-6.  They assert that Class Counsel "does not identify any actual monetary loss, forfeited claim, missed deadline, or other

21

concrete prejudice suffered by the class as a result of the cited emails." *Id.* at 5. They highlight that "[t]he only identified complaining class member"—the class member who complained to Epiq on November 17, 2025—"has been released from his contract and is now working directly with the settlement administrator." *Id.* at 6. And they contend that "the cited communications . . . included disclaimers in the very next sentence explaining that payouts were subject to pro rata adjustment and Court approval and that no exact amount or payment date could be guaranteed." *Id.* Thus, Respondents argue that, absent "tangible harm," the Court "should not interfere with private communications between class members and the entities they have chosen to assist them." *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981)).

Second, Respondents argue that Class Counsel's allegations are, at most, isolated communicational missteps with existing clients and are not sanctionable. *Id.* at 7-8. They argue that "[t]he record described by the parties shows that the challenged communications were not coercive solicitations to absent class members, but follow-up communications to class members who had already retained assistance and were seeking updates." *Id.* at 7 (citing Dkt. Nos. 9705-1, 9747-1). Referencing the "cautionary language and disclaimers" in the subject emails, Respondents assert that such alleged "imprecise phrasing" is not sanctionable without a "clear record of abuse." *Id.* at 8 (citing *Gulf Oil*, 452 U.S. at 101-02). Respondents also relatedly argue that, in this high-volume claims process, imperfections are inevitable. *Id.* at 12 (stating that it is "inevitable that questions will arise and that some communications will be imperfect"). In support of this assertion, Respondents refer to the Declaration of William Hillestad ("Hillestad Declaration"). *Id.* (quoting Dkt. No. 9798-1). Hillestad is a "marketing and communications specialist" who "did social media marketing for Click Funds and Betz & Baril to drive inquiries for the Payment Card Interchange Fee (PCIF) Class Action a year or two ago." Dkt. No. 9798-1

22

¶¶ 2, 4.  Hillestad states that he "alone sent [Respondents] over 15,000 [potential class members] so some degree of human error is an inevitability."  *Id.* ¶ 10; *see also* Dkt. No. 9798 at 12.

Respondents next argue that the record is incomplete and one-sided, which cannot support a sanctions determination.  Dkt. No. 9798 at 8-11.  Respondents assert that the allegations regarding the class member who complained to Epiq on November 17, 2025 are inadmissible hearsay and that depositions are needed to complete the record.  *Id.* at 8.  Respondents argue that, "[a]t minimum, the Court should deny sanctions without prejudice and permit targeted discovery, including deposition testimony from the complaining class member (if he is willing), the relevant Epiq personnel, and any individuals alleged to have sent the disputed communications."  *Id.* at 9.

Respondents also contend that the record regarding Betz & Baril's training and oversight of its referral partners is similarly incomplete, as "the Court does not yet have the full factual context" necessary to make a determination.  *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991)).  In support of this assertion, Respondents refer to the Hillestad Declaration and the Declaration of Mr. Baril ("Baril Declaration").  *Id.* at 9-10 (citing Dkt. Nos. 9798-1, 9798-2).  The Hillestad Declaration states that Hillestad "was one of several trainers and personally taught roughly two dozen classes for their representatives and could not have been more emphatic about making no representations – at all!"  Dkt. No. 9798-1 ¶ 10 (exclamation point in original).  The Hillestad Declaration states that the trainers "consistently pushed [Respondents' representatives] to watch Class Counsel's own webinars."  *Id.* ¶ 11.  The Baril Declaration states that Mr. Baril had a "close relationship[]" with every referral partner.  Dkt. No. 9798-2 ¶ 4.  Mr. Baril initially trained referral partners using the "I do, we do, you do" method, and then performed "ongoing" training.  *Id.* ¶¶ 3-4.  The Baril Declaration states that Mr. Baril "would instruct referral partners to say they did not know" what any particular claimant's *pro rata* share of the settlement would

23

be or when anybody would be paid. *Id.* ¶ 5. Mr. Baril states that he "would regularly reach out to referral partners monthly if [he] had not heard from them, ask if anything came up, and [he] would remind them about the . . . disclaimers and" information regarding the settlement process. *Id.* ¶ 7. Thus, in light of these statements, Respondents contend that the Court cannot evaluate whether "any challenged wording [in the disputed emails] was an outlier, promptly corrected, or inconsistent with Respondents' overall guidance." Dkt. No. 9798 at 10. Beyond the vague and unsupported declarations, Respondents point to no evidence to support any such argument that the emails at issue were outliers, promptly corrected, or otherwise inconsistent.

