
*** Filed *** 06:57 PM, 16 Apr, 2026
U.S.D.C. Eastern District of New York

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

**In re:**

**Payment Card Interchange Fee and Merchant Discount Antitrust Litigation**

 MDL No. 1720 (BMC)(JAM)

 Civil No. 05-5075 (BMC)(JAM)


## SECOND SUPPLEMENTAL NOTICE OF DISTRIBUTION ERROR AND RECORD OF NOTICE-RELATED INQUIRIES

Submitted by: **Peter Corsa**


## I. INTRODUCTION

I previously submitted a **Supplemental Notice of Distribution Error and Request for Court-Ordered Disclosure and Recalculation**. Following that filing, I sought factual information from co-lead counsel regarding the notice history associated with my merchant accounts. This filing consolidates:

- the factual questions I asked,
- the responses I received,
- the information that could not be provided,
- the factual gaps that remain,
- my personal declaration of facts, and
- exhibits documenting the timeline and communications.

This submission is limited to factual information and does not raise legal arguments.


## II. FACTUAL QUESTIONS PRESENTED TO CO-LEAD COUNSEL

Beginning on April 15,  2026, I asked co-lead counsel to confirm the following factual items:

1. **On what date I personally was first sent any form of notice regarding this settlement.**
2. **To what address that notice was sent.**
3. **Whether I resided or received mail at that address at the time of mailing.**
4. **Whether the February 2019 long-form notice was ever sent to me, and if so, to what address.**
5. **Whether any mailings associated with my merchant accounts were returned as undeliverable.**
6. **Whether mailing logs, address-source data, or delivery records exist for my accounts.**

1

**These questions relate solely to whether I personally received notice during any period in which objections, opt-outs, or participation in the approval process were possible.**

## III. SUMMARY OF RESPONSES RECEIVED FROM CO-LEAD COUNSEL

Co-lead counsel provided the following information:

- They stated that **mailings were sent in March 2019** to three former business locations associated with my merchant accounts.
- They stated they **do not know** whether I lived at those addresses at the time.
- They stated they **do not know** whether I forwarded mail from those locations.
- They stated they **do not know** whether undeliverable-mail records exist.
- They stated they **do not have** the specific mailing dates or addresses and must "ask Amanda" for this information.
- They stated that the notice I "was sent" is the same as the February 2019 long-form notice linked in their email, but **did not confirm that this notice was actually mailed to me** or to what address.
- They did not provide mailing logs, address-source data, or proof of delivery.

Most importantly, co-lead counsel stated:

> **"I do not believe the other items are available or ever existed, but I am asking here for Amanda to confirm that is the case."**

This statement indicates that records such as mailing logs, address-source data, and earlier notice records may not exist.

## IV. 2019 NOTICE INFORMATION PROVIDED BY ADMINISTRATOR

On April 16, 2026, Epiq provided the following:

- **March 25, 2019** mailings to:
    - 12 W University Ave, Gainesville, FL (Bombay Bar & Grill)
    - 235 S Main St, Gainesville, FL (Amelia's)
- **May 10, 2019** re-mailing to:
    - 2841 S Nova Rd, Daytona Beach, FL (Alessandro of Gainesville)

All of these were **former business addresses** where I did not reside.

To date, no documentation has been provided regarding:

- February 2019 long-form notice mailing
- Any notice prior to March 2019

- Any notice sent to my domicile
- Any notice sent during objection/opt-out periods
- Any notice sent during the fairness-hearing period
- Any notice sent during the original 2012–2013 notice period
- the date of first personal notice,
- whether the address was current,
- whether the February 2019 notice was mailed to me,
- whether any mail was returned, or
- whether any address verification was performed.

## V. AVOIDANCE OF QUESTIONS REGARDING EARLIER NOTICE PERIODS

Despite repeated written requests, no confirmation was provided regarding:

- whether I was sent notice during the original settlement timeline (2012–2013),
- whether the February 2019 long-form notice was mailed to me, or
- whether any notice was sent to my domicile.

Instead, responses shifted to general statements about class-wide notice standards, publication notice, and due-process rulings, without addressing the factual question of whether I personally was sent notice during any period in which rights could be exercised.

No documentation was provided showing that I received notice during:

- the objection period,
- the opt-out period,
- the fairness-hearing period, or
- the period prior to final approval.

## VI. DISTINCTION BETWEEN ADMINISTRATOR'S MAILING PRACTICES AND PERSONAL RECEIPT OF NOTICE

Epiq has stated that mailed notice was sent in March and May 2019 to addresses associated with former business locations linked to my merchant accounts. Epiq and co-lead counsel have also stated that they were "not supposed to look for [me] other than the place of business."

The information provided confirms:

1. All 2019 notices were mailed to former business addresses that closed between 2010 and 2013.
2. I did not reside at or receive mail at those addresses at the time the notices were mailed.
3. Mail forwarding does not extend for the 6–13 years between the business closures and the 2019 mailings.

4. No records were provided showing that any notice was sent to my domicile or to any address where I resided.
5. No records were provided showing that any notice was sent during the objection, opt-out, or fairness-hearing periods.
6. No records were provided showing that the February 2019 long-form notice was mailed to me.
7. No mailing logs, address-source data, or delivery records were produced.
8. Co-lead counsel stated:
   "I do not believe the other items are available or ever existed."

