*** Filed ***
09:03 PM, 18 Apr, 2026
U.S.D.C. Eastern District of New York

# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

**In re:**

**Payment Card Interchange Fee and Merchant Discount Antitrust Litigation**

 MDL No. 1720 (BMC)(JAM)

 Civil No. 05-5075 (BMC)(JAM)

## NOTICE OF FACTUAL CLARIFICATION REGARDING CLASS COUNSEL'S APRIL 17, 2026 LETTER

Submitted by: **Peter Corsa, pro se class member**

## I. INTRODUCTION

I respectfully submit this Notice to clarify several factual inaccuracies and omissions contained in Class Counsel's April 17, 2026 letter to the Court (ECF 9829). This filing does not raise legal argument, does not challenge the settlement, and does not request relief. It is submitted solely to ensure that the factual record is accurate.

## II. CLARIFICATION REGARDING COMMUNICATIONS

Class Counsel states that I "hung up" during a call. Immediately after that call, I requested that all communications occur **in writing only**, which is reflected in the email record I filed. I have complied with that requirement consistently.

Class Counsel also states that I "attached most, but not all, communications."

I attached **every communication in my possession**. If additional communications exist, they were not provided to me. I have included all the emails as Exhibit A below again for convenience.

## III. CLARIFICATION REGARDING NOTICE MAILINGS

Class Counsel states that I "was sent notice in March and May of 2019."

The information provided by Epiq shows:

- All 2019 mailings were sent to **former business addresses**.
- Those businesses closed and/or were sold between **2006 and 2013**.
- I did **not** reside at or receive mail at those locations at the time of the mailings.

1

- Mail forwarding does **not** extend for the 6–13 years between the business closures and the 2019 mailings.

Class Counsel did **not** inform the Court that:

- No records were provided showing that the **February 2019 long-form notice** was mailed to me.
- No records were provided showing that **any notice** was sent to my domicile.
- No records were provided showing that **any notice** was sent during the objection, opt-out, or fairness-hearing periods.
- No mailing logs, address-source data, or delivery records were produced.
- Co-lead counsel stated in writing:
  **"I do not believe the other items are available or ever existed."**

These facts are documented in the emails attached to my April 16, 2026 filing.

## IV. CLARIFICATION REGARDING CHANGE-OF-ADDRESS STATEMENT

Class Counsel states that "it is unknown whether Mr. Corsa ever filed a change of address."

This is not relevant to the factual question of whether I received notice.

Mail forwarding lasts **12 months**.

My businesses closed or were sold **6–13 years** before the 2019 mailings.

## V. CLARIFICATION REGARDING OPPORTUNITY TO CORRECT DATA

Class Counsel states that I "had the opportunity to update addresses and correct the administrator's data" and that I "took advantage of some of those processes."

For accuracy:

- I did **not** receive notice during the objection, opt-out, or fairness-hearing periods.
- I did **not** receive notice before final approval.
- My first communications regarding this settlement occurred in **2023–2024**, years after all deadlines had passed.
- Any actions I took in 2024–2026 occurred **after** I first learned of the settlement.
- I could not correct data I did not know existed.
- **Class Counsel acknowledged in writing that certain records "never existed."**

*Acknowledgment of Legal Standards:*

Class Counsel references the legal standards governing class-wide notice, including the "best notice practicable" standard and the Court's prior rulings on publication notice. I acknowledge those legal

2

standards and do not dispute them. However, those legal standards do not change the factual record regarding my personal receipt of notice. The issue raised in my filings is not the legal sufficiency of class-wide notice, but the factual question of whether I personally received notice at any time when I could have corrected the administrator's data, updated addresses, resolved TIN-level discrepancies, or addressed the distribution error prior to the initial partial distribution. As documented in the record, I did not receive notice during any period in which rights could be exercised, and Class Counsel has not provided records showing that such notice was ever sent to an address where I resided.

## VI. CLARIFICATION REGARDING TIN-LEVEL ISSUES

Class Counsel states that I **"wrongly believe"** my initial partial payment was incorrect.

I have not asked the Court to rule on the correctness of the payment.

I have documented:

- missing data,
- missing notice,
- missing calculations formulas,
- missing records, and
- the inability to correct errors earlier due to lack of personal notice.

These are factual statements, not legal arguments.

