UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

_____

This Document Relates To:

    ALL ACTIONS.

MDL No. 1720(BMC)(JAM)

Civil No. 05-5075(BMC)(JAM)

OBJECTIONS TO APRIL 1, 2026
SUA SPONTE REPORT AND
RECOMMENDATION

The Lawyer James J. DeCristofaro, Esq., P.C.
James J. DeCristofaro, Esq.
485 Madison Ave Fl 7
New York, New York 10022
Tel.  (212) 500-1891
E-Mail:  james@dclfirm.com

*Attorneys for Third-Parties Betz & Baril
PLLC and ClickFunds LLC*

Dated:  April 23, 2026
      New York, New York

Respondents Betz & Baril PLLC and ClickFunds LLC respectfully submit these objections, pursuant to Fed. R. Civ. P. 72(b)(2)-(3), 28 U.S.C. § 636(b)(1), and Local Civil Rule 72.1, to the portions of the April 1, 2026 SUA SPONTE REPORT AND RECOMMENDATION (the "R&R") that recommend sanctions against Respondents.

## PRELIMINARY STATEMENT

The recommended sanctions should be rejected in full because Class Counsel never carried the threshold burdens that govern this setting. To restrict or compel communications with class members, the movant had to establish a clear record and specific findings, and any order had to be carefully drawn. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981). To impose inherent-power sanctions, Class Counsel had to produce clear evidence that the challenged conduct was entirely without color and motivated by improper purpose, with bad-faith findings made with a high degree of specificity. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336-38 (2d Cir. 1999); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). And to shift fees or administrative expenses, Class Counsel had to prove but-for causation. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108-10 (2017). It did none of those things.

The R&R does not identify a single proven monetary loss to the class. It does not quantify a single omitted Square dollar for any merchant other than the one complaining merchant, who was released from his contract and permitted to proceed directly with Epiq. (R&R at 12-13, 21-22.) It does not find that any merchant missed a deadline, forfeited a claim, or received a reduced payment because of Respondents. Instead, the R&R rests on conjecture: it says that "likely many more" merchants may have been misled about Square transactions, while also recognizing that there is "no way to know how many" merchants may have omitted Square volume. (R&R at 29, 33.) That is not proof; it is the absence of proof. And where the record does not establish concrete

harm, causation, or bad faith, the Court cannot constitutionally impose class-wide compelled notice, reopen claims, or assess attorney's fees and Epiq costs.

That should end the inquiry. But even if some remedial step could be considered, the R&R's proposed relief is still overbroad. The R&R expressly acknowledges that there is not sufficient evidence that Respondents misled all of their approximately 9,000 associated class members, and for that reason declines to void all contracts. (R&R at 31-32.) Yet the recommendation still burdens the entire client population with a class-wide notice, a reopening mechanism, re-filing costs, and fee shifting. That is not narrow tailoring. It is a speculative remedy imposed on a class-wide scale.

**ARGUMENT**

**CLASS COUNSEL DID NOT CARRY THE BURDENS REQUIRED FOR SANCTIONS.**

The recommendation's central defect is its failure to identify proven harm. The R&R starts from one November 2025 complaint by one merchant. (R&R at 12-13.) It then reasons that at least one merchant—and "likely many more"—may have been misled about Square transactions, while simultaneously recognizing there is "no way to know how many" merchants may have omitted Square volume. (R&R at 29, 33; Class Counsel's sanctions motion at 12-13.) That language does not describe a factual finding of class-wide injury. It describes uncertainty.

Under *Gulf Oil* restrictions on class communications require "a clear record and specific findings" and must be "carefully drawn." Under the Second Circuit's inherent-power cases, bad faith must be shown by clear evidence and with a high degree of specificity. *Schlaifer Nance*, 194 F.3d at 336-38; *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). And under *Goodyear*, monetary sanctions must track proven loss. A sanctions recommendation cannot be built on "likely," "may have," and "no way to know." Those phrases are the opposite of clear evidence.

2

The evidentiary deficiency is especially serious under Rule III. C. 3. of <u>Judge Cogan's Individual Motion Practices</u>, which states that witness or party affidavits that violate the Federal Rules of Evidence, including hearsay, may be rejected or stricken.  Yet the sanctions record depended heavily on layered out-of-court statements routed through Epiq and then through counsel.  In a sanctions proceeding, where the movant must produce clear evidence and the Court must make highly specific findings, that failure of proof should end the matter.

