UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

_____

This Document Relates To:

   ALL ACTIONS.

MDL No. 1720(BMC)(JAM)

Civil No. 05-5075(BMC)(JAM)

MEMORANDUM OF LAW IN
SUPPORT OF RESPONDENTS'
MOTION FOR LIMITED
RECONSIDERATION AND
LIMITED CLARIFICATION OF
THE MAY 7, 2026
MEMORANDUM DECISION
AND ORDER

The Lawyer James J. DeCristofaro, Esq., P.C.
James J. DeCristofaro, Esq.
485 Madison Ave Fl 7
New York, New York 10022
Tel.  (212) 500-1891
E-Mail:  james@dclfirm.com

*Attorney for Respondents Betz & Baril PLLC*
*and ClickFunds LLC*

Dated: May 21, 2026
     New York, New York

Respondents Betz & Baril PLLC and ClickFunds LLC respectfully submit this memorandum of law in support of their motion for limited reconsideration and limited clarification of the Court's May 7, 2026 Memorandum Decision and Order adopting the April 1, 2026 Report and Recommendation, and respectfully state as follows:

**PRELIMINARY STATEMENT**

Respondents respectfully seek limited reconsideration and limited clarification of the Court's May 7, 2026 Memorandum Decision and Order. This application is intentionally narrow. Respondents do not seek to relitigate the sanctions motion from the ground up, nor do they disregard the Court's concern for protecting class members. Instead, Respondents respectfully ask the Court to revisit discrete factual premises that, as presently framed, overstate both ClickFunds' prior history and the practical significance of the Square-related issue, and to reconsider or at least cabin the fee-and-cost-shifting component in light of the Court's own recognition that Class Counsel's original sanctions request was substantially broader than the remedial relief ultimately adopted.

As to the first point, the May 7 Order states that in 2024 "Betz & Baril and its agent, ClickFunds, were ordered to show cause" based on "YouTube videos." Respectfully, the April 1 Report and Recommendation reflects a more limited record. Although July 2024 submissions referenced videos associated with AddTraffic, Betz & Baril, and ClickFunds, the later September 7, 2024 order to show cause described in the Report and Recommendation was directed to Betz & Baril, Certainty Management, and LenCred—not ClickFunds. The distinction matters because the May 7 Order appears to use that prior-history description as part of the background for escalating sanctions here. (May 7 Order at 2; Apr. 1 R&R at 6-10.)

As to the second point, the May 7 Order further states that Respondents "recognize" that, for at least one class member, the Square issue "meant a difference of $2.3 million in sales volume previously omitted from its claim." Respectfully, that phrasing does not track the record. The $2.3 million figure was Class Counsel's contention in the February 9, 2026 sanctions motion and was repeated in the April 1 Report and Recommendation as Class Counsel's assertion. It was not an admission by Respondents, and certainly not an admission that raw sales volume is the correct measure of prejudice or damage. (May 7 Order at 3; Class Counsel's Mem. at 12-13; Apr. 1 R&R at 18-20, 29-30.)

Moreover, even if the Court continues to treat the $2.3 million figure as a working contention, the figure is gross sales volume, not interchange fees paid, and not settlement proceeds. Without that distinction, the raw number risks materially overstating practical prejudice. As Respondents intend to substantiate through Jason Baril if the Court wishes to consider the point, an illustrative conversion of $2.3 million in gross sales volume using a 2% interchange assumption and an approximately 1.18% current partial-distribution assumption yields roughly $46,000 in interchange fees and approximately $543 in current distribution—not millions of dollars in actual settlement loss. The point is not that any omission is acceptable; it is that the sanctions analysis should not rest on a figure that sounds catastrophic but does not measure the economic consequence the analysis actually requires.

