**UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE PAYMENT CARD INTERCHANGE
FEE AND MERCHANT DISCOUNT
ANTITRUST LITIGATION

No. 05-MD-1720 (BMC) (JAM)

This Document Applies to: All Cases.

## DECLARATION OF LOREE KOVACH REGARDING SECOND INITIAL PARTIAL DISTRIBUTION

I, LOREE KOVACH, declare and state as follows:

1.      I am a Senior Vice President for Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Class Administrator in the above-captioned case.  In this capacity, I am authorized to make the following Declaration on behalf of Epiq.  The following statements are based upon my personal knowledge, information provided to me by associates and staff under common supervision, and upon a review of the business records maintained by Epiq.

2.      This Declaration is to provide the Court with information on a proposed additional, partial distribution to a subset of claimants excluded from the initial partial distribution.

3.      As outlined in the *Declaration of Loree Kovach Regarding Ongoing Claims Process and Initial Partial Distribution*, dated August 19, 2025, ("Initial Partial Distribution Declaration"), Class Counsel asked Epiq to outline a process by which an initial partial distribution to those claimants that are not potentially impacted by the Branded Operator and Payment Facilitator legal issues, and whose claims are not otherwise still in process, could be paid a portion of their total anticipated award. In Paragraph 16 of the Initial Partial Distribution Declaration, Epiq

identified a population of claims that could be paid and in Paragraph 17 outlined a population that would be excluded from the initial partial distribution.

4.      Epiq began disseminating award payments to claimants outlined in the Initial Partial Distribution Declaration following the Court's October 29, 2025 Order. As of May 22, 2026, Epiq has sent settlement benefits totaling over $414 million to more than 597,900 claimants. As of May 22, 2026, that distribution is nearly complete and what remains to be distributed is $4,085,743.52.

### SECOND INITIAL PARTIAL PAYMENT POPULATION

5.      In analyzing claim data to create the initial partial distribution population, Epiq identified a population of claims where one or more transactions associated with the claim appeared to potentially be included in the list of transactions provided by Defendants' expert as those affiliated with Opt Out requests or with Dismissed Plaintiffs.  Those transactions were used to calculate the Class Exclusion Takedown Payments, and would not be expected to also be associated with active claims.  Accordingly, those claims were excluded from the initial partial distribution population so that more analysis of the transactions in question could be conducted to ensure no claims were paid erroneously.

6.      That analysis has since occurred, and there are 8,400 claims, with $4,804,558,588.57 in associated interchange fees, where the potential link to a transaction also included in the Takedown population has been cleared.  For the most part, these transactions were linked because of errors in the data provided to Epiq, and were able to be cleared after further review.  These claims otherwise meet the criteria enumerated in the Initial Partial Distribution Declaration for inclusion in the initial distribution, and as such can now be paid.

DECLARATION OF LOREE KOVACH REGARDING SECOND INITIAL PARTIAL DISTRIBUTION

7.    An additional population of claims that Epiq excluded from the initial partial distribution were claims that otherwise met the criteria for inclusion in that distribution, but the name provided by the merchat as associated to the Taxpayer Identification Number ("TIN") of the claimant did not match the name associated with the TIN in Epiq's records.  For instance, the merchant name in Epiq's records for a particular TIN may be "Joe's Pizza Shop" but the merchant name associated with the TIN in the claim submitted by the merchant was "Suzy's Hardware Store."  In these instances, where Epiq could not otherwise resolve the discrepancy, Epiq requested that the merchant produce documentation from a Federal or state entity that included both the TIN and the merchant name.  Using the above example, the merchant could have submitted an SS-4 from the IRS showing the name "Suzy's Hardware Store" and the relevant TIN, and Epiq would then update the merchant name in its records.  Epiq employed this documentation process to ensure that the merchant had not inadvertently submitted the wrong TIN with their claim, or otherwise was not attempting to file a claim form the wrong Class Member.  At the time of the initial, partial distribution the population of merchants with name discrepancies who had produced or needed to produce documentation to validate the merchant name included 96,852 merchants, whose fees amounted to over $13.2 billion.

8.     Epiq has since reviewed and updated the merchant name for 75,774 claims which otherwise meet the criteria to be included in the initial distribution, based on documentation submitted by the merchants.  These merchants have a total of $10,685,792,549.43 in associated interchange fees.

9.     Epiq continues to review the remaining claims in the name variance population.  Should the Court approve this proposed second initial partial distribution, Epiq will include any

DECLARATION OF LOREE KOVACH REGARDING SECOND INITIAL PARTIAL DISTRIBUTION

3

additional claims in that distribution for which it is able to resolve the name discrepancy prior to the date the distribution population needs to be finalized.

10.    As of the date of this declaration, the associated interchange fees for these 84,174 claims amount to $15,490,351,138.00. The total funds to be distributed in this second initial partial distribution will be at least $182,000,000.00, with merchants in the Takedown population receiving more than $56 million and those with cleared name discrepancies receiving more than $125 million.

11.    Once the recommended distribution for this additional population is approved by the Court, Epiq will update the Merchant Portal to indicate for registrants whether their claims are included in the additional, partial distribution and the initial partial payment amount for those that are to receive a payment.  Epiq will also contact each registrant with a claim or claims in the additional, partial distribution via email, where available, and ask them to visit the Merchant Portal, review their payable claim(s), and then elect how they would like to be paid. The payment-election process will follow the process outlined in the Initial Partial Distribution Declaration. Epiq recommends that any such distribution occur no sooner than 90 days after the Court's approval order, or at such later time as Epiq determines is administratively appropriate.

12.    On May 4, 2026, the Second Circuit Court of Appeals upheld this Court's decisions regarding PayFacs and Branded Operators. Although the Second Circuit affirmed the Court's determinations regarding class membership, the *Old Jericho and Lanning* plaintiffs have sought *en banc* review. Should the appeals be denied, Class Counsel and Epiq plan to recommend that a third initial partial distribution be approved by the Court, to payclaims which were excluded from

DECLARATION OF LOREE KOVACH REGARDING SECOND INITIAL PARTIAL DISTRIBUTION

the initial partial distribution only because they were identified as potentially subject to one or both of those appeals, using the proxy method described in the Initial Partial Distribution Declaration.

13.     Accordingly, Epiq recommends that the second initial partial distribution described herein commence no sooner than 90 days from an Order by this Court approvoing the distribution, but that Epiq be granted the discretion to delay that distribution should the *Lanning* or *Old Jericho* decisions become final, if it would be more administratively efficient to combine the second initial distribution with the planned third initial distribution to claims excluded because of these appeals.

## CONCLUSION

14.     The proposed plan described in this Declaration for issuing initial partial payments to the group of at least 84,174 claimants described above will provide a measurable benefit for another population of claimants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 26, 2026 at New York City, New York.

_____
Loree Kovach

DECLARATION OF LOREE KOVACH REGARDING SECOND INITIAL PARTIAL
DISTRIBUTION

5