UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| In re PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | : : : : | MDL No. 1720(BMC)(JAM)<br><br>Civil No. 05-5075(BMC)(JAM) |
| | : | |
| | : | CORRECTED MEMORANDUM OF LAW |
| This Document Relates To: | : : | IN SUPPORT OF RULE 23(b)(3) CLASS PLAINTIFFS' MOTION FOR A SECOND, |
| ALL ACTIONS. | : : | PARTIAL DISTRIBUTION OF SETTLEMENT FUNDS |
| | x | |

4933-6871-7228.v1

## I. INTRODUCTION

On October 30, 2025, the Court approved Rule 23(b)(3) Class Plaintiffs' ("Plaintiffs") Motion for Initial, Partial Distribution of Settlement Funds. ECF 9682. That initial, partial distribution is nearly complete. More than 597,900 merchants have been sent settlement benefits – totaling more than $414 million – as of May 11, 2026.

Plaintiffs now seek approval of a proposed second, partial distribution to two subsets of merchants whose claims now have no outstanding issues. The first subset includes more than 75,000 merchants whose only outstanding issue related to a name variance which has now been cleared. *See* Declaration of Loree Kovach Regarding Second Initial Partial Distribution ("May Kovach Decl."), ¶¶7-9. As of the date of this filing, these merchants are to receive more than $125 million. *Id.*, ¶10. The second group includes 8,400 merchants whose claims have been cleared following continued data review and are to receive more than $56 million. *Id.*, ¶¶5-6, 10.

Plaintiffs respectfully request the Court authorize this proposed second, partial distribution. This proposed second, partial distribution provides partial payment to merchants that accepted Epiq's estimate of Interchange Fees Paid, whose claims are not subject to appeals, ownership or valuation disputes, takedown-related issues, name variance issues, or future audits and whose partial payment would be at least $5.00.

Plaintiffs and Epiq are working diligently to develop timelines for future distributions now that the Second Circuit has affirmed this Court's decisions regarding plaintiff- appellants Payment Facilitators (the "PayFacs") and Branded Operators (collectively, the "appellants"), although the appellants have sought *en banc* review and may still seek *certiorari* with the U.S. Supreme Court.[1]

---

[1] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2026 WL 1210154 (2d Cir. May 4, 2026) (petition for rehearing *en banc* filed May 15, 2026 & May 18, 2026); *Old Jericho Enter., Inc. v. Visa, Inc.*, __ F.4th __, 2026 WL 1206146 (2d Cir. May 4, 2026) (petition for rehearing *en banc* filed May 18, 2026). Depending on the timing of resolution of the pending appeals, it may be more cost effective and administratively efficient to include this proposed distribution in a later, large distribution. Epiq and Plaintiffs' respectfully request flexibility in making the distribution and will update the Court within 90 days following entry of the proposed order.

4933-6871-7228.v1

The proposed second, partial payments to the identified 84,000 plus merchants now ensures that the settlement is proceeding apace.

## II. THE CLAIMS ADMINISTRATION PROCESS

Under the approved Plan of Administration and Distribution, merchants that submitted timely claims would receive settlement payments equal to their *pro rata* share of the settlement fund, based on their Interchange Fees Paid relative to Interchange Fees Paid by all valid Claimants.[2]  ECF 7257-2, Appendix I at I-2-I-3.  The plan contemplates that a merchant's Interchange Fees Paid are to be calculated primarily based on the interchange fees that the merchant paid on its Visa transactions.  *Id.* at I-3.  In the event that a merchant is dissatisfied with the data that the Administrator attributed to it, the Administrator may request additional information from the merchant, so as to assist the Administrator in locating the merchant's data in its database.  Finally, the plan gives merchants the option to provide their own information to supplement the data that the Administrator was able to locate based on identifying information associated with the merchant.  *Id.* at I-5.  If the merchant is still dissatisfied with the fees attributed to it, it may appeal the Administrator's determination to the Special Master, and ultimately to this Court.  *Id.* at I-9.

