FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 19 2026 ★
*rec in dkt box 6/1/26

BROOKLYN OFFICE

May 14, 2026

Re: In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation Case No., 1:05-MD–1720 (MKB) (JO)

SENT USPS CERTIFIED MAIL

The Honorable Judge Brian M. Cogan
United States District Court
 for the Eastern District of New York
225 Cadman Place East
Courtroom 10A South
Brooklyn, New York  11701

Magistrate Judge Joseph A. Marutollo
United States District Court
 for the Eastern District of New York
225 Cadman Place East
Courtroom 11A South
Brooklyn, New York  11701

cc. Omeed Assefi US Department of Justice Anti-Trust Division, The Honorable Judge Margo K. Brodie, The Honorable Dennis Jacobs United States Court of Appeals, second circuit, Chuck Schumer Senate Minority Leader, Elizabeth Warren Senator, Mr. Albert Berenak CEO Epiq Systems Inc., Ms. Amanda Sternberg Director Client Services, Epiq Systems Inc., TJ McHugh Director Government Relations Portland Chamber of Commerce, Ryan W. Marth (Robbins, Kaplan LLP), H. Laddie Montegue Jr. (Berger Montague Law Firm), Alexandra S. Birnay (Robbins, Geller, Rudman & Dowd LLP)

Dear Judges Cogan and Marutollo,

I write on behalf of Rule 23(b) (3) Class Plantiffs regarding approved motion for initial Partial Distribution of Settlement Funds.  Class member Rhomboid Sax and Romboid Sax Assemblage California along with other small businesses are troubled by Epiq Systems Inc. and Council's inability to return card processing fees to litigation class members in case 1:05-MD – 1720 (MKB) (JO) in reasonable time.

From January 1 2004 to January 25, 2019 VISA and Mastercard fleeced class members by charging excessive interchange fees in coordination with certain banks.   The first major antitrust settlement in the long-running *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* was reached on November 27, 2012, when U.S. District Judge John Gleeson granted preliminary approval to a proposed settlement; After 15+ years of legal wrangling,  class members are fearfull that more of our precious remaining funds in the 5.5 Billion dollar settlement will be sequestered by Epiq Systems Inc and those attorney LLPs referenced and copied above.

Class members including myself were fleeced by VISA and Mastercard by violating anti-trust laws.  Now, we are being supped again, this time by the very entities enlisted to put things right.

In 2019 Epiq Systems, Inc. was appointed by the U.S. District Court for the Northern District of Illinois to manage the settlement process after the case was approved. Since 2019 — 8 long years — Epiq has proven itself unable to scale up for the aforementioned 5.5 Billion dollar settlement.  Epiq Systems Inc. does not have  critical coordination necessary to accomplish this large assignment for claims processing. Nor has Epiq excercised jurisprudence in streamlining the process. For example, one of my claims has languished for years with a ZERO contested status.   Jurisprudence is considered a form of logic in the sense that it involves conceptual analysis, reasoning, and the systematic examination of legal principles.   I would suggest Epiq can not cope.  They appear to be 'in over their heads' including paying out the simplest of cases.  Epiq's documented high employee turnover may likely be  the cause of morass within their ranks. Their web site boasts of grand resources,  but their tools and methods of communication and abysmal performance and paralysis tell a different story.

With each passing month  more and more money is siphoned off by Epiq's debility in completing their court appointment. In effect, we the class members are being asked to legitimize Epiq's lack of due dilligence to meet the demands of the case.  The company seems to be in a perpetual freeze because they do not have the proper tools to deal with the complexities in process management and financial forensics. Epic keeps billing the Court [Escrow]  month after month, year after year with exagerated expenses.   Epic's billing is astonishing in it's rapacity and scope. The following calculation exhibits  the vast over reach in Epic's billing. I offer the following illustration:

For July 2025. Epiq billed $ 4,234,622.35, reference invoice # 90999904 [*attachment 1*]. A quick calucation Indicates that based on Epiq's average advertised salary [INDEED posting] of aprx. $ 7,900 salary per month per employee that Epiq employs aproximately 402 fully employed or contract account managers for the VISA/ Mastercard anti-trust case. Please note that for this simple calculation I have deducted 25% as typical over-head business expenses. Standard overhead expenses of 25% or 1.058M per monthly has been deducted to cover executive salary and office space.

In actual fact, Epiq Systems business profile indicates the company has ["at any gvien time, aprx. 100-135 employees"].

