*** Filed ***
02:25 PM, 26 Jun, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

In re:

**PAYMENT CARD INTERCHANGE FEE AND**
**MERCHANT DISCOUNT ANTITRUST LITIGATION**

_____

MDL No. 1720 (BMC)(JAM)
Civil No. 05-5075 (BMC)(JAM)

**REPLY OF PRO SE CLASS MEMBER PETER CORSA**
**TO RULE 23(b)(3) CLASS COUNSEL'S RESPONSE (ECF 9899)**
**REGARDING NOTICE ADEQUACY UNDER RULE 23(d)**

### I.  INTRODUCTION

Class Counsel's Response (ECF 9899) rests on one premise: that Mr. Corsa received timely individual notice in 2019, filed claims, and was paid, so no notice question remains. The premise cannot be reconciled with Class Counsel's own records. The only mailing record Class Counsel has ever produced — the chart in counsel's email of April 13, 2026 — shows that **every documented mailing to Mr. Corsa occurred on December 4, 2023 or later**. Not one mailing in that chart is dated 2019. Class Counsel repeatedly asserts these 2019 mailings in the response as in the email. (EXHIBIT A)

1

Yet, Mr. Corsa was never shown delivery records or proof of proper notification — that is, Mr. Corsa was never notified in a manner reasonably calculated to reach him, and never notified in time to exercise his opt-out and objection rights, which closed on **July 23, 2019**. The communication that eventually alerted him to the settlement was dated December 4, 2023, more than four years after those rights had expired. Only then did he file claims on the basis of that 2023 notification through social media. That sequence does not establish timely 2019 notice; it confirms that his first documented notice came years too late.

The narrow question properly before the Court under Rule 23(d) is whether Mr. Corsa received notice reasonably calculated to reach him in time to opt out or object. On the documentary record Class Counsel itself created, the answer is no.

## II.  THE ASSERTION OF A 2019 MAILING IS ATTORNEY ARGUMENT, NOT EVIDENCE

The Response states that "[t]he first notice was sent on March 25, 2019 and returned" and was "re-mailed on May 10, 2019." ECF 9899 at 5-6. This assertion is supported by no document. Class Counsel cites ECF 9893, which contains no mailing log, no address-source record, no delivery confirmation, no returned-mail record, and no February 2019 long-form notice record. The 2019 dates rest entirely on the statement that "according to Epiq's records notices were sent in March 2019" — an unsupported characterization of records that have never been produced.

By contrast, the records Class Counsel *has* produced — the April 13, 2026 mailing chart — uniformly show 2023 and later. The Court cannot resolve a disputed question of timely notice by accepting attorney characterization of undisclosed records over the dated documentation in the record. If Epiq possesses records establishing a 2019 mailing to Mr. Corsa, those records

would resolve this matter and should be produced. Their absence is the precise reason the Rule 23(d) inquiry is warranted.

### III.  CLASS COUNSEL'S OWN CHART SHOWS NO 2019 MAILING

The mailing chart Class Counsel provided on April 13, 2026 contains **no 2019 entry of any kind**. Every dated mailing is as follows:

- Bombay Bar & Grill — Prepopulated Claim mailed December 4, 2023; Reminder Postcard April 30, 2024.

- Pios Pasta Downtown — Prepopulated Claim mailed December 4, 2023; Reminder Postcard April 30, 2024.

- Amelia's — Prepopulated Claim mailed December 4, 2023; Reminder Postcard April 30, 2024.

- Alessandro of Gainesville — Prepopulated Claim mailed January 24, 2024 to 2842 S Nova Rd; Reminder Postcard April 30, 2024 to 2841 S Nova Rd.

The remaining entries are emails dated 2024 through 2026. The earliest documented mailing of any kind to Mr. Corsa is **December 4, 2023** — more than four years after the July 23, 2019 opt-out and objection deadlines. The returned-then-corrected mailing sequence the Response attributes to 2019 corresponds, in the actual chart, to the **2024** Daytona Beach mailings, where the address shifted from 2842 S Nova Rd to 2841 S Nova Rd. There is no documented 2019 mailing for the Court to credit.

## IV. FILING CLAIMS DOES NOT ESTABLISH TIMELY NOTICE

The Response's central argument — that because Mr. Corsa filed claims, he "obviously received notice" (ECF 9899 at 2) — answers a question not in dispute and ignores the one that is. The claims-filing deadline (which Class Counsel states was February 2025) and the opt-out and objection deadlines (July 23, 2019) are different deadlines protecting different rights.

