# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, NY 10019-6064
+1 212 373 3000

**William Michael**
**Direct Dial:** +1 212 373 3648
**Email:** wmichael@paulweiss.com

Brussels
Hong Kong
Houston
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, DC
Wilmington

June 29, 2026

The Honorable Brian M. Cogan
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, 05-MD-1720; *Intuit Inc. v. Visa Inc.*, No. 21-cv-1175; *Block, Inc. v. Visa Inc.*, No. 23-cv-5377

Dear Judge Cogan:

Pursuant to Your Honor's Individual Rule § III.B.2, Visa and Mastercard submit this pre-motion conference letter regarding the dispositive motions Defendants plan to file, with the Court's permission, on July 29, 2026 pursuant to the case schedule. No. 23-cv-05377, Dkt. 50; No. 21-cv-1175, Dkt. 93. Defendants summarize below the principal bases for each motion.[1] For clarity of presentation and the record, Defendants intend to file each motion separately (avoiding duplication between motions), unless the Court would prefer a different format.

These cases are ripe for disposition for reasons that are unique to these Plaintiffs. Discovery has shown that Intuit and Square, as payment facilitators ("PayFacs"), play a fundamentally different role in the payment card ecosystem than the merchants that filed earlier cases in this MDL. PayFacs act as intermediaries between merchants and acquiring banks, and their claims are uniquely flawed precisely because they are intermediaries. Perhaps recognizing this, Plaintiffs have largely copied the theories of harm alleged previously by merchants, going so far as to claim that *they* are the merchant that accepts payment cards. But this false premise does not save their claims or render Defendants' current motions redundant of any filed previously. As the Second Circuit has held, and as this Court recently reiterated, PayFacs like Intuit and Square "don't accept payment cards." Dkt. 9902 at 4; *see In re Payment Card*, 2026 WL 1210154, at *1–2 (2d Cir. May 4, 2026). Defendants' motions seek dismissal of these claims based on the unique (and updated) evidentiary record developed here with respect to Plaintiffs' role as PayFacs.[2]

---

[1]   Visa does not include in this letter its intended motion seeking summary judgment on Intuit's Section 2 debit monopolization claims because Intuit recently informed the parties that it intends to withdraw those claims. Visa reserves the right to request to file its intended motion if those claims are not ultimately dismissed with prejudice.

[2]   The claims that Intuit asserts based on transactions for which it acted as an independent sales organization ("ISO") suffer from many of the same infirmities as the PayFac claims. Hence, certain of Defendants' motions will address these ISO claims, and certain of the motions, including the standing, *Amex*, and Mastercard market power motions, will briefly address the smaller volume of claims that Intuit and Square bring based on their merchant volume (e.g., Intuit sells TurboTax to consumers).

1.    **Plaintiffs Lack Antitrust Standing.**  As PayFacs, Plaintiffs lack antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 540–45 (1983) ("*AGC*") (assessing (1) "the directness or indirectness of the asserted injury," (2) "the existence of an identifiable class of persons" motivated to enforce the antitrust laws, (3) "the speculativeness of the alleged injury," and (4) "the difficulty of identifying damages and apportioning them . . . so as to avoid duplicative recoveries").  First, the alleged conspiracy (copied from merchants' prior complaints) targets merchants, not PayFacs, and the network rules that Plaintiffs challenge apply to merchants' card-acceptance practices.  If those rules have any impact on intermediaries like Plaintiffs, it is not a direct but a derivative impact.  Plaintiffs' claim that they *are* "merchants" is at odds with the decisions of this Court, the Second Circuit, and the undisputed facts.  Second, because they are challenging the same network rules that merchants have been actively litigating since 2005, Plaintiffs are not vindicating any public interest left unaddressed.  Third, the extent to which Plaintiffs' *payment processing* businesses would benefit from the elimination of the challenged merchant-centric rules is highly speculative.  Finally, Plaintiffs seek damages on transactions already resolved by the Rule 23(b)(3) class, and as a result their claims would subject Defendants to duplicative damages.[3]

Plaintiffs also lack antitrust standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  While Defendants continue to maintain that acquirers are the only direct payors of the challenged fees, and preserve that argument, this is not the primary basis for Defendants' motion.  Rather, Defendants will show that absent from these cases is the evidence relied upon in Judge Brodie's prior summary judgment ruling relating to how *merchants* may be direct purchasers.  Just as Intuit and Square do not accept payment cards, they are not direct purchasers of card acceptance services.  Thus, the undisputed facts will show that *regardless* of whether the direct purchasers in this market are acquirers (as the networks maintain) or merchants (as virtually every other plaintiff in this MDL has contended), they are *not* PayFacs.

