**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

July 8, 2026

<u>VIA ECF</u>

Magistrate Judge Joseph A. Marutollo
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Courtroom 11A South
Brooklyn, NY  11201

> Re:  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
> No. 1:05-MD-1720 (BMC)(JAM)

Dear Judge Marutollo:

Pursuant to the Court's June 30, 2026 docket-entry Order, Rule 23(b)(3) Class Counsel ("Class Counsel") and counsel for Betz & Baril PLLC ("Betz & Baril") and ClickFunds LLC ("ClickFunds") have met and conferred and provide this joint status report.

## I.      Introduction

On July 6, 2026, Class Counsel, counsel for Betz & Baril and ClickFunds, and Jason Baril (Betz & Baril's principal), held a video meet-and-confer.  The parties discussed outstanding issues and some matters have been handled, but others remain.

## II.      Class Counsel's Position

*Contact information.*  On June 30, 2026, counsel for Betz & Baril and ClickFunds forwarded to Class Counsel a spreadsheet titled "Withdraw Sheet."  Class Counsel wrote back that same day and explained that the spreadsheet was insufficient, as it did not contain contact information for the several hundred Class members who were seeking to terminate their representation.  Following the July 6, 2026 meet-and-confer, another spreadsheet was sent.  This one was also missing the requested information.  After several follow ups, a mostly complete spreadsheet was received.[1]  Class Counsel expects Betz & Baril to continue updating it.  The agreement was to provide "all information regarding the former Betz & Baril class members, including contact information, necessary for Epiq to administratively file their claims."  ECF 9882 at 2.  Class Counsel had followed-up several times

---

[1]     As of Monday, July 6, 2026, more than 140 clients were still without proper contact information.

seeking to get the information that was supposed to be provided on a rolling basis.  It appears the sheets received on Tuesday July 7, 2026 contain most of the necessary fields.

***Betz & Baril has sought to renegotiate its deals, rather than simply accept termination.*** Class Counsel previously alerted the Court to two instances where Betz & Baril sought to renegotiate its agreement with Class members.  ECFs 9900, 9912.  An additional instance of this conduct has been discovered.  After Class Counsel alerted the Court, counsel for Betz & Baril sought to downplay the issue and claimed that the renegotiation was done after a request by the Class member.  Betz & Baril's claim that this issue was "simply responding to requests by their clients to lower the fees" is not supported by the documents.  ECF 9912 at 2.  The complete email threads reveal that these clients had not requested to renegotiate their contract.  *See* Attachment A.

During the recent meet-and-confer, Class Counsel suggested to Mr. Baril and its counsel that they should set the record straight and admit to the Court that its prior claims were not accurate.  They have not done so.

Mr. Baril did state that after Class Counsel raised the issue he instructed staff to stop offering to renegotiate.  He also revealed that about 25 contracts were renegotiated, mostly over the phone.

As the party that has been sanctioned Class Counsel believes this is improper.  Sanctions should: (1) deter future misconduct; (2) ensure that the sanctioned party does not benefit by their misdeeds; and (3) restore the prejudiced party to the same position but for the misconduct.  *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Update Art, Inc. v. Modiin Publ'g Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

Betz & Baril indicated during the call that they wished to be able to negotiate with clients who received the letter allowing them to cancel their contract with Betz & Baril.  Class Counsel objects to this and believes that Betz & Baril should not be allowed to negotiate, particularly where it appears that it is not in response to a Class member seeking to renegotiate, but rather a tactic by the firm to keep clients they otherwise would lose, following the sanctions finding.  Betz & Baril claims a reduction in fees is not a benefit.  This makes no sense.  Going from 40% to 25% of the settlement amount still confers a substantial benefit on Betz & Baril.

***Procedures for Administrative Filing.*** The parties also discussed procedures going forward. Class Counsel provided a declaration from Epiq that had previously been submitted in relation to another third party as an example of how administrative filings of claims would likely be handled. Class Counsel made clear that the figures in that declaration may not be the same for Betz & Baril as this issue involves significantly more Class members. Class Counsel stated that a specific report concerning Betz & Baril could be created, but it would likely increase the future expenses the firm would have to pay. Mr. Baril stated that a custom report would not be needed.

## III. Betz & Baril and ClickFunds' Position

***Contact information.*** Betz & Baril agreed to provide, provided, and will continue to provide "all information regarding the former Betz & Baril class members, including contact information, necessary for Epiq to administratively file their claims." There is no issue here, as long as Epiq clearly communicates "all information necessary" to Betz & Baril. On July 7, 2026, Betz & Baril provided the contact name, EIN, merchant name, merchant address, merchant email, and telephone number for 555 class members who elected to cancel their contracts with Betz & Baril. Furthermore, Betz & Baril represented in the email delivering the same to Class Counsel the following: "Hello, I have attached an updated list of what we have so far. We will send a completed one of the rest when finished tomorrow. We will also send updates every other day after this is complete as we go to keep you informed if any new ones should come in. Thank you." In light of the foregoing, there is no current issue. Any issues that existed in the past were addressed and resolved in the context of the meet and confer – the point of the meet and confer – and are inappropriately included in this report.

***Renegotiation of contracts.*** There are two issues with Class Counsel's characterization of what transpired. First, Class Counsel is aware that Mr. Baril stated during the meet and confer that approximately 25 class members were retained at lower rates. According to Mr. Baril, and as communicated to Class Counsel during the meet and confer, the majority of these conversations were conducted over the phone. While Class Counsel may believe – improperly – that this position is not supported by the documents, it is supported by conversations Mr. Baril or his staff had with inquiring class members. Therefore, the statement that Betz & Baril was "simply responding to requests by their clients to lower the fees" is substantially and materially correct and accurate. Second, Class Counsel interprets – also incorrectly – a generic inquiry from a class member in response to Betz & Baril's required email as an unequivocal contract cancellation. That simply is not what the class members said. They were asking questions; they did not say, as Class Counsel would have this Court believe, that they wanted to cancel, and Betz & Baril tried to retain them by offering a lower rate. Class Counsel cites to no email where the class member said it wanted to cancel, and Betz & Baril tried to retain them. Class Counsel cannot do so because that record simply does not exist.

Indeed, per the emails attached to this report with approval by Class Counsel, after being offered a reduction by Betz & Baril, one class member said: "I will continue with your firm if you lower to 25% **and thank you so much**" (emphasis added), which sounds like class member gratitude, not class member dissatisfaction. Digging deeper into that email, the class member stated: "I'm slightly confused by this email **could you give me personal detailed information regarding my claim so that I can make an informed decision on what would be best for me?**" (Emphasis added.) In that case, the class member clearly benefited from the offer of a lower fee; indeed, this offer provided the class member with information sufficient for the class member to make an informed decision. This begs the question: If and to the extent every class member was aware that they could proceed with Betz & Baril but for a lower fee, would they have still canceled their contracts?

And contrary again to Class Counsel's interpretation, how a reduction in fee could be construed as a benefit is beyond cavil. Class Counsel points to no authority that stands for the proposition that a reduction in compensation, as here, is a benefit.

Respectfully submitted,

*/s/ Alexandra S. Bernay*                    */s/ James J. DeCristofaro*
Alexandra S. Bernay                          James J. DeCristofaro
**Robbins Geller Rudman & Dowd LLP**         **The Lawyer James J. DeCristofaro, Esq., P.C.**

Co-Lead Rule 23(b)(3) Class Counsel          Attorney for Respondents Betz & Baril PLLC
                                             and ClickFunds LLC

Attachment A

cc:    All Counsel via ECF