**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720<br>No. 05-md-01720 (BMC) (JAM) |
| This Document Relates To:<br><br>BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE,<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY,<br><br>Defendants. | **EQUITABLE RELIEF CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF AMENDED SETTLEMENT AGREEMENT** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. PROCEDURAL BACKGROUND AND AMENDED SETTLEMENT TERMS ..... 2
A. The Amended Settlement Resulted from More Than Ten Years of Hard-Fought Litigation, Advocacy, and Negotiation ..... 2
B. The Amended Settlement Yields an Unprecedented and Historic Result for the Class. 3
III. THE AMENDED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ..... 7
A. The Amended Settlement Is Procedurally Fair ..... 8
1. Class Counsel Adequately Represented the Class ..... 8
2. Plaintiffs Are Adequate Class Representatives ..... 10
3. The Amended Settlement Was Reached Through Arm's-Length Negotiations ..... 11
B. The Amended Settlement Is Substantively Fair ..... 12
1. The Relief Provided to the Class Is Adequate ..... 12
(a) The Class Faces Significant Risks in Establishing Liability ..... 13
(b) The Amended Settlement Is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation ..... 15
(c) Likely Appeals Magnify the Litigation Risks ..... 21
(d) Whether Defendants May Be Able to Withstand a Greater Judgment Does Not Undercut the Reasonableness of the Amended Settlement ..... 21
2. The Amended Settlement Treats Class Members Equitably Relative to Each Other .. 22
3. The Release Is Appropriate and Supports Final Approval ..... 24
4. The Proposed Attorneys' Fees and Class Representative Service Awards Are Appropriate ..... 24
5. No "Side Agreements" Exist Between Co-lead Counsel and Other Individuals or Entities ..... 25
IV. NOTICE IS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS ..... 25
V. THE REACTION OF THE CLASS AT THIS TIME FAVORS APPROVAL ..... 27
VI. CONCLUSION ..... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Fed. Trade Comm'n*,
1 F.4th 102 (2d Cir. 2021) ....................14

*Amara v. CIGNA Corp.*,
775 F.3d 510 (2d Cir. 2014)....................23

*Aramburu v. Healthcare Fin. Servs., Inc.*,
2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009) ....................22

*Ayzelman v. Statewide Credit Servs. Corp.*,
242 F.R.D. 23 (E.D.N.Y. 2007) ....................22

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012)....................22, 26

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................22

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)....................10

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................8

*DDMB, Inc. v. Visa, Inc.*,
2021 WL 6221326 (E.D.N.Y. Sep. 27, 2021)....................8, 9, 10

*In re Drexel Burnham Lambert Grp.*,
995 F.2d 1138 (2d Cir. 1993)....................26

*In re Global Crossing Securities & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................12, 13

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. Feb. 17, 2006) ....................7

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)....................7

*In re MetLife Demutualization Litig.*,
262 F.R.D. 205 (E.D.N.Y. 2009). ....................27

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. Feb. 12, 2010) ....................7

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023) ....................22, 23

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2024 WL 3236614 (E.D.N.Y. Jun. 28, 2024) .................... *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2026 WL 1662251 (E.D.N.Y. Jun. 9, 2026) .................... *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ....................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) ....................4, 10, 11, 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................14, 28

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
527 F. Supp. 3d 269 (E.D.N.Y. 2021) ....................27

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................12

*Sweet v. Cardona*,
641 F. Supp. 3d 814 (N.D. Cal. 2022) ....................24

*Sykes v. Harris*,
2016 WL 3030156 (S.D.N.Y. May 24, 2016) ....................13, 23

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................15

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ....................10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................10, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .................... *passim*

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ....................7

## I. INTRODUCTION

Equitable Relief Class Plaintiffs ("ERCPs" or the "Class") and the Defendants have reached an amended settlement (the "Amended Settlement") that substantially reforms nearly every restraint challenged by the Class and provides merchants with powerful competitive tools never before available in the payment-card industry. Among other things, the Amended Settlement substantially reforms the Honor-All-Cards ("HAC") rules, allowing merchants, for the first time, to decline acceptance of the networks' highest-cost Premium consumer credit cards and Commercial credit cards while continuing to accept lower-cost cards. The Amended Settlement also eliminates the Honor-all-Wallets rules; permits merchants to surcharge Visa and Mastercard credit cards up to 3% or the cost of acceptance regardless of whether the merchant accepts or surcharges American Express or other competing cards; expands merchants' ability to discount specific issuer cards and lower-cost cards; creates a new "value card" framework designed to encourage use of the low-cost cards; facilitates merchant buying groups; eliminates significant barriers to steering and discounting; permits dual pricing to help merchants comply with state surcharge restrictions; provides significant debit card relief; and creates meaningful pilot-program and merchant education initiatives designed to increase use of the Amended Settlement's competitive tools. To ease the transition to a competitive marketplace, the Amended Settlement mandates interchange rate caps and significant rollbacks that will benefit all merchants, including those with negotiated rates.

These reforms are the product of careful consideration and hard-fought negotiations over more than a year, and they provide substantial relief to all Class members, particularly considering the ample risks of continued litigation. They fundamentally alter the competitive landscape governing Visa and Mastercard card acceptance and give merchants practical and enforceable tools to exert competitive pressure on transaction fees. The result will be a substantially more

competitive payment-card marketplace in which market forces—not network restraints—play a materially greater role in determining the prices paid by merchants and consumers.

Securing the Defendants' agreement to those seismic shifts in the industry would strongly support approval of the settlement even if ERCPs faced no headwinds on the merits. But, as the Court recently concluded, that is not the case; there is a "legitimate risk" that ERCPs "will not be able to establish liability at trial," and an even "bigger" risk that ERCPs "will not secure the relief that the Amended Settlement offers" if the case goes to trial. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2026 WL 1662251, at *4 (E.D.N.Y. Jun. 9, 2026), ECF 9884 at 22 ("Prelim. Appr. Order"). Based on the extraordinary results achieved by the ERCPs over more than a decade of high-risk litigation, and for the reasons set forth in the Preliminary Approval Order, ERCPs respectfully request that the Court finally approve the Amended Settlement as fair, reasonable, and adequate.

