**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | Case No. 05-md-01720 (BMC) (JAM) |
| This Document Applies to: *Potayto-Potahto, LLC, et al. v. Visa Inc., et al.*, No. 26-cv-04885 (EDNY) | ORAL ARGUMENT REQUESTED |

**VISA AND MASTERCARD DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR INJUNCTION COMPELLING DISMISSAL OF RELEASED CLAIMS**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................2

      A.     The Class Was Adequately Represented ................................................................2

      B.     The Class Received No Inequitable Treatment ......................................................7

      C.     The Future Release Satisfies the Identical Factual Predicate Doctrine ...................9

      D.     The Future Release Is Consistent with Public Policy ...........................................10

      E.     At Minimum, the Release Is Lawful as Applied to Plaintiffs ................................11

CONCLUSION .......................................................................................................................12

**Page(s)**

**Cases**

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013)............................................................................3, 7, 8

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..........................................................................3, 4, 5, 7

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ...........................................................................2, 5, 11

*Freeman v. MML Bay State Life Ins. Co.*,
445 F. App'x 577 (3d Cir. 2011)...........................................................................7, 9

*Hesse v. Sprint*,
598 F.3d 581 (9th Cir. 2010) ............................................................................11, 12

*Huyer v. Van de Voorde*,
847 F.3d 983 (8th Cir. 2017) ....................................................................................2

*In re Auction Houses Antitrust Litig.*,
2001 WL 170792 (S.D.N.Y. Feb. 22, 2001), *aff'd,* 42 F. App'x 511 (2d Cir.
2002) ........................................................................................................................9, 10

*In re Blue Cross Blue Shield Antitrust Litig., MDL 2406*,
85 F.4th 1070 (11th Cir. 2023) ..........................................................................7, 10

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011).................................................................... *passim*

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 ......................................7, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ......................................................8, 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024) .........................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).................................................................................2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016)............................................................................3, 4

*Lawlor v. National Screen Service Corp.*,
349 U.S. 322 (1955).............................................................................................10

*Melito v. Experian Marketing Solutions., Inc.*,
923 F.3d 85 (2d Cir. 2019)......................................................................6, 7, 8, 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985).............................................................................................10

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ..................................................................................7

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ................................................................................7

*Musselman v. Blue Cross & Blue Shield of Ala.*,
2013 WL 4496509 (S.D. Fla. Aug. 20, 2013), *aff'd*, 684 F. App'x 824 (11th
Cir. 2017) ...............................................................................................................7

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982)..................................................................................9

*US Airways, Inc. v. Sabre Holdings Corp.*,
105 F. Supp. 3d 265 (S.D.N.Y. 2015), *aff'd,* 938 F.3d 43 (2d Cir. 2019) ...............................10

*Williams v. Gen. Elec. Cap. Auto Lease, Inc.*,
159 F.3d 266 (7th Cir. 1998) ................................................................................7

*Wolfert ex rel. Est. of Wolfert v. Transamerica Home First, Inc.*,
439 F.3d 165 (2d Cir. 2006)........................................................................2, 3, 11

## Other Authorities

Rule 23 ............................................................................................................1, 2, 7

# PRELIMINARY STATEMENT

Plaintiffs' reply makes clear that the Future Release lawfully applies to *them*. They do not contend that *they* are "new merchants" or that *they* were inadequately represented. They do not contend that *they* sacrificed more for future transactions than was justified by their recovery for past transactions. Instead they advance radical theories—that future releases are *per se* invalid and inequitable any time the effects cannot be precisely quantified for every class member *ex ante*, and that a release must be stricken as to all 12 million class members if it would potentially be unfair as applied to anyone.

