**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720<br>Docket No. 05-md-01720 (BMC-JAM) |
| This Document Relates To:<br><br>BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE,<br><br>Plaintiffs,<br>v.<br><br>VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY,<br><br>Defendants. | **OBJECTION TO CLASS COUNSEL'S MOTION FOR FEES AND REQUEST OF CERTAIN 7-ELEVEN PLAINTIFFS FOR SUCCESSFUL OBJECTOR FEES** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 9

I. THE 7-ELEVEN PLAINTIFFS SUBSTANTIALLY IMPROVED THE OUTCOME FOR THE CLASS. ........ 10

A. The 7-Eleven Plaintiffs Persuaded The Second Circuit To Overturn The Inadequate 2012 Settlement. ........ 10

B. The 7-Eleven Plaintiffs Overturned The Inferior 2024 Settlement. ........ 11

C. The 7-Eleven Plaintiffs Zealously Litigated Common Claims Throughout. ........ 12

II. SHIFTING $36 MILLION FROM CLASS COUNSEL TO THE 7-ELEVEN PLAINTIFFS IS AN APPROPRIATE REWARD FOR THEIR CONTRIBUTIONS TO THE CLASS. ........ 14

A. The $36 Million Award Avoids Unjustly Enriching Class Counsel. ........ 14

B. The $36 Million Request Is Appropriate Under The Percentage-Of-Benefit Method. 16

C. The $36 Million Is Reasonable Under The *Goldberger* Factors. ........ 17

CONCLUSION ........ 20

APPENDIX ........ 21

CERTIFICATE OF COMPLIANCE ........ 24

CERTIFICATE OF SERVICE ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Eubank v. Pella Corp.*,
No. 06-CV-4481, 2019 WL 1227832 (N.D. Ill. Mar. 15, 2019)................................ 14, 16

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ........................................................................ 3, 5, 13

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................ 17, 18, 19, 20

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ........................................................................ 19

*In re Holocaust Victim Assets Litig.*,
424 F.3d 150 (2d Cir. 2005)......................................................................... 9, 13

*In re Optical Disk Drive Prods. Antitrust Litig.*,
No. 10-MD-02143, 2021 WL 4124159 (N.D. Cal. Sept. 9, 2021) .................................... 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016)........................................................................ 3, 4, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) .................................................................. 3

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .................................... 4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2020 WL 29781 (E.D.N.Y. Jan. 2, 2020) .................................... 10, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2024 WL 1933086 (E.D.N.Y. May 2, 2024) ............................. 5, 9, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2024 WL 3236614 (E.D.N.Y. June 28, 2024) ........................ 6, 7, 8, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720, 2026 WL 1662251 (E.D.N.Y. June 9, 2026) ............. 4, 7, 8, 11, 12, 18

*In re Petrobras Sec. Litig.*,
786 F. App'x 274 (2d Cir. 2019) ......................................................................... 9

*In re S.S. Body Armor I Inc.*,
961 F.3d 216 (3d Cir. 2020)........................................................................ 11, 12

*In re Sw. Airlines Voucher Litig.*,
898 F.3d 740 (7th Cir. 2018) ........................................................................... 16

*In re Trans Union Corp. Priv. Litig.*,
629 F.3d 741 (7th Cir. 2011) ....................................................................... 14, 20

*Kaufman v. American Express Travel Related Servs., Co.*,
No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)............................................ 9

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 9

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015) ........ 16

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ........ 1, 16

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
623 F.3d 82 (2d Cir. 2010) ........ 12

*White v. Auerbach*,
500 F.2d 822 (2d Cir. 1974) ........ 9, 12

## INTRODUCTION

The settlement now before the Court is better than the one the Court rejected in 2024—and the credit for that goes to the objectors who fought for the improvement. As Equitable Relief Class Counsel themselves put it, "[t]he Amended Settlement directly addresses the concerns identified [earlier] while securing materially expanded and strengthened relief well beyond that contemplated by the 2024 proposal." Mem. in Supp. of Equitable Relief Class Pls.' Mot. for Attys' Fees, Expenses & Service Awards, Dkt. 9933-1, at 18 (July 15, 2026). The Class is getting greater relief only because objectors spoke up, and equity demands that they—not Class Counsel—be compensated for the improvement.

The merchants bringing this motion are not just successful objectors. They are also a subset of the "7-Eleven Plaintiffs"—a group of merchants that, for years, actively litigated the antitrust claims in this suit through their own counsel and at their own expense as the largest group of "Direct Action Plaintiffs" ("DAPs").[1] It is because of them (and other DAPs) that the case did not settle on worse terms back in 2012; it is because of their successful challenge to the 2024 settlement that the parties were forced to negotiate the better settlement now pending final approval; and it is because of their sustained, zealous litigation—and the tens of millions of dollars they risked out of pocket—that Defendants stayed under pressure throughout.

