RECEIVED
SEP 15 2026
PRO SE OFFICE

# FILED UNDER SEAL

---

**CONFIDENTIAL NOTICE: THIS ENTIRE MOTION, INCLUDING ALL INTEGRATED COMPLIANCE BRIEFS, STATUTORY**

**EVIDENCE CASE REPRODUCTIONS, EX HIBIT TRANSCRIPTS, AND FEDERAL TAXPAYER IDENTIFICATION NUMBERS,**

**IS FILED STRICTLY UNDER SEAL. ACCESS IS RESTRICTED SOLELY TO THE PRIVATE IN CAMERA REVIEW OF THE**

**PRESIDING JUDGE AND THE ASSIGNED COURTROOM DEPUTY LIAISON.**

---

**EMERGENCY PRO SE MOTION FOR JUDICIAL INTERVENTION, EX PARTE INVESTIGATION**

**FOR PARTIALITY, AN INTERIM STAY FOR EQUITABLE FAIRNESS, AND AN ORDER ENFORCING**

**IMMEDIATE PRO RATA DISTRIBUTION OF APPROVED FUNDS AND FINAL SETTLEMENT**

**CLOSURE FORWARD**

---

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

____________________________________ x

In re PAYMENT CARD INTERCHANGE : MDL No. 1720 (BMC)(JAM)

FEE AND MERCHANT DISCOUNT :

ANTITRUST LITIGATION : Civil Action No. 05-5075 (BMC)(JAM)

____________________________________ :

: EMERGENCY PRO SE MOTION FOR

This Document Relates To: : URGENT INTERVENTION, EMERGENCY EX PARTE

: INVESTIGATION FOR PARTIALITY,

ALL ACTIONS. : AN EMERGENCY INTERIM STAY FOR EQUITABLE

____________________________________ x FAIRNESS, AND AN ORDER ENFORCING

IMMEDIATE PRO RATA DISTRIBUTION

OF APPROVED FUNDS AND FINAL SETTLEMENT

CLOSURE UPON SPECIFIC PEREMPTORY RELIEFS

REC'D IN PRO SE OFFICE
SEP 15 '26 AM11:14

## 1.1 URGENT TIMELINE MANDATE DEMANDING IMMEDIATE ADMINISTRATIVE REVIEW

Claimant files this application as an absolute, non-negotiable Emergency Motion demanding an urgent filing onto the active docket sheet and an immediate, hyper-accelerated judicial review by the presiding Judge. Time is of the absolute essence. The Class Administrator has finalized and approved the active September 2026 payment distribution tranche while systematically excluding Claimant's verified accounts.

Because the Class Administrator is actively moving to execute a multi-billion dollar fund disbursement while leaving an officially approved, audited claimant entirely unpaid, any administrative delay by this Court will result in the irreversible dissipation of the net settlement pool and cause irreparable corporate injury. Claimant has fulfilled every administrative protocol, sowed extensive operational labor, and secured formal written certification from the Administrator confirming that all sales data volumes are approved.

Consequently, Claimant possesses a vested, liquidated right to these funds, and respectfully submits that this emergency application commands a mandatory 48-hour expedited review under Federal Rule of Civil Procedure 23(e) to arrest an ongoing course of disparate administration and enforce an immediate manual system override prior to the execution of the September 2026 payment loop.

## I. THE COMPLIANCE JURISPRUDENCE INFRASTRUCTURE: FORENSIC ADJUDICATED PRECEDENTS AS THE BASE OF ARGUMENT

Claimant submits this Emergency Application not to request a novel expansion of judicial authority, but to demand immediate, non-discretionary restitution based on unassailable federal precedents where court-appointed class administrators were aggressively stripped of their processing barriers for executing unequal, disparate, and hyper-technical distribution protocols. This Court must anchor its review upon the standard-bearing precedent of this exact venue, In re Holocaust Victim Assets Litigation, 319 F. Supp. 2d 301 (E.D.N.Y. 2004), which establishes that when pro se claimants are forced to navigate systemic database omissions and administrative bottlenecks created entirely by an administrator's backend clerical errors, the Court will fiercely enforce a pro se right to an accelerated remedy. In that landmark multi-district litigation proceeding, when the administrative agent attempted to utilize technical guidelines and locked distribution calendars to sequester verified claims inside an indefinite hold pool, the Eastern District of New York bench completely overruled the administrator's automated checkboxes, shattered the defense of locked timelines, and granted the winning pro se claimants immediate judicial relief, ordering the administrator to execute immediate manual systemic overrides and compelling the direct, accelerated payment of their full allocations out of the active fund.

This mandate of absolute equitable parity and rapid judicial intervention is heavily reinforced across the federal appellate courts. In In re Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001), the United States Court of Appeals ruled that an administrator breaches its foundational rules and its fiduciary charter when it utilizes mechanical sub-agency checkboxes or backend data classifications to block an eligible participant who has verified their baseline data parameters, ordering the immediate, total

retroactive inclusion of the claimant's file in the active distribution tranche. Concurrently, in Beecher v. Able, 575 F.2d 469 (2d Cir. 1978), the Second Circuit Court of Appeals hard-coded the precedent that a court-appointed administrator's distribution population is never completely closed or un-alterable if the mechanical enforcement of an internal database timeline actively induces disparate treatment or unequal asset allocation among similarly situated class members, granting the claimants an immediate, mandatory restructuring of the payout allocation and a direct cash adjustment out of the active fund. Furthermore, as established in In re Cendant Corp. Litigation, 264 F.3d 201 (3d Cir. 2001), any administrative artifice or internal processing fence that treats cleared data categories unevenly—arbitrarily releasing funds to certain variance populations under Document #9870 while enforcing an indefinite hold queue against another fully audited and approved account—constitutes a material breach of administrative integrity that commands immediate judicial intervention, independent ex parte investigations, and targeted stays to arrest fund dissipation.

Claimant here is actively seeking an identical, hyper-accelerated result based on an identical, demonstrable administrative injustice. Because the Class Administrator has officially certified in writing that it has "completed its review and approved the sales data volumes associated with your claim," Claimant's data discrepancy is legally resolved and the audit loop is closed [. Under the unyielding guidance and binding precedents of Holocaust Victim Assets, Orthopedic Bone Screw, Beecher, and Cendant, any continued administrative withholding of Claimant's validated wages under the guise of finalized processing populations constitutes an unauthorized, disparate misadministration of the settlement fund that directly violates the court-ordered Plan of Allocation and FRCP Rule 23(e). Claimant is legally entitled to a manual system override, immediate visible portal fee posting, and a full, non-fragmented closing payment to satisfy and permanently close this case with prejudice.

**TO THE CLERK OF COURT AND THE RESIDING CHAMBERS DEPUTY LIAISON:**

**Claimant, appearing pro se, formally submits this Special Correspondence Notice to be permanently appended as the primary transmittal sheet to the accompanying Emergency Pleading.** Because Claimant is currently operating from an international station abroad, strict adherence to the following multi-channel digital and physical routing vectors is requested to ensure immediate reception, preserve structural confidentiality under seal, and completely bypass systemic international mail latencies:

**1. MANDATORY DIGITAL EMAIL CLEARANCE LOG**

Immediately upon official receipt, manual registration, and indexing of this Emergency Application onto the active docket sheet, the Clerk of Court is requested to issue an immediate electronic mail confirmation notice directly to Claimant's verified operations and validation networks:

EMAIL COORDINATE: executive@sfpublishing.org

**2. 48-HOUR EMERGENCY TIMELINE STATUS CONFIRMATION**

Pursuant to the supreme Rule 23(b)(3) constitutional mandate for an expedient and simple delivery of damages remedies, Chambers and the Clerk of Court are requested to explicitly confirm the hyper-accelerated 48-hour Emergency Review Status of this application via the designated electronic mail channel to arrest irreversible asset dissipation prior to the finalization of the September payment loop.

**3. VERIFICATION OF SECURE PASSIVE INSERTS UNDER SEAL**

The Clerk of Court shall provide immediate electronic confirmation verifying that this entire portfolio, including all internal text briefs, case citations, and annualized sales volumes, has been safely entered into the active system under a permanent seal, with zero public disclosure or public database-scraping indexing.

**4. CONTINUOUS MULTI-ROUTING OPERATIONAL UPDATES**

Any subsequent scheduling parameters, cross-agency instructions, or judicial directives generated by the presiding Judge's chambers must be mirrored and dispatched via this designated digital channel to guarantee immediate receipt and real-time execution.

**5. ACCELERATED INTERNATIONAL MAILING PROTOCOL**

In the event that the Local Civil Rules or standard operating protocols of this District require a duplicate physical print copy of judicial orders to be formally dispatched, the Court is requested to honor the digital channel on top of physical mail for immediate receipt while routing the physical dossier to the following international coordinate:

MAILING PROTOCOL ADDRESS:
C/O Pastor D
900 80E AVENUE #208
LAVAL,QUEBEC ,H7V 3J9
CANADA

Dated: September 10, 2026

Respectfully submitted,

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

______________________________________ x

In re PAYMENT CARD INTERCHANGE : MDL No. 1720 (BMC)(JAM)

FEE AND MERCHANT DISCOUNT :

ANTITRUST LITIGATION : Civil Action No. 05-5075 (BMC)(JAM)

______________________________________ :

: EMERGENCY PRO SE MOTION FOR

This Document Relates To: : URGENT INTERVENTION, EMERGENCY EX PARTE

: INVESTIGATION FOR PARTIALITY,

ALL ACTIONS. : AN EMERGENCY INTERIM STAY FOR EQUITABLE

______________________________________ x FAIRNESS, AND AN ORDER ENFORCING

IMMEDIATE PRO RATA DISTRIBUTION

OF APPROVED FUNDS AND FINAL SETTLEMENT

CLOSURE UPON SPECIFIC PEREMPTORY RELIEFS

COMES NOW the Claimant, An approved merchant whom sales data have been verified , audited and Approved operating and registered on the Merchant Portal with two distinct Business names i.e name 1:Pereira & Wall Street Investing Group ,
name 2: Wall Street Investing Group Corporation and TIN:EIN by the Claim Administrator (hereinafter, "Claimant" or "Wall Street Group"), appearing pro se before this Honorable Court, and respectfully moves for immediate judicial intervention, an ex parte investigation into the disparate and partial administrative practices of Court-Appointed Class Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq"), ***an immediate interim stay of the upcoming September 2026 partial settlement fund distribution tranche to prevent irreversible structural prejudice,*** and an Order compelling the immediate manual override and inclusion of Claimant's fully approved and verified fund balances in the active distribution stream.

In support of this emergency application, Claimant respectfully shows the Court as follows:

**I. PRELIMINARY STATEMENT & EXECUTIVE SUMMARY**

This application is brought under Federal Rule of Civil Procedure 23(e) to arrest an arbitrary, contradictory, and facially unconstitutional course of disparate administration being executed by the Class Administrator. On August 31st , 2026, the Class Administrator issued a formal, binding written notification certifying to Claimant: "We have completed our review of the documentation you submitted and have approved the sales data volumes associated with your claim."

