September 14, 2026

United States District Court
for the Eastern District of New York
Clerk of Court
225 Cadman Plaza East
Brooklyn, New York 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2026 ★
BROOKLYN OFFICE

~~In re~~ *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-md-01720 (BMC)(JAM)(E.D.N.Y.)

Dear Ms. Mahoney,

The undersigned merchants accept Visa and Mastercard credit cards and debit cards. We write to request that the Court approve the proposed Settlement Agreement in this now 21-year-old litigation.

We understand that the Court will apply the legal criteria that govern approvals of class actions settlements and draw its own conclusion about whether the proposed Agreement is fair and reasonable. But we want the Court to know that the vast majority of merchants support this Agreement. The Court should hear from the heartland of merchants, not just from a vocal minority.

Is the Settlement Agreement perfect? No. Does it include every reform that is on the wish list of at least one of us? No. Is it a reasonable compromise in the real world where merchants could lose at trial or on appeal, or could win on liability but not get relief as good as—or as soon as—the Settlement provides? Absolutely.

The basic reasons we support approval are straightforward:

**First, the Settlement Agreement provides most of the relief that the merchants have long sought.** Two of the game-changers are the ability to selectively decline Premium and Commercial cards and to surcharge up to 3% regardless of American Express's rules.

It is true that some merchants have such a high volume of Visa Premium-card transactions that declining them would be difficult (that is less likely true of Mastercard Premium cards). But it would be no more difficult than declining Chase-issued cards (or Citi or Capital One), which is what the Objectors apparently are holding out for. And most merchants would be able to selectively decline Commercial cards. Moreover, the *right* to decline these cards gives merchants leverage to negotiate interchange rates with the networks. These reforms are valuable to us, and we want them.

We understand that a national merchant has argued that the ability to surcharge is worthless to it because a few states' no-surcharge statutes would prevent it from implementing a uniform nationwide surcharging policy. Large national and regional merchants routinely vary their policies to conform to state or local laws. A particular merchant's insistence on a single unvarying surcharge policy should not prevent all other merchants from getting this relief. The Settlement Agreement's right to surcharge is valuable to us, and we want it regardless of whether certain merchants get the right but decide not to exercise it.

**Second, what the Settlement Agreement provides far outweighs the little that it doesn't.** In addition to the Honor-All-Cards and surcharging relief, the Settlement Agreement provides other reforms that are valuable to us and that we want. These include repealing the Honor-All-Wallets rules; allowing dual-pricing in no-surcharge states; permitting pilot programs to test selective non-acceptance of the high-cost cards; allowing multi-store merchants to use different steering techniques in different stores; providing a substantial merchant-education program; supporting the formation of buying groups; and capping and rolling back the interchange rates.

What the Settlement Agreement did not reform are the rules that prohibit merchants from

selectively declining or surcharging particular issuers' cards. It is not at all clear that, in light of all the other reforms, the ability to decline or surcharge by issuer is necessary to deliver competitive interchange rates. Moreover, the Settlement Agreement provides other ways to generate issuer competition, including the ability to discount by issuer; to partner with a particular issuer to promote the new, low-fee "Standard" cards; and to accept only a digital wallet issued by a favored issuer. The issuer-differentiation Scenarios listed in Appendix H of the Settlement Agreement show real insight and knowledge of this industry. Merchants, including (but not only) large regional, national, and online merchants, can make very effective use of these steering techniques. These and the other reforms are valuable to us, and we want them.

**Third, the Settlement Agreement is a reasonable compromise.** We take as a given that the settlement of a lawsuit is not a capitulation by one side, but a compromise by both sides. It is clear to us that the Settlement Agreement represents a reasonable compromise.

We take note of the Court's admonitions at the preliminary approval hearing, and in the written opinion, of the substantial risks facing the merchants in this case:

- "I'll say, having listened to defendants' counsel – just an impression – but it does occur to me maybe they should try the case instead of settling it."
- "It seems to me that to complain about having fixed interchange rates – what is the alternative that isn't complete chaos?"
- "Be careful what you wish for." (In response to an Objector who said she would prefer to lose at trial than to accept the Settlement Agreement.)
- "Your assumption seems to be that if plaintiffs went to trial and prevailed, or if you opted out and prevailed, the least you'd get is elimination of the honor all cards rule. [But if] I end up being the judge on that case… [s]eems to me, I'd start looking at it from the perspective of carving away attributes of the honor all cards rule, not necessarily [junking] the whole rule. In other words, I want to make as little change as possible to restore competition rather than go [at] it with a meat cleaver."

- "Principally, the Court sees obstacles to Plaintiffs satisfying their burden at trial that the Networks' rules unreasonably restrain trade under the rule of reason."

