# Exhibit 6

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LITIGATION | MDL No. 1720<br><br>Docket No. 05-md-01720-MKB-JO |
| BARRY'S CUT RATE STORES INC.; DDMB, INC. d/b/a EMPORIUM ARCADE BAR; DDMB 2, LLC d/b/a EMPORIUM LOGAN SQUARE; BOSS DENTAL CARE; RUNCENTRAL, LLC; CMP CONSULTING SERV., INC.; TOWN KITCHEN, LLC d/b/a TOWN KITCHEN & BAR; GENERIC DEPOT 3, INC. d/b/a PRESCRIPTION DEPOT; and PUREONE, LLC d/b/a SALON PURE,<br><br>Plaintiffs,<br><br>-v-<br><br>VISA, INC.; MASTERCARD INCORPORATED; MASTERCARD INTERNATIONAL INCORPORATED; BANK OF AMERICA, N.A.; BA MERCHANT SERVICES LLC (f/k/a DEFENDANT NATIONAL PROCESSING, INC.); BANK OF AMERICA CORPORATION; BARCLAYS BANK PLC; BARCLAYS BANK DELAWARE; BARCLAYS FINANCIAL CORP.; CAPITAL ONE BANK, (USA), N.A.; CAPITAL ONE F.S.B.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CHASE MANHATTAN BANK USA, N.A.; CHASE PAYMENTECH SOLUTIONS, LLC; JPMORGAN CHASE BANK, N.A.; JPMORGAN CHASE & CO.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK N.A.; CITIGROUP, INC.; CITICORP; and WELLS FARGO & COMPANY,<br><br>Defendants. | |

**Expert Report of Dennis W. Carlton**

**October 4, 2018**

reductions and other incentives in respect of interchange fees to encourage merchants in Australia not to implement surcharges or to discontinue surcharging, including a reduced rate to gas stations.[65]

59. Because the elimination of the Network Restrictions would create economic incentives for Visa and Mastercard to reduce interchange and/or network fees, leading to lower credit card merchant fees (with the same logic applying to debit cards), and in light of the evidence I discuss later, I conclude that the Network Restrictions influence upwards the prices paid by merchants to accept credit and debit cards and also upward the net price that card users pay for those transactions.

### E. The Network Restrictions Constrain Competition Between Member Banks within a Network

60. In addition to reducing competition between networks and between payment methods, the Network Restrictions also reduce competition between issuing banks within a network. That is, the Network Restrictions are horizontal restrictions that constrain competition between member banks. Visa and Mastercard were originally joint ventures of their member banks, and thus clearly involved horizontal coordination among the competing member banks. After converting to for-profit status, each network continues to operate as a coordinator for groups of horizontal competitors.[66] As I discuss in more detail below, the Network Restrictions allow the member banks within say Visa to act collectively to reduce competition between one another by, for example, making it difficult for an individual issuer to gain any competitive advantage over other issuers by offering a lower fee to a merchant (i.e., a lower interchange fee).

61. Visa and Mastercard each set "default" interchange fees – essentially the price paid by a merchant to a given issuer for access to that issuer's cardholders. Absent the Network

---

interchange fees.").

65. Deposition of Albert Naffah, Mastercard executive, October 7, 2008, pp. 184-185 ("[redacted]").

66. Member banks are also defendants in this case.

Restrictions, issuers with say Visa could compete with one another to persuade merchants to favor their cardholders over other issuers. However, in the presence of the Network Restrictions, merchants' ability to offer such incentives to issuers is limited, thus reducing competition between issuers for the merchants' business. Each issuer is aware of the restrictions on merchants, each issuer accepts the network default rates, and each issuer therefore, given the restrictions, has little if any incentive to compete against other issuers by offering lower interchange rates. It is important to note that any individual issuer has an incentive to obtain exceptions to the Network Restrictions so that merchants can favor its cardholders, so long as other issuers are still bound by the Network Restrictions. That is, as with price fixing in a cartel, each individual issuer has incentives to obtain exceptions to the Network Restrictions and obtain the benefits of competing for merchants' business, but collectively the issuers are better off not competing.

### F. The Network Restrictions Reduce Merchant Acceptance and hence Use of Visa and Mastercard at those Merchants

62. Elimination of the Network Restrictions on steering is likely to expand merchant acceptance by lowering the net cost to merchants of accepting Visa and Mastercard payment cards. One can see exactly this phenomenon at work when one looks at the occasional exceptions that Visa and Mastercard have to their no surcharge rules for categories of merchants including utilities, educational institutions, and government bodies. As explained in a Mastercard e-mail, "[redacted]"[67] This "[redacted]" is applied "[redacted]"[68] The program was officially rolled out in 2007.[69]

---

67. Deposition of Caroline Dionisio, Mastercard executive, February 23, 2017, Exhibit 3 (MCW_MDL_07354237-48), p. 5.

68. Deposition of Caroline Dionisio, Mastercard executive, February 23, 2017, pp. 103-105 [redacted]

69. Deposition of Caroline Dionisio, Mastercard executive, February 23, 2017, Exhibit 3 (MCW_MDL_07354237-48), p. 5.

131. Another way to see that credit and debit cards are distinct markets is to use the Supreme Court's notion of a net price.[174] According to their logic, credit cards would not constitute an antitrust market if its net price were constrained to the competitive level by other payment mechanisms. But as I have already described, the evidence shows that, for example, as a result of the 2012 settlement, credit card merchant service fees went down and the net price fell. That means that those prices were not at the competitive level initially. Hence other payment mechanisms did not constrain the net price to be at the competitive level.

132. Thus, I conclude that Visa and Mastercard participate in a market no broader than credit card network services. My finding is consistent with the discussion of the Supreme Court in *Ohio v. American Express*, which refers to Visa and Mastercard as "two of the major players in the credit-card market."[175] My finding is also consistent with the decision in the *Visa Check/MasterMoney Antitrust Litigation* case, which concluded that credit cards and debit cards were separate economic markets for the purpose of a tying analysis.[176]

### 2. Visa and Mastercard participate in a market no broader than debit card network services.

133. Again, a simple example makes clear that debit card network services is a relevant market. If Visa and Mastercard attempted to merge their debit card operations, would that raise antitrust concerns? The answer again is yes and I would be surprised if Defendants' experts disagree. That indicates debit card network services can be considered a relevant market.

---

174. As noted above, I do not agree with some of the economic logic of the majority opinion in *Amex*. Even if there is not one but two markets – one for network services to consumers and one to merchants – an economic analysis of the ability to raise price on one side of the platform should consider the feedback effect on the other side of the platform, but as I explain in Carlton & Winter (2018), this can be done without resorting to the approach of using a "net price" in one market. Nevertheless, I have been asked to include the "net price" approach of the Supreme Court in my analysis in this case.

175. Supreme Court of the United States, *Ohio et. al. v. American Express Co. et. al.*, Certiorari to the United States Court of Appeals for the Second Circuit, No. 16-1454, Syllabus, p. 1.

176. *In re Visa Check/Mastermoney Antitrust Litigation*, No. 96-CV-5238 (JG), 2003 WL 1712568 (E.D.N.Y, April 1, 2003) ("Contrary to the defendants' contention that the relevant market is all forms of payment, debit card services is a well-defined submarket characterized by an inelasticity of demand and universal recognition by the public, the parties, and the industry as a whole.").