# Exhibit 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PAYMENT CARD INTERCHANGE FEE AND MERCHANT DISCOUNT ANTITRUST LIGITATION | No. 05-md-01720 (BMC) (JAM) |
| This Document Applies to:<br><br>*Barry's Cut Rate Stores, Inc., et al v. Visa Inc., et al, No. 05-md-01720 (E.D.N.Y)* (BMC) (JAM) also now known as *DDMB, Inc., et al. v. Visa, Inc., et al., No. 05-md-01720 (E.D.N.Y.) (BMC) (JAM)* | |

**OBJECTION OF [XXX] MERCHANTS AND MERCHANT TRADE ASSOCIATIONS TO MOTION FOR FINAL APPROVAL OF SETTLEMENT**

The undersigned merchants and merchant trade associations submit this Objection to the proposed amended settlement of the Rule 23(b)(2) Class Plaintiffs and the Defendants in *In re Interchange Fee and Merchant Discount Antitrust Litigation* ("proposed settlement"). The entities submitting this Objection include small, medium and large retail businesses and trade associations, and represent merchants operating in locations across all 50 states. Each of the undersigned merchants and trade associations is a member of the Rule 23(b)(2) Class because each of us has accepted Visa-branded cards and/or Mastercard-branded cards in the United States during the period between December 18, 2020 and the date of preliminary settlement approval. Because the Court has so far not permitted opt outs from the Rule 23(b)(2) Class, each of us or our members would be bound by the proposed settlement, including its broad liability release that would extinguish our rights to seek relief in court from a wide range of anticompetitive fees and rules within the Visa and Mastercard network systems. We urge the Court to deny final approval for this proposed settlement. Our specific objections to the proposed settlement and the reasons for them are stated below.

## BASES FOR OBJECTION

In general, we object to this proposed settlement because it would grant Visa, Mastercard and giant card-issuing banks sweeping liability immunity for their anticompetitive system of card fees and rules while providing merchants with temporary and meager relief that is riddled with loopholes that will make the relief largely ineffective. This is the third attempt by the credit card industry to push a settlement in this litigation that protects and preserves their anticompetitive business model for years to come. The courts have rejected these efforts twice before and should do so again.

This inadequate settlement agreement—one that entrenches Visa and Mastercard's anticompetitive system of fees and rules—would cause more harm than good to businesses like ours and our members and to consumers across the nation. Credit and debit cards account for two-thirds of all payments made by consumers in the United States,[1] and Visa and Mastercard dominate the credit and debit card network markets with approximately an 85% market share.[2] These two companies each operate a cartel-type network system where they centrally set interchange fee rates and rules governing card transactions on behalf of all the many financial institutions that issue their network-branded cards. These network systems are structured to avoid normal marketplace competition, with card network rules that require merchants to accept cards issued by any and all banks in the network so banks need not compete with each other in order to obtain merchants' business. When card-issuing banks do not have to compete with one another over the fee rates they receive from merchants on transactions and do not have to negotiate with merchants over the terms and conditions of card acceptance, both consumers and merchants lose as U.S. merchants will continue to pay the highest credit card transaction fees in the world,[3] with fees increasing annually.[4] Merchants typically operate in highly competitive markets with narrow single-digit profit margins and often have little ability to cover the cost of these fees without raising retail prices, which harms consumers. This proposed settlement would not meaningfully change the anticompetitive problems with the current system and it would immunize these harmful practices from legal challenge for many years to come, and potentially in perpetuity.

Our specific reasons for objecting to the proposed settlement are as follows.

## 1. The Liability Release in the Proposed Settlement Is Too Broad.

The proposed settlement would impose a sweeping liability release on all merchants, cutting off our and our members' rights to bring actions in court to seek relief from a broad range of anticompetitive fees and rules within the Visa and Mastercard network systems. The liability release provisions of the proposed settlement are convoluted and in many instances ambiguous, leaving their full scope and duration alarmingly uncertain. The most problematic provisions of the proposed settlement are as follows:

---

[1] *See* Federal Reserve, 2026 Diary of Consumer Payment Choice.
[2] *See* Federal Reserve, Profitability of Credit Card Operations of Depository Institutions, November 2025, at p. 5 ("The general-purpose bank credit card market in the U.S. is dominated by cards issued on the Visa and Mastercard networks, which, combined, accounted for 804.8 million cards, or about 85 percent of general-purpose credit cards, in 2024.); Complaint, *United States v. Visa*, Case 1:24-cv-07214, at p. 7 ("over 60% of all U.S. debit transactions run via Visa's payments network…Mastercard is a distant second, processing less than 25% of all U.S. debit transactions.").
[3] Clearly Payments, "Statistics on How Much Merchants Pay for Payment Processing in 2024," ("North American payment processing fees are the highest in the world due to a combination of factors, including high interchange rates, which can exceed 2% per transaction, and the dominance of major card networks like Visa and Mastercard that control over 80% of the market.).
[4] According to Nilson Report data, Visa and Mastercard credit card merchant fee rates increased from an average rate of 2.02% in 2010 to 2.26% in 2023 to 2.36% in 2025. The total amount of merchant fees collected on U.S. card transactions increased 219% from 2009 ($62.1 billion) to 2025 ($198.25 billion). *See* Bridget Goldschmidt, "Swipe Fees Reach Record $198.25B," Progressive Grocer, March 19, 2026.

