# Exhibit 19

**EXHIBIT 19**
**Shadowen Reply Declaration**

# Comparison of Early Class and DAP Complaint Allegations with Late DAPs' Allegations

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| Defendants in the class case are Visa, Mastercard and largest 37 bank issuers and acquirers and alleging a *single horizontal* conspiracy to fix prices. Photos Etc Corp v. Visa U.S.A. Inc., D Conn 3:05-cv-01007 at ¶¶ 13-51. Individual Plaintiffs sued only the networks and alleged *two horizontal* combinations, one between Visa and its member banks, and one between Mastercard and its member banks, to fix prices, set rule restraints, and unlawful tie of credit card products and separate network services. EDNY 1:05-cv-04650 at ¶ 1. | | Alleged two separate cartels to fix prices and not compete with Visa and its member banks, and with Mastercard and its member banks. EDNY 1:13-cv-5746 at ¶¶ 74, 7, 13n, 13r.<br>The interchange price fixing scheme constituted "anticompetitive and unreasonable *vertical* price restraints" between the networks and the member banks to comply with the rules and regulations. EDNY 1:13-cv-5746 at ¶¶ 124-125. |
| Co-conspirators are thousands of additional issuing and acquiring banks and banks on the network boards adopting the rules. D Conn 3:05-cv-01007 at ¶¶ 52-54. | | |
| "Absent the conspiracies alleged herein, the Issuing and Acquiring Bank members of both associations could negotiate individually with retail merchants and merchants would be free to | | The Honor All Issuers rules require that if a merchant accepts a single issuer's cards, they must accept all issuers, and issues therefore have no incentive to enter into |

[1] The 7-Eleven Merchant later file dfive amendments to their complaint. *See* EDNY 1:13-cv-5746 ECF 8 (8/30/2013); ECF 30 (4/28/2014); ECF 41 (9/26/2014); ECF 80 (2/17/2015); and service of Fifth Amended Complaint (11/11/2016).

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| accept or reject the cards issued by particular Issuing Banks and to surcharge their customers for the use of such cards as appropriate. Under these circumstances, prices and output would be responsive to cost and consumer preference rather than being set at monopolistic levels by the cartel of commercial bank associations." EDNY 1:05-cv-04650 at ¶ 16. | | bilateral agreements or compete on price. EDNY 1:13-cv-5746 at ¶ 84-87. |
| Definitions used in the complaint. D Conn 3:05-cv-01007 at ¶ 61. | | Similar definitions used in the complaint. EDNY 1:13-cv-5746 at ¶ 13. |
| Merchants pay supra-competitively-priced interchange fees. D Conn 3:05-cv-01007 at ¶¶ 2, 12, 54, 110, 111. | | Interchange fees are set a supra-competitive levels. EDNY 1:13-cv-5746 at ¶ 80. |
| Plaintiffs purchased General Purpose Card Network Services from one or more Defendants. D Conn 3:05-cv-01007 at ¶¶ 7-11. | | Merchants pay interchange fees and are the direct purchasers. Merchants account for interchange fees as an expense. Acquirers do not account for interchange fees as an expense. Acquirers pay assessments to the networks, which are treated as an expense. EDNY 1:13-cv-5746 at ¶¶ 92-93, 163-164. |
| Relevant market: General Purpose Cards and General Purpose Card Network Services are "the product dimension." D Conn 3:05-cv-01007 at ¶¶ 62-64. Individual Plaintiffs alleged three relevant markets: 1) network services for general purpose cards; 2) network services for Visa credit cards; and 3) network services for Mastercard credit cards. EDNY 1:05-cv-04650 at ¶ 18. | | Relevant markets are General Purpose Credit Card and General Purpose Debit Card and for network services for both. EDNY 1:13-cv-5746 at ¶¶ 168-177, 179-185. |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| The relevant geographic market is U.S. D Conn 3:05-cv-01007 at ¶ 64. EDNY 1:05-cv-04650 at ¶ 17. | | The relevant geographic market is U.S. EDNY 1:13-cv-5746 at ¶ 186. |
| Visa and Mastercard jointly and separately have market power in the relevant market. D Conn 3:05-cv-01007 at ¶¶ 65-68; EDNY 1:05-cv-04650 at ¶¶ 21, 34. | | Defendants use the price fixing conspiracies to acquire and maintain their substantial market power. EDNY 1:13-cv-5746 at ¶¶ 78, 94. |
| There are significant barriers to entry into the relevant market; no company has entered since 1985 and it would cost over $1 billion. D Conn 3:05-cv-01007 at ¶ 69; EDNY 1:05-cv-04650 at ¶ 22. | | Discussing barriers to entry in the General Purpose Debit Card Market. EDNY 1:13-cv-5746 at ¶¶ 161-162. |
| Visa and Mastercard are associations of banks formed from regional networks. D Conn 3:05-cv-01007 at ¶¶ 72-74; EDNY 1:05-cv-04650 at ¶¶ 23-26. | | |
| There has been an increase in usage of credit cards; ubiquity of credit cards. D Conn 3:05-cv-01007 at ¶¶ 78, 89; EDNY 1:05-cv-04650 at ¶¶ 27, 29A-E. | | |
| General purpose credit card market today is saturated with concentration of issuing and acquiring and low and decreasing transactional costs. EDNY 1:05-cv-04650 at ¶ 29. | | Costs associated with issuing General Purpose Credit Cards have declined dramatically since 1990. EDNY 1:13-cv-5746 at ¶ 140. |