Moreover, Respondents maintain that there is "no rational incentive to inflate preliminary numbers to any individual claimant, because doing so would not increase any eventual fee and would only create needless customer dissatisfaction." *Id.* at 10. Further, they claim that the equities are in Respondents' favor because "Respondents' outreach and educational marketing substantially benefited the class and the settlement process by increasing awareness and participation among merchants who otherwise would not have filed." *Id.* at 11 (citing Dkt. No. 9798-1).

As to Class Counsel's allegation that Respondents continued working together despite reporting to the Court that their relationship had been terminated, Respondents state that they meant that "their relationship as to acquiring and submitting new claims together" had been terminated. *Id.* at 12. They did not "ceas[e] all cooperation on servicing existing merchants whose claims had already been submitted through their prior collaboration." *Id.*; *see also* Dkt. No. 9798-2 ¶ 8 ("In terms of ClickFunds, LLC, we severed our relationship in the context of not continuing to market to any new potential class members, and we continue to service the 4,151 clients that ClickFunds, LLC generated and submitted claims in the payment card settlement action.").

Finally, Respondents argue that, even if the Court finds that some sanctions are warranted, "the Court should deny the requested termination and contract-voiding relief and order only narrowly tailored, remedial steps commensurate with any proven prejudice, to protect the class, or specifically identifiable class members." Dkt. No. 9798 at 2; *see also id.* at 6-7. Respondents submit that "the Court must select the least severe measure adequate to address any prejudice or protect the settlement process." *Id.* at 7 (citing *Doug's Word Clocks.com Pty Ltd. v. Princess Int'l, Inc.*, 323 F.R.D. 167, 174 (S.D.N.Y. 2017); *Gulf Oil*, 452 U.S. at 101-02). Respondents suggest that, if necessary, "a clarifying notice, optional rescission, standardized disclaimer language, or a cooling-off procedure," would "fully address any risk of misunderstanding without the sweeping collateral damage of mass contract cancellation." *Id.* (citing *Gulf Oil*, 452 U.S. at 101-02).

In their opposition, Respondents do not address Class Counsel's allegations regarding Betz & Baril's denial of Square transactions, nor do they dispute that ClickFunds is or was Betz & Baril's agent.

## II.    **Legal Standards**

As part of its obligation to protect class members, the Court has broad authority to regulate the conduct of third parties in their dealings with the class. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *1 ("The Court's authority is clear, and its obligation to protect class members is strong."). This authority includes maintaining "ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." *Id.* at *31 (citation omitted). The Court is authorized to "take curative action—such as requiring the distribution of corrective notices or entering injunctive relief—where misleading or false statements are made to class members." *Id.* (citation omitted); *see also Amerisource Corp.*

*v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at \*6 (E.D.N.Y. July 6, 2010) (recognizing the Court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct," and exercising such power), *aff'd sub nom.*, *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011); *Sundby v. Marquee Funding Grp., Inc.*, No. 19-CV-390 (GPC) (AHG), 2020 WL 5709445, at \*5 (S.D. Cal. Sep. 24, 2020) (The court has "the authority to sanction the conduct of a *nonparty* who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses." (citations omitted)).  The Court's "authority in this context may have either a procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at \*31 (citation omitted).

The All Writs Act, 28 U.S.C. § 1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary "to protect the settlement from threats by both parties and non-parties."  *In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2006 WL 1025588, at \*4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985)).  The curative orders may extend to anyone "in a position to frustrate the implementation of a court order or the proper administration of justice."  *Id*. at \*5 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)); *see also Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (explaining that sanctions against a nonparty would be available under the Court's "'inherent power' . . . for abuse of the judicial process" in bad faith (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980))).  Courts can "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void."  *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at \*5 (citations omitted).

Rule 23(d) of the Federal Rules of Civil Procedure also provides courts with the authority to regulate conduct and communications by parties and their counsel with class members.  As the Supreme Court has explained, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  *Gulf Oil*, 452 U.S. at 100; *see also Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) (noting that, in the event of misconduct in a Rule 23(b)(3) class action, it is the court's responsibility to "safeguard [class members] from unauthorized, misleading communications from the parties or their counsel," and that "the court may impose sanctions").