This distinction is relevant to the distribution-error context because the absence of personal notice during the objection, opt-out, and fairness-hearing periods meant that I did not have the opportunity to:

- correct the administrator's data,
- update addresses,
- resolve TIN-level discrepancies, or
- address the distribution error prior to the initial partial distribution.

## VII. FACTUAL GAPS IDENTIFIED THROUGH THE INQUIRY

Based on the responses received, the following factual gaps remain:

- **No confirmation exists of when I personally was first sent notice.**
- **No confirmation exists of the address used for any notice.**
- **No confirmation exists that I lived at or received mail at the addresses used.**
- **No confirmation exists that the February 2019 long-form notice was mailed to me.**
- **No confirmation exists of undeliverable-mail records.**
- **No mailing logs or address-source records have been produced.**
- **No evidence has been provided showing that any notice was sent to my domicile.**

These gaps prevented me from correcting the administrator's data, updating addresses, or addressing the distribution error during the relevant periods.

## VIII. DECLARATION OF PETER CORSA

I, **Peter Corsa**, declare under penalty of perjury that the following is true and based on my personal knowledge:

1. I owned or operated the businesses associated with the merchant accounts referenced in this matter.
2. Those businesses closed, and/or were sold between **2005 and 2013**.
3. I did not reside at or receive mail at those business addresses after closure.
4. Mail forwarding does not extend for the 6 to 13 **years** between the business sales/closures and the **March 2019** mailings referenced by co-lead counsel.
5. I did not receive any mailings in March 2019.
6. I did not receive the February 2019 long-form notice.
7. I did not receive any notice during the objection, opt-out, or fairness-hearing periods.
8. My first communications regarding this settlement occurred in **2023–2024**, years after all deadlines had passed.
9. Co-lead counsel has not provided:
     - the date of first personal notice,
     - the address used,
     - confirmation that I lived at the address used,
     - confirmation that the February 2019 notice was mailed to me,
     - undeliverable-mail records,
     - mailing logs, or
     - address-source data.

Executed on: 4/16/2026

Signature: _____

**Peter Corsa**

## Exhibit Index

- Exhibit A — Timeline of Notice-Related Events
- Exhibit B — Summary of Unanswered Factual Questions
- Exhibit C — Email Communications Between Peter Corsa, Co-Lead Counsel, and Epiq

## IX. EXHIBIT A — TIMELINE OF NOTICE-RELATED EVENTS

**Revised Settlement Timeline (per co-lead counsel's link)**

- January 24, 2019 — Preliminary approval
- February 2019 — Long-form notice issued
- July 2019 — Objection deadline
- July 2019 — Opt-out deadline
- November 2019 — Fairness hearing
- December 13, 2019 — Final approval

**Mailings Allegedly Sent to Me (per co-lead counsel's chart produced by Amanda from Epiq)**

- **March 2019** — Notices mailed to former business addresses
- **December 2023 – April 2024** — Pre-populated claim forms and reminder postcards
- **July 2024 – January 2026** — Administrative emails

**My Personal Receipt of Notice**

- No mail received in 2019
- No February 2019 notice received
- No notice received during objection/opt-out periods
- First communications occurred 2023–2024

## X. EXHIBIT B — SUMMARY OF UNANSWERED FACTUAL QUESTIONS

As of the date of this filing, the following factual items remain unanswered:

1. **The date on which I personally was first sent notice.**
2. **The address to which any notice was sent.**
3. **Whether I resided or received mail at that address at the time.**
4. **Whether the February 2019 long-form notice was mailed to me.**
5. **Whether any mailings were returned as undeliverable.**
6. **Whether mailing logs exist.**
7. **Whether address-source data exists.**
8. **Whether any notice was sent to my domicile.**
9. **Whether any address verification was performed.**

## XI. EXHIBIT C — SUMMARY OF NOTICE-RELATED EMAIL COMMUNICATIONS

This exhibit summarizes the written communications between myself, co-lead counsel, and the administrator.

It includes the following key factual statements (quoted verbatim):

- "Date Sent: March 25, 2019… Not returned undeliverable."
- "Date Sent: May 10, 2019… Not returned undeliverable."
- "I do not believe the other items are available or ever existed."
- "How would we know the answer to that?" (regarding whether I lived at the addresses used)
- "My understanding is that the notices you were sent are the same as the February 2019 notice." (without confirming mailing)

These communications show:

- No records were provided confirming any notice prior to March 2019.
- No records were provided confirming the February 2019 long-form notice was mailed to me.
- No records were provided showing that any notice was sent to my domicile.
- No mailing logs, address-source data, or undeliverable-mail records were produced.
- Co-lead counsel stated that certain records "never existed."

This exhibit is submitted solely to document the factual record. Please see actual email correspondence filed separately as exhibit_C_email_correspondence.pdf.


## XII. CLOSING

This consolidated filing is submitted for the purpose of maintaining an accurate factual record regarding the notice history associated with my merchant accounts.

No legal argument is presented.

Respectfully submitted,

_____
**Peter Corsa**
7615 Heritage Crossing Way, unit 102
Reunion, Florida 34747

4/16/2026