Class Counsel also states that I **"took advantage"** of the research-request process.
The research request was submitted **after** I first learned of the settlement in 2023–2024.

It does not indicate that I had the opportunity to correct data during the relevant periods.

## VII. CLARIFICATION REGARDING RECORDS THAT DO NOT EXIST

Class Counsel did not inform the Court that they stated in writing:

> **"I do not believe the other items are available or ever existed."**

This refers to:

- mailing logs,
- address-source data,
- undeliverable-mail records,
- earlier notice records, and
- other documentation.

This is a material factual point.

## VIII. CLOSING

This Notice is submitted solely to ensure that the factual record before the Court is complete and accurate.

No legal argument is presented.

Respectfully submitted,

Executed: April 18, 2026

Signature:_____

**Peter Corsa**
7615 Heritage Crossing Way, Unit 102
Reunion, Florida 34747

4

# <u>EXHIBIT A</u>

 Outlook

---

**RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications**

---

**From** Sternberg, Amanda <Amanda.Sternberg@epiqglobal.com>
**Date** Thu 4/16/2026 1:55 PM
**To** Xan Bernay <XanB@rgrdlaw.com>; 'PETER CORSA' <petercorsa@outlook.com>

📎 2 attachments (299 KB)
Interchange Long Form Notice.pdf; Transaction Summary 20260416.xlsx;

Hi Mr. Corsa,

Please find the requested 2019 notice information below:

1. BOMBAY BAR & GRILL, c/o PETER CORSA, 12 W UNIVERSITY AVE, GAINESVILLE, FL 32601-3317
   a. Date Sent: March 25, 2019
   b. Not returned undeliverable.
2. AMELIA'S, c/o RAFALE CORSA, 235 S MAIN ST, STE 107, GAINESVILLE, FL 32601-6585
   a. Date Sent: March 25, 2019
   b. Not returned undeliverable.
3. ALESSANDRO OF GAINSVILLE, c/o PETER CORSA, 2841 S NOVA RD, STE 6, DAYTONA BEACH, FL 32119-6102
   a. Date Sent: May 10, 2019
   b. Not returned undeliverable.
   c. An original notice was sent to the same address without the Suite number on March 25, 2019, and that notice was returned as undeliverable. The address was updated via advanced address search and remailed on May 10, 2019, and was not returned as undeliverable.

A copy of the mailed 2019 notice is attached to this email.

Further, I have addressed the pending inquiries not already addressed by Ms. Bernay below:

1. "The merchant-level and TIN-level transaction totals used in calculating my distribution"
   a. Please see the below transaction details associated with the TIN included in the initial, partial distribution (76-0791238). Please note that this information, along with additional yearly breakdowns, is available on the Merchant Portal for each of your registered TINs by clicking on the hyperlinked fee total on the Account Summary Page.

| Period | MasterCard Transactions | Visa Transactions | Total Transactions | MasterCard Volume | Visa Volume | Total Volume | MasterCard Fees | Visa Fees | Total |
|---|---|---|---|---|---|---|---|---|---|
| 2005 | 227 | 589 | 816 | $20,461.41 | $42,684.33 | $63,145.74 | $365.79 | $763.06 | $1,12 |
| 2006 | 960 | 2435 | 3395 | $85,892.68 | $178,099.58 | $263,992.26 | $1,492.14 | $3,093.96 | $4,58 |
| 2007 | 889 | 2217 | 3106 | $70,785.35 | $144,587.71 | $215,373.06 | $1,221.55 | $2,495.18 | $3,71 |
| 2008 | 986 | 2170 | 3156 | $78,232.80 | $150,019.69 | $228,252.49 | $1,360.24 | $2,608.41 | $3,96 |
| 2009 | 801 | 1854 | 2655 | $59,935.47 | $122,809.16 | $182,744.63 | $1,063.67 | $2,179.48 | $3,24 |
| 2010 | 566 | 1495 | 2061 | $30,623.30 | $70,220.23 | $100,843.53 | $541.97 | $1,242.76 | $1,78 |
| 2011 | 13 | 34 | 47 | $659.03 | $1,492.15 | $2,151.18 | $11.19 | $25.34 | $36 |
| Total | 4442 | 10794 | 15236 | $346,590.04 | $709,912.85 | $1,056,502.89 | $6,056.55 | $12,408.19 | $18,4( |

2. "The allocation formula, percentage, or rate applied"
   a. As noted in the motion for distribution, the claimants included in the initial, partial distribution have a total interchange fees value of $36,151,062,607.90 and the approved partial distribution amount was $426,063,670.16. Therefore, your payment was a pro rata percentage based on your fees for this particular TIN ($18,464.74) against all fees included in the distribution ($36,151,062,607.90). That percentage is then multiplied by the distribution amount of $426 million to calculate your initial, partial award of $217.62.