The R&R fails to meet the Second Circuit's stringent requirements for imposing inherent power sanctions, which demand both clear evidence that challenged conduct is entirely without color and a high degree of specificity in factual findings. The magistrate's conclusory determination of bad faith lacks the particularized showing required by controlling precedent. The R&R provides no specific analysis of how Respondents' communications were entirely without color or undertaken for improper purposes, instead relying on generalized assertions about misleading communications.  The record shows at most disputed communications and imperfect wording, which falls far short of the clear evidence standard.  Where sanctions depend on inherent power, courts must specify the sanctionable conduct and legal authority with reasonable specificity, yet the R&R fails to bridge this evidentiary gap.  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991); *Hotel St. George Assocs. v. Morgenstern*, 819 F. Supp. 310 (S.D.N.Y. 1993); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020).

The evidentiary record is fundamentally inadequate to support the sweeping sanctions recommended by the R&R, which relies heavily on speculation and conjecture rather than concrete evidence of harm or misconduct. The R&R acknowledges there is no way to know how many merchants may have omitted Square volume, yet still recommends class-wide relief affecting

thousands of merchants. The sanctions record depends on layered out-of-court statements and hearsay evidence that fails to meet the clear evidence standard required for inherent power sanctions. Much of the evidence comes from August 2024 communications that occurred before the October 18, 2024 stipulation, raising questions about whether such conduct can form the basis for subsequent sanctions. The R&R fails to identify concrete monetary losses, quantify specific omitted transactions, or establish that any merchant missed deadlines or received reduced payments due to Respondents' conduct. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991); *Hotel St. George Assocs. v. Morgenstern*, 819 F. Supp. 310 (S.D.N.Y. 1993); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143 (2d Cir. 2009).

**THE RECORD DOES NOT SUPPORT A BAD-FAITH FINDING.**

The R&R states, in conclusory fashion, that both Respondents "have acted in bad faith." (R&R at 31.) But the same R&R recognizes the governing standard: inherent-power sanctions require clear evidence that the challenged conduct was entirely without color and motivated by improper purpose. (R&R at 27-28 citing *Wolters Kluwer* and other Second Circuit authority). The R&R never bridges that gap.

At most, the record shows disputed communications, imperfect wording, and a disagreement over the sufficiency of training and oversight. Much of the cited email traffic included qualifying language that amounts were preliminary, subject to pro rata allocation, and that payment timing was unknown. (R&R at 20-22.) That record may support criticism. It does not amount to clear evidence of conduct "entirely without color" undertaken for an improper purpose. *Schlaifer Nance*, 194 F.3d at 336-38; *Wolters Kluwer*, 564 F.3d at 114.

The chronology matters as well. The October 18, 2024 so-ordered stipulation resolved then-existing issues prospectively. (R&R at 11-12.) Yet much of the cited Kivett email evidence

comes from August 2024 and is used as the substantive engine for sanctions after the stipulation. (R&R at 18-20.) Pre-stipulation background can explain why the parties entered the stipulation; it cannot be repackaged as a new post-stipulation violation simply because discovery later unearthed more detail. Nor does the R&R identify harassment, fabrication, forgery, or fraudulent claim submissions—the types of facts that would support a genuine bad-faith finding.

**THE RECOMMENDED NOTICE AND REOPENING ORDER IS OVERBROAD AND WOULD VIOLATE DUE PROCESS.**

The R&R expressly declines to terminate all contracts because there is "not sufficient evidence" that Respondents misled all of their approximately 9,000 associated class members. (R&R at 31-32.) That finding is fatal not only to the most severe sanction, but also to the lesser sanction the R&R nonetheless recommends. If the Court cannot find, on this record, that the client population as a whole was misled, it cannot compel a class-wide corrective campaign to every client and reopen claims for the entire universe of merchants who might elect to terminate.

*Gulf Oil* is controlling here. The court may regulate communications with class members only on a clear record and with specific findings, and any order must limit speech no more than necessary. 452 U.S. at 101-02. The R&R falls short because it replaces merchant-specific proof with a blanket remedy. If the concern is that some merchants may have omitted Square transactions, a narrower remedy was available: identify those merchants, verify whether Square volume was excluded, and address only those accounts. The recommended class-wide notice and reopening order instead assumes injury first and investigates later.

That result would violate the Fifth Amendment's Due Process Clause. A compelled communication drafted or approved by Class Counsel and forced upon every client burdens Respondents' speech and business relationships on a record the R&R admits is incomplete. And a reopening process that disturbs thousands of existing contracts and claim arrangements without

individualized findings affects significant economic interests of both Respondents and merchants who may wish to keep their contracts. Whatever supervisory power the Court possesses over settlement administration, due process does not permit class-wide burdens of that sort on speculation alone. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 833-34 (1994).