The fee-shifting component independently warrants reconsideration. The Court expressly observed that "Judge Marutollo largely disagreed with Class Counsel's proposal, and instead recommended sanctions that were more remedial." (May 7 Order at 3.) That observation is significant. Class Counsel sought sweeping relief, including barring Respondents from receiving any portion of class members' settlement benefits, requiring notification that Respondents had

2

been sanctioned, shifting all of Class Counsel's fees and Epiq's costs, and seeking Tennessee bar reporting. The relief ultimately adopted was materially narrower and cure-focused. In these circumstances, it would be inequitable to require Respondents to bear the costs of litigating the substantial punitive overreach the Court itself did not adopt.

## RELEVANT STANDARD

Under Local Civil Rule 6.3, a motion for reconsideration identifies the matters or controlling decisions the movant believes the Court overlooked.  In addition, Federal Rule of Civil Procedure 54(b) provides that an interlocutory order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." This motion invokes that narrow authority. Respondents respectfully submit that limited reconsideration or clarification is appropriate where the order compresses the prior record in a way that materially enlarges a party's sanction history or attributes to the party a factual concession it did not make.

## ARGUMENT

**I.    LIMITED RECONSIDERATION OR CLARIFICATION IS WARRANTED AS TO THE PRIOR "YOUTUBE VIDEO" / ORDER-TO-SHOW-CAUSE HISTORY.**

The May 7 Order states that: "In 2024, Betz & Baril and its agent, ClickFunds, were ordered to show cause why sanctions should not be imposed based on 'YouTube videos . . . .'" (May 7 Order at 2.)  Respectfully, the April 1 Report and Recommendation reflects a different sequence. It states that on July 26, 2024 Class Counsel reported certain YouTube videos from

3

AddTraffic that had partnered with Betz & Baril and ClickFunds.[1]  But when the Court later issued the September 7, 2024 order to show cause, the Report and Recommendation identifies the subjects of that order as Betz & Baril, Certainty Management, and LenCred, not ClickFunds. (Apr. 1 R&R at 6-10.)

Respondents therefore respectfully submit that the May 7 Order appears to compress two distinct events—a July 2024 submission referencing videos associated in some manner with ClickFunds, and a later formal show-cause order that the Report and Recommendation describes as directed to other entities besides ClickFunds—into a single formulation that makes ClickFunds sound like the direct target of a prior YouTube-based show-cause order. That difference is not semantic. Where sanctions are being escalated in a long-running administration proceeding, the precision of the prior-history description matters.

Respondents do not minimize the Court's authority to protect class members or to require corrective action where appropriate. But the Court's present order should rest on the record as it actually developed. At minimum, Respondents respectfully request clarification that the September 2024 order to show cause described in the Report and Recommendation was not a prior order directed to ClickFunds itself based on "YouTube videos."  Such clarification would align the May 7 Order with the procedural history set out in the April 1 Report and Recommendation.

---

[1]    This in and of itself is incorrect.  The sanctions motion papers do not point to any factual findings in the record below from 2024 that ClickFunds ever displayed or marketed any YouTube videos, only that: " Class Counsel was alerted to certain YouTube videos that were from an online web services advertising entity (AddTraffic) that had partnered with the law firm Betz & Baril and an entity called ClickFunds."  (ECF 9363.). These are more akin to allegations, as opposed factual findings that are sufficient to serve as a basis for, or even a background concerning, sanctions;  there is no evidentiary basis for it.  This is evident from the R&R itself (at 9) when it characterizes the September 7, 2024 order as involving Betz & Baril, Certainty Management, and LenCred, not ClickFunds.

## II.   LIMITED RECONSIDERATION OR CLARIFICATION IS WARRANTED AS TO THE $2.3 MILLION SQUARE FIGURE.

The May 7 Order next states that Respondents "recognize that, for at least one class member, this meant a difference of $2.3 million in sales volume previously omitted from its claim." (May 7 Order at 3.)  Respectfully, the underlying record does not show such a recognition or admission by Respondents.  The February 9, 2026 sanctions motion presented that figure as Class Counsel's assertion—namely, that the complaining class member "had more than $2.3 million in Square sales volume." (Class Counsel's Mem. at 12-13.) The April 1 Report and Recommendation repeated the same point as part of its discussion of Class Counsel's position. (Apr. 1 R&R at 18-20, 29-30.)