On May 4, 2026, the Second Circuit upheld this Court's decisions regarding two disputes that affect the settlement fund here.  The first legal dispute involves PayFacs and poses the question of whether PayFacs, such as Square or Intuit, or the merchant that takes payment through them accepted cards and thus is a member of the class.  *See* ECF 9314.  The second legal dispute poses a similar class-membership question as between upstream oil companies – such as Shell and Texaco – and the fuel retailers (collectively, the "Branded Operators") that interact with and sell fuel to the end consumer.  ECF 9425.  While the Second Circuit upheld this Court's determinations

---

[2]  Unless otherwise noted, all capitalized terms have the meanings given to them in the Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants.  ECF 7257-2.

4933-6871-7228.v1

regarding class membership, the parties in those actions have sought *en banc* review and may still seek *certiorari* with the Supreme Court.  As previously detailed in Plaintiffs' request for an initial, partial distribution, while the ultimate resolution of the two appeals are pending and funds are held back to account for the final outcome, it is in the best interests of the class to make a proposed second, partial distribution to the subset of Claimants whose payment eligibility is now certain. Previously, Plaintiffs proposed to distribute approximately $426 million to more than 605,000 Claimants, after conducting a quality-control audit.

As of May 22, 2026, that distribution is nearly complete.  What remains to be distributed is $4,085,743.52.  May Kovach Decl., ¶4.

## III.  THE PROPOSED SECOND, PARTIAL DISTRIBUTION

### A.  75,000 Merchants Have Had Name Variances Cleared

Approximately 96,000 merchants were not included in the initial, partial distribution because there were variances between the merchant names in the data and the claims submitted. May Kovach Decl., ¶7.  Epiq is auditing and reviewing those claims and has been able to clear the variances for more than 75,000 merchants.  *Id.*, ¶8.  There are no other impediments to providing a partial distribution to these 75,000 merchants.  These merchants account for approximately $10.6 billion in Interchange Fees Paid.  The initial payment for this group is estimated at $125 million. *Id.*, ¶10.

### B.  8,400 Merchants Have Cleared Prior Takedown-Related Data Flags

An additional 8,400 merchants have no impediments affecting their claims.  *Id.*, ¶6.  As detailed in the Initial Distribution Declaration (ECF 9652-3) these claims were previously only excluded from the initial, partial distribution due to potential transactions being associated with Opt-Out or Dismissed Plaintiff transactions, which have since been cleared following additional review by Epiq's data analysts.

Following review as part of the administration process, that flag has been removed as to this set of 8,400 Tax Identification Numbers.  This group accounts for $4,804,558,588.57 (May

4933-6871-7228.v1

Kovach Decl., ¶6) of Interchange Fees Paid in the data and the initial payments to this group total $56,213,335.  *Id.*, ¶10.

Plaintiffs submit that this proposed second, partial distribution now would accord with the salutary goal of settlements "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  4 Herbert B. Newberg & William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §12:15 (6th ed. 2025).  The proposed second, partial distribution is a conservative one, carefully calculated by Epiq to comport with the approved Plan of Administration and Distribution.  Plaintiffs note that Epiq is actively working on developing timelines for future, larger distributions, that remain dependent on the conclusion of the appeals process.  Depending on timing, Plaintiffs request permission to work with Epiq and potentially hold distributions if it is more efficient to do so.  *See supra* at 1 n.1.

## IV.    CONCLUSION

Because the proposed second, partial distribution is in the best interests of the Claimants, while also protecting those Claimants for whom a distribution is not yet ripe – Plaintiffs respectfully request that the Court grant the motion.

DATED:  May 27, 2026                     Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
ALEXANDRA S. BERNAY


              s/ Alexandra S. Bernay
            ALEXANDRA S. BERNAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

4933-6871-7228.v1

ROBINS KAPLAN LLP
K. CRAIG WILDFANG
THOMAS J. UNDLIN
2800 LaSalle Plaza
800 LaSalle Avenue South
Minneapolis, MN 55402-2015
Telephone: 612/349-8500
612/339-4181 (fax)

BERGER MONTAGUE PC
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
MICHAEL J. KANE
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215/875-3000
215/875-4604 (fax)

Co-Lead Counsel for Plaintiffs

4933-6871-7228.v1