A quick online business search for Epiq advises medium risk engaging with this company with a business trust score of 62.4/100. Epiq has a poor employee satisfaction rate with a score of 4/10 suggesting significant challenges in employee satisfaction and constant employee turnover. Since January 2026, the Better Business Bureau has logged 5 serious complaints against Epiq for carelessly mailing checks without proper tracking and accountability. In the last weeks, numerous complaints have been filed against Epiq including stalled re-issue, and misleading, and contradictory statements by company leadership. From INDEED (online) I quote, "those employed at Epiq experience high stress, inconsistent management communication, frequent layoffs, high employee turnover, and inadequate support for contract workers" (May 12, 2026). One such contract worker for Epiq, Roger is located in Texas. Roger works from a unidentified telephone line. Roger is the sole individual responsble for claim case member support for said VISA/Mastercard management case. Roger is unable to answer most questions and always defers to the dullard Epiq web site. Epiq leadership is not able to keep their employees. Job opportunities are a revolving door inside Epiq Systems, Inc. — 19 job postings as I write. This may represent as much as 20% of the work force at Epic's headquarters in Beaverton, Oregon.

Given all this, the attorneys and the Special Master seem willing to keep Epiq Systems in place given their poor outlook. *Why?* Might I suggest both Epiq and the attorneys in this case profit massively by allowing settlement activity to draw out. Both Epiq and the attorneys share simiar business ideolologies in opposition to settling payout management within a fixed period. *In other words*, both stand to profit the longer they can drag out case administration.

This clearly represents double dealing. Both Epic and the attorney's have enriched themselves in less than honorable ways. Together, they watch each others back [see attachment 2] Attachment 2 is a copy of a letter sent unsigned requesting $ 12,162,098. 79. The letter was sent from the office of Robbins Geller, Rudman & Dowd LLP on September 8, 2025. The letter iis written in bone dry language asking the court to pay Epiq from case escrow funds. I bring to your attention that this letter sent from Robbins Geller, Rudman & Dowd LLP asks for the work of Epiq be paid without any oversight or milestone of proven work or work substantiation. I also suggest the funds they request here are hyper inflated by a factor of 3:1. The picture of Third Quarter 2025 coorespondence and billing is an example of what may be fraudulence and over reach. It is the reason for certifying the enclosed letter no. 3 to the court for review. It is also the reason for further filing a complaint for lack of certifiable jurisprudence for class members in Epic billing with the DOJ Anti-trust Division. There is much irony in the way the management of this anti-trust case has been carried out.

Should we assume that the Special Master is working with clear oversight aided by common sense or not? It appears all hope of a fair outcome and resolution in this anti-trust case is failing. For a period of 49+ months, United States District Court Eastern District has allowed a steady parasitic draw of mine (and others) settlement escrow funds by and Epiq Systems Inc. supported by Class Council. The court may be failing in it's duties because attorney's can ape the system. Epic and the many attorneys on record are happily 'winning' in their attempts to to return only a small fraction of class members money. It is estimated that 85% of the settlement will likely have be paid to Epic and the attorneys and perhaps as little as 10-15% of money owed will be returned to small American businesses like mine.

How is the interest earned on 5.5 billion dollars being paid out to members? **What is the legal framework established by the court regarding interest.** Is Epic paying interest on a substantiated sum in entirety or just the pittance? Based on the interest rate of 3.75% APY for 5.5 billion dollars that would equate to an additional M 296.25 added to escrow per year. This M 296.25 amount does not include further gains in compounded interest calculation. **Where is this earned interest on 5.5 Billion dollars from 2019 to the present going?**

My concern assigning Epiq Systems, Inc to manage a 5.5 billion dollar settlement is serious.  I am concerned for all stakeholders like myself who see their money going down the drain from no fault of their own.

On  July 24, 2025 I posted a letter via certified mail to The Honorable Dennis Jacobs at The United States Court Of Appeals, second circuit.  I wrote then about Epic's web site conception and poor facility for users.  I reported that web site navigation and claim status term definitions lack coherence and facility.   Additionally, I wrote that the site had not been updated with current information in years.   More alarmingly in January, 2026, I wrote The Honorable Judge Margo K. Brodie at the United States District Court, Eastern Division of New York expressing my concerns *again* for the REAL ability of Epiq to get the job done.   Note: there have been no Epiq web site updates since November of last year.  Perhaps with this letter, posted in the spring of 2026, along with my complaint to the Deptartment of Justice we will begin to see concerted resolution for Epiq to scale up operations honestly or get out of the way.

In closing,  my experience with Epiq Systems Inc. has been nothing less than disturbing, and has caused me and my business financial hardship.  For reasons unknown, my own claim filed by certified mail December 23, 2023 has not been repaid.  The web site has listed one of my two business claims as 'APPROVED' for many months, (My substantiated claim was lost for nearly 2 years).