A class member who learns of a settlement only after the opt-out and objection period has closed may still file a claim within an open claims window and receive a payment, while having been entirely deprived of the opportunity to opt out or object. That is Mr. Corsa's circumstance precisely. He received notification via social media in December 2023, filed claims, and was stated to have received a partial payment. None of that cures the loss of his July 2019 opt-out and objection rights, because his documented notice was sent more than four years after those rights expired. Class Counsel's contention that Mr. Corsa "is receiving the benefits of the settlement and thus his due process claim is baseless" (ECF 9899 at 5) conflates the claims process with the constitutional notice requirement. The benefit flows from the claims process; the injury is the lost 2019 opportunity to opt out or object, which a later check does not restore.

## V. MULLANE AND JONES v. FLOWERS GOVERN, AND THE STEPS TAKEN WERE NOT REASONABLE

Class Counsel calls reliance on *Jones v. Flowers*, 547 U.S. 220 (2006), "baffling" because *Jones* involved government action. ECF 9899 at 5. The distinction is immaterial. *Jones* and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), state the constitutional standard for notice — that it be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314. That standard

governs class settlement notice, which binds absent members and extinguishes their claims. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

Class Counsel concedes a mailing to Mr. Corsa was returned undeliverable. ECF 9899 at 5. Under *Jones*, knowledge that a notice was not delivered triggers a duty to take additional *reasonable* steps that are *practicable* before the recipient's rights are extinguished. The steps described do not meet that standard. Epiq already possessed the merchant's business name and Tax Identification Number. A search of that named business in the Florida Division of Corporations — a free, public database — would have produced the entity's registered address in a matter of minutes. Instead, the "corrected" mailing went to another incorrect address (2841 S Nova Rd in place of 2842 S Nova Rd). Re-mailing to a near-identical wrong address, when the correct address for an already-identified business was a routine public lookup away, is not the reasonable additional step *Jones* requires.

Mr. Corsa did not receive the notice the Response describes. That a mailing was "not returned" is not evidence that it was delivered to Mr. Corsa, much less in time. *Mullane* requires means reasonably calculated to inform; it does not treat the absence of returned mail as conclusive proof of delivery to the right person at the right time. The contention that locating a correct address is "impossible" across millions of members (ECF 9899 at 3 n.4) misframes the duty. Mr. Corsa does not contend Epiq was required to mine state corporate records for the entire class at the outset. He contends that once a specific mailing to a specific, already-identified merchant was returned, the reasonable and practicable next step was to look up that named business — not to re-mail to another wrong address.

<u>**VI. PRIOR APPROVAL OF THE NOTICE PLAN DOES NOT RESOLVE AS-APPLIED
NOTICE**</u>

Class Counsel argues that this Court and the Second Circuit approved the Notice Plan, completing the Court's Rule 23(d) role. ECF 9899 at 3-5. Those approvals addressed the adequacy of the notice *plan* in the aggregate — not whether notice was constitutionally adequate as applied to Mr. Corsa. The Square Sellers ruling in *Payment Card II* concerned the general reasonableness of the plan under clear-error review; it did not adjudicate whether Mr. Corsa personally received notice reasonably calculated to reach him during the opt-out period. Rule 23(d) imposes a continuing supervisory obligation, and approval of a plan in the aggregate does not foreclose review of a specific, documented failure of that plan as applied to an individual. Class Counsel cites no authority barring a class member from raising a personal notice failure after aggregate approval, because none exists. Approval of a notice plan in the aggregate does not immunize the settlement from review where a class member presents unrebutted evidence that he personally received no notice before the opt-out and objection deadlines.

<u>**VII. CONCLUSION**</u>

Class Counsel asserts a 2019 mailing it has not documented, while the records it has produced show every mailing to Mr. Corsa occurring in December 2023 or later — after the July 23, 2019 opt-out and objection deadlines. Filing claims years after those deadlines does not establish timely notice. Prior approval of the Notice Plan in the aggregate does not resolve the as-applied question now before the Court. Mr. Corsa filed claims in this action, demonstrating that he did receive notice.

Class Counsel states "Significantly, Mr. Corsa received a payment in the initial, partial distribution for one of his Tax Identification Numbers ("TINs") and two TINs are in the recently

approved distribution population." This is absolutely false, Mr. Corsa has not received any payment to date.

Mr. Corsa respectfully requests that the Court exercise its supervisory authority under Federal Rule of Civil Procedure 23(d) and direct Class Counsel and Epiq to produce, by sworn declaration of the responsible Epiq personnel, a complete and specific accounting of the notice provided to Mr. Corsa — identifying each address used and its source, the date and disposition of each mailing, the steps taken after any mailing was returned, and a specific identification of which notice records exist and which do not — or, in the alternative, grant Mr. Corsa leave to obtain that accounting under Federal Rule of Civil Procedure 45.