2.    **Certain of Plaintiffs' Claims are Time-Barred.**  Plaintiffs cannot seek damages for their PayFac or ISO claims based on conduct occurring more than four years before the date they filed suit, given the four-year statute of limitations applicable to federal antitrust claims.  Plaintiffs are not entitled to equitable tolling under *American Pipe*, which applies only to merchant class members.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Judge Brodie held that Intuit and Square are not members of the settlement class because they do not accept cards, and that ruling was affirmed.  *In re Payment Card*, 2026 WL 1210154, at *1–2.

3.    **Plaintiffs Cannot Meet Their Burden Under *Ohio v. American Express Co.*, 585 U.S. 529 (2018) ("*Amex*").**  Plaintiffs must prove that the network rules they challenge resulted in anticompetitive effects (higher prices, reduced output) across *both* sides of the credit- and debit-

---

[3]    Plaintiffs also lack standing to recover damages arising from transactions processed over ChaseNet, Chase's closed-loop, independently priced network, because *AGC* also requires a showing of proximate causation, and those damages were not proximately caused by Defendants.  On Plaintiffs' theory, Visa conspires with its banks to set the prices to Plaintiffs through the default interchange rules.  But Chase sets the prices for ChaseNet transactions independent of those rules and to the benefit of Chase alone.  Chase's actions break the chain of causation and preclude Plaintiffs from establishing antitrust standing.

card transaction platform. *Amex*, 585 U.S. at 547. A two-sided analysis is required to account for the "indirect network effects and interconnected pricing and demand" between merchants and cardholders. *Id.* at 545–47. Intuit and Square cannot meet their burden. Plaintiffs' liability experts carve out the PayFacs' merchant customers from their analyses of the relevant market, instead treating PayFacs as the relevant transaction participant and contradicting the Supreme Court's instruction. And Plaintiffs' experts' analyses are insufficient to show anticompetitive effects under *Amex* for several reasons, including that: 1) Square's expert's purported "two-sided" price calculations show falling prices in the actual world; 2) Intuit's expert fails to show that the network rules caused any anticompetitive change in the relevant two-sided price; 3) both experts improperly include credit card interest in their two-sided price calculations for credit transactions without showing that the consumer loan component is properly within the market; and 4) both experts fail to offer any empirical evidence that output of transactions would be higher in the but-for world.[4]

**4. Mastercard's Lack of Market Power.** Mastercard lacks market power in Plaintiffs' alleged markets for general purpose credit card and debit card transactions. "Market power is the ability to raise price profitably by restricting output." *Amex*, 585 U.S. at 549. Mastercard's credit and debit shares have remained below 30% during the relevant period, making it "presumptively incapable of exercising market power," even as competition for transactions has increased. *Com. Data Servers, Inc. v. IBM Corp.*, 262 F. Supp. 2d 50, 74–75 (S.D.N.Y. 2003). Plaintiffs cannot show that Mastercard has sufficient market power to *unilaterally* cause a decrease in output, an increase in prices, or any other harm to competition in the alleged markets. Square's liability expert conceded that he is not opining that Mastercard has market power in debit transactions. And Intuit's liability expert admitted that he is offering no opinion whatsoever as to Mastercard's alleged market power independently of Visa's. Plaintiffs also cannot recast cardholder demand as market power. Allegations that their merchant customers must accept Mastercard cards or lose sales are simply another way of saying that cardholders prefer or insist on using those cards—and the Second Circuit expressly held that cardholder insistence is evidence of *competition*, not market power. *United States v. American Express Co.*, 838 F.3d 179, 202–03 (2d Cir. 2016).

**5. Motion for Injunction.** Defendants also intend to move for an injunction under the All Writs Act, 28 U.S.C. § 1651(a), compelling Intuit and Square to dismiss their PayFac claims. In the $5.6 billion Rule 23(b)(3) class settlement, over twelve million merchants released Defendants from all claims arising out of the alleged conduct "on behalf of themselves and any of their . . . agents." Dkt. 7257-2 ¶¶ 29, 31. Before discovery, this Court reserved judgment pending further development of the record as to whether merchant customers exercise sufficient control to render Intuit and Square their agents. Dkt. 9654 at 37–38. That question, on which this Court is the finder of fact, is now answered by the record: as Plaintiffs' witnesses admitted, the merchant customer initiates every transaction, controls the point of sale, owns the proceeds, and bears the ultimate economic cost, while the PayFac merely processes and remits payment. Plaintiffs are their merchant-principals' agents, the claims on those transactions have been released, and permitting Plaintiffs to proceed on their PayFac claims would sanction an impermissible duplicative recovery.

---

[4] To the extent these opinions are contrary to law, they are also excludable under *Daubert*.

Respectfully,

*/s/William Michael*

William Michael

cc:      All counsel of record, by ECF