## II. PROCEDURAL BACKGROUND AND AMENDED SETTLEMENT TERMS

### A. The Amended Settlement Resulted from More Than Ten Years of Hard-Fought Litigation, Advocacy, and Negotiation

The road to achieving the Amended Settlement has been very long indeed. The history of this complex litigation includes the initial complaints filed in June 2005, discovery, motion practice, the initial 2012 class settlement and reversal on appeal, the appointment of new counsel for the Class, class certification of a separate Rule 23(b)(2) class, summary judgment rulings, the denial of the motion for preliminary approval of the prior agreement in June 2024, trial preparation, and the renewed settlement negotiations that led to the Amended Settlement.[1]

[1] More detailed information about the procedural background is provided in the Declaration of Equitable Relief Class Counsel in Support of Motion for Preliminary Approval of Amended Settlement Agreement ("ERCC PA Decl."), ECF No. 9692-10, at ¶¶ 26-123. Citations to the ERCC PA Decl. are provided where they offer additional factual background. The Class incorporates herein by reference all the evidence, declarations, and other materials it submitted in support of preliminary approval.

Between July 2024 and October 2025, the parties negotiated the Amended Settlement. The parties engaged in continuous, productive negotiations that included numerous all-day or hours-long in-person and virtual meetings, multiple exchanges of detailed financial data and documents, expert economic analysis of that data, and negotiations of multiple proposed term sheets. Judge Orenstein held five all-day, in-person mediation sessions and seven virtual discussions with counsel for all parties. He also conducted more than 30 *ex parte* calls and Zoom sessions in support of the parties' good-faith efforts to consider each other's positions and achieve a fair, reasonable, and adequate settlement. *See* ERCC PA Decl., ECF No. 9692-10, at ¶¶ 36-40; Declaration of Hon. James Orenstein (Ret.), ECF No. 9692-6 at ¶¶ 13, 19 ("Orenstein Decl.").

Throughout the time spent mediating, Equitable Relief Class Counsel ("ERCC") conferred with their economists to analyze the potential impact of various settlement proposals and consider modifications. Class Counsel also consulted class members and industry experts to ascertain their positions and suggestions regarding the new—and expanded—relief contemplated by the Amended Settlement. On November 9, 2025, the parties executed the Amended Settlement.

### B. The Amended Settlement Yields an Unprecedented and Historic Result for the Class

The Amended Settlement's reforms and rule changes provide a powerful set of competitive tools for merchants to push back against too-high interchange fees. As this Court recognized in granting preliminary approval, the "Amended Settlement provides more extensive relief than the First Settlement." Prelim. Appr. Order at 6, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2026 WL 1662251, at *4 (E.D.N.Y. Jun. 9, 2026).

The Amended Settlement makes significant and effective changes to the networks' HAC rules that currently require merchants to accept all credit cards issued under the Visa or Mastercard brands if they accept any of them. These rule changes will provide merchants with unprecedented

options and flexibility in selecting the types of credit cards they accept. Specifically, the reforms will allow merchants to accept a network's Standard consumer credit cards without accepting its Premium consumer credit products, and vice versa, and/or to accept its consumer credit cards without accepting its Commercial credit cards, and vice versa.[2] Merchants have clamored for this relief.[3]

The Amended Settlement will also relax the HAC rules as they relate to digital wallets. Currently, the networks construe their HAC rules to require merchants that enable technology to accept digital wallets to accept any wallet that contains the network's credit card or debit card. The Amended Settlement eliminates that rule, giving merchants the option (and the accompanying leverage) to choose whether to accept those digital wallets, including any wallet offered by the networks themselves.[4]

The Amended Settlement will enhance these reforms by allowing merchants to conduct non-acceptance pilot programs.[5] A merchant can determine which of these types of selective non-acceptance will be best for that particular merchant's customer base by testing non-acceptance on a limited scale. Importantly, in rejecting the 2013 settlement (between Defendants and the combined (b)(2)-(b)(3) class), the Second Circuit remarked that the settlement omitted forms of relief that "might have conferred a real and palpable benefit, such as remedies that affect[ed] the default interchange fee or honor-all-cards rule." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 238 (2d Cir. 2016). "*The [C]lass is now getting both of the*

---

[2] Amended Settlement ¶¶ 22, 71, 81.

[3] *See* Equitable Relief Class Pls.' Reply Mem. Of Law in Supp. of Mot. For Prelim. Approval of Am. Settlement Agreement, ECF No. 9774-1, at 14 nn.11-13.

[4] Amended Settlement ¶¶ 34-38, 83-87.

[5] Amended Settlement ¶¶ 32-33, 81-82.

*forms of relief that the Second Circuit deemed important.*" Prelim. Appr. Order at 27-28, 2026 WL 1662251, at *15 (emphasis added).

The Amended Settlement also reforms the surcharging rules, which will allow merchants to recover their cost of acceptance on Visa and Mastercard credit cards and to steer their customers to lower-cost forms of payment. Merchants will be able to surcharge credit transactions up to 3% or the cost of acceptance, by brand (e.g., surcharging all Visa credit cards), product (e.g., surcharging Visa Signature credit cards), or type (e.g., surcharging Visa Premium credit cards), regardless of whether they surcharge competing cards such as American Express.[6] This rule change effectively eliminates the "level playing field" restraint on surcharging, substantially broadening the surcharging relief compared to the prior settlement. *See also* Prelim. Appr. Order at 8-9, 2026 WL 1662251, at *5 (recognizing expanded surcharging relief as compared to prior settlement). Again, this is exactly the relief that merchants have long sought.[7]

The Amended Settlement also generates substantial competition directly at the issuer level. It will require Mastercard, for the first time, to permit issuer-level discounting, and require Visa to amend its rules to affirmatively state that such discounting is permitted. Large merchants have sought this discounting relief.[8] Merchants will also be able to differentiate by issuer under the permitted "Scenarios" in Appendix H to the Agreement (e.g., grant an issuer preferential placement on the merchant's web landing page);[9] make a deal with an issuer to help promote its new Standard (125-bps) card; and accept a digital wallet issued by a particular issuer, while

---

[6] Amended Settlement ¶¶ 39-41, 89-90.

[7] *See* Equitable Relief Class Pls.' Reply Mem. Of Law in Supp. of Mot. For Prelim. Approval of Am. Settlement Agreement, ECF No. 9774-1, at 19-20 nn.34-35.

[8] *Id.*

[9] Amended Settlement ¶¶ 19, 68, and Appendix H. This relief was crafted in close consultation with large merchants and their payments executives. *See* Prelim. Appr. Reply Mem., ECF No. 9774-1, at 29.

declining others.