Second Circuit caselaw and the Court's decisions approving the Settlement Agreement and Future Release (which Plaintiffs all but ignore) foreclose Plaintiffs' theories. Plaintiffs cannot simply wish away the mountain of caselaw approving future releases under Rule 23 and the identical factual predicate doctrine. *First*, Plaintiffs cannot show inadequate representation. Plaintiffs cannot coherently articulate *who* qualifies as an "unrepresented" new merchant, and in any event, so-called "new merchants" and "old merchants" are not fundamentally antagonistic to each other because they all share interests in past and future transactions. *Second*, the class received equitable treatment. Precedent requires fair and rational, not perfect or identical, treatment of settling class members. It was rational for the class representatives to agree to compromise uncertain future claims, for a limited period, in return for increased compensation for every class member. *Finally*, application of the Future Release to a conceded copy-cat action—challenging the continuation of conduct the class settled—comports with the identical factual predicate doctrine and public policy. If Plaintiffs' speculative complaints could undo a class action settlement years later, such settlements would be impossible.

## ARGUMENT

In *Fikes*, the Second Circuit "affirm[ed] in all respects the district court's orders," with one relevant exception, which it did not decide: whether applying the release in a particular "as-of-yet hypothetical" factual context violates "federal law." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023). *Fikes* thus affirmed Judge Brodie's findings that *all* class members were adequately represented and equitably treated; final approval could not have stood otherwise.

But if this Court reconsiders those questions anew, it should reach the same conclusion Judge Brodie did: due process and Rule 23 are satisfied, the settlement's benefits to the class justified the time-limited Future Release, every class member received additional compensation enabled by the Future Release, and the identical factual predicate doctrine permits the release of claims based on the continuation of settled conduct. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig. ("Payment Card")*, 330 F.R.D. 11, 46 (E.D.N.Y. 2019).

### A.      The Class Was Adequately Represented

1.      Plaintiffs' concession that *they* are not among the allegedly inadequately-represented "new merchants" group dooms their adequacy argument. Pls. Opp. ("Opp.") 2. The "adequacy-of-representation determination turns on whether the interests of the class were 'compatible' with those *of the party attempting to attack the class action judgment collaterally*." *Wolfert ex rel. Est. of Wolfert v. Transamerica Home First, Inc.*, 439 F.3d 165, 173 (2d Cir. 2006) (emphasis added). An absent class member may not collaterally attack a final class judgment if he is *not* an "absent party denied [adequate] representation." *Id.* at 171. Plaintiffs could not have objected directly on the theory that other class members were inadequately represented, *e.g.*, *Huyer v. Van de Voorde*, 847 F.3d 983, 986-87 (8th Cir. 2017), and

2

sandbagging Defendants with a collateral attack seven years later does not improve their position.

2.      Plaintiffs' argument would fail even if they could assert inadequacy on behalf of a "new merchant" subclass of which they are not part.  Only "fundamental" conflicts disqualify class representatives, *Payment Card*, 827 F.3d 223, 232-33 (2d Cir. 2016); the law requires "compatible" interests, not identical ones, *Wolfert*, 439 F.3d at 173.  Second Circuit cases finding inadequate representation have involved "glaring" "fault lines" between discrete, easily identifiable groups with actively conflicting and "antagonistic" interests.  *Payment Card*, 827 F.3d at 232-33; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  Plaintiffs bear the burden of showing a concrete, non-speculative conflict.  Defs.' Br. 13-14.

But Plaintiffs effectively disclaim any ability to prove that "new" and "old" merchants are so distinct as to be fundamentally antagonistic to one another.  Plaintiffs assert that "new" merchants are *not* a "discrete subclass" and cannot say "*when* [new merchants'] interests become antagonistic to those of the class representatives."  Opp. 3.  A conflict cannot be "fundamental" if Plaintiffs cannot identify who falls in the competing camps.

*Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013), demonstrates the point.  *Charron* rejected an inadequate representation argument because the allegedly disfavored group was not a "unique subclass" and the objectors were "unable to quantify how many class members" even qualified.  731 F.3d at 251-52.  Plaintiffs' inability to "estimate with any reliability the number of class members" whose interests were fundamentally distinct from those of the class representatives defeated their argument that there *was* such a group.  *Id.*  So too here, where Plaintiffs say there is a "spectrum" of interests rather than definable subgroups.  Opp. 3.