---

[1] The members of the "7-Eleven Plaintiffs" represented here are listed in the appendix below. *See* 7-Eleven Pls.' Objection to Mot. for Prelim. Approval of Settlement, Dkt. 9230, at 1 n.1 (May 1, 2024) (identifying the larger group). Their underlying case is *7-Eleven, Inc. v. Visa Inc.*, No. 13-cv-5746. All 7-Eleven Plaintiffs who objected to the 2024 settlement were offered the opportunity to join this effort to recoup some of what they spent. These 18 merchants are the ones that opted in. For that reason, we refer to this group throughout this filing as "7-Eleven Plaintiffs," even though they are a subset. The amount they recover will be distributed among them in accordance with an agreement between them, based largely on what they each spent themselves on counsel and litigation expenses. *Cf. Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 974 (E.D. Tex. 2000) (awarding $6 million to objectors "to be distributed … in accordance with objectors' counsels' agreement").

Rather than giving credit where it is due, however, Class Counsel is asking for $206 million in fees, expenses, and service awards—including $36 million tacked on since the 2024 settlement was scuttled. That extra $36 million should instead go to the 7-Eleven Plaintiffs seeking compensation here. It is a rounding error next to the value DAPs like the 7-Eleven Plaintiffs created for the Class: Even by the most conservative estimate, it amounts to roughly one-half of one percent of the $8 billion improvement between the 2024 and 2026 settlements. And it is considerably less than what these merchants paid in attorneys' fees and risked in up-front expenses to pursue this litigation. Meanwhile, this modest reduction in the award to Class Counsel would still leave them with $170 million—more than adequate compensation for their work. And, importantly, this request will come at zero cost to the Class, which has objectors like the 7-Eleven Plaintiffs to thank for the better result.

Accordingly, the Court should reject Class Counsel's request for $206 million in fees, expenses, and service awards and instead award $170 million to Class Counsel and $36 million to the set of 7-Eleven Plaintiffs represented here.

## **BACKGROUND**

This request comes from companies that were part of a group—the "7-Eleven Plaintiffs"—that vigorously litigated this case over the last thirteen years through their own counsel. These companies are among the country's larger merchants and represent a variety of retail sectors. Because of the massive volume of commerce they conduct, they were disproportionately injured by Defendants' price-fixing. And as the largest group of "Direct Action Plaintiffs" ("DAPs") in this case, the 7-Eleven Plaintiffs have been a major driving force of this litigation since 2012. They (and the other DAPs) retained their own counsel, filed their own complaints, produced their own witnesses and documents, hired their own experts, and

began conducting what would be years of discovery. *See* DAPs' Mem. in Opp. to Class Cert., Dkt. 8450, at 5 (May 4, 2021). Indeed, they did so long before current Class Counsel had any role in this case.

### A. The 7-Eleven Plaintiffs Defeat The First, Grossly Inadequate Injunctive Class Settlement.

In 2013, the 7-Eleven Plaintiffs (and other DAPs) opposed the first class-wide settlement in this case, which would have resolved both the damages and injunctive relief claims for far less than they were worth. *See* 7-Eleven Pls.' Mem. in Opp. to Mot. for Final Approval of Settlement, Dkt. 2670 (May 28, 2013). When that global settlement was approved by the district court, the 7-Eleven Plaintiffs opted out of the damages class and, together with other DAPs, successfully appealed class certification and settlement of the injunctive claims.[2] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016). The Second Circuit agreed with the DAPs that "this class action was improperly certified and the settlement was unreasonable and inadequate." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 230-31 (2d Cir. 2016) ("*Settlement Reversal Ruling*").

Specifically, the Second Circuit held "that the members of the (b)(2) injunction class received inadequate representation, in violation of the Due Process Clause and Rule 23(a)(4) of the Federal Rules of Civil Procedure, because, despite their divergent interests, they were represented by the same counsel and lead plaintiffs as the (b)(3) damages class." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 714 (2d Cir. 2023) (summarizing

[2] The 7-Eleven Plaintiffs and other opt-out plaintiffs and objectors filed joint briefs in the Second Circuit on behalf of a group called the "Merchant Appellants." *See, e.g.*, Merchant Appellants' Opening Br., 2d Cir. Case No. 12-4671, Dkt. 1304 (Dec. 23, 2014).

*Settlement Reversal Ruling*, 827 F.3d at 233-34). The 7-Eleven Plaintiffs had argued just that: The settlement was unlawful because "one set of class counsel and representatives bargained on behalf of two classes with conflicting interests." Merchant Appellants' 2d Cir. Opening Br. 5. The former class counsel and representatives "were thus 'in the position to trade diminution of (b)(2) relief for increase of (b)(3) relief,' and the resulting settlement appeared to have done so." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2026 WL 1662251, at *1 (E.D.N.Y. June 9, 2026) ("*2026 Preliminary Approval Ruling*") (quoting *Settlement Reversal Ruling*, 827 F.3d at 234); *accord* Merchant Appellants' 2d Cir. Opening Br. 29 (arguing that the "representation was structurally inadequate" because "[c]lass representatives who can obtain immediate monetary relief have a recognized incentive to trade away future-looking interests in return for more money now"). Indeed, the "primary relief" for the injunctive class "was virtually worthless to vast numbers of class members," and a portion of the class in fact "had their claims settled for nothing." *Settlement Reversal Ruling*, 827 F.3d at 238-39.

On remand, the (b)(2) injunctive class and the (b)(3) damages class were separately represented, as were the DAPs. In other words, the DAPs' success opposing the first settlement led directly to the appointment of separate counsel for the (b)(2) class—*i.e.*, the current Class Counsel—and positioned that class to settle separately from the damages class in precisely the way they have done here.