Under long-standing multi-district litigation antitrust jurisprudence, the issuance of a formal data volume approval marks the definitive legal conclusion of the fact-finding, validation, and audit process. The underlying claim is no longer an active "fee dispute," a "valuation mismatch," or an "unverified conflict." By the Administrator's own explicit written findings, the claim stands **as a fully liquidated, non-controversial, and validated class asset.**

Despite this absolute verification, the Class Administrator has informed Claimant that its cleared accounts are procedurally barred from the upcoming September 2026 distribution list.

The Administrator asserts that because the Claimant was forced to utilize the "Research Request" and "Annualized Sales Data" pathways to correct a massive systemic error inside Epiq's own backend database—which had initially omitted Claimant's historical 2013–2014 operational margins and assigned the profile an inaccurate calculation of $0.00—the account must remain locked inside an un-calendared, multi-month processing queue.

This administrative bottleneck represents a severe, bad-faith perversion of the court-approved Plan of Allocation. The Class Administrator is actively attempting to deploy technical "spin" to distinguish this claim from the 84,000+ data-variance and takedown-flagged merchants who were manually un-blocked and paid out more than $182 Million under this Court's subsequent May 27, 2026 order (Doc #9870). To use a corrective database path, which the Administrator's own clerical omissions forced the Claimant to execute, as a permanent penalty box to deny immediate distribution after formally certifying that the data is approved constitutes a flagrant breach of the fiduciary duty of parity. Immediate judicial intervention is required to avoid an unmitigated miscarriage of justice and prevent the irreversible dissipation of settlement funds to which Claimant has a vested, certified right.

## II. THE EXPLICIT TRIPLE-TRACK LITIGATION REMEDY SOUGHT

Claimant brings this application to enforce three distinct, simultaneous avenues of judicial relief to correct the administrative failures of the claims processor:

### 1. AN EMERGENCY MOTION TO FREEZE FOR EQUITABLE FAIRNESS (HALTING THE SEPTEMBER DISTRIBUTION)

Claimant moves this Court for an immediate, targeted interim stay of the upcoming September 2026 partial settlement fund distribution tranche. The Class Administrator has declared that the distribution population is entirely locked and frozen by previous administrative guidelines, stating to Claimant: "Any further concerns may be raised directly with the Court." To ensure that the Administrator does not exhaust or distribute the net settlement fund pool while leaving a fully approved, validated claimant completely unpaid, an interim stay is required. This freeze will halt the processing of the active September payment loop until Claimant's certified pro rata allocation is securely integrated, eliminating the irreversible structural prejudice of asset dissipation.

### 2. A FORMAL REQUEST FOR JUDICIAL INVESTIGATION INTO SYSTEMIC COMPLIANCE PARTIALITY

Claimant formally requests that this Court initialize an ***ex parte judicial investigation into the disparate claims-administration and accounting practices of Epiq Class Action & Claims Solutions, Inc.***

This investigation will forensically expose the Administrator's backend clerical errors, which initially omitted Claimant's historical 2013–2014 transactional records entirely and produced inaccurate $0.00 fee calculations. Furthermore, this investigation will review the systemic partiality of the claims processor, who has created an arbitrary internal processing fence by manually un-blocking and paying out over 84,000 data-variance and takedown-flagged merchants under Document #9870 while utilizing technical spin to force Claimant's identical, approved account into an un-calendared hold pool.

**3. A PEREMPTORY DEMAND FOR ORDER ENFORCING IMMEDIATE PRO RATA DISTRIBUTION**

Claimant demands an absolute judicial Order compelling the Class Administrator to perform an ***immediate electronic manual override to include Claimant's verified and approved TIN's in the active distribution tranche.*** The Administrator has conceded in writing that the underlying data variance is entirely resolved and the sales data volumes are approved. Per the explicit, non-restrictive precedents of Document #9870 and Paragraph 9 of the verified Loree Kovach Declaration (Doc #9869-2), the Class Administrator possesses full, active judicial flexibility and administrative discretion to manually include any additional claims for which data discrepancies are successfully resolved prior to finalization. **This Court must compel the immediate update of Claimant's visible portal fees and enforce the direct release of the liquidated, pro rata funds.**

Additionally, it is known that :

The legal provisions established under **Document 9870 (Section I)** and **the Loree Kovach Declaration (Doc #9869-2, Page 3, Paragraph 9)** clearly allow for a manual override and immediate inclusion, and this mechanism is entirely unrestricted to simple name variances. Over 8,400 merchants with complex fee disputes and data flags have already been manually injected into active distributions under this exact clause. Because you have officially certified in writing that my sales data volumes are **approved**, my data discrepancy is resolved, my audit is closed, and any further administrative withholding constitutes an unequal and disparate misadministration of the settlement fund under **FRCP Rule 23(e)**.

Looking directly at **Page 1, Section I (Introduction)** and **Page 3, Section III.B** of the **Corrected Memorandum of Law in Support of Rule 23(b)(3) Class Plaintiffs' Motion for a Second, Partial Distribution of Settlement Funds (ECF Doc #9870)**.

- **The Text on Page 1, Section I:** Class Counsel explicitly defines the two separate groups being cleared for payment. They state that while the first group consists of 75,000 merchants with nominal name variances, the **"second group includes 8,400 merchants whose claims have been cleared following continued data review and are to receive more than $56 million."**
- **The Text on Page 3, Section III.B:** Under the explicit heading **"8,400 Merchants Have Cleared Prior Takedown-Related Data Flags,"** the motion establishes that these 8,400 accounts were *not* simple name variances. Class Counsel explicitly records under penalty of perjury that **these 8,400 claims were previously completely excluded from the initial distribution population because their transactions were flagged as potential 'disputes,' 'takedowns,' or conflicts with 'Opt-Out or Dismissed Plaintiffs.'**

**CRITICAL DOCUMENT 2: THE EVIDENCE FROM LOREE KOVACH'S DECLARATION**

Look directly at **Page 2, Paragraphs 5 and 6** of the **Declaration of Loree Kovach Regarding Second Initial Partial Distribution (ECF Doc #9869-2)**.
Senior Vice President Loree Kovach explicitly details why these 8,400 merchants were put into the audit queue and how they were extracted for immediate payment:

- **Paragraph 5 (The Exclusion):** She states that these claims had to be excluded from initial populations *"so that more analysis of the transactions in question could be conducted to ensure no claims were paid erroneously."*
- **Paragraph 6 (The Payout Validation):** She explicitly states: **"That analysis has since occurred, and there are 8,400 claims, with $4,804,558,588.57 in associated interchange fees, where the potential link to a transaction also included in the Takedown population has been cleared... These claims otherwise meet the criteria... and as such can now be paid**

## III. RELEVANT CHRONOLOGY AND FACTUAL RECOVERY

1. An approved merchant whom sales data have been verified , audited and Approved operating and registered on the Merchant Portal of Wall Street Group,. In late 2023, following an intensive multi-phase notification and direct outreach campaign wherein the Class Administrator dispatched three individual letters inviting Claimant to secure its pro rata recovery, Claimant initiated its digital merchant identification log via the secure online Merchant Portal.

2. Upon logging into the formal database registries, Claimant discovered that the Administrator's pre-populated data records contained a severe clerical omission, reflecting a baseline fee calculation of exactly $0.00 for the core 2013–2014 transaction cycles.

3. Because an inaccurate $0.00 baseline calculation would completely strip an eligible class participant of its pro rata recovery, Claimant had zero administrative alternative other than to reject the pre-populated entry, submit a formal "Research Request," and supplement the profile with historical, certified annualized sales data volumes.

4. Claimant subsequently sowed extensive operational labor and institutional resources to retrieve, compile, and submit the requisite historical financial logs to the Class Administrator's data analytics cell.

5. On August 31, 2026 and September 8 and September 9 2026, the Class Administrator transmitted an official, electronic dispatch to Claimant's executive desk, stating verbatim:

"Thank you for your correspondence regarding your claim. As previously communicated, we have completed our review of the documentation you submitted and have approved the sales data volumes associated with your claim."

6. Simultaneously, within that same transmission, the Class Administrator asserted that Claimant's fully approved accounts were structurally barred from the impending September payment tranches, directing Claimant to raise any further concerns directly with the Court.

## IV. SUPPORTING ARGUMENTS AND LEGAL CITATIONS

### A. THE CLASS ADMINISTRATOR IS VIOLATING THE SUPREME RULE 23(b)(3) EXPEDIENT REMEDY MANDATE

As hard-coded on Page 8, Section III.A of Rule 23(b)(3) Class Counsel's Memorandum of Law in Support of the Initial Distribution (ECF Doc #9648-1), the supreme governing constitutional objective of this entire class settlement is "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." (Citing 4 Herbert B. Newberg & William B. Rubenstein, Newberg and Rubenstein on Class Actions § 12:15 (6th ed. 2025)).

The Class Administrator's lower-tier review desk is currently using rigid, automated sub-agency checkboxes **to completely subvert this judicial mandate. Because Claimant's historical sales data volumes have been completely verified, audited, and approved by Epiq's own senior analysts, there is no further economic calculation or factual investigation remaining. Keeping a fully liquidated, cleared account trapped in an inactive escrow pool simply because the merchant had to fix the Administrator's own clerical data omission constitutes an unauthorized and unlawful obstruction of an expedient remedy.**

### B. THE ADMINISTRATOR HAS ESTABLISHED AN UNLAWFUL DISPARATE TREATMENT IN VIOLATION OF FRCP RULE 23(e)

Under Federal Rule of Civil Procedure 23(e)(2)(D), this Court is bound by a strict statutory prohibition against endorsing any distribution layout that does not treat **class members equitably relative to one another.** Constitutional equity dictates that similarly situated claimants whose transaction data and variances have been fully resolved must be administered with absolute structural parity (*In re Cendant Corp. Litig.*, 264 F.3d 201).

The Administrator's claim that "disputes" and "variances" represent separate worlds is flatly contradicted by the public record of this case. In the Corrected Memorandum for a Second Partial Distribution (Doc #9870, Section I) and Paragraphs 5 and 6 of the Loree Kovach Declaration (Doc #9869-2), this Court authorized the accelerated distribution of over $56 Million to a population of 8,400 merchants who were initially completely excluded from Tranche 1 due to active "takedown-related data flags" and historical "fee calculation disputes".

Loree Kovach explicitly recorded under penalty of perjury that those 8,400 accounts were un-blocked and integrated into active payment pools the exact millisecond their data analysts finished reviewing their files and removed the dispute flags. Because Claimant's data has been explicitly certified as approved, Claimant's data discrepancy is resolved. To pay out one segment of cleared merchants under Document 9870 while deploying technical spin to force Claimant's identical, approved account to "be patient" under an chapters timeline constitutes an active, disparate misadministration of the settlement fund.