- "The Court expressed at the preliminary settlement approval hearing that the Networks may want to consider taking this to trial. This was the Court's admonition to Plaintiffs, and to the objectors, that establishing liability was not a foregone conclusion."

- "But the question is not whether the Amended Settlement constitutes the best possible recovery, *end stop* – it's whether the Amended Settlement constitutes the best possible recovery in light of what can be gained and lost through trial. None 3of the objectors have persuaded the Court that they will, or even can, get more through trial."
- "As discussed above, there is a legitimate risk that Plaintiffs will not be able to establish liability at trial. ... There is also a risk, a bigger one in comparison, that Plaintiffs will not secure the relief that the Amended Settlement offers, much less the additional relief on which the objectors insist."

- "The Court has considered Plaintiffs' best possible recovery at trial and the attendant risks of litigation – that is, the risk of winning less or losing everything – and finds that these factors weigh in favor granting preliminary approval."

We are well aware of the significant risk that, if this case were tried, the merchants could lose at trial or on appeal, or could win on liability but not get relief as good as—or as soon as—the Settlement provides. In fact, the two plaintiff groups that tried the American Express anti-steering rules lost on the ground that restraints were found not to be anticompetitive. This Court has also pointedly identified the litigation risks.

The Settlement Agreement's reforms are valuable to us and to all merchants. We are opposed to risking those reforms for the chance of getting additional relief that these reforms make unnecessary, that experience and this Court have told us is a stretch, and that, given the near-certainty of appeals, would not actually be implemented until five, ten, or more years from now, if ever.

We ask the Court to approve the Settlement Agreement and get its substantial and valuable reforms implemented as soon as possible.

Sincerely,

Lizzie Reinholt
*Bonefish Bungalow*

Tee Comeaux
*Brave New Television*

Tamara Righettini
*Burque Throwdown*

Carson Palmer
*Carson Palmer Guide Service LLC*

Akilah Graham
*Cleopatra Jones Paralegal Services*

Frank Swoboda
*Corner Booth Media*

Kathy Willard
*Cross Tees Screen Printing*

Coco Gil
*CSG Ventures LLC*

Eric Eisenhammer
*Dauntless Communications*

James Day & Emily Wicks
*Day Electric LLC*

Cady Porter
*Fannin Farm and Garden*

Emily James
*Floriography*

BJ McCollister
*Frame Strategies*

Dennis Haugen
*General Grain Mobile Services*

Scott Glynn
*Glynn Transportation*

Patrick Demmer
*Graham Memorial Community COGIC*

Amanda Wald
*Hair By Amanda*

Steve Bader
*Haute Luxury Events & Fine Flowers*

Holly Rantz
*Holly Rantz Illustrations*

Maryam Muhammad
*Ikigai Styles*

Shannon Lewy
*Lewy Physical Therapy*

Kirstan Borne
*Location Innovators, LLC*

Amy Brown
*MainelyNP Primary Care*

Pamela Vreen
*Make It Home Safe*

Rachel Kimmery
*Make It Personal*

Andy Edwards
*MD Medical Services*

Michael Mazzocco
*Michael Mazzocco Events*

Cherri Porter
*Mississippi Mortuary Services*

Nancy Burke
*NB Consulting*

Sharon Fain Steenbergen
*NS Bar Cattle Company*

Felicity Colangelo
*Nurture Counseling*

Clif Hon
*Peak Automotive*

Noah DeFillippis
*Pinecone+Chickadee*

Paul Selberg
*Pioneering Spirit LLC*

Jeff Queen
*Queen Tackle*

Robin Rossenfeld
*R3Mediation, LLC*

Raye Lomini
*Raye's Mobile Kitchen & Convenience*

Mark Howard
*Royale Kitchen & Cocktails*

Aaron Edwards
*Simmons Tire Services*

Sofia Lock
*Sofia Lock, Inc.*

Maya Wheeler
*Sugary Stop LLC*

Chariese Blue
*The Palace Salon*

Jeron Dotson
*The Poke Bowl – Flint*

Joseph Melnick
*The Portland Center for Counseling and Psychotherapy*

Jakob Olson
*Theory JKB*

Ashley Fathergill
*Upside Goods*

Aaron Edwards
*Vanjon's Pharmacy*

Carol Pom
*West Seattle Dog House*

Martin Fitzgerald
*Wild West Strategies*

1832 Bonnycastle Ave.
Louisville, KY, 40205

LOUISVILLE KY 400
14 SEP 2026 PM 3 L

forever
USA

STATION

LOUISVILLE STATION
SEP 14 2026
40205 USPS

United States District Court
for the Eastern District of New York
Clerk of Court
225 Cadman Plaza East
Brooklyn, New York, 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 21 2026 ★
BROOKLYN OFFICE

11201-183299