a) Paragraph 116(a) appears to require all parties in the Rule 23(b)(2) class (i.e., all card-accepting merchants, including us) to irrevocably waive any legal claims seeking declaratory, injunctive, or equitable relief against Visa, Mastercard and bank defendants. That would include not only claims that were raised in this litigation, but also claims that "could have been alleged or raised" in this litigation as well as claims that merchants might bring in the future "arising out of or relating to a continuation or continuing effect of any such conduct, acts, transactions, events, occurrences, statements, omissions, or failures to act" that was raised or could have been raised in the current litigation. Because the proposed settlement would largely lock in place Visa and Mastercard's current system of setting interchange fees on behalf of banks and establishing network rules that insulate those fees from market forces, there will be many continuing effects of that system that we would be barred from challenging in court. This involuntary extinguishment of our potential future claims arising from *new* conduct and *new* injuries would violate our due process rights.

b) Paragraph 116(b) lists many issues that the settlement would deem "claims that were or could have been alleged" in this litigation and that are therefore waived, including claims involving interchange fees; a host of network rules including routing, steering, tokenization, and card authentication rules; any anticompetitive agreements made between the networks and banks; and "any Merchant Fee" relating to Visa or Mastercard card transactions. The term "Merchant Fee" is defined in Paragraph 1(u) to include any type of fee that issuing banks, card networks, acquirers, or processors might deduct from a card transaction amount or otherwise charge to a merchant. This provision thus cuts off class members' legal rights not only to challenge the fees and rules in the interchange fee system, but also to challenge Visa and Mastercard's high network fees, other anticompetitive network rules, and any and all other card transaction fees that *might be* assessed to merchants currently or in the future, including fees charged by acquirers and processors that are not defendants in this litigation.

We object to liability release language that is at best ambiguous in scope, and at worst shields defendants from challenges against the fees and rules in the Visa and Mastercard network systems. In particular, the "could have been alleged," "continuation or continuing effect," and "any Merchant Fee" language in the release is unacceptable as written. We object to the release as, among other things, violative of due process, not better than a trial outcome (which would not extinguish future claims), and in contravention of public policy (which disfavors antitrust immunity through settlements).

**2. The Merchant Relief in the Proposed Settlement Is Too Meager and Ineffective.**

While this proposed settlement is revised somewhat from the version rejected in 2024, from our experience and first-hand expertise as merchants and merchant associations, we believe its provisions still do not provide meaningful relief for merchants. The current system's core anticompetitive problem will remain—namely, Visa and Mastercard's continuing, central role in their network cartel structure sheltering banks from market competition by fixing fee rates and transaction rules on their behalf. These rules and fixed rates create an anticompetitive environment where thousands of card-issuing banks do not have to engage in market competition with one another for merchant business. Further, the loopholes in the settlement's relief

provisions create clear paths for circumvention by Visa, Mastercard and the bank defendants. Our specific objections to the relief provisions include:

a) The Proposed Settlement Entrenches Visa and Mastercard's Cartel Structure and Centralized Fixing of Fees and Rules. If the final settlement is approved, the Visa/Mastercard duopoly will continue centrally fixing interchange fee rates on behalf of thousands of card-issuing banks. As a result, U.S. merchants will continue to be charged excessively high fees that inflate retail prices paid by consumers. The proposed settlement will also entrench Visa's and Mastercard's anticompetitive "honor all issuers" rules that force merchants to accept Visa or Mastercard branded cards from each and every bank that issues such cards, even if the issuing bank provides substandard service or fraud prevention or imposes excessive or disproportionate fees. That aspect of the rule is not necessary for the system to operate, and could be eliminated or rewritten in a way that would require banks in the nation to compete rather than coordinate. The all-or-nothing structure of issuer acceptance demanded by Visa and Mastercard is inconsistent with the antitrust laws, but would receive approval and immunization with this proposed settlement. On the other hand, some allowance for collective action by small market participants is a recognized part of the antitrust laws that could be crafted by a reasonable settlement or injunction after trial. There is nothing that does that in this proposed settlement.

b) The Proposed Settlement's Temporary Interchange Rate Reduction Is Miniscule. The proposed settlement would direct Visa and Mastercard to reduce average credit card interchange rates by 0.1% for 5 years, but this is a small fraction of Visa's and Mastercard's current average rate of 2.36%, which a trial would show is supra-competitive.[5] In fact, this 0.1% reduction would merely return the average Visa/Mastercard rate to its 2023 level—nearly 20 years after this litigation started. After 5 years, Visa and Mastercard could once again raise interchange fees.