| There has been an increase in member banks issuing cards. D Conn 3:05-cv-01007 at ¶¶ 79-80. | | |
| There have been technology improvements to decrease costs. D Conn 3:05-cv-01007 at ¶¶ 77. EDNY 1:05-cv-04650 at ¶ 29. | | Costs associated with issuing General Purpose Credit Cards have declined dramatically since 1990. EDNY 1:13-cv-5746 at ¶ 140. |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| Interchange fees purported to be necessary and cost-based in the early days; the justifications are no longer valid. D Conn 3:05-cv-01007 at ¶¶ 85-87. EDNY 1:05-cv-04650 at ¶¶ 29, 32-36. | Explaining why interchange fees were necessary in the early days of the networks and purportedly balanced network costs between the acquiring and issuing banks. Technology has evolved and both networks jointly and separately have market power. The collective setting of fees performs no legitimate standard setting function. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 155-160. | General Purpose Debit Cards should be at par with no interchange fees charged, because they are replacements for cash and checks which banks cleared at par. The banks would issue debit cards without interchange fees because of the many benefits they bring to the bank. EDNY 1:13-cv-5746 at ¶¶ 128-135.<br>Defendants argue that default interchange fees are justified because otherwise issuers would "hold up" merchants by charging excessively high fees. EDNY 1:13-cv-5746 at ¶¶ 142-144. |
| Even if Visa and Mastercard did not set fees, the networks would continue in their roles as clearing houses between the issuing and acquiring banks. D Conn 3:05-cv-01007 at ¶¶ 91-92; EDNY 1:05-cv-04650 at ¶ 36. | | None of the anticompetitive rules and practices are reasonably necessary for the functioning of the networks. EDNY 1:13-cv-5746 at ¶¶ 9, 81.<br>The Honor All Issuers rule is not necessary for a general purpose payment card network to function. EDNY 1:13-cv-5746 at ¶ 87.<br>The Honor All Issuers rule is not necessary for a general purpose payment card network to function. EDNY 1:13-cv-5746 at ¶ 87. |
| The services (processing, guarantee services, float) are illegally bundled and tied together. D Conn 3:05-cv-01007 at ¶¶ 93-102; EDNY 1:05-cv-04650 at ¶¶ 39-45. | | |
| Every major bank in the U.S. is a member of both Visa and Mastercard with a 95% overlap | | |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| and information could easily be shared. D Conn 3:05-cv-01007 at ¶¶ 103-106. | | |
| Visa and Mastercard bank members collectively fix the interchange fees. D Conn 3:05-cv-01007 at ¶ 107, 116. | | Issuers have colluded to fix the interchange fees they charge merchants on every transaction. EDNY 1:13-cv-5746 at ¶¶ 76, 88. |
| Interchange fee increases of one network are always followed by the other network. D Conn 3:05-cv-01007 at ¶ 108.<br>Interchange fees are ever-increasing. D Conn 3:05-cv-01007 at ¶¶ 119-138. | The bank defendants ensured interchange fees increased in parallel and stair step fashion. Even after the IPOs, the bank defendants and member banks ensure continued increases in interchange fees. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 154. | Despite the decline in issuers' costs, Visa and Mastercard have substantially raised interchange fees, showing increases are based on market power, not based on costs. EDNY 1:13-cv-5746 at ¶ 141.<br>During the damages period, Visa and Mastercard continued to raise interchange fees and rates, including for Premium. EDNY 1:13-cv-5746 at ¶ 178. |
| The network services are virtually identical, and the networks principally compete on price. D Conn 3:05-cv-01007 at ¶¶ 109. | | |
| No merchant is permitted to negotiate interchange fees. EDNY 1:05-cv-04650 at ¶ 30. The networks and bank members each agreed to eliminate the merchants' ability to negotiate lower interchange fees through a set of restraints, including Honor All Cards. EDNY 1:05-cv-04650 at ¶ 1. | | Bank defendants consistently declined to individually negotiate card acceptance with merchants and do not compete for merchant acceptance. EDNY 1:13-cv-5746 at ¶¶ 7, 75, 76. |
| Rules are designed to prevent merchants from resisting interchange increases. EDNY 1:05-cv-04650 at ¶ 31. | | Anti-steering rules hid the costs of credit card transactions from consumers, prevented discounting before 2011, prevented testing out steering methods and prevented surcharging, without |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | | procompetitive justifications. EDNY 1:13-cv-5746 at ¶¶ 145-150. |
| Claims for Section 1 unreasonable restraint under the rule of reason. D Conn 3:05-cv-01007 at ¶¶ 113; EDNY 1:05-cv-04650 at ¶¶ 68—91. | | Even if analyzed under the rule of reason, the conduct constituted unreasonable restraints of trade under Section One and none of the rules are reasonably necessary for the functioning of a network. EDNY 1:13-cv-5746 at ¶ 9. |