The Court also has an inherent power to sanction "for conduct which abuses the judicial process."  *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB) (TAM), 2022 WL 3097883, at *11 (E.D.N.Y. Aug. 4, 2022) (first quoting *Chambers*, 501 U.S. at 44-45; and then citing *Ceglia v. Zuckerberg*, 600 F. App'x 34, 36 (2d Cir. 2015) ("A court has 'inherent power' to 'fashion an appropriate sanction for conduct which abuses the judicial process.'")).  "Sanctionable conduct must be proven by clear and convincing evidence and the district court must make a specific finding of bad faith."  *Id.* (quoting *Amerisource Corp.*, 2010 WL 2730748, at *5).  "[I]nherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes."  *Id.* (first quoting *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); and then citing *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018)); *see also United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000) ("But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other

27

misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.").

## III.    Discussion

### A.    Sanctionable Conduct

Here, the undersigned respectfully recommends that sanctions are an appropriate exercise of the Court's authority under its inherent power, Federal Rule of Civil Procedure 23(d), and the All Writs Act.[10]  As an initial matter, Class Counsel presents sufficient evidence that several class members received false or misleading information from Respondents regarding promised amounts that individual class members would receive from the settlement.  For instance, several class members who contracted with Respondents were told:

> As it stands right now, the preliminary amount you will receive back is [a specified monetary amount]. Congratulations! . . . Because the *pro rata* cannot be determined until all Claims are filed and reviewed and until the Court approves the final amounts, we can't state a date you can expect to receive your payment.  I can share that payments are currently scheduled to go out near the end of this year, pending no delays.

*See, e.g.*, Dkt. Nos. 9793-4, 9793-14, 9793-15, 9793-39, 9793-41, 9793-43; *see also* Dkt. No. 9793-10 (email from Kivett to a class member stating: "I have the amount you are approved to receive that I can share with you from your claim reimbursement of overcharged Visa/Mastercard interchange fees you paid between January 2004-January 2019").  Respondents also received a

---

[10] As an initial matter, that Respondents are not parties to this action does not preclude this Court's imposition of sanctions upon them.  "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *31 (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 2006 WL 1025588, at *4); *see also Amerisource Corp.*, 2010 WL 2730748, at *6 (recognizing the court's "inherent power to sanction" non-party shareholder and chief executive for "litigation misconduct," and exercising such power); *Arrowhead Cap. Fin., Ltd. v. PicturePro, LLC*, No. 21-0300-GW (JPR), 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022) ("Sanctions against a nonparty would be available under the Court's 'inherent power' 'for abuse of the judicial process.'" (quoting *Pennwalt Corp.*, 708 F.2d at 494)).

28

call from a class member claiming that the class member received "a call from one of [Respondents'] associates," who told the class member that "he was going to send [the class member] an email of [the class member's] estimated settlement amount.  He told [the class member] . . . it was [approximately] $32,796 . . . , but [the class member] never got [the] email."  Dkt. No. 9793-7.

Class Counsel also presents sufficient evidence that at least one class member—but, given Respondents' past practices revealed to the Court, likely many more—may have been misled into believing that the settlement did not include Square transactions.  Betz & Baril decided not to take clients who had transactions using Square, but due to a "lack of proper explanation and training, . . . Square transactions were not included in the settlement" claims of Respondents' clients, even though class members were otherwise entitled to include Square transactions in their claims.  Dkt. No. 9793-1 at 12; Dkt. No. 9793-8.  It does not appear that Respondents informed class members that their Square transactions were eligible to be included in their settlement claims, notwithstanding the fact that Betz & Baril would "not tak[e] them."  Dkt. No. 9793-8 at 2.  As Class Counsel asserts, "[t]here is no way to know how many clients of Betz & Baril may have had Square transactions that were not included in the total transaction amounts submitted to the administrator."  Dkt. No. 9793-1 at 13.[11]

Respondents' communications demonstrate that class members were repeatedly provided with misleading information about the settlement amounts, which are not yet available. Respondents' argument that the Court should not intervene because these communications were between existing clients of Respondents—not potential clients—is unavailing.  *See* Dkt. No. 9798 at 6, 7.  Their contention that such communications constituted simply "imprecise phrasing" or

---

[11] Respondents do not address these allegations in their response to Class Counsel's motion.