   Please review the provided motion for all of the details. A link is here for easy reference: 9652 - Notice of Motion and Motion for Partial Distribution with Attachments and Cover Letter.pdf. The Court approved this motion and Epiq is acting in accordance with the Court's Order.

3. "Reasons for TIN Exclusion"
   a. As noted in the above-linked motion for distribution, there were many reasons that various TINs were not included in the initial, partial distribution. The specific reasons for your additional TINs are provided below:
      i. 59-3031618 – Selected for random audit
      ii. 45-4809446 – Selected for random audit
      iii. 59-3735396 - A Research Request was submitted on January 17, 2025, via the Merchant Portal. All claims with Research Requests were held from the initial, partial distribution.

If you have further questions or need assistance reviewing further information on the Merchant Portal, please let me know.

Best regards,
Amanda



**Amanda Sternberg**
Director, Client Services' Programs  |  Class Action, Remediation & Mass Tort
+1-206-351-1648
**www.epiqglobal.com**  in

This communication (including any attachment(s)) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail and delete all copies of the original communication to include any copy that may reside in your sent box.

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Wednesday, April 15, 2026 4:08 PM
**To:** 'PETER CORSA' <PETERCORSA@outlook.com>
**Cc:** Sternberg, Amanda <Amanda.Sternberg@epiqglobal.com>
**Subject:** RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

---

CAUTION: This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe. Report phishing by using the "Phish Alert Report" button above.

---

Mr. Corsa

I have spent significant time responding to your requests and have tried to explain why the date you personally may or may not have received mailed notice is not relevant legally, although the evidence suggests your businesses received mailed notice.
I have explained to you below that certain of these questions require Amanda's assistance and I also previously answered several of your questions that you now repeat.
I again repeat that response here in a way you may find easier to read (repeated answers in red):

1. **On what date was I personally first sent any form of notice regarding this settlement?** I am here asking Amanda (who I believe is out of town currently) to see whether the specific date of mailed March 2019
2. **To what address was that notice sent?** I am here asking Amanda (who I believe is out of town currently) to see whether the exact addresses can be provided to you
3. **Did I reside or receive mail at that address at the time the notice was mailed?** I would ask you to reconsider the question. How would we know the answer to that? Instead, the notice (along with notices to millions of class members) was sent to an address associated with businesses that appeared to be linked to a class member
4. **Was the February 2019 long-form notice ever sent to me, and if so, to what address?** My understanding is that the notices you were sent are the same as the notice I previously sent you via link (the February 2019 notice) The address issue is answered in item 2, above.
5. **Were any of the mailings sent to me returned as undeliverable?** I do not know whether records exist regarding undeliverable mail. I here ask Amanda to respond to that question when she is available.

---

**From:** PETER CORSA <PETERCORSA@outlook.com>
**Sent:** Wednesday, April 15, 2026 3:56 PM
**To:** Xan Bernay <XanB@rgrdlaw.com>
**Subject:** Re: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

EXTERNAL SENDER

**Subject:** Follow-Up on Personal Notice Clarification

Ms. Bernay,

Thank you for your response. I will continue to communicate in writing only.

**To clarify, I am not asking about the legal standard for class-wide notice or the Court's rulings on publication notice**. My question concerns **when I personally was first sent notice**, and to what address.

Your chart shows mailings beginning in March 2019, all sent to former business locations where I did not reside or receive mail. I did not receive those communications.

Mail forwarding does not extend for the 6–13 years between when those businesses closed and the 2019 mailings.