**THE RECOMMENDED FEE SHIFTING TO CLASS COUNSEL AND EPIQ IS PUNITIVE, NOT COMPENSATORY, AND THEREFORE IMPROPER.**

The proposed fee shifting to Class Counsel cannot stand under *Goodyear*. When a court uses its inherent power to award fees, the award must be compensatory rather than punitive and limited to fees that would not have been incurred but for the sanctionable conduct. 581 U.S. at 108-10. The R&R does not make that finding. Instead, it recommends fees for bringing the sanctions motion and also future fees associated with implementing the R&R's own proposed remedy. (R&R at 33-35.) That is backwards. Future implementation costs would exist only because the Court chose to order a broad notice-and-reopening regime. They are not proven losses caused by Respondents.

The same problem is even clearer as to Epiq. The R&R would charge Respondents with Epiq's future costs of administratively filing claims for merchants who may choose to terminate their contracts after receiving the court-ordered notice. (R&R at 34-35.) Those are not existing losses. They are anticipated administrative expenses generated by the remedy itself. That is not compensation for proven harm; it is cost-shifting for a speculative forward-looking program.

*International Union, United Mine Workers*, 512 U.S. at 826-30, and *Roadway Express*, 447 U.S. at 765-67, confirm the constitutional problem. The recommended monetary sanctions cannot be sustained as civil remedies. Civil money sanctions must either compensate for a proven loss actually caused by the challenged conduct or coerce compliance by giving the respondent an

opportunity to purge the sanction. Here, the proposed payments to Class Counsel and Epiq satisfy neither requirement. There has been no showing of any concrete, but-for financial injury to the class, to any merchant, or to the settlement process that would justify compensation, and the recommended awards are fixed and non-purgeable once imposed. They therefore operate as punishment for past conduct, not as compensation or coercion. Because punitive sanctions cannot be imposed in substance while labeled civil in form, and because doing so would evade the procedural protections required for punishment, the Court should reject the recommended awards of attorneys' fees and Epiq costs.

**THE ALL WRITS ACT AND RULE 23(d) DO NOT AUTHORIZE THIS RESULT, AND SANCTIONING ON THIS RECORD WOULD CREATE A DANGEROUS SLIPPERY SLOPE.**

The All Writs Act is not a roving commission to do whatever seems useful. It authorizes orders only "in aid of" existing jurisdiction; it does not enlarge the Court's power, create jurisdiction, or permit ad hoc remedies whenever ordinary standards seem inconvenient. *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999); *Pa. Bur. of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40-43 (1985); *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 31-34 (2002). Where Rule 23(d) specifically governs communications with class members, *Gulf Oil*'s clear-record and narrow-tailoring limits control. The R&R cannot invoke broad writ or inherent-power language to evade those limits.

That matters here because the R&R repeatedly substitutes possibility for proof. The recommendation says "likely many more" merchants may have been affected and that there is "no way to know how many." (R&R at 29, 33.) If that is enough for sanctions, then every large claims program, class settlement, or mass-notice process becomes a breeding ground for satellite sanctions litigation. An imprecise estimate, a misunderstood email, an internal training lapse, or

a customer-service misstatement could trigger compelled notices, reopened deadlines, administrator intervention, and fee shifting—without proof of reliance, loss, or but-for causation.

That is the slippery slope.  It would chill ordinary communications with clients and class members.  It would encourage litigants to transform every arguable ambiguity into a sanctions motion.  And it would expand Rule 23(d) from a targeted tool to prevent real abuse into an open-ended disciplinary regime untethered to concrete evidence. *Gulf Oil* rejected that kind of open-ended supervisory power. The Court should not take that path here.

### CONCLUSION

For all of these reasons, Respondents respectfully request that the Court reject the April 1, 2026 R&R to the extent it recommends sanctions, deny sanctions in full, and deny any request for attorney's fees or Epiq costs.  At a minimum, if the Court believes any further inquiry is warranted, the Court should decline to impose sanctions on the present record and require a merchant-specific evidentiary showing of actual harm, causation, and bad faith before any remedy is considered.

Dated:  April 23, 2026  
New York, New York

/s/ James J. DeCristofaro  
The Lawyer James J. DeCristofaro, Esq., P.C.  
James J. DeCristofaro, Esq.  
485 Madison Ave Fl 7  
New York, New York 10022  
Tel.  (212) 500-1891  
E-Mail:  james@dclfirm.com

*Attorney for Respondents Betz & Baril PLLC and ClickFunds LLC*

### CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 72.1 and Local Civil Rule 6.3, I certify that the foregoing memorandum contains 2,328 words, excluding the caption, signature block, and this certificate.