The distinction matters because the language of the May 7 Order may reasonably be read as transforming an adversary's contention into a concession by Respondents. Respondents respectfully ask the Court to clarify that the $2.3 million figure was a contention advanced by Class Counsel and discussed in the Report and Recommendation, not a factual admission by Respondents.

The Respondents respectfully request that the Court  also clarify the meaning of the number itself.  The reported figure is gross Square sales volume.  It is not the amount of interchange fees allegedly paid, and it is not the amount of settlement proceeds allegedly lost.  Those are very different things.  The sanctions analysis here concerns whether the record supports remedial cost shifting and related relief; it should therefore turn on actual or reasonably estimated economic consequence, not on a raw sales-volume figure that, standing alone, is not a damages measure.

Indeed, the scale difference is substantial. By way of simple illustration only, if one assumed a 2% interchange rate and an approximately 1.18% current partial-distribution rate, then $2.3 million in gross sales volume would correspond to about $46,000 in interchange fees and a

5

current distribution of about $543.  Respondents respectfully submit that the Court should not allow the raw $2.3 million figure—without the necessary conversions—to distort the sanctions analysis. Respondents can further substantiate the relevant assumptions and context through a short declaration from Jason Baril if the Court wishes to consider that factual point, and Respondents respectfully request that the Court so permit.[2]

### III. THE FEE- AND COST-SHIFTING COMPONENT SHOULD BE RECONSIDERED, NARROWED, OR HELD IN ABEYANCE PENDING DISCLOSURE.

The May 7 Order recognizes that the relief adopted by the Court was materially narrower than what Class Counsel originally sought: "Judge Marutollo **largely disagreed** with Class Counsel's proposal, and instead recommended sanctions that were more remedial." (May 7 Order at 3; emphasis added.)  That matters for fees.  Under Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101 (2017), when a court exercises sanctioning authority to shift legal fees, the award must be compensatory rather than punitive and must be limited to the fees the movant would not have incurred but for the conduct at issue.  A fee award cannot become a backdoor punishment simply because the original motion was framed in sweeping terms and required an enormous amount of firm resources to prepare and file.

The same basic principle of proportionality applies where a party achieves only limited success. Hours devoted to unsuccessful, distinct relief should not be charged to the adversary and the fee awarded should be reasonable in relation to the results obtained.  Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) ("work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved") (internal quotations omitted).  Although Hensley arose in a different fee-shifting context, the point is instructive here:  Respondents should not be made

---

[2]    Local Rule 6.3 provides that:  "No party is to file an affidavit unless directed by the court."

to fund the unsuccessful punitive portions of a sanctions application that the Court itself concluded went too far.

That concern is concrete, not theoretical. Class Counsel's sanctions motion sought relief far beyond the remedy the Court ultimately adopted.  It requested, among other things, and as aforesaid, disqualification from any portion of class members' settlement benefits, sanctions notices, fee shifting, Epiq cost shifting, and Tennessee bar reporting. The Court instead adopted a substantially narrower cure-focused framework centered on notice, optional cancellation, re-filing through Epiq, and associated costs. Respectfully, it would be inequitable to shift to Respondents all of the fees incurred in pursuing the broader punitive application merely because some narrower remedial relief was later awarded.

At a minimum, any fee request should be segregated so that Respondents are charged, if at all, only for work that relates to the limited remedial relief actually adopted and only to the extent that work satisfies the causal and compensatory constraints recognized in Goodyear. The same principle should apply to Epiq costs: such costs should be limited to actual, documented, incremental administrative costs directly caused by any class members who elect to terminate and re-file—not to broader investigation, motion practice, or generalized settlement-administration expense.