I would like to understand why my substantiated claim has yet to be paid and what the amount of interest I will be paid including clear dates spanning interest accrued, and on what principle amount.

it is my hope that the Court of The Honorable Judge Brian M. Cogan, and Magistrate Judge Joseph A. Marutollo will finally put an end to this endless affectation of the law and the financial leverage both Epiq Systems, Inc. and the attorneys on record continue to play out for their respective financial gain.

Sincerely,

Sheryl Rogers-Havered
Los Angeles, California
e. info@rsax.com

*Enclosures:*
1. EPIQ statement invoice June – August 2025
2. Letter Robbins Geller Rudman & Dowd



Epiq
10300 SW Allen Blvd.
Beaverton, OR 97005

Tel: 503.350.5800
Toll Free: 800.547.4407

September 8, 2025

**To:    Rule 23(b)(3) Class Counsel**
*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*

**Re:    Funding Request for June 2025, July 2025, and August 2025 Invoices**

Funding is requested for invoices issued by Epiq since the prior Funding Request for fees and expenses incurred for the months of June 2025, July 2025, and August 2025. The invoices principally relate to the following activities: document review, staffing the toll-free number and email inbox to respond to class member questions, conflict and Special Master determination noticing efforts, maintaining and updating the settlement website, data preparation and hosting efforts, and periodic reporting for counsel.

| Epiq Invoice # | Billing Period | Amount |
|---|---|---|
| 90989861 | June 2025 | $3,843,543.09 |
| 90999904 | July 2025 | $4,234,622.35 |
| 91079566 | August 2025 | $4,083,933.35 |
| | **Invoice Total:** | **$12,162,098.79** |

Epiq is requesting that $12,162,098.79 is paid from the Class Settlement Cash Escrow Account and may be wired to Epiq via the following account:

Epiq Class Action & Claims Solutions



Re: Payment Card Interchange

If there are questions or concerns, please let me know.

Sincerely,

EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC.

By    /s/
Amanda Sternberg
Director, Client Services' Programs

*attachment 1*

**Robbins Geller Rudman & Dowd** LLP

| | | | | |
|---|---|---|---|---|
| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

September 19, 2025

<u>VIA ECF</u>

The Honorable Judge Brian M. Cogan
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom 10A South
Brooklyn, NY 11201

Magistrate Judge Joseph A. Marutollo
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom 11A South
Brooklyn, NY 11201

Re:    *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
        No. 1:05-MD-1720 (BMC)(JAM)

Dear Judges Cogan and Marutollo:

Rule 23(b)(3) Class Counsel ("Class Counsel") attach as Exhibit A a funding request from Epiq regarding funding for invoices issued by Epiq since the prior Funding Request for fees and expenses incurred for the months of June, July and August 2025. The invoices principally relate to the following activities: document review, staffing the toll-free number and email inbox to respond to class member questions, conflict and Special Master determination noticing efforts, maintaining and updating the settlement website, data preparation and hosting efforts, and periodic reporting for counsel.

Class Counsel request that the Court approve the funding request of $12,162,098.79. The requested funds should be paid from the Class Settlement Cash Escrow Account.

Respectfully submitted,

*/s/ Ryan W. Marth*
K. Craig Wildfang
Thomas J. Undlin
Ryan W. Marth
**Robins Kaplan LLP**

*/s/ Michael J. Kane*
H. Laddie Montague, Jr.
Merrill G. Davidoff
Michael J. Kane
**Berger Montague PC**

*/s/ Alexandra S. Bernay*
Patrick J. Coughlin
Alexandra S. Bernay
**Robbins Geller Rudman
& Dowd LLP**

Exhibit A

cc:    All Counsel via ECF

*attachment 2*

4931-2962-4682.v1

655 West Broadway, Suite 1900  San Diego, CA 92101  Tel 619-231-1058  Fax 619-231-7423  rgrdlaw.com

RSAX LLC ROGERS-HAVERED

1740 Lucile Aveniue

Los Angeles, California 90026






UNITED STATES POSTAL SERVICE

LOS ANGELES, CA 90027
MAY 14, 2026

11701

**$5.30**

RDC 99

S2324K503688-21

The Honorable Judge Brian M. Cogan

United States District Court

 for the Eastern District of New York

225 Cadman Place East

Courtroom 10A South

Brooklyn, New York  11701

 

F I L E D

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  MAY 19 2026  ★

BROOKLYN OFFICE

11201-183299

9589 0710 5270 3657 3304 35





PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

9589 0710 5270 3657 3304 35