Respectfully submitted,

_____
Peter Corsa
Pro Se Class Member
Osceola County, Florida

Dated: June 25, 2026

## <u>CERTIFICATE OF SERVICE</u>

I, Peter Corsa, hereby certify that on June 25, 2026, I caused a true and correct copy of the foregoing Reply to be served upon all counsel of record via the Court's Electronic Case Filing (ECF) system.

_____
Peter Corsa

# EXHIBIT A

**From:** Xan Bernay <XanB@rgrdlaw.com>
**Sent:** Monday, April 13, 2026 3:08 PM
**To:** 'petercorsa@outlook.com' <petercorsa@outlook.com>
**Cc:** 'Sternberg, Amanda' <Amanda.Sternberg@epiqglobal.com>
**Subject:** RE: In re Payment Card / Follow-Up to Today's Call / Request for Written Communications Only

Mr. Corsa

Your below email does not comport with the conversation we had.
I am happy to speak via written communication, but I will not stand for misstatements.

I did not say you were not entitled to a calculation worksheet. I said that the administrator would not be providing that and that this is not a document that is ever provided to class members.

The merchant portal lays out which TINs were included in the distribution so it does not make sense for you to claim that you did not know other TINs were not included. It is my further understanding that Epiq representatives also told you that not all of your TINs were included in the initial, partial distribution population.

Information regarding the reasons for inclusion or non-inclusion is detailed in public filings that are all available on the settlement website (www.paymentcardsettlement.com). If you have any trouble accessing, please let me know.

As to notice, according to Epiq's records notices were sent in **March 2019** to three of your merchants (Bombay Bar & Grill, Amelia's and Alessandro of Gainsville).

You were also sent a variety of other communications, many well prior to the end of claims filing period. Please see the chart below.

| Merchants | TINs | Document | Sent Date | Address |
|---|---|---|---|---|
| BOMBAY BAR & GRILL INC | XXX9446 | Mailed - Prepopulated Claim | 12/4/2023 | 12 W University Ave, Gainesville, FL 32601-3317 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 12 W University Ave, Gainesville, FL 32601-3317 |
| | | EMailed - Authorization Approved | 8/1/2024 | petercorsa@outlook.com |
| PIOS PASTA DOWNTOWN | XXX5396 | Mailed - Prepopulated Claim | 12/4/2023 | 4320 SW 20TH AVE, GAINESVILLE, FL 32607-4200 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 4320 SW 20TH AVE, GAINESVILLE, FL 32607-4200 |

| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
|---|---|---|---|---|
| | | Emailed - Additional Data | 1/17/2025 | petercorsa@outlook.com |
| | | Emailed - Research Results | 2/26/2025 | petercorsa@outlook.com |
| AMELIA'S | XXX1618 | Mailed - Prepopulated Claim | 12/4/2023 | 236 S MAIN ST, STE 107, GAINESVILLE, FL 32601-6585 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 235 S MAIN ST, STE 107, GAINESVILLE, FL 32601-6585 |
| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
| ALESSANDRO OF GAINSVILLE | XXX1238 | Mailed - Prepopulated Claim | 1/24/2024 | 2842 S NOVA RD, DAYTONA BEACH, FL 32119 |
| | | Mailed - PrePopulated Reminder Postcard | 4/30/2024 | 2841 S NOVA RD, DAYTONA BEACH, FL 32119 |
| | | EMailed - Authorization Approved | 7/18/2024 | petercorsa@outlook.com |
| | | EMailed - SG Payment Election | 12/4/2025 | petercorsa@outlook.com |
| | | EMailed - SGPayElectReminder | 1/5/2026 | petercorsa@outlook.com |

As I explained on the call, the issue of notice was previously raised with the Court and notice was found to properly comport with Due Process. As you received individual mailed notice based on Epiq's records, as well as many other communications, your statement below (item four) appears to be incorrect.

Further, as I explained in my earlier email, there are a variety of reasons a TIN may not have been included in the initial, partial distribution. It is not Epiq's practice to provide individual class members the reason why a given TIN was not in the initial population, but I can ask Epiq (Amanda copied here) to look into this issue.

Finally, the check details were noted in my email, below, but I replicate them here: Check No: 385743. Check Date: 2/13/2016. It was mailed to your address but has not yet been cashed. Stale date is May 14, 2026.

Regards,
Xan