The Amended Settlement also promotes merchant buying groups so that merchants can collectively negotiate interchange rates for the Networks' services and buy those services as a group. The Amended Settlement's merchant education program bolsters that prerogative, while providing additional support for merchants in states that restrict surcharging.

Moreover, the Amended Settlement provides for interchange rate changes that reinforce and support these rule changes. To ensure the availability of low-cost credit cards that merchants can encourage customers to use, the Amended Settlement imposes a cap of 125 bps for Standard consumer credit cards.[10] This will create more than a 1% disparity in the merchant's cost of accepting Standard versus Premium cards, allowing the merchant to retain that savings or offer it as an incentive to the customer for switching cards. The Amended Settlement also provides, for five years, a 10-bps reduction in the combined systemwide average effective interchange rate for credit transactions;[11] rate caps on current published rates;[12] and pro rata rate reductions for merchants that have negotiated rather than posted rates.[13] The 125-bps cap on Standard cards will extend for at least eight years.[14] These reforms will provide merchants with significant cost certainty, easing the transition to the new competitive marketplace.[15]

The Amended Settlement provides meaningful, market-changing relief for which merchants have long been advocating. It gives merchants unprecedented options and flexibility, as

---

[10] Amended Settlement ¶¶ 50, 99.

[11] Amended Settlement ¶¶ 49, 98.

[12] Amended Settlement ¶¶ 48, 97.

[13] Amended Settlement ¶¶ 53, 102.

[14] Amended Settlement ¶¶ 62, 111.

[15] "[T]he rate reduction is not supposed to compensate merchants for past overcharges; that's what the (b)(3) settlement is for. Rather, the rate reduction will allow for cost savings and certainty while the rules take hold in the market." Prelim. Appr. Order at 22, 2026 WL 1662251, at *12.

well as concrete rate relief in the near term, rather than a complex trial and appeals fraught with the risk of recovering less than the Amended Settlement provides, or nothing at all.

## III. THE AMENDED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 NEWBERG § 11:41, at 87). The Second Circuit acknowledges "'the strong judicial policy in favor of settlements, particularly in the class action context.'" *Id*. at 116-17 (quoting *In re PaineWebber Ltd. P'ships Litig*., 147 F3d 132, 138 (2d Cir. 1998)). This is "because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. Feb. 17, 2006).

The Court is afforded "considerable deference" in evaluating a proposed class settlement. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (same). But a guiding principle is that a settlement is a compromise and so requires "'a yielding of absolutes and an abandoning of highest hopes.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 334 (E.D.N.Y. Feb. 12, 2010) (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. Dec. 13, 1972)).

Under the Federal Rules of Civil Procedure, class settlements must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The 2018 amendments to Rule 23 articulated a four-prong test that is intended to harmonize the circuits' varying articulations of the "fair, reasonable, and adequate" standard. Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments. The goal of the 2018 amendments is not to displace any factor generated by courts and circuits; rather, it is to focus the inquiry on the overall fairness of the settlement. *Id.*

Under the Rule 23(e)(2) amended standard, a settlement is "fair, reasonable, and adequate" if:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably to each other.

Fed. R. Civ. P. 23(e)(2).

The first two of these prongs address the settlement's "procedural fairness," while the last two address its "substantive fairness." Fed. R. Civ. P. 23(e), 2018 Adv. Comm. Notes to 2018 Amendments.

### A. The Amended Settlement Is Procedurally Fair

#### 1. Class Counsel Adequately Represented the Class

This Court has now determined three times—each time over the objectors' assertions to the contrary—that ERCC have adequately represented the class. Prelim. Appr. Order at 15-16, 2026 WL 1662251, at *8; *DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326, at 37-38, 50 (E.D.N.Y. Sep. 27, 2021); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 3236614, at *19-20 (E.D.N.Y. Jun. 28, 2024). Nothing has changed.

At final approval the focus is on the counsel's actual performance, as judged by the litigation required to reach settlement, counsel's conduct of settlement negotiations, and the result obtained. *See* Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

The Court has recognized that ERCC "are experienced and competent lawyers" who "have extensive experience litigating antitrust actions and class actions in federal courts" and "have been steeped in this litigation since its inception, and have demonstrated their ability to work cooperatively with each other, with the court, and with numerous non-lead counsel representing plaintiffs with very significant interests in this litigation." *DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326, at *37-38 (E.D.N.Y. Sep. 27, 2021). With respect to the prior settlement, Judge Brodie concluded that she would likely find that ERCC "have adequately represented the class" pursuant to Rule 23(e)(2)(A). *Payment Card*, 2024 WL 3236614, at *19. And, as this Court noted in granting preliminary approval, "[n]othing has changed since that time that would warrant a different result[.]" Prelim. Appr. Order at 15-16, 2026 WL 1662251, at *8. That is the "law of the case." *Id.* at 16, 2026 WL 1662251, at *9 (quoting *Silver v. Top Line Reporting Inc.*, 2026 WL 221308, at *3 (E.D.N.Y. Jan. 28, 2026)).[16]

The Amended Settlement's substantive relief further demonstrates that ERCC adequately represented the Class. It will inaugurate a sea change in the business practices of an entire industry, bringing competitive forces to bear to the greatest extent possible short of federal government regulation, by means of major modifications of the networks' restraints for the first time since their inception. The relief is at or near—possibly beyond—what the Class could obtain through even successful continued litigation. *See* Prelim. Appr. Order at 22, 2026 WL 1662251, at *12 ("None of the objectors have persuaded the Court that they will, or even can, get more through trial."); *id.* (noting bigger risk "that Plaintiffs will not secure the relief that the Amended Settlement offers, much less the additional relief on which the objectors insist"); Orenstein Decl., ECF No. 9692-6

[16] ERCC's litigation conduct and strategic decision making are addressed in more detail in the accompanying fee declarations and the brief in support of the approval of fees and expenses.

at ¶ 19 ("In my opinion, the Amended Settlement was the hard-fought result of the parties' best professional efforts and judgment, taking into account the risks of continued litigation, the strengths and weaknesses of their respective positions, the equitable treatment of the entire Equitable Relief Class …").

For decades, many merchants, litigators, and associations have tried and failed to achieve just a portion of what this settlement will deliver. Its value cannot be overstated.

### 2. Plaintiffs Are Adequate Class Representatives

The Court has now determined three times—each time over objectors' assertions to the contrary—that the class representatives are adequate. Prelim. Appr. Order at 15-16, 2026 WL 1662251 at *8-9; *Payment Card*, 2024 WL 3236614, at*14-19; *DDMB, Inc. v. Visa*, 2021 WL 6221326, at *17-36. Nothing has changed.