Nor does agreeing to a future release render adequate class representatives inadequate. Whether the class representatives are free of fundamental conflicts is assessed "independently" of the fairness of particular settlement provisions. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011).

3. Even if Plaintiffs could define a discrete group of "new merchants," their inadequacy claims still would fail. A class representative is adequate when it possesses the claims of the subset and has the "incentive to vigorously pursue" those claims. *Denney*, 443 F.3d at 269. The (b)(3) class representatives here possessed both past claims and future claims, just like all "new merchants." Plaintiffs' own cases (Opp. 4) confirm that inadequacy arises only when class representatives and class members do not share the same claims. When the Second Circuit disapproved a prior settlement involving both (b)(3) and (b)(2) claims, it found inadequate representation because (b)(3) class representatives who only had monetary claims were seeking to represent (b)(2) class members who were ineligible for monetary relief. 827 F.3d at 233-34. Similarly, *Literary Works*, which involved a settlement fund to be allocated among three categories of copyright infringement claims, found inadequate representation because class representatives with multiple claim categories could not adequately represent a subgroup with only one category. 654 F.3d at 251-52, 254.

Plaintiffs assert that a "temporal" difference in claims is equivalent to the conflict discussed in *Literary Works*. Opp. 4 n.2. But there are no class members here who *only* held future claims, akin to the "Category C-only" claimants in *Literary Works*. 654 F.3d at 254. And *Literary Works* confirms that temporal differences are permissible. It upheld the future release as to those who held the same claim categories as the class representatives—even though certain class members,

such as those with more recent works, inevitably had a lower ratio of pre-settlement to post-settlement infringement claims than others. *Id.* at 248-49.

4.      In any event, the theoretical divide between "new" merchants and "old" merchants rests on pure speculation. Plaintiffs present no evidence that any "new" merchant would have been better off—and would have known that in 2019—by receiving *less money* for past transactions in return for retaining claims based on uncertain future transactions. Defs.' Br. 16.

Nor do Plaintiffs demonstrate any "fundamental" fault line between "new" and "old" merchants. Settlement compensation varies by the amount of card transaction fees, not the length of a class member's "period" in business. *Contra* Opp. 3-4. That reality belies Plaintiffs' invented, evidence-free assertion that "old merchants" "stood to receive 'the lion's share of any extra cash.'" Opp. 4. A "new" merchant with $2 million in credit card fees in 2018 received more than an "old" merchant with $100,000 annually in card fees in 2011-2018. Perhaps recognizing as much, Plaintiffs no longer press the argument that "new" merchants as a class "categorically" gave up more than "old" merchants in return for less. Opp. 4.[1]

Plaintiffs deflect by saying adequacy is assessed "at the time of settlement," not by evaluating actual impact *post-hoc*. Opp. 5. But that proves Defendants' point. At settlement and preliminary approval, the value of all future claims was speculative, with no group categorically more likely to have more or fewer future transactions. That means any conflict was at best a "potential" one. *Denney*, 443 F.3d at 268. And that is why a "rational" "new" merchant, uncertain of its transactions over the next several years or the value of potential future

---

[1] This concession also undermines Plaintiffs' reliance on Judge Jacobs' concurrence in *Fikes*, which accepted *arguendo* the proposition that "newer merchants," as a category, could be said to "gain only marginally." 62 F.4th at 730.

claims, might sacrifice "years of future claims" for the certainty of past compensation. *Contra* Opp. 5. This case accordingly does not present the *Literary Works* problem, where a class member could not "choose to sacrifice their Category C claims in exchange for more favorable compensation on their Category A and B claims," because they had none of the latter claims. *Literary Works*, 654 F.3d at 251-52.

5.      Plaintiffs' theory would render all future releases impermissible, contravening overwhelming Second Circuit precedent. Different class members routinely can expect differing quantities of future transactions, meaning that a future release will always "privilege[] some class members over others" in the same way Plaintiffs say this one does. Opp. 6. Some class members die. Others go out of business. Those inevitable differences do not create inadequacy.