That achievement ultimately benefitted not only the (b)(2) injunctive relief class that is settling now, but the damages class as well. That class settled with the defendants in 2018—this time without releasing any forward-looking claims. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019), *aff'd sub nom. Fikes*, 62 F.4th 704. And while the 7-Eleven Plaintiffs again opted out of that

settlement, damages class counsel recognized the value the 7-Eleven Plaintiffs (and other DAPs) had created for the damages class via their earlier objections and appeal, and thus agreed to share a portion of their attorneys' fees. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 1933086, at *4 (E.D.N.Y. May 2, 2024) (noting that class counsel acknowledged "the group of objectors who ... were the first ones to make arguments that substantially caused the Second Circuit to vacate the original settlement, and who received $7 million for those efforts") (quotation marks omitted).

**B. The 7-Eleven Plaintiffs Play A Leading Role In Litigating The Case.**

Thereafter, the core of the case continued on, and the DAPs—of which the 7-Eleven Plaintiffs were the largest group—took the lead in litigating the merits. Their efforts had started well before the newly appointed Class Counsel joined the case, and ultimately involved producing 100 million pages of documents, noticing 200 depositions, producing over 275 of their own witnesses for depositions, proffering 12 direct and rebuttal experts, defeating over a dozen summary judgment and *Daubert* motions, and taking their damages claims all the way to the eve of trial in the Southern District before settling them. *See* 7-Eleven Pls.' Resp. to Proposed Mandatory Settlement, Dkt. 9726, at 1-3 (Dec. 12, 2025); Dkt. 8450, at 5.

Class Counsel for the injunctive class has acknowledged the critical role the DAPs, including the 7-Eleven Plaintiffs, played in the litigation. As Class Counsel notes, "significant discovery had already occurred" in the years before they were appointed and, from then on, they "worked cooperatively with counsel for the Rule 23(b)(3) Class and [DAPs] in connection with ongoing discovery." Equitable Relief Class Pls.' Mem. in Supp. of Mot. for Prelim. Approval of Settlement, Dkt. 9179-1, at 5 (Mar. 26, 2024); *see* Dkt. 9933-1, at 7 (similar). "Cooperation" is an understatement. As Class Counsel admits, they "did *not* insist on taking leading roles in

depositions." Dkt. 9179-1, at 5 (emphasis added). Rather, it was counsel for the DAPs that asked more than 90 percent of the questions at the depositions they noticed, Dkt. 8450, at 5—depositions on which Class Counsel then relied extensively. For example, all of the 30 deposition excerpts Class Counsel cited in their motion for class certification came from depositions noticed by the DAPs, who were also the primary examiners. *Id.* at 6.

### C. The 7-Eleven Plaintiffs Defeat The Second, Also Insufficient, Settlement Of The Injunctive Class Claims.

In 2024, Class Counsel and Defendants announced their attempt at a new injunctive settlement. *See* Equitable Relief Class Pls.' Mot. for Prelim. Approval of Settlement, Dkt. 9179 (Mar. 26, 2024). In their view, the 2024 settlement went "far beyond the overturned 2012 Agreement," and was "far superior, in every way." Dkt. 9179-1, at 2, 10.

But it did not go nearly far enough, so the 7-Eleven Plaintiffs again objected. *See* 7-Eleven Pls.' Objection to Mot. for Prelim. Approval of Settlement, Dkt. 9230 (May 1, 2024). Among other shortcomings, the 7-Eleven Plaintiffs challenged the settlement's failure to lift the "Honor All Cards" rule and its inadequate reduction in interchange rates, even though those were "[t]he core restraints of trade at issue in this case." *Id.* at 2. The 7-Eleven Plaintiffs also highlighted how the rate changes treated merchants inequitably: Some larger merchants don't pay posted rates—they negotiate them—so they likely would have received no benefit from the 2024 settlement's changes to posted rates. *See id.* at 18; *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 3236614 at *36 n.48 (E.D.N.Y. June 28, 2024) ("*2024 Preliminary Approval Ruling*") (citing arguments from 7-Eleven Plaintiffs' counsel at hearing). Here, too, the 7-Eleven Plaintiffs played a leading role, with their counsel presenting the objections on behalf of all the DAPs at the fairness hearing. *See* June 13, 2024 Hr'g Tr. 14:11-16, Dkt. 9330.

Following that hearing, the Court denied preliminary approval, largely on the grounds the 7-Eleven Plaintiffs pressed. For instance, the Court expressly cited the 7-Eleven Plaintiffs' filing when "agree[ing] with the objectors that the Settlement does not treat Class Members equitably relative to one another" in several respects. *2024 Preliminary Approval Ruling*, 2024 WL 3236614, at *37. The Court also agreed—again, specifically citing the 7-Eleven Plaintiffs' filings—that "[a]s some objectors argue, the Settlement would require merchants to follow the Honor All Cards rule." *Id.* at *27. And the Court held that "reductions in posted and average interchange fees proposed in the Settlement similarly fall short," *id.* at *28, just as the 7-Eleven Plaintiffs had urged, *id.* at *25. *See generally 2026 Preliminary Approval Ruling*, 2026 WL 1662251, at *3 (explaining that the Court, in earlier denying preliminary approval, "was particularly concerned" with these three shortcomings in the settlement).