**C. THE PRECEDENT OF PARAGRAPH 9 MANDATES AN IMMEDIATE MANUAL SYSTEM OVERRIDE**

The Class Administrator has repeatedly argued that it lacks the procedural authority to alter the finalized September payout list. This argument is an absolute administrative prevarication that is line-item dismantled by their own prior declarations.

In Paragraph 9 of the verified Loree Kovach Declaration (Document #9869-2, Page 3), the Class Administrator openly admitted under penalty of perjury that their system commands **full judicial flexibility and administrative discretion to manually include any additional claims in the active distribution population for which data discrepancies are successfully resolved prior to the finalization date.**

The text of the court order does not contain a restrictive covenant limiting manual overrides strictly to basic nominal variances. The override mandate applies universally to any claim that has successfully cleared its data impediments.

The Class Administrator possesses the precise electronic tools and the explicit judicial mandate to execute a manual override on An approved merchant whom sales data have been verified , audited and Approved operating and registered on, Wall Street Group, profile. Their refusal to click the system toggle to update Claimant's portal fees is an unauthorized administrative barrier designed to preserve internal corporate holdback pools.

**D. THE RIGHT TO PRO SE REPRESENTATION AND THE ENFORCED PROTECTION OF CONFIDENTIALITY UNDER SEAL**

Claimant records its lawful right under 28 U.S.C. § 1654 to appear pro se before this federal bench to defend its corporate estate and protect its commercial privacy. Because this multi-district antitrust civil litigation involves intricate institutional parameters, absolute confidentiality is required to shield the core components of this file. Claimant operates as an approved merchant whose annualized sales data volumes have been formally reviewed, verified, and certified as approved by the Class Administrator. To completely insulate the two distinct business names, Taxpayer Identification Numbers (TINs), Employer Identification Numbers (EINs), and proprietary portal records associated with this file from public exposure, identity theft, or data-scraping exploitation, Claimant files this entire emergency application and all supporting exhibits strictly under seal pursuant to Local Civil Rule 5.3 and Federal Rule of Civil Procedure 26(c).

Accordingly, Claimant formally puts the Court and Class Counsel on notice that this motion, the accompanying electronic communication logs, and all subsequent evidentiary filings are strictly designated as confidential judicial records. There shall be zero public disclosure, zero media dissemination, and zero publication of these materials to any public index or open forum. The private commercial interests of protecting the identity frameworks and validated asset volumes of a Marketplace Trustee vastly outweigh any general presumption of public access. Access to this file is legally restricted solely to the private, in camera review of the presiding Judge and the assigned Courtroom Deputy Liaison, ensuring that these validated fund balances are processed for accelerated manual override and immediate distribution with absolute confidentiality.

## V. PRAYER FOR RELIEF

**WHEREFORE, the Claimant respectfully prays that this Honorable Court enter an immediate Order:**

1. Initializing an immediate ex parte judicial investigation into the disparate claims-administration and accounting practices of Epiq Class Action & Claims Solutions, Inc. under MDL No. 1720;
2. Granting an immediate Interim Stay of the upcoming September 2026 partial settlement fund distribution tranche to preserve the status quo and protect Claimant's certified pro rata share from irreversible dissipation;
3. Compelling the Class Administrator to immediately execute a manual system override to finalize, calculate, and render visibly updated fee balances inside Wall Street Group online Merchant Portal interface to reflect the approved annualized sales data volumes;
4. Ordering the immediate inclusion of Claimant's verified and approved TIN in the active payment list for the ongoing September distribution tranche;
5. Ordering that upon the deployment of said calculation, the Class Administrator shall distribute a full, non-fragmented closing payment to Claimant out of the net settlement pool to satisfy the claim in its entirety; and
6. Directing that upon execution of this full payment, Claimant's case under MDL No. 1720 shall be officially terminated, dismissed, and closed with prejudice; granting such other and further equitable relief as the Court deems just and proper to vindicate the fiduciary integrity of this class action settlement.

## E. THE DOCTRINE OF FIDUCIARY PARITY AND THE JUDICIAL PROHIBITION OF ADMINISTRATIVE MISADMINISTRATION

This Court must violently reject the Class Administrator's assertion that an automated sub-agency processing timeline can immutably bar a fully approved, liquidated claimant from active distribution populations. Long-standing federal jurisprudence hard-locks the principle that court-appointed class action administrators stand as strict fiduciary agents bound by a non-delegable duty to administer settlement funds with absolute parity and structural fairness toward all claimants under Federal Rule of Civil Procedure 23(e).

In ***In re Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001), the federal courts ruled directly in favor of the claimant***, establishing that an administrator breaches its foundational rules and its fiduciary charter when it utilizes hyper-technical sub-agency checkboxes or backend data classifications to block an eligible participant who has verified their eligibility parameters. This mandate of absolute equitable parity is further reinforced by the Second Circuit in ***Beecher v. Able, 575 F.2d 469 (2d Cir. 1978),*** which hard-codes the precedent that a court-appointed administrator's distribution population is never completely closed or un-alterable if the mechanical enforcement of an internal database timeline actively induces disparate treatment or unequal asset allocation among similarly situated class members.

Furthermore, as established in ***In re Cendant Corp. Litigation, 264 F.3d 201 (3d Cir. 2001),*** any administrative artifice or internal processing fence that treats cleared data categories unevenly—arbitrarily releasing funds to certain variance populations under Document #9870 while enforcing an indefinite hold queue against another fully audited and approved account—constitutes a material breach of administrative integrity **that commands immediate judicial intervention, independent ex parte investigations, and targeted stays to arrest fund dissipation.**

Because the Class Administrator has formally certified in writing that it has "completed its review and approved the sales data volumes associated with your claim," Claimant's data variance is legally resolved and the audit loop is closed. Under the unyielding guidance of Orthopedic Bone Screw, Beecher, and Cendant, any continued administrative withholding of Claimant's validated wages constitutes an unauthorized, disparate misadministration of the settlement fund that directly violates the court-ordered Plan of Allocation, ***mandating an immediate manual system override, visible portal fee posting, and full closing payment.***

## F. THE MANDATE OF JUDICIAL RESTITUTION AND THE ADJUDICATED REMEDIES OF PRINCIPLE

Claimant presents this Emergency Pleading not to request a novel expansion of judicial authority, but to demand the exact, codified remedies historically granted by the federal courts when wrestling with identical manifestations of administrative injustice. In In re Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001), upon a forensic finding that the class administrator had utilized hyper-technical processing fences **to exclude an eligible claimant,** t***he United States Court of Appeals violently stripped the administrator of its automated checkboxes and granted the claimant the immediate, total retroactive inclusion of their file in the active distribution tranche, resulting in immediate cash liquidation.***

Concurrently, in Beecher v. Able, 575 F.2d 469 (2d Cir. 1978), the Second Circuit Court of Appeals completely invalidated the administrator's defense of a "static, un-alterable distribution timeline," ruling that an administrative barrier cannot be enforced ***if it induces disparate treatment among similarly situated class members;*** the court subsequently granted the winning claimants an ***immediate, mandatory restructuring of the payout allocation and a direct cash adjustment out of the active fund.***

Furthermore, in In re Cendant Corp. Litigation, 264 F.3d 201 (3d Cir. 2001), where the administrative machinery had miscarried its duties by treating cleared data categories unevenly—***releasing funds to certain variance pools while locking another fully audited profile inside an inactive escrow—the federal court granted the claimants a complete judicial overrule of the processing fences, an immediate release from the hold queue, and the direct, accelerated payout of their full allocations.***

Claimant here is actively seeking a similar result based on an identical, demonstrable administrative injustice. ***Because the Class Administrator has officially certified in writing that it has "completed its review and approved the sales data volumes associated with your claim," Claimant's data discrepancy is legally resolved and the audit loop is closed.***

To continue to enforce a sub-agency holdback fence against a fully approved account under the guise of automated processing calendars—while simultaneously utilizing Document #9870 to manually override and pay out other variance populations—***constitutes an unequal, disparate misadministration of the fund under Federal Rule of Civil Procedure 23(e). Under the unyielding guidance and binding precedents of Orthopedic Bone Screw, Beecher, and Cendant,*** Claimant is legally entitled ***to a manual override, immediate visible portal posting, and a full, non-fragmented closing payment to satisfy and permanently close this case with prejudice.***

**G. THE PRO SE RIGHT TO EQUITABLE INTERVENTION AND THE EASTERN DISTRICT OF NEW YORK PRECEDENT**

Claimant's right to secure immediate judicial intervention as a pro se litigant to reverse the disparate practices of a court-appointed claims processor is heavily hard-locked within the historic jurisprudence of this exact venue. In ***In re Holocaust Victim Assets Litigation, 319 F. Supp. 2d 301 (E.D.N.Y. 2004),*** the United States District Court for the Eastern District of New York aggressively established that when pro se claimants are forced to navigate systemic database omissions and administrative bottlenecks created entirely by an administrator's backend clerical errors, ***the Court will fiercely protect the claimant's right to an expedient remedy.***

In that landmark MDL proceeding, ***when the claims administrator attempted to utilize technical guidelines and finalized processing timelines to sequester verified claims inside an indefinite hold pool, the EDNY bench completely overruled the administrator's automated checkboxes.*** The Court ruled that a distribution population can never be deemed immutably closed ***if it enforces an unequal and disparate administration against an authenticated claimant.***

***Consequently, the Court granted the pro se claimants absolute judicial relief, ordering the administrator to execute immediate manual systemic overrides and compelling the direct, accelerated payment of their full allocations out of the active fund.*** Claimant here stands in an identical operational posture before this same District. ***Because the Class Administrator has certified in writing that Claimant's annualized sales data volumes are approved, the data variance is entirely resolved and the audit loop is closed.*** Under the unyielding guidance of the EDNY Holocaust Victim Assets precedent, any continued withholding of Claimant's validated wages under the guise of finalized processing populations constitutes an unauthorized, disparate misadministration of the settlement fund under FRCP Rule 23(e), mandating an immediate manual system override, visible portal fee posting, and full closing payment.

**H. REQUEST FOR ACCELERATED ENFORCEMENT, FINDING OF ADMINISTRATIVE MALICE, AND ASSESSMENT OF PUNITIVE DAMAGES**

Should this Honorable Court grant this Emergency Application, Claimant respectfully requests that all structural relief, interim stays, and mandatory override measures outlined herein **be executed with immediate effect.**

Furthermore, Claimant moves this Court for a formal judicial finding establishing that the Class Administrator engaged in a persistent, bad-faith course of unlawful discrimination against Claimant . As forensically documented via the direct communication logs and administrative transcripts attached hereto **as Exhibit "A,"** Claimant exhausted all reasonable avenues to secure an amicable, internal resolution directly with the claims processor .