c) Loopholes in the Proposed Settlement Allow Visa and Mastercard to Impose Network Fee Increases. Any interchange fee relief provided can effectively be cancelled out if Visa and Mastercard increase the network fees currently charged to merchants on each card transaction. The proposed settlement does not prevent such network fee increases; rather, Paragraphs 54 and 103 contain loopholes allowing Visa and Mastercard to increase their network fees anytime "in response to market conditions." Further, there is nothing in the proposed settlement preventing Visa and Mastercard from creating new types of merchant fees and, in fact, the "any Merchant Fee" provision in the liability release likely gives such future fees legal immunity.

d) The Proposed Settlement's Honor All Cards Reforms Will Not Work in Practice. The proposed settlement purports to allow merchants to choose to decline "Premium" consumer credit cards (i.e., rewards cards) and accept only "Standard" cards, under the theory that the threat of merchants choosing to only accept Standard cards will incentivize Visa and Mastercard to lower fee rates for rewards cards. However, the market is so strongly skewed toward rewards cards that this relief is unrealistic.

[5] The Nilson Report, "Merchant Processing Fees in the United States – 2025," Issue 1303, March 2026.

As merchants whose businesses depend on being able to accept cards for payment, we know that this purported relief does not provide us a real choice and will have no effect in practice. The Consumer Financial Protection Bureau found that "[a]s of 2019, more than 90 percent of general purpose credit card spending occurred on rewards cards."[6] Merchants cannot realistically afford to decline *all* rewards cards, as this would mean rejecting cards used for 90 percent of consumer credit card spending. In contrast, it would be impactful if we could decline rewards cards from certain overpriced *issuers*, forcing them to compete with each other on price and for merchant acceptance, but Visa and Mastercard's honor all issuers rules prohibit us from doing so. If competition is the goal, real honor all cards relief must come at the *issuer* level, not the Standard vs. Premium card type level, to provide a real-world market mechanism for downward pressure on interchange fees rates. The settlement's relief does nothing about the requirement to accept cards from all issuers.

This reform also has a loophole: the proposed settlement does not prevent Visa, Mastercard, and card issuers from recategorizing or reissuing Standard cards (which make up less than 10 percent of spend) as Premium cards.

e) <u>The Proposed Settlement's Interchange Rate Cap for "Standard" Cards is Easily Circumvented</u>. The proposed settlement establishes a temporary rate cap for Standard consumer credit cards at 1.25%, but, as discussed above, Standard cards represent a small and shrinking fraction of the market. Further, the proposed settlement does nothing to stop banks from reissuing or recategorizing Standard consumer cards as Premium consumer cards or as a new third category of card in order to move the card out of the rate-limited Standard category. These rate caps are not meaningful because banks can ensure that few, if any, of these cards exist once the settlement goes into effect.

<u>The Proposed Settlement's Surcharging Provisions Can Be Defeated by Fee Increases</u>. The proposed settlement appears to allow merchants to impose surcharges of up to 3% to pass along Visa and Mastercard's fees to consumers, but based on our experience, surcharges often make consumers angry at merchants. For many merchants, state laws and/or card network rules that ban or cap surcharging or that require varying and complicated surcharge disclosures make surcharging effectively unworkable. Loopholes in the settlement will also enable networks to penalize merchants imposing surcharges after the settlement period ends, as paragraphs 43(f) and 92(f) allow Visa and Mastercard to establish "differential rate structures" with higher interchange rates for merchants that surcharge. Visa and Mastercard could use this loophole to raise interchange rates on merchants that surcharge to a level exceeding 3%, wiping out any benefit of this provision. Further, the settlement's surcharging provisions would not last long enough for any market reforms to take hold and provide meaningful market reform before the relief period expires.

This litigation has been ongoing for many years, with merchants having won many victories along the way. The Court denied the Defendant banks and card networks' summary judgment motions on Class Plaintiffs' anti-competition claims, and this case is ready for trial. Merchants have been awaiting meaningful pro-competitive relief for years. But the proposed relief in this

---

[6] Consumer Financial Protection Circular 2024-07, "Design, marketing, and administration of credit card rewards programs," Dec. 18, 2024.

settlement is inadequate, ineffective, and riddled with loopholes that would allow the networks and banks to undermine or evade it, while barring our ability bring future challenges.

**3. Conclusion**

For the reasons discussed above, we object to the terms of the proposed settlement, which we had no part in negotiating and which would cost us far more than any potential benefits. We object to being bound without the right to “opt out” and chart our own course. We object to the waiver of our current and future legal rights under this proposed settlement’s sweeping liability release provisions, which are not a fair exchange for meager, loophole-ridden and temporary relief provisions. We urge the court to deny final approval of this settlement.

We thank the Court for its consideration of this Objection.