| Claims for *per se* unlawful price fixing against Visa and Mastercard. EDNY 1:05-cv-04650 at ¶¶ 46-67. | | Visa's and Mastercard's agreements not to compete and price fixing schemes are naked restraints and *per se* violations of Section 1. EDNY 1:13-cv-5746 at ¶ 8. |
| Claims for unlawful tying and bundling of processing with other separate and distinct services, violation under Section 1. D Conn 3:05-cv-01007 at ¶¶ 139-164; EDNY 1:05-cv-04650 at ¶¶ 92-123. | | |
| Claims for unlawful exclusive dealing. D Conn 3:05-cv-01007 at ¶¶ 165-176. | | |
| Claims for monopolization and attempted monopolization. EDNY 1:05-cv-04650 at ¶¶ 124-145. | | Visa Defendants attempted to monopolize and did monopolize the General Purpose Debit Card Services Market, including via FANF. EDNY 1:13-cv-5746 at ¶¶ 151-161. |
| | The Class amends to add claims for fixing off-line debit interchange fees, PIN debit interchange fees, and alleging continuing violations following the IPO restructuring. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 3. | Visa and Mastercard were "consortiums of competitors" and "they continued unabated after their corporate reorganizations." EDNY 1:13-cv-5746 at ¶¶ 4, 3, 82, 83. Visa Defendants attempted to monopolize and did monopolize the General Purpose |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | | Debit Card Services Market. EDNY 1:13-cv-5746 at ¶¶ 151-152. |
| | The Class continues to name 32 issuing and acquiring banks as defendants. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 87-89. | Names the same Visa and Mast82ercard defendants and 12 issuing and acquiring banks as defendants. EDNY 1:13-cv-5746 at ¶¶ 54-74. |
| | Visa and Mastercard are consortiums of competitors, owned and operated by over 22,000 banks and were held by the Second Circuit in 2003 to be walking conspiracies. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 90. | Visa and Mastercard were "consortiums of competitors" and "they continued unabated after their corporate reorganizations." EDNY 1:13-cv-5746 at ¶¶ 4, 3, 82, 83. |
| | The Class sought to certify a damages class and an injunctive relief class. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 97. | |
| | A virtually identical class has been certified and affirmed on appeal. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 108. | |
| | Networks used dominance in credit cards to become the dominant debit card networks. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 124-135. | Beginning in the early 1990s, Visa and Mastercard began to implement a strategy to leverage market power in credit card market to force supra-competitive debit card interchange fees. EDNY 1:13-cv-5746 at ¶¶ 130-133.<br>Visa Defendants attempted to monopolize and did monopolize the General Purpose Debit Card Services Market, including via FANF. EDNY 1:13-cv-5746 at ¶¶ 151-161. |
| | Explaining how interchange is taken out of the credit or offline debit transactions and the rules that require it be applied to every transaction. | Issuers have colluded to fix the interchange fees they charge merchants on every |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 136-142. | transaction. EDNY 1:13-cv-5746 at ¶¶ 76, 88. |
| | Explaining how interchange is taken out of the PIN debit transactions and processed over ATM Networks. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 143. | |
| | The Networks monitor compliance with interchange fee schedule. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 144. | The networks rely on rules and policies to monitor and enforce the price fixing schemes. EDNY 1:13-cv-5746 at ¶¶ 77, 90. |
| | Rules require member bank to be a party to every transaction. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 145. | |
| | Interchange fees are not used to fund network operations, which is funded by assessments to the member banks. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 146-147. | |
| | Before the IPOs, the member banks controlled the decisions of both networks and collectively fixed interchange fees; did not pool all of their assets; did not owe fiduciary duty to each other; and impose fees on "on us" transactions. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 148-154. | Pre-IPOs, Visa, Mastercard and the member banks conspired to control every aspect of Visa's and Mastercard's business. EDNY 1:13-cv-5746 at ¶ 82. Each network's issuers colluded to fix interchange fees on every transaction through the default interchange fee rules. EDNY 1:13-cv-5746 at ¶ 76. |