"imperfect" communications is equally unavailing.[12]  *See id.* at 8, 12.  At bottom, the Court has authority to take curative action where misleading statements are made to class members.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *31. Such statements were made knowingly, and repeatedly, here.  Respondents' attempt to diminish the gravity of the false or misleading statements—rather than attempting or offering to correct their statements—supports the need for sanctions here.

Indeed, Betz & Baril cannot escape sanctions, as it concedes that it was aware that ClickFunds was providing "false information to clients" as early as 2024, after which Betz & Baril claims it "terminated [its] partnership with ClickFunds."  Dkt. No. 9705-1 at 2.  Betz & Baril has attempted to clarify to the Court that Respondents' relationship ceased in 2024 only "as to acquiring and submitting new claims together, not to ceasing all cooperation on servicing existing merchants whose claims had already been submitted."  Dkt. No. 9798 at 12.  But this representation is in sharp contrast to Betz & Baril's prior representations to the Court, to wit: only a few months ago, on November 25, 2025, Betz & Baril stated that "[w]e are no longer affiliated with ClickFunds, LLC, and have not been since similar issues were brought to our attention regarding ClickFunds, LLC by Class Counsel."  Dkt. No. 9705-1 at 2.  In fact, on September 26, 2024, Betz and Baril's counsel stated that "Jason Baril . . . ceased *all* work with ClickFunds . . . as a result of this incident."  Dkt. No. 9438 at 3 (emphasis added).  In short, Betz & Baril cannot distance itself from the actions of its agent, ClickFunds, in the context of this action.  Both Betz & Baril and

---

[12] Respondents point to publicly available Google reviews containing negative feedback of Class Counsel's law firms—along with similar "reviews" about the United States District Court for the Eastern District of New York—ostensibly to support their assertion regarding the inevitability of "imperfections."  Dkt. No. 9798 at 13-15.  Respondents argue that these reviews "underscor[e] that the existence of an occasional complaint is not proof of sanctionable misconduct."  *Id.* at 13.  Such reviews are, as Respondents appear to concede, wholly irrelevant to the instant motion, especially in light of Respondents' own prior conduct in this litigation.

ClickFunds remain responsible.  Both have acted in bad faith.  *See, e.g.*, *Panora v. Deenora Corp.*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (Cogan, J.) (finding bad faith where plaintiff's counsel sent out a notice of a collective action to defendant's employees without court approval of the notice and consent-to-join form, potentially harming the putative plaintiffs).

## B.    Recommended Sanctions

While the undersigned respectfully recommends a finding that sanctions are warranted against Respondents due to their actions taken in bad faith, the undersigned does not recommend that the Court grant Class Counsel's motion in its entirety.   The undersigned respectfully recommends that Class Counsel's first requested sanction—that "neither Betz & Baril nor ClickFunds receive any portion of any class members' settlement benefits related to any clients signed up by Betz & Baril through any association with ClickFunds," Dkt. No. 9793-1 at 7—be denied without prejudice.  At this stage, there is not sufficient evidence to find that Respondents have misled *all* of their approximately 9,000 associated class members.  *See* Dkt. No. 9465 at 2; Dkt. No. 9793-1 at 15 n.3.  Terminating those contracts more than a year after the claims-filing deadline would also unduly burden the class members, as they would be forced to refile their claims in a compressed timeframe when they may not wish to do so.  As Class Counsel concedes, "undoing many thousands of contracts may not be in the class members' best interests."  Dkt. No. 9772 at 2 n.3.  The present situation is also unlike the egregious circumstances present with Merchant Stronghold, where this Court enjoined that entity from "participating in any way in this action's claims-filing and administration process" after Merchant Stronghold "signed up merchants for claims-filing services without their knowledge or consent."  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 768 F. Supp. 3d at 433.  Here, however, some class members have agreed to work with Respondents.