To ensure the record is accurate, I am again requesting confirmation of the following:

1. **On what date was I personally first sent any form of notice regarding this settlement?**

2. **To what address was that notice sent?**

3. **Did I reside or receive mail at that address at the time the notice was mailed?**

4. **Was the February 2019 long-form notice ever sent to me, and if so, to what address?**

5. **Were any of the mailings sent to me returned as undeliverable?**

These questions relate solely to whether I personally received notice during any period in which objections, opt-outs, or participation in the approval process were possible.

I will await your written response.

Regards,

**Peter Corsa**

---

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Wednesday, April 15, 2026 6:15 PM
**To:** 'PETER CORSA' <PETERCORSA@outlook.com>
**Cc:** Amanda.Sternberg@epiqglobal.com <Amanda.Sternberg@epiqglobal.com>
**Subject:** RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

Mr. Corsa

Under case law and the rules regarding class notice, personal notice is **not** required. Instead, the standard is the best notice practicable. In this case, the evidence actually shows that you were sent multiple notices in March of 2019 to addresses that were associated with three of your various businesses. We have no way of knowing whether you forwarded your mail as would be expected. I am here asking Amanda (who I believe is out of town currently) to see whether the specific date of mailed March 2019 notices and the exact addresses can be provided to you. You also ask whether you resided or conducted business at those addresses. I would ask you to consider the question. How would we know the answer to that? Instead, the notice (along with notices to millions of class members) was sent to an address associated with businesses that appeared to be linked to a class member. My understanding is that the notices you were sent is the same as the notice I previously sent you via link. Finally, I do not know whether records exist regarding undeliverable mail. I here ask Amanda to respond to that question when she is available.

Further, there was a massive publication notice program that serves as additional notice. When the Court reviewed the notice procedures, it determined that the process comported with Due Process. As I have stated the time to appeal that decision has long passed. The combination of mailed notice and publication notice is what matters legally. Whether you received actual mailed notice is not the test, although it appears from the evidence that I have provided you that mailed notice was sent to your businesses.

While I am happy to continue speaking with you, it is growing apparent that you will not be satisfied with anything I say. Because of that, I again suggest that you avail yourself of the Special Master process.

Best,

Xan

---

**From:** PETER CORSA <PETERCORSA@outlook.com>
**Sent:** Wednesday, April 15, 2026 2:49 PM
**To:** Xan Bernay <XanB@rgrdlaw.com>
**Cc:** Amanda.Sternberg@epiqglobal.com
**Subject:** Re: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

EXTERNAL SENDER

**Subject: Clarification Regarding Personal Notice**

**Ms. Bernay,**

**Thank you for your response. I will continue to communicate in writing only.**

**To clarify, my question concerns when I personally was first sent notice, not when the revised settlement was preliminarily approved.**

**Your chart shows mailings beginning in March 2019, all sent to addresses where I did not reside at the time. These were former business locations, and I did not receive those communications.**

**For clarity, please confirm the following in writing:**

1. On what date was I personally first sent any form of notice regarding this settlement?  You previously stated: "As to notice, according to Epiq's records notices were sent in March 2019 to three of your merchants (Bombay Bar & Grill, Amelia's and Alessandro of Gainesville)."

2. To what address were those notices sent?

3. Did I reside or conduct business at that address at the time the notice was mailed?

4. Was the February 2019 long-form notice ever sent to me, and if so, to what address?

5. Were any of the mailings sent to me returned as undeliverable?

**These questions relate solely to whether I personally received notice during any period in which objections, opt-outs, or participation in the approval process were possible.**

**Below is a factual timeline based on the information you provided:**

**Revised Settlement Timeline (per your links and statements)**

- January 24, 2019 — Preliminary approval

- February 2019 — Long-form notice issued

- July 2019 — Objection deadline

- July 2019 — Opt-out deadline

- November 2019 — Fairness hearing

- December 13, 2019 — Final approval

**Mailings you stated were sent to me (per your chart)**

- March 2019 — Notices mailed to former business addresses

- December 2023 – April 2024 — Pre-populated claim forms and reminder postcards

- July 2024 – January 2026 — Administrative emails

**According to your chart, the first alleged notice was a mailing in March 2019, sent to former business locations where I did not reside or receive mail. I did not receive those communications.**

**I will await your written response.**

**Regards,**

**Peter Corsa**

---

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Wednesday, April 15, 2026 3:19 PM
**To:** 'PETER CORSA' <PETERCORSA@outlook.com>
**Cc:** 'Sternberg, Amanda' <Amanda.Sternberg@epiqglobal.com>
**Subject:** RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

Mr. Corsa

Please cc Amanda on all communications going forward. Her email is above.