There is also an immediate practical issue. On May 14, 2026, counsel for Respondents conferred with Class Counsel and requested the amount of fees incurred in connection with the sanctions motion. Although the discussion was professional, Class Counsel did not provide a useful figure or estimate and took the position, in substance, that no present obligation required disclosure. Respondents respectfully submit that prompt disclosure is essential. Without at least a current amount or a fair estimate, Respondents cannot make an informed business decision about

7

how to proceed. That is especially true where the remaining live issue is no longer whether Class Counsel sought sweeping punitive relief—the Court has already said that much of that relief was not warranted—but rather what portion of the narrower remedial work, if any, may properly be shifted.

Consistent with Federal Rule of Civil Procedure 54(d)(2)(B)(iii), which requires a fee motion to state the amount sought or provide a fair estimate of it, Respondents respectfully request that the Court direct Class Counsel to disclose promptly (i.e., no later than seven (7) calendar days after any order so requiring) the current amount of fees and costs incurred in connection with the sanctions motion, together with whatever segregation can presently be made between work on unsuccessful punitive relief and work on the narrower remedial relief actually adopted.  In addition, Respondents respectfully request that the Court order Epiq to disclose its reasonable estimate of fees, on a per class member basis, for processing claims for any class members that cancel their contracts with Betz & Baril. That disclosure may facilitate the kind of practical conversation that could have materially narrowed this dispute earlier and may still narrow what remains to be litigated now.

## IV.    THE REQUESTED RELIEF IS LIMITED AND RESPECTFUL OF THE COURT'S CURATIVE CONCERNS.

Respondents recognize that the Court remains appropriately focused on protecting class members and the administration of the settlement.  This motion does not ask the Court to abandon that concern.  It asks only that the May 7 Order rest on a procedurally accurate description of the 2024 history, an accurate characterization of the $2.3 million figure, and a fee-and-cost framework that does not require Respondents to underwrite unsuccessful punitive motion practice.

If the Court is not inclined to disturb the curative notice-and-reopening mechanism, Respondents respectfully submit that the Court should at least clarify the two factual points

8

identified above and defer or narrow the fee-and-cost-shifting component pending prompt disclosure, segregation, and further submission. That limited relief would materially reduce the risk that Respondents are sanctioned based on an overstated prior history, an overstated prejudice figure, or a fee request untethered to the narrower relief actually awarded.

## CONCLUSION

For all of the foregoing reasons, Respondents respectfully request that the Court (i) reconsidering or clarifying the May 7, 2026 Memorandum Decision and Order to reflect that ClickFunds was not itself the subject of the September 7, 2024 order to show cause described in the April 1, 2026 Report and Recommendation; (ii) reconsidering or clarifying the May 7, 2026 Memorandum Decision and Order to reflect that the $2.3 million Square-sales-volume figure was Class Counsel's contention, not an admission by Respondents, and that raw sales volume is not the measure of actual settlement loss; (iii) reconsidering, narrowing, or holding in abeyance the fee- and cost-shifting component so that Respondents are not charged for unsuccessful punitive relief the Court did not adopt; (iv) directing Class Counsel promptly to disclose the current amount of fees and costs incurred in connection with the sanctions motion, together with segregation between unsuccessful punitive work and the narrower remedial work actually adopted, and order Epiq to disclose its reasonable estimate of fees, on a per class member basis, for processing claims for any class members that cancel their contracts with Betz & Baril; and (v) granting such other and further relief as the Court deems just and proper.

9

Dated:  May 21, 2026     /s/ James J. DeCristofaro
New York, New York     The Lawyer James J. DeCristofaro, Esq., P.C.
            James J. DeCristofaro, Esq.
            485 Madison Ave Fl 7
            New York, New York 10022
            Tel.  (212) 500-1891
            E-Mail:  james@dclfirm.com

*Attorney for Respondents Betz & Baril PLLC
and ClickFunds LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 72.1 and Local Civil Rule 6.3, I certify that the foregoing

memorandum contains 2,650 words, excluding the caption, signature block, and this certificate.

10