The class representatives' adequacy is judged by whether their interests are antagonistic to those of other class members. *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 33 (E.D.N.Y. 2019). This includes an inquiry as to whether the class representatives suffer the same injury as the other class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011). Adequacy must be assessed independently of the fairness of the settlement; courts look to whether the proposed settlement class is "sufficiently cohesive to warrant adjudication." *Payment Card*, 827 F.3d at 232. Notably, "not every potential disagreement between a representative and the class members will stand in the way of" maintaining a class. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001).

As this Court recognized at preliminary approval, appointing separate counsel for the Rule 23(b)(2) and (b)(3) classes provided "structural protection" against the conflict that the Second Circuit found to plague the 2012 settlement. Prelim. Appr. Order at 3, 2026 WL 1662251 at *2;

*see Payment Card*, 827 F.3d at 231. Thus, in the Amended Settlement, the Class Representatives' sole incentive is to maximize equitable relief for the class. Specifically, the Class Representatives have the same interests as absent Class members because all are subjected to the same sets of network rules that the Class challenges. Those rules are uniform throughout the Visa and Mastercard networks' respective systems and thus apply uniformly to the Class and the Class Representatives. The default interchange fee schedules that the Class members faced were also set uniformly across each network's system. *See* Prelim. Appr. Order at 16, 2026 WL 1662251 at *8 ("'[a]ll class members have the same interests to eliminate the rules that permit [the Networks] to maintain supracompetitive interchange fees'") (quoting *Payment Card*, 2024 WL 3236614, at *14-19).

Some of the objectors at the preliminary approval stage argued that the class representatives, which are small local merchants, sacrificed large national merchants' interests to benefit themselves. But the objectors notably provided no evidence of any procedural unfairness by which the Amended Settlement was reached. Nor could they because none exists. And even if aspects of the relief obtained in the Amended Settlement may impact particular class members differently, that does not undermine the adequacy of the representation, as discussed further below. "It certainly does 'not negate the fact that [the Networks] have acted on grounds generally applicable to the class and that each merchant in the class stands to benefit from equitable relief from the [r]estraints.'" Prelim. Appr. Order at 16, 2026 WL 1662251 at *9.

### 3. The Amended Settlement Was Reached Through Arm's-Length Negotiations

The negotiations here were conducted at arm's-length. As described above, from July 2024 through October 2025, the parties engaged in continuous, productive negotiations. Judge Orenstein attests that "[t]he negotiations were occasionally contentious, and at all times the parties remained

ready to revert to their litigation positions if agreement could not be reached." Orenstein Decl., ECF No. 9692-6 at ¶ 19; *see also* Fed. R. Civ. P. 23(e), Adv. Comm. Notes to 2018 Amendments ("[T]he involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests.").

At preliminary approval, the Court found no indication that the Amended Settlement is "anything other than the product of hard-fought, arm's-length negotiations between adversaries." Prelim. Appr. Order at 17, 2026 WL 1662251 at *9 (quoting *Payment Card*, 2024 WL 3236614, at *20). The Court found that the indicia of arm's-length negotiations weighed in favor of approving the Amended Settlement. That is equally applicable to final approval.

### B. The Amended Settlement Is Substantively Fair

At final approval, the Court's role is not to "decide the merits of the case, or resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 24, 2014) (internal quotations omitted). Rather, it is to "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Securities & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). The balance of litigation risk against the substantial relief the Amended Settlement secures points strongly in favor of final approval.

#### 1. The Relief Provided to the Class Is Adequate

"'There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other.'" Prelim. Appr. Order at 15, 2026 WL 1662251, at *8 (quoting *Payment Card*, 2024 WL 3236614, at *12). "Specifically, *Grinnell* factors (1), (3), (4), (5), and (6) overlap with Rule 23(e)(2)(C)(i), 'the costs, risks, and delay of trial and appeal.'" *Id.* So those factors can be analyzed together. *Id.* They all point toward granting final approval here. Absent settlement, the Class would have faced a series of significant hurdles to obtaining

equitable relief. Each hurdle carried a significant risk that the Class would not recover any relief, let alone the expansive relief afforded by the Amended Settlement. And continued litigation entailed a certainty of additional delay for millions of merchants that have already waited over two decades for relief from the challenged restraints. *See Sykes v. Harris*, 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016) (noting the certainty of delay in continuing complex litigation). The Amended Settlement eliminates the risks of limited relief, delayed relief, and no relief, and guarantees prompt, real relief that merchants have long been seeking.

(a) The Class Faces Significant Risks in Establishing Liability

The district court's role in evaluating this factor is to "assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459. "Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Id.*

As this Court flagged in granting preliminary approval, "the fact of the matter is, Plaintiffs could still lose at trial." Prelim. Appr. Order at 19, 2026 WL 1662251, at *11. "Principally, the Court sees obstacles to Plaintiffs satisfying their burden at trial that the Networks' rules unreasonably restrain trade under the rule of reason." *Id.* at 20, 2026 WL 1662251, at *11. Indeed, considering the significant risks that ERCP face in establishing liability, the Court suggested at the preliminary approval hearing that the Networks may want to consider trying the case. *See* Prelim. Appr. Order at 20, 2026 WL 1662251, at *11; Prelim. Appr. Hearing Tr. at 35:12-15 ("I'll say, having listened to defendants' counsel – just an impression – but it does occur to me maybe they [the Networks] should try the case instead of settling it."). "This was the Court's admonition to Plaintiffs, and to the objectors, that establishing liability was not a foregone conclusion." Prelim. Appr. Order at 20-21, 2026 WL 1662251, at *11.

The legal arguments that the Defendants would likely raise at trial could completely defeat or significantly narrow the scope of the Class's claims. Defendants would likely argue, for instance, that the proper "relevant market" in the case is "two-sided," with merchants on one side and cardholders on the other, in which the Class could not sufficiently prove harm.[17] ERCP would bear the initial burden to show that the challenged rules have "had an actual adverse effect on competition as a whole in the relevant market," and would bear the ultimate burden to show "that any legitimate competitive benefits offered by [Defendants] could have been achieved through less restrictive means." *See 1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 114 (2d Cir. 2021) (citing *North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 42 (2d Cir. 2018), then quoting *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 507 (2d Cir. 2004)). The Class would have to account for both the merchant-side and the cardholder-side of the market. *See Ohio v. American Express Co.*, 585 U.S. 519, 544-45 (2018). The Networks maintain that the credit and debit card markets have seen skyrocketing output, falling prices, and flourishing quality and innovation. They also maintain that each of their challenged rules has procompetitive benefits, and that they could not achieve these benefits without the challenged rules.[18] *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 219, 227-28 (E.D.N.Y. 2013) ("Honor-all-Cards rules . . . undeniably have significant procompetitive effects," and "[a] number of courts and economists have found the Honor-all-Cards rule and similar rules to be *procompetitive* under the Rule of Reason.").