In *Melito v. Experian Marketing Solutions., Inc.,* 923 F.3d 85, 89-90 (2d Cir. 2019), for example, each class member recovered for a single spam text message and relinquished claims for future spam texts. That release was permissible even though class members who could expect to receive comparatively more spam text messages in the future gave up more than other class members for the same compensation. Plaintiffs' assertion that "every class member shared the same risk of receiving additional spam messages," Opp. 6, is untrue; class members received varying numbers of past spam texts over varying periods. *See* Consol. Class Action Compl., ECF 119, *Melito v. American Eagle Outfitters, Inc.*, No. 14-cv-2440 (S.D.N.Y. June 26, 2015). Plaintiffs also say that the *Melito* compensation structure was not *pro rata*, but if anything that makes any "mismatch" (Opp. 6) *worse*. Small businesses in the settlement class here received compensation for a smaller quantity of past transactions and gave up claims on a smaller quantity of future transactions than big-box stores. In *Melito*, however, frequent spam recipients received

the *same* compensation as infrequent recipients but sacrificed claims based on a greater number of future transactions.

Nor is *Melito* an outlier. Courts routinely approve future releases where settlement compensation is based on past incidents that may not perfectly mirror future ones. *See, e.g.*, *Literary Works*, 654 F.3d at 246, 248; *In re Blue Cross Blue Shield Antitrust Litig., MDL 2406*, 85 F.4th 1070 (11th Cir. 2023); *Musselman v. Blue Cross & Blue Shield of Ala.*, 2013 WL 4496509 (S.D. Fla. Aug. 20, 2013), *aff'd*, 684 F. App'x 824 (11th Cir. 2017); *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577 (3d Cir. 2011); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350 (6th Cir. 2009); *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998).

6. If Plaintiffs truly believed that their claims were not represented, "the appropriate course of action was to timely opt out of the Class," not to "manufacture an intra-class conflict" to try to undo the bargain years later. *Payment Card*, 2024 WL 4224160, at *15 (E.D.N.Y. Sept. 18, 2024). Plaintiffs cannot assert on the one hand that they would have needed a "team of lawyers" to advise them to opt out and on the other hand that the conflict between "new" merchants and "old" merchants was so obvious and "fundamental" that any "rational class member" would have opted out. Opp. 3, 5. And numerous cases hold that the availability of an opt-out is relevant to the inadequacy inquiry or the enforceability of a release. Defs.' Br. 18 (citing three cases that Plaintiffs ignore); *see also Denney*, 443 F.3d at 269.

**B.      The Class Received No Inequitable Treatment**

"Rule 23(e)(2)(D) requires that class members be treated *equitably*, not identically," *Moses v. New York Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023), and courts recognize that "settlement requires compromises by both sides," *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721. "All class settlements value some claims

7

more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments." *Charron*, 731 F.3d at 253-54. For that reason, an allocation need only be "rationally based on legitimate considerations," *PaineWebber*, 171 F.R.D. at 131, and an objector's "speculative" assertion that certain claims would be worth more than others is not sufficient to show inequitable treatment, *id.* at 134-35.

It was at minimum "rational" and "legitimate" for the class representatives to conclude that the Future Release was justified by the higher settlement value it enabled, and to distribute that value *pro rata* based on known on past transactions rather than guesswork about future transactions. Ignoring the governing standards, Plaintiffs claim that future releases are inequitable *whenever* the quantity or value of class members' future claims might diverge. Opp. 2-3, 7-8. That is irreconcilable with Second Circuit law permitting future releases. Every future release requires class members to give up future claims of unknown and potentially differing value. *See, e.g.*, *Melito*, 923 F.3d at 95-96.