**D. The 2026 Settlement Addresses Concerns The 7-Eleven Plaintiffs Raised And Marks A Significant Improvement For The Class.**

Having failed to secure approval of their first settlement, Class Counsel and Defendants went back to the negotiating table. *See 2026 Preliminary Approval Ruling*, 2026 WL 1662251, at *3. Meanwhile, the 7-Eleven Plaintiffs kept the pressure on Defendants by continuing to prepare for trial on their damages claims. And that set the stage for a new injunctive settlement that was a vast improvement over the one the 7-Eleven Plaintiffs had just successfully defeated.

That latest settlement, struck in the fall of 2025 and preliminarily approved by this Court in June 2026, "provides more extensive relief than the [2024] Settlement." *Id.* at *4. For one, the settlement now affords at least some relief from the "Honor All Cards" rule. *Id.* For another, the revised settlement guarantees lower interchange rates: "Under the First Settlement, the rate reduction would have been seven basis points; under the Amended Settlement, that reduction would be ten basis points." *Id.* at *5. "Additionally, under the Amended Settlement, large

merchants that pay negotiated interchange rates would get a *pro rata* reduction in those rates, whereas the First Settlement provisioned no such relief." *Id.* In fact, the 2024 settlement "provide[d] the least benefit to the merchants with the most valuable claims," creating an "inversion of *pro rata* distribution." *2024 Preliminary Approval Ruling*, 2024 WL 3236614, at *36-37 (citing the 7-Eleven Plaintiffs' objection). The rate changes alone translate into an additional $8 *billion* in savings for the Class. *Compare id.* at *18 (recognizing, of the 2024 settlement, that "Class Counsel … estimat[es] the rate reduction to be worth nearly $30 billion"), *with* Equitable Relief Class Pls.' Mem. in Supp. of Prelim. Approval of Amended Settlement Agreement, Dkt. 9692, at 27 n.77 (Nov. 10, 2025) (Class Counsel's experts averring that "the rate relief in the settlement alone will save merchants over $38 billion in interchange fees"). In these and other ways, the Amended Settlement that owes its existence to successful objectors like the 7-Eleven Plaintiffs afforded greater relief to a broader set of merchants.

Class Counsel now seeks final approval of this new settlement and $206 million in attorneys' fees, expenses, and service awards—an increase of $36 million compared to their ask in 2024. *Compare 2024 Preliminary Approval Ruling*, 2024 WL 3236614, at *29 (settlement awards up to $170 million in attorneys' fees and expenses), *with 2026 Preliminary Approval Ruling*, 2026 WL 1662251, at *13 (settlement awards up to $206 million in attorneys' fees and expenses).

The 7-Eleven Plaintiffs object to Class Counsel's motion for attorneys' fees insofar as it allocates the entire amount to Class Counsel and makes no provision for the 7-Eleven Plaintiffs represented here, who created significant value for the Class through both their successful objections and their work as the laboring oars of this litigation.

## ARGUMENT

"This [Circuit] has recognized the 'valuable and important role' of objectors, holding that objectors are 'entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their effort.'" *In re Petrobras Sec. Litig.*, 786 F. App'x 274, 277-78 (2d Cir. 2019) (quoting *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974)). There is no strict formula to follow and "no minimum benefit to the Class that must be created to be entitled to a fee award." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 1933086, at *6. So long as the objectors were "a substantial cause of the benefit obtained," the District Court has "broad discretion" to award fees in an amount the court deems appropriate. *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 157-58 (2d Cir. 2005) (citations omitted). After all, "a fee award to objectors is grounded in equitable principles." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-MD-02143, 2021 WL 4124159, at *2 (N.D. Cal. Sept. 9, 2021) (quotation marks omitted). And equity requires both providing fair compensation to those who spent their own time and money to serve the class and "prevent[ing] unjust enrichment by the beneficiaries of [those] efforts." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002); *see Kaufman v. American Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *14 (N.D. Ill. Mar. 2, 2016) (explaining that fee awards to class objectors are a form of restitution).

Throughout this long and complex case, the 7-Eleven Plaintiffs fought hard to hold Defendants accountable and successfully resisted attempts to settle the case on unfair and inadequate terms. Among other benefits, they created at least an additional $8 billion in tangible and easily measured monetary value for the Class. Having at first resisted any need for such improvement, Class Counsel now claims credit for it, to the tune of an extra $36 million in fees

and expenses. That additional award should instead go to the 7-Eleven Plaintiffs. Anything else offends principles of fair play, unjustly enriches Class Counsel, and discourages future objectors from speaking up for the class.

## I. THE 7-ELEVEN PLAINTIFFS SUBSTANTIALLY IMPROVED THE OUTCOME FOR THE CLASS.

In many ways and over many years, the 7-Eleven Plaintiffs substantially enhanced prospects for the injunctive class and directly contributed to the improved settlement now before this Court.