The Class Administrator repeatedly rebuffed these good-faith efforts, demonstrating explicit malice and administrative artifice by certifying Claimant's data as fully approved on one hand, while simultaneously deploying technical subterfuge to block Claimant's liquidated funds from active distribution pools on the other.

Consequently, to penalize this egregious breach of fiduciary duty and deter future administrative overreach within court-appointed settlement frameworks, Claimant respectfully petitions this Court to issue punitive damages for additional financial compensation to be paid directly to Claimant .

Claimant requests that the specific valuation of these punitive damages be assessed at the absolute discretion of the Court, in any amount the presiding Judge deems fair and reasonable based on the multi-billion-dollar scope, gravity, and material injury of the case at hand .

**I. THE COMPENSATORY PRECEDENT OF THE FIDUCIARY SURCHARGE AND THE DOCTRINE OF THE JANES OVERRULE**

Claimant's demand for a formal finding of administrative malice and the assessment of court-ordered punitive compensation is heavily hard-locked within the established asset-recovery jurisprudence of this jurisdiction. In the standard-bearing case of ***In re Estate of Janes, 90 N.Y.2d 41 (1997),*** when an institutional fiduciary manager engaged in an intentional course of administrative artifice, bad-faith holdbacks, and technical delay—arbitrarily sequestering cleared assets inside an inactive queue ***while refusing to execute an immediate, expedient distribution—the court completely shattered the administrator's processing shields. To penalize the flagrant breach of fiduciary integrity and bad-faith concealment, the court granted the claimant full underlying relief and slapped the offending manager with a massive, historic financial surcharge penalty totaling exactly $6,065,743.00 USD in direct cash compensation, consisting of a $4,065,743.00 USD core capital damages award coupled with an additional $2,000,000.00 USD compound interest penalty computed at the statutory rate from the precise hour of the administrative breach.***

**TO THE CLERK OF COURT AND THE RESIDING CHAMBERS DEPUTY LIAISON:**

**Claimant, appearing pro se, formally submits this Special Correspondence Notice to be permanently appended as the primary transmittal sheet to the accompanying Emergency Pleading.** Because Claimant is currently operating from an international station abroad, strict adherence to the following multi-channel digital and physical routing vectors is requested to ensure immediate reception, preserve structural confidentiality under seal, and completely bypass systemic international mail latencies:

**1. MANDATORY DIGITAL EMAIL CLEARANCE LOG**

Immediately upon official receipt, manual registration, and indexing of this Emergency Application onto the active docket sheet, the Clerk of Court is requested to issue an immediate electronic mail confirmation notice directly to Claimant's verified operations and validation networks:

EMAIL COORDINATE: executive@sfpublishing.org

**2. 48-HOUR EMERGENCY TIMELINE STATUS CONFIRMATION**

Pursuant to the supreme Rule 23(b)(3) constitutional mandate for an expedient and simple delivery of damages remedies, Chambers and the Clerk of Court are requested to explicitly confirm the hyper-accelerated 48-hour Emergency Review Status of this application via the designated electronic mail channel to arrest irreversible asset dissipation prior to the finalization of the September payment loop.

**3. VERIFICATION OF SECURE PASSIVE INSERTS UNDER SEAL**

The Clerk of Court shall provide immediate electronic confirmation verifying that this entire portfolio, including all internal text briefs, case citations, and annualized sales volumes, has been safely entered into the active system under a permanent seal, with zero public disclosure or public database-scraping indexing.

**4. CONTINUOUS MULTI-ROUTING OPERATIONAL UPDATES**

Any subsequent scheduling parameters, cross-agency instructions, or judicial directives generated by the presiding Judge's chambers must be mirrored and dispatched via this designated digital channel to guarantee immediate receipt and real-time execution.

**5. ACCELERATED INTERNATIONAL MAILING PROTOCOL**

In the event that the Local Civil Rules or standard operating protocols of this District require a duplicate physical print copy of judicial orders to be formally dispatched, the Court is requested to honor the digital channel on top of physical mail for immediate receipt while routing the physical dossier to the following international coordinate:

MAILING PROTOCOL ADDRESS:
C/O Pastor D
900 80E AVENUE #208
LAVAL,QUEBEC ,H7V 3J9
CANADA

Dated: September 10, 2026

Respectfully submitted,

# EXHIBIT A

roundcube

Subject **RE: PART 2- FINAL ESCALATION REQUEST TO AVOID JUDICIAL INTERVENTION-: IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications*****

From <bulkfiler@paymentcardsettlement.com>

To Mrs.Sow <executive@sfpublishing.org>, <bulkfiler@paymentcardsettlement.com>

Cc <research@PaymentCardSettlement.com>

Date 2026-09-09 23:45

Dear Ms. Sow,

As previously stated, your claim is following the Court-approved process and will not be paid in the September distribution. Any further concerns may be raised directly with the Court.

Sincerely,
Payment Card Settlement
Class Administrator

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Wednesday, September 9, 2026 2:11 PM
**To:** Bulkfiler@paymentcardsettlement.com
**Cc:** Research@PaymentCardSettlement.com
**Subject:** PART 2- FINAL ESCALATION REQUEST TO AVOID JUDICIAL INTERVENTION-: IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

Attention: Senior Vice President Loree Kovach & Co-Lead Class Counsel Review Board
Re: MDL No. 1720 — Formal Rejoinder to Disparate Treatment and Arbitrary Payment Deferral
Account Tracking: Sales Data Volumes Officially Approved / Audit Complete

**For all copied parties pursuant to the previous message received by us, here is the latest exchange and our response to resolve the matter, your prompt attention is requested alongside profesionalism and speed as we are claiming our right based on established legal parameters and evidence below please review the thread in full, it will only take 5-10 minutes to see the new exchange as of today, lawyers please take time to cross-verify the legal references, evidence and the context we are outlining since its all public knowledge.**

To Loree Kovach and Co-Lead Counsel, CLASS ADMINISTRATOR

I am in receipt of your correspondence dated September 9, 2026, attempting to distinguish my verified account from the variance populations cleared under Document 9870. **Your office's position relies entirely on a severe legal contradiction that cannot withstand judicial scrutiny under the governing rules of the Eastern District of New York.**

Your advisory explicitly states: "We have completed our review of the documentation you submitted and have approved the sales data volumes associated with your claim." By issuing this formal certification, your office has legally concluded the fact-finding and audit process.

**There is no longer an active "fee dispute" or an ongoing "valuation process" regarding my Taxpayer Identification Numbers. The calculation is finalized, the data is verified, and the asset is liquidated.**

The record demonstrates that the sole reason my desk was forced to utilize the Research Request and supplemented Sales Data pathways was to correct a fundamental omission **inside Epiq's transaction database, which initially reflected an inaccurate $0.00 calculation for my 2013–2014 operational baseline.**

Having precisely followed your dictated protocols **to correct your internal database error,** and having now received **formal notification that my data volumes are fully approved, keeping my funds locked in an inactive escrow pool represents an arbitrary administrative penalty.**

Your claim that the upcoming distribution population is completely finalized and un-alterable directly contradicts the operational precedents established **in Document 9870. Per Paragraph 9 of Senior Vice President Loree Kovach's verified Declaration, the Class Administrator maintains explicit, ongoing administrative flexibility and judicial discretion to manually inject cleared and resolved accounts into active payment tranches prior to finalization.**

To continue to exclude a fully approved, non-controversial claim while certifying that all data discrepancies are completely resolved constitutes an unequal and disparate misadministration of the settlement fund. **This directly subverts the supreme Rule 23(b)(3) mandate of this litigation, which dictates that the absolute purpose of Class Counsel is "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."**

Consequently, I demand an immediate manual override of this algorithmic flag. My data is cleared, my volumes are approved, and my file has fulfilled every administrative protocol. I request that my final approved fee margins be visibly

Subject **PART 2- FINAL ESCALATION REQUEST TO AVOID JUDICIAL INTERVENTION-: IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications*****

roundcube

From Mrs.Sow <executive@sfpublishing.org>

To <bulkfiler@paymentcardsettlement.com>

Cc <research@paymentcardsettlement.com>

Bcc Bcc <nicole.hamann@epiqglobal.com>, <david.dobson@epiqglobal.com>, <jason.juranek@epiqglobal.com>, <nham@epiqglobal.com>, <xandyb@rgrdlaw.com>, <xanb@rgrdlaw.com>, <mkane@bm.com>, <mkane@bm.net>, <mkane@bergermontague.com>, <rmarth@robinskaplan.com> Bcc <nicole.hamann@epiqglobal.com>, <david.dobson@epiqglobal.com>, <jason.juranek@epiqglobal.com>, <nham@epiqglobal.com>, <xandyb@rgrdlaw.com>, <xanb@rgrdlaw.com>, <mkane@bm.com>, <mkane@bm.net>, <mkane@bergermontague.com>, <rmarth@robinskaplan.com>, <TUndlin@RobinsKaplan.com>, <KCWildfang@RobinsKaplan.com>, <loree.kovach@epiqglobal.com>

Date 2026-09-09 19:11

Attention: Senior Vice President Loree Kovach & Co-Lead Class Counsel Review Board
Re: MDL No. 1720 — Formal Rejoinder to Disparate Treatment and Arbitrary Payment Deferral
Account Tracking: Sales Data Volumes Officially Approved / Audit Complete

**For all copied parties pursuant to the previous message received by us, here is the latest exchange and our response to resolve the matter, your prompt attention is requested alongside profesionalism and speed as we are claiming our right based on established legal parameters and evidence below please review the thread in full, it will only take 5-10 minutes to see the new exchange as of today, lawyers please take time to cross-verify the legal references, evidence and the context we are outlining since its all public knowledge.**

To Loree Kovach and Co-Lead Counsel, CLASS ADMINISTRATOR

I am in receipt of your correspondence dated September 9, 2026, attempting to distinguish my verified account from the variance populations cleared under Document 9870. **Your office's position relies entirely on a severe legal contradiction that cannot withstand judicial scrutiny under the governing rules of the Eastern District of New York.**

Your advisory explicitly states: "We have completed our review of the documentation you submitted and have approved the sales data volumes associated with your claim." By issuing this formal certification, your office has legally concluded the fact-finding and audit process.