| | Explaining why interchange fees were necessary in the early days of the networks and purportedly balanced network costs between the acquiring and issuing banks. Technology has evolved and both networks jointly and separately have market power. The collective setting of fees performs | Defendants use the price fixing conspiracies to acquire and maintain their substantial market power. EDNY 1:13-cv-5746 at ¶¶ 78, 94-97. The supra-competitive interchange fees caused the diminution of innovation and |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | no legitimate standard setting function. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 155-160. | perpetuated the fraud-prone magnetic stripe system. EDNY 1:13-cv-5746 at ¶ 167. |
| | Visa and Mastercard have market power in the market for debit network services. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 161. | Defendants leveraged the price fixing conspiracies in credit to acquire and maintain their substantial market power in debit. EDNY 1:13-cv-5746 at ¶ 79. |
| | High interchange fees are no longer needed to entice banks to issue and acquire cards. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 162. | Banks would profit from issuing General Purpose Credit Cards and default interchange is not longer necessary as an incentive to issue the cards. EDNY 1:13-cv-5746 at ¶ 136. |
| | The networks could function efficiently without fixing interchange fees and there are examples in other countries. Setting fees is not a core function and they are now set on perceptions of elasticity of demand. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 163-165. | International experience shows that drastic cuts to interchange fees did not cause a death spiral and volume has increased in Australia and discussing no adverse effects in the European Union. EDNY 1:13-cv-5746 at ¶¶ 137-138. |
| | Acquiring banks have no ability to seek redress. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 166-172. | |
| | All member banks agreed to abide by the network rules and bylaws. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 173. | All issuers and acquirers are required to adhere to all network rules. EDNY 1:13-cv-5746 at ¶ 90. |
| | Third party processors have no incentive to seek redress. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 174-176. | |
| | Anti-steering rules insulate the networks from competition in the general purpose credit and debit card network services markets and cause profound inflationary effects as merchants pass | Anti-steering rules hid the costs of credit card transactions from consumers, prevented discounting before 2011, prevented testing out steering methods and |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | on the costs to all consumers. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 177-186. | prevented surcharging, without procompetitive justifications. EDNY 1:13-cv-5746 at ¶¶ 145-150.<br>Merchants are forced to raise retail prices as a means of offsetting interchange fees. EDNY 1:13-cv-5746 at ¶¶ 165-166. |
| | Defendants tie and bundle several distinct services and enter into exclusive agreements with merchants for the provision of those services. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 187-196. | |
| | Merchants are required to use network processing services for all credit and debit transactions. EDNY 1:05-md-1720 at ECF 988-2 at ¶ 193. | |
| | Member banks are permitted to issue both Visa and Mastercard brand cards, called "Issuance Duality" and all acquiring banks acquire both. Virtually every merchant that accepts Visa, also accepts Mastercard. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 197-199. | |
| | Before the IPOs the member banks control the operations of the networks (both with virtually identical membership) by participating in the board of directors and important committees and increased prices in lock step, so neither would be disadvantaged by the other, including in the rewards race and a high degree of uniformity in the rule restraints. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 200-218. | |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | Prior to the IPOs the bank defendants collectively adopted and enforced rules to require the payment of interchange fees, the Honor All Cards rules. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 219-225. | The pillars of each conspiracy are the Honor All Cards rules, requiring merchants to accept one bank's cards must accept all other banks' cards. EDNY 1:13-cv-5746 at ¶ 75. |
| | The collective setting of interchange fees and the anti-steering restraints harmed competition. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 226-228. | Issuers colluded to fix interchange fees and charge all merchants the same amount on a given transaction, regardless of issuer. EDNY 1:13-cv-5746 at ¶ 76. |
| | Experiences in the European Commission, United Kingdom, and Australia demonstrate that it is not necessary to collectively set and have interchange fees at all. Debit card systems in Canada, Norway, Finland, Germany, Denmark, The Netherlands, and Australia function effectively without interchange fees. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 229-240. | General purpose payment card systems have functions successfully without interchange fees in the U.S. and internationally. EDNY 1:13-cv-5746 at ¶¶ 137-139. |