31

Second, Class Counsel requests that Respondents "be required, at their expense, to alert all class member clients that both have been sanctioned for conduct related to this action." Dkt. No. 9793-1 at 7.[13] The undersigned respectfully recommends that the Court grant this request along with the following sanction, to wit: that Betz & Baril be directed to send a communication (to be approved by Class Counsel) to all class members who have signed up for claims-filing services with Betz & Baril that alerts class members to the false and/or misleading information regarding Square transactions and settlement amounts, and offers the class members the right to terminate their contract with Betz & Baril within thirty days of the letter, no questions asked, and have the claim facilitated through Epiq at no cost. Betz & Baril, as the entity that appears to be contracted directly with the class members, should be directed to send the communication, while blind copying Class Counsel for their awareness. The October 18, 2024 so-ordered stipulation entered into between Betz & Baril and Class Counsel called for a similar communication to be sent regarding false and/or misleading information being provided to class members, and this Court has granted similar relief regarding other third parties. *See* Dkt. No. 9465; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 754 F. Supp. 3d 319, 323 (E.D.N.Y. 2024) (adopting report and recommendation and ordering a third-party entity and payment processor to provide all merchants who signed up for its claims-filing services with "notice that they may cancel their contract with [the third-party] and file their own claims," and directing that such notice must consist "solely of language approved by Class Counsel"). Given that thousands of class members are contracted with Betz & Baril and given that there is no evidence that *all* of them have been

---

[13] Respondents appear to concede this point, as they note that should sanctions be necessary, lesser sanctions, such as those proposed in Class Counsel's January 14, 2026 letter, would be more appropriate. *See* Dkt. No. 9798 at 7 ("[A] clarifying notice, optional rescission, standardized disclaimer language, or a cooling-off procedure," would "fully address any risk of misunderstanding without the sweeping collateral damage of mass contract cancellation.").

misled, class members should be permitted the option to terminate their contracts should they so choose. This communication will be particularly important where class members are unaware that Square transactions should be included in their claim. As stated by Class Counsel, "[t]here is no way to know how many clients of Betz & Baril may have had Square transactions that were not included in the total transaction amounts submitted to the administrator." Dkt. No. 9793-1 at 13. A communication to all class members who contracted with Betz & Baril will ensure that those with missing Square transactions will be able to properly re-file with Epiq directly. And, while the filing period has otherwise closed, the undersigned respectfully recommends that the Former Betz & Baril Class Members should be permitted to re-file their claims during a specified reopening period, the parameters of which should be proposed by Class Counsel following a ruling on the present Report and Recommendation.

Third, Class Counsel requests that "Betz & Baril and ClickFunds pay the reasonable attorneys' fees and costs of Class Counsel associated with this action." *Id.* at 7. The undersigned presumes that Class Counsel's request is not seeking to have Respondents be required to pay the attorneys' fees and costs associated with this entire action—that is, the nearly twenty-one-year ongoing multidistrict class action litigation. Rather, the undersigned respectfully recommends that the Court order Respondents to pay the reasonable attorneys' fees and costs Class Counsel incurred in bringing this motion, as well as the reasonable attorneys' fees and costs incurred by Class Counsel in connection with implementing the undersigned's recommendations here, should they be so ordered. There is no doubt that the Court has the power to institute monetary sanctions, including costs and fees, on Respondents for their conduct. *See, e.g., Panora*, 521 F. Supp. 3d at 180-81 (ordering, under the Court's inherent authority to impose sanctions on an attorney who has acted in bad faith, counsel to "reimburse defendants for the reasonable attorney's fees incurred in

33

filing and litigating this motion for sanctions."); *Schleifer v. Berns*, No. 17-CV-1649 (BMC), 2017 WL 3084406, at *5 (E.D.N.Y. July 19, 2017) (noting that the Court has "the inherent authority to impose monetary sanctions on a litigant or his counsel, including the assessment of attorney's fees and costs" (citing *Chambers*, 501 U.S. at 44-45)).    Should the Court adopt this Report and Recommendation, Class Counsel shall file, by a date certain set by the Court, a motion—including a memorandum of law, declarations, and an itemized statement of expenses—for Class Counsel's reasonable expenses or costs in connection with its motion and associated efforts to implement the Court's order.