I have asked Amanda to provide certain materials to you, which you should receive in the coming days. Particularly:

a. the merchant-level and TIN-level transaction totals used in calculating my distribution; This is available on the merchant portal Epiq can extract it and send it to you separately. You indicated on the call that you would want this**. I am directing Epiq to provide this to you.**

b. the allocation formula, percentage, or rate applied; Epiq can restate the fees for the TIN included in the initial, partial distribution and that it was a pro rata against all the fees included. If you divide the payment amounts against your fee amount you can get the percentage. **I am directing Epiq to provide this to you.**

I address your other points below in red:

**1. Calculation Worksheet and Methodology**

You stated that the administrator "does not provide" the calculation worksheet and that this is "not a document ever provided to class members."

That is exactly what I documented: the administrator refuses to provide it.

I did not misstate your position; I accurately recorded it.

You are welcome to seek the assistance of the Special Master on this and any other points where you disagree with the administrator's determination. The calculation worksheet you refer to is not something that the administrator provides. If you need information regarding how to initiate the Special Master process, please let us know.

**2. TIN Inclusion and Portal Presentation**

You wrote that the merchant portal "lays out which TINs were included."

The portal displays **total interchange fees across all TINs**, and only after drilling down does it become apparent that only one TIN was included in the initial distribution.

This distinction matters because the portal presentation reasonably suggests that the total amount shown is the basis for the distribution. Your email confirms that this was not the case.

The merchant portal in fact lays out what TINs are included and you admit above that "after drilling down" it "becomes apparent" that one TIN was included. Your opinion on the portal does not comport with what is available to class members. My email does not "confirm" anything other than the fact that the merchant portal in fact shows which TINs were included. Further, you have been told on several occasions that one TIN was included.

**3. Notice Timeline and Address Issues**

Your email states that notices were sent in **March 2019**, and that additional communications were sent in **2023–2026**. This timeline does not align with the periods during which:

- objections could be filed,
- opt-outs could be submitted,
- fairness hearings occurred, or
- the settlement was approved.

  **As detailed more fully below, your understanding of the timeline appears to be incorrect.**

The settlement was preliminarily approved years earlier, and the fairness process concluded long before 2019.

Notices sent in 2019 or later do not constitute meaningful notice for those earlier deadlines.

Additionally, the addresses listed in your chart include locations where I no longer resided or conducted business at the time the mailings were sent. I did not receive those communications. Your email acknowledges that notices were sent to outdated addresses, which explains why I did not receive them.

To understand the timeline in relation to the notices you referenced, please provide the following **in writing**:

1. The date of preliminary approval of the settlement. **January 24, 2019**
2. The date the Court approved the form and manner of class notice. **January 24, 2019**
3. The deadline for class members to object to the settlement.  **July 2019**
4. The deadline for class members to opt out of the settlement. **July 2019**
5. The date of the fairness hearing. November 2019
6. The date of final approval of the settlement. **December 13, 2019**

You are incorrect regarding the relevant dates. I attach here a link to the long-form notice that issued in **February of 2019**.
https://www.paymentcardsettlement.com/Content/Documents/New%20Docs/Publication%20Notice.pdf

That notice makes clear that the deadline to object or opt out was in **July 2019**. The Court's preliminary approval occurred in **January 2019**. The fairness hearing (detailed in the notice, above, occurred in **November of 2019**) A link is provided here:
https://www.paymentcardsettlement.com/Content/Documents/New%20Docs/Memo%20and%20Order%20re%20Preliminary%20Approval.pdf

The final approval Order dated **December 13, 2019**  is here:
https://www.paymentcardsettlement.com/Content/Documents/New%20Docs/Dkt%20No.%207818_Final%20Approval%20Order.pdf

There are a number of other documents on the paymentcardsettlement.com website under the "documents" tab you may find relevant.

**4. Request for Mailing Records**

You offered to "research" whether I was ever sent notice. You stated that notices were sent to me in 2019, and that additional communications were sent in 2023–2026. To understand whether those notices were meaningful in relation to the legally relevant deadlines above, I need the dates confirmed.