[17] *See* Network Defs.' Mem. Supp. Prelim. Approval of the Rule 23(b)(2) Class Settlement Agreement, ECF No. 9693, at 11-12, 22 & n.16; *see also* Network Defs.' Reply Mem. Supp. Prelim. Approval of the Rule 23(b)(2) Class Settlement Agreement, ECF No. 9773, at 2-6, 12 (summarizing Network Defendants' two-sided market arguments).

[18] *See* Network Defs.' Mem. Supp. Prelim. Approval of the Rule 23(b)(2) Class Settlement Agreement, ECF No. 9693, at 12-18; *see also* Network Defs.' Reply Mem. Supp. Prelim. Approval of the Rule 23(b)(2) Class Settlement Agreement, ECF No. 9773, at 6-7, 12 (summarizing Network Defendants' arguments on procompetitive justifications).

To be sure, ERCC believe that the Class has clear paths to overcome these obstacles and establish liability at trial. But in negotiating the Amended Settlement, ERCC's job was to identify, assess, and weigh these risks, not to ignore them. This factor weighs in favor of final approval.

(b) The Amended Settlement Is Reasonable in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The Class also faces "a risk, a bigger one in comparison, that Plaintiffs will not secure the relief that the Amended Settlement offers, much less the additional relief on which the objectors insist." Prelim. Appr. Order at 22, 2026 WL 1662251, at *12. The risks on the scope of any relief also weigh in favor of approving the Amended Settlement.

In its comments to the 2018 amendments to Rule 23, the Advisory Committee noted that courts considering proposed settlements often "forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." In making this calculation, courts often compare the terms of the settlement with a "complete victory" by the plaintiffs, *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004), and discount that by the "uncertainties of law and fact" and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *see also* Prelim. Appr. Order at 21, 2026 WL 1662251, at *12 (quoting *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) ("[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]")).

Further, "the question is not whether the Amended Settlement constitutes the best possible recovery, *end stop* – it's whether the Amended Settlement constitutes the best possible recovery in light of what can be gained and lost through trial." Prelim. Appr. Order at 22, 2026 WL 1662251, at *12 (emphasis in original).

Judge Brodie concluded that the prior settlement fell short on the two *Grinnell* factors that weigh the reasonableness of the settlement "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Payment Card*, 2024 WL 3236614, at *21. In the Court's view, the prior agreement principally provided relief from the networks' surcharging rules, and the surcharging relief was "too limited to justify approval of a settlement that does not provide most other forms of relief sought by other Class members." *Id.* at *27. The Amended Settlement responds fully to both concerns. The surcharging relief no longer stands alone, and it is now much more powerful.

***Relief In Addition to Surcharging***

The Amended Settlement now provides substantial HAC relief, bifurcating the rule with respect to both Commercial credit cards and Premium consumer credit cards. Merchants can—for the first time—choose whether to accept a network's higher-cost Premium and Commercial cards, while continuing to accept that network's lower-cost cards. This relief is responsive not only to the Court's concerns about the prior agreement, but also to merchants' desire to gain the "ability to differentiate between high cost interchange card[s] or low cost interchange card[s]."[19] These HAC reforms will "confer[] a real and palpable benefit" on merchants. *Payment Card*, 827 F.3d at 238; *see also* Prelim. Appr. Order at 22-23, 2026 WL 1662251, at *15. The Amended Settlement also resolves the Court's concern about the limits on the prior agreement's honor-all-wallets relief. *See Payment Card*, 2024 WL 3236614, at *24. Now a merchant need not accept any digital wallet that contains a network's card, including a digital wallet sponsored by the network itself.[20]

The changes to the HAC rules will provide substantial economic benefits to all Class

[19] *See* ERCC PA Decl., ECF No. 9692-10 at ¶ 130 and n.106, which cites exemplar testimony from merchants on this issue.

[20] Amended Settlement, ECF No. 9692-2 at ¶¶ 34-36, 83-85.

members. Each of the network's Premium and Commercial credit cards carry interchange rates substantially above its average rates and far above the Amended Settlement's new 125-bps cap for Standard consumer credit card transactions.[21] Now a merchant or a buying group need not accept one or both of the high-cost cards or can negotiate a reduced interchange rate in exchange for continuing to accept them. And for most of the cards declining them is every bit as feasible as declining particular issuers' cards, which is the relief that some objectors claim to want.[22]

In addition to creating the 125-bps Standard card cap, the Amended Settlement further bolsters the HAC relief by requiring the networks to make the Commercial cards and Premium cards immediately identifiable to merchants at the point-of-sale[23]; reforming the All-Outlets rule[24]; and permitting non-acceptance pilot programs that will allow merchants to test their new options in a manageable way. These reforms complement the major HAC relief and will have substantial value, because the merchant will *not* "still [be] saddled with another all-or-nothing [acceptance] choice." *Payment Card*, 2024 WL 3236614, at *27.

***Strengthened Surcharging Relief***

Last time, given the absence of "most other forms of relief," Judge Brodie viewed the prior agreement's surcharging relief as "too limited." *Payment Card*, 2024 WL 3236614, at *27. Among other things, the Court pointed out that merchants that accept American Express could not surcharge more than 1% and some merchants operate in states that prohibit or restrict surcharging.

---

[21] *See* Exhibit 1 to the Declaration of Robert G. Eisler in Support of Class Plaintiffs' Motion for Final Approval of Amended Settlement Agreement (Supplemental Declaration of Keith B. Leffler, Ph.D., dated July 15, 2026), Table 1.

[22] *Id.* ¶ Table 2.

[23] Amended Settlement, ECF No. 9692-2 at ¶¶ 26-27, 75-76.

[24] Amended Settlement ¶¶ 31, 80.

*Id*.