Nor is this "precisely the problem identified" in *Super Spuds*. *Contra* Opp. 8. Plaintiffs have no response to *Wal-Mart*, which cabined *Super Spuds* to a specific factual circumstance not present here: that the class representatives did not hold and thus could not assert a claim category held by absent class members. Defs.' Br. 20. And contrary to Plaintiffs' insistence that "some members" did not receive compensation for the release of future claims, Opp. 8, the settlement fund, and thus *every* class member's *pro rata* compensation, was larger because of the Future Release. Plaintiffs offer no reason to depart from the Court's prior analysis of this issue, which they do not even acknowledge. *Payment Card*, 2019 WL 6875472, at *27 (E.D.N.Y. Dec. 16, 2019).

**C. The Future Release Satisfies the Identical Factual Predicate Doctrine**

The identical factual predicate doctrine is satisfied where released future claims are "based on a continuation of the conduct at issue." *Payment Card*, 2019 WL 6875472, at *25. These claims, based on the same allegations the class pursued, undisputedly satisfy that standard. Defs.' Br. 21-22.

Yet again, Plaintiffs' contrary argument rests on the proposition that future releases are categorically impermissible. Plaintiffs argue that their post-September 2019 claims require "proof of further facts" like new transactions and the continuation of the same "allegedly anticompetitive conduct." Opp. 9-10. But that kind of new "fact" is present in any future release case. Under their theory, the *Melito* and *Literary Works* future releases were illegal because every future text message or future use of a copyrighted work was a "further fact" to be proven. *But see Melito*, 923 F.3d at 95-96; *Literary Works*, 654 F.3d at 248; *see also Freeman*, 445 F. App'x at 580 (party cannot "plead around" a release "merely by asserting that some facts associated with his claim occurred outside of the class period"). The identical factual predicate doctrine considers the "gravamen" of claims. *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460-61 (2d Cir. 1982).

Plaintiffs say the settlement in *TBK* treated class members "identically." Opp. 9. But it did so in the same way this settlement does: class members received *pro rata* compensation based on share quantity. The *release* did not treat all members identically: it released separate appraisal claims that "had not [yet] matured" at settlement and that only some members (those who "dissented" to a merger price under state law) could assert. *Id.* at 459-60. And *Super Spuds* (discussed earlier) and *Auction Houses* did not involve future releases at all. The problem in *Auction Houses* was that the "expanded release [did not] require[] the allocation of at least some of the settlement consideration to the holders of the claims prejudiced by the expansion." *In re*

*Auction Houses Antitrust Litig.*, 2001 WL 170792, at *13 (S.D.N.Y. Feb. 22, 2001), *aff'd,* 42 F. App'x 511 (2d Cir. 2002). As explained, that is not true here. Plaintiffs also argue that class members who "went out of business had no interest" in future claims. Opp. 9. But the always-present possibility that a class member will go out of business cannot categorically foreclose the class representatives from offering a future release in exchange for a larger settlement fund.

**D.      The Future Release Is Consistent with Public Policy**

Numerous cases from the Second Circuit and elsewhere have approved time-limited releases of future antitrust claims as consistent with public policy. Defs.' Br. 23; *see also, e.g.*, *US Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 279 (S.D.N.Y. 2015), *aff'd,* 938 F.3d 43 (2d Cir. 2019). Plaintiffs say that all these decisions violated *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955). That is meritless. *Lawlor* limited itself to the "the circumstances of [that] case," which involved a claim of indefinite future immunity that was not intended by the settling parties. *Id.* at 323, 327-30. A negotiated, time-limited release in exchange for greater compensation to the alleged victims of the antitrust violation does not grant "immunity" from antitrust liability, any more than a release of *past* claims does. Nor is a settlement akin to a "prospective waiver" of all antitrust remedies. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985).

Plaintiffs offer no support for their assertion that *Blue Cross* is "an outlier." Opp. 10 n.5. They seek to distinguish it on the ground that the settlement involved injunctive relief, but the settlement also allowed various challenged practices to "remain in place." 85 F.4th at 1085. In any event, following the (b)(3) settlement here, Defendants spent years negotiating with the (b)(2) class and agreed to injunctive relief, which this Court preliminarily approved. *See* ECF 9884. It was not unlawful or violative of public policy for Defendants to pay billions of dollars to obtain peace against damages claims while the injunctive relief claims were being litigated.