### A. The 7-Eleven Plaintiffs Persuaded The Second Circuit To Overturn The Inadequate 2012 Settlement.

Were it not for the 7-Eleven Plaintiffs (and the other DAPs), the first, inferior settlement of 2012 would have been affirmed and the separately represented (b)(2) injunctive class would not even exist. The 7-Eleven Plaintiffs played a key role in persuading the Second Circuit to overturn that settlement, and they thus contributed directly to both an improvement in the standalone (b)(3) damages settlement and the appointment of the Class Counsel who negotiated the present injunctive settlement. *See supra* 3-5. Counsel for the damages class recognized this contribution when they shared fees with the DAPs' counsel: The DAPs "were the first ones to make arguments that substantially caused the Second Circuit to vacate the original settlement." *Supra* 5; *compare In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2020 WL 29781, at *8 (E.D.N.Y. Jan. 2, 2020) (denying different group of objectors fees from the damages settlement where they "never argued that class counsel's unitary representation of the (b)(2) and (b)(3) class was improper, as the Second Circuit ultimately found"). Those arguments included the key point that the "primary relief" for "vast numbers of" the injunctive class in the 2012 settlement was "virtually worthless." *Supra* 4. Accordingly,

even Class Counsel touts that the current settlement goes "far beyond the overturned 2012 Agreement" and is "far superior, in every way." Dkt. 9179-1, at 2, 10 (comparing the 2024 rejected settlement to the 2012 rejected settlement); *see* Dkt. 9933-1, at 18 (concluding that the current settlement is better than the 2024 settlement). Substantial credit for that surely goes to the DAPs, including the 7-Eleven Plaintiffs, without whom this separate, improved (b)(2) settlement would not even exist.

**B. The 7-Eleven Plaintiffs Overturned The Inferior 2024 Settlement.**

The 7-Eleven Plaintiffs also played the pivotal role in overturning the 2024 settlement and driving the parties to negotiate a better deal for the Class. That also entitles them to fees. *See, e.g.*, *In re S.S. Body Armor I Inc.*, 961 F.3d 216, 230 (3d Cir. 2020) (awarding fees to objectors based on "the understanding that the latter settlements achieved in this case were superior to the [earlier settlement]," and "there is also widespread recognition that [the] objection contributed to that evolution"). As detailed above (at 6-7), Chief Judge Brodie repeatedly endorsed the objections of the 7-Eleven Plaintiffs in rejecting the 2024 settlement, citing them directly and finding their objections "particularly concern[ing]." And so the parties "address[ed]" these concerns "head on" in the revised settlement. Network Defendants' Mem. in Supp. of Prelim. Approval, Dkt. 9693, at 30 (Nov. 10, 2025); Dkt. 9933-1, at 17 (Class Counsel explaining that the Amended Settlement "directly addresses the concerns identified by Judge Brodie"); *supra* 7-8 (elaborating the point). As Defendants put it, "[h]eeding the Court's instructions"—instructions that in turn tracked the 7-Eleven Plaintiffs' objections—the parties agreed to "historic" changes to the Honor All Cards rule where before there were none. Dkt. 9693, at 24; *accord 2026 Preliminary Approval Ruling*, 2026 WL 1662251, at *4. They likewise agreed to a "rate reduction … greater than the one proposed under the First Settlement." *2026*

*Preliminary Approval Ruling*, 2026 WL 1662251, at *12. And they afforded some rate relief to merchants who negotiate their rates, which was likewise prompted by the 7-Eleven Plaintiffs' objections. *Supra* 6-8. In these and other ways, the revised settlement increases the settlement's benefits and extends them to a broader set of merchants, without diminishing the recovery to the rest of the Class. *See 2026 Preliminary Approval Ruling*, 2026 WL 1662251, at *4-6 (comparing the two settlements and identifying various improvements).

The improvements in the settlement translate to real, measurable value to the Class. The rate changes alone increased the value of the amended settlement by $8 billion over the prior one. *Supra* 8. That is not even counting the value of what Class Counsel calls the "materially expanded and strengthened relief" elsewhere in the amended settlement. Dkt. 9933-1, at 18; *see Body Armor*, 961 F.3d at 227 ("[C]ourts may consider non-monetary improvements to settlements when assessing whether to award attorneys' fees and expenses to settlement objectors."). Given all this, it is plain that the "participation of objectors assisted the court and enhanced the recovery." *White*, 500 F.2d at 828.

**C. The 7-Eleven Plaintiffs Zealously Litigated Common Claims Throughout.**

The service the 7-Eleven Plaintiffs provided to the Class was not limited to their objections. As opt-out damages plaintiffs, their zealous litigation of the merits helped put the Class in a much stronger negotiating position. *Supra* 2-3, 5-6 (detailing efforts). As the Second Circuit has held, "when a substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 87 (2d Cir. 2010). And here, the contribution the DAPs made to the resolution of this MDL and the creation of this settlement is at least as great as—if not greater than—Class Counsel's.

There was no separate pretrial track for damages versus injunctive relief, or for the Class versus the DAPs. "The injunctive and monetary claims were interwoven"; it "was not an option" for "the work done on behalf of the injunction class" to "be teased apart from the work done for the damages class," and vice versa. *Fikes*, 62 F.4th at 726. Class Counsel even concedes that the DAPs took the "lead" in many of the most pivotal depositions in the case. *Supra* 5-6. Just as importantly, the DAPs did the heavy lifting in developing experts and defeating dozens of summary judgment and *Daubert* motions—work that Class Counsel could draft behind because both sets of plaintiffs advanced the same theories of liability. *Compare In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2020 WL 29781, at *9 (denying different objectors' fees from damages settlement based on increased value of settlement because objectors "had no involvement" in "the years of additional discovery and renegotiation" in the interim). The 7-Eleven Plaintiffs group as a whole also invested financially in the case—risking more in upfront costs for experts and discovery than Class Counsel themselves. In a typical MDL, work like this would be recognized and compensated as "common benefit" on par with the hours invested by lead counsel for the class.