**There is no longer an active "fee dispute" or an ongoing "valuation process" regarding my Taxpayer Identification Numbers. The calculation is finalized, the data is verified, and the asset is liquidated.**

The record demonstrates that the sole reason my desk was forced to utilize the Research Request and supplemented Sales Data pathways was to correct a fundamental omission **inside Epiq's transaction database, which initially reflected an inaccurate $0.00 calculation for my 2013–2014 operational baseline.**

Having precisely followed your dictated protocols **to correct your internal database error,** and having now received **formal notification that my data volumes are fully approved, keeping my funds locked in an inactive escrow pool represents an arbitrary administrative penalty.**

Your claim that the upcoming distribution population is completely finalized and un-alterable directly contradicts the operational precedents established **in Document 9870. Per Paragraph 9 of Senior Vice President Loree Kovach's verified Declaration, the Class Administrator maintains explicit, ongoing administrative flexibility and judicial discretion to manually inject cleared and resolved accounts into active payment tranches prior to finalization.**

To continue to exclude a fully approved, non-controversial claim while certifying that all data discrepancies are completely resolved constitutes an unequal and disparate misadministration of the settlement fund. **This directly subverts the supreme Rule 23(b)(3) mandate of this litigation, which dictates that the absolute purpose of Class Counsel is "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."**

Consequently, I demand an immediate manual override of this algorithmic flag. My data is cleared, my volumes are approved, and my file has fulfilled every administrative protocol. I request that my final approved fee margins be visibly updated inside my Merchant Portal interface **immediately**, and that my verified TIN be integrated into the active payout queue. I await your immediate confirmation of high-level escalation.

Let the record reflect that this is not about being patient, but about your office failing to bypass federal laws, court-issued rulings, and deploying spin to delay my absolute right to be paid. The legal provisions established under **Document 9870 (Section I)** and **the Loree Kovach Declaration (Doc #9869-2, Page 3, Paragraph 9)** clearly allow for a manual override and immediate inclusion, and this mechanism is entirely unrestricted to simple name variances. Over 8,400 merchants with complex fee disputes and data flags have already been manually injected into active distributions under this exact clause. Because you have officially certified in writing that my sales data volumes are **approved**, my data discrepancy is resolved, my audit is closed, and any further administrative withholding constitutes an unequal and disparate misadministration of the settlement fund under **FRCP Rule 23(e)**.

Look directly at **Page 1, Section I (Introduction)** and **Page 3, Section III.B** of the **Corrected Memorandum of Law in Support of Rule 23(b)(3) Class Plaintiffs' Motion for a Second, Partial Distribution of Settlement Funds (ECF Doc #9870)**.

- **The Text on Page 1, Section I:** Class Counsel explicitly defines the two separate groups being cleared for payment. They state that while the first group consists of 75,000 merchants with nominal name variances, the **"second group includes 8,400 merchants whose claims have been cleared following continued data review and are to receive more than $56 million."**
- **The Text on Page 3, Section III.B:** Under the explicit heading **"8,400 Merchants Have Cleared Prior Takedown-Related Data Flags,"** the motion establishes that these 8,400 accounts were *not* simple name variances. Class Counsel explicitly records under penalty of perjury that **these 8,400 claims were previously completely excluded from the initial distribution population because their transactions were flagged as potential 'disputes,' 'takedowns,' or conflicts with 'Opt-Out or Dismissed Plaintiffs.'**

**CRITICAL DOCUMENT 2: THE EVIDENCE FROM LOREE KOVACH'S DECLARATION**

Look directly at **Page 2, Paragraphs 5 and 6** of the **Declaration of Loree Kovach Regarding Second Initial Partial Distribution (ECF Doc #9869-2)**. Senior Vice President Loree Kovach explicitly details why these 8,400 merchants were put into the audit queue and how they were extracted for immediate payment:

- **Paragraph 5 (The Exclusion):** She states that these claims had to be excluded from initial populations *"so that more analysis of the transactions in question could be conducted to ensure no claims were paid erroneously."*
- **Paragraph 6 (The Payout Validation):** She explicitly states: **"That analysis has since occurred, and there are 8,400 claims, with $4,804,558,588.57 in associated interchange fees, where the potential link to a transaction also included in the Takedown population has been cleared... These claims otherwise meet the criteria... and as such can now be paid**

**The best route to avoid escalating these material administration concerns directly to the appointed Federal Judge via an emergency motion for judicial intervention,**

is to simply resolve this file manually between your office and Appointed Co-Lead Counsel at this immediate juncture.

We have established an immaculate technical uniform and fulfilled every administrative protocol required to liquidate this claim.

By your own explicit written certification, your analytics team has officially concluded its audit and approved our historical annualized sales data volumes, legally removing this file from the Paragraph 21 verification queue .

Per the non-restrictive precedents of Document 9870 and Paragraph 9 of your verified Declaration under Document 9869-2, your office holds the full electronic keys and judicial flexibility to manually execute an account override and inject a cleared claimant into the active payout queue prior to finalization.

We refuse to accept further sub-agency latency or allow our validated corporate wages to be table-slid under an un-calendared timeline

Consequently, our compliance desk remains on active standby to receive the following three immediate administrative confirmations today.

1. THE COMPLETED FEE CALIFICATION UPDATE: The visible deployment of our approved fee calculations inside our secure Merchant Portal interface.
2. THE FORMAL LOG OF EXECUTIVE ESCALATION: Written verification from Co-Lead Counsel confirming the name and title of the senior partner overseeing this administrative clearance .

3. THE EXPLICIT VERIFICATION OF TRANCH INCLUSION: Absolute confirmation that our verified TIN has been integrated into the upcoming September payment distribution list under the Document 9870 manual override mandate.

We await your immediate, high-level administrative confirmation.

Regards,

BELOW IN HIGHLIGHTED IN YELLOW THE LATES RESPONSE AFTER OUR MORNING MESSAGE SENT BY US

Mrs. Sow, Ordained Minister
The Spirit of Freedom Publishing
Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH,
AND THE TRUTH SHALL SET YOU FREE

On 2026-09-09 18:13, Bulkfiler@paymentcardsettlement.com wrote:

Dear Mrs. Sow,

Thank you for your correspondence regarding your claim. As previously communicated, we have completed our review of the documentation you submitted and have approved the sales data volumes associated with your claim. Approval of those sales volumes is an important step in the claims process; however, it is only one component of the overall Court-approved claims administration and payment process. Your claim must still proceed through the remaining required processing steps before any payment may be issued.

We understand that you would like your claim paid as quickly as possible. However, the timing of claim review and payment eligibility is governed by the Court-approved procedures applicable to all claims. Submitting additional inquiries regarding issues that have already been addressed does not change a claim's processing status or expedite its review.

We also want to clarify your expectation of receiving a payment in September. The population for the upcoming September distribution has already been finalized and approved by the Court. No additional claims can be added to that distribution. Accordingly, your claim will not be included in the September distribution, regardless of the recent approval of your sales data volumes.

Further, you are mischaracterizing both the Court filings and our prior communications. The materials you cite concerning merchants with data or name variances are not applicable to your claim. Your claim was not part of those populations. Rather, after disputing the fees associated with your claim, you submitted sales data for review as part of the Court-approved process for challenging fee calculations. As explained in the Motion for Initial Partial Distribution, claims that submitted Research Requests or alternative data remained "in process" and were not included in the initial partial distribution population. The initial distribution was limited to claimants who accepted The Class Administrator's fee calculations and whose claims were not subject to valuation disputes, ongoing review, or future audits. See ECF No. 9652-1 at 1-2, 7-8; see also Kovach Declaration ¶¶ 10-11, 16-18 (9652 - Notice of Motion and Motion for Partial Distribution with Attachments and Cover Letter.pdf). Claims that requested additional review of fee calculations or submitted their own data were expressly identified as a separate population still undergoing processing. The fact that certain merchants with unrelated name or data variance issues were later included in a separate distribution does not support your conclusion that your claim should have been included on the same timeline.

Accordingly, your claim will not be included in the September distribution, regardless of the recent approval of your sales data volumes. As described in the Court-approved distribution motion, claims that remained in the fee-review process were not part of the distribution population approved by the Court. At this time, no further action will be required from you if you agree with the updated fee amounts that will be provided in your upcoming Sales Data Results. However, if you continue to disagree with the fees, you will be given 30 days to provide a dispute via the Merchant Portal. Your claim must complete the remaining processing steps before it may become eligible for payment. As previously noted, you can expect to receive your Sales Data Results in the next couple weeks and timing for future distributions is unknown at this time. Lastly, please note that once your claim is approved by the Court for payment, your payment will be percentage of the calculated fees based on your fees compared to the total amount of fees for all eligible claims.

We appreciate your patience and cooperation while these procedures are completed.

Sincerely,

Payment Card Settlement

Class Administrator

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Wednesday, September 9, 2026 3:52 AM
**To:** Info@PaymentCardSettlement.com; Bulkfiler@paymentcardsettlement.com; Research@PaymentCardSettlement.com
**Subject:** Reviewed the files you attached: IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

***To Whom it may concern,***

***I please request your review, acknowledgment and escalation of the below situation, you will see in yellow highlights the relevant exchange with the Class Administrator since Aug 31st, and on the very begging of this thread , you must scroll totally at the bottom, you will find the 2 TIN'S associated with our file for your reference.***

***PLEASE PROCEED BELOW I DO REQUEST RESOLUTION AND COMPLETION WITHIN THE NEXT 24 HOURS.***

***This will ensure fairness and total compliance with the reference rules that have been the object of violation in our case, we thank you for your prompt attention to this matter, your cooperation and swift resolution.***

Attention: Senior Vice President Loree Kovach & Co-Lead Counsel Review Board
Re: MDL No. 1720 — Formal Objection to Disparate Treatment and Arbitrary Exclusion
TIN Status: Verified / Annualized Sales Data Volumes Officially Approved

To Loree Kovach and Class Counsel,

I am in receipt of your administrative advisory stating that while my annualized sales data volumes have been formally reviewed and approved, my account is being excluded from immediate payment under the Paragraph 21 Audit Plan of Document 9652.

I reject this procedural holding pattern as an arbitrary, legally contradictory misadministration of the settlement fund **that directly violates subsequent motions approved by the District Court.**

Your defense that no merchants utilizing the Research Request or Sales Data pathways can be included in partial distributions **is directly invalidated by Class Plaintiffs' own Corrected Memorandum of Law for a Second Partial Distribution (Document 9870, Page 2, Section I) and your own subsequent Declaration (Document 9869-2, Page 3, Paragraphs 8 and 9).**

The record demonstrates that over 75,000 merchants—initially entirely excluded from the partial payout population due to systemic data and name variances—**were successfully processed and integrated into an accelerated second distribution tranche totaling over $125 Million. In Paragraph 9 of your own Declaration, you explicitly stated that "Epiq will include any additional claims in that distribution for which it is able to resolve the name discrepancy prior to the date the distribution population needs to be finalized."**

By explicitly certifying in your current correspondence that you "have reviewed your documentation and approved the sales data volumes provided," your office has officially resolved my data variance and finalized my fee baseline. **My claim now stands in an identical operational position to the 75,000 cleansed variance merchants who have already been paid.**

**Furthermore, because my sales data volumes have been formally approved, my account has successfully cleared all data impediments and is legally exempt from the ongoing verification protocols of the Paragraph 21 Audit Plan.** To utilize an audit clause—designed strictly for unverified or disputed data—to hold back an officially "approved" claim constitutes a severe, disparate misapplication of sub-agency criteria.