| | Mastercard executed its IPO 5/22/2006 along with several related agreements to ensure that the banks would retain significant control and Mastercard would not become a competitor to the banks and preserve the ability to impose supra-competitive fees on merchants. Visa did the same on 3/18/2008. A significant motivation for both was the avoidance of antitrust liability. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 241-247. | The Mastercard and Visa IPOs enhanced the cartels and were attempts to evade antitrust liability through superficial changes in corporate form. Banks agreed prior to the IPOs to continue to support the agreements after the IPOs. The banks delegated to Visa and Mastercard in perpetuity, the ability to fix the banks' pricing to merchants (outsourced pricing agent). Banks reaffirmed and effectively readopted the network's rules including default interchange and Honor All Issuers. All the government competition authorities |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | | agreed. EDNY 1:13-cv-5746 at ¶¶ 113-123. |
| | There exists a relevant market for general purpose credit cards and general purpose credit card network services. Visa and Mastercard together with their member banks jointly and separately have market power in both. Explained how they exercised their market power, price discrimination, forcing premium cards on merchants, high barriers to entry, reinforced by the anti-steering rules, EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 248-265. | Defendants use the price fixing conspiracies to acquire and maintain their substantial market power. EDNY 1:13-cv-5746 at ¶ 78, 94-97. Price discrimination is charging different price by different card type, merchant category, card not present and is evidence of market power. EDNY 1:13-cv-5746 at ¶ 91. Direct evidence of market power includes the ability to raise prices without loss of acceptance, price discrimination, setting interchange fees unrelated to costs, the ability to enforce anticompetitive policies, and forcing merchants to accept inferior products. EDNY 1:13-cv-5746 at ¶¶ 96-111. |
| | The evidence at trial may establish a single brand market for Visa and Mastercard transactions. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 266-268. | |
| | Asserting nine claims for relief for Section 1 damages for price fixing against Visa and member banks and Mastercard and member banks, and Visa and Mastercard and banks together; Cartwright Act for price fixing, declaratory and injunctive relief, unreasonable restraint for the imposing and enforcing the anti-steering restraints Visa and member banks separately, Mastercard and member banks separately, monopolization Visa and member | Alleging (separately) horizontal price fixing against Visa and Mastercard in General Purpose Credit and Debit Network Services. Alleging (separately) vertical price restraints against Visa and Mastercard in General Purpose Credit and Debit Network Services. Alleging Visa monopolization and attempted monopolization for debit card network services. Alleging Visa and Bank |

| A | B | C |
|---|---|---|
| **June and Aug 2005 Class and Supervalu DAP Complaint Original Allegations** | **May 2008 Second Amended Class Complaint Additional Allegations (ECF 988-2)** | **June 2013 7-Eleven Complaint Allegations (EDNY 1:13-cv-05746 ECF 1[1] and SDNY 1:13-cv-04442)** |
| | banks separately, Mastercard and member banks separately. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 269-329. | Defendants Conspiracy to monopolize debit card network services. Alleging all defendants state antitrust and unfair competition violations. EDNY 1:13-cv-5746 at ¶¶ 187-281. |
| | Allegations on offline debit relevant markets and similar counts. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 330-368. | Only alleges Visa's monopolization of general purpose debit market. EDNY 1:13-cv-5746 at ¶ 5. |
| | Allegations on PIN debit relevant markets and similar counts. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 369-396. | |
| | Allegations of continuing violation of Section 1 after the IPOs generally, including default interchange fee still applies, all agree to abide by the rules, member banks bound by license agreements, rules are unchanged, continue to monitor compliance. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 397-410. | |
| | Visa's continuing violation under Section One after IPO. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 411-417. | |
| | Mastercard's continuing violation under Section One after IPO. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 418-424. | |
| | Visa's continuing violation under the Cartwright Act after IPO. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 425-431. | |
| | Visa's and Mastercard's declaratory and injunctive relief for Section 1. EDNY 1:05-md-1720 at ECF 988-2 at ¶¶ 432-435. | |