Fourth, Class Counsel requests that Respondents "pay the costs incurred by Epiq associated with this action."  Dkt. No. 9793-1 at 7.  Similar to the request for attorneys' fees and costs, the undersigned presumes that Class Counsel is not requesting that Respondents pay Epiq's administration fees associated with this entire multi-decade action.  Rather, the undersigned respectfully recommends that Respondents be ordered to pay all of Epiq's reasonable costs incurred in administratively filing the claims of the Former Betz & Baril Class Members. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 789 F. Supp. 3d at 246 (ordering Epiq to "attempt to administratively file the claims on behalf of the eighty class members [a sanctioned third-party claims administrator] purported to represent, and submit all costs to [the sanctioned third-party claims administrator]").  The undersigned also respectfully recommends that Respondents provide Class Counsel and Epiq with all information regarding the Former Betz & Baril Class Members, including contact information, necessary for Epiq to administratively file their claims. *See id.* (ordering a sanctioned third-party claims administrator to "provide to Class Counsel and Epiq all necessary information regarding its marketers and class member clients, including contact information").  Further, the undersigned respectfully recommends that Epiq be

34

directed to maintain records regarding the costs associated with filing the Former Betz & Baril Class Members' claims, to facilitate charging such expenses to Respondents. *See id.* at 248 n.2 (recommending that "Epiq be ordered maintain records regarding the costs associated with filing these claims to facilitate charging such expenses to [a sanctioned third-party claims administrator]"). And, should the Court adopt this Report and Recommendation, Class Counsel shall file, by a date certain set by the Court, a motion—including a memorandum of law, declarations, and an itemized statement of expenses—for Epiq's reasonable expenses or costs in connection with filing the Former Betz & Baril Class Members' claims and associated efforts to implement the Court's order.

Finally, Class Counsel requests an order directing that "Betz & Baril report any sanctions determination of this Court to the Tennessee State Bar Professional Responsibility Office." Dkt. No. 9793-1 at 7. Class Counsel does not identify which rule of the Tennessee Rules of Professional Conduct that they believe Betz & Baril to have violated, nor do they allege that any such Rules were violated so as to require reporting. Without Class Counsel having provided any support for its request, the undersigned respectfully recommends that the Court deny Class Counsel's request, without prejudice to renewal should it be necessary. Of course, Betz & Baril and its lawyers are nevertheless required to comply with their professional ethical obligations as officers of the Court.

## IV.    Conclusion

For the reasons set forth above, the undersigned *sua sponte* respectfully recommends that Class Counsel's motion (Dkt. No. 9793) be granted in part and denied in part. Specifically:

(a) The Court shall order Betz & Baril to send a communication (with language approved by Class Counsel) to all class members who have signed up for claims-filing services with Betz & Baril (blind copying Class Counsel) that alerts class members to the false and/or

misleading information regarding Square transactions and settlement amounts, and offers the class members the right to terminate their contract with Betz & Baril within thirty days of the letter, no questions asked, and have the claim facilitated through Epiq at no cost;

(b) With respect to the Former Betz & Baril Class Members, the Court shall permit the Former Betz & Baril Class Members to re-file their claims during a limited re-opening of the claims-filing period for those specific class members—the parameters of which Class Counsel shall propose to the Court by a date certain following a ruling on the present Report and Recommendation;

(c) Following Court approval of the limited re-opening of the claims-filing period for the Former Betz & Baril Class Members, the Court shall permit Epiq to attempt to administratively file these claims, with the reasonable costs of the same charged to Respondents;

(d) The Court shall order Epiq to maintain records regarding the costs associated with filing such claims, to facilitate charging such expenses to Respondents;

(e) The Court shall order Respondents to provide to Class Counsel and Epiq all necessary information regarding the Former Betz & Baril Class Members, including contact information; and

(f) The Court shall order Respondents to pay reasonable attorneys' fees and costs that Class Counsel incurred in bringing the present February 9, 2026 motion, as well as the reasonable attorneys' fees and costs that Class Counsel incurs in connection with completing parts (b) through (e) above.

36

The undersigned also respectfully recommends that the remainder of Class Counsel's motion be denied without prejudice to renewal should Class Counsel become aware of other potentially sanctionable misconduct by Respondents.

A copy of this Report and Recommendation is being electronically served on counsel. Class Counsel is directed to serve a copy of this Report and Recommendation on Betz & Baril and ClickFunds and file proof of service by April 2, 2026.

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Cogan. The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)). Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)). Accordingly, the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff

failed to object to the magistrate judge's report and recommendation pertaining to the claim on

which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated:      Brooklyn, New York         **SO ORDERED.**
            April 1, 2026

                                             */s/ Joseph A. Marutollo*
                                      JOSEPH A. MARUTOLLO
                                      United States Magistrate Judge