Additionally, please provide:

- The dates any notices were mailed
- The addresses used
- The source of those addresses
- Whether any mailings were returned as undeliverable
- Any logs or **records showing delivery attempts**
- **Any email logs showing successful or failed delivery**

This information is necessary to understand whether I was ever meaningfully notified during the periods when objections, opt-outs, or participation in the approval process were possible.

I provided a detailed chart in my prior email regarding the mailings Epiq sent to you. You ask for a number of pieces of information related to the mailings. Some of your requested items were already provided to you. I do not believe the other items are available or ever existed, **but I am asking here for Amanda to confirm that is the case.** You asked for the source of the addresses. The notice mailing population was made up of several data sources including data from the 25 largest merchant acquirers, Visa, Mastercard and other defendants. In total, many millions of addresses and other data points were received via subpoenas and other productions. We disagree that you need all the items on your list to understand whether you received timely notice. Moreover, as explained below, issues related to the sufficiency of notice as to the entire class were already determined by the Court to comport with Due Process. The time for any appeals or argument regarding notice, has long passed.

**5. Reasons for TIN Exclusion**

You stated that Epiq "does not provide individual class members the reason why a given TIN was not in the initial population," but that you can ask them to "look into this issue."

Please provide whatever information Epiq can supply **in writing**.

I am happy to have Epiq respond to this, if possible.

7. **Communication Preference**

As stated previously, I will not be engaging in further phone calls.

All communications must be in writing.

We have honored your request.

Regards,

Xan

---

**From:** PETER CORSA <PETERCORSA@outlook.com>
**Sent:** Wednesday, April 15, 2026 11:00 AM
**To:** Xan Bernay <XanB@rgrdlaw.com>
**Subject:** Re: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only / Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

EXTERNAL SENDER

**Subject:** Follow-Up and Clarification Regarding Notice, Addresses, and Prior Communications

Ms. Bernay,

I am responding to your most recent email to ensure the record is accurate and complete. As stated previously, I will continue to communicate **in writing only**.

Your email contains several points that require clarification.

**1. Calculation Worksheet and Methodology**

You stated that the administrator "does not provide" the calculation worksheet and that this is "not a document ever provided to class members."

That is exactly what I documented: the administrator refuses to provide it.

I did not misstate your position; I accurately recorded it.

**2. TIN Inclusion and Portal Presentation**

You wrote that the merchant portal "lays out which TINs were included."

The portal displays **total interchange fees across all TINs**, and only after drilling down does it become apparent that only one TIN was included in the initial distribution.

This distinction matters because the portal presentation reasonably suggests that the total amount shown is the basis for the distribution. Your email confirms that this was not the case.

**3. Notice Timeline and Address Issues**

Your email states that notices were sent in **March 2019**, and that additional communications were sent in **2023–2026**. This timeline does not align with the periods during which:

- objections could be filed,
- opt-outs could be submitted,
- fairness hearings occurred, or
- the settlement was approved.

The settlement was preliminarily approved years earlier, and the fairness process concluded long before 2019.

Notices sent in 2019 or later do not constitute meaningful notice for those earlier deadlines.

Additionally, the addresses listed in your chart include locations where I no longer resided or conducted business at the time the mailings were sent. I did not receive those communications. Your email acknowledges that notices were sent to outdated addresses, which explains why I did not receive them.

To understand the timeline in relation to the notices you referenced, please provide the following **in writing**:

1. The date of preliminary approval of the settlement.
2. The date the Court approved the form and manner of class notice.
3. The deadline for class members to object to the settlement.
4. The deadline for class members to opt out of the settlement.
5. The date of the fairness hearing.
6. The date of final approval of the settlement.

**4. Request for Mailing Records**

You offered to "research" whether I was ever sent notice. You stated that notices were sent to me in 2019, and that additional communications were sent in 2023–2026. To understand whether those notices were meaningful in relation to the legally relevant deadlines above, I need the dates confirmed.

Additionally, please provide:

- The dates any notices were mailed
- The addresses used
- The source of those addresses
- Whether any mailings were returned as undeliverable
- Any logs or records showing delivery attempts
- Any email logs showing successful or failed delivery

This information is necessary to understand whether I was ever meaningfully notified during the periods when objections, opt-outs, or participation in the approval process were possible.