Things have changed. The substantial HAC relief means that surcharging is no longer the principal focus of the settlement. And that is not all. The Amended Settlement also substantially strengthens the surcharging relief. The Amended Settlement permits merchants to surcharge Visa and Mastercard cards up to the cost of acceptance or 3%, whichever is lower, regardless of whether they accept or surcharge American Express or other payment cards.[25] This relief fully responds to the Court's prior concerns about surcharging being limited to 1% for merchants that accept American Express. *See id.*

The substantial HAC and other non-surcharging relief also address the Court's concern that the prior agreement was "virtually worthless" to merchants in states that prohibit surcharging. *See Payment Card*, 2024 WL 3236614, at *38 (quoting *Payment Card*, 827 F.3d at 238); *see also* Prelim. Appr. Order at 27, 2026 WL 1662251, at *14. The Court analyzed the relief for merchants in these contested states *in the absence of "most other forms of relief*." *Payment Card*, 2024 WL 3236614 at *27. Under the Amended Settlement, merchants in states that restrict surcharging will nevertheless benefit by being able to decline Commercial credit cards and/or Premium consumer credit cards (or threaten to do so); use dual-price posting to effectively surcharge in compliance with state laws; discount to steer customers to the new Standard consumer credit cards; discount by issuer; selectively decline digital wallets; steer to a particular credit card (by brand, product, or issuer) in the gray area between surcharging and discounting; and get the benefit of the immediate rate caps and rollbacks. Additionally, the Amended Settlement provides dedicated funds and a specified program to support merchants in states that restrict surcharging.

---

[25] Amended Settlement, ECF No. 9692-2 at ¶¶ 39-41, 88-90. The 3% maximum is appropriate because it is sufficient to recover the costs of acceptance in the vast majority of instances.

***The Few Remaining Restraints***

While the Amended Settlement secures considerably broader relief than the prior settlement, it does not secure everything the plaintiffs wanted—as is natural for a settlement. The only significant challenged restraints that the Amended Settlement does not reform are the HAC rules at the issuer level[26] and the prohibition on surcharging at the issuer level.[27] Those restraints are relatively insignificant in the broader context of the Amended Settlement's reforms. Indeed, the Court expressed that if the case proceeded to trial and ERCPs prevailed on liability, the Court would "want to make as little change as possible [in the HAC rules] to restore competition rather than go [at] it with a meat cleaver." Prel. Appr. Hearing Tr. at 60:10-12.

In granting preliminary approval, the Court again emphasized that "there is a legitimate risk that Plaintiffs will not be able to establish liability at trial. … There is also a risk, a bigger one in comparison, that Plaintiffs will not secure the relief that the Amended Settlement offers, much less the additional relief on which the objectors insist." Prelim. Appr. Order at 22, 2026 WL 1662251, at *12. Accordingly, "the presence of that [more extreme] relief cannot be the standard for settlement approval, especially considering the other substantial relief that the Amended Settlement provides." *Id.* at 23, 2026 WL 1662251, at *12.

Moreover, the Amended Settlement provides many other avenues for merchants to generate competition among the issuers: merchants can discount by issuer, steer by issuer in the gray area between surcharging and discounting, get lower rates from an issuer by promoting

[26] The Court disagreed with objectors that the preservation of the Honor All Issuers rule is a "fatal flaw." Prelim. Appr. Order at 23, 2026 WL 1662251, at *12. The Court expressed skepticism regarding objectors' arguments for repeal of the rule and found that issuer-level discounting would enable merchants to spur competition among issuers for better rates. *Id.*

[27] The Court noted that "not much can be done about the small handful of states that prohibit surcharging," and explained that surcharging is not the "central relief" offered by the Amended Settlement; that is the amendment of the Honor All Cards rules. *Id.* at 14.

issuance of its new Standard cards, and accept a digital wallet sponsored by a particular issuer. And those are just a subset of a broader suite of relief that permits merchants to selectively decline Commercial credit cards; selectively decline Premium consumer credit cards; conduct pilot programs to test non-acceptance or other steering methods; use dual pricing; surcharge by brand or product regardless of whether they also surcharge American Express; discount by brand, product, or issuer; selectively non-accept, surcharge, or discount by product category to steer customers to Standard consumer credit cards over higher-cost cards; and decline digital wallets regardless of whether they contain any of the networks' cards.

The Class would be prepared to aggressively seek additional issuer-level HAC relief at trial. But it should not do so; as this Court has recognized, seeking that relief would present an even "bigger [risk]" than establishing liability. Prelim. Appr. Order at 22, 2026 WL 1662251, at *12. The Class would be risking that it would not get "the relief that the Amended Settlement offers, much less the additional relief on which the objectors insist." *Id.* Given the Amended Settlement's wide and varied set of competitive tools, Professors Stiglitz and Leffler conclude that any anticompetitive effect of the remaining restraints should be "minimal," a conclusion consistent with views expressed by economists for other plaintiff groups in this litigation.[28] Furthermore, this Court has agreed with Defendants' contention that some of the relief that the Amended Settlement provides—including the temporary rate caps and rollbacks—would be unavailable through trial under any circumstances. *See* Prelim. Appr. Order at 22, 2026 WL 1662251, at *12 ("this is a type of relief that Plaintiffs cannot secure through trial, as courts lack the power to set rates or regulate prices").

The litigation risks to the Class associated with pursuing additional issuer-level relief are

[28] ECF No. 9692-3 ¶¶ 114-117.

high. These risks weigh heavily in favor of approval.

(c) Likely Appeals Magnify the Litigation Risks

Even if the Class prevailed at trial on both liability and the scope of relief, that would not be the end of the road; "it's a safe bet that if [plaintiffs] do succeed, the Networks will appeal." Prelim. Appr. Order at 22, 2026 WL 1662251, at *12; *accord Wal-Mart*, 396 F.3d at 118 ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

The risks on appeal would be substantial. *Court-imposed* relief of the nature and scope that the Amended Settlement provides—let alone additional issuer-level relief—would attract significant attention from the Court of Appeals and the Supreme Court. Evidence and analysis of issues such as market definition, the proper measure of output, and appropriate relief, would come under intense scrutiny. *Each* such issue would carry the risk that the Class would get less relief than the Amended Settlement delivers with certainty—or no relief at all.[29] This factor weighs in favor of determining that the settlement is fair, reasonable, and adequate and should be finally approved.