10

### E. At Minimum, the Release Is Lawful as Applied to Plaintiffs

Although the Court should require dismissal of this lawsuit because the Future Release is lawful as applied to all class members, Plaintiffs certainly have no argument that *they* are not bound by it. Plaintiffs are not "new merchants," and they do not even allege that sacrificing future claims in return for a greater return on past ones was a bad deal for *them*.

Citing Judge Jacobs' concurrence in *Fikes*, Plaintiffs contend that the Future Release must be "stricken" for everyone if it is incompatible with federal law as applied to anyone. Opp. 2. But the nonbinding concurrence said only that it was "arguable" that the Future Release "should be stricken" and did not suggest that it could be stricken as to *everyone*. *Fikes*, 62 F.4th at 730.

In fact, the Future Release does not stand and fall as a unit: the release's provision about "extend[ing] to, but only to, the fullest extent permitted by federal law," ECF 7257-2, ¶ 31(a), means it *must* be applied to any class members and any conduct to which it may legally apply. If the identical factual predicate doctrine precludes application of the future aspects of the release to "new" merchants, that means the Future Release does not extend to them, not that it would be "stricken" for class members like Plaintiffs who do not claim to be "new" merchants.[2]

Precedent—and the policy against windfalls—confirms this result. In *Wolfert*, the Second Circuit confirmed that persons seeking to collaterally attack a settlement must show that the class's interests were incompatible with *their* interests. 439 F.3d at 171. Likewise, in *Hesse v. Sprint*, 598 F.3d 581 (9th Cir. 2010), a holding that class representatives did not adequately represent particular claims by particular class members meant *their* suit could proceed, not that

---

[2] Reflecting the importance of ensuring that Defendants obtain all the legal protections for which they bargained, the Agreement contains a robust *non*-severability clause: "The terms of this Superseding and Amended Class Settlement Agreement are not severable, but are interdependent and have been agreed to only as a whole. . . ." ECF 7257-2, ¶ 77.

the release was stricken for everyone.  *Id.* at 592.  Because Plaintiffs were adequately represented and articulate no theory under which *they* can escape the Future Release, their lawsuit cannot proceed.

## CONCLUSION

The Court should deny Plaintiffs' motion for partial summary judgment, grant Defendants' cross-motion to enforce the Settlement Agreement, and dismiss Plaintiffs' claims.

Dated:  August 14, 2026.          Respectfully submitted,

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/ Matthew A. Eisenstein*
    Anne P. Davis
    Matthew A. Eisenstein
    Rosemary Szanyi
    601 Massachusetts Avenue, NW
    Washington, DC   20001-3743
    (202) 942-5000
    anne.davis@arnoldporter.com
    matthew.eisenstein@arnoldporter.com
    rosemary.szanyi@arnoldporter.com

**HOLWELL SHUSTER & GOLDBERG LLP**

    Michael S. Shuster
    Demian A. Ordway
    Jayme Jonat
    425 Lexington Avenue
    New York, NY   10017
    (646) 837-5151
    mshuster@hsgllp.com
    dordway@hsgllp.com
    jjonat@hsgllp.com

*Counsel for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ William Michael*
    William Michael
    Brette Tannenbaum
    Nina Kovalenko
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Tel.: (212) 373-3000
    wmichael@paulweiss.com
    btannenbaum@paulweiss.com
    nkovalenko@paulweiss.com

    Donna M. Ioffredo
    2001 K Street, NW
    Washington, DC 20006-1047
    Tel.: (202) 223-7300
    dioffredo@paulweiss.com

*Counsel for Defendants Mastercard Incorporated and Mastercard International Incorporated*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the foregoing memorandum is 3,487 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: August 14, 2026

*/s/ Matthew A. Eisenstein*

Matthew A. Eisenstein