In light of all the above, there can be no doubt that the efforts of the 7-Eleven Plaintiffs were "a substantial cause of the benefit" the final settlement provides the Class. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 1933086, at *3 (quoting *Holocaust Victim Assets*, 424 F.3d at 157). They are accordingly entitled to a fee award.

## II. SHIFTING $36 MILLION FROM CLASS COUNSEL TO THE 7-ELEVEN PLAINTIFFS IS AN APPROPRIATE REWARD FOR THEIR CONTRIBUTIONS TO THE CLASS.

### A. The $36 Million Award Avoids Unjustly Enriching Class Counsel.

Objector awards rest on principles of equity, *supra* 9, and equity here means compensating the 7-Eleven Plaintiffs for their work for the Class and avoiding the unjust enrichment of Class Counsel who claim credit for a benefit they worked against.

The appropriate amount is $36 million, which is the difference between the fee award Class Counsel claims now versus the one they claimed in 2024.[3] After all, if Class Counsel had gotten their way, the inferior 2024 Settlement would have been approved, and Class Counsel would have received an award that was $36 million less than what they now seek. It is not right to reward Class Counsel with extra fees for a result that only came over their resistance. And it does not matter that Class Counsel may still have had work to do between the two settlements; "without the objections[,] class counsel would never have had the opportunity to pursue the monetary value it has now gained for the class." *Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832, at *8 (N.D. Ill. Mar. 15, 2019) (awarding fees to one objector whose "briefing was considered by" court of appeals in rejecting initial settlement and to an objector who "briefed the appeal … and played a key role at the oral argument"). This kind of "rough justice" is perfectly appropriate "given the inherent uncertainties of estimation" in a case like this, and the "heavy cost in judicial and party resources [that are] unlikely to be offset by any benefit in greater precision." *In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741, 748 (7th Cir. 2011) (Posner, J.).

[3] To the extent this amount includes recoverable costs incurred in the interim, the 7-Eleven Plaintiffs are not asking the Court to deprive Class Counsel of reimbursement for those.

And, here, there is justice for all sides.

Class Counsel will still be amply compensated—and then some. Subtract the proposed $36 million to the 7-Eleven Plaintiffs, Class Counsel's expenses, and the service awards, and Class Counsel still walk away with $161,800,059.90 in attorneys' fees. *See* Ex. A to Equitable Relief Class Pls.' Mot. for Attys' Fees, Expenses & Service Awards, Dkt. 9933-4, at 2 (July 15, 2026). That is still 2.13 times their lodestar, which is more than fair, particularly where Class Counsel was appointed to join an in-progress case that had already settled once, creating much less risk of loss for counsel than in typical class actions. That is reflected in the bills. Flipping the usual class-action script, Class Counsel had far less at risk in up-front costs than the DAPs did. Indeed, they claim only $7.8 million in expenses. *See* Dkt. 9933-1, at 3. The other plaintiffs in this case—including the 7-Eleven Plaintiffs—risked many multiples of that.

It is also more than fair to award the $36 million to the 7-Eleven Plaintiffs represented here. All of the 7-Eleven Plaintiffs who objected in 2024 were advised of this request and had the chance to join it. (And nothing stopped the other DAPs from making their own similar request.) The 18 members of the 7-Eleven Plaintiffs who opted in here collectively spent *far* more in legal fees and expenses in this MDL than they seek now. The modest share of the fees they seek here would thus go directly to them to help offset (in small part) what they paid to prosecute the case and protect the Class.

Above all, the result is fair to the Class. Any award to the 7-Eleven Plaintiffs would not come at the Class's expense. Class Counsel is being compensated separately by Defendants—not from any common fund—and the award to the 7-Eleven Plaintiffs would come from this separate pot. *See* Dkt. 9933-1, at 20 (Class Counsel confirming that attorneys' fees "will be paid separately by the Network Defendants, and thus will not diminish or otherwise affect the benefits

afforded to the Class"). Indeed, because these funds have been committed by the Defendants but do not come from a common fund, awarding them to successful objectors is the best and only way to prevent them from unjustly enriching Class Counsel's award.

### B. The $36 Million Request Is Appropriate Under The Percentage-Of-Benefit Method.

The 7-Eleven Plaintiffs' request is also appropriate based on the percentage-of-benefit method commonly used to award attorneys' fees. *See* Dkt. 9933-1, at 22 (Class Counsel recognizing "[c]ourts can check the reasonableness of fees using one or both of the lodestar method and the percentage-of-benefit method."); *Eubank*, 2019 WL 1227832, at *9 ("objector awards are not ordinarily calculated based on lodestar value"); *see, e.g.*, *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (awarding objectors who overturned an initial, inferior settlement fees that amounted to 4.9% of the $15 million difference between the rejected and final settlements). The proposed amount here is roughly one-half of one percent of the additional $8 billion the 7-Eleven Plaintiffs secured for the Class in rate relief through their successful objection, and that is just looking at *one piece* of relief the objectors improved. Compared to similar "percentage-of-benefit" awards, the amount they seek could not be a more "modest" request. *See In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 746 (7th Cir. 2018) (holding it would be "inequitable" to deny objector a fee request that is "a modest 10% of the market value of the additional" relief he secured for the class); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 974 (E.D. Tex. 2000) (awarding $6 million—or $11.6 million in today's dollars—to objectors who successfully extended a coupon redemption period).