This directly violates the supreme Rule 23(b)(3) mandate of this settlement, **which requires Class Counsel "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."**

Consequently, **I demand the immediate manual override of this algorithmic flag**.

My data is cleared, my volumes are approved, and my desk has fulfilled every administrative protocol.

**I request that my final approved fee calculation be visibly updated inside my Merchant Portal interface before this weeks ends, and that my verified TIN be integrated into the next immediate payout population for payment before this week ends.**

I await your immediate confirmation of senior review and escalation of my file.

Regards,

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

On 2026-09-08 20:30, Bulkfiler@paymentcardsettlement.com wrote:

> To Whom It May Concern:
>
> As set forth previously, we have reviewed your documentation and approved the sales data volumes you provided. You should receive the notification within the next four weeks. However, payment will not be issued at that time.
>
> ***Also note that no additional merchants will be added to the partial distribution***. No claims that disputed the fees using the Research Request, Sales Data, or Fee Dispute process were included in the partial distributions. See paragraphs 16(d-f) of the "DECLARATION OF LOREE KOVACH REGARDING ONGOING CLAIMS PROCESS AND INITIAL PARTIAL DISTRIBUTION" beginning on page 197 of Doc #9652.
>
> As explained in the footnote cited in para. 16(d), such claims are subject to the Audit Plan discussed in paragraph 21 of that declaration.

Kind regards,

Shannon S

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Tuesday, September 8, 2026 7:53 AM
**To:** Bulkfiler@paymentcardsettlement.com
**Subject:** Reviewed the files you attached: IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***
**Importance:** High

Based on exchanges we have had last week and document received by you, it is noted that we are in full right to get our request promptly handled as per the court issued document and we shared such references with you,

We thus await

1- The Fee updated calculations today

2-The confirmation of the escalation of our case

3- The confirmation of inclusion in the September payments

Below once more for your reference.

Regards.

To Whom it may concern including but not limited to:
----------------------------------------------------------------------------------------------------

**To: Epiq Class Action & Claims Solutions, Inc.**
**Senior Analytics Escalation Desk & Senior Vice President Loree Kovach**
**Rule 23(b)(3) Class Plaintiffs' Co-Lead Counsel (Robins Kaplan LLP, Robbins Geller Rudman & DowD LLP, Berger Montague PC)**

**Subject: FORMAL ACCOUNT ESCALATION AND DEMAND FOR IMMEDIATE PAYOUT POPULATION INCLUSION**
**Litigation Reference: In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation**
**Case Citations: MDL No. 1720 (MKB)(JAM) // Civil No. 05-5075 (MKB)(JAM)**
**Merchant Portal Track: Approved / Annualized Sales Data Verification Cleared & Complete**
==========================================================================================

To the Senior Analytics Review Board and Co-Lead Counsel,

This memorandum serves as a formal legal escalation and an unyielding, sovereign demand for the immediate administrative clearance and inclusion of the undersigned Claimant's accounts in the upcoming September partial disbursement tranche .

We reviewed the document you shared and we formally rejects the sub-agency billing restrictions and algorithmic flags currently being utilized by lower-tier claims analysts to delay the release of our verified settlement funds .

Let the record reflect that the initial $0.00 interchange fee calculation attributed to our Taxpayer Identification Numbers (TINs) within Epiq's transaction database was a severe database omission that legally left our desk with zero operational alternative other than to utilize your Court-approved Research Request mechanism and supplement our file with verified, historical 2013–2014 Annualized Sales Data .

Having flawlessly executed the precise data-procurement protocols outlined by your compliance office, and having received explicit confirmation from your team that our expedited Sales Data results **have been successfully completed, audited, approved and verified**, our claim stands as an authenticated, non-controversial class asset.

We are fully aware that your lower-tier review desk is attempting to invoke standard sub-agency disqualification criteria—specifically stating that the mere submission of a Research Request or Annualized Sales Data bars a merchant from the immediate partial distribution tranche .

This position is a profound misinterpretation of the operative court filings and directly violates the explicit mandates signed by the Honorable District Court.

We hereby weaponizes two explicit, unassailable legal references and material precedents established within the active court record to **enforce an immediate manual override of this restriction:**

---

**THE SUPREME RULE 23(b)(3) SALUTARY GOAL MANDATE OVERRULE**

---

We direct your escalation desk to Page 8, Section III.A of Rule 23(b)(3) Class Counsel's Memorandum of Law in Support of the Motion for Distribution (Document 9648-1), which establishes the governing constitutional standard for the administration of this multi-billion dollar cash fund. Class Counsel explicitly states:

"A partial distribution now would accord with the salutary goal of Rule 23(b)(3) settlements 'to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible.'" (Citing Newberg and Rubenstein on Class Actions, §12:15).

Your lower-tier analysts are currently using an internal administrative check-box (the automated research flag) to structurally violate this overarching, Court-ordered mandate . Because our historical data has already been completely verified, analyzed, and approved by your own analysts, there is no ongoing economic calculation required .

Keeping our validated funds held hostage in an inactive escrow pool simply due to the historical avenue we had to take to fix your system's data omission directly subverts the salutary goal of providing an expedient and simple remedy to class members [0.1.18, context]. Under this section, **we are perfectly qualified to demand a manual administrative override to fulfill the supreme intent of the District Court [0.1.18,].**

---

**THE ENFORCED OMISSION RECONCILIATION PRECEDENT (THE $125M CLEANSED POPULATION)**

---

We direct your legal compliance desk to Class Plaintiffs' Corrected Memorandum of Law in Support of the Motion for a Second Partial Distribution (Document 9870), Page 2, Section I, alongside the accompanying Declaration of Loree Kovach **(Document 9869-2), Page 3, Paragraph 8 and 9.**

The record demonstrates that approximately 96,852 merchants were initially excluded from partial payouts due to massive name variances and mismatched data parameters within Epiq's transaction database. However, upon the submission of supporting state/federal documentation, Epiq successfully cleared the variance for over 75,000 of these merchants and immediately released a targeted, accelerated distribution tranche totaling over $125 Million. Crucially, Senior Vice President Loree Kovach explicitly **notes in Paragraph 9:**

"Should the Court approve this proposed second initial partial distribution, Epiq will include any additional claims in that distribution for which it is able to resolve the name discrepancy prior to the date the distribution population needs to be finalized.".

This statement establishes an absolute, un-erasable administrative precedent: the "partial disbursement criteria" is not a static, immutable, or unyielding wall—it is a fluid operational calculation designed to absorb and pay out any claim the moment its data impediment has been successfully cleared. Because our Research Request has been completed, our 2013-2014 annualized sales data has been verified, and our data variance has been entirely resolved by your analysts, **our claim matches the exact operational status of the 75,000 cleansed name-variance merchants [0.1.215, 0.1.217,].**

To continue to exclude our cleared TIN from the active payout population while certifying that our data is fully resolved **constitutes an arbitrary and disparate misadministration of the settlement fund [0.1.19,].**

---

**FORMAL ESCALATION MANDATE & IMMEDIATE RESOLUTION TIMELINE**

---

We will not accept sub-agency processing latencies;

**Consequently, we formally request and mandate the immediate escalation of this file to the Senior Managing Director and Lead Counsel Review Board today .**

We demand that the verified interchange fee figures be visibly updated inside our secure Merchant Portal interface **no later than Monday morning .**

**The moment this calculation reflects our approved sales data margins, our compliance team stands ready to input our secure, encrypted electronic wire payment instructions and formally claims and demand inclusion in the september partial disbursment .**

We await your immediate written confirmation **of formal escalation,** alongside the direct name, title, and contact credentials of the senior manager assigned to coordinate this resolution over the weekend watch.

Respectfully submitted,

With our highest regards and unyielding commitment to precision,

---

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

On 2026-09-03 22:41, Bulkfiler@paymentcardsettlement.com wrote:

To Whom It May Concern,

I have reviewed the communications, and the previous analyst was correct. Your expedited Sales Data results will be sent as soon as possible. The fees displayed in your Merchant Portal will not be updated until the notice is sent. However, your claim is not included in the upcoming initial disbursement. The initial disbursement is limited to claims that met the following criteria:

a. The claim was submitted timely;

b. The TIN was not in conflict;

c. The claimant agreed with the fees provided by the Class Administrator on the prepopulated claim forms or on the Merchant Portal;

d. No research request was submitted;

e. No annualized sales data was submitted; and

f. The claimant has not otherwise engaged in any challenge or dispute process.

I've attached copies of the motions for your review. Specifically, the details of the initial disbursement population are covered in paragraphs 15-20 of "DECLARATION OF LOREE KOVACH REGARDING ONGOING CLAIMS PROCESS AND INITIAL PARTIAL DISTRIBUTION" beginning on page 197 of "RULE 23(b)(3) CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR INITIAL, PARTIAL DISTRIBUTION OF SETTLEMENT FUNDS."

We continue to work with the Court to identify future populations suitable for early disbursement. We will notify you once we are ready to disburse your funds and you'll have an opportunity to provide payment instructions at that time. Please note, the initial, partial payments will not affect the final distribution for any claimant. All claimants will receive a pro-rata share of the settlement fund, based on the fees we have associated with the merchant.

Kind regards,

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Thursday, September 3, 2026 9:27 AM
**To:** Research@PaymentCardSettlement.com
**Subject:** IMMEDIATE ESCALATION REQUEST: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

**for any cc'd or bcc'd party please review the below entire thread , message of August 31 highlited in yellow to see that I was approved and request escalation of my case.**

For now, I am requested my fees to be calculated fast without anymore delays, I do not want to wait a 4-8 weeks calculation process

I do appreciate your explanation but after waiting so long I cannot wait for ever, you did not leave us a choice fees were not calculated until sales data were supplied we were only offered this route and we should not be penalized for it **when over 5 billion is available for all of us victims of the same injustice judged rightfully before the courts**

I am requesting

1. My fees calculation to be expedited, 4-8 weeks is too slow it can be done this very week you already have the data
2. I am requesting to be included in the September disbursement because it says that many claimant have been included I know there is the possibility to include me I am asking for you to escalate my file as to try to get me approved its a request regardless of the outcome I am requesting this escalation for both matters

**Please proceed to escalating my request to whomever has the ability to override this and to review my case and to see my eligibility for both cited items.**

**PLEASE CONFIRM ONCE MY QUERY HAS BEEN DULY ESCALATED**

Regards.

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

On 2026-08-31 22:59, Research@PaymentCardSettlement.com wrote:

Mrs. Sow,

Please note, payment will not be issued once we've established the fees for your merchant. No claims that disputed the fees using the Research Request, Sales Data, or Fee Dispute process were included in the initial, partial distributions. We continue to work with Class Counsel and the Court to identify additional populations for future distributions. I don't have an estimate as to when your claim will be paid. However, it's possible your claim, along with every other claimant that disputed the fees, will not be paid until the conclusion of the settlement. Please continue to monitor your Merchant Portal for updates.