**5. Reasons for TIN Exclusion**

You stated that Epiq "does not provide individual class members the reason why a given TIN was not in the initial population," but that you can ask them to "look into this issue."

Please provide whatever information Epiq can supply **in writing**.

**6. Communication Preference**

As stated previously, I will not be engaging in further phone calls.

All communications must be in writing.

I will await the written materials you indicated Epiq will provide, as well as the mailing-research results and the dates requested above.

Regards,

**Peter Corsa**

---

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Monday, April 13, 2026 3:08 PM
**To:** 'petercorsa@outlook.com' <petercorsa@outlook.com>
**Cc:** 'Sternberg, Amanda' <Amanda.Sternberg@epiqglobal.com>
**Subject:** RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only

Mr. Corsa

Your below email does not comport with the conversation we had.

I am happy to speak via written communication, but I will not stand for misstatements.

I did not say you were not entitled to a calculation worksheet. I said that the administrator would not be providing that and that this is not a document that is ever provided to class members.

The merchant portal lays out which TINs were included in the distribution so it does not make sense for you to claim that you did not know other TINs were not included. It is my further understanding that Epiq representatives also told you that not all of your TINs were included in the initial, partial distribution population.

Information regarding the reasons for inclusion or non-inclusion is detailed in public filings that are all available on the settlement website (www.paymentcardsettlement.com). If you have any trouble accessing, please let me know.

As to notice, according to Epiq's records notices were sent in **March 2019** to three of your merchants (Bombay Bar & Grill, Amelia's and Alessandro of Gainsville).

You were also sent a variety of other communications,  many well prior to the end of claims filing period. Please see the chart below.

| Merchants | TINs | Document | Sent Date | Address |
|---|---|---|---|---|
| BOMBAY BAR & GRILL INC | XXX9446 | Mailed - Prepopulated Claim | 12/4/2023 | 12 W University Ave, Gainesville, FL 32601-3317 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 12 W University Ave, Gainesville, FL 32601-3317 |
| | | EMailed - Authorization Approved | 8/1/2024 | petercorsa@outlook.com |
| PIOS PASTA DOWNTOWN | XXX5396 | Mailed - Prepopulated Claim | 12/4/2023 | 4320 SW 20TH AVE, GAINESVILLE, FL 32607-4200 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 4320 SW 20TH AVE, GAINESVILLE, FL 32607-4200 |
| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
| | | Emailed - Additional Data | 1/17/2025 | petercorsa@outlook.com |
| | | Emailed - Research Results | 2/26/2025 | petercorsa@outlook.com |
| AMELIA'S | XXX1618 | Mailed - Prepopulated Claim | 12/4/2023 | 236 S MAIN ST, STE 107, GAINESVILLE, FL 32601-6585 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 235 S MAIN ST, STE 107, GAINESVILLE, FL 32601-6585 |
| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
| ALESSANDRO OF GAINSVILLE | XXX1238 | Mailed - Prepopulated Claim | 1/24/2024 | 2842 S NOVA RD, DAYTONA BEACH, FL 32119 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 2841 S NOVA RD, DAYTONA BEACH, FL 32119 |
| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
| | | EMailed - SG Payment Election | 12/4/2025 | petercorsa@outlook.com |
| | | EMailed - SGPayElectReminder | 1/5/2026 | petercorsa@outlook.com |

As I explained on the call, the issue of notice was previously raised with the Court and notice was found to properly comport with Due Process. As you received individual mailed notice based on Epiq's records, as well as many other communications, your statement below (item four)  appears to be incorrect.

Further, as I explained in my earlier email, there are a variety of reasons a TIN may not have been included in the initial, partial distribution. It is not Epiq's practice to provide individual class members the reason why a given TIN was not in the initial population, but I can ask Epiq (Amanda copied here) to look into this issue.

Finally, the check details were noted in my email, below, but I replicate them here: Check No: 385743. Check Date: 2/13/2016. It was mailed to your address but has not yet been cashed. Stale date is May 14, 2026.

Regards,

Xan

---

**From:** PETER CORSA <PETERCORSA@outlook.com>
**Sent:** Friday, April 10, 2026 1:06 PM
**To:** Xan Bernay <XanB@rgrdlaw.com>
**Subject:** Re: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only

EXTERNAL SENDER

Ms. Bernay,

This email is to document our call earlier today and to clarify my position going forward.