(d) Whether Defendants May Be Able to Withstand a Greater Judgment Does Not Undercut the Reasonableness of the Amended Settlement

The history of antitrust class actions is long on precedent for settlements that were approved because they delivered meaningful relief, even when the defendants were large

---

[29] *See Payment Card*, 2024 WL 3236614, at *22 (citing *Sykes*, 2016 WL 3030156, at *12 ("[E]ven if [Class] Plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.") (alterations in original)). The long delay caused by continuing this litigation through trial and appeals also weighs in favor of approving the Amended Settlement and its immediate and certain relief. *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013); *Aramburu v. Healthcare Fin. Servs., Inc.*, 2009 WL 1086938, at *3 (E.D.N.Y. Apr. 22, 2009); *Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 27 (E.D.N.Y. 2007).

corporations with sufficient coffers to potentially provide more relief. *See Wal-Mart*, 396 F.3d at 119 (approving settlement over objection that additional contributions from card-issuing banks could have yielded an even larger settlement fund). This case is no exception. The fact that the Defendants theoretically could have provided more in a fully litigated judgment, many years in the future, does not render this unprecedented settlement unreasonable. In any event, this factor alone does not undercut the fairness of an otherwise exemplary settlement. Prelim. Appr. Order at 28-29, 2026 WL 1662251 at *15; *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012).

#### 2. The Amended Settlement Treats Class Members Equitably Relative to Each Other

Under well-settled Second Circuit law, "[i]t bears emphasis that Rule 23(e)(2)(D) requires that class members be treated *equitably*, not identically." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023) (emphasis in original). Although every class member must receive "beneficial" relief, they can experience that relief differently. *Sykes*, 780 F.3d at 97; *see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 n.28 (2d Cir. 2020) ("That means that different class members can benefit differently from an injunction."). While a class member must stand to benefit from a settlement, "some" benefit is enough. *Sykes*, 780 F.3d at 98 (citing *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir. 2014)). An injunction that sweeps broadly to "provide relief to each member of the class" passes muster; a settlement can be adequate even if some class members cannot or will not take advantage of every aspect of its relief. *Wal-Mart Stores*, 564 U.S. at 360; *Sykes*, 780 F.3d at 98; *Amara*, 775 F.3d at 522.

The extent and nature of the Amended Settlement's relief responds to Judge Brodie's concern that the prior agreement provided more relief to small merchants compared to large merchants. *Payment Card*, 2024 WL 3236614, at *35-40. The prior agreement did not provide rate

rollbacks to merchants that have negotiated rates (large merchants) rather than posted rates. *Id.* The Amended Settlement solves that problem by providing a pro rata reduction for merchants with negotiated rates.[30] *See* Prelim. Appr. Order at 27, 2026 WL 1662251 at *14 ("The Amended Settlement addresses this issue: merchants with negotiated rates will get a *pro* rata reduction."). Judge Brodie also asserted that large merchants are more likely to accept American Express and therefore be limited to surcharging at the prior agreement's 1% cap. *Payment Card*, 2024 WL 3236614, at *35-40. The Amended Settlement eliminates that issue too. *See* Prelim. Appr. Order at 27, 2026 WL 1662251, at *14. Finally, Judge Brodie asserted that large merchants are more likely to operate in states that prohibit surcharging. *Payment Card*, 2024 WL 3236614, at *35-40. But state no-surcharge statutes purport to prohibit a multi-state merchant from surcharging only in that state, not nationwide. Regardless, the Amended Settlement comprehensively responds to the state-statute issue. *See* Prelim. Appr. Order at 27, 2026 WL 1662251 at *14.

The Amended Settlement does not improperly favor small (or large) merchants.[31] While certain provisions, such as buying groups or merchant education, may be more attractive to smaller merchants, they impose no burden on large merchants, do not diminish the relief available to them, and in fact work to reinforce the relief available by increasing the number of merchants likely to take advantage of the modified rules. "Rule 23(e)(2)(D) . . . requires the settlement to treat class members equitably relative to one another, not for each class member to receive identical relief." *Sweet v. Cardona*, 641 F. Supp. 3d 814, 832 (N.D. Cal. 2022).

As this Court recognized in granting preliminary approval, "[a]rguably, the central relief

---

[30] Amended Settlement ¶¶ 49, 98.

[31] The Court found that the Amended Settlement is not "size-relative." *See* Prelim. Appr. Order at 28, 2026 WL 1662251, at *15 ("For what it's worth, nearly every objection raised by Walmart appeared in the objection-letter of a small merchant.").

offered by the Amended Settlement is repeal of the Honor All Cards rule . . . whether all merchants *can* avail themselves of that relief, the answer is clearly yes. Besides, the choice not to . . . is a sign of competition." Prelim. Appr. Order at 27, 2026 WL 1662251, at *15. This factor weighs in favor of approval.

#### 3. The Release Is Appropriate and Supports Final Approval

Another factor considered by courts is the appropriateness of the agreed releases. *See, e.g.*, *Payment Card*, 2024 WL 3236614, at *34-35. There is no basis to revisit the Court's preliminary conclusion that the "release, which is identical in all material respects to the one from the First Settlement, is acceptable for the reasons that the Court previously found." Prelim. Appr. Order at 25, 2026 WL 1662251, at *13. The release expressly provides that it extends only to "the fullest extent permitted by federal law," Amended Settlement ¶ 116(a), and "contains the 'de-facto severability clause' described by the Second Circuit, which provides that the release 'shall extend to, but only to, the fullest extent permitted by federal law.'" Prelim. Appr. Order at 25, 2026 WL 1662251, at *13 (quoting *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 720 (2d Cir. 2023)).

#### 4. The Proposed Attorneys' Fees and Class Representative Service Awards Are Appropriate

Under the Amended Settlement, within twenty days of the Court's approval of any attorneys' fees application, Defendants will pay the approved amounts up to $206,000,000.[32] The Amended Settlement defines "Attorneys' Fees and Expenses" to include "any incentive or service awards to be paid to a Rule 23(b)(2) Class Plaintiff."[33] In the negotiations, the parties discussed the terms of the Networks' payment of attorneys' fees and any approved service awards only after

[32] Amended Settlement ¶ 11.

[33] Amended Settlement ¶ 1(c).

reaching final agreement on all the Amended Settlement's substantive terms. *See* Prelim. Appr. Order at 24, 2026 WL 1662251, at *9.

In granting preliminary approval, the Court concluded that "the terms of any proposed award [of] attorneys' fees raises no issues with respect to whether the interests of the class members are adequately protected." *Id.* at 24, 2026 WL 1662251, at *13.