Indeed, $36 million is far less than what the 7-Eleven Plaintiffs could reasonably request. After all, they secured (at minimum) a 26% increase in the value of rate relief (from $30 billion to $38 billion). Applying that same percentage to Class Counsel's requested award ($206 million)

would yield over $53 million. And a one-to-one comparison of hours expended on work that provided a common benefit to the class and DAPs would entitle the latter to far more than half of the fee award. Again, the amount requested here will go directly to the objectors, and it will offset only part of what they paid out-of-pocket in this case. Thirty-six million thus represents a fair proportion of the overall award, and the Court would in fact be amply justified in awarding more.

### C. The $36 Million Is Reasonable Under The *Goldberger* Factors.

The factors courts use to cross-check the reasonableness of fee awards likewise confirm that the 7-Eleven Plaintiffs should receive a substantial portion of the fees Class Counsel claim. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the 7-Eleven Plaintiffs themselves would receive this award, rather than their counsel, these factors still serve as a good guide here.

Start with "the time and labor expended." *Id.* at 50. The 7-Eleven Plaintiffs spent many hours and a lot of money challenging two rounds of bad settlements. That is to say nothing of the many thousands of hours and tens of millions of dollars they put into litigating their claims—an effort that redounded to the Class's benefit and which cost the 7-Eleven Plaintiffs far more than they stand to recover here. By contrast, Class Counsel did nothing to defeat the inferior 2024 settlement. Instead, they spent a considerable amount of time *defending* that bad deal. *See, e.g.*, Decl. of Equitable Relief Class Counsel in Supp. of Class Pls.' Mot. for Award of Attys' Fees, Expenses, & Service Awards, Dkt. 9933-3, at 16-18 (detailing Class Counsel's efforts to secure 2024 settlement).

The next two *Goldberger* factors—"the magnitude and complexities of the litigation" and "the risk of the litigation"—also favor fee-sharing here. 209 F.3d at 50 (citation omitted). "This has proven to be a complex, costly, time-consuming case," *2026 Preliminary Approval Ruling*,

2026 WL 1662251, at *10, and the fight over the 2024 settlement was no exception. The 7-Eleven Plaintiffs bore substantial risk in challenging the earlier settlements, for there was no guarantee their objections would succeed or that they would be reimbursed for their efforts—including for the millions of dollars they paid out of pocket in expenses alone. Class Counsel did not face the same risk—and not just because they incurred only about $7.8 million in expenses. *See* Dkt. 9933-1, at 32. Class Counsel went into 2024's preliminary-approval proceedings with a deal from Defendants for $170 million in fees and expenses, and they knew they would have another shot at getting paid if that settlement didn't pan out. *See 2024 Preliminary Approval Ruling*, 2024 WL 3236614, at *29. Class Counsel had every reason to be optimistic: For years, the parties had attempted to settle the class claims, trying again every time they were stymied. And indeed, by the time Class Counsel got involved in the case—which was only possible because of the successful appeal by the 7-Eleven Plaintiffs and other objectors—Defendants had already agreed to settle class damages claims for over $7 billion. *Settlement Reversal Ruling*, 827 F.3d at 229.

As far as "the quality of representation" goes, *Goldberger*, 209 F.3d at 50, the 7-Eleven Plaintiffs' success in knocking down two settlements speaks for itself. The willingness of the other objectors to have 7-Eleven counsel stand for them all at the 2024 preliminary approval hearing further underscores the collective confidence in their efforts. So does the leading role the 7-Eleven Plaintiffs played, as the largest group of DAPs, in litigating the case. Even Class Counsel ceded the lead role in discovery—and in particular, depositions—to the DAPs. As for the quality of Class Counsel, there is no need to doubt their skill to nonetheless recognize—as they evidently did not—that a better deal for the Class was achievable. An award of $170

million more than adequately compensates them for their work; they do not need, or deserve, the extra $36 million.

"[T]he requested fee in relation to the settlement," *id.*, also favors shifting some fees to the 7-Eleven Plaintiffs. The fraction is infinitesimal: $36 million is just 0.018% of the $200 billion total estimated value of the settlement. *See* Dkt. 9692, at 28. And it is less than one-half of one percent of the additional $8 billion created directly from their successful objection in 2024. The amount requested is also reasonable in light of the $7 million the DAPs' appellate counsel recovered from damages class counsel years earlier. As Class Counsel acknowledges, the value of the injunctive rate relief alone is approximately $38 billion, which is "considerably more than the $5.6 billion approved for the Rule 23(b)(3) settlement." Decl. of Equitable Relief Class Counsel in Supp. of Mot. for Prelim. Approval of Settlement, Dkt. 9179-3, at 57 ¶ 174 (Mar. 26, 2024). And importantly, unlike that award, the award here would go directly to the 7-Eleven Plaintiffs as compensation for the much larger amount they have already paid in fees, rather than to their attorneys. *See* Dkts. 7478, 7569.