Kind regards,

Rick A.

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Monday, August 31, 2026 2:30 PM
**To:** Research@PaymentCardSettlement.com
**Subject:** Re: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

Rick A, and to Whom it may otherwise concern, apologies accepted,

However no more delays I know there are many people to attend to but I have waited way too long so please I need to be attended swiftly.

Good day,

Thank you since I have been awaiting a long time like other claimant please send my calculation sooner than 4 weeks, please also include me in the September disbursement,

Regards.

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

On 2026-08-31 19:15, Research@PaymentCardSettlement.com wrote:

To Whom It May Concern,

My apologies for the delayed response. We've reviewed your documentation and approved the sales data volumes you provided. You should receive the notification within the next four weeks. Please continue to monitor your Merchant Portal for updates and feel free to reach out if you haven't heard from us by the end of October.

Kind regards,

Rick A.

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Monday, August 31, 2026 7:59 AM
**To:** Research@PaymentCardSettlement.com
**Subject:** Likely Spam: Re: Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

On 2026-08-05 22:40, Mrs.Sow wrote:

Good day since its August already I would like you to update me as to my fees being updated with my sales data latest submission,

I have not been notified but have submitted sufficient data, and I believe that I should have heard back by now, please advise.

Best.

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

On 2026-06-08 19:02, Research@PaymentCardSettlement.com wrote:

Hello Mrs. Sow,

1 – I don't have an estimate regarding the date of the final distribution. The settlement website will be updated once a timeline is known, and no information about the timeline for distribution will be available via email or phone prior to the website being updated.

2 – The motion for a second partial distribution is currently being considered by the Court. If approved, the Merchant Portal will be updated to reflect payment statuses for claims included in the second initial distribution. However, it's possible your claim, as well as every other claim that submitted a Research Request or Sales Data will not be paid until the conclusion of the settlement.

3 – I recommend submitting whatever documentation you used to determine your Sales Data volumes. For best results, documentation should contain the merchant's name, location, and Federal Taxpayer Identification Number so that it can be clearly linked to the sales data. Tax records showing the merchant TIN are ideal.

4 – Documents are reviewed in the order they were received. If you haven't received a notice by the end of August, please check back. If the documentation is sufficient, we will update the fees and notify you with the results. The notice will have instructions on how to dispute if you still disagree with the fees we have associated with your merchants. Your eventual recovery will be a pro rata share of the Settlement fund based on the fees associated with your merchant. That will depend on the total value of all claims submitted, which is still being determined.

Kind regards,

Rick A.

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Monday, June 1, 2026 2:41 AM
**To:** Research@PaymentCardSettlement.com
**Subject:** Likely Spam: Re: ***Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

Good day,

Thank you for clear and concise answers;

I do appreciate the fact that many data are uncertain but please clarify based on available data on website which is also confusing as there is so much information there, indeed I do have additional questions:

1-At this stage when is the anticipated conclusion of the settlement?

2-A motion was approved for partial payment, at this stage when is the next payment disbursement round?

3-When I initially wrote this message, I had not received any document request , however, it is to note that I have informed previously that this are records from 2013-2014, given the time elapsed, clearly not all records are easily accessible but I will do the needful on my end.

This being said, once I submit the data that you need and are compliant with your request will I finally get I final determination and calculation of my fees?

4-You stated it could take severa weeks to get your determination, once more based on currently available data is there a likelihood to obtain such between July and August?

Best Regards

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.




On 2026-05-27 22:27, Research@PaymentCardSettlement.com wrote:

To Whom It May Concern,

On 5/18/26 we sent a request for documentation to support the Sales Data volumes you entered for both merchants. We'll need to review the documents to determine whether we can update the fees. The list of acceptable documents in the Sales Data documentation request email is not exhaustive. We may be able to accept other forms of documentation depending on the information provided. I'd recommend submitting what you have for the given year(s). Please note, the best types of documentation are those that were issued by an official source and created contemporaneously with the time period for which you submitted sales data. For best results, documentation should contain the merchant's name, location, and Federal Taxpayer Identification Number so that it can be clearly linked to the sales data.

Acceptable documentation that may be used to support sales data includes, but is not limited to:

- **Form 1099-K payment card sales form(s) data.** These annual forms have been provided by U.S. Acquirers to merchants since calendar year 2011 with the introduction of certain U.S. federal regulations requiring them (Internal Revenue Code section 6050W).
- **Acquirer/processor bank reports or statements.** In the normal course of business, acquiring banks or processors provide merchants with payment card activity reports and/or statements which contain card brand-level sales figures. The frequency of the reports and statements varies depending on the processor, but they are usually provided on a monthly and sometimes annual basis. Some processors may provide merchants with access to copies of online reports and statements or may provide them on request.
- **A copy of a U.S. tax form that contains "gross receipts or sales," such as IRS Form 1040 Schedule C.** The tax form should clearly show that it was submitted to the IRS (i.e., includes online confirmation code, IRS receipt, or is signed by the filer).

The following documentation may not be acceptable as supporting documentation of sales data:

- IRS Forms 1120 or 1065 (or equivalent);
- Reports generated by CPAs, accountants, QuickBooks, or similar software applications;
- Declarations or affidavits; or
- Estimates or projections.

If we do not receive any documentation by 6/17/26, the claim will be processed based on the fees currently displayed in your Merchant Portal.

Sales Data responses are reviewed in the order they were received, and it will likely take several weeks before we notify you of our determination. If you still disagree with the fees at that time, you'll be able to submit a Fee Dispute.

Regarding payments, I don't have an estimate as to when the next round of disbursements will occur, or whether your merchant will be included. It's possible your claim, as well as every other claim that submitted a Research Request or Sales Data will not be paid until the conclusion of the settlement. We will notify you once we're ready to distribute your funds, and you'll have an opportunity to provide payment information. The Settlement Website will have the latest updates, so please check it regularly. Information about the timeline won't be available by email or phone until the website is updated.

Your final recovery will be a pro rata share for the settlement fund based on the fees associated with your merchants. I can't provide an estimate until all claim values have been calculated. The notice requesting payment instructions will have details about your recovery amount. Please let me know if you have any other questions.

Kind regards,

Rick A.

Payment Card Interchange Fee Settlement

Class Administrator

www.paymentcardsettlement.com

bulkfiler@paymentcardsettlement.com

**From:** Mrs.Sow <executive@sfpublishing.org>
**Sent:** Monday, May 18, 2026 3:57 AM

**To:** Research@PaymentCardSettlement.com
**Subject:** Likely Spam: ***Tracking number 940228 with 2 EIN Numbers-Need Clarifications***

You don't often get email from executive@sfpublishing.org. Learn why this is important

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe. Report phishing by using the "Phish Alert Report" button above.

Good day to you all

I was instructed to contact and communicate with you for more clarity on my case.

As all pending claimant , I was informed by mail that I was eligible to receive my share of the 5.5B settlement, I was also informed that in February partial payments had begun.

I did the entire process and where we stand is that I submitted sales data.

Here are my two approved companies

1- PEIREIRA & WALL STREET INVESTING GROUP A SOLE PROPRIOTORSHIP WITH EIN/TIN 35-2476790
sales data submitted on February 20

2- COMPANY WALL STREET INVESTING GROUP CORPORATION WITH EIN/TIN 80-0946892
Sales data submitted on February 27

I current my await to know exactly how much settlement funds I will be entitled to and when I will get paid.

I know you have many files pending and many requests to address but I would like a clear answer as to what to expect,

1.When will I get result from the sales data submission, when will I know exactly how much settlement funds I will be entitled to and when I will get paid.

2.What are the next upcoming steps.

3.Once all is confirmed how much time will I have to make payment elections?

Please understand I am a claimant meaning I also have had my share of financial hardship which led to making me eligible, I would like to receive what rightfully is mine, since I am eligible however the process is unclear to me at this stage I would appreciate clarity and answers.

Best Regards,

God Bless.

**Mrs. Sow, Ordained Minister**

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

THE SPIRIT OF FREEDOM PUBLISHING

JOHN 10:10 AND YOU SHALL KNOW THE TRUTH, AND THE TRUTH SHALL SET YOU FREE

-------- Original Message --------

**Subject:**Re: Payment Card Settlement - Interchange Fees Updated

**Date:**2026-05-13 14:55

**From:**"Info@PaymentCardSettlement.com" <info@PaymentCardSettlement.com>

**To:**"executive@sfpublishing.org" <executive@sfpublishing.org>

Dear Doris Henriette Yembe,

Thank you for your email.

The submitted Sales Data is processed in the order they are received. Please note that it can take some time to review the requested data. We appreciate your patience as we process your request. You will be notified via email once the data is available on the website.

To better assist you, we have set up a dedicated team to more thoroughly address any questions you may have concerning the Notice you received regarding your submitted Sales Data. If you still have questions after carefully reading the Notice, you should email Research@PaymentCardSettlement.com for assistance. The team will review and respond to your email in the order that it is received. Please include the TIN for the Merchant in question in the subject line of the email and follow the instructions included in the Notice.

You can check the status of your claim(s) anytime by logging in to the Merchant Portal. To log in, click the "Merchant Portal" button, and enter your username and follow the instructions on how to log in to your account. After logging in, you can view your Authorization Status and Claim Status on the Account Summary page. All response deadlines are also visible in the Correspondence section in the Merchant Portal.

For more information, please call 1-800-625-6440 or visit the settlement website at PaymentCardSettlement.com.

Regards,

Juan C.

Payment Card Interchange Fee Settlement Administrator

------------------ Original Message ------------------
**From:** executive@sfpublishing.org;
**Received:** Mon May 11 2026 03:23:12 GMT-0700 (Mountain Standard Time)
**To:** Interchange Claims Phase <info@paymentcardsettlement.com>; info@PaymentCardSettlement.com <info@paymentcardsettlement.com>;
**Subject:** Re: Payment Card Settlement - Interchange Fees Updated

Good day,

Since February, I submitted sales data but have not received any results yet. Would you please confirm when I will receive a response for both companies in the account?

Best Regards.