First, I prefer that all future communications be made **in writing only**. I will not be engaging in further phone calls regarding my claim. Written communication ensures accuracy, preserves the record, and avoids any misunderstandings about what was said.

Second, during our call you stated that I am "not entitled" to the calculation worksheet, the formula used, or other information I requested. I want to be clear that I am not asking for anything beyond what is necessary to understand how my distribution was determined. Your refusal to provide the calculation methodology, while simultaneously asserting that the distribution was correct, is noted.

Third, you acknowledged that **only one of my TINs** was included in the initial distribution and that the remaining TINs were excluded for reasons that were not previously disclosed to me. This is the first time I have been informed of this, and it directly contradicts the impression created by the portal's presentation of my total interchange fees. I will await the written breakdown you stated Epiq would provide.

Fourth, regarding notice: as I stated on the call, I **never received any mailed notice** or correspondence at any stage of this settlement. I only learned of the settlement after the fact and had no opportunity to review or verify any data before the deadlines passed. You offered to "research" whether any notices were ever sent to me. I request that you provide, in writing:

- The dates any notices were mailed

- The addresses used

- The type of notice sent

- Any records showing delivery or return

- Any logs or records showing attempts to contact me

This information is necessary for me to understand whether I was ever actually notified of the settlement or given a meaningful opportunity to participate.

Finally, I will await the written materials you stated Epiq will provide, including:

- Merchant-level and TIN-level totals

- The percentage applied to the TIN included in the initial distribution

- Confirmation of which TINs were excluded and why

- The check details you provided verbally

Please provide all responses in writing. I will not be discussing these matters by phone.

Regards,

**Peter Corsa**

---

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Friday, April 10, 2026 3:35 PM
**To:** 'petercorsa@outlook.com' <petercorsa@outlook.com>
**Cc:** 'Sternberg, Amanda' <Amanda.Sternberg@epiqglobal.com>
**Subject:** In re Payment Card

Mr. Corso

Despite you hanging up on me, please be assured that the administrator and counsel wish to respond to your questions.

An important issues related to your claim is that only one of your TINs was included in the partial distribution. You have demanded to receive an amount which you claim you are currently entitled to, based on a total interchange fee amount that includes TINs that are not in this distribution. I wanted to explain why it was that not all of your TINs were in the first batch, but did not get a chance before you hung up. Claims were not included for several reasons including possible use of Payment Facilitators (such as Square). Issues related to Payment Facilitators are the subject of current pending appeals. Other reasons for non-inclusion include being part of an audit population and having sought a research request. If you want, I can send you a declaration from Epiq that was previously filed that further lays our these issues.

**You made several demands in your filing with the Court. Below are your requests and a response to each**

**Order the Claims Administrator (Epiq)** to produce to me, in writing:

   a. the merchant-level and TIN-level transaction totals used in calculating my distribution; This is available on the merchant portal Epiq can extract it and send it to you separately. You indicated on the call that you would want this**. I am directing Epiq to provide this to you.**

   b. the allocation formula, percentage, or rate applied; Epiq can restate the fees for the TIN included in the initial, partial distribution and that it was a pro rata against all the fees included. If you divide the payment amounts against your fee amount you can get the percentage. **I am directing Epiq to provide this to you.**

   c. the calculation worksheet showing how the payment amount was derived; This is not something that will be provided.

   d. the check number, date of issuance, mailing address used, and status (including whether it was cashed). Check No: 385743. Check Date: 2/13/2016. It was mailed to your address but has not yet been cashed. Stale date is May 14, 2026.

1. **Direct the Administrator** to conduct a full review of my claim and confirm whether the

distribution amount was correctly calculated based on the $55,602.29 in interchange fees

reflected in the portal. Only one of your TINs was included in the initial, partial distribution and that TIN had $18,464.74 in fees. Distributions for the other TINs will be made at a later date.

2. **Order recalculation and reissuance** of any payment that was miscalculated, misallocated, or improperly issued. Nothing was paid improperly but Epiq can reissue the check for $217.62 if you would like.

I am happy to speak with you again, but I ask that you not hang up on me while I am speaking.

Best regards,

Xan

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.