As explained in detail in the Memorandum of Law in Support of Equitable Relief Class Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards (filed contemporaneously herewith), the proposed attorneys' fees and Class Representative service awards are in line with those in other similar cases and commensurate with the efforts invested in this case, the complexity and scope of this matter, the high level of risk involved, and the results achieved. These requests are reasonable and support final approval of the Amended Settlement.

#### 5. No "Side Agreements" Exist Between Co-lead Counsel and Other Individuals or Entities

No "side agreement" exists involving class counsel or class representatives in connection with the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

## IV. NOTICE IS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS

Due process requires that class members receive "the best notice practical under the circumstances." *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993). "Best notice practical" does not impose any "rigid rules" on class notice, but instead imposes a "reasonableness" standard that is met when the notice campaign "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). The contents of a notice are adequate when they explain the general terms of the settlement and the proposed attorney fees, along with the date, time, and

place of the fairness hearing, in a way that may be "understood by the average class member." *Id.* at 114; *Charron*, 874 F. Supp. 2d at 191.

The notice program satisfies these criteria and was commensurate with the magnitude of this case, the Class size, and this settlement. It included: (i) Publication Notices placed in National Business Publications, National Trade and Specialty Publications, Local Business Journals, Specialty Language and Targeted Newspapers, and U.S. Territory Newspapers; (ii) an all-encompassing Digital Notice Campaign using banner display notices, social media, podcast and streaming TV advertisements, and targeted website placements; (iii) audio advertisements over Streaming and Satellite Radio; (iv) a Case Website containing all pertinent information and documents related to the Amended Settlement, including a long-form Website Notice, as well as a toll-free telephone number, email and postal address to contact for information regarding the Amended Settlement; (v) Sponsored Search Listings on the three most highly visited search engines that includes links to the Case Website; and (vi) a nationwide Informational Release that includes the Case Website address and the toll-free telephone number to call for information about the Amended Settlement.[34]

The media notice is estimated to reach approximately 82.2% of all U.S. Business Owners with an average frequency of 4.5 times, and 84.8% of all U.S. Adults in Business and Finance Occupations with an average frequency of 4.1 times.[35] Such extensive use of print publications and technological and digital means provides reasonable notice to the class.[36] Individual notice to

---

[34] *See* Declaration of Cameron R. Azari, Esq., On Proposed Class Notice Plan ("Azari Decl."), ECF No. 9692-3.

[35] Azari Decl. ¶ 21.

[36] *See. e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 275 (E.D.N.Y. 2021) ("Where plaintiffs' digital plan will reach 80 percent of the class, requiring them to supplement the plan with individual notice is unnecessarily burdensome."); *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("In view of the millions

*(footnote continued on next page)*

12 million class members was unnecessary because: (i) the Class has already been certified, (ii) there are no claim forms or opt-out forms to be disseminated, and (iii) the Notice Plan provides extensive reach. The Notice Plan provides the best practicable and appropriate notice to the Class.[37]

As to the substance of the Notices, the Publication Notice and Website Notice inform class members of the nature of the action, the terms of the Amended Settlement, the availability of information about the Amended Settlement on the Settlement Case Website or from a toll-free telephone number and address for the Settlement Administrator, and an opportunity to be heard at the fairness hearing. The Notices describe basic information in plain, clear terms, including the Class claims, the Class definition, potential attorneys' fees and expense awards, potential Class Representative service awards, the date and location of the final approval fairness hearing, and Class members' right to object to any aspect of the Amended Settlement.[38] The Notices satisfy Rule 23(e)(1) and due process.

In light of the extensive notice campaign (including the published notice), the class notice efforts support final approval.

## V. THE REACTION OF THE CLASS AT THIS TIME FAVORS APPROVAL

Although the notice period is ongoing, the initial reaction to the settlement favors final approval. As of today, approximately 40 merchants have objected. *See* Prelim. Appr. Order at 1, 2026 WL 1662251, at *1. This represents a small percentage of the approximately 12-million-member Class. The majority of the objections received to date are boilerplate objections copied from trade associations' templates, many of which are factually inaccurate. *See Payment Card*,

---

of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate. The publication notice ordered is appropriate and sufficient in the circumstances.").

[37] Azari Decl. ¶ 12.

[38] *Id.*

986 F. Supp. 2d at 223 (discounting value of boilerplate objections). The small number of objectors to this point therefore supports final approval. *See id.*; 4 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.41, at 108 (4th ed. 2002) ("[A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members."). The Court recognized as much in granting preliminary approval. *See* Prelim. Appr. Order at 1, 2026 WL 1662251, at *1 ("In a case as protracted and expansive as this one, it is unsurprising that the Court received nearly 40 objection-letters to the Amended Settlement.").

Moreover, the Court explained that "even on a motion for final approval, the Court's responsibility is not to determine whether the settlement is ideal by class members' varying standards, but whether it is fair, reasonable, and adequate under the Rule 23(e)(2) standards." *Id.* As shown above, the Amended Settlement satisfies that criterion.

ERCP and ERCC will respond to any timely objections in their reply memorandum in support of final approval.

## VI. CONCLUSION

After more than a decade of litigation, ERCP and ERCC are well aware of the risks involved in pursuing this litigation further. The adversarial process has functioned as it should to produce an arm's-length settlement agreement that delivers unprecedented, certain, immediate relief to the merchant community. By any measure, the Amended Settlement is fair, reasonable, and adequate and ERCPs respectfully request that the Court finally approve it.

Dated: July 15, 2026

Respectfully submitted,

*/s/ Robert G. Eisler*

Robert G. Eisler
Chad B. Holtzman
GRANT & EISENHOFER P.A.
485 Lexington Ave., 29th Floor

New York, NY 10017
(646) 722-8500
reisler@gelaw.com
choltzman@gelaw.com

Steve D. Shadowen
Tina J. Miranda
HILLIARD SHADOWEN LLP
1717 W. 6th Street, Suite 290
Austin, TX 78703
(855) 344-3298
steve@hilliardshadowenlaw.com
tmiranda@hilliardshadowenlaw.com

Michael J. Freed
William H. London
Robert J. Wozniak
JUSTICE JAGHER LONDON & MILLEN LLC
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
(224) 632-4500
mfreed@fklmlaw.com
wlondon@fklmlaw.com
rwozniak@fklmlaw.com

Linda P. Nussbaum
Susan R. Schwaiger
Lauren M. Kostman
NUSSBAUM LAW GROUP, P.C.
1225 Franklin Ave.
Garden City, NY 11530
(917) 438-9189
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com
lkostman@nussbaumpc.com

*Equitable Relief Class Counsel*