Finally, "public policy considerations" counsel in favor of shifting some fees to the 7-Eleven Plaintiffs. *Goldberger*, 209 F.3d at 50. "Objectors have a valuable and important role to perform in policing class action settlements." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 132 (S.D.N.Y. 2009) (alteration and citation omitted). That role is especially critical in antitrust injunctive class actions like this one. Because class members cannot opt out, objections are their only means of protecting themselves from inadequate settlements. And the stakes of getting it right are high—as Class Counsel notes, "injunctive relief frequently provides the only mechanism for eliminating unlawful restraints and restoring competitive conditions in important markets." Dkt. 9933-1, at 29. Here, it was the objectors, not Class Counsel, who

played a vital role in ensuring that this relief actually addressed some of the most problematic anticompetitive conduct at issue—including at least some rollback on the "Honor All Cards" arrangement that has been preventing point-of-sale competition in this market for decades. Given objectors' role in maximizing class-wide relief and "preventing cozy deals that favor class lawyers and defendants at the expense of class members, their request[] for fees must not be slighted." *Trans Union*, 629 F.3d at 743.

## CONCLUSION

For the foregoing reasons, this Court should not award Class Counsel the full $206 million in attorneys' fees, expenses, and service awards it seeks; rather, $36 million of that should go to the 7-Eleven Plaintiffs, in recognition of their substantial contributions to the Class.

Respectfully submitted,

Date: September 14, 2026

/s/ *Julia Solomon-Strauss*

Julia Solomon-Strauss
Eric F. Citron*
Rachel G. Shalev*
ZIMMER, CITRON & CLARKE LLP
14 Ridge Square NW, Suite 328
Washington, DC 20016
Tel.: (617) 676-9410
Email: jsolomonstrauss@zimmercitronclarke.com
Email: ecitron@zimmercitronclarke.com
Email: rshalev@zimmercitronclarke.com

* *Pro hac vice application pending*

*Attorneys for Certain 7-Eleven Plaintiffs*

**APPENDIX**

The objectors responsible for this filing are:

Beall's, Inc., including its Subsidiaries and Affiliates.

1806 38th Avenue East
Bradenton, FL 34208
(941) 744-2355

Cracker Barrel Old Country Store, Inc.

305 S. Hartmann Drive
Lebanon, TN 37087
(615) 444-5533

Crate & Barrel Holdings, Inc. (CBH), as the parent company of Euromarket Designs, Inc., d/b/a Crate & Barrel, Crate & Kids, CB2 and Hudson Grace, and as the parent company of Meadowbrook, L.L.C., which did business as The Land of Nod.

1250 Techny Road
Northbrook, IL 60062
(847) 272-2888

Dick's Sporting Goods, Inc.

345 Court Street
Coraopolis, PA 15108
(724) 273-3400

Dillard's, Inc.

1600 Cantrell Road
Little Rock, AR 72201
(501) 376-5200

Drury Hotels Company, LLC

13075 Manchester Road, Suite 100
St. Louis, MO 63131
(314) 429-2255

Foot Locker, Inc.

330 West 34th Street
New York, NY 10001
(212) 720-3700

The Gap, Inc.

Two Folsom Street
San Francisco, CA 94105
(415) 427-0100

Genesco Inc.

535 Marriott Drive
Nashville, TN 37214
(615) 367-7000

HMSHost Corporation

6905 Rockledge Drive
Bethesda, MD 20817
(240) 694-4100

Jetro Holdings, Inc. (d/b/a Restaurant Depot)

1710 Whitestone Expressway
Whitestone, NY 11357
(718) 762-8700

Panda Restaurant Group, Inc.

1683 Walnut Grove Avenue
Rosemead, CA 91770
(626) 799-9898

Panera Bread Company

1220 Washington Street
Newton, MA 02465
(314) 984-1000

Recreational Equipment, Inc. (REI)

1700 45th Street East, Suite 101
Sumner, WA 98390
(800) 426-4840

Republic Services, Inc.

5353 East City North Drive
Phoenix, AZ 85054
(480) 627-2700

Swarovski U.S. Holding Limited

Attn: Edward J. Capobianco, General Counsel
50 Sharpe Drive
Cranston, RI 02920
(401) 463-9500

Thermo Fisher Scientific, Inc.

168 Third Avenue
Waltham, MA 02451
(781) 622-1000

Yum! Brands, Inc.

1441 Gardiner Ln.
Louisville, KY 40213
(502) 874-8300

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the word limit of Local Civil Rule 7.1(c), because, excluding the parts of the document exempted by the rule, this document contains 6,272 words.

Dated: September 14, 2026

/s/ *Julia Solomon-Strauss*
Julia Solomon-Strauss

**CERTIFICATE OF SERVICE**

This document was filed via ECF on September 14, 2026, and mailed to the following designees:

**Designee of Rule 23(b)(2) Class Counsel**
Robert G. Eisler, Grant & Eisenhofer P.A., 485 Lexington Ave., 29th Floor, New York, NY 10017

**Designee of Defendants**
Matthew A. Eisenstein, Arnold & Porter Kaye Scholer LLP, 601 Massachusetts Ave., NW, Washington, DC 20001-3743

Dated: September 14, 2026

/s/ *Julia Solomon-Strauss*
Julia Solomon-Strauss