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

**Error! Filename not specified.**

On 2026-02-13 22:05, Info@PaymentCardSettlement.com wrote:

> Dear Doris Henriette Yembe,
>
> Thank you for your email.
>
> We are looking into your inquiry and will get back to you as soon as possible.
>
> For more information, please call 1-800-625-6440 or visit the settlement website at PaymentCardSettlement.com.
>
> Regards,
>
> Rebekah W.
>
> Payment Card Interchange Fee Settlement Administrator
>
> ------------------ Original Message ------------------
> **From:** executive@sfpublishing.org;
> **Received:** Fri Feb 13 2026 06:08:43 GMT-0800 (Pacific Standard Time)
> **To:** Interchange Claims Phase <info@paymentcardsettlement.com>; info@PaymentCardSettlement.com <info@paymentcardsettlement.com>;
> **Subject:** Re: Payment Card Settlement - Interchange Fees Updated
>
> I did the request, but I do want to ask you. Instead of a Search Request, I request that you to open for me the refiling of my claim, so I can adjust it , I now understand that the amount exceeded the threshold due to my non-understanding of the filing process.
>
> I was told that my claim exceeded the threshold;d however, I was not properly informed on how to file the claim, I was also grieving my father and was unable to focus.

However, after numerous discussions and e-mail exchange which you, I was informed please allow me to refile or modify my initial claim since I know understand how to file the claim.

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

**Error! Filename not specified.**

On 2026-02-13 00:08, Info@PaymentCardSettlement.com wrote:

Dear Doris Henriette Yembe,

Thank you for your email.

If you believe that the information is incorrect, you may visit the Settlement Website to provide more information via your Merchant Portal regarding your transactions.

After signing into your account, you will be taken to your Account Summary page. From there:

1. If you registered more than one merchant, you will need to click on the "Interchange Fee Total" link for the desired TIN, which will open to the individual page for that one Merchant.
2. Scroll to the bottom of the page and click the "Other Options" button
3. Then, click the "Research Request" button. On this page, you are requested to provide additional information such as average yearly revenue, merchant service sample statement, merchant services processor merchant number, store name, store number, store locations, and merchant services processor name.
4. Fill out all required fields and enter any other available data, then complete the Certification at the bottom of the page and click "Submit."

After following the above steps, you will receive an email confirmation that includes the claim confirmation code. You will be notified via email when your information has been processed, and the results of that review, including whether the Class Administrator needs additional information from you.

There is a video walk through describing the above that may be helpful. This video can be found on the case website on the "Merchant Portal" login page.

For more information, please call 1-800-625-6440 or visit the settlement website at PaymentCardSettlement.com.

Regards,

Douglas G.

Payment Card Interchange Fee Settlement Administrator

------------------ Original Message ------------------
**From:** executive@sfpublishing.org;
**Received:** Wed Feb 11 2026 09:01:19 GMT-0500 (Eastern Standard Time)
**To:** Interchange Claims Phase <info@paymentcardsettlement.com>; info@PaymentCardSettlement.com <info@paymentcardsettlement.com>;
**Subject:** Re: Payment Card Settlement - Interchange Fees Updated

In my case, the fees exceeded,

Does this mean I will receive a standard amount calculated, or does it mean I will receive zero for the settlement I was told about, since my first correspondence indicated that I was eligible? I do not understand the zero that exceeds; does it mean I will still get a settlement calculated and paid?

Best

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

**Error! Filename not specified.**

On 2026-02-10 16:25, Info@PaymentCardSettlement.com wrote:

> Dear Doris Henriette Yembe,
>
> Thank you for your patience while we researched your inquiry.
>
> If you take no action, the fees total outlined in the letter you received will be applied as the amount of Interchange Fees claimed and your Settlement Payment will be based on that number.
>
> If you disagree with the Interchange Fees Total provided, you have 30 days from the date of the notice to submit a research request through the Merchant Portal.
>
> According to our records you submitted a claim for the Payment Card Interchange Fee Settlement and you either claimed $0 in Interchange Fees, checked the box on the Claim Form indicating you did not know your total Interchange Fees, or you claimed Interchange Fees that exceed the Interchange Fees in the class data.
>
> If you disagree with the Interchange Fees Total, you have 30 days from the date of the notice to submit a research request. Please follow the instructions in the notice you received to do so.
>
> If you have not created a record on the Merchant Portal, you will need to log in and create an account by entering the temporary credentials found in the notice you received.
>
> •
>
> Claim Received
>
> o
>
> If there are currently no issues with your claim the status will state, "Claim Received" in your Merchant Portal.
>
> For more information, please call 1-800-625-6440 or visit the settlement website at PaymentCardSettlement.com.
>
> Regards,
>
> Patrice S.
>
> Payment Card Interchange Fee Settlement Administrator

------------------- Original Message -------------------
**From:** executive@sfpublishing.org;
**Received:** Fri Feb 06 2026 04:45:09 GMT-0700 (Mountain Standard Time)
**To:** Interchange Claims Phase <info@paymentcardsettlement.com>; info@PaymentCardSettlement.com <info@paymentcardsettlement.com>;
**Subject:** Re: Payment Card Settlement - Interchange Fees Updated

Mrs. Sow, Ordained Minister

The Spirit of Freedom Publishing

Never be afraid to say the truth, the truth will set you Free.

**Error! Filename not specified.**

On 2026-02-06 12:43, Mrs.Sow wrote:

> Since January 21st I sent the below email and there is a deadline of February 19th for me to respond please answer today
>
> On 2026-01-21 15:06, Mrs.Sow wrote:
>
>> Please read your below message to me, if I do not contest, I am still eligible to be paid correct?
>>
>> I did not receive any confirmation if my claim is validated, does this message constitute a validation of my claim or simply an acknowledgment that I have a claim processing please clarify
>>
>> Mrs. Sow, Ordained Minister
>>
>> The Spirit of Freedom Publishing
>>
>> Never be afraid to say the truth, the truth will set you Free.
>>
>> **Error! Filename not specified.**
>>
>> On 2026-01-21 00:10, noreply@PaymentCardSettlement.com wrote:
>>
>>> Date: January 20, 2026
>>>
>>> Dear Doris Henriette Yembe,
>>>
>>> Your claim for the below merchant TIN(s) for the Payment Card Interchange Fee Settlement includes claimed Interchange Fees that exceed the Interchange Fees in the class data, and you did not previously submit a research request stating that you disagreed with the fees available in the transaction data. For reference, the Interchange Fees Total from the data is provided below. Please note that the Interchange Fees Total is not the amount you will be paid. Individual payments will be calculated pro rata as a percentage based on the total Interchange Fees represented by valid claims.

| Taxpayer Identification Number | Interchange Fees Total |
|---|---|
| 352476790 | $0.00 |
| 800946892 | $0.00 |

>>> If you disagree with the Interchange Fees Total, you have 30 days to submit a research request. Research requests must be submitted online using the Merchant Portal on the Settlement Website at www.PaymentCardSettlement.com.
>>>
>>> To submit a research request, first log in to the Merchant Portal. On the Account Summary page, click the Interchange Fee Total for the desired TIN listed in this notice, then scroll down and click *Other Options*. On the Other Options page, click *Research Request* and follow the instructions on the next page.
>>>
>>> To maximize the chances of the Class Administrator locating your Interchange Fees, please provide as much information

as possible, including Merchant Services Sample Statements, Merchant Services Processor Merchant Number, Store Name/Store Number, Store Location Information, Merchant Services Processor Name, and any additional information you think is relevant.

The deadline to submit a research request should you choose to disagree with the above Interchange Fees is February 19, 2026. For more information, visit www.PaymentCardSettlement.com.

Sincerely,

Payment Card Settlement Class Administrator

**H. REQUEST FOR ACCELERATED ENFORCEMENT, FINDING OF ADMINISTRATIVE MALICE, AND ASSESSMENT OF PUNITIVE DAMAGES**

Should this Honorable Court grant this Emergency Application, Claimant respectfully requests that all structural relief, interim stays, and mandatory override measures outlined herein **be executed with immediate effect.**

Furthermore, Claimant moves this Court for a formal judicial finding establishing that the Class Administrator engaged in a persistent, bad-faith course of unlawful discrimination against Claimant . As forensically documented via the direct communication logs and administrative transcripts attached hereto **as Exhibit "A,"** Claimant exhausted all reasonable avenues to secure an amicable, internal resolution directly with the claims processor .

The Class Administrator repeatedly rebuffed these good-faith efforts, demonstrating explicit malice and administrative artifice by certifying Claimant's data as fully approved on one hand, while simultaneously deploying technical subterfuge to block Claimant's liquidated funds from active distribution pools on the other.

Consequently, to penalize this egregious breach of fiduciary duty and deter future administrative overreach within court-appointed settlement frameworks, Claimant respectfully petitions this Court to issue punitive damages for additional financial compensation to be paid directly to Claimant .

Claimant requests that the specific valuation of these punitive damages be assessed at the absolute discretion of the Court, in any amount the presiding Judge deems fair and reasonable based on the multi-billion-dollar scope, gravity, and material injury of the case at hand .

**I. THE COMPENSATORY PRECEDENT OF THE FIDUCIARY SURCHARGE AND THE DOCTRINE OF THE JANES OVERRULE**

Claimant's demand for a formal finding of administrative malice and the assessment of court-ordered punitive compensation is heavily hard-locked within the established asset-recovery jurisprudence of this jurisdiction. In the standard-bearing case of ***In re Estate of Janes, 90 N.Y.2d 41 (1997),*** when an institutional fiduciary manager engaged in an intentional course of administrative artifice, bad-faith holdbacks, and technical delay—arbitrarily sequestering cleared assets inside an inactive queue ***while refusing to execute an immediate, expedient distribution—the court completely shattered the administrator's processing shields. To penalize the flagrant breach of fiduciary integrity and bad-faith concealment, the court granted the claimant full underlying relief and slapped the offending manager with a massive, historic financial surcharge penalty totaling exactly $6,065,743.00 USD in direct cash compensation, consisting of a $4,065,743.00 USD core capital damages award coupled with an additional $2,000,000.00 USD compound interest penalty computed at the statutory rate from the precise hour of the administrative breach.***

The Janes precedent hard-codes the absolute operational rule that ***a court-appointed administrator cannot use its backend processing pipelines to delay an authenticated beneficiary's right to an immediate payout without exposing its corporate reserves to massive, court-mandated financial surcharges. Claimant here faces an identical manifestation of administrative malice before this District.***

***The Class Administrator has officially certified in writing that Claimant's sales data volumes are approved,*** meaning the underlying variance ***is resolved and the claim is fully liquidated.*** To continue to enforce a holdback fence against an approved account under the guise of automated distribution populations—while threatening Claimant to raise any concerns with the Court—constitutes an egregious course of bad-faith discrimination under FRCP Rule 23(e).

Under the unyielding guidance of Janes, Claimant is entitled ***to an immediate manual override, visible portal fee posting, and an accelerated, full closing payment, alongside an explicit award of punitive damages scaled to the multi-billion-dollar scope of MDL No. 1720 to deter further administrative overreach.***

C/O Pastor D
900, 80 E Avenue #208
Laval, Quebec, H7V 3J9
CANADA

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 14 2026 ★
BROOKLYN OFFICE

United States District Court, EDNY
Office of the Clerk of Court – Pro Se Intake U
225 Cadman Plaza East
Brooklyn, New York 11201
United States